<u>**Exhibit A**</u>

**Amended Organizational Documents**

<u>**Exhibit A1**</u>

**FWE I Organizational Documents**

**Certificate of Formation (TX) (Fieldwood Energy I LLC)**

| | |
|---|---|
| **Form 205**<br>**(Revised 05/11)**<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee:  $300** | This space reserved for office use.<br><br>**Certificate of Formation**<br>**Limited Liability Company** |

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

FIELDWOOD ENERGY I LLC

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☒  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

**OR**

CAPITOL CORPORATE SERVICES, INC.

☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

C.  The business address of the registered agent and the registered office address is:

| 206 E. 9TH STREET, SUITE 1300 | AUSTIN | TX | 78701 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

## Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☒  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| **GOVERNING PERSON 1** |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.)<br>     **IF INDIVIDUAL** |

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

**OR**
**IF ORGANIZATION**

Organization Name
**ADDRESS**

| Street or Mailing Address | City | State | Country | Zip Code |
|---|---|---|---|---|

Form 205                                                                      4

| GOVERNING PERSON 2 | | | | | | |
|---|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | | |
| IF INDIVIDUAL | | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | | *Suffix* |
| **OR** | | | | | | |
| IF ORGANIZATION | | | | | | |
| *Organization Name* | | | | | | |
| **ADDRESS** | | | | | | |
| *Street or Mailing Address* | | *City* | | *State* | *Country* | *Zip Code* |

| GOVERNING PERSON 3 | | | | | | |
|---|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | | |
| IF INDIVIDUAL | | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | | *Suffix* |
| **OR** | | | | | | |
| IF ORGANIZATION | | | | | | |
| *Organization Name* | | | | | | |
| **ADDRESS** | | | | | | |
| *Street or Mailing Address* | | *City* | | *State* | *Country* | *Zip Code* |

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed pursuant to a plan of merger.  The name of the merging entity is Fieldwood Energy LLC.

The address of the converting entity is  2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042.

The merging entity was formed on 11/5/2012 under the laws of the State of Delaware, USA.

The merging entity was previously a Delaware limited liability company. The merger entity converted to a Texas limited liability company on [___]/[___]/2021.

## Organizer

The name and address of the organizer:

_____
*Name*


_____
*Street or Mailing Address*                          *City*                          *State*     *Zip Code*

### Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

| |
|---|
| the filing of the certificate of merger of Fieldwood Energy LLC with the Secretary of State of Texas. |

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment.  The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date:  _____


                          _____
                          Signature of organizer


                          _____
                          Printed or typed name of organizer


                                        [ Print ]    [ Reset ]

TX060BOC - 11/27/2013 Wolters Kluwer Online

**Fieldwood Energy I LLC Agreement**

**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**FIELDWOOD ENERGY I LLC**

*(a Texas Limited Liability Company)*

**[●], 2021**

**THE MEMBERSHIP INTERESTS REFERENCED IN THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY APPLICABLE STATE SECURITIES LAWS.  SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AS WELL AS COMPLIANCE WITH THE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY THAT ARE SET FORTH HEREIN.**

## TABLE OF CONTENTS

**ARTICLE I      DEFINITIONS** ................................................................................**1**

    **Section 1.01    Definitions** ...............................................................**1**
    **Section 1.02    Interpretation** ........................................................**12**

**ARTICLE II     ORGANIZATION** ......................................................................**12**

    **Section 2.01    Formation** ..............................................................**12**
    **Section 2.02    Name** .....................................................................**13**
    **Section 2.03    Principal Office** .....................................................**13**
    **Section 2.04    Registered Office; Registered Agent** .....................**13**
    **Section 2.05    Purposes; Powers** ..................................................**13**
    **Section 2.06    Term** ......................................................................**14**

**ARTICLE III    CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS** ...........................**14**

    **Section 3.01    Initial Capital Contributions** ...............................**14**
    **Section 3.02    Additional Capital Contributions** .........................**15**
    **Section 3.03    Maintenance of Capital Accounts** .........................**15**
    **Section 3.04    Succession Upon Transfer** .....................................**15**
    **Section 3.05    Negative Capital Accounts** ...................................**15**
    **Section 3.06    No Withdrawals from Capital Accounts** .................**16**
    **Section 3.07    Treatment of Loans from Members** .......................**16**
    **Section 3.08    Modifications** ........................................................**16**

**ARTICLE IV    MEMBERS** ..............................................................................**16**

    **Section 4.01    No Personal Liability** ............................................**16**
    **Section 4.02    No Withdrawal** ......................................................**16**
    **Section 4.03    No Interest in Company Property** ..........................**16**
    **Section 4.04    Certification of Membership Interests** ..................**17**
    **Section 4.05    Meetings of Members** ............................................**17**
    **Section 4.06    Action Without Meeting** .......................................**18**
    **Section 4.07    Power of Members** .................................................**19**
    **Section 4.08    Similar or Competitive Activities; Business Opportunities** ...**19**

**ARTICLE V     ALLOCATIONS** .......................................................................**19**

    **Section 5.01    Allocation of Net Income and Net Loss** ................**19**
    **Section 5.02    Regulatory and Special Allocations** .....................**19**
    **Section 5.03    Tax Allocations** ....................................................**20**
    **Section 5.04    Allocations in Respect of Transferred Membership Interests** ...**22**

i

**ARTICLE VI    DISTRIBUTIONS** ........................................................................**22**

    **Section 6.01    General** ........................................................................**22**

    **Section 6.02    Tax Advances** ................................................................**23**

    **Section 6.03    Tax Withholding; Withholding Advances** ......................**24**

    **Section 6.04    Distributions in Kind** ..................................................**25**

**ARTICLE VII    MANAGEMENT** ........................................................................**25**

    **Section 7.01    Management of the Company** ........................................**25**

    **Section 7.02    Independent Director** ..................................................**25**

    **Section 7.03    Sole Manager** ................................................................**26**

    **Section 7.04    Service Provider** ..........................................................**26**

    **Section 7.05    Actions Requiring Independent Director Consent** ........**27**

    **Section 7.06    Actions Requiring Apache Consent** ............................**28**

    **Section 7.07    Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser** ....................**31**

    **Section 7.08    No Personal Liability** ..................................................**31**

    **Section 7.09    Funding Capital Expenditures** ....................................**32**

**ARTICLE VIII    TRANSFER** ........................................................................**33**

    **Section 8.01    General Restrictions on Transfer** ................................**33**

**ARTICLE IX    EXCULPATION AND INDEMNIFICATION** ........................**34**

    **Section 9.01    Exculpation of Covered Persons** ................................**34**

    **Section 9.02    Liabilities and Duties of Covered Persons** ..................**35**

    **Section 9.03    Indemnification** ..........................................................**36**

    **Section 9.04    Survival** ........................................................................**38**

**ARTICLE X    ACCOUNTING; TAX MATTERS** ........................................**38**

    **Section 10.01    Financial Statements and Other Information** ............**38**

    **Section 10.02    Inspection Rights** ......................................................**39**

    **Section 10.03    Income Tax Status** ....................................................**40**

    **Section 10.04    Tax Matters Representative** ......................................**40**

    **Section 10.05    Tax Returns** ................................................................**41**

    **Section 10.06    Company Funds** ..........................................................**42**

**ARTICLE XI    WINDING UP AND TERMINATION** ..................................**42**

    **Section 11.01    Events Requiring Winding Up** ..................................**42**

    **Section 11.02    Effectiveness of Termination** ....................................**42**

    **Section 11.03    Liquidation** ................................................................**43**

**Section 11.04   Certificate of Termination**.................................................................**44**
**Section 11.05   Survival of Rights, Duties, and Obligations**..............................**44**
**Section 11.06   Recourse for Claims**..............................................................................**44**

**ARTICLE XII   MISCELLANEOUS**..............................................................................**44**
**Section 12.01   Expenses**......................................................................................................**44**
**Section 12.02   Further Assurances**...............................................................................**45**
**Section 12.03   Confidentiality**........................................................................................**45**
**Section 12.04   Notices**........................................................................................................**46**
**Section 12.05   Headings**....................................................................................................**47**
**Section 12.06   Severability**..............................................................................................**47**
**Section 12.07   Entire Agreement**..................................................................................**48**
**Section 12.08   Successors and Assigns**........................................................................**48**
**Section 12.09   No Third-Party Beneficiaries**...........................................................**48**
**Section 12.10   Amendment**..............................................................................................**48**
**Section 12.11   Waiver**........................................................................................................**48**
**Section 12.12   Governing Law**.......................................................................................**48**
**Section 12.13   Submission to Jurisdiction**................................................................**49**
**Section 12.14   Waiver of Jury Trial**...........................................................................**49**
**Section 12.15   Equitable Remedies**.............................................................................**49**
**Section 12.16   Attorney's Fees**.....................................................................................**49**
**Section 12.17   Remedies Cumulative**..........................................................................**49**
**Section 12.18   Counterparts**..........................................................................................**50**

EXHIBIT A          FORM OF TRANSITION SERVICES AGREEMENT
SCHEDULE A      MEMBERS SCHEDULE
SCHEDULE B      INDEPENDENT DIRECTOR'S COMPENSATION
SCHEDULE C      SOLE MANAGER'S COMPENSATION
SCHEDULE D      ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND
                         EMPLOYEES

## LIMITED LIABILITY COMPANY AGREEMENT OF
## FIELDWOOD ENERGY I LLC

This Limited Liability Company Agreement of Fieldwood Energy I LLC, a Texas limited liability company (the "**Company**"), dated as of [●], 2021 (this "**Agreement**"), is entered into by and among the Company, the Initial Member[1] executing this Agreement as of the date hereof, and each other Person who after the date hereof becomes a Member of the Company and becomes a party to this Agreement by executing a joinder agreement in form and substance acceptable to the Company.  Capitalized terms not defined where used in this Agreement shall have the meanings assigned to such terms in ARTICLE I of this Agreement.

### RECITALS

**WHEREAS,** the Company was formed under the laws of the State of Texas by the filing of a Certificate of Formation with the Secretary of State of the State of Texas on [●], 2021 (the "**Certificate of Formation**") for the purposes set forth in Section 2.05 of this Agreement;

**WHEREAS,** pursuant to and in accordance with the Confirmation Order and the Term Sheet, respectively, and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company will own (i) the Legacy Apache Properties subject to the operational liabilities in connection therewith, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties, and (ii) the equity interests of GOM Shelf;

**WHEREAS,** in accordance with the Term Sheet, [●] has been appointed to serve as the initial Independent Director of the Company in accordance with this Agreement; and

**WHEREAS,** the Initial Member wishes to enter into this Agreement to set forth the terms and conditions governing the operation and management of the Company;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

**Section 1.01   Definitions.**  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 1.01:

"**Acceptance Notice**" has the meaning set forth in Section 7.09.

---

[1] NTD: Please confirm identity of Initial Member and the equity holders of the Initial Member.

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)     crediting to such Capital Account any amount that such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i); and

(b)     debiting to such Capital Account the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

"**Adjusted Taxable Income**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year (or portion thereof) with respect to the Membership Interest held by such Member means the federal taxable income allocated by the Company to the Member with respect to its Membership Interest (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided, that such taxable income shall be computed (i) minus any excess taxable loss of the Company for any prior period allocable to such Member with respect to its Membership Interest that were not previously taken into account for purposes of determining such Member's Adjusted Taxable Income in a prior Fiscal Year to the extent such loss would be available under the Code to offset income of the Member (or, as appropriate, the direct or indirect owners of the Member) determined as if the income and loss from the Company were the only income and loss of the Member (or, as appropriate, the direct or indirect owners of the Member) in such Fiscal Year and all prior Fiscal Years, and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise; and the terms "controlling" and "controlled" shall have correlative meanings.  For the avoidance of doubt, neither Apache nor any of its Subsidiaries nor Credit Bid Purchaser nor any of its Subsidiaries shall constitute an Affiliate of the Company.

"**Agreement**" has the meaning set forth in the Preamble.

"**Apache**" means Apache Corporation, a Delaware corporation, and its successors or assigns.

 "**Applicable Law**" means all applicable provisions of (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

"**Approved Providers**" has the meaning set forth in Section 7.02(a).

"**BOC**" means the Texas Business Organizations Code, as amended and in effect at the time of this Agreement.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation shall be (a) if such difference is being eliminated by use of the remedial method under Treasury Regulations Section 1.704-3(d), the amount of book basis recovered for such period under the rules prescribed by Treasury Regulations Section 1.704-3(d)(2), or (b) if the remedial method is not used, an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Book Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Sole Manager in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a)      the initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b)      immediately before the distribution by the Company of any Company asset to a Member, the Book Value of such asset shall be adjusted to its gross Fair Market Value as of the date of such distribution;

(c)      the Book Value of all Company assets may, in the sole discretion of the Sole Manager, be adjusted to equal their respective gross Fair Market Values, as reasonably determined by the Sole Manager, as of the following times:

(i)      the acquisition of an additional Membership Interest in the Company by a new or existing Member in consideration for more than a *de minimis* Capital Contribution;

(ii)      the distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest in the Company; and

(iii)      the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g);

(d)      the Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset

3

pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m); provided, that Book Values shall not be adjusted pursuant to this paragraph (d) to the extent that an adjustment pursuant to paragraph (c) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this paragraph (d); and

(e)     if the Book Value of a Company asset has been determined pursuant to paragraph (a) or adjusted pursuant to paragraphs (c) or (d) above, such Book Value shall thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the State of Texas are authorized or required to close.

"**Capital Account**" has the meaning set forth in Section 3.03.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property contributed to the Company by such Member.

"**Certificate of Formation**" has the meaning set forth in the Recitals.

"**Certificate of Termination**" means a certificate to be filed upon completion of the winding up and liquidation of the Company as set forth in Section 11.04, which certificate shall be in the form required by § 11.101 of the BOC.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the Preamble.

"**Company Minimum Gain**" means "partnership minimum gain" as defined in Treasury Regulations Section 1.704-2(b)(2), substituting the term "Company" for the term "partnership" as the context requires.

"**Confidential Information**" has the meaning set forth in Section 12.03(a).

"**Confirmation Order**" means the confirmation order entered in Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC, *et al*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in form and substance reasonably acceptable to Apache.

"**Continuance**" has the meaning set forth in Section 11.01.

"**Covered Person**" has the meaning set forth in Section 9.01(a).

"**Credit Bid Purchaser**" means [_____],[2] a Delaware limited liability company, and its successors and assigns.

"**Credit Bid Purchaser Documents**" means the agreements entered into between the Credit Bid Purchaser and the Company in connection with the Plan of Reorganization, including but not limited to the Farmout Agreement, Transition Services Agreement, and the Credit Bid Purchaser Contract Services Agreement, if executed.

"**Credit Bid Purchaser Contract Services Agreement**" means, in the event the Credit Bid Purchaser becomes the Service Provider under Section 7.04 of this Agreement, the Contract Services Agreement to be entered into between the Credit Bid Purchaser and the Company in the form attached to the Implementation Agreement, which, if executed, will be deemed the Service Provider Agreement hereunder.

"**Decommissioning Agreement**" means that certain Decommissioning Agreement, dated as of September 30, 2013, by and among Apache, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood and GOM Shelf, as amended by (i) the First Amendment thereto dated as of September 30, 2013, (ii) the Second Amendment thereto dated as of September 30, 2013, (iii) the Third Amendment thereto dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement dated January 3, 2018, and (v) the Fifth Amendment thereto dated effective as of April 11, 2018.

"**Decommissioning Security**" means the funds available from Trust A, the letters of credit, and the bonds from time to time outstanding pursuant to the Decommissioning Agreement or documents or instruments related thereto.

"**Depletable Property**" means each separate oil and gas property as defined in Section 614 of the Code.

"**Divisive Merger Documents**" means the certificate of division, the plan of division, the certificate of merger, and other documents filed by or on behalf of Fieldwood with respect to the Company with the Texas Secretary of State related to the divisive merger pursuant to the Plan of Merger and the formation of the Company.

"**Electronic Transmission**" means any form of communication, including communication by use of or participation in one or more electronic networks or databases, not directly involving the physical transmission of paper that creates a record that may be retained, retrieved, and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

---

[2] <u>NTD</u>: Name to be confirmed.

"**Equity Securities**" means any and all Membership Interests of the Company and any securities of the Company convertible into, exchangeable for, or exercisable for, such Membership Interests, and warrants or other rights to acquire such Membership Interests.

"**Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Sole Manager.  In making such estimate, the Sole Manager shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as the Sole Manager reasonably determines are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"**Excess Amount**" has the meaning set forth in Section 6.02(c).

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Sole Manager on such factors as the Sole Manager, in the exercise of his or her reasonable business judgment, considers relevant.

"**Farmout Agreement**" means that certain Farmout Agreement of even date herewith by and between the Company and Credit Bid Purchaser in the form attached to the Implementation Agreement.

"**Fieldwood**" means, prior to the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy LLC, and, from and after the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy III, LLC, a Texas limited liability company. and its successors and assigns (excluding, for the avoidance of doubt, the Company).

 "**Fiscal Year**" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year shall be the period that conforms to its taxable year.

"**GAAP**" means generally accepted accounting principles in the United States of America in effect from time to time; provided, that, notwithstanding any term or provision contained in this Agreement, GAAP will be deemed for all purposes hereof to treat leases that would have not been considered to be indebtedness in accordance with GAAP as in effect on December 31, 2017 (whether such leases were in effect on such date or are entered into thereafter) in a manner consistent with the treatment of such leases under GAAP as in effect on December 31, 2017, notwithstanding any modification or interpretative changes thereto or implementations of any such modifications or interpretative changes that may have occurred thereafter.

"**GOM Shelf**" means GOM Shelf LLC, a Delaware limited liability company, and its successors and assigns.

"**GOM Shelf Properties**" means those assets or properties owned by GOM Shelf.

"**Governmental Authority**" means any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations, or orders of such organization or authority have the force of law), or any arbitrator, court, or tribunal of competent jurisdiction.

"**Implementation Agreement**" means the [Second Amended Apache Term Sheet Implementation Agreement].

"**Independent Director**" means, initially, [●], or such other Person as may be designated or become the Independent Director pursuant to the terms of this Agreement. The Independent Director shall constitute a "manager" (as that term is defined in the BOC) of the Company.

"**Information Notice**" has the meaning set forth in Section 7.09.

"**Initial Member**" has the meaning set forth in the term Member.

"**Legacy Apache Properties**" means the list of assets set forth on Schedule I to the Plan of Merger.

"**Legacy Apache Properties PSA**" means that Purchase and Sale Agreement, dated as of July 18, 2013, between Apache and certain of its affiliates, Fieldwood and certain of its affiliates, and GOM Shelf, as such agreement has been amended.

"**Lien**" means any mortgage, pledge, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever.

"**Liquidator**" has the meaning set forth in Section 11.03(a).

"**Losses**" has the meaning set forth in Section 9.03(a).

"**Member**" means (a) each Person identified on the Members Schedule as of the date hereof as a Member and who has executed this Agreement or a counterpart thereof (each, an "**Initial Member**"); and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the BOC, in each case so long as such Person is shown on the Company's books and records as the owner of Membership Interests. The Members shall constitute "members" (as that term is defined in the BOC) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulations Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Members Schedule**" has the meaning set forth in Section 3.01.

"**Membership Interest**" means an interest in the Company owned by a Member, including such Member's right (a) to its distributive share of Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company; (b) to its distributive share of the assets of the Company; (c) to vote on, consent to, or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the BOC.  The Membership Interest of each Member shall be expressed as a percentage interest and shall be as set forth on the Members Schedule.

"**Net Income**" and "**Net Loss**" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or taxable loss), but with the following adjustments:

(f)     any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), shall be added to such taxable income or taxable loss, notwithstanding that such income is not includable in gross income;

(g)     any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulations Section 1.704-1(b)(2)(iv)(I) as items described in Code Section 705(a)(2)(B), shall be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(h)     any gain or loss (including Simulated Gain) resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(i)     any items of depreciation, amortization, and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis shall be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g);

(j)     if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment shall be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss;

(k)     to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulations Section 1.704 1(b)(2)(iv)(m), to be taken into account in determining

8

Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis); and

(l)     any items which are specially allocated pursuant to Section 5.02 hereof shall not be taken into account in computing Net Income or Net Loss.  The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to Section 5.02 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (a) through (f) above.

"**Nonrecourse Deductions**" has the meaning set forth in Treasury Regulations Section 1.704-2(b).

"**Nonrecourse Liability**" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

"**Plan of Merger**" means the Agreement and Plan of Merger of Fieldwood into the Company and Fieldwood Energy III LLC, dated as of [●], 2021, and adopted by Fieldwood .

"**Plan of Reorganization**" means the plan of reorganization of Fieldwood that was included in, and was confirmed by, the Confirmation Order.

"**Qualified Person**" has the meaning set forth in Section 7.02(a).

"**Quarterly Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any calendar quarter of a Fiscal Year means the excess, if any of: (a) the product of (i) a quarter (1/4) in the case of the first calendar quarter of the Fiscal Year, half (1/2) in the case of the second calendar quarter of the Fiscal Year, three-quarters (3/4) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year; over (b) all distributions previously made during such Fiscal Year to such Member.

"**Recharacterization Mortgages**" has the meaning assigned to such term in Section 6.7 of the Decommissioning Agreement.

"**Regulatory Allocations**" has the meaning set forth in Section 5.02(f).

"**Rejection Notice**" has the meaning set forth in Section 7.09.

"**Related Party Agreement**" means any agreement, arrangement, or understanding between or among the Company or any of its Affiliates, on the one hand, and the Independent Director, the Sole Manager or any member or officer of the Company or any of its Affiliates, or any Affiliate of the Independent Director, the Sole Manager or any member or officer of the

Company or any of its Affiliates; in each case, as such agreement may be amended, modified, supplemented, or restated in accordance with the terms of this Agreement.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors or lenders, counsel, accountants, and other agents of such Person.

"**Restructuring Support Agreement**" means the Restructuring Support Agreement, dated as of August 4, 2020, by and among (i) Fieldwood and including the Fieldwood PSA Parties (as defined therein); (ii) the Consenting FLTL Lenders (as defined therein); (iii) the Consenting SLTL Lenders (as defined therein); and (iv) Apache.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations thereunder, which shall be in effect at the time.

"**Service Provider**" has the meaning set forth in Section 7.04(a).

"**Service Provider Agreement**" has the meaning set forth in Section 7.04(a).

"**Shortfall Amount**" has the meaning set forth in Section 6.02(b).

"**Simulated Basis**" means, with respect to each Depletable Property, the Book Value of such property.

"**Simulated Depletion**" means, with respect to each Depletable Property, a depletion allowance computed in accordance with U.S. federal income tax principles (as if the Simulated Basis of the property were its adjusted tax basis and using simulated cost depletion) and in the manner specified in Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2), provided that the Simulated Depletion with respect to a Depletable Property shall in no event exceed the Simulated Basis of such Depletable Property.

"**Simulated Gain or Loss**" means the simulated gain or loss computed with respect to a sale or other disposition of any Depletable Property pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2).

"**Sole Manager**" has the meaning set forth in Section 7.01.

"**Standby Facility**" means a secured line of credit to be provided by Apache to the Company and GOM Shelf to fund the ongoing plugging and abandonment and decommissioning of the Legacy Apache Properties and the GOM Shelf Properties, which shall become available to advance funds to the Company and for use in accordance with the Standby Facility Documentation. The Standby Facility shall be secured by a first-priority lien on all the assets of the Company (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of the Company to Apache under the Decommissioning Agreement.

"**Standby Facility Documentation**" means the Standby Loan Agreement, dated as of [●], 2020, by and between the Company and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or comparable managers are owned, directly or indirectly, by the first Person.

"**Tax Advance**" has the meaning set forth in Section 6.02(a).

"**Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the lesser of (i) the product of (a) the Tax Rate for such Fiscal Year (but not to exceed the Tax Rate applicable to C-corporations for such Fiscal Year) and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Membership Interest or (ii) the actual amount of U.S. federal, state and local income tax (including any state or local tax imposed in lieu of an income tax) paid by such Member with respect to such Fiscal Year in respect of the taxable income allocated to the Member by the Company, after taking into account all deductions available to such Member from all sources in excess of such Member's income from other sources; *provided, however*, that if at any time Fieldwood Energy Inc. has a cash tax liability (including an estimated tax liability) on account of items of income or gain of the Company without sufficient cash on hand from a corresponding cash distribution in respect of such income or gain (all as reasonably determined by Fieldwood Energy Inc.), then the Tax Amount shall be increased such that the Company timely distributes cash sufficient to pay such tax liability.

"**Tax Matters Representative**" has the meaning set forth in Section 10.04(a).

"**Tax Rate**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any period, means the highest effective marginal combined federal, state, and local tax rate applicable to an individual residing in Houston, Texas (or, if higher, a corporation doing business in Houston, Texas), taking into account (a) the character (for example, long-term or short-term capital gain, ordinary, or exempt) of the applicable income and (b) if applicable, the deduction under IRC Section 199A.

"**Taxing Authority**" has the meaning set forth in Section 6.03(b).

"**Term Sheet**" means that certain term sheet, dated July 31, 2020, among Fieldwood and certain of its Affiliates, on the one hand, and Apache and certain of its Affiliates, on the other hand.

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, gift, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, gift, pledge, encumbrance, hypothecation, or similar disposition of, any Membership Interests owned by a Person or any interest (including a beneficial interest) in any Membership Interests owned by a Person.  "**Transfer**" when used as a noun shall have a

correlative meaning. "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Transition Services Agreement**" means the transition services agreement in form and substance attached to the Implementation Agreement and attached hereto as Exhibit A.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Trust A**" means the Fieldwood Decommissioning Trust A, a Delaware statutory trust.

"**Withholding Advances**" has the meaning set forth in Section 6.03(b).

**Section 1.02   Interpretation.**  For purposes of this Agreement: (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole.

The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms.

Unless the context otherwise requires, references herein: (x) to Articles, Sections, Exhibits, and Schedules mean the Articles and Sections of, and Exhibits and Schedules attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

The Exhibits and Schedules referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

<div align="center">

**ARTICLE II**
**ORGANIZATION**

</div>

**Section 2.01   Formation**.

<div align="center">12</div>

(a)     The Company was formed on [●], 2021, pursuant to the provisions of the BOC, upon the filing, or constructive filing with the Divisive Merger Documents, of the Certificate of Formation with the Secretary of State of the State of Texas.

(b)     This Agreement shall constitute the "company agreement" (as that term is used in the BOC) of the Company.  The rights, powers, duties, obligations, and liabilities of the Members, the Sole Manager and the Independent Director shall be determined pursuant to the BOC and this Agreement.  To the extent that the rights, powers, duties, obligations, and liabilities of any Member, the Sole Manager or the Independent Director are different by reason of any provision of this Agreement than they would be under the BOC in the absence of such provision, this Agreement shall, to the extent permitted by the BOC, control.

**Section 2.02   Name.**  The name of the Company is "Fieldwood Energy I LLC" or such other name or names as may be designated by the Sole Manager; provided, that the name shall always contain the words "Limited Liability Company" or "Limited Company" or an abbreviation of one of those phrases.  Amendments to the Certificate of Formation or this Agreement to reflect any such name change may be made by the Sole Manager without the consent of the Members. The Sole Manager shall give prompt notice to the Members of any change to the name of the Company and any related amendment to the Certificate of Formation or this Agreement.  The Company may conduct business under any assumed or fictitious name required by Applicable Law or otherwise deemed desirable by the Sole Manager.

**Section 2.03   Principal Office.**  The principal office of the Company is located at [●], or such other place as may from time to time be determined by the Sole Manager.  The Sole Manager shall give prompt notice of any such change to each of the Members and Apache.

**Section 2.04   Registered Office; Registered Agent.**

(a)     The registered office of the Company shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

(b)     The registered agent for service of process on the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

**Section 2.05   Purposes; Powers.**

(a)     The purposes of the Company are to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the Legacy Apache Properties and to cause GOM Shelf to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the GOM Shelf Properties, and to engage in any and all activities necessary or incidental to the foregoing purposes.

(b)      At the date of this Agreement, the Company has no assets other than (i) the Legacy Apache Properties, including any accounts receivable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization and any cash flow generated from the Legacy Apache Properties after the effective date of the Plan of Reorganization (such cash flow shall be reinvested and used to fund operating expenditures, to fund plugging and abandonment and decommissioning activities associated with the Legacy Apache Properties and the GOM Shelf Properties, to fund capital expenditures on the Legacy Apache Properties approved and authorized in accordance with this Agreement, and to repay amounts outstanding, if any, under the Standby Facility); (ii) 100% of the limited liability company interests or other equity interests in GOM Shelf; and (iii) the initial capitalization provided by Fieldwood pursuant to the divisive merger in an amount equal to $50 million *minus* the actual plugging and abandonment and decommissioning expenses incurred by Fieldwood between the date of its bankruptcy petition filing on August 3, 2020, and the effective date of the Plan of Reorganization.

(c)      At the date of this Agreement, the Company has no liabilities other than (i) operational liabilities accruing after the effective date of the Plan of Reorganization (including any accounts payable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization), (ii) plugging and abandonment and decommissioning liabilities and obligations (A) relating to the Legacy Apache Properties and (B) of GOM Shelf relating to the GOM Shelf Properties, (iii) obligations under the Decommissioning Agreement and the Legacy Apache Properties PSA, and (iv) obligations under the Standby Facility Documentation.

(d)      The Company shall have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the BOC.

**Section 2.06   Term.**  The term of the Company commenced on the date the Certificate of Formation was filed with the Secretary of State of the State of Texas and shall continue in existence perpetually until the Company is terminated in accordance with the provisions of this Agreement.

## ARTICLE III
## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 3.01   Initial Capital Contributions.**  Contemporaneously with the execution of this Agreement, and pursuant to the Plan of Reorganization and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company shall have the property and assets identified in clauses (i) through (iii) in Section 2.05(b), which shall constitute the aggregate Capital Contributions made by the Initial Member.  The Initial Member shall own Membership Interests in the amount set forth opposite such Member's name on Schedule A attached hereto (the "**Members Schedule**").  From and after the date of this Agreement, the Sole Manager shall maintain and update the Members Schedule upon the issuance or Transfer of any Membership Interests to any new or existing Member in accordance with this Agreement.

14

**Section 3.02   Additional Capital Contributions.**  No Member shall be required to make any additional Capital Contributions to the Company.  Any future Capital Contributions made by any Member shall only be made with the consent of the Sole Manager and, in connection with an issuance of additional Membership Interests, made in compliance with Section 7.06(e).  To the extent that a Member makes an additional Capital Contribution to the Company, the Sole Manager shall revise the Members Schedule to reflect an increase in the Membership Interest of the contributing Member that fairly and equitably reflects the value of its additional Capital Contribution in relation to the aggregate amount of all Capital Contributions made by the Members.

**Section 3.03   Maintenance of Capital Accounts.**  The Company shall establish and maintain for each Member a separate capital account (a "**Capital Account**") on its books and records in accordance with this Section 3.03.  Each Capital Account shall be established and maintained in accordance with the following provisions:

(a)      Each Member's Capital Account shall be increased by the amount of:

(i)      such Member's Capital Contributions, including such Member's initial Capital Contribution and any additional Capital Contributions;

(ii)      any Net Income or other item of income or gain allocated to such Member pursuant to ARTICLE V; and

(iii)      any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

(b)      Each Member's Capital Account shall be decreased by:

(i)      the cash amount or Book Value of any property distributed to such Member pursuant to ARTICLE VI and Section 11.03(d);

(ii)      the amount of any Net Loss or other item of loss or deduction allocated to such Member pursuant to ARTICLE V; and

(iii)      the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

**Section 3.04   Succession Upon Transfer.**  In the event that any Membership Interests are Transferred in accordance with the terms of this Agreement, the Transferee shall succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Membership Interests and, subject to Section 5.04, shall receive allocations and distributions pursuant to ARTICLE V, ARTICLE VI, and ARTICLE XI in respect of such Membership Interests.

**Section 3.05   Negative Capital Accounts.**  In the event that any Member shall have a deficit balance in its Capital Account, such Member shall have no obligation, during the term of the Company or upon termination or liquidation thereof, to restore such negative balance or make

15

any Capital Contributions to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or termination in contravention of this Agreement.

**Section 3.06   No Withdrawals from Capital Accounts.**  No Member shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement.  No Member shall receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement.  The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss, and deduction among the Members and shall have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

**Section 3.07   Treatment of Loans from Members.**  Loans by any Member to the Company shall not be considered Capital Contributions and shall not affect the maintenance of such Member's Capital Account, other than to the extent provided in Section 3.03(a)(iii), if applicable.

**Section 3.08   Modifications.**  The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Sole Manager determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Sole Manager may authorize such modifications without the consent of any Member.

## ARTICLE IV
## MEMBERS

**Section 4.01   No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt, obligation, or liability of the Company or other Members, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being a Member.

**Section 4.02   No Withdrawal.**  So long as a Member continues to hold a Membership Interest, such Member shall not have the ability to withdraw or resign as a Member prior to the winding up and termination of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the winding up and termination of the Company shall be null and void.  As soon as any Person who is a Member ceases to hold a Membership Interest, such Person shall no longer be a Member.

**Section 4.03   No Interest in Company Property.**  No real or personal property of the Company shall be deemed to be owned by any Member individually, but shall be owned by, and title shall be vested solely in, the Company.  Without limiting the foregoing, each Member hereby irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to the property of the Company.

**Section 4.04    Certification of Membership Interests.**

(a)    The Sole Manager may, but shall not be required to, issue certificates to the Members representing the Membership Interests held by such Member.

(b)    In the event that the Sole Manager shall issue certificates representing Membership Interests in accordance with Section 4.04(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests shall bear a legend substantially in the following form:

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.  NO TRANSFER, SALE, ASSIGNMENT, GIFT, PLEDGE, HYPOTHECATION, ENCUMBRANCE, OR OTHER DISPOSITION OF THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH COMPANY AGREEMENT.

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, GIFTED, PLEDGED, HYPOTHECATED, OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS, OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

**Section 4.05    Meetings of Members.**

(a)    Meetings of the Members may be called by (i) the Sole Manager or (ii) a Member or group of Members holding a majority of the Membership Interests.

(b)    Written notice stating the place, date, and time of the meeting and, in the case of a meeting of the Members not regularly scheduled, describing the purposes for which the meeting is called, shall be delivered not fewer than ten days and not more than 60 days before the date of the meeting to each Member, by or at the direction of the Sole Manager or the Member(s) calling the meeting, as the case may be.  The Members may hold meetings at the Company's principal office or at such other place, within or outside the State of Texas, as the Sole Manager or the Member(s) calling the meeting may designate in the notice for such meeting.

(c)    Any Member may participate in a meeting of the Members by means of conference telephone or other communications equipment by means of which all Persons

participating in the meeting can talk to and hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(d)     On any matter that is to be voted on by Members, a Member may vote in person or by proxy, and such proxy may be granted in writing, by means of Electronic Transmission or as otherwise permitted by Applicable Law.  Every proxy shall be revocable in the discretion of the Member executing it unless otherwise provided in such proxy; provided, that such right to revocation shall not invalidate or otherwise affect actions taken under such proxy prior to such revocation.  In lieu of a proxy, a Member may grant an irrevocable power of attorney to conduct the affairs of such Member with respect to matters of the Company, including matters relating to the organization, internal affairs, or termination of the Company.

(e)     The business to be conducted at such meeting need not be limited to the purpose described in the notice and can include business to be conducted by Members; provided, that the appropriate Members shall have been notified of the meeting in accordance with Section 4.05(b).  Attendance of a Member at any meeting shall constitute a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(f)     A quorum of any meeting of the Members shall require the presence, whether in person or by proxy, of the Members holding a majority of the Membership Interests.  Subject to Section 4.06, no action may be taken by the Members unless the appropriate quorum is present at a meeting.

(g)     Subject to Section 4.06, Section 7.05, Section 7.06, Section 12.10 or any provision of this Agreement or the BOC requiring the vote, consent, or approval of a different percentage of the Membership Interests, no action may be taken by the Members at any meeting at which a quorum is present without the affirmative vote of the Members holding a majority of the outstanding Membership Interests.

**Section 4.06   Action Without Meeting.**

(a)     Notwithstanding the provisions of Section 4.05, any matter that is to be voted on, consented to, or approved by the Members may be taken without a meeting, without prior notice, and without a vote if consented to, in writing or by Electronic Transmission, by a Member or Members holding not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which each Member entitled to vote on the action is present and votes.  A record shall be maintained by the Sole Manager of each such action taken by written consent of a Member or Members.

(b)     A Member's consent may not be established by a Member's failure to object to an action in a timely manner or by any other means not explicitly provided for in this Agreement.

(c)    If any action or decision permitted by this Agreement to be taken or made by less than all of the Members is taken or made by a written consent signed by less than all of the Members, the Sole Manager shall, within ten calendar days after such action is taken or such decision is made, give written notice of the action taken or the decision made to the Members who did not sign the written consent.

**Section 4.07   Power of Members.**  The Members shall have the power to exercise any and all rights or powers granted to Members pursuant to the express terms of this Agreement and the BOC.  Except as otherwise specifically provided by this Agreement or required by the BOC, no Member, in its capacity as a Member, shall have the power to act for or on behalf of, or to bind, the Company, other than to the extent that the Company has granted a power of attorney to such Member to bind the Company on such actions.

**Section 4.08   Similar or Competitive Activities; Business Opportunities.**  Nothing contained in this Agreement shall prevent any Member or any of its Affiliates from engaging in any other activities or businesses, regardless of whether those activities or businesses are similar to or competitive with the Company.  None of the Members nor any of their Affiliates shall be obligated to account to the Company or to the other Members for any profits or income earned or derived from such other activities or businesses.  None of the Members nor any of their Affiliates shall be obligated to inform the Company or the other Members of a business opportunity of any type or description.

<div align="center">

**ARTICLE V**
**ALLOCATIONS**

</div>

**Section 5.01   Allocation of Net Income and Net Loss.**  For each Fiscal Year (or portion thereof), after giving effect to the special allocations set forth in Section 5.02, Net Income and Net Loss of the Company shall be allocated among the Members pro rata in accordance with their Membership Interests.

**Section 5.02   Regulatory and Special Allocations.**  Notwithstanding the provisions of Section 5.01:

(a)    If there is a net decrease in Company Minimum Gain (determined according to Treasury Regulations Section 1.704-2(d)(1)) during any Fiscal Year, each Member shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2).  This Section 5.02(a) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)    Member Nonrecourse Deductions shall be allocated in the manner required by Treasury Regulations Section 1.704-2(i).  Except as otherwise provided in Treasury Regulations Section 1.704-2(i)(4), if there is a net decrease in Member Nonrecourse Debt Minimum Gain during any Fiscal Year, each Member that has a share of such Member

<div align="center">19</div>

Nonrecourse Debt Minimum Gain shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain. Items to be allocated pursuant to this paragraph shall be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2). This Section 5.02(b) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)     Nonrecourse Deductions shall be allocated to the Members in accordance with their Membership Interests.

(d)     In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), Net Income shall be specially allocated to such Member in an amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustments, allocations, or distributions as quickly as possible. This Section 5.02(d) is intended to comply with the "qualified income offset" requirement in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(e)     Simulated Depletion and Simulated Loss with respect to any Depletable Property shall be allocated among the Members in proportion to their shares of the Simulated Basis in such property. Each Member's share of the Simulated Basis in each of the Company's Depletable Properties shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such Depletable Property is acquired by the Company, and shall be reallocated among the Members in accordance with the Members' Membership Interest as determined immediately following the occurrence of an event giving rise to any adjustment to the Book Values of the Company's oil and gas properties pursuant to the terms of this Agreement (or at the time of any material additions to the federal income tax basis of such Depletable Property).

(f)     The allocations set forth in subsections Section 5.02(a), Section 5.02(b), Section 5.02(c), Section 5.02(d) and Section 5.02(e) above (the "**Regulatory Allocations**") are intended to comply with certain requirements of the Treasury Regulations under Code Section 704. Notwithstanding any other provisions of this ARTICLE V (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating Net Income and Net Losses among Members so that, to the extent possible, the net amount of such allocations of Net Income and Net Losses and other items and the Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to such Member if the Regulatory Allocations had not occurred.

**Section 5.03   Tax Allocations.**

(a)     Subject to Section 5.03(b), Section 5.03(c), and Section 5.03(d), all income, gains, losses and deductions of the Company shall be allocated, for federal, state, and local income tax purposes, among the Members in accordance with the allocation of such income, gains, losses, and deductions pursuant to Section 5.01 and Section 5.02, except

that if any such allocation for tax purposes is not permitted by the Code or other Applicable Law, the Company's subsequent income, gains, losses, and deductions shall be allocated among the Members for tax purposes, to the extent permitted by the Code and other Applicable Law, so as to reflect as nearly as possible the allocation set forth in Section 5.01 and Section 5.02.

(b)     Items of Company taxable income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall be allocated among the Members in accordance with Code Section 704(c) using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager, so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(c)     If the Book Value of any Company asset is adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) as provided in Section 1.01(c) of the definition of Book Value, subsequent allocations of items of taxable income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager.

(d)     Allocations of tax credit, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Sole Manager taking into account the principles of Treasury Regulations Section 1.704-1(b)(4)(ii).

(e)     The deduction for depletion with respect to each separate oil and gas property (as defined in Section 614 of the Code) shall, in accordance with Section 613A(c)(7)(D) of the Code, be computed for federal income tax purposes separately by the Members rather than the Company.  The proportionate share of the adjusted tax basis of each oil and gas property shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such oil and gas property is acquired by the Company (and any additions to such U.S. federal income tax basis resulting from expenditures required to be capitalized in such basis shall be allocated among the Members in a manner designed to cause the Members' proportionate shares of such adjusted U.S. federal income tax basis to be in accordance with their Membership Interests as determined at the time of any such additions), and shall be reallocated among the Members in accordance with the Members' Membership Interests as determined immediately following the occurrence of an event giving rise to an adjustment to the Book Values of the Company's oil and gas properties.  For purposes of the separate computation of gain or loss by each Member on the taxable disposition of each oil and gas property, the amount realized from such disposition shall be allocated (i) first, to the Members in an amount equal to the Simulated Basis in such oil and gas property in proportion to their allocable shares thereof and (ii) second, any remaining amount realized shall be allocated consistent with the allocation of Simulated Gain.  The allocations described in this Section 5.03(e) are intended to be applied in accordance with the Members' "interests in

21

partnership capital" under Section 613A(c)(7)(D) or the Code; provided, however, that the Members understand and agree that the Sole Manager may authorize special allocations of federal income tax basis, income, gain, deduction or loss, as computed for U.S. federal income tax purposes, in order to eliminate differences between Simulated Basis and adjusted U.S. federal income tax basis with respect to each oil and gas property, in such manner as determined consistent with the principles outlined in Sections 5.03(b) and 5.03(c).  The provisions of this Section 5.03(e) and the other provisions of this Agreement relating to allocations under Section 613A(c)(7)(D) of the Code are intended to comply with Treasury Regulations Section 1.704-1(b)(4)(v) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  Each Member, with the assistance of the Company, shall separately keep records of its share of the adjusted tax basis in each oil and gas property, adjust such share of the adjusted tax basis for any cost or percentage depletion allowable with respect to such property and use such adjusted tax basis in the computation of its cost depletion or in the computation of its gain or loss on the disposition of such property by the Company.  Upon the reasonable request of the Company, each Member shall advise the Company of its adjusted tax basis in each oil and gas property and any depletion computed with respect thereto, both as computed in accordance with the provisions of this subsection for purposes of allowing the Company to make adjustments to the tax basis of its assets as a result of certain transfers of interests in the Company or distributions by the Company.  The Company may rely on such information and, if it is not provided by the Member, may make such reasonable assumptions as it shall determine with respect thereto.  When reasonably requested by the Members, the Company shall provide all available information needed by such Members to comply with the record keeping requirements of this Section 5.03(e) and other applicable tax reporting obligations.

(f)     Allocations pursuant to this Section 5.03 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Net Income, Net Losses, distributions, or other items pursuant to any provisions of this Agreement.

**Section 5.04   Allocations in Respect of Transferred Membership Interests.**  In the event of a Transfer of Membership Interests during any Fiscal Year made in compliance with the provisions of ARTICLE VIII, Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company attributable to such Membership Interests for such Fiscal Year shall be determined using the interim closing of the books method.

## ARTICLE VI
## DISTRIBUTIONS

**Section 6.01   General.**

(a)     Subject to Section 6.02, distributions of available cash shall be made to the Members when and in such amounts as determined by the Sole Manager and only following (i) payment of all operating expenses of the Company, including required payments under the Transition Services Agreement or the Service Provider Agreement, (ii) the repayment in full to Apache of any outstanding principal amounts borrowed by the

22

Company under the Standby Facility and the payment of any accrued interest or premium thereon, in each case, pursuant to the Standby Facility Documentation, (iii) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates (A) in performing services on behalf of the Company in connection with the Legacy Apache Properties or the GOM Shelf Properties pursuant to a services contract between Apache or any of its Affiliates and the Company, (B) pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, and (C) pursuant to or as may be required in connection with the Decommissioning Agreement or plugging and abandonment and decommissioning of the Legacy Apache Properties or the GOM Shelf Properties, unless otherwise reimbursed in accordance with the Decommissioning Agreement, and (iv) the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties.  After making all distributions required for a given Fiscal Year under Section 6.02 and repaying/paying all amounts then due and outstanding under the Standby Facility as described in the preceding sentence, distributions determined to be made by the Sole Manager pursuant to this Section 6.01(a) shall be paid to the Members in accordance with their respective Membership Interests.

(b)     Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to the Members (i) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, except as provided in Section 6.02, or (ii) if such distribution would violate § 101.206 of the BOC or other Applicable Law.

### Section 6.02   Tax Advances.

(a)     At least three days before each date prescribed by the Code for a calendar-year corporation to pay quarterly installments of estimated tax, the Company shall use commercially reasonable efforts to distribute cash to each Member in proportion to and to the extent of such Member's Quarterly Estimated Tax Amount for the applicable calendar quarter (each such distribution, a "**Tax Advance**").

(b)     If, at any time after the final Quarterly Estimated Tax Amount has been distributed pursuant to Section 6.02(a) with respect to any Fiscal Year, the aggregate Tax Advances to any Member with respect to such Fiscal Year are less than such Member's Tax Amount for such Fiscal Year (a "**Shortfall Amount**"), the Company shall use commercially reasonable efforts to distribute cash in proportion to and to the extent of each Member's Shortfall Amount.  The Company shall use commercially reasonable efforts to distribute Shortfall Amounts with respect to a Fiscal Year before the 90th day of the next succeeding Fiscal Year; provided, that if the Company has made distributions other than pursuant to this Section 6.02, the Sole Manager may apply such distributions to reduce any Shortfall Amount.

(c)      If the aggregate Tax Advances made to any Member pursuant to this Section 6.02 for any Fiscal Year exceed such Member's Tax Amount (an "**Excess Amount**"), such Excess Amount shall reduce subsequent Tax Advances that would be made to such Member pursuant to this Section 6.02, except to the extent taken into account as an advance pursuant to Section 6.02(d).

(d)      Any distributions made pursuant to this Section 6.02 shall be treated for purposes of this Agreement as advances on distributions pursuant to Section 6.01 and shall reduce, dollar-for-dollar, the amount otherwise distributable to such Member pursuant to Section 6.01.

**Section 6.03   Tax Withholding; Withholding Advances.**

(a)      **Tax Withholding.**  Each Member agrees to furnish the Company with any representations and forms as shall be reasonably requested by the Company to assist it in determining the extent of, and in fulfilling, any withholding obligations it may have.

(b)      **Withholding Advances.**  The Company is hereby authorized at all times to make payments ("**Withholding Advances**") with respect to each Member in amounts required to discharge any obligation of the Company, including any obligation under Section 6225 of the Code (as determined by the Tax Matters Representative) based on the advice of legal or tax counsel to the Company) to withhold or make payments to any federal, state, local or foreign taxing authority (a "**Taxing Authority**") with respect to any distribution or allocation by the Company of income or gain to such Member and to withhold the same from distributions to such Member.  Any funds withheld from a distribution by reason of this Section 6.03(b) shall nonetheless be deemed distributed to the Member in question for all purposes under this Agreement.  If the Company makes any Withholding Advance in respect of a Member hereunder that is not immediately withheld from actual distributions to the Member, then the Member shall promptly reimburse the Company for the amount of such payment, plus interest at a rate equal to the prime rate published in the Wall Street Journal on the date of payment plus two percent (2.0%) per annum, compounded annually, on such amount from the date of such payment until such amount is repaid (or deducted from a distribution) by the Member (any such payment shall not constitute a Capital Contribution).  Each Member's reimbursement obligation under this Section 6.03(b) shall continue after such Member transfers its Membership Interests.

(c)      **Indemnification.**  Each Member hereby agrees to indemnify and hold harmless the Company and the other Members from and against any liability with respect to taxes, interest, or penalties that may be asserted by reason of the Company's failure to deduct and withhold tax on amounts distributable or allocable to such Member.  The provisions of this Section 6.03(c) and the obligations of a Member pursuant to Section 6.03(b) shall survive the termination, dissolution, liquidation, and winding up of the Company and the withdrawal of such Member from the Company or Transfer of its Membership Interests.  The Company may pursue and enforce all rights and remedies it may have against each Member under this Section 6.03, including bringing a lawsuit to collect repayment with interest of any Withholding Advances.

24

(d)   **Overwithholding.**   None of the Company, the Sole Manager or the Independent Director shall be liable for any excess taxes withheld in respect of any distribution or allocation of income or gain to a Member.   In the event of an overwithholding, a Member's sole recourse shall be to apply for a refund from the appropriate Taxing Authority.

### Section 6.04   Distributions in Kind.

(a)   Subject to Sections 6.01 and 6.02, the Sole Manager is hereby authorized, as it may reasonably determine, to make distributions to the Members in the form of securities or other property (but not including any oil and gas properties) held by the Company; provided, that Tax Advances shall only be made in cash.   In any non-cash distribution, the securities or property so distributed will be distributed among the Members in the same proportion and priority as cash equal to the Fair Market Value of such securities or property would be distributed among the Members pursuant to Section 6.01.

(b)   Any distribution of securities shall be subject to such conditions and restrictions as the Sole Manager determines are required or advisable to ensure compliance with Applicable Law.   In furtherance of the foregoing, the Sole Manager may require that the Members execute and deliver such documents as the Sole Manager may deem necessary or appropriate to ensure compliance with all federal and state securities laws that apply to such distribution and any further Transfer of the distributed securities, and may appropriately legend the certificates that represent such securities to reflect any restriction on Transfer with respect to such laws.

### ARTICLE VII
### MANAGEMENT

**Section 7.01   Management of the Company.**   The business and affairs of the Company shall be managed, operated, and controlled by or under the direction of the Sole Manager ("**Sole Manager**").   Subject to the provisions of Section 7.06, the Sole Manager shall have, and is hereby granted, full and complete power, authority, and discretion for, on behalf of, and in the name of the Company, to take such actions as it may deem necessary or advisable to carry out any and all of the objectives and purposes of the Company.

### Section 7.02   Independent Director.

(a)   The Independent Director shall (i) be a natural person who is not, nor for the prior five years has been, a director, officer, employee, trade creditor or equityholder (or spouse, parent, sibling or child of any of the foregoing) of (A) Fieldwood or any Affiliate of Fieldwood or (B) any prior or current lender of Fieldwood (a natural person satisfying such condition set forth in this clause (i), a "**Qualified Person**") and (ii) be provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, [Lord Securities Corporation],[3] Wilmington Trust Company,

---

[3] NTD: Does this entity still exist?  They are now at Citadel SPV.  Lord does not exist.

or, if none of those companies is then in the service of providing professional independent directors, another nationally recognized company selected by Fieldwood (or, following the divisive merger of Fieldwood pursuant to § 10.008 of the BOC, Credit Bid Purchaser) subject to Apache's prior consent, which may be given or withheld in its sole discretion (such providers collectively, the "**Approved Providers**").  [●] is the Qualified Person provided by an Approved Provider that, as of the date of this Agreement, has been appointed to serve as the initial Independent Director and has also been approved to serve as the initial Independent Director for the Company in connection with the Confirmation Order entered by the Bankruptcy Court for the Southern District of Texas before which the reorganization of Fieldwood was being conducted.

(b)     The Independent Director may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  If the Independent Director is removed with Apache's written consent or the Independent Director resigns or otherwise ceases to serve in such capacity, then the Company (acting by majority vote of its Members) shall select another Qualified Person from the Approved Providers to serve as the Independent Director.

**Section 7.03   Sole Manager.**  The Company shall not have any officers or employees other than a Sole Manager.  In accordance with the procedure for the selection of the Sole Manager set forth in the Term Sheet, [●] has been selected and designated to serve as the initial Sole Manager.  The Sole Manager may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  In the event that the Sole Manager is removed with Apache's written consent or the Sole Manager resigns or otherwise ceases to serve in such capacity, then the Sole Manager shall be selected pursuant to the following procedure:  Apache and the Company (acting through the Independent Director for all purposes under this Section 7.03, who shall solicit input from Credit Bid Purchaser for all purposes under this Section 7.03) shall each provide the other with a list of three natural persons, each having a minimum of five years of relevant experience in the energy sector; and if one or more names appear on both Apache's and the Company's lists, then the Company will select, and the Member(s) shall cause the Company to select, the new Sole Manager from those common names; if, however, there are no common names between Apache's and the Company's lists, then Apache and the Company (acting through the Independent Director, who shall solicit input from Credit Bid Purchaser) shall each have the right to strike two names from the other's list, and the new Sole Manager shall be selected by the Independent Director from the remaining two names.

**Section 7.04   Service Provider.**

(a)     Subject to the Transition Services Agreement, the Sole Manager shall hire one or more third-party service provider(s) (whether one or more, collectively, the "**Service Provider**") to perform all operations and plugging and abandonment and decommissioning activities with respect to the Company's and GOM Shelf's properties or assets in a manner consistent with the procedures set forth in this Section 7.04.  The Sole Manager shall solicit and obtain a bid for the work to be performed by each Service Provider from not less than three qualified candidates, each of which must (i) have a minimum of five years of relevant experience and (ii) not be, as of such date when bids are submitted, an Affiliate of Apache;

such bids shall detail the scope, terms and conditions of the work to be performed, along with the price to be paid for the performance of such work. The Company shall share copies of each such bid received with Apache promptly following receipt thereof. Following the receipt of such bids, with Apache's prior written consent (which may be given or withheld in its sole discretion), the Sole Manager shall select the candidate whose bid contains the lowest price and best terms for the work to be performed, in view of their relevant experience (all as determined in good faith by the Sole Manager and consented to by Apache), to serve as the Service Provider, and shall cause the Company to enter into an agreement with such Service Provider (such agreement, a "**Service Provider Agreement**") to provide services contemplated in this Section 7.04; provided that, immediately prior to executing such Service Provider Agreement, the Sole Manager shall have confirmed that the proposed Service Provider satisfies the candidate qualifications detailed in clause (ii) of the immediately prior sentence (as if being considered on the date of such Service Provider Agreement rather than the date when bids are submitted), and if the proposed Service Provider does not satisfy such candidate qualifications, the Sole Manager shall then reconsider the submitted bids and select another candidate in accordance with the requirements of this sentence as if the previously selected candidate had not submitted a bid. Any Service Provider Agreement shall be in such form and contain such terms as the Sole Manager determines in good faith to be appropriate and consistent with this Section 7.04. In the event that the Sole Manager elects to remove the Service Provider or the Service Provider otherwise ceases to provide its services in such capacity, then the Sole Manager shall again bid out the work, and shall select the Person to serve as the successor Service Provider, in accordance with the foregoing procedures of this Section 7.04. The Credit Bid Purchaser shall be deemed to satisfy the requirements of a candidate for the Service Provider under this Section 7.04(a).

(b) Upon the effectiveness of the Plan of Reorganization, the Company shall enter into the Transition Services Agreement and the Farmout Agreement with Credit Bid Purchaser. Pursuant to the Transition Services Agreement, Credit Bid Purchaser shall provide transitional operations for the Company in accordance with the terms of the Transition Services Agreement. The Company and Credit Bid Purchaser (in its sole discretion) may mutually agree that Credit Bid Purchaser shall become the Service Provider, at the effective time of which the Transition Services Agreement shall terminate, and the Sole Manager shall cause the Company to enter into the Service Provider Agreement with Credit Bid Purchaser. Furthermore, as provided in the Transition Services Agreement, the Transition Services Agreement may be terminated by the Company, in its sole discretion, in accordance with the terms of the Transition Services Agreement.

**Section 7.05 Actions Requiring Independent Director Consent and Service Provider.** Without the prior consent of the Independent Director (which consent may be given or withheld in the sole discretion of the Independent Director), and the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a) amend, modify, supplement or waive the Certificate of Formation, this Agreement or any other organizational documents of the Company or its Subsidiaries;

(b)      remove or replace the Sole Manager or the Service Provider;

(c)      enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(d)      wind-up, dissolve, liquidate or terminate the Company or any of its Subsidiaries prior to the occurrence of any event set forth in Section 11.01 or enter into a receivership or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(e)      revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(f)      reinstate the Company or GOM Shelf after termination.

Except as provided in the fourth sentence of Section 9.02(a), in exercising its rights and performing its duties under this Agreement (including pursuant to this Section 7.05), the Independent Director shall have fiduciary duties of loyalty and care similar to that of a director of a business corporation organized under the BOC.

**Section 7.06   Actions Requiring Apache Consent.**  Without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion, unless expressly indicated otherwise), the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)      conduct or be involved in any business or operations other than (i) operating or plugging and abandoning and decommissioning the Legacy Apache Properties, (ii) causing GOM Shelf to operate or plug and abandon and decommission the GOM Shelf Properties, and (iii) performing its obligations under the Credit Bid Purchaser Documents and the Services Provider Agreement;

(b)      purchase or farm-in any properties or assets or sell any of the Company's or GOM Shelf's properties or assets; provided that, following receipt of any such written consent from Apache to purchase or farm-in any properties or assets, other than with respect to usual and ordinary G&A and operating expenditures required to own and maintain such properties or assets, no additional funds of, or available to, the Company or GOM Shelf shall be spent with respect to such properties or assets without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion), provided further, however, that if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash

flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(c)     farm-out any of the Company's or GOM Shelf's properties or assets; provided, however, if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(d)     incur indebtedness for borrowed money other than pursuant to the Standby Facility, pledge or grant Liens on any properties or assets of the Company or GOM Shelf other than those provided pursuant to the Standby Facility Documentation and the Recharacterization Mortgages, or guarantee, assume, endorse or otherwise become responsible for the obligations of any other Person; provided, however, the Company may (i) establish a working capital line of credit secured by Liens subordinated in all respects to the Liens and payment and other obligations provided for in the Standby Facility Documentation, (ii) draw on such line of credit solely for the business purposes specified in 7.06(a), and (iii) repay up to $50,000,000 of such debt in the ordinary course of its business prior to repayment of the obligations secured by Liens in favor of Apache; provided further, however, that the Company shall not establish, draw on, or repay any such line of credit during the existence of an event of default under the Standby Facility Documentation or if such action would cause an event of default under the Standby Facility Documentation;

(e)     issue additional Membership Interests or any other Equity Securities or admit additional Members to the Company, or issue additional equity interests of or admit additional members to GOM Shelf;

(f)     use its free cash flow (after operating expenses, including fees paid under the Credit Bid Purchaser Documents and the Services Provider Agreement) for any purposes other than fulfilling its obligations to Apache under the Decommissioning Agreement and the Standby Facility Documentation for so long as the obligations thereunder have yet to be satisfied in full (for the avoidance of doubt, Apache's consent shall be required for any development activities proposed by Credit Bid Purchaser under the Farmout Agreement);

(g)     make any loan, advance, or capital contribution or make any investment in any Person;

(h)     enter into, amend, waive, or terminate any Related Party Agreement;

(i)     amend, modify, supplement, restate, or waive any provision of the Certificate of Formation, this Agreement, or any other organizational documents of the

Company or its Subsidiaries (and any such amendment, modification, supplement, or waiver that is attempted without Apache's prior written consent shall be void *ab initio* and without effect);

       (j)    engage in any activity or take any action with respect to its properties or assets, other than in the ordinary course of business;

       (k)    select, remove (other than for gross negligence or willful misconduct), or replace, or change the work to be performed by, the Service Provider;

       (l)    remove (other than for gross negligence or willful misconduct), replace, or change the powers, rights, or responsibilities of, the Sole Manager or the Independent Director;

       (m)    establish a Subsidiary or enter into any joint venture or similar business arrangement or enter into a transaction covered by Section 7.09;

       (n)    settle any lawsuit, action, dispute, or other proceeding or otherwise assume any liability or agree to the provision of any equitable relief by the Company or GOM Shelf;

       (o)    enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion, or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

       (p)    wind-up, dissolve, liquidate, or terminate the Company or any of its Subsidiaries or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

       (q)    revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

       (r)    reinstate the Company or GOM Shelf after termination.

In addition to the foregoing, if (i)(A) the Company or GOM Shelf defaults on its plugging and abandonment and decommissioning obligations under the Decommissioning Agreement, (B) any Governmental Authority or any other Person seeks to cause Apache or its Affiliates to conduct plugging and abandonment or decommissioning activity that is required in accordance with Applicable Law or contract in respect of any of the Legacy Apache Properties or the GOM Shelf Properties, and (C) Apache conducts such plugging and abandonment or decommissioning activity or activities, or (ii) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, any letter of credit or bond that is part of the Decommissioning Security is not renewed in a manner consistent in all respects with the existing terms of such letter of credit or bond, then the Company shall, and the Independent Director and the Sole Manager shall cause the Company to:  (x) if applicable, as promptly as practicable after the Independent Director or the

Sole Manager becomes aware of an event described in clause (ii) immediately above, provide written notice to Apache of the upcoming expiration of, and inability to renew, such letter of credit or bond in a manner consistent in all respects with the existing terms of such letter of credit or bond and (y) pay or reimburse Apache for the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures, which costs shall be determined in good faith by Apache based on the time spent by such employees in performing or overseeing such activities) and expenses incurred in conducting such activity or activities; provided, however, that, to the extent such costs are not direct, out-of-pocket costs incurred by Apache that are reimbursable under the Decommissioning Agreement, such costs shall be reimbursed to Apache only by draws on the Standby Facility which shall not be repaid by the Company unless and until all surety bonds and letters of credit included within Decommissioning Security have been fully utilized by Apache or it is determined in good faith by Apache that it will have no further drawings under such bonds and letters of credit.

Furthermore, the Company shall provide written notice to Apache of (i) each request or proposal the Company or GOM Shelf receives from a Person to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties and (ii) each prospective joint development under the Farmout Agreement.  In connection with each of the foregoing, the Company shall, and shall cause GOM Shelf to, provide Apache full and open access to all information that the Company or GOM Shelf has regarding each such opportunity.

**Section 7.07   Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser.**  The Independent Director shall be compensated for the services provided by such individual as the Independent Director of the Company in the amount as specified in Schedule B attached hereto. The Sole Manager shall be compensated for the services provided by such individual as the Sole Manager of the Company in the amount as specified in Schedule C attached hereto.  The Company shall reimburse the Independent Director and the Sole Manager for all ordinary, necessary, and direct third-party expenses incurred by the Independent Director and the Sole Manager, respectively, on behalf of the Company in carrying out the Company's business activities.  All reimbursements for expenses shall be reasonable in amount and shall not exceed $[●] in the aggregate for any Fiscal Year.  The Service Provider shall be compensated for the services provided by the Service Provider and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as shall be set forth in the applicable Service Provider Agreement.  Credit Bid Purchaser shall be compensated for its services under the Transition Services Agreement and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as set forth in the Transition Services Agreement.

**Section 7.08   No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, neither the Independent Director nor the Sole Manager will be obligated personally for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment,

decree, or order of a court, solely by reason of being or acting as the Independent Director or the Sole Manager, as applicable.

     **Section 7.09   Funding Capital Expenditures.**  Prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, if the Company receives a proposal that the Company engage in any project that is forecast to increase production or cash flow generated from the Legacy Apache Properties or the GOM Shelf Properties (excluding any proposed development activities pursuant to the Farmout Agreement), then the Sole Manager shall, through a written notice, offer to Apache the opportunity to fund the capital expenditures related to such project on behalf of the Company on terms and subject to conditions to be mutually agreed between the Company and Apache; provided that the Company acknowledges and agrees that if any such capital expenditures are funded, in whole or in part, out of funds available to be borrowed by the Company under the Standby Facility, any additional properties or assets obtained or that come into existence as a result of the use of such borrowed amounts under the Standby Facility, including, without limitation, any increased production or cash amounts generated thereby, shall be pledged as additional security under the Standby Facility Documentation.  Such written notice provided to Apache shall include all available details about such opportunity, including, but not limited to, the forecast impact on production and cash flow from the Legacy Apache Properties or the GOM Shelf Properties, as appropriate.  Apache shall have a reasonable period (not to exceed 20 Business Days) following its receipt of such written notice to provide written notice to the Company of (a) Apache's election to fund any such capital expenditures and the terms and conditions that Apache proposes to apply thereto, including whether it will fund such capital expenditure, in whole or in part, using amounts then available to be borrowed by the Company under the Standby Facility (such notice, an "**Acceptance Notice**"), (b) Apache's election not to fund any such capital expenditures (such notice, a "**Rejection Notice**"), or (c) Apache's request for additional information it requires to fully evaluate the proposed project (such notice, an "**Information Notice**").  If Apache provides a timely Acceptance Notice, then the Company and Apache shall endeavor in good faith to negotiate the proposed terms and conditions that will apply thereto, and if mutually satisfactory terms are agreed to by the Company and Apache, such terms and conditions shall be documented as promptly as practicable and the closing of such agreement and funding(s) of such capital expenditures shall occur as so agreed.  If (i) Apache timely provides to the Company a Rejection Notice, (ii) Apache timely provides an Acceptance Notice but the Company and Apache are unable within 60 Business Days after the Company's receipt of the Acceptance Notice to agree upon mutually satisfactory terms and conditions applicable thereto, or (iii) Apache does not submit a timely response to the offer, then the offer for Apache to fund the capital expenditures of the Company in the applicable project shall be deemed rejected by Apache and the Company shall have 180 days within which to obtain third-party funding for such capital expenditures subject to, and in accordance with, the other terms and conditions of this Agreement (including, without limitation, Section 7.06); provided, however, if the Company is unable to obtain such funding subject to, and in accordance with, the other terms and conditions of this Agreement within such 180-day period, then the Company must again follow the procedures in this Section 7.09 and offer Apache the opportunity to fund such expenditures.  If Apache timely provides the Company with an Information Notice, then the Company shall endeavor in good faith to promptly provide the requested information to Apache, and following Apache's receipt of such

information, Apache shall have the right to accept or reject such offer on the terms set forth in this Section 7.09.

## ARTICLE VIII
## TRANSFER

**Section 8.01   General Restrictions on Transfer.**

(a)      No Member shall Transfer all or any portion of its Membership Interest in the Company without the prior written approval of:

(i)      Apache and the Company prior to (A) the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, (B) the repayment in full of any and all amounts outstanding under the Standby Facility and the satisfaction of all obligations under the Standby Facility Documentation, (C) the payment or reimbursement by the Company or from funds available under the Decommissioning Security of the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures) and expenses incurred by Apache and its Affiliates (1) in performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties or (2) pursuant to or as may be required in connection with the Decommissioning Agreement, and (D) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required; and

(ii)      thereafter, the Company.

(b)      Subject to Section 8.01(a), each Member agrees that it will not Transfer all or any portion of its Membership Interest in the Company, and the Company agrees that it shall not issue any Membership Interests:

(i)      except as permitted under the Securities Act and other applicable federal or state securities or blue sky laws, and then, with respect to a Transfer of Membership Interests, only upon delivery to the Company of an opinion of counsel in form and substance satisfactory to the Company to the effect that such Transfer may be effected without registration under the Securities Act;

(ii)      if such Transfer or issuance would cause the Company to be considered a "publicly traded partnership" under Section 7704(b) of the Code

within the meaning of Treasury Regulations Section 1.7704-1(h)(1)(ii), including the look-through rule in Treasury Regulations Section 1.7704-1(h)(3);

(iii)     if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the BOC;

(iv)     if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes;

(v)     if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended; or

(vi)     if such Transfer or issuance would cause the assets of the Company to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974 or its accompanying regulations or result in any "prohibited transaction" thereunder involving the Company.

(c)     Any Transfer or attempted Transfer of any Membership Interest in violation of this Agreement shall be null and void *ab initio*, no such Transfer shall be recorded on the Company's books, and the purported Transferee in any such Transfer shall not be treated (and the purported Transferor shall continue to be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d)     Subject to Section 7.06(e), no Transfer of any Membership Interest to a Person not already a Member of the Company shall be deemed completed until the prospective Transferee has executed a joinder agreement in form and substance acceptable to the Company.

(e)     For the avoidance of doubt, any completed Transfer of a Membership Interest permitted by this Agreement shall be deemed a sale, transfer, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and shall not be deemed a sale, transfer, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest."

## ARTICLE IX
## EXCULPATION AND INDEMNIFICATION

**Section 9.01     Exculpation of Covered Persons.**

(a)     **Covered Persons.**  As used herein, the term "**Covered Person**" shall mean (i) each current or former Member; (ii) each current or former manager, officer, director (including the Independent Director), shareholder, partner, member, Affiliate, employee, agent, or Representative of each Member, and each of their Affiliates; and (iii) each manager (including the Sole Manager), officer (if any), employee (if any), agent, or Representative of the Company.

(b)     **Standard of Care.**   Subject to Section 9.02(a) with respect to the Independent Director, no Covered Person shall be liable to the Company or any other Covered Person for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud or willful misconduct by such Covered Person.

(c)     **Good Faith Reliance.**   A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements (including financial statements and information, opinions, reports, or statements as to the value or amount of the assets, liabilities, Net Income, or Net Losses of the Company or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) another Member; (ii) one or more officers or employees of the Company; (iii) any attorney, independent accountant, appraiser, or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person reasonably believes to be within such other Person's professional or expert competence.  The preceding sentence shall in no way limit any Person's right to rely on information to the extent provided in § 3.102 or § 3.105 of the BOC.

**Section 9.02   Liabilities and Duties of Covered Persons.**

(a)     **Limitation of Liability.**   This Agreement, unless otherwise specifically stated herein, is not intended to, and does not, create or impose any fiduciary duty on any Covered Person. Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligations of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.  Notwithstanding anything to the contrary in this Article IX, to the fullest extent permitted by Applicable Law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including its creditors, in acting or otherwise consenting to matters requiring the consent of the Independent Director in this Agreement.  Except for duties to the Company as set forth in the immediately preceding sentence (including duties to the Members and the Company's creditors solely to the extent of their respective economic interests in the Company but excluding (i) all other interests of the Members, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part) and in the last sentence of Section 7.05, the Independent Director shall not have any fiduciary duties to the Members or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.  To the fullest extent permitted by law, the Independent Director shall not be liable to the Company, the Members or any other Person bound by this Agreement for breach of contract or breach of

duties (including fiduciary duties), unless the Independent Director acted in bad faith or engaged in willful misconduct.

(b)     **Duties.**   Except as provided in Section 9.02(a) with respect to the Independent Director, whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude), the Covered Person shall be entitled to consider only such interests and factors as such Covered Person desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person.  Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

**Section 9.03   Indemnification.**

(a)     **Indemnification.**   To the fullest extent permitted by the BOC, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution, or replacement, only to the extent that such amendment, substitution, or replacement permits the Company to provide broader indemnification rights than the BOC permitted the Company to provide prior to such amendment, substitution, or replacement), the Company shall indemnify, hold harmless, defend, pay, and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines, or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "**Losses**") to which such Covered Person may become subject by reason of:

(i)      any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member, or any direct or indirect Subsidiary of the foregoing in connection with the business of the Company; or

(ii)     such Covered Person being or acting in connection with the business of the Company as a member, shareholder, Affiliate, manager, director, officer, employee, or agent of the Company, any Member, or any of their respective Affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, officer, employee, or agent of any Person including the Company;

provided, that (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud or willful and intentional misconduct, in either case as determined by a final, nonappealable order of a court of competent jurisdiction.  In connection with the foregoing, the termination of any

action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(b)     **Control of Defense.**  Upon a Covered Person's discovery of any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03, the Covered Person shall give prompt written notice to the Company of such claim, lawsuit, or proceeding, provided, that the failure of the Covered Person to provide such notice shall not relieve the Company of any indemnification obligation under this Section 9.03, unless the Company shall have been materially prejudiced thereby.  The Company shall be entitled to participate in or assume the defense of any such claim, lawsuit, or proceeding at its own expense.  After notice from the Company to the Covered Person of its election to assume the defense of any such claim, lawsuit, or proceeding, the Company shall not be liable to the Covered Person under this Agreement or otherwise for any legal or other expenses subsequently incurred by the Covered Person in connection with investigating, preparing to defend, or defending any such claim, lawsuit, or other proceeding.  If the Company does not elect (or fails to elect) to assume the defense of any such claim, lawsuit, or proceeding, the Covered Person shall have the right to assume the defense of such claim, lawsuit, or proceeding as it deems appropriate, but it shall not settle any such claim, lawsuit, or proceeding without the consent of the Company (which consent shall not be unreasonably withheld, conditioned, or delayed).

(c)     **Reimbursement.**  The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03; provided, that if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 9.03, then such Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d)     **Entitlement to Indemnity.**  The indemnification provided by this Section 9.03 shall not be deemed exclusive of any other rights to indemnification to which those seeking indemnification may be entitled under any agreement or otherwise.  The provisions of this Section 9.03 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 9.03 and shall inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

(e)     **Insurance.**  To the extent available on commercially reasonable terms, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach

by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Sole Manager may reasonably determine; provided, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person under the indemnification provisions contained herein, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses hereunder.  If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to such Covered Person by the Company in respect of such Losses.

(f)     **Funding of Indemnification Obligation.**   Notwithstanding anything contained herein to the contrary, any indemnity by the Company relating to the matters covered in this Section 9.03 shall be provided out of and to the extent of Company assets only, and no Member (unless such Member otherwise agrees in writing) shall have personal liability on account thereof or shall be required to make additional Capital Contributions to help satisfy such indemnity by the Company.

(g)     **Savings Clause.**   If this Section 9.03 or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person pursuant to this Section 9.03 to the fullest extent permitted by any applicable portion of this Section 9.03 that shall not have been invalidated and to the fullest extent permitted by Applicable Law.

(h)     **Amendment.**   The provisions of this Section 9.03 shall be a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 9.03 is in effect, on the other hand, pursuant to which the Company and each such Covered Person intend to be legally bound.  No amendment, modification, or repeal of this Section 9.03 that adversely affects the rights of a Covered Person to indemnification for Losses incurred or relating to a state of facts existing prior to such amendment, modification or repeal shall apply in such a way as to eliminate or reduce such Covered Person's entitlement to indemnification for such Losses without the Covered Person's prior written consent.

**Section 9.04   Survival.**  The provisions of this ARTICLE IX shall survive the dissolution, liquidation, winding up, and termination of the Company.

### ARTICLE X
### ACCOUNTING; TAX MATTERS

**Section 10.01 Financial Statements and Other Information.**   The Company shall furnish to each Member and Apache the following reports:

(a)     **Annual Financial Statements.**   As soon as available, and in any event within 105 days after the end of each Fiscal Year, its audited consolidated balance sheet and related consolidated statements of operations, Members' equity and cash flows as of the end of and for such year prepared under AICPA auditing standards, setting forth in each case in comparative form the figures for the previous Fiscal Year, all reported on by

independent public accountants acceptable to each Member and Apache (without a "going concern" or like qualification, commentary, or exception (except to the extent that any such qualification, commentary, or exception expressly indicates that after giving effect to the exclusion of asset retirement obligations reflected on the accompanying balance sheet, there would be no such qualification, commentary, or exception), and without any qualification or exception as to the scope of such audit) to the effect that such consolidated financial statements present fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied;

(b)     **Quarterly Financial Statements.**  As soon as available, and in any event within 50 days after the end of each quarterly accounting period in each Fiscal Year (including the last fiscal quarter of the Fiscal Year), its unaudited consolidated balance sheet and related unaudited consolidated statements of operations, Members' equity and cash flows as of the end of and for such fiscal quarter and the then elapsed portion of the current Fiscal Year, setting forth in each case in comparative form the figures for the corresponding period or periods of the previous Fiscal Year or as at the end of such period or periods, all in reasonable detail and certified by the Company as presenting fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes; and

(c)     **Monthly Operating Data.**  As soon as available, but in no event later than 15 Business Days after the end of each calendar month, a statement in a form reasonably satisfactory to each Member and Apache showing all operating data for the Company and GOM Shelf, including operating expenses and revenue for each of the Company and GOM Shelf, for such calendar month.

(d)     **Operating Budget.**  As soon as available, but in any event no later than 60 days after the end of each Fiscal Year of the Company, a detailed operating budget for the Fiscal Year, forecasting revenue, operating costs, and capital expenses for each fiscal quarter in form reasonably satisfactory to each Member and Apache.

(e)     **Additional Information.**   Promptly following any reasonable request therefor, such other information regarding the operations, business affairs and financial condition of each of the Company and GOM Shelf, as any Member or Apache may reasonably request, including, without limitation, decommissioning cost estimates and calculations.

**Section 10.02 Inspection Rights.**  Upon reasonable notice from a Member or Apache, the Company shall afford each Member or Apache and their respective Representatives access during normal business hours to (a) the Company's properties, offices, plants, and other facilities; (b) the corporate, financial, and similar records, reports, and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management letters and communications with Members or the Sole Manager or Independent Director, and to

permit each Member or Apache and their respective Representatives to examine such documents and make copies thereof; and (c) any officers, senior employees, and public accountants of the Company, and to afford each Member or Apache and their respective Representatives the opportunity to discuss and advise on the affairs, finances, and accounts of the Company with such officers, senior employees, and public accountants (and the Company hereby authorizes said accountants to discuss with such Member or Apache and their respective Representatives such affairs, finances, and accounts).

**Section 10.03 Income Tax Status.**  It is the intent of the Company and the Members that the Company shall be treated as a partnership or a disregarded entity for U.S., federal, state, and local income tax purposes.  Neither the Company nor any Member shall make an election for the Company to be classified as other than a partnership or a disregarded entity pursuant to Treasury Regulations Section 301.7701-3.

**Section 10.04 Tax Matters Representative.**

(a)    **Appointment.**  The Members hereby appoint the Sole Manager as "partnership representative" as provided in Code Section 6223(a) (the "**Tax Matters Representative**").   If any state or local tax law provides for a tax matters partner/partnership representative or Person having similar rights, powers, authority or obligations, the person designated as the Tax Matters Representative shall also serve in such capacity.  To the extent required by Applicable Law, if the Tax Matters Representative is an entity, it shall appoint a "designated individual" to act on its behalf.  The Tax Matters Representative can be removed at any time by a vote of Members holding a majority of the Membership Interests, and shall resign if it is no longer a Member.  In the event of the resignation or removal of the Tax Matters Representative, Members holding a majority of the Membership Interests shall select a replacement Tax Matters Representative.

(b)    **Tax Examinations and Audits.**  The Tax Matters Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by Taxing Authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.  The Tax Matters Representative shall promptly notify the Members in writing of the commencement of any tax audit of the Company, upon receipt of a tax assessment and upon receipt of a notice of final partnership adjustment, and shall keep the Members reasonably informed of the status of any tax audit and resulting administrative and judicial proceedings.  Without the consent of Members holding a majority of the Membership Interests, the Tax Matters Representative shall not extend the statute of limitations, file a request for administrative adjustment, file suit relating to any Company tax refund or deficiency or enter into any settlement agreement relating to items of income, gain, loss or deduction of the Company with any Taxing Authority.

(c)    **US Federal Tax Proceedings.**  The Members acknowledge that the Company may elect the application of Section 6226 of the Code.  This acknowledgement applies to each Member whether or not the Member owns an interest in the Company in

both the reviewed year and the year of the tax adjustment. In the event that the Company elects the application of Section 6226 of the Code, the Members agree and covenant to take into account and report to the Internal Revenue Service (or any other applicable taxing authority) any adjustment to their tax items for the reviewed year of which they are notified by the Company in a written statement, in the manner provided in Section 6226(b) of the Code, whether or not the Member owns any interest in the Company at such time. Any Member that fails to report its share of such adjustments on its tax return, agrees to indemnify and hold harmless the Company and the Tax Matters Representative from and against any and all losses, costs, liabilities and expenses related to taxes (including penalties and interest) imposed on the Company as a result of the Member's inaction. If the Company is required to pay the assessment of the imputed underpayment under Section 6225(a)(1) of the Code or similar provisions of state law, any taxes, penalties, and interest payable by the Company shall be treated as attributable to the Members, and, to the extent possible, the Tax Matters Representative shall allocate the burden of any such amounts to those Members to whom such amounts are reasonably attributable taking into account the Member's or former Member's allocable share of taxable income or loss with respect to the Fiscal Year to which such assessment pertains and adjustments that may have been made in computing the imputed underpayment. To the extent that any such amount is payable by the Company, at the option of the Tax Matters Representative, such amount shall be recoverable from such Member as provided in Section 6.03(c). The provisions contained in this Section 10.04 shall survive the dissolution, termination or liquidation of the Company, the withdrawal of any Member or the transfer of any Member's interest in the Company and apply to unadmitted assignees of a Member Interest who may be considered current or former partners of the Company for federal tax purposes.

(d)     **Tax Returns.**  Each Member agrees that such Member shall not treat any Company item inconsistently on such Member's federal, state, foreign or other income tax return with the treatment of the item on the Company's return.

(e)     **Section 754 Election.**  The Tax Matters Representative will make an election under Code Section 754, if the Company is to be taxed as a partnership for federal tax purposes.

(f)     **Indemnification**.  The Company shall defend, indemnify, and hold harmless the Tax Matters Representative against any and all liabilities sustained as a result of any act or decision concerning Company tax matters and within the scope of responsibilities as Tax Matters Representative, so long as such act or decision was done or made in good faith and does not constitute gross negligence or willful misconduct.

**Section 10.05 Tax Returns.**  At the expense of the Company, the Sole Manager (or any officer of the Company that it may designate pursuant to this Agreement) shall endeavor to cause the preparation and timely filing (including extensions) of all tax returns required to be filed by the Company pursuant to the Code as well as all other required tax returns in each jurisdiction in which the Company owns property or does business. As soon as reasonably possible after the end of each Fiscal Year, the Sole Manager or any designated officer of the Company, as applicable, will cause to be delivered to each Person who was a Member at any time during such Fiscal Year,

41

IRS Schedule K-1 to Form 1065, if applicable, and such other information with respect to the Company as may be necessary for the preparation of such Person's federal, state, and local income tax returns for such Fiscal Year.

**Section 10.06  Company Funds.**  All funds of the Company shall be deposited in its name, or in such name as may be designated by the Sole Manager, in such checking, savings, or other accounts, or held in its name in the form of such other investments as shall be designated by the Sole Manager.  The funds of the Company shall not be commingled with the funds of any other Person.  All withdrawals of such deposits or liquidations of such investments by the Company shall be made exclusively upon the signature or signatures of the Sole Manager, or any officer or officers of the Company that may be designated by the Sole Manager, as applicable, pursuant to this Agreement.

<div align="center">

**ARTICLE XI**
**WINDING UP AND TERMINATION**

</div>

**Section 11.01  Events Requiring Winding Up.**  The Company shall begin to wind up its business and affairs only upon the occurrence of any of the following events (in each case, subject to the applicable provisions of Section 7.06):

> (a)    upon the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties;

> (b)    the occurrence of a nonwaivable event under the terms of the BOC which requires the winding up of the Company after its termination unless a Continuance occurs in respect of such event; or

> (c)    the entry of a judicial decree ordering winding up and termination under § 11.314 of the BOC in proceedings of which Apache has been given notice and an opportunity to participate.

Notwithstanding the occurrence of an event referenced in Section 11.01(b), if the Company is permitted prior to the termination of its existence in accordance with the BOC to revoke a winding up upon the occurrence of such event and each of Apache, the Sole Manager, and the Independent Director provide their prior written consent to such revocation, then, to the extent so permitted under the BOC and in the manner provided therein, the Company's existence shall be continued (the revocation of such a winding up and continuance of the Company, a "**Continuance**").

**Section 11.02  Effectiveness of Termination.**  The Company shall begin to wind up its business and affairs as soon as reasonably practicable upon the occurrence of an event described in Section 11.01 (if such event has not been revoked or cancelled), but the Company shall not terminate until the winding up of the Company has been completed, the assets of the Company have been distributed as provided in Section 11.03, and the Certificate of Termination shall have been filed as provided in Section 11.04.

Section 11.03 **Liquidation.** If the Company is to be terminated pursuant to Section 11.01, the Company shall be liquidated and its business and affairs wound up in accordance with the BOC and the following provisions:

(a)     **Liquidator.**  The Sole Manager shall act as liquidator to wind up the Company (the "**Liquidator**"); provided, however, that if there is then a vacancy in the position of the Sole Manager or the Sole Manager is not willing to act as the Liquidator, the Members shall appoint a person to act as the Liquidator.  The Liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b)     **Accounting.**  As promptly as possible after the event requiring winding up and again after final liquidation, the Liquidator shall cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities, and operations through the last day of the calendar month in which such event occurs or the final liquidation is completed, as applicable.

(c)     **Notice.**  The Liquidator shall deliver to each known claimant of the Company the notice required by § 11.052 of the BOC.

(d)     **Distribution of Proceeds.**  The Liquidator shall liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

(i)     First, to the payment of all of the Company's debts and liabilities to its creditors (including Members, if applicable) and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

(ii)     Second, to Trust A until the aggregate funds in Trust A are in an amount equal to 125% of the then Remaining Decommissioning (as defined in the Decommissioning Agreement);

(iii)     Third, to the establishment of and additions to other reserves that are determined by the Liquidator to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

(iv)     Fourth, to the Members in accordance with the positive balances in their respective Capital Accounts, as determined after taking into account all Capital Account adjustments for the taxable year of the Company during which the liquidation of the Company occurs.

(e)     **Discretion of Liquidator.**  Notwithstanding the provisions of Section 11.03(d) that require the liquidation of the assets of the Company, but subject to the order of priorities set forth in Section 11.03(d), if upon winding up of the Company the Liquidator reasonably determines that an immediate sale of part or all of the Company's assets would be impractical or could cause undue loss to the Members, the Liquidator may defer the liquidation of any assets except those necessary to satisfy Company liabilities,

43

Trust A, and reserves, and may, upon approval of holders of a majority of the outstanding Membership Interests, distribute to the Members, in lieu of cash, as tenants in common and in accordance with the provisions of Section 11.03(d), undivided interests in such Company assets as the Liquidator deems not suitable for liquidation.  Any such distribution in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operating of such properties at such time.  For purposes of any such distribution, any property to be distributed will be valued at its Fair Market Value.

**Section 11.04 Certificate of Termination.**  Upon completion of the distribution of the assets of the Company as provided in Section 11.03(d) hereof, the Liquidator or other such officer shall execute and cause to be filed a Certificate of Termination in the State of Texas and shall cause the cancellation of all qualifications and registrations of the Company as a foreign limited liability company in jurisdictions other than the State of Texas and shall take such other actions as may be necessary to terminate the Company.  Upon acceptance of the Certificate of Termination by the Texas Secretary of State, the Company shall be terminated.

**Section 11.05 Survival of Rights, Duties, and Obligations.**  Dissolution, liquidation, winding up, or termination of the Company for any reason shall not release any party from any Loss that at the time of such dissolution, liquidation, winding up, or termination already had accrued to any other party or thereafter may accrue in respect of any act or omission prior to such dissolution, liquidation, winding up, or termination.  For the avoidance of doubt, none of the foregoing shall replace, diminish, or otherwise adversely affect any Member's right to indemnification pursuant to Section 9.03.

**Section 11.06 Recourse for Claims.**  Each Member shall look solely to the assets of the Company for all distributions with respect to the Company, such Member's Capital Account, and such Member's share of Net Income, Net Loss, and other items of income, gain, loss, and deduction, and shall have no recourse therefor (upon termination or otherwise) against the Liquidator, the Independent Director, or any other Member.

## ARTICLE XII
## MISCELLANEOUS

**Section 12.01 Expenses.**  Except as otherwise expressly provided herein, in the Restructuring Support Agreement, or in the Confirmation Order, all costs and expenses, including fees and disbursements of counsel, financial advisors, and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.  In addition to the immediately preceding sentence and the payment or reimbursement to Apache and its Affiliates for the costs and expenses of performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties as provided in the final paragraph of Section 7.06, from time to time as Apache evaluates any matter specified in Section 7.06 for which its consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, the Company shall reimburse Apache for all costs and expenses incurred in connection therewith, with such

reimbursement to be made regardless of whether Apache consents to such matter or provides an Acceptance Notice, Rejection Notice, or Information Notice to the Company with respect to such proposal.  Apache's costs shall include, without limitation, third-party costs and the reimbursable costs of compensation and benefits of employees of Apache and its Affiliates who devote productive time to evaluating any matter specified in Section 7.06 for which the consent of Apache is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, which costs shall be determined in good faith by Apache based on the time spent by such employees in conducting such evaluation. The reimbursement to be made pursuant to the immediately preceding sentences shall be made within 30 days of the Company's receipt of a statement from Apache specifying the costs to be so reimbursed.

**Section 12.02 Further Assurances.**   In connection with this Agreement and the transactions contemplated hereby, the Company and each Member hereby agrees, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments, conveyances, and assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

**Section 12.03 Confidentiality.**

(a)     Each Member acknowledges that, during the term of this Agreement, it will have access to and become acquainted with trade secrets, proprietary information, and confidential information belonging to the Company and its Affiliates that are not generally known to the public, including, but not limited to, information concerning business plans, financial statements, and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists, or other business documents that the Company treats as confidential, in any format whatsoever (including oral, written, electronic, or any other form or medium) (collectively, "**Confidential Information**").  In addition, each Member acknowledges that: (i) the Company has invested, and continues to invest, substantial time, expense, and specialized knowledge in developing its Confidential Information; (ii) the Confidential Information provides the Company with a competitive advantage over others in the marketplace; and (iii) the Company would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public.  Without limiting the applicability of any other agreement to which any Member is subject, no Member shall, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for personal, commercial, or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware.  Each Member in possession of Confidential Information shall take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b)     Nothing contained in Section 12.03(a) shall prevent any Member from disclosing Confidential Information: (i) upon the order of any court or administrative agency; (ii) upon the request or demand of any regulatory agency or authority having jurisdiction over such Member; (iii) to the extent compelled by legal process or required or

requested pursuant to subpoena, interrogatories, or other discovery requests; (iv) to the extent necessary in connection with the exercise of any remedy hereunder; (v) to the other Members; or (vi) to such Member's Representatives who, in the reasonable judgment of such Member, need to know such Confidential Information and agree to be bound by the provisions of this Section 12.03 as if a Member; or (vii) to any potential Transferee in connection with a proposed Transfer of Membership Interests from such Member, as long as such potential Transferee agrees in writing to be bound by the provisions of this Section 12.03 as if a Member before receiving such Confidential Information; provided, that in the case of clause (i), (ii), or (iii), such Member shall notify the Company and other Members of the proposed disclosure as far in advance of such disclosure as practicable (but in no event make any such disclosure before notifying the Company and other Members) and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Company, when and if available.

(c)     The restrictions of Section 12.03(a) shall not apply to Confidential Information that: (i) is or becomes generally available to the public other than as a result of a disclosure by a Member in violation of this Agreement; (ii) is or has been independently developed or conceived by such Member without use of Confidential Information; or (iii) becomes available to such Member or any of its Representatives on a non-confidential basis from a source other than the Company, the other Members, or any of their respective Representatives, provided, that such source is not known by the receiving Member to be bound by a confidentiality agreement regarding the Company.

(d)     The obligations of each Member under this Section 12.03 shall survive for so long as such Member remains a Member, and for three years following the earlier of (i) termination, dissolution, liquidation, and winding up of the Company; (ii) the withdrawal of such Member from the Company; or (iii) such Member's Transfer of its Membership Interests; provided that with respect to Confidential Information that constitutes a trade secret under Applicable Law, the obligations of each Member under this Section 12.03 shall survive until, if ever, such Confidential Information loses its trade secret protection other than due, directly or indirectly, to an act or omission of the Member.

**Section 12.04 Notices.**  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:

(a)     when delivered by hand (with written confirmation of receipt);

(b)     when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or

(c)     on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 12.04):

46

| | |
|---|---|
| **If to the Company:** | Fieldwood Energy I LLC<br>[COMPANY ADDRESS]<br>Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |
| with a copy to:<br><br>(which shall not<br>constitute notice) | Hunton Andrews Kurth LLP<br>600 Travis Street<br>Suite 4200<br>Houston, TX 77002<br>Attention: G. Michael O'Leary |
| **If to the Independent<br>Director:** | [INDEPENDENT DIRECTOR ADDRESS]<br>Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |
| with a copy to:<br><br>(which shall not<br>constitute notice) | Hunton Andrews Kurth LLP<br>600 Travis Street<br>Suite 4200<br>Houston, TX 77002<br>Attention: G. Michael O'Leary |
| **If to a Member**: | To the Member's respective mailing address as set forth on the Members Schedule. |

**Section 12.05 Headings.**  The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 12.06 Severability.**  If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.  Except as provided in Section 9.03(g), upon such determination that any term or other provision is invalid, illegal, or unenforceable, this Agreement shall be modified automatically so as to effect the original intent of the parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible, legal, and enforceable.

**Section 12.07 Entire Agreement.**  This Agreement, together with the Certificate of Formation and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 12.08 Successors and Assigns.**  Subject to the restrictions on Transfers set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

**Section 12.09 No Third-Party Beneficiaries.**  Except (a) with respect to certain rights reserved to Apache as set forth in this Agreement, which shall be for the benefit of and enforceable by Apache, and (b) as provided in ARTICLE IX, which shall be for the benefit of and enforceable by Covered Persons as described therein, this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 12.10 Amendment.**  Subject to Sections 2.02 and 7.06(i), no provision of this Agreement may be amended or modified except by an instrument in writing executed by the Company and the Members holding a majority of the Membership Interests.  Any such written amendment or modification will be binding upon the Company and each Member. Notwithstanding the foregoing, amendments to the Members Schedule following any new issuance, redemption, repurchase, or Transfer of Membership Interests in accordance with this Agreement may be made by the Independent Director without the consent of or execution by the Members.

**Section 12.11 Waiver.**  No waiver by any party or Apache of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving or Apache, respectively.  No waiver by any party or Apache shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.  For the avoidance of doubt, nothing contained in this Section 12.11 shall diminish any of the explicit and implicit waivers described in this Agreement.

**Section 12.12 Governing Law.**  All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas.

**Section 12.13  Submission to Jurisdiction.**  The parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Harris County and in Houston, Texas.  Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding that is brought in any such court has been brought in an inconvenient forum.  Service of process, summons, notice, or other document by registered mail to the address set forth in Section 12.04 shall be effective service of process for any suit, action, or other proceeding brought in any such court.

**Section 12.14  Waiver of Jury Trial**.  EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 12.15  Equitable Remedies.**  Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties or Apache, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto and Apache shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

**Section 12.16  Attorney's Fees.**  In the event that any party or third-party beneficiary hereto institutes any legal suit, action, or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party or third-party beneficiary in the suit, action, or proceeding shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by it in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

**Section 12.17  Remedies Cumulative.**  The rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except to the extent expressly provided in Section 9.02 to the contrary.

**Section 12.18 Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by email or other means of Electronic Transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**The Company:**

FIELDWOOD ENERGY I LLC,
a Texas limited liability company

By:_____
[NAME]
[TITLE]

**The Initial Member:**

[_____]
a [_____]

By:_____
[NAME]
[TITLE]

**EXHIBIT A**

**FORM OF TRANSITION SERVICES AGREEMENT**

**SCHEDULE A**

**MEMBERS SCHEDULE**

| Member Name, and Address | Capital Contribution | Membership Interest |
|---|---|---|
| [_____]<br>[ADDRESS] | $[AMOUNT] | 100% |
| Total: | $[AMOUNT] | 100% |

**SCHEDULE B**

**INDEPENDENT DIRECTOR'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE C**

**SOLE MANAGER'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE D**

**ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND EMPLOYEES**

I.      DIRECT CHARGES

1.      LABOR

A.      Salaries and wages, including incentive compensation programs as set forth in COPAS MFI-37 ("Chargeability of Incentive Compensation Programs"), for:

(1)      Apache's field employees directly employed on-site in the conduct of plugging and abandonment and decommissioning activities with respect to the applicable Legacy Apache Property or the GOM Shelf Property, and

(2)      Apache's employees providing First Level Supervision.

Charges for Apache's employees identified in Section I.1.A may be made based on the employee's actual salaries and wages, or in lieu thereof, a day rate representing Apache's average salaries and wages of the employee's specific job category.

Charges for personnel chargeable under this Section I.1.A who are foreign nationals shall not exceed comparable compensation paid to an equivalent U.S. employee pursuant to this Section I.1.

B.      Apache's cost of holiday, vacation, sickness, and disability benefits, and other customary allowances paid to employees whose salaries and wages are chargeable under Section I.1.A, excluding severance payments or other termination allowances. Such costs under this I.1.B may be charged on a "when and as-paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable under Section I.1.A. If percentage assessment is used, the rate shall be based on Apache's cost experience.

C.      Expenditures or contributions made pursuant to assessments imposed by governmental authority that are applicable to costs chargeable under Sections I.1.A and B.

D.      Personal expenses of personnel whose salaries and wages are chargeable under Section I.1.A when the expenses are incurred in connection with directly chargeable activities.

E.      Apache's cost of established plans for employee benefits, as described in COPAS MFI-27 ("Employee Benefits Chargeable to Joint Operations and Subject to Percentage Limitation"), applicable to Apache's labor costs chargeable under Sections I.1.A and B based on Apache's actual cost not to exceed 40%.

F.      Award payments to employees, in accordance with COPAS MFI-49 ("Awards to Employees and Contractors") for personnel whose salaries and wages are chargeable under Section I.1.A.

## II. OVERHEAD

As compensation for costs not specifically identified as chargeable pursuant to Section I (Direct Charges), Apache shall be reimbursed in accordance with this Section II.

Functions included in the overhead rates regardless of whether performed by Apache, Apache's Affiliates or third parties and regardless of location, shall include, but not be limited to, costs and expenses of:

- design and drafting
- inventory costs
- procurement
- administration
- accounting and auditing
- human resources
- management
- supervision not directly charged under Section I.1 (Labor)
- in-house legal services
- taxation
- preparation and monitoring of permits and certifications; preparing regulatory reports; appearances before or meetings with governmental agencies or other authorities having jurisdiction over the applicable Legacy Apache Property or GOM Shelf Property, other than on-site inspections.

Overhead charges shall include the salaries or wages plus applicable payroll burdens, benefits, and personal expenses of personnel performing overhead functions, as well as office and other related expenses of overhead functions.

To compensate Apache for overhead costs incurred in connection with any particular plugging and abandonment or decommissioning project conducted on any applicable Legacy Apache Property or GOM Shelf Property, the following overhead rates shall be applied to those costs incurred in the performance of such plugging, abandonment, and decommissioning activities:

(1)     5% of total costs if such costs are less than $100,000; plus

(2)     3% of total costs in excess of $100,000 but less or equal to $1,000,000; plus

(3)     2% of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project

**<u>Exhibit A2</u>**

**FWE III Organizational Documents**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee:  $300**



This space reserved for office use.

### Certificate of Formation
### Limited Liability Company

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☐  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

**OR**

☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

| | | | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C.  The business address of the registered agent and the registered office address is:

| | | TX | |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

## Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☐  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| **GOVERNING PERSON 1** |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) |

IF INDIVIDUAL

| | | | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

OR

IF ORGANIZATION

*Organization Name*
**ADDRESS**

| | | | | |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| GOVERNING PERSON 2 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)

    **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

**OR**

    **IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

| GOVERNING PERSON 3 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)

    **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

**OR**

    **IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

## Organizer

The name and address of the organizer:

_____

*Name*

_____

*Street or Mailing Address*                                      *City*                          *State*     *Zip Code*

## Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment.  The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date:  _____

                                        _____

                                        Signature of organizer

                                        _____

                                        Printed or typed name of organizer

Form 205                                        6

## SECOND AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## FIELDWOOD ENERGY III LLC

**THIS SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMEN**T (this "**Agreement**") of Fieldwood Energy III LLC, a Texas limited liability company (the "**Company**") is entered into as of [\_\_\_], 2021, by Fieldwood Energy Inc., a Delaware corporation, pursuant to and in accordance with the Texas Business Organization Code, as amended from time to time (the "**Act**").

## RECITALS:

**WHEREAS**, the Company was formed as a Delaware limited liability company under the name "Fieldwood Energy LLC" by the filing, on November 5, 2012 (the "**Formation Date**"), of a Certificate of Formation under and pursuant to the Delaware Limited Liability Company Act (such Certificate of Formation, as amended or restated from time to time in accordance with this Agreement, is referred to herein as the "**Original Certificate**");

**WHEREAS**, the sole initial member of the Company entered into that certain Limited Liability Company Agreement of the Company on November 5, 2012;

**WHEREAS**, on December 20, 2012, the sole initial member assigned his membership interests in the Company to Fieldwood Holdings LLC, a Delaware limited liability company, and Fieldwood Energy Inc. (f/k/a Fieldwood Managing Member LLC) ("**Sole Member**"), a Delaware corporation, and such members entered into that certain Amended and Restated Limited Liability Company Agreement of the Company (as amended pursuant to that certain Amendment No. 1 to the Amended and Restated Agreement, the "**Amended and Restated Agreement**");

**WHEREAS**, on [\_\_\_], 2021, the Company converted into a Texas limited liability company pursuant to (i) a plan of conversion and the filing of a Certificate of Conversion from a Delaware Limited Liability Company to a Non-Delaware Entity Pursuant to Section 18-216 of the Limited Liability Company Act with the Delaware Secretary of State, (ii) the adoption of a plan of conversion and the filing of a Certificate of Conversion pursuant to Sections 10.103 and 10.102 of the Act with the Secretary of State of Texas and (iii) the filing a Certificate of Formation with the Secretary of State of Texas (the "**Conversion Documents**");

**WHEREAS**, on [\_\_\_], 2021, the Company effected a divisional merger pursuant to the laws of the State of Texas in connection with which the Company maintained its separate existence and continued as a surviving entity under the name "Fieldwood Energy III LLC" (the "**Initial Divisive Merger**");

**WHEREAS**, on [\_\_\_], 2021, the Company effected a second divisional merger pursuant to the laws of the State of Texas in connection with which the Company maintained its separate existence under the name "Fieldwood Energy III LLC";

**WHEREAS**, on the date hereof all equity in the Company is held by the Sole Member;

WHEREAS, each of the actions described in the preceding recitals as having taken place on [____], 2021, were taken pursuant to the [*Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* ("**Plan**") at Docket No. 1284], which was confirmed by the United States Bankruptcy Court for the Southern District of Texas pursuant to an order entered in Case No. 20-33948 on [____], 2021, at Docket No. [____], pursuant to which David M. Dunn was appointed as plan administrator ("**Plan Administrator**"); and

WHEREAS, the Sole Member desires to amend and restate the Amended and Restated Agreement in its entirety by entering into this Agreement and hereby does agree that the membership and management of the Company shall be governed by the terms set forth herein.

<div align="center">

**ARTICLE I**
**Formation of Company**

</div>

**Section 1.1.** **Formation**. The Company was formed as a Delaware limited liability company by the filing of the Original Certificate in the office of the Secretary of State of the State of Delaware under and pursuant to the provisions of the Delaware Limited Liability Company Act under the name Fieldwood Energy LLC. The Company converted to a Texas limited liability company by the filing of the Conversion Documents in the offices of the Secretary of State of the State of Delaware and Secretary of State of the State of Texas, as applicable. In connection with the Initial Divisive Merger, the Company's name was changed to "Fieldwood Energy III LLC". Except as expressly provided herein to the contrary, the rights and obligations of the Members (as defined herein) and the administration, dissolution and termination of the Company shall be governed by the Act.

**Section 1.2.** **Name**. The name of the Company is "Fieldwood Energy III LLC." The business of the Company shall be conducted in the name of the Company. If the applicable law of a jurisdiction where the Company does business requires the Company to do business under a different name, the Manager (as defined below in <u>Section 4.2</u>) shall choose another name to do business in such jurisdiction. In such a case, the business of the Company in such jurisdiction may be conducted under such other name or names as the Manager may select.

**Section 1.3.** **Purpose**. The purposes for which the Company is organized is to engage in or perform any and all activities that may be lawfully conducted by a limited liability company under the Act. In carrying out the business and purposes of the Company, the Company may act directly or indirectly through one or more entities.

**Section 1.4.** **Registered Office and Registered Agent; Principal Place of Business**.

(a)     The registered office of the Company required by the Act to be maintained in the State of Texas is the initial registered office named in the Certificate or such other office (which need not be a place of business of the Company) as the Manager may designate from time to time in the manner provided by law. The registered agent of the Company in the State of Texas is the initial registered agent named in the Certificate or such other person or persons as the Manager may designate from time to time.

<div align="center">2</div>

(b)     The principal place of business of the Company is [2000 W. Sam Houston Pkwy S., Suite 1200, Houston, Texas 77042], or such other location as the Manager may designated from time to time.

**Section 1.5.   Foreign Qualification**.  Prior to the Company's conducting business in any jurisdiction other than Texas, the Company shall comply with all requirements necessary to qualify the Company as a foreign limited liability company in such jurisdiction. At the request of the Manager or an officer of the Company, each Member (as defined herein) agrees to execute, acknowledge, swear to, and deliver all certificates and other instruments conforming with this Agreement that are necessary or appropriate to qualify, continue, and terminate the Company as a foreign limited liability company in all such jurisdictions in which the Company may conduct business.

**Section 1.6.   Term**.  The existence of the Company commenced upon the filing of the Original Certificate with the Secretary of State of Delaware and shall continue in existence until it is dissolved and terminated in accordance with the terms hereof.

## ARTICLE II
## Members

**Section 2.1.   Member**.  The name and address of each Member of the Company and each such Member's respective interest in the Company (the "**Membership Interest**") are set forth in Schedule I.

**Section 2.2.   Additional Members**.   Additional persons may be admitted to the Company as members as provided more specifically herein (with the Sole Member and each additional person admitted to the Company as a member each, individually, a "**Member**" and, collectively, the "**Members**").

**Section 2.3.   Liability to Third Parties**.  No Member or any officer, director, manager or partner of such Member, solely by reason of being a Member, shall be liable for the debts, obligations or liabilities of the Company, including under a judgment decree or order of a court.

**Section 2.4.   Withdrawal**.  Except as provided herein, no Member shall have the right to withdraw, resign or retire from the Company as a Member.

**Section 2.5.   Members Have No Agency Authority**.  Except as expressly provided in this Agreement, no Member (in its capacity as a member of the Company) shall have any agency authority on behalf of the Company.

## ARTICLE III
## Capital Contributions

**Section 3.1.   Contributions**.  The Sole Member has made the Capital Contributions as referenced in the capital account of the Sole Member maintained pursuant to Section 7.2.

**Section 3.2.   Additional Capital Contributions**.  The Manager, in its sole discretion, at any time and from time to time, may request that the Members make additional Capital

Contributions to the capital of the Company, but in no event shall the Members be required to make additional Capital Contributions.

Section 3.3.    **Advances by Members**.  If the Company does not have sufficient cash to pay its obligations or is otherwise in need of working capital, any Member that may agree to do so may advance all or part of the needed funds to or on behalf of the Company. An advance described in this Section 3.3 constitutes a loan from such Member to the Company and shall bear interest from the date of the advance until the date of payment at a rate per annum agreed to by the Manager and such Member and shall not constitute a part of such Member's Capital Contribution.

Section 3.4.    **Withdrawal and Return of Capital Contribution**.  No Member shall be entitled to (a) withdraw from the Company, (b) transfer or assign the Member's interest in the Company except in accordance with Article V, or (c) the return of the Member's Capital Contributions except to the extent, if any, that distributions made pursuant to the express terms of this Agreement may be considered as such by law or as expressly provided for in this Agreement. No interest shall accrue on any Capital Contributions.

## ARTICLE IV
## Management

Section 4.1.    **Power and Authority of Manager**.  The Manager shall have full, exclusive and unilateral power and authority on behalf of the Company to manage, control, administer and operate the properties, business and affairs of the Company in accordance with this Agreement and to do or cause to be done any and all acts necessary or incidental thereto, and the scope of such power and authority shall encompass all matters in any way connected with such business or incident thereto.

Section 4.2.    **Appointment of Manager**.[1]  In accordance with Section 5.9(c)(ii) of the Plan, the Plan Administrator shall be the sole manager and officer of the Company (the "**Manager**") and shall remain the Manager until the termination of his service as Plan Administrator pursuant to Section 9 of that certain Plan Administrator Agreement entered into in conjunction with the Plan (the "**Plan Administrator Agreement**"). Except in the case of termination of the Plan Administrator's services pursuant to Section 9(i) of the Plan Administrator Agreement, upon the resignation of the Plan Administrator as Manager of the Company, the Plan Administrator (or his successor or transferee) shall designate a successor to serve as Manager, who shall be the successor plan administrator pursuant to the Plan Administrator Agreement.

Section 4.3.    **Reliance by Third Parties**.  Any third party dealing with the Company may rely on the authority of the Manager in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action is taken in accordance with the provisions of this Agreement.

Section 4.4.    **Outside Activities**.  It is understood that the Manager currently engages in and possesses, and it is agreed that the Manager may continue to engage in and possess, interests in other business ventures of any and every type and description, independently or with others,

---

[1] [NTD: This section was revised to be consistent with the Plan's provisions re management of the Post-Effective Date Debtors.]

directly or indirectly, that may compete with the business of the Company, and neither the Company, nor any other Member shall, by virtue of this Agreement, have any right, title or interest in or to such present or future independent ventures.

Section 4.5.   **Reimbursement of Manager**.   All costs and expenses incurred by the Manager in organizing the Company and in managing and conducting the business and affairs of the Company, including expenses incurred in providing or obtaining such professional, technical, administrative, and other services and advice as the Manager may deem necessary or desirable, shall be paid or reimbursed by the Company as a Company expense subject to any applicable restrictions contained in contracts to which the Company is party.

Section 4.6.   **Lack of Authority**.   No Member has the authority or power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company.

Section 4.7.   **Investment Decision**.   Each Member acknowledges that it has, independently and without reliance upon the Manager or any other Member and based on such documents and information as it has deemed appropriate, made its own investment analysis and decision to enter into this Agreement.

Section 4.8.   **Tax Elections and Status**.   The Manager shall make such tax elections on behalf of the Company as it shall deem appropriate in its sole discretion.

## ARTICLE V
## Rights and Liability of Members

Section 5.1.   **Rights of Members**.   Each Member shall have the right to: (a) have the Company books and records kept at the principal United States office of the Company and at all reasonable times to inspect and copy any of them at the sole expense of such Member; (b) have on demand true and full information of all things affecting the Company and a formal account of Company affairs whenever circumstances render it just and reasonable; and (c) exercise all rights of a member under the Act (except to the extent otherwise specifically provided herein).

Section 5.2.   **Liability of Members**.   No Member shall be liable for the debts, liabilities, contracts or other obligations of the Company except (i) to the extent that capital contributions of the Members are utilized for the purpose of discharging any such debts, liabilities, contracts or other obligations of the Company, and (ii) to the extent of such Member's share of the assets (including undistributed revenues) of the Company.

Section 5.3.   **Restrictions on Transfer**.   No Member may transfer any of its Membership Interest in the Company to any person without the consent of the Manager.

## ARTICLE VI
## Allocations and Distributions

Section 6.1.   **Allocations of Profits and Losses**.   Except as may otherwise be required by applicable treasury regulations (including treasury regulations applicable to allocations attributable to Company indebtedness), all profits and losses and all related items of income, gain,

loss, deduction, and credit of the Company shall be allocated, charged, or credited among the Members in proportion to their respective Membership Interests.

Section 6.2.    **Distributions**.  The Company may distribute funds to the Members at such times and in such amounts as the Manager shall determine to be appropriate, consistent with the applicable duties owed by the Manager to the Members under the Act. Any such distributions shall be made to the Members in proportion to their respective Membership Interests at the time of the distribution with no priority as to any Member. In determining the amounts to be distributed pursuant to the foregoing sentence, the Manager shall give due regard to the current and reasonably foreseeable obligations of the Company, taking into account working capital needs, any restrictions imposed by contracts to which the Company is party, any capital requirements and any contingent liabilities in connection with any of the Company's business or investment activities.

Section 6.3.    **Liquidating Distributions**.  Distributions made in the course of liquidating the Company shall be made in accordance with Section 8.2.

<h2 align="center">ARTICLE VII<br>Accounting; Banking</h2>

Section 7.1.    **Books and Records**.  The Manager shall maintain or cause the Company to maintain books and records as required by, and in accordance with the Act. Such books shall be kept at the principal office of the Company and shall be maintained in accordance with the terms of this Agreement. The fiscal year of the Company shall be the calendar year, and the Manager shall keep the books of account of the Company on such basis.

Section 7.2.    **Capital Accounts**.  A capital account shall be established and maintained for each Member to which shall be credited each Member's Capital Contributions when made and each Member's share of Company profits and against which shall be charged each Member's share of Company losses and any distributions made to such Member. Each Capital Account shall be kept by the Manager in the manner required under Treasury regulation section 1.704-l(b)(2)(iv).

Section 7.3.    **Bank Accounts**.  The Manager shall cause one or more accounts to be maintained in a bank (or banks), which accounts shall be used for the payment of the expenditures incurred by the Company in connection with the business of the Company, and in which shall be deposited any and all receipts of the Company. The Manager shall determine the number of and the persons who will be authorized as signatories on each such bank account. The Manager may invest the Company funds in such money market accounts or other investments as the Manager shall determine to be necessary or appropriate.

<h2 align="center">ARTICLE VIII<br>Dissolution, Liquidation and Termination</h2>

Section 8.1.    **Dissolution**.  The Company shall be dissolved upon the occurrence of any of the following:

(a)    The consent in writing of all the Members.

(b)    Entry of a decree of judicial dissolution of the Company under § 11.051 of the Act.

(c)      the occurrence of any other event that under the Act causes the dissolution of a limited liability company.

**Section 8.2.    Liquidation and Termination**.  Upon dissolution of the Company, the Manager shall appoint in writing one or more liquidators (which at the Manager's option, may be the Manager) who shall have full authority to wind up the affairs of the Company and make final distribution as provided herein. The liquidator shall continue to operate the Company properties with all of the power and authority of Manager. The steps to be accomplished by the liquidator are as follows:

(a)      As promptly as possible after dissolution, the liquidator shall cause a proper accounting to be made of the Company's assets, liabilities and operations through the end of the day on which the dissolution occurs or the final liquidation is completed, as appropriate.

(b)      The liquidator shall pay all of the debts and liabilities of the Company (including all expenses incurred in liquidation) or otherwise make adequate provision therefor (including without limitation the establishment of a cash escrow fund for contingent liabilities in such amount and for such term as the liquidator may reasonably determine). After making payment or provision for all debts and liabilities of the Company, all remaining assets shall be distributed to the Members. If there are two or more Members at such time, each Member's Capital Account shall first be adjusted by (i) assuming the sale of all remaining assets of the Company for cash at their respective fair market values (as determined by an appraiser selected by the liquidator) as of the date of dissolution of the Company and (ii) debiting or crediting each Member's Capital Account with its respective share of the hypothetical gains or losses resulting from such assumed sales in the same manner such Capital Account would be debited or credited for gains or losses on actual sales of such assets. The liquidator shall then by payment of cash or property (valued as of the date of dissolution of the Company at its fair market value by the appraiser selected in the manner provided above) distribute to the Members such amounts as are required to pay the positive balances of their respective Capital Accounts. Such a distribution shall be in cash or in kind as determined by the liquidator.

(c)      Except as expressly provided herein, the liquidator shall comply with any applicable requirements of the Act, including, without limitation Sections 18-803 and 18-804 thereof, and all other applicable laws pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

(d)      Notwithstanding any provision in this Agreement to the contrary, no Member shall be obligated to restore a deficit balance in his or her Capital Account at any time.

(e)      Upon completion of the distribution of Company assets as provided herein, the Company shall be terminated and the Manager shall cause a Certificate of Cancellation to be prepared and filed with the Secretary of State of Texas, and take such other actions as may be necessary to terminate the Company.

The distribution of cash and/or property to the Members in accordance with the provisions of this Section 8.2 shall constitute a complete return to the Members of their respective Membership Interests and all Company property.

**Section 8.3.** **Bankruptcy of a Member**. The bankruptcy of a Member shall not cause such Member to cease to be a Member of the Company, and upon the occurrence of such an event, the Company shall continue without dissolution.

### ARTICLE IX
### Indemnification

**Section 9.1.** **Right to Indemnification.** Subject to the limitations and conditions as provided in this Article, each person who was or is made a party or is threatened to be made a party to or is involved in any legal or administrative proceeding, or any appeal in such a proceeding, or any dispute, inquiry or investigation that could lead to such a proceeding, by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a Member, Manager, employee, director, officer, representative, agent, consultant  or contractor of the Company, or while a Member, Manager, employee, director, officer, representative, agent, consultant   or contractor of the Company, is or was serving at the request of the Company as a member, manager, partner, director, officer, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise shall be indemnified by the Company to the fullest extent permitted by the Act, as the same exists or may hereinafter be amended (but, in the case of any such amendment, only to the extent such amendment permits the Company to provide broader indemnification rights than said law permitted the Company to provide prior to such amendment) against judgments, penalties (including excise and similar taxes and punitive damages), fines, settlements and expenses (including, without limitation, attorney's fees) actually incurred by such person in connection with such proceeding, and indemnification under this Article shall continue as to a person who has ceased to serve in the capacity which initially entitled such person to indemnity hereunder. The rights granted pursuant to this Article shall be deemed contract rights, and no amendments, modifications or repeal of this Article shall have the effect of limiting or denying any such rights with respect to actions taken or proceeding arising prior to any such amendment, modification or repeal. It is expressly acknowledged that the indemnification provided in this Article could involve indemnification for negligence or under theories of strict liability.

**Section 9.2.** **Insurance.** The Company may purchase and maintain insurance, at its expense, to protect itself and any person who is a Member or was serving as a Member, Manager, officer, employee or agent of the Company or is or was serving at the request of the Company as a member, manager, director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise against any expense, liability or loss, whether or not the Company would have the power to indemnify such person against such expense, liability or loss under this Article.

### ARTICLE X
### Miscellaneous

**Section 10.1.** **Applicable Law**.  This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law.

112806173V.8

**Section 10.2.  Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the Manager, Members and their respective permitted successors and assigns.

**Section 10.3.  Amendment or Modification**.  This Agreement may be amended or modified from time to time only by a written instrument executed by the Members.

**Section 10.4.  Non-voting Equity Securities**.  The Company shall not issue any non-voting equity securities to the extent prohibited by Section 1123(a)(6) of Title 11 of the United States Code (the "**Bankruptcy Code**") as in effect on the date of this Agreement; provided, however, that the foregoing restriction (i) shall have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company, (ii) shall not have any further force or effect beyond that required under Section 1123(a)(6), and (iii) may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

112806173V.8

**IN WITNESS WHEREOF**, the Sole Member of the Company has executed this Agreement as of the day and year first above written.

<div align="center">

**SOLE MEMBER:**

</div>

FIELDWOOD ENERGY INC.

By:_____
       Name:  David M. Dunn, solely in his capacity as
       Title:  President and Chief Executive Officer

---

[2] [NTD: Section 5.9(c)(i) of the Plan provides that current officers will cease to serve as officers upon the Effective Date.]

**Schedule I**

| Member | Address | Membership Interest |
|--------|---------|---------------------|
| Fieldwood Energy Inc. | 2000 Sam Houston Parkway South Suite 1200 Houston, Texas 77042 | 100% |

[Schedule I to Second Amended and Restated Limited Liability Company Agreement of Fieldwood Energy III LLC]

## <u>Exhibit A3</u>

**FWE IV Organizational Documents**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee:  $300**



This space reserved for office use.

## Certificate of Formation
## Limited Liability Company

### Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

### Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete <u>either</u> A or B and complete C.)

☐  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

**OR**

☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

_First Name_ _M.I._ _Last Name_ _Suffix_

C.  The business address of the registered agent and the registered office address is:

TX
_Street Address_ _City_ _State_ _Zip Code_

### Article 3—Governing Authority
(Select and complete <u>either</u> A or B and provide the name and address of each governing person.)

☐  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| **GOVERNING PERSON 1** |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) |
|     **IF INDIVIDUAL** |
|     _First Name_     _M.I._     _Last Name_     _Suffix_ |
|     **OR** |
|     **IF ORGANIZATION** |
|     _Organization Name_ |
| **ADDRESS** |
| _Street or Mailing Address_     _City_     _State_   _Country_   _Zip Code_ |

| GOVERNING PERSON 2 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

**OR**

IF ORGANIZATION

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

| GOVERNING PERSON 3 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

**OR**

IF ORGANIZATION

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

Form 205

## Organizer

The name and address of the organizer:

_____
*Name*

_____
*Street or Mailing Address*                          *City*                          *State*    *Zip Code*

## Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____
|                                                                       |
|                                                                       |
|_____|

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment.  The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date:  _____

                                  _____
                                  Signature of organizer

                                  _____
                                  Printed or typed name of organizer

Form 205

**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**FIELDWOOD ENERGY IV LLC**

*(a Texas Limited Liability Company)*

**[●], 2021**

**THE MEMBERSHIP INTERESTS REFERENCED IN THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY APPLICABLE STATE SECURITIES LAWS.  SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AS WELL AS COMPLIANCE WITH THE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY THAT ARE SET FORTH HEREIN.**

## TABLE OF CONTENTS

**ARTICLE I DEFINITIONS** ......................................................................................................1

    **Section 1.01**    **Definitions**.................................................................1
    **Section 1.02.**    **Interpretation**.............................................................12

**ARTICLE II ORGANIZATION** ..............................................................................................13

    **Section 2.01**    **Formation**..................................................................13
    **Section 2.02**    **Name** ........................................................................13
    **Section 2.03**    **Principal Office** ........................................................13
    **Section 2.04**    **Registered Office; Registered Agent.**........................13
    **Section 2.05**    **Purposes; Powers**......................................................14
    **Section 2.06**    **Term** .........................................................................14

**ARTICLE III CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS**............................14

    **Section 3.01**    **Tax Partnership Provisions** .....................................14
    **Section 3.02**    **Initial Capital Contributions** ..................................14
    **Section 3.03**    **Additional Capital Contributions** ...........................14
    **Section 3.04**    **Maintenance of Capital Accounts** ...........................14
    **Section 3.05**    **Succession Upon Transfer** ......................................15
    **Section 3.06**    **Negative Capital Accounts** ......................................15
    **Section 3.07**    **No Withdrawals from Capital Accounts** ..................15
    **Section 3.08**    **Treatment of Loans from Members** .........................15
    **Section 3.09**    **Modifications** ...........................................................16

**ARTICLE IV MEMBERS** .......................................................................................................16

    **Section 4.01**    **No Personal Liability**...............................................16
    **Section 4.02**    **No Withdrawal** .........................................................16
    **Section 4.03**    **No Interest in Company Property**.............................16
    **Section 4.04**    **Certification of Membership Interests**.....................16
    **Section 4.05**    **Meetings of Members** ..............................................17
    **Section 4.06**    **Action Without Meeting**..........................................18
    **Section 4.07**    **Power of Members** ...................................................18
    **Section 4.08**    **Similar or Competitive Activities; Business Opportunities**...............18

**ARTICLE V ALLOCATIONS**.................................................................................................19

    **Section 5.01**    **Tax Partnership Provisions** .....................................19
    **Section 5.02**    **Allocation of Net Income and Net Loss** ..................19
    **Section 5.03**    **Regulatory and Special Allocations** ........................19

WEIL:\97901822\22\45327.0007

| | | |
|---|---|---|
| Section 5.04 | **Tax Allocations**. | 20 |
| Section 5.05 | **Allocations in Respect of Transferred Membership Interests** | 22 |

**ARTICLE VI DISTRIBUTIONS** .......................................................**22**

| | | |
|---|---|---|
| Section 6.01 | **General**. | 22 |
| Section 6.02 | **Tax Advances**. | 23 |
| Section 6.03 | **Tax Withholding; Withholding Advances** | 23 |
| Section 6.04 | **Distributions in Kind**. | 24 |

**ARTICLE VII MANAGEMENT** .......................................................**25**

| | | |
|---|---|---|
| Section 7.01 | **Management of the Company** | 25 |
| Section 7.02 | **Sole Manager** | 25 |
| Section 7.03 | **Material Project Contracts; Net Profit Interest** | 25 |
| Section 7.04 | **Actions Requiring CUSA Consent** | 26 |
| Section 7.05 | **No Compensation of the Sole Manager** | 27 |
| Section 7.06 | **No Personal Liability** | 27 |

**ARTICLE VIII TRANSFER** .......................................................**28**

| | | |
|---|---|---|
| Section 8.01 | **General Restrictions on Transfer**. | 28 |

**ARTICLE IX EXCULPATION AND INDEMNIFICATION** .......................................................**29**

| | | |
|---|---|---|
| Section 9.01 | **Exculpation of Covered Persons**. | 29 |
| Section 9.02 | **Liabilities and Duties of Covered Persons**. | 30 |
| Section 9.03 | **Indemnification**. | 30 |
| Section 9.04 | **Survival** | 32 |

**ARTICLE X ACCOUNTING; TAX MATTERS** .......................................................**33**

| | | |
|---|---|---|
| Section 10.01 | **Financial Statements and Other Information** | 33 |
| Section 10.02 | **Inspection Rights** | 33 |
| Section 10.03 | **Income Tax Status** | 34 |
| Section 10.04 | **Tax Matters Representative**. | 34 |
| Section 10.05 | **Tax Returns** | 35 |
| Section 10.06 | **Company Funds** | 36 |

**ARTICLE XI WINDING UP AND TERMINATION** .......................................................**36**

| | | |
|---|---|---|
| Section 11.01 | **Events Requiring Winding Up** | 36 |
| Section 11.02 | **Effectiveness of Termination** | 36 |
| Section 11.03 | **Liquidation** | 37 |

WEIL:\97901822\22\45327.0007

| | | |
|---|---|---|
| **Section 11.04** | **Certificate of Termination** | 38 |
| **Section 11.05** | **Survival of Rights, Duties, and Obligations** | 38 |
| **Section 11.06** | **Recourse for Claims** | 38 |

**ARTICLE XII MISCELLANEOUS** .......................................................................................**38**

| | | |
|---|---|---|
| **Section 12.01** | **Expenses** | 38 |
| **Section 12.02** | **Further Assurances** | 38 |
| **Section 12.03** | **Confidentiality** | 39 |
| **Section 12.04** | **Notices** | 40 |
| **Section 12.05** | **Headings** | 41 |
| **Section 12.06** | **Severability** | 41 |
| **Section 12.07** | **Entire Agreement** | 41 |
| **Section 12.08** | **Successors and Assigns** | 41 |
| **Section 12.09** | **No Third-Party Beneficiaries** | 41 |
| **Section 12.10** | **Amendment** | 42 |
| **Section 12.11** | **Waiver** | 42 |
| **Section 12.12** | **Governing Law** | 42 |
| **Section 12.13** | **Submission to Jurisdiction** | 42 |
| **Section 12.14** | **Waiver of Jury Trial** | 42 |
| **Section 12.15** | **Equitable Remedies** | 43 |
| **Section 12.16** | **Attorney's Fees** | 43 |
| **Section 12.17** | **Remedies Cumulative** | 43 |
| **Section 12.18** | **Counterparts** | 43 |

**SCHEDULE A MEMBERS SCHEDULE**            A-1

WEIL:\97901822\22\45327.0007

## LIMITED LIABILITY COMPANY AGREEMENT OF
## FIELDWOOD ENERGY IV LLC

This Limited Liability Company Agreement of Fieldwood Energy IV LLC, a Texas limited liability company (the "**Company**"), dated as of [●], 2021 (this "**Agreement**"), is entered into by and among the Company, the Initial Member executing this Agreement as of the date hereof, and each other Person who after the date hereof becomes a Member of the Company and becomes a party to this Agreement by executing a joinder agreement in form and substance acceptable to the Company.

### RECITALS

**WHEREAS,** the Company was formed under the laws of the State of Texas by the filing of a Certificate of Formation with the Secretary of State of the State of Texas on [●], 2021 (the "**Certificate of Formation**") for the purposes set forth in Section 2.05 of this Agreement;

**WHEREAS,** pursuant to and in accordance with the Confirmation Order and the Term Sheet, respectively, and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company owns the FWE IV Assets, subject to the operational liabilities in connection therewith allocated to the Company in the merger, including the FWE IV Obligations; and

**WHEREAS,** the Initial Member wishes to enter into this Agreement to set forth the terms and conditions governing the ownership, operation and management of the Company.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

**Section 1.01   Definitions.**  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 1.01:

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)   crediting to such Capital Account any amount that such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i); and

(b)   debiting to such Capital Account the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

"**Adjusted Taxable Income**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year (or

portion thereof) with respect to the Membership Interest held by such Member means the federal taxable income allocated by the Company to the Member with respect to its Membership Interest (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided, that such taxable income shall be computed (i) minus any excess taxable loss of the Company for any prior period allocable to such Member with respect to its Membership Interest that were not previously taken into account for purposes of determining such Member's Adjusted Taxable Income in a prior Fiscal Year to the extent such loss would be available under the Code to offset income of the Member (or, as appropriate, the direct or indirect owners of the Member) determined as if the income and loss from the Company were the only income and loss of the Member (or, as appropriate, the direct or indirect owners of the Member) in such Fiscal Year and all prior Fiscal Years, and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person. For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise; and the terms "controlling" and "controlled" shall have correlative meanings. For the avoidance of doubt, neither CUSA nor any of its Subsidiaries nor Credit Bid Purchaser nor any of its Subsidiaries control the Company and none of them shall constitute an Affiliate of the Company.

"**Agreement**" has the meaning set forth in the Preamble.

"**Applicable Law**" means all applicable provisions of (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

"**Bankruptcy**" means (i) the filing by the Company of a petition under the Bankruptcy Code seeking to adjudicate the Company a bankrupt or an insolvent or otherwise commencing, authorizing, or acquiescing in the commencement of a proceeding or cause of action seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, composition, or other relief with respect to itself or its debts under any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official over it or any substantial part of its property, or consenting to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it, or taking any corporate or similar official action to authorize any of the foregoing; (ii) the making of an assignment or any general arrangement for the benefit of creditors; or (iii) the Company's filing an answer or other pleading admitting or failing to contest the allegations of a petition filed against it in any proceeding of the foregoing nature, or taking any other action to authorize any of the actions set forth above.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended.

"**BOC**" means the Texas Business Organizations Code, as amended and in effect from time to time.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation shall be (a) if such difference is being eliminated by use of the remedial method under Treasury Regulations Section 1.704-3(d), the amount of book basis recovered for such period under the rules prescribed by Treasury Regulations Section 1.704-3(d)(2), or (b) if the remedial method is not used, an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Book Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Sole Manager in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a)     the initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b)     immediately before the distribution by the Company of any Company asset to a Member, the Book Value of such asset shall be adjusted to its gross Fair Market Value as of the date of such distribution;

(c)     the Book Value of all Company assets may, in the sole discretion of the Sole Manager, be adjusted to equal their respective gross Fair Market Values, as reasonably determined by the Sole Manager, as of the following times:

(i)     the acquisition of an additional Membership Interest in the Company by a new or existing Member in consideration for more than a *de minimis* Capital Contribution;

(ii)     the distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest in the Company; and

(iii)     the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g);

3

(d)     the Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m); provided, that Book Values shall not be adjusted pursuant to this paragraph (d) to the extent that an adjustment pursuant to paragraph (c) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this paragraph (d); and

(e)     if the Book Value of a Company asset has been determined pursuant to paragraph (a) or adjusted pursuant to paragraphs (c) or (d) above, such Book Value shall thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the State of Texas are authorized or required to close.

"**Capital Account**" has the meaning set forth in Section 3.04.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property contributed to the Company by such Member.

"**Certificate of Formation**" has the meaning set forth in the Recitals.

"**Certificate of Merger**" means that certain Certificate of Merger filed by Fieldwood III with the Secretary of State of the State of Texas on [●], 2021.

"**Certificate of Termination**" means a certificate to be filed upon completion of the winding up and liquidation of the Company as set forth in Section 11.04, which certificate shall be in the form required by § 11.101 of the BOC.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the Preamble.

"**Company Minimum Gain**" means "partnership minimum gain" as defined in Treasury Regulations Section 1.704-2(b)(2), substituting the term "Company" for the term "partnership" as the context requires.

"**Confidential Information**" has the meaning set forth in Section 12.03(a).

"**Confirmation Order**" means the confirmation order entered in Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC, *et al*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

"**Continuance**" has the meaning set forth in Section 11.01.

"**Contract Operating Agreement**" means that certain Contract Operating Agreement of even date herewith by and among Credit Bid Purchaser and the Company, of which CUSA is an express third party beneficiary.

"**Covered Person**" has the meaning set forth in Section 9.01(a).

"**Credit Bid Purchaser**" means Mako Buyer LLC, a Delaware limited liability company.

"**CUSA**" means Chevron U.S.A. Inc., a Pennsylvania corporation, and its successors or assigns.

"**Deepwater Assets Decommissioning Funding Agreement**" means that certain Decommissioning Funding Agreement, of event date herewith, by and between CUSA and Credit Bid Purchaser.

"**Depletable Property**" means each separate oil and gas property as defined in Section 614 of the Code.

"**Divisive Merger Documents**" means the Certificate of Merger, Plan of Merger, Certificate of Formation and other documents filed by or on behalf of Fieldwood III with respect to the Company with the Texas Secretary of State related to the divisive merger of Fieldwood III into Fieldwood III (the surviving entity) and the newly-created Company.

"**Electronic Transmission**" means any form of communication, including communication by use of or participation in one or more electronic networks or databases, not directly involving the physical transmission of paper that creates a record that may be retained, retrieved, and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

"**Escrow Account**" means **[bank information for the Escrow Account to come]**.

"**Escrow Agreement**" means that certain Escrow Agreement of even date herewith between U.S. Bank National Association, as escrow agent, Fieldwood III, the Company and Credit Bid Purchaser.

"**Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Sole Manager.  In making such estimate, the Sole Manager shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as the Sole Manager reasonably determines are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"**Excess Amount**" has the meaning set forth in Section 6.02(c).

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Sole Manager on such factors as the Sole Manager, in the exercise of his or her reasonable business judgment, considers relevant.

"**Fieldwood**" means Fieldwood Energy LLC, a Texas limited liability company, and its successors and assigns (excluding, for the avoidance of doubt, the Company).

"**Fieldwood III**" means Fieldwood Energy III LLC, a Texas limited liability company, and its successors and assigns (excluding, for the avoidance of doubt, the Company).

"**Final Completion**" has the meaning ascribed to such term in the Turnkey Removal Agreement.

"**Fiscal Year**" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year shall be the period that conforms to its taxable year.

"**FWE IV Assets**" has the meaning set forth in the Plan of Merger.

"**FWE IV Obligations**" has the meaning set forth in the Plan of Merger.

"**GAAP**" means generally accepted accounting principles in the United States of America in effect from time to time; provided, that, notwithstanding any term or provision contained in this Agreement, GAAP will be deemed for all purposes hereof to treat leases that would have not been considered to be indebtedness in accordance with GAAP as in effect on December 31, 2017 (whether such leases were in effect on such date or are entered into thereafter) in a manner consistent with the treatment of such leases under GAAP as in effect on December 31, 2017, notwithstanding any modification or interpretative changes thereto or implementations of any such modifications or interpretative changes that may have occurred thereafter.

"**Governmental Authority**" means any court, tribunal, arbitrator, body, agency, division, board, bureau, commission or any other similar entity exercising executive, legislative, judicial, regulatory, or administrative functions of government, or any subdivision of any of the foregoing, whether federal, state, county, municipal, tribal, local or foreign, in each case with competent jurisdiction.

"**Guarantee Obligation**" means, as to any Person (the "guaranteeing Person"), any obligation of (i) the guaranteeing Person or (ii) another Person (including any bank under any letter of credit), if to induce the creation of such obligation of such other Person the guaranteeing Person has issued a reimbursement, counterindemnity or similar obligation, in either case guaranteeing or in effect guaranteeing any Indebtedness, leases, dividends or other obligations (the "primary obligations") of any other third Person (the "primary obligor") in any manner, whether directly or indirectly, including any obligation of the guaranteeing Person, whether or not contingent, (A) to purchase any such primary obligation or any property constituting direct or indirect security therefor, (B) to advance or supply funds (1) for the purchase or payment of any such primary obligation or (2) to maintain working capital or equity capital of the primary obligor or otherwise

WEIL:\97901822\22\45327.0007

to maintain the net worth or solvency of the primary obligor, (C) to purchase property, securities or services, in each case, primarily for the purpose of assuring the owner of any such primary obligation of the ability of the primary obligor to make payment of such primary obligation or (D) otherwise to assure or hold harmless the owner of any such primary obligation against loss in respect thereof; provided, however, that the term Guarantee Obligation shall not include endorsements of instruments for deposit or collection in the ordinary course of business.

"**Indebtedness**" means, with respect to any Person at any date, without duplication, all (i) indebtedness of such Person for borrowed money; (ii) obligations of such Person for the deferred purchase price of property or services (other than trade payables incurred in the ordinary course of such Person's business); (iii) obligations of such Person evidenced by notes, bonds, debentures or other similar instruments; (iv) indebtedness created or arising under any conditional sale or other title retention agreement with respect to property acquired by such Person (even though the rights and remedies of the seller or lender under such agreement in the event of default are limited to repossession or sale of such property); (v) capital lease obligations of such Person; (vi) obligations of such Person, contingent or otherwise, as an account party or applicant under acceptance, letter of credit or similar facilities; (vii) obligations of such Person, contingent or otherwise, to purchase, redeem, retire or otherwise acquire for value any capital stock of such Person; (viii) Guarantee Obligations of such Person in respect of obligations of the kind referred to in clauses (i) through (vii) above; and (ix) obligations of the kind referred to in clauses (i) through (viii) above secured by (or for which the holder of such obligation has an existing right, contingent or otherwise, to be secured by) any Lien on property (including accounts and contract rights) owned by such Person, whether or not such Person has assumed or become liable for the payment of such obligation.

"**Initial Member**" has the meaning set forth in the term "Member".

"**Joint Development Agreement**" means that certain Joint Development Agreement of even date herewith by and between the Company and Credit Bid Purchaser.

"**Lien**" means any mortgage, pledge, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever.

"**Liquidator**" has the meaning set forth in Section 11.03(a).

"**Losses**" has the meaning set forth in Section 9.03(a).

"**Material Project Contracts**" means, collectively, the Omnibus Agreement, the NPI Conveyance, the Contract Operating Agreement, the Turnkey Removal Agreement, the Transition Services Agreement, the Joint Development Agreement, the Deepwater Assets Decommissioning Funding Agreement and the SEMS Bridging Agreement, and each a "**Material Project Contract**".

"**Member**" means (a) the Person identified on the Members Schedule as of the date hereof as a Member and who has executed this Agreement or a counterpart thereof (each, an "**Initial Member**"); and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the BOC, in each case so long as such Person is shown on the

Company's books and records as an owner of Membership Interests. The Members shall constitute "members" (as that term is defined in the BOC) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulations Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Members Schedule**" has the meaning set forth in Section 3.02.

"**Membership Interest**" means an interest in the Company owned by a Member, including such Member's right (a) to its distributive share of Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company; (b) to its distributive share of the assets of the Company; (c) to vote on, consent to, or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the BOC. The Membership Interest of each Member shall be expressed as a percentage interest and shall be as set forth on the Members Schedule.

"**Net Income**" and "**Net Loss**" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or taxable loss), but with the following adjustments:

(a)   any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), shall be added to such taxable income or taxable loss, notwithstanding that such income is not includable in gross income;

(b)   any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulations Section 1.704-1(b)(2)(iv)(I) as items described in Code Section 705(a)(2)(B), shall be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(c)   any gain or loss (including Simulated Gain or Loss) resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

WEIL:\97901822\22\45327.0007

(d)     any items of depreciation, amortization, and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis shall be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g);

(e)     if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment shall be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss;

(f)     to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulations Section 1.704 1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis); and

(g)     any items which are specially allocated pursuant to Section 5.03 hereof shall not be taken into account in computing Net Income or Net Loss.  The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to Section 5.03 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (a) through (f) above.

"**Nonrecourse Deductions**" has the meaning set forth in Treasury Regulations Section 1.704-2(b).

"**Nonrecourse Liability**" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"**NPI Conveyance**" means that certain Conveyance of Net Profits Overriding Royalty Interest from Company to the Escrow Account.

"**NPI Payment**" has the meaning attributed to the term "NPI Payment" under the NPI Conveyance.

"**Omnibus Agreement**" means that certain Omnibus Agreement of even date herewith by and between the Company, CUSA and Credit Bid Purchaser.

"**Person**" means any individual, corporation, partnership, limited liability company, association, joint stock company, trust, estate, joint venture, firm, association, unincorporated organization, Governmental Authority, or any other entity.

"**Plan of Merger**" means the Agreement and Plan of Merger of Fieldwood Energy III LLC into Fieldwood Energy IV LLC and Fieldwood Energy III LLC, dated as of [●], 2021, and adopted by Fieldwood Energy III LLC.

"**Plan of Reorganization**" means the plan of reorganization of Fieldwood that was included in, and was confirmed by, the Confirmation Order.

"**Production Period**" has the meaning attributed to the term "Production Period" under the NPI Conveyance.

"**Quarterly Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any calendar quarter of a Fiscal Year means the excess, if any of: (a) the product of (i) a quarter (1/4) in the case of the first calendar quarter of the Fiscal Year, half (1/2) in the case of the second calendar quarter of the Fiscal Year, three-quarters (3/4) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year; over (b) all distributions previously made during such Fiscal Year to such Member.

"**Regulatory Allocations**" has the meaning set forth in Section 5.03(f).

"**Reimbursable Costs**" has the meaning attributed to such term in the Contract Operating Agreement.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors or lenders, counsel, accountants, and other agents of such Person.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations thereunder, which shall be in effect at the time.

"**SEMS Bridging Agreement**" means that certain SEMS Bridging Agreement & Interface Document, dated of even date herewith by and between Credit Bid Purchaser and the Company.

"**Shortfall Amount**" has the meaning set forth in Section 6.02(b).

"**Simulated Basis**" means, with respect to each Depletable Property, the Book Value of such property.

"**Simulated Depletion**" means, with respect to each Depletable Property, a depletion allowance computed in accordance with U.S. federal income tax principles (as if the Simulated Basis of the property were its adjusted tax basis and using simulated cost depletion) and in the manner specified in Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2); provided that the Simulated Depletion with respect to a Depletable Property shall in no event exceed the Simulated Basis of such Depletable Property.

"**Simulated Gain or Loss**" means the simulated gain or loss computed with respect to a sale or other disposition of any Depletable Property pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2).

"**Sole Manager**" has the meaning set forth in Section 7.01.

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or managers or comparable positions are owned, directly or indirectly, by the first Person.

"**Tax Advance**" has the meaning set forth in Section 6.02(a).

"**Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means, subject to (i) any restrictions in the Company's then-applicable debt financing arrangements, if any, and (ii) the Sole Manager's good faith determination to retain any other amounts necessary to satisfy obligations of the Company that are reasonably expect to be due and payable during the 90 days following the date of determination (i) the product of (a) the Tax Rate for such Fiscal Year (but not to exceed the Tax Rate applicable to C-corporations for such Fiscal Year) and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Membership Interest or (ii) the actual amount of U.S. federal, state and local income tax (including any state or local tax imposed in lieu of an income tax) paid by such Member with respect to such Fiscal Year in respect of the taxable income allocated to the Member by the Company, after taking into account all deductions available to such Member from all sources in excess of such Member's income from other sources; *provided*, *however*, that if at any time Fieldwood Energy Inc. has cash tax liability (including an estimated tax liability) on account of items of income or gain of the Company without sufficient cash on hand from a corresponding cash distribution in respect of such income or gain (all as reasonably determined by Fieldwood Energy Inc.), then the Tax Amount shall be increased such that the Company timely distributes cash sufficient to pay such tax liability.

"**Tax Matters Representative**" has the meaning set forth in Section 10.04(a).

"**Tax Rate**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any period, means the highest effective marginal combined federal, state, and local tax rate applicable to an individual residing in Houston, Texas (or, if higher, a corporation doing business in Houston, Texas), taking into account (a) the character (for example, long-term or short-term capital gain, ordinary, or exempt) of the applicable income and (b) if applicable, the deduction under IRC Section 199A.

"**Taxing Authority**" has the meaning set forth in Section 6.03(b).

"**Term Sheet**" means that certain term sheet, dated March 22, 2021, by and between Fieldwood, on the one hand, and CUSA, on the other hand.

"**Third Party Payment**" has the meaning attributed to such term in the Contract Operating Agreement.

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, convey, gift, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise (including by merger or division), or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, conveyance, gift, pledge, encumbrance, hypothecation, or similar disposition of, any Membership Interests owned by a Person or any interest (including a beneficial interest) in any Membership Interests owned by

11

a Person. "**Transfer**" when used as a noun shall have a correlative meaning. "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Transition Services Agreement**" means the Neptune Spar Transition Services Agreement of even date herewith by and between Credit Bid Purchaser and Noble Energy, Inc.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Turnkey Removal Agreement**" means that certain Turnkey Removal Agreement of even date herewith by and among Credit Bid Purchaser, CUSA and the Company.

"**Withholding Advances**" has the meaning set forth in Section 6.03(b).

**Section 1.02.    Interpretation**.  For purposes of this Agreement: (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole.

The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms.

Unless the context otherwise requires, references herein: (x) to Articles, Sections, Exhibits, and Schedules mean the Articles and Sections of, and Exhibits and Schedules attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

The Exhibits and Schedules referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

WEIL:\97901822\22\45327.0007

**ARTICLE II**
**ORGANIZATION**

**Section 2.01    Formation**.

(a)    The Company was formed on [●], 2021, pursuant to the provisions of the BOC, upon the filing and acceptance of the Certificate of Formation with the Secretary of State of the State of Texas.

(b)    This Agreement shall constitute the "company agreement" (as that term is used in the BOC) of the Company.  The rights, powers, duties, obligations, and liabilities of the Members and the Sole Manager shall be determined pursuant to the BOC and this Agreement.  To the extent that the rights, powers, duties, obligations, and liabilities of any Members or the Sole Manager are different by reason of any provision of this Agreement than they would be under the BOC in the absence of such provision, this Agreement shall, to the extent permitted by the BOC, control.

**Section 2.02    Name.** The name of the Company is "Fieldwood Energy IV LLC" or such other name or names as may be designated by the Sole Manager; provided, that the name shall always contain the words "Limited Liability Company" or "Limited Company" or an abbreviation of one of those phrases.  Amendments to the Certificate of Formation or this Agreement to reflect any such name change may be made by the Sole Manager without the consent of the Members. The Sole Manager shall give prompt notice to the Members and CUSA of any change to the name of the Company and any related amendment to the Certificate of Formation or this Agreement. The Company may conduct business under any assumed or fictitious name required by Applicable Law or otherwise deemed desirable by the Sole Manager.

**Section 2.03    Principal Office.** The principal office of the Company is located at 2000 W. Sam Houston Parkway S., Suite 1200, Houston, Texas 77042, or such other place as may from time to time be determined by the Sole Manager.  The Sole Manager shall give prompt notice of any such change to each of the Members and CUSA.

**Section 2.04    Registered Office; Registered Agent.**

(a)    The registered office of the Company shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

(b)    The registered agent for service of process on the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

**Section 2.05   Purposes; Powers**.

(a)      The purposes of the Company are to (i) engage in the Plugging and Abandonment and decommissioning of the FWE IV Assets, as such terms are defined in the Plan of Merger, (ii) the operation of the FWE IV Assets prior to their Plugging and Abandonment and decommissioning, (iii) such other activities as are approved pursuant to the terms of this Agreement, including subject to Section 7.04, and (iv) to engage in any and all activities necessary or incidental to the foregoing purposes.

(b)      The Company shall have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the BOC.

**Section 2.06   Term.**  The term of the Company commenced on the date the Certificate of Formation was filed with the Secretary of State of the State of Texas and shall continue in existence perpetually until the Company is terminated in accordance with the provisions of this Agreement.

## ARTICLE III
## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 3.01   Tax Partnership Provisions.**  This ARTICLE III is intended to apply only if the Company becomes a partnership for U.S. federal income tax purposes.

**Section 3.02   Initial Capital Contributions.**  Contemporaneously with the execution of this Agreement, and pursuant to the Plan of Reorganization and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company holds the properties and assets identified as the FWE IV Assets, which shall, together with the amount of any expenses paid pursuant to Section 12.01, constitute the aggregate Capital Contributions made by the Initial Member.  The Initial Member shall own Membership Interests in the amount set forth opposite such Member's name on Schedule A attached hereto (the "**Members Schedule**").  From and after the date of this Agreement, the Sole Manager shall maintain and update the Members Schedule upon the issuance or Transfer of any Membership Interests to any new or existing Member in accordance with this Agreement.

**Section 3.03   Additional Capital Contributions.**  No Member shall be required to make any additional Capital Contributions to the Company.  Any future Capital Contributions made by any Member shall only be made with the consent of the Sole Manager.  To the extent that a Member makes an additional Capital Contribution to the Company, the Sole Manager shall revise the Members Schedule to reflect an increase in the Membership Interest of the contributing Member that fairly and equitably reflects the value of its additional Capital Contribution in relation to the aggregate amount of all Capital Contributions made by the Members.

**Section 3.04   Maintenance of Capital Accounts.**  The Company shall establish and maintain for each Member a separate capital account (a "**Capital Account**") on its books and records in accordance with this Section 3.04.  Each Capital Account shall be established and maintained in accordance with the following provisions:

(a)      Each Member's Capital Account shall be increased by the amount of:

14

(i)    such Member's Capital Contributions, including such Member's initial Capital Contribution and any additional Capital Contributions;

(ii)    any Net Income or other item of income or gain allocated to such Member pursuant to ARTICLE V; and

(iii)    any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

(b)    Each Member's Capital Account shall be decreased by:

(i)    the cash amount or Book Value of any property distributed to such Member pursuant to ARTICLE VI and Section 11.03(d);

(ii)    the amount of any Net Loss or other item of loss or deduction allocated to such Member pursuant to ARTICLE V; and

(iii)    the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

**Section 3.05   Succession Upon Transfer.**  In the event that any Membership Interests are Transferred in accordance with the terms of this Agreement, the Transferee shall succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Membership Interests and, subject to Section 5.05, shall receive allocations and distributions pursuant to ARTICLE V, ARTICLE VI, and ARTICLE XI in respect of such Membership Interests.

**Section 3.06   Negative Capital Accounts.**  In the event that any Member shall have a deficit balance in its Capital Account, such Member shall have no obligation, during the term of the Company or upon termination or liquidation thereof, to restore such negative balance or make any Capital Contributions to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or termination in contravention of this Agreement.

**Section 3.07   No Withdrawals from Capital Accounts.**  No Member shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement.  No Member shall receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement.  The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss, and deduction among the Members and shall have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

**Section 3.08   Treatment of Loans from Members.**  Loans by any Member to the Company shall not be considered Capital Contributions and shall not affect the maintenance of such Member's Capital Account, other than to the extent provided in Section 3.04(a)(iii), if applicable.

15

**Section 3.09   Modifications.**  The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Sole Manager determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Sole Manager may authorize such modifications without the consent of any Member.

<div align="center">

**ARTICLE IV**
**MEMBERS**

</div>

**Section 4.01   No Personal Liability.**  Except as otherwise expressly provided in the BOC, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt, obligation, or liability of the Company or other Members, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being a Member.

**Section 4.02   No Withdrawal.**  So long as a Member continues to hold a Membership Interest, such Member shall not have the ability to withdraw or resign as a Member prior to the winding up and termination of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the winding up and termination of the Company shall be null and void.  As soon as any Person who is a Member ceases to hold a Membership Interest, such Person shall no longer be a Member.

**Section 4.03   No Interest in Company Property.**  No real or personal property of the Company shall be deemed to be owned by any Member individually, but shall be owned by, and title shall be vested solely in, the Company.  Without limiting the foregoing, each Member hereby irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to the property of the Company.

**Section 4.04   Certification of Membership Interests**.

(a)      The Sole Manager may, but shall not be required to, issue certificates to the Members representing the Membership Interests held by such Member.

(b)      In the event that the Sole Manager shall issue certificates representing Membership Interests in accordance with Section 4.04(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests shall bear a legend substantially in the following form:

THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.  NO TRANSFER, SALE, CONVEYANCE, ASSIGNMENT, GIFT, PLEDGE, HYPOTHECATION, ENCUMBRANCE, OR OTHER DISPOSITION OF THE MEMBERSHIP

<div align="center">16</div>

INTEREST REPRESENTED BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH COMPANY AGREEMENT.

THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, GIFTED, PLEDGED, HYPOTHECATED, OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

**Section 4.05   Meetings of Members**.

(a)      Meetings of the Members may be called by (i) the Sole Manager or (ii) Members holding a majority of the Membership Interests.

(b)      Written notice stating the place, date, and time of the meeting and, in the case of a meeting of the Members not regularly scheduled, describing the purposes for which the meeting is called, shall be delivered not fewer than ten days and not more than 60 days before the date of the meeting to each Member, by or at the direction of the Sole Manager or the Member(s) calling the meeting, as the case may be.  The Members may hold meetings at the Company's principal office or at such other place, within or outside the State of Texas, as the Sole Manager or the Member(s) calling the meeting may designate in the notice for such meeting.

(c)      Any Member may participate in a meeting of the Members by means of conference telephone or other communications equipment by means of which all Persons participating in the meeting can talk to and hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(d)      On any matter that is to be voted on by Members, a Member may vote in person or by proxy, and such proxy may be granted in writing, by means of Electronic Transmission or as otherwise permitted by Applicable Law.  Every proxy shall be revocable in the discretion of the Member executing it unless otherwise provided in such proxy; provided, that such right to revocation shall not invalidate or otherwise affect actions taken under such proxy prior to such revocation.  In lieu of a proxy, a Member may grant an irrevocable power of attorney to conduct the affairs of such Member with respect to matters of the Company, including matters relating to the organization, internal affairs, or termination of the Company.

(e)      The business to be conducted at such meeting need not be limited to the purpose described in the notice and can include business to be conducted by Members; provided, that the appropriate Members shall have been notified of the meeting in accordance with Section 4.05(b).  Attendance of a Member at any meeting shall constitute

WEIL:\97901822\22\45327.0007

a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(f)     A quorum of any meeting of the Members shall require the presence, whether in person or by proxy, of the Members holding a majority of the Membership Interests.  Subject to Section 4.06, no action may be taken by the Members unless the appropriate quorum is present at a meeting.

(g)     Subject to Section 4.06, Section 7.04, Section 12.10 or any provision of this Agreement or the BOC requiring the vote, consent, or approval of a different percentage of the Membership Interests, no action may be taken by the Members at any meeting at which a quorum is present without the affirmative vote of the Members holding a majority of the outstanding Membership Interests.

**Section 4.06   Action Without Meeting**.

(a)     Notwithstanding the provisions of Section 4.05, any matter that is to be voted on, consented to, or approved by the Members may be taken without a meeting, without prior notice, and without a vote if consented to, in writing or by Electronic Transmission, by a Member or Members holding not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which each Member entitled to vote on the action is present and votes.  A record shall be maintained by the Sole Manager of each such action taken by written consent of a Member or Members.

(b)     A Member's consent may not be established by a Member's failure to object to an action in a timely manner or by any other means not explicitly provided for in this Agreement.

(c)     If any action or decision permitted by this Agreement to be taken or made by less than all of the Members is taken or made by a written consent signed by less than all of the Members, the Sole Manager shall, within ten calendar days after such action is taken or such decision is made, give written notice of the action taken or the decision made to the Members who did not sign the written consent.

**Section 4.07   Power of Members.**  The Members shall have the power to exercise any and all rights or powers granted to Members pursuant to the express terms of this Agreement and the BOC.  Except as otherwise specifically provided by this Agreement or required by the BOC, no Member, in its capacity as a Member, shall have the power to act for or on behalf of, or to bind, the Company, other than to the extent that the Company has granted a power of attorney to such Member to bind the Company on such actions.

**Section 4.08   Similar or Competitive Activities; Business Opportunities.**  Nothing contained in this Agreement shall prevent any Member or any of its Affiliates from engaging in any other activities or businesses, regardless of whether those activities or businesses are similar to or competitive with the Company.  None of the Members nor any of their Affiliates shall be

WEIL:\97901822\22\45327.0007

obligated to account to the Company or to the other Members for any profits or income earned or derived from such other activities or businesses.  None of the Members nor any of their Affiliates shall be obligated to inform the Company or the other Members of a business opportunity of any type or description.

**ARTICLE V**
**ALLOCATIONS**

**Section 5.01   Tax Partnership Provisions.**  This ARTICLE V is intended to apply only if the Company becomes a partnership for U.S. federal income tax purposes.

**Section 5.02   Allocation of Net Income and Net Loss.**  For each Fiscal Year (or portion thereof), after giving effect to the special allocations set forth in Section 5.03, Net Income and Net Loss of the Company shall be allocated among the Members pro rata in accordance with their Membership Interests.

**Section 5.03   Regulatory and Special Allocations.**  Notwithstanding the provisions of Section 5.02:

(a)      If there is a net decrease in Company Minimum Gain (determined according to Treasury Regulations Section 1.704-2(d)(1)) during any Fiscal Year, each Member shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2).  This Section 5.03(a) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)      Member Nonrecourse Deductions shall be allocated in the manner required by Treasury Regulations Section 1.704-2(i).  Except as otherwise provided in Treasury Regulations Section 1.704-2(i)(4), if there is a net decrease in Member Nonrecourse Debt Minimum Gain during any Fiscal Year, each Member that has a share of such Member Nonrecourse Debt Minimum Gain shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain.  Items to be allocated pursuant to this paragraph shall be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2).  This Section 5.03(b) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)      Nonrecourse Deductions shall be allocated to the Members in accordance with their Membership Interests.

(d)      In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), Net Income shall be specially allocated to such Member in an

amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustments, allocations, or distributions as quickly as possible.  This Section 5.03(d) is intended to comply with the "qualified income offset" requirement in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(e)     Simulated Depletion and Simulated Gain or Loss with respect to any Depletable Property shall be allocated among the Members in proportion to their shares of the Simulated Basis in such property.  Each Member's share of the Simulated Basis in each of the Company's Depletable Properties shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such Depletable Property is acquired by the Company, and shall be reallocated among the Members in accordance with the Members' Membership Interest as determined immediately following the occurrence of an event giving rise to any adjustment to the Book Values of the Company's oil and gas properties pursuant to the terms of this Agreement (or at the time of any material additions to the federal income tax basis of such Depletable Property).

(f)     The allocations set forth in subsections Section 5.03(a), Section 5.03(b), Section 5.03(c), Section 5.03(d) and Section 5.03(e) above (the "**Regulatory Allocations**") are intended to comply with certain requirements of the Treasury Regulations under Code Section 704.  Notwithstanding any other provisions of this ARTICLE V (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating Net Income and Net Losses among Members so that, to the extent possible, the net amount of such allocations of Net Income and Net Losses and other items and the Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to such Member if the Regulatory Allocations had not occurred.

**Section 5.04   Tax Allocations**.

(a)     Subject to Section 5.04(b), Section 5.04(c), and Section 5.04(d), all income, gains, losses and deductions of the Company shall be allocated, for federal, state, and local income tax purposes, among the Members in accordance with the allocation of such income, gains, losses, and deductions pursuant to Section 5.02 and Section 5.03, except that if any such allocation for tax purposes is not permitted by the Code or other Applicable Law, the Company's subsequent income, gains, losses, and deductions shall be allocated among the Members for tax purposes, to the extent permitted by the Code and other Applicable Law, so as to reflect as nearly as possible the allocation set forth in Section 5.02 and Section 5.03.

(b)     Items of Company taxable income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall be allocated among the Members in accordance with Code Section 704(c) using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager, so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(c)	If the Book Value of any Company asset is adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) as provided in clause (c) of the definition of Book Value, subsequent allocations of items of taxable income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager.

(d)	Allocations of tax credit, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Sole Manager taking into account the principles of Treasury Regulations Section 1.704-1(b)(4)(ii).

(e)	The deduction for depletion with respect to each separate oil and gas property (as defined in Section 614 of the Code) shall, in accordance with Section 613A(c)(7)(D) of the Code, be computed for federal income tax purposes separately by the Members rather than the Company.  The proportionate share of the adjusted tax basis of each oil and gas property shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such oil and gas property is acquired by the Company (and any additions to such U.S. federal income tax basis resulting from expenditures required to be capitalized in such basis shall be allocated among the Members in a manner designed to cause the Members' proportionate shares of such adjusted U.S. federal income tax basis to be in accordance with their Membership Interests as determined at the time of any such additions), and shall be reallocated among the Members in accordance with the Members' Membership Interests as determined immediately following the occurrence of an event giving rise to an adjustment to the Book Values of the Company's oil and gas properties.  For purposes of the separate computation of gain or loss by each Member on the taxable disposition of each oil and gas property, the amount realized from such disposition shall be allocated (i) first, to the Members in an amount equal to the Simulated Basis in such oil and gas property in proportion to their allocable shares thereof and (ii) second, any remaining amount realized shall be allocated consistent with the allocation of Simulated Gain or Loss.  The allocations described in this Section 5.04(e) are intended to be applied in accordance with the Members' "interests in partnership capital" under Section 613A(c)(7)(D) or the Code; provided, however, that the Members understand and agree that the Sole Manager may authorize special allocations of federal income tax basis, income, gain, deduction or loss, as computed for U.S. federal income tax purposes, in order to eliminate differences between Simulated Basis and adjusted U.S. federal income tax basis with respect to each oil and gas property, in such manner as determined consistent with the principles outlined in Sections 5.04b) and 5.04c).  The provisions of this Section 5.04(e) and the other provisions of this Agreement relating to allocations under Section 613A(c)(7)(D) of the Code are intended to comply with Treasury Regulations Section 1.704-1(b)(4)(v) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  Each Member, with the assistance of the Company, shall separately keep records of its share of the adjusted tax basis in each oil and gas property, adjust such share of the adjusted tax basis for any cost or percentage depletion allowable with respect to such property and use such adjusted tax basis in the computation of its cost depletion or in the computation of its gain or loss on the disposition

21

of such property by the Company.  Upon the reasonable request of the Company, each Member shall advise the Company of its adjusted tax basis in each oil and gas property and any depletion computed with respect thereto, both as computed in accordance with the provisions of this subsection for purposes of allowing the Company to make adjustments to the tax basis of its assets as a result of certain transfers of interests in the Company or distributions by the Company.  The Company may rely on such information and, if it is not provided by the Member, may make such reasonable assumptions as it shall determine with respect thereto.  When reasonably requested by the Members, the Company shall provide all available information needed by such Members to comply with the record keeping requirements of this Section 5.04(e) and other applicable tax reporting obligations.

(f)    Allocations pursuant to this Section 5.04 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Net Income, Net Losses, distributions, or other items pursuant to any provisions of this Agreement.

**Section 5.05   Allocations in Respect of Transferred Membership Interests.**  In the event of a Transfer of Membership Interests during any Fiscal Year made in compliance with the provisions of ARTICLE VIII, Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company attributable to such Membership Interests for such Fiscal Year shall be determined using the interim closing of the books method.

# ARTICLE VI
# DISTRIBUTIONS

**Section 6.01   General**.

(a)    Subject to Section 6.02 and Section 7.03(b), distributions of available cash shall be made to the Members when and in such amounts as determined by the Sole Manager and only following (i) payment of all operating expenses of the Company, including required payments under the Material Project Contracts, and the termination of the Material Project Contracts, (ii) the payment in full of any and all amounts owing to Credit Bid Purchaser or CUSA under any Material Project Contract, and (iii) the cessation of all production from, and Final Completion of all plugging and abandonment and decommissioning of the FWE IV Assets.  After making all distributions required for a given Fiscal Year under Section 6.02, and paying all operating expenses, and making appropriate reserves for future operating expenses, and paying all amounts then due and outstanding under the Material Project Contracts as described in the preceding sentence, the termination of the Material Project Contracts, and the satisfaction of the condition under item (iii), in each case as described in the preceding sentence, distributions determined to be made by the Sole Manager pursuant to this Section 6.01(a) shall be paid to the Members in accordance with their respective Membership Interests.

(b)    Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to the Members (i) prior to the cessation of all production from, and Final Completion of all plugging and abandonment and

decommissioning activities on, the FWE IV Assets, except as provided in Section 6.02, or (ii) if such distribution would violate § 101.206 of the BOC or other Applicable Law.

**Section 6.02   Tax Advances**.

(a)      Subject to (i) any restrictions in the Company's then-applicable debt financing arrangements, if any, and (ii) the Sole Manager's good faith determination to retain any other amounts necessary to satisfy obligations of the Company that are reasonably expected to be due and payable in the 90 days following the date of determination, at least three days before each date prescribed by the Code for a calendar-year corporation to pay quarterly installments of estimated tax, the Company shall use commercially reasonable efforts to distribute cash to each Member in proportion to and to the extent of such Member's Quarterly Estimated Tax Amount for the applicable calendar quarter (each such distribution, a "**Tax Advance**").

(b)      If, at any time after the final Quarterly Estimated Tax Amount has been distributed pursuant to Section 6.02(a) with respect to any Fiscal Year, the aggregate Tax Advances to any Member with respect to such Fiscal Year are less than such Member's Tax Amount for such Fiscal Year (a "**Shortfall Amount**"), the Company shall use commercially reasonable efforts to distribute cash in proportion to and to the extent of each Member's Shortfall Amount.  The Company shall use commercially reasonable efforts to distribute Shortfall Amounts with respect to a Fiscal Year before the 90th day of the next succeeding Fiscal Year; provided, that if the Company has made distributions other than pursuant to this Section 6.02, the Sole Manager may apply such distributions to reduce any Shortfall Amount.

(c)      If the aggregate Tax Advances made to any Member pursuant to this Section 6.02 for any Fiscal Year exceed such Member's Tax Amount (an "**Excess Amount**"), such Excess Amount shall reduce subsequent Tax Advances that would be made to such Member pursuant to this Section 6.02, except to the extent taken into account as an advance pursuant to Section 6.02(d).

(d)      Any distributions made pursuant to this Section 6.02 shall be treated for purposes of this Agreement as advances on distributions pursuant to Section 6.01 and shall reduce, dollar-for-dollar, the amount otherwise distributable to such Member pursuant to Section 6.01.

**Section 6.03   Tax Withholding; Withholding Advances**.

(a)      **Tax Withholding.**  Each Member agrees to furnish the Company with any representations and forms as shall be reasonably requested by the Company to assist it in determining the extent of, and in fulfilling, any withholding obligations it may have.

(b)      **Withholding Advances.**  The Company is hereby authorized at all times to make payments ("**Withholding Advances**") with respect to each Member in amounts required to discharge any obligation of the Company, including any obligation under Section 6225 of the Code (as determined by the Tax Matters Representative based on the

advice of legal or tax counsel to the Company) to withhold or make payments to any federal, state, local or foreign taxing authority (a "**Taxing Authority**") with respect to any distribution or allocation by the Company of income or gain to such Member and to withhold the same from distributions to such Member.  Any funds withheld from a distribution by reason of this Section 6.03(b) shall nonetheless be deemed distributed to the Member in question for all purposes under this Agreement.  If the Company makes any Withholding Advance in respect of a Member hereunder that is not immediately withheld from actual distributions to the Member, then the Member shall promptly reimburse the Company for the amount of such payment, plus interest at a rate equal to the prime rate published in the Wall Street Journal on the date of payment plus two percent per annum, compounded annually, on such amount from the date of such payment until such amount is repaid (or deducted from a distribution) by the Member (any such payment shall not constitute a Capital Contribution).  Each Member's reimbursement obligation under this Section 6.03(b) shall continue after such Member transfers its Membership Interests.

(c)      **Indemnification.**  Each Member hereby agrees to defend, indemnify and hold harmless the Company and the other Members from and against any liability with respect to taxes, interest, or penalties that may be asserted by reason of the Company's failure to deduct and withhold tax on amounts distributable or allocable to such Member. The provisions of this Section 6.03(c) and the obligations of a Member pursuant to Section 6.03(b) shall survive the termination, dissolution, liquidation, and winding up of the Company and the withdrawal of such Member from the Company or Transfer of its Membership Interests.  The Company may pursue and enforce all rights and remedies it may have against each Member under this Section 6.03, including bringing a lawsuit to collect repayment with interest of any Withholding Advances.

(d)      **Overwithholding.**  None of the Company or the Sole Manager shall be liable for any excess taxes withheld in respect of any distribution or allocation of income or gain to a Member.  In the event of an overwithholding, a Member's sole recourse shall be to apply for a refund from the appropriate Taxing Authority.

**Section 6.04   Distributions in Kind**.

(a)      Subject to Sections 6.01 and 6.02, the Sole Manager is hereby authorized, as it may reasonably determine, to make distributions to the Members in the form of securities or other property (but not including any oil and gas properties) held by the Company; provided, that Tax Advances shall only be made in cash.  In any non-cash distribution, the securities or property so distributed will be distributed among the Members in the same proportion and priority as cash equal to the Fair Market Value of such securities or property would be distributed among the Members pursuant to Section 6.01.

(b)      Any distribution of securities shall be subject to such conditions and restrictions as the Sole Manager determines are required or advisable to ensure compliance with Applicable Law.  In furtherance of the foregoing, the Sole Manager may require that the Members execute and deliver such documents as the Sole Manager may deem necessary or appropriate to ensure compliance with all federal and state securities laws that

apply to such distribution and any further Transfer of the distributed securities, and may appropriately legend the certificates that represent such securities to reflect any restriction on Transfer with respect to such laws.

<div align="center">

**ARTICLE VII**
**MANAGEMENT**

</div>

**Section 7.01   Management of the Company.**   The business and affairs of the Company shall be managed, operated, and controlled by or under the direction of one manager designated pursuant to Section 7.02 (the "**Sole Manager**").   Subject to the provisions of Section 7.04, the Sole Manager shall have, and is hereby granted, full and complete power, authority, and discretion for, on behalf of, and in the name of the Company, to take such actions as it may deem necessary or advisable to carry out any and all of the objectives and purposes of the Company, to the exclusion of the Members unless expressly provided for otherwise in this Agreement or expressly required under the BOC.   Subject to the provisions of Section 7.06, the Sole Manager shall have, and is hereby granted, full and complete power, authority, and discretion for, on behalf of, and in the name of the Company, to take such actions as it may deem necessary or advisable to carry out any and all of the objectives and purposes of the Company.

**Section 7.02   Sole Manager.**   The Company shall not have any officers or employees other than the Sole Manager.   Sunset Energy Gulf Coast Asset Management LLC has been selected and designated by the Member with the consent of CUSA to serve as the initial Sole Manager. The Sole Manager may not be removed without CUSA's prior written consent, which may be given, delayed or withheld in its sole discretion.   In the event that the Sole Manager is removed with CUSA's written consent or the Sole Manager resigns or otherwise ceases to serve in such capacity, then the Sole Manager shall be selected pursuant to the following procedure:   CUSA and the Company (acting through the Member for all purposes under this Section 7.02, who shall solicit input from Credit Bid Purchaser for all purposes under this Section 7.02) shall agree on a replacement, and, if they cannot agree, the Company shall designate a replacement, which shall be subject to CUSA's approval (which approval shall not to be unreasonably withheld, conditioned or delayed).

**Section 7.03   Material Project Contracts; Net Profit Interest**.

(a)      The Company's execution and performance of its obligations under each of the Omnibus Agreement, the NPI Conveyance, the Contract Operating Agreement, the Turnkey Removal Agreement, the Joint Development Agreement, the Deepwater Assets Decommissioning Funding Agreement, the SEMS Bridging Agreement, the Transition Services Agreement and the Escrow Agreement has been approved by the Member and shall not require any other approval on the part of the Company (by the Sole Manager or otherwise).   The Sole Manager shall not amend or modify such agreements, except in accordance with this Agreement.

(b)      At the end of each Production Period, the Company shall pay into the Escrow Account the NPI Payment, if any is due, as calculated pursuant to the terms of the NPI Conveyance.

<div align="center">25</div>

**Section 7.04   Actions Requiring CUSA Consent.**  Without the prior written consent of CUSA (which written consent may be given, delayed or withheld in CUSA's sole discretion, unless expressly indicated otherwise), the Company shall not do, or enter into any commitment to do, any of the following:

(a)     engage in any business or activity other than (i) plugging and abandoning and decommissioning the FWE IV Assets and (ii) operating the FWE IV Assets prior to their plugging and abandonment and decommissioning;

(b)     use revenue or free cash flow for any purpose other than (i) for funding Reimbursable Costs or Third Party Payments under the Contract Operating Agreement (or similar charges under a replacement thereto) and, if applicable, payment into the Escrow Account and (ii) Tax Advances pursuant to Section 6.02(a);

(c)     issue additional Membership Interests or any other equity securities or admit additional Members to the Company;

(d)     approve any decommissioning plan with respect to the FWE IV Assets; or engage or retain any decommissioning subcontractor other than Credit Bid Purchaser pursuant to the Turnkey Removal Agreement;

(e)     incur any Indebtedness;

(f)     make any loan, advance, or capital contribution or make any investment in any Person;

(g)     replace, remove or change the powers of the Sole Manager;

(h)     replace or remove Credit Bid Purchaser under the Contract Operating Agreement; engage or retain any contract operator other than Credit Bid Purchaser pursuant to the Contract Operating Agreement; amend, or waive the application of, any provision of the Contract Operating Agreement;

(i)     divest any of the FWE IV Assets (other than sales of hydrocarbons in the ordinary course of business) or acquire any other assets (other than for a purpose permitted under Section 7.04(a) and in accordance with the terms of the Contract Operating Agreement, and further subject to any approval rights contained therein);

(j)     approving any prospective joint development project or other capital project for which an election to participate has been delivered to the Company pursuant to the Joint Development Agreement or approve any well takeover under the Joint Development Agreement;

(k)     agree to any (i) settlement or order with any Governmental Authority relating to the FWE IV Assets or the operations conducted thereon, (ii) settlement relating to contribution or payment amounts relating to decommissioning obligations with any Person, including any predecessor-in-interest to all or any portion of the leases and lands

26

covered by the FWE IV Assets or any surety bond provider or other provider or holder of security relating to decommissioning operations, or (iii) any other settlement involving FWE IV Assets or the operation of FWE IV;

(l)     amend any provision of a Material Project Contract, or waive any material right of the Company under a Material Project Contract;

(m)     [Reserved];

(n)     take any act of Bankruptcy, liquidate or otherwise terminate the existence of the Company or any of its Subsidiaries;

(o)     enter into a fundamental business transaction within the meaning of such term in the BOC;

(p)     establish a Subsidiary or enter into any joint venture or similar business arrangement or enter into a transaction covered by Section 7.03;

(q)     enter into, amend, waive, or terminate any contract with an Affiliate of the Company; or

(r)     amend, modify, supplement, restate, or waive any provision of the Certificate of Formation, this Agreement or any other organizational documents of the Company or its Subsidiaries (and any such amendment, modification, supplement, or waiver that is attempted without CUSA's prior written consent shall be void *ab initio* and without effect).

If CUSA in good faith believes that (x) Credit Bid Purchaser is in breach the Contract Operating Agreement in a manner that is materially adverse to the Company or is liable to the Company for indemnification pursuant to the terms of the Contract Operating Agreement, and (y) the Company has failed to enforce its rights (including, if applicable, termination right) with respect to such breach or indemnification and such failure is materially adverse to the Company, then CUSA may (i) deliver a written notice to the Company requesting that the Company enforce such rights (any rights to which such request relates must be specifically identified) and (ii) if the Company fails to enforce such rights within thirty days of its receipt of such notice, CUSA may itself enforce the rights of the Company against Credit Bid Purchaser on the Company's behalf.

**Section 7.05   No Compensation of the Sole Manager**.  The Sole Manager shall receive an offer letter and be compensated for the services provided by such individual as the Sole Manager of the Company in the amount set forth in such offer letter.  The Company shall reimburse the Sole Manager for all reasonable, ordinary, necessary, and direct third-party expenses incurred by the Sole Manager on behalf of the Company in carrying out the Company's business activities.

**Section 7.06   No Personal Liability**.  Except as otherwise provided in the BOC or by Applicable Law, or expressly provided in this Agreement or any written agreement between the Company and the Sole Manager, (i) the Sole Manager will not be obligated personally for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise,

27

including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being or acting as the Sole Manager and (ii) subject to Section 7.04, the Sole Manager shall carry out his or her duties under this Agreement in good faith and a manner in which the Sole Manager believes to be consistent with and in furtherance of the purpose of the Company specified in Section 2.05(a).

<div align="center">

**ARTICLE VIII**
**TRANSFER**

</div>

**Section 8.01   General Restrictions on Transfer**.

(a)     No Member shall Transfer all or any portion of its Membership Interest in the Company without the prior written approval of the Sole Manager.

(b)     Subject to Section 8.01(a), each Member agrees that it will not Transfer all or any portion of its Membership Interest in the Company, and the Company agrees that it shall not issue any Membership Interests:

(i)     except as permitted under the Securities Act and other Applicable Laws, and then, with respect to a Transfer of Membership Interests, only upon delivery to the Company of an opinion of counsel in form and substance satisfactory to the Company to the effect that such Transfer may be effected without registration under the Securities Act;

(ii)     if the Company becomes a partnership for U.S. federal income tax purposes, if such Transfer or issuance would cause the Company to be considered a "publicly traded partnership" under Section 7704(b) of the Code within the meaning of Treasury Regulations Section 1.7704-1(h)(1)(ii), including the look-through rule in Treasury Regulations Section 1.7704-1(h)(3);

(iii)     if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the BOC;

(iv)     if the Company becomes a partnership for U.S. federal income tax purposes, if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes;

(v)     if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended;

(vi)     if such Transfer or issuance would cause the assets of the Company to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974 or its accompanying regulations or result in any "prohibited transaction" thereunder involving the Company; and

<div align="center">28</div>

(vii)    such Transfer would limit, hinder or prohibit the Company from carrying out its purpose under Section 2.05(a).

(c)    Any Transfer or attempted Transfer of any Membership Interest in violation of this Agreement shall be null and void *ab initio*, no such Transfer shall be recorded on the Company's books, and the purported Transferee in any such Transfer shall not be treated (and the purported Transferor shall continue to be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d)    No Transfer of any Membership Interest to a Person not already a Member of the Company shall be deemed completed until the prospective Transferee has executed a joinder agreement in form and substance acceptable to the Company.

(e)    For the avoidance of doubt, any completed Transfer of a Membership Interest permitted by this Agreement shall be deemed a sale, transfer, conveyance, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and shall not be deemed a sale, transfer, conveyance, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest."

## ARTICLE IX
## EXCULPATION AND INDEMNIFICATION

**Section 9.01    Exculpation of Covered Persons**.

(a)    **Covered Persons.**  As used herein, the term "**Covered Person**" shall mean (i) each current or former Member; (ii) each current or former manager, officer, director, shareholder, partner, member, Affiliate, employee, agent, or Representative of each Member, and each of their Affiliates; and (iii) each manager (including the Sole Manager), officer (if any), employee (if any), agent, or Representative of the Company.

(b)    **Standard of Care.**  No Covered Person shall be liable to the Company or any other Covered Person for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud or willful misconduct by such Covered Person.

(c)    **Good Faith Reliance.**  A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements (including financial statements and information, opinions, reports, or statements as to the value or amount of the assets, liabilities, Net Income, or Net Losses of the Company or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) another Member; (ii) one or more managers, officers or employees of the Company; (iii) any attorney, independent accountant, appraiser, or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person

reasonably believes to be within such other Person's professional or expert competence. The preceding sentence shall in no way limit any Person's right to rely on information to the extent provided in § 3.102 or § 3.105 of the BOC.

**Section 9.02    Liabilities and Duties of Covered Persons**.

(a)    **Limitation of Liability.**  This Agreement, unless otherwise specifically stated herein, is not intended to, and does not, create or impose any fiduciary duty on any Covered Person.  Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligations of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement.  The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.

(b)    **Duties.**  Subject to Section 7.06, whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude), the Covered Person shall be entitled to consider only such interests and factors as such Covered Person desires and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person.  Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

**Section 9.03    Indemnification**.

(a)    **Indemnification.**  To the fullest extent permitted by the BOC, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution, or replacement, only to the extent that such amendment, substitution, or replacement permits the Company to provide broader indemnification rights than the BOC permitted the Company to provide prior to such amendment, substitution, or replacement), the Company shall indemnify, hold harmless, defend, pay, and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines, or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "**Losses**") to which such Covered Person may become subject by reason of:

(i)    any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member, or any direct or indirect Subsidiary of the foregoing in connection with the business of the Company; or

(ii)    such Covered Person being or acting in connection with the business of the Company as a member, shareholder, Affiliate, manager, director, officer, employee, or agent of the Company, any Member, or any of their respective

Affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, officer, employee, or agent of any Person including the Company;

provided, that (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud or willful and intentional misconduct, in either case as determined by a final, nonappealable order of a court of competent jurisdiction.  In connection with the foregoing, the termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(b)     **Control of Defense.**  Upon a Covered Person's discovery of any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03, the Covered Person shall give prompt written notice to the Company of such claim, lawsuit, or proceeding; provided, that the failure of the Covered Person to provide such notice shall not relieve the Company of any indemnification obligation under this Section 9.03, unless the Company shall have been materially prejudiced thereby.  The Company shall be entitled to participate in or assume the defense of any such claim, lawsuit, or proceeding at its own expense.  After notice from the Company to the Covered Person of its election to assume the defense of any such claim, lawsuit, or proceeding, the Company shall not be liable to the Covered Person under this Agreement or otherwise for any legal or other expenses subsequently incurred by the Covered Person in connection with investigating, preparing to defend, or defending any such claim, lawsuit, or other proceeding.  If the Company does not elect (or fails to elect) to assume the defense of any such claim, lawsuit, or proceeding, the Covered Person shall have the right to assume the defense of such claim, lawsuit, or proceeding as it deems appropriate, but it shall not settle any such claim, lawsuit, or proceeding without the consent of the Company (which consent shall not be unreasonably withheld, conditioned, or delayed).

(c)     **Reimbursement.**  The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03; provided, that if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 9.03, then such Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d)     **Entitlement to Indemnity.**  The indemnification provided by this Section 9.03 shall not be deemed exclusive of any other rights to indemnification to which those

seeking indemnification may be entitled under the BOC, any agreement or otherwise. The provisions of this Section 9.03 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 9.03 and shall inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

(e)    **Insurance.**  To the extent available on commercially reasonable terms, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Sole Manager may reasonably determine; provided, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person under the indemnification provisions contained herein, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses hereunder.  If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to such Covered Person by the Company in respect of such Losses.

(f)    **Funding of Indemnification Obligation.**  Notwithstanding anything contained herein to the contrary, any indemnity by the Company relating to the matters covered in this Section 9.03 shall be provided out of and to the extent of Company assets only, and no Member (unless such Member otherwise agrees in writing) shall have personal liability on account thereof or shall be required to make additional Capital Contributions to help satisfy such indemnity by the Company.

(g)    **Savings Clause.**  If this Section 9.03 or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person pursuant to this Section 9.03 to the fullest extent permitted by any applicable portion of this Section 9.03 that shall not have been invalidated and to the fullest extent permitted by Applicable Law.

(h)    **Amendment.**  The provisions of this Section 9.03 shall be a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 9.03 is in effect, on the other hand, pursuant to which the Company and each such Covered Person intend to be legally bound.  No amendment, modification, or repeal of this Section 9.03 that adversely affects the rights of a Covered Person to indemnification for Losses incurred or relating to a state of facts existing prior to such amendment, modification or repeal shall apply in such a way as to eliminate or reduce such Covered Person's entitlement to indemnification for such Losses without the Covered Person's prior written consent.

**Section 9.04   Survival.**  The provisions of this ARTICLE IX shall survive the dissolution, liquidation, winding up, termination of the Company and the withdrawal of any Member or the Transfer of any Member's interest in the Company.

WEIL:\97901822\22\45327.0007

## ARTICLE X
## ACCOUNTING; TAX MATTERS

**Section 10.01 Financial Statements and Other Information.**   The Company shall prepare and furnish to each Member and CUSA the following reports:

     (a)    **Annual Financial Statements.**   As soon as available, and in any event within 105 days after the end of each Fiscal Year, its unaudited consolidated balance sheet and related consolidated statements of operations, Members' equity and cash flows as of the end of and for such year prepared in accordance with GAAP consistently applied.

     (b)    **Quarterly Financial Statements.**   As soon as available, and in any event within 60 days after the end of each quarterly accounting period in each Fiscal Year (including the last fiscal quarter of the Fiscal Year), its unaudited consolidated balance sheet and related unaudited consolidated statements of operations, Members' equity and cash flows as of the end of and for such fiscal quarter and the then elapsed portion of the current Fiscal Year, setting forth in each case in comparative form the figures for the corresponding period or periods of the previous Fiscal Year or as at the end of such period or periods, all in reasonable detail and certified by the Company as presenting fairly in all material respects the consolidated financial condition and results of operations of the Company in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes.

     (c)    **Monthly Operating Data.**   As soon as available, but in no event later than 45 days after the end of each calendar month, a statement in a form reasonably satisfactory to each Member and CUSA showing all operating data for the Company, including operating expenses and revenue for each of the Company, for such calendar month.

     (d)    **Budget Updates.**   Promptly once available and no less than bi-annually, an operating budget for the Fiscal Year, forecasting revenue, operating costs, and capital expenses for each fiscal quarter.

     (e)    **Material Government Communication.**   Promptly following receipt thereof by FWE IV, copies of all material written notices or other material communications issued or provided by or to any Governmental Authority.

     (f)    **Additional Information.**   Promptly following any reasonable request therefor, such other information regarding the operations, business affairs and financial condition of the Company, as any Member or CUSA may reasonably request, including, without limitation, decommissioning cost estimates and calculations.

**Section 10.02 Inspection Rights.**   Upon reasonable notice from a Member or CUSA, the Company shall afford each Member or CUSA and their respective Representatives access during normal business hours to (a) the Company's properties, offices, plants, and other facilities; (b) the corporate, financial, and similar records, reports, and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management

WEIL:\97901822\22\45327.0007

letters and communications with Members or the Sole Manager, and to permit each Member or CUSA and their respective Representatives to examine such documents and make copies thereof; and (c) the Sole Manager, any officers, senior employees, and public accountants of the Company, and to afford each Member or CUSA and their respective Representatives the opportunity to discuss the affairs, finances, and accounts of the Company with such Sole Manager, officers, senior employees, and public accountants (and the Company hereby authorizes said accountants to discuss with such Member or CUSA and their respective Representatives such affairs, finances, and accounts).

**Section 10.03 Income Tax Status.**  The Company and the Initial Member intend that the Company shall be treated as a disregarded entity for U.S., federal, state, and local income tax purposes.  Neither the Company nor any Member shall make an election for the Company to be classified as other than a partnership or a disregarded entity pursuant to Treasury Regulations Section 301.7701-3.

**Section 10.04 Tax Matters Representative**.  The following Sections 10.04(a)-(f) are intended to apply if the Company becomes a partnership for U.S. federal income tax purposes:

(a) **Appointment.**  The Members hereby appoint the Sole Manager as "partnership representative" as provided in Code Section 6223(a) (the "**Tax Matters Representative**").  If any state or local tax law provides for a tax matters partner/partnership representative or Person having similar rights, powers, authority or obligations, the Person designated as the Tax Matters Representative shall also serve in such capacity.  To the extent required by Applicable Law, if the Tax Matters Representative is an entity, it shall appoint a "designated individual" to act on its behalf.  The Tax Matters Representative can be removed at any time by a vote of Members holding a majority of the Membership Interests, and shall resign if it is no longer a Member.  In the event of the resignation or removal of the Tax Matters Representative, Members holding a majority of the Membership Interests shall select a replacement Tax Matters Representative.

(b) **Tax Examinations and Audits.**  The Tax Matters Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by Taxing Authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.  The Tax Matters Representative shall promptly notify the Members in writing of the commencement of any tax audit of the Company, upon receipt of a tax assessment and upon receipt of a notice of final partnership adjustment, and shall keep the Members reasonably informed of the status of any tax audit and resulting administrative and judicial proceedings.  Without the consent of Members holding a majority of the Membership Interests, the Tax Matters Representative shall not extend the statute of limitations, file a request for administrative adjustment, file suit relating to any Company tax refund or deficiency or enter into any settlement agreement relating to items of income, gain, loss or deduction of the Company with any Taxing Authority.

WEIL:\97901822\22\45327.0007

(c)     **US Federal Tax Proceedings.**   The Members acknowledge that the Company may elect the application of Section 6226 of the Code.  This acknowledgement applies to each Member whether or not the Member owns an interest in the Company in both the reviewed year and the year of the tax adjustment.  In the event that the Company elects the application of Section 6226 of the Code, the Members agree and covenant to take into account and report to the Internal Revenue Service (or any other applicable taxing authority) any adjustment to their tax items for the reviewed year of which they are notified by the Company in a written statement, in the manner provided in Section 6226(b) of the Code, whether or not the Member owns any interest in the Company at such time.  Any Member that fails to report its share of such adjustments on its tax return, agrees to indemnify and hold harmless the Company and the Tax Matters Representative from and against any and all losses, costs, liabilities and expenses related to taxes (including penalties and interest) imposed on the Company as a result of the Member's inaction.  If the Company is required to pay the assessment of the imputed underpayment under Section 6225(a)(1) of the Code or similar provisions of state law, any taxes, penalties, and interest payable by the Company shall be treated as attributable to the Members, and, to the extent possible, the Tax Matters Representative shall allocate the burden of any such amounts to those Members to whom such amounts are reasonably attributable taking into account the Member's or former Member's allocable share of taxable income or loss with respect to the Fiscal Year to which such assessment pertains and adjustments that may have been made in computing the imputed underpayment.  To the extent that any such amount is payable by the Company, at the option of the Tax Matters Representative, such amount shall be recoverable from such Member as provided in Section 6.03(c).  The provisions contained in this Section 10.04 shall survive the dissolution, termination or liquidation of the Company, the withdrawal of any Member or the Transfer of any Member's interest in the Company and apply to unadmitted assignees of a Member's interest who may be considered current or former partners of the Company for federal tax purposes.

(d)     **Tax Returns.**   Each Member agrees that such Member shall not treat any Company item inconsistently on such Member's federal, state, foreign or other income tax return with the treatment of the item on the Company's return.

(e)     **Section 754 Election.**   The Tax Matters Representative will make an election under Code Section 754, if the Company becomes a partnership for U.S. federal income tax purposes.

(f)     **Indemnification**.   The Company shall defend, indemnify, and hold harmless the Tax Matters Representative against any and all liabilities sustained as a result of any act or decision concerning Company tax matters and within the scope of responsibilities as Tax Matters Representative, so long as such act or decision was done or made in good faith and does not constitute gross negligence or willful misconduct.

**Section 10.05 Tax Returns.**  At the expense of the Company, the Sole Manager (or any officer of the Company that it may designate pursuant to this Agreement) shall endeavor to cause the preparation and timely filing (including extensions) of all tax returns, if any, required to be filed by the Company pursuant to the Code as well as all other required tax returns in each

jurisdiction in which the Company owns property or does business. If the Company becomes a partnership for U.S. federal income tax purposes, as soon as reasonably possible after the end of each Fiscal Year, the Sole Manager or any designated officer of the Company, as applicable, will cause to be delivered to each Person who was a Member at any time during such Fiscal Year, IRS Schedule K-1 to Form 1065, if applicable, and such other information with respect to the Company as may be necessary for the preparation of such Person's federal, state, and local income tax returns for such Fiscal Year.

**Section 10.06 Company Funds.** All funds of the Company shall be deposited in its name, or in such name as may be designated by the Sole Manager, in such checking, savings, or other accounts, or held in its name in the form of such other investments as shall be designated by the Sole Manager. The funds of the Company shall not be commingled with the funds of any other Person. All withdrawals of such deposits or liquidations of such investments by the Company shall be made exclusively upon the signature or signatures of the Sole Manager, or any officer or officers of the Company that may be designated by the Sole Manager, as applicable, pursuant to this Agreement.

## ARTICLE XI
## WINDING UP AND TERMINATION

**Section 11.01 Events Requiring Winding Up.** The Company shall begin to wind up its business and affairs only upon the occurrence of any of the following events (in each case, subject to the applicable provisions of Section 7.04):

   (a) upon the permanent cessation of all production from, and Final Completion of all plugging and abandonment and decommissioning of, the FWE IV Assets;

   (b) the occurrence of a nonwaivable event under the terms of the BOC which requires the winding up of the Company after its termination unless a Continuance occurs in respect of such event; or

   (c) the entry of a judicial decree ordering winding up and termination under § 11.314 of the BOC in proceedings of which CUSA has been given notice and an opportunity to participate.

   (d) Notwithstanding the occurrence of an event referenced in Section 11.01(b), if the Company is permitted prior to the termination of its existence in accordance with the BOC to revoke a winding up upon the occurrence of such event and the Sole Manager provides its prior written consent to such revocation, then, to the extent so permitted under the BOC and in the manner provided therein, the Company's existence shall be continued (the revocation of such a winding up and continuance of the Company, a "**Continuance**").

**Section 11.02 Effectiveness of Termination.** The Company shall begin to wind up its business and affairs as soon as reasonably practicable upon the occurrence of an event described in Section 11.01 (if such event has not been revoked or cancelled), but the Company shall not terminate until the winding up of the Company has been completed, the assets of the Company

WEIL:\97901822\22\45327.0007

have been distributed as provided in Section 11.03, and the Certificate of Termination shall have been filed as provided in Section 11.04.

**Section 11.03 Liquidation.**   If the Company is to be terminated pursuant to Section 11.01, the Company shall be liquidated and its business and affairs wound up in accordance with the BOC and the following provisions:

(a)   **Liquidator.**   The Sole Manager shall act as liquidator to wind up the Company (the "**Liquidator**"); provided, however, that if there is then a vacancy in the position of the Sole Manager or the Sole Manager is not willing to act as the Liquidator, the Members shall appoint a Person to act as the Liquidator with the consent of CUSA. The Liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b)   **Accounting.**   As promptly as possible after the event requiring winding up and again after final liquidation, the Liquidator shall cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities, and operations through the last day of the calendar month in which such event occurs or the final liquidation is completed, as applicable.

(c)   **Notice.**   The Liquidator shall deliver to each known claimant of the Company the notice required by § 11.052 of the BOC.

(d)   **Distribution of Proceeds.**   The Liquidator shall liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

(i)   First, to the payment of all of the Company's debts and liabilities to its creditors (including Members, if applicable), including amounts owed, if any, pursuant to the Material Project Contracts to CUSA and/or Credit Bid Purchaser, and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

(ii)   Second, to the establishment of and additions to other reserves that are determined by the Liquidator to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

(iii)   Third, to the Members in accordance with the positive balances in their respective Capital Accounts, as determined after taking into account all Capital Account adjustments for the taxable year of the Company during which the liquidation of the Company occurs.

(e)   **Discretion of Liquidator.**   Notwithstanding the provisions of Section 11.03(d) that require the liquidation of the assets of the Company, but subject to the order of priorities set forth in Section 11.03(d), if upon winding up of the Company the Liquidator reasonably determines that an immediate sale of part or all of the Company's

WEIL:\97901822\22\45327.0007

assets would be impractical or could cause undue loss to the Members, the Liquidator may defer the liquidation of any assets except those necessary to satisfy Company liabilities and reserves, and may, upon approval of holders of a majority of the outstanding Membership Interests, distribute to the Members, in lieu of cash, as tenants in common and in accordance with the provisions of Section 11.03(d), undivided interests in such Company assets as the Liquidator deems not suitable for liquidation.  Any such distribution in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operating of such properties at such time.  For purposes of any such distribution, any property to be distributed will be valued at its Fair Market Value.

**Section 11.04 Certificate of Termination.**  Upon completion of the distribution of the assets of the Company as provided in Section 11.03(d) hereof, the Liquidator or other such officer or Sole Manager shall execute and cause to be filed a Certificate of Termination in the State of Texas and shall cause the cancellation of all qualifications and registrations of the Company as a foreign limited liability company in jurisdictions other than the State of Texas and shall take such other actions as may be necessary to terminate the Company.  Upon acceptance of the Certificate of Termination by the Texas Secretary of State, the Company shall be terminated.

**Section 11.05 Survival of Rights, Duties, and Obligations.**  Dissolution, liquidation, winding up, or termination of the Company for any reason shall not release any party from any Loss that at the time of such dissolution, liquidation, winding up, or termination already had accrued to any other party or thereafter may accrue in respect of any act or omission prior to such dissolution, liquidation, winding up, or termination.  For the avoidance of doubt, none of the foregoing shall replace, diminish, or otherwise adversely affect any Member's right to indemnification pursuant to Section 9.03.

**Section 11.06 Recourse for Claims.**  Each Member shall look solely to the assets of the Company for all distributions with respect to the Company, such Member's Capital Account, and such Member's share of Net Income, Net Loss, and other items of income, gain, loss, and deduction, and shall have no recourse therefor (upon termination or otherwise) against the Liquidator or any other Member.

<div align="center">

**ARTICLE XII**
**MISCELLANEOUS**

</div>

**Section 12.01 Expenses.**  The Initial Member will pay, or cause to be paid, or contribute to the Company amounts necessary for the Company to pay, all amounts necessary to fully cover (a) costs associated with the formation of the Company in connection with the Divisive Merger Documents and (b) any premiums to satisfy organizational or area wide bonding requirements.

**Section 12.02 Further Assurances.**  In connection with this Agreement and the transactions contemplated hereby, the Company and the Member hereby agree, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments, conveyances, and assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

<div align="center">38</div>

**Section 12.03 Confidentiality**.

(a)      Each Member acknowledges that it will have access to and become acquainted with trade secrets, proprietary information, and confidential information belonging to the Company and its Affiliates that are not generally known to the public, including, but not limited to, information concerning business plans, financial statements, and other information, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists, or other business documents that the Company treats as confidential, in any format whatsoever (including oral, written, electronic, or any other form or medium) (collectively, "**Confidential Information**").  In addition, each Member acknowledges that:  (i) the Company has invested, and continues to invest, substantial time, expense, and specialized knowledge in developing its Confidential Information; (ii) the Confidential Information provides the Company with a competitive advantage over others in the marketplace; and (iii) the Company would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public.  Without limiting the applicability of any other agreement to which any Member is subject, no Member shall, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for personal, commercial, or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware.  Each Member in possession of Confidential Information shall take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b)      Nothing contained in Section 12.03(a) shall prevent any Member from disclosing Confidential Information: (i) upon the order of any court or administrative agency; (ii) upon the request or demand of any regulatory agency or authority having jurisdiction over such Member; (iii) to the extent compelled by legal process or required or requested pursuant to subpoena, interrogatories, or other discovery requests; (iv) to the extent necessary in connection with the exercise of any remedy hereunder; (v) to the other Members; or (vi) to such Member's Representatives who, in the reasonable judgment of such Member, need to know such Confidential Information and agree to be bound by the provisions of this Section 12.03 as if a Member; or (vii) to any potential Transferee in connection with a proposed Transfer of Membership Interests from such Member, as long as such potential Transferee agrees in writing to be bound by the provisions of this Section 12.03 as if a Member before receiving such Confidential Information; provided, that in the case of clause (i), (ii), or (iii), such Member shall notify the Company and other Members of the proposed disclosure as far in advance of such disclosure as practicable (but in no event make any such disclosure before notifying the Company and other Members) and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Company, when and if available.

(c)      The restrictions of Section 12.03(a) shall not apply to Confidential Information that: (i) is or becomes generally available to the public other than as a result of a disclosure by a Member in violation of this Agreement; (ii) is or has been independently developed or conceived by such Member without use of Confidential

Information; or (iii) becomes available to such Member or any of its Representatives on a non-confidential basis from a source other than the Company, the other Members, or any of their respective Representatives, provided, that such source is not known by the receiving Member to be bound by a confidentiality agreement regarding the Company.

(d)     The obligations of each Member under this Section 12.03 shall survive for so long as such Member remains a Member, and for three years following the earlier of (i) termination, dissolution, liquidation, and winding up of the Company; (ii) the withdrawal of such Member from the Company; or (iii) such Member's Transfer of its Membership Interests; provided that with respect to Confidential Information that constitutes a trade secret under Applicable Law, the obligations of each Member under this Section 12.03 shall survive until, if ever, such Confidential Information loses its trade secret protection other than due, directly or indirectly, to an act or omission of the Member.

**Section 12.04 Notices.**  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:

(a)     when delivered by hand (with written confirmation of receipt);

(b)     when received by the addressee if sent by a nationally recognized overnight courier (receipt requested);

(c)     on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid; or

(d)     on the day delivered if sent by electronic mail to the address below during normal business hours of the recipient and on the next Business Day if sent by electronic mail after normal business hours of the recipient.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 12.04):

|  |  |
|---|---|
| **If to the Company:** | Fieldwood Energy IV LLC<br>2000 W. Sam Houston Parkway S., Suite 1200<br>Houston, Texas 77042<br>Attention: Sole Manager<br>Phone: [●]<br>Email: [●] |

WEIL:\97901822\22\45327.0007

with a copy to:

(which shall not
constitute notice)

Chevron U.S.A. Inc.
100 Northpark Blvd
Covington, LA 70443
Attention: Land Manager
Phone: (985) 773-6538
Email: tdwebre@chevron.com


**If to Member**: To the Member's respective mailing address as set forth on the Members Schedule.

**Section 12.05 Headings.**  The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 12.06 Severability.**  If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.  Except as provided in Section 9.03(g), upon such determination that any term or other provision is invalid, illegal, or unenforceable, this Agreement shall be modified automatically so as to effect the original intent of the parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible, legal, and enforceable.

**Section 12.07 Entire Agreement.**  This Agreement, together with the Certificate of Merger, Plan of Merger, Certificate of Formation, the Material Project Contracts and all related Exhibits and Schedules, constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 12.08 Successors and Assigns.**  Subject to the restrictions on Transfers set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

**Section 12.09 No Third-Party Beneficiaries.**  Except (a) with respect to certain rights reserved to CUSA as set forth in this Agreement, which shall be for the benefit of and enforceable by CUSA, and (b) as provided in ARTICLE IX, which shall be for the benefit of and enforceable by Covered Persons as described therein, this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement; provided, however that CUSA and each Covered Persons shall be an express third party beneficiary of this Agreement.

WEIL:\97901822\22\45327.0007

**Section 12.10 Amendment.**   Subject to Sections 2.02, no provision of this Agreement may be amended or modified except by an instrument in writing executed by the Company and the Members holding a majority of the Membership Interests; provided, however that any amendment or modification which impacts the rights of CUSA hereunder, including changes to Section 2.05 (Purpose) shall be subject to the prior written consent of CUSA, which may be given, delayed or withheld in its sole discretion.   Any such written amendment or modification will be binding upon the Company, CUSA and each Member.   Notwithstanding the foregoing, amendments to the Members Schedule following any new issuance, redemption, repurchase, or Transfer of Membership Interests in accordance with this Agreement may be made by the Sole Manager without the consent of or execution by the Members.

**Section 12.11 Waiver.**   No waiver by any party or CUSA of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving or CUSA, respectively.   No waiver by any party or CUSA shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.   No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.   For the avoidance of doubt, nothing contained in this Section 12.11 shall diminish any of the explicit and implicit waivers described in this Agreement.

**Section 12.12 Governing Law.**   All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas.

**Section 12.13 Submission to Jurisdiction.**   The parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Harris County and in Houston, Texas.   Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding that is brought in any such court has been brought in an inconvenient forum.   Service of process, summons, notice, or other document by registered mail to the address set forth in Section 12.04 shall be effective service of process for any suit, action, or other proceeding brought in any such court.

**Section 12.14 Waiver of Jury Trial**.   EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY DISPUTE OR CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES

WEIL:\97901822\22\45327.0007

AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 12.15 Equitable Remedies.**   Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties or CUSA, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto and CUSA shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

**Section 12.16 Attorney's Fees.**   In the event that any party or third-party beneficiary hereto institutes any legal suit, action, or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party or third-party beneficiary in the suit, action, or proceeding shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by it in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

**Section 12.17 Remedies Cumulative.**   The rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except to the extent expressly provided in Section 9.02 to the contrary.

**Section 12.18 Counterparts.**   This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by email or other means of Electronic Transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

(SIGNATURE PAGE FOLLOWS)

43

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be entered into as of the date first written above by their respective officers thereunto duly authorized.

**The Company:**

FIELDWOOD ENERGY IV LLC,
a Texas limited liability company


By:_____
Name:
Title:


**The Initial Member:**

FIELDWOOD ENERGY INC.,
a Delaware corporation


By:_____
Name:
Title:

## SCHEDULE A

## <u>MEMBERS SCHEDULE</u>

| Member Name, and Address | Membership Interest |
|---|---|
| Fieldwood Energy Inc.<br>2000 W. Sam Houston Parkway S., Suite 1200<br>Houston, Texas 77042 | 100% |
| Total: | 100% |

WEIL:\97901822\22\45327.0007

## **Exhibit B**

**Required Disclosures Under Section 1129(a)(5)**

**[To Come]**

## Exhibit C

**Schedule of Retained Causes of Action**

**Schedule of**
**Retained Causes of Action**

In accordance with and as provided by section 1123(b) of the Bankruptcy Code,[1] section 10.11 of the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (together with all exhibits and schedules thereto and as may be amended, modified, and/or supplemented, the "**Plan**"), and the Confirmation Order, any and all Causes of Action of the Debtors (collectively, the "**Retained Causes of Action**"), whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated herein, and such rights to commence, pursue, prosecute, and/or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Except to the extent that any of the Retained Causes of Action are assigned or transferred to the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall retain and may enforce all rights to commence, pursue, prosecute, and/or settle, as appropriate, each of the Retained Causes of Action.

As provided by section 10.11(a) of the Plan and the Confirmation Order and except as otherwise provided in the Credit Bid Purchase Agreement, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

---

[1] Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Plan (as defined below).

No Entity may rely on the absence of a specific reference in the Confirmation Order, the Plan, herein, or the Disclosure Statement to any Cause of Action against it as any indication that Credit Bid Purchaser, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, will not pursue any and all available Causes of Action against it.

As provided by section 10.11(b) of the Plan, notwithstanding section 10.11(a) of the Plan, on the Effective Date, Credit Bid Purchaser, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall be deemed to have released all preference actions pursuant to section 547 of the Bankruptcy Code against the holders of Unsecured Trade Claims and General Unsecured Claims (in each case, solely in their capacity as holders of Unsecured Trade Claims and General Unsecured Claims, as applicable).

Unless any Causes of Action against an Entity are (i) expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order or (ii) sold, transferred, or assigned to the Credit Bid Purchaser or any of the NewCo Entities pursuant to the Credit Bid Purchase Agreement, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan, herein, or the Confirmation Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, or be sold, transferred, or assigned to the Credit Bid

Purchaser or any of the NewCo Entities pursuant to the Credit Bid Transaction. the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court. For the avoidance of doubt, in the event of any inconsistency between the Credit Bid Purchase Agreement and this schedule, the Credit Bid Purchase Agreement shall govern in all respects.

Notwithstanding and without limiting the generality of section 10.11 of the Plan, all claims and Causes of Action including, but not limited to, the following, are expressly reserved by the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, (or shall otherwise be sold, transferred, or assigned to the Credit Bid Purchaser or any of the NewCo Entities pursuant to the Credit Bid Purchase Agreement, as applicable): (a) claims related to insurance policies; (b) claims related to tax obligations and refunds; (c) claims, defenses, cross-claims, and counterclaims related to litigation and possible litigation, whether based in tort, contract, equity, or otherwise, including any personal injury claims and wrongful death actions; (d) claims related to contracts and leases; (e) claims related to accounts receivable and accounts payable; (f) claims related to deposits/prepayments, adequate assurance postings, and other collateral postings; (g) claims related to liens; (h) related party claims; (i) claims related to oil and gas leases and related agreements; (j) claims related to the Apache Definitive Documents, the  Chevron Definitive Documents, or any Additional Predecessor Agreements; (k) claims, defenses, appeals, cross-

claims, and counterclaims related to any claims or actions asserted by any Governmental Authority, and (l) all other Causes of Action.

Notwithstanding and without limiting the generality of section 10.11 of the Plan, any Causes of Action or claims related to the following are expressly reserved by the Post-Effective Date Debtors, FWE I, FWE IV or any FWE Additional Entity, as the case may be (or shall otherwise be sold, transferred, or assigned to the Credit Bid Purchaser or any of the NewCo Entities pursuant to the Credit Bid Purchase Agreement, as applicable):

- *In re: Fieldwood Energy LLC, et. al Fieldwood Energy LLC, Fieldwood SD Offshore LLC & Fieldwood Energy Offshore LLC v. Sanare Energy Partners* (Adversary Case No. 20-03460);

- *In re: Fieldwood Energy LLC, et. al Fieldwood Energy LLC v. Valero Marketing and Supply Company* (Adversary Case No. 20-03497);

- *Fieldwood Energy LLC, et al. v. Atlantic Maritime Services, LLC* (Adversary Case No. 20-03476);

- *Fieldwood Energy LLC, et al. v. Renaissance Offshore LLC* (Adversary Case No. 20-03461);

- *Fieldwood Energy LLC, et al. Fieldwood Energy, LLC and GOM Shelf LLC v. Everest Reinsurance Company, Philadelphia Indemnity Insurance Company, HCC International Insurance Company Plc, Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC* (Adversary Case No. 20-03418); and

- *Emergency Motion to Compel BP Production & Exploration Inc. to Perform Pre-Petition Contracts* [Docket No. 792].

**<u>Exhibit D</u>**

**Schedule of Assumed Contracts**

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

|  |  |  |  |  |  |  |  |  | Applicable Entity | | | |
| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 |  | Oilfield Services | MSA | 3D at Depth, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 2 | 1/1/2014 | Oilfield Services | MSA | Abrado, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 3 | 1/1/2014 | Oilfield Services | MSA | ACADIAN CONTRACTORS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 4 | 1/1/2014 | Oilfield Services | Master Ground Transportation Contract | ACME TRUCK LINE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 5 | 1/25/2016 | Other | Master Services Contract - Quarterly Preventive Maintenance (Houston ofc) | ACS MAINTENANCE SOLUTIONS, INC | Fieldwood Energy LLC | n.a. | n.a. | $4,378.96 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 6 | 11/7/2017 | Oilfield Services | MSA | ADAPT CONCEPTS, LLC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 7 | 9/6/2018 | Oilfield Services | MSA | ADD ENERGY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 8 |  | Non-Oilfield Services | Perpetual Software License Agreement | Adobe Software | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 9 |  | Other | processes direct deposits, garnishments and tax | ADP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 10 |  | Oilfield Services | Fieldwood Energy LLC Purchase Order Terms and Conditions | Advanced Biocatalytics Corporation | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 11 | 1/1/2014 | Oilfield Services | MSA | Advanced Logistics, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 12 | 4/1/2014 4/1/2014 4/1/2020 | Other Services Agreements | Response Resources Agreement Utilization Agreement A&R Utilization Agreement | AET Inc. |  | Area wide |  | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 13 |  | Oilfield Services | MSA | AGGREKO LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 14 | 1/1/2014 | Non-Oilfield Services | Consulting Agreement | AGILINK TECHNOLOGIES INC | Fieldwood Energy LLC | n.a. | n.a. | $19,980.24 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 15 |  | Non-Oilfield Services | Consulting Agreements | AGILINK TECHNOLOGIES INC | Fieldwood Energy LLC | n.a. | n.a. | $19,980.24 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 16 |  | Oilfield Services | MSA, Work Order For Quincy Compressor Model QSI-220i | AIRE TECHNOLOGIES, COMPRESSED AIR SYSTEMS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 17 | 11/8/2018 | Oilfield Services | Technical Services Contract | AKER SOLUTIONS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 18 | 9/17/2020 | Oilfield Services | Fieldwood Energy LLC Purchase Order Terms and Conditions | Alamo Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 19 | 12/14/2016 | Other Misc. | by and between Fieldwood Energy LLC and All Aboard Development Corporation: All Aboard Development Corp. surrender of interest | All Aboard Development Corporation; Walter Oil and Gas Corporation | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 20 | 7/14/2016 | Non-Oilfield Services | Master Services Agreement | ALPHEUS DATA SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 21 |  | Non-Oilfield Services | Master Services Agreements | ALPHEUS DATA SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 22 | 1/1/2014 | Oilfield Services | MSA | ALTEC, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 23 | 10/1/1997 | Lease of Platform Space | Lease of Platform Space - Amberjack Pipeline Company at GC 65 "A" Platform | Amberjack Pipeline Company | Fieldwood Energy Offshore LLC | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 24 | 12/1/1997 | Facilities & Tie-In Agreements | Offshore Tie-in - Amberjack Pipeline Company at GC 65 "A" Platform | Amberjack Pipeline Company | Fieldwood Energy Offshore LLC | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 25 | 3/27/2017 | Facilities & Tie-In Agreements | APPROVAL BY FIELDWOOD ENERGY OFFSHORE LLC TO ASSIGN AND ASSUMPTION TO CONSENT TO ASSIGN BETWEEN AMBERJACK PIPELINE COMPANY AND SHELL OFFSHORE INC. | AMBERJACK PIPELINE COMPANY AND SHELL OFFSHORE INC. | Fieldwood Energy Offshore LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x |  |  |
| 26 | 3/27/2017 | Offshore Tie-in Agreement | by and between Fieldwood Energy Offshore LLC, Fieldwood Energy LLC and Amberjack Pipeline Company LLC: Consent of PSA between Empire and Amberjack subject to addendum | Amberjack Pipeline Company LLC | Fieldwood Energy Offshore LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x |  |  |
| 27 | 7/11/2009 | Marketing - Construction, Operations, Management, Ownership Agreements | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and ? | Amberjack Pipeline, Chevron Pipe Line Company | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x |  |  |
| 28 | 7/11/2009 | Marketing - Construction, Operations, Management, Ownership Agreements | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and ? | Amberjack Pipeline, Chevron Pipe Line Company | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x |  |  |
| 29 | 7/11/2009 | Marketing - Construction, Operations, Management, Ownership Agreements | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and? | Amberjack Pipeline, Chevron Pipe Line Company | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x |  |  |
| 30 |  | Non-Oilfield Services | Addendum to Existing Interior Landscaping Agreement effective 03/03/2020 | AMBIUS | Fieldwood Energy LLC | n.a. | n.a. | $3,494.77 | Assume and assign to Credit Bid Purchaser |  | x |  |  |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open prepetition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW II | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | 6/1/2000 | Marketing - Connection Agreement | Connection Agreement between Ambjerck Pipeline and Anadkaro, Shell and Ocean Energy, INC. | Ambjerck Pipeline and Anadkaro, Shell and Ocean Energy, INC. | | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | | |
| 32 | 2/17/2014 | Oilfield Services | Master Rental Services Agreement | Amega West Services, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | | |
| 33 | 10/1/1995 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. | AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. | | WD 121 Lease G19843, WD 122 Lease G13645 | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 34 | 3/7/1996 | Joint Development / Venture / Exploration Agreements | JOINT DEVELOPMENT AREA AGREEMENT DATED MARCH 7, 1996, BY AND BETWEEN LOUISIANA LAND AND EXPLORATION COMPANY AND ENSERCH EXPLORATION, INC, ET AL COVERING PORTIONS OF BLOCKS 107, 108, 118 AND 117, EUGENE ISLAND. | Amerada Hess Corporation, Vastar Resources Inc., Hardy Oil & Gas USA, Inc., British-Borneo Exploration, Zilkha Energy Company, Louisiana Land and Exploration Company, Enserch Exploration, Inc. | Fieldwood Energy LLC Fieldwood Energy Offshore LLC | EI 107 Lease G15241, EI 108 Lease G03811, EI 117 Lease G34293, EI 118 Lease G15242 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 35 | 6/28/2018 | Oilfield Services | MSA; Transfer of ABS MSA to Affiliate | American Bureau of Shipping; ABSG Consulting, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 36 | 1/1/2014 | Oilfield Services | Master Ground Transportation Contract | AMERICAN EAGLE LOGISTICS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 37 | | Oilfield Services | 502519_Master Services Agreement dated effective 01/03/2014 | AMERICAN TANK CO, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 38 | 3/25/2004 | Joint Development / Venture / Exploration Agreements | Amendment to Joint Venture Development Agreement, dated March 25, 2004 between Anadarko E & P Company LP; Chevron U.S.A. Inc.; Hunt Oil Company, Hunt Petroleum, the George.R.,Brown Partnership LP, Offshore Investment ,Cov and the Lamar Hunt Trust Estate,, whereby the Unit 'was expanded | Anadarko E&P Company LP | Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 39 | 3/1/1998 | Unit Agreement and/or Unit Operating Agreement | UNIT OPERATING AGREEMENT DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. UNIT NO.754398019 | ANADARKO PETROLEUM CORPORATION AND SHELL INC. | Fieldwood Energy Offshore LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | | |
| 40 | 3/1/1998 | Unit Agreement and/or Unit Operating Agreement | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF EXPLORATION, DEVELOPMENT, AND PRODUCTION OPERATIONS ON THE GRAND ISLE BLOCK 116 UNIT, DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AND SHELL OFFSHORE INC. UNIT NO.754398019 | ANADARKO PETROLEUM CORPORATION, AND SHELL OFFSORE INC. UNIT NO.754398019 | | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | | |
| 41 | 3/2/1998 | Letter Agreement - Other Land | LETTER AGREEMENT DATED MARCH 2, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, ET AL, AND AMOCO PRODUCTION COMPANY, ET AL. | ANADARKO PETROLEUM CORPORATION, ET AL, AND AMOCO PRODUCTION COMPANY, ET AL. | Fieldwood Energy Offshore LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 42 | 6/1/2000 | Marketing - Connection Agreement | TIE IN AGREEMENT ON PLATFORM AMERQACK PIPELINE COMPANY BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, SHELL OFFSHORE, INC., AND OCEAN ENERGY, INC. | ANADARKO PETROLEUM CORPORATION, SHELL OFFSHORE, INC., AND OCEAN ENERGY, INC. | | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | | |
| 43 | 2/1/2004 | Joint Operating Agreement | Joint Operating Agreement by and between Anadarko Petroluem Corporation and Noble Energy, Inc. dated effective February 1, 2004 and amended by : (a) First Amendment dated 8 Apr 04 (b) Second Amendment dated 12 Sep 12 (c) Third Amendment dated 1 Jan 13 | Anadarko US Offshore LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 44 | 3/1/2004 | Dedication Agreements | Dedication of GC 282 to ANR Pipeline dated 1 Mar 2004 | ANR Pipeline Company | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 45 | 9/28/2001 | Marketing - Connection Agreement | CONNECTION AGREEMENT INSTALLATION OF FACILITIES | ANR PIPELINE COMPANY , FOREST OIL CORPORATION | | SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | | |
| 46 | Original - 9/30/2013; 1st Amend 1/14/2014; 2nd Amend 9/7/2017; 3rd Amend 6/7/2018 | Non-O&G Real Property Lease / Rental / Sublease Agreements | Sublease agreement between Fieldwood Energy and Apache Total Area: B0300, B0150, B0200, L12, L15, L16, L17 and L18 Square Footage: 133,685 SF Address: 2000 W Sam Houston Pkwy S, Houston, TX 77042 | Apache | Fieldwood Energy LLC | Total Area: B0300, B0150, B0200, L12, L15, L16, L17 and L18 Square Footage: 133,685 SF | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 47 | 6/3/2011 | Other Notices | Apache Notice Letter, dated June 3, 2011, non-consented EB 159 #A-9 Well, Thru Tubing Gravel Pack GM 2-2. | Apache | Fieldwood SD Offshore LLC | EB 159 Lease G02646 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 48 | 11/20/2012 | Indemnity and Release Agreement | GAS IMBALANCE SETTLEMENT RELEASE AND INDEMNITY AGREEMENT BETWEEN APACHE AND SARATOGA, AS SUCCESSOR-IN-INTEREST UNDER THE TIE-IN MEASUREMENT AND ALLOCATION AGREEMENT | APACHE AND SARATOGA | | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 49 | 6/15/2012 | Marketing - Connection Agreement | REQUEST FOR CONSENT TO ASSIGN SM 149C TIE IN CONNECTION TO SHELL BETWEEN APACHE AS SUCCESSOR IN INTEREST TO UNION OIL AND FOREST OIL AND EQUILON ENERPRISES | APACHE AS SUCCESSOR IN INTEREST TO UNION OIL AND FOREST OIL AND EQUILON ENERPRISES | | SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | | |
| 50 | 9/30/2013 | Acquisition / PSA / Other Purchase or Sale Agreements | Owned property - pay annual taxes Orignaly aquired by Apache in 2011 acqisition. Included in Project Tobasco Agreement for $1 Total Area: 3 buildings; office/warehouse space Square Footage: approx. 33,800 SF on approx 6 acres Address: 4677 NW Evangeline Thruway Carencro LA | Apache Corporation | | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | | |
| 51 | 12/2/2014 | Other | First Amendment to Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | | |
| 52 | 1/3/2018 | Other | Letter Agreement Amending Fourth Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:

[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.

[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).

[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.

[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.

[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.

[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.

[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.

[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 53 | 4/11/2018 | Other | Fifth Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 54 | 5/21/2019 | Other | Third Amendment to Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 55 | 7/1/2016 | Other | Third Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 56 | 9/1/2017 | Other | Fourth Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 57 | 9/30/2013 | Other | Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser | | x | | |
| 58 | 9/30/2013 | Other | Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $49,783,795** | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 59 | 9/30/2013 | Other | First Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 60 | 9/30/2013 | Other | Second Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 61 | 9/7/2017 | Other | Second Amendment to Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser | | x | | |
| 62 | 9/30/2013 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchased GOM Shelf as a company from Apache | Apache Corporation | GOM Shelf LLC | BA A0133 g02665, EI 217 g00978, EI 246 810, EI 266 811, EI 267 812, EI 269 813, EI 330 g02115, GI 32 174, GI 39 126, GI 39 126, GI 40, GI 41, GI 42, GI 43, GI 44, GI 46, GI 47, GI 48, GI 52, HI 110, HI 111, MP 91, MP 296, MP 300, MP 303, MP 311, SS 91, SS 198, SS 198, SS 199, SS 199, SM 109, SM 127, SM 128, SP 75, SP 87, WD 67, WD 68, WD 69, WD 70, WD 71, WD 94, WD 95, WD 96 | | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 63 | 1/13/2003 | Farmout Agreement | Farmout Agreement between Apache Corporation & Hunt Petroleum (AEC), Inc. | Apache Corporation & Hunt Petroleum (AEC), Inc. | | SM 40 Lease G13607 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 64 | 5/19/2020 | Confidentiality / AMI and Related Consents | Area of Mutual Interest Agreement by and between FIELDWOOD ENERGY OFFSHORE LLC(SUCCESSOR TO GRYPHON EXPLORATION COMPANY) ANDAPACHE CORPORATION (SUCCESSOR TO SPINNAKER EXPLORATION COMPANY, L.L.C.) | APACHE CORPORATION (SUCCESSOR TO SPINNAKER EXPLORATION COMPANY , L.L.C.) | Fieldwood Energy Offshore LLC | SS 301 Lease G10794 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 65 | 8/1/2010 | Marketing - Service Agreement | SERVICE AGREEMENT SOUTH PASS 49 PIPELINE QUALITY BANK SERVICES BY AND BETWEEN APACHE CORPORATION AND ALLOCATION SPECIALIST, LTD. | APACHE CORPORATION AND ALLOCATION SPECIALIST, LTD. | | SP 49 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 66 | 2/1/2013 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC | APACHE CORPORATION AND ENERGY XXI GOM, LLC | Fieldwood Energy LLC | SP 62 Lease G01294, VK 899 Lease G34408 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 67 | 2/1/2013 | Confidentiality / AMI and Related Consents | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC | APACHE CORPORATION AND ENERGY XXI GOM, LLC - AREA OF MUTUAL INTEREST: APACHE CORPORATION, GOM SHELF LLC AND ENERGY XXI GOM LLC | Fieldwood Energy LLC | SP 62 Lease G01294, VK 899 Lease G34408 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 68 | 6/30/2003 | Lease of Platform Space | by and between Apache Corporation and Hunt Petroleum (AEC), Inc. | Apache Corporation and Hunt Petroleum (AEC), Inc. | | SM 40 Lease G13607 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 69 | 2/9/2009 | Facilities & Tie-In Agreements | TIE-IN, MEASUREMENT AND ALLOCATION AGREEMENT BETWEEN APACHE CORPORATION AND LOBO OPERATING, INC.(Grand Bay Receiving Station) | APACHE CORPORATION AND LOBO OPERATING, INC.(Grand Bay Receiving Station) | | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 70 | 8/20/2007 | Option Agreement | OPTION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND MAGNUM HUNTER PRODUCTION, INC. | APACHE CORPORATION AND MAGNUM HUNTER PRODUCTION, INC. | Fieldwood Energy LLC | ST 287 Lease G24987 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 71 | 11/8/2012 | Operating Agreement - Other | Attached to and made part of that certain Participation Agreement dated November 8, 2012 by and between Apache Corporation and Monforte Exploration LLC | Apache Corporation and Monforte Exploration LLC | | SM 48 Lease 786 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | | x | | |
| 72 | 11/8/2012 | Property Participation & Exchange Agreements | Participation Agreement dated November 8, 2012 by and between Apache Corporation and Monforte Exploration LLC | Apache Corporation and Monforte Exploration LLC | | SM 48 Lease 786 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 73 | 2/1/1999 | Operating Agreement - Other | b/b Apache Corporation and PETSEC Energy Inc. | Apache Corporation and PETSEC Energy Inc. | | MP 5 Lease SL13890, MP 6 Lease SL03771, MP 6 Lease SL13580, MP 6 Lease SL13891, MP 7 Lease SL03773, MP 7 Lease SL13892, MP 91 Lease G14576 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 74 | 11/15/2007 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION As Amended 10 January 2009" here as there is an amendment, dated 10 Jan 2009 that describes both the CRRI we pay to Magnum Hunter and the provenance by which Ridgewood never received an assignment in ST 287 as they went Non Consent in the Side Track, but they still retain their share of PA (25%) in the Tophole of the Producer on ST 287 (via the OA of the same date as the original PA at #382) | APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | Fieldwood Energy LLC | ST 287 Lease G24987 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 75 | 11/15/2007 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | | ST 287 Lease G24987 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 76 | 11/20/2021 | Facilities & Tie-In Agreements | AMENDMENT TO PROVIDE FOR FUEL GAS BETWEEN APACHE CORPORATION AND SARATOGAS RESULOURCES, INC. | APACHE CORPORATION AND SARATOGAS RESULOURCES, INC. | | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 77 | 3/15/2011 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND STONE ENERGY OFFSHORE LLC | APACHE CORPORATION AND STONE ENERGY OFFSHORE LLC | | MP 314, 315 Lease G33693, MP 315 Lease G08467 | EPL OIL & GAS, LLC; HE&D OFFSHORE LP, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 78 | 9/17/2012 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND WALTER OIL & GAS CORPORATION | APACHE CORPORATION AND WALTER OIL & GAS CORPORATION | Fieldwood Energy LLC | GI 54 Lease G27173 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan or Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 79 | 7/1/2013 | Joint Operating Agreement | Joint Exploration Agreement dated 9/30/2013 but effective 7/1/2013 b/b Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood Energy LLC, and GOM Shelf; OA attached as Exhibit D | Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood Energy LLC, and GOM Shelf, OA attached as Exhibit D | Fieldwood Energy LLC; GOM Shelf LLC | WC 111 Lease 82, WC 130 Lease G12761, WC 144 Lease G01953, WC163 Lease G05290, WC 165 Lease 758, WC 172 Lease G01998, WC 225 Lease G00900, WC 269 Lease G13563, WC 260 Lease G04818, WC 295 Lease G24730, WC 300 Lease G15078, WC 310 Lease G17789, WC 401 Lease G07619, WD 34 Lease G03414, WD 38 Lease G22772, WD 41 Lease G01073, WD 42 Lease G16470, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838, WD 75 Lease G01085, WD 90 Lease G01089, WD 94 Lease 839, WD 95 Lease G01497, WD 96 Lease G148B, WD 103 Lease 840, WD 104 Lease 841, WD 105 Lease 842, WD 121 Lease G19843, WD 122 Lease G13645, WD 128 Lease G19883, WD 133 Lease G1106, EC 2 Lease 16475, WC 33 Lease 16473, EC 24 Lease G04006, EI 224 Lease G05504, EI 307 Lease G02110, MI 623 Lease G55000, MI 635 Lease G06043, ST 311 Lease G31418, VR 271 Lease G04800, WC 110 Lease 81, EI 10 Lease G23851, MC 21 Lease G28531, VK 205 Lease G10942, BA 491 Lease G06069, BA A47 Lease G03940, BA A105 Lease G01757, BA A133 Lease G02665, BS 41 Lease G21142, BS 53 Lease G21142, EC 2 Lease SL18121, EC 23 Lease G17858, EC 39 Lease G02037, EC 261 Lease G00971, EC 264 Lease G01880, EC 265 Lease G00972, EC 278 Lease G00974, EC 328 Lease G04006, EC 334 Lease G02062, EC 335 Lease G02439, EC 9/14 Lease G01440, EC 37 Lease G20933, EC 71 Lease G13578, EI 10 Lease G23851, EI 105 Lease 797, EI 106 G17965, EI 107 Lease G15241, EI 108 Lease G08811, EI 118 Lease G15242, EI 119 Lease 49, EI 120 Lease 50, EI 125 Lease 51, EI 126 Lease 52, EI 136 Lease G03152, EI 158 Lease G01220, EI 173 Lease G18623, EI 174 Lease G03782, EI 175 Lease 438, EI 187 Lease G10736, EI 189 Lease 423, EI 196 Lease 802, EI 196 Lease G13821, EI 208 Lease 577, EI 211 Lease G05502, EI 212 Lease G05503, EI 217 Lease G00978, EI 224 Lease G05504, EI 227 Lease G00909, BI 246 Lease 810, EI 255 Lease G01568, EI 266 Lease 811, EI 267 Lease G10912, EI 269 Lease 813, EI 280 Lease G23878, EI 281 Lease G08591, EI 282 Lease G09592, EI 312 Lease G23879, EI 313 Lease G05603, EI 316 Lease G05604, EI 227 Lease 809, EI 246 Lease 810, EI 249 Lease 813, EI 260 Lease 813, EI 320 Lease G00504, EI 320 Lease G02915, EI 330 Lease G02115, EI 333 Lease | BISSO EXPLORATION & FAIRFIELD ROYALTY CORP, HILCORP ENERGY 1 LP; BISSO EXPLORATION & CALLON PETROLEUM OPERATING CO; W & T OFFSHORE INC; ANKOR ENERGY LLC; PEREGRINE OIL AND GAS II, LLC; Chevron USA Production Company, CNOOC MARKETING U.S.A. INC., COX OPERATING, L.L.C., SHELL TRADING (US) COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 80 | 12/15/1999 | Letter Agreement - Other Land | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4461 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore, LA. Note: only have Key's executed copy | Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to divisive mergers | x | | | x |
| 81 | | Marketing - Construction, Operations, Management, Ownership Agreements | Owners constructed and own the Laterat Line which is used to connect Gas supplies in the High Island Area to a trunk pipelinesystem owned by High Island Offshore System. These Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and and | Apache Corporation, Enterprise GTM Offshore Operating Company, LLC | Fieldwood Energy LLC | HI A-376 G02754, HI A-376 G02754, HI A-573, WC 290, WC 172 | n.a. | $0.00 | Assume and Allocate pursuant to divisive mergers | x | | | |
| 82 | 2/1/2013 | Joint Development / Venture / Exploration Agreements | MP 296 EXXI Exploration Agreement/Exploration Agreement Apache & Energy XXI 2-1-2013 with Exhibits (tea B) | APACHE CORPORATION, GOM SHELF LLC, ENERGY XXI LLC | Fieldwood Energy LLC | MP 296 Lease G01673 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 83 | 4/23/2013 | Operating Agreement - Other | Amendment and Ratification of OA eff. 4/23/2013 b/b Apache Corporation, GOM Shelf, BDX Exploration, BDX Group, Shoreline Offshore and Tenkay Resources | Apache Corporation, GOM Shelf, BDX Exploration, BDX Group, Shoreline Offshore and Tenkay Resources | GOM Shelf LLC | SS 68 Lease G02917, SS 91 Lease G02919 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 84 | 6/30/2003 | Farmout Agreement | Amendment to Farmout Agreement dated 01-13-2003 Ratification of Joint Area Agreement dated 06-01-2003 SM 40 and SM 41 Between Apache Corporation, Hunt Petroleum AEC Inc and LLOG Exploration Offshore Inc. | Apache Corporation, Hunt Petroleum AEC Inc and LLOG Exploration Offshore Inc. | Fieldwood Energy LLC | SM 40 Lease G13607, SM 41 Lease G01192 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 85 | 7/1/2013 | Acquisition / PSA / Other Purchase or Sale Agreements | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 | Apache Corporation; Apache Deepwater LLC; Apache Shelf, Inc. | Fieldwood Energy LLC | MULTIPLE, ST 67, EI 119, EI 120, EI 125, EI 126, PL 11, WC 110, WC 111, GI 39, GI 39, GI 40, GI 41, GI 41, GI 42, GI 46, GI 47, GI 48, GI 32, GI 43, GI 44, GI 52, WD 67, WD 68, WD 69, WD 70, WC 71, WC 102, SM 241, SS 30, SS 31, SS 36, SS 82, SS 83, SS 160, SS 161, SS 162, SS 170, SS 182, SS 190, SS 198, SS 199, WC 20, VR 131, SM 48, SM 108, EI 246, EI 266, EI 267, EI 269, SS 169, WD 71, WD 94, WD 103, WD 104, WD 105, EC 2 SL16473, EC 2 SL16475, EI 227, EC 265, EC 278, EI 217, SS 248, SS 249, SS 271, SS 274, WD 41, WD 73 G01083, WD 75, WD 90, WD 133, WD 133, SM 10, SM 11, SM 41, SM 66, SM 76, EI 158, ST 161, SP 62, MP 300, EC 9/14, WD 95, WD 96, SS 204, SS 206, SS 207, SS 216, SP 61, SP 69, SP 66, SP 70, SP 89, MP 289, MP 290, MP 296, BA A105, HI 129, WC 35, WC 66, SP 64, WC 144, VR 265, EI 255, ST 148, MP 152, MP 153, EC 336, EI 307, EI 315, EI 330, GI 76, GI 94, MP 140, MP 311, VR 369, VR 386, SM 106, SM 132, SM 268, SM 269, EI 333, EI 342, EI 361, HI 110, HI 111, HI A-474, HI A-489, HI A-572, HI A-573, EC 335, VR 380, SM 128, SM 136, SM 137, SM 149, SM 281, EI 57, BA A133, HI A537, HI A582, HI A-595, HI A-596, HI A-595, HI A-376, HI A-382, WC 35, WC 65, WC 66, SM 127, SM 141, EI 329, SS 68, SS 91, SS 291, PL 9, PL 10, MC 311, MU A-111, MI 623, EI 136, PL 13, MP 59, MP 120, GA 180, HI 179, HI 193, WC 34, WC 67, VR 261, EI 337, MP 304, SM 106, EI 174, EI 353, SA 13, SS 182, ST 53, MP 310, SS 189, PL 1, MP 303, VR 78, SM 236, MP 77, MP 301, VR 271, SM 161, WC 290, MP 64, VK 204, MI 622, EI 316, SS 259, SP 75, MI 518, WC 163, VR 252, EI 211, EI 212, EI 224, SS 175, SS 178, ST 205, ST 206, ST 295, EW 826, PN 969 G05953, PN 976 G05954, MI 635, BA 491, HI 116, HI 176, VK 780, SS 58, ST 276, SP 87, MP 259, MP 260, VK 203, VK 692/693, MP 59, MP 315, SM 18, MP 309, VR 332, VR 363, VR 371, SS 103, SS 177, MC 108, EC 328, VR 362, EI 187, EI 354, SS 190, SS 243, SS 276, SS 301, WD 128, SP 88, MP 281, VK 251, VK 340, HI A442, SS 159, PL 5, SS 87, SS 198, SS 199, WD 103, HI 45, SB 126, SS 270, SB 126, VK 894, EC 24, EC 71, SM 40, EI 173, WD 122, SS 193, ST 229, GI 110, GI 116, SM 280, EI 346, PL 29, MP 91, WC 33, VR 408, EI 334, SS 101, SS 194, SS 301, MP 275, VK 924, GA 151, VR 381, SM 150, ST 290, ST 291, MP 312, HI A545, VR 253, VR 356, SM 304 | | $0.00 | Assume and Allocate pursuant to divisive mergers | x | | | |
| 86 | 9/27/2013 | Abandonment / Decommissioning Agreement | FULLY-PAID UP TURNKEY REMOVAL CONTRACT by and among APACHE CORPORATION, AP ACHE SHELF, INC., AND APACHE DEEPWATER LLC as Company and GOM ENERGY LLC as Contractor, Dated as of September 27, 2013 | Apache Corporation; Apache Deepwater LLC; Apache Shelf, INC. | GOM Shelf LLC | MULTIPLE | | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 87 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | SS 259 Lease G05044 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 88 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | ST 276 Lease G07780 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 89 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | ST 296 Lease G12981 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 90 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 91 | 12/28/2013 | Well / Prospect Proposals | Letter proposing well B-19 MP 302 well by and between Fieldwood Energy Offshore LLC, Apache Corporation and Apache Shelf Exploration LLC | Apache Corporation; Apache Shelf Exploration LLC | Fieldwood Energy Offshore LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 92 | 3/15/2013 | Joint Development / Venture / Exploration Agreements | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC | Apache Corporation; Pisces Energy LLC | Fieldwood Energy Offshore LLC | VR 271; Lease G04800, SM 87 Lease G24870 | CASTEX OFFSHORE, INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB balances based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 93 | 8/25/2011 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 94 | 5/1/2012 | Other Transportation Agreements | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 95 | 9/21/2007 | Farmout Agreement | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION | APACHE CORPORATIONand SENECA RESOURCES CORPORATION | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 96 | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 97 | 2/1/2010 | Farmout Agreement | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 98 | 9/15/1978 | Joint Operating Agreement | Amendment of Operating Agreement, dated September 15, 1978, between Amoco Production Company, Mobil Oil Corporation, and 'Union Oil Company of California. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 160 Lease G02647, EB 161 Lease G02648 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 99 | 9/11/1975 | Joint Operating Agreement | First Amendment to Operating Agreements, dated effective September 1, 1975, between Mobil Oil Corporation, Amoco Production Company, and 'Union Oil Company of California. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645, EB 159 Lease G02646, EB 160 Lease G02647, EB 161 Lease G02648 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 100 | 11/13/1978 | Joint Operating Agreement | Second Amendment to Operating Agreements, dated effective, November 13, 1978, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 101 | 11/13/1978 | Joint Operating Agreement | Third Amendment to Operating Agreements, dated-effective; November 13, 1978, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 102 | 1/1/1980 | Joint Operating Agreement | Third Amendment to Operating Agreements, dated effective January 1, 1980, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 103 | 4/22/1980 | Joint Operating Agreement | Amendment to Operating Agreement, dated April 22, 1980, between Union Oil Company, of California and Amoco Production Company. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 159 Lease G02646, EB 160 Lease G02647 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 104 | 7/1/1986 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective July 1, 1986., between Amoco Production Company; Union Oil Company of California, and Mobil Producing(Texas & New Mexico, Inc. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645, EB 159 Lease G02646, EB 160 Lease G02647, EB 161 Lease G02648 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 105 | 1/1/2001 | Joint Operating Agreement | Fifth Amendment to Operating Agreements, dated effective January 1, 2001, between Union Oil Company of California and Vastar Offshore.Inc | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 106 | 1/15/2001 | Joint Operating Agreement | Amendment to Operating Agreement, dated January 15 , 2001, between Union Oil Company, Amoco Production Company, and Vastar Offshore,Inc | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 107 | 7/1/2013 | Assignment of Oil & Gas Leasehold Interest(s) | Stipulates the interest held by Apache Offshore Petroleum Limited Partnership. Fieldwood Energy LLC and Third parties | Apache Offshore Petroleum Limited Partnership | Fieldwood Energy LLC | PN 969 G05953 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 108 | 10/31/1988 | Farmout Agreement | Farmout Agreement 10/31/1988 | Apache Shelf | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 109 | 3/10/1989 | Farmout Agreement | Ratification of Farmout Agreement 3/10/1989 | Apache Shelf | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 110 | 12/1/1992 | Farmout Agreement | Farmout 12/1/1992 | Apache Shelf | Fieldwood Energy LLC | VR 363 Lease G09522 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 111 | 12/30/1993 | Operating Agreement - Other | WD 90, WD 103 Operating AgreementIS 12-30-1993 | Apache Shelf | Fieldwood Energy LLC | WD 0090 Lease G01089, WD 0103 Lease G12360 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 112 | 2/7/2000 | Operating Agreement - Other | Operating Agreement eff. 2-7-00 | Apache Shelf | Fieldwood Energy LLC | HI 206 Lease G20660 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 113 | 8/1/2004 | Operating Agreement - Other | Operating Agreement 8/1/04 | Apache Shelf | Fieldwood Energy LLC | HI A341 Lease G25605 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 114 | 10/17/2006 | Joint Operating Agreement | Operating Agreement eff. 10-17-06 | Apache Shelf | Fieldwood Energy LLC | EC 37 Lease G25933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 115 | 1/4/2007 | Farmout Agreement | Farmout Agreement | Apache Shelf | | SM 44 Lease G23840 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 116 | 3/8/2007 | Property Participation & Exchange Agreements | Participation Agreement as Amended | Apache Shelf | | SM 44 Lease G23840 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 117 | 1/1/1993 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement eff. 1-1-93 | Apache Shelf | Fieldwood Energy LLC | VK 203 Lease G07890, VK 204 Lease G04921 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 118 | 5/2/2014 | Letter Agreement - Other Lend | Set forth the agreement between Apache Shelf and Fieldwood for the drilling of the EI 126 A-5 well | Apache Shelf Exploration LLC | Fieldwood Energy LLC | EI 126 Lease 52 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 119 | 7/1/2013 | Joint Operating Agreement | JOperating Agreement covering OCS-G 32264 MP 302 | Apache Shelf Exploration LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 120 | 12/4/2013 | Other Lease / Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC - Amends certain Slot Rental Agreement dated 12/26/2012 | Apache Shelf Exploration LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 121 | 3/13/2014 | Elections | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC: Proposal to run casing and election by Apache | Apache Shelf Exploration LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 122 | 4/28/2014 | Marketing - PHA | PHA MP311B-MP302B19 by and between Fieldwood and APACHE SHELF EXPLORATION LLC and APACHE SHELF EXPLORATION LLC | APACHE SHELF EXPLORATION LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 123 | 7/1/2013 | Joint Operating Agreement | EI 136 Operating Agreement covering depths below 19,135' SSTVD | Apache Shelf Exploration LLC | Fieldwood Energy LLC | EI 136 Lease G03152 | APACHE SHELF EXPLORATION LLC, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 124 | 8/19/2019 | Preferential Rights Agreement | Negative Pref election assignment by Apache Shelf Exploration to Juneau by and between Apache Shelf Exploration LLC Fieldwood Energy Offshore LLC & GOM Shelf LLC | Apache Shelf Exploration LLC Fieldwood Energy Offshore LLC & GOM Shelf LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 125 | 1/1/1989 | Operating Agreement - Other | WD/GI UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Apache Shelf Exploration LLC, Atlantic Richfield Company, BP Exploration & Production Inc., Conoco Inc., Fieldwood Energy Offshore LLC, GOM Shelf LLC, OXY USA Inc., Texaco Producing Inc. | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 32 Lease 174, GI 42 Lease 131, GI 43 Lease 175, GI 44 Lease 176, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume (and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 126 | 2/22/2019 | Joint Development / Venture / Exploration Agreements | APA - EXXI MP 295 Side Ltr Agrmnt dtd 2-22-13 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 127 | 2/1/2013 | Operating Agreement - Other | b/b Apache Shelf Exploration LLC, Fieldwood Energy LLC and Energy XXI GOM, LLC as amended | Apache Shelf Exploration LLC, Fieldwood Energy LLC and Energy XXI GOM, LLC as amended | Fieldwood Energy LLC | MP 145 G35283, MP 272 Lease G34865, MP 294 N/2 Lease G34394, MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 128 | 5/1/1995 | Unit Agreement and/or Unit Operating Agreement | Amendment-to Unit Operating Agreement, dated effective May 1, 1995, by and between Conoco Inc., Vastar Resources, Inc., Texaco Exploration and Production Inc. and Oxy USA Inc. | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume (and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 129 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Apache Shelf Exploration LLC; BP Exploration & Production Inc.; Fieldwood Energy Offshore LLC; GOM Shelf LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | SS 199 Lease G12358 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the operating contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*  [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 130 | 1/1/1989 | Operating Agreement - Other | GI CATCO UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL Unit No. 891002021 | Apache Shelf Exploration LLC; BP Exploration & Production Inc.; Fieldwood Energy Offshore LLC; GOM Shelf LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 39 Lease 126, GI 39 Lease 127, GI 40 Lease 128, GI 41 Lease 129, GI 41 Lease 130, GI 46 Lease 132, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 131 | 1/21/1966 | Unit Agreement and/or Unit Operating Agreement | Unit No. 891008784 - SS 271 | Apache Shelf Exploration LLC; Bureau of Ocean Energy Management; Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Hillcrest GOM, Inc.; Talos ERT LLC; W & T Energy VI, LLC; W & T Offshore, Inc. | Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 270 Lease G01037, SS 271 Lease G01038 | TALOS ERT LLC, W T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 132 | 11/21/1955 | Unit Agreement and/or Unit Operating Agreement | West Delta-Grand Isle Unit Agreement, dated November 21,1955, between Continental Oil Company, as unit operator, and The Atlantic Refining Company, Tidewater Associated Oil Company and Cities Service Production Company, as non-operators, as amended ; Unit No. 891002454 | Apache Shelf Exploration LLC; BP Exploration Production Inc.; Fieldwood Energy Offshore LLC; GOM Shelf LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 32 Lease 174, GI 42 Lease 131, GI 43 Lease 175, GI 44 Lease 176, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 133 | 4/1/2014 | Farmout Agreement | Farmout Agreement: OCS-G 13576; East Cameron Block 71 (Limited to the NE/4 of the block and a Contract Area created to include the Farmout Area and EC 58 S/2) | Apache Shelf LLC; CASTEX OFFSHORE INC | Fieldwood Energy LLC | EC 71; Lease G13576 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 134 | 7/1/1989 | Operating Agreement - Other | Operating Agreement eff. 7/1/89 | Apache Shelf, Thistlewood Energy, Endeavour O&G, Agincourt, Westmount Resources, Arcadia Oil | Fieldwood Energy LLC | EI 255 Lease G01958 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 135 | 2/11/1999 | Operating Agreement - Other | Operating Agreement eff. 2-11-99 | Apache Shelf, Thistlewood Energy, Endeavour O&G, Agincourt, Westmount Resources, Arcadia Oil | Fieldwood Energy LLC | EI 255 Lease G01958 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 136 | | Marketing - Construction, Operations, Management, Ownership Agreements | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fieldwood) by and between Fieldwood Energy LLC and Anoit | Apache, Fieldwood Energy LLC, and Bonito Pipeline Owners | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G05040, EI 330 Lease G02115, EI 281 Lease G09591, EI 282 Lease G09592, EI 329 Lease G02912, EI 337 Lease G03332, EI 354 Lease G10752, EI 353 Lease G03783, EI 361 Lease G02324 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 137 | 11/2/2010 | Marketing - Construction, Operations, Management, Ownership Agreements | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functions such as paying expenses and maintaing records by and between Fieldwood Energy LLC and anoit | Apache, Fieldwood Energy LLC, and Bonito Pipeline Owners | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 138 | 11/2/2010 | Marketing - Construction, Operations, Management, Ownership Agreements | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functions such as paying expenses and maintaing records by and between Fieldwood Energy LLC and anoit | Apache, Fieldwood Energy LLC, and Bonito Pipeline Owners | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 139 | 2/1/2013 | Data Agreement | Data Agreement effective 2-1-2013 by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and EXXI | APACHE, GOM SHELF, EXXI, FIELDWOOD | Fieldwood Energy LLC; GOM Shelf LLC | SP 62 Lease G01294, VK 899 Lease G34408 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 140 | 3/5/2012 | Withdrawal Agreement | Apache withdrawa and assigns its intrest in the HI 176 Platform A and Pipeline Segment 8569 to Hoactzin and creates an escrow in the amount of $594K for abandonment | Apache, Hoactzin | Fieldwood Energy LLC | HI 176 Lease G06164 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 141 | 2/22/2016 | Elections | by and between Fieldwood Energy LLC, Stone & Shelf Exploration LLC, Hall-Houston Exploration IV, L.P. and GOM Offshore Exploration I, LLC; Hall-Houston withdrawal Election | ApacheShelf Exploration LLC; GOM Offshore Exploration I, LLC; Hall-Houston Exploration IV, L.P. | Fieldwood Energy LLC | SS 176 Lease G33646 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 142 | | Oilfield Services | OTHER SERVICES - 544937_Master Service Agreement dated effective 09/01/2016 | A-PORT LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 143 | | Oilfield Services | 777485_Master_Service_Contract Effective_5-25-2017 | APPSMITHS VENTURES LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 144 | | Oilfield Services | 700020_Master_Service_Contract Effective_11-1-2013 | AQUEOS CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 145 | | Oilfield Services | Contract Compression and Aftermarket Services | ARCHROCK PARTNERS OPERATING LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 146 | | Oilfield Services | Contract Compression and Aftermarket Services | ARCHROCK SERVICES, LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 147 | 1/1/1982 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SOHIO PETROLEUM COMPANY AND EXXON CORPORATION | Arena Energy LP; Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | EI 315 Lease G24912 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 148 | 11/7/2017 | Marketing - PHA | Enhancement and modification to test separator MBD -4010 at HI 547 B Platform - PHA Agreement dated May 8, 1998 | Arena Energy LP; Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC | HI A547 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 149 | 4/1/1977 | Unit Agreement and/or Unit Operating Agreement | UNIT OPERATING AGREEMENT BY AND BETWEEN DEVON ENERGY PRODUCTION , APACHE CORPORATION, ET AL. | Arena Energy Offshore, LP; Arena Energy, LP; Energy XXI GOM LLC; Fieldwood Energy LLC; GOM Shelf LLC; Renaissance Offshore, LLC | Fieldwood Energy LLC; GOM Shelf LLC | EI 330 Lease G02115 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 150 | 4/1/1977 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement, JD Sand, Reservoir A, Eugene Island Block 330 Field (Unit Number 891016943), dated effective April 1,1977, naming Pennzoil Oil & Gas, Inc., as Operator, and Texaco Inc. and Shell Oil Company, as sub-operators | Arena Energy Offshore, LP; Arena Energy, LP; Energy XXI GOM LLC; Fieldwood Energy LLC; GOM Shelf LLC; Renaissance Offshore, LLC | Fieldwood Energy LLC; GOM Shelf LLC | EI 330 Lease G02115, EI 337 Lease G03332 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 151 | 4/17/2018 | Marketing - PHA | by and between Fieldwood Energy LLC and Arena Energy, LP. Amendment to Production Handling Service Agreement dated May 8, 1988 | Arena Energy, Lp | Fieldwood Energy LLC | HI A547 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 152 | 8/8/2018 | Elections | In accordance with certain Farmout Agreements dated 12/17/2002, 05/19/2003 and 02/13/2004, Fieldwood elects to decline | Arena Energy, LP; Arena Offshore, LP | Fieldwood Energy LLC | PL 25 Lease G14535 | ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 153 | 7/25/2019 | Farmout Agreement | Pursuant to that certain Farmout dated 12/17/2002. Reassignment to Arena and P&A liability | Arena Energy, LP; Arena Offshore, LP | Fieldwood Energy LLC | PL 25 Lease G14535 | ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 154 | 8/1/2012 | Throughput Capacity Lease Agreement | Fieldwood leases capacity to Arena for Barnacle Pipeline | Arena Offshore, LP | Fieldwood Energy LLC | EI 316; EI 330 Barnacle Pipeline Lease G05040, EI 316; EI 330 Barnacle Pipeline Lease G02115 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 155 | | Oilfield Services | P&A Contractor | ARIO SOLUTIONS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 156 | | Oilfield Services | 701006_PO Terms & Conditions dated effective 10/14/2015 | ARROW MAGNOLIA INTERNATIONAL, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 157 | 11/1/2013 | Non-Oilfield Services | Consulting Agreement | Ascende Inc | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 158 | | Oilfield Services | 529652_Master_Service_Contract Effective_12-31-2019 | ASRC ENERGY SERVICES OMEGA, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 159 | 12/31/2019 | Non-Oilfield Services | License and System Service Agreement | ASSAI SOFTWARE SERVICES BV | Fieldwood Energy LLC | n.a. | n.a. | $11,347.31 | Assume and assign to Credit Bid Purchaser | | x | | |
| 160 | 12/31/2019 | Non-Oilfield Services | License and System Services Agreement | ASSAI SOFTWARE SERVICES BV | Fieldwood Energy LLC | n.a. | n.a. | $11,347.31 | Assume and assign to Credit Bid Purchaser | | x | | |
| 161 | | Oilfield Services | License and System Services Agreement dated effective December 31, 2019 | ASSAI SOFTWARE SERVICES BV | Fieldwood Energy LLC | n.a. | n.a. | $11,347.31 | Assume and assign to Credit Bid Purchaser | | x | | |
| 162 | | Non-Oilfield Services | AT&T Dedicated Ethernet 7663403 | AT & T CORP | Fieldwood Energy LLC | n.a. | n.a. | $1,109.42 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC,** *et al.*
**Prepared June 11, 2021**

Schedule of Assumed Contracts
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 163 | | Non-Oilfield Services | AT&T Mobile Business Agreement dated 07/19/2017 | AT&T MOBILITY | Fieldwood Energy LLC | n.a. | n.a. | $14,234.87 | Assume and assign to Credit Bid Purchaser | | x | | |
| 164 | 11/1/2013 | Non-Oilfield Services | Master Services Contract - Offshore Inspection Services (shelf) | ATHENA CONSULTING INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 165 | | Oilfield Services | 554353_Master Services Agreement dated effective 11/01/2013 | ATHENA CONSULTING INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 166 | 9/10/1991 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND EXXON CORPORATION | ATLANTIC RICHFIELD COMPANY AND EXXON CORPORATION | Fieldwood Energy LLC | ST 67 Lease 20 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 167 | 7/1/1992 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND SAMEDAN OIL CORPORATION | ATLANTIC RICHFIELD COMPANY AND SAMEDAN OIL CORPORATION | Fieldwood Energy LLC | ST 67 Lease 20 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 168 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Atlantic Richfield Company, Texaco Producing Inc., Canadianoxy Offshore Production Company and OXY USA Inc. | Fieldwood Energy Offshore LLC | SS 206 Lease G01522 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 169 | 9/13/1991 | Letter Agreement - Other Land | Letter Agreement by and between Atlantic Richfield Company and Exxon Corporation | Atlantic Richfield Company and Exxon Corporation | | ST 53 Lease G04000; ST 67 Lease 20 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 170 | 7/1/1992 | Well Completion Agreement | Well Completion Agreement by and between Atlantic Richfield Company and Samedan Oil Corporation | Atlantic Richfield Company and Samedan Oil Corporation | | ST 67/68 Lease 20 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 171 | | Well Completion Agreement | Master Services Contract Effective 05/16/17 | Automatic Access Gates LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 172 | 6/15/1999 | Joint Development / Venture / Exploration Agreements | by and between Aviara Energy Corporation and Eugene Island 309, L.L.C. | Aviara Energy Corporation and Eugene Island 309, L.L.C. | | EI 313 Lease G02608 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 173 | 5/18/1999 | Operating Agreement - Other | by and between Aviara Energy Corporation and Texaco Exploration and Production Inc. | Aviara Energy Corporation and Texaco Exploration and Production Inc. | | EI 313 Lease G02608 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 174 | | Non-Oilfield Services | Software Licensing Agreement | AXIO GLOBAL, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 175 | | Oilfield Services | Labor | B & B SERVICES | | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 176 | | Oilfield Services | 514517_Master Services Agreement dated effective 01/30/2014 | B & J MARTIN INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 177 | | Oilfield Services | 510096_Master Services Agreement dated effective 11/01/2013 | BAKER HUGHES OILFIELD OPERATIONS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 178 | 9/15/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO. AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC. AND SAMEDAN OIL CORPORATION, NON-OPERATORS. | Bandon Oil and Gas, LP; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Bandon Oil and Gas, LP; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A365 Lease G02750, HI A376 Lease G02754 | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 179 | | Oilfield Services | 559390_Master Services Agreement dated effective 05/12/2015 | BARRACUDA OIL TOOLS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 180 | | Oilfield Services | 700912_Master Services Agreement dated effective 04/14/2015 | BAYWATER DRILLING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 181 | | Oilfield Services | 538336_Master Services Agreement dated effective 01/01/2014 | BEACON RENTAL & SUPPLY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 182 | | Oilfield Services | 700538_Master Services Agreement dated effective 04/11/2014 | BECNEL RENTAL TOOLS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 183 | | Oilfield Services | 559650_Master Services Agreement dated effective 01/01/2014 | BEDROCK PETROLEUM CONSULTANTS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 184 | | Oilfield Services | 777960_Master Services Agreement dated effective 08/09/2019 | BELZONA HOUSTON / OFFSHORE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 185 | | Oilfield Services | Specialty Coatings Company used in the GOM to Protect the Interior / Exterior Surfaces from Erosion / Corrosion | BELZONA OFFSHORE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 186 | | Oilfield Services | Bucking Up Pup-Joints and Collars | BENTON COMPLETION SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 187 | | Oilfield Services | 777788_Master Services Agreement dated effective 10/09/2018 | BERGER GEOSCIENCES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 188 | 4/1/2005 | Ownership & Partnership Agreements | Partnership agreement by and between BHP Billiton Petroleum (Deepwater) Inc, Noble Energy and Chevron USA re certain operations across GC 238 and GC 282 | BHP Billiton Petroleum (Deepwater) Inc, Noble Energy and Chevron USA re certain operations across GC 238 and GC 282 | Fieldwood Energy LLC | GC 282 Lease G16727, GC 238 Lease G26302 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 189 | 3/1/1997 | Joint Operating Agreement | Joint Operating Agreement by and between BHP Petroleum (Deepwater) Inc and Chevron USA Inc dated 1 Mar 97 (Typhoon Operating Agreement) which is made applicable to the Boris Prospect on GC 282 by that certain Joint Venture Agreement dated 18 Jul 2001. Noble Ratified the JOperating Agreement on 31 August 2001 | BHP Billiton Petroleum Deepwater; CHEVRON USA INC | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 190 | 7/1/2009 | Joint Operating Agreement | Joint Operating Agreement by and between Noble Energy, Inc, Samson Offshore Inc, Murphy Exploration and Production Company - USA and Statoil USA E+P Inc dated 1 July 2009, as amended by (a) 1st Amendment dated 1 Aug 09 (b) 2nd Amendment dated 14 Oct 09 and (c) 3rd Amendment dated 10 Nov 09 | BHP Billiton Petroleum Deepwater; Equinor USA E&P; Murphy E&P USA | Fieldwood Energy LLC | GC 768 Lease G21817, GC 679 Lease G21811 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 191 | 3/1/2004 | Joint Operating Agreement | Joint Operating Agreement by and between BHP Petroleum (Deepwater) Inc and Chevron USA Inc dated 1 Mar 97 (Typhoon Operating Agreement) which is made applicable to the Boris Prospect on GC 282 by that certain Joint Venture Agreement dated 18 Jul 2001. Noble Ratified the JOperating Agreement on 31 August 2001 JBA dated 1 Mar 04 with BHP mandates used of the Boris JOperating Agreement for GC 238 | BHP Petroleum DW; NOBLE NERGY, INC., NORSK HYRDO E&P AMERICAS AS, INC. AND DAVIS OFFSHORE, L.P. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | GC 238 Lease G26302 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 192 | 5/1/2005 | Letter Agreement - Other Land | Letter Agmt by and between BHP, CVX and Noble settling dispute re OH and PHA Fees on Boris and at Typhoon platform dated 29 June 06 | BHP, CVX and Noble settling dispute re OH and PHA Fees on Boris and at Typhoon platform dated 29 June 06 | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 193 | | Oilfield Services | 538911_Rental Agreement dated effective 10/10/2018 | BICO DRILLING TOOLS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 194 | 3/13/2014 | Operating Agreement - Other | Pursuant to change in operatorship per that PSA b/w SandRidge and Black Elk | Black Elk Energy Offshore Operations, LLC | Fieldwood Energy LLC | ST 53 Lease G04000 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 195 | | Oilfield Services | EB 110 P&A Comms Provider | BLACKHAWK DATACOM | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 196 | | Oilfield Services | Cement Heads, Centralizer Subs, Divert Tool | BLACKHAWK SPECIALTY TOOLS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 197 | | Oilfield Services | 564131-Daywork Drilling Contract dated 11-26-2008 | BLAKE INTERNATIONAL RIGS, LLC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 198 | | Oilfield Services | 541284_Master Services Agreement dated effective 11/01/2013; Work Order dated effective 06/14/2014 | BLANCHARD CONTRACTORS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 199 | | Oilfield Services | 537486_Master Services Agreement dated effective 08/25/2016 | BLUE FIN SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 200 | 10/6/2017 | Non-Oilfield Services | Consulting Agreement | Blue Latitudes, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 201 | | Non-Oilfield Services | Perpetual Software License Agreement | BLUE MARBLE GEOGRAPHICS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 202 | | Oilfield Services | 700965_Master_Service_Contract Effective_7-22-2015 | BOBCAT METERING-CALIBRATION SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation having to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the applicable contracts.
[6] Related lease parties represent current lessee co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*  (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.  The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between the terms of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand,  and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW II | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 203 | | Oilfield Services | Pipeline Isolation Tools | BOLTTECH MANNINGS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 204 | 8/5/2000 | Transfer Agreement & Notices | Transfer of Ownership and Title Agreement, made and entered into August 5, 2000, by and between Bonray,Inc.; Energen Resources Corporation; Forcenergy Inc; Gardner Offshore Operation Corporation; Gulfstar Energy, Inc.; Gulfstream Energy Services, Inc.; Liberty Energy Gulf Corporation; Range Energy Ventures Corporation; and V.Saia Energy Interests, Inc., as Seller, to Range Resources Corporation and Chevron U.S.A. Inc., concerning the sale of the Main Pass Block 154 Platform "A" and the wells OCS-G 10902 No. A001 and OCS-G 10902 No. A002, all as more fully described in said document. | Bonray,Inc.; Energen Resources Corporation; Forcenergy Inc; Gardner Offshore Corporation; Gulfstar Energy, Inc; Gulfstream Energy Services, Inc.; Liberty Energy | Fieldwood Energy Offshore LLC | MP 154 Lease G10902 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 205 | | Oilfield Services | Various Drilling Services - Snubbing Units, HWO Units, Consulting Services | BOOTS & COOTS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 206 | | Oilfield Services | 564216_Master Services Agreement dated effective 01/14/2014 | BOSARGE BOATS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 207 | | Oilfield Services | 536394_Master_Service_Contract Effective_4-6-2017 | BOSARGE DIVING INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 208 | | Oilfield Services | 777507_Master Services Agreement dated effective 08/10/2017 | BOSCO OILFIELD SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 209 | 6/13/2018 | Non-Oilfield Services | Cloud Based Document Sharing Site | Box.com | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 210 | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. | BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. | Fieldwood Energy Offshore LLC | WC 34 Lease G02819, WC 35 Lease G01980, WC 66 Lease G02825, WC 77 Lease G02826 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 211 | 12/31/2007 | Operating Agreement - Other | Company Agreement, dated effective December 31, 2007, between BP America Production Company,Chevron USA Inc. and GOM Shelf LLC, amending the Operating Agreements for certain jointly-owned Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 damaged by Hurricane Katrina. | BP America Production Company, Chevron USA Inc. and GOM Shelf LLC | Fieldwood Energy Offshore LLC | WD 69 Lease 181 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 212 | 9/26/2002 | Marketing - Other | WATER SATURATION AGREEMENT BP AMERICA AND CMS TRUNKLINE GAS COMPANY, LLC | BP AMERICA PRODUCTION COMPANY, CMS TRUNKLINE GAS COMPANY, LLC | Fieldwood Energy Offshore LLC | EW 826 Lease G05800 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 213 | 10/3/2019 | Letter Agreement - Other Land | Letter Agreement to BP Project Team for Genovesa by and between BP and FW dated 3 Oct 2019 | BP and FW dated 3 Oct 2019 | Fieldwood Energy Offshore LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 214 | 5/14/2008 | Other Notices | Final Notification Letter Memo-Well Payout, elated May 14, 2008, EB 160 #A-13 well paid out on March 3, 2008. | BP E&P | Fieldwood SD Offshore LLC | EB 160 Lease G02647 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 215 | 1/1/1989 | Unit Agreement and/or Unit Operating Agreement | EI 266 Unit Operating Agreement | EI 266 Unit Operating Agreement | Fieldwood Energy LLC | EI 266 Lease 811, EI 246 Lease 810, EI 267 Lease 812, EI 269 Lease 813 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 216 | 1/1/2012 | Other Lease / Rental Agreement | Lease Rental and Minimum Royalty Payment Agreement by and between BP Exploration and Production, Inc, Marathon Oil Company, Noble Energy, Inc., Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) and Noble Energy, Inc.dated 9 March 2012, but effective 1 Jan 2012 | BP Exploration and Production, Inc., Marathon Oil Company, Noble Energy, Inc., Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) Inc | Fieldwood Energy LLC | MC 993 N/2 Lease G24134 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 217 | 1/1/1994 | Joint Operating Agreement | BP EXPLORATION & OIL INC. AND SHELL OFFSHORE INC ET AL | BP EXPLORATION & OIL INC. | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 218 | 4/2/2007 | Joint Operating Agreement | Joint Operating Agreement – Isabella Prospect, dated effective April 2, 2007, by and between BP Exploration & Production Inc., as Operator and Noble Energy, Inc. (predecessor in interest to Fieldwood Energy LLC) as Non-Operator, governing the Mississippi Canyon Block 562 (OCS-G19966) as amended by a) the first amendment to the Isabella Prospect JOperating Agreement dated 25 October 2018, but made effective as of 15 Oct 2018; b) the second amendment to the Isabella Prospect JOperating Agreement dated 10 Dec 2018, but made effective as of 15 Oct 2018; b) that certain LEase Exchange and Well Participation Agreement by and between BP Exploration and Production and Fieldwood Energy LLC dated and effective 20 Jan 20 | BP Exploration & Production Inc. | Fieldwood Energy LLC | MC 562 Lease G19966 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 219 | 6/3/2014 | Joint Operating Agreement | "Bright" Joint Operating Agreement made part of the "Bright Participation Agreement" dated 3 June 2014 by and between Noble Energy, Inc and BP Exploration and Production, Inc. | BP Exploration & Production Inc. | Fieldwood Energy LLC | MC 474 Lease G35825, MC 518 Lease G35828 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 220 | 10/3/2019 | Letter Agreement - Other Land | Letter Agreement by and between Fieldwood Energy LLC and BP Exploration and Production dated 3 Oct 19 agreeing the method for renumeration of BP for its costs incurred facilitating the tie-in into the BP operated Loop and Na Kika Platform. | BP Exploration & Production Inc. | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 221 | 1/28/2020 | Letter Agreement - Other Land | Letter Agreement by and between Fieldwood Energy LLC and BP Exploration and Production dated 28 Jan 20 permitting Fieldwood to operate certain tie-in operations into the Loop. | BP Exploration & Production Inc. | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 222 | 5/27/2005 | Joint Operating Agreement | Operating Agmt eff. 5-27-2005 b/h BP Exploration & Production Inc. and EOG Resources, Inc. | BP Exploration & Production Inc. and EOG Resources, Inc. | Fieldwood Energy Offshore LLC | GI 94 Lease G02163, GI 93 Lease G02628 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 223 | 5/28/2005 | Property Participation & Exchange Agreements | Participation Agmt eff. 5-28-2005 b/n BP Exploration & Production Inc. and EOG Resources, Inc. | BP Exploration & Production Inc. and EOG Resources, Inc. | Fieldwood Energy Offshore LLC | GI 94 Lease G02163 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 224 | 1/19/2006 | Letter Agreement - Other Land | Letter Agreement, - dated January 19, 2006, between BP Exploration & Production Inc. and Union Oil Company of California. | BP Exploration & Production Inc. and Union Oil Company of California | Fieldwood SD Offshore LLC | EB 158 Lease G02645, EB 159 Lease G02646, EB 160 Lease G02647, EB 161 Lease G02648 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 225 | 12/1/2011 | Joint Operating Agreement | Galapagos Area Loop Subsea Production System Construction and Operating Agreement dated effective December 1, 2011 (as amended) by and between BP Exploration & Production Inc., Fieldwood Energy LLC, Red Willow Offshore, LLC and Houston Energy Deepwater Ventures I, LLC.as amended a) by that certain First Amendment of the Galapagos Area Loop Subsea Production System Construction and Operating Agreement dated effective as of October 10, 2014, b) by that certain Second Amendment of the Galapagos Area Loop Subsea Production System Construction and Operating Agreement dated effective as of October 15, 2018, c) by that certain Third Amendment of the Galapagos Area Loop Subsea Production System Construction and Operating Agreement dated effective as of 1 May 2019. | BP Exploration & Production Inc.; Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore | Fieldwood Energy LLC | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 226 | 5/1/2019 | Joint Operating Agreement | MC 519 DEEP Joint Operating Agreement dated effective May 1, 2019, by and between Fieldwood, Red Willow and HEDV, which governs the operating rights interest on that certain oil and gas lease OCS-G 27278 (MC 519) as amended a) by that certain First Amendment to the MC 519 DEEP JOperating Agreement made effective 31 May 2019 by and between Fieldwood, Red Willow, BP and HEDV | BP Exploration & Production Inc.; Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for contracts assumed through Company sourcing system reconciliations.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the conflict between any of this Plan or Plan of Merger Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 227 | 10/1/2002 | Other Handling / Stabilization Agreements | First Amendment to Orion (MC 110) Platform Access, Operating Services and Production Handling Agreement by and between BP Exploration & Production Inc.; Stone Energy Corporation and Shell Offshore Inc.; Stone Energy Corporation; Ocean Energy, Inc.; Devon SFS Operating, Inc. : Desire to install gas lift system on Anaconda Platform | BP Exploration & Production Inc.; Stone Energy Corporation and Shell Offshore Inc.; Stone Energy Corporation; Ocean Energy, Inc.; Devon SFS Operating, Inc. | | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 228 | 10/15/2018 | Property Participation & Exchange Agreements | Cash Consideration Exchange Agreement by and between BP Exploration and Production Inc and Fieldwood Energy LLC dated 25 October effective 15 October 2018 | BP Exploration and Production Inc and Fieldwood Energy LLC dated 25 October effective 15 October 2018 | Fieldwood Energy LLC | MC 562 Lease G19966 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 229 | 12/15/2011 | Acquisition / PSA / Other Purchase or Sale Agreements | MP 296 MP 296 B19 ST2 Slot & Well Bore Acq Agmt | BP Exploration and Production, Inc, Marathon Oil Company, Noble Energy Inc, Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) Inc | Fieldwood Energy LLC | MP 296 Lease G01673 | EPL OIL & GAS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 230 | | Oilfield Services | 548442_Helicopter Service Agreement dated effective 02/24/2014 | BRISTOW US LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 231 | | Oilfield Services | 500904_MSA dated effective 02/06/2014; Amend. effective 06/01/2015; Amend. effective 03/20/2017 | BROUSSARD BROTHERS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 232 | | Oilfield Services | 777874_Master Services Agreement dated effective 12/13/2018 | BUGWARE, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 233 | 10/27/1954 | Unit Agreement and/or Unit Operating Agreement | Grand Isle CATCO Unit Agreement, dated October 27, 1954, between Continental Oil Company and The Atlantic Refining Company, Tide Water Associated Oil Company and Cities Service Oil Company ; Unit No. 8910020I21 | Bureau of Ocean Energy Management | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 39 Lease 126, GI 39 Lease 127, GI 40 Lease 128, GI 41 Lease 129, GI 41 Lease 130, GI 46 Lease 132, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 234 | 6/1/2010 | Property Participation & Exchange Agreements | Approval of Revision of Participation Area, effective June 1, 2010, whereby the Grand Isle CATCO Unit was revised. | Bureau of Ocean Energy Management | Fieldwood Energy Offshore LLC | GI 39 Lease 127, GI 46 Lease 132, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 235 | 4/1/2012 | Property Participation & Exchange Agreements | Approval of Revision of Participation Area, effective April 1, 2012, whereby the Grand, Isle CATCO Unit was revised. | Bureau of Ocean Energy Management | Fieldwood Energy Offshore LLC | GI 39 Lease 127, GI 46 Lease 132, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 236 | 5/15/1992 | Unit Agreement and/or Unit Operating Agreement | EC 331/332 Unit Agreement | Bureau of Ocean Energy Management | Fieldwood Energy LLC | EC 331 Lease G08658, EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 237 | 11/1/1982 | Unit Agreement and/or Unit Operating Agreement | UNIT AGREEMENT BY AND BETWEEN CONOCO INC. AND CITIES SERVICE COMPANY ET AL | Bureau of Ocean Energy Management | Fieldwood Energy LLC | MP 296 Lease G01673, MP 303 Lease G04253, MP 304 Lease G03339 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 238 | 6/15/1993 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Green Canyon Block 244 Unit (Contract No. 754393016) dated effective June 15, 1993, covering OCS-G 11043 (Green Canyon Block 244), OCS-G 12209 (Green Canyon Block 209) and OCS-G 12210 (Green Canyon Block 201). | Bureau of Ocean Energy Management | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | GC 200 Lease G12210, GC 201 Lease G12209, GC 244 Lease G11043 | LLOG EXPLORATION COMPANY, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, WILD WELL CONTROL INC, CHEVRON U.S.A. INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY; RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 239 | 4/13/1998 | Letter Agreement - Other Land | LETTER–NIPPON TAKES ITS SHARE OF COperating AgreementSTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. | Bureau of Ocean Energy Management, ELF EXPLORATION INC., COASTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 240 | 12/18/2002 | Pooling Agreement | POOLING AGREEMENT DATED DECEMBER 18, 2002, BY AND BETWEEN THE STATE OF TEXAS AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Bureau of Ocean Energy Management, THE STATE OF TEXAS, AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | PN 883 Lease MF100410, PN 883 Lease MF100411, PN 883 Lease MF100412, PN 883 Lease MF101898, PN 883 Lease MF96146, PN 883 Lease MF96147, PN 883 Lease SL96146 | EPL OIL & GAS, LLC; TALOS ENERGY OFFSHORE, LLC, HE&D OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 241 | 7/1/1984 | Unit Agreement and/or Unit Operating Agreement | UNIT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND FLORIDA EXPLORATION COMPANY ET AL | Bureau of Ocean Energy Management; MP 310 Unit Agreement | Fieldwood Energy LLC | MP 303 Lease G04253, MP 304 Lease G03339, MP 310 Lease G04126 | EPL OIL & GAS, LLC; TALOS ENERGY OFFSHORE, LLC, HE&D OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 242 | | Oilfield Services | 500909_Master Service Agreement dated effective 11/01/2013 | BURNER FIRE CONTROL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 243 | 11/19/2015 | Other Handling / Stabilization Agreements | PHA between Fieldwood and Byron for Byron's SM 6 production | Byron Energy Inc. | Fieldwood Energy LLC | SM 10 SM 6 Lease G01181 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 244 | | Oilfield Services | Master Services Contract dated effective 11/01/2013 | C DIVE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 245 | | Oilfield Services | Pipe Supplier | CACTUS PIPE & SUPPLY, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 246 | | Oilfield Services | Provide Material Wellheads, Material Trees, Installation Service and Repair Service | CACTUS WELLHEAD LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 247 | 3/1/2010 | Farmout Agreement | by and between Fieldwood Energy LLC (Walter Oil and Gas Corporation and Cairn Energy USA; Ratify and amend that certain Farmout dated 12/31/1984 | Cairn Energy USA; Walter Oil & Gas Corporation | Fieldwood Energy LLC | MP 301 Lease G04486 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 248 | 9/1/1996 | Joint Operating Agreement | JOA BY AND BETWEEN CAIRNE ENERGY USA, INC. AND NORCEN EXPLORER, INC. ET AL. | CAIRNE ENERGY USA, INC. AND NORCEN EXPLORER, INC. ET AL. | Fieldwood Energy LLC | ST 291 Lease G16455 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 249 | 5/1/2003 | Joint Operating Agreement | Offshore Operating Agreement dated May 1, 2003 between Magnum Hunter Production,Inc, and Westport Resources Corporation et al | Callon Petroleum Operating Co. | Fieldwood Energy LLC | WC 295 Lease G24730 | CALYPSO EXPLORATION LLC, CHEYENNE INTERNATIONAL CORP, MAGNUM HUNTER PRODUCTION INC, W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 250 | | Oilfield Services | Terms and Conditions between Fieldwood Energy LLC, fully executed on 09/08/2020 | CALTEX OIL TOOLS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 251 | 5/29/2019 | Other Misc. | Non Consent by Calypso AFE FW194028 by and between Calypso Exploration LLC and Fieldwood Energy LLC : Per 12.6 of JOA A-2 non consented Calypso assigned tp3 still responsible for obligations prior to election | Calypso Exploration LLC and Fieldwood Energy LLC | Fieldwood Energy LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 252 | | Oilfield Services | 538634_Master Services Agreement dated effective 11/01/2013; Change Date dated effective 01/01/2014 | CAMERON INTERNATIONAL CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 253 | | Oilfield Services | Wellhead, Measurment, Solutions, Etc. | CAMERON SOLUTIONS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 254 | | Oilfield Services | 700336_Master Service Agreement dated effective 01/01/2014 | CARDINAL COIL TUBING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 255 | | Oilfield Services | Third Party Certification Engineering Group Required by BSEE (Wellwork) | CARDNO PPI TECHNOLOGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 256 | | Oilfield Services | 502380_Jonder dated effective 06/24/2019 | CARLISLE ENERGY GROUP, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 257 | | Oilfield Services | 555168_Master Services Agreement dated effective 11/01/2013 | CASED HOLE WELL SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 258 | 7/21/2014 | Operating Agreement - Other | Castex is named as operator of Hi 167 Platform | CASTEX OFFSHORE INC. | Fieldwood Energy LLC | HI 116; HI 167 Lease G06156 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 259 | 4/13/2016 | Other Misc. | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil and Gas II, LLC and Castex Offshore, Inc.: Requests change to compression standards in that certain Processing & Current Operating Services Agreement dated 07/01/2011 | CASTEX OFFSHORE INC; Chevron U.S.A. Inc.; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | MP 59 Lease G08461 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 260 | 5/31/2016 | Elections | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: increases to continue compression services past original test period | CASTEX OFFSHORE INC; Chevron U.S.A. Inc.; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 261 | 6/29/2016 | Elections | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC | CASTEX OFFSHORE INC; Chevron U.S.A. Inc.; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 262 | 4/1/2019 | Other Handling / Stabilization Agreements | First Amendment to that certain Production Handling Agreement, dated September 1, 2009 - Eugene Island 224 "A" Platform - Federal Offshore Louisiana | CASTEX OFFSHORE INC; GOME 1271 GP, LLC; Juniper Exploration, L.L.C. | Fieldwood Energy LLC | EI 224 Lease G05504 | TALOS PETROLEUM LLC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further defined, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Debtors' Plan, the Confirmation Order, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 263 | 4/6/2018 | Withdrawal Agreement | Withdrawal Election | CASTEX OFFSHORE INC; Northstar Offshore Ventures LLC; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | WC 269 - W/2 NE/4 NE/4, SE/4 and the N/2 NE/4 SE/4 of block 269 surface to 12,805' TVD Lease G13563 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 264 | 7/2/2014 | Assignment of Platform & Pipelines | by and between Fieldwood Energy LLC and Castex Offshore, Inc. ; Fieldwood Divestiture of HI 116 Platform and pipelines | CASTEX OFFSHORE INC; Walter Oil and Gas Corporation | Fieldwood Energy LLC | HI 116 Lease G06156 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 265 | 2/1/2010 | Joint Operating Agreement | Joint Operating Agreement between Castex offshore, INC. as Operator and Hunt Oil Company and Walter Oil & Gas Corporation as non-operator. | Castex offshore, INC. as Operator and Hunt Oil Company and Walter Oil & Gas Corporation as non-operator. | | HI 176 Lease G27509 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 266 | 6/1/2013 | Operating Agreement - Other | Operating Agreement eff. 6-1-13 Castex, et al | Castex, et al | Fieldwood Energy LLC | EI 224 Lease G05504 | TALOS PETROLEUM LLC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 267 | | Non-Oilfield Services | Perpetual Software License Agreement | CEI | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 268 | 7/12/2006 | Unit Agreement and/or Unit Operating Agreement | BS 53 Field Voluntary Unit C by and between Centruy Exploration New Orleans, Inc. and LA State Mineral Board | Centruy Exploration New Orleans, Inc. and LA State Mineral Board | | BS Lease 17860, BS Lease 17861 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 269 | 4/1/2014 | Operating Agreement - Other | VIRGo Deep O/A Operator ERT GOM, LLC by and between Century Exploration New Orleans LLC, CL&F Resources LP, Sandridge Energy Offshore, LLC and Energy Resource Technology GOM, LLC | Century Exploration New Orleans LLC, CL&F Resources LP, Sandridge Energy Offshore, LLC and Energy Resource Technology GOM, LLC | | BS Lease 17860, BS Lease 16737, BS Lease 12806 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 270 | | Oilfield Services | 558154_Master Services Agreement dated effective 01/01/2014 | CENTURY TECHNICAL SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 271 | | Oilfield Services | 700642_Master Services Agreement dated effective 01/01/2014 | CETCO ENERGY SERVICES COMPANY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 272 | | Non-Oilfield Services | Perpetual Software License Agreement | CGG SERVICES (U.S.) INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 273 | | Oilfield Services | Pipe Supplier | CHAMPIONS PIPE & SUPPLY CO | Fieldwood Energy LLC | n.a. | n.a. | $801.23 | Assume and assign to Credit Bid Purchaser | | x | | |
| 274 | | Oilfield Services | Amendment to Master Services Contract, dated effective February 1, 2020 | CHAMPIONX | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 275 | 4/1/2006 | Right of Way | Charles Nicholson ETAL | Charles Nicholson ETAL | | WC 66 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 276 | 8/11/2011 | Other Services Agreements | Registration Agreement for Emergency Response Script Services | ChemTel Inc. | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 277 | | Oilfield Services | 502662_MSA effective 11/01/2013; Change Date effective 1/1/2014; Change Date effective 1/1/2014 | CHET MORRISON CONTRACTORS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 278 | 8/21/2020 | Abandonment / Decommissioning Agreement | Chet Morrison remove the two well conductors of the previously plugged wells HI 176 #2, #3 | Chet Morrison Contractors; Exxon Mobil Corporation; Hoactzin Partners, LP; Ridgewood Energy Corporation | Fieldwood Energy LLC | HI 176 Lease G27509 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 279 | 2/18/2000 | Operating Agreement - Other | b/t Chevron and Samedan | Chevron and Samedan | | VK 113 Lease G16535 | CHEVRON USA INC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 280 | 6/1/2009 | Ownership & Partnership Agreements | Owners Agreement between the owners of the High Island Pipeline System | Bandon Oil and Gas, LP and Fieldwood Energy LLC and Fieldwood SD Offshore LLC and Chevron Pipe Line Company, owners of the High Island Pipeline System | Bandon Oil and Gas, LP; Fieldwood Energy LLC; Fieldwood SD Offshore LLC | HIPS | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | x | x |
| 281 | 11/18/1999 | Letter Agreement - UOA | Letter Agreement, dated November. 18, 1999, by and between Chevron U.S.A. bc. and Samedan Oil Corporation being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning Subpart (c) of Section m. "Overhead", andmade effective January 1,2000. | Chevron U.S.A. and Samedan Oil Corporation | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 282 | 3/20/2012 | Other Notices | Chevron's Notice to Apache Letter, dated March 20, 2012, EB 159 #A-I5 Well (GM-2-2 Sand) conductor removal. | Chevron U.S.A. Inc, Apache Corporation | Fieldwood SD Offshore LLC | EB 159 Lease G02646 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 283 | 10/25/2013 | Letter Agreement - Other Land | Letter Agreement dated October 25, 2013 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Apache Corporation in that-certain Farmout Agreement dated and made effective June 1, 2009, to Fieldwood Energy LLC. | Chevron U.S.A. Inc, Apache Corporation | Fieldwood Energy Offshore LLC | CA 42 Lease G32267 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 284 | 9/25/2003 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA | CHEVRON U.S.A. INC. | Fieldwood Energy LLC | WD 90 Lease G01089, WD 103 Lease 840, WD 103 Lease G12360 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 285 | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. | Chevron U.S.A. Inc. | Fieldwood Energy LLC | SS 216 Lease G01524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 286 | 8/1/2016 | Letter Agreement - UOA | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.; RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 287 | 8/4/2016 | Other Misc. | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.; submitted new RUE to rpeace OCS -G 22052, consent by chevron to issuance of new RUE | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 288 | 7/28/2017 | Indemnity and Release Agreement | by and between Fieldwood Energy LLC and Chevron U.S.A. Inc.; Chevron sold to Cantium and needed DOO from Fieldood, Fieldwood required this Agreement to allow DOO | Chevron U.S.A. Inc. | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 289 | 7/1/2019 | Joint Operating Agreement | Joint Operating Agreement by and between Chevron USA Inc and Fieldwood Energy LLC dated 1 July 2019 and as amended by that (a)First Amendment dated effective 1 January 2020 (b) Second Amendment dated effective 1 May 2020 (Part of the LEA) | Chevron U.S.A. Inc. | Fieldwood Energy LLC | MC 118 Lease G35963, MC 119 Lease G36537, MC 163 Lease G36538, MC 206 Lease G36540 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 290 | 5/1/2020 | Property Participation & Exchange Agreements | Lease Exchange Agreement by and between Chevron USA Inc and Fieldwood Energy LLC dated 1 May 2020 | Chevron U.S.A. Inc. | Fieldwood Energy LLC | MC 118 Lease G35963, MC 119 Lease G36537, MC 162 Lease G36880, MC 163 Lease G36538, MC 206 Lease G36540 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 291 | 6/6/1994 | Letter Agreement - UOA | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and recognizes the Unit Operating Agreement, dated January 21, 1994 for the Viosca Knoll 252 Unit | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 292 | 8/1/2015 | Acquisition / PSA / Other Purchase or Sale Agreements | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340 Fields | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | MP 77, 78 and VK 251, 252, 340 Fields Lease G04481, MP 77, 78 and VK 251, 252, 340 Fields Lease G10930, MP 77, 78 and VK 251, 252, 340 Fields Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 293 | 8/1/2016 | Letter Agreement - UOA | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.; RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 294 | 8/4/2016 | Other Misc. | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.; submitted new RUE to rpeace OCS -G 22052, consent by chevron to issuance of new RUE | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 295 | 10/14/2004 | Letter Agreement - Other Land | Letter Agreement, dated October. 14, 2004, between Chevron U.S.A. Inc. and Noble Energy, inc. concerning Production Handling Agreement Term's. Viosca Knoll 251 "A' PlatformCadillacProspect and any Other Future Non-unit Production | Chevron U.S.A. Inc. and Noble Energy, Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 296 | 7/7/1997 | Letter Agreement - Other Land | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation,concerning of the OCSTG 10930 Well #1 in Viosca Knoll Block 251 to a proposed depth of 22,500' and certain earning and assignment provisions, more fully described therein. | Chevron U.S.A. Inc. and Samedan Oil Corporation | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 297 | 4/28/2014 | Letter Agreement - Other Land | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 Oil Imbalance Claim | Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 Oil Imbalance Claim | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 298 | 5/2/1989 | Letter Agreement - Other Land | Letter Agreement, dated May 2, 1989, between Southern Natural Gas Company and Chevron U.S.A. Inc. concerning the "Construction, Installation, Operation and Maintenance of Measurement and Pipeline Facilities " for receipt points at various locations on the OCS, including Main Pass 77 'A' platform (as amended). Consent Sec. 1O. | Chevron U.S.A. Inc. and Southern Natural Gas Company | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the executory contract being contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents") and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 299 | 6/25/1992 | Letter Agreement - Other Land | Letter Agreement, dated June 25, 1992, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron obtained consent from Southern for Chevron to connect, operate and maintain pneumatic chart recorders on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). | Chevron U.S.A. Inc, and Southern Natural Gas Company | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 300 | 2/15/1993 | Letter Agreement - Other Land | Letter Agreement, dated effective February 15, 1993, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana", whereby Chevron and Southern agree to amend and replace Exhibit "A" to that certain Letter Agreement, dated June 25, 1992 (described hereinabove). | Chevron U.S.A. Inc, and Southern Natural Gas Company | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 301 | 8/7/2003 | Property Participation & Exchange Agreements | Exploration Participation Agreement, dated August 7, 2003, by and between Chevron U.S.A. Inc. and Westport Resources Corporation, as amended, concerning certain Offshore Continental Shelf properties, all as is more fully, provided for and described therein. | Chevron U.S.A. Inc. and Westport Resources Corporation | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 302 | 8/24/2004 | Letter Agreement - Other Land | Letter Agreement dated August 24, 2004, between Chevron U.S.A. Inc. and Williams Field Services- Gulf Coast Company, L.P. | Chevron U.S.A. Inc. and Williams Field Services- Gulf Coast Company, L.P. | Fieldwood Energy Offshore LLC | BA A133 Lease G02665 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 303 | 9/4/2010 | Letter Agreement - Other Land | Transfer interest N1 well and line, etc. by and between Chevron U.S.A. Inc. GOM SHELF LLC | Chevron U.S.A. Inc. GOM SHELF LLC | GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 304 | 6/1/2009 | Farmout Agreement | Farmout Agreement dated effective June 1, 2009, between Chevron U.S.A. Inc., and Phoenix Exploration Company, LP and Challenger Minerals Inc., covering OCS-G 32287, Chandeleur Block 42 and OCS-G 32268, Chandeleur Block 43, INSOFAR AND ONLY INSOFAR as they cover those depths from the surface to one hundred feet (100') below the deepest depth drilled and logged in the earning well. | Chevron U.S.A. Inc., and Phoenix Exploration Company, LP and Challenger Minerals Inc. | Fieldwood Energy Offshore LLC | CA 42 Lease G32267 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 305 | 12/31/2007 | Acquisition / PSA / Other Purchase or Sale Agreements | Agreement for Purchase and Sale, effective December 31, 2007, between Chevron U.S.A. Inc., as Seller, and Wild Well Control, Inc., as Buyer, conveying Chevron's undivided interest in certain Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 to Wild Well Control for the purpose of decommissioning | Chevron U.S.A. Inc., as Seller, and Wild Well Control, Inc., as Buyer | Fieldwood Energy Offshore LLC | WD 69 Lease 181 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 306 | 10/30/2006 | Farmout Agreement | Farmout Agreement, dated effective October 30, 2006, between Chevron U.S.A. Inc., as-Farmor, and Mariner Energy Resources, Inc., as farmee, covering S/2 of SM 149 (OCS-G 2592) and S/2 of SM 150 (005-01632) and limited to depths from the surface to the stratigraphic equivalent of 100' below the deepest depth drilled in the #1 Well as proposed. | Chevron U.S.A. Inc., as-Farmor, and Mariner Energy Resources, Inc., as farmee | Fieldwood Energy Offshore LLC | SM 149 Lease G02592, SM 150 Lease G16325 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 307 | 1/7/2004 | Farmout Agreement | FARMOUT AGREEMENT BY AND BETWEEN CHEVRON U.S.A. INC., ET AL. AND BP AMERICA PRODUCTION COMPANY, ET AL. | CHEVRON U.S.A. INC., ET AL. AND BP AMERICA PRODUCTION COMPANY, ET AL. | Fieldwood Energy LLC | GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 308 | 11/1/2004 | Property Participation & Exchange Agreements | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company, concerning certain Offshore Continental Shelf properties, all as is more fully provided for and described therein | Chevron U.S.A. Inc., Newfield Exploration Company, Cabot Oil & Gas Corporation | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 309 | 11/3/2011 | Letter Agreement - Other Land | Letter Agreement dated November 3, 2011 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Phoenix Exploration Company LP in that certain Farmout Agreement dated and made effective June 1, 2009, to Apache Corporation and Castex Offshore, Inc. | Chevron U.S.A. Inc., Phoenix Exploration Company LP, Apache Corporation and Castex Offshore | Fieldwood Energy Offshore LLC | CA 42 Lease G32267 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 310 | 11/3/2011 | Letter Agreement - Other Land | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. | Chevron U.S.A. Inc., Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. | Fieldwood Energy Offshore LLC | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 311 | 11/3/2001 | Letter Agreement - Other Land | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. | Chevron U.S.A. Inc., Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 312 | 3/31/2003 | Letter Agreement - UOA | Letter Agreement, dated March 31, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy Company regarding Second Opportunity to Participate - Election to Acquire*Non-Participating Interest, in the MP77 OCS-G 4481 A-6 TTPG, Project No. UWGHP-R3011, Cost Carrier UCP170500, Main Pass Block 77. Key Production Company election. | Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy Company | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 313 | 6/9/1994 | Letter Agreement - Other Land | Letter Agreement, dated June 9, 1994, by and between Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. | Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 314 | 3/1/2018 | Joint Bidding Agreements | Joint Bidding Agreement by and between Chevron USA Inc and Fieldwood Energy LLC dated 1 March 2019 | Chevron U.S.A. Inc.; Ecopetrol America Inc; Talos Energy Offshore LLC | Fieldwood Energy LLC | MC 119 Lease G36537, MC 163 Lease G36538, MC 206 Lease G36540, n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 315 | 3/1/2017 | Other Misc. | by and between Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.; Transco Facilities Subseaq Modification - Shell owned ST 300 Platform | Chevron U.S.A. Inc.; Renaissance Offshore LLC; Transcontinental Gas Pipe Line Company, LLC; W&T Offshore, Inc. | Fieldwood Energy LLC | ST 316 Lease G22762 | W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 316 | 8/1/2019 | Joint Operating Agreement | Operating Agreement dated and effective as of August 1, 2019 by and among Chevron U.S.A. Inc., Fieldwood Energy LLC, and Ridgewood Castle Rock, LLC | Chevron U.S.A. Inc.; Ridgewood Castle Rock, LLC | Fieldwood Energy LLC | MC 743 Lease G36401 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 317 | 12/8/2000 | Letter Agreement - Other Land | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc.and Williams Field Services - Gulf COperating Agreement, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. Services - Gulf COperating Agreement Company, L.P., whereby Chevron U.S.A. Inc. consents to an assignment by Williams Field Services - Gulf COperating Agreement Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. | Chevron U.S.A. Inc and Williams Field Services - Gulf Coast Company, L.P. | Fieldwood Energy Offshore LLC | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 318 | 3/1/2000 | Marketing - Gathering | Gas gathering agreement between Chevron U.S.A. production Company and Samedan Oil Company as Producer and Shell Offshore Inc. and Amoco Production Company as Processor (considered PHA) for VK 251 | Chevron U.S.A. production Company and Samedan Oil Company as Producer and Shell Offshore Inc. and Amoco Production Company as Processor | Fieldwood Energy Offshore LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 319 | 8/1/2004 | Unit Agreement and/or Unit Operating Agreement | Amendment and Supplement toTUnit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1 2004, by and between Chevron U.S.A. Inc. and-Noble Energy, Inc. | Chevron U.S.A. Inc. and-Noble Energy, Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation having to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the proposed treatment specified in the Schedule of Assumed Contracts, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 320 | 7/18/2021 | Joint Development / Venture / Exploration Agreements | Joint Venture Agmt amongst Chevron USA INC and BHP Petroleum (Deepwater) Inc dated 18 July 2001 whereby CVX and BHP exchanged WI in GC 281 and 282 and committed to Operating Agreement. (Samedan/NBL latest farmed into BHP's Interest) | Chevron USA INC and BHP Petroleum (Deepwater) Inc | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 321 | 1/1/1989 | Operating Agreement - Other | Operating Agreement 1/1/89 | CHEVRON USA INC, Apache Shelf | Fieldwood Energy LLC | EI 307 Lease G02110 | | $0.00 | Assume and allocate to Credit Bid Purchaser | x | | | |
| 322 | 8/12/2002 | Construction Agreements | CMA amongst Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy Inc dated 12 Aug 2002 | Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy Inc | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 323 | 8/1/2002 | Joint Development / Venture / Exploration Agreements | Development Plan approved by Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy Inc dated 12 Aug 2002 | Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy Inc | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 324 | 11/2/1964 | Unit Agreement and/or Unit Operating Agreement | EI 266 Unit Agreement | CHEVRON USA INC, EPL OIL & GAS, LLC, Stone Energy, BP E&P | Fieldwood Energy LLC | EI 266 Lease 811, EI 246 Lease 810, EI 267 Lease 812, EI 269 Lease 813 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 325 | 1/1/2004 | Farmout Agreement | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY | CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. | Fieldwood Energy Offshore LLC | WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 326 | 9/14/2010 | Letter Agreement - Other Land | CHEVRON USA INC. AND GOM SHELF LLC | CHEVRON USA INC. AND GOM SHELF LLC | Fieldwood Energy LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 327 | 9/15/2009 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, LLC, ENERGY PARTNERS, LTD, NOBLE ENERGY INC., AND STATOILHYDRO USA E&P INC | CHEVRON USA INC., PHOENIX EXPLORATION COMPANY, LP, CHALLENGER MINERALS INC., DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, LLC, ENERGY PARTNERS, LTD, NOBLE ENERGY INC., AND STATOILHYDRO USA E&P INC | Fieldwood Energy Offshore LLC | NE/4 GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 328 | 6/15/2015 | Elections | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Wichita Partnership, Ltd., W & T Energy VI, LLC and W&T Offshore, L.L.C.; In furtherance of April 14, 2015 letter Arsena earned assignment from Chevron Chevron to resign as operator | CHEVRON USA INC; W&T Energy VI, LLC; W&T Offshore, L.L.C.; Wichita Partnership, Ltd. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 329 | 9/17/2015 | Elections | In furtherance of April 14, 2015 and June 15, 2015 letters, Arsena earned assignment from Chevron Chevron to resign as operator, clarifying Working Interests, etc. | CHEVRON USA INC; W&T Energy VI, LLC; W&T Offshore, L.L.C.; Wichita Partnership, Ltd. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 330 | 4/30/2009 | Operating Agreement - Other | Operating Agreement eff. 4-30-09 Chevron USA, et al | Chevron USA, et al | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 331 | 6/1/2009 | Operating Agreement - Other | Operating Agreement eff. 6-1-09 Chevron USA, et al | Chevron USA, et al | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 332 | 9/1/1996 | Operating Agreement - Other | Offshore Operating Agreement 9/1/1996 | Chevron USA, Renaissance, Apache Shelf | Fieldwood Energy LLC | VR 408 Lease G15212 | | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 333 | 9/3/1996 | Operating Agreement - Other | Operating Agreement (depths below 9000' on VR 392 & VR 408; and all depths VR 407) 9/3/1996 | Chevron USA, Renaissance, Apache Shelf | Fieldwood Energy LLC | VR 408 Lease G15212 | | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 334 | 1/31/2000 | Farmout Agreement | Farmout Letter Agreement 1/31/2000 | Chevron USA, Renaissance, Apache Shelf | Fieldwood Energy LLC | VR 408 Lease G15212 | | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 335 | 6/28/2012 | Operating Agreement - Other | Ownership and Operating Agreement | Chevron, Dynamic Offshore Resources, LLC, GOMH Exploration, LLC and Hall-Houston Exploration III, L.P. | | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 336 | 6/28/2012 | Marketing - Connection Agreement | Ownership and Operating Agreement | Chevron, Dynamic Offshore Resources, LLC, GOMH Exploration, LLC and Hall-Houston Exploration III, L.P. | | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 337 | Original - 11/15/2019; 1st Amend 5/14/2020; 2nd Amend 9/14/2020 | Non-O&G Real Property Lease / Rental / Sublease Agreements | Lease agreement between Fieldwood and Cheyenne Services Total Area: 2 buildings; office/warehouse space Square Footage: approx. 23,800 SF on approx 3 acres Address: 108 Galbert Road Lafayette LA 70506 | Cheyenne Services | Fieldwood Energy LLC | Total Area: 2 buildings; office/warehouse space Square Footage: approx. 23,800 SF on approx 3 acres | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 338 | 11/15/2019 | Other | Lease - 108 Galbert Rd., Lafayette, LA 70506 | CHEYENNE SERVICES LIMITED | Fieldwood Energy LLC | n.a. | n.a. | $6,475.38 | Assume and assign to Credit Bid Purchaser | | x | | |
| 339 | 4/26/2020 | Other | First Amendment to Lease - 108 Galbert Rd., Lafayette, LA 70506 | CHEYENNE SERVICES LIMITED | Fieldwood Energy LLC | n.a. | n.a. | $6,475.38 | Assume and assign to Credit Bid Purchaser | | x | | |
| 340 | | Oilfield Services | Master Service Agreement dated effective July 17, 2019 | CHURCH POINT WHOLESALE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 341 | | Oilfield Services | 777969_Rental Agreement dated effective 11/21/2018 | CHURCHILL DRILLING TOOLS US, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 342 | | Oilfield Services | 777621_Master Services Agreement dated effective 05/02/2019 | C-INNOVATION, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 343 | 8/25/2016 | Other Handling / Stabilization Agreements | by and between Fieldwood Energy LLC, CL&F Resources, L.P, Houston Energy LP, Helis Oil and Gas Company LLC and W&T Offshore, Inc.; Amendment and Ratification of Production Handling Agreement (High Island, East Addition Block 129) | CL&F Resources, L.P.; Helis Oil and Gas Company LLC; Houston Energy LP; W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 344 | | Oilfield Services | Master Service Contract dated effective June 22, 2018 | CLARIANT CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 345 | 1/30/2019 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 346 | 10/27/2015 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 347 | 10/3/2018 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 348 | 10/3/2018 | Other | Classic Business Products Rental Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 349 | 8/2/2018 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 350 | 9/4/2019 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 351 | | Oilfield Services | Spill Response, Service Equipment, OSRO | CLEAN GULF ASSOCIATES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 352 | | Oilfield Services | Spill Response, Service Equipment, OSRO | CLEAN GULF ASSOCIATES SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 353 | 1/1/1994 | Unit Agreement and/or Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally by and between CNG Producing Company & Columbia Gas Development Corp., et al | CNG Producing Company & Columbia Gas Development Corp., et al | Fieldwood Energy Offshore LLC | SS 271 Lease G01038, SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 270 Lease G01037 | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 354 | 9/3/1974 | Farmout Agreement | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation | CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation | Fieldwood Energy Offshore LLC | SS 271 Lease G01038 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 355 | 01/01/1994; 04/08/1994 | Unit Agreement and/or Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") | CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company | Fieldwood Energy Offshore LLC | SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 270 Lease G01037, SS 271 Lease G01038 | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 356 | 9/24/1985 | Letter Agreement - JOA | Clarification Letter Agreement by and between CNG Producing Company, Hunt Oil Company, Southland Royalty Company (successor to Hunt Oil Company and Anadarko Production Company | CNG Producing Company, Hunt Oil Company, Southland Royalty Company (successor to Hunt Oil Company and Anadarko Production Company | Fieldwood Energy Offshore LLC | VR 78 Lease G00421 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 357 | | Oilfield Services | 501307_Master Services Agreement dated effective 01/01/2014 | COASTAL CHEMICAL CO LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 358 | 4/10/1998 | Farmout Agreement | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN (Operating Agreement)TAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. | COASTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 359 | 1/7/2016 | Other | Contract for the Extraction of Hydrocarbons under the Production Sharing Modality - Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Comision Nacional de Hidrocarburos | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*  [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 360 | | Oilfield Services | Gravel Pack Tools, CT Unit Tools | CONCENTRIC PIPE AND TOOL RENTALS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 361 | 4/15/1991 | Operating Agreement - Other | Operating Agreement eff. 4-15-91 b/b Conoco and Shell | Conoco and Shell | Fieldwood Energy LLC | MP 289 Lease G01666 | ANADARKO US OFFSHORE LLC, ERA HELICOPTERS INC., HIGH POINT GAS GATHERING, L.L.C., SHELL PIPELINE COMPANY LP, TALOS PETROLEUM LLC, W & T OFFSHORE INC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 362 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Fieldwood Energy LLC | WD 94 Lease 839 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 363 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Fieldwood Energy LLC | WD 95 Lease G01497 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 364 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Fieldwood Energy LLC | WD 96 Lease G01498 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 365 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY. | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY. | Fieldwood Energy LLC | WC 34 Lease G03251, WC 35 Lease G02819, WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 366 | 10/1/1990 | Joint Operating Agreement | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. | CONOCO INC. AND TEXAS PRODUCING INC. | Fieldwood Offshore LLC | WC 34 Lease G02819, WC 35 Lease G01980, WC 66 Lease G02825, WC 77 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 367 | 5/1/1995 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. | CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. | Fieldwood Offshore LLC | WC 34 Lease G02819, WC 35 Lease G01980, WC 65 Lease G02825, WC 66 Lease G02826, WC 67 Lease G03256 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 368 | 5/1/1995 | Unit Agreement and/or Unit Operating Agreement | Grand Isle CATCO Unit Operating Agreement Amendment for the GI 41 A Platform, dated May 1, 1995,between Conoco Inc., Atlantic Richfield Company, Texaco Producing Inc. and OXY USA Inc. | Conoco Inc., Atlantic Richfield Company, Vastar Resources, Inc., Texaco Exploration and Production Inc., Oxy USA Inc., Texaco Producing Inc. | Fieldwood Offshore LLC | GI 41 Lease 129, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 369 | 1/1/1989 | Operating Agreement - Other | CATCO Operating Agreement eff. 1/1/89 by and between Conoco, Richfiled , Texaco, et al | Conoco, Richfiled , Texaco, et al | Fieldwood Energy LLC | EI 208 Lease 577 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 370 | 2/25/2010 | Operating Agreement - Other | Operating Agreement eff. 2-25-10 | Contango Op | Fieldwood Energy LLC | EI 10 Lease G23851 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 371 | 8/1/1960 | Unit Agreement and/or Unit Operating Agreement | Amendment to GI/WD Unit Agmt by and between Continental Oil Company, Et al. Cities Service Production Company | Continental Oil Company, Et al. Cities Service Production Company | | WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 372 | 10/1/1960 | Unit Agreement and/or Unit Operating Agreement | Amends both GI/WD Unit and CATCO Unit by and between Continental Oil Company, Et al. Cities Service Production Company, Et al. | Continental Oil Company, Et al. Cities Service Production Company, Et al. | | GI 32 Lease 174, GI 39 Lease 127, GI 40 Lease 128, GI 41 Lease 129, GI 41 Lease 130, GI 42 Lease 131, GI 43 Lease 175, GI 47 Lease 133, GI 46 Lease 132, GI 48 Lease 134, GI 52 Lease 177, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 373 | | Oilfield Services | Provide Specialized Laboratory Analysis of Produced Solids | CORE MINERALOGY, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 374 | 8/30/2019 | Non-Oilfield Services | Master Subscription Agreement, Order Form | COUPA SOFTWARE, INC. | Fieldwood Energy LLC | n.a. | n.a. | $2,026.10 | Assume and assign to Credit Bid Purchaser | | x | | |
| 375 | 9/15/2019 | Non-Oilfield Services | System Services / License Agreements | COUPA SOFTWARE, INC. | Fieldwood Energy LLC | n.a. | n.a. | $2,026.10 | Assume and assign to Credit Bid Purchaser | | x | | |
| 376 | 3/30/2017 | Other Misc. | Fieldwood agreed to COX request/letter of no objection to allow cox to produce its EI 64# 9 well. Fieldwood is the operator of SW/4 of EI 53 | Cox Operating LLC | Fieldwood Energy LLC | EI 64; EI 53 Lease 479 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 377 | 1/26/2021 | Marketing - Transportation | Cox leasing capacity on Segment III and Segment I (30 day term)- Cox liable for additional share of operation expenses | Cox Operating LLC | Fieldwood Energy LLC | HI A474 Lease G02366 | FREEPORT MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 378 | | Oilfield Services | 508794_Master Services Agreement dated effective 12/03/2013; Amendment dated effective 01/28/2019 | C-PORT/STONE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 379 | 9/1/1994 | Unit Agreement and/or Unit Operating Agreement | EI 89 Field UOperating Agreement 9/1/94 | Crane Holding Inc.; W & T Energy VI LLC | Fieldwood Energy LLC | EI 0089 Lease 44, EI 0089 Lease 229 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 380 | | Oilfield Services | 542303_Master Services Agreement dated effective 11/01/2013; Amendment dated effective 11/07/2017 | CRESCENT ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 381 | | Oilfield Services | 701147_Master Services Agreement dated effective 03/10/2016 | CROSBY DREDGING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 382 | | Oilfield Services | 505424-Master Time Charter Agreement dated 11-1-2013 | CROSBY TUGS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 383 | 7/1/2017 7/1/2017 | Other Services Agreements | Response Resources Agreement Utilization Agreement | CSA Ocean Sciences Inc. | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 384 | | Oilfield Services | Engine Parts/Maintenance/Overhauls | CSI COMPRESSCO SUB, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 385 | | Oilfield Services | 532967_Master Services Agreement dated 12/01/2013 | CSI TECHNOLOGIES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 386 | | Oilfield Services | 558082_Master Services Agreement dated effective 01/01/2014 | CUSTOM COMPRESSION SYSTEMS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 387 | | Oilfield Services | 554325_PO Terms & Conditions dated effective 01/15/2019 | CUSTOM PROCESS EQUIPMENT LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 388 | 1/1/2017 | Non-Oilfield Services | Administrative Services Agreement | CVS/CAREMARK | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 389 | | Oilfield Services | 554431_Master Services Agreement dated effective 11/01/2013 | CYRUS J GUIDRY & ASSOCIATES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 390 | 2/9/2018 | Non-Oilfield Services | Master Consulting Agreement | DAGEN PERSONNEL | Fieldwood Energy LLC | n.a. | n.a. | $7,570.59 | Assume and assign to Credit Bid Purchaser | | x | | |
| 391 | | Oilfield Services | 700908_Master Services Agreement dated effective 04/17/2015 | DAILEY TOWER SERVICE, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the leases underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

Applicable Entity

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 392 | 10/26/2013 | Oilfield Services | 508251_Master Services Agreement dated effective 11/01/2013; Amendment dated effective 01/01/2015 | DANOS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 393 | | Oilfield Services | 700234_Master Services Agreement dated effective 11/01/2013 | DART ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 394 | 2/8/2019 | Non-Oilfield Services | Managed Services Agreement | DATAVOX, INC. | Fieldwood Energy LLC | n.a. | n.a. | $23,416.16 | Assume and assign to Credit Bid Purchaser | | x | | |
| 395 | | Non-Oilfield Services | Software Licensing Agreement | DATAWATCH CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 396 | 3/12/2009 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P., NOBLE ENERGY, INC. AND STATOILHYDRO USA E&P INC. | DAVIS OFFSHORE, L.P., NOBLE ENERGY, INC. AND STATOILHYDRO USA E&P INC. | Fieldwood Energy Offshore LLC | GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 397 | 9/1/2007 | Joint Bidding Agreements | JOINT BIDDING AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, LLC, ENERGY PARTNERS, LTD | DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, LLC, ENERGY PARTNERS, LTD | Fieldwood Energy Offshore LLC | GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 398 | 10/18/2013 | Other Misc. | LOI | DCL Mooring & Rigging | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 399 | 1/31/2010 | Abandonment / Decommissioning Agreement | Decommissioning Obligations Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 31 Jan 2010 | Decommissioning Obligations Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 31 Jan 2010 | Fieldwood Energy Offshore LLC | GC 65GC 108GC 109 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 400 | 10/3/2014 | Letter Agreement - Operating Agreement | Letter Agreement dated 3 Oct 14 by and between Deep Gulf Energy III, LLC, Noble Energy, Inc, BP Exploration and Production, Inc, Red Willow Offshore and Houston Energy Deepwater Ventures I, LLC designating Deep Gulf as Operator of the Interval from 0-19,000' TVDSS | Deep Gulf Energy III, LLC, Noble Energy, Inc, BP Exploration and Production, Inc, Red Willow Offshore and Houston Energy Deepwater Ventures I, LLC | Fieldwood Energy LLC | MC 563 Lease G21176 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 401 | | Oilfield Services | 701011_Master Services Agreement dated effective 01/22/2016 | DEEPTREND, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 402 | 9/3/2019 | Other Lease / Rental Agreement | Lease Agreement with Agreement to Purchase by and between Deepwater Abandonment Alternatives, Inc and Fieldwood Energy Offshore LLC | Deepwater Abandonment Alternatives, Inc. | Fieldwood Energy Offshore LLC | GC 200 (NW/4 SE/4; SW/4 NE/4; E/2 SE/4 NW/4; S/2 NE/4 NW/4; W/2 E/2 SE/4; NE/4 SW/4 SE/4; SW/4 NW/4 NE/4) Lease G12209 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, WILD WELL CONTROL, INC, CHEVRON USA INC, W & T ENERGY VII LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 403 | | Oilfield Services | 511622_Master Services Agreement dated effective 08/19/2014 | DEEPWATER CORROSION SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 404 | | Oilfield Services | 510045_Rental Agreement dated effective 01/21/2014 | DEEPWELL RENTALS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 405 | | Oilfield Services | Completion Engineering Consultant | DELGE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 406 | 4/1/2013 4/1/2015 | Other Services Agreements | Response Resources Agreement Utilization Agreement | Delmar Systems, Inc. | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 407 | | Oilfield Services | Suction Piles, Installation Tools, Mooring, Anchoring, Work Wire, and Towing Equipment & Services | DELMAR SYSTEMS, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 408 | 1/1/2020 | Non-Oilfield Services | Administrative Services Agreement | DELTA DENTAL INSURANCE COMPANY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 409 | | Oilfield Services | Gravel Pack Screens | DELTA SCREENS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 410 | | Oilfield Services | 777816_Master Services Agreement dated effective 12/05/2018 | DELTA SUBSEA, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 411 | | Oilfield Services | Auto Care for Lafayette Fleet | DELTA WORLD TIRE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 412 | | Oilfield Services | 700329_Master Services Agreement dated effective 02/13/2014 | DEMEX INTERNATIONAL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 413 | 10/4/1996 | Unit Agreement and/or Unit Operating Agreement | ST 54 Unit Agreement, as amended and/or expanded by and between Departmenent of the Interior and Humble Oil & Refining Company ; ST 54 Unit which includes St 67 (as amended by those certain letter Agreements, etc.) | Departmenent of the Interior and Humble Oil & Refining Company | | ST 67 Lease 20 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 414 | 5/13/1999 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement (754399006) by and between Dept of Interior and Shell Offshore Inc dated effective 13 May 1999 and as amended on 15 Mar 2004 | Dept of Interior and Shell Offshore Inc dated effective 13 May 1999 and as amended on 15 Mar 2004 | | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 415 | | Oilfield Services | Screening (Shaker) Equipment | DERRICK CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 416 | 6/1/2018 | Marketing - Transportation | IT Transport Contracy by and between Destin Pipeline company, L.L.C. and Fieldwood Energy LLC. | Destin Pipeline company, L.L.C. and Fieldwood Energy LLC. | Fieldwood Energy LLC | MC 110 Lease G18192, BS 52 Lease 17675 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 417 | | Oilfield Services | Mechanical Parts | DEVALL DIESEL SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 418 | 10/25/2005 | Farmout Agreement | Farmout Agreement, as amended; EI 312 with Devon | Devon | | EI 312 Lease G22679 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 419 | 5/17/2007 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN DEVON ENERGY PRODUCTION COMPANY, L.P. AND HUNT PETROLEUM CORPORATION, ET AL. | DEVON ENERGY PRODUCTION COMPANY, L.P. AND HUNT PETROLEUM CORPORATION, ET AL. | Fieldwood Energy LLC | MO 826 Lease G26176 | W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 420 | | Oilfield Services | 559614_Master Services Agreement dated effective 11/01/2013 | DIAMOND PETROLEUM VENTURES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 421 | | Oilfield Services | Derrick Barge Rental | DIAMOND SERVICE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 422 | 1/1/2015 | Non-Oilfield Services | Master Services Contract | DISA INC | Fieldwood Energy LLC | n.a. | n.a. | $12,774.45 | Assume and assign to Credit Bid Purchaser | | x | | |
| 423 | 1/10/2014 | Non-Oilfield Services | Master Services Contract | DISA INC | Fieldwood Energy LLC | n.a. | n.a. | $12,774.45 | Assume and assign to Credit Bid Purchaser | | x | | |
| 424 | 5/1/2015 | Acquisition / PSA / Other Purchase or Sale Agreements | by and between Fieldwood Energy LLC and Discovery Producer Services LLC ST 311 Pipeline Divestiture | Discovery Producer Services LLC | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 425 | 6/29/2015 | Settlement / Release / Relinquishment Agreements | by and between Fieldwood Energy LLC and Discovery Producer Services LLC; ST 311 Pipeline Divestiture | Discovery Producer Services LLC | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 426 | | Oilfield Services | Master Services Contract dated effective June 01, 2015 | DIVERSE SAFETY AND SCAFFOLDING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 427 | | Oilfield Services | 700305_Master Services Agreement dated effective 01/17/2014 | DLS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 428 | | Non-Oilfield Services | Perpetual Software License Agreement | DOCVUE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 429 | | Oilfield Services | 777873_Master Services Agreement dated effective 04/08/2018 | DOF SUBSEA USA INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the name underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 430 | 12/20/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC | Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC | Fieldwood Energy Offshore LLC | WC 130 Lease G12761 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 431 | 8/23/2012 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator | Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator | Fieldwood Energy Offshore LLC | WC 72 Lease G23735 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 432 | 11/26/2019 | Settlement / Release / Relinquishment Agreements | Settlement and Release Agreement b/b Dominion Oklahoma Texas Exploration and Production, Inc. and Fieldwood Energy LLC | Dominion Oklahoma Texas Exploration and Production, Inc. and Fieldwood Energy LLC | Fieldwood Energy LLC | HI 45 Lease G12564 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 433 | | Oilfield Services | 777591_Master Services Agreement dated effective 05/16/2018 | DOVECO LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 434 | | Oilfield Services | OEM Manufacturer, Clark Gas Compressor Parts, Shop Repairs | DRESSER-RAND CO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 435 | | Oilfield Services | 564739_Master Services Agreement dated effective 09/05/2014 | DRILL CUTTINGS DISPOSAL COMPANY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 436 | | Oilfield Services | 516459_Master Services Agreement dated effective 11/01/2013 | DRILLCHEM DRILLING SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 437 | | Oilfield Services | 514968_Master Services Agreement dated effective 11/01/2013 | DRILLING SERVICES OF AMERICA | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 438 | 12/19/1997 | Marketing - PHA | Shell Offshore Inc. (SOI) as owner and operator of GC 65 Platform and BP Exploration & Oil Inc., Marathon Oil Company, and Shell Deepwater Development Inc., successor in interest to Shell Offshore Inc. | Droshky-Deepwater Abandonment Alternatives Inc. | | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 439 | | Oilfield Services | 777883_Master Services Agreement dated effective 05/14/2019 | DURHAM'S INSPECTION SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 440 | | Oilfield Services | 502178_Master Services Agreement dated effective 11/01/2013 | DYNAMIC INDUSTRIES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 441 | 9/26/2012 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN DYNAMIC OFFSHORE RESOURCES AND NOBLE ENERGY INC | DYNAMIC OFFSHORE RESOURCES AND NOBLE ENERGY INC | Fieldwood Energy Offshore LLC | Utilization of Bullwinkle Platform for Talon Prospect Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 442 | 6/10/1966 | Unit Agreement and/or Unit Operating Agreement | SS 271 Unit Operating Agreement (Unit#891008784) As Amended, originally by and between Forest Oil Corp. as Operator, and Texas Gas Exploration Corp. et al as Non-Operators | Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Hilcrest GOM, Inc.; Talos ERT LLC; W & T Energy VI LLC | Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 241 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 270 Lease G01037, SS 271 Lease G01038 | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 443 | | Marketing - Construction, Operations, Management, Ownership Agreements | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to a trunk pipeline system owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and and | Dynamic Offshore Resources, LLC, Enterprise GTM Offshore Operating Company, LLC | Fieldwood Energy Offshore LLC | HI A-446, HI A-447, HI A-550 Lease G04081 | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 444 | | Oilfield Services | Terms and Conditions entered into by and between Fieldwood Energy LLC and E&C FinFan Inc. | E&C FINFAN, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 445 | | Oilfield Services | Pipe Supplier | EAGLE PIPE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 446 | | Non-Oilfield Services | Perpetual Software License Agreement | ECAD, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 447 | | Oilfield Services | 701181_Master Services Agreement dated effective 12/12/2016 | ECHO OFFSHORE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 448 | | Marketing - Other | Market Authorization Letter Agreement to act as agent for Ecopetrol Ameica Inc. to Market gas production | Ecopetrol Ameica Inc. | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 449 | | Marketing - Other | Market Authorization Letter Agreement to act as agent for Ecopetrol Ameica Inc. to Market gas production | Ecopetrol America | Fieldwood Energy LLC | MC 904 Lease G36566 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 450 | 7/1/2006 | Joint Operating Agreement | Joint Operating Agreement by and between Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.) and Samson Offshore Company effective as of July 1, 2006, including any memorandums or financial statements of the same, as amended by the:

A. Ratification and Amendment of Gunflint Joint Operating Agreement by and among Noble Energy, Inc., Samson Offshore Company, BP Exploration & Production Inc., and Marathon Oil Company dated effective November 1, 2008.
B. Amendment of the Gunflint Joint Operating Agreement dated effective July 7, 2009 by and between Noble Energy, Inc., Samson Offshore Company, BP Exploration & Production Inc., and Marathon Oil Company.
C. Ratification, Amendment and Re-Designation of the Gunflint JOperating Agreement as the Gunflint Voluntary Unit Operating Agreement dated effective January 1, 2011 by and between Noble Energy Inc., BP Exploration & Production Inc., Samson Offshore Company, Marathon Oil Company and BHP Billiton Petroleum (Deepwater) Inc. | Ecopetrol America Inc; Talos Energy Offshore LLC | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134, MC 904 Lease G36566, MC 905 Lease G36405 | ECOPETROL AMERICA, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 451 | | Oilfield Services | 538166_Master Services Agreement dated effective 01/20/2014; Amendment dated effective 06/23/2014 | ECOSERV, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 452 | | Oilfield Services | 508862_Master Services Agreement dated effective 06/06/2018 | EDG INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 453 | | Oilfield Services | 942177_PO Terms & Conditions dated effective 05/08/2019 | EDGEN MURRAY CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 454 | | Oilfield Services | Produced Water EPA testing for NPDES permit | ELEMENT MATERIALS TECHNOLOGY LAFAYETTE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 455 | 5/1/1998 | Operating Agreement - Other | Offshore Operating Agreement entered into May 1, 1998 by and between ELF Aquitaine Operating Inc. as Operator and Plumn Offshore, Inc. and TXP Operating Company as Non-Operators | ELF Aquitaine Operating Inc. as Operator and Plumn Offshore, Inc. and TXP Operating Company as Non-Operators | EI 342 Lease G02319 | | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 456 | 4/6/1998 | Joint Development / Venture / Exploration Agreements | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COperating AgreementSTAL POSISTION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COperating AgreementSTAL O&G CORPORATION. | ELF EXPLORATION INC. AND COASTAL O&G CORPORATION | Fieldwood Energy Offshore LLC | VK 779/VK 780 Lease G06884, VK824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 457 | 4/6/1998 | Letter Agreement - Other Land | LETTER (ELF OFFERS NIPPON PART OF THE COperating AgreementSTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED | ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 458 | | Oilfield Services | 537492_Master Services Agreement dated effective 11/01/2013 | ELITE COMMUNICATION SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $159,560.07 | Assume and assign to Credit Bid Purchaser | | x | | |
| 459 | | Oilfield Services | 777975_Master Services Agreement dated effective 10/30/2019 | EMINENT OILFIELD SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 460 | 3/1/2019 | Marketing - Service Agreement | SERVICES CONTRACT FOR PHU LAUNCHER BETWEEN EMPIRE DEEPWATER LLC AND FIELDWOOD ENERGY LLC | EMPIRE DEEPWATER LLC AND FIELDWOOD ENERGY LLC | Fieldwood Energy LLC | EW 826 Lease G05800 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 461 | | Oilfield Services | 701217_Master Services Agreement dated effective 08/08/2018 | ENCORE WELLHEAD SYSTEMS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 462 | | Oilfield Services | 700564_Master Services Agreement dated effective 04/28/2014 | ENERGY COMPLETION SERVICES LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 463 | 7/1/1998 | Farmout Agreement | FO by and between Energy Development Corp & Juniper Energy Kp | Energy Development Corp & Juniper Energy Kp | Fieldwood Energy LLC | EI 57 Lease G02601 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, et al.**
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Debit Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 464 | | Non-Oilfield Services | | ENERGY GRAPHICS INC | Fieldwood Energy LLC | n.a. | | n.a. | $38,970.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 465 | | Non-Oilfield Services | | ENERGY INFORMATION INC | Fieldwood Energy LLC | n.a. | | n.a. | $1,500.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 466 | | Oilfield Services | BOP Certifier (Wellwork) | ENERGY RISK CONSULTING | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 467 | 9/9/2013 | Operating Agreement - Other | Amends certain JOperating Agreement dated 02/01/2013 | Energy XXI GOM LLC | Fieldwood Energy LLC | SP 62 Lease G01294 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 468 | 1/1/1971 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC., MESA PETROLEUM CO., ET AL. | Energy XXI GOM LLC | Fieldwood Energy LLC | EI 330 Lease G02115 | | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 469 | 12/1/1974 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. | Energy XXI GOM LLC; Fieldwood Energy LLC; GOM Shelf LLC | Fieldwood Energy LLC; GOM Shelf LLC | SM 127 Lease G02883, SM 141 Lease G02885 | | ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 470 | 5/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. | Energy XXI GOM LLC; Fieldwood Energy LLC; GOM Shelf LLC | Fieldwood Energy LLC; GOM Shelf LLC | SM 128 Lease G02587 | | ENERGY XXI GOM LLC, SHELL PIPELINE COMPANY LP, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 471 | 1/1/2000 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN OCEAN ENERGY, INC., MCMORAN OIL & GAS LLC., ET AL. | Energy XXI GOM LLC; OCEAN ENERGY, INC., MCMORAN OIL & GAS LLC., ET AL. | Fieldwood Energy LLC | EI 108 Lease G03811 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 472 | | Oilfield Services | | 701119_PO Terms & Conditions dated effective 03/22/2016 | ENERJETEX TECHNOLOGY LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 473 | | Oilfield Services | 777689_Master Services Agreement dated effective 06/06/2018 | ENGINUITY GLOBAL, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 474 | | Oilfield Services | ENSCO 102 Daywork Drilling Contract 09 05 2018 | ENSCO OFFSHORE COMPANY | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 475 | 7/1/1996 | Joint Operating Agreement | 7.1.1996 SM 33 Joint Operating Agreement, as amended | ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SM 30 Lease G16320 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 476 | 12/14/1995 | Other Misc. | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC. AND PETROBRAS AMERICA, INC. | ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. | Fieldwood Energy LLC | SM 280 Lease G14456 | | MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 477 | 5/2/1978 | Farmout Agreement | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. | ENSERCH, FARMOR, AND ANADARKO, FARMEE. | Fieldwood Energy Offshore LLC | HI A365 Lease G02750 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 478 | 8/1/2018 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc. Entech Withdraws from SS 271 Unit | Entech Enterprises, Inc. | Fieldwood Energy Offshore LLC | SS 271 Lease G01038 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 479 | | Oilfield Services | Utilities - Grand Isle and Venice | ENTERGY GULF STATES LOUISIANA LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 480 | | Oilfield Services | Utilities - Grand Isle and Venice | ENTERGY LOUISIANA LLC | Fieldwood Energy LLC | n.a. | | n.a. | $2,830.22 | Assume and assign to Credit Bid Purchaser | | x | | |
| 481 | 2/1/2006 | Marketing - Transportation | Memorandum of Agreement in addition to the Gas Gathering between Enterprise Field Services company, LLC and Noble Energy, Inc. - Dedication of production | Enterprise Field Services company, LLC and Noble Energy, Inc. - Dedication of production | | GC 768 Lease G21817 | | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 482 | 5/1/2009 | Marketing - Transportation | Reimbursement Agreement between Enterprise Field Services, LLC and Anadarko Petroleum, ENI Petroleum US LLC, ConocoPhillips Company, BHP Billiton Petroleum Inc, MCX Gulf of Mexico, LLC, NIPPON Oil Exploration USA Limited, Hess Corporation, Repsol E&P USA, Ecopetrol America Inc, and Noble Energy Inc. | Enterprise Field Services, LLC and Anadarko Petroleum, ENI Petroleum US LLC, ConocoPhillips Company, BHP Billiton Petroleum Inc, MCX Gulf of Mexico, LLC, NIPPON Oil Exploration USA Limited, Hess Corpo | | GC 768 Lease G21817 | | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 483 | | Oilfield Services | Enterprise Offshore Drilling – Appendix A_Drilling Order 07 12 2018 | ENTERPRISE OFFSHORE DRILLING LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 484 | 10/7/2013 | Elections | Election Letter Agreement by and between Fieldwood Energy LLC and Enven Energy Ventures LLC | ENVEN ENERGY VENTURES LLC | Fieldwood Energy LLC | PL 13 Lease G03171 | | ANKOR ENERGY LLC, ENVEN ENERGY VENTURES, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 485 | 9/1/1981 | Joint Operating Agreement | Operating Agreement 9/1/1981 | ENVEN ENERGY VENTURES LLC, Walter O&G, Castex, GOME 1271, Dorado Deep | Fieldwood Energy LLC | VR 271 Lease G04800 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 486 | 2/26/1966 | Operating Agreement - Other | Operating Agreement by and between Hardy Oil & Gas USA Inc., As Operator and British-Bornso Exploration, Inc. and Zikha Energy Company, As Non-Operators | ENVEN ENERGY VENTURES LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | GA 151 Lease G15740 | | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 487 | 6/24/1994 | Operating Agreement - Other | Operating Agreement eff. 6-24-94 | EnVen Energy Ventures, Walter O&G, Energy XXI GOM | Fieldwood Energy LLC | MP 281 Lease G10910 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 488 | | Non-Oilfield Services | Perpetual Software License Agreement | ENVIRONMENTAL SYSTEMS RESEARCH INSTITUTE, INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 489 | 11/1/2006 | Farmout Agreement | Farmout Agreement by and between EOG Resources, Inc. and ; EOG farm out SS 79 to Seneca Resources Corporation | EOG Resources, Inc. | | SS 79 Lease G15277 | | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 490 | 6/14/2007 | Farmout Agreement | Farmout Agreement by and between EOG Resources, Inc. and PetroQuest Energy One, L.L.C.; EOG farm out SS 79 to PetroQuest, PetroQuest then enters Exploration and Development Agreement with Challenge Minerals | EOG Resources, Inc. and PetroQuest Energy One, L.L.C. | | SS 79 Lease G15277 | | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 491 | | Oilfield Services | Diving & ROV Services, Well P&A, Cutting Services, Heavy Lifting, Derrick Barges | EPIC COMPANIES, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 492 | | Oilfield Services | Diving & ROV Services, Well P&A, Cutting Services, Heavy Lifting, Derrick Barges | EPIC DIVING & MARINE SERVICES, LLC (a dare ga | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 493 | 8/19/2020 | Oilfield Services | Statement of Work | EPIC INSURANCE BROKERS & CONSULTANTS | Fieldwood Energy LLC | n.a. | | n.a. | $145.16 | Assume and assign to Credit Bid Purchaser | | x | | |
| 494 | 8/1/2010 | Marketing - Service Agreement | SERVICE AGREEMENT FOR SOUTH PASS 49 PIPELINE PERSONNEL | EPL O&G | | SP 49 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 495 | 12/4/2013 | Other Lease / Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and EPL Oil & Gas, LLC - Amends certain Slot Rental Agreement dated 12/26/2012 | EPL OIL & GAS, LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 496 | 10/25/2005 | Property Participation & Exchange Agreements | EI 311/312 includes JOA with EPL | EPL OIL & GAS, LLC | | EI 312 Lease G22679 | | EPL OIL & GAS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 497 | 4/28/2014 | Marketing - PHA | PHA MP311B-MP302B19 by and between Fieldwood and EPL OIL & GAS, LLC and EPL OIL & GAS, LLC | EPL OIL & GAS, LLC | Fieldwood Energy LLC | MP 311 Lease G02213 | | EPL OIL & GAS, LLC, APACHE SHELF EXPLORATION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 498 | 2/6/1967 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN CONTINENTAL OIL COMPANY AND TENNECO OIL COMPANY ET AL, AS AMENDED | EPL OIL & GAS, LLC; Fieldwood Energy LLC; GOM Shelf LLC | Fieldwood Energy LLC; GOM Shelf LLC | MP 296 Lease G01673, MP 303 Lease G04253, MP 304 Lease G03339, MP 311 Lease G02213 | | EPL OIL & GAS, LLC, EPL OIL & GAS, LLC, APACHE SHELF EXPLORATION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 499 | 6/23/2003 | Marketing - Connection Agreement | OFFSHORE TIE-IN EQUILON ENTERPRISES LLC DBA SHELL OIL PRODUCTS US CONNECTION FOR BOURBON OIL PIPELINE AT MC 311A | EQUILON ENTERPRISES LLC | Fieldwood Energy LLC | MC 311 Lease G02968 | | ARENA ENERGY LP, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 500 | 4/16/2014 | Other Lease / Rental Agreement | Rental Agreement | Equinor USA E&P , W & T Energy VI | | MC 993 N/2MC 993 S/2 Lease G24134 | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 501 | 11/1/2011 | Joint Operating Agreement | Joint Operating Agreement by and between Marathon Oil Company, Statoil USA E&P Inc and Woodside Energy (USA) Inc dated and effective 1 Nov 2011 | Equinor USA E&P; W & T Energy VI | Fieldwood Energy LLC | MC 993 S/2 Lease G24134 | | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 502 | 9/11/2012 | Joint Operating Agreement | Area of Mutual Interest Agreement and Joint Operating Agreement made and entered into between Marathon Oil Company, Statoil USA E&P Inc and Woodside Energy (USA) Inc dated and effective 11 June 2012 (including JOperating Agreement to be identical to JOperating Agreement for MC 993 S/2) | Equinor USA E&P; W & T Energy VI | Fieldwood Energy LLC | MC 992 S/2 Lease G24133 | | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 503 | | Oilfield Services | 500985_MSA dated effective 12/16/13; Amend. effective 01/29/2015; Amend. effective 08/21/2018 | ERA HELICOPTERS LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 504 | | Oilfield Services | 777596_Master Services Agreement dated effective 03/20/2018 | ESEIS, INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 505 | | Oilfield Services | 700634_Master Services Agreement dated effective 10/01/2014 | ETHOS ENERGY LIGHT TURBINES LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 506 | | Oilfield Services | Rental Drill Bits | EVANS RENTALS, INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 507 | | Oilfield Services | Master Agreement | Eventure Global | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Parties [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 508 | 7/31/2018 | Non-Oilfield Services | Services Agreement | EVERYTHINGBENEFITS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 509 | | Oilfield Services | 508471_Master Services Agreement dated effective 11/01/2013 | EXPEDITORS & PRODUCTION SERVICES CO, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 510 | 5/6/2019 | Non-Oilfield Services | Consulting Agreement | EXPLOITATION TECHNOLOGIES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 511 | | Oilfield Services | Explosives Contractor | EXPLOSIVE SERVICES INTERNATIONAL LTD | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 512 | 8/16/1993 | Joint Operating Agreement | Amendment to Operating Agreement, dated August 16, 1993, between Express Acquisition Company and Torch EnergyAdvisors Inc. | Express Acquisition Company and Torch EnergyAdvisors Inc. | Fieldwood Energy Offshore LLC | SS 207 Lease G01523 | n.a. | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | x |
| 513 | | Oilfield Services | Daily Operating Supplies | EXPRESS SUPPLY & STEEL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 514 | | Oilfield Services | 700929_Master Services Agreement dated effective 05/07/2015 | EXPRESS WELD LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 515 | | Oilfield Services | Pipeline Rental Tools/Equipment | EXPRO MIDSTREAM SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 516 | | Oilfield Services | 543437_Master Services Agreement dated effective 11/01/2013 | EXTREME ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 517 | 12/11/2007 | Letter Agreement - Other Land | Letter Agreement by and between Exxon Mobil Corporation and Apache Corporation : Amendment to Letter Agreement 10/24/2008 | Exxon Mobil Corporation and Apache Corporation | | ST 67/68 Lease 20 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 518 | 4/9/2008 | Letter Agreement - Other Land | Letter Agreement by and between Exxon Mobil Corporation and Apache Corporation : Exxon Mobil grants extension to well commencement per Amendment to Letter Agreement dated 09/10/1991 | Exxon Mobil Corporation and Apache Corporation | | ST 67/68 Lease 20 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 519 | 1/31/2007 | Facilities & Tie-In Agreements | EXXON MOBIL PIPELINE COMPANY CONNECTION AGREEMENT FOR WD 73A platform owned by Exxon and connecting to WD 90 | EXXONMOBIL PIPELINE COMPANY | | WD 90 Lease G01089 | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 520 | 8/21/2006 | Marketing - Connection Agreement | EXXONMOBILE PIPELINE COMPANY CONNECTION AGREEMENT WITH APACHE CORPORATION | EXXONMOBIL PIPELINE COMPANY | | MC 311 Lease G02968 | ARENA ENERGY LP, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 521 | | Oilfield Services | 777903_Master Services Agreement dated effective 03/28/2019 | F.A.D. FLANGE ACCIAIO E DERIVATI S.P.A. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 522 | | Oilfield Services | 505180_Master Services Agreement dated effective 12/01/2013 | FASTORQ LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 523 | | Oilfield Services | 501699_Master Services Agreement dated effective 02/02/2014 | FDF ENERGY SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 524 | 6/1/2020 | Non-Oilfield Services | Service Agreement | FIDELITY INVESTMENTS INSTITUTIONAL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 525 | 4/1/2009 | Marketing - Other | Allocation of quality bank by and between Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC | Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 526 | 11/1/2018 | Marketing - Other | Allocation of quality bank by and between Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC | Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 527 | 1/1/2006 | Marketing - PHA | GC 768 by and between Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC | Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 528 | 8/1/1997 | Marketing - PHA | ST 176/ST 148 by and between Fieldwood and Arena Offshore LLC and Arena Offshore LLC | Fieldwood and Arena Offshore LLC and Arena Offshore LLC | Fieldwood Energy LLC | ST 161 Lease G01248, ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 529 | 10/31/2013 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP | Fieldwood and Arena Offshore LP and Arena Offshore LP | Fieldwood Energy LLC | EI 315 Lease G02112; EI 316 Lease G05040, EI 329 Lease G02912 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 530 | 9/21/2010 | Marketing - PHA | MC 519-Santiago;MC 563-Santa Cruz;MC 562-Isabella MC 563 by and between Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 562 Lease G19966 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 531 | 9/21/2010 | Marketing - PHA | MC 562 and MC 519 at MC 474(Genovesa) by and between Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 562 Lease G19966 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 532 | 9/21/2010 | Marketing - PHA | MC 519-Santiago;MC 563-Santa Cruz;MC 562-Isabella MC 563 by and between Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 533 | 9/21/2010 | Marketing - PHA | MC 562 and MC 519 at MC 474(Genovesa) by and between Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 519 Lease G27278, MC 474 Lease G35825 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 534 | 1/1/2011 | Marketing - Lease of Platform Space | BR116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC | Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC | Fieldwood Energy LLC | EI 346 Lease G14482, MC 311 Lease G02968, SS 189 Lease G04232, ST 295 Lease G05646 | BRISTOW US LLC; ARENA ENERGY LP; BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 535 | 7/1/2014 | Marketing - PHA | VR 271 by and between Fieldwood and Castex Offshore Inc and Castex Offshore Inc | Fieldwood and Castex Offshore Inc and Castex Offshore Inc | Fieldwood Energy LLC | VR 271 Lease G04800 | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 536 | 11/1/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 537 | 11/4/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 538 | 6/13/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 539 | 10/1/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 540 | 11/1/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for Counterparties whose contracts will be assumed without modification.
[8] Reference is hereby made to the Debtors' Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 541 | 7/13/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 542 | 2/2/1996 | Marketing - Pipeline Transport | Gathering Agreement by and between Fieldwood and CMA Pipeline and CMA Pipeline | Fieldwood and CMA Pipeline and CMA Pipeline | Fieldwood Energy LLC | ST 206 Lease G05613 | MARATHON OIL COMPANY, W & T OFFSHORE INC, CMA PIPELINE | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 543 | 9/30/2015 | Marketing - Pipeline Transport | Gathering Agreement by and between Fieldwood and CMPA PIPELINE PARTNERSHIP, LLC and CMPA PIPELINE PARTNERSHIP, LLC | Fieldwood and CMPA PIPELINE PARTNERSHIP, LLC and CMPA PIPELINE PARTNERSHIP, LLC | Fieldwood Energy LLC | ST 206 Lease G05613 | MARATHON OIL COMPANY, W & T OFFSHORE INC, CMA PIPELINE | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 544 | 7/18/2002 | Marketing - PHA | HI A-582 by and between Fieldwood and Cox Operating, LLC and Cox Operating, LLC | Fieldwood and Cox Operating, LLC and Cox Operating, LLC | Fieldwood Energy LLC | HI A582 Lease G02719 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 545 | 7/31/2013 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI | Fieldwood and Energy XXI and Energy XXI | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 546 | 6/3/2015 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI | Fieldwood and Energy XXI and Energy XXI | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 547 | 11/1/2006 | Marketing - Lease of Platform Space | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood Energy LLC | HI A-573 Lease G02393, MP 289 Lease G01666, SS 274 Lease G01039, ST 206 Lease G05613, VR 265 Lease G01955 | ERA HELICOPTERS INC., Crimson Louisiana Pipeline LLC, EAST CAMERON GATHERING LLC, ERA HELICOPTERS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 548 | 2/1/2011 | Marketing - Lease of Platform Space | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 549 | 2/29/1996 | Marketing - PHA | PHA by and between Fieldwood and FIELDWOOD ENERGY LLC and FIELDWOOD ENERGY LLC | Fieldwood and FIELDWOOD ENERGY LLC and FIELDWOOD ENERGY LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 550 | 4/1/2007 | Marketing - PHA | RID108101-MP289C-MP275 by and between Fieldwood and FWE and FWE | Fieldwood and FWE and FWE | Fieldwood Energy LLC | MP 289 Lease G01666 | ANADARKO US OFFSHORE LLC, ERA HELICOPTERS INC., HIGH-POINT GAS GATHERING, L.L.C., SHELL PIPELINE COMPANY LP, TALOS PETROLEUM LLC, W & T OFFSHORE INC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 551 | 8/14/1995 | Marketing - PHA | PHA SM280-SM268A by and between Fieldwood and FWE and FWE | Fieldwood and FWE and FWE | Fieldwood Energy LLC | SM 268 Lease G02310 | HELIS OIL & GAS CO, AMERICAN PANTHER, LLC, MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 552 | 5/1/2012 | Marketing - PHA | PHA EI354-EI337A by and between Fieldwood and FWE and FWE | Fieldwood and FWE and FWE | Fieldwood Energy LLC | EI 354 Lease G10752, EI 337, EI 337 | RIDGEWOOD CORPORATION, COX OPERATING LLC | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 553 | 12/10/2013 | Marketing - PHA | MC 725 by and between Fieldwood and GULFSTAR ONE LLC and GULFSTAR ONE LLC as amended by A. First Amendment to Production Handling Agreement by and among Gulfstar One LLC, Noble Energy, Inc., Ecopetrol America, Inc., Samson Offshore Mapleleaf, LLC and Marathon Oil Company dated effective July 1, 2016. B. Second Amendment to Production Handling Agreement by and among Gulfstar One LLC, Noble Energy, Inc., Ecopetrol America Inc., Samson Offshore Mapleleaf, LLC, and Marathon Oil Company dated effective August 4, 2016 | Fieldwood and GULFSTAR ONE LLC and GULFSTAR ONE LLC as amended by | Fieldwood Energy LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 554 | 4/1/2018 | Marketing - PHA | PHA ST 308 Katmai by and between Fieldwood and ILX PROSPECT KATMAI LLC and ILX PROSPECT KATMAI LLC | Fieldwood and ILX PROSPECT KATMAI LLC and ILX PROSPECT KATMAI LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 555 | 1/17/1997 | Marketing - Lease of Platform Space | ZZZ900-GG065 MROG LOPS by and between Fieldwood and Manta Ray Offshore Gathering Co., LLC and Manta Ray Co., LLC | Fieldwood and Manta Ray Offshore Gathering Co., LLC and Manta Ray Offshore Gathering Co., LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 556 | 1/14/2019 | Marketing - PHA | RED100-GC200TA09 ORLOV PHA by and between Fieldwood and RED WILLOW OFFSHORE LLC and RED WILLOW OFFSHORE LLC | Fieldwood and RED WILLOW OFFSHORE LLC and RED WILLOW OFFSHORE LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 557 | 1/1/2020 | Marketing - Pipeline Transport | Transportation Agreement by and between Fieldwood and RED WILLOW OFFSHORE LLC and RED WILLOW OFFSHORE LLC | Fieldwood and RED WILLOW OFFSHORE LLC and RED WILLOW OFFSHORE LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 558 | 4/1/2018 | Marketing - PHA | PHA ST 308 Katmai by and between Fieldwood and RIDGEWOOD KATMAI LLC and RIDGEWOOD KATMAI LLC | Fieldwood and RIDGEWOOD KATMAI LLC and RIDGEWOOD KATMAI LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 559 | 4/28/2009 | Marketing - Lease of Platform Space | ROT101-LOPS MATAGORDA ISLAND 622C by and between Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC | Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC | Fieldwood Energy LLC | EI 189 Lease 423 | ENVEN ENERGY VENTURES LLC, HELIS OIL & GAS COMPANY LLC, ROTOCRAFT LEASING CO LLC | $0.00 | Assume and allocate Pursuant to Divisive Mergers | x | | | |
| 560 | 4/28/2009 | Marketing - Lease of Platform Space | ROT101-LOPS EI 189/F/F B by and between Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC | Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC | Fieldwood Energy LLC | MI 622 Lease G05000 | EOG RESOURCES INC, ROTOCRAFT LEASING CO LLC | $0.00 | Assume and allocate Pursuant to Divisive Mergers | x | | | |
| 561 | 8/28/2014 | Marketing - PHA | MC 736 by and between Fieldwood and SBM Gulf Production, LLC and SBM Gulf Production, LLC | Fieldwood and SBM Gulf Production, LLC and SBM Gulf Production, LLC | Fieldwood Energy LLC | MC 698 Lease G28022, MC 782 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 562 | 1/1/2010 | Marketing - Lease of Platform Space | Annual LOPS payment for 12" Pipeline by and between Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 563 | 11/1/2016 | Marketing - Lease of Platform Space | Annual LOPS payment for 16" Pipeline by and between Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared June 11, 2021**

Schedule of Assumed Contracts
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that may be subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation having to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 564 | 3/1/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 565 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 566 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 567 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 568 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 569 | 6/29/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 570 | 6/29/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 571 | 6/30/1999 | Marketing - PHA | MC 109/MC110 by and between Fieldwood and Talos Energy and Talos Energy | Fieldwood and Talos Energy and Talos Energy | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 572 | 3/1/2007 | Marketing - PHA | SM 107 by and between Fieldwood and Talos Energy and Talos Energy | Fieldwood and Talos Energy and Talos Energy | Fieldwood Energy LLC | SM 108 Lease 792 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 573 | 6/30/1999 | Marketing - PHA | MC 108/MC 109 by and between Fieldwood and Talos Energy LLC and Talos Energy LLC | Fieldwood and Talos Energy LLC and Talos Energy LLC | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 574 | 8/1/2015 | Marketing - Pipeline Transport | Capacity Agreement by and between Talos Energy Offshore, LLC and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC | Fieldwood and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC | Fieldwood Energy LLC | MP 309 Lease G08760, MP 310 Lease G04126 | TALOS ENERGY OFFSHORE, LLC, HE&D OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 575 | 1/14/2019 | Marketing - PHA | TAL109-GC200TA09 ORLOV PHA by and between Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 576 | 1/1/2020 | Marketing - Pipeline Transport | Transportation Agreement by and between Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 577 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-19 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 578 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-23 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | VR 371 Lease G09524 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 579 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-7 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 580 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-8 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 581 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-2 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | EI 120 Lease 50 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 582 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-18 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | SP 69 Lease G34367 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 583 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | SS 207 Lease G01523, SS 216 Lease G01524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 584 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-24 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | WC 71 Lease 244 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 585 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-25 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | WD 105 Lease 842 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 586 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-22 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | VR 315 Lease G04215 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 587 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-20 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 588 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-5 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | EI 315 Lease G02112 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 589 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-9 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | HI 179 Lease G03236 | ARENA ENERGY LP, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 590 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-6 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | EI 346 Lease G14482 | BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, et al.**
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the leases underlying a contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. To the extent a summary description of a contract's treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 591 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-14 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 592 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | HI A-573 Lease G02393, MC 311 Lease G02968, SP 70 Lease G01614 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 593 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-16 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | SS 274 Lease G01039 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 594 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-1 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 595 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-17 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | SM 288 Lease G02310 | HELIS OIL & GAS CO, AMERICAN PANTHER, LLC, MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 596 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-13 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | MP 310 Lease G04126 | TALOS ENERGY OFFSHORE, LLC, HE&D OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 597 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-4 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | EI 224 Lease G05504 | TALOS PETROLEUM LLC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 598 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-11 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | HI A-550 Lease G04081 | TAMPNET INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 599 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-26 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | WD 122 Lease G13645 | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 600 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-27 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 601 | 8/12/2019 | Marketing - Lease of Platform Space | TAM102-LOPS-3 by and between Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | EI 158 Lease G01220 | Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 602 | 7/8/2013 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC | Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 603 | 3/1/2014 | Marketing - PHA | BS 25 by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC | Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 604 | 12/1/2016 | Marketing - Other | AGREEMENT FOR VR 78 PRODUCTION TO FLOW TO TRANSCO'S PIPELINE | FIELDWOOD AND TRANSCO | Fieldwood Energy LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 605 | 12/1/2016 | Interconnection and Measurement Agreement | AGREEMENT FOR VR 78 PRODUCTION TO FLOW TO TRANSCO'S PIPELINE | FIELDWOOD AND TRANSCO | Fieldwood Energy LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 606 | 9/5/1981 | Marketing - Lease of Platform Space | A-LOPS-E1156B by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | Fieldwood Energy LLC | EI 136 Lease G03152 | APACHE SHELF EXPLORATION LLC, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 607 | 9/15/1981 | Marketing - Lease of Platform Space | A-LOPS-E136JA by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | Fieldwood Energy LLC | EI 136 Lease G03152 | APACHE SHELF EXPLORATION LLC, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 608 | 3/1/2017 | Marketing - PHA | BS 52SL 17860R2 by and between Fieldwood and Upstream Exploration LLC and Upstream Exploration LLC | Fieldwood and Upstream Exploration LLC and Upstream Exploration LLC | Fieldwood Energy LLC | BS 52 Lease 17675 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 609 | 6/13/1996 | Marketing - PHA | SS 300 B/SS301 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. | Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. | Fieldwood Energy LLC | SS 300 Lease G07760, SS 301 Lease G10794 | W&T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 610 | 10/23/2018 | Marketing - PHA | MO826-VK251 by and between Fieldwood and W&T Offshore and W&T Offshore | Fieldwood and W&T Offshore and W&T Offshore | Fieldwood Energy LLC | MO 826 Lease G26176 | W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 611 | 3/1/2017 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 612 | 3/1/2017 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 613 | 8/1/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 614 | 8/1/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 615 | | Marketing - PHA | ST 320 A-SS11 by and between Fieldwood and W&T Offshore, Inc. and W&T Offshore, Inc. | Fieldwood and W&T Offshore, Inc. and W&T Offshore, Inc. | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 616 | 11/12/2013 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | EW 826 Lease G05800 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 617 | 9/30/2004 | Marketing - PHA | PHA for EB165A/EB430 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION | Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION | Fieldwood Energy LLC | EI 224 Lease G05504 | TALOS PETROLEUM LLC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 618 | 10/21/2018 | Marketing - PHA | ST 320 A02 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 619 | 5/20/2019 | Marketing - PHA | ST 320 A03 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 620 | | Marketing - PHA | ST 311 A1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 621 | 6/14/2000 | Marketing - Lease of Platform Space | WIL174 OPBMN FEE-VK251A by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES | Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES | Fieldwood Energy LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and allocate accounts or divisive mergers | x | | | x |
| 622 | 1/7/2016 | Other | Services Agreement | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 623 | 1/7/2016 | Other | Services Agreement | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 624 | 2/21/2018 | Other | Engineering, Procurement, Construction and Installation Services Agreement | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 625 | | Other | Contract for the Execution of Hydrocarbons under the Production Sharing Modality - Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 626 | 3/1/2011 | Marketing - Processing | POL (0.3GPM) 80-90% PLUS FEE + $.15 MCF (ESC) by and between Fieldwood Energy LLC (Formerly Noble Energy Inc.) and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC (Formerly Noble Energy Inc.) and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the operating contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Schedule of Assumed Contracts, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Sale Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [3] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 627 | 1/22/2015 | Marketing - Reserve Commitment | Big Bend / Dantzler Reserve Commitment between Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 742 Lease G32343, MC 697 Lease G28021, MC 698 Lease G28022, MC 782 Lease G33757 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 628 | 2/1/2012 | Marketing - Reserve Commitment | Galeapazas, Santiago/Santa Cruz Reserve Commitment between Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 629 | 10/1/2015 | Marketing - Processing | Coordination Agreement between Fieldwood Energy LLC and (Spectra) Texas Eastern and Texas Eastern to Process at Targa Venice | Fieldwood Energy LLC and (Spectra) Texas Eastern and Texas Eastern to Process at Targa Venice | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 630 | 2/7/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Air Liquide Large Industries U.S. LP | Fieldwood Energy LLC and Air Liquide Large Industries U.S. LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 631 | 10/1/2013 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Apache Corporation | Fieldwood Energy LLC and Apache Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 632 | 2/1/2016 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Arena Energy, LP | Fieldwood Energy LLC and Arena Energy, LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 633 | 7/1/2019 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC | Fieldwood Energy LLC | WC 33 Lease G15050, WC 66 Lease G02826, WC 65 Lease G02825, EC 9/14 Lease G01440, EC 2 SL16473 Lease 16473, EC 2 SL16473 Lease 16473 | FAIRFIELD ROYALTY CORP, HILCORP ENERGY I LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 634 | 12/1/2008 | Marketing - Processing | Greater of FEE or POL (85%/15%) min Fee $.16 (annual escalator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 635 | 1/1/2011 | Marketing - Processing | Greater of FEE or POL (85%/15%) min Fee $.16 (annual escalator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 636 | 9/17/2017 | Marketing - Processing | Greater of FEE or POL (85%/15%) min Fee $.16 (annual escalator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 637 | 3/1/2020 | Marketing - Processing | Amend to FEE: Transco VR 6678 + $.1673 per MMBtu(annual Escalator); Kinetica Egan Gap interconnect + $.08 per mmbtu (not subject to Escalator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070; ST 53 Lease G00400 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 638 | 7/1/2017 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and BASF Intertrade Corporation | Fieldwood Energy LLC and BASF Intertrade Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 639 | 8/1/2016 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Boston Gas Company D/B/A National Grid | Fieldwood Energy LLC and Boston Gas Company D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 640 | 11/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and BP Energy Company | Fieldwood Energy LLC and BP Energy Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 641 | 1/1/2020 | Property Participation & Exchange Agreements | Lease Exchange and Well Participation Agreement dated effective 20 January 2020 by and between Fieldwood Energy LLC and BP Exploration and Production Inc covering MC 474 / 518 | Fieldwood Energy LLC and BP Exploration and Production Inc covering MC 474 / 518 | Fieldwood Energy LLC | MC 474 Lease G35825, MC 518 Lease G35828 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 642 | 6/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 782 Lease G33757, MC738 Lease G32343 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 643 | 6/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 742 Lease G32343 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 644 | 4/1/2021 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 474 Lease G35825 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 645 | 11/30/2017 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 646 | 5/19/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 698 Lease G28022, MC 782 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 647 | 6/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 698 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 648 | 7/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 649 | 6/14/2000 | Marketing - Gathering | Gas Gathering Agreement by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC | VK 251 Lease G10930 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 650 | 6/14/2000 | Marketing - Gathering | Gas Gathering Agreement by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 651 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Castex Energy, Inc. | Fieldwood Energy LLC and Castex Energy, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 652 | 7/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Castex Offshore, Inc. | Fieldwood Energy LLC and Castex Offshore, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 653 | 9/13/2011 | Marketing - Transportation | Chandeleur IT Transportation - Fieldwood interest in MP 59 was sold to Cantium by and between Fieldwood Energy LLC and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream | Fieldwood Energy LLC and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream | Fieldwood Energy LLC | MP 59 Lease G03194 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 654 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Chevron Natural Gas | Fieldwood Energy LLC and Chevron Natural Gas | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the contracts underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [?][?] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Bid Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 655 | 2/25/2011 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G05040, EI 330 Lease G02115, EI 281 Lease G09591, EI 282 Lease G09592, EI 329 Lease G02912, EI 337 Lease G03332 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 656 | 2/1/2019 | Marketing - Other | Methanol Treatment Agreement by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 657 | 10/1/1984 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC | EI 354 Lease G10752, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324 | RIDGEWOOD ENERGY CORPORATION, COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 658 | 5/31/2018 | Marketing - Crude Sales | Gunflint - Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company | Fieldwood Energy LLC | MC 904 Lease G36566, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 659 | 1/30/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 660 | 1/31/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | PL 13 Lease G03171, MP 140 Lease G02193 | ANKOR ENERGY LLC, ENVEN ENERGY VENTURES, LLC, JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 661 | 5/31/2018 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 662 | 1/31/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | SS 274 Lease G01039, EI 188 Lease 443, SM 149 Lease G02592, SM 132 Lease G02282, SM 268 Lease G02310, SS 204 Lease G01520, SS 207 Lease G01523, SS 216 Lease G01524, ST 311 Lease G31418, SM 40 Lease G13607, SM 41 Lease G01192, SM 44 Lease G23840, SM 41 Lease G01192, SM 44 Lease G23840, SM 39 Lease G16320, SM 48 Lease 786 | ERA HELICOPTERS INC. | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 663 | 3/18/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GI 116 Lease G13944, ST 320 Lease G24990 | W & T OFFSHORE INC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 664 | 9/1/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and CIMA Energy, LTD | Fieldwood Energy LLC and CIMA Energy, LTD | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 665 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Colonial Gas Company D/B/A National Grid | Fieldwood Energy LLC and Colonial Gas Company D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 666 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and ConocoPhillips Company | Fieldwood Energy LLC and ConocoPhillips Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 667 | 11/30/2018 | Marketing - Transportation | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC | Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC | Fieldwood Energy LLC | EI 136 Lease G03152, EI 158 Lease G01220, EI 173 Lease G13622, EI 174 Lease G03782, EI 175 Lease 438, EI 187 Lease G10736, EI 189 Lease 423, EI 211 Lease G05502, EI 212 Lease G05503, EI 307 Lease G02110, SS 151 Lease G15282, SS 175 Lease G05550, SS 176 Lease G33646, SS 246 Lease G01027, SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 271 Lease G01038, SS 274 Lease G01039, SS 291 Lease G02925 | APACHE SHELF EXPLORATION LLC, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 668 | 7/8/2011 | Marketing - Gathering | Galapagos, FT 2 - plus 5 amendments-MDQ changes to and between Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 669 | 8/28/2015 | Marketing - Gathering | Big Bend Dantzler, Destin FT2, - plus 4 amendments-MDQ changes by and between Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 782 Lease G33757, MC 697 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 670 | 11/15/2013 eff 12/1/2013 | Marketing - Transportation | Discovery Gas FT2 agreement; plus amendments to MDQ and Exhibit B by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 671 | 11/15/2013 eff 12/1/2013 | Marketing - Transportation | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 672 | 5/1/2020 | Marketing - Transportation | Discovery Gas - FT2 agreement; by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 673 | 5/1/2020 | Marketing - Transportation | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 674 | 4/1/2015 | Marketing - Transportation | Discovery Gas - FT2 agreement; by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 675 | 4/1/2015 | Marketing - Transportation | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 676 | 4/1/2015 | Marketing - Gathering | Discovery Gas Gathering and Gas Dedication by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 677 | 7/15/2004 | Marketing - Transportation | Condensate Transportation Agreement by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 678 | 8/25/2009 | Marketing - Separation & Stabilization | Amendment Letter to Condensate Transport Agreement ST 308 Tarantula by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 679 | 4/1/2015 | Marketing - Transportation | Liquids Transportation Agreement by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 680 | 7/15/2004 | Marketing - Separation & Stabilization | Liquids Sep., Handling, Stab, and Redelivery Agreement by and between Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 681 | 5/1/2020 | Marketing - Separation & Stabilization | Liquids Sep., Handling, Stab, and Redelivery Agreement by and between Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 682 | 10/1/2006 | Marketing - Separation & Stabilization | Amendment Letter to Condensated Sep., and Redelivery Agreement ST 308 Tarantula by and between Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 683 | 2/24/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and DTE Energy Trading, Inc. | Fieldwood Energy LLC and DTE Energy Trading, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 684 | 2/1/2017 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Duke Energy Carolinas, LLC | Fieldwood Energy LLC and Duke Energy Carolinas, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 685 | 5/9/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Duke Energy Florida, Inc. | Fieldwood Energy LLC and Duke Energy Florida, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 686 | 2/27/2015 | Marketing - Transportation | Crude Oil Transport by and between Fieldwood Energy LLC and Endymion Oil Pipeline Company LLC and Endymion Oil Pipeline Company LLC | Fieldwood Energy LLC and Endymion Oil Pipeline Company LLC and Endymion Oil Pipeline Company LLC | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343, MC 782 Lease G33757 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates are adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 687 | 10/1/1981 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC | Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC | Fieldwood Energy LLC | WD 80 Lease G01989, WD 85 Lease G04895, WD 86 Lease G02934, SP 87 Lease G07799, SP 89 Lease G01618, WD 104 Lease 841, WD 105 Lease 842, WD 133 Lease G01106, WD 121 Lease G19843, WD 122 Lease G13645, WD 128 Lease G19883, SP 87 Lease G07799, SP 88 Lease G10894 | TAMPNET INC; TALOS ERT LLC | | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 688 | 9/16/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Enlink Gas Marketing, LP | Fieldwood Energy LLC and Enlink Gas Marketing, LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and allocate pursuant to Credit Bid Purchaser | | x | | |
| 689 | 4/1/2020 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC | Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC | Fieldwood Energy LLC | EI 126 Lease 52, EI 138 Lease G03152, EI 158 Lease G01220, SS 32 Lease 335, SS 33 Lease 336, SS 91 Lease G02919, SS 214 Lease 828, SS 233 Lease G01528, SS 246 Lease G01027, SS 271 Lease G01038, SS 252 Lease G01529, SS 253 Lease G01031, SS 354 Lease G15312, SM 93 Lease G21618, SM 139 Lease G21106, PL 1 Lease G04234, PL 9 Lease G02924, PL 10 Lease G02925, PL 11 Lease 71, SS 68 Lease G02917, PL 10 Lease G02925, PL 11 Lease 71, ST 242 Lease G23933, ST 315 Lease G23946, ST 316 Lease G22762, VR 272 Lease G23829, VR 313 Lease G01172, VR 315 Lease G04215, VR 332 Lease G09514 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 690 | 11/1/2004 | Marketing - Processing | $0.06/MMBTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 691 | 4/1/2007 | Marketing - Processing | $0.06/MMBTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 692 | 1/19/2012 | Marketing - Processing | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 136 Lease G02588, SM 137 Lease G02589 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 693 | 2/17/2014 | Marketing - Processing | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 137 Lease G02589, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 694 | 1/1/2013 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | EI 346 Lease G14482, GI 116 Lease G13944, SS 79/80 Lease G15277 | BRISTOW US LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 695 | 10/22/1976 | Marketing - Processing | Agreement for the Construction and Operation of the Blue Water Gas Plant, Acadia Parish, Louisiana by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | VR 261 | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 696 | 1/1/2011 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 697 | 4/1/2012 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 698 | 6/1/2012 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 699 | 11/1/2012 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 700 | 3/1/2011 | Marketing - Processing | Gas processing Raw make purchase by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC ((Formally Noble Energy Inc.) and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and allocate pursuant to Credit Bid Purchaser | | x | | |
| 701 | 3/16/2004 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 142 Lease G01216, SM 40 Lease G13607, EC 178 Lease G34229, EI 307 Lease G02110, EC 338 Lease G02063 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 702 | 11/11/2004 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | VR 161 Lease G34253 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 703 | 12/6/2004 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | VR 161 Lease G34253 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 704 | 2/1/2005 | Marketing - Processing | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 39 Lease G16320 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 705 | 4/1/2010 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 307 Lease G02110 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 706 | 4/1/2011 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 307 Lease G02110 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchaser Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Document shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 707 | 11/1/2011 | Marketing - Processing | (.5/GPM*100) or $.10 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 563 Lease G21176, MC 562 Lease G19966 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 708 | 11/9/2004 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 709 | 1/8/2007 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 710 | 1/12/2011 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 711 | 8/1/2009 | Marketing - Processing | FEE - .0800 PER mcf by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 211 Lease G05502, EI 212 Lease G05503, EI 281 Lease G09591, EI 281 Lease G09591, SS 159 Lease G10775, EI 53 Lease 479, GI 76 Lease G02161, SM 280 Lease G14456, SS 274 Lease Q01039, ST 205 Lease G05612, ST 296 Lease G12981, ST 291 Lease G16455, SM 149 Lease G02592, ST 190 Lease G01261, ST 205 Lease G05612, SM 268 Lease G02310, SM 281 Lease G02600, SM 280 Lease G14456 | EPL OIL & GAS, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 712 | 1/18/2012 | Marketing - Processing | FEE - .0800 PER MCF - ESCALATOR ADDED by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 211 Lease G05502, EI 212 Lease G05503, EI 281 Lease G09591, EI 281 Lease G09591, SS 159 Lease G10775, EI 53 Lease 479, GI 76 Lease G02161, SM 280 Lease G14456, SS 274 Lease Q01039, ST 205 Lease G05612, ST 296 Lease G12981, ST 291 Lease G16455, SM 149 Lease G02592, ST 190 Lease G01261, ST 205 Lease G05612, SM 268 Lease G02310, SM 281 Lease G02600, SM 280 Lease G14456 | EPL OIL & GAS, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 713 | 2/11/2015 | Marketing - Processing | 95% & $0.08/Mmbtu/ MINIMUM $.20 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 742 Lease G32343, MC 697 Lease Q28021, MC 698 Lease Q28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VII LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 714 | 1/8/2019 | Marketing - Processing | $.16 MMBTU (excl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MP 140 Lease G02193, WD 90 Lease G01089, WD 103 Lease 840, WD 105 Lease 842, MP 289 Lease G01666, MP 290 Lease G34866, MP 275 Lease G15395, MP 289 Lease G01666, SP 62 Lease G01294, MP 296 Lease Q01673, MP 311 Lease G02213, MP 311 Lease G02213, MP 17 Lease G04481, BS 52 Lease 17675, MC 311 Lease Q02968, MC 108 Lease Q00777 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 715 | 1/1/2012 | Marketing - Processing | FEE - .08005 /MCF (SUBJECT TO g/p (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 76 Lease G01208, SM 58 Lease G01194, EI 158 Lease G01220, EI 188 Lease 443, SS 207 Lease G01523, ST 295 Lease G05646, SS 189 Lease G04232, PL 25 Lease G14535 | LOUISIANA LAND & EXPLORATION CO | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 716 | 1/8/2019 | Marketing - Processing | $.16 MMBTU (excl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 717 | 7/1/1970 | Marketing - Processing | Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | WD 73 G01083, WD 75, WD 90, WD 103, WD 104, WD 105 | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 718 | 7/1/1970 | Marketing - Construction, Operations, Management, Ownership Agreements | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | WD 105, SP 62, BS 52, SP 65, SP 70, MP 289, MP 290, WD, MC 311 | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 719 | 7/25/2014 | Marketing - Processing | Ratification to the Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | WD 73 G01083, WD 75, WD 90, WD 103, WD 105 | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 720 | 10/1/2012 | Marketing - Processing | poll 85% 15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | QC 200 Lease G12209, QC 201 Lease G12210, QC 244 Lease G11043 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, WILD WELL CONTROL INC, CHEVRON USA INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 721 | 2/27/2015 | Marketing - Processing | 95.75% & $0.14/Mmbtu / Minimum $.20 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 782 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 722 | 3/1/2005 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 142 Lease G01216, SM 40 Lease G13607, EC 178 Lease G34229, EI 307 Lease G02110 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 723 | 1/1/2009 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 142 Lease G01216, SM 40 Lease G13607, EC 178 Lease G34229, EI 307 Lease G02110 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 724 | 1/1/1992 | Marketing - Processing | BASE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease Q02587, SM 141 Lease Q02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 725 | 10/1/1995 | Marketing - Processing | CONTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease Q02587, SM 141 Lease Q02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 726 | 10/13/1998 | Marketing - Processing | RAW MAKE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 727 | 11/13/1998 | Marketing - Processing | AMENDMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 728 | 2/1/2000 | Marketing - Processing | SERVICE-FRACTIONATION (N6) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 729 | 12/1/2000 | Marketing - Processing | SERVICE-DEHYDRATION (N6) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 730 | 9/1/2010 | Marketing - Processing | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 731 | 10/18/2010 | Marketing - Processing | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 732 | 12/1/2010 | Marketing - Processing | BALLOT TO AMEND EXHIBIT 5 TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 733 | 6/1/2012 | Marketing - Processing | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 734 | 7/1/2012 | Marketing - Processing | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 735 | 7/1/2012 | Marketing - Processing | APPROVAL OF AFES TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 736 | 9/25/2013 | Marketing - Processing | BALLOT TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 737 | 10/6/2013 | Marketing - Processing | REVISED EXHIBIT C TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02917, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 738 | 8/1/1999 | Marketing - Processing | fixed fee conveyance by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | GC 065 G05889, GC 108 G14668, GC 109 G05900, GC 243 G20051, GC 200 G12209, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 739 | 10/1/2007 | Marketing - Processing | 8713% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 338 Lease G02063 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, et al.**
**Prepared June 11, 2021**

Schedule of Assumed Contracts

Notes:

[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.

[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).

[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.

[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.

[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.

[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.

[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.

[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 740 | 2/20/2008 | Marketing - Processing | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 39 Lease G16320, EC 338 Lease G02063 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 741 | 4/1/2018 | Marketing - Processing | fee > $.12 / MMBTU by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | ST 320 Lease G24990 | | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 742 | 4/1/2020 | Marketing - Processing | NGL BANK - FIRST AMENDED AND RESTATED by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | ST 320 Lease G24990 | | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 743 | 8/1/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Enven Energy Ventures, LLC | Fieldwood Energy LLC and Enven Energy Ventures, LLC | Fieldwood Energy LLC | n.a. | | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 744 | 1/23/2014 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC | EI 281 Lease G09591, EI 282 Lease G09592, EI 315 Lease G02712, EI 316 Lease G05040, EI 329 Lease G02912, EI 330 Lease G02115, EI 337 Lease G03332, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 342 Lease G02319, GC 065 Lease G05889, SM 142 Lease G01216, SM 93 Lease G21616, SM 127 Lease G02883, SM 128 Lease G02587, SS 300 Lease G07780, SS 315 Lease G09631, SS 314 Lease G26074, VR 362 Lease G10687, VR 371 Lease G09524, EI 361 Lease G02324, PL 1 Lease G04234, PL 9 Lease G02924, PL 10 Lease G02925, SS 68 Lease G02917, PL 9 Lease G02924, PL 10 Lease G02925, EI 361 Lease G02324, ST 316 Lease G02762, VR 380 Lease G02580 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 745 | 1/23/2014 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC | SS 301 Lease G10794 | | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 746 | 1/23/2014 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC | ST 308 Lease G21685 | | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 747 | | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC | GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 748 | 1/1/2020 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC and EXXONMOBIL OIL CORPORATION and EXXONMOBIL OIL CORPORATION | Fieldwood Energy LLC | GC 065 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900, GC 244 Lease G11043, GC 200 Lease G12209, GC 243 Lease G20051, GC 201 Lease G12210 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON USA INC, W & T ENER | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 749 | 7/23/2020 | Marketing - Connection Agreement | ST 53/ST 57 CONNECTION AGREEMENT BETWEEN FIELDWOOD ENERGY LLC AND FIELDWOOD ENERGY OFFSHORE LLC AND ROSEFIELD PIPELINE COMPANY, LLC | FIELDWOOD ENERGY LLC AND FIELDWOOD ENERGY OFFSHORE LLC AND ROSEFIELD PIPELINE COMPANY, LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | ST 53 Lease G04000, ST 67 Lease 20 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 750 | 11/21/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Florida Power & Light Company | Fieldwood Energy LLC and Florida Power & Light Company | Fieldwood Energy LLC | n.a. | | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 751 | 2/1/2019 | Marketing - Transportation | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP | Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP | Fieldwood Energy LLC | EI 32 Lease 196, EI 89 Lease 44 | COX OPERATING LLC | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 752 | 12/10/2013 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 753 | 12/10/2013 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 754 | 12/10/2013 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 755 | 11/1/1995 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc | Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc | Fieldwood Energy LLC | EB 159 Lease G02646, EB 160 Lease G02647, EB 165 Lease G06280, HI A-341 Lease G20605, HI A-365 G02750 Lease G02750, HI A-376 G02754 Lease G02754, HI A445 Lease G17199, HI A-550 Lease G04081, HI A-563 Lease G02388, HI A-382 Lease G02757, HI A-573 Lease G02393, HI A-606 Lease G02271, HI A-596 Lease G02288 | APACHE DEEPWATER LLC | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 756 | 10/10/2013 | Marketing - Transportation | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 757 | 1/1/2019 | Marketing - Transportation | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 758 | 12/1/2013 | Marketing - Transportation | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC | BS 52 Lease 17675, MP 153 Lease G01967, SP 65 Lease G01610, MP 296 Lease G01673, MP 310 Lease G04126, MP 311 Lease G02213, MP 311 Lease G02213, MP 77 Lease G04481, SP 62 Lease G01294, WD 75 Lease G01085, MC 110 Lease G18192 | UPSTREAM EXPLORATION LLC; AMERICAN PANTHER, LLC | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 759 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC | Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC | Fieldwood Energy LLC | MC 311 Lease G02968, WD 105 Lease 842, MP 289 Lease G01666, MP 275 Lease G15395, BS 52 Lease 17675, MC 110 Lease G18192 | ARENA ENERGY LP, BRISTOW U6 LLC | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 760 | 9/10/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and J. Aron & Company | Fieldwood Energy LLC and J. Aron & Company | Fieldwood Energy LLC | n.a. | | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 761 | 1/14/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and J.P. Morgan Ventures Energy Corporation | Fieldwood Energy LLC and J.P. Morgan Ventures Energy Corporation | Fieldwood Energy LLC | n.a. | | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 762 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Jefferson Island Storage & Hub, L.L.C. | Fieldwood Energy LLC and Jefferson Island Storage & Hub, L.L.C. | Fieldwood Energy LLC | n.a. | | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 763 | 7/25/2019 | Joint Development / Venture / Exploration Agreements | Exploration Venture Agreement by and between Fieldwood Energy LLC and Juneau Oil & Gas LLC (terminated 6-23-20) | Fieldwood Energy LLC and Juneau Oil & Gas LLC (terminated 6-23-20) | Fieldwood Energy LLC | MULTIPLE | | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 764 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Keyspan Gas East Corporation D/B/A National Grid | Fieldwood Energy LLC and Keyspan Gas East Corporation D/B/A National Grid | Fieldwood Energy LLC | n.a. | | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents") or any Plan and this Schedule of Assumed Contracts, the terms of such Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 765 | 5/1/2008 | Marketing - PHA | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 766 | 3/1/2011 | Marketing - PHA | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 767 | 11/1/2012 amended 12/1/2013 | Marketing - PHA | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 768 | 11/1/2012 Amended effective 12/1/2013 | Marketing - Transportation | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | WC 165 Lease 758, WC 291 Lease G04397 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 769 | 11/1/2012 Amended date 8/1/2014 contract date 11/1/2012 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | SM 149 Lease G02592, SM 149 Lease G02592, SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 770 | 3/1/2011 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | VR 380 Lease G02580, SM 149 Lease G02592, EI 267 Lease 812, SS 79/80 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 771 | 11/1/2012 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | SS 79/80 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 772 | 9/1/1997 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 773 | Amendment effective 11/1/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica | Fieldwood Energy LLC | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 774 | 4/1/2004 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 775 | 9/30/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 776 | 9/30/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 777 | 10/22/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 778 | 1/1/2007 Original Contract Amendment Effective 1/1/2007 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 779 | 8/1/1992, Amendment Effective 1/1/2007 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 780 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | GI 43 Lease 175, GI 47 Lease 133, EI 224 Lease G00504, SS 169 Lease 820, SS 182 Lease G03998, SS 193 Lease G13917, SS 198 Lease 593, SS 198 Lease 593, SM 106 Lease G02279, VR 196 Lease G19760, VR 229 Lease G27070, VR 261 Lease G03328, EC 2 SL16473 Lease 16473, EC 2 SL16473 Lease 16473, EC 2 SL16473 Lease 16473, SS 198 Lease G04000 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY, BOIS D'ARC EXPLORATION, LLC, FAIRFIELD ROYALTY CORP, HILCORP ENERGY 1 LP | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 781 | 2/25/2010 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC | Fieldwood Energy LLC | WC 65 Lease G02825, WC 66 Lease G02826, WC 72 Lease G23735, EC 2 SL16473 Lease 16473 | FAIRFIELD ROYALTY CORP, HILCORP ENERGY 1 LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 782 | 9/1/1997 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy Express, LLC | Fieldwood Energy LLC | SS 198 Lease 593 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 783 | 4/1/2020 | Marketing - Transportation | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | EI 188 Lease 443, EI 189 Lease 423, EI 211 Lease G05502, EI 212 Lease G05503, EI 342 Lease G02219, EI 346 Lease G14482, SM 149 Lease G02592, SM 7 Lease G33610, SM 10 Lease G01181, SS 105 Lease G09614, SS 129 Lease G12941, SS 178 Lease G05551, SS 204 Lease G01520, SS 207 Lease G01523, SS 216 Lease G01524, VR 380 Lease G02580 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 784 | 4/1/2020 | Marketing - Transportation | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | SS 301 Lease G10794 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 785 | 4/1/2020 | Marketing - Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | ST 49 Lease G24956, ST 53 Lease G04000, WC 66 Lease G02826, WC 65 Lease G02825 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 786 | 12/1/2013 | Marketing - Transportation | IT Transmission by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | SS 79/80 Lease G15277, SS 301 Lease G10794, SS 300 Lease G07760, SM 149 Lease G02592 | CALYPSO EXPLORATION LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 787 | 4/1/2020 | Marketing - Transportation | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | SS 79/80 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contracts or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 788 | 10/1/1982 | Leases - Construction, Operations, Management, Ownership Agreements | Governs the Ownership and Operations of the Facility. The Facility is co-owned by two groups, Owners and Producers. Facility assets are owned in three different classes: either solely owned by Owners, co-owned by Owners and Producers or soley owned by Pr by and between Fieldwood Energy LLC and Kinetica Partners LLC and Kinetica Partners LLC | Fieldwood Energy LLC and Kinetica Partners LLC and Kinetica Partners LLC | Fieldwood Energy LLC | SA 10 | n.a. | $0.00 | Assume and Allocate pursuant to divisive mergers | x | | | |
| 789 | 1/1/2017 | Other Assignment / Bill of Sale (or Conveyance, Notice of Exercise) & Related Consents | by and between Fieldwood Energy LLC and Lamar Hunt Trust Estate. Assignment made as result of Withdrawal from Operating Agreement | Fieldwood Energy LLC and Lamar Hunt Trust Estate | Fieldwood Energy LLC | SM 281 Lease G02600 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 790 | 1/1/2017 | Other Assignment / Bill of Sale (or Conveyance, Notice of Exercise) & Related Consents | by and between Fieldwood Energy LLC and Lamar Hunt Trust Estate. Assignment made as result of Withdrawal from Operating Agreement | Fieldwood Energy LLC and Lamar Hunt Trust Estate | Fieldwood Energy LLC | SM 280 Lease G14456 | MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 791 | 10/1/2017 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Mansfield Power and Gas LLC | Fieldwood Energy LLC and Mansfield Power and Gas LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser | | x | | |
| 792 | 2/1/2006 | Marketing - Gathering | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 793 | 3/15/2020 | Marketing - Gathering | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 794 | 3/15/2020 | Marketing - Gathering | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 795 | 6/1/2003 | Marketing - Gathering | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC | Fieldwood Energy LLC | ST 316 Lease G22762 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 796 | 9/1/2004 | Marketing - Gathering | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Company LLC and Manta Ray Gathering Company LLC | Fieldwood Energy LLC and Manta Ray Gathering Company LLC and Manta Ray Gathering Company LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 797 | 4/1/2010 | Marketing - Transportation | Manta Ray firm Gathering and Dedication , Disount Rate of $.12 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | GI 116 Lease G13944, GC 065 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 798 | 2/1/2006 | Marketing - Transportation | Anaconda Gas Pipeline Gathering agreement; includes gas Dedication; plus 1 amendment dated 7/1/2011 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 799 | 12/1/1992 | Marketing - Transportation | Manta Ray firm Gathering and Dedication , Disount Rate of $.032 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 800 | 4/1/2000 | Marketing - Transportation | Manta Ray firm Gathering and Dedication , Disount Rate of $.50 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 801 | 12/1/2015 | Marketing - Transportation | Firm - Gathering by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 802 | 7/1/2013 | Marketing - Separation & Stabilization | Consent to assign liquids separation 7 stabilization agreement as amended dated 1/17/2001 between Manta Ray and Apache (Contract Nos. 101936, 310225 and 106968) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GI 116 Lease G13944, GI 110 Lease G13943 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 803 | 4/27/2004 | Marketing - Separation & Stabilization | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 804 | 11/1/2000 | Marketing - Separation & Stabilization | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 805 | 11/1/2000 | Marketing - Separation & Stabilization | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 806 | 3/1/2008 | Marketing - Separation & Stabilization | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 807 | 11/1/2010 | Marketing - Separation & Stabilization | LSA by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 808 | 6/1/2014 | Marketing - Separation & Stabilization | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GI 116 Lease G13944, GI 110 Lease G13943 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 809 | 4/1/2018 | Marketing - Separation & Stabilization | Contract for ST 320 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the proposed treatment set forth herein and the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 810 | 4/1/2010 | Marketing - Separation & Stabilization | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GC 065 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900, GC 243 Lease G20051 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 811 | 4/1/2010 | Marketing - Separation & Stabilization | Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GC 065 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900, GC 243 Lease G20051 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 812 | 4/1/2011 | Marketing - Separation & Stabilization | LSSA by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | GC 065 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900, GC 243 Lease G20051 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 813 | 6/8/2017 | Lease of Platform Space | by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT CP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 814 | 7/11/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Marathon Oil Company | Fieldwood Energy LLC and Marathon Oil Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 815 | 5/23/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Marathon Petroleum Company LP | Fieldwood Energy LLC and Marathon Petroleum Company LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 816 | 6/6/2018 | Marketing - Crude Sales | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 817 | 7/1/2018 | Marketing - Crude Sales | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 818 | 3/5/2014 | Marketing - Crude Sales | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC | EB 158 Lease G02645, EB 159 Lease G02646, EB 160 Lease G02647, EB 165 Lease G06280, HI A-365 G02754 Lease G02754, HI A-376 G02754 Lease G02754, HI A545 Lease G17199, HI A-573 Lease G02393, HI A-595 Lease G02721, HI A-582 Lease G02719 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 819 | 11/18/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC | Fieldwood Energy LLC and McMoRan Oil & Gas LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 820 | 10/15/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Mercuria Energy Gas Trading LLC | Fieldwood Energy LLC and Mercuria Energy Gas Trading LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 821 | 8/28/2015 | Marketing - Transportation | Murphy Latex -Gas Transportation for Big Bend and Dantzler by and between Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC | MC 698 Lease G28022, MC 782 Lease G33757, MC 742 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 822 | 8/28/2015 | Marketing - Transportation | Murphy Lateral -Gas Transportation for Big Bend and Dantzler by and between Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC | MC 697 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 823 | 8/28/2015 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC | MC 697 Lease G28021, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 824 | 8/28/2015 | Marketing - Transportation | Crude Oil Transport by and between Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC | MC 698 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 825 | 8/28/2015 | Marketing - Transportation | Crude Oil Transport by and between Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC | MC 782 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 826 | 4/1/2018 | Marketing - Transportation | LTA for ST 320 by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. | Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 827 | 2/14/2020 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and NextEra Energy Power Marketing, LLC | Fieldwood Energy LLC and NextEra Energy Power Marketing, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 828 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Niagara Mohawk Power Corporation D/B/A National Grid | Fieldwood Energy LLC and Niagara Mohawk Power Corporation D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 829 | 9/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and NJR Energy Services Company | Fieldwood Energy LLC and NJR Energy Services Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 830 | 4/11/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Noble Energy, Inc. | Fieldwood Energy LLC and Noble Energy, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 831 | 7/8/2011 | Marketing - Gathering | Galeapyro, Gas Gathering, Okeanos Gas Dedication within Gathering - plus 5 amendments-MDQ changes by and between Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 832 | 8/28/2015 | Marketing - Gathering | Big Bend Dantzler, Destin FT2, - plus 4 amendments-MDQ changes by and between Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC | MC 698 Lease G28022, MC 742 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 833 | 2/27/2015 | Marketing - Gathering | Big Bend Dantzler, Okeanos Gas Gathering, Gas Dedication within Gathering - plus 4 amendments-MDQ changes by and between Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC | MC 698 Lease G28022, MC 782 Lease G33757, MC 742 Lease G28022, MC 697 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 834 | 6/1/2015 | Marketing - Construction, Operations, Management, Ownership Agreements | Operator to perform the physical operations, maintenance, and repair of the High Island Pipeline System (HIPS), as well as the management and administrative functions for the HIPS | Bandon Oil and Gas, LP and Offshore LLC and Panther Operating Company, LLC (Third Coast Midstream) | Bandon Oil and Gas, LP; Fieldwood Energy LLC; Fieldwood SD Offshore LLC | HIPS | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | x | x |
| 835 | 6/1/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Peoples Gas System, a division of Tampa Electric Company | Fieldwood Energy LLC and Peoples Gas System, a division of Tampa Electric Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 836 | 6/18/2020 | Marketing - Crude Sales | Phillips 66 Petroleum Company buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC | GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 837 | 6/18/2020 | Marketing - Crude Sales | Phillips 66 Petroleum Company buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC | MP 311 Lease G02213, SP 62 Lease G02194, SP 65 Lease G01610 | EPL OIL & GAS, LLC, APACHE SHELF EXPLORATION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 838 | [Removed] | | | | | | | | | | | | |
| 839 | [Removed] | | | | | | | | | | | | |
| 840 | 10/1/2008 | Marketing - Processing | GPM; +1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC and Plains Gas Solutions, LLC | Fieldwood Energy LLC and Plains Gas Solutions, LLC and Plains Gas Solutions, LLC | Fieldwood Energy LLC | GI 83 Lease G03793, ST 195 Lease G03593, ST 179 Lease G10220, ST 203 Lease G01269, ST 190 Lease G01261 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 841 | 11/1/2010 | Marketing - Processing | GPM; +1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC and Plains Gas Solutions, LLC | Fieldwood Energy LLC and Plains Gas Solutions, LLC and Plains Gas Solutions, LLC | Fieldwood Energy LLC | GI 83 Lease G03793, ST 195 Lease G03593, ST 179 Lease G10220, ST 203 Lease G01269, ST 190 Lease G01261 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 842 | 7/24/2012 | Marketing - Processing | GPM; +1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC and Plains Gas Solutions, LLC | Fieldwood Energy LLC and Plains Gas Solutions, LLC and Plains Gas Solutions, LLC | Fieldwood Energy LLC | GI 83 Lease G03793, ST 195 Lease G03593, ST 179 Lease G10220, ST 203 Lease G01269, ST 190 Lease G01261 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:

[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the leases underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 843 | 5/1/2009 | Marketing - Processing | 92/8% w S.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | GI 116 Lease G13944, SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC, W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 844 | 6/29/2010 | Marketing - Processing | 92/8% w S.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | GI 116 Lease G13944, SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC, W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 845 | 9/1/2004 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 846 | 4/10/2012 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | VR 380 Lease G02580 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 847 | 5/1/2006 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 848 | 12/23/1995 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | EI 346 Lease G14482 | BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 849 | 3/15/2020 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 850 | 3/15/2020 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 851 | 7/15/2003 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | ST 316 Lease G22762 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 852 | 2/27/2015 | Marketing - Transportation | Crude Oil Transport, by and between Fieldwood Energy LLC and Proteus Oil Pipeline Company LLC and Proteus Oil Pipeline Company LLC | Fieldwood Energy LLC and Proteus Oil Pipeline Company LLC and Proteus Oil Pipeline Company LLC | Fieldwood Energy LLC | MC 698 Lease G28022, MC 742 Lease G32343, MC 782 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 853 | 2/27/2015 | Marketing - Transportation | Crude Oil Transport, by and between Fieldwood Energy LLC and Proteus Oil Pipeline Company LLC and Proteus Oil Pipeline Company< LLC | Fieldwood Energy LLC and Proteus Oil Pipeline Company LLC and Proteus Oil Pipeline Company< LLC | Fieldwood Energy LLC | MC 697 Lease G28021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 854 | 6/1/1998 | Marketing - Crude Sales | Producers sell Crude Oil to Questor and Questor purchases Crude Oil from Producers. Producers buy back a volume of Crude Oil at HIPS Segment III tie-in equal to their monthly production sold to Questor at the Platform, by and between Fieldwood Energy LLC and Questor Pipeline Venture and Questor Pipeline Venture | Fieldwood Energy LLC and Questor Pipeline Venture and Questor Pipeline Venture | Fieldwood Energy LLC | HI A-376 G02754 | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 855 | 5/1/2019 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchase and Sale Agreement by and between Fieldwood Energy LLC and Red Willow Offshore dated 10 Jun 2019, but effective 1 May 2019 | Fieldwood Energy LLC and Red Willow Offshore dated 10 Jun 2019, but effective 1 May 2019 | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 856 | 6/10/2019 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Red Willow Offshore, LLC | Fieldwood Energy LLC and Red Willow Offshore, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 857 | 3/6/2021 | Settlement / Release / Relinquishment Agreements | Release and Settlement Agreement entered into as of March 6, 2021 by and between Fieldwood Energy LLC and Renaissance Offshore | Fieldwood Energy LLC and Renaissance Offshore | Fieldwood Energy LLC | SP 64 Lease G01901, SP 65 Lease G01610, SS 198 Lease G12355, MP 152 Lease G01966, MP 153 Lease G01967, EI 330 Lease G02115 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 858 | 11/30/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Rooster Petroleum, LLC | Fieldwood Energy LLC and Rooster Petroleum, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 859 | 3/6/2020 | Marketing - Gathering | Crude Oil Transport, by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC | Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC | Fieldwood Energy LLC | ST 49 Lease G24956, ST 53 Lease G04000, ST 67 Lease 20 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 860 | 7/23/2020 | Marketing - Connection Agreement | Connection Agreement by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC | Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC | Fieldwood Energy LLC | ST 53 Lease G04000, ST 67 Lease 20 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 861 | 7/23/2020 | Facilities & Tie-In Agreements | ST 49 A PLATFORM TIE-IN TO ST 49 LATERAL PIPELINE BETWEEN FIELDWOOD ENERGY LLC AND ROSEFIELD PIPELINE COMPANY, LLC | FIELDWOOD ENERGY LLC AND ROSEFIELD PIPELINE COMPANY, LLC | Fieldwood Energy LLC | ST 49 Lease G24956 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 862 | 5/1/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Samson Offshore Maplekaf, LLC | Fieldwood Energy LLC and Samson Offshore Maplekaf, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 863 | 6/1/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Samsung Oil & Gas USA Corp. | Fieldwood Energy LLC and Samsung Oil & Gas USA Corp. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 864 | 7/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Scana Energy Marketing, Inc. | Fieldwood Energy LLC and Scana Energy Marketing, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 865 | 12/1/2013 | Marketing - Transportation | Searobin East - Rertignade-Flash- Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | EW 826 Lease G05800, SM 268 Lease G02310, SS 274 Lease G01039, EI 53 Lease 470, SS 189 Lease G04232 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 866 | 12/1/2013 | Marketing - Transportation | Searobin West Transport, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company | Fieldwood Energy LLC | EI 330 Lease G02115, EI 337 Lease G03332, SM 128 Lease G02587, SM 39 Lease G16320, EI 333 Lease G02317, EI 315 Lease G02112, EI 316 Lease G05040, EI 338 Lease G02063 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 867 | 12/1/2013 | Marketing - Transportation | Searobin West FTTR Transport, max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company | Fieldwood Energy LLC | EI 330 Lease G02115 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 868 | 12/1/2013 | Marketing - Transportation | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company | Fieldwood Energy LLC | EI 330 Lease G02115, EI 337 Lease G03332, SM 128 Lease G02587, SM 39 Lease G16320, EI 333 Lease G02317, EI 315 Lease G02112, EI 316 Lease G05040 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 869 | 12/1/2013 | Marketing - Transportation | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | SS 274 Lease G01039, SM 268 Lease G02310, EW 826 Lease G05800, ST 205 Lease G05412, EI 53 Lease 479, SS 189 Lease G04232, ST 206 Lease G05613, ST 195 Lease G03593 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| | | | | | | | | | | Applicable Entity | | | |
| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 870 | 8/1/2018 | Marketing - Gathering | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | SS 274 Lease G01039, SM 268 Lease G02310, EW 826 Lease G05800, ST 205 Lease G05612, ST 206 Lease G05613, EI 53 Lease 479, ST 195 Lease G03593, SS 189 Lease G04232, GI 116 Lease G13944, ST 295 Lease G05646 | ERA HELICOPTERS INC. | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 871 | 12/1/2013 | Marketing - Transportation | Searobin East - PTR - Transport, IT max Rate, by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | SS 274 Lease G01039, SM 268 Lease G02310, EW 826 Lease G05800, ST 205 Lease G05612, EI 53 Lease 479, EI 316 Lease G05040, EC 338 Lease G02063, EI 361 Lease G02324 | ERA HELICOPTERS INC; MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser to the Divisive Mergers | x | | | |
| 872 | 12/1/2013 | Marketing - Transportation | Searobin East - PTR Transport, IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | GI 116 Lease G13944, ST 295 Lease G05646 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 873 | 12/1/2013 | Marketing - Transportation | Searobin East - Transport, IT max Rate, by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 874 | 1/1/2017 | Marketing - Transportation | Searobin East - Transport, IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | GI 116 Lease G13944, ST 295 Lease G05646 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 875 | 1/1/2017 | Marketing - Transportation | Searobin East - PTR Transport, IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy LLC | GI 116 Lease G13944, ST 295 Lease G05646 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 876 | 5/1/2003 | Marketing - Transportation | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EC 261 Lease G00971 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 877 | 5/1/2015 | Marketing - Transportation | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EI 93 Lease 228 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 878 | 5/1/2015 | Marketing - Transportation | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 161 Lease G01248, ST 203 Lease G01269, EW 826 Lease G05800, GI 76 Lease G02161, EI 53 Lease 479, ST 190 Lease G01261, GI 93 Lease G02628, GI 94 Lease G02163, SM 268 Lease G02310, SS 189 Lease G04232, SS 274 Lease G01039, ST 179 Lease G12020, ST 291 Lease G16455, SM 268 Lease G02310, GI 83 Lease G03793, ST 195 Lease G03593, ST 205 Lease G05612, ST 206 Lease G05613 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 879 | 2/1/2018 | Marketing - Transportation | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EW 826 Lease G05800, SS 189 Lease G04232, ST 205 Lease G05612, ST 206 Lease G05613, GI 76 Lease G02161 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 880 | 2/1/2018 | Marketing - Transportation | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EW 826 Lease G05800, SS 189 Lease G04232, ST 205 Lease G05612, ST 206 Lease G05613, GI 76 Lease G02161 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 881 | 5/1/2001 | Marketing - Separation & Stabilization | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EI 53 Lease 479, SS 189 Lease G04232, SS 274 Lease G01039 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 882 | 5/1/2015 | Marketing - Transportation | Amendment No. 2 by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EI 53 Lease 479 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 883 | 10/1/2004 | Marketing - Separation & Stabilization | LSA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 884 | 10/1/2004 | Marketing - Transportation | Liquid Hydrocarbons Injector by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 885 | 5/1/2009 | Marketing - Separation & Stabilization | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613, ST 291 Lease G16455 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 886 | 1/1/2011 | Marketing - Separation & Stabilization | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613, ST 291 Lease G16455 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 887 | 6/1/2011 | Marketing - Separation & Stabilization | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613, ST 291 Lease G16455 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 888 | 1/19/2012 | Marketing - Separation & Stabilization | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613, ST 291 Lease G16455 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 889 | 9/1/2012 | Marketing - Separation & Stabilization | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613, SS 274 Lease G01039, GI 94 Lease G02163, EI 53 Lease 479, SS 189 Lease G04232, ST 161 Lease G01248, SM 268 Lease G02310, ST 190 Lease G01261, ST 203 Lease G01269, ST 291 Lease G16455, EW 826 Lease G05800, GI 93 Lease G02628, GI 83 Lease G03793 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 890 | 5/1/2015 | Marketing - Transportation | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613, EI 53 Lease 479 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 891 | 3/1/2018 | Marketing - Separation & Stabilization | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05612, ST 206 Lease G05613, EW 826 Lease G05800, GI 76 Lease G02161, SM 268 Lease G02310, SS 189 Lease G04232, SS 274 Lease G01039, ST 179 Lease G12020, GI 83 Lease G03793 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ERA HELICOPTERS INC, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 892 | 5/1/2015 | Marketing - Transportation | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company | Fieldwood Energy LLC | EI 94 Lease G05488, SS 189 Lease G04232, ST 179 Lease G12020, ST 291 Lease G16455, GI 76 Lease G02161, GI 83 Lease G03793, ST 195 Lease G03593 | MCMORAN OIL & GAS LLC, PIQUANT INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 893 | 5/5/2006 | Marketing - Transportation | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EC 261 Lease G00971, EC 278 Lease G00974 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 894 | 7/1/2010 | Marketing - Transportation | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EC 261 Lease G00971, EC 278 Lease G00974, EI 333 Lease G02317 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 895 | 6/17/2014 | Marketing - Gas Sales | Base Control for Sale and Purchase for Natruda Gas by and between Fieldwood Energy LLC and Sempra Midstream Services, Inc. | Fieldwood Energy LLC and Sempra Midstream Services, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 896 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natruda Gas by and between Fieldwood Energy LLC and Sequent Energy Management, L.P. | Fieldwood Energy LLC and Sequent Energy Management, L.P. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the terms and conditions set forth on this Schedule of Assumed Contracts, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

Applicable Entity

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 897 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | WC 485 Lease G02220, EI 337 Lease G03332, SM 39 Lease G16320, SM 40 Lease G13607 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 898 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | VR 380 Lease G02580, EI 211 Lease G05502, EI 212 Lease G05503, SM 149 Lease G02592, EI 53 Lease 479, EI 53 Lease 479, GI 76 Lease G02611, SM 106 Lease G02279, GI 83 Lease G03793, EI 346 Lease G14482, SS 190 Lease G10775, SS 204 Lease G01520, SS 208 Lease G01522, SS 216 Lease G01524, SM 268 Lease G02310, SS 189 Lease G04232, EW 826 Lease G05800, SS 274 Lease G01039, ST 206 Lease G05813, SS 207 Lease G01523, SS 216 Lease G01524, GA 210 Lease G25524, HI 206 Lease G20660, VR 326 Lease G21096, WC 110 Lease 81, WC 295 Lease G24730, EI 188 Lease 443, SS 79/80 Lease G15277 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 899 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | SS 169 Lease 820, SS 178 Lease G05551, SS 176 Lease G33646, SS 177 Lease 590, VR 332 Lease G09514, VR 333 Lease G14417, VR 315 Lease G04215, VR 272 Lease G23829 | | $0.00 | Assume and allocate Pursuant to Divisive Mergers | x | | x | x |
| 900 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | MC 563 Lease G21176 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 901 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | MC 474 Lease G35825 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 902 | 9/1/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 903 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 904 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | SM 128 Lease G02587, EI 333 Lease G02317, EI 315 Lease G02112, EI 316 Lease G05040, EI 307 Lease G02110 | ENERGY XXI GOM LLC, SHELL PIPELINE COMPANY LP, TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 905 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | SM 128 Lease G02587, VR 196 Lease G19760, VR 229 Lease G27070 | ENERGY XXI GOM LLC, SHELL PIPELINE COMPANY LP, TRUNKLINE GAS CO LLC | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 906 | 8/18/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | MP 310 Lease G04126, MC 108 Lease G09777, MC 110 Lease G18192, MP 296 Lease G01673, WD 79, WD 80 Lease G01874, ST 53 Lease G04000, SS 193 Lease G13917, SM 105 Lease G17936, SM 106 Lease G02279, MC 311 Lease G02968, EC 349 Lease G14385, ST 148 Lease G01980, GC 201, WD 27 Lease G04473, BS 52 Lease 17675, BS 25 Lease G31442, EI 32 Lease 196, WC 498 Lease G03520, WD 75 Lease G01085, WD 90 Lease G01089, WD 103 Lease 840 | TALOS ENERGY OFFSHORE, LLC, HE&D OFFSHORE LP, COX OPERATING LLC | $0.00 | Assume and allocate to Credit Bid Purchaser | | x | | |
| 907 | 8/14/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | HI A-550 Lease G04081, WC 65 Lease G02825, WC 66 Lease G02826 | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 908 | 8/13/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | BA A133 Lease G02655, BA A105 Lease G01757 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 909 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | HI 129 Lease G01848, HI 179 Lease G03236, EI 224 Lease G05504, SS 129 Lease G12941, SS 198 Lease 593, EC 338 Lease G02063, EI 361 Lease G02324 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 910 | 8/11/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | PL 10 Lease G32925, SS 253 Lease G01031, SS 354 Lease G15312, EI 158 Lease G31220, SS 354 Lease G15312, SS 254 Lease 828, SS 91 Lease G02919, SS 101 Lease 32, EI 128 Lease G02929, SM 318 Lease G15312, VR 272 Lease G22829, SS 354 Lease G15312, VR 272 Lease G22829, VR 272 Lease G22829, EI 158 Lease G01220, ST 316 Lease G22762, SS 214 Lease 828, PL 10 Lease G02925, EI 126 Lease 52, EI 120 Lease 50, VR 315 Lease G04215, SS 253 Lease G01031, SS 233 Lease G01528, VR 313 Lease G01172 | WALTER OIL & GAS CORPORATION, MCMORAN OIL & GAS LLC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 911 | 8/14/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC | ST 311 Lease G31418, ST 320 Lease G24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 912 | 8/22/2017 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natrula Gas by and between Fieldwood Energy LLC and Sierentz Global Merchants LLC | Fieldwood Energy LLC and Sierentz Global Merchants LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 913 | 5/1/2020 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natrula Gas by and between Fieldwood Energy LLC and South Jersey Resources Group, LLC | Fieldwood Energy LLC and South Jersey Resources Group, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 914 | 6/10/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natrula Gas by and between Fieldwood Energy LLC and Southern Company Services, Inc. | Fieldwood Energy LLC and Southern Company Services, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 915 | 5/21/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Southwest Energy, LP | Fieldwood Energy LLC and Southwest Energy, LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 916 | 8/7/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Spire Marketing Inc. | Fieldwood Energy LLC and Spire Marketing Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 917 | 2/1/1995 | Marketing - Transportation | Stingray - VI 371 Lateral agreement with Reserve Dedication of Block 371, VR 362 - §.06 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | VR 371 Lease G09524 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 918 | 1/1/2012 | Marketing - Transportation | Stingray - VR 310, WC 144 WC269 §.10 discount. Reserve Dedication agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | HI A350 Lease G02428, HI A350 Lease G02428, HI A350 Lease G02428 | | $0.00 | Assume and allocate Pursuant to Divisive Mergers | x | | | |
| 919 | 12/1/2003 | Marketing - Transportation | Stingray Reserve Dedication VR Block 326 §.10 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | VR 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | $0.00 | Assume and allocate to Credit Bid Purchaser | x | | | |
| 920 | 3/6/1974 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction and operation of the onshore separation facility which is connected to the facilities of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | WC 269 Lease G13563, WC 485 Lease G02220, WC 507 Lease G02549 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 921 | 1/1/2010 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC | HI A350 Lease G02428, WC 144 Lease G01953, WC 172 Lease G01998 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 922 | 1/1/1995 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC | VR 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 923 | 1/1/2012 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC | VR 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 924 | 12/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Superior Natural Gas Corporation | Fieldwood Energy LLC and Superior Natural Gas Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, et al.**
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the contracts underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 925 | 11/2/2010 | Marketing - Construction, Operations, Management, Ownership Agreements | SP 49 Pipeline LLC (the "Entity"), an limited liability company, was formed on November 2, 2010 by Apache GOM Pipeline, Inc. (succeeded by FW GOM Pipeline, Inc), Energy XXI GOM LLC, and Stone Energy Offshore, LLC (succeeded by Talos Resources LLC). Then by and between Fieldwood Energy LLC and Talos Resources LLC and Energy XXI GOM, LLC and Talos Resources LLC and Energy XXI GOM, LLC | Fieldwood Energy LLC and Talos Resources LLC and Energy XXI GOM, LLC and Talos Resources LLC and Energy XXI GOM, LLC | Fieldwood Energy LLC; FW GOM Pipeline, Inc. | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 926 | 9/16/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Tammany Oil & Gas LLC | Fieldwood Energy LLC and Tammany Oil & Gas LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 927 | 6/1/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Tampa Electric Company | Fieldwood Energy LLC and Tampa Electric Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 928 | 6/19/2014 | Confidentiality Agreements / AMI and Related Consents | Consent to Disclose by and between Fieldwood Energy LLC and Tana Exploration Company LLC : BS 25 and other properties | Fieldwood Energy LLC and Tana Exploration Company LLC | Fieldwood Energy LLC | BS 25 Lease 19718, BS 25 Lease G31442, EI 315 Lease G24912, EI 342 Lease G02319, VR 229 Lease G27070 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 929 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Targa Gas Marketing LLC | Fieldwood Energy LLC and Targa Gas Marketing LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 930 | 10/1/2014 | Marketing - Transportation | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 931 | 10/1/2014 | Marketing - Transportation | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC | HI 129 Lease G01848, WC 290 Lease G04618 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 932 | 9/1/2005 | Marketing - Processing | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | SP 60 Lease G02137, SP 61 Lease G01609 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 933 | 8/1/2007 | Marketing - Processing | POL depending on GPM plus FEE $.10 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 34 Lease G03414, ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 934 | 1/1/2009 | Marketing - Processing | Greater of 87%/13% or $.08 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 935 | 6/1/2009 | Marketing - Processing | 75%/25% plus $.12026 / mmbu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 34 Lease G03414, ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 936 | 1/1/2011 | Marketing - Processing | Greater of 87%/13% or $.08 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 937 | 5/1/2012 | Marketing - Processing | Greater of 87%/13% or $.08 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 938 | 1/1/2023 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 939 | 1/1/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 940 | 3/31/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 941 | 9/1/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 942 | 11/1/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 943 | 8/11/2010 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 944 | 11/1/2010 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the operating contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the terms of this Schedule of Assumed Contracts or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][8] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 945 | 2/1/2013 | Marketing - Processing | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 47 Lease 133, SS 198 Lease 593, GI 48 Lease 134, SM 106 Lease G02279, SP 75 Lease G05051, EI 224 Lease G05504, SS 129 Lease G12941, SS 130 Lease 453 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 946 | 2/1/2013 | Marketing - Processing | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 43 Lease 175, ST 53 Lease G04000, VR 229 Lease G27070, GI 32 Lease 174, GI 39 Lease 126, GI 40 Lease 128, GI 41 Lease 129, GI 42 Lease 131, GI 44 Lease 176, GI 46 Lease 132, GI 52 Lease 177, WD 94 Lease 839, WD 95 Lease G01497, WD 96 Lease G01498, GI 43 Lease 175, GI 47 Lease 133, GI 48 Lease 134 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 947 | 4/1/2013 | Marketing - Processing | Greater of Fee or POL (85%/15%) min Fee $.12 plu s DGS FEE $.04 plus Plus Fee $.02 (subject to annual escalation) by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 32 Lease 174, GI 39 Lease 126, GI 40 Lease 128, GI 41 Lease 129, GI 42 Lease 131, GI 44 Lease 176, GI 46 Lease 132, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838, WD 94 Lease 839, WD 95 Lease G01497, WD 96 Lease G01498 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 948 | 4/1/2013 | Marketing - Processing | Greater of Fee or POL (85%/15%) min Fee $.12 plu s DGS FEE $.04 plus Plus Fee $.02 (subject to annual escalation) by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 949 | 3/15/2020 | Marketing - Processing | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 86 Lease G02934, SP 87 Lease G07799, SP 89 Lease G01618 | ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 950 | 1/1/1998 | Marketing - Processing | POL+ 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, WD 80 Lease G01989 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 951 | 5/1/2010 | Marketing - Processing | POL+ 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, WD 80 Lease G01989 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 952 | 5/1/2011 | Marketing - Processing | POL+ 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, WD 80 Lease G01989 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 953 as amended 3/1/2015 | 3/12/2012 | Marketing - Processing | Greater of Fee or POL (80%/20%) min Fee $.15 plu s DGS FEE $.04 plus Plus Fee $.02 (subject to annual escalation) by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 954 | 6/10/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Tenaska Marketing Ventures | Fieldwood Energy LLC and Tenaska Marketing Ventures | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 955 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC | CA 43 Lease G32268, VK 113 Lease G16535, EC 14 Lease G13572, SP 87 Lease G07799, SP 89 Lease G01618, VR 261 Lease G03328, VR 265 Lease G01955 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC, CHEVRON USA INC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 956 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 957 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 958 | 4/1/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Texla Energy Management, Inc. | Fieldwood Energy LLC and Texla Energy Management, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 959 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and The Brooklyn Union Gas Company D/B/A National Grid NY | Fieldwood Energy LLC and The Brooklyn Union Gas Company D/B/A National Grid NY | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 960 | 4/29/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and The Energy Authority, Inc. | Fieldwood Energy LLC and The Energy Authority, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 961 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and The Narragansett Electric Company D/B/A National Grid | Fieldwood Energy LLC and The Narragansett Electric Company D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 962 | 5/1/2016 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and TOTAL Gas & Power North America, Inc. | Fieldwood Energy LLC and TOTAL Gas & Power North America, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 963 | 1/26/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and TrailStone NA Logistics, LLC | Fieldwood Energy LLC and TrailStone NA Logistics, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 964 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | MC 904 Lease G36566 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 965 | 10/1/2014 | Marketing - Transportation | Rent Flash Gas by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 966 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | MC 948 Lease G28030, MC 948 Lease G28030, MC 949 Lease G32363, MC 988 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 967 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | BA A133 Lease G02665, BA 491 Lease G06069, BA A105 Lease G01757, GA 210 Lease G25524, HI 206 Lease G20660, HI 179 Lease G03236, WC 110 Lease 81, VR 78 Lease G04421, EI 119 Lease 49, EI 120 Lease 50, EI 125 Lease 51, EI 126 Lease 52, EI 136 Lease G03152, EI 158 Lease G01220, EI 173 Lease G13822, EI 174 Lease G03782, EI 175 Lease 438, HI 111 Lease G02354, HI 110 Lease G02353, HI 176 Lease G27505, SS 32 Lease 333, SS 58 Lease G07746, SS 91 Lease G02919, SS 214 Lease 828, SS 243 Lease G10780, SS 246 Lease G01027, SS 271 Lease G01028, SS 252 Lease G01529, SS 253 Lease G01031, SS 354 Lease G15312, SM 66 Lease G01198, SM 74 Lease G01208, SM 93 Lease G21618, SM 108 Lease 792, SM 147 Lease G06693, PL 1 Lease G04234, PL 9 Lease G02924, PL 10 Lease G02925, PL 11 Lease 71, SS 68 Lease G02917, ST 242 Lease G23933, ST 315 Lease G23946, ST 316 Lease G22762, VR 78 Lease G04421, VR 272 Lease G23829, SM 102 Lease G24872, VR 313 Lease G01172, VR 315 Lease G04215, VR 382 Lease G05914 | W & T ENERGY VI LLC, LOUISIANA LAND & EXPLORATION CO, WALTER OIL & GAS CORPORATION, MCMORAN OIL & GAS LLC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 968 | 12/1/2013 | Marketing - Transportation | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | MO 826 Lease G26176, VK 251 Lease G10930 | W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | x |
| 969 | 7/1/2001 | Marketing - Gathering | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 970 | 2/10/2014 | Marketing - Transportation | Injected and Retrograde Condensate Ratio and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 971 | 7/1/2014 | Marketing - Gathering | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 972 | 4/8/2010 | Marketing - Transportation | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Ga | Fieldwood Energy LLC | SA 10 Lease G03958 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 973 | 11/1/2007 | Marketing - Transportation | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | EI 126 Lease 52, PL 10 Lease G02925, SS 214 Lease 828, SS 253 Lease G01031, VR 313 Lease G01172, EI 158 Lease G01220, SS 233 Lease G01528, VR 315 Lease G04215, ST 316 Lease G22762, VR 272 Lease G23829, SS 91 Lease G02919, SS 354 Lease G15312 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 974 | 7/1/2008 | Marketing - Transportation | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 975 | 8/6/1997 | Marketing - Transportation | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | HI 179 Lease G03236 | ARENA ENERGY LP, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 976 | 9/27/1993 | Marketing - Transportation | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069, GA 210 Lease G25524, HI 179 Lease G03236, HI 206 Lease G20660, WC 110 Lease 81, SS 354 Lease G15312, VR 78 Lease G04421 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 977 | 11/1/2007 | Marketing - Transportation | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069, GA 210 Lease G25524, HI 179 Lease G03236, HI 206 Lease G20660, WC 110 Lease 81, VR 78 Lease G04421 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 978 | 1/22/2013 | Marketing - Transportation | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) | Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069, GA 210 Lease G25524, HI 179 Lease G03236, HI 206 Lease G20660, WC 110 Lease 81, VR 78 Lease G04421 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 979 | 8/7/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and United Energy Trading, LLC | Fieldwood Energy LLC and United Energy Trading, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 980 | 11/1/2015 | Marketing - Other | Provides for certain monitoring, maintenance and repairs for the South Pass Dehydration Station on behalf of Owners by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) | Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) | Fieldwood Energy LLC | SP 89 Lease G01618, WD 86 Lease G02934, WD 128 Lease G10883, WD 104 Lease 841 | TALOS ERT LLC, THE LOUISIANA LAND & EXPL CO LLC, SANARE ENERGY PARTNERS, LLC, Texas Eastern Transmission / Spectra Energy | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 981 | 8/13/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 982 | 12/17/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 983 | 10/1/2019 | Marketing - Transportation | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering | Fieldwood Energy LLC and Venice Gathering and Venice Gathering | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, ST 148 Lease G01960 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 984 | 12/15/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 985 | 4/1/2003 | Marketing - Gathering | GC 45, WD 41 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 41 Lease G01073 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 986 | 11/1/2010 | Marketing - Gathering | Venice Gathiering, Max Rate,WD 41 Effective date 11/1/2010 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 41 Lease G01073 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 987 | 12/18/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 988 | 1/1/2001 | Marketing - Transportation | Venice Gatheing Firm transport Max rate WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 989 | 3/31/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and W&T Offshore, Inc. | Fieldwood Energy LLC and W&T Offshore, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 990 | 8/14/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Washington Gas Light Company | Fieldwood Energy LLC and Washington Gas Light Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 991 | 9/10/1990 | Marketing - Gathering | Gathering Agreement - Discount for BA 491 by and between Fieldwood Energy LLC and WFS and WFS | Fieldwood Energy LLC and WFS and WFS | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 992 | 9/1/2009 | Marketing - Terminalling | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC | SM 66 Lease G01198, SM 132 Lease G02282, ST 316 Lease G22762, SS 145 Lease G34831, SM 76 Lease G01208 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 993 | 9/1/2009 | Marketing - Terminalling | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC | PL 10 Lease G02925, PL 13 Lease G03171, PL 10 Lease G02925, EI 158 Lease G01220, EI 107 Lease G15241, EI 107 Lease G15241, SS 182 Lease G03998, SS 259 Lease G05044, SS 33 Lease 336, SS 193 Lease G13917, SM 76 Lease G01208 | WALTER OIL & GAS CORPORATION, MCMORAN OIL & GAS LLC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 994 | 2/1/2014 | Marketing - Terminalling | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC | Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC | Fieldwood Energy LLC | EI 126 Lease 52, PL 10 Lease G02925, SS 214 Lease 828, SS 253 Lease G01031, VR 313 Lease G01172, EI 158 Lease G01220, SS 233 Lease G01528, VR 315 Lease G04215, ST 316 Lease G22762, VR 272 Lease G23829, SS 91 Lease G02919, SS 354 Lease G15312 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 995 | 3/26/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and WGL Midstream, Inc. | Fieldwood Energy LLC and WGL Midstream, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 996 | 2/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Williams Energy Resources LLC | Fieldwood Energy LLC and Williams Energy Resources LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 997 | 3/1/2003 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 998 | 4/1/2003 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation having to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 999 | 12/1/2003 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1000 | 7/15/2004 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1001 | 8/1/2009 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1002 | 8/25/2009 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1003 | 12/10/2013 | Marketing - Processing | POL 85% / 15% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1004 | 12/12/2013 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | St 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1005 | 12/10/2013 | Marketing - Processing | POL 85% / 15% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1006 | 12/10/2013 | Marketing - Processing | POL 85% / 15% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1007 | 2/1/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1008 | 9/1/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1009 | 11/5/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1010 | 5/1/2020 | Marketing - Processing | POL-65% of GPM- Never less than10% or more than 20% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1011 | 1/24/2001 | Marketing - Processing | 80% / 20% PTR KEEP WHOLE by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MP 259 Lease G07827 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1012 | 1/1/2016 | Marketing - Processing | 80% / 20% PTR KEEP WHOLE by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MP 259 Lease G07827, VK 692/693 Lease G07898, VK 694 Lease G13055 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1013 | 8/1/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A133 Lease G02665 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1014 | 8/1/2009 | Marketing - Processing | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A133 Lease G02665, MU A85 Lease G03061, MU A-111 Lease G03068, BA A47 Lease G03940 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1015 | 12/1/2010 | Marketing - Processing | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A133 Lease G02665, MU A85 Lease G03061, MU A-111 Lease G03068, BA A47 Lease G03940 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1016 | 9/1/2009 | Marketing - Processing | If inlet volume is greater than 25,000; ((25,000 MMBTU * .03) + (Excess Daily Volume * 0.025))/Total Field Delivery Pt. Daily Volume by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MO 826 Lease G26176 | W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1017 | 4/1/2015 | Marketing - Processing | GPM; < 1.8 = $2/16%, 1.8>3 = 85/15%, >3 = 88/12% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 311 Lease G31418, ST 320 Lease G24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1018 | 10/15/2018 | Assignment of Oil & Gas Leasehold Interest(s) | Assignment and Bill of Sale dated 10/25/2018 but effective 10/15/2018 by and between Fieldwood Energy LLC as Assignor and BP Exploration & Production as Assignee | Fieldwood Energy LLC as Assignor and BP Exploration & Production as Assignee | Fieldwood Energy LLC | MC 562 Lease G19966 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1019 | 11/2/2020 | Letter Agreement - Other Land | Letter Agreement dated 11-20-2020 but acknowledged and agreed to 12-9-2020 by and between Fieldwood Energy LLC, Arena Offshore, LP and Arena Energy, LLC | Fieldwood Energy LLC, Arena Offshore, LP and Arena Energy, LLC | Fieldwood Energy LLC | PL 25 Lease G14535 | ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1020 | 1/28/2021 | Settlement / Release / Relinquishment Agreements | Release and Settlement Agreement effective January 28, 2021 by and between Fieldwood Energy LLC, Fieldwood SD Offshore LLC, Fieldwood Energy Offshore LLC and Sanare Energy Partners LLC | Fieldwood Energy LLC, Fieldwood SD Offshore LLC and Sanare Energy Partners LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Fieldwood SD Offshore LLC | VR 229 Lease G27070, SP 89 Lease G01618, SM 40 Lease G13607, SS 252 Lease G01529; HIPS Lease ?, Venice Dehydration Station Lease ?, Grand Chenier Separation Facility | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1021 | 11/1/2018 | Letter Agreement - Other Land | Letter Agreement re Project Team Letter Agreement re Project Team by and between Fieldwood Energy LLC, Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC, effective November 1, 2018 covering Katmai | Fieldwood Energy LLC, Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC, effective November 1, 2018 covering Katmai | Fieldwood Energy LLC | EW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880, GC 40 Lease G34536, GC 41 Lease G34537, GC 39A Lease G34966 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1022 | 12/4/1958 | Operating Agreement - Other | OPERATING AGREEMENT BY AND BETWEEN THE TEXAS COMPANY AND PAN AMERICAN PETROLEUM CORPORATION, AS AMENDED | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | WD 103 Lease 840 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1023 | 7/25/1960 | Operating Agreement - Other | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 169 Lease 820 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1024 | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A382 Lease G02757 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1025 | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A596 Lease G02722 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1026 | 11/11/1980 | Joint Operating Agreement | JOINT OPERATING AGREEMENT DATED NOVEMBER 11, 1980, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AS OPERATOR, AND CNG PRODUCING COMPANY AND HUNT OIL COMPANY, AS NON-OPERATORS, COVERING VERMILION AREA, BLOCK 78, OCS-G 4421, OFFSHORE LOUISIANA. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1027 | 4/1/1981 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship Shoal/Operating Agreement Blocks 206, 207,OCS-G-I523 and OCS-G 1523, respectively | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1028 | 4/1/1981 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement for the C-6US Sand, effective April 1,1981, between Arco Oil and Gas Company; Getty Oil Company, Cities Service Company, Hamilton Brothers Oil Company, Mobil Oil, Exploration &= Producing S.E. Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries, and Prosper Energy Corporation.; Unit No. 891020231 | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1029 | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A595 Lease G02721 | APACHE DEEPWATER LLC, COX OPERATING, L.L.C., ENI Trading & Shipping Inc., NEXEN ENERGY MARKETING U.S.A. INC., SANARE ENERGY PARTNERS, LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1030 | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A573 Lease G02393, HI A572 Lease G02392 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1031 | 8/19/2019 | Termination / Ratification and Joinder of Operating or Other Agreements | Terminates Master Use Agreement and JEA by and between Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC Juneau Oil & Gas LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1032 | 11/1/2019 | Property Participation & Exchange Agreements | Agree to prospect area; elects not to aquire GI 46 AMI; elects not to participate, etc. by and between Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC Juneau Oil & Gas LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1033 | 7/1/1995 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT EFFECTIVE JULY 1, 1995, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, DALEN RESOURCES OIL & GAS CO AND GLOBAL NATURAL RESOURCES CORPORATION OF NEVADA COVERING PORTIONS OF BLOCK 117 AND 118, EUGENE ISLAND, AS AMENDED TO EXCLUDE JOINT DEVELOPMENT ACREAGE | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Tammany Oil and Gas | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | EI 107 Lease G15241, EI 108 Lease G03811, EI 118 Lease G15242 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1034 | 2/23/1996 | Joint Development / Venture / Exploration Agreements | JOINT DEVELOPMENT BY AND BETWEEN APACHE CORPORATION, W & T, DEVON, NCX | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Tammany Oil and Gas | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | EI 107 Lease G15241, EI 108 Lease G03811, EI 117 Lease G34293, EI 118 Lease G15242 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1035 | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1,1971, between Tenneco Oil Company and Texaco Inc. Amendment to Operating Agreement, dated effective May 1,1974, between Tenneco Oil Company, Texaco Inc. and Tenneco Exploration 11, Ltd., whereby Tenneco Exploration II became a party to, and ratified, the operating agreement. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Tana Exploration Company LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | EI 342 Lease G02319 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1036 | 11/1/1972 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SIGNAL OIL AND GAS COMPANY AND THE LOUISIANA LAND AND EXPLORATION COMPANY, ET AL. | Fieldwood Energy LLC; GOM Shelf LLC; TALOS ERT LLC; The Louisiana Land Exploration Co LLC | Fieldwood Energy LLC; GOM Shelf LLC | SP 87 Lease G07799, SP 89 Lease G01618 | TALOS ERT LLC; TALOS ERT LLC, THE LOUISIANA LAND & EXPL CO LLC, SANARE ENERGY PARTNERS, LLC, Texas Eastern Transmission / Spectra Energy | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1037 | 12/20/2016 | Preferential Rights Agreement | Preferential Right to Purchase Election Letter by and between Fieldwood Energy Offshore LLC and ANKOR E&P Holdings Corporation : ANKOR Waiver of Pref per GCER to Fieldwood Transaction | Fieldwood Energy Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1038 | 10/11/2017 | Preferential Rights Agreement | Preferential Right to Purchase Election Letter by and between Fieldwood Energy Offshore LLC and ANKOR E&P Holdings Corporation : ANKOR Waiver of Pref per SCL to Fieldwood Transaction | Fieldwood Energy Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1039 | 11/4/2014 | Farmout Agreement | Farmout Proposal by and between Fieldwood Energy LLC and ANKOR Energy LLC; STX Energy E&P Offshore Management, LLC; SCL Resources, LLC : Proposal Letter from Fieldwood | Fieldwood Energy Offshore LLC and ANKOR Energy LLC; STX Energy E&P Offshore Management, LLC; SCL Resources, LLC | Fieldwood Energy Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1040 | 7/7/2015 | Preferential Rights Agreement | Preferential Right to Purchase Election Letter by and between Fieldwood Energy Offshore LLC and Apache Shelf Exploration LLC : Waiver of pref relevant to Black Elk's Interest | Fieldwood Energy Offshore LLC and Apache Shelf Exploration LLC | Fieldwood Energy Offshore LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1041 | 7/1/2016 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy Offshore LLC and Enlink Gas Marketing, LP | Fieldwood Energy Offshore LLC and Enlink Gas Marketing, LP | Fieldwood Energy Offshore LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1042 | 6/1/2017 | Other Notices | Notice of Default by and between Fieldwood Energy Offshore LLC and Knight Resources, LLC : Notice Default per 87 of JOA dated 07/15/2000 non payment JIBS | Fieldwood Energy Offshore LLC and Knight Resources, LLC | Fieldwood Energy Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1043 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SS 206 Lease G01522 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1044 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1045 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SS 216 Lease G01524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1046 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SM 269 Lease G02311 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1047 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SM 281 Lease G02600 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1048 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SS 204 Lease G01520 | EPL OIL & GAS, LLC, KINETICA DEEPWATER EXPRESS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1049 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SM 268 Lease G02310 | HELIS OIL & GAS CO, AMERICAN PANTHER, LLC, MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1050 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate : Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate | Fieldwood Energy Offshore LLC | SM 280 Lease G14456 | MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1051 | 6/1/2014 | Marketing - Separation & Stabilization | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1052 | 3/1/2014 | Marketing - Separation & Stabilization | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC | GC 109 Lease G05900, GI 110 Lease G13943, GI 116 Lease G13944 | WILD WELL CONTROL INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1053 | 6/1/2014 | Marketing - Separation & Stabilization | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC | GC 108 Lease G14668, GC 109 Lease G05900, GI 110 Lease G13943 | WILD WELL CONTROL INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1054 | 1/1/2015 | Marketing - Separation & Stabilization | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC | GC 108 Lease G14668, GC 109 Lease G05900, GC 200 Lease G12209, GC 201 Lease G12210, GC 244 Lease G11043, GI 110 Lease G13943, GI 116 Lease G13944, GI 116 Lease G13944 | WILD WELL CONTROL INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Petition Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1055 | 3/1/2014 | Marketing - Separation & Stabilization | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC | GC 065 Lease G05889, GC 108 Lease G14668 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1056 | 6/1/2014 | Marketing - Separation & Stabilization | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1057 | 1/1/2015 | Marketing - Separation & Stabilization | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy Offshore LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1058 | 5/30/2017 | Other Notices | Notice of Default by and between Fieldwood Energy Offshore LLC and Rooster Oil & Gas, LLC: Notice Default per 87 of JOA dated 07/15/2000 non payment JIBS | Fieldwood Energy Offshore LLC and Rooster Oil & Gas, LLC | Fieldwood Energy Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1059 | Effective as of 1/14/2019 | Marketing - PHA | Fieldwood Energy Offshore LLC and Wild Well Control, Inc. (WWC)" in their capacity as co-owners of the Platform and Fieldwood, Talos Energy Offshore LLC("Talos") and Red Willow Offshore, LLC ("Red Willow") | Fieldwood Energy Offshore LLC and Wild Well Control, Inc. (WWC)" in their capacity as co-owners of the Platform and Fieldwood, Talos Energy Offshore LLC("Talos") and Red Willow Offshore, LLC ("Red Willow") | Fieldwood Energy Offshore LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1060 | 5/1/1997 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective May 1,1997, between GOM Shelf, LLC, and ChevronTexaco and Kerr-McGee Oil & Gas Corporation, amending Exhibit "A" to reflect a new division of interest. | Fieldwood Energy Offshore LLC; Fieldwood Energy LLC; GOM Shelf; GOM Shelf LLC; W & T Energy VI LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | BA A133 Lease G02665 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1061 | 1/12/1965 | Joint Operating Agreement | Main Agreement, dated effective 12,1965, between Cities Service Oil Company, Skelly Oil Company, Sunray DX Oil Company and Tidewater Oil Company, governing operations on the contract area. The Operating Agreement contained in Exhibit "C" of the Main Agreement was superseded by the Joint Operating Agreement eff. 1/1/97 | Fieldwood Energy Offshore LLC; GOM Shelf LLC; W & T Energy VI LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | BA A133 Lease G02665 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1062 | 4/1/2010 | Marketing - Transportation | X Gathering, dedication for GC 243 - Aspen, \$.09 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC | GC 243 Lease G20051 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1063 | 4/1/2010 | Marketing - Transportation | Manta Ray firm Gathering and Dedication , Discount Rate of \$.12 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC | GC 244 Lease G11043, GC 200 Lease G12209, GI 116 Lease G13944, GI 110 Lease G13943 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1064 | 10/1/2011 | Marketing - Transportation | Seadrion West Pipeline - sandridge /Dynamic IT transport plus Discount latter for SMI 142 and SMI 40 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | SM 142 Lease G01216, SM 40 Lease G13607, SM 40 Lease G13607 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1065 | 10/1/2011 | Marketing - Transportation | Searobin Pipeline - sandridge /Dynamic IT transport by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | EC 178 Lease G34229 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1066 | 10/1/2011 | Marketing - Transportation | SearobinWest Pipeline - sandridge /Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | EC 178 Lease G34229 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1067 | 8/1/2012 | Marketing - Transportation | Searobin West Discounted Trans = 1758 plus Discounted Gathering .0642 = total discounted rate - \$.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | SM 39 Lease G16320 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1068 | 8/1/2012 | Marketing - Transportation | Searobin West Discounted Trans = 1758 plus Discounted Gathering .0642 = total discounted rate - \$.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | SM 39 Lease G16320 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1069 | 8/1/2012 | Marketing - Transportation | Searobin West Discounted Trans = 1758 plus Discounted Gathering .0642 = total discounted rate - \$.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | SM 39 Lease G16320 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1070 | 10/1/2011 | Marketing - Transportation | Searobin West Pipeline - sandridge /Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | SM 40 Lease G13607, SM 40 Lease G13607 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1071 | 10/1/2011, discount letter 9/16/2011 | Marketing - Transportation | Searobin WestT PTR Contract for Discount SMI 142 and SMI 40 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | SM 40 Lease G13607, SM 40 Lease G13607 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1072 | 7/21/2018 | Marketing - Transportation | Tconderoga - GC 768 by and between Fieldwood Energy, LLC and Nautilus Pipeline Company | Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1073 | 10/30/2017 | Marketing - Transportation | EW 910 / ST 320 by and between Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company | Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1074 | 3/27/2017 | Marketing - Connection Agreement | CONSENT TO ASSIGN BY FIELDWOOD TO OFFSHORE TIE IN AGREEMENT BY AMBERJACK PIPELINE AND EMPIRE DEEPWATER LLC AND ADDENDUM TO CONSENT TO ASSIGN | FIELDWOOD, AMBERJACK PIPELINE, EMPIRE DEEPWATER LLC | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1075 | 6/8/2017 | Marketing - Lease of Platform Space | FIELDWOOD LEASES PLATFORM SPACE AT ST 292 from Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC and Manta, Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1076 | | Non-Oilfield Services | Amendment to Master Subscription Agreement effective Jan 1, 2016 | FILETRAIL INC | Fieldwood Energy LLC | n.a. | n.a. | $2,344.52 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1077 | | Oilfield Services | 777817_PO Terms & Conditions dated effective 01/15/2019 | FITZGERALD INSPECTION, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1078 | | Oilfield Services | 503898_Master_Service_Contract Effective_11-1-2013 | FLUID CRANE & CONSTRUCTION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1079 | | Oilfield Services | Fluids Consultant | FLUID TECHNOLOGY SERVICE INTERNATIONAL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1080 | | Oilfield Services | 530551_Master Services Agreement dated effective 08/13/2015 | FMC TECHNOLOGIES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreements, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

**Applicable Entity**

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1081 | 1/1/1994 | Marketing - Connection Agreement | Tie in Agreement between ForceEnergy Gas Exploration, Inc. and Shell Oil Company | ForceEnergy Gas Exploration, Inc. and Shell Oil Company | | SM132 Lease G02282, SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 1082 | 11/8/1995 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN FORCENERGY GAS EXPLORATION INC. AND ENERGY INVESTMENTS INC. | FORCENERGY GAS EXPLORATION INC. AND ENERGY INVESTMENTS INC. | | VR 380 Lease G02580 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1083 | 4/17/1996 | Joint Development / Venture / Exploration Agreements | Plan of Development by and between Shell Offshore Inc, BP Exploration and Oil, Inc and marathon oil company dated effective 17 Apr 1996. | FORCENERGY GAS EXPLORATION INC. AND ENERGY INVESTMENTS INC.; Plan of Development by and between Shell Offshore Inc, BP Exploration and Oil, Inc and marathon oil company dated effective 17 Apr 1996. | Fieldwood Energy LLC | GC 200 Lease G12209, GC 201 Lease G12210, GC 244 Lease G11043 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, WILD WELL CONTROL INC, CHEVRON USA INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1084 | | Oilfield Services | 700468_Master Services Agreement dated effective 06/20/2019 | FOREFRONT EMERGENCY MANAGEMENT LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1085 | 2/25/2004 | Joint Operating Agreement | Ratification and Amdt. Of Operating Agreement eff. 2-25-2004 b/b Forest Oil Corporation et al | Forest Oil Corporation et al | Fieldwood Energy Offshore LLC | WD 34 Lease G03414 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1086 | 7/20/2004 | Other Handling / Stabilization Agreements | PHA eff. 7-20-2004 b/b Forest Oil Corporation, as operator and co-owner of the WD 34 A PF and Red Willow Offshore, LLC, et al, as producers | Forest Oil Corporation, as operator and co-owner of the WD 34 A PF and Red Willow Offshore, LLC, et al, as producers | Fieldwood Energy Offshore LLC | WD 34 Lease G03414 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1087 | 4/5/1972 | Farmout Agreement | Farmout Agmt by and between Forest Oil Corporation, et al and Pelto Oil Company, et al | Forest Oil Corporation, et al and Pelto Oil Company, et al | Fieldwood Energy LLC | SS 249 Lease G01030 | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1088 | 2/25/2004 | Farmout Agreement | Farmout Agmt eff. 2-25-2004 b/b Forest Oil Corporation, Texas Standard Oil Company, Noble Energy, Inc. and Pioneer Natural Resources USA, Inc., as Farmors, and Houston Energy, L.P., as Farmee | Forest Oil Corporation, Texas Standard Oil Company, Noble Energy, Inc. and Pioneer Natural Resources USA, Inc., as Farmors, and Houston Energy, L.P., as Farmee | Fieldwood Energy Offshore LLC | WD 34 Lease G03414 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1089 | | Oilfield Services | 700602_Master Services Agreement dated effective 10/09/2014 | FORUM US INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1090 | 4/1/2006 | Right of Way | Frances L. Welch Perry | Frances L. Welch Perry | | WC 66 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1091 | 4/1/2006 | Right of Way | Frances L. Welch Perry ETAL | Frances L. Welch Perry ETAL | | WC 66 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1092 | | Non-Oilfield Services | Janitorial Services Agreement / Master Services Contract effective 01/01/2014 | FRANCIS JANITORIAL SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $2,632.26 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1093 | | Oilfield Services | Drilling: Tubular Handling; Casing Running Service | FRANKS INTERNATIONAL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1094 | 8/7/2014 | Elections | MP 259 A-7 Recompletion Proposal Election; McMoRan elects not to participate in A-7 well to Tex W-5 Sand | Freeport-McMoRan Oil & Gas | Fieldwood Energy LLC | MP 259 Lease G07827 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1095 | 11/5/2014 | Other Misc. | MP 259 A-7 Recompletion Proposal Election of Timely Operations; Request timely operations extension for proposed A-7 well | Freeport-McMoRan Oil & Gas | Fieldwood Energy LLC | MP 259 Lease G07827 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1096 | | Oilfield Services | 700620_Joinder dated effective 11/15/2018 | FUGRO GEOSERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1097 | 6/30/2020 | Other | Consulting Agreement | G. MATT MCCARROLL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1098 | 6/30/2020 | Other | Separation and Release Agreement | G. MATT MCCARROLL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1099 | | Oilfield Services | 777869_Master Services Agreement dated effective 12/05/2018 | GAIA EARTH SCIENCES LIMITED | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1100 | | Oilfield Services | 777877_Master Services Agreement dated effective 02/11/2019 | GATE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1101 | | Oilfield Services | 700651_Master Services Agreement dated effective 07/01/2014 | GAUGINGS UNLIMITED LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1102 | | Oilfield Services | Turbines / Compressor Equipment Purchases and Maintanence | GE OIL & GAS COMPRESSION SYSTEMS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1103 | | Oilfield Services | 557242_Master Services Agreement dated effective 11/01/2013 | GE OIL & GAS LOGGING SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1104 | | Oilfield Services | 555510_MSA dated effective 02/09/2010, Joinder effective 04/02/2019, Joinder effective 05/14/2019 | GE OIL & GAS PRESSURE CONTROL LP (Hydril) | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1105 | | Non-Oilfield Services | Geological and Geophysical Integrated Modeling | GEOCOMPUTING GROUP LLC | Fieldwood Energy LLC | n.a. | n.a. | $137,685.20 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1106 | | Oilfield Services | Geological and Geophysical Integrated Modeling | GEOLOGICAL & GEOPHYSICAL INTEGRATED MODELING | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1107 | | Oilfield Services | 777549_Master Services Agreement dated effective 12/17/2017 | GIR SOLUTIONS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1108 | | Oilfield Services | Tank & Vessel Builder | GLOBAL VESSEL & TANK, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1109 | 12/31/2007 | Acquisition / PSA / Other Purchase or Sale Agreements | PURCHASE AND SALE AGREEMENT BY AND BETWEEN GOM SHELF LLC AND WILD WELL CONTROL INC. | GOM SHELF LLC AND WILD WELL CONTROL INC. | Fieldwood Energy LLC | GI 40 Lease 128, GI 41 Lease 129, GI 41 Lease 130, GI 47 Lease 133, GI 47 Lease 133, GI 48 APACHE SHELF EXPLORATION LLC, BP AMERICA Lease 134, WD 69 Lease 181, WD 70 Lease 182 | PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) and/or allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | | x | | |
| 1110 | 3/28/2005 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN GOM SHELF LLC BY APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | GOM SHELF LLC BY APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | Fieldwood Energy LLC | WD 94 Lease 839, WD 95 Lease G01497, WD 96 Lease G01498 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1111 | 12/19/2007 | Letter Agreement - Other Land | Retention of 2007 AFEs rather than issue 2008 AFEs by and between GOM Shelf LLC Chevron U.S.A. Inc. | GOM Shelf LLC Chevron U.S.A. Inc. | GOM Shelf LLC | GI 39 Lease 127, GI 40 Lease 128, GI 41 Lease 129, GI 41 Lease 130, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1112 | 7/18/2007 | Water Bottom Contracts | Renewal of term Contract No. 194 with State of LA by and between GOM Shelf LLC State of LA State Land Office | GOM Shelf LLC State of LA State Land Office | GOM Shelf LLC | GI 43 Et al. Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1113 | 7/2/2012 | Water Bottom Contracts | Renewal of term Contract No. 194 with State of LA by and between GOM Shelf LLC State of LA State Land Office | GOM Shelf LLC State of LA State Land Office | GOM Shelf LLC | AREA 5 GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1114 | 7/6/2017 | Water Bottom Contracts | Renewal of term Contract No. 194 with State of LA by and between GOM Shelf LLC State of LA State Land Office | GOM Shelf LLC State of LA State Land Office | GOM Shelf LLC | GI 43 Et al. Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1115 | 11/21/2019 | Letter Agreement - Other Land | Letter Agreement SS 198 J-11 Well zone shift; Zone shift recommended and election from HO to HG sand by and between GOM Shelf Offshore LLC and Talos Energy Offshore LLC | GOM Shelf Offshore LLC and Talos Energy Offshore LLC | GOM Shelf LLC | SS 198 Lease 593 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1116 | | Oilfield Services | 529866_Master Services Agreement dated effective 11/01/2013 | GREENE'S ENERGY GROUP, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1117 | | Oilfield Services | Pressure Testing, Pipleine Flushes, Flowback Equipment, Tree, Valve and Wellhead Services | GREENE'S HOLDING CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1118 | 11/21/2016 | Well / Prospect Proposals | by and between Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC; Offer to Purchase GS E&R America Offshore, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 | GS E&R America Offshore, LLC | Fieldwood Energy Offshore LLC | GI 94 Lease G02163, SS 79 Lease G15277, VR 332 Lease G00514, WD 34 Lease G03414 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1119 | 10/1/2016 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy Offshore LLC; Fieldwood Energy Offshore LLC; Bureau of Ocean Energy Management | GS E&R America Offshore, LLC; Fieldwood Energy Offshore LLC; Bureau of Ocean Energy Management | Fieldwood Energy Offshore LLC | GI 94 Lease G02163, SS 79 Lease G15277, VR 332 Lease G00514, WD 34 Lease G03414 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1120 | | Oilfield Services | 528563_Master_Service_Contract Effective_11-1-2013 | GULF COAST MARINE FABRICATORS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1121 | | Oilfield Services | 530974_Master Services Agreement dated effective 11/01/2013 | GULF CRANE SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1122 | | Oilfield Services | 500963_Master_Service_Contract Effective_7-1-2019 | GULF ISLAND SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1123 | | Oilfield Services | 700921_Rental Agreement dated effective 04/10/2015 | GULF OFFSHORE RENTALS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1124 | 11/17/1978 | Farmout Agreement | Farmout Agreement dated November 17,1978 between Gulf Oil Corporation and Shell Oil Company covering the Northeaster Quarter (NE/4) of that certain Oil and Gas Lease dated July 1,1967 bearing Serial No. OCS-G 1609, South Pass Area Block 61. | Gulf Oil Corporation and Shell Oil Company | Fieldwood Energy Offshore LLC | SP 61 Lease G01609 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1125 | 4/28/1982 | Letter Agreement - Other Land | Letter Agreement dated April 28,1982 between Gulf Oil Corporation and Shell Oil Company evidencing an agreement for Gulf Oil Company to install a Drilling Platform in the Northeast Quarter (NE/4) South Pass Area Block 61. | Gulf Oil Corporation and Shell Oil Company | Fieldwood Energy Offshore LLC | SP 61 Lease G01609 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1126 | 11/1/1972 | Operating Agreement - Other | b/b Gulf Oil Corporation, Mobil Oil Corporation, Pennzoil Offshore Gas Operators, Inc. , and Pennzoil Louisiana and Texas Offshore, Inc., as amended | Gulf Oil Corporation, Mobil Oil Corporation, Pennzoil Offshore Gas Operators, Inc. , and Pennzoil Louisiana and Texas Offshore, Inc., as amended | Fieldwood Energy Offshore LLC | MP 138 G02191, MP 140 Lease G02193, MP 146 G02195, SP 49 Lease G02177 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1127 | 11/1/1980 | Joint Operating Agreement | Operating Agreement, Main Pass Area, Blocks 77 and 78, Gulf of Mexico, dated effective November 1, 1980 between Gulf Oil Corporation, Texoma Production Company, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company, covering the federal Oil and Gas Lease OCS-G 4481, Blocks 77=and78 Main Pass Area, Offshore Louisiana, a true copy of the original is recorded in C.O.B. 592, Folio 658, Plaquemines Parish, Louisiana. | Gulf Oil Corporation, Texoma Production Company, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1128 | 1/31/2014 | Construction Agreements | Construction and Coordination Agreement by and among Gulf Star One, LLC, Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.), Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company effective January 31, 2014. | Gulf Star One, LLC, Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.), Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company effective January 31, 2014. | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 903 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1129 | Effective of 7/1/2016 | Marketing - PHA | Gulstar One LLC, Noble Energy, Inc., Ecopetrol America, Inc., Samson Offshore Mapleleaf, LLC and Maraton Oil Company. Noble, Ecopetrol, Samson and Marathon Oil Company | Gulstar One LLC, Noble Energy, Inc., Ecopetrol America, Inc., Samson Offshore Mapleleaf, LLC and Maraton Oil Company. Noble, Ecopetrol, Samson and Marathon Oil Company | Fieldwood Energy Offshore LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1130 | Effective 8/4/2016 | Marketing - PHA | Gulstar One, Noble Energy, Inc, Ecopetrol America Inc., Samson Offshore Mapleleaf, Inc and Marathon Oil Company | Gulstar One, Noble Energy, Inc, Ecopetrol America Inc., Samson Offshore Mapleleaf, Inc and Marathon Oil Company | Fieldwood Energy Offshore LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1131 | 11/5/2013 | Letter Agreement - Other Land | Vote to end Appraisal between the Gunflint Partners | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 903 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1132 | | Oilfield Services | 536275_Master Services Agreement dated effective 03/10/2014 | GYRODATA, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1133 | 7/9/2012 | Joint Operating Agreement | Offshore Operating Agreement (Ship Sh)Operating Agreement 176 Prospect OCS-G 33646) Originally by and between Hall-Houston Exploration IV, L.P, as Operator and GOM Offshore Exploration I, LLC and Apache Corporation as Non-Operators | Hall-Houston Exploration IV, L.P, as Operator and GOM Offshore Exploration I, LLC and Apache Corporation as Non-Operators | Fieldwood Energy Offshore LLC | SS 176 Lease G33646 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1134 | 3/2/2016 | Withdrawal Agreement | by and between Fieldwood Energy LLC and Hall-Houston Exploration IV, L.P.; Hall Houston withdrawal Agreement | Hall-Houston Exploration IV, L.P. | Fieldwood Energy LLC | SS 176 Lease G33646 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1135 | 9/1/1988 | Operating Agreement - Other | Ownership and Operating Agreement BY Hall-Houston Offshore, Exxon Corporation, Ridgewood, et al and Amerada Hess Corporation | Hall-Houston Offshore, Exxon Corporation, Ridgewood, et al, Amerada Hess Corporation | Fieldwood Energy LLC | HI 176 Lease G27509 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1136 | | Oilfield Services | 500672_Master Services Agreement dated effective 11/01/2013, Amendment dated effective 07/06/2016 | HALLIBURTON ENERGY SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1137 | 3/7/1996 | Joint Development / Venture / Exploration Agreements | Letter Agreement by and between Hardy Oil & Gas USA, Inc., British-Borneo Exploration by Hardy Oil & Gas USA, inc., British Borneo Exploration, Inc. and Zilkha Energy Company | Hardy Oil & Gas USA, Inc., British-Borneo Exploration by Hardy Oil & Gas USA, inc., British Borneo Exploration, Inc. and Zilkha Energy Company | Fieldwood Energy LLC | GA 151 Lease G15740 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1138 | 2/26/1996 | Joint Development / Venture / Exploration Agreements | Hardy Oil & Gas USA, Inc., British-Borneo Exploration, Inc. and Zilkha Energy Company | Hardy Oil & Gas USA, Inc., British-Borneo Exploration, Inc. and Zilkha Energy Company | Fieldwood Energy LLC | GA 151 Lease G15740 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1139 | | Oilfield Services | 777656_Master Services Agreement dated effective 01/16/2019 | HARDY OILFIELD SERVICE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1140 | 6/15/2012 | Marketing - Connection Agreement | CONNECTION AGREEMENT BETWEEN HARVEST-MARKS PIPELINE, LLC AND APACHE CORPORATION FOR 10" CRUDE OIL LINE | HARVEST-MARKS PIPELINE, LLC AND APACHE CORPORATION FOR 10" CRUDE OIL LINE | Fieldwood Energy LLC | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1141 | | Oilfield Services | 501029_Master Services Agreement dated effective 12/01/2013 | HB RENTALS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1142 | | Non-Oilfield Services | Annual contract and quarterly installment agreement | HCL MECHANICAL SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $2,559.04 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1143 | 1/1/2019 | Non-Oilfield Services | Administrative Services Agreement | HEALTH CARE SERVICE CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1144 | 3/30/2009 | Property Participation & Exchange Agreements | Participation Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C., et al and Challenger Minerals Inc. | Helis Oil & Gas Company, L.L.C., et al and Challenger Minerals Inc. | Fieldwood Energy SP LLC | SS 252 Lease G01529 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1145 | 3/30/2009 | Operating Agreement - Other | Memorandum of Offshore Operating Agreement and Financing Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C. et al | Helis Oil & Gas Company, L.L.C. et al | Fieldwood Energy SP LLC | SS 252 Lease G01529 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1146 | 3/30/2009 | Joint Operating Agreement | Offshore Operating Agreement dated March 30 2009 between Helis Oil & Gas Company, L.L.C., Operator, and Houston Energy, LP, et al, Non-operators; as Ratified and Amended by Ratification And Amendment of Operating Agreement dated March 16, 2012 | Helis Oil & Gas Company, L.L.C., Operator, and Houston Energy, LP, et al, Non-operators | Fieldwood Energy SP LLC | SS 252 Lease G01529 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1147 | 10/19/2015 | Operating Agreement - Other | by and between Fieldwood Energy LLC and Helis Oil and Gas Company L.L.C.; Contract Operations Agreement #18 Helis well | Helis Oil and Gas Company L.L.C. | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1148 | | Oilfield Services | 777516-Daywork Drilling Contract dated 7/17/2018 | HELIX ENERGY SOLUTIONS GROUP INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1149 | 4/1/2013 12/10/2010 | Other Services Agreements | Response Resources Agreement Utilization Agreement | Helix Energy Solutions Group, Inc. | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1150 | | Oilfield Services | 557021-Daywork Drilling Contract dated 1-31-2012 | HELMERICH & PAYNE INT'L DRILLING CO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1151 | | Non-Oilfield Services | PCOOSA Usage (January and December 2020) | HGC CONSULTING | Fieldwood Energy LLC | n.a. | n.a. | $16,500.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1152 | 8/15/1991 | Operating Agreement - Other | HI A442 Operating Agreement C2-0004194 | HI A442 OA C-02-0004194 | Fieldwood Energy LLC | HI A442 Lease G11383 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1153 | | Oilfield Services | 531398_Master Services Agreement dated effective 12/09/2013 | HOLE OPENER CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1154 | | Oilfield Services | Rigging Supplies | HOLLOWAY HOUSTON | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the executory contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the terms herein, on the one hand, and the Credit Bid Purchase Agreement, the other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1155 | 5/1/2019 | Joint Operating Agreement | Santiago / Santa Cruz Joint Operating Agreement dated effective May 1, 2019, by and between Fieldwood, Red Willow and HEDV, which governs the operating rights interest on that certain oil and gas lease OCS-G 27278 (MC 519) as amended (a) by that certain First Amendment to the Santiago / Santa Cruz JOperating Agreement made effective 31 May 2019 by and between Fieldwood, Red Willow and HEDV | Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1156 | 10/15/2018 | Joint Operating Agreement | Joint Operating Agreement by and among BP Exploration & Production Inc., Fieldwood Energy Deepwater Ventures I, LLC and Houston Energy Deepwater Ventures I, LLC made effective as of October 15, 2018 and as amended by a) that First Amendment to the CPN Joint Operating Agreement made effective 31 May 2019. | Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore, LLC | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1157 | 3/12/2019 | Letter Agreement - Operating Agreement | Letter Agreement by and between Fieldwood Energy LLC, Red Willow Offshore and HEDVI waiving certain requirements under the Operating Agreement for Project Team | Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore, LLC | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1158 | 6/10/2019 | Joint Development / Venture / Exploration Agreements | Genovesa Development Plan by and between Fieldwood Energy LLC, Red Willow Offshore and HEDVI approving the development of the Genovesa Discovery on MC 519 | Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore, LLC | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1159 | 5/1/2007 | Joint Operating Agreement | Joint Operating Agreement - Santiago Prospect, dated effective 1 May 2007 by and between Noble Energy, Inc (as predecessor in interest to Fieldwood Energy LLC) as Operator and Red Willow Offshore, LLC and HE&D Offshore, L.P. covering MC 519 and MC 563 and superseded by that certain Unit Operating Agreement (Offshore Operating Agreement) dated effective January 1, 2009, originally by and between Noble Energy, Inc. (as predecessor in interest of Fieldwood), as Operator, and BP, Red Willow and HE&D Offshore, L.P. as Non-Operators, as amended (a)by that certain First Amendment of the Unit Operating Agreement and Establishment of Lease Offshore Operating Agreements, dated effective as of October 10, 2014, by and among BP, Red Willow, HEDV, Noble Energy, Inc (as predecessor in interest of Fieldwood), Deep Gulf Energy III, LLC, Ridgewood South Santa Cruz, LLC and ILX Prospect South Santa Cruz, LLC and (b)by that certain Second Amendment of the Offshore Operating Agreement, dated effective as of October 15, 2018, by and among BP, Red Willow, HEDV and Fieldwood and (c) by that certain Third Amendment of the Offshore Operating Agreement, dated effective as of 1 May 2019, by and among BP, Red Willow, HEDV and Fieldwood and (d) by that certain Fourth Amendment of the Offshore Operating AGreement, dated effective as of 31 May 2019 by and among Red Willow, HEDV and Fieldwood | Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore; BP Exploration & Production Inc.; Kosmos Energy GOM Op; Ridgewood S Santa Cruz; ILX Prospect Santa Cruz | Fieldwood Energy LLC | MC 519 Lease G27278, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1160 | 6/1/2012 | Joint Operating Agreement | Joint Operating Agreement made and entered into effective 1 jun 12, among Noble Energy, Inc, LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures V, LLC | Houston Energy Deepwater Ventures V, LLC; Red Willow Offshore, LLC; W & T Energy VI, LLC | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1161 | 10/1/2015 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement (754316002) by and between the Big Bend Producers (Noble Energy Inc, W+T Energy VI, LLC, Red Willow Offshore, LLC and HEDV V, LLC) and the US Dept of Interior dated 29 Mar 16, but effective 1 Oct 15 and whose Exhibit A/B has been revised dated 18 Jan 18, but effective 28 OCt 18 | Houston Energy Deepwater Ventures V, LLC; Red Willow Offshore, LLC; W & T Energy VI, LLC | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1162 | 5/16/2014 | Termination / Ratification and Joinder of Operating or Other Agreements | Terminates Farmouts dated 05.01.13 and 06.01.13 | Houston Energy, L.P. | Fieldwood Energy SP LLC | SS 252 Lease G01529 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1163 | 2/22/2011 | Marketing - PHA | Production Handling Agreement for Monforte Exploration Operated SM 48 Well No. E-2 at Hunt Oil Owned and Operated SM 39 Platform effective February 22, 2011 by and between Hunt Oil Company as Owner and Monforte Exploration LLC as Producer and Amendment and Ratification eff. April 1, 2013 by and between Dynamic Offshore Resources, LLC as owner and successor to Hunt Oil Company and Apache Corporation as producer and successor to Monforte Exploration LLC | Hunt Oil Company as Owner and Monforte Exploration LLC as Producer and Amendment and Ratification eff. April 1, 2013 by and between Dynamic Offshore Resources, LLC as owner and successor to Hunt Oil C | | SM 48 00786 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1164 | 2/17/2010 | Farmout Agreement | Farmout Agmt b/n Hunt Oil Company (Farmor) and Castex Offshore Inc, and Walter Oil & Gas Corporation (Farmees); created HI 176 om | Hunt Oil Company (Farmor) and Castex Offshore Inc. and Walter Oil & Gas Corporation (Farmees); created HI 176 om | | HI 176 Lease G27509 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1165 | 2/24/2003 | Operating Agreement - Other | PA and Joint Operating Agreement dated 2/24/03 between Hunt Petroleum (AEC), Inc, and LLOG Exploration Offshore, Inc | Hunt Petroleum (AEC), Inc. and LLOG Exploration Offshore, Inc | Fieldwood Energy LLC | SM 0040 Lease G13607, SM 0041 Lease G01192 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1166 | 6/1/2003 | Joint Area Agreements | Hunt Petroleum, Devon Energy, LLOG Exploration, as ratified by Apache Corp with letter dated 06-30-2003 | Hunt Petroleum, Devon Energy, LLOG Exploration, as ratified by Apache Corp with letter dated 06-30-2003 | Fieldwood Energy LLC | SM 40 Lease G13607, SM 41 Lease G01192 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1167 | 7/1/2003 | Lease of Platform Space | Lease and Operations Agreement between Hunt Petroleum, LLOF and Apache | Hunt Petroleum, LLOF and Apache | Fieldwood Energy LLC | SM 40 Lease G13607, SM 41 Lease G01192 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1168 | 6/1/2003 | Joint Area Agreements | Hunt Petroleum, LLOG Exploration, ratification with Apache Corp - letter dated 06-30-2003 - Letter | Hunt Petroleum, LLOG Exploration, ratification with Apache Corp - letter dated 06-30-2003 | | SM 40 Lease G13607, SM 41 Lease G01192 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1169 | 6/1/2003 | Operating Agreement - Other | Operating Agreement SM 40 W2 and SM 41 E/2 by and between Hunt Petroleum, LLOG Exploration,Inc and Devon Energy Production Company attached to the Joint Area Agreement | Hunt Petroleum, LLOG Exploration,Inc and Devon Energy Production Company | | SM 40 Lease G13607, SM 41 Lease G01192 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1170 | 7/2/2018 | HWCG SUB LLC Organizational Docs. | Limited Liability Company | HWCG Sub LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1171 | 7/2/2018 | HWCG SUB LLC Organizational Docs. | Organizational Consent | HWCG Sub LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1172 | 8/13/2018 | HWCG SUB LLC Organizational Docs. | Assignment of Membership Interest | HWCG Sub LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1173 | 8/13/2018 | HWCG SUB LLC Organizational Docs. | Contribution Agreement | HWCG Sub LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1174 | 8/13/2018 | HWCG SUB LLC Organizational Docs. | Consent of Noble Energy, Inc. | HWCG Sub LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1175 | | Oilfield Services | 700974_Master Services Agreement dated effective 04/16/2015 | IDEAL ENERGY SOLUTIONS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1176 | | Non-Oilfield Services | Perpetual Software License Agreement | IHS GLOBAL INC | Fieldwood Energy LLC | n.a. | n.a. | $84,265.64 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1177 | 4/1/2018 | Unit Agreement and/or Unit Operating Agreement | GC 40 Unit Operating Agreement by and between Fieldwood Energy LLC, Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC, effective April 1, 2018 | ILX Prospect Katmai, LLC; Ridgewood Katmai, LLC | Fieldwood Energy LLC | EW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880, GC 040 Lease G34536, GC 041 Lease G34537, GC 39 A Lease G34966, GC 039 B Lease G34676 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1178 | 11/1/2018 | Joint Development / Venture / Exploration Agreements | Letter Agreement re Abandonment Development PLan by and between Fieldwood Energy LLC, Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC, effective November 1, 2018 | ILX Prospect Katmai, LLC; Ridgewood Katmai, LLC | Fieldwood Energy LLC | EW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880, GC 040 Lease G34536, GC 041 Lease G34537, GC 39 A Lease G34966, GC 039 B Lease G34676 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1179 | 8/1/2013 | Operating Agreement - Other | Offshore Operating Agreement, effective as of August 1, 2013, between Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.) and Ridgewood Energy Corporation as amended by that First Amendment dated 1 Aug 2016 | ILX; Ridgewood; W & T Energy Offshore | Fieldwood Energy LLC | MC 762 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1180 | 1/17/2019 | Other | Equipment Lease Agreement (Sales order # 307392) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1181 | 1/17/2019 | Other | Equipment Service Agreement (Sales order # 307392) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, et al.**
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1182 | 10/4/2018 | Other | Equipment Lease Agreement (Sales order # 303672) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1183 | 10/4/2018 | Other | Equipment Service Agreement (Sales order # 303672) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1184 | | Oilfield Services | Manage Design and Construction of Drill Site / Production Facilities in "Wetlands" | INDUSTRIAL & OILFIELD SERVICES, INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1185 | | Oilfield Services | DOT Pipeline Training Provider | INDUSTRIAL SOLUTIONS GROUP LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1186 | | Oilfield Services | Gas and Gas Cylinders, Welding Supply | INDUSTRIAL WELDING SUPPLY CO OF HARVEY INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1187 | | Oilfield Services | Chemical Pump | INJECT-TECH & SUPPLY, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1188 | 11/30/1994 | Joint Development / Venture / Exploration Agreements | Amendment to Joint Venture Development Agreement, dated November30,1994, between iNorcen Explorer, Inc., Texaco Exploration, and Production; Inc., Hunt Industries, The George.R..Brown Partnership, JOG Venture, Laniar Hunt Trust Estate, Mobil Oil Exploration &=Producing Southeast Inc., and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreement Area. | iNorcen Explorer, Inc., Texaco Exploration, and Production; Inc., Hunt Industries, The George.R..Brown Partnership, JOG Venture, Lanias Hunt Trust Estate, Mobil Oil Exploration | Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1189 | | Oilfield Services | 701010_Master Services Agreement dated effective 09/11/2015 | INSULATION TECHNOLOGIES, INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1190 | | Oilfield Services | 700603_Master Services Agreement dated effective 12/01/2013 | INTERNATIONAL SNUBBING SERVICES LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1191 | | Oilfield Services | 777938_Master Services Agreement dated effective 09/11/2019 | INTERWELL US LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1192 | | Oilfield Services | 701222_Master Services Agreement dated effective 10/03/2016 | IPT GLOBAL LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1193 | | Non-Oilfield Services | Amendment to Recall Document Management Services Agreement Effective 10/26/2015 | IRON MOUNTAIN | Fieldwood Energy LLC | n.a. | | n.a. | $37,318.16 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1194 | | Oilfield Services | Surface BOP Rental Tools | IRONGATE RENTAL SERVICES LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1195 | | Oilfield Services | 701004_Master_Service_Contract Effective_1-1-2014 | IRONGATE TUBULAR SERVICES, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1196 | | Oilfield Services | 501047_MSA effective 11/01/2013; Amendment effective 09/03/2014; Amendment effective 01/31/2015 | ISLAND OPERATING COMPANY INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1197 | | Oilfield Services | SEMS Compliance Software | ISN SOFTWARE CORPORATION | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1198 | | Oilfield Services | 777643_Master Services Agreement dated effective 06/18/2019 | ITT C'TREAT LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1199 | | Oilfield Services | 700526_Master Services Agreement dated effective 01/27/2014 | J & J MARINE PEST SOLUTIONS, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1200 | | Non-Oilfield Services | Service agreement for 3343 CO RD 166 COM PR STATIC | JACKSON ELECTRIC COOP INC | Fieldwood Energy LLC | n.a. | | n.a. | $473.87 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1201 | | Oilfield Services | 777754_Master Services Agreement dated effective 09/25/2018 | JAMES FISHER SUBSEA EXCAVATION INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1202 | | Oilfield Services | 510197_Master Services Agreement dated effective 11/01/2013 | JANIC DIRECTIONAL SURVEY INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1203 | | Oilfield Services | 700823_Master Services Agreement dated effective 01/08/2015 | JAVELIN MARINE SERVICES, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1204 | | Oilfield Services | Tubular Supplier | JD RUSH CORPORATION | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1205 | | Oilfield Services | Utilities | JEFFERSON  DAVIS ELECTRIC COOPERATIVE INC | Fieldwood Energy LLC | n.a. | | n.a. | $17,264.77 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1206 | | Oilfield Services | Choke Parts | JIM CAMEL SALES | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1207 | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture; JOC Venture withdrawal | JOC Venture | Fieldwood Energy LLC | SS 207 Lease G01523 | | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1208 | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture; JOC Venture withdrawal | JOC Venture | Fieldwood Energy LLC | SS 216 Lease G01524 | | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1209 | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture; JOC Venture withdrawal | JOC Venture | Fieldwood Energy LLC | SS 204 Lease G01520 | EPL OIL & GAS, LLC, KINETICA DEEPWATER EXPRESS, LLC | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1210 | | Oilfield Services | 777511_Master Services Agreement dated effective 06/25/2018 | JOHN C HEALY JR CONSULTING LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1211 | | Oilfield Services | Onshore Surveys | JOHN CHANCE LAND SURVEYS INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1212 | | Oilfield Services | 502327_PO Terms & Conditions dated effective 07/27/2015 | JOHN W STONE OIL DISTRIBUTOR LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1213 | 6/1/1999 | Operating Agreement - Other | Joint Operating Agreement dated June 1, 1999 by and between JP Petroleum Company, Inc., as Operator, and LLOG Exploration Offshore, Inc. Et al as Non-Operators | JP Petroleum Company, Inc., as Operator, and LLOG Exploration Offshore, Inc. Et al as Non-Operators | | VR 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1214 | | Oilfield Services | Pipeline Patrol Flights (PJ) | KENAN AVIATION, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1215 | 5/20/2003 | Letter Agreement - Operating Agreement | Letter Agreement Pursuant to Operating and Processing Agreement dated 06/13/1996 by and between Kerr McGee Oil & Gas Corporation and Gryphon Exploration Company ; Depth Severance, Etc. | Kerr McGee Oil & Gas Corporation and Gryphon Exploration Company | | SS 301 Lease G10794 | | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1216 | 5/22/2003 | Termination / Ratification and Joinder of Operating or Other Agreements | Ratification of Operating and Processing Agreement by and between Kerr McGee Oil & Gas Corporation and Gryphon Exploration Company ; Ratifies Operating Agreement effective 04/01/1996 | Kerr McGee Oil & Gas Corporation and Gryphon Exploration Company | | SS 301 Lease G10794 | | | $0.00 | Assume a) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1217 | 7/1/1992 | Operating Agreement - Other | Operating Agreement 7-1-92 b/b Kerr-McGee and Samedan | Kerr-McGee and Samedan | Fieldwood Energy LLC | SS 314 Lease G26074 | W&T OFFSHORE INC | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1218 | 9/5/2002 | Farmout Agreement | Farmout Agreement by and between Kerr-McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | Kerr-McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | | BS 27 Lease SL4574, BS 28 Lease SL1999, BS 29 Lease 20, BS 36 Lease SL1230, BS 37 Lease SL4409 | | | $0.00 | Assume a) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1219 | 3/19/2003 | Operating Agreement - Other | by and between Kerr-McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | Kerr-McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | | BS Lease 1999, BS Lease 20, BS Lease G01230, BS Lease 4409 | | | $0.00 | Assume a) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1220 | | Oilfield Services | KILGORE AIRCRAFT LEASE AGREEMENT | KILGORE MARINE SERVICES INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1221 | 11/1/1989 | Operating Agreement - Other | Ownership and Operating Agreement b/b Kilroy Company of TX, et al | Kilroy Company of TX, et al | Fieldwood Energy LLC | HI 31 MF114921 Lease 114921, HI 31 MF 106158 Lease 106158, HI 31 MF106159 Lease 106159 | | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1222 | 10/10/2018 | Facilities & Tie-In Agreements | FACILITIES, CONNECTION FOR GAS CONNECTION WITH KINETICA ENERGY EXPRESS, LLC AND FIELDWOOD ENERGY LLC | KINETICA ENERGY EXPRESS, LLC | Fieldwood Energy LLC | SS 169 Lease B20, SS 182 Lease G03998, SS 193 Lease G13917 | BOIS D'ARC EXPLORATION, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1223 | 1/1/2016 | Other | SecurePlan Agreement (#10941) | KNIGHT SECURITY SYSTEMS LLC | Fieldwood Energy LLC | n.a. | n.a. | $697.17 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1224 | | Oilfield Services | 777949_Master Services Agreement dated effective 04/09/2019 | KNIGHTEN INDUSTRIES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1225 | | Non-Oilfield Services | Consulting Agreements | KPMG LLP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1226 | | Other | HR and payroll system | Kronos | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1227 | | Oilfield Services | PO Terms & Conditions entered into by and between Fieldwood Energy LLC and L&J Technologies | L&J TECHNOLOGIES D/B/A SHAND AND JURS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1228 | | Oilfield Services | Cylinder Head Repairs, Replacement Parts, Maintenance Services | LA ENERGY SERVICES OF IBERIA, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1229 | | Non-Oilfield Services | Global Warehouse - Water Acct# 9182640924 & Acct# 0841689191 | LAFAYETTE UTILITIES SYSTEM | Fieldwood Energy LLC | n.a. | n.a. | $43.32 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1230 | | Non-Oilfield Services | Perpetual software license agreement | LANDMARK GRAPHICS CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1231 | | Oilfield Services | 777602_Master Services Agreement dated effective 01/01/2014 | LAREDO OFFSHORE SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1232 | | Oilfield Services | 777602_Master Services Agreement dated effective 01/01/2014 | LAREDO OFFSHORE SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1233 | | Oilfield Services | 777711_Master Services Agreement dated effective 07/18/2018 | LARRY DOIRON, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1234 | | Non-Oilfield Services | Perpetual software license agreement | LARSON SOFTWARE TECHNOLOGY, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1235 | | Non-Oilfield Services | | LEASEQUERY, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1236 | 10/3/2012 | Letter Agreement - Other Land | Letter Agreement between Statoil USA E+P Inc and Marathon Oil Company dated 3 October 2012 | Letter Agreement between Statoil USA E+P Inc and Marathon Oil Company dated 3 October 2012 | Fieldwood Energy LLC | MC 992 S/2 Lease G24133 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1237 | 1/1/2013 | Letter Agreement - Other Land | Letter Agreement between Western Geco by Samson Offshore, LLC dated 17 December 2014 covering blocks GC 679 and GC768 | Letter Agreement between Western Geco by Samson Offshore, LLC dated 17 December 2014 covering blocks GC 679 and GC768 | Fieldwood Energy LLC | GC 679 Lease G21611, GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1238 | | Non-Oilfield Services | Data subscription agreement | LEXCO DATA SYSTEMS, LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1239 | | Oilfield Services | 512590_Master Services Agreement dated effective 11/01/2013 | LINEAR CONTROLS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1240 | 1/15/2001 | Operating Agreement - Other | Operating Agreement b/b LLOG and Century | LLOG and Century | | BS 44 Lease 3770, BS 45 Lease 15683 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1241 | 3/27/2003 | Operating Agreement - Other | Operating Agreement b/b LLOG and Century | LLOG and Century | | BS 45 Lease 15683, BS 52/53 Lease 17675 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1242 | 11/1/2010 | Pipeline Use / Tie-In / Modification Agreements | Pipeline Use Agreement b/b LLOG and XTO | LLOG and XTO | | MP 112 Lease G09707 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1243 | 10/9/2013 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement by and between LLOG Bluewater Holdings, L.L.C.; LLOG Exploration Offshore, L.L.C.; Sandridge Energy Offshore, LLC and Sandridge Energy Offshore, LLC; LLOG Bluewater Holdings, L.L.C.; LLOG Exploration Company, L.L.C.; LA State Mineral Board Federal/State Unit | LLOG Bluewater Holdings, L.L.C.; LLOG Exploration Offshore, L.L.C.; Sandridge Energy Offshore, LLC and Sandridge Energy Offshore, LLC; LLOG Bluewater Holdings, L.L.C.; LLOG Exploration Company, L.L.C. | | SS 25 Lease 19718, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1244 | 5/20/2003 | Unit Agreement and/or Unit Operating Agreement | Order No. 1245-B Unit Textularia W Zone Reservoir A BS 53 Field by and between LLOG Exploration Company, L.L.C. and Office of Conservation State of LA | LLOG Exploration Company, L.L.C. and Office of Conservation State of LA | | BS Lease 15683 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1245 | 3/1/2009 | Property Participation & Exchange Agreements | Participation Agreement by and between LLOG Exploration Offshore, Inc.; LLOG Exploration Company, Inc.; and XTO Offshore Inc.; | LLOG Exploration Offshore, Inc.; LLOG Exploration Company, Inc.; and XTO Offshore Inc. | | BS 25 Lease 19718, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1246 | | Non-Oilfield Services | Perpetual Software License Agreement | LMK RESOURCES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1247 | | Oilfield Services | 777800_PO Terms & Conditions dated effective 08/14/2018 | LOADMASTER INDUSTRIES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1248 | | Non-Oilfield Services | | LOGIX FIBER NETWORKS | Fieldwood Energy LLC | n.a. | n.a. | $158,435.97 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1249 | 5/12/2020 | Non-Oilfield Services | IT Services Agreement | LONG VIEW SYSTEMS CORP | Fieldwood Energy LLC | n.a. | n.a. | $843,446.16 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1250 | | Non-Oilfield Services | IT Services Agreement; Addendum | LONG VIEW SYSTEMS CORP | Fieldwood Energy LLC | n.a. | n.a. | $843,446.16 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1251 | | Oilfield Services | Labor & Parts | LOUISIANA MACHINERY COMPANY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1252 | 1/14/2003 | Government Orders | | Louisiana Office of Conservation | | BS Lease 1999, BS Lease 20, BS Lease G01230, BS Lease 4409 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1253 | | Oilfield Services | 503189_Master Services Agreement dated effective 11/01/2013 | LOUISIANA SAFETY SYSTEMS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1254 | 12/16/2020 | Indemnity and Release Agreement | Offshore Facilities Boarding, Release and Idemnification Agreement for SS 91 A &B platforms by and between Louisiana State University and Fieldwood Energy LLC extended 12-16-2020 through 12-15-2021 | Louisiana State University and Fieldwood Energy LLC extended 12-16-2020 through 12-15-2021 | Fieldwood Energy LLC | SS 91 Lease G02919 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1255 | | Oilfield Services | 533957_Master Services Agreement dated effective 03/11/2014 | LQT INDUSTRIES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1256 | | Oilfield Services | 507057_Rental Agreement dated effective 03/12/2014 | LSE CRANE AND TRANSPORTATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1257 | | Oilfield Services | 701037_Master_Service_Contract Effective_12-14-2015 | M&R MANAGEMENT, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1258 | | Oilfield Services | 531437_Master Services Agreement dated effective 11/01/2013 | M.R. HARLAN, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1259 | | Oilfield Services | Subsea Tree Hydraulic Oil (Shell - HI 4573 Only) | MACDERMID OFFSHORE SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1260 | 10/21/2019 | Equipment Lease | 125 Generator, Serial No. 1003815-08 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1261 | 10/21/2019 | Equipment Lease | 150 Generator, Serial No. 1006511/03 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1262 | 10/21/2019 | Equipment Lease | 300 Generator, Serial No. 1000010 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1263 | 10/21/2019 | Equipment Lease | 300 Generator, Serial No. 5263/19 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1264 | 10/21/2019 | Equipment Lease | 300 Generator, Serial No. 5263/23 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1265 | 10/21/2019 | Equipment Lease | 500 Generator, Serial No. 1004626-002 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1266 | 10/21/2019 | Equipment Lease | 500 Generator, Serial No. 1009733-01 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1267 | 10/21/2019 | Equipment Lease | 60 Generator, Serial No. 1013275-04 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

Schedule of Assumed Contracts
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [8] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1268 | 10/21/2019 | Equipment Lease | Compressor, Serial No. 271420 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1269 | 10/21/2019 | Equipment Lease | Compressor, Serial No. 361534 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | | x | | |
| 1270 | 10/21/2019 | Equipment Lease | Compressor, Serial No. 7B1282 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1271 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F04564 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1272 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F11695 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1273 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F12162 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1274 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F-13006 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1275 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F-13806 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1276 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F-14881 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1277 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F151 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1278 | 10/21/2019 | Equipment Lease | Compressor, Serial No. F-25819 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1279 | 10/21/2019 | Equipment Lease | Compressor, Serial No. L-81582 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to Credit Bid Purchaser | | x | | |
| 1280 | 10/21/2019 | Equipment Lease | Fuel Tank, Serial No. 1010166915B | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1281 | 10/21/2019 | Equipment Lease | Fuel Tank, Serial No. 51415 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1282 | 10/21/2019 | Equipment Lease | Fuel Tank, Serial No. 51456 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1283 | 10/21/2019 | Equipment Lease | Fuel Tank, Serial No. C852006 | MACQUARIE CORPORATE AND ASSET FUNDING, INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1284 | | Oilfield Services | 509878_Master Services Agreement dated effective 11/01/2013 | MAGNOLIA TORQUE & TESTING INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1285 | 9/1/2004 | Joint Operating Agreement | Operating Agreement eff. 9-1-04 | Magnum Hunter | Fieldwood Energy Offshore LLC | ST 242 Lease G23933 | | MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1286 | 11/7/2007 | Farmout Agreement | FARMOUT AGREEMENT BY AND BETWEEN MAGNUM HUNTER PRODUCTION, INC. AND APACHE CORPORATION | MAGNUM HUNTER PRODUCTION, INC. AND APACHE CORPORATION | Fieldwood Energy LLC | ST 287 Lease G24987 | | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1287 | 12/1/1999 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN FORCENERGY INC. AND MAKO OFFSHORE EXPLORATION, INC. ET AL. | Mako Offshore Exploration Inc.; Pruet Offshore Company | Fieldwood Energy LLC | VR 381 Lease G16314 | | MAKO OFFSHORE EXPLORATION INC., PRUET Offshore Company | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1288 | | Oilfield Services | Derrick Barge Work | MANSON GULF | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1289 | 10/1/1999 | Marketing - Connection Agreement | AGREEMENT TO TIE IN AND FOR OPERATION AND CONSTRUCTION BETWEEN MANTA RAY OFFSHORE GATHERING COMPANY, L.L.C. AND ANADARKO PETROLEUM CORPORATION, OCEAN ENERGY INC., AND SHELL OFFSHORE INC. | MANTA RAY OFFSHORE GATHERING COMPANY, L.L.C. AND ANADARKO PETROLEUM CORPORATION, OCEAN ENERGY INC., AND SHELL OFFSHORE INC. | | GI 110 Lease G13943, GI 111 G35611, GI 116 Lease G13944 | | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1290 | 10/1/1999 | Marketing - Connection Agreement | Manta Ray Offshore Gathering Company, L.L.C. and Anadarko Petroleum Corporation, Ocean Energy Inc., Shell Offshore Inc. | Manta Ray Offshore Gathering Company, L.L.C. and Anadarko Petroleum Corporation, Ocean Energy Inc., Shell Offshore Inc. | | GI 110 Lease G13943, GI 111 G35611, GI 116 Lease G13944 | | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1291 | 6/8/2017 | Other Assignment / Bill of Sale (or Conveyance, Notice of Exercise) & Related Consents | by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.; Manta Ray rights to Fieldwood pursuant to reverse of gas flow in ST 295 block to direct flow of gas to ST 292 Platform | Manta Ray Offshore Gathering Company, L.L.C.; Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC | ST 295 Lease G05646 | | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1292 | 6/8/2017 | Interconnection and Measurement Agreement | by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.; Fieldwood desires to connect with Mata Ray's ST 292 platform and piping, etc. | Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC | ST 295 Lease G05646 | | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1293 | 4/1/2011 | Marketing - Separation & Stabilization | Liquids Separation Agreement between Noble Energy, Inc and Manta Ray Offshore Gathering Company, L.L.C. | Manta Ray Offshore Gathering Company, L.L.C. | | GC 768 Lease G21817 | | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1294 | 1/1/2012 | Lease Rental and Minimum Royalty Payment Agreement | Lease Rental and Minimum Royalty Payment Agreement by and between Marathon Oil Company, Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy, Inc dated 9 March 2012, but effective 1 Jan 12 | Marathon Oil Company, Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy, Inc dated 9 March 2012, but effective 1 Jan 12 | | MC 992 N/2 Lease G24133 | | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1295 | 10/1/1990 | Unit Agreement and/or Unit Operating Agreement | UA and Unit Operating Agreement dated 10/1/90 between Marathon Oil Co and Phillips Petroleum etal | Marathon Oil Co and Phillips Petroleum etal | Fieldwood Energy LLC | WD 0057 Lease G01449 | | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1296 | 6/11/2012 | Joint Operating Agreement | Area of Mutual Interest Agreement and Joint Operating Agreement made and entered into between Marathon Oil Company, Statoil USA E&P Inc and Woodside Energy (USA) Inc dated and effective 11 June 2012 (including JOA to be identical to JOA for MC 993 S/2) | Marathon Oil Company, Statoil USA E&P Inc and Woodside Energy (USA) Inc dated and effective 11 June 2012 (including JOA to be identical to JOA for MC 993 S/2) | | MC 992 S/2 Lease G24133 | | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1297 | 4/1/1981 | Operating Agreement - Other | b/b Marathon, Amerada Hess, LL&E and Texas Eastern Copration | Marathon, Amerada Hess, LL&E and Texas Eastern Copration | | HI A-550 Lease G04081 | | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1298 | 5/1/2008 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN MARINER ENERGY, INC. AND APACHE CORPORATION | MARINER ENERGY, INC. AND APACHE CORPORATION | Fieldwood Energy LLC | ST 49 Lease G24956 | | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1299 | 1/1/2005 | Operating Agreement - Other | Operating Agreement 1-1-05 by an between Martech and Arena | Martech and Arena | Fieldwood Energy LLC | EC 328 Lease G10638 | | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1300 | 8/1/1987 | Operating Agreement - Other | OA by and between Mark Producing, Inc. as Operator and EP Operating Company and Non-Operator | Mark Producing, Inc. as Operator and EP Operating Company and Non-Operator | | EC 332 Lease G09478 | | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1301 | | Oilfield Services | 556438_Master Services Agreement dated effective 06/20/2018 | MARLIN OILFIELD DIVERS INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1302 | 11/13/2018 | Non-Oilfield Services | Consulting Agreement - Katmai Development | MARS OFFSHORE TECHNOLOGY INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1303 | | Oilfield Services | 533060_Master Services Agreement dated effective 12/03/2013; Amendment dated effective 01/28/2019 | MARTIN HOLDINGS, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1304 | | Oilfield Services | 777710_Master Services Agreement dated effective 07/17/2018 | MASTER FLO VALVE (USA) INC. | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1305 | | Oilfield Services | 700795_Rental Agreement dated effective 10/22/2014 | MAVERICK ENERGY SOLUTIONS, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1306 | | Oilfield Services | Inspection and Service | MAXIM SILENCERS INC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1307 | 7/1/1978 | Operating Agreement - Other | b/b McMoRan and Transco et al | McMoRan and Transco et al | | HI A447 Lease G02360 | | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1308 | 11/28/1979 | Operating Agreement - Other | McMoRan et al | McMoRan et al | | HI A-446 Lease G02359 | | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1309 | | Oilfield Services | 556487_Master Services Agreement dated effective 11/01/2013 | MECHANICAL & PERFORMANCE ANALYSIS | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1310 | | Oilfield Services | 777724_Master_Service_Contract Effective_6-6-2018 | MELANCON'S WELDING & REPAIR, LLC | Fieldwood Energy LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts or unexpired leases subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1311 | 11/1/2005 | Joint Development / Venture / Exploration Agreements | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN MERIT ENERGY COMPANY AND STONE ENERGY CORPORATION ET AL | MERIT ENERGY COMPANY AND STONE ENERGY CORPORATION ET AL | Fieldwood Energy LLC, GOM Shell LLC | SS 198 Lease 593, SS 198 Lease G12355 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1312 | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al | Mesa Petroleum as Operator and American Natural Gas Production Co, et al | Fieldwood Energy LLC | PL 13 Lease G03171 | AMCOR ENERGY LLC, ENVEN ENERGY VENTURES, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1313 | | Oilfield Services | Mud, Completion Brine, Cleanout Tools, Solids Handling Equipment | M-I SWACO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1314 | | Non-Oilfield Services | Software Licensing Agreement | MICROSOFT LICENSING, GP | Fieldwood Energy LLC | n.a. | n.a. | $293.97 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1315 | | Oilfield Services | Blast Media | MINERAL TECH LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1316 | 11/7/2005 | Unit Agreement and/or Unit Operating Agreement | Amendment to Unit Agreement, Vioaca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007, but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) | Minerals Management Service | | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1317 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | | EB 160 Lease G02647 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1318 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | | EB 161 Lease G02648 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1319 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1320 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of California and Amoco Production Company, as amended | | EB 159 Lease G02646 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1321 | 1/1/1988 | Marketing - Connection Agreement | OFFSHORE TIE-IN AGREEMENT EWING BANK 826 PIPELINE SYSTEM TIE-IN TO SHELL PIPE LINE CORPORATION'S COUGAR PIPELINE BETWEEN MOBILE EXPLORATION & PRODUCING U.S. INC., KERR-MCGEE PIPELINE CORP., AND SOHIO PIPELINE (document just shows 1988) | MOBILE EXPLORATION & PRODUCING U.S. INC., KERR-MCGEE PIPELINE CORP., AND SOHIO PIPELINE | | EW 826 Lease G05800 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1322 | 5/27/1968 | Joint Operating Agreement - Other | OA by and between Mobil Oil Corporation and Union Oil Company of California | Mobil Oil Corporation and Union Oil Company of California | | BA A102 Lease G01754 | | $0.00 | Assume and Allocate Pursuant to divisive mergers | | | | x |
| 1323 | | Oilfield Services | 700363_Master Services Agreement dated effective 02/06/2014 | MODERN AMERICAN RECYCLING SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1324 | | Oilfield Services | 777951_Master Services Agreement dated effective 03/29/2019 | MONCLA WORKOVER & DRILLING OPERATIONS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1325 | 12/31/2013 | Property Participation & Exchange Agreements | First Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters | Monforte Exploration L.L.C. | Fieldwood Energy LLC | SM 48 Lease 786 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1326 | 5/14/2015 | Property Participation & Exchange Agreements | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.; Second Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters | Monforte Exploration L.L.C. | Fieldwood Energy LLC | SM 48 Lease 786 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1327 | 9/13/2016 | Other Misc. | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C. | Monforte Exploration L.L.C. | Fieldwood Energy LLC | SS 271 Lease G01038 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1328 | 12/12/2019 | Acquisition / PSA / Purchase or Sale Agreement | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.; SS 274 A Platform to El 259 A Platform | Monforte Exploration L.L.C. | Fieldwood Energy LLC | SS 274 Lease G01039 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1329 | 12/12/2019 | Pipeline Purchase Agreement | Terms and condition of sale of pipeline and associated equipment | Monforte Exploration L.L.C. | Fieldwood Energy LLC | SS 274 Lease G01039 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1330 | | Oilfield Services | 515485_Master Services Agreement dated effective 11/01/2013 | MONTCO OFFSHORE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1331 | | Oilfield Services | 558865_Master Services Agreement dated effective 12/03/2013 | MONTCO OILFIELD CONTRACTORS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1332 | 5/19/2016 | Letter Agreement - Other Land | Letter Agreement governing the Transition of Operatorship from Murphy Exploration and Production Company - USA to Noble Energy, Inc dated 19 May 2016 | MURPHY EXPLORATION AND PRODUCTION COMPANY - USA | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1333 | 1/10/2020 | Non-Oilfield Services | Consulting Agreement | N DARLENE WALKER & ASSOCIATES | Fieldwood Energy LLC | n.a. | n.a. | $8,750.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1334 | 1/10/2020 | Non-Oilfield Services | Consulting Agreement | N DARLENE WALKER & ASSOCIATES | Fieldwood Energy LLC | n.a. | n.a. | $8,750.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1335 | | Oilfield Services | Daywork Drilling Contract dated 3-11-2014 | NABORS OFFSHORE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1336 | | Oilfield Services | 528377_Master Services Agreement dated effective 11/01/2013; Amendment dated effective 02/01/2020 | NALCO COMPANY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1337 | | Oilfield Services | 556324_Master Services Agreement dated effective 11/01/2013 | NATIONAL OILWELL VARCO, LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1338 | | Oilfield Services | 777952_Master Services Agreement dated effective 05/30/2019 | NATIONAL RESPONSE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1339 | | Oilfield Services | 701142_Master Services Agreement dated effective 11/14/2016 | NEO PRODUCTS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1340 | | Non-Oilfield Services | Perpetual Software License Agreement | NEURALOG LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1341 | | Oilfield Services | 546928_Master Services Agreement dated effective 10/01/2014 | NEW TECH GLOBAL VENTURES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1342 | 2/28/2007 | Farmout Agreement | FO eff. 2/28/07 by and between Newfield and Apache | Newfield and Apache | Fieldwood Energy LLC | EI 346 Lease G14482 | BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1343 | 6/1/2004 | Operating Agreement - Other | Operating Agreement eff. 6-1-04 by and between Newfield Exploration Co & Triumph Energy LLC | Newfield Exploration Co & Triumph Energy LLC | Fieldwood Energy LLC | WD 133 Lease G01106 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1344 | 5/2/2012 | Confidentiality Agreements / AMI and Related Consents | Letter, dated May 2, 2012 between Newfield Exploration Company and Chevron U.S.A. Inc., being a waiver of confidentiality provision grant by Chevron in favor of Newfield; | Newfield Exploration Company and Chevron U.S.A. Inc. | Fieldwood Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1345 | 4/19/2004 | Farmout Agreement | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 | Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 | Fieldwood Offshore LLC | WC 72 Lease G23735 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1346 | 11/18/2004 | Letter Agreement - Other Land | Letter Agreement, dated November 18, 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, amending the terms of Letter Agreement dated October 8, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terms, Vioaca knoll 251 "A" Platform, Cadillac Prospect and any Other Future Non-unit Production; | Newfield Exploration Company, Chevron U.S.A. Inc., Noble Energy, Inc. | Fieldwood Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1347 | | Oilfield Services | Wireline Tools and Parts | NEWLIN RENTAL-REPAIR & SUPPLIES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, et al.**
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company systems records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1348 | | Oilfield Services | 501111_Master Services Agreement dated effective 11/01/2013 | NEWMAN CRANE SERVICE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1349 | | Oilfield Services | Gas and Gas Cylinders, Welding Supply | NI WELDING SUPPLY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1350 | 4/2/2008 | Confidentiality Agreements / AMI and Related Consents | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN NOBLE ENERGY INC , DAVIS OFFSHORE, L.P. AND STATOILHYDRO USA E&P INC | NOBLE ENERGY INC , DAVIS OFFSHORE, L.P. AND STATOILHYDRO USA E&P INC | Fieldwood Energy Offshore LLC | GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1351 | 5/9/2008 | Confidentiality Agreements / AMI and Related Consents | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN NOBLE ENERGY INC , DAVIS OFFSHORE, L.P. AND STATOILHYDRO USA E&P INC | NOBLE ENERGY INC , DAVIS OFFSHORE, L.P. AND STATOILHYDRO USA E&P INC | Fieldwood Energy Offshore LLC | GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1352 | 12/20/2012 | Letter Agreement - Other Land | Letter Agreement by and between Noble Energy Inc and Anadarko Petroleum Corporation dated 20 Dec 2012 | Noble Energy Inc and Anadarko Petroleum Corporation dated 20 Dec 2012 | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1353 | 5/30/2008 | Confidentiality Agreements / AMI and Related Consents | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN NOBLE ENERGY INC AND DAVIS OFFSHORE LP | NOBLE ENERGY INC AND DAVIS OFFSHORE LP, PIONEER NTAURAL RESOURCES USA INC, DAVIS OFFSHORE, L.P. AND STEPHENS PRODUCTION COMPANY, LLC. | Fieldwood Energy Offshore LLC | NE/4 GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1354 | 5/4/2015 | Letter Agreement - Other Land | by and between Fieldwood Energy LLC and : Oil Test Sampling Agreement by and between Noble Energy Inc and Deep Gulf Energy III, LLC for samples of Santiago/Santa Cruz Well to be shared with MC 563 Parties | | Fieldwood Energy LLC | MC 519 Lease G27278, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1355 | 3/20/2008 | Property Participation & Exchange Agreements | Participation Agreement by and between Noble Energy Inc and Marathon Oil Company for the drilling of the MC 948 #1 Well | Noble Energy Inc and Marathon Oil Company for the drilling of the MC 948 #1 Well | Fieldwood Energy LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1356 | 8/28/2014 | Letter Agreement - Other Land | Letter Agreement by and between Noble Energy Inc and Murphy dated 28 Aug 14 covering certain operational issues at Thunderhawk | Noble Energy Inc and Murphy | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343, MC 782 Lease G33757 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1357 | 2/26/2015 | Letter Agreement - Other Land | Letter Agreement by and between Noble Energy Inc and Murphy dated 11 Jul 16 governing certain operational issues at Thunderhawk | Noble Energy Inc and Murphy dated 11 Jul 16 governing certain operational issues at Thunderhawk | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 736, MC 738, MC 742 Lease G32343, MC 782 Lease G33757 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1358 | 5/24/2016 | Letter Agreement - Other Land | Letter Agreement by and between Noble Energy Inc and Murphy dated 11 Jul 16 governing certain operational issues at Thunderhawk | Noble Energy Inc and Murphy dated 11 Jul 16 governing certain operational issues at Thunderhawk | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1359 | 11/1/2005 | Ownership & Partnership Agreements | Partnership agreement by and between Noble Energy Inc and Samson Offshore Company covering multiple blocks in DWGOM dated 1 Nov 2005 as amended: (a) First Amendment dated 22 Aug 06 and (b) Second Amendment dated 20 Mar 07 and © Third Amendment dated 21 Mar 07 and (d) Fourth Amendment dated 1 Apr 07 (AMI) | Noble Energy Inc and Samson Offshore Company | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| | | | Amended 1 Sep 07) | | | | | | | | | | |
| 1360 | 2/2/2009 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN NOBLE ENERGY INC, DAVIS OFFSHORE, L.P., ENERGY PARTNERS, LTD AND STEPHENS PRODUCTION COMPANY, LLC | NOBLE ENERGY INC, DAVIS OFFSHORE, L.P., ENERGY PARTNERS, LTD AND STEPHENS PRODUCTION COMPANY, LLC | Fieldwood Energy Offshore LLC | NE/4 GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1361 | 6/17/2009 | Farmout Agreement | Farm out agreement by and between Noble Energy Inc, Samson Offshore Company and Exxon Mobil Exploration Company where XOM assigns GC 767 in return for well commitment and ORRI on GC 678, 680, 723, 724 and 768 (below 17,000 to 100' below commitment well). Commitment well drilled on GC 723 | Noble Energy Inc, Samson Offshore Company and Exxon Mobil Exploration Company | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1362 | 6/29/2012 | Letter Agreement - JOA | LETTER AGREEMENT BY AND BETWEEN NOBLE ENERGY INC, STATOIL, USA E&P INC., ENERGY PARTNERS LTD., CALYPSO EXPLORATION LLC AND DAVIS OFFSHORE, L.P. Establishment of the Talon Shallow JOA and Talon Deep JOA Exhibit "A" Substitution page | NOBLE ENERGY INC, STATOIL, USA E&P INC., ENERGY PARTNERS LTD., CALYPSO EXPLORATION LLC AND DAVIS OFFSHORE, L.P. | Fieldwood Energy Offshore LLC | GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1363 | 8/28/2014 | Facilities & Tie-In Agreements | Bridging Agreement by and between Noble Energy Inc, W+T Energy VI, LLC, ILX Prospect Dantzler, LLC and Ridgewood Dantzler bridging responsibilities of Loop Operator and Field Operated dated 28 Aug 14 | Noble Energy Inc, W+T Energy VI, LLC, ILX Prospect Dantzler, LLC and Ridgewood Dantzler bridging responsibilities of Loop Operator and Field Operated dated 28 Aug 14 | | MC 782 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1364 | 8/15/2014 | Assignment of Wellbores | by and between Fieldwood Energy LLC and W & T Offshore, Inc. : RE: High Island 129 No. 12 Well Assignment | Noble Energy Inc, W+T Energy VI, LLC, ILX Prospect Dantzler, LLC, Ridgewood Dantzler, Houston Energy Deepwater Ventures V, LLC, Red Willow Offshore, LLC | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1365 | 10/22/2008 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN NOBLE ENERGY INC , DAVIS OFFSHORE, L.P., ENERGY PARTNERS, LTDE AND STEPHENS PRODUCTION COMPANY, LLC | NOBLE ENERGY INC , DAVIS OFFSHORE, L.P., ENERGY PARTNERS, LTDE AND STEPHENS PRODUCTION COMPANY, LLC | Fieldwood Energy Offshore LLC | NE/4 GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1366 | 1/1/2013 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement, Gunfint Prospect, Gunfint Unit, Offshore Louisiana, by and among Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.), Samson Offshore, LLC, Marathon Oil Company, BP Exploration & Production Inc., and BHP Billiton Petroleum (Deepwater) Inc., dated effective January 1, 2013, including any memorandums or financial statements of the same, as amended by: A. Ratification and First Amendment of the MC 948 Unit Operating Agreement dated effective January 1, 2013 by and among Noble Energy, Inc., Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company. B. Second Amendment to the MC 948 Unit Operating Agreement dated May 23, 2013 by and between Noble Energy Inc., Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company. C. Ratification and Third Amendment to the MC 948 Unit Operating Agreement dated effective November 30, 2018 by and between Fieldwood Energy LLC, Samson Offshore Mapleleaf, LLC and Ecopetrol America Inc. | Noble Energy, Inc, Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company | Fieldwood Energy LLC | MC 948 S/2,S/2N/2 Lease G28030, MC 949 S/2,S/2N/2 Lease G32363, MC 992 N/2 Lease G24133, MC 993 N/2 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1367 | 4/1/2011 | Marketing - Transportation | Nautilus Transportation Agreement between Noble Energy, Inc and Nautilus Pipeline Company, LLC | Noble Energy, Inc and Nautilus Pipeline Company, LLC | | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1368 | 10/10/2014 | Assignment of ORRI | Assignment Agreement dated 10 Oct 14 by and between Noble Energy, Inc, BP Exploration and Production, Inc and Houston Energy Deepwater Ventures I, LLC whereby Noble and BP assigned their combined 69.75% WI from 0-19,000'TVDSS on MC 563 in return for 2% (proportionately reduced) ORRI in S Santa Cruz Well and retained back in rights for its WI in 19,001-99,999 TVDSS on MC 563 and Noble/FW retained operatorship in such 19,001-99,999 TVDSS interval if back in was exercised | Noble Energy, Inc, BP Exploration and Production, Inc and Houston Energy Deepwater Ventures I, LLC | Fieldwood Energy LLC | MC 563 Lease G21176 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Applicable Entity**

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the documents relating to any Plan or Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1369 | 1/1/2009 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement (Offshore Operating Agreement) dated dated effective January 1, 2009, originally by and between Noble Energy, Inc. (as predecessor in interest of Fieldwood), as Operator, and BP, Red Willow and HE&D Offshore, L.P. as Non-Operators, as amended (a)by that certain First Amendment of the Unit Operating Agreement and Establishment of Lease Offshore Operating Agreements, dated effective as of October 10, 2014, by and among BP, Red Willow, HEDV, Noble Energy, Inc. (as predecessor in interest of Fieldwood), Deep Gulf Energy III, LLC, Ridgewood South Santa Cruz, LLC and ILX Prospect South Santa Cruz, LLC and (b)by that certain Second Amendment of the Offshore Operating Agreement, dated effective as of October 15, 2018, by and among BP, Red Willow, HEDV and Fieldwood and (c) by by that certain Third Amendment of the Offshore Operating Agreement, dated effective as of 1 May 2019, by and among BP, Red Willow, HEDV and Fieldwood and (d) by that certain Fourth Amendment of the Offshore Operating AGreement, dated effective as of 31 MAy 2019 by and among Red Willow, HEDV and Fieldwood. | Noble Energy, Inc. (as predecessor in interest of Fieldwood), as Operator, and BP, Red Willow and HE&D Offshore, L.P. as Non-Operators | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1370 | 12/10/2013 | Facilities & Tie-In Agreements | Authorization Agreement for Tie-Back Development by and among Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.), Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company effective December 10, 2013 as amended by that Renewed and Restated Authorization Agreement for Tie-Back Development dated effective as of January 31, 2014 by and among Noble Energy, Inc., Ecopetrol America Inc., Samson Offshore Maplekuf, LLC, and Marathon Oil Company. | Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.), Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1371 | 10/1/2015 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement made and entered into effective October 1, 2015, among Noble Energy, Inc. (the "Unit Operator"; Fieldwood is successor-in-interest to Noble Energy, Inc.), W&T Energy VI, LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures V, LLC | Noble Energy, Inc. (the "Unit Operator"; Fieldwood is successor-in-interest to Noble Energy, Inc.), W&T Energy VI, LLC, and Houston Energy Deepwater Ventures V, LLC | Fieldwood Energy LLC | MC 697 SE/4 SE/4, E/2 NE/4 SE/4 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1372 | 12/20/2005 | Confidentiality Agreement / AMI and Related Consents | Letter Agreement, dated December 20, 2005, between Noble Energy, Inc. and Chevron U.S.A. Inc., being a consent.to.disclose confidential data | Noble Energy, Inc. and Chevron U.S.A. Inc., being a consent.to.disclose confidential data | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and assign Pursuant to Divisive Mergers | x | | | x |
| 1373 | 3/7/2003 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN NOBLE ENERGY, INC., STATOILHYDRO USA E&P INC, STEPHENS PRODUCTION COMPANY AND DAVIS OFFSHORE, L.P. | NOBLE ENERGY, INC., STATOILHYDRO USA E&P INC, STEPHENS PRODUCTION COMPANY AND DAVIS OFFSHORE, L.P. | Fieldwood Energy Offshore LLC | GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1374 | 8/1/2016 | Unit Agreement and/or Unit Operating Agreement | Amendment No. 1 to Big Bend Prospect Offshore Operating Agreement and Unit Operating Agreement, Big Bend Prospect, MC 698 Unit by and between Noble Energy, Inc., W & T Energy VI, LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures V, LLC | Noble Energy, Inc., W & T Energy VI, LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures V, LLC | Fieldwood Energy Offshore LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1375 | 4/2/2012 | Other Notices | NOTICE AGREEMENT BY AND BETWEEN NOBLE ENERGY, INC.,STEPHENS PRODUCTION COMPANY AND DAVIS OFFSHORE, L.P. AND ENERGY PARTNERS LTD | NOBLE ENERGY, INC.,STEPHENS PRODUCTION COMPANY AND DAVIS OFFSHORE, L.P. AND ENERGY PARTNERS LTD | Fieldwood Energy Offshore LLC | NE/4 GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1376 | 12/11/2008 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN NOBLE ENERGY, INC.,STEPHENS PRODUCTION COMPANY, ENERGY PARTNERS, LTD. AND DAVIS OFFSHORE, L.P. | NOBLE ENERGY, INC.,STEPHENS PRODUCTION COMPANY, ENERGY PARTNERS, LTD. AND DAVIS OFFSHORE, L.P. | Fieldwood Energy Offshore LLC | NE/4 GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1377 | 6/1/1994 | Joint Operating Agreement | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. | NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. | Fieldwood Energy Offshore LLC | SM 280 Lease G14456 | MP GULF OF MEXICO, LLC | $0.00 | Assume and assign Pursuant to Divisive Mergers | x | | | |
| 1378 | 10/19/1994 | Joint Development / Venture / Exploration Agreements | Joint Venture Development Agreement, dated October 19,1994", between Norcen Explorer, Inc. and Texaco Exploration and Production, Inc. forming a working-interest unit comprising portions of Ship .ShOperating Agreement Block 200 and OCS-G 1523.-Ship .ShOperating Agreement Block 207. | Norcen Explorer, Inc. and Texaco Exploration and Production, Inc. | Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and assign Pursuant to Divisive Mergers | x | | | |
| 1379 | 4/6/1995 | Joint Development / Venture / Exploration Agreements | Amendment to Joint Venture Development Agreement, dated April 6, 1995, between Norcen. Explorer, Inc., Texaco Exploration and Production, Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration B Producing Southeast Inc., and Hunt Oil Company, covering; all ofBlocks.206 and 207 Ship ShOperating Agreement Area. | Norcen. Explorer, Inc., Texaco Exploration and Production, Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration | Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and assign Pursuant to Divisive Mergers | x | | | x |
| 1380 | 11/16/1994 | Joint Development / Venture / Exploration Agreements | Joint Venture Development Agreement, dated November 16""+1994, between Norcen.Explorer, Inc., Texaco Exploration and? Production, Inc., Industries.,TheGeorge R. Brown Partnership; JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration SoProducingSoutheast Inc.,-and Hunt Oil Company,-covering all of Blocks 206 and 207 Ship ShOperating Agreement Area. | Norcen.Explorer, Inc., Texaco Exploration and Production, Inc., Industries, The George R. Brown Partnership; JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration | Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and assign Pursuant to Divisive Mergers | x | | | |
| 1381 | | Oilfield Services | 540735_Master Services Agreement dated effective 11/11/2013 | NORD-SUD SHIPPING, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1382 | | Oilfield Services | 777653_Master_Service_Contract Effective_6/28/2018 | NORSAFE MARINE & OFFSHORE SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1383 | 5/1/1982 | Ownership & Partnership Agreements | Terms for construction and operation of the facility and allocation of commingled condensate - Operated by Northern Natural Gas Company | Northern Natural Gas Company | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1384 | 11/1/2005 | Other Misc. | Partition and Redemption Agmt. dated 11-1-2005 b/b Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. | Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1385 | 7/7/2008 | Letter Agreement - Other Land | VR 332 AG Letter Agmt dated July 7, 2008 b/b Northstar Interests, L.C. and Dynamic Offshore Resources, LLC | Northstar Interests, L.C. and Dynamic Offshore Resources, LLC | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1386 | 6/1/2014 | Acquisition / PSA / Other Purchase or Sale Arrangements | by and between Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co.HIPS 13-III | Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co; NW Pipeline, Inc. | Fieldwood Energy Offshore LLC | HI A-573 Lease G02393, HI A-382 Lease G02757, HI A-572 Lease G02392, HI A-571 Lease G02754, HI A-596 Lease G02722, HI A-531 Lease G02696, BA A-105 Lease G01757, WC 163 Lease G05299 | ERA HELICOPTERS INC. | $0.00 | Assume and allocate Pursuant to Divisive Mergers | x | | | x |
| 1387 | | Oilfield Services | 701064_Jonder dated effective 02/14/2019 | NOV PROCESS & FLOW TECHNOLOGIES US, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1388 | 1/1/1991 | Operating Agreement - Other | b/b NW Mutual, Hardy and Unocal | b/b NW Mutual, Hardy and Unocal | Fieldwood Energy LLC | BA-A 102 Lease G01754, BA-A 105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and assign Pursuant to Divisive Mergers | x | | | x |
| 1389 | | Oilfield Services | 701100_Master Services Agreement dated effective 04/29/2016 | OCC-MED OF LAFAYETTE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1390 | | Oilfield Services | 777653_Master Services Agreement dated effective 05/21/2018 | OCEAN EDGE SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1391 | 6/1/1999 | Confidentiality Agreement / AMI and Related Consents | AREA OF MUTUAL INTEREST BY AND BETWEEN OCEAN ENERGY INC. AND DUKE ENERGY HYDROCARBONS, LLC | OCEAN ENERGY INC. AND DUKE ENERGY HYDROCARBONS, LLC | Fieldwood Energy LLC | EI 126 Lease 52 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1392 | 2/9/1999 | Joint Operating Agreement | Offshore Operating Agreement, dated February 9, 1999, between Ocean Energy, Inc. and Shell Offshore Inc., covering Vermilion 195, 196 and 207, as amended December 23, 1999 by that certain Letter Agreement regarding the sale of properties to McMoran Oil & Gas LLC, and further amended August 22, 2000, December 31, 2001 and September 15, 2010. | Ocean Energy, Inc., Shell Offshore Inc., McMoran Oil | Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | VR 196 Lease G19760, VR 207 Lease G19761 | HALLIBURTON ENERGY SERV INC; ARENA ENERGY LP, ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1393 | | Oilfield Services | 553294_Master_Service_Contract Effective_4-22-2015 | OCEAN FLOW INTERNATIONAL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents") shall control.

|  |  |  |  |  |  |  |  |  | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description [?][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 1394 |  | Oilfield Services | Master Services Agreement dated effective 11/05/2013; Amendment dated effective 01/01/2015 | OCEANEERING INTERNATIONAL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1395 | 3/1/1998 | Termination / Ratification and Joinder of Operating or Other Agreements | Ratification and Joinder by and between OEI & SOI | OEI & SOI |  | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1396 |  | Oilfield Services | 503720_Master Services Agreement dated effective 11/01/2013 | OFFSHORE ENERGY SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1397 |  | Oilfield Services | 513875_Master Services Agreement dated effective 11/01/2013 | OFFSHORE EQUIPMENT SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 1398 |  | Oilfield Services | 541788_Master Services Agreement dated effective 11/01/2013 | OFFSHORE SERVICES OF ACADIANA LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1399 | 7/31/2008 | Articles of Merger | Articles of Merger by and between Offshore Shelf LLC and W&T Offshore, Inc. ; Pursuant to Plan of Merger | Offshore Shelf LLC and W&T Offshore, Inc. |  | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1400 |  | Oilfield Services | 546893_Master Services Agreement dated effective 09/20/2016 | OFFSHORE TECHNICAL COMPLIANCE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1401 |  | Oilfield Services | 700682_Master Services Agreement dated effective 03/24/2014 | OFFSHORE TECHNICAL SOLUTIONS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 1402 |  | Oilfield Services | 700271_Master Services Agreement dated effective 12/17/2018 | OIL & GAS EVALUATIONS AND CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1403 | 7/17/2013 | Non-Oilfield Services | Software Agreement, End User Support Agreement, DocVue Product Schedule | OIL & GAS INFORMATIONS SYSTEMS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1404 |  | Oilfield Services | 700364_Master Services Agreement dated effective 01/01/2014 | OIL STATES QCS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1405 |  | Oilfield Services | 777886_Master Services Agreement dated effective 01/28/2019 | OLIVIER INTERNATIONAL, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1406 |  | Oilfield Services | Spill Response - GTIB Remediation Work in '14 / Early '15, OSRO | OMI ENVIRONMENTAL SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1407 |  | Oilfield Services | Joinder to Master Services Contract dated November 19, 2018 | OneSubea LLC | Fieldwood Energy, LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1408 |  | Oilfield Services | 700966_Joinder dated effective 11/19/2018 | ONESUBSEA LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1409 | 1/4/2007 | Operating Agreement - Other | Operating Agreement as Amended | Operating Agreement as Amended |  | SM 44 Lease G23840 |  | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 1410 | 5/14/2014 | Non-Oilfield Services | Perpetual Software License Agreement | OPPORTUNE LLP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1411 | 5/31/2014 | Non-Oilfield Services | Perpetual Software License/Master Agreement | OPPORTUNE LLP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1412 |  | Non-Oilfield Services | Consulting Agreement; Engagement Letter | OPPORTUNE LLP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1413 | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended | Omoco Natural Resources | Fieldwood Energy LLC | VR 261 Lease G03328 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  | x |
| 1414 |  | Non-Oilfield Services | Perpetual Software License Agreement | OSIsoft LLC | Fieldwood Energy LLC | n.a. | n.a. | $5,221.75 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1415 |  | Oilfield Services | GC 65 PI Data Software Company | OSIsoft LLC | Fieldwood Energy LLC | n.a. | n.a. | $5,221.75 | Assume and Allocate to Credit Bid Purchaser |  | x |  |  |
| 1416 | 12/2/1985 | Marketing - Construction, Operations, Management, Ownership Agreements | Governs the Ownership and Operations of the Producers' Facility. The Producers' Facility consists of assets owned by Producers, as well as those assets co-owned by the Producers and Owners. Fieldwood, as the designated Producers' Representive, represents th by and between Fieldwood Energy LLC and | Owners and Producers of Sabine Pass Facility |  | SA 10 |  | $0.00 | Assume and allocate pursuant to divisive mergers | x |  |  |  |
| 1417 | 11/1/1997 | Joint Operating Agreement | Joint Operating Agreement, dated effective January 1,1997, between OXY USA Inc., as Operator, Texaco Exploration and Production Inc. and Sun Operating Limited Partnership, for Brazos Block A-133. | OXY USA Inc., as Operator, Texaco Exploration and Production Inc. and Sun Operating Limited Partnership, for Brazos Block A-133. |  | BA-A133 Lease G02665 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  | x |
| 1418 | 9/6/2019 | Non-Oilfield Services | Perpetual Software License Agreement | P2 ENERGY SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $202,808.97 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1419 | 10/15/2018 | Non-Oilfield Services | Consulting Agreement | PAINTMIRE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1420 |  | Non-Oilfield Services | Data subscription agreement | PALEO DATA | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1421 |  | Non-Oilfield Services | Perpetual Software License Agreement | PANDELL TECHNOLOGY USA CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $7,617.47 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1422 | 5/16/2019 | Letter Agreement - Operating Agreement | Letter Agreement Fieldwood Energy LLC and Panther Pipeline, LLC; Letter Agreement Matagorda Operating Agreement MI 518/519 with regard to natural gas pipeline work. | Panther Pipeline, LLC | Fieldwood Energy LLC | MI 518 Lease G05169 |  | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 1423 | 2/1/2016 | Non-Oilfield Services | Consulting Agreement | PARADIGM | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1424 |  | Oilfield Services | Industrial Air Filters | PARKER HANNIFIN | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1425 |  | Oilfield Services | BOP Rental, Downhole tools | PATTERSON RENTAL TOOLS, PATTERSON FISHING TOO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1426 |  | Oilfield Services | 555709_Rental Agreement dated effective 02/11/2014 | PAWS ENERGY SERVICES INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1427 |  | Oilfield Services | 778044_Master_Rental_Agreement dated 6-27-2020 | PELICAN WASTE AND DEBRIS LLC | Fieldwood Energy LLC | n.a. | n.a. | $104.19 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1428 |  | Oilfield Services | 700604_Master_Service_Contract Effective_7-28-2015 | PENINSULA MARINE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1429 | 5/17/1999 | Farmout Agreement | by and between PennzEnergy Exploration and Production L.L.C. and Aviara Energy Corporation | PennzEnergy Exploration and Production L.L.C. and Aviara Energy Corporation | | EI 313 Lease G02608 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 1430 | 2/10/1994 | Joint Development / Venture / Exploration Agreements | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999 | PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA | Fieldwood Offshore LLC | EI 53 Lease 479 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x |  |  |  |
| 1431 |  | Oilfield Services | 700471_Master_Service_Contract Effective_07-2-2019 | PERC ENGINEERING, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1432 |  | Oilfield Services | 777953_Master Services Agreement dated effective 12/04/2018 | PETRAM CONSULTING, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1433 |  | Oilfield Services | Pipe Supplier | PETRO AMIGOS SUPPLY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1434 | 1/7/2016 | Other | Contract for the Extraction of Hydrocarbons under the Production Sharing Modality - Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Petrobal Upstream Delta 1, S.A. de C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1435 |  | Oilfield Services | 777567_Master Services Agreement dated effective 02/08/2018 | PETROLEUM CO-ORDINATORS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1436 |  | Non-Oilfield Services | Consulting Agreement | PETROLEUM EXPERTS, INC. | Fieldwood Energy LLC | n.a. | n.a. | $41,309.38 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1437 |  | Oilfield Services | PHI 2019-2020 Pricing Agreement (4); Ninth Amendment dated 04/22/2020 | PETROLEUM HELICOPTERS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1438 | 7/24/2018 | Non-Oilfield Services | Consulting Agreement | Petrophysical Applications International, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1439 |  | Non-Oilfield Services | Consulting Agreement; Subscription License Agreement | PETROPHYSICAL SOLUTIONS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1440 | 11/10/2017 | Non-Oilfield Services | Master Consulting Agreement | PETROPLAN US LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |
| 1441 | 7/15/2000 | Joint Operating Agreement | Operating Agreement eff. 7-15-00 b/h Petroquest Energy One, L.L.C. and LLOG Exploration and Production Company | Petroquest Energy One, L.L.C and LLOG Exploration and Production Company | Fieldwood Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |  | x |  |  |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1442 | 1/12/2001 | Property Participation & Exchange Agreements | Participation Agreement by and between PetroQuest Energy One, L.L.C. and Challenge Minerals Inc; Stephens Production Company, LLC : Exploration and Development of contract areas including SS 79 | PetroQuest Energy One, L.L.C. and Challenge Minerals Inc; Stephens Production Company, LLC | | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1443 | 7/15/2000 | Property Participation & Exchange Agreements | Participation Agreement by and between PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company | PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company | | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1444 | 1/12/2001 | Joint Operating Agreement | Joinder and Ratification Agreement by and between PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company; Challenter Minerals Inc.; GMT, Inc.; Stephens Production Company, L.L.C. ; Joinder and Ratification to 07/15/2000 JOA | PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company; Challenter Minerals Inc.; GMT, Inc.; Stephens Production Company, L.L.C. | | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1445 | | Oilfield Services | 547503_PO Terms & Conditions dated effective 07/24/2018 | PETROQUIP ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1446 | | Oilfield Services | Pipeline Repair Clamps | PETROQUIP INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1447 | | Non-Oilfield Services | Perpetual Software License Agreement | Petrosmmic Software | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1448 | 10/1/2014 | Other Services Agreements | MOU | PetroSkills (OGCI) | | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1449 | | Oilfield Services | Fishing Tools (Formerly Extreme Energy Services) | PETROSTAR SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1450 | | Oilfield Services | 777661_Master_Service_Contract Effective_12-19-2019 | PETROSTREAM LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1451 | | Oilfield Services | 700006_Master Services Agreement dated effective 01/01/2013 | PHARMASAFE INDUSTRIAL SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1452 | | Non-Oilfield Services | Perpetual Software License Agreement | Phi Helipass, Llc | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1453 | | Oilfield Services | Personnel Check-in, Cargo Processing, Etc., at Heliparts, Marine Ports, and Other Ports | PHI HELIPASS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1454 | | Oilfield Services | 700975_Master Services Agreement dated effective 06/08/2015 | PHOENIX INTERNATIONAL HOLDING, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1455 | 8/27/2008 | Farmout Agreement | FARMOUT AGREEMENT BY AND BETWEEN PIESCES ENERGY LLC AND APACHE CORPORATION | PIESCES ENERGY LLC AND APACHE CORPORATION | Fieldwood Energy LLC | ST 291 Lease G16455 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1456 | 3/7/2019 | Other | Second Amendment to Standard Lease Agreement | PINHOOK TOWER | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1457 | 4/15/2017 | Other | Standard Lease Agreement | PINHOOK TOWER | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1458 | 5/1/2018 | Other | Amendment to Standard Lease Agreement | PINHOOK TOWER | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1459 | | Oilfield Services | Facility and Structural Engineering for Construction Dept (Topside) | PINNACLE PROJECT SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1460 | | Oilfield Services | Slickline and E-line, Coil Tubing Units, Well Servicing | PIONEER WIRELINE SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1461 | | Oilfield Services | Pipe Supplier | PIPECO SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1462 | 4/20/2017 | Other | PitneyBowes Lease Agreement (0040071677) | Pitney Bowes Postage By Phone | Fieldwood Energy LLC | n.a. | n.a. | $1,126.96 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1463 | 8/6/2018 | Other | PitneyBowes Lease Agreement (0240047002) | Pitney Bowes Postage By Phone | Fieldwood Energy LLC | n.a. | n.a. | $1,126.96 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1464 | | Non-Oilfield Services | Agreement for postage for machines in Houston and Lafayette | PITNEY BOWES POSTAGE BY PHONE | Fieldwood Energy LLC | n.a. | n.a. | $545.86 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1465 | 9/2/1992 | Surface Lease | PLAQUEMINE PARISH GOVERNMENT 5-92-1 SLR33 | PLAQUEMINE PARISH GOVERNMENT | | GRANDBAY / MP140 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1466 | 9/14/1992 | Surface Lease | SURFACE LEASE AGREEMENT BETWEEN PLAQUEMINES PARISH GOVERNMENT AS LESSOR AND CHEVRON PIPELINE COMPANY; LESSEE FOR MP 140 | PLAQUEMINES PARISH GOVERNMENT AS LESSOR AND CHEVRON PIPELINE COMPANY, LESSEE FOR MP 140 | | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1467 | | Oilfield Services | 777972_Master Services Agreement dated effective 11/01/2019 | PMB SAFETLY & REGULATORY, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1468 | 7/7/1994 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL | POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL | Fieldwood Energy LLC | EI 330 Lease G02115 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1469 | 5/17/2006 | Marketing - Other | LETTER AGREEMENT, PLATFORM & FACILITIES OWNERSHIP AND ABANDONMENT LIABILITY, EUGENE ISLAND 330 D BY AND BETWEEN POGO PRODUCING COMPANY, APACHE CORPORATION, EXXONMOBIL CORPORATION, MARINER ENERGY RESOURCES, INC. | POGO PRODUCING COMPANY, APACHE CORPORATION, EXXONMOBIL CORPORATION, MARINER ENERGY RESOURCES, INC. | | EI 330 Lease G02115 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1470 | 3/1/1976 | Joint Operating Agreement | Operating Agreement eff. 3-1-76 b/b POGO, Mesa and Mobil, et al | POGO, Mesa and Mobil, et al | Fieldwood Energy LLC | EI 337 Lease G03332, EI 354 Lease G10752 | RIDGEWOOD ENERGY CORPORATION; RIDGEWOOD ENERGY CORPORATION, COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1471 | 1/31/2010 | Other Services Agreements | Preferred Provider Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 31 Jan 2010 | Preferred Provider Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 31 Jan 2010 | Fieldwood Energy Offshore LLC | GC 65GC 108GC 109 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1472 | | Oilfield Services | 500736_Master Services Agreement dated effective 01/01/2014 | PREMIERE, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1473 | | Oilfield Services | 700844_Master_Service_Contract Effective_11-1-2013 | PRIORITY ARTIFICIAL LIFT SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1474 | | Oilfield Services | Wellhead Maintenance and Testing, Valve Repairs | PRO VALVE SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1475 | | Oilfield Services | Pipe, Valves & Fittings | PROCESS PIPING MATERIALS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1476 | | Oilfield Services | 564958_Master Services Agreement dated effective 10/01/2014 | PROCOR CHEMICALS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1477 | 6/1/2012 | Other Services Agreements | Production Technician Services Contract by and between June 1, 2012, as amended yearly | Production Technician Services | | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1478 | | Oilfield Services | 777941_Master Services Agreement dated effective 10/23/2018 | PRODUCTION TECHNOLOGY & SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1479 | 9/1/2013 9/1/2013 | Other Services Agreements | Response Resources Agreement Utilization Agreement | Production Testing Services Inc. | | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1480 | | Oilfield Services | 515220_Master Services Agreement dated effective 02/14/2014 | PROFESSIONAL FLUID SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1481 | | Oilfield Services | 777510_Master Services Agreement dated effective 03/14/2016 | PROFESSIONAL RENTAL TOOLS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1482 | | Oilfield Services | Wireline Rentals | PROFESSIONAL WIRELINE RENTALS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1483 | | Oilfield Services | Machine Shop | PROGRESS MACHINE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1484 | | Oilfield Services | 565442_Master Services Agreement dated effective 02/24/2014 | PROSERV OPERATIONS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1485 | | Oilfield Services | 700472_Master_Service_Contract Effective_2-14-2014 | PROSPER OPERATORS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1486 | | Oilfield Services | Master Service Contract dated July 19, 2019; Amendment dated December 1, 2019 | PROVISIONS ENERGY & MARINE SUPPORT | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation having to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1487 | | Oilfield Services | Pipe Supplier | PYRAMID TUBULAR PRODUCTS LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1488 | | Oilfield Services | 522792_Master Services Agreement dated effective 01/01/2014 | QUALITY CONSTRUCTION & PRODUCTION L | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1489 | | Oilfield Services | 554639_Master Services Agreement dated effective 11/25/2013 | QUALITY ENERGY SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1490 | | Oilfield Services | 506420_Master Services Agreement dated effective 07/08/2014 | QUALITY PREHEAT & PRESSURE WASHERS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1491 | | Oilfield Services | 539026_Master Services Agreement dated effective 11/01/2013 | QUALITY PROCESS SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1492 | | Oilfield Services | Production Operators; Quality Company - Operators, Area 8 | QUALITY PRODUCTION MGMT LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1493 | | Oilfield Services | 777581_PO Terms & Conditions dated effective 04/03/2018 | QUALITY WIRELINE & CABLE INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1494 | | Oilfield Services | 564799_Master Services Agreement dated effective 07/25/2018 | QUEST INTEGRITY USA LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1495 | 7/18/2013 | Non-Oilfield Services | Software Licensing Agreement | QUORUM BUSINESS SOLUTIONS (USA), INC. | Fieldwood Energy LLC | n.a. | n.a. | $57,818.45 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1496 | | Oilfield Services | PO Terms & Conditions | R&R ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1497 | 10/23/2002 | Letter Agreement - Other Land | Letter Agreement, dated October 23, 2002, between Range Resources Corporation and Chevron U.S.A. Inc.,entitled "Annual Reciprocity Notice Regarding Conveyance to Chevron U.S.A. Inc. of Main Pass Block 154, South and East Addition Platform "A" and Two/Wells Thereon, Federal OCS, Offshore Alabama." | Range Resources Corporation and Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | MP 154 Lease G10902 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1498 | 7/12/1998 | Joint Operating Agreement | JOINT OPERATING AGREEMENT DATED JULY 12, 1998 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | PN 883 Lease MF100410, PN 883 Lease MF100411, PN 883 Lease MF100412, PN 883 Lease MF101888, PN 883 Lease MF96148, PN 883 Lease SL96146 | | $0.00 | Assume and allocate Pursuant to Divisive Mergers | x | | | |
| 1499 | 8/5/1999 | Joint Development / Venture / Exploration Agreements | EXPLORATION AGREEMENT DATED AUGUST 5, 1999 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | PN 883 Lease MF100410, PN 883 Lease MF100411, PN 883 Lease MF100412, PN 883 Lease MF101888, PN 883 Lease MF96148, PN 883 Lease SL96146 | | $0.00 | Assume and allocate Pursuant to Divisive Mergers | x | | | |
| 1500 | | Oilfield Services | Spotting Fluid | RAPID DRILLING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1501 | | Oilfield Services | Solid Body Centralizers | RAY OIL TOOL CO. INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1502 | 1/14/2019 | Operating Agreement - Other | Operating Agreement, effective as of January 14, 2019, among Fieldwood Energy Offshore LLC, Red Willow Offshore, LLC, and Talos Energy Offshore LLC (AMI on S/2S/2 GC 156 through 14 Jan 21 in Art 26.8 of Operating Agreement) | Red Willow Offshore; Talos Energy Offshore | Fieldwood Energy Offshore LLC | GC 200 (NW/4 SE/4; SW/4 NE/4; E/2 SE/4 NW/4; S/2 NE/4 NW/4; W/2 E/2 SE/4; NE/4 SW/4 SE/4; SW/4 NW/4 NE/4) Lease G12209 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, WILD WELL CONTROL INC, CHEVRON USA INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1503 | 3/4/2020 | Unit Agreement and/or Unit Operating Agreement | Ratification of GC 244 Unit Agreement by Red Willow Offshore LLC and Talos Energy Offshore dated 4 March 2020 | Red Willow Offshore; Talos Energy Offshore | Fieldwood Energy Offshore LLC | GC 200 (NW/4 SE/4; SW/4 NE/4; E/2 SE/4 NW/4; S/2 NE/4 NW/4; W/2 E/2 SE/4; NE/4 SW/4 SE/4; SW/4 NW/4 NE/4) Lease G12209 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, WILD WELL CONTROL INC, CHEVRON USA INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1504 | | Oilfield Services | Tension Packers | RELIABLE PACKER SALES & SERVICES TOOLS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1505 | | Oilfield Services | Training Provider | RELYON NUTEC USA, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1506 | 1/1/1973 | Operating Agreement - Other | Offshore Operating Agreement* (VR 369/386+) *Unit Operating Agreement supersedes JOperating Agreement 1/1/1973 | Renaissance Offshore, W & T Energy VI, Marathon Oil | Fieldwood Energy LLC | VR 369 lease G02274, VR 386 Lease G02278 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1507 | 12/12/1977 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement (VR 369 Unit Area) 12/12/1977 | Renaissance Offshore, W & T Energy VI, Marathon Oil | Fieldwood Energy LLC | VR 369 Lease G02274 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1508 | 12/23/1977 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement* (VR 369 Unit Area) *UOperating Agreement supersedes JOperating Agreement 12/23/1977 | Renaissance Offshore, W & T Energy VI, Marathon Oil | Fieldwood Energy LLC | VR 369 Lease G02274 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1509 | 8/7/2012 | Master Service Agreement | Master Services Agreement | Rentsys Recovery Services, Inc. | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1510 | | Oilfield Services | Workstrings | RESOURCE RENTAL TOOLS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1511 | 2/10/2019 | Non-Oilfield Services | IT Services Agreement | REVOLUTIONARY SECURITY LLC | Fieldwood Energy LLC | n.a. | n.a. | $178,256.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1512 | 4/1/2007 | Marketing - PHA | RID108101-MP289C-MP275 by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION and RIDGEWOOD ENERGY CORPORATION | RIDGEWOOD ENERGY CORPORATION | Fieldwood Energy LLC | MP 275 Lease G15395 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1513 | | Oilfield Services | 777813_Master Services Agreement dated effective 01/02/2019 | RIG QA INTERNATIONAL INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1514 | | Oilfield Services | 700947_Master_Service_Contract Effective_5-22-2015 | RIGHT HAND OILFIELD ASSOCIATES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1515 | | Oilfield Services | 526151_Master Services Agreement dated effective 01/01/2014; Amendment dated effective 06/28/2018 | RIGNET INC | Fieldwood Energy LLC | n.a. | n.a. | $976,052.20 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1516 | | Oilfield Services | Parts Only | RINO-K&K COMPRESSION, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1517 | | Oilfield Services | Crane Mats | RITTER FOREST PRODUCTS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1518 | | Oilfield Services | 508791-Helicopter Service Agreement Dated 7/17/2014 | RLC, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1519 | 6/15/2001 | Joint Development Agreement | JOINT DEVELOPMENT AGREEMENT EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL, "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B" | RME PETROLEUM COMPANY, W&T OFFSHORE, INC, RME ET AL | Fieldwood Energy Offshore LLC | SM 280 Lease G14456, SM 281 Lease G02600 | MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1520 | | Oilfield Services | 701080_Master_Service_Contract Effective_1-05-2016 | ROGUE INDUSTRIAL GROUP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1521 | Original - 9/1/2017; 1st Amend 5/1/2018; 2nd Amend 3/7/2019 | Non-O&G Real Property Lease / Rental / Sublease Agreements | Lease agreement between Fieldwood and Ronnie White Custom Homes Total Area: Level 7, 8 and 9 Square Footage: 32,543 SF Address: 2014 W Pinhook Road Lafayette, LA 70508 | Ronnie White Custom Homes | Fieldwood Energy LLC | Total Area: Level 7, 8 and 9 Square Footage: 32,543 SF | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1522 | | Oilfield Services | Rowan Amendment (12-18-13) | ROWAN COMPANIES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1523 | | Oilfield Services | Rig Company | ROWAN DRILLING AMERICAS LIMITED | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1524 | | Oilfield Services | Rig Company | ROWAN DRILLING COMPANY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1525 | | Oilfield Services | 511430_Master Services Agreement dated effective 11/01/2013 | ROYAL SERVICE AND RENTALS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1526 | | Other | Engagement Letter | RPS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $1,294,629.12 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1527 | 11/17/2000 | Operating Agreement - Other | Participation Agreement and Operating Agreement 11-17-00 b/b Samedan and Stone | Samedan and Stone | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |

**Fieldwood Energy, LLC, et al.**
**Prepared June 11, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [?][?] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1528 | 9/20/1995 | Operating Agreement - Other | Operating Agreement eff. 9-20-95 b/b Samedan and Walter | Samedan and Walter | Fieldwood Energy LLC | VR 314 Lease G05438, VR 315 Lease G04215 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1529 | 3/1/2002 | Farmout Agreement | Farmout Agmt. off. 3-1-2002 b/b Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) | Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1530 | 6/11/1993 | Joint Operating Agreement | Operating Agreement eff. 6-11-1993 b/b Samedan Oil Corporation and British Borneo Exploration Inc. | Samedan Oil Corporation and British Borneo Exploration Inc., et al | Fieldwood Energy Offshore LLC | VR 332 Lease G09514, VR 333 Lease G14417 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1531 | 6/9/2003 | Project Participation & Exchange Agreements | Participation Agmt. eff. 6-9-2003 b/b Samedan Oil Corporation and CLK Company | Samedan Oil Corporation and CLK Company | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1532 | 1/20/1993 | Joint Operating Agreement | Offshore Operating Agreement, effective January 20, 1993, between Samedan Oil Corporation and Energy Development Corporation, as amended effective February 1, 2011. | Samedan Oil Corporation and Energy Development Corporation | Bandon Oil and Gas, LP; Fieldwood Energy LLC | VR 362 Lease G10687, VR 363 Lease G09522, VR 371 Lease G09524 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1533 | 1/21/1994 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement for the Vioica Knoll .252 Unit, by and between Samedan Oil Corporation, as Operator, and Continental Land &"Fur Co., Inc., dated effective January 21, 1994. Preferential Right to Purchase - 15 Days. (Section 26.2) | Samedan Oil Corporation, as Operator, and Continental Land &"Fur Co., Inc., dated effective January 21, 1994. Preferential Right to Purchase - 15 Days. (Section 26.2) | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1534 | 2/1/1995 | Marketing - Connection Agreement | Lateral Project Agreement between Samedan Oil Corporation, Energy Development Corporation, Shell Offshore, Inc. and Stingray Pipeline Company | Samedan Oil Corporation, Energy Development Corporation, Shell Offshore, Inc. and Stingray Pipeline Company | | VR 371 Lease G09524, VR 362 Lease G10687 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1535 | 2/1/1995 | Marketing - Connection Agreement | Lateral Project Agreement between Samedan Oil Corporation, Energy Development Corporation, Shell Offshore, Inc. and Stingray Pipeline Company | Samedan Oil Corporation, Energy Development Corporation, Shell Offshore, Inc. and Stingray Pipeline Company | | VR 371 Lease G09524, VR 362 Lease G10687 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1536 | 1/19/2000 | Farmout Agreement | Farmout Agreement Samson Offshore Company - Farmor and W&T Offshore, INC.-Farmee - ORRI difference between Lease burdens and 21.67% proportionately reduced. | Samson Offshore Company, W&T Offshore, Inc. | | EC 345 Lease G15156 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1537 | 2/16/2017 | Letter Agreement - Other Land | Letter Establishing Initial Rates by and between Samson Offshore Mapleleaf, LLC and Chevron Pipeline Company dated February 16, 2017. | Samson Offshore Mapleleaf, LLC and Chevron Pipeline Company | | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134, MC 904 Lease G36566, MC 905 Lease G36405 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1538 | | Oilfield Services | Utilities | SAN LEON MUNICIPAL UTILITY DISTRICT | Fieldwood Energy LLC | n.a. | n.a. | $597.80 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1539 | 10/9/1982 | Joint Operating Agreement | Operating Agreement effective October 9, 1982 | Sanare Energy Partners | Fieldwood Energy Offshore LLC | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1540 | 10/12/1987 | Joint Operating Agreement | Joint Operating Agreement effective 10-12-1987 | Sanare Energy Partners | Fieldwood Energy Offshore LLC | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1541 | 10/12/1988 | Joint Operating Agreement | Joint Operating Agreement effective 10-12-1988 | Sanare Energy Partners | Fieldwood Energy Offshore LLC | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1542 | 6/14/2018 | Performance Bond & Supplemental Bonding Agreement | Sanare Energy Partners, LLC is the new principal replacing Northstar Offshore Ventures LLC | Sanare Energy Partners, LLC | Fieldwood Energy LLC | EI 246, Lease 810, EI 267 Lease 812 | | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1543 | | Marketing - Construction, Operations, Management, Ownership Agreements | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to a trunk pipelinesystem owned by High Island Offshore System. This Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and and | Sandridge Offshore, LLC, Enterprise GTM Offshore Operating Company, LLC | Fieldwood Energy Offshore LLC | EB 160 Lease G02647, EB 165 Lease G06280 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1544 | 7/11/2018 | Letter Agreement - Other Land | Joinder Agreement by and between Fieldwood Energy, Noble Energy and SBM Gulf Production, LLC dated 11 April 2018 governing transition from NBL to Fieldwood Operatorship of THK | SBM Gulf Production, LLC | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1545 | | Oilfield Services | 777956_Master Services Agreement dated effective 02/12/2019 | SBS ENERGY SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1546 | | Non-Oilfield Services | Master Services Agreements | SCHLUMBERGER TECHNOLOGY CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1547 | | Oilfield Services | 501538_Master Services Agreement dated effective 11/21/2013 | SCHLUMBERGER TECHNOLOGY CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1548 | 8/1/2017 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy Offshore LLC and SCL Resources, LLC | by and between Fieldwood Energy Offshore LLC and SCL Resources, LLC | Fieldwood Energy Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1549 | 9/19/2017 | Well / Prospect Proposals | by and between Fieldwood Energy Offshore LLC and SCL Resources, LLC: Offer to Purchase SCL Resources, LLC'S interest in GI 94, SS 79, VR 332 and WD 34 | SCL Resources, LLC | Fieldwood Energy Offshore LLC | GI 94 Lease G02163, SS 79 Lease G15277, VR 332 Lease G09514, WD 34 Lease G03414 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1550 | Start date 12/1/2013- End Date 1/1/2200 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | SEA ROBIN PIPELINE, LLC | Fieldwood Energy LLC | EC 261 Lease G00971, EC 278 Lease G00974, EI 330 Lease G02115, EI 337 Lease G03332, SM 128 Lease G02587, EI 333 Lease G02317, EI 315 Lease G02112, EI 316 Lease G05040 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1551 | Start date 5/1/2014- End date 1/1/2200 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | SEA ROBIN PIPELINE, LLC | Fieldwood Energy LLC | EC 261 Lease G00971, EC 278 Lease G00974, EI 330 Lease G02115, EI 337 Lease G03332, SM 128 Lease G02587, EI 333 Lease G02317, EI 315 Lease G02112, EI 316 Lease G05040 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1552 | 4/14/2015 | Marketing - Connection Agreement | INTERCONNECT AND REIMBURSEMENT AGREEMENT | SEA ROBIN PIPELINE, LLC | Fieldwood Energy LLC | SS 274 Lease G01039 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1553 | 6/13/2018 | Marketing - Other | PIPING REIMBURSEMENT AGREEMENT; SHIP SHOAL BLOCK 274 BETWEEN SEA ROBIN PIPELINE AND FIELDWOOD ENERGY LLC | SEA ROBIN PIPELINE, LLC AND FIELDWOOD ENERGY LLC | Fieldwood Energy LLC | SS 274 Lease G01039 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1554 | | Oilfield Services | 777828_PO Terms & Conditions dated effective 01/11/2019 | SEAHORSE ENERGY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1555 | | Oilfield Services | 533257_Master Services Agreement dated effective 12/04/2013 | SEAL-TITE INTERNATIONAL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1556 | | Oilfield Services | 565610_Master Services Agreement dated effective 11/01/2013 | SELECT OILFIELD SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1557 | | Non-Oilfield Services | communication software | SEND WORD NOW | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1558 | 6/17/2011 | Master Service Agreement | Master Services Agreement | Send Word Now (SWN) | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1559 | | Oilfield Services | Wire Rope / Slings | SERVICE RIGGING | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1560 | | Oilfield Services | 565757_Master Services Agreement dated effective 11/01/2013 | SHAMROCK ENERGY SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1561 | | Oilfield Services | HSE Training and Facility Use | SHELL EXPLORATION AND PRODUCTION COMPANY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1562 | 8/4/1983 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY | SHELL OFFSHORE | Fieldwood Energy LLC | SS 198 Lease 593, SS 199 Lease G12358, SS 223 G01526, SS 238 Lease G03169, SP 82 G05685, SP 83 Lease G05052, ST 276 Lease G07780, ST 295 Lease G05646, ST 296 Lease G12981 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC, APACHE OFFSHORE INVESTMENT GP, APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1563 | 10/7/2004 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest Agreement by and between Apache Corporation and Shell Offshore et al | SHELL OFFSHORE ET AL | Fieldwood Energy LLC | SS 258, 259, APACHE WAIVED PREF RIGHT TO BUY SHELL'S RIGHTS BELOW 15,000' Lease G05044 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1564 | 8/1/2009 | Marketing - PHA | Shell Offshore Inc (Bullwinkle Owner and Operator) and Shell Offshore Inc. and Marathon Oil Company (Troika Group) and Marathon Oil Company (Droshky Owner) | Shell Offshore Inc (Bullwinkle Owner and Operator) and Shell Offshore Inc. and Marathon Oil Company (Troika Group) and Marathon Oil Company (Droshky Owner) | | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1565 | 11/2/1987 | Property Participation & Exchange Agreements | EXCHANGE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND CONOCO INC | SHELL OFFSHORE INC AND CONOCO INC | Fieldwood Energy LLC | MP 303 Lease G04253, MP 304 Lease G03339, MP 310 Lease G04126 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the terms and conditions of any of the Credit Bid Purchase Agreements, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1566 | 8/1/2009 | Other Handling / Stabilization Agreements | Drinkly Production Handling Agreement by and between Shell Offshore Inc and Marathon Oil Company dated 1 Aug 2009 including flow back agreement | Shell Offshore Inc and Marathon Oil Company | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1567 | 3/1/1999 | Other Handling / Stabilization Agreements | Angus Production Handling Agreement by and between Shell Offshore Inc and Shell Deepwater Development and Marathon Oil Company dated 1 March 99 | Shell Offshore Inc and Shell Deepwater Development and Marathon Oil Company dated 1 March 99 | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1568 | 6/15/1993 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement dated effective June 15, 1993 between Shell Offshore Inc and Marathon Oil Company, as successors in interest. | Shell Offshore Inc and Marathon Oil Company, as successors in interest. | Fieldwood Energy Offshore LLC | GC 200 Lease G12210, GC 201 Lease G12209, GC 244 Lease G11043 | LLOG EXPLORATION COMPANY, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1569 | 4/1/1982 | Operating Agreement - Other | b/b Shell Offshore Inc, and Florida Exploration Company, et al | Shell Offshore Inc, and Florida Exploration Company, et al | | SS 258 Lease G05560, SS 259 Lease G05044 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1570 | 10/1/1983 | Operating Agreement - Other | b/b Shell Offshore Inc, and Florida Exploration Company, et al | Shell Offshore Inc, and Florida Exploration Company, et al | | PN 969 Lease G05953, PN 976 Lease G05954 | PEREGRINE OIL AND GAS II, LLC | $62,197.36 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1571 | 3/3/2005 | Other Handling / Stabilization Agreements | Lonen Production Handling Agreement by and between Shell Offshore Inc, Noble Energy, Inc, Hydro Gulf of Mexico, LLC and Davis Offshore, LP dated 3 March 05 and as amended 10 Dec 2006 | Shell Offshore Inc, Noble Energy, Inc, Hydro Gulf of Mexico, LLC and Davis Offshore, LP dated 3 March 05 and as amended 10 Dec 2006 | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1572 | 11/1/1997 | Marketing - PHA | Shell Offshore Inc. (SOI) as owner and operator of GC 65 Platform and BP Exploration & Oil Inc., Marathon Oil Company, and Shell Deepwater Development Inc., successors in interest to Shell Offshore Inc. | Shell Offshore Inc. (SOI) as owner and operator of GC 65 Platform and BP Exploration & Oil Inc., Marathon Oil Company, and Shell Deepwater Development Inc., successors in interest to Shell Offshore Inc. | | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1573 | 6/1/1991 | Unit Agreement and/or Unit Operating Agreement | UNIT AGREEMENT, SOUTH TIMBALIER BLOCK 295 FIELD UNIT BY AND BETWEEN SHELL OFFSHORE INC. AND APACHE CORPORATION, ET AL. | SHELL OFFSHORE INC. AND APACHE CORPORATION, ET AL. | | ST 276 Lease G07780, ST 295 Lease G05646, ST 296 Lease G12981 | APACHE OFFSHORE INVESTMENT GP, EXPRESS RESOURCES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1574 | 2/11/1993 | Letter Agreement - Other Land | Letter Agreement by and between Shell Offshore Inc. and BP Exploration & Oil Inc. : bbe BP and Shell in Lieu of PHA with Apache, exploration area | Shell Offshore Inc. and BP Exploration & Oil Inc. | | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1575 | 3/7/2005 | Termination / Ratification and Joinder of Operating or Other Agreements | Termination of Exploration Program Agreement by and between Shell Offshore Inc. and Devon Louisiana Corporation; Apache Corporation ; Termination of 01/01/1998 Exploration Program Agreement | Shell Offshore Inc. and Devon Louisiana Corporation; Apache Corporation | | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1576 | 5/7/1993 | Letter Agreement - Other Land | Letter Agmt, dated 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. | Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1577 | 1/1/1998 | Joint Development / Venture / Exploration Agreements | Exploration Program Agreement by and between Shell Offshore Inc. and Ocean Energy Inc. : Exploration Program Agreement Shell ID prospects Ocean to Participate | Shell Offshore Inc. and Ocean Energy Inc. | | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and Allocate (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1578 | 6/1/1993 | Farmout Agreement | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil Corporation. | Shell Offshore Inc. and Samedan Oil Corporation | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1579 | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. | SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1580 | 12/18/1997 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC. | SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC. | Fieldwood Energy Offshore LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1581 | 12/1/2006 | Farmout Agreement | Droshky Farmout Agreement dated effective December 1, 2006 between Shell Offshore Inc. and Marathon Oil Company designating Marathon Oil Company as operator of GC 244 16,000' TVDSS to 24,000' TVDSS | Shell Offshore Inc. and Marathon Oil Company designating Marathon Oil Company as operator of Offshore LLC | Fieldwood Energy Offshore LLC | GC 244 Lease G11043 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1582 | 9/25/1991 | Operating Agreement - Other | b/b Shell Offshore Inc. and Barrett Resources Corporation | Shell Offshore Inc. and Barrett Resources Corporation | | HI A545 Lease G17199 | TALOS ERT LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1583 | 4/8/2010 | Letter Agreement - UOA | Letter Agreement, dated 4/8/2010 between Shell Offshore Inc., Apache Corporation and Nippon Oil Exploration U.S.A. Limited amending the Unit Operating Agreement, dated March 1, 1998. | Shell Offshore Inc., Apache Corporation and Nippon Oil Exploration U.S.A. Limited amending the Unit Operating Agreement, dated March 1, 1998. | Fieldwood Energy Offshore LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1584 | 12/15/1989 | Farmout Agreement | FARMOUT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., ET AL. AND CNG PRODUCING COMPANY | SHELL OFFSHORE INC., ET AL. AND CNG PRODUCING COMPANY | Fieldwood Energy LLC | ST 276 Lease G07780 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1585 | 2/1/1998 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC | SHELL OFFSHORE, INC. OPERATOR, AND WESTPORT OIL & GAS COMPANY, INC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | | x | | |
| 1586 | 4/1/1998 | Joint Development / Venture / Exploration Agreements | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC, ET AL., as amended | SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL. | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1587 | 11/5/1998 | Joint Development / Venture / Exploration Agreements | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFFSHORE INC, LIMITED, ET AL. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. | SHELL OFFSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1588 | 12/1/1979 | Operating Agreement - Other | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL | SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1589 | 6/1/2021 | Surface Lease | SHELL PIPELINE | SHELL PIPELINE | | MP 69 /Perez Family Surface Lease | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1590 | 7/1/1986 | Marketing - Construction, Operations, Management, Ownership Agreements | Shell Pipeline is contract operator - Fieldwood Energy LLC has ownership along with various other owners including shell | Shell Pipeline | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1591 | 3/30/2010 | Elections | Ship ShOperating Agreement 252 Marketing Election Letter dated March 30, 2010 (Helis Oil & Gas Company, L.L.C.) | Ship Shoal 252 Marketing Election Letter dated March 30, 2010 (Helis Oil & Gas Company, L.L.C.) | Fieldwood Energy SP LLC | SS 252 Lease G01529 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |

**Applicable Entity**

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

Schedule of Assumed Contracts
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand,  and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][8] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1592 | | Oilfield Services | 2018 Shore Offshore Service Contract - Platform Removal Contract | SHORE OFFSHORE SERVICE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | x | | | |
| 1593 | | Oilfield Services | 777955_Master Services agreement dated effective 01/22/2019 | SIGNA ENGINEERING CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1594 | | Oilfield Services | Master Services Agreement dated effective 03/07/2019 | Skofto Industries, Inc. | Fieldwood Energy, LLC | n.a. | n.a. | $30,480.96 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1595 | | Oilfield Services | 777962_PO Terms & Conditions dated effective 10/10/2019 | SKYSPRING OIL & GAS SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1596 | | Oilfield Services | MWD, LWD, Whipstocks, Drilling Tools, Fishing Services | SMITH INTERNATIONAL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1597 | 7/21/2016 | Non-Oilfield Services | Solex Agreement (Final) | SOLEX | Fieldwood Energy LLC | n.a. | n.a. | $50,165.13 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1598 | | Oilfield Services | Catering Services & Personnel (Cooks, Galleyhands, Etc.) | SONOCO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1599 | 5/31/2019 | Non-Oilfield Services | Consulting Agreement | SOREAP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1600 | | Non-Oilfield Services | Consulting Agreements | SOREAP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1601 | 8/1/1994 | Operating Agreement - Other | OPERATION AND MAINTENANCE OF MEASUREMENT FACILITIES GRAND BAY RECEIVING STATION BETWEEN SOUTHERN NATURAL GAS COMPANY AND PENZOIL PETROLEUM COMPANY | SOUTHERN NATURAL GAS COMPANY AND PENZOIL PETROLEUM COMPANY | Fieldwood Energy LLC | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1602 | | Oilfield Services | 558442-Daywork Drilling Contract dated 1-3-2012 | SPARTAN OFFSHORE DRILLING, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1603 | | Oilfield Services | 701192_Master Services Agreement dated effective 08/16/2016 | SPECIALTY RTP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1604 | | Oilfield Services | Water Analyzers | SPECTRO SCIENTIFIC, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1605 | 1/1/2005 | Unit Agreement and/or Unit Operating Agreement | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY | SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY | Fieldwood Energy Offshore LLC | GA 210 Lease G25524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1606 | 10/15/2004 | Operating Agreement - Other | b/b SPN and Arena as amended by Amendment and Supplement to Evaluation Agreement dated November 5, 2004, Amendment and Supplement to Evaluation Agreement dated December 13, 2004, Extension Request dated November 8, 2005, and Assignment Agreement and Amendment to Operating Agreements dated May 5, 2006 | SPN and Arena | | WD 57 Lease G01449, WD 79/80 Lease G01874, WD 80 Lease G01989, WD 85 Lease G04895, WD 86 Lease G02934 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1607 | 11/5/2004 | Amendment and Supplement to Evaluation Agreement | b/b SPN and Arena | SPN and Arena | | WD 57 Lease G01449, WD 79/80 Lease G01874, WD 80 Lease G01989, WD 85 Lease G04895, WD 86 Lease G02934 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1608 | 12/13/2004 | Amendment and Supplement to Evaluation Agreement | b/b SPN and Arena | SPN and Arena | | WD 57 Lease G01449, WD 79/80 Lease G01874, WD 80 Lease G01989, WD 85 Lease G04895, WD 86 Lease G02934 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1609 | 5/5/2006 | Operating Agreement - Other | b/b SPN and Arena | SPN and Arena | | WD 57 Lease G01449, WD 79/80 Lease G01874, WD 80 Lease G01989, WD 85 Lease G04895, WD 86 Lease G02934 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1610 | 11/1/2004 | Operating Agreement - Other | b/b SPN and Arena | SPN and Arena | | WD 57 Lease G01449, WD 79/80 Lease G01874, WD 80 Lease G01989 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1611 | 12/27/2007 | Property Participation & Exchange Agreements | b/b SPN and Arena | SPN and Arena | | WD 57 Lease G01449, WD 79/80 Lease G01874, WD 80 Lease G01989, EI 100 Lease 796 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1612 | 2/15/2009 | Farmout Agreement | Farmout Agreement dated February 15, 2009 between SPN Resources LLC and Moreno Offshore Resources, L.L.C., Farmors, and Houston Energy, L.P., Farmee | SPN Resources LLC and Moreno Offshore Resources, L.L.C., Farmors, and Houston Energy, L.P., Farmee | Fieldwood Energy SP LLC | SS 252 Lease G01529 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1613 | 4/27/2012 | Other Handling / Stabilization Agreements | Production Handling Agreement dated August 1, 2009 between SPN Resources, LLC and Moreno Offshore Resources, L.L.C., Platform Owners, and Helis Oil & Gas Company, L.L.C., et al, Producers; as amended by agreement on April 27, 2012. | SPN Resources, LLC and Moreno Offshore Resources, L.L.C., Platform Owners, and Helis Oil & Gas Company, L.L.C., et al, Producers | Fieldwood Energy SP LLC | SS 252 Lease G01529 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1614 | | Oilfield Services | Stabilizers | STABIL DRILL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1615 | | Oilfield Services | Software at Grand Chenier Separating Facility (Wonderware West) | STANDARD AUTOMATION & CONTROL LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1616 | 6/12/2013 | Other Lease / Rental Agreement | Lease Extension and Amendment State Lease No. 19718 by and between State Mineral Board and Dynamic Offshore Resources, LLCO, LLOG Bluewater Holdings, L.L.C.; LLOG Exploration Company, L.L.C. | State Mineral Board and Dynamic Offshore Resources, LLC; LLOG Bluewater Holdings, L.L.C.; LLOG Exploration Company, L.L.C. | | BS 25 Lease 19718 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1617 | 9/18/1975 | Right of Way | ST OF LA ROW 1594 | STATE OF LA | | SP 6 & 7 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1618 | 6/28/2007 | Water Bottom Contracts | STATE OF LA WATER BOTTOM LEASE #576 | STATE OF LA | | BURRWOOD / SP 42-43 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1619 | 10/17/2007 | Surface Lease | ST OF LA NO 3011 | STATE OF LA | | BURRWOOD | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1620 | 6/17/2014 | Assignment of Oil & Gas Leasehold Interest(s) | Assignment agreement dated 17 Jun 14 by and between Statoil Gulf of Mexico LLC and Noble Energy, Inc | Statoil Gulf of Mexico LLC and Noble Energy, Inc., Phoenix Exploration Company LP, Challenger Minerals Inc, et al | Fieldwood Energy LLC | EW 790 Lease G33140 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1621 | 3/1/2014 | Letter Agreement - Other Land | Letter Agreement dated effective March 1, 2014 by and between Statoil Gulf of Mexico LLC and Noble Energy, Inc., as amended by letter dated June 9, 2014. | Statoil Gulf of Mexico LLC, Noble Energy, Inc., Phoenix Exploration Company LP, Challenger Minerals Inc, et al | Fieldwood Energy LLC | GC 40 Lease G34536, GC 41 Lease G34537, EW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1622 | | Oilfield Services | Tubing Supplier, Chrome | STEEL SERVICE OILFIELD TUBULAR INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1623 | 4/7/2008 | Surface Lease | STERLING SUGARS LLC | STERLING SUGARS LLC | | MYETTE POINT / SL 14914/03- FWE II | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1624 | | Oilfield Services | Threader | STEWART TUBULAR PRODUCTS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1625 | 2/23/2017 | Marketing - Pipeline Transport | Stingray Precedent Agreement by and between Stingray Pipeline Company L.L.C. and Fieldwood Energy LLC | Stingray Pipeline Company L.L.C. and Fieldwood Energy LLC | Fieldwood Energy LLC | n.a., n.a., n.a., n.a. | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 1626 | | Oilfield Services | 500187_MSA dated effective 11/01/2013; Master Services Agreement dated effective 01/01/2015 | STOKES & SPIEHLER OFFSHORE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1627 | | Oilfield Services | Texas RRC Permits | STOKES & SPIEHLER REGULATORY SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1628 | 9/9/2015 | Performance Bond & Supplemental Bonding Agreement | by and between Fieldwood Energy LLC and Stone Energy Corporation: Stone acknowledgement of receipt of Bond | Stone Energy Corporation | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1629 | 6/29/2004 | Letter Agreement - Other Land | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. | STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY | Fieldwood Energy Offshore LLC | WC 34 Lease G02571, WC 35 Lease G02819, WC 35, WC 66 Lease G01860, WC 35/66 Lease G01860, WC 65 Lease G02825, WC 66 Lease G02826, WC 67 Lease G02636 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1630 | 3/28/1995 | Letter Agreement - Other Land | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL. | STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL | Fieldwood Energy Offshore LLC | WC 34 Lease G02819, WC 35 Lease G01860, WC 65 Lease G02825, WC 66 Lease G02826, WC 67 Lease G02636 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1631 | 7/15/1994 | Letter Agreement - Other Land | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY | STONE ENERGY CORPORATION AND DAVID U. MELOY | Fieldwood Energy Offshore LLC | WC 34 Lease G02819, WC 35 Lease G01860, WC 65 Lease G02825, WC 66 Lease G02826, WC 67 Lease G02636 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1632 | 4/4/2006 | Joint Operating Agreement | STONE ENERGY CORPORATION AND GOM SHELF LLC, ET AL | STONE ENERGY CORPORATION AND GOM SHELF LLC, ET AL | Fieldwood Energy LLC | SS 198 Lease 593, SS 198 Lease G12355 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, et al.**
Prepared June 11, 2021

Schedule of Assumed Contracts
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the operating contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand,  and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1633 | 1/10/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | MC 65 Lease G21742 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1634 | 2/5/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone offering extension and fieldwood's election | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | MC 65 Lease G21742 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1635 | 3/24/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone requesting extension and fieldwood's election | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | MC 65 Lease G21742 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1636 | 3/28/2014 | Well / Prospect Proposals | Proposal Amendment and Various requests for extension from Stone and election by Fieldwood | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | MC 65 Lease G21742 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1637 | 1/10/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1638 | 2/5/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone offering extension and fieldwood's election | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1639 | 3/24/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone requesting extension and fieldwood's election | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1640 | 9/9/2015 | Performance Bond & Supplemental Bonding Agreement | by and between Fieldwood Energy LLC, SEO A LLC, Stone Energy Corporation and Stone Energy Offshore, L.L.C.; Fieldwood will apply own Supp Bonding | Stone Energy Offshore, L.L.C.; Stone Energy Offshore, L.L.C.; Stone Energy Corporation, SEO A LLC | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1641 | | Oilfield Services | Core Sample / Fluid Sample Analyses | STRATUM RESERVOIR ISOTECH LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1642 | | Oilfield Services | Master Service Contract dated Feb 17, 2020 | STRATUM RESERVOIR LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1643 | | Oilfield Services | MSA dated effective 08/07/2014 (Net 30 for PO 29323 only) | STRESS ENGINEERING SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1644 | | Oilfield Services | Master Agreement for the Provision of Marine Construction Services dated effective 09/28/2018 | Subsea 7 (US) LLC | Fieldwood Energy, LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1645 | | Oilfield Services | Master Agreement for the Provision of Marine Construction Services dated effective May 20, 2019 | Subsea 7 (US) LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1646 | | Oilfield Services | Marine Construction Services (EPCI) dated May 20, 2019 | SUBSEA 7 US LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1647 | | Oilfield Services | 777785_Master Services Agreement dated effective 11/13/2018 | SUBSEA SOLUTIONS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1648 | | Oilfield Services | Marine Construction Services Agreement dated effective May 20th 2019 | SUBSEA7 I-TECH US INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1649 | 12/17/2019 | Non-Oilfield Services | Consulting Agreement | SULLEXIS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1650 | | Oilfield Services | Specialty Fluids | SUN DRILLING PRODUCTS CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1651 | | Oilfield Services | 512944_Master Services Agreement dated effective 12/01/2013 | SUPERIOR ENERGY SERVICES  LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1652 | | Oilfield Services | Various Contractor Services (CT Units, GP Tools, Rental Equip., Cement Services, Well Support, Etc.) | SUPERIOR ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1653 | 1/31/2012 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchase and Sale Agreement, dated January 31, 2010, by and between Superior Energy Services, Inc., Wild Well Control, Inc. and Dynamic Offshore Resources, LLC. | Superior Energy Services, Inc.; Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 64 Lease G34539 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1654 | | Oilfield Services | Grating & Handrail Pipe, Valves and Fittings | SUPERIOR SUPPLY & STEEL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1655 | | Oilfield Services | Wellheads | SURFACE SYSTEMS CAMERON | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1656 | | Oilfield Services | 777981_PO Terms & Conditions dated effective 04/01/2019 | SWAGELOK LOUISIANA | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1657 | 9/27/2013 | Surface Lease | SWEET LAKE LAND & OIL CO | SWEET LAKE LAND & OIL CO | | GIBBSTOWN | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1658 | | Other | stop loss insurance | Symetra, Partner re | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1659 | 9/1/1994 | Farmout Agreement | Farmout Agmt Eff. 9-1-94 | Talos Energy Offshore | Fieldwood Energy LLC | PL 5 Lease G12027 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1660 | 12/4/1958 | Operating Agreement - Other | Operating Agreement eff. 12/4/58 | Talos Energy Offshore | Fieldwood Energy LLC | EC 265 Lease G00972 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1661 | 11/21/2019 | Letter Agreement - Other Land | Letter Agreement SS 198 J-11 Well zone shift; Zone shift recommended and election from HO to HG sand by and between GOM Shelf Offshore LLC and Renaissance Offshore LLC | Talos Energy Offshore LLC, Renassance Offshore, LLC | GOM Shelf LLC | SS 198 Lease 593 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1662 | 10/18/2018 | Abandonment / Decommissioning Agreement | Insurance for certain PHA for MC 496 produced at SP B Platform dated 11/1/2002 | Talos ERT LLC, The Louisiana Land & EXPL CO, Marubeni Oil & Gas (USA) LLC | Fieldwood Energy LLC | SP 89 Lease G01618 | TALOS ERT LLC, THE LOUISIANA LAND & EXPL CO LLC, SANARE ENERGY PARTNERS, LLC, Texas Eastern Transmission / Spectra Energy | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1663 | | Oilfield Services | 504973_Master Service Agreement dated effective 02/21/2014 | TAM INTERNATIONAL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1664 | | Oilfield Services | Communication for L/B Man O War (P&A) | TAMPNET INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1665 | 12/16/2013 | Joint Operating Agreement | TANA EXPLORATION COMPANY LLC AND APACHE CORPORATION | TANA EXPLORATION COMPANY LLC AND APACHE CORPORATION | Fieldwood Energy LLC | EI 315 N2 Lease G24912 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1666 | 8/13/2012 | Property Participation & Exchange Agreements | Participation Agreement by and between Tana Exploration Company LLC and Dyanmice Offshore Resources, LLC : BS 25 Federal and State | Tana Exploration Company LLC and Dyanmice Offshore Resources, LLC | | BS 25 Lease 19718, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1667 | 6/6/2013 | Elections | BS No. 1 Well Election Completion Letter by and between Tana Exploration Company LLC and Dynamic Offshore Resources, LLC; Walter Oil & Gas Corporation : Tana drilled well No. 1 federal Lease G31442 | Tana Exploration Company LLC and Dynamic Offshore Resources, LLC; Walter Oil & Gas Corporation | | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1668 | 6/3/2013 | Other Misc. | BS No. 1 Well Recommendation Discontinue Drilling by and between Tana Exploration Company LLC and Dynamic Offshore Resources, LLC; Walter Oil & Gas Corporation : Tana drilled well No. 1 federal Lease G31442 | Tana Exploration Company LLC and Dynamic Offshore Resources, LLC; Walter Oil & Gas Corporation | | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1669 | 12/7/2017 | Termination / Ratification and Joinder of Operating or Other Agreements | Termination of Ratification and Joinder of Operating Agreement by and between Tana Exploration Company LLC and Fieldwood Energy LLC ; Tax Partnership election | Tana Exploration Company LLC and Fieldwood Energy LLC | Fieldwood Energy LLC | BS 25 Lease 19718, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1670 | 8/21/2012 | Termination / Ratification and Joinder of Operating or Other Agreements | Ratification and Joinder of Offshore Operating Agreement by and between Tana Exploration Company LLC and LLOG Exploration Offshore, L.L.C.; LLOG Exploration Company, L.L.C.; Walter Oil & Gas Corporation; Dynamic Offshore Resources, LLC : OF JOA covering federal and state lease dated 03/01/2009 | Tana Exploration Company LLC and LLOG Exploration Offshore, L.L.C.; LLOG Exploration Company, L.L.C.; Walter Oil & Gas Corporation; Dynamic Offshore Resources, LLC | | BS 25 Lease 19718, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1671 | 8/21/2012 | Operating Agreement - Other | Amendment No. 1 to Offshore Operating Agreement by and between Tana Exploration Company LLC and Walter Oil & Gas Corporation; LLOG Exploration Offshore, L.L.C.; LLOG Exploration Company, L.L.C.; LLOG Bluewater Holdings, L.L.C.; Dynamic Offshore Resources, LLC : Amend JOA 03/01/2009 | Tana Exploration Company LLC and Walter Oil & Gas Corporation; LLOG Exploration Offshore, L.L.C.; LLOG Exploration Company, L.L.C.; LLOG Bluewater Holdings, L.L.C.; Dynamic Offshore Resources, LLC | | BS 25 Lease 19718, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1672 | | Other | Flexible spending account | TaxSaver | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1673 | | Oilfield Services | 701035_Master Services Agreement dated effective 11/30/2015 | TCB FABRICATION, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1674 | | Other | telemedicine | Teladoc | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1675 | | Oilfield Services | Hazard Surveys and Vessel Positioning (Purchased Tesla Equipment) | TELESIS GEOPHYSICAL SERVICES,LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation having to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the terms and provisions of any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1676 | | Oilfield Services | 553360_Master_Services_Contract dated effective 01/31/20 | TENARIS GLOBAL SERVICES USA CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1677 | | Oilfield Services | 501430_Master Services Agreement dated effective 11/01/2013 | TETRA APPLIED TECHNOLOGIES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1678 | 5/18/1999 | Property Participation & Exchange Agreements | by and between Texaco Exploration and Production Inc. and Aviara Energy Corporation | Texaco Exploration and Production Inc. and Aviara Energy Corporation | | EI 313 Lease G02608 | EPL OIL & GAS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1679 | 5/1/1991 | Operating Agreement - Other | Operating Agreement, as amended by and between Texaco Exploration and Production Inc. and Mobil Oil Exploration & Producing Southeast Inc., et al | Texaco Exploration and Production Inc. and Mobil Oil Exploration & Producing Southeast Inc., et al | | SS 204 Lease G01520, SS 207 Lease G01523, SS 216 Lease G01524 | EPL OIL & GAS, LLC, KINETICA DEEPWATER EXPRESS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1680 | 3/13/1998 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. | TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. | Fieldwood Energy Offshore LLC | WC 34 Lease G03251, WC 35 Lease G02819, WC 35, WC 66 Lease G01860, WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1681 | 5/1/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST ET AL | Texaco Exploration and Production Inc., Mobil Oil Exploration & Producing Southeast Inc, Chevron Southeast Inc., Hunt Oil Company, The George R. Brown Partnership, Torch Energy Advisors Incorporated, Torc, Norcen Explorer, Inc., Norcen Offshore Properties | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SM 281 Lease G02600 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1682 | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL | TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL | Fieldwood Energy LLC | SM 280 Lease G14456, SM 281 Lease G02600 | MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1683 | 8/27/2003 | Marketing - Connection Agreement | INTERCONNECT AGREEMENT FOR SP 87 | TEXAS EASTERN TRANSMISSION CORPORATION, MARATHON OIL COMPANY | | SP 87 Lease G07799 | TALOS ERT LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1684 | 2/16/2010 | Marketing - Connection Agreement | Interconnect and Reimbursement Agreement | TEXAS EASTERN TRANSMISSION, LP, PHOENIX EXPLORATION COMPANY, LP, PEREGRINE OIL AND GAS II, LLC, CHALLENGER MINERALS INC. | | CA 43 Lease G33268 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1685 | | Oilfield Services | Provides SuperSacks of Cement | TEXAS LEHIGH CEMENT COMPANY LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1686 | | Oilfield Services | 700479_Master_Service_Contract Effective_02-28-2014 | TEXAS MARINE SHIPYARD LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1687 | 10/10/2018 | Non-Oilfield Services | Consulting Agreement | THI, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1688 | | Oilfield Services | Slickline / Cased Hole Bailers | THE CAVINS CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1689 | 1/1/2017 | Non-Oilfield Services | Insurance Policy | THE GUARDIAN LIFE INSURANCE COMPANY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1690 | 10/1/2016 | Non-Oilfield Services | Services Agreement | THE GUARDIAN LIFE INSURANCE COMPANY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1691 | 10/6/2004 | Other Misc. | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | GA 210 Lease G25524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1692 | 10/7/2004 | Joint Development / Venture / Exploration Agreements | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | GA 210 Lease G25524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1693 | 2/22/2006 | Farmout Agreement | Farmout Proposal Letter Agreement between The Houston Exploration Company and Noble Energy Inc. 2/22/2006 | The Houston Exploration Company and Noble Energy Inc. 2/22/2006 | Fieldwood Energy LLC | VR 408 Lease G15212 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1694 | 12/1/2018 | Other | Sublease - One Briar Lake Plaza–Suite 320 | THE LUBRIZOL CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $1,858.38 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1695 | 2/11/1994 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on theVioxca Knoll 252 Unit (designated Contract No. 754394013, by the Minerals Management Service, dated effective February 11, 1994, executed by Samedan Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc.(as a working interest owner). | The Minerals Management Service, Samedan Oil Corporation and Chevron U.S.A. Inc. | | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1696 | | Oilfield Services | Mud Logging | THE MUDLOGGING COMPANY USA LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1697 | | Oilfield Services | 504791_Master Services Agreement dated effective 11/01/2013 | THE NACHER CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1698 | 3/13/1962 | Operating Agreement - Other | Operating Agreement dated 3/13/62 between The Pure Oil Company and The Ohio Oil Company | The Pure Oil Company and The Ohio Oil Company | Fieldwood Energy LLC | SS 253 Lease G01031 | BADGER OIL CORPORATION, CL&F RESOURCES LP, HELIS OIL & GAS COMPANY LLC, HOUSTON ENERGY LP, HOUSTON ENERGY HOLDINGS, LLC, SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and allocate pursuant to divisive mergers | | | | x |
| 1699 | | Oilfield Services | Drill Pipe, Downhole Tools, Other Rental Tools | THOMAS TOOLS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1700 | 1/30/2019 | Non-Oilfield Services | Subscription Agreement | TIBCO SOFTWARE, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1701 | | Oilfield Services | Filter Media | TIMBALIER SALES & RENTAL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1702 | | Oilfield Services | 565612_Master Services Agreement dated effective 05/11/2017 | TIMKEN GEARS & SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1703 | 9/10/2018 | Non-Oilfield Services | Consulting Agreement | TIORAM SUBSEA INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1704 | 10/1/1991 | Farmout Agreement | FO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc etal and Hall-Houston Oil Company | Torch Energy Advisors Inc etal and Hall-Houston Oil Company | Fieldwood Energy LLC | SS 291 Lease G02923 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1705 | 5/28/2009 | Marketing - Connection Agreement | CONNECTION AGREEMENT INSTALLATION OF FACILITIES | TOTAL E&P USA, INC., STONE ENERGY OFFSHORE LLC | | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1706 | | Oilfield Services | Daily Operating Supplies | TOTAL PRODUCTION SUPPLY, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1707 | | Oilfield Services | 501635_Master Services Agreement dated effective 01/01/2014 | TOTAL SAFETY U.S. INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1708 | 12/20/2018 | Other Misc. | by and between Fieldwood Energy LLC and TR Offshore, L.L.C. Contemplation of Contract Operating Agreement, Transportation Agreement | TR Offshore, L.L.C. | Fieldwood Energy LLC | MI 518 Texas SL 80522 Lease MF80522 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1709 | 1/3/1997 | Joint Operating Agreement | Operating Agreement eff. 1-3-1977 b/t Transco Exploration Company, as Operator, and Freeport Oil Company, Energy Development Corporation, Pioneer Production Corporation, et al | Transco Exploration Company, as Operator, and Freeport Oil Company, Energy Development Corporation, Pioneer Production Corporation, et al | Fieldwood Energy Offshore LLC | WD 34 Lease G03414 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1710 | 6/16/1991 | Marketing - Connection Agreement | CONNECTION AND LATERAL LINE INTERCONNECT | TRANSCONTINENTAL GAS PIPELINE CORPORATION, BP EXPLORATION INC | | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1711 | 1/25/2005 | Letter Agreement - Operating Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 66 Facilities, dated effective January 25, 2005, between Transcontinental Gas Pipeline Corporation, as Seller> and Union Oil "Company of California and Forest Oil Corporation, as Purchasers, for facilities and pipeline associated with "A" and "C" Platforms". NEVER CONSUMATED. | Transcontinental Gas Pipeline Corporation, Union Oil Company of California and Forest Oil | Fieldwood Energy Offshore LLC | SM 66 Lease G01198 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1712 | 12/4/1996 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN TRANSTEXAS AND DAVIS PETROLEUM CORP | TRANSTEXAS GAS CORP | Fieldwood Onshore LLC | ST 331/332; EAGLE BAY ST 329 #1; SAN LEON GAS UNIT | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1713 | 2/20/2009 | Pooling Agreement | POOLING AGREEMENT BY AND BETWEEN TRANSTEXAS GAS CORPORATION, DAVIS PETROLEUM CORP AND GENERAL LAND OFFICE OF TEXAS | TRANSTEXAS GAS CORPORATION, DAVIS PETROLEUM CORP AND GENERAL LAND OFFICE OF TEXAS | Fieldwood Onshore LLC | SAN LEON GAS UNIT NO. 1 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1714 | 10/3/2020 | Non-O&G Real Property Lease / Rental / Sublease Agreements | COVID-19 Testing locations. Monthly agreement between Fieldwood and Trend Services. Total Area: Work Trailer & Furniture - 3 Locations Square Footage: 8'x24' Trailer Address: PHI - Galveston, Houma and Abbeville | Trend Services | Fieldwood Energy LLC | Total Area: Work Trailer & Furniture - 3 LocationsSquare Footage: 8'x24' Trailer | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1715 | | Oilfield Services | 777675_Master Services Agreement dated effective 06/22/2018 | TRENDSETTER ENGINEERING INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Debtors' Plan, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1716 | 4/1/2011 4/15/2011 | Other Services Agreements | Response Resources Agreement Utilization Agreement | Trendsetter Subsea International LLC | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1717 | | Oilfield Services | Thread Protectors | TRI-STAR PROTECTOR SVC CO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1718 | | Oilfield Services | Primary Cleaning - Confined Space Entry Crews, Clean Out Crews (also called Gibsons Trusco / Gibeons) | TRUSSCO, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1719 | | Oilfield Services | 778061_Master Services agreement dated effective 09/21/20 | TRUSTED COMPLIANCE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1720 | | Oilfield Services | P&A ARO Reports (Topside) | TSB OFFSHORE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1721 | | Oilfield Services | Thread and Tubular Inspection | TUBOSCOPE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1722 | | Oilfield Services | 559582_Master Services Agreement dated effective 11/01/2013 | TUBULAR SOLUTIONS, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1723 | | Oilfield Services | Fieldwood Core Network Provider (G&A) | TW TELECOM HOLDINGS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1724 | 10/1/2001 | Operating Agreement - Other | Operating Agreement eff. 10-1-01 b/b Union and Forest | Union and Forest | | SM 18 Lease G08680 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1725 | 10/1/2001 | Operating Agreement - Other | Operating Agreement eff. 10-1-01 b/b Union and Forest | Union and Forest | | VR 380 Lease G02580 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1726 | 3/1/2001 | Joint Operating Agreement | Joint Development Agreement with Operating Agreement, dated March 1, 2001, between Union Oil Company of California, Vastar Offshore, Inc. and Panaco, Inc., parts of EB 161 and 205. | Union Oil Company of California, Vastar Offshore, Inc. and Panaco, Inc. | Fieldwood SD Offshore LLC | EB 161 Lease G02648 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1727 | 2/1/2005 | Letter Agreement - UOA | Letter Agreement, dated February 1, 2005, between Union Oil Company of California and Forest Oil , covering OCS-G 2589, South Marsh Island Block 137, asthe Unit Operating Agreement for South Marsh Island Block 137 Unit, identified as Unit Agreement No. 14-08-001-20237, replacing and superseding, effective October 1, 2001, that certain Unit Operating Agreement dated January 1,1989 between Conoco Inc., Texaco Producing Inc. and CanadianOXY Offshore Production Company. | Union Oil Company of California and Forest Oil | Fieldwood Energy Offshore LLC | SM 137 Lease G02589 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1728 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 66 | Union Oil Company of California and Forest Oil Corporation | | SM 66 Lease G01198 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1729 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering OCS-G 2282, South Marsh Island Block 132. | Union Oil Company of California and Forest Oil Corporation | | SM 132 Lease G02282 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1730 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 | Union Oil Company of California and Forest Oil Corporation | | SM 135 Lease G19776 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1731 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 136 | Union Oil Company of California and Forest Oil Corporation | | SM 136 Lease G02588 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1732 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 | Union Oil Company of California and Forest Oil Corporation | | SM 137 Lease G02589 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1733 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 149 | Union Oil Company of California and Forest Oil Corporation | | SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1734 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 | Union Oil Company of California and Forest Oil Corporation | | SM 150 Lease G16325 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1735 | 3/1/1979 | Joint Operating Agreement | OPERATING AGREEMENT DATED MARCH 1, 1979, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC. | UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | ST 53 Lease G04000 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1736 | 4/30/1993 | Unit Agreement and/or Unit Operating Agreement | VR 371 Unit Agreement effective 4-30-33 | Unit Agreement (VR 371/363/362 Unit) 4/30/1993; VR 371 UA | Fieldwood Energy LLC | VR 371 Lease G09524 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1737 | 1/11/2001 | Letter Agreement - UOA | Letter, dated January 11, 2001, from the United States Department of the Interior, Minerals Management Serviceto Chevron U.S.A. Inc., approving the initial participating area plat and Exhibit C for the Viosca Knoll 252 Unit Agreement No. 754394013, effective November 8, 2000 | United States Department of the Interior, Minerals Management Service, Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1738 | 1/9/2002 | Letter Agreement - UOA | Letter, dated January 9, 2002, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit C for the Viosca Knoll 252 Unit, Agreement No. 754394013, effective December 1, 2001. | United States Department of the Interior, Minerals Management Service, Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1739 | 5/28/2004 | Letter Agreement - UOA | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit Cfor theViosca Knoll 252 Unit, Agreement No. 754394013, effective December 1, 2003. | United States Department of the Interior, Minerals Management Service, Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1740 | 1/10/2007 | Letter Agreement - UOA | Letter dated January 10, 2007, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision Exhibits "A", "B" and "C" reflecting a change in the Unit Area due to contraction provisions in the Viosca Knoll 252 Unit, Agreement No. 754394013. | United States Department of the Interior, Minerals Management Service, Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 1741 | | Oilfield Services | 778024_Master_Service_Contract Effective_3/4/2020 | UNITED STATES K-9 UNLIMITED, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1742 | | Oilfield Services | Master Service Contract dated effective July 28, 2020 | UNITED SUBSEA SPECIALISTS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1743 | 8/1/2010 | Joint Operating Agreement | Amdt to JOA dated 5/16/2001 by and between Unocal and Callon | Unocal and Callon | | EC 257 Lease G21580 | UNION OIL COMPANY OF CALIFORNIA, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1744 | 5/16/2001 | Joint Operating Agreement | Unocal and Callon dated 5/16/2001 but effective 2/14/2001 | Unocal and Callon dated 5/16/2001 but effective 2/14/2001 | | EC 257 Lease G21580 | UNION OIL COMPANY OF CALIFORNIA, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1745 | 1/1/1991 | Property Participation & Exchange Agreements | Offshore Participation Agreement, dated effectiveJanuary 1,1991, between Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc. | Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc. | Fieldwood Energy Offshore LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1746 | | Oilfield Services | 509603_Master Services Agreement dated effective 11/01/2013 | VARIABLE BORE RAMS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1747 | 12/15/1996 | Operating Agreement - Other | Operating Agreement eff. 12-15-96 b/b Vastar and Union | Vastar and Union | | SS 105 Lease G09614 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1748 | 11/16/2001 | Property Participation & Exchange Agreements | N/2 Gi 52 #L-8 ST 1 Well by and between Vastar Resources, Inc, a part of BP America Inc. Spinnaker Exploration Company, L.L.C. | Vastar Resources, Inc, a part of BP America Inc. Spinnaker Exploration Company, L.L.C. | | GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1749 | 10/29/2020 | Non-O&G Real Property Lease / Rental / Sublease Agreements | Lease agreement between Fieldwood Energy and Vector Aviation Total Area: Heliport and office trailer Address: 112 Revis Simon Loop Abbeville LA 70510 | Vector Aviation | Fieldwood Energy LLC | Total Area: Heliport and office trailer | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1750 | 10/2/2019 | Non-Oilfield Services | Software License Agreement | VERIS GLOBAL, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1751 | 10/2/2019 | Non-Oilfield Services | Software Licensing Agreement | VERIS GLOBAL, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1752 | | Oilfield Services | 777930_Master Services Agreement dated effective 06/24/2019 | VERIS GLOBAL, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1753 | | Non-Oilfield Services | Services Agreement | VERIZON WIRELESS | Fieldwood Energy LLC | n.a. | n.a. | $3,696.73 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1754 | | Oilfield Services | 536859_Master Services Agreement dated effective 11/22/2013 | VERSABUILD LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1755 | | Oilfield Services | Paraffin Wax Remediation Product Vendor | VERSALIS AMERICAS INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1756 | | Oilfield Services | Rigging; Derrick Barges | VERSAMARINE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1757 | | Oilfield Services | I&E Control and Power Systems; Provides Engineering, Fabrication, Installation, and Startup | VERSATECH AUTOMATION SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1758 | | Oilfield Services | 508136_Master Services Agreement dated effective 01/01/2014 | VESCO RENTAL & PRESSURE CONTROL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1759 | | Oilfield Services | Provides Wellhead Equipment and Rental Tools | VETCO GRAY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1760 | 11/26/2013 | Non-Oilfield Services | Consulting Agreement | VIKING ENGINEERING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1761 | | Oilfield Services | 777494_PO Terms & Conditions dated effective 09/06/2017 | VIKING FABRICATORS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1762 | | Oilfield Services | Life Raft Exchange | VIKING LIFE SAVING EQUIPMENT AMERICA, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1763 | | Oilfield Services | 777904_PO Terms & Conditions dated effective 03/28/2019 | VME PROCESS, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1764 | | Other | Vision Service Provider | VSP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1765 | 4/23/1975 | Joint Operating Agreement | Operating Agreement eff. 4-23-75 | W & T Energy VI, Arena, W & T Offshore,  Wichita Partnership | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1766 | 8/28/2014 | Facilities & Tie-In Agreements | Bridging Agreement dated 28 Aug 2014 by and between the Big Bend Producers Noble Energy Inc, W+T Energy VI, LLC, Red Willow Offshore, LLC and HEDV V, LLC bridging the responsibilities of the Loop Operator and Big Bend Field Operator | W & T Energy VI, LLC; Red Willow Offshore, LLC; Houston Energy Deepwater Ventures V, LLC; Noble Energy Inc, ILX Prospect Dantzler, LLC, Ridgewood Dantzler | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1767 | 2/1/1994 | Joint Operating Agreement | JOperating Agreement eff. 2/1/94 | W & T Offshore | Fieldwood Energy Offshore LLC | SS 301 Lease G10794 | | $0.00 | Assume and assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1768 | 5/19/2003 | Joint Operating Agreement | JOperating Agreement eff. 5/19/03 | W & T Offshore | Fieldwood Energy Offshore LLC | SS 301 Lease G10794 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1769 | 4/10/1956 | Unit Agreement and/or Unit Operating Agreement | Unit No. 891002891 - SS 32 | W & T Offshore, Inc. | Fieldwood Energy LLC | SS 30 Lease 333, SS 31 Lease 334, SS 32 Lease 335, SS 33 Lease 336 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1770 | 11/21/2019 | Withdrawal Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.; W&T Withdrawal from EC 2 SL 18121 - W&T did not prepay abandonment | W&T Offshore, Inc. | Fieldwood Energy LLC | EC 2 Lease 18121 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1771 | 12/10/2019 | Other Misc. | by and between Fieldwood Energy LLC and W&T Offshore, Inc.; W&T Non-consent lease saving operation on EC 2 SL 18121 for failure to respond to lease number FW194042 | W&T Offshore, Inc. | Fieldwood Energy LLC | EC 2 Lease 18121 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1772 | 7/8/2016 | Letter Agreement - Other Land | by and between Fieldwood Energy LLC and W&T Offshore, Inc.; Fieldwood's response to W&T Letter Agreement - HI 129 #16 Well - Final Agreement | W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1773 | 7/21/2016 | Operating Agreement - Other | by and between Fieldwood Energy LLC and W&T Offshore, Inc.; Contract Operating Agreement eff. 7-21-16 | W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1774 | 7/21/2016 | Operating Agreement - Other | by and between Fieldwood Energy LLC and W&T Offshore, Inc.; Contract Operating Agreement - #16 well | W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1775 | 7/11/2012 | Letter Agreement - Operating Agreement | Letter Agreement Pursuant to Operating and Processing Agreement dated 06/13/1996 by and between W&T Offshore, Inc. and Dynamic Offshore Resources, LLC | W&T Offshore, Inc. and Dynamic Offshore Resources, LLC | | SS 300 Lease G07760, SS 301 Lease G10794 | W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1776 | 11/1/2014 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement between Walter and FedGov for EW 834 Unit dated 1 Nov 14 as amended by that first amendment dated 1 April 2016 | Walter and FedGov for EW 834 Unit dated 1 Nov 14 as amended by that first amendment dated 1 April 2016 | | EW 790 Lease G33140, EW 834 Lease G27982, EW 835 Lease G15156, MC 793 Lease G33177, EW 789 Lease G35805 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1777 | 9/1/1985 | Operating Agreement - Other | Agreement for ownership and operation of Platform and Facilities | Walter O&G, Castex, GOME 1271 | | HI 176 Lease G06164 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1778 | 4/23/2014 | Other Misc. | Letters of No Objection, Lease & Pipeline Crossings: Approx to ST 276, 296 & 311, includes indemnification | Walter Oil & Gas Corporation | Fieldwood Energy LLC | ST 276 Lease G07780 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1779 | 7/15/2008 | Property Participation & Exchange Agreements | ST 311 Participation Agreement-Walter & APA-7-15-2008 | WALTER OIL & GAS CORPORATION | | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1780 | 7/15/2008 | Assignment of ORRI | ST 311 Walter ORRI Assign. | WALTER OIL & GAS CORPORATION | | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1781 | 9/15/2017 | Operating Agreement - Other | ST 311-320 JDA Offshore Operating Agreement dtd 9-15-17, as amended | Walter Oil & Gas Corporation and W & T Offshore , et al | Fieldwood Energy LLC | ST 311 Lease G31418, ST 320 Lease G24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1782 | 12/1/2011 | Property Participation & Exchange Agreements | ST 311 Participation Agreement-Walter & APA & Castex-12-1-2011 | Walter Oil & Gas Corporation, Apache, Castex | | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1783 | 7/2/2015 | Assignment of Oil & Gas Leasehold Interest(s) | By and between Walter Oil & Gas Corporation, Castex Offshore, Inc., Fieldwood Energy LLC and Apache Shelf Exploration LLC as "Seller" and Discovery Producer Services LLC as "Buyer" | Walter Oil & Gas Corporation, Castex Offshore, Inc., Fieldwood Energy LLC and Apache Shelf Exploration LLC as "Seller" and Discovery Producer Services LLC as "Buyer" | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FWI | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1784 | 1/15/2010 | Farmout Agreement | Farmout Agreement by and between Noble Energy Inc and Walter Oil and Gas Corporation dated 15 Jan 10 as amended by (a) First Amndt dated (b) Second Amndt dated (c) Third Amndt dated (d) Fourth Amndt dated 1 March 15 (Walter assigned NBL an ORRI) (e) Fifth Amendment dated 1 June 2018 (f) Consent to Assign dated 31 Jan 20 | Walter Oil and Gas Corporation | Fieldwood Energy LLC | EW 790 Lease G33140, EW 834 Lease G27982 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1785 | 11/1/2014 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement between Walter and Non-Ops (FW holds 0% WI in UOperating Agreement). Included only as it farmed out its WI to Walter and retained ORRI. | Walter Oil and Gas Corporation | Fieldwood Energy LLC | EW 790 Lease G33140, EW 789 Lease G35805, EW 834 Lease G27982, EW 835 Lease G15156, MC 793 Lease G33177 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1786 | 12/1/2014 | Letter Agreement - UOA | Nobles stipulations to Walter prior to signing UOA dated 1 Dec 14 | Walter Oil and Gas Corporation | Fieldwood Energy LLC | EW 790 Lease G33140, EW 834 Lease G27982, EW 835 Lease G15156, EW 789 Lease G33177 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1787 | | Oilfield Services | Master Service Contract dated effective November 01, 2013 | WARD LEONARD | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1788 | | Oilfield Services | 548135_Master Services Agreement dated effective 12/01/2013 | WARRIOR ENERGY SERVICES CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1789 | | Non-Oilfield Services | Dumpster rental and pickup agreement | WASTE CONNECTIONS BAYOU, INC | Fieldwood Energy LLC | n.a. | n.a. | $27.33 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1790 | | Oilfield Services | Trash Disposal (Creole, FW North, and Myette Point) | WASTE MANAGEMENT, INC | Fieldwood Energy LLC | n.a. | n.a. | $1,433.59 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1791 | | Oilfield Services | 525177_Master Services Agreement dated effective 01/01/2014 | WAVELAND SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1792 | | Oilfield Services | Casing, Cement, Float Equipment | WEATHERFORD GEMOCO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1793 | | Oilfield Services | Master Service Contract dated Feb 11, 2020 | WEATHERFORD LABORATORIES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1794 | | Oilfield Services | Casing Services, Liner Hanger, Float Equip., Packers Completion Tools, Eline/Wireline, Fishing, Sample Analysis, Trucking | WEATHERFORD U.S. LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1795 | | Oilfield Services | Master Service Contract dated November 01, 2013 | WEATHERFORD U.S., L.P | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1796 | | Oilfield Services | 509006_Master Services Agreement dated effective 11/17/2014 | WEIR SEABOARD | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1797 | 1/17/2014 | Non-Oilfield Services | MSA - WellEz / Quorum (WellEz) - Fieldwood Amendment 11.4.19 - signed 2019 11-05 | WELLEZ INFORMATION MANAGEMENT, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1798 | 1/1/2013 | Overriding Royalty Interest Agreement | ORRI granted to Western Geco by Samson Offshore, LLC dated 1 January 2013 covering blocks GC 679 and GC768 | Western Geco, Samson Offshore | Fieldwood Energy LLC | GC 679 Lease G21811, GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1799 | 3/3/1998 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN WESTPORT OIL AND GAS COMPANY INC. AND BASIN EXPLORATION INC. | WESTPORT OIL AND GAS COMPANY INC. AND BASIN EXPLORATION INC. | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1800 | 3/3/1998 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT EFFECTIVE MARCH 3, 1988, BY AND BETWEEN WESTPORT OIL AND GAS COMPANY, INC, AND BASIN EXPLORATION, INC. | WESTPORT OIL AND GAS COMPANY, INC. AND BASIN EXPLORATION, INC. | Fieldwood Offshore LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1801 | | Oilfield Services | 531921_Master Service Agreement dated effective 10/02/2018 | WHITCO PUMP & EQUIPMENT LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1802 | | Oilfield Services | 529263_PO Terms & Conditions dated effective 02/10/2017 | WHITCO SUPPLY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1803 | 3/1/2010 | Marketing - Transportation | Gathering and Dedication of Reserves by and between Wild Well (FWE) and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Wild Well (FWE) and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1804 | 11/1/2020 | Marketing - Transportation | It Gathering, dedication for GC 243 - Aspen, \$.09 by and between Wild Well Aspen (FWE) and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Wild Well Aspen (FWE) and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | GC 243 Lease G20051 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1805 | | Oilfield Services | 511358_Master Services Agreement dated effective 12/01/2013 | WILD WELL CONTROL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1806 | 1/1/2010 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchase and Sale Agreement by and between Wild Well Control, Inc and Shell Offshore Inc dated 31 Jan 2010 but effective 1 Jan 2010 as Amended 26 Aug 2010 | Wild Well Control, Inc and Shell Offshore Inc dated 31 Jan 2010 but effective 1 Jan 2010 as Amended 26 Aug 2010 | | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900, GC 64 Lease G07005 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1807 | 11/1/2016 | Acquisition / PSA / Other Purchase or Sale Agreements | by and between Fieldwood Energy Offshore LLC and Wild Well Control, Inc : 51% of the Rocky 12-in pipeline Segment 8255 running approximately 7.3 miles between the GC 65 "A" platform and the GC 19 "A" Platform | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 19/65 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1808 | 12/2/2016 | Well / Prospect Proposals | Fieldwood Offer to Purchase Wild Well's Interest in the Rocky 12' Pipeline | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 19/65 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1809 | 1/1/2010 | Joint Operating Agreement | Joint Operating Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated effective 1 Jan 2010 | Wild Well Control, Inc | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900, GC 64 Lease G34539 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1810 | 1/26/2012 | Letter Agreement - JOA | Letter Agreement regarding Green Canyon 65 Unit Joint Operating Agreement Amendment for Bullwinkle Drilling Program, dated January 26, 2012, between Dynamic Offshore Resources, LLC and Wild Well Control, Inc. | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1811 | | Oilfield Services | Weather Service | WILKENS WEATHER TECHNOLOGIES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1812 | | Oilfield Services | Trash Disposal (Cameron Dock) | WILKERSON TRANSPORTATION, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1813 | 3/1/2001 | Marketing - Gas Sales | MP 259 no longer flowing by and between WILLIAMS ENERGY SERVICES COMPANY, AND DEVON SFS OPERATING, INC. | WILLIAMS ENERGY SERVICES COMPANY, AND DEVON SFS OPERATING, INC. | | MP 255/259, VK 692, 693, 694, 698 Lease G07827 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1814 | 8/1/1998 | Marketing - Gas Sales | MP 259 no longer flowing by and between WILLIAMS ENERGY SERVICES COMPANY, AND SNYDER OIL COMPANY | WILLIAMS ENERGY SERVICES COMPANY, AND SNYDER OIL COMPANY | | MP 255/259, VK 692, 693, 694, 698 Lease G07827 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1815 | 6/24/1997 | Marketing - Gas Sales | MP 259 no longer flowing by and between WILLIAMS ENERGY SERVICES COMPANY, AND SNYDER OIL COMPANY AND SOCO OFFSHORE, INC. | WILLIAMS ENERGY SERVICES COMPANY, AND SNYDER OIL COMPANY AND SOCO OFFSHORE, INC. | | MP 255/259, VK 692, 693, 694, 698 Lease G07827 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1816 | 12/10/2013 | Marketing - Gas Export Agreement | Williams Field Services Lateral agreement | Williams Field Services | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1817 | 12/10/2013 | Marketing - Gas Export Agreement | Williams Field Services Lateral agreement | Williams Field Services | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1818 | 12/10/2013 | Marketing - Gas Export Agreement | Williams Field Services Lateral agreement | Williams Field Services | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Reorganization (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1819 | 12/10/2013 | Marketing - Transportation | Williams Field Services Gas Gathering Agreement (Canyon Chief) | Williams Field Services | | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1820 | 12/10/2013 | Marketing - Transportation | Williams Field Services Gas Gathering Agreement (Canyon Chief) | Williams Field Services | | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1821 | 12/10/2013 | Marketing - Transportation | Williams Field Services Gas Gathering Agreement (Canyon Chief) | Williams Field Services | | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1822 | | Oilfield Services | 525605_Master_Service_Contract Effective_6-27-2018 | W-INDUSTRIES INC - TEXAS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1823 | | Oilfield Services | Wireline Rentals; No Longer a Schlumberger Entity | WIRELINE CONTROL SYSTEMS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1824 | | Non-Oilfield Services | DocVue Software License | WOLFEPAK SOFTWARE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1825 | 8/1/2019 | Non-Oilfield Services | Annual Subscription | WOOD MACKENZIE INC | Fieldwood Energy LLC | n.a. | n.a. | $8,802.70 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1826 | | Non-Oilfield Services | Subscription Software License | Workshare Technology Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1827 | | Oilfield Services | 553388_Master Services Agreement dated effective 12/01/2013 | WORKSTRINGS INTERNATIONAL, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1828 | | Oilfield Services | Non-Rotating Casing Protectors | WWT INTERNATIONAL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1829 | | Oilfield Services | 510196_Master Services Agreement dated effective 01/01/2014 | XL SYSTEMS LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1830 | 11/1/2010 | Farmout Agreement | Farmout Agmt b/t XTO Offshore, Inc. and Century Exploration New Orleans | XTO Offshore, Inc. and Century Exploration New Orleans | | | BS 45 Lease 15683 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1831 | 7/22/2020 | Non-Oilfield Services | Consulting Agreement | YAMMM Software LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1832 | 10/18/2018 | Non-Oilfield Services | Software License Agreement | ZETAWARE INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1833 | | Non-Oilfield Services | System Services / License Agreements | ZETAWARE INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1834 | | Oilfield Services | License and System Services Agreement dated effective 10-18-2018 | ZETAWARE INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1835 | | Other | AD&D insurance, business travel insurance | Zurich | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1836 | 4/1/1992 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and. Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf, Contract No. 754394018, as amended | | | SP 61 Lease G01609, SP 66 Lease G01611, SP 67 Lease G01612, SP 6 Lease G03337, SP 17 Lease G02938, SP 59 Lease G02942, SP 59 Lease G02943, SP 59 / 60 Lease G01608, SP 60 Lease G02137 | ANKOR E&P HOLDINGS CORPORATION | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1837 | 4/1/1992 | Unit Agreement and/or Unit Operating Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and. Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1609, South. Pass Area. | | | SP 61 Lease G01609, SP 66 Lease G01611, SP 67 Lease G01612, SP 6 Lease G03337, SP 17 Lease G02938, SP 59 Lease G02942, SP 59 Lease G02943, SP 59 / 60 Lease G01608, SP 60 Lease G02137 | ANKOR E&P HOLDINGS CORPORATION | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1838 | 7/1/1983 | Unit Agreement and/or Unit Operating Agreement | ST 295 UOA. As amended | | Fieldwood Energy LLC | ST 276 Lease G07780, ST 295 Lease G05646, ST 296 Lease G12981 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1839 | 9/1/2010 | Joint Development / Venture / Exploration Agreements | mp-295-Joint Venture Letter Agreement | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1840 | 12/20/2012 | Farmout Agreement | MP 295 Extension 12-20-12 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1841 | 2/1/2013 | Operating Agreement - Other | Primary Term Lands - MOA Recorded 01-2015 Revision | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1842 | 2/22/2013 | Joint Development / Venture / Exploration Agreements | Heron Prospect (MP 295) Letter of Agreement 2-22-13 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1843 | 6/1/2014 | Operating Agreement - Other | Heron Prospect MOA amd. No.2 6-1-14 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1844 | 1/13/2015 | Letter Agreement - Other Land | Heron Prospect (MP 295) Letter Agmt 1-13-15 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1845 | 7/10/2015 | Termination / Ratification and Joinder of Operating or Other Agreements | MP 295 9-18-2012 Farmout Termination Ltr dtd 7-10-15 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1846 | 8/7/1953 | Unit Agreement and/or Unit Operating Agreement | HI 179 Unit Agreement | | Fieldwood Energy LLC | HI 179 Lease G02336 | ARENA ENERGY LP, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1847 | 1/1/1978 | Unit Agreement and/or Unit Operating Agreement | HI 179 Unit Operating Agreement | | Fieldwood Energy LLC | HI 179 Lease G02336, GA 180 Lease G03228 | ARENA ENERGY LP, Transcontinental Gas Pipeline Co LLC; ARENA ENERGY LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1848 | 8/1/1997 | Unit Agreement and/or Unit Operating Agreement | EC 331/332 Unit Operating Agreement | | Fieldwood Energy LLC | EC 331 Lease G08658, EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1849 | 6/1/2009 | Operating Agreement - Other | JOperating Agreement CA 42/43 | | | CA 42/43 Lease G32267, CA 43 Lease G32268 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1850 | 1/1/1987 | Joint Operating Agreement | Joint Operating Agreement 1-1-87 | | Fieldwood Energy LLC | GI 83 Lease G03793 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1851 | 1/1/1990 | Joint Operating Agreement | Operating Agreement effective January 1, 1990 | | Fieldwood Energy LLC | EI 361 Lease G02324 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1852 | 7/1/1994 | Operating Agreement - Other | Operating Agreement 7/1/1974 | | Fieldwood Energy LLC | HI A582 Lease G02719 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1853 | 8/4/2000 | Farmout Agreement | Farmout Agreement 8/4/2000 | | Fieldwood Energy LLC | HI A582 Lease G02719 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1854 | 4/13/2009 | Letter Agreement - JOA | Letter Agreement AmendingArticle 12.2 of Joint Operating Agreement | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134, MC 904 Lease G36566, MC 905 Lease G36405 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1855 | 5/7/2009 | Letter Agreement - JOA | Letter Agreement AmendingArticle 12.2 of Joint Operating Agreement | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134, MC 904 Lease G36566, MC 905 Lease G36405 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1856 | 4/25/2011 | Letter Agreement - Other Land | Rescinds AFE | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 N/2 Lease G24133, MC 993 N/2 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the contract terms between the Debtors, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [7][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1857 | 10/25/2012 | Letter Agreement - UOA | One time supersedence of UOperating Agreement provision 11.2 | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1858 | 1/1/2013 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Mississippi Canyon Block 948 Unit, Contract No. 754313005. | | | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1859 | 12/10/2013 | Marketing - Gathering | | | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1860 | 12/10/2013 | Marketing - Gathering | | | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1861 | 12/10/2013 | Marketing - Gathering | | | | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G32363, MC 904 Lease G36566 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1862 | 2/20/2014 | Letter Agreement - UOA | One time supersedence of UOperating Agreement provision 8.3.1 | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1863 | 10/1/1997 | Unit Agreement and/or Unit Operating Agreement | MI 623 Unit Operating Agreement | | Fieldwood Energy LLC | MI 623 Lease G03088 | EOG RESOURCES INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1864 | 7/1/1983 | Unit Agreement and/or Unit Operating Agreement | EI 212 Unit Operating Agreement | | Fieldwood Energy LLC | EI 212 Lease G05503 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1865 | 7/1/1984 | Unit Agreement and/or Unit Operating Agreement | MP 310 Unit Operating Agreement | | Fieldwood Energy LLC | MP 303 Lease G04253, MP 304 Lease G03339, MP 310 Lease G04126 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1866 | 6/7/1988 | Unit Agreement and/or Unit Operating Agreement | EI 212 Unit Agreement | | Fieldwood Energy LLC | EI 212 Lease G05503 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1867 | 3/29/2005 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest - EI 312 N/2 | | | EI 312 Lease G22679 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1868 | 10/25/2005 | Operating Agreement - Other | Operating Agreement 10-25-05 | | Fieldwood Energy LLC | EI 312 Lease G22679, EI 311 Lease G27918 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1869 | 2/8/2006 | Letter Agreement - Other Land | SS 204 A36ST1 Non-Consent 500% Penalty | | | SS 204 Lease G01520 | EPL OIL & GAS, LLC, KINETICA DEEPWATER EXPRESS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1870 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8-1-73 | | Fieldwood Energy LLC | HI A474 Lease G02366 | FREEPORT MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1871 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8-1-73 | | | HI A489 Lease G02372 | FREEPORT MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1872 | 10/1/2004 | Operating Agreement - Other | Operating Agreement eff. 10-1-04 | | Fieldwood Energy LLC | SS 159 Lease G11984 | HOACTZIN PARTNERS LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1873 | 2/11/2009 | Other Handling - / Stabilization Agreements | Anchor Producer PHA dated 11 Feb 2009 (FWINBL not a party; info only) | | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1874 | 9/1/2016 | Letter Agreement - Other Land | | | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1875 | 5/5/2017 | Letter Agreement - Other Land | | | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1876 | 9/11/2017 | Letter Agreement - Other Land | | | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1877 | 4/1/2018 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement No. 754318002 for the Green Canyon Block 40 Unit approved by the BOEM effective April 1, 2018 | | | EW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880, GC 040 Lease G34536, GC 041 Lease G34537, GC 39 A Lease G34966, GC 039 B Lease G36476 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1878 | 7/1/1990 | Unit Agreement and/or Unit Operating Agreement | MP 259 Unit Agreement and Unit Operating Agreement | | | MP 259 Lease G07827, VK 692/693 Lease G07898 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1879 | 7/24/2006 | Operating Agreement - Other | Operating Agreement eff. 7-24-06 | | Fieldwood Energy LLC | PL 9 Lease G02924 | MCMORAN OIL & GAS LLC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1880 | 1/17/1963 | Marketing - Construction, Operations, Management, Ownership Agreements | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | | | WC 65 G02825, WC 66 G02826, WC 72 G23735, EC 2 SL16473 16473 | n.a. | $0.00 | Assume and allocate pursuant to divisive mergers | x | | | |
| 1881 | 3/24/1972 | Unit Agreement and/or Unit Operating Agreement | SP 65 G G-1 Unit Res B Unit Agreement -89/1012327 | | Fieldwood Energy LLC | SP 65 Lease G01610, MP 152 Lease G01966, MP 153 Lease G01967 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1882 | 5/18/1972 | Unit Agreement and/or Unit Operating Agreement | SP 65 G G-1 Unit Res A Unit Agreement-89/1012332 | | Fieldwood Energy LLC | SP 65 Lease G01610, MP 152 Lease G01966, MP 153 Lease G01967, SP 64 Lease G01901 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1883 | 5/18/1972 | Unit Agreement and/or Unit Operating Agreement | SP 65 G2-G3 Unit Agreement-89/1012333 | | Fieldwood Energy LLC | SP 65 Lease G01610, MP 152 Lease G01966, MP 153 Lease G01967, SP 64 Lease G01901 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1884 | 10/1/1997 | Unit Agreement and/or Unit Operating Agreement | SP 65 G G-1 Unit Res A UOperating Agreement | | Fieldwood Energy LLC | SP 65 G G-1 Unit Res A Lease G01610 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1885 | 10/1/1997 | Unit Agreement and/or Unit Operating Agreement | SP 65 G G-1 Unit Res B UOperating Agreement | | Fieldwood Energy LLC | SP 65 G G-1 Unit Res B Lease G01610 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1886 | 10/1/1997 | Unit Agreement and/or Unit Operating Agreement | SP 65 G2-G3 UOperating Agreement | | Fieldwood Energy LLC | SP 65 G2-G3 Lease G01610 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1887 | 4/1/2008 | Marketing - PHA | Ratification of SM 44 "C"- SM 40"JA" PHA for SM 40 C-2/C2D Well | | | SM 40 Lease G13607, SM 44 Lease G23840 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1888 | 10/1/1981 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A | | Fieldwood Energy LLC | SP 87 Lease G07799, SP 89 Lease G01618, WD 105 Lease 842, WD 86 Lease G02934, WD 104 Lease 841, WD 105 Lease 842, WD 121 Lease G15843, WD 122 Lease G13645, WD 128 Lease G10883, SP 87 Lease G07799, SP 88 Lease G10894 | TALOS ERT LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1889 | 9/26/1982 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and and | | Fieldwood Energy LLC | SP 88 Lease G01618, WD 86 Lease G02934, WD 128 Lease G10883, WD 104 Lease 841 | TALOS ERT LLC, THE LOUISIANA LAND & EXPL CO LLC, SANARE ENERGY PARTNERS, LLC, Texas Eastern Transmission / Spectra Energy | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1890 | 8/3/1964 | Unit Agreement and/or Unit Operating Agreement | Operating Agreement eff. 8-3-64 | | GOM Shelf LLC | SM 108 Lease 792 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1891 | 5/1/2000 | Operating Agreement - Other | Operating Agreement eff. 5/100 | | Fieldwood Energy LLC | SM 93 Lease G21618 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1892 | 3/28/2014 | Well / Prospect Proposals | Proposal Amendment and Various requests for extension from Stone and election by Fieldwood | | Fieldwood Energy LLC | MC 108 Lease G09777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1893 | 10/1/1997 | Operating Agreement - Other | SP 61, 70 Joint Operating Agreement eff. 10-1-97 | | Fieldwood Energy LLC | SP 70 Lease G01614 | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1894 | 3/1/2009 | Operating Agreement - Other | Operating Agreement | | | BS 25 Lease 19718, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1895 | 8/14/2013 | Unit Agreement and/or Unit Operating Agreement | UV B RA Voluntary Unit Agreement | | | BS 45 Lease 15683, BS 52/53 Lease 17675 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1896 | 11/1/1978 | Operating Agreement - Other | Operating Agreement eff. 11/1/78 | | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1897 | 9/15/2003 | Operating Agreement - Other | 9/15/2003 operating agreement | | | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1898 | 2/5/2004 | Other Handling - / Stabilization Agreements | 2/5/2004 production handling agreement (which was amended and ratified by the 8/25/2016 PHA) | | | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**

Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*  [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.  The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between this Schedule of Assumed Contracts, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand,  and this Schedule of Assumed Contracts, the applicable Transaction Document shall control.

Applicable Entity

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1899 | 1/6/2005 | Termination / Ratification and Joinder of Operating or Other Agreements | 1/6/2005 ratification of 9/15/2003 operating agreement | | | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1900 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8/1/73 | | Fieldwood Energy LLC | HI 110 W/2 Lease G02353 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1901 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8/1/73 | | | HI 111 E/2 Lease G02354 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1902 | 6/1/2001 | Operating Agreement - Other | Offshore Operating Agreement 6/1/2001 | | Fieldwood Energy LLC | ST 315 Lease G23946, ST 316 Lease G22762 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1903 | 3/1/2014 | Operating Agreement - Other | ST 320 Contract Operating Agreement dtd 3-1-14 | | | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1904 | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 | | Fieldwood Energy LLC | WC 290 Lease G04818 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 1905 | 1/1/1985 | Operating Agreement - Other | Operating Agreement eff. 1/1/85 | | Fieldwood Energy LLC | MP 300 Lease G01317 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1906 | 7/2/1986 | Farmout Agreement | Farmout Agreement 7/2/1986 | | Fieldwood Energy LLC | WC 290 Lease G04818 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 1907 | 6/28/2006 | Operating Agreement - Other | JOperating Agreement eff. 6-28-86 | | Fieldwood Energy LLC | MP 301 Lease G04486 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1908 | 10/16/2013 | Other Misc. | ST 311 A Platform Construction Contract Gulf Island LLC and Walter Oil and Gas dtd 10-16-13 | | | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1909 | 4/1/2015 | Dedication Agreements | ST 311 Gas Dedication and Gathering Agreement eff 04012015 | | | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1910 | 4/1/2015 | Other Handling / Stabilization Agreements | ST 311 Liquids Separation, Handling, Stabilization and Redeliv Agreement eff 04012015 | | | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1911 | 4/1/2015 | Other Transportation Agreements | ST 311 Liquids Transportation Agreement eff 04012015 | | | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1912 | 9/15/2017 | Other Misc. | ST 311 320 UCC_Mortgage and Conveyance | | | ST 311 Lease G31418, ST 320 Lease G24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1913 | 9/15/2017 | Property Participation & Exchange Agreements | ST 311-320 JDA Participation Agreement dtd 9-15-17 | | | ST 311 Lease G31418, ST 320 Lease G24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1914 | 11/5/2019 | Transfer Agreement & Notices | | | | ST 311 Lease G31418, ST 320 Lease G24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1915 | 6/16/2003 | Unit Agreement and/or Unit Operating Agreement | TEX W RA SUA Unit Agreement | | | BS 45 Lease 15683 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1916 | 5/11/2011 | Pipeline Use / Tie-In / Modification Agreements | Pipeline Tie-In and Use Agreement | | | MP 112 Lease G09707 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | x | |
| 1917 | 11/1/2013 | Master Service Agreement | Platform Audits / BSEE Drawings | | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1918 | 6/24/2019 | Master Service Agreement | -- IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises | | Fieldwood Energy LLC | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1919 | 8/6/2019 | Right of Use Easement | USACE RUE DACW29-2-17-73 SP60 | | | SP 60 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1920 | 10/2/2019 | Other Services Agreements | IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises | | Fieldwood Energy LLC | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1921 | 10/30/2019 | Master Service Agreement | Industry Standards, Analytics, and Research / Subscription Service | | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1922 | 11/15/2019 | Master Service Agreement | Industry Standards, Analytics, and Research / Subscription Service | | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1923 | 1/1/2004 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Marketing - Construction, Operations, Management, Ownership Agreements | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condensate from Sea Robin Pi by and between Fieldwood Energy LLC and and | | Fieldwood Energy LLC | EC 178 Lease G34229, EC 261 Lease G00971, EC 278 Lease G00974, EC 338 Lease G02063, EC 332 Lease G09478, EI 337 Lease G03332, EI 307 Lease G02110, EI 315 Lease G24912, EI 361 Lease G02324, EI 316 Lease G05040, EI 330 Lease G02115, EI 330 Lease G02115, EI 333 Lease G02317, EI 337 Lease G03332, EI 361 Lease G02324, SM 39 Lease G16320, SM 40 Lease G13607, SM 142 Lease G01216, SM 128 Lease G02567 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 1924 | 11/19/2018 | Master Service Agreement | Regulatory | | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1925 | 6/12/2018 | Marketing - Transportation | Ratification and Joinder of the Gas Lateral Transportation Agreement effective June 12, 2018 by and between Murphy Exploration & Production Company-USA, Eni Petroleum USA LLC and Marubeni Oil and Gas (USA) LLC, in their capacities as "Pipeline Owners"; Murphy, in its capacity as operator of the Transportation System; Fieldwood Energy LLC in its capacity as a producer in the Big Bend Leases and the Dantzler Leases; and Fieldwood, in its capacity as operator of the Big Bend Leases and the Dantzler Leases | Murphy Exploration & Production Company-USA, Eni Petroleum USA LLC and Marubeni Oil and Gas (USA) LLC, in their capacities as "Pipeline Owners"; Murphy, in its capacity as operator of the Transportation System; Fieldwood Energy LLC in its capacity as a producer in the Big Bend Leases and the Dantzler Leases; and Fieldwood, in its capacity as operator of the Big Bend Leases and the Dantzler Leases | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343, MC 782 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC, RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VII LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1926 | 6/12/2018 | Marketing - Transportation | Ratification and Joinder of Oil Lateral Transportation Agreement effective June 12, 2018 by and between Murphy Exploration & Production Company-USA, Eni Petroleum USA LLC and Marubeni Oil and Gas (USA) LLC, in their capacities as "Pipeline Owners"; Murphy, in its capacity as operator of the Transportation System; Fieldwood Energy LLC in its capacity as a producer in the Big Bend Leases and the Dantzler Leases; and Fieldwood, in its capacity as operator of the Big Bend Leases and the Dantzler Leases | Murphy Exploration & Production Company-USA, Eni Petroleum USA LLC and Marubeni Oil and Gas (USA) LLC, in their capacities as "Pipeline Owners"; Murphy, in its capacity as operator of the Transportation System; Fieldwood Energy LLC in its capacity as a producer in the Big Bend Leases and the Dantzler Leases; and Fieldwood, in its capacity as operator of the Big Bend Leases and the Dantzler Leases | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343, MC 782 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC, RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VII LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1927 | 7/31/2018 | Marketing - PHA | Joinder Agreement effective July 31, 2018 by and between SBM Gulf Production, LLC, Fieldwood Energy LLC, Murphy Exploration & Production Company - USA, Marubeni Oil & Gas (USA) LLC and Eni Petroleum US LLC | SBM Gulf Production, LLC, Fieldwood Energy LLC, Murphy Exploration & Production Company - USA, Marubeni Oil & Gas (USA) LLC and Eni Petroleum US LLC | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1928 | 2/14/2019 | Settlement / Release / Relinquishment Agreements | Settlement Agreement and Release made and entered into 2/14/2018 by and between Fieldwood Energy LLC, Fieldwood Energy SP LLC, Dynamic Offshore Resources NS, LLC, Bandon Oil and Gas, LP and Northstar Offshore Group, LLC by and through The Litigation Trust | Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy SP LLC, Dynamic Offshore Resources NS, LLC, Bandon Oil and Gas, LP and Northstar Offshore Group, LLC by and through The Litigation Trust | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Fieldwood Energy SP LLC | PL 8 Lease G03587, PL 13 Lease G03171, SM 39 Lease G16320, SM 142 Lease G01216, SM 143 Lease G01217, VR 196 Lease G19760, VR 207 Lease G19760 | ANKOR ENERGY LLC; ANKOR ENERGY LLC; ENVEN ENERGY VENTURES, LLC; HALLIBURTON ENERGY SERV INC; ARENA ENERGY LP, ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 1929 | 4/1/2021 | HWCG SUB LLC Organizational Docs. | Second Amended and Restated Limited Liability Company Agreement of HWCG Holdings LLC dated effective as of April 1, 2021 | Fieldwood Energy LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Relates to membership unit in HWCG LLC | | | | |
| 1930 | 1/25/2007 | Unrecorded Easement | Unrecorded Easement Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana | Tennessee Gas Pipeline Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1931 | 1/25/2007 | Unrecorded Easement | Unrecorded Easement Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana | Harvest Pipeline Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1932 | 10/1/2006 | Surface Lease | Surface Lease Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 308481) | Cora Lee Crain Byrd et al | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1933 | 10/1/2006 | Surface Lease | Surface Lease Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 308481) | James Donald Richard et al | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1934 | 10/1/2006 | Surface Lease | Surface Lease Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 308481) | Richard Theriot etal | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1935 | 10/1/2006 | Surface Lease | Surface Lease Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 308483) | Barbara Jean Richard Lemaire | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1936 | 8/10/2006 | Surface Lease | Surface Lease Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 299965) | Melba Lou Vincent Trahan et al | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, *et al.*
Prepared June 11, 2021

**Schedule of Assumed Contracts**
Notes:
[1] The inclusion or exclusion by the Debtors of any contract or lease on this schedule shall not constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.
[2] The Debtors reserve the right, in their reasonable discretion, to further amend this schedule to add or remove any executory contract or unexpired lease for any reason, including executory contracts and unexpired leases that are subject to an Assumption Dispute (as defined in the Plan).
[3] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[4] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[5] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[6] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[7] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[8] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*  [Docket No. 1284] (including any exhibits and schedules thereto as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan of Merger (collectively, the "Transaction Documents"), on the one hand,  and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control.

| # | Contract Date | Contract Category | Contract Description [1][2] | Known Contract Counterparties [3] | Debtor Entities [4] | Associated Leases [5] | Related Lease Parties [6] | Cure Estimate [7] | Proposed Contract Treatment [8] | FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Applicable Entity | | |
| 1937 | 5/4/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 108363) | Delsan Broussard | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1938 | 7/11/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 108661) | Cameron Parish School Board | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1939 | 8/9/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 109068) | Mermentau Mineral & Land Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1940 | 6/29/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 108672) | Miami Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1941 | 9/18/2006 | ROW Amend | ROW Amend Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 301016) | Miami Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1942 | 8/2/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 109150) | Sweet Lake Land and Oil Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1943 | 5/12/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 108365) | Consuelo Skelton | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1944 | 5/3/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 108364) | Emare Theriot | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1945 | 5/3/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 108366) | Euma Theriot | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1946 | 7/22/1966 | ROW | ROW Grand Chenier Separation Facilities/Pipeline Cameron Parish, Louisiana (File No. 108786) | State of Louisiana ROW No. 701 | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

** The Cure Amount for the Apache Decommissioning Agreement is $49,783,795 (the "**Apache Decom Cure Amount**"). Notwithstanding anything contained in the Plan or any other document, the Apache Decom Cure Amount will be satisfied solely by a drawdown on the Standby Facility (as defined in that certain Agreement and Plan of Merger attached to the Apache Implementation Agreement), and not from any other source, and will be paid into Trust A on the Effective Date on or as soon as reasonably practicable thereafter (but in no event later than ten (10) business days following the Effective Date). The Debtors and Apache reserve all rights in the event of any dispute regarding the Apache Decommissioning Agreement, including as to the amount or payment of the Apache Decom Cure Amount.

**<u>Exhibit E</u>**

**Plan Administrator Agreement[3]**

---

[3] The Plan Administrator Agreement remains subject to further review and negotiation with certain parties, including the proposed Plan Administrator.

SUBJECT TO FRE 408
Confidential

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "**Agreement**") is made this [●] day of [●], 2021, by and among Fieldwood Energy Inc.; Fieldwood Energy LLC; Dynamic Offshore Resources NS, LLC; Fieldwood Energy Offshore LLC; Fieldwood Onshore LLC; Fieldwood SD Offshore LLC; Fieldwood Offshore LLC; FW GOM Pipeline, Inc.; GOM Shelf LLC; Bandon Oil and Gas GP, LLC; Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Galveston Bay Pipeline LLC; and Galveston Bay Processing LLC (each, a "**Debtor**" and collectively, the "**Debtors**") and David Dunn of Province, LLC, a [Delaware limited liability company], solely in his capacity as administrator of the Plan (the "**Plan Administrator**").[1] This Agreement sets forth, among other things, the scope of the services to be provided by the Plan Administrator. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Fifth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No.[●]) (as may be further modified, amended or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**").

## RECITALS:

A.      **WHEREAS**, commencing on August 3, 2020 (the "**Petition Date**"), the Debtors filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") voluntary cases (the "**Chapter 11 Cases**") pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

B.      **WHEREAS**, on June 14, 2021, the Debtors filed with the Bankruptcy Court the Plan.

C.      **WHEREAS**, on [●], 2021, the Bankruptcy Court entered an order confirming the Plan (Docket No.[●]) (the "**Confirmation Order**").

D.      **WHEREAS**, pursuant to the Plan, as of the Effective Date, the Plan Administrator shall be appointed as Plan Administrator to implement the Plan and the actions contemplated therein.

E.      **WHEREAS**, pursuant to the Plan, once appointed, the Plan Administrator shall have the authority and right on behalf of the Debtors and the Debtors, as reorganized as of the Effective Date in accordance with the Plan, including FWE III but excluding for the purposes of this Agreement the Post-Effective Date FWE I Subsidiaries (the "**Post-Effective Date Debtors**"), without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement the provisions of the Plan.

**NOW, THEREFORE**, in consideration of the foregoing and the covenants and agreements set forth herein, the sufficiency of which is hereby acknowledged by the parties, the parties hereto agree as follows:

---

[1] [NTD:  We assume the agreement will be executed prior to the Effective Date but conditioned upon the Plan becoming effective.]

1

1. *Acceptance of Appointment*.  The Debtors hereby appoint David Dunn of Province, LLC to serve as Plan Administrator, and Mr. Dunn accepts his appointment as Plan Administrator and agrees to oversee and provide the services to be provided by the Plan Administrator pursuant to the Plan, the Confirmation Order, and as set forth herein (the "**Services**").  Notwithstanding the date of execution of this Agreement, this Agreement shall only become effective on the Effective Date of the Plan.

2. *Duties, Powers, and Rights of Plan Administrator*.  From and after the Effective Date, and until the end of the Plan Administrator's services pursuant to Section 9 hereof, but subject to the Plan and the Confirmation Order, the Plan Administrator shall act for the Debtors and the Post-Effective Date Debtors in the same fiduciary capacity as applicable to a board of directors and officers. The Plan Administrator shall have the rights and powers of a debtor in possession under section 1107 of the Bankruptcy Code, shall be a "representative of the estate" pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be vested with the rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code, and shall have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary; *provided, however*, the Plan Administrator shall have no rights, powers, or duties that are inconsistent with or contrary to the Plan or the Confirmation Order.

Specifically, the Plan Administrator shall have all duties, powers, and rights set forth herein, in the Plan, and in the Confirmation Order, including the following:

(i)  subject to Section 7 of the Plan, except to the extent a Claim has been previously Allowed, control and effectuate the Claims reconciliation process (including Allowance or Disallowance of Claims), in accordance with the terms of the Plan and Confirmation Order, including to object to, seek to subordinate, compromise, estimate, or settle any and all Claims against the Debtors;

(ii)  determine the Distribution Date and make Distributions to holders of Allowed Claims and Interests in accordance with the Plan and Confirmation Order, including distributions from the Claims Reserve, Professional Fee Escrow and Plan Administrator Expense Reserve;

(iii)  exercise its reasonable business judgment to direct and control the Debtors or Post-Effective Date Debtors under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)  prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described in the Plan or this Agreement;

(v)  engage in the ownership, operation (including acting as agent to a designated operator), plugging and abandonment, and decommissioning of the (a) FWE III Assets, including the assets listed on the Schedule of FWE III Oil & Gas Lease Interests and (b) except as otherwise agreed pursuant to an Additional Predecessor Agreement, any assets of any FWE Additional Entity;

**SUBJECT TO FRE 408**
**Confidential**

(vi)    abandon any property determined by the Plan Administrator to be of *de minimis* value or burdensome to the Estates;

(vii)    donate and distribute any surplus Cash, in accordance with Section 6.10 of the Plan, to a Tax Code § 501(c)(3) tax-exempt organization selected by the Plan Administrator;

(viii)    other than any Causes of Action released by the Debtors pursuant to the Plan or, otherwise, purchased by Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, or allocated to FWE I pursuant to the Initial Plan of Merger, prosecute all Causes of Action retained on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors and their Estates;

(ix)    stand in the same position as the Debtors with respect to any claim the Debtors, their Estates, and/or the Post-Effective Date Debtors may have as to any attorney-client privilege, the work-product doctrine, or any other privilege attaching to any documents or communications (whether written or oral), and succeed to all of the rights of the Debtors, their Estates, and/or the Post-Effective Date Debtors to preserve or assert any such privilege; *provided that*, for the avoidance of doubt, any such privilege cannot be waived, limited, or disposed of by the Plan Administrator without the express written consent of Credit Bid Purchaser and its successors and assigns;

(x)    retain, employ, terminate, or replace professionals to assist or represent it in performing its duties under this Agreement, the Plan and Confirmation Order;

(xi)    pay all fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors (expressly excluding any Restructuring Expenses) from the Plan Administrator Expense Reserve;

(xii)    comply with, and cause the Debtors and Post-Effective Date Debtors to comply with, the Debtors' or Post-Effective Date Debtors' continuing obligations under the Credit Bid Purchase Agreement, the Plan and the Confirmation Order;

(xiii)    maintain the books and records and accounts of the Debtors and Post-Effective Date Debtors;

(xiv)    establish and maintain bank accounts in the name(s) of the Post-Effective Date Debtors;

(xv)    establish the Plan Administrator Expense Reserve, deposit Cash in the Plan Administrator Expense Reserve Amount into the Plan Administrator Expense Reserve, and use the Plan Administrator Expense Reserve solely to satisfy the expenses of the Plan Administrator and the Post-Effective Date Debtors as set forth in the Plan;

(xvi)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

**SUBJECT TO FRE 408**
**Confidential**

(xvii)    following the Effective Date, pay any fees and expenses in Cash in accordance with Section 2.4 of the Plan;

(xviii)    administer each Debtor's and Post-Effective Date Debtors' tax obligations, including (a) filing tax returns and paying tax obligations, (b) implementing tax allocation and/or tax sharing agreements among the Post-Effective Date Debtors and their subsidiaries, and (c) representing the interest and account of each Debtor, each Debtor's estate, or each Post-Effective Date Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xix)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors or Post-Effective Date Debtors that are required by the Plan, by any Governmental Unit or applicable law, including any forms and filings required by the Government;

(xx)    cause the Debtors or Post-Effective Date Debtors to pay statutory fees in accordance with Section 12.1 of the Plan;

(xxi)    file a status report with the Bankruptcy Court on a quarterly basis setting forth the activities of the Plan Administrator during such quarter, including an accounting of the Plan Administrator Expense Reserve during such quarter;

(xxii)    perform other duties and functions that are consistent with the implementation of the Plan or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan;

(xxiii)    close the Chapter 11 Cases pursuant to Section 5.24 of the Plan;

(xxiv)    hold in trust the Single Share as custodian for the benefit of the holders of Allowed General Unsecured Claims, and record the Single Share on the books and records maintained by the Plan Administrator;

(xxv)    following the Effective Date, in the Plan Administrator's sole discretion, cause each Post-Effective Date Debtor to take such actions as permitted by applicable law, the applicable Amended Organizational Documents or other applicable corporate governance documents, the Apache Definitive Documents, any Additional Predecessor Agreement Document, as such Post-Effective Date Debtor may determine is reasonable and appropriate, including causing: (a) the taking of any action contemplated by any Additional Predecessor Agreement Documents and the consummation thereof (including the formation of a new entity or consummation of a divisional merger), (b) a Post-Effective Date Debtor to be merged into another Post-Effective Date Debtor or an affiliate of a Post-Effective Date Debtor, (c) a Post-Effective Date Debtor to be dissolved, (d) the legal name of a Post-Effective Date Debtor to be changed, (e) a Post-Effective Date Debtor to convert its form of entity, or (f) the closure of a Post-Effective Date Debtor's Chapter 11 Case;

(xxvi)    following the Effective Date, cause the Post-Effective Debtors to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or

**SUBJECT TO FRE 408**
**Confidential**

necessary or appropriate to effectuate the Plan, including, (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree, (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree, (c) the filing of appropriate organizational documents governing the Post-Effective Date Debtors, including the Post-Effective Date Debtors' respective Amended Organizational Documents, and any amendments or restatements thereto, or any amendments or restatements thereto, or any documents governing any Post-Effective Date Debtor's reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law and, as necessary, other constituent documents, including, without limitation, the organizational documents governing non-Debtor subsidiaries, as permitted by the laws of their respective states of incorporation, (d) the Restructuring Transactions, and (e) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law;

(xxvii)   issue, execute, and deliver any agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan);

(xxviii)  cause the Post-Effective Date Debtors to take all actions consistent with the Plan and the Confirmation Order as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan;

(xxix)    if applicable, establish and transfer certain assets to a liquidating trust for the benefit of one or more classes of Claims pursuant to and in accordance with Section 5.22 of the Plan; and

(xxx)     submit one or more orders to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the US Trustee that closes and issues a final decree for each of the Chapter 11 Cases.

3.   *Board of Directors and Officers*. Upon the Effective Date and except as otherwise set forth in the Plan, the Plan Supplement or the Confirmation Order, the officers and directors of the Debtors existing before the Effective Date shall be relieved of any and all duties with respect to the Debtors, and the Plan Administrator shall serve as the sole officer, director, or manager of each Post-Effective Date Debtor. The Plan Administrator may also elect such additional managers(s) and officer(s) of each Post-Effective Date Debtor as the Plan Administrator deems necessary to implement the Plan and the actions contemplated herein.  The Plan Administrator shall also have the power to act by written consent to remove any officer or manager of any Post-Effective Date Debtor at any time with or without cause.

SUBJECT TO FRE 408
Confidential

4.    *No Other Duties*.  Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to its position.

5.    *Retention of Professionals*.  To implement the provisions of the Plan and the actions contemplated herein, the Plan Administrator may hire (or continue to engage previously hired Estate professionals) attorneys, accountants and other professionals as may be required or appropriate in connection with its duties herein, and pay reasonable compensation to such advisors, including compensation for services rendered prior to the Effective Date.  Any professionals retained by the Plan Administrator, shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable and documented fees, costs and expenses incurred, payable solely from the Plan Administrator Expense Reserve.  For the avoidance of doubt, any compensation for services rendered prior to the Effective Date shall be payable from the Plan Administrator Expense Reserve. The payment of the fees, costs and expenses of the Plan Administrator and its retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided*, *however*, that any disputes related to such fees, costs and expenses may be brought before the Bankruptcy Court by any party-in-interest. For the avoidance of doubt, NewCo and its subsidiaries, including the Credit Bid Purchaser, shall not be liable to any professionals retained by the Plan Administrator for any fees, costs and expenses incurred under this Section 5.

6.    *Insurance*. The Plan Administrator is authorized to obtain all reasonably necessary insurance coverage and will be reimbursed pursuant to Section 8 hereof.

7.    *Fees*.  The fees (including fees for services rendered prior to the Effective Date) of the Plan Administrator and any professional employed by Province, LLC or Stein & Holly Advisors LLC who is retained by the Plan Administrator pursuant to this Agreement or the Plan shall be billed on an hourly basis in accordance with the below:

(i) Mr. David Dunn: $850 per hour;

(ii) Stein & Holly Advisors LLC Professionals: $850 per hour; and

(iii) Province, LLC Professionals: applicable hourly rates, *provided* that individuals on the fiduciary team shall bill at the blended hourly rate of $450 per hour.

All such fees shall be payable monthly solely out of the Plan Administrator Expense Reserve, on a first priority basis, and shall not be subject to the approval of the Bankruptcy Court. For the avoidance of doubt, NewCo and its subsidiaries, including the Credit Bid Purchaser, shall not be liable to the Plan Administrator for any fees and expenses incurred pursuant to this Agreement.

8.    *Expenses*.  In performance of the Services, the reasonable and documented out-of-pocket expenses of the Plan Administrator and its professionals, including any insurance policy obtained by the Plan Administrator in connection with the Services, shall be reimbursed solely from the Plan Administrator Expense Reserve on a monthly basis; *provided*, that the travel expenses of the Plan Administrator and its professionals shall not be reimbursable; *provided further*, that the Plan Administrator may use amounts necessary in the Plan Administrator Expense

SUBJECT TO FRE 408
Confidential

Reserve to obtain any insurance policy reasonably necessary for the performance of the Plan Administrator's duties hereunder.

9. *Service of Plan Administrator*.  The Plan Administrator shall serve until the earliest to occur of (i) the Bankruptcy Court enters an order or orders closing each of the Chapter 11 Cases; (ii) the Bankruptcy Court enters an order removing the Plan Administrator for cause; or (iii) the Plan Administrator voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Plan Administrator is appointed in accordance with the Plan, the Confirmation Order, and this Agreement.  Subject to Section 11, the Plan Administrator may resign at any time by giving at least forty-five (45) days' prior written notice of its intention to do so to the Bankruptcy Court.  Upon the occurrence of any event described in the foregoing clauses, this Agreement shall terminate and no further fees shall be due to the Plan Administrator; *provided* that the Plan Administrator shall be entitled to the payment of compensation and reimbursement of expenses incurred (a) prior to such termination and (b) after such termination in connection with the transition to a successor Plan Administrator, in each case in accordance with Section 8 hereof.

10. *Removal of Plan Administrator.* The Plan Administrator may be removed and replaced at any time for cause.  Any party-in-interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Plan Administrator for cause.[2]  Such removal shall be effective on the date specified in the order approving removal by the Bankruptcy Court.  Notwithstanding the removal of the Plan Administrator pursuant to this Section 10, the rights of the resigning Plan Administrator under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such resigning Plan Administrator following the effectiveness of such resignation.

11. *Resignation of Plan Administrator*. In the event of a resignation, the Plan Administrator shall continue to serve until the date that is forty-five (45) days after the date such notice is filed with the Bankruptcy Court.  Notwithstanding the resignation of the Plan Administrator pursuant to this Section 111, the rights of the resigning Plan Administrator under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Plan Administrator following the effectiveness of such resignation. Notwithstanding any other provision herein, upon the resignation of the Plan Administrator, the undersigned Plan Administrator shall reasonably assist and cooperate in effecting the assumption of the duties by any successor Plan Administrator and continue to serve in such capacity until such time as (i) a successor Plan Administrator is identified and accepts the appointment as Plan Administrator and (ii) notice is provided to the Bankruptcy Court of such successor Plan Administrator pursuant to this Section 11; *provided* that in no event shall the outgoing Plan Administrator be required to continue to serve for a period longer than forty-five (45) days following its resignation.

---

[2] For purposes of this Agreement, the term "for cause" shall mean: (i) the commission of a crime under the laws of the United States or any state thereof involving fraud, theft, false statements or other similar acts, or the commission of any crime that is a felony (or a comparable classification in a jurisdiction that does not use such terms) under such laws; (ii) the willful, grossly negligent or repeated failure to perform any material employment-related duties; or (iii) the willful, grossly negligent or repeated violation of any substantive and material written policy adopted by the Plan Administrator as may be in effect from time to time.

SUBJECT TO FRE 408
Confidential

12. *Appointment of Successor Plan Administrator*. Upon resignation, dissolution, incapacity or removal of a Plan Administrator, the Plan Administrator shall recommend a successor Plan Administrator, on notice and following a hearing to be appointed by order of the Bankruptcy Court. Upon the resignation, dissolution, incapacity or removal of a Plan Administrator, the Bankruptcy Court upon request or on its own motion may appoint a successor Plan Administrator on an interim or permanent basis. Any successor Plan Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator.

13. *Powers and Duties of Successor Plan Administrator*. For the avoidance of doubt, a successor Plan Administrator shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement and the Plan.

14. *Exculpation*. The Plan Administrator, his firms, companies, partners, officers, directors, employees, professionals, representatives, agents, successors, and assigns (collectively, the "**Plan Administrator Parties**") shall not have or incur any liability to any third party, including any Holder of a Claim or Interest, for any act taken or omission made in connection with or related to their performance of the duties conferred upon the Plan Administrator by the Plan, the Confirmation Order, this Agreement, and any orders of the Bankruptcy Court, except to the extent an act is determined by Final Order to be the result of gross negligence, willful misconduct, or fraud. No Holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action against the Plan Administrator or the Plan Administrator Parties for taking any action in accordance with, or to implement the provisions of, the Plan, the Confirmation Order, this Agreement, and any orders of the Bankruptcy Court. No provision of this Agreement or the Plan shall require the Plan Administrator to expend or risk the Plan Administrator's own funds or otherwise incur any financial liability in the performance of any of the Plan Administrator's duties hereunder or under the Plan, or in the exercise of any of the Plan Administrator's rights or powers, if the Plan Administrator shall have reasonable grounds for believing that repayments or funds or adequate indemnity or security satisfactory to the Plan Administrator against such risk or liability is not reasonably assured to the Plan Administrator. The provisions of this Section 14 shall survive the termination of this Agreement.

15. *Indemnification*. The Estates and the Post-Effective Date Debtors shall, to the fullest extent permitted by applicable law, indemnify and hold harmless the Plan Administrator Parties from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs, arising out of or due to the implementation or administration of the Plan or the discharge of the Plan Administrator Parties' duties hereunder or otherwise, except those acts or omissions that are determined by Final Order to have arisen out of such Plan Administrator Parties' gross negligence, fraud, or willful misconduct. In the event that, at any time whether before or after the termination of this Agreement, as a result of or in connection with this Agreement, the Plan Administrator Parties are required to produce any of their personnel (including former employees) or agents for examination, deposition or other written, recorded or oral presentation, or the Plan Administrator Parties are required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any materials within the Plan Administrator Parties' possession or control pursuant to a subpoena or other legal (including administrative) process, the Plan Administrator Parties shall be reimbursed by the

**SUBJECT TO FRE 408**
**Confidential**

Estates and the Post-Effective Date Debtors for the Plan Administrator Parties' counsel, and will be compensated by the Estates and the Post-Effective Date Debtors for the time expended by its personnel or agents based on such personnel or agent's then-current hourly rate. In addition, subject to Section 16 hereof, the Plan Administrator (in its capacity as such) shall be indemnified and held harmless as set forth in Section 5.9(g) of the Plan. The provisions of this Section 15 shall survive the termination of this Agreement. For the avoidance of doubt, nothing in this Section 15 shall require NewCo, or any of its subsidiaries, to assume any indemnification obligations for the Plan Administrator Parties.

16. *Plan Provisions*. In connection with all actions taken in its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any organizational document of the Debtors, this Agreement, the Plan, and the Confirmation Order. Notwithstanding anything herein, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

17. *Reliance by Plan Administrator*. To the fullest extent permitted by applicable law, the Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if it relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of e-mails or facsimiles, to have been sent or the Plan Administrator reasonably believes to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. To the fullest extent permitted by applicable law, the Plan Administrator may consult with counsel, accountants, financial advisors, and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct of the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction). To the fullest extent permitted by applicable law, the Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct of the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction). To the fullest extent permitted by applicable law, the Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection herewith or therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

18. *Cooperation*. The Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, the FWE IV Sole Manager, and NewCo and its subsidiaries (including the Credit Bid Purchaser) and their respective professionals, as appropriate, shall cooperate with each other in relation to their respective activities and obligations in respect

SUBJECT TO FRE 408
Confidential

of the Plan, including objecting to, settling or otherwise reconciling claims as provided herein, and by providing reasonable, good-faith access to personnel, systems, and books and records and their respective personnel and consulting with each other to avoid duplication of effort; *provided, however,* that the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, the FWE IV Sole Manager and NewCo and its subsidiaries (including the Credit Bid Purchaser) and in each case their advisors, if any, shall enter into a confidentiality agreement before sharing any such documents and/or information to the extent deemed reasonably necessary by the Debtors, Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, the FWE IV Sole Manager and NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable.

19. *Other Activities*.  The Plan Administrator shall be entitled to perform services for and be employed by third parties; provided, that such performance or employment affords the Plan Administrator sufficient time to carry out the Plan Administrator's responsibilities and duties as Plan Administrator and such performance or employment does not conflict with or otherwise prohibit the Plan Administrator from performing its responsibilities or duties free of conflict or interruption.

20. *Effect of Termination; Survival*.  Upon termination of this Agreement, the Plan Administrator shall have no further duties or obligations hereunder or as Plan Administrator, except as specifically provided herein.  For the avoidance of doubt, any other provision in the Agreement, which, by its terms, specifically survives termination of the Agreement, shall survive termination of this Agreement.

21. *Headings*.  The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement or of any term or provision hereof.

22. *Amendment; Waiver*.  The Plan Administrator, without the approval of the Bankruptcy Court may, from time to time, modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order; *provided that*, any material modification, supplement or amendment of this Agreement that is inconsistent with the Plan or the Confirmation Order must be presented, on notice, to the Bankruptcy Court for approval.  No failure by any party hereto to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

23. *Notices*.  Any notices or other communications required or permitted hereunder shall be sufficiently given if in writing and personally delivered or sent by registered or certified postage prepaid, return receipt requested, or sent by facsimile, addressed as follows or to such other address as any party shall have given notice of pursuant hereto:

In the case of the Plan Administrator:
David M. Dunn, solely in his capacity as Plan Administrator
Province, LLC
700 Canal Street, Suite 12E
Stamford, CT 06902

**SUBJECT TO FRE 408**
**Confidential**

Email: ddunn@provincefirm.com
Phone: (702) 849-1271

24. *Governing Law*.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to the rules of conflict of laws of the State of Texas or any other jurisdiction.

25. *Retention of Jurisdiction*. The Bankruptcy Court shall retain exclusive jurisdiction over this Agreement.

26. *Conflict with Plan*.  This Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order.  In the event that the provisions of this Agreement (including any amendments pursuant to Section 22 hereof) are found to be inconsistent with the provisions of the Plan, the provisions of the Plan will control, and to the extent any such provisions of this Agreement are found to be inconsistent between the Plan and the Confirmation Order, the provisions of the Confirmation Order will control. Notwithstanding anything to the contrary contained herein, all fees, costs, expenses, and payments hereunder shall be subject in all respects to the provisions of the Plan and the Confirmation Order, including, without limitation, the Plan Administrator Expense Reserve.

27. *Severability*.  If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof.  In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect. Notwithstanding the foregoing, the parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

28. *Integration*.  This Agreement (together with the Plan and the Confirmation Order) sets forth in full the terms of agreement between the parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements and understandings, whether written or oral, between the parties with respect thereto.

29. *Successors and Assigns*.  No party hereto shall have the right to assign its rights hereunder.

30. *Counterparts; Effectiveness*. This Agreement may be executed in one or more counterparts, each of which shall be an original, but all such counterparts shall together constitute one and the same agreement.  Provided the Effective Date has occurred, this Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.  The parties agree that this Agreement will be considered signed when the signature of a party is delivered by facsimile or e-mail transmission. Such facsimile or e-mail signature shall be treated in all respects as having the same effect as an original signature.

**SUBJECT TO FRE 408**
**Confidential**

[*Signature pages follow.*]

**SUBJECT TO FRE 408**
**Confidential**

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**DEBTORS**:

Fieldwood Energy LLC
Fieldwood Energy Inc.
Dynamic Offshore Resources NS, LLC
Fieldwood Energy Offshore LLC
Fieldwood Onshore LLC
Fieldwood SD Offshore LLC
Fieldwood Offshore LLC
FW GOM Pipeline, Inc.
GOM Shelf LLC
Bandon Oil and Gas GP, LLC
Bandon Oil and Gas, LP
Fieldwood Energy SP LLC
Galveston Bay Pipeline LLC
Galveston Bay Processing LLC

By: _____
    Name:
    Title:

*[Signature Page to Plan Administrator Agreement]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**PLAN ADMINISTRATOR**:

By: [Plan Administrator]

_____

Name: [●], solely in its capacity as Plan Administrator and not in any individual capacity
Title:

**<u>Exhibit F</u>**

**Credit Bid Purchase Agreement[4]**

---

[4] The Funding Agreement is attached hereto.

DPW DRAFT
5/26/21

# PURCHASE AND SALE AGREEMENT

## AMONG

## FIELDWOOD ENERGY LLC

### AND

## ITS AFFILIATES SIGNATORY HERETO

## AS SELLERS

### AND

[_____]

## AS BUYER

## DATED

[_____] [____], 2021

**[DISCLAIMER:  This is a proposed form purchase agreement only, and not an offer that can be accepted.  Until the authorized representatives of the Sellers and Buyer agree to and execute a definitive agreement, neither the Sellers nor Buyer has any obligation (legal or otherwise) to conclude a transaction.  Unless included in a definitive agreement, communications (written or oral) shall not create any obligations whatsoever on the Sellers or Buyer and no person, including any recipient of this proposed form, may rely on them as the basis for taking or foregoing any action or opportunity or for incurring any costs.  Further, this proposed form purchase agreement may be amended and/or modified in its entirety to provide for the 363 Credit Bid Transaction in the circumstances contemplated by, and subject to any consents required by, Section 5.2(c) of the Plan.]**

# TABLE OF CONTENTS

**Page**

**ARTICLE I       PURCHASE AND SALE** ...................................................................2
1.1     Purchase and Sale .........................................................................................2
1.2     Acquired Interests; Assets ............................................................................2
1.3     Excluded Assets ............................................................................................9
1.4     Effective Time .............................................................................................10
1.5     Certain Sellers .............................................................................................10

**ARTICLE II      CONSIDERATION** ....................................................................10
2.1     Consideration ...............................................................................................10
2.2     Allocation of Adjusted Consideration .........................................................11
2.3     Consents to Assign ......................................................................................12
2.4     Governmental Approvals .............................................................................14
2.5     Preferential Rights .......................................................................................16
2.6     [Reserved.] ...................................................................................................17
2.7     Withholding .................................................................................................17
2.8     Assets Sold "As Is, Where Is" ....................................................................17
2.9     Presence of Wastes, NORM, Hazardous Substances and Asbestos ...................18

**ARTICLE III     DUE DILIGENCE** ....................................................................19
3.1     Due Diligence ..............................................................................................19

**ARTICLE IV     SELLERS' REPRESENTATIONS** ........................................20
4.1     Organization/Qualification ..........................................................................20
4.2     Power and Authority ....................................................................................20
4.3     Non-Contravention ......................................................................................20
4.4     Authorization and Enforceability ................................................................21
4.5     Liability for Brokers' Fees ..........................................................................21
4.6     Litigation .....................................................................................................21
4.7     Governmental Approvals .............................................................................21
4.8     Preferential Rights; Applicable Consents ....................................................22
4.9     Taxes ...........................................................................................................22
4.10    Well Status ..................................................................................................23
4.11    Compliance with Laws; Permits ..................................................................23
4.12    Environmental Matters ................................................................................24
4.13    Payments ......................................................................................................24
4.14    Material Contracts .......................................................................................24
4.15    Imbalances; Prepayments ............................................................................27
4.16    AFEs; Cash Calls .........................................................................................27
4.17    Labor and Employment Matters ..................................................................27
4.18    Employee Benefits .......................................................................................28
4.19    Non-Consent Operations .............................................................................29
4.20    Suspense Funds ............................................................................................29
4.21    Payout Balances ...........................................................................................29
4.22    Title to Acquired Interests ...........................................................................29
4.23    Insurance ......................................................................................................30
4.24    Related Party Transactions ..........................................................................30
4.25    Intellectual Property ....................................................................................31

i

**TABLE OF CONTENTS**

**(continued)**

| | | |
|---|---|---|
| 4.26 | Undue Influence | 32 |
| 4.27 | No Undisclosed Material Liabilities | 33 |
| 4.28 | Absence of Certain Changes | 33 |
| 4.29 | Equipment and Fixed Assets | 33 |
| 4.30 | Operatorship | 34 |
| 4.31 | Joint Venture | 34 |
| 4.32 | Plan of Merger | 35 |
| 4.33 | Exhibit X-1 | 35 |
| **ARTICLE V** | **BUYERS' REPRESENTATIONS** | 36 |
| 5.1 | Organization; Standing; Capitalization | 36 |
| 5.2 | Power | 37 |
| 5.3 | Non-Contravention | 37 |
| 5.4 | Authorization and Enforceability | 37 |
| 5.5 | Liability for Brokers' Fees | 38 |
| 5.6 | Litigation | 38 |
| 5.7 | Governmental and Third Person Consents | 38 |
| 5.8 | Financial Capability | 38 |
| 5.9 | Qualification | 38 |
| 5.10 | Bankruptcy | 38 |
| 5.11 | Investor Status; Investigation | 38 |
| 5.12 | No Other Representations | 39 |
| **ARTICLE VI** | **COVENANTS AND AGREEMENTS** | 40 |
| 6.1 | Covenants and Agreements of the Sellers | 40 |
| 6.2 | Casualty Event | 43 |
| 6.3 | Press Releases | 43 |
| 6.4 | Solicitation; Other Offers | 44 |
| 6.5 | Regulatory Matters; Cooperation | 44 |
| 6.6 | Bankruptcy Court Matters | 46 |
| 6.7 | Assumption and Assignment of Contracts | 48 |
| 6.8 | Employee Matters | 49 |
| 6.9 | [Reserved] | 52 |
| 6.10 | Certain Agreements | 52 |
| 6.11 | Transfer Orders; Letters in Lieu | 52 |
| 6.12 | Taxes | 52 |
| 6.13 | Commercially Reasonable Efforts | 54 |
| 6.14 | Insurance Policies | 54 |
| 6.15 | Novation of Hedges | 54 |
| 6.16 | Qualification | 54 |
| 6.17 | Settlements with Governmental Authorities | 54 |
| 6.18 | Operator Forms | 55 |
| 6.19 | [Reserved] | 55 |
| 6.20 | Bonds and Insurance | 55 |

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

# TABLE OF CONTENTS

**(continued)**

**Page**

6.21 [New Equity Interests ..................................................................55
6.22 Employment Agreements ...........................................................55

**ARTICLE VII** CONDITIONS PRECEDENT TO CLOSING ......................55
7.1 Conditions Precedent of the Parties ..........................................55
7.2 Sellers' Conditions Precedent ....................................................56
7.3 Buyers' Conditions Precedent.....................................................57

**ARTICLE VIII** RIGHT OF TERMINATION AND ABANDONMENT .........59
8.1 Termination..................................................................................59
8.2 Remedies......................................................................................61
8.3 Specific Performance ..................................................................61

**ARTICLE IX** CLOSING ...........................................................................62
9.1 Date of Closing ...........................................................................62
9.2 Closing Obligations ....................................................................62

**ARTICLE X** POST-CLOSING OBLIGATIONS AND COVENANTS ...........63
10.1 Field Data and Records ..............................................................63
10.2 Suspense Funds; Prepaid JOA Funds .........................................63
10.3 Post-Closing Asset Reconciliation.............................................63
10.4 Assignments; Operatorship ........................................................64
10.5 Confidentiality ............................................................................65
10.6 Seller Marks License...................................................................66
10.7 Power of Attorney .......................................................................66
10.8 No Successor Liability ................................................................66
10.9 Access to Records ......................................................................67
10.10 Payment of Assumed Liabilities ................................................67
10.11 Payment of Retained Liabilities..................................................68
10.12 Accounts Receivables .................................................................68
10.13 Directors' and Officers' Indemnification....................................69
10.14 Rights of Use..............................................................................71
10.15 Post-Closing Agreements............................................................71
10.16 Effective Date Payments.............................................................72

**ARTICLE XI** ASSUMPTION AND RETENTION OF LIABILITIES.............72
11.1 Buyer's Assumption of Liabilities ..............................................72
11.2 Sellers' Retention of Liabilities ..................................................73
11.3 Reservation as to Third Persons .................................................75

**ARTICLE XII** MISCELLANEOUS ............................................................75
12.1 Expenses .....................................................................................75
12.2 Notices ........................................................................................75
12.3 Amendments ...............................................................................77

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

## TABLE OF CONTENTS

### (continued)

**Page**

| | | |
|---|---|---|
| 12.4 | Waiver | 77 |
| 12.5 | No Third-Party Beneficiaries | 77 |
| 12.6 | Assignment | 77 |
| 12.7 | Counterparts | 78 |
| 12.8 | Governing Law; Jurisdiction; Venue; Jury Trial | 78 |
| 12.9 | Entire Agreement | 78 |
| 12.10 | Binding Effect | 79 |
| 12.11 | Time of the Essence | 79 |
| 12.12 | No Partnership; No Fiduciary Duty | 79 |
| 12.13 | Obligations of the Sellers | 79 |
| 12.14 | No Recourse | 79 |
| 12.15 | Disclosure Schedules | 79 |
| 12.16 | Other Contract Interpretation | 80 |

**ARTICLE XIII   SURVIVAL AND INDEMNIFICATION** .................................................. 81

| | | |
|---|---|---|
| 13.1 | Survival; Limited Recourse Against Sellers | 81 |
| 13.2 | Indemnification by Buyer | 82 |
| 13.3 | Indemnification Procedures | 82 |

Annex I        Definitions

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

**EXHIBIT LIST**[1]

| Exhibit | Title |
|---|---|
| EXHIBIT A | Leases |
| EXHIBIT B | Easements |
| EXHIBIT C | Scheduled Wells |
| EXHIBIT D | Platforms and Facilities |
| EXHIBIT D-1 | Inventory |
| EXHIBIT E | Permits |
| EXHIBIT F | Seismic Data |
| EXHIBIT G | Form of Assignment, Bill of Sale and Conveyance for Co-Owned Assets |
| EXHIBIT H | Form of Assignment, Bill of Sale and Conveyance for Other Assets |
| EXHIBIT I | Form of Assignment and Assumption Agreement |
| EXHIBIT J | Form of Assignment of Leases and Subleases |
| EXHIBIT K | Form of Office Assets Conveyance |
| EXHIBIT L | [Reserved] |
| EXHIBIT M | [Reserved] |
| EXHIBIT N | [Reserved] |
| EXHIBIT O | [Reserved] |
| EXHIBIT P | Form of Transition Services Agreement |
| EXHIBIT Q | Form of SEMS Bridging Agreement |
| EXHIBIT R | Form of ST 308 Performance Bond |
| EXHIBIT S | Form of Release Document |
| EXHIBIT T | Form of Farmout Agreement |
| EXHIBIT U | [Reserved] |
| EXHIBIT V | [Reserved] |
| EXHIBIT W | Form of Funding Agreement |
| EXHIBIT X | Working Capital |
| EXHIBIT X-1 | Working Capital Estimate |
| EXHIBIT Y | Specified Oil and Gas Interests |

---

[1] Note to Draft:  Exhibits are subject to ongoing review and comment by Buyer and are subject to change in all respects.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

| Exhibit | Title |
|---------|-------|
| EXHIBIT Z | Specified P&A Equipment |

**SCHEDULE LIST**

| Schedule | Title |
|----------|-------|
| Schedule 1.2 | Applicable Shared Asset Interests |
| Schedule 1.3(d) | Scheduled Exclusions |
| Schedule 4.6 | Litigation |
| Schedule 4.7 | Governmental Approvals |
| Schedule 4.8(a) | Preferential Rights |
| Schedule 4.8(b) | Applicable Consents |
| Schedule 4.9 | Taxes |
| Schedule 4.9(p) | Entity Classifications |
| Schedule 4.12 | Environmental Matters |
| Schedule 4.13 | Payments |
| Schedule 4.14 | Material Contracts |
| Schedule 4.14(c) | Leases and Easements |
| Schedule 4.15 | Imbalances |
| Schedule 4.16(a) | AFEs |
| Schedule 4.16(b) | Cash Calls |
| Schedule 4.18 | Employee Benefits |
| Schedule 4.19 | Non-Consent Operations |
| Schedule 4.20 | Suspense Funds |
| Schedule 4.21 | Payout Balances |
| Schedule 4.22 | Title Matters |
| Schedule 4.22(d) | Owned Real Property |
| Schedule 4.23 | Insurance |
| Schedule 4.24 | Related Party Transactions |
| Schedule 4.25(a) | Owned Intellectual Property |
| Schedule 4.27 | Material Liabilities |
| Schedule 4.28(b) | Absence of Certain Changes |

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

| **Schedule** | **Title** |
|---|---|
| Schedule 4.31(c) | Equity Interests of Fieldwood Mexico and Subsidiaries |
| Schedule 4.31(d) | Fieldwood U.A. Interests |
| Schedule 4.31(f) | Fieldwood U.A. Liabilities |
| Schedule 5.1(c) | Buyer Grandparent Equity Interests |
| Schedule 5.7 | Buyer Governmental and Third Person Consents |
| Schedule 5.9 | Lease Bonds, Area-Wide Bonds, Surety Bonds and Insurance Policies |
| Schedule 6.1(a) | Sellers' Required Operations |
| Schedule 6.1(b) | Sellers' Disallowed Operations |
| Schedule 6.7(g) | Required Assigned 365 Contracts |
| Schedule 6.22 | Seller Employees |
| Schedule 7.3(i) | Required Novations |
| Schedule 7.3(l) | Required Governmental Approvals |
| Schedule 10.13(a) | Existing D&O Indemnification Terms |
| Schedule 10.13(e) | D&O Indemnified Parties |
| Schedule 10.14 | Right of Use Easements (RUEs) |

[End of Table of Contents]

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

## PURCHASE AND SALE AGREEMENT[2]

This Purchase and Sale Agreement (this "***Agreement***") is made as of [_____] [___], 2021 (the "***Execution Date***") by and among (a) Fieldwood Energy LLC, a Delaware limited liability company ("***Fieldwood***"), Fieldwood Energy Inc., a Delaware corporation, Dynamic Offshore Resources NS, LLC, a Texas limited liability company, Fieldwood Energy Offshore LLC, a Delaware limited liability company, Fieldwood Onshore LLC, a Delaware limited liability company, Fieldwood SD Offshore LLC, a Delaware limited liability company, Fieldwood Offshore LLC, a Delaware limited liability company, Bandon Oil and Gas GP, LLC, a Delaware limited liability company, Bandon Oil and Gas, LP, a Delaware limited partnership, Fieldwood Energy SP LLC, a Louisiana limited liability company, Galveston Bay Pipeline LLC, a Delaware limited liability company, and Galveston Bay Processing LLC, a Delaware limited liability company, (b) subject to Section 1.5, FW GOM Pipeline, Inc., a Delaware corporation ("***FW GOM Pipeline***"), and GOM Shelf LLC, a Delaware limited liability company ("***GOM Shelf***" and each of the other entities specified in clauses (a) and (b), a "***Seller***" and collectively the "***Sellers***"), and (c) [_____], a [Delaware limited liability company] ("***Buyer***"), and [_____], [a Delaware limited liability company and a wholly-owned subsidiary of Buyer] ("***Buyer 2***").  The Sellers, Buyer and Buyer 2 may be referred to individually as a "***Party***" or collectively as the "***Parties***."  Capitalized terms used in this Agreement have the meanings referenced in **Annex I** to this Agreement.

## RECITALS

A.     The Sellers desire to sell, and Buyer desires to purchase, all of the Acquired Interests on the terms and subject to the conditions set forth below.

B.     On August 3, 2020 and August 4, 2020, the Sellers (collectively, the "***Debtors***") filed voluntary petitions (the "***Bankruptcy Cases***") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended from time to time, the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***").

C.     [Buyer has provided to the Sellers at or prior to the execution of this Agreement a copy of a fully executed and effective direction letter (the "***Direction Letter***") causing to be delivered at Closing such portion of the **[Obligations]** (as defined in the Credit Agreement) as is necessary to allow for payment of the Credit Bid and Release.][3]

D.     Pursuant to the Plan, and as consideration for the transactions contemplated by the Direction Letter, each holder of Allowed FLTL Claims (as defined in the Plan) will receive its pro rata portion (as determined pursuant to the Plan and the Confirmation Order) of (a) on the Effective Date, the Credit Bid and Release New Equity Interests and (b) if and when issuable pursuant to

---

[2] Note to Draft: Subject to review by Administrative Agent.

[3] Note to Draft: Subject to review by Administrative Agent.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

the Plan, Confirmation Order, or any other order entered by the Bankruptcy Court, the FLTL Subscription Rights.

E.     Pursuant to the Plan, each holder of Allowed SLTL Claims (as defined in the Plan) will receive its pro rata portion (as determined pursuant to the Plan and the Confirmation Order) of, if and when issuable pursuant to the Plan, Confirmation Order, or any other order entered by the Bankruptcy Court, the SLTL Subscription Rights.

F.     Following Fieldwood's receipt of the GUC Warrants and the SLTL Warrants pursuant to <u>Section 9.2(j)</u>, Fieldwood will cause such GUC Warrants and SLTL Warrants to be distributed and received by the Persons entitled to receipt of such interests pursuant to the Plan on the Effective Date in accordance with the Plan.

G.     Upon the terms and subject to the conditions set forth herein, the Parties intend to effectuate the transactions contemplated by this Agreement through a sale of the Acquired Interests pursuant to Sections 105, 363, 365, 1123(a)(5)(D), 1129, 1141 and 1146 of the Bankruptcy Code, and Rules 4001, 6004, 6006 and 3020 of the Federal Rules of Bankruptcy Procedure of the Bankruptcy Code (as amended from time to time, the "***Bankruptcy Rules***").

H.     The execution and delivery of this Agreement and the Sellers' ability to consummate the transactions contemplated by this Agreement are subject to, among other things, the Bankruptcy Court's entry of the Confirmation Order.

<div align="center">AGREEMENT</div>

In consideration of the recitals above, the provisions below and other good and valuable cause and consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer, Buyer 2 and the Sellers agree as follows:

<div align="center">ARTICLE I<br>PURCHASE AND SALE</div>

1.1     <u>Purchase and Sale</u>.    Subject to the provisions hereof and the entry of the Confirmation Order, Buyer agrees to purchase and accept from the Sellers and the Sellers agree to sell, assign, convey, transfer and deliver, or cause to be sold, assigned conveyed, transferred and delivered to Buyer at the Closing, the Acquired Interests free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances)); *provided* that Buyer and Buyer 2 may determine in their sole discretion that certain Fieldwood U.A. Interests and certain JV Interests may be acquired by Buyer 2 instead of by Buyer, in which case all references hereto to Buyer with respect to such Fieldwood U.A. Interests or JV Interests shall be understood to be to Buyer 2 instead of Buyer.

1.2     <u>Acquired Interests; Assets</u>.   As used herein, the term "***Acquired Interests***" refers to (x) all of each Seller's right, title and interest in, to, under or derived from the Co-Owned Assets excluding the FWE I Assets and the GOM Shelf Oil and Gas Properties other than the Applicable Shared Asset Interests (which Applicable Shared Asset Interests shall be "Co-Owned Assets") and (y) all of each Seller's right, title and interest in, to, under or derived from the Other Assets.   As

<div align="center">2</div>

used herein, the term "***Assets***" means the Co-Owned Assets and Other Assets, wherever located, real, personal or mixed, tangible or intangible, known or unknown, as the same shall exist as of the Closing.  As used herein, the term "***Co-Owned Assets***" means the following (*provided*, that (subject to the following provisos) Buyer may, from time to time prior to the Designation Deadline, subject to obtaining the Sellers' prior written consent (in the Sellers' sole discretion (it being understood that Buyer shall not add to or remove from the "Co-Owned Assets" any FWE I Asset or GOM Shelf Oil and Gas Properties provided that the foregoing shall not prevent the addition or removal of Applicable Shared Asset Interests as appropriate (which may be added or removed with the Sellers' prior written consent))), add any assets to or remove any assets from the "Co-Owned Assets" (and, in the event an asset is added or removed, to the extent applicable, add, modify or remove any related Liabilities to or from the "Assumed Liabilities") and any affected Exhibit or Schedule (including **Schedule 1.3(d)**) will be updated accordingly, and if Buyer removes any asset from the "Co-Owned Assets" Buyer shall indemnify the Sellers with respect to any Liability incurred by the Sellers as a result of the removal by Buyer of any Co-Owned Asset and the retention by the Sellers of such "Co-Owned Asset"; *provided, further,* that (notwithstanding anything to the contrary in this <u>Section 1.2</u>), Buyer may not remove any assets from the "Co-Owned Assets" after the Designation Deadline):

(a)     the oil and gas leases (and other agreements) described in **Part 1** of **Exhibit A**, but excluding the FWE I Assets and the GOM Shelf Oil and Gas Properties (collectively, the "***Co-Owned Leases***"), including all Working Interests, Net Revenue Interests, royalty interests, overriding royalty interests, production payments, net profits interests, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options, fee mineral interests and other interests of every kind and character in, to, under or derived from any Co-Owned Lease or any land subject to, covered by or included within any Co-Owned Lease (except that, solely as to each of lease OCS-00786 covering South Marsh Island 48 and lease OCS-G 1609 covering South Pass 61, the interests in such lease to be conveyed hereunder are solely the overriding royalty interests held by the Sellers in such lease);

(b)     (i) each Unit that includes any of the lands covered by or subject to any Co-Owned Lease (each, a "***Co-Owned Subject Unit***"), (ii) each pooling, unitization or communitization declaration, designation, agreement or order creating or modifying any Co-Owned Subject Unit (each, a "***Co-Owned Subject Unit Agreement***") and (iii) the oil and gas leases and lands subject to, covered by or included within each Co-Owned Subject Unit;

(c)     all servitudes, rights of way, easements, surface leases, subsurface agreements and similar rights and agreements related to or held for use in connection with (in each case, whether or not located on) any land subject to or covered by any Co-Owned Lease or Co-Owned Subject Unit (collectively, the "***Co-Owned Easements***"), including those described in **Part 1** of **Exhibit B**;

(d)     all wells (whether producing, not producing, shut-in, temporarily abandoned, injection, disposal or otherwise) owned or operated in connection with any of the Co-Owned Leases or Co-Owned Subject Units, whether or not such well is located on any land subject to or covered by any Co-Owned Lease or Co-Owned Subject Unit (collectively, the "***Co-Owned Wells***"), including those described in **Part 1** of **Exhibit C** (such wells, the "***Co-Owned Scheduled Wells***");

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(e)     all equipment, machinery, structures, fixtures, inventory, vehicles, rolling stock, improvements and other movable property related to, used or held for use in connection with or held as inventory in connection with (in each case, whether or not located on) any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement, lands covered by or subject to any Co-Owned Lease, Co-Owned Subject Unit or Co-Owned Easement or Co-Owned Well (including well equipment; casing; rods; tanks and tank batteries; boilers; tubing; pumps; pumping units and engines; Christmas trees; production facilities; dehydration units and facilities; heater-treaters; compressors; testing and sampling equipment; sulfur recovery units and facilities; valves; gauges; supervisory control and data acquisition (SCADA) systems, equipment and related software; meters and other measurement equipment; flow lines; pipelines; gathering systems; processing systems or facilities; umbilicals; caissons; water systems (whether for source water, treatment, disposal, injection or otherwise); the platforms and facilities listed in **Part 1** of **Exhibit D**; and all additions and accessions to, substitutions for and replacements of any of the foregoing, together with all attachments, components, parts, equipment, supplies, pipes, tools, casing, tubing, tubulars, fittings and accessories in connection with any of the foregoing), including the foregoing listed in **Part 1** of **Exhibit D-1** (collectively, the "***Co-Owned Inventory***");

(f)     (i) all oil, gas, minerals, condensate, distillate, natural gasoline, natural gas liquids, plant products and other liquid or gaseous hydrocarbons and all other substances produced with any of the foregoing hydrocarbons (collectively, "***Hydrocarbons***") (A) that are produced on, or the right to explore for which, or an interest in which, is granted pursuant to, any Co-Owned Lease, Co-Owned Subject Unit or Co-Owned Subject Unit Agreement or (B) that are located in any Co-Owned Inventory; and (ii) all proceeds from the sale of any such Hydrocarbons;

(g)     all Permits (and pending applications therefor) that pertain or relate in any way to any of the Co-Owned Field Assets, including the Permits listed in **Part 1** of **Exhibit E**, to the extent assignable by the Sellers to Buyer or Buyer 2;

(h)     subject to Section 6.7, all Co-Owned Assigned Contracts;

(i)     all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the other Co-Owned Assets or to any Assumed Liabilities, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Co-Owned Assets;

(j)     to the extent transferable by the Sellers to Buyer at Closing without payment of a fee or other penalty to any Third Party pursuant to any Contract (unless Buyer has, prior to the Closing, separately agreed in writing to pay such fee or penalty), all seismic data (conventional, three dimensional or otherwise; whether owned or licensed; and including original field tapes) (including all such data relating to those licenses and agreements listed in **Part 1** of **Exhibit F**), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the Co-Owned Field Assets or any land on which any Co-Owned Field Asset is located (collectively, the "***Co-Owned Field Data***");

4

(k)     all files, records (including reservoir, production, operation, contract, land and title records; drawings, maps, plats and surveys; abstracts of title, title insurance policies, title opinions and title curative; lease, prospect, contract, division order, marketing, correspondence, operations, environmental, production, processing, accounting, Property-Related Tax, Production Tax, Transfer Tax, regulatory compliance, facility and well records and files; supplier lists and files; customer lists and files; and reports to any Governmental Authority), databases, data and other information (in each case, whether in written or electronic format) that relate to any of the other Co-Owned Assets (collectively, the "*Co-Owned Records*");

(l)     [reserved];

(m)     all raw materials, work-in-process, finished goods, supplies and other inventories related to, used or held for use in connection with (in each case, whether or not located on) any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement or Co-Owned Well;

(n)     all goodwill associated with any Co-Owned Asset; and

(o)     all credits or other rights to prepaid expenses, deposits, advances, prepayments, excess or unearned premiums, costs, and other refunds attributable to any Co-Owned Assets (excluding Excluded Prepaid JOA Funds).

As used herein, the term "*Other Assets*" means the assets described in clauses (p) through (rr) below; *provided*, that, from time to time prior to the Designation Deadline, Buyer may, in its sole discretion (subject to the following provisos), (x) add any assets to the "Other Assets" or (y) remove any Other Assets from the "Other Assets" (other than (1) to add any Co-Owned Assets to, or to remove any Co-Owned Assets from, the Other Assets or (2) the assets or items set forth in clauses (aa), (ee), (gg), (ii), (oo) or (pp) of this Section 1.2), and, in the event an asset is added or removed, to the extent applicable, add, modify or remove any related Liabilities to or from the "Assumed Liabilities" (and any affected Exhibit or Schedule (including **Schedule 1.3(d)**) will be updated accordingly); *provided*, *however*, that Buyer may not add or remove any FWE I Asset or GOM Shelf Oil and Gas Property; *provided, further,* that (notwithstanding anything to the contrary in this Section 1.2), Buyer may not remove any assets from the "Other Assets" after the Designation Deadline; and, *provided, further*, that Buyer may not (i) remove any assets from the "Other Assets" unless Buyer has agreed in writing to indemnify Sellers with respect to any Liability incurred by any Seller as a result of the retention by Sellers of such "Other Asset" or (ii) add any assets to the Other Assets if such addition would require a Governmental Approval (except for those which are obtained post Closing) that would reasonably be expected to materially delay the Closing); *provided, further* that Buyer may remove any such asset if Buyer increases the Cash Portion to include the amount of such Liability:

(p)     the oil and gas leases (and other agreements) described in **Part 2** of **Exhibit A** (collectively, the "*Other Leases*"), including all Working Interests, Net Revenue Interests, royalty interests, overriding royalty interests, production payments, net profits interests, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options, fee mineral interests and other interests of every kind and character in, to, under or derived from any Other Lease or any land subject to, covered by or included within any Other Lease (except that, (x) solely as to lease OCS-G 12210

covering Green Canyon 201, the interests in such lease to be conveyed hereunder exclude any record title or operating rights in the NE1/4 of Block 201, Green Canyon, (y) solely as to lease OCS-G 10794 covering Ship Shoal 301, Fieldwood's overriding royalty interest in such lease is not to be conveyed hereunder; and (z) solely as to each of OCS-G 1449 covering portions of West Delta 57, 79 and 80, OCS-G 1874 covering portions of West Delta 79 and 80 and OCS-G 1989 and OCS-G 2136 covering portions of West Delta 80, the interests in such lease to be conveyed hereunder are solely the overriding royalty interests held by the Sellers in such lease);

(q)        (i) each Unit that includes any land covered by or subject to any Other Lease (each, a "***Other Subject Unit***"), (ii) each pooling, unitization or communitization declaration, designation, agreement or order creating or modifying any Other Subject Unit (each, a "***Other Subject Unit Agreement***") and (iii) the oil and gas leases and lands subject to, covered by or included within each Other Subject Unit;

(r)        all servitudes, rights of way, easements, surface leases, subsurface agreements and similar rights and agreements located on (or related to or held for use in connection with (in each case, whether or not located on)) any land subject to or covered by any Other Lease or Other Subject Unit (collectively, the "***Other Easements***"), including those described in **Part 2** of **Exhibit B**;

(s)        all wells (whether producing, not producing, shut-in, temporarily abandoned, injection, disposal or otherwise) owned or operated in connection with any Other Lease or Other Subject Unit, whether or not such well is located on any land subject to or covered by any Other Lease or Other Subject Unit (collectively, the "***Other Wells***"), including those described in **Part 2** of **Exhibit C** (such wells, the "***Other Scheduled Wells***");

(t)        all equipment, machinery, structures, fixtures, inventory, vehicles, rolling stock, improvements and other movable property related to, used or held for use in connection with or held as inventory in connection with (in each case, whether or not located on) any Other Lease, Other Subject Unit, Other Easement, lands covered by or subject to any Other Lease, Other Subject Unit or Other Easement or Other Well (including well equipment; casing; rods; tanks and tank batteries; boilers; tubing; pumps; pumping units and engines; Christmas trees; production facilities; dehydration units and facilities; heater-treaters; compressors; testing and sampling equipment; sulfur recovery units and facilities; valves; gauges; supervisory control and data acquisition (SCADA) systems, equipment and related software; meters and other measurement equipment; flow lines; pipelines; gathering systems; processing systems or facilities; umbilicals; caissons; water systems (whether for source water, treatment, disposal, injection or otherwise); the platforms and facilities listed in **Part 2** of **Exhibit D**; and all additions and accessions to, substitutions for and replacements of any of the foregoing, together with all attachments, components, parts, equipment, supplies, pipes, tools, casing, tubing, tubulars, fittings and accessories in connection with any of the foregoing), including the foregoing listed in **Part 2** of **Exhibit D-1** (collectively, the "***Other Inventory***");

(u)        (i) all Hydrocarbons (A) that are produced on, or the right to explore for which, or an interest in which, is granted pursuant to, any Other Lease, Other Subject Unit or Other Subject Unit Agreement or (B) that are located in any Other Inventory; and (ii) all proceeds from the sale of any such Hydrocarbons;

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(v)      all Permits (and pending applications therefor) that pertain or relate in any way to any of the Other Field Assets, including the Permits listed in **Part 2** of **Exhibit E**, to the extent assignable by the Sellers to Buyer or Buyer 2;

(w)      all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the Other Assets, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Other Assets;

(x)      to the extent transferable by the Sellers to Buyer at Closing without payment of a fee or other penalty to any Third Party pursuant to any Contract (unless Buyer has, prior to the Closing, separately agreed in writing to pay such fee or penalty), (i) all seismic data (conventional, three dimensional or otherwise; whether owned or licensed; and including original field tapes) (including all such data relating to those licenses and agreements listed in **Part 2** of **Exhibit F**), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the Other Field Assets or any land on which any Other Field Asset is located and (ii) copies of all proprietary seismic data (conventional, three dimensional or otherwise), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the FWE I Oil and Gas Properties or any land on which any FWE I Oil and Gas Property is located (collectively, the "***Other Field Data***");

(y)      all files, records (including reservoir, production, operation, contract, land and title records; drawings, maps, plats and surveys; abstracts of title, title insurance policies, title opinions and title curative; lease, prospect, contract, division order, marketing, correspondence, operations, environmental, production, processing, accounting, Property-Related Tax, Production Tax, Transfer Tax, regulatory compliance, facility and well records and files; supplier lists and files; customer lists and files; and reports to any Governmental Authority), databases, data and other information (in each case, whether in written or electronic format) that relate to any of the Other Assets (collectively, the "***Other Records***");

(z)      subject to Section 6.7, all of the Other Assigned Contracts;

(aa)      all Working Capital Assets;

(bb)      all of the Sellers' rights, title and interest as borrowers under the Prepetition FLFO Credit Agreement (as defined in the Plan) as modified to the extent set forth in the First Lien Exit Facility Documents (as defined in the Plan);

(cc)      all raw materials, work-in-process, finished goods, supplies and other inventories located on (or related to, used or held for use in connection with (in each case, whether or not located on)) any Other Lease, Other Subject Unit, Other Easement or Other Well;

(dd)      all goodwill associated with the Other Assets;

(ee)      the Office Sublease, the Lafayette Lease Agreement, the Warehouse Lease and the Lubrizol Sublease and, in each case, the premises demised thereunder, all fixtures and

appurtenances thereto, and all furniture and other personal (movable) property located therein (collectively, the "**Office Assets**");

(ff)     all credits or other rights to prepaid expenses, deposits, advances, prepayments, excess or unearned premiums, costs, and other refunds attributable to the Other Assets;

(gg)     all (i) Suspense Funds and Undisbursed Revenue related to the Acquired Interests and (ii) Prepaid JOA Funds;

(hh)     all futures, options, swaps and other derivatives with respect to the sale of Hydrocarbons described in clauses (f) or (u) of this Section 1.2 and novated to Buyer pursuant to Section 6.15 (the "**Hedges**");

(ii)     all assets relating to the Assumed Employee Plans (to the extent funded);

(jj)     all of the Sellers' economic analyses and pricing forecasts relating to any of the Assets;

(kk)     all Transferred Intellectual Property;

(ll)     all Seller IT Assets;

(mm)     all Tax refunds other than those described in Section 1.3(f);

(nn)     all collateral securing any bond provided for any of the Assets;

(oo)     all memberships (*lidmaatschap*), including all membership rights (*lidmaatschapsrechten*) of Fieldwood U.A. held by any Seller (the "**Fieldwood U.A. Interests**") and all shares in the capital of Fieldwood Mexico and any of its Subsidiaries (Fieldwood Mexico and its Subsidiaries, collectively, the "**Mexico JV**") held by any Seller (the "**JV Interests**"), and all rights, interests and title in and to such Seller's equity ownership of, and all present and future rights of such Seller as an equity holder of, Fieldwood U.A. or the Mexico JV, as applicable, both actual and contingent, including all distributions of profits, dividends, distribution of reserves, repayments of capital, liquidation or dissolution proceeds and all other distributions, payments and repayments in respect of such equity ownership and any right to receive the same, and all other rights in respect of such equity ownership under or pursuant to the organizational documents of and any equity holders' agreement in respect of Fieldwood U.A. or the Mexico JV, as applicable;

(pp)     the Specified P&A Equipment;

(qq)     all proceeds recovered under the Tail Policy, but only with respect to reimbursement of D&O Indemnified Liabilities actually paid by Buyer pursuant to Section 10.12; and

(rr)     all rights, claims, demands and causes of action of the Sellers relating to the Acquired Interests or the Assumed Liabilities, including those set forth on Schedule 1.2(rr);

*provided* that this <u>clause (rr)</u> shall not apply with respect to or in connection with Taxes or Tax refunds.

      1.3    <u>Excluded Assets</u>.  The Assets and Acquired Interests do not include, and there is hereby expressly excepted and excluded therefrom and reserved to the Sellers, all assets and properties of each Seller and its Affiliates that are not described or otherwise identified as Acquired Interests in <u>Section 1.2</u>, including the following assets and properties (the "***Excluded Assets***"):

      (a)    all corporate, financial, legal (other than title opinions) and tax records of the Sellers, but excluding Records;

      (b)    other than (i) the Fieldwood U.A. Interests and the shares of capital stock or equity interests of any Person held, directly or indirectly, by Fieldwood U.A. and (ii) the JV Interests and the shares of capital stock or equity interests of any Person held, directly or indirectly, by Fieldwood Mexico and its Subsidiaries, any shares of capital stock or other equity interest held by the Sellers in any other Person;

      (c)    all BOEM operator numbers;

      (d)    all of the Sellers' right, title and interest in and to those interests, rights, properties and assets more particularly described on **<u>Schedule 1.3(d)</u>** as such Schedule may be amended in accordance with <u>Section 2.6</u>;

      (e)    all of the Sellers' right, title and interest in, to and under any of the FWE I Assets, other than any Applicable Shared Asset Interests added to the Co-Owned Assets or Other Assets by Buyer pursuant to the terms of <u>Section 1.2</u>;

      (f)    all Tax refunds attributable to the Retained Liabilities;

      (g)    all Excluded Contracts;

      (h)    all assets of any Employee Plan that are not Assumed Employee Plans;

      (i)    all Intellectual Property owned or purported to be owned by any Seller (other than Transferred Intellectual Property);

      (j)    all insurance policies held by the Sellers;

      (k)    all rights, claims, demands and causes of action of the Sellers under this Agreement;

      (l)    all cash held in accounts of the Sellers, other than (i) Suspense Funds, (ii) Undisbursed Revenue and (iii) Prepaid JOA Funds;

      (m)    any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the FWE I Assets;

      (n)    the Specified Excluded Receivables;

<div align="center">9</div>

(o)     all Avoidance Actions;

(p)     as to each of lease OCS-G 1449 covering portions of West Delta 57, 79 and 80, OCS-G 1874 covering portions of West Delta 79 and 80, OCS-G 1989 and OCS-G 2136 covering portions of West Delta 80, OCS-00786 covering South Marsh Island 48 and lease OCS-G 1609 covering South Pass 61, any interest other than any overriding royalty interests held by the Sellers in such lease;

(q)     solely as to lease OCS-G 12210 covering Green Canyon 201 any record title or operating rights (for the avoidance of doubt, not including any overriding royalty interests) in the NE1/4 of Block 201, Green Canyon; and

(r)     solely as to lease OCS-G 10794 covering Ship Shoal 301, Fieldwood's overriding royalty interest in such lease.

1.4     <u>Effective Time</u>.  The purchase and sale of the Acquired Interests shall be effective as of 7:00 am (Central Prevailing Time) on the Closing Date (the "***Effective Time***").

1.5     <u>Certain Sellers</u>.  The Parties agree that each of FW GOM Pipeline and GOM Shelf have executed this Agreement as Sellers solely for the purpose of selling, assigning, conveying, transferring and delivering to Buyer any Acquired Interests held by such entities as of the Closing pursuant to this <u>Article I</u> and the applicable Transfer Documents, and without limiting the applicability of covenants and representations to the closing conditions set forth in <u>Article VII</u> neither FW GOM Pipeline nor GOM Shelf makes, or shall have any obligation or liability with respect to, any other covenant or representation of the Sellers made under this Agreement or any certificate delivered pursuant hereto.  For the avoidance of doubt, neither FW GOM Pipeline or GOM Shelf shall be required or obligated to sell, assign, convey, transfer or deliver to Buyer or Buyer 2 any of the GOM Shelf Oil and Gas Properties.  Notwithstanding anything to the contrary, Fieldwood Energy I, GOM Shelf, and their Subsidiaries shall have no liability under this Agreement or any Ancillary Document (including, without limitation, for breach, misrepresentation, fraud, breach of warranty, or otherwise) or relating to the sale or purchase of the Acquired Interests, the operation or business of the Acquired Interests, or any other transactions contemplated by this Agreement or any Ancillary Document, except for any breach (i) by Fieldwood Energy I of its obligations pursuant to Section 3(b)(i) of the Plan of Merger (as contemplated by <u>Section 10.12(e)</u>) or (ii) by FW GOM Pipeline or GOM Shelf of its obligations pursuant to <u>Sections 9.2</u>, <u>10.2</u>, <u>10.3</u>, <u>10.4</u>, <u>10.5</u>, <u>10.6</u>, <u>10.7</u>, <u>10.9</u> and, in respect of its interest in an asset which is also in part a Co-Owned Asset, <u>10.11</u>.

## ARTICLE II
## CONSIDERATION

2.1     <u>Consideration</u>.

(a)     The aggregate consideration to be paid by Buyer and Buyer 2 to the Sellers with respect to the sale to Buyer and Buyer 2 of the Acquired Interests shall consist of the following (collectively, the "***Consideration***"): (1) a credit bid and equivalent release of the Sellers and any guarantors (and their respective successors and assigns) from a portion of the Claims arising under the Credit Agreement, in an aggregate amount up to the FLTL Claims Allowed Amount (as defined

10

in the Plan) (the "***Credit Bid and Release***") [4], (2) the Cash Portion, (3) the GUC Warrants, (4) the SLTL Warrants, (5) the Subscription Rights and (6) Buyer's assumption of the Assumed Liabilities (including, for the avoidance of doubt, the Liabilities set forth in Section 11.1(o))[5].  For the avoidance of doubt, the Credit Bid and Release will not include all of the Claims arising under the Credit Agreement, and (x) the portion of such Claims not included in the Credit Bid and Release will not be transferred to Sellers by Buyer and Buyer 2 pursuant to this Agreement and (y) the holder(s) thereof will be entitled to receive the distribution of the FLTL Subscription Rights by the Debtors pursuant to, and as contemplated by, the Plan.

(b)     Prior to the Closing, the Sellers and Buyer shall in good faith endeavor to agree upon the Closing Cash Amount, the Effective Date Cash Obligations and the Effective Date Cash Obligations Amount in accordance with the definitions thereof.

(c)     The Parties hereby agree that, for U.S. federal income tax purposes, the assumption by Buyer of the remaining Allowed FLFO Claims (as such term is defined in the Plan) pursuant to Section 11.1(o) hereof shall be treated as if: (i) Buyer issues a debt instrument to the Sellers ("**Buyer Obligation**") with terms that are identical (with the exception of the obligor) to the terms of the Buyer Parent Debt (defined below) as additional consideration for the Acquired Interests, (ii) the Sellers deliver the Buyer Obligation to holders of Allowed FLFO Claims (as such term is defined in the Plan) (together with the FLFO Distribution Amount (as such term is defined in the Plan)) in satisfaction of their Allowed FLFO Claims (as such term is defined in the Plan), in a transaction that constitutes a "significant modification" within the meaning of Treasury Regulations Section 1.1001-3, and (iii) Buyer Parent issues the First Lien Exit Facility (as such term is defined in the Plan) (the "**Buyer Parent Debt**") to holders of Allowed FLFO Claims (as such term is defined in the Plan) in substitution of the Buyer Obligation, thereby assuming Buyer's obligation with respect to the Buyer Obligation. The parties further agree that (i) the issue price, within the meaning of Section 1273 of the Code, of the Buyer Obligation is equal to the issue price of the Buyer Parent Debt and (ii) the Sellers shall take into account for U.S. federal income tax purposes any cancellation of debt consequences under the Code, resulting from or in connection with (including as a result of the application of Treasury Regulations Section 1.1274-5, if applicable) or arising from the transactions described in this paragraph.

2.2     Allocation of Adjusted Consideration.  The Parties acknowledge and agree that the Credit Bid and Release and the Cash Portion (and the Assumed Liabilities, taking into account Section 2.1(c), and other relevant items, to the extent properly taken into account under the federal income Tax principles as consideration for the Acquired Interests) shall be allocated among the Acquired Interests in accordance with Section 1060 of the Code and the Treasury Regulations thereunder (and any similar provision of state, local or non-U.S. Law, as appropriate).  Buyer shall, as promptly as practicable after the Closing Date, but in no case later than one hundred twenty

---

[4] Note to Draft: Credit Bid and Release to be equal to at least $1.03 billion, less (i) the Cash Portion, (ii) the GUC Warrants, (iii) the SLTL Warrants, (iv) the Subscription Rights and (v) the amount of the First Lien Exit Facility on the Closing Date, subject to such other adjustments as agreed with consent of the Debtors, the Required DIP Lenders and the Requisite FLTL Lenders (each as defined in the Plan).

[5] Note to Draft: Sellers to be third party beneficiaries of the Direction Letter, with the right to specifically enforce the Credit Bid and Release.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(120) days following the Closing Date, prepare and deliver to the Sellers a proposed allocation as described in the preceding sentence (the "***Initial Allocation***"). The Parties, for a period of no more than ninety (90) days, shall cooperate in good faith to resolve any disagreements the Sellers may have with the Initial Allocation and agree on a final allocation (the "***Final Allocation***"). The Parties agree to file all Tax Returns (including the filing of IRS Form 8594 with their U.S. federal income Tax Return for the taxable year that includes the date of the Closing) consistent with the Final Allocation unless otherwise required by applicable Law.

2.3     <u>Consents to Assign</u>.

(a)     The Sellers shall, within five (5) Business Days after the Execution Date (to the extent not sent prior to the Execution Date), send to the holder of each Applicable Consent with respect to each Lease and any Assigned Contract that is not a 365 Contract (for which notices regarding 365 Contracts are addressed in <u>Section 6.7</u>) a notice seeking such holder's consent to the transactions contemplated hereby or as otherwise sufficient to permit the assignment of such Lease or Assigned Contract to Buyer or Buyer 2, as applicable, pursuant to this Agreement upon entry of the Confirmation Order. Upon request of Buyer, the Sellers shall promptly provide a reasonable update to Buyer regarding the status of requests for consents made pursuant to this <u>Section 2.3(a)</u>.

(b)     If the Sellers fail to obtain an Applicable Consent prior to Closing and (i) with respect to any Lease or Assigned Contract that is not a 365 Contract, (A) the failure to obtain such Applicable Consent would under the express terms thereof cause the assignment of the Acquired Interest affected thereby to Buyer or Buyer 2, as applicable, to be void or voidable, (B) the failure to obtain such Applicable Consent would under the express terms thereof permit the termination of such Lease or Assigned Contract under the express terms thereof upon the purported assignment of such Lease or Assigned Contract to Buyer or Buyer 2, as applicable, pursuant to this Agreement, or (C) the failure to obtain such Applicable Consent would under the express terms thereof permit a party to such Lease or Assigned Contract to impose a financial or other penalty on any Seller, Buyer or Buyer 2 or (ii) with respect to any Lease or Assigned Contract, a party holding such Applicable Consent right has objected to the assignment of the affected Acquired Interest in accordance with the terms of the relevant Applicable Consent right (each Consent as to which <u>clause (i)</u> or <u>(ii)</u> is applicable, a "***Required Consent***"), then, unless the Bankruptcy Court has entered an order approving (or in the case of <u>clause (ii)</u>, such objection is resolved to permit) the sale and assignment of the affected Acquired Interest to Buyer or Buyer 2, as applicable, pursuant to this Agreement without obtaining such Required Consent (and without Buyer or Buyer 2 being subject to the consequences set forth in <u>clauses (i)(A)</u> through <u>(i)(C)</u> of the definition of Required Consent as a result of not obtaining such Required Consent), the Acquired Interests (or portions thereof) affected by such un-obtained Required Consent shall be excluded from the Acquired Interests to be assigned to Buyer or Buyer 2 at Closing (and shall be considered Excluded Assets hereunder) (a "***Delayed Asset***"). In the event that any such Required Consent with respect to any such Delayed Asset (or portion thereof) is obtained during the Post-Closing Consent Period (or if during the Post-Closing Consent Period the Bankruptcy Court enters an order providing that (x) such Required Consent is not required to consummate the sale and assignment of the Delayed Asset to Buyer or Buyer 2, as applicable, pursuant to this Agreement or (y) the Delayed Asset may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the Delayed Asset to

Buyer or Buyer 2, as applicable, pursuant to this Agreement) of such Required Consent) (in each case of clauses (x) and (y) without Buyer or Buyer 2 being subject to the consequences set forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not obtaining such Required Consent) then, (1) the Sellers shall so notify Buyer, and (2) on or prior to the tenth (10th) Business Day after the date such Required Consent is obtained or such order referred to above is entered, the Sellers shall assign such Delayed Asset (or portions thereof) that were excluded as a result of such previously un-obtained Required Consent to Buyer or Buyer 2, as applicable, pursuant to an instrument in substantially the same form as the Assignment, Bill of Sale and Conveyance, or the JV Assignment Agreement (in the case where the Delayed Asset is a Fieldwood U.A. Interest or a JV Interest) (and such Delayed Asset (or portions thereof) shall no longer be considered Excluded Assets hereunder) and Buyer shall assume all Assumed Liabilities with respect thereto.  Notwithstanding anything to the contrary in this Agreement, without limiting any of the rights of Buyer hereunder, including those set forth in Section 7.3, (A) Buyer in its sole discretion may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Assets that is an Other Asset to Buyer, and (B) from and after the Closing, Buyer and the Sellers shall reasonably cooperate in a reasonable arrangement to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, each such Delayed Asset, including enforcement (at Buyer's cost) for the benefit of Buyer or Buyer 2, if applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, *further*, that (i) to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, and (ii) the Sellers shall (or, as to any Delayed Asset that is an Other Asset, at Buyer's request the Sellers shall) sell, transfer, convey, assign and deliver such Delayed Asset to Buyer or Buyer 2, as applicable, promptly after receipt of such Required Consent or the entry of such order referred to above with respect to such Delayed Asset; *provided* that Buyer shall so request such sale, transfer, conveyance, assignment and deliverance promptly after such receipt, unless (1) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining an incremental Liability as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (2) the Sellers and Buyer mutually agree not to make such sale, transfer, conveyance, assignment and deliverance of such Delayed Asset; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such request and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described in clause (B)(i) shall terminate.

(c)     If the Sellers fail to obtain a Consent prior to Closing and such Consent (i) is not a Required Consent or (ii) is a Required Consent and prior to Closing the Bankruptcy Court enters an order providing that the affected Acquired Interests may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the affected Acquired Interests to Buyer pursuant to this Agreement) of such Required Consent (without Buyer or Buyer 2, as applicable, being subject to the consequences set forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not

13

obtaining such Required Consent), then, in the case of each of <u>clauses (i)</u> and <u>(ii)</u>, the Acquired Interests (or portions thereof) subject to such un-obtained Consent shall nevertheless be assigned by the Sellers to Buyer at Closing as part of the Acquired Interests and Buyer shall be deemed to have assumed any and all Liabilities for the failure to obtain any such Consent as part of the Assumed Liabilities hereunder and Buyer shall have no claim against the Sellers from any Liability for the failure to obtain such Consent.

(d)     Prior to Closing and until the 365th day after Closing (the "***Post-Closing Consent Period***"), with respect to any un-obtained Required Consents with respect to which the Bankruptcy Court shall not have entered an order providing that the affected Acquired Interests may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the affected Acquired Interests to Buyer or Buyer 2, as applicable, pursuant to this Agreement) of such Required Consent (without Buyer or Buyer 2, as applicable, being subject to the consequences set forth in <u>clauses (i)(A)</u> through <u>(i)(C)</u> of the definition of Required Consent as a result of not obtaining such Required Consent), the Sellers shall use their commercially reasonable efforts to obtain such Required Consents, except that such obligation of the Sellers to use their commercially reasonable efforts to obtain Required Consents shall not apply in respect of any Delayed Asset with respect to which Buyer has made the election in accordance with the final sentence of <u>Section 2.3(b)</u>.  If Buyer so requests, the Sellers shall be required to make any payments or provide other consideration in order to obtain any such Required Consent (provided that Buyer shall reimburse Sellers for any such payment made after the Closing); *provided, however,* that without the consent of Buyer, the Sellers shall not be required to incur any Liability, pay any money or provide any other consideration in order to obtain any such Consent (other than any Liability or obligation to pay money or provide consideration that has been expressly assumed by Buyer). Buyer shall use its commercially reasonable efforts (without any obligation to incur any Liability, pay money or provide any other consideration) to assist and cooperate with the Sellers in furtherance of the Sellers' efforts pursuant to this <u>Section 2.3(d)</u>.

(e)     The Sellers shall be deemed to have obtained all Consents required in respect of the assumption and/or assignment of any Lease or Assigned Contract if (i) the Sellers have properly served under the Bankruptcy Code notice of assumption and/or assignment on the counterparty to such Lease or Assigned Contract, (ii) any objections to assumption and/or assignment of such Lease or Assigned Contracts filed by such counterparty have been withdrawn or overruled (including pursuant to the Confirmation Order or other order of the Bankruptcy Court), and (iii) pursuant to the Confirmation Order or other order of the Bankruptcy Court, the Sellers are authorized to assume and/or assign such Lease or Assigned Contract to Buyer free and clear of such Consents, in each case without Buyer or Buyer 2, as applicable, being subject to the consequences forth in <u>clauses (i)(A)</u> through <u>(i)(C)</u> of the definition of Required Consent as a result of not obtaining such Required Consent.

2.4     <u>Governmental Approvals</u>.  The Sellers and Buyer shall use commercially reasonable efforts to obtain the approval of, or waiver from, each Governmental Authority required, after giving effect to the entry of the Confirmation Order, to permit the assignment of the Acquired Interests to Buyer or Buyer 2, as applicable, pursuant to this Agreement, in accordance with <u>Sections 6.5(b)</u> and <u>(c)</u>.  If Buyer so requests, the Sellers shall be required to make any payments or provide any other consideration in order to obtain any Governmental Approval

14

(provided that Buyer shall reimburse Sellers for any such payment made after the Closing); *provided*, *however*, that without the consent of Buyer, the Sellers shall not be required to incur any Liability, pay any money or provide any other consideration in order to obtain any such Governmental Approval (other than any Liability or obligation to pay money or provide consideration that has been expressly assumed by Buyer). If, as of the Closing, any Governmental Approval, other than any Governmental Approval that is required or permitted to be made or obtained after the Closing (and, if permitted, customarily made or obtained after the Closing) (each, an "***Applicable Governmental Approval***"), has not been obtained and, notwithstanding the entry of the Confirmation Order, the failure to have obtained such Applicable Governmental Approval restricts the Sellers' ability to transfer any Acquired Interest to Buyer or Buyer 2, as applicable, at Closing, then, notwithstanding anything to the contrary herein, (x) (A) without limiting any of the rights of Buyer hereunder, including those set forth in Section 7.3, Buyer in its sole discretion may elect for the Sellers not to sell, transfer, convey, assign or deliver such Acquired Interests (which shall be treated as Delayed Assets, *mutatis mutandis*) and (B) from and after the Closing, (i) the Sellers and Buyer shall reasonably cooperate in a reasonable arrangement (to the extent legally permissible) to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, such Delayed Asset, including (at Buyer's cost) enforcement for the benefit of Buyer or Buyer 2, as applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, that to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, (ii) the Sellers shall reasonably cooperate with Buyer to obtain such Applicable Governmental Approval, and (iii) subject to the immediately following proviso, the Sellers shall promptly after receipt of the Applicable Governmental Approval with respect to such Delayed Asset, sell, transfer, convey, assign and deliver such Delayed Asset to Buyer or Buyer 2, as applicable, and Buyer or Buyer 2, as applicable, shall accept such conveyance; *provided* that, with respect to any such Delayed Asset that is an Other Asset, Buyer in its sole discretion (subject to the immediately following proviso) may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Asset to Buyer after receipt of the Applicable Governmental Approval; *provided* however that Buyer shall so request such sale, transfer, conveyance, assignment and deliverance promptly after receipt of the Applicable Governmental Approval, unless (1) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining any incremental Liabilities as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (2) the Sellers and Buyer mutually agree not to make such sale, transfer, conveyance, assignment and deliverance of such Delayed Asset; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such request and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described under clause (B)(i) shall terminate.

2.5    <u>Preferential Rights</u>.

(a)     The Sellers shall, within five (5) Business Days after the Execution Date (to the extent not sent prior to the Execution Date), send to the holder of each Preferential Right with respect to any Acquired Interest a notice setting forth the information required to satisfy such notice provision for such Preferential Right and requesting a waiver thereof or as otherwise sufficient to permit the assignment of such Acquired Interest to Buyer or Buyer 2, as applicable, pursuant to this Agreement upon entry of the Confirmation Order free and clear of such Preferential Right if such Preferential Right is not validly waived or exercised prior to Closing. The Sellers and Buyer shall agree in good faith on the holders to whom the notices in the preceding sentence shall be sent. Upon request of Buyer, the Sellers shall promptly provide a reasonable update to Buyer regarding requests for waivers of Preferential Rights made pursuant to this <u>Section 2.5(a)</u>.

(b)     If a bona fide Preferential Right with respect to any Acquired Interest is validly exercised prior to the Closing, such Acquired Interest and the related Contracts (solely to the extent related to such Acquired Interest) shall be excluded from the Acquired Interests conveyed to Buyer or Buyer 2, as applicable, at the Closing, the affected Acquired Interest will be deemed to be an Excluded Asset, and the Sellers shall pay over to Buyer all proceeds received for the affected Acquired Interest and related Contracts (or portion thereof) from the Person exercising such Preferential Right.

(c)     If prior to Closing (i) any Acquired Interest is burdened by a Preferential Right that has not been validly exercised or waived as of the Closing, regardless of whether the time period for the exercise of such right has expired or (ii) any Person asserts that it is the beneficiary of a Preferential Right with respect to any Acquired Interest and objects to the sale of such Acquired Interest to Buyer pursuant to this Agreement and such objection is not resolved so as to permit the sale and assignment of such Acquired Interest free and clear of such Preferential Right (as applicable to the sale and assignment to Buyer or Buyer 2, as applicable, pursuant to this Agreement) to Buyer or Buyer 2, as applicable (by Final Order of the Bankruptcy Court or otherwise to Buyer's reasonable satisfaction), then, without limiting any of the rights of Buyer hereunder, including those set forth in <u>Section 7.3</u>, (A) at Buyer's option, such Acquired Interest shall be excluded from the Acquired Interests and treated as a Delayed Asset (*mutatis mutandis*), and (B) from and after the Closing, if Buyer so elects, (i) the Sellers and Buyer shall reasonably cooperate to provide a reasonable arrangement (to the extent legally permissible) to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, such Delayed Asset, including (at Buyer's cost) enforcement for the benefit of Buyer or Buyer 2, as applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, that to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, (ii) the Sellers and Buyer shall reasonably cooperate with Buyer to obtain the waiver of the Preferential Right with respect to such Delayed Asset, and (iii) if such asserted Preferential Right is not validly exercised prior to its expiration or waiver, or if the dispute

regarding the Preferential Right affecting such Delayed Asset is resolved by Final Order of the Bankruptcy Court or otherwise to Buyer's reasonable satisfaction, such Delayed Asset, subject to the immediately following proviso, shall be promptly conveyed to Buyer or Buyer 2, as applicable; *provided* that, with respect to any such Delayed Asset that is an Other Asset, Buyer in its sole discretion (subject to the immediately following proviso) may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Asset to Buyer after the occurrence of the events in the preceding clause (iii); *provided* that Buyer shall so elect, unless (x) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining any incremental Liability as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (y) the Sellers and Buyer mutually agree for Buyer not to so elect; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such election and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described in <u>clause (B)(i)</u> shall terminate. If, for any reason, such Preferential Right is validly exercised by the holder thereof after the Closing and prior to an election by Buyer for the Sellers to retain such Delayed Asset pursuant to the second proviso in the preceding sentence, the Sellers shall pay over to Buyer all proceeds paid for the affected Acquired Interest by the holder of the relevant Preferential Right.

2.6     [Reserved.]

2.7     <u>Withholding</u>.  Buyer and its Affiliates shall be entitled to deduct and withhold, from any amounts payable under this Agreement, amounts required to be deducted and withheld under the Code or any other applicable Law.  To the extent any amount is so withheld and paid to the appropriate Governmental Authority pursuant to applicable Law, such withheld amounts shall be treated for all purposes of the Agreement as having been paid to the Person in respect of which such deduction or withholding was made.

2.8     <u>Assets Sold "As Is, Where Is"</u>.

(a)     BUYER ACKNOWLEDGES AND AGREES THAT THE ACQUIRED INTERESTS SOLD PURSUANT TO THIS AGREEMENT ARE SOLD, CONVEYED, TRANSFERRED AND ASSIGNED ON AN "AS IS, WHERE IS" BASIS "***WITH ALL FAULTS***" AND THAT, EXCEPT AS SET FORTH IN <u>ARTICLE IV</u> OF THIS AGREEMENT AND THE CERTIFICATES DELIVERED BY THE SELLERS AT CLOSING (BUT SUBJECT TO THE TERMINATION OF REPRESENTATIONS AND WARRANTIES AT CLOSING PURSUANT TO <u>SECTION 13.1</u>), THE SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES, TERMS, CONDITIONS, UNDERSTANDINGS OR COLLATERAL AGREEMENTS OF ANY NATURE OR KIND, EXPRESS OR IMPLIED, BY STATUTE OR OTHERWISE, CONCERNING THE ACQUIRED INTERESTS OR THE CONDITION, DESCRIPTION, QUALITY, USEFULNESS, QUANTITY OR ANY OTHER THING AFFECTING OR RELATING TO THE ACQUIRED INTERESTS, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH WARRANTIES ARE ALSO HEREBY EXPRESSLY DISCLAIMED. BUYER FURTHER ACKNOWLEDGES THAT THE SELLERS HAVE MADE NO AGREEMENT OR PROMISE TO REPAIR OR IMPROVE ANY OF THE ACQUIRED

INTERESTS BEING SOLD TO BUYER, AND THAT BUYER TAKES ALL SUCH ACQUIRED INTERESTS IN THE CONDITION EXISTING ON THE CLOSING DATE (SUBJECT TO SATISFACTION OR WAIVER OF THE CONDITIONS SET FORTH IN ARTICLE VII) "AS IS, WHERE IS" AND "**WITH ALL FAULTS**" AND WITHOUT WARRANTY OF TITLE.  NOTHING HEREIN SHALL LIMIT BUYER'S REMEDIES IN THE EVENT OF FRAUD (AS DEFINED IN ANNEX I), EXCEPT THAT BUYER SHALL HAVE NO REMEDY IN THE EVENT OF FRAUD WITH RESPECT TO FIELDWOOD ENERGY I, FW GOM PIPELINE, GOM SHELF OR ANY OF THEIR RESPECTIVE SUBSIDIARIES.

(b)   EXCEPT AS AND TO THE EXTENT EXPRESSLY SET FORTH IN ARTICLE IV OF THIS AGREEMENT OR THE CERTIFICATES DELIVERED BY THE SELLERS AT CLOSING (BUT SUBJECT TO THE TERMINATION OF REPRESENTATIONS AND WARRANTIES AT CLOSING PURSUANT TO SECTION 13.1), AND WITHOUT LIMITING THE GENERALITY OF SECTION 2.8(a), THE SELLERS EXPRESSLY DISCLAIM ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (i) TITLE TO ANY OF THE ACQUIRED INTERESTS, (ii) THE CONTENTS, CHARACTER OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE ACQUIRED INTERESTS, (iii) THE QUANTITY, QUALITY OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE ACQUIRED INTERESTS, (iv) ANY ESTIMATES OF THE VALUE OF THE ACQUIRED INTERESTS OR FUTURE REVENUES GENERATED BY THE ACQUIRED INTERESTS, (v) THE PRODUCTION OF HYDROCARBONS FROM THE ACQUIRED INTERESTS, (vi) THE CONDITION, QUALITY, SUITABILITY OR MARKETABILITY OF THE ACQUIRED INTERESTS, INCLUDING THE MARKETABILITY OF ANY HYDROCARBONS, (vii) THE AVAILABILITY OF GATHERING OR TRANSPORTATION FOR HYDROCARBONS FROM THE ACQUIRED INTERESTS, (viii) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY OR ON BEHALF OF THE SELLERS OR THIRD PARTIES WITH RESPECT TO THE ACQUIRED INTERESTS, AND (ix) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO BUYER OR ANY AFFILIATE OF BUYER, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO.  ANY AND ALL SUCH DATA, INFORMATION AND OTHER MATERIALS FURNISHED BY OR ON BEHALF OF THE SELLERS IS PROVIDED TO BUYER AS A CONVENIENCE, AND ANY RELIANCE ON OR USE OF THE SAME SHALL BE AT BUYER'S SOLE RISK.

2.9   Presence of Wastes, NORM, Hazardous Substances and Asbestos.  BUYER ACKNOWLEDGES THAT THE ACQUIRED INTERESTS HAVE BEEN USED TO EXPLORE FOR, DEVELOP AND PRODUCE HYDROCARBONS, AND THAT SPILLS OF WASTES, CRUDE OIL, PRODUCED WATER, HAZARDOUS SUBSTANCES AND OTHER MATERIALS MAY HAVE OCCURRED THEREON OR THEREFROM.  ADDITIONALLY, THE ACQUIRED INTERESTS, INCLUDING PRODUCTION EQUIPMENT, MAY CONTAIN ASBESTOS, HAZARDOUS SUBSTANCES OR NORM.  NORM MAY AFFIX OR ATTACH ITSELF TO THE INSIDE OF WELLS, MATERIALS AND EQUIPMENT AS SCALE OR IN

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

OTHER FORMS, AND NORM-CONTAINING MATERIAL MAY HAVE BEEN BURIED OR OTHERWISE DISPOSED OF ON THE ACQUIRED INTERESTS.  SPECIAL PROCEDURES MAY BE REQUIRED FOR REMEDIATION, REMOVING, TRANSPORTING AND DISPOSING OF ASBESTOS, NORM, HAZARDOUS SUBSTANCES AND OTHER MATERIALS FROM THE ACQUIRED INTERESTS.

## ARTICLE III
## DUE DILIGENCE

3.1     Due Diligence.

(a)     From and after the date hereof until the Closing Date, the Sellers shall (i) afford to Buyer and its Representatives (at Buyer's cost) during normal business hours (A) upon the reasonable request of Buyer, reasonable access to and entry upon any specified Field Asset (subject to (1) execution of the Sellers' customary boarding agreement, (2) the terms, conditions and restrictions of agreements that are related to access to such Field Assets and to which any Seller is a party and (3) the consent of any third party operator, as applicable), including execution of agreements required by any third party with respect to access to such Field Assets for the purposes of performing onsite tests, inspections, examinations, investigations, studies and assessments of the Field Assets (including non-invasive environmental assessments of the Field Assets and, subject to the consent of the Sellers (such consent not to be unreasonably withheld, conditioned or delayed) invasive environmental assessments of the Field Assets; *provided*, that prior to conducting any invasive environmental assessments, Buyer and Sellers will cooperate in good faith to enter into a written agreement with respect to the parameters and scope of, allocation of liability with respect to, and rights to information (including samples) arising from, such assessments); and (B) at the offices of each of the Sellers, (1) reasonable access to the Sellers' title records, Leases, Easements, Contracts, environmental and legal materials, books, records, statements and operating data, information relating to the Field Assets (including all land and title records, surveys, abstracts of title, title insurance policies, title opinions, title curative and all lease, contract, division order, marketing, acquisition, correspondence, operations, environmental, insurance, production, accounting, regulatory, Property-Related Tax, Production Tax, Transfer Tax and well records and files) and any other information or documents that are in the possession or control of the Sellers and relate in any way to any Acquired Interests and (2) to the extent permitted in accordance with applicable licensing agreements, the opportunity to review the Field Data, and (ii) instruct the Sellers' representatives to reasonably cooperate with Buyer and its Representatives in their investigation of the Acquired Interests.  Notwithstanding anything in this Section 3.1(a) to the contrary, (x) all such information shall be held in confidence by Buyer in accordance with the terms of Section 10.5, and (y) in no event shall the Sellers be obligated to provide (A) access or information in violation of applicable Law, (B) any information the disclosure of which would cause the loss of any legal privilege available to any Seller relating to such information or would cause any Seller to breach a confidentiality obligation to which it is bound; *provided* that the applicable Seller shall use commercially reasonable efforts to provide such information and documents in a manner that does not violate such Law or result in such loss of privilege or breach of obligation, or (C) copies of bids, letters of intent, expressions of interest or other proposals received from other Persons in connection with the transactions contemplated by this Agreement or information and analyses relating to such communications.  For the avoidance of doubt, Buyer and its Representatives shall not be permitted to conduct any invasive

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

environmental investigations without the Sellers' express written consent, which may be withheld by the Sellers in their sole discretion.

(b)    No investigation by Buyer or other information received by Buyer shall operate as a waiver or otherwise affect any representation, warranty or agreement given or made by any Seller hereunder.

## ARTICLE IV
## SELLERS' REPRESENTATIONS

Each Seller represents and warrants to Buyer and Buyer 2, subject to the Disclosure Schedules (subject to Section 12.15), as follows:

4.1    Organization/Qualification.  Each Seller is an entity duly formed, validly existing and in good standing under the Laws of the jurisdiction of its organization.  Each Seller is qualified to do business and is in good standing under the Laws of each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not, individually or in the aggregate, prevent, materially delay or materially impede the performance by such Seller of its obligations under this Agreement or its consummation of the transactions contemplated by this Agreement.  Each Seller has all requisite power and authority required to own and operate its properties (including the Acquired Interests) and to carry on its business as now conducted.

4.2    Power and Authority.  Subject to entry of the Confirmation Order and such other authorization as may be required by the Bankruptcy Court, each Seller has the requisite power and authority to execute and deliver this Agreement and the other Ancillary Documents to which it is (or, upon its execution and delivery, will be) a party and perform its obligations under this Agreement and such other Ancillary Documents.

4.3    Non-Contravention.  Each Seller's execution, delivery and performance of this Agreement and each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party and each Seller's performance of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provisions of the organizational documents of such Seller, Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico JV or (b) subject to (w) the entry of the Disclosure Statement Order and the Confirmation Order, (x) obtaining or making the Applicable Consents set forth on **Schedule 4.8(b)** in accordance with Section 2.3, (y) obtaining or making the Governmental Approvals set forth on **Schedule 4.7** and (z) obtaining waivers for the Preferential Rights set forth on **Schedule 4.8(a)** (in the case of each of the preceding clauses (x) and (z), after giving effect to the Confirmation Order), result in (i) a breach of or default under, or give rise to any right of termination, revocation, cancellation or acceleration under, any Permit, Lease, Subject Unit Agreement, Easement, Assigned Contract, credit agreement (excluding the Credit Agreement), note, bond, mortgage, indenture, license or other agreement, document or instrument to which any Seller is a party or by which any Seller or any of the Acquired Interests may be bound, or otherwise result in a loss of any benefit relating to the Acquired Interests, (ii) the creation or imposition of any Encumbrance upon any Acquired Interest other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances), or (iii) violate any applicable Law,

20

except, in the case of the preceding clauses (i) and (ii), as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect.

4.4     Authorization and Enforceability.  Subject to entry of the Disclosure Statement Order and the Confirmation Order, each Seller has full capacity, power and authority to enter into and perform this Agreement, each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party and the transactions contemplated herein and therein.  The execution, delivery and performance by each Seller of this Agreement and each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party have been duly and validly authorized and approved by all necessary company action on the part of such Seller.  Subject to entry of the Disclosure Statement Order and the Confirmation Order, this Agreement and each Ancillary Document to which each Seller is (or, upon its execution and delivery, will be) a party are, or upon their execution and delivery will be, the valid and binding obligations of such Seller and enforceable against such Seller in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws as well as to principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.5     Liability for Brokers' Fees.  Other than Houlihan Lokey Capital, Inc., there is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of any Seller who might be entitled to any fee, commission or expenses in connection with the transactions contemplated by this Agreement or any of the Ancillary Documents.

4.6     Litigation.  Other than the Bankruptcy Cases or as specified on **Schedule 4.6**, no Claim (or any basis thereof) by any Governmental Authority or other Person (including expropriation or forfeiture proceedings) nor any legal, administrative or arbitration proceeding (or any basis thereof) is pending or, to the Sellers' Knowledge, threatened against any Acquired Interest or against any Seller relating to any Acquired Interest which, individually or in the aggregate, if determined or resolved adversely in accordance with the plaintiff's demands, (x) to the extent the representation is to the existence of any basis of any Claim or any legal, administrative or arbitration proceeding, would reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect and (y) otherwise, would reasonably be expected to be material to the Acquired Interests, individually or taken as a whole, or which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

4.7     Governmental Approvals.  Except as set forth on **Schedule 4.7**, no Governmental Approval (other than the Disclosure Statement Order and the Confirmation Order) is required to authorize, or is otherwise required in connection with, (a) any Seller's valid execution and delivery by such Seller of this Agreement or any Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party, (b) any Seller's performance of its obligations hereunder or thereunder or (c) the consummation of the transactions contemplated by this Agreement or any of the Ancillary Documents.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

4.8     Preferential Rights; Applicable Consents.

(a)     Except as set forth on **Schedule 4.8(a)**, none of the Acquired Interests is subject to a Preferential Right.

(b)     Except as set forth on **Schedule 4.8(b)**, none of the Acquired Interests is subject to an Applicable Consent.

The inclusion of any Acquired Interest on **Schedule 4.8** shall not be construed as an admission by Buyer or Sellers that any preferential purchase right or similar right or Consent in any agreement relating to such Acquired Interest (or any express exception thereto contained in such agreement) is (or is not) applicable to the transactions contemplated hereby.

4.9     Taxes.  Except as would not result, individually or in the aggregate, in a Material Adverse Effect and except as otherwise set forth on **Schedule 4.9**, (a) all Tax Returns required to be filed with respect to the Acquired Interests or any Hydrocarbon production therefrom (including Property-Related Taxes and Production Taxes) or by Fieldwood U.A. have been timely filed, and all such Tax Returns are true, complete and correct; (b) the Sellers have adequately accrued in accordance with GAAP, established adequate reserves for the payment of, and will timely pay, all Taxes which arise from or with respect to the Acquired Interests or any Hydrocarbon production therefrom or allocable thereto incurred in or attributable to all Pre-Closing Tax Periods (other than Taxes described in the preceding clause (a)); (c) all Taxes due and owing by the Sellers with respect to the Acquired Interests or any Hydrocarbon production therefrom (including with respect to Property-Related Taxes and Production Taxes) or by Fieldwood U.A. (whether or not shown on any Tax Return) have been paid, and no extension of time within which to file any such Tax Return is in effect; (d) there are no Encumbrances on any Acquired Interest; (e) no audits, investigations, examinations, audits, litigation, Claims or other proceedings are pending, or to the Sellers' Knowledge threatened in writing, against any Seller relating to the payment of Taxes (including Property-Related Taxes and Production Taxes) with respect to any Acquired Interests or with respect to Taxes for which Fieldwood U.A. may be liable; (f) there are no currently proposed or pending adjustments by any Governmental Authority in connection with any Tax Returns of any Seller pertaining to the Acquired Interests or of Fieldwood U.A.; (g) no waiver or extension of any statute of limitations has been granted or requested as to any Tax matter relating to any Acquired Interests or with respect to any Taxes for which Fieldwood U.A. may be liable, in each case, that is still in effect; (h) Fieldwood U.A. will not be required to include any item of income in, or exclude any item of deduction from, taxable income in any taxable period (or portion thereof) after Closing, as a result of any change in method of accounting, closing agreement, installment sale or receipt of any prepaid amount outside of the ordinary course of business, in each case, made or entered into prior to Closing; (i) no Governmental Authority responsible for the administration or imposition of Taxes in any jurisdiction in which a Seller or any of its Affiliates (in respect of the Acquired Interests) or Fieldwood U.A. has not filed a Tax Return has asserted in writing that such Seller, any of its Affiliates, or Fieldwood U.A., as the case may be, is subject to Tax or required to file a Tax Return in that jurisdiction; (j) Fieldwood U.A. has withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor, creditor, customer, shareholder or other third party; (k) Fieldwood U.A. has not been a member of any Company Group; (l) none of the Sellers or Fieldwood U.A. has engaged in a "***listed transaction***" within the meaning of Treasury Regulations Section 1.6011-

4(b); (m) the Acquired Interests are not subject to, for federal income tax purposes, a partnership between any Seller and any other Person for which a partnership income tax return is required to be filed under Subchapter K of Chapter 1 of Subtitle A of the Code (other than a partnership for which an election to be excluded from such provisions is in effect pursuant to the provisions of Section 761 of the Code and the regulations thereunder); (n) Fieldwood U.A. is not, and does not own (directly or indirectly) stock or a warrant in, a corporation that is (or was at any time during the course of such ownership) a passive foreign investment company, as defined in Section 1297 of the Code; (o) Fieldwood U.A. is not a party to or bound by any Tax Sharing Agreement; and (p) **Schedule 4.9(p)** lists (A) the entity classification of Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof for U.S. federal income Tax purposes, as of the date hereof and as of the Closing Date, and (B) each entity classification election and change in entity classification that has been made under Treasury Regulations Section 301.7701-3 with respect to Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof for U.S. federal income Tax purposes.

4.10   <u>Well Status</u>.  Except as set forth on **Exhibit C**, (a) the Sellers are the operators of that portion of the Lease(s) covering all Scheduled Wells; (b)  all Wells that are not currently producing Hydrocarbons in paying quantities have been plugged, abandoned and decommissioned, and all related salvage, site clearance and surface restoration and decommissioning operations have been completed, in accordance with all applicable Laws in all material respects; (c) no Scheduled Well has been permanently, or is currently temporarily, plugged and abandoned; and (d) there is no Well in respect of which any Seller or any of its Affiliates has received an order from any Governmental Authority requiring that such Well be plugged and abandoned (or re-plugged), other than a Well for which such plugging and abandonment (or re-plugging) requirements have been completely satisfied.  All Wells that have not been plugged, abandoned and decommissioned are listed on **Exhibit C**.

4.11   <u>Compliance with Laws; Permits</u>.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, (a) each Seller, and to the Sellers' Knowledge each Third Person operator of any Lease (or portion thereof), Subject Unit or Easement, is in compliance, and since January 1, 2018 has at all times complied, with all applicable Laws and all Permits necessary or required in each case in connection with the ownership and, with respect to each Acquired Interest operated by a Seller, operation of the Acquired Interests, including the Leases, Subject Units, Easements and Wells and the production, marketing and disposition of Hydrocarbons therefrom; and (b) with respect to each Acquired Interest, the Sellers and, to the Sellers' Knowledge, each Third Person operator of such Acquired Interest, if applicable, has all Permits necessary or required in connection with the ownership and operation of such Acquired Interest, and all such Permits are in full force and effect.  Since January 1, 2018, no Seller has received written notice from any Governmental Authority that any applicable Law or Permit has been violated or not complied with by any Seller.  With respect to Suspense Funds, each Seller is in compliance with applicable Laws in all material respects.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, Fieldwood U.A. and the Mexico JV are in compliance with applicable Laws.  Other than the Bankruptcy Cases, there is no judgment, decree, injunction, rule or order of any arbitrator or Governmental Authority outstanding against any Seller, Fieldwood U.A. or the Mexico JV that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  All Permits held by the Sellers that relate to the Assets are valid and in full force and effect and no Seller is in

23

default under or in violation of any such Permit, except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect.

4.12    Environmental Matters.  Except as could not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect or as set forth on **Schedule 4.12**, (a) each Seller, and to the Sellers' Knowledge each Third Person operator of any Acquired Interest, if applicable, has all Permits required under Environmental Laws in connection with the ownership and operation of the Acquired Interests, including the Field Assets, the production, marketing and disposition of Hydrocarbons therefrom and the ownership and use of the Office Assets and all such Permits are in full force and effect; (b) no Seller has received, and to the Sellers' Knowledge no Third Person operator has received, any written notice of violation, assessment or incident of non-compliance or other communication that alleges any actual or potential non-compliance with or Liability under any Environmental Law or Permit required under Environmental Laws in connection with ownership or operations of the Acquired Interests, including the Field Assets and Office Assets; (c) no investigation, proceedings or other Claims resulting from any Environmental Law or Permit required under Environmental Laws is pending, or to the Sellers' Knowledge threatened in writing, against any Asset, (d) the Assets are in compliance in all respects with all applicable Environmental Laws, and (e) there has been no Release under or from any Asset or, to the Sellers' Knowledge, at any asset or property formerly owned, leased or operated by, or otherwise arising from the operations of any Seller or any of its Affiliates or predecessors, in violation of, or in a manner reasonably expected to give rise to Liability under, Environmental Laws or any Permit required under Environmental Laws. The Sellers have made available to Buyer, in written or electronic format, all environmental site assessments, studies and analyses in the possession or control of any Seller addressing potentially material Losses, Claims or obligations pertaining to Environmental Contaminants or Environmental Law in relation to the Acquired Interests.

4.13    Payments.  Except (x) as set forth on **Schedule 4.13** and (y) for the Suspense Funds listed on **Schedule 4.20**, each Seller has timely (a) paid all Lease Burdens due in respect of Hydrocarbons produced from or allocable to any Acquired Interests payable by the Sellers, (b) reported to applicable Governmental Authorities, to the extent required by applicable Law, Hydrocarbons produced from or allocable to any Lease, Subject Unit or Well required to be reported by the Sellers, and (c) paid all amounts owing by such Seller under any Easement or with respect to any Office Asset, except, in the case of this clause (c), as would not be reasonably expected to result, individually or in the aggregate, in a Material Adverse Effect.  No Seller has received written notice of any Claim that has not been resolved claiming that such Seller's disbursement of Lease Burdens or reporting of Hydrocarbon production with respect to the Acquired Interests is inaccurate, other than Claims relating to disbursements or reporting that are not, in the aggregate, material to the Acquired Interests taken as a whole.

4.14    Material Contracts.

(a)    Prior to the Execution Date, the Sellers made available to Buyer accurate and complete copies of all Material Contracts.  Except as set forth on **Schedule 4.14**, no Seller has delegated or otherwise transferred to any third party any of its material rights or obligations with respect to any Assigned Contract.  Except as set forth on **Schedule 4.14**, no Seller is a party to or

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

bound by any of the following Contracts (other than any Contract that is an Excluded Asset or Retained Liability) (each, a "***Material Contract***"):

(i)       any Contract (excluding any purchase orders entered into in the ordinary course of business) relating to or used in connection with any Acquired Interest that could reasonably be expected to provide for either (A) annual payments by, or revenues to, the Sellers of $5,000,000 or more or (B) aggregate payments by, or revenues to, the Sellers of $10,000,000 or more;

(ii)      any Subject Unit Agreement;

(iii)     any Hydrocarbon purchase and sale, exchange, marketing, compression, fractionation, drilling, completion, gathering, transportation, processing, production handling, refining, treatment, storage, handling, chemicals, construction or similar Contract, in each case, that is not terminable by the Sellers without penalty on thirty (30) days' or less notice;

(iv)      any Contract to acquire, sell, lease, develop or otherwise dispose of or encumber any interest in any of the Acquired Interests after the Closing Date (other than sales of Hydrocarbons in the ordinary course of business);

(v)       any Contract with any individual person acting as an independent contractor or consultant which includes payment for services to such person in excess of $500,000 annually;

(vi)      any Contract relating to or used in connection with any Acquired Interests that limits the freedom of any Seller to engage in any line of business or in any area or to compete with any Person or which would so limit the freedom of Buyer or any of its Affiliates after the Closing Date, including any noncompetition agreement, area of mutual interest or other agreement;

(vii)     any Contract providing for any call upon, option to purchase, or similar rights with respect to the Acquired Interests or to the production therefrom or the processing thereof, or that is a dedication of production;

(viii)    any Contract relating to or used in connection with any Acquired Interest that constitutes an operating agreement, exploration agreement, joint development agreement, farmin agreement, plugging and abandonment agreement, balancing agreement, platform use agreement, farmout agreement, partnership agreement, participation agreement, joint venture agreement, or similar Contract;

(ix)      any Contract relating to or used in connection with any Acquired Interest involving any resolution or settlement or any actual or threatened Claim which imposes material continuing obligations on any Seller will not have been fully performed prior to the Closing Date;

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(x)      any Contract relating to or used in connection with any Acquired Interest that requires the posting of a security deposit, letter of credit, performance bond or surety;

(xi)      any Contract relating to or used in connection with any Acquired Interest that is a seismic, engineering, geological or other geophysical acquisition agreement or license;

(xii)      any Contract pursuant to which a Seller (A) grants to a third party any license, right to use or covenant not to sue under any Owned Intellectual Property or (B) is granted by a third party any license, right to use or covenant not to sue under any Intellectual Property (excluding from clause (B), (x) licenses for commercial off-the-shelf software that are generally available on non-discriminatory pricing terms which have an aggregate annual cost of $50,000 or less and (y) the licenses and agreements listed on **Exhibit F**);

(xiii)      any lease or sublease for any personal property included in the Acquired Interests providing for annual rentals of $250,000 or more;

(xiv)      any lease or sublease of real property; and

(xv)      any Contract by which any Seller is obligated by virtue of a take or pay payment, advance payment, production payment or other similar payment or commitment, to deliver Hydrocarbons, or proceeds from the sale thereof, attributable to the Sellers' aggregate interest in the Assets at some future time without receiving payment therefor at or after the time of delivery.

(b)      Each Material Contract is in full force and effect and a valid and binding obligation of the Seller(s) party thereto and, to the Sellers' Knowledge, the other parties thereto, in accordance with its terms and conditions, except as such validity and enforceability may be limited by (i) bankruptcy, insolvency, or other similar Laws affecting the enforcement of creditors' rights generally, (ii) equitable principles of general applicability (whether considered in a proceeding at law or in equity), and (iii) the obligation to pay Cure Costs.  No event has occurred which, with the passage of time or the giving of notice, or both, would constitute a default under or a violation of any Material Contract or would cause the acceleration of any right or obligation of any Seller or, to the Sellers' Knowledge, any other party thereto or the creation of an Encumbrance upon any Acquired Interest, except for such events that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  No Seller nor, to the Sellers' Knowledge, any other party to any Material Contract has given written notice of any action to terminate, cancel, rescind, repudiate or procure a judicial reformation of any such Material Contract or any provision thereof.

(c)      Prior to the Execution Date, the Sellers made available to Buyer accurate and complete copies of all Leases and Easements. Except as set forth on **Schedule 4.14(c)**, no Seller is a party to or bound by any Lease or Easement (other than any Lease or Easement that is an Excluded Asset or Retained Liability).

26

4.15     Imbalances; Prepayments.   Except as set forth on **Schedule 4.15**, as of the Execution Date, (x) no Seller has a Claim constituting an Acquired Interest and (y) no Seller is subject to any Liability constituting an Assumed Liability, with respect to any Imbalance.

4.16     AFEs; Cash Calls.   Except as set forth on **Schedule 4.16(a)**, no authorities for expenditure or other commitments to make capital expenditures relating to any Acquired Interest for which the Sellers' liability is in excess of $200,000 is outstanding.  Except as set forth on **Schedule 4.16(b)**, no cash calls or payments due from any Seller under the terms of the Assigned Contracts or otherwise relating to the Acquired Interests are past due by more than thirty (30) days (excluding amounts being disputed in good faith).

4.17     Labor and Employment Matters.

(a)     The Sellers have provided the Ad Hoc Group of Secured Lenders Advisors (as defined in the Plan), on a confidential basis and for professional eyes only, with a true and complete list of the following information for all employees of the Sellers and of each of their Affiliates (such employees from time to time, and whether or not listed, the "*Seller Employees*"), including name, title, hire date, location, whether full- or part-time, whether active or on leave (and, if on leave, the nature of the leave and the expected return date), whether exempt from the Fair Labor Standards Act of 1938, annual salary or wage rate, most recent annual bonus received, and current annual bonus opportunity (such list, the "*Employee List*"), which list may not be shared with any debt or equity holders of Buyer.  In addition, the Sellers have provided Buyer with the Employee List, but excluding each Seller Employee's name and title, which can be shared with Buyer's debt and equity holders, the DIP Lenders (as such term is defined in the Plan) and the FLTL Lenders (as such term is defined in the Plan).

(b)     The Sellers and each of their Affiliates are, and for the last three (3) years, have been, in compliance in all material respects with applicable Laws relating to labor and employment, including those relating to worker classification, labor management relations, wages and hours (including classification of independent contractors and exempt and non-exempt employees), overtime, collective bargaining, unemployment, workers' compensation, equal employment opportunity, discrimination, civil rights, affirmative action, work authorization, immigration, safety and health, continuation coverage under group health plans, information privacy and security and payment of withholding of taxes and social security.

(c)     For the last three (3) years, (i), no allegations of sexual harassment or other sexual misconduct have been made against any current or former employee or independent contractor of the Sellers or any of their Affiliates who has three or more direct reports, (ii) there are and have been no actions pending or, to the Sellers' Knowledge, threatened in writing related to any allegations of sexual harassment or other sexual misconduct by any current or former employee or independent contractor of the Sellers or any of their Affiliates who has three or more direct reports, and (iii) neither the Sellers nor any of their Affiliates have entered into any settlement agreements related to allegations of sexual harassment or other sexual misconduct by any current or former employee or independent contractor of the Sellers or any of their Affiliates.

(d)     There are no collective bargaining agreements to which any Seller or any Affiliate of any Seller is a party relating to any Seller Employee and, to the Sellers' Knowledge,

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

threatened.  No application for certification of a collective bargaining agent involving any Seller and any Seller Employee is pending.  With respect to the Seller Employees, there are no (i) strikes, slowdowns, picketing or work stoppage by any Seller Employee pending or, to the Sellers' Knowledge, threatened or (ii) except as would not reasonably be expected to result in a material Liability, unfair labor practice charges or other employment or labor complaints pending or, to the Sellers' Knowledge, threatened in writing against any Seller or any of their Affiliates before the National Labor Relations Board or any other Governmental Authority or any current union representation questions involving any current or former employees or independent contractors of any Seller or any of their Affiliates.

4.18   Employee Benefits.

(a)   **Schedule 4.18** sets forth a true and complete list of each material (i) deferred compensation plan, (ii) incentive compensation plan, (iii) equity compensation plan, (iv) "*welfare*" plan, fund or program (within the meaning of Section 3(1) of ERISA), (v) "*pension*" plan, fund or program (within the meaning of Section 3(2) of ERISA), (vi) "*employee benefit plan*" (within the meaning of Section 3(3) of ERISA), (vii) employment (other than offer letters entered into in the ordinary course of business that do not provide for severance, transaction or retention bonuses or any guaranteed payments), termination, severance or "*change in control*" agreement and (viii) other employee benefit plan, fund, program, agreement or arrangement, in each case, that is sponsored, maintained or contributed to or required to be contributed to by any Seller or by any trade or business, whether or not incorporated, that together with any Seller would be deemed a "*single employer*" within the meaning of Section 4001(b) of ERISA (an "*ERISA Affiliate*"), or to which any Seller or any ERISA Affiliate is party, for the benefit of any Seller Employee (each an "*Employee Plan*").  Each Employee Plan that Buyer or one of its Affiliates shall assume as of the Closing will be so noted on **Schedule 4.18** (each an "*Assumed Employee Plan*").

(b)   None of the Sellers nor any of their Affiliates or ERISA Affiliates (nor any predecessor of any such entity) sponsors, maintains, administers or contributes to (or has any obligation to contribute to), or has in the past six (6) years sponsored, maintained, administered or contributed to (or had any obligation to contribute to), or has or is reasonably expected to have any direct or indirect Liability with respect to, any plan subject to Title IV of ERISA, including any "*multiemployer plan*" (as defined in Section 3(37) of ERISA or any plan described in Section 413 of the Code).  No Assumed Employee Plan is a multiple employer welfare arrangement (within the meaning of Section 3(40) of ERISA).

(c)   Each Assumed Employee Plan that is intended to be qualified under Section 401(a) of the Code has received a favorable determination letter or opinion, is entitled to rely on an opinion letter from the IRS or has applied to the IRS for such a letter within the applicable remedial amendment period or such period has not expired and, to the Sellers' Knowledge, no circumstances exist that would reasonably be expected to result in the loss of such qualification.

(d)   No Assumed Employee Plan provides for any post-employment or post-retirement medical, dental, disability, hospitalization, life or similar benefits (whether insured or

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

self-insured) to any current or former employee of the Sellers (other than coverage mandated by applicable Law, including COBRA).

(e)     Each Employee Plan has been maintained, funded and administered in compliance with its terms and all applicable Law, including ERISA and the Code, except where the failure to be so operated would not reasonably be expected to result in a material Liability. There is no action, suit, investigation, audit, proceeding or claim (other than routine claims for benefits) pending against or, to the Sellers' Knowledge, threatened against or involving any Employee Plan before any court or arbitrator or any Governmental Authority, including the IRS, the Department of Labor or the Pension Benefit Guaranty Corporation, that would reasonably be expected to result in a material Liability.

(f)     Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby (either alone or together with any other event) will (i) entitle any current or former employee or independent contractor to any material payment or benefit, including any bonus, retention, severance, retirement or job security payment or benefit, (ii) accelerate the time of payment or vesting or trigger any payment or funding (through a grantor trust or otherwise) of compensation or benefits under, or increase the amount payable or trigger any other obligation under, any Employee Plan with respect to any current or former employee or independent contractor or (iii) result in the payment of any amount that would subject any current or former employee or independent contractor to excise taxes under Section 4999 of the Code.

4.19     <u>Non-Consent Operations</u>.  Except as set forth on **Schedule 4.19**, no operations are being conducted or have been conducted on any Field Assets with respect to which any Seller has elected, or been deemed, to be a non-consenting party under the applicable operating agreement and with respect to which all of such Seller's rights have not yet reverted to it.

4.20     <u>Suspense Funds</u>.  **Schedule 4.20** sets forth the amount of all Suspense Funds as of the date set forth therein.

4.21     <u>Payout Balances</u>.  To the Sellers' Knowledge, **Schedule 4.21** contains a list of the estimated status of any "***payout***" balance (on a gross Working Interest basis for all Working Interest owners affected thereby), as of the date set forth on such Schedule, for each Well, Lease or Subject Unit that is subject to a reversion or other adjustment at some level of cost recovery or payout.

4.22     <u>Title to Acquired Interests</u>.

(a)     The Sellers: (i) with respect to each Lease listed on **Exhibit A**, hold pursuant to such Lease a valid interest in all or a portion of the oil and gas interests leased pursuant to such Lease, (ii) with respect to each Easement listed on **Exhibit B**, have a valid easement or other limited property interest in such Easement and (iii) with respect to each Well listed on **Exhibit C**, hold pursuant to one or more of the Leases a valid interest in all or a portion of the oil and gas produced from such Well, in each case, free and clear of any Encumbrances (other than (x) Permitted Encumbrances and (y) as would not be material to such Acquired Interest).  For the avoidance of doubt, the Sellers do not make any representations or warranties pursuant to the preceding sentence with respect to holding any specific net revenue interest or working interest in

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

any of the Wells or Leases.  Except for the Encumbrances described on **Schedule 4.22**, the Sellers have good and valid title to all Acquired Interests other than the Wells, Leases, Easements and Subject Units, and are the record and beneficial owners of the Fieldwood U.A. Interests and the JV Interests, in each case free and clear of any Encumbrances and any other limitation or restriction (including any restriction on the right to vote, sell or otherwise dispose of the Fieldwood U.A. Interests or the JV Interests), other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances), in each case except as would not be material to such Acquired Interest.

(b)     No Affiliate of Fieldwood that is not a Seller owns any asset, property or right that is an Acquired Interest or would have been an Acquired Interest if such Affiliate had been a Seller hereunder.

(c)     The Acquired Interests constitute all of the property and assets used or held for use in the business of the Sellers as it relates to the ownership and operation of the Leases and are adequate to conduct the business of the Sellers as it relates to the ownership and operation of the Leases as currently conducted.

(d)     Except as set forth on **Schedule 4.22(d)**, no Seller or any of its Affiliates owns any real property.

4.23     Insurance.  **Schedule 4.23** sets forth a true and complete list of all policies of insurance held by or maintained by the Sellers or any of their Affiliates related to any Acquired Interests or the Seller Employees, including the type of policy, the limits of the coverage and any deductible or self-retention limit with respect thereto.  Such policies of insurance are in full force and effect.  Except as set forth on **Schedule 4.23**, no Seller has received, since January 1, 2020, any written notice from any insurer under any insurance policy applicable to the Acquired Interests or the Seller Employees disclaiming or limiting coverage with respect to any particular material claim or such policy in general or canceling or amending any such policy.  All premiums payable under all such insurance policies have been timely paid and each Seller has otherwise complied in all material respects with the terms and conditions of all such insurance policies.  To the Knowledge of the Sellers, no termination of, material non-ordinary course premium increase with respect to, or material alteration of coverage under, any of such policies or bonds has been threatened.

4.24     Related Party Transactions.  Except as set forth on **Schedule 4.24**, (a) there are no Assigned Contracts by and between any Seller and (i) any Affiliates of, or holder of five percent (5%) or more of the equity of, any Seller, (ii) any director or officer of any Seller or of any Person referenced in clause (i), or (iii) any "***associate***" or "***immediate family***" member (as such terms are respectively defined in Rule 12b-2 and Rule 16a-1 of the Securities Exchange Act of 1934) of any Person referenced in clause (i) or (ii) (the Persons referenced in clauses (i), (ii) and (iii) collectively, the "***Seller Related Parties***") and (b) no Seller has otherwise entered into any transactions or other arrangements with any Seller Related Parties that will be binding on Buyer or the Acquired Interests after the Closing Date.

4.25    Intellectual Property.

(a)    **Schedule 4.25(a)** contains a true and complete list of each of the issuances, registrations and applications for issuance or registration included in the Owned Intellectual Property, specifying as to each such item, as applicable, (i) the owner of such item, (ii) each jurisdiction in which such item is issued or registered or in which any application for issuance or registration has been filed, (iii) the respective issuance, registration and/or application number of such item and (iv) the date of application and issuance or registration of such item.

(b)    The Sellers are the sole and exclusive owners of all Owned Intellectual Property, in each case free and clear of any Encumbrance (except Permitted Encumbrances).  The Sellers own or have a valid and enforceable license or other right to use all Transferred Intellectual Property, and the Transferred Intellectual Property is all of the Intellectual Property (except Trademarks) necessary for the conduct of, or used or held for use in, the business of the Sellers as it relates to the Acquired Interests as currently conducted.

(c)    There exist no restrictions on the Sellers' disclosure, use, license or transfer of the Owned Intellectual Property, and the consummation of the transactions contemplated by this Agreement will not alter, encumber, impair or extinguish any Owned Intellectual Property or the Sellers' rights under any material Licensed Intellectual Property or impair the right of the Sellers to develop, use, sell, license or otherwise dispose of, or to bring any action for the infringement, misappropriation or other violation of, any Owned Intellectual Property.

(d)    The Sellers have not infringed, misappropriated or otherwise violated any Intellectual Property of any Person.  There is no Claim pending or threatened in writing, in each case, against any Seller (i) challenging or seeking to deny or restrict, the rights of any Seller in any of the Transferred Intellectual Property, (ii) alleging that any Transferred Intellectual Property is invalid or unenforceable, (iii) alleging that the use of any of the Transferred Intellectual Property or any services provided, processes used or products manufactured, used, imported or sold by any Seller, misappropriate, infringe or otherwise violate any Intellectual Property of any Person or (iv) otherwise alleging that any Seller has infringed, misappropriated or otherwise violated any Intellectual Property of any Person.

(e)    The Sellers have taken commercially reasonable steps to maintain, enforce and protect the Owned Intellectual Property.  None of the issuances or registrations included in the Owned Intellectual Property has been adjudged invalid or unenforceable in whole or part, all issuances and registrations included in the Owned Intellectual Property are valid, enforceable, in full force and effect and subsisting, and all registration, maintenance and renewal fees applicable to such issuances and registrations that are currently due have been paid and all documents and certificates related to such items and required to be filed with the relevant Governmental Authority for the purposes of maintaining such items have been filed with the relevant Governmental Authority.

(f)    To the Sellers' Knowledge, no Person has infringed, misappropriated or otherwise violated any material Owned Intellectual Property.  The Sellers have taken commercially reasonable steps in accordance with normal industry practice to maintain the confidentiality of all material Owned Intellectual Property the value of which to any of the Sellers is contingent upon

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

maintaining the confidentiality thereof and no such material Owned Intellectual Property has been disclosed other than to employees, representatives, agents or partners of the Sellers or any other Persons, in each case, who are bound by written and enforceable confidentiality agreements.

(g)     The Sellers have appropriate procedures in place designed to provide that all material Intellectual Property conceived or developed by employees performing their duties for any Seller, and by Third Persons performing research and development for any Seller, have been assigned to such Seller, as applicable.  To the extent that any material Owned Intellectual Property has been developed or created by any Third Persons (including any current or former employee) for any Seller, such Seller has a written agreement with such Third Persons with respect thereto, which provides that such Seller either (i) has obtained ownership of and is the sole and exclusive owner of or (ii) has obtained a valid right to exploit, sufficient for the conduct of its business as it relates to the Acquired Interests, as currently conducted, such material Owned Intellectual Property.

(h)     The Seller IT Assets operate and perform in a manner that permits each Seller to conduct its business as it relates to the Acquired Interests as currently conducted, and the Sellers have taken commercially reasonable actions, consistent with current industry standards, to protect the integrity and security of the Seller IT Assets (and the confidentiality and security of all information and transactions stored or contained therein or transmitted thereby) against unauthorized use, access, interruption, modification or corruption, including the implementation of commercially reasonable (i) data backup, (ii) disaster avoidance and recovery procedures, (iii) business continuity procedures and (iv) encryption and other security protocol technology.  There has been no unauthorized use, access, interruption, modification or corruption of any Seller IT Assets that had a material adverse impact on the Sellers.

(i)     The Sellers have at all times materially complied with all applicable Laws, policies, procedures and contractual and all other obligations governing the collection, use, storage, processing, disclosure, protection, or security of Personal Information collected, used, stored, transferred or processed by or on behalf of any Seller (collectively, the "**Data Obligations**").  There has been no material loss, theft, security breach or unauthorized or unlawful disclosure or acquisition of any such Personal Information. No Claim has been asserted or, to the Sellers' Knowledge, threatened in writing, in each case, against any Seller alleging a violation of any Data Obligation.  For purposes of this Section 4.25(b), "**Personal Information**" means, in addition to any definition for any similar term (e.g., "personal data" or "personally identifiable information") provided by applicable Law, all information that identifies or can reasonably be used to identify an individual person.

4.26     Undue Influence.  In the past five (5) years, in connection with the ownership or operation of the business of the Sellers as it relates to the Acquired Interests, neither any Seller nor, to the Sellers' Knowledge, any director, officer, agent, employee or Affiliate, in each case, of any Seller, has taken any action, directly or indirectly, with respect to the business of the Sellers as it relates to the Acquired Interests that would result in a material violation of the Foreign Corrupt Practices Act of 1977 and the rules and regulations thereunder (the "**FCPA**") or any anti-corruption or anti-bribery laws, export control laws or sanctions issued or promulgated by any Governmental Authority.  In the past five (5) years, each Seller, and, to the Sellers' Knowledge, their respective Affiliates, have conducted the business of the Sellers as it relates to the Acquired Interests in

compliance with the FCPA and all anti-corruption and anti-bribery laws, export control laws and sanctions issued or promulgated by any Governmental Authority in all material respects.

4.27    No Undisclosed Material Liabilities.  Except as set forth on **Schedule 4.27**, there are no Liabilities of or relating to the business of the Sellers as it relates to the ownership or operation of the Acquired Interests that would constitute Assumed Liabilities (without taking into account any modifications requested by Sellers to the Co-Owned Assets, Other Assets or Assumed Liabilities after the Execution Date) that would be required by GAAP to be disclosed on financial statements of the Sellers as of the Execution Date, other than Liabilities (a) reflected or disclosed in the consolidated balance sheet of the Sellers for the fiscal quarter ended September 30, 2020 ("***Balance Sheet Date***"), (b) incurred in the ordinary course of business since the Balance Sheet Date (excluding any breaches of Law or any Lease, Easement or Contract), (c) disclosed in any materials filed with the Bankruptcy Court prior to the Execution Date in connection with the Bankruptcy Cases, (d) set forth on the Disclosure Schedules or (e) that are not material, individually or in the aggregate, to the Acquired Interests.

4.28    Absence of Certain Changes.

(a)    Since the Balance Sheet date through the Execution Date, (i) except as authorized by the Bankruptcy Court prior to the date hereof, including as expressly contemplated by any orders entered in the Bankruptcy Cases from and after the Petition Date through the date hereof, the Acquired Interests have been owned and operated in the ordinary course of business in all material respects and (ii) except as disclosed on the Financial Statements, there has not been a Material Adverse Effect.

(b)    From January 1, 2020 through the Execution Date, except as set forth on **Schedule 4.28(b)**, or as expressly contemplated by any orders entered in the Bankruptcy Cases from and after the Petition Date, the Sellers have not:  (A) purchased or otherwise acquired any material properties or assets (tangible or intangible) that constitute Acquired Interests or sold, leased, licensed, transferred, abandoned or otherwise disposed of any material assets that would otherwise have constituted Acquired Interests, except for (x) purchases of materials, and sales of Hydrocarbons and surplus inventory, in each case, in the ordinary course of business and (y) purchases or sales not contemplated by the preceding clause (x) that involved consideration of less than $5,000,000 individually, and $10,000,000 in the aggregate, (B) removed any material Inventory or other Acquired Interests from any of the properties or facilities that will transfer to Buyer as a result of the transactions contemplated hereby, other than in the ordinary course of business or (C) suffered any damage or destruction to or loss of any Acquired Interest whether or not covered by insurance where the value of such damage, destruction or loss (measured by cost to the Sellers of repairing or replacing the applicable Acquired Interest) was greater than $1,000,000.

4.29    Equipment and Fixed Assets.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, all Inventory is in good operating condition and state of repair for the purposes for which they are used by the Sellers in the operation of its business, normal wear and tear excepted.

33

4.30   <u>Operatorship</u>.  The Sellers have not received written notice of any vote to have the Sellers removed as the named operator of any of the Field Assets for which any Seller is currently designated as the operator and for which such vote is pending as of the Execution Date.  From September 30, 2013 through the Execution Date, no Seller has been removed as the named operator of any material Field Asset.

4.31   <u>Joint Venture</u>.

(a)   Fieldwood U.A. is an entity duly formed and validly existing under the Laws of the Netherlands.  To the Sellers' Knowledge, (i) Fieldwood Mexico is an entity duly formed and validly existing under the Laws of the Netherlands and (ii) each of the Subsidiaries of Fieldwood Mexico is an entity duly formed and validly existing under the Laws of its jurisdiction of incorporation.  Fieldwood U.A. is, and, to the Sellers' Knowledge, the Mexico JV is qualified to do business and is in good standing under the Laws of each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not, individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect.  Fieldwood U.A. has, and, to the Sellers' Knowledge, the Mexico JV has all requisite power and authority required to own and operate their properties and to carry on their business as now conducted.

(b)   Prior to the date hereof, the Sellers have made available to Buyer all organizational documents and equity holder, stockholder, operating, membership, voting and other similar agreements of or relating to Fieldwood U.A. and, to the Sellers' Knowledge, the Mexico JV (the "***Organizational Documents***").  None of any Seller or, to the Sellers' Knowledge, any other Person, is in material breach of any Organizational Document.  Other than the Organizational Documents, there are no agreements to which any Seller is a party with respect to the voting of any JV Interests or Fieldwood U.A. Interests or which restrict the transfer of any JV Interests or Fieldwood U.A. Interests.

(c)   To the Sellers' Knowledge, Fieldwood Mexico has the following Subsidiaries, each of which are incorporated in Mexico: (1) Fieldwood Energy de Mexico, S. de R.L. de C.V.; (2) Fieldwood Energy E&P Mexico, S. de R.L. de C.V.; and (3) Fieldwood Energy Services de Mexico, S. de R.L. de C.V.  To the Sellers' Knowledge, as of the Execution Date, the equity interests of: (i) Fieldwood Mexico consists of (A) class A shares, (B) class B shares and (C) class D shares, (ii) Fieldwood Energy de Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*), (iii) Fieldwood Energy E&P Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*) and (iv) Fieldwood Energy Services de Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*) (the equity interests of the Mexico JV collectively, the "***JV Shares***").  The equity interests of Fieldwood Mexico and each of its Subsidiaries that are held by the Sellers are listed on **Schedule 4.31(c)**.  To the Sellers' Knowledge, (x) the equity interests of Fieldwood Mexico, and (y) the issued and outstanding JV Shares are held of record by the Persons listed on **Schedule 4.31(c)**.

(d)   The outstanding equity interests of Fieldwood U.A., as of the Execution Date, consist of the Fieldwood U.A. Interests, and are held of record by the Persons listed on **Schedule 4.31(d)**.

(e)      All of the issued and outstanding Fieldwood U.A. Interests and, to the Sellers' Knowledge, JV Interests have been duly authorized and validly issued, and are fully paid and nonassessable and were not issued in violation of any rights of first refusal, preemptive rights or similar rights.  Except as set forth on **Schedule 4.31(c)** and **Schedule 4.31(d)**, (i) all of the outstanding securities or other similar ownership interests of any class or type of or in Fieldwood U.A. are held by Fieldwood Offshore LLC and Fieldwood, (ii) there are no outstanding securities or other similar ownership interests of any class or type of or in Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico J.V. and (iii) there are no outstanding options, warrants, calls, purchase rights, subscription rights, exchange rights or other rights, convertible exercisable or exchangeable securities, ***phantom*** equity rights, stock appreciation rights, equity-based performance units, or similar agreements, commitments or undertakings of any kind pursuant to which Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico JV is or may become obligated to (i) issue, deliver, transfer, sell or otherwise dispose of, or pay an amount relating to, any securities or other similar ownership interests of the Mexico JV or Fieldwood U.A., or any securities convertible into or exercisable or exchangeable for any securities or other ownership interests of the Mexico JV or Fieldwood U.A., or (ii) redeem, purchase or otherwise acquire any outstanding securities of the Mexico JV or Fieldwood U.A.

(f)      Fieldwood U.A. has no employees.  Fieldwood U.A. has (i) no assets other than the JV Interests held by Fieldwood U.A. and (ii) except as set forth on **Schedule 4.31(f)**, no non *de minimis* Liabilities other than those Liabilities incident to the ownership of the JV Interests held by Fieldwood U.A. (but not any Liabilities with respect to any breach of Law or Contract with respect to the ownership of such JV Interests).

4.32    Plan of Merger.  The FWE I Oil and Gas Properties (excluding the assets listed on Exhibit I-K of the Plan of Merger) include solely "Legacy Apache Properties" (as such term is defined in the Apache Term Sheet (as such term is defined in the Restructuring Support Agreement)) and no other asset.  As of the Execution Date, there is no asset listed on Exhibit I-K of the Plan of Merger that is related to, used or held for use in connection with or held as inventory in connection with, any Lease, Easement or Well listed on **Exhibit A**, **Exhibit B** or **Exhibit C**.

4.33    Exhibit X-1.  **Exhibit X-1** sets forth an estimate of estimated Working Capital Assets (excluding clause (b) of the definition thereof) and Working Capital Liabilities (excluding clause (b) of the definition thereof) assuming an Effective Time occurring on June 30, 2021, which was prepared at the direction of the Sellers.  To the Sellers' Knowledge, when prepared in February 2021, the information in **Exhibit X-1** reflected a reasonable estimate of Working Capital Assets (excluding clause (b) of the definition thereof) and Working Capital Liabilities (excluding clause (b) of the definition thereof) assuming an Effective Time occurring on June 30, 2021, subject to (a) the assumptions described therein and (b) omission of liabilities for accrued payroll.  To the Sellers' Knowledge, (x) the Fieldwood Energy I Closing Accounts Receivable do not include or exclude assets that would have resulted in a material deviation of the net amount of the Working Capital Assets described in **Exhibit X-1** if such assets had been estimated and reflected in **Exhibit X-1** when prepared and (y) the Fieldwood Energy I Closing Accounts Payable do not include or exclude liabilities that would have resulted in a material deviation of the net amount of the Working Capital Liabilities described in **Exhibit X-1** if such liabilities had been estimated and reflected in **Exhibit X-1** when prepared (assuming that all, or substantially all, pre-petition payables are excluded from the calculation of Fieldwood Energy I Closing Accounts Payable as

35

obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order, including by being paid as Cure Costs), in the case of each of <u>clause (x)</u> and <u>clause (y)</u>, after taking into account duplication between the accounts described in **Exhibit X-1** and in the definitions of Working Capital Assets and Working Capital Liabilities, on the one hand, and Fieldwood Energy I Closing Accounts Receivable and Fieldwood Energy I Closing Accounts Payable, on the other hand.

## ARTICLE V
## BUYERS' REPRESENTATIONS

Each of Buyer and Buyer 2 represents and warrants to the Sellers, subject to the Disclosure Schedules (subject to <u>Section 12.15</u>), as follows:

5.1     <u>Organization; Standing; Capitalization</u>.

(a)     At the date hereof, each of Buyer and Buyer 2 is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. Each of Buyer and Buyer 2 has all requisite power and authority and all governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted.

(b)     At the Closing, (i) all of the issued and outstanding **[membership interests]** of Buyer are held by [_____], a [_____] ("***Buyer Intermediate***"), (ii) all of the issued and outstanding **[membership interests]** of Buyer 2 are held by Buyer, (iii) all of the issued and outstanding **[membership interests]** of Buyer Intermediate are held by [_____], a [_____] ("***Buyer Parent***") and (iv) all of the issued and outstanding [membership interests] of Buyer Parent are held by [_____], a [_____] ("***Buyer Grandparent***").[6]

(c)     At the Closing, except as set forth on **Schedule 5.1(c)**, the authorized and issued equity interests of Buyer Grandparent (the "***Buyer Grandparent Equity Interests***") shall consist solely of (i) the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of the Plan, (ii) the Subscription Rights (including any New Equity Interests issued in connection with the exercise thereof), (iii) Backstop Commitment Premium Equity Interests (as defined in the Plan), (iv) the GUC Warrants, (v) the SLTL Warrants and (vi) the New Money Warrants, in each case, issued pursuant to, and in accordance with, the Plan.  At the Closing, all of the issued and outstanding Buyer Grandparent Equity Interests, and all of the membership interests of Buyer Parent, Buyer, Buyer 2 and Buyer Intermediate, will have been duly authorized and validly issued, and will be fully paid and nonassessable and not issued in violation of any rights of first refusal, preemptive rights or similar rights.  As of the Closing Date, except as set forth in <u>Section 5.1(b)</u> and the first sentence of this <u>Section 5.1(c)</u>, there are no issued and outstanding (i) securities or other similar ownership interests of any class or type of or in Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent or (ii) options, warrants, calls, purchase rights, subscription rights, exchange rights or other rights, convertible exercisable or exchangeable securities, "***phantom***" equity rights, stock appreciation rights, equity-based performance units, or similar agreements, commitments or undertakings of any kind pursuant to which Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent is or may become obligated to (A) issue, deliver,

---

[6] <u>Note to Draft</u>: To be confirmed prior to signing.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

transfer, sell or otherwise dispose of, or pay an amount relating to, any securities or other similar ownership interests of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent or any securities convertible into or exercisable or exchangeable for any securities or other ownership interests of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent, or (B) redeem, purchase or otherwise acquire any outstanding securities of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent.[7]

(d)     As of immediately following the Closing, the only Liabilities of Buyer, Buyer 2, Buyer Intermediate and Buyer Parent will be: (x) liabilities under the Exit Facilities (as defined in the Plan), (y) in the case of Buyer and Buyer 2, the Assumed Liabilities and (z) Liabilities incurred in connection with this Agreement or any of the Ancillary Documents or any of the transactions contemplated hereunder or thereunder (including with respect to any surety bonds).

5.2    <u>Power</u>. Each of Buyer and Buyer 2 has the requisite power and authority to execute and deliver this Agreement and the Ancillary Documents to which it is a party and perform its obligations under this Agreement and such Ancillary Documents.

5.3    <u>Non-Contravention</u>.  Buyer's execution, delivery and performance of this Agreement and each Ancillary Document to which Buyer is (or, upon its execution and delivery, will be) a party and the performance of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provisions of the organizational documents of Buyer or (b) assuming compliance with matters referred to in <u>Section 5.7</u>, violate any material Law applicable to Buyer.  Buyer 2's execution, delivery and performance of this Agreement and each Ancillary Document to which Buyer 2 is (or, upon its execution and delivery, will be) a party and the performance of the transactions contemplated herein and therein will not (x) conflict with or result in a breach of any provisions of the organizational documents of Buyer 2 or (y) assuming compliance with matters referred to in <u>Section 5.7</u>, violate any material Law applicable to Buyer 2.

5.4    <u>Authorization and Enforceability</u>.  Each of Buyer and Buyer 2 has full capacity, power and authority to enter into and perform this Agreement, each Ancillary Document to which Buyer and Buyer 2, as applicable, is (or, upon its execution and delivery, will be) a party and the transactions contemplated herein and therein.  The execution, delivery and performance by each of Buyer and Buyer 2 of this Agreement and each Ancillary Document to which Buyer and Buyer 2, as applicable, is (or, upon its execution and delivery, will be) a party have been duly and validly authorized and approved by all necessary organizational action of Buyer and Buyer 2, as applicable.  This Agreement and each Ancillary Document to which Buyer and Buyer 2 is (or, upon its execution and delivery will be) a party are, or upon their execution and delivery will be, the valid and binding obligations of Buyer and Buyer 2, as applicable, and enforceable against Buyer and Buyer 2, as applicable, in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws as well as to principles

---

[7] <u>Note to Draft</u>: To be confirmed prior to signing.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

5.5     Liability for Brokers' Fees.  Other than Rothschild & Co. US Inc. and Intrepid Partners, LLC, who have been retained by the Ad Hoc Group of Secured Lenders (as defined in the Plan), there is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of Buyer or Buyer 2 who might be entitled to any fee, commission or expenses in connection with the transactions contemplated by this Agreement or any of the Ancillary Documents.

5.6     Litigation.  Neither any Claim by any Governmental Authority or other Person nor any legal, administrative or arbitration proceeding is pending or, to Buyer's Knowledge, threatened against Buyer or Buyer 2 which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

5.7     Governmental and Third Person Consents.  Except as set forth on **Schedule 5.7** no Governmental Approval is required to authorize, or is otherwise required in connection with, (a) Buyer's or Buyer 2's valid execution and delivery of this Agreement or any Ancillary Document to which Buyer or Buyer 2 is (or, upon its execution and delivery, will be) a party, (b) Buyer's or Buyer 2's performance of their respective obligations hereunder or thereunder or (c) the consummation of the transactions contemplated by this Agreement and the Ancillary Documents.

5.8     Financial Capability.  At or prior to the Closing, Buyer has provided to the Sellers a true and complete copy of the [Direction Letter.][8]

5.9     Qualification.  At the Closing, Buyer will have met the BOEM Qualifications.

5.10    Bankruptcy.  There are no bankruptcy, reorganization, receivership or arrangement proceedings pending against or to Buyer's Knowledge, threatened against Buyer or Buyer 2.

5.11    Investor Status; Investigation.

(a)     To the extent any Acquired Interests constitute securities, the Acquired Interests are being acquired by Buyer and Buyer 2 for investment purposes only, for Buyer's and Buyer 2's own account and not with a view to, or for resale in connection with, any distribution thereof in violation of the 1933 Act.

(b)     Each of Buyer and Buyer 2 acknowledges that, to the extent any Acquired Interests constitute securities, the sale of the Acquired Interests has not been registered under the 1933 Act or any state or foreign securities laws and that the Acquired Interests, to the extent constituting securities, may not be sold, transferred, offered for sale, pledged, hypothecated or otherwise disposed of unless such transfer, sale, assignment, pledge, hypothecation or other disposition is pursuant to the terms of an effective registration statement under the 1933 Act and

---

[8] Note to Draft: Subject to Agent feedback (i.e., whether 1 letter or 2 letters).

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

registered under any applicable state or foreign securities laws or pursuant to an exemption from registration under the 1933 Act and any applicable state or foreign securities laws.

(c)     Each of Buyer and Buyer 2 has such expertise, knowledge and sophistication in financial and business matters generally that it is capable of evaluating, and has evaluated, the merits and economic risks of its investment in the Acquired Interests. Each of Buyer and Buyer 2 is knowledgeable of the oil and gas business and of the usual and customary practices of oil and gas producers, including those in the areas where the Acquired Interests are located. Further, each of Buyer and Buyer 2 is capable of making such investigation, inspection, review and evaluation of the Acquired Interests as a prudent purchaser would deem appropriate under the circumstances including with respect to all matters relating to the Acquired Interests, their value, operation and suitability.

(d)     Each of Buyer and Buyer 2 has had the opportunity to examine all aspects of the Acquired Interests that Buyer and Buyer 2 have deemed relevant and has had access to all information requested by Buyer or Buyer 2 with respect to the Acquired Interests in order to enter into this Agreement. In connection with the transactions contemplated hereby, each of Buyer and Buyer 2 has had the opportunity to ask such questions of, and has received sufficient answers from, the representatives of the Sellers and obtain such additional information about the Acquired Interests as each of Buyer and Buyer 2 deems necessary to enter into this Agreement.

(e)     Each of Buyer and Buyer 2 confirms, acknowledges and agrees that Buyer and Buyer 2, as applicable, is relying entirely upon the representations and warranties of the Sellers in this Agreement, any certificates delivered hereunder and any Ancillary Document, as well as Buyer's and Buyer 2's own investigations and inspections of the books, records and assets of the Sellers, including the Acquired Interests, prior to the execution of this Agreement in entering into this Agreement and proceeding with the transactions on the terms as set forth herein. Each of Buyer and Buyer 2 acknowledges and agrees that, other than the express representations and warranties of the Sellers set forth in Article IV, in the certificates delivered by the Sellers at Closing, or any Ancillary Document, any description of the Sellers, their businesses, operations and assets (including the Acquired Interests) in this Agreement, the Disclosure Schedules or any Ancillary Document is for the sole purpose of identification only and no representation, warranty or condition is or will be given by the Sellers in respect of the accuracy of any description. In deciding to enter into this Agreement, and to consummate the transactions contemplated hereby, other than the express representations and warranties of the Sellers set forth in Article IV, any certificates delivered hereunder and any Ancillary Document, each of Buyer and Buyer 2 has relied solely upon its own knowledge, investigation, judgment and analysis and not on any other disclosure or representation made by the Sellers or the Sellers' representatives. Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.

5.12     No Other Representations. No Seller nor any other Person (on behalf of any Seller or otherwise) has made or is making any representation or warranty whatsoever, express or implied, at law or in equity, with respect to the Sellers, the Acquired Interests, this Agreement or the transactions contemplated by this Agreement other than the representations and warranties expressly set forth in Article IV (as modified by the Disclosure Schedules), the certificates

<div align="center">39</div>

delivered hereunder or any Ancillary Document, and neither Buyer nor Buyer 2 is relying on and has not relied on any representation or warranty other than those representations or warranties set forth in Article IV (as modified by the Disclosure Schedules), the certificates delivered hereunder or any Ancillary Document and any reliance by Buyer or Buyer 2 on any representation or warranty other than those representations and warranties set forth in Article IV (as modified by the Disclosure Schedules), the certificates delivered hereunder or any Ancillary Document is hereby expressly disclaimed. Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.

## ARTICLE VI
## COVENANTS AND AGREEMENTS

6.1    <u>Covenants and Agreements of the Sellers</u>.    The Sellers covenant and agree that, during the Interim Period (or, if earlier, until termination of this Agreement), except (u) as otherwise expressly required under this Agreement or any Ancillary Document, (v) as required by any applicable Law or Governmental Authority (including the Bankruptcy Code, the Bankruptcy Court and any actions required to be taken (or not taken) by the Sellers in order to comply with any orders of the Bankruptcy Court), (w) to the extent related solely to Excluded Assets and/or Retained Liabilities, (x) for renewal of insurance coverage in the ordinary course of business, (y) for emergency operations to address any emergency that threatens human life, safety or the environment; *provided* that the Sellers will provide notice to Buyer of any such emergency operation prior to taking such action if practicable and, otherwise, as soon as reasonably practicable thereafter or (z) otherwise with Buyer's prior written consent (not to be unreasonably withheld, conditioned or delayed):

(a)    except as set forth on **Schedule 6.1(a)**, each Seller shall and shall cause its Affiliates to:

(i)    carry on the business of the Sellers as it relates to the Acquired Interests in the ordinary course of business consistent with past practice and use commercially reasonable efforts to maintain, preserve and protect the Acquired Interests in the condition in which they exist on the Execution Date, except for ordinary wear and tear and except for replacements, modifications or maintenance in the ordinary course of business consistent with past practice;

(ii)    maintain and operate as a reasonably prudent operator in the ordinary course of business the Field Assets operated by the Sellers as of the Execution Date and maintain the Office Assets as a reasonably prudent lessee and owner;

(iii)    use commercially reasonable efforts to maintain their relationships with, and preserve for the business of the Sellers as it relates to the Acquired Interests, and preserve the goodwill of, their key suppliers and customers; *provided*, *however*, that (x) this <u>clause (iii)</u> will not restrict the Sellers from taking any action deemed necessary, prudent or advisable in the business judgment of the Sellers in connection with the Bankruptcy Cases, including with respect to any claim of any suppliers or customers of the Sellers that is subject to the Bankruptcy Cases, and (y) prior to taking any action (other

40

than such action required by the Plan or an order of the Bankruptcy Court) outside the ordinary course of business that the Sellers reasonably believe will adversely affect their relationships with their key suppliers and customers, the Sellers will consult with Buyer prior to taking any such action;

(iv)    pay or cause to be paid, when due, all Taxes, Lease Burdens and development and operating expenses and other payments, in each case consistent with past practice, except (A) royalties held in suspense in good faith and (B) expenses or royalties being contested in good faith;

(v)    maintain its books, accounts and records consistent with past practice;

(vi)    pay all post-petition trade payables and use commercially reasonable efforts to collect accounts receivable, as they related to the Acquired Interests after the Petition Date, in each case in the ordinary course of business consistent with past practice but, in the case of post-petition trade payables, in no event later than the due date thereof, unless being disputed in good faith (but, for the avoidance of doubt, subject to applicable orders of the Bankruptcy Court);

(vii)    provide Buyer (promptly but in no event later than three (3) Business Days after the Sellers' receipt thereof) with copies of any written notice received from any Third Person with respect to (A) any proposed operations on any Field Asset or (B) any Claim relating to any Acquired Interests (in the case of each of clauses (A) and (B), where the Sellers' Liability (or potential Liability) is in excess of $1,000,000);

(viii)    provide Buyer with copies of any material correspondence received from any Governmental Authority with respect to any Acquired Interests as soon as reasonably practicable, but in no event later than two (2) Business Days after the Sellers' receipt thereof; and

(ix)    within ten (10) Business Days following the execution of this Agreement, deliver to Buyer a true and complete list of the names, titles, hire date, location, whether full- or part-time, whether active or on leave (and, if on leave, the nature of the leave and the expected return date), whether exempt from the Fair Labor Standards Act of 1938, annual salary or wage rate, most recent annual bonus received, current annual bonus opportunity for all Seller Employees, which list shall be updated not less than ten (10) Business Days prior to the Closing to reflect the hiring, resignation or termination of any Seller Employee; and

(b)    except as set forth on **Schedule 6.1(b)**, each Seller shall not and shall cause its Affiliates not to:

(i)    modify in any material respect its now existing credit, collection or payment policies, procedures or practices as they relate to the Acquired Interests, including accelerating collections of receivables or failing to pay or delaying payment of payables in a manner inconsistent with its now existing practices;

41

(ii)     remove any Acquired Interest from any real property or other location of the Sellers' business such that such Acquired Interest is no longer located within any property of the Sellers' business that is an Acquired Interest, except for sales of inventory in the ordinary course of business;

(iii)     subject to, and without limiting, the Sellers' rights pursuant to Section 6.4, transfer, convey, sell, abandon or otherwise dispose of any material Acquired Interests (other than sales of Hydrocarbons in the ordinary course of business consistent with past practice) or any interest in any of the Leases;

(iv)     create any Encumbrance on any Acquired Interests other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances) or Encumbrances that will be released prior to Closing (including if released pursuant to the Confirmation Order);

(v)     commence, propose, commit or agree to participate in any single operation with respect to any Field Asset with an anticipated cost in excess of $1,000,000;

(vi)     amend, modify, renew or terminate any Material Contract or enter into any Contract that would be an Material Contract if it existed on the date hereof if such Material Contract would be an Assigned Contract;

(vii)     (A) hire any officers or other senior executive employees or terminate any such officer or employee (other than for "cause"); or (B) except in the ordinary course of business consistent with past practice, hire any other employees or terminate any such other employee (other than for "cause");

(viii)     (A) increase the annual rate of base salary or any target bonus opportunity of any Seller Employee, except in the ordinary course of business consistent with past practice and not in excess of 3% for any Seller Employee; (B) pay any bonus, benefit, or other direct or indirect incentive compensation (other than any such payments authorized pursuant to any first or second day orders in the Bankruptcy Cases); (C) award any equity or equity-based compensation awards (whether phantom or equity) with respect to the equity of any Seller or any of its Affiliates; (D) modify, amend or terminate any Employee Plan; (E) enter into or modify any employment, compensation, severance, non-competition, or similar Contract (or amend any such Contract) to which any Seller or any of its Affiliates is a party; or (F) adopt any new severance pay, termination pay, deferred compensation, bonus, or other employee benefit plan, agreement, program, practice, arrangement or policy with respect to Seller Employees that would be an Employee Plan if it existed on the date hereof (including any employment agreement, severance agreement, change in control agreement, or transaction or retention bonus agreements), except, in the case of each of clauses (A) through (F), (1) to the extent set forth in any order of the Bankruptcy Court or as required by applicable Law; or (2) to the extent required pursuant to the terms of any Employee Plan, as in effect on the date hereof;

(ix)     relinquish its position as operator to any Person other than Buyer or Buyer 2 with respect to any Acquired Interest operated by the Sellers;

(x)     waive, release, settle or compromise any material Claim or proceeding relating to any Acquired Interest;

(xi)     subject to, and without limiting, the Sellers' rights pursuant to Section 6.4, enter into any merger or divisive merger, or liquidate or dissolve;

(xii)     sell, lease, license (except for non-exclusive licenses granted in the ordinary course of business) or otherwise transfer or dispose of, abandon or permit to lapse, fail to take any action necessary to maintain, enforce or protect, or create or incur any Encumbrance (other than Permitted Encumbrances) on, any material Owned Intellectual Property;

(xiii)     cause or allow any of its current directors and officers liability, property or casualty insurance policies that apply to any of the Acquired Interests or that apply to the business of the Sellers as it relates to the Acquired Interests to be canceled or terminated or any of the coverage thereunder to lapse unless, simultaneously with such termination, cancellation or lapse, replacement policies providing coverage equal to or greater than the coverage under the canceled, terminated or lapsed policies are in full force and effect;

(xiv)     make, change or revoke any material Tax election in respect of the Acquired Interests, settle or otherwise compromise any claim relating to Taxes of Fieldwood U.A. or with respect to the Acquired Interests, enter into any closing agreement or similar agreement relating to Taxes of Fieldwood U.A. or the Acquired Interests, surrender any right to claim a Tax refund, offset or other reduction in Tax Liability of Fieldwood U.A. or with respect to the Acquired Interests, or request any ruling or similar guidance with respect to Taxes of Fieldwood U.A. or with respect to the Acquired Interests; or

(xv)     enter into any Contract or other commitment to take, or authorize the taking of or resolve to take, any actions prohibited by this Section 6.1(b).

6.2     Casualty Event.  The Sellers shall give Buyer prompt written notice of any Casualty Event that occurs with respect to any Acquired Interest during the Interim Period, together with a description of the applicable insurance coverage and an estimate of the Sellers' exposure with respect to such Casualty Event.  If the damaged or taken Acquired Interest is not repaired or replaced on or before the Closing Date, the Sellers shall provide to Buyer an assignment of all of the Sellers' right, title and interest in and to all insurance proceeds and recoveries from Third Persons payable, in each case with respect to the Acquired Interest damaged or taken as the result of such Casualty Event.

6.3     Press Releases.  Except as required in the Bankruptcy Cases or by applicable Law (a) each Party shall consult with the other before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement and (b) no Party shall issue any press release or make any such public statement before obtaining the other Party's prior written approval, which shall not be unreasonably withheld, conditioned or delayed. To the extent such release or public statement is required by Law, the Party intending to make such

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

release or public statement (i) shall give the other Party the opportunity (within reasonable time before any applicable deadline) to review and comment upon such release or public statement and (ii) shall consider in good faith all reasonable comments thereto received sufficiently in advance of any applicable deadline.

6.4     Solicitation; Other Offers.

(a)     Each of Buyer and Buyer 2 acknowledges and agrees that from and after the Execution Date through entry of the Confirmation Order, the Sellers may take any action (including entering into any agreement or letter-of-intent with respect thereto) to cause, promote, assist with or enter into an Alternative Transaction.

(b)     Without limiting the foregoing, the Sellers may, directly or indirectly through its Representatives, (i) engage in discussions and negotiations regarding an Alternative Transaction with any one or more Third Persons as potential bidders (each, an "***Alternative Bidder***") in connection with the solicitation of one or more proposals relating to an Alternative Transaction and (ii) furnish to any Alternative Bidder who has signed a confidentiality agreement and has made a request therefor any public or non-public information relating to the Sellers and afford to any such Alternative Bidder access to any properties, Acquired Interests, books or records of the Sellers or the business of the Sellers; *provided* that the Sellers shall not actively solicit proposals relating to an Alternative Transaction unless the failure to do so would be contrary to or inconsistent with applicable fiduciary duties.

6.5     Regulatory Matters; Cooperation.

(a)     The Sellers, on one hand, and Buyer, on the other hand, shall cooperate, and reasonably determine upon the advice of counsel (which, in the case of Buyer, may be Davis Polk & Wardwell LLP as counsel to the Required Lenders) within fifteen (15) Business Days of the Execution Date, other than the notifications required to be filed under the HSR Act, any notifications, filings, consents, clearances, waivers, waiting periods and approvals, if any, required under any applicable Antitrust Law in connection with the transactions contemplated by this Agreement (including by any persons that will hold, directly or indirectly, any equity interest in Buyer as of or immediately after the Closing) (the "***Foreign Antitrust Approvals***").  Subject to Section 6.5(c), as soon as reasonably practicable (and, in any event, within ten (10) Business Days, or a later date as agreed by the Parties) after the Execution Date, the Sellers, on the one hand, and Buyer, on the other hand, shall each prepare and file, or cause to be prepared and filed, any notifications required to be filed under the HSR Act with the United States Federal Trade Commission, the Antitrust Division of the United States Department of Justice and any Foreign Antitrust Approvals, and request early termination of the waiting periods applicable to such notifications.  Subject to Section 6.5(c), Buyer, on the one hand, and the Sellers, on the other hand, shall promptly respond to any requests for additional information or documentary materials in connection with such filings and shall take all commercially reasonable actions necessary to cause the waiting periods applicable to such notifications to terminate or expire at the earliest practicable date after the date of filing.  The Sellers shall be responsible for payment of the applicable filing fee under the HSR Act or Foreign Antitrust Approvals, and each Party shall be responsible for any other payment of its own respective costs and expenses incurred by such Party (including

44

attorneys' fees and other legal fees and expenses) associated with the preparation of its portion of any antitrust filings.

(b)        Subject to the provisions of Section 6.5(c) and Section 6.7, including the limitations set forth therein, the Sellers, on the one hand, and Buyer, on the other hand, shall use reasonable best efforts to obtain, at the earliest practicable date, all necessary Governmental Approvals and all necessary registrations, declarations and filings (including registrations, declarations and filings with Governmental Authorities and any change in control requirements relating to any consent decrees, decisions, judgments, settlements, consent orders, stipulations, decrees or similar orders relating to the Acquired Interests, if any), in each case for the consummation of the transactions contemplated by this Agreement and the Ancillary Documents, and use its reasonable best efforts to avoid any Claim by any Governmental Authority relating to the transactions contemplated by this Agreement and the Ancillary Documents. Subject to the provisions of Section 6.5(c) and Section 6.7, including the limitations set forth therein, in addition to such actions, the Sellers, on the one hand, and Buyer, on the other hand, shall use reasonable best efforts to (i) take all acts necessary in connection with meeting with any Governmental Authority regarding the transferring of the Permits included in the Acquired Interests and (ii) execute and deliver any additional instruments reasonably necessary to consummate the transactions contemplated hereby and to fully carry out the purposes of this Agreement.

(c)        The Sellers, on the one hand, and Buyer, on the other hand, (i) to the extent permissible, shall promptly inform each other of any material communication from any Governmental Authority concerning this Agreement, the transactions contemplated hereby, and any filing, notification or request for approval by any Governmental Authority and (ii)  to the extent permissible, shall permit the other to review in advance any proposed written or material oral communication or information submitted to any such Governmental Authority in response thereto.   In addition, none of the Parties shall agree to participate in any meeting with any Governmental Authority in respect of any filings, investigation or other inquiry with respect to this Agreement or the transactions contemplated hereby, unless, to the extent permissible, such Party consults with the other Parties in advance and, to the extent permitted by any such Governmental Authority, gives the other Party the opportunity to attend and participate thereat, in each case to the maximum extent reasonably practicable.  Subject to restrictions under any Law, each of Buyer, on the one hand, and the Sellers, on the other hand, shall furnish the other with copies of all correspondence, filings and communications (and memoranda setting forth the substance thereof) between it and its Affiliates and their respective Representatives on the one hand, and the Governmental Authority or members of its staff on the other hand, with respect to this Agreement, the transactions contemplated hereby (excluding documents and communications which are subject to preexisting confidentiality agreements or to the attorney-client privilege or work product doctrine or which refer to valuation of the Acquired Interests) or any such filing, notification or request for approval.  Each Party shall also furnish the other Party with such necessary information and assistance as such other Party and its Affiliates may reasonably request in connection with their preparation of necessary filings, registration or submissions of information to the Governmental Authority in connection with this Agreement, the transactions contemplated hereby and any such filing, notification or request for approval.  Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall require Buyer or the Sellers, or any of their respective Affiliates to (and none of any Seller or any of its Affiliates shall, without the prior written consent of Buyer), in performing their respective obligations under this Section 6.5, (i)

45

enter into any settlement, undertaking, consent decree, stipulation or agreement with any Governmental Authority in connection with the transactions contemplated hereby, (ii) divest or otherwise hold separate (including by establishing a trust or otherwise), or take any other action (or otherwise agree to do any of the foregoing) with respect to the Acquired Interests or any assets or business of Buyer or any of its Affiliates or (iii) defend any Claim relating to the transactions contemplated by this Agreement or any Ancillary Document, except, in the case of each of clauses (i) through (iii), actions expressly contemplated to be taken by the Sellers in accordance with the Plan.

(d)     Notwithstanding anything to the contrary contained in this Agreement, Buyer shall (or shall through its Representatives), on behalf of the Parties, control and lead all communications and strategy relating to the Antitrust Laws (*provided* that the Sellers are not constrained from complying with applicable Law), *provided*, further, that the Parties shall consult and cooperate with one another, and consider in good faith the views of one another, regarding the form and content of any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of either Party in connection with proceedings under or relating to any Antitrust Law prior to their submission.

6.6     Bankruptcy Court Matters.

(a)     Qualified Bids.  Subject to the terms of the Disclosure Statement Order, if one or more Qualified Bid(s) (as such term is defined in the Disclosure Statement Order) is received by the Sellers on or before the Bid Deadline (as such term is defined in the Disclosure Statement Order), no later than three (3) Business Days after the Bid Deadline (as such term is defined in the Disclosure Statement Order), the Sellers shall file with the Bankruptcy Court a notice of receipt of such Qualified Bid(s) (as such term is defined in the Disclosure Statement Order) and the Sellers' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Sellers determine holding an auction will maximize value to the Sellers' estate.

(b)     Confirmation Order.  The Sellers and Buyer shall use commercially reasonable efforts to obtain entry by the Bankruptcy Court of a Confirmation Order by no later than the Confirmation Outside Date.  The Confirmation Order shall be in form and substance acceptable to the Sellers and Buyer.  The Sellers acknowledge and agree, and the Confirmation Order shall provide that, on the Closing Date and concurrently with the Closing, all then existing or thereafter arising Liabilities and Encumbrances of, against or created by the Sellers or their bankruptcy estates, shall be fully released from and with respect to the Acquired Interests, which shall be transferred to Buyer free and clear of all Encumbrances (other than Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) and Retained Liabilities and Buyer shall at Closing be required to assume the Assumed Liabilities as set forth hereunder.  The Sellers and Buyer covenant and agree that if the Confirmation Order is entered, they will pursue the transactions contemplated by the Confirmation Order and in this Agreement.  The Sellers shall use commercially reasonable efforts to cause the Confirmation Order to provide either that (a) the Sellers have complied with the requirements of any applicable Law relating to bulk sales and transfer or (b) compliance with applicable Law relating to bulk sales and transfers is not necessary or appropriate under the

46

circumstances.  Buyer agrees that it will take commercially reasonable efforts to take such actions as are reasonably requested by the Sellers to assist in obtaining entry of the Confirmation Order.

(c)     Reasonable Efforts.  The Sellers shall use commercially reasonable efforts to (i) obtain entry of the Disclosure Statement Order, (ii) promptly commence solicitation on the Plan upon entry of the Disclosure Statement Order, and (iii) (A) facilitate the solicitation, confirmation and consummation of the Plan and the transactions contemplated hereby, (B) obtain entry of the Confirmation Order and (C) consummate the Plan.

(d)     Bankruptcy Filings.

(i)     During the Interim Period, the Sellers shall deliver to Buyer copies of all pleadings, motions, notices, statements, schedules, applications, reports and other papers that relate, in whole or in part, to this Agreement and the transactions contemplated hereby at least two (2) Business Days prior to the date when the Sellers intend to file any such pleading or other document (*provided,* that if delivery of such motions, orders or materials (other than the Plan, the disclosure statement, a disclosure statement order, the Confirmation Order or adequate protection order) at least two (2) Business Days in advance is not reasonably practicable, such motion, order or material shall be delivered as soon as reasonably practicable prior to filing) for Buyer's prior review and comment, and the Sellers shall consult in good faith with Buyer regarding the form and substance of such filings to the extent they are related to the Acquired Interests, any Assumed Liabilities or the transactions contemplated hereby, including any of Buyer's rights or obligations hereunder.  The Parties shall use commercially reasonable efforts to consult and cooperate regarding (i) any such pleadings, motions, notices, statements, schedules, applications, reports or other papers, (ii) any discovery taken in connection with seeking entry of the Confirmation Order (including any depositions) and (iii) any hearings relating to the Confirmation Order, including the submission of any evidence, including witness testimony, in connection with such hearing.  The Sellers agree to diligently prosecute the entry of the Confirmation Order as provided herein.  During the Interim Period (subject to Section 6.4), the Sellers shall not take any action that is intended to (or is reasonably likely to), or fail to take any action the intent (or reasonably likely result) of which failure to act is to, result in the reversal, voiding, modification or staying of the Confirmation Order, or this Agreement.

(ii)     In the event the entry of the Disclosure Statement Order, the Confirmation Order, or any other order reasonably necessary in connection with the transactions contemplated by this Agreement is appealed, the Sellers shall use commercially reasonable efforts to defend such appeal.

(e)     Cooperation with Plan Administrator. In accordance with the terms of the Plan, the Parties agree that they shall use commercially reasonable efforts to cooperate with the Plan Administrator (as defined in the Plan) and each other, in relation to the Parties' respective activities and obligations under the Plan, including by providing reasonable, good-faith access to personnel, systems, and books and records and their respective personnel and consulting with each other to avoid duplication of effort.

47

6.7    Assumption and Assignment of Contracts.

(a)    No later than twenty eight (28) days prior to the Designation Deadline, the Sellers shall provide to Buyer a list of all 365 Contracts and the Sellers' good faith estimate of Cure Costs associated with each such 365 Contract (the "*365 Schedule*").  The Sellers may amend or supplement the 365 Schedule from time to time to add or remove any 365 Contract inadvertently included or excluded from such 365 Schedule or to amend, based on the Sellers' good faith calculation of the Cure Costs, any proposed Cure Costs set forth in such 365 Schedule and shall provide Buyer written notice thereof.  No later than fourteen (14) days prior to the Designation Deadline, Buyer shall designate in writing which 365 Contracts from the 365 Schedule Buyer desires to be assumed by the Sellers and assigned to Buyer (collectively, and as further modified by Buyer pursuant to the provisions of this Section 6.7, the "*Assigned 365 Contracts*" and Buyer's designated list of Assigned 365 Contracts, the "*Assigned 365 Contracts List*").

(b)    Promptly following the receipt of Buyer's initial designation of the Assigned 365 Contracts pursuant to Section 6.7(a) (to the extent not previously filed) and by no later than the Designation Deadline, the Sellers shall file the Assigned 365 Contracts List with the Bankruptcy Court and deliver a written notice of the proposed assignments of the Assigned 365 Contracts and the proposed Cure Costs for each Assigned 365 Contract (consistent with the Sellers' good faith estimates set forth on the 365 Schedule) to all non-debtor parties of the Assigned 365 Contracts, which notice shall notify each non-debtor party to such Assigned 365 Contract of (i) the proposed Cure Cost for such Assigned 365 Contract and (ii) an objection deadline for such non-debtor party to object to the proposed assumption and assignment and proposed Cure Cost.

(c)    Notwithstanding anything herein to the contrary, Buyer may, from time to time, in its sole discretion revise the Assigned 365 Contracts List at any time prior to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the Confirmation Hearing (or such other time as agreed in writing between the Sellers and the applicable counterparty to a 365 Contract) (the "*Designation Deadline*") by (x) subtracting therefrom any Assigned 365 Contract, and any 365 Contract so removed shall no longer be considered Assigned 365 Contracts for purposes of this Agreement or (y) adding thereto any 365 Contract, and any 365 Contract so added will be an Assigned 365 Contract for the purposes of this Agreement; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the rescheduled or continued Confirmation Hearing, and this provision shall apply in the case of any and all subsequent adjournments and continuances of the Confirmation Hearing.  The Sellers shall promptly file on the docket in the Bankruptcy Cases and serve on the affected non-Debtor counterparty(ies) a notice of any actions taken by Buyer pursuant to the preceding sentence pursuant to and in accordance with the Disclosure Statement Order.  Subject to the preceding sentences, all 365 Contracts of the Sellers that are listed on the 365 Schedule and which Buyer does not designate in writing for assumption and assignment shall not be considered Assigned 365 Contracts or Acquired Interests and shall automatically be deemed "*Excluded Contracts*;" *provided, however,* that Buyer may not exclude from the Assigned 365 Contracts any 365 Contract that is set forth on **Schedule 6.7(g)**.

(d)      Each of each Seller and Buyer, as applicable, shall use commercially reasonable efforts to assign or cause to be assigned, the Assigned 365 Contracts to Buyer, including, if necessary, taking all actions required by the Bankruptcy Court to obtain a Final Order containing a finding that the proposed assumption and assignment of the Assigned 365 Contract to Buyer satisfies all applicable requirements of Section 365 of the Bankruptcy Code.  If the Sellers are successful in effecting such assumption as of or before the Closing, such Lease, Easement or Contract shall become an Assigned 365 Contract and transferred and conveyed to Buyer.

(e)      On the Closing Date, immediately following payment by Buyer of the Cash Portion, the Sellers shall pay all undisputed Cure Costs with respect to the Assigned 365 Contracts.

(f)      Buyer shall provide adequate assurance of future performance of all of the Assigned 365 Contracts so that all Assigned 365 Contracts can be assumed by the Sellers and assigned to Buyer at the Closing in accordance with the provisions of Section 365 of the Bankruptcy Code and this Agreement, and Buyer acknowledges that such cooperation may require Buyer to provide reasonably necessary information regarding Buyer and its Subsidiaries, as well as a commitment of performance by Buyer and/or its Subsidiaries with respect to the Assigned 365 Contracts from and after the Closing to demonstrate adequate assurance of the performance of the Assigned 365 Contracts, and the Sellers' obligation to assume and assign such Assigned 365 Contracts is subject to Buyer providing such adequate assurance of future performance.

(g)      Notwithstanding anything in this Agreement to the contrary, including Section 6.7(c) above, the Contracts set forth on **Schedule 6.7(g)** shall at all times constitute Assigned 365 Contracts and shall be assigned to Buyer at the Closing.[9]

(h)      Notwithstanding anything to the contrary in this Agreement, no Seller (i) shall agree to, settle or compromise any dispute with respect to, the amount of Cure Costs in respect of any Assigned 365 Contract without the prior written approval of Buyer in its sole discretion or (ii) shall, without the prior written consent of Buyer in its sole discretion, reject or move to reject (A) any 365 Contracts prior to the Designation Deadline or (B) any Assigned 365 Contract (whether before or after the Designation Deadline).

(i)      Notwithstanding anything in this Section 6.7 to the contrary, Buyer may not, except with the prior written consent of the Sellers, designate any 365 Contract as an Assigned 365 Contract to the extent that such 365 Contract is identified on Exhibit I-F of the Plan of Merger (except to the extent constituting Applicable Shared Asset Interests).

6.8    Employee Matters.

(a)      Offers and Terms of Employment.  All Seller Employees (including those on leave of absence or disability) identified by the Sellers on the updated list provided pursuant to Section 6.1(a)(vii) shall be offered employment by Buyer or its Affiliate no later than five (5) days prior to the Closing Date, in each case, such employment to be effective as of the Closing Date;

---

[9] Note to Draft: Schedule 6.7(g) to include the McCarroll agreements and, subject to Buyer's review of Schedule 6.7(g), any agreements related to the Co-Owned Assets that are required to be conveyed in connection with the assignment of the Co-Owned Assets.

*provided*, *however*, that neither Buyer nor any of its Affiliates shall be required to make an offer of employment to any Section 6.8 Employee unless Buyer and Seller mutually agree that Buyer shall offer employment to such Section 6.8 Employee.  Each offer of employment made by Buyer or its Affiliates to a Seller Employee, as applicable, shall be effective as of the Closing Date and shall contain terms and conditions of employment substantially comparable in the aggregate to the terms and conditions of employment provided by the Sellers immediately prior to the Closing Date with respect to such Seller Employee, *provided* each such offer shall include (i) at least the same level of base salary or wage rate (based on pre-COVID-19 salary or wage rate without regard to any reduction), (ii) for substantially all such Seller Employees, at least the same annual cash incentive compensation opportunity and (iii) substantially similar employee benefits.  For purposes of this Agreement, any individual who becomes employed by Buyer in accordance with this Section 6.8 is referred to as a "***Transferred Employee***."

(b)      Liabilities.  Effective as of the Closing, (i) Buyer shall, or shall cause an Affiliate of Buyer to, assume or retain, as the case may be, any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the employment or services, or termination of employment services, of any Transferred Employee, accrued and unpaid bonuses, accrued and unused vacation, sick days and paid time off and any workers' compensation claims against any Seller or its Affiliates, irrespective of when such claims are made (and Buyer shall or shall cause an Affiliate of Buyer to pay the applicable Transferred Employees the unpaid portion of any Transferred Employee's accrued annual bonus for the calendar year in which the Closing occurs at the time such bonuses are paid to such Transferred Employees in the ordinary course consistent with past practice) and (ii) the Sellers shall, or shall cause their Affiliates to assign to Buyer, and Buyer shall, or shall cause an Affiliate of Buyer, to assume, (A) sponsorship of the Fieldwood Energy Health & Welfare Benefit Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of the Fieldwood Energy Health & Welfare Benefit Plan, and Buyer shall be, or shall cause an Affiliate to be, responsible for all claims whenever incurred under the Fieldwood Energy Health & Welfare Benefit Plan, including any claims incurred prior to the Closing but not yet reported and any claims reported prior to Closing but which have not yet been processed, (B) sponsorship of the Fieldwood Energy LLC 401(k) Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of the Fieldwood Energy LLC 401(k) Plan, and (C) each other Assumed Employee Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of each Assumed Employee Plan; *provided* that except as otherwise set forth in Section 6.8(c), in no event shall Buyer or any of its Affiliates assume any Liabilities relating to bonuses, severance or workers' compensation claims for any current or former employee of any Seller or any of its Affiliates other than a Transferred Employee and all such Liabilities shall be Retained Liabilities.

(c)      Severance.  With respect to any Seller Employee who Sellers and Buyer mutually agree shall not be offered employment by Buyer and who shall not become a Transferred Employee, Sellers shall provide severance payments (subject to executing a general employment release in favor of Sellers and Buyer) in such amount as mutually determined by Sellers and Buyer, which amount shall in no event exceed two (2) months of base salary ("***Employee Severance***").  Employee Severance shall be paid by Sellers to each such Seller Employee in the ordinary course through the Closing.  Buyer shall, and shall cause its Affiliates to, be liable for and provide to each

such Seller Employee any portion of the unpaid Employee Severance that otherwise becomes due and payable following the Closing.

(d)　　Credit for Service.  Buyer shall, and shall cause its Affiliates to, credit Transferred Employees for service earned on and prior to the Closing Date with the Sellers and their Affiliates or predecessors to the extent that such service would be credited pursuant to the applicable Employee Plan, in addition to service earned with Buyer and its Affiliates on or after the Closing Date to the extent that service is relevant for purposes of eligibility, vesting, paid-leave entitlement or the calculation of benefits under any employee benefit plan, program or arrangement of Buyer or any of its Affiliates for the benefit of the Transferred Employees on or after the Closing Date, but not for the purposes of benefit accrual under any defined benefit pension plan; *provided*, *however*, that nothing herein shall result in a duplication of benefits with respect to the Transferred Employees.

(e)　　Pre-existing Conditions; Coordination.  Buyer shall, and shall cause its Affiliates to, waive any pre-existing condition or actively at work limitations, evidence of insurability and waiting periods for the Transferred Employees and their eligible spouses and dependents under any employee benefit plan, program or arrangement of Buyer or any of its Affiliates for the benefit of the Transferred Employees on or after the Closing Date.  Buyer shall, and shall cause its Affiliates to credit for purposes of determining and satisfying annual deductibles, co-insurance, co-pays, out-of-pocket limits and other applicable limits under the comparable health plans and arrangements offered to Transferred Employees, deductibles, co-insurance, co-pays and out-of-pocket expenses paid by Transferred Employees and their respective spouses and dependents under the Sellers or any of their respective Affiliates' health plans in the calendar year in which the Closing Date occurs.

(f)　　Accrued Vacation.  Buyer or its Affiliates shall provide each Transferred Employee with credit for the same number of vacation, sick days and personal days such Transferred Employee has accrued but not used in the calendar year in which the Closing Date occurs; *provided*, that to the extent required by applicable Law, such amount shall be paid by Buyer or its Affiliates to the applicable Transferred Employee in cash.  In the event that a Transferred Employee is unable to use such carried over vacation and sick days within the calendar year in which the Closing Date occurs, Buyer or its Affiliates shall allow such Transferred Employee to carry over such vacation and sick days to be used in the subsequent calendar year solely to the extent that such Transferred Employee would have had the same right to carry over such vacation and sick days pursuant to the policies of the Seller or its Subsidiaries as of the date hereof.

(g)　　COBRA.  On the Closing Date, the Sellers and their Affiliates shall cease to provide health and welfare coverage to each Seller Employee and his or her covered dependents and beneficiaries, and Buyer or its Affiliate shall commence providing such coverage to Transferred Employees and his or her covered dependents and beneficiaries.  Buyer and its "buying group" (as defined in Treasury Regulation Section 54.4980B-9, Q&A-2(c)) shall be solely responsible for providing continuation coverage under COBRA to those individuals who are or become M&A qualified beneficiaries (as defined in Treasury Regulation Section 54.490B-9, Q&A-4(a)) with respect to the transactions contemplated by this Agreement. Buyer and its Affiliates shall provide coverage required by COBRA to Transferred Employees and their eligible

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

dependents or beneficiaries under group health plans maintained by Buyer or an Affiliate of Buyer with respect to qualifying events occurring on and after the Closing Date.

(h)     Tax Reporting.  Buyer shall adopt the "*alternate procedure*" for preparing and filing IRS Forms W-2 (Wage and Tax Statements), as described in Revenue Procedure 2004-53.  Under this procedure, Buyer as the successor employer shall provide Forms W-2 to Transferred Employees reflecting all wages paid and Taxes withheld with respect to such Transferred Employees for the calendar year in which the Closing Date occurs.  The Sellers as the predecessor employer shall have no employment tax reporting responsibilities for the Transferred Employees following the Closing Date.  Buyer shall also adopt the "*alternate procedure*" of Revenue Procedure 2004-53 for purposes of IRS Forms W-4 (Employee's Withholding Allowance Certificate) and W-5 (Earned Income Credit Advance Payment Certificate).

(i)     No Third Party Beneficiaries.    Without limiting the generality of Section 12.5, no provision of this Section 6.8 shall (i) be treated as an amendment of, or undertaking to amend, any benefit plan, (ii) obligate Buyer or the Sellers to retain the employment of any particular employee or (iii) confer any rights or benefits on any Third Person beneficiary or create any Third Person beneficiary or other rights in any current or former employee, independent contractor or other service provider (including any beneficiary or dependent thereof) of any Seller in respect of continued employment (or resumed employment) with either Buyer or any of, its Affiliates and no provision of this Section 6.8 shall create any rights in any such Persons in respect of any benefits that may be provided, directly or indirectly, under any Employee Plan or any plan or arrangement that may be established by Buyer or any of its Affiliates, including as to the level or duration of compensation or benefits.  No provision of this Agreement shall constitute a limitation on rights to amend, modify or terminate after the Closing Date any such plans or arrangements of the Sellers, Buyer or any of their respective Affiliates.

6.9     [Reserved].

6.10     Certain Agreements.    The Sellers will obtain assignment of, or replacement agreements with respect to, the Specified Section 6.10 Contract(s) prior to or at the Closing (with any replacement agreement being on substantially the same terms as the Specified Section 6.10 Contract(s) being replaced); *provided* that Buyer understands and agrees that this Section 6.10 will not require Sellers to enter into any settlement, undertaking or agreement, undertake any obligation, or pay any consideration, in each case, with or to any third party, other than, to the extent required to be paid prior to the Closing, if so requested by Buyer, Sellers paying in cash any such consideration requested by such third party.

6.11     Transfer Orders; Letters in Lieu.  Prior to the Closing, the Sellers shall deliver to Buyer completed transfer orders or letters in lieu thereof, directing all purchasers of production to make payment to Buyer of proceeds attributable to Hydrocarbons constituting Acquired Interests effective as of the Closing.

6.12     Taxes.

(a)     To the extent not exempt under the Confirmation Order or Section 1146 of the Bankruptcy Code, Buyer shall assume responsibility for, and shall bear and pay, all Transfer

Taxes (if any) incurred or imposed with respect to the conveyance of the Acquired Interests to Buyer; *provided* that if any such Transfer Taxes are due prior to the Closing the Sellers shall assume responsibility for, and shall bear and pay such Transfer Taxes. The Party required by applicable Law to file Tax Returns with respect to Transfer Taxes shall prepare and file such Tax Returns or other documents and the non-preparing Party shall cooperate therewith.

(b) The Sellers shall timely file or cause to be timely filed when due all Tax Returns that are required to be filed by or with respect to Fieldwood U.A. on or prior to the Closing Date and all Tax Returns that are required to be filed by the Sellers under applicable Law with respect to the Acquired Interests (including any Tax Returns reporting any Property-Related Taxes and Production Taxes) and, in each case, all such Tax Returns shall be prepared and filed in a manner consistent with past practice. In each case, the Sellers shall remit or cause to be remitted any Taxes shown as due on such Tax Returns. Buyer shall timely file or cause to be timely filed when due (taking into account all extensions properly obtained) all other Tax Returns that are required to be filed by or with respect to Fieldwood U.A. and the Acquired Interests after the Closing Date and shall pay any Taxes shown as due on such Tax Returns. The Sellers shall reimburse Buyer for (A) Retained Taxes which are remitted in respect of any Tax Return to be filed by Buyer pursuant to this Section 6.12 or (B) Retained Taxes in respect of any Tax Return to be filed by the Sellers under this Section 6.12(b) which have not been paid by the Sellers and for which a taxing authority seeks payment from Buyer, in each case, up to the amount reserved for such Retained Taxes in determining the Effective Date Cash Obligations Amount, no later than ten (10) days after Buyer's written request therefor.

(c) For purposes of this Agreement, in the case of a Straddle Period, (x) all Property-Related Taxes and any exemptions, allowances and deductions with respect to such Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period based on the number of days of such Straddle Period included in the Pre-Closing Tax Period and the number of days of such Straddle Period included in the Post-Closing Tax Period, (y) all Production Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period based upon the period during which the applicable production occurred, and (z) all other Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period as if such taxable period ended as of the end of the day on the final day of the Pre-Closing Tax Period.

(d) Property-Related Taxes and Production Taxes shall be timely paid, and all applicable filings, reports and returns shall be filed as provided by applicable Law.

(e) All Tax Sharing Agreements between the Sellers and any Affiliates of the Sellers, on the one hand, and Fieldwood U.A., Fieldwood Mexico or any Subsidiary thereof, on the other hand, will terminate as to Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof prior to the Closing Date and Fieldwood U.A., Fieldwood Mexico and such Subsidiary will not have any liability thereunder on or after the Closing Date.

(f) Each Seller, on the one hand, and Buyer, on the other hand, will provide each other with such cooperation and information as either of them reasonably may request of the other in filing any Tax Return, claiming any refund of Taxes, determining a Liability for Taxes or a right to a refund of Taxes, or conducting any audit or other proceeding in respect of Taxes. Such cooperation and information shall include providing copies of relevant Tax Returns or portions

thereof, together with accompanying schedules, related work papers and documents relating to rulings and other determinations by Governmental Authorities. Any information obtained under this Section 6.12 shall be kept confidential except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refund or in conducting any audit or other proceeding.

6.13    Commercially Reasonable Efforts.    Subject to the terms and conditions of this Agreement, and subject to the Bankruptcy Code and any orders of the Bankruptcy Court, and without limiting any other provision of this Agreement (including Section 6.5(c)), Buyer and the Sellers each agree to use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable to cause the conditions precedent to Closing set forth in Article VII to be satisfied and to consummate the transactions; *provided* that the Parties understand and agree that the commercially reasonable efforts of any Party shall not be deemed to include, except as expressly set forth in this Agreement, entering into any settlement, undertaking, consent decree, stipulation or agreement with any Governmental Authority in connection with the transactions contemplated hereby; *provided*, *further* that this Section 6.13 shall not (a) limit or affect the obligation of any Party to perform any of its other obligations and covenants expressly set forth in this Agreement or (b) require any Party to incur any obligations or pay any fees or amounts to third parties not otherwise required under this Agreement or the Plan.

6.14    Insurance Policies.    Effective at or prior to Closing, the Sellers shall cause Buyer to be named as an 'additional insured' with respect to each insurance policy held by the Sellers which provides coverage with respect to any of the Acquired Interests (excluding, for the avoidance of doubt, any director and officer insurance policies). The Sellers shall maintain such insurance policies in full force and effect until the expiration of their terms, and shall cooperate in good faith with Buyer in connection with any claim made by Buyer under any such policy. The Sellers shall not have any obligation to renew any such insurance policies following the expiration of their terms, and from and after such expiration, Buyer will be solely responsible for maintaining such insurance as Buyer deems reasonable with respect to the Acquired Interests.

6.15    Novation of Hedges.    Buyer shall use commercially reasonable efforts to cause the Hedges to be novated to Buyer at Closing, and the Sellers shall reasonably cooperate with Buyer in connection with such novation; *provided* that (a) to the extent that the total volume of production hedged as of the Closing with respect to the Hedges exceeds 45,000 Boepd, Buyer may elect to (but is not required pursuant to this Section 6.15 to) use commercially reasonable efforts to novate such excess (or any portion thereof) to Buyer at Closing; (b) Buyer shall be solely responsible for any credit support or other requirements in connection with such novation; and (c) the Sellers shall not be required to pay any consideration or undertake any obligation in connection with such novation.

6.16    Qualification.    Prior to the Closing, Sellers (and their respective officers and employees) will provide commercially reasonable assistance to Buyer with respect to Buyer obtaining such qualifications as are necessary to own and, where applicable, to assume operatorship of, the Acquired Interests in all jurisdictions where the Acquired Interests are located.

6.17    Settlements with Governmental Authorities.    From the date hereof until the Closing, none of any Seller nor any of its Affiliates shall make or enter into any material non-

ordinary course stipulation, settlement or other agreement with any Governmental Authority (each, a "***Governmental Settlement Agreement***") that is not in form and substance acceptable to Buyer. The Sellers shall pay all amounts due and payable under any Governmental Settlement Agreement executed by any Seller or any of its Affiliates prior to the Closing.

6.18    Operator Forms.  By no later than ten (10) days after the Execution Date, the Sellers shall have sent all applicable Third Persons all designation of operator forms (Form BOEM – 1123) designating Buyer as operator (along with all corresponding OSFR forms) with respect to each Lease or portion thereof as to which any Seller is the designated operator as of the date hereof, and Sellers shall use reasonable best efforts to obtain such executed forms from such Third Persons prior to the Closing.

6.19    [Reserved].

6.20    Bonds and Insurance.  To the extent required by applicable state and federal Governmental Authorities (and subject to compliance by the Sellers with their respective covenants under this Agreement) in connection with the transactions contemplated by this Agreement, as of the Closing or promptly thereafter (and in any case within ten (10) Business Days of the Closing) Buyer and/or Buyer 2, as applicable, will have the lease bonds, area-wide bonds and surety bonds or insurance policies set forth on **Schedule 6.20**, in each case to the extent required by and in accordance with the requirements of such Governmental Authorities.

6.21    [New Equity Interests.  Buyer shall cause (a) the Credit Bid and Release New Equity Interests to be received by the Persons entitled to receipt of such interests pursuant to the Plan on the Effective Date in accordance with the Plan, and (b) the Equity Rights Offering New Equity Interests (if and when authorized pursuant to an order of the Bankruptcy Court) to be received on the Effective Date by the Persons entitled to receipt of such interests in accordance with the Plan, the Subscription Rights, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.][10]

6.22    Employment Agreements.  Buyer shall, in good faith, negotiate the terms of an employment agreement (each, an "***Employment Agreement***") with each of the Seller Employees identified on Schedule 6.22 from and after the date hereof.  If terms of an Employment Agreement are mutually agreed between Buyer and a Seller Employee prior to Closing, then at (or immediately following) the Closing Buyer shall enter into an Employment Agreement with each such Seller Employee.

## ARTICLE VII
## CONDITIONS PRECEDENT TO CLOSING

7.1    Conditions Precedent of the Parties.  The obligations of the Sellers, Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

---

[10] Note to Draft: Subject to review of Equity Rights Offerings procedures/ERO Backstop Agreements/obligations of Buyer to issue equity upon exercise of Subscription Rights.

(a)      no applicable Law shall prohibit the transactions contemplated hereby or the consummation of the Closing and no suit, action or proceeding shall be pending or threatened before any court or arbitration tribunal seeking to enjoin, restrain, prohibit or declare illegal the transactions contemplated by this Agreement;

(b)      no injunction, order, decree or judgment that restrains, enjoins or prohibits the transactions contemplated in this Agreement shall be in effect;

(c)      any applicable waiting period under the HSR Act relating to the transactions contemplated hereby shall have expired or been terminated;

(d)      the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order and each such order shall be a Final Order;

(e)      each of the conditions precedent to the Effective Date shall have been satisfied (or shall become effective concurrent with the Closing Date hereunder) or waived in accordance therewith; and

(f)      (i) the Credit Bid and Release New Equity Interests shall have been, or will be on the Effective Date, received by the holders of Allowed FLTL Secured Claims (as defined in the Plan) in accordance with the Plan and (ii) the Equity Rights Offering New Equity Interests (if and when authorized pursuant to an order of the Bankruptcy Court) shall have been, or will be on the Effective Date, received by the Persons entitled to receipt of such interests in accordance with the Plan, the Subscription Rights, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.

7.2      <u>Sellers' Conditions Precedent</u>.  The obligation of the Sellers to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

(a)      the representations and warranties of Buyer and Buyer 2 set forth in this Agreement shall be true and correct, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date), except for those failures to be true and correct that, individually or in the aggregate, would not adversely affect in any material respect the ability of Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement;

(b)      Each of Buyer and Buyer 2 shall have performed and fulfilled in all material respects each covenant, agreement and condition required by this Agreement to be performed or fulfilled by Buyer or Buyer 2, as applicable, at or before the Closing;

(c)      the Effective Date Cash Obligations Amount shall have been agreed in amounts acceptable to Sellers acting in good faith; and

(d)      Each of Buyer and Buyer 2 shall have executed and delivered all documents required to be executed and delivered by Buyer or Buyer 2, as applicable, as set forth in <u>Section 9.2</u>.

The foregoing conditions of this <u>Section 7.2</u> are for the sole benefit of the Sellers and may be waived by the Sellers, in whole or in part, at any time and from time to time in the sole discretion of the Sellers.  The failure by the Sellers at any time to exercise any of their rights hereunder shall not be deemed a waiver of any such right and each such right shall be deemed an ongoing right which may be asserted at any time and from time to time.

7.3     <u>Buyers' Conditions Precedent</u>.   The obligation of Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

(a)     (i) each of the Fundamental Representations of each Seller shall be true and correct in all respects, except for *de minimis* inaccuracies, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date), (ii) the representations and warranties of each Seller set forth in each of <u>Section 4.22(a)</u>, <u>Section 4.32</u> and <u>Section 4.33</u> shall (disregarding any qualifications or exceptions set forth therein relating to Material Adverse Effect or "materiality" or any similar qualification or standard) be true and correct in all material respects, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct in all material respects as of such earlier date), and (iii) all other representations and warranties of each Seller set forth in <u>Article IV</u> of this Agreement shall (disregarding any qualifications or exceptions set forth therein relating to Material Adverse Effect or "materiality" or any similar qualification or standard) be true and correct, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date) except in the case of this <u>clause (iii)</u>, for those failures to be true and correct that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(b)     each Seller shall have performed and fulfilled in all material respects each covenant, agreement and condition required by this Agreement to be performed or fulfilled by such Seller at or before the Closing;

(c)     each Seller shall have executed and delivered all documents required to be executed and delivered by such Seller as set forth in <u>Section 9.2</u>;

(d)     no Default or Event of Default (each as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall have occurred and be continuing;

(e)     the Restructuring Support Agreement shall not have been terminated with respect to any party thereto;

(f)     the conditions precedent under each of the Backstop Commitment Letters shall have been satisfied or waived;

(g)     the Plan confirmed by the Confirmation Order shall be in substantially the same form and substance as the plan filed by the Debtors on [•], at Docket No. [•] in the Bankruptcy

<div align="center">57</div>

Court, as may be amended, modified or supplemented from time to time in accordance with the Restructuring Support Agreement or as otherwise consented to by or on behalf of Buyer;

(h)     at least five (5) Business Days prior to the Closing Date, the Bankruptcy Court shall have approved and authorized the assumption and assignment of each material Assigned 365 Contract pursuant to Section 365 of the Bankruptcy Code through entry of an order that shall have become a Final Order and all such material Assigned 365 Contracts shall have been duly assigned to Buyer at or prior to the Closing;

(i)     all Assigned 365 Contracts that require novation and are set forth on **Schedule 7.3(i)** will have been novated to Buyer;

(j)     the estimated amount of Allowed Specified Administrative Expense Claims at any time are projected by the Sellers not to exceed the Toggle Amount (as defined in the Plan), or, upon the occurrence of the Toggle Date, such other amount as determined by the Majority Backstop Parties (as defined in the Second Lien Backstop Commitment Letter) in their sole and absolute discretion;

(k)     the aggregate Allocated Values of all Acquired Interests treated as Delayed Assets pursuant to Section 2.3(b), Section 2.4 and Section 2.5, together with the aggregate Allocated Values of all Acquired Interests with respect to which a bona fide Preferential Right is validly exercised prior to the Closing, shall not be greater than $100,000,000;

(l)     all Governmental Approvals set forth on **Schedule 7.3(l)** shall have been obtained and delivered to Buyer and such Governmental Approvals shall be in full force and effect;

(m)     since the Execution Date, no Material Adverse Effect (or any result, event, occurrence, change, circumstance, consequence or development that, individually or in the aggregate, would reasonably be expected to result in a Material Adverse Effect) shall have occurred;

(n)     any agreements between Buyer and the Plan Administrator shall be reasonably acceptable to Buyer;

(o)     Buyer shall have obtained all qualifications required to assume operatorship of the Leases operated by a Seller as of immediately prior to the Closing in all jurisdictions where such Leases are located, all of which qualifications shall be in full force and effect;

(p)     the Sellers shall have delivered to Buyer a fully executed copy of the Fourth Amendment to Office Sublease;

(q)     the Effective Date Cash Obligations Amount shall have been agreed in amounts acceptable to Buyer acting in good faith; and

(r)     the Sellers shall have delivered to Buyer a duly executed letter agreement, or the Bankruptcy Court shall have entered an order which shall have become a Final Order, in each case in a form reasonably acceptable to Buyer, providing that Buyer is not a "successor" or "assign" of Sellers under the NPA.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

The foregoing conditions of this Section 7.3 are for the sole benefit of Buyer and Buyer 2 and may be waived by Buyer or Buyer 2, as applicable, in whole or in part, at any time and from time to time in the sole discretion of Buyer and Buyer 2.  The failure by Buyer or Buyer 2 at any time to exercise any of its rights hereunder shall not be deemed a waiver of any such right and each such right shall be deemed an ongoing right which may be asserted at any time and from time to time.

## ARTICLE VIII
## RIGHT OF TERMINATION AND ABANDONMENT

8.1    Termination.  This Agreement may be terminated by written notice at any time before the Closing:

(a)    by mutual written consent of the Sellers and Buyer;

(b)    by the Sellers, on one hand, or by Buyer, on the other hand:

(i)    if the Closing shall not have been consummated on or before July 31, 2021 (as such date may be extended by mutual written agreement of the Parties, the "***End Date***"); *provided* that the right to terminate this Agreement pursuant to this Section 8.1(b)(i) shall not be available to any Party (A) who is then in material breach of any of its material agreements, covenants, representations or warranties contained herein or (B) whose breach of any provision of this Agreement is the proximate cause of the failure of the Closing to be consummated before the End Date;

(ii)    if there shall be any applicable Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited or if consummation of such transactions would violate any Final Order of any Governmental Authority having competent jurisdiction;

(iii)    for any reason, Buyer is unable, pursuant to Section 363(k) or Section 1123(a) of the Bankruptcy Code, to credit bid in payment of all or any portion of the Consideration as set forth in Section 2.1 (other than the Assumed Liabilities);

(iv)    the Bankruptcy Court shall have entered an order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the cases commenced by the Sellers under Chapter 11 of the Bankruptcy Code and comprising part of the Bankruptcy Cases; or

(v)    any of the Sellers shall have entered into any agreement with respect to any Alternative Transaction (consistent with the fiduciary duties of the officers and directors of the Sellers) or if the Bankruptcy Court shall have approved any such Alternative Transaction;

(c)    by Buyer if:

(i)    the Sellers shall have breached any of their representations and warranties, or shall have failed to perform or comply with any of their covenants and

59

agreements contained in this Agreement and such breach or failure to perform or comply (A) would result in the Sellers being unable to satisfy a condition set forth in Section 7.3 and (B) is not cured within ten (10) Business Days after Buyer notifies the Sellers of such breach or failure to perform or comply in writing; *provided*, that Buyer shall not have a right of termination pursuant to this Section 8.1(c)(i) if Buyer is then in material breach of any of its material agreements, covenants, representations or warranties contained herein;

(ii)    any of the Sellers, without the prior consent of Buyer, enter into a definitive agreement with respect to the sale of any material Acquired Interests (excluding sales of Hydrocarbons in the ordinary course of business) or any interest in any of the Leases;

(iii)    the Confirmation Order shall not have been entered by the Confirmation Outside Date;

(iv)    the Restructuring Support Agreement shall have been terminated with respect to any party thereto; *provided*, that the right to terminate this Agreement pursuant to this Section 8.1(c)(iv) shall not be available to Buyer if any Consenting Creditor's breach of any provision of the Restructuring Support Agreement is the proximate cause of the termination of the Restructuring Support Agreement;

(v)    any Event of Default (as defined in the DIP Facility Credit Agreement) under the DIP Facility Credit Agreement shall have occurred and be continuing;

(vi)    the Equity Rights Offerings are not consummated;

(vii)    the Disclosure Statement Order or the Confirmation Order shall have been stayed, vacated, reversed or materially modified or amended by the Bankruptcy Court or another court of competent jurisdiction at any time without the prior written consent of Buyer; or

(viii)    any Seller seeks to have the Bankruptcy Court enter an order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the cases commenced by the Sellers under Chapter 11 of the Bankruptcy Code and comprising part of the Bankruptcy Cases, or if a trustee in the Bankruptcy Cases or a responsible officer or an examiner with enlarged powers is appointed (other than a fee examiner) relating to the operation of the Sellers' businesses pursuant to Section 1104 of the Bankruptcy Code, or such an order of dismissal, conversion or appointment is entered; and

(d)    by the Sellers if:

(i)    Buyer or Buyer 2 shall have breached any of its representations and warranties, or shall have failed to perform or comply with any of its covenants and agreements contained in this Agreement and such breach or failure to perform or comply (A) would result in Buyer or Buyer 2, as applicable, being unable to satisfy a condition set forth in Section 7.2 and (B) is not be cured within ten (10) Business Days after the Sellers notify Buyer of such breach or failure to perform or comply in writing; *provided*, that the

60

Sellers shall not have a right of termination pursuant to this <u>Section 8.1(d)(i)</u> if any Seller is then in material breach of any of its material agreements, covenants, representations or warranties contained herein;

(ii)     Any of the Backstop Commitment Letters is terminated and Buyer has not, within thirty (30) days following the termination of such Backstop Commitment Letter, entered into a definitive written agreement with respect to committed financing or other arrangement in an amount at least equal to that provided by such Backstop Commitment Letter (as of the date hereof) and otherwise in form and substance reasonably acceptable to Sellers; or

(iii)     the Equity Rights Offerings are not consummated and Buyer has not, within thirty (30) days following the failure of the Equity Rights Offerings to be consummated, entered into a definitive written agreement with respect to committed financing or other arrangement in an amount at least equal to the amount that would have been provided by the Equity Rights Offerings and otherwise in form and substance reasonably acceptable to Sellers.

Each termination trigger set forth in this <u>Section 8.1</u>, pursuant to which this Agreement may be terminated shall be considered separate and distinct from each other such termination trigger.  If more than one of the termination triggers set forth in this <u>Section 8.1</u> are applicable, the applicable Party shall have the right to choose the termination trigger pursuant to which this Agreement is to be terminated.  Any Party desiring to terminate this Agreement pursuant to this <u>Section 8.1</u> shall give written notice of such termination to the other Party.

8.2     <u>Remedies</u>.  In the event of termination of this Agreement by Buyer or the Sellers pursuant to this <u>Article VIII</u>, this Agreement shall become null and void and have no effect and all rights and obligations of the Parties under this Agreement shall terminate without any Liability of any Party to any other Party except the provisions of this <u>Section 8.2</u>, <u>Section 12.1</u>, <u>Section 12.8</u> and **<u>Annex I</u>** (and, to the extent applicable to the interpretation or enforcement of such provisions, <u>Article XII</u>) shall expressly survive the termination of this Agreement.

8.3     <u>Specific Performance</u>.  The Parties agree that irreparable damage for which monetary damages, even if available, would not be an adequate remedy would occur in the event any provisions of this Agreement were not performed in accordance with the terms hereof (including failing to take such actions as are required hereunder in order to consummate the transactions contemplated hereby) or were otherwise breached and that the Parties shall be entitled to injunctive relief, specific performance and other equitable relief to prevent breaches (or threatened breaches) of this Agreement and to enforce specifically the performance of the provisions hereof.  Any Party seeking an injunction to prevent breaches of this Agreement and to enforce specifically the provisions of this Agreement shall not be required to provide any bond or other security in connection with any such order or injunction.  The rights set forth in this <u>Section 8.3</u> shall, subject to <u>Section 8.2</u>, be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

# ARTICLE IX
# CLOSING

9.1    <u>Date of Closing</u>.  Subject to satisfaction (or waiver by the required Party) of the conditions to Closing set forth in <u>Article VII</u> (other than those conditions that by their nature cannot be satisfied until the time of Closing, but subject to the satisfaction (or waiver by the requisite Party) of those conditions), the Closing shall occur on the Effective Date (the "***Closing Date***"). Notwithstanding the foregoing, the parties hereto may agree in writing to such other date or time for Closing to take place and such other date or time shall be the "***Closing Date***" as such term is defined herein.  The Closing shall take place through electronic means of communication on the Closing Date.

9.2    <u>Closing Obligations</u>.  At Closing, the Parties (as applicable) shall take, or cause to be taken, the following actions, each being a condition precedent to the others and each being deemed to have occurred simultaneously with the others:

(a)    The Sellers and Buyer shall deliver to one another duly executed counterpart signature pages to each Transfer Document to which they are a party, in sufficient numbers of duly executed and acknowledged original counterparts to facilitate, to the extent appropriate, recording in all relevant jurisdictions;

(b)    The Sellers shall deliver to Buyer the JV Assignment Agreements duly executed by the applicable Sellers;

(c)    Buyer and Buyer 2 shall deliver a duly executed counterpart to the Release Document;

(d)    The Sellers shall deliver to Buyer a certificate, dated and effective as of the Closing Date, executed by an authorized officer of each Seller, certifying to Buyer that, on the Closing Date, the conditions set forth in <u>Section 7.3(a)</u> and <u>Section 7.3(b)</u> have been satisfied;

(e)    Buyer shall deliver to the Sellers a certificate, dated and effective as of the Closing Date, executed by an authorized officer of each of Buyer and Buyer 2, certifying to the Sellers that, on the Closing Date, the conditions set forth in <u>Section 7.2(a)</u> and <u>Section 7.2(b)</u> have been satisfied;

(f)    Each Seller shall deliver to Buyer a statement that satisfies the requirements of Treas. Reg. §1.1445-2(b)(2), certifying that such Seller is not a foreign person within the meaning of Section 1445(f)(3) or Section 1446(f)(2) of the Code;

(g)    Fieldwood and Buyer shall deliver to one another duly executed signature pages to the Funding Agreement;

(h)    Buyer shall deliver by wire transfer of immediately available funds an amount in cash equal to the Cash Portion, to one or more accounts designated by the Sellers (which shall be designated by the Sellers at least two (2) days prior to Closing);

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(i)     Sellers shall pay the Cure Costs out of the Closing Cash Amount and/or the Cash Portion in accordance with an order of the Bankruptcy Court; and

(j)     Buyer shall deliver to Fieldwood the GUC Warrants and the SLTL Warrants for distribution by Fieldwood pursuant to the Plan.

# ARTICLE X
## POST-CLOSING OBLIGATIONS AND COVENANTS

10.1    <u>Field Data and Records</u>.  Within ten (10) Business Days after the Closing, pursuant to Buyer's reasonable instructions, the Sellers shall deliver to Buyer any Field Data or Records that are not maintained in the Office Assets.  Buyer shall be entitled to all original Field Data and Records.  Within ten (10) Business Days after the Closing, the Sellers may make and retain, at the Sellers' expense, copies of any Field Data and Records (except to the extent prohibited by Contract where Buyer obtains the originals thereof).

10.2    <u>Suspense Funds; Prepaid JOA Funds</u>.

(a)     To the extent that as of Closing, any Seller holds Suspense Funds or Undisbursed Revenue relating to the Acquired Interests (excluding Prepaid JOA Funds) the Sellers shall deliver to Buyer at Closing such Suspense Funds and Undisbursed Revenue and an accounting of such Suspense Funds and Undisbursed Revenue and Buyer shall from and after such time be responsible for the application of such Suspense Funds and Undisbursed Revenue under the applicable operating or other agreement governing the application of such Suspense Funds and Undisbursed Revenue.  The Sellers shall remain liable, and shall be solely responsible, for (i) the disbursement of all funds owed to Persons (including any Suspense Funds) that are not paid or disbursed to Buyer at Closing and (ii) all Liabilities with respect to any misapplication of any Suspense Funds (or any escheat or other Laws related thereto) as to any period of time at or before the Closing Date; such Liabilities and responsibilities shall be considered Retained Liabilities.

(b)     To the extent that as of Closing, any Seller holds funds received by the Sellers (in their capacity as operator of any Acquired Interests) on account of working interest owners in the Acquired Interests as prepayments for items under operating or other agreements ("**_Prepaid JOA Funds_**"), the Sellers shall deliver to Buyer at Closing such Prepaid JOA Funds and an accounting of each of such prepayments and Buyer shall from and after Closing be responsible for the application of such Prepaid JOA Funds under the applicable operating or other agreement pursuant to which such Prepaid JOA Funds were collected.  The Sellers shall remain liable, and shall be solely responsible, for (i) the disbursement of all funds owed to Persons (including any Prepaid JOA Funds) that are not paid or disbursed to Buyer at Closing and (ii) all Liabilities with respect to any misapplication of Prepaid JOA Funds (or any escheat or other Laws related thereto) as to any period of time at or before the Closing Date; such Liabilities and responsibilities shall be considered Retained Liabilities.

10.3    <u>Post-Closing Asset Reconciliation</u>.

(a)     After the Closing Date, Buyer and the Sellers shall execute and deliver, or shall cause to be executed and delivered, from time to time such further instruments of conveyance and transfer, and shall take such other actions as Buyer or the Sellers may reasonably request, to

convey and deliver the Acquired Interests to Buyer, to perfect Buyer's title thereto and to accomplish the orderly transfer of the Acquired Interests to Buyer.

(b)     In the event that at any time, or from time to time following the Closing Date, any (i) Acquired Interest is found to have been retained by the Sellers or any of their Affiliates (each a "**Non-Transferred Asset**"), then the Sellers shall transfer, or shall cause such Affiliate to transfer, with any necessary prior consent from any Third Person or Governmental Authority, such Non-Transferred Asset to Buyer as soon as practicable, or an Affiliate thereof as designated by Buyer, and to forward or remit to Buyer, or an Affiliate thereof as designated by Buyer, any payments actually received by the Sellers on account of any such Non-Transferred Asset from the Closing until the time such Non-Transferred Asset is transferred to Buyer; *provided*, that Buyer shall pay to the Sellers the amount of any expenses or payables actually paid by the Sellers on account of any such Non-Transferred Asset from the Closing until the time such Non-Transferred Asset is transferred to Buyer (which may be netted by the Sellers against amounts received on account of such Non-Transferred Asset).  Prior to any such transfer, the Sellers shall hold such Non-Transferred Asset in trust for Buyer.

(c)     In the event of a transfer pursuant to <u>clause (b)</u> of this <u>Section 10.3</u>, Buyer or an Affiliate thereof and the Sellers or an Affiliate thereof shall execute and deliver, or cause to be executed and delivered, to the other Party as soon as practicable any conveyances, notices, assumptions, releases and acquittances and such other instruments, and shall take such further actions, as may be necessary or appropriate to fully and effectively transfer, assign and convey unto Buyer or an Affiliate thereof, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Buyer or an Affiliate thereof, and to otherwise make effective the transactions contemplated hereby, and to confirm Buyer's (or its Affiliate's) title to or interest in and to such Non-Transferred Asset, and to put Buyer or its Affiliate in actual possession and operating control thereof.

(d)     For the avoidance of doubt, this <u>Section 10.3</u> does not apply to any Delayed Assets retained by a Seller at the Closing.

10.4     <u>Assignments; Operatorship</u>.

(a)     Other than with respect to Governmental Approvals (which are addressed by <u>Section 2.4</u>), the Sellers will prepare and execute, and Buyer will execute, at or before the Closing, all documentation necessary to convey to Buyer the Acquired Interests granted by a Governmental Authority (except any such documentation that is customarily completed post-Closing) in the form as prescribed by the applicable Governmental Authority and otherwise reasonably acceptable to Buyer and the Sellers.

(b)     At the Closing, each Seller shall, as applicable, deliver to Buyer a resignation as operator of (and, as applicable, designated applicant under OSFR for) all Field Assets as to which such Seller served as operator (or, as applicable, designated applicant under OSFR) immediately before the Closing Date.  With respect to those Field Assets as to which a Seller controls the selection of the successor operator (or, as applicable, the designated applicant under OSFR), such Seller shall at the Closing deliver to Buyer (and any pertinent Third Person) a written notification designating Buyer as the successor operator of (or, as applicable, the successor

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

designated applicable under OSFR for) such Field Assets effective as of the Closing Date. With respect to any Field Assets as to which the Sellers do not control the selection of the successor operator (or, as applicable, the designated applicant under OSFR), the Sellers will cast their votes at or before Closing, and will use commercially reasonable efforts to obtain before, or promptly following, Closing the votes of the other owners of Working Interests in such Field Assets, in each case in favor of the designation of Buyer as successor operator of (and, as applicable, the designated applicant under OSFR for) such Field Assets effective as of the Closing Date. Within five (5) days after the later of the Closing Date or the date on which Buyer is named successor operator under the terms of the applicable Contract, the Sellers and Buyer shall make all necessary filings, including any BOEM designation of operator forms and designated applicant OSFR form designations, and take all other actions necessary to cause the resignation of the applicable Sellers as operator of (and, as applicable, the designated applicant under OSFR for), and the designation of Buyer as the successor operator of (and, as applicable, the designated applicant under OSFR for), such Field Assets to be recognized and, if required, approved by all relevant Governmental Authorities. In each case, the Sellers shall use commercially reasonable efforts to assist Buyer in assuming the timely operation and management of the Field Assets. Each of the Sellers' covenants in this <u>Section 10.4(b)</u> is subject to the accuracy at Closing of Buyer's representations in <u>Section 5.9</u>. Each of Buyer's covenants in this <u>Section 10.4(b)</u> is subject to Buyer's receipt from the Sellers and Third Persons of all such required designations and forms. For the avoidance of doubt, "Field Assets" does not include any Lease, Subject Unit, Easement or Well with respect to which no right, title or interest is included in the Acquired Interests.

(c)     With respect to each Field Asset operated by the Sellers as of the Closing, the Sellers, with the continued assistance of Buyer, shall use commercially reasonable efforts to cause each joint owner, record title interest owner and applicable operating rights interest owner in such Field Asset to execute and deliver such instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable Laws, Leases, Easements and Contracts, Buyer as operator of (and, as applicable, the designated applicant under OSFR for) such Field Asset as promptly as practicable following the Closing.

(d)     Each Party agrees that the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and OSFR form designation and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable Law, Leases, Easements and Contracts Buyer as operator (and, as applicable, the designated applicant under OSFR for) of the Field Assets will be made prior to the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and any instruments, forms and filings required by BSEE) that may be required in connection with the implementation of the Divisive Merger.

10.5   <u>Confidentiality</u>. Following the Closing, the Sellers agree not to, and to cause their respective Affiliates and Representatives not to, use or disclose any confidential or non-public information concerning the Acquired Interests or the business affairs of Buyer and its Affiliates, including as it relates to the Acquired Interests, or the Assumed Liabilities ("***Confidential Information***") except disclosure of Confidential Information that (a) is lawfully obtained after

Closing from a source that, to the Knowledge of the Sellers, was not under an obligation of confidentiality to Buyer with respect to such information, (b) is disclosed or becomes available to the public without any breach by the Sellers of the terms of this Section 10.5, (c) is or may be necessary to wind down any of the Sellers' bankruptcy estates, or in connection with the enforcement of the rights of, or the defense of any Claim against or involving, any Seller provided that, in each case, the Confidential Information is afforded confidential treatment, (d) to the extent it relates to any Excluded Assets or (e) is or may be necessary in connection with the Bankruptcy Cases provided that the Confidential Information is afforded confidential treatment. Notwithstanding the foregoing, a Seller may disclose Confidential Information if such Seller believes (after consultation with counsel) it is legally required to make such disclosure in order to comply with Laws or legal, judicial or administrative process (including in connection with the Bankruptcy Cases).  If a Seller or any of its Representatives becomes required (including by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) or it becomes necessary in connection with the Bankruptcy Cases to disclose any of the Confidential Information, such Seller or Representative shall use reasonable efforts to provide Buyer with prompt notice, to the extent allowed by Law, of such requirement, and, to the extent reasonably practicable, cooperate with Buyer to obtain a protective order or similar remedy to cause such information not to be disclosed, including interposing all available objections thereto, such as objections based on settlement privilege; *provided*, that, in the event that such protective order or other similar remedy is not obtained, such Seller shall, or shall cause such Representative to, furnish only that portion of such information that has been legally compelled, and shall, or shall cause its Representative (as applicable) to, exercise its commercially reasonable efforts, at Buyer's expense, to obtain assurance that confidential treatment will be accorded such disclosed information.

10.6    <u>Seller Marks License</u>.  Each Seller hereby grants to Buyer and its Affiliates a limited, non-exclusive, royalty-free, worldwide license, effective as of the Closing Date and terminating one (1) year thereafter, to use the Seller Marks solely (a) in connection with the Acquired Interests in the same manner, and with the same standards of quality, as used by the Sellers immediately prior to Closing or (b) as necessary to wind down the use of, and transition away from the use of, the Seller Marks.  Buyer and its Affiliates shall use their respective commercially reasonable efforts to wind down the use of, and transition away from the use of, the Seller Marks reasonably promptly after the Closing Date.

10.7    <u>Power of Attorney</u>.  Each Seller hereby constitutes and appoints, effective as of the Closing Date, Buyer and its successors and assigns as the true and lawful attorney of such Seller with full power of substitution in the name of Buyer, or in the name of such Seller but for the benefit of Buyer, (a) to collect for the account of Buyer any items of Acquired Interests and (b) to institute and prosecute all proceedings which Buyer may in its sole discretion deem proper in order to assert or enforce any right, title or interest in, to or under the Acquired Interests, and to defend or compromise any and all actions, suits or proceedings in respect of the Acquired Interests.  Buyer shall be entitled to retain for its own account any amounts collected pursuant to the foregoing powers, including any amounts payable as interest in respect thereof.

10.8    <u>No Successor Liability</u>.  The Parties intend that, upon the Closing, Buyer shall not be deemed to:  (a) be the successor of, or related person, successor in interest or successor employer (as described under any applicable Law) to, any Seller or any of its Affiliates, predecessors,

successors or assigns, including, with respect to any Employee Plans, other than the Assumed Employee Plans to the extent set forth in <u>Section 6.8</u>; (b) have, de facto or otherwise merged into any Seller or any of its Affiliates, predecessors, successors or assigns; (c) be a mere continuation or substantial continuation of any Seller or any of its Affiliates, predecessors, successors or assigns or the enterprise(s) of any Seller or any of its Affiliates, predecessors, successors or assigns; or (d) other than as expressly set forth in this Agreement, be liable for any acts or omissions of any Seller or any of its Affiliates, predecessors, successors or assigns in the current or former conduct of the business of the Sellers relating to the Acquired Interests or arising under or related to the Acquired Interests.  Without limiting the generality of the foregoing, and except as otherwise expressly provided in this Agreement, the Parties intend that Buyer shall not be liable for any Encumbrances (except Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) against any Seller or any of its Affiliates, predecessors, successors or assigns, and Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, or whether fixed or contingent, whether now existing or hereafter arising, with respect to the Acquired Interests or any Liabilities of the Sellers arising prior to or after the Closing Date other than the Assumed Liabilities and Permitted Encumbrances (except for the Fieldwood U.A. interests and the JV Interests, which shall not have any Permitted Encumbrances).  The Parties agree that the provisions substantially in the form of this <u>Section 10.8</u> shall be reflected in the Confirmation Order.

10.9    <u>Access to Records</u>.

(a)    On and after the Closing Date, each Seller will, and will cause its Affiliates, successors and assigns and Representatives to, afford promptly to Buyer and its agents reasonable access to its books of account, financial and other records (including accountant's work papers), information, employees and auditors to the extent necessary or useful for Buyer in connection with any audit, investigation, dispute or litigation or any other reasonable business purpose relating to the Acquired Interests or the Assumed Liabilities; *provided* that any such access by Buyer shall not unreasonably interfere with the conduct of the business of such Seller.

(b)    Buyer agrees that, following the Closing, and subject to applicable Law and any confidentiality restrictions to third parties, and except as may be necessary to protect any applicable legal privilege, it shall (and shall cause its Subsidiaries to) give to the Sellers and their Representatives reasonable access during normal business hours to the Records pertaining to any and all periods prior to and including the Closing Date, to the extent useful or necessary for the Sellers in connection with any audit, investigation, dispute or litigation relating to the Seller's prior ownership of the Acquired Interests or the Assumed Liabilities, as the Sellers and their Representatives may reasonably request; *provided* that any such access by the Sellers shall not unreasonably interfere with the conduct of business of Buyer.

10.10    <u>Payment of Assumed Liabilities</u>.  If, from and after the Closing Date, any Seller or their respective Affiliates receives an invoice from a third party for payment of amounts that constitute Assumed Liabilities, such Seller may deliver such invoice to Buyer for payment and Buyer shall pay such invoice promptly and in any event within thirty (30) days of Buyer's receipt of such invoice from such Seller; *provided*, that for the avoidance of doubt, that if any such invoice covers amounts that are not Assumed Liabilities, as well as amounts that are Assumed Liabilities,

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

Buyer shall only be required by this Section 10.10 to pay that portion of the amounts invoiced that constitute Assumed Liabilities.

10.11   Payment of Retained Liabilities.  If, from and after the Closing Date, Buyer or its Affiliates receives an invoice from a third party for payment of amounts that constitute Retained Liabilities, Buyer may deliver such invoice to the Sellers for payment and the Sellers shall pay such invoice promptly and in any event within thirty (30) days of the Sellers' receipt of such invoice from Buyer; *provided*, that (a) for the avoidance of doubt, that if any such invoice covers amounts that are not Retained Liabilities, as well as amounts that are Retained Liabilities, the Sellers shall only be required by this Section 10.11 to pay that portion of the amounts invoiced that constitute Retained Liabilities, (b) Sellers will not be required to pay any such Retained Liability to the extent such Retained Liability has been satisfied, compromised, settled, released or discharged pursuant to the Plan and the Confirmation Order or is otherwise subject to a different specified treatment pursuant to the Plan and (c) this Section 10.11 will not limit Sellers' right to exercise or pursue any counterclaim, right to setoff or other defense of Sellers with respect to such Retained Liability.

10.12   Accounts Receivables.

(a)   On the Closing Date, Fieldwood shall deliver to Buyer a statement setting forth the names of the obligor and the amount of each Closing Accounts Receivable (or amounts as known as of the Closing) (as such statement may be modified or supplemented from time to time within ninety (90) days after the Closing Date by written notice of Fieldwood to Buyer, the "***Closing Accounts Receivables Statement***").

(b)   From and after the Closing until the date that is 365 days following the Closing (the "***AR Collections Period***"), if Buyer so requests, Fieldwood shall collect the Closing Accounts Receivable for the benefit of Buyer and Fieldwood shall use the same level of efforts in the collection of the Closing Accounts Receivable that Fieldwood uses in the collection of its own accounts receivables; *provided* that (i) Fieldwood may settle any Closing Accounts Receivable by setoff (each such setoff, an "***Accounts Receivable Setoff***") of any amounts owed by the obligor thereunder against any amount that Fieldwood or any of its Subsidiaries owes to such obligor, to the extent (A) such Accounts Receivable Setoff is permitted under applicable Law and (B) Fieldwood delivers to Buyer (as set forth in Section 10.12(c)) an amount in cash equal to the amount of such Closing Accounts Receivable actually collected by such Accounts Receivable Setoff, (ii) Fieldwood must obtain the prior written consent of Buyer to settle (whether in cash or by way of an Accounts Receivable Setoff) any Closing Accounts Receivable for an amount less than the applicable amount set forth on the Closing Accounts Receivables Statement, (iii) without limiting Fieldwood's other obligations in this Agreement neither Fieldwood nor any of its Subsidiaries shall be required to incur any out-of-pocket expenses or admit or consent to any liability or obligation in connection with the collection of any Closing Accounts Receivable and (iv) Fieldwood shall not have any obligation to commence any litigation or other legal proceeding in connection with the collection of any Closing Accounts Receivable.  Each Party acknowledges that Fieldwood is making efforts to collect the Closing Accounts Receivable hereunder solely pursuant to a contractual relationship on an arm's length basis and that the Parties do not intend that Fieldwood act or be responsible as a fiduciary to Buyer, any holders of Claims or any other Person, and expressly disclaim any such fiduciary relationship, whether between or among Buyer,

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

on the one hand, and Fieldwood or any Seller, on the other hand.  Buyer acknowledges that Fieldwood's obligations pursuant to this Section 10.12 (including Fieldwood Energy I's obligations under Section 10.12(e)) will be undertaken by Buyer pursuant to and in accordance with the TSA.  Fieldwood shall be liable to Buyer (as set forth in Section 10.12(c)) for any Closing Accounts Receivable actually collected by Fieldwood (including as set off by Accounts Receivable Setoff) pursuant to this Section 10.12, and shall indemnify Buyer on a dollar-for-dollar basis for any Closing Accounts Receivable that are actually collected by Fieldwood (including as set off by Accounts Receivable Setoff) but not paid to Buyer pursuant to Section 10.12(c). In the case of an Accounts Receivable Setoff, the date of such Accounts Receivable Setoff shall be the earlier of (i) the date notice of such Accounts Receivable Setoff is delivered to Buyer pursuant to this Section 10.12(b) and (ii) the date such Accounts Receivable Setoff is reflected on the books of Fieldwood or any of its Subsidiaries.

(c)     Prior to the tenth (10th) calendar day following the end of each calendar month occurring after the Closing Date and through the month in which the end of the AR Collections Period occurs, Fieldwood shall promptly deliver the amount of any and all cash collected in respect of Closing Accounts Receivables and the amount of any and all Accounts Receivable Setoffs (collectively, the "***Accounts Receivable Collections***") to Buyer, together with a statement setting forth the aggregate amount of all the Accounts Receivable Collections.

(d)     On the date that is fifteen (15) calendar days after the end of the month in which the AR Collections Period ends, Fieldwood shall (i) deliver to Buyer a statement setting forth (A) the names of the obligor and amount of each Closing Accounts Receivable that remains uncollected, whether by cash or setoff (collectively, the "***Remaining Accounts***"); and (B) the aggregate amount of all of the Remaining Accounts receivables; and (ii) from and after the AR Collections Period, Fieldwood shall have no further obligation under this Section 10.12 to make efforts to collect the Remaining Accounts; *provided*, *however*, for the avoidance of doubt, if Buyer so requests, Fieldwood or its Subsidiaries may elect to collect any of the Remaining Accounts after the expiration of the AR Collections Period, and if Fieldwood so elects, Fieldwood shall pay such amounts over to Buyer, and Fieldwood shall be liable to Buyer for, and shall indemnify Buyer on a dollar-for-dollar basis for, any Remaining Accounts actually collected by Fieldwood pursuant to this Section 10.12.

(e)     Each of the Sellers and Buyer acknowledges and agrees that in connection with, and from and after, the consummation of the Divisive Merger, Fieldwood's obligations and liabilities (including indemnification obligations) under this Section 10.12 will vest in and be allocated to (i) Fieldwood Energy I (in the case of Closing Accounts Receivable attributable to the FWE I Assets) or (ii) Fieldwood Energy III or Fieldwood Energy IV LLC, as applicable, (in the case of Closing Accounts Receivable other than those attributable to the FWE I Assets).

10.13   Directors' and Officers' Indemnification.

(a)     From and after Closing, Buyer shall indemnify, defend and hold harmless (i) each individual Person who is, as of the Closing Date, a director, officer or manager of any Seller, and (ii) Matt McCarroll with respect to his service, prior to the Closing Date, as a director, officer or manager (as applicable) of the Sellers (the "***D&O Indemnified Parties***"), against any and all Losses (including, for the avoidance of doubt, reasonable attorneys' fees, costs and other

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

out-of-pocket expenses) arising out of or relating to any threatened or actual Claim based in whole or in part on, or arising out of or relating in whole or in part to, the fact that such individual Person is or was a director, officer or manager of one or more of the Sellers whether based upon, arising out of or relating to any act or omission actually or allegedly committed or attempted at or prior to the Closing Date and whether asserted or claimed prior to, or at or after, the Closing Date, including all Claims based in whole or in part on, or arising in whole or in part out of, or relating to this Agreement or the transactions contemplated hereby, in each case to the full extent a Seller would be permitted under applicable Law to indemnify its own directors, officers or managers (including payment of expenses in advance of the final disposition of any such action or proceeding to each D&O Indemnified Party), but only to the extent that such Losses would be indemnifiable by the Sellers pursuant to the terms of (x) the organizational documents of the Sellers or (y) any indemnification agreement between one or more Sellers, on the one hand, and the D&O Indemnified Party(ies) seeking indemnification from Buyer pursuant to this Section 10.13(a), on the other hand, set forth on **Schedule 10.13(a)**, in each case, as such organizational documents or agreements existed on the Petition Date (the "***Existing D&O Indemnification Terms***"); *provided*, *however*, that Buyer's obligation to indemnify and hold harmless the D&O Indemnified Parties pursuant to this Section 10.13(a) with respect to Losses associated with any Claim shall be reduced by the amount of any recovery actually received by the applicable D&O Indemnified Party(ies) under the Tail Policy with respect to such Claim (the "***D&O Indemnified Liabilities***").  A D&O Indemnified Party shall not be entitled to make a claim against Buyer for indemnification pursuant to this Section 10.13(a) with respect to an underlying Claim unless and until such D&O Indemnified Party has made a claim against the Tail Policy with respect to such Claim and received a determination of coverage available under the Tail Policy with respect thereto.

(b)    Buyer acknowledges that certain D&O Indemnified Parties may have rights to indemnification, advancement of expenses and/or insurance provided by the Sellers, but excluding, for purposes of the definition of "Indemnitors", the Tail Policy and the insurance providers with respect thereto (collectively, the "***Indemnitors***").  Buyer hereby agrees that as between Buyer and Sellers (i) the Tail Policy and the insurance providers with respect thereto are the indemnitors of first resort with respect to indemnity obligations to the D&O Indemnified Parties, (ii) Buyer's indemnity obligations to the D&O Indemnified Parties apply only once coverage under the Tail Policy has been exhausted upon either payment of the Tail Policy's limits of liability or a determination by the insurance providers thereof that coverage is unavailable with respect to a particular Loss, (iii) the Indemnitors' indemnity obligations to the D&O Indemnified Parties are secondary to Buyer's indemnity obligations to the D&O Indemnified Parties, (iv) Buyer shall be required to advance the full amount of expenses incurred by any D&O Indemnified Party and shall be liable for the full amount of all expenses, judgments, penalties, fines and amounts paid in settlement to the extent legally permitted and as required by the terms of this Agreement, without regard to any rights the D&O Indemnified Party may have against the Indemnitors, but only to the extent that such expenses would be advanced, and such expenses, judgments, penalties, fines and amounts paid in settlement would be payable, in each case pursuant to the Existing D&O Indemnification Terms and (v) Buyer irrevocably waives, relinquishes and releases the Indemnitors from any and all claims against the Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof in respect of the matters set forth in this Section 10.13(b).  Buyer further agrees that no advancement or payment by an Indemnitor on behalf of a D&O Indemnified Party with respect to any claim for which a D&O Indemnified Party has sought indemnification from Buyer shall affect the foregoing and the applicable Indemnitor shall have a

70

right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of the D&O Indemnified Party against Buyer. Buyer and the D&O Indemnified Parties agree that the Indemnitors are express third party beneficiaries of the terms of this Section 10.13.

(c) Without limiting Section 10.13(a), in the event a Claim is brought against any D&O Indemnified Party (whether arising before or after the Closing Date), nothing in this Section 10.13 shall limit the D&O Indemnified Party's(ies') right, to the extent provided pursuant to the Existing D&O Indemnification Terms, to retain counsel satisfactory to him or her (and Buyer shall (to the extent such coverage would be available pursuant to the Existing D&O Indemnification Terms) pay the fees and expenses of such counsel (to the extent such fees and expenses constitute D&O Indemnified Liabilities) for the D&O Indemnified Party promptly as statements therefor are received), *provided* that, to the extent the D&O Indemnified Party(ies) would retain control of any such defense pursuant to the Existing D&O Indemnification Terms, the D&O Indemnified Party(ies) shall retain control of any such defense.

(d) In the event that Buyer or any of its successors or assigns (i) consolidates with or merges into any other Person and is not the continuing or surviving corporation or entity of such consolidation or merger; or (ii) sells, transfers or conveys to any Person or Persons acting in concert all or substantially all of its properties and assets, or ownership of a majority of equity representing the right to control the management of Buyer, then, and in each such case, Buyer shall cause proper provision to be made so that the successors and assigns of Buyer shall assume all of the obligations of Buyer set forth in this Section 10.13.

(e) Each manager that is included in the D&O Indemnified Parties is identified on **Schedule 10.13(e)**.

10.14   Rights of Use. The Parties recognize that, under current BSEE policy, BSEE will recognize only a single entity as the holder of a right of use and easement (each, a "***RUE***"). The Parties agree that RUE No. OCS-G 30329 covering the South Marsh Island 132 Platform B (Complex ID 21982) shall be held by Fieldwood Energy I (upon completion of the anticipated Divisive Merger) on behalf of both itself and Buyer; the Parties agree that, as a contractual matter between themselves, Fieldwood Energy I and Buyer shall each own a one-half interest in such platform and shall each be responsible for one half of the costs and obligations (for operating, decommissioning and otherwise) relating to such platform. The Sellers and Buyer will use commercially reasonable efforts to obtain, to the extent required by BSEE, replacement Right of Use Agreements with respect to each Right of Use Agreement listed on **Schedule 10.14** at, or as promptly as practicable following, the Closing. The rights of the Sellers and Buyer to use, and the obligations with respect to, any RUE listed in **Part 1** of **Schedule 10.14** shall be governed by the terms of the joint operation agreements from the Lease(s) associated with such RUE.

10.15   Post-Closing Agreements. On the date of the consummation of the transactions contemplated by the Divisive Merger, each Seller shall, and shall cause its applicable Affiliates to, and Buyer shall, deliver counterparts to the TSA, the SEMS Bridging Agreement, the ST 308 Performance Bond, the Farmout Agreement, and each of the Joint Operating Agreement Amendments.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

10.16   Effective Date Payments.  On the Effective Date, the Sellers will pay, or cause to be paid, each of the Effective Date Cash Obligations that is to be paid on the Effective Date pursuant to the Plan to the applicable payees thereof.

## ARTICLE XI
## ASSUMPTION AND RETENTION OF LIABILITIES

11.1   Buyer's Assumption of Liabilities.  Subject to the terms of this Agreement, if the Closing occurs, Buyer shall be deemed to have assumed (and shall pay, perform and discharge) the following Liabilities of the Sellers, as of the Closing (collectively, the "***Assumed Liabilities***"):

(a)   all Liabilities to the extent arising out of the Leases and the Assigned Contracts that are Acquired Interests, but, as to such Leases and such Assigned Contracts that constitute Other Assets, only to the extent that such Liabilities arise after the Closing;

(b)   all Liabilities to the extent arising out of the ownership, operation, use or environmental condition of the Acquired Interests (other than the Leases and Assigned Contracts), but, as to the Other Assets that are Acquired Interests, only to the extent that the acts, omissions, events or conditions giving rise thereto first arise, occur or come into existence after the Closing;

(c)   all Liabilities to assess, remediate, remove, transport or dispose as required under Environmental Law any Environmental Contaminants present as of the Closing at the Acquired Interests;

(d)   all Liabilities (whether arising before, at or after the Closing) to the extent arising out of the plugging, abandonment and decommissioning of, and all related salvage, site clearance and surface restoration activities for, any Field Assets that are Acquired Interests to the extent required under applicable Law or the terms of the applicable Leases, but, as to such Field Assets that constitute Other Assets, excluding any monetary fines and penalties to the extent that such monetary fines and penalties arise from or relate to facts or conditions existing or occurring at or before the Closing;

(e)   all Liabilities to the extent arising out of any Imbalances attributable to the Acquired Interests;

(f)   all Liabilities to the extent arising out of any Suspense Funds delivered to Buyer at the Closing but excluding Liabilities with respect to misapplication of any Suspense Funds (or any escheat or other Laws related thereto) before the Closing;

(g)   all Liabilities to the extent arising out of any Prepaid JOA Funds or Undisbursed Revenue, in each case, that is delivered to Buyer at the Closing but excluding Liabilities with respect to misapplication of Prepaid JOA Funds or Undisbursed Revenue (or any escheat or other Laws related thereto) before the Closing;

(h)   all Liabilities assumed by Buyer pursuant to Section 6.8;

(i)   all Liabilities for Taxes attributable to the Acquired Interests other than the Retained Taxes;

72

(j)      all Liabilities relating to (i) any Seller Employee who becomes a Transferred Employee, that arise at, before or after the Closing, in each case unless such claim is (A) discharged under the Plan or (B) covered by insurance and (ii) any Employee Severance that becomes due and payable following the Closing;

(k)      all indemnities of Buyer under Section 1.2, Section 2.3, Section 2.4 and Section 2.5;

(l)      all Working Capital Liabilities;

(m)      the D&O Indemnified Liabilities;

(n)      all Liabilities arising out of or relating to any affirmative defenses of third parties with respect to any Claim or cause of action assigned to Buyer pursuant to Section 1.2(i), Section 1.2(w) and Section 1.2(rr) to the extent that if treated as Retained Liabilities such defenses would not constitute general unsecured claims of the Sellers; and

(o)      the Allowed FLFO Claims (as defined in the Plan) remaining following distribution of the FLFO Distribution Amount (as defined in the Plan) pursuant to the Plan (as modified to the extent set forth in the First Lien Exit Facility Documents (as defined in the Plan)).

Notwithstanding anything to the contrary herein, Assumed Liabilities shall not include any surety bond premiums, indemnity obligations or other obligations on account of surety bonds that were obtained by the Sellers.

11.2      Sellers' Retention of Liabilities.  Notwithstanding anything to the contrary set forth in this Agreement or in any other document or instrument entered into in connection with this Agreement, the Parties expressly acknowledge and agree that Buyer is assuming only the Assumed Liabilities and is not assuming any other Liability of any Seller.  All other Liabilities of each Seller or any of its Affiliates (or any predecessor of any Seller or any of its Affiliates or any prior owner of all or part of their businesses and assets) shall be retained by and remain Liabilities of such Seller and its Affiliates (all such Liabilities not being assumed being herein referred to as the "***Retained Liabilities***") including the following:

(a)      all Liabilities arising out of the Leases and the Assigned Contracts except those Liabilities set forth in Section 11.1(a);

(b)      all Liabilities arising out of the plugging, abandonment and decommissioning of, and all related salvage, site clearance and surface restoration activities for, any assets, properties or leases, except those Liabilities set forth in Section 11.1(d);

(c)      all Liabilities relating to the presence of Environmental Contaminants, except those Liabilities set forth in Section 11.1(c);

(d)      [reserved];

(e)      all current liabilities of the Sellers and their Subsidiaries, including all expenses and accounts, notes and other payables (other than the Working Capital Liabilities);

(f)     all Liabilities arising out of the ownership, operation, use or environmental condition of the Acquired Interests (other than Leases and Assigned Contracts) prior to or as of the Closing, except those liabilities set forth in <u>Section 11.1(b)</u>;

(g)     all indebtedness, whether or not encumbering all or any portion of the Acquired Interests (other than the Working Capital Liabilities);

(h)     all Liabilities arising out of any Suspense Funds, Undisbursed Revenue and Prepaid JOA Funds (except for those Liabilities described in <u>Sections 11.1(f)</u> and <u>Section 11.1(g)</u>);

(i)     [reserved];

(j)     all Liabilities arising out of or relating to the Decommissioning Agreement and Apache PSA;

(k)     all Liabilities related to, resulting from or otherwise arising out of or relating to any Excluded Assets (other than the Working Capital Liabilities);

(l)     all Liabilities arising out of or relating to any Seller's breach of this Agreement;

(m)     all Liabilities for (a) Taxes of the Sellers or Taxes relating to the Acquired Interests (other than Fieldwood U.A. Interests) or the Assumed Liabilities with respect to any Pre-Closing Tax Period (including Property-Related Taxes and Production Taxes that are allocated to the Pre-Closing Tax Period pursuant to <u>Section 6.12</u>), (b) Taxes imposed on Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof, or for which Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof may otherwise be liable, with respect to any Pre-Closing Tax Period; (c) Taxes imposed on Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof, or for which Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof may otherwise be liable, as a result of having been a member of any Company Group; and (d) Transfer Taxes solely to the extent such Transfer Taxes are the responsibility of the Sellers pursuant to <u>Section 6.12</u> (the "***Retained Taxes***");

(n)     all Liabilities for non-compliance by the Sellers or Buyer (or any of their respective Affiliates) with any bulk sales, bulk transfer or similar Law;

(o)     all Liabilities relating to any current or former independent contractor of any Seller or any of its Affiliates or any Seller Employee or other current or former employee of any Seller or any of its Affiliates who does not become a Transferred Employee, that arise at, before or after the Closing (except for those Liabilities assumed by Buyer pursuant to <u>Section 6.8(c)</u>);

(p)     all Liabilities arising out of or relating to any Claim with respect to facts and circumstances existing prior to the Closing, including Liabilities for any fines or penalties relating thereto, except (i) as provided in <u>Section 11.1(b)</u> through <u>Section 11.1(h)</u> and (ii) any affirmative defenses of third parties with respect to any Claim or cause of action assigned to Buyer pursuant to <u>Section 1.2(i)</u>, <u>Section 1.2(w)</u> and <u>Section 1.2(rr)</u> except to the extent that if treated as Retained Liabilities such defenses would constitute general unsecured claims of the Sellers;

(q)      all Liabilities relating to an Employee Plan that is not an Assumed Employee Plan;

(r)      Liabilities satisfied, compromised, settled, released or discharged pursuant to the Plan and the Confirmation Order; and

(s)      all Effective Date Cash Obligations.

Notwithstanding anything contained in this Section 11.2 or elsewhere in this Agreement or any Ancillary Document, Assumed Liabilities shall include all Fieldwood Energy I Closing Accounts Payable.

11.3   Reservation as to Third Persons.  Nothing herein is intended to limit or otherwise waive any recourse Buyer or the Sellers may have against any Third Person for any Liabilities that may be incurred with respect to the Acquired Interests.

## ARTICLE XII
## MISCELLANEOUS

12.1   Expenses.  Except as otherwise specifically provided herein or in any order of the Bankruptcy Court, all fees, costs and expenses (including engineering, land, title, legal, accounting, consulting and other professional fees, costs and expenses) (excluding any fees, costs and expenses incurred by the Prepetition FLTL Agents and the Prepetition FLTL Agents Advisors (each as defined in the Plan)) incurred by Buyer, Buyer 2 or the Sellers in negotiating this Agreement, the Ancillary Documents or in consummating the transactions contemplated herein or therein shall be paid by the Party incurring the same whether or not the Closing shall have occurred. Buyer shall be solely responsible and pay for all recording fees related to the transfer of the Acquired Interests; *provided* that if any such recording fees are required to be paid prior to the Closing the Sellers shall pay such recording fees when due.

12.2   Notices.   All notices and communications required or permitted to be given hereunder (each, a "***Notice***") shall be in writing and shall be delivered personally, or sent by certified U.S. mail, postage prepaid with return receipt requested, bonded overnight courier, by facsimile or email transmission (provided any such facsimile or email transmission is confirmed either orally or by written confirmation), addressed to the appropriate Party at the address for such Party shown below:

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

If to Buyer or Buyer 2:

[__]

If to the Sellers:

c/o Fieldwood Energy LLC
2000 W. Sam Houston Pkwy. S., Suite 1200
Houston, Texas  77042
Attention:  Mike Dane
                 Thomas R. Lamme
                 Jon Graham
Email:       MDane@fwellc.com
                 TLamme@fwellc.com
JGraham@fwellc.com

with a copy (which will not constitute notice) to:

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attention:  Damian Schaible
               Natasha Tsiouris
               Cheryl Chan
Email:      damian.schaible@davispolk.com
             natasha.tsiouris@davispolk.com
             cheryl.chan@davispolk.com

and

Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
Attention: John R. Ashmead
             Gregg S. Bateman
             Catherine LoTempio

Email: ashmead@sewkis.com
         bateman@sewkis.com
         lotempio@sewkis.com

with a copy (which will not constitute notice) to:

Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
Attention:  Rodney L. Moore
               Samuel C. Peca
               Matt Barr
               Alfredo R. Perez
               Jessica Liou
Email:      rodney.moore@weil.com
             samuel.peca@weil.com
             matt.barr@weil.com
             alfredo.perez@weil.com
             jessica.liou@weil.com

Any Notice given in accordance herewith shall be deemed to have been given and received upon: (a) if by personal delivery, then upon receipt (except, if a Notice is received at or after 5:00 p.m. Central Time or on a day that is not a Business Day, it shall be deemed received on the next Business Day), (b) if sent by U.S. certified mail, postage prepaid, return receipt requested, then the date shown as received on the return notice, (c) if sent by facsimile or email transmission, the date such facsimile or email transmission is confirmed either orally or by written confirmation, or (d) if by bonded overnight courier, the date shown on the notice of delivery.  Any Party may change

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

the address, facsimile number or email address to which Notices are to be addressed by giving written notice to the other Party in the manner provided in this <u>Section 12.2</u>.

12.3     <u>Amendments</u>.  Except as set forth in <u>Section 1.2</u>, <u>Section 2.1</u>, <u>Section 2.3(b)</u>, <u>Section 2.4</u>, <u>Section 2.6</u> and <u>Section 6.7</u>, this Agreement, including all Exhibits and Schedules hereto, may be amended or modified only by an agreement in writing executed by all of the Parties.

12.4     <u>Waiver</u>.  No Party shall be deemed to have waived or discharged any claim arising out of this Agreement, or any power, right, privilege, remedy or condition under this Agreement, unless the waiver or discharge of such claim, power, right, privilege, remedy or condition is expressly set forth in a written instrument duly executed and delivered by the Party against whom the waiver or discharge is sought to be enforced.  A waiver or discharge made on one occasion or a partial waiver or discharge of any power, right, privilege, remedy or condition shall not preclude any other or further exercise or enforcement of such power, right, privilege or remedy or requirement to satisfy such condition.  Except as expressly provided otherwise in this Agreement, the rights of each Party under this Agreement shall be cumulative, and the exercise or partial exercise of any such right shall not preclude the exercise of any other right.

12.5     <u>No Third-Party Beneficiaries</u>.  Nothing in this Agreement entitles any Person other than Buyer, Buyer 2 and the Sellers, including Fieldwood Energy I and GOM Shelf and their Subsidiaries, to any claims, remedy or right of any kind; *provided, however,* (a) the D&O Indemnified Parties are intended to be, and shall be, third party beneficiaries of <u>Section 10.12</u>, (b) the Non-Recourse Parties are intended to be, and shall be, third party beneficiaries of <u>Section 12.14</u> and (c) the Seller Indemnified Parties are intended to be, and shall be, third party beneficiaries of the rights of Seller Indemnified Parties specified in <u>Article XIII</u>.  From and after the establishment of the Liquidating Trust, the Liquidating Trustee shall be a third party beneficiary of the Sellers' rights under this Agreement.

12.6     <u>Assignment</u>.

(a)     Subject to <u>Section 12.6(b)</u>, neither this Agreement nor any rights, interests or obligations hereunder shall be assigned by any Party by operation of Law or otherwise without the other Party's express written consent (which may be granted or withheld in the sole discretion of such other Party); *provided*, *however*, that Buyer and Buyer 2 shall be permitted, upon notice to the Sellers, to assign all or part of its respective rights or obligations hereunder (including obligations related to the Assumed Liabilities) to any wholly-owned Subsidiary of NewCo (as defined in the Plan) and the Sellers may assign their respective rights and obligations under this Agreement to any liquidating trust or other similar representative of the Sellers created or appointed pursuant to a Bankruptcy Court order.  Notwithstanding the foregoing, no assignment of any rights hereunder shall relieve the assigning Party of any obligations or responsibilities hereunder.

(b)     If a Liquidating Trust is established, from and after the formation of the Liquidating Trust, subject to the terms of the Confirmation Order, all rights and obligations of the Sellers under this Agreement shall accrue to and be for the benefit of and shall be exercisable by the Liquidating Trust, as provided by any order of the Bankruptcy Court and the Liquidating Trustee shall be entitled to exercise all of the rights of the Sellers under this Agreement.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

12.7    Counterparts.  This Agreement and any amendment hereto may be executed by Buyer, Buyer 2 and the Sellers in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute but one and the same agreement. Notwithstanding anything to the contrary in Section 12.2, delivery of an executed counterpart of a signature page to this Agreement or any amendment hereto by telecopier, facsimile or email attachment that contains a portable document format (.pdf) file of an executed signature shall be effective as delivery of a manually executed counterpart of this Agreement or such amendment, as applicable.

12.8    Governing Law; Jurisdiction; Venue; Jury Trial.

(a)     Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution, termination, performance or non-performance of this Agreement, or any Ancillary Document (unless such Ancillary Document provides for the application of the laws of another jurisdiction) shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of New York applicable hereto.

(b)     Without limitation of any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim; provided, however, that, if the Bankruptcy Cases have been closed pursuant to Section 350(a) of the Bankruptcy Code (or in the event that the Bankruptcy Court determines that it does not have jurisdiction), all Claims arising out of or relating to this Agreement shall be heard and determined in a New York state court or a federal court sitting in the Borough of Manhattan, New York, New York, and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such Claim and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim.  The Parties consent to service of process by mail (in accordance with Section 12.2) or any other manner permitted by Law.

(c)     THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY CLAIM OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION, TERMINATION, PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT, OR ANY ANCILLARY DOCUMENT (UNLESS SUCH ANCILLARY DOCUMENT PROVIDES OTHERWISE).

12.9    Entire Agreement.  This Agreement (including the Exhibits, Schedules and Disclosure Schedules), the Ancillary Documents and the Plan constitute the entire agreement between the Parties with respect to the subject matter hereof and supersede all negotiations, prior

discussions and prior agreements and understandings relating to such subject matter.  In the event of any conflict between this Agreement, any Ancillary Document and the Plan, this Agreement will control.

12.10   <u>Binding Effect</u>.  This Agreement shall be binding in all respects against (a) the Sellers and all of their successors and permitted assigns (including, for the avoidance of doubt, any trustee, examiner or other fiduciary appointed in the Bankruptcy Case) and (b) Buyer, Buyer 2 and all of their respective successors and permitted assigns.

12.11   <u>Time of the Essence</u>.  Time is of the essence for this Agreement.

12.12   <u>No Partnership; No Fiduciary Duty</u>.  This Agreement shall not create and it is not the purpose or intention of the Parties to create any partnership, mining partnership, joint venture, general partnership or other partnership relationship and none shall be inferred.  Nothing in this Agreement shall be construed to establish a fiduciary relationship between the Parties for any purpose.

12.13   <u>Obligations of the Sellers</u>.  The Liabilities, obligations, representations, warranties and covenants of the Sellers in this Agreement and in the Ancillary Documents are solidary (as that term is used under Louisiana law) and joint and solidary (as that phrase is used under Texas law).  Fieldwood shall cause each other Seller to comply with such Seller's obligations under this Agreement, including with respect to the transfer and assignment of the Acquired Interests and Assumed Liabilities and the obligations in <u>Section 6.1</u>.

12.14   <u>No Recourse</u>.  Notwithstanding anything that may be expressed or implied in this Agreement or any Ancillary Document, each Party, on behalf of itself and its Affiliates and their respective representatives, covenants, agrees and acknowledges that no Person other than the Parties (and their respective successors or assignees, as applicable) has any obligation hereunder and that, neither any Party, their respective Affiliates or their respective representatives, shall have any right of recovery under this Agreement or any Ancillary Document against, and no personal liability under this Agreement or any Ancillary Document shall attach to, any Party's former, current or future debt or equity financing sources, equity holders, controlling Persons, directors, officers, employees, general or limited partners, members, managers, Affiliates or agents, or any former, current or future equity holder, controlling Person, director, officer, employee, general or limited partner, member, manager, Affiliate or agent of any of the foregoing (collectively, each of the foregoing but not including the Parties, a "***Non-Recourse Party***"), whether by or through attempted piercing of the corporate, limited partnership or limited liability company veil, by or through a claim by or on behalf of any Party against any Non-Recourse Party, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any applicable Law, whether in contract, tort or otherwise.  Without limiting the foregoing, no past, present or future director, officer, employee, incorporator, member, partner, stockholder, Affiliate, agent, attorney or representative of the Parties or their respective Affiliates shall have any liability for any obligations or liabilities of the Parties under this Agreement of or for any Claim based on, in respect of, or by reason of, the transactions contemplated hereby.

12.15   <u>Disclosure Schedules</u>.  All references to Schedules in <u>Article IV</u> and <u>Article V</u> of this Agreement are referred to in this <u>Section 12.15</u> as "***Disclosure Schedules***".  The information

79

in the Disclosure Schedules constitutes exceptions, qualifications and/or supplements to particular representations or warranties of the Sellers, Buyer and Buyer 2 as set forth in this Agreement. The Disclosure Schedules shall not be construed as indicating that any disclosed information is required to be disclosed, and no disclosure shall be construed as an admission that such information is material to, outside the ordinary course of business of, or required to be disclosed by, the Sellers, Buyer or Buyer 2 or constitutes, individually or in the aggregate, a Material Adverse Effect. Capitalized terms used in the Schedules that are not defined therein and are defined in this Agreement shall have the meanings given to them in this Agreement. The captions contained in the Schedules are for the convenience of reference only, and shall not be deemed to modify or influence the interpretation of the information contained in the Disclosure Schedules or this Agreement. The statements in each Schedule of the Disclosure Schedules qualify and relate to the corresponding provisions in the Sections of this Agreement to which they expressly refer and to each other Section in <u>Article IV</u> or <u>Article V</u> of this Agreement to which the applicability of a statement or disclosure in a particular Schedule of the Disclosure Schedules is readily apparent on its face.

12.16   <u>Other Contract Interpretation</u>.

(a)   <u>Headings</u>. The headings of the Exhibits, Schedules, Articles, Sections, and subsections of this Agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any provision of this Agreement. All references in this Agreement to any "Section," "Article," "Annex," "Exhibit," or "***Schedule***" are to the corresponding Section, Article, Annex, Exhibit or Schedule of this Agreement unless otherwise specified (subject to <u>Section 12.15</u>).

(b)   <u>Severability</u>. If any provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of Law or public policy, it shall not affect the validity or enforceability of the other provisions here and all other provisions of this Agreement shall nevertheless remain in full force and effect. Upon such determination that any provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby fulfilled to the greatest extent possible.

(c)   <u>Agreement Not to Be Construed Against Drafter</u>. The Parties have participated jointly in negotiating and drafting this Agreement. In the event that an ambiguity or a question of intent or interpretation arises, both this Agreement and the Ancillary Documents will be construed as if drafted jointly by the Parties. No presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement or any Ancillary Document.

(d)   <u>Miscellaneous Interpretation</u>. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day. Whenever the words "include," "***includes***" or "***including***" are used in this Agreement, they will be deemed to be followed by the words "***without limitation***" and shall not be construed to limit any general statement that it follows to the specific or similar items or

80

matters immediately following.  Unless the context otherwise requires, (1) "*or*" is disjunctive but not exclusive, (2) words in the singular include the plural and vice versa, (3) the words "herein," "hereof," "hereby," "*hereunder*" and words of similar nature refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited, (4) the use in this Agreement of a pronoun in reference to a Party or Person includes the masculine, feminine or neuter, as the context may require, (5) reference to any Person includes the successors and permitted assigns of that Person, (6) any reference in this Agreement to "$" means United States dollars, (7) and reference in this Agreement to "*days*" (but not "*Business Days*") means to calendar days, (8) reference to any law in this Agreement means such law as amended, modified, codified, reenacted, supplemented or superseded in whole or in part, and in effect from time to time together with any rules or regulations promulgated thereunder, (9) any reference in this Agreement to "*related to*", "*relating to*" or a similar phrase, in each case, in respect of the business of the Sellers, the Acquired Interests, or any other matter means, unless the context otherwise requires, "*related in whole or in part to*", "*relating in whole or in part to*" or a similar construction in the case of a similar phrase, as applicable, and (10) any reference in this Agreement to "*transactions contemplated by this Agreement*" or words of similar import includes the transactions contemplated by the other Ancillary Documents except as the context may otherwise require.  The Annex, Schedules and Exhibits attached to this Agreement are deemed to be part of this Agreement and included in any reference to this Agreement.  If the deadline for performance falls on a day that is not a Business Day, then the actual deadline for performance will be the next succeeding day that is a Business Day.  Where this Agreement references any item being "made available" to Buyer, such item will be deemed to have been "made available" to Buyer if it was provided to Davis Polk & Wardwell LLP or any other Representative of Buyer (including through an electronic dataroom).

<div align="center">

**ARTICLE XIII**
**SURVIVAL AND INDEMNIFICATION**

</div>

13.1    Survival; Limited Recourse Against Sellers.

(a)    The representations and warranties of the Sellers, Buyer and Buyer 2 contained herein and in any certificate or other writing delivered by the Sellers pursuant hereto, including any representation or warranty that may be deemed to be made pursuant to Section 1.1 with respect to the Acquired Interests being acquired by Buyer or Buyer 2 free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances)), shall terminate upon and not survive the Closing and there shall be no liability (whether arising in contract, tort or otherwise, or whether at law or in equity, and regardless of the legal theory under which any entitlement, remedy or recourse may be sought or imposed (including all rights afforded by any statute which limits the effects of a release with respect to unknown claims)) thereafter in respect thereof.  Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.  Each of the covenants of the Sellers, Buyer and Buyer 2 contained in this Agreement shall terminate upon the Closing except to the extent that performance under such covenant is to take place after Closing, in which case such covenant shall survive the Closing until the earlier of (i) performance of such covenant in accordance with this Agreement or (ii) the expiration of applicable statute of limitations with respect to any claim for any failure to perform such covenant (for clarity, any

<div align="center">81</div>

covenant that may be deemed to be made pursuant to <u>Section 1.1</u> with respect to the Acquired Interests being acquired by Buyer or Buyer 2 free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances) shall terminate upon Closing)).  The intended effect of termination of representations, warranties, covenants and agreements is to bar, from and after the date of termination, any claim or cause of action based on (x) the alleged inaccuracy of such representation or breach of such warranty or (y) an alleged breach or failure to fulfill such covenant or agreement; *provided* that if a written notice of any claim with respect to any covenant to be performed after Closing is given prior to the expiration of such covenant then such covenant shall survive until, but only for purposes of, the resolution of such claim by final, non-appealable judgment or settlement.

(b)     Neither Buyer nor Buyer 2 shall have any recourse against any Person who is not a party to this Agreement (excluding any successor or assign of any Seller), including any Affiliate of any Seller or any lender or creditor of any Seller from and after Closing for any Losses relating to the Acquired Interests or this Agreement (including with respect to title and environmental matters) or the Sellers' breach of any representations and warranties, covenants or other provision of this Agreement.  In addition, each of Buyer and Buyer 2 agree to the terms, conditions and limitations set forth in <u>Section 1.5</u>.

(c)     No Seller shall have any recourse against any Person who is not a party to this Agreement (excluding any successor or assign of Buyer or Buyer 2), including any Affiliate of Buyer or Buyer 2 or any lender or creditor of Buyer or Buyer 2 from and after Closing for any Losses relating to the Acquired Interests or this Agreement (including with respect to title and environmental matters) or Buyer or Buyer 2's breach of any representations and warranties, covenants or other provision of this Agreement.

(d)     For the avoidance of doubt, nothing in this Agreement shall prohibit the Sellers from ceasing operations or winding up their respective affairs following the Closing.

13.2     <u>Indemnification by Buyer</u>.  From and after Closing, Buyer hereby agrees to indemnify and hold each Seller, Fieldwood Energy I, GOM Shelf, and each of their successors, their Affiliates and all of their respective officers, managers, directors, employees, equity owners and agents (collectively, the "***Seller Indemnified Parties***") harmless from and against any and all Liabilities (including reasonable attorneys' fees and costs incurred in connection therewith) based upon, attributable to or resulting from:

(a)     the Fieldwood Energy I Closing Accounts Payable; and

(b)     all Assumed Liabilities to the extent associated with the Co-Owned Assets that are Acquired Interests.

13.3     <u>Indemnification Procedures</u>.

(a)     In the event that any proceedings shall be instituted or that any claim or demand shall be asserted by any Indemnified Party in respect of which indemnity may be sought under <u>this Agreement</u> (an "***Indemnification Claim***"), the Indemnified Party shall reasonably and promptly cause written notice of the assertion of any Indemnification Claim of which it has

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

knowledge which is covered by such indemnity to be provided to the Indemnifying Party.  Such notice shall set forth in reasonable detail such Indemnification Claim and the basis for indemnification.  The failure to so notify the Indemnifying Party shall not relieve the Indemnifying Party of its obligation hereunder, except to the extent such failure shall have actually prejudiced the Indemnifying Party.  The Indemnifying Party shall have the right, at its sole option and expense, to be represented by counsel of its choice, and to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder.  If the Indemnifying Party elects to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, it shall within thirty (30) days of receipt of the Indemnification Claim notify the Indemnified Party of its intent to do so.  If the Indemnifying Party elects not to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, the Indemnified Party may control, defend against, negotiate, settle or otherwise deal with such Indemnification Claim.  If the Indemnifying Party shall assume the control of the defense of any Indemnification Claim, the Indemnified Party may participate, at his or its own expense, in the defense of such Indemnification Claim; *provided*, *however*, that such Indemnified Party shall be entitled to participate in any such defense with separate counsel at the expense of the Indemnifying Party if (i) so requested by the Indemnifying Party to participate or (ii) in the reasonable opinion of counsel to the Indemnified Party a conflict or potential conflict exists between the Indemnified Party and the Indemnifying Party that would make such separate representation advisable; and *provided*, *further*, that the Indemnifying Party shall not be required to pay for more than one (1) such counsel for all Indemnified Parties in connection with any Indemnification Claim.  The Parties agree to cooperate fully with each other in connection with the defense, negotiation or settlement of any such Indemnification Claim.  Notwithstanding anything in this Section 13.3 to the contrary, if the Indemnifying Party shall assume the control of the defense of any Indemnification Claim, the Indemnifying Party shall not, without the written consent of the Indemnified Party (which shall not be unreasonably withheld, conditioned or delayed), settle or compromise any Indemnification Claim or consent to entry of any judgment unless the claimant provides to the Indemnified Party an unqualified release from all liability in respect of the Indemnification Claim.  If the Indemnifying Party makes any payment on any Indemnification Claim, the Indemnifying Party shall be subrogated, to the extent of such payment, to all rights and remedies of the Indemnified Party to any insurance benefits or other claims of the Indemnified Party with respect to such Indemnification Claim.

(b)     After any final decision, judgment or award shall have been rendered by a Governmental Authority of competent jurisdiction and the expiration of the time in which to appeal therefrom, or a settlement shall have been consummated, or the Indemnified Party and the Indemnifying Party shall have arrived at a mutually binding agreement with respect to an Indemnification Claim hereunder, the Indemnified Party shall forward to the Indemnifying Party notice of any sums due and owing by the Indemnifying Party pursuant to this Agreement with respect to such matter.  In the case of an Indemnification Claim that does not involve a third-party claim, if the Indemnifying Party does not notify the Indemnified Party within thirty (30) days following the receipt of a notice with respect to any such claim that the Indemnifying Party disputes its indemnity obligation to the Indemnified Party for any Losses with respect to such claim, such Losses shall be conclusively deemed a liability of the Indemnifying Party and the Indemnifying Party shall promptly pay to the Indemnified Party any and all Losses arising out of such claim.  If

the Indemnifying Party has timely disputed its indemnity obligation for any Losses with respect to such claim, the parties shall proceed in good faith to negotiate a resolution of such dispute and, if not resolved through negotiations, such dispute shall be resolved by litigation in an appropriate court of jurisdiction determined pursuant to Section 12.8.

(c)     The amount of any Losses payable by the Indemnifying Party shall be net of any (i) amounts recovered or recoverable by the Indemnified Party under applicable insurance policies or from any other Person alleged to be responsible therefor, and (ii) Tax benefit actually realized by the Indemnified Party arising from the incurrence or payment of any such Losses in the taxable year such Loss was incurred.  If the Indemnified Party receives any amounts under applicable insurance policies, or from any other Person alleged to be responsible for any Losses, subsequent to an indemnification payment by the Indemnifying Party, then such Indemnified Party shall promptly reimburse the Indemnifying Party for any payment made or expense incurred by such Indemnifying Party in connection with providing such indemnification payment up to the amount received by the Indemnified Party, net of any expenses incurred by such Indemnified Party in collecting such amount.

(d)     The Indemnifying Party shall not be liable for any (i) consequential damages (but, for the avoidance of doubt, without limiting liability for direct damages), (ii) punitive damages or (iii) Losses for lost profits.

(e)     Each Indemnified Party must mitigate in accordance with applicable Law any loss for which such Indemnified Party seeks indemnification under this Agreement.  If such Indemnified Party mitigates its loss after the Indemnifying Party has paid the Indemnified Party under any indemnification provision of this Agreement in respect of that loss, the Indemnified Party must notify the Indemnifying Party and pay to the Indemnifying Party the extent of the value of the benefit to the Indemnified Party of that mitigation (less the Indemnified Party's reasonable costs of mitigation) within two (2) Business Days after the benefit is received.

(f)     Each Indemnified Party shall use reasonable efforts to collect any amounts available under insurance coverage, or from any other Person alleged to be responsible, for any Losses payable under an indemnity in this Agreement.

(g)     Express Negligence.  THE INDEMNIFICATION, RELEASE, ASSUMED LIABILITIES, RETAINED LIABILITIES, WAIVER AND LIMITATION OF LIABILITY PROVISIONS PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LIABILITIES, LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE OR RESULTED SOLELY OR IN PART FROM THE SOLE, ACTIVE, PASSIVE, CONCURRENT OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR VIOLATION OF LAW OF OR BY ANY INDEMNIFIED PARTY.

(h)     Tax Treatment of Indemnity Payments.  The Sellers, Buyer and Buyer 2 agree to treat any indemnity payment made pursuant to this Agreement as an adjustment to the Consideration for federal, state, local and foreign income tax purposes.  Any indemnity payment under this Agreement shall be treated as an adjustment to the value of the asset upon which the underlying Indemnification Claim was based, unless a final determination (within the meaning of Section 1313 of the Code) with respect to the Indemnified Party or any of its Affiliates causes any

84

such payment not to be treated as an adjustment to the value of the asset for United States federal income tax purposes.

(i)     Sole and Exclusive Remedy.   Except for any post-Closing payment expressly contemplated by this Agreement or any claim for a breach of a Party's covenants hereunder (to the extent not limited by Section 13.1(a)) or for Fraud (but not Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries), the remedies provided in this Article XIII and in Section 8.3 shall be the sole and exclusive legal and equitable remedies of the Parties, from and after the Closing, with respect to this Agreement and the transactions contemplated hereby, and no Person will have any other entitlement, remedy or recourse, whether in contract, tort or otherwise, or whether at law or in equity, and regardless of the legal theory under which such entitlement, remedy or recourse may be sought or imposed (including all rights afforded by any statute which limits the effects of a release with respect to unknown claims), it being agreed that all of such other remedies, entitlements and recourse are expressly waived and released by the Parties to the fullest extent permitted by law.

*[**Signature page follows**.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date.

**SELLERS:**

Fieldwood Energy Inc.

By: _____
Name:
Title:


Fieldwood Energy LLC

By: _____
Name:
Title:


Dynamic Offshore Resources NS, LLC

By: _____
Name:
Title:


Fieldwood Energy Offshore LLC

By: _____
Name:
Title:


Fieldwood Onshore LLC

By: _____
Name:
Title:


Fieldwood SD Offshore LLC

By: _____
Name:
Title:

Fieldwood Offshore LLC

By: _____
Name:
Title:

FW GOM Pipeline, Inc.

By: _____
Name:
Title:

GOM Shelf LLC

By: _____
Name:
Title:

Bandon Oil and Gas GP, LLC

By: _____
Name:
Title:

Bandon Oil and Gas, LP

By: _____
Name:
Title:

Fieldwood Energy SP LLC

By: _____
Name:
Title:

Galveston Bay Pipeline LLC

By: _____
Name:
Title:

Galveston Bay Processing LLC

By: _____
Name:
Title:

**BUYER:**

[_____]

By: _____
Name:
Title:

**BUYER 2:**

[_____]

By: _____
Name:
Title:

**Annex I**

**Definitions**

The following terms and expressions shall have the following meanings:

"***1933 Act***" means the Securities Act of 1933, as amended, and the rules and regulations as promulgated thereunder.

"***365 Contracts***" means all Applicable Contracts and other executory contracts and unexpired leases to which a Seller is a party to the extent covering, attributable to or relating to any of the Acquired Interests or to which any of the Acquired Interests is subject or bound, in each case that may be assumed by one or more Sellers pursuant to Section 365 of the Bankruptcy Code.

"***365 Schedule***" is defined in Section 6.7(a).

"***Accounts Receivable Collections***" is defined in Section 10.12(c).

"***Accounts Receivable Setoff***" is defined in Section 10.12(b).

"***Acquired Interests***" is defined in Section 1.2.

"***Affiliate***" means, with respect to a Person, any other Person that, as of the relevant time for which the determination of affiliation is made, directly or indirectly controls, is controlled by, or is under common control with, such Person.  For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, contract, voting trust, membership in management or in the group appointing or electing management or otherwise through formal or informal arrangements or business relationships.

"***Agent***" is defined in the recitals.

"***Agreement***" is defined in the preamble and includes all annexes, schedules and exhibits hereto, as well as all supplements, amendments and restatements hereof.

"***Allocated Value***" means the value allocated to the applicable Acquired Interest, if any, as agreed in good faith by Buyer and the Sellers.

"***Allowed Priority Tax Claim***" has the meaning set forth in the Plan.

"***Allowed Specified Administrative Expense Claims***" has the meaning set forth in the Plan.

"***Alternative Bidder***" is defined in Section 6.4(b).

"***Alternative Transaction***" means (a) any sale, transfer or other disposition of all or a material portion of the Acquired Interests or (b) any series of sales, transfers or other dispositions of any portion of the Acquired Interests that, when taken collectively, constitutes a disposition of all or a material portion of the Acquired Interests, in each case, to any Person or Persons other than Buyer.

"*Ancillary Documents*" means each Assignment, Bill of Sale and Conveyance, the Assignment and Assumption Agreement, the Office Assets Conveyance, the TSA, the Farmout Agreement, the ST 308 Performance Bond, the SEMS Bridging Agreement, the Assignment of Leases and Subleases, the Joint Operating Agreement Amendments, the JV Assignment Agreement, the Funding Agreement, the Release Document and any other agreement, document, instrument or certificate entered into or delivered pursuant to this Agreement.

"*Antitrust Law*" means, collectively, the HSR Act, Title 15 of the United States Code §§ 1 7 (the Sherman Act), Title 15 of the United States Code §§ 12-27 and Title 29 of the United States Code §§ 52-53, (the Clayton Act), the Federal Trade Commission Act (15 U.S.C. §§ 41, et seq.) and the rules and regulations promulgated thereunder and any other Laws that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade or lessening of competition through merger or acquisition.

"*Apache PSA*" means that certain Purchase and Sale Agreement, dated as of July 18, 2013, by and among Apache Corporation, Apache Deepwater LLC, Apache Shelf, Inc., Apache Shelf Exploration LLC, GOM Shelf and Fieldwood, as amended from time to time, and the transaction documents executed in connection therewith.

"*Applicable Consent*" means any consent, waiver or approval that is required to be obtained from, or any notice that is required to be given to, any Third Person as a result of the assignment of the Acquired Interests by the Sellers to Buyer as contemplated by this Agreement (each, a "*Consent*") that (a) relates to an Assigned Contract, which consent, waiver or approval would be required for such Assigned Contract to be assumed and assigned to Buyer, after giving effect to Sections 365(c)(1) and 365(f)(1) of the Bankruptcy Code or (b) that relates to any Acquired Interest other than an Assigned Contract, other than, in each case, (i) for Preferential Rights and (ii) any Governmental Approvals.

"*Applicable Contracts*" means (a) all Contracts (*provided* that, for clarity, any "Operating Agreement" or "Joint Operating Agreement" identified on the 365 Schedule shall be deemed a Contract for purposes of this definition) to which a Seller is a party or is bound to the extent covering, attributable to or relating to any of the Acquired Interests or to which any of the Acquired Interests is subject or bound, including, without limitation, operating agreements, crude oil, condensate and natural gas purchase and sale agreements, gathering agreements, transportation agreements, marketing, disposal or injection agreements, farmout and farmin agreements, unitization, pooling and communitization agreements, exploration agreements, development agreements, area of mutual interest agreements, exchange and processing contracts and agreements, partnership and joint venture agreements, confidentiality agreements and any other similar contracts, agreements and instruments, and all amendments thereto, and (b) all Easements.

"*Applicable Governmental Approval*" is defined in Section 2.4.

"*Applicable Shared Asset Interests*" means, with respect to each asset described on Schedule 1.2, the portion of the Sellers' right, title, and interest in each such asset that corresponds to the portion of the Sellers' right, title and interest in the Co-Owned Leases, the Co-Owned Subject Units and the Co-Owned Wells (collectively, the "Co-Owned Oil and Gas Properties"), as applicable, conveyed to Buyer under this Agreement.

"*AR Collections Period*" is defined in Section 10.12(b).

"*Assets*" is defined in Section 1.2.

"*Assigned 365 Contracts*" is defined in Section 6.7(a).

"*Assigned 365 Contracts List*" is defined in Section 6.7(a).

"*Assigned Contracts*" means (a) the Assigned 365 Contracts and (b) all Applicable Contracts that are not 365 Contracts (other than Excluded Assets), and any and all amendments, ratifications or extensions of the foregoing.

"*Assignment and Assumption Agreement*" means that Assignment and Assumption Agreement to be entered into at Closing by the parties thereto, in the form attached as **Exhibit I** hereto.

"*Assignment, Bill of Sale and Conveyance*" means that Bill of Sale, Assignment and Assumption Agreement to be entered into at Closing by the parties thereto in the form attached as **Exhibit G** hereto for the Co-Owned Assets and in the form attached as **Exhibit H** hereto for the Other Assets.

"*Assignment of Leases and Subleases*" means each Assignment and Assumption of Leases and Subleases to be entered into at Closing by the parties thereto for the Office Sublease, the Lafayette Lease Agreement, the Warehouse Lease and the Lubrizol Sublease, in the form attached as **Exhibit J** hereto.

"*Assumed Employee Plan*" is defined in Section 4.18(a).

"*Assumed Liabilities*" is defined in Section 11.1.

"*Avoidance Action*" means any avoidance, preference, recovery, claim, right or cause of action of any Seller arising under Chapter 5 of the Bankruptcy Code or under any analogous state or federal bankruptcy or non-bankruptcy laws.

"*Backstop Commitment Letters*" means the Second Lien Backstop Commitment Letter, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.

"*Backstop Commitment Premium Equity Interests*" has the meaning set forth in the Plan.

"*Balance Sheet Date*" is defined in Section 4.27.

"*Bankruptcy Cases*" is defined in the recitals.

"*Bankruptcy Code*" is defined in the recitals.

"*Bankruptcy Court*" is defined in the recitals.

"*Bankruptcy Rules*" is defined in the recitals.

"**BOEM**" means the Bureau of Ocean Energy Management or any successor agency thereto.

"**BOEM Qualifications**" means the Person has received a GOM qualification number from BOEM, and is able to bid on, own and hold a lease on the Outer Continental Shelf, Gulf of Mexico region.

"**BSEE**" means the Bureau of Safety and Environmental Enforcement or any successor agency thereto.

"**Business Day**" means any day other than a Saturday, a Sunday or any other day on which banking institutions in, New York, New York or Houston, Texas, are required or authorized by Law or executive order to be closed.

"**Buyer**" is defined in the preamble.

"**Buyer 2**" is defined in the preamble.

"**Buyer Grandparent**" is defined in Section 5.11(b).

"**Buyer Grandparent Equity Interests**" is defined in Section 5.1(c).

"**Buyer Intermediate**" is defined in Section 5.1(b).

"**Buyer Obligation**" is defined in Section 2.1(c).

"**Buyer Parent**" is defined in Section 5.1(b).

"**Buyer Parent Debt**" is defined in Section 2.1(c).

"**Cash Portion**" means an amount in cash (which amount shall not exceed the proceeds of (x) the Second Lien Exit Facility (as defined in the Plan) plus (y) the proceeds of the Equity Rights Offerings (as defined in the Plan), less (z) $120,000,000; *provided*, that the amount in (z) may be reduced to an amount not less than $100,000,000 in the sole and absolute discretion of the Buyer), equal to (a) the Effective Date Cash Obligations Amount, less (b) the Closing Cash Amount.

"**Casualty Event**" means (a) any fire, explosion, accident, earthquake, act of the public enemy, act of God or other similar event or occurrence that results in damage to or the destruction of any Acquired Interest and (b) any taking, or threatened taking, of any Acquired Interest by condemnation or under the right of eminent domain.

"**CERCLA**" is defined in the definition of Environmental Contaminants.

"**Claims**" means any and all claims, demands, Encumbrances, notices of non-compliance or violation, notices of Liability or potential Liability, investigations, incidents of non-compliance (INCs), actions (whether judicial, administrative or arbitrational), causes of action, suits, proceedings and controversies.

"**Closing**" means the consummation of the transactions contemplated in this Agreement.

"*Closing Accounts Receivable*" means all current assets of the Sellers as of the Effective Time that are included in the Working Capital Assets, other than such current assets attributable to the Acquired Interests.

"*Closing Accounts Receivables Statement*" is defined in Section 10.12(a).

"*Closing Cash Amount*" means the amount of cash in accounts of the Sellers as of immediately prior to the Effective Time, excluding all restricted cash (restricted cash includes, for the avoidance of doubt, all Suspense Funds, Excluded Suspense Funds, Prepaid JOA Funds, Excluded Prepaid JOA Funds, Undisbursed Revenue and Excluded Undisbursed Revenue), as determined in good faith by the Sellers and Buyer in accordance with GAAP.

"*Closing Date*" is defined in Section 9.1.

"*COBRA*" means Section 4980B of the Code and Sections 601 through 608 of ERISA.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Company Group*" means any group of entities filing Tax Returns on an affiliated, combined, consolidated, unitary or similar basis for Tax purposes that, at any time on or before the Closing Date, includes or has included Fieldwood U.A. or Fieldwood Mexico or any of their respective Subsidiaries.

"*Confidential Information*" is defined in Section 10.5.

"*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means an order of the Bankruptcy Court in form and substance, including with respect to (i) all findings of fact and conclusions of law and (ii) the matters described in Section 2.3 through Section 2.5, acceptable to Fieldwood and the Buyer, confirming the Plan and, without limitation to the generality of the foregoing, such Confirmation Order shall provide that the transfer of the Acquired Interests to Buyer shall be, pursuant to, inter alia, Sections 105, 363, 365, 1123(a)(5)(b), 1129, 1141 and 1146 of the Bankruptcy Code, free and clear of any and all Encumbrances (other than Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) and Retained Liabilities, which Confirmation Order shall be subject to the consent rights set forth in the Restructuring Support Agreement.

"*Confirmation Outside Date*" has the meaning set forth in the Plan.

"*Consent*" is defined in the definition of Applicable Consent.

"*Consenting Creditors*" has the meaning set forth in the Plan.

"*Consideration*" is defined in Section 2.1(a).

"*Contracts*" means any agreement, license, lease, sublease, sublicense, contract, promise, obligation, sale or purchase order, service order, indenture, note, bond, loan, mortgage, deed of trust, instrument, commitment or undertaking, including any exhibits, annexes, appendices or attachments thereto, and any amendments, modifications, supplements, extension or renewals thereto, but excluding, however (a) any Lease, easement (including the Easements), right-of-way or other instrument, in each case, creating any oil and gas mineral interest or other real property interests and (b) any Permit.

"*Conveyed*" means conveyed, assigned, or sold pursuant to the Apache PSA, regardless of whether such conveyance, assignment, or bill of sale was recorded in the appropriate records of, or approved or recognized by, any applicable Governmental Authority.

"*Co-Owned Assets*" is defined in Section 1.2.

"*Co-Owned Assigned Contracts*" means the Assigned Contracts relating to any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement or Co-Owned Inventory.

"*Co-Owned Easements*" is defined in Section 1.2(c).

"*Co-Owned Field Assets*" means the Co-Owned Leases, Co-Owned Subject Units, Co-Owned Easements, Co-Owned Wells and Co-Owned Inventory.

"*Co-Owned Field Data*" is defined in Section 1.2(j).

"*Co-Owned Inventory*" is defined in Section 1.2(e).

"*Co-Owned Leases*" is defined in Section 1.2(a).

"*Co-Owned Records*" is defined in Section 1.2(k).

"*Co-Owned Scheduled Wells*" is defined in Section 1.2(d).

"*Co-Owned Subject Unit*" is defined in Section 1.2(b).

"*Co-Owned Subject Unit Agreement*" is defined in Section 1.2(b).

"*Co-Owned Wells*" is defined in Section 1.2(d).

"*Credit Agreement*" means that certain *Amended and Restated First Lien Credit Agreement*, dated as of April 11, 2018, by and among Fieldwood, as borrower, Fieldwood Energy Inc., as holdings, Cantor Fitzgerald Securities, as the administrative agent and collateral agent, the lenders party thereto, and the other parties thereto, as amended, restated, amended and restated, supplemented, or otherwise modified.

"*Credit Bid and Release*" is defined in Section 2.1(a)(1).

"*Credit Bid and Release New Equity Interests*" means the New Equity Interests being distributed to the holders of Allowed FLTL Secured Claims (as defined in the Plan) pursuant to the Plan.

"***Cure Costs***" means, with respect to any given 365 Contract, all monetary liabilities, including pre-petition monetary liabilities, of the Sellers that must be paid or otherwise satisfied to cure all of the Sellers' monetary defaults under such 365 Contract pursuant to Section 365 of the Bankruptcy Code in order for such 365 Contract to be assumed and assigned to Buyer (if applicable) as provided hereunder, as such amounts are determined by the Bankruptcy Court or approved pursuant to the assignment and assumption procedures provided for in the Plan, Confirmation Order, or herein.

"***D&O Indemnified Liabilities***" is defined in Section 10.13(a).

"***D&O Indemnified Parties***" is defined in Section 10.13(a).

"***Data Obligations***" is defined in Section 4.25(i).

"***Debtors***" is defined in the recitals.

"***Decommissioning***" has the meaning ascribed to such term in the Decommissioning Agreement.

"***Decommissioning Agreement***" means that Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood and GOM Shelf, as amended.

"***Delayed Asset***" is defined in Section 2.3(b).

"***Designation Deadline***" is defined in Section 6.7(c).

"***DIP Facility Credit Agreement***" means that certain *Senior Secured Debtor-in-Possession Term Loan Credit Agreement*, dated as of August 24, 2020, by and among Fieldwood, as borrower, Fieldwood Energy Inc., as holdings, Cantor Fitzgerald Securities, as the administrative agent and collateral agent, the lenders party thereto, and the other parties thereto, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

"***Direction Letter***" is defined in the recitals.

"***Disclosure Schedules***" is defined in Section 12.15.

"***Disclosure Statement***" means the Disclosure Statement For Joint Chapter 11 Plan Of Fieldwood Energy LLC And Its Affiliated Debtors, as may be amended, modified, or supplemented from time to time in form and substance acceptable to the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

"***Disclosure Statement Order***" means an order of the Bankruptcy Court approving the Disclosure Statement.

"***Divisive Merger***" has the meaning set forth in the Plan.

"***Divisive Merger Effective Time***" means the effective time of the Divisive Merger.

"*Easements*" means the Co-Owned Easements and Other Easements.

"*Effective Date*" means the "*Effective Date*" of the Plan.

"*Effective Date Cash Obligations*" means the Sellers' obligations under the Confirmation Order, the Plan, the Plan of Merger and the transactions contemplated thereby and this Agreement, including, without limitation, collectively: (i) the DIP Claims (as defined in the Plan) and related fees and expenses as provided in Section 2.4 of the Plan, (ii) the FLFO Distribution Amount (as defined in the Plan), (iii) the Professional Fee Escrow Amount (as defined in the Plan), (iv) the Restructuring Expenses (as defined in the Plan), (v) any Allowed Postpetition Hedge Claims, (vi) any Cure Amounts (as defined in the Plan), (vii) any Allowed Administrative Expense Claims (as defined in the Plan) not otherwise included in the other subsections of this definition, (viii) any Allowed Priority Tax Claims (as defined in the Plan), (ix) any Allowed Priority Non-Tax Claims (as defined in the Plan), (x) any Allowed Other Secured Claims (as defined in the Plan), (xi) the Plan Administrator Expense Reserve Amount (as defined in the Plan), (xii) the FWE I Cash Amount (as defined in the Plan of Merger), (xiii) an amount for the initial capitalization of Fieldwood Energy III as determined by the Sellers and the Majority Backstop Parties (as defined in the Second Lien Backstop Commitment Letter), (xiv) any cash distributions to holders of Allowed Unsecured Trade Claims (as defined in the Plan), (xv) any other amounts as agreed between the Sellers and the Required DIP Lenders (as defined in the Plan) and the Requisite FLTL Lenders (as defined in the Plan), (xvi) amounts due or to become due after the Closing pursuant to any Governmental Settlement Agreement and (xvii) the amounts of any Claims asserted prior to the Closing with respect to facts and circumstances existing prior to the Closing (except to the extent such amounts constitute general unsecured claims of the Sellers), including, but not limited to, (1) Claims for personal injury or damage to third party property (but with respect to such Claims that are covered by insurance policies, including for the avoidance of doubt, such Claims for personal injury or damage to third party property only to the extent of the applicable deductible or retention amount under the applicable insurance policies covering such Claims) and (2) fines and penalties related to such Claims, including Claims described in the preceding clause (1) (except to the extent such Claims or related Liabilities (x) constitute Assumed Liabilities or (y) are satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order), in each case of <u>clauses (i)</u> through <u>(xvii)</u> solely to the extent not paid by the Sellers prior to Closing.

"*Effective Date Cash Obligations Amount*" means the amount of cash necessary to satisfy the Effective Date Cash Obligations, as determined in good faith by the Sellers and Buyer.

"*Effective Time*" is defined in <u>Section 1.4</u>.

"*Employee List*" is defined in <u>Section 4.17(a)</u>.

"*Employee Plan*" is defined in <u>Section 4.18(a)</u>.

"*Employee Severance*" is defined in <u>Section 6.8(c)</u>.

"*Employment Agreements*" is defined in <u>Section 6.22</u>.

"**_Encumbrance_**" means any encumbrance, license, right of first refusal, mortgage, deed of trust, pledge, security interest, lien, privilege, charge of any kind (including any agreement to grant any of the foregoing), adverse claim of any kind, capital lease, conditional sale or title retention agreement, lease or sublease in the nature thereof or the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction.

"**_End Date_**" is defined in Section 8.1(b)(i).

"**_Environmental Contaminants_**" means "hazardous substances" and "pollutants or contaminants" as those terms are defined in Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act ("**_CERCLA_**"), petroleum, including any fraction thereof, any "natural gas, natural liquids, liquefied natural gas, or synthetic gas usable for fuel" as those terms are used in Section 101 of CERCLA, any "solid or hazardous waste" as those terms are defined or used in the Resource Conservation and Recovery Act and any industrial or oil and gas wastes regulated by applicable rules of any relevant Governmental Authority.  The term also includes NORM concentrated, disposed of, released from or present on any Field Assets or resulting from or in association with Hydrocarbon activities on any Field Assets.

"**_Environmental Law_**" means all applicable Laws (including the CERCLA, the Resource Conservation and Recovery Act, the Oil Pollution Act of 1990 and such other applicable Laws relating to the Release, management or disposal of Environmental Contaminants including oilfield waste, in each case as amended from time to time) relating to the protection of the environment or protection of human health (to the extent relating to exposure to Environmental Contaminants).

"**_Equity Rights Offerings_**" has the meaning set forth in the Plan.

"**_Equity Rights Offering New Equity Interests_**" means the New Equity Interests issuable upon exercise of the FLTL Subscription Rights and SLTL Subscription Rights in accordance with the Plan.

"**_ERISA_**" means the Employee Retirement Income Security Act of 1974, as amended.

"**_ERISA Affiliate_**" is defined in Section 4.18(a).

"**_Excluded Assets_**" is defined in Section 1.3.

"**_Excluded Contracts_**" is defined in Section 6.7(c).

"**_Excluded Prepaid JOA Funds_**" means any funds received by the Sellers (in their capacity as operator of any Excluded Assets) on account of working interest owners in Excluded Assets as prepayments for items under operating or other agreements.

"**_Excluded Suspense Funds_**" means those proceeds of production and associated penalties and interest in respect of any Excluded Assets or any Hydrocarbons produced from or attributable to any Excluded Assets that belong to one or more Third Persons and are being held in suspense by any Seller or any Affiliate thereof.

"*Excluded Undisbursed Revenue*" means those proceeds of production and associated penalties and interest in respect of any Excluded Assets or any Hydrocarbons produced from or attributable to any Excluded Assets that belong to one or more Third Persons and have been received by, and at the Closing are being held by, the Sellers on account of such Third Persons for disbursement to such Third Persons after the Closing.

"*Execution Date*" is defined in the preamble.

"*Existing D&O Indemnification Terms*" is defined in Section 10.13(a).

"*Farmout Agreement*" means that Farmout Agreement by and among Fieldwood Energy I, GOM Shelf and Buyer, in the form attached hereto as **Exhibit T**.

"*FCPA*" is defined in Section 4.26.

"*Field Assets*" means the Leases, Subject Units, Easements, Wells and Inventory.

"*Field Data*" means the Co-Owned Field Data and Other Field Data.

"*Fieldwood*" is defined in the preamble.

"*Fieldwood Energy I*" means a Texas limited liability company to be formed pursuant to the Plan of Merger under the name Fieldwood Energy I LLC (or such other name as may be substituted therefor in the final, as filed version of the Plan of Merger).

"*Fieldwood Energy I Closing Accounts Payable*" means, whether classified on the books and records of the Sellers as an account payable or otherwise, expenses of the Sellers incurred by any Seller as of the Effective Time but not yet paid as of the Effective Time and attributable to the FWE I Oil and Gas Properties and the GOM Shelf Oil and Gas Properties, including, without limitation:

(a)     payables arising from the exploration of and production and sale of oil and gas from the FWE I Oil and Gas Properties and the GOM Shelf Oil and Gas Properties;

(b)     payables to third parties on account of third party working interest owners to the extent that there is a corresponding joint interest billing receivable included in the Fieldwood Energy I Closing Accounts Receivable;

(c)     obligations for Royalties in respect of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties payable on account of Hydrocarbons produced from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties and sold prior to and unpaid as of the Effective Time (*provided* that if a Royalty reporting, miscalculation, or underpayment claim is asserted after the Effective Time with respect to any Royalty paid prior to the Effective Time such claim or obligation shall not be deemed a Fieldwood Energy I Closing Accounts Payable except to the extent any such reporting, miscalculation, or underpayment claim (i) totals more than $1,000,000, (ii) arises out of the willful misconduct of the person or persons performing such reporting, calculations, or payments as determined by a final, non-appealable

judgment of a court or other tribunal having jurisdiction) and (iii) is asserted within three (3) years of the Closing Date;

      (d)    the GOM Shelf and FW GOM Pipeline Payables;

*provided*, that, Fieldwood Energy I Closing Accounts Payable shall exclude:

      (i)    obligations for FWE I Suspense Funds, Excluded Suspense Funds and Excluded Prepaid JOA Funds;

      (ii)    Interim Unpaid P&A Expenses;

      (iii)    obligations to pay Royalties on Hydrocarbons produced from FWE I Oil and Gas Properties or GOM Shelf Oil and Gas Properties and sold from and after the Effective Date;

      (iv)    payables to third parties on account of third party working interest owners other than those described in clause (b) above;

      (v)    any Royalty reporting, miscalculation, or underpayment claim in respect of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties payable on account of Hydrocarbons produced from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties except as described in clause (c) above;

      (vi)    any fines or penalties levied or imposed by governmental authorities prior to the Effective Time with respect to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

      (vii)    P&A Obligations and Decommissioning expenses; and

      (viii)    obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order.

"***Fieldwood Energy I Closing Accounts Receivable***" means all accounts, notes and other receivables of the Sellers attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties as of the Effective Time, including all accounts, notes and other receivables attributable to the sale of oil or gas produced and sold from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties prior to or as of the Effective Time and joint interest billing receivables for expenses paid by the Sellers as of the Effective Time or for which a payable is included in the Fieldwood Energy I Closing Accounts Payable; *provided* "Fieldwood Energy I Closing Accounts Receivable" shall exclude the Specified Excluded Receivables.

"***Fieldwood Energy III***" means Fieldwood Energy III LLC, a Texas limited liability company.

"***Fieldwood Mexico***" means Fieldwood Mexico B.V., a Dutch private company.

"***Fieldwood U.A.***" means Fieldwood Coöperatief U.A.

"*Fieldwood U.A. Interests*" is defined in <u>Section 1.2(oo)</u>.

"*Final Allocation*" is defined in <u>Section 2.2</u>.

"*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has:  (a) not been reversed, stayed, modified or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought; *provided*, *however*, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

"*Financial Statements*" means (a) the consolidated quarterly financial statements (unaudited) of Sellers for the fiscal quarter ended September 30, 2020 and the elapsed portion of the fiscal year then ended and (b) the consolidated annual financial statements of Sellers for the year ended December 31, 2019.

"*FLTL ERO Backstop Agreement*" has the meaning set forth in the Plan.

"*FLTL Subscription Rights*" means the "FLTL Subscription Rights" as defined in the Plan.

"*Foreign Antitrust Approvals*" is defined in <u>Section 6.5(a)</u>.

"*Fourth Amendment to Office Sublease*" is defined in the definition of Office Sublease.

"*Fraud*" means common law fraud and requires (a) a false representation with respect to a representation or warranty made by Sellers in <u>Article IV</u> or any certificate delivered by Sellers hereunder, (b) knowledge or belief that the representation was false when made, (c) with intent to induce, and (d) justifiable reliance upon the representation (it being acknowledged that each of Buyer and Buyer 2 has relied on each of the representations in <u>Article IV</u> and the certificates delivered hereunder).

"*Fundamental Representations*" means the representations and warranties set forth in <u>Section 4.1</u>, <u>Section 4.2</u>, <u>Section 4.3(a)</u>, <u>Section 4.4</u>, <u>Section 4.5</u>, <u>Section 4.31(a)</u> and <u>Section 4.31(f)</u>.

"*Funding Agreement*" means a Funding Agreement by and between Buyer and Fieldwood, in the form attached hereto as **Exhibit W**.

"*FW GOM Pipeline*" is defined in the preamble.

"**FWE I Assets**" has the meaning set forth in Part A of Schedule I to the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests and the Specified P&A Equipment.

"**FWE I Obligations**" has the meaning set forth in Part B of Schedule I to the Plan of Merger.

"**FWE I Oil and Gas Properties**" has the meaning set forth in Part A of Schedule I to the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests.

"**FWE I Suspense Funds**" means all funds held in suspense (i) by Fieldwood to the extent attributable to any of the FWE I Assets and (ii) by GOM Shelf, and any interest accrued in escrow accounts for such suspended funds.

"**GAAP**" means generally accepted accounting principles in the United States of America, consistently applied.

"**GOM Shelf**" is defined in the preamble.

"**GOM Shelf and FW GOM Pipeline Payables**" means the payables of GOM Shelf and FW GOM Pipeline as of the Effective Time (as determined consistent with the definition of Fieldwood Energy I Closing Accounts Payable).

"**GOM Shelf Oil and Gas Properties**" has the meaning set forth in the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests.

"**Governmental Approval**" means any authorization, consent, approval, exemption, franchise, permit or license of, or filing with, or notice or any other action by, any relevant Governmental Authority.

"**Governmental Authority**" means any transnational, domestic or foreign governmental or quasi-governmental federal, state, provincial, county, city, regulatory or administrative authority or other political subdivision or any officer, department, bureau, agency, commission, court or other statutory or regulatory body or instrumentality thereof.

"**Governmental Settlement Agreement**" is defined in Section 6.17.

"**GUC Warrants**" has the meaning set forth in the Plan.

"**Hedges**" is defined in Section 1.2(hh).

"**HSR Act**" means the Hart-Scot-Rodino Antitrust Improvements Act of 1976, and the rules and regulations promulgated thereunder.

"**Hydrocarbons**" is defined in Section 1.2(g).

"***Imbalance***" means (a) any imbalance between (i) the quantity of Hydrocarbons produced from any well and allocated to a Person from time to time and (ii) the share of such production to which such Person is actually entitled by virtue of its ownership interest in such well or in the lease or unit under which such well is produced and (b) any imbalance between (i) the quantity of Hydrocarbons produced from any oil and gas asset and actually delivered from a Third Person pipeline and allocated to a Person from time to time and (ii) the share of such Hydrocarbons to which such Person is actually entitled to receive from such Third Person pipeline.

"***Implementation Agreement***" means that certain Apache Term Sheet Implementation Agreement dated January 1, 2021, by and between Fieldwood, GOM Shelf, Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC.

"***Indemnification Claim***" is defined in Section 13.3(a).

"***Indemnified Party***" means a Party entitled to indemnification under this Agreement, whether on behalf of itself or, with respect to the Sellers, any of the Seller Indemnified Parties.

"***Indemnifying Party***" means a Party from whom indemnification is sought under this Agreement by an Indemnified Party.

"***Indemnitors***" is defined in Section 10.13(b).

"***Initial Allocation***" is defined in Section 2.2.

"***Intellectual Property***" means any and all intellectual property rights or industrial property rights throughout the world, including all (a) national and multinational statutory invention registrations, patents and patent applications of any type issued or applied for in any jurisdiction, including all provisionals, divisions, continuations, continuations-in-part, reissues, extensions, re-examinations and the equivalents of any of the foregoing in any jurisdiction, and all inventions disclosed in each such registration, patent or patent application, (b) trademarks, service marks, trade dress, logos, brand names, certification marks, domain names, trade names, corporate names and other indications of origin, whether or not registered, in any jurisdiction, and all registrations and applications for registration of the foregoing in any jurisdiction, and all goodwill associated with the foregoing (collectively, "***Trademarks***"), (c) copyrights (whether or not registered) and registrations and applications for registration thereof in any jurisdiction, including all derivative works, moral rights, renewals, extensions, reversions or restorations associated with such copyrights, regardless of the medium of fixation or means of expression, (d) trade secrets, information, data, specifications, processes, methods, know-how, formulae, techniques, schematics, drawings, blueprints, utility models, designs, technology, software, inventions, discoveries, ideas and improvements, including manufacturing information and processes, engineering and other manuals and drawings, standard operating procedures, flow diagrams, technical information, research records and similar data and information, (e) database rights, industrial designs and industrial property rights and (f) the right to assert, claim or sue and collect damages for the past, present or future infringement, misappropriation or other violation of any of the foregoing.

"***Interim Period***" means the period from the Execution Date through and including the Closing Date.

"*Interim Unpaid P&A Expenses*" means all incurred but unpaid expenses incurred by Fieldwood for Plugging and Abandonment costs and expenses on the FWE I Oil and Gas Properties between the filing on August 3, 2020, of the Bankruptcy Cases and the Divisive Merger Effective Time to the extent not paid as of the Divisive Merger Effective Time.

"*Inventory*" means the Co-Owned Inventory and Other Inventory.

"*IRS*" means the Internal Revenue Service of the United States.

"*Joint Operating Agreement Amendment*" means the amendments to jointly owned properties operating agreements with respect to those Co-Owned Leases (or portion thereof) that are not subject to any Assigned Contract that is a joint operating agreement or unit operating agreement with one or more Third Persons, in each case that is in form and substance acceptable to Buyer.

"*JV Assignment Agreement*" means the Assignment Agreements (or equivalent) and related instruments to be entered into at Closing by the parties thereto with respect to the transfer of the Fieldwood U.A. Interests and the JV Interests pursuant to this Agreement, in each case that is in form and substance acceptable to Buyer.

"*JV Interests*" is defined in <u>Section 1.2(oo)</u>.

"*JV Shares*" is defined in <u>Section 4.31(c)</u>.

"*Knowledge*" means (a) with respect to Buyer and Buyer 2, the actual knowledge of any executive officer of Buyer or Buyer 2, as applicable, and (b) with respect to the Sellers, the actual knowledge of Thomas Lamme, Mike Dane, William Swingle, Patrick Eiland and John Seeger.

"*Lafayette Lease Agreement*" means that certain Lease Agreement dated as of April 5, 2017, between Fieldwood and Ronnie White Custom Homes, L.L.C.

"*Law*" means all laws, constitutions, treaties, statutes, ordinances, rules, regulations, codes, orders, judgments, decrees, orders, writs, injunctions and decisions of any Governmental Authority, or having the effect of law in any applicable jurisdiction, including all principles of common law.

"*Lease Burdens*" means all royalties, overriding royalties, production payments, carried interests, net profits interests, reversionary interests and similar contractual burdens upon, payable out of or measured by Hydrocarbons produced from or allocated to a Lease; and all rentals, shut-in royalties, minimum royalties and bonus payments under a Lease.

"*Leases*" means the Co-Owned Leases and Other Leases.

"*Liability*" means any debt, Loss, obligation, duty, commitment, demand, responsibility, suit, judgment, undertaking, royalty, deficiency or obligation (including those arising out of any action, such as any settlement or compromise thereof or judgment or award therein), Claim or Encumbrance of any kind or nature whatsoever whether known or unknown, disclosed or undisclosed, expressed or implied, primary or secondary, direct or indirect, matured or unmatured,

determined or indeterminable, disputed or undisputed, secured or unsecured, joint or several, asserted or unasserted, fixed, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, whether due or to become due, whether in contract, tort or otherwise, and whether or not required to be accrued on the financial statements of any entity or individual, including those arising under any Law, or imposed by any Governmental Authority or arbitrator of any kind.

"*Licensed Intellectual Property*" means any and all Intellectual Property (a) owned by a Third Person and licensed or sublicensed to a Seller or for which a Seller has obtained a covenant not to be sued, in each case, under an Assigned Contract and (b) related to the ownership or operation of the Acquired Interests.

"*Liquidating Trust*" means a liquidating or similar trust as may be established with respect to Sellers' estates in conjunction with the Bankruptcy Cases.

"*Liquidating Trustee*" means the trustees or other representative of the Liquidating Trust.

"*Losses*" and "*Loss*" means any and all losses, judgments, damages, liabilities, injuries, costs, interest, taxes, settlements, penalties and fines or expenses (including any incidental, indirect or consequential damages, losses, liabilities or expenses, and any lost profits or diminution in value). As used herein, the term "Losses" includes reasonable attorneys' fees and other costs and expenses of any Party entitled to defense or indemnity hereunder incident to (a) the investigation and defense of any Claim that results in litigation or the settlement of any Claim or (b) the enforcement of such defense or indemnity rights under this Agreement.

"*Lubrizol Sublease*" means that certain Sublease, dated December 22, 2018, by and between The Lubrizol Corporation, as sublandlord, and Fieldwood Energy LLC, as subtenant, for Suite 320 in the building known as One Briarlake Plaza and located at 2000 W. Sam Houston Parkway South, Houston, Texas, and that certain Consent to Sublease, effective as of January 29, 2019.

"*Material Adverse Effect*" means a result, event, occurrence, change, circumstance, development or consequence that, individually or in the aggregate, would reasonably be expected to (a) materially and adversely affect the value, condition (financial or otherwise) or results of operations of the Acquired Interests taken as a whole or (b) materially and adversely affect the ability of the Sellers to perform their obligations under this Agreement or the documents executed in connection herewith or consummate the transactions contemplated herein and therein; *provided*, that, with respect to clause (a) only, any result, event, occurrence, change, circumstance, development or consequence to the extent resulting from any of the following matters shall not be taken into account in determining whether a Material Adverse Effect has occurred: (i) changes in financial or securities markets generally; (ii) changes in general economic or political conditions in the United States or worldwide; (iii) changes in conditions or developments generally applicable to the oil and gas industry in the area where the Acquired Interests are located, including, but not limited to, changes in the market price of oil and natural gas; (iv) actions taken after the date of this Agreement as required by this Agreement or with the written consent of Buyer; (v) the commencement or pendency of the Bankruptcy Cases and any adverse effects resulting therefrom, (vi) entering into this Agreement or the announcement of the transactions contemplated hereby (provided, that this clause (vi) shall not be excluded with respect to the representations and

warranties and related conditions contained in this Agreement that address the consequences of the execution, announcement or performance of this Agreement or the consummation of the transactions contemplated hereby); (vii) acts of God, including hurricanes, storms or other naturally occurring events; (viii) acts or failures to act of Governmental Authorities, except as a result of any action or inaction by or on behalf of the Sellers; **[(ix) matters expressly disclosed on any Exhibit or Annex to this Agreement or in the Disclosure Schedules]**; (x) any epidemic, pandemic or disease outbreak (including the COVID-19 virus) or hostilities, terrorist activities or war or any similar disorder and, in each case, governmental actions related thereto; (xi) matters that are cured or no longer exist by the earlier of Closing and the termination of this Agreement; (xii) any change in laws or in GAAP and any interpretations thereof from and after the Execution Date; (xiii) any reclassification or recalculation of reserves in the ordinary course of business; (xiv) natural declines in well performance; (xv) the departure of officers or directors of the Sellers after the Execution Date; (xvi) any objections in the Bankruptcy Court to (A) this Agreement and the other Ancillary Documents and the transactions contemplated hereby and thereby, (B) the reorganization of any Seller and any related plan of reorganization or disclosure statement or (C) the Plan of Merger or transactions contemplated thereby; and (xvii) any order of the Bankruptcy Court (except any such order that would preclude or prohibit the Sellers from consummating the transactions contemplated by this Agreement) or any actions or omissions of the Sellers in compliance therewith; *provided*, that, with respect to clauses (i) through (iii), (vii), (viii), (x) and (xii) any such result, event, occurrence, change, circumstance, development or consequence shall not be disregarded to the extent that it has had a disproportionate effect on the Acquired Interests relative to similar oil and gas assets in the Gulf of Mexico held by other participants in the industries in which the Acquired Interests are operated.

"*Material Contract*" is defined in Section 4.14(a).

"*Mexico JV*" is defined in Section 1.2(oo).

"*Net Revenue Interest*" means, with respect to each Lease and Scheduled Well, the interest in and to all Hydrocarbons produced and saved from or attributable to such Lease or Scheduled Well, after giving effect to all valid Lease Burdens, carried interests, reversionary interests and other similar interests constituting burdens upon, measured by or payable out of Hydrocarbons produced and saved from or attributable to such Lease or Scheduled Well.

"*New Equity Interests*" has the meaning set forth in the Plan.

"*New Money Warrants*" has the meaning set forth in the Plan.

"*Non-Recourse Party*" is defined in Section 12.14.

"*Non-Transferred Asset*" is defined in Section 10.3(b).

"*NORM*" means naturally occurring radioactive material.

"*Notice*" is defined in Section 12.2.

"***NPA***" means that certain Non-Prosecution Agreement dated as of February 9, 2021, entered into between Fieldwood and the United States Attorney's Office for the Eastern District of Louisiana.

"***Office Assets***" is defined in Section 1.2(ee).

"***Office Assets Conveyance***" means that Bill of Sale, Assignment and Assumption Agreement to be entered into at the Closing by the parties thereto, in the form attached as **Exhibit K** hereto.

"***Office Sublease***" means that certain Sublease Agreement, dated as of September 30, 2013, between Apache Corporation, as sublessor, and Fieldwood, as sublessee, for space in the building known as One BriarLake Plaza located at 2000 West Sam Houston Parkway South, Houston, Texas, as amended by (i) First Amendment to Sublease Agreement, dated as of January 2, 2014, (ii) Second Amendment to Sublease Agreement, dated as of September 7, 2017, (iii) Third Amendment to Sublease Agreement, dated as of May 28, 2018, and (iv) Fourth Amendment to Sublease, dated as of _____ ___, 2020 (the "***Fourth Amendment to Office Sublease***").

"***Organizational Documents***" is defined in Section 4.31(b).

"***OSFR***" means Oil Spill Financial Responsibility.

"***Other Assets***" is defined in Section 1.2(o).

"***Other Assigned Contracts***" means all Assigned Contracts other than the Co-Owned Assigned Contracts.

"***Other Easements***" is defined in Section 1.2(r).

"***Other Field Assets***" means the Other Leases, Other Subject Units, Other Easements, Other Wells and Other Inventory.

"***Other Field Data***" is defined in Section 1.2(x).

"***Other Inventory***" is defined in Section 1.2(t).

"***Other Leases***" is defined in Section 1.2(p).

"***Other Records***" is defined in Section 1.2(y).

"***Other Scheduled Wells***" is defined in Section 1.2(s).

"***Other Subject Unit***" is defined in Section 1.2(q).

"***Other Subject Unit Agreement***" is defined in Section 1.2(q).

"***Other Wells***" is defined in Section 1.2(s).

"***Owned Intellectual Property***" means any and all Intellectual Property (except for Trademarks) (a) owned or purported to be owned by any Seller and (b) related to the ownership or operation of the Acquired Interests.

"***P&A Obligations***" means any and all obligations, liabilities, damages, losses, and claims arising out of or attributable to the payment or performance of all Plugging and Abandonment.

"***Parties***" and "***Party***" are defined in the preamble.

"***Permit***" means any permit, license, authorization, certificate, registration, franchise, exemptions, waiver, consent, approval or other similar rights or privileges granted by any Governmental Authority.

"***Permitted Encumbrances***" means:

(a)     easements, restrictive covenants, servitudes, permits, surface leases and other rights with respect to surface operations, and rights-of-way on, over or in respect of any of the Acquired Interests that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests and which are of a nature that would be reasonably acceptable to a prudent owner or operator of oil and gas properties;

(b)     all applicable Laws and all rights reserved to or vested in any Governmental Authority: (1) to control or regulate the Assets in any manner, (2) by the terms of any right, power, franchise, grant, license or Permit issued by any Governmental Authority, or by any provision of applicable Law, to terminate such right, power, franchise, grant, license or permit or to purchase, condemn, expropriate or recapture or to designate a purchaser of any Asset; (3) to use such Asset in a manner which does not materially impair the use of such property for the purposes for which it is currently owned and operated; or (4) to enforce any obligations or duties affecting the Assets to any Governmental Authority with respect to any franchise, grant, license or permit, excluding in each case of <u>clauses (1)</u> through <u>(4)</u> any such rights or Laws resulting from any breach, default, violation or non-compliance with any Law or Permit;

(c)     the terms, conditions, restrictions, exceptions, reservations, limitations and other matters (including dedications thereof) contained in (1) the Leases, (2) the Assigned Contracts, (3) the Preferential Rights disclosed on **Schedule 4.8(a)**, and (4) the Easements, but excluding in each case of <u>clauses (1)</u> through <u>(4)</u> any such terms, conditions, restrictions, reservations, exceptions, limitations or other matters resulting from any breach, violation, default or non-compliance;

(d)     Encumbrances for Taxes or assessments not yet due and payable or, if due and payable, those Taxes or assessments that are being contested in good faith by proceedings diligently conducted in the normal course of business and for which adequate reserves have been established in accordance with applicable accounting principles;

(e)     mechanic's, materialmen's, carrier's, supplier's, vendor's, repairer's or other similar statutory Encumbrances arising in the ordinary course of business securing obligations that are (i) not yet delinquent or (ii) satisfied, settled, released or discharged pursuant to the Plan and Confirmation Order;

(f)     utility easements, restrictive covenants, zoning, entitlement, building, subdivision and other similar restrictions that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests and which are of a nature that would be reasonably acceptable to a prudent owner or operator of offshore oil and gas properties;

(g)     Encumbrances created by Buyer, Buyer 2 or any of their respective successors or assigns;

(h)     any lessor's, operator's, working interest owner's or other inchoate or undetermined Encumbrance or charge (whether statutory or contractual) constituting or securing the payment of Lease Burdens or of expenses which were or will be incurred in the ordinary course of business and incidental to the maintenance, development, production or operation of any Acquired Interest, to the extent the same are satisfied, settled, released or discharged pursuant to the Plan and Confirmation Order;

(i)     Lease Burdens, division orders, carried interests, rights to recoupment, unitization, pooling, proration and spacing designations, orders and agreements, reversionary interests, rights to take in kind, and any other similar Encumbrance;

(j)     any charge, equitable interest, privilege, lien, mortgage, deed of trust, production payment, option, pledge, collateral assignment, security interest, right of first refusal, restriction, encroachment, defect, or other arrangement substantially equivalent thereto, or other defect or irregularity of any kind, in each case, that will be permanently and fully extinguished with respect to the Acquired Interests pursuant to the Confirmation Order;

(k)     all Governmental Approvals in connection with the conveyance of the Acquired Interests, if the same are permitted to be received after Closing and are customarily sought and received after Closing;

(l)     such other defects or irregularities of title or encumbrances as Buyer or Buyer 2 may expressly waive in writing;

(m)     any maintenance of uniform interest provision in a joint or unit operating agreement if waived by the party or parties having the right to enforce such provision;

(n)     any Encumbrance affecting the Assets that is permanently and fully discharged by the Sellers at or prior to the Closing;

(o)     non-exclusive licenses of, to or under any Intellectual Property granted in the ordinary course of business;

(p)     rights of a common owner of any interest in rights-of-way, Permits or easements (including Easements) held by the Sellers and such common owner as tenants in common or through common ownership that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests;

(q)      any matters set forth on **Exhibit A** or **Exhibit C**, all litigation and claims set forth on **Schedule 4.6**, and all Imbalances set forth on **Schedule 4.15**; and

(r)      all depth restrictions or limitations applicable to any Acquired Interests to the extent set forth on **Exhibit A** or **Exhibit C**.

"***Person***" means any individual, corporation, limited liability company, partnership, trust, joint stock company, joint venture, association, unincorporated organization, Governmental Authority or any other form of entity.

"***Personal Information***" is defined in Section 4.25(i).

"***Petition Date***" means August 3, 2020.

"***Plan***" means the joint plan filed by the Debtors under chapter 11 of the Bankruptcy Code implementing the restructuring transactions, including the transaction contemplated in this Agreement, which plan shall be in substantially the same form and substance as the plan filed by the Debtors on January 1, 2021, at Docket No. 722 in the Bankruptcy Court, as may be amended, modified or supplemented by the Plan Supplement or otherwise from time to time in accordance with the Restructuring Support Agreement.

"***Plan of Merger***" means the form of Agreement and Plan of Merger of Fieldwood into Fieldwood Energy I and Fieldwood Energy III which is attached as Exhibit 5 to the Implementation Agreement.

"***Plan Supplement***" has the meaning set forth in the Plan.

"***Plugging and Abandonment***" and its derivatives mean all plugging, replugging, abandonment, re-plugging and re-abandonment, equipment removal, disposal, or restoration associated with the properties and assets included in or burdened by the FWE I Assets, including all plugging and abandonment, removal, dismantling, decommissioning, surface and subsurface restoration, site clearance, and disposal of the FWE I Oil and Gas Properties, well cellars, fixtures, platforms, caissons, flowlines, pipelines, structures, and personal property of whatever kind located on or under, related to, or associated with operations and activities conducted by whomever with respect to each of the FWE I Oil and Gas Properties, the flushing, pickling, burial, removal, and capping of all associated flowlines, field transmission and gathering lines, pit closures, the restoration of the surface, site clearance, any disposal of related waste materials and Environmental Contaminants and obligations to obtain plugging exceptions for any of the FWE I Oil and Gas Properties, with a current plugging exception, all in accordance with all applicable Laws, the terms and conditions of each of the FWE I Oil and Gas Properties, or similar leasehold interests, beneficial interests, easements and the FWE I Oil and Gas Properties.

"***Post-Closing Consent Period***" is defined in Section 2.3(d).

"***Post-Closing Tax Period***" means any taxable period beginning after the Closing Date and, with respect to a Straddle Period, the portion of such Straddle Period beginning after the Closing Date.

"**Pre-Closing Tax Period**" means any taxable period ending on or before the Closing Date and, with respect to a Straddle Period, the portion of such Straddle Period ending on and including the Closing Date.

"**Preferential Right**" means any preferential right to purchase, right of first refusal, right of first offer or similar right that is applicable to the Acquired Interests or the Assigned Contracts and the operation of which is triggered by the transactions contemplated in this Agreement.

"**Prepaid JOA Funds**" is defined in Section 10.2(b).

"**Production Taxes**" means any and all severance, production, gathering, Btu or gas, transportation, gross receipts, utility, excise and other similar taxes (other than Property-Related Taxes, Transfer Taxes and taxes based on or measured by income or gross or net worth) relating to the production, gathering or transportation of Hydrocarbons, or increases therein, and any interest or penalties thereon.

"**Property-Related Taxes**" means any and all ad valorem, property, generation, conversion, privilege, consumption, lease, transaction and other taxes, franchise fees, governmental charges or fees, licenses, fees, permits and assessments, or increases therein, and any interest or penalties thereon.

"**Records**" means the Co-Owned Records and Other Records.

"**Release**" means any release, disposal, spilling, leaking, pouring, emission, emptying, discharge, injection, escape, transmission, leaching or dumping, or any threatened release, of any Environmental Contaminants from, or related in any way to the use, ownership or operation of, the Acquired Interests.

"**Release Document**" means a Credit Bid and Release Agreement in the form attached hereto as **Exhibit S**.

"**Remaining Accounts**" is defined in Section 10.12(d).

"**Representatives**" means, with respect to a Person, the directors, managers, shareholders, members, partners, officers, employees, consultants, advisors, agents or other representatives, including legal counsel, accountants, investment bankers and financial advisors of (i) such Person, (ii) such Person's Affiliates, (iii) the successors and assigns of such Person and (iv) the successors and assigns of such Person's Affiliates; *provided* however that solely with respect to Buyer and Buyer 2, the term "Representatives" shall also include Davis Polk & Wardwell LLP.

"**Required Consent**" is defined in Section 2.3(b).

"**Restructuring Support Agreement**" means that certain *Restructuring Support Agreement*, dated as of August 4, 2020, by and among Fieldwood, certain of its affiliates specified therein, the Consenting Creditors, and Apache Corporation, as the same may be amended, restated, or otherwise modified in accordance with its terms.

"**Retained Liabilities**" is defined in Section 11.2.

"*Royalties*" means all minimum royalties, shut-in payments, royalties, overriding royalties, reversionary interests, net profits interests, production payments, carried interests, non-participating royalty interests, reversionary interests, and other royalty burdens and other interests payable out of production of Hydrocarbons from or allocated to the FWE I Oil and Gas Properties, the GOM Shelf Oil and Gas Properties, or the proceeds thereof to third parties.

"*RUE*" is defined in Section 10.14.

"*Section 6.8 Employee*" means each of those employees of Sellers specified on **[insert reference to email of counsel]**.

"*Scheduled Wells*" means the Co-Owned Scheduled Wells and Other Scheduled Wells.

"*Second Lien Backstop Commitment Letter*" has the meaning set forth in the Plan.

"*Seller*" and "*Sellers*" is defined in the preamble.

"*Seller Employees*" is defined in Section 4.17(a).

"*Seller Indemnified Parties*" is defined in Section 13.2.

"*Seller IT Assets*" means any and all computers, networks, systems, printers, software, firmware, middleware, servers, workstations, routers, hubs, switches, data communications lines, and all other information technology equipment, and all associated documentation, owned or purported to be owned by any Seller.

"*Seller Marks*" mean Trademarks owned by any Seller, including "Fieldwood," and any variations thereof.

"*Seller Related Parties*" is defined in Section 4.24.

"*SEMS Bridging Agreement*" means that Bridging Agreement by and among Buyer, Fieldwood Energy I and GOM Shelf, in the form attached hereto as **Exhibit Q**.

"*SLTL ERO Backstop Agreement*" has the meaning set forth in the Plan.

"*SLTL Subscription Rights*" has the meaning set forth in the Plan.

"*SLTL Warrants*" has the meaning set forth in the Plan.

"*Specified Excluded Receivables*" means each of the following:

(a)     all deposits with third parties, escrow accounts, guarantees, letters of credit, treasury securities and insurance policies, in each case to the extent relating to the FWE I Assets and surety bonds, all OSFR coverage (whether consisting of one or more insurance policies) and other forms of credit assurances or credit support provided by a third party for the benefit of the Sellers, in each case to the extent for financial assurance for the obligations and liabilities arising out of or related to the FWE I Assets, the GOM Shelf Oil and Gas Properties or GOM Shelf,

including the P&A Obligations arising out of or related to the FWE I Assets or the GOM Shelf Oil and Gas Properties, including those items listed on **Exhibit U**;

(b)      instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties to which such assets relate are located) and other economic benefits in each case attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (excluding any accounts, notes or other receivables attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties or of GOM Shelf); *provided*, that nothing in this clause (b) shall be interpreted to limit the scope of Fieldwood Energy I Closing Accounts Receivable;

(c)      claims of indemnity, contribution, or reimbursement of the Sellers or of GOM Shelf, in each case, relating to the FWE I Obligations or obligations of GOM Shelf;

(d)      receivables of the Sellers for imbalances attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

(e)      rights to insurance proceeds or other claims of recovery, indemnity, contribution, or reimbursement of the Sellers attributable to the FWE I Assets or the GOM Shelf Oil and Gas Properties due to casualty or other damage or destruction of or to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

(f)      cash in the amount of advance payments on account of third party working interest owners in the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, to the extent such cash amounts are associated with FWE I Obligations; and

(g)      rights to receive and collect cash and advance payments, in each case pursuant to cash calls associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties to the extent such cash and advance payments are associated with FWE I Obligations.

"*Specified Oil and Gas Interests*" means the assets listed on **Exhibit Y**.

"*Specified P&A Equipment*" means the equipment listed on **Exhibit Z**.

"*Specified Section 6.10 Contract(s)*" means those certain contracts and/or agreements specified on **[insert reference to email of counsel]**.

"*ST 308 Performance Bond*" means that ST 308 Performance Bond to be entered into by and among Buyer, Apache Corporation and the surety named therein, a form of which is attached as **Exhibit R** hereto.

"*Straddle Period*" means any taxable period beginning on or prior to the Closing Date and ending after the Closing Date.

"*Subject Unit Agreement*" means the Co-Owned Subject Unit Agreements and Other Subject Unit Agreements.

"*Subject Units*" means the Co-Owned Subject Units and Other Subject Units.

"*Subscription Rights*" has the meaning set forth in the Plan.

"*Subsidiary*" means, with respect to any Person, any entity of which such first Person (either alone or through or together with any other Person pursuant to any contract) (a) owns, directly or indirectly, securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other governing body of such corporation, partnership, limited liability company, joint venture or other entity or other persons performing similar functions or (b) acts as the managing member or general partner of such other Person that is a partnership, limited liability company, joint venture or other entity.

"*Suspense Funds*" means those proceeds of production and associated penalties and interest in respect of any Field Assets or any Hydrocarbons produced from or attributable to any Field Assets that belong to one or more Third Persons and are being held in suspense by any Seller or any Affiliate thereof.

"*Tail Policy*" means the directors and officers insurance policies of the Sellers, including that certain policy issued by Sompo International (Endurance American Insurance Company), Policy Number BLP300011112000, and each additional layer of directors and officers insurance held by the Sellers.

"*Tax*" means (i) all U.S. federal, state, local or non-U.S. taxes, including all income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, environmental, customs duties, capital stock, ad valorem, value added, inventory, franchise, profits, withholding, windfall profit, social security, surcharge, impost, unemployment, disability, health, real property, personal property, mortgage, production, sales, use, occupancy, transfer, registration, alternative or add-on minimum, estimated or other similar tax of any kind whatsoever or any assessment, duty, levy, fee or charge of any kind in the nature of (or similar to) taxes imposed by any Governmental Authority, and including any interest, penalty, or addition thereto, (ii) any liability for the payment of any amounts of the type described in clause (i) as a result of any obligation to indemnify or otherwise assume or succeed to the liability of any other person, including as a transferee or successor, whether imposed by Law or Contract and (iii) in the case of Fieldwood U.A. and Fieldwood Mexico or any of their respective Subsidiaries, any liability for the payment of amounts determined by reference to amounts described in clauses (i) and (ii) as a result of being or having been a member of any Company Group (including, in each case, for any Tax purposes or by operation of Law), as a result of any obligation under any agreement or arrangement (including any Tax Sharing Agreement), as a result of being a transferee or successor, or by Contract.

"*Tax Return*" means any return, claim for refund, declaration, disclosure, election, report, statement, information return or other similar document (including any related or supporting information, amendments, schedule or supplements of any of the foregoing) filed or required to be filed with any Governmental Authority with respect to Taxes.

"*Tax Sharing Agreement*" means any agreement or arrangement, including any Tax sharing, allocation, indemnification, reimbursement, receivables or similar agreement entered into

prior to the Closing binding Fieldwood U.A. or Fieldwood Mexico or any of their respective Subsidiaries that provides for the allocation, apportionment, sharing or assignment of any Tax liability or Tax benefit, or the transfer or assignment of income, revenues, receipts, or gains for the purpose of determining any Person's Tax liability (other than any customary commercial contract entered into in the ordinary course of business the principal subject matter of which is not Taxes).

"***Third Person***" means any Person other than the Sellers, Buyer or Buyer 2.

"***Toggle Date***" has the meaning set forth in the Plan.

"***Trademarks***" is defined in the definition of Intellectual Property.

"***Transfer Documents***" means each Assignment, Bill of Sale and Conveyance, the Assignment and Assumption Agreement, the Office Assets Conveyance, the Assignment of Leases and Subleases and each JV Assignment Agreement.

"***Transfer Taxes***" means any sales, use, goods and services, value added, stock, stamp, document, filing, recording, registration and similar tax or charge (including any interest or penalties thereon and the cost of preparing any Tax Returns with respect thereto).

"***Transferred Employee***" is defined in Section 6.8(a).

"***Transferred Intellectual Property***" means the Owned Intellectual Property and Licensed Intellectual Property.

"***Trust Agreement***" means that certain Trust Agreement dated September 30, 2013 by and among Fieldwood and GOM Shelf, as Settlors and Primary Beneficiaries, and Apache Corporation, Apache Shelf, Inc., Apache Deep Water LLC and Apache Shelf Exploration LLC, as Secondary Beneficiaries, as amended.

"***TSA***" means that Transition Services Agreement to be entered into by Buyer, Fieldwood Energy I and GOM Shelf in the form attached as **Exhibit P** hereto.

"***Undisbursed Revenue***" means those proceeds of production and associated penalties and interest in respect of any Field Assets or any Hydrocarbons produced from or attributable to any Field Assets that belong to one or more Third Persons and have been received by, and at the Closing are being held by, the Sellers on account of such Third Persons for disbursement to such Third Persons after the Closing.

"***Unit***" means a unit for the production and operation of a Hydrocarbon well created by the pooling, unitization or communitization, whether voluntary or governmental, of any or all portions of any Leases and the lands covered thereby with other oil and gas leases or lands.

"***Warehouse Lease***" means that certain Lease dated as of November 15, 2019, by and between Cheyenne Services, LLC, as lessor, and Fieldwood Energy LLC, as lessee, for leased premises located at 108 Galbert Rd., Lafayette, LA, as amended by (i) First Amendment to Lease, executed April 26, 2020 and (ii) Second Amendment to Lease, executed November 10, 2020.

"**Wells**" means the Co-Owned Wells and Other Wells.

"**Working Capital Assets**" means, without duplication, (a) the current assets of the Sellers as of immediately prior to the Effective Time; *provided* that this <u>clause (a)</u> shall include only the types of current assets set forth as line items under the header "Current Assets" on **Exhibit X**, excluding the Specified Excluded Receivables, and (b) the Fieldwood Energy I Closing Accounts Receivable.  For the avoidance of doubt, Working Capital Assets shall not include any cash, including Suspense Funds, Undisbursed Revenue and Prepaid JOA Funds.

"**Working Capital Liabilities**" means, without duplication, (a) the current liabilities of the Sellers as of immediately prior to the Effective Time; *provided* that this <u>clause (a)</u> shall include only the types of current liabilities set forth as line items under the header "Current Liabilities" on **Exhibit X**, excluding any prepetition accounts, Interim Unpaid P&A Expenses, obligations for FWE I Suspense Funds, Excluded Suspense Funds or Excluded Prepaid JOA Funds, P&A Obligations and Decommissioning expenses or any obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order, and (b) the Fieldwood Energy I Closing Accounts Payable; *provided, further*, that in no event shall Working Capital Liabilities include Effective Date Cash Obligations.

"**Working Interest**" means, with respect to each Lease and Scheduled Well, the interest that represents the ownership of the oil and gas leasehold estate created by such Lease or Scheduled Well and that is burdened with the obligation to bear and pay costs of operations on or in respect of such Lease or Scheduled Well.

[End of Annex I]

*Updated 6/10/2021*

**EXHIBITS AND SCHEDULES**

**to the**

**PURCHASE AND SALE AGREEMENT**

**AMONG**

**FIELDWOOD ENERGY LLC**

**AND**

**ITS AFFILIATES SIGNATORY HERETO**

**AS SELLERS**

**AND**

**[_____]**

**AS BUYER**

**AND**

**[_____]**

**AS BUYER 2**

**DATED**

**[_____] [____], 2021**

## EXHIBIT LIST

| Exhibit | Title |
| --- | --- |
| EXHIBIT A | Leases |
| EXHIBIT B | Easements |
| EXHIBIT C | Scheduled Wells |
| EXHIBIT D | Platforms and Facilities |
| EXHIBIT D-1 | Inventory |
| EXHIBIT E | Permits |
| EXHIBIT F | Seismic Data |
| EXHIBIT G | Form of Assignment, Bill of Sale and Conveyance for Co-Owned Assets |
| EXHIBIT H | Form of Assignment, Bill of Sale and Conveyance for Other Assets |
| EXHIBIT I | Form of Assignment and Assumption Agreement |
| EXHIBIT J | Form of Assignment of Leases and Subleases |
| EXHIBIT K | Form of Office Assets Conveyance |
| EXHIBIT L | [Reserved] |
| EXHIBIT M | [Reserved] |
| EXHIBIT N | [Reserved] |
| EXHIBIT O | [Reserved] |
| EXHIBIT P | Form of Transition Services Agreement |
| EXHIBIT Q | Form of SEMS Bridging Agreement |
| EXHIBIT R | Form of ST 308 Performance Bond |
| EXHIBIT S | Form of Release Document |
| EXHIBIT T | Form of Farmout Agreement |
| EXHIBIT U | [Reserved] |
| EXHIBIT V | [Reserved] |
| EXHIBIT W | Form of Funding Agreement |
| EXHIBIT X | Working Capital |
| EXHIBIT X-1 | Working Capital Estimate |
| EXHIBIT Y | Specified Oil and Gas Interests |

EXHIBIT Z                   Specified P&A Equipment

## **SCHEDULE LIST**

| **Schedule** | **Title** |
|---|---|
| Schedule 1.2 | Applicable Shared Asset Interests |
| Schedule 1.2(rr) | Specified Claims |
| Schedule 1.3(d) | Scheduled Exclusions |
| Schedule 4.6 | Litigation |
| Schedule 4.7 | Governmental Approvals |
| Schedule 4.8(a) | Preferential Rights |
| Schedule 4.8(b) | Applicable Consents |
| Schedule 4.9 | Taxes |
| Schedule 4.9(p) | Entity Classifications |
| Schedule 4.12 | Environmental Matters |
| Schedule 4.13 | Payments |
| Schedule 4.14 | Material Contracts |
| Schedule 4.14(c) | Leases and Easements |
| Schedule 4.15 | Imbalances |
| Schedule 4.16(a) | AFEs |
| Schedule 4.16(b) | Cash Calls |
| Schedule 4.18 | Employee Benefits |
| Schedule 4.19 | Non-Consent Operations |
| Schedule 4.20 | Suspense Funds |
| Schedule 4.21 | Payout Balances |
| Schedule 4.22 | Title Matters |
| Schedule 4.22(d) | Owned Real Property |
| Schedule 4.23 | Insurance |
| Schedule 4.24 | Related Party Transactions |
| Schedule 4.25(a) | Owned Intellectual Property |
| Schedule 4.27 | Material Liabilities |

| **Schedule** | **Title** |
|---|---|
| Schedule 4.28(b) | Absence of Certain Changes |
| Schedule 4.31(c) | Equity Interests of Fieldwood Mexico and Subsidiaries |
| Schedule 4.31(d) | Fieldwood U.A. Interests |
| Schedule 4.31(f) | Fieldwood U.A. Liabilities |
| Schedule 5.1(c) | Buyer Grandparent Equity Interests |
| Schedule 5.7 | Buyer Governmental and Third Person Consents |
| Schedule 6.1(a) | Sellers' Required Operations |
| Schedule 6.1(b) | Sellers' Disallowed Operations |
| Schedule 6.7(g) | Required Assigned 365 Contracts |
| Schedule 6.22 | Seller Employees |
| Schedule 7.3(i) | Required Novations |
| Schedule 7.3(l) | Required Governmental Approvals |
| Schedule 10.13(a) | Existing D&O Indemnification Terms |
| Schedule 10.13(e) | D&O Indemnified Parties |
| Schedule 10.14 | Right of Use Easements (RUEs) |

[End of List of Exhibits and Schedules]

# Exhibit A
# Leases[1]

## Part 1.  Co-Owned Leases

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|---|---|---|---|---|---|---|---|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 32 (S/2) | OCS-00174 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in S/2 of Block 32, Grand Isle Area, from 12,756' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in S/2 of Block 32, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 39 (E/2) | OCS-00126 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in W/2 of Block 39, Grand Isle Area, from 12,256' TVDSS to 18,000' TVDSS | |
| | | | | | BP E&P | 25% operating rights in W/2 of Block 39, Grand Isle Area, from 18,000' feet TVDS to 99,999' TVDS | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 39 (W/2) | OCS-00127 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in W/2 of Block 39, Grand Isle Area, from 12,256' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in W/2 of Block 39, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 40 | OCS-00128 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 40, Grand Isle Area, from 12,469' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 40, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |

---

[1] The references in this Exhibit A to Field, Seller, Operator, Interest in Lease and Lease Status are not intended to limit in any way the scope of any Assigned Interests or who is a Seller with respect to any Lease.

[2] Unless otherwise indicated on this exhibit, no operating rights for any OCS lease that is listed in either table of this exhibit as to which a Seller is listed as having a record title interest have been severed from the record title for such lease.

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|-------|-------|-------|------|--------|----------|---------------------|--------------|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 41 (E/2) | OCS-00129 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in E/2 of Block 41, Grand Isle Area, from 14,123' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in E/2 of Block 41, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 41 (W/2) | OCS-00130 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in W/2 of Block 41, Grand Isle Area, from 14,123' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in W/2 of Block 41, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 42 | OCS-00131 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 42, Grand Isle Area, from 12,504' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 42, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 43 | OCS-00175 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 43, Grand Isle Area, from 12,830' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 43, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 44 (N/2) | OCS-00176 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in N/2 of Block 44, Grand Isle Area, from 13,102' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in N/2 of Block 44, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |

WEIL:\97869848\12\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|-------|-------|-------|------|--------|----------|---------------------|--------------|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 46 | OCS-00132 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 46, Grand Isle Area, from 12,792' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 46, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 47 | OCS-00133 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 47, Grand Isle Area, from 15,742' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 47, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 48 | OCS-00134 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 48, Grand Isle Area, from 16,812' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 48, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 52 (N/2) | OCS-00177 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | BP E&P | 25% operating rights in N/2 of Block 52, Grand Isle Area, as to all depths below 17,651 feet TVDSS down to 99,999 feet TVDSS | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 67 (S/2) | OCS-00179 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in S/2 of Block 67, West Delta Area, from 11,650' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in S/2 of Block 67, West Delta Area, as to depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 68 (S/2) | OCS-00180 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in S/2 of Block 68, West Delta Area, from 13,225' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in S/2 of Block 68, West Delta Area, as to depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | |

Exhibit A – Page 3

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | | Lease Status |
|---|---|---|---|---|---|---|---|---|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 69 | OCS-00181 | Federal | FEO | GOM Shelf | 25% record title | | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 69, West Delta Area, from 13,102' TVDSS to 18,000' subsea (TVDS) | | |
| | | | | | BP E&P | 25% operating rights in all of Block 69, West Delta Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 70 | OCS-00182 | Federal | FEO | GOM Shelf | 25% record title | | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 70, West Delta Area, from 13,182' TVDSS to 18,000' subsea (TVDS) | | |
| | | | | | BP E&P | 25% operating rights in all of Block 70, West Delta Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 71 | OCS-00838 | Federal | FEO | GOM Shelf | 25% record title | | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 71, West Delta Area, from 13,357' TVDSS to 18,000' SSTVD | | |
| | | | | | BP E&P | 25% operating rights in all of Block 71, West Delta Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 94 | OCS-00839 | Federal | FEO | GOM Shelf | 25% record title | | PROD |
| | | | | | | 25% operating rights in all of Block 94, West Delta Area, from 13,159' SSTVD to 99,999' SSTVD | | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 95 | OCS-G 01497 | Federal | FEO | GOM Shelf | 25% record title | | PROD |
| | | | | | | 25% operating rights in the S1/2SE1/4; S1/2N1/2SE1/4; SE1/4SW1/4; S1/2SW1/4SW1/4 of Block 95, West Delta Area, from the surface of the earth down to and including 7,369 feet subsea | | |
| | | | | | | 25% operating rights in N1/2; N1/2N1/2SE1/4; N1/2SW1/4; N1/2SW1/4SW1/4 of Block 95, West Delta Area, from 13,601' SSTVD to 99,999' SSTVD | | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 96 | OCS-G 01498 | Federal | FEO | GOM Shelf | 25% record title | | PROD |
| | | | | | GOM Shelf | 25% operating rights in all of Block 96, West Delta Area, from 13,399' TVDSS to 18,000' SSTVD | | |
| | | | | | BP E&P | 25% operating rights in all of Block 96, West Delta Area, from 18,000' TVDSS to 99,999' TVDSS | | |
| Grand Isle 110/116 | GI 110 | OCS-G 13943 | Federal | FEO | Fieldwood | 50% record title | | UNIT |

Exhibit A – Page 4

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|---|---|---|---|---|---|---|---|
| Grand Isle 110/116 | GI 116 | OCS-G 13944 | Federal | FEO | Fieldwood | 50% record title<br>50% operating rights as to depths from 19,402' SSTVD to 99,999' SSTVD | UNIT |
| Mississippi Canyon 109 | MC 110 | OCS-G 18192 | Federal | FEO | Fieldwood | 8.33334% record title<br>8.33334% operating rights in all of Block 110, Mississippi Canyon, from 6,688' TVDSS to 99,999' TVDSS | PROD |
| South Marsh Is. 39 | SM 48 | OCS-00786 | Federal | Fieldwood | Fieldwood | 3.0% ORRI as to production from the OCS 786 E002 ST1 well (API No. 17-707-20028-01), OCS 786 E003 ST1 BP1 well (API No. 17-707-20033-02), OCS 786 E004 ST1 well (API No. 17-707-20040-01) and OCS 786 E007 well (API No. 17-707-40923-00)[3] | PROD |
| South Marsh Is. 40/41/44 | SM 41 | OCS-G 01192 | Federal | FEO | FEO (in part) and Sanare Energy Partners, LLC (in part) | 100.0% operating rights in E1/2 of Block 41, South Marsh Island Area, from the surface of the earth down to 11,500' TVD | PROD |
| South Marsh Is. 136/137/149/150 | SM 149 | OCS-G 02592 | Federal | FEO | Fieldwood | 50% record title<br>4.2% ORRI as to production from the South Marsh Island 149 #D001 well (API 177084094401)<br>50% operating rights in all of Block 149, South Marsh Island Area, South Addition, from 7,386' SSTVD to 99,999' SSTVD | PROD |
| South Pass 60 | SP 61 | OCS-G 01609 | Federal | FEO | Fieldwood | 18.8% ORRI[4] | UNIT |
| South Timbalier 53/67/68 | ST 53 | OCS-G 04000 | Federal | FEO | Fieldwood | 50% record title<br>50% operating rights in all of Block 53, South Timbalier Area, from the surface to 6,782' SSTVD<br>50% operating rights in all of Block 53, South Timbalier Area, from 6,782' SSTVD to 99,999' SSTVD. | PROD |
| South Timbalier 53/67/68 | ST 67 | OCS-00020 | Federal | Dynamic Offshore Resources NS | Fieldwood | 20.334% contractual working interest in all of Block 67, South Timbalier Area | UNIT |

[3] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.
[4] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.

Exhibit A – Page 5

## Part 2.  Other Leases

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Breton Sound 25 | BS 25 (portion) | 19718 | SL- LA | FEO | -- | 25% working interest | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 1190, Page 672, File No. 2008-00005015 | |
| Breton Sound 25 | BS 25 (portion) | OCS-G 31442 | Federal | FEO | Tana Exploration | 25% record title | UNIT |
| Breton Sound 52/53 Fed / SL La | BS 45 (portion) | 15683 | SL- LA | FEO | – | 37.5% working interest in that portion of the lease within the boundary of the UV B RA VUA from the depths between 10,596' MD and 10,822' MD in the electric log for the Century – SL 17675 #1 well | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 908, Page 425, Entry No. 80 | |
| Breton Sound 52/53 Fed / SL La | BS 52 (portion) | 17675 | SL- LA | FEO | – | 37.5% working interest insofar and only insofar as said lease covers depths between 10,596' measured depth and 10,822' measured depth in the electric log for the Century-UV B RA VUA; SL 17675 #1 well | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 1038, Page 318, File No. 03000546 | |
| Breton Sound 52/53 Fed / SL La | BS 52 (portion) | 17860 | SL- LA | FEO | – | 15% working interest from the base of the UV3 B1 Sand and below within the confines of the VUC 387.59 acres | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 1055, Page 632, File No. 03007020 | |
| East Cameron 345 | EC 345 | OCS-G 15156 | Federal | FEO | Talos ERT LLC | 0.8% ORRI | PROD |
| Green Canyon 64/65/108/109/243 | GC 243 | OCS-G 20051 | Federal | FEO | Hess (in part) and Walter (in part) | 4.655% ORRI insofar as the lease covers (i) the NW1/4SW/4 and S/2S/2 of Block 243, Green Canyon, from the surface to a total vertical depth of 20,500' subsea and (ii) the N1/2, NE1/4SW1/4 and N1/2SE1/4 of Block 243, Green Canyon, from the surface to a total vertical depth of 24,000' subsea (other than for the well specified below) | PROD |
| | | | | | | 3.92% ORRI in the Green Canyon 243 SS 005 ST01 BP00 (API #608114045701), increasing to 4.655% upon the production of 5.8 million barrels of oil equivalent from this well | |
| High Island 176 | HI 176 | OCS-G 27509 | Federal | FEO | Castex Offshore | 2.5% ORRI | PROD |
| Onshore/ State | - | 23017 | SL-MS | FW SD | Tellus Operating | 0.5% ORRI | |

WEIL:\97869848\12\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Lease | | | | | Group LLC | | |
| | | | | | | recorded in Wayne County, Mississippi | |
| Onshore/ State Lease | - | 170650 | SL-MS | FW SD | Whiting Oil & Gas | 0.7% ORRI | |
| | | | | | | recorded in Jasper County, Mississippi | |
| Onshore/ State Lease | - | 230140 | SL-MS | FW SD | Black Jack Oil Co | 0.5% ORRI | |
| | | | | | | recorded in Franklin County, Mississippi | |
| Onshore/ State Lease | - | 230150 | SL-MS | FW SD | Wilcox Energy Co | 0.5% ORRI | |
| | | | | | | recorded in Franklin County, Mississippi | |
| Onshore/ State Lease | - | 231240 | SL-MS | FW SD | Wilcox Energy Co | 0.5% ORRI | |
| | | | | | | recorded in Franklin County, Mississippi | |
| Ship Shoal 79/80 | SS 79 | OCS-G 15277 | Federal | FEO | ANKOR Energy (in part) and FEO (in part) | 33% record title | PROD |
| | | | | | | 51% operating rights in all of Block 79, Ship Shoal Area, from the surface to one hundred feet below the stratigraphic equivalent of 11,318' true vertical depth as seen in the electric log for the electric log dated March 7, 2001 for the OCS-G 15277 Well No. 2 | |
| Ship Shoal 301[5] | SS 301 | OCS-G 10794 | Federal | FEO | FEO | 65% record title | SOP thru 1/31/2021 |
| | | | | | | 100% operating rights in all of Block 301, Ship Shoal Area, from the surface down to and including a depth of 13,000' total vertical depth | |
| Vermilion 78 | VR 78 | OCS-G 04421 | Federal | Fieldwood | Fieldwood | 37.5% record title | PROD |
| | | | | FEO | | 62.5% record title | |
| | | | | Fieldwood | | 18.75% operating rights in all of Block 78, Vermilion Area, from 11,953' TVDSS to 99,999' TVDSS | |
| | | | | FEO | | 62.5% operating rights in all of Block 78, Vermilion Area, from 11,953' TVDSS to 99,999' TVDSS | |
| Vermilion 229 | VR 229 | OCS-G 27070 | Federal | FEO | FEO | 50.0% record title as to E1/2; E1/2W1/2 of Block 229, Vermilion Area | PROD |
| | | | | | Tana Exploration | 50.0% record title as to W1/2W1/2 of Block 229, Vermilion Area | |
| Vermilion 362/371 | VR 362 | OCS-G 10687 | Federal | Fieldwood | FEO | 33.33333% record title | UNIT |
| | | | | Bandon | | 66.66667% record title | |

[5] Fieldwood's overriding royalty interest in this lease is not being conveyed hereunder.

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| | | | | Fieldwood | | 16.66667% operating rights in all of Block 362, Vermilion Area, South Addition, from 11,535' TVDSS to 99,999' TVDSS | |
| | | | | Bandon | | 66.66667% operating rights in all of Block 362, Vermilion Area, South Addition, from 11,535' TVDSS to 99,999' TVDSS | |
| Vermilion 362/371 | VR 363 | OCS-G 09522 | Federal | Fieldwood | (see below) | 100% record title | UNIT |
| | | | | Fieldwood | FEO | 33.33333% operating rights in the SE/4 of Block 363, Vermilion Area, South Addition | |
| | | | | Bandon | | 66.66667% operating rights in the SE/4 of Block 363, Vermilion Area, South Addition | |
| | | | | Fieldwood | Fieldwood | 100% operating rights in the N1/2; SW1/4 of Block 363, Vermilion Area, South Addition, from the surface to 10,180' SSTVD | |
| | | | | Fieldwood | Fieldwood | 50% operating rights in the N1/2; SW1/4 of Block 363, Vermilion Area, South Addition, from 10,180' SSTVD to 99,999' SSTVD | |
| Vermilion 362/371 | VR 371 | OCS-G 09524 | Federal | Fieldwood | FEO | 33.33333% record title | UNIT |
| | | | | Bandon | | 66.66667% record title | |
| | | | | Fieldwood | | 16.66667% operating rights in all of Block 371, Vermilion Area, South Addition, from 11,820' SSTVS to 99,999' SSTVD | |
| | | | | Bandon | | 66.66667% operating rights in all of Block 371, Vermilion Area, South Addition, from 11,820' SSTVS to 99,999' SSTVD | |
| West Delta 79/80 | WD 57, WD 79, WD 80 | OCS-G 01449 | Federal | Fieldwood | FEO | 2.5% ORRI[6] | UNIT |
| West Delta 79/80 | WD 79, WD 80 | OCS-G 01874 | Federal | Fieldwood | FEO | 2.5% ORRI[7] | UNIT |
| West Delta 79/80 | WD 80 | OCS-G 01989 | Federal | Fieldwood | FEO | 2.5% ORRI[8] | UNIT |

---

[6] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.
[7] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.
[8] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.

Exhibit A – Page 8

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| West Delta 79/80 | WD 80 | OCS-G 02136 | Federal | Fieldwood | FEO | 2.5% ORRI[9] | UNIT |
| - | - | 5749 | SL- TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | UNIT |
| - | | 5797 | SL-TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | TERMIN |
| - | | 24318 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| High Island 30/31 L (SL TX) | - | 106158 | SL-TX | FEO | FEO | 100% working interest (lease recorded in Jefferson County, Texas) | TERMIN |
| High Island 30/31 L (SL TX) | - | 106159 | SL-TX | FEO | FEO | 100% working interest (lease recorded in Jefferson County, Texas) | TERMIN |
| High Island 30/31 L (SL TX) | - | 114921 | SL-TX | FEO | FEO | 100% working interest (lease recorded in Jefferson County, Texas) | TERMIN |
| - | | 172915 | SL-TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | ACTIVE |
| - | | 172916 | SL-TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | ACTIVE |
| - | | 178537 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| - | | 183756 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| - | | 185633 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| - | | 186891 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 191681 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 207398 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 227360 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 234082 | SL-TX | Fieldwood | Fieldwood Onshore | 100% working interest (lease recorded in Galveston | TERMIN |

[9] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.

WEIL:\97869848\12\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| | | | | Onshore | | County, Texas) | |
| - | | 255675 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| Annapolis Valley | MC 380 | OCS-G 36544 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Annapolis Valley | MC 424 | OCS-G 36545 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Bartolome | MC 563 | OCS-G 21176 | Federal | Fieldwood | Fieldwood | 23.25% operating rights in all of Block 563, Mississippi Canyon, as to depths from below 19,000' down to 99,999' TVDSS | PROD |
| | | | | FEO | Kosmos Energy GOM Operations | 0.465% ORRI insofar as the lease covers all of Block 563, Mississippi Canyon, limited to depths from the surface to 19,000' TVDSS | |
| Boris | GC 282 | OCS-G 16727 | Federal | Fieldwood | BHP Billiton Petroleum (GOM) | 25% operating rights in all of Block 282, Green Canyon, from 16,700' TVD to 99,999' TVD | PROD |
| | | | | FEO | Energy Resource Technology GOM | 1.75% ORRI insofar as the lease pertains to depths from 0 to 16,999' TVD | |
| Deep Blue | GC 679 | OCS-G 21811 | Federal | Fieldwood | | 37.5% record title | PROD |
| | | | | | Anadarko Petroleum Corporation | 0% operating rights in E1/2 of Block 679, Green Canyon Area, limited in depth from the surface down to the stratigraphic equivalent of 16,048' TVD (17,315' MD) as seen in the Kerr-McGee OCS-G 21811 No. 1 (ST#1) well | |
| | | | | | Eni US Operating Co. Inc. | 0% operating rights in W1/2 of Block 679, Green Canyon Area, limited in depth from the surface down to 16,048' TVD | |
| | | | | | Fieldwood | 43.125% operating rights in all of Block 679, Green Canyon, below 16,048' TVD to 99,999' TVD | |
| Emory Peak | MC 743 | OCS-G 36401 | Federal | Fieldwood | Chevron USA | 25% record title | PRIMARY |

Exhibit A – Page 10

WEIL:\97869848\12\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| Ewing Bank 834 (Coelacanth) | EW 789 | OCS-G 35805 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease cover the SE/4 of Block 789, Ewing Bank, from the surface to 26,000' SSTVD | UNIT |
| Ewing Bank 834 (Coelacanth) | EW 790 | OCS-G 33140 | Federal | Fieldwood | Fieldwood | 100.0% operating rights in  SW1/4SW1/4; S1/2SE1/4SW1/4; S1/2SW1/4SE1/4 and NW1/4SE1/4SW1/4 of Block 790, Ewing Bank, limited to depths from below 26,000' TVDSS to 99,999' TVDSS | UNIT |
| | | | | | | 100.0% operating rights in N1/2; N1/2S1/2; SE1/4SE1/4; N1/2SW1/4SE1/4 and N1/4SE1/5SW1/4 of Block 790, Ewing Bank, from the surface to 99,999' TVDSS | |
| | | | | | | 1.3% ORRI insofar as the lease covers SW1/4SW1/4; S1/2SE1/4SW1/4; S1/2SW1/4SE1/4; NW1/4SE1/4SW1/4 of Block 790, Ewing Bank, from surface down to and including 26,000' TVDSS | |
| Ewing Bank 834 (Coelacanth) | EW 834 | OCS-G 27982 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease covers NE1/4, NW1/4NW1/4, N/2SE1/4NE1/4 and NE/4NE/4 of Block 834, Ewing Bank, from the surface down to 26,000' TVDSS | UNIT |
| Ewing Bank 834 (Coelacanth) | EW 835 | OCS-G 33707 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease covers the North 7800' of Block 835, Ewing Bank, from the surface down to 26,000' TVDSS | UNIT |
| Ewing Bank 834 (Coelacanth) | MC 793 | OCS-G 33177 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease covers the W1/2W1/2NW1/4 of Block 793, Mississippi Canyon, from the surface down to 26,000' TVDSS | UNIT |
| Fandango | MC 297 | OCS-G 34434 | Federal | Fieldwood | Fieldwood | 70% record title | PRIMARY |

Exhibit A – Page 11

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| Galapagos | MC 519 | OCS-G 27278 | Federal | Fieldwood | BP E&P (in part) and Fieldwood (in part) | 65.0% record title | PROD |
| | | | | | | 49% operating rights in SW1/4 of Block 519, Mississippi Canyon, from the surface down to and including 99,999' TVDSS | |
| | | | | | | 49% operating rights in S1/2NW1/4 of Block 519, Mississippi Canyon, from the surface down to and including 14,000' | |
| | | | | | | 25.75% operating rights in S1/2; S1/2SE1/4NE1/4 of Block 519, Mississippi Canyon, from depths below 19,300' TVDSS down to and including 99,999' TVDSS | |
| | | | | | | 25.75% operating rights in S1/2NW1/4 of Block 519, Mississippi Canyon, from depths below 14,000' TVDSS down to and including 99,999' TVDSS | |
| | | | | | | 25.75% operating rights in N1/2NW1/4; N1/2NE1/4; SW1/4NE1/4 and N1/2SE1/4NE1/4 of Block 519, Mississippi Canyon, from the surface down to and including 99,999' TVDSS | |
| Green Canyon 39/40 (Katmai) | EW 1009 | OCS-G 34878 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | EW 1010 | OCS-G 34879 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | EW 1011 | OCS-G 34880 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | GC 39 A | OCS-G 34966 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | GC 39 B | OCS-G 36476 | Federal | Fieldwood | Fieldwood | 50% record title | PRIMARY |
| Green Canyon 39/40 (Katmai) | GC 040 | OCS-G 34536 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | GC 041 | OCS-G 34537 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 64/65/108/109/243 | GC 064 | OCS-G 34539 | Federal | FEO | FEO | 49% record title | PROD |
| Green Canyon 64/65/108/109/243 | GC 065 | OCS-G 05889 | Federal | FEO | FEO | 49% operating rights in all of Block 65, Green Canyon, from the surface of the earth down to and including the depth of 99,999 feet | UNIT |

Exhibit A – Page 12

WEIL:\97869848\12\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| Green Canyon 64/65/108/109/243 | GC 108 | OCS-G 14668 | Federal | FEO | FEO | 49% operating rights in all of Block 108, Green Canyon, from the surface of the earth down to and including the depth of 99,999 feet | UNIT |
| Green Canyon 64/65/108/109/243 | GC 109 | OCS-G 05900 | Federal | FEO | FEO | 49% operating rights in all of Block 109, Green Canyon, from the surface of the earth down to and including the depth of 99,999 feet | UNIT |
| Green Canyon 200 (Troika & Orlov) | GC 200 | OCS-G 12209 | Federal | FEO | FEO | 100% record title | UNIT |
| | | | | | | 53.33333% operating rights in NW1/4SE1/4; SE1/4NE1/4; E1/2SE1/4NW1/4; S1/3NE1/4NW1/4; W1.2E1/2SE1/4NW1/4; NE1/4SW1/4SE1/4; SW1/4NW1/4NE1/4 of Block 200, Green Canyon, as to all depths from surface to 17,518' TVDSS | |
| Green Canyon 200 (Troika)[10] | GC 201 | OCS-G 12210 | Federal | FEO | FOE | 100% record title as to the W/2 and SE/4 of Block 201, Green Canyon | UNIT |
| | | | | | LLOG Exploration | 4.87999% ORRI insofar as the lease covers the NE1/4 of Block 157, Green Canyon, from the surface to 17,000' subsea TVD | |
| Green Canyon 200 (Troika) | GC 244 | OCS-G 11043 | Federal | FEO | FOE (in part) and Deepwater Abandonment Alternatives, Inc. (in part) | 100% record title | UNIT |
| | | | | | | 0% operating rights as to all of Block 244, Green Canyon, as to those depths from 16,000 feet true vertical depth subsea down to 24,000 feet true vertical depth subsea | |
| Gunflint | MC 904 | OCS-G 36566 | Federal | Fieldwood | Fieldwood | 58.9363% record title | PRIMARY |
| Gunflint | MC 905 | OCS-G 36405 | Federal | Fieldwood | Fieldwood | 58.9363% record title | PRIMARY |
| Hagerman | MC 789 | OCS-G 36557 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Isabela N (Miocene) | MC 474 | OCS-G 35825 | Federal | Fieldwood | BP E&P | 24.33333% record title | PRIMARY |
| | | | | | | 0% operating rights in all of Block 474, Mississippi Canyon, from depths below 20,000' TVDSS down to and including 99,9999' TVDSS | |

---

[10] As to this Other Lease, no interest in the operating rights or record title as to the NE1/4 of Block 201, Green Canyon, is being conveyed hereunder.

Exhibit A – Page 13

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Isabela N (Miocene) | MC 518 | OCS-G 35828 | Federal | Fieldwood | BP E&P | 24.33333% record title | PRIMARY |
| | | | | | | 0% operating rights in all of Block 518, Mississippi Canyon, from depths below 19,500' TVDSS down to and including 99,9999' TVDSS | |
| Little Burn | GC 238 | OCS-G 26302 | Federal | Fieldwood | BHP Billiton Petroleum (GOM) | 40% operating rights in all of Block 238, Green Canyon, from 16,700' TVD to 99,999' TVD | PROD |
| | | | | FEO | Talos ERT LLC | 2.8% ORRI insofar as the lease pertains to depths from 0 to 16,999' TVD | |
| Mississippi Canyon 562 (Isabela) | MC 562 | OCS-G 19966 | Federal | Fieldwood | BP E&P | 12.5% record title | PROD |
| | | | | | | 0% operating rights in N/2 of Block 562, Mississippi Canyon, from the surface to 19,500' TVDSS | |
| | | | | | | 0% operating rights in all of Block 562, Mississippi Canyon, from depths below 19,500' TVDSS down to and including 99,999' TVDSS | |
| | | | | | | 0% operating rights in S/2 of Block 562, Mississippi Canyon, from depths below 20,000' TVDSS down to and including 99,999' TVDSS | |
| Mississippi Canyon 698 (Big Bend) | MC 697 A | OCS-G 28021 | Federal | Fieldwood | Fieldwood | 54% record title | UNIT |
| Mississippi Canyon 698 (Big Bend) | MC 698 | OCS-G 28022 | Federal | Fieldwood | Fieldwood | 54% record title | UNIT |
| Mississippi Canyon 698 (Big Bend) | MC 742 | OCS-G 32343 | Federal | Fieldwood | Fieldwood | 100% record title in NE1/4; S1/2 of Block 742, Mississippi Canyon | UNIT |
| | | | | | | 54% record title in NW1/4 of Block 742, Mississippi Canyon | |
| Mississippi Canyon 782 (Dantzler) | MC 782 | OCS-G 33757 | Federal | Fieldwood | Fieldwood | 45% record title | PROD |
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 948 | OCS-G 28030 | Federal | Fieldwood | Fieldwood | 58.9363% record title | UNIT |
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 949 | OCS-G 32363 | Federal | Fieldwood | Fieldwood | 58.9363% record title | UNIT |
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 992 | OCS-G 24133 | Federal | Fieldwood | Fieldwood | 58.9363% record title in N1/2 of Block 992, Mississippi Canyon | UNIT |
| | | | | | | 52.94% record title in S1/2 of Block 992, Mississippi Canyon | |

Exhibit A – Page 14

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 993 | OCS-G 24134 | Federal | Fieldwood | Fieldwood | 58.9363% record title in N1/2 of Block 993, Mississippi Canyon | UNIT |
| | | | | | | 45% record title in S1/2 of Block 993, Mississippi Canyon | |
| Mt. Driskill | MC 691 | OCS-G 36400 | Federal | Fieldwood | Fieldwood | 50% record title | PRIMARY |
| Murrayfield | MC 118 | OCS-G 35963 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 119 | OCS-G 36537 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 162 | OCS-G 36880 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 163 | OCS-G 36538 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 206 | OCS-G 36540 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Scaramanga | MC 171 | OCS-G 34428 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Scaramanga | MC 172 | OCS-G 34429 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Schooner | MC 435 | OCS-G 36772 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Schooner | MC 436 | OCS-G 36773 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| South Marsh Is. 40/41/44 | SM 40 | OCS-G 13607 | Federal | FEO | FEO | 100% record title | TERMIN |
| South Timbalier 308 / Ewing Bank 873 | ST 287 | OCS-G 24987 | Federal | Fieldwood | Fieldwood | 100% record title | PROD |
| | | | | | | 100% operating rights in all of Block 287, South Timbalier Area, South Addition, from the surface to 13,852' SSTVD | |
| | | | | | | 50% operating rights in all of Block 287, South Timbalier Area, South Addition, from 13,852' SSTVD to 99,999' SSTVD | |
| South Timbalier 308 / Ewing Bank 873 | ST 308 | OCS-G 21685 | Federal | Fieldwood | Fieldwood | 100% record title | PROD |
| | | | | | | 100% operating rights in all of Block 308, South Timbalier Area, South Addition, from the surface to 18,571' SSTVD | |
| | | | | | | 50% operating rights in all of Block 308, South Timbalier Area, South Addition, from 18,571' SSTVD to 99,999' SSTVD | |
| Steamboat | GC 153 | OCS-G 36814 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Talon | GC 198 | OCS-G 36021 | Federal | FEO | FEO | 100% record title | PRIMARY |
| Tarantula | EW 828 | OCS-G 35806 | Federal | FEO | FEO | 100% record title | PRIMARY |

Exhibit A – Page 15

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Ticonderoga | GC 768 | OCS-G 21817 | Federal | Fieldwood | (see below) | 100% record title | PROD |
| | | | | | Anadarko | 50% operating rights in all of Block 768, Green Canyon, from the surface to the stratigraphic equivalent of 13,370' subsea TVD in the OCS-G 21817 #1 Well | |
| | | | | | Fieldwood | 43.125% operating rights in all of Block 768, Green Canyon, below the stratigraphic equivalent of 13,370' subsea TVD in the OCS-G 21817 #1 Well down to a depth of 40,000' subsea TVD | |
| Umbrella Point | - | 5752 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| Umbrella Point | - | 140960 | SL - TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100% record title | TERMIN |
| WILDCAT - ACOM O.H. ESTATE | - | 165888 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 186892 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 176012 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 179673 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 188919 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 188921 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 269151 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| - | MP 316 | OCS-G 36231 | Federal | FEO | FEO | 50.0% record title | PRIMRY |
| - | SS 313 | OCS-G 36362 | Federal | Fieldwood | Fieldwood | 100.0% record title | PRIMRY |
| - | SS 358 | OCS-G 36122 | Federal | FEO | FEO | 100% record title | PRIMRY |

[End of Exhibit A]

WEIL:\97869848\12\45327.0007

**Exhibit B**
**Easements**

## Part 1.  Co-Owned Easements

| ROW Number | Seller | Segment Number | Originating Area | Originating Block | Originating Name | Receiving Area | Receiving Block | Receiving Name | Size (inch) | Product | Status | Associated Lease | Undivided interest to be assigned to Buyer |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G03432 | Fieldwood | 4647 | SM | 149 | 6"SSTI | SM | 132 | B | 6 | BLKO | Active | G02592 | 50% |
| G09319 | Fieldwood | 5890 | ST | 53 | A | ST | 52 | A | 6 | OIL | Active | G04000 | 50% |
| G12304 | GOM Shelf | 9084 | GI | 43 | AS | GI | 19 | F/S | 10 | OIL | Active | 00175 | 25% |
| G28385 | Fieldwood | 17265 | ST | 68 | Caisson No. 1 | ST | 53 | A | 6 | BLKO | Active | G04000 | 20.334% |

### RUEs related to Co-Owned Leases

| RUE Number | Area | Block No. | Structure | Complex ID No. | FW Lease | Operator | Approval Date | Associated Assets | Party to hold RUE on behalf of Buyer and Fieldwood Energy I | Undivided interest for which Buyer is to be responsible |
|---|---|---|---|---|---|---|---|---|---|---|
| G30267 | ST | 68 | CAISS. #1 | 24108 | 00020 | Fieldwood | 03/09/18 | ST 67 #6 | Buyer | 20.334% |
| G30329 | SM | 132 | B | 21982 | G02592 G02588 | Fieldwood | 5/06/19 | SM 136 C 007, SM 149 C001, C002 & C004 | Fieldwood Energy I | 50% |

## Part 2.  Other Easements

| ROW Number | Seller | Segment Number | Originating Area | Originating Block | Originating Name | Receiving Area | Receiving Block | Receiving Name | Size (inch) | Product | Status | Associated Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G09330 | FEO | 8204 | SS | 80 | A | EI | 125 | 30 SSTI | 6 | G/C | Active | G15277 |
| G15047 | Bandon | 10675 | VR | 371 | A | VR | 350 | 08 SSTI | 6 | OIL | Active | G09524 |

WEIL:\97869848\12\45327.0007

| ROW Number | Seller | Segment Number | Originating Area | Originating Block | Originating Name | Receiving Area | Receiving Block | Receiving Name | Size (inch) | Product | Status | Associated Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G16055 | FEO | 11050 | SS | 301 | A | SS | 300 | B | 8 | BLKO | Active | G10794 |
| G23712 | Fieldwood | 13736 | SS | 79 | #2 | SS | 80 | A | 4 | BLKO | Active | G15277 |
| G23713 | Fieldwood | 13737 | SS | 79 | #2 | SS | 80 | A | 4 | BLKO | Active | G15277 |
| G28816 | Fieldwood | 14292 | SM | 40 | JA | SM | 40 | 10"SSTI | 6 | OIL | Active | G13607 |
| G28817 | Fieldwood | 14293 | SM | 40 | B | SM | 40 | JA | 6 | BLKO | Active | G13607 |
| G28818 | Fieldwood | 14294 | SM | 40 | B | SM | 40 | JA | 6 | BLKO | Active | G13607 |
| G28819 | Fieldwood | 14295 | SM | 40 | JA | SM | 40 | B | 2 | LIFT | Active | G13607 |
| G09349 | FEO | 8255 | GC | 65 | A | GC | 19 | A | 12 | OIL | Active | G05889 |
| G17737 | FEO | 11393 | GC | 200 | SS Manifold | GC | 65 | A | 10 | BLKO | Active | G12210 |
| | | 11394 | GC | 200 | SSMANIFO | GC | 65 | A | 24 | CSNG | Active | G12210 |
| | | 11395 | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Active | G12210 |
| | | 11959 | GC | 200 | SSMANIFO | GC | 65 | A | 2 | UMB | Active | G12210 |
| G17738 | FEO | 11396 | GC | 200 | SSMANIFO | GC | 65 | A | 10 | BLKG | Active | G12210 |
| | | 11397 | GC | 200 | SSMANIFO | GC | 65 | A | 24 | CSNG | Active | G12210 |
| | | 11410 | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Active | G12210 |
| | | 12141 | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Proposed | G12210 |
| G17685 | FEO | 11260 | GC | 65 | A | GC | 19 | A | 16 | OIL | Active | G05889 |
| G28736 | Fieldwood | 19154 | MC | 948 | PLET NPL3 HUB | MC | 724 | Gulfstar 1 SPAR | 8 | BLKO | Active | G28030 |
| | | 19365 | MC | 948 | PLET NPL3 HUB | MC | 767 | ILS NPL1 | 12 | CSNG | Active | G28030 |
| | | 19374 | MC | 948 | PLET NPL3 HUB | MC | 948 | PLET SPL2 HUB | 8 | BLKO | Active | G28030 |
| G28809 | FEO | 20222 | GC | 244 | PLEM A | GC | 156 | Mid-Line PLET A-1 | 8 | BLKO | Proposed | G11043 |
| G28820 | FEO | 20197 | GC | 156 | PLET 2 | GC | 156 | A-2 PLET | 8 | BLKO | Active | G12209 |
| G29287 | FEO | 19155 | MC | 948 | PLET SPL2 HUB | MC | 724 | Gulfstar 1 SPAR | 8 | BLKO | Active | G28030 |
| | | 19362 | MC | 724 | Gulfstar 1 Spar | MC | 948 | UTA1 | 8 | UMB | Active | G28030 |
| | | 19432 | MC | 948 | PLET SPL2 | MC | 768 | ILS SPL1 | 12 | CSNG | Active | G28030 |

WEIL:\97869848\12\45327.0007

| ROW Number | Seller | Segment Number | Originating Area | Originating Block | Originating Name | Receiving Area | Receiving Block | Receiving Name | Size (inch) | Product | Status | Associated Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G29294 | Fieldwood | 19282 | MC | 736 | A Thunderhawk | MC | 782 | Dan 1 STUA 1 | 6 | UBEH | Active | G33757 |
|  |  | 19296 | MC | 698 | RGl PLET 1 | MC | 736 | A Thunderhawk | 12 | CSNG | Active | G28022 |
| G29295 | Fieldwood | 19097 | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 8 | BLKO | Active | G28022 |
|  |  | 19149 | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 8 | BLKO | Active | G28022 |
|  |  | 19283 | MC | 736 | A Thunderhawk | MC | 698 | BBD SUTA | 6 | UMB | Active | G28022 |
|  |  | 19364 | MC | 698 | RGL PLET 1 | MC | 736 | A | 12 | CSNG | Active | G28022 |
| G29299 | Fieldwood | 19297 | MC | 736 | A Thunderhawk | MC | 692 | North Plet | 1 | LIFT | Active | G28022 |
|  |  | 19334 | MC | 736 | A Thunderhawk | MC | 692 | SUTA | 5 | UMBH | Active | G28022 |
| G29417 | FEO | 20221 | GC | 156 | Mid-Line PLET A-1 | GC | 156 | Md-Line PLET A-2 | 8 | BLKO | Active | G12209 |
|  |  | 20155 | GC | 156 | Mid-Line PLET A-2 | GC | 65 | A | 8 | BLKO | Proposed | G12209 |
| G29420 | FEO | 20183 | GC | 200 | SUTA | GC | 244 | TROIKA SUTA | 5 | UMB | Proposed | G11043 |
| G29424 | FEO | 20195 | GC | 65 | A | GC | 200 | SUTA | 3 | UMB | Proposed | G12209 |
| G29425 | FEO | 20196 | GC | 200 | PLET-1 | GC | 156 | PLET-2 | 8 | BLKO | Proposed | G12210 |
| G29427 | FEO | 20202 | GC | 40 | K1 PLET | ST | 308 | A | 8 | BLKO | Proposed | G34966 |
|  |  | 20203 | GC | 40 | K1 PLET | ST | 308 | Start Up Flange | 12 | CSNG | Proposed | G34966 |
|  |  | 20278 | ST | 308 | A | GC | 39 | K2 SUTA | 5 | UBEH | Proposed | G34966 |
| G29427 | Fieldwood | 20200 | GC | 39 | K2 SUTA | GC | 40 | K1 SUTA | 5 | UBEH | Active | G34966 |

## RUEs related to Other Leases

| RUE Number | Area | Block No. | Structure | Complex ID No. | FW Lease | Operator | Approval Date | Associated Assets |
|---|---|---|---|---|---|---|---|---|
| G30201 | SS | 80 | A | 23548 | G15277 | FEO | 02/07/13 | SS 79 A002 |
| G30342 | SM | 40 | B | 1266 | G13607 | FEO | 06/21/18 | SM 41 B2, B3, B4, B6 & SM 40 B5 |
| G30352 | SM | 40 | JA | 27017 | G13607 | FEO |  | SM 41 B PF and wells |

| RUE Number | Area | Block No. | Structure | Complex ID No. | FW Lease | Operator | Approval Date | Associated Assets |
|---|---|---|---|---|---|---|---|---|
| G30354 | MC | 736 | A (Thunder Hawk) | 2045 | G28022 | Fieldwood | 07/03/18 | MC 698 001, MC 734 SS002, SS004, SS005, SS006, MC 782  001 & 002 |

[End of Exhibit B]

**Exhibit C**
**Scheduled Wells**

## Part 1.  Co-Owned Wells

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 032 #U012 ST1 | GI032U1201 | 00174 | 177192014502 |
| GRAND ISLE 039 #P002 ST2 | GI039P0202 | 00127 | 177174097802 |
| GRAND ISLE 040 #E007D | GI040E07D0 | 00128 | 177170077500 |
| GRAND ISLE 040 #E009 | GI040E0900 | 00128 | 177170078700 |
| GRAND ISLE 040 #G001 | GI040G0100 | 00128 | 177170070400 |
| GRAND ISLE 040 #G002 | GI040G0200 | 00128 | 177170076200 |
| GRAND ISLE 040 #G006 | GI040G0600 | 00133 | 177174012600 |
| GRAND ISLE 040 #G010 | GI040G1000 | 00128 | 177174037200 |
| GRAND ISLE 040 #G011 | GI040G1100 | 00128 | 177174037300 |
| GRAND ISLE 040 #M001 | GI040M0100 | 00128 | 177174037000 |
| GRAND ISLE 040 #M002D | GI040M02D0 | 00128 | 177174038600 |
| GRAND ISLE 040 #M003 | GI040M0300 | 00128 | 177174043600 |
| GRAND ISLE 040 #O005 | GI040O0500 | 00128 | 177174097100 |
| GRAND ISLE 041 #D002 | GI041D0200 | 00129 | 177170075300 |
| GRAND ISLE 041 #D003 | GI041D0300 | 00129 | 177170076700 |
| GRAND ISLE 041 #D004 | GI041D0400 | 00130 | 177170080500 |
| GRAND ISLE 041 #D007 | GI041D0700 | 00129 | 177172000000 |
| GRAND ISLE 041 #D008 ST | GI041D0801 | 00130 | 177172000801 |
| GRAND ISLE 041 #D009 | GI041D0900 | 00129 | 177172001500 |
| GRAND ISLE 041 #D010ST | GI041D1000 | 00129 | 177174017801 |
| GRAND ISLE 041 #D011E | GI041D1100 | 00129 | 177174018400 |
| GRAND ISLE 041 #E001 ST1 | GI041E0101 | 00130 | 177170069401 |
| GRAND ISLE 041 #E002 ST1 | GI041E0201 | 00130 | 177170074701 |
| GRAND ISLE 041 #E003D | GI041E03D0 | 00130 | 177170075000 |
| GRAND ISLE 041 #E004 ST1 | GI041E0401 | 00130 | 177170075201 |
| GRAND ISLE 041 #E005 | GI041E0500 | 00129 | 177170075400 |
| GRAND ISLE 041 #E006D | GI041E06D0 | 00130 | 177170077300 |
| GRAND ISLE 041 #E008 | GI041E0800 | 00130 | 177170079800 |
| GRAND ISLE 041 #E010 | GI041E1001 | 00130 | 177172000301 |
| GRAND ISLE 041 #E012D | GI041E12D0 | 00130 | 177174011500 |
| GRAND ISLE 041 #E013 | GI041E1300 | 00130 | 177174012900 |
| GRAND ISLE 041 #F003 ST1 | GI041F0301 | 00129 | 177174006401 |
| GRAND ISLE 041 #F005 ST2 | GI041F0502 | 00129 | 177174017302 |
| GRAND ISLE 041 #G007 | GI041G0700 | 00130 | 177174022400 |
| GRAND ISLE 041 #G008 | GI041G0800 | 00130 | 177174026400 |

Exhibit C – Page 1

WEIL:\97869848\12\45327.0007

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 041 #H001 | GI041H0100 | 00130 | 177174020300 |
| GRAND ISLE 041 #H002 | GI041H0200 | 00129 | 177174028100 |
| GRAND ISLE 041 #H003 ST | GI041H0301 | 00130 | 177174028601 |
| GRAND ISLE 041 #H004 | GI041H0400 | 00130 | 177174038000 |
| GRAND ISLE 041 #H005 | GI041H0500 | 00129 | 177174038100 |
| GRAND ISLE 041 #H006 ST1 | GI041H0601 | 00129 | 177174098301 |
| GRAND ISLE 041 #H007 | GI041H0700 | 00130 | 177174098400 |
| GRAND ISLE 042 #C001 | GI042C0100 | 00131 | 177170067000 |
| GRAND ISLE 042 #C002 | GI042C0200 | 00131 | 177170072100 |
| GRAND ISLE 042 #F001 | GI042F0100 | 00131 | 177174005100 |
| GRAND ISLE 042 #F002 | GI042F0200 | 00131 | 177174006000 |
| GRAND ISLE 042 #F004 | GI042F0400 | 00131 | 177174007100 |
| GRAND ISLE 046 #001 ST1 | GI04600101 | 00132 | 177174042801 |
| GRAND ISLE 046 #G009 ST1 | GI046G0901 | 00132 | 177174026101 |
| GRAND ISLE 047 #E006 | GI047E0600 | 00133 | 177170078100 |
| GRAND ISLE 047 #E008 | GI047E0800 | 00133 | 177170079500 |
| GRAND ISLE 047 #E017 | GI047E1700 | 00133 | 177174039900 |
| GRAND ISLE 047 #G004 ST | GI047G0401 | 00133 | 177170079601 |
| GRAND ISLE 047 #G005 ST | GI047G0501 | 00133 | 177170080301 |
| GRAND ISLE 047 #G012 | GI047G1200 | 00133 | 177174037500 |
| GRAND ISLE 047 #L001 | GI047L0100 | 00133 | 177174012800 |
| GRAND ISLE 047 #L002 ST | GI047L0201 | 00133 | 177174015901 |
| GRAND ISLE 047 #L003 | GI047L0300 | 00133 | 177174020500 |
| GRAND ISLE 047 #L004 | GI047L0400 | 00133 | 177174017000 |
| GRAND ISLE 047 #L005 | GI047L0500 | 00133 | 177174017900 |
| GRAND ISLE 047 #L006D | GI047L0600 | 00133 | 177174036300 |
| GRAND ISLE 047 #L007 ST | GI047L0701 | 00177 | 177174039101 |
| GRAND ISLE 047 #L009 ST1 | GI047L0901 | 00133 | 177174039201 |
| GRAND ISLE 047 #L011 ST2 | GI047L1102 | 00133 | 177174039602 |
| GRAND ISLE 047 #O001 BP2 | GI047O01D3 | 00133 | 177174096102 |
| GRAND ISLE 047 #O002 | GI047002D1 | 00133 | 177174096600 |
| GRAND ISLE 047 #O004 | GI047O0400 | 00133 | 177174096900 |
| GRAND ISLE 047 #O006 | GI047O0600 | 00133 | 177174097200 |
| GRAND ISLE 047 #O007 ST1 | GI047O0701 | 00133 | 177174097301 |
| GRAND ISLE 047 #O008 | GI047O0800 | 00133 | 177174097600 |
| GRAND ISLE 047 #O009 | GI047O09D1 | 00133 | 177174097700 |
| GRAND ISLE 048 #E001 | GI048E0100 | 00134 | 177170045400 |
| GRAND ISLE 048 #E014 | GI048E1400 | 00134 | 177172003900 |
| GRAND ISLE 048 #E018 ST | GI048E1801 | 00134 | 177174043501 |
| GRAND ISLE 048 #J002 ST1 | GI048J0201 | 00134 | 177174003201 |

Exhibit C – Page 2

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 048 #J003 ST | GI048J0302 | 00134 | 177174004502 |
| GRAND ISLE 048 #J004 ST2 | GI048J0403 | 00134 | 177174004803 |
| GRAND ISLE 048 #J005 ST | GI048J0501 | 00134 | 177174011601 |
| GRAND ISLE 048 #J006 | GI048J0600 | 00134 | 177174012000 |
| GRAND ISLE 048 #J007 | GI048J0700 | 00134 | 177174012200 |
| GRAND ISLE 048 #J008 | GI048J0800 | 00134 | 177174016900 |
| GRAND ISLE 048 #J009 | GI048J0900 | 00134 | 177174044200 |
| GRAND ISLE 048 #J010 ST | GI048J1001 | 00134 | 177174044401 |
| GRAND ISLE 048 #P001 FKA #14 | GI048P0100 | 00134 | 177174015300 |
| GRAND ISLE 110 #A002 | GI110A0200 | G13943 | 177184008900 |
| GRAND ISLE 110 #A005 BP2 | GI110A0502 | G13943 | 177184010402 |
| GRAND ISLE 116 #A001 | GI116A0100 | G13944 | 177184008700 |
| GRAND ISLE 116 #A003 | GI116A0300 | G13944 | 177184009200 |
| GRAND ISLE 116 #A004 | GI116A0401 | G13944 | 177184009501 |
| GRAND ISLE 116 #A006 | GI116A0601 | G13944 | 177184010601 |
| GRAND ISLE 116 #A007 | GI116A0700 | G13944 | 177184011100 |
| MISSISSIPPI CANYON 110 #001 | MC1100100 | G18192 | 608174060500 |
| MISSISSIPPI CANYON 110 #A009 | MC110A0900 | G18192 | 608174042501 |
| MISSISSIPPI CANYON 110 #A011ST | MC110A1101 | G18192 | 608174042801 |
| MISSISSIPPI CANYON 110 #A031 | MC110A3100 | G18192 | 608174087900 |
| SOUTH MARSH IS 048 #E002 | SM048E0201 | 00786 | 177072002801 |
| SOUTH MARSH IS 048 #E003 ST1BP | SM048E0302 | 00786 | 177072003302 |
| SOUTH MARSH IS 048 #E004 | SM048E0401 | 00786 | 177072004001 |
| SOUTH MARSH IS 048 #E007 | SM048E07 | 00786 | 177074092300 |
| SOUTH MARSH IS 149 #C001 ST1 | SM149C0101 | G02592 | 177084088901 |
| SOUTH MARSH IS 149 #C002 | SM149C0200 | G02592 | 177084089100 |
| SOUTH MARSH IS 149 #C004 | SM149C0400 | G02592 | 177084090300 |
| SOUTH MARSH IS 149 #C005 | SM149C0500 | G02592 | 177084090400 |
| SOUTH MARSH IS 149 #D001 | SM149D0101 | G02592 | 177084094401 |
| SOUTH PASS 061 #D004 ST2 | SP061D0402 | G01609 | 177234006302 |
| SOUTH PASS 061 #D023 | SP061D2300 | G01609 | 177234008200 |
| SOUTH PASS 061 #D024 ST1 | SP061D2401 | G01609 | 177234007701 |
| SOUTH PASS 061 #D025 | SP061D2500 | G01609 | 177234008300 |
| SOUTH PASS 061 #D026 | SP061D2600 | G01609 | 177234008400 |
| SOUTH PASS 061 #D033 ST2 | SP061D3302 | G01609 | 177234008702 |
| SOUTH PASS 061 #D035 ST2 | SP061D3502 | G01609 | 177234009102 |
| SOUTH PASS 061 #D036 ST1 | SP061D3601 | G01609 | 177234009200 |
| SOUTH PASS 061 #D039 ST1 | SP061D3901 | G01609 | 177234009801 |
| SOUTH PASS 061 #D040 ST2 | SP061D4002 | G01609 | 177234009502 |
| SOUTH PASS 061 #D043 ST2 | SP061D4302 | G01609 | 177234009602 |

Exhibit C – Page 3

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 053 #004 | ST05300401 | G04000 | 177154043101 |
| SOUTH TIMBALIER 053 #006 | ST05300601 | G04000 | 177154083500 |
| SOUTH TIMBALIER 053 #A001 | ST053A0101 | G04000 | 177154034402 |
| SOUTH TIMBALIER 053 #A002 | ST053A0201 | G04000 | 177154037601 |
| SOUTH TIMBALIER 053 #A003 | ST053A0301 | G04000 | 177154038401 |
| SOUTH TIMBALIER 053 #A004 | ST053A0400 | G04000 | 177154038500 |
| SOUTH TIMBALIER 053 #A006 | ST053A0601 | G04000 | 177154039201 |
| SOUTH TIMBALIER 053 #A007 | ST053A0700 | G04000 | 177154040400 |
| SOUTH TIMBALIER 053 #A008 | ST053A0800 | G04000 | 177154040500 |
| SOUTH TIMBALIER 053 #A009 | ST053A0900 | G04000 | 177154041500 |
| SOUTH TIMBALIER 053 #A010 | ST053A1001 | G04000 | 177154043501 |
| SOUTH TIMBALIER 053 #A011 | ST053A1100 | G04000 | 177154042400 |
| SOUTH TIMBALIER 053 #A012 | ST053A1201 | G04000 | 177154042301 |
| SOUTH TIMBALIER 053 #A013 | ST053A1300 | G04000 | 177154044000 |
| SOUTH TIMBALIER 053 #A014 | ST053A1400 | G04000 | 177154042900 |
| SOUTH TIMBALIER 053 #A015 | ST053A1501 | G04000 | 177154076901 |
| SOUTH TIMBALIER 053 #A016 | ST053A1601 | G04000 | 177154043601 |
| SOUTH TIMBALIER 053 #A017 | ST053A1701 | G04000 | 177154061101 |
| SOUTH TIMBALIER 053 #A018 | ST053A1801 | G04000 | 177154061201 |
| SOUTH TIMBALIER 053 #A019 | ST053A1900 | G04000 | 177154077200 |
| SOUTH TIMBALIER 053 #A020 | ST053A2001 | G04000 | 177154077101 |
| SOUTH TIMBALIER 053 #A021 | ST053A2100 | G04000 | 177154111000 |
| SOUTH TIMBALIER 053 #C001 | ST053C0100 | G04000 | 177154067200 |
| SOUTH TIMBALIER 053 #C002 | ST053C0200 | G04000 | 177154107300 |
| SOUTH TIMBALIER 053 #I001 | ST053I0100 | G04000 | 177154031200 |
| SOUTH TIMBALIER 067 #006 | ST06700602 | 00020 | 177154078404 |
| WEST DELTA 068 #U001 | WD068U0100 | 00180 | 177190136200 |
| WEST DELTA 068 #U004 | WD068U0400 | 00180 | 177192007000 |
| WEST DELTA 068 #U005 ST2 | WD068U0502 | 00180 | 177192007502 |
| WEST DELTA 068 #U006 | WD068U0600 | 00180 | 177192008600 |
| WEST DELTA 068 #U009 | WD068U0900 | 00180 | 177192011401 |
| WEST DELTA 068 #U011 | WD068U11 | 00180 | 177192013603 |
| WEST DELTA 068 #U013 ST2 | WD068U1302 | 00180 | 177194065102 |
| WEST DELTA 068 #U014 | WD068U1400 | 00180 | 177194065300 |
| WEST DELTA 069 #D007 ST2 | WD069D0702 | 00181 | 177190063802 |
| WEST DELTA 070 #D001D | WD070D0100 | 00182 | 177190063300 |
| WEST DELTA 070 #D005 | WD070D0500 | 00182 | 177190063600 |
| WEST DELTA 070 #D008 | WD070D0800 | 00182 | 177190063900 |
| WEST DELTA 070 #D009 | WD070D0900 | 00182 | 177190064000 |
| WEST DELTA 070 #D010 | WD070D1000 | 00182 | 177190066700 |

Exhibit C – Page 4

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 070 #D011 | WD070D1100 | 00182 | 177194036800 |
| WEST DELTA 070 #D012 | WD070D1200 | 00182 | 177194037200 |
| WEST DELTA 070 #D013 | WD070D1300 | 00182 | 177194057000 |
| WEST DELTA 070 #D014 | WD070D1400 | 00182 | 177194057200 |
| WEST DELTA 070 #E001 ST1 | WD070E0101 | 00182 | 177190108201 |
| WEST DELTA 070 #E002 | WD070E0200 | 00182 | 177190067800 |
| WEST DELTA 070 #E003 | WD070E0300 | 00182 | 177190066500 |
| WEST DELTA 070 #FF001 | WD070FF100 | 00182 | 177194084200 |
| WEST DELTA 070 #FF002 | WD070FF200 | 00182 | 177194084300 |
| WEST DELTA 070 #FF003 | WD070FF300 | 00182 | 177194084400 |
| WEST DELTA 070 #I003 ST1 | WD070I0301 | 00182 | 177190091301 |
| WEST DELTA 070 #I004 | WD070I0400 | 00182 | 177190091500 |
| WEST DELTA 070 #I005 ST1 | WD070I0501 | 00182 | 177190095001 |
| WEST DELTA 070 #I006 ST | WD070I0601 | 00182 | 177190095101 |
| WEST DELTA 070 #I008 ST1 | WD070I0801 | 00182 | 177190102101 |
| WEST DELTA 070 #I010 ST1 | WD070I1001 | 00182 | 177190105701 |
| WEST DELTA 070 #I012 STBP2 | WD070I1202 | 00182 | 177194010702 |
| WEST DELTA 070 #I013 | WD070I1300 | 00182 | 177194038400 |
| WEST DELTA 070 #I014 | WD070I1400 | 00182 | 177194061100 |
| WEST DELTA 070 #I015 | WD070I1500 | 00182 | 177194061300 |
| WEST DELTA 070 #I016 ST | WD070I1601 | 00182 | 177194064201 |
| WEST DELTA 070 #I017 | WD070I1700 | 00182 | 177194064600 |
| WEST DELTA 070 #L003 | WD070L0300 | 00182 | 177190113800 |
| WEST DELTA 070 #L004 | WD070L0400 | 00182 | 177190115100 |
| WEST DELTA 070 #L005 | WD070L0500 | 00182 | 177190115500 |
| WEST DELTA 070 #L006 | WD070L0600 | 00182 | 177190115000 |
| WEST DELTA 070 #L010 | WD070L1000 | 00182 | 177190119500 |
| WEST DELTA 070 #L011 | WD070L1100 | 00182 | 177190121400 |
| WEST DELTA 071 #E006 | WD071E0600 | 00838 | 177190073200 |
| WEST DELTA 071 #E007 ST1 | WD071E0701 | 00838 | 177190095601 |
| WEST DELTA 071 #E009 ST1 | WD071E0901 | 00838 | 177190091701 |
| WEST DELTA 071 #E010 | WD071E1000 | 00838 | 177190095700 |
| WEST DELTA 071 #O003 | WD071O0300 | 00838 | 177190121500 |
| WEST DELTA 071 #O005 | WD071O0501 | 00838 | 177190125001 |
| WEST DELTA 071 #O006 | WD071O0601 | 00838 | 177190127101 |
| WEST DELTA 071 #O007 | WD071O0702 | 00838 | 177190129602 |
| WEST DELTA 071 #O009 | WD071O0900 | 00838 | 177190133600 |
| WEST DELTA 071 #O010 | WD071O1000 | 00838 | 177194002500 |
| WEST DELTA 071 #O013 | WD071O1303 | 00838 | 177192001102 |
| WEST DELTA 079 #A019 | WD079A19 | G01449 | 177192006800 |

Exhibit C – Page 5

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 079 #A021 | WD079A21 | G01449 | 177192012700 |
| WEST DELTA 079 #C017 | WD079C17 | G01874 | 177192013800 |
| WEST DELTA 079 #C025 | WD079C25 | G01874 | 177194008701 |
| WEST DELTA 079 #C032 | WD079C32 | G01874 | 177194019400 |
| WEST DELTA 079 #C033 | WD079C33 | G01874 | 177192009101 |
| WEST DELTA 079 #D020 | WD079D20 | G01449 | 177192023101 |
| WEST DELTA 079 #D023 | WD079D23 | G01449 | 177194006600 |
| WEST DELTA 079 #D024 | WD079D24 | G01449 | 177194007300 |
| WEST DELTA 079 #D031 | WD079D31 | G01449 | 177194037800 |
| WEST DELTA 079 #D035 | WD079D35 | G01449 | 177194046200 |
| WEST DELTA 079 #D036 | WD079D36 | G01449 | 177194047400 |
| WEST DELTA 079 #F002 | WD079F02 | G01449 | 177194038300 |
| WEST DELTA 080 #A010 | WD080A10 | G01874 | 177190136300 |
| WEST DELTA 080 #A016 | WD080A16 | G01874 | 177192004600 |
| WEST DELTA 080 #B016 | WD080B16 | G01874 | 177192018200 |
| WEST DELTA 080 #D019 | WD080D19 | G01449 | 177192021703 |
| WEST DELTA 080 #D029 | WD080D29 | G01874 | 177194036501 |
| WEST DELTA 080 #D032 | WD080D32 | G01449 | 177194038500 |
| WEST DELTA 080 #D034 | WD080D34 | G01874 | 177192019501 |
| WEST DELTA 079 #A019 | WD079A19 | G01449 | 177192006800 |
| WEST DELTA 094 #V001 | WD094V0100 | 00839 | 177192005700 |
| WEST DELTA 094 #V002 | WD094V0200 | 00839 | 177192011600 |
| WEST DELTA 094 #V003 | WD094V0300 | 00839 | 177192014900 |
| WEST DELTA 094 #V004 | WD094V0400 | 00839 | 177192015500 |
| WEST DELTA 094 #V014 | WD094V1400 | 00839 | 177194039000 |
| WEST DELTA 094 #V015 | WD094V1500 | 00839 | 177194064000 |
| WEST DELTA 094 #V016 | WD094V1602 | 00839 | 177194063902 |
| WEST DELTA 095 #S005 ST1BP1 | WD095S0502 | G01497 | 177190126202 |
| WEST DELTA 095 #S006 | WD095S0600 | G01497 | 177190135400 |
| WEST DELTA 095 #S008 | WD095S0800 | G01497 | 177190127700 |
| WEST DELTA 095 #S010 ST1 | WD095S1001 | G01497 | 177192000101 |
| WEST DELTA 095 #S012 ST | WD095S1201 | G01497 | 177192002301 |
| WEST DELTA 095 #X001 ST | WD095X0101 | G01497 | 177194002901 |
| WEST DELTA 095 #X003 | WD095X0300 | G01497 | 177194003200 |
| WEST DELTA 095 #X007 ST1 | WD095X0701 | G01497 | 177194003701 |
| WEST DELTA 095 #X011 | WD095X1100 | G01497 | 177194055700 |
| WEST DELTA 095 #X012D | WD095X12D0 | G01497 | 177194055900 |
| WEST DELTA 096 #S002 ST1BP1 | WD096S0202 | G01498 | 177190123402 |
| WEST DELTA 096 #S007 ST1 | WD096S0701 | G01498 | 177190132901 |
| WEST DELTA 096 #X004 ST1 | WD096X0401 | G01498 | 177194003301 |

Exhibit C – Page 6

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 096 #X006 ST2 | WD096X0602 | G01498 | 177194003502 |
| WEST DELTA 096 #X009 | WD096X0900 | G01498 | 177194004000 |

## Part 2.  <u>Other Wells</u>

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| BLOWFISH GU AKA ST TR 329 #2 | BLOWFISH2 | ST-TX 227360 | 421673142600 |
| BRETON SOUND 025 #A001 | BS02501 | G31442 | 177264005300 |
| BRETON SOUND 052 #002 SL17860 | SL1786002 | ST-LA 17860 | 17726205670000 |
| BRETON SOUND 053 #001 SL17675 | SL1767501 | ST-LA 17675 | 177262055100 |
| BRETON SOUND 053 #003 SL15683 | SL1568303 | ST-LA 15683 | 177262053100 |
| BRETON SOUND 53 #UV 3-8 RA VUA | SL1905101 | ST-LA 19051 | 177262058300 |
| EAGLE BAY GU AKA ST TR 329 1 | EAGLEBAYGU | ST-TX 186891 | #N/A |
| EAST CAMERON 345 #A001 (ORRI) | EC345A01 | G15156 | 177044100800 |
| EWING BANKS 789 #A006 (ORRI) | EW789A06 | G35805 | 608104015500 |
| EWING BANKS 789 #A007 (ORRI) | EW789A07 | G35805 | 608104015401 |
| EWING BANKS 790 A-2 (ORRI) | EW790A02 | G33140 | 608104015100 |
| EWING BANKS 790 A-3 (ORRI) | EW790A03 | G33140 | 608104015300 |
| EWING BANKS 790 #A009 (ORRI) | EW790A09 | G33140 | 608104015700 |
| EWING BANKS 834 A-1 (ORRI) | EW834A01 | G27982 | 608105010300 |
| GREEN CANYON 40 #1 | GC04001 | G34536 | 608114062300 |
| GREEN CANYON 064 #A026 | GC064A26 | G34539 | 608114063101 |
| GREEN CANYON 065 #A004 | GC065A04 | G05889 | 608114011600 |
| GREEN CANYON 065 #A006 | GC065A06 | G05889 | 608114014800 |
| GREEN CANYON 065 #A008 | GC065A08 | G05889 | 608114015800 |
| GREEN CANYON 065 #A009 | GC065A09 | G05889 | 608114017000 |
| GREEN CANYON 065 #A020 | GC065A20 | G05889 | 608114059902 |
| GREEN CANYON 065 #A023 | GC065A23 | G05889 | 608114064200 |
| GREEN CANYON 065 #A024 | GC065A24 | G05889 | 608114061900 |
| GREEN CANYON 065 #A038 | GC065A38 | G05889 | 608114015501 |
| GREEN CANYON 065 #A043 | GC065A43 | G05889 | 608114017100 |
| GREEN CANYON 065 #A044 | GC065A44 | G05889 | 608114017701 |
| GREEN CANYON 065 #A059 | GC065A59 | G05889 | 608114015900 |
| GREEN CANYON 065 #A060 | GC065A60 | G05889 | 608114015300 |
| GREEN CANYON 108 #A017 | GC108A17 | G14668 | 608114045202 |
| GREEN CANYON 108 #A021 | GC108A21 | G14668 | 608114060701 |
| GREEN CANYON 109 #A001 | GC109A01 | G05900 | 608114010000 |
| GREEN CANYON 109 #A002 | GC109A02 | G05900 | 608114010600 |
| GREEN CANYON 109 #A003 | GC109A03 | G05900 | 608114011200 |
| GREEN CANYON 109 #A005 | GC109A05 | G05900 | 608114012100 |

Exhibit C – Page 7

WEIL:\97869848\12\45327.0007

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GREEN CANYON 109 #A010 | GC109A10 | G05900 | 608114017300 |
| GREEN CANYON 109 #A011 | GC109A11 | G05900 | 608114017800 |
| GREEN CANYON 109 #A015 | GC109A15 | G05900 | 608114039502 |
| GREEN CANYON 109 #A018 | GC109A18 | G05900 | 608114047603 |
| GREEN CANYON 109 #A031 | GC109A31 | G05900 | 608114011900 |
| GREEN CANYON 109 #A032 | GC109A32 | G05900 | 608114012303 |
| GREEN CANYON 109 #A033 | GC109A33 | G05900 | 608114012401 |
| GREEN CANYON 109 #A034 | GC109A34 | G05900 | 608114014401 |
| GREEN CANYON 109 #A035 | GC109A35 | G05900 | 608114014700 |
| GREEN CANYON 109 #A036 | GC109A36 | G05900 | 608114015000 |
| GREEN CANYON 109 #A037 | GC109A37 | G05900 | 608114015200 |
| GREEN CANYON 109 #A039 | GC109A39 | G05900 | 608114016000 |
| GREEN CANYON 109 #A041 | GC109A41 | G05900 | 608114016500 |
| GREEN CANYON 109 #A042 | GC109A42 | G05900 | 608114016701 |
| GREEN CANYON 200 # TA 1 TROIKA | GC200TA01 | G12209 | 608114021600 |
| GREEN CANYON 200 # TA 2 TROIKA | GC200TA02 | G12209 | 608114021702 |
| GREEN CANYON 200 #T A 3 TROIKA | GC200TA03 | G12209 | 608114021800 |
| GREEN CANYON 200 TA3 ST1TROIKA | GC200TA03S | G12209 | 608114021801 |
| GREEN CANYON 200 # TA 4 TROIKA | GC200TA04 | G12209 | 608114021901 |
| GREEN CANYON 200 # TA 5 TROIKA | GC200TA05 | G12209 | 608114020501 |
| GREEN CANYON 200 # TA 9 ORLOV | GC200TA09 | G12209 | 608114071603 |
| GREEN CANYON 201 # TA 6 TROIKA | GC201TA06 | G12210 | 608114027501 |
| GREEN CANYON 201 #002 ST1 (ORRI) | GC201002 | G12210 | 608114037101 |
| GREEN CANYON 201 #001 ST3 (ORRI) | GC20101ST3 | G12210 | 608114043803 |
| GREEN CANYON 238 SS01 (ORRI) | GC238SS01 | G26302 | 608114044304 |
| GREEN CANYON 243 #SS001 (ORRI) | GC243SS01 | G20051 | 608114027608 |
| GREEN CANYON 243 #SS002 (ORRI) | GC243SS02 | G20051 | 608114034000 |
| GREEN CANYON 243 #SS004 (ORRI) | GC243SS04 | G20051 | 608114041600 |
| GREEN CANYON 243 #SS005 (ORRI) | GC243SS05 | G20051 | 608114045701 |
| GREEN CANYON 244 # T001 | GC244001 | G11043 | 608114019700 |
| GREEN CANYON 282 #1ST3 (ORRI) | GC2820103 | G16727 | 608114030804 |
| GREEN CANYON 282 #2ST1 (ORRI) | GC2820201 | G16727 | 608114033701 |
| GREEN CANYON 282 #SS003 (ORRI) | GC282SS003 | G16727 | 608114070701 |
| GREEN CANYON 768 SS02 | GC768SS02 | G21817 | 608114044700 |
| GREEN CANYON 768 SS03 | GC768SS03 | G21817 | 608114050200 |
| GREEN CANYON 768 SS04 | GC768SS04 | G21817 | 608114060900 |
| GREEN CANYON 768 SS01 ST4 | GC768SS104 | G21817 | 608114041705 |
| HIGH ISLAND 031 #L001 SL106158 | SL10615801 | ST-TX 106158 | 427083037900 |
| HIGH ISLAND 031 #L001 SL106159 | SL10615901 | ST-TX 106159 | 427083037800 |
| HIGH ISLAND 031 #L001 SL114921 | SL11492101 | ST-TX 114921 | UNKNOWN |

Exhibit C – Page 8

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND 176 # 2 (ORRI) | HI176002 | G27509 | 427084063900 |
| LAKE COMO UNIT (ORRI) | LAKECOMO | SL-MS 170650 | UNKNOWN |
| MILEY 1-43 (ORRI) | MILEY143 | 17009 | UNKNOWN |
| MISSISSIPPI CANYON 519 #1 BP1 | MC5190101 | G27278 | 608174116201 |
| MISSISSIPPI CANYON 519 #2 BP1 | MC5190201 | G27278 | 608174118401 |
| MISSISSIPPI CANYON 519 #3 | MC51903 | G27278 | 608174141100 |
| MISSISSIPPI CANYON 563 SS01(ORRI) | MC563SS01 | G21176 | 608174130000 |
| MISSISSIPPI CANYON 698 #1 | MC69801 | G28022 | 608174123300 |
| MISSISSIPPI CANYON 782 #1 | MC78201 | G33757 | 608174126600 |
| MISSISSIPPI CANYON 782 #2 | MC78202 | G33757 | 608174128200 |
| MISSISSIPPI CANYON 793 A-4 (ORRI) | MC793A04 | G33177 | 608104015200 |
| MISSISSIPPI CANYON 793 A-8 (ORRI) | MC793A08 | G33177 | 608104015900 |
| MISSISSIPPI CANYON 948 #2 ST2 | MC94802 | G28030 | 608174114902 |
| MISSISSIPPI CANYON 948 #3 | MC94803 | G28030 | 608174118801 |
| MISSISSIPPI CANYON 948 #4 | MC94804 | G28030 | 608174129900 |
| MISSISSIPPI CANYON 992 #1 | MC99201 | G24133 | 608174125200 |
| RF FEDERAL 1 (ORRI) | RFFEDERAL1 | ST-MS 230150 | 230372096200 |
| RF FEDERAL 2 (ORRI) | RFFEDERAL2 | ST-MS 231240 | 2303720983 |
| SAN LEON GAS UNIT 1-ST2 | SANLEONG2 | ST-TX 185633 | 421673134500 |
| SAN LEON GAS UNIT A 2 | SANLEONGA2 | ST-TX 234082 | UNKNOWN |
| SAN LEON GAS UNIT B-1 | SANLEONGB1 | ST-TX 255675 | 421673145400 |
| SAN LEON UNIT SWD 1 | SANLEONU1 | ST-TX 24318 | 421673131900 |
| SOUTH MARSH IS 040 #B001 | SM040B01 | G13607 | 177074083600 |
| SOUTH MARSH IS 040 #B005 (D01) | SM040B05 | G13607 | 177074085700 |
| SOUTH MARSH IS 040 #B007 (D01) | SM040B07 | G13607 | 177074089800 |
| SOUTH MARSH IS 040 #JA001 | SM040J01 | G13607 | 177074063602 |
| SOUTH MARSH IS 040 #JA002 | SM040J02 | G13607 | 177074069100 |
| SOUTH MARSH IS 041 #016 | SM04116 | G01192 | 177074091800 |
| SOUTH MARSH IS 041 #B002 | SM041B02 | G01192 | 177074084901 |
| SOUTH MARSH IS 041 #B003 | SM041B03 | G01192 | 177074085300 |
| SOUTH MARSH IS 041 #B004 | SM041B04 | G01192 | 177074085400 |
| SOUTH MARSH IS 041 #B006 | SM041B06 | G01192 | 177074087600 |
| SHIP SHOAL 079 #A002 | SS079A02 | G15277 | 177114134300 |
| SHIP SHOAL 301 #A001 | SS301A0100 | G10794 | 177124044301 |
| SHIP SHOAL 301 #A002 | SS301A02 | G10794 | 177124053200 |
| SHIP SHOAL 301 #A004 | SS301A0400 | G10794 | 177124063100 |
| SHIP SHOAL 301 #A005 | SS301A0500 | G10794 | 177124068500 |
| SOUTH TIMBALIER 287 #A008 ST2 | ST287A0802 | G24987 | 177164034802 |
| SOUTH TIMBALIER 308 #A001 | ST308A0100 | G21685 | 177164028000 |
| SOUTH TIMBALIER 308 #A002 ST1 | ST308A0101 | G21685 | 177164028701 |

Exhibit C – Page 9

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 308 #A003 | ST308A0300 | G21685 | 177164030600 |
| SOUTH TIMBALIER 308 #A004 | ST308A0400 | G21685 | 177164030900 |
| SOUTH TIMBALIER 308 #A005 ST1 | ST308A0501 | G21685 | 177164032901 |
| SOUTH TIMBALIER 308 #A006 BP1 | ST308A0601 | G21685 | 177164033301 |
| SOUTH TIMBALIER 308 #A007 BP1 | ST308A0701 | G21685 | 177164033804 |
| STATE TRACT 086 R1L | STTR86R1L | ST-TX 172916 | 420713213700 |
| STATE TRACT 086 R1U | STTR86R1U | ST-TX 172915 | 420713213700 |
| STATE TRACT 087-10 U (F-12 SD) | STTR8710U | ST-TX 5797 | 420713194600 |
| STATE TRACT 087-11 U (F-8 SD) | STTR8711U | ST-TX 5797 | 42071319761 |
| STATE TRACT 087-12 | STTR8712 | TX Onshore | 420713216700 |
| STATE TRACT 087-8 (F-5 SD) | STTR8708 | TX Onshore | 4207102787 |
| STATE TRACT 088-12B (F-5 SD) | STTR8812B | TX Onshore | 420713029900 |
| STATE TRACT 088-5B-L (F-5 SD) | STTR8805B | ST-TX 5749 | 420710276702 |
| STATE TRACT 088-7B-L (F-8 SD) | STTR8807BL | TX Onshore | 420710276602 |
| STATE TRACT 088-7B-U (F-5 SD) | STTR8807BU | TX Onshore | 420710276601 |
| STATE TRACT 330 2R | STTR3302R | ST-TX 234082 | 421673132400 |
| STATE TRACT 330-01 | STTR33001 | ST-TX 24318 | 421673131400 |
| STATE TRACT 331-05 | STTR33105 | ST-TX 178537 | 4216731320 |
| STATE TRACT 331-06 | STTR33106 | ST-TX 183756 | 4216731342 |
| STATE TRACT 331-08 | STTR33108 | ST-TX 207398 | 421673140500 |
| STATE TRACT 331-09 | STTR33109 | ST-TX 191681 | 4216731304 |
| SUE FULLER #2 | SUEFUL2 | 13911 | 42734663 |
| VAUGHEY 1 | VAUGHEY1 | ST-TX 230140 | 230372095400 |
| VERMILION 078 #A001 | VR078A0100 | G04421 | 177054077800 |
| VERMILION 078 #A002 ST2 | VR078A0202 | G04421 | 177054047903 |
| VERMILION 078 #A003 ST2 | VR078A0302 | G04421 | 177054102402 |
| VERMILION 229 #A001 | VR229A01 | G27070 | 177054127100 |
| VERMILION 362 #005 | VR36205 | G10687 | 177064073900 |
| VERMILION 362 #A003 | VR362A0300 | G10687 | 177064070400 |
| VERMILION 362 #A007 | VR362A07 | G10687 | 177064089501 |
| VERMILION 362 #B001 | VR362B0100 | G10687 | 177064072800 |
| VERMILION 362 #B002 | VR362B0200 | G10687 | 177064073600 |
| VERMILION 362 #B005 | VR362B0500 | G10687 | 177064087901 |
| VERMILION 363 #B003 | VR363B0301 | G09522 | 177064074101 |
| VERMILION 371 #A001 | VR371A0100 | G09524 | 177064068100 |
| VERMILION 371 #A002 | VR371A0200 | G09524 | 177064068800 |
| VERMILION 371 #A004 | VR371A0400 | G09524 | 177064070800 |
| VERMILION 371 #A005 | VR371A0500 | G09524 | 177064072500 |
| VERMILION 371 #A006 | VR371A0600 | G09524 | 177064089101 |
| VERMILION 371 #B004 | VR371B0400 | G09524 | 177064074801 |

Exhibit C – Page 10

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST YELLOW CREEK UNIT (ORRI) | WYELLOWCRE | SL-MS 23017 | UNKNOWN |

[There are no depth restrictions or limitations applicable to any Acquired Interests set forth in this Exhibit.]

[End of Exhibit C]

Exhibit C – Page 11

WEIL:\97869848\12\45327.0007

**Exhibit D**
**Platforms and Facilities**

## Part 1.  Co-Owned Platforms and Facilities

### Platforms

| Asset Name | FWE Acct. Code | Complex ID | Lease Number | Area/Block | WI |
|---|---|---|---|---|---|
| GRAND ISLE 039 P/F-Q | GI39QPLT | 24255 | 00127 | GI039 | 25.0% |
| GRAND ISLE 040 P/F-G | GI40GPLT | 20043 | 00128 | GI040 | 25.0% |
| GRAND ISLE 040 P/F-M | GI40MPLT | 24214 | 00128 | GI040 | 25.0% |
| GRAND ISLE 041 P/F-D | GI041PFD | 20020 | 00129 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-B | GI41BPLT | 20575 | 00129 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-E | GI41EPLT | 20032 | 00130 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-H | GI41HPLT | 23557 | 00130 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-I | GI41ICAS | 766 | 00132 | GI041 | 25.0% |
| GRAND ISLE 042 P/F-C | GI42CPLT | 20018 | 00131 | GI042 | 25.0% |
| GRAND ISLE 042 P/F-F | GI42FPLT | 21859 | 00131 | GI042 | 25.0% |
| GRAND ISLE 043 P/F-AC-CMP | GI043PFAC | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AP-QRT | GI43APPLT | 20221 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AQ-QRT | GI43AQPLT | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AR-RSR | GI43ARPLT | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AS-SEP | GI43ASPLT | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 047 P/F-A | GI47APLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-AP | GI47APPLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-AQ-QTRS | GI47AQPLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-AX (BRACE) | GI47AXPLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-L | GI47LPLT | 22847 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-O | GI47OPLT | 2006 | 00133 | GI047 | 25.0% |
| GRAND ISLE 048 P/F-E | GI48EPLT | 20194 | 00134 | GI048 | 25.0% |
| GRAND ISLE 048 P/F-J | GI48JPLT | 20673 | 00134 | GI048 | 25.0% |
| GRAND ISLE 048 P/F-P | GI48PPLT | 22891 | 00134 | GI048 | 25.0% |
| GRAND ISLE 116 P/F-A | GI116APLT | 686 | G13944 | GI116 | 50.0% |
| SOUTH MARSH IS 149 P/F-C | SM149CPLT | 1027 | G02592 | SM149 | 50.0% |
| SOUTH TIMBALIER 053 P/F-4 | ST053PF4 | 22768 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-6 | ST053PF6 | 24184 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-A | ST053PFA | 22421 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-A-AUX | ST053PFAAX | 22421 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-C (5) | ST053PFC5 | 23534 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-I | ST053PFI | 22512 | G04000 | ST053 | 50.0% |
| WEST DELTA 068 P/F-U | WD68UPLT | 29935 | 00180 | WD068 | 25.0% |
| WEST DELTA 070 P/F-D | WD070PFD | 20015 | 00182 | WD070 | 25.0% |
| WEST DELTA 070 P/F-I | WD070PFI | 21805 | 00182 | WD070 | 25.0% |
| WEST DELTA 070 P/F-L | WD070PFL | 21805 | 00182 | WD070 | 25.0% |
| WEST DELTA 070 P/F-FF | WD070PFFF | 2035 | 00182 | WD070 | 25.0% |
| WEST DELTA 071 P/F-E | WD71EPLT | 20047 | 00838 | WD071 | 25.0% |
| WEST DELTA 071 P/F-O | WD071OPLT | 20510 | 00838 | WD071 | 25.0% |
| WEST DELTA 094 P/F-V | WD094PFV | 20036 | 00839 | WD094 | 25.0% |

WEIL:\97869848\12\45327.0007

| Asset Name | FWE Acct. Code | Complex ID | Lease Number | Area/Block | WI |
|---|---|---|---|---|---|
| WEST DELTA 095 P/F-S | WD095PFS | 21270 | G01497 | WD095 | 25.0% |
| WEST DELTA 095 P/F-X | WD095PFX | 21270 | G01497 | WD095 | 25.0% |
| **Asset Name** | **FWE Acct. Code** | **Complex ID** | **RUE Number** | **Area/Block** | **WI** |
| SOUTH MARSH ISLAND 132 P/F B | | 21982 | G30329 | SM 132 | 50% |
| SOUTH TIMBALIER 68 CAISS. #1 | ST681CAS | 24108 | G30267 | ST 68 | 20.334% |

## **Facilities**

| Name | State | Parish | Seller | Legal Description | Associated Assets |
|---|---|---|---|---|---|
| GRAND ISLE TANK BAT | Louisiana | Jefferson | FEO | PART OF ORIG LOT 8 SEC 32 T21S R25E CONTAINS 0.5286 ACRES as further described in COB 1054/Pg 851, COB 2913/Pg 442, COB 3036/Pg 728, COB 3046/Pg 80, COB 3082/Pg 294, COB 3171/Pg 69 and COB 3171/Pg 70 of the conveyance records of Jefferson Parish, Louisiana | the Co-Owned Leases in the Grand Isle unit and in the Grand Isle/West Delta unit |

## Part 2. **Other Platforms and Facilities**

### **Platforms**

| Asset Name | FWE Acct. Code | Complex ID | Lease Number | Area/Block | WI |
|---|---|---|---|---|---|
| BRETON SOUND 025 P/F-A | BS025CAS | 2532 | G31442 | BS025 | 25.0% |
| BRETON SOUND 052 P/F-A | BS052PFA | | SL-LA 17860 | BS052 | 50.0% |
| BRETON SOUND 053 P/F-CF | BS053PFCF | | Onshore | BS053 | 50.0% |
| GREEN CANYON 065 P/F-A | GC065PFA | 23552 | G05889 | GC065 | 49.0% |
| HIGH ISLAND 030 P/F-L | HI030PFL | | SL-TX 11408 | HI030 | 100.0% |
| SHIP SHOAL 079 P/F-A | SS79PFA | 913 | G15277 | SS079 | 100.0% |
| SHIP SHOAL 301 P/F-A | SS301PFA | 32027 | G10794 | SS301 | 100.0% |
| SOUTH TIMBALIER 308 P/F-A | ST308APLT | 1500 | G21685 | ST308 | 100.0% |
| VERMILION 078 P/F-A | VR78APLT | 23674 | G04421 | VR078 | 100.0% |
| VERMILION 229 P/F-A | VR229PFA | 2261 | G27070 | VR229 | 50.0% |
| VERMILION 362 P/F-B | VR362PFB | 27064 | G10687 | VR362 | 100.0% |
| VERMILION 371 P/F-A | VR371PFA | 27021 | G09524 | VR371 | 100.0% |
| **Asset Name** | **FWE Acct. Code** | **Complex ID** | **RUE Number** | **Area/Block** | **WI** |
| SOUTH MARSH ISLAND 40 P/F B | SM040PSB | 1266 | G13607 | SM 40 | 100% |
| SOUTH MARSH ISLAND 40 P/F JA | SM040PFJA | 27017 | G13607 | SM 40 | 100% |
| SHIP SHOAL 80 P/F A | SS080PFA | 23548 | G30201 | SM 40 | 100% |

WEIL:\97869848\12\45327.0007

**Facilities**

| Name | State | County/Parish | Seller | Legal Description | Associated Assets |
|------|-------|---------------|--------|-------------------|-------------------|
| FIELDWOOD NORTH CARENCRO | Louisiana | Lafayette | Fieldwood | TR 2A-1 SEC 71 T8S R4E (2.508 AC)(236.95X461) PART TR 2A SEC 71 T8S R4E (20X647.77X203.61X31.81X236.08X461), all as further described in that Act of Cash Sale recorded at File No. 2013-42702 of the conveyance records of Lafayette Parish, Louisiana | Warehouse for P&A |
| EAGLE POINT | Texas | Galveston | Fieldwood Onshore | | |
| SAN LEON PROD FACILITY | Texas | Galveston | Fieldwood Onshore | Blocks 138/139 out of the San Leon Townsite & Subdivision out of the Amos Edwards Survey A-10 | ST-TX 24318 ST-TX 185633 ST-TX 234082 ST-TX 255675 |

[End of Exhibit D]

WEIL:\97869848\12\45327.0007

**Exhibit D-1**
**Inventory**

[Attached]

WEIL:\97869848\12\45327.0007

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 54401 | | WH/B42/S1 | LINER: PWR CYL | | EA | | 1 | 3,975.83 | 100.0% | 3,975.83 |
| North Warehouse | Fieldwood | 54402 | | WH/B42/FLR | PSTN/ROD ASSY: 10-1/2", GMWA, | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 54403 | | WH/B42/FLR | PSTN/ROD ASSY: 28", GMWA, ROD | | EA | | 1 | 21,498.05 | 100.0% | 21,498.05 |
| North Warehouse | Fieldwood | 54406 | | WH/B42/S1 | PSTN: 18", PISTON, GMVC 1ST STGE | | EA | | 1 | 19,676.18 | 100.0% | 19,676.18 |
| North Warehouse | Fieldwood | 54407 | | B3/B3/S2 | LINER: 2ND STGE CYL | | EA | | 1 | 2,542.05 | 100.0% | 2,542.05 |
| North Warehouse | Fieldwood | 54408 | | WH/B41/S2 | LINER: GMVC 1ST STGE | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 54409 | | WH/B37/FL | HD: 2ND STGE CRNKEND | | EA | | 1 | 4,372.48 | 100.0% | 4,372.48 |
| North Warehouse | Fieldwood | 54411 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 1 | 82,650.64 | 100.0% | 82,650.64 |
| North Warehouse | Fieldwood | 54412 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 2 | 81,082.47 | 100.0% | 81,082.47 |
| North Warehouse | Fieldwood | 54419 | | B3/B3/S2 | PMP: GMVA LUBE OIL | | EA | | 1 | 5,829.98 | 100.0% | 5,829.98 |
| North Warehouse | Fieldwood | 54420 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54421 | | WH/B41/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54422 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 7,703.92 | 100.0% | 7,703.92 |
| North Warehouse | Fieldwood | 54445 | | B3/B3/S2 | GEAR: GMVC BLOWER DRV | | EA | | 1 | 3,352.24 | 100.0% | 3,352.24 |
| North Warehouse | Fieldwood | 54447 | | WH/B42/FLR | PSTN/ROD ASSY: 18", 1ST STGE | | EA | | 1 | 14,956.39 | 100.0% | 14,956.39 |
| North Warehouse | Fieldwood | 54448 | | WH/B42/S1 | LINER: 18", 1ST STGE COMPRSSR | | EA | | 1 | 1,967.62 | 100.0% | 1,967.62 |
| North Warehouse | Fieldwood | 54449 | | WH/B42/S1 | LINER: 15", 2ND STGE COMPRSSR | | EA | | 1 | 1,785.43 | 100.0% | 1,785.43 |
| North Warehouse | Fieldwood | 54450 | | WH/B41/S2 | LINER: 9-3/4", 3RD STGE COMPRSSR | | EA | | 1 | 1,909.90 | 100.0% | 1,909.90 |
| North Warehouse | Fieldwood | 54452 | | B3/B1/S1 | GEAR: GMV3-FB, PARTCO BLOWER W/HUB | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54456 | | WH/B42/FLR | PSTN/ROD ASSY: 9-3/4", 3RD STGE | | EA | | 1 | 2,399.73 | 100.0% | 2,399.73 |
| North Warehouse | Fieldwood | 54457 | | WH/B43/S1 | PSTN/ROD ASSY: 9-5/8", GMWA, | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54458 | | WH/B43/FLR | PSTN/ROD ASSY: 17-1/4", GMVA-8 1ST S TGE | | EA | | 1 | 18,636.17 | 100.0% | 18,636.17 |
| North Warehouse | Fieldwood | 54460 | | B3/B2/FLR | ROD: ALL GMV PWR PISTON | | EA | | 2 | 1,821.87 | 100.0% | 1,821.87 |
| North Warehouse | Fieldwood | 54468 | | B3/B2/S3 | PMP: GMVA H2O W/GSKTS | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 54469 | | WH/B41/FLR | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 13,051.81 | 100.0% | 13,051.81 |
| North Warehouse | Fieldwood | 54480 | | WH/B43/FLR | PSTN/ ROD ASSY: 16-1/4", 2ND STGE, | | EA | | 1 | 18,408.45 | 100.0% | 18,408.45 |
| North Warehouse | Fieldwood | 54481 | | Bay3/N Wall/FLR | PSTN/ROD ASSY: GMWE PWR,FITS GMWE-12 | | EA | | 1 | 3,223.36 | 100.0% | 3,223.36 |
| North Warehouse | Fieldwood | 54486 | | WH/B43/FLR | PSTN/ROD ASSY: GMWA | | EA | | 1 | 21,945.24 | 100.0% | 21,945.24 |
| North Warehouse | Fieldwood | 56001 | | WH/B41/S1 | BEARING: TLA COMPRSSR RD, BEARING | | EA | | 5 | 725.83 | 100.0% | 725.83 |
| North Warehouse | Fieldwood | 56002 | | WH/B41/S1 | BEARING: TLA MAIN | | EA | | 7 | 635.76 | 100.0% | 635.76 |

1

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 56633 | | B3/B5BS3 | KT: RPR CYL, TLA PWR | | EA | | 5 | 725.10 | 100.0% | 725.10 |
| North Warehouse | Fieldwood | 56644 | | B3/B4/S2 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,085.04 | 100.0% | 6,085.04 |
| North Warehouse | Fieldwood | 56645 | | B3/B4/S3 | SPRCKT: TLA | | EA | | 1 | 3,377.74 | 100.0% | 3,377.74 |
| North Warehouse | Fieldwood | 56646 | | B3/B3/S2 | SPRCKT: HYD PUMP & DRV | | EA | | 1 | 2,135.23 | 100.0% | 2,135.23 |
| North Warehouse | Fieldwood | 56648 | | WH/B41/S1 | LINE: CYL, TLA 2ND STG | | EA | | 1 | 7,817.91 | 100.0% | 7,817.91 |
| North Warehouse | Fieldwood | 56653 | | WH/B43/S2,TOP IN BACK | PSTN: TLA 2ND STGE | | EA | | 1 | 20,689.57 | 100.0% | 20,689.57 |
| North Warehouse | Fieldwood | 56654 | | WH/B44/S1 | PSTN: TLA 1ST STGE | | EA | | 1 | 22,170.79 | 100.0% | 22,170.79 |
| North Warehouse | Fieldwood | 56657 | | B3/B4/FLR | PMP: SHFT, TLA IDLER | | EA | | 1 | 1,136.85 | 100.0% | 1,136.85 |
| North Warehouse | Fieldwood | 56658 | | B3/B4/S3 | PMP: SHFT, TLA DRIVE | | EA | | 1 | 3,188.27 | 100.0% | 3,188.27 |
| North Warehouse | Fieldwood | 56659 | | B3/B4/S3 | PMP: SHFT, TLA WATER PUMP | | EA | | 1 | 1,789.07 | 100.0% | 1,789.07 |
| North Warehouse | Fieldwood | 56663 | | WH/B41/S2 | SHOE: TLA TPE XHD SLIPPER | | EA | | 1 | 2,514.18 | 100.0% | 2,514.18 |
| North Warehouse | Fieldwood | 56695 | | B3/B4/FLR | NUT: TLA CONNECTING ROD | | EA | | 4 | 397.17 | 100.0% | 397.17 |
| North Warehouse | Fieldwood | 56744 | | B3/B4/FLR | GEAR: TLA BULL TIMING CNTRL | | EA | | 1 | 1,898.39 | 100.0% | 1,898.39 |
| North Warehouse | Fieldwood | 56746 | | B3/B4/S3 | GEAR: TLA OIL PUMP | | EA | | 2 | 3,800.42 | 100.0% | 3,800.42 |
| North Warehouse | Fieldwood | 56771 | | B3/B4/FLR | LABYRINTH: TLA TURBINE | | EA | | 1 | 1,745.35 | 100.0% | 1,745.35 |
| North Warehouse | Fieldwood | 56772 | | B3/B4/FLR | LABYRINTH: TLA | | EA | | 2 | 626.73 | 100.0% | 626.73 |
| North Warehouse | Fieldwood | 56779 | | B3/B4/FLR | CARRIER: TLA BULL GEAR | | EA | | 3 | 1,286.24 | 100.0% | 1,286.24 |
| North Warehouse | Fieldwood | 56780 | | B3/B4/FLR | CARRIER: TLA IDLER GEAR | | EA | | 3 | 1,187.86 | 100.0% | 1,187.86 |
| North Warehouse | Fieldwood | 56782 | | B3/B4/FLR | LINKAGE: TLA LWR/CNTRL | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56788 | | B3/B4/FLR | SHFT COMPRSSR: TLA TIMER DR | | EA | | 2 | 739.68 | 100.0% | 739.68 |
| North Warehouse | Fieldwood | 56799 | | B3/B4/S3 | VLV: TLA FUEL | | EA | | 6 | 2,288.27 | 100.0% | 2,288.27 |
| North Warehouse | Fieldwood | 56800 | | B3/B5/S3 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,512.01 | 100.0% | 6,512.01 |
| North Warehouse | Fieldwood | 56802 | | WH/B44/S2 | PSTN/ROD ASSY: TLA MATL NO DRAW TYP E | | EA | | 1 | 9,300.03 | 100.0% | 9,300.03 |
| North Warehouse | Fieldwood | 56806 | | B3/B6/S1 | ROD: TLA W/LCKNG STDDS & PN SZ W/RD CAP | | EA | | 1 | 24,799.27 | 100.0% | 24,799.27 |
| North Warehouse | Fieldwood | 56808 | | B3/B3/S2 | WHEEL: TLA TRBN | | EA | | 1 | 23,760.81 | 100.0% | 23,760.81 |
| North Warehouse | Fieldwood | 56809 | | WH/B30/S1 | SCRN ASSY: TLA DWG | | EA | | 1 | 3,917.02 | 100.0% | 3,917.02 |
| North Warehouse | Fieldwood | 56810 | | B3/B4/S3 | JT: EXPNSN, TLA | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56811 | | B3/B1/S2 | JT: EXPNSN, TLA EXHAUST | | EA | | 1 | 980.17 | 100.0% | 980.17 |
| North Warehouse | Fieldwood | 56815 | | B3/B10/S2 | INTCLR ASSY: TLA SCAV AIR | | EA | | 6 | 4,339.69 | 100.0% | 4,339.69 |
| North Warehouse | Fieldwood | 56816 | | B3/B4/FLR | NUT: TLA ROD ALL STGS | | EA | | 1 | 1,012.96 | 100.0% | 1,012.96 |
| North Warehouse | Fieldwood | 56817 | | B3/B4/S3 | RING: TLA TURB NZZLE | | EA | | 2 | 8,435.25 | 100.0% | 8,435.25 |
| North Warehouse | Fieldwood | 58585 | | WH/SE Wall/FLR | CRNKSHFT | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 59286 | | WH/B43/S1 | PSTN/ROD ASSY: 9-3/4", GMV, W/ 3" ROD | | EA | | 1 | 12,227.14 | 100.0% | 12,227.14 |
| North Warehouse | Fieldwood | 71926 | | Bay3/N Wall/FLR | STDDS: STEP, CYL. W/ NUTS 4 SUCT | | EA | | 24 | 72.87 | 100.0% | 72.87 |
| North Warehouse | Fieldwood | 71936 | | B2/B1/S2 | CYL: HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71937 | | B2/B1/S2 | CYL, HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 71939 | | B2/B4/IS | CYL: COMPRSSR, 8", W/ ALL HD STDDS & NTS | | EA | | 1 | 6,558.73 | 100.0% | 6,558.73 |
| North Warehouse | Fieldwood | 71948 | | B2/B5/S1 | VLV CHR: UNRPR'D | | EA | | 8 | 153.04 | 100.0% | 153.04 |
| North Warehouse | Fieldwood | 71952 | | B2/B1/S2 | CYL: CMPRSSR, 8", W/ IB HEAD & P. GL ND | | EA | | 1 | 3,497.99 | 100.0% | 3,497.99 |
| North Warehouse | Fieldwood | 71955 | | B2/B4/S1 | PSTN: COMP, C.I., W/2 STEEL DONUTS | | EA | | 1 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 71971 | | B2/B1/S2 | PSTN/ ROD ASSY: X 2", NO RINGS, TUNGSTEN | | EA | | 1 | 1,289.88 | 100.0% | 1,289.88 |
| North Warehouse | Fieldwood | 71975 | | B2/B1/S2 | CRSSHD: GUIDE, WBF-74, BORE | | EA | | 1 | 3,279.36 | 100.0% | 3,279.36 |
| North Warehouse | Fieldwood | 71977 | | B2/B1/S2 | DIST PC: WBF-74, NEW OEM 14" CYL | | EA | | 1 | 2,040.49 | 100.0% | 2,040.49 |
| North Warehouse | Fieldwood | 71980 | | WH/B29/S1 | FAN ASSY: 7 BLADE 132" DIA AIR-X-CHANGER | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 71983 | | WH/B29/S1 | FAN BLDES: FIBERGLASS 62" L X 11-1/1 4" W | | EA | | 6 | 364.37 | 100.0% | 364.37 |
| North Warehouse | Fieldwood | 72001 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72002 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72013 | | WH/B8/FLR | HD: CYL, PWR, RECOND | | EA | | 2 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 72025 | | WH/B38/S1 | MANIFOLD: INTAKE | | EA | | 2 | 728.75 | 100.0% | 728.75 |
| North Warehouse | Fieldwood | 72027 | | WH/B36/S1 | MANIFOLD: EXHST, P9390, SECTIONS | | EA | | 3 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 72037 | | WH/B6/S2 | ROD: CONN, P9390, US'D | | EA | | 16 | 510.12 | 100.0% | 510.12 |
| North Warehouse | Fieldwood | 81982 | | B3/B2/FLR | ROD: ARTIC'LD, GMVC | | EA | | 1 | 1,366.40 | 100.0% | 1,366.40 |
| North Warehouse | Fieldwood | 81984 | | B3/B4/S3 | SPRCKT: TLA SGL SPLIT | | EA | | 1 | 6,635.24 | 100.0% | 6,635.24 |
| North Warehouse | Fieldwood | 81985 | | B3/B4/FLR | SPRCKT: TLA IDLER W/PUMP | | EA | | 1 | 1,923.89 | 100.0% | 1,923.89 |
| North Warehouse | Fieldwood | 81987 | | WH/B41/S2 | SHOE: GMVC XHD | | EA | | 1 | 1,689.76 | 100.0% | 1,689.76 |
| North Warehouse | Fieldwood | 89087 | | WH/B43/S1 | PSTN/ROD ASSY: SZ 28" US'D C7120-3A 3172 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 96073 | | WH/B8/S2 | PMP,HYD: 5.2gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 96074 | | WH/B8/S2 | PMP,HYD: 1.9gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 112605 | | B3/B8/FLR | KT: RPR VRA | | EA | | 3 | 852.63 | 100.0% | 852.63 |
| North Warehouse | Fieldwood | 112606 | | B3/B10/S1 | VLV | | EA | | 3 | 1,093.12 | 100.0% | 1,093.12 |
| North Warehouse | Fieldwood | 112608 | | B3/B10/S1 | VLV | | EA | | 6 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 197167 | | WH/B25/S2 | TRBCHRGR: VTC254 BBC W/MNTNG GSKT | | EA | | 1 | 33,066.91 | 100.0% | 33,066.91 |
| North Warehouse | Fieldwood | 200368 | | WH/B30/FLR | ROTOR ASSY, DEEPWELL PUMP | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 200371 | | B2/B10/FLR | CYL: WRTHGTN SIZE 9-1/4" | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200372 | | B2/B11/FLR | CYL: WRTHGTN, SIZE 7" | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200379 | | B2/B11/FLR | CYL: WRTHGTN SIZE 7.007 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 200380 | | WH/B5/S2 | IMPELLER: TURBINE | | EA | | 1 | 16,560.78 | 100.0% | 16,560.78 |
| North Warehouse | Fieldwood | 200381 | | WH/B5/S2 | IMPELLER: 'C30' B STG, SOLAR | | EA | | 1 | 17,289.53 | 100.0% | 17,289.53 |
| North Warehouse | Fieldwood | 200387 | | WH/B11/S1 | COMPR: AIR | | EA | | 1 | 6,194.35 | 100.0% | 6,194.35 |
| North Warehouse | Fieldwood | 200390 | | WH/B27/S2 | GEAR: BX TYPE, 206HS, RAT 1.262-1 | | EA | | 1 | 29,149.89 | 100.0% | 29,149.89 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 200400 | | WH/B5/S2 | BEARING ASSY: C30 SLR GC DMPR SUCT | | EA | | 1 | 21,060.80 | 100.0% | 21,060.80 |
| North Warehouse | Fieldwood | 200401 | | WH/B5/S2 | BEARING ASSY: C30 DIS SLR GC TILT PAD | | EA | | 1 | 18,346.21 | 100.0% | 18,346.21 |
| North Warehouse | Fieldwood | 200414 | | B2/B7/S1 | CYL: 6, WRTHGTN COMPRSSR | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200421 | | B2/B9/FLR | CYL: 15", COMPRSSR, NO STDDS F/VLV CAPS | | EA | | 1 | 14,574.95 | 100.0% | 14,574.95 |
| North Warehouse | Fieldwood | 200422 | | B2/B5/S1 | CYL: 9", COMPRSSR #10674-E I/R -RDS | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200423 | | B2/B11/S1 | CYL: 11-1/4", COMPRSSR W/ 11.287 BORE | | EA | | 1 | 13,117.45 | 100.0% | 13,117.45 |
| North Warehouse | Fieldwood | 200424 | | B2/B5/S2 | CYL: 5", COMPRSSR I/R-RDS | | EA | | 1 | 9,327.97 | 100.0% | 9,327.97 |
| North Warehouse | Fieldwood | 200426 | | WH/B20/S1 | TURBINE | | EA | | 1 | 3,643.74 | 100.0% | 3,643.74 |
| North Warehouse | Fieldwood | 202849 | | YD/R4 | HEAT EXCHNGR | | EA | | 1 | 22,226.79 | 100.0% | 22,226.79 |
| North Warehouse | Fieldwood | 202850 | | WH/B38/FLR | PMP: CMSD 4X6X10.5 | | EA | | 1 | 65,000.00 | 100.0% | 65,000.00 |
| North Warehouse | Fieldwood | 202854 | | Bay 6 | COMPR: PKG | | EA | | 1 | 22,117.48 | 100.0% | 22,117.48 |
| North Warehouse | Fieldwood | 202876 | | YD/R4 | ENG: NG 399 | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 227188 | | B3/B6/S1 | CYL: CPR GMWA-9-1A PWR CYLINDERS | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 228011 | | Bay 2 | PSTN/ROD ASSY: 29-1/2", CPR F/ V250 COM | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 228012 | | B2/B2/S1 | PSTN ROD: I/R RDS 2.125 IN CRBDE CTD | | EA | | 1 | 2,379.02 | 100.0% | 2,379.02 |
| North Warehouse | Fieldwood | 229324 | | WH/B44/S1 | PSTN/ROD ASSY: TLA COMPRSSR | | EA | | 1 | 4,733.25 | 100.0% | 4,733.25 |
| North Warehouse | Fieldwood | 233282 | | Linear Controls | ENG:NG,235hp,1200rpm | | EA | | 1 | 26,909.80 | 100.0% | 26,909.80 |
| North Warehouse | Fieldwood | 233305 | | B1/Floor | ENG:DIESEL,318hp,8,210 0rpm | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 233453 | | Yard/Row 3 | GEN:DIESEL,30kW,208/48 0V,AC,1800rpm, 3ph | | EA | | 1 | 9,291.53 | 100.0% | 9,291.53 |
| North Warehouse | Fieldwood | 241167 | | B2/B6/FLR | CYL: 28", VRA CLRK COMPRSSR | | EA | | 1 | 3,079.21 | 100.0% | 3,079.21 |
| North Warehouse | Fieldwood | 241168 | | B2/B7/FLR | CYL: 17", VRA CLRK COMPRSSR | | EA | | 1 | 2,309.41 | 100.0% | 2,309.41 |
| North Warehouse | Fieldwood | 241169 | | B2/B2/FLR | CYL: 9, VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241173 | | WH/B44/FL | PSTN/ROD ASSY: VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241179 | | WH/B1/Floor | HD: VRA CLRK O/BRD UNLDR | | EA | | 1 | 3,849.02 | 100.0% | 3,849.02 |
| North Warehouse | Fieldwood | 241181 | | B10K/B36/S1 | VLV CHR: VRA CLRK VLV CHRS F/13" | | EA | | 12 | 173.21 | 100.0% | 173.21 |
| North Warehouse | Fieldwood | 241182 | | B3/B10,11,12/FLR | PSTN: VRA CLRK PWR | | EA | | 6 | 2,169.33 | 100.0% | 2,169.33 |
| North Warehouse | Fieldwood | 241185 | | B3/B9/S1 | ROD: VRA CLRK ART CONN | | EA | | 1 | 11,708.19 | 100.0% | 11,708.19 |
| North Warehouse | Fieldwood | 241189 | | B3/B10/S3 | PIN: WRIST, VRA CLRK PWR PISTON | | EA | | 4 | 1,255.26 | 100.0% | 1,255.26 |
| North Warehouse | Fieldwood | 241191 | | B3/B8/S1 | TENSIONER: VRA CLRK CHAIN | | EA | | 2 | 1,196.78 | 100.0% | 1,196.78 |
| North Warehouse | Fieldwood | 241202 | | B3/B2/S2 | GVRNR: GMVC-12 | | EA | | 1 | 8,409.66 | 100.0% | 8,409.66 |
| North Warehouse | Fieldwood | 241203 | | B3/B1/FLR | JUMPER: H2O, GMVC-12 HD TO CYL | | EA | | 12 | 148.50 | 100.0% | 148.50 |
| North Warehouse | Fieldwood | 241205 | | B3/B3/S2 | JUMPER: H2O, GMVC-12 CYL TO RAIL | | EA | | 6 | 111.47 | 100.0% | 111.47 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 241216 | | B3/B3/S3 | EXHST: ELBOW, GMVC-12, GMVA-34-2C | | EA | | 4 | 857.27 | 100.0% | 857.27 |
| North Warehouse | Fieldwood | 251608 | | B2/Yard | ENG | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 252667 | | B2/B5/S2 | CYL: 6", WHT SUPR COMPRSSR CMPLT | | EA | | 1 | 4,862.67 | 100.0% | 4,862.67 |
| North Warehouse | Fieldwood | 323171 | | WH/B41/S1 | PSTN: RING FOR 23.00" PISTON | | EA | | 2 | 238.14 | 100.0% | 238.14 |
| North Warehouse | Fieldwood | 323172 | | WH/B41/S1 | PSTN: RING FOR 16.50" PISTON | | EA | | 2 | 223.27 | 100.0% | 223.27 |
| North Warehouse | Fieldwood | 323173 | | WH/B41/S1 | PSTN: RING FOR 10.50" PISTON | | EA | | 3 | 139.85 | 100.0% | 139.85 |
| North Warehouse | Fieldwood | 326861 | | WH/B41/FLR | PSTN: 10.50", PART #579-062-001 | | EA | | 1 | 6,451.03 | 100.0% | 6,451.03 |
| North Warehouse | Fieldwood | 326862 | | WH/B44/FLR | PSTN: ROD FOR 10.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326863 | | WH/B44/FLR | PSTN: ROD FOR 23.00", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326864 | | WH/B44/FLR | PSTN: ROD FOR 16.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 328243 | | WH/B41/FLR | PSTN: 16.50", PART #579-082-201 | | EA | | 1 | 18,426.94 | 100.0% | 18,426.94 |
| North Warehouse | Fieldwood | 329558 | | Linear Controls | ENG:NG,423hp,12,7in,H2 0,900rpm | | EA | | 1 | 84,000.00 | 100.0% | 84,000.00 |
| North Warehouse | Fieldwood | 333387 | | WH/B41/FLR | PSTN: 23.00", PART #579-303-201 | | EA | | 1 | 33,442.43 | 100.0% | 33,442.43 |
| North Warehouse | Fieldwood | 348619 | | B1/B1/S1 | MTR,ELEC:TEFC,3600rpm, 150hp,445LP | | EA | | 1 | 7,220.06 | 100.0% | 7,220.06 |
| North Warehouse | Fieldwood | 370132 | | Linear Controls | ENG:NG,85-220hp,1905in3,6,7IN | | EA | | 1 | 60,750.95 | 100.0% | 60,750.95 |
| North Warehouse | Fieldwood | 500133 | | Fluid Crane | SUMP TANK,4'WX10'LX4'H,ATM OS,EXT,16" PFLA | | EA | | 1 | 26,250.00 | 100.0% | 26,250.00 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 TA-3 | EA | | 1 | 5,135.00 | 100.0% | 5,135.00 |
| LAF-Southpark | Halliburton | ZCUSSH101398678 | | C019 | COMB CPLG,3 1/2-12 UN-2B X 3 1/2 API-NU | SHELL TROIKA GC 200 | EA | | 1 | 826.00 | 100.0% | 826.00 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | C585 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 1 | 914.85 | 100.0% | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | C585 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 1 | 914.85 | 100.0% | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | C500 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 1 | 914.85 | 100.0% | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101603543 | | C010 | SUB,BOT,MGP,5 1/2-10 UNS-2A X 5 1/4-10 | SHELL TROIKA GC 200 | EA | | 1 | 917.92 | 100.0% | 917.92 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P048 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | C585 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | C585 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101652773 | | C5006 | LN,2.750,S13CR,3 1/2-9.2 VARST1,B-P | SHELL TROIKA GC 200 | EA | | 1 | 728.83 | 100.0% | 728.83 |
| LAF-Southpark | Halliburton | ZCUSSH101858738 | | C5011 | PKR,7,32-35,4 1/2-4 AC-2G-LH  .SCB | SHELL TROIKA GC 200 | EA | | 1 | 6,494.54 | 100.0% | 6,494.54 |
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | C585 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | SHELL TROIKA GC 200 | EA | | 1 | 793.54 | 100.0% | 793.54 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wl% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | C585 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | SHELL TROIKA GC 200 | EA | | 1 | 793.54 | 100.0% | 793.54 |
| LAF-Southpark | Halliburton | ZCUSSH100008579 | | C028 | GID,TUBE,WD,5 3/8-10 UNS,7,32-38 X 4.00 | SHELL TROIKA GC 200 | EA | | 1 | 493.00 | 100.0% | 493.00 |
| LAF-Southpark | Halliburton | ZCUSSH101252847 | | C002 | MDRL,NWD,4 1/2-12 UN-2A X 4 1/2 API-LC,7 | SHELL TROIKA GC 200 | EA | | 1 | 889.00 | 100.0% | 889.00 |
| LAF-Southpark | Halliburton | ZCUSSH101290361 | | C027 | MULE SHOE GID,3 1/2-12 UN BOX | SHELL TROIKA GC 200 | EA | | 1 | 268.00 | 100.0% | 268.00 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | C358 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | SHELL TROIKA GC 200 | EA | | 1 | 2,643.00 | 100.0% | 2,643.00 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | P11 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | SHELL TROIKA GC 200 | EA | | 1 | 2,643.00 | 100.0% | 2,643.00 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | SHELL TROIKA GC 200 | EA | | 1 | 415.00 | 100.0% | 415.00 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | SHELL TROIKA GC 200 | EA | | 1 | 415.00 | 100.0% | 415.00 |
| LAF-Southpark | Halliburton | ZCUSSH101555547 | | C046 | SEAL ASSY,2.650 X 2 1/4 OTIS-ST | SHELL TROIKA GC 200 | EA | | 16 | 468.79 | 100.0% | 468.79 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | SHELL TROIKA GC 200 | EA | | 1 | 461.00 | 100.0% | 461.00 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | SHELL TROIKA GC 200 | EA | | 1 | 461.00 | 100.0% | 461.00 |
| LAF-Southpark | Halliburton | ZCUSSH323456 | | C5002 | SEAL UNIT EXT,3 1/2-12 UN,B-P,3.88 | SHELL TROIKA GC 200 | EA | | 1 | 813.00 | 100.0% | 813.00 |
| LAF-Southpark | Halliburton | ZCUSSH101944453 | | C5006 | COL SHFT TL,BS1,2.770,41XX LAS | SHELL TROIKA GC 200 | EA | | 4 | 1,532.00 | 100.0% | 1,532.00 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | P11 | TRV JT,3 1/2-9.20 VARST1 B-P | SHELL TROIKA GC 200 | EA | | 1 | 148.00 | 100.0% | 148.00 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7012 | FLDLOSS DVC,FS2-L,5.470,2.770,.SCB | SHELL TROIKA GC 200 | EA | | 1 | 16,617.00 | 100.0% | 16,617.00 |
| LAF-Southpark | Halliburton | ZCUSSH102132850 | | C5006 | SEAL ASSY,3.880 X 3 1/2-12 UN,MLD AFLAS | SHELL TROIKA GC 200 | EA | | 5 | 595.00 | 100.0% | 595.00 |
| LAF-Southpark | Halliburton | ZCUSSH102138028 | | C5006 | PERF COL LOCTR,4.000 X 2 7/8 API-EU | SHELL TROIKA GC 200 | EA | | 1 | 2,758.00 | 100.0% | 2,758.00 |
| LAF-Southpark | Halliburton | ZCUSSH102138040 | | C5006 | MULESHOE GDE,3 1/4-8 UN-2B,BOX,WITH BAF | SHELL TROIKA GC 200 | EA | | 1 | 374.23 | 100.0% | 374.23 |
| LAF-Southpark | Halliburton | ZCUSSH102154734 | | C5006 | SHR JT ASSY,3 1/2-9.20 VARST1,B-P | SHELL TROIKA GC 200 | EA | | 3 | 162.00 | 100.0% | 162.00 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | B5-R1-RW4 | TRV JT,3 1/2-9.20 VARST1 B-P | SHELL TROIKA GC 200 | EA | | 1 | 162.00 | 100.0% | 162.00 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | B5-R2-RW4 | TRV JT,3 1/2-9.20 VARST1 B-P | SHELL TROIKA GC 200 | EA | | 1 | 162.00 | 100.0% | 162.00 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7011 | FLDLOSS DVC,FS2-L,5.470,2.770,.SCB | SHELL TROIKA GC 200 | EA | | 1 | 16,617.00 | 100.0% | 16,617.00 |
| LAF-Southpark | Halliburton | ZCUSSH102134650 | | C5006 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 2 | 876.98 | 100.0% | 876.98 |
| GE - Broussard | GE - Broussard | H10004-2 | | | SCREW,CAP,HEX COLLAR, 2.000- 8 X 9.000 LG,UN-2A, LOW TEMPERATURE SERVICE | SHELL TROIKA GC 200 | EA | | 24 | 697.00 | 100.0% | 697.00 |
| OES - Broussard | Offshore Energy Services | GP5241-1 | | HW-R4-L1-A06 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5241-2 | | HW-R4-L1-A06 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5235-6 | | HW-R1-L2-A02 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5233-1 | | HW-R1-L1-A17 | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5233-2 | | HW-R1-L1-A17 | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5239-2 | | HW-R4-L1-A06 | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5239-3 | | HW-R4-L1-A06 | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5239-4 | | HW-R4-L1-A06 | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5240-1 | | HW-R4-L1-A06 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5240-2 | | HW-R4-L1-A06 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5036-1 | | HW-R3-L1-A15 | CROSSOVER (3.5" 9.20# 13CRS110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5036-2 | | HW-R3-L1-A15 | CROSSOVER (3.5" 9.20# 13CRS110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5037-1 | | HW-R3-L1-A15 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5037-2 | | HW-R3-L1-A15 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5035-1 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5035-2 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-3 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-4 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-5 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-6 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-7 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-8 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-9 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-1 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-2 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-3 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-4 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-3 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-4 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-5 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-6 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-1 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5040-2 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-3 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-4 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-5 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-6 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-7 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5042-1 | | HW-R1-L3-A18 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 10FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5048-1 | | HW-R2-L6-A06 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5047-1 | | HW-R2-L6-A02 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 14FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5038-1 | | HW-R3-L1-A15 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5039-1 | | HW-R4-L1-A21 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5039-2 | | HW-R4-L1-A21 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5039-3 | | HW-R4-L1-A21 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5045-1 | | HW-R2-L1-A13 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5043-1 | | HW-R1-L3-A18 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 8FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5063-1 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-2 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5063-3 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-4 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-5 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-6 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-7 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-8 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-1 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-10 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-2 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-3 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-4 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-5 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-6 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-7 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5060-8 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-9 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5266-1 | | HW-R3-L5-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5266-2 | | HW-R3-L5-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| Schiever | Weatherford | 541R070SLI2Q12A002 | | (13) OUTSIDE 14    (7) OUTSIDE 16 | SUB, CENTRALIZER ROT 7 541R Q125 VAM SLIJ-II 32.0 9.75 OD | SHELL TROIKA GC 200 | EA | | 20 | 635.00 | 100.0% | 635.00 |
| Schiever | Weatherford | M212W70SLI2Q12A002 | | OUTSIDE 6 | SHOE, GUIDE 7 M212W CONC CMPST Q125 VAM SLIJ-II 32.0 | SHELL TROIKA GC 200 | EA | | 2 | 471.18 | 100.0% | 471.18 |
| Schiever | Weatherford | M45AP70SLI2Q12A002 | | OUTSIDE 6 | COLLAR, FLOAT 7 M49AP Q125 NR VAM SLIJ-II 32.0 2-4 | SHELL TROIKA GC 200 | EA | | 2 | 1,092.48 | 100.0% | 1,092.48 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 61 | 1-48" X 15' X 230 WP L.P. Horizontal Separator (No Skid) | ? | EA | | 1 | 4,850.00 | 100.0% | 4,850.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 64 | 24" X 10' Vertical H.P. Separator w/Skid | Eugene Island Block#266-B | EA | | 1 | 1,770.00 | 100.0% | 1,770.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 65 | 12" X 6' Vertical LP Fuel Gas Scrubber (No Skid) | ? | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 66 | 12" X 6' Vertical LP Fuel Gas Scrubber w/Skid | South Marsh Island 11-N | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 70 | 1-120 Degree Boat Landing with 48" Plate Doublers | South Marsh Island 11 | EA | | 1 | 820.00 | 100.0% | 820.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 73 | 24" X 10' Vertical H.P. Separator w/Skid | ? | EA | | 1 | 1,625.00 | 100.0% | 1,625.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 74 | 30" X 10' Vertical LP Test Separator w/Skid | ? | EA | | 1 | 1,895.00 | 100.0% | 1,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 77 | 16" X 8' Vertical LP Separator (No Skid) | South Marsh Island 10 | EA | | 1 | 1,455.00 | 100.0% | 1,455.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 90 | 1-48" X 10' X 275 WP L.P. Horizontal Scrubber Vessel NO SKID | South Marsh island Block# 48 E | EA | | 1 | 4,120.00 | 100.0% | 4,120.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 96 | 1-Glycol Reboiler with Stack & Stihl Column | High Island Block# 467 A | EA | | 1 | 8,145.00 | 100.0% | 8,145.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 100 | 48" X 10' X 275# W.P. Horizontal Water Skimmer with Skid | N/A | EA | | 1 | 4,175.00 | 100.0% | 4,175.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 101 | 42" X 15' X 1440# W.P. Horizontal 3-Phase Separator "No Skid" | N/A | EA | | 1 | 3,895.00 | 100.0% | 3,895.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 102 | 42" X 12' 6" X 125# W.P. Horizontal Skimmer with Skid | N/A | EA | | 1 | 3,215.00 | 100.0% | 3,215.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 103 | 20" X 7' 6" X 275 W.P. Vertical Separator with Skid | N/A | EA | | 1 | 1,210.00 | 100.0% | 1,210.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 104 | 30" X 10' X 1480 W.P. Horizontal Separator with Skid | N/A | EA | | 1 | 2,150.00 | 100.0% | 2,150.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 105 | One Dual Meter Run Skid with Pig Traps | N/A | EA | | 1 | 1,385.00 | 100.0% | 1,385.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 106 | 30" X 6' X 150# W.P. Vertical Scrubber Vessel with Skid | N/A | EA | | 1 | 1,665.00 | 100.0% | 1,665.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. KK | 30" X 4' X 250 WP Vertical Scrubber Vessel w/Skid | From Offshore Specialty Fabricators in Houma | EA | | 1 | 1,570.00 | 100.0% | 1,570.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. CCC | Line Heater/Reboiler Package 8' W X 22' 6"L X 10' 1" T | Eugene Island Block# 212 "A" | EA | | 1 | 12,275.00 | 100.0% | 12,275.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. DDD | 3-Vapor Recovery Stands | Eugene Island Block# 212 "A" | EA | | 1 | 235.00 | 100.0% | 235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. EEE | 1-Heater Stack, 1-Still Column, and Misc Pipe and Hardware for Line Heater/Reboiler | Eugene Island Block# 212 "A" | EA | | 1 | 355.00 | 100.0% | 355.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 107 | 1-Pallet of Used Spool Piping | West Cameron Block# 165 "A" | EA | | 1 | 295.00 | 100.0% | 295.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 108 | 1-Stairway with Handrails, 1-Caged Access Ladder, & 2-Small Deck Extension/Work Platofrms | Green Canyon Block# 65 "A" | EA | | 1 | 225.00 | 100.0% | 225.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 109 | 1-Filter Separator with Skid (5' X 12' X 8' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,155.00 | 100.0% | 1,155.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 110 | 1-Float Cell with Skid (7' X 12' X 9' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,490.00 | 100.0% | 1,490.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 111 | Two (2) Plate Heat Exchanger Skids | High Island Block# A595 "CF" | EA | | 1 | 475.00 | 100.0% | 475.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 112 | 1-Piggy-Back Water Skimmer & Float Cell Package (Newly Fabricated) | Main Pass Block# 140-A | EA | | 1 | 5,025.00 | 100.0% | 5,025.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 113 | 1-Verticle Water Skimmer Vessel with Skid (60" X 12" X 15,000#) (MBM-1800) | Vermilion Block# 60-A | EA | | 1 | 3,375.00 | 100.0% | 3,375.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 114 | 1-Verticle Floatation Unit (4M Spinsep) with Skid (ABM-1908) (10,150#) (Monosep Corporation-Serial# MCO-2076) | West Cameron Block# 68-A | EA | | 1 | 655.00 | 100.0% | 655.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 115 | 1-Verticle Test Separator with Skid (MBD-4501) (36 X 10 Foot X 17,000#) (2,000 WP @ 100 deg, MFG 1982) | West Cameron Block# 68-A | EA | | 1 | 865.00 | 100.0% | 865.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 116 | 1-Horizontal 3-Phase H.P. Production Separator with Skid (MBD-4502) (60" X 15') (1440 @ 100 Deg-Yr Built 1982) | West Cameron Block# 68-A | EA | | 1 | 1,435.00 | 100.0% | 1,435.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 117 | 1-Vertical Vent Scrubber Package with Skid (MBF-2401) (30" X 10' X 22,000#) | West Cameron Block# 68-A | EA | | 1 | 1,775.00 | 100.0% | 1,775.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 118 | 1-Horizontal 2-Phase Vent Scrubber Vessel W/Skid (48" X 10' X 150# @ 100 Deg) Built 1987 | East cameron Block# 320-A | EA | | 1 | 3,545.00 | 100.0% | 3,545.00 |
| Viking - Henderson | Viking Fabricators, LLC | | | | Handrails | | EA | | 179 | 315.00 | 100.0% | 315.00 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDER CAGES | | EA | | 1 | 763.87 | 100.0% | 763.87 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 12'-6" LONG LADDER CAGES | | EA | | 84 | 1,291.85 | 100.0% | 1,291.85 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDERS | | EA | | 81 | 622.75 | 100.0% | 622.75 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 20 FT. LONG LADDERS | | EA | | 107 | 1,236.43 | 100.0% | 1,236.43 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11233630-1 | ATS - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 7,155 | 1 | 5,545.13 | 100.0% | 5,545.13 |
| Linear - Lafayette | Linear Controls | 2124617-01 | 2659561170 | ATS - OUTDOOR | ASSY, RIG TEST SKID, SUBSEA TREE, | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124117-07 | 400257303-01 | ATS - OUTDOOR | CONV. ASSY, SUBSEA TREE, 4" X 2"-10M, | | EA | 80,000 | 1 | 62,000.00 | 100.0% | 62,000.00 |
| Linear - Lafayette | Linear Controls | 2273013-01 | 110598733-1(RR1) | ATS - OUTDOOR | ASSEMBLY, 5" X 2"-10M SPOOLTREE. | | EA | 66,000 | 1 | 51,150.00 | 100.0% | 51,150.00 |
| Linear - Lafayette | Linear Controls | 2124123-01 | 96101817050 | ATS - OUTDOOR | ASSY, TREE CAP SHIPPING SKID | | EA | 1,850 | 1 | 1,433.75 | 100.0% | 1,433.75 |
| Linear - Lafayette | Linear Controls | 2124145-01 | 45256012-5 | ATS - OUTDOOR | ASSY, HUB, 4" WELL TERMINATION, | | EA | 1,400 | 1 | 1,085.00 | 100.0% | 1,085.00 |
| Linear - Lafayette | Linear Controls | 2141833-01 | 11227730-01 | ATS - OUTDOOR | ASSY, TREE TRANSPORTATION SKID, BP | | EA | 5,800 | 1 | 4,495.00 | 100.0% | 4,495.00 |
| Linear - Lafayette | Linear Controls | 2124836-01 | 11171617-1 | ATS - OUTDOOR | TEST STUMP BODY, TREE FAT SKID, | | EA | 6,200 | 1 | 4,805.00 | 100.0% | 4,805.00 |
| Linear - Lafayette | Linear Controls | 2124641-01 | 11384318-1 | ATS - OUTDOOR | ASSY, COMPLETION GUIDE BASE, STM-15 | | EA | 20,500 | 1 | 15,887.50 | 100.0% | 15,887.50 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11197244-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11199037-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124119-01 | 964534560 | ATS - OUTDOOR | ASSY, TREE RUNNING TOOL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 265340930 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124128-01 | 11286013-17 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER, STM-15, | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561200 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561190 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2018904-01 | 265956120(RR2) | TOOLSKID - OUTDOOR | ASSY, LEAD IMPRESSION TOOL | | EA | 900 | 1 | 697.50 | 100.0% | 697.50 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 266013010 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124139-01 | 11186901-01 | TOOLSKID - OUTDOOR | ASSY, DUMMY TBG HGR, STM-15, 4.06" | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2055294-12 | 110357224-01 | CPB 077 - INDOOR | ASSEMBLY, TUBING HANGER, 5 IN NOM. | | EA | 2,500 | 1 | 1,937.50 | 100.0% | 1,937.50 |
| Linear - Lafayette | Linear Controls | 2748033-01 | 45353783-01-01 | CPB 077 - INDOOR | WIRELINE PLUG, 5.25" DIA, METAL AND | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2749898-01 | 4500436775-2-1 | CPB 077 - INDOOR | 5.250" WIRELINE PLUG 'HH' TRIM WITH | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2055296-02-01 | 110407008-1 | CPB 078 - INDOOR | ASSEMBLY, INTERNAL TREE CAP, 10K WP | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 60007268 | 96953428110 | SF-YARD - OUTDOOR | TROIKA TOOL SHED | | EA | | 1 | 15,000.00 | 100.0% | 15,000.00 |
| Linear - Lafayette | Linear Controls | 2124147-04 | 111802674 | TRI 168 - INDOOR | ASSY, CLAMP, W/ SEAL PLATE, 10" | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-06 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11363037-01 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-04 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-04 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-01 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |
| Linear - Lafayette | Linear Controls | 041700-47 | 4503010723-1-1 | TRI 171 - INDOOR | GASKET, AX - 18-3/4" 10/15M 316 SS | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219520 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219570 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2141279-01 | 4502534448-01-01 | TRI 172 - INDOOR | CLAMP, 10" FLOWLINE/ PIGGING LOOP/ | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-02-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-01-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-03-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2142930-01 | 4501742451-1-2 | TRI 174 - INDOOR | ACCESS STAND, G2 TUBING HANGER RUNNING | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2124581-01 | 11410124-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-02 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-02 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-03 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-04 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-01 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-03 | 4502533058-01-01 | TRI 174 - INDOOR | SEAL PLATE, 10" FLOWLINE JUMPER | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11251434-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124586-01 | 450605865-1 | TRI 175 - INDOOR | END PLATE, MANDREL RETAINER, | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2124584-01 | 450605849-1-1 | TRI 175 - INDOOR | MANDREL, RETAINER SLEEVE, | | EA | 400 | 1 | 310.00 | 100.0% | 310.00 |
| Linear - Lafayette | Linear Controls | 2124535-01 | NS201604020729021 | TRI 175 - INDOOR | ANNULUS LOOP, 2.875 O.D. X 2.125 | | EA | 300 | 4 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124624-01 | 450604006-1 | TRI 175 - INDOOR | BODY, 4" PRODUCTION STAB, | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124585-01 | 450605858-1 | TRI 175 - INDOOR | RETAINER PLATE, MASTER VALVE BLOCK | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2156742-01 | 11328834-01 | TRI 175 - INDOOR | SUB-ASSY, BOP SPANNER JOINT, 7.625" | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2156773-02 | 11322641-01 | TRI 175 - INDOOR | UPPER ADAPTER, BOP SPANNER JOINT, | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 400297648 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 11213146-1 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133273 | TRI 178 - INDOOR | AX GASKET, 11"-5M/10M#, ST/STL WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133274 | TRI 178 - INDOOR | AX GASKET, 11"-5M/10M#, ST/STL WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-1 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-2 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-8 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-6 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-11 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-2 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45438628-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-4 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 501040-1 | 961276244180 | TRI 178 - INDOOR | 6" Gasket Sealing Ring | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-04 | 45424496-2 | TRI 178 - INDOOR | GASKET W/ O-RING, 10"-15M SEAL | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124796-01 | 45424796-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-06 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434274-02 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-03 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124134-01 | 2659561110 | TRI 180 - INDOOR | ASSY, TUBING HANGER ADJUSTMENT STAN | | EA | 600 | 1 | 465.00 | 100.0% | 465.00 |
| Linear - Lafayette | Linear Controls | 2099720-02 | 26-1567 | TRI FLOOR - INDOOR | ASSY, TREE CAP RUNNING TOOL, BP | | EA | 5,000 | 1 | 3,875.00 | 100.0% | 3,875.00 |
| Linear - Lafayette | Linear Controls | 60031311 | 9523237807360 | TRI SHED - INDOOR | Troika Dummy Control Pod | | EA | 3,000 | 1 | 2,325.00 | 100.0% | 2,325.00 |
| Linear - Lafayette | Linear Controls | 60031470 | 9523237807390 | TRI SHED - INDOOR | SHELL DUMMY CONTROL POD SHIPPING SKID | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2123000-01 | 9624280360 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123000-01 | 2657807220 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123738-01 | 9624280370 | TRI-SHELL - OUTDOOR | LIFT SUB, 1.50" NOM SHACKLE X | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11196376-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11210778-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2035504-02 | 961276650350 | TRI-SHELL - OUTDOOR | ASSY, DEBRIS CAP, 18-3/8" OD MCPAC | | EA | 100 | 1 | 77.50 | 100.0% | 77.50 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650650 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650660 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2156132-01 | 9523237807220 | TRI-SHELL - OUTDOOR | ASSY, COMBINATION (TREE/TREE CAP) | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2156145-01 | 11324065-01 | TRI-SHELL - OUTDOOR | ASSY, 3-1/16-15M MONOBORE TUBING | | EA | 8,500 | 1 | 6,587.50 | 100.0% | 6,587.50 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807330 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807340 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11278658-1 | TRI-SHELL - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 8,000 | 1 | 6,200.00 | 100.0% | 6,200.00 |
| Linear - Lafayette | Linear Controls | | Serial.# WPI317 | | Waukesha Engine  L7042 GSI | | EA | | 1 | 82,625.00 | 100.0% | 82,625.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | | Serial.# 48799 | | Waukesha Engine  L3711 | | EA | | 1 | 51,250.00 | 100.0% | 51,250.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 1029776 | | Waukesha Engine  F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 218794 | | Waukesha Engine  F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.#396632 | | Waukesha Engine  F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 362530 | | Waukesha Engine  F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Whitco - Broussard | Whitco Supply | 357501 | | | 1" x 3' x 20' Galvanized Grating | | EA | | 106 | 395.00 | 100.0% | 395.00 |
| Whitco - Broussard | Whitco Supply | 333963 | | | 1-1/2" x 3' x 20' Galvanized Grating | | EA | | - | 598.00 | 100.0% | 598.00 |
| Express - Fourchon | Express Supply & Steel | | | | 1" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 10 | 400.65 | 100.0% | 400.65 |
| Express - Fourchon | Express Supply & Steel | | | | 1-1/2" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 35 | 555.67 | 100.0% | 555.67 |

17

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 04536.B | | MW-R18-FL | Torque Tool with Calibration Set | | THUNDERHAWK | EA | | | | | | 0.01 | 0.01 |
| Deepwater Warehouse | Fieldwood | 04558.A | | BW-R4-2 | Assy, Choke insert, CC405R, CV=300 | | | EA | | | 1 | | | 35854.02 | 35854.02 |
| Deepwater Warehouse | Fieldwood | 04564.B | | MW-R2-FL | Assy, Internal Tree Cap, 10M | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | | 45523.37 | 0 |
| Deepwater Warehouse | Fieldwood | 04627.B | | DWW-YARD-C-VAN CPIU 03011222G1 | PLUG, ELECTRICAL;TYP:EFL-SPARE 9-WAY,SPCL FEAT:LEAD 275 FT TOOL, TYPE: CVC OVER-RIDE, MFG: CAMERON, PN: 2166761-02 REV 01, APPLI: | | | EA | | | 0 | | | 5378.1 | 0 |
| Deepwater Warehouse | Fieldwood | 04630.A | | BW-R3-3 | FOR CAMERON VERTICAL CONNECTION (CVC) SYSTEM | | | EA | | | 1 | | | 143.41 | 143.41 |
| Deepwater Warehouse | Fieldwood | 04631.C | | MR-5-E | TOOL, SETTING;MFR:CAMERON,PN:2166877-03,TYP MANUAL LOCKOUT | | | EA | | | 0 | | | 35.855 | 0 |
| Deepwater Warehouse | Fieldwood | 04651.A | | DWW-YARD-C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | | 142590 | 285180 |
| Deepwater Warehouse | Fieldwood | 04651.A | | DWW-YARD C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | 137897 | VK 917/962 PRE FEED WORK | EA | | | 0 | | | 126000 | 0 |
| Deepwater Warehouse | Fieldwood | 04651.A | | DWW-YARD C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | | | EA | | | 0 | | | 134850.33 | 0 |
| Deepwater Warehouse | Fieldwood | 04651.B | | DWW-YARD C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | | | EA | | | 0 | | | 121174.8 | 0 |
| Deepwater Warehouse | Fieldwood | 04651.B | | BW-AREA 1 | Assy, 6", 10K CVC Connector, 6.625 OD | | | EA | | | 1 | | | 0 | 0 |
| Deepwater Warehouse | Fieldwood | 04652.A | | BW-R9-FL | HUB, TYPE: ASSEMBLY, MFG: CAMERON, PN: 2166393-62, APPUCATION: FOR F22 AND RECEIVER STRUCTURE | | | EA | | | 2 | | | 62806.32 | 125612.64 |
| Deepwater Warehouse | Fieldwood | 04760.A | | MR-3-E | GASKET, RING JOINT;CODE:S-AA,MATL,NOM SZ:6IN,CL:10000PSI,STD:PSL 2-4,MFR:CAMERON,PN:2035804-07 | | | EA | | | 1 | | | 4201.68 | 4201.68 |
| Deepwater Warehouse | Fieldwood | 04778.A | | DWW-YARD - FRONT | CAP;MFR:VETCO GRAY,PN:H28B500-1,TYP CORROSION,SZ 18.750 IN,CONN TYP LEAF SPRING RETENTION FOR H-4 WELLHEAD,MATL:ALUMINUM,COMPRISING TWO RUNNING/LIFT PINS, W/HORIZONTAL ROV STAB,APPLI: WELLHEAD ABANDONMENT | 202673 | MC 948 4 GUNFLINT TA | | | | 1 | | | 19200 | 19200 |
| Deepwater Warehouse | Fieldwood | 08427.A | | DWW-YARD C-VAN HUCU 1339199 | SHACKLE,BOLT TYPE ANCHOR,17.000 TON SAFE WORKING LOAD,1.375 DIA,GALVINIZED,CROSBY,G2130,1019631 | | | EA | | | 0 | | | 376.4670588 | 0 |
| Deepwater Warehouse | Fieldwood | 08919.A | | MW-10-2 | GASKET, RING JOINT;CODE:VX-2,MATL:SS,MATL GR:316,CL:10000PSI,COMPRISING:HYCAR INSERTS,APPLI:WELLHEAD (SIZE: 18-3/4 IN),MFR:VETCO GRAY,PN:111227-1,EQ MODEL:MS-700 | AFE FW193004 | TROIKA | | | | 2 | | | 0 | 0 |
| Deepwater Warehouse | Fieldwood | 08919.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2,MATL:SS,MATL GR:316,CL:10000PSI,COMPRISING:HYCAR INSERTS,APPLI:WELLHEAD (SIZE: 18-3/4 IN),MFR:VETCO GRAY,PN:111227-1,EQ MODEL:MS-700 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 0 | | | 4352 | 0 |
| Deepwater Warehouse | Fieldwood | 08919.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2,MATL:SS,MATL GR:316,CL:10000PSI,COMPRISING:HYCAR INSERTS,APPLI:WELLHEAD (SIZE: 18-3/4 IN),MFR:VETCO GRAY,PN:111227-1,EQ MODEL:MS-700 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | | 4352 | 0 |
| Deepwater Warehouse | Fieldwood | 08920.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2/VT-2,MATL:SS,MATL GR:316,CL:15000PSI,APPLI:WELLHEAD (SIZE: 18-3/4 IN),MFR:VETCO GRAY,PN:H10931-2,EQ MODEL:MS-700 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | | 7995.95 | 0 |
| Deepwater Warehouse | Fieldwood | 08920.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2/VT-2,MATL:SS,MATL GR:316,CL:15000PSI,APPLI:WELLHEAD (SIZE: 18-3/4 IN),MFR:VETCO GRAY,PN:H10931-2,EQ MODEL:MS-700 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 0 | | | 7995.95 | 0 |
| Deepwater Warehouse | Fieldwood | 12161.A | | MW-R10-FL | CAP;TYP:INTERNAL PRESSURE,APPLN:SUBSEA INTERNAL WELLHEAD TREE,MFR:CAMERON,PN:2180719-09 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | | 30000 | 30000 |
| Deepwater Warehouse | Fieldwood | 13266.A | | PUP JOINT RACK-FLOOR | COUPLING, OCTG;NOM SZ:4-1/2IN,WT:12.60lb/ft,MATL GR:13CR80,TOP CONN TYP:VAM TOP | | | EA | | | 1 | | | 433.08 | 433.08 |
| Deepwater Warehouse | Fieldwood | 13286.A | | PR-R1-2 | KIT;COMPRISING:SPLICE (SIZE: 3/4 IN),MFR: SCHLUMBERGER,MN:EDMC-R,REF:90043-000-00001 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | | 12500 | 0 |
| Deepwater Warehouse | Fieldwood | 13286.A | | PR-R1-2 | KIT;COMPRISING:SPLICE (SIZE: 3/4 IN),MFR: SCHLUMBERGER,MN:EDMC-R,REF:90043-000-00001 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | | 12500 | 0 |
| Deepwater Warehouse | Fieldwood | 13449.A | | MR-3-C | Blind Plug, Compensating For the 10K hangers. Alloy 718 Compensating Blind Piston Top Assembly, 2 x 1.6 cu.in. Expansion Chambers; Material Number,P5025-21 | | MC 698 1 BIG BEND FEED COMPLT | EA | | | 6 | | | 23533 | 141198 |
| Deepwater Warehouse | Fieldwood | 13798.A | | OS-R1-S3 | CARD, ELECTRONIC;TYP:1-CHANNEL SUBSEA INTERFACE,FUNC:DOWN HOLE PRESSURE AND TEMPERATURE GAUGE (4),TEMP RNGE:20 TO 3F HEXADECIMAL,MFR: SCHLUMBERGER,MFR:WELLWATCHER,BRAND:UNKNOWN,EQ MODEL:SERIES ESLIC | 139991 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | | 11500 | 11500 |
| Deepwater Warehouse | Fieldwood | 13798.A | | OS-R1-S3 | CARD, ELECTRONIC;TYP:1-CHANNEL SUBSEA INTERFACE,FUNC:DOWN HOLE PRESSURE AND TEMPERATURE GAUGE (4),TEMP RNGE:20 TO 3F HEXADECIMAL,MFR: SCHLUMBERGER,MFR:WELLWATCHER,BRAND:UNKNOWN,EQ MODEL:SERIES ESLIC | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | | 11500 | 11500 |
| Deepwater Warehouse | Fieldwood | 13799.A | | PR-R1-2 | CONNECTOR, ELECTRICAL,CONDCTR SZ:16-18AWG,MFR:EXPRO,PN:DHCE-AS1-BQ-015-001-HN,MFR:TRONIC,BRAND:UNKNOWN | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | | 6962.5 | 0 |
| Deepwater Warehouse | Fieldwood | 14397.A | | DWW-YARD | CONTROL LINE,SINGLE,0.375 X 0.049,INCOLOY 825,ENCAPULATED IN SANTOPRENE JACKET,MID-SOUTH CONTROL LINE,FILLED & FLUSHED TO NAS CLASS 6 STANDARDS W/TRANSAQUA HT | | | FT | | | 0 | | | 3.738570732 | 0 |
| Deepwater Warehouse | Fieldwood | 14541.A | | DWW-YARD C-VAN HUCU-1481372 | FLOAT COLLAR,16.000 IN,96.00 LBS/FT, HCQ125 TSH 511 | | | EA | | | 2 | | | 17883.2275 | 35766.455 |
| Deepwater Warehouse | Fieldwood | 14543.A | | DWW-YARD C-VAN 402189-0 | GUIDE SHOE, 17.875 P110 TSH 521 | | | EA | | | 1 | | | 12739.3 | 12739.3 |
| Deepwater Warehouse | Fieldwood | 14862.A | | MR-1-D | ADAPTOR, TUBE TO PIPE;TYP:HANGER CONNECTOR,TUBE OD:1/4IN,PIPE SZ:0.5625IN,PIPE CONN:MTM,MFR:PETRO TECHNOLOGIES,PN:120MA21 REV N | | | EA | | | 0 | | | 1417.75 | 0 |
| Deepwater Warehouse | Fieldwood | 15036.A | | BW-AREA 3 | CENTRALIZER, CASING;TYP:SPRING,CASNG NOM SZ:22IN,CONN TYPE:STRAIGHT LATCH ON,BOW TYP:LAP WELDED,SPCL FEAT:RS BOW OD: 29-5/8 IN,MFR:WEATHERFORD,PN:1105722/571157,MN:SERIES 57R | 203389 | MC 339 SILVERGATE DRL | EA | | | 27 | | | 195 | 5265 |
| Deepwater Warehouse | Fieldwood | 15036.A | | BW-AREA 3 | CENTRALIZER, CASING;TYP:SPRING,CASNG NOM SZ:22IN,CONN TYPE:STRAIGHT LATCH ON,BOW TYP:LAP WELDED,SPCL FEAT:RS BOW OD: 29-5/8 IN,MFR:WEATHERFORD,PN:1105722/571157,MN:SERIES 57R | 201560 | GC 40 02 Katmai 2 | EA | | | 6 | | | 195 | 1170 |
| Deepwater Warehouse | Fieldwood | 17709.A | | MR-GENERAL | PLUG,WIRELINE, F/CAMERON S.250 IN TUBING HANGER, CAMERON PN:2749898-01 | | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | | 52100 | 52100 |
| Deepwater Warehouse | Fieldwood | 17946.A | | DWW-YARD C-VAN HUCU 1339199 | SS Wellhead, SEAL ASSEMBLY, 22" X 16" BIG BORE II, WEIGHT SET METAL TO METAL, SEAL, RATED 6,500 PSI, H2S SERVICE DRIL QUIP PN 2-403134-02 | | | EA | | | 0 | | | 23000.35 | 0 |
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HUCU 1339199 | FLANGE;TYP:WELD ON,MATL:SS,SPCL FEAT:ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP Q504.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | | | EA | | | 0 | | | 2179.220417 | 0 |
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HUCU 1339199 | FLANGE;TYP:WELD ON,MATL:SS,SPCL FEAT:ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP Q504.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | 203389 | MC 339 SILVERGATE DRL | EA | | | 0 | | | 3275.9 | 0 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HJCU 1339199 | FLANGE;TYP:WELD ON,MATL:SS,SPCL FEAT:ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP QS04.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 0 | | 3255 | 0 | |
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HJCU 1339199 | FLANGE;TYP:WELD ON,MATL:SS,SPCL FEAT:ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP QS04.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | 201560 | GC 40 02 Katmai 2 | EA | | | 0 | | 3329.76 | 0 | |
| Deepwater Warehouse | Fieldwood | 18083.A | | BW-R5-FL | VALVE, BALL;OPRTD:ROV HANDLE,CONN 1 SZ:4IN,CONN 1 TYPE:NPT,CLS:1000PSI,SPCL FEATRS:PIPE NIPPLE, HAMMER UNION, 0-600 PSI PRESSURE GAUGE, EVERY (4) VALVES,APPLI:SS WELLHEAD,MFR:DRIL-QUIP,PN:2-904265-02 | | | EA | | | 1 | | 2053.607214 | 2053.607214 | |
| Deepwater Warehouse | Fieldwood | 18083.A | | DWW-YARD C-VAN HJCU 1339199 | VALVE, BALL;OPRTD:ROV HANDLE,CONN 1 SZ:4IN,CONN 1 TYPE:NPT,CLS:1000PSI,SPCL FEATRS:PIPE NIPPLE, HAMMER UNION, 0-600 PSI PRESSURE GAUGE, EVERY (4) VALVES,APPLI:SS WELLHEAD,MFR:DRIL-QUIP,PN:2-904265-02 | | | EA | | | 0 | | 2053.607214 | 0 | |
| Deepwater Warehouse | Fieldwood | 18083.A | | DWW-YARD-C-VAN CCLU667229-9 | VALVE, BALL;OPRTD:ROV HANDLE,CONN 1 SZ:4IN,CONN 1 TYPE:NPT,CLS:1000PSI,SPCL FEATRS:PIPE NIPPLE, HAMMER UNION, 0-600 PSI PRESSURE GAUGE, EVERY (4) VALVES,APPLI:SS WELLHEAD,MFR:DRIL-QUIP,PN:2-904265-02 | | | EA | | | 0 | | 2053.607214 | 0 | |
| Deepwater Warehouse | Fieldwood | 18087.A | | DWW-YARD C-VAN HJCU 1339199 | SWEDGE,CROSSOVER,22" X 1.000" W.T. BWP DOWN BY 22.130" X .750" W.T. BWP UP, DRIL QUIP PN:2-404391-07, PER NOBLE QP QS04.01 | | | EA | | | 0 | | 5075.488889 | 0 | |
| Deepwater Warehouse | Fieldwood | 18089.A | | DWW-YARD C-VAN HJCU 1339199 | SS Wellhead, SEAL ASSEMBLY,22" X 18" BIG BORE II, S510/S515, WEIGHT SET RESILIENT SEAL, RATED 5,000 PSI., DRIL QUIP PN:1-408455-05,MONO API 17D,PER NOBLE QP QS04.01 | | | EA | | | 0 | | 37060.07286 | 0 | |
| Deepwater Warehouse | Fieldwood | 18097.A | | DWW-YARD C-VAN HJCU 1339199 | SS Wellhead, SEAL ASSEMBLY, 18-3/4  S515, 15M PSI, DUAL WEIGHT SET METAL TO METAL SEALS, FOR  HANGERS 13-3/8 AND SMALLER, INCLUDES OUTER LOCK RING, H2S SERVICE, DRILQUIP PN 2-404254-05,PER NOBLE QP QS04.01 | | | EA | | | 0 | | 24382.81 | 0 | |
| Deepwater Warehouse | Fieldwood | 18802.A | | BW-AREA-3 | CASING, OCTG;NOM SZ 22 IN,WT 224.28 lb/ft,WALL THK 1 IN,MATL GR X80,CONN TYPE S90M/MT,LG 60 ft | | | FT | | | 7.78 | | 250.0515732 | 1945.401239 | |
| Deepwater Warehouse | Fieldwood | 19122.A | | DWW-YARD C-VAN HJCU 1339199 | SS Wellhead, SEAL ASSEMBLY, 16" TYPE S510/S515,  F/ 16" SUPPLEMENTAL HANGER, W/70 DURO HYDROGENATED NITRILE F/ELASTOMERIC SEALING ELEMENT, H2S SERVICE, DRIL QUIP PN:2-407542-07 | | | EA | | | 0 | | 23000.35333 | 0 | |
| Deepwater Warehouse | Fieldwood | 19397.A | | DWW YARD C-VAN HJXU 616220-6 | DISK, INTERNAL  PRESSURE RUPTURE(IPRD), RATED 5500 PSIG @ 150°F 3000 PSIG MIN BACK PRESSURE | | MC 948 4 GUNFLINT D&E | EA | | | 2 | | 4589.79 | 9179.58 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | MW-R14-FL | CAP, PIPE;SZ:6IN,OPER PRESS:10000PSI,MFR:CAMERON,PN:2181629-14 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 25000 | 25000 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | MW-R14-FL | CAP, PIPE;SZ:6IN,OPER PRESS:10000PSI,MFR:CAMERON,PN:2181629-14 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 25000 | 25000 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | DWW-YARD C-VAN CPJU 0301120 | CAP, PIPE;SZ:6IN,OPER PRESS:10000PSI,MFR:CAMERON,PN:2181629-14 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 25000 | 25000 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | MW-R14-FL | CAP, PIPE;SZ:6IN,OPER PRESS:10000PSI,MFR:CAMERON,PN:2181629-14 | AFE FW193004 | TROIKA | EA | | | 1 | | 15446.17 | 15446.17 | |
| Deepwater Warehouse | Fieldwood | 20177.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ:16IN,WT:96.00lb/ft,MATL GR:Q125,TOP CONN TYP:TSH 511,LG:20ft | | | EA | | | 1 | | 4251.9 | 4251.9 | |
| Deepwater Warehouse | Fieldwood | 20182.A | | DWW-YARD C-VAN HJCU-1481372 | GUIDE SHOE, 11.875, 71.80, HCQ125, TSH 523, WEATHERFORD MOD.549, W/1.B. BOW SPRING SUB, 12.250 RESTICTION INTO 14.500 OPEN HOLE , PN:S4900LQH5230H124002 | | | EA | | | 1 | | 6460.89 | 6460.89 | |
| Deepwater Warehouse | Fieldwood | 20183.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT, 11.875, 71.80, HCQ125, TSH 523, WEATHERFORD MOD.147A, DV, L.B. AUTO FILL, W/ 3.500 DROP BALL, PN: L47A0LQH5230H120718 | | | EA | | | 1 | | 14321.53 | 14321.53 | |
| Deepwater Warehouse | Fieldwood | 21764.A | | PUP JOINT RACK-FLOOR | Sub, XO 3-1/2" 9.2# VFJL 8x x 3-1/2" 9.3# SC-BTS-8 Pn 1.18' Lg. 12.5Xsi 13HCr., SUPERIOR ENERGY SERVICES PN: 413.35332C | | | EA | | | 3 | | 1812.416667 | 5437.25 | |
| Deepwater Warehouse | Fieldwood | 23938.A | | MR-3-D | WIRE;MFR:CAMERON,PN:2748111-01,TYP:LOCKING,APPLI SSR (SIZE: 5.25 IN | | | EA | | | 2 | | 51.845 | 103.69 | |
| Deepwater Warehouse | Fieldwood | 23962.A | | MR-5-D | O RING;INDUS STD:AS568-465,ID:17.955IN,PN:702645-46-52 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 181.06 | 181.06 | |
| Deepwater Warehouse | Fieldwood | 23962.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O RING;INDUS STD:AS568-465,ID:17.955IN,PN:702645-46-52 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | EA | | | 6 | | 181.06 | 1086.36 | |
| Deepwater Warehouse | Fieldwood | 23962.A | | TRAINING ROOM 1 | O RING;INDUS STD:AS568-465,ID:17.955IN,PN:702645-46-52 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | EA | | | 4 | | 181.06 | 724.24 | |
| Deepwater Warehouse | Fieldwood | 23972.A | | MR-5-D | Shear pin, actuator ring (P/N: 2156904-01) | | | EA | | | 4 | | 48.325 | 193.3 | |
| Deepwater Warehouse | Fieldwood | 24601.A | | MW-AREA 5 | SAVER SUB, BLANK PIPE, 5.500, 20.00, 13Cr110, SLHT (2 FT) | | | EA | | | 1 | | 3065.94 | 3065.94 | |
| Deepwater Warehouse | Fieldwood | 24602.A | | PUP JOINT RACK-FLOOR | SUB, X-OVER, 3.500, 9.30, SC-BTS8 BOX,  X  3.500, 9.20, VFJL PIN,12.5Xsi 13HCr,(1.15 FT) SUPERIOR ENERGY SERVICES PN: 413.35331C | | | EA | | | 2 | | 1626.485 | 3252.97 | |
| Deepwater Warehouse | Fieldwood | 24602.A | | PUP JOINT RACK-FLOOR | SUB, X-OVER, 3.500, 9.30, SC-BTS8 BOX,  X  3.500, 9.20, VFJL PIN,12.5Xsi 13HCr,(1.15 FT) SUPERIOR ENERGY SERVICES PN: 413.35331C | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 6 | | 2497.5 | 14985 | |
| Deepwater Warehouse | Fieldwood | 26133.B | | MR-GENERAL | POWER UNIT, ELECTRICAL, SUBSEA, MCS EQUIPMENT ASSEMBLY, AKER, PN: BB14-000748-78 | 140054 | VK 917 POWER UMBILICAL | EA | | | 0 | | 18573 | 0 | |
| Deepwater Warehouse | Fieldwood | 26537.A | | MW-AREA 6 | PUP JOINT, TUBING;NOM SZ:3-1/2IN,WT:9.30lb/ft,MATL GR:13CR110,CONN TYPE:BTS-8,TOP CONN TYP:BTS-8 BOX,BOT CONN TYP:BTS-8 PIN,LG:6ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 5198 | 10396 | |
| Deepwater Warehouse | Fieldwood | 26538.A | | PUP JOINT RACK-TIER 5 | PUP JOINT, TUBING;NOM SZ:3-1/2IN,WT:9.30lb/ft,MATL GR:13CR110,CONN TYPE:BTS-8,TOP CONN TYP:BTS-8 BOX,BOT CONN TYP:BTS-8 PIN,LG:8ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6618.25 | 6618.25 | |
| Deepwater Warehouse | Fieldwood | 27308.A | | MR-1-D | UNION,CONN SZ:1/2IN,MFR:PETRO VALVE,PN:120M611 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 2781.8 | 0 | |
| Deepwater Warehouse | Fieldwood | 27308.A | | MR-1-D | UNION,CONN SZ:1/2IN,MFR:PETRO VALVE,PN:120M611 | | | EA | | | 0 | | 1994.775 | 0 | |
| Deepwater Warehouse | Fieldwood | 27308.A | | MR-1-D | UNION,CONN SZ:1/2IN,MFR:PETRO VALVE,PN:120M611 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 2781.8 | 0 | |
| Deepwater Warehouse | Fieldwood | 27309.A | | MR-2-C | UNION, QUICK CONNECT, REDUNDANT, 0.375 IN TUBE, PETRO TECHNOLOGIES, PN: 120M631, REV C | | | EA | | | 0 | | 1708.51 | 0 | |
| Deepwater Warehouse | Fieldwood | 27312.A | | MR-2-C | UNION, QUICK CONNECT, REDUNDANT, 0.375 IN TUBE, PETRO TECHNOLOGIES, PN: 100M931, REV C | | | EA | | | 0 | | 344.855 | 0 | |
| Deepwater Warehouse | Fieldwood | 27313.A | | MR-2-C | UNION, QUICK CONNECT, REDUNDANT, 0.250 IN TUBE, PETRO TECHNOLOGIES, PN: 130M931, REV C | | | EA | | | 0 | | 302.4642857 | 0 | |
| Deepwater Warehouse | Fieldwood | 27315.A | | MR-1-C | UNION, TUBE;TYP:QUICK CONNECT,CONN 1 SZ:1/4IN,MFR:PETRO TECHNOLOGIES,PN:130M201, REV H | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 1879.73 | 0 | |
| Deepwater Warehouse | Fieldwood | 27315.A | | MR-2-C | UNION, TUBE;TYP:QUICK CONNECT,CONN 1 SZ:1/4IN,MFR:PETRO TECHNOLOGIES,PN:130M201, REV H | | | EA | | | 0 | | 1224.165 | 0 | |
| Deepwater Warehouse | Fieldwood | 27316.A | | MR-1-D | POTH CONNECTOR, 0.375 IN, PETRO TECHNOLOGIES, PN: 130M591, REV D | | | EA | | | 0 | | 637.615 | 0 | |
| Deepwater Warehouse | Fieldwood | 27317.A | | MR-2-C | PLUG, TEST;TYP:ASSEMBLY,CONN SZ:3/8IN,CONN TYPE:MNPT X TUBE,MFR:PETRO TECHNOLOGIES,PN:130M681 REV E | | | EA | | | 0 | | 917.0166667 | 0 | |
| Deepwater Warehouse | Fieldwood | 27319.A | | MR-2-C | POTH CONNECTOR, 0.500 IN, PETRO TECHNOLOGIES, PN: 130M891, REV B | | | EA | | | 0 | | 701.75 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 27325.A | | MR-2-C | ELBOW, PIPE TO TUBE;DEG:90,NOM PIPE SZ:3/8IN,PIPE CONN:NPT,TUBE OD:3/8IN,MFR:PETRO TECHNOLOGIES,PN: 1SOM261 REV A | | | EA | | | 0 | | 1335.123333 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27326.A | | MR-2-C | VALVE, CHECK;VLV SZ:3/8IN,DSGN RTNG:4200PSI,SPCL FEATRS:WITH BURST DISK,MFR:PETRO TECHNOLOGIES,PN:1SOM421 | | | EA | | | 0 | | 3297.45 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27489.A | | VERTICAL RACK | VALVE, SUBSURFACE SAFETY;MFR:SCHLUMBERGER,PN:100395464,TYP SURFACE CONTROLLED,TUBING SZ 4-1/2 IN,WT 12.60 lb/ft,PRFILE 3.688 RPT,OD 7.437 IN,CONN TYPE VAM TOP PIN X PIN,WRKING PRESS 10000 PSI,MIN:TRC-II-10 | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 470000 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27491.A | | CR TIER 3 | NIPPLE;MFR:SCHLUMBERGER,PN:101368046,TYP DUAL CHECK CHEMICAL INJECTION,CONN SZ 4-1/2 IN,CONN TYPE BTS-6 BOX X PIN,MATL CS,MATL GR 513 CR 110 KSI,APPLI W/ 0.500 IN. PTI TESTABLE CONNECTOR, ¼ IN CHECK VALVE AND 6000 PSI PRESSURE BURST DISC | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 56720 | 113440 | | |
| Deepwater Warehouse | Fieldwood | 27493.A | | SMALL PARTS ROOM | GAUGE;TYP:TRIPLE,COMPRISING:TUBE/ANNULAR/SNORKEL, CABLE HEAD, EDMCR,MFR:SCHLUMBERGER,PN:100364655,MN:NPQG-EL,T-3 | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 168900 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27494.A | | DWW-YARD | CABLE, ELECTRICAL;TYP:TUBING ENCAPSULATED,ARMR:INCOLOY 825,WALL THK:0.035IN,MFR:SCHLUMBERGER,PN:P486039 | 142981 | MC 782 2 DANTZLER COMPLETION | FT | | | 12500 | | 6.85 | 85625 | | |
| Deepwater Warehouse | Fieldwood | 27494.A | | DWW-YARD | CABLE, ELECTRICAL;TYP:TUBING ENCAPSULATED,ARMR:INCOLOY 825,WALL THK:0.035IN,MFR:SCHLUMBERGER,PN:P486039 | 139991 | MC 698 1 BIG BEND FEED COMPLT | FT | | | 12500 | | 6.85 | 85625 | | |
| Deepwater Warehouse | Fieldwood | 27496.A | | DWW-YARD | CONTROL LINE, HYDRAULIC, SINGLE, 0.500 IN X 0.065 IN WT, INCOLOY 825 MATERIAL, WELDED, ENCAPSULATED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 4D1000000000-4, MSC | 142980 | MC 782 2 DANTZLER COMPLETION | FT | | | 0 | | 12.568795 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27498.A | | DWW-YARD | CONTROL LINE, HYDRAULIC, TRIPLE, FLATPACK, (3) 0.250 IN X 0.065 IN WT, INCOLOY 825 MATERIAL, WELDED, ENCAPSULATED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 2C12C12C1000-4, MSC | | MC 782 2 DANTZLER COMPLETION | FT | | | 0 | | 12.68605226 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27560.A | | SMALL PARTS ROOM | GAUGE;TYP:TRIPLE,COMPRISING:TUBE/ANNULAR/SNORKEL, CABLE HEAD EDMC-R,MFR:SCHLUMBERGER,PN:100675006,MN:NPQG-EL, T-3 | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 186500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27614.A | | CAN RACK FLOOR | MANDREL, SOLID GAUGE, 4.500, 13CR80, 15.50, BTS-6 PIN X PIN, FOR NHQG-ED DUAL GAUGE SCHLUMBERGER, PN: 101284871 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 51550 | 51550 | | |
| Deepwater Warehouse | Fieldwood | 27615.A | | SMALL PARTS ROOM | DUAL GAUGE ASSEMBLY, NPQG-ED,TUB/TUB, CABLE HEAD, EDMCR, SLB QCP SCHLUMBERGER, PN: 100482238 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 112600 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28038.A | | PUP JOINT RACK-FLOOR | NIPPLE, LANDING;MFR:HALLIBURTON,PN:101831453,TYP RPT,CONN TYPE YLD BTS-8, BOX X PIN,ID 2.811 IN,OD 3-1/2 IN,MATL GR 13CR110,WT 9.30 lb/ft | | MC 698 1 BIG BEND FEED COMPLT | EA | | | 3 | | 3587 | 10761 | | |
| Deepwater Warehouse | Fieldwood | 28241.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;NOM SZ:5-1/2IN,WT:20.00lb/ft,MATL GR:13CR-110,CLASS:MINIMUM YIELD STRENGTH: 110KSI,TOP CONN TYP:SLHT BOX,BOT CONN TYP:SLHT PIN,LG:2ft,APPLI:SET OF SPACEOUT PUPS,MFR:SUPERIOR ENERGY SERVICES,PN:TB-5.50-20.0-F-E-02 | | | EA | | | 2 | | 2344.48 | 4688.96 | | |
| Deepwater Warehouse | Fieldwood | 28364.A | | DWW YARD C-VAN 429796-0 | CENTRALIZER SUB, 13.625, BB.20, Q125, TSH 523, TYPE R3600 BST-338, (12) BOW SPRINGS W/ 20.125 OVER BOW, BLACKHAWK, PN: 0101468 | | | EA | | | 15 | | 8636.374667 | 129545.62 | | |
| Deepwater Warehouse | Fieldwood | 28367.A | | DWW-YARD C-VAN CCLU 667229 9 | COLLAR, STOP;TYP:LATCH ON,CASNG OD:28IN,SPCL FEAT:STSCR,MFR:WEATHERFORD,PN:6020028 / 582373 | 203389 | MC 339 SILVERGATE DRL | EA | | | 4 | | 175 | 700 | | |
| Deepwater Warehouse | Fieldwood | 28371.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;TYP:NON ROTATING,CASNG OD:17-7/8IN,CASNG WT:93.50lb/ft,MATL GR:P110,CONN TYPE:TSH 521,MFR:WEATHERFORD,PN:L47A0SQH521PG0A002 / 2052579,MN:L47A | | | EA | | | 1 | | 17553.52944 | 17553.52944 | | |
| Deepwater Warehouse | Fieldwood | 28375.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER SUB GUIDE SHOE, 11.875, 15.620 OD, 71.80, Q125, TSH 523, WEATHERFORD, MOD 549, PN: 549001QH523021A001 / 2075929 | | | EA | | | 1 | | 6454.486667 | 6454.486667 | | |
| Deepwater Warehouse | Fieldwood | 28376.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;TYP:NON ROTATING,CASNG OD:11-7/8IN,CASNG WT:71.80lb/ft,MATL GR:Q125,CONN TYPE:TSH 523,MFR:WEATHERFORD,PN:L47A0LQH523Q12A001/2052599,MN:L47A | | | EA | | | 1 | | 14321.54 | 14321.54 | | |
| Deepwater Warehouse | Fieldwood | 28378.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT, 9.875, 62.80, Q125, TSH 523, NR (NON-ROTATING), W/DOUBLE LARGE BORE  FLOW-ACTIVATED ALUMINUM PLUNGER VALVE, W/AFJ TUBE & 3.500 IN BALL, WEATHERFORD, MOD L47AO, PN: L47A0JQH523Q12A002 | | | EA | | | 1 | | 11155.26 | 11155.26 | | |
| Deepwater Warehouse | Fieldwood | 28381.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;CASNG OD:13-5/8IN,CASNG WT:88.20lb/ft,MATL GR:TN125HC,CONN TYPE:TSH 523,MFR: WEATHERFORD | | | EA | | | 1 | | 12081.36 | 12081.36 | | |
| Deepwater Warehouse | Fieldwood | 28481.A | | OS-R1-53 | CONNECTOR, TEST, DRY MATE, MINIATURE, TRONIC QCP, PN: DHCE-T15-AC-01P-000-00 | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 4500 | 9000 | | |
| Deepwater Warehouse | Fieldwood | 28483.A | | DWW-YARD | CONTROL LINE, SINGLE, LINE,  0.375, 0.065 WT, INCOLOY 825, WELDED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 3D1000000000-4, MSC | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 10.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28581.A | | DWW-YARD C-VAN HJCU-1481372 | GUIDE SHOE, 7.750, 46.10, Q125, HYDIL 523, WEATHERFORD MOD M212R,PN: 1217209 | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 1 | | 4932 | 4932 | | |
| Deepwater Warehouse | Fieldwood | 28582.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT, 7.750, 46.10, Q125 NR, HYDIL 523, 2-4 BPM, WEATHERFORD MOD M47A, PN: 1264171 | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 11 | | 11395 | 11395 | | |
| Deepwater Warehouse | Fieldwood | 28622.A | | PUP JOINT RACK-FLOOR | SUB, X-OVER 4.812 IN - 85A BOX X 4.500 IN, 12.750, BTS-8, PIN, 0.59 FT LG, 9KSI, 13HCR, SUPERIOR ENERGY SERVICES PN: 413.48183C | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 1905 | 3810 | | |
| Deepwater Warehouse | Fieldwood | 28623.A | | PUP JOINT RACK-FLOOR | SUB, DBL PIN W/ 4.500 IN, 12.75, BTS-8 BOX X 5.500 IN, 20, SLHT, PIN X 3.500 IN, 9.3, BTS-8, PIN PKSI 13HCR, SUPERIOR ENERGY SERVICES PN: 413.4551C | | | EA | | | 2 | | 3097.795 | 6195.59 | | |
| Deepwater Warehouse | Fieldwood | 28695.A | | MW-AREA 6 | ASSEMBLY;TYP:INTERNAL TREE CAP,SPCL FEAT:10M, WITH 4.767 SSR PREP, MEC SEALS, ANDANTI-ROTATION KEY (SPRING ACTUATED), TEMP V, MATERIAL: CLASS EE-NL, CONNECTION TYPE: PLS-1, SIZE: 18-3/4 IN,MFR:CAMERON,PN:2182093-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28695.B | | MW-R15-FL | ASSEMBLY;TYP:INTERNAL TREE CAP,SPCL FEAT:10M, WITH 4.767 SSR PREP, MEC SEALS, ANDANTI-ROTATION KEY (SPRING ACTUATED), TEMP V, MATERIAL: CLASS EE-NL, CONNECTION TYPE: PLS-3, SIZE: 18-3/4 IN,MFR:CAMERON,PN:2182093-04 | | | EA | | | 0 | | 49420 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28696.A | | MR-GENERAL | TUBING HANGER, LOWER PLUG, 4.375 IN, HH, INCONEL 718, INCONEL 925 EXPANDER MANDREL, TITANIUM METAL SEAL, CAMERON, PN: 2731385-01 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 40530 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28696.B | | DWW-YARD C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | TUBING HANGER, LOWER PLUG, 4.375 IN, HH, INCONEL 718, INCONEL 925 EXPANDER MANDREL, TITANIUM METAL SEAL, CAMERON, PN: 2731385-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | EA | | | 1 | | 55988.59 | 55988.59 | | |
| Deepwater Warehouse | Fieldwood | 28697.A | | MR-GENERAL | TREE CAP PLUG, INTERNAL, 4.767 IN, HH, INCONEL 718, INCONEL 925 EXPANDER MANDREL, TITANIUM METAL SEAL, CAMERON, PN: 2731384-01 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 20000 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 28734.A | | MW-R14-3 | PROTECTOR,TUBING CLAMP,VIT TYPE,DUAL CHANNELS,LT CHANNEL(LEFT TO RT)(10.433 IN X 0.433 IN,(1) 0.433 IN X 0.990 IN,RT CHANNEL(LEFT TO RT)(10.410 IN X 0.790 IN,(2)0.660 IN,(ASTM-A-1011) PROTECTOR 47.2 IN,CANNON,PN: 6000-47-81/67 RPOCSVIT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 13 | | 520.97 | 6772.61 | | |
| Deepwater Warehouse | Fieldwood | 28735.A | | MW-R14-3 | SLEEVE, INSULATOR, POLYURETHANE TYPE FOR 6000-47-81/67 RPOCSVIT PROTECTOR, CANNON, PN: 72036 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 12 | | 642.2 | 7706.4 | | |
| Deepwater Warehouse | Fieldwood | 29149.A | | MR-1-C | TUBE, 9/16 IN MTM X 0.250 W/ FLUSH FITTING, PETRO TECHNOLOGIES, PN: 120M421 REV R | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 2313.63 | 0 | | |
| Deepwater Warehouse | Fieldwood | 29149.A | | MR-1-C | TUBE, 9/16 IN MTM X 0.250 W/ FLUSH FITTING, PETRO TECHNOLOGIES, PN: 120M421 REV R | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 2313.63 | 0 | | |
| Deepwater Warehouse | Fieldwood | 29150.A | | MR-1-C | TUBE, 9/16 IN MTM X 0.500 W/ FLUSH FITTING, PETRO TECHNOLOGIES, PN: 130M091 REV M | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 2741.724082 | 0 | | |
| Deepwater Warehouse | Fieldwood | 29251.A | | MW-R14-3 | CLAMP PROTECTOR, TUBING, OVER COUPLING, ABOVE SAFETY VALVE,W/DUAL CHAN,(L TO R) (L) 0.433 X 0.433 ENCAP.TEC,0.433 X 0.990 ENCAP.BUNDLE, (R) 0.410 X 0.790,0.660 ENCAP LINE,25.2 LENGTH,LCS,CANNON SERVICES, PN: 6000-A-81/67RPOC, DRW: 498, 499 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 6 | | 122.00020766 | 732.0124594 | | |
| Deepwater Warehouse | Fieldwood | 29253.A | | BW-RS-3 | CLAMP, TUBING, OVER COUPLING, ABOVE SAFETY VALVE, W/DUAL CHAN, (L TO R) (L) 0.433 X 0.433 ENC.TEC,0.433 X 0.990 ENC.BUNDLE, (R) 0.410 X 0.790,0.660 ENCAP LINE,25.2 LENGTH,LCS,CANNON SERVICES, PN: 6000-A-81/67RPOC DRW:NOB-503,504 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 5 | | 134.1 | 670.5 | | |
| Deepwater Warehouse | Fieldwood | 29254.A | | BW-RS-3 | CLAMP, TUBING, MID JOINT, ABOVE SAFETY VALVE, W/DUAL CHAN, (L TO R) (L) 0.433 X 0.433 ENCAP.TEC,0.433 X 0.990 ENCAP.BUNDLE, (R) 0.410 X 0.790,0.660 ENCAP LINE,25.2 LENGTH,LCS,CANNON SERVICES, PN: 5500-A-81/67RPOC, DRW: NOB-505, 506 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 2 | | 67.15 | 134.3 | | |
| Deepwater Warehouse | Fieldwood | 30007.A | | OS-R1-S3 | CONNECTOR, TEST, DRY MATE, MINIATURE, TRONIC QCP, PN: DHCE-T16-AC-015-000-00 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 6250 | 6250 | | |
| Deepwater Warehouse | Fieldwood | 30008.A | | OS-R1-S3 | CONNECTOR, TEST, TRONIC QCP, PN: DHCE-T23-AA-015-000-00 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 8250 | 8250 | | |
| Deepwater Warehouse | Fieldwood | 31062.A | | CAN RACK FLOOR | MANDREL, SOLID GAUGE, 4.500, 13CR, 15.5 PPF, 95 KSI, BTS-6 PIN X PIN, FOR NHQG-ED, DUAL GAUGE, SCHLUMBERGER, PN: 101284871 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 51550 | 51550 | | |
| Deepwater Warehouse | Fieldwood | 31225.A | | DWW-YARD | VALVE,TYP:FORMATION ISOLATION,CONN 1 SZ:7.813IN,CONN 2 SZ:3.7IN,OD:9-5/8IN,MATL:GR:13CR,MFR:SCHLUMBERGER,PN:100535565,MN:FIV-II-9X | | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 365000 | 365000 | | |
| Deepwater Warehouse | Fieldwood | 32774.A | | BW-AREA 3 | CROSSOVER, CASING;TOP CONN SZ:10-3/4IN,TOP CONN WT:73.20lb/ft,TOP CONN TYP:HC, MAC II, BOX;BOT CONN SZ:10-1/8IN,BOT CONN WT:79.22lb/ft,BOT CONN TYP:SLSF, PIN,MATL GR:TN-125/HCQ-125,LG:5ft | 138970 | MC 782 2 DANTZLER D&E | EA | | | 1 | | 15837 | 15837 | | |
| Deepwater Warehouse | Fieldwood | 32818.A | | CR TIER 1 | BLAST JOINT, S/C, 3.500 IN, 9.30, 3.859 OD, 13CR110, BTS-8, (20 FT.) | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 8149 | 16298 | | |
| Deepwater Warehouse | Fieldwood | 32821.A | | DWW-YARD | JOINT;SPCL FEAT:SIZE: 3-1/2 IN, WEIGHT: 9.20 LB, MATERIAL GRADE: 13CR110, CONNECTION TYPE: VAM FJL | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 3835 | 3835 | | |
| Deepwater Warehouse | Fieldwood | 32822.A | | PUP JOINT RACK-FLOOR | CASING X-OVER, SUB, 4.500 IN, 15.50, 13CR95, BTS-6 BOX X 3.500 IN, 9.30, BTS-8 PIN X 14.000 IN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 1320 | 1320 | | |
| Deepwater Warehouse | Fieldwood | 32822.A | | PUP JOINT RACK-FLOOR | CASING X-OVER, SUB, 4.500 IN, 15.50, 13CR95, BTS-6 BOX X 3.500 IN, 9.30, BTS-8 PIN X 14.000 IN | | | EA | | | 1 | | 859.65 | 859.65 | | |
| Deepwater Warehouse | Fieldwood | 33269.A | | PUP JOINT RACK- TIER 1 | CROSSOVER, CASING;TYP:SUB,TOP CONN SZ:5-1/2IN,TOP CONN WT:29.70lb/ft,TOP CONN TYP:VAM ACE PIN,BOT CONN SZ:5-1/2IN,BOT CONN WT:23.00lb/ft,BOT CONN TYP:BTS-6 PIN,MATL GR:13CR110,LG:4ft | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 7015 | 7015 | | |
| Deepwater Warehouse | Fieldwood | 33270.A | | PUP JOINT RACK-TIER 4 | JOINT;TYP:COMBO, UPPER,SPCL FEAT:SIZE: 5-1/2 IN, WEIGHT: 23 LB, MATERIAL GRADE: 13CR95, CONNECTION: BTS-6, LENGTH: 12 FT (6 FT PROFILED BOX) | | | EA | | | 1 | | 8197.87 | 8197.87 | | |
| Deepwater Warehouse | Fieldwood | 33270.A | | PUP JOINT RACK-TIER 5 | JOINT;TYP:COMBO, UPPER,SPCL FEAT:SIZE: 5-1/2 IN, WEIGHT: 23 LB, MATERIAL GRADE: 13CR95, CONNECTION: BTS-6, LENGTH: 12 FT (6 FT PROFILED BOX) | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 12 | | 12588 | 12588 | | |
| Deepwater Warehouse | Fieldwood | 33271.A | | PUP JOINT RACK-TIER 4 | JOINT;TYP:COMBO, LOWER,SPCL FEAT:SIZE: 5-1/2 IN, WEIGHT: 23 LB,FT, MATERIAL GRADE: 13CR95, CONNECTION: BTS-6, LENGTH: 12 FT (6 FT PROFILED PIN) | | | EA | | | 1 | | 8197.87 | 8197.87 | | |
| Deepwater Warehouse | Fieldwood | 33282.A | | BW-RS-3 | SLEEVE, INSULATOR, POLYURETHANE TYPE, 20 LBS, CANNON SERVICES, PN: 72051, DRW: NOB-476, FOR 7.000 IN X 5.50 IN VIT | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 12 | | 592.15 | 7105.8 | | |
| Deepwater Warehouse | Fieldwood | 33294.A | | DWW-YARD C-VAN 433422-0 | CENRALIZER SUB, 9.875 IN, 62.80 PPF, Q125 HC, TSH S23, BST-25, MODEL: R3600, BLACKHAWK, PN: 0101504-A | | | EA | | | 0 | | 7120.2708 | 0 | | |
| Deepwater Warehouse | Fieldwood | 33294.A | | DWW-YARD C-VAN 4661048-400T--This C-Van Scrapped and sold to Louisiana Scrap 03/19/19 | CENRALIZER SUB, 9.875 IN, 62.80 PPF, Q125 HC, TSH S23, BST-25, MODEL: R3600, BLACKHAWK, PN: 0101504-A | | | EA | | | 0 | | 7120.2708 | 0 | | |
| Deepwater Warehouse | Fieldwood | 33413.A | | DWW-YARD | JOINT;TYP:PRODUCTION TUBING,SPCL FEAT:SIZE: 3-1/2 IN, WEIGHT: 9.2 LB/FT, HYPER, MATERIAL GRADE: 13CR110, CONNECTION TYPE: VAM FJL, TUNGSTEN CARBIDE COATED | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 3 | | 7633.333333 | 22900 | | |
| Deepwater Warehouse | Fieldwood | 33926.A | | DWW-YARD C-VAN HJCU-1481172 | GUIDE SHOE, CENTRALIZER, 9.875 IN, 62.80#, HCQ-125, 549R HYD S23, 365 (0.171) BOWS, 13.500 IN OD, CONCENTRIC CEMENT NOSE W/6.03 IN ID AND 0.375 IN ALUM BAR, DRIFT 8.500/OD 10.625, WEATHERFORD, PN: 549RDQHS23Q12A001 | | | EA | | | 1 | | 7450.466667 | 7450.466667 | | |
| Deepwater Warehouse | Fieldwood | 34130.A | | PR-R1-2 | CONNECTOR, PLUG, DRY MATE, (TEC TO HANGER), TRONIC QCP, PN: DHCE-AS1-BQ-015-ALL-HN | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 12550 | 0 | | |
| Deepwater Warehouse | Fieldwood | 34130.A | | PR-R1-2 | CONNECTOR, PLUG, DRY MATE, (TEC TO HANGER), TRONIC QCP, PN: DHCE-AS1-BQ-015-ALL-HN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 18610 | 0 | | |
| Deepwater Warehouse | Fieldwood | 34449.A | | BW-AREA 2 | CLAMP, TUBING,MID JOINT,W/STANDOFF,(LEFT TO RIGHT)11MMX11MM ENCAP TEC,0.660IN OD ENCAP CI LINE(LOWER),0.535 IN OD ENCAP CI LINE(UPPER),25.2IN LENGTH,LOW CARBON STEEL,CANNON SERVICES,PN:6090-8-68PG1.53XT,DRAW NOB5358,536B | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 2 | | 1005.25 | 2010.5 | | |
| Deepwater Warehouse | Fieldwood | 34553.A | | BW-AREA 3 | SUB, RUPTURE DISC, 16.000 IN, 97.00, Q-125, HYDRIL 511, PIN X BOX X 4 FT W/ 2 PORTS 180 DEGREES APART AND EPRD DISKS INSERTED, RATED AT 1600 PSIG AT 150 DEGREES FARENHEIT W/ 7000 PSIG BACK PRESSURE | 201560 | GC 40 O2 Katmai 2 | EA | | | 1 | | 33978.07 | 33978.07 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 35044.A | | MR-1-A | DISK, TYPE: RUPTURE, EXTERNAL, MFG: FISK, PN: A9034-7, 1600 PSIG AT 150 DEG F W/7000 PSID MINIMUM BACK PRESSURE, APPLI: FOR HUNTING EQUIPMENT | | | EA | | | 2 | | 5268.85 | 10537.7 | |
| Deepwater Warehouse | Fieldwood | 35048.A | | DWW-YARD | JOINT,SPCL FEAT:NOMINAL SIZE: 5-1/2 IN, WEIGHT: 23 LB, MATERIAL GRADE: 13CR95, CONNECTION TYPE: VAM, FJL, WITH PRODUCTION TUBING (LG: 30 FT) | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 4 | | 4396.5 | 17586 | |
| Deepwater Warehouse | Fieldwood | 35536.A | | DWW YARD C_VAN 429796-0 | ASSEMBLY, CENTRALIZER, SUB, 13.625 IN, R3600, BST-25, (14) BOW STRING, 18.625 IN OVER BOW, TEANRISHYDRIL WEDGE 523, DOPELESS, 88.20 PPF, API Q125, BLACKHAWK, PN: 0101468 | | | EA | | | 8 | | 8889.644444 | 71117.15556 | |
| Deepwater Warehouse | Fieldwood | 35536.A | | DWW YARD C-VAN 433422-0 | ASSEMBLY, CENTRALIZER, SUB, 13.625 IN, R3600, BST-25, (14) BOW STRING, 18.625 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 88.20 PPF, API Q125, BLACKHAWK, PN: 0101468 | | | EA | | | 1 | | 8889.644444 | 8889.644444 | |
| Deepwater Warehouse | Fieldwood | 35537.A | | BW-AREA 3 | CENTRALIZER, SUB, 11.875 IN, R3600, BST-25B, (12) BOW SPRING, 16.750 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 71.80 PPF, API Q125, BLACKHAWK, PN: 0101781 | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 2 | | 12624.78494 | 25249.56988 | |
| Deepwater Warehouse | Fieldwood | 35537.A | | BW-AREA 3 | CENTRALIZER, SUB, 11.875 IN, R3600, BST-25B, (12) BOW SPRING, 16.750 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 71.80 PPF, API Q125, BLACKHAWK, PN: 0101781 | | | EA | | | 5 | | 7948.575556 | 39742.87778 | |
| Deepwater Warehouse | Fieldwood | 35537.A | | BW-AREA 3 | CENTRALIZER, SUB, 11.875 IN, R3600, BST-25B, (12) BOW SPRING, 16.750 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 71.80 PPF, API Q125, BLACKHAWK, PN: 0101781 | 203389 | MC 339 SILVERGATE DRL | EA | | | 2 | | 12205.20556 | 24410.41111 | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW YARD C-VAN 402189-0 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | | | EA | | | 7 | | 5767.368571 | 40371.58 | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW YARD C-VAN 402189-0 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | 203389 | MC 339 SILVERGATE DRL | EA | | | 4 | | 8855.92 | 35423.68 | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW YARD C-VAN 402189-0 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | 142843 | MC 782 2 DANTZLER | EA | | | 2 | | 8855.92 | 17711.84 | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW-YARD-C-VAN 045905 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 8855.92 | 17711.84 | |
| Deepwater Warehouse | Fieldwood | 35650.A | | MR-5-D | RING,TYP:EXPANDING NO:GQ,ID:5-1/4IN,APPLN:SSR WIRELINE ISOLATION SLEEVE,MFR:CAMERON,PN:2748112-01 | | | EA | | | 1 | | 1782.95 | 1782.95 | |
| Deepwater Warehouse | Fieldwood | 36234.A | | PUP JOINT RACK-FLOOR | PLUG, BULL,NOM SZ:3-1/2IN,CONN TYPE:VAM FJL BOX,WT:9.20lb/ft,MATL GR:13CR,SPCL FEAT:OD: 3-1/2 IN, MINIMUM YIELD STRENGTH: 15 KSI,MFR:SUPERIOR ENERGY SERVICES,PN:413.5S349C | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 2 | | 1242.5 | 2485 | |
| Deepwater Warehouse | Fieldwood | 36235.A | | PUP JOINT RACK-FLOOR | PLUG, BULL,NOM SZ:5-1/2IN,CONN TYPE:5LHT BOX,WT:20.00lb/ft,MATL GR:13HCR,SPCL FEAT:OD: 6.062 IN, MINIMUM YIELD STRENGTH: 15 KSI,MFR:SUPERIOR ENERGY SERVICES,PN:413.5S019C | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 2 | | 1670 | 3340 | |
| Deepwater Warehouse | Fieldwood | 38048.A | | DWW-YARD | PUP JOINT, 10.125 IN, 79.22#, HCQ-125, HUNTING, 5LSF, PIN X BOX, (18 FT) | | | EA | | | 1 | | 3930.47 | 3930.47 | |
| Deepwater Warehouse | Fieldwood | 38624.A | | DWW-YARD C-VAN HJCU-1339199 | EYE, LIFTING, 50 TON, STANDARD DUTY, FOR 17 TON SHACKLE, DRIL-QUIP, PN: 2-304782-02 | | | EA | | | 0 | | 421.4841667 | 0 | |
| Deepwater Warehouse | Fieldwood | 38698.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER, SUB, 14.000 IN, GS, S49, Q125, HYDRIL 523, 113.0, 19.50 OD, WEATHERFORD, PN: 2245955 | | | EA | | | 1 | | 7199.51 | 7199.51 | |
| Deepwater Warehouse | Fieldwood | 40232.A | | PR-R1-2 | KIT, RE-DRESS, FOR TRONIC DRY-MATE PLUG CONNECTOR, TEC TO HANGER, TRONIC QCP, SCHLUMBERGER, PN: BNX-TC6A-SS5 | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 11892 | 0 | |
| Deepwater Warehouse | Fieldwood | 40269.A | | MR-1-C | CROSSOVER, FITTING, 0.375 IN PTI MALE X 0.500 IN PTI FEMALE, (2) VITON O-RINGS, 0.500 IN VITON PLUS ASSY, 0.500 IN FRONT/REAR FERRULE, 0.500 IN PTCM NIPPLE,PETRO TECHNOLOGIES, PN: 170M371 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 2748.04 | 0 | |
| Deepwater Warehouse | Fieldwood | 40555.A | | MR-5-F | WHIP, TEST, ELECTRICAL, 7-WAY FLYING RECEPTACLE, SOCKETS, PINS, W/ PIGTAILS, MFR: TELEDYNE, PN:1110542, 5UP:AKER, MN: 10121123 | | | EA | | | 4 | | 3526 | 14104 | |
| Deepwater Warehouse | Fieldwood | 40565.A | | MR-2-C | CAP, PROTECTION, UNIVERSAL, W/ HANDLE, ROV FLYING, MFR: TELEDYNE, PN: 1110544, 5UP: AKER, MN: 10055384 | | | EA | | | 0 | | 1626 | 0 | |
| Deepwater Warehouse | Fieldwood | 40572.A | | MW-R14-1 | PLATE, TESTING/FLUSHING REMOVABLE, 12-WAY FOR OUTBOARD MULTI-QUICK CONNECTION P/N 10111225 | AFE FW193004 | TROIKA | EA | | | 1 | | 31828 | 31828 | |
| Deepwater Warehouse | Fieldwood | 40692.A | | VERTICAL RACK | VALVE, SAFETY, SUBSURFACE, 5.500 IN, 26.0#, 3.562 RPT, VAM TOP HC PIN X PIN, API 14A/ISO 10432 CLASS 2, 15000 PSI, VITON ORINGS, MF TEFLON SEAT, MP35N SPRING, 300 DEG F MAX WORKING TEMP, SCHLUMBERGER | 143752 | MC 948 4 GUNFLINT D&E | EA | | | 0 | | 743000 | 0 | |
| Deepwater Warehouse | Fieldwood | 40906.A | | BW-AREA 3 | PUP JOINT, CASING,NOM SZ:9-3/8IN,WT:39.00lb/ft,MATL GR:HCQ-125,TOP CONN TYP:HYDRIL 513 PIN,BOT CONN TYP:HYDRIL 513 BOX,LG:5ft | 140829 | GC 40 1 KATMAI D&E | EA | | | 1 | | 3316.55 | 3316.55 | |
| Deepwater Warehouse | Fieldwood | 41084.A | | BW-RS-3 | CLAMP,TUBING,MID JOINT,W/STANDOFF,BLOW THE SCSSV W/DUAL CHAN,(L TO R)0.433X0.433 ENCAP TEC,0.433X0.990 ENCAP BUNDLE,(R)0.660 ENCAP LINE,25.2 IN GUARD LENGTH,LCS,8.79IN CALC COMB RUN OD,CANNON,PN: 5125-A-81/67RP DCG2.17XT | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 1675 | 3350 | |
| Deepwater Warehouse | Fieldwood | 41085.A | | BW-RS-3 | CLAMP, PROTECTOR, SPLICE, TUBING,0.433X0.433 ENCAP TEC,0.433X0.990ENCAP BUNDLE,ASTM-1-1011,40.2IN CLAMP LENGTH,CANNON, PN: 4500-40-81/12/81 | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 5 | | 1005.25 | 5026.25 | |
| Deepwater Warehouse | Fieldwood | 41086.A | | BW-RS-3 | CLAMP,PROTECTOR,SPLICE,TUBING, 0.433X0.433 ENCAP TEC,0.433X0.990 ENCAP BUNDLE,ASTM-A-1011,40.2IN CLAMP LENGTH,CANNON, PN: 6000-40/C-81-12-81/67RPOC | 142980 | MC 782 2 DANTZLER COMPLETION | EA | | | 3 | | 1115.3 | 3345.9 | |
| Deepwater Warehouse | Fieldwood | 41391.A | | MR-1-A | SEAL, METAL, MSBMS-II-UD BODY, F/5-15K HANGER, INCONEL 625, SILVER PLATED, 4.686 OD X 3.913 ID, 0.450 LG, F/HALLIBURTON CROWN PLUG, PN: P1000011680 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2364 | 2364 | |
| Deepwater Warehouse | Fieldwood | 41393.A | | MR-2-E | SEAL, METAL, MSBMS-II BODY, F/18 0.750-15K HANGER, INCONEL 718, SILVER PLATED, 16.734/16.739 OD X 15.701/15.706 ID, UPPER GALLEY SEAL F/EXHT TUBING HANGER, FMC, PN: P207484 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 14836 | 44508 | |
| Deepwater Warehouse | Fieldwood | 42096.B | | MW-AREA 1 | ASSEMBLY, JUNCTION PLATE, IWOCS, 12-WAY REMS/12L, UO, AKER, PN: BB11-000728-15 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 62637 | 62637 | |
| Deepwater Warehouse | Fieldwood | 42096.C | | MW-AREA 1 | ASSEMBLY, JUNCTION PLATE, IWOCS, 12-WAY REMS/12L, UO, AKER, PN: BB11-000728-15 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 62637 | 62637 | |
| Deepwater Warehouse | Fieldwood | 42097.A | | MW-R17-3 | ASSEMBLY, JUNCTION PLATE, FIXED, 12-WAY, FLUSHING, UO, AKER, PN: BB11-000728-03 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 52032 | 52032 | |
| Deepwater Warehouse | Fieldwood | 43377.A | | DWW YARD C-VAN HJKU 616220-6 | ASSEMBLY, PROD. TUBING HANGER, 4.000 IN - 10M, W/ 5.000 IN SIDE OUTLET, 4.375 IN,SSR WIRELINE, PLS-3, 5.500 X 26.000 VAM TOPBOX CONNECTION, (7) CONTROL LINES, SINGLE PIN ELEC, CAMERON | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 696270.8 | 0 | |
| Deepwater Warehouse | Fieldwood | 43387.A | | DWW-YARD | ELECTRIC CONTROL LINE, GAUGE TEC, 0.049 WT, INC 825, ENCAPSULATED, SLB QCP, SCHLUMBERGER, PN: P486119 | 142980 | MC 782 2 DANTZLER COMPLETION | FT | | | 12500 | | 7.95 | 99375 | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 43663.A | | MW-AREA 3 | HANGER, LINER, EXPANDABLE, VERSAFLEX, QUICK-LOCK, 11.875 IN, 71.8#, HCQ-125, HYD 523 X 14.000 IN, 113#, HCQ-125, HYD 523, HALLIBURTON, PN: 101918791 | 201560 | GC 40 D2 Katmai 2 | EA | | | 1 | | 133000 | 133000 | |
| Deepwater Warehouse | Fieldwood | 43882.A | | PUP JOINT RACK-TIER 1 | SUB, CROSSOVER, 5.500 IN, 26#, HYPER 13CR110, VAM TOP PIN X 6.000 IN, 30.90#, VAM TOP, KP PIN X 4 FT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 5526 | 5526 | |
| Deepwater Warehouse | Fieldwood | 43920.A | | PUP JOINT RACK-TIER 1 | PUP JOINT, CROSSOVER, 5.500 IN, 23#, HYPER 13CR110, BTS-6, BOX X 6.000 IN, 30.90#, VAM TOP, KP, PIN X 4 FT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 5021 | 5021 | |
| Deepwater Warehouse | Fieldwood | 43929.A | | PUP JOINT RACK-TIER 5 | COUPLING, FLOW, 4.500 IN, 13.50#, HYPER 13CR110, BTS-8, BOX X 4.500 IN, 15.50#, BTS-6, PIN, CROSSOVER X 8 FT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 6680 | 6680 | |
| Deepwater Warehouse | Fieldwood | 44154.A | 1481372 | DWW-YARD C-VAN HJCU | CENTRALIZER SUB, ROT, 7.750 IN, 541#, Q125HYDRIL 523, 46.10, 11.25 OD, WEATHERFORD, PN: 1217216 | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 2 | | 7232 | 14464 | |
| Deepwater Warehouse | Fieldwood | 44727.B | | DWW-YARD | REEL, FLYING LEAD, HYDRAULIC, DEPLOYMENT AND INSTALLATION, CARBON STEEL, COATED, W/ 4 WAY LIFTING SLING, STACKABLE, OCEANEERING, PN: 119075-034951 REV AB | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 3 | | 36607.5 | 109822.5 | |
| Deepwater Warehouse | Fieldwood | 44727.B | | DWW-YARD | REEL, FLYING LEAD, HYDRAULIC, DEPLOYMENT AND INSTALLATION, CARBON STEEL, COATED, W/ 4 WAY LIFTING SLING, STACKABLE, OCEANEERING, PN: 119075-034951 REV AB | 128021 | MC 519 DESIGN | EA | | | 0 | | 36607.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 44734.B | | DWW-YARD | FLYING LEAD,HYDRAULIC,M1 REMOVABLE PLATE,EACH END W/ 13  EA: 0.500 IN RS FEMALE COUPLERS, 0.500 IN SUPER DUPLEX TUBE STUBS,15K PSI,C5 COATED TERMINATION ASSY,9 SEGMENT VERTEBRATE BEND RESTRICTOR,TUBE SECURING ARMOR POT, 200 FT,OCEANEERING | 128021 | MC 519 DESIGN | EA | | | 1 | | 124653.75 | 124653.75 | |
| Deepwater Warehouse | Fieldwood | 44737.A | | MW-R3-1 | FLYING LEAD, ELECTRICAL, ROV, 200 FT, INCLUDES:7-WAY CABLE END PLUG(PINS) W/45 DEG INTEGRAL TERMINATION TITANIUM CP PN:1025114, 200 FT 4-WAY FLUID FILLED HOSE ASSY 14 AWG,7-WAY RECEPTACLE(SOCKETS) PN:1025089,ODI,PN:1050822 | 128021 | MC 519 DESIGN | EA | | | 1 | | 13746 | 13746 | |
| Deepwater Warehouse | Fieldwood | 44749.B | | DWW-YARD C-VAN HLXU 616220 | ASSEMBLY, PRESSURE CAP, 8.000 IN, 15000 PSI, FLOWLINE HUB, 6.392 IN SEAL BORE, W/ 9/16 IN AUTOCLAVE PORT, PMT W/ 6 ANODES, (PLUG W/ 2 O-RINGS), CAMERON, PN: 2181509-06 | 128021 | MC 519 DESIGN | EA | | | 1 | | 67041 | 67041 | |
| Deepwater Warehouse | Fieldwood | 45223.E | 6 | DWW-YARD | SUPERIOR ENGINE, 1,600 HP, F/COMPRESSOR, MN: 240BG, SN: 33268 | | | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 45240.A | 0 | DWW YARD C-VAN CPXU 030112- | ASSY, FLOODING CAP, 8.000 IN, 10K, CVC HUB, PN: 2165232-05 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 127425 | 127425 | |
| Deepwater Warehouse | Fieldwood | 45241.A | 6 | DWW YARD C-VAN HLXU 616220- | ASSY, DEBRIS CAP, 6 IN, W/ PMT INTERFACE, PN: 2236048-04 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 3 | | 9756 | 29268 | |
| Deepwater Warehouse | Fieldwood | 45250.A | | MW-R17-FL | FUNNEL, MFG: CLAMPON, PN: 924-16822-002, TYPE: DEEPWATER FUNNEL & CLAMP, APPLI: FOR ACCOUSTIC SAND, SPEC: AKS PN: 8815-000450-46 REV 1 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 9664 | 0 | |
| Deepwater Warehouse | Fieldwood | 45252.A | | BW-R3-2 | ASSY, BORE PROTECTOR, 9.407 DIA, BORE NOM, PN: 2141626-10 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 90485 | 90485 | |
| Deepwater Warehouse | Fieldwood | 45253.A | | MR-GENERAL | SET, SCM TEST, 9600 BAUD, W/SOFTWARE, PN: 6000000649 | | | EA | | | 0 | | 112934.32 | 0 | |
| Deepwater Warehouse | Fieldwood | 45254.A | | MW-R3-3 | EFL, 4-WAY, EDU-TREE, 600 FT, PN: 6000000659 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 50934 | 50934 | |
| Deepwater Warehouse | Fieldwood | 45255.A | | MW-R17-1 | PLATE, MQC, OB, MARINE GROWTH COVER, 12-W, PN: 6000001101 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 110390.3 | 220780.6 | |
| Deepwater Warehouse | Fieldwood | 45259.A | | MR-3-O | COVER, ODI ELECTRICAL, DUMMY POD, PN: 6000001111 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 151110 | 302220 | |
| Deepwater Warehouse | Fieldwood | 45265.C | | MW-R16-1 | ASSY, MQC PLATE, IWOCS, REM, 12-WAY/LINE F/ ST-12, AKER, PN: 10058761 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 25272.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 45276.A | | MW-AREA 5 | ASSY, PRE-FAT PRODUCTION, G2 TUBING HANGER, F/ ST-13 | | | EA | | | 0 | | 5466.49 | 0 | |
| Deepwater Warehouse | Fieldwood | 45311.B | | DWW-YARD | FLYING LEAD, THERMO-PLASTIC HYDRAULIC (TPHFL), HDU, 8-WAY, W/ADDED FLOATATION MODULE, 275 FT | | | EA | | | 1 | | 186608.96 | 186608.96 | |
| Deepwater Warehouse | Fieldwood | 45500.A | | DWW-YARD | TUBING, PRODUCTION, 3.500 IN, 9.3#, 13CR95, BTS-8 | 139991 | MC 698 1 BIG BEND FEED COMPLT | FT | | | 126 | | 36.5 | 4599 | |
| Deepwater Warehouse | Fieldwood | 45502.A | | BW-R6-FL | SLEEVE, LOCK DOWN, (LDS), CONFIRMATION TOOL, 27.000 IN DIA, ANODIZED ALUMINUM TOP PLATE, PLATE BOLTED TO DELRIN LEGS CONNECTED TO A DELRIN BOTTOM PLATE, FITS WELLHEAD AT 8.77IN, W/PELICAN SHIPPING BOX, FUGRO | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 10400 | 20800 | |
| Deepwater Warehouse | Fieldwood | 45586.B | | MR-GENERAL | KIT, VALVE, 3-WAY, INCLUDES SPEC SHEET, OMM AND MOB DOC, OCEANEERING FORGING, STRESS JOINT, RTI ENERGY SYSTEMS, DOCUMENT NUMBER: GUN-SS-SSF-RIS-SOW-0001 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 5887.5 | 11775 | |
| Deepwater Warehouse | Fieldwood | 45667.A | | DWW-YARD | KIT, MQB GUNFLINT LONG LEAD | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 431151 | 431151 | |
| Deepwater Warehouse | Fieldwood | 45989.A | | DWW-YARD | PUP JT, 7.750 IN, 46.10#, HCQ125, TSH, 523 BXP @ 23 (25 FT) | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 1 | | 6220 | 6220 | |
| Deepwater Warehouse | Fieldwood | 46449.A | | DWW-YARD C-VAN TTNU9776101456SG1 (CLIMATE CONTROLLED) | MODULE, SUBSEA CONTROL, FOR GALAPAGOS, CAMERON, PN: 223053-61 | 131068 | MC 519 FABRICATION | EA | | | 0 | | 928557 | 0 | |
| Deepwater Warehouse | Fieldwood | 46461.A | | DWW-YARD C-VAN 429796 | CAP, PRESSURE, FEMALE, FITTED W/A 2-WAY 0.500IN BALL VALVE AND 0.500 FT HOT STAB, API 17D, TYPE A, MODEL:  UH-575-550, UNITECH, PN: 31915 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 102794.75 | 102794.75 | |
| Deepwater Warehouse | Fieldwood | 46464.A | | MR-5-C | KIT, SEAL, MODEL: UH-575/550, UNITECH, PN: 25491 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 6 | | 7362.5 | 44175 | |
| Deepwater Warehouse | Fieldwood | 46465.A | | DWW-YARD C-VAN DNVU-2051995 | KIT, TOOL, MODEL: UH-575/550, UNITECH, PN: 25492 | 142679 | MC 782 GUNFLINT DEVELOPMENT | EA | | | 1 | | 9500 | 9500 | |
| Deepwater Warehouse | Fieldwood | 46465.A | | MR-5-C | KIT, TOOL, MODEL: UH-575/550, UNITECH, PN: 25492 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 12112.5 | 24225 | |
| Deepwater Warehouse | Fieldwood | 46465.A | | MR-5-C | KIT, TOOL, MODEL: UH-575/550, UNITECH, PN: 25492 | 139057 | | EA | | | 1 | | 12112.5 | 12112.5 | |
| Deepwater Warehouse | Fieldwood | 46466.A | | MR-1-F | CAP, PROTECTION, FOR FEMALE CONNECTOR UH-575/550, UNITECH, PN: 27387 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 8692.5 | 17385 | |
| Deepwater Warehouse | Fieldwood | 46467.A | | MR-1-F | PLUG, PROTECTION, FOR MALE CONNECTOR UH-575/550, UNITECH, PN: 27388 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 8312.5 | 16625 | |
| Deepwater Warehouse | Fieldwood | 46468.A | | DWW-YARD C-VAN DNVU-2051995 | CASE, PELICAN, FOR STORAGE OF FEMALE CONNECTOR 32392, UNITECH, PN: 32060 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 2500 | 5000 | |
| Deepwater Warehouse | Fieldwood | 46586.A | | DWW-YARD C-VAN CCLU 667229 | INSER,CHOKE,RETRIEVABLE,ADJUSTABLE,HRV P35-15K,GALAPAGOS SPARE,CV 94 FLOW TRIM SCB TUNGSTEN CARBID,W/STAINLESS CARRIERS,VERTICAL CLAMP ACCESS 180 DEG,W/API 17D CLASS S DRIVE INTERFACE,FOR MATER FLO VALVE,MASTER FLO,PN:42005-016-02 | 128021 | MC 519 DESIGN | EA | | | 1 | | 151025 | 151025 | |
| Deepwater Warehouse | Fieldwood | 46638.A | | DWW-YARD | STEEL TUBE FLYING LEAD (STFL), 7 LINE, 12 WAY AKER X 14 WAY OIE M1, 60M, (1+1 SPARE), AKER SOLUTIONS, PN: 10233216 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 127242 | 127242 | |
| Deepwater Warehouse | Fieldwood | 46641.A | | DWW-YARD | STEEL TUBE FLYING LEAD (STFL), 9 LINE, 12 WAY AKER X 14 WAY OIE M1, 60 M (1+1 SPARE), AKER SOLUTIONS, PN: 10233217 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 135732 | 0 | |

6

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 46643.A | | DWW-YARD C-VAN CPU 0301122261 | SAND DETECTOR, ACOUSTIC, CLAMP-ON X 6 WAY ODI MALE, 60M, AKER SOLUTIONS, NEW PN: 10243498,OLD PN:10233219 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 107180 | 0 | |
| Deepwater Warehouse | Fieldwood | 46645.A | | MW-R5-2 | ELECTRICAL FLYING LEAD, ODI 9D DEG, 8 WAY MALE X 8 WAY FEMALE, 60M (1+1 SPARE), PN: 8815-000778-20 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 32766 | 32766 | |
| Deepwater Warehouse | Fieldwood | 46646.A | | DWW-YARD C-VAN 433422 0 | ELECTRICAL FLYING LEAD, ODI 9D DEG, 4 WAY MALE X 4 WAY FEMALE, 60M (15+2 SPARE), PN: 8815-000776-20 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 34215 | 68430 | |
| Deepwater Warehouse | Fieldwood | 46660.B | | DWW-YARD C-VAN 2051995 000695-37 | CONNECTOR, TEST, 8 WAY, ODI FEMALE, W/PIGTAIL, AKER SOLUTIONS, PN: 8815- | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 1661.25 | 0 | |
| Deepwater Warehouse | Fieldwood | 46673.A | | BW-AREA 3 | LIFT SUB, 6.625 IN OD, 5-135, W/4.500 IN IF PIN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 14277 | 28554 | |
| Deepwater Warehouse | Fieldwood | 46764.B | | MW-R15-2 | ASSEMBLY, FLUSHER, DUAL PATH, LF/LF CONFIGURATION, ROV RETRIEVABLE DOCKING CANISTER, 10000 PSI RATED WORKING PRESSURE, SKOFLO, PN: 2118B-3 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 22842.75 | 22842.75 | |
| Deepwater Warehouse | Fieldwood | 46996.A | | MR-3-C | FITTING, 0.750 IN MTM X 0.375 IN TUBE W/FLUSH FITTING, PETRO TECHNOLOGIES, PN: 120M841 REV G | | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 0 | | 3576.4 | 0 | |
| Deepwater Warehouse | Fieldwood | 46997.A | | MR-3-C | FITTING, 0.750 IN MTM X 0.250 IN TUBE W/FLUSH FITTING, PETRO TECHNOLOGIES, PN: 130M751 REV G | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 0 | | 3236.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 46998.A | | MR-3-C | FITTING, 0.750 IN MTM X 0.500 IN POTHI SHORT W/FLUSH FITTING, PETRO TECHNOLOGIES, PN: 160M141 REV B | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 0 | | 4996.12 | 0 | |
| Deepwater Warehouse | Fieldwood | 47020.A | | DWW-YARD | TUBING, 4.500 IN, 17.00#, 0380 IN, VM110-13CRSS, DRIFT 3.615 IN VAM TOP, R3 | | MC 948 4 GUNFLINT COMPLETION/L | FT | | | 81.33 | | 81.33 | 6614.5689 | |
| Deepwater Warehouse | Fieldwood | 47025.A | | DWW-YARD | PUP, JT, 4.500 IN, 17.00#, 0.380 IN, VM110-13CRSS, DRIFT 3.615 IN VAM TOP, 10 FT | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 3150.84 | 9452.52 | |
| Deepwater Warehouse | Fieldwood | 47059.A | | DWW-YARD C-VAN HJCU 1339199 | ASSEMBLY, SEAL, EMERGENCY, FOR 18.750 SS-15 SYSTEM, H2S, DRIL-QUIP, PN: 2-402060-02 | | | EA | | | 0 | | 23516.36 | 0 | |
| Deepwater Warehouse | Fieldwood | 47342.A | | PUP JOINT RACK-TIER 5 | FLO TOOL, 4.500 IN, 15.50#, 13CR110, BT5-6, LOWER BCSD X 13 FT (SQUARE SHOULDER W/GROOVE) | 126136 | MC 519 2 DRL/EVAL/P&LA | EA | | | 1 | | 8594 | 8594 | |
| Deepwater Warehouse | Fieldwood | 47350.A | | PUP JOINT RACK-FLOOR | CROSSOVER, SUB, 4.500 IN, 12.60#, 13CR95, VAM TOP BOX X 5.500 IN, 23#, BT5-6 PIN X 14.000 IN | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 950 | 950 | |
| Deepwater Warehouse | Fieldwood | 47353.B | | PUP JOINT RACK-FLOOR | CROSSOVER, SUB, 4.500 IN, 15.50#, HYPER 13CR110, BT5-6 BOX X 5.500 IN, 17#, VAM TOP PIN X 2 FT | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 3595.5 | 3595.5 | |
| Deepwater Warehouse | Fieldwood | 47358.B | | PUP JOINT RACK-FLOOR | NIPPLE, 3.500 IN, 9.30#, 13CR110, BCS, (2.813 IN P.B.) (THREADED 3.500 IN 9.20# VAM F.JL BOX/PIN) | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 4435.5 | 4435.5 | |
| Deepwater Warehouse | Fieldwood | 47383.A | | PUP JOINT RACK-FLOOR | PUP JT, 6.000IN, 30.38#, 13CR115, VAM TOP KP PIN X PIN X 2FT | | | EA | | | 1 | | 2778.34 | 2778.34 | |
| Deepwater Warehouse | Fieldwood | 47393.A | | PUP JOINT RACK-TIER 2 | PUP JT, 4.500IN, 15.50#, HYPER 13CR110, BT5-6 S/C X 4 FT (SQUARE SHOULDER) | | | EA | | | 1 | | 327.25 | 327.25 | |
| Deepwater Warehouse | Fieldwood | 47401.A | | PUP JOINT RACK-FLOOR | RABBIT, DRIFT, 3.720IN OD, PVC X 14.000 IN | | | EA | | | 1 | | 88.49 | 88.49 | |
| Deepwater Warehouse | Fieldwood | 47403.A | | PUP JOINT RACK-FLOOR | RABBIT, DRIFT, 4.500IN, 15.50#, BT5-6, PVC X 14.000 IN (3.701IN OD) | | | EA | | | 1 | | 107.56 | 107.56 | |
| Deepwater Warehouse | Fieldwood | 47405.B | | PUP JOINT RACK-TIER 5 | FLO TOOL, 4.500IN, 15.50#, HYPER 13CR110, VAM TOP BOX X 4.500IN, 15.50, BT5-6, S/C PIN (SQUARE SHOULDER), LOWER CROSSOVER BCSD X 14 FT | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 6962.25 | 6962.25 | |
| Deepwater Warehouse | Fieldwood | 47416.B | | PUP JOINT RACK-TIER 5 | FLO TOOL, 4.500IN, 15.50#, HYPER 13CR110, BT5-6, S/C BOX (SQUARE SHOULDER) X 4.500IN, 15.10#, VAM TOP BOX, UPPER, BCSD X 14 FT | 127684 | VK 917 1 ST2 COMPLETE | EA | | | 1 | | 6962.25 | 6962.25 | |
| Deepwater Warehouse | Fieldwood | 47417.A | | C-VAN C2-3409 | FLYING LEAD, ELECTRICAL, 12-WAY, 350 FT, ODI, PN: 1065206 | 128021 | MC 519 DESIGN | EA | | | 0 | | 15366 | 0 | |
| Deepwater Warehouse | Fieldwood | 50068.A | | MR-GENERAL | CAP,TYP:CORROSION, DIVERLESS,STAB,MALE,HYDRAULIC ASSY USE W/MANIFOLD VGI,MFR:GE OIL & GAS,PN HS0458-3 | | | EA | | | 2 | | 9524.01 | 19048.02 | |
| Deepwater Warehouse | Fieldwood | 50241.A | | DWW-YARD C-VAN DNVU-2051995 | CAP;TYP:PRESSURE,CONN TYP:FEMALE,SPCL FEATRS:WITH BALL VALVE 3/8 INCH; HI FLDW HOT STAB;MFR:UNITECH,PN:29219 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 85750 | 171500 | |
| Deepwater Warehouse | Fieldwood | 50241.B | | MW-R17-1 | CAP;TYP:PRESSURE,CONN TYP:FEMALE,SPCL FEATRS:WITH BALL VALVE 3/8 INCH; HI FLDW HOT STAB;MFR:UNITECH,PN:29219 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 64312.5 | 64312.5 | |
| Deepwater Warehouse | Fieldwood | 50243.A | | DWW-YARD C-VAN DNVU-2051995 | CAP; TYPE: PROTECTIVE CONNECTOR, CONNECTION TYPE: FEMALE; MFR: UNITECH, PN: 26687 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 3000 | 6000 | |
| Deepwater Warehouse | Fieldwood | 50245.A | | DWW-YARD C-VAN DNVU-2051995 | KIT, SEAL;TYP:UH-550,MFR:UNITECH,PN:26414 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 10 | | 1500 | 15000 | |
| Deepwater Warehouse | Fieldwood | 50246.A | | DWW-YARD C-VAN DNVU-2051995 | COVER,MFR:UNITECH,PN:9274,TYP MARINE GROWTH,SZ 6 IN | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 1700 | 3400 | |
| Deepwater Warehouse | Fieldwood | 50358.B | | BW-AREA 2 | ASSEMBLY;TYP:TERMINATION HEAD,SPCL FEATRS:2 LINE, M1 REMOVABLE PLATE, M1 90 DEG TERMINATION STRUCTURE,MFR:OIE,PN:432505-ITEM 31,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 37653.75 | 37653.75 | |
| Deepwater Warehouse | Fieldwood | 50359.A | | BW-AREA 2 | ASSEMBLY;TYP:TERMINATION HEAD,SPCL FEATRS:M1 REMOVABLE PLATE, M1 90 DEG TERMINATION STRUCTURE,MFR:OIE,PN:432505-ITEM 32,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 3 | | 68651 | 205953 | |
| Deepwater Warehouse | Fieldwood | 50360.A | | MW-R16-1 | JUNCTION PLATE, SUBSEA;-FIXED,LN QTY:10 LINE,;14 WAY,;15 KPSI,SPCL FEATS:M1 FIXED,MFR:OIE,PN:428783-ITEM 26,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 26392 | 0 | |
| Deepwater Warehouse | Fieldwood | 50360.B | | MW-R15-1 | JUNCTION PLATE, SUBSEA;-FIXED,LN QTY:10 LINE,;14 WAY,;15 KPSI,SPCL FEATS:M1 FIXED 10 X 1/2 HUNTING RS MALE NVP COUPLER,MFR:OIE,PN:428783-ITEM 26,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 19794 | 0 | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R15-2 | JUNCTION PLATE, SUBSEA;-COMPENSATED, LTCP:;15 KPSI,SPCL FEATRS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEADS | EA | | | 1 | | 27297.75 | 27297.75 | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R15-FL | JUNCTION PLATE, SUBSEA;-COMPENSATED, LTCP:;15 KPSI,SPCL FEATS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 27297.75 | 27297.75 | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R15-FL | JUNCTION PLATE, SUBSEA;-COMPENSATED, LTCP:;15 KPSI,SPCL FEATS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 27505.5 | 27505.5 | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R17-3 | JUNCTION PLATE, SUBSEA;-COMPENSATED, LTCP:;15 KPSI,SPCL FEATS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 37500 | 75000 | |
| Deepwater Warehouse | Fieldwood | 50366.B | | DWW-YARD C-VAN DNVU-2051995 | JUNCTION PLATE, SUBSEA;-FIXED,LN QTY:14,SPCL FEATS:STPC, 14 X 1/2 HUNTING RS MALE DUMY COUPLER,MFR:OIE,PN:0291912-ITEM 26,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 15682.5 | 0 | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 50371.A | | DWW-YARD | FRAME;TYP:CARTRIDGE DEPLOYMENT,MATL:CS,SPCL FEATRS:TOPSIDE PRIME COATED,APPLI:SFL,MFR:OIE,PN:0428784-ITEM 37,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 45427 | 0 | | |
| Deepwater Warehouse | Fieldwood | 50371.A | | DWW-YARD | FRAME;TYP:CARTRIDGE DEPLOYMENT,MATL:CS,SPCL FEATRS:TOPSIDE PRIME COATED,APPLI:SFL,MFR:OIE,PN:0428784-ITEM 37,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 5 | | 62896 | 314480 | | |
| Deepwater Warehouse | Fieldwood | 50388.B | | DWW-YARD/MW-R15-1 | PLATE;TYP:TEST AND FLUSHING, FIXED, 14 WAY,SPCL FEATRS:M1 FIXED T/F W/STAND,MFR:OIE,PN:429315-ITEM 34 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 29632.5 | 59265 | | |
| Deepwater Warehouse | Fieldwood | 50392.A | | OS-R3-FL | VALVE, CONTROL;VLV SZ:1IN,CL:150,TRIM:3/8 IN, S17400 DH1150,ACTTR STYL:FAIL CLOSED, SIZE 69,SPCL FEATRS:OPERATING SIGNAL 0-35 PSIG,STYL:GLOBE,MFR:DYNAFLO,PN:DF269-1CG6-6AF-3BS,MFR:DYNAFLO,SERIES/VERSION:DF269 | | NEPTUNE | EA | | | 2 | | 1589.455 | 3178.91 | | |
| Deepwater Warehouse | Fieldwood | 50393.A | | OS-R3-FL | VALVE, CONTROL;VLV SZ:2IN,CL:300,TRIM:3/8 IN, S17400 DH1150,ACTTR STYL:FAIL CLOSED, SIZE 69,SPCL FEATRS:OPERATING SIGNAL 0-35 PSIG,STYL:GLOBE,MFR:DYNAFLO,PN:DF269-2GC6-6BF-3BS,MFR:DYNAFLO,SERIES/VERSION:DF269 | | NEPTUNE | EA | | | 1 | | 1870.53 | 1870.53 | | |
| Deepwater Warehouse | Fieldwood | 50516.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:HYDRAULIC TUBE,APPLI:FOR PERMA-SERIES PACKER,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 48 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4243.7 | 4243.7 | | |
| Deepwater Warehouse | Fieldwood | 50516.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:HYDRAULIC TUBE,APPLI:FOR PERMA-SERIES PACKER,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 48 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 4243.7 | 4243.7 | | |
| Deepwater Warehouse | Fieldwood | 50517.A | | DWW-YARD | COLUMN;TYP:COIL IN LINE,DIM:5.5 IN-23.00 VAM TOP,MATL:S13CR110,SPCL FEATRS:6 IN, B-P, 6800 SNAP DOWN 25,500 SNAP UP,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 39 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 9336.9 | 9336.9 | | |
| Deepwater Warehouse | Fieldwood | 50518.A | | VERTICAL RACK | ASSEMBLY;TYP:FLUID CONTROL DEVICE,DIM:7-5/8 IN, 42.8,MATL:S13CR110 AB-HDS,SPCL FEATRS:BOX X PIN, 14190 PSI BURST, 13930 PSI COLLAPSE,SPEC:TWIN FLOW EXTENSIO,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM29 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 31460.96 | 31460.96 | | |
| Deepwater Warehouse | Fieldwood | 50519.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:3 1/2-10.2,CONN TYP:VAM TOP BOX,MATL:SUPER 13CR/110KSI,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 11 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 13012.97 | 13012.97 | | |
| Deepwater Warehouse | Fieldwood | 50520.A | | DWW-YARD | SLEEVE;TYP:CIRCULATION / PRODUCTION,MATL:13CR110,PRESS RTNG:10,000 PSI,SPEC:3-1/2 IN, 9.3, BTS-8 BOX X PIN,STD:RO SLIMLINE DURAGLEEVE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 33 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 23691.76 | 23691.76 | | |
| Deepwater Warehouse | Fieldwood | 50521.A | | DWW-YARD | LOCATOR, DRILLING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 35,TYP NO-GO,CONN SZ 3 1/2 IN,CONN TYP BTS-8 X 3 1/2-10.2 VAM TOP BOX X PIN,MATL 13CR/110,WT 9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 8924.85 | 8924.85 | | |
| Deepwater Warehouse | Fieldwood | 50522.A | | DWW-YARD | SUB;TYP:SHEAR,CASING WT:23,MATL GR:13CR110,CONN SZ:5-1/2 IN,CONN TYP:VAM TOP BOX X PIN,SPCL FEATRS:ATLAS O-RINGS, 81,000 LB SHEAR,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 27 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 26081.99 | 52163.98 | | |
| Deepwater Warehouse | Fieldwood | 50523.A | | DWW-YARD | COUPLING, OCTG;TYP:COLLET INDICATOR,NOM SZ:7 5/8IN,WT:42.8 AB-HDL,CONN STYL: BOX X PIN, 45 DEG ANGLE,PRESS RTNG:14190 PSI BURST, 13930 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 24 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 11846.75 | 23693.5 | | |
| Deepwater Warehouse | Fieldwood | 50524.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:5 1/2 IN, 23,CONN TYP:VAM TOP BOX,MATL:13CR/110,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 16 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 14451.48 | 14451.48 | | |
| Deepwater Warehouse | Fieldwood | 50524.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:5 1/2 IN, 23,CONN TYP:VAM TOP BOX,MATL:13CR/110,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 16 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 14451.48 | 14451.48 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | DWW-YARD | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 4 | | 7858.72 | 31434.88 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | DWW-YARD | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 6 | | 7858.72 | 47152.32 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | PUP JOINT RACK-FLOOR | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 7858.72 | 15717.44 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | PUP JOINT RACK-FLOOR | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 7858.72 | 15717.44 | | |
| Deepwater Warehouse | Fieldwood | 50527.A | | VERTICAL RACK | SUB;TYP:BOTTOM,PRESS RTNG:10,000 PSI BURST,9700 COLLAPSE,MATL GR:S13CR110,CONN TYP:7-15/16-6 STUB ACME PIN X 7-3/4-8 AC BOX,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 20 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 5916.83 | 11833.66 | | |
| Deepwater Warehouse | Fieldwood | 50528.A | | MW-AREA 5 | EXTENSION;TYP:SEAL BORE,DIM:4 1/2-8 LNG BOX X PIN,MATL:SUPER C110,SPEC:12730 PSI BURST, 11280 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 18 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 10673.3 | 21346.6 | | |
| Deepwater Warehouse | Fieldwood | 50529.A | | DWW-YARD | GUIDE, MULE SHOE;CONN SZ:3 1/2-10.2,CONN TYP:VAM TOP BOX,MATL:13CR/110KSI,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 37 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 1734.33 | 1734.33 | | |
| Deepwater Warehouse | Fieldwood | 50530.A | | DWW-YARD | LOCATOR, DRILLING;TYP:PFZ,CONN SZ:4 1/2IN,CONN TYP:TSH 511 X 5 1/2 IN 23 VAM TOP,MATL:13CR/110,WT:15.1,PRESS RTNG:14340 COLLAPSE PSI,SPCL FEATRS:6 7/8-4 VERSA-LTH LH 72.000 SHEAR,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 12 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 17335.05 | 17335.05 | | |
| Deepwater Warehouse | Fieldwood | 50531.A | | VERTICAL RACK | EXTENSION;TYP:UPPER GRAVEL PACK,DIM:7 3/4-8 AC PIN X PIN,MATL:S13CR110,SPEC:20510 PSI BURST, 11220 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 21 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 19753.21 | 39506.42 | | |
| Deepwater Warehouse | Fieldwood | 50532.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:5 1/2 IN, 20,CONN TYP:VAM TOP SCBO,MATL:13CR80 KSI,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 45 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 12675.06 | 12675.06 | | |
| Deepwater Warehouse | Fieldwood | 50533.A | | PUP JOINT RACK-FLOOR | SUB, LIFT;TYP:UPPER HALF, LSOI,MFR:HALLIBURTON,PN:102138717 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 13517 | 13517 | | |
| Deepwater Warehouse | Fieldwood | 50533.A | | PUP JOINT RACK-FLOOR | SUB, LIFT;TYP:UPPER HALF, LSOI,MFR:HALLIBURTON,PN:102138717 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 13516.69 | 27033.38 | | |
| Deepwater Warehouse | Fieldwood | 50534.A | | DWW-YARD | LOCATOR, DRILLING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 38,TYP PNZ,CONN SZ 5 1/2 IN,CONN TYP SLHT X 5 1/2 IN 23# VAM TOP BXP,ID 3.88 HONE,MATL 13CR/110,WT 23,SPCL FEATRS 14.370 BURST, 14.260 COLLAPSE | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 10329.53 | 10329.53 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | S0536.A | | DWW-YARD | EXTENSION;TYP:MIDDLE GRAVEL PACK,DIM:7 5/8 IN, 42.8,MATL:S13CR110 AB-HDL, BOX X PIN,SPEC:14190 PSI BURST, 13930 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 23 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 31460.96 | 62921.92 | | |
| Deepwater Warehouse | Fieldwood | S0537.A | | MW-AREA 5 | EXTENSION;TYP:LOWER GRAVEL PACK,DIM:7-5/8 IN, 42.8,BOX X PIN,MATL:S13CR110 AB-HDL,SPEC:14190 PSI BURST 13930 PSI COLLAPSE,MFR:HALLIBURTON;PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 25 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 22497.65 | 22497.65 | | |
| Deepwater Warehouse | Fieldwood | S0537.A | | DWW-YARD | EXTENSION;TYP:LOWER GRAVEL PACK,DIM:7-5/8 IN, 42.8,BOX X PIN,MATL:S13CR110 AB-HDL,SPEC:14190 PSI BURST 13930 PSI COLLAPSE,MFR:HALLIBURTON;PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 25 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 22497.65 | 22497.65 | | |
| Deepwater Warehouse | Fieldwood | S0538.A | | DWW-YARD | LOCATOR, DRILLING;TYP:TOP SNAP COLLET SEAL ASSEMBLY,CONN SZ:5 1/2 IN,CONN TYP:SLHT TOP BOX X 5 1/2,20 VAM TOP PIN,MATL:13CR/80KSI,WT:23,SPCL FEATRS:COLLET VALUE 16000 LBS UP/6500 LBS DOWN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 41 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 13817.41 | 13817.41 | | |
| Deepwater Warehouse | Fieldwood | S0540.A | | MW-AREA 5 | NIPPLE, LANDING;TYP:RECEIVER,TUBE OD:NA,TUBE ID:NA,CONN SZ:4 5/16 4 STUB ACME-LH BOX X 4 1/2 15.1 VAM INSIDE PIN,CONN TYP:NA,ID:NA,OD:NA,MATL:13CR/110KSI,MATL SPEC:NA,MATL GR:NA,PRESS RTNG:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 13403.42 | 13403.42 | | |
| Deepwater Warehouse | Fieldwood | S0541.A | | DWW-YARD | ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 36,TYP:ATP SEAL UNIT,DIM 3 1/2 IN,10.2, VAM TOP BOX X PIN,MATL 13CR110,SPCL FEATRS 1.67 FT MAKE UP LENGTH PER SEAL UNIT (5 EA,),SPEC 15000 PSI (SEALS) | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 5 | | 8496 | 42480 | | |
| Deepwater Warehouse | Fieldwood | S0542.A | | DWW-YARD | ASSEMBLY;TYP:ATR SEAL UNIT,SZ:5 1/2IN,DIM:23, VAM TOP BOX X PIN,MATL:13CR110,SPCL FEATRS:14,370 BURST,14230 CLPS AT450 DEG F,SPEC:MANDREL,STD:1.67 FT LENGTH PER SEAL UNIT 3.88 HONED ID,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 13 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 9858.51 | 29575.53 | | |
| Deepwater Warehouse | Fieldwood | S0543.A | | DWW-YARD | ASSEMBLY;TYP:ATR SEAL UNIT,SZ:5 1/2IN,DIM:23, VAM TOP BOX X PIN,MATL:13CR110,SPCL FEATRS:14,370 BURST,14260 COLLAPSE AT 450 DEG F TEMP RATING,STD:1.67 FT LENGTH PER SEAL UNIT,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 15 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 4 | | 9858.51 | 39434.04 | | |
| Deepwater Warehouse | Fieldwood | S0543.A | | DWW-YARD | ASSEMBLY;TYP:ATR SEAL UNIT,SZ:5 1/2IN,DIM:23, VAM TOP BOX X PIN,MATL:13CR110,SPCL FEATRS:14,370 BURST,14260 COLLAPSE AT 450 DEG F TEMP RATING,STD:1.67 FT LENGTH PER SEAL UNIT,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 1S | 143751 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 11 | | 9858.51 | 108443.61 | | |
| Deepwater Warehouse | Fieldwood | S0544.A | | PUP JOINT RACK-TIER 3 | SUB, LIFT;TYP:LOWER HALF, LSOI,MFR:HALLIBURTON,PN:101901103 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 6869.87 | 13739.74 | | |
| Deepwater Warehouse | Fieldwood | S0544.A | | PUP JOINT RACK-TIER 3 | SUB, LIFT;TYP:LOWER HALF, LSOI,MFR:HALLIBURTON,PN:101901103 | 143752 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6870 | 6870 | | |
| Deepwater Warehouse | Fieldwood | S0545.A | | MW-AREA 5 | VALVE;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 26,CONN 1 SZ 7-5/8 IN,CONN 1 TYP VAM TOP BOX X PIN,DSGN RTNG FLUID LOSS,MATL INCOLOY 925,WT 42.8,PRESS RTNG 12,000 PSI(FRAC COLLAPSE),SPCL FEATRS 18+/-3 CYCLES TO OPEN,MFR:HALLIBURTON, | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 392913.94 | 392913.94 | | |
| Deepwater Warehouse | Fieldwood | S0547.A | | DWW-YARD | ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRITEM 10,TYP ATP SEAL UNT,SZ 3.5-10.2 IN,MATL 13CR110,COMPRISING VAM TOP BOX X PIN, 1.67 FT. MAKE UP LENGTH PER SEAL UNIT (6 EA.),SPCL FEATRS 15000 PSI,APPLI FS ASSEMBLY,SPEC MANDREL | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 6 | | 2301.18 | 13807.08 | | |
| Deepwater Warehouse | Fieldwood | S0549.A | | PUP JOINT RACK-TIER 4 | VALVE;CONN 1 TYP:7-5/8 IN,42.8,AB HDL BOX X 5-1/2 IN,23,VAM TOP PIN,DSGN RTNG:FLUID LOSS,MATL GR:13CR110,WT:23,SFTGDS:FLUROEL O-RINGS,PRESS RTNG:13,900 PSI,SPCL FEATRS:SEAL BORE 3.88 IN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 50 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 46740 | 93480 | | |
| Deepwater Warehouse | Fieldwood | S0550.A | | MW-AREA-6 | PACKER, DRILL;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 46,TYP PERMA-SERIES,STYL NA,ID NA,OD NA,CONN 1 SZ 9 5/8,PRESS RTNG 7,380 PSI WITH SEAL UNIT,WT 40-53.5,MATL 13CR/80 KSI,SPCL FEATRS TOP SHAP HOLD X 7 IN-8 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 33816.52 | 67633.04 | | |
| Deepwater Warehouse | Fieldwood | S0551.A | | DWW-YARD | ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 42,TYP AFLAS SEAL UNIT,SZ 5.5 IN,MATL 13CR80,COMPRISING 20 VAM TOP BOX X PIN, SC 80,SPCL FEATRS 9,080 PSI BRST,8,640 PSI CLPS,SPEC 80 KSI MANDREL | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 6153.71 | 12307.42 | | |
| Deepwater Warehouse | Fieldwood | S0552.A | | VERTICAL RACK | SLEEVE;TYP:CLOSING,MATL:S13CR110,PRESS RTNG:13930 PSI,SEAL MATL:FLOUREL O-RINGS,SPCL FEATRS:MCS,SPEC:7-5/8 8 AC BOX X 7-5/8 IN,42.8,AB-HDL PIN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 22 GUIDE, WAGE SHOE,TYP:EXTENDED GUIDE,NOM SZ:7 IN-8 UNS | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 42425.3 | 84850.6 | | |
| Deepwater Warehouse | Fieldwood | S0553.A | | MW-AREA-6 | PININ,MATL:13CR80,APPLI:FOR HALLIBURTON TOP SNAP SUMP PACKER ASSEMBLY,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 47 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 6350.57 | 12701.14 | | |
| Deepwater Warehouse | Fieldwood | S0554.A | | DWW-YARD | SUB;TYP:MAKEUP,PRESS RTNG:14,190 BURST,13,930 PSI COLLAPSE,MATL GR:13CR110,SPCL FEATRS:MUS, 7 5/8-42.8 AB-HD, X 5-1/2 IN, 23, VAM TOP BOX X PIN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 28 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 37949 | 75898 | | |
| Deepwater Warehouse | Fieldwood | S0558.A | | MW-AREA 5 | ASSEMBLY;TYP:TWIN FLOW,SZ:7-5/8 IN, 42.8, AB-HDL PIN X PIN,DIM:4 1/2 IN, 8-UNS BOX X 3 1/2 IN 9.3,BTS-8 PIN,MATL GR:S13CR110,SPCL FEATRS:AFLAS ELASTO,2.750 IN X LN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 30 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 93543.77 | 93543.77 | | |
| Deepwater Warehouse | Fieldwood | S0560.A | | PUP JOINT RACK-TIER 1 | ASSEMBLY;TYP:SHIFTER, FS2,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 49,MFR:HALLIBURTON,SERIES/VERSION:F2S | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 12297.67 | 12297.67 | | |
| Deepwater Warehouse | Fieldwood | S0560.A | | PUP JOINT RACK-TIER 1 | ASSEMBLY;TYP:SHIFTER, FS2,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 49,MFR:HALLIBURTON,SERIES/VERSION:F2S | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 12297.67 | 24595.34 | | |
| Deepwater Warehouse | Fieldwood | S0561.A | | PUP JOINT RACK-FLOOR | ASSEMBLY;TYP:SHIFTER, ISS,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 51,MFR:HALLIBURTON,SERIES/VERSION:ISS | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 14939 | 29878 | | |
| Deepwater Warehouse | Fieldwood | S0626.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3129,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN OD,DIM RANGE 3,SLHT,MATL ALLOY 20,MATL GR 23 LB/FT,HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED F 9.875 IN OD,65.10 LB/FT,CENTRALIZER OD 8.250 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 3 | | 21430 | 64290 | | |
| Deepwater Warehouse | Fieldwood | S0626.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3129,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN OD,DIM RANGE 3,SLHT,MATL ALLOY 20,MATL GR 23 LB/FT,HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED F 9.875 IN OD,65.10 LB/FT,CENTRALIZER OD 8.250 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 21430 | 64290 | | |
| Deepwater Warehouse | Fieldwood | S0627.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3130,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 19.50 FT IT,C1 23,MATL ALLOY 20,MATL GR HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 11215 | 11215 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 50627.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3130,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 19.50 FT JT,CL 23,MATL ALLOY 20,MATL GR HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED | 143751 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 11215 | 11215 | | |
| Deepwater Warehouse | Fieldwood | 50628.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3131,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 10.25 FT JT,CL 23,MATL ALLOY 20,SPCL FEATRS W/CENTRALIZERS INSTALLED,BRAND:DELTA SCREENS,BRAND:DELTA ELITE | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 5720 | 5720 | | |
| Deepwater Warehouse | Fieldwood | 50628.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3131,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 10.25 FT JT,CL 23,MATL ALLOY 20,SPCL FEATRS W/CENTRALIZERS INSTALLED,BRAND:DELTA SCREENS,BRAND:DELTA ELITE | 143751 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 5720 | 5720 | | |
| Deepwater Warehouse | Fieldwood | 50631.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:BLANK 3132,TYP CASING,SZ 5 1/2 IN,DIM 39 FT JT,CL 23,MATL GR HP2 13CR-110,SPCL FEATRS W/SS WELD-ON CENTRALIZERS F/8.25 OD,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 5 | | 9262 | 46310 | | |
| Deepwater Warehouse | Fieldwood | 50632.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ 5 1/2IN,WT:23.00,MATL GR:HP2 13CR-110,TOP CONN TYP:SLHT BOX X PIN,LG:4ft,MFR:DELTA SCREENS,PN:PUP JOINT 3136,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 2470 | 4940 | | |
| Deepwater Warehouse | Fieldwood | 50633.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ 5 1/2IN,WT:23.00,MATL GR:HP2 13CR-110,TOP CONN TYP:SLHT BOX X PIN,LG:6ft,MFR:DELTA SCREENS,PN:PUP JOINT 3135,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 2830 | 5660 | | |
| Deepwater Warehouse | Fieldwood | 50634.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ 5 1/2IN,WT:23.00,MATL GR:HP2 13CR-110,TOP CONN TYP:SLHT BOX X PIN,LG:8ft,MFR:DELTA SCREENS,PN:PUP JOINT 3134,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 3225 | 6450 | | |
| Deepwater Warehouse | Fieldwood | 50635.A | | DWW-YARD | PUP JOINT, CASING;MFR:DELTA SCREENS,PN:PUP JOINT 3133,NOM SZ 5 1/2 IN,WT 23.00,MATL GR HP2 13CR-110,TOP CONN TYP SLHT BOX X PIN,LG 10 FT,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 3620 | 3620 | | |
| Deepwater Warehouse | Fieldwood | 50635.A | | DWW-YARD | PUP JOINT, CASING;MFR:DELTA SCREENS,PN:PUP JOINT 3133,NOM SZ 5 1/2 IN,WT 23.00,MATL GR HP2 13CR-110,TOP CONN TYP SLHT BOX X PIN,LG 10 FT,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 3620 | 7240 | | |
| Deepwater Warehouse | Fieldwood | 50934.A | | DWW-YARD | CROSSOVER,MATL:GR:NA,TYP:CASING,BOT CONN TYP:VAM FJI, PIN 5,BOT CONN SZ:6-5/8 IN, 32,TOP CONN TYP:VAM TOP BOX,TOP CONN SZ:4-1/2 IN, 17,MATL:13CR110 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 9044.75 | 9044.75 | | |
| Deepwater Warehouse | Fieldwood | 50935.A | | DWW-YARD | CROSSOVER,MATL GR:110,TYP:NA,BOT CONN TYP:VAM TOP PIN,BOT CONN SZ:3-1/2IN,TOP CONN TYP:HYDRYL S11 BOX,TOP CONN SZ:3-1/2IN,MATL:13CR | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 5485.5 | 5485.5 | | |
| Deepwater Warehouse | Fieldwood | 50936.A | | DWW-YARD | JOINT;TYP:CASING,DIM:6-5/8IN,WT:32kg,LG:40ft,MATL:SUPER 13CR,MATL GR:110,CONN 1 SZ:6-5/8IN,CONN 1 TYP:BOX VAM FJI,CONN 2 SZ:6-5/8IN,CONN 2 TYP:PIN VAM FJI,SPCL FEATRS:N/A | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 24748 | 49496 | | |
| Deepwater Warehouse | Fieldwood | 50937.A | | DWW-YARD | TUBING, OCTG;NOM SZ:4-1/2IN,OD:NA,WT:15.1,MATL GR:13CR110,PROCESS:TSH S11,CONN TYP:BOX X PIN,LG:40ft,SPCL FEATRS:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 16474.9 | 32949.8 | | |
| Deepwater Warehouse | Fieldwood | 50939.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ:4-1/52IN,WT:15.1,MATL:13CR,MATL GR:110,PROCESS:TSH511,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:8ft | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 7834.38 | 7834.38 | | |
| Deepwater Warehouse | Fieldwood | 50939.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ:4-1/52IN,WT:15.1,MATL:13CR,MATL GR:110,PROCESS:TSH511,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:8ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 7834.38 | 7834.38 | | |
| Deepwater Warehouse | Fieldwood | 50941.A | | DWW-YARD | TUBING, OCTG;NOM SZ:3-1/2IN,OD:NA,WT:9.3,MATL GR:13CR110,PROCESS:BTS-8,CONN TYP:BOX X PIN,LG:30ft,SPCL FEATRS:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 6 | | 2012.5 | 12075 | | |
| Deepwater Warehouse | Fieldwood | 50942.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;NOM SZ:3-1/2IN,WT:9.3,MATL:13CR,MATL GR:110,PROCESS:BTS-8,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:12IN | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 1986.05 | 3972.1 | | |
| Deepwater Warehouse | Fieldwood | 50943.A | | MW-AREA 5 | PUP JOINT, CASING;NOM SZ:3-1/2IN,WT:9.3,MATL:13CR,MATL GR:110,PROCESS:BTS-8,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:2ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 2725.5 | 2725.5 | | |
| Deepwater Warehouse | Fieldwood | 50944.A | | MW-AREA 6 | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:4ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 4151.5 | 8303 | | |
| Deepwater Warehouse | Fieldwood | 50945.A | | MW-AREA 6 | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:6ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 5715.5 | 11431 | | |
| Deepwater Warehouse | Fieldwood | 50946.A | | MW-AREA 6 | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:8ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 7233.5 | 14467 | | |
| Deepwater Warehouse | Fieldwood | 50947.A | | (1) MW-AREA 6/(1) DWW-YARD | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:10ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 8038.5 | 16077 | | |
| Deepwater Warehouse | Fieldwood | 50948.A | | DWW-YARD | COUPLING, OCTG;TYP:NA,NOM SZ:5-1/2IN,WT:20,ID:NA,OD:NA,LG:NA,MATL:13CR,MATL GR:80,PROCESS:NA,TOP CONN TYP:VAM TOP BOX, SC 80,TOP CONN SZ:5-1/2IN,BOT CONN TYP:VAM TOP PIN, SC 80,BOT CONN SZ:5-1/2IN,SURF TRTMNT:NA,PRESS RTNG:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4255 | 4255 | | |
| Deepwater Warehouse | Fieldwood | 50949.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ:5-1/2IN,WT:20,MATL:13CR,MATL GR:80,PROCESS:NA,TOP CONN TYP:VAM TOP BOX, SC 80,BOT CONN TYP:VAM TOP PIN, SC 80,LG:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 7101.25 | 7101.25 | | |
| Deepwater Warehouse | Fieldwood | 50954.A | | OS-R3-S3 | PLATE;TYP:THRUST,APPLI:BEARING FOR 240B SUPERIOR ENGINE,MFR:SINOR,PN:650-906-001 | | NEPTUNE | EA | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 51057.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH S11,BOT CONN TYP:PIN TSHS11,LG:6ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6067.4 | 6067.4 | | |
| Deepwater Warehouse | Fieldwood | 51057.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH S11,BOT CONN TYP:PIN TSHS11,LG:6ft | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 6067.4 | 12134.8 | | |
| Deepwater Warehouse | Fieldwood | 51058.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH S11,BOT CONN TYP:PIN TSH S11,LG:4ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6067.4 | 6067.4 | | |
| Deepwater Warehouse | Fieldwood | 51058.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH S11,BOT CONN TYP:PIN TSH S11,LG:4ft | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 6067.4 | 12134.8 | | |
| Deepwater Warehouse | Fieldwood | 51083.A | | PUP JOINT RACK-FLOOR | NIPPLE;TYP:RPT,CONN SZ:3.313, 4.5IN,CONN TYP:VAM TOP,MATL:13CR110,MATL GR:NA,PROCESS:N/A,WT:17 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 5704.85 | 5704.85 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | S1084.A | | MW-AREA 6 | JOINT,BLAST;NOM SZ 3 1/2 INN,CONN TYP:NA,LG:20ft,MATL:13CR/110 BTS-8,PROCESS:NA,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 5 | | 17589.25 | 87946.25 | | |
| Deepwater Warehouse | Fieldwood | S1105.A | | MR-6-D | KIT, SEAL;TYP:RESILIENT,APPLI:SSR PLUG S-1/4 IN 2748033-01,MFR:CAMERON,PN:2142583-01 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 3543 | 0 | | |
| Deepwater Warehouse | Fieldwood | S1105.B | | N/A | KIT, SEAL;TYP:RESILIENT,APPLI:SSR PLUG S-1/4 IN 2748033-01,MFR:CAMERON,PN:2142583-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | EA | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | S1442.A | | DWW YARD C-VAN 401592-1 | CENTRALIZER, CASING;TYP:SUB,OD:9-7/8IN,MATL:ALLOY API Q125,CONN TYP:TSH S23 BOX X TSH S23 PIN DOPELESS,BOW TYP:(B)BOW SPRING-14-7/8 OVER BOW,SPEC:62.80,MFR:BLACKHAWK,PN:0102961-QP0003 A,MFR:BLACKHAWK,MN:R3600, BST-25 | | | EA | | | 0 | | 6023.888 | 0 | | |
| Deepwater Warehouse | Fieldwood | S1442.A | | DWW YARD C-VAN 433422-0 | CENTRALIZER, CASING;TYP:SUB,OD:9-7/8IN,MATL:ALLOY API Q125,CONN TYP:TSH S23 BOX X TSH S23 PIN DOPELESS,BOW TYP:(B)BOW SPRING-14-7/8 OVER BOW,SPEC:62.80,MFR:BLACKHAWK,PN:0102961-QP0003 A,MFR:BLACKHAWK,MN:R3600, BST-25 | | | EA | | | 0 | | 6023.888 | 0 | | |
| Deepwater Warehouse | Fieldwood | S2233.A | | DWW-YARD | CABLE, UMBILICAL, SUBSEA;MFR:TECHNIP,PN:TAM-5W-NEM-SBF-CON-0001-BB,TYP:FLEXIBLE FLYING LEAD,CONDCTR SZ 2 IN,LG 100 M,SPEC SERVICE BB, WITH BIN RESTRICTOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 377629 | 377629 | | |
| Deepwater Warehouse | Fieldwood | S2307.A | | OS-GENERAL | SEAL;MFR:FMC TECHNOLOGIES,PN:P1000045117,TYP PRODUCTION | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 11559.24 | 11559.24 | | |
| Deepwater Warehouse | Fieldwood | S2307.A | | OS-GENERAL | SEAL;MFR:FMC TECHNOLOGIES,PN:P1000045117,TYP PRODUCTION | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 11559.24 | 11559.24 | | |
| Deepwater Warehouse | Fieldwood | S2342.A | | DWW-YARD | DISC, RUPTURE;MFR:FIKE,PN:A10116-1,BRAND:FIKE,BRAND:FIKE,MFR:FIKE,QUOTE:121964 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 6869 | 6869 | | |
| Deepwater Warehouse | Fieldwood | S3821.A | | DWW-YARD | JOINT;MFR:OIL STATES,PN:PD16916,DIM 8 IN,SPCL FEATRS INCLUDES HOLD COLLAR - PD 16762,MFR:OIL STATES,TYPE SCR FLEX | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 1739009 | 1739009 | | |
| Deepwater Warehouse | Fieldwood | S3822.A | | DWW-YARD | FRAME;MFR:OIL STATES,PN SP1X-23-264,TYP SHIPPING,DIM 834 L X 78 W X 82.7 H,MATL:ASTM A36 PLATE,ASTM A500 GR B RECTANGULAR TUBING,SPEC 32,190 LBS FRAME ONLY,MFR:OIL STATES,NOBLE RFQ:SP1X-23-264 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 186723 | 186723 | | |
| Deepwater Warehouse | Fieldwood | S3843.A | | DWW-YARD | SCREEN;MFR:DELTA SCREENS,PN:BLANK 3213 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4816 | 4816 | | |
| Deepwater Warehouse | Fieldwood | S6040.A | | DWW-YARD | SUB;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 99,TYP CROSSOVER,CASING WT 15.1,DIM 3-1/2 IN,MATL GR 13CR/110,CONN SZ 4-1/2 IN,CONN TYP BXP,SPCL FEATRS TSH S11 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 8802 | 8802 | | |
| Deepwater Warehouse | Fieldwood | S6042.A | | MW-AREA 5 | COUPLING;TYP N/A,CONN 1 SZ 7-5/8 IN,DIM 7-5/8 IN,MATL 110K,MATL GR S13CR,MATL SPEC 42.8,SPCL FEATRS PRESSURE RATING CALC: BURST 14190 PSI, COLLAPSE 13930 PSI,SPEC AB-HDL | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6090.37 | 6090.37 | | |
| Deepwater Warehouse | Fieldwood | S6042.A | | PUP JOINT RACK-FLOOR | COUPLING;TYP N/A,CONN 1 SZ 7-5/8 IN,DIM 7-5/8 IN,MATL 110K,MATL GR S13CR,MATL SPEC 42.8,SPCL FEATRS PRESSURE RATING CALC: BURST 14190 PSI, COLLAPSE 13930 PSI,SPEC AB-HDL | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6090.37 | 6090.37 | | |
| Deepwater Warehouse | Fieldwood | S6043.A | | DWW-YARD | COUPLING;TYP N/A,CONN 1 SZ N/A,CONN 1 TYP VAM TOP,DIM 3-1/2 IN,MATL 13CR,MATL GR 110,SPEC 10.2 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 3502.9 | 3502.9 | | |
| Deepwater Warehouse | Fieldwood | S6045.A | | DWW-YARD | PUP JOINT, TUBING;TYP N/A,NOM SZ 3-1/2 IN,WT 10.2,MATL GR 13CR,PROCESS 110,CONN TYP VAM TOP,TOP CONN TYP BXP,BOT CONN TYP BXP,LG 3-1/2 IN | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4703.5 | 4703.5 | | |
| Deepwater Warehouse | Fieldwood | S6048.A | | DWW-YARD | COUPLING;TYP N/A,CONN 1 SZ N/A,CONN 1 TYP VAM TOP,CONN 2 TYP VAM TOP,DIM 5-1/2 IN,MATL 110,MATL GR 13CR,SPEC 23 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 4370 | 13110 | | |
| Deepwater Warehouse | Fieldwood | S6050.A | | DWW-YARD | PUP JOINT, CASING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 88,TYP N/A,NOM SZ 5-1/2 IN,WT 23,MATL 110,MATL GR 13CR,TOP CONN TYP VAM TOP,BOT CONN TYP BXP,LG 8 ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 7998.25 | 15996.5 | | |
| Deepwater Warehouse | Fieldwood | S6368.A | | DWW-YARD | CASING, OCTG;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 50,NOM SZ 6-5/8 IN,WT 32 lb,MATL GR SUPER 13 CR 110,CONN TYP VAM FJL BXP,LG 15 ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 11529 | 11529 | | |
| Deepwater Warehouse | Fieldwood | S6369.A | | MR-1-A | SEAL, ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 52,TYP LSOTJ ASSEMBLY,MATL S13CR110,NOM SZ 6-5/8 IN,CONN TYP VAM FJL BOX X 4-1/2 IN 15.1 LB TSH S11 PIN,WT 32 lb,SPEC 60 FT OF CONTINUOUS SEALING STROKE, ATR SEAL UNITS | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 458032.4 | 458032.4 | | |
| Deepwater Warehouse | Fieldwood | S6370.A | | MR-1-A | SEAL, ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 52,TYP MOLDED AFLAS, STRADDLE,MATL S13CR/110,NOM SZ 6 IN,CONN TYP VAM TOP SC 80 5-1/2 IN,WT 20 lb | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 145653.13 | 145653.13 | | |
| Deepwater Warehouse | Fieldwood | S6373.A | | DWW-YARD | PUP JOINT, TUBING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 54,NOM SZ 3-1/2 IN,WT 10.2 lb,MATL GR SUPER CHROME 110 TSH-S11,LG 4 ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 3921.5 | 3921.5 | | |
| Deepwater Warehouse | Fieldwood | S6375.A | | DWW-YARD | PUP JOINT, TUBING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 57,NOM SZ 3-1/2 IN,WT 10.2 lb,MATL GR SUPER CHROME 110 TSH-S11,TOP CONN TYP BXP,LG CUT TO LENGTH | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4473.5 | 4473.5 | | |
| Deepwater Warehouse | Fieldwood | S6484.A | | OS-R1-S3 | SEAL;MFR:FMC TECHNOLOGIES,PN:P2000025846,TYP 5,SPCL FEATRS B TYPE EXTERNAL,APPLI ISOLATION SLEEVE | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 4 | | 857.84 | 3431.36 | | |
| Deepwater Warehouse | Fieldwood | S6485.A | | MR-S-D | TOOL;MFR:FMC TECHNOLOGIES,PN:P1000064452,TYP THRT HYDRAULIC STAB INSTALLATION | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 2373.89 | 2373.89 | | |
| Deepwater Warehouse | Fieldwood | S7031.A | | OS-R1-S3 | SLEEVE;MFR:FMC TECHNOLOGIES,PN:P1000133891,TYP S-SEAL; ISOLATION (UPPER) | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 940.5 | 940.5 | | |
| Deepwater Warehouse | Fieldwood | S7211.A | | OS-R1-S3 | THERMOSTAT;MFR:EATON,PN:4709A93G03,TYP ENCLOSURE SPACE HEATER CONTROL | | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 580 | 580 | | |
| Deepwater Warehouse | Fieldwood | S7212.A | | OS-R1-S3 | SHUNT;MFR:EATON,PN:SNT3P04K,TYP TRIP,VOLT 120 V,APPLI FDR | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 200 | 200 | | |
| Deepwater Warehouse | Fieldwood | S7214.A | | OS-R1-S3 | BLOCK, TERMINAL;MFR:EATON,PN:34-4038-1,TYP LATCHING PULL-APART, STD | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 480 | 960 | | |
| Deepwater Warehouse | Fieldwood | S7215.A | | OS-R1-S3 | HEATER, SPACE;MFR:EATON,PN:4709A92GS2,WATT 150 W | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 469 | 469 | | |
| Deepwater Warehouse | Fieldwood | S7216.A | | MR-GENERAL | KIT;MFR:EATON,PN:4719A91G10,TYP TOUCH UP PAINT,COMPRISING AEROSOL CANS,QTY 3,SPEC ANSI-61 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 150 | 150 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 57217.A | | MR-GENERAL | KIT,MFR:EATON,PN:15SW174SPAYCAN,TYP TOUCH UP PAINT,COMPRISING AEROSOL CANS GLOSS WHITE,QTY 3 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 150 | 150 | |
| Deepwater Warehouse | Fieldwood | 57218.A | | OS-R1-S3 | RELAY, CONTROL;MFR:EATON,PN:D7PR2A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 20 | 40 | |
| Deepwater Warehouse | Fieldwood | 57219.A | | OS-R1-S3 | RELAY, CONTROL;MFR:EATON,PN:D7PA4A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 20 | 40 | |
| Deepwater Warehouse | Fieldwood | 57220.A | | OS-R1-S3 | FUSE;MFR:EATON,PN:FNQR-1,SPEC BOX OF 10 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 50 | 150 | |
| Deepwater Warehouse | Fieldwood | 57222.A | | OS-R1-S3 | LENS, INDICATING LIGHT;MFR:EATON,PN:10250TC1N,CLR RED | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 9 | 27 | |
| Deepwater Warehouse | Fieldwood | 57223.A | | OS-R1-S3 | LENS, INDICATING LIGHT;MFR:EATON,PN:10250TC2N,CLR GREEN | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 9 | 27 | |
| Deepwater Warehouse | Fieldwood | 57224.A | | OS-R1-S3 | TRANSFORMER, POWER;MFR:EATON,PN:C0150E4GFB,VOLT 1500 VA | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 339 | 678 | |
| Deepwater Warehouse | Fieldwood | 57225.A | | OS-R1-S3 | PROTECTOR, OVERLOAD;MFR:EATON,PN:HMCPE-MOD-G54,TYP HMCPE MOTOR CIRCUIT,AMP 7 A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1990 | 1990 | |
| Deepwater Warehouse | Fieldwood | 57226.A | | OS-R1-S3 | PROTECTOR, OVERLOAD;MFR:EATON,PN:HMCPE-MOD-G61,TYP HMCPE MOTOR CIRCUIT,AMP 15 A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1990 | 1990 | |
| Deepwater Warehouse | Fieldwood | 57227.A | | OS-R1-S3 | PROTECTOR, OVERLOAD;MFR:EATON,PN:HMCPE-MOD-G56,TYP HMCPE MOTOR CIRCUIT,AMP 30 A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1990 | 1990 | |
| Deepwater Warehouse | Fieldwood | 57228.A | | OS-R1-S3 | ALARM;MFR:EATON,PN:AUXLARM;UM,PE,TYP BELL 5W,APPLI FDR BKR | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 180 | 180 | |
| Deepwater Warehouse | Fieldwood | 57229.A | | OS-R1-S3 | STARTER, ELECTRIC MOTOR;MFR:EATON,PN:N101DS2K3A,TYP SIZE 2 ITEM SERIES,COIL VOLT 120 VAC | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 1152 | 1152 | |
| Deepwater Warehouse | Fieldwood | 57229.A | | OS-R1-S3 | STARTER, ELECTRIC MOTOR;MFR:EATON,PN:N101DS2K3A,TYP SIZE 2 ITEM SERIES,COIL VOLT 120 VAC | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1152 | 1152 | |
| Deepwater Warehouse | Fieldwood | 57230.A | | OS-R1-S3 | STARTER, ELECTRIC MOTOR;MFR:EATON,PN:N101CS1A3A,TYP SIZE 1 ITEM SERIES,COIL VOLT 120 VAC | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 621 | 1242 | |
| Deepwater Warehouse | Fieldwood | 57231.A | | OS-R1-S3 | LIGHT, INDICATING;MFR:EATON,PN:10250T181N,TYP XFMR,VOLT 6-120 VAC | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 3 | | 9 | 27 | |
| Deepwater Warehouse | Fieldwood | 57231.A | | OS-R1-S3 | LIGHT, INDICATING;MFR:EATON,PN:10250T181N,TYP XFMR,VOLT 6-120 VAC | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 9 | 27 | |
| Deepwater Warehouse | Fieldwood | 57232.A | | OS-GENERAL | DRIVE;MFR:EATON,PN:SVX040A1-4A1N1,TYP VFD SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 9141 | 9141 | |
| Deepwater Warehouse | Fieldwood | 57307.A | | DWW-YARD-C-VAN 402189 0 | INSERT;MFR:FMC TECHNOLOGIES,PN:P1000136103,TYP TEST STUMP ADAPTER | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 45376 | 45376 | |
| Deepwater Warehouse | Fieldwood | 57309.A | | DWW-YARD | SKID;MFR:FMC TECHNOLOGIES,PN:42104-035,TYP CHOKE INSERT SHIPPING,APPLI GUNFLINT CITB-13B, CIXB-292, CIXB-300,SPEC W/HRV-1131 CHOKE, ROT-5167 ACTUATOR | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 0 | | 228290 | 0 | |
| Deepwater Warehouse | Fieldwood | 57684.A | | DWW-YARD | PUP JOINT, TUBING;TYP NA,NOM SZ 5-1/2 IN,WT 23 lb,MATL GR 13CR115Y,PROCESS FABRICATION,CONN TYP VAM TOP,TOP CONN TYP PIN,BOT CONN TYP PIN,LG 8 ft | 143752 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4841.2 | 4841.2 | |
| Deepwater Warehouse | Fieldwood | 57730.A | | DWW-YARD-C-VAN 433422 0 | TOOL, DOWN HOLE;MFR:OCEANEERING,PN:BMC000471 - 01,TYP MANUAL WELLHEAD CLEANING,MFR:OCEANEERING,QUOTE:BMC000471 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 0 | | 7950 | 0 | |
| Deepwater Warehouse | Fieldwood | 57924.A | | OS-R1-S3 | POWER SUPPLY;MFR:PHOENIX CONTACT,PN:2866776,MFR:PHOENIX CONTACT,PN:QUINT-PS/1AC/24DC/20,TYP BULK,O/P VOLT 24 VDC,O/P CURRENT 20 A | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 505 | 505 | |
| Deepwater Warehouse | Fieldwood | 57969.A | | MR-1-D | DISC, RUPTURE;TYP SPARE EXTERNAL,DIA 16 IN,OPRTG PRESS 1800 PSIG AT 150 DEG C,MATL EPRD,BST PRESS 7000 PSI,SEAT ANGL 90 DEG | | | EA | | | 4 | | 1193.115 | 4772.46 | |
| Deepwater Warehouse | Fieldwood | 57970.A | | MR-1-D | DISC, RUPTURE;TYP SPARE,DIA 16 IN,OPRTG PRESS 7500 PSIG,MATL IPRD,BST PRESS 5250 OSIG AT 200 DEG F,SEAT ANGL 90 DEG | | | EA | | | 2 | | 2094.13 | 4188.26 | |
| Deepwater Warehouse | Fieldwood | 58181.A | | MW R10-1 | SUB;MFR:NOV,PN:504082/005,TYP TOP SUB CASING PATCH,CASNG SZ 13 IN,OD 16-3/4 IN,CASNG WT 88.2,PRESS RTNG 15000 PSI,MATL GR 4340,CONN SZ HYD 523,CONN TYP BOX | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 1 | | 21838.95 | 21838.95 | |
| Deepwater Warehouse | Fieldwood | 58182.A | | MW R11-FL | SUB;MFR:LOGAN,PN:AT1009-15-000,TYP TOP SUB FOR CASING PATCH,CASNG SZ 14 IN,OD 17-3/8 IN,CASNG WT 113,MATL GR 4140,CONN SZ HYD 523,CONN TYP BOX | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 2 | | 28727 | 57454 | |
| Deepwater Warehouse | Fieldwood | 58185.A | | MW R8-3 | GASKET;MFR:B.O.P. PRODUCTS,PN:SUBX18A3,TYP A - RING,NOM SZ 18-3/4 IN,PRESS RTNG 10K-15K PSI,MATL SS,STYL WP | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 3995 | 7990 | |
| Deepwater Warehouse | Fieldwood | 58419.A | | BW-AREA 3 | SLEEVE;MFR:TRENDSETTER ENG.,PN:A1004424,TYP BRIDGING,DIM ID 9-1/2 X LG 18-3/4 IN,MATL F22 80 KSI,PRESS RTNG 15000 PSI | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 372600 | 372600 | |
| Deepwater Warehouse | Fieldwood | 58423.A | | MW-R11-FL | PROTECTOR;MFR:TRENDSETTER ENG.,PN:A1004325,TYP H4 DEBRIS CAB,DIM 27 IN,MATL N/A | | | EA | | | 1 | | 8800 | 8800 | |
| Deepwater Warehouse | Fieldwood | 58424.A | | MW R7-3 | SLEEVE;MFR:TRENDSETTER ENG.,PN:A1004541,TYP BRIDGING,DIM N/A,MATL N/A,SPCL FEATNS SURFACE INSTALL TOOL,APPLI SLEEVE HANDLING MANDREL, ASSEMBLY;MFR:FETRD TECHNOLOGIES,PN:160M221,TYP WYE | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 12700 | 12700 | |
| Deepwater Warehouse | Fieldwood | 58621.A | | MR-1-D | BLOCK,DIM SQ 1/2 X THK 3/8 IN,STD REV A | | | EA | | | 0 | | 3995.13 | 0 | |
| Deepwater Warehouse | Fieldwood | 59023.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;NOM SZ 3-1/2 IN,WT 9.2 lb,MATL 13CR110,MATL GR N/A,PROCESS N/A,TOP CONN TYP VAM FJL,BOT CONN TYP VAM FJL,LG 2 ft | | | EA | | | 1 | | 917.5 | 917.5 | |
| Deepwater Warehouse | Fieldwood | 59027.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;NOM SZ 3-1/2 IN,WT 9.2 lb,MATL 13CR110,MATL GR N/A,PROCESS N/A,TOP CONN TYP VAM FJL,BOT CONN TYP VAM FJL,LG 10 ft | | | EA | | | 1 | | 2469.73 | 2469.73 | |
| Deepwater Warehouse | Fieldwood | 59028.A | | PUP JOINT RACK-TIER 2 | PUP JOINT, CASING;NOM SZ 3.5 IN,WT 9.3 lb/ft,MATL N/A,MATL GR 13CR110,PROCESS N/A,TOP CONN TYP BTS-8 S/C,BOT CONN TYP BTS-8 S/C,LG 6 ft | | | EA | | | 2 | | 1662.95 | 3325.9 | |
| Deepwater Warehouse | Fieldwood | 59033.A | | PUP JOINT RACK-TIER 2 | COUPLING, FLOW;NOM SZ 3.5 IN,WT 9.3 lb/ft,MATL GR 13CR110,CONN TYP BTS-8 S/C,CONN SZ 3.5 IN,LG 6 ft,MATL N/A,MATL SPEC HYPER 13CR110 | | | EA | | | 1 | | 1848.94 | 1848.94 | |
| Deepwater Warehouse | Fieldwood | 59035.A | | PUP JOINT RACK-TIER 1 | COUPLING, FLOW;NOM SZ 3.5 IN,WT 9.3 lb/ft,MATL GR 13CR95,CONN TYP BTS-8 S/C,CONN SZ 3.5 IN,LG 6 ft,MATL N/A,MATL SPEC 13CR95 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 2571 | 5142 | |
| Deepwater Warehouse | Fieldwood | 59036.A | | DWW-YARD | TUBING;ID 2 IN,OD 3.5 IN,MATL 13CR95,LG 94 ft,TYP PRODUCTION | 142981 | MC 782 2 DANTZLER COMPLETION | FT | | | 94 | | 36.5 | 3431 | |
| Deepwater Warehouse | Fieldwood | 59113.A | | DWW-YARD-C-VAN 429796 | FLANGE;MFR:OIL STATES,PN:PD17360,DIM 7-1/16 IN,CONN STYL RTJ SWIVEL,OPRTG PRESS 10000 PSI,MFR DWG:WELDMENT DRAWING OIL STATES, MFR:OIL STATES,QUOTE:BBD-SS-SSF-EGT-DWG-0015 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 19460 | 38920 | |
| Deepwater Warehouse | Fieldwood | 59115.A | | DWW-YARD | COLLAR;MFR:OIL STATES,PN:PD17190,TYP ANTI-ROTATION | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 68411 | 136822 | |

12

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 59341.A | | BW-RS-1 | SOCKET, SOCKET WRENCH SET,MFR:OIL STATES,PN:IW12340C,TYP T-HANDLE W/ SOCKET,MATL STEEL,SPCL FEATRS FABRICATED - SOCKET W/ 1.625 IN SLOT,MFR DWG:HANDLE SOCKET OIL STATES, MFR:OIL STATES,QUOTE:SP1K-23-279 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 4500.98 | 4500.98 | |
| Deepwater Warehouse | Fieldwood | 59467.A | | MR-3-E | GASKET, RING JOINT;MFR:CAMERON,PN:2274164-01,CROSS SEC SHAPE SPHERICAL,MATL 316 SS,MATL GR STAINLESS STEEL,NOM SZ 6 IN,SURF FNSH SILVER PLATED | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 6 | | 2710.75 | 16264.5 | |
| Deepwater Warehouse | Fieldwood | 59467.B | | N/A | GASKET, RING JOINT;MFR:CAMERON,PN:2274164-01,CROSS SEC SHAPE SPHERICAL,MATL 316 SS,MATL GR STAINLESS STEEL,NOM SZ 6 IN,SURF FNSH SILVER PLATED | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | EA | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 59545.A | | BW-AREA 3 | ASSEMBLY;TYP RUPTURE DISC,SZ 22 IN IN,MATL WELDED STEEL,MATL GR X-80,COMPRISING RUPTURE DISC SUB 22 X 1.250 IN 277#, H900M/MT PIN X H90M/MT W/2 PORTS 180 DEG APART, RATED 5500 PSIG AT 150 DEG F W/2000 PSIG MIN BACK PRESSURE(8 FT) | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 1 | | 87750.24 | 87750.24 | |
| Deepwater Warehouse | Fieldwood | 59576.A | | DWW YARD C-VAN HLXU 616220-6 | CAP;MFR:CAMERON,PN:2181509-06,TYP FLOWLINE HUB,SZ 8 IN,CONN TYP AUTOCLAVE PORT 9/16 IN,COMPRISING PLUG; SEAL ID 6.392 IN; (2) O RINGS,SPCL FEATRS PRESSURE 15000 PSI | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 1 | | 88354.9 | 88354.9 | |
| Deepwater Warehouse | Fieldwood | 59578.A | | MR-4-E | PLUG;MFR:CAMERON,PN:0303-43 REV A,TYP LOOPED | 127682 | VK 917 1 ST2 DRILL | EA | | | 1 | | 1500 | 1500 | |
| Deepwater Warehouse | Fieldwood | 59637.A | | MW-RB-2 | SUB;MFR:WORKSTRING,PN:CTM57 PIN | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 7200 | 14400 | |
| Deepwater Warehouse | Fieldwood | 59637.A | | DWW-YARD-C-VAN 402189 0 | SUB;MFR:WORKSTRING,PN:CTM57 PIN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 7833 | 7833 | |
| Deepwater Warehouse | Fieldwood | 59656.A | | OS-GENERAL | SENSOR,MFR:RSI-GLOBAL,PN:RSI / TREE SENSOR TEST SET,DIM SQ.21 X HT 22 IN,CABL LG 20 ft,SPCL FEATRS ELECTRICAL INCLUDED; 334A LOOP CALIBRATOR W/CIRCULAR CONNECTOR INSTALLED,MFR:RSI GLOBAL,QUOTE:NP0615770 | 203563 | Rio Grande Spares | EA | | | 1 | | 5953 | 5953 | |
| Deepwater Warehouse | Fieldwood | 59726.A | | MW-AREA 4 | FRAME;MFR:CAMERON,PN:222652-26 REV 02,TYP SCM SHIPPING | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 0 | | 5595 | 0 | |
| Deepwater Warehouse | Fieldwood | 59727.A | | DWW-YARD | STAND;MFR:CAMERON,PN:223997-30,TYP SCM TEST | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 0 | | 1500 | 0 | |
| Deepwater Warehouse | Fieldwood | 59733.A | | MW-R11-1 | VALVE, FLUSH;MFR:SKOFLO,PN:55VGEZF51S000A | AFE FW193006 | GENOVESA | EA | | | 1 | | 31980 | 31980 | |
| Deepwater Warehouse | Fieldwood | 59737.A | | MR-1-E | HOT STAB, ROV;MFR:OCEANEERING,PN:A05320-M,TYP DUAL PORT,PRESS RTNG 10000 PSI | | | EA | | | 1 | | 1218.27 | 1218.27 | |
| Deepwater Warehouse | Fieldwood | 59738.B | | MW-AREA 2 | LONG TERM COVER ASSEMBLY, J-PLATE, 8 LINES. MFR: AKER SOLUTIONS, PN: 10057795 | | | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 59741.A | | BW-AREA 3 | MODULE, COMMUNICATION;MFR:CAMERON,PN:223262-46,TYP SCM DUMMY TEST POD | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 0 | | 75000 | 0 | |
| Deepwater Warehouse | Fieldwood | 59859.A | | MW-RB-3 | PACKER;MFR:HALLIBURTON,PN:212009599-2HAA | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 111545.6 | 111545.6 | |
| Deepwater Warehouse | Fieldwood | 60575.A | | DWW-YARD | SCREEN;MFR:SUPERIOR ENERGY SERVICES,PN:DF-450-250H-151FE-R2,TYP DYNAFLO DB,WT 15.1,LG 30 FT,MATL 13CR-110,SPCL FEATRS 200M,SPEC 316L | 127684 | VK 917 1 ST2 COMPLETE | EA | | | 3 | | 22790 | 68370 | |
| Deepwater Warehouse | Fieldwood | 60576.A | | DWW-YARD | SCREEN;MFR:SUPERIOR ENERGY SERVICES,PN:DF-450-250H-151FE-R3,TYP DYNAFLO DB,WT 15.1,LG 40 FT,CL SLHT,MATL 13CR-110,SPCL FEATRS 200M,SPEC 316L | 127684 | VK 917 1 ST2 COMPLETE | EA | | | 1 | | 22720 | 22720 | |
| Deepwater Warehouse | Fieldwood | 61117.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000726-60,TYP DUAL BRIDGE,O/P SM,APPLI COMPUTER,BRAND:CONTROLNET,BRAND UNKNOWN | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 6532.65 | 0 | |
| Deepwater Warehouse | Fieldwood | 61118.A | | MR-GENERAL | POWER SUPPLY;MFR:AKER,PN:8815-000782-48,PN:1756-PA72,I/P VOLT 85-265 VAC,POWER RTG 25 W,DIM 140 X 112 X 145 mm,APPLI COMPUTER,STD CSA, UL,BRAND:CONTROLLOGIX,BRAND UNKNOWN | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 3110.78 | 0 | |
| Deepwater Warehouse | Fieldwood | 61120.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000782-50,PN:1756-IB32,32 POINT INPUT/OUTPUT,VOLT 10-31 V,COMPUTER,STD CSA, UL | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 1399.85 | 0 | |
| Deepwater Warehouse | Fieldwood | 61121.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000782-51,PN:1756-OB32,TYP 32 POINT INPUT/OUTPUT,VOLT 10-31 V,APPLI COMPUTER,STD CSA, UL | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 2022.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 61122.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000782-52,PN:1756-IF8,TYP 8-CHANNEL ANALOG INPUT,VOLT 0-10 V,APPLI COMPUTER | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 3421.86 | 0 | |
| Deepwater Warehouse | Fieldwood | 61123.A | | MR-GENERAL | PANEL, CONTROL;MFR:AKER,PN:10190723,TYP ONLINE CONTROL AND CONNECTION, MCS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 20220.1 | 0 | |
| Deepwater Warehouse | Fieldwood | 61124.A | | MR-GENERAL | SWITCH, NETWORK;MFR:AKER,PN:10160966,MFR:CISCO,PN:IE 3010,TYP ETHERNET,DIM WD 17.5 X HT 1.8 X DP 14 IN,LAYER 3, 1XAC PSU | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 12443.14 | 0 | |
| Deepwater Warehouse | Fieldwood | 61125.A | | MR-GENERAL | SERVER, AUTOMATIC DATA PROCESSING;MFR:AKER,PN:10074121,TYP PORT,DIM WD 6.60 X LG 16.80 X DP 1.60 IN,PWR SUPPLY 100-250 VAC, 50/60 HZ,STD CSA, UL,MN:DIGI TS16 MEI | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 6221.57 | 0 | |
| Deepwater Warehouse | Fieldwood | 61137.A | | MR-S-C | MODULE;MFR:AKER,PN:8814-060480-12,TYP ICON TOPSIDE EXTENDED MODEM,MN:1200 SERIES | 203563 | Rio Grande Spares | EA | | | 0 | | 3910 | 0 | |
| Deepwater Warehouse | Fieldwood | 61143.A | | MR-GENERAL | RACK, ELECTRONIC;MFR:AKER,PN:10187605,VOLT 120/208/240 V,WATT 600-1200 VA / 2.5 KVA | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 55510.21 | 0 | |
| Deepwater Warehouse | Fieldwood | 61144.A | | MR-GENERAL | RACK, ELECTRONIC;MFR:AKER,PN:10236194,VOLT 120/208/240 V,WATT 300-600 VA / 2.5 KVA | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 52671.54 | 0 | |
| Deepwater Warehouse | Fieldwood | 61145.A | | MR-S-B | UNIT;MFR:AKER,PN:10246629,TYP AUXILIARY CONNECTION | 203563 | Rio Grande Spares | EA | | | 0 | | 20527.53 | 0 | |
| Deepwater Warehouse | Fieldwood | 61148.A | | MR-S-C | FILTER;MFR:AKER,PN:10254893MFR: RITTAL,TYP OUTLET,WD 323 mm,LG 323 mm,SPCL FEATRS COLOR: RAL 7035 | 203563 | Rio Grande Spares | EA | | | 0 | | 1955 | 0 | |
| Deepwater Warehouse | Fieldwood | 61149.A | | MR-GENERAL | KEYBOARD;MFR:AKER,PN:10186368,APPLI MONITOR | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 4666.17 | 0 | |
| Deepwater Warehouse | Fieldwood | 61209.A | | OS-R1-S3 | KIT, VALVE REPAIR;MFR:CAMERON,PN:413-430544RCC,COMPRISING 17-4PH SS BALL AND SEAT CARRIERS, RTFE/ELGILOY STEM SEAL, LT JW VITON LP SEALS AND O-RINGS,APPLI 430 SERIES BALL VALVE PEEK SEAT | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 3710 | 7420 | |
| Deepwater Warehouse | Fieldwood | 61210.A | | OS-R1-S2 | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-230KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 2 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 2785.71 | 2785.71 | |
| Deepwater Warehouse | Fieldwood | 61211.A | | OS-R1-S2/1 OF 2 OS-R1-FL/ 2 OF 2 | VALVE, CHECK;MFR:PRECISION TECH,PN:CV-662KCA12MFR: ACECO,TYP COMPACT SWING,VLV SZ 10 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 9642.85 | 9642.85 | |
| Deepwater Warehouse | Fieldwood | 61212.A | | OS-R1-S2 | VALVE, CHECK;MFR:PRECISION TECH,PN:CV-635KCA12MFR: ACECO,TYP COMPACT SWING,VLV SZ 6 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2142.86 | 2142.86 | |
| Deepwater Warehouse | Fieldwood | 61213.A | | OS-R1-S2 | VALVE, CHECK;MFR:PRECISION TECH,PN:CV-630KCA12MFR: ACECO,TYP COMPACT SWING,VLV SZ 2 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 876.92 | 876.92 | |
| Deepwater Warehouse | Fieldwood | 61214.A | | OS-R1-S2 | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-431KHA12MFR: ACECO,TYP COMPACT DOUBLE,CONN 1 SZ 2 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 5571.43 | 5571.43 | |
| Deepwater Warehouse | Fieldwood | 61215.A | | OS-R1-S2 | VALVE;MFR:PRECISION TECH,PN:BV7-830KTA12MFR: ACECO,TYP COMPACT THROTTLE,CONN 1 SZ 2 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 2442.86 | 2442.86 | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 61216.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:413-AA8814,COMPRISING PEEK SEAT, 17-4PH SS BALL AND SEAT CARRIERS, RTFE/ELGILOY STEM SEAL, TFE SEALS AND FACE SEALS, FLUOROSILICONE O-RINGS,APPLI 430 SERIES BALL VALVE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4249.9 | 4249.9 | | |
| Deepwater Warehouse | Fieldwood | 61217.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:413-AA8815,COMPRISING PEEK SEAT, 17-4PH SS THROTTLE BALL AND SEAT CARRIERS, RTFE/ELGILOY STEM SEAL, TFE LIP SEALS AND FACE SEALS, FLUOROSILICONE O-RINGS,APPLI 430 SERIES BALL VALVE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 6100 | 6100 | | |
| Deepwater Warehouse | Fieldwood | 61218.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:413-433544KCC,COMPRISING PEEK SEAT, 17-4PH SS BALL AND SEAT CARRIERS, RTFE/ELGILOY STEM SEAL, LT JW VITON LIP SEALS AND O-RINGS,APPLI 433 SERIES BALL VALVE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 8025 | 8025 | | |
| Deepwater Warehouse | Fieldwood | 61219.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:414-454424C,COMPRISING 17-4PH SS SEAT, NITRONIC 60 DISC, 17-4PH SS SHAFT,APPLI 454 SERIES CHECK VALVE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4700 | 4700 | | |
| Deepwater Warehouse | Fieldwood | 61220.A | | OS-R1-S2 | KIT;MFR:CORNERSTONE,PN:SO020703.004,TYP COMPACT SOFT GOODS REPAIR,SZ 10 IN,COMPRISING 17-4 H107S AND CF PEEK SEAT AND INSERTS, VITON/PTFE/GRAPHOIL SEALS | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 18531.96 | 18531.96 | | |
| Deepwater Warehouse | Fieldwood | 61221.A | | OS-GENERAL | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-262KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 10 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 15857.14 | 15857.14 | | |
| Deepwater Warehouse | Fieldwood | 61222.A | | OS-GENERAL | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-261KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 8 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 9857.14 | 9857.14 | | |
| Deepwater Warehouse | Fieldwood | 61223.A | | OS-R1-S2 | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-235KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 6 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 4585.71 | 4585.71 | | |
| Deepwater Warehouse | Fieldwood | 61241.A | | DWW-YARD | CASING, OCTG;NOM SZ 7 IN,WT 32.00 lb/ft,MATL GR 13CR110M,PROCESS NA,CONN TYP VAM TOP,LG R1,DRIFT DIA 6 IN | | | FT | | | 20 | | 43.135 | 862.7 | | |
| Deepwater Warehouse | Fieldwood | 61366.A | | DWW-YARD-C-VAN 021925 1 | VALVE, RELIEF;NOV,PN:PSV-1030,VLV SZ 4 X 6 IN,CONN TYP RTJ X RF,PRESS RANGE CL 900 X CL 300,OPRTD PILOT,ORFC SZ 2.853 IN,STD API | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 40301.25 | 40301.25 | | |
| Deepwater Warehouse | Fieldwood | 61981.A | | DWW-YARD | PIPE;TYP LINE,NOM SZ NA,SCH NA,WALL THK 1.150 IN,MATL NA,MATL GR X65,PROCESS SEAMLESS,END CONN NA,LG 40 ft,COATG EXT BARE,STD API SL,NOM PIPE SZ 8.625 IN | 141585 | MC 698 BIG BEND LONG LEADS | FT | | | 200 | | 116.48 | 23296 | | |
| Deepwater Warehouse | Fieldwood | 61988.A | | MR-2-A | DISC, RUPTURE;MFR:FIKE,PN:A9311-6,TYP SPARE INTERNAL RUPTURE DISC,OPRTG PRESS RATED 5000 PSI,BST PRESS MINIMUM 4570 PSI,OP TEMP 150 | | | EA | | | 4 | | 1565.455 | 6261.82 | | |
| Deepwater Warehouse | Fieldwood | 61989.A | | DWW-YARD | FRAME;MFR:AQUEOUS,PN:SCH-1100,DIM 6 X 1.5 X 2 ft,MATL CARBON STEEL,SPCL FEATRS DIVE STAGE GUIDE WEIGHT, 700-875 LBS | 141898 | VK 826 Neptune Extension | EA | | | 1 | | 3500 | 3500 | | |
| Deepwater Warehouse | Fieldwood | 61992.A | | DWW-YARD | FRAME;MFR:GLOBAL DIVERS&MARINE,PN:61136,DIM 20 X 8 X 4 ft,MATL CARBON STEEL,SPCL FEATRS DIVING LARS SKID, 6000 LB SWL | | | EA | | | 1 | | 5366.51 | 5366.51 | | |
| Deepwater Warehouse | Fieldwood | 61995.A | | DWW-YARD | FRAME;MFR:GLOBAL DIVERS&MARINE,PN:TGS-03,DIM 9 X 2.6 FT X 6 IN,MATL CARBON STEEL,SPCL FEATRS WET BELL TUGGER SKID, 5000 LB SWL | | | EA | | | 1 | | 1013.94 | 1013.94 | | |
| Deepwater Warehouse | Fieldwood | 62365.A | | MW-R10-FL | VALVE, BALL;MFR:CORTEC,PN:BN114-1742001-30KC-0000-31LUBB,TYP ASSEMBLY, COMPACT TRUNNION,CONN 1 SZ 7-1/16 IN,CONN 2 SZ 6-3/8 IN,CL 10000 PSI,TRIM SS 17-4PH-TC,SFTGDS VITON (EDR),SPCL FEATRS BONNET, RETAINER (XYLAN COATED),STD 8S,MN 6AV1 | 203563 | Rio Grande Spares | EA | | | 1 | | 55680 | 55680 | | |
| Deepwater Warehouse | Fieldwood | 62365.A | | MW-R10-FL | VALVE, BALL;MFR:CORTEC,PN:BN114-1742001-30KC-0000-31LUBB,TYP ASSEMBLY, COMPACT TRUNNION,CONN 1 SZ 7-1/16 IN,CONN 2 SZ 6-3/8 IN,CL 10000 PSI,TRIM SS 17-4PH-TC,SFTGDS VITON (EDR),SPCL FEATRS BONNET, RETAINER (XYLAN COATED),STD 8S,MN 6AV1 | 203563 | Rio Grande Spares | EA | | | 1 | | 55680 | 55680 | | |
| Deepwater Warehouse | Fieldwood | 62367.A | | MW-R10-FL | VALVE, BALL;MFR:CORTEC,PN:BN114-160-6802-76KC-0000-320CC,TYP ASSEMBLY,CONN 1 SZ 1-13/16 IN,CL 10000 PSI,BDY MATL DUPLEX SS,MATL GR F51,TRIM 17-4-TC /17-4 NIT,SFTGDS EOL 985,ACTTR STYL ION PLATED BONNET,STD 8S,MN 6AV1 | 203563 | Rio Grande Spares | EA | | | 1 | | 23425 | 23425 | | |
| Deepwater Warehouse | Fieldwood | 62368.A | | MW-R12-FL | VALVE, BALL;MFR:CORTEC,PN:BN182-1741901-30X-0000-31PUBB,TYP ASSEMBLY, COMPACT , TRUNNION,CONN 1 SZ 7-1/16 IN,CONN 2 SZ 6-3/8 IN,CL 10000 PSI,BDY MATL 4130AS,TRIM STEM: 17-4PH,BALL: 17-PH, PEEK,SFTGDS VITON EDR,STD 8S, API | 203563 | Rio Grande Spares | EA | | | 1 | | 58325 | 58325 | | |
| Deepwater Warehouse | Fieldwood | 62369.A | | MW-R10-FL | SCREW, CAP;MFR:CORTEC,PN:BN575-F225200-07TC-1,HEAD FLAT,DIA 1-3/8 IN,THD UNC 8 TPI,LG 6-1/2 IN,MATL GR 87,SURF TRTMNT PTFE COATED PER SM.07,SPCL FEATRS REV A,APPLI VALVES ON LINES 1 AND 3 | 203563 | Rio Grande Spares | EA | | | 12 | | 75 | 900 | | |
| Deepwater Warehouse | Fieldwood | 62370.A | | MW-R10-FL | SEAL;MFR:CORTEC,PN:BN580-1616700-6900-1,TYP CLOSED CELL FOAM EXTRA, WEATHER,STD VALVES ON LINES 1 AND 3,REF:EC SZ-16 | 203563 | Rio Grande Spares | EA | | | 6 | | 14 | 84 | | |
| Deepwater Warehouse | Fieldwood | 62371.A | | MW-R10-FL | SCREW, CAP;MFR:CORTEC,PN:BN575-F142400-27TC-1,HEAD FLAT,DIA 7/8 IN,THD UNC 9 TPI,LG 3 IN,MATL GR 87,SURF TRTMNT PTFE COATED PER SM.27,SPCL FEATRS REV A,APPLI VALVE ON LINE 2 | 203563 | Rio Grande Spares | EA | | | 6 | | 18 | 108 | | |
| Deepwater Warehouse | Fieldwood | 62372.A | | MW-R10-FL | SEAL;MFR:CORTEC,PN:BN580-601073-6900-1,TYP CLOSED CELL FOAM EXTRA, WEATHER,APPLI VALVE ON LINE 2,REF:EC SZ-73 | 203563 | Rio Grande Spares | EA | | | 3 | | 4 | 12 | | |
| Deepwater Warehouse | Fieldwood | 62453.A | | DWW-YARD-C-VAN 402189 0 | BLADDER, ACCUMULATOR;MFR:PROSERV,PN:070716,VOL CPCTY 5 gal,OPRTG PRESS 5000 PSI,SPEC 1-7/BUNF, BVI GAS | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 3570 | 0 | | |
| Deepwater Warehouse | Fieldwood | 62453.A | | DWW-YARD-C-VAN 402189 0 | BLADDER, ACCUMULATOR;MFR:PROSERV,PN:070716,VOL CPCTY 5 gal,OPRTG PRESS 5000 PSI,SPEC 1-7/BUNF, BVI GAS | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 3570 | 0 | | |
| Deepwater Warehouse | Fieldwood | 62535.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INFBAD2MFR: MOMA,SZ 2 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1895.19 | 1895.19 | | |
| Deepwater Warehouse | Fieldwood | 62536.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:4INEHA32-KMFR: MOMA,SZ 4 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 2513.08 | 2513.08 | | |
| Deepwater Warehouse | Fieldwood | 62537.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INABF01MFR: MOMA,SZ 6 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 5303.95 | 5303.95 | | |
| Deepwater Warehouse | Fieldwood | 62538.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INEHA32-KMFR: MOMA,SZ 6 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 4641.93 | 4641.93 | | |
| Deepwater Warehouse | Fieldwood | 62539.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:8INBBA31MFR: MOMA,SZ 8 IN,CL 300,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 5303.95 | 10607.9 | | |
| Deepwater Warehouse | Fieldwood | 62540.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:8INEHA32-KMFR: MOMA,SZ 8 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 4974.23 | 4974.23 | | |
| Deepwater Warehouse | Fieldwood | 62541.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INABF71MFR: MOMA,SZ 2 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1233.18 | 1233.18 | | |
| Deepwater Warehouse | Fieldwood | 62542.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INABA71MFR: MOMA,SZ 6 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 5303.94 | 5303.94 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 62543.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:2INABFO1MFR: MOMA,S2 2 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATING BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 737.32 | 737.32 | | |
| Deepwater Warehouse | Fieldwood | 62544.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:6INABAO1MFR: MOMA,S2 6 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 3647.6 | 3647.6 | | |
| Deepwater Warehouse | Fieldwood | 62545.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:2INFBF12-LTMFR: MOMA,S2 2 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 996.93 | 996.93 | | |
| Deepwater Warehouse | Fieldwood | 62546.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INFHF02MFR: MOMA,S2 3 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 1043.66 | 2087.32 | | |
| Deepwater Warehouse | Fieldwood | 62547.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:2INFHA00DMFR: MOMA,S2 2 X 1/2 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI MONO-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 3 | | 2390.19 | 7170.57 | | |
| Deepwater Warehouse | Fieldwood | 62548.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:2INKMA16MFR: MOMA,S2 2 X 1/2 IN,CL 10000 PSI,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI MONO-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 3063.465 | 6126.93 | | |
| Deepwater Warehouse | Fieldwood | 62549.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INABF71-LTMFR: MOMA,S2 3 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATING BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1090.4 | 1090.4 | | |
| Deepwater Warehouse | Fieldwood | 62550.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INFBA02MFR: MOMA,S2 3 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1233.18 | 1233.18 | | |
| Deepwater Warehouse | Fieldwood | 62551.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INFHA02MFR: MOMA,S2 3 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1043.66 | 1043.66 | | |
| Deepwater Warehouse | Fieldwood | 62552.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:6INFHA02MFR: MOMA,S2 6 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 5919.23 | 5919.23 | | |
| Deepwater Warehouse | Fieldwood | 62553.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:8INABAO1MFR: MOMA,S2 8 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 4640.725 | 9281.45 | | |
| Deepwater Warehouse | Fieldwood | 62554.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INFCW02MFR: IFC,S2 3 IN,CL 150,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 202.7 | 202.7 | | |
| Deepwater Warehouse | Fieldwood | 62555.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:6INACW01MFR: IFC,S2 6 IN,CL 150,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 507.44 | 507.44 | | |
| Deepwater Warehouse | Fieldwood | 62556.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:6INBCW31MFR: IFC,S2 6 IN,CL 300,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 676.26 | 676.26 | | |
| Deepwater Warehouse | Fieldwood | 62557.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:4INECW32MFR: IFC,S2 4 IN,CL 900,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 313.38 | 313.38 | | |
| Deepwater Warehouse | Fieldwood | 62558.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:6INECW32MFR: IFC,S2 6 IN,CL 900,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 676.26 | 676.26 | | |
| Deepwater Warehouse | Fieldwood | 62559.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:6INACW71MFR: IFC,S2 6 IN,CL 150,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1312.44 | 1312.44 | | |
| Deepwater Warehouse | Fieldwood | 62560.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:4INAFY83MFR: IFC,S2 4 IN,CL 150,COMPRISING SEAT, PACKING, O-RING,APPLI CONCENTRIC BUTTERFLY VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 676.26 | 676.26 | | |
| Deepwater Warehouse | Fieldwood | 62561.A | | DWW-YARD-C-VAN 4015921 | KIT, VALVE REPAIR;MFR:ACADIAN,PN:2INABA83MFR: SHIPHAM,VLV S2 2 IN,OPRTG PRESS CL 150,COMPRISING SLEEVE SEAL, SEATS, THRUST WASHER, GLAND PACKING,APPLI BALL VALVE | 203563 | Rio Grande Spares | EA | | | 1 | | 93.44 | 93.44 | | |
| Deepwater Warehouse | Fieldwood | 62562.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:10INEBF02MFR: MOMA,S2 10 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 744.63 | 744.63 | | |
| Deepwater Warehouse | Fieldwood | 62563.A | | DWW-YARD-C-VAN 4015921 | KIT, VALVE REPAIR;MFR:ACADIAN,PN:6INAGAO1MFR: WEIR,VLV S2 6 IN,OPRTG PRESS CL 150,COMPRISING BODY SPIRAL WOUND GASKET (SS316+GRAPHITE), PACKING IN GRAFOIL,APPLI GATE VALVE | 203563 | Rio Grande Spares | EA | | | 2 | | 7338.39 | 14676.78 | | |
| Deepwater Warehouse | Fieldwood | 62564.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:6INBBA31MFR: MOMA,S2 6 IN,CL 300,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 213.38 | 213.38 | | |
| Deepwater Warehouse | Fieldwood | 62565.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:2INBBAO1MFR: MOMA,S2 2 IN,CL 300,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 3127.13 | 6254.26 | | |
| Deepwater Warehouse | Fieldwood | 62566.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INABF71MFR: MOMA,S2 3 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1233.18 | 1233.18 | | |
| Deepwater Warehouse | Fieldwood | 62567.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INDHF10MFR: MOMA,S2 3 IN,CL 600,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 1328.42 | 2656.84 | | |
| Deepwater Warehouse | Fieldwood | 62568.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:3INABF01MFR: MOMA,S2 3 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1090.4 | 1090.4 | | |
| Deepwater Warehouse | Fieldwood | 62569.A | | DWW-YARD-C-VAN 4015921 | KIT;MFR:ACADIAN,PN:4INABF01MFR: MOMA,S2 4 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 2915.48 | 2915.48 | | |
| Deepwater Warehouse | Fieldwood | 62585.A | | DWW-YARD C-VAN 429796-0 | CENTRALIZER, SUB;MFR:WEATHERFORD,PN:54100SQHS21PG0A003,CASNG S2 17-7/8 IN,WT 93.50 lb/ft,MATL GR P110,CONN TYP TENARISHYDRIL WEDGE 521,SPCL FEATRS (12) 465 BOWS 23.750 OD, EXTRA LENGTH DN PIN | 203389 | MC 339 SILVERGATE DRL | EA | | | 2 | | 19076 | 38152 | | |
| Deepwater Warehouse | Fieldwood | 62613.A | | PUP JOINT RACK-TIER 1 | CROSSOVER, CASING;MFR:BENOIT,PN:17026,TOP CONN SZ 4-1/2 IN,TOP CONN WT 12.60 lb/ft,TOP CONN TYP VAM TOP BOX,BOT CONN SZ 5-1/2 IN,BOT CONN WT 17 lb/ft,BOT CONN TYP VAM TOP PIN,MATL GR 13CR80,LG 3 ft | | | EA | | | 1 | | 2551.3 | 2551.3 | | |
| Deepwater Warehouse | Fieldwood | 62614.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:16135,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BT5-6 PIN,BOT CONN SZ 6 IN,BOT CONN WT 30.90 lb/ft,BOT CONN TYP VAM TOP XP BOX,MATL GR HYPER 13CR110,PROCESS N/A,LG 2 ft | | | EA | | | 1 | | 2350.2 | 2350.2 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 62615.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:17664,TOP CONN SZ 5-1/2 IN,TOP CONN WT 23 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 12.60 lb/ft,BOT CONN TYP VAM TOP BOX,MATL GR 13CR95,PROCESS N/A,LG 14 IN | | | EA | | | 1 | | 2063.19 | 2063.19 | | |
| Deepwater Warehouse | Fieldwood | 62650.B | | DWW-YARD | CAP;MFR:VECTOR,PN:PCA0B066-1,TYP TEMPORARY PRESSURE | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 102509.25 | 102509.25 | | |
| Deepwater Warehouse | Fieldwood | 62650.B | | DWW-YARD C-VAN TRDU 7275771 | CAP;MFR:VECTOR,PN:PCA0B066-1,TYP TEMPORARY PRESSURE | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 5 | | 102509.25 | 512546.25 | | |
| Deepwater Warehouse | Fieldwood | 62650.B | | DWW-YARD C-VAN TRDU 7275771 | CAP;MFR:VECTOR,PN:PCA0B066-1,TYP TEMPORARY PRESSURE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 102509.25 | 102509.25 | | |
| Deepwater Warehouse | Fieldwood | 62652.A | | PUP JOINT RACK-FLOOR | CROSSOVER, TUBING;MFR:BENOIT,PN:15939,TOP CONN SZ 3-1/2 IN,WT 9.30 lb/ft,TOP CONN TYP BTS-8 BOX,BOT CONN SZ 3-1/2 IN,BOT CONN WT 9.20 lb/ft,BOT CONN TYP VAM F/L PIN,MATL GR HYPER 13CR110,LG 14 IN | | | EA | | | 4 | | 620.2875 | 2481.15 | | |
| Deepwater Warehouse | Fieldwood | 62653.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:16301,TOP CONN SZ 5-1/2 IN,TOP CONN WT 23 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 15.50 lb/ft,BOT CONN TYP BTS-6 PIN,MATL GR 13CR95,LG 2 ft | | | EA | | | 1 | | 1276.7 | 1276.7 | | |
| Deepwater Warehouse | Fieldwood | 62757.A | | PUP JOINT RACK-TIER 2 | CROSSOVER, CASING;MFR:BENOIT,PN:17374,TOP CONN SZ 5-1/2 IN,TOP CONN WT 23 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 6 IN,BOT CONN WT 30.90 lb/ft,BOT CONN TYP VAM TOP KP PIN,MATL GR 13CR95,LG 4 ft | | | EA | | | 1 | | 3709.37 | 3709.37 | | |
| Deepwater Warehouse | Fieldwood | 62758.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:7441,TOP CONN SZ 5-1/2 IN,TOP CONN WT 29.70 lb/ft,TOP CONN TYP VAM ACE PIN,BOT CONN SZ 4-1/2 IN,BOT CONN WT 12.75 lb/ft,BOT CONN TYP BTS-6 PIN,MATL GR 13CR85,LG 2 ft | | | EA | | | 1 | | 1494.07 | 1494.07 | | |
| Deepwater Warehouse | Fieldwood | 62834.A | | PUP JOINT RACK-TIER 5 | CASING, OCTG;MFR:BENOIT,PN:16551,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,CONN TYP BTS-6 LOWER BCSD FLO-TOOL,LG 14 ft | | | FT | | | 14 | | 404.3557142 | 5660.979999 | | |
| Deepwater Warehouse | Fieldwood | 62835.A | | PUP JOINT RACK-TIER 4 | CASING, OCTG;MFR:BENOIT,PN:17250,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,CONN TYP BTS-6 PIN / (BLANK) BCSD FLO-TOOL,LG 12 FT 4-1/2 IN,SPCL FEATRS PUP JOINT (LENGTH: 12 FT) | | | FT | | | 12 | | 525.1099999 | 6301.319999 | | |
| Deepwater Warehouse | Fieldwood | 62836.A | | PUP JOINT RACK-TIER 2 | CASING, OCTG;MFR:BENOIT,PN:17251,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,CONN TYP BTS-6 PIN / (BLANK) BCSD UPPER FLO-TOOL,LG 6 FT 4-1/2 IN,SPCL FEATRS PUP JOINT (LENGTH: 6 FT) | | | FT | | | 6 | | 398.5583333 | 2391.35 | | |
| Deepwater Warehouse | Fieldwood | 62900.A | | PUP JOINT RACK-TIER 1 | PUP JOINT, CASING;MFR:BENOIT,PN:18079,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,TOP CONN TYP BTS-6,LG 6 ft,SPCL FEATRS WITH SQUARE SHOULDER | | | EA | | | 1 | | 2548.51 | 2548.51 | | |
| Deepwater Warehouse | Fieldwood | 62902.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;MFR:BENOIT,PN:17539,NOM SZ 5-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,TOP CONN TYP VAM F/L,BOT CONN TYP VAM F/L,LG 8 ft | | | EA | | | 2 | | 1758.08 | 3516.16 | | |
| Deepwater Warehouse | Fieldwood | 62922.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;MFR:BENOIT,PN:17024,NOM SZ 5-1/2 IN,WT 20 lb/ft,MATL GR 13CR80,TOP CONN TYP VAM TOP T & C,BOT CONN TYP VAM TOP T & C,LG 8 ft | | | EA | | | 1 | | 1400.08 | 1400.08 | | |
| Deepwater Warehouse | Fieldwood | 62923.A | | PUP JOINT RACK-TIER 2 | PUP JOINT, CASING;MFR:BENOIT,PN:17023,NOM SZ 5-1/2 IN,WT 20 lb/ft,MATL GR 13CR80,TOP CONN TYP VAM TOP T & C,BOT CONN TYP VAM TOP T & C,LG 4 ft | | | EA | | | 2 | | 1109.975 | 2219.95 | | |
| Deepwater Warehouse | Fieldwood | 62924.A | | PUP JOINT RACK-TIER 2 | PUP JOINT, CASING;MFR:BENOIT,PN:17376,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP PIN,BOT CONN TYP VAM TOP KP PIN,LG 6 ft | | | EA | | | 1 | | 3446.315 | 3446.315 | | |
| Deepwater Warehouse | Fieldwood | 62924.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;MFR:BENOIT,PN:17376,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP PIN,BOT CONN TYP VAM TOP KP PIN,LG 6 ft | | | EA | | | 1 | | 3446.315 | 3446.315 | | |
| Deepwater Warehouse | Fieldwood | 62925.A | | CR TIER 2 | MANDREL, ASSEMBLY;MFR:BENOIT,PN:15524,TYP GAUGE,DIM LG 20 ft,SPCL FEATRS SIZE: 3-1/2 IN, WEIGHT: 9.30 LB/FT, MATERIAL GRADE: 13CR85, (8 FT PUP JOINT ON TOP AND 6 FT PUP JOINT ON BOTTOM) | | | EA | | | 1 | | 2693 | 2693 | | |
| Deepwater Warehouse | Fieldwood | 62954.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;MFR:BENOIT,PN:16302,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP T & C,BOT CONN TYP VAM TOP KP T & C,LG 10 ft | | | EA | | | 1 | | 4546.85 | 4546.85 | | |
| Deepwater Warehouse | Fieldwood | 62967.A | | PUP JOINT RACK-TIER 5 | CASING, OCTG;MFR:BENOIT,PN:16550,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,CONN TYP BTS-6 S/C UPPER BCSD FLO-TOOL,LG 14 ft | | | FT | | | 14 | | 263.7721428 | 3692.81 | | |
| Deepwater Warehouse | Fieldwood | 62968.A | | PUP JOINT RACK-TIER 5 | CASING, OCTG;MFR:BENOIT,PN:14884,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR HYPER 13CR110,CONN TYP BTS-6 S/C UPPER BCSD FLO-TOOL,LG 14 ft | | | FT | | | 14 | | 407.8099999 | 5709.339999 | | |
| Deepwater Warehouse | Fieldwood | 62976.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, TUBING;MFR:BENOIT,PN:13912,NOM SZ 3-1/2 IN,WT 9.30 lb/ft,MATL GR 13CR95,TOP CONN TYP BTS-8,BOT CONN TYP BTS-8,LG 8 ft | | | EA | | | 1 | | 945.66 | 945.66 | | |
| Deepwater Warehouse | Fieldwood | 62992.A | | PUP JOINT RACK-TIER 5 | PUP JOINT, CASING;MFR:BENOIT,PN:15051,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,CONN TYP BTS-6 S/C SQUARE SHOULDER,BOT CONN TYP BTS-6 S/C SQUARE SHOULDER,LG 10 ft | | | EA | | | 1 | | 2692.19 | 2692.19 | | |
| Deepwater Warehouse | Fieldwood | 63035.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;MFR:BENOIT,PN:16136,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP BOX,BOT CONN TYP VAM TOP KP BOX,LG 14 IN | | | EA | | | 2 | | 2032.995 | 4065.99 | | |
| Deepwater Warehouse | Fieldwood | 63047.A | | PUP JOINT RACK-TIER 1 | CROSSOVER, CASING;MFR:BENOIT,PN:16299,TYP FLOW COUPLING,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 15.10 lb/ft,BOT CONN TYP VAM TOP BOX,MATL GR 13CR95,LG 4 ft | | | EA | | | 1 | | 610.93 | 610.93 | | |
| Deepwater Warehouse | Fieldwood | 63049.A | | PUP JOINT RACK-TIER 3 | CROSSOVER, CASING;MFR:BENOIT,PN:18084,TYP FLOW COUPLING,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 13.50 lb/ft,BOT CONN TYP BTS-8 PIN,MATL GR HYPER 13CR110,LG 8 ft | | | EA | | | 2 | | 4413.74 | 8827.48 | | |
| Deepwater Warehouse | Fieldwood | 63050.A | | PUP JOINT RACK-TIER 3 | CROSSOVER, CASING;MFR:BENOIT,PN:18086,TYP FLOW COUPLING,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 13.50 lb/ft,BOT CONN TYP BTS-8 PIN,MATL GR HYPER 13CR110,LG 8 ft | | | EA | | | 1 | | 4281.65 | 4281.65 | | |
| Deepwater Warehouse | Fieldwood | 63277.A | | PUP JOINT RACK-FLOOR | CASING, OCTG;MFR:BENOIT,PN:18578,TYP LIFT NUBBIN,NOM SZ 5-1/2 IN,WT 23.0 lb/ft,MATL GR P-110,CONN TYP BTS-6 BOX,LG 12 IN | | | FT | | | 1 | | 523.38 | 523.38 | | |
| Deepwater Warehouse | Fieldwood | 63281.A | | PR-R1-1 | CABLE ASSEMBLY;MFR:AKER,PN:10255944,TYP M/LL-MODEM,LG 25 ft,SPEC CONNECTOR TYPE: FEMALE D89 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 54.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63282.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:10241290,SPEC 4W ROV RCPT - 12W CANNON PLUG | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 6894.72 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63283.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:10241291,SPEC 4W ROV PLUG - BW CANNON RCPT | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 6809.04 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63284.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:10222348,LG 10 ft,SPEC CONNECTOR TYPE: D89 M-M | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 70.83 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63285.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:B815-000710-43,TYP EXTENSION,SPEC CONNECTOR TYPE: MALE D89 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 97.5 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 63285.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY,MFR:AKER,PN:BB15-000710-43,TYP EXTENSION,SPEC CONNECTOR TYPE: MALE DB9 | 203563 | Rio Grande Spares | EA | | | 0 | | 48.75 | 0 | |
| Deepwater Warehouse | Fieldwood | 63286.A | | PR-R1-3 | CONVERTER,MFR:AKER,PN:BB15-000465-02,TYP INTERFACE,WATT 600,SPEC CONNECTOR TYPE: DB9 FEMALE,K/N:RS232/RS485 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 428.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 63287.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10222024,SPEC BWAY CANNON PLUG-CANNON RCPT | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 4260 | 0 | |
| Deepwater Warehouse | Fieldwood | 63288.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10240031,LG 25 ft,SPEC 12W CANNON PLUG-12W CANNON RCPT | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 4292.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 63289.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10241279,SPEC BW ROV RCPT - 12W CANNON PLUG | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 7956.48 | 0 | |
| Deepwater Warehouse | Fieldwood | 63290.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10222161,SPEC 4 WAY ROV PLUG-CANNON RCPT | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 8165.08 | 0 | |
| Deepwater Warehouse | Fieldwood | 63291.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10241616,LG 6 ft,SPEC BW CANNON 5 TO 12W CANNON PLUG | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 2547.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 63349.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING,MFR:BENOIT,PN:15053,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,TOP CONN TYP BT5-6 S/C LOWER COMBO,BOT CONN TYP BT5-6 S/C LOWER COMBO,LG 12 ft,SPCL FEATRS W/SQUARE SHOULDER | | | EA | | | 1 | | 3754.88 | 3754.88 | |
| Deepwater Warehouse | Fieldwood | 63373.A | | PUP JOINT RACK-FLOOR | NIPPLE, LANDING,MFR:BENOIT,PN:13914,TUBE OD 3-1/2 IN,CONN SZ 2-3/4 IN,CONN TYP BT5-8,MATL GR 13CR110,WT 9.30 lb/ft,BRAND:,BRAND:BCS | | | EA | | | 1 | | 3480.12 | 3480.12 | |
| Deepwater Warehouse | Fieldwood | 63374.A | | PUP JOINT RACK-FLOOR | NIPPLE, LANDING,MFR:BENOIT,PN:13913,TUBE OD 3-1/2 IN,CONN SZ 2-3/4 IN,CONN TYP BT5-8,MATL GR 13CR85,WT 9.30 lb/ft,BRAND:,BRAND:BCS | | | EA | | | 1 | | 3012.9 | 3012.9 | |
| Deepwater Warehouse | Fieldwood | 63552.A | | MW-R17-3 | VALVE, CONTROL,MFR:FISHER,PN:LV-1160B,TYP GLOBE,VLV SZ 1 IN,CONN TYP FLANGED RF,CL 150,BDY MATL CS ASME SA352 GR LCC,SPCL FEATRS BOLTED BONNET, MATERIAL: FMS208101 (NACE MR0103-MR0175/ISO 15156), LCC PER FMS2087S GROUP 1M (NACE MR0175-2002) | 203563 | Rio Grande Spares | EA | | | 0 | | 5760 | 0 | |
| Deepwater Warehouse | Fieldwood | 63553.A | | MW-R17-3 | VALVE, CONTROL,MFR:FISHER,PN:LV-1170B,TYP GLOBE,VLV SZ 1 IN,CONN TYP FLANGED RF,CL 150,BDY MATL CS ASME SA352 GR LCC,SPCL FEATRS BOLTED BONNET, MATERIAL: FMS208101 (NACE MR0103-MR0175/ISO 15156), PATTERN KHA-LCC FMS208101,MN:04 DVC6200 | 203563 | Rio Grande Spares | EA | | | 0 | | 6250 | 0 | |
| Deepwater Warehouse | Fieldwood | 63554.A | | MW-R17-3 | VALVE, CONTROL,MFR:FISHER,PN:LV-1210D,TYP GLOBE,VLV SZ 1 IN,CONN TYP FLANGED RF,CL 1500,BDY MATL STEEL GR LCC,TRIM S17400 SS H1150, STEM: S20910 SS W S17400 SS DBL H1150 PLUG,SPCL FEATRS STANDARD BONNET, MATERIAL: FMS208101,MN:04 DVC6200 | 203563 | Rio Grande Spares | EA | | | 0 | | 6537 | 0 | |
| Deepwater Warehouse | Fieldwood | 65073.A | | DWW-YARD C-VAN 609785 | CENTRALIZER, SUB,MFR:BLACKHAWK,PN:0101457-QP0003A,CASING SZ 7.750 IN,WT 46.10 lb/ft,MATL GR API Q125,CONN TYP TSH S23,SPCL FEATRS W/ (8) BOW SPRING, 12.875 IN OVER BOW, MINIMUM YIELD STRENGTH: 135000 PSI,MN:R3600, BST-25 | 203389 | MC 339 SILVERGATE DRL | EA | | | 0 | | 6727 | 0 | |
| Deepwater Warehouse | Fieldwood | 65073.A | | DWW-YARD C-VAN MOTU 045 9057 45G1 | CENTRALIZER, SUB,MFR:BLACKHAWK,PN:0101457-QP0003A,CASING SZ 7.750 IN,WT 46.10 lb/ft,MATL GR API Q125,CONN TYP TSH S23,SPCL FEATRS W/ (8) BOW SPRING, 12.875 IN OVER BOW, MINIMUM YIELD STRENGTH: 135000 PSI,MN:R3600, BST-25 | 201560 | GC 40 O2 Katmai 2 | EA | | | 11 | | 6263.33 | 68896.63 | |
| Deepwater Warehouse | Fieldwood | 65110.A | | DWW-YARD C-VAN HJCU 133919 9 | VALVE, BALL,MFR:GALPERTI,PN:6'EHA32-4,TYP DOUBLE BLOCK AND BLEED,OPRTD GEAR WITH LOCKING DEVICE,CONN 1 SZ 6 IN,CONN 1 TYP FNPT,CONN 2 TYP FLANGED RTJ,CL 900,BDY MATL SS,MATL GR F51,FACE TO FACE LG 36 IN,TEMP RNGE -50 TO 300 DEG F,BRAND:, | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 17501 | 17501 | |
| Deepwater Warehouse | Fieldwood | 65111.A | | DWW-YARD C-VAN HJCU 133919 9 | VALVE, BALL,MFR:GALPERTI,PN:EHA32-4,TYP DOUBLE BLOCK AND BLEED,OPRTD GEAR WITH LOCKING DEVICE,CONN 1 SZ 8 IN,CONN 1 TYP FNPT,CONN 2 TYP FLANGED RTJ,CL 900,BDY MATL SS,MATL GR F51,FACE TO FACE LG 45.3 IN,TEMP RNGE -50 TO 300 DEG F,BRAND:, | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 29829 | 29829 | |
| Deepwater Warehouse | Fieldwood | 65122.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER, SUB,MFR:WEATHERFORD,PN:549WMLQH523012A002 2497737,CASING SZ 11-7/8 IN,WT 71.8 lb/ft,OD 15.62 IN,MATL GR G-125,CONN TYP TENARISHYDRIL S23,SPCL FEATRS WITH GUIDE SHOE | 201560 | GC 40 O2 Katmai 2 | EA | | | 2 | | 10695 | 21390 | |
| Deepwater Warehouse | Fieldwood | 65125.A | | DWW-YARD C-VAN 402189-0 | CENTRALIZER, SUB,MFR:WEATHERFORD,PN:549WMWMJQH523012A002 2497730,CASING SZ 9-7/8 IN,WT 62.8 lb/ft,OD 13-1/2 IN,MATL GR G-125,CONN TYP TENARISHYDRIL S23,SPCL FEATRS WITH GUIDE SHOE | 203389 | MC 339 SILVERGATE DRL | EA | | | 1 | | 8527 | 8527 | |
| Deepwater Warehouse | Fieldwood | 65126.A | | DWW-YARD C-VAN 402189-0 | COLLAR, FLOAT,MFR:WEATHERFORD,PN:L4SANLQH523012A001 2497480,CASING OD 9-7/8 IN,CASNG WT 62.8 lb/ft,MATL GR Q125,CONN TYP TENARISHYDRIL S23 | 203389 | MC 339 SILVERGATE DRL | EA | | | 1 | | 16343 | 16343 | |
| Deepwater Warehouse | Fieldwood | 65127.A | | DWW-YARD C-VAN 402189-0 | COLLAR, FLOAT,MFR:WEATHERFORD,PN:L4SANLQH523012A002 2497478,CASING OD 9-7/8 IN,CASNG WT 62.8 lb/ft,MATL GR Q125,CONN TYP TENARISHYDRIL S23 | 203389 | MC 339 SILVERGATE DRL | EA | | | 1 | | 16952 | 16952 | |
| Deepwater Warehouse | Fieldwood | 65129.A | | CR TIER 1 | PUP JOINT, CASING,MFR:BENOIT,PN:15048,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,TOP CONN TYP BT5-6,BOT CONN TYP BT5-6,LG 12 ft,SPCL FEATRS WITH SQUARE SHOULDER | | | EA | | | 4 | | 3175.7425 | 12702.97 | |
| Deepwater Warehouse | Fieldwood | 65140.A | | DWW-YARD C-VAN HJCU 133919 9 | VALVE, BALL,MFR:GALPERTI,PN:4"EHA32-6,TYP 4 INCH,OPRTD GEAR WITH LOCKING DEVICE,CONN 1 TYP RTJ FLANGE WITH A193-B8M BOLTS,CONN 2 TYP RTJ FLANGE WITH A194-B8M BOLTS,PORT TYP FNPT,BDY MATL A182-F51,TRIM A182-F51,STYL DOUBLE BLOCK AND BLEED | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 11185 | 11185 | |
| Deepwater Warehouse | Fieldwood | 65651.A | | BW-AREA 3 | SUB,MFR:WORKSTRING,PN:SXO-534,TYP WEEP HOLE,ID 4-1/4 IN,OD 7 IN,LG 48 SH/SH IN,CONN TYP CTM57 BOX X CTM57 PIN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 5200 | 5200 | |
| Deepwater Warehouse | Fieldwood | 65823.A | | MW-R10-1 | ASSEMBLY,MFR:SKOFLO,PN:21188-3,TYP FLUSHER,COMPRISING DUAL PATH, LF/LF CONFIGURATION, ROV RETRIEVABLE DOCKING CANISTER, WORKING PRESSURE: 15000 PSI | 126099 | MC 519 2 LONG LEAD CONST | EA | | | 0 | | 32619 | 0 | |
| Deepwater Warehouse | Fieldwood | 65863.A | | OS-R1-S2 | SEAL, RING,MFR:GRAYLOC,PN:H90174-29-1 | 203563 | Rio Grande Spares | EA | | | 2 | | 645 | 1290 | |
| Deepwater Warehouse | Fieldwood | 65865.A | | OS-R1-S2 | SEAL,MFR:GRAYLOC,PN:H90075-172,TYP PLATE | 203563 | Rio Grande Spares | EA | | | 2 | | 651 | 1302 | |
| Deepwater Warehouse | Fieldwood | 65916.A | | BW-AREA 3 | SUB,MFR:HUNTING ENERGY SERVICES,PN:NA,TYP BURST DISK,CASNG SZ 22 IN,CASNG WT 224 lb/ft,PRESS RTNG 7500 PSI AT 200 DEG F W/5250 PSI MIN BACK PRESS,SPCL FEATRS 1 IN W X80 590M/MT P X 8 APRS SUB, 8 FT OAL, 2 PORTS 180 DEG APART | 201560 | GC 40 O2 Katmai 2 | EA | | | 1 | | 32273.02 | 32273.02 | |
| Deepwater Warehouse | Fieldwood | 65924.A | | MR-2-A | DISC, RUPTURE,MFR:FIKE,PN:NA,TYP INTERNAL,SPCL FEATRS 7500 PSI AT 200 DEG F W/5250 PSI MIN BACK PRESSURE | 201560 | GC 40 O2 Katmai 2 | EA | | | 2 | | 3334.23 | 6668.46 | |
| Deepwater Warehouse | Fieldwood | 65925.A | | MR-2-A | DISC, RUPTURE,MFR:FIKE,PN:NA,TYP EXTERNAL,SPCL FEATRS 2000 PSI AT 260 DEG F W/6920 PSI MIN BACK PRESSURE | 201560 | GC 40 O2 Katmai 2 | EA | | | 2 | | 3334.23 | 6668.46 | |
| Deepwater Warehouse | Fieldwood | 65953.A | | DWW YARD C-VAN 433422-0 | CENTRALIZER, SUB,MFR:BLACKHAWK,PN:0104927-QP0003 A,CASNG SZ 17.875 IN,WT 93.50 lb/ft,MATL GR API P110,CONN TYP TENARISHYDRIL WEDGE 521,SPCL FEATRS W/ (18) BOW SPRING, 25 IN OVER BOW,MN:R3600, BST-36T | 201560 | GC 40 O2 Katmai 2 | EA | | | 2 | | 17425.71 | 34851.42 | |
| Deepwater Warehouse | Fieldwood | 65953.A | | DWW-YARD C-VAN 045905 | CENTRALIZER, SUB,MFR:BLACKHAWK,PN:0104927-QP0003 A,CASNG SZ 17.875 IN,WT 93.50 lb/ft,MATL GR API P110,CONN TYP TENARISHYDRIL WEDGE 521,SPCL FEATRS W/ (18) BOW SPRING, 25 IN OVER BOW,MN:R3600, BST-36T | 201560 | GC 40 O2 Katmai 2 | EA | | | 3 | | 17425.71 | 52277.13 | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 65955.A | | BW-AREA 3 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0101433-QP0003 A,CASNG SZ 11.875 IN,WT 71.80 lb/ft,MATL GR API Q125,CONN TYP TENARISHYDRIL WEDGE 523,SPCL FEATRS W/ (12) BOW SPRING, 16.750 IN OVER BOW,MN:R3600, BST-2SB | 201560 | GC 40 02 Katmai 2 | EA | | | 6 | | 8540 | 51240 | | |
| Deepwater Warehouse | Fieldwood | 65955.A | | DWW-YARD C-VAN 968233-Scrapped and sold to Louisiana Scrap-03/19/19 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0101433-QP0003 A,CASNG SZ 11.875 IN,WT 71.80 lb/ft,MATL GR API Q125,CONN TYP TENARISHYDRIL WEDGE 523,SPCL FEATRS W/ (12) BOW SPRING, 16.750 IN OVER BOW,MN:R3600, BST-2SB | 201560 | GC 40 02 Katmai 2 | EA | | | 0 | | 8540 | 0 | | |
| Deepwater Warehouse | Fieldwood | 65956.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0108364,TYP R3600,CASNG SZ 10.125 IN,WT 79.22 LB/FT,MATL GR API Q125,CONN TYP YAM SLU-II,SPCL FEATRS W/ MINIMUM YIELD STRENGTH: 135000, 16.625 IN OVER BOW,MN:R3600, BST-33B | 201560 | GC 40 02 Katmai 2 | EA | | | 6 | | 7282.86 | 43697.16 | | |
| Deepwater Warehouse | Fieldwood | 66085.A | | BW-R6-2 | METER, FLOW;MFR:SMITH METER,PN:FE-8016,TYP POSITIVE DISPLACEMENT,DSGN RTNG CL 150,SZ 4 IN,CONN TYP FLANGED RF,MN:F4-53 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 28703.26 | 28703.26 | | |
| Deepwater Warehouse | Fieldwood | 66204.A | | BW-AREA 3 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49ANLQHS230212A001,CASNG OD 11-7/8 IN,CASNG WT 71.8#,MATL GR Q125,CONN TYP HYD-523,MFR:WEATHERFORD,MN:L49AN | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 14817 | 29634 | | |
| Deepwater Warehouse | Fieldwood | 66206.A | | BW-AREA 3 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49AXLQ125J28J001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 10-1/8 IN,CASNG WT 79.22 lb/ft,MATL GR Q125,CONN TYP SLU-II | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 15072 | 30144 | | |
| Deepwater Warehouse | Fieldwood | 66211.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49AXXCSU12B13A001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 10-1/8 IN,CASNG WT 79.22 lb/ft,MATL GR Q125,CONN TYP SLU-II | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 10476 | 20952 | | |
| Deepwater Warehouse | Fieldwood | 66212.A | | BW-AREA 3 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49AXXCSU12B13A001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 10-1/8 IN,CASNG WT 79.22 lb/ft,MATL GR Q125,CONN TYP SLU-II | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 10730 | 10730 | | |
| Deepwater Warehouse | Fieldwood | 66212.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49AXXCSU12B13A001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 10-1/8 IN,CASNG WT 79.22 lb/ft,MATL GR Q125,CONN TYP SLU-II | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 10730 | 10730 | | |
| Deepwater Warehouse | Fieldwood | 66227.A | | PR-R2-1 | KIT;MFR:FMC TECHNOLOGIES,PN:P2000054824,TYP WIRELINE PLUG REDRESS,CL 15000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 28554.33 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66228.A | | PR-R1-1 | KIT;MFR:FMC TECHNOLOGIES,PN:P2000054317,TYP WIRELINE PLUG REDRESS,CL 15000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 34590.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66955.A | | DWW-YARD-C-VAN CCLU 667229-1/2 IN | CENTRALIZER,MFR:HALLIBURTON,PN:102528668,TYP UROS,ID 7-3/4 IN,HOLE SZ 9-1/2 IN | 203389 | MC 339 SILVERGATE DRL | EA | | | 48 | | 260.02 | 12480.96 | | |
| Deepwater Warehouse | Fieldwood | 66956.A | | DWW-YARD-C-VAN CCLU 667229 | COLLAR, STOP;MFR:HALLIBURTON,PN:102607903,TYP ARC SUM, SLIP ON, ACE RATCHET,DIM 7-3/4 IN | 203389 | MC 339 SILVERGATE DRL | EA | | | 96 | | 594.72 | 57093.12 | | |
| Deepwater Warehouse | Fieldwood | 66962.A | | MR-4-C | SCREW, SET;MFR:FMC TECHNOLOGIES,PN:DP-79-0532,HD STYL HEX SOCKET DRIVE,NOM THD DIA 0.375 IN,THD 16UNC-2A/3A,THD LG 0.75 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 99.03 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66963.A | | MR-4-C | SCREW, SET;MFR:FMC TECHNOLOGIES,PN:P143307,HD STYL HEX SOCKET DRIVE,NOM THD DIA 0.375 IN,THD 16UNC-2A/3A,THD LG 0.88 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 99.36 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66964.A | | MR-4-C | SCREW, SET;MFR:FMC TECHNOLOGIES,PN:P143497,HD STYL HEX SOCKET DRIVE,NOM THD DIA 0.375 IN,THD 16UNC-2A/3A,THD LG 0.5 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 66.26 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67273.A | | DWW-YARD-C-VAN HJCU 133919 | POSITIONER, VALVE;MFR:CORTEC,PN:946BNBY28212000MFR: WESTLOCK,TYP NON INDUCTIVE ROTARY,CONN SZ 3/4 IN,CONN TYP FNPT,SPCL FEATRS SWITCHBOX,STD BM2-Y | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 3 | | 865 | 2595 | | |
| Deepwater Warehouse | Fieldwood | 67274.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, SEAL;MFR:CORTEC,PN:SDV-0130B,PN:SDV-0140B,TYP SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2235 | 2235 | | |
| Deepwater Warehouse | Fieldwood | 67275.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, SEAL;MFR:CORTEC,PN:SDV-9060A,PN:SDV-9060B,TYP SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2235 | 2235 | | |
| Deepwater Warehouse | Fieldwood | 67279.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR;MFR:CORTEC,PN:BN114-1708700-3000-0000-31PUBB,TYP MAJOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 5895 | 5895 | | |
| Deepwater Warehouse | Fieldwood | 67280.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR;MFR:CORTEC,PN:BN182-1645703-3000-0000-31PUBB,TYP MAJOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2897 | 2897 | | |
| Deepwater Warehouse | Fieldwood | 67281.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR;MFR:CORTEC,PN:BN182-1702200-3000-0000-31PUBB,TYP MAJOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 5794 | 5794 | | |
| Deepwater Warehouse | Fieldwood | 67282.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, SEAL;MFR:CORTEC,PN:SDV-0130,PN:SDV-0140,PN:SDV-0140A,PN:SDV-01300,PN:SDV-0130A,TYP SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 870 | 1740 | | |
| Deepwater Warehouse | Fieldwood | 67440.A | | DWW-YARD-C-VAN 401592 1 | MOTOR;MFR:SUNSOURCE,PN:ADPM5.4X25K5.5K,TYP MOTOR,SPEC 5,500 PSI, 5.40 GPM, 25 HP460V/60HZ/3PH, 1800 RPM, 120V/60HZ/1PH HEATERS, CSA & UL CERT | 203563 | Rio Grande Spares | EA | | | 1 | | 22390 | 22390 | | |
| Deepwater Warehouse | Fieldwood | 67443.A | | BW-AREA 2 | SEPARATOR;MFR:SULZER,PN:9012171,TYP GIRZ CYCLONE INLET DEVICE,MN:MBD-1010/1020,ALL BOLTING AND NITRILE GASKETS, NOZZLE (DIA 12 X LG 62 IN), DUPLEX 22015 INCLUDING MALLACHEVRON V30 MIST ELIMINATOR MOTION BAFFLE (OD: 84 IN, MATERIAL: SS 316L) | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 38900 | 38900 | | |
| Deepwater Warehouse | Fieldwood | 67444.A | | MR-5-D | SEAL, RING;MFR:GRAYLOC,PN:50533N,THK 14 mm,MATL AS AISI 4140,CLR GREEN,SPCL FEATRS MATERIAL: PTFE, CTD | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 63 | 63 | | |
| Deepwater Warehouse | Fieldwood | 67444.A | | MR-GENERAL | SEAL, RING;MFR:GRAYLOC,PN:50533N,THK 14 mm,MATL AS AISI 4140,CLR GREEN,SPCL FEATRS MATERIAL: PTFE, CTD | 203563 | Rio Grande Spares | EA | | | 2 | | 63 | 126 | | |
| Deepwater Warehouse | Fieldwood | 67445.A | | MR-GENERAL | SEAL, RING;MFR:GRAYLOC,PN:H91993-1 | 203563 | Rio Grande Spares | EA | | | 4 | | 1890 | 7560 | | |
| Deepwater Warehouse | Fieldwood | 67452.A | | DWW-YARD-C-VAN 968233-Scrapped and sold to Louisiana Scrap-03/19/19 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0108636-QP0003 A,CASNG SZ 7 IN,WT 35 PPF,MATL AS,MATL GR P-110,BOW SZ 13.625 IN,CONN TYP HYD 523,SPCL FEATRS TENARISHYDRIL WEDGE 523; OVER BOW; BTS-33B (6) FLANGE,MFR:CORTEC,PN:BN365-1625504-3000-1,TYP BUILD,CONN:18NG-9/16 IN,MATL AS 4130,ORPTG PRESS 10000 PSI,SPCL FEATRS HP AUTOCLAVE | 203389 | MC 339 SILVERGATE DRL | EA | | | 0 | | 6287.14 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67455.A | | BW-R3-3 | | 203563 | Rio Grande Spares | EA | | | 2 | | 3055 | 6110 | | |
| Deepwater Warehouse | Fieldwood | 67500.A | | MW-R3-1 | FLYING LEAD;MFR:AKER,PN:BB15-000778-25,ELECTRICAL,325 ft,8-WAY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 19983 | 19983 | | |
| Deepwater Warehouse | Fieldwood | 67501.A | | DWW-YARD-C-VAN 433422 0 | FLYING LEAD;MFR:AKER,PN:BB15-000776-25,ELECTRICAL,325 ft,4-WAY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 18593 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67502.A | | MW-RS-2 | FLYING LEAD;MFR:AKER,PN:BB15-000778-25,ELECTRICAL,30 ft,4-WAY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 9153 | 9153 | | |
| Deepwater Warehouse | Fieldwood | 67503.A | | DWW-YARD | FLYING LEAD;MFR:AKER,PN:10221577,LG 100 m,STEEL,B-LINE, OIE, M1 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 111939 | 111939 | | |
| Deepwater Warehouse | Fieldwood | 67504.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:10218351,100 m,STEEL,4-LINE, OIE M1 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 105739 | 105739 | | |
| Deepwater Warehouse | Fieldwood | 67505.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:10219046,2-LINE,STEEL,OIE M1 TO OIE M1 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 122159 | 122159 | | |
| Deepwater Warehouse | Fieldwood | 67505.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:10219046,2-LINE,STEEL,OIE M1 TO OIE M1 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 54953 | 54953 | | |
| Deepwater Warehouse | Fieldwood | 67509.B | | DWW-YARD-C-VAN DNVU-2051995 | CAP;MFR:ODI,PN:10205537,TYP ELECTRICAL CONNECTOR SHORTING,CONN TYP 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 15 | | 4830.75 | 72461.25 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 67512.B | | DWW-YARD | SPOOL,MFR:ACADIAN,PN:PC-853,OD 10 IN,SPEC THUNDER HAWK TOPSIDE,SIZE: 3 FT-1 IN X 1 FT-9.25 IN X 3 FT-10.5 IN, 3 FLANGE, WEIGHT: 1.372 LBS, WITH 90 DEG AND 45 DEG, WOL | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 7275 | 7275 | | |
| Deepwater Warehouse | Fieldwood | 67513.B | | MW-R15-3 | JUNCTION PLATE, SUBSEA;MFR:OCEANEERING,PN:428798,TYP M1 REMOVABLE J PLATE, HYDRAULIC,MN:IWOCS, 12-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 37500 | 37500 | | |
| Deepwater Warehouse | Fieldwood | 67513.B | | MW-R16-3 | JUNCTION PLATE, SUBSEA;MFR:OCEANEERING,PN:428798,TYP M1 REMOVABLE J PLATE, HYDRAULIC,MN:IWOCS, 12-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 37500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67513.B | | MW-R15-2 | JUNCTION PLATE, SUBSEA;MFR:OCEANEERING,PN:428798,TYP M1 REMOVABLE J PLATE, HYDRAULIC,MN:IWOCS, 12-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 37500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67514.B | | MW-R17-2 | PLATE;MFR:OCEANEERING,PN:0428795,TYP M1 REMOVABLE TEST AND FLUSHING | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 33620.25 | 33620.25 | | |
| Deepwater Warehouse | Fieldwood | 67515.B | | MR-GENERAL | JUMPER;MFR:OCEANEERING,PN:0428785,TYP TEST OPTICAL,WITH PIGTAIL | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 19062 | 38124 | | |
| Deepwater Warehouse | Fieldwood | 67517.A | | MR-GENERAL | JUMPER,MFR:OCEANEERING,PN:428786,TYP TEST OPTICAL RECEPTACLE,MFR_SERIES/VERSION 8FOSM,MN:HYDRALIGHT,TOP ASSEMBLY, WITH PIGTAIL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 24036 | 48072 | | |
| Deepwater Warehouse | Fieldwood | 67518.B | | MW-R16-FL | CAP;MFR:OCEANEERING,PN:423685,SPCL FEATRS WITH INTENSIFIERS ASSEMBLY, M1 LONG TERM PROTECTIVE COVER, INTENSIFERS AUX PLATE;MFR:OCEANEERING,PN:LOGIC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 155468.25 | 155468.25 | | |
| Deepwater Warehouse | Fieldwood | 67519.B | | MW-R15-FL | PLATE;MFR:OCEANEERING,PN:429318,TYP M2 FIXED T AND F,SPCL FEATRS 27-WAY, 27-LINE ASSEMBLY | 204563 | Dantzler Chemical Injection | EA | | | 1 | | 41788.5 | 41788.5 | | |
| Deepwater Warehouse | Fieldwood | 67520.B | | DWW-FRONT YARD | CONNECTOR;MFR:VECTOR,PN:10127B-00MFR: FREUDENBERG,DIM 8 IN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 177555 | 177555 | | |
| Deepwater Warehouse | Fieldwood | 67520.B | | DWW-FRONT YARD | CONNECTOR;MFR:VECTOR,PN:10127B-00MFR: FREUDENBERG,DIM 8 IN | 203563 | Rio Grande Spares | EA | | | 1 | | 171028.6 | 171028.6 | | |
| Deepwater Warehouse | Fieldwood | 67521.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-854,OD 8 IN,OD 10 IN,LG 7 FT-2 IN,SPEC THUNDER HAWK TOPSIDE,W/4-O-LET, TEE (SIZE: 8 X 4 X 10 IN), ECC RED 10X8 AND 8 FLANGE, WEIGHT: 2.112 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 8985 | 8985 | | |
| Deepwater Warehouse | Fieldwood | 67523.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-854,OD 10 IN,LG 12 FT-5-7/8 IN,SPEC THUNDER HAWK TOPSIDE,W/2 FLANGE, WEIGHT: 1.804 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 6315 | 6315 | | |
| Deepwater Warehouse | Fieldwood | 67528.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-856,OD 8 IN,SPEC THUNDER HAWK TOPSIDE,SIZE: 1 FT-6-11/16 IN X 2 FT-9-9/16 IN, W/2-90 DEG, 2 FLANGE, WEIGHT: 708 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 5925 | 5925 | | |
| Deepwater Warehouse | Fieldwood | 67530.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-857,ID 4 IN,OD 8 IN,SPEC THUNDER HAWK TOPSIDE,W/4-90 DEG, TEE AND 3-FLANGE, WEIGHT: 844 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4087.5 | 4087.5 | | |
| Deepwater Warehouse | Fieldwood | 67531.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-861,OD 8 IN,LG 6 FT-11-1/2 IN,SPEC THUNDER HAWK TOPSIDE,W/O-LET, 3 FLANGE, WEIGHT: 864 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 6082.5 | 6082.5 | | |
| Deepwater Warehouse | Fieldwood | 67532.B | | BW-R4-2 | SPOOL;MFR:ACADIAN,PN:PC-858,ID 4 IN,LG 2 FT-1-5/16 IN,SPEC THUNDER HAWK TOPSIDE,W/2 FLANGE, WEIGHT: 150 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2325 | 2325 | | |
| Deepwater Warehouse | Fieldwood | 67535.A | | MW-R15-2 | PLATE;MFR:OCEANEERING,PN:0429317,TYP M2 REMOVABLE TEST AND FLUSHING,SPCL FEATRS 27 WAY, 27 LINE ASSEMBLY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 59735 | 119470 | | |
| Deepwater Warehouse | Fieldwood | 67536.A | | DWW YARD C-VAN HLXU 616220 6 | VALVE, BALL;MFR:EDGEN MURRAY,PN:EBFD2,DPRTD 2 HANDLE,CONN 1 SZ 10 IN,CONN 1 TYP RTJ ENDS,CL 900 lb,PORT TYP FULL,BDY MATL CS,TRIM ENP,SPCL FEATRS TRUNNION MOUNTED,MATL SPEC ASTM A105N,MFR:KF VALVE,MN:XJ-700 | 203563 | Rio Grande Spares | EA | | | 1 | | 14488 | 14488 | | |
| Deepwater Warehouse | Fieldwood | 67537.A | | SMALL PARTS ROOM FLOOR | CONNECTOR, COMMUNICATION;MFR:AKER,PN:10180143,CNCTR TYP RJ45 TO DB-9 MODEM ADAPTER | 203563 | Rio Grande Spares | EA | | | 0 | | 7.81 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67538.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY;MFR:AKER,PN:10155419,TERM TYP DB37, MALE TO FEMALE,LG 5 ft | 203563 | Rio Grande Spares | EA | | | 0 | | 59.91 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67539.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY;MFR:AKER,PN:10155480,TERM TYP DB37, MALE TO FEMALE MAT,LG 10 ft | 203563 | Rio Grande Spares | EA | | | 0 | | 72.81 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67543.A | | MW-R16-1 | PLATE;MFR:OCEANEERING,PN:0428795,TYP M1 REMOVABLE TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14 LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 0 | | 44827 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67544.A | | MW-R16-1 | PLATE;MFR:OCEANEERING,PN:0440488,TYP M1 FIXED TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14-LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 3 | | 34780 | 104340 | | |
| Deepwater Warehouse | Fieldwood | 67544.A | | MW-16-2 | PLATE;MFR:OCEANEERING,PN:0440488,TYP M1 FIXED TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14-LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 34780 | 34780 | | |
| Deepwater Warehouse | Fieldwood | 67548.A | | MW-R16-1 | PLATE;MFR:OCEANEERING,PN:0428794,TYP M1 FIXED TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14-LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 26085 | 26085 | | |
| Deepwater Warehouse | Fieldwood | 67545.A | | MW-R17-3 | LOGIC CAP;MFR:OCEANEERING,PN:428777,TYP M1,SPCL FEATRS 14-WAY 14-LINE COVER;MFR:OCEANEERING,PN:0428790,TYP 4 WAY ELECTRICAL LTYC ODI/NAUTILUS ELECTRICAL LONG TERM PROTECTIVE,SPCL FEATRS RECEPTACLE COMPENSATED W/LOOPS 1-3 AND 2-4 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 45427 | 45427 | | |
| Deepwater Warehouse | Fieldwood | 67546.A | | MW-R16-1 | FLYING LEAD;MFR:OCEANEERING,PN:0434791,4 WAY ROV ELECTRICAL,WITH CIRCUIT LOOPS 1-3 AND 2-4 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 3 | | 4202 | 12606 | | |
| Deepwater Warehouse | Fieldwood | 67547.A | | MR-3-D | O RING;MFR:CORTEC,PN:BN485-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-1,PN:DASH 369,MATL PC BUNA,OD 8 3/8 IN,ID 8 IN,WO 3/16 IN,SHOR HRDNS DURO 90,CLR BLACK,TEMP RNGE -15 TO 400 DEG F,SPCL FEATRS PER SM 49 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 3 | | 3778 | 11334 | | |
| Deepwater Warehouse | Fieldwood | 67548.A | | MW-10-FL | SEAL, OIL;MFR:CORTEC,PN:BN580-1612700-9083-1,TYP LIP,ID 6-3/8 IN,OD 8 IN,SPCL FEATRS FACE; 10K,REF:LD063710 | 203563 | Rio Grande Spares | EA | | | 8.125 | | 24.375 | | | |
| Deepwater Warehouse | Fieldwood | 67549.A | | MW-10-FL | SEAL, OIL;MFR:CORTEC,PN:BN580-1612700-9083-1,TYP LIP,ID 6-3/8 IN,OD 8 IN,SPCL FEATRS FACE; 10K,REF:LD063710 | 203563 | Rio Grande Spares | EA | | | 2 | | 174 | 348 | | |
| Deepwater Warehouse | Fieldwood | 67550.A | | BW-R3-3 | SCREW, CAP;MFR:CORTEC,PN:BN575-F225200-27MX-1,HEAD FLAT,DIA 1-3/8 IN,THD UNC 8 TPI,LG 6-1/2 IN,SURF TRTMNT XYLAN COATED,SPCL FEATRS L87 CABLE;MFR:AKER,PN:10219329,TYP ENTHERNET PATCH,LG 10 | 203563 | Rio Grande Spares | EA | | | 32 | | 142 | 4544 | | |
| Deepwater Warehouse | Fieldwood | 67558.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,MN:CAT6/TIA568B FT,MFR:AKER,MN:CAT6/TIA568B | 203563 | Rio Grande Spares | EA | | | 0 | | 18.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67559.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10219510,TYP ENTHERNET PATCH,LG 15 FT,MFR:AKER,MN:CAT6/TIA568B | 203563 | Rio Grande Spares | EA | | | 0 | | 21.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67560.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10076045,TYP SERIAL PORTSERVER | 203563 | Rio Grande Spares | EA | | | 0 | | 48.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67561.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10177068,TYP USB,LG 6 ft,TERM TYP A MALE TO A MALE | 203563 | Rio Grande Spares | EA | | | 0 | | 7.81 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67563.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:B815-000782-54,MN:1492-AJ025 TO B CABLE ASS | 203563 | Rio Grande Spares | EA | | | 0 | | 386.7 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67564.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:B815-000782-55,SPEC 1492-CABLE02SZ,20SM CABLE,MN:1492-CABLE02SZ | 203563 | Rio Grande Spares | EA | | | 0 | | 369.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67565.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY;MFR:AKER,PN:B814-000634-41,TYP MODEM SIGNAL CABLE;MFR:AKER,PN:10164394,SPEC BNC M TO M, | 203563 | Rio Grande Spares | EA | | | 0 | | 507.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67567.A | | SMALL PARTS ROOM FLOOR | 750OHMS,MFR:AKER,MN:RG59B/U | 203563 | Rio Grande Spares | EA | | | 0 | | 25.19 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67568.A | | SMALL PARTS ROOM FLOOR | CONVERTER;MFR:AKER,PN:10144574,TYP ETHERNET AND OPTICAL,MN:RGD | 203563 | Rio Grande Spares | EA | | | 0 | | 243.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67569.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10077781,TYP SERVSWITCH,LG 10 FT | 203563 | Rio Grande Spares | EA | | | 0 | | 26.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67570.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10221929,TYP ENTHERNET PATCH,LG 10 FT,MFR:AKER,MN:CAT6/TIA568B | 203563 | Rio Grande Spares | EA | | | 0 | | 18.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67571.A | | MW-R16-2 | FLYING LEAD;MFR:OCEANEERING,PN:0436755,SUBSEA UMBILICAL TERMINATION ASSEMBLY,STEEL,REMOVABLE M1 SFL PARKING STAB | 143096 | MC 782 DANTZLER DEVELOPMENT L | EA | | | 1 | | 44141 | 44141 | | |
| Deepwater Warehouse | Fieldwood | 67591.A | | BW-AREA 1 | ASSEMBLY,TYP TREE FORGING BODY,MATL N/A,COMPRISING P1000109121, P1000109116, P1000130507, P1000109111 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 1200000 | 1200000 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 67599.A | | DWW-YARD-C-VAN CCLU 6672299 | RISER,MFR:OIL STATES,PN:PD16909,TYP STEEL CATENARY,SPCL FEATRS FLEXJOINT MOCK-UP,APPLI THUNDER HAWK SCR | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 99403 | 99403 | |
| Deepwater Warehouse | Fieldwood | 67662.A | | BW-R2-3 | KIT, REPAIR:MFR:CORTEC,PN:BN445-1805600-5390-17CA-17CA-3,TYP MAJOR,COMPRISING NA,SZ NA,APPLI NA | 203563 | Rio Grande Spares | EA | | | 2 | | 19822 | 39644 | |
| Deepwater Warehouse | Fieldwood | 67835.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:10192706,TYP EFL TEST,POLES 8-PIN,SPCL FEATRS CONNECTION: FEMALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 1661.25 | 3322.5 | |
| Deepwater Warehouse | Fieldwood | 67836.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:8815-000680-80,TYP EFL TEST,POLES 4-PIN,SPCL FEATRS CONNECTION: MALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 906.75 | 906.75 | |
| Deepwater Warehouse | Fieldwood | 67837.B | | MW-R15-2 | PLATE,MFR:AKER,PN:10219137,TYP 4-WAY FIXED FLUSHING BEARING,MFR:RTI ENERGY | | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 10818.75 | 10818.75 | |
| Deepwater Warehouse | Fieldwood | 67838.A | | DWW-YARD | SERVICES,PN:129310,BRAND:ORKOT,BRAND UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 4 | | 2196.45 | 8785.8 | |
| Deepwater Warehouse | Fieldwood | 67841.B | | DWW-YARD-C-VAN DNVU-2051995 | CONNECTOR, ELECTRICAL,MFR:ODI,PN:8815-000680-78,TYP TEST,CONN TYP MALE,SPCL FEATRS PIN CONFIGURATION: 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 8 | | 1467 | 11736 | |
| Deepwater Warehouse | Fieldwood | 67842.B | | DWW-YARD-C-VAN DNVU-2051995 | CONNECTOR, ELECTRICAL,MFR:ODI,PN:8815-000686-35,TYP TEST,CONN TYP MALE,SPCL FEATRS PIN CONFIGURATION: 8-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 4 | | 2199 | 8796 | |
| Deepwater Warehouse | Fieldwood | 67843.B | | MW-AREA 1 | PLUG, ELECTRICAL,MFR:ODI,PN:10081132,TYP BULKHEAD,CONN TYP FEMALE,SPCL FEATRS PIN CONFIGURATION: 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 1661.25 | 3322.5 | |
| Deepwater Warehouse | Fieldwood | 67844.B | | MR-5-B | PLUG, ELECTRICAL,MFR:ODI,PN:8815-000680-76,TYP EFL TEST,POLES 4-PIN,SPCL FEATRS CONNECTION: FEMALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 4 | | 1598.25 | 6393 | |
| Deepwater Warehouse | Fieldwood | 67845.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:8815-000686-43,TYP EFL TEST,POLES 8-PIN,SPCL FEATRS CONNECTION: MALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 1730.25 | 3460.5 | |
| Deepwater Warehouse | Fieldwood | 67913.A | | MW-AREA 4 | OUTBOARD PLATE, 14 WAY. MFR: OCEANEERING, PN: 0428798 | | GUNFLINT | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 67846.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:8815-695-22-REN,TYP EFL TEST,POLES 6-PIN,SPCL FEATRS CONNECTION: FEMALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 1371.75 | 1371.75 | |
| Deepwater Warehouse | Fieldwood | 68035.A | | DWW-YARD C-VAN 60978S | CENTRALIZER, SLDR:MFR:HALLIBURTON,PN:0500-06125,TYP SLIDER,CASING SZ 5 IN,WT 5.7 lb,ID 5.12 IN,OD 6-1/2 IN,LG 12.4 IN,HOLE SZ 6-1/2 IN,STD SZ | 201560 | GC 40 02 Katmai 2 | EA | | | 45 | | 100.44 | 4519.8 | |
| Deepwater Warehouse | Fieldwood | 68051.B | | BW-AREA 3 | COLLAR,MFR:RTI ENERGY SERVICES,PN:129990,TYP SPACE,DIM 2 ft,S/N:20001364,001 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 16875 | 16875 | |
| Deepwater Warehouse | Fieldwood | 68057.B | | BW-AREA 3 | COLLAR,MFR:RTI ENERGY SERVICES,PN:129990,TYP SPACE,DIM 1 ft,S/N:20001364,001 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 13800 | 13800 | |
| Deepwater Warehouse | Fieldwood | 68058.B | | DWW-YARD-C-VAN 401592 1 | TOOL,MFR:TRENDSETTER ENG.,PN:TEI-100796-00,TYP DRAWDOWN,SPCL FEATRS TEI,S/N:966-9013 ,S/N:966-9014 | 203563 | Rio Grande Spares | EA | | | 2 | | 19125 | 38250 | |
| Deepwater Warehouse | Fieldwood | 68059.B | | DWW-YARD-C-VAN 2051995 | CONNECTOR, ELECTRICAL;MFR:AKER,PN:8815-000680-81,TYP ODI TEST | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 974.25 | 0 | |
| Deepwater Warehouse | Fieldwood | 68060.B | | MW-R16-FL | PLATE,MFR:AKER,PN:G02-4518-13-3307A,SPCL FEATRS WITH BEND (45 DEGREE),3GR HUB,BRAND:GRAYLOC,BRAND:UNKNOWN,MN:UH550 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 3 | | 48530.25 | 145590.75 | |
| Deepwater Warehouse | Fieldwood | 68061.B | | MW-R16-FL | PLATE,MFR:AKER,PN:G02-4518-13-3307L,TYP TEST,MN:UH550 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 39448.5 | 39448.5 | |
| Deepwater Warehouse | Fieldwood | 68064.A | | MW-R5-2/MW-R5-3 | FLYING LEAD,MFR:AKER,PN:10243498,ELECTRICAL,LG 325 ft,APD | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 94485 | 188970 | |
| Deepwater Warehouse | Fieldwood | 68107.A | | MW-R10-2 | RCPTCL,MFR:SKOFLO,PN:100257,TYP DUAL CORE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 30240 | 30240 | |
| Deepwater Warehouse | Fieldwood | 68253.A | | DWW-YARD | RING,TYP CENTRALIZER,ID 15 IN,OD 20.505 IN,WD N/A,DIM OAL 8 IN,MATL CS ASTM A707 LS,MATL GR 65KSI SMYS,DSGN RTNG 330 lb | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2975 | 2975 | |
| Deepwater Warehouse | Fieldwood | 68254.A | | DWW-YARD | CONE, BEARING;TYP CENTRALIZER,ID ID 17 X OD 23 X LG 18 IN,WD N/A,MATL CS ASTM A707 LS GR 65KSI SMYS,SPEC WEIGHT: 451 LBS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 4638.75 | 9277.5 | |
| Deepwater Warehouse | Fieldwood | 68255.A | | DWW-YARD | SLEEVE,TYP CENTRALIZER,DIM ID 21.75 X OD 23 X LG 18 IN,MATL CS ASTM A707 LS GR 65KSI SMYS,CPCTY 213 lb,APPLI N/A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 77388 | 77388 | |
| Deepwater Warehouse | Fieldwood | 68304.B | | DWW-YARD-C-VAN DNVU-2051995 | TOOL,MFR: FREUDENBERG,TYP CLEANING,STYL CONTINGENCY WINDOW HUB,CLR BLACK,SPCL FEATRS OPERATOR: ROV MANIPULATOR OPERATED, WITH ORANGE HANDLE,APPLI OPTIMA SUBSEA CONNECTOR ASSEMBLY (SIZE: 8 IN),BRAND:VECTOR,BRAND:UNKNOWN | 203563 | Rio Grande Spares | EA | | | 2 | | 11332.8 | 22665.6 | |
| Deepwater Warehouse | Fieldwood | 68305.B | | DWW-YARD-C-VAN DNVU-2051995 | TOOL,MFR: FREUDENBERG,TYP SEAL CHANGEOUT,SPCL FEATRS OPERATOR: ROV HYDRAULICALLY OPERATED,APPLI OPTIMA SUBSEA CONNECTOR ASSEMBLY (SIZE: 8 IN),BRAND:VECTOR,BRAND:UNKNOWN | 203563 | Rio Grande Spares | EA | | | 2 | | 13599.33 | 27198.66 | |
| Deepwater Warehouse | Fieldwood | 68307.B | | MR-2-D | SEAL, RING;MFR: FREUDENBERG,TYP N/A,ID N/A,OD N/A,THK N/A,MATL SILVER COATED,APPLI OPTIMA SUBSEA CONNECTOR ASSEMBLY (SIZE: 8 IN),BRAND:VECTOR,BRAND:UNKNOWN | 203563 | Rio Grande Spares | EA | | | 11 | | 5496 | 60456 | |
| Deepwater Warehouse | Fieldwood | 68308.B | | MW-R16-FL | CAP,MFR:AKER,PN:G02-4518-13-3307J,TYP COMPENSATED PRESSURE,BRAND:UNITECH,BRAND:UNKNOWN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 43738.5 | 43738.5 | |
| Deepwater Warehouse | Fieldwood | 68375.A | | MW-R17-3 | FLANGE;TYP PIPE, BLIND,DIM NA,CONN SZ NA,CONN TYP NA,MATL STAINLESS STEAL,MATL GR NA,OPRTG PRESS ANSI 900 LBS,STYL SPECTACLE,SPEC 8 IN OD, RTJ | | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2712 | 2712 | |
| Deepwater Warehouse | Fieldwood | 68444.B | | DWW-YARD-C-VAN CPIU 0301122G1 | FLYING LEAD,MFR:AKER,PN:10243958,6-WAY / 4-WAY ELECTRICAL,LG 325 ft | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 24366 | 0 | |
| Deepwater Warehouse | Fieldwood | 68445.B | | MW-R8-2 | FLYING LEAD,MFR:AKER,PN:10243630,6-WAY / 4-WAY ELECTRICAL,LG 200 ft | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 24366 | 0 | |
| Deepwater Warehouse | Fieldwood | 68523.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR;MFR:CORTEC,PN:BN445-1775200-1M90-17CA-17CA-3,SZ NA,SPCL FEATRS 13/16 IN,OPRTG PRESS 10000 PSI,MATL ELASTOMER,COMPRISING LIP SEALS, 9 WEATHER SEALS, BALL AND SEAT SET | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4109 | 4109 | |
| Deepwater Warehouse | Fieldwood | 68558.A | | BW-AREA 2 | SWAGE, CASING;NOM SZ 22 IN,WALL THK 1.25 IN,TOP CONN WT 277.04 lb,TOP CONN SZ 22 IN,TOP CONN TYP H9ODM/MT PIN,BOT CONN WT N/A,BOT CONN SZ N/A,BOT CONN TYP 1502 WECO,MATL STEEL,MATL GR X80,LG N/A | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 2080.81 | 2080.81 | |
| Deepwater Warehouse | Fieldwood | 68559.A | | DWW-YARD-C-VAN 401592 1 | PUMP;MFR:PROSERV,PN:ADPM2X1SX10K,TYP MOTOR,SPEC 10,000 PSI, 2.00 GPM, 15HP 460V/60HZ/3PH, 1800 RPM, 120V/60HZ/1PH HEATERS, CSA AND UL CERT | 203563 | Rio Grande Spares | EA | | | 0 | | 20508 | 0 | |
| Deepwater Warehouse | Fieldwood | 68561.A | | DWW-YARD-C-VAN 401592 1 | PUMP,MFR:PROSERV,PN:ADPM10X2X7SH,TYP MOTOR,SPEC 75 PSI, 10.00 GPM, 2 HP 460V/60HZ/3PH, 3600 RPM, 120V/60HZ/1PH HEATERS, SIX-STAGE GOULD PUMP, CSA AND UL CERT | 203563 | Rio Grande Spares | EA | | | 0 | | 4125 | 0 | |
| Deepwater Warehouse | Fieldwood | 68566.B | | DWW-YARD-C-VAN 2051995 | CONNECTOR, ELECTRICAL;MFR:ODI,PN:B815000686-67,SPEC ELECTRICAL CONNECTOR FEMALE LONG TERM COVER; 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 6 | | 3936.75 | 23620.5 | |
| Deepwater Warehouse | Fieldwood | 68584.E | | DWW-YARD-C-VAN 401592 1 | TESTER,TYP SERIMAX,SZ NA,CONTR TYP CRATE W/ WELDS FROM INSPECTION, 8.625" OD X 1.344 WT,APPLI TESTING USE ONLY GUNFLINT, TENARIS LINE PIPE, SERIMAX TEST WELDS,BRAND:TENARIS,BRAND:SERIMAX | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 68685.A | | MR-2-E | BODY;MFR:FMC,PN:P1000026071,TYP SEAL,DUMMY TEST EQUIPMENT, USED | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11150 | 11150 | |
| Deepwater Warehouse | Fieldwood | 68686.A | | MR-2-A | SEAL;MFR:FMC,PN:P161582,TYP S,OD 12.879/12.801 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 658.21 | 1316.42 | |
| Deepwater Warehouse | Fieldwood | 68687.A | | MR-2-A | SEAL;MFR:FMC, PN:P1000098349,TYP S,OD 12.487/12.413 IN,THK 0.33 IN | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 1178 | 2356 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 68688.A | | MR-2-F | SEAL,MFR:FMC,PN:DP-18-6253,MATL:METAL,SPCL FEATRS SBMS-11 BODY, F/SIZE: 4-1/2 IN, PRESSURE: 10 K H,SPEC OBSOLETE AND REPLACED BY P1000151418, ME | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 9087 | 27261 | | |
| Deepwater Warehouse | Fieldwood | 68689.A | | MR-3-F | SEAL,MFR:FMC,PN:P1000009840,MATL:METAL,SPCL FEATRS BODY DESIGN: SBMS-II,APPLI S-15K | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 12116 | 36348 | | |
| Deepwater Warehouse | Fieldwood | 68690.A | | MR-2-A | SEAL,MFR:FMC,PN:P182168,TYP S,OD 14.794/14.706 IN,THK 0.3 IN,LG 0.516 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 902 | 902 | | |
| Deepwater Warehouse | Fieldwood | 68691.A | | MR-2-A | SEAL,MFR:FMC,PN:P1000009589,TYP S, B,OD 16.755/16.655 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 1085 | 2170 | | |
| Deepwater Warehouse | Fieldwood | 68692.A | | MR-GENERAL | TRANSFORMER,MFR:FMC,PN:215127MFR: HAMMOND,TYP DRY,PH QTY 1,REF:B800701845 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 5527.88 | 5527.88 | | |
| Deepwater Warehouse | Fieldwood | 68694.A | | MR-2-A | SEAL,MFR:FMC,PN:P1000009444,TYP S, B | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 926 | 926 | | |
| Deepwater Warehouse | Fieldwood | 68696.B | | MW-R6-1 | FUNNEL,MFR:AKER,PN:4500624158-20-002,TYP GUIDE ASSEMBLY,DIM OD 8 IN,APPLI PIG DETECTOR,REF:10217747, REF:10223677 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 4671 | 4671 | | |
| Deepwater Warehouse | Fieldwood | 68698.A | | DWW-YARD-C-VAN 401592 1 | KIT, VALVE REPAIR,MFR:WHITCO,PN:4INBBF31,VLV SZ 4 IN,OPRTG PRESS CL 300,APPLI BALL VALVE | 203563 | Rio Grande Spares | EA | | | 1 | | 3647.6 | 3647.6 | | |
| Deepwater Warehouse | Fieldwood | 68699.A | | MR-GENERAL | KIT,MFR:FMC,PN:P1000054316,TYP REDRESS,APPLI SSP WELLHEAD PLUG (SIZE: 4.673 IN),SPEC OEM SPARE PART, 15K, SUPPLIED BY HALLIBU | | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 16460.3 | 0 | | |
| Deepwater Warehouse | Fieldwood | 68700.A | | MR-2-F | BODY,MFR:FMC,PN:P1000026073,TYP SEAL,DUMMY TEST EQUIPMENT, USED | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11721 | 11721 | | |
| Deepwater Warehouse | Fieldwood | 68701.A | | MR-2-F | BODY,MFR:FMC,PN:P1000026074,TYP SEAL,DUMMY TEST EQUIPMENT, USED | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11191 | 11191 | | |
| Deepwater Warehouse | Fieldwood | 68913.B | | DWW-YARD | STAND,TYP N/A,MATL JUMPER,SPCL FEATRS FABRICATION,APPLI METEROLOGY | 203563 | Rio Grande Spares | EA | | | 2 | | 156000 | 312000 | | |
| Deepwater Warehouse | Fieldwood | 68946.A | | DWW-YARD-C-VAN CCLU 667229 9 | KIT,MFR:FMC TECHNOLOGIES,PN:P1000069312,TYP COMMISSIONING,CL 15000 PSI,APPLI ENHANCED HORIZONTAL SUBSEA TREE (EHXT) TUBING HANGER | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 16460.3 | 32920.6 | | |
| Deepwater Warehouse | Fieldwood | 68949.A | | MR-GENERAL | KIT,MFR:FMC TECHNOLOGIES,PN:P1000002656,TYP HORIZONTAL,APPLI ELECTRICAL FEEDTHROUGH SYSTEM | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 29817.78 | 29817.78 | | |
| Deepwater Warehouse | Fieldwood | 68966.A | | MR-5-D | VALVE, RELIEF,MFR:PARKER,PN:9MP78F-MPRA-15000-SS,VLV SZ 9/16 X 9/16 IN,CONN TYP TUBE,SET PRESS 10000 PSIG,BDY MATL SS | 203563 | Rio Grande Spares | EA | | | 1 | | 1321 | 1321 | | |
| Deepwater Warehouse | Fieldwood | 68967.A | | BW-R12-2 | HEATER, WATER, ELECTRIC,MFR:RHEEM,PN:PROE30 SZ RH9S B,TYP SHORT,VOL CPCTY 30 gal,VOLT 240,WATT 4500 W | | NEPTUNE | EA | | | 1 | | 527.685 | 527.685 | | |
| Deepwater Warehouse | Fieldwood | 68991.B | | BW-AREA 2 | CYLINDER, COMPRESSED GAS,MFR:CAMERON,PN:639CH,GAS TYP NATURAL GAS,DIA 12.5 IN,OUTLT CONN TYP FLANGE,APPLI COMPRESSOR | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68992.B | | BW-R7-1 | PISTON,MFR:CAMERON,PN:2QDN-T04A-0000,TYP GAS,DIM 12.5 IN,APPLI COMPRESSOR FOR WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68993.B | | BW-NEP-AREA | CAMSHAFT,MFR:CAMERON,PN:650-503-000,TYP FRONT,APPLI FOR 2408 WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68994.C | | BW-NEP-AREA | CAMSHAFT,MFR:CAMERON,PN:650-505-000,TYP REAR,APPLI FOR 2408 WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68995.C | | BW-R11-FL | CONNECTING ROD,MFR:CAMERON,PN:651-802-001,TYP ENGINE,APPLI FOR 2408 WS ENGINE | | NEPTUNE | EA | | | 6 | | 0.01 | 0.06 | | |
| Deepwater Warehouse | Fieldwood | 68996.B | | BW-R8-FL | CONNECTING ROD,MFR:CAMERON,PN:620-001-001,TYP COMPRESSOR,APPLI FOR WH64 5W COMPRESSOR FRAME | | NEPTUNE | EA | | | 3 | | 0.01 | 0.03 | | |
| Deepwater Warehouse | Fieldwood | 68997.C | | BW-R7-1 | ROD, PONY,MFR:CAMERON,PN:Z625-021-003,TYP GAS,APPLI FOR COMPRESSOR 5W WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68998.B | | BW-NEP-AREA | SHAFT,MFR:CAMERON,PN:620-000-001,TYP CRANK,APPLI FOR WS 2408 ENGINE WH64,MFR:CAMERON,MN:WH64 | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 68999.B | | BW-R10-2 | HEAD, CYLINDER,MFR:CAMERON,PN:650-183-005,TYP ENGINE,APPLI FOR WS 2408 ENGINE | | NEPTUNE | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 69001.B | | BW-R8-2 | TURBOCHARGER,MFR:CAMERON,PN:663-313-002,TYP FOURCED AIR,APPLI FOR WS 2408 ENGINE,MFR:CAMERON,MN:RR-181/14 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69001.C | | BW-NEP-AREA | TURBOCHARGER,MFR:CAMERON,PN:663-313-002,TYP FOURCED AIR,APPLI FOR WS 2408 ENGINE,MFR:CAMERON,MN:RR-181/14 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69002.A | | MW-R6-1 | ASSEMBLY,MFR:CAMERON,PN:2247143-2SMOD,COMPRISING HOT STAB, GAUGE (PRESSURE: 10,000 PSI),APPLI PANEL, ROV | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 19414.71 | 19414.71 | | |
| Deepwater Warehouse | Fieldwood | 69010.B | | BW-AREA 2 | COOLER,MFR:CAMERON,PN:655-545-000,TYP ENTER,APPLI FOR WS 2408 ENGINE | | NEPTUNE | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 69013.B | | OS-R3-11 | GASKET SET,MFR:CATERPILLAR,PN:293-3421,TYP CYLINDER HEAD,APPLI FOR CATERPILLAR ENGINE | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | | |
| Deepwater Warehouse | Fieldwood | 69016.B | | BW-R8-1 | SPACER,MFR:SEATRAX,PN:TL9013,TYP CRANE PIN,APPLI FOR BOOM HEEL CRANE BUSHING,MFR:SEATRAX,PN:TL9003,TYP CRANE PIN,APPLI FOR BOOM HEEL CRANE | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69017.B | | BW-R8-1 | PIN,MFR:SEATRAX,PN:TA104-2,TYP CRANE HEEL,DIA 5.5 IN,LG 13 IN | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69018.B | | BW-R8-1 | MTR, ELEC,MFR:TOSHIBA,PN:B0056FLF2AMH04,TYP 5 HP,APPLI FOR RPM-1165,MFR:TOSHIBA,MN:IKHFBK1180 | | NEPTUNE | EA | | | 2 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69019.B | | BW-R10-1 | MTR, ELEC,MFR:BALDOR,PN:CM7014-1,TYP 1 HP,RPM 1750,PH 3,MFR:BALDOR,MN:BY8970B7 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69020.B | | BW-R10-1 | MTR, ELEC,MFR:EMERSON,PN:H5E30,TYP 5 HP,RPM 955/1165,PH 3,MFR:EMERSON,MN:T413A | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69021.B | | BW-R10-1 | MTR, ELEC,MFR:BALDOR,PN:ECP3665T-4,TYP 5 HP,RPM 1750,PH 3,VOLT 460,HZ 60 ELBOW,MFR:CAMERON,PN:653-407-000,TYP EXHAUST,CONN TYP FLANGE,SZ 8 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69024.C | | BW-R12-2 | IN,MATL CAST IRON,DEG 90 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69026.B | | BW-R11-1 | MTR, ELEC,MFR:EMERSON,PN:H40E2E,RPM 1775,PH 3PH,VOLT 230/460 V,FR 324 T,HZ 60,ENCL TOTALLY ENCLOSED,SHFT DIA 2.125 IN,POLES 4,AMP 92/46 A,SPCL FEATRS POWER: 40 HP,MN:R06B | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69031.B | | BW-R7-1 | MTR, ELEC,MFR:BALDOR,PN:VLCP3665T,RPM 1725,PH 3PH,VOLT 208-230/460 V,FR 184UP,HZ 60,ENCL TEFC,ROT REVERSIBLE,AMP 14.9-13.8/6.9 A,SPCL FEATRS POWER: 5 HP | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69035.C | | BW-NEP-AREA | HEAD, CYLINDER,MFR:CATERPILLAR,PN:10R-8886,DIM WD 14.5 X LG 39.5 X HT 11.25 IN,APPLI ENGINE,MN:005M09Y12P68,EQ MODEL:C7 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69038.B | | BW-R6-1 | SKID,MFR:PROSERV,PN:FHC-1G-10-AGT-62,SPCL FEATRS PNEUMATIC AND HYDRAULIC,APPLI NITROGEN BOOSTER PUMP | 203563 | Rio Grande Spares | EA | | | 0 | | 21259 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69088.B | | MW-R19-FL | VALVE,MFR:VALFORGE,PN:ABF01,CONN 1 SZ 4 IN,CONN 1 TYP RAISED FACE,CL 150 lb | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 4781.25 | 9562.5 | | |
| Deepwater Warehouse | Fieldwood | 69113.B | | BW-NEP-AREA | CROSSHEAD,MFR:CAMERON,PN:620-201-001,TYP RECIPROCATING,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69113.C | | BW-NEP-AREA | CROSSHEAD,MFR:CAMERON,PN:620-262-001,TYP RECIPROCATING,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 69114.B | | DWW-YARD | SPOOL;TYP FLOW METER DUMMY,ID 4 IN,DD N/A,LG 28.75 IN,MATL CS,SPEC PRESSURE: 1500 PSI, CONNECTION: RTJ, FABRICATION | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 34206.25 | 0 | |
| Deepwater Warehouse | Fieldwood | 69115.B | | BW-NEP-AREA | PIN;MFR:CAMERON,PN:620-006-001,TYP CROSSHEAD,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 69116.B | | BW-R8-FL | BEARING;MFR:CAMERON,PN:625-235-001,TYP SLIPPERS, CROSSHEAD,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 18 | | 0.01 | 0.18 | |
| Deepwater Warehouse | Fieldwood | 69119.B | | BW-R8-FL | PUMP;MFR:CAMERON,PN:620-033-002,TYP OIL,APPLI WH64 COMPRESSOR COOLER,MFR:CAMERON,PN:653-902-001,TYP OIL,APPLI COMPRESSOR,EQ | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 69120.B | | BW-NEP-AREA | MODEL:WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69121.C | | BW-R7-2 | COVER;MFR:CAMERON,PN:652-803-000,TYP CAM ACCESS,APPLI ENGINE,EQ MODEL:2408 WS | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69123.B | | BW-R10-3 | EVAPORATOR, AIR CONDITIONER;MFR:BAYOU BOEUF ELECTRIC,PN:CAHA24D3 CONDENSER;MFR:BAYOU BOEUF ELECTRIC,PN:S1CA80000D00,TYP AIR | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69125.B | | BW-R10-3 | CONDITIONER | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 69126.C | | BW-R7-2 | GUIDE;MFR:CAMERON,PN:650-469-000,TYP BUSHING, LIFTER,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 11 | | 0.01 | 0.11 | |
| Deepwater Warehouse | Fieldwood | 69127.B | | BW-R7-2 | SHEAVE, ASSEMBLY;MFR:SOLAR,PN:458402,TYP FAN,APPLI FOR SOLAR BOOSTER COMPRESSOR COOLER,MFR:SOLAR,MN:11568006 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69128.B | | DWW-YARD | TRAY, CABLE;MFR:ENDURO,PN:EHL6-24-9-10,MFR:ENDURO,MN ENDURO CLASS 20 | | NEPTUNE | EA | | | 3 | | 0.01 | 0.03 | |
| Deepwater Warehouse | Fieldwood | 69131.B | | BW-R7-2 | GEAR;MFR:CAMERON,PN:652-306-000 REV-ARG,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69132.C | | BW-R7-2 | JUMPER;MFR:CAMERON,PN:554-627-000,TYP WATER,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 4 | | 0.01 | 0.04 | |
| Deepwater Warehouse | Fieldwood | 69133.C | | BW-R7-2 | PLATE;MFR:CAMERON,PN:8650-631,TYP SEAL, GUIDE, PUSH ROD,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 26 | | 0.01 | 0.26 | |
| Deepwater Warehouse | Fieldwood | 69134.C | | DWW-YARD | MANIFOLD;MFR:CAMERON,PN:853-401-001,TYP EXHAUST,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69135.B | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:620-198-001,TYP MAIN,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | |
| Deepwater Warehouse | Fieldwood | 69136.A | | OS-R3-S3 | BEARING;MFR:CAMERON,PN:904-568-001,TYP MAIN,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 69136.B | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:904-568-001,TYP MAIN,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | |
| Deepwater Warehouse | Fieldwood | 69137.A | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:651-931-000,TYP ROD | | NEPTUNE | EA | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 69137.B | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:651-931-000,TYP ROD | | NEPTUNE | EA | | | 12 | | 0.01 | 0.12 | |
| Deepwater Warehouse | Fieldwood | 69140.B | | OS-R3-S3 | BEARING;MFR:CAMERON,PN:650-773-000,TYP MAIN,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 69144.B | | OS-R3-S1 | LIGHT;MFR:PAULUHN,PN:1159AYELGRDO2,TYP HELIPORT,SPEC SEALED,MN:D&T 1/2-2 | | NEPTUNE | EA | | | 6 | | 0.01 | 0.06 | |
| Deepwater Warehouse | Fieldwood | 69145.B | | OS-R3-S1 | LIGHT;MFR:PAULUHN,PN:1159ABLUGRDO2,TYP HELIPORT,SPEC SEALED,MN:D&T 1/2 - 2 | | NEPTUNE | EA | | | 3 | | 0.01 | 0.03 | |
| Deepwater Warehouse | Fieldwood | 69147.B | | BW-R7-FL | PUMP, CENTRIFUGAL;MFR:DURCO,PN:P8E-780B,TYP COOLING MEDIA,STD MARK III | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69148.B | | BW-R12-2 | ACTUATOR;MFR:ROTORK,PN:RN 119968-1,TRVL LG 713 mm,OPRTR AIR,APPLI WASTE HEAT BUTTERFLY VALVE,MN:CP/5-045-200/DA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69151.C | | BW-R7-2 | ASSEMBLY;TYP VALVE, ROCKER ARM,MATL NA,COMPRISING PN:650-429-000, PN:650-480-000,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 8 | | 0.01 | 0.08 | |
| Deepwater Warehouse | Fieldwood | 69153.B | | BW-R10-1 | MTR, ELEC;MFR:MARATHON,PN:TGS,TYP 5 HP | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 69154.B | | BW-R10-1 | MTR, ELEC;MFR:TECO-WESTINGHOUSE,MN:WZ419048001-002,TYP 7.5 HP,MFR:TECO-WESTINGHOUSE,MN:MAX-E1 | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 69160.C | | BW-R7-2 | ROD;MFR:CAMERON,PN:NA,TYP PUSH RODS,DIM NA,MATL NA,APPLI 2408 WS ENGINE,MFR:CAMERON,TYPE:VALVE | | NEPTUNE | EA | | | 16 | | 0.01 | 0.16 | |
| Deepwater Warehouse | Fieldwood | 69161.C | | BW-NEP-AREA | REDUCER;TYP FLANGED, BELL,MATL NA,CONN 1 SZ NA,CONN 2 SZ NA,CONN 2 TYP NA,SPEC EXHAUST BELL REDUCER,STD NA,APPLI 2408 WS ENGINE | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 69162.C | | DWW-YARD | RAIL;TYP MAIN, FUEL,MATL NA,DIA NA,WD NA,LG NA,THK NA,PRFILE NA,APPLI MAIN FUEL RAIL,SPEC 2408 WS ENGINE,STD NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69163.C | | DWW-YARD | RAIL;TYP PILOT, FUEL,MATL NA,DIA NA,WD NA,LG NA,THK NA,PRFILE NA,APPLI 2408 WS ENGINE,SPEC MAIN FUEL RAIL,STD NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69165.B | | BW-R11-1 | MTR, ELEC;MFR:SIEMENS,PN:RGZEVILSD,TYP 20 HP | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69166.B | | BW-NEP-AREA | PANEL;TYP ENCLOSURE,WD NA,LG NA,HT NA,MATL NA,APPLI SOLAR GENERATOR ENCLOSURE,SPEC SOLAR ENCLOSER PANEL,STD NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69167.B | | MW-AREA 6 | FRAME;TYP ENGINE REMOVAL,DIM NA,MATL NA,SHAPE NA,STYL NA,MNTG FCLTY NA,SPCL FEATRS NA,APPLI SOLAR BOOSTER COMPRESSOR ENGINE,SPEC SOLAR ENGINE EXCHANGE FRAMES,STD NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69168.B | | BW-R10-3 | HOIST;TYP ENGINE REMOVAL,STYL NA,LIFTG CAPACITY NA,SPEC NA,STD NA,FNSH NA,SPCL FEATRS SOLAR HOIST,APPLI SOLAR BOOSTER COMPRESSOR ENGINE RADIATOR;TYP CRANE ENGINE,DIM NA,CORE QTY NA,MATL NA,APPLI SEATRAX | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69170.B | | BW-R11-2 | CRANE,SPEC SEATRAX CRANE RADIATOR,STD NA | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 69173.B | | OS-R3-S1 | SENSOR;MFR:FISHER,PN:FS845,MFR:FISHER,MN:3311 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69174.B | | BW-R8-1 | BRAKE;TYP BAND,TRQ NA,APPLI SEATRAX BOOM WINCH,SPEC SEATRAX BRAKE BAND FOR WINCH,STD NA | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 69175.B | | BW-R8-1 | ACTUATOR;TYP BRAKE,VOLT NA,AMP NA,WATT NA,OPRTG PRESS NA,TRVL LG NA,OPRTR NA,SPCL FEATRS NA,APPLI SEATRAX MAIN OR AUX WINCH,SPEC SEATRAX HYDRAULIC BRAKE ACTURTOR CYLINDER,STD NA | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 69177.B | | OS-R3-FL | HOUSING;MFR:DEL RIO INC.,PN:SB617V150WE,TYP FILTER, HP,SPEC 10,000 PSI | | NEPTUNE | EA | | | 9 | | 0.01 | 0.09 | |
| Deepwater Warehouse | Fieldwood | 69179.B | | OS-R2-S1 | HOUSING;MFR:DEL RIO INC.,PN:P8798F10WEV,TYP FILTER, HP,SPEC 10-ABS, 10,000 PSI | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | |
| Deepwater Warehouse | Fieldwood | 69180.B | | OS-R2-S1 | HOUSING;MFR:DEL RIO INC.,PN:8586V10WE,TYP FILTER, HP,SPEC 10-ABS 6,000 PSI,MFR:DEL RIO INC.,MN:233-10WEV | | NEPTUNE | EA | | | 11 | | 0.01 | 0.11 | |
| Deepwater Warehouse | Fieldwood | 69181.B | | OS-R2-S1 | DAMPER, VIBRATION;MFR:FLOWGUARD,PN FG40863/01-5,MFR:FLOWGUARD,MN:18888A | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69183.B | | BW-AREA 1 | VALVE;TYP R47,CONN 1 SZ 6 IN,CONN 1 TYP NA,CL 2500,DSGN RTNG NA,DPRTD NA,MATL NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69184.B | | BW-R10-FL | VALVE;MFR:FISHER,PN:129841001,TYP PNEUMATIC CONTROL,CONN 1 SZ 2 IN,CL 900,SPCL FEATRS W/ ACTUATOR | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69185.B | | MW-R12-2 | VALVE, BALL;MFR:WKM,PN:0104238-001,CONN 1 SZ 10 IN,CONN 2 SZ 8 IN,CL 150 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69189.B | | BW-R12-3 | TRAY, CABLE;DIM NA,TYP 1 CRATE,MATL NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 69190.C | | BW-R7-1 | BLOWER;TYP MOON POOL, GAS EXTRACTION,AIR FLW CPCTY NA,AMP NA,DIA NA,VOLT NA,WATT NA,RPM NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 69191.B | | BW-NEP-AREA | ROPE,WIRE;DIA 3/8 IN,LG NA,CONSTR NA,CLASSIF NA,MATL SS,LAY NA,SURF TRTMNT GALVANIZED | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69192.B | | BW-R11-1 | MTR, ELEC;MFR BALDOR,PN NA,TYP 75HP,FR 365TSC | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69195.B | | BW-R11-1 | VALVE;TYP 6 IN,CONN 1 SZ NA,CONN 1 TYP NA,CL 600,DSGN RTNG NA,OPRTD NA,MATL NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69196.B | | BW-NEP-AREA | VALVE, BUTTERFLY;VLV SZ NA,DSGN RTNG NA,CONN SZ NA,CONN TYP NA,OPRTD NA,TYP NA,TRIM NA,BDY MATL NA,MATL GR NA,SPEC WASTE HEAT BUTTERFLY VALVES | | NEPTUNE | | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69197.B | | DWW-YARD | ATTACHMENT;TYP NA,MATL NA,STD NA,APPLI SUB-SEA WELL ATTACHMENT | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69198.B | | BW-AREA 2 | CLAMP;TYP NA,DIM NA,MATL NA,MATL GR NA,APPLI RETROCLAMPS WITH LEADS KIT;TYP NA,COMPRISNG NA,APPLI SCRUBBER UPGRADE KIT | | NEPTUNE | EA | | | 18 | | 0.01 | 0.18 | | |
| Deepwater Warehouse | Fieldwood | 69199.B | | BW-NEP-AREA | | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69200.C | | BW-R11-1 | PUMP;TYP FLARE,FLW RATE NA,INLT SZ NA,OUTLT SZ NA,RPM NA,SPEC SO311 BOX;TYP NA,WD NA,LG NA,DP NA,MATL NA,SPEC FIRE HOSE REELS,APPLI FIRE HOSE STORAGE BOX | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69202.B | | BW-NEP-AREA | PANEL, CONTROL;MFR TULSA HEATERS,PN-TUAF-UMB-16,SPEC MECHANICAL SPOOL W/ CONTROL PANEL | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69204.B | | BW-R8-3 | FLANGE, LIFTING;TYP 12 BOLT,NOM SZ NA,CONN SZ NA,CONN TYP NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69205.B | | BW-R7-FL | CHAIN;TYP NA,NOM ROLLR OD NA,WD NA,MATL NA,APPLI NA,SPEC AND BINDERS | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69206.C | | BW-R10-FL | GEAR;MFR CAMERON,PN NA,TYP IDLER, TIMING | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69207.B | | BW-R9-1 | COVER;MFR CAMERON,PN NA,TYP VALVE,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69208.B | | BW-R9-1 | BOLT;MFR CAMERON,PN NA,APPLI FOR VALVE COVER, 240B WS ENGINE | | NEPTUNE | EA | | | 114 | | 0.010166667 | 1.159 | | |
| Deepwater Warehouse | Fieldwood | 69209.B | | BW-NEP-AREA | ROLLER;MFR CAMERON,PN NA,TYP LIFTER,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 13 | | 0.01 | 0.13 | | |
| Deepwater Warehouse | Fieldwood | 69853.A | | DWW-YARD | PIPE;TYP LINE,NOM SZ N/A,OD 8.625 IN,SCH FLOWLINE SCR,WALL THK 1.250 IN,MATL N/A,MATL GR N/A,END CONN N/A,LG 40 FT,COATG EXT BARE,APPLI EXTRA SCR 70 KSI | 141585 | MC 698 BIG BEND LONG LEADS | FT | | | 80 | | 95 | 7600 | | |
| Deepwater Warehouse | Fieldwood | 69856.A | | DWW-YARD | PIPE;TYP LINE,NOM SZ N/A,OD 6.625 IN,SCH N/A,WALL THK .864 IN,MATL N/A,MATL GR X70,END CONN PLAIN END,LG 40 FT,COATG EXT R-3 FBE COATED | 141585 | MC 698 BIG BEND LONG LEADS | FT | | | 17 | | 68.59 | 1166.03 | | |
| Deepwater Warehouse | Fieldwood | 69859.A | | DWW-YARD-C-VAN 045905 | CENTRALIZER, SUB;MFR BLACKHAWK,PN 0109342-QP0003,CASNG SZ 9.375 IN,WT 39 lb/ft,MATL GR Q125,CONN TYP TSH-513,SPCL FEATRS W/135000 MIN YIELD BST (338) 8 BOWS 15.87 OVER BOW,MFR BLACKHAWK,MN R3600 | 201560 | GC 40 02 Katmai 2 | EA | | | 34 | | 8200 | 278800 | | |
| Deepwater Warehouse | Fieldwood | 69966.A | | MW-R19-FL | VALVE;MFR WHITCO,PN SDV-10400,CONN 1 SZ 6 IN,CONN 1 TYP RF,CL 300,SPCL FEATRS W/ ACTUATOR,SPEC 6" BALL VALVE, 300#, RF FLANGE ENDS, 316SS BODY AND FLANGES DEVLON SEATS AND HNBR SEALS WITH ROTORK ACTUATOR, 316MOUNTING PLATE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 17343 | 17343 | | |
| Deepwater Warehouse | Fieldwood | 69967.C | | MW-R19-FL | VALVE, BALL;MFR WHITCO,PN SDV-10400 BALL VALVE,CONN 1 SZ 6 IN,CONN 1 TYP RF FLANGE,CL 300,BDY MATL SS,MATL GR 316,SFTGDS SEAT: DEVLON; SEAL: HNBR | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 8671.5 | 8671.5 | | |
| Deepwater Warehouse | Fieldwood | 70045.A | | BW-RS-FL | COLLAR, STOP;MFR HALLIBURTON,PN 63453MFR: CENTEK,TYP HEAVY DUTY,CASNG OD 5 IN,SPCL FEATRS W/ SGL BEV | 201560 | GC 40 02 Katmai 2 | EA | | | 90 | | 36.5 | 3285 | | |
| Deepwater Warehouse | Fieldwood | 70131.A | | LINEAR CONTROLS, LA | SIEMENS MOTOR - S/N: 0770680-010-1.  1250 HP 882 RPM, 4160 VT, WP11 Frame 6811 Siemens - Thunderhawk, Yard Loc: H219, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70146.A | | LINEAR CONTROLS, LA | SIEMENS MOTOR - S/N: 1LE24214CC112AA3. 75 HP, 1200 RPM, 460 VT, TEFC, Frame 444T - Thunderhawk, Yard Loc: H222, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70147.A | | LINEAR CONTROLS, LA | MARATHON MOTOR:  S/N: WAA037677. 125 HP, 1800 RPM, 460 VR, TEFC, Grame 445T - Thunderhawk, Yard Loc: H223, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70148.A | | LINEAR CONTROLS, LA | BALDOR MOTOR: S/N: A1106292137.  200 HP, 1800 RPM, 460 Volt, TEFC, Grame 447TSD - Thunderhawk, Yard Loc: H224, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70149.A | | LINEAR CONTROLS, LA | Siemens MOTOR: S/N: G12T1269MP7. 250 HP, 1800 RPM, TEFC  Frame B449T, Thunderhawk, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70207.B | | MW-AREA 5 | PUMP ASSEMBLY;TYP 5 STAGE HYDROFLO,SZ N/A,SPEC W/50HP, 460V SEI MOTOR, 175 FT NO 4 SENSOR CABLE SPLICED TO PT100 MOTOR SENSOR, FLOW INDUCER SLEEVE MOUNTED OVER MOTOR | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70209.A | | MW-AREA 5 | MTR, ELEC;MFR BALDOR,PN 09H404X129G1,HP 15,RPM 1765,PH 3,VOLT 460,HZ 60 | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 70209.A | | MW-R20-2 | MTR, ELEC;MFR BALDOR,PN 09H404X129G1,HP 15,RPM 1765,PH 3,VOLT 460,HZ 60 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70235.A | | MW-R18-1 | VALVE, BALL;MFR VELAN,PN-B16.34,TYP N/A,CONN 1 SZ 4 X 3 X 4 IN,CONN 1 TYP FLANGED,CL 150-300,MATL GR F316L,REF-549 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70236.A | | MR-4-E | SWITCH, SELECTOR;MFR AKER,PN 10263807,CNTCT ARNGEMNT 1NO-1NC,POS QTY 2,OPRTD KEY | 203563 | Rio Grande Spares | EA | | | 0 | | 78.2 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70237.A | | MR-3-B | POWER SUPPLY;MFR AKER,PN B815-000312-06,I/P VOLT 90-240 V,MN SEM105 | 203563 | Rio Grande Spares | EA | | | 0 | | 3910.1 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70238.A | | MR-5-C | MODULE;MFR AKER,PN B814-06004-01,TYP ASSEMBLY,APPLI MODEM; SWITCH | 203563 | Rio Grande Spares | EA | | | 0 | | 4378 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70239.A | | MR-4-E | FILTER, AIR;MFR AKER,PN 10264029,APPLI UPS INVERTER | 203563 | Rio Grande Spares | EA | | | 0 | | 977.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70240.A | | DWW-YARD-C-VAN 433422 0 | FLYING LEAD;MFR OCEANEERING,PN 428781,ELECTRICAL (4 WAY),LG 120 m | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 18244 | 36488 | | |
| Deepwater Warehouse | Fieldwood | 70241.A | | MW-RS-3 | FLYING LEAD;MFR OCEANEERING,PN 428782,OPTICAL,LG 100 m | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 85079 | 85079 | | |
| Deepwater Warehouse | Fieldwood | 70243.A | | DWW-YARD | FLYING LEAD;MFR OCEANEERING,PN 428779,14 WAY, 11 LINE,LG 100 m,STEEL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 249560 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70244.A | | DWW-YARD | FLYING LEAD;MFR OCEANEERING,PN 428778,14 WAY, 14 LINE,LG 125 m,STEEL | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 249560 | 249560 | | |
| Deepwater Warehouse | Fieldwood | 70247.A | | MW-RS-3 | FLYING LEAD;MFR OCEANEERING,PN 46154,ASSEMBLY,ACOUSTIC SAND DETECTOR | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 49819 | 49819 | | |
| Deepwater Warehouse | Fieldwood | 70248.B | | MW-AREA 5 | PUMP, SUBMERSIBLE;TYP JOCKEY,OUTLT PRESS N/A,DISPLCMNT N/A,TOT HD N/A,RPM 3600,OUTLT SZ N/A,OUTLT CONN TYP N/A,WD 8 IN,MATL N/A,SPEC FREQUENCY: 60 HZ, CURRENT: 65 A, VOLTAGE: 460 V, POLE QTY: 2P | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70277.A | | MW-AREA 5 | TRANSMITTER, RADAR;MFR ROSEMOUNT,PN-5302FA1P1NA4E00903CKE5M1Q4S4,TYP GUIDED WAVE,O/P 4-20 mA,CONN TYP NPT,CONN SZ 1/2-14 IN | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70278.A | | BW-AREA 2 | ELEMENT, HEATER;MFR GAUMER PROCESS,PN:1F1S10F36N91XM4ERRTD,TYP N/A,VOLT 460,WATT 180,TEMP RNGE 200 DEG C,SPEC 3PH, 14478/2100 KP AND PSI,APPLI BUYBACK PREHEATER,EQ MODEL:HBG-4040 FG | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 70280.A | | MW-AREA 5 | TRANSFORMER,MFR:CUTLER HAMMER,PN:V48M28T49CUEE,TYP DRY TYPE DISTIBUTION,I/P VOLT 480 V,PH QTY 3,O/P VOLT 208/120 V,HZ 60,TEMP RTNG 150 DEG C,ENCL TYP NEMA 2,SPCL FEATRS CLASS 220 INSULATION | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70282.A | | MW-R18-1 | PUMP,TYP WASH DOWN,FLW RATE N/A,INLT SZ N/A,OUTLT SZ N/A,OPRTG PRESS 250 PSI,RPM N/A,SPCL FEATRS TEMPERATURE: 100 DEG F,MN:1K1.5 X 1LF OP/A 94MFR:FLOWSERVE,MN:MK3 LO-FLO | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 70283.A | | MW-R18-1 | MTR, ELEC;TYP N/A,HP 30,RPM 1700,PH 3,VOLT 460,FR 286TC,HZ 60,SF 1.15,ENCL N/A,INSUL CLASS N/A,AMP 36 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 70284.A | | MW-R20-1 | PUMP,MFR:FLOWSERVE,PN:PBA-6410-20-30,TYP COOLING,OPRTG PRESS 250 PSI,SPCL FEATRS TEMPERATURE: 100 DEG F,MFR:FLOWSERVE,MN:MK3-STD | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70285.A | | MW-R20-1 | NOZZLE;TYP SUPER SONIC FLOW,COMM SZ 2-1/2 IN,CONN SZ 2-1/2 IN,CONN TYP NPT,FLW RATE N/A,MATL N/A,MATL GR N/A,APPLI VENTURI FLANGE FLANGE;TYP VENTURI,DIM 4-1/16,CONN SZ N/A IN,MATL N/A,MATL GR BX15S | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70286.A | | BW-RS-1 | CRA,OPRTG PRESS 10,SPEC 4130,STD API | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70401.A | | BW-R12-1 | HEATER, WATER, ELECTRIC;MFR:RHEEM,PN:PROE28 S2 HR95,VOL CPCTY 28 gal,VOLT 240,AMP 18.8,WATT 4500 | | NEPTUNE | EA | | | 1 | | 468.055 | 468.055 | |
| Deepwater Warehouse | Fieldwood | 70522.B | | MW-R12-FL | ASSEMBLY;MFR:CAMERON,PN:278639-01,TYP TEST STUMP,SPCL FEATRS W/ PLUG INSTALLED | | MC 948 2 ST02 GUNFLINT D&E | EA | | | 1 | | 84664.5 | 84664.5 | |
| Deepwater Warehouse | Fieldwood | 70523.A | | MW-R20-3 | HUB;TYP ELECTRICAL MOTOR,STYL N/A,SZ N/A,MATL N/A,ENCL N/A,APPLI ARIEL VRU COMPRESSOR,SPEC W/ BOLT AND FLEX PLATE,EQ MODEL:JGC:D | 141829 | | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70525.A | | MW-R20-FL | VALVE, CONTROL;TYP N/A,VLV SZ N/A,CONN TYP FLARE,CL N/A,DSGN RTNG NA,BDY MATL SS,FLW RATE N/A,APPLI INLET SEP B,STYL N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70526.A | | DWW-YARD | RACK;TYP N/A,MATL N/A,DIM N/A,APPLI MOTOR SHIPPING FRAME; SALT WATER LIFT PUMP | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70527.A | | BW-RS-1 | VALVE, BALL;TYP N/A,OPRTD GEAR,CONN 1 SZ 6 IN,CL N/A,BDY MATL COPPER,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70528.A | | DWW-YARD | RACK;TYP BOAT STORAGE,MATL WOOD,DIM N/A | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 70529.A | | BW-R2-2 | VALVE, RELIEF;VLV SZ 3 IN,CONN TYP N/A,PRESS RANGE 1991-2262 PSI,SET PRESS N/A,OPRTD N/A,BDY MATL N/A,MATL GR N/A,MATL SPEC F51,TRIM SEAT: DEVLON,SFTGDS VITON,SPCL FEATRS CLASS 500 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 70530.A | | MW-R18-FL | VALVE, RELIEF;TYP BLOWDOWN,VLV SZ 3 IN,CONN TYP N/A,SET PRESS N/A,OPRTD N/A,BDY MATL N/A,MATL GR N/A,APPLI GLYCOL SYSTEM | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 70531.A | | BW-R2-1 | PLATE, ASSEMBLY;MFR:ALFA LAVAL,PN:30110-69628,MATL TITANIUM,DIM THK 0.7 MM,APPLI HEAT EXCHANGER,SPEC W/ NBR GLUED GASKET,REF:M158 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70533.A | | MW-R20-2 | MTR, ELEC;TYP N/A,HP 1.5,RPM 1740,PH 3,VOLT 460,FR 145TC,HZ 60,SF N/A,ENCL TEFC,INSUL CLASS N/A,AMP N/A | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | |
| Deepwater Warehouse | Fieldwood | 70533.A | | MW-R20-3 | MTR, ELEC;TYP N/A,HP 1.5,RPM 1740,PH 3,VOLT 460,FR 145TC,HZ 60,SF N/A,ENCL TEFC,INSUL CLASS N/A,AMP N/A | | THUNDERHAWK | EA | | | 5 | | 0.01 | 0.05 | |
| Deepwater Warehouse | Fieldwood | 70669.A | | BW-AREA 2 | GLASS, SIGHT;MFR:K-TEK,PN:0803-7454-16,TYP BRIDLE,APPLI B SEPARATOR,MFR:K-TEK,MN:KM265/566/D9F1F1D9/WJ215/WJ715/M2P/D/SS | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70670.A | | MW-AREA 6 | KIT;TYP N/A,COMPRISING 48 IN MOURING BUOY FRAME ACCESSORIES, 30 IN BUOY, ANCHOR, 60 M WIRE ROPE AND HARDWARE,PCKG QTY 7,SPCL FEATRS W/ ACCESSORIES, MODEM BATTERY BOTTLE 3X,APPLI 75 KHZ ADCP BATTERY UNIT | | THUNDERHAWK | EA | | | 7 | | 0.01 | 0.07 | |
| Deepwater Warehouse | Fieldwood | 70672.A | | MW-R20-1 | KIT;TYP HARDWARE,COMPRISING FLASHING TERM BOX, DRY GAS, TGID AND TANDEM SEAL ASSEMBLIES,FLANGES, COVER PLATES AND BRACKETS,APPLI FLEX PIPE SECTIONS; GENERATOR / ENGINE REMOVAL | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70673.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 3/4 IN,CONN 1 TYP THREADED,CL 1500,BDY MATL CS2,MATL GR CS2 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 70674.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 2 IN,CONN 1 TYP RT),CL 1500,BDY MATL CS,MATL GR WCB | | THUNDERHAWK | EA | | | 7 | | 0.01 | 0.07 | |
| Deepwater Warehouse | Fieldwood | 70675.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 2 IN,CONN 1 TYP RF,CL 1500,BDY MATL N/A,MATL GR CS2 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 70676.A | | MW-R20-1 | VALVE, BALL;TYP MONOFLANGE,CONN 1 SZ 2 IN,CONN 1 TYP RT),CL 1500,BDY MATL CS,MATL GR LF2 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 70677.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 3 IN,CONN 1 TYP RF,CL 1500,BDY MATL CS,MATL GR LCC | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70678.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 3/4 IN,CONN 1 TYP N/A,CL 6000,BDY MATL N/A,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 70679.A | | BW-RS-1 | FLANGE, ADAPTOR;BASE MATL X155,APPLI N/A,CONN TYP XXHD,CONN SZ 4-1/16 IN,DSGN RTNG N/A | | THUNDERHAWK | EA | | | 3 | | 0.01 | 0.03 | |
| Deepwater Warehouse | Fieldwood | 70800.A | | DWW-YARD-C-VAN 402189 0 | CROSSOVER, CASING;TOP CONN SZ 9.875 IN,TOP CONN WT 62.80 lb/ft,TOP CONN TYP TSH-523,BOT CONN SZ 5 IN,BOT CONN WT 18 lb/ft,BOT CONN TYP BLANK,MATL GR 4145-110K,PROCESS NA,LG NA | AFE FW183040 | KATMAI | EA | | | 2 | | 5110 | 10220 | |
| Deepwater Warehouse | Fieldwood | 71173.A | | MW-R20-1 | FLANGE, SPECIAL PURPOSE;TYP CONCENTRIC,DIM 3 IN,STYL WELD ON FLANGE,BLT HOLE QTY N/A,PCD N/A,MATL N/A,MATL GR N/A,SPEC WIRELOC PN# H3WL2S | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | |
| Deepwater Warehouse | Fieldwood | 71224.C | | DWW-YARD | CAP;MFR:TRENDSETTER,PN:A1001622,TYP LONG TERM PRESSURE,DIM DIA NO 10 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 151100 | 302200 | |
| Deepwater Warehouse | Fieldwood | 71225.C | | DWW-YARD | STAND;MFR:TRENDSETTER,PN:A10045473,TYP JUMPER FABRICATION,SPCL FEATRS COMMERCIAL SIZE: SHORT, NO 10 TEST HUBS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 186200 | 372400 | |
| Deepwater Warehouse | Fieldwood | 71235.C | | DWW YARD C-VAN HUXU 616220-6 | CAP;MFR:TRENDSETTER,PN:A1001620,TYP SHORT TERM PRESSURE,DIM DIA NO 6 TOOL,MFR:TRENDSETTER,PN:A1003797,TYP CLASS 6/7 TORQUE, SKID,SPCL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 51000 | 102000 | |
| Deepwater Warehouse | Fieldwood | 71243.C | | DWW-YARD | FEATRS SOFTLAND/DRAWDOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 148047.57 | 148047.57 | |
| Deepwater Warehouse | Fieldwood | 71245.C | | DWW-YARD | STAND;MFR:TRENDSETTER,PN:A1004704 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 172450 | 344900 | |
| Deepwater Warehouse | Fieldwood | 71312.A | | DWW-YARD | KIT;MFR:TRENDSETTER ENG.,PN:KIT CONSISTS OF PART NUMBERS A1002599,A1002512,A1002606,TYP TOOL,COMPRISING 6/046 GASKET REPLACEMENT TOOL KIT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 100500 | 201000 | |
| Deepwater Warehouse | Fieldwood | 71313.A | | DWW-YARD | KIT;MFR:TRENDSETTER ENG.,PN:PART NUMBERS CONSISTING OF A1002599,A1002977,A1002993,TYP TOOL, GASKET,SPEC 10/063 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 105595 | 211190 | |
| Deepwater Warehouse | Fieldwood | 71398.A | | BW-R8-FL | LINER;MFR:SUPERIOR,PN:651-014-D100,APPLI ENGINE CYLINDER | | NEPTUNE | EA | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71400.A | | OS-R3-53 | RING, PISTON;MFR:SUPERIOR,PN:651-763-000,APPLI ENGINE,SPEC SET | | NEPTUNE | EA | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71401.A | | OS-R3-51 | PUMP;MFR:CATERPILLAR,PN:137-1339,TYP WATER,EQ MODEL:3412 | | NEPTUNE | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71402.A | | OS-R3-53 | PUMP;MFR:CATERPILLAR,PN:7N6128,TYP FUEL TRANSFER,APPLI ENGINE,EQ MODEL:3412 | | NEPTUNE | EA | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71403.A | | OS-R3-52 | BEARING ASSEMBLY;MFR:SUPERIOR,PN:650-909-006,TYP UPPER, LOWER,SPCL FEATRS QTY: 2 | | NEPTUNE | EA | | | 11 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 71404.A | | OS-R3-S2 | BEARING ASSEMBLY;MFR:SUPERIOR,PN:650-908-000,TYP UPPER, LOWER,SPCL FEATRS QTY: 2 | | NEPTUNE | EA | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71407.A | | OS-R3-S3 | BEARING ASSEMBLY;MFR:SUPERIOR,PN:650-909-101,TYP UPPER, LOWER,SPCL FEATRS QTY: 2 | | NEPTUNE | EA | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71567.A | | BW-R5-3 | VALVE, CONTROL;MFR:EDGEN MURRAY,PN:204824-7,VLV SZ 3 IN,CONN TYP RF,OPRTG PRESS 20 PSIG,BOY MATL CS ASTM A216 GR WCC,TRIM CAGE: SS ASTM A351 CF8M/316, SHAFT: ENP SS ASTM A564 630 (1075), ECCENTRIC PLUG: SS 316 | 203563 | Rio Grande Spares | EA | | | 1 | | 9116 | 9116 | | |
| Deepwater Warehouse | Fieldwood | 71568.A | | MW-R16-3 | VALVE, CONTROL;MFR:EDGEN MURRAY,PN:204823-1,TYP BUTTERFLY, 150 RF FISHER-CVN,1052-8560,VLV SZ 6 IN,CONN TYP RF,DSGN RTNG CL 150,BOY MATL CS | 203563 | Rio Grande Spares | EA | | | 0 | | 11523 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71569.A | | MW-R17-1 | VALVE, RELIEF;MFR:EDGEN MURRAY,PN:204879-4MFR: ANDERSON GREENWOOD,VLV SZ 1 X 2 IN,SET PRESS 260 PSIG,REF:102 JBS-E-15-OR-J | 203563 | Rio Grande Spares | EA | | | 0 | | 6692 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71571.A | | MW-R17-1 | VALVE, RELIEF;MFR:EDGEN MURRAY,PN:204879-8MFR: AGCO,VLV SZ 1 X 2 IN,CONN TYP RF,SPCL FEATRS DESIGN RATING: CL 150,REF:1E2JOS-E315 | 203563 | Rio Grande Spares | EA | | | 0 | | 3830 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71572.A | | DWW-YARD-C-VAN CPU 03011222G1 | LEAD, ELECTRICAL;MFR:OCEANEERING,PN:445521,TYP FLYING LEAD (EFL),TERM TYP 12 WAY,LEAD OVRL LG 180 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 23466 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71589.A | | BW-R7-3 | ASSEMBLY;MFR:SUPERIOR,PN:1050,SZ 10.5 IN,COMPRISING ROD, PISTON,APPLI COMPRESSOR | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71592.A | | BW-R8-1 | ASSEMBLY;MFR:SUPERIOR,PN:1250,SZ 12.5 IN,COMPRISING ROD, PISTON,APPLI COMPRESSOR | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71815.A | | MR-3-F | 7 WAY TEST CONNECTOR , 1 TYP MALE CONNECTOR, MFR: ODI, PN: 1037413 | | | EA | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71837.B | | DWW-YARD | ASSEMBLY;MFR:GRAND OIL TOOL SHIPYARD INC.,PN:465856977,TYP TURBINE EXTRACTION SUPPORT | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71839.A | | OS-R2-FL | KIT;MFR:SOLAR TURBINES,PN:FT10611-102,TYP TOOL | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 72252.A | | LINEAR CONTROLS, LA | ARIEL CYLINDER AND 2 PALLET PARTS | | THUNDERHAWK | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 72253.A | | BW-AREA 2 | CRATE WITH REBUILT CRANKSHAFT, SLEEVE BEARINGS AND THRUST PLATE | | THUNDERHAWK | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 72421.C | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:043375J,14 WAY, 11 LINE,LG 100 m,STEEL | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 148918.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 72491.A | | MW-R20-FL | VALVE, BALL;MFR:AKER,PN:6" B8A31MFR: MOMA,CONN 1 SZ 6 IN,CONN 1 TYP RF,CL 300,S/N:012-15001001 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 38479 | 38479 | | |
| Deepwater Warehouse | Fieldwood | 72492.A | | MW-R19-1 | VALVE, BALL;MFR:AKER,PN:6" A8A71MFR: MOMA,CONN 1 SZ 6 IN,CONN 1 TYP RF,CL 150,S/N:2-15022601 & 27QUA-15022602 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 25459.85 | 50919.7 | | |
| Deepwater Warehouse | Fieldwood | 72493.A | | MW-R19-FL | VALVE, BALL;MFR:AKER,PN:8" B8A31MFR: MOMA,CONN 1 SZ 8 IN,CONN 1 TYP RF,CL 300,S/N:27QUA-15022501 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 55370.2 | 55370.2 | | |
| Deepwater Warehouse | Fieldwood | 72495.A | | BW-R6-2 | BODY;MFR:OIL STATES,PN:PD16769,TYP FORGING,DIM 8 IN,S/N:14468 ,W/ FLANGE FORGING (8 IN PROD SCR, SN: 9080-1, 9080-2), TEST COUPON FORGING/ROUGH MACHINING (8 IN PRODUCTION, SN: 003) | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 305035.48 | 305035.48 | | |
| Deepwater Warehouse | Fieldwood | 72496.A | | MR-3-F | SIMULATOR;MFR:AKER,PN:10189751,APPLI ACOUSTIC DETECTOR,S/N:SIM-13-11-12126 | 203563 | Rio Grande Spares | EA | | | 0 | | 9284 | 0 | | |
| Deepwater Warehouse | Fieldwood | 72497.A | | MR-3-F | SIMULATOR;MFR:AKER,PN:10189475,APPLI ACOUSTIC SAND DETECTOR,S/N:SIM-13-11-12127 | 203563 | Rio Grande Spares | EA | | | 0 | | 9284 | 0 | | |
| Deepwater Warehouse | Fieldwood | 72498.A | | MR-3-F | SIMULATOR;MFR:AKER,PN:10233298MFR: ROXAR,SPCL FEATRS DIGITAL PSI/TEMP,S/N:22560-02.01 | 203563 | Rio Grande Spares | EA | | | 0 | | 4318 | 0 | | |
| Deepwater Warehouse | Fieldwood | 72499.A | | BW-AREA 2 | PUMP;MFR:MILTON ROY,PN:S32H238/CS2,FLW RATE 129 GAL/HR,INLET CONN TYP NPT,OUTLT CONN TYP NPT,OPRTG PRESS 3450 PSI | 203563 | Rio Grande Spares | EA | | | 1 | | 94000 | 94000 | | |
| Deepwater Warehouse | Fieldwood | 72637.A | | MW R16-3 | CLAMP;TYP FLEXIBLE JUMPER HEAD,DIM N/A,MATL N/A,MATL GR N/A,APPLI 1 SET CONSISTS OF 2 PIECES / WITH ANODES,SPEC SWL 5.4 T | 203925 | Big Bend Riser Gap Lift Swap | EA | | | 2 | | 23690 | 47380 | | |
| Deepwater Warehouse | Fieldwood | 72639.A | | BW-AREA 2 | PUMP, DIAPHRAGM;MFR:MILTON ROY,PN:MCM091-BLPGCFEAMP5T33C,OPRTG PRESS 15 GPH AT 10000 PSI,SPEC 3/4 IN MP CONNECTIONS, 115V XP ELECTRONIC ACTUATORS, DOUBLE BALL CHECKS, RUPTURE DETECTION W/GAUGE,STD 301SS DIAPHRAGMS,MFR:, | 203563 | Rio Grande Spares | EA | | | 1 | | 150000 | 150000 | | |
| Deepwater Warehouse | Fieldwood | 72926.A | | MW-AREA 6 | ASSEMBLY;MFR:CAMERON,PN:2207813-31,TYP INSERT RETRIEVABLE,COMPRISING PLUG, SPECIAL GROOVED CAGE,SPCL FEATRS EQUAL 100 PCT CV TRIM, 7 IN NOSE ON INSERT,APPLI SUBSEA CONTROL CHOKE 10K,EQ MODEL:CC40SR | 203563 | Rio Grande Spares | EA | | | 0 | | 87145 | 0 | | |
| Deepwater Warehouse | Fieldwood | 72986.C | | DWW FRONT YARD | ASSEMBLY;MFR:TRENDSETTER,PN:TE--101277-00MFR: FREUDENBERG,TYP LOWER,COMPRISING (2) HUBS/PLET, (2) PLETS/WELL, (2) WELL | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 33710.32 | 67420.64 | | |
| Deepwater Warehouse | Fieldwood | 73016.A | | DWW-YARD | ASSEMBLY;MFR:MURPHY,PN:61192,TYP 4 PART SPREADER BAR W/SLINGS,DIM 82 LONG X 52 WIDTH IN,SPEC MAX LIFTING CAPACITY 8 TONS | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 73029.B | | MW-R21-2 | ASSEMBLY;MFR:OCEANEERING,PN:0429337-MODMFR: OIE,TYP (27) WAY CAP,COMPRISING 27 X 1/2 HUNTING RS FEMALE VP COUPLER, ROV PANEL, (2) TWO 3-WAY BALL VALVE, 17H DUAL PORT HOT STAB RECEPTACLE,SPCL FEATRS YIELD: 10 KSI,APPLI M2 REMOVABLE PLATE | | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 74161.31 | 74161.31 | | |
| Deepwater Warehouse | Fieldwood | 73035.A | | MW-R20-FL | VALVE, CONTROL;MFR:MASONEILAN,PN:FVP110,VLV SZ 3",APPLI POSITIONER | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 73375.A | | MR-4-D | RING, BACK-UP;MFR:BAKER HUGHES,PN:H056226100,TYP V,ID 2.366 IN,OD 2.74-2.75 IN,SPCL FEATRS LENGTH: 0.188 IN, INTER COMPANY PURCHASES MUST HAVE BATCH OR APPROVED CERTIFICATIONS W/SHIPMENTS REGULATED TRACEABLE C1 CRITICAL TO | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 216.8 | 216.8 | | |
| Deepwater Warehouse | Fieldwood | 73378.A | | MR-4-D | RING, BACK-UP;MFR:BAKER HUGHES,PN:H0A0161400,ID 1.662 IN,OD 1.826 IN,THK 0.48 IN,SPCL FEATRS LENGTH: 0.78 IN, W/SCARF 45-DEG CONCAVE CRITICAL BATCH MANAGED,MN:BPS-F202/PE30,MN SERIES 100 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 87.2 | 87.2 | | |
| Deepwater Warehouse | Fieldwood | 73999.A | | BW-AREA 2 | PLATE;MFR:ALFA LAVAL,PN:30110-69630,MATL SS,THK 0.5-0.6 mm,SPCL FEATRS W/ (287) TI PLATES, 0.5 MM NBRP CLIP-AD GASKETS,APPLI HEAT EXCHANGER,MN:MX25-MFD | | THUNDERHAWK | EA | | | 3 | | 0.01 | 0.03 | | |
| Deepwater Warehouse | Fieldwood | 74001.A | | BW-RS-1 | FLANGE;TYP BLIND,DIM DIA 6 IN,CONN SZ N/A,CL 2500,MATL N/A,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 74002.A | | BW-RS-1 | FLANGE;TYP BLIND,DIM DIA 8 IN,CONN SZ N/A,MATL N/A,MATL GR N/A,MN:SERIES 1500 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 74003.A | | BW-RS-1 | FLANGE;TYP BLIND,DIM DIA 8 IN,CONN SZ N/A,MATL N/A,MATL GR N/A,MN:SERIES 150 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 74004.A | | MW-R19-1 | CENTRALIZER;TYP COLUMN PIPE,CASNG SZ N/A,ID N/A,OD N/A,LG N/A,MATL N/A,HOLE SZ N/A,CONN TYP N/A | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 74006.A | | BW-AREA 1 | PLATE;MFR:ALFA LAVAL,PN:30110-69626,SPCL FEATRS W/ (163) TI PLATES, 0.7 MM NBRP GLUED ON GASKETS,APPLI HEAT EXCHANGER,MN:MX25-BFD | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74100.C | | BW-R11-FL | PUMP, INJECTION;MFR:CHECKPOINT PUMPS,PN:P8412HCNQ3,TYP ASSEMBLY, DOUBLE ACTING,FLW RATE 12 IN,SPCL FEATRS MATERIAL: SS 31 XWL, CYLINDER, CER PLUG (MATERIAL: TFE/PEEK/PK),MFR:CHECKPOINT PUMPS,MN:8400 | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 74124.B | | MR-GENERAL | COMPUTER;MFR:AKER,PN:B815-000731-05MFR: PANASONIC,TYP LAPTOP,BRAND:TOUGHBOOK,BRAND:UNKNOWN | | | EA | | | 0 | | 5792.315 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 74178.A | | DWW-YARD-C-VAN 1339199 | MTR, ELEC,MFR:EDGEN MURRAY,PN:MTR-30-18-TE-286TC-841-BP,HP 30,RPM 1800,VOLT 120,SPCL FEATRS C FACE HORIZONTAL, SPACE HEATERS IN ACCORDANCE WITH BALDOR/BP,MFR:RELIANCE,MN:841XL,TAG:PBA-6205,PBA-6206,PBA-6207 | 203563 | Rio Grande Spares | EA | | | 1 | | 5300 | 5300 | |
| Deepwater Warehouse | Fieldwood | 74179.A | | DWW-YARD-C-VAN 1339199 | MTR, ELEC,MFR:EDGEN MURRAY,PN:MTR-15-18-TE-254TC-841-BPMFR: BALDOR,HP 15,RPM 1800,VOLT 120,FR 254TC,SPCL FEATRS C-FACE HORIZONTAL, SPACE HEATERS, IN ACCORDANCE WITH BALDOR/BP,MFR:RELIANCE,MN:841XL,TAG:PBA-6441 THRU PBA-6249 | 203563 | Rio Grande Spares | EA | | | 1 | | 4200 | 4200 | |
| Deepwater Warehouse | Fieldwood | 74189.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:3K4JLT-J85-E15-1/5PL,VLV SZ 3 X 4 IN,SET PRESS 245 PSIG,TAG:PSV-4070A AND PSV-4080A | 203563 | Rio Grande Spares | EA | | | 0 | | 10550 | 0 | |
| Deepwater Warehouse | Fieldwood | 74190.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-1MFR: SWAGELOK,TYP MAIN SAFETY,VLV SZ 6 X 8 IN,PRESS RANGE CL 150,SET PRESS 100 PSI,OPRTD PILOT,SPCL FEATRS PILOT WETTED INTERNALS DUPLEX,MFR:EDGEN MURRAY,MN:44305868/51,REF:443 | 203563 | Rio Grande Spares | EA | | | 0 | | 18297 | 0 | |
| Deepwater Warehouse | Fieldwood | 74191.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-5,VLV SZ 1 X 2 IN,CONN TYP RTJ X RF,PRESS RANGE CL 300/1500,SET PRESS 2100 PSIG,MFR:EDGEN MURRAY,MN:85316012/51,TAG:PSV-1210A | 203563 | Rio Grande Spares | EA | | | 0 | | 9425 | 0 | |
| Deepwater Warehouse | Fieldwood | 74192.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:201822-1MFR: SWAGELOK,TYP MAIN SAFETY,VLV SZ 8 X 10 IN,PRESS RANGE CL 150,SET PRESS 250 PSIG,OPRTD PILOT,SPCL FEATRS PILOT WETTED INTERNALS DUPLEX FITTINGS, DUPLEX TUBING,MFR:EDGEN MURRAY,MN:44305T810/5PL | 203563 | Rio Grande Spares | EA | | | 0 | | 91380 | 0 | |
| Deepwater Warehouse | Fieldwood | 74193.A | | BW-R5-FL | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-2,VLV SZ 6 X 8 IN,SET PRESS 50 PSIG,MFR:EDGEN MURRAY,MN:6Q8J85-E15,TAG:PSV-2020 | 203563 | Rio Grande Spares | EA | | | 1 | | 25825 | 25825 | |
| Deepwater Warehouse | Fieldwood | 74194.A | | MW-R16-2 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-1MFR: MASONEILAN,TYP ANGLE RECIPROCATING MODIFIED LINEAR TRIM,VLV SZ 3 IN,CONN TYP RTJ,CL 900,DSGN RTNG 21-45 PSIG,OPRTG PRESS 55 PSIG,BDY MATL STEEL | 203563 | Rio Grande Spares | EA | | | 0 | | 25840 | 0 | |
| Deepwater Warehouse | Fieldwood | 74195.A | | MW-R16-2 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-3MFR: MASONEILAN,TYP ANGLE GLOBE,VLV SZ 4 IN,CONN TYP RTJ,CL 900,DSGN RTNG 3-15 PSIG,BDY MATL STEEL ASTM A216,STYL BOLTED BONNET | 203563 | Rio Grande Spares | EA | | | 0 | | 33252 | 0 | |
| Deepwater Warehouse | Fieldwood | 74195.A | | MW-R17-2 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-3MFR: MASONEILAN,TYP ANGLE GLOBE,VLV SZ 4 IN,CONN TYP RTJ,CL 900,DSGN RTNG 3-15 PSIG,BDY MATL STEEL ASTM A216,STYL BOLTED BONNET | 203563 | Rio Grande Spares | EA | | | 0 | | 33252 | 0 | |
| Deepwater Warehouse | Fieldwood | 74256.B | | BW-NEP-AREA | COOLER,MFR:ITT STANDARD,PN:SN51420604B009,TYP OIL,APPLI GLYCOL HEAT EXCHANGER | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 74267.A | | BW-R5-1 | VALVE, BALL,PN:NA,CONN 1 SZ 3 IN,CONN 1 TYP RTJ,CL 2500,BDY MATL CS,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 74268.A | | BW-R5-1 | ELBOW, PIPE,PN:NA,DEG 90,RADIUS LONG,NOM SZ 4 IN,CONN TYP BW,SCH 160,MATL CS,MATL GR A234 WPB | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 74271.B | | MW-AREA 4 | UNIT; TYPE: PETU-PORTABLE ELECTRIC TEST; MFR: CAMERON; PN: 223184-38; MFR DRG: SK-066184-25 CAMERON | 131068 | FABRICATION | EA | | | 0 | | 54199.13 | 0 | |
| Deepwater Warehouse | Fieldwood | 74288.B | | BW-R3-FL | GENERATOR,MFR:SOLAR TURBINES,PN:NEP0001,TYP CART | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 74292.B | | DWW-YARD | PLATFORM,MFR:GRAND ISLE SHIPYARD INC.,PN:3X20X150,TYP METAL GRATING, GALVANIZED,DIM 3 FT WIDE X 20 FT LONG, X 1-1/2 IN THICKNESS,MATL STEEL SUB,MFR:NOV,PN:30184443-CTM57,TYP SAVER, TDX-1250, SHOULDER TO SHOULDER,ID 4.00 IN,OD 10.00 IN,MATL CS,LG 7.35 IN,CONN TYP NC77 STRESS RELIEF PIN X CTM-57 PIN | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | |
| Deepwater Warehouse | Fieldwood | 74362.A | | DWW-YARD-C-VAN 402189 0 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204824-6,VLV SZ 8 IN,CONN TYP FULL LUG/THRU HOLE RF,OPRTD ACTUATOR/POSITIONER AIR TO OPEN, FAIL CLOSE, 100 PSIG,AIR SUPPLY,TRIM ROTARY/HARD FACED SEAT, ECCENTRIC PLUG,BDY MATL STEEL | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 7029.9 | 14059.8 | |
| Deepwater Warehouse | Fieldwood | 74397.B | | MR-GENERAL | PIG, PIPE,MFR:KNAPP POLY PIG,PN:GUNFLINT SPCL,TYP ULTRASEAL LITE CRISS-CROSS,DIM 6.75 IN | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 637.5 | 637.5 | |
| Deepwater Warehouse | Fieldwood | 74398.B | | MR-GENERAL | PIG, PIPE,MFR:KNAPP POLY PIG,PN:GUNFLINT SPCL V2,TYP ULTRASEAL LITE BR,DIM 6.75 IN | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 918.75 | 918.75 | |
| Deepwater Warehouse | Fieldwood | 74438.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-7,CONN SZ 1 IN 1500LB RTJ X 2 IN 300LB RF,SET PRESS 2100 PSIG,BDY MATL CS,SPEC TAG: PSV-1010,MFR:EDGEN MURRAY,MN:85316012/5 | 203563 | Rio Grande Spares | EA | | | 0 | | 9425 | 0 | |
| Deepwater Warehouse | Fieldwood | 74442.A | | MW-R17-2 | VALVE, BUTTERFLY,MFR:EDGEN MURRAY,PN:204824-6,VLV SZ 8 IN,DSGN RTNG 150,CONN TYP FULL LUG/THRU HOLE RF,OPRTD ACTUATOR/POSITIONER AIR TO OPEN, FAIL CLOSE, 100 PSIG AIR SUPPLY,TRIM ROTARY/HARD FACED SEAT, ECCENTRIC PLUG,BDY MATL STEEL | 203563 | Rio Grande Spares | EA | | | 0 | | 9460 | 0 | |
| Deepwater Warehouse | Fieldwood | 74486.A | | MW-R17-3 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-8,TYP GLOBE RECIPROCATING MULTI STAGE 4 PLUG RATED CV 3,VLV SZ 1 IN,CONN TYP RTJ,CL 1500,OPRTG PRESS 38-45 PSIG BENCH SET, AIR TO OPEN, FAIL CLOSE, 50 PSIG AIR SUPPLY,BDY MATL STEEL, A216 | 203563 | Rio Grande Spares | EA | | | 0 | | 20477 | 0 | |
| Deepwater Warehouse | Fieldwood | 74547.A | | BW-R5-3 | VALVE, CONTROL,MFR:MASONEILAN,PN:35-35212,TYP GLOBE ROTARY,VLV SZ 6 IN,CONN TYP RF FLANGE,CL 150,BDY MATL A216 WCC,TRIM LINEAR, RATED CV 500,OPRTN MTHD FIELDBUS INPUT, AIR TO OPEN, FAIL CLOSE,SPCL FEATRS TAG LV-1040B | 203563 | Rio Grande Spares | EA | | | 1 | | 14675 | 14675 | |
| Deepwater Warehouse | Fieldwood | 74673.A | | MR-GENERAL | ADAPTOR,MFR:GRAYLOC,PN:H00123-482,CONN 1 TYP 1502 FEMALE,LG 5.25 IN,DIM DIA 1.61 IN,MATL AISI 4140,SPCL FEATRS 2 GR14 2 WECO, 100K,APPLI 15000 PSI MAX SERVICE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 2385 | 2385 | |
| Deepwater Warehouse | Fieldwood | 74674.A | | MR-GENERAL | CLAMP,MFR:GRAYLOC,PN:A90148-SWB,TYP (2) PIECE,DIM LG 5.25 IN,SPCL FEATRS THREAD: 3/4-10 UNC, W/ (4) BOLTING, STUD (ASME SA193 B7/(2) NUT (ASTM A194 2H), SPH FACE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 202 | 202 | |
| Deepwater Warehouse | Fieldwood | 74792.B | | MR-3-B | GASKET;MFR:CAMERON,PN:2035804-08,TYP ASSEMBLY,NOM SZ 6 IN,PRESS RTNG 10000 PSI, MN:SERIES 5-AX | | | EA | | | 3 | | 2907.75 | 8723.25 | |
| Deepwater Warehouse | Fieldwood | 74921.B | | BW-AREA 2 | PUMP;MFR:BORNEMANN PUMPS INC.,PN:W6.5ZK-37,TYP WET OIL,FLW RATE 171.6 GAL/MIN,RPM 1700 | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 75139.C | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:0205858,HYDRAULIC, 7 LINE,275 FEET | 127682 | VK 917 1 ST2 DRILL | EA | | | 1 | | 20000 | 20000 | |
| Deepwater Warehouse | Fieldwood | 75140.C | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:0205859,HYDRAULIC, 11 LINE,150 FEET | 127682 | VK 917 1 ST2 DRILL | EA | | | 1 | | 20000 | 20000 | |
| Deepwater Warehouse | Fieldwood | 75149.A | | MW-R15-3 | JUNCTION PLATE, SUBSEA;MFR:OCEANEERING,PN:423604,TYP 14 WAY FIXED,SPCL FEATS PO: GUN-SS-NEI-PRO-POR-0003 / 6.11, SPEC: 5-110113-001,APPL GUNFLINT SURPLUS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 34780 | 34780 | |
| Deepwater Warehouse | Fieldwood | 75150.A | | MR-GENERAL | KIT;MFR:AKER,PN:10236989,TYP ELECTROSTATIC DISCHARGE SIMULATOR,SPCL FEATRS PO: BBD-SSNEI-PRO-POR-0011, SPEC: 5-317793-1, B-1263927S,APPLI BIGBEND SURPLUS | 203563 | Rio Grande Spares | EA | | | 0 | | 35000 | 0 | |
| Deepwater Warehouse | Fieldwood | 75151.A | | MR-GENERAL | CONTROL;MFR:AKER,PN:BB13-060176-18,TYP ICON TOPSIDE 1200 DUAL CHANNEL ELECTRIC,SPCL FEATRS SPEC: S-1401/B/MS201, B-1204S660, PO: BBD-SSNEI-PRO-POR-0011,APPLI BIGBEND/DANZLER SURPLUS | 203563 | Rio Grande Spares | EA | | | 0 | | 3000 | 0 | |
| Deepwater Warehouse | Fieldwood | 75152.A | | MR-GENERAL | CONTROL;MFR:SCHLUMBERGER,PN:BB15-KM1245-02,TYP ICON SEM,SPCL FEATRS PO: BBD-SSNEI-PRO-POR-0011, SPEC: 5-434, B-1275892T,APPLI ESLICDHPT SUBSEA, BIGBEND/DANZLER SURPLUS | 203563 | Rio Grande Spares | EA | | | 0 | | 14000 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 75153.A | | MR-4-D | GAUGE;MFR:SCHLUMBERGER,PN:10195207,TYP DOWNHOLE PRESSURE TEMPERATURE,APPLI ESLIC, BIGBEND/GOM SURPLUS,SPEC PO: BBD-SSNEI-PRO-POR-0011, SPEC: 5-B57, B-11762839 | 203563 | Rio Grande Spares | EA | | | 1 | | 14000 | 14000 | |
| Deepwater Warehouse | Fieldwood | 75328.A | | BW-AREA 1 | TOOL;MFR:SOLAR TURBINES,PN:3A461/2,APPLI ENGINE LIFT | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 75328.B | | BW-AREA 1 | TOOL;MFR:SOLAR TURBINES,PN:3A461/2,APPLI ENGINE LIFT | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 75330.A | | MW-AREA 6 | KIT;MFR:SOLAR TURBINES,PN:3A461,APPLI COMPRESSOR ENGINE REMOVAL | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 75413.A | | MW-R16-3 | VALVE, RELIEF;MFR: ANDERSON GREENWOOD,VLV SZ 3 X 4 IN,CONN TYP RTJ X RF,PRESS RANGE 300/900 lb,SET PRESS 2025 PSIG,OPRTD N/A,BDY MATL N/A,MATL GR N/A,MFR:ANDERSON GREENWOOD,MN:85314K34/SPL,MN:PSV-1010 | 203563 | Rio Grande Spares | EA | | | 0 | | 36013 | 0 | |
| Deepwater Warehouse | Fieldwood | 75414.A | | MW-R16-3 | VALVE, RELIEF;MFR:ANDERSON GREENWOOD,PN:204879-10,VLV SZ 4 X 6 IN,CONN TYP RTJ X RF,PRESS RANGE 300/900 lb,SET PRESS 2025 PSIG,OPRTD PILOT,BDY MATL DUPLEX SS,MATL GR 4A,MATL SPEC ASME SA995,ORFC SZ 2.853 IN,STD API,MN:PSV-1030 | 203563 | Rio Grande Spares | EA | | | 0 | | 33874 | 0 | |
| Deepwater Warehouse | Fieldwood | 75637.A | | MW-R8-2 | O RING;MFR:BAKER HUGHES,PN:HWW8130V45,INDUS STD 130,MATL FKM (95), VITON (45),APPLI C1 CRITICAL TO HSE CRITICAL BATCH,STD AS 569,REF:B201 | | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 22 | 22 | |
| Deepwater Warehouse | Fieldwood | 75638.A | | MR-S-D | O RING;MFR:BAKER HUGHES,PN:HWW8214V45,INDUS STD 214,MATL FKM (95), VITON (45),APPLI C1 CRITICAL TO HSE CRITICAL BATCH,STD AS 569,REF:B201 | | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 15.24 | 15.24 | |
| Deepwater Warehouse | Fieldwood | 75639.A | | MW-R8-2 | PACKING, PREFORMED;MFR:BAKER HUGHES,PN:H0S6226200,ID 2.362 IN,OD 2.763 IN,SPCL FEATRS CRITICAL BATCH MANAGED, W/O.188 IN LG C1 CRITICAL TO HSE, SIZE: 2.75 IN,APPLI PACKING UNIT SUB-ASSEMBLY,BRAND:CHEVRON,BRAND UNKNOWN,REF:BPS-F101/T90 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 74.2 | 74.2 | |
| Deepwater Warehouse | Fieldwood | 76004.B | | MW-R16-FL | COVER;MFR:OCEANEERING,PN:0440030,TYP LONG TERM PROTECTIVE,SPCL FEATRS W/ LOOP AUX PLATE, M1 TYPE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 49296 | 0 | |
| Deepwater Warehouse | Fieldwood | 76263.B | | BW-R7-3 | PUMP, SUBMERSIBLE;MFR:S&N PUMPS,PN:9504,APPLI SEA WATER LIFT,MFR:S&N PUMPS,MN:KM40D-2MFR:S&N PUMPS,MN:NU911-2/75 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76349.B | | OS-GENERAL | SERVER, AUTOMATIC DATA PROCESSING;MFR:DELL,PN:7596361 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76351.B | | OS-GENERAL | SERVER, AUTOMATIC DATA PROCESSING;MFR:DELL,PN:8596361 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76393.B | | BW-NEP-AREA | PUMP ASSEMBLY;MFR:BAKER HUGHES,PN:SE5257HZ11,APPLI PIPELINE PUMPS,STD THRUST CHAMBER | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76396.B | | OS-R2-S2 | COMPUTER;MFR:SCHNEIDER ELECTRIC,PN:3715-0153110015006,TYP FLAT PANEL INDUSTRIAL,MFR:,SERIES/VERSION:3700,MN:371ST | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76398.B | | OS-R2-S2 | COMPUTER;MFR:SCHNEIDER ELECTRIC,PN:471S-1010310230030,TYP FLAT PANEL INDUSTRIAL,MFR:,SERIES/VERSION:4700,MN:471ST | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76539.B | | DWW-YARD | TRAY, CABLE;MFR:ENDURO,PN:EH16-18-09-20,DIM WD 18 IN X LG 20 FT,MN:ENDURO CLASS 20 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76551.A | | MW-R17-1 | VALVE, RELIEF;MFR:ANDERSON GREENWOOD,PN:204879-10,VLV SZ 4 X 6 IN,TYP PILOT OPERATED,VLV SZ 4 IN,SPEC 204879-9,MFR:,SERIES/VERSION:463,TAG:PSV-1300 PIPE, PVC;PN:1015,NOM PIPE SZ DESGNTN 10 IN,80,LG 15 ft,SPCL FEATS ORIGINALLY A 20 FT JOINT, BELIEVED TO BE SPEARS PVC PIPE PART NUMBER 1828 | 203563 | Rio Grande Spares | EA | | | 0 | | 10063 | 0 | |
| Deepwater Warehouse | Fieldwood | 76741.B | | DWW-YARD | CAP;MFR:OCEANEERING,PN:0429335,TYP 26 LINE LOGIC, (27) WAY,CONN TYP FEMALE,APPLI M2 REMOVABLE PLATE EQUIPED WITH 26 X 0.5 HUNTING RS,SPCL FEATRS VP COUPLER, PRESSURE: 10000 PSI | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 77341.B | | MW-R15-FL | CAP;MFR:OCEANEERING,PN:0429336,TYP 22 LINE LOGIC, (27) WAY,CONN TYP FEMALE,APPLI M2 REMOVABLE PLATE EQUIPED WITH 22 X 0.5 HUNTING RS,SPCL FEATRS VP COUPLER, PRESSURE: 10000 PSI | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 58431 | 58431 | |
| Deepwater Warehouse | Fieldwood | 77342.B | | MW-R15-FL | CAP;MFR:OCEANEERING,PN:0429336,TYP 22 LINE LOGIC, (27) WAY,CONN TYP FEMALE,APPLI M2 REMOVABLE PLATE EQUIPED WITH 22 X 0.5 HUNTING RS,SPCL FEATRS VP COUPLER, PRESSURE: 10000 PSI | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 58431 | 58431 | |
| Deepwater Warehouse | Fieldwood | 77415.B | | BW-AREA 2 | PUMP;MFR:DURCO,PN:2X3X1.5-13RV,TYP CENTRIFUGAL,INLT SZ 3 IN,OUTLT SZ 1.5 IN,APPLI HP FLARE SCRUBBER,MFR:,SERIES/VERSION:MK 3 STD | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 77616.B | | MR-GENERAL | STUD ASSEMBLY;MFR:FASTENAL,PN:15826.75,DIA 1-5/8 IN,THD NC,LG 26-1/4 IN,STUD MATL CS,MATL GR A193,CL B7,NUT QTY 2,NUT TYP HEX HEAD,NUT GR 2H,NUT MATL CS,APPLI FOR BLEED RING ON FASTNAL 6040 PUMP | | THUNDERHAWK | EA | | | 8 | | 0.01 | 0.08 | |
| Deepwater Warehouse | Fieldwood | 77898.A | | MW-R8-2 | ASSEMBLY;MFR:OCEANEERING,PN:990541313,TYP ANODE CLAMP,SPCL FEATRS W/ 3/8 IN DIA X 6 FT WIRE ROPE,OCEANEERING,REF:DWG. NO. 990541276 | 143752 | MC 948 GUNFLINT COMPLETION/L | EA | | | 1 | | 4500 | 4500 | |
| Deepwater Warehouse | Fieldwood | 77955.A | | MW-AREA 4 | PLATE, ASSEMBLY;MFR:AKER,PN:1005550I,TYP OB, TEST / FLUSH 4-WAY CROSSHEAD;MFR:CAMERON,PN:620-021-001,TYP GUIDE, WS,APPLI WH 64 COMPRESSOR | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 36612 | 36612 | |
| Deepwater Warehouse | Fieldwood | 78188.B | | DWW-YARD | COMPRESSOR | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78194.C | | MW-R18-2 | ASSEMBLY;MFR:SOLAR TURBINES,PN:219477-103,TYP OUTER EXHAUST CONE | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78227.A | | MW-AREA 3 | PUMP ASSEMBLY;MFR: BORNEMANN PUMPS,INC.,MFR: RELIANCE,TYP N/A,SZ N/A,SPEC W/ MOTOR (50 HP, 1800 RPM, 841XL, TEFC, 3/60/460, 3260T),MN:W6.5ZK-37 EXECUTION 16,TAG:PBA-6065, PBA-6060 | 203563 | Rio Grande Spares | EA | | | 1 | | 64575 | 64575 | |
| Deepwater Warehouse | Fieldwood | 78304.B | | BW-AREA 1 | PUMP ASSEMBLY;MFR:PEERLESS,PN:10LB-2,TYP 2 STAGE,SPEC BALLAST, MATERIAL: CAST BRONZE, 1ST STAGE 7.4 IN, 2ND STAGE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78305.B | | DWW-YARD | SKID;MFR:DOLPHIN SERVICES LLC,PN:JN12483,SPCL FEATRS TABLE,APPLI GENERATOR CHANGE OUTE | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78391.B | | MW-R18-1 | TOOL KIT;MFR:SOLAR TURBINES,PN:FT20060-100,TYP LIFT,APPLI FOR GEARBOX C40-T60 | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 78486.B | | DWW-YARD | PIPE,NOM SZ 4 IN,OD 4.5 IN,SCH 80,WALL THK 0.337 IN,WT 14.98 lb/ft,MATL CS,MATL GR ASTM A106,GR B,PROCESS SEAMLESS,END CONN PE8,LG SRL | | NEPTUNE | FT | | | 38 | | 0.01 | 0.38 | |
| Deepwater Warehouse | Fieldwood | 78487.B | | DWW-YARD | PIPE,NOM SZ 3 IN,OD 3.5 IN,SCH 80,WALL THK 0.300 IN,WT 10.25 lb/ft,MATL CS,MATL GR ASTM A106,GR B,PROCESS SEAMLESS,END CONN PE8,LG SRL | | NEPTUNE | FT | | | 22 | | 0.01 | 0.22 | |
| Deepwater Warehouse | Fieldwood | 78510.B | | MW-R16-3 | ASSEMBLY;MFR:AKER,PN:10217716,COMPRISING (12 WAY), (12) LINE) FIXED JUNCTION PLATE, INBOARD TEST AND FLUSHING | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 14969.81 | 14969.81 | |
| Deepwater Warehouse | Fieldwood | 78522.B | | DWW-YARD | ANGLE, STRUCTURAL;WD 3 X 3 IN,MATL THCK 1/4 IN,WT 4.9 LB.FT,LG 20 FT,MATL MS ASTM A36,PROCESS HOT ROLLED,SURF TRTMNT HOT DIPPED GALVANIZED | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 79835.A | | BW-NEP-AREA | PUMP;MFR:PUMP WORKS,PN:330-00112-1000,DIM 6 IN,INLT SZ 1 IN,OUTLT SZ 1.5 IN,MFR:PUMP WORKS,MN:PWA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 80019.B | | BW-R2-FL | PUMP;MFR:MILTON ROY,PN:PN96(115)R40H131/BI.CS.VV2,TYP METHANOL,FLW RATE 129 GAL/HR,OPRTG PRESS 1900 PSI | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 80022.B | | BW-AREA 2 | PUMP;MFR:MILTON ROY,PN:PF146(175)S(AA)32H238DX/BI.CS.VV2,TYP METHANOL,FLW RATE 129 GAL/HR,OPRTG PRESS 3451 PSI | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 80026.B | | BW-R2-FL | MTR, ELEC,MFR:RELIANCE,PN:7407345-001,TYP P,HP 30,RPM 1765,VOLT 460,FR 286TC,HZ 60,AMP 36.1 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 81034.A | | BW-AREA 1 | DUCT,MFR:SOLAR TURBINES,PN:1091389-101,TYP EXPANSION KIT,DIM 36 INCH | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 81057.A | | BW-NEP-AREA | BATTERY,MFR:GNB,PN:3-100G31,TYP VRLA STACKABLE,VOLT 6,CURRENT CPCTY 1900 NOM AH CAP (100HR),DIM 8.59 IN W X 40.25 IN LG X 26.38 H,APPLI PHOTOVOLTAIC,BRAND:ABSOLYTE GP,MFR:GNB,MN:M870121001301A4ALV | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 82828.A | | | CLAMP,TYP TUBING PROTECTOR,SZ 6.675 IN,DIM LG 25.25 IN,OD 9.11 IN,MATL LOW CS,MATL SPEC ASTM A1011,SPCL FEATRS W/ DUAL CHANNELS AND BEVELED ENDS,APPLI OVER THE COUPLING, (1) LEFT CHANNEL (OD: 1.525 IN), (1) LEFT TO RIGHT UMBILICAL CHANNEL | | GUNFLINT #4 STIMULATION | | | | 160 | | 149.7 | 23952 | |
| Deepwater Warehouse | Fieldwood | | | N/A | 1-Blue Conex Box with Subsea Parts and Accessories-BENNU, ID 000686-3A | 206595 | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 07248.A | | MW-10-2 | GASKET, RING JOINT,CODE:VX-2,MATL:SS,MATL GR:316,CL:15000PSI,APPLI:WELLHEAD (SIZE: 18-3/4IN),MFR:VETCO GRAY,PN:111053-1,EQ MODEL:MS-700 | AFE FW193004 | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 57731.A | | MW-10-2 | GASKET,MFR:VETCO GRAY,PN:H10993-2,TYP VGX-2,PRESS RTNG 15000 PSI,DIM 18.75 | AFE FW193007 | TROIKA | | | | 3 | | 4683 | 14049 | |
| Deepwater Warehouse | Fieldwood | 56483.A | | N/A | Seal: MFR: FMC Technologies, PN:73-694-037, MATL Metal | | | | | | 0 | | 6322.07 | 0 | |
| Deepwater Warehouse | Fieldwood | 56480.A | | N/A | Seal, MFR: FMC Technologies, PN: P1000062046, MATL Metal | | | | | | 0 | | 14454.29 | 0 | |
| Deepwater Warehouse | Fieldwood | 50706.A | | MW - AREA 3 | ASSEMBLY, TYP: TUBING HANGER, SZ: 5 1/2 IN, 29.70 VAM TOP, CL: HH MATL GR: ASTMA182-F6NM,COMPRISING:(1) DHPT, (3) CID, (3) DLP, (2) SV,SPCL FEATRS: 15,000 PSI W/O CROWN PLUGS, MFR; FMC TECHNOLOGIES; PN-P1000041325) | AFE FW205014 | GUNFLINT | | | | 1 | | 573670 | 573670 | |
| Deepwater Warehouse | Fieldwood | 50705.A | | DWW-YARD-C-VAN CPIU 0301122261 | CAP,TREE,TYP,XOV MATL:UHMW (E50114),MATL GR: HH TRIM, PRESS RTNG:15,000 PSI,APPLI:INCL; 3RD TEST BARRIER TO ANNULUS VIA HOT STAB, ANTI-BACKOFF TO LOCK MANDREL OF THE TUBING HANGER, SPEC:3S-250 DEG F TEMP RNG, MFR: FMC TECHNOLOGIES; PN: P181226 | | | | | | 1 | | 201405 | 201405 | |
| Deepwater Warehouse | Fieldwood | | | N/A | Spare FMC Crown Plug Redress Kit | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | Crown Plug | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 50704.A | | DWW-YARD-C-VAN CPIU 0301122261 | Assembly; TYP: Upper & Lower Crown Plugs, SZ-41 IN, MATL:HH TRIM, MATL GR-9CR Alloy 718,SPCL FEATRS:15k PSI; APPLI: F/Tubing HANGER, SPEC: SBMS, MFR; FMC TECHNOLOGIES, PN: P180150 | | | | | | 1 | | 146027 | 146027 | |
| Deepwater Warehouse | Fieldwood | 46459.A | | MW-R11-3 | RECEPTACLE, MALE, FIXED, 21000 IN 1/16IN, API 6A FLANGE, MODEL: UH-575-550, UNITECH, PN: 32391 | | | | | | 1 | | 82317.5 | 82317.5 | |
| Deepwater Warehouse | Fieldwood | 46462.A | | MW-R15-1 | CONNECTOR, MALE, TEST, W/9/16 AEMP, MODEL: UH-575-550, UNITECH, PN: 32623 | | | | | | 2 | | 73957.5 | 147915 | |
| Deepwater Warehouse | Fieldwood | 46460.A | | MW-R12-3 | CONNECTOR, FEMALE, FITTED W/A GRAYLOC HUB & BRACING, MODEL: UH-575-550, UNITECH, PN: 32392 | | | | | | 2 | | 132263.75 | 264527.5 | |
| Deepwater Warehouse | Fieldwood | 46466.A | | MW-R12-3 | CAP, PROTECTION, FOR FEMALE CONNECTOR UH-575/550, UNITECH, PN: 27387 | | | | | | 2 | | 8692.5 | 17385 | |
| Deepwater Warehouse | Fieldwood | 52339.A | | BW-AREA 3 | Pup Joint, Tubing: MFR: Vallourec, PN: 4' Pup Joint, NOM SZ 5 1/2" Inc, WT 29.70, MATL GR JFE HP-2 13 CRM-115, CONN TYP VAM HC, TOP CONN TYP PIN, Bot CONN TYP PIN, LG 4FT | AFE FW205014 | GUNFLINT | | | | 1 | | 2289.9 | 2289.9 | |
| Deepwater Warehouse | Fieldwood | 50737.A | | BW-AREA 3 | Pup Joint, Casing: TYP: JFE, NOM SZ 5 1/2, WT 29.70, MATL: ALLOY, MATL GR: 13 CR 115, Process; VAM Top HC Coupling, TOP CONN TYP: Box, BOT CONN TYP PIN, LF,4 FT, SPCL FEATRS: HP-2 | AFE FW205014 | GUNFLINT | | | | 1 | | 3747.845 | 3747.845 | |
| Deepwater Warehouse | Fieldwood | 84412.A | | MR-4-E | FITTING; MFR; PETRO TECHNOLOGIES, PN: 150M871 REV C,TYP SUBSEA, RUN SZ 9/16 IN MTM X 1/2 IN POTHI | 206595 | GUNFLINT #4 STIMULATION | | | | 6 | | 5314.68 | 31888.08 | |
| Deepwater Warehouse | Fieldwood | 27496.A | | DWW-YARD | CONTROL LINE, HYDRULIC, SINGLE, 0.500 IN X 0.065 WT, INCOLOY 825 MATERIAL, WELDED, ENCAPULATED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 401000000000-4_MSC | 206595 | GUNFLINT #4 STIMULATION | | | | 7000 | | 12.568795 | 87981.565 | |
| Deepwater Warehouse | Fieldwood | 62304.A | | DWW-YARD | TUBE; MFR. BAKER HUGHES, PN: H30796-13, TYP DUAL CHEMICAL INJECTION LINE FLAT PACK, OD 1/2 IN, MATL ALLOY, MATL GR 825 | 206595 | GUNFLINT #4 STIMULATION | | | | 7000 | | 15.29 | 107030 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | 4-Chiksan 3" 6000 Fup Joint (Male x Female):1-Chiksan 6000 Tee Joints (Male x Male x Female) 1-Chiksan 3" 6000 Tee Joint (Female xFemale x Male) 0-3" 150 Check Valve with Chiksan 3' 6000 Male x Female | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-R5-2 | 1-4" 150 Check Valve with Chiksan 4" 6000 Male x Female: 1-6" 150 Blind Flange: 1-6" 150 Blind Flange with 1/2 NPT Inlet; 20-Chiksan Pipe Joints (various sizes): 7-4" x 20' (4700) UHMWP Chemical Hoses: 4-4"90's: 1-4" Camel: 1-3" Camel: 12-2" Wire Rope Slings: 1-BOX (Loose NUTS, BOLTS & GASKETS) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-RS-2 | Spool Tubing | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-R4-1 | Spool Wire | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-AREA 3 | Pallet-Rack On Pallet (Must Be Stored In Upright Position) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-AREA 6 | Tubing Hanger Emergency Recovery Tool ASSY: SN 111432828-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | Tubing Hanger, STM-15, 4 1/16" x 2-1/16" NOM 10000PSI WP Special w/5 1/2 17# Reg Fox K Thd; w/2X SCSSV, 2X CI, 1X TH Controlled Landing, 1X Test Between Seals, 1XEXAL Elec Pen, PSL 3, Matl CL5 'FF' 35-250 Deg F/ SN: 11457446-1 | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R8-FL | TUBING HANGERS, P/N 2124128-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-FL | TUBING HANGER HANDLING TEST TOOLS, P/N 2124135-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R8-1 | TUBING HANGER HANDLING TEST TOOLS, P/N 2124135-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TUBING HANGER RUNNING TOOL, P/N 2124129-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | INTERVENTION CAP, P/N 2124118-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-FL | DUMMY HANGER, P/N 2124139-01, S/N 11186901-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Lead Impression Tool, P/N 2124133-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TRT Test Cap, P/N 2124620-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TRT Test Cap Test Skid, P/N 2124121-01 | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Tool Skid 8 x 8 x 7, P/N 2124137-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | 1-Box OD Spares 4 x 4 x 4 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-AREA 6 | Tree Cap Running Tool ASSY; P/N 2099720-02, SN: 26-1567 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-R9-1 | BORE PROTECTOR; P/N 2141626-10, S/N 111207432-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Orings THRT Control Line Stabs-P/N K81632-216; MFR. OneSubsea | | | | | | 23 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Back Up Ring for THRT Control Line Stabs-P/N NO 3008-216, MFR. OneSubsea | | | | | | 21 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Seal 1 3/8" OD-P/N 142895-55-01-03, MFR. OneSubsea | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Seal 5 1/2" OD-P/N 20-120919195-1, MFR. OneSubsea | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Oring-P/N 702645-45-31, MFR. OneSubsea | | | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Backup Ring-2 1/8 1037 OD-P/N NO 3008-230, MFR. OneSubsea | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Backup Ring-4 7/8" OD P/N NO 3008-249, MFR. OneSubsea | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Couplers for Gunflint 15K Manifild-P/N 0437828, MFR. OneSubsea | | | | | | 0 | | 1,000.00 each | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | 4-J Lock Tools | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Guide Funnel Components; P/N 2330216-01; S/N 0335-01 | | | | | | 1 | | 0 | 0 | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wi% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA DUMMY POD; P/N 60031331; S/N 9523237B07360 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tubing Hanger; P/N 2156145-01; S/N 11324065-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tooling; P/N 2124159-01 X2; S/N 45284821-1/S/N 45284821-4 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tooling REd Paint on Components w/NCR Stamps:TROIKA Spool Piece; P/N 2124584-01-801; S/N 45605849-1-1: | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | G2 Tubing Hanger W/Upper and Lower SSR Plugs; P/N 2055294-12; S/N 110357224-01 | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Tubing Hanger Running Tool; Tubing Hanger Running Tool Handleing Test Tool, Tubing Hanger; THRT-Cameron Rental 26-M-0128, P/N 21456145-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Adapter; P/N 100072958;S/N SST-33827 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Seal ASSY's-Three (3) Pallets:MacPac Clamps; P/N 2099099-3 X2; S/N 11196376-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Clamp; Shell ID# 24464:TROIKA Tooling; P/N 1000061862;S/N 5124-00-1: Slings; P/N 1000022786; S/N 366059-1-1: Seal Assy P/N 169220,S/N 2012-10-0589N | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | DMC Tooling P/N; P147721; S/N 2082810-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Seal Assy P/N 143264; S/N 2013-05-1451H | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tooling P/N 1000052576 x4: TROIKA Tooling P/N 1000052576 x4 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | HGR P/N 1000061862; S/N 2013-11-943H | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SEAL P/N 1000090225; S/N 82164-3 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SEAL P/N 1000086840; S/N 2008-02-1056H | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SEAL P/N 168737: S/N B4190-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | TROIKA Oil Cooler-Asset # H! 573-A G1: 1-18.75 Gasket (To be Crated for Shipping) P/N 041700-47-01:1-Sea Chest P/N 104120-0000 | | | | | | | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | 1- Test Stand P/N 0428793 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28933 | | TROIKA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28934 | | TROIKA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28799 | | TROIKA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28800 | | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28801 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28925 | | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-2 | Semi Subsea Elec Module P/N BAA-43101 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 0.16 L Diaphragm Accumulator P/N 436-29107 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Suttle Valve Assembly P/N 742-21493 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Pilot Filter Assembly P/N 115-28944 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Filter Assembly (High Pressure) P/N 125-28880 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Filter Assembly (Low Pressure) P/N 125-28882 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Anchorage Block P/N 402-28627 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 10 L Accumulator P/N 436-28711 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 2.5L Accumulator P/N 436-29710 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | Master Control Station (MCS) 0-200MZ Pentium Motherboard P/N 720-30154; 0-SCSI Card 1540 P/N 720-30155; 0-PLC Little Star P/N 905-28845 | | TROIKA | | | | | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-3 | ACC, BLDR, 3KPSI, 11 Gallon P/N:822787 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-AREA 1 | SCM (POD) P/N BAA-43000 | | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SCM Running Tool P/N BAA-72000 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SCM Running Tool Shipping Frame P/N BAA-71100 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SCM Shipping Frame P/N BAA-71000 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | SCM Handling Tool P/N 782-21860 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-2 | Choke Blanking Cap (SN-C2) P/N A109941-65 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-2 | Choke Insert P/N MVO151V2P2 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 3 Way 2 Position Piloted Operated Directional Control Valve P/N 834337 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 8-Way EFL 230 FT  P/N BAA-41000 | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-R8-2 | Handling Sub P/N 2123000-01; S/N 2657807220/ 952-3045685-9C | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | 1-Washing Machine "New" No Asset # for Neptune Spar VK 826-A | | | | | | | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | 5-VX-2 Gasket 18.750 Stainless Steel. 15 KSI MWP; Item # 111053-1/HTS Code 8484.10.0000: 05/15/19 3-Shipped to One Subsea Morgan City, LA to Chuck Williams for FW 193004 | | | | | | | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | S-Molded Nitrile VX Gasket, Stainless Steel, 18.750-10000 PSI MSP; Item # 111227-1/HTS Code 8484.10.0000: 05/15/19 3-Shipped to One Subsea Morgan City, LA to Chuck Williams for FW 193004 | | | | | | | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82830.A | | MR-R10-2 | Skofto CMV 100278-L200-L201-R-ODI-00-H dual core LF/LF MOD Bus -ODI-ROV S/N 4231 10,000 PSIG | | TA-3 | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82831.A | | MW-R10-1 | Skofto CMV 100278-L200-L201-R-ODI-00-H dual core LF/LF MOD Bus -ODI-ROV S/N 4232 10,000 PSIG | | TA-2 | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree cap Test Stand : 13x11x5  Wt. 5,000 Lbs. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Debris Cap: 2x2x1 Wt 200 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Shopping Skid: 16x11x16 Wt 6,000 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Shipping Skid: 16x11x16 Wt. 6,000 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Test Skid: 14x10x3 Wt. 10,000 lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Running tool test Skid: 10x10x3: Wt 7,000 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Jumper Structure: 11x9x7 6,000 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Jumper Structure: 11x9x7 6,000 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Hub on Spool: 6x2x2 Wt. 1,000 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Spool with Clamp: 4x2x2 Wt 2,000 lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap Running tool with Guide funnel: 13x3x4 Wt 1500 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap Top Plate: 4x4x1 Wt 1,200 Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap Skirt: 4x4x4 Wt 2,000 lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap: 4x4x5 Wt 5,000 lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Interventon Tree Cap: 4x4x7 Wt 5,500lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tubing Hanger Stand: 2x2x1 200Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Emergency Tree connector unlocking tool: 19x9x9 Wt. 12,000 lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Debris Cap with Hotstab: 2x2x4 Wt. 800Lbs | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82832.A | | OS-R2-53 | PI003922 | | | | | | 10 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82833.A | | OS-R2-53 | PI003924 | | | | | | 10 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82834.A | | OS-R2-53 | PI14340 | | | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82835.A | | OS-R2-53 | Trendsetter Eng. P/N 6400-04-10-55 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82836.A | | OS-R2-53 | Lonestar PI004141 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82837.A | | OS-R2-53 | Lonestar PI005846 | | | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82838.A | | OS-R2-53 | Cameron S-Ax Gasket, P/N 2165231-06 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82839.A | | OS-R2-53 | O-RING, SIZE AS 568-360, 5.850 ID X .210 W BSD. MFR: ONESUBSEA, PN: 702647-36-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82839.A | | DWW-YARD-C-VAN TTN(697631014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS 568-360, 5.850 ID X .210 W BSD. MFR: ONESUBSEA, PN: 702647-36-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | |

29

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82841.A | | OS-R2-S3 | Parker P/N N030D B-360 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82842.A | | OS-R2-S3 | Trendsetter Eng. P005715 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82843.A | | OS-R2-S3 | Graylec Seal Ring P/N S1284N | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82844.A | | OS-R2-S3 | VANCO, S-AX GASKET P/N 2274164-04 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82845.A | | OS-R2-S3 | Sealco P/N P1014341 | | | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82846.A | | OS-R2-S3 | Sealco P/N P1014342 | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82847.A | | OS-R2-S3 | Sealco P/N P1014463 | | | | | | 16 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82848.A | | OS-R2-S3 | Sealco P/N P1014464 | | | | | | 14 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82849.A | | OS-R2-S3 | Trendsetter Eng. P/N TEI-08030411-00 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82850.A | | OS-R2-S3 | Oceaneering P/N 330D470-H | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82851.A | | OS-R2-S3 | Oceaneering P/N A05320-M | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82852.A | | OS-R2-S2 | Downhole Instrumentation Wet-Mate receptacle connector fitted with single way pin insert, P/N - BNX-E802888100021, DHCE-B28-BB-01P-000-121 | AFE FW181011 | | | | | 1 | | 12075.69 | 12075.69 | |
| Deepwater Warehouse | Fieldwood | 82853.A | | MW-R12-1 | 100' EFL 6 way ODI ROV CE plug with 4-way ODI ROV CE receptacle with sockets P/N 00-71352 S/N 2019-1342-3-1 | AFE FW193004 | TROIKA | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82854.A | | MW-AREA 2 | WELLHEAD CLEANING TOOL P/N 990071718 | AFE FW192008 | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82855.A | | DWW-YARD | Troka Tree Cap P/N 2124118-01 | AFE FW192009 | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82856.A | | OS-R2-S2 | Downhole Instrumentation dry-mate plug connector with single way socket insert (crimp termination) to suit 18/16AWG downhole cable. P/N - BNX-EA051BQ1000121, DHCE-A51-BQ-01S-001-121 | AFE FW181011 | | | | | 2 | | 8960.35 | 17920.7 | |
| Deepwater Warehouse | Fieldwood | 82857.A | | OS-R2-S2 | Miniature dry mate downhole receptacle, P/N - BNX-TC6A-512-HN, TC6A-512-HN ASSY, TREE HANDLING TOOL & ROV T-HANDLE, MFR. P/N - 2301786-02, S/N - 11190781-01 | AFE FW181011 | | | | | 1 | | 8912.06 | 8912.06 | |
| Deepwater Warehouse | Fieldwood | 82858.B | | BW-AREA-3 | TREE HANDLING TOOL & ROV T-HANDLE, MFR. P/N - 2301786-02, S/N - 11190781-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82859.B | | MW-AREA-6 | TREE REMOVAL TOOL, P/N 2124131-01, S/N 1114328228-0 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82860.A | | MW-R13-1/MW-AREA 4 | DUCT DIFFUSER EXHAUST; MFR. SOLAR TURBINE, PN: 115808-304 | | BULLWINKLE | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82861.A | | MW-R13-1 | DC LUBE OIL PUMP; VORE-VENT 3500 RPM, MFR. BUFFALO PUMPS, PN: 190971-100; | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82862.A | | MW-R13-1 | DC LUBE OIL MOTOR; 120V, 3500 RPM, SP HTR 30W, MFR. GE KINAMATIC DC MOTOR, TYPE CD2110APY, MODEL 5BY5542D800A805 | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82864.A | | MR-3-F | 7 WAY MALE TEST CONNECTORS | AFE FW193007 | TROIKA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82865.A | | OS-R1-S1 | UNIV ROV CE PROTECTIVE CAP P/N 0374955 | | TROIKA | | | | 26 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82866.A | | OS-R1-S1 | 7 way ROV retrievable shorting plug P/N 0343821 | | TROIKA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82867.A | | OS-R1-S1 | 7 way electrical test plug P/N 0428788 | | TROIKA | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82868.A | | OS-R1-S1 | Polyefin tubing spool P/N 0467370 | | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82869.A | | BW-NEP-AREA | PUMP; 6X8X11 MPV 3 STAGE LACT CHARGE PUMP, MFR. AFTON | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82870.A | | BW-NEP-AREA | RADIATOR; MFR. CATAPILLAR, P/N - BN-4880 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82871.A | | MW-AREA-1 | LEAD, ELECTRICAL;MFR: AKER,PN:1004873,TYP FLYING LEAD (EFL),TERM TYP 6 WAY PLUG X 4 WAY RECEPT,LEAD OVRL LG 26' | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82872.A | | BW-AREA-3 | HANGOFF (20) STUDS AND (40) NUTS P/N WS-POS1191 STUD 1.875 BUN X 350MM BL | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82873.A | | BW-AREA-3 | (48) STUDS 1.125 BUN X 11 BL. P/N WS-POS1907 / (96) HEX NUTS 1.125 BUN BL P/N WS-P24968 / (4) SBK16B SEAL RING INC625 P/N WS-P10070 / (4) VENT VALVES 0.250 - 18NPT RV05-575 P/N WS-P00646 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82874.A | | BW-AREA-3 | (12) HEX NUTS M42 BL P/N WS-P30118 / (12) STUDS M42 X 255MM BL | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82875.A | | BW-AREA-3 | (1) JAP PENETRANT AEROSOL P/N WST010012 / (1) JAD DEVELOPER AEROSOL P/N WS-T010011 / (2) JAC 2 AEROSOL P/N WS-T010010 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82876.A | | BW-AREA-3 | (1) B1666B HANG-OFF ASSEMBLY P/N WS-POS1633 / (1) B1666B HANG-OFF ISOLATION KIT | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82877.A | | BW-AREA-3 | (1) 2MTRS B1666B-01 SHIELD SAMPLE / 6 FOIL BAGS OF WELDING RODS PA12 NATURAL (20MTRS PER BAG) P/N WS-P22176 / (3) CANUSA TAPE 4" P/N T04640 / (3) TAPE CLEAR STRAPPING 100MM X 3M P/N WS-T05745 / (2) MTRS CORROUTE P/N WS-P00686 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82878.A | | BW-AREA-3 | (20) STUDS 1.875-BUN X 350MM BL P/N WS-POS1991 / (40) HEAVY HEX NUTS 1.875-BUN BL P/N WS-POS2181 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82879.A | | BW-AREA-3 | (4) BRACELET ANODE 2/9X4X5 P/N B1666B P/N WS-POS1733 / (48) ANODE FASTENER SET M12X1.75X150MM P/N WS-P19399 / (6) CONTINUITY CABLE 0.6L N00001520114 P/N WS-P29209 / (18) CONTINUITY CABLE 0.6ML N00001520-115 P/N WS-P17460 / (6) CAPSCREWS SHOO.750 -16UNF-2A 8.25L UN P/N WS-POS0535 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82880.A | | BW-AREA-3 | (1) 4.5" DYNAMIC PR STOPPER CLAMP AND INSTALLATION EQUIPMENT. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82881.A | | BW-AREA-3 | (1) TETHER CLAMP ASSEMBLY P/N D15005-01-057 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82882.A | | BW-AREA-3 | (1) PULL-IN INSTALLATION JIG 113.03CM X 113.03CM X 220.03CM P/N D15005-02-050 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82883.A | | BW-AREA-3 | (1) FUNNEL ASSEMBLY 192.72 CM X 130.33CM X 122.87CM P/N D15005-01-004 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82884.A | | BW-AREA-3 | (22) DURIGUARD HALVES P/N WS-POS1886 / (55) 625 INCONEL BANDING AND BUCKLES P/N P053299 / (55) 625 INCONEL BANDING AND BUCKLES P/N WS-P053300 / (1) MANUAL INSTALLATION TOOL P/N WS-P30164 / (1) PNEUMATIC INSTALLATION TOOL P/N WS-P30084 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82885.A | | BW-AREA-3 | (1) SHAFT ASSEMBLY 107.31CMOD X 135.57L P/N D15005-01-005 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82886.A | | BW-AREA-3 | (1) US-UMBILICAL | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82887.A | | BW-AREA-3 | (1) SHAFT ADAPTER SPOOL ASSEMBLY P/N D15005-01-006 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82888.A | | BW-AREA-3 | HOSE, EATON SYNFLEX 33CP 08 COLLAPSE PROOF 1/2" ID 5000 PSI WP 150475 02330 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82889.A | | BW-AREA-3 | (8) TURN BUCKLES | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82890.A | | BW-AREA-3 | (1) FUNNEL FASTENERS | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82891.A | | BW-AREA-3 | (1) CRATE ASSORTED NUTS AND BOLTS | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82892.A | | VERTICAL RACK | SLEEVE,PN:HUNT-1615,TYP HOLD OPEN,MATL HT 4140,SPCL FEATRS HUNTING 3.61S IN NO-GO OD FOR 3.562 IN RPT PROFILE, 131 IN BELOW NO-GO W/ 110 MIN YIELD RUNNING TOOL AND TOP SUB, SLEEVE BARREL: 1026 DOM | 20659S | GUNFLINT #4 STIMULATION | | | | 0 | | 6250 | 0 | |
| Deepwater Warehouse | Fieldwood | 82893.A | | BW-AREA-1 | (1) CRATE ASSORTED NUTS AND BOLTS | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82894.A | | MW-R8-1 | EFL 12P TO 12S 40M, CONNECTOR HOUSING MATERIAL: INCONEL. MFR: ONESUBSEA, PN: 2197088-51-18 | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82894.A | | DWW-YARD-C-VAN TTNU9776101455L1 (CLIMATE CONTROLLED) | EFL 12P TO 12S 40M, CONNECTOR HOUSING MATERIAL: INCONEL. MFR: ONESUBSEA, PN: 2197088-51-18 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82895.A | | MW-R8-1 | EL ROV PARK 12S W/INSERT P/N 2197088-13-62 | AFE FW193007 | TROIKA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82895.A | | DWW-YARD-C-VAN TTNU9776101455L1 (CLIMATE CONTROLLED) | EL ROV PARK 12S W/INSERT P/N 2197088-13-62 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82897.A | | MW-R8-1 | EL ROV PARK 4/7/12P W/O INSERT P/N 2197088-05-57 | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82897.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | EL ROV PARK 4/7/12P W/O INSERT P/N 2197088-05-57 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82898.B | | MW-R11-1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE STAB PLATE ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 15K PSI S/N 4689 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82899.B | | MW-R11-1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE STAB PLATE ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 15K PSI S/N 4721 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82900.A | | MW-AREA 3 | VALVE, SUBSURFACE SAFETY;MFR:SCHLUMBERGER,PN:100400601,TYP SURFACE CONTROLLED,TUBING SZ 3-1/2 IN,WT 12.7 lb/ft, PRFILE 2.562 RPT,OD 5.708 IN,CONN TYPE VAM TOP BOX  X PIN,WRKNG PRESS 15,000 PSI,MN: PINNACLE-15 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82901.A | | MW-R10-1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE BULKHEAD ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 10K PSI S/N 1512 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82901.A | | MW-AREA 1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE BULKHEAD ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 10K PSI S/N 1517 | AFE FW193006 | GENOVESA | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82902.A | | MW-R14-1 | MANIFOLD PRESSURE CAP, MFR. SEAHORSE ENERGY, INC., P/N 190001017 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82903.A | | MW-R14-1 | MCPAC CLAMP SPACER | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82904.A | | MW-R11-FL | RCPTCL,MFR:SKOFLO,PN:100230,TYP DUAL CORE | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82905.A | | BW-NEP-AREA | TABLE LIFT; MOBILE HEAVY DUTY SCISSOR 40" X 20", MFR: GLOBAL INDUSTRIAL, MN: WR39B8933, 2200 LB. CAPACITY | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82906.A | | MW-R14-1 | M1 LONG TERM PROTECTIVE COVER 14-WAY, 14-PRVC ASSEMBLY P/N 0442364 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82907.A | | MW-R13-3 | ELECTRICAL FLYING LEAD, ODI 90 DEG, 7 WAY MALE X 4 WAY FEMALE, 60M  PN: P/N 00-71349-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82908.A | | MW-R13-2 | MACPAC CLAMP, MFR. SEAHORSE ENERGY, INC, P/N: S-190001317  S/N: SSN-190002075 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82909.A | | MW-R13-2 | MACPAC DEBRIS CAP P/N 2035504-02 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82910.A | | MW-R12-2 | CROSBY M652 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82911.A | | MW-AREA 6 | MACPAC TOOL P/N 2098861-02 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82912.A | | MW-R17-2 | MQC PLATE ASSY. 12-WAY TEST P/N 10062543 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82913.A | | MW-R8-3 | TOP MARINE GROWTH COVER PLATE P/N A08216 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82914.A | | MW-R8-3 | M1 FIXED PLATE COVER BODY P/N 0296994 | AFE FW193006 | GENOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82915.A | | OS-R3-S2 | PRESSURE INTENSIFIER, MFR. BIFOLD MARSHALSEA, P/N: P173-01751-02-09-11-55-NIT-0420 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82916.A | | BW-NEP-AREA | NEPTUNE AC REPAIR KIT | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82917.A | | MW-AREA 5 | EXPANSION JOINT (OUTSIDE); EXHAUST, MFR. SOLAR TURBINE, 701/702 | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82918.A | | MW-AREA 5 | BUTTERFLY VALVE; EXHAUST, MFR. SHAN-ROO, INC., MODEL NO. 2220-6, SIZE: 36", 701/702 WHRU | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82919.A | | MR-4-B | 7W ROV FXD TEST PLUG W/PGT, MFR. TELEDYNE, PN: 1001606 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82920.A | | MR-5-B | 7W ROV BLKHD TEST RCPT W/3M PGTS, MFR. TELEDYNE, PN: 1001611 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82921.A | | OS-R1-S1 | COVER,MFR: TELEDYNE ODI, TYP 4 WAY ELECTRICAL LTPC ODI/NAUTILUS ELECTRICAL LONG TERM PROTECTIVE,SPCL FEATRS RECEPTACLE COMPENSATED W/LOOPS 1-2 AND 3-4 | | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82922.A | | MR-3-F | 7 WAY,MFR. TELEDYNE ODI,  ROV RETRIEVABLE SHORTING PLUG PINS, LOOPED 1-2, 4-5 | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82923.A | | MW-R2-2 | FLYING LEAD, MFR. OCEANEERING, PN: 197940-05021B5, ELECTRICAL, LG 61 m, 7-WAY PLUG, 90 DEG. W/ 7-WAY RECEPT., 90 DEG. | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82924.A | | MW-R16-2 | M1 REMOVABLE T&F PLATE, 14-WAY, 14-LINE, MFR. OCEANEERING, P/N: 0440489 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82925.A | | MW-R16-2 | M1 REMOVABLE T&F PLATE, 14-WAY, 14-LINE, MFR. OCEANEERING, P/N: 0502187 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82926.A | | MR-2-C | 8" PRODUCTION GASKET, TEX 7-625. MFR: TRENDSETTER, PN: A1007618 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82926.B | | MR-2-C | 8" PRODUCTION GASKET, TEX 7-625. MFR: TRENDSETTER, PN: A1007618 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82927.A | | BW-NEP-AREA | HEATER, WATER, ELECTRIC;MFR:RHEEM,PN: 82SV30-2 ,TYP SHORT,VOL CPCTY 30 gal, VOLT 240,WATT 4500 W | | NEPTUNE | | | | 1 | | 696.79 | 696.79 | |
| Deepwater Warehouse | Fieldwood | 82928.A | | N/A | GENERIC ASSY ASD SINGLE W/ HARNESS 35m, ELECTRICAL INTERFACE: FIXED WIRING HARNESS WITH FLYING ROV CONNECTOR, 12-WAY MALE, HOSE LENGTH: 35m, MFR. ONESUBSEA, P/N 223367-78 | | | | | | 0 | | 41702 | 0 | |
| Deepwater Warehouse | Fieldwood | 82928.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | GENERIC ASSY ASD SINGLE W/ HARNESS 35m, ELECTRICAL INTERFACE: FIXED WIRING HARNESS WITH FLYING ROV CONNECTOR, 12-WAY MALE, HOSE LENGTH: 35m, MFR. ONESUBSEA, P/N 223367-78 | | | | | | 2 | | 41702 | 83404 | |
| Deepwater Warehouse | Fieldwood | 82930.B | | BW-R2-3 | PUMP ASSEMBLY; METHANOL, EAGLE MODEL V200, 2 X 1.5-10 SS. SN: V1532035 PUMP, TRIM 6.7, MOTOR: MFR. SIEMENS TYPE XP100, PN: 1MB2121AA213N63 SN: 3005775094-11, 10 HP, 3515 RPM, 575V | | BULLWINKLE | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82931.B | | DWW-YARD | FRAME; UTA RECOVERY, MFR. OCEANEERING, DWG NO. 801069512 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82932.B | | DWW-YARD | TREE RUNNING TOOL, P/N 2124119-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82933.B | | DWW-YARD | TREE CAP SHIPPING SKID, ASSY; P/N: 2124123-01 SN: 96716759220 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82934.B | | DWW-YARD | TREE CAP ASSY, BP TROIKA; P/N 2124118-01 SN: 11203640-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82935.B | | CR TIER 1 | SLEEVE; HOLD OPEN, 3.720 O.D. on NO GO COLLAR, 3.650 BASE O.D., LENGTH 124 IN. MFR. SCHLUMBERGER, PN: 103320456, SN: 478973-001 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82936.B | | MW-R5-FL | CROSSOVER SPOOL ADAPTOR, MFR. CAMERON, PN: A314567 SN: C50-3804743-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82937.A | | MW-R13-FL/MW-R13-3 | G2 Tubing Hanger 5in 10K with W/5 inside outlet 5.250 inelmar wireline line plug prep S/N 111371753-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82938.A | | MW-AREA 6 | Internal Tree Cap 10M with 4.767 SSR G2Spool Tree System S/N 11076301-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82939.A | | MW-AREA 6 | Production Tubbing Hanger 4in 10K 4.38 in SSR S/N 11075743-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82940.A | | MW-AREA 6 | Solar Turbine Expansion Joint S/N | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82942.A | | MW-R6-1 | Subsea SLAB gate valve 2 1/16 API 10000, MFR. ATV | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82943.A | | MW-R6-2 | 6" X 6" Cushion elbow ( FFI-FGSPL-00908) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82944.A | | MW-R5-2 | 5" Weld test ring 12' long A694F65 (FFI-FGSPL-00910) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82945.A | | MW-R5-2 | 6" Weld test ring 12' long A694F65 (FFI-FGSPL-00909) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82946.A | | MW-R6-2 | 6" X 8" Reducer | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82947.A | | MW-AREA 5 | TC2 Gen 2 LTPC Connector, Bore Access 15 KSI PSL-3G S/N TSN902627 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82948.A | | MW-AREA 5 | TC2 Inboard Hub W/2" 10K API flang BX-152 FF trim S/N TSN902630 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82949.A | | MW-AREA 5 | TC7/5  inboard assembly S/N TSN902704 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82950.A | | MW-AREA 5 | TC7/5 inboard assembly S/N TSN902705 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82951.A | | MW-AREA 5 | TEX-5 short term pressure cap assembly S/N TSN902900 and TSN902901 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82952.A | | MW-AREA 5 | TC7/5 connector assembly 6" nom F65 PUP 15K EE S/N TSN902741 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82953.A | | MW-AREA 5 | TC7/5 connector assembly 6" nom F65 PUP 15K EE S/N TSN902743 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82954.A | | MW-AREA 5 | Manual gate valve 5 1/8" 10K W/Pups S/N VN10385 | | | | | | 1 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82955.A | | MW-AREA 7 | Manual gate valve S 1/8" 10K W/Pups S/N VN10386 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82956.A | | MW-AREA 5 | (3) Gasket assembly TEX-5 Inconel 625, Silver coated S/N TSN902780,TSN902781, TSN902782. (1) Gasket assembly TEX-7 Nickel Alloy, Silver coated S/N TSN902451 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82957.A | | MW-AREA 5 | (1) Gaskets assembly TEX-2 nickel alloy 625 (Silver Coated) S/N TSN902285, TSN902286, TSN902353 (6) BX-156 Gaskets 7 1/16, (1) Weld neck flange 7 1/16, (32) Studs | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82958.A | | DWW-YARD C-VAN CPIU 0301120 | ASSEMBLY; FLOODING CAP, 8"-10K FLOWLINE HUB, 7.077 SEAL BORE, W/ 2X O-RINGS PLUG, 2" N8 X 1.5" PORT, 10K BALL VALVE; (QP-000803-08-11) MFR. CAMERON, P/N2235684-03, S/N110746028-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82959.A | | MW-AREA 5 | Weld test ring ATV valve S/N 83406 and 83407 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82960.A | | MW-AREA 1 | ASSEMBLY, 8"-15K CVC CONNECTOR, 6.47 ID GASKET, 8.625 OD X 1.312 WALL (6.00 ID), W/ ALIGNMENT BLOCK, 3/8" AUTOCLAVE PORT; (F22 BODY W/ INCONEL 625 INLAID GASKET PREP, 30" LG 4130 CUSTOMER SUPPLIED PIPE); (QP-000162-02-60); (SP-00S098-01); T/C U; M/C AA, BB, DD, EE; PSL-3; WOP 12, 500 PSI, MFR. CAMERON, P/N 2181526-12-02, S/N 112254875-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82961.B | | MW-RS-1 | TOOL; SCRUBBER, PN: 190001313, S/N: 19001432, MFR. SEAHORSE ENERGY | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82962.A | | MW-R11-1 | CHEMICAL INJECTION METERING VALVE (CIMV), DUAL CORE, LOW FLOW, 15K PSI. MFR: SKOFLO, SN: 4668 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82963.A | | MW-AREA 7 | TC7/5 inboard assembly LG PuP, 15K EE S/N TSN902702, TSN902703 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82964.A | | MW-AREA 6 | SLAB Gate Valve 15KSI Hyd. act, Pipe Pups, EE Trim S/N  VN10396 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82965.A | | MW-AREA 7 | TEX-5 short term pressure cap assembly S/N TSN902912 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82966.A | | MW-AREA 7 | SLAB Gate Valve 15KSI Manual act, Pipe Pups, EE Trim S/N  VN9997 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82967.A | | MW-AREA 7 | ( 1 ) Weld neck flange 5 1/8" 15K API 6A BX-169, EE tri ( & ) gasket  BX-169 5 1/8" H/N 343 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82968.A | | MW-AREA 7 | ( 3 ) Gasket Assembly TEX-5 Inconel 625 Silver Coated S/N TSN902769, TSN902770, TSN902772 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82969.A | | DWW-YARD | HATCH COVER FRAMES | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82970.A | | BW-AREA-3 | (1) CRATE ASSORATED NUTS AND BOLTS | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82971.A | | MR-S-E | ROV TEST CONNECTOR, EL. FEMALE, FIXED, 7-WAY W/ 5M CABLE, RATED 2500V, MATERIAL: PVC, ONLY FOR SURFACE USE, VENDOR: TELEDYNE ODI, VENDOR PN: 1047681 (CTD-1839-01-7-5) MFR. ONESUBSEA, PN: 2197088-10-77 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82972.A | | MR-GENERAL | ROV TEST CONNECTOR, MALE, 7-WAY W/ 5M CABLE, RATED 2500V, MATERIAL: PVC, ONLY FOR SURFACE USE, VENDOR: TELEDYNE ODI, VENDOR PN: 1047684 (CTD-1840-01-7-5) MFR. ONESUBSEA, PN: 2197088-17-72 | | | | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82973.A | | MW-R17-1 | M1 REMOVABLE LONG TERM COVER 14 WAY, 3X 1 IN RS PRVC & 11X 1/2 IN RS PRVC ASSEMBLY, MFR: OCEANEERING, PN: 223520-73 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82974.A | | MW-R15-1 | M1 REMOVABLE T&F PLATE 14 WAY, 11X 1/2 IN RS AND 3X 1 IN RS LINES MAD DOG 2 ASSEMBLY, MFR: OCEANEERING, PN: 0485058 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82975.A | | MW-R17-1 | M1 FIXED T&F PLATE 14 WAY, 14X 1/2 IN RS LINES ASSEMBLY, MFR: OCEANEERING, PN: 0502186 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82976.A | | MW-R17-1 | M1 FIXED T&F PLATE 10 WAY, 6X 1/2 IN RS AND 4X 1 IN RS LINES ASSEMBLY, MFR: OCEANEERING, PN: 0502188 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82977.A | | MW-R17-1 | M1 LONG TERM COVER 10 WAY 6X 1/2 IN RS PRVC, 4X 1 IN RS PRVC 15KSI ASSEMBLY, MFR: OCEANEERING, PN: 223510-24 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82978.A | | CR-TIER 3 | FIXED SPREADER BAR 20,000 LB., MFR: SOUTHWEST WIRE ROPE, PN: SB-0010-0080 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82979.A | | MW-R11-3 | ELECTRICAL FLYING LEAD, 12 WAY PLUG X 12 WAY RECP (175 FT. LENGTH), MFR: TTL SUBSEA, PN: 00-71621-01 | AFE FW183040 | KATMAI | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82980.A | | MW-R16-3 | M1 REMOVABLE LONG TERM COVER 13 WAY IN RS PRVC ASSEMBLY, MFR: OCEANEERING, PN: 0503228 REV. A | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82981.A | | MW-AREA 6 | G3 TUBING HANGER CONVERSION ASSEMBLY, 4 INNOM BORE, 5 1/8 IN SIDE OUTLET, 10K, 4.375 IN WIRELINE PLUG PREP, 5 1/2 IN VAM ACE 29.7 LB/FT CONNECTION, 8 DOWNHOLE LINES, MFR: ONESUBSEA, PN: 2180717-48 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82982.A | | MW-R2-1 | ELECTRICAL FLYING LEAD, 9 WAY ODI ROV PLUG X 9 WAY ODI ROV RECEPTACLE, 275', MFR: OIE, PN: 0206246 | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82983.A | | MW-R2-1 | (KIT WITH 4 ITEMS) ITEM 1: DUAL REDUNDANT SSI PRESSURE/TEMPERATURE TRANSMITTER, MODBUS (RS 485), O-10KSI, -40° TO 260°F, 1.5" PROBE, 2-1/16" BX FLANGE, 8 WAY SEACON MSS FCR DRY-MATE CONNECTION (FULL SCALE FAT, INCLUDING 10 POINT HYDROSTATIC FUNCTIONAL TEST, TEMPERATURE VERIFICATION). ITEM 2: 1012992, 6 WAY ODI ROV CE PLUG (PINS) WITH OMNITEC. ITEM 3: 8168-103 KIT, 8 WAY SEACON MMSK CCP, PBOF 1/2 ID. ITEM 4: MKII BACKSHELL/ADAPTER. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82984.A | | MW-R13-FL | AKER 12 WAY (NEW STYLE) REMOVABLE JUNCTION PLATE BRACKET WITH QTY 1 - 17H DUAL PORT HOT STAB RECEPTACLE (15KSI) AND QTY 2 - 1/2" ROV PADDLE VALVES (10KSI) (WITH TUBING AND INSTALLATION HARDWARE) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82985.A | | MW-AREA 6 | HEAT EXCHANGER TUBE BUNDLE | | BULLWINKLE | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82985.C | | MW-AREA 6 | HEAT EXCHANGER TUBE BUNDLE (HBG 101) | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82987.A | | MW-AREA 1 | WIRELINE PLUG ASSEMBLY, UPPER, 4.767" NOM, 10K, NICKEL ALLOY 718 (UNS N07718) (NON-LOAD BEARING), RETAINING CAP AND FISH NECK, MAIN BODY AND KEYS, NICKEL ALLOY 925 (UNS N09925) EXPANDER MANDREL, PRIMARY TITANIUM METAL SEAL, SECONDARY O-RING, H2S SERVICE, WITHOUT EXTENSION SLEEVE, API 6A 20TH ED, API 17D 2ND ED, T/C U, M/C HH, PSL3 (NOV ELMAR REF L-9911018124). MFR: ONESUBSEA, PN: 2731384-02-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82988.A | | MR-GENERAL | WIRELINE PLUG, 4.375" DIA. WITH SPECIAL REQUIREMENTS TO INCLUDE INCONEL 718 BODY AND CHEMRAZ O-RING 17-4 PH RETAINING CAP, INCONEL 925 EXPANDER MANDREL, TITANIUM SEAL W/ NOBLE COATING, ELASTOMER/POLYMERIC SEALS, W/ EROSION TARGET AND WIPER, USES SPARE PARTS LIST 2166241-01. MFR: ONESUBSEA, PN: 2748428-01 | | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82989.A | | MW-R8-3 | SEAL ASSY, METAL SEAL W/ ELASTOMER BACKUP, 18 3/4", MATL CLASS DD-NL, PSL-3, TEMP CLASS U, ALTERNATE TEMP RANGE 35-300F, API 17D, SUBSEA WELLHEAD SYSTEM. MFR: ONESUBSEA, PN: 2018116-01 | | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82990.A | | MW-R8-3 | EMERGENCY SEAL ASSY, METAL SEAL W/ ELASTOMER BACKUP, 18 3/4", MATL CLASS DD-NL, PSL-3, TEMP RATING O-350F, SUBSEA WELLHEAD SYSTEM, API 17D, 1ST ED ONLY. MFR: ONESUBSEA, PN: 2018117-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82991.A | | MW-AREA 1 | ASSY, TUBING HANGER RUNNING TOOL, 4 1/16" X 2 1/16", NOM 10K PSI, WPW/2X SCS5V, 2X CI, 1X TH CONTROLLED LANDING, 1X TEST BETWEEN SEALS, 1X ELEC PEN, PSL 3, MATL CLASS EE, API 17D, TEMP 35-250F. MFR: ONESUBSEA, PN: 2124129-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82992.A | | MW-AREA 1 | ASSY, THRT HANDLING/TEST TOOL, 4.06" X 2.06" 10000 PSI. MFR: ONESUBSEA, PN: 2124132-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82993.A | | MW-AREA 1 | COMBINED BOP WEIGHT SET TEST AND BORE PROTECTOR RETRIEVAL TOOL. MFR: ONESUBSEA, PN: 2142424-06 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82994.A | | MW-AREA 5 | ASSEMBLY, 7 1/16, 15K, TYPE FLS-R MANUAL SUBSEA GV, WITH TRANSITION PUPS AND ACCUMULATOR. MFR: ONESUBSEA, PN: 2230777-06-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82995.A | | MW-AREA 2 | SLING, 3" X 20', 1 LEG. MFR: MORGAN CITY RENTALS, PN ON TAG: V-77T C-601 B-153T/HOU-057234-002 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82996.A | | MR-2-C | LOOPING CAP, TELEDYNE ODI, 7 WAY. MFR: ONESUBSEA, PN: 2197088-28-44 REV 3 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82997.A | | MW-AREA 1 | DEBRIS CAP WITH ROV HANDLE (YELLOW IN COLOR). MFR: SUBSEA7/NEW INDUSTRIES | AFE FW183040 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82998.A | | MW-AREA 1 | 8" SUBSEA PLR (PIGGING-LANCHER-RECEIVER), PIG RETAINER SK T/S 8" SCH XXS PIPE W/ 30 DIA. PIN & 1/4D ENGAGEMENT. MFR: SUBSEA7/NEW INDUSTRIES, PN: 230-1521-01 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82999.A | | MW-AREA 1 | 2" MOFFATT DUEL ENTRY HOT STAB WITH 1502 THREADED FEMALE CONNECTION, OS MALE STAB, 2", SUPER DUPLEX, FIG. 1502 FEMALE INTEGRAL, DRAWING # MSP-2DC411H-01, 2" 15K SS/OS MALE STAB BODY C/W FIG 1502 FEMALE SUB. MFR: SUBSEA7/ONESUBSEA | AFE FW183040 | KATMAI | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83000.A | | MW-AREA 1 | 2" MOFFATT DUEL ENTRY BLIND STAB WITH 1502 THREADED FEMALE CONNECTION, 2" NB 15K DS BLIND STAB BODY, DRAWING # MSP-2DBX11H-01. MFR: SUBSEA7/ONESUBSEA, PN: MSP 0459-B | AFE FW183040 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83001.A | | MW-AREA 1 | CHECK VALVE ASSEMBLIES WITH 1502 WING NUT MALE CONNECTION, DRAWING # TC1099-440001902S-B01-0002, BIS CHECK VALVE # 20056-P049. MFR: SUBSEA7/ONESUBSEA | AFE FW183040 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83002.A | | MR-5-D | SEAL KIT FOR MOFFATT STABS. MFR: SUBSEA7/ONESUBSEA | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83003.A | | BW-AREA 2 | CITV SIMULATOR. MFR: SKOFLO, PN: CM-015000-91 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83004.A | | MW-R17-FL | M1 REMOVABLE FLUSHING PLATE WITH HOTSTAB ASSEMBLY. MFR: OCEANEERING, PN: 0508203 REV A | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83005.A | | MR-4-B | FEMALE DUMMY COUPLERS, 1/2" RS-B | AFE FW183040 | KATMAI | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83006.A | | MR-5-B | MALE POPPETED TEST COUPLERS, 1/2" RS-B | AFE FW183040 | KATMAI | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83007.A | | MR-5-B | FEMALE POPPETED COUPLERS W/ TUBE STUB, 1/2" UO-8 | AFE FW183040 | KATMAI | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83008.A | | MW-R11-2 | VBR (VERTEBRAE BEND RESTRICTORS) ASSEMBLY SET. MFR: WHITEFIELD PLASTICS | AFE FW183040 | KATMAI | | | | 35 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83009.A | | MW-AREA 4 | M1 REMOVABLE LOGIC CAP 14 WAY 7X 1/2 IN RS, 3X 1 IN RS LINES ASSEMBLY. MFR: OCEANEERING, PN: 0508202 REV A | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83010.A | | MR-1-A | HOT STAB. MFR: OCEANEERING, PN: A06401-G | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83011.A | | MR-1-A | HOT STAB. MFR: SEANIC, PN: HS165-1100619 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83012.A | | MR-1-E | NITRILE O-RING, 70 DURO. MFR: BUNA-N, PN: 318 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83013.A | | MR-1-A | HOT STAB. MFR: UNKNOWN, PN: 10306 (ETCHED INTO PARTS) | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83014.A | | MR-GENERAL | GASKET RETAINER F/ FLOWLINE AX GASKETS, OBSOLETE AND REPLACED BY P1000162986. MFR: FMC INDUSTRIES, PN: 18-259-020 | | | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83015.A | | MR-GENERAL | FITTING, GREASE, NIPPLE STRAIGHT 1/4 IN NPTF MALE, SUPPLIED BY ALEMITE, PN: 1627-B, TRIVALENT ZINC PLATED. MFR: FMC INDUSTRIES, PN: 48-120-004 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83016.A | | MR-5-E | ROV HOT STAB, TYPE A, SHORT TERM LIVE (INTERVENTION AND COMMISSIONING), NITRONIC, DUAL PORT, 15KSI (1035 BAR) MAX WP, T BAR HANDLE, 3/8 MP PORTS AT 45 DEG, SUPPLIED BY OCEANEERING 0036241-01 REV. C, OBSOLETE AND REPLACED WITH P1000178823. MFR: FMC INDUSTRIES, PN: P1000038613 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83017.A | | MR-GENERAL | FITTING, AIR QUICK CONNECT, CROWSFOOT, 3-WAY TRIPLE END COUPLER, MALLEABLE IRON, PLATED, OEM SPARE PART. MFR: FMC INDUSTRIES, PN: P1000008374 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83018.A | | MR-GENERAL | RUBBER WASHER, STANDARD CROWSFOOT COUPLER/COUPLING, BAG OF 50, OEM SPARE PART. MFR: FMC INDUSTRIES, PN: 1000010263 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83019.A | | MR-GENERAL | M1 MARINE GROWTH COVER 10 WAY 6X 1/2" PLASTIC DUMMY, 4X 1" PLASTIC DUMMY. MFR: OCEANEERING, PN: 0413628 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83020.A | | MR-4-E | TREE RUNNING TOOL, PRODUCTION SEAL STAB, 4X 2-10K F/4 OD, ASSY, MENSA X OVER ADAPTER TOP, CAMERON/TROIKA TRT BTM. MFR: FMC INDUSTRIES, PN: P1000014614 | | | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83021.A | | MR-FL | UWD SLOPE INDICATOR BRACKET, F/ BOLT ON SLOPE INDICATOR WITH ADJUSTMENT SCREWS, OBSOLETE AND REPLACED BY P2000060501 PHASE OUT. MFR: FMC INDUSTRIES, PN: P1000065171 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83022.A | | MW-AREA 6 | PUMP AIR OPERATED, NITROGEN GAS BOOSTER, DOUBLE ACTING, DOUBLE AIR HEAD; 25 TO 1 RATIO, 25 KSIG MAX OUTPUT, 6000 PSIG MAX INPUT, 250 PSIG MIN GAS INLET, 90-150 PSIG AIR DRIVE PRESS, 95 SCFM MAX AIRFLOW, 2.4 CU INCH STROKE SC HYDRAULIC ENGINEERING - GBD-D75. MFR: FMC INDUSTRIES, PN: P1000068557 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83023.A | | MR-GENERAL | FITTING, HYDRAULIC, CAP BODY 3/8 IN JIC FEM 20K, SUPPLIED BY AUTOCLAVE, PN: 20JC6, 316SS. MFR: FMC INDUSTRIES, PN: P1000075352 | | | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83024.A | | MR-GENERAL | CAP SCREW, HEX SOCKET DRIVE, .375-16 UNRC-2A/3A X 3.00 LG, A 320 GR L7M, EXP LOW STR, API 20E BSL2, PTFE. MFR: FMC INDUSTRIES, PN: P1000091781 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83025.A | | MR-4-E | TREE RUNNING TOOL, ANNULUS SEAL STAB, 4X 2-10K F/2 OD, ASSY, MENSA X OVER ADAPTER TOP, CAMERON/TROIKA TRT BTM. MFR: FMC INDUSTRIES, PN: P1000014615 | | | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83026.A | | MR-GENERAL | 5 SEAL OD TYPE 2.827 OD X .158 CS X .270. MFR: FMC INDUSTRIES, PN: P101811 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83027.A | | MR-4-D | 4" DRIFT, 3.910 OD X 12" LONG. MFR: FMC INDUSTRIES, PN: P114747 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83028.A | | MR-4-D | 2" DRIFT, 1.850 OD X 12" LONG. MFR: FMC INDUSTRIES, PN: P114748 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83029.A | | MR-4-D | METAL SEAL, SBMS BODY, F/13 5/8-10K SPEEDLOC CLAMP, INCONEL 718, SILVER PLATED, 2.595 OD X 2.071 ID, 3.620 LG WITH 5 SEAL GROOVES, 15K PSI MAX. MFR: FMC INDUSTRIES, PN: P125494-0007 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83030.A | | MR-4-E | METAL SEAL, SBMS ASSY, F/13 5/8-10K SPEEDLOC CLAMP, INCONEL 718, SILVER PLATED, 5.680 OD X 5.140 ID, 5.40 LG WITH 2 SEALS. MFR: FMC INDUSTRIES, PN: P125495-0007 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83031.A | | MR-4-D | METAL SEAL, SBMS ASSY, F/13 5/8-10K SPEEDLOC CLAMP, INCONEL 718, SILVER PLATED, 2.595 OD X 2.071 ID, 3.620 LG, WITH 2 S SEALS. MFR: FMC INDUSTRIES, PN: P125497-0007 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83032.A | | MR-GENERAL | NON-METALLIC SEAL, POLYPAK ASSY, TYPE B STYLE, 0.375 CS X 0.625 LG X 36.000 ID, ES0105 GEOLAST MATL F/ JACKET, ES0106 NBR MATL F/O-SPRING. MFR: FMC INDUSTRIES, PN: P129198-0003 | | | | | | 1 | | 0 | 0 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83033.A | | MR-GENERAL | GREASE FITTING, 1/8" N.P.T., 90 DEGREE. MFR: FMC INDUSTRIES, PN: P133318-0014 | | | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83034.A | | MR-S-F | SLOPE INDICATOR, 2 DEGREE 11.78 DIA. MFR: FMC INDUSTRIES, PN: P134576-0000 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83035.A | | MR-GENERAL | HYDRAULIC FITTINGS, ADAPTER, STRAIGHT 9/16 MP (13/16-16THD) MALE X 3/8MP (9/16-18THD) MALE, 20, 000WP. MFG: PARKER (PN: Y5YS-6-9C). MFR: FMC INDUSTRIES, PN: P145788 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83036.A | | MR-GENERAL | S-SEAL, OD TYPE, 3.205/3.145 OD X 0.234 CS X .375 LG, ES0189 90A DURO LOW TEMP HNBR MATL, W/316 SS SPRINGS, 0.6 DIA COIL. MFR: FMC INDUSTRIES, PN: SP-48-14527 | | | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83037.A | | MR-3-D | O-RING, HIGH TMP HNBR. MFR: ONESUBSEA, PN: KB163 2-216 | | | | | | 23 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83038.A | | MR-3-D | O-RING, NITRILE, 1 1/8 X 1 3/8 X 1/8. MFR: ONESUBSEA, PN: N0300 8-216 | | | | | | 21 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83039.A | | MR-3-D | O-RING, NITRILE, 2 1/2 X 2 3/4. MFR: ONESUBSEA, PN: N0300 8-230 | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83040.A | | MR-3-D | O-RING, 568-453 N1059-90 PX NBR. MFR: ONESUBSEA, PN: 702645-45-31 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83041.A | | MR-3-D | O-RING, NITRILE, 4 7/8 X 5 1/8 X 1/8. MFR: ONESUBSEA, PN: N0300 8-249 | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83042.A | | MR-3-D | O-RING, PEROX NITRILE, 13/16 X 1 X 3/32. MFR: ONESUBSEA, PN: 702645-11-71 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83042.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | O-RING, PEROX NITRILE, 13/16 X 1 X 3/32. MFR: ONESUBSEA, PN: 702645-11-71 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83042.A | | TRAINING ROOM 1 | O-RING, PEROX NITRILE, 13/16 X 1 X 3/32. MFR: ONESUBSEA, PN: 702645-11-71 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83043.A | | MR-3-D | SEAL TYPE S, 1-3/8" OD. MFR: ONESUBSEA, PN: 142895-55-01-03 | | | | | | 13 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83044.A | | MR-3-D | S SEAL NOM S-1/2. MFR: ONESUBSEA, PN: 142895-18-01-03 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83045.A | | MR-1-C | O-RING, SIZE AS-568-427 4.725 ID X .275 W 90D/MS-1078 NITRILE PKG AND QUAL/COT 702645. MFR: ONESUBSEA, PN: 702645-42-71 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83046.A | | MR-1-C | O-RING, SIZE 568-458 14.475 ID X .275 W 90D/MS-1078 NITRILE PKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-45-81 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83046.A | | TRAINING ROOM 1 | O-RING, SIZE 568-458 14.475 ID X .275 W 90D/MS-1078 NITRILE PKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-45-81 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83047.A | | MR-1-C | DOWEL PIN, .436/.432 OD X 1.750 LG, TYPE "V", LAS (REF. ASTM A193, B7). MFR: ONESUBSEA, PN: 021812-94 | | | | | | 18 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83048.A | | MR-1-C | SCREW, SOC HD CAP .375-16 X .750 STL/A193 GR B7/ANSI B18.3ZN PL/X-4024-4. MFR: ONESUBSEA, PN: 2716050 | | | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83049.A | | MR-1-C | SPRING, CPRSN .063 X .480 OD X 1.250 SST. MFR: ONESUBSEA, PN: 712406 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83050.A | | MR-1-C | SEAL RING, 3.00 ID X 4.00 OD X .750 LG, POLYPAK SEAL MOLYTHANE, TYPE BMFG PN: 461550003000-750B. MFR: ONESUBSEA, PN: 2749574-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83051.A | | MR-1-C | SPRING, COMPRESSION, .360 OD X .045 X .500 CL & GR ENDS, SST, RATE 65 LB/IN. MFR: ONESUBSEA, PN: 2748122-01 | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83051.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | SPRING, COMPRESSION, .360 OD X .045 X .500 CL & GR ENDS, SST, RATE 65 LB/IN. MFR: ONESUBSEA, PN: 2748122-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83052.A | | MR-1-C | O-RING, SIZE AS-568-427 4.725 ID X .275 W 90D/MS-1004 NITRILE PKG AND QUAL/CIW 702640. MFR:ONESUBSEA, PN: 702640-42-71 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83053.A | | MR-1-C | SHEAR PIN SLEEVE, ACUTATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2156903-01 | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83053.A | | TRAINING ROOM 1 | SHEAR PIN SLEEVE, ACUTATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2156903-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83054.A | | MR-1-C | SHEAR PIN, ACTUATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2156904-01 | | | | | | 10 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83055.A | | MR-1-C | SCREW, SOC HD CAP .375-16 X 1.750 SST 316/A193 ANSI B18.3. MFR: ONESUBSEA, PN: 702505-06-00-16 | | | | | | 16 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83056.A | | MR-1-C | GROOVED PIN, TYPE A .375 O X 1.00 BRASS ANSI B5.209/250 LBS DOUBLE SHEAR VALUE (MIN). MFR: ONESUBSEA, PN: 711364 | | | | | | 16 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83057.A | | MR-1-C | SCREW, SHOULDER, .75 OD, SPECIAL. MFR: ONESUBSEA, PN: 2124841-01 | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83058.A | | MR-1-C | PIPE PLUG, HEX HEAD, 1/4" - 18 NPT, XYLAN COATED. MFR: ONESUBSEA, PN: 278183-01 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83059.A | | MR-1-C | O-RING, SIZE AS-568-521 16.450 ID X .210 W 90D/MS-1078 NITRILE PKG AND QUAL/CC 702645. MFR:ONESUBSEA, PN: 702645-52-11 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83060.A | | MR-1-C | RETAINER RING, SPLIT, 2.285 ID X .128 DIA, ALIGNMENT PIN. MFR: ONESUBSEA, PN: 2099585-01 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83061.A | | MR-1-C | SCREW, SOC FLAT HD .375-16 X .750 SST B18.3. MFR: ONESUBSEA, PN: 702580-06-00-12 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83062.A | | MR-1-C | SEAL RING, 18 5/8-15M SPECIAL FOR PETROBRAS. MFR: ONESUBSEA, PN: 605894-12 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83062.A | | TRAINING ROOM 1 | SEAL RING, 18 5/8-15M SPECIAL FOR PETROBRAS. MFR: ONESUBSEA, PN: 605894-12 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83063.A | | MR-1-C | METAL END CAP SEAL, 16.283 NOM. BORE, 25% NOM SQUEEZE, CAMLAST AND STAINLESS STEEL, API 6A 19TH ED, TEMP RATING: 35-275 DEG F, MATL CLASS: HH-15.0 (BASED ON R&D PN: 599514-04-05-01). MFR: ONESUBSEA, PN: 2289964-08 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83063.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 16.283 NOM. BORE, 25% NOM SQUEEZE, CAMLAST AND STAINLESS STEEL, API 6A 19TH ED, TEMP RATING: 35-275 DEG F, MATL CLASS: HH-15.0 (BASED ON R&D PN: 599514-04-05-01). MFR: ONESUBSEA, PN: 2289964-08 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83064.A | | MR-GENERAL | M1 MARINE GROWTH COVER 14 WAY, 14 X 1/2 RS. MFR: OCEANEERING, PN: 0321318 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83065.A | | MR-GENERAL | S-SEAL, OD TYPE, ES0189 HNBR MATL. MFR: FMC INDUSTRIES, PN: 48-500-146 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83066.A | | MR-S-E | HOT STAB, WP+HS, 10K PSI. MFR: OCEANEERING, PN: A0628D-F | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83067.A | | MR-GENERAL | S SEAL, OD TYPE, 2.827 OD X .158 CS X .270. MFR: FMC INDUSTRIES, PN: P101811 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83068.A | | MR-GENERAL | S SEAL, OD TYPE, 6.205/6.129 OD X 0.234 CS X .375 LG, ES0159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ 316 SS SPRINGS, .06 DIA COIL, USE SAME MOLD AS PN DP-48-1389. MFR: FMC INDUSTRIES, PN: P107332-0007 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83069.A | | MR-GENERAL | S SEAL, OD TYPE, 5.235/5.185 OD X 0.234 CS X .375 LG, ES0159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ 316 SS SPRINGS, .06 DIA COIL. MFR: FMC INDUSTRIES, PN: P107335-0007 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83070.A | | MR-GENERAL | S SEAL, OD TYPE, 2.889/2.898 OD X 0.234 CS X .375 LG, ES0159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ 316 SS SPRINGS, .06 DIA COIL, USE SAME MOLD AS PN 48-500-035. MFR: FMC INDUSTRIES, PN: P178205 | | | | | | 4 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83071.A | | MR-GENERAL | S SEAL, OD TYPE, 3.205/3.145 OD X 0.234 CS X .375 LG, ES0189 90A DURO LOW HNBR MATL, W/ 316 SS SPRINGS, .06 COIL. MFR: FMC INDUSTRIES, PN: SP-48-14527 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83072.A | | MW-R3-2 | ACOUSTIC SAND DETECTOR WITH ODI CABLE, 6 WAY. MFR: CLAMPON, PN: 921-2120-003 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83073.A | | MW-R3-2 | CLAMP AND FUNNEL ASSEMBLY (WITH 4 HEX SCREWS/8 HEX NUTS). MFR: CLAMPON, 924-14122-001 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83074.A | | MR-1-C | O-RING NITRILE 90A, 3/4 X 1 X 1/8. MFR: CAMERON, PN: 702640-21-01 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83075.A | | MR-1-C | BACK-UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-16 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83076.A | | MR-1-C | O-RING NITRILE 90A, 11 1/2 X 11 1/4. MFR: CAMERON, PN: 702645-27-71 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83076.A | | TRAINING ROOM 1 | O-RING NITRILE 90A, 11 1/2 X 11 3/4. MFR: CAMERON, PN: 702645-27-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83078.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-49 | | | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83079.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-22 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83080.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-31 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83081.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-51 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83082.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-30 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83083.A | | MR-1-C | ALLOY SOCKET HEAD CAP SCREW, 5/16-18 X 5/8. MFR: CAMERON, PN: 702503-04-00-05 | | | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83084.A | | MR-1-C | FACE SEAL AND SEAL RING INSERT ASSEMBLY. MFR: CAMERON, PN: 140146-03-01-03 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83085.A | | MR-1-C | FACE SEAL AND SEAL RING INSERT ASSEMBLY. MFR: CAMERON, PN: 140146-03-01-03 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83086.A | | MR-1-C | SINGLE LIP OIL SEAL - SOLID, 1.125" SHAFT, 1.561" OD, 0.256" WIDTH, CRW1 DESIGN. MFR: CHICAGO RAWHIDE, PN: 701156 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83087.A | | MR-1-C | O RING, SIZE AS-568-333 2.475 ID X 210 W 90D /MS-1078 NITRILE. MFR: CAMERON, PN: 702645-33-31 OBSOLETE | | | | | | 13 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83088.A | | MR-1-C | BORE SEAL O-RINGS. MFR: SEAHORSE ENERGY, PN: S-190001496-NC | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83089.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-03-80 | | | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83090.A | | MR-1-C | HEX SOCKET SET SCREW. MFR: CAMERON, PN: 2748045-01 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83090.A | | TRAINING ROOM 1 | HEX SOCKET SET SCREW. MFR: CAMERON, PN: 2748045-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83091.A | | MR-1-C | HEX HEAD CAP SCREW GR. 5 PLAIN. MFR: CAMERON, PN: 702500-04-00-14 | | | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83092.A | | MR-1-C | O RING NITRILE 90A, 2 5/8 X 2 7/8 X 1. MFR: CAMERON, PN: 702645-23-11 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83093.A | | MR-1-C | LOCKDOWN CHECK ASSEMBLY. PN: 2142055-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83094.A | | MR-3-C | LTPC, 7 WAY, RECEPTACLE (SOCKET), TITANIUM. MFR: TELEDYNE, PN: 10125671 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83095.A | | MR-5-C | LTPC, 4 WAY DUMMY ROV COVER. MFR: TELEDYNE, PN: 10163041 | AFE FW193006 | GENOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83096.A | | MW-AREA 6 | ASSEMBLY, INTERNAL TREE CAP, 10K WP WITH MEC SEAL, 5.75 SSR PLUG PREP AND EXTENSION SLEEVE, G2 SPOOLTREE SYSTEM, MATERIAL CLASS EE-NL, PSL 3, TEMP CLASS O TO 350 DEG F. MFR: CAMERON, PN: 2055296-02-01, SN: 110407008 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83097.A | | MR-5-C | TEST PLUG, ROV FLYING TYPE, 7 WAY. MFR: TELEDYNE, PN: 10121121 | AFE FW193006 | GENOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83098.A | | MR-3-C | TEST CONNECTOR, 7 WAY PLUG LOOPED. MFR: TELEDYNE, PN: 10322678 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83099.A | | MR-3-C | TEST CONNECTOR, 7 WAY RECEPTACLE LOOPED. MFR: TELEDYNE, PN: 10322677 | AFE FW193006 | GENOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83100.A | | MW-R14-2 | PRESSURE CAP JACKING TOOL. MFR: OCEANEERING, PN: 990701111 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83101.A | | MW-R14-2 | D/A HOLL-O-CYLINDER, RRH 1003, 100 TON, D44 19000, 700 BAR, 10000 PSI. MFR: ENERPAC, PN: 990701100 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83102.B | | DWW-YARD-C-VAN HJCU148137 2 | ASSEMBLY, PRESSURE CAP, 8"-15K CVC, 6.392 SEAL BORE, LIFTING FRAME WITH PMT RECEPTACLE, 1.38 THICK PADEYES AND (8) ANODES, ROV PANEL (S & O), 3/8"-15K AUTOCLAVE BALL VALVE, 3/8" 10K/15K SINGLE PORT HOT STAB ADAPTER AND 3/8"-20K AUTOCLAVE ADAPTERS, INCONEL 625 TUBING; PSL-3; ONV 2.7-3 COMPLIANT, WOP 15,000 PSI, TEST PRESSURE 22,500 PSI. MFR: ONESUBSEA, PN: 2395693-03 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83103.A | | MR-1-E | DYE SPEC GREEN TRACER STOCKS. MFR: JMN SPECIALTIES, PN: (BATCH) 181117 | AFE FW193007 | TROIKA | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83104.A | | DWW-YARD-C-VAN HJCU148137 2 | TEX 5 SHORT TERM PRESSURE CAP, 15000 PSI, 40"F-120"F. MFR: TRENDSETTER, PN: A1014720 | AFE FW193006 | GENOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83105.A | | MR-4-C | TEX 5 RING PRODUCTION GASKETS. MFR: TRENDSETTER, PN: A1006521 | AFE FW193006 | GENOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83105.B | | MR-2-D | TEX 5 RING PRODUCTION GASKETS. MFR: TRENDSETTER, PN: A1006521 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83106.A | | MR-3-C | 12 WAY FEMALE. MFR: TELEDYNE, PN: 1062177-550 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83107.A | | MW-AREA 1 | OII 90 DEGREE 5FL TERMINATION FRAME, "COBRA HEAD". MFR: OCEANEERING, PN: 0432505 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83108.A | | MW-AREA 2 | RS-8 MALE COUPLERS. MFR: HUNTING ENERGY SERVICES, PN: RS-8-A-96-PK | AFE FW193006 | GENOVESA | | | | 11 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83109.A | | MW-AREA 2 | RS-8 FEMALE COUPLERS. MFR: HUNTING ENERGY SERVICES, PN: RS-8-B-100-PK-PK2-C510 | AFE FW193006 | GENOVESA | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83110.A | | MW-AREA 2 | MONO COUPLER TEST FIXTURE, 5000 PSI. MFR: TRENDSETTER, PN: A1014948 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83111.A | | MW-AREA 2 | MONO COUPLER CROWS FEET TORQUE ADAPTER. MFR: TRENDSETTER, PN: M1014981 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83112.A | | MW-AREA 2 | BUTT-WELD ADAPTERS, 2507 SUPER DUPLEX. MFR: OCEAN EDGE, PN: FWE-1828-203 | AFE FW193006 | GENOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83113.A | | MW-AREA 2 | 39" STICK, 3/8" OD X .065" WT, 2507 SUPER DUPLEX TUBING - HT#: S54168; LOT#: 0002006052 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83114.A | | MW-AREA 4 | M1 REMOVABLE OB JUNCTION PLATE 14 WAY, M1 FIXED IB JUNCTION PLATE 14 WAY, INTERMEDIATE LOGIC CAP WELDMENT FRAME, 10K PSI (SPARE). MFR: OCEAN EDGE, PN: 1828-102 (INCOMPLETE) | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83114.A | | MW-AREA 4 | M1 REMOVABLE OB JUNCTION PLATE 14 WAY, M1 FIXED IB JUNCTION PLATE 14 WAY, INTERMEDIATE LOGIC CAP WELDMENT FRAME, 10K PSI (SPARE). MFR: OCEAN EDGE, PN: 1828-102 (COMPLETE) | AFE FW193006 | GENOVESA | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83115.A | | DWW-YARD | TRANSPORTATION FRAME FOR PW VX SS TYPE F2. MFR: ONESUBSEA | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83116.A | | OS-R2-S2 | ASSY, 8"-15K S-AX GASKET, W/ 2 DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2181646-08 | AFE FW193006 | GENOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83116.A | | OS-R2-S2 | ASSY, 8"-15K S-AX GASKET, W/ 2 DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2181646-08 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83116.B | | OS-R2-S2 | ASSY, 8"-15K S-AX GASKET, W/ 2 DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2181646-08 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83117.A | | OS-R1-S1 | TEST BODY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2274165-05 | AFE FW193006 | GENOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83117.B | | OS-R1-S1 | TEST BODY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2274165-05 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83118.A | | MW-R11-FL | RIGGING, 2 SHACKLES AND 1 MASTER LINK. MFR: CROSBY | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83119.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLED) | 2" PRODUCTION GASKET, 15K, SMALL BORE CONNECTOR, -50-300 DEG. MFR: VANCO, PN: 2398316-02 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83120.A | | TRAINING ROOM 1 | 2" PRODUCTION GASKET, 15K, SMALL BORE CONNECTOR, -50-300 DEG. MFR: VANCO, PN: 2398316-02 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83120.A | | MR-1-E | 3" GASKET FOR API 68X FLANGES. MFR: WOLAR, PN: BX 154 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83121.A | | MR-2-E | 6" GREEN TEST GASKET, PTFE COATED, AISI 4140, STEEL. MFR: GRAYLOC, PN: 62 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83122.A | | MR-1-E | BX 156 (IRON) GASKET. MFR: KLINGER | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83123.A | | MR-2-B | KLINGER SENTRY HX 7 1/16", 15K (INCLUDES SLEEVES, WASHERS, BLIND PLUG), MATL: 316SS/THERMICA. MFR: KLINGER, PN: SENS-193221019 | AFE FW183040 | KATMAI | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83124.A | | MW-R14-2 | PLATE MOUNTING, MATL: A572 GR. 50, EPOXY PAINTED YELLOW. MFR: OCEANEERING, PN: 0503308 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83125.A | | MW-R14-2 | HOLD BACK CLAMP (DEEPSEA TECHNOLOGIES). MFR: OCEANEERING, PN: 197940-CLAMP | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83126.A | | MW-R14-2 | LIFTING TOOL, GA AND LOM, PLATE BOTTOM AND TOP BOTH API 2H GRADE 50, BAR SUPPORT 1 1/4" BUN, 650MM LG, PLATE MOUNT. MFR: OCEANEERING, PN: 0503007 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83127.A | | MW-R6-2 | TOPSIDE TERMINATION ASSEMBLY, BOM ITEM 200. MFR: AKER SOLUTIONS, PN: 10317190 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83128.A | | MW-R9-2 | TOPSIDE TERMINATION GA AND LOM. MFR: OCEANEERING, PN: 0499240 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83129.A | | MW-AREA 1 | SFL PARKING POSTS ASSEMBLY. MFR: OCEANEERING, PN: 0440492 | AFE FW193006 | GENOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83130.A | | MW-AREA 2 | STUDS & NUTS, (459) 1 3/8" X 10" | | BULLWINKLE | | | | 459 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83131.A | | MW-AREA 2 | STUDS & NUTS, (140) 1 3/8" X 9" | | BULLWINKLE | | | | 140 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83132.A | | MW-AREA 2 | STUDS & NUTS, (118) 1" X 6.75" | | BULLWINKLE | | | | 118 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83133.A | | MW-AREA 2 | STUDS & NUTS, (288) 7/8" X 5.75" | | BULLWINKLE | | | | 288 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83134.A | | MR-1-B | TEX 5 RING TEST GASKET. MFR: TRENDSETTER, PN: A1006521 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83135.A | | MW-AREA 2 | STUDS & NUTS, (16) 1 1/2" X 10 3/8" | | BULLWINKLE | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83135.B | | MR-2-O | TEX 5 RING TEST GASKET. MFR: TRENDSETTER, PN: A1006521 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83136.A | | OS-R3-S2 | SPANNER WRENCH, BUMUS-41397. MFR: OCEANEERING, PN: 0506953-1 | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83137.A | | OS-R3-S2 | HOT STAB. MFR: OCEANEERING, PN: A05320-H | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83138.A | | OS-R3-S2 | HOT STAB. MFR: OCEANEERING, PN: A06282 | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83139.A | | OS-R3-S2 | HOT STAB. MFR: OCEANEERING, PN: A05320-G | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83140.A | | MR-4-O | 1 5/8"-8X10 A 320 L7M, ALL THREAD STUD, ZINC PLATED. MFR: AKER, PN: 10326674 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83141.A | | MR-4-O | WASHER, FLAT, 1 1/2" ID, CS FLZN. MFR: AKER, PN: 10078196 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83142.A | | MR-4-O | WASHER, LOCK, INTERNAL TOOTHED, 1 1/2" ID. MFR: AKER, PN: 10031049 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83143.A | | MR-4-O | 1 1/2-8 A194 2H NUTS, DOMESTIC, ZINC PLATED. MFR: AKER, PN: 1021500 | | | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83144.A | | MR-4-O | WASHER, INTERNAL TOOTH LOCK, TYPE A, 7/8". MFR: AKER, PN: 10048234 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83145.A | | MR-4-O | 3/4"-10 X 1 A320 L7M HUY HEX BOLT, ZINC PLATED, DOMESTIC. MFR: AKER, PN: 10323751 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83146.A | | MR-4-O | SHCS, 1/2" - 13UNRC X 2.5", L7M, ELZN. MFR: AKER, PN: 10323753 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83147.A | | MR-4-O | 1/4" - 20 X 1/2 PAN HEAD PHILLIPS MACHINE SCREWS, ZINC PLATED, DOMESTIC. MFR: AKER, PN: 10016851 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83148.A | | MR-4-O | NUT, HEX, 1/2" - 13 UNC. MFR: AKER, PN: 10190004 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83149.A | | MR-4-O | NUT, HEX, HEAVY, 7/8" - 9 UNC. MFR: AKER, PN: 10120510 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83150.A | | MR-4-O | 7/8" - 9 X 5 A320 L7M HUY HEX BOLT, ZINC PLATED, DOMESTIC. MFR: AKER, PN: 10323752 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83151.A | | MW-AREA 6 | BOLT, 1/2-13 UNC X 4" HXHD. 316. MFR: ABCO SUBSEA, PN: 5002.68 | | | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83152.A | | MW-AREA 6 | NUT, 1/2-13 UNC NYLOCK, 316. MFR: ABCO SUBSEA, PN: 5000.89 | | | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83153.A | | MW-AREA 6 | WASHER, 1/2 MS-819 (1 3/8 OD X 11 THK), 316. MFR: ABCO SUBSEA, PN: 5002.80 | | | | | | 18 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83154.A | | MR-GENERAL | VBR (VERTEBRAL BEND RESTRICTORS). MFR: WHITEFIELD PLASTICS, PN: 7187234VBRHD | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83155.A | | MW-AREA 6 | M7 VBR FLANGE, 5.96" ID X 22" PL, PU 85-D YELLOW. MFR: ABCO SUBSEA, PN: 0502297 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83156.A | | MW-AREA 6 | M7 VBR SEGMENT 6" ID, 412" LBR, 3.5 DEG. RA, PU 85D YELLOW. MFR: ABCO SUBSEA, PN: 0502298 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83157.A | | MW-AREA 6 | M7 VBR CAP, 6" ID, PU 85D YELLOW. MFR: ABCO SUBSEA, PN: 0502299 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83158.A | | MR-GENERAL | OEM HYDRAULIC COUPLER ASSY, SPECIALTY. MFR: HUNTING ENERGY SERVICES, PN: P207411 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83159.A | | MR-GENERAL | SEAL, METAL C-RING, INCONEL 71, 33.07MM OD X 2.39MM. MFR: FMC TECHNOLOGIES, PN: P206958 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83160.A | | MR-GENERAL | METAL SEAL, MSBMS-II-UD BODY, F/ 5-15K HANGER, INCONEL 625, SILVER PLATED, 4.686 OD X 3.913 ID, 0.450 LG, F/ HALLIBURTON CROWN PLUG. MFR: FMC TECHNOLOGIES, PN: P1000011680 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83161.A | | MR-GENERAL | METAL SEAL, MSBMS-II-UD BODY, F/ 5-15K HANGER, INCONEL 625, SILVER PLATED, 4.988 OD X 4.217 ID, 0.450 LG, F/ HALLIBURTON CROWN PLUG. MFR: FMC TECHNOLOGIES, PN: P1000011678 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83162.A | | MR-GENERAL | 5-SEAL, OD TYPE, NON STD GEOMETRY, 1.506/1.494 OD X 0.140 CS X 0.185 LG, W/ 316 SS SPRINGS, .06 DIA COIL, USE SAME MOLD AS 48-500-232. MFR: FMC TECHNOLOGIES, PN: DP-48-4279 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83163.A | | MR-GENERAL | S-SEAL, ID TYPE, 13.707/13.653 OD X 0.300 CS X 0.516 LG, E50159 90A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ COAXIAL COMPOSITE & ELGILOY SPRINGS, .09 & .06 DIA COILS, USE SAME MOLD AS, P/N P106191-0003. MFR: FMC TECHNOLOGIES, PN: P182166 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83164.A | | MR-GENERAL | S-SEAL, B TYPE GEOMETRY, 15.155/15.065 OD X 0.330 CS X 0.531 LG, W/ COAXIAL COMPOSITE & ELGILOY SPRINGS, .09 & .06 DIA COILS. MFR: FMC TECHNOLOGIES, PN: P1000009444 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83165.A | | MR-GENERAL | S-SEAL, OD TYPE, 14.794 / 14.706 OD X 0.500 CS X .555 LG, E50159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ COAXIAL COMPOSITE & ELGILOY SPRINGS, .09 DIA COIL. MFR: FMC TECHNOLOGIES, PN: P182168 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83166.A | | MR-5-D | TEX-2 625 PRODUCTION GASKET, MFR:TRENDSETTER, PN: TSN90228S | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83166.B | | MR-5-D | TEX-2 625 PRODUCTION GASKET, MFR:TRENDSETTER, PN: TSN90228S | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83167.A | | MR-5-D | TEST GASKET, INCONEL-718, PTFE COATING, M21700. MFR: DESTEC ENGINEERING, PN: H08O 21698 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83168.A | | MR-GENERAL | 1" X 10' RATCHET TIE DOWN SET (PACK OF 4), 1500 LB. MAX, 500 LB. WLL. MFR: ERICKSON, PN: 31352 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83169.A | | MW-AREA 4 | GUIDE AND LOCKING FUNNEL., UH-575/550, MALE, 15K. MFR: UNITECH, PN: 27324/D | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83170.A | | MW-AREA 4 | ANTI ROTATION FORK, UH-550, ROV OPERATED. MFR: UNITECH, PN: 8142/E | | | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83171.A | | MW-AREA 6 | MQC 12/12 FEMALE TERMINATOR BRAVO. MFR: UNITECH, PN: G04-3988-05-21255 #01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83172.A | | MW-AREA 6 | UH-550, F - 7.500 2" CONNECTOR, FEMALE PART. MFR: UNITECH, PN: G02-7011-8090/#31/0900 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83173.A | | MW-AREA 6 | MQC 12/10 MALE INCL. UH-107 WITH 3/8" NPTF. MFR: UNITECH, PN: G04-3953-05-21522-04 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83174.A | | MW-AREA 6 | MQC 12/10 MALE INCL. UH-107 WITH 3/8" NPTF. MFR: UNITECH, PN: G04-3953-05-21522-03 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83175.A | | MR-3-B | RETAINER, GASKET SEAL. MFR: VANCO, PN: 2124583-01 REV. B01 | | | | | | 13 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83176.A | | MW-AREA 4 | UH-575 FEMALE WITH 2" SCH XXS PIPE - 15000 PSI. MFR: UNITECH, PN: G02-1187-09-25379-A #01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83177.A | | MW-AREA 4 | FLUSHING MQC, INBOARD, 4 WAY, 1-1. MFR: AKER, PN: 10151348 REV 01/01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83178.A | | MW-AREA 4 | J-PLATE ASSY, LTC, 8-L. MFR: AKER, PN: 10017646 REV 02 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83179.A | | OS-R3-S2 | M/D LINER DEBRIS CAP 18 3/8", MATL: 65300 - POLYETHYLENE. MFR: PRECISION FLUOROCARBON INC., PN: 2035503-02 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83180.A | | MW-AREA 1 | 18-3/4" VX RING GASKET, 316 SS. MFR: X-CEL AMP, PN: 111227-1. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83181.A | | BW-NEP-AREA | ICE MAKER (MODEL KDT0400A-161) AND ICE STORAGE BIN (MODEL K400). MFR: MANITOWOC FOODSERVICE, INC. | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83182.A | | MR-GENERAL | FIRE EXTINGUISHER BOX, FOR NEPTUNE, VK 826 | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83183.A | | OS-GENERAL | STRUCTURAL FRP TANK. MFR: PENTAIR, PN: CH30646-02010101-30 | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83184.A | | OS-GENERAL | STRUCTURAL FRP TANK. MFR UNKNOWN. | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83185.A | | OS-GENERAL | NAV-AID FRESNEL LENS FOR MAX LUMINA MARINE SIGNAL LANTERN, 300 MM. MFR: TIDELAND, PN: ML-300 | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83185.B | | OS-GENERAL | NAV-AID FRESNEL LENS FOR MAX LUMINA MARINE SIGNAL LANTERN, 300 MM. MFR: TIDELAND, PN: ML-300 | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83186.A | | BW-NEP-AREA | METHANOL PUMP MOTOR, 20V 120W. MFR: MARATHON, PN: 284TTGN407698B | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83187.A | | BW-NEP-AREA | STEEL ENGINE PULLER | | NEPTUNE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83188.A | | MW-AREA 1 | GASKET, 10"-15M, SEAL PLATE, MCPAC. MFR: VANCO, PN: 212457902 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83189.A | | MR-1-E | ST RG RETAINER/BUSHING ASSY. MFR: FISHER, PN: 25A6683X072 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83190.A | | OS-R3-S2 | GENERAL SERVICE GAUGE, 0-5000 PSI, 316 SST TUBE AND SOCKET. MFR: MARSH, PN: 097975 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83191.B | | OS-R3-S2 | XMAS TREE GAUGE, 0-5000  PSI, AISI 316 TUBE AND SOCKET. MFR: ASHCROFT | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83192.A | | MW-AREA 5 | UH-550 MALE TEST 2" STAB CONNECTOR RECEPTACLE. MFR: UNITECH, PN: G02-3956-05-21440-02 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83193.A | | MW-AREA 5 | MQC 2 MALE TERMINATOR ALPHA GENERAL ARRANGEMENT AND INTERFACE. MFR: UNITECH, PN: 21747 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83194.A | | OS-GENERAL | ISOLATION NEEDLE VALVE (TREE MOUNTED), 10K WP, 3/4 TURN, 0.359 BORE, 4 BOLT 8X151 CONNECTION, MATL CLASS "FF', TEMP RATING -20 TO 140 DEG F, API6A & 17D, PSL-3, NACE MR-01-75, ASME VIII/DIV2, OLIVER. MFR: ONESUBSEA, PN: 2205741-04 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83195.A | | MW-R9-3 | OUTER JACKET REPAIR KIT (TAPE, WELDER, ROD, SANDING ROLL, FILE, HEAT GUN, SCRAPER, CUTTER). MFR: OCEANEERING, PN: VARIOUS | | TROIKA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83196.A | | MW-AREA 3 | 3.75" BLANK EXTENSION, 12' LONG. MFR: HUNTING ENERGY SERVICES | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83197.A | | BW-AREA 1 | M1 REMOVABLE LOGIC CROSSOVER PLATE, 14 WAY, 3 LINES. MFR: OCEANEERING, PN: 0508204 | | KATMAI | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83198.A | | DWW-YARD-C-VAN PBIU4095260 | CENTRAMAX CENTRALIZER SUB, RT1, 11.875", 71.8#, 140KSI MYS, THS13, MFR:INNOVEX, PN: RT1-302-9901-0324-0016 | | ORLOV | | | | 14 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83198.A | | DWW-YARD-C-VAN HJCU148137 2 | CENTRAMAX CENTRALIZER SUB, RT1, 11.875", 71.8#, 140KSI MYS, THS13, MFR:INNOVEX, PN: RT1-302-9901-0324-0016 | | ORLOV | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83198.A | | DWW-YARD-C-VAN MOTU 045905745G1 | CENTRAMAX CENTRALIZER SUB, RT1, 11.875", 71.8#, 140KSI MYS, THS13, MFR:INNOVEX, PN: RT1-302-9901-0324-0016 | | ORLOV | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83199.A | | DWW-YARD-C-VAN PBIU4095260 | CENTRAMAX CENTRALIZER SUB, PT1, 18.00" 117#, VAM HD-L Q125HP. MFR: INNOVEX, PN: PT1-457-5803-0504-0009 | | GENOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83199.A | | DWW-YARD-C-VAN 4334224ZG1 | CENTRAMAX CENTRALIZER SUB, PT1, 18.00" 117#, VAM HD-L Q125HP. MFR: INNOVEX, PN: PT1-457-5803-0504-0009 | | GENOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83200.A | | MW-AREA 4 | GUIDE SHOE, 7 3/4" TSH 523, NON-DOPELESS, 46.1# Q125/140Y F1009. MFR: BLACKHAWK, PN: 0114055 A | | GENOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83201.A | | MW-AREA 4 | STOP COLLAR, 22" LO HD DBL, STSC R CS. MFR: LEGACY, PN: 6026022 | | KATMAI | | | | 117 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83202.A | | MW-AREA 4 | CENTRALIZER, BOW SPRING 22 STR L0 LPWLD 85R 31.62 OD CS. MFR: LEGACY, PN: 1108522 | | KATMAI | | | | 18 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83203.A | | MW-AREA 4 | 7 3/4" 46.1# FLOAT COLLAR, THS23 DL ATRB. MFR: INNOVEX, PN: 735-197-9901-0326 | | KATMAI | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83204.A | | MW-AREA 4 | 7 3/4" 46.1# FLOAT COLLAR, THS23 DL AFRB TBRO Q12. MFR: INNOVEX, PN: 735-197-0901-0344-ATAB | | KATMAI | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83205.A | | MW-AREA 4 | 7 3/4" 46.1# REAMER SHOE. MFR: INNOVEX, PN: 704-197-0901-0326-210 | | KATMAI | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83206.A | | BW-AREA 3 | 10 3/4" TSH WEDGE , MACE II CROSSOVER, DOPELESS, 85.3-97.1#. MFR: TENARIS, PN: K&B-011811-050 | | | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83207.A | | TRAINING ROOM 1 | SEAL BODY, TYPE K-SEAL F/ 17.500 DIA BORE. MFR: ONESUBSEA, PN: 2091059-03-01 | AFE FWS80018 | KATMAI/ORLOV/GE | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83208.A | | OS-R1-S2 | ROC RAMPING GAUGE SIMULATOR, SUPPLY VOLTAGE 36-48V, GAUGE CURRENT 6-10BMA, RS232 SERIAL CONNECTOR. MFR: WELL DYNAMICS (HALLIBURTON), PN: 9650-6052 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83209.A | | OS-R1-S2 | SUBSEA CHEMICAL INJECTION METERING VALVE SIMULATOR, 100-240 VAC, 50/60 H2, 24VDC. MFR: SKOFLO, PN: 100322-L200-CAN-FL | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83210.A | | OS-R1-S2 | PERSONAL COMPUTER FOR FLOWMETER GAUGE SIMULATION SYSTEM. MFR: PANASONIC TOUGHBOOK, PN: CF-54FX128VM | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83211.A | | MW-AREA 4 | CVC CONNECTOR, USED FOR PIG RECEIVER LAUNCHER (PRL) CONNECTION. MFR: ONESUBSEA, PN: 5026970BH1-02 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83212.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | GENERIC EL ROV LTC 4/7/12 UCOVERS 4/7/12-WAY BULKHEAD ROV RECEPTACLE WITH PADDLE HANDLES. MFR: TELEDYNE, PN: 2185425-04-09 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83213.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | GENERIC EL ROV LOOP, 12 PIN, MALE. MFR: TELEDYNE, PN: 2197088-41-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83214.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | GENERIC EL ROV PARK, 4/7/12P W/O INS, MATL: TITANIUM. MFR: TELEDYNE, PN: 2197088-37-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83215.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | OSS BARROW, STAB PLATE DUMMY, 12 WAY ELECTRICAL FEMALE. MFR: ONESUBSEA, PN: 223521-42-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83216.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | O-RING FOR 4.375 SSR W/ 1 ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2749294-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83216.A | | TRAINING ROOM 1 | O-RING FOR 4.375 SSR W/ 1 ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2749294-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83217.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | MECHANICAL SPARES, 4.375 SS WIRELINE ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2166284-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83217.A | | TRAINING ROOM 1 | MECHANICAL SPARES, 4.375 SS WIRELINE ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2166284-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83218.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | SPRING, OD: 0.720", WIRE: 0.112", LENGTH: 1.5", SPRING RATE: 158.5 LB/IN, MATL: 302 SS. MFR: ONESUBSEA, PN: 2748415-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83218.A | | TRAINING ROOM 1 | SPRING, OD: 0.720", WIRE: 0.112", LENGTH: 1.5", SPRING RATE: 158.5 LB/IN, MATL: 302 SS. MFR: ONESUBSEA, PN: 2748415-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83219.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | METAL SEAL RING, 4.375", SSR WL PLUG. MFR: ONESUBSEA, PN: 2748650-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83219.A | | TRAINING ROOM 1 | METAL SEAL RING, 4.375", SSR WL PLUG. MFR: ONESUBSEA, PN: 2748650-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83220.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | SPRING, CPRSM, .125 X .970 OD X 3.5 SST, ENDS GROUND, 44.2 LB/IN RATE, 11.4 ACTIVE COILS, 13.4 TOTAL COILS. MFR: ONESUBSEA, PN: 2748264-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83221.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | SPARES, 8"-15K S-AX PRODUCTION GASKET (KIT). MFR: ONESUBSEA, PN: 2500896-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83222.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | SPARES, 8"-15K CVC OUTBOARD CONNECTORS (KIT). MFR: ONESUBSEA, PN: 2500896-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83223.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 124, 1.268 ID X 1.440 OD NITRILE, PARBAK 8-SERIES. MFR: ONESUBSEA, PN: 042000-01-24 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83223.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 124, 1.268 ID X 1.440 OD NITRILE, PARBAK 8-SERIES. MFR: ONESUBSEA, PN: 042000-01-24 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 98 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83224.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | SPACER, PEEK LIP SEAL, HYDRAULIC STAB, G2, SPOOL TREE SYSTEM. MFR: ONESUBSEA, PN: 2142381-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83225.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-125, 1.299 ID X 103W, MATL: GREEN TWEED, CHEMRAZ, OR DU PONT - KALREZ 4079. MFR: ONESUBSEA, PN: 2731180-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83225.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-125, 1.299 ID X 103W, MATL: GREEN TWEED, CHEMRAZ, OR DU PONT - KALREZ 4079. MFR: ONESUBSEA, PN: 2731180-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83226.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 125, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2749304-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83226.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 125, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2749304-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83228.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 454, 12.524 ID X 12.996 OD NITRILE, PARBAK 8 SERIES. MFR: ONESUBSEA, PN: 042000-04-54 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83228.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 454, 12.524 ID X 12.996 OD NITRILE, PARBAK 8 SERIES. MFR: ONESUBSEA, PN: 042000-04-54 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83229.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 208, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2748250-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 120 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83229.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 208, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2748250-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 214 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83230.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-115, .674 ID X .103W 90D/MS-1078, NITRILEPKG AND QUAL. MFR: ONESUBSEA, PN: 702645-11-51 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83230.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-115, .674 ID X .103W 90D/MS-1078, NITRILEPKG AND QUAL. MFR: ONESUBSEA, PN: 702645-11-51 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 89 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83231.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | O RING, 348, CHEMRAZ 526, GREEN TWEED. MFR: ONESUBSEA, PN: 2748686-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83231.A | | TRAINING ROOM 1 | O RING, 348, CHEMRAZ 526, GREEN TWEED. MFR: ONESUBSEA, PN: 2748686-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83232.A | | TRAINING ROOM 1 | BACK UP RINGS, 115, .702 INCH ID X .874 INCH OD, DUROMETER 90, NITRILE, PARBAK 8-SERIES. MFR: ONESUBSEA, PN: 042000-01-15 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 94 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83233.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | SPACER RING, PEEK LIP SEAL, HYDRSTAB, G2 SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2142790-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83233.A | | TRAINING ROOM 1 | SPACER RING, PEEK LIP SEAL, HYDRSTAB, G2 SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2142790-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 77 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83234.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | KEY, RECTRACTABLE ORIENTATION, INTERNAL TREE CAP, SPOOLTREE SYSTEM, 10K, AISI 4130 LAS, FLUROPOLYMER, API 6A 20TH ED, API 17D 2ND ED. MFR: ONESUBSEA, PN: 2155928-01-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83234.A | | TRAINING ROOM 1 | KEY, RECTRACTABLE ORIENTATION, INTERNAL TREE CAP, SPOOLTREE SYSTEM, 10K, AISI 4130 LAS, FLUROPOLYMER, API 6A 20TH ED, API 17D 2ND ED. MFR: ONESUBSEA, PN: 2155928-01-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83235.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | LIP SEAL, AXIAL FOR .852 DIA BOREX .666 DIA ROD, PEEK W/ ELGILOYSPRING. MFR: ONESUBSEA, PN: 2748243-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 72 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83235.A | | TRAINING ROOM 1 | LIP SEAL, AXIAL FOR .852 DIA BOREX .666 DIA ROD, PEEK W/ ELGILOYSPRING. MFR: ONESUBSEA, PN: 2748243-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 124 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83236.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-120, .987 ID X .103 W 85D, MS-001068 CAMLAST ™ PKG AND QUAL/CAMERON | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83237.A | | DWW-YARD-C-VAN TTNU97610145G1 (CLIMATE CONTROLLED) | VEE PACKING RING, 4.375" WL PLUG. MFR: ONESUBSEA, PN: 2748806-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83237.A | | TRAINING ROOM 1 | VEE PACKING RING, 4.375" WL PLUG. MFR: ONESUBSEA, PN: 2748806-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83238.A | | TRAINING ROOM 1 | SHEAR PIN, 616/.614 DIA X 1.0 LGHALF KNURL BRASS #464. MFR: ONESUBSEA, PN: 263134-17 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83239.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 381, 12.028 ID X 12.394 OD NITRILE PARBAK B-SERIES. MFR: ONESUBSEA, PN: 042000-03-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83239.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 381, 12.028 ID X 12.394 OD NITRILE PARBAK B-SERIES. MFR: ONESUBSEA, PN: 042000-03-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83240.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-381, 11.975 ID X .210 W 90D / MS-1078, NITRILEPKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-38-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 18 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83240.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-381, 11.975 ID X .210 W 90D / MS-1078, NITRILEPKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-38-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 14 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83241.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-208, .609 ID X .139 W, 85D/MS-001131, DUROCAM PKG AND QUAL/CAMERON 702647. MFR: ONESUBSEA, PN: 702647-20-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 102 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83241.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-208, .609 ID X .139 W, 85D/MS-001131, DUROCAM PKG AND QUAL/CAMERON 702647. MFR: ONESUBSEA, PN: 702647-20-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 116 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83242.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 353. 5.028 ID X 5.394 OD NITRILE PARBAK B SERIES. MFR: ONESUBSEA, PN: 042000-03-53 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83243.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | PLUG, AFO, LEE CO, .375-24, MP3SNNACE, MR0175. MFR: ONESUBSEA, PN: 2826603-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83244.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | O RING, SPECIAL, 12.14 ID X 12.56 OD X 0.228 HT, HNBR RUBBER, 95 DURO, N4007-95. MFR: ONESUBSEA, PN: 2788002-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83244.A | | TRAINING ROOM 1 | O RING, SPECIAL, 12.14 ID X 12.56 OD X 0.228 HT, HNBR RUBBER, 95 DURO, N4007-95. MFR: ONESUBSEA, PN: 2788002-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83245.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 360 INNER DIAMETER, 5.903 INCH, OUTER DIAMETER, 6.269 INCH, NITRILE, PARBAK B SERIES. MFR: ONESUBSEA, PN: 042000-03-60 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83246.A | | MR-2-B | SEAL BODY, TYPE K SEAL, F/12.675 DIA BORE. MFR: ONESUBSEA, PN: 2091059-05-01 | | GUNFLINT | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83246.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | SEAL BODY, TYPE K SEAL, F/12.675 DIA BORE. MFR: ONESUBSEA, PN: 2091059-05-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83247.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | GENERIC EFL 12P TO 12S TP 6DM, CONNECTOR HOUSING MTL: TITANIUM, MFR: ONESUBSEA, PN: 2197088-51-22 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83247.B | | MW-AREA 2 | GENERIC EFL 12P TO 12S TP 6DM, CONNECTOR HOUSING MTL: TITANIUM, MFR: ONESUBSEA, PN: 2197088-51-22 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83248.A | | MW-AREA 6 | ASSEMBLY, TREE DEBRIS CAP, G2/G3 SPOOL TREE SYSTEM, WITH H4 VETCO MANDREL PROFILE TOP. MFR: ONESUBSEA, PN: 2181899-14 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83249.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | ASSEMBLY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL, O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: ONESUBSEA, PN: 2274164-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83249.B | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | ASSEMBLY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL, O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: ONESUBSEA, PN: 2274164-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83250.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | REPLACEMENT SEAL KIT, G3 SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2341915-01-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83251.A | | MR-4-C | SPARES, 8"-15K CVC PRESSURE CAP (ELASTOMERIC SEAL). MFR: ONESUBSEA, PN: 2500896-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83252.A | | MR-2-B | SPARES, 8"-15K CVC MTM PRESSURE CAP. MFR: ONESUBSEA, PN: 2500896-06 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83252.A | | TRAINING ROOM 1 | SPARES, 8"-15K CVC MTM PRESSURE CAP. MFR: ONESUBSEA, PN: 2500896-06 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83253.A | | MW-AREA 6 | MQC, PLATE, OB, TEST/FLUSH, 12 WAY, A45. MFR: ONESUBSEA, PN: CM-018106-14 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83254.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | SPECIAL GASKET, CIW, AX/VX, SYMMETRICAL DESIGN TO FIT 18 3/4" 10K  VETCO (VX), HOUSING CONNECTION, 316SS, WITH O-RING GROOVES, SILVER PLATED. MFR: ONESUBSEA, PN: 2235142-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83255.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | (KIT) - SPARES, ROUTINE, RECEIVED GOOD REPAIR INTERNAL TREE CAP WITH K-SEAL, 15K, SPOOL TREE SYSTEM. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83256.A | | MW-AREA 6 | MARINE GROWTH COVER, 1 1/3 WAY FOR PARKING PLATES. MFR: ONESUBSEA, PN: 223532-29 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83257.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | SPECIAL GASKET, CIW, SPHERICAL, AX/VX, SYMMETRIC DESIGN TO FIT 18 3/4" 10K VETCO VX HOLDING CONNECTION, 316SS, NO RESILIENT RINGS, SILVER PLATED. MFR: ONESUBSEA, PN: 2235142-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83258.A | | MW-AREA 6 | FWEKAT - INTENSIFIER FREE STAB PLATE, 6/0 WON TREE. MFR: ONESUBSEA, PN: 223520-67 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83259.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | GENERIC T&F PLATE FOR FREE PLATE, 1 1/3 WAY. MFR: ONESUBSEA, PN: 223518-69 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83260.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | GENERIC ASSY PTT, 15K W/HARNESS 6MM, 12 WAY PIN. MFR: ONESUBSEA, PN: 223367-79 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83261.A | | MW-AREA 6 | ASSEMBLY, FOR FAT, INTERNAL TREE CAP, G3 SPOOLTREE SYSTEM, 10K, MEC SEAL WITHOUT K-SEAL, 4.767 IN ELMAR WIRELINE PLUG PREP, EXTENSION SLEEVE, SPRINGLOADED KEY AND DEBRIS SLOTS. MFR: ONESUBSEA, PN: 2180719-32 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83262.A | | MW-AREA 6 | GENERIC, T&F PLATE FOR FIXED PLATE, 20/0 WAY. MFR: ONESUBSEA, 223520-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83263.A | | MR-2-B | SEAL, METAL END CAP SEAL, 17.832" NOM SEAL BORE. MFR: ONESUBSEA, PN: 647438-15-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83263.A | | TRAINING ROOM 1 | SEAL, METAL END CAP SEAL, 17.832" NOM SEAL BORE. MFR: ONESUBSEA, PN: 647438-15-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83264.A | | DWW-YARD-C-VAN TTN\9776101456\1 (CLIMATE CONTROLLED) | METAL END CAP SEAL, 13.188/13.191 SEAL BORE WITH OD BUMP AND SQUARE END CAPS. MFR: ONESUBSEA, PN: 2026350-07-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83265.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | M1 FIXED JUNCTION PLATE. 14 WAY, 11 X 1/2 IN RS-NV TO M9, 3 X 1 IN RS-NV TO M9, ASSEMBLY. MFR: OCEANEERING, PN: 166370-001 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83266.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | REMOVABLE IWOCS, TH, 14 WAY, 9 X 1/2 IN RS, 3 X 1 RS LINES, ASSEMBLY. MFR: OCEANEERING, PN: 0510989 SN: 165617-001 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83266.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | REMOVABLE IWOCS, TH, 14 WAY, 9 X 1/2 IN RS, 3 X 1 RS LINES, ASSEMBLY. MFR: OCEANEERING, PN: 0510989 SN: 165618-001 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83267.A | | MW-AREA 4 | INBOARD PLATE, 14 WAY. MFR: OCEANEERING, PN: 0428794 REV A | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83268.A | | MW-AREA 4 | BEND RESTRICTOR. MFR: OCEANEERING. NO PN. | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83269.A | | MR-1-C | FEMALE COUPLER. MFR: OCEANEERING, PN: 0428079 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83270.B | | MR-1-C | FEMALE COUPLER. MFR: OCEANEERING, PN: 0437828 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83271.A | | MW-AREA 4 | REMEDIATION PANEL FOR M1 PLATE. MFR: OCEANEERING, PN: NONE. | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83272.A | | MW-AREA 6 | BACKUP HANGER ASSEMBLY. MFR: OES, PN: 2301984-07-01, SN: S00026436-1 (3' X 17' PALLET) | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83272.A | | MW-AREA 5 | BACKUP HANGER ASSEMBLY. MFR: OES, PN: 2301984-07-01, SN: 121452425-1 (3' X 10' PALLET) | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83273.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | CC-SEAL, .888 OD X .640 ID X .124 CS. MFR: ONESUBSEA, PN: 2248632-02 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 382 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83274.A | | MR-1-B | SPLIT LOAD RING, FOR 4.883" NOM RLH-2. MFR: ONESUBSEA, PN: 2216807-12 | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83275.A | | MR-1-B | UPPER LOAD RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216807-34 | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83276.A | | MR-GENERAL | CPI COUPLER, MALE 1/2, RS, STD. MFR: AKER SOLUTIONS, PN: 10329147 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83277.A | | MR-GENERAL | CPI RS -8 FEMALE TEST COUPLER. MFR: AKER SOLUTIONS, PN: 10330273 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83278.A | | MR-GENERAL | CPI 1/2" MALE RS COUPLER WITH FITTINGS. MFR: AKER SOLUTIONS, PN: 10264287 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83279.A | | MW-AREA 4 | 13 TON CRANE, 4 PIECES. MFR: CORE LIFTING, PN: 27687 | | GC-65 | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83280.A | | DWW-YARD | 3 1/2" X 20' SLING, 102 TONS, VERTICAL. SN: HOU-058482-002 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83281.A | | DWW-YARD | 3 1/2" X 20' SLING, 102 TONS, VERTICAL. SN: HOU-058482-001 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83282.A | | DWW-YARD | 3" X 20' SLING, 77 TONS, VERTICAL. PN: 710619L, SN: HOU-05723-001 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83283.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 023, 1.080 ID. MFR: ONESUBSEA, PN: 042000-00-23 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83283.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 023, 1.080 ID. MFR: ONESUBSEA, PN: 042000-00-23 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83285.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | BACK UP RING, 1.020 +/- .004 ID. MFR: ONESUBSEA, PN: 2748250-38 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 72 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83286.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | B-PORT BACK UP RING, SIZE 318, 1.013 ID. MFR: ONESUBSEA, PN: 042000-03-18 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83287.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | B-PORT BACK UP RING, SIZE 323, 1.316 ID. MFR: ONESUBSEA, PN: 042000-03-23 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83288.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-323, 1.287 ID. MFR: ONESUBSEA, PN: 702645-32-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83288.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-323, 1.287 ID. MFR: ONESUBSEA, PN: 702645-32-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83289.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | B-PORT SEAL, O-RING, SIZE AS-568-318, .975 ID. MFR: ONESUBSEA, PN: 702645-31-81 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83290.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-013, .426 ID. MFR: ONESUBSEA, PN: 702647-01-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83291.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SHEAR SCREW FOR SSR PROTECTION. MFR: ONESUBSEA, PN: 2748059-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83291.A | | TRAINING ROOM 1 | SHEAR SCREW FOR SSR PROTECTION. MFR: ONESUBSEA, PN: 2748059-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83292.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 206, .518 ID. MFR: ONESUBSEA, PN: 2748250-10 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 312 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83293.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O RING, SIZE AS 568-023, 1.051 ID. MFR: ONESUBSEA, PN: 702645-02-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83293.A | | TRAINING ROOM 1 | O RING, SIZE AS 568-023, 1.051 ID. MFR: ONESUBSEA, PN: 702645-02-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83294.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SOCKET SET SCREW FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748047-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83295.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | COMPRESSION SPRING FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748049-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83295.A | | TRAINING ROOM 1 | COMPRESSION SPRING FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748049-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83296.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | LOCKING INSERT FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748048-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83296.A | | TRAINING ROOM 1 | LOCKING INSERT FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748048-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83297.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | BULLET FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748044-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83297.A | | TRAINING ROOM 1 | BULLET FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748044-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83298.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | BUTTON HD CREW. MFR: ONESUBSEA, PN: 2359600-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83299.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | STAB SUB, CONTROL LINE, THRT. MFR: ONESUBSEA, PN: 2229924-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83300.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | TENSILE SCREW, UPPER, MECHANICAL. MFR: ONESUBSEA, PN: 262393-06 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83301.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SHEAR PIN, DIA .434 X 2.30 LG. MFR: ONESUBSEA, PN: 2155653-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83301.A | | TRAINING ROOM 1 | SHEAR PIN, DIA .434 X 2.30 LG. MFR: ONESUBSEA, PN: 2155653-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83302.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | ASSEMBLY, SEAL SLEEVE, 15K THRT. MFR: ONESUBSEA, PN: 2340873-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83303.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SCR 12 PT CAP, .625-11 X 1.250 87 ZN PL. MFR: ONESUBSEA, PN: 702585-14-00-12 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83304.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SHEAR PIN, G2 BORE PROTECTOR, NAVAL. MFR: ONESUBSEA, PN: 2155653-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83305.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | GRUB SCREW, UPPER WIRELINE PLUG. MFR: ONESUBSEA, PN: 2359600-32 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83306.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | VEE PACKING RING FOR SSR HVP0-090. MFR: ONESUBSEA, PN: 2748052-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83307.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | LOCKING WIRE, WIRELINE, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2359600-30 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83308.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | S SEAL, FOR USE IN 8.125" +/-.002 BORE. MFR: ONESUBSEA, PN: 2731494-03-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83309.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, WIRELINE PLUG. MFR: ONESUBSEA, PN: 2749897-08 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83310.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | RING, SCARF CUT, PEEK. MFR: ONESUBSEA, PN: 2329622-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 36 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83310.A | | TRAINING ROOM 1 | RING, SCARF CUT, PEEK. MFR: ONESUBSEA, PN: 2329622-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83311.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SCREW. MFR: ONESUBSEA, PN: 263134-18 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83311.A | | TRAINING ROOM 1 | SCREW. MFR: ONESUBSEA, PN: 263134-18 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83312.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING. MFR: ONESUBSEA, PN: 041259-12-01-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83313.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-07. MFR: ONESUBSEA, PN: 702647-00-71 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83314.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SUB ASSEMBLY CONTROL RECEPTACLE. MFR: ONESUBSEA, PN: 2141634-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83315.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | POLYPAK, TYPE "B" SEAL. MFR: ONESUBSEA, PN: 2731344-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83316.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | MACHINED S SEAL, 8.125" BORE, WITH GROOVE. MFR: ONESUBSEA, PN: 2788005-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83316.A | | TRAINING ROOM 1 | MACHINED S SEAL, 8.125" BORE, WITH GROOVE. MFR: ONESUBSEA, PN: 2788005-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83317.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL RING, 10.000 ID X 1.750 OD X .375. MFR: ONESUBSEA, PN: 2731381-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83318.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-451, 10.975 ID. MFR: ONESUBSEA, PN: 702647-45-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 15 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83318.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-451, 10.975 ID. MFR: ONESUBSEA, PN: 702647-45-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83319.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL RING, 16.25 ID X 17.00 OD X .375. MFR: ONESUBSEA, PN: 2731382-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83319.A | | TRAINING ROOM 1 | SEAL RING, 16.25 ID X 17.00 OD X .375. MFR: ONESUBSEA, PN: 2731382-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83320.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL RING, 10.000 ID X 10.750 OD X .75. MFR: ONESUBSEA, PN: 2731381-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83321.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL RING, 12.139 ID X 12.889 OD X .375. MFR: ONESUBSEA, PN: 2731383-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83322.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-37-21 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83323.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, .275 W X 15.955 ID X. MFR: ONESUBSEA, PN: 702647-46-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83324.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | BACK UP RING, 11.426 +/- .006 ID X .221. MFR: ONESUBSEA, PN: 2748250-19 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83325.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-383, 13.975 ID. MFR: ONESUBSEA, PN: 702645-38-31 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83325.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-383, 13.975 ID. MFR: ONESUBSEA, PN: 702645-38-31 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83326.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-369, 7.975 ID. MFR: ONESUBSEA, PN: 702645-36-95 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83327.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SOCKET SHOULDER SCREW. MFR: ONESUBSEA, PN: 2302607-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83328.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | VEE PKG RING, GREEN TWEED. MFR: ONESUBSEA, PN: 2748051-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 18 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83329.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | S SEAL. FOR USE IN 8.125" +/- .002 BORE. MFR: ONESUBSEA, PN: 2731494-03-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83330.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING V1238-95 VITON O RING, SIZE 2-161. MFR: ONESUBSEA, PN: 2788847-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83331.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL RING, 11.50 ID X 12.25 OD. MFR: ONESUBSEA, PN: 2708129 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83332.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-087. MFR: ONESUBSEA, PN: 702647-00-71 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 11 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83333.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE 1 X 1 3/16. MFR: ONESUBSEA, PN: 702645-12-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 25 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83334.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | PLUG ADAPTER RING FIR 5.750" UPPER WL. MFR: ONESUBSEA, PN: 2736043-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83335.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | COUPLER SEAL KITS. MFR: ONESUBSEA. | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83336.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL KIT. MFR: ONESUBSEA, PN: 2500869-13 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83337.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | KEY, TBG HGR RUNNING TOOL, G2 SPOOL. MFR: ONESUBSEA, PN: 2141681-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83338.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SPLIT RING, CC SEAL, 15L CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247889-02 | | GUNFLINT | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83338.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SPLIT RING, CC SEAL, 15L CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247889-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83339.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | STOP RING, CC SEAL, 15K CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2253158-02 | | GUNFLINT | | | | 64 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83340.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | RETAINER NUT, SHEAR PIN, ACTUATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2141470-02 | | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83340.A | | TRAINING ROOM 1 | RETAINER NUT, SHEAR PIN, ACTUATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2141470-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83341.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-451, 10.975 ID X .275 W 90D/MS-1078. MFR: ONESUBSEA, PN: 702645-45-11 | | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83341.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-451, 10.975 ID X .275 W 90D/MS-1078. MFR: ONESUBSEA, PN: 702645-45-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83341.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-451, 10.975 ID X .275 W 90D/MS-1078. MFR: ONESUBSEA, PN: 702645-45-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83342.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SPARE FOR WIRELINE TOOLS. MFR: ONESUBSEA, PN: 2359600-10 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83343.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SPARE FOR WIRELINE TOOLS. MFR: ONESUBSEA, PN: 2359600-14 | | GUNFLINT | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83343.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | O-RING, SPARE FOR WIRELINE TOOLS. MFR: ONESUBSEA, PN: 2359600-14 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83344.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | RETAINER RING, CC SEAL, 15K CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247895-02 | | GUNFLINT | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83344.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | RETAINER RING, CC SEAL, 15K CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247895-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83345.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL, METAL END CAP, 17.030 IN SEAL BORE, DUAL ELASTOMER, 15K WP. MFR: ONESUBSEA, PN: 2289651-09 | | GUNFLINT | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83346.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL, METAL END CAP ,13.190 IN SEAL BORE, DUAL. MFR: ONESUBSEA, PN: 2289651-05 | | GUNFLINT | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83346.A | | TRAINING ROOM 1 | SEAL, METAL END CAP ,13.190 IN SEAL BORE, DUAL. MFR: ONESUBSEA, PN: 2289651-05 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83347.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SUPPORT PLATE, SEAL GASKET W/ HYD TBG PREP, CLAMP/SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2099256-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83348.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SUPPORT PLATE, SEAL GASKET, W/O HYD TUBING PREP, CLAMP/SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2099256-04 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83349.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | ASSY, WIRELINE PLUG, 5.75 IN NOM, 15K WP, RLH (5.284 IN SEAL BORE) PRIMARY METAL SEAL, SLS (5.319 IN SEAL BORE) SECONDARY PTFE BACKUP SEAL, TEMP CLASS. MFR: ONESUBSEA, PN: 2394981-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83350.A | | DWW-YARD-C-VAN TTN\U977610145G1 (CLIMATE CONTROLLED) | SEAL BODY. MFR: ONESUBSEA, PN: 2091059-06-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83350.A | | TRAINING ROOM 1 | SEAL BODY. MFR: ONESUBSEA, PN: 2091059-06-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83351.A | | DWW-YARD | GC-65 A-FRAME 001, 40K LBS. 16 PIECES. | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83352.A | | MW-AREA 1 | SDV-1019 PARTS IN CRATE. | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83353.A | | DWW-YARD | SFL 40M, 11 LINES, 11/3-9/3 WAY MAIN SUTA TO PXT K2. MFR: ONESUBSEA, PN: 223475-78-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83354.C | | MW-AREA 3 | FIRE PUMP, 250 HP @ 1760 RPM, 6/5 RATIO RATIO. MFR: RANDOLPH, SN: R1508123. 2 PIECES. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83355.A | | DWW-YARD | FIBERGLASS PIPING (FOR FIRE PUMP). | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83356.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | GASKET, RING, 18 3/4 VETCO TYPE VX-2, 15K PSI MWP, 316 SS. MFR: ONESUBSEA, PN: 2731061-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83357.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | METAL END CAP SEAL, 13.25 NOM SEAL. MFR: ONESUBSEA, PN: 64743B-14-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83357.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 13.25 NOM SEAL. MFR: ONESUBSEA, PN: 64743B-14-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83358.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | TENSILE PEN FOR MECHANICAL INTERNAL TREECAP RUNNING TOOL. MFR: ONESUBSEA, PN: 262393-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83358.A | | TRAINING ROOM 1 | TENSILE PEN FOR MECHANICAL INTERNAL TREECAP RUNNING TOOL. MFR: ONESUBSEA, PN: 262393-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83359.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | GASKET , 4"-15M, SEAL PLATE, MCPAC. MFR: ONESUBSEA, PN: 2124579-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83360.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | ASSY, SHEAR PIN CARTRIDGE, DUAL PLUG TUBING HANGER, SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2141663-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83360.A | | TRAINING ROOM 1 | ASSY, SHEAR PIN CARTRIDGE, DUAL PLUG TUBING HANGER, SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2141663-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 22 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83361.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPECIAL EFL 7P TO 7S TSP 50MM SPECIAL WIRING, TITANIUM CONNECTOR HOUSING, V-NOTCH HANDLE, FLYING ROV 7 WAY PINS CONNECTOR AND SOCKETS. MFR: ONESUBSEA, PN: 2197088-45-90 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83362.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-120, .987 ID. MFR: ONESUBSEA, PN: 702647-12-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 105 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83362.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-120, .987 ID. MFR: ONESUBSEA, PN: 702647-12-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 21 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83363.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | HAT RING, 5.25 SLS SEAL, WIRELINE PLUG. MFR: ONESUBSEA, PN: 2221969-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83364.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | 5.25 SLS SEAL, WIRELINE PLUG. MFR: ONESUBSEA, PN: 2221968-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83365.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | ASSY, SHEAR PIN CARTRIDGE. MFR: ONESUBSEA, PN: 2141663-01. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83365.A | | TRAINING ROOM 1 | ASSY, SHEAR PIN CARTRIDGE. MFR: ONESUBSEA, PN: 2141663-01. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 23 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83366.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPECIAL SET SCREW, FOR SSR 6.700". MFR: ONESUBSEA, PN: 2748951-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83366.A | | TRAINING ROOM 1 | SPECIAL SET SCREW, FOR SSR 6.700". MFR: ONESUBSEA, PN: 2748951-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83367.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | GRUB SCREW, 8/32 X 1/4" SS A4 GR 80. MFR: ONESUBSEA, PN: 2359600-40 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83367.A | | TRAINING ROOM 1 | GRUB SCREW, 8/32 X 1/4" SS A4 GR 80. MFR: ONESUBSEA, PN: 2359600-40 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83368.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | BACK UP RING, ID 1.268 INCH +/- 0.012. MFR: ONESUBSEA, PN: 2748250-64 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83369.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | PLUG WIPER, 5.320 HT 15K, H2S, HH. MFR: ONESUBSEA, PN: 2359600-37 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83369.A | | TRAINING ROOM 1 | PLUG WIPER, 5.320 HT 15K, H2S, HH. MFR: ONESUBSEA, PN: 2359600-37 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83370.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-124, 1.237 ID. MFR: ONESUBSEA, PN: 702645-12-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83370.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-124, 1.237 ID. MFR: ONESUBSEA, PN: 702645-12-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 92 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83371.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-206, .484 ID X .139. MFR: ONESUBSEA, PN: 702645-20-61 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83371.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-206, .484 ID X .139. MFR: ONESUBSEA, PN: 702645-20-61 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83372.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | BACK UP RING, ID 1.268 INCH +/- INCH. MFR: ONESUBSEA, PN: 2748250-64 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83373.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O-RING, .275 W X 17.455 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-46-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83373.A | | TRAINING ROOM 1 | O-RING, .275 W X 17.455 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-46-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83374.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-449, 9.975 ID. MFR: ONESUBSEA, PN: 702645-44-91 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83375.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | BACK UP RING, 9.524 X 9.996. MFR: ONESUBSEA, PN: 042000-04-48 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83376.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, .139 W X 00.96 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-21-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83376.A | | TRAINING ROOM 1 | O-RING, .139 W X 00.96 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-21-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 84 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83377.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 351 4.778 ID. MFR: ONESUBSEA, PN: 042000-03-51 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83378.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-433, 5.475 ID. MFR: ONESUBSEA, PN: 702645-43-31 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83379.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, .139 X 01.734 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-22-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83379.A | | TRAINING ROOM 1 | O-RING, .139 X 01.734 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-22-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83380.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SEAL RING, 4.250 ID X 4.75 OD X .25. MFR: ONESUBSEA, PN: 2725008-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83381.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-238 3.484 ID. MFR: ONESUBSEA, PN: 702645-23-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83381.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-238 3.484 ID. MFR: ONESUBSEA, PN: 702645-23-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83382.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-433 5.475 ID. MFR: ONESUBSEA, PN: 702645-43-31 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83383.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, .275 W X 13.975 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-45-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83383.A | | TRAINING ROOM 1 | O-RING, .275 W X 13.975 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-45-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83384.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SLS SEAL ASSEMBLY. MFR: ONESUBSEA, PN: 2230493-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83385.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-368 7.725 ID. MFR: ONESUBSEA, PN: 702645-36-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83385.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-368 7.725 ID. MFR: ONESUBSEA, PN: 702645-36-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83386.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | MECHANICAL SPARES, 4.375 SSR PLUG. MFR: ONESUBSEA, PN: 2166241-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83386.A | | TRAINING ROOM 1 | MECHANICAL SPARES, 4.375 SSR PLUG. MFR: ONESUBSEA, PN: 2166241-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83387.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SUB ASSEMBLY, SHEAR PIN CARTRIDGE. MFR: ONESUBSEA, PN: 2141663-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83388.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | PLUG, PIPE 1/4" SST 18-8 Y52008-00010501. MFR: ONESUBSEA, PN: 002504-09 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83388.A | | TRAINING ROOM 1 | PLUG, PIPE 1/4" SST 18-8 Y52008-00010501. MFR: ONESUBSEA, PN: 002504-09 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83389.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | CENTRE RING, F/ 7" ML-2 METAL LIP SEAL. MFR: ONESUBSEA, PN: 2259715-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83390.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-459, 14.975 ID. MFR: ONESUBSEA, PN: 702645-45-91 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83391.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-462, 16.455 ID. MFR: ONESUBSEA, PN: 702645-46-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83391.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-462, 16.455 ID. MFR: ONESUBSEA, PN: 702645-46-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83392.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | BACK UP RING, 5.75 SLS SEAL. MFR: ONESUBSEA, PN: 2213451-06 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83393.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | BACK UP RING, 5.25 SLS SEAL. MFR: ONESUBSEA, PN: 2213451-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83394.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SEAL SPACER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-19 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83395.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SPACER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-18 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83396.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SEAL SPACER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-20 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83397.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | UPPER RETAINER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216806-18 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83398.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | RETAINER RING, FOR 5.284" NOM RLH 2-SEAL. MFR: ONESUBSEA, PN: 2216806-10 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83399.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | STOP RING, FOR 5.319" NOM WP SEAL .250". MFR: ONESUBSEA, PN: 2216808-10 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83400.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SPACER RING, 5.75 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83401.A | | DWW-YARD-C-VAN TTNU97761014SG1 (CLIMATE CONTROLLED) | SPLIT LOAD RING, FOR 5.284" NOM RLH-2. MFR: ONESUBSEA, PN: 2216807-13 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83402.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | UPPER LOAD RING, 5.75 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216807-35 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83403.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | SEAL SPACER RING, 5.75 SLS SEAL, WIRELINE. MFR: ONESUBSEA, PN: 2216808-22 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83404.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | UPPER RETAINER RING, 5.75 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216806-19 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83405.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-459 14.975 ID. MFR: ONESUBSEA, PN: 702645-45-91 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83406.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | METAL SEAL RING FOR 5.75" SSR. MFR: ONESUBSEA, PN: 2748056-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83407.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | INSTALLATION TOOL, WP & RLH-2 SEALS. MFR: ONESUBSEA, PN: 2230554-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83408.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | PINEAPPLE TOOL ASSEMBLY. MFR: ONESUBSEA, PN: 0307929 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83409.B | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | BLACK PELICAN CASE CONTAINING HOSES, FITTINGS, AND VALVES (SOME USED) | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83410.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | INSTALLATION TOOL, WP & RLH-2 SEALS. MFR: ONESUBSEA, PN: 2230555-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83411.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | PACKING O-RING. MFR: ONESUBSEA, PN: 2748750-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83411.A | | TRAINING ROOM 1 | PACKING O-RING. MFR: ONESUBSEA, PN: 2748750-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83412.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | PLUG MTM SEAL 4.375 10K H2S. MFR: ONESUBSEA, PN: 4511114880 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83413.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | O-RING. MFR: ONESUBSEA, PN: HVPO-103 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83414.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | KIT, DHG PLUG. MFR: TELEDYNE, PN: 2250977-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83415.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | KIT, DHG PLUG. MFR: TELEDYNE, PN: 2250977-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83416.A | | TRAINING ROOM 1 | O-RING, .210 W X 16.955 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-38-61 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83417.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 17.832 NOM BORE. MFR: CAMERON, PN: 2289964-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83418.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 17.656 NOM BORE. MFR: CAMERON, PN: 2289964-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 44 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83419.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.250 NOM BORE. MFR: CAMERON, PN: 2289964-05-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83420.A | | TRAINING ROOM 1 | METAL END CAP SEAL. MFR: CAMERON, PN: 684664-37 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83421.A | | TRAINING ROOM 1 | METAL END CAP SEAL. MFR: CAMERON, PN: 605894-29 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83422.A | | TRAINING ROOM 1 | SEAL REDRESS KIT, TUBING HANGER, 15K (INCLUDES BOX WITH 17 ITEMS, 2 SEAL BODIES, AND 3 METAL END CAP SEALS). 6 ITEMS TOTAL. MFR: ONESUBSEA, PN: 2244562-15 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83423.A | | TRAINING ROOM 1 | SEAL RING, 10.000 ID X 10.750 OD. MFR: ONESUBSEA, PN: 709770 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83424.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.490 NOM. BORE. MFR: CAMERON, PN: 2289964-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83425.A | | TRAINING ROOM 1 | MOLD DETAIL, METAL END CAP SEAL WITH OD. MFR: CAMERON, PN: 2243660-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83426.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 17.656". MFR: CAMERON, PN: 647438-16-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83427.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.490". MFR: CAMERON, PN: 647438-17-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83428.A | | TRAINING ROOM 1 | SEAL. MFR: ONESUBSEA, PN: 714148 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83429.A | | TRAINING ROOM 1 | SEAL. MFR: ONESUBSEA, PN: 714129 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83430.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.250". MFR: CAMERON, PN: 647438-18-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83431.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-37-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83432.A | | TRAINING ROOM 1 | SCREW. MFR: ONESUBSEA, PN: 713040 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83433.A | | TRAINING ROOM 1 | SCREW. MFR: ONESUBSEA, PN: 262393-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83434.A | | TRAINING ROOM 1 | O-RING .275 W X 15.475 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-46-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83435.A | | TRAINING ROOM 1 | ASSEMBLY, CONTROL RECEPTACLE, 15K. MFR: ONESUBSEA, PN: 2141634-13 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83436.A | | TRAINING ROOM 1 | O-RING, .275W X 07.725 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-44-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83437.A | | TRAINING ROOM 1 | O-RING FOR 4.375" DIA PLUG EROSION. MFR: ONESUBSEA, PN: 2748751-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83438.A | | TRAINING ROOM 1 | VEE PACKING RING F/ 4.767" DIA PLUG. MFR: ONESUBSEA, PN: 2748215-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 25 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83439.A | | TRAINING ROOM 1 | VEE PACKING RING, 4.375", 10K ONLY. MFR: ONESUBSEA, PN: 2748807-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 22 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83440.A | | TRAINING ROOM 1 | SILVER COATED METAL SEAL RING. MFR: ONESUBSEA, PN: 2748206-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83441.A | | TRAINING ROOM 1 | BACK UP RING, PTFE, 9921006753. MFR: ONESUBSEA, PN: 2359600-15 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83442.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 451 11.024 ID. MFR: ONESUBSEA, PN: 041327-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83443.A | | TRAINING ROOM 1 | VEE PACKING RING F/ 4.767" DIA PLUG. MFR: ONESUBSEA, PN: 2748214-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83444.A | | TRAINING ROOM 1 | WIPER RING, WIRELINE PLUG, 5.25 IN NOM. MFR: ONESUBSEA, PN: 2359600-45 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83445.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-44-61 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83446.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-351, 4.725 ID. MFR: ONESUBSEA, PN: 702645-35-11 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83447.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-161, 5.487 ID. MFR: ONESUBSEA, PN: 702645-16-11 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83448.A | | TRAINING ROOM 1 | BACK UP RING, ID 0.702 INCH +/- 0.009. MFR: ONESUBSEA, PN: 2748250-63 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 96 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83449.A | | TRAINING ROOM 1 | BUMPER, INSERT CAGE, 7" BORE F/ 15K. MFR: ONESUBSEA, PN: 2029641-02 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83450.A | | TRAINING ROOM 1 | BEARING RING, CCSR, 7.38 OD. MFR: ONESUBSEA, PN: 2053058-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83451.A | | TRAINING ROOM 1 | O-RING, 8 1/2" OD X 1/2 CROSS. MFR: ONESUBSEA, PN: 018493-45 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83452.A | | TRAINING ROOM 1 | TENSILE SCREW, ITC MECHANICAL RUNNING TOOL. MFR: ONESUBSEA, PN: 2166948-04 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83453.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 206, .518 ID. MFR: ONESUBSEA, PN: 042000-02-06 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83454.A | | TRAINING ROOM 1 | COMBO TOOL. MFR: ONESUBSEA, PN: 2330489-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83455.A | | TRAINING ROOM 1 | O-RING, SIZE 462 16.455 ID X .275 W. MFR: ONESUBSEA, PN: 702647-46-21 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83456.A | | TRAINING ROOM 1 | SHEAR PIN, G2 BORE PROTECTOR, NAVAL BRASS. MFR: ONESUBSEA, PN: 2155653-02 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83457.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-463 16.955 ID. MFR: ONESUBSEA, PN: 702645-46-31 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83458.A | | TRAINING ROOM 1 | O-RING, NITRILE 90A, 13 1/2 X 14 X 1/4". MFR: ONESUBSEA, PN: 702645-45-61 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83459.A | | TRAINING ROOM 1 | SHEAR PIN, G2 BORE PROTECTOR, TEFLON. MFR: ONESUBSEA, PN: 2155653-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83460.A | | TRAINING ROOM 1 | THREADED RETAINER, SHEAR PIN ASSEMBLY. MFR: ONESUBSEA, PN: 2026808-04 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 18 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83461.A | | TRAINING ROOM 1 | TAB, G2 BORE PROTECTOR. MFR: ONESUBSEA, PN: 2155677-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 18 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83462.A | | TRAINING ROOM 1 | O-RING, 16.504 ID X .236 CS. MFR: ONESUBSEA, PN: 042000-04-62 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83463.A | | TRAINING ROOM 1 | SHEAR PIN, 18-3/4 NOM HYD TUBING HANGER. MFR: ONESUBSEA, PN: 199362-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83464.A | | TRAINING ROOM 1 | PINS. MFR: ONESUBSEA, PN: W0105412-002 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83465.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-42-61 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83466.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-3534, .975 ID. MFR: ONESUBSEA, PN: 702647-35-31 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83467.A | | TRAINING ROOM 1 | KEY, SLEEVE, CVC COLLET CONNECTOR. MFR: ONESUBSEA, PN: 2156304-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83468.A | | TRAINING ROOM 1 | SPARES. MFR: ONESUBSEA, PN: 2400888-02-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83469.A | | TRAINING ROOM 1 | SCREW, 12 PT CAP .250-20UNC X .875, ASTM A193 GR B7 ZINC PLATED / SAE J58. MFR: ONESUBSEA, PN: 702585-02-00-07 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83470.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-208 .609 ID X .139 W 90D /MS-1078 NITRILE PKG AND QUAL /CIW 702645. MFR: ONESUBSEA, PN: 702645-20-81 | | KATMAU/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83471.A | | TRAINING ROOM 1 | MALE SEAL RETAINER, CLAMP CONNECTOR / SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2123142-01 | | KATMAU/ORLOV/GE NOVESA | | | | 9 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83472.A | | TRAINING ROOM 1 | FEMALE SEAL RETAINER, CLAMP CONNECTOR / SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2123141-01 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 9 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83473.A | | DWW-YARD | SFL1 FLUSH/PARK - 15' L  X 10' W X 8' H; 10,500 LBS EACHINTERMEDIATE JUNCTION PLATE, 14 WAY W/ JUNCTION PLATE FIXED M1 14 POSITION, 14 WAY X .5 RS MALE NVP COUPLERS & JUNCTION PLATE REMOVABLE, 14 POSITION, 14 WAY, .5 RS FEMALE VP COUPLERS, 7 X.5 RS NVP COUPLERS. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83474.A | | DWW-YARD | SFL2 FLUSH/PARK - 15' L  X 10' W X 8' H; 10,500 LBS EACHINTERMEDIATE JUNCTION PLATE, 14 WAY W/ JUNCTION PLATE FIXED M1 14 POSITION, 14 WAY X .5 RS MALE NVP COUPLERS & JUNCTION PLATE REMOVABLE, 14 POSITION, 14 WAY, .5 RS FEMALE VP COUPLERS, 7 X.5 RS NVP COUPLERS. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83475.A | | MW-AREA 2 | VERTICAL MULTISTAGE CENTRIFUGAL PUMP, 60 HZ, 3444 RPM, 15 HP WITH BALDOR RELIANCE SUPER E MOTOR (15 HP, 3520 RPM, 230/460 VOLTS, SPEC. 09G9392602G1). MFR: GRUNDFOS, PN: CR32-3A-G-A-E-HQQE-NX2 | LOE | ST 308/TARANTULA | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83476.A | | MR-GENERAL | REAR/FRONT SEAL TOOLING IN BLACK PELICAN CASE. MFR: CATERPILLAR, PN: 3512 | | WD 70D | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83477.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-117, .799 ID. MFR: ONESUBSEA, PN: 702647-11-75 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 75 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83478.A | | TRAINING ROOM 1 | BACK-UP NITRILE 90A, 14 X 14 1/2. MFR: ONESUBSEA, PN: 042000-04-57 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83479.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-21-41 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83480.A | | TRAINING ROOM 1 | SCR 0.250-20 X 0.500 SST CUP PT SET. MFR: ONESUBSEA, PN: 702515-17-20-08 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83481.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 042000-04-55 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83482.A | | TRAINING ROOM 1 | BLIND SEAL CARRIER. MFR: ONESUBSEA, PN: 2124421-04 | AFE FWS80018 | KATMAU/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83483.A | | TRAINING ROOM 1 | SEAL CAP VERT PLUG HYDRAULIC STAB. MFR: ONESUBSEA, PN: 2142681-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83484.A | | TRAINING ROOM 1 | RUBBER/SPRING SEAL, EXTERNAL. MFR: ONESUBSEA, PN: 2788005-02-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83485.A | | TRAINING ROOM 1 | G2 G3 HYD DTAB SPACER. MFR: ONESUBSEA, PN: 2142381-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 38 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83486.A | | TRAINING ROOM 1 | SLIDE PIN, .893-1.002. MFR: ONESUBSEA, PN: 2142376-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83487.A | | TRAINING ROOM 1 | HYDR SEAL CARRIER BLIND PLUG. MFR: ONESUBSEA, PN: 2704208 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83488.A | | TRAINING ROOM 1 | HYDR VERTICAL PLUG. MFR: ONESUBSEA, PN: 2156280-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83489.A | | TRAINING ROOM 1 | HYDR O-RING, SIZE AS-568-455, 12.975 ID. MFR: ONESUBSEA, PN: 702647-45-51 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83490.A | | TRAINING ROOM 1 | O-RING, .275W X 12.475 ID W850/MS-1068. MFR: ONESUBSEA, PN: 702647-45-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83491.A | | TRAINING ROOM 1 | ISOLATION SLEEVE O-RING, 5.25. MFR: ONESUBSEA, PN: 2748113-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83492.A | | TRAINING ROOM 1 | SCR 0.250-20 X 0.625 SST CUP PT SET. MFR: ONESUBSEA, PN: 702515-17-20-10 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83493.A | | TRAINING ROOM 1 | VEE PACKING RING, 5.25. MFR: ONESUBSEA, PN: 2736039-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83494.A | | TRAINING ROOM 1 | SSE SEAL. MFR: ONESUBSEA, PN: 2748983-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83495.A | | TRAINING ROOM 1 | STANDARD SPHERICAL GASKET, DMG 7125. MFR: ONESUBSEA, PN: 2398316-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83496.A | | TRAINING ROOM 1 | SEAL KIT. MFR: NATIONAL COUPLER, PN: TO-4-8-28-5K | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 19 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83497.A | | TRAINING ROOM 1 | NAT. COUPLER SEAL KIT. MFR: ONESUBSEA, PN: 2737462-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83498.A | | TRAINING ROOM 1 | O-RING KIT. MFR: ONESUBSEA, PN: 042000-03-67 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83499.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-45-51 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83500.A | | TRAINING ROOM 1 | PACKING, VARIPAK T99. MFR: ONESUBSEA, PN: 140232-12-51-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83501.A | | MW-AREA 1 | PALLETIZED SECTION OF TEST PIPE WITH INSULATION | AFE FW203021 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83502.A | | MW-AREA 1 | PALLETIZED SECTION OF TEST PIPE UNCOATED | AFE FW203021 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83503.A | | MW-AREA 1 | CVC ID COLLET PLUG, PN: COM-000003109 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83504.A | | MW-AREA 1 | GRIPPER FLANGE SEAL ASSEMBLY, PN: COM-000003108 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83505.A | | MW-AREA 1 | HYDRALLIC FITTINGS, PN: 500032-12 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83506.A | | MW-AREA 1 | HYDRAULIC FITTINGS, PN: 540416-16 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83507.A | | MW-AREA 1 | HYDRAULIC FITTINGS, PN: 540632-16 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83508.A | | MW-AREA 1 | SPARES (QTY: 6 - 75 VITON - SIZE 446, QTY: 4 - WAVE SPRING, QTY: 7 - 241N90, QTY: 8 - 75 VITON - SIZE 427, QTY: 8 - 70A BUNA-N - SIZE 269) | AFE FW203021 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83509.A | | MW-AREA 1 | 5" X 1/2" STEM ALUM. EXP. PLUG. | AFE FW203021 | KATMAI | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83510.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 718044 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 103 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83511.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 2707402-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83512.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 042000-00-18 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83513.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 042000-02-77 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83514.A | | TRAINING ROOM 1 | O-RING, -378, 209 COMPOUND. MFR: ONESUBSEA, PN: 2749478-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83515.A | | TRAINING ROOM 1 | O-RING, 3/4 X 1 X 1/8. MFR: ONESUBSEA, PN: 702645-21-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83516.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 41008-0062-32 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 25 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83517.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 631680-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83518.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-38-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83519.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-36-32 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83520.A | | TRAINING ROOM 1 | PAK RING TEFLON. MFR: ONESUBSEA, PN: 631486-06 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83521.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702640-44-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83522.A | | TRAINING ROOM 1 | S SEAL. 6 1/4" NOM. MFR: ONESUBSEA, PN: 041259-17-01-13 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 13 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83523.A | | TRAINING ROOM 1 | S SEAL RING, 6" NOM OD. MFR: ONESUBSEA, PN: 142895-12-05-23 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83524.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-01-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83525.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-21-61 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83526.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702640-35-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Aker - Mobile | Aker Solutions | 10239579 | 298203-2 | A712 Rack A Sec 7 | ASSY,IPC,DUAL PSU,DUAL DIO32 W/ SMAC56 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10236989 | 317793-1 | A712 Rack A Sec 7 | KIT, ESD SIMULATOR | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10258430 | 4500776661-10-2 | A712 Rack A Sec 7 | CASE, TRANSPORT, 1630 | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-C510-MS-SK | | | EA | | | 20 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-C510-MS-SK | | | EA | | | 48 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-C510-MS-SK | | | EA | | | 36 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-C510-MS-SK | | | EA | | | 60 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135326 | | A712 | TOOL KIT, RS CPLR, NCC, RS-8-TK-3 | | | EA | | | 2 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000663-02 | 281788-2 | A718 Rack A Sec 7 | COUPLER,HYD,MALE, 250,10KPSI,1/2 FNPT A | | Non-project specific | EA | | | 1 | | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aker - Mobile | Aker Solutions | BB13-060176-18 | 1401/B/M5201 | A718 Rack A Sec 7 | ICON TOPSIDE 1200 DUAL CHANNEL ELECTRICA | | FIELDWOOD – DANTZLER | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :1 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :2 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :3 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :4 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :5 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :6 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :7 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299 :8 | A718 Rack A Sec 7 | Coupling,1/2",UJO,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10194964 | 1034146-34 | A718 Rack A Sec 7 | TEST CONNECTOR, DIVER MATE CE PLUG | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10194964 | 1034146-35 | A718 Rack A Sec 7 | TEST CONNECTOR, DIVER MATE CE PLUG | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10189751 | SIM-13-11-12126 | A718 Rack A Sec 7 | SIMULATOR, ACOUSTIC PIG DETECTOR | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10198475 | SIM-13-11-12127 | A718 Rack A Sec 7 | SIMULATOR, ACOUSTIC SAND DETECTOR | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB14-060480-12 | 2058-SN-030 | A718 Rack A Sec 7 | ICON TOPSIDE EXTENDED 1200 MODEM MODULE | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000680-81 | 1016399-42 | A718 Rack A Sec 7 | CONN-ELECT, ROV MATEABLE, RECEPT, 4 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000680-81 | 1016399-43 | A718 Rack A Sec 7 | CONN-ELECT, ROV MATEABLE, RECEPT, 4 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10144574 | FNS19060RNZ | A718 Rack A Sec 7 | CONVERTOR, ETHERNET & OPTICAL, RGD | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10186368 | 15041809 | A718 Rack A Sec 7 | COMPUTER PART, 1U KEYBORD/FLIPTOP MONITO | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-060312-06 | 1111503985/BF | A718 Rack A Sec 7 | POWER SUPPLY TYPE SEM105, MAINS 90-240V | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10246629 | 6099 | A718 Rack A Sec 7 | AUXILIARY CONNECTION UNIT (ACU) | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB14-060049-01 | TSCL2106-SN-001 | A718 Rack A Sec 7 | MODEM SWITCH MODULE ASSY | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241616 | 333070001 | A718 Rack A Sec 7 | CABLE ASSY,8W CANNON S TO 12W CONN P, 6' | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10240031 | 333069001 | A718 Rack A Sec 7 | CABLE ASSY,12W CANNON P-12W CANNON R,25' | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241291 | 1092062-2 | A718 Rack A Sec 7 | CABLE ASSY, 6W ROV PLUG - 8W CANNON RCPT | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241290 | 1092061-2 | A718 Rack A Sec 7 | CABLE ASSY,4W ROV RCPT - 12W CANNON PLUG | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10222161 | 1079132-6 | A718 Rack A Sec 7 | CABLE ASSY, 4 WAY ROV PLUG - CANNON CONN | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10222024 | 1079130-8 | A718 Rack A Sec 7 | CABLE ASSY,8WAY CANNON PLUG-CANNON RCPT | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241279 | 1092060-2 | A718 Rack A Sec 7 | CABLE ASSY,8W ROV RCPT - 12W CANNON PLUG | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::11 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::18 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::40 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::28 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::6 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::25 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::32 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-000163-64 | 294477::30 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10237780 | 312376-1 | AWN1 Awning 1 | ASSY, SCM TEST STAND, NOBLE | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB11-000182-14 | 4500643069-10-1 | F001 Floor Area Sec1 | SHIPPING FRAME ASSY, CONTROL MODULE | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB11-000182-14 | 69038/03-001 | F004 Floor Area Sec4 | SHIPPING FRAME ASSY, CONTROL MODULE | | FIELDWOOD – SWORDFISH | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10257558 | 218637-1 | F004 Floor Area Sec4 | SCM ASSY, 22 HYDR, 4 ELEC, 4 ROV CONNS | | FIELDWOOD - DANTZLER | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB14-000735-65 | SN000156 | F006 Floor Area Sec6 | CSL ASSY,MCS,TWO CABINET,NOBLEENERGY | | FIELDWOOD - LORIEN | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10325709 | 19-10-3308-DM | F007 Floor Area Sec7 | ACOSTIC SAND DETECTOR FUNNEL, 5.56" OD | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10239579 | 306108-1 | G206 Rack G Sec 2 | ASSY,IPC,DUAL PSU,DUAL DIO32 W/ SMAC56 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10258430 | 4500861523-10-001 | G206 Rack G Sec 2 | CASE, TRANSPORT, 1630 | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10258430 | 4233351-1 | G206 Rack G Sec 2 | CASE, TRANSPORT, 1630 | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB15-061245-04 | 10357810 | J003 Rack J Sec 00 | BAKER HUGHES PQ HARVEST DHPT SUBSEA I/F | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | BB11-000216-49 | 69397/03-001 | J103 Rack J Sec 1 | TEST EQPT ASSY,TEST SET WINDOWS BASED,SE | | FIELDWOOD – SWORDFISH | EA | | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aker - Mobile | Aker Solutions | 10056594 | 138753-1 | J103 Rack I Sec 1 | TEST EQUIP ASSY, TEST SET,9600 BAUD RATE | | Non-project specific | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB15-000731-05 | 1HTYA13472 | J103 Rack I Sec 1 | COMPUTER,LAPTOP,PANASONIC,TOUGHBOOK | | FIELDWOOD – RATON | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB14-000748-78 | 001956-0020A | J103 Rack I Sec 1 | MCS EQUIP ASSY,SUBSEA ELECT POWER UNIT,3 | | FIELDWOOD – SWORDFISH | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB14-000748-78 | 002271-0001A | J103 Rack I Sec 1 | MCS EQUIP ASSY,SUBSEA ELECT POWER UNIT,3 | | Non-project specific | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10187605 | 300189-1 | J103 Rack J Sec 1 | RACK, SEPA 120/208/240, 600-1200, 2.5KVA | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB15-000695-37 | 1007794-22 | J103 Rack J Sec 1 | CONN,ELECT,FLYING TEST RCPT, 8-WAY,W | | FIELDWOOD – DANTZLER | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10236194 | 301468-1 | J103 Rack J Sec 1 | RACK, SEPA, 120/208/240, 300-600, 2.5KVA | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10233298 | 22560-02.001 | J103 Rack J Sec 1 | SIMULATOR, DIGITAL PRESS/TEMP, ROXAR | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10190723 | 8142 | J303 J303 | ONLINE CONTROL & CONNECTION PANEL, MCS | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10232704 | 310899-1 | J501 J501 | TEST EQUIP ASSY, PETU, 1200 BAUD 2 of 2 | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10232781 | 313393-1 | K031 Rack K Sec 2 | ASSY, DUMMY SCM TEST & FLUSH PLATE | | FIELDWOOD – DANTZLER | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10238674 | 143604-1 | K032 Rack K Sec 2 | SUBSEA CONTROL MODULE-MARATHON OZONA | | FIELDWOOD – SWORDFISH | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB11-000117-70 | 74482/04-001 | K033 Rack K Sec 2 | POD ASY ELEC/HYD MARINERSWORDFISH | | FIELDWOOD – SWORDFISH | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB11-000117-70 | 69035/03-001 | K034 Rack K Sec 2 | POD ASY ELEC/HYD MARINERSWORDFISH | | FIELDWOOD – LORIEN | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB11-000117-89 | 76956/05-001 | K035 Rack K Sec 2 | SCM ASSY,ELEC/HYDR,(21) SOLENOID VLVS,J6 | | FIELDWOOD – DANTZLER | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10034781 | 4009455/07-001 | K036 Rack K Sec 2 | SCM ASSY, 21 HYDR, 5 ELEC, 4 ROV CONNS | | | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB15-000731-05 | 9CX5A61484 | MQ01 Mobile Rack QRT | COMPUTER,LAPTOP,PANASONIC,TOUGHBOOK | | Non-project specific | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB15-000782-48 | 4500516448-0030 | NTFD Not Found | COMPUTER PART,1756-PA72 CONTROL LOGIX P/ | | Non-project specific | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB15-000782-52 | 4500744743-0010 | NTFD Not Found | COMPUTER PART,1756-IFB,ANLG INPUT 8 CH | | Non-project specific | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | 10284242 | 4500589952-0020 | NTFD Not Found | PORTSERVER, DIGI TS16 MEI INTERNATIONAL | | FIELDWOOD – LORIEN | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB15-000731-77 | 50005939-002 | RCVD Received | COMPUTER,SYSTEL RACKMOUNT IPC,MCS | | FIELDWOOD – RATON | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB15-000731-05 | 1KTYA41555 | TB03 Test Bay 03 | COMPUTER,LAPTOP,PANASONIC,TOUGHBOOK | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | |
| Aker - Mobile | Aker Solutions | BB11-000182-14 | 4500643069-10-2 | YD1G Yard 1 Sec G | SHIPPING FRAME ASSY, CONTROL MODULE | | | EA | | | 1 | | | 0 | |
| Archer - Houston | Archer | 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 | USSC-13-0751 | | 7 5/8" CFLEX SS - 145 ksi 945X, assembled with pup joints | | | EA | | | | | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 18137-G | | Rack No. D014 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 27,972.48 | 7 | 291.38 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 19139-G | | Rack No. D009 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,805.45 | 1 | 40.70 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 19421-H | | Rack No. D014 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 20,666.88 | 5 | 215.28 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 23294-E | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 4,030.08 | 1 | 41.98 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 23294-E | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 4,121.28 | 1 | 42.93 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 23312-E | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 4,120.32 | 1 | 42.92 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-H | | Rack No. A02 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 19,645.92 | 7 | 273.62 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-H | | Rack No. A06 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 14,214.25 | 5 | 197.97 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-I | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,903.59 | 1 | 40.44 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-I | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 5,554.45 | 2 | 77.36 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25166-C | | Rack No. CROA (C) | 17 7/8" TENARIS P-110 PUP JOINTS, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,740.00 | 2 | 40.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25166-C | | Rack No. CROA (C) | 17 7/8" TENARIS P-110 PUP JOINTS, 93.50#, HYD 521 THREAD | | | EA | NEW | 1,870.00 | 1 | 20.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25526 | | Rack No. K05 (C) | 13 5/8" TAMSA Q-125 HC X-OVER, 88.20#, HYD 523 DPLS PIN THREAD | | | EA | NEW | 1,852.20 | 1 | 21.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25782-B | | Rack No. B07 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 3,993.60 | 1 | 41.60 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 25782-C | | Rack No. G04 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 27,802.56 | 7 | 289.61 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 27796-E | | Rack No. G04 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 4,199.04 | 1 | 43.74 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 27922-E | | Rack No. A07 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, HYD 523 DPLS THREAD | | | EA | NEW | 5,976.63 | 2 | 83.24 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 27922-E | | Rack No. A07 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, HYD 523 DPLS THREAD | | | EA | NEW | 20,620.96 | 7 | 287.20 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 27923-H | | Rack No. D25 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 5,115.06 | 2 | 81.45 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 27923-I | | Rack No. G16 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,527.07 | 1 | 40.24 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 28360-D | | Rack No. BLDG (C) | 9 7/8" TENARIS TN110CR135 CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 100,417.20 | 39 | 1,599.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29030-B | | Rack No. G04 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 8,457.60 | 2 | 88.10 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29102-C | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 28,067.52 | 7 | 292.37 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29102-C | | Rack No. G04 (C) | 16" U STEEL Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 4,107.84 | 1 | 42.79 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29308 | | Rack No. H05 (C) | 17 7/8" TENARIS P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 289,634.95 | 73 | 3,097.70 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29344-D | | Rack No. ACRE (C) | 10 3/4" TENARIS TN-125 HC PUP JOINTS, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 0.00 | 2 | 0.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29345-C | | Rack No. N00 (C) | 14" TENARIS TN-125 HC PUP JOINTS, 114.00#, TSH 523 DPLS THREAD | | | EA | NEW | 2,280.00 | 1 | 20.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29346 | | Rack No. D47 (C) | 13 5/8" UNKNOWN MFG TN-125 HC PUP JOINTS, 88.20#, TSH 523 DPLS THREAD | | | EA | NEW | 7,056.00 | 4 | 80.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29768-B | | Rack No. D47 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,001.20 | 1 | 41.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29768-B | | Rack No. G16 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,059.76 | 1 | 41.80 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29768-C | | Rack No. C38 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 84,014.57 | 27 | 1,147.74 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29815-E | | Rack No. A08 (C) | 10 3/4" TENARIS TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 43,249.49 | 14 | 590.84 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29815-E | | Rack No. BB08 (C) | 10 3/4" TENARIS TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 34,264.20 | 11 | 468.09 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29816-C | | Rack No. D25 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,385.14 | 1 | 37.98 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29816-E | | Rack No. F08 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 19,788.91 | 8 | 315.11 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 29816-F | | Rack No. G16 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,477.46 | 1 | 39.45 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 30096-C | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 16,572.48 | 4 | 172.63 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 30096-C | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 173,958.72 | 42 | 1,812.07 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 30096-D | | Rack No. N19 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 28,842.24 | 7 | 300.44 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 31235-E | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 258,966.95 | 66 | 2,769.70 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 31235-F | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 35,088.68 | 9 | 375.28 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 31235-F | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 7,954.98 | 2 | 85.08 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 31492-B | | Rack No. C23 (C) | 17 7/8" TENARIS P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 27,114.07 | 7 | 289.99 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 31492-B | | Rack No. C23 (C) | 17 7/8" TENARIS P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 91,215.80 | 24 | 975.57 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 31640-B | | Rack No. ACRE (C) | 10 3/4" TENARIS TN-125 HC PUP JOINTS, 73.20#, MAC II THREAD | | | EA | NEW | 0.00 | 1 | 0.00 | | 0 | |
| Arctic Pipe - Houston | Arctic Pipe | 31654-C | | Rack No. C25 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,121.25 | 1 | 42.64 | | 0 | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Arctic Pipe - Houston | Arctic Pipe | 31654-C | | Rack No. C25 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,126.37 | 1 | 42.71 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31660-B | | Rack No. G16 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,815.32 | 1 | 44.83 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31666-B | | Rack No. A06 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II THREAD | | | EA | USED | 12,488.65 | 4 | 170.61 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31721-B | | Rack No. A08 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,281.09 | 1 | 31.77 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31721-B | | Rack No. A08 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 9,494.11 | 3 | 132.23 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31721-B | | Rack No. A08 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 23,336.44 | 8 | 325.02 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31729-B | | Rack No. F08 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 47,700.37 | 19 | 759.56 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31729-C | | Rack No. F08 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 5,157.14 | 2 | 82.12 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31788-C | | Rack No. N19 (C) | 16" DALMINE Q-125 IC CASING, 96.00#, TSH 513 DPLS THREAD | | | EA | NEW | 19,802.88 | 5 | 206.28 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31788-C | | Rack No. N19 (C) | 16" DALMINE Q-125 IC CASING, 96.00#, TSH 513 DPLS THREAD | | | EA | NEW | 464,681.28 | 117 | 4,840.43 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31967-B | | Rack No. M21 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 11,918.45 | 3 | 127.47 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31967-B | | Rack No. M21 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 296,149.10 | 76 | 3,167.37 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31969-B | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, TSH 521 DPLS THREAD | | | EA | NEW | 4,259.86 | 1 | 45.56 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31970-B | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, TSH 521 DPLS THREAD | | | EA | NEW | 4,104.65 | 1 | 43.90 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32027 | | Rack No. J03 (C) | 13 5/8" TAMSA TN-125 HC CASING, 88.20#, HYD 523 THREAD | | | EA | NEW | 71,636.04 | 19 | 812.20 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32463-B | | Rack No. G16 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 11,151.26 | 4 | 155.31 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32463-B | | Rack No. G16 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 2,895.69 | 1 | 40.33 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32779-B | | Rack No. N19 (C) | 16" DALMINE Q-125 IC CASING, 96.00#, TSH 513 DPLS THREAD | | | EA | NEW | 3,688.32 | 1 | 38.42 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32781-B | | Rack No. C23 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II THREAD | | | EA | NEW | 3,087.58 | 1 | 42.18 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32887 | | Rack No. F02 (C) | 10 3/4" UNKNOWN MFG 41.45 M X-OVER, 79.20#, TSH 563 PIN THREAD | | | EA | NEW | 245.52 | 1 | 3.10 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33395-B | | Rack No. CC06 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 89,016.96 | 20 | 927.26 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33456-C | | Rack No. CC06 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 22,329.60 | 5 | 232.60 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33457-B | | Rack No. CC06 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 4,120.32 | 1 | 42.92 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33468-B | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 2,805.23 | 1 | 39.07 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33469-B | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 21,109.20 | 7 | 294.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33469-B | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 13,644.87 | 4 | 190.04 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33519-D | | Rack No. H19 (C) | 14" TAMSA Q-125 ICY PUP JOINTS, 116.00#, TSH 523 THREAD | | | EA | NEW | 0.00 | 1 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33521-B | | Rack No. M21 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,453.60 | 1 | 39.07 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33533-B | | Rack No. M21 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | USED | 19,441.00 | 8 | 309.57 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33553-B | | Rack No. BLDG (C) | 16" U STEEL Q-125 HC X-OVER, 96.00#. THREAD | | | EA | NEW | 2,310.72 | 6 | 24.07 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33554-B | | Rack No. BLDG (C) | 16" U STEEL Q-125 HC X-OVER, 96.00#. THREAD | | | EA | NEW | 2,404.80 | 6 | 25.05 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33556-C | | Rack No. D24 (C) | 7 3/4" TAMSA Q-125 IC CASING, 46.10#, TSH 523 THREAD | | | EA | NEW | 2,138.58 | 1 | 46.39 | 0 | | |
| | | | | | | | | | | | | | | | |
| Arctic Pipe - Houston | Arctic Pipe | 33558-B | | Rack No. ACRE (C) | 10 3/4" UNKNOWN MFG TN-125 HC PUP JOINTS, 73.20#, MAC II DPLS THREAD | | | EA | USED | 0.00 | 1 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33564 | | Rack No. D15 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | USED | 4,168.32 | 1 | 43.42 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33934 | | Rack No. F13 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, TSH 521 DPLS THREAD | | | EA | NEW | 42,585.51 | 11 | 455.46 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33935 | | Rack No. F12 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 4,314.09 | 1 | 46.14 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33936 | | Rack No. F12 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,833.50 | 1 | 41.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33937 | | Rack No. F12 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,833.50 | 1 | 41.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33952 | | Rack No. DD13 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 49,555.20 | 12 | 516.20 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33953 | | Rack No. DD10 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 18,432.00 | 4 | 192.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33954 | | Rack No. DD13 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 4,880.64 | 1 | 50.84 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33955 | | Rack No. DD13 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 4,497.60 | 1 | 46.85 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33974-E | | Rack No. H19 (C) | 14" TAMSA Q-125 ICY PUP JOINTS, 116.00#, TSH 523 THREAD | | | EA | NEW | 1,740.00 | 1 | 15.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33974-EE | | Rack No. H19 (C) | 14" TAMSA Q-125 ICY PUP JOINTS, 116.00#, TSH 523 DPLS PIN THREAD | | | EA | NEW | 0.00 | 1 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33977 | | Rack No. BLDG (C) | 16" 4330.130 X-OVER, 96.00#, TSH 511 PIN THREAD | | | EA | USED | 288.00 | 1 | 3.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33978 | | Rack No. BLDG (C) | 17 7/8" 41.45 M X-OVER, 93.50#, TSH 511 PIN THREAD | | | EA | NEW | 280.50 | 1 | 3.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34053-B | | Rack No. F07 (C) | 14" TAMSA TN-125 HC CASING, 113.00#, TSH 523 DPLS THREAD | | | EA | USED | 47,212.53 | 10 | 417.81 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34053-B | | Rack No. F07 (C) | 14" TAMSA TN-125 HC CASING, 113.00#, TSH 523 DPLS THREAD | | | EA | USED | 19,043.89 | 4 | 168.53 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34086 | | Rack No. B05 (C) | 10 1/8" JFE JFE125T CASING, 79.22#, SLUI THREAD | | | EA | NEW | 351,970.50 | 108 | 4,442.95 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34091 | | Rack No. B05 (C) | 10 1/8" JFE JFE125T CASING, 79.22#, SLUI THREAD | | | EA | USED | 6,618.83 | 2 | 83.55 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34092-B | | Rack No. CROA (C) | 11 7/8" TENARIS Q-125 HC PUP JOINTS, 71.80#, HYD 523 THREAD | | | EA | NEW | 718.00 | 1 | 10.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34093-B | | Rack No. CROA (C) | 11 7/8" TENARIS Q-125 HC PUP JOINTS, 71.80#, HYD 523 DPLS PIN THREAD | | | EA | NEW | 718.00 | 1 | 10.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34094-B | | Rack No. CROA (C) | 11 7/8" TENARIS Q-125 HC PUP JOINTS, 71.80#, HYD 523 DPLS BOX THREAD | | | EA | NEW | 718.00 | 1 | 10.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34100 | | Rack No. A06 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 25,716.61 | 9 | 358.17 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34101 | | Rack No. ACRE (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, HYD 523 DPLS PIN THREAD | | | EA | USED | 1,493.44 | 1 | 20.80 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34102 | | Rack No. ACRE (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#. THREAD | | | EA | USED | 1,062.64 | 1 | 14.80 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34103 | | Rack No. G07 (C) | 10 1/8" JFE JFE125T CASING, 79.22#, SLUI THREAD | | | EA | NEW | 48,720.30 | 15 | 615.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34105 | | Rack No. A06 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 23,056.42 | 8 | 321.12 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34149 | | Rack No. BLDG (C) | 10 1/8" UNKNOWN MFG 4330.130 X-OVER, 79.22#, SLUII PIN THREAD | | | EA | NEW | 213.89 | 1 | 2.70 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34150-B | | Rack No. BLDG (C) | 14" UNKNOWN MFG 4330.130 X-OVER, 113.00#, TSH 523 PIN THREAD | | | EA | USED | 349.17 | 1 | 3.09 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34151 | | Rack No. BLDG (C) | 7 3/4" UNKNOWN MFG 4330.130 X-OVER, 46.10#, TSH 523 PIN THREAD | | | EA | NEW | 124.01 | 1 | 2.69 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34152 | | Rack No. BLDG (C) | 11 7/8" UNKNOWN MFG 4141-.130 X-OVER, 71.80#, TSH 523 PIN THREAD | | | EA | NEW | 203.19 | 1 | 2.83 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34181 | | Rack No. E12 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 2,866.97 | 1 | 39.93 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34181 | | Rack No. E12 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 17,373.45 | 6 | 241.97 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34182 | | Rack No. F12 (C) | 10 1/8" JFE JFE125T CASING, 79.22#, SLUI THREAD | | | EA | USED | 12,913.65 | 4 | 163.01 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34926 | | Rack No. A07 (C) | 14" TAMSA Q-125 HP X-OVER, 113.00#, HYD 523 THREAD | | | EA | NEW | 2,481.48 | 1 | 21.96 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36073-C | | Rack No. D006 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | NEW | 4,429.60 | 1 | 39.20 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36073-C | | Rack No. D006 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | NEW | 39,126.25 | 9 | 346.25 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-B | | Rack No. D08 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 17,946.66 | 4 | 158.82 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-B | | Rack No. D009 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 15,400.77 | 4 | 136.29 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. D06 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 8,890.84 | 2 | 78.68 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. D007 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 102,338.45 | 23 | 905.65 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. G08 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 364,709.76 | 82 | 3,227.52 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. N09 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 547,064.64 | 123 | 4,841.28 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36274-C | | Rack No. D34 (C) | 14" TENARIS TN-125 ICY CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 4,551.64 | 1 | 40.28 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36274-C | | Rack No. D34 (C) | 14" TENARIS TN-125 ICY CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 121,289.68 | 27 | 1,073.36 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36292-C | | Rack No. D007 (C) | 14" TENARIS Q-125 ICY CASING, 116.00#, TSH 523 THREAD | | | EA | USED | 132,205.20 | 28 | 1,139.70 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36293-C | | Rack No. D007 (C) | 14" TENARIS Q-125 ICY CASING, 116.00#, TSH 523 THREAD | | | EA | USED | 23,560.76 | 5 | 203.11 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36464-C | | Rack No. D007 (C) | 14" TENARIS Q-125 ICY CASING, 116.00#, TSH 523 THREAD | | | EA | USED | 13,571.30 | 3 | 120.10 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. ACRE (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 705,159.00 | 126 | 5,166.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B26 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 324,804.48 | 58 | 2,379.52 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B27 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 362,750.12 | 63 | 2,657.51 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B38 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 78,351.00 | 14 | 574.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B39 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 16,789.50 | 3 | 123.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. L13 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 392,795.13 | 70 | 2,877.62 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 40029 | | Rack No. ACRE (C) | 10 1/8" JFE UHP-15CR-125 CASING, 79.30#, PLAIN END THREAD | | | EA | NEW | 64,819.82 | 20 | 817.40 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44001 | | Rack No. H17 (A) | LINE PIPE 8 5/8" 1.316" 105# UKN GRADE VALLOUREC (BARE) 40 FT AVG | | | EA | NEW | 200,000.00 | 20 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44002 | | Rack No. H17 (A) | LINE PIPE 6" X 1.04" 62.10# PLAIN END TENARIS (BARE) | | | EA | NEW | 13,000.00 | 13 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44003 | | Rack No. H17 (A) | LINE PIPE 8.625" X 1.201" 95# UKN GRADE (BARE) | | | EA | NEW | 11,000.00 | 11 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44004 | | Rack No. H17 (A) | LINE PIPE 8.625" X 1.201" 95# UKN GRADE (COATED) | | | EA | NEW | 6,000.00 | 6 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44111 | | Rack No. H17 (A) | LINE PIPE 10.75" X 0.625" 68.1# UKN GRADE PE TENARIS (BARE) | | | EA | NEW | 5,000.00 | 5 | 0.00 | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44111-B | | Rack No. H17 (A) | LINE PIPE 10.75" X 0.625" 68.1# UKN GRADE PE TENARIS (COATED) | | | EA | NEW | 4,000.00 | 4 | 0.00 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Box B | | South wall | E SubSea Connector, Wet mate equipment pelican case. Included test plugs, THRT back up tools, spare parts. | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | PGA-30-003_C | | E-3 | E TEC, TEC 0.250_OD 28WT_INC 1C E_115 110C | | TA-3 | EA | Used | | 20443 | | 4.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Box A | | South wall | E SubSea Connector, Wet mate equipment pelican case. Included rebuild kits primary male back up female and male. | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Box C | | South wall | E SubSea Connector, Primary Install Box - Wet Mate Equipment, Male to be installed into Tubing Hanger Gold Pins (Part of MWC) PMP-0178 qty 3 Male Wetmate Connector (MWC)PGA-50-056 Qty 1 SN 11890392 (Primary, need to be rebuilt.) MWC Rebuild KitsPFIK | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | PFRK-24-6870 | | Locker 7 | E Fitting, FRK Inc 825 0.25" O Gauge CH_S T/T | | TA3 | EA | | | 3 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0J0290300 | | Locker 7 | E Fitting, SEAL CARRIER 1.368 IN OD 0.258 IN ID 2.904 IN LG BMS-S308 17-4 PH 100 MYS 29-33 HRC CRITICAL DRW: J02-903-00.1 | | TA3 | EA | | | 3 | | 1298 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10413131 | | Locker 7 | E Fitting, CHAMFERED SEAL 95 DURO FKM (VITON) 1.225 IN OD .939 IN ID .177 IN LG CRITICAL BATCH MANAGED F/ WELL FLUID: CALCIUM BROMIDE F/ TEMPERATURE: 166 DEG F F/ STATIC APPLICATION | | TA3 | EA | | | 22 | | 90.12 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10413129 | | Locker 7 | E Fitting, BACK-UP RING 200 SERIES 1.180/1.183 IN OD .960/.963 IN ID 0.078 IN LG BPS-F202 (PEEK) BACK-UP RINGS W/SCARF 45-DEG CONCAVE CRITICAL BATCH MANAGED .048 IN THICKNESS VIRGIN PEEK DRW: 274-262-01.21 | | TA3 | EA | | | 22 | | 19.81 | | | |
| Baker Hughes - Broussard | Baker Hughes | HWWB123V40 | | Locker 7 | E Fitting, O-RING 123 BPS-B201 (V40) VITON 90 DURO | | TA3 | EA | | | 22 | | 8.15 | | | |
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Special Tools | | Locker 7 | E SubSea Connector, Wet mate equipment yellow tool box. Included special install tools. | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | HWWB023V40 | | Locker 7 | E Fitting, 023 O-RING BPS-B201 (V40) O-RING | | TA3 | EA | | | 22 | | 5.08 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10316238 | | Locker 7 | E Fitting, Fitting 1/4" INC825 Swagelock Nut, INC825-402-1 | | TA3 | EA | | | 30 | | 44.56 | | | |
| Baker Hughes - Broussard | Baker Hughes | HWWB213V40 | | Locker 7 | E Accessory, 213 O-RING BPS-B201Q (V40) O-RING | | TA3 | EA | Scrap | | 22 | | 8.98 | | | |
| Baker Hughes - Broussard | Baker Hughes | PMA-6828 | | Locker 7 | E Fitting, Swagelok 1/4" Inc 825 Ferrule Set Front Ferrule 825-403-1 Back Ferrule 825-404-1 Front & Rear, Pt No. 825-400-SET | | TA3 | EA | | | 30 | | 51.24 | | | |
| Baker Hughes - Broussard | Baker Hughes | PGA-33-09436_C | | CON 6 | CI Control Line, Tube 1/4" x 0.065" WT INC825, Encap | | MC 353 #1 | EA | | | 1500 | | 7.89 | | | |
| Baker Hughes - Broussard | Baker Hughes | PGA-34-09344_C | | D-5 | CI Control Line, Dual FPC Santoprene 2 x 1/4 Tube Incoloy | | MC 353 #1 | EA | | | 13300 | | 7.89 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307050025RN81 | | 1-13-B | E Gauge, DHPT Gauge, Triple SurSENS 175HP Gauge for IWS: tbg/ann/ remote (shroud), 30,000 psia, 200C, Accuracy: .02%, Resolution: .0001 psi, temp res: .0001F, ext testable connection | | | EA | New | | 1 | | 112500 | | | |
| Baker Hughes - Broussard | Baker Hughes | H30833000SRN81 | | 1-15-BL | CI Special Tool, Y-Block, 1/2" Control line, f/5.5" 29.7#, Alloy 718, Ext Testable Jam Nut fittings, Alloy 718, one 1/2" top, two 1/2" down, four bypass slots, 15K Rated | | Green SS #2 ST2 | EA | New | | 1 | | 29680 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940423RN81 | | 1-23-AL | Protector, Cannon - 4500-A-06 | | Blue SS #4 | EA | New | | 4 | | 79.81 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940425RN81 | | 1-23-AL | Protector - Stand-off, Cannon - 5500-A-06N11.3G1.16 | | Blue SS #4 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940427RN81 | | 1-23-AL | Protector - Stand-off, Cannon - 6248-B-72RG1.57-XT | | Blue SS #4 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940424RN81 | | 1-23-AL | Protector - Stand-off, Cannon - 4500-A-06N9.6G1.66 | | Blue SS #4 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940418RN81-MOD | | 1-23-AL | Protector - Stand-off, Cannon - 6248-A-72R/D6OCG1.57-XT-MOD | | Blue SS #4 | EA | New | | 1 | | 1862.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940419RN81 | | 1-23-AL | Protector, Cannon - 5500-A-72R/77DC | | Blue SS #4 | EA | New | | 22 | | 121.69 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940427RN81-MOD | | 1-23-AL | Protector - Stand-off, Cannon - 6248-B-72RG1.57-XT-MOD | | Blue SS #4 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940422RN81 | | 1-23-AL | Protector - Mid Joint, Cannon - 5500-C-72R/77DC | | Blue SS #4 | EA | New | | 3 | | 60.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940440RN81 | | 1-23-AL | Protector - Mid Joint, Cannon - 4500-C-06 | | Blue SS #4 | EA | New | | 3 | | 39.88 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940445RN81 | | 1-23-AL | Protector - Splice, Cannon - 4500-30-06 | | Blue SS #4 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940447RN81 | | 1-23-AL | Protector - Splice, Cannon - 5500-30-72R | | Blue SS #4 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940446RN81 | | 1-23-AL | Protector - Splice, Cannon - 5500-40-72R/77DC | | Blue SS #4 | EA | New | | 2 | | 1106 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940426RN81 | | 1-23-AR | Protector, Cannon - 5500-A-72R | | Blue SS #4 | EA | New | | 76 | | 87.31 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940428RN81 | | 1-6-A | Protector, Cannon - 4500-A-81 | | Green SS #2 ST2 | EA | New | | 4 | | 79.81 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940448RN81-MOD | | 1-6-A | Protector - Stand-off, Cannon - 6248-B-61RG1.57-XT-MOD | | Green SS #2 ST2 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940432RN81 | | 1-6-A | Protector - Stand-off, Cannon - 5500-A-81N11.3G1.16 | | Green SS #2 ST2 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940433RN81 | | 1-6-A | Protector - Stand-off, Cannon - 4500-A-81N9.6G1.66 | | Green SS #2 ST2 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940421RN81 | | 1-6-A | Protector, Cannon - 5500-55-72R/77DC | | Blue SS #4 | EA | New | | 2 | | 1105 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940448RN81 | | 1-6-A | Protector - Stand-off, Cannon - 6248-B-61RG1.57-XT | | Green SS #2 ST2 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940417RN81 | | 1-6-A | Protector - Mid Joint, Cannon - 4500-C-81 | | Green SS #2 ST2 | EA | New | | 3 | | 42.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940435RN81 | | 1-6-A | Protector - Splice, Cannon - 4500-30-81 | | Green SS #2 ST2 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940434RN81 | | 1-6-A | Protector - Mid Joint, Cannon - 5500-C-61R/77DC | | Green SS #2 ST2 | EA | New | | 1 | | 64.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940430RN81 | | 1-6-A | Protector - X-Over, Cannon - 5500/7063-40-61R/77DCXO | | Green SS #2 ST2 | EA | New | | 1 | | 1106 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940438RN81 | | 1-6-A | Protector - VIT, Cannon - 7205B - VIT Sleeve | | Green SS #2 ST2 | EA | New | | 5 | | 2860 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940437RN81 | | 1-6-A | Protector - VIT, Cannon - 72057 - VIT Sleeve | | Green SS #2 ST2 | EA | New | | 14 | | 2594 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940429RN81 | | 1-6-A | Protector - VIT, Cannon - 7063-50-61R_77DCSVIT | | Green SS #2 ST2 | EA | New | | 13 | | 756.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940444RN81 | | 1-6-A | Protector - X-Over, Cannon - 7063_5500-40-61R_77DCXO | | Green SS #2 ST2 | EA | New | | 1 | | 1106.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940436RN81 | | 1-6-A | Protector - Splice, Cannon - 5500-40-61R/77DC | | Green SS #2 ST2 | EA | New | | 2 | | 1106 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940439RN81 | | 1-6-A | Protector - Splice, Cannon - 5500-30-61R | | Green SS #2 ST2 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940442RN81 | | 1-6-A | Protector, Cannon - 5500-A-61R_77DC | | Green SS #2 ST2 | EA | New | | 19 | | 121.69 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940443RN81 | | 1-6-A | Protector, Cannon - 5500-55-61R_77DC | | Green SS #2 ST2 | EA | New | | 2 | | 1105 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940414RN81-MOD | | 1-6-A | Protector - Stand-off, Cannon - 6248-A-61R/D6OCG1.57-XT-MOD | | Green SS #2 ST2 | EA | New | | 1 | | 1872.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940431RN81 | | 1-6-A | Protector, Cannon - 5500-A-61R | | Green SS #2 ST2 | EA | New | | 56 | | 91.69 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB115643ORT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN X 2.812 MODEL D PROBE | | Green SS #2 ST2 | EA | | | 1 | | 1228 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB115643ORT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN X 2.812 MODEL D PROBE | | Green SS #2 ST2 | EA | | | 1 | | 1228 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB096600014NGNE | | 1-6-BR | SurSet - Lock / Plug, 3.312 EQUALIZING CHECK VALVE AOFT-2 BMS-S210 13 CR 80 MYS 22 HRC MAX BC5-A404 QPQ OR PLASMA NITRIDING 10,000 WP A6OOK BPS-C501 (KV65) 65D VTN CVN 3.385 IN OD 1.250 IN DIA OF BALL 3.312 AF PROFILE CO2 & H2S SERVICE BPS-C501 (KV65) PACKING UNIT CRITICAL | | Green SS #2 ST2 | EA | | | 1 | | 14957 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB096600014NGNE | | 1-6-BR | SurSet - Lock / Plug, 3.312 EQUALIZING CHECK VALVE AOFT-2 BMS-S210 13 CR 80 MYS 22 HRC MAX BC5-A404 QPQ OR PLASMA NITRIDING 10,000 WP A6OOK BPS-C501 (KV65) 65D VTN CVN 3.385 IN OD 1.250 IN DIA OF BALL 3.312 AF PROFILE CO2 & H2S SERVICE BPS-C501 (KV65) PACKING UNIT CRITICAL | | Green SS #2 ST2 | EA | | | 1 | | 14957 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB115570ORT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN 2.812 IN WIRELINE RUNNING TOOL A | | Green SS #2 ST2 | EA | | | 1 | | 6272 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB115507ORT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN 2.812 IN WIRELINE RUNNING TOOL A | | Green SS #2 ST2 | EA | | | 1 | | 6272 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10485888 | | 1-6-BR | , DISTRICT MADE UPPER BODY BMS-A098 41XX OR P110 STEEL 110 MYS STD 4.500 IN 12.75 LB/FT EU 8RD BOX UP 6.250 IN STUB ACME PIN DOWN LEFT HAND THREAD DOWN 7.500 IN OD 18.00 IN LG | | Blue Well | EA | | | 1 | | 2350 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307980033RN81 | | D-15 | E TEC, 1/4" x .049" TEC INC 825 FEP Filler | | Green SS #2 ST2 | EA | New | | 21344 | | 4.3 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308190058RN81 | | D-17 | CI Control Line, Dual 3/8" x .065" Enhanced Properties Flatpack MYS 70 KSI | | Green SS #2 ST2 | EA | New | | 21494 | | 8.36 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308190059RN81 | | E-15 | Control Line - IWS, Triple 1/4" x .049" Enhanced Properties Flatpack MYS 65KSI | | Green SS #2 ST2 | EA | New | | 18764 | | 6.53 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308190060RN81 | | F-6 | CI Control Line, Dual 1/4" x .049" Enhanced Properties Flatpack MYS 65KSI | | Green SS #2 ST2 | EA | New | | 6994 | | 4.36 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474034 | | Locker 7 | E Fitting, TEC splice installation kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474034 | | Locker 7 | E Fitting, TEC splice Installation kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Broussard | Baker Hughes | H0A1569420RN81 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569420RN81 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307970007RN81 | | Locker 7 | E Splice, TEC Splice Kit, f / 1/4" line, .75" OD, 30K psi rated, NACE, MP35N | | Green SS #2 ST2 | EA | New | | 1 | | 6145 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230018RN81 | | Locker 7 | CI Valve, SureTreat CIV 15K/20K, Inj Block valve, 3/8" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230018RN81 | | Locker 7 | CI Valve, SureTreat CIV 15K/20K, Inj Block valve, 3/8" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307970007RN81 | | Locker 7 | E Splice, TEC Splice Kit, f / 1/4" line, .75" OD, 30K psi rated, NACE, MP35N | | Blue SS #4 | EA | New | | 1 | | 6145 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307970007RN81 | | Locker 7 | E Splice, TEC Splice Kit, f / 1/4" line, .75" OD, 30K psi rated, NACE, MP35N | | Green SS #2 ST2 | EA | New | | 1 | | 6145 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230017RN81 | | Locker 7 | CI Valve, SureTreat CIV 15K, Inj Block valve, 1/2" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569418RN81 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RN81 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RN81 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RN81 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10465505 | | Locker 7 | E Fitting, Redress Kit, SureSENS 17S Triple Gauge, Autoclave connection | | Green SS #2 ST2 | EA | New | | 1 | | 448 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10465503 | | Locker 7 | E Fitting, Installation Kit, SureSENS 17SHP Dual Gauge, Autoclave conn. | | Blue SS #4 | EA | New | | 1 | | 1080 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230017RN81 | | Locker 7 | CI Valve, SureTreat CIV 15K, Inj Block valve, 1/2" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569420RN81 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A0169000 | | Locker 7 | , 1.230 IN BACK-UP RING 1.232 IN OD 1.013 IN ID .227 IN LG BPS-F202 (PE30) BACK-UP RINGS W/SCARF CUSTOM CRITICAL BATCH MANAGED F/DOVE-TAIL O-RING GROOVES C1 CRITICAL TO HSE | | Green Well | EA | | | 1 | | 92.8 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569420RN81 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569418RN81 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569418RN81 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569418RN81 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RN81 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A1569419RN81 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,, f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A0169000 | | Locker 7 | , 1.230 IN BACK-UP RING 1.232 IN OD 1.013 IN ID .227 IN LG BPS-F202 (PE30) BACK-UP RINGS W/SCARF CUSTOM CRITICAL BATCH MANAGED F/DOVE-TAIL O-RING GROOVES C1 CRITICAL TO HSE | | Green Well | EA | | | 7 | | 649.6 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC Splice redress kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC Splice redress kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC Splice redress kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC Splice redress kit w/C-276 | | Blue SS #4 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC Splice redress kit w/C-276 | | Blue SS #4 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474034 | | Locker 7 | E Fitting, TEC Splice Installation kit w/C-276 | | Blue SS #4 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10485883 | | South wall | CI Accessory, Teflon Sleeve for 1/2" Control Line | | Green SS #2 ST2 | EA | New | | 300 | | 16.44 | | | |
| Baker Hughes - Houma | Baker Hughes | 266730541 | | | LANDING COLLAR TYPE II W/BAFFLE 5.500 IN 20.00 LB/FT ATLAS BRADFORD ST-L BOX UP 5.500 IN 20.00 LB/FT ATLAS BRADFORD ST-L PIN DOWN 5.545 IN OD 4.688 IN ID 2.365 PSI SHEAR 1.500 IN DIA OF BALL 125 KSI MYS (API SCT) | | EUGENE ISLAND 354 A-6 | EA | | | 1 | | 5628.75 | | | |
| Baker Hughes - Houma | Baker Hughes | 2998945BSST1 | | | CROSSOVER BUSHING 10.125 IN 79.22 LB/FT SEAL LOCK SF BOX UP 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.259 IN OD 8.531 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11401 | | | |
| Baker Hughes - Houma | Baker Hughes | 2998940455T1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 10.125 IN 79.22 LB/FT SEAL LOCK SF PIN DOWN Q125 CR-MO TBLR 125 MYS 10.160 IN OD 8.530 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 12304 | | | |
| Baker Hughes - Houma | Baker Hughes | 2998946395T1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 10.125 IN 79.22 LB/FT SEAL LOCK SF PIN DOWN Q125 CR-MO TBLR 125 MYS 10.962 IN OD 8.530 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 15884 | | | |
| Baker Hughes - Houma | Baker Hughes | 2998940235T1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.541 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 12798 | | | |
| Baker Hughes - Houma | Baker Hughes | 2964501615T1 | | | LINER PACKER W/HRD-E PROFILE AND HOLD DOWN 9.875 IN 67.50 LB/FT VAM SLU II BOX DOWN 13.375 IN 61.0-72.0 LB/FT CSG 11.750 IN EXT OD 10.188 IN EXT ID 20.00 FT EXT LG C-110 TYPE PBR EXT 12.000 IN OD 8.535 IN ID (MUST DRIFT 8.500) 5% SHEAR SCREWS 8.535 IN P | | NOBLE BUY OUT | EA | | | 1 | | 229733.1 | | | |
| Baker Hughes - Houma | Baker Hughes | 2999218165T1 | | | SPACER NIPPLE 9.875 IN 67.50 LB/FT VAM SLU II PIN UP 9.875 IN 67.50 LB/FT VAM SLU II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30.974 IN OD 8.444 IN ID 10.00 FT LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 19604.7 | | | |
| Baker Hughes - Houma | Baker Hughes | 2975509975T1 | | | SEAL ASSEMBLY BULLET 9.875 IN VAM SLU II BOX UP 20.00 FT EXT LG 10.188 IN SEAL OD .177 CROSS SECTION SEALS BULLET SEAL 13,500 PSI SEAL RATING 4 SEALS 11.750 IN OD 8.549 IN ID ROUND NOSE GUIDE C-110 | | NOBLE BUY OUT | EA | | | 1 | | 160685.1 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Houma | Baker Hughes | 2964501615T1 | | | LINER PACKER W/HRD-E PROFILE AND HOLD DOWN 9.875 IN 67.50 LB/FT VAM SLII II BOX DOWN 13.375 IN 61.0-72.0 LB/FT CSG 11.750 IN EXT OD 10.188 IN EXT ID 20.00 FT EXT LG C-110 TYPE PBR EXT 12.000 IN OD 8.535 IN ID (MUST DRIFT 8.500) 5% SHEAR SCREWS 8.535 IN P | | NOBLE BUY OUT | EA | | | 1 | | 229733.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2999218165T1 | | | SPACER NIPPLE 9.875 IN 67.50 LB/FT VAM SLII II PIN UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 9.974 IN OD 8.444 IN ID 10.00 FT LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 19604.7 | | |
| Baker Hughes - Houma | Baker Hughes | 2999017115T1 | | | COLLAR 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 67.50 LB/FT VAM SLII II BOX DOWN C110 CR-MO TBLR 110-125 KSI 30 10.200 IN OD 8.549 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | 10052.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2941600255T1 | | | LINER HANGER CONTROL SET FLEXIV HYDRAULIC ASSEMBLY NON-ROT 9.875 IN 67.50 LB/FT VAM SLII II PIN UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN 13.375 IN 54.5-72.0 LB/FT CSG 12.050 IN OD 8.549 IN ID 1,087-1,471 PSI SHEAR 15.00 FT LG KIT MOUNTED ON TOP C-11 | | NOBLE BUY OUT | EA | | | 1 | | 216195.3 | | |
| Baker Hughes - Houma | Baker Hughes | 270090752 | | | PUP JOINTS 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.191 IN OD 8.546 IN ID 8.00 FT LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 17861.4 | | |
| Baker Hughes - Houma | Baker Hughes | 2998949605T1 | | | CROSSOVER BUSHING 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.191 IN OD 8.499 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 16222.5 | | |
| Baker Hughes - Houma | Baker Hughes | 2998949615T1 | | | CROSSOVER BUSHING 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 65.30 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.191 IN OD 8.499 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | 16602.3 | | |
| Baker Hughes - Houma | Baker Hughes | 1017600375T1 | | | FLOAT COLLAR SV W/ORIFICE 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 10.360 IN OD 8.530 IN ID | | NOBLE BUY OUT | EA | | | 1 | | 18790.2 | | |
| Baker Hughes - Houma | Baker Hughes | 1017600375T1 | | | FLOAT COLLAR SV W/ORIFICE 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 10.360 IN OD 8.530 IN ID | | NOBLE BUY OUT | EA | | | 1 | | 18790.2 | | |
| Baker Hughes - Houma | Baker Hughes | 2998949635T1 | | | CROSSOVER BUSHING 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.360 IN OD 8.525 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 18188.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2975509975T1 | | | SEAL ASSEMBLY BULLET 9.875 IN VAM SLII II BOX UP 20.00 FT EXT LG 10.188 IN SEAL OD .177 CROSS SECTION SEALS BULLET SEAL 13,500 PSI SEAL RATING 4 SEALS 11.750 IN OD 8.549 IN ID ROUND NOSE GUIDE C-110 | | NOBLE BUY OUT | EA | | | 1 | | 160685.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2998951975T1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.962 IN OD 8.531 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 12798 | | |
| Baker Hughes - Houma | Baker Hughes | 2999020205T1 | | | COLLAR 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 9.875 IN 62.80 LB/FT VAM TOP BOX DOWN Q125 CR-MO TBLR 125 MYS 10.962 IN OD 8.815 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 7907.4 | | |
| Baker Hughes - Houma | Baker Hughes | 275210381RT | | | TIEBACK MILL 4.500 IN NC-50 (4-1/2 IF) BOX UP 5.000 IN XT-50 W/ACCESSORY BEVEL PIN DOWN 10.125 IN OD 3.000 IN OD 48.000 IN LG 10.188 IN EXT ID 110 KSI MYS BCS-A401 ZINC OR MANGANESE PHOSPHATE | | NOBLE BUY OUT | EA | | | 1 | | 19207 | | |
| Baker Hughes - Houma | Baker Hughes | 275210381RT | | | TIEBACK MILL 4.500 IN NC-50 (4-1/2 IF) BOX UP 5.000 IN XT-50 W/ACCESSORY BEVEL PIN DOWN 10.125 IN OD 3.000 IN OD 48.000 IN LG 10.188 IN EXT ID 110 KSI MYS BCS-A401 ZINC OR MANGANESE PHOSPHATE | | NOBLE BUY OUT | EA | | | 1 | | 19207 | | |
| Baker Hughes - Houma | Baker Hughes | 07885471N | | | 9.188 IN ROUND NOSE GUIDE CR-MO STEEL 125 MYS ZINC OR MANGANESE PHOSPHATE 10.125 IN OD 8.635 IN ID 2.00 FT LG W/9.188 OD MOD STUB ACME THD F/10.188 OD SEAL ASSEMBLY | | NOBLE BUY OUT | EA | | | 1 | | 12225 | | |
| Baker Hughes - Houma | Baker Hughes | 2998941205T1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.350 IN OD 6.535 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 9819 | | |
| Baker Hughes - Houma | Baker Hughes | 2998953095T1 | | | CROSSOVER BUSHING 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 4.500 IN NO WEIGHT NC50 PIN DOWN P110 GEN PURPOSE TBLR 110 MYS 7.967 IN OD 3.735 IN ID 24.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 8355 | | |
| Baker Hughes - Houma | Baker Hughes | 2998953095T1 | | | CROSSOVER BUSHING 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 4.500 IN NO WEIGHT NC50 PIN DOWN P110 GEN PURPOSE TBLR 110 MYS 7.967 IN OD 3.735 IN ID 24.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 8355 | | |
| Baker Hughes - Houma | Baker Hughes | 2998940285T1 | | | CROSSOVER BUSHING 5.000 IN 18.00 LB/FT VAM TOP HT BOX UP 5.000 IN 18.00 LB/FT TENARISHYDRIL WEDGE 513 PIN DOWN Q125 CR-MO TBLR 125 MYS 5.622 IN OD 4.194 IN ID 18.00 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11671.5 | | |
| Baker Hughes - Houma | Baker Hughes | 266730311 | | | LANDING COLLAR TYPE II W/BAFFLE 5.000 IN 18.00 LB/FT TENARISHYDRIL WEDGE 513 BOX UP 5.000 IN 18.00 LB/FT TENARISHYDRIL WEDGE 513 PIN DOWN 5.055 IN OD 4.184 IN ID 3,100 PSI SHEAR 1.500 IN DIA OF BALL 110 KSI MYS | | NOBLE BUY OUT | EA | | | 1 | | 9132 | | |
| Baker Hughes - Houma | Baker Hughes | 2998953015T1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.000 IN 35.00 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.361 IN OD 5.903 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11269.5 | | |
| Baker Hughes - Houma | Baker Hughes | 2998953015T1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.000 IN 35.00 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.361 IN OD 5.903 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11269.5 | | |
| Baker Hughes - Houma | Baker Hughes | 299893328 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT VAM SLII II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.559 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | 11593.5 | | |
| Baker Hughes - Houma | Baker Hughes | 299895335 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 10.175 IN 81.00 LB/FT VAM SLII II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.963 IN OD 8.531 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11635.5 | | |
| Baker Hughes - Houma | Baker Hughes | 2998940235T1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.541 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11798.25 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Houma | Baker Hughes | 298893328 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT VAM SLII II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.559 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | 11593.5 | | | |
| Baker Hughes - Houma | Baker Hughes | 298895335 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 10.175 IN 81.00 LB/FT VAM SLII II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.963 IN OD 8.551 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11635.5 | | | |
| Baker Hughes - Houma | Baker Hughes | 298894120ST1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.350 IN OD 6.535 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 9819 | | | |
| Baker Hughes - Houma | Baker Hughes | 274120357 | | | LANDING COLLAR LFC TYPE I 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 7.957 IN OD 6.525 IN ID (MUST DRIFT 6.500) 125 KSI MYS (API SCT) | | NOBLE BUY OUT | EA | | | 1 | | 17821.5 | | | |
| Baker Hughes - Houma | Baker Hughes | 274120357 | | | LANDING COLLAR LFC TYPE I 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 7.957 IN OD 6.525 IN ID (MUST DRIFT 6.500) 125 KSI MYS (API SCT) | | NOBLE BUY OUT | EA | | | 1 | | 17821.5 | | | |
| Baker Hughes - Houma | Baker Hughes | 298894960ST1 | | | CROSSOVER BUSHING 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.191 IN OD 8.499 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 16222.5 | | | |
| Baker Hughes - Houma | Baker Hughes | 298894963 | | | CROSSOVER BUSHING 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.360 IN OD 8.525 IN ID 18.000 IN LG API SCT | | KATMAI | EA | | | 1 | | 12306 | | | |
| Baker Hughes - Houma | Baker Hughes | 10555030 | | | 10.125 IN ROUND NOSE GUIDE - CEMENT FILL CR-MO STEEL 125 MYS ZINC OR MANGANESE PHOSPHATE 10.125 IN OD 8.635 IN ID 2.00 FT LG W/9.188 OD MOD STUB ACME THD F/10.188 OD SEAL ASSEMBLY | | KATMAI | EA | A | | 1 | | 4714.2 | | | |
| Benoit - Houma | Benoit | 20240 | | Inside | 4 1/2" 15.50# 13CR-110 Smart Assembly X 91' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 20205 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion C.I.M. / Safety Valve Assembly X 50' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 20029 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion C.I.M. / Safety Valve Assembly X 50' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 20390 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Casing Assembly X 48' (40' T&C Casing On Top, 2' Sub In Mid., 6' T&C PJ On Btm.) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 9811 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Lower BCSD Flo-Tool X 15' | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 9814 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Lower Pin / Pin BCSD Flo-Tool X 15' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 9813 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Lower Pin / Pin BCSD Flo-Tool X 15' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 9815 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Upper BCSD Flo-Tool X 15' | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 9816 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Upper BCSD Flo-Tool X 15' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 12186 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Blast Joint X 12' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 8295 | | Outside | 2 3/8" 4.70# 13CR-85 BTS-8 Blast Joint X 20' | | | EA | U | | 5 | | 0 | | | |
| Benoit - Houma | Benoit | 17693 | | Outside | 2 7/8" 6.50# 13CR-95 BTS-8 Blast Joint X 20' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 17103 | | Inside | 2 3/8" 4.70# 13CR-110 BTS-8 Box Bull Plug X 08" | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 9817 | | Outside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Chemical Injection Mandrel Assembly X 39' | | | EA | U | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 20097 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Chemical Injection Mandrel Assembly X 25' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 20391 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Chemical Injection Mandrel X 20' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14355 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Lower Combo Joint X 12' (IPC TK-800) | | | EA | A | | 3 | | 0 | | | |
| Benoit - Houma | Benoit | 14354 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Upper Combo Joint X 12' (IPC TK-800) | | | EA | A | | 3 | | 0 | | | |
| Benoit - Houma | Benoit | 10683 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Lower Combo-Joint X 12' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 10682 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Upper Combo-Joint X 12' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 9759 | | Inside | 2 3/8" L-80 EUE Brd Mod Tubing Coupling (IPC TK-7) | | | EA | B | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 9746 | | Inside | 2 3/8" L-80 EUE Brd Mod Tubing Coupling (IPC TK-7) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14356 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Box / 2 7/8" 6.50# BTS-8 Pin Crossover Sub X 12" (IPC TK-800) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18964 | | Inside | 3 1/2" 9.30# L-80 BTS-8 Pin / 3 1/2" 9.30# UEU Brd Pin X-Over Sub X 14" (IPC TK-70) | | | EA | A | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 14348 | | Inside | 2 3/8" 4.70# L-80 BTS-8 Pin / Pin Pup Joint X 06' (IPC TK-800) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14349 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 02' (IPC TK-800) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14350 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 04' (IPC TK-800) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14351 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 06' (IPC TK-800) | | | EA | A | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 14352 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-800) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14481 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-800) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14353 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-800) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14482 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-800) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 17599 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Pin / Pin Pup Joint X 04' ( IPC TK-800 ) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14418 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 02' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14419 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 04' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 13200 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 06' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14420 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 10' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 11864 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 02' (IPC TK-7) | | | EA | A | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 6758 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 04' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 5988 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 06' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 12038 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-7) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 6343 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-7) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 7598 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 08' (IPC-TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 6345 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 8827 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 06' (IPC TK-7) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 4721 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 02' (IPC TK-7) | | | EA | A | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 4746 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 04' (IPC TK-7) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 4747 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 06' (IPC TK-7) | | | EA | B | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 8828 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-7) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 4748 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-7) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18968 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 02' (IPC TK-70) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18967 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 02' (IPC TK-70) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18961 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 04' (IPC TK-70) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18969 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 04' (IPC TK-70) | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18965 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 06' (IPC TK-70) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18962 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 06' (IPC TK-70) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18963 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 10' (IPC TK-70) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 18966 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 10' (IPC TK-70) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 13190 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K Box / Pin Lower Combo-Joint X 12' | | | EA | A | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 13189 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K Cplg. Box / Box Upper Combo-Joint X 12' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16446 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Lower Combo-Joint X 12' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 18847 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Upper Combo-Joint X 12' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15402 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace Lower Combo Joint Assembly X 12' | | | EA | U | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15392 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace Upper Combo Joint Assembly X 12' | | | EA | U | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 7338 | | Inside | 3 1/2" 9.30# Hyper 13CR-110 BTS-8 Lower Combo-Joint X 12' | | | EA | B | | 3 | | | 0 | |
| Benoit - Houma | Benoit | 7226 | | Inside | 3 1/2" 9.30# Hyper 13CR-110 BTS-8 Upper Combo-Joint X 12' | | | EA | B | | 3 | | | 0 | |
| Benoit - Houma | Benoit | 20355 | | Inside | 4 1/2" 18.90# 13CR-S10 HYP 2 JFE Lion Pin / 4 1/2" 17# Vam Top Pin X-Over Pup Joint X 10' | | | EA | A | | 4 | | | 0 | |
| Benoit - Houma | Benoit | 20064 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin / Vam Ace Pin X-Over Pup Joint X 5' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16324 | | Inside | 2 3/8" 4.43# 13CR-85 Echo F-4 Box / 2 3/8" 4.70# BTS-8 S/C Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16323 | | Inside | 2 3/8" 4.60# 13CR-85 NU 10rd (special OD) Box / 2 3/8" 4.43# Echo F-4 Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19681 | | Inside | 2 3/8" 4.70# 13CR-110 BTS-8 Box / 2 3/8" 4.70# NU 10rd Pin X-Over Locator Sub X 18" (w/ 3.150" O.D.) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 7925 | | Inside | 2 7/8" 7.90# 13CR-95 Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15565 | | Inside | 2 7/8" 6.16# Hyper 13CR-110 STL Box / 2 7/8" 7.66# HDL Pin X-over Subs X 12" | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 14955 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-K Box / 2 7/8" 6.50# BTS-8 Pin X-Over Sub X 12" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2917 | | Inside | 2 7/8" 6.40#-L-80 NU 10rd Pin X 2 3/8" EUE Box X-over Sub | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2918 | | Inside | 2 7/8" 6.40#-L-80 NU 10rd Pin X 2 3/8" EUE Box X-over Sub | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19026 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 11933 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Pin / 2 3/8" 4.70# BTS-8 Box Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17346 | | Inside | 2 7/8" 6.50#-P-110 BTS-8 Box / 4 1/2" NU Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19682 | | Inside | 2 7/8" 6.50#-P-110 NU 10rd Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15564 | | Inside | 2 7/8" 7.66# 13CR-110 HDL Box / 2 7/8" 6.16# STL Pin X-over Sub X 14" | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 2915 | | Inside | 2 7/8" L-80 NU 10rd Box X 2 3/8" NU 10rd Box X-over Sub | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2916 | | Inside | 2 7/8" L-80 NU 10rd Box X 2 3/8" NU 10rd Box X-over Sub | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17689 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Box / 3 1/2" 9.30# EUE Brd Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14440 | | Inside | 3 1/2" 12.95# 13CR-95 BTS-6 Box / 3 1/2" 9.30# BTS-8 Pin X-Over Sub X 14" | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16481 | | Inside | 3 1/2" 12.95# 13CR-95 BTS-6 Box / 3 1/2" 10.20# JFE Bear Pin X-Over Sub X 2' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15942 | | Inside | 3 1/2" 9.20# 13CR-85 JFE Bear Box / 3 1/2" 9.30# BTS-8 Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 11711 | | Inside | 3 1/2" 9.20# 13CR-85 Vam Ace Box / 2 7/8" 6.50# BTS-8 Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17690 | | Inside | 3 1/2" 9.20# 13CR-95 EUE Brd Box / 2 7/8" 6.50# BTS-8 Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 11073 | | Inside | 3 1/2" 9.30# Hyper 13CR110 BTS-8 Box / 2 7/8" 6.50# BTS-8 Box Crossover Sub x 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17344 | | Inside | 4 1/2" 15.10# 13CR-110 SLHT Box / 5 1/2" 23# SHLT Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19683 | | Inside | 4" 11.60# 13CR-85 NU Brd Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17345 | | Inside | 5 1/2" 23# 13CR-110 SLHT Box / 4 1/2" 15.10# SLHT Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20231 | | Inside | 5 1/2" 29.70# 13CR-95 JFE Lion Box / 5 1/2" 23# JFE Lion Pin X-Over Sub X 36" | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14201 | | Outside | 2 3/8" 4.70# L-80 BTS-8 Gas Lift Madrel Assembly X 18' (6' P/J's top & btm) (superior gbk mandrels) | | | EA | U | | 3 | | | 0 | |
| Benoit - Houma | Benoit | 12345 | | Outside | 2 7/8" 6.50# 13CR85 BTS-8 Gas Lift Mandrel Assembly X 19' (6' Pup Joint Top & Bottom)(Superior mandrels) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20098 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Gauge Mandrl Assembly X 15' (2- 4' Pup Joints On Btm) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14357 | | Inside | 2 3/8" 4.70# 9CR-80 BTS-8 PR BCS Nipple (1.875" P.B.) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2920 | | Inside | 2 3/8" 4.70# 9CR-80 BTS-8 SWN Nipple | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2919 | | Inside | 2 3/8" 4.70# 9CR-80 BTS-8 SWS Nipple | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14960 | | Inside | 2 7/8" 6.16# 13CR-85 Echo F-4 BCS Nipple (2.313" P.B.) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13615 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-K Coupling Box / Pin BCS Nipple ( 2.313"PB ) | | | EA | B | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 16272 | | Inside | 2 7/8" 6.50# 9CR-80 BCSN EUE BRD Pin / Pin Nipple (2.313" P.B. / 2.205" No-Go) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17816 | | Inside | 2 7/8" 6.50# 9CR-80 EUE Brd Pin / Pin BCS Landing Nipple (2.313" P.B.) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15777 | | Inside | 3 1/2" 10.20# 718 Inconel Vam Top Pin / Pin BCH Nipple (2.750" P.B.) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19841 | | Outside | 2 3/8" 4.70#-L-80 BTS-8 BCN Nipple Assembly X 31' (1.875" P.B.) ( Plug In Place) ( 12' UCJ on Top + 12' LCJ + 6' Perforated PJ On Btm.) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13966 | | Inside | 2 3/8" 4.70#-L-80 BTS-8 BCSN Nipple Assembly X 13' w/ WLEG (1.875" P.B. / 1.791' No-Go) (6' P/J Top / Bottom) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13591 | | Inside | 2 3/8" 4.70#-L-80 EUE Brd Nipple Assembly X 13' w/ WLEG (1.875" P.B.) (9CR-80 Nipple) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19835 | | Outside | 2 7/8" 6.50 13CR-85 BTS-8 BCS Nipple Assembly X 25' (12' C/J Top & Btm.) | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 13192 | | Outside | 2 7/8" 6.40# 13CR-95 Fox-K BCS Nipple Assembly X 25' (2.313" P.B.)(fox / bts-8 c/j's top & bottom) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13061 | | Outside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 BCS Nipple Assembly X 29' (14' C/J's top & bottom) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14789 | | Outside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 BCS Nipple Assembly X 25" (2.313"P.B.) W/ 12' c/j's top & btm. | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19844 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 BCN Nipple Assembly X 14' (2.313" P.B.) (6' PJ Top & Btm./ 12' Mule Shoe on Btm.) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15476 | | Outside | 2 7/8" 7.70# 13CR-95 Vam Ace Nipple Assembly X 25' (2.188" P.B. PetroQuip nipple) 6' P/J's & 6' F/C torqued together top & btm | | | EA | U | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 13467 | | Outside | 2 7/8" 7.90# Hyper 13CR-110 BTS-6 BC-R Nipple Assembly X 25' (2.188 PB) (w/ 12' C/J Top & Btm.) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20031 | | Outside | 4 1/2" 15.20# 13CR-110 JFE Lion HES RPT Nipple Assembly X 30' (3.125" P.B.) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15336 | | Inside | 3 1/2" 9.30# Hyper 13CR-110 BTS-6 Perforated Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14460 | | Inside | 3 1/2" 9.30# 13CR-95 BTS-8 Pup Joint X 06' (1/2" Holes, 6" Centers, 90 Degree Phase) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 10234 | | Inside | PRR Plug (2.313" PB) | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2910 | | Inside | PRR Plug (2.313" PB) | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19760 | | Inside | 2 3/8 4.70# 13CR-85 BTS-8 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 11156 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 11157 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 11158 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16321 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 08' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16322 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 10' | | | EA | A | | 1 | | | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 13508 | | Inside | 2 3/8" 4.60# 13CR-85 STL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13509 | | Inside | 2 3/8" 4.60# 13CR-85 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16097 | | Inside | 2 3/8" 4.60# 13CR-95 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14708 | | Inside | 2 3/8" 4.60# Hyper 13CR-110 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14709 | | Inside | 2 3/8" 4.60# Hyper 13CR-110 STL Pup Joint X 10' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12200 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12127 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 04' | | | EA | A | | 5 | | | 0 | |
| Benoit - Houma | Benoit | 12562 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12128 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12129 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 08' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12130 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 10' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 17437 | | Inside | 2 3/8" 4.70# 13CR-95 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16161 | | Inside | 2 3/8" 4.70# 13CR-95 BTS-8 Pup Joint X 08' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12126 | | Inside | 2 3/8" 4.70# L-80 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19940 | | Inside | 2 3/8" 4.70# P-110 BTS-8 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 18481 | | Inside | 2 7/8" 6.50# P-110 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 14959 | | Inside | 2 7/8" 6.16# 13CR-85 Echo-F-4 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13159 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13160 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13161 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13162 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 08' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13163 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 10' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12063 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-4 T&C Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 12088 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-4 T&C Pup Joint X 10' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13150 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-X Pin / Pin Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13151 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13152 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13154 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 08' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13155 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 10' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20273 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 02' | | | EA | A | | 3 | | | 0 | |
| Benoit - Houma | Benoit | 20269 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20264 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 02' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 20265 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 04' | | | EA | A | | 6 | | | 0 | |
| Benoit - Houma | Benoit | 20270 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20274 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20271 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 06' | | | EA | A | | 3 | | | 0 | |
| Benoit - Houma | Benoit | 20275 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 06' | | | EA | A | | 4 | | | 0 | |
| Benoit - Houma | Benoit | 20266 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 06' | | | EA | A | | 4 | | | 0 | |
| Benoit - Houma | Benoit | 20276 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 08' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 20267 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 08' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 20272 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 10' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 20277 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 10' | | | EA | A | | 4 | | | 0 | |
| Benoit - Houma | Benoit | 15022 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17988 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17716 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 02' | | | EA | B | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 17976 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17717 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17686 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 6199 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 7351 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20279 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 20268 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 08' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 19842 | | Inside | 2 7/8" 6.50# L-80 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 19843 | | Inside | 2 7/8" 6.50# L-80 BTS-8 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17265 | | Inside | 2 7/8" 6.50# L-80 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 17821 | | Inside | 2 7/8" 6.50# L-80 BTS-8 Pup Joint X 08' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 6323 | | Inside | 2 7/8" 6.50# L-80 BTS-8 Pup Joint X 10' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 9239 | | Inside | 2 7/8" 6.50# L-80 BTS-8 Pup Joint X 12' | | | EA | B | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 16710 | | Inside | 2 7/8" 6.50# L-80 BTS-8 Pup Joint X 15' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 18482 | | Inside | 2 7/8" 6.50# P-110 BTS-8 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 18483 | | Inside | 2 7/8" 6.50# P-110 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16627 | | Inside | 2 7/8" 7.66# 13CR-110 AB-HDL Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16628 | | Inside | 2 7/8" 7.66# 13CR-110 AB-HDL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13273 | | Inside | 2 7/8" 7.66# 13CR-95 Echo-F-4 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13849 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 Echo-F-4 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16461 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15557 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15558 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 06' | | | EA | A | | 4 | | | 0 | |
| Benoit - Houma | Benoit | 15559 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 08' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 15561 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 10' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15560 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 10' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15164 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 2' 6" | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 15338 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15339 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15340 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 06' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 15341 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15342 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 08' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15343 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 08' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 13872 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 10' | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 15337 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 2' 6" | | | EA | A | | 2 | | | 0 | |
| Benoit - Houma | Benoit | 13396 | | Inside | 2 7/8" 7.70# 13CR-95 Fox-K T&C Pup Joint X 06' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 15404 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace Pin / Pin Pup Joint X 06' | | | EA | U | | 12 | | | 0 | |
| Benoit - Houma | Benoit | 15403 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace T&C Pup Joint X 06' | | | EA | U | | 12 | | | 0 | |
| Benoit - Houma | Benoit | 11343 | | Inside | 2 7/8" 7.90# Hyper 13CR110 BTS-6 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2923 | | Inside | 2 7/8" 9.90# L-80 BTS-6 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 2911 | | Inside | 2 7/8" 9.90# L-80 BTS-6 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16474 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear Pin / Pin Pup Joint X 04' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16475 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear Pin / Pin Pup Joint X 06' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16476 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear T&C Pup Joint X 02' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | |
| Benoit - Houma | Benoit | 16477 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear T&C Pup Joint X 08' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 16479 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear T&C Pup Joint X 10' (Not supplied by Benoit) | | | EA | U | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 15880 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 02' | | | EA | U | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 15881 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 06' | | | EA | U | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 15882 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 08' | | | EA | U | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 15883 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 10' | | | EA | U | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 6195 | | Inside | 3 1/2" 12.95# 13CR-95 BTS-6 Pup Joint X 08' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 16480 | | Inside | 3 1/2" 12.95# 13CR-95 RT5-6 Pin / Pin Pup Joint X 06' (Not supplied by Benoit) | | | EA | U | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 11742 | | Inside | 3 1/2" 12.95# Hyper 13CR-110 BT5-6 Pup Joint X 05' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 12377 | | Inside | 3 1/2" 9.20# 13CR-85 JFE-Bear Pin / Pin Pup Joint X 06' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 15023 | | Inside | 3 1/2" 9.30# 13CR-85 BT5-8 Pup Joint X 10' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 7345 | | Inside | 3 1/2" 9.30# Hyper 13CR-110 BT5-8 Pup Joint X 10' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 11072 | | Inside | 3 1/2" 9.30# Hyper13CR110 BT5-8 Pin / Pin Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20084 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Pin / Pin Pup Joint X 04' | | | EA | A | | 4 | | 0 | | |
| Benoit - Houma | Benoit | 20085 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Pin / Pin Pup Joint X 10' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20093 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20094 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 06' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20095 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 08' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20096 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 10' | | | EA | B | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20092 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 2' 6" | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20062 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion Pin/Pin Pup Joint X 08' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20019 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 02' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20200 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20020 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20021 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 06' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20022 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 08' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20023 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 10' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20199 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 2'6" | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20228 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin /Pin Pup Joint X 02' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20229 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin /Pin Pup Joint X 04' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20230 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin /Pin Pup Joint X 08' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20087 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin / Pin Pup Joint X 06' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20024 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 02' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20202 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 04' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20089 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 04' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20203 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 06' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20090 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 06' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20027 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 08' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20204 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 08' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20091 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 08' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20028 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 10' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 20088 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 2' 6" | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20201 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 2'6" | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 3149 | | Inside | 2 7/8" 7.90# L-80 BT5-6 Box / VH1EG | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 13354 | | Inside | 2 7/8" 6.50# 9CR-80 BT5-8 S/C BCH Combo Nipple (2.188" P.B.) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 12009 | | Inside | 2 3/8" 4.70# 13CR-85 BT5-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 16560 | | Inside | 2 3/8" 4.70# 13CR-85 BT5-8 S/C Pup Joint X 08' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 6741 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Pup Joint X 02' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 19730 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 7347 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Pup Joint X 04' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 15024 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Pup Joint X 06' | | | EA | A | | 3 | | 0 | | |
| Benoit - Houma | Benoit | 15001 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Pup Joint X 14' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 17714 | | Inside | 2 7/8" 6.50# 13CR-95 BT5-8 S/C Pup Joint X 04' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 15556 | | Inside | 2 7/8" 6.50# 13CR-95 BT5-8 S/C Pup Joint X 08' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18683 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BT5-8 S/C Pup Joint X 02' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 18684 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BT5-8 S/C Pup Joint X 04' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 18685 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BT5-8 S/C Pup Joint X 06' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18686 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BT5-8 S/C Pup Joint X 08' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 6441 | | Inside | 2 7/8" 6.50# L-80 BT5-8 S/C Pup Joint X 02' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 7315 | | Inside | 2 7/8" 6.50# L-80 BT5-8 S/C Pup Joint X 04' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 7316 | | Inside | 2 7/8" 6.50# L-80 BT5-8 S/C Pup Joint X 06' | | | EA | A | | 4 | | 0 | | |
| Benoit - Houma | Benoit | 12259 | | Inside | 2 7/8" 6.50# P-110 BT5-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 12260 | | Inside | 2 7/8" 6.50# P-110 BT5-8 S/C Pup Joint X 08' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14674 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 10795 | | Inside | 2 7/8" 7.90# 13CR-95 RT5-6 S/C Pup Joint X 02' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 10800 | | Inside | 2 7/8" 7.90# 13CR-95 RT5-6 S/C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 10756 | | Inside | 3 1/2" 9.30# 13CR-85 BT5-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 13791 | | Outside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Tubing X 31' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 18663 | | Outside | 2 7/8" 6.50# L-80 BT5-8 S/C Production Tubing X 31' | | | EA | B | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 19489 | | Inside | 2 7/8" 6.50# L-80 BT5-8 S/C Production Tubing X 31' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 16632 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Box / Pin Sub X 12" | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 8047 | | Inside | 2 7/8" 6.50# 13CR-85 BT5-8 S/C Box / Pin Tubing Sub X 12" | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 12258 | | Inside | 2 7/8" 6.50# P-110 BT5-8 S/C Box / Pin Sub X 12" | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 16870 | | Inside | 2 7/8" 6.50# P-110 BT5-8 S/C Box / Pin Sub X 12" 2.313" Flo-Thru Selective, Two-way Shifting Tool,  w/perforated Top Sub and full flow btm. Sub | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18255 | | Inside | 3 1/2" 9.30# 13CR-110 BT5-8 Standard Sliding Sleeve (3.950"O.D. X 2.813"P.B.) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 16433 | | Inside | 2 3/8" 4.70# 13CR-95 BT5-8 Selective Sliding Sleeve Assembly X 08' (1.875"P.B. 2.770" O.D. BSSD BT5-8 Selective) w/ 4' P/J on Top | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 19837 | | Inside | Spool of Control Line | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 16120 | | Inside | 2 3/8" 4.70# BT5-8 PvC Drift X 01' (1.901" O.D.) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 8765 | | Inside | 2 3/8" 4.70# BT5-8 PvC Drift X 01' (1.901" O.D.) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 10720 | | Inside | 3 1/2" 12.95# BT5-6 Teflon Drift (2.625" O.D.) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 8697 | | Inside | 3 1/2" 9.30# BT5-8 PvC Drift (2.867" O.D.) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 8650 | | Inside | 3 1/2" 9.30# BT5-8 PvC Drift X 01' (2.867" O.D.) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20280 | | Inside | 5 1/2" P-110 JFE Lion Test Cap w/ 9/16" HP Autoclave (Soft Seal O-Ring ) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20281 | | Inside | 5 1/2" 23# P-110 JFE Lion Test Plug w/ 9/16" HP Autoclave (Soft Seal O-Ring ) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9314 | | Outside | 2 3/8" 4.60# 13CR-85 STL Tubing 31' | | | EA | U | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 15397 | | Outside | 2 3/8" 4.60# 13CR-95 STL Production Tubing X 31' | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 15131 | | Outside | 2 3/8" 4.70# 13CR-95 BT5-8 Production Tubing X 31' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20278 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Production Tubing X 30' | | | EA | A | | 16 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 20263 | | Outside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Tubing X 30' | | | EA | A | | 10 | | | 0 | | |
| Benoit - Houma | Benoit | 18894 | | Outside | 2 7/8" 6.50# 13CR-85 BTS-8 Production Tubing X 31' | | | EA | B | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 13112 | | Outside | 2 7/8" 6.50# 13CR-95 BTS-8 Production Tubing X 31' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15555 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 HDL Production Tubing X 31' | | | EA | A | | 8 | | | 0 | | |
| Benoit - Houma | Benoit | 16462 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 HDL Tubing X 31' | | | EA | B | | 5 | | | 0 | | |
| Benoit - Houma | Benoit | 15399 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 STL Production Tubing X 31' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13571 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 STL Production Tubing X 31' | | | EA | U | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20512 | | Outside | 3 1/2" 9.30# 13CR-110 BTS-8 Tubing X 31' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16478 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear Couplings (Not supplied by Benoit) | | | EA | U | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 15884 | | Inside | 3 1/2" 10.20# G3-125 Vam Top Coupling | | | EA | U | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 20083 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Coupling | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 20061 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Tubing Coupling | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20082 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 2 JFE Lion Coupling | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19993 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion Coupling | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20063 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Tubing Coupling | | | EA | A | | 5 | | | 0 | | |
| Benoit - Houma | Benoit | 20086 | | Inside | 5 1/2" 23 # 13CR-95 JFE Lion Coupling | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 11155 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Box / Pin Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15984 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Box / Pin Tubing Sub X 06" | | | EA | A | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 15986 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Box / Pin Tubing Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11316 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Box / Pin Tubing Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14688 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Box / Pin Sub X 06" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12125 | | Inside | 2 3/8" 4.70#-L-80 BTS-8 Box / Pin Sub X 12" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 9172 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Box / Pin Sub X 06" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 8514 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Pin / Pin Tubing Sub X 12" | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 10707 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Box / Pin Sub X 06" | | | EA | A | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 10116 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Box / Pin Sub X 12" | | | EA | A | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 12255 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Box / Pin Tubing Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16162 | | Inside | 2 7/8" 7.90# 13CR-95 BTS-6 Box / WLEG | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11365 | | Inside | 2 3/8" 4.70# Hyper 13CR110 BTS-8 Pin / 2 7/8" 6.50# 13CR85 BTS-8 Box Crossover Assembly X 13' (6' P/J Top & Bottom) | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20030 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Box / 4 1/2" 15.20# JFE Lion Pin X-Over Assembly X 12' (10' Pup On Btm.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13191 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K Cplg. Box / 2 7/8" 6.50# BTS-8 Pin Upper X-Over Combo-Joint X12' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15259 | | Inside | 3 1/2" 12.70# Hyper 13CR-110 Vam Top Box / 3 1/2" 12.95# BTS-6 Pin Lower X-Over BCSD Flo-Tool X 14' (8' prof BTS-6 PIN)damage Box and tong marks | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15258 | | Inside | 3 1/2" 12.95# Hyper 13CR-110 BTS-6 Box / 3 1/2" 12.70# Vam Top Box Upper X-Over BCSD Flo-Tool X 14' (8' prof BTS-6 Box) | | | EA | B | | 1 | | | 0 | | |
| Core - Mobile | Core Labs | 0440486 | | Core Base Yard (Mobile, AL) | STFL w/ multiquick connect removable stab plate M1 14 position 10 way 5x.05 female nvp couplers, 5x.5 female PNVC couplers | | | EA | | | 1 | | | 0 | | |
| Core - Mobile | Core Labs | #R1301 | | Core Base Yard (Mobile, AL) | 35' Reel Dynamic Flexible flowline - 5,600 ft. | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-40184S-02 | 00139733-11 | ELD Rack: A83 | 18-1/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE | VIETNAM | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-40557S-03 | 00222625-01 | ELD Rack: NYD CC-6 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 22" O.D. X 1.250" WALL B.W.P. UP AND DOWN. PROFILE MIN. I.D.18.375". 22.030" MAX O.D. STD. SERVICE. XXXX * 22" X 16" SUPPLEMENTAL ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" X 1.000" X-80, 60 FT JOINT WITH 5-90M/MT BOX X PIN CONNECTORS FROM FRANKS CASING * 22" X 16" SUPPLEMENTAL ADAPTER: P/N 2-40557S-03, CP10946-20, ITEM 27 | MC 698 #1 | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-40463S-03 | 00242025-01 | ELD Rack: NYD YR #4 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: 16" 97 LB/FT, HYDRIL 511 PIN DOWN PREP. FOR WEIGHT SET SEAL ASSEMBLY. 6,500 PSI RATED. MIN. I.D. 14.549". MAT'L CLASS: AA, PSL-3. XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 96 LB/FT Q-125 HYDRIL 511 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP11153-01, P/N 2-40463S-03, ITEM 18 | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-41187S-08 | 00253012-01 | ELD Rack: A85 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, WITH EXTERNAL LOCK RING, H2S SERVICE, NOBLE QS04.01 | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-40557S-03 | 00243387-01 | ELD Rack: NYD CC-6 | 22" X 16" SUPPLEMENTAL CASING HANGER ADAPTER: 22" O.D. X 1.250" WALL B.W.P. UP AND DOWN. PROFILE MIN. I.D.18.375". 22.030" MAX O.D. STD. SERVICE. XXXX * 22" X 16" SUPPLEMENTAL ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" O.D. X 1.250" WALL, API 5L GRADE X-80, DSAW, 41 FT LONG, WITH H-90M/MT BOX X PIN * 22" X 16" SUPPLEMENTAL ADAPTER: P/N 2-40557S-03, CP11364-10, ITEM 55 | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-40313A-02 | 00242026-01 | ELD Rack: A85 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-40463S-03 | 00190946-01 | ELD Rack: F219 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: 16" 97 LB/FT, HYDRIL 511 PIN DOWN PREP. FOR WEIGHT SET SEAL ASSEMBLY, 6,500 PSI RATED. MIN. I.D. 14.549". MAT'L CLASS: AA, PSL-3. | KIT# 5 | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-305269-02 | 00200701-01 | HEMP Rack: LINER R36C | SHIPPING CENTRALIZER, 13-5/8" CASING AND 6-5/8" DRILL PIPE | GI 116,A-7 | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-30531S-02 | 00201338-01 | HEMP Rack: LINER R36E | 13-5/8" X 16" LS-15 TIEBACK SEAL NIPPLE MAJOR REDRESS KIT, INCLUDES V-PACKING, SPACER RINGS AND SNAP RINGS | GI 116,A-7 | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-30468T-05 | 00203557-01 | HEMP Rack: LINER LH FLOOR | "O85" 13-5/8" LS-15 LANDING COLLAR: WITH 4.21" SEAL DIAMETER, 13-5/8" 88.2 LB./FT. GB CDE (GB TUBULARS CASING DRILLING ENHANCED) BOX X PIN, WITH CEMENTED REDUCED ALUMINUM INSERT, 125K YIELD MATERIAL BODY | GI 116,A-7 | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-403663-02 | 00262483-01 | ELD Rack: F227 | 18-3/4" X 14-1/2" WEAR SLEEVE, BIG BORE SYSTEM, "J" TYPE | | GC 200 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-403663-02 | 00262484-01 | ELD Rack: F197 | 18-3/4" X 14-1/2" WEAR SLEEVE, BIG BORE SYSTEM, "J" TYPE | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-403665-02 | 00262485-01 | ELD Rack: F190 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-403665-02 | 00262486-01 | ELD Rack: F202 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-403666-02 | 00262487-01 | ELD Rack: F202 | 18-3/4" STABILIZER SUB FOR BIG BORE WEAR SLEEVES. 7-5/8" API REG. BOX UP X PIN DOWN. | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-403666-02 | 00262488-01 | ELD Rack: F208 | 18-3/4" STABILIZER SUB FOR BIG BORE WEAR SLEEVES. 7-5/8" API REG. BOX UP X PIN DOWN. | | GC 200 | EA | | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-405222-02 | 00262489-01 | ELD Rack: SVC F09G | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA. | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-02 | 00262490-01 | ELD Rack: D06G | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA. | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403961-02 | 00262491-01 | ELD Rack: F222 | 18-3/4" X 13-3/8" ADAPTER SLEEVE:  TYPE SS-15, RUN WITH 6-5/8" TOOL JOINT BIT SUB AND 13-3/8" WEAR BUSHING, "J" LUG STYLE, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403961-02 | 00262492-01 | ELD Rack: F221 | 18-3/4" X 13-3/8" ADAPTER SLEEVE:  TYPE SS-15, RUN WITH 6-5/8" TOOL JOINT BIT SUB AND 13-3/8" WEAR BUSHING, "J" LUG STYLE, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403697-05 | 00258501-01 | ELD Rack: NYD A-12 | 22" X 18" BIG BORE II POSITIVE STOP CASING HANGER: MIN. I.D. 16.553", 18" 94 LB./FT. HYDRIL S21 PIN THREAD DOWN, PREP. FOR WEIGHT SET RESILIENT SEAL ASSEMBLY, 5,000 PSI RATED, PSL-3, STANDARD SERVICE.. XXXX * 18" CASING HANGER: CP11970-09, P/N 2-403697-05, ITEMS 144 * PIPE: CUSTOMER SUPPLIED 17-7/8" 93.5 LB/FT P110 HYDRIL S21 BOX X PIN, 20 FT. LONG | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403134-02 | 00109398-15 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED,  H2S SERVICE | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403134-02 | 00109398-16 | ELD Rack: A85 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED,  H2S SERVICE | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403357-14 | 00240267-01 | ELD Rack: NYD A-12 | 18.75" X 13.62" CASING HANGER, TYPE SS-15, 13-5/8" VAM TOP (88.2 LB/FT) BOX DOWN, API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, 12.375 MIN. I.D., FOR USE WITH BIG BORE II WELLHEAD ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: NOBLE CUSTOMER SUPPLIED 13-5/8" 88.2 LB/FT VAM TOP PIN X 14" 114# HYD BLUE PIN APPROX. 10 FT. * 14" CASING HANGER: P/N 2-403357-14, CP11970-16 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411137-02 | 00258492-01 | ELD Rack: NYD CC-6 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 XXXX * 28" CASING HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 28" O.D. X .750" WALL, X-56, 40 FT. LONG, WITH PLAIN END X S 600/MT PIN * 28" CASING HANGER: P/N 2-411137-02, CP12179-04, ITEM 13 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-305854-02 | 00231477-02 | HEMP Rack: LINER CANT 2C | 11-7/8" LS-15 QUIK-DRIL LANDING COLLAR, CEMENT FILLED WITH MODIFIED ID PROFILE AND  REDUCED ALUMINUM INSERT TO ACCEPT LINER WIPER PLUG WITH 4.21" SEAL DIAMETER, 11-7/8" T1.8 LB./FT. HYDRIL 523 BOX X PIN, HCQ-125, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304130-21 | 00232484-01 | HEMP Rack: LINER FLOOR | LS-15 PUMP DOWN PLUG: 2.34" DIAMETER SEAL NOSE WITH 5.5" X 4.5" X 5.5" DIAMETER WIPERS, 17.06" LONG. FOR LARGE RUNNING TOOL, COMPATIBLE WITH REDUCED ALUMINUM 9-7/8" THRU 13-5/8" LINER WIPER PLUGS (2-304685O, 2-304795 AND 2-304797) AND 9-7/8" DUAL LINER WIPER PLUG (2-304229), NOTE ONE SPACER EACH IS PLACED BETWEEN WIPERS | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 917363-24 | N/A | HEMP Rack: LINER K4C | 2.75" DIAMETER CHROME BALL | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304228-07 | 00234525-01 | HEMP Rack: LINER R36O | 9-7/8" LS-15 LANDING COLLAR: FOR 9-5/8", 9-3/4", OR 9-7/8" DUAL LINER WIPER PLUG, LOWER SEAL BORE I.D. 4.210", UPPER SEAL BORE I.D. 6.790", BODY I.D. 8.525", 9-7/8" 62 LB./FT. HYDRIL 513 BOX X PIN, Q-125, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304229-03 | 00233379-01 | HEMP Rack: LINER PUMP CAGE | 9-5/8"-7/8" LS-15 DUAL LINER WIPER PLUG: FOR 9-5/8" 36-61 LB./FT., 9-3/4" 59.2 LB./FT., OR 9-7/8" 62.8-63.1 CASING, WITH SECONDARY RELEASE MECHANISM FOR LEAD AND FOLLOW PLUGS. USE WITH 2.130" O.D. LEAD AND 2.340" O.D. FOLLOW PUMP DOWN PULL SEAL SUBS. | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304228-07 | 00234530-01 | HEMP Rack: FLOOR | 9-7/8" LS-15 LANDING COLLAR: FOR 9-5/8", 9-3/4", OR 9-7/8" DUAL LINER WIPER PLUG, LOWER SEAL BORE I.D. 4.210", UPPER SEAL BORE I.D. 6.790", BODY I.D. 8.525", 9-7/8" 62 LB./FT. HYDRIL 513 BOX X PIN, Q-125, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404635-10 | 00253010-01 | ELD Rack: NYD YR #3 | 22" X 16" CASING STOP CASING HANGER, TYPE SS-10/15, 16" HYDRIL 513 (109 LB/FT) PIN DOWN, V, AA, PSL-3, MIN. I.D., 14.549", FOR USE WITH BIG BORE II WELLHEAD SYSTEM, FOR WEIGHT SET SEAL ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 109 LB/FT, P-110 IC, HYDRIL 513 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP12439-02, P/N 2-404635-10, ITEMS 77 | | MC 479 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404635-01 | 00238983-01 | ELD Rack: F185 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: TYPE SS-10/15, 16" BLANK PIN DOWN.  PREP. FOR WEIGHT SET SEAL ASSEMBLY. 6,500 PSI RATED. MIN. I.D. 14.549", TEMP V, MAT'L AA, PSL-3 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-305736-02 | 00235699-01 | HEMP Rack: LINER | REDRESS KIT, FOR 7" X 9-7/8" TIEBACK SEAL NIPPLE (P/N 2-305735-02), MODEL LS15, WITH  8.00 OD HNBR V-PKNG.  INCLUDES SPACER RINGS AND RETAINER RINGS. | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401845-02 | 00258512-01 | ELD Rack: A84 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-402060-02 | 00239704-01 | ELD Rack: A81 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-402060-02 | 00236967-03 | ELD Rack: A81 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413140-02 | 00240513-01 | ELD Rack: F188 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER, 16" 97 LB/FT, HYDRIL 511 PIN DOWN PREP.  FOR WEIGHT SET SEAL ASSEMBLY. 6,500 PSI RATED. MIN. I.D. 14.549". MAT'L CLASS: AA, PSL-3.  NOBLE QUALITY PLAN QS04.01 | | GOM STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408785-03 | 00236564-01 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 917363-24 | N/A | HEMP Rack: LINER K4C | 2.75" DIAMETER CHROME BALL | | MP 295 #1 | EA | | | 1 | | | 0 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-404191-12 | 00260141-01 | ELD Rack: NYD CC-6 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 18" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.000" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III WITH 590M/MT BOX X PIN * 22" SUPPLEMENTAL ADAPTER: P/N 2-404191-12, CP12555-60, FROM ITEM 27 * TRANSITION SWEDGE: P/N 2-404391-07, CP12555-63, FROM ITEM 28 | | GC 40-2 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-406862-03 | 00258494-01 | ELD Rack: NYD CC-6 | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL.  WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.25" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W, WITH H-90DM/MT PIN BY PLAIN END BEVEL * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-03, CP12564-01, ITEM 51 | | MC 339 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-405573-04 | 00225597-01 | ELD Rack: L88 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER 22" O.D. X 1.250" WALL B.W.P. UP AND DOWN. PROFILE MIN. I.D.18.375". 22.030" MAX O.D. STD. SERVICE. NOBLE QUALITY PLAN QS04.01 | | GOM STOCK | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-304331-12 | 00242625-01 | HEMP Rack: LINER FLOOR | LS-15 PUMP DOWN PLUG: 2.130" DIAMETER, FOR 5.50" DIA. X 4.50" DIA. X 5.50" DIA. X 17.50" LONG, FOR LARGE RUNNING TOOL, COMPATIBLE WITH LEAD LINER WIPER PLUG FOR 9-7/8" DUAL LINER WIPER PLUG SYSTEM | | MP 295 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-305735-02 | 00240258-01 | HEMP Rack: LINER CANT 2C | 7" X 9-7/8"  TIEBACK-SEAL-NIPPLE, MODEL LS15, FOR 15 FT. LONG SEAL BORE. 7.00" 42.7LBS./FT. VAM SLIJ-II BOX UP WITH 8.25" OD LOCATOR COLLAR X HALF MULE SHOE DOWN. SEALS INSIDE 8.000" I.D. PBR, 4 SETS HNBR V-PKG, 5.730 MIN. ID, Q-125 SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-415025-03 | 00253615-01 | ELD Rack: NYD CC-6 | 22" X 16" ADAPTER HOUSING, 22" X 1.250" WALL BUTTWELD PREP DOWN X 22" X 1.250" WALL BUTTWELD PREP UP, V, AA, PSL-3, WITH 18.375" MIN. I.D. FO 16" "NO-GO" STYLE SUPPLEMENTAL HANGER (WEIGHT SET), MONOGRAM PER API 17D, BIG BORE II, WITH O.D. LOCK RING PROFILE, NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 16" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W, RANGE III, WITH H-90M/MT BOX * 22" SUPPLEMENTAL ADAPTER: P/N 2-415025-03, CP12575-03, ITEM 73 | | MC 479 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-901022-04 | N/A | | GASKET, "VX-2" W/HYCAR SEAL RING, 18-3/4"-10,000 PSI WP, 316 SS, VETCO P/N 111227-1 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-901022-04 | N/A | ELD Rack: F216 | GASKET, "VX-2" W/HYCAR SEAL RING, 18-3/4"-10,000 PSI WP, 316 SS, VETCO P/N 111227-1 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-304441-03 | 00163826-01 | HEMP Rack: LINER PUMP CAGE | LS-15 LINER WIPER PLUG:  11-3/4" 54-83 LB./FT, 11-7/8" 71.8 LB./FT WITH EMERGENCY RELEASE SET AT 4,000 PSI, HSN MATERIAL. | | MP 295 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 917363-24 | N/A | HEMP Rack: LINER K4C | 2.75" DIAMETER CHROME BALL | | MP 295 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-304330-21 | 00243184-01 | HEMP Rack: LINER K1C | LS-15 PUMP DOWN PLUG: 2.34" DIAMETER SEAL NOSE WITH 5.5" X 4.5" X 5.5" DIAMETER WIPERS, 17.06" LONG. FOR LARGE RUNNING TOOL, COMPATIBLE WITH REDUCED ALUMINUM 9-7/8" THRU 13-5/8" LINER WIPER PLUGS (2-3046850, 2-304795 AND 2-304797) AND 9-7/8" DUAL LINER WIPER PLUG (2-304229), NOTE ONE SPACER EACH IS PLACED BETWEEN WIPERS | | MP 295 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00262496-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | GC 200 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-304998-04 | 00243829-01 | HEMP Rack: LINER CANT 2C | LINER HANGER PACKER, 11-7/8" 71.8# X 13-3/8" 68#-72# OR 13-5/8" 88.2# OR 14" 115#, MODEL LS15, 11-7/8" 71.8# HYDRIL S23 BOX DOWN, W/15 FT. TBR, Q-125 SERVICE HIGH PRESSURE, BODY IS 135 KSI AND CONE IS 150 KSI YIELD, MAXIMUM CASING I.D. TO SET HANGER 12.570" | | MP 295 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00258483-01 | ELD Rack: RISER N-13 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P.  I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL.  MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D.  PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, QTY 1, 36" O.D. X 2.000" WALL API 5L GRADE X-70M, D.S.A.W., 60 FT LONG, WITH HC-100D/MT PIN X PLAIN END * 36" WELLHEAD HOUSING: CP12635-01, P/N 2-404172-09, ITEM 80 * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP12682-04, P/N 2-413195-02, ITEM 81 * 50 TON LIFT EYES: QTY. 2, CP 13122-01, P/N 2-304782-02, ITEM 82 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 1: CP12723-03, P/N 2-413828-02, ITEM 83 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 2, CP12433-01 & CP12433-02, P/N 2-401350-02, ITEMS 85 & 86 * WELD ON FLANGE FOR SLOPE MOUNTING BRACKET: QTY. 2, CP12433-11, P/N 2-411654-02 , ITEM 84 | | MC 339 #1 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-402060-02 | 00245291-09 | ELD Rack: A79 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-402060-02 | 00245291-10 | ELD Rack: A80 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | GC 200 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-305593-03 | 00244075-01 | HEMP Rack: LINER CANT 2C | 9.63" X 11.75" LS-15 LINER HANGER PACKER WITH LS-15 SEAL, C-RING SLIP, 15 FT. 135,000 YIELD TIE-BACK RECEPTACLE, AND WITH HOLD DOWN SLIP. COMPATIBLE WITH 9-5/8" 53.5 LB/FT OR 9-7/8" 62.8 LB/FT X 11-3/4" 60-65 LB/FT OR 11-7/8" 71.8 LB/FT, MIN. I.D. 8.553". 9-7/8" 62.8 LB/FT HYDRIL S23 BOX DOWN, Q-125, STANDARD SERVICE. XXXX * 9-7/8" X 11-7/8" LINER HANGER MAKE-UP CONSISTS OF: * 9-7/8" X 11-7/8" LINER HANGER: ITEM 1 | | MP 295 #1 | EA | | | 1 | | | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-305220-07 | 00235308-01 | HEMP Rack: LINER | 7" LS-15 LANDING COLLAR: FOR 7"  DUAL PLUG, LOWER SEAL BORE I.D. 3.010", UPPER SEAL BORE I.D. 5.210" MIN., WITH 7" 42.7 LB./FT. VAM SLIJ-II BOX X PIN, Q-125 SERVICE, | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00253008-01 | ELD Rack: A87 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00260138-01 | ELD Rack: RISER S-14 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 XXXX * 36" X 28" POSITIVE STOP CASING HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, RANGE 3, WITH PLAIN END X 6-60D/MT PIN * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-56, RANGE 3, PEB X PEB * 28" CASING HANGER: P/N 2-413137-02, CP12684-02, ITEM 21 | | GC 40-2 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00246228-04 | ELD Rack: RISER N-13 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 XXXX * 36" X 28" POSITIVE STOP CASING HANGER FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, RANGE III, PEB X PEB * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, RANGE III, PEB X S-60D/MT PIN * 28" CASING HANGER: P/N 2-413137-02, CP12684-04, ITEMS 16. | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-306141-02 | 00243399-01 | HEMP Rack: LINER PUMP CAGE | 11-3/4" LS-15 LANDING COLLAR, REDUCED ALUMINIUM INSERT TO ACCEPT LINER WIPER PLUG WITH 4.21" SEAL DIAMETER, 11-3/4" 65# VAM SLIJ-II BOX X PIN, P-110, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-901022-02 | N/A | ELD Rack: F189 | 18-1/4" VX-2/VT-2 RING GASKET:  15,000 PSI W.P., STAINLESS STEEL | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-901022-02 | N/A | ELD Rack: F189 | 18-1/4" VX-2/VT-2 RING GASKET:  15,000 PSI W.P., STAINLESS STEEL | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-901022-02 | N/A | ELD Rack: F189 | 18-1/4" VX-2/VT-2 RING GASKET:  15,000 PSI W.P., STAINLESS STEEL | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00258485-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN QS04.01 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00258486-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN QS04.01 PART OF CP12723-11 MUDSTICK P/N 2-408899-02, S/N 00238931-10 IN LOC=00SG. | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00248243-01 | ELD Rack: NYD CC-6 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 18" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.000" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III WITH 590M/MT BOX X PIN * 22" SUPPLEMENTAL ADAPTER: P/N 2-404191-12, CP12739-01, ITEM 21 * TRANSITION SWEDGE: P/N 2-404391-07, CP12627-03, ITEM 22. | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00246503-02 | ELD Rack: A0SG | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUIALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00249299-02 | ELD Rack: RISER N-21 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 18" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.000" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III WITH 590M/MT BOX X PIN, * 22" SUPPLEMENTAL ADAPTER: P/N 2-404191-12, CP12793-02, ITEM 24, * TRANSITION SWEDGE: P/N 2-404391-07, CP12756-01, ITEM 25. | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-410497-04 | 00253014-01 | ELD Rack: NYD A-12 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL 523 (115 LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 XXXX * 18-3/4" X 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14" O.D.,113#, TN-110SS, HYDRIL 523 PIN X PIN, 20 FT. LONG * 18-3/4" X 14" CASING HANGER: P/N 2-410497-04, CP12795-02, ITEMS 142 | | MC 479 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00249305-01 | ELD Rack: F201 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00249305-02 | ELD Rack: F201 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00248266-01 | ELD Rack: F210 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00246754-01 | ELD Rack: F210 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00260525-01 | ELD Rack: NYD CC-6 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 16" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W, RANGE III, WITH H-90DM/MT PIN BY H-90M/MT BOX * 22" SUPPLEMENTAL ADAPTER: P/N 2-413198-02, CP12828-04, FROM ITEM 97 | | GC 40-2 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00270978-02 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00260131-01 | ELD Rack: RISER N-18 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL.  MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D.  PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, QTY 1, 36" O.D. X 2.000" WALL API 5L GRADE X-70M, D.S.A.W., RANGE III, WITH HC-100D/MT PIN X PLAIN END * PIPE: CUSTOMER SUPPLIED, QTY 1, 36" O.D. X 2.000" WALL API 5L GRADE X-70M, D.S.A.W., RANGE III, PEB X PEB * 36" WELLHEAD HOUSING: CP12861-02, P/N 2-404172-09, ITEM 10 * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP12683-01, P/N 2-413195-02, ITEM 11 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 1: CP13218-02, P/N 2-413828-02, ITEM 12 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 1: CP13326-02, P/N 2-411654-02 , ITEM 13 * ADAPTER SUB: QTY. 1, CP13147-02, P/N 2-408274-03 | | GC 40-2 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-04 | 00258509-01 | ELD Rack: NYD YR #5 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL 523 (115 LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 XXXX * 18-3/4" X 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14" O.D., 113# TN125HC, HYDRIL 523 PIN X PIN, 20 FT LONG * 14" CASING HANGER:, P/N 2-410497-04, CP12918-02, ITEM 71 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00272883-01 | ELD Rack: RISER N-10 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 XXXX * 36" X 28" POSITIVE STOP CASING HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, APPROX. 40 FT. LONG, PEB X PEB, * 28" CASING HANGER: P/N 2-413137-02, CP12941-01, ITEMS 15. | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-22 | 00258505-01 | ELD Rack: NYD YR #5 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER, 0-10,000 PSI, TYPE SS-10/15, (94.50 - 97 LB./FT.), HYDRIL 511 PIN DOWN, V, AA, PSL-3, WITH 14.590" MIN. I.D., FOR USE WITH WEIGHT SET SEAL ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 96 LB/FT, Q-125, HYDRIL 511 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP12959-01, P/N 2-407284-22 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00257373-01 | ELD Rack: A81 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00273221-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00273221-02 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Driliquip - Houston | Driliquip | 917254-29 | N/A | ELD Rack: A0SG | 17 TON SHACKLE ANCHOR BOLT TYPE, 1-1/2" NOM. FED SPEC RR-C-271D, TYPE IVA, GRADE A, CLASS 3, SPECIAL, CROSBY P/N 1019631 G-2130 TO MEET GOM CERTIFIED SLING & RIGGING PROCEDURE QTY. (32) LEFT TO USE. | | | EA | | | 32 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408455-05 | 00274092-02 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 917146-181 | N/A | ELD Rack: F185 | HEX HEAD BOLTS, 3/4" - 10 UNRC X 2-1/2" LONG NEW. QTY (24) LEFT TO USE. | | | EA | | | 40 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-401350-02 | 00273205-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-401350-02 | 00273205-06 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-401350-02 | 00273205-08 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413138-06 | 00262335-05 | ELD Rack: NYD YR #2 | 22" X 18" BIG BORE II POSITIVE STOP CASING HANGER: MIN. I.D. 16.600". 18", 117#, VAM HDL PIN DOWN. PREP. FOR WEIGHT SET RESILIENT SEAL ASSEMBLY. 5,000 PSI RATED. PSL-3, STD. SERVICE. XXXX * 18" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 18", 117 LB/FT, Q125-HP, VAM HDL BOX X PIN, 20 FT. LONG, * 22" X 18" CASING HANGER:, P/N 2-413138-06, CP13056-02 , ITEMS 27. | | MC 519 #3 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413138-06 | 00275293-03 | ELD Rack: NYD YR #3 | 22" X 18" BIG BORE II POSITIVE STOP CASING HANGER: MIN. I.D. 16.600". 18", 117#, VAM HDL PIN DOWN. PREP. FOR WEIGHT SET RESILIENT SEAL ASSEMBLY. 5,000 PSI RATED. PSL-3, STD. SERVICE. XXXX * 18" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 18", 117 LB/FT, Q125-HP, VAM HDL BOX X PIN, 20 FT. LONG, * 22" X 18" CASING HANGER:, P/N 2-413138-06, CP13056-03, ITEMS. | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-406862-07 | 00260987-01 | ELD Rack: SVC F06G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API SL GRADE X-80, D.S.A.W, RANGE III WITH H-90DM/MT PIN BY PLAIN END BEVEL * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API SL GRADE X-80, D.S.A.W, RANGE III, PEB X PEB * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-07, CP13113-02, ITEM 25 | | GC 40-2 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-304782-02 | IN CP FILE | ELD Rack: J2 | LIFTING EYE, (50 TON), STANDARD DUTY, FOR 17 TON SHACKLE QTY. (36) LEFT TO USE. | | | EA | | | 36 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408274-03 | 00248854-02 | ELD Rack: L52 | SUPPLEMENTAL ADAPTER, TYPE SS-15, 36" X 2.000" WALL BUTTWELD PREP. DOWN X 36" X 2.000" WALL BUTTWELD PREP. UP, FOR MOUNTING SLOPE INDICATOR BRACKETS AND ANODES | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408274-03 | 00247448-04 | ELD Rack: L51 | SUPPLEMENTAL ADAPTER, TYPE SS-15, 36" X 2.000" WALL BUTTWELD PREP. DOWN X 36" X 2.000" WALL BUTTWELD PREP. UP, FOR MOUNTING SLOPE INDICATOR BRACKETS AND ANODES | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408274-03 | 00247448-05 | ELD Rack: L51 | SUPPLEMENTAL ADAPTER, TYPE SS-15, 36" X 2.000" WALL BUTTWELD PREP. DOWN X 36" X 2.000" WALL BUTTWELD PREP. UP, FOR MOUNTING SLOPE INDICATOR BRACKETS AND ANODES | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408455-05 | 000276738-01 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408455-05 | 000276738-01 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413828-02 | 00260133-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN QS04.01 | | GC 40-2 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-410497-04 | 00260537-01 | ELD Rack: NYD A-12 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL S23 (115 LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 XXXX * 18-3/4" X 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14" O.D., 116# Q125ICY, HYDRIL S23 PIN X PIN, 20 FT. LONG * 18-3/4" X 14" CASING HANGER:, P/N 2-410497-04, CP13237-01, ITEMS 117 | | GC 40-2 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00258507-01 | ELD Rack: A85 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | MC 339 #1 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-407284-18 | 00281043-02 | ELD Rack: F209 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-407284-18 | 00281043-03 | ELD Rack: F209 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | BBI WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411654-02 | 00260134-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN QS04.01 PART OF CP13326-02 INCLUDES A MUDSTICK P/N 2-408899-02,S/N 00249215-03 RETURNED UNUSED ON 4/10/19 IN LOC=DD1G. | | GC 40-2 | EA | | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Driliquip - Houston | Driliquip | 2-413198-02 | 00271250-01 | ELD Rack: B13G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D. 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-407284-22 | 00260532-01 | ELD Rack: NYD YR #5 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER, 0-10,000 PSI, TYPE SS-10/15, (94.50 - 97 LB./FT.), HYDRIL S11 PIN DOWN, V, AA, PSL-3, WITH 14.590" MIN. I.D., FOR USE WITH WEIGHT SET SEAL ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 96 LB/FT, Q125, HYDRIL S11 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP13360-02, P/N 2-407284-22, ITEMS 115 | | GC 40-2 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-410497-04 | 00284131-01 | ELD Rack: F199 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL S23 (115 LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-415620-02 | 00257058-01 | ELD Rack: F193 | 18-3/4" X 9-5/8" WEAR BUSHING, TYPE SS-15, 9.555" MIN. I.D., NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-415620-02 | 00257059-01 | ELD Rack: F193 | 18-3/4" X 9-5/8" WEAR BUSHING, TYPE SS-15, 9.555" MIN. I.D., NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413138-03 | 00288143-01 | ELD Rack: F215 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413138-03 | 00288143-02 | ELD Rack: F215 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413742-04 | 00257370-01 | ELD Rack: NYD YR #2 | 18-3/4" X 10-3/4" BIG BORE II HANGER, TYPE SS-15, FOR H2S, WITH 10-3/4" TENARIS HYDRIL WEDGE 563 (73.20 #/FT) BOX DOWN, WITH 9.927" MIN. I.D., WITH INCONEL 625 OVERLAY IN TUBING HANGER, SEAL AREA ASSEMBLY, WITH HIGH TEMP/HIGH LOAD GROOVES, NOBLE QUALITY PLAN QS04.01 XXXX * 18-3/4" X 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 10-3/4" O.D., 74.0#, HCQ-125 TN-125, HYDRIL 563 PIN X HYD 563 DOPELESS PIN, 20 FT. LONG, * 18-3/4" X 10-3/4" CASING HANGER:, P/N 2-413742-04, CP13807-02 , ITEMS 37. | | MC 519 #3 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413742-03 | 00288009-02 | ELD Rack: NYD YR #5 | 18-3/4" X 10-3/4" CASING HANGER, TYPE SS-15, FOR H2S, WITH 10-3/4" TENARIS HYDRIL WEDGE 563 (79.20 #/FT) BOX DOWN, WITH 9.927" MIN. I.D., WITH INCONEL 625 OVERLAY IN TUBING HANGER, SEAL AREA ASSEMBLY, WITH HIGH TEMP/HIGH LOAD GROOVES, NOBLE QUALITY PLAN QS04.01 XXXX * 18-3/4" X 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 10-3/4" O.D., 79.22#, C-110, HYDRIL 563 PIN X HYD 563 DOPELESS PIN, 20 FT. LONG, * 18-3/4" X 10-3/4" CASING HANGER:, P/N 2-413742-03, CP13880-02 & ITEMS 37 | | MC 948 #4 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00260535-01 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE, NOBLE QUALITY PLAN QS04.01 | | GC 40-2 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-414283-02 | 00258681-01 | ELD Rack: F219 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V, DD, PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN QS04.01 | | GC 200 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-401350-02 | 00276743-02 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-401350-02 | 00283739-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408595-15 | 00298288-02 | ELD Rack: NYD YR #2 | 18-3/4" X 10-3/4" CASING HANGER, 10.75" 85.30# JFELION DR ASM BOX DOWN, 18.615" MAX OD X 9.160" MIN. ID, V, DD, PSL-3, F/H2S, RATED F/HIGH TEMP./HIGH LOAD XXXX * 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 10-3/4", 85.30 LB/FT, Q125-ICY, JFELION DR ASM PIN X MAC II PIN, 20 FT. LONG * 10-3/4" CASING HANGER:, P/N 2-408595-15, CP14218-02 ITEMS 2. | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404172-09 | 00290613-02 | ELD Rack: RISER S-14 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P.  I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PE8 X PE8, APPROX. 40 FT. LONG * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PE8 X HC-1000/MT PIN, APPROX. 40 FT. LONG * 36" WELLHEAD HOUSING: CP14274-02, P/N 2-404172-09, ITEM 1, * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP14394-01, P/N 2-413195-02, ITEM 2, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-06, P/N 2-413828-02, ITEM 3, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-51, P/N 2-411654-02 , ITEM 4, * WELD ON FLANGE FOR SLOPE MOUNTING BRACKET: QTY. 2, CP12634-05 & CP12634-06, P/N 2-401350-02, ITEMS 5 & 6. | | MC 519 #3 | EA | | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-404172-09 | 00290613-03 | ELD Rack: RISER N-5 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PEB X PEB, APPROX. 40 FT. LONG, * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PEB X HC-1000/MT PIN, APPROX. 40 FT. LONG, * 36" WELLHEAD HOUSING: CP14274-03, P/N 2-404172-09, ITEM 8, * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP14394-02, P/N 2-413195-02, ITEM 10, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-07, P/N 2-413828-02, ITEM 10, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-52, P/N 2-411654-02 , ITEM 11, * WELD ON FLANGE FOR SLOPE MOUNTING BRACKET: QTY. 2, CP12727-01 & CP12727-02, P/N 2-401350-02, ITEMS 12 & 13. | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00290920-02 | ELD Rack: SVC E08G | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00290920-04 | ELD Rack: HEAVY FAB | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F224 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F224 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F224 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F196 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00298868-02 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00298868-03 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00298868-01 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00298305-03 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | GC 40-2 | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00298305-02 | ELD Rack: A83 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00298305-01 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-411654-02 | 00299798-02 | ELD Rack: NYD B8-9 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/1S, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | MC 519 #3 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00299798-03 | ELD Rack: HEAVY FAB | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/1S, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00299826-01 | ELD Rack: L75 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00299826-02 | ELD Rack: L77 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00299826-03 | ELD Rack: F18S | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00298248-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00298248-05 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-900423-13 | PO# 7366251 | ELD Rack: F207 | FULL COUPLING, 4" NPT FEMALE X 4" NPT FEMALE QTY.(24) LEFT TO USE. | | | EA | | | 60 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-01 | ELD Rack: L83 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-02 | ELD Rack: F51 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-03 | ELD Rack: L82 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00290118-01 | ELD Rack: RISER N-20 | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL.  27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE; CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W., APPROX. 40 FT. LONG, PER X PER, * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-07, CP14419-01, ITEMS 19. | | GC 200 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-415343-04 | 00302847-02 | ELD Rack: SVC D15G | 18-3/4" X 10-3/4" CASING HANGER W/10-3/4" VAM SLII-II (65.7 LBS./FT.) BOX DOWN, 18.615" MAX OD X 9.555" MIN ID, V, DD, PSL-3, F/H2S, RATED F/HIGH TEMP/HIGH LOAD XXXX * 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE; CUSTOMER SUPPLIED 10-3/4", 65.7 LB/FT, Q125-HC, VAM SLII-II PIN X PIN, 20 FT. LONG, * 10-3/4" CASING HANGER; P/N 2-415343-04, CP14502-02 , ITEMS 38. | | GC 200 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00290613-01 | ELD Rack: B15G | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL.  MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D.  PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00301779-01 | ELD Rack: NYD CC-9 16 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F196 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE; 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J2 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J2 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J2 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J2 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00303231-01 | ELD Rack: L86 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-04 | ELD Rack: L73 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD MOLY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 917146-181 | N/A | ELD Rack: F207 | HEX HEAD BOLTS, 3/4" - 10 UNRC X 2-1/2" LONG | | | EA | | | 16 | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-415343-06 | 00304950-01 | ELD Rack: F191 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-415343-06 | 00304950-02 | ELD Rack: F204 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00304837-01 | ELD Rack: L71 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00304837-02 | ELD Rack: L71 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-01 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-02 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-03 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-04 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-02 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-03 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-02 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-03 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00304834-01 | ELD Rack: L69 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00304834-02 | ELD Rack: L70 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00304834-03 | ELD Rack: L75 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00304834-04 | ELD Rack: L70 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00305662-01 | ELD Rack: NYD CC-9 16 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | DW GOM INVENTORY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00305662-01 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | DW GOM INVENTORY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00305662-02 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | DW GOM INVENTORY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-415343-06 | 00306737-01 | ELD Rack: F191 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-415343-06 | 00306737-02 | ELD Rack: F191 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-01 | ELD Rack: I-3 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-03 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-03 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-05 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-06 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-07 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-08 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00307177-01 | ELD Rack: B15G | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P.  I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL.  MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D.  PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00299769-01 | ELD Rack: J92 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00299769-02 | ELD Rack: L79 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00285469-02 | ELD Rack: J92 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00301981-02 | ELD Rack: RISER N-16 | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL.  27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III, PE8 X PE8 * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III, PE8 X H-90DM/MT * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-07, CP14901-06. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00301981-03 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL.  27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00307379-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0 2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00305121-03 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0 2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00305121-01 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0 2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00305121-02 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0 2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00307579-01 | ELD Rack: B15G 4 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P.  I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL.  MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D.  PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00307579-02 | ELD Rack: B15G 4 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P.  I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL.  MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D.  PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-01 | ELD Rack: NYD CC-9 18 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-03 | ELD Rack: NYD CC-9 18 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-02 | ELD Rack: NYD CC-9 20 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH O-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-04 | ELD Rack: NYD CC-9 20 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH O-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00303913-02 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00303913-01 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408641-04 | 00308005-01 | ELD Rack: F208 | 18-1/4" X 13-3/8" BUSHING SLEEVE, TYPE SS-15, FOR H2S, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.25" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, RATED FOR HIGH TEMP./HIGH LOAD, NOBLE QUALITY PLAN Q504.01 | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00305770-01 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00305770-02 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00307717-02 | ELD Rack: NYD DD-9 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH O-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00302846-04 | ELD Rack: L42 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00308594-03 | ELD Rack: F206 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00308594-02 | ELD Rack: F193 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00308594-01 | ELD Rack: F193 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00299440-01 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00299440-03 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00302846-01 | ELD Rack: L14 | 36"X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00302846-02 | ELD Rack: L21 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00309096-01 | ELD Rack: F218 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00309084-01 | ELD Rack: A79 | 18-1/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00309499-01 | ELD Rack: F205 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00309499-03 | ELD Rack: F197 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00309499-02 | ELD Rack: E204 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-408063-08 | 00309552-01 | ELD Rack: F201 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00302105-03 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00302105-02 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00302105-04 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408641-04 | 00310224-01 | ELD Rack: F187 | 18-3/4" X 13-3/8" BUSHING SLEEVE, TYPE SS-15, FOR H2S, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.25" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, RATED FOR HIGH TEMP./HIGH LOAD, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-01 | ELD Rack: D06G | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-02 | ELD Rack: F211 | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-03 | ELD Rack: F211 | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-04 | ELD Rack: F211 | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00310309-01 | ELD Rack: B15G 2 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00310309-02 | ELD Rack: B15G 2 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00310048-01 | ELD Rack: F200 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00310048-02 | ELD Rack: F205 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00310048-03 | ELD Rack: F200 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00310376-01 | ELD Rack: L1 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00310376-02 | ELD Rack: L2 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-03 | 00310480-03 | ELD Rack: F214 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00310480-04 | ELD Rack: F199 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL S23 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00310644-02 | ELD Rack: NYD YR #2 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL S23 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI XXXX * 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14", 115 LB/FT, Q125-ICY, 20 FT. LONG, 14" 115# HYD S23 PIN X 13-5/8" 88.2 LB/FT VAM SLIJ II PIN. * 14" CASING HANGER, P/N 2-410497-09, CP15152-01, ITEMS 32. | | MC S19 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00310644-03 | ELD Rack: F199 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL S23 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI | | | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-410497-03 | 00310644-04 | ELD Rack: F213 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-03 | 00310644-01 | ELD Rack: F213 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411338-03 | 00310573-01 | ELD Rack: F199 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00310618-01 | ELD Rack: F218 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408641-04 | 00310754-01 | ELD Rack: F187 | 18-3/4" X 13-3/8" BUSHING SLEEVE, TYPE SS-15, FOR H2S, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.25" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, RATED FOR HIGH TEMP./HIGH LOAD, NOBLE QUALITY PLAN QS04.01 | GC 40-1 | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408063-08 | 00310622-01 | ELD Rack: F206 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408063-08 | 00310622-02 | ELD Rack: F206 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310874-03 | ELD Rack: K53 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310874-02 | ELD Rack: K53 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310874-01 | ELD Rack: L86 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310819-01 | ELD Rack: K67 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310819-02 | ELD Rack: K67 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310819-03 | ELD Rack: F204 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411338-03 | 00310814-02 | ELD Rack: F192 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411338-03 | 00310814-03 | ELD Rack: F213 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411338-03 | 00310814-04 | ELD Rack: F213 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411338-03 | 00310814-01 | ELD Rack: F192 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00310833-01 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL.  27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00310833-03 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL.  27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00310833-04 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL.  27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00311226-01 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00311226-03 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-408455-05 | 00311226-04 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408524-05 | 00303429-01 | ELD Rack: F190 | 18-3/4" STABILIZER SUB, TYPE SS-15, 7-5/8" API REG. DOWN X 7-5/8" API REG. BOX UP, TO BE RUN WITH 14.50"/14.75" 2-408632-05 WEAR SLEEVE AND 2-408525-06 BIT SUB, NOBLE QUALITY PLAN Q504.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408524-05 | 00303429-02 | ELD Rack: F208 | 18-3/4" STABILIZER SUB, TYPE SS-15, 7-5/8" API REG. DOWN X 7-5/8" API REG. BOX UP, TO BE RUN WITH 14.50"/14.75" 2-408632-05 WEAR SLEEVE AND 2-408525-06 BIT SUB, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408524-05 | 00303429-03 | ELD Rack: F208 | 18-3/4" STABILIZER SUB, TYPE SS-15, 7-5/8" API REG. DOWN X 7-5/8" API REG. BOX UP, TO BE RUN WITH 14.50"/14.75" 2-408632-05 WEAR SLEEVE AND 2-408525-06 BIT SUB, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00311715-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00311715-03 | ELD Rack: A79 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408063-08 | 00312053-01 | ELD Rack: F185 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-02 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-03 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-04 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-01 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312260-01 | ELD Rack: F194 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312260-02 | ELD Rack: F194 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312402-01 | ELD Rack: F183 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312402-02 | ELD Rack: F183 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00312456-01 | ELD Rack: NYD YR #3 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL 523 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI XXXX * 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14", 115 LB/FT, Q125-ICY, 20 FT. LONG, 14" 115# HYD 523 PIN X 13-5/8" 88.2 LB/FT VAM SLIJ II PIN, * 14" CASING HANGER; P/N 2-410497-09, CF15334-03, ITEMS 33. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-03 | 00312508-01 | ELD Rack: F184 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00312161-03 | ELD Rack: A84 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312568-01 | ELD Rack: F220 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312568-02 | ELD Rack: F186 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312568-03 | ELD Rack: F220 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00312626-01 | ELD Rack: A05G | CROSSOVER SWEDGE: WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-409052-02 | IN CP FILE | ELD Rack: F207 | 4" NIPPLE PIPE FOR ANNULUS VENTING VALVE ASSEMBLY, 4" NPT MALE CONNECTION ONE END, "J" SLOT INTERFACE ONE END | | | EA | | | 10 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00313001-01 | ELD Rack: A84 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Driliquip - Houston | Driliquip | 2-408455-05 | 00313180-02 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413573-02 | 00313356-01 | ELD Rack: F204 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, MIN. 9.262" I.D. TEMP. V, MAT'L CLASS DD- PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404391-07 | 00313801-02 | ELD Rack: F203 | CROSSOVER SWEDGE : WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-413198-02 | 00309922-01 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00315155-01 | ELD Rack: A83 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00315155-02 | ELD Rack: A83 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00316049-01 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00315506-01 | ELD Rack: A82 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00315506-02 | ELD Rack: A82 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00317848-01 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00317848-02 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00317848-03 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00317848-04 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00317848-05 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-411888-07 | 00317848-06 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00319512-01 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00319512-02 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00319512-03 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00319512-04 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00319512-05 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-409052-02 | IN CP FILE | ELD Rack: F221 | 4" NIPPLE PIPE FOR ANNULUS VENTING VALVE ASSEMBLY, 4" NPT MALE CONNECTION ONE END, "J" SLOT INTERFACE ONE END QTY (14) LEFT TO USE. | | | EA | | | 26 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00320231-01 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00320231-02 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-404254-05 | 00320231-03 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-414283-02 | 00321346-01 | ELD Rack: F205 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN QS04.01 | | MC 519 #3 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408468-02 | 00299282-01 | ELD Rack: E03G | 18-3/4" BIG BORE II WELLHEAD HOUSING, 15,000 PSI, TYPE SS-15, 22" X 1.500" BUTTWELD PREP DOWN X HD-H4 PROFILE W/INCONEL VX-VT GSKT PREP UP, V, DD, PSL-3, F/H2S, W/OVER-PULL SPLIT RING,RIGID LOCK-DOWN, & HYDRATE DIVERSION SEAL, SPECIAL, WITHOUT FLOWBY, W/EXTRA LOCK-DOWN GROOVES | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 2-408468-02 | 00299282-02 | ELD Rack: E03G | 18-3/4" BIG BORE II WELLHEAD HOUSING, 15,000 PSI, TYPE SS-15, 22" X 1.500" BUTTWELD PREP DOWN X HD-H4 PROFILE W/INCONEL VX-VT GSKT PREP UP, V, DD, PSL-3, F/H2S, W/OVER-PULL SPLIT RING,RIGID LOCK-DOWN, & HYDRATE DIVERSION SEAL, SPECIAL, WITHOUT FLOWBY, W/EXTRA LOCK-DOWN GROOVES | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | 0 | | | |
| Driliquip - Houston | Driliquip | 240559-02 | 00306162-01 | ELD Rack: F128 | ANTI-ROTATION/CAM REACTION PLATE ASSEMBLY FOR 30" QUIK-JAY "8-IV". | | MEXICO | EA | | | 1 | | 0 | | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-414283-02 | 00323757-01 | ELD Rack: F192 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00323757-02 | ELD Rack: F192 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00325456-01 | ELD Rack: F184 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00325658-01 | ELD Rack: F214 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00327858-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-416531-02 | 00325810-01 | ELD Rack: B13G | 22" X 16" BIG BORE II-H SUPPLEMENTAL CASING HANGER ADAPTER: TYPE SS-20/SS-15, 10,000 PSI, 22" O.D. X 1.500" WALL BUTTWELD PREP. DOWN BY 22" O.D. X 1.500" WALL BUTTWELD PREP. UP, MIN. I.D. 18.375", AA, PSL-3, TEMPERATURE 30°-300° F., FOR 16" BIG BORE II-H "NO-GO" STYLE SUPPLEMENTAL HANGER, WEIGHT SET, WITH PREP. FOR SELECTABLE WEAR BUSHING, RATED FOR 2-MILLION LBS. OF CASING, WITH FOUR (4) SHOULDER LOCK-RING PROFILE. NOBLE QUALITY PLAN Q504.01 | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-416531-02 | 00325810-02 | ELD Rack: B13G | 22" X 16" BIG BORE II-H SUPPLEMENTAL CASING HANGER ADAPTER: TYPE SS-20/SS-15, 10,000 PSI, 22" O.D. X 1.500" WALL BUTTWELD PREP. DOWN BY 22" O.D. X 1.500" WALL BUTTWELD PREP. UP, MIN. I.D. 18.375", AA, PSL-3, TEMPERATURE 30°-300° F., FOR 16" BIG BORE II-H "NO-GO" STYLE SUPPLEMENTAL HANGER, WEIGHT SET, WITH PREP. FOR SELECTABLE WEAR BUSHING, RATED FOR 2-MILLION LBS. OF CASING, WITH FOUR (4) SHOULDER LOCK-RING PROFILE. NOBLE QUALITY PLAN Q504.01 | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-412617-13 | 00328407-01 | ELD Rack: A80 | 16" BIG BORE II-H SEAL ASSEMBLY: GEN. III, 5,000-10,000 PSI, TYPE SS-20/SS-15, API 6A, AA, PSL-3, TEMPERATURE 35"-300° F., FOR 16" BB II-H SUPPLEMENTAL CASING HANGER, BR STYLE, WEIGHT SET METAL TO METAL SEAL, RATED FOR 1.2 MM LBS. LOCK-DOWN. NOBLE QUALITY PLAN Q504.01 | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-412617-13 | 00328407-02 | ELD Rack: A80 | 16" BIG BORE II-H SEAL ASSEMBLY: GEN. III, 5,000-10,000 PSI, TYPE SS-20/SS-15, API 6A, AA, PSL-3, TEMPERATURE 35"-300° F., FOR 16" BB II-H SUPPLEMENTAL CASING HANGER, BR STYLE, WEIGHT SET METAL TO METAL SEAL, RATED FOR 1.2 MM LBS. LOCK-DOWN. NOBLE QUALITY PLAN Q504.01 | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-03 | ELD Rack: F195 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-04 | ELD Rack: F195 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-01 | ELD Rack: F198 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-02 | ELD Rack: F198 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403666-02 | 00333696-01 | ELD Rack: F198 | 18-3/4" STABILIZER SUB FOR BIG BORE WEAR SLEEVES. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404122-02 | 00339241-02 | ELD Rack: F223 | 18-3/4" X 13-3/8" SELECTABLE WEAR BUSHING/SLEEVE: TYPE SS-15, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.395" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, UPPER PROFILE FOR B.O.P. TEST TOOL ADAPTER, BIG BORE AND STANDARD BORE WELLHEAD SYSTEMS. RATED FOR HIGH TEMPERATURE/HIGH LOAD. H2S SERVICE | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404122-02 | 00339241-03 | ELD Rack: F216 | 18-3/4" X 13-3/8" SELECTABLE WEAR BUSHING/SLEEVE: TYPE SS-15, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.395" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, UPPER PROFILE FOR B.O.P. TEST TOOL ADAPTER, BIG BORE AND STANDARD BORE WELLHEAD SYSTEMS. RATED FOR HIGH TEMPERATURE/HIGH LOAD. H2S SERVICE | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404122-02 | 00339241-01 | ELD Rack: F223 | 18-3/4" X 13-3/8" SELECTABLE WEAR BUSHING/SLEEVE: TYPE SS-15, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.395" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, UPPER PROFILE FOR B.O.P. TEST TOOL ADAPTER, BIG BORE AND STANDARD BORE WELLHEAD SYSTEMS. RATED FOR HIGH TEMPERATURE/HIGH LOAD. H2S SERVICE | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403134-02 | 00227560-01 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403133-02 | 1G935-01 | ELD Rack: NYD C6 9 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: TYPE SS-10/15, 6,500 PSI, 16" 97 LB./FT. HYDRIL 511 PIN DOWN, PREP. FOR WEIGHT SET SEAL ASSEMBLY, MIN. I.D. 14.800", V, MATERIAL CLASS: AA, PSL-3 XXXX * 16" HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16", 97#, P-110, WITH HYDRIL 511 BOX X HYDRIL 511 PIN, APPROX. 20 FT LONG * 16" SUPPLEMENTAL HANGER: P/N 2-403133-02,CP8979-01, ITEM 14.1 | | GC B66 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403132-02 | 00178688-01 | ELD Rack: A84 | 18" SEAL ASSEMBLY, TYPE SS-10/15/20, API 6A, V, AA, PSL-2, FOR USE WITH 18" SUPPLEMENTAL HANGER, FOR USE WITH BIG BORE II / BIG BORE II-H WELLHEAD SYSTEM | | KC 292 #2 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405105-02 | 00175605-01 | ELD Rack: NYD CC 9 17 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/SS-10, W/ 0-2 DEGREE BULLSEYE, F/USE ON 38" OR 36" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, EXTRA LONG WITH ROV GUIDE HANDLES. | | MC 252 #1 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109998 | | OSS DOCK C-PORT 2 BLD 27 | 18" VAM HDL 117# G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109994 | | OSS DOCK C-PORT 2 BLD 27 | 18" VAM HDL 117# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 112032 | | 1 PLUG SET SHIPPED TO DRIL-QUIP THE OTHER SHIPPED TO DOCK WITH CEMENT HEAD | 18" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 106438 | | OSS DOCK C-PORT 2 BLD 27 | 13.625" VAM SLIII 88.2# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111637 | | OSS DOCK C-PORT 2 BLD 27 | 13.625" VAM SLIII 88.2# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 113525 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIII 62.8# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109067 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIII 62.8# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114099 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" FLOAT COLLAR TSH WEIGDE 523 DOPELESS 46.10 PPF Q125 INNOVEX | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114055 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" TSHS23 DOPELESS 46.1# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Houma | Franks International | 115250 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" TSH S23 62.8# Q125 LANDING COLLAR | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 114099 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" FLOAT COLLAR TSH WEGDE S23 DOPELESS 46.10 PPF Q125 INNOVEX | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 114055 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" TSH523 DOPELESS 46.1# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 114884 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLI-I 65.3# Q125 GUIDE SHOE | | ORLOV TA-9 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 115250 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" TSH S23 62.8# Q125 LANDING COLLAR | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 106438 | | | 13.625" VAM SLII-II 88.2# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 116137 | | | 13.625" VAM SLII-II 88.2# Q125 GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 114883 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLII-II 65.3# Q125 FLOAT COLLAR | | ORLOV TA-9 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 110651 | | | 14" SLSF 115.53# Q125 CENTRALIZER SUB | | ICHALKIL 4 | EA | | | 15 | | | 0 | |
| Franks - Houma | Franks International | 113525 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLII-II 62.8# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 109994 | | | 18" VAM HDL 117# Q125 F.C | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 106438 | | | 13.625" VAM SLII 88.2# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 107304 | | | 11.875" TSH 513 71.8# Q125 F.C. | | ORLOV | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 112582 | | | 18" VAM HDL 117# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 107304 | | | 11.875" TSH513 71.8# FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 109904 | | | 14" TSH523 116# Q125 FLOAT COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 115425 | | | 11.875" TSH513 71.8# Q125 FLOAT COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 115422 | | | 10.125" TSH513 79.29# Q125 FLOAT COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 114883 | | | 9.875" VAM SLII-II 65.3# Q125 F.C. | | ORLOV TA-9 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 115366 | | | 16.264" TSH623 DOPLESS 122.5# Q125 FLOAT COLLAR | | ICHALKIL 4 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 116632 | | | 13.625" TSH 521 88.2# Q125 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 113594 | | | 16" TSH521 109# P110 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 111140 | | | 14" TSH513 113# Q125 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 116159 | | | 9.875" TSH523 62.8# Q125 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 115709 | | | 9.875" TSH523 62.8# Q140 ORIFICE F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 114099 | | | 7.75" 46.1# Q125 (135 MYS) WEDGE S23 (INNOVEX 73S-AB "DVBR") | | KATMAI #2 ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 114883 | | | 9.875" VAM SLIII 65.3# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 106438 | | | 13.625" VAM SLII-II 88.2# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 114884 | | | 9.875" VAM SLIII 65.3# Q125 GUIDE SHOE | | GENOVESA | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 109067 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIII 62.8# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 116137 | | | 13.625" VAM SLII-II 88.2# Q125 GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 116137 | | OSS DOCK C-PORT 2 BLD 27 | 13.625" VAM SLIII 88.2# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 109998 | | | 18" VAM HDL 117# G.S. | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 115423 | | | 10.125" TSH513 79.29# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 114184 | | | 14" TSH513 113# Q125 C.E.G.S. | | ICHALKIL 4 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 114884 | | | 9.875" VAM SLIII 65.3# Q125 C.E.G.S. | | ORLOV TA-9 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 109068 | | | 11.875" TSH 513 71.8# Q125 C.E.-G.S. | | ORLOV | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 112583 | | | 18" VAM HDL 117# Q125 GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 110530 | | shipped to the OSS dock | 7.75" TSH523 46.1# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 115424 | | | 11.875" TSH513 71.8# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 109905 | | | 14" TSH523 116# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 109068 | | | 11.875" TSH513 71.8# GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111904 | | PLUG SET WAS STABED IN LINNER THEN REMOVED | 10.75" X 9.635" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 109030 | | | 7.625" DUAL WIPER PLUG | | ORLOV | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 113133 | | | 9.625" DUAL WIPER PLUG MOD III | | NA | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 111904 | | | 10.75" 9.625" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 113133 | | | 9.625" DUAL WIPER PLUG MOD III | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 113238 | | | 10.75" OD X 9.625" SINGLE WIPER PLUG | | TA9-5T01 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD III | | ICHALKIL 4 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD III | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111904 | | | 10.75" X 9.635" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 112032 | | TO DOCK WITH CEMENT HEAD | 18" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111804 | | | 11.875" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 109030 | | | 7.625" DUAL WIPER PLUG | | ORLOV | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 112809 | | | 11.75" X 9.625" DUAL WIPER PLUG MOD III | | NA | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | KATMAI-1 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111904 | | | 10.75" 9.625" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 111804 | | | 11.875" DUAL WIPER PLUG MOD II | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 112809 | | | 11.75" X 9.625" DUAL WIPER PLUG MOD III | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 113133 | | | 9.625" DUAL WIPER PLUG MOD III | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 112032 | | | 18" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 113133 | | | 9.875" DUAL WIPER PLUG MOD III | | ORLOV TA-9 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 113238 | | | 10.75" OD X 9.625" SINGLE WIPER PLUG | | ORLOV TA9-5T01 | EA | | | 1 | | | 0 | |
| Franks - Houma | Franks International | 115505 | | | 10.125" TSH 523 79.29# Q125 L.C. | | KATMAI-1 | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 114542 | | | 9.875" VAM SLIII 62.8# L80 L.C. | | ORLOV | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 115505 | | | 10.125"TSH523 79.29# Q125 LANDING COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | |
| Franks - Houma | Franks International | 115427 | | | 9.875" VAM SLIII 65.3# L.C. | | GENOVESA | EA | | | 2 | | | 0 | |
| Franks - Lafayette | Franks International | 127543 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 2/75931 | | Katmai East Noble | EA | | | 1 | 61.78 | | 0 | |
| Franks - Lafayette | Franks International | 127544 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 1/75931 | | Katmai East Noble | EA | | | 1 | 61.91 | | 0 | |
| Franks - Lafayette | Franks International | 127546 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 3/75931 | | Katmai East Noble | EA | | | 1 | 61.76 | | 0 | |
| Franks - Lafayette | Franks International | 127547 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 4/75931 | | Katmai East Noble | EA | | | 1 | 61.84 | | 0 | |
| Franks - Lafayette | Franks International | 127548 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 6/75931 | | Katmai East Noble | EA | | | 1 | 61.74 | | 0 | |
| Franks - Lafayette | Franks International | 127549 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 5/75931 | | Katmai East Noble | EA | | | 1 | 61.72 | | 0 | |
| Franks - Lafayette | Franks International | 127550 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 7/75931 | | Katmai East Noble | EA | | | 1 | 61.74 | | 0 | |
| Franks - Lafayette | Franks International | 127551 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 8/75931 | | Katmai East Noble | EA | | | 1 | 61.75 | | 0 | |
| Franks - Lafayette | Franks International | 127552 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 9/75931 | | Katmai East Noble | EA | | | 1 | 61.86 | | 0 | |
| Franks - Lafayette | Franks International | 127553 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 14/75931 | | Katmai East Noble | EA | | | 1 | 61.78 | | 0 | |
| Franks - Lafayette | Franks International | 127554 | | NA | 22 INCH 1.5 L8 X80 DLQ,B/P, 13/75931 | | Katmai East Noble | EA | | | 1 | 61.79 | | 0 | |
| Franks - Lafayette | Franks International | 127555 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 12/75931 | | Katmai East Noble | EA | | | 1 | 61.83 | | 0 | |
| Franks - Lafayette | Franks International | 127556 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 11/75931 | | Katmai East Noble | EA | | | 1 | 61.76 | | 0 | |
| Franks - Lafayette | Franks International | 127557 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 10/75931 | | Katmai East Noble | EA | | | 1 | 61.88 | | 0 | |
| Franks - Lafayette | Franks International | 128094 | | Rack No. QRR1L2 | 22 INCH 1.5 L8 X80 DLQ,P/PE, 15/75931 | | Katmai East Noble | EA | | | 1 | 81.3 | | 0 | |
| Franks - Lafayette | Franks International | 128095 | | Rack No. QRR1L2 | 22 INCH 1.5 L8 X80 DLQ,P/PE, 16/75931 | | Katmai East Noble | EA | | | 1 | 81.2 | | 0 | |
| Franks - Lafayette | Franks International | 128036 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 5/75933 | | Katmai East Noble | EA | | | 1 | 61.72 | | 0 | |
| Franks - Lafayette | Franks International | 128037 | | Rack No. BPRBL1 | 22 INCH 1.5 L8 X80 DLQ,B/P, 6/75933 | | Katmai East Noble | EA | | | 1 | 61.83 | | 0 | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 128038 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 9/75933 | | Katmai East Noble | EA | | | 1 | 61.73 | | 0 | |
| Franks - Lafayette | Franks International | 128039 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 8/75933 | | Katmai East Noble | EA | | | 1 | 61.82 | | 0 | |
| Franks - Lafayette | Franks International | 128040 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 3/75933 | | Katmai East Noble | EA | | | 1 | 61.74 | | 0 | |
| Franks - Lafayette | Franks International | 128041 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 4/75933 | | Katmai East Noble | EA | | | 1 | 61.84 | | 0 | |
| Franks - Lafayette | Franks International | 128042 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 1/75933 | | Katmai East Noble | EA | | | 1 | 61.68 | | 0 | |
| Franks - Lafayette | Franks International | 128043 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 2/75933 | | Katmai East Noble | EA | | | 1 | 61.84 | | 0 | |
| Franks - Lafayette | Franks International | 128044 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 7/75933 | | Katmai East Noble | EA | | | 1 | 61.81 | | 0 | |
| Franks - Lafayette | Franks International | 128045 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 14/75933 | | Katmai East Noble | EA | | | 1 | 61.71 | | 0 | |
| Franks - Lafayette | Franks International | 128046 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 13/75933 | | Katmai East Noble | EA | | | 1 | 61.76 | | 0 | |
| Franks - Lafayette | Franks International | 128047 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 12/75933 | | Katmai East Noble | EA | | | 1 | 61.86 | | 0 | |
| Franks - Lafayette | Franks International | 128048 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 11/75933 | | Katmai East Noble | EA | | | 1 | 61.72 | | 0 | |
| Franks - Lafayette | Franks International | 128049 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 10/75933 | | Katmai East Noble | EA | | | 1 | 61.72 | | 0 | |
| Franks - Lafayette | Franks International | 129447 | | Rack No. QR13 | 36 INCH 1.5 LB X65 DLQ,B/P,X/O, 3/76563 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.34 | | 0 | |
| Franks - Lafayette | Franks International | 137388 | | Rack No. QRPRODL7 | 36 INCH 1.5 LB X65 PLAIN, | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 12.13 | | 0 | |
| Franks - Lafayette | Franks International | 112711 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLQ,B/P, 21/74736 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 81.97 | | 0 | |
| Franks - Lafayette | Franks International | 81565 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLQ,B/P,X/O, 5/71719 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.74 | | 0 | |
| Franks - Lafayette | Franks International | 137653 | | Rack No. QRFENCELINE | 36 INCH 1.5 LB X65 PLAIN, | | GENOVESA | EA | | | 1 | 12.15 | | 0 | |
| Franks - Lafayette | Franks International | 130507 | | Rack No. QRNL1 | 22 INCH 1 LB X80 DLQ,B/P,S, 4a/76883 | | GENOVESA | EA | | | 1 | 42.95 | | 0 | |
| Franks - Lafayette | Franks International | 130536 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 114/76883 | | GENOVESA | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 129462 | | Rack No. QRR2L3 | 36 INCH 1.5 LB X65 DLQ,B/BV, 1/76881 | | GENOVESA | EA | | | 1 | 41.19 | | 0 | |
| Franks - Lafayette | Franks International | 133758 | | Rack No. QRR2L3 | 36 INCH 2 LB X70 DLQ,B/P,X/O, 4/76881 | | GENOVESA | EA | | | 1 | 42 | | 0 | |
| Franks - Lafayette | Franks International | 86165 | | Rack No. QRR2L3 | 36 INCH 1.5 LB X65 DLQ,B/P, 4/73210 | | GENOVESA | EA | | | 1 | 42 | | 0 | |
| Franks - Lafayette | Franks International | 132382 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 8/76927 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 132386 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 7/76927 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 132394 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/BV, 9/76927 | | ORLOV II | EA | | | 1 | 40.81 | | 0 | |
| Franks - Lafayette | Franks International | 132408 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 6/76927 | | ORLOV II | EA | | | 1 | 41.92 | | 0 | |
| Franks - Lafayette | Franks International | 132409 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 5/76927 | | ORLOV II | EA | | | 1 | 41.9 | | 0 | |
| Franks - Lafayette | Franks International | 133751 | | Rack No. QRPRODL1 | 36 INCH 2 LB X70 PLAIN, | | ORLOV II | EA | | | 1 | 39.95 | | 0 | |
| Franks - Lafayette | Franks International | 133752 | | Rack No. QRPRODL1 | 36 INCH 2 LB X70 PLAIN, | | ORLOV II | EA | | | 1 | 39.93 | | 0 | |
| Franks - Lafayette | Franks International | 133753 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLQ,P/PE, 2/76927 | | ORLOV II | EA | | | 1 | 41.05 | | 0 | |
| Franks - Lafayette | Franks International | 133754 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLQ,P/PE, 1/76927 | | ORLOV II | EA | | | 1 | 41.09 | | 0 | |
| Franks - Lafayette | Franks International | 133755 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLQ,B/P,X/O, 4/76927 | | ORLOV II | EA | | | 1 | 42.07 | | 0 | |
| Franks - Lafayette | Franks International | 133756 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLQ,B/P,X/O, 3/76927 | | ORLOV II | EA | | | 1 | 42.1 | | 0 | |
| Franks - Lafayette | Franks International | 135208 | | Rack No. QRM5L | 28 INCH 0.75 LB X60 PLAIN, | | ORLOV II | EA | | | 1 | 40.1 | | 0 | |
| Franks - Lafayette | Franks International | 135309 | | Rack No. QRM5L | 28 INCH 0.75 LB X60 PLAIN, | | ORLOV II | EA | | | 1 | 40.04 | | 0 | |
| Franks - Lafayette | Franks International | 135389 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 17/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135390 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 7/76928 | | ORLOV II | EA | | | 1 | 41.98 | | 0 | |
| Franks - Lafayette | Franks International | 135391 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 10/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135392 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 11/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135393 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 12/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135394 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 22/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135395 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 23/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135396 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 14/76928 | | ORLOV II | EA | | | 1 | 41.94 | | 0 | |
| Franks - Lafayette | Franks International | 135457 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135458 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 21/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135459 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 18/76928 | | ORLOV II | EA | | | 1 | 41.94 | | 0 | |
| Franks - Lafayette | Franks International | 135460 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 24/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135461 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 25/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135462 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 16/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135463 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 29/76928 | | ORLOV II | EA | | | 1 | 41.89 | | 0 | |
| Franks - Lafayette | Franks International | 135464 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 19/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135465 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 20/76928 | | ORLOV II | EA | | | 1 | 41.06 | | 0 | |
| Franks - Lafayette | Franks International | 135466 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 32/76928 | | ORLOV II | EA | | | 1 | 41.93 | | 0 | |
| Franks - Lafayette | Franks International | 135467 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 35/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135468 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 27/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135469 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 37/76928 | | ORLOV II | EA | | | 1 | 41.92 | | 0 | |
| Franks - Lafayette | Franks International | 135470 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 33/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135471 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 33/76928 | | ORLOV II | EA | | | 1 | 41.88 | | 0 | |
| Franks - Lafayette | Franks International | 135472 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 41/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135473 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 30/76928 | | ORLOV II | EA | | | 1 | 41.87 | | 0 | |
| Franks - Lafayette | Franks International | 135474 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 28/76928 | | ORLOV II | EA | | | 1 | 41.94 | | 0 | |
| Franks - Lafayette | Franks International | 135475 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 47/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135476 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 39/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135477 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 34/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135478 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 38/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135506 | | NA | 28 INCH 0.75 LB X60 DLQ,P/PE, 63/76928 | | ORLOV II | EA | | | 1 | 41 | | 0 | |
| Franks - Lafayette | Franks International | 135523 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 8/76928 | | ORLOV II | EA | | | 1 | 41.98 | | 0 | |
| Franks - Lafayette | Franks International | 135524 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 46/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135525 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 44/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135526 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 45/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135527 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 43/76928 | | ORLOV II | EA | | | 1 | 41.97 | | 0 | |
| Franks - Lafayette | Franks International | 135528 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 36/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135529 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 42/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135530 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 48/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135531 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 40/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135532 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 53/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135533 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 50/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135534 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 52/76928 | | ORLOV II | EA | | | 1 | 41.97 | | 0 | |
| Franks - Lafayette | Franks International | 135535 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 48/76928 | | ORLOV II | EA | | | 1 | 41.97 | | 0 | |
| Franks - Lafayette | Franks International | 135536 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 51/76928 | | ORLOV II | EA | | | 1 | 41.97 | | 0 | |
| Franks - Lafayette | Franks International | 135537 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 54/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135538 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 57/76928 | | ORLOV II | EA | | | 1 | 41.97 | | 0 | |
| Franks - Lafayette | Franks International | 135539 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 55/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135541 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 58/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135542 | | NA | 28 INCH 0.75 LB X60 DLQ,P/PE, 59/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135544 | | NA | 28 INCH 0.75 LB X60 DLQ,P/PE, 62/76928 | | ORLOV II | EA | | | 1 | 41 | | 0 | |
| Franks - Lafayette | Franks International | 135561 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 57/76928 | | ORLOV II | EA | | | 1 | 41.97 | | 0 | |
| Franks - Lafayette | Franks International | 135562 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 15/76928 | | ORLOV II | EA | | | 1 | 41.98 | | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 135563 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, X/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135564 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 2/76928 | | ORLOV II | EA | | | 1 | 41.94 | | 0 | |
| Franks - Lafayette | Franks International | 135565 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 1/76928 | | ORLOV II | EA | | | 1 | 41.94 | | 0 | |
| Franks - Lafayette | Franks International | 135566 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 13/76928 | | ORLOV II | EA | | | 1 | 41.95 | | 0 | |
| Franks - Lafayette | Franks International | 135567 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 4/76928 | | ORLOV II | EA | | | 1 | 41.96 | | 0 | |
| Franks - Lafayette | Franks International | 135568 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 5/76928 | | ORLOV II | EA | | | 1 | 41.94 | | 0 | |
| Franks - Lafayette | Franks International | 135569 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 9/76928 | | ORLOV II | EA | | | 1 | 41.97 | | 0 | |
| Franks - Lafayette | Franks International | 130150 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 82/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130153 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 90/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130157 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 89/76929 | | ORLOV II | EA | | | 1 | 41.43 | | 0 | |
| Franks - Lafayette | Franks International | 130158 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 85/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130159 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 86/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130161 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 88/76929 | | ORLOV II | EA | | | 1 | 41.43 | | 0 | |
| Franks - Lafayette | Franks International | 130162 | | Rack No. QR3RL5 | 22 INCH 1 LB X80 DLQ,B/P,X/O, 117/76929 | | ORLOV II | EA | | | 1 | 41.57 | | 0 | |
| Franks - Lafayette | Franks International | 130163 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 84/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130165 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 87/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130226 | | Rack No. QR | 22 INCH 1 LB X80 DLQ,B/P, 83/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130227 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 92/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130229 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 96/76929 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | |
| Franks - Lafayette | Franks International | 130230 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 94/76929 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | |
| Franks - Lafayette | Franks International | 130231 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 98/76929 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | |
| Franks - Lafayette | Franks International | 130232 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 83/76929 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | |
| Franks - Lafayette | Franks International | 130234 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 92/76929 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | |
| Franks - Lafayette | Franks International | 130235 | | Rack No. QRNL2 | 22 INCH 1 LB X80 DLQ,B/P, 113/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130236 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 91/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130283 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 91/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130284 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 78/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130285 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 79/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130346 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 69/76929 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | |
| Franks - Lafayette | Franks International | 130347 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 39/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130348 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 35/76929 | | ORLOV II | EA | | | 1 | 41.51 | | 0 | |
| Franks - Lafayette | Franks International | 130349 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 45/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130350 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 46/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130351 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 38/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130352 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 34/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130353 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 51/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130354 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 52/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130355 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 37/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130356 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 33/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130357 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 43/76929 | | ORLOV II | EA | | | 1 | 41.42 | | 0 | |
| Franks - Lafayette | Franks International | 130358 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 44/76929 | | ORLOV II | EA | | | 1 | 41.43 | | 0 | |
| Franks - Lafayette | Franks International | 130359 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 55/76929 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | |
| Franks - Lafayette | Franks International | 130360 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 56/76929 | | ORLOV II | EA | | | 1 | 41.42 | | 0 | |
| Franks - Lafayette | Franks International | 130361 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 49/76929 | | ORLOV II | EA | | | 1 | 41.43 | | 0 | |
| Franks - Lafayette | Franks International | 130367 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 50/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130368 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 61/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130369 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 62/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130370 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 53/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130371 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 54/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130372 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 57/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130373 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 58/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130374 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 59/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130375 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 60/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130376 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 77/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130377 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 75/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130378 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 63/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130379 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 64/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130380 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 66/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130381 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 74/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130382 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 67/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130383 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 68/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130384 | | Rack No. QRPN0DR2L1 | 22 INCH 1 LB X80 DLQ,B/P, 114/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130385 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 73/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130386 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 65/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130387 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 66/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130388 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 95/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130389 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 72/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130390 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 70/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130391 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 71/76929 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | |
| Franks - Lafayette | Franks International | 130392 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 76/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130473 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 41/76929 | | ORLOV II | EA | | | 1 | 41.4 | | 0 | |
| Franks - Lafayette | Franks International | 130474 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 47/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130475 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 36/76929 | | ORLOV II | EA | | | 1 | 41.43 | | 0 | |
| Franks - Lafayette | Franks International | 130476 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 49/76929 | | ORLOV II | EA | | | 1 | 41.4 | | 0 | |
| Franks - Lafayette | Franks International | 130477 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 42/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130478 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 48/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130479 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 21/76929 | | ORLOV II | EA | | | 1 | 41.39 | | 0 | |
| Franks - Lafayette | Franks International | 130480 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 50/76929 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | |
| Franks - Lafayette | Franks International | 130481 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 25/76929 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | |
| Franks - Lafayette | Franks International | 130482 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 29/76929 | | ORLOV II | EA | | | 1 | 41.42 | | 0 | |
| Franks - Lafayette | Franks International | 130483 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 26/76929 | | ORLOV II | EA | | | 1 | 41.51 | | 0 | |
| Franks - Lafayette | Franks International | 130484 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 14/76929 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | |
| Franks - Lafayette | Franks International | 130485 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 9/76929 | | ORLOV II | EA | | | 1 | 41.42 | | 0 | |
| Franks - Lafayette | Franks International | 130486 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 16/76929 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | |
| Franks - Lafayette | Franks International | 130487 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 12/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130488 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 17/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |
| Franks - Lafayette | Franks International | 130489 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 10/76929 | | ORLOV II | EA | | | 1 | 41.41 | | 0 | |
| Franks - Lafayette | Franks International | 130490 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 15/76929 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | |
| Franks - Lafayette | Franks International | 130491 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 24/76929 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | |
| Franks - Lafayette | Franks International | 130492 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P 208, 27/76929 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | |
| Franks - Lafayette | Franks International | 130493 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 13/76929 | | ORLOV II | EA | | | 1 | 41.42 | | 0 | |
| Franks - Lafayette | Franks International | 130494 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 28/76929 | | ORLOV II | EA | | | 1 | 41.41 | | 0 | |
| Franks - Lafayette | Franks International | 130495 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 32/76929 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 130496 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 20/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130499 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 4/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 130502 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 18/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 130504 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 19/76929 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 130505 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 3/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130506 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 15/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130509 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 17/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130510 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 14/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130511 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 8/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 130512 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 1/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130514 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 5/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130515 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 6/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130516 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 7/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130541 | | Rack No. QRR4L4 | 22 INCH 1 LB X80 DLQ,B/P, 2/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 48572 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 101/76029 | | ORLOV II | EA | | | 1 | 41.83 | 0 | | | |
| Franks - Lafayette | Franks International | 48574 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 103/76029 | | ORLOV II | EA | | | 1 | 41.88 | 0 | | | |
| Franks - Lafayette | Franks International | 48612 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 104/76029 | | ORLOV II | EA | | | 1 | 41.79 | 0 | | | |
| Franks - Lafayette | Franks International | 48613 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 102/76029 | | ORLOV II | EA | | | 1 | 41.79 | 0 | | | |
| Franks - Lafayette | Franks International | 48615 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 107/76029 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 48621 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 99/76029 | | ORLOV II | EA | | | 1 | 41.81 | 0 | | | |
| Franks - Lafayette | Franks International | 48622 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 110/76029 | | ORLOV II | EA | | | 1 | 41.75 | 0 | | | |
| Franks - Lafayette | Franks International | 48631 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 108/76029 | | ORLOV II | EA | | | 1 | 41.88 | 0 | | | |
| Franks - Lafayette | Franks International | 48634 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 109/76029 | | ORLOV II | EA | | | 1 | 41.82 | 0 | | | |
| Franks - Lafayette | Franks International | 49635 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 105/76029 | | ORLOV II | EA | | | 1 | 41.86 | 0 | | | |
| Franks - Lafayette | Franks International | 50179 | | Rack No. QRN.2 | 22 INCH 1.25 LB X80 DLQ,P/PE, 112/76029 | | ORLOV II | EA | | | 1 | 41.02 | 0 | | | |
| Franks - Lafayette | Franks International | 50183 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 106/76029 | | ORLOV II | EA | | | 1 | 41.86 | 0 | | | |
| Franks - Lafayette | Franks International | 50185 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 100/76029 | | ORLOV II | EA | | | 1 | 41.79 | 0 | | | |
| Franks - Lafayette | Franks International | 82761 | | Rack No. QRN.2 | 22 INCH 1.25 LB X80 DLQ,P/PE, 111/76029 | | ORLOV II | EA | | | 1 | 39.69 | 0 | | | |
| Franks - Lafayette | Franks International | 115834 | | Rack No. QRR1R1 | 36 INCH 2 LB X80 DLQ,B/P, 5/75976 | | ORLOV II | EA | | | 1 | 42.16 | 0 | | | |
| Franks - Lafayette | Franks International | 132380 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 3/76939 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 132385 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/8V, 4/76939 | | ORLOV II | EA | | | 1 | 40.9 | 0 | | | |
| Franks - Lafayette | Franks International | 132390 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 2/76934 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135211 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 48/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 135214 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 47/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135359 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 12/76940 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | | |
| Franks - Lafayette | Franks International | 135360 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 7/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135361 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 25/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135362 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 11/76940 | | ORLOV II | EA | | | 1 | 41.01 | 0 | | | |
| Franks - Lafayette | Franks International | 135363 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 29/76940 | | ORLOV II | EA | | | 1 | 40.26 | 0 | | | |
| Franks - Lafayette | Franks International | 135364 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 24/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135365 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 30/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135366 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 15/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135367 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 31/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135368 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 35/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135369 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 13/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135370 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 14/76940 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | | |
| Franks - Lafayette | Franks International | 135371 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 46/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135372 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 16/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 135373 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 34/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135374 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 44/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135375 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 45/76940 | | ORLOV II | EA | | | 1 | 41.92 | 0 | | | |
| Franks - Lafayette | Franks International | 135376 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 33/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135377 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 37/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135378 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 20/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135379 | | Rack No. QRR3L5 | 28 INCH 0.75 LB X60 DLQ,B/P, 18/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135380 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 41/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 135381 | | Rack No. QRR3L5 | 28 INCH 0.75 LB X60 DLQ,B/P, 19/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135382 | | Rack No. QRR3L5 | 28 INCH 0.75 LB X60 DLQ,B/P, 17/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135383 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 38/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135384 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 39/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 135385 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 43/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135386 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 40/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135387 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 36/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135388 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 42/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135494 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 8/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135495 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 27/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135496 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 32/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135497 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 9/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135498 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 28/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135499 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 10/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135500 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 26/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135501 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 6/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135502 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 5/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135503 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 22/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135504 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 4/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135505 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 21/76940 | | ORLOV II | EA | | | 1 | 41.01 | 0 | | | |
| Franks - Lafayette | Franks International | 135508 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 23/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135540 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 3/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135543 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 2/76940 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 135546 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 1/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 138955 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 77/70915 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 138956 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 63/70915 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 138957 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 40/70915 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 138958 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 43/70915 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | | |
| Franks - Lafayette | Franks International | 88725 | | Rack No. BPL7R5 | 28 INCH 0.75 LB X60 DLQ,B/P, 19/70785 | | ORLOV II | EA | | | 1 | 42.02 | 0 | | | |
| Franks - Lafayette | Franks International | 88729 | | Rack No. BPL7R5 | 28 INCH 0.75 LB X60 DLQ,B/P, 25/70785 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 124226 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 99/75976 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 124227 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 260/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 124230 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 105/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 124231 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 98/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 124233 | | Rack No. BPL6L3 | 22 INCH 1 LB x80 DLQ,B/P, 97/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 124234 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 113/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 124235 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 267/75976 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 124237 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 109/75976 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 124238 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 263/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 124241 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 120/75976 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 124242 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 121/75976 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 124243 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 110/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 124262 | | Rack No. BPL7L4 | 22 INCH 1 LB x80 DLQ,B/P, 115/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 124263 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 102/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 124267 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 266/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 124269 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 265/75976 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 124278 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 264/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 124279 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 104/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 124281 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 108/75976 | | ORLOV II | EA | | | 1 | 41.52 | 0 | | | |
| Franks - Lafayette | Franks International | 124284 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 96/75976 | | ORLOV II | EA | | | 1 | 41.38 | 0 | | | |
| Franks - Lafayette | Franks International | 124285 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 95/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 124286 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 101/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 124310 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 112/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 124312 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 118/75976 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 124313 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 119/75976 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 124318 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 114/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 125166 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 128/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 125172 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 127/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 125173 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 123/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 125190 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 144/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 125191 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 137/75976 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 125200 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 155/75976 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 125201 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 154/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 125204 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 159/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 125205 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 158/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 125213 | | Rack No. BPL7L2 | 22 INCH 1 LB x80 DLQ,B/P, 162/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 125219 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 139/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 125221 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 137/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 125222 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 136/75976 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 125249 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 145/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 125250 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 146/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 130092 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 22/76941 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 130093 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 15/76941 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 130094 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 24/76941 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130095 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 9/76941 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130096 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 34/76941 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130097 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 27/76941 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130098 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 28/76941 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 130099 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 19/76941 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 130100 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 39/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130101 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 40/76941 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 130102 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 25/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130103 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 26/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130104 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 38/76941 | | ORLOV II | EA | | | 1 | 41.41 | 0 | | | |
| Franks - Lafayette | Franks International | 130105 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 31/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130106 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 32/76941 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130107 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 17/76941 | | ORLOV II | EA | | | 1 | 41.41 | 0 | | | |
| Franks - Lafayette | Franks International | 130108 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 44/76941 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130109 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 29/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130110 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 30/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130111 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 23/76941 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 130112 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 42/76941 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 130113 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 31/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130114 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 36/76941 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 130115 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 21/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130117 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 47/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130118 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 33/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130121 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 46/76941 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 130125 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 45/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130126 | | Rack No. QRSBL | 22 INCH 1 LB X80 R/P,CPN, 37/76941 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 130129 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 48/76941 | | ORLOV II | EA | | | 1 | 39.42 | 0 | | | |
| Franks - Lafayette | Franks International | 130130 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 43/76941 | | ORLOV II | EA | | | 1 | 39.6 | 0 | | | |
| Franks - Lafayette | Franks International | 130142 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 11/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130143 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 13/76941 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130144 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 10/76941 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 130145 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 18/76941 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 130146 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 16/76941 | | ORLOV II | EA | | | 1 | 41.42 | 0 | | | |
| Franks - Lafayette | Franks International | 130147 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 12/76941 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130148 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 14/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130149 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 20/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130151 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 2/76941 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 130152 | | Rack No. QR13 | 22 INCH 1 LB X80 DLQ,B/P,X/O, 1/76941 | | ORLOV II | EA | | | 1 | 41.6 | 0 | | | |
| Franks - Lafayette | Franks International | 130154 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 4/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130155 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 3/76941 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 130156 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 5/76941 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 130160 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 6/76941 | | ORLOV II | EA | | | 1 | 41.6 | 0 | | | |
| Franks - Lafayette | Franks International | 130164 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 7/76941 | | ORLOV II | EA | | | 1 | 41.6 | 0 | | | |
| Franks - Lafayette | Franks International | 130228 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 8/76941 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 130559 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 49/76941 | | ORLOV II | EA | | | 1 | 41.35 | 0 | | | |
| Franks - Lafayette | Franks International | 130560 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 41/76941 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 62753 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 95/76941 | | ORLOV II | EA | | | 1 | 41.87 | 0 | | | |
| Franks - Lafayette | Franks International | 62759 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 92/76941 | | ORLOV II | EA | | | 1 | 41.77 | 0 | | | |
| Franks - Lafayette | Franks International | 62761 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 94/76941 | | ORLOV II | EA | | | 1 | 41.86 | 0 | | | |
| Franks - Lafayette | Franks International | 62762 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 93/76941 | | ORLOV II | EA | | | 1 | 41.91 | 0 | | | |
| Franks - Lafayette | Franks International | 62765 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 97/76941 | | ORLOV II | EA | | | 1 | 41.91 | 0 | | | |
| Franks - Lafayette | Franks International | 62766 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 101/76941 | | ORLOV II | EA | | | 1 | 41.91 | 0 | | | |
| Franks - Lafayette | Franks International | 62768 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 96/76941 | | ORLOV II | EA | | | 1 | 41.89 | 0 | | | |
| Franks - Lafayette | Franks International | 62769 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 76941 | | ORLOV II | EA | | | 1 | 41.89 | 0 | | | |
| Franks - Lafayette | Franks International | 62851 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 100/76941 | | ORLOV II | EA | | | 1 | 41.85 | 0 | | | |
| Franks - Lafayette | Franks International | 62863 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 98/76941 | | ORLOV II | EA | | | 1 | 41.89 | 0 | | | |
| Franks - Lafayette | Franks International | 103217 | | Rack No. BPR8R2 | 22 INCH 1 LB X80 DLQ,B/P, | | ORLOV II | EA | | | 1 | 21.3 | 0 | | | |
| Franks - Lafayette | Franks International | 105564 | | Rack No. BPR6L4 | 22 INCH 1 LB X80 DLQ,B/P, 2/74164 | | NOBLE | EA | | | 1 | 7.98 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 109324 | | Rack No. BPR7L4 | 22 INCH 1.25 LB X80 DLCJL/P, 15/74732 | | NOBLE | EA | | | 1 | 21.74 | 0 | | | |
| Franks - Lafayette | Franks International | 111396 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLCJL/P, 4/74727 | | NOBLE | EA | | | 1 | 28.35 | 0 | | | |
| Franks - Lafayette | Franks International | 111399 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLCJL/P, 2/74727 | | NOBLE | EA | | | 1 | 28.32 | 0 | | | |
| Franks - Lafayette | Franks International | 112330 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLCJL/P, 15/74736 | | NOBLE | EA | | | 1 | 81.15 | 0 | | | |
| Franks - Lafayette | Franks International | 112336 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLCJL/P, 20/74736 | | NOBLE | EA | | | 1 | 81.85 | 0 | | | |
| Franks - Lafayette | Franks International | 112709 | | Rack No. QRR1L2 | 22 INCH 1 LB X80 DLCJL/P, 9/74736 | | NOBLE | EA | | | 1 | 81.85 | 0 | | | |
| Franks - Lafayette | Franks International | 112710 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLCJL/P, 23/74736 | | NOBLE | EA | | | 1 | 81.92 | 0 | | | |
| Franks - Lafayette | Franks International | 112712 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLCJL/P, 22/74736 | | NOBLE | EA | | | 1 | 81.85 | 0 | | | |
| Franks - Lafayette | Franks International | 115996 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLCJL/P, 7/72609 | | NOBLE | EA | | | 1 | 31.34 | 0 | | | |
| Franks - Lafayette | Franks International | 116784 | | PYM | 36 INCH 2 LB X70 DLCJL | | NOBLE | EA | | | 1 | 4.5 | 0 | | | |
| Franks - Lafayette | Franks International | 123875 | | NA | 22 INCH 1.25 LB X80 DLCJL/PE, | | NOBLE | EA | | | 1 | 40.89 | 0 | | | |
| Franks - Lafayette | Franks International | 136805 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 13/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.06 | 0 | | | |
| Franks - Lafayette | Franks International | 136806 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 16/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 136807 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 7/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.06 | 0 | | | |
| Franks - Lafayette | Franks International | 136808 | | NA | 26 INCH 1 LB XS256 DOS,B/TCE, 11/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 14.44 | 0 | | | |
| Franks - Lafayette | Franks International | 136809 | | NA | 26 INCH 1 LB XS256 DOS,B/YS, 18/76560 | | SOUTH MARSH ISLAND 105#A-21 ST | EA | | | 1 | 23.75 | 0 | | | |
| Franks - Lafayette | Franks International | 136810 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 8/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137230 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 17/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137231 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 15/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137232 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 14/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137233 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 5/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137234 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 4/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137235 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 9/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.08 | 0 | | | |
| Franks - Lafayette | Franks International | 137239 | | Rack No. QRR5L4 | 26 INCH 1 LB XS256 DOS,B/P, 12/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137240 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 10/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.08 | 0 | | | |
| Franks - Lafayette | Franks International | 137241 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 6/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.08 | 0 | | | |
| Franks - Lafayette | Franks International | 137242 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,P/TCE,COT, 1/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 12.48 | 0 | | | |
| Franks - Lafayette | Franks International | 137243 | | Rack No. QRR1R1 | 26 INCH 1 LB XS256 DOS,P/TCE, 11/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 25.65 | 0 | | | |
| Franks - Lafayette | Franks International | 137244 | | Rack No. QRL3L1 | 26 INCH 1 LB XS256 TCE/TCE,COT, 1/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 14.16 | 0 | | | |
| Franks - Lafayette | Franks International | 137384 | | Rack No. QRR2L1 | 26 INCH 1 LB XS256 DOS,B/P, 12/76561 | | SOUTH MARSH ISLAND#A-21 ST # 105 | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137392 | | Rack No. QRR5L4 | 26 INCH 1 LB XS256 DOS,B/P, 3/76561 | | SHIP SHOAL 169 #G-3 | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137393 | | Rack No. QRR5L4 | 26 INCH 1 LB XS256 DOS,B/P, 8/76561 | | SHIP SHOAL 169 #G-3 | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137394 | | Rack No. QRR5L4 | 26 INCH 1 LB XS256 DOS,B/P,COT, 6/76561 | | SHIP SHOAL 169 #G-3 | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137938 | | Rack No. BPL11R1 | 22 INCH 1 LB X80 DLCJL/P,X/O, 1/72603 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.65 | 0 | | | |
| Franks - Lafayette | Franks International | 138065 | | Rack No. BPL10L1 | 36 INCH 1.5 LB X65 DLCJL/P, 26/70264 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 138459 | | Rack No. BPL10L1 | 28 INCH 0.75 LB X80 DLCJL/P, 2/76746 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 43.58 | 0 | | | |
| Franks - Lafayette | Franks International | 138928 | | Rack No. BPR14L1 | 22 INCH 1 LB X80 DLCJL/P, 28/73725 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 61.46 | 0 | | | |
| Franks - Lafayette | Franks International | 138947 | | Rack No. BPL11R1 | 22 INCH 1 LB X80 DLCJL/P,BURST X DLCJL/P, 10/76595 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 49.56 | 0 | | | |
| Franks - Lafayette | Franks International | 140972 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 20/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 140973 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 27/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.78 | 0 | | | |
| Franks - Lafayette | Franks International | 140974 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 41/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 140975 | | Rack No. BPR9L4 | 22 INCH 1 LB X80 DLCJL/B/P, 45/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 140976 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLCJL/B/P, 60/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.66 | 0 | | | |
| Franks - Lafayette | Franks International | 140977 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 55/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 140978 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 53/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.05 | 0 | | | |
| Franks - Lafayette | Franks International | 140979 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 37/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 140980 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 40/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.15 | 0 | | | |
| Franks - Lafayette | Franks International | 140981 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLCJL/B/P, 23/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 140982 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLCJL/B/P, 7/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 140983 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLCJL/B/P, 81/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 140984 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLCJL/B/P, 15/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.12 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 140985 | | Rack No. BPL11R4 | 22 INCH 1 LB X80 DLQ,B/P, 21/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 140986 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 70/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.96 | 0 | | | |
| Franks - Lafayette | Franks International | 140987 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 44/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.38 | 0 | | | |
| Franks - Lafayette | Franks International | 140988 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 14/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.02 | 0 | | | |
| Franks - Lafayette | Franks International | 140989 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 12/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.04 | 0 | | | |
| Franks - Lafayette | Franks International | 140990 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 74/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 140991 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 63/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 140992 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 61/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 140993 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 19/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.37 | 0 | | | |
| Franks - Lafayette | Franks International | 140994 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 20/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.06 | 0 | | | |
| Franks - Lafayette | Franks International | 140995 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 51/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 140996 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 68/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.36 | 0 | | | |
| Franks - Lafayette | Franks International | 140997 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 24/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141002 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 92/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141003 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 116/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.43 | 0 | | | |
| Franks - Lafayette | Franks International | 141004 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 73/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141005 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 130/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 141006 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 21/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.59 | 0 | | | |
| Franks - Lafayette | Franks International | 141007 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 18/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 141008 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 14/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141009 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 25/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141010 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 4/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.05 | 0 | | | |
| Franks - Lafayette | Franks International | 141011 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 78/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.34 | 0 | | | |
| Franks - Lafayette | Franks International | 141012 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 87/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.16 | 0 | | | |
| Franks - Lafayette | Franks International | 141013 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 6/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141014 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 33/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141015 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 11/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.16 | 0 | | | |
| Franks - Lafayette | Franks International | 141016 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 9/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 141017 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 27/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141018 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 32/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141019 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 94/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 141020 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 28/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141021 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 30/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141022 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 31/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 141023 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 90/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 44.89 | 0 | | | |
| Franks - Lafayette | Franks International | 141024 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 12/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141025 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 93/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141026 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 84/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 141027 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 96/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141028 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 35/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141029 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 18/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.87 | 0 | | | |
| Franks - Lafayette | Franks International | 141030 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 47/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 141031 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 10/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141032 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 114/76883 | | MC519 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141033 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 46/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.42 | 0 | | | |
| Franks - Lafayette | Franks International | 141034 | | Rack No. BPR5L3 | 22 INCH 1 LB X80 DLQ,B/P, 57/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 141035 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 56/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141036 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 86//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141037 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 37//76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 141038 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 39//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141039 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 39//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141040 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 47//76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.42 | 0 | | | |
| Franks - Lafayette | Franks International | 141041 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 42//76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 141042 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 54//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141043 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 79//76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141044 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 54//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141045 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 46//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141046 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 82//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141047 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 47//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141048 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 43//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.6 | 0 | | | |
| Franks - Lafayette | Franks International | 141049 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 16//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141050 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 22//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141051 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 26//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141052 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 19//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 141053 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 29//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.38 | 0 | | | |
| Franks - Lafayette | Franks International | 141054 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 3//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.06 | 0 | | | |
| Franks - Lafayette | Franks International | 141055 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 50//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141056 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 8/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141057 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 8//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 141058 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 48//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141059 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 55//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.64 | 0 | | | |
| Franks - Lafayette | Franks International | 141060 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 76//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.41 | 0 | | | |
| Franks - Lafayette | Franks International | 141061 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 64//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141062 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 65//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141063 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 36//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141064 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 62//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.41 | 0 | | | |
| Franks - Lafayette | Franks International | 141065 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 8/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141066 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 69//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141067 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 72//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141068 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 66//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141069 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 5//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141070 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 34//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.24 | 0 | | | |
| Franks - Lafayette | Franks International | 141071 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 75//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141072 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 17//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141073 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 38//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141074 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 85//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141075 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 79//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 141076 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 58//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141077 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 42//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141078 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 48//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141079 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 25//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.15 | 0 | | | |
| Franks - Lafayette | Franks International | 141080 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 77//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141081 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 3/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141082 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 83//76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141083 | | Rack No. BPL10L2 | 22 INCH 1 LB X80 DLQ,B/P, 40/76883 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 141084 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 80/76883 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141085 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 67/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.15 | 0 | | | |
| Franks - Lafayette | Franks International | 141086 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 71/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141087 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 52/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.05 | 0 | | | |
| Franks - Lafayette | Franks International | 141088 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 49/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141089 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 87/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 141090 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 93/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.42 | 0 | | | |
| Franks - Lafayette | Franks International | 141091 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 24/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141122 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 83/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141123 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 92/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141124 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 28/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141125 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 90/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141126 | | Rack No. QRRBL3 | 22 INCH 1 LB X80 DLQ,B/P, 152/75976 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141127 | | Rack No. QRRBL3 | 22 INCH 1 LB X80 DLQ,B/P, 20/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141129 | | Rack No. QRRBL3 | 22 INCH 1 LB X80 DLQ,B/FS, 1/76748 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 43.52 | 0 | | | |
| Franks - Lafayette | Franks International | 141130 | | Rack No. QRRBL3 | 22 INCH 1 LB X80 DLQ,B/P, 124/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141131 | | Rack No. QRRBL3 | 22 INCH 1 LB X80 DLQ,B/P, 38/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141230 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 2/76608 | | MCS19 #3 - Genovesa | EA | | | 1 | 42.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141233 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 5/76608 | | MCS19 #3 - Genovesa | EA | | | 1 | 42.18 | 0 | | | |
| Franks - Lafayette | Franks International | 141234 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 3/76608 | | MCS19 #3 - Genovesa | EA | | | 1 | 42.18 | 0 | | | |
| Franks - Lafayette | Franks International | 141235 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 11/76881 | | MCS19 #3 - Genovesa | EA | | | 1 | 40.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141236 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 2/75995 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.89 | 0 | | | |
| Franks - Lafayette | Franks International | 141237 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 8/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141238 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 49/76883 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141239 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 49/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.65 | 0 | | | |
| Franks - Lafayette | Franks International | 141240 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 3/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.7 | 0 | | | |
| Franks - Lafayette | Franks International | 141241 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 5/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.7 | 0 | | | |
| Franks - Lafayette | Franks International | 141392 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 41/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141393 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 4/73211 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141394 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 3/73211 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.9 | 0 | | | |
| Franks - Lafayette | Franks International | 141395 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 13/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.02 | 0 | | | |
| Franks - Lafayette | Franks International | 141396 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 21/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141397 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 33/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141398 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 51/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141399 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 28/73212 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.99 | 0 | | | |
| Franks - Lafayette | Franks International | 141400 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 24/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141401 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 3/73211 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141402 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 40/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141403 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 29/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141404 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 37/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141405 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 13/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141406 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 31/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141407 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 53/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141408 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 16/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141409 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 8/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141410 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 20/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.98 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141411 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 8/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 141412 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 48/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141413 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 10/73212 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141414 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 49/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141415 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/70462 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141416 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/73212 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141417 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 78/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141418 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 1/73211 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141419 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 15/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141420 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 12/73157 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.99 | 0 | | | |
| Franks - Lafayette | Franks International | 141421 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 76/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141422 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 81/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141423 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 34/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141424 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 44/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141425 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 31/70462 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141426 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 76/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141427 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 9/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141428 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 41/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141429 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 56/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141430 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 30/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141431 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 12/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141432 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 8/73212 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141433 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 39/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141434 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 39/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141435 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 69/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141436 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 33/70462 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141437 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 61/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141438 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 47/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141439 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 30/73212 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141441 | | Rack No. BPR9L3 | 28 INCH 0.75 LB X60 DLQ,B/P, 60/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141442 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 46/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141443 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 20/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141444 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 70/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141445 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 79/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141446 | | Rack No. BPLSR4 | 28 INCH 0.75 LB X60 DLQ,B/P, 74/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141447 | | Rack No. BPLSR4 | 28 INCH 0.75 LB X60 DLQ,B/P, 11/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141448 | | Rack No. BPLSR4 | 28 INCH 0.75 LB X60 DLQ,B/P, 11/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.02 | 0 | | | |
| Franks - Lafayette | Franks International | 141450 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141452 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 4/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.67 | 0 | | | |
| Franks - Lafayette | Franks International | 141453 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 9/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.74 | 0 | | | |
| Franks - Lafayette | Franks International | 141454 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 10/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.76 | 0 | | | |
| Franks - Lafayette | Franks International | 141455 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 6/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.71 | 0 | | | |
| Franks - Lafayette | Franks International | 141548 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,P/FS, 1/76596 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 43.6 | 0 | | | |
| Franks - Lafayette | Franks International | 141549 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 35/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141550 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 31/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.92 | 0 | | | |
| Franks - Lafayette | Franks International | 141551 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 30/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141552 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 23/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 40.13 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141553 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ.B/P, 26/76795 | | MC519 #3 - Genoveva | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141554 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ.B/P, 3/76795 | | MC519 #3 - Genoveva | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141555 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ.B/P, 28/76795 | | MC519 #3 - Genoveva | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141556 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ.B/P, 29/76795 | | MC519 #3 - Genoveva | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141616 | | Rack No. BPRSL3 | 22 INCH 1 LB X80 DLQ.B/P, 112/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141619 | | Rack No. BPRSL3 | 22 INCH 1 LB X80 DLQ.B/P, 78/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 40.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141622 | | Rack No. BPRSL3 | 22 INCH 1 LB X80 DLQ.B/P, 111/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 40.9 | 0 | | | |
| Franks - Lafayette | Franks International | 141625 | | Rack No. BPRSL3 | 22 INCH 1 LB X80 DLQ.B/P, 123/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 65379 | | Rack No. BPL9/FS | 22 INCH 1 LB X80 DLQ.B/P,FS, | | | EA | | | 1 | 43.06 | 0 | | | |
| Franks - Lafayette | Franks International | 81955 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/P, 14/74218 | | | EA | | | 1 | 21.88 | 0 | | | |
| Franks - Lafayette | Franks International | 83028 | | Rack No. BPR7L4 | 36 INCH 1.5 LB X65 DLQ.B/8V, | | | EA | | | 1 | 50.55 | 0 | | | |
| Franks - Lafayette | Franks International | 84690 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/P, 1/69354 | | | EA | | | 1 | 42.03 | 0 | | | |
| Franks - Lafayette | Franks International | 84693 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/P, 4/69354 | | | EA | | | 1 | 42.03 | 0 | | | |
| Franks - Lafayette | Franks International | 84694 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/P, 5/69354 | | | EA | | | 1 | 42.04 | 0 | | | |
| Franks - Lafayette | Franks International | 84696 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/P, 7/69354 | | | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 84881 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/P, 12/69354 | | | EA | | | 1 | 42.04 | 0 | | | |
| Franks - Lafayette | Franks International | 84893 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/P, 24/69354 | | | EA | | | 1 | 42.03 | 0 | | | |
| Franks - Lafayette | Franks International | 84900 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ.B/FS, 39/69354 | | | EA | | | 1 | 43.57 | 0 | | | |
| Franks - Lafayette | Franks International | 86362 | | Rack No. BPR7L4 | 36 INCH 1.5 LB X65 DLQ.B/P, 14/70264 | | Noble | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 86410 | | Rack No. BPR7L4 | 36 INCH 1.5 LB X65 DLQ.B/P, 24/70264 | | Noble | EA | | | 1 | 41.91 | 0 | | | |
| Franks - Lafayette | Franks International | 87226 | | Rack No. BPR7L4 | 36 INCH 2 LB X70 DLQ.B/P, 1/70264 | | Noble | EA | | | 1 | 42.43 | 0 | | | |
| Franks - Lafayette | Franks International | 87233 | | Rack No. BPR7L4 | 36 INCH 2 LB X70 DLQ.B/P, 5/70264 | | Noble | EA | | | 1 | 42.32 | 0 | | | |
| Franks - Lafayette | Franks International | 91366 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLQ.B/P, 7/72609 | | Noble | EA | | | 1 | 31.4 | 0 | | | |
| Franks - Lafayette | Franks International | 93573 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ.B/8V,UF, 19/70466 | | Noble | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 93574 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ.B/P, 31/70460 | | | EA | | | 4 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 93575 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ.B/P, 2/70466 | | | EA | | | 4 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 93578 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ.B/P, 7/70466 | | | EA | | | 4 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 95141 | | Rack No. BPR8R2 | 22 INCH 1 LB X80 DLQ.B/P, | | | EA | | | 1 | 21.4 | 0 | | | |
| Franks - New Iberia | Franks International | 87377 | | Rack No. N49 | 22 INCH 1.25 LB X80 PLAIN, | | ORLOV II | EA | | | 1 | 40.11 | 0 | | | |
| Franks - New Iberia | Franks International | 87378 | | Rack No. N49 | 22 INCH 1.25 LB X80 PLAIN, | | ORLOV II | EA | | | 1 | 40.07 | 0 | | | |
| Hornbeck - Fourchon | Hornbeck Energy Services | 70024.A | | | PLATFORM; PN:SW160121-01,TYP AERIAL LIFT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 279145 | | | |
| Linear - Lafayette | Linear Controls | 70131.A | | Yard Loc: H219, climate controlled facility | SIEMENS MOTOR: S/N: 0770680-010-1.  1250 HP 882 RPM, 4160 V7, WP11 Frame 6811 Siemens | | Thunderhawk | EA | | | 1 | | 0 | | | |
| Linear - Lafayette | Linear Controls | 70146.A | | Yard Loc: H222, climate controlled facility | SIEMENS MOTOR: S/N: 1LE24214CC112AA3, 75 HP, 1200 RPM, 460 VT, TEFC, Frame 444T | | Thunderhawk | EA | | | 1 | | 0 | | | |
| Linear - Lafayette | Linear Controls | 70147.A | | Yard Loc: H223, climate controlled facility | MARATHON MOTOR:  S/N: WAA037677. 125 HP, 1800 RPM, 460 VR, TEFC, Grame 445T | | Thunderhawk | EA | | | 1 | | 0 | | | |
| Linear - Lafayette | Linear Controls | 70149.A | | Yard Loc: H225, climate controlled facility | SIEMENS MOTOR: S/N: G12T1269NPI7. 250 HP, 1800 RPM, TEFC  Frame B449T | | Thunderhawk | EA | | | 1 | | 0 | | | |
| NOV - Amelia | NOV | 7805505-01 | | Rack No. AR30. | 4 1/2" 15.50# HP1-13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | FW192008 | GC 200 TA-2 S/T | EA | UNKNOWN | | 15 | 593.35 | 0 | | | |
| NOV - Amelia | NOV | 7805505-02 | | Rack No. AR30. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS TUBING, BTS-6 THREAD | FW192008 | GC 200 TA-2 S/T | EA | UNKNOWN | | 23 | 910.04 | 0 | | | |
| NOV - Amelia | NOV | 7800124-01 | | Rack No. MURPHY. | 5 1/2" 29.70# HP12-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 40 | 1709.4 | 0 | | | |
| NOV - Amelia | NOV | 7800124-05 | | Rack No. EQ22. | 5 1/2" 29.70# HP2-13CR110 JFE STEEL SEAMLESS PUP JOINTS, DUTCHMAN THREAD | FW202002 | GC 40 #1 | EA | USED | | 1 | 27 | 0 | | | |
| NOV - Amelia | NOV | 7800124-01 | | Rack No. MURPHY. | 5 1/2" 29.70# HP13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 5 | 213.05 | 0 | | | |
| NOV - Amelia | NOV | 7800124-06 | | Rack No. 2-336. | 5 1/2" 29.70# HP2-13CR110 JFE SEAMLESS PUP JOINTS, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | USED | | 1 | 18.1 | 0 | | | |
| NOV - Amelia | NOV | 7800124-03 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 3 | 129.8 | 0 | | | |
| NOV - Amelia | NOV | 7800124-01 | | Rack No. MURPHY. | 5 1/2" 29.70# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 3 | 126 | 0 | | | |
| NOV - Amelia | NOV | 7800124-03 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 45 | 1926.05 | 0 | | | |
| NOV - Amelia | NOV | 7800124-03 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 42.75 | 0 | | | |
| NOV - Amelia | NOV | 7800124-03 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 84.85 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 8.55 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 13.25 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 5.2 | 0 | | | |
| NOV - Amelia | NOV | 7800124-08 | | Rack No. N-SPRAY-1. | 4 1/2" 15.10# HP2-13CR110 JFE SEAMLESS PUP JOINTS, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 4.3 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 85.15 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 41 | 1724.85 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 84.7 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 3 | 128.6 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 15.55 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 4.5 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1  OCSG 34536 | EA | USED | | 90 | 3836.7 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1  OCSG 34536 | EA | USED | | 21 | 899.55 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1  OCSG 34536 | EA | USED | | 1 | 42.4 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1  OCSG 34536 | EA | USED | | 142 | 6052.6 | 0 | | | |
| NOV - Amelia | NOV | 7800101-02 | | Rack No. KD29. | 5 1/2" 29.70# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1  OCSG 34536 | EA | USED | | 2 | 84.6 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1  OCSG 34536 | EA | USED | | 27 | 1148.8 | 0 | | | |
| NOV - Amelia | NOV | 7800101-02 | | Rack No. KD29. | 5 1/2" 29.70# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1  OCSG 34536 | EA | USED | | 4 | 169.25 | 0 | | | |
| NOV - Amelia | NOV | 7796246-01 | | Rack No. WKRK02. | 4 1/2" 17.00# VM-110 13CR95 VALLOUREC SEAMLESS TUBING, VAM TOP HC THREAD | | GC 40 #1 KATMAI | EA | NEW | | 4 | 171 | 0 | | | |
| NOV - Amelia | NOV | 7785930-01 | | Rack No. D001. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202001 | MC 519 #3 OCSG 27278 | EA | UNKNOWN | | 40 | 1760 | 0 | | | |
| NOV - Amelia | NOV | 7771379-01 | | Rack No. E033. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW202001 | MISS CANYON S19 #3 OCSG 12209 | EA | NEW | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7767125-02 | | Rack No. WRAP1. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192015 | GC 200 TA9-ST01-BP01 | EA | NEW | | 12 | 519.3 | 0 | | | |
| NOV - Amelia | NOV | 7767125-02 | | Rack No. EL06. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192015 | GC 200 TA9-ST01-BP01 | EA | NEW | | 1 | 38.3 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7767125-01 | | Rack No. WRAP1. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192015 | GC 200 TA9-ST01-BP01 | EA | NEW | | 89 | 3858.85 | 0 | | | |
| NOV - Amelia | NOV | 7762379-01 | | Rack No. LONGTR. | 4 1/2" 15.20# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 / OCSG 12209 TA-2 ST02 | EA | UNKNOWN | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7762379-02 | | Rack No. I3-WK10. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192012 | GC 200 / OCSG 12209 TA-2 ST02 | EA | NEW | | 9 | 387.15 | 0 | | | |
| NOV - Amelia | NOV | 7762379-02 | | Rack No. CUST1. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192012 | GC 200 / OCSG 12209 TA-2 ST02 | EA | NEW | | 1 | 43.55 | 0 | | | |
| NOV - Amelia | NOV | 7759774-01 | | Rack No. I3-WK10. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192012 | GC 200 TROIKA TA2 ST02 OCSG 12209 | EA | NEW | | 44 | 1904.7982 | 0 | | | |
| NOV - Amelia | NOV | 7759774-02 | | Rack No. CUST1. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 TROIKA TA2 ST02 OCSG 12209 | EA | NEW | | 1 | 41.65 | 0 | | | |
| NOV - Amelia | NOV | 7759774-02 | | Rack No. I3-WK10. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 TROIKA TA2 ST02 OCSG 12209 | EA | NEW | | 10 | 429.9 | 0 | | | |
| NOV - Amelia | NOV | 7759771-01 | | Rack No. AR33. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | NEW | | 1 | 43.1602 | 0 | | | |
| NOV - Amelia | NOV | 7759771-02 | | Rack No. CPO2. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | NEW | | 11 | 472.75 | 0 | | | |
| NOV - Amelia | NOV | 7759771-01 | | Rack No. AR33. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | NEW | | 22 | 949.5383 | 0 | | | |
| NOV - Amelia | NOV | 7759771-03 | | Rack No. CUST1. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | USED | | 1 | 43.3 | 0 | | | |
| NOV - Amelia | NOV | 7754749-01 | | Rack No. K057. | 7 3/4" 46.10# TN-125-HCY TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191502 | G.C. 40 #21 S/T OCSG 34536 (KATMAI) | EA | NEW | | 18 | 830.99 | 0 | | | |
| NOV - Amelia | NOV | 7753002-01 | | Rack No. 2-438. | 7 3/4" 46.10# TN-125-HCY TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191502 | GC 200 TA3 OCSG 12209 | EA | NEW | | 11 | 491.8 | 0 | | | |
| NOV - Amelia | NOV | 7753002-02 | | Rack No. 2-438. | 7 3/4" 46.10# TN-125-HCY TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191027 | GC 200 TA3 OCSG 12209 | EA | NEW | | 2 | 82.05 | 0 | | | |
| NOV - Amelia | NOV | 7752420-01 | | Rack No. WKRK02. | 5 1/2" 26.00# VM-110 13CR55 VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | FW19151S | GC 40 #1 (KATMAI #1) OCSG 34536 | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 7494932-01 | | Rack No. C248. | 11 7/8" 71.80# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | FW191023 | GC 200 #RA-9ST OCSG 12209 | EA | NEW | | 72 | 3160.9 | 0 | | | |
| NOV - Amelia | NOV | 7149426-01 | | Rack No. EJ21. | 11 7/8" 71.80# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | FW191019 | MC 519 #3 OCSG 27278 | EA | NEW | | 68 | 2986.1 | 0 | | | |
| NOV - Amelia | NOV | 7745836-07 | | Rack No. CO50. | 10 3/4" 65.70# Q-125 HC   SEAMLESS PUP JOINTS, SLIII THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 1 | 5 | 0 | | | |
| NOV - Amelia | NOV | 7745836-07 | | Rack No. CO50. | 10 3/4" 65.70# Q-125 HC   SEAMLESS PUP JOINTS, SLIII THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 1 | 15.2 | 0 | | | |
| NOV - Amelia | NOV | 7745836-07 | | Rack No. CO50. | 10 3/4" 65.70# Q-125 HC   SEAMLESS PUP JOINTS, SLIII THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 2 | 19.55 | 0 | | | |
| NOV - Amelia | NOV | 7745836-12 | | Rack No. CO50. | 10 3/4" 65.70# Q-125 HC V&M TCA SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | USED | | 2 | 87.1 | 0 | | | |
| NOV - Amelia | NOV | 7745836-12 | | Rack No. CO50. | 10 3/4" 65.70# Q-125 HC V&M TCA SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 1 | 44.95 | 0 | | | |
| NOV - Amelia | NOV | 7745836-06 | | Rack No. CO50. | 10 3/4" 65.70# Q-125 HC V&M TCA SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 11 | 480.93 | 0 | | | |
| NOV - Amelia | NOV | 7745836-10 | | Rack No. CO50. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 4 | 155.62 | 0 | | | |
| NOV - Amelia | NOV | 7745836-11 | | Rack No. CO50. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | USED | | 2 | 81.81 | 0 | | | |
| NOV - Amelia | NOV | 7745836-09 | | Rack No. CO50. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 27 | 1063.34 | 0 | | | |
| NOV - Amelia | NOV | 7745836-02 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 17 | 696.84 | 0 | | | |
| NOV - Amelia | NOV | 7745836-08 | | Rack No. CO50. | OTHER,   THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | USED | | 1 | 4.2 | 0 | | | |
| NOV - Amelia | NOV | 7745836-03 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 3 | 123.26 | 0 | | | |
| NOV - Amelia | NOV | 7745836-04 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 1 | 43.29 | 0 | | | |
| NOV - Amelia | NOV | 7745836-05 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 1 | 43.3 | 0 | | | |
| NOV - Amelia | NOV | 7745836-01 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 S/T OCSG 12209 | EA | NEW | | 28 | 1269.16 | 0 | | | |
| NOV - Amelia | NOV | 7742256-02 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | NEW | | 3 | 129.4 | 0 | | | |
| NOV - Amelia | NOV | 7742256-01 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | NEW | | 10 | 441.3 | 0 | | | |
| NOV - Amelia | NOV | 7742256-03 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | NEW | | 4 | 175.2 | 0 | | | |
| NOV - Amelia | NOV | 7742256-04 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | USED | | 2 | 88.05 | 0 | | | |
| NOV - Amelia | NOV | 7741619-01 | | Rack No. CEFPUP. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS PUP JOINTS, TSH S23 THREAD | FW191023 | G.C. 200 TA3 OCSG 12209 | EA | NEW | | 1 | 10.12 | 0 | | | |
| NOV - Amelia | NOV | 7738697-01 | | Rack No. AR34. | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) JFE SEAMLESS VIT, VAM DRS NA THREAD | FW192008 | GREEN CANYON 200 TA-2 / TA-3 | EA | USED | | 58 | 2300.3 | 0 | | | |
| NOV - Amelia | NOV | 7736792-01 | | Rack No. CCF. | 9 7/8" 62.80# Q-125 TENARIS SEAMLESS CASING, TSH W523 DPLS THREAD | FW191518 | GC 200 #TA-9 OCSG 12209 | EA | NEW | | 1 | 37.45 | 0 | | | |
| NOV - Amelia | NOV | 7734993-02 | | Rack No. CCF. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 2 | 30 | 0 | | | |
| NOV - Amelia | NOV | 7734993-01 | | Rack No. 2-438. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS CASING, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 9 | 383.2 | 0 | | | |
| NOV - Amelia | NOV | 7734993-05 | | Rack No. CCF. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 1 | 10.2 | 0 | | | |
| NOV - Amelia | NOV | 7734993-03 | | Rack No. 2-439. | OTHER,   THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | USED | | 2 | 80.85 | 0 | | | |
| NOV - Amelia | NOV | 7734993-07 | | Rack No. CCF. | OTHER,   THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | USED | | 1 | 5.15 | 0 | | | |
| NOV - Amelia | NOV | 7734993-01 | | Rack No. 2-438. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS CASING, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 13 | 510.05 | 0 | | | |
| NOV - Amelia | NOV | 7734993-04 | | Rack No. 2-438. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 24 | 1051.5 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7734993-06 | | Rack No. CCF. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191517 | MC S19 #3 OCSG 27278 | EA | NEW | | 2 | 9.8 | 0 | | |
| NOV - Amelia | NOV | 7734993-09 | | Rack No. 2-313. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191517 | MC S19 #3 OCSG 27278 | EA | USED | | 15 | 659.7 | 0 | | |
| NOV - Amelia | NOV | 7734808-01 | | Rack No. C248. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, VAM SLII II THREAD | FW191023 | GREEN CANYON 200 TA9 S/T OCSG 12209 | EA | NEW | | 1 | 36.7 | 0 | | |
| NOV - Amelia | NOV | 7732821-01 | | Rack No. 2-438. | 13 5/8" 88.20# Q-125 HC VBM SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 4 | 162.95 | 0 | | |
| NOV - Amelia | NOV | 7732821-03 | | Rack No. R010. | 13 5/8" 88.20# SM-125TT SUMITOMO SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 10 | 399.25 | 0 | | |
| NOV - Amelia | NOV | 7732821-02 | | Rack No. 2-330B. | 13 5/8" 88.20# Q-125 HC U S STEEL SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 3 | 128.4 | 0 | | |
| NOV - Amelia | NOV | 7732821-06 | | Rack No. 2-313. | 13 5/8" 88.20# Q-125 HC U S STEEL SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | USED | | 1 | 44 | 0 | | |
| NOV - Amelia | NOV | 7732821-05 | | Rack No. R010. | 13 5/8" 88.20# SM-125S NSSMC SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 9 | 361.35 | 0 | | |
| NOV - Amelia | NOV | 7732821-04 | | Rack No. 2-340. | 13 5/8" 88.20# Q-125 HC VMG SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 1 | 44.5 | 0 | | |
| NOV - Amelia | NOV | 7732821-08 | | Rack No. 2-330B. | 13 5/8" 88.20# SM-125S NSSMC SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | USED | | 2 | 88 | 0 | | |
| NOV - Amelia | NOV | 7731874-01 | | Rack No. I3-302. | 18" 117.00# Q-125-HP USS SEAMLESS CASING, HDL THREAD | FW191019 | M.C S19 ROWAN RESOLUTE | EA | NEW | | 10 | 406.55 | 0 | | |
| NOV - Amelia | NOV | 7731874-02 | | Rack No. I3-302. | 18" 117.00# Q-125-HP USS SEAMLESS CASING, HDL THREAD | FW191019 | M.C S19 ROWAN RESOLUTE | EA | NEW | | 4 | 170.2 | 0 | | |
| NOV - Amelia | NOV | 7729854-01 | | Rack No. C218. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | NEW | | 54 | 1701.8 | 0 | | |
| NOV - Amelia | NOV | 7729854-03 | | Rack No. C218. | 2 7/8" 6.50# 13CR9S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | NEW | | 1 | 31.75 | 0 | | |
| NOV - Amelia | NOV | 7729854-01 | | Rack No. C152. | 2 7/8" 6.50# 13CR9S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | NEW | | 1 | 31.8 | 0 | | |
| NOV - Amelia | NOV | 7729854-02 | | Rack No. C152. | 2 7/8" 6.50# 13CR9S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | USED | | 4 | 125.95 | 0 | | |
| NOV - Amelia | NOV | 7727342-03 | | Rack No. CCF. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 2 | 10.7 | 0 | | |
| NOV - Amelia | NOV | 7727342-03 | | Rack No. CCF. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 1 | 10.4 | 0 | | |
| NOV - Amelia | NOV | 7727342-04 | | Rack No. CCF. | OTHER,      THREAD | FW191515 | GC 40 / OCSG 34536 | EA | USED | | 1 | 5.15 | 0 | | |
| NOV - Amelia | NOV | 7727342-01 | | Rack No. 2-110. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS CASING, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 8 | 352.8444 | 0 | | |
| NOV - Amelia | NOV | 7727342-01 | | Rack No. 2-213. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS CASING, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 10 | 441.06 | 0 | | |
| NOV - Amelia | NOV | 7727342-02 | | Rack No. 2-110. | 10 1/8" 79.29# Q125 ICY TENARIS SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 16 | 712 | 0 | | |
| NOV - Amelia | NOV | 7725195-01 | | Rack No. C081. | OTHER,      THREAD | FW191018 | GREEN CANYON 200 TA9 | EA | USED | | 2 | 0 | 0 | | |
| NOV - Amelia | NOV | 7722897-02 | | Rack No. H002. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 THREAD | FW191021 | GC 200 TA-2 | EA | NEW | | 5 | 224.5 | 0 | | |
| NOV - Amelia | NOV | 7717849-01 | | Rack No. E010. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW191018 | GC 200 TA-9 8P01 | EA | NEW | | 40 | 1598.6445 | 0 | | |
| NOV - Amelia | NOV | 7717849-01 | | Rack No. E010. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW191018 | GC 200 TA-9 8P01 | EA | NEW | | 1 | 39.8 | 0 | | |
| NOV - Amelia | NOV | 7717849-06 | | Rack No. EG23. | 9 7/8" 62.80# Q-125 HC TENARIS SEAMLESS CASING, SLIII THREAD | FW191018 | GC 200 TA-9 8P01 | EA | NEW | | 3 | 135.45 | 0 | | |
| NOV - Amelia | NOV | 7717849-02 | | Rack No. E010. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191018 | GC 200 TA-9 8P01 | EA | NEW | | 13 | 587.95 | 0 | | |
| NOV - Amelia | NOV | 7717849-07 | | Rack No. EG23. | OTHER,      THREAD | FW191018 | GC 200 TA-9 8P01 | EA | USED | | 2 | 87.6 | 0 | | |
| NOV - Amelia | NOV | 7715996-01 | | Rack No. SITEGUARD. | 2 7/8" 6.50# 13CR8S    SEAMLESS PUP JOINTS, BT5-8 THREAD | FW185098 | EB 159 A-17 | EA | USED | | 1 | 10 | 0 | | |
| NOV - Amelia | NOV | 7715996-01 | | Rack No. SITEGUARD. | 2 7/8" 6.50# 13CR8S    SEAMLESS PUP JOINTS, BT5-8 THREAD | FW185098 | EB 159 A-17 | EA | USED | | 1 | 6 | 0 | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. 2-104. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 28 | 1092.6 | 0 | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. AR1. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW183011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 1 | 39.15 | 0 | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. I3-302. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW183011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 62 | 2419.22 | 0 | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. I3SPURS. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 56 | 2185.05 | 0 | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. I3-301. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 84 | 3277.65 | 0 | | |
| NOV - Amelia | NOV | 7713962-01 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184070 | EB 158 A-12 | EA | NEW | | 68 | 2158.45 | 0 | | |
| NOV - Amelia | NOV | 7713824-01 | | Rack No. C245. | 13 5/8" 88.20# Q-125 VMG SEAMLESS CASING, SLIII THREAD | FW191018 | GC 200 TA-9 OCSG 12209 | EA | NEW | | 42 | 1789.7 | 0 | | |
| NOV - Amelia | NOV | 7710150-01 | | Rack No. K057. | 9 7/8" 64.10# Q-125 VALLOUREC STAR SEAMLESS CASING, SLIII THREAD | FW183011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 61 | 2391.5 | 0 | | |
| NOV - Amelia | NOV | 7708123-03 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184022 | GI 47 E-17 | EA | NEW | | 2 | 62.8 | 0 | | |
| NOV - Amelia | NOV | 7708123-01 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184022 | GI 47 E-17 | EA | NEW | | 1 | 31.7 | 0 | | |
| NOV - Amelia | NOV | 7708123-02 | | Rack No. A004. | OTHER,      THREAD | FW184022 | GI 47 E-17 | EA | USED | | 1 | 30 | 0 | | |
| NOV - Amelia | NOV | 7708123-04 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184022 | GI 47 E-17 | EA | NEW | | 1 | 31.7 | 0 | | |
| NOV - Amelia | NOV | 7707781-02 | | Rack No. A037. | 2 7/8" 6.50# 13CR9S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184061 | ENTERPRISE 264 SS 169 OCSG: 00820 | EA | USED | | 5 | 157.25 | 0 | | |
| NOV - Amelia | NOV | 7707229-01 | | Rack No. K051. | 14" 112.89# Q125-IC TENARIS-TAMSA SEAMLESS CASING, TSH 523 THREAD | FW191001 | GREEN CANYON 40 #2 S/T OCSG 34536 | EA | NEW | | 29 | 1218.4 | 0 | | |
| NOV - Amelia | NOV | 7707228-01 | | Rack No. K053. | 14" 115.53# Q125 ICY TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW191001 | GREEN CANYON 40 #2 ST OCSG 34536 | EA | NEW | | 35 | 1395.2 | 0 | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B048. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW183011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 2 | 83.16 | 0 | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B048. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW183011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 3 | 125.2 | 0 | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B035. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW183011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 12 | 498.9857 | 0 | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B035. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW183011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 6 | 250.4 | 0 | | |
| NOV - Amelia | NOV | 7704862-02 | | Rack No. C152. | 2 3/8" 4.70# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184036 | EB 160 A16 | EA | USED | | 6 | 190.95 | 0 | | |
| NOV - Amelia | NOV | 7704862-01 | | Rack No. C152. | 2 3/8" 4.70# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184036 | EB 160 A16 | EA | NEW | | 5 | 158.5 | 0 | | |
| NOV - Amelia | NOV | 7703746-03 | | Rack No. EMO5. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW191500 | SM 105 A21 ST#1 OCSG 17938 | EA | NEW | | 1 | 22.98 | 0 | | |
| NOV - Amelia | NOV | 7703746-03 | | Rack No. EMO5. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW191500 | SM 105 A21 ST#1 OCSG 17938 | EA | NEW | | 1 | 22.97 | 0 | | |
| NOV - Amelia | NOV | 7703746-02 | | Rack No. EMO5. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, API 8RD LONG THREAD | FW191500 | SM 105 A21 ST#1 OCSG 17938 | EA | NEW | | 21 | 975.55 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7703736-01 | | Rack No. E060. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW191500 | SMI 105 #A-21 ST#1 OCSG 17938 | EA | NEW | | 16 | 738.65 | 0 | | | |
| NOV - Amelia | NOV | 7703736-02 | | Rack No. E060. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API 8RD LONG THREAD | FW191500 | SMI 105 #A-21 ST#1 OCSG 17938 | EA | NEW | | 22 | 990.6 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H062. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 46 | 2114.1007 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 11 | 506.77 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 5 | 230.7 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 47 | 2165.43 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.06# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 88 | 4051.36 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.06# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 29 | 1337.9979 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H062. | 7 5/8" 29.06# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 47 | 2179.1498 | 0 | | | |
| NOV - Amelia | NOV | 7699979-01 | | Rack No. 2-323. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 5 | 217.15 | 0 | | | |
| NOV - Amelia | NOV | 7699979-02 | | Rack No. 2-203. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7699979-01 | | Rack No. 2-323. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 43.7 | 0 | | | |
| NOV - Amelia | NOV | 7699979-03 | | Rack No. 2-203. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, DUTCHMAN THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7699979-04 | | Rack No. 2-213. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, DUTCHMAN THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 2 | 88 | 0 | | | |
| NOV - Amelia | NOV | 7699448-01 | | Rack No. H021. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 70 | 2918.65 | 0 | | | |
| NOV - Amelia | NOV | 7699448-01 | | Rack No. 2-067. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 190 | 7924.9 | 0 | | | |
| NOV - Amelia | NOV | 7699445-01 | | Rack No. 2-201. | 10 3/4" 59.45# HCQ-125 VSTAR SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 180 | 8283.6 | 0 | | | |
| NOV - Amelia | NOV | 7699445-01 | | Rack No. 2-312. | 10 3/4" 59.45# HCQ-125 VSTAR SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 250 | 11505.0092 | 0 | | | |
| NOV - Amelia | NOV | 7699445-01 | | Rack No. K016. | 10 3/4" 59.45# HCQ-125 VSTAR SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 62 | 2855.29 | 0 | | | |
| NOV - Amelia | NOV | 7699439-01 | | Rack No. E006. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 258 | 11223 | 0 | | | |
| NOV - Amelia | NOV | 7699439-01 | | Rack No. EO27. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 225 | 9787.5 | 0 | | | |
| NOV - Amelia | NOV | 7699431-01 | | Rack No. K004. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 26 | 1085.5 | 0 | | | |
| NOV - Amelia | NOV | 7699431-01 | | Rack No. E086. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 9 | 371.15 | 0 | | | |
| NOV - Amelia | NOV | 7699431-01 | | Rack No. E086. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 115 | 4801.25 | 0 | | | |
| NOV - Amelia | NOV | 7699424-01 | | Rack No. 2-310. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 170 | 7083.9 | 0 | | | |
| NOV - Amelia | NOV | 7699424-01 | | Rack No. K050. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 25 | 1042.2 | 0 | | | |
| NOV - Amelia | NOV | 7698957-01 | | Rack No. 2-323. | 16" 65.00# H-40 TMK ERW CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 34.4 | 0 | | | |
| NOV - Amelia | NOV | 7698957-01 | | Rack No. 2-323. | 16" 65.00# H-40 TMK ERW CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 35.8 | 0 | | | |
| NOV - Amelia | NOV | 7698957-02 | | Rack No. 2-323. | 16" 65.00# H-40 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 9 | 383.85 | 0 | | | |
| NOV - Amelia | NOV | 7698957-03 | | Rack No. 2-208. | 16" 65.00# H-40 USS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 22.2 | 0 | | | |
| NOV - Amelia | NOV | 7698957-02 | | Rack No. 2-323. | 16" 65.00# H-40 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 42.25 | 0 | | | |
| NOV - Amelia | NOV | 7698957-04 | | Rack No. 2-203. | 16" 65.00# H-40 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7698957-01 | | Rack No. 2-323. | 16" 65.00# H-40 TMK ERW CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 35 | 0 | | | |
| NOV - Amelia | NOV | 7695156-04 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 40.8 | 0 | | | |
| NOV - Amelia | NOV | 7695156-06 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 23.5 | 0 | | | |
| NOV - Amelia | NOV | 7695156-02 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 NSSMC SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 43.6 | 0 | | | |
| NOV - Amelia | NOV | 7695156-03 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 45.8 | 0 | | | |
| NOV - Amelia | NOV | 7695156-05 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 44.35 | 0 | | | |
| NOV - Amelia | NOV | 7694544-01 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 3 | 122.55 | 0 | | | |
| NOV - Amelia | NOV | 7694544-01 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 3 | 120.65 | 0 | | | |
| NOV - Amelia | NOV | 7694544-03 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 1 | 42.65 | 0 | | | |
| NOV - Amelia | NOV | 7694544-02 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 1 | 42.75 | 0 | | | |
| NOV - Amelia | NOV | 7694041-02 | | Rack No. HUBCIT. | OTHER,  THREAD | FW185004 | MP 296 B15 | EA | USED | | 1 | 18.05 | 0 | | | |
| NOV - Amelia | NOV | 7694041-02 | | Rack No. HUBCIT. | OTHER,  THREAD | FW185004 | MP 296 B15 | EA | USED | | 1 | 22.25 | 0 | | | |
| NOV - Amelia | NOV | 7690497-02 | | Rack No. E069. | 2 7/8" 6.50# 13CR95 JFE SEAMLESS TUBING, BTS-8 THREAD | FW184054 | ENTERPRISE #354 SM 280 H | EA | USED | | 5 | 157.5 | 0 | | | |
| NOV - Amelia | NOV | 7677657-01 | | Rack No. H052. | 11 7/8" 71.80# HCQ-125 U S STEEL SEAMLESS CASING, TSH S13 THREAD | FW181011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 26 | 1124.573 | 0 | | | |
| NOV - Amelia | NOV | 7677657-03 | | Rack No. I3-140. | 11 7/8" 70.26# Q125 XHP U S STEEL SEAMLESS CASING, TSH S13 THREAD | FW181011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 85 | 3633.5029 | 0 | | | |
| NOV - Amelia | NOV | 7677657-02 | | Rack No. B057. | 11 7/8" 71.80# HCQ-125 V&M SEAMLESS CASING, TSH S13 THREAD | FW181011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 2 | 91.45 | 0 | | | |
| NOV - Amelia | NOV | 7669939-03 | | Rack No. I2-ACC. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW191000 | SOUTH MARSH ISLAND 105 #A-21 ST OCSG 17938 | EA | NEW | | 1 | 23.6 | 0 | | | |
| NOV - Amelia | NOV | 7669904-02 | | Rack No. E060. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW191500 | SOUTH MARSH ISLAND 105 #A-21 ST OCSG 17938 | EA | NEW | | 1 | 47.4 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7669904-01 | | Rack No. C060. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API BRD LONG THREAD | FW191500 | SOUTH MARSH ISLAND 105 #A-21 ST OCSG 17938 | EA | NEW | | 2 | 89.7 | 0 | | | |
| NOV - Amelia | NOV | 7665514-02 | | Rack No. C069. | 2 7/8" & 50# 13CR85 JFE SEAMLESS TUBING, BT5-8 THREAD | FW182003 | SMI-127 B-17 | EA | USED | | 4 | 125.4 | 0 | | | |
| NOV - Amelia | NOV | 7664873-02 | | Rack No. C069. | 2 7/8" & 50# 13CR95 JFE SEAMLESS TUBING, BT5-8 THREAD | FW181009 | ST 67 #6 | EA | USED | | 3 | 95.5 | 0 | | | |
| NOV - Amelia | NOV | 7659991-01 | | Rack No. C247. | 5 1/2" 20.00# P-110 IC  SEAMLESS CASING, TSH 625 THREAD | FW181008 | SM 127 B17 | EA | USED | | 11 | 511.35 | 0 | | | |
| NOV - Amelia | NOV | 7659986-01 | | Rack No. B020. | 5" 18.00# P-110 CY TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 625 THREAD | FW181009 | ST 67 #6 | EA | USED | | 20 | 918.55 | 0 | | | |
| NOV - Amelia | NOV | 7658785-01 | | Rack No. B501. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | NEW | | 1 | 43.45 | 0 | | | |
| NOV - Amelia | NOV | 7658785-05 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | USED | | 2 | 88 | 0 | | | |
| NOV - Amelia | NOV | 7658785-03 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | USED | | 1 | 26.2 | 0 | | | |
| NOV - Amelia | NOV | 7658785-02 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | USED | | 1 | 39.8 | 0 | | | |
| NOV - Amelia | NOV | 7658785-04 | | Rack No. 2-336. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING PUP JOINTS, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | NEW | | 1 | 10.3 | 0 | | | |
| NOV - Amelia | NOV | 7658785-01 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | NEW | | 48 | 2089.05 | 0 | | | |
| NOV - Amelia | NOV | 7653460-03 | | Rack No. H021. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | FW181009 | ST 67 #6 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7653460-01 | | Rack No. H021. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | FW181009 | ST 67 #6 | EA | NEW | | 3 | 128.75 | 0 | | | |
| NOV - Amelia | NOV | 7653460-02 | | Rack No. H021. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, TSH 513 THREAD | FW181009 | ST 67 #6 | EA | UNKNOWN | | 2 | 88 | 0 | | | |
| NOV - Amelia | NOV | 7653460-01 | | Rack No. B501. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | FW181009 | ST 67 #6 | EA | NEW | | 1 | 42.45 | 0 | | | |
| NOV - Amelia | NOV | 7652285-01 | | Rack No. B501. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | NEW | | 3 | 118.2 | 0 | | | |
| NOV - Amelia | NOV | 7652285-03 | | Rack No. EQ19. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7652285-01 | | Rack No. C-O7. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | NEW | | 11 | 441.05 | 0 | | | |
| NOV - Amelia | NOV | 7652285-04 | | Rack No. 2-336. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA PUP JOINTS, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | USED | | 1 | 20 | 0 | | | |
| NOV - Amelia | NOV | 7652285-02 | | Rack No. 2-336. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS CASING PUP JOINTS, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | NEW | | 1 | 19.6 | 0 | | | |
| NOV - Amelia | NOV | 7650597-02 | | Rack No. 2-336. | 16" 65.00# H-40 TMK IPSCO ERW PUP JOINTS, BUTTRESS THREAD | FW181002 | SM 127 B17 | EA | USED | | 1 | 22.3 | 0 | | | |
| NOV - Amelia | NOV | 7650597-03 | | Rack No. B501. | 16" 65.00# H-40 TMK IPSCO ERW CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 | EA | USED | | 1 | 33.2 | 0 | | | |
| NOV - Amelia | NOV | 7650597-01 | | Rack No. B501. | 16" 65.00# H-40 TMK IPSCO ERW CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 | EA | NEW | | 1 | 34.75 | 0 | | | |
| NOV - Amelia | NOV | 7644614-02 | | Rack No. C152. | 2 7/8" & 50# 13CR85 JFE SEAMLESS TUBING, BT5-8 THREAD | FW184011 | SOUTH MARSH ISLAND 149 C4 | EA | NEW | | 6 | 190.65 | 0 | | | |
| NOV - Amelia | NOV | 7639389-03 | | Rack No. C218. | 2 7/8" & 50# 13CR95 JFE SEAMLESS TUBING, BT5-8 THREAD | FW184021 | WO 70 FF | EA | USED | | 5 | 158.6 | 0 | | | |
| NOV - Amelia | NOV | 7634429-02 | | Rack No. B020. | 7" 32.00# P-110 HC TAMSA SEAMLESS CASING, TSH S23 THREAD | FW 181503 | SOUTH MARSH ISLAND 67 #6 ST3 | EA | NEW | | 13 | 604.9 | 0 | | | |
| NOV - Amelia | NOV | 7634429-01 | | Rack No. B020. | 7" 32.00# P-110 HC SIDERCA SEAMLESS CASING, TSH S23 THREAD | FW 181503 | SOUTH MARSH ISLAND 67 #6 ST3 | EA | NEW | | 11 | 501.3 | 0 | | | |
| NOV - Amelia | NOV | 7633847-02 | | Rack No. C069. | 2 7/8" & 50# JFE-13CR-95 JFE SEAMLESS TUBING, BT5-8 THREAD | FW184024 | MAIN PASS 153B | EA | USED | | 3 | 95.05 | 0 | | | |
| NOV - Amelia | NOV | 7629202-01 | | Rack No. C233. | 7 5/8" 29.70# HCP-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 2 | 87.85 | 0 | | | |
| NOV - Amelia | NOV | 7629202-02 | | Rack No. C233. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 4 | 186.4 | 0 | | | |
| NOV - Amelia | NOV | 7629202-01 | | Rack No. C233. | 7 5/8" 29.70# HCP-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 1 | 47.75 | 0 | | | |
| NOV - Amelia | NOV | 7629202-01 | | Rack No. C233. | 7 5/8" 29.70# HCP-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 2 | 95.05 | 0 | | | |
| NOV - Amelia | NOV | 7629202-02 | | Rack No. C233. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 1 | 46.2 | 0 | | | |
| NOV - Amelia | NOV | 7625047-11 | | Rack No. HO20. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, TSH S23 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 6 | 277.5 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. H052. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 10 | 429.5476 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. H052. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. H052. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 19 | 811.2 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. BN01. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 2 | 85.4 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. B021. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 1 | 42.8 | 0 | | | |
| NOV - Amelia | NOV | 7625047-11 | | Rack No. HO20. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, TSH S23 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 2 | 93.5 | 0 | | | |
| NOV - Amelia | NOV | 7625043-05 | | Rack No. EQ09. | 16" 65.00# H-40 TENARIS ERW CASING, BUTTRESS THREAD | FW 181002 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 5 | 212.9 | 0 | | | |
| NOV - Amelia | NOV | 7589458-01 | | Rack No. MIT06. | 10 1/8" 79.22# JFE-125T JFE SEAMLESS CASING, SUJII THREAD | 201560 | KATMAI 2 | EA | NEW | | 84 | 3799.25 | 0 | | | |
| NOV - Amelia | NOV | 7589458-02 | | Rack No. MIT06. | 10 1/8" 79.22# JFE-125T JFE SEAMLESS CASING, SUJII THREAD | 201560 | KATMAI 2 | EA | NEW | | 2 | 91.2 | 0 | | | |
| NOV - Amelia | NOV | 7589458-03 | | Rack No. SHO4. | 11 7/8" 71.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | 201560 | KATMAI 2 | EA | NEW | | 5 | 223.75 | 0 | | | |
| NOV - Amelia | NOV | 7589458-03 | | Rack No. SHO4. | 11 7/8" 71.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | 201560 | KATMAI 2 | EA | NEW | | 42 | 1918.95 | 0 | | | |
| NOV - Amelia | NOV | 7589458-03 | | Rack No. SHO4. | 11 7/8" 71.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | 201560 | KATMAI 2 | EA | NEW | | 1 | 48.8 | 0 | | | |
| NOV - Amelia | NOV | 7576903-01 | | Rack No. C152. | 2 7/8" & 50# L-80 TSC SEAMLESS TUBING, BT5-8PR THREAD | FW177024 | EB 160 A-23 | EA | NEW | | 1 | 31.25 | 0 | | | |
| NOV - Amelia | NOV | 7555431-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TAMSA SEAMLESS CASING, API BRD LONG THREAD | | EW 873 A-20 ST LOBSTER RIG | EA | NEW | | 5 | 230.7 | 0 | | | |
| NOV - Amelia | NOV | 7526643-01 | | Rack No. A037. | 2 7/8" & 50# 13CR85 JFE SEAMLESS TUBING, BT5-8 THREAD | FW162000 | VR 78 A2 | EA | NEW | | 26 | 824.8 | 0 | | | |
| NOV - Amelia | NOV | 7526643-02 | | Rack No. C062. | 2 7/8" & 50# 13CR85 JFE SEAMLESS TUBING, BT5-8 THREAD | FW162000 | VR 78 A2 | EA | USED | | 5 | 158.6 | 0 | | | |
| NOV - Amelia | NOV | 7520329-01 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M STAR SEAMLESS CASING, VAM TOP HT THREAD | FW161500 | VR 78 A2 | EA | NEW | | 6 | 276.1 | 0 | | | |
| NOV - Amelia | NOV | 7520329-01 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M STAR SEAMLESS CASING, VAM TOP HT THREAD | FW161500 | VR 78 A2 | EA | NEW | | 1 | 46.1 | 0 | | | |
| NOV - Amelia | NOV | 7506413-03 | | Rack No. MIT06. | 7 1/16" 40.40# HP2-13CR115 JFE SEAMLESS CASING, PLAIN END THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 12 | 528 | 0 | | | |
| NOV - Amelia | NOV | 7506413-04 | | Rack No. SHO4. | 5 1/2" 29.70# HP213CR115 JFE SEAMLESS CASING, PLAIN END UPSET THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 6 | 264 | 0 | | | |
| NOV - Amelia | NOV | 7506413-02 | | Rack No. SHO4. | 6.626" 57.39# HP2-13CR115 JFE SEAMLESS CPLG STOCK, PLAIN END THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 1 | 5 | 0 | | | |
| NOV - Amelia | NOV | 7506413-01 | | Rack No. SHO4. | 6.504" 1.0" VM-110 13CR55 GERMANY SEAMLESS CPLG STOCK, PLAIN END THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 8 | 144 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7487102-01 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW155042 | MP 140 A SWD #1/WORKOVER BAYOU TECHE | EA | NEW | | 3 | 120.5 | 0 | | |
| NOV - Amelia | NOV | 7487102-02 | | Rack No. C111. | 3 1/2" 9.30# L-80 1% CR TMK SEAMLESS TUBING, API 8RD EUE THREAD | FW155042 | MP 140 A SWD #1/WORKOVER BAYOU TECHE | EA | NEW | | 6 | 192.05 | 0 | | |
| NOV - Amelia | NOV | 7487102-01 | | Rack No. C255. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW155042 | MP 140 A SWD #1/WORKOVER BAYOU TECHE | EA | NEW | | 4 | 163.45 | 0 | | |
| NOV - Amelia | NOV | 7487099-01 | | Rack No. C111. | 3 1/2" 9.30# L-80 1% CR TMK SEAMLESS TUBING, API 8RD EUE THREAD | FW155043 | MP 140 A SWD #2 OCSG GPLD | EA | NEW | | 5 | 160.2 | 0 | | |
| NOV - Amelia | NOV | 7484107-01 | | Rack No. CEFPUP. | OTHER,    THREAD | FW155042 | MP 140 #1 GBRS | EA | USED | | 1 | 0 | 0 | | |
| NOV - Amelia | NOV | 7469717-01 | | Rack No. C152. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BTS-8 THREAD | GO164000 | W-D. 70 E #1 ST | EA | NEW | | 28 | 889.35 | 0 | | |
| NOV - Amelia | NOV | 7464248-04 | | Rack No. C255. | 5 1/2" 23.00# P-110 EC V&M SEAMLESS CASING PUP JOINTS, STL THREAD | FW164003 | EI 354 A #6 ST1 BP1 | EA | NEW | | 1 | 47.3 | 0 | | |
| NOV - Amelia | NOV | 7464248-03 | | Rack No. C255. | 5 1/2" 20.00# HCP-110 V&M SEAMLESS PUP JOINTS, STL THREAD | FW164003 | EI 354 A #6 ST1 BP1 | EA | NEW | | 1 | 19.65 | 0 | | |
| NOV - Amelia | NOV | 7460139-01 | | Rack No. 2-109. | 11 7/8" 70.20# VM-125-HC VALLOUREC SEAMLESS CASING, PLAIN END THREAD | | INVENTORY | EA | NEW | | 121 | 5396.2 | 0 | | |
| NOV - Amelia | NOV | 7458724-02 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 1 | 35.65 | 0 | | |
| NOV - Amelia | NOV | 7458724-01 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U S STEEL SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 3 | 134.25 | 0 | | |
| NOV - Amelia | NOV | 7458724-02 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 2 | 76.4 | 0 | | |
| NOV - Amelia | NOV | 7458724-03 | | Rack No. E033. | 5 1/2" 20.00# P-110 V&M STAR SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 1 | 46.1 | 0 | | |
| NOV - Amelia | NOV | 7458724-01 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U S STEEL SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 8 | 361.8 | 0 | | |
| NOV - Amelia | NOV | 7458724-05 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 4 | 171.85 | 0 | | |
| NOV - Amelia | NOV | 7458724-05 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 9 | 408.8 | 0 | | |
| NOV - Amelia | NOV | 7458724-02 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 11 | 429.55 | 0 | | |
| NOV - Amelia | NOV | 7458724-01 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U S STEEL SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 1 | 45.6 | 0 | | |
| NOV - Amelia | NOV | 7458405-01 | | Rack I3-166. | 10 3/4" 72.40# Q-125 U S STEEL SEAMLESS CASING, PLAIN END THREAD | | | EA | NEW | | 153 | 6048.1 | 0 | | |
| NOV - Amelia | NOV | 7444262-03 | | Rack No. C023. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, DUTCHMAN/CUT-OFF PIN THREAD | FW154025 | E.I. 316 A #11 | EA | USED | | 1 | 27.4 | 0 | | |
| NOV - Amelia | NOV | 7444262-01 | | Rack No. D079. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | E.I. 316 A #11 | EA | NEW | | 1 | 46.95 | 0 | | |
| NOV - Amelia | NOV | 7444262-04 | | Rack No. C024. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING,    THREAD | FW154025 | E.I. 316 A #11 | EA | USED | | 1 | 19.1 | 0 | | |
| NOV - Amelia | NOV | 7439076-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 2 | 92.3 | 0 | | |
| NOV - Amelia | NOV | 7439076-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 24 | 1121.1 | 0 | | |
| NOV - Amelia | NOV | 7439076-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 22 | 1020.65 | 0 | | |
| NOV - Amelia | NOV | 7437245-01 | | Rack No. D006. | 7 5/8" 33.70# P-110 RY VALLOUREC SEAMLESS CASING, TSH S23 THREAD | FW154025 | E.I. 316 #A-11 OCSG 5040 | EA | UNKNOWN | | 1 | 34.1 | 0 | | |
| NOV - Amelia | NOV | 7437245-02 | | Rack No. C051. | OTHER,    THREAD | FW154025 | E.I. 316 #A-11 OCSG 5040 | EA | USED | | 1 | 0 | 0 | | |
| NOV - Amelia | NOV | 7434675-01 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 1 | 45.25 | 0 | | |
| NOV - Amelia | NOV | 7434675-01 | | Rack No. E028. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 79 | 3639.75 | 0 | | |
| NOV - Amelia | NOV | 7430303-03 | | Rack No. E060. | 7 5/8" 33.70# HCP-110  SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 9 | 417.05 | 0 | | |
| NOV - Amelia | NOV | 7430303-03 | | Rack No. E060. | 7 5/8" 33.70# HCP-110  SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 9 | 416.3 | 0 | | |
| NOV - Amelia | NOV | 7430303-01 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 16 | 657.25 | 0 | | |
| NOV - Amelia | NOV | 7430303-01 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 25 | 1104.95 | 0 | | |
| NOV - Amelia | NOV | 7430303-02 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TENARIS-TAMSA SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 12 | 552.5 | 0 | | |
| NOV - Amelia | NOV | 7430303-04 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 8 | 353.25 | 0 | | |
| NOV - Amelia | NOV | 7426924-08 | | Rack No. E017. | 4 1/2" 17.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 10 | 0 | | |
| NOV - Amelia | NOV | 7426924-03 | | Rack No. WKRR02. | 7 1/16" X 5 1/2" 40.40# 29.70# (70.10#) HP213CR115(O) HP213CR115(I) SEAMLESS V/T, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 8 | 291.12 | 0 | | |
| NOV - Amelia | NOV | 7426924-09 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC  COUPLINGS,    THREAD | 203302 | MC 948 #2 | EA | NEW | | 2 | 0 | 0 | | |
| NOV - Amelia | NOV | 7426924-11 | | Rack No. WKRR02. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | USED | | 4 | 181.5 | 0 | | |
| NOV - Amelia | NOV | 7426924-07 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 3 | 12 | 0 | | |
| NOV - Amelia | NOV | 7426924-07 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 4 | 8 | 0 | | |
| NOV - Amelia | NOV | 7426924-07 | | Rack No. SH02. | 5 1/2" 26.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 14 | 56 | 0 | | |
| NOV - Amelia | NOV | 7426924-10 | | Rack No. SH04. | 5 1/2" 26.00# 13CRS110  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 20 | 0 | | |
| NOV - Amelia | NOV | 7426924-02 | | Rack No. WKRR02. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 40 | 1806.3 | 0 | | |
| NOV - Amelia | NOV | 7426924-09 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC  COUPLINGS,    THREAD | 203302 | MC 948 #2 | EA | NEW | | 30 | 0 | 0 | | |
| NOV - Amelia | NOV | 7426924-08 | | Rack No. E017. | 4 1/2" 17.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 4 | 0 | | |
| NOV - Amelia | NOV | 7426924-04 | | Rack No. SH04. | 5 1/2" 29.70# 13CR115  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 15 | 0 | | |
| NOV - Amelia | NOV | 7426924-04 | | Rack No. SH04. | 5 1/2" 29.70# 13CR115  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 20 | 0 | | |
| NOV - Amelia | NOV | 7415765-01 | | Rack No. A049. | 2 7/8" 7.90# 13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | FW155061 | EI 136 JA-4 BP1 | EA | NEW | | 10 | 315.05 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7410843-04 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLJII THREAD | FW151506 | E.I. 136 JA #2 | EA | USED | | 1 | 43.55 | 0 | | | |
| NOV - Amelia | NOV | 7410843-02 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 1 | 43.6 | 0 | | | |
| NOV - Amelia | NOV | 7410843-05 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | E.I. 136 JA #2 | EA | USED | | 2 | 88.5 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLJII THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 2 | 81.65 | 0 | | | |
| NOV - Amelia | NOV | 7410843-02 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 10 | 438.55 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLJII THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 1 | 43.7 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLJII THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 13 | 559.25 | 0 | | | |
| NOV - Amelia | NOV | 7410843-03 | | Rack No. H005. | OTHER,   THREAD | FW151506 | E.I. 136 JA #2 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLJII THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 2 | 84.65 | 0 | | | |
| NOV - Amelia | NOV | 7409904-01 | | Rack No. C134. | 3 1/2" 12.95# HP1-13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | FW152006 | E.I 136 JA #2 | EA | NEW | | 44 | 1394.95 | 0 | | | |
| NOV - Amelia | NOV | 7397639-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLJII THREAD | FW151506 | EI 136 #JA-2 ST1 OCSG 3152 | EA | NEW | | 11 | 484.85 | 0 | | | |
| NOV - Amelia | NOV | 7395742-03 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | EI 136 JA #2 | EA | USED | | 1 | 39 | 0 | | | |
| NOV - Amelia | NOV | 7395742-04 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | EI 136 JA #2 | EA | USED | | 1 | 28 | 0 | | | |
| NOV - Amelia | NOV | 7391991-01 | | Rack No. C233. | 7" 37.29# Q-125 V&M SEAMLESS CASING, STL THREAD | FW151506 | E.I.136 JA #2 | EA | NEW | | 6 | 252.55 | 0 | | | |
| NOV - Amelia | NOV | 7391991-03 | | Rack No. MOC1A. | 9 5/8" 53.50# P-110 EC V&M SEAMLESS CASING, CUT OFF PIN THREAD | FW151506 | E.I.136 JA #2 | EA | USED | | 1 | 46.05 | 0 | | | |
| NOV - Amelia | NOV | 7391991-02 | | Rack No. EP18. | 9 5/8" 53.50# P-110 EC V&M SEAMLESS CASING, CUT OFF PIN THREAD | FW151506 | E.I.136 JA #2 | EA | USED | | 1 | 49.6 | 0 | | | |
| NOV - Amelia | NOV | 7391991-01 | | Rack No. C233. | 7" 37.29# Q-125 V&M SEAMLESS CASING, STL THREAD | FW151506 | E.I.136 JA #2 | EA | NEW | | 44 | 1923.75 | 0 | | | |
| NOV - Amelia | NOV | 7390965-01 | | Rack No. B020. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | 143752 | GUNFLINT 948-4 | EA | UNKNOWN | | 2 | 90.45 | 0 | | | |
| NOV - Amelia | NOV | 7384927-03 | | Rack No. E060. | OTHER,   THREAD | FW151006 | EI 136 JA #2 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7384927-01 | | Rack No. E079. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 1 | 45.65 | 0 | | | |
| NOV - Amelia | NOV | 7384927-01 | | Rack No. E079. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 1 | 44.75 | 0 | | | |
| NOV - Amelia | NOV | 7384927-02 | | Rack No. E060. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 6 | 262.75 | 0 | | | |
| NOV - Amelia | NOV | 7384927-02 | | Rack No. E077. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 1 | 22.15 | 0 | | | |
| NOV - Amelia | NOV | 7384927-01 | | Rack No. E060. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 2 | 87.25 | 0 | | | |
| NOV - Amelia | NOV | 7384484-01 | | Rack No. WKRK02. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | 143752 | GUNFLINT MC 948 #4 OCSG 28030 | EA | NEW | | 46 | 1984.82 | 0 | | | |
| NOV - Amelia | NOV | 7375553-01 | | Rack No. E045. | 13 3/8" 68.00# NT80LHE NSSMC ERW CASING, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 2 | 87.3 | 0 | | | |
| NOV - Amelia | NOV | 7375553-03 | | Rack No. H004. | 13 3/8" 68.00# NT-80HE TENARIS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 2 | 47.6 | 0 | | | |
| NOV - Amelia | NOV | 7375553-03 | | Rack No. H004. | 13 3/8" 68.00# NT-80HE TENARIS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 1 | 20.25 | 0 | | | |
| NOV - Amelia | NOV | 7375553-03 | | Rack No. H004. | 13 3/8" 68.00# NT-80HE TENARIS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 1 | 20.3 | 0 | | | |
| NOV - Amelia | NOV | 7375553-02 | | Rack No. EP18. | 13 3/8" 68.00# NT80LHE TENARIS SEAMLESS CASING, DUTCHMAN/CUT-OFF PIN THREAD | FW151006 | EI 136 JA # 2 | EA | USED | | 1 | 44.5 | 0 | | | |
| NOV - Amelia | NOV | 7375553-04 | | Rack No. EP17. | 13 3/8" 68.00# NT80LHE TENARIS SEAMLESS CASING, CUT OFF PIN THREAD | FW151006 | EI 136 JA # 2 | EA | USED | | 1 | 18 | 0 | | | |
| NOV - Amelia | NOV | 7375553-02 | | Rack No. EQ17. | 13 3/8" 68.00# NT80LHE TENARIS SEAMLESS CASING, DUTCHMAN/CUT-OFF PIN THREAD | FW151006 | EI 136 JA # 2 | EA | USED | | 1 | 44.5 | 0 | | | |
| NOV - Amelia | NOV | 7373478-04 | | Rack No. EP18. | 18 5/8" 87.50# J-55 NIPPON SEAMLESS CASING, BUTTRESS THREAD | FW151006 | EI 136 JA #2 | EA | USED | | 1 | 24 | 0 | | | |
| NOV - Amelia | NOV | 7373478-03 | | Rack No. EP17. | 18 5/8" 87.50# J-55 NIPPON SEAMLESS CASING, DUTCHMAN THREAD | FW151006 | EI 136 JA #2 | EA | USED | | 2 | 75 | 0 | | | |
| NOV - Amelia | NOV | 7363520-01 | | Rack No. C037. | 5 1/2" 17# P-110 TENARIS SEAMLESS CASING, TSH 511 THREAD | | INVENTORY CODE: 8000.156 | EA | NEW | | 97 | 4578.35 | 0 | | | |
| NOV - Amelia | NOV | 7361437-03 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 U S STEEL SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY 8000.156 | EA | NEW | | 5 | 231.35 | 0 | | | |
| NOV - Amelia | NOV | 7361437-02 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY 8000.156 | EA | NEW | | 9 | 414.65 | 0 | | | |
| NOV - Amelia | NOV | 7361437-01 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY 8000.156 | EA | NEW | | 109 | 5033.9544 | 0 | | | |
| NOV - Amelia | NOV | 7351051-02 | | Rack No. C140. | OTHER,   THREAD | FW151506 | E.I. 136 #JA-2 ST1 OCSG:3152 | EA | USED | | 2 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7351051-01 | | Rack No. C161. | OTHER,   THREAD | FW151506 | E.I. 136 #JA-2 ST1 OCSG:3152 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7351051-01 | | Rack No. C161. | OTHER,   THREAD | FW151506 | E.I. 136 #JA-2 ST1 OCSG:3152 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7350949-01 | | Rack No. MIT02. | 5 1/2" 29.70# HP2-13CR115 JFE SEAMLESS CASING, PLAIN END UPSET THREAD | FW151506 | CHERRY ISLAND VESSEL | EA | NEW | | 12 | 430.747 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 1 | 47 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 1 | 42.6 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 10 | 451.5 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 4 | 170.905 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 2 | 90.85 | 0 | | | |
| NOV - Amelia | NOV | 7347176-04 | | Rack No. B020. | 4 1/2" 15.50# HP1-13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | 142980 | MC 782 DANTZLER #1 XT-SET | EA | USED | | 2 | 78.05 | 0 | | | |
| NOV - Amelia | NOV | 7341206-02 | | Rack No. EQ08. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 1 | 46.7 | 0 | | | |
| NOV - Amelia | NOV | 7340778-02 | | Rack No. I2TP-07. | 7" 29.00# P-110 TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW152001 | MAIN PASS 153 B #10 ST3, ENSCO 87 | EA | NEW | | 1 | 21.25 | 0 | | | |
| NOV - Amelia | NOV | 7340778-04 | | Rack No. I2TP-07. | 7" 29.00# TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW152001 | MAIN PASS 153 B #10 ST3, ENSCO 87 | EA | NEW | | 1 | 20.75 | 0 | | | |
| NOV - Amelia | NOV | 7340778-01 | | Rack No. HO53. | 7" 29.00# P-110 U S STEEL SEAMLESS CASING, API 8RD LONG THREAD | FW152001 | MAIN PASS 153 B #10 ST3, ENSCO 87 | EA | NEW | | 7 | 314.2 | 0 | | | |
| NOV - Amelia | NOV | 7339262-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLJII THREAD | FW151506 | EUGENE ISLAND 136 #JA-2 ST1 OCS-G 3156 | EA | NEW | | 294 | 12960.35 | 0 | | | |
| NOV - Amelia | NOV | 7339262-02 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLJII THREAD | FW151506 | EUGENE ISLAND 136 #JA-2 ST1 OCS-G 3156 | EA | NEW | | 1 | 45.1 | 0 | | | |
| NOV - Amelia | NOV | 7339262-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLJII THREAD | FW151506 | EUGENE ISLAND 136 #JA-2 ST1 OCS-G 3156 | EA | NEW | | 56 | 2468.3045 | 0 | | | |
| NOV - Amelia | NOV | 7339262-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLJII THREAD | FW151506 | EUGENE ISLAND 136 #JA-2 ST1 OCS-G 3156 | EA | NEW | | 1 | 43.75 | 0 | | | |
| NOV - Amelia | NOV | 7339239-01 | | Rack No. EN04. | 7" 41.00# V-150 U S STEEL SEAMLESS CASING, STL THREAD | FW151506 | EUGENE ISLAND 136 #JA-2 ST1 OCS-G 3156 | EA | NEW | | 56 | 2620.9 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #JA-2 ST1 OSC-G 3156 | EA | NEW | | 5 | 222.2 | 0 | | | |
| NOV - Amelia | NOV | 7339201-03 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #JA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 44.65 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #JA-2 ST1 OSC-G 3156 | EA | NEW | | 6 | 272 | 0 | | | |

93

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7339201-05 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M STAR SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 44.8 | 0 | | | |
| NOV - Amelia | NOV | 7339201-04 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 SIDERCA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 41.75 | 0 | | | |
| NOV - Amelia | NOV | 7339201-05 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M STAR SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 3 | 131.35 | 0 | | | |
| NOV - Amelia | NOV | 7339201-02 | | Rack No. EP19. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS PUP JOINTS, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 23 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 4 | 182.7 | 0 | | | |
| NOV - Amelia | NOV | 7339201-03 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 4 | 176.65 | 0 | | | |
| NOV - Amelia | NOV | 7339201-04 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 SIDERCA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 2 | 92.45 | 0 | | | |
| NOV - Amelia | NOV | 7339201-04 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 SIDERCA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 45.8 | 0 | | | |
| NOV - Amelia | NOV | 7339201-01 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 4 | 176.75 | 0 | | | |
| NOV - Amelia | NOV | 7339201-03 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 6 | 263.45 | 0 | | | |
| NOV - Amelia | NOV | 7339201-01 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 11 | 497.2 | 0 | | | |
| NOV - Amelia | NOV | 7339201-01 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 5 | 227.8 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 28 | 1255.4 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 6 | 275.45 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 46 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 45.3 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 3 | 135.95 | 0 | | | |
| NOV - Amelia | NOV | 7339176-02 | | Rack No. EQ08. | 9 5/8" 53.30# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OCS-G 3156 | EA | NEW | | 3 | 137.25 | 0 | | | |
| NOV - Amelia | NOV | 7337780-01 | | Rack No. MIT02. | 7 1/16" 40.40# HP2-13CR115 JFE SEAMLESS CASING, PLAIN END THREAD | | VESSEL: "GLORIOUS HOPE" | EA | NEW | | 1 | 35.95 | 0 | | | |
| NOV - Amelia | NOV | 7337780-01 | | Rack No. MIT02. | 7 1/16" 40.40# HP2-13CR115 JFE SEAMLESS CASING, PLAIN END THREAD | | VESSEL: "GLORIOUS HOPE" | EA | NEW | | 2 | 71.7674 | 0 | | | |
| NOV - Amelia | NOV | 7336043-01 | | Rack No. H062. | 9 5/8" 47.00# P-110 EC V&M SEAMLESS CASING, API-BRD LONG THREAD | FW151001 | MP 153 B-10 ST3 | EA | NEW | | 13 | 564.1 | 0 | | | |
| NOV - Amelia | NOV | 7334105-01 | | Rack No. H051. | 9 5/8" 53.50# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 20 | 946.2 | 0 | | | |
| NOV - Amelia | NOV | 7332033-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 14 | 654.74 | 0 | | | |
| NOV - Amelia | NOV | 7332033-02 | | Rack No. C255. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 1 | 46.78 | 0 | | | |
| NOV - Amelia | NOV | 7332033-02 | | Rack No. C255. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 4 | 184.15 | 0 | | | |
| NOV - Amelia | NOV | 7332033-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 1 | 45.82 | 0 | | | |
| NOV - Amelia | NOV | 7332033-03 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 4 | 181.48 | 0 | | | |
| NOV - Amelia | NOV | 7330358-03 | | Rack No. E045. | 11 3/4" 65.00# Q-125 HC LONE STAR ERW CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG S589 | EA | NEW | | 5 | 200.5 | 0 | | | |
| NOV - Amelia | NOV | 7330358-01 | | Rack No. BP-15. | 11 3/4" 65.00# Q-125 IC TENARIS SEAMLESS CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG S589 | EA | NEW | | 5 | 203.4 | 0 | | | |
| NOV - Amelia | NOV | 7330358-01 | | Rack No. E045. | 11 3/4" 65.00# Q-125 IC TENARIS SEAMLESS CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG S589 | EA | NEW | | 13 | 528.8472 | 0 | | | |
| NOV - Amelia | NOV | 7330358-02 | | Rack No. E045. | 11 3/4" 65.00# HC U S STEEL SEAMLESS CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG S589 | EA | NEW | | 4 | 152.25 | 0 | | | |
| NOV - Amelia | NOV | 7326931-01 | | Rack No. B067. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, TSH S13 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 H&P 206 | EA | NEW | | 259 | 11294.5 | 0 | | | |
| NOV - Amelia | NOV | 7324824-01 | | Rack No. EQ08. | 13 3/8" 72.00# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SR141005 | GC 65 A-23 OCSG S889 | EA | NEW | | 2 | 85.35 | 0 | | | |
| NOV - Amelia | NOV | 7324824-01 | | Rack No. EQ08. | 13 3/8" 72.00# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SR141005 | GC 65 A-23 OCSG S889 | EA | NEW | | 1 | 43.35 | 0 | | | |
| NOV - Amelia | NOV | 7324824-01 | | Rack No. EO-07. | 13 3/8" 72.00# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SR141005 | GC 65 A-23 OCSG S889 | EA | NEW | | 6 | 246.25 | 0 | | | |
| NOV - Amelia | NOV | 7322732-01 | | Rack No. 2-208. | 18 5/8" 99.50# J-55 TATA STEEL ERW CASING, BUTTRESS THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 8 | 337.15 | 0 | | | |
| NOV - Amelia | NOV | 7322732-02 | | Rack No. 2-336. | 18 5/8" 99.50# J-55 TATA STEEL ERW PUP JOINTS, BUTTRESS THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 1 | 21 | 0 | | | |
| NOV - Amelia | NOV | 7322732-02 | | Rack No. 2-336. | 18 5/8" 99.50# J-55 TATA STEEL ERW PUP JOINTS, BUTTRESS THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 1 | 21.4 | 0 | | | |
| NOV - Amelia | NOV | 7321277-02 | | Rack No. E040. | 9 5/8" 53.50# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW141505 | GREEN CANYON 65 A-23 OCSG S889 | EA | NEW | | 9 | 419 | 0 | | | |
| NOV - Amelia | NOV | 7321277-02 | | Rack No. E040. | 9 5/8" 53.50# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW141505 | GREEN CANYON 65 A-23 OCSG S889 | EA | NEW | | 9 | 410.85 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7321277-01 | | Rack No. H062. | 9 5/8" 53.50# P-110 IC TAMSA SEAMLESS CASING, TSH 513 THREAD | FW141505 | GREEN CANYON 65 A-23 OCSG S889 | EA | NEW | | 65 | 3046.44 | 0 | | | |
| NOV - Amelia | NOV | 7316334-05 | | Rack No. WKRK07. | 9 7/8" 62.80# HCQ-125   SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 3 | 0 | | | |
| NOV - Amelia | NOV | 7316334-07 | | Rack No. WKRK07. | 11 3/4" 65.00# Q-125 IC   SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 3 | 0 | | | |
| NOV - Amelia | NOV | 7316334-02 | | Rack No. WKRK07. | 9 7/8" 62.80# HCQ-125   SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 10 | 0 | | | |
| NOV - Amelia | NOV | 7316334-03 | | Rack No. WKRK07. | 9 7/8" 62.80# HCQ-125   SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 3 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 13 | 558.55 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 42.75 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 44.65 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 42.8 | 0 | | | |
| NOV - Amelia | NOV | 7315599-02 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 42 | 0 | | | |
| NOV - Amelia | NOV | 7312660-01 | | Rack No. B005. | 4 1/2" 13.50# HCP-110 TMK SEAMLESS CASING, ULTRA SF THREAD | FW045009 | EI 126 A-5 ST-1 | EA | NEW | | 16 | 676.75 | 0 | | | |
| NOV - Amelia | NOV | 7312632-02 | | Rack No. EQ09. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141017 | SS 274 C22 ST2 | EA | NEW | | 1 | 46 | 0 | | | |
| NOV - Amelia | NOV | 7305798-02 | | Rack No. 2-442. | 9 5/8" 53.50# P-110 TAMSA SEAMLESS PUP JOINTS, TSH 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 22.95 | 0 | | | |
| NOV - Amelia | NOV | 7305798-06 | | Rack No. B061. | 9 5/8" 53.50# P-110 EC V&M SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 7 | 314.8 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. B061. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 24 | 1062.1 | 0 | | | |
| NOV - Amelia | NOV | 7305798-03 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 2 | 92.8 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 4 | 187.7 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 16 | 741.0824 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 37 | 1656.35 | 0 | | | |
| NOV - Amelia | NOV | 7305798-03 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 7 | 329.9 | 0 | | | |
| NOV - Amelia | NOV | 7305798-04 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 44.35 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 47.25 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 8 | 365.55 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 46.3 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 4 | 183 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 9 | 411.05 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 2 | 93.45 | 0 | | | |
| NOV - Amelia | NOV | 7305798-04 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 3 | 133.55 | 0 | | | |
| NOV - Amelia | NOV | 7303373-02 | | Rack No. H062. | 9 7/8" 61.80# Q125-IC TAMSA SEAMLESS CASING, TSH 513 THREAD | SR141003 | GC 64 A26 | EA | UNKNOWN | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7303373-01 | | Rack No. H062. | 9 7/8" 61.80# Q125-IC TAMSA SEAMLESS CASING, TSH 513 THREAD | SR141003 | GC 64 A26 | EA | UNKNOWN | | 16 | 704 | 0 | | | |
| NOV - Amelia | NOV | 7302417-01 | | Rack No. B005. | 7" 32.00# HCP-110 JESCO SEAMLESS CASING, API BRD LONG THREAD | FW141509 | EI 126 A-5 ST-1 | EA | NEW | | 9 | 386.55 | 0 | | | |
| NOV - Amelia | NOV | 7302417-01 | | Rack No. B005. | 7" 32.00# HCP-110 JESCO SEAMLESS CASING, API BRD LONG THREAD | FW141509 | EI 126 A-5 ST-1 | EA | NEW | | 28 | 1161.25 | 0 | | | |
| NOV - Amelia | NOV | 7302417-02 | | Rack No. B020. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141509 | EI 126 A-5 ST-1 | EA | NEW | | 1 | 47.4 | 0 | | | |
| NOV - Amelia | NOV | 7299505-01 | | Rack No. EP12. | 13 3/8" 72.00# P-110 IC TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW141017 | SS 274 C22 ST2 OCSG 1039 | EA | NEW | | 7 | 329.1543 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EMO5. | 10 3/4" 45.50# J-SS TENARIS ERW PUP JOINTS, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 21.5 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. EQ09. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 46.35 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. EQ09. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 43.1 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EMO5. | 10 3/4" 45.50# J-SS TENARIS ERW PUP JOINTS, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 43.25 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. EQ09. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 81.75 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EMO5. | 10 3/4" 45.50# J-SS TENARIS ERW PUP JOINTS, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 42.8 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. B024. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 3 | 130.1 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. B024. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 40.1 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EMO5. | 10 3/4" 45.50# J-SS TENARIS ERW PUP JOINTS, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 21.6 | 0 | | | |
| NOV - Amelia | NOV | 7288869-05 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141S016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 4 | 188.5 | 0 | | | |
| NOV - Amelia | NOV | 7288869-03 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141S016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 45.35 | 0 | | | |
| NOV - Amelia | NOV | 7288869-03 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141S016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 45.1 | 0 | | | |
| NOV - Amelia | NOV | 7288869-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 TAMSA SEAMLESS CASING, API BRD LONG THREAD | FW141S016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 14 | 636.35 | 0 | | | |
| NOV - Amelia | NOV | 7288869-04 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TAMSA SEAMLESS CASING, API BRD LONG THREAD | FW141S016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 91.8 | 0 | | | |
| NOV - Amelia | NOV | 7288869-03 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141S016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 47.4 | 0 | | | |
| NOV - Amelia | NOV | 7288869-04 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TAMSA SEAMLESS CASING, API BRD LONG THREAD | FW141S016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 27 | 1242.49 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7288869-05 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 4 | 188.4 | 0 | | | |
| NOV - Amelia | NOV | 7288869-05 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 7 | 332.25 | 0 | | | |
| NOV - Amelia | NOV | 7288869-01 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TAMSA SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 5 | 229.05 | 0 | | | |
| NOV - Amelia | NOV | 7288869-02 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TPCO SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 44.55 | 0 | | | |
| NOV - Amelia | NOV | 7288816-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY CODE: 8000 156 | EA | NEW | | 64 | 2987.24 | 0 | | | |
| NOV - Amelia | NOV | 7288816-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY CODE: 8000 156 | EA | NEW | | 129 | 6023.01 | 0 | | | |
| NOV - Amelia | NOV | 7288570-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 25 | 1166.75 | 0 | | | |
| NOV - Amelia | NOV | 7287935-01 | | Rack No. B005. | 7" 38.00# HCQ-125-1 TCA SEAMLESS CASING, STL THREAD | 3500.2 | | EA | NEW | | 43 | 1881.7 | 0 | | | |
| NOV - Amelia | NOV | 7282304-02 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | GO141504 | M.P. 311 #B-12 ST OCSG:2213 | EA | NEW | | 25 | 1134.7 | 0 | | | |
| NOV - Amelia | NOV | 7282304-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | GO141504 | M.P. 311 #B-12 ST OCSG:2213 | EA | NEW | | 40 | 1848.4017 | 0 | | | |
| NOV - Amelia | NOV | 7280531-01 | | Rack No. B024. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | GO141004 | MP 311 B12 | EA | NEW | | 1 | 38.65 | 0 | | | |
| NOV - Amelia | NOV | 7280531-01 | | Rack No. B024. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | GO141004 | MP 311 B12 | EA | NEW | | 1 | 38.85 | 0 | | | |
| NOV - Amelia | NOV | 7280393-01 | | Rack No. E060. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | FW141009 | EI 126 A-5 ST-1 | EA | NEW | | 14 | 642.9 | 0 | | | |
| NOV - Amelia | NOV | 7280393-01 | | Rack No. EQ09. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | FW141009 | EI 126 A-5 ST-1 | EA | NEW | | 1 | 47.25 | 0 | | | |
| NOV - Amelia | NOV | 7277189-01 | | Rack No. B057. | 11 7/8" 71.80# Q-125 IC TENARIS SEAMLESS CASING, TSH 523 THREAD | SR141003 | GC 64 A26 | EA | NEW | | 21 | 954.85 | 0 | | | |
| NOV - Amelia | NOV | 7276946-01 | | Rack No. E079. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 44.15 | 0 | | | |
| NOV - Amelia | NOV | 7276946-01 | | Rack No. E079. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 89.1 | 0 | | | |
| NOV - Amelia | NOV | 7276946-01 | | Rack No. E079. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 5 | 221.25 | 0 | | | |
| NOV - Amelia | NOV | 7276946-03 | | Rack No. E077. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 83.7 | 0 | | | |
| NOV - Amelia | NOV | 7276946-02 | | Rack No. EP22. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 6 | 280.02 | 0 | | | |
| NOV - Amelia | NOV | 7276946-05 | | Rack No. E079. | 7" 26.00# HCP-110 V&M SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 45.3 | 0 | | | |
| NOV - Amelia | NOV | 7276946-02 | | Rack No. EP22. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 11 | 513.3639 | 0 | | | |
| NOV - Amelia | NOV | 7276946-03 | | Rack No. EP22. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 4 | 166.85 | 0 | | | |
| NOV - Amelia | NOV | 7276946-04 | | Rack No. EP22. | 7" 26.00# HCP-110 V&M SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 45.45 | 0 | | | |
| NOV - Amelia | NOV | 7276946-05 | | Rack No. EP22. | 7" 26.00# HCP-110 V&M SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 91.45 | 0 | | | |
| NOV - Amelia | NOV | 7276946-02 | | Rack No. EP22. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 46.67 | 0 | | | |
| NOV - Amelia | NOV | 7276946-03 | | Rack No. E077. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 3 | 124.55 | 0 | | | |
| NOV - Amelia | NOV | 7276946-01 | | Rack No. E077. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 94.65 | 0 | | | |
| NOV - Amelia | NOV | 7272382-04 | | Rack No. EP22. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY | EA | NEW | | 2 | 89.1 | 0 | | | |
| NOV - Amelia | NOV | 7272382-01 | | Rack No. H053. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY | EA | NEW | | 1 | 46.9 | 0 | | | |
| NOV - Amelia | NOV | 7272382-01 | | Rack No. H053. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY | EA | NEW | | 3 | 141 | 0 | | | |
| NOV - Amelia | NOV | 7272382-02 | | Rack No. EP22. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY | EA | NEW | | 3 | 139.95 | 0 | | | |
| NOV - Amelia | NOV | 7272382-03 | | Rack No. EP22. | 7" 26.00# P-110 EC V&M STAR SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY | EA | NEW | | 1 | 41.85 | 0 | | | |
| NOV - Amelia | NOV | 7272382-02 | | Rack No. EP22. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API BRD LONG THREAD | | INVENTORY | EA | NEW | | 6 | 249.6 | 0 | | | |
| NOV - Amelia | NOV | 7261939-01 | | Rack No. E028. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | GO-14-1001-DH | MP 311 A-13 ST-2 | EA | NEW | | 3 | 138.7269 | 0 | | | |
| NOV - Amelia | NOV | 7244543-05 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U S STEEL SEAMLESS CASING, STL THREAD | TBA | MAIN PASS 311 A13 S/T | EA | NEW | | 1 | 45.4 | 0 | | | |
| NOV - Amelia | NOV | 3679539-02 | | Rack No. 2-336. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API BRD LONG THREAD | FW141502 | EI-187 #2 | EA | NEW | | 1 | 23.15 | 0 | | | |
| NOV - Amelia | NOV | 3679539-02 | | Rack No. 2-336. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API BRD LONG THREAD | FW141502 | EI-187 #2 | EA | NEW | | 1 | 23.15 | 0 | | | |
| NOV - Amelia | NOV | 3675138-01 | | Rack No. E028. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141004 | S.S.193 A6 ST#5 OCSG:13917 | EA | NEW | | 3 | 138.25 | 0 | | | |
| NOV - Amelia | NOV | 3675138-02 | | Rack No. E028. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141004 | S.S.193 A6 ST#5 OCSG:13917 | EA | NEW | | 21 | 991.6 | 0 | | | |
| NOV - Amelia | NOV | 3673667-02 | | Rack No. B021. | 7" 32.00# HCP-110 TENARIS-ALGOMA SEAMLESS CASING, API BRD LONG THREAD | FW141511 | E. CAMERON 172 #2 OCSG 178S8 | EA | NEW | | 10 | 473.1 | 0 | | | |
| NOV - Amelia | NOV | 3673667-01 | | Rack No. B021. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141511 | E. CAMERON 172 #2 OCSG 178S8 | EA | NEW | | 16 | 752.05 | 0 | | | |
| NOV - Amelia | NOV | 3669409-01 | | Rack No. B024. | 10 3/4" 45.50# HCN-80 TPCO SEAMLESS CASING, BUTTRESS THREAD | SA-14-0006-DH | MP 153 B-3 OCSG:1967 | EA | NEW | | 9 | 402.55 | 0 | | | |
| NOV - Amelia | NOV | 3669409-01 | | Rack No. EP16. | 10 3/4" 45.50# HCN-80 TPCO SEAMLESS CASING, BUTTRESS THREAD | SA-14-0006-DH | MP 153 B-3 OCSG:1967 | EA | NEW | | 1 | 46.5 | 0 | | | |
| NOV - Amelia | NOV | 3669409-01 | | Rack No. B024. | 10 3/4" 45.50# HCN-80 TPCO SEAMLESS CASING, BUTTRESS THREAD | SA-14-0006-DH | MP 153 B-3 OCSG:1967 | EA | NEW | | 4 | 179.3 | 0 | | | |
| NOV - Amelia | NOV | 3669375-01 | | Rack No. MIT02. | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) JFE SEAMLESS VIT, V4M DRG NA THREAD | | DANTZLER WELLS | EA | USED | | 1 | 39.6 | 0 | | | |
| NOV - Amelia | NOV | 3652486-02 | | Rack No. B040. | 5" 18.00# P-110 EC V&M SEAMLESS CASING, TSH 513 THREAD | SG-13-0001-CC | MP 302 B-19 | EA | NEW | | 5 | 226.1 | 0 | | | |
| NOV - Amelia | NOV | 3651026-02 | | Rack No. E044. | 13 3/8" 72.00# HCP-110 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW141002 | EI 187 #2 OCSG 10736 | EA | NEW | | 1 | 42.65 | 0 | | | |
| NOV - Amelia | NOV | 3651026-01 | | Rack No. E044. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | FW141002 | EI 187 #2 OCSG 10736 | EA | NEW | | 1 | 38.1 | 0 | | | |
| NOV - Amelia | NOV | 3648959-05 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 2 | 96.7 | 0 | | | |
| NOV - Amelia | NOV | 3648959-06 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 1 | 51 | 0 | | | |
| NOV - Amelia | NOV | 3648959-05 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 6 | 292.35 | 0 | | | |
| NOV - Amelia | NOV | 3648959-07 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 1 | 48.6 | 0 | | | |
| NOV - Amelia | NOV | 3648959-12 | | Rack No. EP19. | 9 5/8" 53.50# HCP-110 TAMSA SEAMLESS PUP JOINTS, TSH 513 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 1 | 23.1 | 0 | | | |
| NOV - Amelia | NOV | 3648910-02 | | Rack No. WKRK02. | 5 1/2" 23.00# 13 CR-95 JFE SEAMLESS CASING, BT5-6 THREAD | | GC 40 #1 | EA | USED | | 1 | 39.75 | 0 | | | |
| NOV - Amelia | NOV | 3648910-02 | | Rack No. WKRK02. | 5 1/2" 23.00# 13 CR-95 JFE SEAMLESS CASING, BT5-6 THREAD | | GC 40 #1 | EA | USED | | 1 | 39.8 | 0 | | | |
| NOV - Amelia | NOV | 3643733-01 | | Rack No. WKRK02. | OTHER,    THREAD | 142412 | BIG BEND M.C. 698 #1 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 3643733-01 | | Rack No. WKRK02. | OTHER,    THREAD | 142412 | BIG BEND M.C. 698 #1 | EA | NEW | | 10 | 0 | 0 | | | |
| NOV - Amelia | NOV | 3643733-03 | | Rack No. E017. | 5 1/2" 23.00# 13 CR-95 JFE SEAMLESS CASING, BT5-6 THREAD | 142412 | BIG BEND M.C. 698 #1 | EA | NEW | | 8 | 316.45 | 0 | | | |
| NOV - Amelia | NOV | 3643149-01 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 15 | 620.45 | 0 | | | |
| NOV - Amelia | NOV | 3643149-01 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 1 | 40.3 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 3643149-02 | | Rack No. EP17. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG-2722 | EA | NEW | | 1 | 5.3 | 0 | | |
| NOV - Amelia | NOV | 3643149-03 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 JFE SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG-2722 | EA | NEW | | 1 | 42.9 | 0 | | |
| NOV - Amelia | NOV | 3643149-01 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG-2722 | EA | NEW | | 2 | 81.65 | 0 | | |
| NOV - Amelia | NOV | 3643149-02 | | Rack No. EP17. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG-2722 | EA | NEW | | 1 | 10.3 | 0 | | |
| NOV - Amelia | NOV | 3641841-01 | | Rack No. EP18. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SG-13-0001-DH | MP 302 B-19 | EA | NEW | | 1 | 46 | 0 | | |
| NOV - Amelia | NOV | 3641817-01 | | Rack No. EP16. | 9 5/8" 53.30# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 1 | 46.1 | 0 | | |
| NOV - Amelia | NOV | 3641146-01 | | Rack No. EP16. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0045-DH | VR 262 A-6 ST-1 | EA | NEW | | 1 | 46.95 | 0 | | |
| NOV - Amelia | NOV | 3634794-01 | | Rack No. B061. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 9 | 407.65 | 0 | | |
| NOV - Amelia | NOV | 3634794-03 | | Rack No. B501-B. | 13 3/8" 68.00# J-55 HYUNDAI ERW PUP JOINTS, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 2 | 43.25 | 0 | | |
| NOV - Amelia | NOV | 3634794-01 | | Rack No. B501. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 2 | 88.9 | 0 | | |
| NOV - Amelia | NOV | 3634794-01 | | Rack No. B501. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 1 | 45.5 | 0 | | |
| NOV - Amelia | NOV | 3632545-01 | | Rack No. B069-B. | 20" 106.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 1 | 43.2 | 0 | | |
| NOV - Amelia | NOV | 3632196-01 | | Rack No. B069-B. | 20" 106.50# J-55 SALZGITTER  ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 OCSG-32263 | EA | NEW | | 3 | 130.3 | 0 | | |
| NOV - Amelia | NOV | 3631381-01 | | Rack No. E028. | 7" 29.00# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-14-0002-DC | M.P. 153 #B-10 ST3 OCSG-1966 | EA | NEW | | 24 | 994.8 | 0 | | |
| NOV - Amelia | NOV | 3631381-03 | | Rack No. 2-442. | 7" 29.00# P-110 U S STEEL SEAMLESS PUP JOINTS, API 8RD LONG THREAD | SA-14-0002-DC | M.P. 153 #B-10 ST3 OCSG-1966 | EA | NEW | | 1 | 23.07 | 0 | | |
| NOV - Amelia | NOV | 3631311-01 | | Rack No. B057. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH 523 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 18 | 822.3794 | 0 | | |
| NOV - Amelia | NOV | 3631280-02 | | Rack No. B501. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 6 | 254.65 | 0 | | |
| NOV - Amelia | NOV | 3631280-01 | | Rack No. B501. | 16" 94.81# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 1 | 36.35 | 0 | | |
| NOV - Amelia | NOV | 3631280-01 | | Rack No. B501. | 16" 94.81# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 4 | 164.1 | 0 | | |
| NOV - Amelia | NOV | 3631274-01 | | Rack No. B501. | 16" 97.00# HCN-80 V&M SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 1 | 41.95 | 0 | | |
| NOV - Amelia | NOV | 3631274-01 | | Rack No. B501. | 16" 97.00# HCN-80 V&M SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 2 | 90.85 | 0 | | |
| NOV - Amelia | NOV | 3631274-01 | | Rack No. B501. | 16" 97.00# HCN-80 V&M SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 1 | 44.5 | 0 | | |
| NOV - Amelia | NOV | 3631274-02 | | Rack No. B501. | 16" 97.00# HCN-80 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 1 | 38.75 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. E045. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 2 | 81.55 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. B501. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 1 | 40.8 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. BP-15. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 10 | 407.75 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. B501. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 6 | 255.1 | 0 | | |
| NOV - Amelia | NOV | 3620413-04 | | Rack No. E077. | 7" 29.00# P-110 U S STEEL SEAMLESS PUP JOINTS, API 8RD LONG THREAD | SA-14-0002-DC | MAIN PASS 153 #B-10 ST#3 OCSG 1966 | EA | NEW | | 1 | 23 | 0 | | |
| NOV - Amelia | NOV | 3620015-01 | | Rack No. EP12. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SA-13-0031-DH | HI A596 #D-6 | EA | NEW | | 22 | 908.5 | 0 | | |
| NOV - Amelia | NOV | 3619168-03 | | Rack No. 2-442. | 7" 29.00# HCP-110 TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | SA-14-0002-DC | MAIN PASS 153 B-10 ST#3 OCSG 1966 | EA | NEW | | 1 | 21.8 | 0 | | |
| NOV - Amelia | NOV | 3616810-01 | | Rack No. B040. | 4 1/2" 18.97# Q-125 HCE VOEST ALP SEAMLESS CASING, SLIJII THREAD | SA-13-0024-DH | EI 136 JA-4 | EA | NEW | | 8 | 324.3 | 0 | | |
| NOV - Amelia | NOV | 3615844-01 | | Rack No. EP12. | 13 3/8" 72.00# P-110 V&M SEAMLESS CASING, HYD 513 THREAD | SA-13-0040-DH | WC 210 #1 | EA | NEW | | 6 | 252.1 | 0 | | |
| NOV - Amelia | NOV | 3615844-01 | | Rack No. E077. | 13 3/8" 72.00# HCP-110 V&M SEAMLESS CASING, HYD 513 THREAD | SA-13-0040-DH | WC 210 #1 | EA | NEW | | 5 | 209.55 | 0 | | |
| NOV - Amelia | NOV | 3614854-03 | | Rack No. H053. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 2 | 83.6 | 0 | | |
| NOV - Amelia | NOV | 3614854-02 | | Rack No. H053. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 6 | 270.05 | 0 | | |
| NOV - Amelia | NOV | 3614854-01 | | Rack No. H053. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 2 | 83.8 | 0 | | |
| NOV - Amelia | NOV | 3614854-04 | | Rack No. H053. | 7" 26.00# HCP-110 SUMITOMO SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 1 | 40 | 0 | | |
| NOV - Amelia | NOV | 3614854-02 | | Rack No. H053. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 26 | 1165.7226 | 0 | | |
| NOV - Amelia | NOV | 3614751-01 | | Rack No. B069-B. | 20" 169.00# X-56 JFE ERW CASING, BUTTRESS THREAD | SA-13-0031-DH | HI 596 D-6 OCSG-2722 | EA | NEW | | 10 | 444.85 | 0 | | |
| NOV - Amelia | NOV | 3612120-02 | | Rack No. EP2S. | 11 7/8" 71.80# Q-125 IC TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 2 | 91.9 | 0 | | |
| NOV - Amelia | NOV | 3612120-01 | | Rack No. MOC1. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH 523 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 3 | 137.3 | 0 | | |
| NOV - Amelia | NOV | 3612120-01 | | Rack No. MOC1. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH 523 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 10 | 457.85 | 0 | | |
| NOV - Amelia | NOV | 3612120-01 | | Rack No. MOC1. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH 523 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 17 | 777.3 | 0 | | |
| NOV - Amelia | NOV | 3612106-01 | | Rack No. EQ09. | 9 7/8" 61.80# Q-125 IC TAMSA SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 2 | 93.95 | 0 | | |
| NOV - Amelia | NOV | 3612106-01 | | Rack No. EQ08. | 9 7/8" 61.80# Q-125 IC TAMSA SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 1 | 47.5 | 0 | | |
| NOV - Amelia | NOV | 3612106-01 | | Rack No. EQ08. | 9 7/8" 61.80# Q-125 IC TAMSA SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 6 | 281.85 | 0 | | |
| NOV - Amelia | NOV | 3612047-01 | | Rack No. EP2S. | 9 7/8" 62.80# P-110 TAMSA SEAMLESS CASING, HYD 513 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 1 | 46.45 | 0 | | |
| NOV - Amelia | NOV | 3612039-01 | | Rack No. EP17. | 9 7/8" 62.80# Q-125 TAMSA SEAMLESS CASING, HYD 523 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 1 | 45.3333 | 0 | | |
| NOV - Amelia | NOV | 3612039-01 | | Rack No. EP18. | 9 7/8" 62.80# Q-125 TAMSA SEAMLESS CASING, HYD 523 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 2 | 90.67 | 0 | | |
| NOV - Amelia | NOV | 3610913-01 | | Rack No. EP16. | 13 3/8" 70.67# P-110 U S STEEL SEAMLESS CASING, SLX THREAD | PENDING | VERMILLION 262 A-6 ST1 OCSG 34257 | EA | NEW | | 2 | 83 | 0 | | |
| NOV - Amelia | NOV | 3610913-01 | | Rack No. EP16. | 13 3/8" 70.67# P-110 U S STEEL SEAMLESS CASING, SLX THREAD | PENDING | VERMILLION 262 A-6 ST1 OCSG 34257 | EA | NEW | | 3 | 119.75 | 0 | | |
| NOV - Amelia | NOV | 3610856-02 | | Rack No. EP16. | 13 3/8" 72.00# HCP-110 TAMSA SEAMLESS CASING, BUTTRESS THREAD | PENDING | VERMILLION 262 A6 ST1 OCSG 34257 | EA | NEW | | 1 | 45.9 | 0 | | |
| NOV - Amelia | NOV | 3610856-01 | | Rack No. EP16. | 13 3/8" 72.00# HCP-110 TAMSA SEAMLESS CASING, HYD 513 THREAD | PENDING | VERMILLION 262 A6 ST1 OCSG 34257 | EA | NEW | | 3 | 125.3 | 0 | | |
| NOV - Amelia | NOV | 3610856-01 | | Rack No. EP16. | 13 3/8" 72.00# HCP-110 V&M SEAMLESS CASING, HYD 513 THREAD | PENDING | VERMILLION 262 A6 ST1 OCSG 34257 | EA | NEW | | 1 | 44.5 | 0 | | |
| NOV - Amelia | NOV | 3610188-01 | | Rack No. EP22. | 7" 42.70# Q-125 L V&M SEAMLESS CASING, SLIJII THREAD | SA-12-0003-DH | MP 295 #1 OCSG-32263 | EA | NEW | | 1 | 38.9 | 0 | | |
| NOV - Amelia | NOV | 3600237-01 | | Rack No. H053. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0043-DC | EI 125 #R-1 OCSG: S1 | EA | NEW | | 2 | 90.2 | 0 | | |
| NOV - Amelia | NOV | 3601342-01 | | Rack No. C159. | 4 1/2" 15.50# L-80 JFE SEAMLESS TUBING, BTS-6PR THREAD | SA-13-4203 | GIBBSTOWN SWD #1 | EA | NEW | | 12 | 379.4 | 0 | | |
| NOV - Amelia | NOV | 3594307-01 | | Rack No. EP22. | 7" 32.00# HCP-110 VOEST ALP SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0002-CC | HI A596 D-2 ST-1 | EA | NEW | | 9 | 362.1 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 3594287-01 | | Rack No. EP1B. | 9 5/8" 53.50# P-110 EC V&M SEAMLESS CASING, SLX THREAD | SA-13-0002-CC | HI A596 D-2 ST-1 | EA | NEW | | 1 | 44.7 | 0 | | | |
| NOV - Amelia | NOV | 3594279-02 | | Rack No. 2-442. | 13 3/8" 68.00# J-55 TENARIS ERW PUP JOINTS, BUTTRESS THREAD | SA-13-3477-DH | EI 330 D-8 ST | EA | NEW | | 2 | 41.85 | 0 | | | |
| NOV - Amelia | NOV | 3594279-01 | | Rack No. 8061. | 13 3/8" 68.00# J-55 NEXTEEL ERW CASING, BUTTRESS THREAD | SA-13-3477-DH | EI 330 D-8 ST | EA | NEW | | 6 | 271.95 | 0 | | | |
| NOV - Amelia | NOV | 3580472-03 | | Rack No. I3-303. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | SA-13-0026-DH | 55 91 #H2 | EA | NEW | | 1 | 45.5 | 0 | | | |
| NOV - Amelia | NOV | 3580472-02 | | Rack No. I3-303. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | SA-13-0026-DH | 55 91 #H2 | EA | NEW | | 1 | 45 | 0 | | | |
| | | | | | | | EI 330 D-1 ST1 | | | | | | | | | |
| NOV - Amelia | NOV | 3580447-03 | | Rack No. C002. | 13 3/8" 68.00# J-55 TENARIS ERW CASING, BUTTRESS THREAD | | OCSG: 2115 | EA | NEW | | 1 | 43 | 0 | | | |
| | | | | | | | EI 330 D-1 ST1 | | | | | | | | | |
| NOV - Amelia | NOV | 3580447-04 | | Rack No. C002. | 13 3/8" 68.00# J-55 TENARIS ERW CASING, BUTTRESS THREAD | SA-13-0038-DH | OCSG: 2115 | EA | NEW | | 1 | 42.12 | 0 | | | |
| NOV - Amelia | NOV | 3580432-02 | | Rack No. 8024. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | | INVENTORY | EA | NEW | | 2 | 90.38 | 0 | | | |
| NOV - Amelia | NOV | 3580082-01 | | Rack No. C242. | 7" 41.00# V-150 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0024-DH | EI 136 JA-4 | EA | NEW | | 1 | 47.35 | 0 | | | |
| NOV - Amelia | NOV | 3578347-03 | | Rack No. IZTP-07. | 13 3/8" 68.00# HCQ-125 TENARIS ERW PUP JOINTS, BUTTRESS THREAD | SG-13-0011-DH | GI 32 #U-12 ST-1 | EA | NEW | | 1 | 23.85 | 0 | | | |
| NOV - Amelia | NOV | 3576854-01 | | Rack No. EM05. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, STL THREAD | SA-13-0024-DH | EI 136 #JA-4 | EA | NEW | | 16 | 733.15 | 0 | | | |
| | | | | | | | APACHE INVENTORY | | | | | | | | | |
| NOV - Amelia | NOV | 3575043-02 | | Rack No. 2-442. | 7" 26.00# HCP-110 TPCO SEAMLESS PUP JOINTS, API 8RD LONG THREAD | | #3S005 | EA | NEW | | 1 | 23 | 0 | | | |
| NOV - Amelia | NOV | 3574231-01 | | Rack No. EM05. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 6 | 272.4 | 0 | | | |
| NOV - Amelia | NOV | 3574231-05 | | Rack No. EP1B. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 46.2 | 0 | | | |
| NOV - Amelia | NOV | 3574231-01 | | Rack No. EP1B. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 45.4 | 0 | | | |
| NOV - Amelia | NOV | 3574231-02 | | Rack No. EP1B. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 43.85 | 0 | | | |
| NOV - Amelia | NOV | 3574231-01 | | Rack No. EP1B. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 38.8 | 0 | | | |
| NOV - Amelia | NOV | 3570002-01 | | Rack No. EQ09. | 11 7/8" 71.80# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-12-003-DH | MP 295 #1 | EA | NEW | | 1 | 46.15 | 0 | | | |
| NOV - Amelia | NOV | 3563792-01 | | Rack No. E045. | 11 3/4" 65.48# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-12-0003-DH | HI A-596 D-2 ST1 | EA | NEW | | 13 | 549.5 | 0 | | | |
| NOV - Amelia | NOV | 3560733-01 | | Rack No. 8028. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 36 | 1574.4927 | 0 | | | |
| NOV - Amelia | NOV | 3560733-01 | | Rack No. 8028. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 19 | 832.63 | 0 | | | |
| NOV - Amelia | NOV | 3554493-01 | | Rack No. EP17. | 13 5/8" 88.20# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | SA-12-0003-DH | MP 295 #1 | EA | NEW | | 4 | 178.85 | 0 | | | |
| NOV - Amelia | NOV | 3554493-01 | | Rack No. EP17. | 13 5/8" 88.20# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | SA-12-0003-DH | MP 295 #1 | EA | NEW | | 1 | 45.3 | 0 | | | |
| NOV - Amelia | NOV | 3554493-01 | | Rack No. EP17. | 13 5/8" 88.20# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | SA-12-0003-DH | MP 295 #1 | EA | NEW | | 2 | 87.4 | 0 | | | |
| NOV - Amelia | NOV | 3552709-01 | | Rack No. BP-15. | 11 3/4" 69.48# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | 0002-OH / PO# 45000 | | EA | NEW | | 12 | 505.9 | 0 | | | |
| NOV - Amelia | NOV | 3549135-01 | | Rack No. 8070. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0028-DC | SMI 48 E-4 ST-1 | EA | NEW | | 15 | 692.3 | 0 | | | |
| | | | | | | | HIGH ISL. A-596 D-2 | | | | | | | | | |
| NOV - Amelia | NOV | 3548409-01 | | Rack No. E040. | 9 5/8" 53.50# HCQ-125 V&M STAR SEAMLESS CASING, SLX THREAD | SA-13-0002-DH | S/T | EA | NEW | | 21 | 902.2 | 0 | | | |
| NOV - Amelia | NOV | 3546740-01 | | Rack No. EP25. | 13 3/8" 68.00# NT-80    SEAMLESS CASING, GB BUTTRESS THREAD | SA-12-3357 | HI 596 D-2 | EA | NEW | | 1 | 42.5 | 0 | | | |
| NOV - Amelia | NOV | 3539819-01 | | Rack No. EP12. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-13-0017-DH | EI 330 D-5 ST-1 | EA | NEW | | 3 | 132.24 | 0 | | | |
| NOV - Amelia | NOV | 3539819-01 | | Rack No. EP12. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-13-0017-DH | EI 330 D-5 ST-1 | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 3538655-03 | | Rack No. B050. | 5" 18.00# HCP-110 TMK SEAMLESS CASING, STL THREAD | SA-13-0033-CC | EI 125 A-3 | EA | NEW | | 1 | 41.45 | 0 | | | |
| NOV - Amelia | NOV | 3536855-01 | | Rack No. B050. | 5" 18.00# HCP-110 BENTELER SEAMLESS CASING, STL THREAD | SA-13-0033-CC | EI 125 A-3 | EA | NEW | | 4 | 167.4 | 0 | | | |
| NOV - Amelia | NOV | 3532107-01 | | Rack No. EP16. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 1 | 43.5 | 0 | | | |
| NOV - Amelia | NOV | 3532107-01 | | Rack No. EP17. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 1 | 43.32 | 0 | | | |
| NOV - Amelia | NOV | 3532107-01 | | Rack No. EP16. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 4 | 173.28 | 0 | | | |
| NOV - Amelia | NOV | 3532107-02 | | Rack No. EP17. | 16" 94.81# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 3 | 123.6 | 0 | | | |
| | | | | | | | EUGENE ISL. 136 JA- | | | | | | | | | |
| NOV - Amelia | NOV | 3524708-01 | | Rack No. EM05. | 9 5/8" 52.90# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0024-DH | 4 | EA | NEW | | 20 | 881.9565 | 0 | | | |
| NOV - Amelia | NOV | 3523871-08 | | Rack No. D012. | OTHER,    THREAD | 5959 | WC 130 #2 | EA | UNKNOWN | | 1 | | 0 | | | |
| NOV - Amelia | NOV | 3523871-09 | | Rack No. D012. | OTHER,    THREAD | 5959 | WC 130 #2 | EA | UNKNOWN | | 1 | | 0 | | | |
| NOV - Amelia | NOV | 3522528-03 | | Rack No. 2-442. | 7 5/8" 29.70# HCP-110 TPCO SEAMLESS PUP JOINTS, API 8RD LONG THREAD | SA-13-0008-DC | WD 90 #F-8 | EA | NEW | | 1 | 22.36 | 0 | | | |
| | | | | | | | EUGENE ISL. 125 #A- | | | | | | | | | |
| NOV - Amelia | NOV | 3522355-03 | | Rack No. EN08. | 5" 18.00# P-110 TMK SEAMLESS CASING, HYD S13 THREAD | SA-13-0033-DC | 2 S/T | EA | NEW | | 1 | 21 | 0 | | | |
| | | | | | | | EUGENE ISL. 125 #A- | | | | | | | | | |
| NOV - Amelia | NOV | 3522335-02 | | Rack No. B050. | 5" 18.00# P-110 U S STEEL SEAMLESS CASING, HYD S13 THREAD | SA-13-0033-DC | 3 S/T | EA | NEW | | 3 | 141.3 | 0 | | | |
| | | | | | | | EUGENE ISL. 125 #A- | | | | | | | | | |
| NOV - Amelia | NOV | 3522335-01 | | Rack No. B050. | 5" 18.00# P-110 ALGOMA SEAMLESS CASING, HYD S13 THREAD | SA-13-0033-DC | 3 S/T | EA | NEW | | 3 | 130.5 | 0 | | | |
| | | | | | | | EUGENE ISL. 125 #A- | | | | | | | | | |
| NOV - Amelia | NOV | 3522335-01 | | Rack No. B063. | 5" 18.00# P-110 ALGOMA SEAMLESS CASING, HYD S13 THREAD | SA-13-0033-DC | 3 S/T | EA | NEW | | 12 | 522 | 0 | | | |
| | | | | | | | EUGENE ISL. 125 #A- | | | | | | | | | |
| NOV - Amelia | NOV | 3522335-03 | | Rack No. B050. | 5" 18.00# P-110 TENARIS SEAMLESS CASING, HYD S13 THREAD | SA-13-0033-DC | 3 S/T | EA | NEW | | 1 | 45.5 | 0 | | | |
| NOV - Amelia | NOV | 3521926-01 | | Rack No. I3-WK01. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, STL THREAD | SA-13-0024-DH | EI 136 #JA-4 | EA | NEW | | 1 | 48.34 | 0 | | | |
| NOV - Amelia | NOV | 3520312-02 | | Rack No. I3-303. | 10 3/4" 45.50# J-55 CORINTH ERW CASING, BUTTRESS THREAD | SA-13-0006-DH | E.I. 126 #A-6 | EA | NEW | | 1 | 42.1 | 0 | | | |
| | | | | | | | HIGH ISL. A-596 D-6 | | | | | | | | | |
| NOV - Amelia | NOV | 3519531-02 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD S13 THREAD | SA-13-0031-DH | S/T | EA | NEW | | 1 | 43 | 0 | | | |
| | | | | | | | HIGH ISL. A-596 D-6 | | | | | | | | | |
| NOV - Amelia | NOV | 3519531-03 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD S13 THREAD | SA-13-0031-DH | S/T | EA | NEW | | 1 | 42.5 | 0 | | | |
| | | | | | | | HIGH ISL. A-596 D-6 | | | | | | | | | |
| NOV - Amelia | NOV | 3519531-05 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD S13 THREAD | SA-13-0031-DH | S/T | EA | NEW | | 3 | 122.85 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 1 | 46.2 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 1 | 45.65 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-03 | | Rack No. EQ10. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 1 | 47.15 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-03 | | Rack No. EQ10. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 2 | 91.7333 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-04 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 4 | 179 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 3 | 133.2 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 35 | 1577.7083 | 0 | | | |
| | | | | | | | HIGH ISLAND A-596 | | | | | | | | | |
| NOV - Amelia | NOV | 3519428-02 | | Rack No. EQ10. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 2 | 87.95 | 0 | | | |
| NOV - Amelia | NOV | 3508865-01 | | Rack No. EP12. | 20" 94.00# J-55 NIPPON ERW CASING, BUTTRESS THREAD | SA-13-0024-DH | EI 136 J-4 | EA | NEW | | 3 | 131.15 | 0 | | | |
| | | | | | | | EI 330 D-3 S/T 2 | | | | | | | | | |
| NOV - Amelia | NOV | 3506358-03 | | Rack No. 2-442. | 13 3/8" 68.00# J-55 TENARIS ERW PUP JOINTS, BUTTRESS THREAD | SA-13-0020-DH | OCSG: 2115 | EA | NEW | | 1 | 21.645 | 0 | | | |
| | | | | | | | W. DELTA 90 #F-8 | | | | | | | | | |
| NOV - Amelia | NOV | 3501929-04 | | Rack No. 2-442. | 7 5/8" 29.70# HCP-110    SEAMLESS PUP JOINTS, API 8RD LONG THREAD | | OCSG 1089 | EA | NEW | | 1 | 22.3 | 0 | | | |
| NOV - Amelia | NOV | 3498770-01 | | Rack No. B063. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, SLJII THREAD | SA-13-0004-DH | VR 78 A-3 ST-2 | EA | NEW | | 6 | 281.4 | 0 | | | |
| NOV - Amelia | NOV | 3493053-03 | | Rack No. 2-336. | 13 3/8" 68.00# J-55 NEXTEEL ERW PUP JOINTS, BUTTRESS THREAD | SG-12-0054-DH | GI 32 GG #2 ST 1 | EA | NEW | | 1 | 21.7 | 0 | | | |
| | | | | | | | EUGENE ISL. 136 JA- | | | | | | | | | |
| NOV - Amelia | NOV | 3464088-01 | | Rack No. EQ19. | 20" 94.00# J-55 NIPPON ERW CASING, BUTTRESS THREAD | PENDING | 4 | EA | NEW | | 4 | 176.79 | 0 | | | |
| NOV - Amelia | NOV | 3450383-01 | | Rack No. B021. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0036-DH | G.I. 54 #A-1 ST1 BP1 | EA | NEW | | 16 | 726.9 | 0 | | | |
| | | | | | | | E.I. 120 #19 ST 2 | | | | | | | | | |
| NOV - Amelia | NOV | 3442458-01 | | Rack No. H053. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0029-DC | OCSG-00050 | EA | NEW | | 18 | 797.6 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 3442458-01 | | Rack No. HO53. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0029-DC | E.I. 120 #19 ST 2 OCSG-00050 | EA | NEW | | 2 | 83.5 | 0 | | | |
| NOV - Amelia | NOV | 3426020-01 | | Rack No. E031. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0046-DC | SHIP SHOAL 193 A7 ST2 | EA | NEW | | 26 | 1156.1333 | 0 | | | |
| NOV - Amelia | NOV | 3426020-01 | | Rack No. E031. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0046-DC | SHIP SHOAL 193 A7 ST2 | EA | NEW | | 56 | 2490 | 0 | | | |
| NOV - Amelia | NOV | 3384042-01 | | Rack No. EP17. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | SA-12-0046-DC | E.I. 118 B#1 ST1 OCSG-15242 | EA | NEW | | 1 | 38.45 | 0 | | | |
| NOV - Amelia | NOV | 3384042-01 | | Rack No. EP17. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | SA-12-0008-DH | E.I. 118 B#1 ST1 OCSG-15242 | EA | NEW | | 1 | 45.45 | 0 | | | |
| NOV - Amelia | NOV | 3368529-01 | | Rack No. EQ09. | 10 3/4" 60.70# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 1 | 41.85 | 0 | | | |
| NOV - Amelia | NOV | 3368529-01 | | Rack No. EQ09. | 10 3/4" 60.70# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 4 | 168.6 | 0 | | | |
| NOV - Amelia | NOV | 3364720-02 | | Rack No. B028. | 4 1/2" 15.00# HCP-110 VOEST ALP SEAMLESS TUBING, ULTRA QT THREAD | SA-11-0042-DC | S.S. 189 A#10 OCSG-04232 | EA | NEW | | 17 | 710 | 0 | | | |
| NOV - Amelia | NOV | 3364720-08 | | Rack No. C242. | 7" 38.00# HCQ-125 TCA SEAMLESS CASING, VAM TOP THREAD | SA-11-0042-DC | S.S. 189 A#10 OCSG-04232 | EA | NEW | | 4 | 161.95 | 0 | | | |
| NOV - Amelia | NOV | 3364720-01 | | Rack No. C242. | 7" 38.00# P-110 TCA SEAMLESS CASING, VAM TOP THREAD | SA-11-0042-DC | S.S. 189 A#10 OCSG-04232 | EA | NEW | | 8 | 360.9 | 0 | | | |
| NOV - Amelia | NOV | 3362473-03 | | Rack No. EQ09. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | SA-12-0002-DH | M.P. 8 #1 SL# 20549 | EA | NEW | | 1 | 46.65 | 0 | | | |
| NOV - Amelia | NOV | 3346038-01 | | Rack No. B024. | 5 1/2" 26.00# Q-125 V&M STAR SEAMLESS CASING, SLJII THREAD | SA-11-0001-DC | GI 116 #A-7 OCSG: 13944 | EA | NEW | | 18 | 820.9 | 0 | | | |
| NOV - Amelia | NOV | 3345139-01 | | Rack No. B501. | 13 5/8" 88.20# JFE-125T JFE SEAMLESS CASING, GB CDE BUTTRESS THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 1 | 42.5 | 0 | | | |
| NOV - Amelia | NOV | 3345139-01 | | Rack No. B501. | 13 5/8" 88.20# JFE-125T JFE SEAMLESS CASING, GB CDE BUTTRESS THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 1 | 43.15 | 0 | | | |
| NOV - Amelia | NOV | 3338902-01 | | Rack No. B040. | 7" 32.00# Q-125 TCA SEAMLESS CASING, TC-II THREAD | SA-11-0067-DC | M.P. 59 I-2 | EA | NEW | | 6 | 259.25 | 0 | | | |
| NOV - Amelia | NOV | 3325749-01 | | Rack No. MOC1. | 11 7/8" 71.80# HCQ-125 U S STEEL ERW CASING, BUTTRESS THREAD | SA-11-0042-DH | S.S. 189 A-10 OCSG: 04232 | EA | NEW | | 1 | 42.95 | 0 | | | |
| NOV - Amelia | NOV | 3325749-01 | | Rack No. E060. | 11 7/8" 71.80# HCQ-125 U S STEEL ERW CASING, BUTTRESS THREAD | SA-11-0042-DH | S.S. 189 A-10 OCSG: 04232 | EA | NEW | | 20 | 853.305 | 0 | | | |
| NOV - Amelia | NOV | 3325081-01 | | Rack No. EQ09. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | SA-11-0044-DH | W.C. 110 #10 ST | EA | NEW | | 2 | 92.45 | 0 | | | |
| NOV - Amelia | NOV | 3322300-01 | | Rack No. E060. | 11 7/8" 71.80# HCQ-125 TENARIS SEAMLESS CASING, SLX THREAD | SA-11-0067-DH | | EA | NEW | | 10 | 427.95 | 0 | | | |
| NOV - Amelia | NOV | 3316773-01 | | Rack No. EQ08. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-11-0044-DH | W.C. 110 #10 ST1 106 | EA | NEW | | 1 | 40.45 | 0 | | | |
| NOV - Amelia | NOV | 3314254-01 | | Rack No. B061B. | 20" 94.00# J-55 NIPPON ERW CASING, BUTTRESS THREAD | SA-11-0067-DH | MP 59 I-2 | EA | NEW | | 4 | 178.5 | 0 | | | |
| NOV - Amelia | NOV | 3258554-01 | | Rack No. EP12. | 20" 94.00# J-55 V&M ERW CASING, BUTTRESS THREAD | SA-11-0043-DH | OCSG 8467 #2 | EA | NEW | | 8 | 379.1 | 0 | | | |
| NOV - Amelia | NOV | 3258554-02 | | Rack No. 2-336. | 20" 94.00# K-55 U S STEEL SEAMLESS PUP JOINTS, BUTTRESS THREAD | SA-11-0043-DH | OCSG 8467 #2 | EA | NEW | | 1 | 21.4 | 0 | | | |
| NOV - Amelia | NOV | 3258554-02 | | Rack No. 2-336. | 20" 94.00# K-55 U S STEEL SEAMLESS PUP JOINTS, BUTTRESS THREAD | SA-11-0043-DH | OCSG 8467 #2 | EA | NEW | | 1 | 20.85 | 0 | | | |
| NOV - Amelia | NOV | 3240441-02 | | Rack No. EQ08A. | 20" 94.00# J-55 TIPO ERW PUP JOINTS, BUTTRESS THREAD | SA-11-0043-DH | MAIN PASS 315 #1 | EA | NEW | | 2 | 39.85 | 0 | | | |
| NOV - Amelia | NOV | 3236135-02 | | Rack No. EQ19. | 20" 133.00# X-56 HUSTELL ERW CASING, GB BUTTRESS THREAD | SA-11-0009-DH | W.D. 128 #D-12 OCSG: 10893 | EA | NEW | | 2 | 87.5 | 0 | | | |
| NOV - Amelia | NOV | 3236135-01 | | Rack No. EQ19. | 20" 133.00# X-56 HUSTELL ERW CASING, BUTTRESS THREAD | SA-11-0009-DH | W.D. 128 #D-12 OCSG: 10893 | EA | NEW | | 11 | 478.85 | 0 | | | |
| NOV - Amelia | NOV | 3212533-01 | | Rack No. HO53. | 7" 29.00# P-110 EC   SEAMLESS CASING, HYD 523 THREAD | GO-10-0014-DH | SP 88 D-8 ST1 #3 OCSG:10894 | EA | NEW | | 32 | 1379.95 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-06 | | Rack No. 20-0508. | 13 5/8" 88.20# VM-125-HC VMB SEAMLESS CASING, SLJI11 THREAD | FW191019 | MISSISSIPPH CANYON 519 #3 | EA | NEW | | 7 | 280.92 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-03 | | Rack No. 20-0627. | 13 5/8" 88.20# Q-125 HC U S STEEL SEAMLESS CASING, SLJI11 THREAD | FW191019 | MISSISSIPPH CANYON 519 #3 | EA | NEW | | 23 | 960.21 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-04 | | Rack No. 02-0511. | 13 5/8" 88.20# HC U S STEEL TCA SEAMLESS CASING, SLJI11 THREAD | FW191019 | MISSISSIPPH CANYON 519 #3 | EA | NEW | | 18 | 743.48 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-05 | | Rack No. 20-0530. | 13 5/8" 88.20# SM-125TT SUMITOMO SEAMLESS CASING, SLJI11 THREAD | FW191019 | MISSISSIPPH CANYON 519 #3 | EA | NEW | | 21 | 819.19 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-02 | | Rack No. 20-0508. | 13 5/8" 88.20# Q-125-HP U S STEEL SEAMLESS CASING, SLJI11 THREAD | FW191019 | MISSISSIPPH CANYON 519 #3 | EA | NEW | | 7 | 306.76 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-01 | | Rack No. 20-0414. | 13 5/8" 88.20# Q-125 VMG SEAMLESS CASING, SLJI11 THREAD | FW191019 | CANYON 519 #3 | EA | NEW | | 48 | 2085.33 | 0 | | | |
| NOV - Sheldon North | NOV | 7722987-01 | | Rack No. 06-0704. | 14" 116# Q-125ICY TENARIS TM SEAMLESS CASING, TSH 523 THREAD | AFE 191001 | GREEN CANYON 40 #2 | EA | NEW | | 31 | 1277.4807 | 0 | | | |
| NOV - Sheldon North | NOV | 7722987-01 | | Rack No. 06-0701. | 14" 116# Q-125ICY TENARIS TM SEAMLESS CASING, TSH 523 THREAD | AFE 191001 | GREEN CANYON 40 #2 | EA | NEW | | 117 | 4823.6721 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-06 | | Rack No. 20-0726. | 13 5/8" 88.20# Q125 HP USS SEAMLESS CASING, SLJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 10 | 440 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-07 | | Rack No. 20-0726. | 13 5/8" 88.20# Q-125 HC USS SEAMLESS CASING, SLJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 9 | 396 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-05 | | Rack No. 20-0726. | 13 5/8" 88.20# VM-125-HC VMB SEAMLESS CASING, SLJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 3 | 132 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-04 | | Rack No. 20-0723. | 13 5/8" 88.20# Q-125 HC VALLOUREC & MANNESMANN SEAMLESS CASING, SLJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 2 | 88 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-03 | | Rack No. 20-0719. | 13 5/8" 88.20# Q-125 HC TCA SEAMLESS CASING, SLJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 33 | 1452 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-02 | | Rack No. 20-0730. | 13 5/8" 88.20# SM-125S NSSMC SEAMLESS CASING, SLJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 37 | 1467.1474 | 0 | | | |
| NOV - Sheldon North | NOV | 7686925-01 | | Rack No. 20-0346. | 14" 116# Q-125ICY TENARIS TM SEAMLESS CASING, TSH 523 THREAD | 34536 | 14" Green Canyon 40 #2 ST | EA | NEW | | 5 | 206.4833 | 0 | | | |
| NOV - Sheldon North | NOV | 7678145-01 | | Rack No. 20-0553. | 18" 117.00# Q125 HP USS SEAMLESS CASING, RTA-9 | FW181011 | GREEN CANYON 200 #TA-9 | EA | NEW | | 27 | 1071.4384 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE145-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE145-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE146-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE146-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE144-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE144-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE147-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE147-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-1 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-2 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-3 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-4 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-5 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-6 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE125-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE125-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE126-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE126-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE127-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |

99

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE127-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-1 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-2 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-3 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-4 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-5 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-6 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-7 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-8 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-9 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-10 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-11 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-12 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-13 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE122-14 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE128-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE128-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BTS-8 BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE5241-1 | | Rack No. HW-R10-L2-A07 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-11DY VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | TROKIA TA-3 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE5241-2 | | Rack No. HW-R10-L2-A07 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-11DY VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | TROKIA TA-3 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE170-1 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE170-2 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE170-3 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE170-4 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE170-5 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE170-6 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE170-7 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE171-1 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP PIN/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE142-1 | | Rack No. HW-R10-L6-A07 | PUP JOINT (5.5" 23# 13CR95Y JFE LION PIN/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE155-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 23# 13CR95 JFE LION ) (3RD CRATE) | | KATMAI #1 & 2 | EA | NEW | | 1 | 1 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE148-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER PUP (5.5" 26# HYPER 2 13CR110 JFE LION SD49 BOX X 5.5" 26# VAM TOP HC PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE148-2 | | Rack No. HW-R10-L2-A10 | CROSSOVER PUP (5.5" 26# HYPER 2 13CR110 JFE LION SD49 BOX X 5.5" 26# VAM TOP HC PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 0 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE149-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER PUP (5.5" 26# HYPER 2 13CR110 VAM TOP HC BOX X 5.5" 26# JFE LION SD49 PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE150-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER (5.5" 26# 13-5-2-110 JFE LION BOX X 5" 23.20# VAM TOP HC PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE151-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER ASSY (5.5" 26# 13CR5110 VAM TOP HC BOX X 4.5" 18.90# JFE LION SD35 PIN 2FT XO X 4.5" 18.90# 13CR5110 JFE LION CPLG X 4.5" 18.90# HYPER 13CR110 JFE LION SD35 PIN/PIN 4FT PUP) | | KATMAI #1 & 2 | EA | NEW | | 1 | 7 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE158-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 26# HP2 13CR110 JFE LION SD49) | | KATMAI #1 & 2 | EA | NEW | | 1 | 1 | 0 | | | |
| OES - Houma | | FE114-1 | | Rack No. HW-R10-L5-A01 | CROSSOVER ASSEMBLY (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 8FT PUP X 5.5" 29.70# 13-5-2-110 VAM TOP BOX X 5.5" 26# VAM TOP HC PIN 2FT XOVER X 5.5" 26# 13CR5110 VAM TOP HC CPLG/PIN 6FT X 5.5" 26# 13CR5110 VAM TOP HC CPLG/PIN 4FT) | | GUNFLINT | EA | NEW | | 1 | 22 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE168-1 | | Rack No. HW-R10-L5-A10 | DECOMPLETION CROSSOVER ASSY (5.5" 29.70# HYPER 2 13CR110 VAM TOP HC BOX X 5.5" 26# JFE LION PIN 4FT X 5.5" 26# HP2 13CR110 JFE LION SD49 CPLG X 5.5" 26# 13CR110 JFE LION PIN/PIN 2FT X 5.5" 26# 13CR110 JFE LION CPLG/PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE169-1 | | Rack No. HW-R10-L5-A10 | DECOMPLETION CROSSOVER ASSY (5.5" 29.70# HP2 13CR115 JFE LION CPLG/PIN 10FT PUP X 5.5" 29.70# HP2 13CR110 JFE LION BOX X 5.5" 29.70# VAM TOP HC PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 16 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE157-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# HP2 13CR110 JFE LION) | | KATMAI #1 & 2 | EA | NEW | | 1 | 1 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE157-2 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# HP2 13CR110 JFE LION) | | KATMAI #1 & 2 | EA | NEW | | 0 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE134-1 | | Rack No. HW-R10-L6-A03 | PUP JOINT (5.5" 26# 13CR5110 JFE LION CPLG/PIN 15FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 15 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE135-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 26# 13CR5110 JFE LION PIN/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE135-2 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 26# 13CR5110 JFE LION PIN/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE143-1 | | Rack No. HW-R10-L6-A07 | PUP JOINT (5.5" 26# 13CR5110 JFE LION CPLG/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE181-1 | | Rack No. ASSEMBLY SHOP | PUP JOINT (5.5" 26# 13CR5110 JFE LION PIN/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE136-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 29.70# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE136-2 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 29.70# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE179-1 | | Rack No. HW-R10-L1-A01 | SPECIAL OD PUP JOINT (5.5" 29.70# HP2 13CR110 VAM TOP HC CPLG/CPLG 7FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 7 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE152-1 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 180) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE152-2 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 135) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE152-3 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 90) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE152-4 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 225) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE153-1 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE153-2 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE153-3 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE153-4 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE153-5 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE153-6 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE160-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE160-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE160-3 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE160-4 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE161-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE162-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE162-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE162-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE163-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE163-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE164-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE164-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE165-1 | | Rack No. HW-R10-L3-A13 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE165-2 | | Rack No. HW-R10-L3-A13 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE180-1 | | Rack No. HW-R10-L1-A01 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 JFE LION CPLG/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE154-1 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE154-2 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE154-3 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE154-4 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE154-5 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE156-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE156-2 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE140-1 | | Rack No. HW-R10-L6-A07 | HALLIBURTON PUP JOINT (5" 23.20# 13CR5110 VAM TOP HC PIN/PIN 6FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 6 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-12 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-14 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-16 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-23 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-21 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-4 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-3 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-25 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-19 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-15 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-2 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-9 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-22 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-8 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5031-17 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5235-1 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5235-6 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5235-5 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5235-3 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE5235-4 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-1 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-2 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-3 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-4 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-5 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-6 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-7 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-8 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-9 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-10 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-11 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-12 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-13 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-14 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-15 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-16 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-17 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-18 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-19 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-20 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE159-21 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-2 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-3 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-4 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-5 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-6 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-7 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-8 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-9 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-10 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-11 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-12 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-13 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-14 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-15 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-16 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-17 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-18 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-19 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-20 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-21 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-22 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-23 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-24 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-25 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-26 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-27 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-28 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-29 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-30 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-31 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-32 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-33 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-34 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-35 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-36 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-37 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-38 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE112-40 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE113-1 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 2 | 1 | 0 | |
| OES - Houma | Offshore Energy Services | FE113-2 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE113-3 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE113-4 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE113-5 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |
| OES - Houma | Offshore Energy Services | FE113-6 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE113-7 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE113-8 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE113-9 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE113-10 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE113-11 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE113-12 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE113-13 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE113-14 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE5036-1 | | Rack No. HW-R10-L2-A01 | CROSSOVER (3 1/2" 9.20# SUP13CR110KSI VARST-1 BOX X 3 1/2" 9.20# TSH-S11 PIN 2FT) (C LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5036-2 | | Rack No. HW-R10-L2-A01 | CROSSOVER (3 1/2" 9.20# 13CR5110Y VARST-1 BOX X 3 1/2" 9.20# TSH-S11 BOX 2FT) (C LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5233-2 | | Rack No. HW-R10-L2-A01 | CROSSOVER (5 1/2" 16.87# AF913-110Y STL BOX X 3.5" 9.20# VARST-1 PIN 2FT) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5233-1 | | Rack No. HW-R10-L2-A01 | CROSSOVER (5 1/2" 16.87# AF913-110Y STL BOX X 3.5" 9.20# VARST-1 PIN 2FT) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5037-1 | | Rack No. HW-R10-L2-A01 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5037-2 | | Rack No. HW-R10-L2-A01 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-1 | | Rack No. HW-R9-L6-A14 | FLOW COUPLING (4.5"17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-2 | | Rack No. HW-R9-L6-A14 | FLOW COUPLING (4.5" 17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-3 | | Rack No. HW-R9-L6-A14 | FLOW COUPLING (4.5" 17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-4 | | | FLOW COUPLING (4.5" 17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE105-1 | | Rack No. HW-R10-L4-A01 | FLOW COUPLING ASSEMBLY (5 1/2" 26# VM13CR5110 VAM TOP HC BOX/PIN 8FT FLOW CPLG X 5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/CPLG 6FT PUP JT X 5 1/2" 26# VM13CR5110 VAM TOP PIN/PIN 4FT PUP JT) | | GUNFLINT | EA | NEW | | 1 | 18 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE107-1 | | Rack No. HW-R10-L5-A01 | C.I.M ASSEMBLY (5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/CPLG 14FT PUP JT X BOT CHEMICAL INJECTION MANDREL 5 1/2" 26# 13CR110 VAM TOP PIN/PIN (PN: H30B2500S8RNBI) (S/N: 13743775) X 5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/CPLG 14FT PUP JT X 5 1/2" 26# VM13CR5110 VAM TOP HC PIN/PIN 6FT PUP JT) | | GUNFLINT | EA | NEW | | 1 | 40 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE103-1 | | Rack No. HW-R10-L4-A01 | C.I.M ASSEMBLY (5 1/2" 26# 13-5-2-110 VAM TOP HC BOX/PIN 8FT FLOW CPLG X BOT CHEMICAL INJECTION MANDREL 5 1/2" 26# 13CR110 VAM TOP HC CPLG/CPLG (SN: 13743776) H30B2500S8RNBI) X 5 1/2" 26# VM13CR5110 VAM TOP HC PIN/PIN(CUT PUP JT) | | GUNFLINT | EA | NEW | | 1 | 24 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE102-1 | | Rack No. HW-R10-L4-A01 | HALLIBURTON RPT LANDING NIPPLE 3.437 ASSEMBLY (4 1/2" 17# VM13CR5110 VAM TOP CPLG/PIN BFT PUP JT X 4 1/2" 17# VM13CR5110 VAM TOP BOX/PIN 10FT FLOW CPLG X HES NIPPLE 4 1/2" 17# 13CR5110 VAM TOP BOX/PIN (SN: 408150-1) X 4 1/2" 17# VM13CR5110 VAM TOP BOX/PIN 10FT FLOW CPLG) | | GUNFLINT | EA | NEW | | 1 | 30 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE115-1 | | Rack No. HW-R10-L1-A14 | BAKER PREMIER PACKER (4 1/2" 17.00# 13CRM110 CPLG/PIN VAM TOP 10FT) (108489O-02) | | STOCK | EA | NEW | | 1 | 10 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-3 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-4 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-5 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-6 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE174-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 6FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE174-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 6FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE175-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 2FT) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE175-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 2FT) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE176-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH511 BOX/PIN 8FT) | | | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE176-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH511 BOX/PIN 8FT) | | | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE177-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 10FT) | | | EA | NEW | | 1 | 10 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE177-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 10FT) | | | EA | NEW | | 1 | 10 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE178-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 15FT) | | | EA | NEW | | 1 | 15 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE178-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 15FT) | | | EA | NEW | | 1 | 15 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-1 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 2OFT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-2 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 2OFT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-3 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 2OFT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-4 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 2OFT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-1 | | Rack No. HW-FLOOR 2 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-2 | | Rack No. HW-FLOOR 2 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-3 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-4 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-5 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 CPLG/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-6 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 CPLG/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-4 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-5 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-6 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-7 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-8 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-9 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-4 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-5 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-6 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-7 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5238-1 | | Rack No. HW-R10-L3-A04 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5238-2 | | Rack No. HW-R10-L3-A04 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 CPLG/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-4 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5266-1 | | Rack No. RACK #6 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5266-2 | | Rack No. RACK #6 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FES038-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES039-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES039-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES039-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES042-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 10FT) (C-LEVEL) | | | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES043-1 | | Rack No. HW-R10-L3-A01 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 8FT) (C-LEVEL) | | | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES045-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES047-1 | | Rack No. HW-R10-L5-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 14FT) (C-LEVEL) | | | EA | NEW | | 1 | 14 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES048-1 | | Rack No. HW-R10-L3-A01 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE109-1 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE109-2 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE109-3 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE109-4 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE109-5 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE109-6 | | Rack No. HW-R9-L5-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE109-7 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE108-1 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE108-2 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE108-3 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE108-4 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE108-5 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE117-1 | | Rack No. HW-R9-L1-A06 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 2FT) | | | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-1 | | Rack No. HW-R9-L1-A11 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-2 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-3 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-4 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-5 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-6 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-7 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-8 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-9 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-10 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE118-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE124-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 15FT) | | | EA | NEW | | 1 | 15 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE129-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE129-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE130-1 | | Rack No. HW-R10-L2-A15 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE130-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE131-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE131-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE132-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE132-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE133-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE137-1 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 2FT) | | | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE137-2 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 2FT) | | | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE138-1 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE138-2 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE139-1 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE139-2 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE139-3 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE139-4 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE141-1 | | Rack No. HW-R10-L6-A07 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE141-2 | | Rack No. HW-R10-L6-A07 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| OES - Houma | Offshore Energy Services | FE166-1 | | Rack No. HW-R9-L5-A12 | PUP JOINT (4.5" 18.90# 13CR5110 VAM TOP 9FT CPLG/PIN) (NOTE: CPLG IS 17#) | | | EA | NEW | | 1 | 9 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE167-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (4.5" 18.90# 13CR110 JFE LION PIN/PIN 20FT) | | | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE119-1 | | Rack No. HW-R9-L1-A06 | PUP JOINT (5 1/2" 24# VM13CR5110 VAM TOP CPLG/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE111-1 | | Rack No. HW-R9-L6-A14 | PUP JOINT (5 1/2" 26# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE120-1 | | Rack No. HW-R9-L1-A11 | PUP JOINT (5 1/2" 29.70# 13CR115 HYPTYP2 VAM TOP HC 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE121-1 | | Rack No. HW-FLOOR 2 | PUP JOINT (5 1/2" 29.70# 13CR115 VAM TOP HC 4FT) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES240-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES240-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-1 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-2 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-3 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-4 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-5 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-6 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-7 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-8 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-9 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-10 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-11 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-12 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-13 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-14 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-15 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-16 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-17 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE172-18 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-1 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-2 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-3 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-4 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-5 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-6 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-7 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-8 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-9 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES060-10 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES063-1 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES063-2 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES063-3 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | | |
| OES - Houma | Offshore Energy Services | FES063-4 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | W/% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE5063-5 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH S11 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | |
| OES - Houma | Offshore Energy Services | FE5063-6 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH S11 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | |
| OES - Houma | Offshore Energy Services | FE5063-7 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH S11 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | |
| OES - Houma | Offshore Energy Services | FE5063-8 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH S11 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | |
| OES - Houma | Offshore Energy Services | FE106-1 | | Rack No. HW-R10-L3-A01 | RANGE JOINT (5 1/2" 29.70# 13CR115 HYPTYP2 VAM TOP HC CPLG/PIN 40FT) | | | EA | NEW | | 1 | 40 | | 0 | |
| OES - Houma | Offshore Energy Services | FE106-2 | | Rack No. HW-R10-L3-A01 | RANGE JOINT (5 1/2" 29.70# 13CR115 HYPTYP2 VAM TOP HC CPLG/PIN 40FT) | | | EA | NEW | | 1 | 40 | | 0 | |
| OES - Houma | Offshore Energy Services | FE101-1 | | Rack No. HW-R7-L2-A01 | BAKER IWS ASSEMBLY (4.5" 17# 13CR5110 VAM TOP CPLG/CPLG BAKER GAUGE MANDREL (13694265) X 4.5" 17# 13CR5110 VAM TOP PIN/PIN UPPER SLIDING SLEEVE (1110285-02) X 4.5" 17# 13CR5110 VAM TOP TIMED CPLG X 4.5" 17# 13CR5110 VAM TOP PINXPIN LOWER SLIDING SLEEVE (1110296-02) X 4.5" 17# 13CR5110 VAM TOP BOX BAKER QUICK CONNECT (1088638-01) | | | EA | NEW | | 1 | 0 | | 0 | |
| OES - Houma | Offshore Energy Services | FE116-1 | | Rack No. HW-FLOOR 2 | SPLICE SUB (4 1/2" 17.00# VM13CR5110 VAM TOP) | | | EA | NEW | | 1 | 2 | | 0 | |
| OES - Houma | Offshore Energy Services | FE104-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/PIN 8FT) | | | EA | NEW | | 1 | 24 | | 0 | |
| Oil States - Houston | Oil States Energy Services | 12117 | 121824-03, 121824-01 | | BIN 600 GLC S/N 121824-03, 121824-01 | | | EA | NEW | | 1 | | | 0 | |
| Oil States - Houston | Oil States Energy Services | 15170 | 170143-01 | | 2" 900 LRF, S/N 170143-01 | | | EA | NEW | | 1 | | | 0 | |
| Oil States - Houston | Oil States Energy Services | 12117 | 121824-03 & 121824-01 | | BIN 600 GLC S/N 121824-03, 121824-01 | | | EA | NEW | | 1 | | | 0 | |
| Oil States - Houston | Oil States Energy Services | 80025.01 | 80025.01-0003-01 | | GA00001436 / 24"-900 ANSI HYDROTAP ASSY W/VALVE | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2035504-02 | 9612766503SO | | ASSY, DEBRIS CAP, 18-3/8" OD MCPAC | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2035804-07 | 4503046069-04-16 | | ASSY, 6"-10K 5-AX GASKET, W/ TWO DOVE | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2124118-01 | 11233630-1 | | ASSY, TREE CAP, BP TROIKA | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2124123-01 | 9610181705O | | ASSY, TREE CAP SHIPPING SKID | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2124620-01 | 1118667S-01 | | ASSY, TEST CAP, TREE RUNNING TOOL | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2155653-01 | NS6200188076011000 | | SHEAR PIN, G2 BORE PROTECTOR,TEFLON | | | EA | A-NU | | 6 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2156132-01 | 952323780722O | | ASSY, COMBINATION (TREE/TREE CAP) | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2166241-03 | NS62002103630190O0 | | MECHANICAL SPARES, 4.375 SSR PLUG | | | EA | A-NU | | 4 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2181629-14 | 111147559-01 | | ASSEMBLY, PRESSURE CAP, 6"-10K FLOWLINE | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2185425-14-08 | 1023229-39 | | GENERIC EL ROV LOOP 75 | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2185425-14-08 | 1023229-42 | | GENERIC EL ROV LOOP 75 | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197017-01-03 | 478 | | Surface Modem, +-15V Version, PSK | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197017-01-03 | 503 | | Surface Modem, +-15V Version, PSK | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197088-13-62 | 1054974-629 | | GENERIC EL ROV PARK 125 W/ INSERT | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197088-17-72 | 1047684-SO | | ROV Test Conn., EL male, fixed 7-way | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197088-17-72 | 1047684-51 | | ROV Test Conn., EL male, fixed 7-way | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197091-47 | NS62002131970020O0 | | TRANSFORMER, 120V IN, 690V OUT / 3000VA | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197091-47 | NS62002151550380O0 | | TRANSFORMER, 120V IN, 690V OUT / 3000VA | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197095-47 | 740 | | PCB, SOP DIPLEXER, SURFACE | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2197095-47 | 775 | | PCB, SOP DIPLEXER, SURFACE | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2216807-12 | NS62002170270010O0 | | SPLIT LOAD RING, FOR 4.882" NOM RLH-2 | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2216807-34 | NS62002170270020O0 | | UPPER LOAD RING, 5.25 WIRELINE PLUG | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 222255-01-32 | 4511625379-50-19 | | DUMMY WEIGHT (DIU REPLACEMENT) | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223026-73 | 121419730-01 | | FWEKAT - SPCU 690VAC | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223026-73-00-98 | 121418629-01 | | FWEKAT - SPCU INST & COMM SPARES | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223026-73-00-98 | 121458904-01 | | FWEKAT - SPCU INST & COMM SPARES | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223055-11 | 121384751-01 | | FWEKAT - SCM MC - XT W/ ACCU | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223055-21 | 121396625-01 | | FWEKAT - DIU | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223055-21 | 121458050-01 | | FWEKAT - DIU | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223055-21 | 121396627-01 | | FWEKAT - DIU | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223135-56 | 121404465-01 | | PETU-AC-SOP-OSL-ODI | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223208-93-01 | 121391157-02 | | IC. CABLE FOR POWER 1200V DC TYPE 2 | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223208-93-01 | 121391157-01 | | IC. CABLE FOR POWER 1200V DC TYPE 2 | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223210-21 | 4502118130-1 | | SCM/ SAM TRANSPORT FRAME | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223262-46 | 112896839-01 | | DUMMY SCM (Noble STMC 15-02-C & 15-03-C) | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223303-78 | 1 | | Ex.I-.Box 690VAC, NEC, 3 Quads, 35mm² | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223383-18 | 121366058-01 | | SOM - (4HE) - 3A - 2x ETHERNET | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223383-18 | 121478192-03 | | SOM - (4HE) - 3A - 2x ETHERNET | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223388-89 | 121366178-01 | | MCS SERVER PC 2U | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223388-89 | 121485344-01 | | MCS SERVER PC 2U | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223388-92 | 121414591-01 | | Microbox IPC 427D | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223388-98 | 9A4CB2194B | | (LAPTOP CF-31 / RUGGEDIZED) | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223389-12 | 9OTCC26341 | | LAPTOP PANASONIC TOUGHBOOK, CF-54 | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223389-12 | 9OTCC26304 | | LAPTOP PANASONIC TOUGHBOOK, CF-54 | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223473-17-03 | 121391147-01 | | INTERCONNECTION CABLE - PETU | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223473-17-03 | 121391147-02 | | INTERCONNECTION CABLE - PETU | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223518-69 | 158437-001 | | GENERIC: T&F PLATE FOR FREE PLATE, 11/3W | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223520-62 | 0158389-001 | | GENERIC: T&F PLATE FOR FREE PLATE, 20/D- | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223520-68 | 0159618-001 | | FWEKAT - LOGIC FREE STAB PLATE 20/D-WAY | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 223997-70 | 4502094761-1 | | INSPECTION FRAME ASSEMBLY FOR SCM | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2244635-11 | 121530442-1 | | ASSEMBLY FOR OFFSHORE, INTERNAL TREE CAP | | | EA | C-UR | | | 1 | | 0 | |
| One Subsea - Berwick | One Subsea | 2248632-02 | NS62002170270030O0 | | CC-SEAL, .888 OD X .640 ID X .124" C.S. | | | EA | A-NU | | 192 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2293251-05 | 121370534-01 | | ASSY, INSERT, F/CC405R SUBSEA CONTROL | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2361282-06 | NS62002131970090O0 | | ANALOG INPUT, AI 8XU/I/RTD/TC ST, 16 BIT | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2361282-06 | NS62002151550220O0 | | ANALOG INPUT, AI 8XU/I/RTD/TC ST, 16 BIT | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2361282-12 | NS62002131970100O0 | | SIMATIC S7-1500, DIGITAL INPUT MODULE, | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2361282-12 | NS62002151550240O0 | | SIMATIC S7-1500, DIGITAL INPUT MODULE, | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2394980-02 | 4511292813-10-2 | | ASSY, WIRELINE PLUG, 13K WP, | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2394980-02 | 4511992677-120-1 | | ASSY, WIRELINE PLUG, 13K WP, | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2394980-02 | 4511992677-110-1 | | ASSY, WIRELINE PLUG, 13K WP, | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2394981-02 | 4511992677-90-1 | | ASSY, WIRELINE PLUG, 5.75IN NOM, 15K WP, | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2394981-02 | 120950817-01 | | ASSY, WIRELINE PLUG, 5.75IN NOM, 15K WP, | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2394981-02 | 4511222618-20-01 | | ASSY, WIRELINE PLUG, 5.75IN NOM, 15K WP, | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2396182-02-02 | NS62002190390010O0 | | SPARES, PERIODIC 1,RECEIVED GOODS REPAIR | | | EA | A-NU | | 3 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2400888-02-01 | NS62002189660010O0 | | SPARES, ROUTINE, RECEIVED GOODS REPAIR | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2400889-02-01 | NS62002072800010O0 | | SPARES, ROUTINE, RECEIVED GOODS REPAIR | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2604283-01-01 | 121509895-1 | | ASSY, PRODUCTION SPOOLTREE, EFAT, S-1/B | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2605338-01 | 121397669-01 | | CONVERSION ASSY, G3 SPOOLTREE, WITH EFAT | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 263093-01 | 4504520796-01-01 | | UPPER MANDREL, WEIGHT SET TEST TOOL | | | EA | B-RP | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2711520-86 | NS62002131970110O0 | | SIMATIC S7-1500, CPU 1515-2 PN | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2711520-86 | NS62002151550420O0 | | SIMATIC S7-1500, CPU 1515-2 PN | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2731061-04 | 11511-X01384-06 | | GASKET, RING, 18-3/4 VETCO TYPE ' VX-2' | | | EA | A-NU | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2731384-01 | 4501291492-3-1 | | 4.767" Tubing Hanger Upper Plug 'HH' In | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2731384-02-01 | 4504261958-01-1 | | ASSY, WIRELINE PLUG, UPPER, 4.767 IN | | | EA | C-UR | | 1 | | | 0 | |
| One Subsea - Berwick | One Subsea | 2731385-01 | 4504093961-2-3 | | OBSOLETED & SUPERSEDED BY 2731385-01-01 | | | EA | C-UR | | 1 | | | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| One Subsea - Berwick | One Subsea | 2748033-01 | 4S3S37B3-01-01 | | WIRELINE PLUG, 5.25" DIA, METAL AND | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2748158-01 | NS6200210698001000 | | SPECIAL, BUTTON HD HEX SOC SCREW | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2762726-05 | NS6200213197005000 | | DISCONT. (LIGHT, UNIVERSAL, 18 W, 230 V) | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2762726-05 | NS6200215115033000 | | DISCONT. (LIGHT, UNIVERSAL, 18 W, 230 V) | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2788005-01 | NS6200218894001000 | | MACHINED 'S' SEAL, 8.125" BORE, W/ GROOV | | | EA | A-NU | | 18 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2826264-02 | NS6200213197012000 | | DIGITAL OUTPUT, DQ 16x 230V AC/2A ST | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2826264-02 | NS6200215115023000 | | DIGITAL OUTPUT, DQ 16x 230V AC/2A ST | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619044-01-08-09 | NS6200200061002000 | | SPARE FILTER MAT, 289 x 289 x 17 mm | | | EA | A-NU | | 2 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-62 | NS6200213197006000 | | AC CURRENT TRANSMITTER, CT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-62 | NS6200215115031000 | | AC CURRENT TRANSMITTER, CT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-64 | NS6200213197013000 | | AC VOLTAGE TRANSMITTER, VT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-64 | NS6200215115030000 | | AC VOLTAGE TRANSMITTER, VT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619088-10-11-03 | NS6200213197014000 | | SOCKET, RAIL MOUNTABLE, 125 V AC, USA | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619088-10-11-03 | NS6200215115034000 | | SOCKET, RAIL MOUNTABLE, 125 V AC, USA | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-12-17 | NS6200213197015000 | | SPEED CONTROL, +20°C / +55°C, 230 V | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-12-17 | NS6200215115033000 | | SPEED CONTROL, +20°C / +55°C, 230 V | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-28-10 | NS6200213197016000 | | SWITCH, FLUSH MOUNTING, 63 A, 37 KW | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-28-10 | NS6200215115041000 | | SWITCH, FLUSH MOUNTING, 63 A, 37 KW | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-01-50-10 | NS6200213197017000 | | POWER SUPPLY UNIT, TRIO, 24 V DC, 10 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-01-50-10 | NS6200215115035000 | | POWER SUPPLY UNIT, TRIO, 24 V DC, 10 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-02-49 | NS6200213197018000 | | COIL, INDUCTANCE, 30 MH, MAX 4A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-02-49 | NS6200215115040000 | | COIL, INDUCTANCE, 30 MH, MAX 4A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-41-06 | NS6200213041001000 | | CIRCUIT BREAKER, C, 6 A, 2 NO | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-41-10 | NS6200213041002000 | | CIRCUIT BREAKER, C, 10 A, 2 NO | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-41-50 | NS6200213041003000 | | CIRCUIT BREAKER, C, 50 A, 2 NO | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-45-16 | NS6200213041004000 | | CIRCUIT BREAKER, C, 16 A, 2 NO, UL | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-05-04 | NS6200213041005000 | | AUX. SWITCH FOR CIRCUIT BREAKER | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-05-04 | NS6200215115020000 | | AUX. SWITCH FOR CIRCUIT BREAKER | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-14-14-02 | NS6200213041006000 | | FUSE GLASS-TUBE | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-14-16-02 | NS6200213041007000 | | FUSE, GLASS, TUBE 1A MIDDLE | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-22-01 | NS6200202061001000 | | FUSE, 22 x 58, g18, 400 V DC, 63 A | | | EA | A-NU | | 4 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619093-08-03 | NS6200213199001000 | | TEMPERATURE SENSOR, PT100 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619093-08-03 | NS6200215115029000 | | TEMPERATURE SENSOR, PT100 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-02-22 | NS6200213199002000 | | POWER SUPPLY, S7-1500, 24 V, 1.3 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-02-22 | NS6200215115043000 | | POWER SUPPLY, S7-1500, 24 V, 1.3 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-34-01 | NS6200213199003000 | | AUTO-CONFIGURATION ADAPTER, ACA 21-USB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-34-01 | NS6200215115026000 | | AUTO-CONFIGURATION ADAPTER, ACA 21-USB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-42-03 | NS6200213199004000 | | FAST ETHERNET SWITCH, MANAGED, 16 PORTS | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-42-03 | NS6200215115027000 | | FAST ETHERNET SWITCH, MANAGED, 16 PORTS | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-63-01 | NS6200213199005000 | | IND. FIREWALL/SECURITY-ROUTER, EAGLEOne | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-63-01 | NS6200215115025000 | | IND. FIREWALL/SECURITY-ROUTER, EAGLEOne | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-63-25 | NS6200213199006000 | | 17" FHD RACKMOUNT DISPLAY PANEL, RP-F617 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-63-25 | NS6200215115018000 | | 17" FHD RACKMOUNT DISPLAY PANEL, RP-F617 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-67-28 | NS6200213199007000 | | Server, LANTIME M600/MRS, 100-240 VAC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-67-28 | NS6200215115019000 | | Server, LANTIME M600/MRS, 100-240 VAC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-69-02 | NS6200213199008000 | | IEC CONNECTOR, PXO58B, 240 V AC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-69-02 | NS6200215115021000 | | IEC CONNECTOR, PXO58B, 240 V AC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-70-11 | NS6200213199009000 | | KEYBOARD, TKS-088C-TOUCH-SCHUBL-PS/2-US | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-70-11 | NS6200215115017000 | | KEYBOARD, TKS-088C-TOUCH-SCHUBL-PS/2-US | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-77-04 | NS6200212648001000 | | GRAPHIC CARD, MATROX C680-E4GBF, 4 GB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619097-31 | NS6200213199010000 | | REDUD. MODULE QUINT-ORING/24DC/2X10/1X20 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619097-31 | NS6200215115036000 | | REDUD. MODULE QUINT-ORING/24DC/2X10/1X20 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619098-17 | NS6200213199011000 | | CAPACITOR, FILM, 1000V AC, 2400V DC, 1µF | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619098-17 | NS6200215115039000 | | CAPACITOR, FILM, 1000V AC, 2400V DC, 1µF | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 702647-30-61 | NS6200218893001000 | | O RING, SIZE AS-568-206 .484 ID X | | | EA | A-NU | | 78 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77004494 | NS6200213199012000 | | ROOF MOUNTED CABINET EXHAUST FAN | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77004494 | NS6200215115028000 | | ROOF MOUNTED CABINET EXHAUST FAN | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77006739 | NS6200213199013000 | | KVM OVER IP SWITCH, DKX3-108, 8-PORT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77006739 | NS6200215115037000 | | KVM OVER IP SWITCH, DKX3-108, 8-PORT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 7K-9034872 | NS6200213199014000 | | S7-1X00 FLASH MEMORY CARD, 12 MB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | CM-018106-15 | 123658-1 | | MQC, PLATE ASSY, IWOCS, REM 12 WAY/ LINE | | | EA | C-UR | | 1 | | | 0 | | |
| Proserve - Houston | Proserve | 71606.A | | | SIMULATOR,MFR:PROSERV,PN:1191-05,TYP GENERATION 3 GAUGE,EQ | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 10000 | | |
| Proserve - Houston | Proserve | 71612.A | | | MODEL:PTG750 FRAME,MFR:PROSERV,PN:065419,TYP SHIPPING,APPLI:SUBSEA CONTROL MODULE; NOBLE GUNFLINT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 20000 | | |
| Proserve - Houston | Proserve | 71574.A | | | COMPUTER,MFR: HP,TYP MONITOR,RTNG N/A,DISPLAY ELITE LCD,SPEC SIZE: 23 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 399.3 | | |
| Proserve - Houston | Proserve | 71573.A | | | CABLE;MFR: GISMA,TYP OCH SEM TEST,CONDCTR DIA N/A,CONDCTR QTY N/A,VOLT N/A,TERM TYP (61) PIN,SPEC W/ PIG TAILS, CONNECTION TYPE: MALE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 2500 | | |
| Proserve - Houston | Proserve | 71575.A | | | CONNECTOR;MFR: TEST-TRONIC,TYP TEST,DIM N/A,CONN 1 TYP FEMALE,MATL N/A,MATL GR N/A,SPEC TERMINAL TYPE: (12) PIN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 2000 | | |
| Proserve - Houston | Proserve | 71604.A | | | SIMULATOR,MFR:PROSERV,PN:033794MFR: SKOFLO CONNECTOR;MFR:PROSERV,PN:094788,TYP TEST,APPLI:UPC TOP ASSEMBLY,EQ | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 7500 | | |
| Proserve - Houston | Proserve | 71610.A | | | MODEL:HYDRALIGHT BFOSM VALVE, RELIEF,MFR:PROSERV,PN:008701,PRESS RANGE 2.5-25000 PSI,SPCL FEATRS POWER: 1/4 HP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 36167 | | |
| Proserve - Houston | Proserve | 71617.A | | | KIT;MFR:PROSERV,PN:094966,TYP PRECHARGE,COMPRISING NITROGEN BOOSTER, 13500 PSI, MANUAL CHARGING PRESSURE SELECTOR, AIR PILOT SHUTDOWN SWITCHES, CARBON STEEL OPEN SKID ON ROLL DOLLY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 6 | | | 411.38 | | |
| Proserve - Houston | Proserve | 71614.A | | | KIT;MFR:PROSERV,PN:098953,TYP PRECHARGE,COMPRISING NITROGEN BOOSTER, 4500 PSI MANUAL CHARGING PRESSURE SELECTOR, AIR PILOT SHUTDOWN SWITCHES, CARBON STEEL OPEN SKID ON ROLL DOLLY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 10000 | | |
| Proserve - Houston | Proserve | 71615.A | | | PUMP;MFR:PROSERV,PN:077835,STG QTY 6,FLW RATE 5 GAL/MIN,INLT SZ 1-1/4 IN,INLET CONN TYP RF FLANGE,OUTLT SZ 1-1/4 IN,OUTLT CONN TYP RF FLANGE,OPRTG PRESS 70 PSI,DRVR MOTOR | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 5642 | | |
| Proserve - Houston | Proserve | 72271.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB037-000,TYP MINI,AMP 10,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 44.08 | | |
| Proserve - Houston | Proserve | 72296.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-RCB001-000,TYP RESIDUAL CURRENT,AMP 6,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C, 1P+ N | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 141.98 | | |
| Proserve - Houston | Proserve | 72307.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:044827,TYP MINI,AMP 16,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: D | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 52.04 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Preserve - Houston | Preserve | 72317.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB026-000,TYP MINI,AMP 4,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 47.64 | | | |
| Preserve - Houston | Preserve | 72328.A | | | CONTACT, AUXILIARY,MFR:PROSERV,PN:ABB-ACO06-000MFR: ABB,CNTCT ARNGEMNT 1NO-1NC,SPEC SIDE MOUNT,APPLI 5200 MINI CIRCUIT BREAKER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 25.96 | | | |
| Preserve - Houston | Preserve | 72333.A | | | FUSE, CARTRIDGE,MFR:PROSERV,PN:MIS-ELE290-000,AMP 1,MATL GLASS,DIM DIA 5 X LG 20 mm,SPEC T LBC,TYP ANTI SURGE,PCKG QTY 10 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 1.3 | | | |
| Preserve - Houston | Preserve | 72275.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB038-000,TYP MINI,AMP 1,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 51.2 | | | |
| Preserve - Houston | Preserve | 72285.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB022-000,TYP MINI,AMP 2,VOLT 400,POLES 2P,WD 35 mm,LG 88 mm,SPCL FEATRS G.250 KG, DP: 69 MM, ENCLOSURE: IP20, TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 54.34 | | | |
| Preserve - Houston | Preserve | 71613.A | | | UNIT,MFR:PROSERV,PN:065405,TYP ELECTRICAL POWER,SPCL FEATRS QTY: 5/BOX | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 49231 | | | |
| Preserve - Houston | Preserve | 62440.A | | | VALVE, BALL,MFR:PROSERV,PN:070578,CONN 1 SZ 1/2 IN,CONN 1 TYP FNPT,CL 10000 PSI,STYL 2-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 49.7 | | | |
| Preserve - Houston | Preserve | 72305.A | | | VALVE, RELIEF,MFR:PROSERV,PN:082577,CONN SZ 1/2 IN,CONN TYP FNPT,PRESS RANGE 10000 PSI,MN:RLSON | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 620.12 | | | |
| Preserve - Houston | Preserve | 72306.A | | | VALVE, RELIEF,MFR:PROSERV,PN:P000255,CONN SZ 3/8 X 3/8 IN,CONN TYP MP X FNPT,PRESS RANGE 20000 PSI,SET PRESS 16.5K PSI,BDY MATL SS,MATL GR 316,SFTGDS SEAL: BUNA N,SPCL FEATRS ADJUSTABLE (INTERNAL),MN:RL37 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 411.38 | | | |
| Preserve - Houston | Preserve | 72308.A | | | GAUGE, PRESSURE,MFR:PROSERV,PN:082557,PRESS RANGE 10000 PSI,DIAL SZ 2.5 IN,CONN SZ 1/4 IN,CONN TYP MNPT,CONN LCTN LOWER BACK,MNTG FCLTY PANEL,CASE MATL SS 316,FILLED GLYCERINE,SPCL FEATRS BUILT-IN SNUBBER, BLOWOUT BACK | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 166.02 | | | |
| Preserve - Houston | Preserve | 72309.A | | | GAUGE, PRESSURE,MFR:PROSERV,PN:082562,PRESS RANGE 10000 PSI,DIAL SZ 4 IN,CONN SZ 1/4 IN,CONN TYP MALE NPT,CONN LCTN LOWER BACK,MNTG FCLTY PANEL,CASE MATL SS 316,FILLED GLYCERINE,SPCL FEATRS BUILT-IN SNUBBER, BLOWOUT BACK | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 271.76 | | | |
| Preserve - Houston | Preserve | 72310.A | | | GAUGE, PRESSURE,MFR:PROSERV,PN:082564,PRESS RANGE 30000 PSI,DIAL SZ 4 IN,CONN SZ 1/4 IN,CONN TYP FEMALE HP,CONN LCTN LOWER BACK,MNTG FCLTY PANEL,CASE MATL SS 316,FILLED GLYCERINE,SPCL FEATRS BLOWOUT BACK | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 424.08 | | | |
| Preserve - Houston | Preserve | 72311.A | | | TRANSMITTER, PRESSURE,MFR:PROSERV,PN:081604,RANGE 330-10000 PSI,O/P 4-20 mA,CONN SZ 1/4 IN,CONN TYP FEMALE NPT,DIAPH MATL SS 316,ELEC CONN 1/2 IN MALE NPT,SPCL FEATRS FM APPROVAL EXP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 3290.36 | | | |
| Preserve - Houston | Preserve | 72312.A | | | TRANSMITTER, PRESSURE,MFR:PROSERV,PN:ROS-PT142-000,RANGE 660-20000 PSI,O/P 4-20 mA,CONN SZ 1/4 IN,CONN TYP FEMALE NPT,DIAPH MATL SS 316,ELEC CONN 1/2 IN MALE NPT,SPCL FEATRS EXP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 4057.44 | | | |
| Preserve - Houston | Preserve | 72313.A | | | VALVE, BALL,MFR:PROSERV,PN:081862,OPRTD LOCKING HANDLE,CONN 1 SZ 1 IN,CONN 1 TYP FEMALE NPT,BDY MATL SS,MATL GR 316,STYL 2 WAY,SFTGDS SEAL: PTFE,SPCL FEATRS PRESSURE: 6000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 1220 | | | |
| Preserve - Houston | Preserve | 72314.A | | | VALVE, BALL,MFR:PROSERV,PN:P000263,CONN 1 SZ 3/8 IN,CONN 1 TYP FEMALE MP,BDY MATL SS,MATL GR 316,STYL 2 WAY,SFTGDS SEAL: BUNA,SPCL FEATRS PRESSURE: 20000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 953.82 | | | |
| Preserve - Houston | Preserve | 72315.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:076589,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE NPT,DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: PTFE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 175 | | | |
| Preserve - Houston | Preserve | 72316.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:081602,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE NPT,DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: PTFE,SPCL FEATRS PANEL MOUNT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 358 | | | |
| Preserve - Houston | Preserve | 72318.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:P003027,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE MP,DSGN RTNG 20000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: TEFLON,SPCL FEATRS V STEM | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 241.26 | | | |
| Preserve - Houston | Preserve | 72319.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:NV0504F02M5V10K,TYP DOUBLE BLOCK AND BLEED,CONN 1 SZ 1/4,CONN 1 TYP FEMALE MP,DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS VITON ELASTOMER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 248 | | | |
| Preserve - Houston | Preserve | 72320.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:082374,TYP DOUBLE BLOCK AND BLEED, BALL,CONN 1 SZ 1/2 IN,CONN 1 TYP FEMALE NPT,CONN 2 SZ 1/4 IN,CONN 2 TYP FEMALE NPT (VENT),DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: VITON | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 239.64 | | | |
| Preserve - Houston | Preserve | 72321.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:082443,TYP DOUBLE BLOCK AND BLEED,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE MP,CONN 2 SZ 1/4 IN,CONN 2 TYP FEMALE NPT (VENT),DSGN RTNG 15000 PSI,MATL SS,MATL GR 316,SFTGDS VITON ELASTOMER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 438.66 | | | |
| Preserve - Houston | Preserve | 72322.A | | | VALVE, BALL,MFR:PROSERV,PN:P003028,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE MP,BDY MATL SS,MATL GR 316,STYL 2 WAY,SFTGDS SEAL: VITON,SPCL FEATRS PRESSURE: 20000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 654.68 | | | |
| Preserve - Houston | Preserve | 72323.A | | | FILTER, ELEMENT,MFR:PROSERV,PN:090650,PN:080236,FLTRNG RETN 3 MIC,FLTRNG MATL SS 316,SEAL MATL VITON,DIM 60 mm,PRESS RTNG 6500 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 232 | | | |
| Preserve - Houston | Preserve | 72324.A | | | FILTER, ELEMENT,MFR:PROSERV,PN:090654,PN:080816,FLTRNG RETN 10 MIC,FLTRNG MATL SS 316,SEAL MATL VITON,DIM 60 mm,PRESS RTNG 6500 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 245.1 | | | |
| Preserve - Houston | Preserve | 72325.A | | | FILTER, ELEMENT,MFR:PROSERV,PN:090655,PN:080833,FLTRNG RETN 10 MIC,FLTRNG MATL SS 316,SEAL MATL VITON,DIM 60 mm,PRESS RTNG 15000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 416.1 | | | |
| Preserve - Houston | Preserve | 72326.A | | | KIT, REPAIR,MFR:PROSERV,PN:107553,PN:077832,APPLI BLADDER ACCUMULATOR (PRESSURE: 5000 PSI),REF:15 USG | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 860 | | | |
| Preserve - Houston | Preserve | 72327.A | | | FUSE,MFR:PROSERV,PN:075350,CL CC,AMP 1/8,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 23.9 | | | |
| Preserve - Houston | Preserve | 72329.A | | | FUSE,MFR:PROSERV,PN:075404,CL CC,AMP 1,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 18.68 | | | |
| Preserve - Houston | Preserve | 72330.A | | | FUSE,MFR:PROSERV,PN:060331,CL CC,AMP 2,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 458.16 | | | |
| Preserve - Houston | Preserve | 72332.A | | | FUSE,MFR:PROSERV,PN:075806,CL CC,AMP 1/2,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 5.7 | | | |
| Preserve - Houston | Preserve | 72331.A | | | FUSE,MFR:PROSERV,PN:078613,CL CC,AMP 10,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 19.72 | | | |
| Preserve - Houston | Preserve | 71601.A | | | PLATE,MFR:PROSERV,PN:079441,APPLI WELDMENT; SCMMB DEBRIS COVER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2500 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Proserve - Houston | Proserve | 72302.A | | | COMPUTER, PERSONAL;MFR:PROSERV,PN:090600,TYP WORKSTATION,DATA STRG CPCTY RAM 4 GB,HRD DRV 1 TB,OPTIONAL EXTRAS WIN 7 PROF,MFR:HP,MN:Z230 TOWER,REF:1S | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 297.66 | | |
| Proserve - Houston | Proserve | 72304.A | | | MONITOR, VIDEO;MFR:PROSERV,PN:090602MFR: HP,SZ 23 IN,SPEC DISPLAY TYPE: LED ELITE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 311.91 | | |
| Proserve - Houston | Proserve | 72645.A | | | CARD, ELECTRONIC;MFR:PROSERV,PN:090601,TYP GRAPHICS,APPLI 2 GB,MN:HP NVIDIA NVS 510 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 159.43 | | |
| Proserve - Houston | Proserve | 72272.A | | | DIODE;MFR:PROSERV,PN:ALB-TEDI0-000,TYP FORWARD BIAS TERMINAL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11.7 | | |
| Proserve - Houston | Proserve | 72273.A | | | SWITCH, NETWORK;MFR:PROSERV,PN:060330,PORT QTY (2) COPPER, (1) FIBER,MN:ETAP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 392.22 | | |
| Proserve - Houston | Proserve | 72274.A | | | SWITCH, NETWORK;MFR:PROSERV,PN:ROU-HUB8X-000,TYP ETHERNET, UNMANAGED,PORT QTY 8,VOLT 9.6-32 VDC,DIM WD 40 X HT 114 X DP 79 mm,SPCL FEATRS ENCLOSURE: IP30, 10/100TX, 177G | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 207.06 | | |
| Proserve - Houston | Proserve | 72276.A | | | TRANSMITTER, TEMPERATURE;MFR:PROSERV,PN:PRE-TMP001-000,TYP 2 WIRE, ROOM,RANGE 0-70 DEG C,O/P 4-20 mA,SUPPLY 8-35 VDC,SPCL FEATRS 95G, ENCLOSURE: IP30, DIMENSIONS: WD 121 X HT 70 X DP 25 MM | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 298.94 | | |
| Proserve - Houston | Proserve | 72277.A | | | RELAY;MFR:PROSERV,PN:044871,COIL VOLT 24 VDC,CNTCT ARNGEMNT 1CO,SPEC POLE QTY: 2P, POLARITY, FREE WHEELING DIODE, LED, MANUAL OVERRIDE, USE WITH BASE REL-R8004-000 (VPN S-12) | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 19.26 | | |
| Proserve - Houston | Proserve | 72278.A | | | BASE, RELAY;MFR:PROSERV,PN:044865,EQ MODEL:SERIES C12 FILTER;MFR:PROSERV,PN:RIT-PLD04-010,TYP ASSEMBLY,APPLI BASE PLINTH (800 MM) | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 8.26 | | |
| Proserve - Houston | Proserve | 72279.A | | | FAN, ELECTRIC;MFR:PROSERV,PN:069274MFR: RITTAL,AIR FLW CPCTY 800 m3/h,VOLT 115,WATT 170/225,AMP 1.5/2.2,HZ 50/60,MNTG FCLTY ROOF,SPCL FEATRS TEMPERATURE: 10-50 DEG C, WD 550 X HT 125 X DP 370 MM,APPLI TS TYPE CABINETS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 41.06 | | |
| Proserve - Houston | Proserve | 72280.A | | | THERMOSTAT;MFR:PROSERV,PN:RIT-ELE018-000MFR: SK,TYP INTERNAL ENCLOSURE,TEMP RNGE 5-60 DEG C,VOLT 230/115/60/48/24 VAC, 60/48/24 VDC,SPCL FEATRS 105G, WD 71 X HT 71 X DP 33.5 MM | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 532.34 | | |
| Proserve - Houston | Proserve | 72281.A | | | LIGHT;MFR:PROSERV,PN:NIS-ELE330-000,TYP UNIVERSAL,SPEC MOUNTING: PANEL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 36.52 | | |
| Proserve - Houston | Proserve | 72282.A | | | | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 236.88 | | |
| Proserve - Houston | Proserve | 72283.A | | | POWER SUPPLY;MFR:PROSERV,PN:RSC-ELE005-000,TYP SWITCH MODE,I/P VOLT 230 VAC,O/P VOLT 24-28 VDC,POWER RTG 360,DIM WD 80 X LG 125 X DP 125 mm,MNTG FCLTY DIN RAIL,SPEC 1.1 KG, REMOTE ON/OFF AND DC OK OPTIONS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 371.26 | | |
| Proserve - Houston | Proserve | 72284.A | | | BLOCK, TERMINAL;MFR:PROSERV,PN:WDM-TB053-000,TYP DOUBLE HIGH, FEED THROUGH,CLR BEIGE,MN:WDK2.5 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 6.16 | | |
| Proserve - Houston | Proserve | 72286.A | | | BLOCK, TERMINAL;MFR:PROSERV,PN:WDM-TE006-000,MN:WDU4 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 216 | | |
| Proserve - Houston | Proserve | 72287.A | | | MODULE;MFR:PROSERV,PN:ALB-CM013-000MFR: CONTROLLOGIX,TYP REDUNDANCY,SPCL FEATRS 0.29 KG, 1 SLOT WIDTH | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2931.16 | | |
| Proserve - Houston | Proserve | 72288.A | | | CABLE;MFR:PROSERV,PN:ALB-CM014-000MFR: CONTROLLOGIX,TYP REDUNDACY,LG 1 m,SPEC USE WITH 1756-RM REDUNDANCY MODULES | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 98.02 | | |
| Proserve - Houston | Proserve | 72289.A | | | CARD, ELECTRONIC;MFR:PROSERV,PN:PC40-30134-00,TYP ETHERNET,APPLI PLC,MN:EN2T | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 5116.6 | | |
| Proserve - Houston | Proserve | 72290.A | | | MODULE;MFR:PROSERV,PN:ALB-EI121-000,TYP DUAL ETHERNET PROCESSOR;MFR:PROSERV,PN:ALB-EI127-000,MEMORY 8 MB,SPCL FEATRS COMMUNICATIONS X1 USB, 0.25KG, 1 SLOT WIDTH,MFR:CONTROLLOGIX,MN:5573 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 1782.32 | | |
| Proserve - Houston | Proserve | 72291.A | | | | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 6635.36 | | |
| Proserve - Houston | Proserve | 72292.A | | | POWER SUPPLY;MFR:PROSERV,PN:ALB-PO006-000MFR: CONTROLLOGIX,I/P VOLT 120/230 VAC,O/P VOLT 5-24 VDC,O/P CURRENT 2.8-10 A,POWER RTG 75 W | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 538.98 | | |
| Proserve - Houston | Proserve | 72293.A | | | CONVERTER, SIGNAL;MFR:PROSERV,PN:AMP-IS003-000MFR: DIGI ONE,TYP IAP ETHERNET/SERIAL,I/P 9-30 VDC,O/P 0.5 A,SPEC 64G, WD 23 X LG 120 X DP 101 mm | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 734.52 | | |
| Proserve - Houston | Proserve | 72294.A | | | MODULE, COMMUNICATION;MFR:PROSERV,PN:ALB-EI094-000,TYP (32) WAY DI,I/P 24 VDC,SPCL FEATRS WD 94 X HT 94 X DP 69 MM,APPLI TB32/TB325 TERMINAL BASE,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 291.42 | | |
| Proserve - Houston | Proserve | 72295.A | | | MODULE, COMMUNICATION;MFR:PROSERV,PN:ALB-EI095-000,TYP (32) WAY DO,I/P 24 VDC,SPCL FEATRS WD 94 X HT 94 X DP 69 MM,APPLI TB32/TB325 TERMINAL BASE,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 328.76 | | |
| Proserve - Houston | Proserve | 72297.A | | | MODULE, COMMUNICATION;MFR:PROSERV,PN:ALB-EI096-000,TYP (8) WAY AI,I/P 24 VDC,APPLI TB2/TB3/TB35/TB37/TB3T5 TERMINAL BASE,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 569.6 | | |
| Proserve - Houston | Proserve | 72298.A | | | MODULE;MFR:PROSERV,PN:ALB-EI122-000,ETHERNET/IP,24 VDC,SPCL FEATRS QTY: 8,ADAPTOR,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 408.24 | | |
| Proserve - Houston | Proserve | 72299.A | | | 21.5" TOUCHSCREEN, MONITOR PANEL MOUNT. FPM-7211W-P3AE, PROSERV AX PN :055044 | | | EA | | | 1 | | 0 | | |
| Proserve - Houston | Proserve | 72300.A | | | COMPUTER, PERSONAL;MFR:PROSERV,PN:079233,MEMORY 8 GB,PROCSR CHIP TYP INTEL XEON,OPTIONAL EXTRAS 1U, RACK MOUNT, WINDOWS SERVER 2012, POWER: 250 W, ,1600MHZ,500GB SATA 3.5-IN 7.2K RPM HARD DRIVE,2 X NIC RJ45 ETHERNET PORTS,REF:E3-1270 V3 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 4505.26 | | |
| Proserve - Houston | Proserve | 72301.A | | | KEYBOARD;MFR:PROSERV,PN:RSC-KB002-000,TYP MICRO,CLR IVORY,WD 292,LG 1.5 m,CNCTR TYP USB,SPEC HT 30 X DP 161 MM, TRACK BALL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 122.1 | | |
| Proserve - Houston | Proserve | 72334.A | | | CONTACT, AUXILIARY;MFR:PROSERV,PN:054592,CNTCT ARNGEMNT 1NO,SPEC BOTTOM FITTED, ON/OFF SIGNAL,APPLI S200 MINI CIRCUIT BREAKER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 30.52 | | |
| Proserve - Houston | Proserve | 71605.A | | | ASSEMBLY,P004544 MFR:PROSERV, PN 065417,TYP DUMMY SCMMB FLUSHING PLATE,COMPRISING HOSE AND FITTINGS, SHIPPING FRAME AND RUNNING TOOL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 132308 | | |
| Proserve - Houston | Proserve | 71602.A | | | STATION;MFR:PROSERV,PN:075687,TYP TEST MASTER CONTROL,SPCL FEATRS 1EPU, 1TCPU, SINGLE PLC, W/ TEST LAPTOP,APPLI GUNFLINT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 / One at Fieldwood Office | | 101685 | | |
| Proserve - Houston | Proserve | 71611.A | | | HUB;MFR:PROSERV,PN:045367,TYP OPEN COMMUNICATION MODULE;MFR:PROSERV,PN:065403,TYP SUBSEA CONTROL,SPCL FEATRS 26 FUNCTION,APPLI NOBLE GUNFLINT,REF:SCM-002 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 593725 | | |
| Proserve - Houston | Proserve | 71599.A | | | | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 728462 | | |
| Proserve - Houston | Proserve | 71600.A | | | STAND;MFR:PROSERV,PN:065416,TYP TEST,SPCL FEATRS 26 FUNCTION, YIELD STRENGTH: 15/5 KSI,APPLI SUBSEA CONTROL MODULE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 121538 | | |
| Superior - Houston | Superior Energy Services | TLS-002928-10 | CS 2654 | Storage | | | EW 826 A19 | EA | | | 1 | | 795 | | |
| Superior - Houston | Superior Energy Services | TLD-002360-35 | CS 2645 | Storage | | | GC 200 TA9 | EA | | | 1 | | 3494.4 | | |
| Superior - Houston | Superior Energy Services | TLD-002385-6 | CS 2638 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3494.4 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Houston | Superior Energy Services | TLD-002385-8 | CS 2639 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3812.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-7 | CS 2640 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3812.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-13 | CS 2641 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3812.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-14 | CS 2642 | Storage | | | GC 200 TA3 | EA | | | 1 | | 4131.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-32 | CS 2643 | Storage | | | GC 200 TA9 | EA | | | 1 | | 3494.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-33 | CS 2644 | Storage | | | GC 200 TA9 | EA | | | 1 | | 4131.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-36 | CS 2646 | Storage | | | GC 200 TA9 | EA | | | 1 | | 4131.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-41 | CS 2600 | Storage | | | GC 200 TA9 | EA | | | 1 | | 9618.7 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-42 | CS 2601 | Storage | | | GC 200 TA9 | EA | | | 1 | | 9618.7 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-9 | CS 2620 | Storage | | | EW 826 A19 | EA | | | 1 | | 6685 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-8 | CS 2619 | Storage | | | EW 826 A19 | EA | | | 1 | | 9890 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-7 | CS 2618 | Storage | | | EW 826 A19 | EA | | | 1 | | 9890 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-6 | CS 2617 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-5 | CS 2616 | Storage | | | EW 826 A19 | EA | | | 1 | | 3695 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-4 | CS 2615 | Storage | | | EW 826 A19 | EA | | | 1 | | 9890 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-3 | CS 2614 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-2 | CS 2613 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-1 | CS 2612 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-18 | CS 2611 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-17 | CS 2610 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-16 | CS 2609 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-15 | CS 2608 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-14 | CS 2607 | Storage | | | GC 200 TA2 | EA | | | 1 | | 6770.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-9 | CS 2606 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-5 | CS 2605 | Storage | | | GC 200 TA2 | EA | | | 1 | | 6770.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-21 | CS 2604 | Storage | | | GC 200 TA2 | EA | | | 1 | | 5359.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-20 | CS 2603 | Storage | | | GC 200 TA2 | EA | | | 1 | | 5359.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-10 | CS 2602 | Storage | | | GC 200 TA3 | EA | | | 1 | | 10637.9 | | | |
| Superior - Houston | Superior Energy Services | WO00688365 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688370 | | Staging | | | GC 200 TA2 | EA | | | 2 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00685576 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 291384.5 | | | |
| Superior - Houston | Superior Energy Services | 31099117-01 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | 31102498-01 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | WO00685573 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 32714.5 | | | |
| Superior - Houston | Superior Energy Services | 31090933-01 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | 31098933-02 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | WO00688366 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688371 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688367 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688368 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688372 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688373 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00685511 | | Storage | | | GC 200 TA2 | EA | | | 1 | | 291854.5 | | | |
| Superior - Houston | Superior Energy Services | WO00685512 | | Storage | | | GC 200 TA2 | EA | | | 1 | | 291854.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-65 | CS 1509 | Storage | | | GC 109 A32 | EA | | | 1 | | 6579 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-64 | CS 1861 | Storage | | | GC 109 A32 | EA | | | 1 | | 2297.55 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-63 | CS 1511 | Storage | | | GC 109 A32 | EA | | | 1 | | 4594.25 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-56 | CS 1507 | Storage | | | GC 109 A32 | EA | | | 1 | | 6579 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-55 | CS 1508 | Storage | | | GC 109 A32 | EA | | | 1 | | 6579 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-15 | CS 1538 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-14 | CS 1537 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-12 | CS 1536 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-11 | CS 1540 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-10 | CS 1541 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-8 | CS 1539 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-7 | CS 1535 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-6 | CS 1542 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-5 | CS 1543 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-001891-21 | CS 1615 | Storage | | | SP 62 D1 | EA | | | 1 | | 6090 | | | |
| Superior - Houston | Superior Energy Services | TLS-001891-20 | CS 949 | Storage | | | SP 62 D1 | EA | | | 1 | | 13960 | | | |
| Superior - Houston | Superior Energy Services | 700151-01 | CS 317 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700151-03 | CS 316 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700151-02 | CS 315 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700151-04 | CS 314 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700097-19 | CS 111 | Storage | | | GC 65 41 | EA | | | 1 | | 5004 | | | |
| Superior - Houston | Superior Energy Services | 700097-02 | CS 110 | Storage | | | GC 65 41 | EA | | | 1 | | 5004 | | | |
| Superior - Houston | Superior Energy Services | 700097-01 | CS 109 | Storage | | | GC 65 41 | EA | | | 1 | | 5004 | | | |
| Superior - Houston | Superior Energy Services | 700097-05 | CS 100 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-04 | CS 99 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-03 | CS 98 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-07 | CS 106 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-06 | CS 105 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-09 | CS 108 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-08 | CS 107 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-13 | CS 104 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-12 | CS 103 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-11 | CS 102 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-10 | CS 101 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-17 | CS 97 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700097-16 | CS 96 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700097-15 | CS 94 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700097-14 | CS 95 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700086-01 | CS 2068 | Storage | | | GC 65 A60 | EA | | | 1 | | 10237.5 | | | |
| Superior - Houston | Superior Energy Services | 700086-2 | CS 1086 | Storage | | | GC 65 A60 | EA | | | 1 | | 9652.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002872-6 | CS 2483 | Storage | | | SM 280 H1 | EA | | | 1 | | 3834 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687151 | | Storage | | | | EA | A | | 1 | | 4257 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687139 | | Assembly | | | | EA | B | | 2 | | 3753 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688333 (p) | | Storage | | | | EA | | | 2 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31099758-01 | | Staging | | | | EA | | | 1 | | 5470.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686995 | | Staging | | | | EA | | | 3 | | 4378.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686998 | | Staging | | | | EA | | | 3 | | 4378.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683517-01 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683872 | | Staging | | | | EA | | | 1 | | 6051.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683871 | | Staging | | | | EA | | | 1 | | 124778.5 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Lafayette | Superior Energy Services | WO00684280 | | Staging | | | | EA | | | 1 | | 13919.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690219 | | Staging | | | | EA | | | 1 | | 18683 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684437 | | Staging | | | | EA | | | 1 | | 1543.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683862 | | Staging | | | | EA | | | 1 | | 4378.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683878 | | Staging | | | | EA | | | 1 | | 61530 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690218 | | Staging | | | | EA | | | 1 | | 18683 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690781 | | Staging | | | | EA | B | | 1 | | 5652.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690780 | | Staging | | | | EA | B | | 1 | | 13195 | | | |
| Superior - Lafayette | Superior Energy Services | WO000779 | | Staging | | | | EA | E | | 1 | | 225697.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690778 | | Staging | | | | EA | A | | 1 | | 6457.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690777 | | Staging | | | | EA | F | | 1 | | 3500 | | | |
| Superior - Lafayette | Superior Energy Services | WO00693130 | | Staging | | | | EA | A | | 1 | | 22554 | | | |
| Superior - Lafayette | Superior Energy Services | 31102812 | | Staging | | | | EA | E | | 8 | | 2450 | | | |
| Superior - Lafayette | Superior Energy Services | WO00693128 | | Staging | | | | EA | A | | 1 | | 647500 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688271 (p) | | Storage | | | | EA | | | 15 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31100712-01 | | Staging | | | | EA | B | | 1 | | 3009 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687141 | | Staging | | | | EA | A | | 5 | | 3543 | | | |
| Superior - Lafayette | Superior Energy Services | 31100714-02 | | Staging | | | | EA | C | | 1 | | 1701 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687138 | | Staging | | | | EA | B | | 1 | | 3855 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687677-01 | | Staging | | | | EA | B | | 1 | | 10548 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687156 | | Staging | | | | EA | A | | 1 | | 2919 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687676-02 | | Staging | | | | EA | B | | 1 | | 14046 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687154 | | Staging | | | | EA | B | | 1 | | 2124 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687675-02 | | Staging | | | | EA | M | | 1 | | 4545 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688066 | | Staging | | | | EA | A | | 1 | | 5175 | | | |
| Superior - Lafayette | Superior Energy Services | 31101741-02 | | Staging | | | | EA | A | | 1 | | 7461 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687153 | | Staging | | | | EA | A | | 1 | | 10120 | | | |
| Superior - Lafayette | Superior Energy Services | 31101733-01 | | Staging | | | | EA | A | | 1 | | 5196 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687119 | | Staging | | | | EA | F | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687133 | | Staging | | | | EA | A | | 1 | | 17100 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687132 | | Staging | | | | EA | A | | 1 | | 17100 | | | |
| Superior - Lafayette | Superior Energy Services | 31100712-02 | | Staging | | | | EA | B | | 1 | | 3009 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687131 | | Staging | | | | EA | A | | 5 | | 3543 | | | |
| Superior - Lafayette | Superior Energy Services | 31100714-01 | | Staging | | | | EA | C | | 1 | | 1701 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687128 | | Staging | | | | EA | B | | 1 | | 3855 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687126 | | Staging | | | | EA | B | | 4 | | 3855 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687124 | | Staging | | | | EA | B | | 1 | | 3855 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687125 | | Staging | | | | EA | H | | 1 | | 9270 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687677-02 | | Staging | | | | EA | B | | 1 | | 10548 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687150 | | Staging | | | | EA | A | | 1 | | 2919 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687676-01 | | Staging | | | | EA | B | | 1 | | 14046 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687149 | | Staging | | | | EA | B | | 1 | | 2124 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687675-01 | | Staging | | | | EA | M | | 1 | | 4545 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688062 | | Staging | | | | EA | A | | 1 | | 5175 | | | |
| Superior - Lafayette | Superior Energy Services | 31101741 | | Staging | | | | EA | A | | 1 | | 7461 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687148 | | Staging | | | | EA | A | | 1 | | 10120 | | | |
| Superior - Lafayette | Superior Energy Services | 31100725-01 | | Staging | | | | EA | A | | 1 | | 4490.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690721 | | Staging | | | | EA | E | | 3 | | 3080 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-11 | | Staging | | | | EA | P | | 1 | | 1067.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31101195-04 | | Staging | | | | EA | C | | 1 | | 5568.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690720 | | Staging | | | | EA | D | | 1 | | 10815 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690719 | | Staging | | | | EA | G | | 1 | | 3920 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690718 | | Staging | | | | EA | J | | 1 | | 6877.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688070 | | Staging | | | | EA | A | | 1 | | 4368 | | | |
| Superior - Lafayette | Superior Energy Services | 31101741-01 | | Staging | | | | EA | A | | 1 | | 7293 | | | |
| Superior - Lafayette | Superior Energy Services | 31100764-02 | | Staging | | | | EA | A | | 1 | | 3078 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687091 | | Staging | | | | EA | B | | 1 | | 2958 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688068 | | Staging | | | | EA | A | | 1 | | 5205 | | | |
| Superior - Lafayette | Superior Energy Services | 31100721-01 | | Staging | | | | EA | C | | 1 | | 4773 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687090 | | Staging | | | | EA | D | | 1 | | 9720 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687089 | | Staging | | | | EA | G | | 14 | | 3360 | | | |
| Superior - Lafayette | Superior Energy Services | 31100766-02 | | Staging | | | | EA | C | | 1 | | 1035 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688072 | | Staging | | | | EA | A | | 1 | | 46764 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687088 | | Staging | | | | EA | D | | 1 | | 47871 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687087 | | Staging | | | | EA | B | | 1 | | 13950 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687086 | | Staging | | | | EA | B | | 1 | | 8853 | | | |
| Superior - Lafayette | Superior Energy Services | WO00073496-01 | | Staging | | | | EA | E | | 1 | | 5916 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687085 | | Staging | | | | EA | B | | 1 | | 25599 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687084 | | Staging | | | | EA | B | | 1 | | 5130 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687083 | | Staging | | | | EA | B | | 1 | | 127228.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687082 | | Staging | | | | EA | B | | 1 | | 17325 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687081 | | Storage | | | | EA | A | | 1 | | 14433 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687080 | | Staging | | | | EA | A | | 1 | | 13287 | | | |
| Superior - Lafayette | Superior Energy Services | 31100761-02 | | Staging | | | | EA | C | | 1 | | 4773 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-17 | | Staging | | | | EA | P | | 1 | | 915 | | | |
| Superior - Lafayette | Superior Energy Services | 31102937-01 | | Staging | | | | EA | A | | 1 | | 3849 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687079 | | Staging | | | | EA | E | | 3 | | 2640 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687078 | | Staging | | | | EA | D | | 1 | | 9270 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687077 | | Staging | | | | EA | G | | 3 | | 3360 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688069 | | Staging | | | | EA | A | | 1 | | 4368 | | | |
| Superior - Lafayette | Superior Energy Services | 31101741-02 | | Staging | | | | EA | A | | 1 | | 7293 | | | |
| Superior - Lafayette | Superior Energy Services | 31100764-01 | | Staging | | | | EA | A | | 1 | | 3078 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687094 | | Staging | | | | EA | B | | 4 | | 2958 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688067 | | Staging | | | | EA | A | | 1 | | 5205 | | | |
| Superior - Lafayette | Superior Energy Services | 31100761-01 | | Staging | | | | EA | C | | 1 | | 4773 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687093 | | Staging | | | | EA | D | | 1 | | 9270 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688071 | | Staging | | | | EA | B | | 1 | | 46764 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687092 | | Staging | | | | EA | G | | 14 | | 3360 | | | |
| Superior - Lafayette | Superior Energy Services | 31100766-01 | | Staging | | | | EA | 1 | | 1 | | 1035 | | | |
| Superior - Lafayette | Superior Energy Services | 31101349-01 | | Staging | | | | EA | | | 1 | | 8508.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688253 | | Staging | | | | EA | | | 1 | | 29865.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684413-01 | | Staging | | | | EA | | | 1 | | 6902 | | | |
| Superior - Lafayette | Superior Energy Services | 31101349-01 | | Staging | | | | EA | | | 1 | | 5561.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31101349-02 | | Staging | | | | EA | | | 1 | | 5561.5 | | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Lafayette | Superior Energy Services | WO00688800 | | Staging | | | | EA | | | 5 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31101104-02 | | Staging | | | | EA | | | 1 | | 4018 | | | |
| Superior - Lafayette | Superior Energy Services | 31101104-03 | | Staging | | | | EA | | | 1 | | 4018 | | | |
| Superior - Lafayette | Superior Energy Services | 31101104-01 | | Staging | | | | EA | | | 1 | | 4018 | | | |
| Superior - Lafayette | Superior Energy Services | 31100699-01 | | Staging | | | | EA | | | 1 | | 2905 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688259 | | Staging | | | | EA | | | 1 | | 2401 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688269 | | Staging | | | | EA | | | 1 | | 12477.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00681355-01 | | Staging | | | | EA | | | 1 | | 34660.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688268 | | Staging | | | | EA | | | 1 | | 4161.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688267 | | Staging | | | | EA | | | 1 | | 2625 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688266 | | Staging | | | | EA | | | 4 | | 4658.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688265 | | Staging | | | | EA | | | 1 | | 1876 | | | |
| Superior - Lafayette | Superior Energy Services | 31068949-M4498-7 | | Staging | | | | EA | | | 1 | | 8767.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688264 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688260 | | Staging | | | | EA | | | 3 | | 3920 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688263 | | Staging | | | | EA | | | 1 | | 10815 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-13 | | Staging | | | | EA | | | 1 | | 5568.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-13 | | Staging | | | | EA | | | 1 | | 1067.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-04 | | Staging | | | | EA | | | 1 | | 1067.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688262 | | Staging | | | | EA | | | 6 | | 3080 | | | |
| Superior - Lafayette | Superior Energy Services | 31100725-02 | | Staging | | | | EA | | | 1 | | 4490.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31100725-03 | | Staging | | | | EA | | | 1 | | 4490.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688261 | | Staging | | | | EA | | | 1 | | 15501.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688258 | | Staging | | | | EA | | | 1 | | 16488.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688608 | | Staging | | | | EA | | | 1 | | 14651 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688607 | | Staging | | | | EA | | | 1 | | 14651 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688606 | | Staging | | | | EA | | | 1 | | 13828.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688605 | | Staging | | | | EA | | | 1 | | 13828.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688257 | | Staging | | | | EA | | | 1 | | 32123 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688256 | | Staging | | | | EA | | | 1 | | 37261 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688255 | | Staging | | | | EA | | | 1 | | 16387 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688254 | | Staging | | | | EA | | | 1 | | 29865.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688252 | | Staging | | | | EA | | | 1 | | 10328.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31099394-01 | | Staging | | | | EA | | | 1 | | 6902 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688251 | | Staging | | | | EA | | | 1 | | 10328.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688250 | | Staging | | | | EA | | | 1 | | 16275 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688249 | | Staging | | | | EA | | | 1 | | 16275 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688248 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688247 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688246 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31065836-13 | | Staging | | | | EA | | | 1 | | 1067.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687005 | | Staging | | | | EA | | | 1 | | 2401 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687001 | | Staging | | | | EA | | | 3 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31100215-03 | | Staging | | | | EA | | | 1 | | 8508.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31100215-02 | | Staging | | | | EA | | | 1 | | 8508.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31099396-01 | | Staging | | | | EA | | | 1 | | 5568.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687004 | | Staging | | | | EA | | | 1 | | 10815 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687003 | | Staging | | | | EA | | | 3 | | 3920 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686997 | | Staging | | | | EA | | | 1 | | 2401 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686996 | | Staging | | | | EA | | | 3 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31100215-01 | | Staging | | | | EA | | | 1 | | 8508.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31098272-02 | | Staging | | | | EA | | | 1 | | 5887 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683073 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683075 | | Staging | | | | EA | | | 10 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683074 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683067 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683066 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683068 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683037 | | Staging | | | | EA | | | 1 | | 5848.5 | | | |
| Superior - Lafayette | Superior Energy Services | 611827-19 | | Staging | | | | EA | | | 1 | | 3307.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683064 | | Staging | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683035 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683034 | | Staging | | | | EA | | | 1 | | 16275 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683033 | | Staging | | | | EA | | | 1 | | 32406.5 | | | |
| Superior - Lafayette | Superior Energy Services | 673496-05 | | Staging | | | | EA | | | 1 | | 6902 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683031 | | Staging | | | | EA | | | 1 | | 29865.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683032 | | Staging | | | | EA | | | 1 | | 5985 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683030 | | Staging | | | | EA | | | 1 | | 124401.2 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683029 | | Staging | | | | EA | | | 1 | | 20212.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683027 | | Staging | | | | EA | | | 1 | | 15501.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683500-01 | | Staging | | | | EA | | | 1 | | 4490.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683025 | | Staging | | | | EA | | | 3 | | 3080 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683022 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683517-02 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683021 | | Staging | | | | EA | | | 1 | | 6877.5 | | | |
| Superior - Lafayette | Superior Energy Services | TLD-002362-3 | | Storage | | | | EA | | | 1 | | 6585 | | | |
| Superior - Lafayette | Superior Energy Services | TLD-002362-2 | | Storage | | | | EA | | | 1 | | 4135 | | | |
| Superior - Lafayette | Superior Energy Services | TLD-002362-1 | | Storage | | | | EA | | | 1 | | 4135 | | | |
| Superior - Lafayette | Superior Energy Services | 31099788-02 | | Staging | | | | EA | | | 1 | | 4689 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684293 | | Storage | | | | EA | | | 1 | | 6877.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690407 | | Storage | | | | EA | | | 1 | | 16014 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690110 | | Storage | | | | EA | | | 1 | | 1323 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683904 | | Storage | | | | EA | | | 1 | | 10328.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683059 | | Assembly | | | | EA | | | 1 | | 5985 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683868 | | Storage | | | | EA | | | 1 | | 19950 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683888 | | Storage | | | | EA | | | 1 | | 19950 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684438 | | Storage | | | | EA | | | 1 | | 1543.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683852 | | Storage | | | | EA | | | 1 | | 6051.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683851 | | Storage | | | | EA | | | 1 | | 124778.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684270 | | Storage | | | | EA | | | 1 | | 13919.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684269 | | Storage | | | | EA | | | 1 | | 77199.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31099274-05 | | Storage | | | | EA | | | 1 | | 4144 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683850 | | Storage | | | | EA | | | 4 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683849 | | Storage | | | | EA | | | 1 | | 6877.5 | | | |

110

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Lafayette | Superior Energy Services | WO00687045 | | Storage | | | | EA | | | 1 | | 12040 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683848 | | Storage | | | | EA | | | 14 | | 4095 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687044 | | Storage | | | | EA | | | 1 | | 10835 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683847 | | Storage | | | | EA | | | 1 | | 67392.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683846 | | Storage | | | | EA | | | 1 | | 16387 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683845 | | Storage | | | | EA | | | 1 | | 37261 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684275 | | Storage | | | | EA | | | 1 | | 32123 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683844 | | Storage | | | | EA | | | 1 | | 6051.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683843 | | Storage | | | | EA | | | 1 | | 124778.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684723 | | Storage | | | | EA | | | 1 | | 77199.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684272 | | Storage | | | | EA | | | 1 | | 13919.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683842 | | Storage | | | | EA | | | 1 | | 19950 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683834 | | Storage | | | | EA | | | 1 | | 10835 | | | |
| Superior - Lafayette | Superior Energy Services | 31099274-02 | | Storage | | | | EA | | | 1 | | 4144 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683831 | | Storage | | | | EA | | | 1 | | 6877.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683832 | | Storage | | | | EA | | | 14 | | 4095 | | | |
| Superior - Lafayette | Superior Energy Services | 3109S228-02 | | Storage | | | | EA | | | 1 | | 5708.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683903 | | Storage | | | | EA | | | 1 | | 33575.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683902 | | Storage | | | | EA | | | 1 | | 2460.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683901 | | Storage | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | 3109S228-01 | | Storage | | | | EA | | | 1 | | 5708.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683900 | | Storage | | | | EA | | | 1 | | 33575.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683899 | | Storage | | | | EA | | | 1 | | 2460.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683898 | | Storage | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683914 | | Storage | | | | EA | | | 1 | | 127228.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683913 | | Storage | | | | EA | | | 1 | | 20212.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686388 | | Storage | | | | EA | | | 1 | | 8767.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683897 | | Storage | | | | EA | | | 1 | | 1876 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683109 | | Staging | | | | EA | | | 1 | | 13387.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683100 | | Staging | | | | EA | | | 1 | | 13387.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683108 | | Staging | | | | EA | | | 1 | | 6037.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683099 | | Staging | | | | EA | | | 1 | | 6037.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683271-02 | | Staging | | | | EA | | | 1 | | 34660.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683107 | | Staging | | | | EA | | | 1 | | 4161.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683104 | | Staging | | | | EA | | | 1 | | 5848.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683101 | | Staging | | | | EA | | | 4 | | 4658.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683271-01 | | Staging | | | | EA | | | 1 | | 34660.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683098 | | Staging | | | | EA | | | 1 | | 4161.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683554-01 | | Staging | | | | EA | | | 1 | | 16387 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683097 | | Staging | | | | EA | | | 1 | | 4081 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683096 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683095 | | Staging | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | 683514-03 | | Staging | | | | EA | | | 1 | | 3307.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683094 | | Staging | | | | EA | | | 1 | | 5848.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683093 | | Staging | | | | EA | | | 4 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683092 | | Staging | | | | EA | | | 4 | | 4658.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683056 | | Staging | | | | EA | | | 1 | | 16488.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683049 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | 3106894B-M449B-2 | | Staging | | | | EA | | | 1 | | 8767.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683020 | | Staging | | | | EA | | | 1 | | 1876 | | | |
| Superior - Lafayette | Superior Energy Services | TLS-002872-8 | | Assembly | | | | EA | | | 1 | | 6972 | | | |
| Superior - Lafayette | Superior Energy Services | TLS-002872-7 | | Assembly | | | | EA | | | 1 | | 12285 | | | |
| Technip - Broussard | Technip FMC | JO-66490-02 | JO-66490-02 | RMA203008 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI-056577 | PFI-056577 | 203111 TRNSFR FR FMC HOU | CM-1, 13 3/8 TIEBACK ADAPTER ASSY, 13 5/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2009-07-133T | 2009-07-133T | 203064 | TUBING HEAD ASSY, TCM-6T 9 3/4 HPE BTM P | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | RMC100984-L | RMC100984-L | 203027 | TERMINATING FLANGE ASSY, 1-18K BX-SPCL P | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | RMC99784-L | RMC99784-L | 203008 | TERMINATING FLANGE ASSY, 1-18K BX-SPCL P | | | EA | | | 1 | | 3900 | | | |
| Technip - Broussard | Technip FMC | 2009-07-15T | 2009-07-15T | | 1 13/16"-15K, Manual GV Assy | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2005-07-801H | 2005-07-801H | 203008 | GV ASSY SURFACE, M150 VLT, FE 3 1/16-15K | | | EA | | | 1 | | 9750 | | | |
| Technip - Broussard | Technip FMC | 2006-06-62T | 2006-06-62T | 203027 | GV ASSY SURFACE, M150 VLT, FE 3 1/16-15K | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2006-06-61T | 2006-06-61T | 203027 | GV ASSY SURFACE, M150 VLT, FE 3 1/16-15K | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | FF25554-01 | FF25554-01 | 203008 | BLIND FLANGE, 3 1/16-15K FLG, FF, PSI 2, | | | EA | | | 1 | | 560 | | | |
| Technip - Broussard | Technip FMC | 300024518 | 300024518 | 203008 | TREE CAP ADAPTER, B-11-AO, ASSY, 3 1/16- | | | EA | | | 1 | | 4980 | | | |
| Technip - Broussard | Technip FMC | 12506-01 | 12506-01 | 203027 | TREE CAP ADAPTER, B-11-AO, ASSY, 3 1/16- | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | WO#34626-01 | WO#34626-01 | 203027 | CROSS ASSY, C-600 (STDD), 3 1/16 15K API | | | EA | | | 1 | | 8994.32 | | | |
| Technip - Broussard | Technip FMC | HT-5524-1 | HT-5524-1 | 203008 | CROSS ASSY, C-600 (STDD), 3 1/16 15K API | | | EA | | | 1 | | 3166 | | | |
| Technip - Broussard | Technip FMC | 62661-13 | 62661-13 | 203110 TRNSFR FR FMC HOU | MQC 12 LONG TERM PROTECTION CAP W/OUT RO | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32321-02 | HO32321-02 | RMA203281 | TREE CAP ASSY, HES STYLE, SPCL, 7-1/16 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32334-02 | HO32334-02 | RMA203281 | 17D VALVE ASSY, CM-1 PRODUCTION TREE, 2X | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | RB261196 | RB261196 | 203110 TRNSFR FR FMC HOU | CM-1, 9 5/8 TIEBACK ADAPTER ASSY, 9 5/8 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 98-1117H | 98-1117H | RMA203281 | GV ASSY, S/S, M130, FE, ACTD, 3 1/16 10K | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | LAF6711 | LAF6711 | RMA203281 | OBS-CM-1, TUBING HEAD ASSY, SUPER PART, | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 98-1209-H | 98-1209-H | RMA203281 | ANNULUS WING VALVE BLOCK ASSY, SUBSEA M1 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32390-01 | HO32390-01 | RMA203281 | OBS-CM-1, TUBING HANGER ASSY, 9.295/9.28 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32433-02 | HO32433-02 | RMA203281 | OBS-CM-1, 13 5/8-5K CLAMP HUB (MOD) TOP | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | MWS84993-01 | MWS84993-01 | RMA203281 | BLIND FLANGE, 1-12.5K FLG, HH, PSI 3, P- | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | MWS84993-09 | MWS84993-09 | RMA203281 | BLIND FLANGE, 1-12.5K FLG, HH, PSI 3, P- | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HD21732-02 | HD21732-02 | 203059 | TEE ASSEMBLY, T-608, 3 1/16-10000 X 2 9/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | WO-21575-01 | WO-21575-01 | RMA203128 | TEE ASSEMBLY, T-608, 3 1/16-10000 X 2 9/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054891-2 | 1054891-2 | 203110 TRNSFR FR FMC HOU | HOSE AND CONNECTOR ASSY, 1 X 1 LEGS, F/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054892-2 | 1054892-2 | 203110 TRNSFR FR FMC HOU | HOSE AND CONNECTOR ASSY, 1 X 2 LEGS, F/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054890-2 | 1054890-2 | 203110 TRNSFR FR FMC HOU | SENSOR ASSY, 4-20 MA, W/ PRESSURE TRANSD | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054889-2 | 1054889-2 | 203110 TRNSFR FR FMC HOU | SENSOR ASSY, 4-20 MA, W/ PT/TT AND 4-WAY | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2008-10-09165 | 2008-10-09165 | 203110 TRNSFR FR FMC HOU | CM-1, COMPOSITE TREE SUPER ASSY, 10K WP, | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2009-03-77T | 2009-03-77T | 203110 TRNSFR FR FMC HOU | CM-1, TUBING HEAD ASSY, 13 5/8-5K SL-II | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | AM1252-01 | AM1252-01 | 203110 TRNSFR FR FMC HOU | CM-1, TUBING HANGER ASSY, 3 1/2 (9.3 LB/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | AD22144-01 | AD22144-01 | 203110 TRNSFR FR FMC HOU | CROSSOVER JOINT, 20 API BC THD PIN TOP X | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI06134B | PFI06134B | 203008 | TUBING HANGER ASSY, TC-1A-EMS, 11 FLG, 1 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 030373-01-01 | 030373-01-01 | 203027 | TUBING HANGER ASSY, TC-1A-EMS, 11 FLG, 3 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | D0710001-0B | D0710001-0B | 203110 TRNSFR FR FMC HOU | SD-1, BUTTWELD SUB, 36 , 80.385 MIN ID, D | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | AD-21319-01 | AD-21319-01 | RMA203237 | ADAPTER BODY, A-4-A4, 11-15K STDD BTM X 3 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PF1058777 | PF1058777 | 203111 TRNSFR FR FMC HOU | CROSSOVER JOINT, 9 5/8 (47.00 LB/FT) BC | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PF1058778 | PF1058778 | 203110 TRNSFR FR FMC HOU | CROSSOVER JOINT, 9 5/8 (47.00 LB/FT) BC | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI057990 | PFI057990 | 203111 TRNSFR FR FMC HOU | CROSSOVER JOINT, 13 3/8 (68.00 LB/FT) BC | | | EA | | | 1 | | 0 | | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Technip - Broussard | Technip FMC | PF1057991 | PF1057991 | 203110 TRNSFR FR FMC HOU | CROSSOVER JOINT, 13 3/8 (68.00 LB/FT) BC | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | HN-27639-SB | HN-27639-SB | 203110 TRNSFR FR FMC HOU | X-MAS TREE, HYDRAULIC CONTROLS KIT, F/ T | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2006-06-183T | 2006-06-183T | 203027 | GV ASSY SURFACE, M150, FE 3 1/16-15K, RE | | | EA | | | 1 | | | 18556.69 | | |
| Technip - Broussard | Technip FMC | 2006-06-250T | 2006-06-250T | 203027 | GV ASSY SURFACE, M150, FE 3 1/16-15K, RE | | | EA | | | 1 | | | 18556.69 | | |
| Technip - Broussard | Technip FMC | 2005-09-32T | 2005-09-32T | 203008 | GV ASSY SURFACE, M150, FE 3 1/16-15K, RE | | | EA | | | 1 | | | 6210 | | |
| Technip - Broussard | Technip FMC | PFI044523 | PFI044523 | 203027 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 2185.39 | | |
| Technip - Broussard | Technip FMC | PFI044524 | PFI044524 | 203027 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 2185.39 | | |
| Technip - Broussard | Technip FMC | PFI038246-001 | PFI038246-001 | 203008 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 778 | | |
| Technip - Broussard | Technip FMC | PFI038246-003 | PFI038246-003 | 203008 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 778 | | |
| Technip - Broussard | Technip FMC | 2006-06-72T | 2006-06-72T | 203027 | LOWER MASTER BLOCK VALVE, ASSY, S1, 3 1/ | | | EA | | | 1 | | | 65461.23 | | |
| Technip - Broussard | Technip FMC | 2005-09-189T | 2005-09-189T | 203008 | LOWER MASTER BLOCK VALVE, ASSY, S1, 3 1/ | | | EA | | | 1 | | | 23700 | | |
| Technip - Broussard | Technip FMC | HN-P3576 | HN-P3576 | 203008 | TUBING HANGER ASSY, TC-1A-EMS, 11 FLG, 3 | | | EA | | | 1 | | | 18960 | | |
| Technip - Broussard | Technip FMC | LAF6589 | LAF6589 | RMA203122 | TUBING HEAD TCM 11" 10K FLG BTM X 7-1/16 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6590 | LAF6590 | RMA203122 | TUBING HEAD OCT 7-1/16" 10K X 3-1/16" | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6596 | LAF6596 | RMA203122 | TREE CAP BODY 3" 10K | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | GA3186/1501/7/1 | GA3186/1501/7/1 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6712 | LAF6712 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | GA3186/1501/1/6 | GA3186/1501/1/6 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | GA3186/1501/1/10 | GA3186/1501/1/10 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 771965-1 | 771965-1 | RMA203122 | GATE VALVE ASSY 3 3/16" 10K WKM M2 MANUA | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 13530-4 | 13530-4 | RMA203122 | GATE VALVE ASSY 3-1/16 10K W/AXELSON ACT | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 429123 | 429123 | RMA203122 | GATE VALVE ASSY 3-1/16 10K MANUAL WKM M2 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 5005180-5 | 5005180-5 | RMA203122 | GATE VALVE ASSY 2-9/16" 10K MANUAL VETCO | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 480655-1 | 480655-1 | RMA203122 | GATE VALVE ASSY 2-9/16 10K MANUAL M1 WKM | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6739 | LAF6739 | RMA203122 | GATE VALVE ASSY 1-13/16" 10K MANUAL WKM | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6738 | | RMA203122 | GATE VALVE ASSY 1-13/16" 10K MANUAL OTIS | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6595 | LAF6595 | RMA203122 | DOUBLE STDD ADAPTER 2-9/16" 10K X | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6592 | LAF6592 | RMA203122 | DOUBLE STDD ADAPTER 2-9/16 10K X | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | CC191267/1 | CC191267/1 | 203018 | CHOKE ASSY. POS. 3 1/16 15K FLG INLET X | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6496 | LAF6496 | 203059 | CHOKE ASSY. ADJ 2 9/16 10K FLG-INLET/ FL | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | AO-0041 | AO-0041 | 203027 | CHOKE ASSY,ADJ.3 1/15K FLG.INLET X FLG.O | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6593 | LAF6593 | RMA203122 | CHOKE ASSY POS 1-13/16" 10K x FLG INLET | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 95-0213?H | 95-0213?H | 155851 | OBSOLETE & NOT REPLACED - 14D GV ASSY FE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 95-11193-H | 95-11193-H | RMA203128 | OBSOLETE & NOT REPLACED - 14D GV ASSY FE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 98-01139H | 98-01139H | 155851 | *** OBSOLETE AND REPLACED BY P168609 *** | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-03106-H | 97-03106-H | RMA203128 | *** OBSOLETE AND REPLACED BY P168609 *** | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 95-03140H | 95-03140H | 155851 | GV ASSY MOD130 3-1/16 FB | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-02113-H | 97-02113-H | RMA203128 | GV ASSY MOD130 3-1/16 FB | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-02114-H | 97-02114-H | RMA203128 | GV ASSY MOD130 3-1/16 FB | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6495 | LAF6495 | 155851 | GV ASSY SURFACE, M130, FE 2 9/16-10K, PR | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-02123-H | 97-02123-H | RMA203128 | GV ASSY SURFACE, M130, FE 2 9/16-10K, PR | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2007-08-106H | 2007-08-106H | 203111 TRNSFR FR FMC HOU | MQC6 INBOARD ASSEMBLY MINI (3)PSI, NA, 1Q | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC101750-A-01 | RMC101750-A-01 | 203111 TRNSFR FR FMC HOU | SD-1, TIEBACK SUB, ASSY, 9 5/8, 9 5/8 BC | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | HO45569 | M6893-02 | 203110 TRNSFR FR FMC HOU | SD-1, TIEBACK SUB, ASSY, 9 5/8, 9 5/8 BC | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC-101750-A02 | RMC101750-A-02 | 203110 TRNSFR FR FMC HOU | SD-1, ASSEMBLY, TIEBACK SUB, 7", W/7" AP | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC103989-02 | RMC103989-02 | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 9 5/8 X 7, 7 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC103989-01 | RMC103989-01 | 203110 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 9 5/8 X 7, 7 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2006-09-104-2 | HN-200609104-2 | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 13 3/8 X 9 5/ | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2006-09-096-7 | 2006-09-096-7 | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 20 X 13 3/8, | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | HE0612015-3MT | HE0612015-3MT | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 30 X 20, 20 B | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | H029400 | H029400 | RMA203128 | ADPTR ASSY, A-4-M, 11 10K STD'D BTM X 3 | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633156CP | 13A00110 | HD A0BC | S2S-5V FLOAT COLLAR S 21.44 P-110 EC (125KSI) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633156CP | 13A00110 | HD A0BC | S2S-5V FLOAT COLLAR S 21.44 P-110 EC (125KSI) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633157CP | 13A00111 | HD A12D | S26-0V NON-AUTOFILL SETSHOE S21.44 P-110 EC (125KSI) ULTRA-FJ BOX X AL BLADED NOSE W/SIDE PORTS (1-PC) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-108383CP | 08E02274 | HD A26C | S26-0V NON-AUTOFILL SETSHOE S21.44 P-110 EC (125KSI) ULTRA-FJ BOX X AL BLADED NOSE W/SIDE PORTS (1-PC) RP SPLINE SUB X-PAK S-1/2 17#P-110 ULTRA-FJ BXP W/5.875 OD | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119720CP | 13A00100 | HD A26C | RP SPLINE SUB X-PAK S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN F/UPR-C & W/5.500 OD | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633154CP | 13A00097 | HD A26C | X-PAK LNR HGR S 21.4# P-110 EC (125KSI) ULT-FJ PIN X 7 42.7# *COLLET #110515* (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633154CP | 13A00098 | HD A26C | X-PAK LNR HGR S 21.4# P-110 EC (125KSI) ULT-FJ PIN X 7 42.7# *COLLET #110515* (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-634038CP | 14F04050 | HD A26C | DPOB W/GREASE PORT S-1/2 17#P-110 ULTRA-FJ BOX X 20# STL PIN F/2.594 OD PDL NPL | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119720CP | 13A00099 | HD A26D | RP SPLINE SUB X-PAK S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN F/UPR-C & W/5.500 OD | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00101 | HD A26D | EXT NPL S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00102 | HD A26D | EXT NPL S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00103 | HD A26D | EXT NPL S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00104 | HD A26D | EXT NPL S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633155CP | 13A00105 | HD A26D | DRILLABLE PO BUSH S 21.4# P-110 EC ULTRA-FJ BOX X PIN W/O-RG INSERT & F/2.594 OD POL NPL | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633155CP | 13A00106 | HD A26D | DRILLABLE PO BUSH S 21.4# P-110 EC ULTRA-FJ BOX X PIN W/O-RG INSERT & F/2.594 OD POL NPL | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-521973CP | 14F04053 | HD A30C | 226-0V NON-AUTO FILL SETSHOE S-1/2 20# P-110 STL BOX X CEMENT NOSE | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-528641CP | 14F04051 | HD A30C | PDC O-L LANDING COLLAR S-1/2 20# P-110 STL BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-634039CP | 14F04052 | HD A30C | 22S-5V FLOAT COLLAR S-1/2 20#P-110 STL BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-528446CP | 13A00107 | HD A318 | PDC O-L LANDING COLLAR S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-528446CP | 13A00108 | HD A318 | PDC O-L LANDING COLLAR S 21.4# P-110 EC (125KSI) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-108577CP | 13C01637 | HDX A27B | TIE BACK EXPANDER X-PAK LH S-1/2 17# X 7-5/8 29.7# W/5.500 ID X 48" LG RECPT | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-108384CP | 13H03696 | HDX A35E | EXT NPL S-1/2 17# P-110 ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119650CP | 13A00014 | HDX A35E | EXT NPL S-1/2 20# P-110 STL BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119718CP | 13A00095 | HDX A35E | TIE-BACK EXPANDER X-PAK LH S 15-23.2# X 7 42.7# W/4.875 ID X 48" RECPT (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119718CP | 13A00096 | HDX A35E | TIE-BACK EXPANDER X-PAK LH S 15-23.2# X 7 42.7# W/4.875 ID X 48" RECPT (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-630211CP | 08E02273 | HDX A35E | X-PAK LNR HGR S-1/2 17# P-110ULTRA-FJ PIN X 7-5/8 29.7# * COLLET #097434 * | | | EA | | | 1 | | | 0 | | |
| Ward Leonard - Houma | Ward Leonard | | | | GENERATOR, 4800KW KATO WITH 2 JUNCTION BOXES, SN-43589-01, 4160 VOLTAGE, 1800 RPM | | | EA | | | 1 | | | 262037.44 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ward Leonard - Houma | Ward Leonard | | | | GENERATOR, 1000KW MARATHON WITH JUNCTION BOXES PARTS, SN-WA-6002753-0616 | | | EA | | | 1 | | 0.01 | | | |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD  PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 5135 | 1 | 5135 |
| LAF-Southpark | Halliburton | ZCUSSH101398678 | | C019 | COMB CPLG,3 1/2-12 UN-2B X 3 1/2 API-NU | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 826 | 1 | 826 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | CS85 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 914.85 | 1 | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | CS85 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 914.85 | 1 | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | CS00 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 914.85 | 1 | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101603543 | | C010 | SUB,BOT,MGP,5 1/2-10 UNS-2A X 5 1/4-10 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 917.92 | 1 | 917.92 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P048 | TECHHOLD  PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | CS85 | TECHHOLD  PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | CS85 | TECHHOLD  PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD  PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101652773 | | CS006 | LN,2.750,S13CR,3 1/2-9.2 VARST1,B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 728.83 | 1 | 728.83 |
| LAF-Southpark | Halliburton | ZCUSSH101858738 | | CS011 | PKR,7,32-35,4 1/2-4 AC-2G-LH  .SCB | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 6494.54 | 1 | 6494.54 |
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | CS85 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 793.54 | 1 | 793.54 |
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | CS85 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 793.54 | 1 | 793.54 |
| LAF-Southpark | Halliburton | ZCUSSH100008579 | | C028 | GID,TUBE,WD,5 3/8-10 UNS,7,32-38 X 4.00 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 493 | 1 | 493 |
| LAF-Southpark | Halliburton | ZCUSSH101252847 | | C002 | MDRL,RWD,4 1/2-12 UN-2A X 4 1/2 API-LC,7 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 889 | 1 | 889 |
| LAF-Southpark | Halliburton | ZCUSSH101290361 | | C027 | MULE SHOE GID,3 1/2-12 UN BOX | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 268 | 1 | 268 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | C358 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 2643 | 1 | 2643 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | P11 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 2643 | 1 | 2643 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 415 | 1 | 415 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 415 | 1 | 415 |
| LAF-Southpark | Halliburton | ZCUSSH101555547 | | C046 | SEAL ASSY,2.650 X 2 1/4 OTIS-ST | | SHELL TROIKA GC 200 TA 3 | EA | | | 16 | | | 468.79 | 1 | 468.79 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 461 | 1 | 461 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 461 | 1 | 461 |
| LAF-Southpark | Halliburton | ZCUSSH323456 | | CS002 | SEAL UNIT EXT,3 1/2-12 UN,B-P,3.88 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 813 | 1 | 813 |
| LAF-Southpark | Halliburton | ZCUSSH101944453 | | CS006 | COL SHFT TL,BS1,2.770,41XX LAS | | SHELL TROIKA GC 200 TA 3 | EA | | | 4 | | | 1532 | 1 | 1532 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | P11 | TRV IT,3 1/2-9.20 VARST1 B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 148 | 1 | 148 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7012 | FLDLOSS DVC,FS2-L,S,470,2.770,.SCB | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 16617 | 1 | 16617 |
| LAF-Southpark | Halliburton | ZCUSSH102132850 | | CS006 | SEAL ASSY,3.880 X 3 1/2-12 UN,MLD AFLAS | | SHELL TROIKA GC 200 TA 3 | EA | | | 5 | | | 595 | 1 | 595 |
| LAF-Southpark | Halliburton | ZCUSSH102138028 | | CS006 | PERF COL LOCTR,4.000 X 2 7/8 API-EU | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 2758 | 1 | 2758 |
| LAF-Southpark | Halliburton | ZCUSSH102138040 | | CS006 | MULESHOE GDE,3 1/4-8 UN-2B,BOX,WITH BAF | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 374.23 | 1 | 374.23 |
| LAF-Southpark | Halliburton | ZCUSSH102154734 | | CS006 | SHR JT ASSY,3 1/2-9.20 VARST1,B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 3 | | | 162 | 1 | 162 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | BS-R1-RW4 | TRV IT,3 1/2-9.20 VARST1 B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 162 | 1 | 162 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | BS-R2-RW4 | TRV IT,3 1/2-9.20 VARST1 B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 162 | 1 | 162 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7011 | FLDLOSS DVC,FS2-L,S,470,2.770,.SCB | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 16617 | 1 | 16617 |
| LAF-Southpark | Halliburton | ZCUSSH102134650 | | CS006 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 2 | | | 876.98 | 1 | 876.98 |
| GE - Broussard | GE - Broussard | H10004-2 | | | SCREW,CAP,HEX COLLAR, 2.000- 8 X 9.000 LG,UN-2A, LOW TEMPERATURE SERVICE | | SHELL TROIKA GC 200 TA 3 | EA | | | 24 | | | 697 | 1 | 697 |
| OES - Broussard | Offshore Energy Services | GPS241-1 | | | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS241-2 | | | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS235-6 | | | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS233-1 | | | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS233-2 | | | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS239-2 | | | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS239-3 | | | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS239-4 | | | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS240-1 | | | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5240-2 | | | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5036-1 | | | CROSSOVER (3.5" 9.20# 13CR5110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5036-2 | | | CROSSOVER (3.5" 9.20# 13CR5110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5037-1 | | | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5037-2 | | | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5035-1 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-2 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-3 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-4 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-5 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-6 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-7 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-8 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-9 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-1 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-2 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-3 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-4 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-3 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-4 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-5 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-6 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-1 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-2 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-3 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-4 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-5 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-6 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-7 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5042-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 10FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5048-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5047-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 14FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5038-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5039-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5039-2 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5039-3 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5045-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5043-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 8FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5063-1 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-2 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-3 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-4 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-5 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-6 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-7 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-8 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5060-1 | | | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GPS060-10 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-2 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-3 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-4 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-5 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-6 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-7 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-8 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-9 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS266-1 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS266-2 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| Schiever | Weatherford | S41R070SLI2Q12A002 | | | SUB, CENTRALIZER ROT 7 541R Q125 VAM SLI-II 32.0 9.75 OD | | SHELL TROIKA GC 200 TA 3 | EA | | | 20 | | | 635 | 1 | 635 |
| Schiever | Weatherford | M212W70SLI2Q12A002 | | | SHOE, GUIDE 7 M212W CONC CMPST Q125 VAM SLU-II 32.0 | | SHELL TROIKA GC 200 TA 3 | EA | | | 2 | | | 471.18 | 1 | 471.18 |
| Schiever | Weatherford | M4SAP70SLI2Q12A002 | | | COLLAR, FLOAT 7 M49AP Q125 NR VAM SLU-II 32.0 2-4 | | SHELL TROIKA GC 200 TA 3 | EA | | | 2 | | | 1092.48 | 1 | 1092.48 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | | 1-Stairway with Handrails, 1-Caged Access Ladder, & 2-Small Deck Extension/Work Platofrms | | Green Canyon Block# 65 "A" | EA | | | 1 | | | 225 | 1 | 225 |

**Exhibit E**
**Permits**

## Part 1. Co-Owned Permits

| Block | Lease | Permit |
|-------|-------|--------|
| GI 32 | 00174 | No active/pending permits at this time |
| GI 39 | 00126 | No active/pending permits at this time |
| GI 39 | 00127 | No active/pending permits at this time |
| GI 40 | 00128 | APM Well No. M001 - Recomp to PI E1 |
| GI 41 | 00129 | Segment 17191 - Pipeline Repair; In Review |
| GI 41 | 00130 | No active/pending permits at this time |
| GI 42 | 00131 | No active/pending permits at this time |
| GI 43 | 00175 | No active/pending permits at this time |
| GI 44 | 00176 | No active/pending permits at this time |
| GI 46 | 00132 | No active/pending permits at this time |
| GI 47 | 00133 | No active/pending permits at this time |
| GI 48 | 00134 | No active/pending permits at this time |
| GI 52 | 00177 | No active/pending permits at this time |
| GI 110 | G13943 | No active/pending permits at this time |
| GI 116 | G13944 | No active/pending permits at this time |
| MC 110 | G18192 | No active/pending permits at this time |
| SM 41 | G01192 | No active/pending permits at this time |
| SM 48 | 00786 | No active/pending permits at this time |
| SM 149 | G02592 | C001 (APM for CT Cleanout/Modify Perfs) |
| SP 60 | G01609 | No active/pending permits at this time |
| ST 53 | G04000 | No active/pending permits at this time |
| ST 67 | 00020 | No active/pending permits at this time |
| WD 67 | 00179 | No active/pending permits at this time |
| WD 68 | 00180 | No active/pending permits at this time |

WEIL:\97869848\12\45327.0007

| Block | Lease | Permit |
|-------|-------|--------|
| WD 69 | 00181 | No active/pending permits at this time |
| WD 70 | 00182 | APMs for Well Nos. WD70 I002, I007 & L005 - Conductor Repairs<br>Well No. I014 - Install Lower PB Valve<br>Well No. O004 - TTRC to JR Sand |
| WD 71 | 00838 | APMs for PA Well Nos. E006 & E009<br>WD71 Well Nos. O002 & O007- Conductor Repairs<br>WD71 Well No. O008 - APM for PA |
| WD 94 | 00839 | No active/pending permits at this time |
| WD 95 | G01497 | No active/pending permits at this time |
| WD 96 | G01498 | No active/pending permits at this time |

## Part 2.  Other Permits

| Block | Lease | Permits |
|-------|-------|---------|
| AT 023 | G35015 | No active/pending permits at this time |
| BS 025 | G31442 | No active/pending permits at this time |
| EC 345 | G15156 | No active/pending permits at this time |
| EW 789 | G35805 | No active/pending permits at this time |
| EW 790 | G33140 | No active/pending permits at this time |
| EW 828 | G35806 | No active/pending permits at this time |
| EW 834 | G27982 | No active/pending permits at this time |
| EW 835 | G33707 | No active/pending permits at this time |
| EW 1009 | G34878 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| EW 1010 | G34879 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| EW 1011 | G34880 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| GC 39 A | G34966 | Approved Revised EP Control No.R-6837 to drill/complete well B |
| GC 39 B | G36476 | No active/pending permits at this time |
| GC 040 | G34536 | Revised DWOP in-review w/BSEE; approved Revised EP Control No.R-6837 to drill/complete wells C, F, I, J |

| Block | Lease | Permits |
|-------|-------|---------|
| GC 041 | G34537 | Nothing pending for any Seller |
| GC 064 | G34539 | No permits are pending |
| GC 065 | G05889 | GC65 A - Proposed Helideck Repair Plan in review.<br>GC65 A037 - Casing Departure Request; pending |
| GC 108 | G14668 | No active/pending permits at this time |
| GC 109 | G05900 | No active/pending permits at this time |
| GC 153 | G36814 | No active/pending permits at this time |
| GC 198 | G36021 | No active/pending permits at this time |
| GC 200 | G12209 | Supplemental EP Control No.S-7931 approved to drill TA010, TA012, TA014, TA016, TA017, TA018 |
| GC 201 | G12210 | No active/pending permits at this time |
| GC 238 | G26302 | No active/pending permits at this time |
| GC 243 | G20051 | No active/pending permits at this time |
| GC 244 | G11043 | No active/pending permits at this time |
| GC 282 | G16727 | No active/pending permits at this time |
| GC 679 | G21811 | No active/pending permits at this time |
| GC 768 | G21817 | No active/pending permits at this time |
| HI 176 | G27509 | APM to PA Well No.'s 002 & 003 |
| MC 118 | G35963 | No active/pending permits at this time |
| MC 119 | G36537 | No active/pending permits at this time |
| MC 162 | G36880 | No active/pending permits at this time |
| MC 163 | G36538 | No active/pending permits at this time |
| MC 171 | G34428 | No active/pending permits at this time |
| MC 172 | G34429 | No active/pending permits at this time |
| MC 206 | G36540 | No active/pending permits at this time |
| MC 297 | G34434 | No active/pending permits at this time |
| MC 380 | G36544 | No active/pending permits at this time |
| MC 424 | G36545 | No active/pending permits at this time |
| MC 435 | G36772 | No active/pending permits at this time |
| MC 436 | G36773 | No active/pending permits at this time |

Exhibit E – Page 3

| Block | Lease | Permits |
|-------|-------|---------|
| MC 474 | G35825 | MC519 #2 - Casing Departure Request; pending |
| MC 518 | G35828 | No active/pending permits at this time |
| MC 519 | G27278 | Preparing RDOCD to capture new flowline installation |
| MC 562 | G19966 | No active/pending permits at this time |
| MC 563 | G21176 | No active/pending permits at this time |
| MC 691 | G36400 | No active/pending permits at this time |
| MC 697 | G28021 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 698 | G28022 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 742 | G32343 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 743 | G36401 | No active/pending permits at this time |
| MC 782 | G33757 | Active departure for #002 well for cycling zones (will continue to be renewed every 4 months) |
| MC 789 | G36557 | No active/pending permits at this time |
| MC 793 | G33177 | No active/pending permits at this time |
| MC 904 | G36566 | No active/pending permits at this time |
| MC 905 | G36405 | No active/pending permits at this time |
| MC 948 | G28030 | Approved SDOCD Control No. S-8000 for #001 well (SHL in MC948/BHL in MC992) to sidetrack & produce well + install 2 LT pipelines |
| MC 949 | G32363 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 992 | G24133 | Approved SDOCD Control No. S-8000 for #001 well (SHL in MC948/BHL in MC992) to sidetrack & produce well + install 2 LT pipelines |
| MC 993 | G24134 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| SM 040 | G13607 | No active/pending permits at this time |
| SS 079 | G15277 | No active/pending permits at this time |
| SS 301 | G10794 | SOP Approved with contingency that the A004 recompletion will need to begin by January 31, 2021<br>Segment  11050 - Temp Cessation; In Review |
| ST 287 | G24987 | No active/pending permits at this time |
| ST 308 | G21685 | ST308 A002 - Casing Departure Request; pending |
| VR 078 | G04421 | No active/pending permits at this time |
| VR 229 | G27070 | No active/pending permits at this time |

Exhibit E – Page 4

| Block | Lease | Permits |
|-------|-------|---------|
| VR 362 | G10687 | APM for VR362 A003 - Conductor Repair |
| VR 363 | G09522 | No active/pending permits at this time |
| VR 371 | G09524 | RPM for VR 371 A001 (TA)<br>Segment 10675 - Temp Cessation; In Review |
| WD 57,<br>WD 79,<br>WD 80 | G01449 | No active/pending permits at this time |
| WD 79,<br>WD 80 | G01874 | No active/pending permits at this time |
| WD 80 | G01989 | No active/pending permits at this time |
| WD 80 | G02136 | No active/pending permits at this time |

| Onshore Lease | Permits |
|---------------|---------|
| SL-LA 15683 | No active/pending permits at this time |
| SL-LA 17675 | No active/pending permits at this time |
| SL-LA 17860 | No active/pending permits at this time |
| SL-LS 19051 | No active/pending permits at this time |
| SL-LA 19718 | No active/pending permits at this time |
| SL-MS 23017 | No active/pending permits at this time |
| SL-MS 170650 | No active/pending permits at this time |
| SL-MS 230140 | No active/pending permits at this time |
| SL-MS 230150 | No active/pending permits at this time |
| SL-MS 231240 | No active/pending permits at this time |
| SL-TX 5749 | No active/pending permits at this time |
| SL-TX 5797 | No active/pending permits at this time |
| SL-TX 24318 | No active/pending permits at this time |
| SL-TX 106158 | No active/pending permits at this time |
| SL-TX 106159 | No active/pending permits at this time |
| SL-TX 114921 | No active/pending permits at this time |
| SL-TX 172915 | No active/pending permits at this time |

Exhibit E – Page 5

| Onshore Lease | Permits |
|---|---|
| SL-TX 172916 | No active/pending permits at this time |
| SL-TX 178537 | No active/pending permits at this time |
| SL-TX 183756 | No active/pending permits at this time |
| SL-TX 185633 | No active/pending permits at this time |
| SL-TX 186891 | No active/pending permits at this time |
| SL-TX 191681 | No active/pending permits at this time |
| SL-TX 207398 | No active/pending permits at this time |
| SL-TX 227360 | No active/pending permits at this time |
| SL-TX 234082 | No active/pending permits at this time |
| SL-TX 255675 | No active/pending permits at this time |

[End of Exhibit E]

**FUNDING AGREEMENT**

This FUNDING AGREEMENT (this "*Agreement*"), dated as of [___], 2021, is entered into by and between Mako Buyer LLC, a Delaware limited liability company (the "*Committed Party*"), and Fieldwood Energy LLC, a Delaware limited liability company ("*Fieldwood*", *provided* that from and after the Initial Divisive Merger (as defined below), "Fieldwood" shall mean Fieldwood Energy III LLC).  The Committed Party and Fieldwood may be referred to herein each as a "*Party*" or together as, the "*Parties*".

<u>RECITALS</u>

**WHEREAS**, the Committed Party, Mako Buyer 2 LLC, a Delaware limited liability company ("*Buyer 2*"), and Fieldwood, entered into that certain Purchase and Sale Agreement, dated [___], 2021 (the "*PSA*"), pursuant to which Fieldwood sold to the Committed Party and Buyer 2, and the Committed Party and Buyer 2 acquired from Fieldwood, certain assets (and assumed certain liabilities) of Fieldwood (capitalized terms used herein and not defined herein shall have the meanings set forth in the PSA);

**WHEREAS**, following the closing of the transactions contemplated by the PSA (on the date of such closing or within two (2) Business Days thereafter), Fieldwood intends to consummate one or more divisive mergers pursuant to which Fieldwood will be divisively merged into (a) Fieldwood Energy III LLC, a Texas limited liability company, and (b) one or more additional entities, including Fieldwood Energy IV LLC, a Texas limited liability company (the "*Divisive Mergers*");

**WHEREAS**, the plans of merger with respect to the Divisive Mergers will provide that all of Fieldwood's rights, title and interest, and all of Fieldwood's obligations and liabilities, pursuant to this Agreement will be allocated to and vest with Fieldwood Energy III LLC; and

**WHEREAS**, in connection with the transactions contemplated by the PSA, and as additional consideration for the purchase of assets thereunder (any right, title and interest in, to, under or derived from such purchased assets, the "*Acquired Interests*"), the Committed Party agreed to enter into this Funding Agreement with Fieldwood to be effective as provided herein.

<u>AGREEMENT</u>

In consideration of the recitals above, the provisions below and other good and valuable cause and consideration (including the purchase and sale of the Acquired Interests pursuant to the PSA), the receipt and sufficiency of which are hereby acknowledged, the Committed Party and Fieldwood agree as follows.  Capitalized terms used but not defined herein have the meanings ascribed to them in the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors [D.I. 1284].

1.      <u>Commitment</u>.  To the extent duly called pursuant to <u>Section 2</u> (prior to the termination of this Agreement pursuant to <u>Section 3</u>), the Committed Party hereby commits to

provide to Fieldwood cash in an amount up to the Committed Amount.  "***Committed Amount***" means $[**7,530,331**].[1]

2.      Procedures for Call of Commitment.

a.      Prior to the first day of each calendar quarter (a "***Determination Period***"), Fieldwood will make a determination (in its sole discretion) of whether a Required Cash Shortfall exists with respect to such Determination Period.  "***Required Cash Shortfall***" means an amount (which shall not be less than zero) equal to: (i) the projected obligations of Fieldwood for such Determination Period, excluding any Excluded Obligations, *less* (ii) the amount of cash on hand of Fieldwood, excluding (A) Excluded Cash and (B) the amount of cash reserves determined by Fieldwood to be reasonably prudent to maintain, *less* (iii) projected revenues of Fieldwood for such Determination Period, excluding Excluded Revenues.   "***Excluded Obligations***" means obligations of the types described on Exhibit A.  "***Excluded Revenues***" means revenues of the types described on Exhibit B.  "***Excluded Cash***" means cash on hand of Fieldwood of the types described on Exhibit C.

b.      If a Required Cash Shortfall exists with respect to a Determination Period, then Fieldwood may deliver to the Committed Party a written notice (a "***Call Notice***"), which Call Notice shall state (i) the lesser of (A) the amount of the Required Cash Shortfall and (B) the Remaining Commitment (a "***Call Amount***") and any information supporting the Call Amount that may be reasonably requested by the Committed Party, (ii) the account information of Fieldwood into which the Call Amount shall be deposited (the "***Designated Account***"), (iii) the date on which the Call Amount shall be due and payable, which shall not be earlier than five Business Days following delivery of the applicable Call Notice (a "***Commitment Due Date***"), and (iv) a certification from the Plan Administrator (as such term is defined in the Plan) that Fieldwood is in compliance with its obligations hereunder.  Following receipt of a Call Notice, the Committed Party shall deliver an amount in cash in immediately available funds equal to the Call Amount to the Designated Account on or prior to the Commitment Due Date (a "***Commitment Payment***"). The "***Remaining Commitment***" means the Commitment Amount, *less* the amount of all Commitment Payments previously made by the Committed Party.

c.      The commitment set forth in Section 1 and the payment of Commitment Payments from time to time in accordance with Section 2(a) are made as additional consideration for the purchase and sale of the Acquired Interests (as defined in the PSA) pursuant to the PSA, and neither such commitment, nor the payment of Commitment Payments, shall entitle the Committed Party to receive any equity or debt securities of Fieldwood, any accrual of a capital

---

[1] Note to Draft: FWE to confirm amount.  Equal to $27,000,000, minus the $5 million to be funded up front to FWE III's balance sheet as referenced in the Disclosure Statement (and as contemplated by item (xiii) of the definition of "Effective Date Cash Obligations" in the Credit Bid Purchase Agreement), minus $14,469,669 to be funded to FWE IV on account of the additional FWE III assets being allocated to FWE IV (this assumes that the $14,469,669 will be funded through the Credit Bid PSA as an Effective Date Cash Obligation).   Final determination of the Committed Amount and flow of funds is subject to confirmation by financial advisors and review of funds flow.

account with respect to Fieldwood, or any other consideration from Fieldwood other than the transfer of the Acquired Interests pursuant to the PSA and as set forth in <u>Section 2(e)</u> below.

d.  Fieldwood covenants and agrees that the proceeds of each Commitment Payment will be used solely to fund the obligations and liabilities of Fieldwood arising out of the operation and plugging and abandonment or decommissioning of the FWE III Assets.  For the avoidance of doubt, such proceeds will not be used to pay Excluded Obligations.  Fieldwood will hold proceeds of the Commitment Payments in a bank account (the "**_Funding Account_**") that is segregated from accounts holding Excluded Revenues and Excluded Cash.

e.  Upon the winding up and liquidation of Fieldwood, if (i) the Committed Party has made Commitment Payments pursuant to this Agreement and (ii) following the satisfaction of all of the plugging and abandonment and decommissioning obligations and liabilities associated with the FWE III Assets, as determined by Fieldwood in its sole discretion, Fieldwood holds cash in the Funding Account, Fieldwood shall return and pay over to the Commitment Party such excess cash.

3.  <u>Termination</u>.  This Agreement, including the commitment set forth in <u>Section 1</u>, will terminate automatically upon the first to occur of: (i) thirty six (36) months after the Closing (the "**_Commitment End Date_**"), and (ii) immediately following such time as the Committed Party has made payments to Fieldwood pursuant to <u>Section 2</u> in an aggregate amount equal to the Committed Amount; *provided*, that (a) in the case of clause (i), the Committed Party shall remain obligated to deliver a Commitment Payment for each Call Notice delivered prior to the Commitment End Date for which a Commitment Payment has not been delivered as of the Commitment End Date and (b) <u>Section 2(d)</u> shall survive termination of this Agreement.

4.  <u>Assignment</u>.

a.  Except as contemplated by <u>Section 4(b)</u>, neither this Agreement nor any rights, interests or obligations hereunder shall be assigned by any Party without the other Party's express written consent, provided that the rights and obligations of Fieldwood under this Agreement shall, upon the effective time of the Divisive Mergers, be allocated to and vested in Fieldwood Energy III LLC, a Texas limited liability company.

b.  If, prior to the termination of this Agreement pursuant to <u>Section 3</u>, the Committed Party consummates a Material Divestiture (as defined below), then, unless otherwise agreed in writing by Fieldwood, the Committed Party shall cause the acquiring party in such Material Divestiture to join this Agreement as a party that is jointly and severally liable for the obligations of the Committed Party hereunder.

c.  "**_Material Divestiture_**" means (i) the consummation of any sale, transfer or other disposition of all or substantially all of the Acquired Interests (as defined by the PSA), or (ii) the consummation of any series of sales, transfers or other dispositions of any portion of the Acquired Interests (as defined by the PSA) that, when taken collectively, constitutes a disposition of all or substantially all of the Acquired Interests (as defined by the PSA).

5.  <u>Miscellaneous</u>.

a.      *Amendment*.   This Agreement may be amended or modified only by a written Agreement executed by the Committed Party and Fieldwood.

b.      *Waiver*.   No Party shall be deemed to have waived or discharged any claim arising out of this Agreement, or any power, right, privilege, remedy or condition under this Agreement, unless the waiver or discharge of such claim, power, right, privilege, remedy or condition is expressly set forth in a written instrument duly executed and delivered by the Party against whom the waiver or discharge is sought to be enforced.   A waiver or discharge made on one occasion or a partial waiver or discharge of any power, right, privilege, remedy or condition shall not preclude any other or further exercise or enforcement of such power, right, privilege or remedy or requirement to satisfy such condition.   Except as expressly provided otherwise in this Agreement, the rights of each Party under this Agreement shall be cumulative, and the exercise or partial exercise of any such right shall not preclude the exercise of any other right.

c.      *No Third-Party Beneficiaries*.   Nothing in this Agreement entitles any person other than the Parties and their successors and permitted assigns to any claims, remedy or right of any kind.

d.      *Counterparts*.   This Agreement and any amendment hereto may be executed by the Parties in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute but one and the same agreement.   Delivery of an executed counterpart of a signature page to this Agreement or any amendment hereto by telecopier, facsimile or email attachment that contains a portable document format (.pdf) file of an executed signature shall be effective as delivery of a manually executed counterpart of this Agreement or such amendment, as applicable.

e.      *Governing Law; Jurisdiction; Venue; Jury Trial*.

i.      Except to the extent the mandatory provisions of the Bankruptcy Code (as defined in the PSA) apply, this Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution, termination, performance or non-performance of this Agreement, shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of New York applicable hereto.

ii.      Without limitation of any Party's right to appeal any order of the Bankruptcy Court (as defined in the PSA), (A) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (B) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim; *provided*, *however*, that, if the Bankruptcy Cases (as defined in the PSA) have been closed pursuant to Section 350(a) of the Bankruptcy Code (or in the event that the

<div align="center">4</div>

Bankruptcy Court determines that it does not have jurisdiction), all Claims arising out of or relating to this Agreement shall be heard and determined in a New York state court or a federal court sitting in the Borough of Manhattan, New York, New York, and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such Claim and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim.  The Parties consent to service of process by mail (in accordance with Section 12.2 of the PSA) or any other manner permitted by law.

iii.    THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY CLAIM OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION, TERMINATION, PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT.

f.    *Entire Agreement*.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersede all negotiations, prior discussions and prior agreements and understandings relating to such subject matter.

g.    *Binding Effect*.  This Agreement shall be binding in all respects against the Parties and their respective successors and permitted assigns.

h.    *No Partnership; No Fiduciary Duty*.  This Agreement shall not create and it is not the purpose or intention of the Parties to create any partnership, mining partnership, joint venture, general partnership or other partnership relationship and none shall be inferred.  Nothing in this Agreement shall be construed to establish a fiduciary relationship between the Parties for any purpose.

i.    *No Recourse*.  Notwithstanding anything that may be expressed or implied in this Agreement, each Party, on behalf of itself and its affiliates and their respective representatives, covenants, agrees and acknowledges that no person other than the Parties (and their respective successors or assignees, as applicable) has any obligation hereunder and that neither any Party, their respective Affiliates or their respective representatives, shall have any right of recovery under this Agreement against, and no personal liability under this Agreement shall attach to, any Party's former, current or future debt or equity financing sources, equity holders, controlling persons, directors, officers, employees, general or limited partners, members, managers, affiliates or agents, or any former, current or future equity holder, controlling person, director, officer, employee, general or limited partner, member, manager, affiliate or agent of any of the foregoing (collectively, each of the foregoing but not including the Parties, a "***Non-Recourse Party***"), whether by or through attempted piercing of the corporate, limited partnership or limited liability company veil, by or through a claim by or on behalf of any Party against any Non-Recourse Party, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any applicable law, whether in contract, tort or otherwise.

j.    *Headings*. The headings of the Articles, Sections, and subsections of this Agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any provision of this Agreement.  All references in this Agreement to any "Section," or "Article" are to the corresponding Section or Article of this Agreement unless otherwise specified.

WEIL:\97805139\12\45327.0007
Error! Unknown document property name.

k. *Severability*.  If any provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, it shall not affect the validity or enforceability of the other provisions here and all other provisions of this Agreement shall nevertheless remain in full force and effect.  Upon such determination that any provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby fulfilled to the greatest extent possible.

l. *Miscellaneous Interpretation*.  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day. Whenever the words "include," "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following.  Unless the context otherwise requires, (1) "or" is disjunctive but not exclusive, (2) words in the singular include the plural and vice versa, (3) the words "herein," "hereof," "hereby," "hereunder" and words of similar nature refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited, (4) the use in this Agreement of a pronoun in reference to a Party or person includes the masculine, feminine or neuter, as the context may require, (5) reference to any person includes the successors and permitted assigns of that person, (6) any reference in this Agreement to "$" means United States dollars, (7) and reference in this Agreement to "days" (but not "Business Days") means to calendar days, (8) reference to any law in this Agreement means such law as amended, modified, codified, reenacted, supplemented or superseded in whole or in part, and in effect from time to time together with any rules or regulations promulgated thereunder, and (9) any reference in this Agreement to "related to", "relating to" or a similar phrase means, unless the context otherwise requires, "related in whole or in part to", "relating in whole or in part to" or a similar construction in the case of a similar phrase, as applicable.  If the deadline for performance falls on a day that is not a Business Day, then the actual deadline for performance will be the next succeeding day that is a Business Day. "***Business Day***" means any day other than a Saturday, a Sunday or any other day on which banking institutions in, New York, New York or Houston, Texas, are required or authorized by Law or executive order to be closed.

6. <u>Agreed Tax Treatment</u>.  For U.S. federal and applicable state and local income tax purposes, the Parties agree that any amounts paid by the Committed Party to Fieldwood under this Agreement shall be treated as deferred purchase price for the Acquired Interests eligible for installment sale treatment under Section 453 of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**FIELDWOOD:**

Fieldwood Energy LLC

By: _____
Name:
Title:

**THE COMMITTED PARTY**:

[CREDIT BID PURCHASER]

By: _____
Name:
Title:

[Signature Page to Funding Agreement]

EXHIBIT A

**Excluded Obligations**

Excluded Obligations include obligations arising from:

1. The operation, maintenance or plugging, abandoning or decommissioning of the Specified Interests (as defined in that certain Eni Term Sheet Implementation Agreement, dated as of [__], 2021, by and among Fieldwood (and certain of its subsidiaries), Eni Petroleum US LLC, Eni US Operating Co. Inc. and, following its joinder thereto, the Committed Party (the "*Eni Implementation Agreement*")).

2. Any fees or expenses of the Plan Administrator and its retained professionals or of the U.S. Trustee, which fees shall be paid from the Plan Administrator Expense Reserve.

3. Any costs relating to the provision of insurance for or on behalf of the Plan Administrator or the FWE III Assets, which costs shall be paid from the Plan Administrator Expense Reserve.

4. The operation, maintenance or plugging, abandoning or decommissioning of any assets that are abandoned pursuant to the Plan.

5. The operation, maintenance or plugging, abandoning or decommissioning of any assets that are the subject of any term sheet entered into in connection with the Plan between any Seller and any predecessors in interest or co-working interest owners, whether executed prior to, or after the date of the PSA, solely to the extent such amounts are, and continue to be, subject to payment or reimbursement by such predecessors in interests or co-working interest owners.

EXHIBIT B

**Excluded Revenues**

Excluded Revenues include revenues derived from:

1. The Specified Interests (as defined in the Eni Implementation Agreement).

EXHIBIT C

**Excluded Cash**

Excluded Cash includes:

1. The cash contemplated to be funded to Fieldwood Energy IV LLC pursuant to Section (xvii) of Part A of Schedule I to that certain Agreement and Plan of Merger of Fieldwood Energy III LLC into Fieldwood Energy IV LLC and Fieldwood Energy III LLC as contemplated to be entered into by Fieldwood pursuant to the Plan.

2. The cash contemplated to be paid to Eni (as defined in the Eni Implementation Agreement) pursuant to Section 4(b) of the Eni Implementation Agreement.

9

## Exhibit G

**NewCo Organizational Documents** [5]

---

[5] The NewCo shareholders' agreement will be filed at a later date.

## **<u>Exhibit G</u>**

**NewCo Organizational Documents**

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "MAKO NEWCO INC.", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:42 O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

5963978  8100
SR# 20212358355

Authentication: 203369337
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:42 PM 06/04/2021
SR 20212358355 - File Number 5963978

# CERTIFICATE OF INCORPORATION

## OF

## MAKO NEWCO INC.

### * * *

FIRST:    The name of the corporation is Mako Newco Inc. (the "**Corporation**").

SECOND:  The address of its registered office in the State of Delaware is 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.  The name of its registered agent at such address is Corporation Service Company.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**").

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is 1,000, and the par value of each such share is $0.01, amounting in the aggregate to $10.00.

FIFTH: The name and mailing address of the incorporator are:

| Name | Mailing Address |
| --- | --- |
| Kelsey D. Stevens | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017 |

SIXTH:  The Board of Directors shall have the power to adopt, amend or repeal the bylaws of the Corporation.

SEVENTH:  Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

EIGHTH:  The Corporation expressly elects not to be governed by Section 203 of Delaware Law.

NINTH:  (1) A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

(2)(a)    Each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a director or officer of the Corporation, or an owner of shares of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.    The right to indemnification conferred in this ARTICLE NINTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law or in connection with any other actions taken by it related to the Corporation.    The right to indemnification conferred in this ARTICLE NINTH shall be a contract right.

(b)    The Corporation may, by action of its Board of Directors, provide indemnification to such of the directors, employees, agents and owners of shares of the Corporation (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)    The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)    The rights and authority conferred in this ARTICLE NINTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)    Neither the amendment nor repeal of this ARTICLE NINTH, nor the adoption of any provision of this Certificate of Incorporation or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act or omission that occurred prior to, the time of such amendment, repeal, adoption or

#94056736v5

modification (regardless of when any proceeding (or part thereof) relating to such event, act or omission arises or is first threatened, commenced or completed).

TENTH:  The Corporation reserves the right to amend this Certificate of Incorporation in any manner permitted by Delaware Law and all rights and powers conferred herein on stockholders, directors and officers, if any, are subject to this reserved power.

ELEVENTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "FLTL Sub-Agent") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "FLTL Credit Agreement"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

#94056736v5

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Incorporation this 4 day of  June , 2021.

*Kelsey Stevens*
_____
Kelsey D. Stevens
Incorporator

[*Signature Page to Certificate of Incorporation of Mako Newco Inc.]*]

# BYLAWS

## OF

## MAKO NEWCO INC.

\* \* \* \* \*

## ARTICLE 1
## OFFICES

Section 1.01.  *Registered Office.*  The registered office of the Mako Newco Inc. (the "**Corporation**") shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02.  *Other Offices.*  The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03.  *Books.*  The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

Section 2.01.  *Time and Place of Meetings.*  All meetings of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02.  *Annual Meetings.*  Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting as may be designated by the Board of Directors from time to time.  Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors; *provided*, *however*, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

Section 2.03. *Special Meetings.* Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board of Directors and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote. Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04. *Notice of Meetings and Adjourned Meetings; Waivers of Notice.* (a) Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting. Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b) A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05. *Quorum.* Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business. If, however, such quorum shall not be present or represented at any meeting of the stockholders, a majority in voting interest of the stockholders present in person or represented by proxy may adjourn the meeting, without notice other than announcement at the meeting, until a

quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06.  *Voting.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder.  Any share of capital stock of the Corporation held by the Corporation shall have no voting rights.  Except as otherwise provided by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of the majority of the shares of capital stock of the Corporation present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders.

(b)     Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, appointed by an instrument in writing, subscribed by such stockholder or by his attorney thereunto authorized, or by proxy sent by cable, telegram or by any means of electronic communication permitted by law, which results in a writing from such stockholder or by his attorney, and delivered to the secretary of the meeting.  No proxy shall be voted after three (3) years from its date, unless said proxy provides for a longer period.

(c)     In determining the number of votes cast for or against a proposal or nominee, shares abstaining from voting on a matter will not be treated as a vote cast.

Section 2.07.  *Action by Consent.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to the proviso in Section 2.02, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to

notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b)     Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08.  *Organization.*  At each meeting of stockholders, the Chairman of the Board of Directors, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting.  The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09.  *Order of Business.*  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01.  *General Powers.*  Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

Section 3.02.  *Number, Election and Term Of Office.*   (a) The number of directors which shall constitute the whole Board of Directors shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one. The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in Section 2.02 and Section 3.12 herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.  Directors need not be stockholders.

(b)  Subject to the rights of the holders of any series of preferred stock to elect additional directors under specific circumstances, directors shall be elected by a plurality of the votes of the shares of capital stock of the Corporation present

in person or represented by proxy at the meeting and entitled to vote on the election of directors.

Section 3.03. *Quorum and Manner of Acting.*  Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04. *Time and Place of Meetings.*  The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05. *Annual Meeting.*  The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held.  Notice of such meeting need not be given.  In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given as hereinafter provided in Section 3.07 herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06. *Regular Meetings.*  After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07. *Special Meetings.*  Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of any director.  Notice of special meetings of the Board of Directors shall be given to each director at least 24 hours before the date of the meeting in such manner as is determined by the Board of Directors, which required notice shall be

5

deemed to be waived by a director's attendance at a meeting (unless solely for the purpose of objecting to the lack of required notice).

Section 3.08. *Committees.* The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. A quorum of any committee of the Board of Directors shall consist of a majority of the Board of Directors (with directors for quorum purposes counted in accordance with the certificate of incorporation). Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to any of the following matters: (a) approving or adopting, or recommending to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopting, amending or repealing any bylaw of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09. *Action by Consent.* Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10. *Telephonic Meetings.* Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11.  *Resignation.*  Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation.  The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12.  *Vacancies.*  Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, although less than a quorum, or by a sole remaining director.  Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority vote of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.  Each director so chosen shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  If there are no directors in office, then an election of directors may be held in accordance with Delaware Law. Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board of Directors, effective at a future date, the directors then in office shall, by majority vote, have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13.  *Removal.*  Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the voting power of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14.  *Compensation.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01.  *Principal Officers.*  The principal officers of the Corporation shall be a President, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose.  The Corporation may

also have such other principal officers, including one or more Controllers, as the Board of Directors may in its discretion appoint.  One person may hold the offices and perform the duties of any two or more of said offices.

Section 4.02.  *Election, Term of Office and Remuneration.*  The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof.  Each such officer shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  The remuneration of all officers of the Corporation shall be fixed by the Board of Directors.  Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03.  *Subordinate Officers.*  In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04.  *Removal.*  Except as otherwise permitted with respect to subordinate officers, any officer may be removed, with or without cause, at any time, by resolution adopted by the Board of Directors.

Section 4.05.  *Resignations.*  Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer).  The resignation of any officer shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.06.  *Powers and Duties.*  The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
CAPITAL STOCK

Section 5.01.  *Certificates For Stock; Uncertificated Shares.*  The shares of the Corporation shall be uncertificated, provided that the Board of Directors of the Corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be certificated shares.  Except as otherwise

8

provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of shares represented by certificates of the same class and series shall be identical. Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by any two authorized officers of the Corporation representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue. The Corporation shall not have power to issue a certificate in bearer form.

Section 5.02. *Transfer Of Shares.* Shares of the stock of the Corporation may be transferred on the record of stockholders of the Corporation by the holder thereof or by such holder's duly authorized attorney upon surrender of a certificate therefor properly endorsed or upon receipt of proper transfer instructions from the registered holder of uncertificated shares or by such holder's duly authorized attorney and upon compliance with appropriate procedures for transferring shares in uncertificated form, unless waived by the Corporation.

Section 5.03. *Authority for Additional Rules Regarding Transfer.* The Board of Directors shall have the power and authority to make all such rules and regulations as they may deem expedient concerning the issue, transfer and registration of certificated or uncertificated shares of the stock of the Corporation, as well as for the issuance of new certificates in lieu of those which may be lost or destroyed, and may require of any stockholder requesting replacement of lost or destroyed certificates, bond in such amount and in such form as they may deem expedient to indemnify the Corporation, and/or the transfer agents, and/or the registrars of its stock against any claims arising in connection therewith.

Section 5.04. *FLTL Sub-Agent.* To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "FLTL Sub-Agent") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "FLTL Credit Agreement"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency

Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

ARTICLE 6
GENERAL PROVISIONS

Section 6.01.  *Fixing the Record Date.*  (a)  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b)  In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law,

the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 6.02. *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 6.03. *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 6.04. *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 6.05. *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 6.06. *Amendments.*  These bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders either by written consent or at any annual or special meeting thereof or by the Board of Directors.

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "MAKO HOLDING
INC.", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D.
2021, AT 2:43 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

5963981  8100
SR# 20212358386

Authentication: 203369663
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:43 PM 06/04/2021
SR 20212358386 - File Number 5963981

# CERTIFICATE OF INCORPORATION

## OF

## MAKO HOLDING INC.

\* \* \*

FIRST:   The name of the corporation is Mako Holding Inc. (the "**Corporation**").

SECOND:  The address of its registered office in the State of Delaware is 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.  The name of its registered agent at such address is Corporation Service Company.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**").

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is 1,000, and the par value of each such share is $0.01, amounting in the aggregate to $10.00.

FIFTH: The name and mailing address of the incorporator are:

| Name | Mailing Address |
| --- | --- |
| Mako Newco Inc. | 410 Park Avenue, Suite 900 New York, NY 10022 |

SIXTH:  The Board of Directors shall have the power to adopt, amend or repeal the bylaws of the Corporation.

SEVENTH:  Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

EIGHTH:  The Corporation expressly elects not to be governed by Section 203 of Delaware Law.

NINTH:   (1) A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

#94311989v3

(2)(a)      Each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a director or officer of the Corporation, or an owner of shares of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.  The right to indemnification conferred in this ARTICLE NINTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law or in connection with any other actions taken by it related to the Corporation.  The right to indemnification conferred in this ARTICLE NINTH shall be a contract right.

(b)      The Corporation may, by action of its Board of Directors, provide indemnification to such of the directors, employees, agents and owners of shares of the Corporation (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)      The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)      The rights and authority conferred in this ARTICLE NINTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)      Neither the amendment nor repeal of this ARTICLE NINTH, nor the adoption of any provision of this Certificate of Incorporation or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act or omission that occurred prior to, the time of such amendment, repeal, adoption or

modification (regardless of when any proceeding (or part thereof) relating to such event, act or omission arises or is first threatened, commenced or completed).

TENTH:  The Corporation reserves the right to amend this Certificate of Incorporation in any manner permitted by Delaware Law and all rights and powers conferred herein on stockholders, directors and officers, if any, are subject to this reserved power.

ELEVENTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

#94311989v3

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Incorporation this _4_ day of June, 2021.

**MAKO NEWCO INC.**

By: _____
 Name:  Tim Daileader
 Title:  President

*[Signature Page to Certificate of Incorporation of Mako Holding Inc.]*

# BYLAWS

## OF

## MAKO HOLDING INC.

* * * * *

## ARTICLE 1
## OFFICES

Section 1.01. *Registered Office.* The registered office of the Mako Holding Inc. (the "**Corporation**") shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02. *Other Offices.* The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03. *Books.* The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

Section 2.01. *Time and Place of Meetings.* All meetings of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02. *Annual Meetings.* Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting as may be designated by the Board of Directors from time to time. Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors; *provided*, *however*, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

Section 2.03.  *Special Meetings.*  Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board of Directors and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote.  Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04.  *Notice of Meetings and Adjourned Meetings; Waivers of Notice.*  (a)  Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.  Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting.  Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b)     A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05.  *Quorum.*  Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business.  If, however, such quorum shall not be present or represented at any meeting of the stockholders, a majority in voting interest of the stockholders present in person or represented by proxy may adjourn the meeting, without notice other than announcement at the meeting, until a

quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06.  *Voting.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder.  Any share of capital stock of the Corporation held by the Corporation shall have no voting rights.  Except as otherwise provided by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of the majority of the shares of capital stock of the Corporation present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders.

(b)     Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, appointed by an instrument in writing, subscribed by such stockholder or by his attorney thereunto authorized, or by proxy sent by cable, telegram or by any means of electronic communication permitted by law, which results in a writing from such stockholder or by his attorney, and delivered to the secretary of the meeting.  No proxy shall be voted after three (3) years from its date, unless said proxy provides for a longer period.

(c)     In determining the number of votes cast for or against a proposal or nominee, shares abstaining from voting on a matter will not be treated as a vote cast.

Section 2.07.  *Action by Consent.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to the proviso in Section 2.02, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to

notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b)     Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08.  *Organization.*  At each meeting of stockholders, the Chairman of the Board of Directors, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting.  The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09.  *Order of Business.*  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01.  *General Powers.*  Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

Section 3.02.  *Number, Election and Term Of Office.*  (a) The number of directors which shall constitute the whole Board of Directors shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one. The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in Section 2.02 and Section 3.12 herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.  Directors need not be stockholders.

(b)  Subject to the rights of the holders of any series of preferred stock to elect additional directors under specific circumstances, directors shall be elected by a plurality of the votes of the shares of capital stock of the Corporation present

4

in person or represented by proxy at the meeting and entitled to vote on the election of directors.

Section 3.03. *Quorum and Manner of Acting.*  Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04. *Time and Place of Meetings.*  The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05. *Annual Meeting.*  The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held.  Notice of such meeting need not be given.  In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given as hereinafter provided in Section 3.07 herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06. *Regular Meetings.*  After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07. *Special Meetings.*  Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of any director.  Notice of special meetings of the Board of Directors shall be given to each director at least 24 hours before the date of the meeting in such manner as is determined by the Board of Directors, which required notice shall be

deemed to be waived by a director's attendance at a meeting (unless solely for the purpose of objecting to the lack of required notice).

Section 3.08. *Committees.* The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. A quorum of any committee of the Board of Directors shall consist of a majority of the Board of Directors (with directors for quorum purposes counted in accordance with the certificate of incorporation). Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to any of the following matters: (a) approving or adopting, or recommending to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopting, amending or repealing any bylaw of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09. *Action by Consent.* Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10. *Telephonic Meetings.* Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11.  *Resignation.*  Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation.  The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12.  *Vacancies.*  Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, although less than a quorum, or by a sole remaining director.  Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority vote of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.  Each director so chosen shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  If there are no directors in office, then an election of directors may be held in accordance with Delaware Law.  Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board of Directors, effective at a future date, the directors then in office shall, by majority vote, have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13.  *Removal.*  Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the voting power of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14.  *Compensation.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01.  *Principal Officers.*  The principal officers of the Corporation shall be a President, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose.  The Corporation may

also have such other principal officers, including one or more Controllers, as the Board of Directors may in its discretion appoint.  One person may hold the offices and perform the duties of any two or more of said offices.

Section 4.02.  *Election, Term of Office and Remuneration.*  The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof.  Each such officer shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  The remuneration of all officers of the Corporation shall be fixed by the Board of Directors.  Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03.  *Subordinate Officers.*  In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04.  *Removal.*  Except as otherwise permitted with respect to subordinate officers, any officer may be removed, with or without cause, at any time, by resolution adopted by the Board of Directors.

Section 4.05.  *Resignations.*  Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer).  The resignation of any officer shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.06.  *Powers and Duties.*  The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
CAPITAL STOCK

Section 5.01.  *Certificates For Stock; Uncertificated Shares.*  The shares of the Corporation shall be uncertificated, provided that the Board of Directors of the Corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be certificated shares.  Except as otherwise

8

provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of shares represented by certificates of the same class and series shall be identical.  Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by any two authorized officers of the Corporation representing the number of shares registered in certificate form.  Any or all of the signatures on the certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue.  The Corporation shall not have power to issue a certificate in bearer form.

Section 5.02.  *Transfer Of Shares*.  Shares of the stock of the Corporation may be transferred on the record of stockholders of the Corporation by the holder thereof or by such holder's duly authorized attorney upon surrender of a certificate therefor properly endorsed or upon receipt of proper transfer instructions from the registered holder of uncertificated shares or by such holder's duly authorized attorney and upon compliance with appropriate procedures for transferring shares in uncertificated form, unless waived by the Corporation.

Section 5.03.  *Authority for Additional Rules Regarding Transfer.*  The Board of Directors shall have the power and authority to make all such rules and regulations as they may deem expedient concerning the issue, transfer and registration of certificated or uncertificated shares of the stock of the Corporation, as well as for the issuance of new certificates in lieu of those which may be lost or destroyed, and may require of any stockholder requesting replacement of lost or destroyed certificates, bond in such amount and in such form as they may deem expedient to indemnify the Corporation, and/or the transfer agents, and/or the registrars of its stock against any claims arising in connection therewith.

Section 5.04. *FLTL Sub-Agent.*  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency

Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

ARTICLE 6
GENERAL PROVISIONS

Section 6.01.  *Fixing the Record Date.*  (a)  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law,

10

the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 6.02.  *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 6.03.  *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 6.04.  *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 6.05.  *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 6.06.  *Amendments.*  These bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders either by written consent or at any annual or special meeting thereof or by the Board of Directors.



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "MAKO BUYER LLC", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:45 O'CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

5963987  8100
SR# 20212358525

Authentication: 203369775
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:45 PM 06/04/2021
SR 20212358525 - File Number 5963987

# CERTIFICATE OF FORMATION

## OF

## MAKO BUYER LLC

This Certificate of Formation of Mako Buyer LLC (the "**Company**") is being duly executed and filed by the undersigned as an authorized person, to form a limited liability company pursuant to the provisions of the Delaware Limited Liability Company Act (6 *Del. C.* §18-201, *et seq.*).

FIRST:  The name of the limited liability company formed hereby is Mako Buyer LLC.

SECOND:  The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

THIRD:  The name and address of the registered agent for service of process on the Company in the State of Delaware is Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

FOURTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation this ___4th___ day of June, 2021.

**MAKO INTERMEDIATE INC.,**
its sole member

By: _____
Name:   Tim Daileader
Title:    President

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## MAKO BUYER LLC

This Limited Liability Company Agreement (this "**Agreement**") of Mako Buyer LLC dated as of June 4, 2021 is entered into by Mako Intermediate Inc. (the "**Initial Member**") as the sole member (the Initial Member and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, being a "**Member**").

The Member, by execution of this Agreement, hereby forms a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq*.), as amended from time to time (the "**Act**"), and hereby agrees as follows:

1.    *Name*.  The name of the limited liability company formed hereby is Mako Buyer LLC (the "**Company**").

2.    *Filing of Certificates*.  The Member, as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3.    *Purposes*.  The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4.    *Powers*.  In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5.    *Principal Business Office*.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.    *Registered Office; Registered Agent*.  The address of the registered office and the name and address of the registered agent of the Company in the

State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

7.     *Member*.  The name and the mailing address of the Member is as follows:

| Name | Address |
|------|---------|
| Mako Intermediate Inc. | 410 Park Avenue, Suite 900 New York, NY 10022 |

8.     *Limited Liability*.  Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9.     *Capital Contributions*.  The Member is deemed admitted as the member of the Company upon its execution and delivery of this Agreement.  The Member may, but is not obligated to make any capital contribution to the Company.

10.     *Allocation of Profits and Losses*.  The Company's profits and losses shall be allocated solely to the Member.

11.     *Distributions*.  Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

12.     *Management*.  In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware.  The Member has the authority to bind the Company.

13.     *Exculpation and Indemnification*.  (a) To the fullest extent permitted by the laws of the State of Delaware and except in the case of bad faith, gross negligence or willful misconduct, no Member shall be liable to the Company or any other Member for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Member in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Member by this Agreement.

(b)     Except in the case of bad faith, gross negligence or willful misconduct, each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services,

2

LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a Member shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. Any indemnity under this Section 13 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

14.    *Assignments*.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  Upon any transfer, in whole or in part, of the Member's limited liability company interest in the Company, the transferee shall be, without the requirement of any further action, admitted as a Member with respect to the limited liability company interest so transferred and shall be deemed bound by all of the terms and provisions of this Agreement. If the Member transfers all of its interest in the Company pursuant to this Section 14 and the Member is, at the time of such transfer, the sole Member of the Company, the transferee of such limited liability company interests shall be admitted as a Member of the Company upon such transfer and the Company shall continue without dissolution.

15.    *Resignation*.  The Member may at any time resign from the Company.  If the Member resigns pursuant to this Section 15, an additional Member shall be admitted to the Company, subject to Section 16 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

16.    *Admission of Additional Members*.  Subject to Section 14, one or more additional members of the Company may be admitted to the Company with the consent of the Member.  Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional member(s).

17.    *Dissolution*. (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of:  (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of

3

the assets of the Company in an orderly manner), and the assets or proceeds from the sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

18.     *Tax Treatment*.  The Member intends that the Company make an election under Treas. Reg. Sec. 301.7701-3 effective as of the date of its formation and shall thereafter be treated as a corporation for U.S. federal and, if applicable, state and local income tax purposes, and neither the Company nor the Member shall take any action or make any election that is inconsistent with such tax treatment.

19.     *Separability of Provisions*.  If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

20.     *Entire Agreement*.  This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

21.     *Governing Law*.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles).

22.     *Amendments*.  Subject to the requirements set forth in Section 14, this Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

23.     *Sole Benefit of Member*.  Other than as set forth in Section 14, the provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

24.     *Effectiveness*.  This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

25.     *FLTL Sub-Agent*.  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or Member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and

4

collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

[*The remainder of this page is intentionally left blank*]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

**MAKO INTERMEDIATE INC.**,
its sole member

By: _____
Name:   Tim Daileader
Title:    President

*[Signature Page for Mako Buyer LLC Limited Liability Company Agreement]*



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF FORMATION OF "MAKO BUYER 2 LLC",

FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT

2:46 O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

5963991  8100
SR# 20212358564

Authentication: 203369828
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:46 PM 06/04/2021
SR 20212358564 - File Number 5963991

# CERTIFICATE OF FORMATION

## OF

## MAKO BUYER 2 LLC

This Certificate of Formation of Mako Buyer 2 LLC (the "**Company**") is being duly executed and filed by the undersigned as an authorized person, to form a limited liability company pursuant to the provisions of the Delaware Limited Liability Company Act (6 *Del. C.* §18-201, *et seq.*).

FIRST:  The name of the limited liability company formed hereby is Mako Buyer 2 LLC.

SECOND:  The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

THIRD:  The name and address of the registered agent for service of process on the Company in the State of Delaware is Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

FOURTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation this __4th__ day of June, 2021.

**MAKO BUYER LLC**,
its sole member

By: Mako Intermediate Inc.,
its sole member

By: _____
Name:   Tim Daileader
Title:    President

*[Signature Page to Certificate of Formation of Mako Buyer 2 LLC]*

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## MAKO BUYER 2 LLC

This Limited Liability Company Agreement (this "**Agreement**") of Mako Buyer 2 LLC dated as of June 4, 2021 is entered into by Mako Buyer LLC (the "**Initial Member**") as the sole member (the Initial Member and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, being a "**Member**").

The Member, by execution of this Agreement, hereby forms a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq.*), as amended from time to time (the "**Act**"), and hereby agrees as follows:

1.   *Name*.  The name of the limited liability company formed hereby is Mako Buyer 2 LLC (the "**Company**").

2.   *Filing of Certificates*.  The Member, as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3.   *Purposes*.  The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4.   *Powers*.  In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5.   *Principal Business Office*.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.   *Registered Office; Registered Agent*.  The address of the registered office and the name and address of the registered agent of the Company in the

State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

      7.    *Member*.  The name and the mailing address of the Member is as follows:

| Name | Address |
|---|---|
| Mako Buyer LLC | 410 Park Avenue, Suite 900<br>New York, NY 10022 |

      8.    *Limited Liability*.  Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

      9.    *Capital Contributions*.  The Member is deemed admitted as the member of the Company upon its execution and delivery of this Agreement.  The Member may, but is not obligated to make any capital contribution to the Company.

      10.    *Allocation of Profits and Losses*.  The Company's profits and losses shall be allocated solely to the Member.

      11.    *Distributions*.  Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

      12.    *Management*.  In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware.  The Member has the authority to bind the Company.

      13.    *Exculpation and Indemnification*.  (a) To the fullest extent permitted by the laws of the State of Delaware and except in the case of bad faith, gross negligence or willful misconduct, no Member shall be liable to the Company or any other Member for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Member in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Member by this Agreement.

      (b)    Except in the case of bad faith, gross negligence or willful misconduct, each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services,

2

LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a Member shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. Any indemnity under this Section 13 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

14.     *Assignments*.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  Upon any transfer, in whole or in part, of the Member's limited liability company interest in the Company, the transferee shall be, without the requirement of any further action, admitted as a Member with respect to the limited liability company interest so transferred and shall be deemed bound by all of the terms and provisions of this Agreement. If the Member transfers all of its interest in the Company pursuant to this Section 14 and the Member is, at the time of such transfer, the sole Member of the Company, the transferee of such limited liability company interests shall be admitted as a Member of the Company upon such transfer and the Company shall continue without dissolution.

15.     *Resignation*.  The Member may at any time resign from the Company.  If the Member resigns pursuant to this Section 15, an additional Member shall be admitted to the Company, subject to Section 16 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

16.     *Admission of Additional Members*.  Subject to Section 14, one or more additional members of the Company may be admitted to the Company with the consent of the Member.  Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional member(s).

17.     *Dissolution*.  (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of:  (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of

3

the assets of the Company in an orderly manner), and the assets or proceeds from the sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

18.     *Tax Treatment*.  The Member intends that the Company shall be treated as an entity that is disregarded as separate from the Member for U.S. federal and, if applicable, state and local income tax purposes, and neither the Company nor the Member shall take any action or make any election that is inconsistent with such tax treatment.

19.     *Separability of Provisions*.  If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

20.     *Entire Agreement*.  This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

21.     *Governing Law*.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles).

22.     *Amendments*.  Subject to the requirements set forth in Section 14, this Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

23.     *Sole Benefit of Member*.  Other than as set forth in Section 14, the provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

24.     *Effectiveness*.  This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

25.     *FLTL Sub-Agent*.  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or Member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested

4

in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

[*The remainder of this page is intentionally left blank*]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

**MAKO BUYER LLC**,
its sole member

By: Mako Intermediate Inc.,
its sole member

By: _____
Name:   Tim Daileader
Title:    President

*[Signature Page for Mako Buyer 2 LLC Limited Liability Company Agreement]*



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "MAKO INTERMEDIATE INC.", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:44 O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

5963985  8100
SR# 20212358461

Authentication: 203369726
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:44 PM 06/04/2021
SR 20212358461 - File Number 5963985

## CERTIFICATE OF INCORPORATION

## OF

## MAKO INTERMEDIATE INC.

\* \* \*

FIRST:  The name of the corporation is Mako Intermediate Inc. (the "**Corporation**").

SECOND:  The address of its registered office in the State of Delaware is 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.  The name of its registered agent at such address is Corporation Service Company.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**").

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is 1,000, and the par value of each such share is $0.01, amounting in the aggregate to $10.00.

FIFTH: The name and mailing address of the incorporator are:

| Name | Mailing Address |
| --- | --- |
| Mako Holding Inc. | 410 Park Avenue, Suite 900 New York, NY 10022 |

SIXTH:  The Board of Directors shall have the power to adopt, amend or repeal the bylaws of the Corporation.

SEVENTH:  Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

EIGHTH:  The Corporation expressly elects not to be governed by Section 203 of Delaware Law.

NINTH:  (1) A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

#94312071v3

(2)(a)        Each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a director or officer of the Corporation, or an owner of shares of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.   The right to indemnification conferred in this ARTICLE NINTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law or in connection with any other actions taken by it related to the Corporation.   The right to indemnification conferred in this ARTICLE NINTH shall be a contract right.

(b)        The Corporation may, by action of its Board of Directors, provide indemnification to such of the directors, employees, agents and owners of shares of the Corporation (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)        The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)        The rights and authority conferred in this ARTICLE NINTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)        Neither the amendment nor repeal of this ARTICLE NINTH, nor the adoption of any provision of this Certificate of Incorporation or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act or omission that occurred prior to, the time of such amendment, repeal, adoption or

#94312071v3

modification (regardless of when any proceeding (or part thereof) relating to such event, act or omission arises or is first threatened, commenced or completed).

TENTH:  The Corporation reserves the right to amend this Certificate of Incorporation in any manner permitted by Delaware Law and all rights and powers conferred herein on stockholders, directors and officers, if any, are subject to this reserved power.

ELEVENTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Incorporation this _4_ day of June, 2021.

**MAKO HOLDING INC.**

By: _____
Name:   Tim Daileader
Title:    President

*[Signature Page to Certificate of Incorporation of Mako Intermediate Inc.]*

# BYLAWS

## OF

## MAKO INTERMEDIATE INC.

\* \* \* \* \*

## ARTICLE 1
## OFFICES

Section 1.01. *Registered Office.*  The registered office of the Mako Intermediate Inc. (the "**Corporation**") shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02. *Other Offices.*  The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03. *Books.*  The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

Section 2.01. *Time and Place of Meetings.*  All meetings of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02. *Annual Meetings.*  Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting as may be designated by the Board of Directors from time to time.  Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors; *provided*, *however*, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

Section 2.03.  *Special Meetings.*  Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board of Directors and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote.  Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04.  *Notice of Meetings and Adjourned Meetings; Waivers of Notice.*  (a)  Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.  Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting.  Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b)     A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05.  *Quorum.*  Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business.  If, however, such quorum shall not be present or represented at any meeting of the stockholders, a majority in voting interest of the stockholders present in person or represented by proxy may adjourn the meeting, without notice other than announcement at the meeting, until a

quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06.  *Voting.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder.  Any share of capital stock of the Corporation held by the Corporation shall have no voting rights.  Except as otherwise provided by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of the majority of the shares of capital stock of the Corporation present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders.

(b)    Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, appointed by an instrument in writing, subscribed by such stockholder or by his attorney thereunto authorized, or by proxy sent by cable, telegram or by any means of electronic communication permitted by law, which results in a writing from such stockholder or by his attorney, and delivered to the secretary of the meeting.  No proxy shall be voted after three (3) years from its date, unless said proxy provides for a longer period.

(c)    In determining the number of votes cast for or against a proposal or nominee, shares abstaining from voting on a matter will not be treated as a vote cast.

Section 2.07.  *Action by Consent.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to the proviso in Section 2.02, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to

3

notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b)    Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08.  *Organization.*  At each meeting of stockholders, the Chairman of the Board of Directors, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting.  The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09.  *Order of Business.*  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01.  *General Powers.*  Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

Section 3.02.  *Number, Election and Term Of Office.*   (a) The number of directors which shall constitute the whole Board of Directors shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one. The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in Section 2.02 and Section 3.12 herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.  Directors need not be stockholders.

(b)  Subject to the rights of the holders of any series of preferred stock to elect additional directors under specific circumstances, directors shall be elected by a plurality of the votes of the shares of capital stock of the Corporation present

in person or represented by proxy at the meeting and entitled to vote on the election of directors.

Section 3.03. *Quorum and Manner of Acting.*  Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04. *Time and Place of Meetings.*  The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05. *Annual Meeting.*  The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held.  Notice of such meeting need not be given.  In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given as hereinafter provided in Section 3.07 herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06. *Regular Meetings.*  After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07. *Special Meetings.*  Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of any director.  Notice of special meetings of the Board of Directors shall be given to each director at least 24 hours before the date of the meeting in such manner as is determined by the Board of Directors, which required notice shall be

deemed to be waived by a director's attendance at a meeting (unless solely for the purpose of objecting to the lack of required notice).

Section 3.08.  *Committees.*  The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  A quorum of any committee of the Board of Directors shall consist of a majority of the Board of Directors (with directors for quorum purposes counted in accordance with the certificate of incorporation).  Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to any of the following matters: (a) approving or adopting, or recommending to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopting, amending or repealing any bylaw of the Corporation.  Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09.  *Action by Consent.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10.  *Telephonic Meetings.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11.  *Resignation.*  Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation.  The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12.  *Vacancies.*  Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, although less than a quorum, or by a sole remaining director.  Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority vote of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.  Each director so chosen shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  If there are no directors in office, then an election of directors may be held in accordance with Delaware Law.  Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board of Directors, effective at a future date, the directors then in office shall, by majority vote, have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13.  *Removal.*  Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the voting power of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14.  *Compensation.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01.  *Principal Officers.*  The principal officers of the Corporation shall be a President, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose.  The Corporation may

also have such other principal officers, including one or more Controllers, as the Board of Directors may in its discretion appoint.  One person may hold the offices and perform the duties of any two or more of said offices.

Section 4.02.  *Election, Term of Office and Remuneration.*  The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof.  Each such officer shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  The remuneration of all officers of the Corporation shall be fixed by the Board of Directors.  Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03.  *Subordinate Officers.*  In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04.  *Removal.*  Except as otherwise permitted with respect to subordinate officers, any officer may be removed, with or without cause, at any time, by resolution adopted by the Board of Directors.

Section 4.05.  *Resignations.*  Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer).  The resignation of any officer shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.06.  *Powers and Duties.*  The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
CAPITAL STOCK

Section 5.01.  *Certificates For Stock; Uncertificated Shares.*  The shares of the Corporation shall be uncertificated, provided that the Board of Directors of the Corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be certificated shares.  Except as otherwise

8

provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of shares represented by certificates of the same class and series shall be identical.  Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by any two authorized officers of the Corporation representing the number of shares registered in certificate form.  Any or all of the signatures on the certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue.  The Corporation shall not have power to issue a certificate in bearer form.

Section 5.02.  *Transfer Of Shares.*  Shares of the stock of the Corporation may be transferred on the record of stockholders of the Corporation by the holder thereof or by such holder's duly authorized attorney upon surrender of a certificate therefor properly endorsed or upon receipt of proper transfer instructions from the registered holder of uncertificated shares or by such holder's duly authorized attorney and upon compliance with appropriate procedures for transferring shares in uncertificated form, unless waived by the Corporation.

Section 5.03.  *Authority for Additional Rules Regarding Transfer.*  The Board of Directors shall have the power and authority to make all such rules and regulations as they may deem expedient concerning the issue, transfer and registration of certificated or uncertificated shares of the stock of the Corporation, as well as for the issuance of new certificates in lieu of those which may be lost or destroyed, and may require of any stockholder requesting replacement of lost or destroyed certificates, bond in such amount and in such form as they may deem expedient to indemnify the Corporation, and/or the transfer agents, and/or the registrars of its stock against any claims arising in connection therewith.

Section 5.04. *FLTL Sub-Agent.*  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency

Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

<div align="center">

ARTICLE 6
GENERAL PROVISIONS

</div>

Section 6.01.  *Fixing the Record Date.*  (a)  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law,

<div align="center">10</div>

the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 6.02.  *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 6.03.  *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 6.04.  *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 6.05.  *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 6.06.  *Amendments.*  These bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders either by written consent or at any annual or special meeting thereof or by the Board of Directors.

**<u>Exhibit H</u>**

**Apache Definitive Documents**

## Second Amended Apache Term Sheet Implementation Agreement

This SECOND AMENDED IMPLEMENTATION AGREEMENT (the "**Agreement**") is made and entered into effective as of January 1, 2021, by and among (a) Fieldwood Energy LLC, a Delaware limited liability company ("**FWE**"), and GOM Shelf LLC, a Delaware limited liability company (collectively, the "**Fieldwood PSA Parties**") and (b) Apache Corporation ("**Apache**"), Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC (collectively, the "**Apache PSA Parties**") (each, a "**Party**" and collectively, the "**Parties**") to implement the transactions contemplated by or related to the term sheet attached hereto as **Exhibit A** (the "**Apache Term Sheet**").

## RECITALS

WHEREAS, on July 31, 2020, the Parties executed a letter agreement whereby each of the Parties agreed (i) to work to implement the terms of the Apache Term Sheet in accordance therewith and (ii) to execute and support a restructuring support agreement with certain consent rights for Apache and consistent in all respects with the terms of the Apache Term Sheet;

WHEREAS, commencing on August 3, 2020 (the "**Petition Date**"), FWE and certain of its affiliates each filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") a voluntary case under chapter 11 of title 11 of the United States Code;

WHEREAS, Apache asserts that it holds prepetition audit claims against FWE related to (a) the 2013 audit of WC 72 for 2011-12 for the remaining amount of $10,222.37 which amount was included on the April 2016 JIB relating to ENI's debit pay, (b) credits from Noble Energy to Apache for VK 917 and 962 as shown on the August 2018 JIB in the amount of $11,413.53, and (c) joint venture expenditure audits #17.2.12 relating to East Breaks 158/159 for 2017, #19.2.11 relating to the Main Pass 302 #B19 Well for 2019, #19.2.12 relating to East Breaks 158/159 for 2019, and #19.2.22 relating to Viosca Knoll 917/961/962 (Swordfish) for 2019 in the aggregate

net amount of $115,969 (collectively, the "**Apache Audit Claims**"); Apache, as a beneficiary of The Fieldwood Decommissioning Trust A ("**Trust A**") created pursuant to that certain Trust Agreement, dated September 30, 2013, by and among the Fieldwood PSA Parties, as Settlors and Primary Beneficiaries, and the Apache PSA Parties and Apache Shelf Exploration LLC, as Secondary Beneficiaries, as amended, and pursuant to an audit conducted on behalf of Trust A relating to the Fourth and Fifth Amendments to the Decommissioning Agreement, asserts that it holds prepetition claims against FWE relating to funds allegedly improperly withdrawn from Trust A in the aggregate amount of approximately $1,514,236.00 (the "**Apache Trust A Claims**"); and Apache asserts that it holds claims against FWE related to FWE's obligations under the Decommissioning Agreement[1] (the "**Decommissioning Claims**" and, together with the Apache Audit Claims, the Apache Trust A Claims, and any other prepetition claim Apache may assert, the "**Apache Claims**");

WHEREAS, the Bankruptcy Court has established a general bar date of 5:00 p.m. (Central Time) on November 25, 2020 (the "**General Bar Date**") for filing proofs of claim against the Fieldwood PSA Parties; the Parties hereto entered into that certain stipulation, dated as of November 24, 2020, thereby agreeing to extend the General Bar Date as to the Apache Claims in contemplation of the resolution of the Apache Claims as set forth in the RSA (as defined below), the Apache Term Sheet, and the Apache Definitive Documents (as defined below);

---

[1] Specifically, per the terms of the Decommissioning Agreement (each capitalized term used herein without definition is as defined in the Decommissioning Agreement), FWE's Required Spend for decommissioning the Legacy Apache Properties for Plan Year 2020 was $80,000,000.00. According to FWE's records, only approximately $31,730,441.00 was spent by FWE in Plan Year 2020 on such decommissioning obligations, creating a shortfall of the Required Spend of approximately $48,269,559 (the "**2020 Shortfall**"). Upon Apache's information and belief, FWE has not funded the 2020 Shortfall into Trust A, as required pursuant to the terms of the Decommissioning Agreement. Accordingly, one of the Decommissioning Claims Apache asserts it holds against FWE is for the 2020 Shortfall.

WHEREAS, that certain *Restructuring Support Agreement*, dated as of August 4, 2020 (as amended,[2] the "**RSA**"), was entered into by and among (i) the Company[3] (including the Fieldwood PSA Parties); (ii) the Consenting FLTL Lenders; (iii) the Consenting SLTL Lenders (together with the Consenting FLTL Lenders, the "**Consenting Creditors**"); and (iv) Apache (collectively, the "**RSA Parties**"), pursuant to which the RSA Parties agreed to support a financial restructuring of the Company as provided therein;

WHEREAS, the Company and the Consenting Creditors have agreed that certain interests in certain non-Legacy Apache Properties and the properties included in the fields listed on Schedule A to the Apache Term Sheet as "Ownership and Operatorship" (the "**Retained Properties**") (such non-Legacy Apache Properties and the Retained Properties, collectively, the "**Credit Bid Acquired Interests**") will be sold and conveyed to, and certain liabilities and obligations of the Debtors will be assumed by and will constitute liabilities and obligations of (such liabilities and obligations, collectively, the "**Credit Bid Assumed Liabilities**"), an entity to be formed for purposes of consummating the transactions under the Credit Bid Purchase Agreement ("**Credit Bid Purchaser**"), pursuant to a purchase and sale agreement (the "**Credit Bid Purchase Agreement**");

WHEREAS, pursuant to the RSA, the Company agreed to, among other things: (i) negotiate in good faith the definitive documents implementing the transactions contemplated by or relating to the Apache Term Sheet (the "**Apache Definitive Documents**"); (ii) use commercially reasonable efforts to execute and deliver the Apache Definitive Documents; and

---

[2] Since the RSA was executed on August 4, 2020, additional lenders holding FLTL Claims and/or SLTL Claims have executed joinders to the RSA, including members of the ad hoc group of holders of Prepetition SLTL Loans that is represented by the Ad Hoc Group of SLTL Advisors (each as defined in the Plan (as defined below)).

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the RSA, unless indicated otherwise.

(iii) use commercially reasonable efforts to consummate the transactions contemplated under the Apache Definitive Documents;

WHEREAS, pursuant to the RSA, Apache agreed to, among other things: (i) support and take all actions necessary or reasonably requested by the Company to facilitate the finalization of the Apache Definitive Documents; and (ii) support and take all actions necessary or reasonably requested by the Company to facilitate the transactions contemplated under the Apache Definitive Documents;

WHEREAS, pursuant to the RSA, the Apache Definitive Documents shall be in a form reasonably acceptable to the Company, Apache, the Requisite DIP Commitment Parties, and the Requisite FLTL Lenders;

WHEREAS, pursuant to the Apache Term Sheet, Apache acknowledged and agreed that the Apache Definitive Documents shall be subject to the approval of holders of consent rights as set forth in the RSA, which approval shall not be unreasonably withheld, it being understood that good faith negotiations with respect to matters not addressed in the Apache Term Sheet or the Restructuring Term Sheet shall not be considered unreasonably withholding approval;

WHEREAS, the Apache Term Sheet provides that the parties thereto agree to negotiate mutually agreeable Apache Definitive Documents no later than 45 days after the Petition Date, which deadline the Parties have mutually agreed to extend to January 1, 2021;

WHEREAS, the RSA provides that it shall be a DIP Commitment Parties Termination Event if the Company shall not have complied with the deadline requiring the finalization of the Apache Definitive Documents by no later than 75 days after the Petition Date, which deadline has been extended to January 1, 2021;

WHEREAS, pursuant to that certain *Senior Secured Debtor-In-Possession Term Loan Credit Agreement*, dated as of August 24, 2020, among Fieldwood Energy Inc., Fieldwood Energy LLC, the Several Lenders, from time to time, and Cantor Fitzgerald Securities, the Apache Definitive Documents shall be finalized no later than 75 days after the Petition Date, which deadline has been extended to January 1, 2021;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. **Apache Definitive Documents**. The documents below comprise the Apache Definitive Documents as contemplated in the RSA and the Apache Term Sheet:

a. *Conversion of FWE into a Texas Limited Liability Company*.

(i) *Certificate of Conversion (DE) (FWE)*. Annexed hereto as **Exhibit 1**.

(ii) *Certificate of Conversion (TX) (FWE)*. Annexed hereto as **Exhibit 2**.

(iii) *Plan of Conversion (TX) (FWE)*. Annexed hereto as **Exhibit 3**.

(iv) *Certificate of Formation (TX) (FWE)*. Annexed hereto as **Exhibit 4**.

b. *Divisional Merger Documents*.

(i) *Agreement and Plan of Merger (TX) (FWE)* (the "**Plan of Merger**"). Annexed hereto as **Exhibit 5**.

(ii) *Certificate of Merger (TX) (FWE)*. Annexed hereto as **Exhibit 5A**.

(iii) *Certificate of Formation (TX) (Fieldwood Energy I LLC)*. Annexed hereto as **Exhibit 5B**.

c. *Fieldwood Energy I LLC Agreement*. Annexed hereto as **Exhibit 6**.

d. *ST 308 Bond Form*. Annexed hereto as **Exhibit 7**.

e.  *Standby Credit Facility Documents* (collectively, the "**Standby Credit Facility Documents**").

(i)  *Standby Loan Agreement*.  Annexed hereto as **Exhibit 8**.

(ii)  *Security Agreement*.  Annexed hereto as **Exhibit 9**.

(iii)  *Guarantee (Fieldwood Energy I LLC)*.  Annexed hereto as **Exhibit 10**.

(iv)  *Guarantee (GOM Shelf LLC)*.  Annexed hereto as **Exhibit 11**.

(v)  *Form of Mortgages*.  Annexed hereto as **Exhibit 12**.

f.  *Form of Amendment to Unit Operating Agreement*.  Annexed hereto as **Exhibit 13**, the form of which shall be modified in a manner consistent with the Apache Term Sheet and this Agreement to amend each operating agreement with respect to the properties included in the fields listed on Schedule A to the Apache Term Sheet as solely "Operatorship" for which Credit Bid Purchaser shall become operator, which amendments shall be subject to the same consent rights of the Required DIP Lenders and Requisite FLTL Lenders as for the Apache Definitive Documents, and the Parties shall enter into such amendments prior to the closing of the transactions contemplated by the Credit Bid Purchase Agreement.

g.  *Farmout Agreement*.  Annexed hereto as **Exhibit 14**.

h.  *Transition Services Agreement*.  Annexed hereto as **Exhibit 15**.

i.  *SEMS Bridging Agreement*.  Annexed hereto as **Exhibit 16**.

j.  *Amended BriarLake Sublease*.  Annexed hereto as **Exhibit 17**.

k.  *Certification of Rights*.  Annexed hereto as **Exhibit 18**.

2.  **Execution of Apache Definitive Documents**; **Good Faith Cooperation.** Each Party agrees, and Apache expressly acknowledges, that the Company and the Apache PSA Parties have satisfied the requirements under the Apache Term Sheet and the RSA to negotiate

mutually agreeable Apache Definitive Documents by the relevant deadlines set forth therein. Subject to and in accordance with the terms of the RSA and Apache Term Sheet, each of the Parties shall negotiate any exhibits, amendments, modifications or supplements to the Apache Definitive Documents in good faith and agree to exercise commercially reasonable efforts with respect to the negotiation, pursuit, approval, execution, delivery, implementation, and consummation of the Apache Definitive Documents.  The Parties may, by mutual agreement, amend, modify, or supplement the forms of the Apache Definitive Documents attached hereto or negotiate to add additional documents to the list of Apache Definitive Documents, consistent with the terms and conditions herein, in the RSA, and in the Apache Term Sheet, and subject to the consent rights of the Parties in the RSA and the Apache Term Sheet, as necessary or desirable to effectuate the Apache Term Sheet and a chapter 11 plan of reorganization that incorporates the transactions contemplated in the Apache Definitive Documents (the "**Plan**").  Subject to the immediately preceding sentence, the Parties shall execute and deliver the Apache Definitive Documents on or before the effective date of the Plan (the "**Effective Date**").  Each Party agrees to use commercially reasonable efforts to execute and deliver the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant Oil Spill Financial Responsibility ("**OSFR**") form designations and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable laws and contracts the Credit Bid Purchaser as operator (and, as applicable, the designated applicant under OSFR for) the Credit Bid Acquired Interests as promptly as practicable following the closing of the Credit Bid Purchase Agreement, and in any case, prior to the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and

any instruments, forms and filings required by BSEE) that may be required in connection with the implementation of the Divisive Merger (as defined below).

3.      **FWE I Exhibits to the Plan of Merger**.  Exhibits I-A(i) through I-K(iii) to Schedule I to the Plan of Merger (collectively, the "**FWE I Exhibits**") set forth a list of Legacy Apache Properties, which FWE I Exhibits the Apache PSA Parties and the Fieldwood PSA Parties hereto respectively acknowledge are subject to the ongoing review and consent rights of the Consenting Creditors under the RSA (which consent has not yet been provided), and the Apache PSA Parties and Fieldwood PSA Parties agree that the FWE I Exhibits are subject to modification based on such review to be consistent with the Apache Term Sheet.

4.      **Plan and Confirmation Order**.  As provided in the RSA, provisions in the Plan and Confirmation Order that directly affect the structure of FWE I outlined in the Apache Term Sheet or the economic treatment of Apache remain subject to Apache's review and must be in form and substance reasonably acceptable to Apache, and the Plan and Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Requisite DIP Commitment Parties, and the Requisite FLTL Lenders at all times.  To facilitate the implementation of the Apache Term Sheet and the Apache Definitive Documents pursuant to the Plan as contemplated in the RSA and the Apache Term Sheet, the Parties agree that subject to the negotiation of mutually agreeable definitive language, any order of the Bankruptcy Court confirming the Plan (the "**Confirmation Order**") shall provide for the following:

(i)      FWE shall pay up to $5.5 million of reasonable and documented fees and expenses of Apache related to the formation of Fieldwood Energy I LLC ("**FWE I**") and FWE's restructuring, including the negotiation and preparation of the Apache Definitive Documents (collectively, the "**Apache Fees and Expenses**"); provided that amounts paid to Apache on

account of the Apache Fees and Expenses shall not be subject to disgorgement unless the transactions contemplated in the Apache Definitive Documents fail to close as a result of Apache's breach of the RSA.

(ii)     The Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall release (and/or cause the applicable administrative agent or collateral agent to release) all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I to the Plan of Merger) and the Consenting Creditors shall release the Apache PSA Parties from any and all causes of action and claims of any kind related to the Legacy Apache Properties arising prior to the date of the Apache Term Sheet Implementation Agreement.

(iii)     FWE's assets to be allocated to, possessed by, assumed by, and vested in FWE I and Fieldwood Energy III LLC ("**FWE III**"), respectively, pursuant to the transactions contemplated by and in accordance with the Plan of Merger (the "**Divisive Merger**"), including contracts, leases, oil and gas leases and assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), shall be (a) free and clear of (i) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of the assets in connection with the Divisive Merger (such rights, the "**Consent Rights**") and (ii) all preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the vesting of the assets in connection with the Divisive Merger (such rights, the "**Preferential Purchase Rights**"), but (b) subject to and burdened by (x) the liabilities and obligations allocated to and vested in, respectively, FWE I or FWE III, as specified in the Plan of Merger, pursuant to the Divisive Merger (collectively, "**Allocated**

**Obligations**") and (y) Permitted Post-Closing Liens (as defined in the Schedule of Defined Terms for Required Confirmation Order Provisions, attached hereto as **Exhibit B**).

(iv)     Entities (as defined under section 101(15) of the Bankruptcy Code) or Parties that fail to timely file an objection are (a) forever barred from objecting to the allocation and vesting of the assets in connection with the Divisive Merger free and clear of all Consent Rights and Preferential Purchase Rights, and from asserting any alleged Consent Rights or Preferential Purchase Rights with respect to the Divisive Merger, and (b) deemed to consent to and approve the allocation and vesting of the assets free and clear of all Consent Rights and Preferential Purchase Rights, regardless of whether such consent must be in writing pursuant to the terms of any agreement.

(v)     Subject to the Implementation Costs Cap (as defined below), FWE III shall, and shall cause its debtor affiliates in the above-captioned chapter 11 cases to, on the Effective Date, provide for the payment of any and all documentary, filing, recording, stamp, and registration fees, costs, taxes, and expenses (including all reasonable and documented attorneys' fees and regulatory consultant fees) incurred or imposed after the Effective Time (as defined in the Plan of Merger) in connection with the filing of record by or on behalf of FWE I or GOM Shelf LLC of any instrument or instruments with the appropriate records office of any county, parish, state, federal, or other governmental unit (including BOEM) that may be required in connection with the implementation of the Divisive Merger or that either FWE I or GOM Shelf LLC determines in its respective sole discretion to be necessary or appropriate to reflect in the appropriate records of any governmental unit that as a result of the Divisive Merger (a) ownership of the FWE I Assets have been allocated to and are vested in FWE I (and to the extent appropriate to reflect ownership of the GOM Shelf Properties (as defined in the Plan of Merger) in GOM Shelf LLC), and (b) the

Allocated Obligations have been allocated to and vested in, and constitute liabilities and obligations of, FWE I and FWE III, respectively (collectively, the "**Implementation Costs**").  For the avoidance of doubt, the documentary, filing, recording, stamp, and registration fees of FWE I or GOM Shelf LLC, shall include such costs and expenses required to file or to cause to be filed of record in the records office, as determined by Apache to be appropriate, of any county, parish, state, federal, or other governmental unit (including BOEM) of the mortgages, security interests and similar security documentation as is contemplated by the Standby Loan Agreement and the Standby Credit Facility Documents to secure the obligations of FWE I and GOM Shelf LLC thereunder.  Any Implementation Costs that exceed the Implementation Costs Cap shall be the sole responsibility of and paid for by FWE I.

(vi)     Upon the Effective Date of the Plan, the Decommissioning Agreement shall be assumed, with the consent of the Apache PSA Parties, by the Fieldwood PSA Parties and, upon consummation of the transactions provided for in the Plan of Merger, become the obligation of FWE I.  Any Cure Amounts payable as a result of assumption of the Decommissioning Agreement, which amount will be mutually agreed between the Parties prior to confirmation of the Plan and scheduled as a Cure Amount,  shall include any amounts relating to the Apache Claims (including the Apache Trust A Claims and the Decommissioning Claims) and shall be paid into Trust A on the Effective Date or as soon as reasonably practicable thereafter but in no event later than ten (10) business days following the Effective Date.  Payment of any mutually agreed Cure Amount as a result of assumption of the Decommissioning Agreement does not constitute an admission by any Party that a default exists or existed at any time under the Decommissioning Agreement.

(vii)    Except for the rights and remedies to enforce (a) the Decommissioning Agreement against GOM Shelf LLC and FWE I following the Divisive Merger (which agreement

shall be allocated to FWE I and GOM Shelf LLC under the Divisive Merger), (b) the Plan, (c) the Confirmation Order, and (d) the obligations contemplated by the Apache Definitive Documents, the Apache PSA Parties shall be deemed Releasing Parties (as defined in the Plan) under the Plan and waive and release any and all pre-Effective Date claims of any kind (including, without limitation, the Apache Audit Claims, the Apache Trust A Claims and any claims that could qualify as administrative expense claims) against the Debtors, their estates and any other Released Party (as defined in the Plan), in all circumstances only to the extent such claims accrued on or prior to the Effective Date and only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security in any respect.  For the avoidance of doubt, any and all claims the Apache PSA Parties may have against FWE I related to the Decommissioning Agreement arising post-Effective Date and any security obtained, provided, or pledged in connection with the Decommissioning Agreement (the "**Decommissioning Security**") will be preserved.

      (viii)   Except for the rights and remedies to enforce (a) the Decommissioning Agreement against the Apache PSA Parties following the Divisive Merger, (b) the Plan, (c) the Confirmation Order, and (d) the obligations contemplated by the Apache Definitive Documents, the Debtors shall waive and release any and all pre-Effective Date claims of any kind against the Apache PSA Parties, in all circumstances only to the extent such claims accrued on or prior to the Effective Date.  For the avoidance of doubt, any and all claims FWE I may have against the Apache PSA Parties related to the Decommissioning Agreement arising post-Effective Date and the Decommissioning Security will be preserved.

      (ix)   All rights of the Apache PSA Parties with respect to  bonds and letters of credit constituting Decommissioning Security shall be preserved as against such bonding

companies and letter of credit issuers in all respects.  The Debtors shall not terminate any bonds issued on behalf of the Debtors relating to the Legacy Apache Properties under which any federal, state or local governmental entity is an obligee.

(x)      With respect to the agreements and memberships relating, in whole or in part, to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to a governmental unit with respect to the FWE I Assets (as defined in the Plan of Merger) or GOM Shelf Oil and Gas Properties (as defined in the Plan of Merger), to the extent any such agreements or memberships are also needed in respect to any Credit Bid Acquired Interests or FWE III Assets (as defined in the Plan of Merger) that are set forth on **Exhibit 23** hereto, then on or before the Effective Date, FWE shall obtain new agreements and membership for such use with respect to the Credit Bid Acquired Interests or FWE III Assets. With respect to any Excluded Contracts (as defined in the Plan of Merger), FWE shall, on or before the Effective Date, prepare and negotiate replacement agreements with the counterparties to such Excluded Contracts upon substantially the same terms as such Excluded Contracts which may be executed by FWE I immediately following the Effective Date.

(xi)      The Fieldwood PSA Parties and the Apache PSA Parties may, by mutual agreement, amend and modify, without the consent of the Consenting Creditors, the forms of the agreements governing the terms of employment of the Independent Director (as defined in the Apache Term Sheet) of FWE I and of the "sole manager" (as that term is used in the Apache Term Sheet) of FWE I (the "**Sole Manager**"), and the form of the agreement with the "service provider" (as that term is used in the Apache Term Sheet) of FWE I (the "**Contract Services Provider**") to be included in the bid package for the Contract Services Provider (collectively, such forms of agreement comprise the "**Fieldwood I Administrative Documents**").

(xii)     The Bankruptcy Court (i) approves the Apache Definitive Documents and all transactions contemplated by the Apache Term Sheet Implementation Agreement, including the Plan of Merger and Standby Credit Facility Documents, and all actions to be taken, undertakings to be made, and obligations to be incurred by FWE I contemplated thereby; and (ii) following the consummation of the Plan of Merger, authorizes FWE I, without further notice to or action, order, or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into, deliver, and fully perform its obligations under the Apache Definitive Documents, including without limitation, the Standby Credit Facility Documents.  Upon entry of the Confirmation Order, FWE I or the Sole Manager, as applicable, shall be authorized and empowered, without further approval of the Bankruptcy Court or any other party, to take such actions and perform such acts as may be necessary, convenient, desirable, or appropriate to execute and deliver the Apache Definitive Documents in accordance with the Plan and to execute and deliver all documents relating thereto and to perform all of their obligations thereunder.  On the Effective Date, the Apache Definitive Documents shall constitute legal, valid, binding, and authorized obligations of FWE I, enforceable in accordance with their terms, and such obligations of FWE I shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination by FWE I or the Post-Effective Date Debtors (as defined in the Plan) under applicable law, the Plan, or the Confirmation Order.  On the Effective Date, all liens granted pursuant to, or in connection with, the Apache Definitive Documents shall be deemed granted by FWE I and/or GOM Shelf LLC, in each case, pursuant to the Apache Definitive Documents.  On the Effective Date, all liens granted pursuant to, or in connection with Apache Definitive Documents, as applicable, (i) shall be valid, binding, perfected, enforceable liens and security interests in the property described in the applicable Apache Definitive

Documents granted by FWE I and/or GOM Shelf LLC pursuant to the Apache Definitive Documents, as applicable, with the priorities established in respect thereof under applicable non-bankruptcy law and the Apache Definitive Documents, including, but not limited to, the Mortgages, Security Agreement or Standby Loan Agreement and (ii) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination by FWE I and/or GOM Shelf LLC under applicable law, the Plan, or the Confirmation Order.  For the avoidance of doubt, the liens granted to Apache pursuant to the Recharacterization Mortgages (as such term is defined in the Decommissioning Agreement, as amended from time to time, and as supplemented by the Recharacterization Mortgages) upon any recharacterization of the Trust A or Trust A-1 NPIs (as such terms are defined in the Decommissioning Agreement, as amended from time to time, and as supplemented by the Recharacterization Mortgages) shall be senior in all respects to any other liens.

   5.  **Implementation Costs Cap**.  No later than twenty-one (21) days after the effective date of this Agreement (as such date may be extended upon mutual written consent by the Parties including via email), the Parties shall mutually agree in good faith on the estimated amount of Implementation Costs to be funded by the Debtors (such amount, the "**Implementation Costs Cap**").  In the event the Parties are unable to reach a mutual agreement as to the Implementation Costs Cap, the determination shall be submitted to and determined by the law firm of Geiger Laborde & Laperouse, LLC (the "**Referee**").  If the Referee shall be responsible for determining the Implementation Costs Cap, each Party will be required to submit its respective estimate regarding the Implementation Costs Cap to the Referee.  The Referee will then conduct its own investigation and issue its decision regarding the Implementation Costs Cap, where such amount shall not be (i) higher than the highest estimate submitted by a Party, or (ii) lower than the

lowest estimate submitted by a Party.  The Referee's decision shall be considered final and binding. Moreover, the Parties will each pay half of the total costs relating to the Referee's determination of the Implementation Costs Cap.  The Apache PSA Parties' portion of such costs shall not be considered Apache Fees and Expenses.

6.     **Fieldwood I Administrative Documents**.  The documents below comprise the Fieldwood I Administrative Documents:

(i)     *Sole Manager Agreement.*  Annexed hereto as **Exhibit 19**.

(ii)     *Independent Director Agreement.*  Annexed hereto as **Exhibit 20**.

(iii)     *Form of Contract Services Agreement*, to be included in the bid package for the Contract Services Provider.  Annexed hereto as **Exhibit 21**.

(a)     Any waivers, amendments, or modifications made to the Fieldwood I Administrative Documents or any provisions contained therein shall be made by mutual agreement between the Fieldwood PSA Parties and the Apache PSA Parties without the consent of the Consenting Lenders.

7.     **Termination of Agreement and Tolling of General Bar Date.**

(a)     This Agreement shall terminate upon the earlier to occur of (i) the termination of the RSA and (ii) the termination of Apache as a party to the RSA.  Upon termination of this Agreement, each Party shall be immediately released from its obligations, commitments, undertakings and agreements under or related to this Agreement; provided that in no event shall any such termination relieve a Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such termination.

(b)     Notwithstanding the General Bar Date, the Parties agree that Apache shall not file a proof of claim against the Debtors on account of the Apache Claims until after the earliest

to occur of the following (the date of the earliest to occur of the following, the "**Apache POC Filing Date**"): (i) the date that this Agreement is terminated, (ii) the date that FWE, without Apache's express, written consent, files a plan of reorganization materially inconsistent with the RSA, the Apache Term Sheet, or the Apache Definitive Documents, (iii) the date that FWE's chapter 11 case is converted to a case under chapter 7, and (iv) January 15, 2021 if the RSA has not been amended to modify or remove the requirement that Apache timely vote its Claims and Interests to accept the Plan contemplated by the RSA.  Following the occurrence of the Apache POC Initial Filing Date, at any time within the period of thirty (30) days after the Apache POC Initial Filing Date, Apache shall have the right to file a proof of claim or proofs of claim against the Debtors on account of the Apache Claims.  The terms of this paragraph 7(b) shall survive the termination of this Agreement.

8.    **363 Credit Bid Transaction.**  In the event the credit bid sale transaction to Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) is pursued pursuant to section 363 of the Bankruptcy Code as contemplated in the Plan (the "**363 Credit Bid Transaction**"), the Apache PSA Parties agree, consistent with their obligations under the RSA, to support and take reasonable actions to facilitate the 363 Credit Bid Transaction, and cooperate in good faith with Debtors, the Required DIP Lenders and Requisite FLTL Lenders to facilitate the 363 Credit Bid Transaction, including, without limitation, by making any amendments to the Apache Definitive Documents; provided that no such actions shall require the Apache PSA Parties to alter the economics of the Apache Definitive Documents without the Apache PSA Parties' express written consent.

9.    **Credit Bid Purchase Agreement Terms**.[4]

---

[4] The Consenting Creditors agreed under the Apache Term Sheet that "any outstanding accounts receivable and accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of

(a)      The terms of the  Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer) that relate to (i) the scope of Credit Bid Assumed Liabilities (including payables with respect to the Legacy Apache Properties and the Retained Properties) to be assumed by the buyer thereunder and any indemnities with respect thereto and (ii) the scope of receivables with respect to the Legacy Apache Properties to be assigned to the buyer and the obligations that may be imposed on FWE I with respect to the collection of such receivables ((i) and (ii), collectively, the "**Specified Credit Bid Terms**")  shall be in form and substance acceptable to Apache and the Debtors.

(b)      The Parties agree that the terms as set forth on **Exhibit 22** that relate to the Specified Credit Bid Terms are acceptable to Apache and the Debtors to address the Specified Credit Bid Terms in the Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer), and any terms contained in the Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer) that relate to the Specified Credit Bid Terms, other than as set forth on Exhibit 22, must be in form and substance acceptable to Apache and the Debtors.

10.      **Transfer of Retained Properties**.  Notwithstanding anything to the contrary herein, any Retained Properties transferred to Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) in a credit

---

reorganization shall be retained by [Credit Bid Purchaser]."  However, for the avoidance of doubt, any language in Paragraph 9 or Exhibit 22 of this Agreement that differs from, supplements, modifies or is otherwise inconsistent with the foregoing language in the Apache Term Sheet (including, without limitation, any language that relates to items that are not accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization being retained by Credit Bid Purchaser or any language that relates to items that are accounts receivable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization not being retained by Credit Bid Purchaser) has not been agreed to by the Consenting Creditors, and the Consenting Creditors reserve all rights with respect to any such difference, supplement, modification or inconsistency.

bid sale transaction shall be conveyed in accordance with the Decommissioning Agreement.  Any amounts payable to Trust A on account of such transfer shall be the obligation of FWE I.  Apache agrees to work with FWE and the Trust A trustee to obtain the required releases from Trust A and conveyances of such interest to Credit Bid Purchaser in connection with this transfer.

11.    **Effectiveness; Counterparts.**  This Agreement shall become effective and binding upon each Party upon the execution and delivery by such Party of an executed signature page hereto and shall become effective and binding on all Parties on the date when all Parties have executed and delivered a signature page hereto.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this Agreement may be delivered by electronic mail, or otherwise, which shall be deemed to be an original for the purposes of this paragraph.

12.    **Governing Law; Jurisdiction; Waiver of Jury Trial.**  To the maximum extent permitted by applicable law, this Agreement is governed by and is to be construed in accordance with the internal laws of the State of Texas, without giving effect to any principles of conflicts of law thereunder that would result in the application of the laws of any other jurisdiction. Each Party irrevocably agrees that any legal action, suit, or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns shall be brought and determined in the Bankruptcy Court and each Party hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court, and if the Bankruptcy Court does not have (or abstains from) jurisdiction, Courts of the State of Texas and of the United States District Court of the Southern District of Texas, and any appellate court from any thereof, for itself and with respect to its property, generally and unconditionally, with regard to any such proceeding arising out of or relating to this

Agreement.  Each Party further agrees that notice as provided herein shall constitute sufficient service of process and the Parties further waive any argument that such service is insufficient. Each Party hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any proceeding arising out of or relating to this Agreement, (a)  any claim that it is not personally subject to the jurisdiction of the Bankruptcy Court as described herein for any reason, (b) that it or its property is exempt or immune from jurisdiction of such court or from any legal process commenced in such court (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment, or otherwise) and (c) that (1) the proceeding in such court is brought in an inconvenient forum, (2) the venue of such proceeding is improper, or (3) this Agreement, or the subject matter hereof, may not be enforced in or by such court.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF RELATING TO THIS AGREEMENT.  EACH PARTY CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.

   13. **Notices.** All notices hereunder shall be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, courier or by registered or certified mail (return receipt requested) to the following addresses:

(1)     If to the Fieldwood PSA Parties, to:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway S., Suite 1200
Houston, Texas 77042
Attention:  Thomas R. Lamme

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention:   Matt Barr, Esq. (matt.barr@weil.com)
                 Alfredo Peréz, Esq. (alfredo.perez@weil.com)
                 Jessica Liou, Esq. (jessica.liou@weil.com)

(2)     If to the Apache PSA Parties, to:

Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056-4400
Attention:    Anthony Lannie and Brett Cupit

With a copy to:

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, Texas 77002
Attention: Robin Russell, Esq. (RRussell@andrewskurth.com)
                 Catherine Diktaban, Esq. (CDiktaban@hunton.com)

14.    **Amendments.**  Neither this Agreement nor any provision hereof may be waived, amended, or modified **except** pursuant to an agreement or agreements in writing entered into by the Fieldwood PSA Parties and the Apache PSA Parties.

*[Signature Pages to Follow]*

**IN WITNESS WHEREOF**, the undersigned Parties have executed this Second Amended Implementation Agreement as of the effective date of this Agreement.

FIELDWOOD ENERGY LLC,
a Delaware limited liability company

By: _Thomas R. Lamme_

Name: _Thomas R. Lamme_

Title: _Senior Vice President and General Counsel_

GOM SHELF LLC,
a Delaware limited liability company

By: _Thomas R. Lamme_

Name: _Thomas R. Lamme_

Title: _Vice President_

APACHE CORPORATION

By: _____

Name: Ben C. Rodgers
Title:  Senior Vice President, Treasurer and
        Marketing and Midstream


APACHE SHELF, INC.

By: _____

Name: Ben C. Rodgers
Title:  Senior Vice President and Treasurer


APACHE DEEPWATER LLC

By: _____

Name: Ben C. Rodgers
Title:  Senior Vice President and Treasurer

APACHE SHELF EXPLORATION LLC

By: _____

Name: Ben C. Rodgers
Title:   Senior Vice President and Treasurer

## Exhibit A

**The "Apache Term Sheet"**

# FIELDWOOD ENERGY

*Thomas R. Lamme*
*Senior Vice President and General Counsel*
*Direct: 713-969-1107*
*Email: TLamme@fwellc.com*

**VIA EMAIL**

July 31, 2020

P. Anthony Lannie
Executive Vice President and General Counsel
Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056-4400

*Re:     Legacy Apache Properties Term Sheet*

Dear Mr. Lannie:

Attached as Exhibit A is the agreed upon term sheet dated July 31, 2020, by and between Fieldwood Energy LLC and certain of its affiliates (collectively, the "**Fieldwood PSA Parties**") and Apache Corporation and certain of its affiliates (collectively, the "**Apache PSA Parties**" and, together with the Fieldwood PSA Parties, the "**Parties**") supporting the restructuring of the portion of the Fieldwood PSA Parties' business relating to certain assets described therein as the "Legacy Apache Properties" (the "**Legacy Apache Properties Term Sheet**").

By executing this letter agreement, each of the undersigned Parties agrees (i) to work to implement the terms of the Legacy Apache Properties Term Sheet in accordance therewith and (ii) (upon Fieldwood's payment of the retainers to Apache's attorneys and advisors in the amounts submitted to Fieldwood's outside counsel and subject to review and reasonable satisfaction with the restructuring term sheet to be attached to the restructuring support agreement) to execute and support a restructuring support agreement in a final form reasonably acceptable to Apache and consistent in all respects with the terms of the Legacy Apache Properties Term Sheet.

The Parties may execute and deliver this letter agreement by electronic reproduction and in multiple counterparts, each of which shall constitute an original and all of which shall be one and the same document.  This letter agreement shall be governed by the laws of the State of Texas without regard to any choice of law principles.

Regards,

*Thomas R. Lamme*

Thomas R. Lamme

Enclosure

cc:  Michael T. Dane
     Senior Vice President and Chief Financial Officer

IN WITNESS WHEREOF, the undersigned Parties have executed this letter agreement as of the date first written above.

**FIELDWOOD ENERGY LLC**

By: _Thomas R. Lamme_

Name: Thomas R. Lamme
Title: Senior Vice President and General Counsel

**GOM SHELF LLC**

By: _Thomas R. Lamme_

Name: Thomas R. Lamme
Title: Vice President

**APACHE CORPORATION**

_____
Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**APACHE SHELF, INC.**

_____
Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**APACHE DEEP WATER LLC**

_____
Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**Exhibit A**

**Term Sheet for Fieldwood Energy LLC Restructuring**

**Summary of Principal Terms**

| | |
|---|---|
| **Entity Owning Legacy Apache Properties Post-Confirmation** | All oil and gas assets conveyed by Apache Corporation ("Apache") and certain of its affiliates (collectively, the "Apache PSA Parties") in favor of Fieldwood Energy LLC ("Fieldwood" or "debtor") and certain of its affiliates (collectively, the "Fieldwood PSA Parties") pursuant to that Purchase and Sale Agreement dated as of July 18, 2013 between the Apache PSA Parties and the Fieldwood PSA Parties (as amended, "PSA"), plus all leases, wells, fixtures, equipment, permits, ONRR royalty and other deposits, decommissioning bonds with third parties relating to previously sold assets, decommissioning bonds posted by Fieldwood on Legacy Apache Properties, inventory, facilities, easements, pipelines, and related property associated therewith, less and except any such assets sold, assigned, decommissioned, or otherwise disposed of by Fieldwood to third parties or otherwise prior to the date of this Term Sheet or as contemplated in this Term Sheet, and not including the Retained Properties (defined below) (collectively, the "Legacy Apache Properties") shall be owned post-confirmation by a Reorganized Fieldwood unless a different entity is created in accordance with the section entitled "Assumption of Obligations" below (this portion of the business of the Reorganized Fieldwood being referred to hereinafter as "Fieldwood I"). Any outstanding accounts receivable and accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization shall be retained by Fieldwood II (defined below), and any accounts receivable and accounts payable accruing after the effective date of Fieldwood's plan of reorganization shall accrue to the benefit or obligation of Fieldwood I. Fieldwood I will retain BOEM Operator numbers and Qualification cards for Fieldwood and Fieldwood's affiliate GOM Shelf LLC.

Fieldwood I shall (i) have no assets or liabilities upon confirmation other than the Legacy Apache Properties and operational liabilities, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties and certain assets described under "Additional Initial Funding Sources" and "Assumption of Obligations" below, (ii) be a bankruptcy remote business entity with a governance structure which is consistent with the business goals of the parties outlined herein (which includes an independent director or manager whose vote is needed to approve major decisions such as bankruptcy, receivership, liquidation, mergers, and consolidations, and removal and appointment (after the initial appointment) of the sole manager and service provider described below (the "Independent Director")), (iii) not be a reporting entity for SEC purposes, (iv) as of the confirmation date, not create a variable interest entity that Apache is required to consolidate, and (v) is structured in a tax efficient manner within the constraints of the criteria set forth in items (i) through (iv) above. To the extent it will accomplish the goals of the parties outlined herein and is otherwise allowed by applicable law, Fieldwood I and the holder of Fieldwood's other assets not sold during the pendency of the Chapter 11 cases ("Fieldwood II") may be created by a divisional merger of Fieldwood under applicable state law upon the confirmation of Fieldwood's plan of reorganization. |

| | |
|---|---|
| **Management of Fieldwood I** | Fieldwood I will not have employees other than a sole manager. Apache and debtor shall each provide the other with a list of three candidates with a minimum of five (5) years of relevant experience in the energy sector. If one or more names appear on both lists, then the debtor will select the initial sole manager of Fieldwood I from those common name(s). If there are no common names, then each shall have the right to strike two names from the other party's list and the bankruptcy judge shall select the sole manager from the two remaining names (one from each list). In the event the sole manager must be removed (which shall require Apache's consent) and/or replaced or resigns or otherwise no longer serves, then the foregoing procedure will be repeated (except that the Independent Director will replace the bankruptcy court and Fieldwood I will replace the debtor for that purpose).

The initial Independent Director shall be appointed by the debtor and shall be a natural person who is not and, for the prior five years has not been, a director, officer, employee, trade creditor, or shareholder (or spouse, parent, sibling, or child of the foregoing) of Fieldwood, any affiliate of Fieldwood, or any lender to Fieldwood (a "Qualified Person"), and shall be an individual provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, Lord Securities Corporation, Wilmington Trust Company, or, if none of those companies is then providing professional independent managers, another nationally-recognized company selected by Fieldwood with Apache's consent (the "Approved List") and approved by the bankruptcy court. The Independent Director may not be removed, except with Apache's consent. If the Independent Director is removed, resigns, or otherwise ceases to serve, then Fieldwood I shall select another Independent Director who is a Qualified Person from the Approved List.

The limited liability agreement will specify that the sole manager will have the right to control the business and operations of Fieldwood I at all times prior to the completion of the decommissioning of the Legacy Apache Properties owned by Fieldwood I, subject to compliance with the following covenants which can only be waived with Apache's consent:

1. Fieldwood I shall not have any business or operations other than operating the Legacy Apache Properties and decommissioning them;
2. Fieldwood I shall not purchase, sell, or farm-in any asset;
3. Except in compliance with item 4 immediately below, Fieldwood I shall not farm-out any asset;
4. If anyone makes an unsolicited proposal to farm in to any of the Legacy Apache Properties on fair market terms and conditions (including fair market rates of return), then Fieldwood I shall be obligated to market such farm-in opportunity and accept the highest and best offer for such farm-in opportunity as long as the transaction is accretive to Fieldwood I cashflow;
5. Fieldwood I shall not incur indebtedness for borrowed money other than under the Standby Facility (defined below);
6. Fieldwood I shall not use its free cash flow (after operating expenses) for any purposes other than fulfilling is obligations to Apache under the |

#93441325v24
WEIL:\97575248\2\45327.0005

|  | |
|---|---|
| | Decommissioning Agreement (defined below) and the Standby Facility (defined below) until those obligations have been satisfied in full;<br>7. Fieldwood I shall not amend its bylaws, limited liability agreement, or other organizational documents, and any effort to do so shall be ineffective for any purpose;<br>8. Fieldwood I shall not engage in any activity or take any action outside the ordinary course of business; and<br>9. Fieldwood I shall not dissolve, liquidate, or merge or consolidate with any other entity. |
| **Employee Matters** | Fieldwood shall provide Apache with a list of certain employees involved in the operation and management of the Legacy Apache Properties no later than one month after finalizing definitive documentation for the transactions reflected in this Term Sheet and shall make such employees available on a mutually agreed timeline to be interviewed by Apache for potential employment by Apache following the consummation of the Fieldwood I transaction. Apache shall have no obligation to hire any such employees.<br><br>Fieldwood is willing to consider assigning all or a portion of its existing decommissioning business, including separate P&A equipment and spreads, to Apache in connection with mutually agreeable resolution of Fieldwood I terms and based on Fieldwood II's residual business post-restructuring. Consummation of the transaction outlined herein shall not be conditioned on Apache's potential acquisition of such decommissioning business. |
| **Operations and Decommissioning Activities** | Fieldwood I shall hire an independent third-party service provider to perform all operations and decommissioning on behalf of Fieldwood I. The work to be performed by the independent service provider shall be bid out to not less than three (3) qualified candidate service providers, each with a minimum of five (5) years of relevant experience. The qualified bidder who bids the lowest price and best terms, in view of relevant experience, shall be selected as the initial service provider. To facilitate the transition process prior to selection of such service provider, upon the effectiveness of the plan of reorganization, Fieldwood I will enter into a transition services agreement with Fieldwood II to provide operational services for Fieldwood I and the initial service provider. Such transition services agreement may be terminated by Fieldwood I at any time. In the event the service provider must be removed (which may be done by the sole manager, but only with Apache's consent) and/or replaced or otherwise no longer serves, then the sole manager shall again bid out the work in accordance with the procedures outlined hereinabove. No later than 45 days after the Chapter 11 filing date (the "Petition Date"), Fieldwood may select with Apache's consent, which consent may be withheld by Apache in its sole discretion, certain properties (the "Retained Properties") for which Fieldwood II or its successors shall retain operatorship or ownership and operatorship.[1] Properties set forth on <u>Schedule A</u>, attached hereto, constitute the agreed-upon Retained Properties as of the date of this Term Sheet. With regard to ST 308 (identified as a Retained Property on <u>Schedule A</u>), |

---

[1] Properties comprise fields, onshore and offshore facilities, inventory, shore bases, and other assets in which Fieldwood has acquired an incremental working interest separate from the Apache acquisition or have an operational relationship to other Fieldwood properties and which will be operated by or owned and operated by the Fieldwood II or the Fieldwood deepwater business.

3

| | Fieldwood's interest in such property will be transferred to, or allocated through the divisional merger, and owned and operated by the party who owns the deepwater Katmai project upon effectiveness of Fieldwood's plan of reorganization, and the owner of such property shall provide Fieldwood I with a surety bond in a form acceptable to Fieldwood I securing the decommissioning obligations for the ST 308 lease and associated ROW(s) in the amount of $13.2 million. With regard to VR 78 and VR 362/371 (each identified as a Retained Property on Schedule A), Fieldwood's interest in such properties will remain with Fieldwood II and be owned and operated by Fieldwood II, and Fieldwood II shall assume the decommissioning obligations with respect to those properties. With regard to the four properties listed on Schedule A as "Operatorship" in which ownership will be retained by Fieldwood I, a joint operating agreement reasonably satisfactory to Apache will be put in place (or amended) which provides that Fieldwood I as non-operator will have the right to opt in or out of participation in any future capital spending or project related to a work-over or recompletion of an existing well on the property or the drilling of a new well on the property (a "New Project"). If Fieldwood I elects not to participate in accordance with the applicable joint operating agreement, Fieldwood II as Operator may fund (and, if so, it will indemnify Fieldwood I against costs and liabilities associated with) such New Project as an exclusive (sole risk) operation giving Fieldwood II sole right and obligation to any and all risk, costs, liabilities, downside, and upside from such New Project. Fieldwood I shall retain all of its rights and obligations relating to the property other than those rights and obligations created by the New Project. Services provided by Fieldwood II under such JOA will be billed to Fieldwood I at Fieldwood II's actual costs without any actual or allocated overhead or additional G&A charges.<br><br>Services provided by Apache or its third-party contractors to Fieldwood I will be billed to Fieldwood I at Apache's cost and according to typical industry practices under a joint operating agreement. |
|---|---|
| **Right to Fund Capital Expenditures** | Apache will have the right, but not the obligation, to fund any future capital expenditures related to projects forecast to increase production or cash flow on the Legacy Apache Properties ("Approved CapEx") upon terms and conditions mutually agreed between Apache and Fieldwood I.<br><br>At confirmation, to the extent it is formed or the equivalent entity exists, Fieldwood II and Fieldwood I will enter into a Joint Development Agreement ("JDA") whereby Fieldwood II has the right for two years to present capital projects to Fieldwood I relating to Legacy Apache Properties, which will give Fieldwood I, in Fieldwood I's sole discretion, the option to participate or decline participation under terms mutually agreed and set forth in the JDA. Also, if Fieldwood I intends to decommission a property that was producing at the time Fieldwood I was created, upon notice, Fieldwood II will have the option for a period of time to be agreed on by the parties to request to take over (in the form of participation or conveyance to Fieldwood II) such property in accordance with terms set forth in the JDA. Such request may be accepted or rejected by Fieldwood I in its sole discretion. |

4

| Initial Capitalization | Fieldwood shall deposit into Fieldwood I an amount equal to $50 million minus the actual post-petition decommissioning spend by Fieldwood on the Legacy Apache Properties. |
|---|---|
| Additional Initial Funding Sources | In addition to Fieldwood's contribution above, Fieldwood I will be capitalized and funded as follows:<br><br>1) Any and all funds in Trust A shall be made available as described under "Assumption of Obligations" below and<br><br>2) Cash flow from the Legacy Apache Properties shall be reinvested and used for decommissioning activities, to fund Approved CapEx, and to repay amounts outstanding, if any, under the Standby Facility. |
| Assumption of Obligations | Fieldwood I shall continue to be responsible for all of Fieldwood's obligations under the Decommissioning Agreement dated as of September 30, 2013 among the Apache PSA Parties and the Fieldwood PSA Parties (as amended, the "Decommissioning Agreement") and the PSA, including all related contracts, and all contracts relating to insurance, surety bonds, letters of credit, and other decommissioning security assets and all other obligations relating to the Legacy Apache Properties (except to the extent reimbursement or indemnification obligations with respect to the surety bonds and letters of credit are discharged through the bankruptcy), but shall not be responsible for any other obligations of Fieldwood related to its other assets. However, if Fieldwood I is created in a manner other than a divisional merger and is not a residual entity from Fieldwood, Fieldwood I shall assume the same obligations described in the immediately preceding sentence, and Fieldwood and Apache will agree on a structure to complete the formation transaction consistent with the intent of this Term Sheet; provided that all necessary consents can be obtained in order to preserve all material rights of Apache under the material contracts described above, including the letters of credit and bonds issued to Apache in support of the Decommissioning Agreement. If the plan of reorganization confirmed by the bankruptcy court and the definitive documents contemplated herein are consistent with the terms herein unless otherwise agreed and grant Apache all the rights and protections provided for in this Term Sheet unless otherwise agreed, then Apache will waive any claims against the debtor based on any alleged prepetition breach of the Decommissioning Agreement or any related agreement and shall release any and all claims against the debtors and all other released parties under Fieldwood's plan of reorganization (and such releases shall be mutual with Apache benefiting as a released party under the plan) but only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security, in any respect.<br><br>If (i) Fieldwood I defaults on its decommissioning obligations under the Decommissioning Agreement, (ii) any governmental authority or any other Person or entity seeks to cause Apache or its Affiliates to conduct decommissioning that is required in accordance with applicable Law or contract, and (iii) Apache conducts the decommissioning, it shall be done in a manner that entitles Apache to draw on cash in Trust A, the letters of credit, and the bonds currently outstanding, totaling approximately $736 million (the "Decommissioning Security") in reimbursement of such advances. Apache shall |

#93441325v24
WEIL:\97575248\2\45327.0005

|  | be entitled to draw at any time prior to completion of decommissioning of the Legacy Apache Properties should certain letters of credit or bonds of the Decommissioning Security not be renewed in a manner consistent in all respects with the existing terms of such letters of credit or bonds, and, if drawn in such manner, such funds shall be contributed to Trust A. Fieldwood I shall take any action reasonably requested by Apache to entitle Apache to draw on the Decommissioning Security as contemplated in this Term Sheet and shall not take any position in any proceeding or otherwise inconsistent with Apache's ability to draw on the Decommissioning Security. |
|---|---|
| **Standby Facility** | After the Decommissioning Security has been exhausted or is not available to pay or reimburse Apache for decommissioning, Fieldwood I will have the right to borrow from Apache the funds required to perform decommissioning on the Legacy Apache Properties via a line of credit (the "Standby Facility"). <br><br> The Standby Facility shall have a first lien on all the assets of Fieldwood I. Cash advanced shall earn interest at 400 basis points (4% per annum) over the interest rate of Apache's then most recently issued bonds. All principal and interest will be paid in cash from the first available free cash flow of Fieldwood I following each loan. Additional customary terms and conditions TBD. The first lien shall also secure Fieldwood I's obligations to Apache under the Decommissioning Agreement. <br><br> The Standby Facility shall mature at completion of all decommissioning activities. |
| **Beneficiaries of the Fieldwood I** | Fieldwood has the right to designate who shall receive ownership interests entitling the holder to any assets remaining in Fieldwood I after decommissioning is complete and the Standby Facility is repaid. Such interests may be distributed by Fieldwood (consistent with the rules of priority and as may be negotiated under the plan) upon confirmation of Fieldwood's plan of reorganization or as otherwise agreed thereafter but shall thereafter be non-transferable on the books and records of Fieldwood I, it being the goal of all parties that Fieldwood I will not be a reporting entity for SEC purposes and such ownership interests in Fieldwood I shall not be registered or traded on any exchange. Apache understands and agrees that the restructuring transactions currently contemplated by the RSA (defined below) do not provide for the DIP Lenders or the pre-petition FLTL Lenders becoming beneficial owners of Fieldwood I. |
| **Fieldwood's Plan of Reorganization** | Apache will support a Fieldwood Chapter 11 plan of reorganization which provides for the Fieldwood I structure outlined herein and will execute a restructuring support agreement ("RSA") consistent with the terms herein evidencing same. The RSA shall provide that Apache shall have consent rights over all definitive documents related to the Fieldwood I structure outlined herein, and over the portions of the plan of reorganization and the confirmation order that provide for and approve the Fieldwood I structure outlined herein. The RSA shall contain customary termination rights. |
| **Post-Petition Decommissioning Activity** | The DIP Budget shall provide Fieldwood with reasonable funds to accomplish the following during the pendency of the Chapter 11 cases, as it pertains to the Legacy Apache Properties: |

6

|  |  |
|---|---|
|  | 1) Maintain and operate the properties as a reasonably prudent operator in the ordinary course of business,<br><br>2) Maintain all of the assets in their current condition, subject to the Post-Petition Decommissioning Budget (defined below), and insurance upon such assets in amounts and kinds comparable to pre-petition coverage, and<br><br>3) Perform decommissioning activities consistent with the Decommissioning Agreement in accordance with a budget agreed to in advance between Fieldwood and Apache (the "Post-Petition Decommissioning Budget"), the total amount of which budget shall not be greater than $50 million during the pendency of the case, assuming an emergence by March 31, 2021. In the event of emergence later than March 31, 2021, Fieldwood and Apache shall (i) work in good faith to agree upon an extended Post-Petition Decommissioning Budget and (ii) in such event, if (a) Fieldwood has insufficient operating income from the Legacy Apache Properties to perform any required decommissioning within respect to any Legacy Apache Property, after mutually agreed upon capital expenditures, and (b) any governmental authority or any other Person or entity causes Apache or its Affiliates to conduct decommissioning that is required in accordance with applicable Law or contract, then Apache will conduct or cause to be conducted such decommissioning in accordance with the terms of the Decommissioning Agreement. |
| **Expense Reimbursement** | Fieldwood will pay up to $4,000,000 of reasonable and documented fees and expenses of Apache related to the formation of Fieldwood I and Fieldwood's restructuring; provided that such fees and expenses shall only be payable so long as Apache is a party to the RSA. |
| **Other Matters** | Briarlake office sublease to be renegotiated (i) to reflect current market rates for remainder of sublease term; and (ii) to reflect reduced square-footage consistent with the scale and business functions of Fieldwood II or its successors as a result of the Chapter 11 plan of reorganization).<br><br>Fieldwood and Apache shall negotiate mutually agreeable definitive documentation for the transactions reflected in this Term Sheet within 45 days of the Petition Date. Additionally, Apache acknowledges and agrees that the definitive documentation implementing the transactions contemplated under this Term Sheet shall be subject to approval of holders of consent rights as set forth in the RSA, including certain DIP and FLTL Lenders consent rights, which approval shall not be unreasonably withheld, it being understood that good faith negotiations with respect to matters not addressed in this Term Sheet shall not be considered unreasonably withholding approval. |
| **Effectiveness** | The transactions contemplated by this Term Sheet, and as set forth in definitive documentation, shall (i) require that the Decommissioning Agreement and related agreements will not be rejected by the debtor during the Chapter 11 case, and such obligations shall be allocated to, and remain the obligations of, Fieldwood I upon |

|  | the consummation of the plan and the divisional merger contemplated herein, (ii) preserve all Apache's rights with respect to Trust A, the net profits interests, and the letters of credit and bonds issued to Apache under the Decommissioning Agreement, and (iii) become effective on the consummation of Fieldwood's plan of reorganization. |
|---|---|

8

## Schedule A: Retained Properties

| Field | Classification |
|---|---|
| ST 308 | Ownership and Operatorship |
| GI 110/116 | Operatorship |
| GI 43 | Operatorship |
| ST 53/67/68 | Operatorship |
| MC 109 | Operatorship |
| VR 78 | Ownership and Operatorship |
| VR 362/371 | Ownership and Operatorship |

**<u>Exhibit 1</u>**

**Certificate of Conversion (DE) (FWE)**

**STATE OF DELAWARE**
**CERTIFICATE OF CONVERSION**
**FROM A DELAWARE LIMITED LIABILITY COMPANY**
**TO A NON-DELAWARE ENTITY**
**PURSUANT TO SECTION 18-216 OF**
**THE LIMITED LIABILITY COMPANY ACT**

1.) The name of the Limited Liability Company is _____
 Fieldwood Energy LLC                                      .

   (If changed,  the name under which it's certificate of formation was originally
   filed: _____ )

2.) The date of filing of its original certificate of formation with the Secretary of
State is 11/5/2012 _____ .

3.) The jurisdiction in which the business form, to which the limited liability company
shall be converted, is organized, formed or created is Texas _____ .

4.) The conversion has been approved in accordance with this section;

5.) The limited liability company may be served with process in the State of Delaware in
any action, suit or proceeding for enforcement of any obligation of the limited liability
company arising while it was a limited liability company of the State of Delaware, and
that it irrevocably appoints the Secretary of State as its agent to accept service of process
in any such action, suit or proceeding.

6.) The address to which a copy of the process shall be mailed to by the Secretary of State
is
CAPITOL CORPORATE SERVICES, INC.
206 E. 9TH STREET, SUITE 1300 AUSTIN, TX 78701

In Witness Whereof, the undersigned have executed this Certificate of Conversion on this
_____ day of _____, A.D. _____ .

                              By: _____
                                      Authorized Person

                            Name: _____
                                      Print or Type

**<u>Exhibit 2</u>**

**Certificate of Conversion (TX) (FWE)**

**STATE OF TEXAS**
**CERTIFICATE OF CONVERSION**
**OF A**
**DELAWARE LIMITED LIABILITY COMPANY**
**TO A**
**TEXAS LIMITED LIABILITY COMPANY**

This Certificate of Conversion (this "Certificate"), dated as of [●], 2021, has been duly executed and is being filed by Fieldwood Energy LLC, a Delaware limited liability company, to convert to Fieldwood Energy LLC, a Texas limited liability company under Section 10.102 of the Texas Business Organizations Code (the "TBOC").

1.   The name of the converting entity is Fieldwood Energy LLC, a Delaware limited liability company (the "Converting Entity").

2.   The jurisdiction of formation of the Converting Entity is the State of Delaware and the date of formation of the Converting Entity is November 5, 2012.

3.   The Converting Entity is converting from a limited liability company formed under the laws of the State of Delaware to a Texas limited liability company formed under the laws of the State of Texas.  The name of the Texas limited liability company is "Fieldwood Energy LLC" (the "Company").

4.   The file number issued to the Converting Entity by the Secretary of State is 0801715506.

5.   The plan of conversion (the "Plan") as required under Section 10.103 of the TBOC is attached hereto as Exhibit A.

6.   The Certificate of Formation of the Company is attached to the Certificate of Conversion as Exhibit A to the Plan.

7.   The Plan has been approved as required by the laws of the jurisdiction of formation and the governing documents of the Converting Entity.

8.   The Company will be responsible for the payment of any required franchise taxes of the Converting Entity.

9.   This document shall become effective upon its acceptance and filing by the Secretary of State of the State of Texas.

IN WITNESS WHEREOF, the undersigned has executed this Certificate as of the date first above written.

FIELDWOOD ENERGY LLC

By: _____
     Name: [●]
     Title:  [●]

## **Exhibit A**

**Plan of Conversion**

See attached.

**<u>Exhibit 3</u>**

**Plan of Conversion (TX) (FWE)**

**PLAN OF CONVERSION**

**OF**

**Fieldwood Energy LLC**

**(a Delaware limited liability company)**

**INTO**

**Fieldwood Energy LLC**

**(a Texas limited liability company)**

Adopted on [●], 2021

Pursuant to the provisions of Section 18-216 of the Delaware Limited Liability Company Act and Section 10.103 of the Texas Business Organizations Code, Fieldwood Energy LLC, a Delaware limited liability company ("Fieldwood"), hereby adopts the following Plan of Conversion:

1.      The name of the converting entity is "Fieldwood Energy LLC", a Delaware limited liability company, and the name of the converted entity is "Fieldwood Energy LLC", a Texas limited liability company (the "Company").

2.      Fieldwood is continuing its existence in the organizational form of a Texas limited liability company.

3.      The Company is to be a limited liability company under the laws of the State of Texas.

4.      100% of the membership interests of Fieldwood outstanding immediately prior to the conversion shall by virtue of the conversion and without any action on the part of the holders thereof, automatically be converted into 100% of the issued and outstanding membership interests of the Company.

5.      The conversion shall become effective upon (a) the filing and acceptance of a Certificate of Conversion with the Secretary of State of the State of Texas and (b) the filing and acceptance of a Certificate of Conversion with the Secretary of State of the State of Delaware.

6.      The Company will be responsible for the payment of all fees and franchise taxes and will be obligated to pay such fees and taxes if they are not timely paid.

7.      Attached as Exhibit A to this Plan of Conversion is the Texas Certificate of Formation of the Company.

8.      The Plan of Conversion has been approved as required by the laws of the Corporation's jurisdiction of formation and governing document.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the undersigned has executed this Plan of Conversion as of the date first written above.

**FIELDWOOD ENERGY LLC**

By: _____
Name:       [●]
Title:        [●]

**EXHIBIT A**

**CERTIFICATE OF FORMATION**


*See attached.*

## **Exhibit 4**

**Certificate of Formation (TX) (FWE)**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $300**



This space reserved for office use.

## Certificate of Formation
## Limited Liability Company

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

FIELDWOOD ENERGY LLC
_____
The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☒  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

CAPITOL CORPORATE SERVICES, INC.
_____
**OR**
☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

_____
*First Name*　　　　　　　　*M.I.*　　　*Last Name*　　　　　　　　　　*Suffix*

C.  The business address of the registered agent and the registered office address is:

206 E. 9TH STREET, SUITE 1300　　　AUSTIN　　　　　　　TX　　78701
_____
*Street Address*　　　　　　　*City*　　　　　　　　*State*　　*Zip Code*

## Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☐  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☒  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| GOVERNING PERSON 1 |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) |
| **IF INDIVIDUAL** |
| |
| *First Name*　　　　　*M.I.*　　　*Last Name*　　　　　　　*Suffix* |
| **OR** |
| **IF ORGANIZATION** |
| |
| FIELDWOOD ENERGY INC. |
| *Organization Name* |
| **ADDRESS** |
| 2000 W. SAM HOUSTON PKWY S., SUITE 1200　　HOUSTON　　　　TX　USA　77042-3623 |
| *Street or Mailing Address*　　　　　*City*　　　　　*State*　*Country*　*Zip Code* |

Form 205　　　　　　　　　　　　　　　　4

| GOVERNING PERSON 2 | | | | | |
|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | |
| IF INDIVIDUAL | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| **OR** | | | | | |
| IF ORGANIZATION | | | | | |
| *Organization Name* | | | | | |
| **ADDRESS** | | | | | |
| *Street or Mailing Address* | | *City* | *State* | *Country* | *Zip Code* |

| GOVERNING PERSON 3 | | | | | |
|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | |
| IF INDIVIDUAL | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| **OR** | | | | | |
| IF ORGANIZATION | | | | | |
| *Organization Name* | | | | | |
| **ADDRESS** | | | | | |
| *Street or Mailing Address* | | *City* | *State* | *Country* | *Zip Code* |

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed under a plan of conversion.  The name of the converting entity is Fieldwood Energy LLC.  The address of the converting entity is  2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042.  The converting entity was formed on 11/5/2012 under the laws of the State of Delaware, USA.  The converting entity was previously a Delaware limited liability company. The converting entity is registered as a foreign entity under the Texas Secretary of State file number 0801715506.

TX060BOC - 11/27/2013 Wolters Kluwer Online

## Organizer

The name and address of the organizer:

_____
*Name*


_____
*Street or Mailing Address*                    *City*                    *State*     *Zip Code*

### Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

| |
|---|
| the filing of the certificate of conversion of Fieldwood Energy LLC with the Secretary of State of Texas . |

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment.  The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: _____


_____
Signature of organizer


_____
Printed or typed name of organizer

## Exhibit 5

**Agreement and Plan of Merger (TX) (FWE)**

## AGREEMENT AND PLAN OF MERGER
## OF
## FIELDWOOD ENERGY LLC
## INTO
## FIELDWOOD ENERGY I LLC
## AND
## FIELDWOOD ENERGY III LLC

This AGREEMENT AND PLAN OF MERGER, dated as of [●], 2021 (this "Plan of Merger"), is adopted by Fieldwood Energy LLC, a Texas limited liability company ("FWE").

WHEREAS, commencing August 3, 2020, FWE and certain other affiliates of FWE (each, a "Debtor" and collectively, the "Debtors") filed voluntary petitions with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") initiating their respective cases pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") styled *In re Fieldwood Energy LLC, et al.*, jointly administered under Case No. 20-33948 (MI) (each case of a Debtor, a "Case" and collectively, the "Chapter 11 Cases");

WHEREAS, in connection with the Chapter 11 Cases, the Debtors filed the [*Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* at Docket No. [●]] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Plan of Reorganization"), which was confirmed by order of the Bankruptcy Court entered on [●], 2021 at Docket No. [●] (as may be amended, modified, and supplemented, the "Confirmation Order");

WHEREAS, in accordance with the Plan of Reorganization and Confirmation Order, pursuant to the Credit Bid Purchase Agreement certain assets and properties of the Debtors (defined in the Plan of Reorganization as the "Credit Bid Acquired Interests") were sold and conveyed to, and certain liabilities and obligations of Debtors (defined in the Plan of Reorganization as the "Credit Bid Assumed Liabilities") were assumed by, FWE II prior to the Effective Time (the "Credit Bid Transaction");

WHEREAS, pursuant to the Plan of Reorganization, and as authorized by the Confirmation Order, FWE converted from a Delaware limited liability company to a Texas limited liability company on [●], 2021;

WHEREAS, pursuant to the Plan of Reorganization, and as authorized by the Confirmation Order, FWE is to effect a divisional merger as set forth in this Plan of Merger (the "Merger"), pursuant to which, among other things:

a) FWE shall maintain its separate existence and continue as a surviving entity under the name "Fieldwood Energy III LLC" (as such entity exists from and after the Effective Time, "FWE III");

b) a new Texas limited liability company shall be formed under the name "Fieldwood Energy I LLC" ("FWE I");

c)   all of the FWE I Assets (as defined below) shall be allocated to, possessed by, and vested in FWE I, and all of the FWE I Obligations (as defined below) shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I;

d)   all of the assets of FWE (other than the FWE I Assets and the Credit Bid Acquired Interests) shall be allocated to, possessed by, and vested in FWE III; and

e)   all of the liabilities and obligations of FWE (other than the FWE I Obligations and the Credit Bid Assumed Liabilities) shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III; and

WHEREAS, this Plan of Merger has been authorized by the Confirmation Order, which provides such approval of the transactions contemplated hereby as required for purposes of Sections 10.001, 10.002, and 10.302 of the Texas Business Organizations Code (the "TBOC"), and, in accordance with Section 10.008 of TBOC, the Merger shall be consummated without any transfer or assignment having occurred.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, and for the purpose of prescribing the terms and conditions of the Merger, the mode of carrying it into effect, the manner and basis of allocating ownership interests of each of the resulting entities and such other details and provisions of the Merger as are deemed necessary or desirable, FWE has agreed and covenanted, and does hereby agree and covenant, as follows:

1.      Subject to the provisions of this Plan of Merger, FWE shall cause the Merger to be consummated by filing a certificate of merger with the Secretary of State of the State of Texas in such form as is required by, and executed in accordance with, the relevant provisions of the TBOC, in substantially the form attached as Exhibit A (the "Certificate of Merger"), together with a certificate of formation of FWE I in substantially the form attached as Exhibit B. The Certificate of Merger shall provide that the Merger shall be effective on the date the Certificate of Merger is accepted and filed with the Secretary of State of the State of Texas (the "Effective Time").

2.      At the Effective Time:

(a)      FWE shall be divisionally merged in accordance with the TBOC with (i) FWE I being formed as a Texas limited liability company separate from FWE III and continuing as a surviving business entity of the Merger as to the FWE I Assets and the FWE I Obligations in accordance with the TBOC under the name "Fieldwood Energy I LLC" and (ii)  FWE continuing as a surviving business entity of the Merger as to all assets and liabilities of FWE (other than the FWE I Assets, the FWE I Obligations, the Credit Bid Acquired Interests, and the Credit Bid Assumed Liabilities) in accordance with the TBOC under the name "Fieldwood Energy III LLC." The Merger will have the effect set forth below and in Section 10.008 of the TBOC.

(b)      There shall be no change (through conversion, exchange, or otherwise) to the membership interests of FWE, which membership interest in FWE III will continue to be owned by Fieldwood Energy Inc. as of immediately following the Effective Time.

2

(c)      All of the membership interests of FWE I shall be owned by Fieldwood Energy Inc. as of immediately following the Effective Time.

(d)      All of the rights, assets, and properties of FWE described in <u>Part A</u> of <u>Schedule I</u> attached hereto (the "<u>FWE I Assets</u>") shall be allocated to, possessed by, and vested in FWE I without reversion or impairment, without further act or deed, and without transfer or assignment having occurred.

(e)      All of the liabilities and obligations of FWE described in <u>Part B</u> of <u>Schedule I</u> attached hereto (the "<u>FWE I Obligations</u>") shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I. For the avoidance of doubt, the FWE I Obligations exclude all Credit Bid Assumed Liabilities (including all Closing Date Payables and all FWE II Retained Properties Payables).

(f)      All of the rights, assets, and properties of FWE other than the FWE I Assets and the Credit Bid Acquired Interests (collectively, the "<u>FWE III Assets</u>") shall be allocated to, possessed by, and vested in FWE III without reversion or impairment, without further act or deed, and without transfer or assignment having occurred.

(g)      All of the liabilities and obligations of FWE other than the FWE I Obligations and the Credit Bid Assumed Liabilities (collectively, the "<u>FWE III Obligations</u>") shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III.

3.    <u>Post-Merger Covenants</u>.

(a)      Each of FWE I and FWE III shall, at any time and from time to time from and after the Effective Time as and when requested by FWE I or FWE III, or by their respective successors or assigns, execute and deliver, or cause to be executed and delivered in its name by its authorized officers, all such conveyances, transfers, deeds, or other instruments as FWE I or FWE III, as applicable, or such successors or assigns, may reasonably deem necessary in order to evidence (i) the allocation to and vesting in FWE I of the FWE I Assets, and the allocation to and vesting in FWE I of, and the liability and obligation of FWE I for, the FWE I Obligations as a result of the Merger and (ii) the allocation to and vesting in FWE III of the FWE III Assets, and the allocation to and vesting in FWE III of, and the liability and obligation of FWE III for, the FWE III Obligations as a result of the Merger.  Without limiting the foregoing, FWE III shall take such actions as necessary to effect a transfer from **[insert applicable bank account]** to an account designated in writing by FWE I of (i) the FWE I Cash Amount, (ii) the FWE I Suspense Funds, and (iii) the Prepaid JIB Cash Amount.

(b)      From and after the Effective Time (i) FWE I shall, and shall cause the FWE I Subsidiaries controlled by FWE I to, perform the obligations of FWE under Section 10.12 of the Credit Bid Purchase Agreement with respect to Closing Accounts Receivable to the extent attributable to FWE I Assets or any assets held by such FWE I Subsidiaries as of the Effective Time (provided FWE I shall have no obligation to incur any cost or expense in performing such obligations), and (ii) FWE III shall, and shall cause its subsidiaries to, perform the obligations of FWE under Section 10.12 of the Credit Bid Purchase Agreement with respect to Closing Accounts

Receivable to the extent attributable to FWE III Assets or any assets held by subsidiaries of FWE III as of the Effective Time.

4.      As a result of the consummation of the Merger in accordance with this Plan of Merger, FWE I shall only be allocated, shall only possess, and shall only be vested in and receive the FWE I Assets, and shall only be allocated and vested in, shall only possess, and shall only be subject to the FWE I Obligations, and FWE I shall have no rights or obligations relating to any of the FWE III Assets or the FWE III Obligations, except as may be expressly set forth in <u>Section 6</u> or a separate agreement, which is entered into at or after the Effective Time, between FWE I and FWE III with respect to such other Assets or Obligations; and FWE I shall not be deemed to be a predecessor in interest to any of the FWE III Assets or the FWE III Obligations.

5.      As a result of the consummation of the Merger in accordance with this Plan of Merger, FWE III shall only be allocated, shall only possess, and shall only be vested in and receive the FWE III Assets and shall only be allocated and vested in, shall only possess, and shall only be subject to the FWE III Obligations, and FWE III shall have no rights or obligations relating to any of the FWE I Assets or the FWE I Obligations, except as may be expressly set forth in <u>Section 6</u> or in a separate agreement, which is entered into at or after the Effective Time, between FWE III and FWE I with respect to such other Assets or Obligations; and FWE III shall not be deemed to be a predecessor in interest to any of the FWE I Assets or the FWE I Obligations.

6.      If immediately prior to the Effective Time, FWE owned an interest or right in assets (other than FWE III Oil and Gas Properties) which FWE did not acquire under or pursuant to the Apache PSA and which (x) are included in the FWE I Assets in whole (and not in part only as to FWE I's interest) and (y) immediately prior to the Effective Time, are used in connection with or held for use in connection both with (a) FWE I Oil and Gas Properties or FWE I Rights of Way, on the one hand, and (b) FWE III Oil and Gas Properties or FWE III Rights of Way, on the other hand (individually, a "<u>Fieldwood Joint Use Property</u>" and, collectively, the "<u>Fieldwood Joint Use Properties</u>"), then FWE I shall own such Fieldwood Joint Use Property as an FWE I Asset and such Fieldwood Joint Use Property shall not be a FWE III Asset or owned by FWE III; provided, however, that FWE III shall have, and FWE I shall provide FWE III with, access, use, and economic benefit with respect to such Fieldwood Joint Use Property to the extent, and only to the extent, such Fieldwood Joint Use Property was used or held for use in connection with the applicable FWE III Oil and Gas Properties or FWE III Rights of Way immediately prior to the Effective Time; provided, further, that any obligation or liability incurred by FWE I to the extent arising from, related to, or connected with such access, use, or economic benefit by or on behalf of FWE III, (1) shall not constitute an FWE I Obligation, (2) shall be FWE III Obligations and the obligations and liabilities of FWE III, and (3) FWE III shall indemnify and hold harmless FWE I and the FWE Subsidiaries from and against all such obligations and liabilities allocated to FWE III pursuant to this <u>Section 6</u>.

7.      <u>Certain Definitions</u>.  As used herein and in the Schedules and Exhibits attached hereto, (i) the terms set forth below have the meanings ascribed to such terms below and (ii) the terms defined in the Schedules and Exhibits attached hereto have the meanings ascribed to such terms in such Schedules and Exhibits.

(a)      "<u>Apache</u>" means Apache Corporation, a Delaware corporation.

(b)      "Apache PSA" means that certain Purchase and Sale Agreement, dated as of July 18, 2013, by and among Apache, Apache Deepwater LLC, Apache Shelf, Inc., Apache Shelf Exploration LLC, GOM Shelf, and FWE, as amended from time to time, and the transaction documents executed in connection therewith.

(c)      "Asset" means any individual asset, property, right, or interest in any of the FWE I Assets or the FWE III Assets; "Assets" means, collectively, the FWE I Assets and the FWE III Assets.

(d)      "Bankruptcy Code" has the meaning ascribed to such term in the recitals hereto.

(e)      "Bankruptcy Court" has the meaning ascribed to such term in the recitals hereto.

(f)      "Case" has the meaning ascribed to such term in the recitals hereto.

(g)      "Certificate of Merger" has the meaning ascribed to such term in Section 1 hereto.

(h)      "Chapter 11 Cases" has the meaning ascribed to such term in the recitals hereto.

(i)      "Closing Accounts Receivable" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(j)      "Closing Date Payable" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(k)      "Confirmation Order" has the meaning ascribed to such term in the recitals hereto.

(l)      "Contract" means any contract, lease, license, purchase order, sales order, indenture, note, loan, instrument, obligation, promise, grant, or other agreement, arrangement, understanding or commitment, whether or not in written form, that is binding upon a Person or its property.

(m)      "Conveyed" means conveyed, assigned, or sold pursuant to the Apache PSA, regardless of whether such conveyance, assignment, or bill of sale was recorded in the appropriate records of, or approved or recognized by, the applicable Governmental Authority.

(n)      "Credit Bid Acquired Interests" has the meaning ascribed to such term in the recitals hereto.

(o)      "Credit Bid Assumed Liabilities" has the meaning ascribed to such term in the recitals hereto.

WEIL:\97614386\58\45327.0007

(p) "Credit Bid Purchase Agreement" means the Purchase and Sale Agreement, **[dated [●], [●], by and among FWE, [FWE Affiliates] and FWE II]**.

(q) "Credit Bid Transaction" has the meaning ascribed to such term in the recitals hereto.

(r) "Debtor" and "Debtors" has the meaning ascribed to such term in the recitals hereto.

(s) "Decommissioning" has the meaning ascribed to such term in the Decommissioning Agreement.

(t) "Decommissioning Agreement" has the meaning ascribed to such term clause (xix) in Part A of Schedule I attached hereto.

(u) "Effective Time" has the meaning ascribed to such term in Section 1 hereto.

(v) "Environmental Laws" means, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"); the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 et seq.; the Toxic Substances Control Act, 15 U.S.C. §§ 2601 through 2629; the Oil Pollution Act, 33 U.S.C. § 2701 et seq.; the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11001 et seq.; the Endangered Species Act, 16 U.S.C. § 1531 et seq.; and the Safe Drinking Water Act, 42 U.S.C. §§ 300f through 300j, in each case as amended in effect as of the Effective Time, and all similar laws in effect as of the Effective Time of any Governmental Authority having jurisdiction over the property in question addressing pollution, protection of the environment, biological resources, Hazardous Substances, or P&A Obligations.

(w) "Environmental Liabilities" means any and all damages, remediation, obligations, liabilities, environmental response costs, costs to cure, cost to investigate or monitor, restoration costs, costs of remediation or removal, settlements, penalties, fines, and attorneys' and consultants fees and expenses arising out of or related to any violations or non-compliance with any Environmental Laws, including any contribution obligation under CERCLA or any other Environmental Law or matters incurred or imposed pursuant to any claim or cause of action by a Governmental Authority or other Person, attributable to any environmental liabilities, any Release of Hazardous Substances, or any other environmental condition with respect to the ownership or operation of the Assets, including conditions of FWE I Facilities not in compliance with Laws promulgated by the Bureau of Ocean Energy Management ("BOEM"), the Bureau of Safety and Environmental Enforcement ("BSEE"), or the United States Coast Guard.

(x) "Fieldwood Joint Use Property" has the meaning ascribed to such term in Section 6 hereto.

(y) "FWE" has the meaning ascribed to such term in the recitals hereto.

(z) "FWE I" has the meaning ascribed to such term in the recitals hereto.

(aa)    "FWE I Assets" has the meaning ascribed to such term in Section 2(d) hereto.

(bb)    "FWE I Cash Amount" has the meaning ascribed to such term in clause (xxiii) of Part A of Schedule I hereto.

(cc)    "FWE I Contracts" has the meaning ascribed to such term in clause (x) in Part A of Schedule I attached hereto.

(dd)    "FWE I Facilities" has the meaning ascribed to such term in clause (iii) in Part A of Schedule I attached hereto.

(ee)    "FWE I Lands" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(ff)    "FWE I Leases" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(gg)    "FWE I Obligations" has the meaning ascribed to such term in Section 2(e) hereto.

(hh)    "FWE I Permits" has the meaning ascribed to such term in clause (vi) in Part A of Schedule I attached hereto.

(ii)    "FWE I Rights of Way" has the meaning ascribed to such term in clause (v) in Part A of Schedule I attached hereto.

(jj)    "FWE I Subsidiaries" means GOM Shelf and the other entities listed on Exhibit I-I.

(kk)    "FWE I Units" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(ll)    "FWE I Wells" has the meaning ascribed to such term in clause (ii) in Part A of Schedule I attached hereto.

(mm)    "FWE II" means **[insert Buyer under the Credit Bid Purchase Agreement]**.

(nn)    "FWE II Retained Properties" has the meaning ascribed to such term in Part A of Schedule I attached hereto.

(oo)    "FWE II Retained Properties Payables" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(pp)    "FWE III" has the meaning ascribed to such term in the recitals hereto.

(qq)    "FWE III Assets" has the meaning ascribed to such term in Section 2(f) hereto.

(rr)   "FWE III Leases" means all rights, title, and interests of FWE in and to any and all oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in or to Hydrocarbons in place and mineral interests or servitudes of every nature held or owned by FWE or in which FWE holds or owns an interest, other than the FWE I Leases.

(ss)   "FWE III Obligations" has the meaning ascribed to such term in Section 2(g) hereto.

(tt)   "FWE III Oil and Gas Properties" means, collectively, the FWE III Leases, the FWE III Units, and the FWE III Wells.

(uu)   "FWE III Rights of Way" means all rights, title, and interests of FWE in and to any and all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases and other rights to use the surface or seabed held or owned by FWE or in which FWE holds or owns an interest, other than the FWE I Rights of Way.

(vv)   "FWE III Units" means the FWE III Leases, together with all pooled, communitized or unitized acreage that includes all or part of any of the FWE III Leases.

(ww)   "FWE III Wells" means all rights, title, and interests of FWE in and to any and all Hydrocarbon, water, CO2, injection, disposal wells or other wells in which FWE holds or owns an interest, other than the FWE I Wells.

(xx)   "GOM Shelf" means GOM Shelf LLC, a Delaware limited liability company.

(yy)   "GOM Shelf Oil and Gas Properties" means the ownership interests held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA in (i) the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in Hydrocarbons in place and mineral interests or servitudes of every nature in, on, under, and that may be produced from or attributable to any of the lands covered by such leases, subleases, interests, and rights, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated, including those described on Exhibit I-A attached hereto that are identified as GOM Shelf Leases thereon (collectively, the "GOM Shelf Leases"), (ii) all pooled, communitized, or unitized acreage that includes all or part of any GOM Shelf Leases (the "GOM Shelf Units"), (iii) all tenements, hereditaments, and appurtenances belonging to the GOM Shelf Leases and the GOM Shelf Units (collectively with the GOM Shelf Leases and GOM Shelf Units, the "GOM Shelf Lands"), and (iv) any and all Hydrocarbon, water, CO2, injection wells or other wells completed on, drilled from, or otherwise located, in whole or in part, on, under, or within the GOM Shelf Lands, in each case whether producing, non-producing, shut in, or permanently or temporarily Plugged and Abandoned, including the wells set forth on Exhibit I-B attached hereto that are identified as GOM Shelf Wells thereon and all wellbores spudded prior to the Effective Time located on the GOM Shelf Lands (the "GOM Shelf Wells"); for the avoidance of doubt, (x) the

GOM Shelf Oil and Gas Properties shall not include any of the FWE II Retained Properties, (y) the GOM Shelf Lands shall include only the ownership interests therein held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA and the descriptions in Exhibit I-A shall reference only such ownership interests, and (z) the GOM Shelf Wells shall include only the ownership interests therein held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA and the descriptions in Exhibit I-B shall reference only such ownership interests.

(zz)    "GOM Shelf Properties" means those assets or properties owned by GOM Shelf.

(aaa)    "Governmental Authority" means any federal, state, municipal, tribal, local, or similar governmental authority, regulatory, or administrative agency, court, or arbitral body, or any subdivision of any of the foregoing.

(bbb)    "Hazardous Substances" means any pollutant, contaminant, dangerous or toxic substance, hazardous or extremely hazardous substance or chemical, or otherwise hazardous material or waste defined as "hazardous waste", "hazardous substance" or "hazardous material" under applicable Environmental Laws, including chemicals, pollutants, contaminants, wastes, or toxic substances that are classified as hazardous, toxic, radioactive, or otherwise are regulated by, or form the basis for Environmental Liability under, any applicable Environmental Law, including hazardous substances under CERCLA.

(ccc)    "Hydrocarbons" means oil and gas and other hydrocarbons produced or processed in association therewith (regardless of whether such item is in liquid or gaseous form), or any combination thereof, and any minerals (whether in liquid or gaseous form) produced in association therewith, including all crude oil, gas, casinghead gas, condensate, natural gas liquids, and other gaseous or liquid hydrocarbons (including ethane, propane, iso-butane, nor-butane, gasoline, and scrubber liquids) of any type and chemical composition.

(ddd)    "Imbalance" means any over-production, under-production, over-delivery, under-delivery, or similar imbalance of Hydrocarbons produced from or allocated to the FWE I Assets or the FWE III Assets, as applicable, regardless of whether such over-production, under-production, over-delivery, under-delivery, or similar imbalance arises at the wellhead, pipeline, gathering system, transportation system, processing plant, or other location, including any imbalances under gas balancing or similar agreements, imbalances under processing agreements, and imbalances under gathering or transportation agreements.

(eee)    "Implementation Cost Cap" shall be an amount equal to $300,000.

(fff)    "Interim Unpaid P&A Expenses" has the meaning ascribed to such term in clause (ix) in Part B of Schedule I attached hereto.

(ggg)    "JIB Advance AR" has the meaning ascribed to such term in clause (xvi) in Part A of Schedule I attached hereto.

WEIL:\97614386\58\45327.0007

(hhh)   "Laws" means all laws (including common law), statutes, rules, regulations, ordinances, orders, decrees, requirements, judgments, and codes of Governmental Authorities.

(iii)   "Merger" has the meaning ascribed to such term in the recitals hereto.

(jjj)   "Obligation" means any individual liability or obligation in any of the FWE I Obligations or the FWE III Obligations; "Obligations" means, collectively, the FWE I Obligations and the FWE III Obligations.

(kkk)   "P&A Obligations" means any and all obligations, liabilities, damages, losses, and claims arising out of or attributable to the payment or performance of all Plugging and Abandonment.

(lll)   "Person" means any individual, corporation, partnership, limited liability company, trust, estate, Governmental Authority, or any other entity.

(mmm) "Plan Effective Date" means the "Effective Date" as defined in the Plan of Reorganization.

(nnn)   "Plan of Merger" has the meaning ascribed to such term in the recitals hereto.

(ooo)   "Plan of Reorganization" has the meaning ascribed to such term in the recitals hereto.

(ppp)   "Plugging and Abandonment" and "Plugged and Abandoned" and its derivatives mean all plugging, replugging, abandonment, re-plugging and re-abandonment, equipment removal, disposal, or restoration associated with the properties and assets included in or burdened by the FWE I Assets, including all plugging and abandonment, removal, dismantling, decommissioning, surface and subsurface restoration, site clearance, and disposal of the FWE I Wells or the FWE I Facilities, well cellars, fixtures, platforms, caissons, flowlines, pipelines, structures, and personal property of whatever kind located on or under, related to, or associated with operations and activities conducted by whomever with respect to each of the FWE I Assets, the flushing, pickling, burial, removal, and capping of all associated flowlines, field transmission and gathering lines, pit closures, the restoration of the surface, site clearance, any disposal of related waste materials and Hazardous Substances and obligations to obtain plugging exceptions for any of the FWE I Wells with a current plugging exception, all in accordance with all applicable Laws, the terms and conditions of each of the FWE I Leases, or similar leasehold interests, beneficial interests, easements and the FWE I Leases.

(qqq)   "Prepaid JIB Cash Amount" has the meaning ascribed to such term in clause (xvi) in Part A of Schedule I attached hereto.

(rrr)   "Proprietary Seismic Data" means any and all proprietary Seismic Data owned (but not licensed) by FWE related to the FWE I Assets and/or the FWE III Assets.

(sss)    "Records" means all books, records, files, data, information, drawings, maps, corporate, financial, tax, and legal data and records to the extent (and only to the extent) related to the FWE I Assets, the FWE I Obligations, the FWE III Assets, and/or the FWE III Obligations, as applicable, including electronic copies of all computer records where available, contract files, lease files, well logs, division order files, title opinions and other title information (including abstracts, evidences of rental payments, maps, surveys, and data sheets), hazard data and surveys, production records, SEMS Documentation and Procedures, Proprietary Seismic Data, engineering files, and environmental records.

(ttt)    "Release" means any discharge, emission, spilling, leaking, pumping, pouring, injecting, dumping, burying, leaching, migrating, abandoning, or disposing into or through the environment of any Hazardous Substance, including the abandonment or discarding of barrels, containers, and other closed receptacles containing any Hazardous Substance.

(uuu)    "Royalties" means all rentals, minimum royalties, shut in payments, royalties, overriding royalties, reversionary interests, net profits interests, production payments, carried interests, non-participating royalty interests, reversionary interests, and other royalty burdens and other interests payable out of production of Hydrocarbons from or allocated to the FWE I Assets, or the proceeds thereof to third parties.

(vvv)    "Seismic Data" means any and all seismic, geological, geochemical, and geophysical data (including core and fluid samples and other engineering, geological, and/or geophysical studies (including seismic data, studies, and information)), all licensed or proprietary or confidential geologic, seismic, geophysical, and interpretative data, records, and analyses, including any and all interpretations, derivative data, and other work products of any of the foregoing, and other similar information and records, in each case relating to the Assets or the regional area surrounding the Assets.

(www)    "SEMS Documentation and Procedures" means all documents and procedures in place by FWE to comply with BSEE's Safety and Environmental Management System (SEMS) 30 CFR 250 Subpart S with respect to the FWE I Assets and/or the FWE III Assets.

(xxx)    "Standby Credit Facility Documents" means the Standby Loan Agreement, to be entered into promptly after the Effective Time, by and between FWE I and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents, and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

(yyy)    "Standby Facility" means a secured line of credit to be provided by Apache to FWE I and GOM Shelf to fund the ongoing Plugging and Abandonment of the Legacy Apache Properties (as such term is defined in the FWE I LLC Agreement) and the GOM Shelf Properties, which shall become available to advance funds to FWE I and for use in accordance with the Standby Credit Facility Documents. The Standby Facility shall be secured by a first-priority lien on all the assets of FWE I (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of FWE I to Apache under the Decommissioning Agreement.

(zzz)   "Suspense Funds" means any and all funds held in suspense by FWE at the Effective Time, and any interest accrued in escrow accounts for such suspended funds.

(aaaa)   "TBOC" has the meaning ascribed to such term in the recitals hereto.

8.    Choice of Law.   This Plan of Merger shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Texas and without regard to any borrowing statute that would result in the application of the statutes of limitations or repose of any other jurisdiction.  In furtherance of the foregoing, the laws of the State of Texas will control even if under such jurisdiction's choice of law or conflict of law analysis, the substantive or procedural law of some other jurisdiction would ordinarily or necessarily apply.

9.    FWE III Obligation to Pay Recording Expenses.  Subject to the Implementation Costs Cap, FWE III shall, and shall cause its debtor affiliates in the Chapter 11 Cases to, from and after the later of (i) the Plan Effective Date and (ii) the Effective Time, provide for the payment of any and all documentary, filing, recording, stamp, and registration fees, costs, taxes, and expenses (including all reasonable and documented attorneys' fees and regulatory consultant fees) incurred or imposed after the Effective Time in connection with the filing of record by or on behalf of FWE I or GOM Shelf of any instrument or instruments with the appropriate records office of any county, parish, state, federal, or other governmental unit (including BOEM) that may be required in connection with the implementation of the Merger or that either FWE I or GOM Shelf determines in its respective sole discretion to be necessary or appropriate to reflect in the appropriate records of any governmental unit that as a result of the Merger (a) ownership of the FWE I Assets have been allocated to and are vested in FWE I (and to the extent appropriate to reflect ownership of the GOM Shelf Properties in GOM Shelf), and (b) the liabilities and obligations to be allocated to and vested in, respectively, FWE I or FWE III pursuant to the Merger have been allocated to and vested in, and constitute liabilities and obligations of, FWE I and FWE III, respectively (collectively, the "Implementation Costs").  For the avoidance of doubt, the documentary, filing, recording, stamp, and registration fees of FWE I or GOM Shelf shall include such costs and expenses required to file or to cause to be filed of record in the records office, as determined by Apache to be appropriate, of any county, parish, state, federal, or other governmental unit (including BOEM) of the mortgages, security interests, and similar security documentation as is contemplated by the Standby Facility and the Standby Facility Documents to secure the obligations of FWE I and GOM Shelf thereunder.  Any Implementation Costs that exceed the Implementation Costs Cap shall be the sole responsibility of and paid for by FWE I.

10.    Interpretation.  The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof.  As used herein, the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation" and will not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.  Words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Plan of Merger as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.  All Exhibits and Schedules annexed hereto or referred to in this Plan of Merger are hereby incorporated in and made a part of this Plan of Merger as if set forth in full in this Plan of Merger, and definitions therein shall apply

herein.  Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein will be defined as set forth in this Plan of Merger, and vice-versa.  A reference to any legislation or to any provision of any legislation shall include any modification or re-enactment thereof, any legislative provision substituted therefor, and all regulations and statutory instruments issued thereunder or pursuant thereto.

11. <u>Rejected Contracts</u>.  Any Contract rejected pursuant to Section 365 of the Bankruptcy Code in the Chapter 11 Cases shall be deemed to be excluded and removed from any Exhibit or Schedule attached hereto, and any such Contract shall not be allocated to any of FWE I or FWE III, and any liabilities or obligations of such Contract shall be treated in accordance with the Plan of Reorganization and Confirmation Order or otherwise satisfied, compromised, settled, released, or discharged pursuant to the Plan of Reorganization and Confirmation Order.

<p align="center">* * * * * *</p>

IN WITNESS WHEREOF, the undersigned has duly executed this Plan of Merger as of the date first written above.

**FIELDWOOD ENERGY LLC**,
a Texas limited liability company


By: _____
Name:
Title:

WEIL:\97614386\58\45327.0007

## **Exhibit A**

**Certificate of Merger**

[see attached]

**<u>Exhibit B</u>**

**Certificate of Formation – FWE I**

[see attached]

**Schedule I** [1]

**FWE I Assets and FWE I Obligations**

Part A:

"FWE I Assets" means all of FWE's right, title, and interest in, to, or under the following, less and except any FWE II Retained Properties:

(i)      the ownership interests Conveyed[2] to FWE pursuant to the Apache PSA in the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in or to Hydrocarbons in place and mineral interests or servitudes of every nature, in, on, under, and that may be produced from or attributable to any of the lands covered by such leases, subleases, interests, and rights, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated, including those described on Exhibit I-A attached hereto that are identified as FWE I Leases thereon (collectively, such ownership interests being the "FWE I Leases"), together with all pooled, communitized, or unitized acreage that includes all or part of any of the FWE I Leases (the "FWE I Units"), and all tenements, hereditaments, and appurtenances belonging to the FWE I Leases and the FWE I Units (collectively with the FWE I Leases and FWE I Units, the "FWE I Lands"); for the avoidance of doubt, the FWE I Lands shall only include the ownership interests therein Conveyed to FWE pursuant to the Apache PSA and the descriptions in Exhibit I-A shall only reference such ownership interests;

(ii)      the ownership interests Conveyed to FWE pursuant to the Apache PSA in any and all Hydrocarbon, water, $CO_2$, injection, disposal wells or other wells completed on, drilled from, or otherwise located, in whole or in part,[3] on, under, or within the FWE I Lands, in each case whether producing, non-producing, shut in, or temporarily or permanently Plugged and Abandoned, including the wells set forth on Exhibit I-B attached hereto that are identified as FWE I Wells thereon and all wellbores spudded prior to the Effective Time located on the FWE I Lands (such ownership interests being the "FWE I Wells" and, together with the FWE I Leases and the FWE I Units, but excluding the FWE II Retained Properties, the "FWE I Oil and Gas Properties"); for the avoidance of doubt, (x) the FWE I Wells shall only include the ownership interests therein Conveyed to FWE pursuant to the Apache PSA and the descriptions in Exhibit I-B shall only reference such ownership interests and (y) rights conveyed to FWE I pursuant to clause (i) and

---

[1] **Note to Draft**:  In the event an asset not included on the schedules hereto is identified after the parties have agreed to the final form of this Plan of Merger, but prior to the Effective Time, subject to the agreement of the parties, the applicable schedule shall be updated to include and provide for the allocation of such asset.

[2] **Note to Draft**:  Any additional interests in the FWE I Assets acquired by FWE other than under the Apache PSA ("Add-On Interests") are to be identified by FWE and if, upon being identified, Apache agrees to the inclusion of such interest in the FWE I Assets Schedule I will be modified to include such interests and if Apache does not agree then such interests will be allocated to and vested in FWE III to the extent held by FWE as of the Effective Time.

[3] **Note to Draft**:  FWE confirmed there are no wells that are not Legacy Apache Properties that would otherwise fall within this description.

this underline(ii) include all rights of FWE to operate or as to operatorship of the FWE I Oil and Gas Properties to the extent such rights were Conveyed to FWE or its affiliates pursuant to the Apache PSA or otherwise derived from rights and interests Conveyed to FWE or its affiliates pursuant thereto;

(iii)    (A) all platforms and facilities, including all platforms identified on Exhibit I-C(i) attached hereto and all facilities identified on Exhibit I-C(ii) attached hereto and all associated processing systems, buildings, compressors, meters, tanks, machinery, tools, personal property, equipment (including spars, trees, PLETs, jumpers, flowlines, risers, umbilicals, control assemblies, and production handling equipment), pipelines, gathering lines, water lines, tank batteries, pipeline capacity, other water gathering, transportation, or disposal infrastructure and equipment, frac tanks, ponds, metering facilities, interconnections, and other inventory, boats, vehicles, fixtures, improvements, and other property (whether real, immovable, personal, movable, mixed or otherwise), that (a) are located on the lands covered by or appurtenant to, but only to the extent associated with the ownership interests included in, any of the FWE I Leases, the FWE I Lands, the FWE I Rights of Way, the FWE I Wells, or located on the lands covered by or appurtenant to the GOM Shelf Oil and Gas Properties, (b) are used or held for use in whole or in part in connection with any of the ownership interests included in the FWE I Wells or the GOM Shelf Wells and the operation of any of the FWE I Leases or the GOM Shelf Leases (whether located on the lands covered by or appurtenant to any of the FWE I Leases, the FWE I Lands, the FWE I Rights of Way, the FWE I Wells, the GOM Shelf Leases, the GOM Shelf Lands, the GOM Shelf Wells, or stored at a different location (onshore or offshore)), or (c) were acquired by FWE pursuant to the Apache PSA, but in such event this clause (c) shall effect an allocation to FWE I only as to the interests so acquired by FWE under and pursuant to such Apache PSA, and (B) such flowlines, pipelines, gathering lines, and/or pipeline capacity that either (1) are used or held for use in whole or in part in connection with any of the FWE I Leases, the FWE I Wells or the FWE I Units operations or the production, transportation, or processing of Hydrocarbons produced from any of the FWE I Oil and Gas Properties, but in such case this clause (1) shall effect an allocation to FWE I only as to the ownership interest included in the FWE I Oil and Gas Properties if used or held for use in whole or in part in connection with any of the GOM Shelf Oil and Gas Properties  or (2) were acquired by FWE pursuant to the Apache PSA, but in such event this clause (2) shall effect an allocation to FWE I only as to the interests so acquired by FWE under and pursuant to such Apache PSA (such rights, title, and interests being the "FWE I Facilities");

(iv)    the Proprietary Seismic Data and licensed Seismic Data relating, in whole or in part, to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, if any;

(v)    all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases, authorizations, permits, and other rights to use the surface or seabed appurtenant to, and held for use in whole or in part in connection with, the ownership or operation of any or all of the GOM Shelf Oil and Gas Properties or any or all of the properties, rights, titles, and interests described in clauses (i) through (iii) and (vi) of this Schedule I, Part A, but only to the extent such either (i) are used or held for use exclusively in connection with the ownership or operation of such properties, rights, titles, and interests, or (ii) were acquired by FWE pursuant to the Apache PSA, but in such event only as to the interests so acquired by FWE under and pursuant

2

to such Apache PSA, including the property described on <u>Exhibit I-D(i)</u> attached hereto and <u>Exhibit I-D(ii)</u> attached hereto (such rights, title, and interests being the "<u>FWE I Rights of Way</u>");

(vi)     all environmental and other governmental (whether federal, state, or local) permits (including all plans filed with or approved by applicable Government Authorities), licenses, orders, authorizations, franchises, and related instruments or rights to the extent relating in whole or in part to the ownership, operation, or use of any or all of the GOM Shelf Oil and Gas Properties or any or all of the properties, rights, titles, and interests described in clauses (i) through (iii), (v) and (viii) of this <u>Schedule I</u>, <u>Part A</u> (the "<u>FWE I Permits</u>");[4]

(vii)     Service Agreement, dated April 1, 2015, applicable to Firm Transportation Service under FT-2 Rate Schedule by and between Discovery Gas Transmission LLC as Transporter and Fieldwood Energy LLC as Shipper;

(viii)     all Hydrocarbons in, on, under, or that may be produced from or attributable to the FWE I Leases, the FWE I Units, or the FWE I Wells, including all oil, condensate, and scrubber liquids inventories and ethane, propane, iso-butane, nor-butane, and gasoline inventories of FWE from the FWE I Oil and Gas Properties in storage or constituting linefill and Imbalances;

(ix)     the FCC licenses associated with the call signs listed on <u>Exhibit I-E</u> attached hereto;[5]

(x)     all contracts, agreements, leases, licenses, commitments, sales and purchase orders, and other instruments related, in whole or in part, to the ownership or operation of any or all of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties or any other properties, rights, titles, and interests described in the clauses of this <u>Schedule I</u>, <u>Part A</u> (and including any insurance contract if such insurance contract provides coverage for any incident that occurs on any FWE I Asset(s) or the GOM Shelf Oil and Gas Properties at, before, or after the Effective Time), including operating agreements, unitization, pooling, and communitization agreements, declarations and orders, area of mutual interest agreements, exploration agreements, joint venture agreements, farmin and farmout agreements, exchange agreements, purchase and sale agreements, and other contracts relating to the FWE I Assets (but expressly excluding any such agreements pursuant to which FWE acquired interests in or to any other FWE I Assets in addition to the rights, title, and interests acquired by FWE under the Apache PSA), transportation agreements, agreements for the sale and purchase of Hydrocarbons, processing agreements, and service agreements, but in all cases (A) solely to the extent relating to the ownership or operation of any or all of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, except as to the contracts or leases listed on Exhibit I-F(ii) and services agreements all of which shall be allocated to FWE I in whole) and (B) excluding all derivative or hedge agreements (including any ISDAs) or rights thereunder (collectively, and together with the agreements referenced in clause (xx) below and including the contracts listed on <u>Exhibit I-F</u> attached hereto, the "<u>FWE I Contracts</u>");

---

[4] <u>**Note to Draft**</u>:  To be determined if there are Permits used for the FWE I Assets and also FWE III such that FWE III will need to obtain its own permits.

[5] <u>**Note to Draft**</u>:  To include licenses for GOM Shelf if not held by GOM Shelf directly.  FWE confirming there are only 5 licenses relating to all of the FWE I and GOM Shelf properties and in which entity licenses are held.

(xi)    originals of the Records that relate, in whole or in part, to any one or more of the FWE I Assets, the FWE I Obligations, or the GOM Shelf Oil and Gas Properties (whether or not such Records also relate to any one or more of the FWE III Obligations or the FWE III Assets);

(xii)    inventory, equipment, machinery, tools, and other personal property, to the extent located on the FWE I Facilities or, if located elsewhere, used or held for use, in whole or part, in connection with the FWE I Oil and Gas Properties, the FWE I Facilities, or the GOM Shelf Oil and Gas Properties, or charged to the joint account pursuant to the applicable FWE I Contracts, including those items listed on Exhibit I-G attached hereto;

(xiii)    FWE-owned SCADA equipment and all automation systems, including meters and related telemetry, licensed radio frequencies, and associated communications infrastructure including towers, antennas, data links, and network circuits used or held for use, in whole or in part, in connection with the FWE I Oil and Gas Properties, the FWE I Facilities, or the GOM Shelf Oil and Gas Properties, or for the production of Hydrocarbons therefrom;

(xiv)    all deposits with third parties, escrow accounts, guarantees, letters of credit, treasury securities, insurance policies relating, in whole or in part, to the FWE I Assets, surety bonds, all Oil Spill Financial Responsibility coverage (whether consisting of one or more insurance policies) and other forms of credit assurances or credit support provided by a third party for the benefit of FWE for financial assurance for the obligations and liabilities arising out of or related to the FWE I Assets, the GOM Shelf Oil and Gas Properties, or GOM Shelf, including the P&A Obligations arising out of or related to the FWE I Assets or the GOM Shelf Oil and Gas Properties, including those items listed on Exhibit I-H attached hereto;

(xv)    all agreements and memberships relating, in whole or in part, to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to Governmental Authorities with respect to or used in relation to any of the FWE I Assets or GOM Shelf Oil and Gas Properties, if any;[6]

(xvi)    all (i) accounts receivable as of the Effective Time associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties other than the Closing Accounts Receivable, (ii) instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the FWE I Oil and Gas Properties or GOM Shelf Oil and Gas Properties to which such assets relate are located) and other economic benefits in each case attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (excluding only the Closing Accounts Receivable); *provided*, that, for the avoidance of doubt, nothing in the preceding clauses (i) or (ii) shall be interpreted to limit the scope of "Closing Accounts Receivable" as that term is defined in the Credit Bid Purchase Agreement, (iii) claims of indemnity, contribution, or reimbursement of FWE or of GOM Shelf, in each case, relating to the FWE I Obligations or obligations of GOM Shelf, (iv) Imbalances receivables of FWE or of GOM Shelf, in each case, attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, (v) rights to insurance proceeds or other claims of recovery, indemnity, contribution, or reimbursement of FWE attributable to the FWE I Assets or the GOM Shelf Oil and Gas Properties due to casualty or other damage or destruction

---

[6] **Note to Draft**:  There are not any memberships that are specific to the FWE I Assets.

of or to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, (vi) cash in the amount of advance payments on account of third party working interest owners in the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties ("Prepaid JIB Cash Amount"), to the extent such Prepaid JIB Cash Amount is associated with FWE I Obligations, and (vii) rights to receive and collect cash and advance payments pursuant to cash calls associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties ("JIB Advance AR"), to the extent such JIB Advance AR is associated with FWE I Obligations;

(xvii)  all Suspense Funds (i) of FWE to the extent attributable to any of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, and (ii) of GOM Shelf (collectively, "FWE I Suspense Funds");

(xviii)  all equity interests set forth on Exhibit I-I ("FWE I Subsidiaries");

(xix)   the Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, FWE and GOM Shelf LLC, as amended by (i) the First Amendment thereto, dated as of September 30, 2013, (ii) the Second Amendment thereto, dated as of September 30, 2013, (iii) the Third Amendment thereto, dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement, dated January 3, 2018, and (v) the Fifth Amendment thereto, dated effective as of April 11, 2018 (the "Decommissioning Agreement");

(xx)   the Apache PSA and the transaction documents entered into in connection with the consummation of the transactions contemplated thereby, including the Joint Exploration Agreement (as defined in the Apache PSA), the Master Facilities Use, Access, Production Handling and Transportation Agreement (as defined in the Apache PSA), and the Fully Paid Up Turnkey Removal Contract (as defined in the Apache PSA);

(xxi)  to the extent permitted by applicable law, all rights to any authorization or permission from the BOEM, BSEE, or any other Governmental Authority held by FWE (a) in whole or in part for any FWE I Assets or (b) with respect to GOM Shelf, in whole or in part for any of the GOM Shelf Oil and Gas Properties;[7]

(xxii)  beneficial ownership of The Trust established by that certain Fieldwood Decommissioning Trust A Trust Agreement dated September 30, 2013;

(xxiii) cash in an amount (the "FWE I Cash Amount") equal to (1) the positive amount remaining, if any, obtained by subtracting from (x) $50.0 million (y) the sum of (a) the actual cash expenditures paid by FWE for Plugging and Abandonment costs and expenses on the FWE I Assets between the filing on August 3, 2020 of the Chapter 11 Cases and the Effective Time and (b) the actual cash payments made by FWE between January 4, 2021 and the Effective Time to the individual engaged as the sole manager of FWE I; plus (2) all amounts paid to the Debtors

---

[7] **Note to Draft**:  FWE to confirm if area-wide bonds will be permitted to be allocated and applied to FWE I and FWE III.  If allocation is not permitted, then TBD what happens to existing bonds/bonds to be acquired by FWE I and FWE III.  Note to Apache: FWE has confirmed that we are not able to allocate the operator number or area wide bonds to FW I…TBD if any other items picked up by clause (xxi) or whether clause (xxi) can be removed.

under or pursuant to the Credit Bid Purchase Agreement for (a) deductibles or retention amounts under applicable insurance policies associated with claims for personal injury or damage to third party property arising from the ownership or operation of the FWE I Assets or the GOM Shelf Oil and Gas Properties and (b) fines and penalties levied or imposed by governmental authorities in respect of the FWE I Assets or the GOM Shelf Oil and Gas Properties;

(xxiv) the Fieldwood Joint Use Properties as specified in <u>Section 6</u> of the Plan of Merger; and

(xxv)  the specific interests in and to the wells, pipelines, platforms, and facilities set forth on <u>Exhibit I-K</u> which were acquired or assumed by FWE as a result of co-owner actions under applicable joint or unit operating agreements or as a result of a recalculation determined in accordance with the terms of a FWE I Contract, and such interests will be deemed to be included in the FWE I Leases, FWE I Units, FWE I Lands, FWE I Wells, FWE I Facilities, and FWE I Rights of Way, as applicable.[8]

For the avoidance of doubt, the FWE I Assets do not include any of the leases, rights of way, or other assets specified in <u>Exhibit I-J</u>[9] attached hereto (such assets, collectively, the "<u>FWE II Retained Properties</u>"), which FWE II Retained Properties were conveyed to FWE II pursuant to the Credit Bid Purchase Agreement, and the FWE I Obligations shall not include any obligations attributable to such FWE II Retained Properties.

Part B:

"<u>FWE I Obligations</u>" means (A) all of the obligations and liabilities (contractual or otherwise) of FWE, without duplication, of any kind, character, or description (whether known or unknown, accrued, absolute, contingent, or otherwise) relating to, arising out of, or with respect to any of the FWE I Assets, the GOM Shelf Oil and Gas Properties, or FWE I's ownership interest in GOM Shelf, including obligations and liabilities of FWE:  (i) relating to the furnishing of makeup gas according to the terms of applicable gas sales, gathering, or transportation FWE I Contracts and all obligations with respect to Imbalances arising out of, related to, or attributable to FWE I's ownership interests in any of the FWE I Oil and Gas Properties or in GOM Shelf; (ii) with respect to Royalties arising out of, related to, or attributable to any of the FWE I Oil and Gas Properties, FWE I Suspense Funds, and Prepaid JIB Cash Amounts, including any reporting and/or mis-reporting, and payment and/or mis-payment of such Royalties, FWE I Suspense Funds, or Prepaid JIB Cash Amounts; (iii) constituting or related to Environmental Liabilities arising out of, related

---

[8] **Note to Draft**:  If the parties agree to include Add-On Interests in the FWE I Assets, <u>Exhibit I-K</u> will be added to specifically identify the interests agreed upon to be included.  If the parties do not agree to include Add-On Interests in the FWE I Assets, item (xxv) will be deleted.

[9]  **Note to Draft**:  <u>Exhibit I-J</u> should list as FWE II Retained Properties the properties included in the fields which are identified to be owned and operated by FWE II on Schedule A to the Term Sheet dated July 31, 2020.  FWE confirmed these properties consist of only the following properties: Oil and Gas Lease bearing Serial No. OCS-G 21685 covering South Timbalier 308, Oil and Gas Lease bearing Serial No. OCS-G24987 covering South Timbalier 287, Oil and Gas Lease bearing Serial No. OCS-G10687 covering Vermilion 362, Oil and Gas Lease bearing Serial No. OCS-G09522 covering Vermilion 363, Oil and Gas Lease bearing Serial No. OCS-G09524 covering Vermilion 371, Oil and Gas Lease bearing Serial No. OCS-G04421 covering Vermilion 78, Right of Way bearing Serial No. OCS-G29427 for Pipeline Segment No. 20278 pertaining to South Timbalier 308, and Right of Way bearing Serial No. OCS-G15047 for Pipeline Segment No. 10675 pertaining to Vermilion 371.

to, or attributable to any of the FWE I Assets; (iv) applicable to or imposed on the lessee, owner, operator, holder, responsible party, payor or designated applicant under or with respect to any of the FWE I Assets or GOM Shelf Oil and Gas Properties; (v) constituting or relating to any and all P&A Obligations related to FWE I's or GOM Shelf's, as the case may be, ownership interests in, or operation of, any of the FWE I Assets or GOM Shelf Oil and Gas Properties; (vi) relating to the FWE I Suspense Funds; (vii) relating to the Decommissioning Agreement and the Decommissioning obligations thereunder; (viii) relating to the Apache PSA or any of the agreements entered into in connection with the consummation of the transactions contemplated thereby, including the Joint Exploration Agreement (as defined in the Apache PSA), the Master Facilities Use, Access, Production Handling and Transportation Agreement (as defined in the Apache PSA), and the Fully Paid Up Turnkey Removal Contract (as defined in the Apache PSA); and (ix) expenses incurred by FWE for Plugging and Abandonment costs and expenses on the FWE I Assets between the filing on August 3, 2020, of the Chapter 11 Cases and the Effective Time to the extent not paid as of the Effective Time (such incurred but unpaid expenses, the "Interim Unpaid P&A Expenses"); and (B) the obligations of FWE I under Section 3(b)(i) of the Plan of Merger; provided, however, that, subject to the foregoing clause (B), the FWE I Obligations do not include (1) any of the FWE III Obligations, (2) any of the Credit Bid Assumed Liabilities, (3) obligations for personal injury or damage to property arising from the ownership or operation of any property that is not included in the FWE I Assets or GOM Shelf Oil and Gas Properties, and (4) any claims, liabilities, or obligations satisfied, compromised, settled, released, or discharged pursuant to the Plan of Reorganization and Confirmation Order.

**Schedule of Exhibits**[10]

| | |
|---|---|
| Exhibit A: | Certificate of Merger |
| Exhibit B: | Certificate of Formation – FWE I |
| Exhibit I-A(i): | FWE I Leases |
| Exhibit I-A(ii): | FWE I Deep Rights |
| Exhibit I-B: | FWE I Wells |
| Exhibit I-C(i) | FWE I Platforms |
| Exhibit I-C(ii) | FWE I Facilities |
| Exhibit I-D(i) | FWE I Rights of Way Acquired Pursuant to Apache PSA |
| Exhibit I-D(ii) | FWE I RUEs |
| Exhibit I-E | FWE I FCC Licenses |
| Exhibit I-F | FWE I Contracts |
| Exhibit I-G | FWE I Inventory |
| Exhibit I-H | FWE I Deposits/Escrows/Credit Support |
| Exhibit I-I | Subsidiaries and Equity Interests |
| Exhibit I-J | FWE II Retained Properties |
| Exhibit I-K(i) | Incremental Interests – Leases |
| Exhibit I-K(ii) | Incremental Interests – Wells |
| Exhibit I-K(iii) | Incremental Interests – Platforms and Facilities |

[End of Schedule of Exhibits]

---

[10] **Note to Draft**: **FWE I Exhibits to the Plan of Merger**. Exhibits I-A(i) through I-K(iii) to Schedule I to the Plan of Merger (collectively, the "FWE I Exhibits") set forth a list of Legacy Apache Properties, which FWE I Exhibits the Apache PSA Parties and the Fieldwood PSA Parties hereto respectively acknowledge are subject to the ongoing review and consent rights of the Consenting Creditors under the RSA (which consent has not yet been provided), and the Apache PSA Parties and Fieldwood PSA Parties agree that the FWE I Exhibits are subject to modification based on such review to be consistent with the Apache Term Sheet.

Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| LOUISIANA NON-OPERATED | -- | 12503 | SL-LA | ORRI | -- | -- | -- | | 0.6% | TERMIN |
| LOUISIANA NON-OPERATED | -- | 06618 | SL-LA | ORRI | -- | -- | -- | | 5.2% | TERMIN |
| BRAZOS 491 | BA 491 | G06069 | Federal | RT | 10/1/1983 | | 5,760 | Fieldwood En | 100.0% | TERMIN |
| BRAZOS A-102/A-105 | BA 105 | G01757 | Federal | RT | 7/1/1968 | | 5,760 | Fieldwood En | 12.5% | PROD |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT A | 7/1/1968 | | 5,760 | Fieldwood En | 12.5% | PROD |
| BRAZOS A-133 | BA A133 | G02665 | Federal | OP | 7/1/1974 | | 5,760 | GOM Shelf | 12.5% | PROD |
| BRAZOS A-133 | BA A-133 | G02665 | Federal | RT | 7/1/1974 | | 5,760 | GOM Shelf | 25.0% | PROD |
| $0 Liability | BA A19 | G33399 | Federal | RT | 1/1/2010 | 12/31/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | BA A47 | G03840 | Federal | RT | 3/1/1979 | 9/21/2014 | 5,760 | Fieldwood En | 33.3% | TERMIN |
| $0 Liability | BA A47 | G03940 | Federal | OP | 3/1/1979 | 9/21/2014 | 5,760 | Fieldwood En | 33.3% | TERMIN |
| $0 Liability | BA A69 | G32733 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| BRETON SOUND 41 | BS 39 | G33683 | Federal | RT | 7/1/2010 | 5/20/2015 | 1,237 | Petsec En | 18.8% | REUNQ |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 13.1% | TERMIN |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | TBD | TERMIN |
| $0 Liability | BS 42 | G33684 | Federal | RT | 7/1/2010 | 5/13/2015 | 4,552 | Apache Shelf Exp | 37.5% | REUNQ |
| CHANDELEUR 42/43 | CA 42 | G32267 | Federal | OP 1 | 7/1/2008 | 6/21/2019 | 5,000 | Fieldwood En | 50.0% | REUNQ |
| CHANDELEUR 42/43 | CA 43 | G32268 | Federal | OP 1 | 7/1/2008 | | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | DD 253 | G10426 | Federal | RT | 6/1/1990 | 9/8/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | DD 297 | G10427 | Federal | RT | 6/1/1990 | 9/8/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EB 128 | G34034 | Federal | RT | 4/1/2012 | 3/15/2016 | 165 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EB 172 | G34035 | Federal | RT | 4/1/2012 | 3/15/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 12 | G34220 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Fieldwood En | 100.0% | REUNQ |
| EAST CAMERON 9/14 | EC 14 | G13572 | Federal | RT | 7/1/1992 | 5/16/2005 | 2,544 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 171 | G34228 | Federal | RT | 9/1/2012 | 4/17/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 172 | G17858 | Federal | RT | 7/1/1997 | 1/22/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 178 | G34229 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 179 | G34230 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 185 | G34796 | Federal | RT | 6/1/2013 | 5/25/2017 | 5,000 | Fieldwood En | 100.0% | REUNQ |
| EAST CAMERON 2 - (SL LA) | EC 2 | 18121 | SL-LA | WI | 5/12/2004 | 1/0/1900 | 220 | Fieldwood | 50.0% | ACTIVE |
| EAST CAMERON 2 - (SL LA) | EC 2 | 16473 | SL-LA | WI | 7/13/1999 | 7/15/2015 | 148 | Apache | 89.1% | ACTIVE |
| EAST CAMERON 2 - (SL LA) | EC 2 | 16475 | SL-LA | WI | 7/19/1999 | | 134.75 | Apache | 89.1% | ACTIVE |
| $0 Liability | EC 222 | G02037 | Federal | OP 1 | 2/1/1971 | 11/24/2015 | 5,000 | Talos | 17.9% | TERMIN |
| $0 Liability | EC 222 | G02037 | Federal | OP 2 | 2/1/1971 | 11/24/2015 | 5,000 | Talos | 17.9% | TERMIN |
| $0 Liability | EC 229 | G34232 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 230 | G34233 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 24 | G04098 | Federal | RT | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 18.0% | TERMIN |
| $0 Liability | EC 24 | G04098 | Federal | OP 2 | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 31.3% | TERMIN |
| $0 Liability | EC 24 | G04098 | Federal | OP 3 | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 30.3% | TERMIN |
| $0 Liability | EC 242 | G34234 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 243 | G34235 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 261 | G00971 | Federal | RT | 6/1/1962 | 1/14/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 263 | G33037 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EC 264 | G01880 | Federal | RT | 3/1/1969 | 7/11/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EAST CAMERON 265 / 278 | EC 265 | G00972 | Federal | RT | 6/1/1962 | 10/3/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | EC 270 | G02045 | Federal | RT | 1/1/1971 | 6/7/2013 | 2,500 | Apache | 70.0% | TERMIN |
| EAST CAMERON 265 / 278 | EC 278 | G00974 | Federal | RT | 6/1/1962 | 10/3/2016 | 5,000 | Apache | 50.0% | TERMIN |
| $0 Liability | EC 292 | G34237 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 293 | G34238 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 294 | G34239 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 310 | G34240 | Federal | RT | 11/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| *No FW lease ownership | EC 328 | G10638 | Federal | RT | 5/1/1989 | | 5,000 | Arena Off | 100.0% | PROD |
| $0 Liability | EC 33 | G00972 | Federal | OP | 9/1/1970 | 2/15/2016 | 1,250 | Merit En | 15.6% | TERMIN |
| *No FW asset ownership | EC 335 | G02439 | Federal | OP | 8/1/1973 | 6/6/2015 | 5,000 | Energy XXI GOM | 14.0% | TERMIN |
| EAST CAMERON 338 | EC 338 | G02063 | Federal | RT | 2/1/1971 | | 5,000 | Anadarko US Off | 15.7% | PROD |
| EAST CAMERON 37 | EC 37 | G25933 | Federal | RT | 5/1/2004 | 9/27/2014 | 2,608 | Probe Res US | 100.0% | TERMIN |
| $0 Liability | EC 370 | G33073 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| *No FW asset ownership | EC 71 | G15376 | Federal | RT | 9/1/1992 | | 5,000 | EC Off Prop | 100.0% | SOP |
| EAST CAMERON 14 | EC 9/14 | G01440 | Federal | RT | 4/1/1966 | | 3,152 | Fieldwood En | 100.0% | PROD |
| EAST CAMERON 9/14 | EC 9/14 | G01440 | Federal | OP 1 | 4/1/1966 | | 3,152 | Fieldwood En | 100.0% | PROD |
| EUGENE ISLAND 010 | EI 10 | G23851 | Federal | RT | 7/1/2002 | | 2,303 | Contango Op | 50.0% | PROD |
| EUGENE ISLAND 010 | EI 10 | G23851 | Federal | OP 2 | 7/1/2002 | | 2,303 | Contango Op | 50.0% | PROD |
| $0 Liability | EI 105 | 00797 | Federal | RT | 5/1/1960 | 12/9/2013 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE ISLAND 105/106 | EI 106 | G17966 | Federal | RT A | 7/1/1997 | 8/4/2013 | 5,000 | Apache | 50.0% | TERMIN |
| EUGENE ISLAND 105/106 | EI 106 | G17966 | Federal | RT B | 7/1/1997 | 8/4/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | EI 107 | G15241 | Federal | RT | 9/1/1995 | 9/1/2013 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | OP 1 | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | RT A | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | RT B | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 71.3% | TERMIN |
| $0 Liability | EI 116 | G34292 | Federal | RT | 9/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 117 | G34293 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 118 | G15242 | Federal | RT A | 7/1/1995 | 12/17/2015 | 5,000 | Black Elk En Off Op | 25.0% | TERMIN |
| $0 Liability | EI 118 | G15242 | Federal | RT B | 7/1/1995 | 12/17/2015 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 119/120/125/126 | EI 119 | 00049 | Federal | RT A | 8/28/1945 | | 5,000 | Fieldwood En | 50.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 119 | 00049 | Federal | RT B | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 120 | 00050 | Federal | RT | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 125 | 00051 | Federal | RT | 8/28/1945 | -- | 5,000 | Fieldwood En | 100.0% | OPERNS |
| EUGENE IS. 119/120/125/126 | EI 126 | 00052 | Federal | RT | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 126 | 00052 | Federal | OP | 8/28/1945 | | 5,000 | Fieldwood En | 75.0% | PROD |
| $0 Liability | EI 128 | G34294 | Federal | RT | 10/1/2012 | 9/16/2016 | 3,427 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 131 | G33625 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 132 | G33626 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 135 | G34296 | Federal | RT | 10/1/2012 | 8/26/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| EUGENE IS. 136/158 | EI 136 | G03152 | Federal | RT | 7/1/1975 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EI 156 | G16353 | Federal | OP | 6/1/1996 | 8/24/2014 | 5,000 | Black Elk En Off Op | 50.0% | TERMIN |
| EUGENE IS. 136/158 | EI 158 | G01220 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 173 | G13622 | Federal | RT | 7/1/1992 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 174 | G03782 | Federal | RT | 6/1/1978 | | 5,000 | Arena Off | 30.0% | PROD |
| EUGENE IS. 173/174/175 | EI 174 | G03782 | Federal | OP | 6/1/1978 | | 5,000 | Arena Off | 30.0% | PROD |
| EUGENE IS. 173/174/175 | EI 175 | 00438 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 75.0% | PROD |
| EUGENE IS. 187/189 | EI 187 | G10736 | Federal | RT | 7/1/1989 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE ISLAND 188 | EI 188 | 00443 | Federal | RT | 1/1/1955 | 4/30/2010 | 5,000 | Apache | 100.0% | TERMIN |
| EUGENE ISLAND 188 | EI 189 | 00423 | Federal | RT | 12/1/1954 | | 3,750 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EI 196 | 00802 | Federal | RT | 5/1/1960 | 3/25/2019 | 3,516 | Fieldwood En | 50.0% | REUNQ |
| $0 Liability | EI 196 | 00802 | Federal | OP | 5/1/1960 | 3/25/2019 | 3,516 | Fieldwood En | 100.0% | REUNQ |
| $0 Liability | EI 196 | G13821 | Federal | OP 2 | 5/1/1960 | 3/22/2019 | 1,484 | Arena Off | 100.0% | REUNQ |
| $0 Liability | EI 196 | G13821 | Federal | OP 4 | 5/1/1960 | 3/22/2019 | 1,484 | Arena Off | 50.0% | REUNQ |
| $0 Liability | EI 20 | G34286 | Federal | RT | 10/1/2012 | 8/19/2016 | 3,582 | Castex Off | 50.0% | REUNQ |
| $0 Liability | EI 207 | G34301 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| *No FW asset ownership | EI 208 | 00577 | Federal | OP | 9/1/1955 | | 2,500 | ANKOR En | 100.0% | PROD |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 211 | G05502 | Federal | RT B | 7/1/1983 | | 5,000 | Fieldwood En | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 211 | G05502 | Federal | OP | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 212 | G05503 | Federal | RT B | 7/1/1983 | | 5,000 | Fieldwood En | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 212 | G05503 | Federal | OP | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| EUGENE ISLAND 196/217/227 | EI 216 | G34303 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| EUGENE ISLAND 196/217/227 | EI 217 | G00978 | Federal | RT | 5/1/1962 | 3/22/2019 | 5,000 | Arena Off | 25.0% | REUNQ |
| EUGENE IS. 266 | EI 224 | G05504 | Federal | ORRI | 5/1/1960 | | 5,000 | Castex Off | 100.0% | PROD |
| EUGENE IS. 266 | EI 224 | G05504 | Federal | RT | 5/1/1960 | | 5,000 | Castex Off | 100.0% | PROD |
| EUGENE ISLAND 196/217/227 | EI 227 | 00809 | Federal | RT | 5/1/1960 | 3/25/2019 | 5,000 | Arena Off | 50.0% | REUNQ |
| EUGENE ISLAND 196/217/227 | EI 227 | G3674S | Federal | ORRI | 11/1/2019 | | 5,000 | Arena Off | 6.25% | PRIMRY |
| EUGENE ISLAND 196/217/227 | EI 227 | G3674S | Federal | ORRI | 11/1/2019 | | 5,000 | Arena Off | 4.17% | PRIMRY |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | ORRI | 5/1/1960 | -- | 5,000 | Sanare En Part | 6.3% | UNIT |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | RT | 1/1/1970 | | 2,500 | Cox Op | 2.0% | PROD |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | OP 3 | 1/1/1970 | | 2,500 | Cox Op | 77.2% | PROD |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | OP 4 | 1/1/1970 | | 2,500 | Cox Op | 38.6% | PROD |
| $0 Liability | EI 266 | 00811 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 266 | 00811 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 266 | 00811 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | OP | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 280 | G23876 | Federal | RT | 5/1/2002 | 1/19/2014 | 5,000 | Energy XXI GOM | 18.8% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | RT | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 90.5% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 1 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 45.3% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 2 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 45.3% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 3 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 45.3% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | RT | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | OP 1 | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | OP 2 | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 307 | G02317 | Federal | RT | 12/1/2012 | 11/22/2016 | 5,000 | Apache Shelf Exp | 50.0% | REUNQ |
| EUGENE IS. 307 | EI 307 | G02110 | Federal | OP | 2/1/1971 | 11/4/2019 | 2,500 | Fieldwood En Off | 25.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | RT | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | ORRI | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 8.3% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | RT | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | OP 1 | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | OP 2 | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G02112 | Federal | RT | 8/1/1974 | | 2,500 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G02112 | Federal | OP | 8/1/1974 | | 2,500 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G24912 | Federal | RT | 5/1/2003 | | 2,500 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 315/316/329 | EI 316 | G05040 | Federal | RT | 4/1/1982 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 315/316/329 | EI 329 | G02912 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | Contractual | 1/1/1971 | | 5,000 | Fieldwood En | 63.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | RT | 1/1/1971 | | 5,000 | Fieldwood En | 42.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 333/334 | EI 333 | G02317 | Federal | RT | 2/1/1973 | 8/29/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 333/334 | EI 334 | G15263 | Federal | RT | 7/1/1995 | 8/29/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | RT | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G3332 | Federal | ORRI | 3/1/1976 | | | Fieldwood En | 0.1% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 4 | 3/1/1976 | | 5,000 | Fieldwood En | 98.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 1 | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 3 | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT A | 2/1/1973 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT B | 2/1/1973 | | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | OP 1 | 2/1/1973 | | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | OP 2 | 2/1/1973 | | 5,000 | Fieldwood En | 61.8% | TERMIN |
| EUGENE IS. 345/346 | EI 345 | G21647 | Federal | RT | 7/1/2000 | 8/21/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 345/346 | EI 346 | G14482 | Federal | RT | 6/1/1994 | | 5,000 | Arena Off | 100.0% | PROD |
| EUGENE IS. 353/354 | EI 353 | G03783 | Federal | OP | 6/1/1978 | 8/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 337 | EI 354 | G10752 | Federal | RT | 5/1/1989 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 337 | EI 354 | G10752 | Federal | OP | 5/1/1989 | | 5,000 | Fieldwood En | 67.0% | PROD |
| EUGENE IS. 353/354 | EI 361 | G02324 | Federal | RT | 2/1/1973 | | 5,000 | Cox Op | 12.4% | PROD |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | | 5,000 | EnVen En Vent | 66.7% | PROD |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP | 12/1/1954 | | 5,000 | EnVen En Vent | 100.0% | PROD |
| EUGENE ISLAND 57/58 | EI 57 | G02601 | Federal | OP 2 | 5/1/1974 | 3/27/2020 | 5,000 | Talos | 31.7% | TERMIN |
| EUGENE ISLAND 57/58 | EI 57 | G02601 | Federal | OP 4 | 5/1/1974 | 3/27/2020 | 5,000 | ANKOR En | 15.8% | TERMIN |
| $0 Liability | EI 88 | G10721 | Federal | OP | 7/1/1989 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE ISLAND 88/89/90/93/94/95 | EI 89 | 00044 | Federal | RT | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE ISLAND 88/89/90/93/94/95 | EI 89 | 00044 | Federal | OP 2 | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| *No FW asset ownership | EI 90 | 00229 | Federal | OP | 11/19/1948 | 2/22/2016 | 1,250 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 93 | 00228 | Federal | OP | 11/19/1948 | 2/22/2016 | 2,500 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 94 | G05488 | Federal | OP | 7/1/1983 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 95 | 00046 | Federal | OP | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EW 525 | G33704 | Federal | RT | 7/1/2010 | 6/19/2015 | 2,420 | Apache Shelf Exp | 46.9% | REUNQ |
| $0 Liability | EW 526 | G33134 | Federal | RT | 6/1/2009 | 5/31/2014 | 3,517 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EW 781 | G33137 | Federal | RT | 6/1/2009 | 5/31/2014 | 309 | Apache Shelf Exp | 100.0% | EXPIR |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | EW 782 | G31470 | Federal | RT | 12/1/2007 | | 1,093 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EW 789 | G33139 | Federal | RT | 7/1/2009 | 4/30/2015 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | EW 826 | G05800 | Federal | RT | 7/1/1983 | | 5,760 | BP E&P | 100.0% | PROD |
| $0 Liability | EW 906 | G34415 | Federal | RT | 8/1/2012 | 7/7/2016 | 1,007 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 906 | G33708 | Federal | RT | 8/1/2012 | 4/7/2016 | 1,084 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 949 | G34877 | Federal | RT | 8/1/2013 | 7/7/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 950 | G33709 | Federal | RT | 6/1/2010 | 4/7/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | FM 411 | G08361 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 412 | G08362 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 16.0% | EXPIR |
| $0 Liability | FM 455 | G08363 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 456 | G08364 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 499 | G08365 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 500 | G08366 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 16.0% | EXPIR |
| $0 Liability | FM 543 | G08367 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 587 | G08368 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| GALVESTON 151 | GA 151 | G15740 | Federal | RT | 11/1/1995 | 4/12/2016 | 4,804 | Fieldwood En | 33.3% | TERMIN |
| HIGH IS. 179 / GA 180 | GA 180 | G20228 | Federal | RT | 9/1/1975 | | 5,760 | Fieldwood En | 100.0% | UNIT |
| HIGH ISLAND 179 | GA 192 | G03229 | Federal | CONT | 9/1/1975 | | 5,760 | Arena Off | 90.0% | UNIT |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 1 | 12/1/2003 | | 5,760 | Fieldwood En | 83.3% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | | 5,760 | Fieldwood En | 66.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP | 12/1/2003 | | 5,760 | Fieldwood En | 66.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 2 | 12/1/2003 | | 5,760 | Fieldwood En | 83.3% | PROD |
| $0 Liability | GA 343 | G06105 | Federal | RT | 10/1/1983 | 1/19/2014 | 5,760 | Black Elk En Off Op | 12.5% | TERMIN |
| $0 Liability | GA 343 | G06105 | Federal | OP | 10/1/1983 | 1/19/2014 | 5,760 | Black Elk En Off Op | 37.5% | TERMIN |
| $0 Liability | GB 85 | G34515 | Federal | RT | 8/1/2012 | 7/7/2016 | 4,450 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | GI 104 | G33671 | Federal | RT | 7/1/2010 | 6/19/2015 | 5,000 | Apache Shelf Exp | 46.9% | REUNQ |
| GRAND ISLE 110/116 | GI 110 | G13943 | Federal | RT | 8/1/1993 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| GRAND ISLE 110/116 | GI 110 | G13944 | Federal | RT | 8/1/1993 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| $0 Liability | GI 117 | G32232 | Federal | RT | 8/1/2008 | 7/31/2013 | 4,540 | Apache | 100.0% | EXPIR |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 32 | 00174 | Federal | RT | 7/17/1948 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 32 | 00174 | Federal | OP 2 | 7/17/1948 | | 2,500 | GOM Shelf | 37.5% | UNIT |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| $0 Liability | GI 32 | G01580 | Federal | RT | 7/1/1967 | 3/15/2016 | 2,500 | BP Am Prod | 75.0% | TERMIN |
| $0 Liability | GI 32 | G01580 | Federal | OP | 7/1/1967 | 3/15/2016 | 2,500 | BP Am Prod | 37.5% | TERMIN |
| $0 Liability | GI 33 | G04002 | Federal | RT | 3/1/1979 | 2/24/2017 | 5,000 | Fieldwood En | 100.0% | RELINQ |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00127 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00127 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00126 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00126 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 40 | 00128 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 40 | 00128 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00129 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00129 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00130 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00130 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 42 | 00131 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 42 | 00131 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 43 | 00175 | Federal | RT | 7/17/1948 | -- | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 43 | 00175 | Federal | OP 2 | 7/17/1948 | -- | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 44 | 00176 | Federal | RT | 7/17/1948 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 44 | 00176 | Federal | OP 2 | 7/17/1948 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 46 | 00132 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 46 | 00132 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 47 | 00133 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 47 | 00133 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 48 | 00134 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 48 | 00134 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 52 | 00177 | Federal | RT | 7/17/1948 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 52 | 00177 | Federal | OP 1 | 7/17/1948 |  | 5,000 | GOM Shelf | 50.0% | UNIT |
| $0 Liability | GI 94 | G27173 | Federal | RT | 7/1/2005 | 2/12/2017 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| GRAND ISLE 76 | GI 94 | G02161 | Federal | RT | 10/1/1972 | 9/18/2019 | 5,000 | Fieldwood En | 95.8% | RELINQ |
| $0 Liability | GI 90 | G04003 | Federal | RT | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 1 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 2 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 4 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 5 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 6 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 93 | G02628 | Federal | RT | 5/1/1974 | 12/4/2014 | 5,000 | BP E&P | 100.0% | TERMIN |
| $0 Liability | GI 93 | G02628 | Federal | OP | 5/1/1974 | 12/4/2014 | 5,000 | BP E&P | 100.0% | TERMIN |
| GRAND ISLE 90/94 | GI 94 | G02163 | Federal | RT | 11/1/1972 | 7/27/2017 | 4,540 | Fieldwood En | 100.0% | RELINQ |
| GRAND ISLE 90/94 | GI 94 | G02163 | Federal | OP | 11/1/1972 | 7/27/2017 | 4,540 | Fieldwood En | 100.0% | RELINQ |
| $0 Liability | GI 98 | G34354 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| HIGH IS. 110/111 | HI 110 | G02353 | Federal | RT | 8/1/1973 | 5/31/2019 | 5,760 | W & T Off | 20.0% | TERMIN |
| HIGH IS. 110/111 | HI 111 | G02354 | Federal | RT | 8/1/1973 | 4/30/2019 | 5,760 | W & T Off | 20.0% | TERMIN |
| $0 Liability | HI 114 | G32747 | Federal | RT | 12/1/2008 | 11/30/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| HIGH IS. 116 | HI 116 | G06156 | Federal | RT | 10/1/1983 | 2/25/2015 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| HIGH IS. 129 | HI 129 | G01848 | Federal | RT | 6/1/1968 |  | 5,760 | Fieldwood En | 90.0% | PROD |
| HIGH IS. 129 | HI 129 | G01848 | Federal | ORRI | 6/1/1968 |  | 5,760 | Fieldwood En | 10.4% | PROD |
| $0 Liability | HI 132 | G32748 | Federal | RT | 12/1/2008 | 11/30/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | HI 140 | 00518 | Federal | OP | 1/1/1955 | 2/10/2015 | 5,760 | Black Elk En Off Op | 50.0% | TERMIN |
| $0 Liability | HI 163 | G22236 | Federal | RT | 12/1/2000 | 5/31/2015 | 5,760 | Fieldwood En | 70.0% | TERMIN |
| HIGH ISLAND 176 | HI 176 | G06164 | Federal | OPRTS Cont | 10/1/1983 | 12/1/2002 | 5,760 | Apache | 49.5% | TERMIN |
| HIGH IS. 179 / GA 180 | HI 179 | G03236 | Federal | RT | 9/1/1975 |  | 5,760 | Cox Op | 100.0% | UNIT |
| HIGH ISLAND 179 | HI 193 | G20337 | Federal | CONT | 9/1/1975 |  | 5,760 | Arena Off | 90.0% | UNIT |
| $0 Liability | HI 194 | G06166 | Federal | RT | 10/1/1983 | 7/21/2013 | 5,760 | Apache | 100.0% | TERMIN |
| $0 Liability | HI 194 | G06166 | Federal | OP | 10/1/1983 | 7/21/2013 | 5,760 | Apache | 45.0% | TERMIN |
| $0 Liability | HI 201 | G23199 | Federal | OP | 12/1/2001 | 10/5/2014 | 5,760 | Apache Shelf | 37.6% | TERMIN |
| HIGH IS. 206 | HI 206 | G20660 | Federal | RT | 1/1/1999 |  | 5,760 | Fieldwood En | 100.0% | PROD |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | RT | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 16.7% | TERMIN |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | OP 1 | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 15.0% | TERMIN |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | OP 2 | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 33.3% | TERMIN |
| $0 Liability | HI 52 | 00508 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Sandhrtige En Off | 75.0% | TERMIN |
| $0 Liability | HI 52 | 00509 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI 52 | 00511 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI 53 | 00740 | Federal | RT | 4/1/1960 | 9/24/2013 | 1,440 | Phoenix Exp | 75.0% | TERMIN |
| $0 Liability | HI 113 | G32760 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-145 | G32761 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-146 | G32762 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | HI A-148 | G32763 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-171 | G30679 | Federal | RT | 12/1/2006 | 8/9/2014 | 5,760 | Walter O&G | 33.3% | TERMIN |
| $0 Liability | HI 326 | G32777 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| HIGH IS. A-334 | HI A-334 | G02423 | Federal | RT | 8/1/1973 | 2/27/2014 | 5,760 | Fieldwood En | 38.9% | TERMIN |
| HIGH IS. A-341 | HI A-341 | G25605 | Federal | RT | 12/1/2003 |  | 5,760 | Fieldwood En | 60.0% | PROD |
| $0 Liability | HI A-350 | G02428 | Federal | RT | 8/1/1973 | 7/24/2015 | 4,345 | Apache | 100.0% | RELINQ |
| $0 Liability | HI A360 | G34677 | Federal | RT | 3/1/2013 | 2/18/2016 | 5,760 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | HI A361 | G34678 | Federal | RT | 3/1/2013 | 2/24/2017 | 5,760 | Fieldwood En | 100.0% | RELINQ |
| $0 Liability | HI A363 | G33413 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| HIGH IS. A-365/A-376 | HI A-365 | G02750 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 53.1% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02754 | Federal | OP 1 | 7/1/1974 |  | 5,760 | Fieldwood En | 100.0% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02754 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 44.4% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G2754 | Federal | ORRI | 7/1/1974 |  |  | Fieldwood En | 1.2% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G2754 | Federal | RT | 7/1/1974 |  |  | Fieldwood En | 6.0% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A382 | G02757 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| $0 Liability | HI A406 | G32767 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A442 | G33412 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| HIGH ISLAND A-442 | HI A442 | G11383 | Federal | OP | 11/1/1989 | 3/27/2017 | 5,760 | Northstar Off Grp | 22.7% | TERMIN |
| $0 Liability | HI A454 | G32769 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A457 | G32770 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| HIGH IS. A-474 | HI A-474 | G02366 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 10.0% | TERMIN |
| HIGH ISLAND A-474/489 | HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 12/25/1999 | 5,760 | McMoRan O&G | 10.0% | TERMIN |
| HIGH IS. A-474 | HI A-489 | G02372 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 8.5% | TERMIN |
| Ex N | HI A537 | G02698 | Federal | CONT | 5/29/1974 | 11/2/2016 | | McMoRan O&G | | TERMIN |
| HIGH IS. A-545 | HI A545 | G17199 | Federal | OP | 1/1/1997 | 4/30/2019 | 5,760 | Fieldwood En | 60.0% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-572 | G02302 | Federal | RT | 8/1/1973 | 5/18/2006 | 5,760 | Apache | 72.4% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-573 | G02393 | Federal | RT | 8/1/1973 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-581 | G18959 | Federal | CONT | 8/27/1997 | 7/1/2005 | 5,760 | Cox Op | 24.7% | TERMIN |
| HIGH IS. A-563 (563/564/581/582) | HI A582 | G02719 | Federal | RT | 7/1/1974 |  | 5,760 | Cox Op | 24.7% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A582 | G02719 | Federal | OP 1 | 7/1/1974 |  | 5,760 | Cox Op | 15.5% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-595 | G02721 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-596 | G02722 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| MISSISSIPPI CANYON 109 | MC 108 | G09777 | Federal | RT | 7/1/1988 |  | 5,760 | BP E&P | 75.2% | PROD |
| MISSISSIPPI CANYON 109 | MC 108 | G09777 | Federal | OP | 7/1/1988 |  | 5,760 | BP E&P | 75.2% | PROD |
| MISSISSIPPI CANYON 109 | MC 110 | G18192 | Federal | RT | 8/1/1997 |  | 5,760 | Fieldwood En | 50.0% | PROD |
| MISSISSIPPI CANYON 109 | MC 110 | G18192 | Federal | ORRI | 8/1/1997 |  |  | Fieldwood En | 3.9% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 21 | G28351 | Federal | ORRI | 7/1/1995 |  | 4,445 | ANKOR En | 3.0% | PROD |
| MISSISSIPPI CANYON 311 | MC 311 | G02968 | Federal | RT | 12/1/1974 |  | 5,760 | ANKOR En | 100.0% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 65 | G21742 | Federal | RT | 6/1/2000 |  | 5,760 | ANKOR En | 100.0% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 65 | G21742 | Federal | ORRI | 6/1/2000 |  | 5,760 | ANKOR En | 13.0% | PROD |
| MATAGORDA ISLAND 519 FED / SL TX | MI 486 | MF88560 | SL - TX | WI | 10/5/1982 | 9/1/2019 | 1,440 | Fieldwood | 100.0% | EXPIRED |
| MATAGORDA ISLAND 519 FED / SL TX | MI 487 | MF-88562 | SL - TX | WI | 10/5/1982 | -- | 1,305 | Fieldwood | 100.0% | SI |
| MATAGORDA ISLAND 519 FED / SL TX | MI 518 | G05169 | Federal | RT | 1/1/1983 | 9/30/2019 | 5,675 | Fieldwood En | 100.0% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MATAGORDA ISLAND 519 FED / SL TX | MI 518 | MF80522 | SL - TX | WI | 10/2/1979 | 9/1/2019 | 85 | Fieldwood | 100.0% | EXPIRED |
| MATAGORDA ISLAND 519 FED / SL TX | MI 519 | MF-73413 | SL - TX | WI | 2/6/1979 |  | 739 | Fieldwood | 100.0% | SI |
| MATAGORDA IS. 622/623/635/636 | MI 622 | G05000 | Federal | RT | 4/1/1982 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 622 | G05000 | Federal | OP | 4/1/1982 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 623 | G03088 | Federal | RT | 4/1/1975 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 623 | G03088 | Federal | OP | 4/1/1975 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 635 | G06043 | Federal | RT | 10/1/1983 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 635 | G06043 | Federal | OP | 10/1/1983 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| $0 Liability | MI 636 | G34670 | Federal | RT | 4/1/2013 | 3/25/2016 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MI 652 | G34022 | Federal | RT | 2/1/2012 | 1/31/2017 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MI 681 | G04703 | Federal | RT | 9/1/1981 | 2/25/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 685 | G04548 | Federal | RT | 1/1/1981 | 12/22/2014 | 5,760 | EOG Res | 50.0% | TERMIN |
| $0 Liability | MI 685 | G04548 | Federal | OP | 1/1/1981 | 12/22/2014 | 5,760 | EOG Res | 2.5% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | RT | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | OP 1 | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | OP 2 | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| | MI 772 | MF93351 | SL - TX | WI | 2/7/1989 | 1/1/2017 | 704 | Fieldwood | 100.0% | TERMINATED |
| $0 Liability | MO 820 | G34403 | Federal | RT | 8/1/2012 | 7/7/2016 | 4,328 | Fieldwood En | 100.0% | RELINQ |
| $0 Liability | MO 821 | G05058 | Federal | RT | 4/1/1982 | 9/19/2014 | 4,028 | Fieldwood En | 100.0% | TERMIN |
| | MO 826 | STATE OF ALABAMA 627 | SL - AL | WI | 8/14/1984 | 1/1/2019 | 2,511 | Fieldwood | 100.0% | TERMINATED |
| MOBILE BAY 826 | MO 826 | G26176 | Federal | RT | 7/1/2004 |  | 1,430 | Fieldwood En | 75.0% | PROD |
| $0 Liability | MO 871 | G32272 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | MO 913 | G33131 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| $0 Liability | MO 914 | G33132 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| | MP 120 | G3197 | Federal | RT | 7/1/1975 |  |  | Arena Off | 2.0% | PROD |
| | MP 120 | G03197 | Federal | ORRI | 5/28/1975 |  |  | Arena Off | 2.0% | PROD |
| $0 Liability | MP 134 | G34375 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 135 | G34376 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 136 | G34377 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 137 | G34378 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 140 | MP 140 | G02193 | Federal | RT | 10/1/1972 |  | 4,995 | Fieldwood En | 65.0% | PROD |
| $0 Liability | MP 143 | G34380 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 146 | G34860 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Apache Shelf Exp | 75.0% | RELINQ |
| $0 Liability | MP 147 | G34861 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Apache Shelf Exp | 75.0% | RELINQ |
| $0 Liability | MP 148 | G34381 | Federal | RT | 11/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 149 | G34382 | Federal | RT | 11/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 150 | G34862 | Federal | RT | 7/1/2013 | 6/21/2017 | 5,000 | Apache Shelf Exp | 75.0% | RELINQ |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 152 | G01966 | Federal | RT | 1/1/1970 |  | 4,978 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 152 | G01966 | Federal | OP | 1/1/1970 |  | 4,978 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 153 | G01967 | Federal | RT | 1/1/1970 |  | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 153 | G01967 | Federal | OP | 1/1/1970 |  | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | MP 166 | G26152 | Federal | RT | 11/3/2014 | 4,995 |  | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MP 175 | G08753 | Federal | OP | 8/1/1987 | 9/1/2013 | 4,995 | Tana Exp | 21.2% | TERMIN |
| $0 Liability | MP 255 | G07825 | Federal | RT | 8/1/1985 | 3/9/2014 | 4,995 | Fieldwood En | 52.4% | TERMIN |
| MAIN PASS 259/260  / VIOSCA KNOLL 693/694 | MP 259 | G07827 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,995 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 259/260  / VIOSCA KNOLL 693/694 | MP 260 | G07828 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,995 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 270 | MP 270 | G22812 | Federal | ORRI | 7/1/2001 |  | 4,995 | Castex Off | 1.0% | UNIT |
| $0 Liability | MP 271 | G34388 | Federal | RT | 10/1/2012 | 9/30/2017 | 4,995 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 272 | G34865 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,995 | Apache Shelf Exp | 75.0% | RELINQ |
| *No FW lease ownership | MP 273 | G33690 | Federal | RT | 7/1/2010 |  | 4,995 | Castex Off | 37.5% | UNIT |
| $0 Liability | MP 274 | G33691 | Federal | RT | 7/1/2010 | 6/30/2015 | 4,995 | Castex Off | 37.5% | UNIT |
| MAIN PASS 270/275/289/290 | MP 275 | G15395 | Federal | RT | 9/1/1995 |  | 4,995 | Fieldwood En | 8.3% | PROD |
| MAIN PASS 270/275/289/290 | MP 275 | G15395 | Federal | ORRI | 9/1/1995 |  | 4,995 | Fieldwood En | 8.3% | PROD |
| *No FW asset ownership | MP 281 | G10910 | Federal | RT | 7/1/1989 |  | 4,995 | EnVen En Vent | 50.0% | PROD |
| *No FW asset ownership | MP 281 | G10910 | Federal | OP | 7/1/1989 |  | 4,995 | EnVen En Vent | 30.0% | PROD |
| $0 Liability | MP 281 | G10910 | Federal | ORRI | 7/1/1989 |  |  | EnVen En Vent | 3.1% | PROD |
| MAIN PASS 270/275/289/290 | MP 289 | G01666 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Fieldwood En | 100.0% | PROD |
| $0 Liability | MP 290 | G34866 | Federal | RT | 7/1/1967 |  | 4,561 | Apache Shelf Exp | 75.0% | RELINQ |
| MAIN PASS 275/289/290 | MP 290 | G01667 | Federal | RT | 7/1/1967 | 11/22/2012 | 4,561 | Apache | 100.0% | TERMIN |
| $0 Liability | MP 291 | G34391 | Federal | RT | 11/1/2012 | 10/31/2017 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 292 | G34392 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 293 | G34393 | Federal | RT | 11/1/2012 | 10/31/2017 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 294 | G34394 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 295 | MP 295 | G32263 | Federal | CONT | 8/1/2008 | 7/31/2015 | 4,561 | Fieldwood En | 37.5% | TERMIN |
| MAIN PASS 296/303/304 | MP 296 | G01673 | Federal | RT | 6/1/1967 |  | 4,561 | GOM Shelf | 50.0% | UNIT |
| MAIN PASS 296/303/304 | MP 296 | G01673 | Federal | OP | 6/1/1967 |  | 4,561 | GOM Shelf | 25.0% | UNIT |
| MAIN PASS 296/303/304 | MP 297 | G34395 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 300/301 | MP 300 | G01317 | Federal | OP | 6/1/1962 |  | 4,561 | Cantium | 10.4% | UNIT |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | RT | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 2 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 6.3% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 3 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | RT | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 311/312 | MP 302 | G32264 | Federal | RT | 7/1/2008 |  | 5,000 | GOM Shelf | 50.0% | PROD |
| MAIN PASS 296/303/304 | MP 303 | G04253 | Federal | OP 1 | 12/1/1979 |  | 5,000 | Fieldwood En | 25.0% | UNIT |
| MAIN PASS 296/303/304 | MP 303 | G04253 | Federal | RT | 12/1/1979 |  | 5,000 | Fieldwood En | 100.0% | UNIT |
| MAIN PASS 308/309/310 | MP 304 | G03339 | Federal | OP | 4/1/1976 |  | 5,000 | ConocoPhillips | 100.0% | UNIT |
| $0 Liability | MP 305 | G34396 | Federal | RT | 12/1/2012 | 11/22/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 308/309/310 | MP 308 | G32265 | Federal | RT | 8/1/2008 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 308/309/310 | MP 309 | G08760 | Federal | RT | 6/1/1987 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 308/309/310 | MP 310 | G04126 | Federal | RT | 10/1/1979 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 311/312 | MP 311 | G02213 | Federal | RT | 11/1/1972 |  | 5,000 | GOM Shelf | 50.0% | PROD |
| MAIN PASS 311/312 | MP 311 | G02213 | Federal | OP | 11/1/1972 |  | 5,000 | GOM Shelf | 25.0% | PROD |
| MAIN PASS 311/312 | MP 312 | G16520 | Federal | RT | 7/1/1996 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 311/312 | MP 314 | G33693 | Federal | OP | 7/1/2010 | 6/30/2015 | 5,000 | Apache Shelf Exp | 80.0% | EXPIR |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | RT | 7/1/1986 |  | 5,000 | Fieldwood En | 80.0% | PROD |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | OP 3 | 7/1/1986 |  | 5,000 | Fieldwood En | 80.0% | PROD |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | OP | 7/1/1986 |  | 5,000 | Fieldwood En | 80.0% | PROD |
| | MP 5 | SL13890 | SL - LA | WI | | | 26 | Apache | 50.0% | TERMIN |
| MAIN PASS 59 | MP 59 | G03194 | Federal | RT | 7/1/1975 |  | 1,406 | Cantium | 37.5% | UNIT |
| MAIN PASS 59 | MP 59 | G08461 | Federal | OP | 7/1/1986 |  | 2,340 | Cantium | 37.5% | UNIT |
| | MP 6 | SL03771 | SL - LA | WI | 4/26/1961 | 6/28/2012 | 1,067 | Apache | 50.0% | TERMIN |
| | MP 6 | SL13580 | SL - LA | WI | | | 287 | Apache | 50.0% | TERMIN |
| | MP 6 | SL13891 | SL - LA | WI | | | 270 | Apache | 50.0% | TERMIN |
| MAIN PASS 64 | MP 64 | G04909 | Federal | ORRI | 12/1/1981 |  | 4,988 | Sanare En Part | 4.2% | UNIT |
| | MP 7 | SL03773 | SL - LA | WI | 4/26/1961 | 6/28/2012 |  | Apache | 50.0% | TERMIN |
| | MP 7 | SL13892 | SL - LA | WI | | | 44 | Apache | 50.0% | TERMIN |
| $0 Liability | MP 74 | G34857 | Federal | RT | 8/1/2013 | 7/7/2016 | 1,733 | Apache Shelf Exp | 75.0% | RELINQ |
| MAIN PASS 77 | MP 77 | G04481 | Federal | RT | 11/1/1980 |  | 4,655 | Fieldwood En Off | 26.2% | RELINQ |
| MAIN PASS 77 | MP 77/78 | G04481 | Federal | OP | 11/1/1980 |  | 4,655 | Fieldwood En Off | 23.5% | RELINQ |
| MAIN PASS 6/7 FED / SL LA | MP 91 | G14576 | Federal | RT | 5/1/1994 | 3/18/2008 | 1,017 | Apache | 100.0% | TERMIN |
| | MU 883 | MF98761 | SL - TX | WI | | 10/1/2012 |  | Apache | 100.0% | TERMIN |
| MUSTANG ISLAND A-111 | MU A-111 | G03068 | Federal | RT | 4/1/1975 | 1/12/2013 | 5,760 | Apache | 100.0% | TERMIN |
| $0 Liability | MU A113 | G33392 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| MUSTANG ISLAND A-134 | MU A134 | G32724 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | TERMIN |
| MUSTANG ISLAND A-85 | MU A85 | G03061 | Federal | RT | 7/1/1975 |  | 5,760 | EnVen En Vent | 53.3% | PROD |
| $0 Liability | PE 881 | G06390 | Federal | OP | 2/8/1984 | 10/17/2013 | 5,760 | ConocoPhillips | 18.8% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 1 | G04234 | Federal | RT | 1/1/1980 | 7/10/2020 | 1,568 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 10 | G02925 | Federal | RT | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 11 | 00071 | Federal | RT | 9/12/1946 | 9/8/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | RT | 7/1/1975 | 5/23/2018 | 5,000 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 1 | 7/1/1975 | 5/23/2018 | 391 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 2 | 7/1/1975 | 5/23/2018 | 3,906 | ANKOR En | 12.5% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 5/23/2018 | 703 | ANKOR En | 4.4% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 5 | 7/1/1975 | 5/23/2018 | 391 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 25 | PL 25 | G14535 | Federal | RT | 7/1/1994 | 7/30/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| *No FW asset ownership | PL 5 | G12027 | Federal | RT | 6/1/1990 | 5/13/2019 | 5,000 | Talos En Off | 100.0% | TERMIN |
| $0 Liability | PL 6 | G09651 | Federal | RT | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 100.0% | REUNQ |
| $0 Liability | PL 6 | G09651 | Federal | OP 1 | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 35.0% | REUNQ |
| $0 Liability | PL 6 | G09651 | Federal | OP 2 | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 65.0% | REUNQ |
| $0 Liability | PL 8 | G03587 | Federal | RT | 8/1/1977 | 6/19/2018 | 5,000 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PN 9 | G02924 | Federal | RT | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 9 | G02924 | Federal | OP | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| | PN 883 | MF100410 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF100411 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF100412 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF101898 | SL - TX | WI | 10/6/1998 | | | Apache | 35.0% | ACTIVE |
| | PN 883 | MF96146 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF96147 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | SL96146 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 899L | MF100413 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 375 | Fieldwood | 35.0% | ACTIVE |
| | PN 899L | MF100414 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 360 | Fieldwood | 35.0% | ACTIVE |
| NORTH PADRE ISLAND 969 | PN 969 | G05953 | Federal | RT | 10/1/1983 | 6/30/2015 | 5,760 | Peregrine O&G II | 8.3% | TERMIN |
| NORTH PADRE ISLAND 969 | PN 976 | G05954 | Federal | RT | 10/1/1983 | 6/30/2015 | 5,760 | Peregrine O&G II | 8.3% | TERMIN |
| $0 Liability | SA 10 | G03958 | Federal | RT | 3/1/1979 | 12/29/2017 | 3,144 | Fieldwood En | 92.3% | TERMIN |
| $0 Liability | SA 10 | G03958 | Federal | OP | 3/1/1979 | 12/29/2017 | 3,144 | Fieldwood En | 20.0% | TERMIN |
| *No FW asset ownership | SA 13 | G03959 | Federal | OP | 3/1/1979 | 1/16/2020 | 5,000 | Renaissance Off | 50.0% | TERMIN |
| SOUTH MARSH IS. 10/18 | SM 10 | G01181 | Federal | RT | 4/1/1962 | 1/6/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 105/106 | SM 105 | G17938 | Federal | RT | 8/1/1997 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH IS. 105/106 | SM 106 | G03276 | Federal | RT | 2/1/1973 | 11/19/2015 | 2,500 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 105/106 | SM 106 | G03776 | Federal | RT | 6/1/1978 | | 2,500 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH ISLAND 107/108 | SM 108 | 00792 | Federal | RT | 5/1/1960 | – | 5,000 | Talos En Off | 25.0% | PROD |
| SOUTH MARSH ISLAND 107/108 | SM 108 | 00792 | Federal | OP | 5/1/1960 | – | 5,000 | Talos En Off | 12.5% | PROD |
| SOUTH MARSH IS. 10/18 | SM 11 | G01182 | Federal | RT | 3/1/1962 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | RT | 12/1/1974 | | 2,784 | Fieldwood En | 66.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | OP 2 | 12/1/1974 | | 2,784 | Fieldwood En | 33.3% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | RT | 12/1/1974 | | 2,784 | Fieldwood En | 17.3% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | OP 2 | 12/1/1974 | | 2,784 | Fieldwood En | 8.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 128 | G02587 | Federal | RT | 5/1/1974 | | 5,000 | Fieldwood En | 66.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 128 | G02587 | Federal | OP 2 | 5/1/1974 | | 5,000 | Fieldwood En | 17.3% | PROD |
| SOUTH MARSH IS. 132 | SM 132 | G02282 | Federal | RT | 2/1/1973 | 4/1/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G19776 | Federal | RT | 5/1/1998 | 2/18/2012 | 3,293 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G19776 | Federal | RT | 5/1/1994 | 8/4/2019 | 2,500 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 137 | G02589 | Federal | RT | 5/1/1974 | 6/30/2015 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 66.7% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | RT | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 77.6% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 17.3% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 149 | G02592 | Federal | RT | 5/1/1974 | | 2,500 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH ISLAND 161 | SM 150 | G16325 | Federal | RT | 6/1/1996 | 5/22/2018 | 3,329 | Fieldwood En | 50.0% | REUNQ |
| SOUTH MARSH ISLAND 161 | SM 161 | G04809 | Federal | RT | 9/1/1981 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | SM 171 | G34273 | Federal | RT | 9/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | SM 172 | G34274 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 177 | G34275 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 178 | G34276 | Federal | RT | 9/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH MARSH IS. 10/18 | SM 18 | G08680 | Federal | RT | 6/1/1987 | 11/3/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 10/18 | SM 18 | G08680 | Federal | OP | 6/1/1987 | 11/3/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | SM 188 | G34277 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 189 | G34278 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 193 | G34279 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 195 | G21108 | Federal | ORRI | 6/1/1999 | 12/27/2015 | | Tarpon O&D | 4.0% | TERMIN |
| | SM 236 | G4437 | Federal | ORRI | 11/1/1980 | | | Cox Op | 4.4% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | RT | 2/7/1936 | – | 114,601 | Cox Op | 60.0% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | OP | 2/7/1936 | – | 114,601 | Cox Op | 60.0% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | Unit | 2/7/1936 | – | 114,601 | Cox Op | 16.0% | UNIT |
| Ex N | SM 268 | G02310 | Federal | CONT | 12/19/1972 | 9/7/2009 | | Apache | 69.9% | TERMIN |
| SOUTH MARSH IS. 268/269/280/281 | SM 268 | G34284 | Federal | RT | 8/1/2012 | 7/31/2017 | 3,237 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 72.8% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 1 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 3 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | RT | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 281 | G02600 | Federal | RT | 4/1/1974 | | 3,214 | Fieldwood En | 68.1% | PROD |
| $0 Liability | SM 34 | G13897 | Federal | OP | 5/1/1993 | 8/24/2014 | 5,000 | Black Elk En Off Op | 50.0% | TERMIN |
| $0 Liability | SM 44 | G23840 | Federal | RT | 5/1/2002 | 3/25/2014 | 5,000 | SandRidge En Off | 50.0% | TERMIN |
| SOUTH MARSH IS. 39 | SM 48 | 00786 | Federal | RT | 5/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH ISLAND 58 | SM 58 | G01194 | Federal | RT | 5/1/1962 | | 5,000 | ANKOR En | 100.0% | PROD |
| SOUTH MARSH IS. 66 | SM 66 | G01198 | Federal | RT | 6/1/1962 | 9/25/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | SM 7 | G33610 | Federal | RT | 7/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| SOUTH MARSH IS. 76 | SM 76 | G01208 | Federal | RT | 6/1/1962 | 1/23/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 93 | SM 93 | G21618 | Federal | RT | 5/1/2000 | | 5,000 | Talos ERT | 12.5% | PROD |
| $0 Liability | SM 97 | G32159 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | OP | 7/1/1967 | | 5,000 | Cox Op | 100.0% | UNIT |
| SOUTH PASS 60 | SP 62 | G01294 | Federal | RT | 6/1/1962 | | 5,000 | Cox Op | 100.0% | UNIT |
| $0 Liability | SP 63 | G34365 | Federal | RT | 8/1/2012 | 7/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 64 | G01901 | Federal | RT | 1/1/1969 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 64 | G01901 | Federal | OP | 1/1/1969 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 65 | G01610 | Federal | RT | 1/1/1967 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 65 | G01610 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 66 | G1611 | Federal | ORRI | 8/1/1967 | | | Fieldwood En | 8.3% | UNIT |
| $0 Liability | SP 68 | G34366 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SP 69 | G34367 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| SOUTH PASS 61/70 | SP 70 | G01614 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 28.8% | TERMIN |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | RT | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 71.2% | TERMIN |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 71.2% | TERMIN |
| SOUTH PASS 83 | SP 83 | G05052 | Federal | ORRI | 4/1/1982 | 2/27/2020 | 5,000 | Arena Off | 0.7% | REUNQ |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 87 | G07799 | Federal | RT | 9/1/1985 | 8/2/2020 | 3,540 | Fieldwood En | 33.3% | TERMIN |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 87 | G07799 | Federal | RT | 9/1/1985 | 8/2/2020 | 3,540 | Fieldwood En | 33.3% | TERMIN |
| SOUTH PASS 87/89 / WD 128 | SP 88 | G10894 | Federal | RT | 6/1/1989 | 5/2/2012 | 3,540 | Apache | 100.0% | REUNQ |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 89 | G01618 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 50.0% | PROD |
| | SP 96 | G13131 | Federal | RT | 3/1/2008 | 2/21/2014 | 5,000 | Stone En | 50.0% | REUNQ |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | RT | 8/1/1988 | | 5,000 | Bennu O&G | 100.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | OP 2 | 8/1/1988 | | 5,000 | Bennu O&G | 100.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | OP 3 | 8/1/1988 | | 5,000 | Bennu O&G | 100.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 126 | G12940 | Federal | RT | 5/1/1991 | 2/16/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 126 | G12940 | Federal | OP | 5/1/1991 | 2/16/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 129 | G12941 | Federal | RT | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 129 | G12941 | Federal | ORRI | 5/1/1991 | | | Fieldwood En | 3.3% | PROD |
| SHIP SHOAL 130 | SS 130 | 00453 | Federal | ORRI | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 145 | SS 145 | G34831 | Federal | CONT | 9/1/2013 | 10/31/2019 | 5,000 | Hoactzin Part | 25.0% | TERMIN |
| SHIP SHOAL 150 | SS 150 | G0419 | Federal | ORRI | 11/1/1954 | – | 5,000 | Ridgelake En | 5.0% | PROD |
| SHIP SHOAL 151 | SS 151 | G15282 | Federal | RT | 7/1/1995 | | 5,000 | EnVen En Vent | 100.0% | PROD |
| $0 Liability | SS 153 | G18011 | Federal | RT | 7/1/1997 | 7/5/2016 | 5,000 | Fieldwood En | 33.3% | TERMIN |
| | SS 154 | 00420 | Federal | ORRI | 11/1/1954 | | 5,000 | Ridgelake En | 8.0% | PROD |
| SHIP SHOAL 159 | SS 159 | G11984 | Federal | OP | 7/1/1990 | 10/31/2019 | 5,000 | Hoactzin Part | 15.5% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 169 | 00820 | Federal | RT | 4/1/1960 | | 5,000 | Fieldwood En | 66.7% | PROD |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | SS 175 | G05550 | Federal | RT | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | SS 176 | G38646 | Federal | RT | 7/1/2010 | | 5,000 | Fieldwood En | 40.0% | PROD |
| SHIP SHOAL 178 | SS 178 | G05551 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 169/182/193/194 | SS 182 | G03998 | Federal | RT | 3/1/1979 | | 2,500 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 189 | SS 188 | G05203 | Federal | CONT | 1/1/1983 | 12/30/1991 | 5,027 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 189 | SS 189 | G04230 | Federal | OP 5 | 12/1/1979 | | 5,000 | Fieldwood En | 99.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | RT | 12/1/1979 | | 5,000 | Fieldwood En | 99.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G4232 | Federal | ORRI | 12/1/1979 | | | Fieldwood En | 8.0% | PROD |
| SHIP SHOAL 190/206/207/216 | SS 190 | G10775 | Federal | RT | 4/1/1989 | 8/10/2019 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| SHIP SHOAL 190/206/207/216 | SS 190 | G10775 | Federal | OP | 4/1/1989 | 8/10/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 193 | G13917 | Federal | RT | 5/1/1993 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 169/182/193/194 | SS 194 | G15288 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 198/199 | SS 198 | 00593 | Federal | RT | 9/1/1955 | | 2,969 | Renaissance Off | 50.0% | PROD |
| SHIP SHOAL 198/199 | SS 198 | G12355 | Federal | OP | 9/1/1955 | | 2,031 | Renaissance Off | 25.0% | PROD |
| $0 Liability | SS 199 | 00594 | Federal | RT | 9/1/1955 | | 3,516 | Talos En Off | 50.0% | PROD |
| SHIP SHOAL 198/199 | SS 199 | G12358 | Federal | OP | 9/1/1955 | | 1,484 | Renaissance Off | 50.0% | PROD |
| SHIP SHOAL 204 | SS 204 | G05120 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 55.2% | PROD |
| SHIP SHOAL 190/206/216 | SS 206 | G01522 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 60.0% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 72.2% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 47.6% | UNIT |
| SHIP SHOAL 189 | SS 210 | G05204 | Federal | CONT | 1/1/1983 | 12/26/1990 | 5,000 | Fieldwood En | 100.0% | RELINQ |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 80.0% | PROD |
| SHIP SHOAL 243 | SS 243 | G10780 | Federal | RT | 7/1/1989 | | 5,000 | Fieldwood En | 4.2% | PROD |
| SHIP SHOAL 243 | SS 243 | G10780 | Federal | ORRI | 7/1/1989 | | | Fieldwood En | 4.2% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 5.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G1030 | Federal | ORRI | 6/1/1962 | | | Fieldwood En Off | 0.2% | UNIT |
| $0 Liability | SS 258 | G05560 | Federal | RT | 7/1/1983 | 4/1/2016 | 5,000 | Castex Off | 100.0% | TERMIN |
| $0 Liability | SS 259 | G05560 | Federal | OP | 7/1/1983 | 4/1/2016 | 5,000 | Castex Off | 7.4% | TERMIN |
| SHIP SHOAL 258/259 | SS 259 | G05044 | Federal | RT | 4/1/1982 | 3/1/2018 | 5,141 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 258/259 | SS 259 | G05044 | Federal | OP | 4/1/1982 | 3/1/2018 | 5,141 | Fieldwood En | 7.4% | TERMIN |
| $0 Liability | SS 271 | G01038 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En Off | 20.0% | UNIT |
| SHIP SHOAL 274 | SS 274 | G10139 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 274 | SS 276 | G10785 | Federal | RT | 5/1/1989 | 10/31/2007 | 5,000 | Monforte | 66.7% | TERMIN |
| SHIP SHOAL 274 | SS 277 | G09627 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En | 1.0% | SOP |
| SHIP SHOAL 274 | SS 277 | G09627 | Federal | OP | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | SOP |
| $0 Liability | SS 278 | G32206 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| SHIP SHOAL 300/314/315 | SS 291 | G02923 | Federal | OP | 12/1/1974 | | 3,750 | Fieldwood En | 67.9% | OPENS |
| SHIP SHOAL 30/31/32/33 | SS 30 | 00333 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| | SS 301 | G10794 | Federal | ORRI | 5/1/1989 | | | Fieldwood En | 1.5% | SOP |
| SHIP SHOAL 30/31/32/33 | SS 31 | 00334 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | OP 4 | 5/1/2004 | | 5,000 | Fieldwood En | 37.5% | PROD |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | RT | 5/1/2004 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | ORRI | 5/1/2004 | | | Fieldwood En | 4.5% | PROD |
| SHIP SHOAL 30/31/32/33 | SS 32 | 00335 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| SHIP SHOAL 30/31/32/33 | SS 33 | 00336 | Federal | CONT | 9/12/1946 | – | 5,000 | W&T Off | 28.9% | UNIT |
| SHIP SHOAL 30/31/32/33 | SS 33 | 00336 | Federal | ORRI | 9/12/1946 | – | | W&T Off | 0.8% | UNIT |
| SHIP SHOAL 354 | SS 354 | G15312 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | SS 355 | G33650 | Federal | RT | 6/1/2010 | 4/7/2016 | 5,323 | Apache Shelf Exp | 100.0% | TERMIN |
| SHIP SHOAL 58 | SS 58 | G07746 | Federal | ORRI | 7/1/1985 | | 5,000 | Talos Third Cst | 10.5% | PROD |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | SS 68 | G02917 | Federal | RT | 12/1/1974 | 11/15/2019 | 5,000 | Fieldwood En | 100.0% | RELINQ |
| SHIP SHOAL 87 | SS 87 | G12349 | Federal | ORRI | 9/12/1946 | | 1,953 | Sanare En Part | 1.0% | UNIT |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 87.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | | 5,000 | Fieldwood En | 87.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | | 5,000 | Fieldwood En | 12.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 12.5% | PROD |
| $0 Liability | ST 146 | G33110 | Federal | RT | 7/1/2009 | 6/30/2014 | 3,772 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH TIMBALIER 148 | ST 148 | G01960 | Federal | RT | 2/1/1970 | | 2,500 | Arena Off | 15.6% | PROD |
| SOUTH TIMBALIER 148 | ST 148 | G01960 | Federal | OP | 2/1/1970 | | 2,500 | Arena Off | 15.6% | PROD |
| SOUTH TIMBALIER 176 | ST 161 | G01248 | Federal | OP | 6/1/1962 | | 5,000 | Arena Off | 25.0% | PROD |
| $0 Liability | ST 166 | G01252 | Federal | OP | 6/1/1962 | 8/27/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | ST 173 | G04001 | Federal | RT | 3/1/1979 | 8/27/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | ST 179 | G12020 | Federal | RT | 6/1/1990 | 8/27/2015 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |
| $0 Liability | ST 179 | G12020 | Federal | OP | 6/1/1990 | 8/27/2015 | 5,000 | Fieldwood En Off | 68.8% | TERMIN |
| $0 Liability | ST 190 | G01261 | Federal | RT | 6/1/1962 | 9/27/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 190 | G01261 | Federal | OP | 6/1/1962 | 9/27/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 194 | G05610 | Federal | RT | 7/1/1983 | 1/5/2015 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | OP 1 | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | OP 2 | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 20.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | RT | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 3 | 7/1/1983 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 4 | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 7 | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 6 | 7/1/1983 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 5 | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 206 | G05613 | Federal | RT | 7/1/1983 | 1/31/2015 | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | ST 228 | G32217 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Eni US Op | 40.0% | EXPIR |
| SOUTH TIMBALIER 229 | ST 229 | G13938 | Federal | OP | 7/1/1993 | | 2,148 | W & T Off | 33.3% | PROD |
| $0 Liability | ST 244 | G34341 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,572 | Apache Shelf Exp | 100.0% | RELINQ |
| *No FW lease ownership | ST 26 | G01361 | Federal | RT | 5/1/1964 | | 625 | Cox Op | 50.0% | UNIT |
| *No FW lease ownership | ST 26 | G01870 | Federal | RT | 11/1/1968 | | 1,875 | Cox Op | 50.0% | UNIT |
| *No FW lease ownership | ST 26 | G02620 | Federal | RT | 5/1/1974 | | 2,500 | Cox Op | 50.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 276 | G07780 | Federal | RT | 8/1/1985 | | 5,000 | Eni US Op | 100.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 276 | G07780 | Federal | OP | 8/1/1985 | | 5,000 | Eni US Op | 100.0% | UNIT |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 290 | G16454 | Federal | RT | 4/24/1996 | 1/5/2010 | 5,000 | Apache | 100.0% | PROD |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 291 | G16455 | Federal | RT | 9/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 291 | G16455 | Federal | OP | 9/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 276/295/296 | ST 295 | G05646 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 276/295/296 | ST 296 | G12981 | Federal | RT | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 296 | G12981 | Federal | OP | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH TIMBALIER 311 | ST 311 | G31418 | Federal | RT | 3/1/2008 | | 5,000 | Walter O&G | 45.0% | PROD |
| SOUTH TIMBALIER 316 | ST 316 | G22762 | Federal | RT | 6/1/2001 | | 4,435 | W & T Off | 20.0% | PROD |
| SOUTH TIMBALIER 311 | ST 320 | G24990 | Federal | RT | 5/1/2003 | | 5,000 | W & T Off | 11.3% | PROD |
| $0 Liability | ST 47 | G33652 | Federal | RT | 7/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| SOUTH TIMBALIER 49 | ST 49 | G24956 | Federal | RT | 6/1/2003 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 49 | ST 49 | G24956 | Federal | OP | 6/1/2003 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | ST 50 | G34331 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 50.0% | RELINQ |
| SOUTH TIMBALIER 53/67/68 | ST 53 | G04000 | Federal | RT | 3/1/1979 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 53/67/68 | ST 53 | G04000 | Federal | OP 1 | 3/1/1979 | | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | ST 59 | G31404 | Federal | RT | 2/1/2008 | 1/17/2014 | 5,000 | LLOG Exp Off | 25.0% | TERMIN |
| $0 Liability | ST 64 | G33106 | Federal | RT | 7/1/2009 | 6/30/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH TIMBALIER 53/67/68 | ST 67 | 00020 | Federal | CONT | 4/25/1947 | | | Fieldwood En | 79.7% | UNIT |
| SABINE PASS 10 | SX 17 | G04143 | Federal | RT | 10/1/1979 | 9/30/2013 | 2,042 | Apache | 92.3% | RELINQ |
| SABINE PASS 10 | SX 17 | G04143 | Federal | OP | 10/1/1979 | 9/30/2013 | 2,042 | Apache | 20.0% | RELINQ |
| $0 Liability | SX 17 | G04144 | Federal | RT | 10/1/1979 | | 5,000 | Apache | 75.0% | EXPIR |
| VIOSCA KNOLL 203/204 | VK 118 | G33697 | Federal | RT | 5/1/2010 | 4/30/2015 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| VIOSCA KNOLL 203/204 | VK 203 | G07890 | Federal | RT | 7/1/1985 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 203 | G07890 | Federal | OP | 7/1/1985 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 204 | G04921 | Federal | RT | 12/1/1981 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 204 | G04921 | Federal | OP | 12/1/1981 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 251/340/384 | VK 251 | G10930 | Federal | RT | 7/1/1989 | | 5,760 | Fieldwood En Off | 7.5% | UNIT |
| VIOSCA KNOLL 251/340/384 | VK 340 | G10933 | Federal | RT | 7/1/1989 | | 5,760 | Fieldwood En Off | 7.5% | UNIT |
| $0 Liability | VK 384 | G16541 | Federal | OP | 6/1/1996 | 2/8/2014 | 5,760 | Chevron USA | 20.0% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 692/693 | G07898 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,773 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 694 | G13055 | Federal | RT | 7/1/1991 | 7/11/2020 | 3,214 | Fieldwood En | 53.1% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 694 | G13055 | Federal | OP | 7/1/1991 | 7/11/2020 | 3,214 | Fieldwood En | 92.1% | TERMIN |
| $0 Liability | VK 698 | G07901 | Federal | RT | 8/1/1985 | 2/20/2014 | 4,996 | Fieldwood En | 52.4% | TERMIN |
| $0 Liability | VK 736 | G13987 | Federal | RT | 7/1/1993 | 12/12/2013 | 4,742 | Fieldwood En | 100.0% | TERMIN |
| VIOSCA KNOLL 780 | VK 780 | G06884 | Federal | RT | 6/1/1984 | 12/12/2013 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| VIOSCA KNOLL 780 | VK 824 | G15436 | Federal | RT | 9/1/1995 | 8/20/2013 | 5,760 | Apache | 100.0% | REUNQ |
| $0 Liability | VK 856 | G34872 | Federal | RT | 7/1/2013 | 6/21/2017 | 877 | Apache Shelf Exp | 75.0% | REUNQ |
| $0 Liability | VK 899 | G34408 | Federal | RT | 8/1/2012 | 7/31/2017 | 1,553 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | VR 115 | G33593 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | VR 128 | G33594 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| *No FW lease ownership | VR 131 | 00775 | Federal | OP | 5/1/1960 | 7/20/2020 | 4,923 | Talos En Off | 72.5% | TERMIN |
| $0 Liability | VR 146 | G33084 | Federal | RT | 7/1/2009 | 6/30/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | VR 156 | G34251 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | VR 160 | G34252 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | VR 161 | G34253 | Federal | RT | 10/1/2012 | 7/24/2015 | 4,868 | Apache Shelf Exp | 100.0% | REUNQ |
| VERMILION 252 | VR 252 | G05431 | Federal | ORRI | 2/1/1983 | | 4,454 | Castex Off | 2.0% | PROD |
| VERMILION 253 | VR 253 | G17912 | Federal | ORRI | 7/1/1997 | | 5,000 | Castex Off | 0.6% | PROD |
| $0 Liability | VR 26 | 00297 | Federal | OP 1 | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 26 | 00297 | Federal | OP 2 | 1/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | VR 26 | 00297 | Federal | RT | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 50.0% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | RT | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 75.0% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | OP 2 | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 37.5% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | ORRI | 4/1/1976 | | | Fieldwood En | 6.3% | TERMIN |
| VERMILION 261/262 | VR 262 | G34257 | Federal | RT | 10/1/2012 | 7/7/2017 | 5,485 | Fieldwood En | 75.0% | REUNQ |
| VERMILION 265 | VR 265 | G01955 | Federal | RT | 1/1/1970 | | 5,000 | Fieldwood En | 100.0% | SOP |
| $0 Liability | VR 27 | G01329 | Federal | OP 2 | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 27 | G01329 | Federal | OP 1 | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | VR 27 | G01329 | Federal | RT | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 50.0% | TERMIN |
| VERMILION 271/272 / SMI 87/102 | VR 271 | G04800 | Federal | OP | 9/1/1981 | | 4,418 | Castex Off | 12.5% | PROD |
| VERMILION 326 | VR 326 | G21096 | Federal | RT | 6/1/1999 | 8/21/2020 | 5,000 | Fieldwood En | 70.3% | TERMIN |
| | VR 332 | G09514 | Federal | CONT | 3/30/1988 | | | Fieldwood En | 50.0% | PROD |
| $0 Liability | VR 34 | G01356 | Federal | OP 1 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 34 | G01356 | Federal | OP 2 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 34 | G01356 | Federal | RT | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | OP 1 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | OP 2 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | OP 1 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | OP 2 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | RT | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | RT | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| VERMILION 356 | VR 356 | G17921 | Federal | ORRI | 8/1/1997 | | 4,093 | EnVen En Vent | 2.6% | PROD |
| $0 Liability | VR 36 | G01357 | Federal | OP 2 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 36 | G01357 | Federal | OP 1 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 36 | G01357 | Federal | RT | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| Other (TBD) | VR 369 | G02274 | Federal | OP 4 | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | OP 3 | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | RT | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | Unit | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| $0 Liability | VR 374 | G32153 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| VERMILION 380/381 | VR 380 | G02580 | Federal | RT | 5/1/1974 | | 5,000 | Fieldwood En | 100.0% | PROD |
| VERMILION 380/381 | VR 381 | G16314 | Federal | RT | 9/1/1996 | 10/27/2015 | 5,000 | Apache Shelf | 100.0% | TERMIN |
| VERMILION 380/381 | VR 381 | G16314 | Federal | OP | 9/1/1996 | 10/27/2015 | 5,000 | Apache Shelf | 80.0% | TERMIN |
| $0 Liability | VR 386 | G02278 | Federal | RT A | 2/1/1973 | | 5,000 | Marathon Oil | 30.2% | UNIT |
| $0 Liability | VR 386 | G02278 | Federal | RT B | 2/1/1973 | | 5,000 | Marathon Oil | 29.0% | UNIT |
| VERMILION 408 | VR 408 | G15212 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 12.5% | PROD |
| VERMILION 408 | VR 408 | G15212 | Federal | OP | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 71/72/102 | WC 102 | 00247 | Federal | RT | 9/9/1946 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST CAMERON 110 | WC 110 | 00081 | Federal | RT | 6/10/1947 | | 5,000 | BP E&P | 100.0% | PROD |
| WEST CAMERON 110 | WC 110 | 00081 | Federal | OP | 6/10/1947 | | 5,000 | BP E&P | 37.5% | PROD |
| WEST CAMERON 110/111 | WC 111 | 00082 | Federal | RT | 6/10/1947 | | 1,250 | BP E&P | 100.0% | PROD |
| WEST CAMERON 110/111 | WC 111 | 00082 | Federal | OP | 6/10/1947 | | 1,250 | BP E&P | 37.5% | PROD |
| $0 Liability | WC 111 | G33046 | Federal | RT | 8/1/2009 | 7/31/2014 | 5,000 | Eni US Op | 25.0% | EXPIR |
| $0 Liability | WC 130 | G12761 | Federal | RT | 5/1/1991 | 4/1/2015 | 5,000 | Eni US Op | 25.0% | TERMIN |
| WEST CAMERON 144 | WC 144 | G01953 | Federal | RT | 2/1/1970 | 4/1/2016 | 5,000 | Fieldwood En | 62.5% | TERMIN |
| $0 Liability | WC 155 | G32114 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| WEST CAMERON 163 | WC 163 | G05299 | Federal | RT A | 7/1/1983 | 12/1/2015 | 5,000 | Fieldwood En | 61.0% | TERMIN |
| WEST CAMERON 163 | WC 163 | G05299 | Federal | RT B | 7/1/1983 | 12/1/2015 | 5,000 | Fieldwood En | 56.2% | TERMIN |
| $0 Liability | WC 165 | 00758 | Federal | RT | 4/1/1960 | 12/30/2017 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 1 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 2 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 3 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 4 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 10 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 11 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 12 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 181 | G33558 | Federal | RT | 6/1/2010 | 4/30/2015 | 2,500 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 196 | G05292 | Federal | RT | 7/1/1983 | 8/27/2013 | 5,000 | Union Oil CA | 8.3% | TERMIN |
| *No FW asset ownership | WC 20 | 00680 | Federal | OP | 8/1/1959 | | 1,873 | Sanare En Part | 50.0% | PROD |
| $0 Liability | WC 210 | G34216 | Federal | RT | 10/1/2012 | 3/3/2014 | 5,000 | Apache | 100.0% | REUNQ |
| $0 Liability | WC 225 | G00900 | Federal | OP 1 | 4/1/1962 | 3/14/2008 | 5,000 | Tarpon O&D | 26.7% | TERMIN |
| WEST CAMERON 269 | WC 269 | G13563 | Federal | OP | 8/1/1992 | 8/11/2020 | 5,000 | Sanare En Part | 33.8% | TERMIN |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 10.4% | TERMIN |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | RT | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 16.7% | TERMIN |
| $0 Liability | WC 291 | G04397 | Federal | RT | 11/1/1980 | 7/16/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | WC 291 | G04397 | Federal | OP | 11/1/1980 | 7/16/2013 | 5,000 | Apache | 60.0% | TERMIN |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | Fieldwood En | 20.6% | PROD |
| $0 Liability | WC 300 | G15078 | Federal | RT | 7/1/1995 | 12/21/2013 | 5,000 | SandRidge En Off | 14.0% | TERMIN |
| $0 Liability | WC 300 | G15078 | Federal | OP | 7/1/1995 | 12/21/2013 | 5,000 | SandRidge En Off | 24.4% | TERMIN |
| WEST CAMERON 310 | WC 310 | G17789 | Federal | RT | 8/1/1997 | 6/3/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST CAMERON 310 | WC 310 | G17789 | Federal | OP | 8/1/1997 | 6/3/2016 | 5,000 | Fieldwood En | 73.7% | TERMIN |
| WEST CAMERON 33 | WC 33 | G15050 | Federal | RT | 7/1/1995 | | 2,891 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 34 | G03251 | Federal | RT | 9/1/1975 | 6/1/2012 | 4,506 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35 | WC 35 | G02819 | Federal | RT | 12/1/1974 | 11/3/2013 | 4,688 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35 | WC 35 | G02819 | Federal | OP | 12/1/1974 | 11/3/2013 | 4,688 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35, WC 6 | G01860 | Federal | OP 2 | 1/1/1969 | | 1,563 | BP E&P | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 35/66 | G01860 | Federal | RT | 1/1/1969 | | 1,563 | BP E&P | 100.0% | PROD |
| $0 Liability | WC 401 | G07619 | Federal | RT | 7/1/1985 | 9/27/2015 | 5,000 | ConocoPhillips | 33.3% | TERMIN |
| WEST CAMERON 35/65/66 | WC 576 | G33061 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | WC 624 | G33064 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP 4 | 12/1/1974 | | 5,000 | BP E&P | 81.3% | PROD |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | RT | 12/1/1974 | | 5,000 | BP E&P | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP | 12/1/1974 | | 5,000 | BP E&P | 100.0% | PROD |
| $0 Liability | WC 650 | G34217 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 656 | G34218 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 657 | G34219 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | | 3,750 | Fieldwood En | 75.0% | PROD |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | OP | 12/1/1974 | | 3,750 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 67 | G03256 | Federal | OP 1 | 9/1/1975 | 2/8/2008 | 5,000 | Apache | 75.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 67 | G03256 | Federal | OP 2 | 9/1/1975 | 2/8/2008 | 5,000 | Apache | 66.6% | TERMIN |
| $0 Liability | WC 68 | 00526 | Federal | RT | 9/1/1955 | 9/3/2014 | 5,000 | BP Am Prod | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 71 | 00244 | Federal | RT | 9/9/1946 | 12/19/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |

Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| WEST CAMERON 71/72/102 | WC 72 | G23735 | Federal | RT | 7/1/2002 | | 5,000 | Fieldwood En Off | 25.00% | PROD |
| *No FW asset ownership | WC 73 | G23736 | Federal | OP | 7/1/2002 | | 5,000 | Castex Off | 25.00% | PROD |
| $0 Liability | WC 99 | G34213 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.00% | RELINQ |
| WEST DELTA 90/103 | WD 103 | 00840 | Federal | RT | 5/1/1960 | | 3,984 | Fieldwood En | 100.00% | PROD |
| WEST DELTA 90/103 | WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | | 1,016 | Fieldwood En | 81.3% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 3 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 5 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 3 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 4 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 5 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 6 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 121/122 | WD 121 | G19843 | Federal | OP 1 | 8/1/1998 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 1 | 8/1/1992 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | RT | 8/1/1992 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH PASS 87/89 / WEST DELTA 128 | WD 128 | G10883 | Federal | 6 | 6/1/1989 | 8/2/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 133 | WD 133 | G1106 | Federal | ORRI | 5/1/1962 | | | Arena Off | 1.0% | PROD |
| WEST DELTA 133 | WD 133 | G1106 | Federal | ORRI | 5/1/1962 | | | Arena Off | 7.2% | PROD |
| WEST DELTA 133 | WD 133 | G01106 | Federal | RT | 5/1/1962 | | 5,000 | Arena Off | 100.0% | PROD |
| $0 Liability | WD 34 | G03414 | Federal | RT | 1/1/1977 | 3/20/2017 | 2,500 | Fieldwood En | 76.7% | TERMIN |
| $0 Liability | WD 34 | G03414 | Federal | OP | 1/1/1977 | 3/20/2017 | 2,500 | Fieldwood En | 46.7% | TERMIN |
| $0 Liability | WD 38 | G22772 | Federal | RT | 5/1/2001 | 9/13/2013 | 1,796 | Apache | 87.5% | TERMIN |
| $0 Liability | WD 38 | G22772 | Federal | OP | 5/1/2001 | 9/13/2013 | 1,796 | Apache | 43.8% | TERMIN |
| $0 Liability | WD 41 | G01073 | Federal | RT | 3/1/1962 | 10/25/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | WD 41 | G01073 | Federal | OP | 3/1/1962 | 10/25/2013 | 5,000 | Apache | 50.0% | TERMIN |
| $0 Liability | WD 42 | G16470 | Federal | RT | 9/1/1996 | 1/26/2014 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | WD 42 | G16470 | Federal | OP | 9/1/1996 | 1/26/2014 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| | WD 53 | 17935 | SL- LA | WI | 10/13/2003 | 1/27/2015 | -- | Whitney Oil | 33.3% | TERMIN |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 67 | 00179 | Federal | RT | 7/17/1948 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 67 | 00179 | Federal | OP 2 | 7/17/1948 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 68 | 00180 | Federal | RT | 7/17/1948 | | 1,833 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 68 | 00180 | Federal | OP 2 | 7/17/1948 | | 1,833 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 69 | 00181 | Federal | RT | 7/17/1948 | | 3,665 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 69 | 00181 | Federal | OP 2 | 7/17/1948 | | 3,665 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 70 | 00182 | Federal | RT | 7/17/1948 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 70 | 00182 | Federal | OP 2 | 7/17/1948 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 71 | 00838 | Federal | RT | 4/1/1960 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 71 | 00838 | Federal | OP 2 | 4/1/1960 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| WEST DELTA 75/90 | WD 75 | G01085 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | | 5,000 | Fieldwood En | 81.3% | PROD |
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 94 | 00839 | Federal | RT | 5/1/1960 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 94 | 00839 | Federal | OP 2 | 5/1/1960 | | 5,000 | GOM Shelf | 37.5% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 95 | G01497 | Federal | RT | 12/1/1966 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 95 | G01497 | Federal | OP 1 | 12/1/1966 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 96 | G01498 | Federal | RT | 12/1/1966 | | 3,665 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 96 | G01498 | Federal | OP 2 | 12/1/1966 | | 3,665 | GOM Shelf | 37.5% | PROD |

Exhibit I-A(ii)

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G06069 | TERMIN | Brazos Area | 491 | 6891 to 99999 | All | Operating Rights | 50.00000% |
| G01757 | PROD | Brazos Area | A010S | 14090 to 99999 | NE/4;S/2 | Operating Rights | 6.25000% |
| G02665 | PROD | Brazos Area | A-133 | Below 13,840' MD | SE/4 | Operating Rights | 12.50000% |
| G13576 | SOP | East Cameron | 71 | 14,645' to 99,999' | N/2N/2, N/2S/2N/2, S/2SW/4NW/4, SW/4SE/4NW/4, W/2SW/4, W/2E/2SW/4, SE/4SE/4SW/4 and S/2S/2SE/4 | Operating Rights | 50.00000% |
| G13576 | SOP | East Cameron | 71 | 10,400' to 99,999' | N/2SE/4, N/2S/2SE/4, S/2S/2NE/4, SE/4SE/4NW/4, E/2NE/4NE/4, NE/4SE/4SW/4 | Operating Rights | 100.00000% |
| G02063 | PROD | East Cameron | 338 | 7,244' TVDSS to 99,999' | All | Operating Rights | 7.83469% |
| G01440 | PROD | East Cameron | 9 & 14 | 15199 to 99999 | SE/4;E/2SW/4 | Operating Rights | 50.00000% |
| 49 | PROD | Eugene Island | 119 | 15,410' TVDSS to 99,999' | NW/4 | Operating Rights | 25.00000% |
| 49 | PROD | Eugene Island | 119 | 15,410' TVDSS to 99,999' | SW/4; E/2 | Operating Rights | 25.00000% |
| 50 | PROD | Eugene Island | 120 | 14,136' to 99,999 | All | Operating Rights | 50.00000% |
| 51 | OPERNS | Eugene Island | 125 | 13,334' to 99,999 | All | Operating Rights | 50.00000% |
| 52 | PROD | Eugene Island | 126 | 9,400 to 99,999 | SE/4NE/4;NE/4SE/4 | Operating Rights | 100.00000% |
| 52 | PROD | Eugene Island | 126 | 12,056 to 99,999 | W/2;W/2E/2;NE/4NE/4,SE/4SE/4 | Operating Rights | 50.00000% |
| G03152 | PROD | Eugene Island | 136 | 19,135' to 99,999 | All | Operating Rights | 50.00000% |
| G01220 | PROD | Eugene Island | 158 | 17,588 to 99,999 | All | Operating Rights | 50.00000% |
| G13622 | PROD | Eugene Island | 171 | 14,097' to 99,999 | All | Operating Rights | 50.00000% |
| G03782 | PROD | Eugene Island | 174 | from the stratigraphic equivalent of 100' below a true vertical depth of 10,960' as encountered in the Newfield Exploration Company OCSG 3782 Well No. A10 to 99,999' TVDSS | SW/4 | Operating Rights | 100.00000% |
| G03782 | PROD | Eugene Island | 174 | 12,431' TVDSS to 99,999' | N/2;SE/5 | Operating Rights | 50.00000% |
| 438 | PROD | Eugene Island | 175 | 13,032 to 99,999 | All | Operating Rights | 37.50000% |
| G10736 | PROD | Eugene Island | 187 | 17,170' to 99,999 | All | Operating Rights | 50.00000% |
| 423 | PROD | Eugene Island | 189 | 13,638' to 99,999 | W/2;W/2E/2 | Operating Rights | 50.00000% |
| G05502 | UNIT | Eugene Island | 211 | surface to 99,999' | SE/4SE/4; E/2SW/4SE/4 | Operating Rights | 66.66667% |
| G05504 | PROD | Eugene Island | 224 | 18,000' to 99,999' | All | Operating Rights | 15.00000% |
| G22679 | TERMIN | Eugene Island | 312 | 9,000' TVD to 99,999' TVDSS | E/2NW/4;W/2NE/4 | Operating Rights | 50.00000% |
| G22679 | TERMIN | Eugene Island | 312 | 9,015' TVDSS to 99,999' TVDSS | W/2NW/4;E/2NE/4;S/3 | Operating Rights | 50.00000% |
| G02112 | UNIT | Eugene Island | 315 | 25,000' SS TVD down to 99,999' | S/2 | Operating Rights | 25.00000% |
| G24912 | PROD | Eugene Island | 315 | 8,000' subsea to 99,999' | N/2 | Operating Rights | 50.00000% |
| G05040 | PROD | Eugene Island | 316 | 7,739' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G02912 | TERMIN | Eugene Island | 329 | from 7,871' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G02115 | UNIT | Eugene Island | 330 | 8,329' TVDSS to 99,999' | SW/4, SW/4NW/4, S/2NW/4NW/4, N/4NW/4NW/4, S/2SE/4NW/4, N/4SE/4NW/4, SW/4SE/4, S/2NW/4SE/4, NW/4NW/4SE/4, S/2SE/4SE/4 and NW/4SE/4SE/4 | Operating Rights | 21.00000% |
| G02115 | UNIT | Eugene Island | 330 | 8,329' TVDSS to 99,999' | SW/4, SW/4NW/4, S/2NW/4NW/4, N/4NW/4NW/4, S/2SE/4NW/4, N/4SE/4NW/4, SW/4SE/4, S/2NW/4SE/4, NW/4NW/4SE/4, S/2SE/4SE/4 and NW/4SE/4SE/4 | Operating Rights | 11.51246% |
| G02317 | TERMIN | Eugene Island | 333 | 12,629' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G15263 | TERMIN | Eugene Island | 334 | 12,629' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G03332 | UNIT | Eugene Island | 337 | 7,026' TVD to 99,999' TVDSS | NE/4NE/4NE/4 | Operating Rights | 98.00000% |
| G03332 | UNIT | Eugene Island | 337 | 6,020' TVDSS to 99,999' TVDSS | SW/4SE/4SE/4; S/2SW/4SW/4 | Operating Rights | 100.00000% |
| G03332 | UNIT | Eugene Island | 337 | 12,455' TVDSS to 99,999' | SE/4SW/4, W/2SE/4, and SW/4NE/4 | Operating Rights | 50.00000% |
| G14482 | PROD | Eugene Island | 346 | 13,469' TVDSS to 99,999' TVDSS | N/2NW/4, SE/4NW/4, NE/4SW/4NW/4, E/2SW/4, E/2SW/4SW/4 and SE/4 | Operating Rights | 50.00000% |
| G14482 | PROD | Eugene Island | 346 | 7,511' TVD to 99,999' TVDSS | NE/4 | Operating Rights | 100.00000% |
| G14482 | PROD | Eugene Island | 346 | from the stratigraphic equivalent of 12,890' TVD, being the total depth drilled in the Eugene Island Area, South Addition, Block 346, OCSG 14482, B1 Well plus 100 feet being 12,990' TVD to 99,999' TVDSS | W/2SW/4NW/4, NW/4SW/4, and W/2SW/4SW/4 | Operating Rights | 100.00000% |
| G10752 | PROD | Eugene Island | 354 | 9,669' TVDSS to 99,999' | S/2, S/2N/2 and NE/4NE/4 | Operating Rights | 50.00000% |
| G02324 | PROD | Eugene Island | 361 | 5,220' TVDSS to 99,999' TVDSS | All | Operating Rights | 6.17647% |
| G31470 | PROD | Ewing Bank | 782 | 12,960' TVDSS to 99,999 | All | Operating Rights | 50.00000% |
| G03228 | UNIT | Galveston | 180 | 8,900' to 99,999 | All | Operating Rights | 50.00000% |
| G25524 | PROD | Galveston | 210 | 100' below the stratigraphic equivalent of 10,200' TD to 99,999' TVDSS | N/2NE/4 | Operating Rights | 33.34000% |
| G25524 | PROD | Galveston | 210 | 9,636' to 99,999 | S/2NE/4, NW/4 and S/2 | Operating Rights | 33.34000% |
| 174 | UNIT | Grand Isle | 32 | depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS). | S/2 | Operating Rights | 18.75000% |
| 126 | UNIT | Grand Isle | 39 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | E/2 | Operating Rights | 18.75000% |
| 127 | UNIT | Grand Isle | 39 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | W/2 | Operating Rights | 18.75000% |
| 128 | UNIT | Grand Isle | 40 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 129 | UNIT | Grand Isle | 41 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | E/2 | Operating Rights | 18.75000% |
| 130 | UNIT | Grand Isle | 41 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS | W/2 | Operating Rights | 18.75000% |
| 131 | UNIT | Grand Isle | 42 | below 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 175 | UNIT | Grand Isle | 43 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 176 | UNIT | Grand Isle | 44 | 18,000' subsea (TVDS) to 99,999' | N/2 | Operating Rights | 18.75000% |
| 132 | UNIT | Grand Isle | 46 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 133 | UNIT | Grand Isle | 47 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 134 | UNIT | Grand Isle | 48 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 177 | UNIT | Grand Isle | 52 | depths below 17,651' TVDSS down to 99,999' TVDSS | N/2 | Operating Rights | 18.75000% |
| G13944 | UNIT | Grand Isle | 116 | 19,402' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G01848 | PROD | High Island | 129 | 15,418' TVDSS to 99,999' | W/2NW/4, SE/4NW/4, W/2NE/4NW/4;S/2 | Operating Rights | 45.00000% |
| G03236 | UNIT | High Island | 179 | 9,839' TVDSS to 99,999' | W/2NW/4;S/2 | Operating Rights | 50.00000% |
| G03236 | UNIT | High Island | 179 | 10,036' TVDSS to 99,999' | E/2N/2;E/2W/2N/2 | Operating Rights | 50.00000% |
| G20660 | PROD | High Island | 206 | 12,145' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G25605 | PROD | High Island | A0341 | 8,847' TVDSS to 99,999' | All | Operating Rights | 30.00000% |
| G02750 | PROD | High Island | A036S | 5,659' TVDSS to 99,999' | All | Operating Rights | 26.54255% |
| G02754 | PROD | High Island | A0376 | 11,850' TVDSS to 99,999' | N/2, SW/4, W/2SE/4, SE/4SE/4, W/2NE/4SE/4 and SE/4NE/4SE/4 | Operating Rights | 22.28723% |
| G02757 | PROD | High Island | A0382 | 11,025' TVDSS to 99,999' | All | Operating Rights | 36.20529% |
| G02721 | PROD | High Island | A059S | 10,827' TVDSS to 99,999' | All | Operating Rights | 36.20510% |
| G02722 | PROD | High Island | A0596 | 13,264' TVDSS to 99,999' | All | Operating Rights | 36.20510% |
| G02393 | PROD | High Island | A0573 | 7,795' to 99,999' | | Operating Rights | 36.20510% |
| G04481 | RELINQ | Main Pass | 77 | depths below the stratigraphic equivalent of 13,040' measured depth on the Schlumberger IFS/Sonic wireline log (RUN 4) dated 7/12/81 for the Chevron U.S.A. Inc. State of La. Lease 8693 Well No. 4 (API # 1772520242), Main Pass Block 77 field down to 99,999' | | Operating Rights | 11.76468% |
| G02193 | PROD | Main Pass | 140 | 8,959' TVDSS to 99,999' | | Operating Rights | 32.50000% |
| G07827 | TERMIN | Main Pass | 259 | 11,636' TVDSS to 99,999' TVDSS | | Operating Rights | 28.45078% |
| G07828 | TERMIN | Main Pass | 260 | from 12,072' TVDSS to 99,999' TVDSS | | Operating Rights | 28.45078% |
| G15395 | PROD | Main Pass | 275 | 11,278' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G01666 | PROD | Main Pass | 289 | 9,077' TVDSS to 99,999' TVDSS | N/2, SW/4 and W/2W/2SE/4 | Operating Rights | 50.00000% |
| G01673 | UNIT | Main Pass | 296 | below 9,500' TVDSS down to 99,999' TVDSS | | Operating Rights | 16.66667% |
| G04253 | UNIT | Main Pass | 303 | 6,060' TVDSS to 99,999' | N/2 and N/2S/2 | Operating Rights | 93.10100% |

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G32265 | PROD | Main Pass | 308 | from 6,284' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G08760 | PROD | Main Pass | 309 | 6,510' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G04126 | UNIT | Main Pass | 310 | 6,944' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G02213 | PROD | Main Pass | 311 | below 12,000' TVDSS down to 99,999' TVDSS | | Operating Rights | 16.66666% |
| G16520 | PROD | Main Pass | 312 | 10,989' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G08467 | PROD | Main Pass | 315 | from the stratigraphic equivalent of the deepest depth found production (7,830' MD/TVD) in the Apache Corporation OCS-G 8467 No 2 Well plus 100' to 99,999' | W/2NW/4 and W/2E/2NW/4 | Operating Rights | 100.00000% |
| G08467 | PROD | Main Pass | 315 | from 7,760' TVDSS to 99,999' TVDSS | S/2, NE/4 and E/2E/2NW/4 | Operating Rights | 50.00000% |
| G01966 | UNIT | Main Pass | 152 | from the stratigraphic equivalent of 10,700' Measured Depth as seen in the OCSG 1967 #3 Well down to a depth of 50,000' | | Operating Rights | 37.50000% |
| G01967 | UNIT | Main Pass | 153 | 10,700' MD down to a depth of 50,000' TVD | | Operating Rights | 37.50000% |
| MF88562 | Shut-In | Matagorda Is | 487 | below the base of the MF Sand | SW/4 | Leasehold | 50.00000% |
| MF88560 | Shut-In | Matagorda Is | 487 | 4 below the base of the MF Sand | SE/4 | Leasehold | 50.00000% |
| MF80522 | Shut-In | Matagorda Is | 518 | below the base of the 15600 Sand | NW/4 | Leasehold | 50.00000% |
| MF79413 | Shut-In | Matagorda Is | 519 | below the base of the 16950 Sand | NE/4 | Leasehold | 50.00000% |
| G09777 | PROD | Mississippi Canyon | 8 | below 20,000' true vertical depth subsea down to 99,999' | All | Operating Rights | 37.59399% |
| G18192 | PROD | Mississippi Canyon | 110 | 6,688' TVDSS to 99,999' | All | Operating Rights | 25.00000% |
| G02968 | PROD | Mississippi Canyon | 311 | 11,860' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G26176 | PROD | Mobile | 826 | 21,730' TVDSS to 99,999' | | Operating Rights | 37.50000% |
| 333 | UNIT | Ship Shoal | 30 | 17,478' TVDSS to 99,999' TVDSS | All | Operating Rights | 18.75000% |
| G02919 | PROD | Ship Shoal | 91 | 11,148' TVDSS to 99,999' | | Operating Rights | 6.25000% |
| G02919 | PROD | Ship Shoal | 91 | 11,148' TVDSS to 99,999' TVDSS | | Operating Rights | 28.12500% |
| G12941 | PROD | Ship Shoal | 129 | 17,446' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G15282 | PROD | Ship Shoal | 151 | from the stratigraphic equivalent of 12,612' MD as seen in the Zilkha OCS-G 15282 Well No. 1 (said depth being 100' below the total depth drilled and logged in the Zilkha OCS-G 15282 Well No. 1), down to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| 820 | PROD | Ship Shoal | 169 | 10,658' TVDSS to 99,999' TVDSS | All | Operating Rights | 33.33000% |
| G05550 | UNIT | Ship Shoal | 175 | surface to 99,999' TVD | S/2SW/4NW/4; NW/4SW/4 | Operating Rights | 66.66667% |
| G33646 | PROD | Ship Shoal | 176 | 12,274' TVDSS to 99,999' TVDSS | All | Operating Rights | 20.00000% |
| G05551 | PROD | Ship Shoal | 178 | 10,031' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G03998 | PROD | Ship Shoal | 182 | 11,825' TVDSS to 99,999' TVDSS | W/2 | Operating Rights | 50.00000% |
| G04232 | PROD | Ship Shoal | 189 | 19,077' TVDSS to 99,999' TVDSS | W/2, SE/4, N/2N/2NE/4 and SW/4NW/4NE/4 | Operating Rights | 49.47915% |
| G04232 | PROD | Ship Shoal | 189 | 19,000' TVD to 99,999' TVDSS | S/2NE/4, SE/4NW/4NE/4 and S/2NE/4NE/4 | Operating Rights | 49.47915% |
| G13917 | PROD | Ship Shoal | 193 | 12,901' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G15288 | PROD | Ship Shoal | 194 | 13,619' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G12355 | PROD | Ship Shoal | 198 | 12,072' TVDSS to 99,999' TVDSS | NW/4, W/2W/2NE/4, N/2NE/4SW/4, NW/4SW/4SW/4 | Operating Rights | 25.00000% |
| 593 | PROD | Ship Shoal | 198 | 12,072' TVDSS to 99,999' | E/2NE/4; E/2W/2NE/4; S/2NE/4SW/4; S/2SW/4; SE/4 | Operating Rights | 25.00000% |
| 594 | PROD | Ship Shoal | 199 | 10,440' TVDSS to 99,999' TVDSS | W/2, W/2W/2NE/4, W/2NW/4SE/4, SE/4NW/4SE/4, SW/4SE/4, S/2SE/4SE/4 | Operating Rights | 25.00000% |
| G01520 | PROD | Ship Shoal | 204 | 12,791' TVDSS to 99,999' TVDSS | All | Operating Rights | 27.58165% |
| G01522 | UNIT | Ship Shoal | 206 | 12,355' TVDSS to 99,999' TVDSS | All | Operating Rights | 30.00000% |
| G01523 | PROD | Ship Shoal | 207 | below 15,000' down to 99,999' TVD | All | Operating Rights | 23.95873% |
| G01524 | PROD | Ship Shoal | 216 | 14,088' TVDSS to 99,999' TVDSS | All | Operating Rights | 27.77814% |
| G10780 | PROD | Ship Shoal | 243 | from 15,858' TVDSS to 99,999' TVDSS | E/2 | Operating Rights | 25.00000% |
| G10780 | PROD | Ship Shoal | 243 | 20,000' TVDSS to 99,999' TVDSS | W/2 | Operating Rights | 25.00000% |
| G01038 | UNIT | Ship Shoal | 271 | 7,810' TVDSS to 99,999' TVDSS | All | Operating Rights | 10.00000% |
| G01039 | PROD | Ship Shoal | 274 | 8,525' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G26074 | PROD | Ship Shoal | 314 | 10,750' TVDSS to 99,999' TVDSS | W/2W/2 | Operating Rights | 37.50000% |
| G26074 | PROD | Ship Shoal | 314 | 10,950' TVDSS to 99,999' TVDSS | E/2W/2 and E/2 | Operating Rights | 37.50000% |
| G15312 | PROD | Ship Shoal | 354 | 14,853' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| 334 | UNIT | Ship Shoal | 31 | 15,320' to 99,999' | | Operating Rights | 18.75000% |
| 335 | UNIT | Ship Shoal | 32 | 11,315' to 99,999' | | Operating Rights | 18.75000% |
| G09627 | SOP | Ship Shoal | 277 | 10,000' TVD down to a depth of 50,000' TVD subsea | All | Operating Rights | 50.00000% |
| G01182 | TERMIN | South Marsh Is | 11 | 13,007' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G01194 | PROD | South Marsh Is | 58 | 13,639' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| F17938 | PROD | South Marsh Is | 105 | 9,220' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G03776 | PROD | South Marsh Is | 106 | 9,368' TVDSS to 99,999' TVDSS | S/2 | Operating Rights | 50.00000% |
| G02883 | PROD | South Marsh Is | 127 | all depths below 18,000' (TVDSS) down to 99,999' (TVDSS | | Operating Rights | 8.67331% |
| G02587 | PROD | South Marsh Is | 128 | from 9,016' TVDSS to 99,999' TVDSS | | Operating Rights | 8.67331% |
| G02587 | PROD | South Marsh Is | 128 | from 9,016' TVDSS to 99,999' TVDSS | | Operating Rights | 33.33334% |
| G02592 | PROD | South Marsh Is | 149 | 7,386' TVDSS to 99,999' TVDSS | All | Operating Rights | 25.00000% |
| G04809 | PROD | South Marsh Is | 161 | 10,576' TVDSS to 99,999' TVDSS | W/2 and W/2E/2 | Operating Rights | 50.00000% |
| G04809 | PROD | South Marsh Is | 161 | from the stratigraphic equivalent of the true vertical depth of 9,782.5' (being the true vertical depth drilled in the OCS-G 4809 #14 Well plus 100 feet) to 99,999' SSTVD | E/2E/2 | Operating Rights | 100.00000% |
| G02311 | PROD | South Marsh Is | 269 | 11,719' TVDSS to 99,999' TVDSS | All | Operating Rights | 36.41794% |
| G14456 | PROD | South Marsh Is | 280 | 14,115' TVDSS to 99,999' TVDSS | W/2, NE/4 and E/2E/2SE/4 | Operating Rights | 25.00000% |
| G14456 | PROD | South Marsh Is | 280 | from 100' below the stratigraphic equivalent of that certain zone encountered between the interval of 13,814' and 13,920' TVD on the electric log from the Norcen Explorer, Inc. OCS-G 14456 Well No. 3 to 99,999' TVDSS | W/2SE/4 and W/2E/2SE/4 | Operating Rights | 50.00000% |
| G02600 | PROD | South Marsh Is | 281 | 16,062' TVDSS to 99,999' TVDSS | All | Operating Rights | 34.06318% |
| G21618 | PROD | South Marsh Is | 93 | 13,299' to 99,999' | | Operating Rights | 6.25000% |
| 792 | PROD | South Marsh Is | 108 | all depths below 14,000' TVD | | Operating Rights | 16.66667% |
| G01192 | PROD | South Marsh Is | 41 | 15,000' TVD down to a depth of 50,000' TVD | W/2 | Operating Rights | 25.00000% |
| G01192 | PROD | South Marsh Is | 41 | 11,500' TVD down to a depth of 50,000' TVD | E/2 | Operating Rights | 50.00000% |
| 786 | PROD | South Marsh Is | 48 | 13,000' TVD down to a depth of 50,000' Subsea | All | Operating Rights | 50.00000% |
| G01294 | PROD | South Pass | 62 | 18,247' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G01614 | PROD | South Pass | 70 | 8,480' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G07799 | TERMIN | South Pass | 87 | 18,001' TVDSS to 99,999' TVDSS | | Operating Rights | 16.68000% |
| G07799 | TERMIN | South Pass | 87 | 18,001' TVDSS to 99,999' TVDSS | | Operating Rights | 16.67000% |
| G01618 | PROD | South Pass | 89 | 16,802' TVDSS to 99,999' TVDSS | | Operating Rights | 25.00000% |
| G01901 | UNIT | South Pass | 64 | from 10,700' Measured Depth down to a depth of 50,000' TVD subsea | | Operating Rights | 37.50000% |
| G01610 | UNIT | South Pass | 65 | from 10,700' Measured Depth down to a depth of 50,000' TVD subsea | All | Operating Rights | 37.50000% |
| G04234 | TERMIN | South Pelto | 1 | 12,460' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G02924 | TERMIN | South Pelto | 9 | 100' below the stratigraphic equivalent of 17,337' TVD as seen in the Newfield Exploration Company OCS-G 02924 Well No. 10 (API No. 177134025300) to 99,999' TVDSS | NE/4 | Operating Rights | 50.00000% |
| G02924 | TERMIN | South Pelto | 9 | 16,992' TVDSS to 99,999' TVDSS | S/2; NW/4 | Operating Rights | 50.00000% |
| G02925 | TERMIN | South Pelto | 10 | 13,261' TVDSS to 99,999' TVDSS | | Operating Rights | – |
| 71 | RELINQ | South Pelto | 11 | 11,705' TVDSS to 99,999' TVDSS | | Operating Rights | – |

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G24956 | PROD | South Timbalier | 49 | 18,800' TVD to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G04000 | PROD | South Timbalier | 53 | 6,782' TVDSS to 99,999' TVDSS | All | Operating Rights | 25.00000% |
| G01960 | PROD | South Timbalier | 148 | 17,777' TVDSS to 99,999' TVDSS | NE/4, N/2NE/4SE/4, SE/4NE/4SE/4 and NE/4SE/4SE/4 | Operating Rights | 7.77500% |
| G05612 | PROD | South Timbalier | 205 | 18,640' TVDSS to 99,999' TVDSS | SE/4SW/4 | Operating Rights | 25.00000% |
| G16455 | PROD | South Timbalier | 291 | 9,669' TVDSS to 99,999' TVDSS | N/2 and SE/4 | Operating Rights | 50.00000% |
| G16455 | PROD | South Timbalier | 291 | 7,461' TVDSS to 99,999' TVDSS | SW/4 | Operating Rights | 100.00000% |
| G05646 | UNIT | South Timbalier | 295 | 14,293' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G31418 | PROD | South Timbalier | 311 | 12,251' TVD to 99,999' | All | Operating Rights | 22.50000% |
| G22762 | PROD | South Timbalier | 316 | 12,520' TVDSS to 99,999' TVDSS | All | Operating Rights | 10.00000% |
| G03328 | TERMIN | Vermilion | 261 | 9,241' TVD as identified in the Stone Energy Corporation's OCS-G 3328 Well No A-3 ST to 99,999' TVDSS | S/2S/2NE/4 and N/2NE/4SE/4 | Operating Rights | 37.50000% |
| G03328 | TERMIN | Vermilion | 261 | 9,304' TVDSS to 99,999' TVDSS | W/2, N2NE/4, N/2S/2NE/4, W/2SE/4, SE/4SE/4 and S/2NE/4SE/4 | Operating Rights | 37.50000% |
| G01955 | SOP | Vermilion | 265 | 10,465' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G21096 | TERMIN | Vermilion | 326 | 8,447' TVDSS to 99,999' TVDSS | All | Operating Rights | 35.15742% |
| G02274 | UNIT | Vermilion | 369 | below 10,000' down to 99,999' | NW/4, W/2E/2, NE/4NE/4 | Operating Rights | 11.58535% |
| G02580 | PROD | Vermilion | 380 | 10,245' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G02278 | UNIT | Vermilion | 386 | 5,175' TVDSS to 99,999' TVDSS | NW/4NE/4NE/4, S/2NE/4NE/4, E/2NW/4NE/4, NW/4SE/4NE/4 and N/2SW/4NE/4 | Operating Rights | 15.08620% |
| G02278 | UNIT | Vermilion | 386 | 5,175' TVDSS to 99,999' TVDSS | S/2, SW/4NW/4, S/2S/2NE/4, W/2NW/4NE/4, NE/4SE/4NE/4 and NE/4NE/4NE/4 | Operating Rights | 14.48210% |
| G04800 | PROD | Vermilion | 271 | 6,103' TVD down to a depth of 50,000' TVD subsea | All | Operating Rights | 6.25000% |
| G15212 | PROD | Vermilion | 408 | below 9,000' TVD | All | Operating Rights | 50.00000% |
| G10930 | UNIT | Viosca Knoll | 251 | depths below the stratigraphic equivalent of the subsea depth of 15,083 to and including 99,999' as encountered in Samedan Oil Corporation's OCS-G 13982 #1 well located in Viosca Knoll Block 252 | All | Operating Rights | 3.75000% |
| G10933 | UNIT | Viosca Knoll | 340 | depths below the stratigraphic equivalent of the subsea depth of 15,083 to and including 99,999' as encountered in Samedan Oil Corporation's OCS-G 13982 #1 well located in Viosca Knoll Block 252 | All | Operating Rights | 3.75000% |
| G07898 | TERMIN | Viosca Knoll | 693 | 11,636' TVDSS to 99,999' TVDSS | All | Operating Rights | 28.45078% |
| G13055 | TERMIN | Viosca Knoll | 694 | 10,774' TVDSS to 99,999' TVDSS | W/2, NE/4 and N/2SE/4 | Operating Rights | 26.53745% |
| G13055 | TERMIN | Viosca Knoll | 694 | 11,714' TVDSS to 99,999' TVDSS | S/2SE/4 | Operating Rights | 26.53745% |
| G15050 | PROD | West Cameron | 33 | 15,055' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G02825 | PROD | West Cameron | 65 | all depths below the stratigraphic equivalent of 13,679' as seen in the OCS-G 02825 Well No. 4, down to a vertical depth of 99,999' | E/2E/2SW/4; W/2W/2SE/4; and E/2SW/4SE/5 | Operating Rights | 100.00000% |
| G02825 | PROD | West Cameron | 65 | depths below 100' below the stratigraphic equivalent of the base of the IT Sand as present in The Continental Oil Company's West Cameron Block 66 B-14 Well at a measured depth of 9,580 feet on the ISF-Sonic Log down to 99,999 feet TVDSS | NE/4 | Operating Rights | 81.25000% |
| G23735 | PROD | West Cameron | 72 | 15,126' TVDSS to 99,999' TVDSS | All | Operating Rights | 12.50000% |
| 247 | TERMIN | West Cameron | 102 | 14,150' TVD to 99,999' TVDSS | N/2SW/4NW/4, NW/4SE/4NW/4 | Operating Rights | 100.00000% |
| 81 | PROD | West Cameron | 110 | all depths below 15,000' (TVDSS) down to 99,999' (TVDSS) | All | Operating Rights | 18.75000% |
| 82 | PROD | West Cameron | 111 | below 15,000' (TVDSS) down to 99,999' (TVDSS) | SE/4 | Operating Rights | 18.75000% |
| G04818 | TERMIN | West Cameron | 290 | 13,500' TVD to 50,000' TVD | All | Operating Rights | 8.33334% |
| 680 | PROD | West Cameron | 20 | 13,500' TVD to 50,000' TVD | All | Operating Rights | 25.00000% |
| G02826 | PROD | West Cameron | 66 | 13,590' to 99,999' | W1/2; N1/2SE1/4 | Operating Rights | 37.50000% |
| G02826 | PROD | West Cameron | 66 | 9,216' to 99,999' | S1/2SE1/4 | Operating Rights | 75.00000% |
| 179 | UNIT | West Delta | 67 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | S/2 | Operating Rights | 18.75000% |
| 180 | UNIT | West Delta | 68 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | S/2 | Operating Rights | 18.75000% |
| 181 | UNIT | West Delta | 69 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| 182 | UNIT | West Delta | 70 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| 838 | UNIT | West Delta | 71 | depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| G01085 | PROD | West Delta | 75 | 17,844' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G01089 | PROD | West Delta | 90 | 13,199' TVDSS to 99,999' TVDSS | N/2 and N/2S/2 | Operating Rights | 50.00000% |
| G01089 | PROD | West Delta | 90 | 13,199' TVDSS to 99,999' TVDSS | S/2S/2 | Operating Rights | 40.62500% |
| 839 | PROD | West Delta | 94 | 13,159' TVDSS to 99,999% TVDSS | All | Operating Rights | 37.50000% |
| G01497 | PROD | West Delta | 95 | 13,601' TVDSS to 99,999' TVDSS | N/2, N/2N/2SE/4, N/2SE/4 and N/2SW/4SW/4 | Operating Rights | 37.50000% |
| G12360 | PROD | West Delta | 103 | 13,279' TVDSS to 99,999' TVDSS | NW/4NW/4, NE/4NW/4, N/2N/2SW/4NW/4, N/2NW/4NE/4, N/2S/2NW/4NE/4, N/2N/2NE/4NE/4 | Operating Rights | 40.62500% |
| 840 | PROD | West Delta | 103 | 13,279' TVDSS to 99,999' TVDSS | S/2, S/2NE/4, SE/4NW/4, S/2SW/4NW/4, S/2NE/4NE/4, S/2N/2NE/4NE/4, S/2S/2NW/4NE/4 and S/2N/2SW/4NW/4 | Operating Rights | 50.00000% |
| 841 | PROD | West Delta | 104 | 11,970' TVDSS to 99,999' TVDSS | NW/4, N2NE4, SW4NE4 and N2SE4NE4 | Operating Rights | 50.00000% |
| 842 | PROD | West Delta | 105 | 12,149' TVDSS to 99,999' TVDSS | N2S2N2 | Operating Rights | 50.00000% |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| BRAZOS 491 #004 | BA49100400 | G06069 | 427044034300 |
| BRAZOS 491 #005 | BA49100500 | G06069 | 427044035700 |
| BRAZOS 491 #A001 | BA491A0100 | G06069 | 427044018200 |
| BRAZOS 491 #A002 | BA491A0200 | G06069 | 427044018300 |
| BRAZOS 491 #A003 | BA491A0300 | G06069 | 427044032900 |
| BRAZOS A-105 #B001 | BAA105B010 | G01757 | 427054012200 |
| BRAZOS A-105 #B002 | BAA105B020 | G01757 | 427054012600 |
| BRAZOS A-105 #B003 | BAA105B030 | G01757 | 427054012800 |
| BRAZOS A-105 #B004 | BAA105B040 | G01757 | 427054013000 |
| BRAZOS A-105 #B005 | BAA105B050 | G01757 | 427054013300 |
| BRAZOS A-133 #A001 | BAA133A010 | G02665 | 427054002400 |
| BRAZOS A-133 #A002 | BAA133A020 | G02665 | 427054003300 |
| BRAZOS A-133 #A003 | BAA133A030 | G02665 | 427054003500 |
| BRAZOS A-133 #A004 ST1 | BAA133A041 | G02665 | 427054004301 |
| BRAZOS A-133 #A005 ST1 | BAA133A051 | G02665 | 427054004001 |
| BRAZOS A-133 #A006 | BAA133A060 | G02665 | 427054004500 |
| BRAZOS A-133 #A007 | BAA133A070 | G02665 | 427054004800 |
| BRAZOS A-133 #A008 | BAA133A080 | G02665 | 427054005200 |
| BRAZOS A-133 #A009 | BAA133A090 | G02665 | 427054005400 |
| BRAZOS A-133 #A010 | BAA133A100 | G02665 | 427054013100 |
| BRAZOS A-133 #C001 | BAA133C010 | G02665 | 427054007800 |
| BRAZOS A-133 #C002 | BAA133C020 | G02665 | 427054008200 |
| BRAZOS A-133 #C003 | BAA133C030 | G02665 | 427054010700 |
| BRAZOS A-133 #C004 | BAA133C040 | G02665 | 427054013500 |
| BRAZOS A-133 #D001 ST1 | BAA133D011 | G02665 | 427054009201 |
| BRAZOS A-133 #D003 | BAA133D030 | G02665 | 427054012700 |
| CHANDELEUR 042 #A002 | CA042A0200 | G32267 | 177294001500 |
| CHANDELEUR 043 #A001 | CA043A0100 | G32268 | 177294001400 |
| CHANDELEUR 043 #A003 | CA043A0300 | G32268 | 177294001600 |
| EAST CAMERON 002 #001 SL 18121 | SL18121010 | 18121 | 177032013600 |
| EAST CAMERON 002 #001AL 16475 | SL16475010 | 16475 | 177032012000 |
| EAST CAMERON 002 #002AL 16475 | SL16475020 | 16475 | 177032012200 |
| EAST CAMERON 002 #003 SL16475 | SL16475030 | 16475 | 177032012300 |
| EAST CAMERON 002 #004AL 16475 | SL16475040 | 16475 | 177032012400 |
| EAST CAMERON 002 #005AL 16475 | SL16475050 | 16475 | 177032012500 |
| EAST CAMERON 009 #B009 | EC009B0900 | G01440 | 177032004300 |
| EAST CAMERON 014 #012 | EC01401200 | G01440 | 177034060600 |
| EAST CAMERON 014 #013 | EC01401300 | G01440 | 177034101300 |
| EAST CAMERON 014 #B006 | EC014B0600 | G01440 | 177032003700 |
| EAST CAMERON 014 #B007 | EC014B0700 | G01440 | 177032004000 |
| EAST CAMERON 014 #B008 | EC014B0800 | G01440 | 177032004200 |
| EAST CAMERON 014 #B010 ST1 | EC014B1001 | G01440 | 177032004601 |
| EAST CAMERON 014 #B011 | EC014B1100 | G01440 | 177034006900 |
| EAST CAMERON 014 #B013 | EC014B13 | G13572 | 177034094700 |
| EAST CAMERON 014 #CF001 | EC014CF010 | G01440 | 177030032800 |
| EAST CAMERON 014 #CF002 | EC014CF020 | G13572 | 177034068600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 037 #A002 | EC037A0200 | G25933 | 177034101700 |
| EAST CAMERON 265 #D001 | EC265D0100 | G00972 | 177044105100 |
| EAST CAMERON 265 #D002 | EC265D0200 | G00972 | 177044106200 |
| EAST CAMERON 265 #D003 | EC265D0300 | G00972 | 177044106300 |
| EAST CAMERON 265 #D004 | EC265D0400 | G00972 | 177044106400 |
| EAST CAMERON 265 #D005 | EC265D0500 | G00972 | 177044106500 |
| EAST CAMERON 278 #B009 | EC278B0900 | G00974 | 177044071700 |
| EAST CAMERON 278 #C001 | EC278C0100 | G00974 | 177044058500 |
| EAST CAMERON 278 #C002 | EC278C0204 | G00974 | 177044070000 |
| EAST CAMERON 278 #C003 | EC278C0300 | G00974 | 177044071800 |
| EAST CAMERON 278 #C004 ST2 | EC278C0401 | G00974 | 177044072101 |
| EAST CAMERON 278 #C005 | EC278C0500 | G00974 | 177044069700 |
| EAST CAMERON 278 #C006 | EC278C0600 | G00974 | 177044071400 |
| EAST CAMERON 278 #C007 | EC278C0700 | G00974 | 177044094800 |
| EAST CAMERON 278 #C008 | EC278C0800 | G00974 | 177044109800 |
| EAST CAMERON 278 #C009 | EC278C0900 | G00974 | 177044109901 |
| EAST CAMERON 338 #A002 | EC338A0200 | G02063 | 177044024700 |
| EAST CAMERON 338 #A003 | EC338A0300 | G02063 | 177044025000 |
| EAST CAMERON 338 #A011 | EC338A1100 | G02063 | 177044028800 |
| EAST CAMERON 338 #A015 | EC338A1500 | G02063 | 177044032000 |
| EAST CAMERON 338 #A016 | EC338A1601 | G02063 | 177044034601 |
| EAST CAMERON 338 #A022 | EC338A2200 | G02063 | 177044025101 |
| EUGENE IS 053 #008D | EI053008D0 | 00479 | 177094086200 |
| EUGENE IS 053 #009 | EI05300900 | 00479 | 177094094000 |
| EUGENE IS 053 #010 ST1 | EI05301001 | 00479 | 177094113001 |
| EUGENE IS 053 #012 ST1 | EI05301201 | 00479 | 177094115301 |
| EUGENE IS 053 #015 BP1 | EI05301501 | 00479 | 177094127601 |
| EUGENE IS 053 #B001D | EI053B01D0 | 00479 | 177094085900 |
| EUGENE IS 053 #C001 | EI053C0101 | 00479 | 177094121101 |
| EUGENE IS 053 #C002 | EI053C0200 | 00479 | 177094122600 |
| EUGENE IS 053 #G001 ST1 | EI053G01D2 | 00479 | 177094144201 |
| EUGENE IS 119 #030 ST1 | EI11903001 | 00049 | 177094079801 |
| EUGENE IS 119 #033 ST2 | EI11903302 | 00049 | 177094117002 |
| EUGENE IS 119 #034 | EI11903400 | 00049 | 177094118700 |
| EUGENE IS 119 #035 ST1 | EI11903501 | 00049 | 177094120301 |
| EUGENE IS 119 #037 ST1 | EI11903701 | 00049 | 177094129001 |
| EUGENE IS 119 #F001D | EI119F01D0 | 00049 | 177090026700 |
| EUGENE IS 119 #F002 ST1 | EI119F0201 | 00049 | 177090026801 |
| EUGENE IS 119 #F003 | EI119F0300 | 00049 | 177090026900 |
| EUGENE IS 119 #F005 ST1 | EI119F0501 | 00049 | 177090027101 |
| EUGENE IS 119 #F006 | EI119F0600 | 00049 | 177090027200 |
| EUGENE IS 119 #F007 | EI119F0700 | 00049 | 177094137900 |
| EUGENE IS 119 #F008 ST1 | EI119F0801 | 00049 | 177094138401 |
| EUGENE IS 119 #K001 | EI119K0100 | 00049 | 177090028900 |
| EUGENE IS 119 #K002 | EI119K0200 | 00049 | 177090029000 |
| EUGENE IS 119 #K003 | EI119K0300 | 00049 | 177090029100 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 119 #K004 | EI119K0400 | 00049 | 177090029200 |
| EUGENE IS 119 #K005 | EI119K0500 | 00049 | 177090029300 |
| EUGENE IS 119 #K006 | EI119K0600 | 00049 | 177090029400 |
| EUGENE IS 119 #K007 | EI119K0700 | 00049 | 177090029500 |
| EUGENE IS 119 #M004 | EI119M0400 | 00049 | 177090029900 |
| EUGENE IS 119 #M007 | EI119M0700 | 00049 | 177092009000 |
| EUGENE IS 120 #009 ST1 | EI12000901 | 00050 | 177094026101 |
| EUGENE IS 120 #011 | EI12001100 | 00050 | 177094078000 |
| EUGENE IS 120 #012 ST1 | EI12001201 | 00050 | 177094113901 |
| EUGENE IS 120 #013 | EI12001300 | 00050 | 177094114100 |
| EUGENE IS 120 #014 | EI12001400 | 00050 | 177094115200 |
| EUGENE IS 120 #015 ST2 | EI12001502 | 00050 | 177094116702 |
| EUGENE IS 120 #017 | EI12001700 | 00050 | 177094121700 |
| EUGENE IS 120 #019 ST2 | EI12001902 | 00050 | 177094126102 |
| EUGENE IS 120 #020 | EI12002000 | 00050 | 177094138300 |
| EUGENE IS 120 #I008 | EI120I0800 | 00050 | 177094137000 |
| EUGENE IS 125 #002B ST2 | EI125002B2 | 00051 | 177090022902 |
| EUGENE IS 125 #A003 ST1 | EI125A0301 | 00051 | 177090022601 |
| EUGENE IS 125 #R001 | EI125R0100 | 00051 | 177094080201 |
| EUGENE IS 125 #R002 | EI125R0201 | 00051 | 177094141301 |
| EUGENE IS 126 #012 | EI12601201 | 00052 | 177094131501 |
| EUGENE IS 126 #031 ST2 | EI12603102 | 00052 | 177094086702 |
| EUGENE IS 126 #A002 | EI126A0200 | 00052 | 177090022500 |
| EUGENE IS 126 #A004D | EI126A04D0 | 00052 | 177090022700 |
| EUGENE IS 126 #A005 | EI126A0501 | 00052 | 177094092903 |
| EUGENE IS 126 #A006 | EI126A0600 | 00052 | 177094151000 |
| EUGENE IS 136 #001 | EI13600100 | G03152 | 177094115700 |
| EUGENE IS 136 #JA001 | EI136JA100 | G03152 | 177094028300 |
| EUGENE IS 136 #JA002 | EI136JA200 | G03152 | 177094117501 |
| EUGENE IS 136 #JA003 BP1 | EI136JA301 | G03152 | 177094140601 |
| EUGENE IS 136 #JA004 | EI136JA400 | G03152 | 177094151101 |
| EUGENE IS 158 #014B | EI158014B0 | G01220 | 177090094300 |
| EUGENE IS 158 #016 | EI15801600 | G01220 | 177092000402 |
| EUGENE IS 158 #017A | EI158017A0 | G01220 | 177092000900 |
| EUGENE IS 158 #027 ST1 | EI15802701 | G01220 | 177092006501 |
| EUGENE IS 158 #028 ST1BP1 | EI15802802 | G01220 | 177092009702 |
| EUGENE IS 158 #029 | EI15802900 | G01220 | 177092008200 |
| EUGENE IS 158 #032 | EI15803200 | G01220 | 177094111400 |
| EUGENE IS 158 #034 | EI15803400 | G01220 | 177094147600 |
| EUGENE IS 158 #B003A | EI158B03A2 | G01220 | 177090066202 |
| EUGENE IS 158 #B004B | EI158B04B0 | G01220 | 177090063700 |
| EUGENE IS 158 #B005E | EI158B05E0 | G01220 | 177090070400 |
| EUGENE IS 158 #B007 | EI158B0703 | G01220 | 177090094803 |
| EUGENE IS 158 #B008 | EI158B0800 | G01220 | 177092001500 |
| EUGENE IS 158 #B010F | EI158B1100 | G01220 | 177092001800 |
| EUGENE IS 158 #B011 ST2 | EI158B1102 | G01220 | 177094104902 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 158 #B012 | EI158B1200 | G01220 | 177094105000 |
| EUGENE IS 158 #B013 | EI158B1302 | G01220 | 177094143502 |
| EUGENE IS 158 #C001 | EI158C0100 | G01220 | 177092014700 |
| EUGENE IS 158 #C002 | EI158C0200 | G01220 | 177092015200 |
| EUGENE IS 158 #C003C | EI158C03C0 | G01220 | 177092015300 |
| EUGENE IS 158 #C005A | EI158C05A0 | G01220 | 177094002200 |
| EUGENE IS 158 #C006 | EI158C0600 | G01220 | 177094001900 |
| EUGENE IS 158 #C007F | EI158C07F0 | G01220 | 177094004700 |
| EUGENE IS 158 #C008C | EI158C08C0 | G01220 | 177094005100 |
| EUGENE IS 158 #C009 | EI158C0900 | G01220 | 177094005700 |
| EUGENE IS 158 #C010B | EI158C10B0 | G01220 | 177094006000 |
| EUGENE IS 158 #C011A | EI158C11A0 | G01220 | 177094006300 |
| EUGENE IS 158 #C012D | EI158C12D0 | G01220 | 177094007100 |
| EUGENE IS 158 #C013D | EI158C13D0 | G01220 | 177094008000 |
| EUGENE IS 158 #C014 | EI158C1400 | G01220 | 177094008100 |
| EUGENE IS 158 #JB008 | EI158JB801 | G01220 | 177090091401 |
| EUGENE IS 158 #JB009 | EI158JB900 | G01220 | 177090090200 |
| EUGENE IS 158 #JB013 | EI158JB130 | G01220 | 177090094102 |
| EUGENE IS 158 #JB019 | EI158JB190 | G01220 | 177092002101 |
| EUGENE IS 158 #JB022 | EI158JB220 | G01220 | 177092003300 |
| EUGENE IS 158 #JB024 | EI158JB240 | G01220 | 177092003900 |
| EUGENE IS 158 #JB030 (D04) | EI158JB300 | G01220 | 177094100300 |
| EUGENE IS 158 #JB033 | EI158JB330 | G01220 | 177094111100 |
| EUGENE IS 173 #G002 | EI173G0200 | G13622 | 177094074701 |
| EUGENE IS 174 #A010 | EI174A1000 | G03782 | 177094101100 |
| EUGENE IS 174 #G001 ST1 | EI174G0101 | G03782 | 177094065601 |
| EUGENE IS 174 #G003 ST2 | EI174G0302 | G03782 | 177094084402 |
| EUGENE IS 174 #G004 ST1 | EI174G0402 | G03782 | 177094116502 |
| EUGENE IS 175 #D006 ST1 | EI175D0601 | 00438 | 177094003301 |
| EUGENE IS 175 #D008 | EI175D0800 | 00438 | 177094003900 |
| EUGENE IS 175 #D009 ST1 | EI175D0901 | 00438 | 177094005401 |
| EUGENE IS 175 #D012 ST | EI175D1201 | 00438 | 177094010601 |
| EUGENE IS 175 #D021 ST3 | EI175D2103 | 00438 | 177092012603 |
| EUGENE IS 175 #F001 ST1 | EI175F0101 | 00438 | 177094035401 |
| EUGENE IS 175 #F002 ST1 | EI175F0201 | 00438 | 177094039601 |
| EUGENE IS 175 #F003 ST | EI175F0302 | 00438 | 177094039702 |
| EUGENE IS 175 #F004 ST | EI175F0401 | 00438 | 177094041001 |
| EUGENE IS 175 #F005 | EI175F0500 | 00438 | 177094042900 |
| EUGENE IS 175 #F007 | EI175F0700 | 00438 | 177094048900 |
| EUGENE IS 175 #F009 | EI175F0901 | 00438 | 177094087601 |
| EUGENE IS 175 #H001 | EI175H0100 | 00438 | 177094104700 |
| EUGENE IS 175 #H002 | EI175H0200 | 00438 | 177094106700 |
| EUGENE IS 175 #H003 | EI175H0300 | 00438 | 177094110800 |
| EUGENE IS 175 #H004 | EI175H0400 | 00438 | 177094110900 |
| EUGENE IS 175 #H005 ST1BP1 | EI175H0502 | 00438 | 177094112002 |
| EUGENE IS 175 #I002 | EI175I0201 | 00438 | 177094107101 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 175 #I003 | EI175I0300 | 00438 | 177094107200 |
| EUGENE IS 175 #I004 | EI175I0400 | 00438 | 177094109200 |
| EUGENE IS 175 #I005 | EI175I0500 | 00438 | 177094109300 |
| EUGENE IS 175 #J001 ST1 | EI175J0101 | 00438 | 177094122301 |
| EUGENE IS 175 #J002 ST1 | EI175J0201 | 00438 | 177094123201 |
| EUGENE IS 175 #J003 ST1 | EI175J0301 | 00438 | 177094123501 |
| EUGENE IS 175 #J004 | EI175J0400 | 00438 | 177094128300 |
| EUGENE IS 187 #002 | EI18700200 | G10736 | 177094151601 |
| EUGENE IS 187 #JC001 | EI187JC101 | G10736 | 177094091101 |
| EUGENE IS 187 #JD001 | EI187JD201 | G10736 | 177094092801 |
| EUGENE IS 187 #JD002 | EI187JD200 | G10736 | 177094131900 |
| EUGENE IS 187 #JE002 | EI187JE020 | G10736 | 177094109700 |
| EUGENE IS 188 #JE001 | EI188JE100 | 00443 | 177094096500 |
| EUGENE IS 189 #020 | EI18902000 | 00423 | 177094099500 |
| EUGENE IS 189 #B001 | EI189B0100 | 00423 | 177090062500 |
| EUGENE IS 189 #B003 ST1 | EI189B0300 | 00423 | 177090062601 |
| EUGENE IS 189 #B014 | EI189B1400 | 00423 | 177090075200 |
| EUGENE IS 189 #B016B | EI189B16B3 | 00423 | 177090075103 |
| EUGENE IS 189 #B020 | EI189B2001 | 00423 | 177090079001 |
| EUGENE IS 189 #B025 | EI189B2501 | 00423 | 177090078501 |
| EUGENE IS 189 #B027 | EI189B2701 | 00423 | 177090059001 |
| EUGENE IS 211 #A003 | EI211A0300 | G05502 | 177094071500 |
| EUGENE IS 211 #A005 | EI211A0500 | G05502 | 177094083400 |
| EUGENE IS 211 #A006 | EI211A0600 | G05502 | 177094083601 |
| EUGENE IS 212 #A001 BP1 | EI212A0100 | G05503 | 177094063200 |
| EUGENE IS 212 #A002 | EI212A0200 | G05503 | 177094070700 |
| EUGENE IS 212 #A007 | EI212A0700 | G05503 | 177094097400 |
| EUGENE IS 224 #A001 | EI224A0101 | G05504 | 177094074001 |
| EUGENE IS 224 #A002 | EI224A0201 | G05504 | 177094082501 |
| EUGENE IS 224 #A003 | EI224A0300 | G05504 | 177094083200 |
| EUGENE IS 224 #A004 | EI224A0400 | G05504 | 177094089100 |
| EUGENE IS 224 #A005 | EI224A0503 | G05504 | 177094089403 |
| EUGENE IS 224 #A006 | EI224A0600 | G05504 | 177094103600 |
| EUGENE IS 224 #A007 | EI224A0700 | G05504 | 177094106800 |
| EUGENE IS 224 #A008 | EI224A0800 | G05504 | 177094111600 |
| EUGENE IS 224 #A009 | EI224A0900 | G05504 | 177094121900 |
| EUGENE IS 224 #A010 | EI224A1000 | G05504 | 177094135200 |
| EUGENE IS 224 #C001 | EI224C01 | G05504 | 177094112501 |
| EUGENE IS 224 #G002 (ORRI) | EI224G02 | G05504 | 177094150801 |
| EUGENE IS 224 #SS006 (ORRI) | EI224SS06 | G05504 | 177094149000 |
| EUGENE IS 312 #D001 | EI312D0100 | G22679 | 177104160900 |
| EUGENE IS 312 #D002 | EI312D0200 | G22679 | 177104161900 |
| EUGENE IS 315 #A001 ST1 | EI315A0101 | G02112 | 177104099001 |
| EUGENE IS 315 #A003 | EI315A0300 | G02112 | 177104099500 |
| EUGENE IS 315 #A005 | EI315A0500 | G02112 | 177104099800 |
| EUGENE IS 315 #A006 | EI315A0600 | G02112 | 177104101700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 315 #A007 ST1 | EI315A0701 | G02112 | 177104103001 |
| EUGENE IS 315 #A010 | EI315A1000 | G02112 | 177104103700 |
| EUGENE IS 315 #A012 | EI315A1200 | G02112 | 177104104000 |
| EUGENE IS 315 #A016 | EI315A1600 | G02112 | 177104127000 |
| EUGENE IS 315 #A017 | EI315A1700 | G02112 | 177104152000 |
| EUGENE IS 315 #C001 (TANA) | EI315C0100 | G24912 | 177104160800 |
| EUGENE IS 315 #C002 (TANA) | EI315C0200 | G24912 | 177104162300 |
| EUGENE IS 316 #A001 | EI316A0101 | G05040 | 177104100701 |
| EUGENE IS 316 #A002 ST1 | EI316A0200 | G05040 | 177104106400 |
| EUGENE IS 316 #A003 ST3 | EI316A0302 | G05040 | 177104111302 |
| EUGENE IS 316 #A005 ST5 | EI316A0505 | G05040 | 177104112905 |
| EUGENE IS 316 #A007 | EI316A0700 | G05040 | 177104117000 |
| EUGENE IS 316 #A008 | EI316A0800 | G05040 | 177104117300 |
| EUGENE IS 316 #A010 | EI316A1000 | G05040 | 177104118300 |
| EUGENE IS 316 #A011 | EI316A1100 | G05040 | 177104137500 |
| EUGENE IS 316 #A012 | EI316A1200 | G05040 | 177104138400 |
| EUGENE IS 316 #A013 ST1 (S01) | EI316A13S1 | G05040 | 177104107601 |
| EUGENE IS 329 #A002 | EI329A0200 | G02912 | 177104099101 |
| EUGENE IS 329 #A004 | EI329A0400 | G02912 | 177104099400 |
| EUGENE IS 329 #A008 | EI329A0800 | G02912 | 177104103500 |
| EUGENE IS 329 #A011 | EI329A1100 | G02912 | 177104103800 |
| EUGENE IS 329 #A014 | EI329A1400 | G02912 | 177104106800 |
| EUGENE IS 329 #A015 | EI329A1500 | G02912 | 177104108001 |
| EUGENE IS 329 #A018 | EI329A1800 | G02912 | 177104151700 |
| EUGENE IS 330 #B001 | EI330B0101 | G02115 | 177104004301 |
| EUGENE IS 330 #B003 ST1 | EI330B0301 | G02115 | 177104008001 |
| EUGENE IS 330 #B004 ST1 | EI330B0401 | G02115 | 177104008701 |
| EUGENE IS 330 #B005 ST2 | EI330B0502 | G02115 | 177104009502 |
| EUGENE IS 330 #B006 ST3 | EI330B0603 | G02115 | 177104010503 |
| EUGENE IS 330 #B007 ST1 | EI330B0701 | G02115 | 177104011601 |
| EUGENE IS 330 #B008 ST1 LF | EI330B0801 | G02115 | 177104013001 |
| EUGENE IS 330 #B009 ST1 | EI330B0901 | G02115 | 177104016301 |
| EUGENE IS 330 #B010 ST1 | EI330B1001 | G02115 | 177104017101 |
| EUGENE IS 330 #B011 | EI330B1100 | G02115 | 177104025200 |
| EUGENE IS 330 #B012 ST1 | EI330B1201 | G02115 | 177104021001 |
| EUGENE IS 330 #B014 ST1 | EI330B1401 | G02115 | 177104027401 |
| EUGENE IS 330 #B015 ST1 | EI330B1501 | G02115 | 177104028601 |
| EUGENE IS 330 #B016 ST1 | EI330B1601 | G02115 | 177104030201 |
| EUGENE IS 330 #B018 | EI330B1800 | G02115 | 177104031200 |
| EUGENE IS 330 #D001 | EI330D0100 | G02115 | 177104105600 |
| EUGENE IS 330 #D002 | EI330D0200 | G02115 | 177104116900 |
| EUGENE IS 330 #D003 ST2 | EI330D0302 | G02115 | 177104117802 |
| EUGENE IS 330 #D004 | EI330D0400 | G02115 | 177104118400 |
| EUGENE IS 330 #D005 ST1 | EI330D0502 | G02115 | 177104118702 |
| EUGENE IS 330 #D006 ST | EI330D0602 | G02115 | 177104119102 |
| EUGENE IS 330 #D008 ST1 | EI330D0801 | G02115 | 177104119602 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 330 #D009 ST1 | EI330D0901 | G02115 | 177104138201 |
| EUGENE IS 330 #D011 | EI330D1100 | G02115 | 177104138700 |
| EUGENE IS 330 #D012 ST1 | EI330D1201 | G02115 | 177104138801 |
| EUGENE IS 330 #D013 | EI330D1301 | G02115 | 177104164301 |
| EUGENE IS 330 #D014 | EI330D1401 | G02115 | 177104164401 |
| EUGENE IS 330 #D015 | EI330D1500 | G02115 | 177104164500 |
| EUGENE IS 330 #D016 | EI330D1602 | G02115 | 177104164702 |
| EUGENE IS 330 #D017 | EI330D1700 | G02115 | 177104164800 |
| EUGENE IS 330 #D018 | EI330D1801 | G02115 | 177104165101 |
| EUGENE IS 330 #D019 | EI330D1900 | G02115 | 177104165200 |
| EUGENE IS 330 #D020 | EI330D2000 | G02115 | 177104165300 |
| EUGENE IS 333 #B012 | EI333B1200 | G02317 | 177104145204 |
| EUGENE IS 334 #B013 ST1 | EI334B1301 | G15263 | 177104152201 |
| EUGENE IS 334 #D001 BP1 | EI334D0100 | G15263 | 177104159300 |
| EUGENE IS 334 #D003 BP1 | EI334D0301 | G15263 | 177104161401 |
| EUGENE IS 337 #A001 ST2 | EI337A0102 | G03332 | 177104054002 |
| EUGENE IS 337 #A003 ST1 | EI337A0301 | G03332 | 177104101101 |
| EUGENE IS 337 #A005 ST1 | EI337A0501 | G03332 | 177104102201 |
| EUGENE IS 337 #A007 | EI337A0700 | G03332 | 177104104600 |
| EUGENE IS 337 #A008 ST2 | EI337A0802 | G03332 | 177104104902 |
| EUGENE IS 337 #A010 | EI337A1000 | G03332 | 177104161000 |
| EUGENE IS 337 #A011 | EI337A1103 | G03332 | 177104163803 |
| EUGENE IS 342 #004 | EI34200400 | G02319 | 177104113000 |
| EUGENE IS 342 #C002 ST1 | EI342C0201 | G02319 | 177104110601 |
| EUGENE IS 342 #C003 | EI342C0300 | G02319 | 177104114000 |
| EUGENE IS 342 #C004 | EI342C0401 | G02319 | 177104120101 |
| EUGENE IS 342 #C005 | EI342C0502 | G02319 | 177104120202 |
| EUGENE IS 342 #C006 | EI342C0600 | G02319 | 177104120300 |
| EUGENE IS 342 #C007 | EI342C0700 | G02319 | 177104120800 |
| EUGENE IS 342 #C008 | EI342C0800 | G02319 | 177104121000 |
| EUGENE IS 342 #C009 | EI342C0900 | G02319 | 177104121300 |
| EUGENE IS 342 #C010 | EI342C1000 | G02319 | 177104121500 |
| EUGENE IS 342 #C011 | EI342C1100 | G02319 | 177104122000 |
| EUGENE IS 342 #C012 | EI342C1200 | G02319 | 177104122200 |
| EUGENE IS 342 #C013 | EI342C1300 | G02319 | 177104122700 |
| EUGENE IS 342 #C014 | EI342C1400 | G02319 | 177104135800 |
| EUGENE IS 342 #C015 | EI342C1501 | G02319 | 177104162101 |
| EUGENE IS 342 #C016 | EI342C1601 | G02319 | 177104162201 |
| EUGENE IS 342 #C017 BP1 | EI342C1701 | G02319 | 177104162501 |
| EUGENE IS 345 #A004 | EI345A0401 | G21647 | 177104159201 |
| EUGENE IS 346 #004 | EI34600400 | G14482 | 177104150500 |
| EUGENE IS 346 #005 | EI34600500 | G14482 | 177104151900 |
| EUGENE IS 346 #A001 | EI346A0100 | G14482 | 177104149101 |
| EUGENE IS 346 #A002 ST3 | EI346A0203 | G14482 | 177104149603 |
| EUGENE IS 346 #A003 | EI346A0300 | G14482 | 177104155100 |
| EUGENE IS 346 #B001 (ORRI) | EI346B0100 | G14482 | 177104161700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 346 #B003 (ORRI) | EI346B0300 | G14482 | 177104162800 |
| EUGENE IS 353 #D017 ST2 | EI353D1702 | G03783 | 177104143402 |
| EUGENE IS 353(354) #D3 ST | EI353D0300 | G03783 | 177104138501 |
| EUGENE IS 354 #A006 | EI354A0602 | G10752 | 177104104302 |
| EUGENE IS 354 #D001 | EI354D0101 | G10752 | 177104142101 |
| EUGENE IS 354 #D002 | EI354D0200 | G10752 | 177104138100 |
| EUGENE IS 354 #D004 | EI354D0400 | G10752 | 177104142900 |
| EUGENE IS 354 #D005 | EI354D0500 | G10752 | 177104142800 |
| EUGENE IS 354 #D006 | EI354D0600 | G10752 | 177104143500 |
| EUGENE IS 354 #D008 | EI354D0800 | G10752 | 177104144000 |
| EUGENE IS 354 #D009 ST4 | EI354D0904 | G10752 | 177104145604 |
| EUGENE IS 354 #D010 | EI354D1000 | G10752 | 177104144700 |
| EUGENE IS 354 #D011 | EI354D1100 | G10752 | 177104144900 |
| EUGENE IS 354 #D012 | EI354D1200 | G10752 | 177104146400 |
| EUGENE IS 354 #D014 ST1 | EI354D1401 | G02324 | 177104147201 |
| EUGENE IS 354 #D015 | EI354D1500 | G10752 | 177104147700 |
| EUGENE IS 354 #D016 ST1 | EI354D1601 | G10752 | 177104147901 |
| EUGENE IS 361 #A001 | EI361A0100 | G02324 | 177104095200 |
| EUGENE IS 361 #A002 | EI361A0200 | G02324 | 177104095600 |
| EUGENE IS 361 #A006 | EI361A0600 | G02324 | 1771040979 |
| EUGENE IS 361 #A007 | EI361A0700 | G02324 | 177104098500 |
| EUGENE IS 361 #A008 | EI361A0800 | G02324 | 1771040992 |
| EUGENE IS 361 #A010 | EI361A1000 | G02324 | 1771041012 |
| EUGENE IS 361 #A011 | EI361A1102 | G02324 | 177104103402 |
| EUGENE IS 361 #A013 | EI361A1300 | G02324 | 177104104400 |
| EUGENE IS 361 #A014 | EI361A1400 | G02324 | 177104104700 |
| EUGENE IS 361 #A015 | EI361A1500 | G02324 | 177104105300 |
| EUGENE IS 361 #A016 | EI361A1600 | G02324 | 1771041057 |
| EUGENE IS 361 #A017 | EI361A1700 | G02324 | 177104105800 |
| EUGENE IS 361 #A018 | EI361A1800 | G02324 | 177104106600 |
| EUGENE IS 361 #A019 | EI361A1900 | G02324 | 177104107500 |
| EUGENE IS 361 #A020 | EI361A2000 | G02324 | 1771041079 |
| EUGENE IS 361 #A021 | EI361A2101 | G02324 | 177104108101 |
| EUGENE IS 361 #A022 | EI361A2200 | G02324 | 177104144600 |
| EUGENE IS 361 #A023 | EI361A2300 | G02324 | 1771041454 |
| EUGENE IS 361 #A024 | EI361A2400 | G02324 | 177104157900 |
| EUGENE IS 361 #C003 | EI361C0300 | G02324 | 177104112401 |
| EUGENE IS 361 #C012 | EI361C1202 | G02324 | 177104118002 |
| EUGENE IS 361 #C015 | EI361C1500 | G02324 | 177104119500 |
| EUGENE IS 361 #C016 | EI361C1600 | G02324 | 177104119800 |
| EUGENE IS 361 #D001 | EI361D0102 | G02324 | 177104111102 |
| EUGENE IS 361 #D004 | EI361D0400 | G02324 | 1771041135 |
| EUGENE IS 361 #D010 | EI361D1000 | G02324 | 1771041171 |
| EUGENE IS 361 #D014 | EI361D1400 | G02324 | 1771041193 |
| EUGENE IS 361 #D015 | EI361D1501 | G02324 | 177104134601 |
| EUGENE IS 361 #D017 | EI361D1701 | G02324 | 177104152401 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EWING BANK 782 #A011 ST1 EW826 | EW782A1101 | G31470 | 608105002901 |
| EWING BANK 782 #A022 (EW826) | EW782A2200 | G31470 | 608104014400 |
| EWING BANK 782 #A026 | EW782A2600 | G31470 | 608104015003 |
| EWING BANK 826 #A001 | EW826A0100 | G05800 | 608105000100 |
| EWING BANK 826 #A002 ST2 | EW826A0202 | G05800 | 608105000202 |
| EWING BANK 826 #A003 ST2 | EW826A0302 | G05800 | 608105000402 |
| EWING BANK 826 #A004 | EW826A0400 | G05800 | 608105000500 |
| EWING BANK 826 #A005 ST3 | EW826A0503 | G05800 | 608105001303 |
| EWING BANK 826 #A006 | EW826A0600 | G05800 | 608105001200 |
| EWING BANK 826 #A007 | EW826A0700 | G05800 | 608105002000 |
| EWING BANK 826 #A008 | EW826A0800 | G05800 | 608105001400 |
| EWING BANK 826 #A009 | EW826A0900 | G05800 | 608105002800 |
| EWING BANK 826 #A010 | EW826A1000 | G05800 | 608105001700 |
| EWING BANK 826 #A013 | EW826A1300 | G05800 | 608105003000 |
| EWING BANK 826 #A015 | EW826A1501 | G05800 | 608105003501 |
| EWING BANK 826 #A016 | EW826A1600 | G05800 | 608105002100 |
| EWING BANK 826 #A017 | EW826A1700 | G05800 | 608104013600 |
| EWING BANK 826 #A018 | EW826A1800 | G05800 | 608104013700 |
| EWING BANK 826 #A019 BP1 | EW826A1901 | G05800 | 608104013801 |
| EWING BANK 826 #A020 | EW826A2000 | G05800 | 608104014000 |
| EWING BANK 826 #A021 BP3 | EW826A2103 | G05800 | 608104014103 |
| EWING BANK 826 #A024 ST1 | EW826A2401 | G05800 | 608104014801 |
| GALVESTON 151 #005 | GA15100500 | G15740 | 427064044200 |
| GALVESTON 180 #A002 | GA180A0200 | G03228 | 427084005600 |
| GALVESTON 180 #A004 ST1 | GA180A0401 | G03228 | 427084005801 |
| GALVESTON 180 #A007B | GA180A7B0 | G03228 | 427084005900 |
| GALVESTON 180 #A017 | GA180A1700 | G03228 | 427084007000 |
| GALVESTON 192 #A014C | GA192A14C1 | G03229 | 427084006701 |
| GALVESTON 210 #001 | GA21000100 | G25524 | 427064044300 |
| GALVESTON 210 #002 | GA21000200 | G25524 | 427064044800 |
| GRAND ISLE 032 #U012 ST1 | GI032U1201 | 00174 | 177192014502 |
| GRAND ISLE 039 #P002 ST2 | GI039P0202 | 00127 | 177174097802 |
| GRAND ISLE 039 #Q001 ST3 | GI039Q0103 | 00127 | 177174037903 |
| GRAND ISLE 040 #E007D | GI040E07D0 | 00128 | 177170077500 |
| GRAND ISLE 040 #E009 | GI040E0900 | 00128 | 177170078700 |
| GRAND ISLE 040 #G001 | GI040G0100 | 00128 | 177170070400 |
| GRAND ISLE 040 #G002 | GI040G0200 | 00128 | 177170076200 |
| GRAND ISLE 040 #G006 | GI040G0600 | 00133 | 177174012600 |
| GRAND ISLE 040 #G010 | GI040G1000 | 00128 | 177174037200 |
| GRAND ISLE 040 #G011 | GI040G1100 | 00128 | 177174037300 |
| GRAND ISLE 040 #G013 | GI040G1300 | 00128 | 177174098600 |
| GRAND ISLE 040 #M001 | GI040M0100 | 00128 | 177174037000 |
| GRAND ISLE 040 #M002D | GI040M02D0 | 00128 | 177174038600 |
| GRAND ISLE 040 #M003 | GI040M0300 | 00128 | 177174043600 |
| GRAND ISLE 040 #O005 | GI040O0500 | 00128 | 177174097100 |
| GRAND ISLE 041 #D002 | GI041D0200 | 00129 | 177170075300 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 041 #D003 | GI041D0300 | 00129 | 177170076700 |
| GRAND ISLE 041 #D004 | GI041D0400 | 00130 | 177170080500 |
| GRAND ISLE 041 #D007 | GI041D0700 | 00129 | 177172000000 |
| GRAND ISLE 041 #D008 ST | GI041D0801 | 00130 | 177172000801 |
| GRAND ISLE 041 #D009 | GI041D0900 | 00129 | 177172001500 |
| GRAND ISLE 041 #D010ST | GI041D1000 | 00129 | 177174017801 |
| GRAND ISLE 041 #D011E | GI041D1100 | 00129 | 177174018400 |
| GRAND ISLE 041 #E001 ST1 | GI041E0101 | 00130 | 177170069401 |
| GRAND ISLE 041 #E002 ST1 | GI041E0201 | 00130 | 177170074701 |
| GRAND ISLE 041 #E003D | GI041E03D0 | 00130 | 177170075000 |
| GRAND ISLE 041 #E004 ST1 | GI041E0401 | 00130 | 177170075201 |
| GRAND ISLE 041 #E005 | GI041E0500 | 00129 | 177170075400 |
| GRAND ISLE 041 #E006D | GI041E06D0 | 00130 | 177170077300 |
| GRAND ISLE 041 #E008 | GI041E0800 | 00130 | 177170079800 |
| GRAND ISLE 041 #E010 | GI041E1001 | 00130 | 177172000301 |
| GRAND ISLE 041 #E012D | GI041E12D0 | 00130 | 177174011500 |
| GRAND ISLE 041 #E013 | GI041E1300 | 00130 | 177174012900 |
| GRAND ISLE 041 #F003 ST1 | GI041F0301 | 00129 | 177174006401 |
| GRAND ISLE 041 #F005 ST2 | GI041F0502 | 00129 | 177174017302 |
| GRAND ISLE 041 #G007 | GI041G0700 | 00130 | 177174022400 |
| GRAND ISLE 041 #G008 | GI041G0800 | 00130 | 177174026400 |
| GRAND ISLE 041 #H001 | GI041H0100 | 00130 | 177174020300 |
| GRAND ISLE 041 #H002 | GI041H0200 | 00129 | 177174028100 |
| GRAND ISLE 041 #H003 ST | GI041H0301 | 00130 | 177174028601 |
| GRAND ISLE 041 #H004 | GI041H0400 | 00130 | 177174038000 |
| GRAND ISLE 041 #H005 | GI041H0500 | 00129 | 177174038100 |
| GRAND ISLE 041 #H006 ST1 | GI041H0601 | 00129 | 177174098301 |
| GRAND ISLE 041 #H007 | GI041H0700 | 00130 | 177174098400 |
| GRAND ISLE 042 #C001 | GI042C0100 | 00131 | 177170067000 |
| GRAND ISLE 042 #C002 | GI042C0200 | 00131 | 177170072100 |
| GRAND ISLE 042 #F001 | GI042F0100 | 00131 | 177174005100 |
| GRAND ISLE 042 #F002 | GI042F0200 | 00131 | 177174006000 |
| GRAND ISLE 042 #F004 | GI042F0400 | 00131 | 177174007100 |
| GRAND ISLE 046 #001 ST1 | GI04600101 | 00132 | 177174042801 |
| GRAND ISLE 046 #G009 ST1 | GI046G0901 | 00132 | 177174026101 |
| GRAND ISLE 047 #E006 | GI047E0600 | 00133 | 177170078100 |
| GRAND ISLE 047 #E008 | GI047E0800 | 00133 | 177170079500 |
| GRAND ISLE 047 #E017 | GI047E1700 | 00133 | 177174039900 |
| GRAND ISLE 047 #G004 ST | GI047G0401 | 00133 | 177170079601 |
| GRAND ISLE 047 #G005 ST | GI047G0501 | 00133 | 177170080301 |
| GRAND ISLE 047 #G012 | GI047G1200 | 00133 | 177174037500 |
| GRAND ISLE 047 #L001 | GI047L0100 | 00133 | 177174012800 |
| GRAND ISLE 047 #L002 ST | GI047L0201 | 00133 | 177174015901 |
| GRAND ISLE 047 #L003 | GI047L0300 | 00133 | 177174020500 |
| GRAND ISLE 047 #L004 | GI047L0400 | 00133 | 177174017000 |
| GRAND ISLE 047 #L005 | GI047L0500 | 00133 | 177174017900 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 047 #L006D | GI047L0600 | 00133 | 177174036300 |
| GRAND ISLE 047 #L007 ST | GI047L0701 | 00177 | 177174039101 |
| GRAND ISLE 047 #L009 ST1 | GI047L0901 | 00133 | 177174039201 |
| GRAND ISLE 047 #L011 ST2 | GI047L1102 | 00133 | 177174039602 |
| GRAND ISLE 047 #O001 BP2 | GI047O01D3 | 00133 | 177174096102 |
| GRAND ISLE 047 #O002 | GI047O02D1 | 00133 | 177174096600 |
| GRAND ISLE 047 #O003 | GI04700300 | 00133 | 177174096700 |
| GRAND ISLE 047 #O004 | GI047O0400 | 00133 | 177174096900 |
| GRAND ISLE 047 #O006 | GI047O0600 | 00133 | 177174097200 |
| GRAND ISLE 047 #O007 ST1 | GI047O0701 | 00133 | 177174097301 |
| GRAND ISLE 047 #O008 | GI047O0800 | 00133 | 177174097600 |
| GRAND ISLE 047 #O009 | GI047O09D1 | 00133 | 177174097700 |
| GRAND ISLE 048 #E001 | GI048E0100 | 00134 | 177170045400 |
| GRAND ISLE 048 #E014 | GI048E1400 | 00134 | 177172003900 |
| GRAND ISLE 048 #E018 ST | GI048E1801 | 00134 | 177174043501 |
| GRAND ISLE 048 #J002 ST1 | GI048J0201 | 00134 | 177174003201 |
| GRAND ISLE 048 #J003 ST | GI048J0302 | 00134 | 177174004502 |
| GRAND ISLE 048 #J004 ST2 | GI048J0403 | 00134 | 177174004803 |
| GRAND ISLE 048 #J005 ST | GI048J0501 | 00134 | 177174011601 |
| GRAND ISLE 048 #J006 | GI048J0600 | 00134 | 177174012000 |
| GRAND ISLE 048 #J007 | GI048J0700 | 00134 | 177174012200 |
| GRAND ISLE 048 #J008 | GI048J0800 | 00134 | 177174016900 |
| GRAND ISLE 048 #J009 | GI048J0900 | 00134 | 177174044200 |
| GRAND ISLE 048 #J010 ST | GI048J1001 | 00134 | 177174044401 |
| GRAND ISLE 048 #P001 FKA #14 | GI048P0100 | 00134 | 177174015300 |
| GRAND ISLE 052 #L008 ST | GI052L0801 | 00177 | 177174019501 |
| GRAND ISLE 052 #L010 | GI052L1001 | 00177 | 177174043901 |
| GRAND ISLE 052 #L012 | GI052L1200 | 00177 | 177174044604 |
| GRAND ISLE 076 #A001 | GI076A0100 | G02161 | 177174004600 |
| GRAND ISLE 076 #A002 | GI076A0200 | G02161 | 177174004700 |
| GRAND ISLE 076 #A003 | GI076A0300 | G02161 | 177174004900 |
| GRAND ISLE 076 #A005 | GI076A0500 | G02161 | 177174005200 |
| GRAND ISLE 076 #A006 | GI076A0601 | G02161 | 177174005001 |
| GRAND ISLE 076 #A008 | GI076A0800 | G02161 | 177174005400 |
| GRAND ISLE 076 #A009 | GI076A0900 | G02161 | 177174005500 |
| GRAND ISLE 076 #A010 | GI076A1001 | G02161 | 177174005301 |
| GRAND ISLE 076 #A011 | GI076A1100 | G02161 | 177174005600 |
| GRAND ISLE 076 #A013 | GI076A1300 | G02161 | 177174005800 |
| GRAND ISLE 076 #A014 | GI076A1400 | G02161 | 177174006100 |
| GRAND ISLE 076 #A015 | GI076A1500 | G02161 | 177174005900 |
| GRAND ISLE 076 #A018 | GI076A1800 | G02161 | 177174006500 |
| GRAND ISLE 076 #A022 | GI076A2201 | G02161 | 177174006601 |
| GRAND ISLE 076 #A023 ST1 | GI076A2301 | G02161 | 177174044101 |
| GRAND ISLE 076 #A024 ST1BP1 | GI076A2401 | G02161 | 177174095502 |
| GRAND ISLE 110 #A002 | GI110A0200 | G13943 | 177184008900 |
| GRAND ISLE 110 #A005 BP2 | GI110A0502 | G13943 | 177184010402 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 116 #A001 | GI116A0100 | G13944 | 177184008700 |
| GRAND ISLE 116 #A003 | GI116A0300 | G13944 | 177184009200 |
| GRAND ISLE 116 #A004 | GI116A0401 | G13944 | 177184009501 |
| GRAND ISLE 116 #A006 | GI116A0601 | G13944 | 177184010601 |
| GRAND ISLE 116 #A007 | GI116A0700 | G13944 | 177184011100 |
| HIGH ISLAND 110 #A001 | HI110A0100 | G02353 | 427084001700 |
| HIGH ISLAND 110 #A002 | HI110A0200 | G02353 | 427084002300 |
| HIGH ISLAND 110 #A004 | HI110A0400 | G02353 | 427084003300 |
| HIGH ISLAND 110 #A005 | HI110A0500 | G02353 | 427084003500 |
| HIGH ISLAND 110 #A006 | HI110A0600 | G02353 | 427084003700 |
| HIGH ISLAND 110 #A008 | HI110A0800 | G02353 | 427084004900 |
| HIGH ISLAND 110 #A009 | HI110A0900 | G02353 | 427084039400 |
| HIGH ISLAND 110 #B002 | HI110B0200 | G02353 | 427084004300 |
| HIGH ISLAND 110 #B004 | HI110B0400 | G02353 | 427084006100 |
| HIGH ISLAND 110 #B009 | HI110B0900 | G02353 | 427084035000 |
| HIGH ISLAND 110 #B010 | HI110B1000 | G02353 | 427084039600 |
| HIGH ISLAND 111 #003 | HI11100300 | G02354 | 427084046200 |
| HIGH ISLAND 111 #A003 | HI111A0300 | G02354 | 427084002600 |
| HIGH ISLAND 111 #A010 | HI111A1000 | G02354 | 427084040101 |
| HIGH ISLAND 116 #A001 | HI116A0100 | G06156 | 427084016400 |
| HIGH ISLAND 116 #A002D | HI116A02D0 | G06156 | 427084017600 |
| HIGH ISLAND 116 #A003 | HI116A0300 | G06156 | 427084018300 |
| HIGH ISLAND 129 #005 | HI129005 | G01848 | 427104000700 |
| HIGH ISLAND 129 #006 | HI12900600 | G01848 | 427104000800 |
| HIGH ISLAND 129 #013 | HI12901300 | G01848 | 427104009600 |
| HIGH ISLAND 129 #017 | HI12901702 | G01848 | 427104015302 |
| HIGH ISLAND 129 #018 (HELIS) | HI12901800 | G01848 | 427104015400 |
| HIGH ISLAND 176 #002 | HI17600200 | G06164 | 427084030200 |
| HIGH ISLAND 176 #003 | HI17603 | G06164 | 427084031300 |
| HIGH ISLAND 179 #A001 | HI179A0100 | G03236 | 427084005500 |
| HIGH ISLAND 179 #A003 | HI179A0300 | G03236 | 427084005700 |
| HIGH ISLAND 179 #A006 ST2 | HI179A0602 | G03236 | 427084006002 |
| HIGH ISLAND 179 #A008B | HI179A08B0 | G03236 | 427084006200 |
| HIGH ISLAND 179 #A009 | HI179A0900 | G03236 | 427084006300 |
| HIGH ISLAND 179 #A010 | HI179A1000 | G03236 | 427084006400 |
| HIGH ISLAND 179 #A016 | HI179A1600 | G03236 | 427084007300 |
| HIGH ISLAND 179 #A018E | HI179A18E0 | G03236 | 427084008000 |
| HIGH ISLAND 179 #A019 | HI179A1900 | G03236 | 427084007800 |
| HIGH ISLAND 193 #A015 | HI193A1500 | G03237 | 427084006801 |
| HIGH ISLAND 206 #B001 ST1 | HI206B0101 | G20660 | 427084056501 |
| HIGH ISLAND 206 #B002 ST1 | HI206B0201 | G20660 | 427084059201 |
| HIGH ISLAND 206 #B003 ST1 | HI206B0301 | G20660 | 427084063501 |
| HIGH ISLAND A-341 #B001 | HIA341B010 | G25605 | 427114085900 |
| HIGH ISLAND A-341 #B002 | HIA341B020 | G25605 | 427114087101 |
| HIGH ISLAND A-365 #A001 | HIA365A010 | G02750 | 427114052200 |
| HIGH ISLAND A-365 #A004 | HIA365A040 | G02750 | 427114053700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-365 #A006 | HIA365A060 | G02750 | 427114053100 |
| HIGH ISLAND A-365 #A007 | HIA365A070 | G02750 | 427114054100 |
| HIGH ISLAND A-365 #A008 | HIA365A080 | G02750 | 427114054800 |
| HIGH ISLAND A-365 #A010 | HIA365A100 | G02750 | 427114055200 |
| HIGH ISLAND A-365 #A012 | HIA365A120 | G02750 | 427114055600 |
| HIGH ISLAND A-365 #A013 ST1 | HIA365A131 | G02750 | 427114055801 |
| HIGH ISLAND A-365 #A016 | HIA365A160 | G02750 | 427114056700 |
| HIGH ISLAND A-365 #A020 | HIA365A200 | G02750 | 427114057500 |
| HIGH ISLAND A-365 #A021 | HIA365A210 | G02750 | 427114057600 |
| HIGH ISLAND A-365 #A024 | HIA365A240 | G02750 | 427114066300 |
| HIGH ISLAND A-365 #A025 | HIA365A250 | G02750 | 427114066500 |
| HIGH ISLAND A-376 #A002 ST1 | HIA376A021 | G02754 | 427114052601 |
| HIGH ISLAND A-376 #A003 | HIA376A030 | G02754 | 427114052700 |
| HIGH ISLAND A-376 #A005 | HIA376A050 | G02754 | 427114053500 |
| HIGH ISLAND A-376 #A009 | HIA376A090 | G02754 | 427114054400 |
| HIGH ISLAND A-376 #A011 | HIA376A110 | G02754 | 427114055000 |
| HIGH ISLAND A-376 #A014 ST2 | HIA376A142 | G02754 | 427114056002 |
| HIGH ISLAND A-376 #A015 | HIA376A150 | G02754 | 427114056200 |
| HIGH ISLAND A-376 #A017 | HIA376A170 | G02754 | 427114057200 |
| HIGH ISLAND A-376 #A018 | HIA376A180 | G02754 | 427114057300 |
| HIGH ISLAND A-376 #A019 | HIA376A190 | G02754 | 427114057400 |
| HIGH ISLAND A-376 #A022 | HIA376A220 | G02754 | 427114057700 |
| HIGH ISLAND A-376 #B001 | HIA376B010 | G02754 | 427114068700 |
| HIGH ISLAND A-376 #B002 | HIA376B020 | G02754 | 427114068900 |
| HIGH ISLAND A-376 #B003 | HIA376B031 | G02754 | 427114078701 |
| HIGH ISLAND A-376 #B004 | HIA376B041 | G02754 | 427114079001 |
| HIGH ISLAND A-376 #B005 | HIA376B050 | G02754 | 427114079600 |
| HIGH ISLAND A-376 #C001 | HIA376C010 | G02754 | 427114088900 |
| HIGH ISLAND A-376 #C002 | HIA376C020 | G02754 | 427114089600 |
| HIGH ISLAND A-376 #C003 | HIA376C030 | G02754 | 427114089500 |
| HIGH ISLAND A-376 #C004 | HIA376C040 | G02754 | 427114089400 |
| HIGH ISLAND A-382 #A009 | HIA382A090 | G02757 | 427094018600 |
| HIGH ISLAND A-382 #B013 | HIA382B130 | G02757 | 427094025500 |
| HIGH ISLAND A-382 #F001 ST1 | HIA382F011 | G02757 | 427114059401 |
| HIGH ISLAND A-382 #F002 | HIA382F020 | G02757 | 427114059800 |
| HIGH ISLAND A-382 #F003 | HIA382F031 | G02757 | 427114059901 |
| HIGH ISLAND A-382 #F004 | HIA382F040 | G02757 | 427114060600 |
| HIGH ISLAND A-382 #F005 | HIA382F050 | G02757 | 427114060900 |
| HIGH ISLAND A-382 #F006 | HIA382F061 | G02757 | 427114061001 |
| HIGH ISLAND A-382 #F008 | HIA382F080 | G02757 | 427114061700 |
| HIGH ISLAND A-382 #F010 ST5 | HIA382F105 | G02757 | 427114062605 |
| HIGH ISLAND A-382 #F011 | HIA382F110 | G02757 | 427114063100 |
| HIGH ISLAND A-382 #F012 | HIA382F121 | G02757 | 427114063601 |
| HIGH ISLAND A-382 #F013 | HIA382F130 | G02757 | 427114063800 |
| HIGH ISLAND A-382 #F014 | HIA382F140 | G02757 | 427114063900 |
| HIGH ISLAND A-382 #F015 | HIA382F151 | G02757 | 427114064701 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-382 #F017 | HIA382F171 | G02757 | 427114066701 |
| HIGH ISLAND A-382 #F019 | HIA382F190 | G02757 | 427114067100 |
| HIGH ISLAND A-382 #F020 | HIA382F200 | G02757 | 427114067500 |
| HIGH ISLAND A-382 #F021 | HIA382F211 | G02757 | 427114067801 |
| HIGH ISLAND A-442 #A001 (ORRI) | HIA442A010 | G11383 | 427094096101 |
| HIGH ISLAND A-442 #A003 (ORRI) | HIA442A03 | G11383 | 427094098101 |
| HIGH ISLAND A-442 #A004 (ORRI) | HIA442A040 | G11383 | 427094099000 |
| HIGH ISLAND A-442 #B001 (ORRI) | HIA442B01 | G11383 | 427094108900 |
| HIGH ISLAND A-474 #A001 | HIA474A010 | G02366 | 427094017100 |
| HIGH ISLAND A-474 #A002 | HIA474A020 | G02366 | 427094017200 |
| HIGH ISLAND A-474 #A003 | HIA474A030 | G02366 | 427094019900 |
| HIGH ISLAND A-474 #A004 | HIA474A040 | G02366 | 427094022800 |
| HIGH ISLAND A-474 #A005 | HIA474A050 | G02366 | 427094023500 |
| HIGH ISLAND A-474 #A006 | HIA474A060 | G02366 | 427094024300 |
| HIGH ISLAND A-474 #A007 | HIA474A070 | G02366 | 427094027702 |
| HIGH ISLAND A-474 #A008 | HIA474A080 | G02366 | 427094026100 |
| HIGH ISLAND A-474 #A010 | HIA474A100 | G02366 | 427094029400 |
| HIGH ISLAND A-474 #A011 | HIA474A110 | G02366 | 427094030000 |
| HIGH ISLAND A-474 #A012 | HIA474A120 | G02366 | 427094030801 |
| HIGH ISLAND A-474 #A013 | HIA474A130 | G02366 | 427094036104 |
| HIGH ISLAND A-474 #A014 | HIA474A140 | G02366 | 427094035000 |
| HIGH ISLAND A-474 #A017 | HIA474A170 | G02366 | 427094032500 |
| HIGH ISLAND A-474 #A020 | HIA474A200 | G02366 | 427094038500 |
| HIGH ISLAND A-474 #A021 | HIA474A210 | G02366 | 427094040700 |
| HIGH ISLAND A-474 #B023 | HIA474B230 | G02366 | 427094037200 |
| HIGH ISLAND A-475 #A016 | HIA475A16 | G02367 | 427094035500 |
| HIGH ISLAND A-475 #A018 | HIA475A18 | G02367 | 427094033100 |
| HIGH ISLAND A-489 #A009 | HIA489A090 | G02372 | 427094028500 |
| HIGH ISLAND A-489 #A015 | HIA489A150 | G02372 | 427094037000 |
| HIGH ISLAND A-489 #B002 | HIA489B020 | G02372 | 427094021000 |
| HIGH ISLAND A-489 #B003 | HIA489B030 | G02372 | 427094020901 |
| HIGH ISLAND A-489 #B005 ST | HIA489B050 | G02372 | 427094024601 |
| HIGH ISLAND A-489 #B007 | HIA489B070 | G02372 | 427094027601 |
| HIGH ISLAND A-489 #B009 | HIA489B090 | G02372 | 427094026500 |
| HIGH ISLAND A-489 #B010 | HIA489B100 | G02372 | 427094028800 |
| HIGH ISLAND A-489 #B012 | HIA489B120 | G02372 | 427094031400 |
| HIGH ISLAND A-489 #B013 | HIA489B130 | G02372 | 427094028600 |
| HIGH ISLAND A-489 #B014 | HIA489B140 | G02372 | 427094029700 |
| HIGH ISLAND A-489 #B015 | HIA489B150 | G02372 | 427094030400 |
| HIGH ISLAND A-489 #B016 | HIA489B160 | G02372 | 427094029800 |
| HIGH ISLAND A-489 #B017 | HIA489B170 | G02372 | 427094023802 |
| HIGH ISLAND A-489 #B020 | HIA489B200 | G02372 | 427094028101 |
| HIGH ISLAND A-489 #B021 | HIA489B210 | G02372 | 427094026202 |
| HIGH ISLAND A-489 #B022 | HIA489B220 | G02372 | 427094036000 |
| HIGH ISLAND A-489 #B024 | HIA489B240 | G02372 | 427094035400 |
| HIGH ISLAND A-489 #B025 | HIA489B250 | G02372 | 427094041400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-489 #B026 | HIA489B260 | G02372 | 427094043100 |
| HIGH ISLAND A-489 #B027 | HIA489B270 | G02372 | 427094042501 |
| HIGH ISLAND A-489 #B028 | HIA489B280 | G02372 | 427094054500 |
| HIGH ISLAND A-489 #B029 | HIA489B290 | G02372 | 427094111100 |
| HIGH ISLAND A-545 #JA001 | HIA545JA01 | G17199 | 427094104000 |
| HIGH ISLAND A-545 #JA002 | HIA545JA02 | G17199 | 427094112401 |
| HIGH ISLAND A-545 #JA003 | HIA545JA03 | G17199 | 427094113700 |
| HIGH ISLAND A-572 #A003 ST1 | HIA572A031 | G02392 | 427094012901 |
| HIGH ISLAND A-572(573)A014 | HIA572A140 | G02392 | 427094034100 |
| HIGH ISLAND A-573 #006 | HIA5730060 | G02393 | 427094053700 |
| HIGH ISLAND A-573 #A001 ST2 | HIA573A012 | G02393 | 427094007102 |
| HIGH ISLAND A-573 #A002 ST3 | HIA573A023 | G02393 | 427094013803 |
| HIGH ISLAND A-573 #A004 | HIA573A040 | G02393 | 427094015000 |
| HIGH ISLAND A-573 #A005 ST1 | HIA573A051 | G02393 | 427094015501 |
| HIGH ISLAND A-573 #A008 | HIA573A080 | G02393 | 427094018000 |
| HIGH ISLAND A-573 #A010 | HIA573A100 | G02393 | 427094020500 |
| HIGH ISLAND A-573 #A015 | HIA573A150 | G02393 | 427094034200 |
| HIGH ISLAND A-573 #A016 | HIA573A160 | G02393 | 427094034300 |
| HIGH ISLAND A-573 #A017 | HIA573A170 | G02393 | 427094036500 |
| HIGH ISLAND A-573 #A019 ST1 | HIA573A191 | G02393 | 427094038001 |
| HIGH ISLAND A-573 #B001 | HIA573B010 | G02393 | 427094012800 |
| HIGH ISLAND A-573 #B002 | HIA573B020 | G02393 | 427094014100 |
| HIGH ISLAND A-573 #B005 | HIA573B050 | G02393 | 427094016400 |
| HIGH ISLAND A-573 #B006 | HIA573B060 | G02393 | 427094017000 |
| HIGH ISLAND A-573 #B008 | HIA573B080 | G02393 | 427094017900 |
| HIGH ISLAND A-573 #B010 | HIA573B100 | G02393 | 427094021100 |
| HIGH ISLAND A-573 #B012 | HIA573B120 | G02393 | 427094022700 |
| HIGH ISLAND A-573 #E007 | HIA573E070 | G02393 | 427094098200 |
| HIGH ISLAND A-573 #E012 | HIA573E120 | G02393 | 427094115000 |
| HIGH ISLAND A-573 #F007 | HIA573F070 | G02393 | 427114061200 |
| HIGH ISLAND A-573 #F009 | HIA573F090 | G02393 | 427114062000 |
| HIGH ISLAND A-573 #F016 ST5 | HIA573F165 | G02393 | 427114066805 |
| HIGH ISLAND A-573 #F018 ST1 | HIA573F181 | G02393 | 427114067301 |
| HIGH ISLAND A-573 #F022 | HIA573F220 | G02393 | 427114068400 |
| HIGH ISLAND A-573 #F023 ST2 | HIA573F232 | G02393 | 427114069302 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-582 #C001 | HIA582C010 | G02719 | 427094061500 |
| HIGH ISLAND A-582 #C002 | HIA582C020 | G02719 | 427094061900 |
| HIGH ISLAND A-582 #C003 | HIA582C030 | G02719 | 427094058000 |
| HIGH ISLAND A-582 #C006 | HIA582C060 | G02719 | 427094063400 |
| HIGH ISLAND A-582 #C007 | HIA582C070 | G02719 | 427094063900 |
| HIGH ISLAND A-582 #C010 | HIA582C100 | G02719 | 427094070200 |
| HIGH ISLAND A-582 #C011 | HIA582C110 | G02719 | 427094071400 |
| HIGH ISLAND A-582 #C012 | HIA582C120 | G02719 | 427094074900 |
| HIGH ISLAND A-582 #C013 | HIA582C130 | G02719 | 427094072700 |
| HIGH ISLAND A-582 #C014 | HIA582C140 | G02719 | 427094073800 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-582 #C015 | HIA582C150 | G02719 | 427094075800 |
| HIGH ISLAND A-582 #C019 | HIA582C190 | G02719 | 427094108200 |
| HIGH ISLAND A-582 #D002 ST1 | HIA582D021 | G02719 | 427094110801 |
| HIGH ISLAND A-582 #D003 ST | HIA582D031 | G02719 | 427094111401 |
| HIGH ISLAND A-582 #D005 | HIA582D050 | G02719 | 427094114300 |
| HIGH ISLAND A-582 #D006 | HIA582D060 | G02719 | 427094114700 |
| HIGH ISLAND A-595 #D001 ST2 | HIA595D1D2 | G02721 | 427094055302 |
| HIGH ISLAND A-595 #D003 | HIA595D03 | G02721 | 427094058500 |
| HIGH ISLAND A-595 #D005 | HIA595D050 | G02721 | 427094092900 |
| HIGH ISLAND A-595 #D006 | HIA595D063 | G02721 | 427094063205 |
| HIGH ISLAND A-595 #D010 | HIA595D100 | G02721 | 427094070500 |
| HIGH ISLAND A-595 #D012 | HIA595D120 | G02721 | 427094077000 |
| HIGH ISLAND A-595 #D017 ST2 | HIA595D172 | G02721 | 427094083702 |
| HIGH ISLAND A-595 #D018 | HIA595D181 | G02721 | 427094093501 |
| HIGH ISLAND A-595 #E011 | HIA595E110 | G02721 | 427094114501 |
| HIGH ISLAND A-596 #B014 | HIA596B140 | G02722 | 427094025800 |
| HIGH ISLAND A-596 #D002 | HIA596D020 | G02722 | 427094056901 |
| HIGH ISLAND A-596 #D004 | HIA596D040 | G02722 | 427094060500 |
| HIGH ISLAND A-596 #D007 ST4 | HIA596D074 | G02722 | 427094064304 |
| HIGH ISLAND A-596 #D008 ST1 | HIA596D081 | G02722 | 427094067001 |
| HIGH ISLAND A-596 #D009 | HIA596D090 | G02722 | 427094068400 |
| HIGH ISLAND A-596 #D011 | HIA596D110 | G02722 | 427094075700 |
| HIGH ISLAND A-596 #D013 ST2 | HIA596D132 | G02722 | 427094079502 |
| HIGH ISLAND A-596 #D014 | HIA596D140 | G02722 | 427094080100 |
| HIGH ISLAND A-596 #D016 | HIA596D160 | G02722 | 427094082400 |
| HIGH ISLAND A-596 #E005 | HIA596E050 | G02722 | 427094085900 |
| HIGH ISLAND A-596 #E008 | HIA596E080 | G02722 | 427094112801 |
| HIGH ISLAND A-596 #E009 | HIA596E090 | G02722 | 427094114200 |
| MAIN PASS 077 #A001 | MP077A0100 | G04481 | 177254033800 |
| MAIN PASS 077 #A002 | MP077A0201 | G04481 | 177254043101 |
| MAIN PASS 077 #A003 | MP077A0300 | G04481 | 177254036100 |
| MAIN PASS 077 #A004 | MP077A0400 | G04481 | 177254036900 |
| MAIN PASS 077 #A005 | MP077A0500 | G04481 | 177254038000 |
| MAIN PASS 077 #A006 ST2 | MP077A0602 | G04481 | 177254036402 |
| MAIN PASS 077 #A010 | MP077A1000 | G04481 | 177254039600 |
| MAIN PASS 077 #A011 | MP077A1100 | G04481 | 177254042400 |
| MAIN PASS 077 #A012 | MP077A1200 | G04481 | 177254039700 |
| MAIN PASS 077 #A013 | MP077A1300 | G04481 | 177254044900 |
| MAIN PASS 077 #A014 | MP077A1400 | G04481 | 177254044500 |
| MAIN PASS 077 #A015 | MP077A1501 | G04481 | 177254045101 |
| MAIN PASS 077 #A016 | MP077A1600 | G04481 | 177254045900 |
| MAIN PASS 077 #A017 | MP077A1700 | G04481 | 177254046200 |
| MAIN PASS 077 #A018 | MP077A1800 | G04481 | 177254046800 |
| MAIN PASS 077 #A019 | MP077A1900 | G04481 | 177254048200 |
| MAIN PASS 077 #A020 | MP077A2001 | G04481 | 177254048501 |
| MAIN PASS 077 #A021 ST | MP077A2100 | G04481 | 177254067002 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 077 #A022 | MP077A2201 | G04481 | 177254067401 |
| MAIN PASS 077 #A023 | MP077A23 | G04481 | 177254067601 |
| MAIN PASS 077 #A07 | MP077A0700 | G04481 | 177254041000 |
| MAIN PASS 077 #A08 | MP077A0800 | G04481 | 177254038200 |
| MAIN PASS 077 #A09 | MP077A0900 | G04481 | 177254039000 |
| MAIN PASS 091 #A001 | MP091A0100 | G14576 | 177254060600 |
| MAIN PASS 091 #A002 | MP091A0200 | G14576 | 177254062200 |
| MAIN PASS 091 #A003 | MP091A0300 | G14576 | 177254065000 |
| MAIN PASS 140 #A001 | MP140A0100 | G02193 | 177254006400 |
| MAIN PASS 140 #A002 | MP140A0200 | G02193 | 177254007700 |
| MAIN PASS 140 #A003 | MP140A0300 | G02193 | 177254007800 |
| MAIN PASS 140 #A004 | MP140A0400 | G02193 | 177254008200 |
| MAIN PASS 140 #A005 ST1 | MP140A0501 | G02193 | 177254008301 |
| MAIN PASS 140 #A008 ST2 | MP140A0802 | G02193 | 177254009202 |
| MAIN PASS 140 #A009 | MP140A0900 | G02193 | 177254009400 |
| MAIN PASS 140 #A010 ST2 | MP140A1002 | G02193 | 177254009502 |
| MAIN PASS 140 #A011 | MP140A1100 | G02193 | 177254010000 |
| MAIN PASS 140 #A012 ST2 | MP140A1202 | G02193 | 177254010102 |
| MAIN PASS 140 #A013 ST1 | MP140A1301 | G02193 | 177254010401 |
| MAIN PASS 140 #A014 | MP140A1400 | G02193 | 177254010500 |
| MAIN PASS 140 #A015 | MP140A1500 | G02193 | 177254010600 |
| MAIN PASS 140 #A016 ST3 | MP140A1603 | G02193 | 177254008603 |
| MAIN PASS 140 #A017 | MP140A1700 | G02193 | 177254011000 |
| MAIN PASS 140 #A018 ST3 | MP140A1803 | G02193 | 177254008803 |
| MAIN PASS 140 #A020 | MP140A2000 | G02193 | 177254065700 |
| MAIN PASS 140 #A021 | MP140A2100 | G02193 | 177254065500 |
| MAIN PASS 140 #B001 | MP140B0100 | G02193 | 177254006600 |
| MAIN PASS 140 #B003 ST1 | MP140B0301 | G02193 | 177254008001 |
| MAIN PASS 140 #B004 ST3 | MP140B0403 | G02193 | 177254008103 |
| MAIN PASS 140 #B007 ST1 | MP140B0701 | G02193 | 177254009001 |
| MAIN PASS 140 #B008 ST2 | MP140B0802 | G02193 | 177254009102 |
| MAIN PASS 140 #B011 ST1 | MP140B1101 | G02193 | 177254009801 |
| MAIN PASS 140 #B012 ST2 | MP140B1202 | G02193 | 177254008902 |
| MAIN PASS 140 #B013 | MP140B1300 | G02193 | 177254010200 |
| MAIN PASS 140 #B014 ST | MP140B1401 | G02193 | 177254010301 |
| MAIN PASS 140 #B015 ST2 | MP140B1502 | G02193 | 177254010702 |
| MAIN PASS 140 #B017 | MP140B1701 | G02193 | 177254010901 |
| MAIN PASS 140 #B018 | MP140B1800 | G02193 | 177254062600 |
| MAIN PASS 140 #B019 | MP140B1900 | G02193 | 177254063000 |
| MAIN PASS 140 #B020 | MP140B2000 | G02193 | 177254063100 |
| MAIN PASS 140 #B021 ST | MP140B2101 | G02193 | 177254073301 |
| MAIN PASS 140 #B022 | MP140B2200 | G02193 | 177254077300 |
| MAIN PASS 140 #B023 | MP140B2300 | G02193 | 177254077500 |
| MAIN PASS 152 #A015 | MP152A1500 | G01966 | 177232005300 |
| MAIN PASS 152 #A020B | MP152A20B0 | G01966 | 177232006200 |
| MAIN PASS 152 #B004A | MP152B04A0 | G01966 | 177254000900 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 152 #B012 | MP152B1200 | G01966 | 177254002700 |
| MAIN PASS 152 #B015 | MP152B1500 | G01966 | 177254002300 |
| MAIN PASS 152 #B020 ST | MP152B2002 | G01966 | 177254002802 |
| MAIN PASS 152 #B022A | MP152B22A0 | G01966 | 177254003500 |
| MAIN PASS 152 #B030 | MP152B3000 | G01966 | 177254004500 |
| MAIN PASS 152 #B031A | MP152B31A0 | G01966 | 177254004700 |
| MAIN PASS 152 #C002 | MP152C0200 | G01966 | 177254040800 |
| MAIN PASS 152 #C005 | MP152C0500 | G01966 | 177254042000 |
| MAIN PASS 152 #C006 | MP152C0600 | G01966 | 177254042100 |
| MAIN PASS 152 #C008 | MP152C0800 | G01966 | 177254042500 |
| MAIN PASS 152 #C011 | MP152C1100 | G01966 | 177254043200 |
| MAIN PASS 152 #C031 | MP152C3100 | G01966 | 177254048100 |
| MAIN PASS 152 #C032 | MP152C3200 | G01966 | 177254049000 |
| MAIN PASS 153 #A017B | MP153A17B0 | G01967 | 177232005400 |
| MAIN PASS 153 #B001 | MP153B0100 | G01967 | 177252010300 |
| MAIN PASS 153 #B003A | MP153B03A0 | G01967 | 177254000302 |
| MAIN PASS 153 #B010 ST2 | MP153B1002 | G01967 | 177254001803 |
| MAIN PASS 153 #B017 | MP153B1700 | G01967 | 177254002500 |
| MAIN PASS 153 #B018 | MP153B1800 | G01967 | 177254002900 |
| MAIN PASS 153 #B025 | MP153B2500 | G01967 | 177254004000 |
| MAIN PASS 153 #B027 | MP153B2700 | G01967 | 177254004200 |
| MAIN PASS 153 #C009 | MP153C0900 | G01967 | 177254042701 |
| MAIN PASS 153 #C012 | MP153C1200 | G01967 | 177254043300 |
| MAIN PASS 153 #C013 ST | MP153C1301 | G01967 | 177254043501 |
| MAIN PASS 153 #C014 | MP153C1400 | G01967 | 177254043902 |
| MAIN PASS 153 #C017 | MP153C1700 | G01967 | 177254044200 |
| MAIN PASS 153 #C018 | MP153C1800 | G01967 | 177254044300 |
| MAIN PASS 153 #C020 | MP153C2000 | G01967 | 177254045400 |
| MAIN PASS 153 #C021 | MP153C2100 | G01967 | 177254045500 |
| MAIN PASS 153 #C024 | MP153C2400 | G01967 | 177254046100 |
| MAIN PASS 153 #C026 | MP153C2600 | G01967 | 177254046900 |
| MAIN PASS 153 #C027 | MP153C2700 | G01967 | 177254047400 |
| MAIN PASS 153 #C028 | MP153C2800 | G01967 | 177254048400 |
| MAIN PASS 153 #C029 | MP153C2901 | G01967 | 177254047501 |
| MAIN PASS 153 #C030 | MP153C3002 | G01967 | 177254047802 |
| MAIN PASS 259 #001 | MP25900101 | G07827 | 177244048801 |
| MAIN PASS 259 #002 | MP25900200 | G07827 | 177244050000 |
| MAIN PASS 259 #003 | MP25900300 | G07827 | 608164015800 |
| MAIN PASS 259 #004 | MP25900400 | G07827 | 177244050500 |
| MAIN PASS 259 #005 | MP25900500 | G07827 | 608164016400 |
| MAIN PASS 259 #A001 | MP259A0100 | G07827 | 177244069700 |
| MAIN PASS 259 #A002 | MP259A0200 | G07827 | 177244070200 |
| MAIN PASS 259 #A003 | MP259A0300 | G07827 | 177244070800 |
| MAIN PASS 259 #A004 | MP259A0400 | G07827 | 177244071000 |
| MAIN PASS 259 #A005 | MP259A0500 | G07827 | 177244071300 |
| MAIN PASS 259 #A006 | MP259A0600 | G07827 | 177244071600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 259 #A007 | MP259A0700 | G07827 | 177244071800 |
| MAIN PASS 259 #A008 ST1 | MP259A0801 | G07827 | 177244072401 |
| MAIN PASS 259 #A010 ST1 | MP259A1001 | G07827 | 177244074601 |
| MAIN PASS 259 #A011 ST1 | MP259A1101 | G07827 | 177244074901 |
| MAIN PASS 259 #A012 ST1 | MP259A1201 | G07828 | 177244076801 |
| MAIN PASS 275 #A001 ST1 | MP275A0101 | G15395 | 177244085701 |
| MAIN PASS 275 #A002 ST1 | MP275A0201 | G15395 | 177244086101 |
| MAIN PASS 275 #A003 | MP275A0300 | G15395 | 177244093300 |
| MAIN PASS 289 #013 | MP28901300 | G01666 | 177244004700 |
| MAIN PASS 289 #B001 | MP289B0100 | G01666 | 177240007800 |
| MAIN PASS 289 #B005 | MP289B0501 | G01666 | 177240011701 |
| MAIN PASS 289 #B014A | MP289B1400 | G01666 | 177242000100 |
| MAIN PASS 289 #B015 | MP289B1500 | G01666 | 177240014800 |
| MAIN PASS 289 #B016 WIW | MP289B1600 | G01666 | 177242003100 |
| MAIN PASS 289 #B018 WIW | MP289B1800 | G01666 | 177242003200 |
| MAIN PASS 289 #C001 | MP289C0100 | G01666 | 177244048100 |
| MAIN PASS 289 #C002 | MP289C0200 | G01666 | 177244047600 |
| MAIN PASS 289 #C003A | MP289C0300 | G01666 | 177244047800 |
| MAIN PASS 289 #C004A | MP289C0402 | G01666 | 177244047902 |
| MAIN PASS 289 #C005 | MP289C0500 | G01666 | 177244048000 |
| MAIN PASS 289 #C007 | MP289C0700 | G01666 | 177244048400 |
| MAIN PASS 289 #C008 | MP289C0800 | G01666 | 177244048500 |
| MAIN PASS 289 #C009 | MP289C0901 | G01666 | 177244048301 |
| MAIN PASS 289 #C010 | MP289C1000 | G01666 | 177244048200 |
| MAIN PASS 289 #C011 | MP289C1100 | G01666 | 177244048700 |
| MAIN PASS 289 #C012 | MP289C1203 | G01666 | 177244049203 |
| MAIN PASS 289 #C013 WSW | MP289C1300 | G01666 | 177244052400 |
| MAIN PASS 289 #C014 | MP289C1400 | G01666 | 177244049900 |
| MAIN PASS 289 #C015 | MP289C1500 | G01666 | 177244048900 |
| MAIN PASS 289 #C017 | MP289C1700 | G01666 | 177244053900 |
| MAIN PASS 289 #C019 | MP289C1900 | G01666 | 177244049400 |
| MAIN PASS 289 #C020 | MP289C2000 | G01666 | 177244050100 |
| MAIN PASS 289 #C021 | MP289C2100 | G01666 | 177244049100 |
| MAIN PASS 289 #C022 WIW | MP289C2200 | G01666 | 177244049300 |
| MAIN PASS 289 #C023 | MP289C2301 | G01666 | 177244053801 |
| MAIN PASS 289 #C024 | MP289C2401 | G01666 | 177244051901 |
| MAIN PASS 289 #C025 WIW | MP289C2500 | G01666 | 177244051400 |
| MAIN PASS 289 #C026 | MP289C2600 | G01666 | 177244052700 |
| MAIN PASS 289 #C027 | MP289C2700 | G01666 | 177244053100 |
| MAIN PASS 289 #C028 | MP289C2801 | G01666 | 177244051501 |
| MAIN PASS 289 #C029D | MP289C29D1 | G01666 | 177244051801 |
| MAIN PASS 289 #C030 | MP289C3000 | G01666 | 177244053300 |
| MAIN PASS 289 #C031 | MP289C3100 | G01666 | 177244090200 |
| MAIN PASS 289 #C032 | MP289C3200 | G01666 | 177244090300 |
| MAIN PASS 290 #C006 | MP290C0600 | G01667 | 177244050400 |
| MAIN PASS 290 #C016 | MP290C1600 | G01667 | 177244051000 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 290 #C018 ST2 | MP290C1802 | G01667 | 177244051302 |
| MAIN PASS 295 #001 | MP29500100 | G32263 | 177244097001 |
| MAIN PASS 295 #003 | MP29500300 | G32263 | 177244097500 |
| MAIN PASS 296 #B001 | MP296B0100 | G01673 | 177244022300 |
| MAIN PASS 296 #B003 | MP296B0300 | G01673 | 177244022700 |
| MAIN PASS 296 #B004 | MP296B0400 | G01673 | 177244022900 |
| MAIN PASS 296 #B008 | MP296B0800 | G01673 | 177244023600 |
| MAIN PASS 296 #B013 ST | MP296B1301 | G01673 | 177244024501 |
| MAIN PASS 296 #B014 ST1 | MP296B1401 | G01673 | 177244024401 |
| MAIN PASS 296 #B018 | MP296B1800 | G01673 | 177244025300 |
| MAIN PASS 296 #B019 ST2 | MP296B1902 | G01673 | 177244027302 |
| MAIN PASS 296 #C001 | MP296C0100 | G01673 | 177244016100 |
| MAIN PASS 296 #C002 | MP296C0200 | G01673 | 177244021100 |
| MAIN PASS 296 #C004 ST3 | MP296C0403 | G01673 | 177244021403 |
| MAIN PASS 296 #C005 | MP296C0500 | G01673 | 177244021700 |
| MAIN PASS 296 #C006 | MP296C0603 | G01673 | 177244021503 |
| MAIN PASS 296 #C007A | MP296C07A0 | G01673 | 177244021600 |
| MAIN PASS 296 #C013 | MP296C1301 | G01673 | 177244022401 |
| MAIN PASS 296 #C014 | MP296C1402 | G01673 | 177244030702 |
| MAIN PASS 296 #C015 | MP296C1500 | G01673 | 177244031300 |
| MAIN PASS 296 #C018 ST | MP296C1801 | G01673 | 177244089101 |
| MAIN PASS 296 #C019 | MP296C1900 | G01673 | 177244089400 |
| MAIN PASS 300 #B002 | MP300B0200 | G01317 | 177244067200 |
| MAIN PASS 301 #A002 | MP301A0200 | G04486 | 177244034600 |
| MAIN PASS 301 #A003 | MP301A0300 | G04486 | 177244035101 |
| MAIN PASS 301 #A004 | MP301A0400 | G04486 | 177244039501 |
| MAIN PASS 301 #B001 | MP301B0100 | G04486 | 177244063000 |
| MAIN PASS 302 #B004 | MP302B0400 | G32264 | 177244018801 |
| MAIN PASS 302 #B019 | MP302B1900 | G32264 | 177244097401 |
| MAIN PASS 303 #A005D (MP310) | MP303A05D1 | G04253 | 177244030600 |
| MAIN PASS 303 #A017 | MP303A1700 | G04253 | 177244094700 |
| MAIN PASS 303 #B005 | MP303B0500 | G04253 | 177244023000 |
| MAIN PASS 303 #B007 | MP303B0700 | G04253 | 177244023400 |
| MAIN PASS 303 #B009 | MP303B0900 | G04253 | 177244023800 |
| MAIN PASS 303 #B015 | MP303B1500 | G04253 | 177244024800 |
| MAIN PASS 304 #A007 | MP304A0700 | G03339 | 177244030800 |
| MAIN PASS 304 #A009 | MP304A0900 | G03339 | 177244030500 |
| MAIN PASS 304 #B012 | MP304B1200 | G03339 | 177244024300 |
| MAIN PASS 308 #A001 | MP308A0100 | G32265 | 177244095600 |
| MAIN PASS 308 #A002 | MP308A0200 | G32265 | 177244095700 |
| MAIN PASS 308 #A003 | MP308A0300 | G32265 | 177244096500 |
| MAIN PASS 308 #A004 ST | MP308A0401 | G32265 | 177244096701 |
| MAIN PASS 308 #A006 | MP308A0600 | G32265 | 177244095900 |
| MAIN PASS 308 #A007 | MP308A0700 | G32265 | 177244096700 |
| MAIN PASS 308 #A008 | MP308A0801 | G32265 | 177244096601 |
| MAIN PASS 309 #A005 | MP309A0500 | G08760 | 177244096301 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 309 #A009 | MP309A0900 | G08760 | 177244096900 |
| MAIN PASS 309 #JA001 | MP309JA010 | G08760 | 177244063500 |
| MAIN PASS 309 #JA002 | MP309JA200 | G08760 | 177244064600 |
| MAIN PASS 309 #JA006 | MP309JA600 | G08760 | 177244065100 |
| MAIN PASS 309 #JA007 | MP309JA700 | G08760 | 177244065000 |
| MAIN PASS 309 #JA008 | MP309JA800 | G08760 | 177244065200 |
| MAIN PASS 309 #JA010 | MP309JA100 | G08760 | 177244072700 |
| MAIN PASS 309 #JA05A | MP309JA5A0 | G08760 | 177244064800 |
| MAIN PASS 310 #A001 | MP310A0100 | G04126 | 177244028700 |
| MAIN PASS 310 #A002 ST2 | MP310A0202 | G04126 | 177244029502 |
| MAIN PASS 310 #A003 | MP310A0301 | G04126 | 177244029401 |
| MAIN PASS 310 #A004 | MP310A0400 | G04126 | 177244030000 |
| MAIN PASS 310 #A006 | MP310A0603 | G04126 | 177244030103 |
| MAIN PASS 310 #A008A | MP310A0800 | G04126 | 177244029700 |
| MAIN PASS 310 #A010 | MP310A1000 | G04126 | 177244029800 |
| MAIN PASS 310 #A011 ST | MP310A1102 | G04126 | 177244041702 |
| MAIN PASS 310 #A012 | MP310A1200 | G04126 | 177244041900 |
| MAIN PASS 310 #A013 | MP310A1300 | G04126 | 177244042400 |
| MAIN PASS 310 #A014 | MP310A1401 | G04126 | 177244042601 |
| MAIN PASS 310 #A015 | MP310A1500 | G04126 | 177244042500 |
| MAIN PASS 310 #A016 ST | MP310A1601 | G04126 | 177244043301 |
| MAIN PASS 310 #JA009 | MP310JA902 | G04126 | 177244065602 |
| MAIN PASS 311 #A001 | MP311A0100 | G02213 | 177244013600 |
| MAIN PASS 311 #A002 | MP311A0200 | G02213 | 177244013900 |
| MAIN PASS 311 #A003 | MP311A0300 | G02213 | 177244014100 |
| MAIN PASS 311 #A005 | MP311A0500 | G02213 | 177244014500 |
| MAIN PASS 311 #A006 | MP311A0600 | G02213 | 177244014800 |
| MAIN PASS 311 #A007 | MP311A0700 | G02213 | 177244014900 |
| MAIN PASS 311 #A008 | MP311A0800 | G02213 | 177244015200 |
| MAIN PASS 311 #A009 | MP311A0900 | G02213 | 177244015300 |
| MAIN PASS 311 #A010 | MP311A1000 | G02213 | 177244015500 |
| MAIN PASS 311 #A011A | MP311A1100 | G02213 | 177244016400 |
| MAIN PASS 311 #A012 | MP311A1200 | G02213 | 177244016300 |
| MAIN PASS 311 #A013 | MP311A1301 | G02213 | 177244017202 |
| MAIN PASS 311 #A014 | MP311A1400 | G02213 | 177244017800 |
| MAIN PASS 311 #A015 | MP311A1500 | G02213 | 177244017600 |
| MAIN PASS 311 #A016 | MP311A1600 | G02213 | 177244018000 |
| MAIN PASS 311 #A017 | MP311A1700 | G02213 | 177244017900 |
| MAIN PASS 311 #A020 ST | MP311A2001 | G02213 | 177244089301 |
| MAIN PASS 311 #A024 | MP311A2400 | G02213 | 177244096400 |
| MAIN PASS 311 #B001 | MP311B0100 | G02213 | 177244015900 |
| MAIN PASS 311 #B002D | MP311B02D0 | G02213 | 177244018300 |
| MAIN PASS 311 #B006 | MP311B0600 | G02213 | 177244019200 |
| MAIN PASS 311 #B007 | MP311B0700 | G02213 | 177244019300 |
| MAIN PASS 311 #B008 | MP311B0801 | G02213 | 177244019001 |
| MAIN PASS 311 #B009 | MP311B0900 | G02213 | 177244019400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 311 #B010 | MP311B1000 | G02213 | 177244019500 |
| MAIN PASS 311 #B012 | MP311B1200 | G02213 | 177244020001 |
| MAIN PASS 311 #B013D | MP311B13D0 | G02213 | 177244035600 |
| MAIN PASS 311 #B014 | MP311B1401 | G02213 | 177244036201 |
| MAIN PASS 311 #B015 | MP311B1500 | G02213 | 177244036700 |
| MAIN PASS 311 #B017 | MP311B1700 | G02213 | 177244036400 |
| MAIN PASS 311 #B018 ST | MP311B1801 | G02213 | 177244089201 |
| MAIN PASS 312 #A021 | MP312A2100 | G16520 | 177244093200 |
| MAIN PASS 312 #A022 | MP312A2200 | G16520 | 177244093400 |
| MAIN PASS 314 #A023 (MP311A) | MP314A2300 | G33693 | 177244096100 |
| MAIN PASS 315 #JA003 ST | MP315JA302 | G08467 | 177244064502 |
| MAIN PASS 315 #JA004 | MP315JA400 | G08467 | 177244064700 |
| MAIN PASS 315 #SS002 | MP31500200 | G08467 | 177244095500 |
| MATAGORDA IS 519 #L001 | MI519L1SL0 | MF-79413 | 427033030000 |
| MATAGORDA IS 519 #L002 | MI519L2SL0 | MF-79413 | 427033034000 |
| MATAGORDA IS 519 #L003 | MI519L3SL0 | MF-79413 | 427033039700 |
| MATAGORDA IS 519 #L004 | MI519L4SL0 | MF-79413 | 427033039700 |
| MATAGORDA IS 622 #C001 | MI622C01 | G05000 | 427034013800 |
| MATAGORDA IS 622 #C002 ST1 | MI622C0201 | G05000 | 427034018901 |
| MATAGORDA IS 622 #C008 | MI622C0800 | G05000 | 427034052700 |
| MATAGORDA IS 622 #D001 | MI622D0100 | G05000 | 427034048400 |
| MATAGORDA IS 622 #D003 | MI622D0300 | G05000 | 427034053000 |
| MATAGORDA IS 622 #D004 | MI622D0400 | G05000 | 427034054700 |
| MATAGORDA IS 622 #G002 | MI622G0200 | G05000 | 427034053700 |
| MATAGORDA IS 623 #B001 | MI623B0100 | G03088 | 427034010600 |
| MATAGORDA IS 623 #B003 ST1 | MI623B0301 | G03088 | 427034014401 |
| MATAGORDA IS 623 #B006 | MI623B0600 | G03088 | 427034018400 |
| MATAGORDA IS 623 #B008 | MI623B0800 | G03088 | 427034051300 |
| MATAGORDA IS 623 #C007 | MI623C0700 | G03088 | 427034052400 |
| MATAGORDA IS 623 #F002 | MI623F0200 | G03088 | 427034051100 |
| MATAGORDA IS 623 #F003 | MI623F0300 | G03088 | 427034053800 |
| MATAGORDA IS 623 #H001 (#6) | MI623H0100 | G03088 | 427034058100 |
| MATAGORDA IS 623 #H002 (#7) | MI623H0200 | G03088 | 427034058200 |
| MATAGORDA IS 623(622) #C004 | MI623C0400 | G05000 | 427034021400 |
| MATAGORDA IS 635 #F001 | MI635F0100 | G06043 | 427034048800 |
| MISSISSIPPI CANYON 065 #B004 | MC065B0400 | G21742 | 608174106300 |
| MISSISSIPPI CANYON 065 #B015 | MC065B1500 | G21742 | 608174111500 |
| MISSISSIPPI CANYON 108 #A027 | MC108A2703 | G09777 | 608174045703 |
| MISSISSIPPI CANYON 108 #A032 | MC108A3203 | G09777 | 608174088503 |
| MISSISSIPPI CANYON 110 #001 | MC1100100 | G18192 | 608174060500 |
| MISSISSIPPI CANYON 110 #A009 | MC110A0900 | G18192 | 608174042501 |
| MISSISSIPPI CANYON 110 #A011ST | MC110A1101 | G18192 | 608174042601 |
| MISSISSIPPI CANYON 110 #A031 | MC110A3100 | G18192 | 608174087900 |
| MISSISSIPPI CANYON 311 #A001ST | MC311A0102 | G02968 | 608174006502 |
| MISSISSIPPI CANYON 311 #A005 | MC311A0500 | G02968 | 608174011700 |
| MISSISSIPPI CANYON 311 #A006ST | MC311A0601 | G02968 | 608174010901 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MISSISSIPPI CANYON 311 #A011ST | MC311A1101 | G02968 | 608174014201 |
| MISSISSIPPI CANYON 311 #A012 | MC311A1200 | G02968 | 608174015000 |
| MISSISSIPPI CANYON 311 #A013 | MC311A1300 | G02968 | 608174015600 |
| MISSISSIPPI CANYON 311 #A014 | MC311A1400 | G02968 | 608174016200 |
| MISSISSIPPI CANYON 311 #A015ST | MC311A1501 | G02968 | 608174017801 |
| MISSISSIPPI CANYON 311 #A016 | MC311A1600 | G02968 | 608174016300 |
| MISSISSIPPI CANYON 311 #A020ST | MC311A2001 | G02968 | 608174033901 |
| MISSISSIPPI CANYON 311 #A022ST | MC311A2201 | G02968 | 608174034801 |
| MISSISSIPPI CANYON 311 #A024ST | MC311A2401 | G02968 | 608174035301 |
| MOBILE 826 #001 | MO826D0100 | G26176 | 608154014900 |
| NORTH PADRE IS 969 #A001 | PN969A0100 | G05953 | 427134003400 |
| NORTH PADRE IS 969 #A004 | PN969A0400 | G05953 | 427134005600 |
| NORTH PADRE IS 969 #A006 | PN969A0600 | G05953 | 427134005700 |
| NORTH PADRE IS 969 #A007 | PN969A0700 | G05953 | 427134005800 |
| NORTH PADRE IS 969 #JA002 | PN969JA020 | G05953 | 427014003000 |
| NORTH PADRE IS 976 #A002 | PN976A0200 | G05954 | 427134005000 |
| NORTH PADRE IS 976 #A003 | PN976A03 | G05954 | 427134005101 |
| NORTH PADRE IS 976 #A005 | PN976A0500 | G05954 | 427134005500 |
| NORTH PADRE IS 976 #A008 | PN976A0800 | G05954 | 427134005900 |
| NORTH PADRE IS 976 #A009 | PN976A0900 | G05954 | 427134006000 |
| SHIP SHOAL 030 #011 | SS03001100 | 00333 | 177114093000 |
| SHIP SHOAL 030 #013 | SS03001300 | 00333 | 177114109400 |
| SHIP SHOAL 030 #014D | SS030014D0 | 00333 | 177114111900 |
| SHIP SHOAL 030 #A001 | SS030A0100 | 00333 | 177114113000 |
| SHIP SHOAL 032 #024 | SS03202401 | 00335 | 177114131701 |
| SHIP SHOAL 033 #005 | SS03300500 | 00336 | 177114030900 |
| SHIP SHOAL 068 #002 ST1 | SS06800201 | G02917 | 177114096701 |
| SHIP SHOAL 068 #003 | SS06800301 | G02925 | 177114101301 |
| SHIP SHOAL 068 #004 | SS06800402 | G02917 | 177114101802 |
| SHIP SHOAL 068 #005 ST1 | SS06800501 | G02917 | 177114101401 |
| SHIP SHOAL 068 #009 | SS06800900 | G02917 | 177114126000 |
| SHIP SHOAL 068 #010 | SS06801000 | G02917 | 177114135200 |
| SHIP SHOAL 068 #G001 (ORR) | SS068G0100 | G02917 | 177114119400 |
| SHIP SHOAL 068 #G002 | SS068G0200 | G02917 | 177114121200 |
| SHIP SHOAL 091 #A001 | SS091A0100 | G02919 | 177114044300 |
| SHIP SHOAL 091 #A003 | SS091A0300 | G02919 | 177114056800 |
| SHIP SHOAL 091 #A004 ST1 | SS091A0401 | G02919 | 177114062501 |
| SHIP SHOAL 091 #A005 ST1 | SS091A0501 | G02919 | 177114058201 |
| SHIP SHOAL 091 #A006 ST2 | SS091A0602 | G02919 | 177114059202 |
| SHIP SHOAL 091 #B001 ST1 | SS091B0101 | G02919 | 177114066401 |
| SHIP SHOAL 091 #B002 ST1 | SS091B0201 | G02919 | 177114065701 |
| SHIP SHOAL 091 #B003 | SS091B0300 | G02919 | 177114068400 |
| SHIP SHOAL 091 #B004 ST1 | SS091B0401 | G02919 | 177114072101 |
| SHIP SHOAL 091 #B005 | SS091B0500 | G02919 | 177114110800 |
| SHIP SHOAL 105 #007 | SS10500700 | G09614 | 177114130800 |
| SHIP SHOAL 105 #A001 ST1 | SS105A0101 | G09614 | 177114124501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 105 #B004 | SS105B0400 | G09614 | 177114122400 |
| SHIP SHOAL 105 #B006 | SS105B0600 | G09614 | 177114130201 |
| SHIP SHOAL 126 #B001 | SS126B0100 | G12940 | 177114121000 |
| SHIP SHOAL 126 #B002 | SS126B0200 | G12940 | 177114134203 |
| SHIP SHOAL 126 #B003 ST1 | SS126B0301 | G12940 | 177114135401 |
| SHIP SHOAL 129 #A002 ST1 | SS129A0201 | G12941 | 177114117201 |
| SHIP SHOAL 129 #A003 | SS129A0300 | G12941 | 177114120100 |
| SHIP SHOAL 129 #B001 ST1 | SS129B0101 | G12941 | 177114135301 |
| SHIP SHOAL 129 #B002 ST1 | SS129B0201 | G12941 | 177114145501 |
| SHIP SHOAL 129 #L001 | SS129L0100 | G12941 | 177114150000 |
| SHIP SHOAL 129 #L002 | SS129L0200 | G12941 | 177114150300 |
| SHIP SHOAL 145 #E001 | SS145E01 | G34831 | 177114140501 |
| SHIP SHOAL 151 #A001 (ORRI) | SS151A0100 | G15282 | 177114125702 |
| SHIP SHOAL 151 #A002 (ORRI) | SS151A0200 | G15282 | 177114154300 |
| SHIP SHOAL 159 #001 | SS15900100 | G11984 | 177114143701 |
| SHIP SHOAL 169 #BB001 | SS169BB010 | 00820 | 177114048100 |
| SHIP SHOAL 169 #BB002 | SS169BB020 | 00820 | 177114055501 |
| SHIP SHOAL 169 #BB003 | SS169BB030 | 00820 | 177114057800 |
| SHIP SHOAL 169 #BB004 | SS169BB040 | 00820 | 177114056500 |
| SHIP SHOAL 169 #BB005 | SS169BB050 | 00820 | 177114059600 |
| SHIP SHOAL 169 #BB006 | SS169BB060 | 00820 | 177114060101 |
| SHIP SHOAL 169 #C001 | SS169C0100 | 00820 | 177114075600 |
| SHIP SHOAL 169 #C003 | SS169C0300 | 00820 | 177114078500 |
| SHIP SHOAL 169 #C004 | SS169C0400 | 00820 | 177114077400 |
| SHIP SHOAL 169 #C006 | SS169C0600 | 00820 | 177114080201 |
| SHIP SHOAL 169 #C007 | SS169C0700 | 00820 | 177114080601 |
| SHIP SHOAL 169 #C008 | SS169C0800 | 00820 | 177114081300 |
| SHIP SHOAL 169 #C009 | SS169C0900 | 00820 | 177114144400 |
| SHIP SHOAL 169 #C010 | SS169C1000 | 00820 | 177114144800 |
| SHIP SHOAL 169 #G001 | SS169G0100 | 00820 | 177114127400 |
| SHIP SHOAL 169 #G002 | SS169G0200 | 00820 | 177114128500 |
| SHIP SHOAL 169 #G003 | SS169G0300 | 00820 | 177114156600 |
| SHIP SHOAL 175 #A004 | SS175A0400 | G05550 | 177094078900 |
| SHIP SHOAL 176 #001 | SS17600100 | G33646 | 177114155400 |
| SHIP SHOAL 178 #A001 | SS178A0100 | G05551 | 177114076800 |
| SHIP SHOAL 178 #A002A | SS178A0200 | G05551 | 177114080800 |
| SHIP SHOAL 178 #A003 | SS178A0302 | G05551 | 177114081902 |
| SHIP SHOAL 178 #A004 | SS178A0400 | G05551 | 177114082900 |
| SHIP SHOAL 178 #A005 | SS178A0500 | G05551 | 177114082300 |
| SHIP SHOAL 178 #A006 | SS178A0600 | G05551 | 177114113900 |
| SHIP SHOAL 182 #A001 | SS182A0100 | G03998 | 177114059400 |
| SHIP SHOAL 182 #A002 ST1 | SS182A0201 | G03998 | 177114060601 |
| SHIP SHOAL 182 #A003 | SS182A0300 | G03998 | 177114063100 |
| SHIP SHOAL 182 #A004 | SS182A0400 | G03998 | 177114065500 |
| SHIP SHOAL 182 #B001 | SS182B0101 | G03998 | 177114066001 |
| SHIP SHOAL 182 #B002 | SS182B0201 | G03998 | 177114074501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 182 #B003 ST2 | SS182B0402 | G03998 | 177114090502 |
| SHIP SHOAL 182 #B004 | SS182B0400 | G03998 | 177114090800 |
| SHIP SHOAL 182 #B005 | SS182B0500 | G03998 | 177114113600 |
| SHIP SHOAL 182 #B006 | SS182B0600 | G03998 | 177114130500 |
| SHIP SHOAL 182 #C001D ST1 | SS182C01D0 | G03998 | 177114087501 |
| SHIP SHOAL 182 #C002 | SS182C0200 | G03998 | 177114088500 |
| SHIP SHOAL 182 #C003 | SS182C0300 | G03998 | 177114087800 |
| SHIP SHOAL 182 #C004 | SS182C0400 | G03998 | 177114132000 |
| SHIP SHOAL 189 #A001A | SS189A01A0 | G04232 | 177114062000 |
| SHIP SHOAL 189 #A002 | SS189A0201 | G04232 | 177114085301 |
| SHIP SHOAL 189 #A003A | SS189A03A0 | G04232 | 177114085200 |
| SHIP SHOAL 189 #A005 | SS189A0500 | G04232 | 177114088400 |
| SHIP SHOAL 189 #A007 ST2 | SS189A0702 | G04232 | 177114129502 |
| SHIP SHOAL 189 #A008 | SS189A0800 | G04232 | 177114130900 |
| SHIP SHOAL 189 #A009 ST1 | SS189A0901 | G04232 | 177114139801 |
| SHIP SHOAL 189 #A010BP1 | SS189A1001 | G04232 | 177114154701 |
| SHIP SHOAL 189 #A4 (SS210) | SS189A04 | G05204 | 177114086801 |
| SHIP SHOAL 189 #A6 (SS188) | SS189A06 | G05203 | 177114088900 |
| SHIP SHOAL 189 #B001 (ORRI) | SS189B0100 | G04232 | 177114151001 |
| SHIP SHOAL 189 #B002 (ORRI) | SS189B0200 | G04232 | 177114152300 |
| SHIP SHOAL 189 #C001 | SS189C0101 | G04232 | 177114153901 |
| SHIP SHOAL 189 #D001 | SS189D0100 | G04232 | 177114154402 |
| SHIP SHOAL 190 #B001 ST2 | SS190B0103 | G10775 | 177114114803 |
| SHIP SHOAL 190 #B002 | SS190B0200 | G10775 | 177114134700 |
| SHIP SHOAL 193 #A001 ST1 | SS193A0101 | G13917 | 177114112301 |
| SHIP SHOAL 193 #A002 ST1 | SS193A0201 | G13917 | 177114112601 |
| SHIP SHOAL 193 #A003 | SS193A0300 | G13917 | 177114115300 |
| SHIP SHOAL 193 #A004 ST1 | SS193A0401 | G13917 | 177114116001 |
| SHIP SHOAL 193 #A005 ST1 | SS193A0501 | G13917 | 177114117301 |
| SHIP SHOAL 193 #A006 ST5 | SS193A0605 | G13917 | 177114123005 |
| SHIP SHOAL 193 #A007 ST1 | SS193A0701 | G13917 | 177114139501 |
| SHIP SHOAL 193 #M001 | SS193M0100 | G13917 | 177114148500 |
| SHIP SHOAL 194 #A001 | SS194A0100 | G15288 | 177114121300 |
| SHIP SHOAL 194 #A002 ST1 | SS194A0201 | G15288 | 177114121701 |
| SHIP SHOAL 198 #J011 | SS198J1100 | 00593 | 177114147800 |
| SHIP SHOAL 204 #A008 | SS204A0800 | G01520 | 177110083000 |
| SHIP SHOAL 204 #A015 ST1 | SS204A1501 | G01520 | 177112003401 |
| SHIP SHOAL 204 #A016 | SS204A1601 | G01520 | 177112005401 |
| SHIP SHOAL 204 #A020 | SS204A2000 | G01520 | 177112012600 |
| SHIP SHOAL 204 #A024 ST1 | SS204A2401 | G01520 | 177112017701 |
| SHIP SHOAL 204 #A028 ST3 | SS204A2803 | G01520 | 177110071003 |
| SHIP SHOAL 204 #A030A | SS204A30A1 | G01520 | 177114002801 |
| SHIP SHOAL 204 #A031 | SS204A3101 | G01520 | 177110084201 |
| SHIP SHOAL 204 #A034 | SS204A3400 | G01520 | 177114146700 |
| SHIP SHOAL 204 #A035 | SS204A3502 | G01520 | 177114147402 |
| SHIP SHOAL 204 #A036 ST1 | SS204A3603 | G01520 | 177114146803 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 206 #E002 | SS206E0201 | G01522 | 177114118101 |
| SHIP SHOAL 206 #E003 | SS206E0301 | G01522 | 177114118201 |
| SHIP SHOAL 206 #E004 | SS206E0400 | G01522 | 177114141800 |
| SHIP SHOAL 206 #E005 | SS206E0500 | G01522 | 177114142000 |
| SHIP SHOAL 207 #A003 ST1 | SS207A0301 | G01523 | 177110072801 |
| SHIP SHOAL 207 #A004B | SS207A04B0 | G01523 | 177110075500 |
| SHIP SHOAL 207 #A006D | SS207A06D0 | G01523 | 177110078200 |
| SHIP SHOAL 207 #A008B | SS207A08B0 | G01523 | 177110080700 |
| SHIP SHOAL 207 #A009 | SS207A0900 | G01523 | 177110082400 |
| SHIP SHOAL 207 #A010D | SS207A10D0 | G01523 | 177110083900 |
| SHIP SHOAL 207 #A013 | SS207A1300 | G01523 | 177112002500 |
| SHIP SHOAL 207 #A015 ST1 | SS207A1501 | G01523 | 177112010601 |
| SHIP SHOAL 207 #A016 ST1 | SS207A1601 | G01523 | 177112011401 |
| SHIP SHOAL 207 #A018 | SS207A1800 | G01523 | 177112005000 |
| SHIP SHOAL 207 #A019ST | SS207A1901 | G01523 | 177114009401 |
| SHIP SHOAL 207 #A020 | SS207A2000 | G01523 | 177114010300 |
| SHIP SHOAL 207 #A022 ST1 | SS207A2201 | G01523 | 177114011301 |
| SHIP SHOAL 207 #A023B | SS207A23B0 | G01523 | 177114013500 |
| SHIP SHOAL 207 #A024 | SS207A2400 | G01523 | 177114014300 |
| SHIP SHOAL 207 #A025 | SS207A2500 | G01523 | 177114015500 |
| SHIP SHOAL 207 #A026 | SS207A2601 | G01523 | 177112001101 |
| SHIP SHOAL 207 #A027 | SS207A2701 | G01523 | 177110079401 |
| SHIP SHOAL 207 #A028 | SS207A2801 | G01523 | 177110077301 |
| SHIP SHOAL 207 #A029 ST | SS207A2901 | G01523 | 177112001901 |
| SHIP SHOAL 207 #A030 | SS207A3001 | G01523 | 177110071501 |
| SHIP SHOAL 207 #A031 ST2 | SS207A3102 | G01523 | 177114117702 |
| SHIP SHOAL 207 #A032 | SS207A3201 | G01523 | 177114119701 |
| SHIP SHOAL 207 #A033 ST1 | SS207A3301 | G01523 | 177114121901 |
| SHIP SHOAL 207 #A034 | SS207A3400 | G01523 | 177114122200 |
| SHIP SHOAL 207 #A035 ST1 | SS207A3501 | G01523 | 177114133301 |
| SHIP SHOAL 207 #A036 | SS207A3600 | G01523 | 177114137700 |
| SHIP SHOAL 207 #D002 | SS207D0200 | G01523 | 177114025400 |
| SHIP SHOAL 207 #D007 | SS207D0700 | G01523 | 177114030300 |
| SHIP SHOAL 207 #D008 | SS207D0800 | G01523 | 177114032300 |
| SHIP SHOAL 207 #D009 | SS207D0900 | G01523 | 177114116400 |
| SHIP SHOAL 207 #D010 ST1 | SS207D1001 | G01523 | 177114116501 |
| SHIP SHOAL 216 #C004 ST1 | SS216C0401 | G01524 | 177112014901 |
| SHIP SHOAL 216 #C005A | SS216C05A0 | G01524 | 177112017400 |
| SHIP SHOAL 216 #C007 ST1 | SS216C0701 | G01524 | 177114001201 |
| SHIP SHOAL 216 #C009 ST1 | SS216C0901 | G01524 | 177114003801 |
| SHIP SHOAL 216 #C010 | SS216C1000 | G01524 | 177114004900 |
| SHIP SHOAL 216 #C012C | SS216C12C0 | G01524 | 177114006700 |
| SHIP SHOAL 216 #C013 | SS216C1300 | G01524 | 177114007700 |
| SHIP SHOAL 216 #C015 | SS216C1500 | G01524 | 177114009000 |
| SHIP SHOAL 216 #C016 | SS216C1601 | G01524 | 177114000101 |
| SHIP SHOAL 216 #C017A | SS216C17A1 | G01524 | 177114003001 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 216 #C019 | SS216C1900 | G01524 | 177114031900 |
| SHIP SHOAL 216 #C023 | SS216C2300 | G01524 | 177114134600 |
| SHIP SHOAL 216 #C024 ST2 | SS216C2402 | G01524 | 177114135102 |
| SHIP SHOAL 243 #A001 (ORRI) | SS243A0100 | G10780 | 177124051700 |
| SHIP SHOAL 243 #A004 (ORRI) | SS243A0400 | G10780 | 177124059402 |
| SHIP SHOAL 243 #A006 (ORRI) | SS243A0600 | G10780 | 177124064901 |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177112020800 |
| SHIP SHOAL 259 #001 | SS25900100 | G05044 | 177124028500 |
| SHIP SHOAL 259 #JA001 ST2 | SS259JA102 | G05044 | 177124035002 |
| SHIP SHOAL 259 #JA002 | SS259JA201 | G05044 | 177124035301 |
| SHIP SHOAL 259 #JA003 ST2 | SS259JA302 | G05044 | 177124035402 |
| SHIP SHOAL 259 #JA004 | SS259JA400 | G05044 | 177124035600 |
| SHIP SHOAL 259 #JA005 ST1 | SS259JA501 | G05044 | 177124035801 |
| SHIP SHOAL 259 #JA006 | SS259JA600 | G05044 | 177124035900 |
| SHIP SHOAL 259 #JA007 | SS259JA700 | G05044 | 177124064200 |
| SHIP SHOAL 259 #JA008 ST2 | SS259JA802 | G05044 | 177124064402 |
| SHIP SHOAL 259 #JA009 | SS259JA900 | G05044 | 177124064500 |
| SHIP SHOAL 259 #JA010 ST1 | SS259JA101 | G05044 | 177124065501 |
| SHIP SHOAL 274 #A001 | SS274A0100 | G01039 | 177120001500 |
| SHIP SHOAL 274 #A002 | SS274A0200 | G01039 | 177120001600 |
| SHIP SHOAL 274 #A003 | SS274A0300 | G01039 | 177120001700 |
| SHIP SHOAL 274 #A004 | SS274A0400 | G01039 | 177120001800 |
| SHIP SHOAL 274 #A006 | SS274A0601 | G01039 | 177120002001 |
| SHIP SHOAL 274 #A008 | SS274A0800 | G01039 | 177120002200 |
| SHIP SHOAL 274 #A010 | SS274A1001 | G01039 | 177120002401 |
| SHIP SHOAL 274 #A012 | SS274A1201 | G01039 | 177120002601 |
| SHIP SHOAL 274 #A013 | SS274A1300 | G01039 | 177120002700 |
| SHIP SHOAL 274 #A014 | SS274A1403 | G01039 | 177120001903 |
| SHIP SHOAL 274 #A016 | SS274A1602 | G01039 | 177120010202 |
| SHIP SHOAL 274 #C001 | SS274C0100 | G01039 | 177124038900 |
| SHIP SHOAL 274 #C002 | SS274C0200 | G01039 | 177124038800 |
| SHIP SHOAL 274 #C003 | SS274C0300 | G01039 | 177124039000 |
| SHIP SHOAL 274 #C004 | SS274C0400 | G01039 | 177124039100 |
| SHIP SHOAL 274 #C005 WIW | SS274C0500 | G01039 | 177124039200 |
| SHIP SHOAL 274 #C006 WSW | SS274C0600 | G01039 | 177124039300 |
| SHIP SHOAL 274 #C007 | SS274C0700 | G01039 | 177124039900 |
| SHIP SHOAL 274 #C008 | SS274C0800 | G01039 | 177124040300 |
| SHIP SHOAL 274 #C009 | SS274C0900 | G01039 | 177124040200 |
| SHIP SHOAL 274 #C010 WIW | SS274C1000 | G01039 | 177124040000 |
| SHIP SHOAL 274 #C011 | SS274C1100 | G01039 | 177124040100 |
| SHIP SHOAL 274 #C012 | SS274C1200 | G01039 | 177124040700 |
| SHIP SHOAL 274 #C013 | SS274C1300 | G01039 | 177124040800 |
| SHIP SHOAL 274 #C014 | SS274C1400 | G01039 | 177124040900 |
| SHIP SHOAL 274 #C015 | SS274C1500 | G01039 | 177124041400 |
| SHIP SHOAL 274 #C016 | SS274C1600 | G01039 | 177124041300 |
| SHIP SHOAL 274 #C017 | SS274C1701 | G01039 | 177124041501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 274 #C018 | SS274C1800 | G01039 | 177124041800 |
| SHIP SHOAL 274 #C019 WSW | SS274C1900 | G01039 | 177124042000 |
| SHIP SHOAL 274 #C020 | SS274C2000 | G01039 | 177124041900 |
| SHIP SHOAL 274 #C021 | SS274C2100 | G01039 | 177124042600 |
| SHIP SHOAL 274 #C022 | SS274C2201 | G01039 | 177124056102 |
| SHIP SHOAL 274 #C023 | SS274C2300 | G01039 | 177124059600 |
| SHIP SHOAL 274 #C024 | SS274C2400 | G01039 | 177124060100 |
| SHIP SHOAL 276 #A6 | - | G10785 | 177124042500 |
| SHIP SHOAL 276 #A7 | - | G10785 | 177124043000 |
| SHIP SHOAL 314 #A002 | SS314A0200 | G26074 | 177124047202 |
| SHIP SHOAL 314 #A004 (ORRI) | SS314A0400 | G26074 | 177124047500 |
| SHIP SHOAL 354 #A001 ST2 | SS354A0102 | G15312 | 177124055202 |
| SHIP SHOAL 354 #A002 ST2 | SS354A0202 | G15312 | 177124056002 |
| SHIP SHOAL 354 #A003 ST1 | SS354A0301 | G15312 | 177124057901 |
| SHIP SHOAL 354 #A004 ST1 | SS354A0401 | G15312 | 177124057701 |
| SHIP SHOAL 354 #A005 | SS354A0500 | G15312 | 177124065600 |
| SHIP SHOAL 354 #A006 | SS354A0600 | G15312 | 177124066000 |
| SHIP SHOAL 354 #A007 ST1 | SS354A0701 | G15312 | 177124066101 |
| SHIP SHOAL 354 #A008 | SS354A0800 | G15312 | 177124066200 |
| SHIP SHOAL206#E001(SS207E1 | SS207E0100 | G01523 | 177114115500 |
| SOUTH MARSH IS 010 #004 | SM01000400 | G01181 | 177074089700 |
| SOUTH MARSH IS 010 #A002 | SM010A0200 | G01181 | 177070050200 |
| SOUTH MARSH IS 010 #A003 | SM010A0300 | G01181 | 177074043200 |
| SOUTH MARSH IS 010 #A004 | SM010A0400 | G01181 | 177070050600 |
| SOUTH MARSH IS 010 #A007 | SM010A0700 | G01181 | 177070051300 |
| SOUTH MARSH IS 010 #A008 | SM010A0800 | G01181 | 177070052100 |
| SOUTH MARSH IS 010 #A009E | SM010A09E0 | G01181 | 177072000000 |
| SOUTH MARSH IS 010 #A011 | SM010A1100 | G01181 | 177072000500 |
| SOUTH MARSH IS 010 #A012 | SM010A1200 | G01181 | 177072001100 |
| SOUTH MARSH IS 010 #A013 ST1 | SM010A1301 | G01181 | 177072000401 |
| SOUTH MARSH IS 010 #A017 | SM010A1700 | G01181 | 177074032300 |
| SOUTH MARSH IS 010 #A019 | SM010A1901 | G01181 | 177074046301 |
| SOUTH MARSH IS 010 #A021 | SM010A2100 | G01181 | 177074075200 |
| SOUTH MARSH IS 011 #034 | SM01103400 | G01182 | 177072004300 |
| SOUTH MARSH IS 011 #058 BP2 | SM01105802 | G01182 | 177074090702 |
| SOUTH MARSH IS 018 #A001 ST1 | SM018A0101 | G08680 | 177074057701 |
| SOUTH MARSH IS 018 #A002 | SM018A0200 | G08680 | 177074064900 |
| SOUTH MARSH IS 018 #A003 | SM018A0300 | G08680 | 177074070300 |
| SOUTH MARSH IS 048 #E002 | SM048E0201 | 00786 | 177072002801 |
| SOUTH MARSH IS 048 #E003 ST1BP | SM048E0302 | 00786 | 177072003302 |
| SOUTH MARSH IS 048 #E004 | SM048E0401 | 00786 | 177072004001 |
| SOUTH MARSH IS 048 #E005 | SM048E0500 | 00786 | 177072004800 |
| SOUTH MARSH IS 048 #E007 | SM048E07 | 00786 | 177074092300 |
| SOUTH MARSH IS 066 #C001 | SM066C0100 | G01198 | 177070041200 |
| SOUTH MARSH IS 066 #C002 | SM066C0200 | G01198 | 177070049000 |
| SOUTH MARSH IS 066 #C003 | SM066C0300 | G01198 | 177074005800 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 066 #C004 | SM066C0400 | G01198 | 177070050000 |
| SOUTH MARSH IS 066 #C005 | SM066C0500 | G01198 | 177070050700 |
| SOUTH MARSH IS 066 #C006 | SM066C0600 | G01198 | 177072018700 |
| SOUTH MARSH IS 066 #C007 | SM066C0700 | G01198 | 177070052800 |
| SOUTH MARSH IS 066 #C009B | SM066C09B0 | G01198 | 177072001200 |
| SOUTH MARSH IS 066 #C010 ST2 | SM066C1002 | G01198 | 177072002502 |
| SOUTH MARSH IS 066 #C011 | SM066C1100 | G01198 | 177074072900 |
| SOUTH MARSH IS 066 #C012 | SM066C1200 | G01198 | 177074073500 |
| SOUTH MARSH IS 066 #D001 | SM066D0100 | G01198 | 177074025400 |
| SOUTH MARSH IS 066 #D003 | SM066D0300 | G01198 | 177074029000 |
| SOUTH MARSH IS 066 #D004 | SM066D0400 | G01198 | 177074032000 |
| SOUTH MARSH IS 066 #D005 | SM066D0500 | G01198 | 177074032600 |
| SOUTH MARSH IS 066 #D006 ST | SM066D0601 | G01198 | 177074031201 |
| SOUTH MARSH IS 066 #D007 ST1BP | SM066D0701 | G01198 | 177074027401 |
| SOUTH MARSH IS 076 #F001 BP2 | SM076F0102 | G01208 | 177084095402 |
| SOUTH MARSH IS 076 #F002 | SM076F0200 | G01208 | 177084095500 |
| SOUTH MARSH IS 105 #A001 | SM105A0100 | G17938 | 177084089700 |
| SOUTH MARSH IS 105 #A002 ST1 | SM105A0201 | G17938 | 177084089901 |
| SOUTH MARSH IS 106 #A001N | SM106A01N0 | G03776 | 177084038200 |
| SOUTH MARSH IS 106 #A002 ST | SM106A02N1 | G03776 | 177084038701 |
| SOUTH MARSH IS 106 #A003N | SM106A03N0 | G03776 | 177084039100 |
| SOUTH MARSH IS 106 #A004 | SM106A04N0 | G03776 | 177084040600 |
| SOUTH MARSH IS 106 #A005 ST2 | SM106A05N2 | G03776 | 177084047202 |
| SOUTH MARSH IS 106 #A006 ST1 | SM106A06N1 | G03776 | 177084048401 |
| SOUTH MARSH IS 106 #A007 | SM106A07N0 | G03776 | 177084048600 |
| SOUTH MARSH IS 106 #A008 | SM106A08N0 | G03776 | 177084049100 |
| SOUTH MARSH IS 106 #A009 ST1 | SM106A09N1 | G03776 | 177084049801 |
| SOUTH MARSH IS 106 #A010 | SM106A10N0 | G03776 | 177084051300 |
| SOUTH MARSH IS 106 #A011 ST2 | SM106A11N2 | G03776 | 177084052302 |
| SOUTH MARSH IS 106 #A013 | SM106A13N0 | G03776 | 177084081200 |
| SOUTH MARSH IS 106 #A014 | SM106A14N0 | G03776 | 177084082000 |
| SOUTH MARSH IS 106 #A015 | SM106A15N0 | G03776 | 177084082600 |
| SOUTH MARSH IS 106 #A016 | SM106A16N0 | G03776 | 177084082700 |
| SOUTH MARSH IS 106 #A017 | SM106A17N0 | G03776 | 177084082800 |
| SOUTH MARSH IS 106 #A020 | SM106A20S0 | G02279 | 177084082200 |
| SOUTH MARSH IS 106#A012ST2 | SM106A12S2 | G02279 | 177084053602 |
| SOUTH MARSH IS 108 #A018 | SM108A1800 | 00792 | 177084094500 |
| SOUTH MARSH IS 127 #B011 | SM127B1100 | G02883 | 177084015800 |
| SOUTH MARSH IS 127 #B017 | SM127B17S1 | G02883 | 177084025801 |
| SOUTH MARSH IS 127 #B022 ST1 | SM127B2201 | G02883 | 177084078501 |
| SOUTH MARSH IS 128 #A002 | SM128A0200 | G02587 | 177084014300 |
| SOUTH MARSH IS 128 #A003 | SM128A0300 | G02587 | 177084013400 |
| SOUTH MARSH IS 128 #A004C ST1 | SM128A04C1 | G02587 | 177084014601 |
| SOUTH MARSH IS 128 #A005 | SM128A0500 | G02587 | 177084015000 |
| SOUTH MARSH IS 128 #A006 ST1 | SM128A0601 | G02587 | 177084016101 |
| SOUTH MARSH IS 128 #A007 | SM128A0700 | G02587 | 177084015500 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 128 #A009 | SM128A0900 | G02587 | 177084019100 |
| SOUTH MARSH IS 128 #A010 | SM128A1002 | G02587 | 177084019302 |
| SOUTH MARSH IS 128 #A011 ST3 | SM128A1103 | G02587 | 177084017103 |
| SOUTH MARSH IS 128 #A012 | SM128A1200 | G02587 | 177084023600 |
| SOUTH MARSH IS 128 #A013 ST2 | SM128A1302 | G02587 | 177084024002 |
| SOUTH MARSH IS 128 #A014 | SM128A1400 | G02587 | 177084026100 |
| SOUTH MARSH IS 128 #A015 ST2 | SM128A1502 | G02587 | 177084012902 |
| SOUTH MARSH IS 128 #A016 ST1 | SM128A1601 | G02587 | 177084033301 |
| SOUTH MARSH IS 128 #A017 ST1 | SM128A1702 | G02587 | 177084028202 |
| SOUTH MARSH IS 128 #A018 | SM128A1800 | G02587 | 177084030300 |
| SOUTH MARSH IS 128 #A019 | SM128A1900 | G02587 | 177084035100 |
| SOUTH MARSH IS 128 #A021 | SM128A2100 | G02587 | 177084035200 |
| SOUTH MARSH IS 128 #A022 ST2 | SM128A2202 | G02587 | 177084034402 |
| SOUTH MARSH IS 128 #A023 ST1 | SM128A2301 | G02587 | 177084037601 |
| SOUTH MARSH IS 128 #A024 | SM128A2400 | G02587 | 177084039700 |
| SOUTH MARSH IS 128 #A025 | SM128A2500 | G02587 | 177084040000 |
| SOUTH MARSH IS 128 #A026 | SM128A2600 | G02587 | 177084039900 |
| SOUTH MARSH IS 128 #B001A | SM128B01D0 | G02587 | 177084011000 |
| SOUTH MARSH IS 128 #B002 ST1 | SM128B0201 | G02587 | 177084014401 |
| SOUTH MARSH IS 128 #B003 ST1 | SM128B0301 | G02587 | 177084011601 |
| SOUTH MARSH IS 128 #B005D | SM128B05D0 | G02587 | 177084012700 |
| SOUTH MARSH IS 128 #B006 ST2 | SM128B0602 | G02587 | 177084012202 |
| SOUTH MARSH IS 128 #B007 ST2 | SM128B0702 | G02587 | 177084014502 |
| SOUTH MARSH IS 128 #B008A | SM128B08A0 | G02587 | 177084014700 |
| SOUTH MARSH IS 128 #B009 | SM128B0900 | G02587 | 177084014900 |
| SOUTH MARSH IS 128 #B010 | SM128B1000 | G02587 | 177084015600 |
| SOUTH MARSH IS 128 #B012 ST1 | SM128B1201 | G02587 | 177084016401 |
| SOUTH MARSH IS 128 #B013 | SM128B1300 | G02587 | 177084023500 |
| SOUTH MARSH IS 128 #B015 | SM128B1500 | G02587 | 177084024700 |
| SOUTH MARSH IS 128 #B016 | SM128B1600 | G02587 | 177084025300 |
| SOUTH MARSH IS 128 #B018 | SM128B1800 | G02587 | 177084029200 |
| SOUTH MARSH IS 128 #B019 | SM128B1900 | G02587 | 177084030600 |
| SOUTH MARSH IS 128 #B020 | SM128B2000 | G02587 | 177084063300 |
| SOUTH MARSH IS 128 #B021 | SM128B2100 | G02587 | 177084078200 |
| SOUTH MARSH IS 128 #B024 | SM128B2400 | G02587 | 177084088600 |
| SOUTH MARSH IS 128 #C001 | SM128C0100 | G02587 | 177084028600 |
| SOUTH MARSH IS 128 #C002 | SM128C0200 | G02587 | 177084027300 |
| SOUTH MARSH IS 128 #C003 | SM128C0300 | G02587 | 177084029600 |
| SOUTH MARSH IS 128 #C004A | SM128C04A0 | G02587 | 177084030000 |
| SOUTH MARSH IS 128 #C005A | SM128C05A0 | G02587 | 177084030700 |
| SOUTH MARSH IS 128 #C006A | SM128C06A0 | G02587 | 177084031300 |
| SOUTH MARSH IS 128 #C007 | SM128C0700 | G02587 | 177084031700 |
| SOUTH MARSH IS 128 #C008 | SM128C0800 | G02587 | 177084032000 |
| SOUTH MARSH IS 128 #C009 | SM128C0900 | G02587 | 177084034900 |
| SOUTH MARSH IS 128 #C010D | SM128C10D0 | G02587 | 177084035000 |
| SOUTH MARSH IS 128 #C011 | SM128C1100 | G02587 | 177084036400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 128 #C012A | SM128C12A0 | G02587 | 177084037300 |
| SOUTH MARSH IS 128 #C013 | SM128C1300 | G02587 | 177084037700 |
| SOUTH MARSH IS 128 #C014 | SM128C1400 | G02587 | 177084038900 |
| SOUTH MARSH IS 128 #C015A | SM128C15A0 | G02587 | 177084039300 |
| SOUTH MARSH IS 128 #C016 | SM128C1600 | G02587 | 177084062000 |
| SOUTH MARSH IS 128 #C017A | SM128C17A0 | G02587 | 177084062600 |
| SOUTH MARSH IS 128 #C018D | SM128C18D0 | G02587 | 177084062900 |
| SOUTH MARSH IS 128 #C019 | SM128C1900 | G02587 | 177084088000 |
| SOUTH MARSH IS 128 #C020 | SM128C2000 | G02587 | 177084088100 |
| SOUTH MARSH IS 128 #C021 | SM128C2101 | G02587 | 177084088201 |
| SOUTH MARSH IS 132 #B002 | SM132B0200 | G02282 | 177084031800 |
| SOUTH MARSH IS 132 #B003 ST1 | SM132B0301 | G02282 | 177084031601 |
| SOUTH MARSH IS 132 #B004 | SM132B0400 | G02282 | 177084033000 |
| SOUTH MARSH IS 132 #B005 | SM132B0500 | G02282 | 177084033500 |
| SOUTH MARSH IS 132 #B006 | SM132B0600 | G02282 | 177084033900 |
| SOUTH MARSH IS 132 #B007 | SM132B0700 | G02282 | 177084034100 |
| SOUTH MARSH IS 132 #B008 | SM132B0800 | G02282 | 177084035500 |
| SOUTH MARSH IS 132 #B009 | SM132B0900 | G02282 | 177084036200 |
| SOUTH MARSH IS 132 #B010 | SM132B1000 | G02282 | 177084036500 |
| SOUTH MARSH IS 132 #B011 | SM132B1100 | G02282 | 177084037800 |
| SOUTH MARSH IS 135 #C003 BP1 | SM135C0301 | G19776 | 177084089401 |
| SOUTH MARSH IS 136 #A004 | SM136A0400 | G02588 | 177084021900 |
| SOUTH MARSH IS 136 #A008 | SM136A08 | G02588 | 177084032401 |
| SOUTH MARSH IS 136 #A010 | SM136A1000 | G02588 | 177084035700 |
| SOUTH MARSH IS 136 #A015 | SM136A1500 | G02588 | 177084071200 |
| SOUTH MARSH IS 136 #C007 | SM136C0700 | G02588 | 177084091900 |
| SOUTH MARSH IS 137 #A001 | SM137A0100 | G02589 | 177084007700 |
| SOUTH MARSH IS 137 #A003 | SM137A0300 | G02589 | 177084020400 |
| SOUTH MARSH IS 137 #A005 | SM137A0500 | G02589 | 177084024100 |
| SOUTH MARSH IS 137 #A009 | SM137A0900 | G02589 | 177084034600 |
| SOUTH MARSH IS 137 #A011 ST1 | SM137A1101 | G02589 | 177084030201 |
| SOUTH MARSH IS 137 #A012 | SM137A1200 | G02589 | 177084040400 |
| SOUTH MARSH IS 137 #A013 | SM137A1300 | G02589 | 177084042900 |
| SOUTH MARSH IS 137 #A014 | SM137A1400 | G02589 | 177084045000 |
| SOUTH MARSH IS 137 #A018 | SM137A1800 | G02589 | 177084072800 |
| SOUTH MARSH IS 141 #B014C | SM141B14C1 | G02885 | 177084025701 |
| SOUTH MARSH IS 141 #B023A | SM141B23A0 | G02885 | 177084079100 |
| SOUTH MARSH IS 149 #C001 ST1 | SM149C0101 | G02592 | 177084088901 |
| SOUTH MARSH IS 149 #C002 | SM149C0200 | G02592 | 177084089100 |
| SOUTH MARSH IS 149 #C004 | SM149C0400 | G02592 | 177084090300 |
| SOUTH MARSH IS 149 #C005 | SM149C0500 | G02592 | 177084090400 |
| SOUTH MARSH IS 149 #D001 | SM149D0101 | G02592 | 177084094401 |
| SOUTH MARSH IS 150 #C006 BP2 | SM150C0600 | G16325 | 177084091802 |
| SOUTH MARSH IS 150 #D002 | SM150D0200 | G16325 | 177084095700 |
| SOUTH MARSH IS 150 #D003 | SM150D0301 | G16325 | 177084096401 |
| SOUTH MARSH IS 161 #A014 ORRI | SM161A1400 | G04809 | 177084061401 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 161 #A015 ORRI | SM161A1500 | G04809 | 177084090501 |
| SOUTH MARSH IS 236 #139 (ORRI) | SM23613900 | 00310 | 177074053802 |
| SOUTH MARSH IS 236 #144 ORRI | SM23614400 | 00310 | 177074058600 |
| SOUTH MARSH IS 236 #160 (ORRI) | SM23616000 | 00310 | 177074058700 |
| SOUTH MARSH IS 236 #A001 ORRI | SM236A0100 | 00310 | 177074037700 |
| SOUTH MARSH IS 236 #A003 ORRI | SM236A0300 | 00310 | 177074040800 |
| SOUTH MARSH IS 236 #A005 ORRI | SM236A0500 | 00310 | 177074041100 |
| SOUTH MARSH IS 236 #A009 ORRI | SM236A0900 | 00310 | 177074044000 |
| SOUTH MARSH IS 240 #0200 | SM24020000 | 00310 | 177074078800 |
| SOUTH MARSH IS 240 #153 | SM240153 | 00310 | 177074061100 |
| SOUTH MARSH IS 240 #156 | SM24015600 | 00310 | 177074061800 |
| SOUTH MARSH IS 240 #191 | SM24019101 | 00310 | 177074073600 |
| SOUTH MARSH IS 240 #196 | SM24019600 | 00310 | 177074075800 |
| SOUTH MARSH IS 240 #E001 | SM240E0100 | 00310 | 177074060900 |
| SOUTH MARSH IS 240 #E002 | SM240E0200 | 00310 | 177074065600 |
| SOUTH MARSH IS 241 #302 | SM241302 | 00310 | 177074042001 |
| SOUTH MARSH IS 268 #A002C | SM268A02C0 | G02310 | 177074007600 |
| SOUTH MARSH IS 268 #A007A | SM268A07A0 | G02310 | 177074013600 |
| SOUTH MARSH IS 268 #A017B | SM268A17B0 | G02310 | 177074016800 |
| SOUTH MARSH IS 268 #D001 | SM268D0100 | G02310 | 177074020600 |
| SOUTH MARSH IS 268 #D003D | SM268D03D0 | G02310 | 177074021600 |
| SOUTH MARSH IS 268 #D004 | SM268D0400 | G02310 | 177074022500 |
| SOUTH MARSH IS 268 #D006 | SM268D0600 | G02310 | 177074024700 |
| SOUTH MARSH IS 268 #D007 | SM268D0700 | G02310 | 177074025700 |
| SOUTH MARSH IS 268 #D012 | SM268D1200 | G02310 | 177074028700 |
| SOUTH MARSH IS 268 #D016D | SM268D16D1 | G02310 | 177074029901 |
| SOUTH MARSH IS 269 #A021B | SM269A21B0 | G02311 | 177074018100 |
| SOUTH MARSH IS 269 #B002 | SM269B0200 | G02311 | 177074008100 |
| SOUTH MARSH IS 269 #B017 ST1 | SM269B1701 | G02311 | 177074075701 |
| SOUTH MARSH IS 269 #B019 BP1 | SM269B1901 | G02311 | 177074088501 |
| SOUTH MARSH IS 269 #F001 ST1 | SM269F0101 | G02311 | 177074080401 |
| SOUTH MARSH IS 280 #G001 | SM280G0100 | G14456 | 177074071400 |
| SOUTH MARSH IS 280 #G002 | SM280G0200 | G14456 | 177074080700 |
| SOUTH MARSH IS 280 #H001 ST1 | SM280H0102 | G14456 | 177074081802 |
| SOUTH MARSH IS 280 #H002 STB | SM280H0203 | G14456 | 177074082303 |
| SOUTH MARSH IS 281 #C001 | SM281C0100 | G02600 | 177074012500 |
| SOUTH MARSH IS 281 #C003A | SM281C03A0 | G02600 | 177074013900 |
| SOUTH MARSH IS 281 #C005A | SM281C05A0 | G02600 | 177074015300 |
| SOUTH MARSH IS 281 #C006 | SM281C0600 | G02600 | 177074015800 |
| SOUTH MARSH IS 281 #C008 ST1 | SM281C0801 | G02600 | 177074017701 |
| SOUTH MARSH IS 281 #C010 ST | SM281C1001 | G02600 | 177074020701 |
| SOUTH MARSH IS 281 #C011 ST1 | SM281C1101 | G02600 | 177074022401 |
| SOUTH MARSH IS 281 #C012A | SM281C12A0 | G02600 | 177074024100 |
| SOUTH MARSH IS 281 #C014 ST | SM281C1401 | G02600 | 177074026901 |
| SOUTH MARSH IS 281 #C015 | SM281C1500 | G02600 | 177074028300 |
| SOUTH MARSH IS 281 #C016C | SM281C16C0 | G02600 | 177074029600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 281 #C017 | SM281C1700 | G02600 | 177074030500 |
| SOUTH MARSH IS 281 #C019B | SM281C19B0 | G02600 | 177074034400 |
| SOUTH MARSH IS 281 #C020 ST1 | SM281C2001 | G02600 | 177074034901 |
| SOUTH MARSH IS 281 #C021B | SM281C21B0 | G02600 | 177074035500 |
| SOUTH MARSH IS 281 #C023 ST2 | SM281C2302 | G02600 | 177074036802 |
| SOUTH MARSH IS 281 #C024 | SM281C2400 | G02600 | 177074037300 |
| SOUTH MARSH IS 281 #C025 | SM281C2500 | G02600 | 177074083500 |
| SOUTH MARSH IS 281 #C026 | SM281C2600 | G02600 | 177074083700 |
| SOUTH MARSH IS 281 #C027 | SM281C2700 | G02600 | 177074085200 |
| SOUTH MARSH IS 281 #C028 BP2 | SM281C2802 | G02600 | 177074089402 |
| SOUTH MARSH IS 281 #D002 | SM281D0200 | G02600 | 177074021100 |
| SOUTH MARSH IS 281 #D009 | SM281D0900 | G02600 | 177074027100 |
| SOUTH MARSH IS 281 #D010A | SM281D10A0 | G02600 | 177074027500 |
| SOUTH MARSH IS 281 #D011 | SM281D1100 | G02600 | 177074028000 |
| SOUTH MARSH IS 281 #D013 | SM281D1300 | G02600 | 177074029100 |
| SOUTH MARSH IS 281 #D014A | SM281D14A0 | G02600 | 177074029700 |
| SOUTH MARSH IS 281 #D05A | SM281D05A0 | G02600 | 177074023200 |
| SOUTH MARSH IS 281 #D08A | SM281D08A0 | G02600 | 177074026600 |
| SOUTH MARSH IS 281 #E001D | SM281E01D0 | G02600 | 177074018500 |
| SOUTH MARSH IS 281 #E002A | SM281E02A0 | G02600 | 177074024600 |
| SOUTH MARSH IS 281 #E003 | SM281E0300 | G02600 | 177074027800 |
| SOUTH MARSH IS 281 #E004 | SM281E0400 | G02600 | 177074028500 |
| SOUTH MARSH IS 281 #E005A | SM281E05A0 | G02600 | 177074029300 |
| SOUTH MARSH IS 281 #E006 | SM281E0601 | G02600 | 177074030101 |
| SOUTH MARSH IS 281 #E007 | SM281E0700 | G02600 | 177074031600 |
| SOUTH MARSH IS 281 #E008A | SM281E08A1 | G02600 | 177074033101 |
| SOUTH MARSH IS 281 #E009A | SM281E09A0 | G02600 | 177074033800 |
| SOUTH MARSH IS 281 #E010A | SM281E10A0 | G02600 | 177074034800 |
| SOUTH MARSH IS 281 #E011 ST | SM281E1101 | G02600 | 177074035601 |
| SOUTH MARSH IS 281 #E012 | SM281E1200 | G02600 | 177074036000 |
| SOUTH MARSH IS 281 #E013 | SM281E1300 | G02600 | 177074036600 |
| SOUTH MARSH IS 281 #E014 | SM281E1400 | G02600 | 177074038600 |
| SOUTH MARSH IS 281 #I001 | SM281I0101 | G02600 | 177074082601 |
| SOUTH MARSH IS 281 #I002 ST1 | SM281I0201 | G02600 | 177074082701 |
| SOUTH MARSH IS 281 #I003 | SM281I0300 | G02600 | 177074082800 |
| SOUTH MARSH IS 48 # E 6 | SM048E06 | 00786 | 177074066702 |
| SOUTH PASS 061 #D004 ST2 | SP061D0402 | G01609 | 177234006302 |
| SOUTH PASS 061 #D023 | SP061D2300 | G01609 | 177234008200 |
| SOUTH PASS 061 #D024 ST1 | SP061D2401 | G01609 | 177234007701 |
| SOUTH PASS 061 #D025 | SP061D2500 | G01609 | 177234008300 |
| SOUTH PASS 061 #D026 | SP061D2600 | G01609 | 177234008400 |
| SOUTH PASS 061 #D033 ST2 | SP061D3302 | G01609 | 177234008700 |
| SOUTH PASS 061 #D034 ST1 | SP061D3401 | G01609 | 177234009001 |
| SOUTH PASS 061 #D035 ST2 | SP061D3502 | G01609 | 177234009102 |
| SOUTH PASS 061 #D036 ST1 | SP061D3601 | G01609 | 177234009201 |
| SOUTH PASS 061 #D038 | SP061D38 | G01609 | 177234009702 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 061 #D039 ST1 | SP061D3901 | G01609 | 177234009801 |
| SOUTH PASS 061 #D040 ST2 | SP061D4002 | G01609 | 177234009502 |
| SOUTH PASS 061 #D043 ST2 | SP061D4302 | G01609 | 177234009602 |
| SOUTH PASS 062 #C001 | SP062C0101 | G01294 | 177230007901 |
| SOUTH PASS 062 #C004 | SP062C0401 | G01294 | 177232000101 |
| SOUTH PASS 062 #C005 | SP062C0500 | G01294 | 177230008600 |
| SOUTH PASS 062 #C006 | SP062C0601 | G01294 | 177232000301 |
| SOUTH PASS 062 #C007 ST3 | SP062C0703 | G01294 | 177234000803 |
| SOUTH PASS 062 #C009 | SP062C0900 | G01294 | 177232000800 |
| SOUTH PASS 062 #C011 ST1 | SP062C1101 | G01294 | 177232001501 |
| SOUTH PASS 062 #C013B | SP062C13B2 | G01294 | 177232002100 |
| SOUTH PASS 062 #C016 | SP062C1600 | G01294 | 177232003000 |
| SOUTH PASS 062 #C017 | SP062C1702 | G01294 | 177232003102 |
| SOUTH PASS 062 #C018 | SP062C1800 | G01294 | 177232003200 |
| SOUTH PASS 062 #C021 | SP062C2105 | G01294 | 177230008005 |
| SOUTH PASS 062 #D001 | SP062D0100 | G01294 | 177234012300 |
| SOUTH PASS 062 #D002 | SP062D0200 | G01294 | 177234011900 |
| SOUTH PASS 062 #D003 | SP062D0300 | G01294 | 177234012000 |
| SOUTH PASS 062 #D004 | SP062D0401 | G01294 | 177234012901 |
| SOUTH PASS 062 #D005 | SP062D0500 | G01294 | 177234012100 |
| SOUTH PASS 062 #D007 | SP062D0700 | G01294 | 177234012200 |
| SOUTH PASS 062 #D008 | SP062D0800 | G01294 | 177234012500 |
| SOUTH PASS 062 #D009 | SP062D0900 | G01294 | 177234013000 |
| SOUTH PASS 062 #D010 ST1 | SP062D1001 | G01294 | 177234012801 |
| SOUTH PASS 062 #D012 | SP062D1200 | G01294 | 177234013200 |
| SOUTH PASS 062 #D014 | SP062D1400 | G01294 | 177234014100 |
| SOUTH PASS 062 #D019 | SP062D1900 | G01294 | 177234012400 |
| SOUTH PASS 062 #D020 ST1 | SP062D2001 | G01294 | 177234014001 |
| SOUTH PASS 062 #D021 | SP062D2100 | G01294 | 177234013700 |
| SOUTH PASS 062 #D022 | SP062D2201 | G01294 | 177234013801 |
| SOUTH PASS 062 #D023 | SP062D2300 | G01294 | 177234014300 |
| SOUTH PASS 062 #D027 | SP062D2700 | G01294 | 177234014500 |
| SOUTH PASS 062 #D028 | SP062D2800 | G01294 | 177234014601 |
| SOUTH PASS 062 #D029 | SP062D2900 | G01294 | 177234014900 |
| SOUTH PASS 062 #D030 | SP062D3000 | G01294 | 177234014700 |
| SOUTH PASS 062 #D031 | SP062D3100 | G01294 | 177234014800 |
| SOUTH PASS 062 #D032 | SP062D3201 | G01294 | 177234015001 |
| SOUTH PASS 062 #D033 | SP062D3300 | G01294 | 177234016300 |
| SOUTH PASS 062 #D034A | SP062D34A0 | G01294 | 177234016600 |
| SOUTH PASS 062 #D035 | SP062D3500 | G01294 | 177234016900 |
| SOUTH PASS 062 #D036 | SP062D3600 | G01294 | 177234016400 |
| SOUTH PASS 064 #A003A | SP064A0300 | G01901 | 177232001700 |
| SOUTH PASS 064 #A013 ST1 | SP064A1300 | G01901 | 177232004800 |
| SOUTH PASS 064 #B014 ST | SP064B1401 | G01901 | 177254002601 |
| SOUTH PASS 064 #B021 | SP064B2100 | G01901 | 177254003300 |
| SOUTH PASS 064 #B023 | SP064B2300 | G01901 | 177254003600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 064 #B034 | SP064B3400 | G01901 | 177254005100 |
| SOUTH PASS 064 #C001 | SP064C0100 | G01901 | 177254039900 |
| SOUTH PASS 065 #A001 | SP065A0101 | G01610 | 177232001001 |
| SOUTH PASS 065 #A009 | SP065A0900 | G01610 | 177232004400 |
| SOUTH PASS 065 #A012 | SP065A1200 | G01610 | 177232004700 |
| SOUTH PASS 065 #A016A | SP065A1600 | G01610 | 177232005100 |
| SOUTH PASS 065 #A018 | SP065A1800 | G01610 | 177232005600 |
| SOUTH PASS 065 #A024 | SP065A2400 | G01610 | 177232006700 |
| SOUTH PASS 065 #A027 | SP065A2700 | G01610 | 177232007100 |
| SOUTH PASS 065 #A028 | SP065A2800 | G01610 | 177232007200 |
| SOUTH PASS 065 #A029 | SP065A2900 | G01610 | 177232007400 |
| SOUTH PASS 065 #A030 ST | SP065A3001 | G01610 | 177232007501 |
| SOUTH PASS 065 #A034 | SP065A3400 | G01610 | 177232007900 |
| SOUTH PASS 065 #A036 ST | SP065A3602 | G01610 | 177232007802 |
| SOUTH PASS 065 #B011 | SP065B1100 | G01610 | 177254001900 |
| SOUTH PASS 065 #B019 | SP065B1900 | G01610 | 177254003900 |
| SOUTH PASS 065 #B033 ST2 | SP065B3302 | G01610 | 177254005002 |
| SOUTH PASS 065 #C003 | SP065C0300 | G01610 | 177254040900 |
| SOUTH PASS 065 #C010 | SP065C1000 | G01610 | 177254042800 |
| SOUTH PASS 065 #C022 | SP065C2200 | G01610 | 177254045800 |
| SOUTH PASS 065 #C023 | SP065C2300 | G01610 | 177254046700 |
| SOUTH PASS 070 #C001 | SP070C0100 | G01614 | 177234001200 |
| SOUTH PASS 070 #C002 | SP070C0200 | G01614 | 177234001400 |
| SOUTH PASS 070 #C003 | SP070C0300 | G01614 | 177234001500 |
| SOUTH PASS 070 #C004 | SP070C0400 | G01614 | 177234001600 |
| SOUTH PASS 070 #C006 | SP070C0600 | G01614 | 177234001800 |
| SOUTH PASS 070 #C009 | SP070C0900 | G01614 | 177234002000 |
| SOUTH PASS 070 #C010 | SP070C1000 | G01614 | 177234002200 |
| SOUTH PASS 070 #C011 | SP070C1100 | G01614 | 177234002300 |
| SOUTH PASS 070 #C014 | SP070C1400 | G01614 | 177234002500 |
| SOUTH PASS 070 #C015 | SP070C1500 | G01614 | 177234002600 |
| SOUTH PASS 070 #C017 | SP070C1700 | G01614 | 177234002800 |
| SOUTH PASS 070 #C018 | SP070C1800 | G01614 | 177234002900 |
| SOUTH PASS 070 #C019 | SP070C1900 | G01614 | 177234003000 |
| SOUTH PASS 070 #C021 | SP070C2100 | G01614 | 177234003200 |
| SOUTH PASS 070 #C022 | SP070C2200 | G01614 | 177234003300 |
| SOUTH PASS 070 #C024 | SP070C2400 | G01614 | 177234003500 |
| SOUTH PASS 070 #C025 | SP070C2500 | G01614 | 177234003700 |
| SOUTH PASS 070 #C026 | SP070C2600 | G01614 | 177234003800 |
| SOUTH PASS 070 #C028 | SP070C2800 | G01614 | 177234004000 |
| SOUTH PASS 070 #C029 ST2 | SP070C2902 | G01614 | 177234004402 |
| SOUTH PASS 070 #C031 | SP070C3100 | G01614 | 177234004500 |
| SOUTH PASS 070 #C032 | SP070C3200 | G01614 | 177234004600 |
| SOUTH PASS 070 #C034 | SP070C3400 | G01614 | 177234004700 |
| SOUTH PASS 070 #C038 | SP070C3800 | G01614 | 177234005100 |
| SOUTH PASS 070 #C039 ST1 | SP070C3901 | G01614 | 177234004901 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 070 #C041 | SP070C4100 | G01614 | 177234005400 |
| SOUTH PASS 070 #C042 | SP070C4200 | G01614 | 177234005500 |
| SOUTH PASS 070 #C045 | SP070C4500 | G01614 | 177234005700 |
| SOUTH PASS 070 #C046 ST3 | SP070C4603 | G01614 | 177234005003 |
| SOUTH PASS 070 #C047 | SP070C4700 | G01614 | 177234005800 |
| SOUTH PASS 070 #C048 | SP070C4800 | G01614 | 177234005900 |
| SOUTH PASS 070 #D001 | SP070D0100 | G01614 | 177234006000 |
| SOUTH PASS 070 #D002 | SP070D0200 | G01614 | 177234006100 |
| SOUTH PASS 070 #D003 | SP070D0300 | G01614 | 177234006200 |
| SOUTH PASS 070 #D005 | SP070D0500 | G01614 | 177234006400 |
| SOUTH PASS 070 #D006 ST1 | SP070D0600 | G01614 | 177234006501 |
| SOUTH PASS 070 #D007 | SP070D0700 | G01614 | 177234006600 |
| SOUTH PASS 070 #D008 | SP070D0800 | G01614 | 177234006700 |
| SOUTH PASS 070 #D012 | SP070D1200 | G01614 | 177234007100 |
| SOUTH PASS 070 #D013 | SP070D130 | G01614 | 177234007200 |
| SOUTH PASS 070 #D014 | SP070D1400 | G01614 | 177234007300 |
| SOUTH PASS 070 #D015 ST1 | SP070D1501 | G01614 | 177234007401 |
| SOUTH PASS 070 #D016 | SP070D1600 | G01614 | 177234007500 |
| SOUTH PASS 070 #D018 | SP070D1800 | G01614 | 177234007600 |
| SOUTH PASS 070 #D020 | SP070D2000 | G01614 | 177234007800 |
| SOUTH PASS 070 #D021 | SP070D2100 | G01614 | 177234007900 |
| SOUTH PASS 070 #D027 | SP070D2700 | G01614 | 177234008500 |
| SOUTH PASS 070 #D028 | SP070D2800 | G01614 | 177234008600 |
| SOUTH PASS 070 #D030 | SP070D3000 | G01614 | 177234008800 |
| SOUTH PASS 070 #D037 | SP070D3700 | G01614 | 177234009300 |
| SOUTH PASS 070 #D042 ST1 | SP070D4201 | G01614 | 177234009901 |
| SOUTH PASS 070 #D044 ST1 | SP070D4401 | G01614 | 177234016201 |
| SOUTH PASS 087 #006 | SP08700602 | G07799 | 177224023102 |
| SOUTH PASS 087 #D002 ST | SP087D0201 | G07799 | 177224021001 |
| SOUTH PASS 087 #D003 | SP087D0202 | G07799 | 177224021202 |
| SOUTH PASS 087 #D008 | SP087D0800 | G07799 | 177224020803 |
| SOUTH PASS 087 #D009 | SP087D0900 | G07799 | 177224022600 |
| SOUTH PASS 087 #D011 | SP087D1101 | G07799 | 177224022801 |
| SOUTH PASS 087 #D07A | SP087D0700 | G07799 | 177224020900 |
| SOUTH PASS 088 #D005 ST | SP088D0501 | G10894 | 177224021901 |
| SOUTH PASS 088 #D006 | SP088D0601 | G10894 | 177224022201 |
| SOUTH PASS 088 #D010 | SP088D1001 | G10894 | 177224022701 |
| SOUTH PASS 089 #013 | SP08901300 | G01618 | 177224015100 |
| SOUTH PASS 089 #014 | SP08901400 | G01618 | 177224017500 |
| SOUTH PASS 089 #B001A | SP089B01A0 | G01618 | 177224005300 |
| SOUTH PASS 089 #B002A | SP089B02A0 | G01618 | 177224005700 |
| SOUTH PASS 089 #B003 | SP089B0300 | G01618 | 177224006400 |
| SOUTH PASS 089 #B004A | SP089B04A0 | G01618 | 177224006800 |
| SOUTH PASS 089 #B005 | SP089B0500 | G01618 | 177224008400 |
| SOUTH PASS 089 #B006D | SP089B06D0 | G01618 | 177224009500 |
| SOUTH PASS 089 #B007 | SP089B0700 | G01618 | 177224008501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 089 #B008 ST1 | SP089B0801 | G01618 | 177224009901 |
| SOUTH PASS 089 #B009 ST1 | SP089B0901 | G01618 | 177224008601 |
| SOUTH PASS 089 #B010 | SP089B1000 | G01618 | 177224010900 |
| SOUTH PASS 089 #B011 ST | SP089B1101 | G01618 | 177224010403 |
| SOUTH PASS 089 #B012 | SP089B1200 | G01618 | 177224011200 |
| SOUTH PASS 089 #B013 | SP089B1300 | G01618 | 177224011704 |
| SOUTH PASS 089 #B014 | SP089B1400 | G01618 | 177224011601 |
| SOUTH PASS 089 #B015 ST3 | SP089B1503 | G01618 | 177224012703 |
| SOUTH PASS 089 #B016 ST2 | SP089B1602 | G01618 | 177224014702 |
| SOUTH PASS 089 #B017 ST | SP089B1701 | G01618 | 177224015901 |
| SOUTH PASS 089 #B018 ST2 | SP089B1802 | G01618 | 177224017602 |
| SOUTH PASS 089 #B019 ST | SP089B1901 | G01618 | 177224017901 |
| SOUTH PASS 089 #B020 ST3 | SP089B2003 | G01618 | 177224016203 |
| SOUTH PASS 089 #B022 | SP089B2200 | G01618 | 177224017800 |
| SOUTH PELTO 001 #A002 ST1 | PL001A0201 | G04234 | 177134009201 |
| SOUTH PELTO 001 #A004 | PL001A0400 | G04234 | 177134015600 |
| SOUTH PELTO 001 #A005 | PL001A0500 | G04234 | 177134009800 |
| SOUTH PELTO 001 #A006 | PL001A0600 | G04234 | 177134016100 |
| SOUTH PELTO 009 #001 | PL00900100 | G02924 | 177134001300 |
| SOUTH PELTO 009 #002 | PL00900200 | G02924 | 177134002300 |
| SOUTH PELTO 009 #005 | PL00900500 | G02924 | 177134018700 |
| SOUTH PELTO 009 #006 | PL00900600 | G02924 | 177134006100 |
| SOUTH PELTO 009 #007 | PL00900700 | G02924 | 177134007800 |
| SOUTH PELTO 009 #010 | PL00901000 | G02924 | 177134025300 |
| SOUTH PELTO 010 #002 | PL01000200 | G02925 | 177134001000 |
| SOUTH PELTO 010 #003 | PL01000300 | G02925 | 177134001400 |
| SOUTH PELTO 010 #004 | PL01000400 | G02925 | 177134001600 |
| SOUTH PELTO 010 #005 | PL01000500 | G02917 | 177114098000 |
| SOUTH PELTO 010 #006 ST1 | PL01000601 | G02925 | 177134002101 |
| SOUTH PELTO 010 #007 | PL01000700 | G02925 | 177134002200 |
| SOUTH PELTO 010 #009 ST3 | PL01000903 | G02925 | 177134003303 |
| SOUTH PELTO 010 #010 | PL01001000 | G02925 | 177134007200 |
| SOUTH PELTO 010 #011 ST2 | PL01001102 | G02925 | 177134005102 |
| SOUTH PELTO 010 #012 ST5 | PL01001205 | G02925 | 177134006705 |
| SOUTH PELTO 010 #013 ST1 | PL01001301 | G02925 | 177134007402 |
| SOUTH PELTO 010 #014 | PL01001400 | G02925 | 177134009400 |
| SOUTH PELTO 010 #016 ST2 | PL01001602 | G02925 | 177134011802 |
| SOUTH PELTO 010 #017 ST1 | PL01001701 | G02925 | 177134012301 |
| SOUTH PELTO 010 #019 ST1 | PL01001901 | G02925 | 177134010601 |
| SOUTH PELTO 010 #020 | PL01002000 | G02925 | 177134015800 |
| SOUTH PELTO 010 #022 ST1 | PL01002201 | G02925 | 177134018201 |
| SOUTH PELTO 010 #023 ST1 | PL01002301 | G02925 | 177134016601 |
| SOUTH PELTO 010 #026 | PL01002600 | G02925 | 177134018000 |
| SOUTH PELTO 010 #B025 | PL010B2501 | G02925 | 177134018301 |
| SOUTH PELTO 011 #017 | PL01101700 | 00071 | 177134003102 |
| SOUTH PELTO 011 #019 ST1 | PL01101901 | 00071 | 177134004501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PELTO 011 #022 | PL01102200 | 00071 | 177134012000 |
| SOUTH PELTO 011 #025 | PL01102500 | 00071 | 177134018900 |
| SOUTH PELTO 011 #031 | PL01103100 | 00071 | 177134022701 |
| SOUTH PELTO 011 #032 | PL01103200 | 00071 | 177134022600 |
| SOUTH PELTO 011 #F001 | PL011F0100 | 00071 | 177130000300 |
| SOUTH PELTO 011 #F002 | PL011F0200 | 00071 | 177134000500 |
| SOUTH PELTO 011 #F003 ST | PL011F0300 | 00071 | 177134001700 |
| SOUTH PELTO 013 #009 | PL01300900 | G03171 | 177134019701 |
| SOUTH PELTO 025 #005 (ORRI) | PL02500502 | G14535 | 177134024303 |
| SOUTH PELTO 025 #006 (ORRI) | PL02500600 | G14535 | 177134025003 |
| SOUTH PELTO 025 #JA001 | PL025JA01 | G14535 | 177134019800 |
| SOUTH PELTO 025 #JB001 (ORRI) | PL025JB012 | G14535 | 177134020302 |
| SOUTH TIMBALIER 049 #A001 ST2 | ST049A0102 | G24956 | 177154123902 |
| SOUTH TIMBALIER 053 #004 | ST05300401 | G04000 | 177154043101 |
| SOUTH TIMBALIER 053 #006 | ST05300601 | G04000 | 177154083500 |
| SOUTH TIMBALIER 053 #A001 | ST053A0101 | G04000 | 177154034402 |
| SOUTH TIMBALIER 053 #A002 | ST053A0201 | G04000 | 177154037601 |
| SOUTH TIMBALIER 053 #A003 | ST053A0301 | G04000 | 177154038401 |
| SOUTH TIMBALIER 053 #A004 | ST053A0400 | G04000 | 177154038500 |
| SOUTH TIMBALIER 053 #A006 | ST053A0601 | G04000 | 177154039201 |
| SOUTH TIMBALIER 053 #A007 | ST053A0700 | G04000 | 177154040400 |
| SOUTH TIMBALIER 053 #A008 | ST053A0800 | G04000 | 177154040500 |
| SOUTH TIMBALIER 053 #A009 | ST053A0900 | G04000 | 177154041500 |
| SOUTH TIMBALIER 053 #A010 | ST053A1001 | G04000 | 177154043501 |
| SOUTH TIMBALIER 053 #A011 | ST053A1100 | G04000 | 177154042400 |
| SOUTH TIMBALIER 053 #A012 | ST053A1201 | G04000 | 177154042301 |
| SOUTH TIMBALIER 053 #A013 | ST053A1300 | G04000 | 177154044000 |
| SOUTH TIMBALIER 053 #A014 | ST053A1400 | G04000 | 177154042900 |
| SOUTH TIMBALIER 053 #A015 | ST053A1501 | G04000 | 177154076901 |
| SOUTH TIMBALIER 053 #A016 | ST053A1601 | G04000 | 177154043601 |
| SOUTH TIMBALIER 053 #A017 | ST053A1701 | G04000 | 177154061101 |
| SOUTH TIMBALIER 053 #A018 | ST053A1801 | G04000 | 177154061201 |
| SOUTH TIMBALIER 053 #A019 | ST053A1900 | G04000 | 177154077200 |
| SOUTH TIMBALIER 053 #A020 | ST053A2001 | G04000 | 177154077101 |
| SOUTH TIMBALIER 053 #A021 | ST053A2100 | G04000 | 177154111000 |
| SOUTH TIMBALIER 053 #C001 | ST053C0100 | G04000 | 177154067200 |
| SOUTH TIMBALIER 053 #C002 | ST053C0200 | G04000 | 177154107300 |
| SOUTH TIMBALIER 053 #I001 | ST053I0100 | G04000 | 177154031200 |
| SOUTH TIMBALIER 067 #006 | ST06700602 | 00020 | 177154078404 |
| SOUTH TIMBALIER 148 #A001 | ST148A0100 | G01960 | 177154009400 |
| SOUTH TIMBALIER 148 #A002 | ST148A0200 | G01960 | 177154013200 |
| SOUTH TIMBALIER 148 #A003 | ST148A0300 | G01960 | 177154015800 |
| SOUTH TIMBALIER 148 #A004 | ST148A04 | G01960 | 177154039700 |
| SOUTH TIMBALIER 148 #A005 | ST148A05 | G01960 | 177154041100 |
| SOUTH TIMBALIER 148 #A006 | ST148A0600 | G01960 | 177154074603 |
| SOUTH TIMBALIER 148 #A007 | ST148A0700 | G01960 | 1771540890 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 148 #A008 | ST148A0801 | G01960 | 177154090501 |
| SOUTH TIMBALIER 148 #A009 | ST148A0903 | G01960 | 177154095103 |
| SOUTH TIMBALIER 205 #B001 ST1 | ST205B0101 | G05612 | 177154059001 |
| SOUTH TIMBALIER 205 #B002A ST1 | ST205B02A1 | G05612 | 177154062901 |
| SOUTH TIMBALIER 205 #B004 ST1 | ST205B0401 | G05612 | 177154081601 |
| SOUTH TIMBALIER 205 #B005A | ST205B05A0 | G05612 | 177154103300 |
| SOUTH TIMBALIER 205 #G001 ST1 | ST205G0101 | G05612 | 177154106701 |
| SOUTH TIMBALIER 205 #G003 ST1 | ST205G0301 | G05612 | 177154115301 |
| SOUTH TIMBALIER 206 #A001 ST1 | ST206A0101 | G05613 | 177154057801 |
| SOUTH TIMBALIER 206 #A002 ST1 | ST206A0201 | G05613 | 177154060101 |
| SOUTH TIMBALIER 206 #A003 | ST206A0300 | G05613 | 177154061000 |
| SOUTH TIMBALIER 206 #A004A | ST206A04A0 | G05613 | 177154074300 |
| SOUTH TIMBALIER 206 #A006 | ST206A0600 | G05613 | 177154075100 |
| SOUTH TIMBALIER 206 #A007 | ST206A0700 | G05613 | 177154075200 |
| SOUTH TIMBALIER 206 #A008 | ST206A0800 | G05613 | 177154075300 |
| SOUTH TIMBALIER 206 #A009 | ST206A0900 | G05613 | 177154075400 |
| SOUTH TIMBALIER 206 #A010ST2BP | ST206A1002 | G05613 | 177154075702 |
| SOUTH TIMBALIER 206 #B003 ST1 | ST206B0301 | G05613 | 177154074001 |
| SOUTH TIMBALIER 206 #B006 | ST206B0600 | G05613 | 177154103000 |
| SOUTH TIMBALIER 276 #A010 ST1 | ST276A1001 | G07780 | 177164013301 |
| SOUTH TIMBALIER 276 #A019 | ST276A1900 | G07780 | 177164014500 |
| SOUTH TIMBALIER 276 #A029 | ST276A2900 | G07780 | 177164022300 |
| SOUTH TIMBALIER 290 #A025 | - | G16454 | 608104014901 |
| SOUTH TIMBALIER 291 #A023 | ST291A2300 | G16455 | 608104014700 |
| SOUTH TIMBALIER 295 #A001 | ST295A0102 | G05646 | 177164010302 |
| SOUTH TIMBALIER 295 #A002 | ST295A0200 | G05646 | 177164005500 |
| SOUTH TIMBALIER 295 #A003 | ST295A0300 | G05646 | 177164010400 |
| SOUTH TIMBALIER 295 #A004 | ST295A0400 | G05646 | 177164011300 |
| SOUTH TIMBALIER 295 #A005 | ST295A0500 | G05646 | 177164011600 |
| SOUTH TIMBALIER 295 #A006 | ST295A0600 | G05646 | 177164011800 |
| SOUTH TIMBALIER 295 #A007 | ST295A0700 | G05646 | 177164012000 |
| SOUTH TIMBALIER 295 #A008 | ST295A0800 | G05646 | 177164012200 |
| SOUTH TIMBALIER 295 #A009 | ST295A0900 | G05646 | 177164012300 |
| SOUTH TIMBALIER 295 #A011 | ST295A1100 | G05646 | 177164012700 |
| SOUTH TIMBALIER 295 #A012 | ST295A1200 | G05646 | 177164012400 |
| SOUTH TIMBALIER 295 #A013 ST1 | ST295A1301 | G05646 | 177164012901 |
| SOUTH TIMBALIER 295 #A014 | ST295A1400 | G05646 | 177164013400 |
| SOUTH TIMBALIER 295 #A015 | ST295A1500 | G05646 | 177164013700 |
| SOUTH TIMBALIER 295 #A016 ST1 | ST295A1601 | G05646 | 177164013901 |
| SOUTH TIMBALIER 295 #A017 | ST295A1700 | G05646 | 177164014000 |
| SOUTH TIMBALIER 295 #A018 | ST295A1800 | G05646 | 177164014400 |
| SOUTH TIMBALIER 295 #A020 | ST295A2000 | G05646 | 177164014700 |
| SOUTH TIMBALIER 295 #A021 ST2 | ST295A2102 | G05646 | 177164014902 |
| SOUTH TIMBALIER 295 #A022 ST3 | ST295A2203 | G05646 | 177164017703 |
| SOUTH TIMBALIER 295 #A023 | ST295A2300 | G05646 | 177164018000 |
| SOUTH TIMBALIER 295 #A024 | ST295A2400 | G05646 | 177164018300 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 295 #A025D | ST295A25D0 | G05646 | 177164018100 |
| SOUTH TIMBALIER 295 #A026 | ST295A2600 | G05646 | 177164018400 |
| SOUTH TIMBALIER 295 #A027 | ST295A2700 | G05646 | 177164018500 |
| SOUTH TIMBALIER 295 #A030 | ST295A3000 | G05646 | 177164022600 |
| SOUTH TIMBALIER 295 #A031 | ST295A3100 | G05646 | 177164026100 |
| SOUTH TIMBALIER 295 #A032 | ST295A3200 | G05646 | 177164027800 |
| SOUTH TIMBALIER 295 #B001 | ST295B0100 | G05646 | 177164028900 |
| SOUTH TIMBALIER 295 #B002 ST1 | ST295B0201 | G05646 | 177164029301 |
| SOUTH TIMBALIER 295 #B003 | ST295B0302 | G05646 | 177164029202 |
| SOUTH TIMBALIER 295 #B004 ST1 | ST295B0401 | G05646 | 177164029101 |
| SOUTH TIMBALIER 295 #B005 | ST295B0500 | G05646 | 177164030000 |
| SOUTH TIMBALIER 295 #B006 ST3 | ST295B0603 | G05646 | 177164030403 |
| SOUTH TIMBALIER 296 #001 | ST29600100 | G12981 | 177164020900 |
| SOUTH TIMBALIER 296 #A028 | ST296A2800 | G12981 | 177164021700 |
| SOUTH TIMBALIER 311 # A 1 | ST311A01 | G31418 | 177164035500 |
| SOUTH TIMBALIER 311 # A-4 | ST311A04 | G31418 | 177164036400 |
| SOUTH TIMBALIER 316 #A001 | ST316A0100 | G22762 | 177164028600 |
| SOUTH TIMBALIER 316 #A002 | ST316A0200 | G22762 | 177164028800 |
| SOUTH TIMBALIER 316 #A006 | ST316A0602 | G22762 | 177164035302 |
| SOUTH TIMBALIER 320 #A002 | ST320A02 | G24990 | 177164036200 |
| SOUTH TIMBALIER 320 #A003 | ST320A03 | G24990 | 177164036300 |
| SOUTH TIMBALIER 320 #A005 ST | ST320A05 | G24990 | 608104010401 |
| tEAST CAMERON 278 #C010 | EC278C1001 | G00974 | 177044110001 |
| VERMILION 261 #A001 | VR261A0100 | G03328 | 177064029000 |
| VERMILION 261 #A002 | VR261A0200 | G03328 | 177064033000 |
| VERMILION 261 #A004 | VR261A0402 | G03328 | 177064032902 |
| VERMILION 261 #A005 | VR261A0500 | G03328 | 177064034600 |
| VERMILION 261 #A007 | VR261A0700 | G03328 | 177064035400 |
| VERMILION 261 #A008 | VR261A0800 | G03328 | 177064084900 |
| VERMILION 262 #A006 | VR262A06 | G34257 | 177064035201 |
| VERMILION 265 #A001 ST | VR265A0101 | G01955 | 177064003101 |
| VERMILION 265 #A002 ST1 | VR265A0201 | G01955 | 177064004701 |
| VERMILION 265 #A003 ST1 | VR265A0301 | G01955 | 177064003201 |
| VERMILION 265 #A006 | VR265A0600 | G01955 | 177064005300 |
| VERMILION 265 #A007 ST1 | VR265A0701 | G01955 | 177064005501 |
| VERMILION 265 #A010 | VR265A1000 | G01955 | 177064006200 |
| VERMILION 265 #A014ST1 | VR265A1401 | G01955 | 177064029101 |
| VERMILION 265 #A016ST1 | VR265A1601 | G01955 | 177064029301 |
| VERMILION 265 #A017ST1 | VR265A1701 | G01955 | 177064033201 |
| VERMILION 265 #A021 | VR265A2100 | G01955 | 177064057100 |
| VERMILION 265 #A025 | VR265A2500 | G01955 | 177064057400 |
| VERMILION 265 #A027ST1 | VR265A2701 | G01955 | 177064058101 |
| VERMILION 271 #I003 | VR271I0300 | G04800 | 177064098100 |
| VERMILION 326 #A001 | VR326A0100 | G21096 | 177064085000 |
| VERMILION 369 #A014 | VR369A1400 | G02274 | 177064073400 |
| VERMILION 369 #D001 | VR369D01 | G02274 | 177064087000 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VERMILION 380 #009 | VR38000900 | G02580 | 177064080100 |
| VERMILION 380 #A001 ST1 | VR380A0101 | G02580 | 177064044301 |
| VERMILION 380 #A003 ST1 | VR380A0301 | G02580 | 177064044901 |
| VERMILION 380 #A005 | VR380A0500 | G02580 | 177064046300 |
| VERMILION 380 #A006 ST2 | VR380A0602 | G02580 | 177064046402 |
| VERMILION 380 #A008 ST1 | VR380A0801 | G02580 | 177064046901 |
| VERMILION 380 #A010 | VR380A1000 | G02580 | 177064047600 |
| VERMILION 380 #A011 | VR380A1100 | G02580 | 177064048000 |
| VERMILION 380 #A012 | VR380A1200 | G02580 | 177064048700 |
| VERMILION 380 #A015 ST4 | VR380A1504 | G02580 | 177064049004 |
| VERMILION 380 #A016 ST2 | VR380A1602 | G02580 | 177064048702 |
| VERMILION 380 #A020 ST1 | VR380A2001 | G02580 | 177064095601 |
| VERMILION 381 #A017 | VR381A1700 | G16314 | 177064085500 |
| VERMILION 381 #A018 ST2 | VR381A1802 | G16314 | 177064085702 |
| VERMILION 381 #A021 ST1 | VR381A2101 | G16314 | 177064095801 |
| VIOSCA KNOLL 693 #001 | VK69300100 | G07898 | 608164015700 |
| VIOSCA KNOLL 693 #002 | VK69300200 | G07898 | 608164016000 |
| VIOSCA KNOLL 694 #001 | VK69400100 | G13055 | 608164016600 |
| VIOSCA KNOLL 694 #002 | VK69400200 | G13055 | 608164016700 |
| VIOSCA KNOLL 694 #003 ST1 | VK69400301 | G13055 | 608164036701 |
| VIOSCA KNOLL 694 #004 | VK69400400 | G13055 | 608164030900 |
| VIOSCA KNOLL 694 #A009 | VK694A0900 | G13055 | 177244073300 |
| VIOSCA KNOLL 824 #004 | VK82400402 | G15436 | 608164032902 |
| WEST CAMERON 033 #001 | WC03300100 | G15050 | 177004105100 |
| WEST CAMERON 033 #001 SL16473 | SL16473010 | 16473 | 177002024400 |
| WEST CAMERON 033 #002 SL16473 | SL16473020 | 16473 | 177002024500 |
| WEST CAMERON 033 #N001 (EC2) | WC033N0100 | G15050 | 177004124000 |
| WEST CAMERON 033 #N002 (EC2) | WC033N0200 | G15050 | 177004124600 |
| WEST CAMERON 033 #N003 (EC2) | WC033N0300 | G15050 | 177004125400 |
| WEST CAMERON 033 #N004 (EC2) | WC033N0400 | G15050 | 177004125500 |
| WEST CAMERON 033 #O001 | WC033O0100 | G15050 | 177004126500 |
| WEST CAMERON 033 #O002 | WC033O0200 | G15050 | 177004126600 |
| WEST CAMERON 033 #O003 | WC033O0300 | G15050 | 177004126800 |
| WEST CAMERON 033 #O004 | WC033O0400 | G15050 | 177004126900 |
| WEST CAMERON 035 #A014 | WC035A1400 | G02819 | 177004017000 |
| WEST CAMERON 035 #B005 | WC035B0500 | G02819 | 177004018600 |
| WEST CAMERON 035 #B013 | WC035B1300 | G02819 | 177004024300 |
| WEST CAMERON 035 #C003 | WC035C0300 | G02819 | 177004037600 |
| WEST CAMERON 035 #C004 | WC035C0401 | G02819 | 177004038701 |
| WEST CAMERON 035 #D005 | WC035D0500 | G01860 | 177004039101 |
| WEST CAMERON 065 #008 | WC06500801 | G02825 | 177004103701 |
| WEST CAMERON 065 #009 | WC06500900 | G02825 | 177004105500 |
| WEST CAMERON 065 #B018 | WC065B1800 | G02825 | 177004098900 |
| WEST CAMERON 065 #B019 | WC065B1901 | G02825 | 177004099501 |
| WEST CAMERON 065 #B020 ST2 | WC065B2001 | G02825 | 177004099701 |
| WEST CAMERON 065 #E007 | WC065E0700 | G02825 | 177004129600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 065 #JA001 | WC065JA100 | G02825 | 177004023300 |
| WEST CAMERON 065 #JA002 | WC065JA200 | G02825 | 177004024600 |
| WEST CAMERON 065 #JA003 | WC065JA300 | G02825 | 177004040400 |
| WEST CAMERON 065 #JA004 | WC065JA400 | G02825 | 177004041500 |
| WEST CAMERON 065 #JA005 | WC065JA500 | G02825 | 177004075400 |
| WEST CAMERON 066 #A001 | WC066A0100 | G01860 | 177004011300 |
| WEST CAMERON 066 #A002 | WC066A0200 | G01860 | 177004011800 |
| WEST CAMERON 066 #A003 | WC066A0300 | G01860 | 177004012400 |
| WEST CAMERON 066 #A004 | WC066A0400 | G01860 | 177004012600 |
| WEST CAMERON 066 #A005 | WC066A0500 | G01860 | 177004012800 |
| WEST CAMERON 066 #A006 | WC066A0600 | G01860 | 177004013200 |
| WEST CAMERON 066 #A007 (WC35) | WC035A0700 | G01860 | 177004013500 |
| WEST CAMERON 066 #A008 | WC066A0800 | G01860 | 177004014100 |
| WEST CAMERON 066 #A009 | WC066A0900 | G01860 | 177004014500 |
| WEST CAMERON 066 #A010 | WC066A1000 | G01860 | 177004014700 |
| WEST CAMERON 066 #A011 | WC066A1100 | G01860 | 177004014900 |
| WEST CAMERON 066 #A012 (WC35) | WC035A1200 | G01860 | 177004015700 |
| WEST CAMERON 066 #A015 | WC066A1500 | G01860 | 177004096100 |
| WEST CAMERON 066 #A016 | WC066A1601 | G01860 | 177004096601 |
| WEST CAMERON 066 #A017 | WC066A1700 | G02826 | 177004100600 |
| WEST CAMERON 066 #B002 | WC066B0200 | G02826 | 177004017600 |
| WEST CAMERON 066 #B003 | WC066B0300 | G02826 | 177004017800 |
| WEST CAMERON 066 #B004 | WC066B0400 | G02826 | 177004018300 |
| WEST CAMERON 066 #B006 | WC066B0600 | G02826 | 177004019100 |
| WEST CAMERON 066 #B007 | WC066B0700 | G02826 | 177004019600 |
| WEST CAMERON 066 #B008D | WC066B08D0 | G02826 | 177004020400 |
| WEST CAMERON 066 #B009 | WC066B0900 | G02826 | 177004020801 |
| WEST CAMERON 066 #B010 | WC066B1000 | G02826 | 177004021400 |
| WEST CAMERON 066 #B012 | WC066B1200 | G02826 | 177004023000 |
| WEST CAMERON 066 #B014 | WC066B1401 | G02826 | 177004022001 |
| WEST CAMERON 066 #B015 | WC066B1500 | G02826 | 177004087600 |
| WEST CAMERON 066 #B016 | WC066B1601 | G02826 | 177004097101 |
| WEST CAMERON 066 #B017 | WC066B1700 | G02826 | 177004098700 |
| WEST CAMERON 066 #C001 | WC066C0102 | G01860 | 177004010502 |
| WEST CAMERON 066 #C002 ST3 | WC066C0203 | G01860 | 177004036603 |
| WEST CAMERON 066 #C005 ST2 | WC066C0502 | G01860 | 177004098302 |
| WEST CAMERON 066 #D007 | WC066D0702 | G01860 | 177004042902 |
| WEST CAMERON 066 #E001 | WC066E0100 | G02826 | 177004034700 |
| WEST CAMERON 066 #E002 | WC066E0200 | G02826 | 177004043400 |
| WEST CAMERON 066 #E003 | WC066E0300 | G02826 | 177004047900 |
| WEST CAMERON 066 #E004 | WC066E0400 | G02826 | 177004051500 |
| WEST CAMERON 066 #E006 | WC066E0600 | G02826 | 177004070900 |
| WEST CAMERON 071 #018 | WC07101800 | 00244 | 177004029400 |
| WEST CAMERON 071 #023 | WC07102300 | 00244 | 177004040500 |
| WEST CAMERON 071 #026 | WC07102600 | 00244 | 177004067600 |
| WEST CAMERON 071 #027 | WC07102700 | 00244 | 177004069700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 071 #028 | WC07102800 | 00244 | 177004071000 |
| WEST CAMERON 071 #031 | WC07103100 | 00244 | 177004118900 |
| WEST CAMERON 071 #D001 | WC071D0100 | 00244 | 177002000100 |
| WEST CAMERON 071 #D003 | WC071D0300 | 00244 | 177002004800 |
| WEST CAMERON 071 #D005 | WC071D0501 | 00244 | 177002004101 |
| WEST CAMERON 071 #D006 | WC071D0600 | 00244 | 177002006900 |
| WEST CAMERON 071 #D009 | WC071D0900 | 00244 | 177002008000 |
| WEST CAMERON 071 #F001 | WC071F0100 | 00244 | 177004102400 |
| WEST CAMERON 071 #F002 | WC071F0200 | 00244 | 177004102600 |
| WEST CAMERON 072 #001 | WC07200100 | G23735 | 177004114900 |
| WEST CAMERON 072 #002 | WC07200200 | G23735 | 177004119400 |
| WEST CAMERON 072 #003 | WC07200301 | G23735 | 177004125001 |
| WEST CAMERON 102 #002 | WC10200200 | 00247 | 177002009300 |
| WEST CAMERON 102 #005 | WC10200500 | 00247 | 177004006800 |
| WEST CAMERON 102 #007 | WC10200700 | 00247 | 177004008600 |
| WEST CAMERON 102 #008 | WC10200800 | 00247 | 177004009400 |
| WEST CAMERON 102 #022 | WC10202200 | 00247 | 177004064300 |
| WEST CAMERON 102 #024 | WC10202400 | 00247 | 177004062500 |
| WEST CAMERON 102 #H001 | WC102H0100 | 00247 | 177004103400 |
| WEST CAMERON 102 #H002 | WC102H0202 | 00247 | 177004104402 |
| WEST CAMERON 110 #006 | WC11000600 | 00081 | 177002002700 |
| WEST CAMERON 110 #007 | WC11000700 | 00081 | 177002003000 |
| WEST CAMERON 110 #010 ST1 | WC11001001 | 00081 | 177004025001 |
| WEST CAMERON 110 #011 | WC11001100 | 00081 | 177004083400 |
| WEST CAMERON 110 #012 ST2 | WC11001202 | 00081 | 177004086302 |
| WEST CAMERON 110 #014 ST2 | WC11001402 | 00081 | 177004090002 |
| WEST CAMERON 110 #015 ST1 | WC11001501 | 00081 | 177004106501 |
| WEST CAMERON 110 #018 ST2 | WC11001802 | 00081 | 177004127002 |
| WEST CAMERON 110 #019 ST1 | WC11001901 | 00081 | 177004127801 |
| WEST CAMERON 110 #05A | WC1105AD64 | 00081 | 177002002200 |
| WEST CAMERON 110 #A001 | WC110A0100 | 00081 | 177000013100 |
| WEST CAMERON 110 #A002C | WC110A02C0 | 00081 | 177000013200 |
| WEST CAMERON 110 #A003 | WC110A0300 | 00081 | 177000013300 |
| WEST CAMERON 110 #A004 | WC110A0400 | 00081 | 177000013400 |
| WEST CAMERON 110 #A005 | WC110A0500 | 00081 | 177000038900 |
| WEST CAMERON 110 #A006 | WC110A0600 | 00081 | 177002004000 |
| WEST CAMERON 110 #C001 | WC110C0100 | 00081 | 177004112500 |
| WEST CAMERON 110 #F001 | WC110F0100 | 00081 | 177004107300 |
| WEST CAMERON 110 #F002 | WC110F0200 | 00081 | 177004119300 |
| WEST CAMERON 290 #002 | WC29002 | G04818 | 177014018400 |
| WEST CAMERON 290 #A001 | WC290A0100 | G04818 | 177014020700 |
| WEST CAMERON 290 #A002 | WC290A0200 | G04818 | 177014024200 |
| WEST CAMERON 290 #A003 | WC290A0300 | G04818 | 177014029100 |
| WEST CAMERON 295 #A001 | WC295A0101 | G24730 | 177014037501 |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 |
| WEST CAMERON 67 #D1 | WC067D0100 | G03256 | 177004031600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 67 #D10 | - | G03256 | 177004098501 |
| WEST CAMERON 67 #D6 | - | G03256 | 177004040700 |
| WEST CAMERON 67 #D9 | WC067D0900 | G03256 | 177004078600 |
| WEST DELTA 053 #001 | WD05300100 | 17935 | 170752037400 |
| WEST DELTA 068 #U001 | WD068U0100 | 00180 | 177190136200 |
| WEST DELTA 068 #U004 | WD068U0400 | 00180 | 177192007000 |
| WEST DELTA 068 #U005 ST2 | WD068U0502 | 00180 | 177192007502 |
| WEST DELTA 068 #U006 | WD068U0600 | 00180 | 177192008600 |
| WEST DELTA 068 #U009 | WD068U0900 | 00180 | 177192011401 |
| WEST DELTA 068 #U011 | WD068U11 | 00180 | 177192013603 |
| WEST DELTA 068 #U013 ST2 | WD068U1302 | 00180 | 177194065102 |
| WEST DELTA 068 #U014 | WD068U1400 | 00180 | 177194065300 |
| WEST DELTA 069 #D007 ST2 | WD069D0702 | 00181 | 177190063802 |
| WEST DELTA 070 #D001D | WD070D0100 | 00182 | 177190063300 |
| WEST DELTA 070 #D005 | WD070D0500 | 00182 | 177190063600 |
| WEST DELTA 070 #D008 | WD070D0800 | 00182 | 177190063900 |
| WEST DELTA 070 #D009 | WD070D0900 | 00182 | 177190064000 |
| WEST DELTA 070 #D010 | WD070D1000 | 00182 | 177190066700 |
| WEST DELTA 070 #D011 | WD070D1100 | 00182 | 177194036800 |
| WEST DELTA 070 #D012 | WD070D1200 | 00182 | 177194037200 |
| WEST DELTA 070 #D013 | WD070D1300 | 00182 | 177194057000 |
| WEST DELTA 070 #D014 | WD070D1400 | 00182 | 177194057200 |
| WEST DELTA 070 #E001 ST1 | WD070E0101 | 00182 | 177190108201 |
| WEST DELTA 070 #E002 | WD070E0200 | 00182 | 177190067800 |
| WEST DELTA 070 #E003 | WD070E0300 | 00182 | 177190066500 |
| WEST DELTA 070 #FF001 | WD070FF100 | 00182 | 177194084200 |
| WEST DELTA 070 #FF002 | WD070FF200 | 00182 | 177194084300 |
| WEST DELTA 070 #FF003 | WD070FF300 | 00182 | 177194084400 |
| WEST DELTA 070 #I003 ST1 | WD070I0301 | 00182 | 177190091301 |
| WEST DELTA 070 #I004 | WD070I0400 | 00182 | 177190091500 |
| WEST DELTA 070 #I005 ST1 | WD070I0501 | 00182 | 177190095001 |
| WEST DELTA 070 #I006 | WD070I0601 | 00182 | 177190095101 |
| WEST DELTA 070 #I008 ST1 | WD070I0801 | 00182 | 177190102101 |
| WEST DELTA 070 #I010 ST1 | WD070I1001 | 00182 | 177190105701 |
| WEST DELTA 070 #I012 STBP2 | WD070I1202 | 00182 | 177194010702 |
| WEST DELTA 070 #I013 | WD070I1300 | 00182 | 177194038400 |
| WEST DELTA 070 #I014 | WD070I1400 | 00182 | 177194061100 |
| WEST DELTA 070 #I015 | WD070I1500 | 00182 | 177194061300 |
| WEST DELTA 070 #I016 ST | WD070I1601 | 00182 | 177194064201 |
| WEST DELTA 070 #I017 | WD070I1700 | 00182 | 177194064600 |
| WEST DELTA 070 #L003 | WD070L0300 | 00182 | 177190113800 |
| WEST DELTA 070 #L004 | WD070L0400 | 00182 | 177190115100 |
| WEST DELTA 070 #L005 | WD070L0500 | 00182 | 177190115500 |
| WEST DELTA 070 #L006 | WD070L0600 | 00182 | 177190115000 |
| WEST DELTA 070 #L010 | WD070L1000 | 00182 | 177190119500 |
| WEST DELTA 070 #L011 | WD070L1100 | 00182 | 177190121400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 071 #E006 | WD071E0600 | 00838 | 177190073200 |
| WEST DELTA 071 #E007 ST1 | WD071E0701 | 00838 | 177190095601 |
| WEST DELTA 071 #E009 ST1 | WD071E0901 | 00838 | 177190091701 |
| WEST DELTA 071 #E010 | WD071E1000 | 00838 | 177190095700 |
| WEST DELTA 071 #O001 ST2 | WD071O0102 | 00838 | 177190118502 |
| WEST DELTA 071 #O003 | WD071O0300 | 00838 | 177190121500 |
| WEST DELTA 071 #O004 ST1 | WD071O0401 | 00838 | 177190124301 |
| WEST DELTA 071 #O005 | WD071O0501 | 00838 | 177190125001 |
| WEST DELTA 071 #O006 | WD071O0601 | 00838 | 177190127101 |
| WEST DELTA 071 #O007 | WD071O0702 | 00838 | 177190129602 |
| WEST DELTA 071 #O009 | WD071O0900 | 00838 | 177190133600 |
| WEST DELTA 071 #O010 | WD071O1000 | 00838 | 177194002500 |
| WEST DELTA 071 #O013 | WD071O1303 | 00838 | 177192001102 |
| WEST DELTA 075 #A004B | WD075A04B0 | G01085 | 177190074300 |
| WEST DELTA 075 #A010D | WD075A10D0 | G01085 | 177190082700 |
| WEST DELTA 075 #A015 | WD075A1500 | G01085 | 177194030300 |
| WEST DELTA 075 #B002 | WD075B0201 | G01085 | 177190131301 |
| WEST DELTA 075 #B009 | WD075B0900 | G01085 | 177190136800 |
| WEST DELTA 075 #B017 ST | WD075B1701 | G01085 | 177194019501 |
| WEST DELTA 075 #B024 | WD075B2400 | G01085 | 177194045700 |
| WEST DELTA 075 #B026 ST | WD075B2601 | G01085 | 177194046601 |
| WEST DELTA 075 #F002 ST2 | WD075F0200 | G01085 | 177194042800 |
| WEST DELTA 075 #G002 | WD075G0200 | G01085 | 177194056600 |
| WEST DELTA 090 #A001 | WD090A0100 | G01089 | 177190061600 |
| WEST DELTA 090 #A005 | WD090A0500 | G01089 | 177190128700 |
| WEST DELTA 090 #A009D | WD090A09D0 | G01089 | 177190077300 |
| WEST DELTA 090 #B004 ST1 | WD090B0401 | G01089 | 177190132101 |
| WEST DELTA 090 #B011 ST | WD090B1101 | G01089 | 177192000801 |
| WEST DELTA 090 #B018 | WD090B1800 | G01089 | 177194040400 |
| WEST DELTA 090 #B020 | WD090B2001 | G01089 | 177190135901 |
| WEST DELTA 090 #B021 | WD090B2100 | G01089 | 177194041500 |
| WEST DELTA 090 #B027 | WD090B2700 | G01089 | 177194046700 |
| WEST DELTA 090 #F004 | WD090F0400 | G01089 | 177194057700 |
| WEST DELTA 090 #F005 ST2 | WD090F0502 | G01089 | 177194057902 |
| WEST DELTA 090 #F006 | WD090F0600 | G01089 | 177194058601 |
| WEST DELTA 094 #V001 | WD094V0100 | 00839 | 177192005700 |
| WEST DELTA 094 #V002 | WD094V0200 | 00839 | 177192011600 |
| WEST DELTA 094 #V003 | WD094V0300 | 00839 | 177192014900 |
| WEST DELTA 094 #V004 | WD094V0400 | 00839 | 177192015500 |
| WEST DELTA 094 #V014 | WD094V1400 | 00839 | 177194039000 |
| WEST DELTA 094 #V015 | WD094V1500 | 00839 | 177194064000 |
| WEST DELTA 094 #V016 | WD094V1602 | 00839 | 177194063902 |
| WEST DELTA 095 #S005 ST1BP1 | WD095S0502 | G01497 | 177190126202 |
| WEST DELTA 095 #S006 | WD095S0600 | G01497 | 177190135400 |
| WEST DELTA 095 #S008 | WD095S0800 | G01497 | 177190127700 |
| WEST DELTA 095 #S010 ST1 | WD095S1001 | G01497 | 177192000101 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 095 #S012 ST | WD095S1201 | G01497 | 177192002301 |
| WEST DELTA 095 #X001 ST | WD095X0101 | G01497 | 177194002901 |
| WEST DELTA 095 #X003 | WD095X0300 | G01497 | 177194003200 |
| WEST DELTA 095 #X007 ST1 | WD095X0701 | G01497 | 177194003701 |
| WEST DELTA 095 #X010 ST2 | WD095X1001 | G01497 | 177194055301 |
| WEST DELTA 095 #X011 | WD095X1100 | G01497 | 177194055700 |
| WEST DELTA 095 #X012D | WD095X12D0 | G01497 | 177194055900 |
| WEST DELTA 096 #S002 ST1BP1 | WD096S0202 | G01498 | 177190123402 |
| WEST DELTA 096 #S007 ST1 | WD096S0701 | G01498 | 177190132901 |
| WEST DELTA 096 #X004 ST1 | WD096X0401 | G01498 | 177194003301 |
| WEST DELTA 096 #X006 ST2 | WD096X0602 | G01498 | 177194003502 |
| WEST DELTA 096 #X009 | WD096X0900 | G01498 | 177194004000 |
| WEST DELTA 103 #F001 ST1 | WD103F0101 | G12360 | 177194054801 |
| WEST DELTA 103 #F002 | WD103F0200 | G12360 | 177194055100 |
| WEST DELTA 103 #F003 | WD103F0300 | G12360 | 177194058200 |
| WEST DELTA 103 #F007 | WD103F0700 | 00840 | 177194083800 |
| WEST DELTA 104 #D005 | WD104D0500 | 00841 | 177190116200 |
| WEST DELTA 104 #D009 | WD104D0900 | 00841 | 177190118400 |
| WEST DELTA 104 #D010 ST | WD104D1001 | 00841 | 177190119801 |
| WEST DELTA 104 #D011 | WD104D1100 | 00841 | 177190119900 |
| WEST DELTA 104 #D012 | WD104D1200 | 00841 | 177190120500 |
| WEST DELTA 104 #D013 | WD104D1300 | 00841 | 177194068900 |
| WEST DELTA 104 #D014 | WD104D1400 | 00841 | 177194083900 |
| WEST DELTA 104 #E004 | WD104E0401 | 00841 | 177194040901 |
| WEST DELTA 104 #E009 | WD104E0901 | 00841 | 177194041601 |
| WEST DELTA 104 #E010 | WD104E1002 | 00841 | 177194040702 |
| WEST DELTA 104 #E015 | WD104E1504 | 00841 | 177194042504 |
| WEST DELTA 104 #E020 | WD104E2001 | 00841 | 177194064901 |
| WEST DELTA 105 #D003 | WD105D0300 | 00842 | 177190114300 |
| WEST DELTA 105 #E001 ST3 | WD105E0103 | 00842 | 177194039803 |
| WEST DELTA 105 #E002 ST1 | WD105E0201 | 00842 | 177194039901 |
| WEST DELTA 105 #E003 | WD105E0301 | 00842 | 177194040001 |
| WEST DELTA 105 #E005A | WD105E05A0 | 00842 | 177194040500 |
| WEST DELTA 105 #E006 | WD105E0600 | 00842 | 177194041000 |
| WEST DELTA 105 #E007 | WD105E0700 | 00842 | 177194040600 |
| WEST DELTA 105 #E008 ST1 | WD105E0801 | 00842 | 177194041101 |
| WEST DELTA 105 #E011 | WD105E1101 | 00842 | 177194041401 |
| WEST DELTA 105 #E012 | WD105E1200 | 00842 | 177194041800 |
| WEST DELTA 105 #E013 ST1 | WD105E1301 | 00842 | 177194042001 |
| WEST DELTA 105 #E014 | WD105E1400 | 00842 | 177194043200 |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| BRAZOS 491 P/F-4 | BA4914CAS | G06069 | BA491 | 100.0% |
| BRAZOS 491 P/F-5 | BA4915CAS | G06069 | BA491 | 100.0% |
| BRAZOS 491 P/F-A | BA491AWP | G06069 | BA491 | 100.0% |
| BRAZOS A-105 P/F-A | BAA105PFA | G01757 | BAA105 | 12.5% |
| BRAZOS A-105 P/F-B | BAA105PFB | G01757 | BAA105 | 12.5% |
| BRAZOS A-133 P/F-A | BAA133APLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-B | BAA133BPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-C-AUX | BAA133CAUX | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-D | BAA133DPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-E | BAA133EPLT | G02665 | BAA133 | 25.0% |
| CHANDELEUR 043 P/F-A | CA43APLT | G32268 | CA043 | 50.00% |
| EAST CAMERON 002 P/F-1 SL16475 | SL164751PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-1 SL18121 | SL181211PT | 18121 | EC002 | 50.0000% |
| EAST CAMERON 002 P/F-1/1D16473 | SL164731PT | 16473 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-2 SL16475 | SL164752PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-2/2D16473 | SL164732PT | 16473 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-3/3D16475 | SL164753PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-4/4D16475 | SL164754PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-5 SL16475 | SL164755PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-B (SL) | EC2BSL | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-C SL16475 | EC2CPLT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 014 P/F-12 | EC1412CAS | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-13 | EC1413CAS | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-B | EC014PFB | G13572 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-CF | EC14CFPLT | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-CF-2 | EC14CF2PLT | G01440 | EC014 | 100.0000% |
| EAST CAMERON 265 P/F-D | EC265DPLT | G00972 | EC265 | 50.0000% |
| EAST CAMERON 278 P/F-B | EC278BPLT | G00974 | EC278 | 50.0000% |
| EAST CAMERON 278 P/F-C | EC278CPLT | G00974 | EC278 | 50.0000% |
| EAST CAMERON 338 P/F-A | EC338PFA | G02063 | EC338 | 15.6694% |
| EUGENE IS 053 P/F-10 | EI5310CAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-12 | EI5312CAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-8 | EI538CAS | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-9 | EI539PLT | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-B | EI53BPLT | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-C | EI53CPLT | 00479 | EI053 | 83.3334% |
| EUGENE IS 053 P/F-D | EI53DCAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-G | EI53GCAS | 00479 | EI053 | 66.6667% |
| EUGENE IS 089 P/F-23 | EI089PF23 | 00044 | EI089 | 75.0000% |
| EUGENE IS 119 P/F-13 | EI11913CAS | 00050 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-30 | EI11930WP | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-33 | EI11933CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-33-AUX | EI11933AUX | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-34 | EI11934CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-35 | EI11935CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-37 | EI11937CAS | 00049 | EI119 | 50.0000% |
| EUGENE IS 119 P/F-37 H | EI11937HCA | 00049 | EI119 | 50.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 119 P/F-F | EI119FPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-I | EI119IPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-I-8 | EI119I8CAS | 00050 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-K | EI119KPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-M-4 | EI119M4WP | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-M-7 | EI119M7CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 120 P/F-11 | EI12011CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-12 | EI12012CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-14 | EI12014CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-15 | EI12015CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-17 | EI12017CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-19 | EI12019CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-20 | EI12020CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-9 | EI1209CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CF-QTRS | EI120CFQTR | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CMP1 | EI120CMP1 | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CMP2 | EI120CMP2 | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-FIRE STA | EI120FIRE | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-PROD | EI120PRD | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-SC | EI120SCPLT | 00050 | EI120 | 100.0000% |
| EUGENE IS 125 P/F-2 | EI1252CAS | 00051 | EI125 | 100.0000% |
| EUGENE IS 125 P/F-A | EI125APLT | 00051 | EI125 | 100.0000% |
| EUGENE IS 125 P/F-R | EI125RPLT | 00051 | EI125 | 100.0000% |
| EUGENE IS 126 P/F-12 | EI12612CAS | 00052 | EI126 | 100.0000% |
| EUGENE IS 126 P/F-31 | EI12631CAS | 00052 | EI126 | 100.0000% |
| EUGENE IS 136 P/F-1 | EI1361CAS | G03152 | EI136 | 100.0000% |
| EUGENE IS 136 P/F-JA | EI136JAPLT | G03152 | EI136 | 100.0000% |
| EUGENE IS 158 P/F-14 | EI15814CAS | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-B | EI158BPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-C | EI158CPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-C-QRT | EI158CQTR | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-JB | EI158JBPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 173 P/F-G | EI173GPLT | G13622 | EI173 | 100.0000% |
| EUGENE IS 175 P/F-C-PROD | EI175CPRD | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-D | EI175DPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-F | EI175FPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-H | EI175HCAS | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-I | EI175ICAS | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-J | EI175JPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 187 P/F-2 | EI187PF2 | G10736 | EI187 | 100.0000% |
| EUGENE IS 187 P/F-JC | EI187JCPLT | G10736 | EI187 | 100.0000% |
| EUGENE IS 187 P/F-JD | EI187JDPLT | G10736 | EI187 | 100.0000% |
| EUGENE IS 188 P/F-A | EI188APLT | 00443 | EI188 | 100.0000% |
| EUGENE IS 188 P/F-JE | EI188JEPLT | G10736 | EI188 | 100.0000% |
| EUGENE IS 188 P/F-P-VALVE | EI188PVALV | 00443 | EI188 | 100.0000% |
| EUGENE IS 189 P/F-B | EI189BPLT | 423 | EI189 | 100.0000% |
| EUGENE IS 189 P/F-JG | EI189JGPLT | 423 | EI189 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 212 P/F-A | EI212APLT | G05503 | EI212 | 66.6667% |
| EUGENE IS 224 P/F-A | EI224APLT | G05504 | EI224 | 100.0000% |
| EUGENE IS 224 P/F-C | EI224CPLT | G05504 | EI224 | 100.0000% |
| EUGENE IS 296 P/F-B | EI296PFB | G01687M | EI 296 | 85.5270% |
| EUGENE IS 307 P/F-A | EI307PFA | G02110 | EI307 | 0.0000% |
| EUGENE IS 307 P/F-B | EI307PFB | G02110 | EI307 | 0.0000% |
| EUGENE IS 312 P/F-D | EI312PFD | G22679 | EI312 | 0.0000% |
| EUGENE IS 315 P/F-A | EI315APLT | G24912 | EI315 | 75.2917% |
| EUGENE IS 315 P/F-C | EI315PFC | G24912 | EI315 | 25.0000% |
| EUGENE IS 316 P/F-A | EI316APLT | G05040 | EI316 | 100.0000% |
| EUGENE IS 330 P/F A C S | EI330ACSPF | G02115 | EI330 | 27.0000% |
| EUGENE IS 330 P/F-B | EI330BPLT | G02115 | EI330 | 65.0249% |
| EUGENE IS 330 P/F-D | EI330DPLT | G02115 | EI330 | 70.0249% |
| EUGENE IS 333 P/F-B | EI333BPLT | G02317 | EI333 | 100.0000% |
| EUGENE IS 334 P/F-D | EI334DPLT | G15263 | EI334 | 100.0000% |
| EUGENE IS 337 P/F-A | EI337APLT | G03332 | EI337 | 100.0000% |
| EUGENE IS 342 P/F-C | EI342CPLT | G02319 | EI342 | 67.4286% |
| EUGENE IS 346 P/F-A | EI346APLT | G14482 | EI346 | 100.0000% |
| EUGENE IS 353 P/F-D | EI353PFD | G02324 | EI353 | 3.7850% |
| EUGENE IS 354 P/F-D | EI354DPLT | G10752 | EI354 | 100.0000% |
| EUGENE IS 360 P/F-C | EI360PFC | G02324 | EI360 | 3.2730% |
| EUGENE IS 360 P/F-E | EI360PFE | G02324 | EI360 | 4.3730% |
| EUGENE IS 361 P/F-A | EI361PFA | G02324 | EI361 | 6.7568% |
| EWING BANK 826 P/F-A | EW826APLT | G05800 | EW826 | 100.0000% |
| GALVESTON 210 P/F-1 | GA2101CAS | G25524 | GA210 | 66.6700% |
| GALVESTON 210 P/F-2 | GA2102CAS | G25524 | GA210 | 66.6700% |
| GALVESTON 210 P/F-B | GA210BPLT | G25524 | GA210 | 66.6700% |
| GRAND ISLE 039 P/F-Q | GI39QPLT | 00127 | GI039 | 75.0000% |
| GRAND ISLE 040 P/F-G | GI40GPLT | 00128 | GI040 | 75.0000% |
| GRAND ISLE 040 P/F-M | GI40MPLT | 00128 | GI040 | 75.0000% |
| GRAND ISLE 041 P/F-B | GI41BPLT | 00129 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-D | GI041PFD | 00129 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-E | GI41EPLT | 00130 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-H | GI41HPLT | 00130 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-I | GI41ICAS | 00132 | GI041 | 75.0000% |
| GRAND ISLE 042 P/F-C | GI42CPLT | 00131 | GI042 | 75.0000% |
| GRAND ISLE 042 P/F-F | GI42FPLT | 00131 | GI042 | 75.0000% |
| GRAND ISLE 043 P/F-AC-CMP | GI043PFAC | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AP-QRT | GI43APPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AQ-QRT | GI43AQPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AR-RSR | GI43ARPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AS-SEP | GI43ASPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 047 P/F-A | GI47APLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AP | GI47APPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AQ-QTRS | GI47AQPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AX (BRACE) | GI47AXPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-L | GI47LPLT | 00133 | GI047 | 75.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| GRAND ISLE 047 P/F-O | GI47OPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 048 P/F-E | GI48EPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 048 P/F-J | GI48JPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 048 P/F-P | GI48PPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 054 P/F-A | GI54APLT | G27173 | GI054 | 50.0000% |
| GRAND ISLE 076 P/F-A | GI076PFA | G02161 | GI076 | 95.8333% |
| GRAND ISLE 116 P/F-A | GI116APLT | G13944 | GI116 | 50.0000% |
| HIGH ISLAND 110 P/F-A | HI110PFA | G02353 | HI110 | 20.0000% |
| HIGH ISLAND 110 P/F-B | HI110PFB | G02353 | HI110 | 20.0000% |
| HIGH ISLAND 120 P/F-A-PROCESS | HI120APROC | G01848 | HI120 | 34.33% |
| HIGH ISLAND 129 P/F-1 | HI1291CAS | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 129 P/F-16 | HI12916CAS | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 129 P/F-17 | HI12917CAS | G01848 | HI129 | 90.0000% |
| HIGH ISLAND 129 P/F-18 | HI129PF18 | G01848 | HI129 | 27.0000% |
| HIGH ISLAND 129 P/F-5/6 | HI1295PLT | G01848 | HI129 | 90.0000% |
| HIGH ISLAND 129 P/F-CPF | HI129CPF | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 179 P/F-A | HI179APLT | G03236 | HI179 | 69.0750% |
| HIGH ISLAND 206 P/F-B | HI206BPLT | G20660 | HI206 | 100.0000% |
| HIGH ISLAND A-341 P/F-B | HIA341BPLT | G25605 | HIA341 | 60.0000% |
| HIGH ISLAND A-376 P/F-A | HIA376APLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-376 P/F-B | HIA376BPLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-376 P/F-C | HIA376CPLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-382 P/F-F | HIA382FPLT | G02757 | HIA382 | 72.4106% |
| HIGH ISLAND A-474 P/F-A | HIA474PFA | G02366 | HIA474 | 10.0000% |
| HIGH ISLAND A-489 P/F-B | HIA489PFB | G02372 | HIA489 | 8.5000% |
| HIGH ISLAND A-545 P/F-JA | HIA545JAPT | G17199 | HIA545 | 60.0000% |
| HIGH ISLAND A-573 P/F-A | HIA573APLT | G02393 | HIA573 | 72.4102% |
| HIGH ISLAND A-573 P/F-B | HIA573BPLT | G02393 | HIA573 | 72.4102% |
| HIGH ISLAND A-582 P/F-C | HIA582PFC | G02719 | HIA582 | 18.0975% |
| HIGH ISLAND A-582 P/F-D | HIA582PFD | G02719 | HIA582 | 36.5786% |
| HIGH ISLAND A-595 P/F-CF | HIA595CFPT | G02721 | HIA595 | 72.4102% |
| HIGH ISLAND A-595 P/F-D | HIA595DPLT | G02721 | HIA595 | 72.4102% |
| HIGH ISLAND A-596 P/F-E | HIA596EPLT | G02722 | HIA596 | 72.4102% |
| MAIN PASS 077 P/F-A | MP077PFA | G04481 | MP077 | 26.1683% |
| MAIN PASS 140 P/F-A | MP140APLT | G02193 | MP140 | 65.0000% |
| MAIN PASS 140 P/F-B | MP140BPLT | G02193 | MP140 | 65.0000% |
| MAIN PASS 153 P/F-B | MP153BPLT | G01967 | MP153 | 50.0000% |
| MAIN PASS 153 P/F-C | MP153CPLT | G01967 | MP153 | 50.0000% |
| MAIN PASS 259 P/F-A | MP259APLT | G07827 | MP259 | 56.9016% |
| MAIN PASS 275 P/F-A | MP275APLT | G15395 | MP275 | 100.0000% |
| MAIN PASS 289 P/F-B | MP289BPLT | G01666 | MP289 | 100.0000% |
| MAIN PASS 289 P/F-C | MP289CPLT | G01666 | MP289 | 100.0000% |
| MAIN PASS 296 P/F-B | MP296BPLT | G01673 | MP296 | 55.0343% |
| MAIN PASS 296 P/F-C | MP296CPLT | G01673 | MP296 | 50.4846% |
| MAIN PASS 301 P/F-A | MP301PFA | G04486 | MP301 | 22.7793% |
| MAIN PASS 301 P/F-B | MP301PFB | G04486 | MP301 | 22.7793% |
| MAIN PASS 308 P/F-A | MP308APLT | G32265 | MP308 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| MAIN PASS 310 P/F-A | MP310APLT | G04126 | MP310 | 100.0000% |
| MAIN PASS 310 P/F-JA | MP310JAPT | G04126 | MP310 | 100.0000% |
| MAIN PASS 311 P/F-A | MP311APLT | G02213 | MP311 | 50.0000% |
| MAIN PASS 311 P/F-B | MP311BPLT | G02213 | MP311 | 50.0000% |
| MATAGORDA IS 622 P/F-C | MI622CPLT | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-COMPRES | MI622CCMP | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-PRD | MI622CPRD | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-QRT | MI622CQTR | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-D | MI622DPLT | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 623 P/F-B-DRIL | MI623BPLT | G03088 | MI623 | 81.0000% |
| MATAGORDA IS 623 P/F-B-PRD | MI623BPRD | G03088 | MI623 | 81.0000% |
| MATAGORDA IS 623 P/F-H | MI623HPLT | G03088 | MI623 | 100.0000% |
| MATAGORDA IS 635 P/F-F | MI635FPLT | G06043 | MI635 | 81.0000% |
| MATAGORDA IS 635 P/F-G | MI635GPLT | G05000 | MI635 | 81.0000% |
| MISSISSIPPI CANYON 311 P/F-A | MC311APLT | G02968 | MC311 | 100.0000% |
| MOBILE 821 P/F-A-QRT | MO821AQTR | G05058 | MO821 | 100.0000% |
| MOBILE 826 P/F-D | MO826DPLT | G26176 | MO826 | 75.0000% |
| NORTH PADRE IS 969 P/F-JA | PN969PFJA | G05953 | PN969 | 1.2500% |
| NORTH PADRE IS 975 P/F-A | PN975PFA | G05953 | PN969 | 1.2500% |
| SHIP SHOAL 030 #011 CAS P/F | SS030PF11 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 030 #013 CAS P/F | SS030PF13 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 030 P/F-14 | SS030PF14 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 031 P/F-10 | SS031PF10 | 00334 | SS031 | 28.9474% |
| SHIP SHOAL 031 P/F-A | SS031PFA | 00333 | SS031 | 28.9474% |
| SHIP SHOAL 032 P/F-18 | SS032PF18 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-20 | SS032PF20 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-24 | SS032PF24 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-E-1 | SS032PFE | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 033 #005 CAS P/F | SS033PF05 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-1 | SS033PFC1 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-2 | SS033PFC2 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-3(PROD) | SS033PFC3 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 068 P/F-05 | SS685CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-10 | SS6810CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-2 | SS682CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-4 | SS684CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-9 | SS689CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-F | SS68FPLT | G02925 | SS068 | 100.0000% |
| SHIP SHOAL 091 P/F-A | SS91APLT | G02919 | SS091 | 100.0000% |
| SHIP SHOAL 091 P/F-B | SS91BPLT | G02919 | SS091 | 100.0000% |
| SHIP SHOAL 105 P/F-A | SS105APLT | G09614 | SS105 | 100.0000% |
| SHIP SHOAL 105 P/F-B | SS105BPLT | G09614 | SS105 | 100.0000% |
| SHIP SHOAL 126 P/F-B | SS126BPLT | G12940 | SS126 | 100.0000% |
| SHIP SHOAL 129 P/F-A | SS129APLT | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-A-AUX | SS129AAUX | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-B | SS129BPLT | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-L | SS129LCAS | G12941 | SS129 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 144 PF 1 | - | G30275 | SS 144 | 15.5400% |
| SHIP SHOAL 169 P/F-BB | SS169PFBB | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 169 P/F-C | SS169PFC | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 169 P/F-G | SS169PFG | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 176 P/F-1 | SS1761PLT | G33646 | SS176 | 57.1429% |
| SHIP SHOAL 178 P/F-A | SS178APLT | G05551 | SS178 | 100.0000% |
| SHIP SHOAL 182 P/F-A | SS182APLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-A-AUX | SS182AAUX | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-B | SS182BPLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-C | SS182CPLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 99.0000% |
| SHIP SHOAL 189 P/F-C | SS189PFC | G04232 | SS189 | 24.7396% |
| SHIP SHOAL 190 P/F-B | SS190BPLT | G10775 | SS190 | 100.0000% |
| SHIP SHOAL 193 P/F-A | SS193APLT | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 193 P/F-A-PROD | SS193APRD | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 193 P/F-M | SS193MPLT | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 194 P/F-A | SS194APLT | G15288 | SS194 | 100.0000% |
| SHIP SHOAL 198 P/F-G | SS198PFG | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 198 P/F-G-QTRS | SS198PFGQR | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 198 P/F-K | SS198PFK | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 206 P/F-E | SS206EPLT | G01522 | SS206 | 60.0000% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 52.8000% |
| SHIP SHOAL 207 P/F-DWPF | SS207PFDWP | G01523 | SS207 | 0.0000% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 70.0000% |
| SHIP SHOAL 259 P/F-JA | SS259JAPLT | G05044 | SS259 | 93.7130% |
| SHIP SHOAL 274 P/F-A | SS274APLT | G01039 | SS274 | 100.0000% |
| SHIP SHOAL 274 P/F-C | SS274CPLT | G01039 | SS274 | 100.0000% |
| SHIP SHOAL 291 P/F-A | SS291PFA | G02923 | SS291 | 0.0000% |
| SHIP SHOAL 354 P/F-A | SS354APLT | G15312 | SS354 | 100.0000% |
| SOUTH MARSH IS 010 P/F-4 | SM010PF4 | G01181 | SM010 | 100.0000% |
| SOUTH MARSH IS 010 P/F-A | SM10APLT | G01181 | SM010 | 100.0000% |
| SOUTH MARSH IS 011 P/F-34 | SM011PF34 | G01182 | SM011 | 100.0000% |
| SOUTH MARSH IS 011 P/F-58 | SM011PF58 | G01182 | SM011 | 100.0000% |
| SOUTH MARSH IS 018 P/F-A | SM018PFA | G08680 | SM018 | 100.0000% |
| SOUTH MARSH IS 048 P/F-E | SM048PFE | 786 | SM048 | 100.0000% |
| SOUTH MARSH IS 066 P/F-C | SM66CPLT | G01198 | SM058 | 50.0000% |
| SOUTH MARSH IS 066 P/F-D | SM66DPLT | G01198 | SM066 | 50.0000% |
| SOUTH MARSH IS 076 P/F-F | SM76FPLT | G01208 | SM076 | 100.0000% |
| SOUTH MARSH IS 093 P/F-A | SM093PFA | G21618 | SM093 | 12.5000% |
| SOUTH MARSH IS 105 P/F-A | SM105APLT | G17938 | SM105 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH MARSH IS 106 P/F-A-NORTH | SM106ANPLT | G03776 | SM106 | 100.0000% |
| SOUTH MARSH IS 106 P/F-JUNCTIO | SM106JCT | G02279 | SM106 | 100.0000% |
| SOUTH MARSH IS 128 P/F-A | SM128APLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-B | SM128BPLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-C | SM128CPLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-SA-2 | SM128SADPT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 132 P/F-B | SM132BPLT | G02282 | SM132 | 50.0000% |
| SOUTH MARSH IS 137 P/F-A | SM137APLT | G02589 | SM137 | 50.0000% |
| SOUTH MARSH IS 149 P/F-C | SM149CPLT | G02592 | SM149 | 50.0000% |
| SOUTH MARSH IS 149 P/F-D | SM149DPLT | G02592 | SM149 | 100.0000% |
| SOUTH MARSH IS 239 156 CAIS | SM239PF156 | 00310 | SM240 | 16.0000% |
| SOUTH MARSH IS 239 191 CAIS | SM239PF191 | 00310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 1 CAIS | SM240PF1 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 153 CAIS | SM240PF153 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 192 CAIS | SM240PF192 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 196 CAIS | SM240PF196 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 2 CAIS | SM240PF2 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 E DOLPHIN | SM240PF0E | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 P/F-E-PRD | SM240PFE | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 241 CAS 149 P/F | SM241PF149 | 310 | SM241 | 16.0000% |
| SOUTH MARSH IS 241 CAS 200 P/F | SM241PF200 | 00310 | SM241 | 16.0000% |
| SOUTH MARSH IS 241 CAS 302 P/F | SM241PF302 | 00310 | SM241 | 16.0000% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 72.8000% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 87.7000% |
| SOUTH MARSH IS 280 P/F-G | SM280GPLT | G14456 | SM280 | 50.0000% |
| SOUTH MARSH IS 280 P/F-H | SM280HPLT | G14456 | SM280 | 50.0000% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 58.4000% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 68.1000% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 68.1000% |
| SOUTH PASS 062 P/F-A | SP62APLT | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-B | SP62BPLT | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-C | SP062PFC | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-D | SP062PFD | G01294 | SP062 | 100.0000% |
| SOUTH PASS 065 P/F-A | SP65APLT | G01610 | SP065 | 50.0000% |
| SOUTH PASS 070 P/F-C | SP070PFC | G01614 | SP070 | 100.0000% |
| SOUTH PASS 070 P/F-D | SP070PFD | G01614 | SP070 | 100.0000% |
| SOUTH PASS 075 P/F-A | SP75APLT | G05051 | SP075 | 100.0000% |
| SOUTH PASS 087 P/F-D | SP87DPLT | G07799 | SP087 | 86.1125% |
| SOUTH PASS 089 P/F-B | SP89BPLT | G01618 | SP089 | 50.0000% |
| SOUTH PELTO 001 P/F-A | PL001PFA | G04234 | PL001 | 100.0000% |
| SOUTH PELTO 009 P/F-10 | PL009PF10 | G02924 | PL009 | 50.0000% |
| SOUTH PELTO 009 P/F-5 | PL009PF05 | G02924 | PL009 | 100.0000% |
| SOUTH PELTO 009 P/F-6 | PL009PF06 | G02924 | PL009 | 100.0000% |
| SOUTH PELTO 009 P/F-7 | PL009PF07 | G02924 | PL009 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH PELTO 010 #2 (2924)CAIS | PL0102CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-10 | PL1010CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-10-8 | PL10108CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-11 | PL1011CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-12 | PL1012WP | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-14 | PL1014CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-16 | PL1016CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-17 | PL1017CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-19 | PL1019CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-20 | PL1020CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-22 | PL1022CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-23 | PL1023CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-26 | PL1026CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-2A | PL102ACAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-3A | PL103ACAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-4 | PL104WP | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-7 | PL107CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-9-1-A | PL1091ACAS | G02925 | PL010 | 50.0000% |
| SOUTH PELTO 010 P/F-A | PL10APLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B | PL10BPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B25 | PL10B25CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B-AUX | PL10BAUXPT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-C | PL10CPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-D | PL10DPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-E | PL10EPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-LQ | PL10LQPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 011 P/F-17 | PL1117CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-19 | PL1119CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-22 | PL1122CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-25 | PL1125CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-F | PL11FPLT | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-F-3 | PL11F3CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-G | PL11GCAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 025 JA PF | PL025PFJA | G14535 | PL025 | 100.0000% |
| SOUTH PELTO 025 JB PF | PL025PFJB | G14535 | PL025 | 100.0000% |
| SOUTH TIMBALIER 049 P/F-A | ST49APLT | G24956 | ST049 | 100.0000% |
| SOUTH TIMBALIER 053 P/F-4 | ST053PF4 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-6 | ST053PF6 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-A | ST053PFA | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-A-AUX | ST053PFAAX | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-C (5) | ST053PFC5 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-I | ST053PFI | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 068 P/F-1 | ST681CAS | 00020 | ST068 | 79.6666% |
| SOUTH TIMBALIER 148 P/F-A | ST148PFA | G01960 | ST148 | 15.5500% |
| SOUTH TIMBALIER 161 P/F-C | ST161PFC | G01248 | ST161 | 100.0000% |
| SOUTH TIMBALIER 203 P/F-B | ST203PFB | G01269 | ST203 | 40.0000% |
| SOUTH TIMBALIER 205 P/F-B | ST205BPLT | G05612 | ST205 | 50.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH TIMBALIER 205 P/F-G | ST205GPLT | G05612 | ST205 | 100.0000% |
| SOUTH TIMBALIER 206 P/F-A | ST206APLT | G05612 | ST206 | 50.0000% |
| SOUTH TIMBALIER 291 P/F-A | ST291APLT | G16455 | ST291 | 35.0000% |
| SOUTH TIMBALIER 295 P/F-A | ST295APLT | G05646 | ST295 | 92.9167% |
| SOUTH TIMBALIER 295 P/F-B | ST295BPLT | G05646 | ST295 | 92.9167% |
| SOUTH TIMBALIER 311 P/F-A | ST311APLT | G31418 | ST311 | 22.5000% |
| SOUTH TIMBALIER 316 P/F-A | ST316PFA | G22762 | ST316 | 20.0000% |
| VERMILION 261 P/F-A | VR261APLT | G03328 | VR261 | 75.0000% |
| VERMILION 261 P/F-A-AUX | VR261AAUX | G03328 | VR261 | 75.0000% |
| VERMILION 265 P/F-A-DRL | VR265ADRL | G01955 | VR265 | 100.0000% |
| VERMILION 265 P/F-A-PRD | VR265APRD | G01955 | VR265 | 100.0000% |
| VERMILION 326 P/F-A | VR326APLT | G21096 | VR326 | 70.3148% |
| VERMILION 369 P/F-A | VR369PFA | G02274 | VR369 | 10.9700% |
| VERMILION 369 P/F-D | VR369PFD | G02274 | VR369 | 23.1707% |
| VERMILION 380 P/F-A | VR380APLT | G02580 | VR380 | 100.0000% |
| VERMILION 408 P/F-A | VR408PF | G15212 | VR408 | 50.0000% |
| VIOSCA KNOLL 203 P/F-A | VK203PFA | G07890 | VK203 | 33.3333% |
| VIOSCA KNOLL 203 P/F-B | VK203PFB | G07890 | VK203 | 33.3333% |
| VIOSCA KNOLL 204 P/F-3 | VK204PF3 | G04921 | VK204 | 33.3333% |
| VIOSCA KNOLL 204 P/F-C | VK204PFC | G04921 | VK204 | 33.3333% |
| VIOSCA KNOLL 780 P/F-A | VK780APLT | G15436 | VK780 | 100.0000% |
| WEST CAMERON 033 P/F-1 | WC033PF1 | G15050 | WC033 | 100.0000% |
| WEST CAMERON 033 P/F-N | WC033PFN | G15050 | WC033 | 100.0000% |
| WEST CAMERON 033 P/F-O | WC033PFO | G15050 | WC033 | 100.0000% |
| WEST CAMERON 065 P/F-8 | WC065CAIS8 | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-9 | WC065CAIS9 | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-JA | WC65JAPLT | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-JA-AUX | WC65JAAUX | G02825 | WC065 | 100.0000% |
| WEST CAMERON 066 P/F-A | WC66APLT | G01860 | WC066 | 91.0585% |
| WEST CAMERON 066 P/F-B | WC066PFB | G02826 | WC066 | 82.9104% |
| WEST CAMERON 066 P/F-C | WC066PFC | G01860 | WC066 | 75.0000% |
| WEST CAMERON 066 P/F-E | WC066PFE | G02826 | WC066 | 75.0000% |
| WEST CAMERON 066 P/F-F(FMR31) | WC066PFF31 | 00244 | WC066 | 100.0000% |
| WEST CAMERON 071 P/F-28 | WC071PF28 | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-D | WC071PFD | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-D-AUX | WC071PFDAX | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-F (FMR18) | WC71FPLT | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-QTR | WC71QTR | 00244 | WC071 | 100.0000% |
| WEST CAMERON 072 P/F-1 | WC072PF1 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 072 P/F-2 | WC072PF2 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 072 P/F-3 | WC072PF3 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 102 P/F-2 | WC102PF2 | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-G | WC102GPLT | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-G-AUX | WC102GAUX | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-H | WC102HPLT | 00247 | WC102 | 100.0000% |
| WEST CAMERON 110 P/F-10 | WC11010CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-11 | WC11011CAS | 00081 | WC110 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| WEST CAMERON 110 P/F-12 | WC11012CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-15 | WC11015CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-18 | WC11018CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-19 | WC11019CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-A | WC110APLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-A-AUX1 | WC110AAUX1 | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-E | WC110EPLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-H | WC110HPLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 111 P/F-C | WC111CCAS | 00081 | WC111 | 100.0000% |
| WEST CAMERON 111 P/F-F | WC111FCAS | 00081 | WC111 | 100.0000% |
| WEST CAMERON 144 P/F-B | WC144BPLT | G01953 | WC144 | 100.0000% |
| WEST CAMERON 225 P/F-C | WC225PFC | G00900 | WC225 | 26.6675% |
| WEST CAMERON 289 P/F-A-PROCESS | WC289APROC | G04818 | WC289 | 100.0000% |
| WEST CAMERON 290 P/F-A | WC290PFA | G04818 | WC290 | 10.3759% |
| WEST CAMERON 295 P/F-A | WC295ACAS | G24730 | WC295 | 20.60% |
| WEST DELTA 068 P/F-U | WD68UPLT | 00180 | WD068 | 75.0000% |
| WEST DELTA 070 P/F-D | WD070PFD | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-FF | WD070PFFF | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-I | WD070PFI | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-L | WD070PFL | 00182 | WD070 | 75.0000% |
| WEST DELTA 071 P/F-E | WD71EPLT | 00838 | WD071 | 75.0000% |
| WEST DELTA 071 P/F-O | WD071OPLT | 00838 | WD071 | 75.0000% |
| WEST DELTA 075 P/F-D | WD075PFD | G01085 | WD075 | 100.0000% |
| WEST DELTA 075 P/F-F | WD075PFF | G01085 | WD075 | 100.0000% |
| WEST DELTA 075 P/F-G | WD075PFG | G01085 | WD075 | 100.0000% |
| WEST DELTA 090 P/F-A | WD090PFA | G01089 | WD090 | 100.0000% |
| WEST DELTA 090 P/F-B | WD090PFB | G01089 | WD090 | 100.0000% |
| WEST DELTA 090 P/F-E | WD090PFE | G01089 | WD090 | 100.0000% |

**Exhibit I-C(ii)**

| Name | State | County/Parish | Ownership % |
|---|---|---|---|
| Blue Water Gas Plant | Louisiana | | 0.1000% |
| Galveston 300/301 Facility | Texas | Galveston | 100.0000% |
| Gibbstown Separation Station | Louisiana | Cameron | 100.0000% |
| Grand Bay Receiving Station | Louisiana | Plaquemines | 65.0000% |
| Grand Chenier Separation Facility | Louisiana | Cameron | 5.4% |
| Grand Chenier Tank Battery | Louisiana | Cameron | 100.0000% |
| Grand Isle Fuel Line (supply line for municipality) | Louisiana | Jefferson | 100.0000% |
| Grand Isle Tank Bat | Louisiana | Jefferson | 75.0000% |
| Johnson Bayou Onshore Separation Facility | Louisiana | Cameron | 24.31% of Co-Owned Equipment |
| Johnson Bayou Onshore Separation Facility | Louisiana | Cameron | 54.875% of Producers' Equipment |
| MI 519 Bay City Compressor Station | Texas | Matagorda | 81.8979% |
| North Terrebonne Gas Processing Plant | Louisiana | Terrebonne | 0.0000% |
| Sea Robin Condensate Separation Facility (aka "Henry Hub") | Louisiana | Vermilion | 8.0000% |
| Sea Robin Gas Plant | Louisiana | Vermilion | 23.7285% |
| Stingray Onshore Separation Facility (Cameron Onshore Commingling Facility) | Louisiana | Cameron | 11.1300% |
| Targa Venice | Louisiana | Plaquemines | 100.0000% |
| Thousand Square Mile Area (TASMA) | Louisiana | Vermilion | 100.0000% |
| Tivoli Plant | Texas | Refugio | 56.1394% |
| TOCA Gas Processing Plant | Louisiana | St. bernard | 4.2900% |
| Venice Dehydration Facility (South Pass Dehydration Station) | Louisiana | Plaquemines | 35.2000% |
| Vermilion 76 Onshore Scrubber | Louisiana | Vermilion | 93.9% |

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G11142 |
| 17938 | Fieldwood Energy, LLC | CA | 43 | A | VK | 247 | 24"SSTI | 6 | GAS | Active | G29431 | G33268 |
| 3519 | Fieldwood Energy, LLC | EC | 14 | CF | EC | 9 | F/S | 4 | COND | Out of Service | G13721 | G01440 |
| 13104 | Fieldwood Energy, LLC | EC | 2 | F/S | EC | 2 | 6" SSTI | 4 | GAS | Permitted for Abandonment | G22383 | G15050 |
| 17801 | Fieldwood Energy, LLC | EC | 14 | CF | WC | 69 | 30 SSTI | 12 | GAS | Permitted for Abandonment | G28556 | G01440 |
| 44 | Fieldwood Energy, LLC | EI | 175 | A | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Active | G02139A | G02115 |
| 6818 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | B | 6 | GAS | Out of Service | G05932 | G03332 |
| 6819 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | 14 SSTI | 6 | OIL | Out of Service | G05931 | G03332 |
| 6852 | Fieldwood Energy, LLC | EI | 315 | A | EI | 330 | 14 SSTI | 6 | OIL | Out of Service | G13447 | G02112 |
| 7290 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 14 SSTI | 8 | OIL | Active | G07537 | G05040 |
| 7347 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 8" SSTI | 6 | GAS | Active | G07555 | G05040 |
| 7914 | Fieldwood Energy, LLC | EI | 212 | A | SS | 152 | 24 SSTI | 6 | GAS | Out of Service | G08530 | G05503 |
| 7915 | Fieldwood Energy, LLC | EI | 212 | A | EI | 213 | 12 SSTI | 6 | OIL | Out of Service | G08531 | G05503 |
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 10 | OIL | Out of Service | G08541 | G02319 |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 |
| 9376 | Fieldwood Energy, LLC | EI | 142 | A | EI | 141 | 10 SSTI | 4 | OIL | Out of Service | G12734 | 00052 |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 6 | OIL | Out of Service | G20539 | 00479 |
| 14073 | Fieldwood Energy, LLC | EI | 188 | JE | EI | 188 | 06 SSTI | 4 | BLKG | Out of Service | G29056 | 00443 |
| 14479 | Fieldwood Energy, LLC | EI | 158 | C | EI | 176 | 12"SSTI | 6 | OIL | Out of Service | G13702 | G01220 |
| 15906 | Fieldwood Energy, LLC | EI | 173 | G | EI | 175 | C | 4 | GAS | Out of Service | G28239 | G13622 |
| 16225 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | OIL | Out of Service | G28598 | G10752 |
| 16226 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | OIL | Out of Service | G28599 | G10752 |
| 16243 | Fieldwood Energy, LLC | EI | 189 | B | EI | 188 | A | 4 | GAS | Out of Service | G29057 | 00423 |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | GAS | Out of Service | G29108 | G02319 |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 |
| - | Fieldwood Energy, LLC | EI | 187 | 2 | EI | 187 | 2 | | | Out of Service | G30283 | G10736 |
| 8487 | Fieldwood Energy, LLC | EW | 826 | A | ST | 300 | 12 SSTI | 12 | OIL | Out of Service | G10110 | G05800 |
| 15298 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | 12 SSTI | 8 | OIL | Active | G26931 | G25524 |
| 7866 | Fieldwood Energy, LLC | GI | 33 | A | GI | 22 | L | 8 | GAS | Permitted for Abandonment | G08514 | G04002 |
| 9084 | GOM Shelf, LLC | GI | 43 | AS | GI | 19 | F/S | 10 | OIL | Active | G12304 | 00175 |
| 17673 | Fieldwood Energy, LLC | GI | 54 | #2 | GI | 47 | L | 4 | BLKO | Permitted for Abandonment | G28528 | G27173 |
| 5470 | Fieldwood Energy, LLC | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of Service | G04050 | G02754 |
| 6504 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 |
| 11841 | Fieldwood Energy, LLC | HI | A 545 | JA | HI | A 547 | B | 6 | BLKG | Permitted for Abandonment | G20510 | G17199 |
| 14650 | Fieldwood Energy, LLC | HI | 201 | #1 | HI | 199 | A | 6 | BLKG | Partial Abandon | G25397 | G23199 |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 |
| 15581 | Fieldwood Energy, LLC | HI | 120 | A | HI | 128 | SSTI | 6 | G/C | Out of Service | G26968 | G24730 |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLGH | Partial Abandon | G28284 | G25579 |
| 18789 | Fieldwood Energy LLC | HI | 116 | Platform A | HI | 71 | 16-inch SSTI | 16 | G/C | PABN | G28649 | G06116 |
| 9032 | Fieldwood Energy, LLC | MC | 311 | A | MC | 312 | 8 SSTI | 8 | OIL | Active | G11747 | G02968 |
| 3472 | Fieldwood Energy, LLC | MP | 140 | B | MP | 56 | F/S | 18 | G/C | Active | G13511 | G02193 |
| 5917 | GOM Shelf, LLC | MP | 311 | A | MP | 313 | 12 SSTI | 8 | OIL | Out of Service | G13466 | G02213 |
| 7143 | Fieldwood Energy, LLC | MP | 310 | A | MP | 297 | 12 SSTI | 6 | OIL | Out of Service | G07100 | G04126 |
| 13100 | Fieldwood Energy, LLC | MP | 259 | A | VK | 739 | #01 | 5 | UMB | Out of Service | G22377 | G07827 |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 |
| 5408 | Fieldwood Energy, LLC | PL | 10 | B | PL | 13 | 20 SSTI | 8 | OIL | Active | G09317 | G02925 |
| 16044 | Fieldwood Energy, LLC | PL | 9 | #10 | PL | 10 | B | 6 | BLKG | Out of Service | G28276 | G02924 |
| 4008 | Fieldwood Energy, LLC | SM | 268 | A | SM | 28 | A | 12 | OIL | Out of Service | G02816 | G34284 |
| 4647 | Fieldwood Energy, LLC | SM | 149 | 6"SSTI | SM | 132 | B | 6 | BLKO | Out of Service | G03432 | G02592 |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 |
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 8 | BLKO | Out of Service | G29131 | G02600 |
| 6513 | Fieldwood Energy, LLC | SM | 268 | D | SM | 268 | A | 10 | BLKO | Out of Service | G29132 | G02310 |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Active | G28756 | G14456 |
| 11046 | Fieldwood Energy, LLC | SM | 11 | Well No.34 | SM | 10 | A | 6 | GAS | Out of Service | G28813 | G01182 |
| 11047 | Fieldwood Energy, LLC | SM | 10 | A | SM | 11 | 34 | 3 | LIFT | Out of Service | G28812 | G01181 |
| 11986 | Fieldwood Energy, LLC | SM | 39 | A | SM | 33 | 30 SSTI | 8 | GAS | Out of Service | G20565 | G16320 |
| 11987 | Fieldwood Energy, LLC | SM | 39 | A | SM | 40 | 10 SSTI | 6 | OIL | Out of Service | G20566 | G16320 |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 6 | GAS | Active | G28484 | G02311 |
| 18057 | Fieldwood Energy, LLC | SM | 11 | No.58 Caisson | SM | 10 | A | 4 | GAS | Out of Service | G28815 | G01182 |
| 18510 | Fieldwood Energy, LLC | SM | 48 | A | SM | 287 | SSTI | 6 | GAS | Out of Service | G29113 | G01181 |
| 18563 | Fieldwood Energy, LLC | SM | 48 | E | SM | 39 | A | 6 | OIL | Out of Service | G29182 | 00786 |
| 18583 | Fieldwood Energy, LLC | SM | 48 | A | SM | 1 | SSTI | 4 | OIL | Out of Service | G28814 | G01181 |
| 18802 | Fieldwood Energy, LLC | SM | 39 | A | SM | 48 | E | 3 | LIFT | Out of Service | G29182 | G16320 |
| 4716 | Fieldwood Energy, LLC | SP | 70 | F | SP | 60 | A | 6 | OIL | Out of Service | G03436 | G01614 |
| 15064 | FW GOM Pipeline, Inc. | SP | 49 | A | SP | 27 | F/S Boundary | 10 | G/O | Active | G07561 | G05051 |
| 15598 | Fieldwood Energy, LLC | SP | 70 | C | SP | 60 | E | 6 | OIL | Out of Service | G26860 | G01614 |
| 15626 | Fieldwood Energy, LLC | SP | 65 | A | SP | 62 | 18 SSTI | 6 | GAS | Out of Service | G01686A | G01617 |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Out of Service | G13491 | G01520 |
| 1147 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13490 | G01523 |
| 6432 | Fieldwood Energy, LLC | SS | 182 | A | SS | 169 | 18 SSTI | 6 | OIL | Active | G09321 | G03998 |
| 6538 | Fieldwood Energy, LLC | SS | 91 | PL | SS | 11 | 08 SSTI | 6 | OIL | Active | G05146 | G02919 |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | GAS | Out of Service | G09322 | G0820 |
| 7650 | Fieldwood Energy, LLC | SS | 178 | A | SS | 169 | 18 SSTI | 8 | OIL | Out of Service | G08054 | G05551 |
| 10406 | Fieldwood Energy, LLC | SS | 274 | A | EI | 259 | A | 8 | OIL | Active | G14731 | G01039 |
| 10780 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 18 SSTI | 6 | OIL | Active | G15683 | G13917 |
| 10781 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 10 SSTI | 6 | GAS | Out of Service | G15684 | G13917 |
| 11137 | Fieldwood Energy, LLC | SS | 129 | A | SS | 130 | 12 SSTI | 6 | GAS | Out of Service | G16084 | G12941 |
| 11145 | Fieldwood Energy, LLC | SS | 129 | A | SS | 149 | 6 SSTI | 6 | G/C | Out of Service | G16087 | G12941 |
| 11480 | Fieldwood Energy, LLC | SS | 105 | A | EI | 165 | 30 SSTI | 10 | GAS | Out of Service | G18801 | G09614 |
| 11544 | Fieldwood Energy, LLC | SS | 126 | B | SS | 105 | A | 4 | BLKG | Out of Service | G18820 | G12940 |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | OIL | Out of Service | G22139 | G04232 |
| 15530 | Fieldwood Energy, LLC | SS | 183 | Flange | SS | 169 | Flange | 10 | GAS | Out of Service | G01460 | G13917 |
| 16036 | Fieldwood Energy, LLC | SS | 190 | Capped End | SS | 207 | A | 6 | BLKO | Permitted for Abandonment | G14734 | G10775 |
| 18837 | Fieldwood Energy, LLC | SS | 176 | C | EI | 212 | A | 6 | BLKG | Out of Service | G29190 | G33646 |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 4 | | Proposed | G28788 | 00820 |
| 5890 | Fieldwood Energy, LLC | ST | 53 | A | ST | 52 | A | 6 | OIL | Out of Service | G05319 | G04000 |
| 7802 | Fieldwood Energy, LLC | ST | 295 | A | ST | SS 8487 | | 8 | OIL | Active | G08385 | G05646 |
| 8676 | Fieldwood Energy, LLC | ST | 206 | A | ST | 175 | T-22 | 16 | G/C | Out of Service | G11146 | G05613 |
| 9313 | Fieldwood Energy, LLC | ST | 205 | G | ST | 295 | 24 SSTI | 8 | GAS | Out of Service | G12709 | G05646 |
| 13462 | Fieldwood Energy, LLC | ST | 205 | G | ST | 206 | A | 4 | OIL | Out of Service | G02882I | G05612 |
| 13462 | Fieldwood Energy, LLC | ST | 205 | G | ST | 206 | A | 4 | BLKO | Out of Service | G29451 | G05612 |
| 17265 | Fieldwood Energy, LLC | ST | 68 | Caisson No. 1 | ST | 53 | A | 6 | BLKO | Out of Service | G28385 | G04000 |
| 17898 | Fieldwood Energy, LLC | ST | 49 | Platform A | ST | 35 | 6-inch SSTI | 4 | OIL | Out of Service | G28577 | G24956 |
| 19776 | Fieldwood Energy, LLC | ST | 295 | 24" SSTI | ST | 292 | A | 24 | GAS | Out of Service | G29376 | G05646 |
| 13098 | Fieldwood Energy, LLC | VK | 694 | #04 | MP | 259 | A | 4 | BLKG | Out of Service | G22376 | G13055 |
| 13099 | Fieldwood Energy, LLC | VK | 739 | SS #3 | MP | 259 | A | 5 | BLKG | Out of Service | G22377 | G07827 |
| 13720 | Fieldwood Energy, LLC | VK | 340 | 8"SSTI | VK | 251 | A | 8 | GAS | Out of Service | G28221 | G04481 |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Active | G28704 | G10930 |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Active | G22465 | G10930 |
| 6113 | Fieldwood Energy, LLC | VK | 380 | A | VR | 397 | 24 SSTI | 12 | GAS | Out of Service | G04645 | G02580 |
| 12502 | Fieldwood Energy, LLC | VR | 326 | A Platform | VR | 321 | 22-inch SSTI | 6 | G/C | Active | G21523 | G21096 |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 8 | OIL | Out of Service | G28347 | G03328 |
| 18502 | Fieldwood Energy, LLC | VR | 380 | A | VR | 398 | 16" SSTI | 6 | OIL | Out of Service | G02919 | G02580 |
| 18502 | Fieldwood Energy, LLC | VR | 380 | Platform A | VR | 398 | 16-inch SSTI | 6 | OIL | Active | G29109 | G02580 |
| 2698 | Fieldwood Energy, LLC | WC | 102 | flange | WC | 102 | G | 6 | OIL | Out of Service | G02124D | G02247 |
| 3763 | Fieldwood Energy, LLC | WC | 102 | #02 | WC | 102 | 08 SSTI | 8 | GAS | Out of Service | G02124D | G02247 |
| 3986 | Fieldwood Energy, LLC | WC | 66 | A | WC | 31 | F/S | 10 | G/O | Active | G03345 | G01860 |

Exhibit I-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5343 | Fieldwood Energy, LLC | WC | 34 | D | WC | 35 | 10 SSTI | 8 | G/O | Out of Service | G28659 | G01860 |
| 8621 | Bandon Oil and Gas, LP | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 |
| 9504 | Fieldwood Energy, LLC | WC | 71 | 12 SSTI | WC | 71 | 12 SSTI | 12 | GAS | Out of Service | G04346 | G00244 |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 4 | BLKG | Out of Service | G25275 | G23735 |
| 15210 | Fieldwood Energy, LLC | WC | 295 | 2 | HI | 120 | A-PROCESS | 6 | BLKG | Out of Service | G26886 | G24730 |
| 15952 | Fieldwood Energy, LLC | WC | 33 | O | WC | 34 | D | 4 | G/O | Out of Service | G28657 | G15050 |

Exhibit I-D(ii)

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|---|---|---|---|---|---|---|---|---|
| EI | 188 | JE | 26052 | G30268 | G10736 | Fieldwood Energy LLC | 04/18/14 | EI 187 JC001, JD001, JD002, 002 & JE002 |
| HI | 120 | A-PROCESS | 10450 | G30270 | G01848 | Fieldwood Energy LLC | 08/06/14 | WC 295 A001 & A002 |
| SM | 132 | B | 21982 | G30329 | G02588 | Fieldwood Energy LLC | 05/06/19 | SM 136 C007, SM 149 C001, C002 & C004 |
| ST | 206 | A | 23851 | G30291 | G05612 | Fieldwood Energy LLC | 12/11/15 | ST 205 G001 & G003 |
| SM | 10 | A | 20706 | G30365 | G01181 | Fieldwood Energy LLC | | |

**Exhibit I-E**

Call Sign:

KKS457

WQFI654

WQGX432

WPSH741

KNDQ614

WPXX340

Exhibit I-F

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 8/7/1953 | UA | H 179 Unit Agreement |
| Land | 10/27/1954 | Unit Agreement No. 14-08-001-20221 | Grand Isle CATCO Unit Agreement, dated October 27, 1954, between Continental Oil Company and The Atlantic Refining Company, Tide Water Associated Oil Company and Cities Service Oil Company ; Unit No. 891002021 |
| Land | 5/1/1995 | Unit Operating Agreement | Amendment-to Unit Operating Agreement, dated effective May 1, 1995, by and between Conoco Inc.,Vastar Resources, Inc., Texaco Exploration and Production Inc. and Oxy USA Inc. |
| Land | 11/21/1955 | Unit Agreement No. 14-08-001-2454 | West Delta-Grand Isle Unit Agreement, dated November 21,1955, between Continental Oil Company, as unit operator, and The Atlantic Refining Company, Tidewater Associated Oil Company and Cities Service Production Company, as non-operators, as amended ; Unit No. 891002454 |
| Land | 4/10/1956 | Unit Agreement | Unit No. 891002891 - SS 32 |
| Land | 12/4/1958 | OPERATING AGREEMENT | OPERATING AGREEMENT BY AND BETWEEN THE TEXAS COMPANY AND PAN AMERICAN PETROLEUM CORPORATION , AS AMENDED |
| Land | 12/4/1958 | Operating Agreement | Operating Agreement eff. 12/4/58 |
| Land | 7/25/1960 | Operating Agreement | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil 'Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field. |
| Land | 8/3/1964 | UOA | Operating Agreement eff. 8-3-64 |
| Land | 11/2/1964 | UA | EI 266 Unit Agreement |
| Land | 1/12/1965 | Joint Operating Agreement | Main Agreement, dated effective January 12,1965, between Cities Service Oil Company, Skelly Oil Company, Sunray DX Oil Company and Tidewater Oil Company, governing operations on the contract area. The Operating Agreement contained in Exhibit "C" of the Main Agreement was superseded by the Joint Operating Agreement eff. 1/1/97 |
| Land | 1/21/1966 | Unit Agreement No. 14-08-001-8784 | Unit No. 891008784 - SS 271 |
| Land | 2/26/1966 | Offshore Operating Agreement | Operating Agreement by and between Hardy Oil & Gas USA Inc., as Operator and British-Borneo Exploration, Inc. and Zilkha Energy Company, As Non-Operators |
| Land | 6/10/1966 | Unit Operating Agreement Ship Shoal | SS 271 Unit Operating Agreement (Unit#891008784) As Amended, originally by and between Forest Oil Corp. as Operator, and Texas Gas Exploration Corp. et al as Non-Operators |
| Land | 2/6/1967 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN CONTINENTAL OIL COMPANY AND TENNECO OIL COMPANY ET AL, AS AMENDED |
| Land | 1/1/1971 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC., MESA PETROLEUM CO., ET AL. |
| Land | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1,1971, between Tenneco Oil Company and Texaco Inc. Amendment to Operating Agreement, dated effective May 1,1974, between Tenneco Oil Company, Texaco Inc. and Tenneco Exploration 11, Ltd., whereby Tenneco Exploration 11 became a party to, and ratified, the operating agreement. |
| Land | 1/1/1972 | Joint Operating Agreement | OPERATING AGREEMENT BY AND B BETWEEN SIGNAL OIL AND GAS COMPANY AND THE LOUISIANA LAND AND EXPLORATION COMPANY, ET AL. |
| Land | 3/24/1972 | Unit Agreement | SP 65 G-1 Unit Res B Unit Agreement -891012327 |
| Land | 5/18/1972 | Unit Agreement | SP 65 G-1 Unit Res A Unit Agreement-891012332 |
| Land | 5/18/1972 | Unit Agreement | SP 65 G2-G3 Unit Agreement-891012333 |
| Land | 1/1/1973 | Offshore Operating Agreement | Offshore Operating Agreement* (VR 369/386+) *Unit Operating Agreement supersedes JOperating Agreement 1/1/1973 |
| Land | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8/1/73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8/1/73 |
| Land | 5/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 9/3/1974 | FO | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation |
| Land | 12/1/1974 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. |
| Land | 4/23/1975 | Joint Operating Agreement | Operating Agreement eff. 4-23-75 |
| Land | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al |
| Land | 3/1/1976 | Joint Operating Agreement | Operating Agreement eff. 3-1-76 b/b POGO, Mesa and Mobil, et al |
| Land | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended |
| Land | 4/1/1977 | Unit Operating Agreement | UNIT OPERATING AGREEMENT BY AND BETWEEN  DEVON ENERGY PRODUCTION , APACHE CORPORATION, ET AL. |
| Land | 4/1/1977 | Unit Agreement No. 14-08-001-16943 | Unit Agreement, JD Sand, Reservoir A, Eugene Island Block 330 Field (Unit Number 891016943), dated effective April 1,1977, naming Pennzoil Oil & Gas, Inc., as Operator, and Texaco Inc. and Shell Oil Company, as sub-operators |
| Land | 12/12/1977 | Unit Agreement | Unit Agreement (VR 369 Unit Area) 12/12/1977 |
| Land | 12/23/1977 | Unit Operating Agreement | Unit Operating Agreement* (VR 369 Unit Area) *UOperating Agreement supersedes JOperating Agreement 12/23/1977 |
| Land | 1/1/1978 | UOA | H 179 Unit Operating Agreement |
| Land | 5/2/1978 | FO | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| Land | 11/1/1978 | OA | Operating Agreement eff. 11/1/78 |
| Land | 11/17/1978 | FO | Farmout Agreement dated November 17,1978 between Gulf Oil Corporation and Shell Oil Company covering the Northeast Quarter (NE/4) of that certain Oil and Gas Lease dated July 1,1967 bearing Serial No. OCS-G 1609, South Pass Area Block 61. |
| Land | 3/1/1979 | Joint Operating Agreement | OPERATING AGREEMENT DATED MARCH 1, 1979, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC. |
| Land | 9/15/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| Land | 12/1/1979 | OFFSHORE OPERATING AGREEMENT | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL |
| Land | 4/1/1981 | Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship ShOperating Agreement! Blocks 206, 207,,OCS-G i523 and OCS-G 1523, respectively. |
| Land | 9/1/1981 | Joint Operating Agreement | Operating Agreement 9/1/1981 |
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 |
| Land | 1/1/1982 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SOHIO PETROLEUM COMPANY AND EXXON CORPORATION |
| Land | 4/28/1982 | Letter Agreement | Letter Agreement dated April 28,1982 between Gulf Oil Corporation and Shell Oil Company evdencing an agreement for Gulf Oil Company to install a Drilling Platform in the Northeast Quarter (NE/4) South Pass Area Block 61. |
| Land | 11/1/1982 | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF, 'N' SERIES | UNIT AGREEMENT BY AND BETWEEN CONOCO INC. AND CITIES SERVICE COMPANY ET AL |
| Land | 1/1/1983 | ORRI | Conveyance of Overriding Royalty Interests, dated effective January 1,1983, creating the Tel Offshore Trust, and granting an overriding royalty interest, equivalent to 25% net profits interest, in all of Tenneco Exploration, Ltd.'s oil and gas properties |

| | | | |
|---|---|---|---|
| Land | 7/1/1983 | UOA | EI 212 Unit Operating Agreement |
| Land | 8/4/1983 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY |
| Land | 7/1/1984 | Unit Agreement | UNIT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND FLORIDA EXPLORATION COMPANY ET AL |
| Land | 7/1/1984 | UOA | MP 310 Unit Operating Agreement |
| Land | 1/1/1985 | OA | Operating Agreement eff. 1/1/85 |
| Land | 6/3/1985 | Consent to Assign | Consent to Assignment of Interest, dated June 3,1985, between Tenneco Exploration, Ltd. and Texaco Inc., as Grantors of Consent, and Huffco Petroleum, as Assignor, and L. S. Holding Company, AE Investments, Inc., Colton Gulf COperating Agreements, Inc., and Huffco 1982 Exploration Limited Partnership, as Assignees, assigning all of Huffco Petroleum's record title interest to the Assignees. |
| Land | 5/1/1986 | Assignment | Assignment, dated effective May 1,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Plumb Offshore, Inc., subject to the reservation of an overriding royalty interest. |
| Land | 7/2/1986 | FARMOUT AGREEMENT | Farmout Agreement 7/2/1986 |
| Land | 10/31/1986 | Assignment | Assignment of Interest, dated effective October 31,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Tenneco Oil Company. |
| Land | 11/2/1987 | SIMULTANEOUS EXCHANGE AGREEMENT | EXCHANGE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND CONOCO INC |
| Land | 3/3/1988 | PA | PARTICIPATION AGREEMENT EFFECTIVE MARCH 3, 1988, BY AND BETWEEN WESTPORT OIL AND GAS COMPANY, INC, AND BASIN EXPLORATION, INC. |
| Land | 6/7/1988 | UA | EI 212 Unit Agreement |
| Land | 10/31/1988 | FO | Farmout Agreement 10/31/1988 |
| Land | 1/1/1989 | OPERATING AGREEMENT | WD/GI UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | GI CATCO UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL Unit No. 891002021 |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | UOA | EI 266 Unit Operating Agreement |
| Land | 1/1/1989 | OA | CATCO Operating Agreement eff. 1/1/89 by and between Conoco, Richfield , Texaco, et al |
| Land | 1/1/1989 | FO | Operating Agreement 1/1/89 |
| Land | 3/10/1989 | FO | Ratification of Farmout Agreement 3/10/1989 |
| Land | 5/2/1989 | Letter Agreement | Letter Agreement, dated May 2, 1989, between Southern Natural Gas Company and Chevron U.S.A. Inc.,concerning the "Construction, Installation, Operation and Maintenance of Measurement and Pipeline Facilities " for receipt points at various locations on the OCS, including Main Pass 77 'A' platform (as amended). Consent Sec. 1O. |
| Land | 7/1/1989 | OA | Operating Agreement eff. 7/1/89 |
| Land | 12/15/1989 | FO | FARMOUT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., ET. AL. AND CNG PRODUCING COMPANY |
| Land | 7/1/1990 | UA & UOA | MP 259 Unit Agreement and Unit Operating Agreement |
| Land | 10/1/1990 | Joint Operating Agreement | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| Land | 1/1/1991 | PA | Offshore Participation Agreement, dated effectivelanuary 1,1991, between Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc., BA A105. |
| Land | 4/15/1991 | OA | Operating Agreement eff. 4-15-91 b/b Conoco and Shell |
| Land | 5/1/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST ET AL |
| Land | 6/1/1991 | UA | UNIT AGREEMENT, SOUTH TIMBALIER BLOCK 295 FIELD UNIT BY AND BETWEEN SHELL OFFSHORE INC. AND APACHE CORPORATION, ET AL. |
| Land | 7/1/1983 | UOA | ST 295 UOA. As amended |
| Land | 8/15/1991 | OA | HI A442 Operating Agreement C-02-0004194 |
| Land | 9/10/1991 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND EXXON CORPORATION |
| Land | 10/1/1991 | FO | FO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc etal and Hall-Houston Oil Company |
| Land | 4/1/1992 | Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and. Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf, Contract No. 754394018, as amended |
| Land | 4/1/1992 | Unit Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1609, South. Pass Area. |
| Land | 5/2/1992 | ABOS | Agreement and Bill of Sale, dated effective May 2,1992, between Union Oil Company of California, as Seller, and The Northwestern Mutual Life Insurance Company and Hardy Oil & Gas USA Inc., as Buyers, selling 43.75% interest in the BA A-105 "A" Platform, equipment arid pipeline, to NW Mutual 31.25%, and Hardy 12.50%. |
| Land | 6/25/1992 | Letter Agreement | Letter Agreement, dated June 25, 1992, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron obtained consent from Southern for Chevron to connect, operate and maintain pneumatic chart recorders on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 7/1/1992 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND SAMEDAN OIL CORPORATION |
| Land | 7/1/1992 | OA | Operating Agreement 7-1-92 b/b Kerr-McGee and Samedan |
| Land | 1/1/1993 | Unit Operating Agreement | Unit Operating Agreement eff. 1-1-93 |
| Land | 2/15/1993 | Letter Agreement | Letter Agreement, dated effective February 15, 1993, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana", whereby Chevron and Southern agree to amend and replace Exhibit "A" to that certain Letter Agreement, dated June 25, 1992 (described hereinabove). |
| Land | 4/2/1993 | ABOS | Bill of Sale, dated April 2, 1993, from Southern Natural Gas Company ("Southern") to Chevron U.S.A. Inc.("Purchaser"), whereby Southern sells to Purchaser certain Barton chart recorders and appurtenant equipment located at various on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 5/7/1993 | Letter Agreement | Letter Agmt. dated 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. |
| Land | 6/1/1993 | FO | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil Coporation. |
| Land | 6/11/1993 | Joint Operating Agreement | Operating Agreement eff. 6-11-1993 b/b Samedan Oil Corporation and British Borneo Exploration Inc., et al |
| Land | 8/1/1993 | Assignment | Assignment of Interest in Oil and Gas Lease (OCS-G 13944) effective date 08/01/93 from Anadarko Petroleum Corporation, Assignor, to Phillips Petroleum Company,Assignee, 50% of its right, title and interest in OCS-G 13944, GI Block 116, South Addition. |
| Land | 8/16/1993 | Joint Operating Agreement | Amendment to'Operating Agreement, dated August 16, 1993, between Express Acquisition Company and Torch EnergyAdvisors Inc. |
| Land | 12/30/1993 | OA | WD 90, WD 103 Operating AgreementS 12-30-1993 |

| | | | |
|---|---|---|---|
| Land | 1/1/1994 | Joint Operating Agreement | BP EXPLORATION & OIL INC. AND SHELL OFFSHORE INC ET AL. |
| Land | 1/1/1994 | Co-Development Agreement and Amendment to Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally by and between CNG Producing Company & Columbia Gas Development Corp., et al |
| Land | 1/21/1994 | Unit Operating Agreement | Unit Operating Agreement for the Viosca Knoll 252 Unit, by and between Samedan Oil Corporation, as Operator, and Continental Land &'Fur Co., Inc., dated effective January 21,1994. Preferential Right to Purchase - 15 Days. (Section 26.2) |
| Land | 2/1/1994 | JOA | JOperating Agreement eff. 2/1/94 |
| Land | 2/10/1994 | JDA | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. |
| Land | 2/11/1994 | Unit Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on theViosca Knoll 252 Unit designated Contract No. 754394013, by the Minerals Management Service, dated effective February 11, 1994, executed by Samedan Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc.(as a working interest owner). |
| Land | 6/1/1994 | Joint Operating Agreement | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| Land | 6/6/1994 | Letter Agreement | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and.recognizes the Unit Operating Agreement, dated January 21, 1994 for the Viosca Knoll 252 Unit |
| Land | 6/9/1994 | Letter Agreement | Letter Agreement, dated June 9, 1994, by and between Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. |
| Land | 6/24/1994 | OA | Operating Agreement eff. 6-24-94 |
| Land | 7/1/1994 | OA | Operating Agreement 7/1/1974 |
| Land | 7/7/1994 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL. |
| Land | 7/15/1994 | Letter Agreement | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELDY. |
| Land | 9/1/1994 | UOA | EI 89 Field UOperating Agreement 9/1/94 |
| Land | 9/1/1994 | FARMOUT AGREEMENT | Farmout Agmt Eff. 9-1-94 |
| Land | 10/19/1994 | JDA | Joint Venture Development Agreement, dated October 19,1994', between Norcen Explorer, Inc and Texaco Exploration and Production, Inc. forming a working-interest unit comprising portions of Ship ShOperating Agreementl Block 206 and OCS-G 1523, Ship ShOperating Agreementl Block 207;. |
| Land | 11/16/1994 | JDA | Joint Venture Development Agreement, dated November 16<1994, between Norcen.Explorer, Inc., Texaco Exploration and1 Production, Inc., Industries, TheiGeorge R. Brown Partnership, JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration SoProducingSoutheast Inc.,-and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 11/30/1994 | JDA | Amendment to Joint Venture Development Agreement, dated November'30,1994, between iNorcen Explorer,·Inc., Texaco Exploration, and Production; Inc., Hunt Industries, The George R.,Brown Partnership, JOG Venture, Laniar Hunt Trust Estate, Mobil Oil Exploration &«Producing Southeast Inc., and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 3/28/1995 | Letter Agreement | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELDY, ET AL. |
| Land | 4/6/1995 | JDA | Amendment to Joint Venture Development Agreement, dated April 6, 1995, between Norcen. Explorer, Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration 8i Producing Southeast Inc., and Hunt Oil Company, covering; all of Blocks.206 and 207 Ship ShOperating Agreementl Area. |
| Land | 5/1/1995 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. |
| Land | 7/1/1995 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT EFFECTIVE JULY 1, 1995, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, DALEN RESOURCES OIL & GAS CO AND GLOBAL NATURAL RESOURCES CORPORATION OF NEVADA COVERING PORTIONS OF BLOCK 117 AND 118, EUGENE ISLAND, AS AMENDED TO EXCLUDE JOINT DEVELOPMENT ACREAGE. |
| Land | 10/1/1995 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. |
| Land | 11/8/1995 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN FORCENERGY GAS EXPLORATION INC. AND ENERGY INVESTMENTS INC. |
| Land | 12/14/1995 | LOI | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| Land | 2/23/1996 | JOINT DEVELOPMENT AGREEMENT | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN APACHE CORPORATION, W & T, DEVON, NCX |
| Land | 3/7/1996 | Conditional Letter of Acceptance to Exploration Agreement | Letter Agreement by and between Hardy Oil & Gas USA, Inc., British Borneo Exploration by Hardy Oil & Gas USA, Inc., British Borneo Exploration, Inc. and Zilkha Energy Company |
| Land | 3/7/1996 | JDA | JOINT DEVELOPMENT AREA AGREEMENT DATED MARCH 7, 1996, BY AND BETWEEN LOUISIANA LAND AND EXPLORATION COMPANY AND ENSERCH EXPLORATION, INC, ET AL COVERING PORTIONS OF BLOCKS 107, 108, 118 AND 117, EUGENE ISLAND. |
| Land | 9/1/1996 | JDA | JOA BY AND BETWEEN CAIRNE ENERGY USA, INC. AND NORCEN EXPLORER, INC. ET AL. |
| Land | 9/1/1996 | OA | Offshore Operating Agreement 9/1/1996 |
| Land | 9/3/1996 | OA | Operating Agreement (depths below 9000' on VR 392 & VR 408; and all depths VR 407) 9/3/1996 |
| Land | 12/15/1996 | OA | Operating Agreement eff. 12-15-96 b/b Vastar and Union |
| Land | 1/3/1997 | Joint Operating Agreement | Operating Agreement eff. 1-3-1977 b/b Transco Exploration Company, as Operator, and Freeport Oil Company, Energy Development Corporation, Pioneer Production Corporation, et al |
| Land | 1/21/1997 | Assignment | Assignment of Record Title effective date 01/21/97 from Phillips Petroleum Company to SOI. SOI will acquire a 50.0% of 6/6ths interest in OCS-G 13944, GI Block 116, South Addition. |
| Land | 1/21/1997 | PSA | Purchase and Sale Agreement between Phillips Petroleum Company ("Seller") and SOI ("Purchaser"), whereby Phillips reserves a prop01tonately reduced 10% of 6/6ths Overriding Royalty Interest in OCS-G 13944, effective date 01/21197 |
| Land | 5/1/1997 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective May 1,1997, between GOM Shelf, LLC, and ChevronTexaco and Kerr-McGee Oil & Gas Corporation, amending Exhibit "A" to reflect a new division of interest. |
| Land | 7/7/1997 | Letter Agreement | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation,concerning of the OCSTG 10930 Well #1 in Viosca Knoll Block 251 to a proposed depth of 22,500' and certain earning and assignment provisions, more fully described therein. |
| Land | 10/1/1997 | UOA | MI 623 Unit Operating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G G-1 Unit Res A UOperating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G G-1 Unit Res B UOperating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G2-G3 UOperating Agreement |
| Land | 10/1/1997 | OA | SP 61, 70 Joint Operating Agreement eff. 10-1-97 |
| Land | 12/18/1997 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC. |
| Land | 2/1/1998 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC |
| Land | 2/28/1998 | Letter Agreement | Letter Agreement dated 02/28/98 between CNG Producing Company, et al, and SOI and Anadarko Petroleum Corporation, whereby SOI acquires 50% working interest in GI Block 110. |
| Land | 3/1/1998 | Unit Operating Agreement | UNIT OPERATING AGREEMENT DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. UNIT NO.754398019 |
| Land | 3/1/1998 | Unit Agreement | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF EXPLORATION, DEVELOPMENT, AND PRODUCTION OPERATIONS ON THE GRAND ISLE BLOCK 116 UNIT, DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AND SHELL OFFSORE INC. UNIT NO:754398019 |
| Land | 3/1/1998 | ORRI | Assignment of Overriding Royalty Interest, dated effective 03/01/98, whereby ANADARKO and SOI assigns 1 % (of 6/6ths) ORRI to BHP, CNG and Amoco, re: GI 111OCS-G18069, GI 116 OCS-G 13944, GI 110OCS-G13943. |

| | | | |
|---|---|---|---|
| Land | 3/1/1998 | Assignment | Record Title Assignment of Oil and Gas Lease (OCS-G 13943) effective date 03/01/98 whereby BHP Petroleum (GOM) Inc., (Assignor) assigns to SOI and Anadarko Petroleum Corporation (Assignees) a 25% of 6/6ths, equally to Assignees, being of all right, title and interest, covering OCS-G 13943, GI Block 110, South Addition. |
| Land | 3/1/1998 | ORRI | Assignment of Overriding Royalty Interest, dated effective 03/01/98, whereby ANADARKO and SOI assigns 1 % (of 6/6ths) ORRI to BHP, CNG and Amoco, re: GI 1110CS-G18069, GI 116 OCS-G 13944, GI 110OCS-G13943. |
| Land | 3/2/1998 | LA | LETTER AGREEMENT DATED MARCH 2, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, ET AL, AND AMOCO PRODUCTION COMPANY, ET AL. |
| Land | 3/3/1998 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN WESTPORT OIL AND GAS COMPANY INC. AND BASIN EXPLORATION INC |
| Land | 3/13/1998 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |
| Land | 4/1/1998 | JVA | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL., as amended. |
| Land | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| Land | 4/6/1998 | Letter Agreement | LETTER (ELF OFFERS NIPPON PART OF THE COperating AgreementSTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |
| Land | 4/6/1998 | JVA | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COperating AgreementSTAL POSISTION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COperating AgreementSTAL O&G CORPORATION. |
| Land | 4/7/1998 | Assignment | Assignment of Record Title Interest, dated 4/7/98, whereby SOI assigns 12.5% Record Title to OBI regarding GI 116, OCS-G 13944. |
| Land | 4/10/1998 | FO | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 4/13/1998 | Letter Agreement | LETTER- NIPPON TAKES ITS SHARE OF COperating AgreementSTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 7/1/1998 | Farmout Agreement | FO by and between Energy Development Corp & Juniper Energy Kp |
| Land | 7/12/1998 | Joint Operating Agreement | JOINT OPERATING AGREEMENT DATED JULY 12, 1998 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/5/1998 | JVA | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| Land | 2/11/1999 | OA | Operating Agreement eff. 2-11-99 |
| Land | 6/1/1999 | AREA OF MUTUAL INTEREST | AREA OF MUTUAL INTEREST BY AND BETWEEN OCEAN ENERGY INC. AND DUKE ENERGY HYDROCARBONS, LLC |
| Land | 8/5/1999 | EA | EXPLORATION AGREEMENT DATED AUGUST 5, 1999 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/18/1999 | Letter Agreement | Letter Agreement, dated November. 18, 1999, by and between Chevron U.S.A. tic. and Samedan Oil CorporatIri being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning Subpart (c.) of Section m. "Overhead", andimade effective January 1,2000. |
| Land | 12/1/1999 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN FORCENERGY INC. AND MAKO OFFSHORE EXPLORATION, INC., ET AL. |
| Land | 11/1/1980 | Joint Operating Agreement | Operating Agreement, Main Pass Area, Blocks 77 and 78, Gulf of Meidco, dated effective November 1, 1980,between Gulf Oil Corporation, Texoma ProductionCompany, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company, covering the federal Oil and Gas Lease OCS-G 4481, Blocks 77>and78 Main Pass Area, Offshore Louisiana, a true copy of the original is recorded in C.O.B. 592, Folio 658, Plaquemines Parish, Louisiana. |
| Land | 12/15/1999 | Letter Agreement | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4481 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore. LA. Note: only have Key's executed cop |
| Land | 1/1/2000 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN OCEAN ENERGY, INC., MCMORAN OIL & GAS LLC., ET AL. |
| Land | 1/31/2000 | FO | Farmout Letter Agreement 1/31/2000 |
| Land | 2/7/2000 | OA | Operating Agreement eff. 2-7-00 |
| Land | 5/1/2000 | OA | Operating Agreement eff. 5/1/00 |
| Land | 8/4/2000 | FO | Farmout Agreement 8/4/2000 |
| Land | 11/17/2000 | PA | Participation Agreement and Operating Agreement 11-17-00 b/b Samedan and Stone |
| Land | 12/8/2000 | Letter Agreement | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc and Williams Field Services - Gulf COperating Agreementst Company, L.P., whereby Chevron U.S.A. Inc. consents to an assignment by Williams Field Services - Gulf COperating Agreementstst Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. |
| Land | 1/11/2001 | LETTER AGREEMENT | Letter, dated January 11, 2001, from the United States Department of the Interior, Minerals Management Serviceto Chevron U.S.A. Inc., approving the initial participating area plat and Exhibit C for the Viosca Knoll 252 Unit,Agreement No. 754394013, effective November 8, 2000 |
| Land | 6/1/2001 | OA | Offshore Operating Agreement 6/1/2001 |
| Land | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL. |
| Land | 6/15/2001 | JDA | JOINT DEVELOPMENT AGREEMENT EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC. "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 66 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering OS 2282, South Marsh Island Block 132. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 136 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 149 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 |
| Land | 10/1/2001 | OA | Operating Agreement eff. 10-1-01 b/b Union and Forest |
| Land | 10/1/2001 | OA | Operating Agreement eff. 10-1-01 b/b Union and Forest |
| Land | 11/3/2001 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 1/9/2002 | Letter Agreement | Letter, dated January 9, 2002, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit C for the Viosca Knoll 252 Unit, Agreement No. 754394b73, effective December 1, 2001. |
| Land | 3/1/2002 | FO | Farmout Agmt. eff. 3-1-2002 b/b Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) |
| Land | 8/23/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator |
| Land | 8/30/2002 | Assignment | Assignment of Record Title Interest, approved 8/30/2002, whereby SOI assigns unto OBI, covering GI 110 OCS-G 13943. |
| Land | 9/20/2002 | Assignment | Assignment of Operating Rights, approved 9/20/2002, whereby SOI assigns unto OEI, covering GI 110, OCS-G 13943. |
| Land | 12/18/2002 | Pooling Agreement | POOLING AGREEMENT DECEMBER 18, 2002, BY AND BETWEEN THE STATE OF TEXAS AND SPINNAKER EXPLORATION COMPANY, LLC. |

| Land | 12/20/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC |
|------|-----------|---------------------------|---|
| Land | 3/31/2003 | Letter Agreement | Letter Agreement, dated March 31, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy Company regarding Second Opportunity to Participate - Election to Acquire\*Non-Participating Interest, in the MP77 OCS-G 4481 A-6 TTPG, Project No. UWGHP-R3011, Cost Center UCP170500, Main Pass Block 77. Key Production Company election. |
| Land | 5/1/2003 | Joint Operating Agreement | Offshore Operating Agreement dated May 1, 2003 between Magnum Hunter Production,Inc, and Westport Resources Corporation et al |
| Land | 5/19/2003 | JOA | JOperating Agreemmt eff. 5/19/03 |
| Land | 5/19/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between FIELDWOOD ENERGY OFFSHORE LLC(SUCCESSOR TO GRYPHON EXPLORATION COMPANY) ANDAPACHE CORPORATION (SUCCESSOR TO WESTPORT EXPLORATION COMPANY, L.L.C.) |
| Land | 6/9/2003 | PA | Participation Agmt. eff. 6-9-2003 b/b Samedan Oil Corporation and CLK Company |
| Land | 8/7/2003 | PA | Exploration Participation Agreement, dated August 7, 2003, by and between Chevron U.S.A. Inc. and\*Westport Resources Corporation, as amended, concerning certain Offshore Continental Shelf properties, all as is more fully, provided\*for and described therein. |
| Land | 9/25/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA |
| Land | 1/1/2004 | FO | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| Land | 1/7/2004 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Shell Offshore et al |
| Land | 2/25/2004 | FO | Farmout Agmt eff. 2-25-2004 b/b Forest Oil Corporation, Texas Standard Oil Company, Noble Energy, Inc. and Pioneer Natural Resources USA, Inc., as Farmors, and Houston Energy, L.P., as Farmee |
| Land | 2/25/2004 | Joint Operating Agreement | Ratification and Amdt. Of Operating Agreement eff. 2-25-2004 b/b Forest Oil Corporation et al |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 3/25/2004 | JVA | Amendment to Joint Venture Development Agreement, dated. March 25, 2004 between Anadarko E Bt P Comany LP; Chevron U.S. Inc.; Hunt Oil Comany, Hunt Petroleum, the George,R.Brown Partnership LP, Offshore Investment ,Cov and the'Lamar Hunt Trust Estate,, whereby the Unit \was expanded |
| Land | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 4/2/2004 | Divestiture | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 4/19/2004 | FO | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 |
| Land | 5/28/2004 | Letter Agreement | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit Cfor theViosca Knoll 252 Unit, Agreement No. 754394013, effective December 1, 2003. |
| Land | 6/1/2004 | OA | Operating Agreement eff. 6-1-04 by and between Newfield Exploration Co & Triumph Energy LLC |
| Land | 6/29/2004 | Letter Agreement | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| Land | 7/20/2004 | PHA | PHA eff. 7-20-2004 b/b Forest Oil Corporation, as operator and co-owner of the WD 34 A PF and Red Willow Offshore, LLC, et al, as producers |
| Land | 7/27/2004 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Corporation and Applied Drilling Technology, Inc. |
| Land | 8/1/2004 | Unit Operating Agreement | Amendment and Supplement to?Unit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1,2004, by and between Chevron UiS.A. Inc. and Noble Energy, Inc |
| Land | 8/1/2004 | OA | Operating Agreement 8/1/04 |
| Land | 8/11/2004 | Notice | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 8/24/2004 | Letter Agreement | Letter Agreement dated August 24, 2004, between Chevron U.S.A. Inc. and Williams Field Services- Gulf COperating Agreemntst Company, L.P. |
| Land | 9/7/2004 | Settlement and Release Agreement | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/1/2004 | OA | Operating Agreement eff. 10-1-04 |
| Land | 10/6/2004 | LOI | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/7/2004 | EA | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/14/2004 | Letter Agreement | Letter Agreement, dated October. 14, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terin's, Viosca Knoll 251 "A" PlatfomvCadillacProspect and any Other Future Non-unit Production |
| Land | 10/28/2004 | PSA | PSA dated 10-28-2004 but eff. 7-1-2004 B/B Eni Deepwater LLC and Northstar Gulfsands, LLC |
| Land | 11/1/2004 | PA | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company, concerning certain Offshore Continental Shelf properties, all as is more fully provided for and described therein |
| Land | 11/18/2004 | Letter Agreement | Letter Agreement, dated November 18; 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, amendiing'the;terms of Letter Agreement•,dated October 14, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terms, Viosca knoll.251 "A" Platform, Cadillac Prospect and any Other Future Non-unit Production |
| Land | 1/1/2005 | VUA | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| Land | 1/1/2005 | Operating Agreement | Operating Agreement 1-1-05 by an between Maritech and Arena |
| Land | 1/25/2005 | Letter Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 66 Facilities, dated effective January 25, 2005, between Transcontinental Gas Pipeline Corporation,,as Seller> and Union Oil "Company-of California and Forest Oil Corporation, as Purchasers, for facilities and pipeline associated with "A" and "C" Platforms'. NEVER CONSOMATED. |
| Land | 2/1/2005 | Letter Agreement | Letter Agreement, dated February 1, 2005, between Union Oil Company of California and Forest Oil , covering OCS-G 2589, South Marsh Island Block 137, and the Unit Operating Agreement for South Marsh Island Block 137 Unit, identified as Unit Agreement No. 14-08-001-20237, replacing and superseding, effective October 1, 2001, that certain Unit Operating Agreement dated January 1,1989 between Conoco Inc., Texaco Producing Inc. and CanadianOXY Offshore Production Company. |
| Land | 3/28/2005 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN GOM SHELF LLC BY APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION |
| Land | 5/27/2005 | Joint Operating Agreement | Operating Agreement eff. 5-27-2005 b/b BP Exploration & Production Inc. and EOG Resources, Inc. |
| Land | 5/28/2005 | PA | Participation Agmt eff. 5-28-2005 b/b BP Exploration & Production Inc. and EOG Resources, Inc. |
| Land | 8/2/2005 | PSA | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/25/2005 | OA | Operating Agreement 10-25-05 |
| Land | 11/1/2005 | JDA | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN MERIT ENERGY COMPANY AND STONE ENERGY CORPORATION ET AL. |
| Land | 11/1/2005 | Partition and Redemption Agreement | Partition and Redemption Agmt. dated 11-1-2005 b/b Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. |
| Land | 11/7/2005 | Unit Agreement | Amendment to Unit Agreement, Viosca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007, but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) |
| Land | 12/20/2005 | Letter Agreement | Letter Agreement, dated December 20, 2005, between Noble Energy, Inc. and Ghevron U.S.A. Inc., being a consent.to.disclose confidential data |
| Land | 2/22/2006 | FO | Farmout Proposal Letter Agreement Between The Houston Exploration Company and Noble Energy Inc. 2/22/2006 |

| | | | |
|---|---|---|---|
| Land | 3/1/2006 | ABOS | |
| | | | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 4/4/2006 | Joint Operating Agreement | STONE ENERGY CORPORATION and GOM SHELF LLC, ET AL |
| Land | 6/28/2006 | OA | JOperating Agreement eff. 6-28-86 |
| Land | 7/24/2006 | OA | Operating Agreement eff. 7-24-06 |
| Land | 10/17/2006 | JOA | Operating Agreement eff. 10-17-06 |
| Land | 10/30/2006 | FO | Farmout Agreement, dated effective October 30, 2006, between Chevron U.S.A. Inc., as-Farmor, and Mariner Energy Resources, Inc., as farmee, covering S/2 of SM 149 (OCS-G 2592) and S/2 of SM 150 (005-016325) and limited to depths from the surface to the stratigraphic equivalent of 100' below the deepest depth drilled in the #1 Well as proposed. |
| Land | 1/10/2007 | Letter Agreement | Letter dated January 10, 2007, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision Exhibits "A", "B" and "C" reflecting a change in the Unit Area due to contraction provisions in the Viosca Knoll 252 Unit, Agreement No. 754394013. |
| Land | 2/28/2007 | FO | FO eff. 2/28/07 by and between Newfield and Apache |
| Land | 4/3/2007 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Coporation, Samson Contour Energy and Shell Offshore |
| Land | 5/17/2007 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN DEVON ENERGY PRODUCTION COMPANY, L.P. AND HUNT PETROLEUM CORPORATION, ET AL. |
| Land | 9/21/2007 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION |
| Land | 12/31/2007 | PSA | PURCHASE AND SALE AGREEMENT BY AND BETWEEN GOM SHELF LLC AND WILD WELL CONTROL INC. |
| Land | 12/31/2007 | Company Agreement | Company Agreement, dated effective December 31, 2007, between BP America Production Company,Chevron USA Inc. and GOM Shelf LLC, amending the Operating Agreements for certain jointly-owned Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 damaged by Hurricane Katrina. |
| Land | 12/31/2007 | PSA | Agreement for Purchase and Sale, effective December 31, 2007, between Chevron U.S.A. Inc., as Seller, and Wild Well Control, Inc., as Buyer, conveying Chevron's undivided interest in certain Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 to Wild Well Control for the purpose of decommissioning |
| Land | 5/1/2008 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN MARINER ENERGY, INC. AND APACHE CORPORATION |
| Land | 7/7/2008 | Acquisition | Stock Purchase Agmt dated July 7, 2008 b/b Northstar E&P, LP and Dynamic Offshore Resources, LLC |
| Land | 7/7/2008 | Letter Agreement | VR 332 AS Letter Agmt dated July 7, 2008 b/b Northstar Interests, L.C. and Dynamic Offshore Resources, LLC |
| LAND | 7/15/2008 | Participation Agreement | ST 311 Participation Agreement-Walter & APA-7-15-2008 |
| LAND | 7/15/2008 | Assignment of ORRI | ST 311 Walter ORRI Assign. |
| Land | 8/27/2008 | FO | FARMOUT AGREEMENT BY AND BETWEEN PIESCES ENERGY LLC AND APACHE CORPORATION |
| Land | 12/8/2008 | Platform Sale | Platform Sale Agreement, WD 94 G Auxiliary Platform, dated-effective December 8, 2008 between BP America'Production Company and GOM Shelf LLC, as-sellers, and Chevron USA Inc., as buyer. |
| Land | 4/30/2009 | OA | Operating Agreement eff. 4-30-09 Chevron USA, et al |
| Land | 6/1/2009 | FO | Farmout Agreement dated effective June 1, 2009, between Chevron U.S.A. Inc., and Phoenix Exploration Company, LP and Challenger Minerals Inc., covering OCS-G 32267, Chandeleur Block 42 and OCS-G 32268, Chandeleur Block 43, INSOFAR AND ONLY INSOFAR as they cover those depths from the surface to one hundred feet (100') below the deepest depth drilled and logged in the earning well. |
| Land | 6/1/2009 | OA | JOperating Agreement CA 42/43 |
| Land | 6/1/2009 | OA | Operating Agreement eff. 6-1-09 Chevron USA, et al |
| Land | 8/7/2009 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Corporaiton and Houston Energy, L.P. |
| Land | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/1/2010 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/25/2010 | OA | Operating Agreement eff. 2-25-10 |
| Land | 4/8/2010 | Letter Agreement | Letter Agreement, dated 4/8/2010 between Shell Offshore Inc., Apache Corporation and Nippon Oil Exploration U.S.A. Limited amending the Unit Operating Agreement, dated March 1, 1998. |
| Land | 6/1/2010 | PA | Approval of Revision of Participation Area, effective June 1, 2010, whereby the Grand Isle CATCO Unit was revised. |
| Land | 6/1/2010 | ABOS | Bill of Sale and Conveyance, effective June 1, 2010, whereby Chevron U.S.A. Inc. transferred certain Interests in Grand Isle Block 46, OCS-G 00132 N-I well/API No. 17-717-40959-00, certain interests in Grand Isle Block 46, OCS-G 00132 Platform, the line fill as of the effective date, and the Minerals Management Segment Number 15732 Pipeline as well as its associated Right of Way, equipment and facilities to GOM Shelf |
| Land | 7/23/2010 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Corporaoiton and W & T Offshore Inc. |
| LAND | 9/1/2010 | OCS Exploration Venture | mp-295-Joint Venture Letter Agreement |
| Land | 9/14/2010 | Letter Agreement | CHEVRON USA INC. AND GOM SHELF LLC |
| Land | 2/1/2011 | ABOS | Assignment and Conveyance, dated effective February 1, 2011, between Harrigan Energy Partners, Inc.,Assignor, and Chevron U.S.A. Inc* as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities; pipelines, equipment, contracts., etc., all as more fully described therein. |
| Land | 3/15/2011 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION and STONE ENERGY OFFSHORE LLC |
| Land | 4/21/2011 | PSA | Asset Purchase and Sale Agreement, dated April 21, 2011, but made effective February 1, 2011, between SabcoOil and Gas Corporation, as Seller, and Chevron U.S.A. Inc., as Purchaser, whereby Purchaser acquired 0.63149% of 0.83922% of 8/8ths of Seller's right title and interest in the Lease, together with Seller's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein. |
| Land | 4/21/2011 | ABOS | Assignment and BUI of.Sale, dated April 21, 2011, but made effective February 1, 2011, between Sabco Oil and Gas Corporation, as Assignor/and Chevron U.S.A. Inc., as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein |
| Land | 8/1/2011 | ABOS | JS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assinqor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 8/25/2011 | PARTICIPATION AGREEMENT | PARTICIPATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| LAND | 9/20/2011 | Slot and Well Bore Acquisition | MP 296 MP 296 B-19 Slot, Wellbore Acquisition Agreement |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement dated November 3, 2011 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Phoenix Exploration Company LP in that certain Farmout Agreement dated and made effective June 1, 2009, to Apache Corporation and Castex Offshore, Inc. |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| LAND | 11/17/2011 | Assignment and Bill of Sale | MP 295, MP 296, MP 303, MP 304, MP 311, MP 312, MP 313 ABOS Stone to EPL 11-1-2011 |
| LAND | 12/1/2011 | Participation Agreement | ST 311 Participation Agreement-Walter & APA & Castex-12-1-2011 |
| LAND | 12/15/2011 | Slot and Well Bore Acquisition | MP 296 MP 296 B19 ST2 Slot & Well Bore Acq Agmt |
| Land | 4/1/2012 | PA | Approval of. Revision of Participation Area, effective April 1, 2012, whereby the Grand, Isle CATCO Unit was revised. |
| Land | 5/1/2012 | CONDENSATE TRANSPORT & SEPARATION AGREEMENT | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 5/2/2012 | Letter Agreement | Letter, dated May 2, 2012 between Newfield Exploration Company and Chevron U.S.A. Inc., being a waiver of confidentiality provision grant by Chevron in favor of Newfield; |

| | | | |
|---|---|---|---|
| Land | 6/1/2012 | PSA | Ratification of Purchase and Sale Agreement by Holders of Preferential Right to Purchase, dated effective June l , 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc. and Dynamic Offshore Resources, LLC, as Preferential Right Purchasers, affecting that certain Purchase and Sale Agreement, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc., as Buyer. |
| Land | 6/1/2012 | ABOS | Conveyance, Assignment and Bill of Sale, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Assignor, and Chevron U.S.A. be. and Dynamic Offshore Resources, LLC, as Assignees, covering an undivided 0.83922% right, title and interest in certain property described in Exhibit "A" attached thereto, assigning 75.247% thereof to Chevron (0.63149% net) and 24.753% thereof to Dynamic (0.207.73%.net). |
| Land | 6/27/2012 | PSA | Purchase and Sale Agreement, dated June 27, 2012 but made.effective June l , 2012, between Key Production Company, Inc., as"Seller, and Chevron U.S.A. Inc., as Buyer, covering all of Seller's right, title and interest in that certain Oil & Gas Lease bearing Serial No. OCS-G 448,1, ), together with Seller's interest in certain wells, facilities, pipelines, equipment contracts, etc, all as more.fully described therein. |
| Land | 7/9/2012 | Joint Operating Agreement | Offshore Operating Agreement (Ship ShOperating Agreement 176 Prospect OCS-G 33646) Originally by and between Hall-Houston Exploration IV. L.P., as Operator and GOM Offshore Exploration I, LLC and Apache Corporation as Non-Operators |
| Land | 8/1/2012 | Throughput Capacity Lease Agreement | Fieldwood leases capacity to Arena for Barnacle Pipeline |
| Land | 9/17/2012 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND WALTER OIL & GAS CORPORATION |
| LAND | 12/20/2012 | Farmout Agreement Extension Letter | MP 295 Extension 12-20-12 |
| Land | 2/1/2013 | AREA OF MUTUAL INTEREST | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC |
| Land | 2/1/2013 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC |
| Land | 2/1/2013 | Data Agreement | Data Agreement effective 2-1-2013 by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and EXXI |
| LAND | 2/1/2013 | Memorandum of OA and Financing Statement | Primary Term Lands - MOA Recorded 01-2015 Revision |
| LAND | 2/1/2013 | Exploration Agreement | MP 296 EXXI Exploration Agreement(Exploration Agreement Apache & Energy XXI 2-1-2013 with Exhibits (less B) |
| LAND | 2/22/2013 | Exploration Agreement Letter | Heron Prospect (MP 295) Letter of Agreement 2-22-13 |
| Land | 3/15/2013 | Exploration Venture | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC |
| Land | 6/1/2013 | OA | Operating Agreement eff. 6-1-13 Castex, et al |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 7/1/2013 | Acquisition | Acquistion by and between Fieldwood Energy LLC and Callon Petroleum Operating Co. |
| Land | 7/1/2013 | MOA | EI 136 Recorded Memorandum of Operating Agreement and Financing Statement |
| Land | 7/1/2013 | Joint Operating Agreement | EI 136 Operating Agreement covering depths below 19,135' SSTVD |
| Land | 7/1/2013 | Joint Operating Agreement | JOperating Agreement covering OCS-G 32264 MP 302 |
| Land | 7/1/2013 | Stipulation and Corrective Assignment | Stipulates the interest held by Apache Offshore Petroleum Limited Partnership, Fieldwood Energy LLC and Third parties |
| Land | 7/1/2013 | Assignment of Federal OCS Pipeline Right of Way | Assignment of Pipeline ROW Apache to Fieldwood LLC |
| Land | 9/9/2013 | Amendment No. 1 Bar Prospect Offshore Operating Agreement | Amends certain JOperating Agreement dated 02/01/2013 |
| Land | 9/30/2013 | Acquisition | Purchased GOM Shelf as a company from Apache |
| Land | 10/7/2013 | ection Letter Agreement PL 13 007 ST2 We | Election Letter Agreement by and between Fieldwood Energy LLC and Enven Energy Ventures LLC |
| LAND | 10/16/2013 | Fabrication Agreement | ST 311 A Platform Construction Contract Gulf Island LLC and Walter Oil and Gas dtd 10-16-13 |
| Land | 10/25/2013 | Letter Agreement | Letter Agreement dated October 25, 2013 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Apache Corporation in that-certain Farmout Agreement dated and made effective June 1, 2009, to Fieldwood Energy LLC. |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies held within that assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 12/4/2013 | Extension Request - Slot Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and EPL Oil & Gas, LLC - Amends certain Slot Rental Agreement dated 12/26/2012 |
| Land | 12/4/2013 | Extension Request - Slot Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC - Amends certain Slot Rental Agreement dated 12/26/2012 |
| Land | 12/16/2013 | Joint Operating Agreement | TANA EXPLORATION COMPANY LLC AND APACHE CORPORATION |
| Land | 12/28/2013 | Well Proposal | Letter proposing well B-19 MP 302 well by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and Apache Shelf Exploration LLC |
| Land | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. |
| Land | 1/10/2014 | Prospect Proposal | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election |
| Land | 1/10/2014 | Prospect Proposal | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election |
| Land | 2/5/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldwood's election |
| Land | 2/5/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldwood's election |
| Land | 3/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Black Elk Energy Offshore Operations, LLC: Leases where Fieldwood was the operator and Black Elk held interest. Exception is ST 53 where Black Elk was the Operator. |
| LAND | 3/1/2014 | Contract Operating Agreement | ST 320 Contract Operating Agreement dtd 3-1-14 |
| Land | 3/13/2014 | Casing Point Election Letter MP 302 B-19 Well | by and between  Fieldwood Energy LLC, GOM Shelf LLC and Apache Corporation LLC: Proposal to run casing and election  by Apache |
| Land | 3/13/2014 | Contract Operations Agreement | Pursuant to change in operatorship per that PSA btw SandRidge and Black Elk |
| Land | 3/24/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldwood's election |
| Land | 3/24/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldwood's election |
| Land | 3/28/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldwood's election |
| Land | 3/28/2014 | Prospect Proposal | Proposal Amendment and Various requests for extension from Stone and election by Fieldwood |
| Land | 4/1/2014 | FO | Farmout Agreement: OCS-G 13576; East Cameron Block 71 Limited to the NE/4 of the block and a Contract Area created to include the Farmout Area and EC 58 S/2) |
| Land | 4/16/2014 | Settlement Agreement and Release | Settlement Agreementa nd Release - SS 198/VR 369/VR 408/ SP 8/13 |
| Land | 4/23/2014 | Letters of No Objection | Letters of No Objection, Lease & Pipeline Crossings: Appies to ST 276, 296 & 311, includes indemnification |
| Land | 4/28/2014 | Letter Agreement | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 OII Imbalance Claim |
| Land | 5/2/2014 | Letter Agreement Well Proposal | Set forth the agreement between Apache Shelf and Fieldwood for the drilling of the EI 126 A-5 well |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co.HIPS 13-III |
| LAND | 6/1/2014 | Memorandum of OA and Financing Statement | Heron Prospect MOA amd. No. 2 6-1-14 |
| Land | 7/2/2014 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and Castex Offshore, Inc. : Fieldwood Divestiture of HI 116 Platform and pipelines |
| Land | 7/21/2014 | Contract Operation Agreement | Castex is named as operator of HI 167 Platform |
| Land | 8/7/2014 | Recompletion Proposal Election | MP 259 A-7 Recompletion Proposal Election: McMoRan elects not to participate in A-7 welll to Tex W-5 Sand |
| Land | 8/15/2014 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and W & T Offshore, Inc. : Assignment of interest in HI 129#16 well |
| Land | 8/15/2014 | Letter Agreement | by and between  Fieldwood Energy LLC and W & T Offshore, Inc. : RE: High Island 129 No. 12 Well Assignment |
| Land | 10/1/2014 | Divestiture | by and between  Fieldwood Energy Offshore LLC, Renaissance Offshore LLC and Apache Corporation: Assignment of Contractual interest Main Pass 76 SL 13287 #1 Well |
| Land | 10/15/2014 | Release and Settlment Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, Prime Offshore L.L.C., Tammany Oil and Gas LLC and Castex Offshore, Inc. |

Exhibit I-F

| | | | |
|---|---|---|---|
| Land | 11/5/2014 | Request for extnsion of Timely Operations | MP 259 A-7 Recompletion Request for extnsion of Timely Operations: Request timely operations extension for propoed A-7 well |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC UNOCAL, and Chevron U.S.A. Inc. : GOM NOJV - Grand Isle/West Delta etc |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Shell Offshore Inc.: Hickory Unit - GI 110/116 |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Japex (U.S.) Corp.: WD 90 & WD 103 |
| LAND | 1/13/2015 | Letter Agreement | Heron Prospect (MP 295) Letter Agent 1-13-15. |
| Land | 4/1/2015 | Assignment of Operating Rights Interest in Oil & Gas Lease | by and between Fieldwood Energy Offshore LLC, Peregrine Oil & Gas, LLC RTR Fund I, L.P, and Hall-Houston Exploration II, L.P.: Assignment of Operating Rights Interest in Oil & Gas Lease - GA 151 Operating Rights |
| LAND | 4/1/2015 | Gas Dedication and Gathering Agreement | ST 311 Gas Dedication and Gathering Agreement eff 04012015 |
| LAND | 4/1/2015 | Liquids Separation, Handling, Stabilization and Redelivery Agreement | ST 311 Liquids Separation, Handling, Stabilization and Redeliv Agreement eff 04012015 |
| LAND | 4/1/2015 | Liquids Transportation Agreement | ST 311 Liquids Transportation Agreement eff 04012015 |
| Land | 4/2/2015 | Consent to Disclose Confidential Information | by and between Fieldwood Energy LLC, Bandon Oil and Gas, LP and Chevron U.S.A. Inc.: VK 252 Unit Area |
| Land | 4/30/2015 | Settlement Agreement and Release | by and between Fieldwood Energy Offshore LLC, Black Elk Energy Offshore Operations LLC and Northstar Offshore Group, LLC: |
| Land | 5/1/2015 | Divestiture | by and between Fieldwood Energy LLC and Discvovery Producer Services LLC: ST 311 Pipeline Divestiture |
| Land | 5/14/2015 | Second Amendment to the Participation Agreement | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: Second Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters |
| Land | 6/15/2015 | Election and Designation of Successor Operator Letter | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Wichita Partnership, Ltd., W & T Energy VI, LLC and W&T Offshore, L.L.C.: In furtherance of April 14, 2015 letter Areana earned assignment from Chevron Chevron to resign as operator |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
| Land | 6/29/2015 | Settlement | by and between Fieldwood Energy LLC and Discvovery Producer Services LLC: ST 311 Pipeline Divestiture |
| Land | 6/30/2015 | Consent to Assign | Consent to Assign ROW - Martin O. Miller II, LLC Sec. 11, T15S-R6W Cameron Parish LA |
| Land | 7/1/2015 | Settlement Agreement and Release | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI Petroleum US LLC and ENI US Operating Co. Inc.: SS 249 D-5 RIG Incident |
| Land | 7/2/2015 | Bill of Sale, Assignment and Assumption Agreement | By and between Walter Oil & Gas Corporation, Castex Offshore, Inc., Fieldwood Energy LLC and Apache Shelf Exploration LLC as "Seller" and Discovery Producer Services LLC as "Buyer" |
| LAND | 7/10/2015 | Termination of Farmout Agreement | MP 295 9-18-2012 Farmout Termination Ltr dtd 7-10-15 |
| Land | 8/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: MP 77, 78 and VK 251, 252, 340   Fields |
| Land | 8/3/2015 | Release and Settlement Agreement | Release and Settlement Agreement by and between Fieldwood Energy Offshore and Browning Offshore Partners, Inc. |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/9/2015 | Supplemental Bonding Agreement | by and between Fieldwood Energy LLC, SEO A LLC, Stone Energy Corporation and Stone Energy Offshore, L.L.C.: Fieldwood will apply own Supp Bonding |
| Land | 9/9/2015 | Transmittal of Supplemental Bonding | by and between Fieldwood Energy LLC and Stone Energy Corporation: Stone acknowledgement of reciept of Bond |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/17/2015 | Election and Designation of Successor Operator Letter | In furtherance of April 14, 2015 and June 15, 2015 letters, Areana earned assignment from Chevron Chevron to resign as operator, clarifying Working Interests, etc. |
| Land | 10/15/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC and Fairways Offshore Exploration, Inc. : Release and Settlement Agreement |
| Land | 10/19/2015 | Contract Operations Agreement | by and between Fieldwood Energy LLC and Helis Oil and Gas Company L.L.C.: Contract Operations Agreement #18 Helis well |
| Land | 11/19/2015 | Production Handling Agreement SM10 | PHA between Fieldwood and Byron for Byron's SM 6 production |
| Land | 12/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC, ENI US Operating Inc., and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petrolum US LLC: Release and Settlement Agreement |
| Land | 2/2/2016 | Correction Assignment | by and between Fieldwood Energy LLC and Chevron U.S.A. Inc.: Correction Assignment of Operating Rights EI 353 |
| Land | 2/22/2016 | Withdrawal Election | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Hall-Houston Exploration IV, L.P. and GOM Offshore Exploration I, LLC: Hall Houston withdrawal Election |
| Land | 3/1/2016 | Ratification and Amendment to Farmout Agreement | by and between Fieldwood Energy LLC, Walter Oil and Gas Corporation and Cairn Energy USA: Ratify and amend that certain Farmout dated 12/31/1984 |
| Land | 3/2/2016 | Withdrawal Election | by and between Fieldwood Energy LLC and Hall-Houston Exploration IV, L.P.: Hall Houston withdrawal Agreement |
| Land | 3/11/2016 | Waiver of Confidentiality and Consent to Disclose | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: applies to HIE 129 and ST 229 |
| Land | 4/13/2016 | Recommendation to Add Compression Services | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil and Gas II, LLC and Castex Offshore, Inc.: Requests change to compression standards in that certain Processing & Contract Operating Services Agreement dated 07/01/2011 |
| Land | 4/25/2016 | Release and Settlement Agreement | by and between Fieldwood Energy LLC, Peregrine Oil & Gas, LP and Peregrine Oil & Gas II, LLC: Release and Settlement Agreement |
| Land | 5/31/2016 | Election to Continue or Cease Compression Services | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: Increases to continue compression services past orignal test period |
| Land | 6/29/2016 | Election to elect out of Badger Tax Partnership | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: |
| Land | 7/1/2016 | Acquisition | by and between Fieldwood Energy LLC and Monforte Exploration, LLC: 3% ORRI SM 48 E wells |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and All Aboard Development Corporation: Assignment All Aboard to Fieldwood |
| Land | 7/8/2016 | Letter Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Fieldwood's response to W&T Letter Agreement  - HI 129 #16 Well - Final Agreement |
| Land | 7/21/2016 | Contract Operations Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Contract Operating Agreement eff. 7-21-16 |
| Land | 7/21/2016 | Contract Operations Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Contract Operating Agreement - #16 well |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/25/2016 | Amendment and Ratification of Production Handling Agreement | by and between Fieldwood Energy LLC, CL&F Resources, L.P, Houston Energy LP., Helis Oil and Gas Company LLC and W&T Offshore, Inc.: Amendment and Ratification of Production Handling Agreement (High Island, East Addition Block 129) |

| | | | |
|---|---|---|---|
| Land | 9/13/2016 | Agreement for Payment of Insurance Charges | by and between  Fieldwood Energy LLC and Monforte Exploration L.L.C.: Fieldwood agrees to pay Monforte's insurance charges |
| Land | 10/1/2016 | ABOS | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: |
| Land | 11/9/2016 | Confidentiality Agreement | Confidentiality Agreement:BY AND BETWEEN FIELDWOOD ENERGY LLC AND LLOG EXPLORATION OFFSHORE, L.L.C. |
| Land | 11/21/2016 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: Offer to Purchase GS E &R America Offshore, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 12/14/2016 | Surrener of Interest Agreement | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: All Aboard Development Corp. surrender of interest |
| Land | 1/1/2017 | Acquisition | by and between  Fieldwood Energy LLC and GOM Offshore Exploration I, LLC: SS 176 Lease, Well and facilities |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 3/1/2017 | Reimbursement Agreement | by and between  Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/27/2017 | Offshore Tie-in Agreement | by and between  Fieldwood Energy Offshore LLC, Fieldwood Energy LLC and Amberjack Pipeline Company LLC: Consent of PSA between Empire and Amberjack subject to addendum |
| Land | 3/30/2017 | Letter of No Objection | Fieldwood agreed to EOX request/letter of no objectin to allow cox to produce its EI 64# 9 well. Fieldwood is the operator of SW/4 of EI 53 |
| Land | 6/8/2017 | Bill of Sale and Assumption Agreement | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: Manta Ray sells to Fieldood  pursuant to reverse of gas flow  in ST 295 block to direct flow of gas to ST 292 Platform |
| Land | 6/8/2017 | Interconnection and Measurement Agreement | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: Fieldwood desires to connect with Mata Ray's ST 292 platform and piping, etc. |
| Land | 6/8/2017 | Lease of Offshore Platform Space - ST 292 Platform | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: |
| Land | 7/28/2017 | Indemnity and Release Agreement | by and between  Fieldwood Energy LLC and Chevron U.S.A. Inc.: Chevron sold to Cantium and needed DOO from Fieldood, Fieldwood required this Agreement to allow DOO |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| LAND | 9/15/2017 | Memorandum of OA and Financing Statement | ST 311 320 UCC, Mortgage and Conveyance |
| LAND | 9/15/2017 | Offshore Operating Agreement | ST 311-320 JDA Offshore Operating Agreement dtd 9-15-17, as amended |
| LAND | 9/15/2017 | Participation Agreement | ST 311-320 JDA Participation Agreement dtd 9-15-17 |
| Land | 9/19/2017 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: Offer to Purchase SCL Resources, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 11/7/2017 | Modification to PHA | Enhancement and modification to test separator MBD -4010 at HI 547 B Platform - PHA Agreement dated May 8, 1998 |
| Land | 4/6/2018 | Notification of Withdrawal - WC 269 | Withdrawal Election |
| Land | 4/17/2018 | Amendment | by and between  Fieldwood Energy LLC and Arena Energy, LP: Amendment to Production Handling Service Agreement dated May 8, 1988 |
| Land | 5/1/2018 | Assignment Conveyance and Bill of Sale | By and between Fieldwood Energy LLC, Peregrine Oil & Gas II, LLC and Castex Offshore, Inc. as "Assignor" and Northstar Offshore Ventures LLC as "Assignee" |
| Land | 5/15/2018 | Divestiture | Divestiture of Interests in Mustang Island to TR Offhsore. L.L.C. |
| Land | 6/1/2018 | Property Exchange Agreement | Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| Land | 6/14/2018 | Performance Bond | Sanare Energy Partners, LLC is the new principal replacing  Northstar Offshore Ventures LLC |
| Land | 7/11/2018 | Assignment of Operating Interest | Assignment of Operating Rights Interest  from Apaceh to Fieldwood and GOM Shelf |
| Land | 7/23/2018 | Amendment to Property Exchange Agreement | Amendment to Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| Land | 8/1/2018 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech's Interest in the SS 271 Unit (SS 247,248,249) |
| Land | 8/1/2018 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdraws from SS 271 Unit |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/8/2018 | Take Over Election Letter Agreement | In accordance with certain Farmout Agreeements dated 12/17/2002, 05/19/2003 and 02/13/2004, Fieldwood elects to decline |
| Land | 8/13/2018 | Confidentiality Agreement | Confidentiality Agreement: GOM SHELF - DEEPWATER PROPERTIES |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 10/1/2018 | Acquisition | Assignment of Hall-Houston overriding royalty interest in SS 176 |
| Land | 10/18/2018 | Abandonment Agreement | pursuant to that certain PHA for WC 496 produced at SP B Platform dated 11/1/2002 |
| Land | 12/4/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Byron Energy Inc. |
| Land | 12/10/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Exxon Mobil Corporation |
| Land | 12/20/2018 | Letter of Intent | by and between  Fieldwood Energy LLC and TR Offhsore. L.L.C.: Contemplation of Contract Operating Agreement, Transportation Agreement |
| Land | 2/4/2019 | Termination of Exchange Agreement | Termination of Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| LAND | 2/22/2019 | Exploration Agreement Letter | APA - EXXI MP 295 Side Ltr Agrmnt dtd 2-22-13 |
| Land | 3/5/2019 | Relinquishment | by and between  GOM Shelf LLC and Arena Energy, LP: Relinquishment of OCS G0978 |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and ANKOR |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Sa nare |
| Land | 4/1/2019 | PHA Amendment | First Amendment to that certain Production Handling Agreement, dated September 1, 2009 - Eiugene Island 224 "A" Platform - Federal Offshore Louisiana |

| Land | 5/1/2019 | Confidentiality Agreement | Confidentiality: BY AND BETWEEN FIELDWOOD ENERGY LLC AND CIBCO RESOURCES, LLC |
|---|---|---|---|
| Land | 5/16/2019 | Letter Agreement | by and between Fieldwood Energy and Panther Pipeline, LLC: Letter Agreement Matagorda Operating Agreement MI 518/519 with regard to natural gas pipeline work. |
| Land | 6/10/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and TRANSCONTINENTAL GAS PIPELINE COMPANY: Confidentiality Agreement: |
| Land | 7/25/2019 | Letter Agreement OCS-G 14535 JB15T2 Well | Pursuant to that certain Farmout dated 12/17/2007. Reassignment to Arena and P&A liabilitiy |
| LAND | 7/25/2019 | Exploration Agreement | Exploration Venture Agreement by and between Fieldwood Energy LLC and Juneau Oil & Gas LLC (terminated 6-23-20) |
| Land | 11/5/2019 | Confidentiality Agreement | |
| LAND | 11/5/2019 | Transfer Notice | by and between Fieldwood Energy LLC and W&T OFFSHORE, INC: Confidentiality Agreement: |
| Land | 11/8/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and PROMETHEAN ENERGY CORPORATION: Confidentiality Agreement: |
| Land | 11/8/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and RDC OIL PTY LTD: Confidentiality Agreement: |
| Land | 11/12/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and CASTEX ENERGY, INC: Confidentiality Agreement: |
| Land | 11/14/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and COX OIL OFFSHORE, LLC: Confidentiality Agreement: |
| Land | 11/21/2019 | Withdrawal Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: W&T Withdrawal from EC 2 SL 18121 - W&T did not prepay abandonment |
| Land | 11/21/2019 | Letter Agreement | Letter Agreement SS 19B J-11 Well zone shift: Zone shift recommended and election fron HO to HG sand by and between GOM Shelf Offshore LLC and Talos Energy Offshore LLC |
| Land | 11/21/2019 | Letter Agreement | Letter Agreement SS 19B J-11 Well zone shift: Zone shift recommended and election fron HO to HG sand by and between GOM Shelf Offshore LLC and Renaissance Offshore LLC |
| Land | 12/10/2019 | Non-Consent | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: W&T Non-consent lease saving ooperation on EC 2 SL 18121 for failure to respond to lease number FW194042 |
| Land | 12/12/2019 | Purchase of Pipeline ROW OCS-G 14731 Seg. No. 10406 | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: SS 274 A Platform to EI 259 A Platform |
| Land | 1/22/2020 | Confidentiality Agreement | by and between Fieldwood Energy LLC and WERRUS AQUAMARINE, LLC: Confidentiality Agreement: |
| Land | 1/27/2020 | Acquisition | by and between Fieldwood Energy LLC, Castex Offshore, Inc., GOME 12711 LLC and Dorado Deep GP, LLC : Assignment of Interest in MP 275 A-3 Well |
| Land | 3/2/2020 | Confidentiality Agreement | Confidentiality Agreement BY AND BETWEEN FIELDWOOD ENERGY LLC AND ODYSSEY PIPELINE LLC = MP 289 "C" PF |
| Land | 3/4/2020 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Arena Energy |
| Land | 01/01/1994, 04/08/1994 | Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") |
| Land | 12/31/2013 | First Amendment to the Participation Agreement | First Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 8/1/2015 | Cheetah Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC |
| Pipeline Transport | 8/1/2015 | Cheetah Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC |
| Pipeline Transport | 11/12/2013 | THROUGHPUT CAPACITY LEASE AND TIE IN AGREEMENT | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and Apache Shelf Exploration LLC and Apache Shelf Exploration LLC |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Pipeline Transport | 2/2/1996 | GATHERING AGREEMENT | Gathering Agreement by and between Fieldwood and CMA Pipeline and CMA Pipeline |
| Pipeline Transport | 9/30/2015 | AMENDMENT TO GATHERING AGREEMENT | Gathering Agreement by and between Fieldwood and CMPA PIPELINE PARTNERSHIP, LLC and CMPA PIPELINE PARTNERSHIP, LLC |
| PHA | SS182/SS170 | 5/1/2013 | PRODUCTION HANDLING AGMT | PHA by and between Fieldwood and BOIS D'ARC EXPLORATION, LLC and BOIS D'ARC EXPLORATION, LLC |
| PHA | EI316A/EI 315C | 7/14/2008 | PRODUCTION HANDLING AGMT | PHA EI 3316A/EI 315C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PHA for EB165A/EB430 | 9/30/2004 | PRODUCTION HANDLING AGMT | PHA for EB165A/EB430 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION |
| PHA for SP108/ST72 | 12/1/2014 | PRODUCTION HANDLING AGMT | PHA for SP108/ST72 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION |
| PHA GI 116A/ST 229 | 6/1/2005 | PRODUCTION HANDLING AGMT | PHA GI 116A/ST229 by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| PHA SS178A/SS177#7A-4ST | 8/25/1998 | PRODUCTION HANDLING AGMT | PHA SS178A/SS177#7A-4ST by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| PHA MP 310A/MP 315 | 11/30/2015 | PRODUCTION HANDLING AGMT | PHA MP 310A/MP315 by and between Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC |
| PHA MP 310A/MP 315 | 11/30/2015 | PRODUCTION HANDLING AGMT | PHA MP 310A/MP315 by and between Fieldwood and HE&D OFFSHORE LP and HE&D OFFSHORE LP |
| Service Agreements | 4/1/2009 | SERVICE CONTRACT | Allocation of quality bank by and between Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC |
| LEASE OF PLATFORM SPACE | 2/1/1990 | Access and Right of Use Agreement3/1/2020 - 2/28/2021 | A-LOPS-WD075 by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 10/10/1984 | Platform Space Rental Agreement SM 268A Platform10/01/2020 - 11/30/2021 | A-LOPS- SM268A by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 11/29/2009 | Amendment to Lease of Platform Space Agreement Main Pass 289 C8/1/2020 - 7/31/2021(Horn Mountain) | A-LOPS-MP289C(Horn Mountain) by and between Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC |
| LEASE OF PLATFORM SPACE | 7/12/2016 | Marathon Pipeline Facilities Exxon's vermilion Block 265 Platform A | A-LOPS-AccessSvc by and between Fieldwood and East Cameron Gathering LLC and East Cameron Gathering LLC |

Exhibit I-F

| | | | |
|---|---|---|---|
| LEASE OF PLATFORM SPACE | 4/15/1988 | Amendment of SMI Gathering System (Vermillion Block 265 Platform) Access and Services Agreement1/1/2020-12/31/2020 | Annual LOPS-VR 265 P/F-A-DRL by and between Fieldwood and Crimson Gulf Accounts Payable and Crimson Gulf Accounts Payable |
| LEASE OF PLATFORM SPACE | 8/1/1996 | Lease of Platform Space5/1/2020 - 4/30/2021 | ALOPS-ODYSSEY by and between Fieldwood and Shell Pipeline Company LP and Shell Pipeline Company LP |
| LEASE OF PLATFORM SPACE | 11/1/2001 | Lease of Platform Space11/1/2020 - 10/30/2021 | A-LOPS-SM128SA2 by and between Fieldwood and Shell Pipeline Company LP and Shell Pipeline Company LP |
| LEASE OF PLATFORM SPACE | 4/27/1977 | FIRST AMENDMENT AND RATIAFICATION TO TIE-IN SERVICE AGREEEMENT04/01/2020-3/31/2021 | A-LOPS-MP288-MP289FWE0240 by and between Fieldwood and Stone Energy Corpration and Stone Energy Corpration |
| LEASE OF PLATFORM SPACE | 11/15/1996 | Lease of Platform space Agreement | ALOPS-RAM POWELL by and between Fieldwood and Stone Energy Corpration and Stone Energy Corpration |
| LEASE OF PLATFORM SPACE | 10/25/1985 | PLATFORM SPACE AGREEMENT10/25/2020 - 9/24/2021 | A-LOPS-SP89B by and between Fieldwood and Texas Eastern Transmission and Texas Eastern Transmission |
| LEASE OF PLATFORM SPACE | 3/1/1980 | | A-LOPS-HI179A by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 9/5/1981 | Receipt and Measurement Facility LOPS EI Block 158  Platform4/1/2020 - 3/31/2021 | A-LOPS-EI158B by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 9/15/1981 | Receipt and Measurement Facility LOPS EI Block 135 "JA" Platform4/1/2020 - 3/31/2021 | A-LOPS-EI136JA by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 7/1/1997 | Lease of Offshore Platform Space Gas Measurement Facility, Pipeline Rise, Liquids Scrubber Facility | A-LOPS-SM128 by and between Fieldwood and Trunkline Gas Company LLC and Trunkline Gas Company LLC |
| LEASE OF PLATFORM SPACE | 3/1/1998 | 3/01/2020 - 2/28/2021 | A-LOPS-SS354A by and between Fieldwood and Williams Field Services and Williams Field Services |
| LEASE OF PLATFORM SPACE | 11/29/2001 | 03/01/2020 - 02/28/2021 | A-LOPS- MP289C by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| LEASE OF PLATFORM SPACE | 11/29/2001 | LEASE OF PLATFORM SPACE | ANA103-LOPS (Horn Mountain Monthly) by and between Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC |
| LEASE OF PLATFORM SPACE | 12/21/2002 | PLATFORM OPERATIONS AGMT | ARE101-LOPS - PL25 by and between Fieldwood and ARENA OFFSHORE LP and ARENA OFFSHORE LP |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2018 | SERVICES CONTRACT | EAS101 VR265ADRL by and between Fieldwood and EAST CAMERON GATHERING LLC and EAST CAMERON GATHERING LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 4/28/2009 | LEASE OF PLATFORM SPACE | ROT101-LOPS EI 189P/F B by and between Fieldwood and Rotorcraft Leasing Company, LLC and Rotocraft Leasing Company, LLC |
| LEASE OF PLATFORM SPACE | 4/28/2009 | LEASE OF PLATFORM SPACE | ROT101-LOPS MATAGORDA ISLAND 622C by and between Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-1 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-2 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-3 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-4 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-5 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-6 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-7 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-8 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-9 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-13 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-17 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-14 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-16 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-20 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-24 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-25 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-26 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 4/15/1968 | LEASE OF PLATFORM SPACE | KIN129-LOPS by and between Fieldwood and KINETICA DEEPWATER EXPRESS, LLC and KINETICA DEEPWATER EXPRESS, LLC |
| LEASE OF PLATFORM SPACE | 6/14/2000 | FACILITIES OPERATING AND MAINTENANCE AGMT | WIL174 OP&MN FEE-VK251A  by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                         and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                         and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and MCMORAN OIL & GAS LLC                         and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION and RIDGEWOOD ENERGY CORPORATION |
| PRODUCTION HANDLING AGMT (JIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC                         and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC                         and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by and between Fieldwood and C/O FAIRFIELD-MAXWELL LTD                         and C/O FAIRFIELD-MAXWELL LTD |
| PRODUCTION HANDLING AGMT (JIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by anton Fieldwood and HILCORP ENERGY 1 LP                         and HILCORP ENERGY 1 LP |
| PRODUCTION HANDLING AGMT (JIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PHA VK694-MP0259A-FWE0313 | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PHA VK694-MP0259A-FWE0313 | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and PIQUANT INC and PIQUANT INC |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PRODUCTION HANDLING AGREEMENT | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PRODUCTION HANDLING AGREEMENT | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and FWE and FWE |

Exhibit I-F

| | | | |
|---|---|---|---|
| PRODUCTION HANDLING AGMT (JIB)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and MARATHON OIL COMPANY         and MARATHON OIL COMPANY |
| PRODUCTION HANDLING AGMT (JIB)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and MCMORAN OIL & GAS LLC and PIQUANT INC |
| PRODUCTION HANDLING AGMT (JIB)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | |
| PRODUCTION HANDLING AGMT (JIB)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and EPL OIL & GAS, LLC         and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PRODUCTION HANDLING AGMT (JIB)-12 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP311B-MP302B19 by and between Fieldwood and APACHE SHELF EXPLORATION LLC and APACHE SHELF EXPLORATION LLC |
| PRODUCTION HANDLING AGMT (JIB)-13 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP311B-MP302B19 by and between Fieldwood and EPL OIL & GAS, LLC         and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-13 | 4/1/2007 | PRODUCTION HANDLING AGREEMENT | RID10B101-MP289C-MP275 by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION         and RIDGEWOOD ENERGY CORPORATION |
| PRODUCTION HANDLING AGMT (JIB)-13 | 4/1/2007 | PRODUCTION HANDLING AGREEMENT | RID10B101-MP289C-MP275 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB) | 10/23/2018 | AGREEMENT FOR THE GATHERING AND PROCESSING OF MO 826 ("SLEEPING BEAR") | M0826-VK251 by and between Fieldwood and W& T Offshore and W& T Offshore |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | ST 320 A-SST1 by and between Fieldwood and W&T Offshore, Inc. and W&T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/30/1999 | PRODUCTION HANDLING AGREEMENT | MC 10B/MC 109 by and between Fieldwood and Talos Energy LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | ST 311 A1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/18/2002 | PRODUCTION HANDLING AGREEMENT | HI A-582 by and between Fieldwood and Cox Operating, LLC and Cox Operating, LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 10/21/2018 | PRODUCTION HANDLING AGREEMENT | ST 320 A02 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/20/2019 | PRODUCTION HANDLING AGREEMENT | ST 320 A03 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/13/1996 | PRODUCTION HANDLING AGREEMENT | SS 300 B/SS301 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/30/1999 | PLATFORM ACCESS, OPERATING SERVICES AND PRODUCTION HANDLING AGREEMENT(ORION) | MC 109/MC110 by and between Fieldwood and Talos Energy and Talos Energy |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/5/2009 | PRODUCTION HANDLING AGREEMENT | SS 189 C-1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | SM 107 by and between Fieldwood and Talos Energy and Talos Energy |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/1/2014 | PRODUCTION HANDLING AND FACILITY USE AGREEMENT | VR 271 by and between Fieldwood and Castex Offshore Inc and Castex Offshore Inc |
| PRODUCTION HANDLING AGMT (Non-Op) | 8/1/1997 | PRODUCTION HANDLING AGREEMENT | ST 176/ST 148 by and between Fieldwood and Arena Offshore LLC and Arena Offshore LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 8/1/1997 | PRODUCTION HANDLING AGREEMENT | ST 176/ST 148 by and between Fieldwood and Arena Offshore LLC and Arena Offshore LLC |
| CONNECTION AGREEMENT EI 342C | 9/17/1986 | PIPELINE CONNECTION & OPERATION AGREEMENT EUGENE ISLAND PIPELINE SYSTEM | Interconnection Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342C | 1/1/2010 | RATIFICATION OF & SUPPLEMENT TO PIPELINE CONNECTION AND OPERATION AGREEMENT | Interconnect Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342C | 8/7/2018 | AMENDMENT NO. 1 TO PIPELINE CONNECTION AND OPERATION AGREEMENT | Interconnect Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342 | 10/26/2011 | FACILITIES LETTER AGREEMENT | Agreement for Gas Connection at EI 346 by and between Fieldwood and ANR Pipeline Company and ANR Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |

Exhibit I-F

| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 9/13/2011 | IT Transport Contract | Chandeleur IT Transportation - Fieldwood interest in MP 59 was sold to Cantium by and between Fieldwood Energy LLC and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream |
| Marketing Gas - Transport | 4/1/2015 | FT -2 Transport | Discovery Gas - FT2 agreement;  by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Transport | 2/1/2019 | Pool Agreement | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2003 | IT Transport Contract - Reserve Dedication and Discount Commodity Rate Agreement | Stingray Reserve Dedication VR Block 326 S.10 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2019 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |

Exhibit I-F

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 4/1/2000 | Firm Gathering  & Dedication | Manta Ray firm Gatheing  and Dedication , Disount Rate of $.06 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 12/1/2015 | Firm  - Gathering | Firm  - Gathering by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 12/1/1992 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedication , Disount Rate of $.032 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 10/30/2017 | FT -2 Transport | EW 910 / ST 320 by and between Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 4/1/2010 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy Offshore, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT PR Transport Contract | Searobin West PTR Transprt,  max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash-Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT-PTR Transport | Searobin Pipeline - sandridge /Dynamic IT transport by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |

Exhibit I-F

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 10/1/2011 | IT-Retrograde Transport | SearobinWest  Pipeline - sandridge./Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 4/1/2015 | FT-2 Discount Letter Agreement | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Gathering and Dedication | 4/1/2015 | Gas Dedication and Gathering Agreement | Discovery Gas Gathering and Gas Dedication by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2017 | IT-Transport- Discount Letter | Searobin East - Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-Transport- Discount Letter | Searobin East - Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-PTR Transport | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-PTR Transport | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport- Discount Letter | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport- Discount Letter | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas-Transport | 12/17/1997 | FT - Transport | Venice Gatheing  Firm Transport with Discount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Transport | 8/13/1997 | Precedent Agreement for Transportation of Gas and Non-Jurisdictional Services | Venice Gatheing  Firm Transport with Discount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Transport | 12/15/1997 | Reserve Commitment Agreement | Venice Gathering  Firm Transport with Discount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Gathering | 4/1/2003 | IT Transport | GC 45, WD 41 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Gathering | 11/1/2010 | IT Transport | Venice Gathering, Max Rate,WD 41 Effective date 11/1/2010 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 9/10/1990 | Gas Gathering Agreement | Gathering Agreement - Discount for BA 491 by and between Fieldwood Energy LLC and WFS and WFS |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |

Exhibit I-F

| | | | |
|---|---|---|---|
| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 10/1/1982 | Construction, Ownership and Operating Agreement | Governs the Ownership and Operations of the Facility. The Facility is co-owned by two groups, Owners and Producers.  Facility assets are owned in three different classes: either solely owned by Owners, co-owned by Owners and Producers or soley owned by Pr by and between Fieldwood Energy LLC and Kinetica Partners LLC and Kinetica Partners LLC |
| Ownership Agreement | 12/2/1985 | Ownership Agreement for the Producers' Facility Sabine Pass, as amended | Governs the Ownership and Operations of the Producers' Facility. The Producers' Facility consists of assets owned by Producers, as well as those assets co-owned by the Producers and Owners. Fieldwood, as the designated Producers' Representative, reprents th by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Onshore Separation Facility Cameron Parish, Louisiana as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilties of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |

Exhibit I-F

| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
|---|---|---|---|
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Contribution Aagement (LLC formation) | 11/2/2010 | Contribution Aagement | SP 49 Pipeline LLC (the "Entity"), an limited liability company, was formed on November 2, 2010 by Apache GOM Pipeline, Inc, (succeeded by FW GOM Pipeline, Inc), Energy XXI GOM LLC, and Stone Energy Offshore, LLC (succeeded by Talos Resources LLC). The e by and between Fieldwood Energy LLC and Talos Resources LLC and Energy XXI GOM, LLC and Talos Resources LLC and Energy XXI GOM, LLC |
| Operating Agreement | 11/2/2010 | Operating Agreement South Pass Block 49 & Southwest Pass 24 Pipeline System | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functios such as paying expenses and maintaing records by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 11/2/2010 | Operating Agreement South Pass Block 49 & Southwest Pass 24 Pipeline System | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functios such as paying expenses and maintaing records by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Construction and Operating Agreement | 10/22/1976 | Agreement for the Construction and Operation of the Blue Water Gas Plant Acadia Parish, Louisiana | Processing of Owners' gas all in accordance with agreements by and between Fieldwood Energy LLC and EnLink Midstream Operating, LP and EnLink Midstream Operating, LP |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |

| | | | |
|---|---|---|---|
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and and |
| Oil Purchase and Sale Agreement/Transport | 12/23/1995 | Oil Purchase and Sale Agreement Between Anadarko Petroleum Corporation and Texaco Trading and Transportation INC (now Poseidon Oil Pipeline Company LLC) | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 6/1/2003 | Oil Gathering Agreement Between Westport Resources Corporation Noble Energy Inc M | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC |
| Oil Purchase and Sale Agreement/Transport | 7/15/2003 | Oil Purchase and Sale Agreement Between Westport Resources Corporation Mariner Energy Inc Noble Energy Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Purchase and Sale Agreement/Transport | 4/10/2012 | Oil Purchase and Sale Agreement Between Apache Shelf Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |

| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
|---|---|---|---|
| Oil Pipeline Connection Agreeet | 7/23/2020 | ST 53/67 Connection Agreement ST 52 "A" Topsides Work-Connecting Fieldwood Energy LLC Pipeline Segment No 5890 to Rosefield Pipeline System 10" Pipeline | Connection Agreement by and between Fieldwood Energy and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Pipeline Connection Agreeet | 7/23/2020 | ST 53/67 Connection Agreement ST 52 "A" Topsides Work-Connecting Fieldwood Energy LLC Pipeline Segment No 5890 to Rosefield Pipeline System 10" Pipeline | Connection Agreement by and between Fieldwood Energy and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Liquids Transportation Agreement | 4/1/2015 | Liquids Transportation Agreement (ST 311-"Megalodon") By and Among Discovery Gas Transmission LLC and Fieldwood Energy LLC | Liquids Transportation Agreement by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

Exhibit I-F

| | | | |
|---|---|---|---|
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast (Into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 4/8/2010 | Amendment Liquid HydrocarbonTransportation Agreement (NHI/Johnson Bayou) Cont. No. 1022772, Doc. No. 97 0515 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipe Line Company LLC( formerly  Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation | 8/6/1997 | Liquid Hydrocarbon Transportation Agreement | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 7/1/2008 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement Central Texas Gathering System 28 0384 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | eement Between WFS-Liquids Company ar | WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslic and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslic and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslic and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslic and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslic and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslic and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transportation Agreement | 9/1/1997 | Agreement Cocodrie/Pecan Island Plants | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation Agreement for Bluewater System | 10/22/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 4/1/2004 | Liquids Transportation Agreement #51051 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | iginal Contract; Amendment Effecti | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | /1992, Amendment Effective 1/1/2 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquid Handling Agreement | 5/1/2008 | Liquid Handling Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement | 3/1/2011 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement  to transfer from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/1/2012 amended 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |

| | | | |
|---|---|---|---|
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transportation Agreement Grand Chenier Terminal | |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement Amendment | 12/1/2012 Amended effective 12/1/2012 | Amendment | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement Amendment | 12/1/2012 Amended effective 12/1/2012 | Amendment | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Assignment, Assumption and Consent Agreement | 7/1/2013 | Assignment, Assumption and Consent Agreement | Consent to assign liquids separation 7 stabilization agreement as amended dated 1/17/2001 between Manta Ray and Apache (Contract Nos. 101939, 310225 and 106968) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Assignment, Assumption and Consent Agreement | 7/1/2013 | Assignment, Assumption and Consent Agreement | Consent to assign liquids separation 7 stabilization agreement as amended dated 1/17/2001 between Manta Ray and Apache (Contract Nos. 101939, 310225 and 106968) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separtion and Stabilization Agreement | 11/1/2010 | Liquids Separtion and Stabilization Agreement | LSA by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2008 | First Amendment to Liquids Separation and Stablization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2008 | First Amendment to Liquids Separation and Stablization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Second Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Second Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 4/27/2004 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2014 | Second Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2014 | Second Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 4/1/2018 | Liquids Separtion Agreement | Contract for ST 320 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Transporation Agreement | 4/1/2018 | Nautilus Pipeline Company, L.L.C. Liquids Transportation Agreement | LTA for ST 320 by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 3/1/2014 | First Amendment to Liquids Transportation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 11/1/2010 | First Amendment to Liquids Transportation Agreement | LTA by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 11/1/2010 | First Amendment to Liquids Transportation Agreement | LTA by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil  LiquidsTransportation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC | Amendment No. 2 by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/5/2006 | Amendment No. 1 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/5/2006 | Amendment No. 1 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2003 | Liquid Hydrocarbons Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline Field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline Field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline Field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Separation Agreement | 10/1/2004 | Liquid Hydrocarbons Separation Agreement | LSA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Separation Agreement | 10/1/2004 | Liquid Hydrocarbons Separation Agreement | LSA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separataion Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separataion Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separataion Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

Exhibit I-G

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 54401 | | WH/B42/S1 | LINER: PWR CYL | | EA | | 1 | 3,975.83 | 100.0% | 3,975.83 |
| North Warehouse | Fieldwood | 54402 | | WH/B42/FLR | PSTN/ROD ASSY: 10-1/2", GMWA, | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 54403 | | WH/B42/FLR | PSTN/ROD ASSY: 28", GMWA, ROD | | EA | | 1 | 21,498.05 | 100.0% | 21,498.05 |
| North Warehouse | Fieldwood | 54406 | | WH/B42/S1 | PSTN: 18", PISTON, GMVC 1ST STGE | | EA | | 1 | 19,676.18 | 100.0% | 19,676.18 |
| North Warehouse | Fieldwood | 54407 | | B3/B3/S2 | LINER: 2ND STGE CYL | | EA | | 1 | 2,542.05 | 100.0% | 2,542.05 |
| North Warehouse | Fieldwood | 54408 | | WH/B41/S2 | LINER: GMVC 1ST STGE | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 54409 | | WH/B37/FL | HD: 2ND STGE CRNKEND | | EA | | 1 | 4,372.48 | 100.0% | 4,372.48 |
| North Warehouse | Fieldwood | 54411 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 1 | 82,650.64 | 100.0% | 82,650.64 |
| North Warehouse | Fieldwood | 54412 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 2 | 81,082.47 | 100.0% | 81,082.47 |
| North Warehouse | Fieldwood | 54419 | | B3/B3/S2 | PMP: GMVA LUBE OIL | | EA | | 1 | 5,829.98 | 100.0% | 5,829.98 |
| North Warehouse | Fieldwood | 54420 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54421 | | WH/B41/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54422 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 7,703.92 | 100.0% | 7,703.92 |
| North Warehouse | Fieldwood | 54445 | | B3/B3/S2 | GEAR: GMVC BLOWER DRV | | EA | | 1 | 3,352.24 | 100.0% | 3,352.24 |
| North Warehouse | Fieldwood | 54447 | | WH/B42/FLR | PSTN/ROD ASSY: 18", 1ST STGE | | EA | | 1 | 14,956.39 | 100.0% | 14,956.39 |
| North Warehouse | Fieldwood | 54448 | | WH/B42/S1 | LINER: 18", 1ST STGE COMPRSSR | | EA | | 1 | 1,967.62 | 100.0% | 1,967.62 |
| North Warehouse | Fieldwood | 54449 | | WH/B42/S1 | LINER: 15", 2ND STGE COMPRSSR | | EA | | 1 | 1,785.43 | 100.0% | 1,785.43 |
| North Warehouse | Fieldwood | 54450 | | WH/B41/S2 | LINER: 9-3/4", 3RD STGE COMPRSSR | | EA | | 1 | 1,909.90 | 100.0% | 1,909.90 |
| North Warehouse | Fieldwood | 54452 | | B3/B1/S1 | GEAR: GMV3-FB, PARTCO BLOWER W/HUB | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54456 | | WH/B42/FLR | PSTN/ROD ASSY: 9-3/4", 3RD STGE | | EA | | 1 | 2,399.73 | 100.0% | 2,399.73 |
| North Warehouse | Fieldwood | 54457 | | WH/B43/FLR | PSTN/ROD ASSY: 9-5/8", GMWA, | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54458 | | WH/B43/FLR | PSTN/ROD ASSY: 17-1/4", GMVA-8 1ST S TGE | | EA | | 1 | 18,636.17 | 100.0% | 18,636.17 |
| North Warehouse | Fieldwood | 54460 | | B3/B2/FLR | ROD: ALL GMV PWR PISTON | | EA | | 2 | 1,821.87 | 100.0% | 1,821.87 |
| North Warehouse | Fieldwood | 54468 | | B3/B2/S3 | PMP: GMVA H2O W/GSKTS | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 54469 | | WH/B41/FLR | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 13,051.81 | 100.0% | 13,051.81 |
| North Warehouse | Fieldwood | 54480 | | WH/B43/FLR | PSTN/ROD ASSY: 16-1/4", 2ND STGE, | | EA | | 1 | 18,408.45 | 100.0% | 18,408.45 |
| North Warehouse | Fieldwood | 54481 | | Bay3/N Wall/FLR | PSTN/ROD ASSY: GMWE PWR,FITS GMWE-12 | | EA | | 1 | 3,223.36 | 100.0% | 3,223.36 |
| North Warehouse | Fieldwood | 54486 | | WH/B43/FLR | PSTN/ROD ASSY: GMWA | | EA | | 1 | 21,945.24 | 100.0% | 21,945.24 |
| North Warehouse | Fieldwood | 56001 | | WH/B41/S1 | BEARING: TLA COMPRSSR RD, BEARING | | EA | | 5 | 725.83 | 100.0% | 725.83 |
| North Warehouse | Fieldwood | 56002 | | WH/B41/S1 | BEARING: TLA MAIN | | EA | | 7 | 635.76 | 100.0% | 635.76 |
| North Warehouse | Fieldwood | 56633 | | B3/B58S3 | KT: RPR CYL, TLA PWR | | EA | | 5 | 725.10 | 100.0% | 725.10 |
| North Warehouse | Fieldwood | 56644 | | B3/B4/S2 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,085.04 | 100.0% | 6,085.04 |
| North Warehouse | Fieldwood | 56645 | | B3/B4/S3 | SPRCKT: TLA | | EA | | 1 | 3,377.74 | 100.0% | 3,377.74 |
| North Warehouse | Fieldwood | 56646 | | B3/B3/S2 | SPRCKT: HYD PUMP & DRV | | EA | | 1 | 2,135.23 | 100.0% | 2,135.23 |
| North Warehouse | Fieldwood | 56648 | | WH/B41/S1 | LINE: CYL, TLA 2ND STG | | EA | | 1 | 7,817.91 | 100.0% | 7,817.91 |
| North Warehouse | Fieldwood | 56653 | | WH/B43/S2,TOP IN BACK | PSTN: TLA 2ND STGE | | EA | | 1 | 20,689.57 | 100.0% | 20,689.57 |
| North Warehouse | Fieldwood | 56654 | | WH/B44/S1 | PSTN: TLA 1ST STGE | | EA | | 1 | 22,170.79 | 100.0% | 22,170.79 |
| North Warehouse | Fieldwood | 56657 | | B3/B4/FLR | PMP: SHFT, TLA IDLER | | EA | | 1 | 1,136.85 | 100.0% | 1,136.85 |
| North Warehouse | Fieldwood | 56658 | | B3/B4/S3 | PMP: SHFT, TLA DRIVE | | EA | | 1 | 3,188.27 | 100.0% | 3,188.27 |
| North Warehouse | Fieldwood | 56659 | | B3/B4/S3 | PMP: SHFT, TLA WATER PUMP | | EA | | 1 | 1,789.07 | 100.0% | 1,789.07 |
| North Warehouse | Fieldwood | 56663 | | WH/B41/S2 | SHOE: TLA TPE XHD SLIPPER | | EA | | 1 | 2,514.18 | 100.0% | 2,514.18 |
| North Warehouse | Fieldwood | 56695 | | B3/B4/FLR | NUT: TLA CONNECTING ROD | | EA | | 4 | 397.17 | 100.0% | 397.17 |
| North Warehouse | Fieldwood | 56744 | | B3/B4/FLR | GEAR: TLA BULL TIMING CNTRL | | EA | | 1 | 1,898.39 | 100.0% | 1,898.39 |
| North Warehouse | Fieldwood | 56746 | | B3/B4/S3 | GEAR: TLA OIL PUMP | | EA | | 2 | 3,800.42 | 100.0% | 3,800.42 |
| North Warehouse | Fieldwood | 56771 | | B3/B4/FLR | LABYRINTH: TLA TURBINE | | EA | | 1 | 1,745.35 | 100.0% | 1,745.35 |
| North Warehouse | Fieldwood | 56772 | | B3/B4/FLR | LABYRINTH: TLA | | EA | | 2 | 626.73 | 100.0% | 626.73 |
| North Warehouse | Fieldwood | 56779 | | B3/B4/FLR | CARRIER: TLA BULL GEAR | | EA | | 3 | 1,286.24 | 100.0% | 1,286.24 |
| North Warehouse | Fieldwood | 56780 | | B3/B4/FLR | CARRIER: TLA IDLER GEAR | | EA | | 3 | 1,187.86 | 100.0% | 1,187.86 |
| North Warehouse | Fieldwood | 56782 | | B3/B4/FLR | LINKAGE: TLA LWR/CNTRL | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56788 | | B3/B4/FLR | SHFT COMPRSSR: TLA TIMER DR | | EA | | 2 | 739.68 | 100.0% | 739.68 |
| North Warehouse | Fieldwood | 56799 | | B3/B4/S3 | VLV: TLA FUEL | | EA | | 6 | 2,288.27 | 100.0% | 2,288.27 |
| North Warehouse | Fieldwood | 56800 | | B3/B5/S3 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,512.01 | 100.0% | 6,512.01 |
| North Warehouse | Fieldwood | 56802 | | WH/B44/S2 | PSTN/ROD ASSY: TLA MATL NO DRAW TYP E | | EA | | 1 | 9,300.03 | 100.0% | 9,300.03 |
| North Warehouse | Fieldwood | 56806 | | B3/B6/S1 | ROD: TLA W/LCKNG STDDS & PN SZ W/RD CAP | | EA | | 1 | 24,799.27 | 100.0% | 24,799.27 |
| North Warehouse | Fieldwood | 56808 | | B3/B3/S2 | WHEEL: TLA TRBN | | EA | | 1 | 23,760.81 | 100.0% | 23,760.81 |
| North Warehouse | Fieldwood | 56809 | | WH/B30/S1 | SCRN ASSY: TLA DWG | | EA | | 1 | 3,917.02 | 100.0% | 3,917.02 |
| North Warehouse | Fieldwood | 56810 | | B3/B4/S3 | JT: EXPNSN, TLA | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56811 | | B3/B1/S2 | JT: EXPNSN, TLA EXHAUST | | EA | | 1 | 980.17 | 100.0% | 980.17 |
| North Warehouse | Fieldwood | 56815 | | B3/B10/S2 | INTCLR ASSY: TLA SCAV AIR | | EA | | 6 | 4,339.69 | 100.0% | 4,339.69 |
| North Warehouse | Fieldwood | 56816 | | B3/B4/FLR | NUT: TLA ROD ALL STGS | | EA | | 1 | 1,012.96 | 100.0% | 1,012.96 |
| North Warehouse | Fieldwood | 56817 | | B3/B4/S3 | RING: TLA TURB NZZLE | | EA | | 2 | 8,435.25 | 100.0% | 8,435.25 |
| North Warehouse | Fieldwood | 58585 | | WH/SE Wall/FLR | CRNKSHFT | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 59286 | | WH/B43/S1 | PSTN/ROD ASSY: 9-3/4", GMV, W/ 3" ROD | | EA | | 1 | 12,227.14 | 100.0% | 12,227.14 |

Exhibit I-G

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 71926 | | Bay3/N Wall/FLR | STDDS: STEP, CYL. W/ NUTS 4 SUCT | | EA | | 24 | 72.87 | 100.0% | 72.87 |
| North Warehouse | Fieldwood | 71936 | | B2/B1/S2 | CYL: HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71937 | | B2/B1/S2 | CYL, HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71939 | | B2/B4/S | CYL: COMPRSSR, 8", W/ ALL HD STDDS & NTS | | EA | | 1 | 6,558.73 | 100.0% | 6,558.73 |
| North Warehouse | Fieldwood | 71948 | | B2/B5/S1 | VLV CHR: UNRPR'D | | EA | | 8 | 153.04 | 100.0% | 153.04 |
| North Warehouse | Fieldwood | 71952 | | B2/B1/S2 | CYL: CMPRSSR, 8", W/ IB HEAD & P. GL ND | | EA | | 1 | 3,497.99 | 100.0% | 3,497.99 |
| North Warehouse | Fieldwood | 71955 | | B2/B4/S1 | PSTN: COMP, C.I., W/2 STEEL DONUTS | | EA | | 1 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 71971 | | B2/B1/S2 | PSTN/ ROD ASSY: X 2", NO RINGS, TUNGSTEN | | EA | | 1 | 1,289.88 | 100.0% | 1,289.88 |
| North Warehouse | Fieldwood | 71975 | | B2/B1/S2 | CRSSHD: GUIDE, WBF-74, BORE | | EA | | 1 | 3,279.36 | 100.0% | 3,279.36 |
| North Warehouse | Fieldwood | 71977 | | B2/B1/S2 | DIST PC: WBF-74, NEW OEM 14" CYL | | EA | | 1 | 2,040.49 | 100.0% | 2,040.49 |
| North Warehouse | Fieldwood | 71980 | | WH/B29/S1 | FAN ASSY: 7 BLADE 132" DIA AIR-X-CHANGER | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 71983 | | WH/B29/S1 | FAN BLDES: FIBERGLASS 62" L X 11-1/4" W | | EA | | 6 | 364.37 | 100.0% | 364.37 |
| North Warehouse | Fieldwood | 72001 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72002 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72013 | | WH/B8/FLR | HD: CYL, PWR, RECOND | | EA | | 2 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 72025 | | WH/B38/S1 | MANIFOLD: INTAKE | | EA | | 1 | 728.75 | 100.0% | 728.75 |
| North Warehouse | Fieldwood | 72027 | | WH/B36/S1 | MANIFOLD: EXHST, P9390, SECTIONS | | EA | | 3 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 72037 | | WH/B6/S2 | ROD: CONN, P9390, US'D | | EA | | 16 | 510.12 | 100.0% | 510.12 |
| North Warehouse | Fieldwood | 81982 | | B3/B2/FLR | ROD: ARTIC1D, GMVC | | EA | | 1 | 1,366.40 | 100.0% | 1,366.40 |
| North Warehouse | Fieldwood | 81984 | | B3/B4/S1 | SPRCKT: TLA SGL SPLIT | | EA | | 1 | 6,635.24 | 100.0% | 6,635.24 |
| North Warehouse | Fieldwood | 81985 | | B3/B4/FLR | SPRCKT: TLA IDLER W/PUMP | | EA | | 1 | 1,923.89 | 100.0% | 1,923.89 |
| North Warehouse | Fieldwood | 81987 | | WH/B41/S2 | SHOE: GMVC XHD | | EA | | 1 | 1,689.76 | 100.0% | 1,689.76 |
| North Warehouse | Fieldwood | 89087 | | WH/B43/S1 | PSTN/ROD ASSY: SZ 28" US'D C7120-3A 3172 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 96073 | | WH/B8/S2 | PMP,HYD: 5.2gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 96074 | | WH/B8/S2 | PMP,HYD: 1.9gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 112605 | | B3/B8/FLR | KT: RPR VRA | | EA | | 3 | 852.63 | 100.0% | 852.63 |
| North Warehouse | Fieldwood | 112606 | | B3/B10/S1 | VLV | | EA | | 3 | 1,093.12 | 100.0% | 1,093.12 |
| North Warehouse | Fieldwood | 112608 | | B3/B10/S1 | VLV | | EA | | 6 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 197167 | | WH/B25/S2 | TRBCHRGR: VTC2S4 BBC W/MNTNG GSKT | | EA | | 1 | 33,066.91 | 100.0% | 33,066.91 |
| North Warehouse | Fieldwood | 200368 | | WH/B30/FLR | ROTOR ASSY, DEEPWELL PUMP | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 200371 | | B2/B10/FLR | CYL: WRTHGTN SIZE 9-1/4" | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200372 | | B2/B11/FLR | CYL: WRTHGTN, SIZE 7" | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200379 | | B2/B11/FLR | CYL: WRTHGTN SIZE 7.007 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 200380 | | WH/B5/S2 | IMPELLER: TURBINE | | EA | | 1 | 16,560.78 | 100.0% | 16,560.78 |
| North Warehouse | Fieldwood | 200381 | | WH/B5/S2 | IMPELLER: 'C30' B STG, SOLAR | | EA | | 1 | 17,289.53 | 100.0% | 17,289.53 |
| North Warehouse | Fieldwood | 200387 | | WH/B11/S1 | COMPR: AIR | | EA | | 1 | 6,194.35 | 100.0% | 6,194.35 |
| North Warehouse | Fieldwood | 200390 | | WH/B27/S2 | GEAR: BX TYPE, 206HS, RAT 1.262-1 | | EA | | 1 | 29,149.89 | 100.0% | 29,149.89 |
| North Warehouse | Fieldwood | 200400 | | WH/B5/S2 | BEARING ASSY: C30 SLR GC DMPR SUCT | | EA | | 1 | 21,060.80 | 100.0% | 21,060.80 |
| North Warehouse | Fieldwood | 200401 | | WH/B5/S2 | BEARING ASSY: C30 DIS SLR GC TILT PAD | | EA | | 1 | 18,346.21 | 100.0% | 18,346.21 |
| North Warehouse | Fieldwood | 200414 | | B2/B7/S1 | CYL: 6, WRTHGTN COMPRSSR | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200421 | | B2/B9/FLR | CYL: 15", COMPRSSR,  NO STDDS F/VLV CAPS | | EA | | 1 | 14,574.95 | 100.0% | 14,574.95 |
| North Warehouse | Fieldwood | 200422 | | B2/B5/S1 | CYL: 9", COMPRSSR #10674-E I/R -RDS | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200423 | | B2/B11/S1 | CYL: 11-1/4", COMPRSSR W/ 11.287 BORE | | EA | | 1 | 13,117.45 | 100.0% | 13,117.45 |
| North Warehouse | Fieldwood | 200424 | | B2/B5/S2 | CYL: 5", COMPRSSR I/R-RDS | | EA | | 1 | 9,327.97 | 100.0% | 9,327.97 |
| North Warehouse | Fieldwood | 200426 | | WH/B20/S1 | TURBINE | | EA | | 1 | 3,643.74 | 100.0% | 3,643.74 |
| North Warehouse | Fieldwood | 202849 | | YD/R4 | HEAT EXCHNGR | | EA | | 1 | 22,226.79 | 100.0% | 22,226.79 |
| North Warehouse | Fieldwood | 202850 | | WH/B38/FLR | PMP: CMSD 4X6X10.5 | | EA | | 1 | 65,000.00 | 100.0% | 65,000.00 |
| North Warehouse | Fieldwood | 202854 | | Bay 6 | COMPR: PKG | | EA | | 1 | 22,117.48 | 100.0% | 22,117.48 |
| North Warehouse | Fieldwood | 202876 | | YD/R4 | ENG: NG 399 | | EA | | 1 | | 100.0% | |
| North Warehouse | Fieldwood | 227188 | | B3/B6/S1 | CYL: CPR GMWA-9-1A PWR CYLINDERS | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 228011 | | Bay 2 | PSTN/ROD ASSY: 29-1/2", CPR F/ V250 COM | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 228012 | | B2/B2/S1 | PSTN ROD: I/R RDS 2.125 IN CRBDE CTD | | EA | | 1 | 2,379.02 | 100.0% | 2,379.02 |
| North Warehouse | Fieldwood | 229324 | | WH/B44/S1 | PSTN/ROD ASSY: TLA COMPRSSR | | EA | | 1 | 4,733.25 | 100.0% | 4,733.25 |
| North Warehouse | Fieldwood | 233282 | | Linear Controls | ENG:NG,235hp,1200rpm | | EA | | 1 | 26,909.80 | 100.0% | 26,909.80 |
| North Warehouse | Fieldwood | 233305 | | B1/Floor | ENG:DIESEL,318hp,8,2100 rpm | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 233453 | | Yard/Row 3 | GEN:DIESEL,30kW,208/48 0V,AC,1800rpm,3ph | | EA | | 1 | 9,291.53 | 100.0% | 9,291.53 |
| North Warehouse | Fieldwood | 241167 | | B2/B6/FLR | CYL: 28", VRA CLRK COMPRSSR | | EA | | 1 | 3,079.21 | 100.0% | 3,079.21 |
| North Warehouse | Fieldwood | 241168 | | B2/B7/FLR | CYL: 17", VRA CLRK COMPRSSR | | EA | | 1 | 2,309.41 | 100.0% | 2,309.41 |
| North Warehouse | Fieldwood | 241169 | | B2/B2/FLR | CYL: 9, VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241173 | | WH/B44/FL | PSTN/ROD ASSY: VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241179 | | WH/B1/Floor | HD: VRA CLRK O/BRD UNLDR | | EA | | 1 | 3,849.02 | 100.0% | 3,849.02 |
| North Warehouse | Fieldwood | 241181 | | B10K/B36/S1 | VLV CHR: VRA CLRK VLV CHRS F/13" | | EA | | 12 | 173.21 | 100.0% | 173.21 |

Exhibit I-G

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 241182 | | B3/B10,11,12/FLR | PSTN: VRA CLRK PWR | | EA | | 6 | 2,169.33 | 100.0% | 2,169.33 |
| North Warehouse | Fieldwood | 241185 | | B3/B9/S1 | ROD: VRA CLRK ART CONN | | EA | | 1 | 11,708.19 | 100.0% | 11,708.19 |
| North Warehouse | Fieldwood | 241189 | | B3/B10/S3 | PIN: WRIST, VRA CLRK PWR PISTON | | EA | | 4 | 1,255.26 | 100.0% | 1,255.26 |
| North Warehouse | Fieldwood | 241191 | | B3/B8/S1 | TENSIONER: VRA CLRK CHAIN | | EA | | 2 | 1,196.78 | 100.0% | 1,196.78 |
| North Warehouse | Fieldwood | 241202 | | B3/B2/S2 | GVRNR: GMVC-12 | | EA | | 1 | 8,409.66 | 100.0% | 8,409.66 |
| North Warehouse | Fieldwood | 241203 | | B3/B1/FLR | JUMPER: H2O, GMVC-12 HD TO CYL | | EA | | 12 | 148.50 | 100.0% | 148.50 |
| North Warehouse | Fieldwood | 241205 | | B3/B3/S2 | JUMPER: H2O, GMVC-12 CYL TO RAIL | | EA | | 6 | 111.47 | 100.0% | 111.47 |
| North Warehouse | Fieldwood | 241216 | | B3/B3/S3 | EXHST: ELBOW, GMVC-12, GMVA-34-2C | | EA | | 4 | 857.27 | 100.0% | 857.27 |
| North Warehouse | Fieldwood | 251608 | | B2/Yard | ENG | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 252667 | | B2/B5/S2 | CYL: 6", WHT SUPR COMPRSSR CMPLT | | EA | | 1 | 4,862.67 | 100.0% | 4,862.67 |
| North Warehouse | Fieldwood | 323171 | | WH/B41/S1 | PSTN: RING FOR 23.00" PISTON | | EA | | 2 | 238.14 | 100.0% | 238.14 |
| North Warehouse | Fieldwood | 323172 | | WH/B41/S1 | PSTN: RING FOR 16.50" PISTON | | EA | | 2 | 223.27 | 100.0% | 223.27 |
| North Warehouse | Fieldwood | 323173 | | WH/B41/S1 | PSTN: RING FOR 10.50" PISTON | | EA | | 3 | 139.85 | 100.0% | 139.85 |
| North Warehouse | Fieldwood | 326861 | | WH/B41/FLR | PSTN: 10.50", PART #579-062-001 | | EA | | 1 | 6,451.03 | 100.0% | 6,451.03 |
| North Warehouse | Fieldwood | 326862 | | WH/B44/FLR | PSTN: ROD FOR 10.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326863 | | WH/B44/FLR | PSTN: ROD FOR 23.00", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326864 | | WH/B44/FLR | PSTN: ROD FOR 16.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 328243 | | WH/B41/FLR | PSTN: 16.50", PART #579-082-201 | | EA | | 1 | 18,426.94 | 100.0% | 18,426.94 |
| North Warehouse | Fieldwood | 329558 | | Linear Controls | ENG:NG,423hp,12,7in,H20,900rpm | | EA | | 1 | 84,000.00 | 100.0% | 84,000.00 |
| North Warehouse | Fieldwood | 333387 | | WH/B41/FLR | PSTN: 23.00", PART #579-303-201 | | EA | | 1 | 33,442.43 | 100.0% | 33,442.43 |
| North Warehouse | Fieldwood | 348619 | | B1/B1/S1 | MTR,ELEC:TEFC,3600rpm,150hp,445LP | | EA | | 1 | 7,220.06 | 100.0% | 7,220.06 |
| North Warehouse | Fieldwood | 370132 | | Linear Controls | ENG:NG,85-220hp,1905in3,6,7IN | | EA | | 1 | 60,750.95 | 100.0% | 60,750.95 |
| North Warehouse | Fieldwood | 500133 | | Fluid Crane | SUMP TANK,4"WX10'LX4'H,ATMOS,EXT,16" PFLA | | EA | | 1 | 26,250.00 | 100.0% | 26,250.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 61 | 1-48" X 15' X 230 WP L.P. Horizontal Separator (No Skid) | ? | EA | | 1 | 4,850.00 | 100.0% | 4,850.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 64 | 24" X 10' Vertical H.P. Separator w/Skid | Eugene Island Block#266-B | EA | | 1 | 1,770.00 | 100.0% | 1,770.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 65 | 12" X 6' Vertical LP Fuel Gas Scrubber (No Skid) | ? | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 66 | 12" X 6' Vertical LP Fuel Gas Scrubber w/Skid | South Marsh Island 11-N | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 70 | 1-120 Degree Boat Landing with 48" Plate Doublers | South Marsh Island 11 | EA | | 1 | 820.00 | 100.0% | 820.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 73 | 24" X 10' Vertical H.P. Separator w/Skid | ? | EA | | 1 | 1,625.00 | 100.0% | 1,625.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 74 | 30" X 10' Vertical LP Test Separator w/Skid | ? | EA | | 1 | 1,895.00 | 100.0% | 1,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 77 | 16" X 8' Vertical LP Separator (No Skid) | South Marsh Island 10 | EA | | 1 | 1,455.00 | 100.0% | 1,455.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 90 | 1-48" X 10' X 275 WP L.P. Horizontal Scrubber Vessel NO SKID | South Marsh Island Block# 48 E | EA | | 1 | 4,120.00 | 100.0% | 4,120.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 96 | 1-Glycol Reboiler with Stack & Stihl Column | High Island Block# 467 A | EA | | 1 | 8,145.00 | 100.0% | 8,145.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 100 | 48" X 10' X 275# W.P. Horizontal Water Skimmer with Skid | N/A | EA | | 1 | 4,175.00 | 100.0% | 4,175.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 101 | 42" X 15' X 1440# W.P. Horizontal 3-Phase Separator "No Skid" | N/A | EA | | 1 | 3,895.00 | 100.0% | 3,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 102 | 42" X 12' 6" X 125# W.P. Horizontal Skimmer with Skid | N/A | EA | | 1 | 3,215.00 | 100.0% | 3,215.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 103 | 20" X 7' 6" X 275 W.P. Vertical Separator with Skid | N/A | EA | | 1 | 1,210.00 | 100.0% | 1,210.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 104 | 30" X 10' X 1480 W.P. Horizontal Separator with Skid | N/A | EA | | 1 | 2,150.00 | 100.0% | 2,150.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 105 | One Dual Meter Run Skid with Pig Traps | N/A | EA | | 1 | 1,385.00 | 100.0% | 1,385.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 106 | 30" X 6' X 150# W.P. Vertical Scrubber Vessel with Skid | N/A | EA | | 1 | 1,665.00 | 100.0% | 1,665.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. KK | 30" X 4' X 250 WP Vertical Scrubber Vessel w/Skid | From Offshore Specialty Fabricators in Houma | EA | | 1 | 1,570.00 | 100.0% | 1,570.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. CCC | Line Heater/Reboiler Package 8' W X 22' 6"L X 10' 1" T | Eugene Island Block# 212 "A" | EA | | 1 | 12,275.00 | 100.0% | 12,275.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. DDD | 3-Vapor Recovery Stands | Eugene Island Block# 212 "A" | EA | | 1 | 235.00 | 100.0% | 235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. EEE | 1-Heater Stack, 1-Still Column, and Misc Pipe and Hardware for Line Heater/Reboiler | Eugene Island Block# 212 "A" | EA | | 1 | 355.00 | 100.0% | 355.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 107 | 1-Pallet of Used Spool Piping | West Cameron Block# 165 "A" | EA | | 1 | 295.00 | 100.0% | 295.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 109 | 1-Filter Separator with Skid (5' X 12' X 8' Tall) Est. 10,000# | High Island Block# A376 A | EA | | 1 | 1,155.00 | 100.0% | 1,155.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 110 | 1-Float Cell with Skid (7' X 12' X 9' Tall) Est. 10,000# | High Island Block# A376 A | EA | | 1 | 1,490.00 | 100.0% | 1,490.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 111 | Two (2) Plate Heat Exchanger Skids | High Island Block# A595 "CF" | EA | | 1 | 475.00 | 100.0% | 475.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 112 | 1-Piggy-Back Water Skimmer & Float Cell Package (Newly Fabricated) | Main Pass Block# 140-A | EA | | 1 | 5,025.00 | 100.0% | 5,025.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 113 | 1-Verticle Water Skimmer Vessel with Skid (60" X 12" X 15,000#) (MBM-1800) | Vermilion Block# 60-A | EA | | 1 | 3,375.00 | 100.0% | 3,375.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 114 | 1-Verticle Floatation Unit (4M Spinsep) with Skid (ABM-1908) (10,150#) (Monosep Corporation-Serial# MCO-2076) | West Cameron Block# 68-A | EA | | 1 | 655.00 | 100.0% | 655.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 115 | 1-Verticle Test Separator with Skid (MBD-4501) (36 X 10 Foot X 17,000#) (2,000 WP @ 100 deg, MFG 1982) | West Cameron Block# 68-A | EA | | 1 | 865.00 | 100.0% | 865.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 116 | 1-Horizontal 3-Phase H.P. Production Separator with Skid (MBD-4502) (60" X 15') (1440 @ 100 Deg-Yr Built 1982) | West Cameron Block# 68-A | EA | | 1 | 1,435.00 | 100.0% | 1,435.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 117 | 1-Vertical Vent Scrubber Package with Skid (MBF-2401) (30" X 10' X 22,000#) | West Cameron Block# 68-A | EA | | 1 | 1,775.00 | 100.0% | 1,775.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 118 | 1-Horizontal 2-Phase Vent Scrubber Vessel W/Skid (48" X 10' X 150# @ 100 Deg) Built 1987 | East cameron Block# 320-A | EA | | 1 | 3,545.00 | 100.0% | 3,545.00 |
| Viking - Henderson | Viking Fabricators, LLC | | | | Handrails | | EA | | 179 | 315.00 | 100.0% | 315.00 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDER CAGES | | EA | | 1 | 763.87 | 100.0% | 763.87 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 12'-6" LONG LADDER CAGES | | EA | | 84 | 1,291.85 | 100.0% | 1,291.85 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDERS | | EA | | 81 | 622.75 | 100.0% | 622.75 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 20 FT. LONG LADDERS | | EA | | 107 | 1,236.43 | 100.0% | 1,236.43 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11233630-1 | ATS - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 7,155 | 1 | 5,545.13 | 100.0% | 5,545.13 |
| Linear - Lafayette | Linear Controls | 2124617-01 | 2659561170 | ATS - OUTDOOR | ASSY, RIG TEST SKID, SUBSEA TREE, | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124117-07 | 400257303-01 | ATS - OUTDOOR | CONV. ASSY, SUBSEA TREE, 4" X 2"-10M, | | EA | 80,000 | 1 | 62,000.00 | 100.0% | 62,000.00 |
| Linear - Lafayette | Linear Controls | 2273013-01 | 110598733-1(RR1) | ATS - OUTDOOR | ASSEMBLY, 5" X 2"-10M SPOOLTREE. | | EA | 66,000 | 1 | 51,150.00 | 100.0% | 51,150.00 |
| Linear - Lafayette | Linear Controls | 2124123-01 | 96101817050 | ATS - OUTDOOR | ASSY, TREE CAP SHIPPING SKID | | EA | 1,850 | 1 | 1,433.75 | 100.0% | 1,433.75 |
| Linear - Lafayette | Linear Controls | 2124145-01 | 45256012-5 | ATS - OUTDOOR | ASSY, HUB, 4" WELL TERMINATION, | | EA | 1,400 | 1 | 1,085.00 | 100.0% | 1,085.00 |
| Linear - Lafayette | Linear Controls | 2141833-01 | 11227730-01 | ATS - OUTDOOR | ASSY, TREE TRANSPORTATION SKID, BP | | EA | 5,800 | 1 | 4,495.00 | 100.0% | 4,495.00 |
| Linear - Lafayette | Linear Controls | 2124836-01 | 11171617-1 | ATS - OUTDOOR | TEST STUMP BODY, TREE FAT SKID, | | EA | 6,200 | 1 | 4,805.00 | 100.0% | 4,805.00 |
| Linear - Lafayette | Linear Controls | 2124641-01 | 11384318-1 | ATS - OUTDOOR | ASSY, COMPLETION GUIDE BASE, STM-15 | | EA | 20,500 | 1 | 15,887.50 | 100.0% | 15,887.50 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11197244-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11199037-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124119-01 | 964534560 | ATS - OUTDOOR | ASSY, TREE RUNNING TOOL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 265340930 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124128-01 | 11286013-17 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER, STM-15, | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561200 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561190 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2018904-01 | 265956120(RR2) | TOOLSKID - OUTDOOR | ASSY, LEAD IMPRESSION TOOL | | EA | 900 | 1 | 697.50 | 100.0% | 697.50 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 266013010 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124139-01 | 11186901-01 | TOOLSKID - OUTDOOR | ASSY, DUMMY TBG HGR, STM-15, 4.06" | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2055294-12 | 110357224-01 | CPB 077 - INDOOR | ASSEMBLY, TUBING HANGER, 5 IN NOM. | | EA | 2,500 | 1 | 1,937.50 | 100.0% | 1,937.50 |
| Linear - Lafayette | Linear Controls | 2748033-01 | 45353783-01-01 | CPB 077 - INDOOR | WIRELINE PLUG, 5.25" DIA, METAL AND | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2749898-01 | 4500436775-2-1 | CPB 077 - INDOOR | 5.250" WIRELINE PLUG 'HH' TRIM WITH | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2055296-02-01 | 110407008-1 | CPB 078 - INDOOR | ASSEMBLY, INTERNAL TREE CAP, 10K WP | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 60007268 | 96953428110 | SF-YARD - OUTDOOR | TROIKA TOOL SHED | | EA | | 1 | 15,000.00 | 100.0% | 15,000.00 |
| Linear - Lafayette | Linear Controls | 2124147-04 | 111802674 | TRI 168 - INDOOR | ASSY, CLAMP, W/ SEAL PLATE, 10" | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-06 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11363037-01 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-04 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-04 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-01 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |

Exhibit I-G

| Facility | Facility Owner | Item Number | Serial No | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 041700-47 | 4503010723-1-1 | TRI 171 - INDOOR | GASKET, AX - 18-3/4" 10/15M 316 SS | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219520 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219570 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2141279-01 | 4502534448-01-01 | TRI 172 - INDOOR | CLAMP, 10" FLOWLINE/ PIGGING LOOP/ | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-02-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-01-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-03-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2142930-01 | 4501742451-1-2 | TRI 174 - INDOOR | ACCESS STAND, G2 TUBING HANGER RUNNING | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11410124-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-02 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-02 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-03 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-04 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-01 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-03 | 4502533058-01-01 | TRI 174 - INDOOR | SEAL PLATE, 10" FLOWLINE JUMPER | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11251434-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124586-01 | 450605865-1 | TRI 175 - INDOOR | END PLATE, MANDREL RETAINER, | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2124584-01 | 450605849-1-1 | TRI 175 - INDOOR | MANDREL, RETAINER SLEEVE, | | EA | 400 | 1 | 310.00 | 100.0% | 310.00 |
| Linear - Lafayette | Linear Controls | 2124535-01 | NS201604020729021 | TRI 175 - INDOOR | ANNULUS LOOP, 2.875 O.D. X 2.125 | | EA | 300 | 4 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124624-01 | 450604006-1 | TRI 175 - INDOOR | BODY, 4" PRODUCTION STAB, | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124585-01 | 450605858-1 | TRI 175 - INDOOR | RETAINER PLATE, MASTER VALVE BLOCK | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2156742-01 | 11328834-01 | TRI 175 - INDOOR | SUB-ASSY, BOP SPANNER JOINT, 7.625" | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2156773-02 | 11322641-01 | TRI 175 - INDOOR | UPPER ADAPTER, BOP SPANNER JOINT, | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 400297648 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 11213146-1 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133273 | TRI 178 - INDOOR | AX GASKET, 11"- 5M/10MM, ST/ST1 WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133274 | TRI 178 - INDOOR | AX GASKET, 11"- 5M/10MM, ST/ST1 WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-1 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-2 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-8 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-6 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-11 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-2 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45438628-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-4 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 501040-1 | 961276244180 | TRI 178 - INDOOR | 6" Gasket Sealing Ring | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-04 | 45424496-2 | TRI 178 - INDOOR | GASKET W/ O-RING, 10"-15M SEAL | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-06 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424274-02 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-03 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124134-01 | 2659561110 | TRI 180 - INDOOR | ASSY, TUBING HANGER ADJUSTMENT STAN | | EA | 600 | 1 | 465.00 | 100.0% | 465.00 |
| Linear - Lafayette | Linear Controls | 2099720-02 | 26-1567 | TRI FLOOR - INDOOR | ASSY, TREE CAP RUNNING TOOL, BP | | EA | 5,000 | 1 | 3,875.00 | 100.0% | 3,875.00 |
| Linear - Lafayette | Linear Controls | 60031311 | 9523237807360 | TRI SHED - INDOOR | Troika Dummy Control Pod | | EA | 3,000 | 1 | 2,325.00 | 100.0% | 2,325.00 |
| Linear - Lafayette | Linear Controls | 60031470 | 9523237807390 | TRI SHED - INDOOR | SHELL DUMMY CONTROL POD SHIPPING SKID | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |

Exhibit I-G

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2123000-01 | 9624280360 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123000-01 | 2657807220 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123738-01 | 9624280370 | TRI-SHELL - OUTDOOR | LIFT SUB, 1.50" NOM SHACKLE X | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11196376-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11210778-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2035504-02 | 961276650350 | TRI-SHELL - OUTDOOR | ASSY, DEBRIS CAP, 18-3/8" OD MCPAC | | EA | 100 | 1 | 77.50 | 100.0% | 77.50 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650650 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650660 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2156132-01 | 9523237807220 | TRI-SHELL - OUTDOOR | ASSY, COMBINATION (TREE/TREE CAP) | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2156145-01 | 11324065-01 | TRI-SHELL - OUTDOOR | ASSY, 3-1/16-15M MONOBORE TUBING | | EA | 8,500 | 1 | 6,587.50 | 100.0% | 6,587.50 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807330 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807340 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11278658-1 | TRI-SHELL - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 8,000 | 1 | 6,200.00 | 100.0% | 6,200.00 |
| Linear - Lafayette | Linear Controls | | Serial.# WPi317 | | Waukesha Engine L7042 GSI | | EA | | 1 | 82,625.00 | 100.0% | 82,625.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 48799 | | Waukesha Engine L3711 | | EA | | 1 | 51,250.00 | 100.0% | 51,250.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 1029776 | | Waukesha Engine F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 218794 | | Waukesha Engine F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.#396632 | | Waukesha Engine F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 362530 | | Waukesha Engine F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Whitco - Broussard | Whitco Supply | 357501 | | | 1" x 3' x 20' Galvanized Grating | | EA | | 106 | 395.00 | 100.0% | 395.00 |
| Whitco - Broussard | Whitco Supply | 333963 | | | 1-1/2" x 3' x 20' Galvanized Grating | | EA | | - | 598.00 | 100.0% | 598.00 |
| Express - Fourchon | Express Supply & Steel | | | | 1" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 10 | 400.65 | 100.0% | 400.65 |
| Express - Fourchon | Express Supply & Steel | | | | 1-1/2" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 35 | 555.67 | 100.0% | 555.67 |

Cash and other balances to be determined at effective date

**Surety Bonds in favor of FWE I:**

| DATE | BOND NO. | Amount | Lease | PARTIES | SURETY | BENEFICIARY |
|------|----------|--------|-------|---------|--------|-------------|
| 3/6/19 | B011964 | $300,000 | OCS-G 01194 | Fieldwood Energy LLC; Byron Energy Inc. | U.S. Specialty Insurance Company | Fieldwood Energy LLC |
| 3/6/19 | B011963 | $450,000 | OCS-G 01194 | Fieldwood Energy LLC; Byron Energy Inc.;BOEM | U.S. Specialty Insurance Company | Fieldwood Energy LLC; BOEM |
| 11/29/18 | N-7001005 | $2,366,855 | OCS-0810; OCS-0812 | Northstar Offshore Ventures LLC; SanareEnergy Partners, LLC; Fieldwood Energy LLC | Indemnity National Insurance Company | Fieldwood Energy LLC |
| 3/9/18 | N-7000930 | $2,640,126 | OCS-G11691 | Monforte Exploration L.L.C.; FieldwoodEnergy LLC | Indemnity National Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149835 | $250,000 | OCS-G03587 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149836 | $1,000,000 | OCS-G03171 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149838 | $2,500,000 | OCS-G01216;OCS-G01217 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 5/1/16 | RLB0016261 | $1,514,600 | 2 A; ROW G12732;ROW G13 | Whitney Oil & Gas, LLC; Apache Corporation; GOM Shelf LLC | RLI Insurance Company | Apache Corporation; GOM Shelf LLC |

**Exhibit I-I**

**<u>Subsidiaries:</u>**
GOM Shelf LLC
FW GOM Pipeline Inc.

**<u>Equity Interests:</u>**
Paloma Pipeline Company - 9.65%
SP 49 LLC - 33.33% (owned by FW GOM Pipeline Inc.)

Exhibit I-J

Exhibit I-J

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|-------|-------|-------|------|--------|-------------|-------------|-------------------|----------|-----|--------------|
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | RT | 5/1/2003 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | OP 1 | 5/1/2003 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | OP 2 | 5/1/2003 | | 5000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | RT | 6/1/2000 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | OP 1 | 6/1/2000 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | OP 2 | 6/1/2000 | | 5000 | Fieldwood En | 50.0% | PROD |
| VERMILION 362/371 | VR 362 | G10687 | Federal | RT | 6/1/1989 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| VERMILION 362/371 | VR 362 | G10687 | Federal | OP | 6/1/1989 | | 5,000 | Fieldwood En Off | 16.7% | UNIT |
| VERMILION 362/371 | VR 363 | G09522 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 1 | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 2 | 5/1/1988 | | 5,000 | Fieldwood En Off | 33.3% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 3 | 5/1/1988 | | 5,000 | Fieldwood En | 50.0% | ACTIVE |
| VERMILION 362/371 | VR 371 | G09524 | Federal | RT | 7/1/1988 | | 5,000 | Fieldwood En Off | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 371 | G09524 | Federal | OP | 7/1/1988 | | 5,000 | Fieldwood En Off | 16.7% | ACTIVE |
| VERMILION 78 | VR 78 | G04421 | Federal | RT | 11/1/1980 | | 5,000 | Fieldwood En | 37.5% | ACTIVE |
| VERMILION 78 | VR 78 | G04421 | Federal | OP | 11/1/1980 | | 5,000 | Fieldwood En | 18.8% | ACTIVE |

Right of Way bearing Serial No. OCS-G29427 for Pipeline Segment No. 20278 pertaining to South Timbalier 308
Right of Way bearing Serial No. OCS-G15047 for Pipeline Segment No. 10675 pertaining to Vermilion 371
All other right, title and interest of FWE in any assets to the extent such assets relate to any of the foregoing leases or rights of way.

Exhibit I-K(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | e Cur Acre | Operator | WI | | Lease Status | |
|-------|-------|-------|------|--------|-------------|-------------|------------|----------|-----|---|--------------|---|
| EAST CAMERON 2 - (SL LA) | EC 2 | SL18121 | SL - LA | WI | 5/12/2004 | 11/6/2020 | 220 | Fieldwood | 50.0% | | RELINQ | |
| CHANDELEUR 42/43 | CA 43 | G32268 | Federal | OP 1 | 7/1/2008 | | 5,000 | ieldwood E | 7.69% | | PROD | Knight Default |
| CHANDELEUR 42/43 | CA 42 | G32267 | Federal | OP 1 | 7/1/2008 | 6/21/2019 | 5,000 | ieldwood E | 7.69% | | RELINQ | Knight Default |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | ieldwood E | 6.00% | | PROD | Tammany Default |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Idwood En | 0.042% | | UNIT | Hillcrest GOM Default in Unit |
| SHIP SHOAL 246/247/248/270/271 | SS 248 | G01029 | Federal | RT B | 6/1/1962 | | 5,000 | Idwood En | 0.04% | | UNIT | Hillcrest GOM Default in Unit |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | ORRI | 7/1/1983 | | 5,000 | ieldwood E | 2.0% | | PROD | |

Exhibit I-K(ii)

| Asset Name | FWE Acct. Code | Lease Number | API | WI | NRI |
|---|---|---|---|---|---|
| CHANDELEUR 042 #A002 | CA042A0200 | G32267 | 177294001500 | 7.7% | 5.4% |
| CHANDELEUR 043 #A001 | CA043A0100 | G32268 | 177294001400 | 7.7% | 5.4% |
| CHANDELEUR 043 #A003 | CA043A0300 | G32268 | 177294001600 | 7.7% | 5.4% |
| EAST CAMERON 002 #001 SL 18121 | SL18121010 | 18121 | 177032013600 | 50.0% | 37.3% |
| EUGENE IS 330 #B003 ST1 | EI330B0301 | G02115 | 177104008001 | 35.0% | 29.1% |
| MAIN PASS 259 #A007 | MP259A0700 | G07827 | 177244071800 | 43.1% | 29.7% |
| MAIN PASS 303 #B015 | MP303B1500 | G04253 | 177244024800 | 42.9% | 35.7% |
| MATAGORDA IS 519 #L001 | MI519L1SL0 | MF-79413 | 427033030000 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L002 | MI519L2SL0 | MF-79413 | 427033034000 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L003 | MI519L3SL0 | MF-79413 | 427033039500 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L004 | MI519L4SL0 | MF-79413 | 427033039700 | 15.8% | 12.2% |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177124020800 | 0.042% | TA |
| SOUTH TIMBALIER 205 #B002A ST1 | ST205B02A1 | G05612 | 177154062901 | 25.0% | 20.8% |
| SOUTH TIMBALIER 205 #B004 ST1 | ST205B0401 | G05612 | 177154081601 | 25.0% | 20.8% |
| SOUTH TIMBALIER 206 #A002 ST1 | ST206A0201 | G05613 | 177154060101 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A003 | ST206A0300 | G05613 | 177154061000 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A004A | ST206A04A0 | G05613 | 177154074300 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A006 | ST206A0600 | G05613 | 177154075100 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A007 | ST206A0700 | G05613 | 177154075200 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A008 | ST206A0800 | G05613 | 177154075300 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A009 | ST206A0900 | G05613 | 177154075400 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A010ST2BP | ST206A1002 | G05613 | 177154075702 | 25.0% | TA |
| SOUTH TIMBALIER 206 #B003 ST1 | ST206B0301 | G05613 | 177154074001 | 25.0% | 20.8% |
| SOUTH TIMBALIER 206 #B006 | ST206B0600 | G05613 | 177154103000 | 25.0% | 20.8% |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 | 6.0% | 4.9% |
| SOUTH TIMBALIER 205 #G001 ST1 | ST205G0101 | G05612 | 177154106701 | 0.0% | 2.0% |
| SOUTH TIMBALIER 205 #G003 ST1 | ST205G0301 | G05612 | 177154115301 | 0.0% | 2.0% |

Exhibit I-K(iii)

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| CHANDELEUR 043 P/F-A | CA43APLT | G32268 | CA043 | 7.69% |
| HIGH ISLAND 120 P/F-A-PROCESS | HI120APROC | G01848 | HI120 | 6.00% |
| WEST CAMERON 295 P/F-A | WC295ACAS | G24730 | WC295 | 6.00% |
| SHIP SHOAL 248 P/F-G | SS248PFG | G01029 | SS248 | 0.04% |
| SOUTH TIMBALIER 206 P/F-A | ST206APLT | G05612 | ST206 | 25.00% |
| SOUTH TIMBALIER 205 P/F-B | ST205BPLT | G05612 | ST205 | 25.00% |
| MATAGORDA IS 487 P/F-L(SL) | MI487LSL | MF-88562 | MI487 | 15.80% |
| MATAGORDA IS 519 P/F-L - SL | MI519LSL | MF-88562 | MI519 | 15.80% |
| Venice Dehydration Facility (South Pass Dehydration Station) | VENICEDHYD | | | 64.80% |
| Tivoli Plant | TIVOLIPL | | | 43.86% |
| MI 519 Bay City Compressor Station | MI519BAY | | | 18.10% |
| Vermilion 76 Onshore Scrubber | VR76SCRUB | | | 6.08% |
| Grand Chenier Separation Facility | GRCHENPF | | | 72.08% |
| EAST CAMERON 002 P/F-1 SL18121 | SL181211PT | 18121 | EC002 | 50.00% |

Exhibit II-A

Exhibit II-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| BRETON SOUND 41 | BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 10.0% | TERMIN |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 25.0% | TERMIN |
| EAST CAMERON 257 | EC 257 | G21580 | Federal | OP 1 | 7/1/2000 | 2/2/2018 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 241 | G01772 | Federal | OP 1 | 7/1/1968 | 8/2/2014 | 1,440 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 241 | G01773 | Federal | RT | 7/1/1968 | 8/2/2014 | 1,440 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 255 | G01777 | Federal | RT | 7/1/1968 | 4/3/1998 | 5,760 | Fieldwood En Off | 100.0% | TERMIN |
| GRAND ISLE 83 | GI 83 | G03793 | Federal | RT | 6/1/1978 | 11/26/2019 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| HIGH IS. A-446 | HI A-446 | G02359 | Federal | RT | 8/1/1973 | 4/12/2016 | 5,760 | Bandon O&G | 100.0% | TERMIN |
| HIGH ISLAND A-446 | HI A-447 | G02360 | Federal | RT | 8/1/1973 | 9/4/2010 | 5,760 | Bandon O&G | 100.0% | TERMIN |
| MAIN PASS 154 | MP 154 | G10902 | Federal | RT | 7/1/1989 | 7/29/2000 | 4,995 | Fieldwood En Off | 100.0% | TERMIN |
| MAIN PASS 29/112/114/116/118/125 | MP 112 | G09707 | Federal | RT | 6/1/1988 | 4/19/2017 | 4,995 | Fieldwood En Off | 100.0% | RELINQ |
| SOUTH MARSH IS. 39 | SM 39 | G16320 | Federal | RT | 7/1/1996 | | 5,000 | Fieldwood En Off | 50.0% | PROD |
| SOUTH TIMBALIER 242 | ST 242 | G23933 | Federal | RT | 6/1/2002 | 5/7/2019 | 5,000 | Fieldwood En Off | 60.0% | TERMIN |
| VERMILION 315/332 | VR 314 | G05438 | Federal | OP 2 | 7/1/1983 | | 5,000 | Fieldwood En Off | 50.0% | PROD |
| VERMILION 315/332 | VR 315 | G04215 | Federal | OP 1 | 1/1/1980 | 3/7/2012 | 5,000 | Dynamic Off Res | 50.0% | TERMIN |
| VERMILION 315/332 | VR 332 | G09514 | Federal | OP 1 | 7/1/1988 | | 5,000 | Fieldwood En | 67.0% | PROD |
| VERMILION 315/332 | VR 332 | G09514 | Federal | RT | 7/1/1988 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| VERMILION 315/332 | VR 333 | G14417 | Federal | RT | 7/1/1994 | 11/29/1999 | 4,201 | Fieldwood En Off | 67.0% | TERMIN |
| VIOSCA KNOLL 113 | VK 113 | G16535 | Federal | RT | 6/1/1996 | 2/23/2020 | 5,760 | Fieldwood En Off | 100.0% | TERMIN |
| VIOSCA KNOLL 251/340/384 | VK 251 | G10930 | Federal | OP 1 | 7/1/1989 | | 5,760 | Fieldwood En Off | 100.0% | UNIT |
| VIOSCA KNOLL 251/340/384 | VK 340 | G10933 | Federal | OP 1 | 7/1/1989 | | 5,760 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 100 | WC 100 | G22510 | Federal | RT | 7/1/2001 | 6/13/2018 | 5,000 | Fieldwood En Off | 100.0% | RELINQ |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |

**Exhibit II-B**

Exhibit II-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 257 #001 | EC25701 | G21580 | 177044102500 |
| GALVESTON 241 #A005 | GA241A05 | G01772 | 427064001500 |
| GALVESTON 241 #A006 | GA241A06 | G01773 | 427064001700 |
| GALVESTON 241 #A010 | GA241A10 | G01773 | 427064001402 |
| GALVESTON 255 #A002 | GA255A02 | G01777 | 427063002300 |
| GALVESTON 255 #A003 | GA255A03 | G01777 | 427064000500 |
| GRAND ISLE 083 #A002 | GI083A02 | G03793 | 177174011002 |
| GRAND ISLE 083 #A003 | GI083A03 | G03793 | 177174030200 |
| GRAND ISLE 083 #B001 | GI083B01 | G03793 | 177174097400 |
| GRAND ISLE 083 #B002 | GI083B02 | G03793 | 177174098000 |
| GRAND ISLE 083 #B003 | GI083B03 | G03793 | 177174098100 |
| HIGH ISLAND A-446 #A001 | HIA446A01 | G02359 | 427094055400 |
| HIGH ISLAND A-446 #A002B | HIA446A02 | G02360 | 427094055700 |
| HIGH ISLAND A-446 #A004 | HIA446A04 | G02359 | 427094056300 |
| HIGH ISLAND A-446 #A005 | HIA446A05 | G02359 | 427094055700 |
| HIGH ISLAND A-446 #A006 | HIA446A06 | G02359 | 427094056700 |
| HIGH ISLAND A-446 #A007 | HIA446A07 | G02359 | 427094056800 |
| HIGH ISLAND A-446 #A008 | HIA446A08 | G02359 | 427094057400 |
| HIGH ISLAND A-446 #A009 | HIA446A09 | G02359 | 427094060200 |
| HIGH ISLAND A-446 #A010 | HIA446A10 | G02359 | 427094058300 |
| HIGH ISLAND A-446 #A011 | HIA446A11 | G02359 | 427094058700 |
| HIGH ISLAND A-446 #A012 | HIA446A12 | G02359 | 427094059400 |
| HIGH ISLAND A-446 #A014 | HIA446A14 | G02359 | 427094060900 |
| HIGH ISLAND A-446 #A015 | HIA446A15 | G02359 | 427094061300 |
| HIGH ISLAND A-446 #A016 | HIA446A16 | G02359 | 427094062300 |
| MAIN PASS 154 #A001 | MP154A01 | G10902 | 177244060400 |
| MAIN PASS 154 #A002 | MP154A02 | G10902 | 177244060900 |
| SOUTH MARSH IS 039 #A001 | SM039A01 | G16320 | 177074077000 |
| SOUTH MARSH IS 039 #B001 | SM039B01 | G16320 | 177074074702 |
| SOUTH MARSH IS 039 #B002 | SM039B02 | G16320 | 177074076102 |
| SOUTH MARSH IS 039 #C001 | SM039C01 | G16320 | 177074077900 |
| SOUTH MARSH IS 039 #C002 | SM039C02 | G16320 | 177074078000 |
| SOUTH MARSH IS 039 #C003 | SM039C03 | G16320 | 177074078200 |
| SOUTH MARSH IS 039 #C004 | SM039C04 | G16320 | 177074810200 |
| SOUTH TIMBALIER 242 #A001 | ST242A01 | G23933 | 177164032800 |
| VERMILION 314 #A009 | VR314A09 | G05438 | 177064076900 |
| VERMILION 332 #A001 | VR332A01 | G09514 | 177064069400 |
| VERMILION 332 #A002 | VR332A02 | G09514 | 177064069900 |
| VERMILION 332 #A003 | VR332A03 | G09514 | 177064072300 |
| VERMILION 332 #A005 | VR332A05 | G09514 | 177064077802 |
| VERMILION 332 #A006 | VR332A06 | G09514 | 177064077901 |
| VERMILION 333 #A004 | VR333A04 | G14417 | 177064072600 |
| VIOSCA KNOLL 113 #A001 | VK113A01 | G16535 | 608164039101 |
| VIOSCA KNOLL 251 #A001 | VK251A001 | G10930 | 608164029800 |
| VIOSCA KNOLL 251 #A002 | VK251A002 | G10930 | 608164034501 |
| VIOSCA KNOLL 251 #A003 | VK251A003 | G10930 | 608164041500 |
| VIOSCA KNOLL 251 #A004 | VK251A004 | G10930 | 608164042101 |
| VIOSCA KNOLL 340 #A001 | VK340A01 | G10933 | 608164038800 |

**Exhibit II-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VIOSCA KNOLL 340 #A002 | VK340A02 | G10933 | 608164044400 |
| WEST CAMERON 100 #A001 | WC100A01 | G22510 | 177004112100 |
| WEST CAMERON 100 #A002 | WC100A02 | G22510 | 177004112602 |
| WEST CAMERON 100 #A003 | WC100A03 | G22510 | 177004117102 |
| WEST CAMERON 100 #A004 | WC100A04 | G22510 | 177004118100 |
| WEST CAMERON 290 #002 | WC29002 | G04818 | 177014018400 |
| WEST CAMERON 290 #A001 | WC290A0100 | G04818 | 177014020700 |
| WEST CAMERON 290 #A002 | WC290A0200 | G04818 | 177014024200 |
| WEST CAMERON 290 #A003 | WC290A0300 | G04818 | 177014029100 |

**Exhibit II-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EAST CAMERON 257 P/F-A | EC257PFA | G21580 | EC257 | 100.0% |
| GALVESTON 255 P/F-A | GA255PFA | G01777 | GA255 | 100.0% |
| GRAND ISLE 083 P/F-A | GI083PFA | G03793 | GI083 | 100.0% |
| GRAND ISLE 083 P/F-B | GI083PFB | G03793 | GI083 | 100.0% |
| HIGH ISLAND A-446 P/F-A | HIA446PFA | G02359 | HIA446 | 100.0% |
| MAIN PASS 154 P/F-A | MP154PFA | G10902 | MP154 | 100.0% |
| SOUTH MARSH IS 039 P/F-A | SM039PFA | G16320 | SM039 | 100.0% |
| SOUTH MARSH IS 039 P/F-B | SM039PFB | G16320 | SM039 | 100.0% |
| SOUTH MARSH IS 039 P/F-C | SM039PFC | G16320 | SM039 | 100.0% |
| SOUTH TIMBALIER 242 P/F-A | ST242PFA | G23933 | ST242 | 60.0% |
| VERMILION 315 P/F-A | VR315PFA | G04215 | VR315 | 100.0% |
| VERMILION 315 P/F-A-AUX | VR315PFAAU | G04215 | VR315 | 100.0% |
| VERMILION 332 P/F-A | VR332PFA | G09514 | VR332 | 80.2% |
| VIOSCA KNOLL 113 P/F-A | VK113PFA | G16535 | VK113 | 100.0% |
| VIOSCA KNOLL 251 P/F-A | VK251PFA | G10930 | VK251 | 100.0% |
| VIOSCA KNOLL 251 P/F-A-AUX | VK251PFAAU | G10930 | VK251 | 100.0% |
| VIOSCA KNOLL 340 P/F-A | VK340PFA | G10933 | VK340 | 100.0% |
| WEST CAMERON 100 P/F-A | WC100APLT | G22510 | WC100 | 100.0% |
| WEST CAMERON 289 P/F-A-PROCESS | WC289APROC | G04818 | WC289 | 0.0% |

**Exhibit II-C(ii)**

None

Exhibit II-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G21142 |
| 5911 | Bandon Oil and Gas, LP | GI | 83 | A | GI | 82 | 16 SSTI | 6 | GAS | Permitted for Abandonment | G04355 | G03793 |
| 9006 | Fieldwood Energy, LLC | MP | 112 | #02 | MP | 117 | 08 SSTI | 6 | BLKG | Permitted for Abandonment Approved | G11738 | G09707 |
| 15220 | Fieldwood Energy Offshore LLC | ST | 242 | A | SS | 283 | 24 SSTI | 8 | G/C | Permitted for Abandonment | G26891 | G23933 |
| 19427 | Fieldwood Energy, LLC | VK | 113 | A | CA | 43 | A | 4 | BLKG | | G29321 | G16535 |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Out of Service | G28704 | G10930 |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Active | G22465 | G10930 |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 |
| 7298 | Dynamic Industries, Inc | VR | 315 | A | VR | 331 | 06 SSTI | 6 | OIL | Out of Service | G07545 | G04215 |
| 10736 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 8 | BLKG | Out of Service | G15672 | G09514 |
| 10737 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 6 | LIFT | Out of Service | G15673 | G09514 |
| 14210 | Fieldwood Energy Offshore LLC | WC | 100 | A | WC | 102 | 30" SSTI | 8 | G/C | Permitted for Abandonment | G24699 | G22510 |
| 13864 | Fieldwood Energy, LLC | WC | 100 | A | WC | 102 | 30 SSTI | 8 | G/C | Permitted for Abandonment Approved | G24253 | G22510 |
| 8621 | Bandon Oil and Gas, LP | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 |

**Exhibit II-D(ii)**

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| GA | 255 | A | 10050 | G30195 | G01777 | Fieldwood Energy Offshore LLC | 06/12/13 | GA 241 A005 & B004 |
| MP | 154 | A | 24171 | G30337 | G10902 | Fieldwood Energy Offshore LLC | 02/03/17 | MP 154 A001 & A002 |
| VR | 315 | A | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | VR 332 A001, A002, A005 & A006 |
| VR | 315 | A-AUX | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | Production from VR 315 A RUE |
| WC | 289 | A-PROCESS | 23036 | G14262 | G04818 | Fieldwood Energy LLC | 12/03/93 | ROW accessory PF WC 289 A |

**Exhibit II-E**

None

Exhibit II-F

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 |
| Land | 7/2/1986 | FARMOUT AGREEMENT | Farmout Agreement 7/2/1986 |
| Land | 1/1/1987 | Joint Operating Agreement | Joint Operating Agreement 1-1-87 |
| Land | 5/7/1993 | Letter Agreement | Letter Agmt. dated 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. |
| Land | 6/1/1993 | FO | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil Coporation. |
| Land | 6/11/1993 | Joint Operating Agreement | Operating Agreement eff. 6-11-1993 b/b Samedan Oil Corporation and British Borneo Exploration Inc., et al |
| Land | 1/21/1994 | Unit Operating Agreement | Unit Operating Agreement for the Viosca Knoll .252 Unit, by and between Samedan Oil Corporation, as Operator, and Continental Land &'Fur Co., Inc., dated effective January 21,1994. Preferential Right to Purchase - 15 Days. (Section 26.2) |
| Land | 2/11/1994 | Unit Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on theViosca Knoll 252 Unit designated Contract No. 754394013, by the Minerals Management Service, dated effective February 11, 1994, executed by Samedan Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc.(as a working interest owner). |
| Land | 6/6/1994 | Letter Agreement | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and.recognizes the Unit Operating Agreement, dated January 21, 1994 for the Viosca Knoll 252 Unit |
| Land | 6/9/1994 | Letter Agreement | Letter Agreement, dated June 9, 1994, by and between Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. |
| Land | 9/20/1995 | OA | Operating Agreement eff. 9-20-95 b/b Samedan and Walter |
| Land | 7/1/1996 | JOA | 7.1.1996 SM 39 Joint Operating Agreement, as amended |
| Land | 7/7/1997 | Letter Agreement | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation,concerning of the OCSTG 10930 Well #1 in Viosca Knoll Block 251 to a proposed depth of 22,500' and certain earning and assignment provisions, more fully described therein. |
| Land | 11/18/1999 | Letter Agreement | Letter Agreement, dated November. 18, 1999, by and between Chevron U.S.A. Inc. and Samedan Oil Corporatidri being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning Subpart (i;) of Section m. "Overhead", andimade effective January 1,2000. |
| Land | 8/5/2000 | Transfer Agreement | Transfer of Ownership and Title Agreement, made and entered into August 5, 2000, by and between Bonray,Inc.; Energen Resources Corporation; Forcenergy Inc; Gardner Offshore Corporation; Gulfstar Energy, Inc,;; Gulfstream Energy Services, Inc.; Liberty Energy Gulf Corporation; Range Energy Ventures Corporation; and V.Saia Energy Interests, Inc., as Seller, to Range Resources Corporation and Chevron U.S.A. Inc., concerning the sale of the Main Pass Block 154 Platform "A" and the wells OCS-G 10902 No. A001 and OCS-G 10902 No. A002, all as more fully described in said document. |
| Land | 8/5/2000 | ABOS | Bill of Sale, Conveyance and Quit Claim, dated'effective August 5, 2000, from Energen Resources Corporation to Chevron •U.S.A. Inc., covering Energeh's right, title 'and interests in and to the.'Main Pass Block 154 Platform"A" and the wells OCS-G 10902. No. A001 and OCS-G 10902 No. A002. all as more fully described in said document. |
| Land | 10/23/2000 | Letter Agreement | Letter Agreement, dated October 23, 2000, between Range Resources Corporation and Chevron U.S.A. Inc.,entitled "Annual Reciprocity Notice Regarding Conveyance to Chevron U.S.A. Inc. of Main Pass Block 154, South and East Addition Platform "A" arid Two'Wells Thereon, Federal OCS, Offshore Alabama." |
| Land | 12/8/2000 | Letter Agreement | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc.and Williams Field Services - Gulf COperating Agreementst Company, L.P., whereby Chevron U.S.A. Inc. consents to an assignment by Williams Field Services - Gulf COperating Agreementst Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. |
| Land | 1/11/2001 | LETTER AGREEMENT | Letter, dated January 11, 2001, from the United States Department of the Interior, Minerals Management Serviceto Chevron U.S.A. Inc., approving the initial participating area plat and Exhibit C for the Viosca Knoll 252 Unit,Agreement No. 754394013, effective November 8, 2000 |
| Land | 11/1/2001 | Letter Agreement | Letter Agreement, dated November 1, 2001, between Range Resources Corporation and Chevron U.S^A. Inc.,entitled "Satisfaction and Accord of Seller's P&A Obligation, Release and Discharge of Surety Bond Requirement, Amwest Surety Bond No. 15005293, Main Pass Block 154, So. and East Add." |
| Land | 11/3/2001 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 1/9/2002 | Letter Agreement | Letter, dated January 9, 2002, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving.a revision to the participating area plat and Exhibit C for the Viosca Knoll 252 Unit, Agreement No. 754394bl'3, effective December 1, 2001. |
| Land | 3/1/2002 | FO | Farmout Agmt. eff. 3-1-2002 b/b Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) |
| Land | 6/9/2003 | PA | Participation Agmt. eff. 6-9-2003 b/b Samedan Oil Corporation and CLK Company |
| Land | 8/7/2003 | PA | Exploration Participation Agreement, dated August 7, 2003, by and between Chevron U.S.A. Inc. and'Westport Resources Corporation, as amended, concerning certain Offshore Continental Shelf properties, all as is more fully, provided'for and described therein. |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 5/28/2004 | Letter Agreement | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit Cfor theVIosca Knoll 252 Unit, Agreement No. 754394013, effective December 1, 2003. |
| Land | 8/1/2004 | Unit Operating Agreement | Amendment and Supplement to?Unit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1,2004, by and between Chevron UiS.A. Inc. and-Noble Energy, Inc |
| Land | 9/1/2004 | JOA | Operating Agreement eff. 9-1-04 |

| Land | 10/14/2004 | Letter Agreement | Letter Agreement, dated October. 14, 2004, between Ghevron U.S.A. Inc. and Noble Energy,.Inc. concerning Production Handling Agreement Terin's, Viosca Knoll 251 "A' PlatfomvCadillacProspect and any Other Future Non-unit Production |
| Land | 10/28/2004 | PSA | PSA dated 10-28-2004 but eff. 7-1-2004 B/B Eni Deepwater LLC and Northstar Gulfsands, LLC |
| Land | 11/1/2004 | PA | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company, concerning certain Offshore Continental Shelf properties, all as is more fully provided for and described therein |
| Land | 11/18/2004 | Letter Agreement | Letter Agreement, dated November 18; 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, amendihg'the;terms of Letter Agreement•,dated October f4, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terms, Viosca knoll.251 "A"' Platform, Cadillac Prospect and any Other Future Non-unit Production: |
| Land | 11/1/2005 | Partition and Redemption Agreement | Partition and Redemption Agmt. dated 11-1-2005 b/b Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. |
| Land | 11/7/2005 | Unit Agreement | Amendment to Unit Agreement, Viosca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007, but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) |
| Land | 12/20/2005 | Letter Agreement | Letter agreement, dated December 20, 2005, between Noble Energy, Inc. and Ghevron U.S.A. Inc., being a consent.to.disclose confidential data |
| Land | 3/1/2006 | ABOS | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 1/10/2007 | Letter Agreement | Letter dated January 10, 2007, from the.United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision Exhibits "A", "B" and "C" reflecting a change in the Unit Area due to contraction provisions in the Viosca Knoll 252 Unit, Agreement No. 754394013. |
| Land | 7/7/2008 | Acquisition | Stock Purchase Agmt dated July 7, 2008 b/b Northstar E&P, LP and Dynamic Offshore Resources, LLC |
| Land | 7/7/2008 | Letter Agreement | VR 332 A5 Letter Agmt dated July 7, 2008 b/b Northstar Interests, L.C. and Dynamic Offshore Resources, LLC |
| Land | 8/1/2011 | ABOS | ABOS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assingor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 5/2/2012 | Letter Agreement | Letter, dated May 2, 2012 between Newfield Exploration Company and Chevron U.S.A. Inc., being a waiver of confidentiality provision grant by Chevron in favor of Newfield; |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 10/15/2014 | Release and Settlment Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, Prime Offshore L.L.C., Tammany Oil and Gas LLC and Castex Offshore, Inc. |
| Land | 4/2/2015 | Consent to Disclose Confidential Information | by and between Fieldwood Energy LLC,  Bandon Oil and Gas, LP and Chevron U.S.A. Inc.: VK 252 Unit Area |
| Land | 8/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340   Fields |
| Land | 10/15/2015 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC and Fairways Offshore Exploration, Inc. : Release and Settlement Agreement |
| Land | 12/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC, ENI US Operating Inc,  and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petrolem US LLC: Release and Settlement Agreement |
| Land | 8/1/2016 | Letter Agreement | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/1/2016 | Letter Agreement | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/4/2016 | Letter of No Objection | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/4/2016 | Letter of No Objection | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 10/1/2016 | ABOS | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: |
| Land | 11/21/2016 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: Offer to Purchase GS E &R America Offshore, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 9/19/2017 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: Offer to Purchase SCL Resources, LLC'S Interest in GI 94, SS 79, VR 332 and WD 34 |
| PHA VR 315/VR 332 A01and VR 333 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and CANNAT ENERGY INC. and CANNAT ENERGY INC. |
| PHA VR 315/VR 332A02 and VR 333 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and CANNAT ENERGY INC. and CANNAT ENERGY INC. |
| PHA VR 315/VR 332A05 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and ANKOR E&P HOLDINGS CORPORATION and ANKOR E&P HOLDINGS CORPORATION |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-22 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 6/14/2000 | FACILITIES OPERATING AND MAINTENANCE AGMT | WIL174 O&MN FEE-VK251A  by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 12/12013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT Transport &  Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate - $.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT Retrograde & Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate - $.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT PTR & Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate - $.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Third Coast Midstream LLC  (formerly Panther Operating Company, LLC)  and Third Coast Midstream LLC  (formerly Panther Operating Company, LLC) |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem ownedl hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem ownedl hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem ownedl hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0065 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |

| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 10/1/2010 | PROCESSING AGREEMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 11/1/2010 | PROCESSING AGREEMENT- 1ST AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/24/2012 | PROCESSING AGREEMENT- 2ND AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 10/1/1995 | CONTRUCTION/OPERATING (NI) | CONTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 9/1/2010 | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/18/2010 | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 12/1/2010 | BALLOT TO AMEND EXHIBIT E TO C&O AGREEMENT | BALLOT TO AMEND EXHIBIT E TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 6/1/2012 | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/2012 | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/2012 | APPROVAL OF AFES TO C&O AGREEMENT | APPROVAL OF AFES TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 9/25/2013 | BALLOT TO C&O AGREEMENT | BALLOT TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/6/2013 | REVISED EXHIBIT C TO C&O AGREEMENT | REVISED EXHIBIT C TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 12/1/2000 | SERVICE-DEHYDRATION (NI) | SERVICE-DEHYDRATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/1/2000 | SERVICE-FRACTIONATION (NI) | SERVICE-FRACTIONATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/1992 | BASE | BASE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/1995 | CONSTRUCTION/OPERATING (NI) | CONSTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/13/1998 | RAW MAKE | RAW MAKE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 11/13/1998 | AMENDMEMT | AMENDMEMT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/31/2001 | LIQ EXCHANGE | LIQ EXCHANGE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/1/2005 | GAS PROCESSING AGREEMENT | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/20/2008 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Environmental/Govt | 6/24/2019 | Master Services Contract | – IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 10/2/2019 | Software License Agreement | IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 11/19/2018 | Master Service Contract | Regulatory |
| Environmental/Govt | 11/1/2013 | Master Services Contract | Platform Audits / BSEE Drawings |
| Environmental/Govt | 10/30/2019 | Master Client Agreement | Industry Standards, Analytics, and Research / Subscription Service |
| Environmental/Govt | 11/15/2019 | Order Form | Industry Standards, Analytics, and Research / Subscription Service |
| Land | 10/1/2003 | PSA | By and Between UNOCAL, Pure Resources, L.P., Pure Partners, L.P. and SPN Resources, LLC (Fieldwood SP) |
| Land | 5/16/2001 | JOA | Unocal and Callon dated 5/16/2001 but effective 2/14/2001 |
| Land | 8/1/2010 | JOA | Amdt to JOA dated 5/16/2001 by and between Unocal and Callon |
| Land | 11/28/1979 | OA | McMoRan et al |
| Land | 2/18/2000 | OA | b/b Chevron and Samedan |

**Exhibit II-G**

None

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MYETTE POINT - ONSHORE | -- | 14519 | SL - TX | WI | -- | -- | -- | -- | 50.0% | UNIT |
| MYETTE POINT - ONSHORE | -- | 14520 | SL - TX | WI | -- | -- | -- | -- | 50.0% | UNIT |
| MYETTE POINT - ONSHORE | -- | 14914 | SL - TX | WI | -- | -- | -- | -- | 65.6% | UNIT |
| SOUTH PASS 42/43 FED / SL LA | -- | 16869 | SL - LA | WI | -- | -- | -- | -- | 100.0% | PROD |
| EUGENE ISLAND 010 (SL 19269) - (SL LA) | -- | 19266 | SL - LA | WI | -- | -- | -- | -- | 17.3% | ACTIVE |
| FRANKLIN GAP | -- | JMB Partnership | Onshore | | 2/6/2019 | | | | 100.0% | -- |
| FRANKLIN GAP | -- | JMB Partnership | Onshore | | 2/25/2018 | | | | 100.0% | -- |
| FRANKLIN GAP | -- | Richardson A Caffery et al | Onshore | | 2/1/2016 | | | | 100.0% | -- |
| FRANKLIN GAP | -- | Caroline Baker Trust No 1 | Onshore | | 1/22/2016 | | | | 100.0% | -- |
| ONSHORE/ STATE LEASE | -- | 19051 | SL - LA | ORRI | 8/9/2006 | | | | 0.2% | UNIT |
| WEST CAMERON 009 (SL LA) | -- | 18287 | SL - LA | WI | -- | -- | -- | -- | 44.2% | -- |
| | -- | 17072 | SL - LA | WI | -- | -- | -- | -- | 37.8% | ACTIVE |
| | -- | 42450 | SL - LA | WI | -- | -- | -- | Fieldwood Onshore | 62.5% | TERMINATED |
| | -- | 490100 | SL - LA | WI | -- | -- | -- | iRidge Exploration & Produc | 100.0% | SCOPING |
| STATE TRACT 773 | -- | 111650 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.2% | ACTIVE |
| STATE TRACT 773 | -- | 115727 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.0% | ACTIVE |
| STATE TRACT 773 | -- | 114988 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.0% | ACTIVE |
| | -- | 19334 | SL - TX | WI | -- | -- | -- | Elliott Oil & Gas Operating | 75.0% | INJECTION |
| | -- | 136449 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.0% | ACTIVE |
| | -- | 09061 | SL - TX | WI | -- | -- | -- | Landon Browning | 33.3% | TERMIN |
| | -- | 168986 | SL - TX | | -- | -- | -- | Fieldwood Onshore | 100.0% | TERMIN |
| | -- | 189098 | SL - TX | | -- | -- | -- | Fieldwood Onshore | 100.0% | TERMIN |
| | -- | 206882 | SL - TX | | -- | -- | -- | Fieldwood Onshore | 100.0% | TERMIN |
| BRETON SOUND 52/53 FED / SL LA | -- | 03770 | SL - LA | WI | -- | -- | -- | -- | 50.0% | UNIT |
| BRAZOS A-102/A-105 | BA A-102 | G01754 | Federal | RT | 6/1/1968 | 6/14/2020 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT A | 7/1/1968 | | 5,760 | Fieldwood En | 87.5% | PROD |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT B | 7/1/1968 | | 5,760 | Fieldwood En | 100.0% | PROD |
| BRAZOS A-133 | BA A-133 | G02665 | Federal | RT | 7/1/1974 | | 5,760 | GOM Shelf | 25.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 158 | G02645 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 66.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 159 | G02646 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 66.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 160 | G02647 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 100.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 161 | G02648 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 100.0% | PROD |
| EAST BREAKS 165 | EB 165 | G06280 | Federal | RT | 10/1/1983 | | 5,760 | Fieldwood SD Off | 100.0% | UNIT |
| EAST BREAKS 165 | EB 209 | G07397 | Federal | RT | 9/1/1984 | | 5,760 | Fieldwood SD Off | 100.0% | UNIT |
| EAST CAMERON 330 | EC 330 | G03540 | Federal | OP 1 | 8/1/1977 | 2/8/2017 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EAST CAMERON 331/332 | EC 331 | G08658 | Federal | OP 1 | 8/1/1987 | | 5,000 | Fieldwood En | 92.8% | TERMIN |
| EAST CAMERON 331/332 | EC 331 | G08658 | Federal | OP 2 | 8/1/1987 | | 5,000 | Fieldwood En | 92.8% | TERMIN |
| EAST CAMERON 331/332 | EC 332 | G09478 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En Off | 88.0% | TERMIN |
| EAST CAMERON 331/332 | EC 332 | G09478 | Federal | OP 1 | 5/1/1988 | | 5,000 | Fieldwood En Off | 88.0% | TERMIN |
| EAST CAMERON 349 | EC 349 | G14385 | Federal | OP 1 | 5/1/1994 | | 5,000 | W & T Off | 25.0% | PROD |
| EAST CAMERON 349 | EC 350 | G15157 | Federal | OP 1 | 9/1/1995 | 12/27/2001 | 5,000 | W & T Off | 25.0% | TERMIN |
| EAST CAMERON 349 | EC 356 | G13592 | Federal | RT | 9/1/1992 | 12/29/1999 | 5,000 | Fieldwood En | 25.0% | TERMIN |
| EAST CAMERON 371 | EC 371 | G02267 | Federal | CONT | 2/1/1973 | 3/31/2010 | 5,000 | Talos ERT | 25% | TERMIN |
| EUGENE IS. 100 | EI 100 | 00796 | Federal | Contractual | 5/1/1960 | -- | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 175 | 00438 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 25.0% | PROD |
| EUGENE IS. 307 | EI 307 | G02110 | Federal | RT | 2/1/1971 | 11/4/2019 | 2,500 | Fieldwood En Off | 25.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 311 | G27918 | Federal | RT | 7/1/2006 | 9/27/2012 | 5,000 | Dynamic Off Res | 60.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | OP 1 | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| EUGENE IS. 32 | EI 32 | 00196 | Federal | OP 1 | 11/26/1946 | | 5,000 | Cox Op | 23.7% | PROD |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | Contractual | 1/1/1971 | | 5,000 | Fieldwood En | 17.0% | UNIT |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT A | 2/1/1973 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 1.1% | TERMIN |
| EUGENE IS. 62/63/77 | EI 63 | 00425 | Federal | RT | 12/1/1954 | 10/20/2003 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| EWING BANK 782/826 / ST 291 | EW 782 | G05793 | Federal | CONT | 7/1/1983 | 3/25/1994 | 1093 | Fieldwood En | 100.0% | TERMIN |
| GALVESTON 151 | GA 151 | G15740 | Federal | RT | 11/1/1995 | 4/12/2016 | 4,804 | Fieldwood En | 33.0% | TERMIN |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 1 | 12/1/2003 | | 5,760 | Fieldwood En | 16.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | | 5,760 | Fieldwood En | 33.0% | PROD |
| GALVESTON A-155 | GA A-155 | G30654 | Federal | RT | 10/1/2006 | 5/14/2018 | 5,760 | Peregrine O&G | 10.8% | TERMIN |
| GREEN CANYON 157 | GC 157 | G24154 | Federal | RT | 6/1/2002 | 8/15/2020 | 5760 | LLOG Exp Off | 15.0% | TERMIN |
| GREEN CANYON 157 | GC 201 | G12210 | Federal | OP | 5/1/1990 | | 5760 | Fieldwood En Off | 15.0% | UNIT |
| GREEN CANYON 200 (Troika) | GC 245 | G05916 | Federal | CONT | 7/1/1983 | | 5760 | Fieldwood En Off | 100.0% | UNIT |
| GREEN CANYON 64/65/108/109/243 | GC 64 | G07005 | Federal | CONT | 6/1/1984 | 5/29/1998 | 5760 | Fieldwood Off | 49.0% | RELINQ |
| HIGH IS. A-341 | HI A-341 | G25605 | Federal | RT | 12/1/2003 | | 5,760 | Fieldwood En | 40.0% | PROD |
| HIGH IS. A-365/A-376 | HI A-365 | G02750 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 49.6% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02754 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 55.4% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-382 | G02757 | Federal | RT | 8/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-474 | HI A-474 | G02366 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH ISLAND A-474/489 | HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 12/25/1999 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH IS. A-474 | HI A-489 | G02372 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH ISLAND A-510 | HI A-531 | G02696 | Federal | OP 1 | 7/1/1974 | 11/6/2016 | 5,760 | Fieldwood En Off | 75.0% | TERMIN |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | RT | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | OP 1 | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | OP 2 | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-563 | G02388 | Federal | RT | 8/1/1973 | | 5,760 | Cox Op | 2.0% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-564 | G02389 | Federal | OP 1 | 8/1/1973 | 4/18/1998 | 5,760 | Fieldwood En | 24.1% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-572 | G02392 | Federal | RT | 8/1/1973 | 5/18/2006 | 5,760 | Fieldwood En | 24.1% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-573 | G02393 | Federal | RT | 8/1/1973 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-581 | G18959 | Federal | RT | 12/1/1997 | 7/1/2005 | 5,760 | Cox Op | 2.0% | TERMIN |
| HIGH IS. A-563 (563/564/581/582) | HI A-582 | G02719 | Federal | OP 1 | 7/1/1974 | | 5,760 | Cox Op | 2.3% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-595 | G02721 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-596 | G02722 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| MOBILE BAY 861 | MO 861 | G05062 | Federal | RT | 4/1/1982 | 10/13/2009 | 5,198 | Providence Res GOM 2 | 100.0% | TERMIN |
| MOBILE BAY 861 | MO 861 | G05062 | Federal | OP 1 | 4/1/1982 | 10/13/2009 | 5,198 | Providence Res GOM 2 | 50.0% | TERMIN |
| MAIN PASS 101 | MP 101 | G22792 | Federal | RT | 7/1/2001 | 9/5/2014 | 4,995 | Fieldwood En Off | 77.5% | TERMIN |
| MAIN PASS 109 | MP 109 | G22794 | Federal | OP 1 | 7/1/2001 | 4/1/2016 | 4,995 | W & T Off | 33.3% | TERMIN |
| MAIN PASS 109 | MP 109 | G22794 | Federal | OP 2 | 7/1/2001 | 4/1/2016 | 4,995 | W & T Off | 33.3% | TERMIN |
| MAIN PASS 77 | MP 77 | G04481 | Federal | RT | 11/1/1980 | | 4,655 | Fieldwood En Off | 73.8% | RELINQ |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 5/23/2018 | 5,000 | ANKOR En | 2.0% | TERMIN |
| VERMILION 272 / SOUTH MARSH 102 | SM 102 | G24872 | Federal | RT | 5/1/2003 | | 3,113 | Fieldwood En Off | 100.0% | PROD |
| SOUTH MARSH IS. 132 | SM 132 | G02282 | Federal | RT | 2/1/1973 | 4/1/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 135 | G19776 | Federal | RT | 5/1/1998 | 2/18/2012 | 3,293 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G02588 | Federal | RT | 5/1/1974 | 8/4/2019 | 2,500 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 137 | G02589 | Federal | RT | 5/1/1974 | 6/30/2015 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 139 | G21106 | Federal | OP 1 | 7/1/1999 | 8/22/2020 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 142 | G01216 | Federal | RT | 6/1/1962 | 8/7/2020 | 2,761 | Fieldwood En | 86.1% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 142 | G01216 | Federal | OP 1 | 6/1/1962 | 8/7/2020 | 2,761 | Fieldwood En | 86.1% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 143 | G01217 | Federal | CONT | 5/1/1962 | 7/17/1997 | 2,738 | Fieldwood En | 16.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 146 | G09546 | Federal | RT | 7/1/1988 | 6/1/2017 | 5,000 | Dynamic Off Res | 100.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 147 | G06693 | Federal | RT | 7/1/1984 | 1/14/2011 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 150 | G16325 | Federal | RT | 6/1/1996 | 5/22/2018 | 3,329 | Fieldwood En | 50.0% | RELINQ |
| SOUTH MARSH IS. 268/269/280/281 | SM 268 | G02310 | Federal | RT | 9/1/1973 | 9/7/2009 | 3,237 | Fieldwood En | 30.1% | TERMIN |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 17.7% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 9.1% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 0.4% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 1 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 3 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 281 | G02600 | Federal | RT | 4/1/1974 | | 3,214 | Fieldwood En | 31.9% | PROD |

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH MARSH IS. 66 | SM 66 | G01198 | Federal | RT | 6/1/1962 | 9/25/2019 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |
| VERMILION 272 / SOUTH MARSH 102 | SM 87 | G24870 | Federal | RT | 5/1/2003 | | 3,077 | Castex Off | 100.0% | PROD |
| SOUTH PASS 60 | SP 17 | G22938 | Federal | RT | 11/1/1974 | | 962 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 37 | SP 37 | 00697 | Federal | OP 1 | 10/1/1959 | -- | 2,500 | Whitney O&G | 44.0% | PROD |
| SOUTH PASS 42/43 FED / SL LA | SP 42 | 03011 | SL-LA | WI | | -- | -- | | 100.0% | SOP |
| SOUTH PASS 60 | SP 59 | G02942 | Federal | RT | 11/1/1974 | | 1,657 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 59 | G02943 | Federal | RT | 11/1/1974 | | 907 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 59, SP 60 | G01608 | Federal | RT | 7/1/1967 | | 3,510 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 6 | G03337 | Federal | RT | 4/1/1976 | | 318 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 6 | G03337 | Federal | OP | 4/1/1976 | | 318 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 60 | G02137 | Federal | RT | 11/1/1971 | | 1,762 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | OP 1 | 7/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 66 | G01611 | Federal | RT | 6/1/1967 | | 4,310 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 67 | G01612 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 1 | 1/1/1955 | 2/25/2020 | 5,000 | W & T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | RT | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 169 | 00820 | Federal | RT | 4/1/1960 | | 5,000 | Fieldwood En | 33.3% | PROD |
| SHIP SHOAL 177 | SS 177 | 00590 | Federal | RT | 9/1/1955 | | 5,000 | W & T Off | 25.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | OP 5 | 12/1/1979 | | 5,000 | Fieldwood En | 1.0% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 20.9% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 0.2% | PROD |
| SHIP SHOAL 190/206/216 | SS 206 | G01522 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 40.0% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 27.5% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | UNIT |
| SHIP SHOAL 214 | SS 214 | 00828 | Federal | RT | 5/1/1960 | | 5,000 | W & T Off | 35.5% | PROD |
| SHIP SHOAL 214 | SS 214 | 00828 | Federal | OP 1 | 5/1/1960 | | 5,000 | W & T Off | 13.5% | PROD |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 19.7% | PROD |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | PROD |
| SHIP SHOAL 233/238 | SS 232 | G01259 | Federal | RT | 9/1/1995 | 2/10/2012 | 5,000 | W & T Off | 33.8% | TERMIN |
| SHIP SHOAL 233/238 | SS 233 | G01528 | Federal | RT | 7/1/1967 | | 5,000 | W & T Off | 33.8% | PROD |
| SHIP SHOAL 233/238 | SS 238 | G03169 | Federal | RT | 7/1/1975 | | 5,000 | W & T Off | 34.5% | PROD |
| SHIP SHOAL 233/238 | SS 238 | G03169 | Federal | OP 2 | 7/1/1975 | | 5,000 | Peregrine O&G II | 34.5% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 246 | G01027 | Federal | OP 11 | 6/1/1962 | | 5,000 | Fieldwood En Off | 80.7% | TERMIN |
| SHIP SHOAL 246/247/248/270/271 | SS 246 | G01027 | Federal | OP 13 | 6/1/1962 | | 5,000 | Fieldwood En Off | 76.8% | TERMIN |
| SHIP SHOAL 246/247/248/270/271 | SS 247 | G01028 | Federal | RT B | 6/1/1962 | | 5,000 | Fieldwood En Off | 89.2% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 247 | G01028 | Federal | RT C | 6/1/1962 | | 5,000 | Fieldwood En Off | 77.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 248 | G01029 | Federal | RT B | 6/1/1962 | | 5,000 | Fieldwood En Off | 77.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 79.7% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En Off | 68.8% | UNIT |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | OP 1 | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | OP 2 | 7/1/1967 | | 5,000 | Fieldwood En Off | 31.9% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 4 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 5 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 270 | G01037 | Federal | RT | 3/13/1962 | | 5,000 | Fieldwood En Off | 89.2% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 271 | G01038 | Federal | RT | 3/13/1962 | | 5,000 | Fieldwood En Off | 72.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 271 | G01038 | Federal | OP | 3/13/1962 | | 5,000 | Fieldwood En Off | 72.3% | UNIT |
| SHIP SHOAL 300/314/315 | SS 291 | G02923 | Federal | RT B | 12/1/1974 | | 3,750 | Fieldwood En | 15.4% | OPERNS |
| SHIP SHOAL 300/314/315 | SS 300 | G07760 | Federal | RT | 8/1/1985 | | 5,000 | W & T Off | 24.3% | PROD |
| SHIP SHOAL 300/314/315 | SS 315 | G09631 | Federal | RT | 6/1/1988 | | 5,000 | W & T Off | 25.0% | PROD |
| | ST 169 | G01253 | Federal | RT | 6/1/1962 | 1/8/2010 | 4,708 | Beryl O&G | 100.0% | TERMIN |
| SOUTH TIMBALIER 195 | ST 195 | G03593 | Federal | RT | 8/1/1977 | 2/5/2019 | 5,000 | W & T Off | 50.0% | TERMIN |
| SOUTH TIMBALIER 316 | ST 315 | G23946 | Federal | RT | 7/1/2002 | | 4,458 | W & T Off | 50.0% | PROD |
| SOUTH TIMBALIER 316 | ST 316 | G22762 | Federal | RT | 6/1/2001 | | 4,435 | W & T Off | 40.0% | PROD |
| VIOSCA KNOLL 780 | VK 824 | G15436 | Federal | CONT | 9/1/1995 | 8/20/2013 | 5,760 | Fieldwood En | 6.1% | RELINQ |
| VIOSCA KNOLL 826 (NEPTUNE) | VK 826 | G06888 | Federal | RT | 8/1/1998 | 5/16/2018 | 5,760 | Fieldwood En | 85.0% | PROD |
| VK0826-VIOSCA KNOLL 826 (NEPTUNE) SWC | VK 917 | G15441 | Federal | OP | 7/1/1995 | | 5760 | Fieldwood En | 85.0% | PROD |
| VIOSCA KNOLL 917 / 962 (SWORDFISH) | VK 962 | G15445 | Federal | OP 1 | 7/1/1995 | 8/4/2019 | 5760 | Fieldwood En | 85.0% | PROD |
| VERMILION 196 | VR 196 | G19760 | Federal | RT | 6/1/1998 | | 5,000 | Fieldwood En | 63.1% | TERMIN |
| VERMILION 196 | VR 207 | G19761 | Federal | OP 1 | 8/1/1998 | 7/27/2009 | 5,000 | Fieldwood En | 46.4% | RELINQ |
| VERMILION 261/262 | VR 261 | G03328 | Federal | RT | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 25.0% | UNIT |
| VERMILION 261/262 | VR 261 | G03328 | Federal | OP 1 | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 25.0% | UNIT |
| VERMILION 261/262 | VR 262 | G34257 | Federal | RT | 10/1/2012 | 7/7/2017 | 5,485 | Fieldwood En | 25.0% | RELINQ |
| VERMILION 272 / SOUTH MARSH 102 | VR 272 | G23829 | Federal | RT | 6/1/2002 | | 4,381 | Fieldwood En Off | 100.0% | PROD |
| VERMILION 272 / SOUTH MARSH 102 | VR 273 | G14412 | Federal | OP 3 | 5/1/1994 | 6/1/2010 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| VERMILION 279 | VR 279 | G11881 | Federal | OP 1 | 5/1/1990 | | 5,000 | Talos En Off | 50.0% | TERMIN |
| VERMILION 313 | VR 313 | G01172 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| VERMILION 313 | VR 313 | G01172 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| VERMILION 408 | VR 408 | G15212 | Federal | CONT | 7/1/1995 | | 5,000 | Fieldwood En | 33.2% | PROD |
| WEST CAMERON 171 | WC 171 | G01997 | Federal | RT | 1/1/1971 | 1/31/2014 | 5,000 | XTO | 33.5% | TERMIN |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | Fieldwood En | 13.8% | PROD |
| WEST CAMERON 485/507 | WC 485 | G02220 | Federal | RT | 2/1/1973 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 498 | WC 498 | G03520 | Federal | RT | 8/1/1977 | | 5,000 | Cox Op | 3.7% | PROD |
| WEST CAMERON 485/507 | WC 507 | G02549 | Federal | RT | 4/1/1974 | | 2,500 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 485/507 | WC 507 | G10594 | Federal | OP 1 | 4/1/1974 | | 2,500 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 485/507 | WC 507 | G10594 | Federal | OP 1 | 6/1/1989 | | 2,500 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP 4 | 12/1/1974 | | 5,000 | Fieldwood En | 18.8% | PROD |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | | 3,750 | Fieldwood En | 18.8% | PROD |
| | WC 67 | G02556 | Federal | CONT | 9/1/1975 | | 5,000 | Fieldwood En | 17.5% | TERMIN |
| WEST CAMERON 71/72/102 | WC 72 | G23735 | Federal | RT | 7/1/2002 | | 5,000 | Fieldwood En | 75.0% | PROD |
| | WC 96 | G23740 | Federal | OP 1 | 5/1/2002 | | 5,000 | Talos | 25.0% | UNIT |
| WEST DELTA 90/103 | WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | | 1,016 | Fieldwood En | 18.8% | PROD |
| WEST DELTA 121/122 | WD 121 | G19843 | Federal | OP 1 | 8/1/1998 | | 5,000 | Fieldwood En | 16.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 1 | 8/1/1992 | | 5,000 | Fieldwood En | 16.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | | 5,000 | Fieldwood En | 16.0% | PROD |
| WEST DELTA 27 | WD 27 | G04473 | Federal | RT B | 11/1/1980 | | 5,000 | Cox Op | 13.8% | PROD |
| WEST DELTA 79/80 | -57, WD 79, WC | G01449 | Federal | RT | 5/1/1966 | | 3,125 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 63/64 | WD 63 | G19839 | Federal | RT | 5/1/1998 | 5/25/2016 | 5,000 | Peregrine O&G | 12.5% | RELINQ |
| WEST DELTA 63/64 | WD 64 | G25008 | Federal | RT | 5/1/2003 | 2/21/2017 | 5,000 | Peregrine O&G | 5.9% | TERMIN |
| WEST DELTA 73/74 | WD 73 | G01083 | Federal | OP 2 | 6/1/1962 | | 5,000 | Cox Op | 5.9% | UNIT |
| WEST DELTA 73/74 | WD 74 | G01084 | Federal | OP 2 | 6/1/1962 | | 5,000 | Cox Op | 5.9% | UNIT |
| WEST DELTA 79/80 | WD 79, WD 80 | G01874 | Federal | RT | 12/1/1968 | | 3,438 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 79/80 | WD 80 | G01989 | Federal | RT | 8/1/1970 | | 1,875 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 79/80 | WD 80 | G02136 | Federal | RT | 1/1/1972 | | 938 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 86 | WD 85 | G04895 | Federal | RT | 12/1/1981 | 5/9/2019 | 2,630 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 86 | WD 85 | G04895 | Federal | OP 1 | 12/1/1981 | 5/9/2019 | 2,630 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G02934 | Federal | RT | 12/1/1974 | 8/30/2010 | 2,500 | SPN Res | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G02443 | Federal | RT | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G02443 | Federal | OP 1 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G02443 | Federal | OP 2 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G02443 | Federal | OP 3 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En | 100.0% | TERMIN |

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | | 5,000 | Fieldwood En | 18.8% | PROD |
| GREEN CANYON 200 (Troika) | GC 201 | G12210 | Federal | RT NE4 | 5/1/1990 | | 5760 | Fieldwood En Off | 100.0% | UNIT |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| ACOM O H EST GU 3R | ACOMGU3 | 168986 | 42071321150 |
| ARCO SANGER EST 5 | ARCOSANG5 | 09061 | 422973358000 |
| BRAZOS A-102 #A002 | BAA102A02 | G01754 | 427054002500 |
| BRAZOS A-105 #002 | BAA105002 | G01757 | 427054000400 |
| BRAZOS A-105 #A001 | BAA105A01 | G01757 | 427054003100 |
| BRAZOS A-105 #A003 | BAA105A03 | G01757 | 427054002900 |
| BRAZOS A-105 #A004 | BAA105A04 | G01757 | 427054003000 |
| BRAZOS A-105 #A005 | BAA105A05 | G01757 | 427054003200 |
| BRAZOS A-105 #B001 | BAA105B010 | G01757 | 427054012200 |
| BRAZOS A-105 #B002 | BAA105B020 | G01757 | 427054012600 |
| BRAZOS A-105 #B003 | BAA105B030 | G01757 | 427054012800 |
| BRAZOS A-105 #B004 | BAA105B040 | G01757 | 427054013000 |
| BRAZOS A-105 #B005 | BAA105B050 | G01757 | 427054013300 |
| BRAZOS A-133 #A001 | BAA133A010 | G02665 | 427054002400 |
| BRAZOS A-133 #A002 | BAA133A020 | G02665 | 427054003300 |
| BRAZOS A-133 #A003 | BAA133A030 | G02665 | 427054003500 |
| BRAZOS A-133 #A004 ST1 | BAA133A041 | G02665 | 427054004301 |
| BRAZOS A-133 #A005 ST1 | BAA133A051 | G02665 | 427054004001 |
| BRAZOS A-133 #A006 | BAA133A060 | G02665 | 427054004500 |
| BRAZOS A-133 #A007 | BAA133A070 | G02665 | 427054004800 |
| BRAZOS A-133 #A008 | BAA133A080 | G02665 | 427054005200 |
| BRAZOS A-133 #A009 | BAA133A090 | G02665 | 427054005400 |
| BRAZOS A-133 #A010 | BAA133A100 | G02665 | 427054013100 |
| BRAZOS A-133 #C001 | BAA133C010 | G02665 | 427054007800 |
| BRAZOS A-133 #C002 | BAA133C020 | G02665 | 427054008200 |
| BRAZOS A-133 #C003 | BAA133C030 | G02665 | 427054010700 |
| BRAZOS A-133 #C004 | BAA133C040 | G02665 | 427054013500 |
| BRAZOS A-133 #D001 ST1 | BAA133D011 | G02665 | 427054009201 |
| BRAZOS A-133 #D003 | BAA133D030 | G02665 | 427054012700 |
| BRETON SOUND 053 #001 SL3770 | SL0377001 | 03770 | 1.7726E+11 |
| BRETON SOUND 053 #007 SL 3770 | SL0377007 | 03770 | 177262015800 |
| BRETON SOUND 053 #008 SL 3770 | SL0377008 | 03770 | 177262016300 |
| EAST BREAKS 158 #A003 | EB158A03 | G02645 | 608044004104 |
| EAST BREAKS 158 #A007 | EB158A07 | G02645 | 608044005100 |
| EAST BREAKS 158 #A012 | EB158A12 | G02645 | 608044005601 |
| EAST BREAKS 158 #A014 | EB158A14 | G02645 | 608044005901 |
| EAST BREAKS 159 #A002 | EB159A02 | G02646 | 608044003800 |
| EAST BREAKS 159 #A005 | EB159A05 | G02646 | 608044004503 |
| EAST BREAKS 159 #A006 | EB159A06 | G02646 | 608044004401 |
| EAST BREAKS 159 #A009 | EB159A09 | G02646 | 608044005200 |
| EAST BREAKS 159 #A011 | EB159A11 | G02646 | 608044005400 |
| EAST BREAKS 159 #A017 | EB159A17 | G02646 | 608044018300 |
| EAST BREAKS 160 #A005 HB-2 | EB160A05 | G02647 | 608044003700 |
| EAST BREAKS 160 #A009 HB2 | EB160A09 | G02647 | 608044005800 |
| EAST BREAKS 160 #A010 GA1 | EB160A10 | G02647 | 608044008702 |
| EAST BREAKS 160 #A016 | EB160A16 | G02647 | 608044006000 |
| EAST BREAKS 160 #A018 ST4 | EB160A18 | G02647 | 608044006904 |
| EAST BREAKS 160 #A023 | EB160A23 | G02647 | 608044003900 |
| EAST BREAKS 160 #A025 | EB160A25 | G02647 | 608044004600 |
| EAST BREAKS 160 #A027 HB2 | EB160A27 | G02647 | 608044004900 |
| EAST BREAKS 160 #A031 HB2 | EB160A31 | G02647 | 608044008400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST BREAKS 160 #A033 ST TA | EB160A33 | G02647 | 608044007002 |
| EAST BREAKS 161 #002 (CORONA) | EB16102 | G02648 | 608044022600 |
| EAST BREAKS 161 #A001 ST | EB161A01 | G02648 | 608044002801 |
| EAST BREAKS 161 #A002 | EB161A02 | G02648 | 608044003100 |
| EAST BREAKS 161 #A003 HB4 | EB161A03 | G02648 | 608044002900 |
| EAST BREAKS 161 #A007 GM1 | EB161A07 | G02648 | 608044004300 |
| EAST BREAKS 161 #A008 HB2 | EB161A08 | G02648 | 608044004800 |
| EAST BREAKS 161 #A013 ST | EB161A13 | G02648 | 608044024501 |
| EAST BREAKS 161 #A029 GA3 | EB161A29 | G02648 | 608044005300 |
| EAST BREAKS 165 #A001 | EB165A01 | G06280 | 608044010800 |
| EAST BREAKS 165 #A002 | EB165A02 | G06280 | 608044010900 |
| EAST BREAKS 165 #A003 | EB165A03 | G06280 | 608044011100 |
| EAST BREAKS 165 #A004 | EB165A04 | G06280 | 608044011200 |
| EAST BREAKS 165 #A005 | EB165A05 | G06280 | 608044011300 |
| EAST BREAKS 165 #A007 | EB165A07 | G06280 | 608044011700 |
| EAST BREAKS 165 #A008 | EB165A08 | G06280 | 608044011600 |
| EAST BREAKS 165 #A009 | EB165A09 | G06280 | 608044011900 |
| EAST BREAKS 165 #A010 | EB165A10 | G06280 | 608044011802 |
| EAST BREAKS 165 #A011 | EB165A11 | G06280 | 608044012300 |
| EAST BREAKS 165 #A012 | EB165A12 | G06280 | 608044012200 |
| EAST BREAKS 165 #A014 | EB165A14 | G06280 | 608044012501 |
| EAST BREAKS 165 #A015 | EB165A15 | G06280 | 608044012800 |
| EAST BREAKS 165 #A017 | EB165A17 | G06280 | 608044013100 |
| EAST BREAKS 165 #A018 | EB165A18 | G06280 | 608044013201 |
| EAST BREAKS 165 #A019 | EB165A19 | G06280 | 608044013302 |
| EAST BREAKS 165 #A020 | EB165A20 | G06280 | 608044013501 |
| EAST BREAKS 165 #A021 | EB165A21 | G06280 | 608044013400 |
| EAST BREAKS 165 #A022 | EB165A22 | G06280 | 608044013700 |
| EAST BREAKS 165 #A023 | EB165A23 | G06280 | 608044013600 |
| EAST BREAKS 165 #A024 | EB165A24 | G06280 | 608044014000 |
| EAST BREAKS 165 #A025 | EB165A25 | G06280 | 608044013900 |
| EAST BREAKS 165 #A026 | EB165A26 | G06280 | 608044014100 |
| EAST BREAKS 165 #A029 | EB165A29 | G06280 | 608044014401 |
| EAST BREAKS 165 #A030 | EB165A30 | G06280 | 608044014501 |
| EAST BREAKS 209 #A013 GA RA13 | EB209A13 | G07397 | 608044012400 |
| EAST CAMERON 330 #B003 | EC330B03 | G03540 | 177044055600 |
| EAST CAMERON 330 #B004 | EC330B04 | G03540 | 177044055800 |
| EAST CAMERON 330 #B005 | EC330B05 | G03540 | 177044056100 |
| EAST CAMERON 330 #B006 | EC330B06 | G03540 | 177044056200 |
| EAST CAMERON 330 #B008 | EC330B08 | G03540 | 177044056800 |
| EAST CAMERON 331 #A001 | EC331A01 | G08658 | 177044076300 |
| EAST CAMERON 331 #A003 | EC331A03 | G08658 | 177044076400 |
| EAST CAMERON 331 #A004 | EC331A04 | G08658 | 177044076700 |
| EAST CAMERON 331 #A009 | EC331A09 | G08658 | 177044079400 |
| EAST CAMERON 331 #A010 | EC331A10 | G08658 | 177044079500 |
| EAST CAMERON 331 #A012 | EC331A12 | G08658 | 177044083300 |
| EAST CAMERON 331 #A013 | EC331A13 | G08658 | 177044083400 |
| EAST CAMERON 332 #A002 | EC332A02 | G09478 | 177044076200 |
| EAST CAMERON 332 #A005 | EC332A05 | G09478 | 177044076800 |
| EAST CAMERON 332 #A006 | EC332A06 | G09478 | 177044077301 |
| EAST CAMERON 332 #A007 | EC332A07 | G09478 | 177044077400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 332 #A008 | EC332A08 | G09478 | 177044077700 |
| EAST CAMERON 332 #A011 | EC332A11 | G09478 | 177044083101 |
| EAST CAMERON 332 #A014 | EC332A14 | G09478 | 177044094600 |
| EAST CAMERON 332 #A016 | EC332A16 | G09478 | 177044097901 |
| EAST CAMERON 332 #A017 | EC332A17 | G09478 | 177044078103 |
| EAST CAMERON 349 #A001 | EC349A01 | G15157 | 177044082700 |
| EAST CAMERON 349 #A002U | EC349A02U | G13592 | 177044081400 |
| EAST CAMERON 349 #A004 | EC349A04 | G14385 | 177044097700 |
| EAST CAMERON 350 #A005 S04 | EC350A05 | G15157 | 177044098200 |
| EAST CAMERON 356 #A003 | EC356A03 | G13592 | 177044097301 |
| EAST CAMERON 371 #A002 | EC371A02 | G02267 | 177044094300 |
| EUGENE IS 032 #008 | EI03208 | 00196 | 177090061800 |
| EUGENE IS 032 #010 | EI03210 | 00196 | 177090072400 |
| EUGENE IS 032 #011 | EI03211 | 00196 | 177090054400 |
| EUGENE IS 032 #012 | EI03212 | 00196 | 177090054500 |
| EUGENE IS 032 #016 | EI03216 | 00196 | 177090061500 |
| EUGENE IS 032 #020 | EI03220 | 00196 | 177092019100 |
| EUGENE IS 032 #022 | EI03222 | 00196 | 177094014800 |
| EUGENE IS 032 #024 | EI03224 | 00196 | 177094032800 |
| EUGENE IS 032 #026 | EI03226 | 00196 | 177094097200 |
| EUGENE IS 032 #028 | EI03228 | 00196 | 177094098601 |
| EUGENE IS 032 #029 | EI03229 | 00196 | 177094110003 |
| EUGENE IS 032 #30 | EI03230 | 00196 | 177094116401 |
| EUGENE IS 032 #031 | EI03231 | 00196 | 177094126501 |
| EUGENE IS 032 #032 | EI03232 | 00196 | 177094126700 |
| EUGENE IS 032 #033 | EI03233 | 00196 | 177094136900 |
| EUGENE IS 032 #A001 | EI032A01 | 00196 | 177090052800 |
| EUGENE IS 032 #A002 | EI032A02 | 00196 | 177090052901 |
| EUGENE IS 032 #A003 | EI032A03 | 00196 | 177090053000 |
| EUGENE IS 032 #A005 | EI032A05 | 00196 | 177090053200 |
| EUGENE IS 032 #A006 | EI032A06 | 00196 | 1770900533 |
| EUGENE IS 032 #E001 | EI032E01 | 00196 | 177090053800 |
| EUGENE IS 032 #E002 | EI032E02 | 00196 | 177090053900 |
| EUGENE IS 032 #E003 | EI032E03 | 00196 | 177090054000 |
| EUGENE IS 032 #E004 | EI032E04 | 00196 | 177090054100 |
| EUGENE IS 032 #F001 | EI032F01 | 00196 | 177090054200 |
| EUGENE IS 053 #008D | EI053008D0 | 00479 | 177094086200 |
| EUGENE IS 053 #009 | EI05300900 | 00479 | 177094094000 |
| EUGENE IS 053 #B001D | EI053B01D0 | 00479 | 177094085900 |
| EUGENE IS 053 #C002 | EI053C0200 | 00479 | 177094122600 |
| EUGENE IS 053 #G001 ST1 | EI053G01D2 | 00479 | 177094144201 |
| EUGENE IS 100 #013 | EI10013 | 00796 | 177090032601 |
| EUGENE IS 100 #020 | EI10020 | 00796 | 177090088800 |
| EUGENE IS 100 #024 | EI10024 | 00796 | 177092019204 |
| EUGENE IS 100 #027 | EI10027 | 00796 | 177092018602 |
| EUGENE IS 100 #030 | EI10030 | 00796 | 177094052700 |
| EUGENE IS 100 #031 | EI10031 | 00796 | 177094091603 |
| EUGENE IS 100 #033 | EI10033 | 00796 | 177094093001 |
| EUGENE IS 100 #041 | EI10041 | 00796 | 177094115601 |
| EUGENE IS 175 #D008 | EI175D0800 | 00438 | 177094003900 |
| EUGENE IS 175 #F001 ST1 | EI175F0101 | 00438 | 177094035401 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 175 #F003 ST | EI175F0302 | 00438 | 177094039702 |
| EUGENE IS 175 #F004 ST | EI175F0401 | 00438 | 177094041001 |
| EUGENE IS 175 #F005 | EI175F0500 | 00438 | 177094042900 |
| EUGENE IS 175 #F007 | EI175F0700 | 00438 | 177094048900 |
| EUGENE IS 175 #F009 | EI175F0901 | 00438 | 177094087601 |
| EUGENE IS 175 #H002 | EI175H0200 | 00438 | 177094106700 |
| EUGENE IS 175 #H003 | EI175H0300 | 00438 | 177094110800 |
| EUGENE IS 175 #H004 | EI175H0400 | 00438 | 177094110900 |
| EUGENE IS 175 #H005 ST1BP1 | EI175H0502 | 00438 | 177094112002 |
| EUGENE IS 175 #I002 | EI175I0201 | 00438 | 177094107101 |
| EUGENE IS 175 #I004 | EI175I0400 | 00438 | 177094109200 |
| EUGENE IS 175 #J002 ST1 | EI175J0201 | 00438 | 177094123201 |
| EUGENE IS 307 #A001 | EI307A01 | G02110 | 177104007400 |
| EUGENE IS 307 #A002 | EI307A02 | G02110 | 177104042401 |
| EUGENE IS 307 #A003 | EI307A03 | G02110 | 177104059300 |
| EUGENE IS 307 #A004 | EI307A04 | G02110 | 177104060900 |
| EUGENE IS 307 #A005 | EI307A05 | G02110 | 177104062000 |
| EUGENE IS 307 #A006 | EI307A06 | G02110 | 177104065900 |
| EUGENE IS 307 #A007 | EI307A07 | G02110 | 177104067100 |
| EUGENE IS 307 #A008 | EI307A08 | G02110 | 177104164600 |
| EUGENE IS 307 #B001 | EI307B01 | G02110 | 177104078501 |
| EUGENE IS 307 #B003 | EI307B03 | G02110 | 177104113302 |
| EUGENE IS 307 #B008 | EI307B08 | G02110 | 177104153802 |
| EUGENE IS 311 #D003 | EI311D03 | G27918 | 177104162000 |
| EUGENE IS 312 #D001 | EI312D0100 | G22679 | 177104160900 |
| EUGENE IS 312 #D002 | EI312D0200 | G22679 | 177104161900 |
| EUGENE IS 330 #B015 ST1 | EI330B1501 | G02115 | 177104028601 |
| EUGENE IS 342 #004 | EI34200400 | G02319 | 177104113000 |
| EUGENE IS 342 #C002 ST1 | EI342C0201 | G02319 | 177104110601 |
| EUGENE IS 342 #C003 | EI342C0300 | G02319 | 177104114000 |
| EUGENE IS 342 #C004 | EI342C0401 | G02319 | 177104120101 |
| EUGENE IS 342 #C005 | EI342C0502 | G02319 | 177104120202 |
| EUGENE IS 342 #C006 | EI342C0600 | G02319 | 177104120300 |
| EUGENE IS 342 #C007 | EI342C0700 | G02319 | 177104120800 |
| EUGENE IS 342 #C008 | EI342C0800 | G02319 | 177104121000 |
| EUGENE IS 342 #C009 | EI342C0900 | G02319 | 177104121300 |
| EUGENE IS 342 #C011 | EI342C1100 | G02319 | 177104122000 |
| EUGENE IS 342 #C012 | EI342C1200 | G02319 | 177104122200 |
| EUGENE IS 342 #C013 | EI342C1300 | G02319 | 177104122700 |
| EUGENE IS 342 #C014 | EI342C1400 | G02319 | 177104135800 |
| EUGENE IS 342 #C015 | EI342C1501 | G02319 | 177104162101 |
| EUGENE IS 342 #C016 | EI342C1601 | G02319 | 177104162201 |
| EUGENE IS 342 #C017 BP1 | EI342C1701 | G02319 | 177104162501 |
| EVANS GAS UNIT 1 | EVANSGASU1 | 19334 | 4216701288 |
| EVANS OIL UNIT 1 | EVANSOILU1 | 19334 | 4216701288 |
| EWING BANK 782 #A012 | EW826A1200 | G05793 | 608105001800 |
| FROST - ACOM GU 1 | FROSTAC1 | 189098 | 42071320621 |
| FROST - ACOM GU 2 | FROSTAC2 | 206882 | 42071320921 |
| GALVESTON 151 #005 | GA15100500 | G15740 | 427064044200 |
| GALVESTON 210 #001 | GA21000100 | G25524 | 427064044300 |
| GALVESTON 210 #002 | GA21000200 | G25524 | 427064044800 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GALVESTON A-155 #A001 | GAA155A01 | G30654 | 427074010800 |
| GREEN CANYON 064 #A040 | GC064A40 | G07005 | 608114016202 |
| GREEN CANYON 157 SS003 | GC157003 | G24154 | 608114043901 |
| GREEN CANYON 201 #001 ST2 | GC201001 | G12210 | 608114043802 |
| GREEN CANYON 201 SS001 | GC157001 | G12210 | 608114043802 |
| GREEN CANYON 245 # TA 8 TROIKA | - | G05916 | 608114032900 |
| HAYES LUMBER 1 - HBY 4 RC SUA | HAYESLUM1 | 42450 | 17053212861 |
| HAYES LUMBER CO 28 2 | HAYESLUM02 | Onshore | 170532123800 |
| HAYES LUMBER HBY 4 RA SUA 1ALT | HAYESLUM01 | 42450 | 170532122800 |
| HAYES MINERALS 29 001 | HAYESMIN29 | 42450 | 170532130600 |
| HELIS 2 | HELIS2 | 17072 | 1704520888 |
| HIGH ISLAND A-341 #B001 | HIA341B010 | G25605 | 427114085900 |
| HIGH ISLAND A-341 #B002 | HIA341B020 | G25605 | 427114087101 |
| HIGH ISLAND A-365 #A001 | HIA365A010 | G02750 | 427114052200 |
| HIGH ISLAND A-365 #A004 | HIA365A040 | G02750 | 427114053700 |
| HIGH ISLAND A-365 #A006 | HIA365A060 | G02750 | 427114053100 |
| HIGH ISLAND A-365 #A007 | HIA365A070 | G02750 | 427114054100 |
| HIGH ISLAND A-365 #A008 | HIA365A080 | G02750 | 427114054800 |
| HIGH ISLAND A-365 #A010 | HIA365A100 | G02750 | 427114055200 |
| HIGH ISLAND A-365 #A012 | HIA365A120 | G02750 | 427114055600 |
| HIGH ISLAND A-365 #A013 ST1 | HIA365A131 | G02750 | 427114055801 |
| HIGH ISLAND A-365 #A016 | HIA365A160 | G02750 | 427114056700 |
| HIGH ISLAND A-365 #A020 | HIA365A200 | G02750 | 427114057500 |
| HIGH ISLAND A-365 #A021 | HIA365A210 | G02750 | 427114057600 |
| HIGH ISLAND A-365 #A024 | HIA365A240 | G02750 | 427114066300 |
| HIGH ISLAND A-365 #A025 | HIA365A250 | G02750 | 427114066500 |
| HIGH ISLAND A-376 #A002 ST1 | HIA376A021 | G02754 | 427114052601 |
| HIGH ISLAND A-376 #A003 | HIA376A030 | G02754 | 427114052700 |
| HIGH ISLAND A-376 #A005 | HIA376A050 | G02754 | 427114053500 |
| HIGH ISLAND A-376 #A009 | HIA376A090 | G02754 | 427114054400 |
| HIGH ISLAND A-376 #A011 | HIA376A110 | G02754 | 427114055000 |
| HIGH ISLAND A-376 #A014 ST2 | HIA376A142 | G02754 | 427114056002 |
| HIGH ISLAND A-376 #A015 | HIA376A150 | G02754 | 427114056200 |
| HIGH ISLAND A-376 #A017 | HIA376A170 | G02754 | 427114057200 |
| HIGH ISLAND A-376 #A018 | HIA376A180 | G02754 | 427114057300 |
| HIGH ISLAND A-376 #A019 | HIA376A190 | G02754 | 427114057400 |
| HIGH ISLAND A-376 #A022 | HIA376A220 | G02754 | 427114057700 |
| HIGH ISLAND A-376 #B001 | HIA376B010 | G02754 | 427114068700 |
| HIGH ISLAND A-376 #B002 | HIA376B020 | G02754 | 427114068900 |
| HIGH ISLAND A-376 #B003 | HIA376B031 | G02754 | 427114078701 |
| HIGH ISLAND A-376 #B004 | HIA376B041 | G02754 | 427114079001 |
| HIGH ISLAND A-376 #B005 | HIA376B050 | G02754 | 427114079600 |
| HIGH ISLAND A-376 #C001 | HIA376C010 | G02754 | 427114088900 |
| HIGH ISLAND A-376 #C002 | HIA376C020 | G02754 | 427114089600 |
| HIGH ISLAND A-376 #C003 | HIA376C030 | G02754 | 427114089500 |
| HIGH ISLAND A-376 #C004 | HIA376C040 | G02754 | 427114089400 |
| HIGH ISLAND A-382 #A009 | HIA382A090 | G02757 | 427094018600 |
| HIGH ISLAND A-382 #B013 | HIA382B130 | G02757 | 427094025500 |
| HIGH ISLAND A-382 #F001 ST1 | HIA382F011 | G02757 | 427114059401 |
| HIGH ISLAND A-382 #F002 | HIA382F020 | G02757 | 427114059800 |
| HIGH ISLAND A-382 #F003 | HIA382F031 | G02757 | 427114059901 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-382 #F004 | HIA382F040 | G02757 | 427114060600 |
| HIGH ISLAND A-382 #F005 | HIA382F050 | G02757 | 427114060900 |
| HIGH ISLAND A-382 #F006 | HIA382F061 | G02757 | 427114061001 |
| HIGH ISLAND A-382 #F008 | HIA382F080 | G02757 | 427114061700 |
| HIGH ISLAND A-382 #F010 ST5 | HIA382F105 | G02757 | 427114062605 |
| HIGH ISLAND A-382 #F011 | HIA382F110 | G02757 | 427114063100 |
| HIGH ISLAND A-382 #F012 | HIA382F121 | G02757 | 427114063601 |
| HIGH ISLAND A-382 #F013 | HIA382F130 | G02757 | 427114063800 |
| HIGH ISLAND A-382 #F014 | HIA382F140 | G02757 | 427114063900 |
| HIGH ISLAND A-382 #F015 | HIA382F151 | G02757 | 427114064701 |
| HIGH ISLAND A-382 #F017 | HIA382F171 | G02757 | 427114066701 |
| HIGH ISLAND A-382 #F019 | HIA382F190 | G02757 | 427114067100 |
| HIGH ISLAND A-382 #F020 | HIA382F200 | G02757 | 427114067500 |
| HIGH ISLAND A-382 #F021 | HIA382F211 | G02757 | 427114067801 |
| HIGH ISLAND A-474 #A001 | HIA474A010 | G02366 | 427094017100 |
| HIGH ISLAND A-474 #A002 | HIA474A020 | G02366 | 427094017200 |
| HIGH ISLAND A-474 #A003 | HIA474A030 | G02366 | 427094019900 |
| HIGH ISLAND A-474 #A004 | HIA474A040 | G02366 | 427094022800 |
| HIGH ISLAND A-474 #A005 | HIA474A050 | G02366 | 427094023500 |
| HIGH ISLAND A-474 #A006 | HIA474A060 | G02366 | 427094024300 |
| HIGH ISLAND A-474 #A007 | HIA474A070 | G02366 | 427094027702 |
| HIGH ISLAND A-474 #A008 | HIA474A080 | G02366 | 427094026100 |
| HIGH ISLAND A-474 #A010 | HIA474A100 | G02366 | 427094029400 |
| HIGH ISLAND A-474 #A011 | HIA474A110 | G02366 | 427094030000 |
| HIGH ISLAND A-474 #A012 | HIA474A120 | G02366 | 427094030801 |
| HIGH ISLAND A-474 #A013 | HIA474A130 | G02366 | 427094036104 |
| HIGH ISLAND A-474 #A014 | HIA474A140 | G02366 | 427094035000 |
| HIGH ISLAND A-474 #A017 | HIA474A170 | G02366 | 427094032500 |
| HIGH ISLAND A-474 #A020 | HIA474A200 | G02366 | 427094038500 |
| HIGH ISLAND A-474 #A021 | HIA474A210 | G02366 | 427094040700 |
| HIGH ISLAND A-474 #B023 | HIA474B230 | G02366 | 427094037200 |
| HIGH ISLAND A-475 #A016 | HIA475A16 | G02367 | 427094035500 |
| HIGH ISLAND A-489 #A009 | HIA489A090 | G02372 | 427094028500 |
| HIGH ISLAND A-489 #A015 | HIA489A150 | G02372 | 427094037000 |
| HIGH ISLAND A-489 #B002 | HIA489B020 | G02372 | 427094021000 |
| HIGH ISLAND A-489 #B003 | HIA489B030 | G02372 | 427094020901 |
| HIGH ISLAND A-489 #B007 | HIA489B070 | G02372 | 427094027601 |
| HIGH ISLAND A-489 #B009 | HIA489B090 | G02372 | 427094026500 |
| HIGH ISLAND A-489 #B010 | HIA489B100 | G02372 | 427094028800 |
| HIGH ISLAND A-489 #B012 | HIA489B120 | G02372 | 427094031400 |
| HIGH ISLAND A-489 #B013 | HIA489B130 | G02372 | 427094028600 |
| HIGH ISLAND A-489 #B014 | HIA489B140 | G02372 | 427094029700 |
| HIGH ISLAND A-489 #B015 | HIA489B150 | G02372 | 427094030400 |
| HIGH ISLAND A-489 #B016 | HIA489B160 | G02372 | 427094029800 |
| HIGH ISLAND A-489 #B017 | HIA489B170 | G02372 | 427094023802 |
| HIGH ISLAND A-489 #B018 | HIA489B180 | G02372 | 427094032801 |
| HIGH ISLAND A-489 #B020 | HIA489B200 | G02372 | 427094028101 |
| HIGH ISLAND A-489 #B021 | HIA489B210 | G02372 | 427094026202 |
| HIGH ISLAND A-489 #B022 | HIA489B220 | G02372 | 427094036000 |
| HIGH ISLAND A-489 #B024 | HIA489B240 | G02372 | 427094035400 |
| HIGH ISLAND A-489 #B025 | HIA489B250 | G02372 | 427094041400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-489 #B026 | HIA489B260 | G02372 | 427094043100 |
| HIGH ISLAND A-489 #B027 | HIA489B270 | G02372 | 427094042501 |
| HIGH ISLAND A-489 #B028 | HIA489B280 | G02372 | 427094054500 |
| HIGH ISLAND A-489 #B029 | HIA489B290 | G02372 | 427094111100 |
| HIGH ISLAND A-550 #002 | HIA55002 | G04081 | 427094062700 |
| HIGH ISLAND A-550 #003 | HIA55003 | G04081 | 427094063700 |
| HIGH ISLAND A-550 #A001 | HIA550A01 | G04081 | 427094057004 |
| HIGH ISLAND A-550 #A002 | HIA550A02 | G04081 | 427094074101 |
| HIGH ISLAND A-550 #A003 | HIA550A03 | G04081 | 427094076000 |
| HIGH ISLAND A-550 #A004 | HIA550A04 | G04081 | 427094099501 |
| HIGH ISLAND A-550 #A005 | HIA550A05 | G04081 | 427094099801 |
| HIGH ISLAND A-550 #A006 | HIA550A06 | G04081 | 427094104801 |
| HIGH ISLAND A-563 #B001 | HIA563B01 | G02388 | 427094029900 |
| HIGH ISLAND A-563 #B004 | HIA563B04 | G02388 | 427094034402 |
| HIGH ISLAND A-563 #B005 | HIA563B05 | G02388 | 427094037100 |
| HIGH ISLAND A-563 #B007 | HIA563B07 | G02388 | 427094038600 |
| HIGH ISLAND A-563 #B008 | HIA563B08 | G02388 | 427094038900 |
| HIGH ISLAND A-563 #B009 | HIA563B09 | G02388 | 427094039601 |
| HIGH ISLAND A-563 #B010 | HIA563B10 | G02388 | 427094040000 |
| HIGH ISLAND A-563 #B012 | HIA563B12 | G02388 | 427094043502 |
| HIGH ISLAND A-563 #B013 | HIA563B13 | G02388 | 427094040501 |
| HIGH ISLAND A-563 #B015 | HIA563B15 | G02388 | 427094048000 |
| HIGH ISLAND A-563 #B016 | HIA563B16 | G02388 | 427094048102 |
| HIGH ISLAND A-563 #B017 | HIA563B17 | G02388 | 427094045804 |
| HIGH ISLAND A-563 #B018 | HIA563B18 | G02388 | 427094052501 |
| HIGH ISLAND A-563 #B019 | HIA563B19 | G02388 | 427094052000 |
| HIGH ISLAND A-563 #B022 | HIA563B22 | G02388 | 427094055000 |
| HIGH ISLAND A-563 #B023 | HIA563B23 | G02388 | 427094056400 |
| HIGH ISLAND A-563 #B024 | HIA563B24 | G02388 | 427094056601 |
| HIGH ISLAND A-563 #B025 | HIA563B25 | G02388 | 427094059300 |
| HIGH ISLAND A-563 #B026 | HIA563B26 | G02388 | 427094066801 |
| HIGH ISLAND A-563 #B027 | HIA563B27 | G02388 | 427094068100 |
| HIGH ISLAND A-563 #C004 | HIA563C04 | G02388 | 427094059602 |
| HIGH ISLAND A-563 #C005 | HIA563C05 | G02388 | 427094062800 |
| HIGH ISLAND A-563 #C008 | HIA563C08 | G02388 | 427094069400 |
| HIGH ISLAND A-563 #C009 | HIA563C09 | G02388 | 427094064600 |
| HIGH ISLAND A-564 #B006 | HIA563B06 | G02389 | 427094033801 |
| HIGH ISLAND A-564 #B020 | HIA564B20 | G02389 | 427094053102 |
| HIGH ISLAND A-564 #B021 | HIA563B21 | G02389 | 427094053900 |
| HIGH ISLAND A-572 #A003 ST1 | HIA572A031 | G02392 | 427094012901 |
| HIGH ISLAND A-572(573)A014 | HIA572A140 | G02392 | 427094034100 |
| HIGH ISLAND A-573 #006 | HIA5730060 | G02393 | 427094053700 |
| HIGH ISLAND A-573 #A001 ST2 | HIA573A012 | G02393 | 427094007102 |
| HIGH ISLAND A-573 #A002 ST3 | HIA573A023 | G02393 | 427094013803 |
| HIGH ISLAND A-573 #A004 | HIA573A040 | G02393 | 427094015000 |
| HIGH ISLAND A-573 #A005 ST1 | HIA573A051 | G02393 | 427094015501 |
| HIGH ISLAND A-573 #A008 | HIA573A080 | G02393 | 427094018000 |
| HIGH ISLAND A-573 #A010 | HIA573A100 | G02393 | 427094020500 |
| HIGH ISLAND A-573 #A015 | HIA573A150 | G02393 | 427094034200 |
| HIGH ISLAND A-573 #A016 | HIA573A160 | G02393 | 427094034300 |
| HIGH ISLAND A-573 #A017 | HIA573A170 | G02393 | 427094036500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-573 #A019 ST1 | HIA573A191 | G02393 | 427094038001 |
| HIGH ISLAND A-573 #B001 | HIA573B010 | G02393 | 427094012800 |
| HIGH ISLAND A-573 #B002 | HIA573B020 | G02393 | 427094014100 |
| HIGH ISLAND A-573 #B005 | HIA573B050 | G02393 | 427094016400 |
| HIGH ISLAND A-573 #B006 | HIA573B060 | G02393 | 427094017000 |
| HIGH ISLAND A-573 #B008 | HIA573B080 | G02393 | 427094017900 |
| HIGH ISLAND A-573 #B010 | HIA573B100 | G02393 | 427094021100 |
| HIGH ISLAND A-573 #B012 | HIA573B120 | G02393 | 427094022700 |
| HIGH ISLAND A-573 #E007 | HIA573E070 | G02393 | 427094098200 |
| HIGH ISLAND A-573 #E012 | HIA573E120 | G02393 | 427094115000 |
| HIGH ISLAND A-573 #F007 | HIA573F070 | G02393 | 427114061200 |
| HIGH ISLAND A-573 #F009 | HIA573F090 | G02393 | 427114062000 |
| HIGH ISLAND A-573 #F016 ST5 | HIA573F165 | G02393 | 427114066805 |
| HIGH ISLAND A-573 #F018 ST1 | HIA573F181 | G02393 | 427114067301 |
| HIGH ISLAND A-573 #F022 | HIA573F220 | G02393 | 427114068400 |
| HIGH ISLAND A-573 #F023 ST2 | HIA573F232 | G02393 | 427114069302 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-582 #C001 | HIA582C010 | G02719 | 427094061500 |
| HIGH ISLAND A-582 #C002 | HIA582C020 | G02719 | 427094061900 |
| HIGH ISLAND A-582 #C003 | HIA582C030 | G02719 | 427094058000 |
| HIGH ISLAND A-582 #C006 | HIA582C060 | G02719 | 427094063400 |
| HIGH ISLAND A-582 #C007 | HIA582C070 | G02719 | 427094063900 |
| HIGH ISLAND A-582 #C010 | HIA582C100 | G02719 | 427094070200 |
| HIGH ISLAND A-582 #C011 | HIA582C110 | G02719 | 427094071400 |
| HIGH ISLAND A-582 #C012 | HIA582C120 | G02719 | 427094074900 |
| HIGH ISLAND A-582 #C013 | HIA582C130 | G02719 | 427094072700 |
| HIGH ISLAND A-582 #C014 | HIA582C140 | G02719 | 427094073800 |
| HIGH ISLAND A-582 #C015 | HIA582C150 | G02719 | 427094075800 |
| HIGH ISLAND A-582 #C019 | HIA582C190 | G02719 | 427094108200 |
| HIGH ISLAND A-582 #D001 | HIA582D010 | G18959 | 42094110200 |
| HIGH ISLAND A-582 #D002 ST1 | HIA582D021 | G02719 | 427094110801 |
| HIGH ISLAND A-582 #D003 ST | HIA582D031 | G02719 | 427094111401 |
| HIGH ISLAND A-582 #D005 | HIA582D050 | G02719 | 427094114300 |
| HIGH ISLAND A-582 #D006 | HIA582D060 | G02719 | 427094114700 |
| HIGH ISLAND A-595 #D001 ST2 | HIA595D1D2 | G02721 | 427094055302 |
| HIGH ISLAND A-595 #D003 | HIA595D03 | G02721 | 427094058500 |
| HIGH ISLAND A-595 #D005 | HIA595D050 | G02721 | 427094092900 |
| HIGH ISLAND A-595 #D006 | HIA595D063 | G02721 | 427094063205 |
| HIGH ISLAND A-595 #D010 | HIA595D100 | G02721 | 427094070500 |
| HIGH ISLAND A-595 #D012 | HIA595D120 | G02721 | 427094077000 |
| HIGH ISLAND A-595 #D017 ST2 | HIA595D172 | G02721 | 427094083702 |
| HIGH ISLAND A-595 #D018 | HIA595D181 | G02721 | 427094093501 |
| HIGH ISLAND A-595 #E011 | HIA595E110 | G02721 | 427094114501 |
| HIGH ISLAND A-596 #B014 | HIA596B140 | G02722 | 427094025800 |
| HIGH ISLAND A-596 #D002 | HIA596D020 | G02722 | 427094056901 |
| HIGH ISLAND A-596 #D004 | HIA596D040 | G02722 | 427094060500 |
| HIGH ISLAND A-596 #D007 ST4 | HIA596D074 | G02722 | 427094064304 |
| HIGH ISLAND A-596 #D008 ST1 | HIA596D081 | G02722 | 427094067001 |
| HIGH ISLAND A-596 #D009 | HIA596D090 | G02722 | 427094068400 |
| HIGH ISLAND A-596 #D011 | HIA596D110 | G02722 | 427094075700 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-596 #D013 ST2 | HIA596D132 | G02722 | 427094079502 |
| HIGH ISLAND A-596 #D014 | HIA596D140 | G02722 | 427094080100 |
| HIGH ISLAND A-596 #D016 | HIA596D160 | G02722 | 427094082400 |
| HIGH ISLAND A-596 #E005 | HIA596E050 | G02722 | 427094085900 |
| HIGH ISLAND A-596 #E008 | HIA596E080 | G02722 | 427094112801 |
| HIGH ISLAND A-596 #E009 | HIA596E090 | G02722 | 427094114200 |
| LA ST LSE 3011 1 SWD BURRWOOD | BURRWOOD | 03011 | 177210074800 |
| LANDREAU ET UX 1 | LANDREAU1 | 490100 | UNKNOWN |
| MAIN PASS 077 #A001 | MP077A0100 | G04481 | 177254033800 |
| MAIN PASS 077 #A002 | MP077A0201 | G04481 | 177254043101 |
| MAIN PASS 077 #A003 | MP077A0300 | G04481 | 177254036100 |
| MAIN PASS 077 #A004 | MP077A0400 | G04481 | 177254036900 |
| MAIN PASS 077 #A005 | MP077A0500 | G04481 | 177254038000 |
| MAIN PASS 077 #A006 ST2 | MP077A0602 | G04481 | 177254036402 |
| MAIN PASS 077 #A010 | MP077A1000 | G04481 | 177254039600 |
| MAIN PASS 077 #A011 | MP077A1100 | G04481 | 177254042400 |
| MAIN PASS 077 #A012 | MP077A1200 | G04481 | 177254039700 |
| MAIN PASS 077 #A013 | MP077A1300 | G04481 | 177254044900 |
| MAIN PASS 077 #A014 | MP077A1400 | G04481 | 177254044500 |
| MAIN PASS 077 #A015 | MP077A1501 | G04481 | 177254045101 |
| MAIN PASS 077 #A016 | MP077A1600 | G04481 | 177254045900 |
| MAIN PASS 077 #A017 | MP077A1700 | G04481 | 177254046200 |
| MAIN PASS 077 #A018 | MP077A1800 | G04481 | 177254046800 |
| MAIN PASS 077 #A019 | MP077A1900 | G04481 | 177254048200 |
| MAIN PASS 077 #A020 | MP077A2001 | G04481 | 177254048501 |
| MAIN PASS 077 #A021 ST | MP077A2100 | G04481 | 177254067002 |
| MAIN PASS 077 #A022 | MP077A2201 | G04481 | 177254067401 |
| MAIN PASS 077 #A023 | MP077A23 | G04481 | 177254067601 |
| MAIN PASS 077 #A07 | MP077A0700 | G04481 | 177254041000 |
| MAIN PASS 077 #A08 | MP077A0800 | G04481 | 177254038200 |
| MAIN PASS 077 #A09 | MP077A0900 | G04481 | 177254039000 |
| NW MYETTE POINT SL 14519 #001 | SL1451901 | 14519 | 171012195100 |
| NW MYETTE POINT SL 14519 #002 | SL1451902 | 14519 | 171012200800 |
| NW MYETTE POINT SL 14520 #002 | SL1452002 | 14520 | 171012201500 |
| NW MYETTE POINT SL 14914 #002 | SL1491402 | 14914 | 171012206300 |
| NW MYETTE POINT SL 14914 #003 | SL1491403 | 14914 | 171012239600 |
| NW MYETTE POINT SL14519 #1 SWD | SL14519SWD | 14519 | 171018805900 |
| SHIP SHOAL 149 #A017 (ORRI) | SS149A17 | 00434 | 177114131300 |
| SHIP SHOAL 149 #C001 | SS149C01 | 00434 | 177114005500 |
| SHIP SHOAL 149 #C002 | SS149C02 | 00434 | 177114007002 |
| SHIP SHOAL 149 #C003 | SS149C03 | 00434 | 177114016000 |
| SHIP SHOAL 149 #C004 | SS149C04 | 00434 | 177114024301 |
| SHIP SHOAL 149 #C005 | SS149C05 | 00434 | 177114025800 |
| SHIP SHOAL 149 #C019 (ORRI) | SS149C19 | 00434 | 177114132300 |
| SHIP SHOAL 149 #E007 | SS149E07 | 00434 | 177114113100 |
| SHIP SHOAL 169 #BB001 | SS169BB010 | 00820 | 177114048100 |
| SHIP SHOAL 169 #BB002 | SS169BB020 | 00820 | 177114055501 |
| SHIP SHOAL 169 #BB003 | SS169BB030 | 00820 | 177114057800 |
| SHIP SHOAL 169 #BB004 | SS169BB040 | 00820 | 177114056500 |
| SHIP SHOAL 169 #BB005 | SS169BB050 | 00820 | 177114059600 |
| SHIP SHOAL 169 #BB006 | SS169BB060 | 00820 | 177114060101 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 169 #C001 | SS169C0100 | 00820 | 177114075600 |
| SHIP SHOAL 169 #C003 | SS169C0300 | 00820 | 177114078500 |
| SHIP SHOAL 169 #C004 | SS169C0400 | 00820 | 177114077400 |
| SHIP SHOAL 169 #C006 | SS169C0600 | 00820 | 177114080201 |
| SHIP SHOAL 169 #C007 | SS169C0700 | 00820 | 177114080601 |
| SHIP SHOAL 169 #C008 | SS169C0800 | 00820 | 177114081300 |
| SHIP SHOAL 169 #C009 | SS169C0900 | 00820 | 177114144400 |
| SHIP SHOAL 169 #C010 | SS169C1000 | 00820 | 177114144800 |
| SHIP SHOAL 169 #G001 | SS169G0100 | 00820 | 177114127400 |
| SHIP SHOAL 169 #G002 | SS169G0200 | 00820 | 177114128500 |
| SHIP SHOAL 169 #G003 | SS169G0300 | 00820 | 177114156600 |
| SHIP SHOAL 177 #007 | SS17700700 | 00590 | 177114101100 |
| SHIP SHOAL 177 #A001 | SS177A01 | 00590 | 177114056300 |
| SHIP SHOAL 177 #A002 | SS177A02 | 00590 | 177114055000 |
| SHIP SHOAL 177 #A003 | SS177A03 | 00590 | 177114056100 |
| SHIP SHOAL 177 #A005 | SS177A05 | 00590 | 177114119301 |
| SHIP SHOAL 189 #A001A | SS189A01A0 | G04232 | 177114062000 |
| SHIP SHOAL 189 #A003A | SS189A03A0 | G04232 | 177114085200 |
| SHIP SHOAL 189 #A005 | SS189A0500 | G04232 | 177114088400 |
| SHIP SHOAL 189 #A007 ST2 | SS189A0702 | G04232 | 177114129502 |
| SHIP SHOAL 189 #A008 | SS189A0800 | G04232 | 177114130900 |
| SHIP SHOAL 189 #A009 ST1 | SS189A0901 | G04232 | 177114139801 |
| SHIP SHOAL 189 #A010BP1 | SS189A1001 | G04232 | 177114154701 |
| SHIP SHOAL 189 #A4 (SS210) | SS189A04 | G04232 | 177114086801 |
| SHIP SHOAL 189 #A6 (SS188) | SS189A06 | G04232 | 177114088906 |
| SHIP SHOAL 204 #A008 | SS204A0800 | G01520 | 177110083000 |
| SHIP SHOAL 204 #A015 ST1 | SS204A1501 | G01520 | 177112003401 |
| SHIP SHOAL 204 #A016 | SS204A1601 | G01520 | 177112005401 |
| SHIP SHOAL 204 #A020 | SS204A2000 | G01520 | 177112012600 |
| SHIP SHOAL 204 #A024 ST1 | SS204A2401 | G01520 | 177112017701 |
| SHIP SHOAL 204 #A028 ST3 | SS204A2803 | G01520 | 177110071003 |
| SHIP SHOAL 204 #A030A | SS204A30A1 | G01520 | 177114002801 |
| SHIP SHOAL 204 #A031 | SS204A3101 | G01520 | 177110084201 |
| SHIP SHOAL 204 #A034 | SS204A3400 | G01520 | 177114146700 |
| SHIP SHOAL 204 #A035 | SS204A3502 | G01520 | 177114147402 |
| SHIP SHOAL 204 #A036 ST1 | SS204A3603 | G01520 | 177114146803 |
| SHIP SHOAL 206 #E002 | SS206E0201 | G01522 | 177114118101 |
| SHIP SHOAL 206 #E003 | SS206E0301 | G01522 | 177114118201 |
| SHIP SHOAL 206 #E004 | SS206E0400 | G01522 | 177114141800 |
| SHIP SHOAL 206 #E005 | SS206E0500 | G01522 | 177114142000 |
| SHIP SHOAL 207 #A003 ST1 | SS207A0301 | G01523 | 177110072801 |
| SHIP SHOAL 207 #A004B | SS207A04B0 | G01523 | 177110075500 |
| SHIP SHOAL 207 #A006D | SS207A06D0 | G01523 | 177110078200 |
| SHIP SHOAL 207 #A008B | SS207A08B0 | G01523 | 177110080700 |
| SHIP SHOAL 207 #A009 | SS207A0900 | G01523 | 177110082400 |
| SHIP SHOAL 207 #A010D | SS207A10D0 | G01523 | 177110083900 |
| SHIP SHOAL 207 #A013 | SS207A1300 | G01523 | 177112002500 |
| SHIP SHOAL 207 #A015 ST1 | SS207A1501 | G01523 | 177112010601 |
| SHIP SHOAL 207 #A016 ST1 | SS207A1601 | G01523 | 177112011401 |
| SHIP SHOAL 207 #A018 | SS207A1800 | G01523 | 177112005000 |
| SHIP SHOAL 207 #A019ST | SS207A1901 | G01523 | 177114009401 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 207 #A020 | SS207A2000 | G01523 | 177114010300 |
| SHIP SHOAL 207 #A022 ST1 | SS207A2201 | G01523 | 177114011301 |
| SHIP SHOAL 207 #A023B | SS207A23B0 | G01523 | 177114013500 |
| SHIP SHOAL 207 #A024 | SS207A2400 | G01523 | 177114014300 |
| SHIP SHOAL 207 #A025 | SS207A2500 | G01523 | 177114015500 |
| SHIP SHOAL 207 #A026 | SS207A2601 | G01523 | 177112001101 |
| SHIP SHOAL 207 #A027 | SS207A2701 | G01523 | 177110079401 |
| SHIP SHOAL 207 #A028 | SS207A2801 | G01523 | 177110077301 |
| SHIP SHOAL 207 #A029 ST | SS207A2901 | G01523 | 177112001901 |
| SHIP SHOAL 207 #A030 | SS207A3001 | G01523 | 177110071501 |
| SHIP SHOAL 207 #A031 ST2 | SS207A3102 | G01523 | 177114117702 |
| SHIP SHOAL 207 #A032 | SS207A3201 | G01523 | 177114119701 |
| SHIP SHOAL 207 #A033 ST1 | SS207A3301 | G01523 | 177114121901 |
| SHIP SHOAL 207 #A034 | SS207A3400 | G01523 | 177114122200 |
| SHIP SHOAL 207 #A035 ST1 | SS207A3501 | G01523 | 177114133301 |
| SHIP SHOAL 207 #A036 | SS207A3600 | G01523 | 177114137700 |
| SHIP SHOAL 207 #D002 | SS207D0200 | G01523 | 177114025400 |
| SHIP SHOAL 207 #D007 | SS207D0700 | G01523 | 177114030300 |
| SHIP SHOAL 207 #D008 | SS207D0800 | G01523 | 177114032300 |
| SHIP SHOAL 207 #D009 | SS207D0900 | G01523 | 177114116400 |
| SHIP SHOAL 207 #D010 ST1 | SS207D1001 | G01523 | 177114116501 |
| SHIP SHOAL 214 #004 | SS21404 | 00828 | 177110060600 |
| SHIP SHOAL 214 #E003 | SS214E03 | 00828 | 177110071100 |
| SHIP SHOAL 214 #E004 | SS214E04 | 00828 | 177110073500 |
| SHIP SHOAL 214 #E007 | SS214E07 | 00828 | 177110070200 |
| SHIP SHOAL 214 #E014 | SS214E14 | 00828 | 177110076400 |
| SHIP SHOAL 214 #F003 | SS214F03 | 00828 | 177110069900 |
| SHIP SHOAL 214 #F005 | SS214F05 | 00828 | 177110073600 |
| SHIP SHOAL 214 #F006 | SS214F06 | 00828 | 177110075600 |
| SHIP SHOAL 214 #F007 | SS214F07 | 00828 | 177110075801 |
| SHIP SHOAL 214 #F008 | SS214F08 | 00828 | 177110077200 |
| SHIP SHOAL 214 #F009 | SS214F09 | 00828 | 177110078000 |
| SHIP SHOAL 214 #F014 | SS214F14 | 00828 | 177110078600 |
| SHIP SHOAL 214 #H004 | SS214H04 | 00828 | 177112017100 |
| SHIP SHOAL 214 #H007 | SS214H07 | 00828 | 177114000900 |
| SHIP SHOAL 214 #H008 | SS214H08 | 00828 | 177114002100 |
| SHIP SHOAL 214 #H009 | SS214H09 | 00828 | 177114002600 |
| SHIP SHOAL 214 #H011 | SS214H11 | 00828 | 177114003500 |
| SHIP SHOAL 214 #H012 | SS214H12 | 00828 | 177114004000 |
| SHIP SHOAL 214 #K001 | SS214K01 | 00828 | 177114053900 |
| SHIP SHOAL 214 #K002 | SS214K02 | 00828 | 177114054000 |
| SHIP SHOAL 214 #K008 | SS214K08 | 00828 | 177114145700 |
| SHIP SHOAL 214 #K010 | SS214K10 | 00828 | 177114144300 |
| SHIP SHOAL 214 #K011 | SS214K11 | 00828 | 177114147300 |
| SHIP SHOAL 214 #L001 | SS214L01 | 00828 | 177114066500 |
| SHIP SHOAL 214 #L002 | SS214L02 | 00828 | 177114068100 |
| SHIP SHOAL 214 #L003 | SS214L03 | 00828 | 177114068300 |
| SHIP SHOAL 214 #L004 | SS214L04 | 00828 | 177114070100 |
| SHIP SHOAL 214 #L005 | SS214L05 | 00828 | 177114070200 |
| SHIP SHOAL 214 #L006 | SS214L06 | 00828 | 177114074601 |
| SHIP SHOAL 214 #L007 | SS214L07 | 00828 | 177114075500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 214 #L008 | SS214L08 | 00828 | 177114076101 |
| SHIP SHOAL 216 #C004 ST1 | SS216C0401 | G01524 | 177112014901 |
| SHIP SHOAL 216 #C005A | SS216C05A0 | G01524 | 177112017400 |
| SHIP SHOAL 216 #C007 ST1 | SS216C0701 | G01524 | 177114001201 |
| SHIP SHOAL 216 #C009 ST1 | SS216C0901 | G01524 | 177114003801 |
| SHIP SHOAL 216 #C010 | SS216C1000 | G01524 | 177114004900 |
| SHIP SHOAL 216 #C012C | SS216C12C0 | G01524 | 177114006700 |
| SHIP SHOAL 216 #C013 | SS216C1300 | G01524 | 177114007700 |
| SHIP SHOAL 216 #C015 | SS216C1500 | G01524 | 177114009000 |
| SHIP SHOAL 216 #C016 | SS216C1601 | G01524 | 177114000101 |
| SHIP SHOAL 216 #C017A | SS216C17A1 | G01524 | 177114003001 |
| SHIP SHOAL 216 #C019 | SS216C1900 | G01524 | 177114031900 |
| SHIP SHOAL 216 #C023 | SS216C2300 | G01524 | 177114134600 |
| SHIP SHOAL 216 #C024 ST2 | SS216C2402 | G01524 | 177114135102 |
| SHIP SHOAL 232 #B012 | SS233B12 | G15293 | 1771141070 |
| SHIP SHOAL 232 #B02 | SS233002 | G15293 | 1771140371 |
| SHIP SHOAL 233 #B001 | SS233B01 | G01528 | 177114028700 |
| SHIP SHOAL 233 #B003 | SS233B03 | G01528 | 177114059800 |
| SHIP SHOAL 233 #B004 | SS233B04 | G01528 | 177114060400 |
| SHIP SHOAL 233 #B006 | SS233B06 | G01528 | 177114063500 |
| SHIP SHOAL 233 #B007 | SS233B07 | G01528 | 177114065400 |
| SHIP SHOAL 233 #B010 | SS233B10 | G01528 | 177114069901 |
| SHIP SHOAL 233 #B011 | SS233B11 | G01528 | 177114073201 |
| SHIP SHOAL 233 #E006 | SS233E06 | G01528 | 177110071900 |
| SHIP SHOAL 233 #H005 | SS233H05 | G01528 | 177112017800 |
| SHIP SHOAL 238 #A001 | SS238A01 | G03169 | 177124023400 |
| SHIP SHOAL 238 #A003 | SS238A03 | G03169 | 177124025701 |
| SHIP SHOAL 238 #A005 | SS238A05 | G03169 | 177124027200 |
| SHIP SHOAL 238 #B005 | SS238B05 | G03169 | 177114061400 |
| SHIP SHOAL 238 #B008 | SS238B08 | G03169 | 177114086600 |
| SHIP SHOAL 238 #C001 ( ORRI) | SS238C01 | G03169 | 177124068100 |
| SHIP SHOAL 238 #C002 | SS238C02 | G03169 | 177124068400 |
| SHIP SHOAL 246 #A001 | SS246A01 | G01027 | 177124005700 |
| SHIP SHOAL 246 #A002 | SS246A02 | G01027 | 177124007400 |
| SHIP SHOAL 246 #A004 | SS246A04 | G01027 | 177124008200 |
| SHIP SHOAL 246 #A005 | SS246A05 | G01027 | 177124008300 |
| SHIP SHOAL 246 #A006 | SS246A06 | G01027 | 177124009000 |
| SHIP SHOAL 246 #A007 | SS246A07 | G01027 | 177124009100 |
| SHIP SHOAL 246 #A009 | SS246A09 | G01027 | 177124010200 |
| SHIP SHOAL 246 #A011 | SS246A11 | G01027 | 177124011500 |
| SHIP SHOAL 246 #A014 | SS246A14 | G01027 | 177124014600 |
| SHIP SHOAL 246 #A019 | SS246A19 | G01027 | 177124016100 |
| SHIP SHOAL 246 #A020 | SS246A20 | G01027 | 177124012901 |
| SHIP SHOAL 246 #J001 | SS246J01 | G01027 | 177124061800 |
| SHIP SHOAL 247 #D003 | SS247D03 | G01028 | 177124013100 |
| SHIP SHOAL 247 #D007 | SS247D07 | G01028 | 177124015600 |
| SHIP SHOAL 247 #D009 | SS247D09 | G01028 | 177124016600 |
| SHIP SHOAL 247 #D012 | SS247D12 | G01028 | 177124017903 |
| SHIP SHOAL 247 #F002 | SS247F02 | G01028 | 177124019702 |
| SHIP SHOAL 247 #F010 | SS247F10 | G01028 | 177124022400 |
| SHIP SHOAL 247 #F014 | SS247F14 | G01028 | 177124022301 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 247 #F017 | SS247F17 | G01028 | 177124022901 |
| SHIP SHOAL 247 #F018 | SS247F18 | G01028 | 177124023201 |
| SHIP SHOAL 247 #F019 | SS247F19 | G01028 | 177124052500 |
| SHIP SHOAL 248 #D006 | SS248D06 | G01029 | 177124015000 |
| SHIP SHOAL 248 #D015 | SS248D15 | G01029 | 177124020600 |
| SHIP SHOAL 248 #D016 | SS248D16 | G01029 | 177124021000 |
| SHIP SHOAL 248 #D018 | SS248D18 | G01029 | 177124021100 |
| SHIP SHOAL 248 #D020 | SS248D2000 | G01029 | 177124022000 |
| SHIP SHOAL 248 #F008 | SS248F08 | G01029 | 177124022100 |
| SHIP SHOAL 248 #G001 | SS248G01 | G01029 | 177124049500 |
| SHIP SHOAL 248 #G002 | SS248G02 | G01029 | 177124053000 |
| SHIP SHOAL 248 #G003 | SS248G03 | G01029 | 177124053300 |
| SHIP SHOAL 249 #006 | SS24906 | G01030 | 177124062200 |
| SHIP SHOAL 249 #D002 | SS249D02 | G01030 | 177124012000 |
| SHIP SHOAL 249 #D004 | SS249D04 | G01030 | 177124017100 |
| SHIP SHOAL 249 #D005 | SS249D05 | G01030 | 177124014200 |
| SHIP SHOAL 249 #D008 | SS249D08 | G01030 | 177124015900 |
| SHIP SHOAL 249 #D011 | SS249D11 | G01030 | 177124018500 |
| SHIP SHOAL 249 #D014 | SS249D14 | G01030 | 177124019200 |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177124020800 |
| SHIP SHOAL 249 #D019 | SS249D19 | G01030 | 177124021500 |
| SHIP SHOAL 252 #C004 | SS252C04 | G01529 | 177122001500 |
| SHIP SHOAL 252 #C005 | SS252C05 | G01529 | 177122002000 |
| SHIP SHOAL 252 #C009 | SS252C09 | G01529 | 177124029401 |
| SHIP SHOAL 252 #C012 | SS252C12 | G01529 | 177124047300 |
| SHIP SHOAL 252 #F001 | SS252F01 | G01529 | 177124052000 |
| SHIP SHOAL 252 #F003 | SS252F03 | G01529 | 177124052200 |
| SHIP SHOAL 252 #F004 | SS252F04 | G01529 | 177124067400 |
| SHIP SHOAL 253 #C001 | SS253C01 | G01031 | 177122000100 |
| SHIP SHOAL 253 #C002 | SS253C02 | G01031 | 177122006700 |
| SHIP SHOAL 253 #C003 | SS253C03 | G01031 | 177122001400 |
| SHIP SHOAL 253 #C006 | SS253C06 | G01031 | 177122002100 |
| SHIP SHOAL 253 #C007 | SS253C07 | G01031 | 177122002300 |
| SHIP SHOAL 253 #C008 | SS253C08 | G01031 | 177124030000 |
| SHIP SHOAL 253 #C010 | SS253C10 | G01031 | 177124029300 |
| SHIP SHOAL 253 #C011 | SS253C11 | G01031 | 177124030900 |
| SHIP SHOAL 253 #D001 | SS253D01 | G01031 | 177122004200 |
| SHIP SHOAL 253 #D003 | SS253D03 | G01031 | 177124000400 |
| SHIP SHOAL 253 #D004 | SS253D04 | G01031 | 177124001100 |
| SHIP SHOAL 253 #D005 | SS253D05 | G01031 | 177124001200 |
| SHIP SHOAL 253 #D006 | SS253D06 | G01031 | 177124001300 |
| SHIP SHOAL 253 #D007 | SS253D07 | G01031 | 177124001401 |
| SHIP SHOAL 253 #D008 | SS253D08 | G01031 | 177124001600 |
| SHIP SHOAL 253 #D009 | SS253D09 | G01031 | 177124001800 |
| SHIP SHOAL 253 #D010 | SS253D10 | G01031 | 177124002001 |
| SHIP SHOAL 253 #D013 | SS253D13 | G01031 | 177124002600 |
| SHIP SHOAL 253 #D014 | SS253D14 | G01031 | 177124002701 |
| SHIP SHOAL 253 #E001 | SS253E01 | G01031 | 177124024200 |
| SHIP SHOAL 253 #E002 | SS253E02 | G01031 | 177124024600 |
| SHIP SHOAL 253 #E003 | SS253E03 | G01031 | 177124025301 |
| SHIP SHOAL 253 #E004 | SS253E04 | G01031 | 177124025400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 253 #E005 | SS253E05 | G01031 | 177124025500 |
| SHIP SHOAL 253 #E006 | SS253E06 | G01031 | 177124026600 |
| SHIP SHOAL 253 #E007 | SS253E07 | G01031 | 177124026800 |
| SHIP SHOAL 253 #E008 | SS253E08 | G01031 | 177124027600 |
| SHIP SHOAL 253 #E009 | SS253E09 | G01031 | 177124027701 |
| SHIP SHOAL 253 #E010 | SS253E10 | G01031 | 177124027800 |
| SHIP SHOAL 253 #E011 | SS253E11 | G01031 | 177124028200 |
| SHIP SHOAL 253 #E012 | SS253E12 | G01031 | 177124028400 |
| SHIP SHOAL 253 #E013 | SS253E13 | G01031 | 177124037500 |
| SHIP SHOAL 253 #E014 | SS253E14 | G01031 | 177124042100 |
| SHIP SHOAL 253 #E015 | SS253E15 | G01031 | 177124044401 |
| SHIP SHOAL 253 #F002 | SS253F02 | G01031 | 177124052100 |
| SHIP SHOAL 300 #A001 | SS300A01 | G07760 | 177124037401 |
| SHIP SHOAL 300 #A003 | SS300A03 | G07760 | 177124041602 |
| SHIP SHOAL 300 #A004 | SS300A04 | G07760 | 177124043100 |
| SHIP SHOAL 300 #A005 | SS300A05 | G07760 | 177124053600 |
| SHIP SHOAL 300 #A006 | SS300A06 | G07760 | 177124053700 |
| SHIP SHOAL 300 #B001 | SS300B01 | G07760 | 177124044100 |
| SHIP SHOAL 300 #B002 | SS300B02 | G07760 | 177124044800 |
| SHIP SHOAL 300 #B003 | SS300B03 | G07760 | 177124045600 |
| SHIP SHOAL 300 #B004 | SS300B04 | G07760 | 177124045700 |
| SHIP SHOAL 300 #B005 | SS300B05 | G07760 | 177124045900 |
| SHIP SHOAL 315 #A001 | SS315A01 | G09631 | 177124046901 |
| SHIP SHOAL 315 #A003 | SS315A03 | G09631 | 177124047402 |
| SHIP SHOAL206#E001(SS207E1 | SS207E0100 | G01523 | 177114115500 |
| SOUTH MARSH IS 066 #C001 | SM066C0100 | G01198 | 177070041200 |
| SOUTH MARSH IS 066 #C002 | SM066C0200 | G01198 | 177070049000 |
| SOUTH MARSH IS 066 #C003 | SM066C0300 | G01198 | 177074005800 |
| SOUTH MARSH IS 066 #C004 | SM066C0400 | G01198 | 177070050000 |
| SOUTH MARSH IS 066 #C005 | SM066C0500 | G01198 | 177070050700 |
| SOUTH MARSH IS 066 #C006 | SM066C0600 | G01198 | 177072018700 |
| SOUTH MARSH IS 066 #C007 | SM066C0700 | G01198 | 177070052800 |
| SOUTH MARSH IS 066 #C009B | SM066C09B0 | G01198 | 177072001200 |
| SOUTH MARSH IS 066 #C011 | SM066C1100 | G01198 | 177074072900 |
| SOUTH MARSH IS 066 #C012 | SM066C1200 | G01198 | 177074073500 |
| SOUTH MARSH IS 066 #D001 | SM066D0100 | G01198 | 177074025400 |
| SOUTH MARSH IS 066 #D003 | SM066D0300 | G01198 | 177074029000 |
| SOUTH MARSH IS 066 #D004 | SM066D0400 | G01198 | 177074032000 |
| SOUTH MARSH IS 066 #D005 | SM066D0500 | G01198 | 177074032600 |
| SOUTH MARSH IS 066 #D006 ST | SM066D0601 | G01198 | 177074031201 |
| SOUTH MARSH IS 066 #D007 ST1BP | SM066D0701 | G01198 | 177074027401 |
| SOUTH MARSH IS 087 #A002 | SM087A02 | G24870 | 177084092201 |
| SOUTH MARSH IS 087 #A004 | SM087A04 | G24870 | 177084093704 |
| SOUTH MARSH IS 087 #A005 | SM087A05 | G24870 | 177084093802 |
| SOUTH MARSH IS 087 #I002 | SM087I02 | G24870 | 177064097900 |
| SOUTH MARSH IS 102 #A001 | SM102A01 | G24872 | 177084091200 |
| SOUTH MARSH IS 102 #A006 | SM102A06 | G24872 | 177084094101 |
| SOUTH MARSH IS 132 #B002 | SM132B0200 | G02282 | 177084031800 |
| SOUTH MARSH IS 132 #B003 ST1 | SM132B0301 | G02282 | 177084031601 |
| SOUTH MARSH IS 132 #B004 | SM132B0400 | G02282 | 177084033000 |
| SOUTH MARSH IS 132 #B005 | SM132B0500 | G02282 | 177084033500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 132 #B006 | SM132B0600 | G02282 | 177084033900 |
| SOUTH MARSH IS 132 #B007 | SM132B0700 | G02282 | 177084034100 |
| SOUTH MARSH IS 132 #B008 | SM132B0800 | G02282 | 177084035500 |
| SOUTH MARSH IS 132 #B009 | SM132B0900 | G02282 | 177084036200 |
| SOUTH MARSH IS 132 #B010 | SM132B1000 | G02282 | 177084036500 |
| SOUTH MARSH IS 132 #B011 | SM132B1100 | G02282 | 177084037800 |
| SOUTH MARSH IS 135 #C003 BP1 | SM135C0301 | G19776 | 177084089401 |
| SOUTH MARSH IS 136 #A004 | SM136A0400 | G02588 | 177084021900 |
| SOUTH MARSH IS 136 #A008 | SM136A08 | G02588 | 177084032401 |
| SOUTH MARSH IS 136 #A010 | SM136A1000 | G02588 | 177084035700 |
| SOUTH MARSH IS 136 #A015 | SM136A1500 | G02588 | 177084071200 |
| SOUTH MARSH IS 136 #C007 | SM136C0700 | G02588 | 177084091900 |
| SOUTH MARSH IS 137 #A001 | SM137A0100 | G02589 | 177084007700 |
| SOUTH MARSH IS 137 #A003 | SM137A0300 | G02589 | 177084020400 |
| SOUTH MARSH IS 137 #A005 | SM137A0500 | G02589 | 177084024100 |
| SOUTH MARSH IS 137 #A009 | SM137A0900 | G02589 | 177084034600 |
| SOUTH MARSH IS 137 #A011 ST1 | SM137A1101 | G02589 | 177084030201 |
| SOUTH MARSH IS 137 #A012 | SM137A1200 | G02589 | 177084040400 |
| SOUTH MARSH IS 137 #A013 | SM137A1300 | G02589 | 177084042900 |
| SOUTH MARSH IS 137 #A014 | SM137A1400 | G02589 | 177084045000 |
| SOUTH MARSH IS 137 #A018 | SM137A1800 | G02589 | 177084072800 |
| SOUTH MARSH IS 139 #B001 | SM139B01 | G21106 | 177084092300 |
| SOUTH MARSH IS 139 #B002 | SM139B02 | G21106 | 177084093501 |
| SOUTH MARSH IS 142 #A001 | SM142A01 | G01216 | 177084014100 |
| SOUTH MARSH IS 142 #A002 | SM142A02 | G01216 | 177084014800 |
| SOUTH MARSH IS 142 #A003 | SM142A03 | G01216 | 177084016500 |
| SOUTH MARSH IS 142 #A004 | SM142A04 | G01216 | 177084017900 |
| SOUTH MARSH IS 142 #A005 | SM142A05 | G01216 | 177084019200 |
| SOUTH MARSH IS 142 #A006 | SM142A06 | G01216 | 177084020300 |
| SOUTH MARSH IS 142 #A007 | SM142A07 | G01216 | 177084021000 |
| SOUTH MARSH IS 142 #A008 | SM143A08 | G01216 | 177084023000 |
| SOUTH MARSH IS 142 #A009 | SM142A09 | G01216 | 177084026300 |
| SOUTH MARSH IS 142 #A010 | SM142A10 | G01216 | 177084027000 |
| SOUTH MARSH IS 142 #A011 | SM142A11 | G01216 | 177084091100 |
| SOUTH MARSH IS 142 #C001 | SM142C01 | G01216 | 177084082900 |
| SOUTH MARSH IS 142 #C002 | SM142C02 | G01216 | 177084084201 |
| SOUTH MARSH IS 142 #C003 | SM142C03 | G01216 | 177084085000 |
| SOUTH MARSH IS 142 #C004 | SM142C04 | G01216 | 177084085400 |
| SOUTH MARSH IS 142 #C005 | SM142C05 | G01216 | 177084091301 |
| SOUTH MARSH IS 146 #A008 | SM146A08 | G09546 | 177084077102 |
| SOUTH MARSH IS 150 #C006 BP2 | SM150C0600 | G16325 | 177084091802 |
| SOUTH MARSH IS 150 #D003 | SM150D0301 | G16325 | 177084096401 |
| SOUTH MARSH IS 268 #A002C | SM268A02C0 | G02310 | 177074007600 |
| SOUTH MARSH IS 268 #A007A | SM268A07A0 | G02310 | 177074013600 |
| SOUTH MARSH IS 268 #A017B | SM268A17B0 | G02310 | 177074016800 |
| SOUTH MARSH IS 268 #D001 | SM268D0100 | G02310 | 177074020600 |
| SOUTH MARSH IS 268 #D003D | SM268D03D0 | G02310 | 177074021600 |
| SOUTH MARSH IS 268 #D004 | SM268D0400 | G02310 | 177074022500 |
| SOUTH MARSH IS 268 #D006 | SM268D0600 | G02310 | 177074024700 |
| SOUTH MARSH IS 268 #D007 | SM268D0700 | G02310 | 177074025700 |
| SOUTH MARSH IS 268 #D012 | SM268D1200 | G02310 | 177074028700 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 268 #D016D | SM268D16D1 | G02310 | 177074029901 |
| SOUTH MARSH IS 269 #A021B | SM269A21B0 | G02311 | 177074018100 |
| SOUTH MARSH IS 269 #B002 | SM269B0200 | G02311 | 177074008100 |
| SOUTH MARSH IS 269 #B017 ST1 | SM269B1701 | G02311 | 177074075701 |
| SOUTH MARSH IS 269 #B019 BP1 | SM269B1901 | G02311 | 177074088501 |
| SOUTH MARSH IS 269 #F001 ST1 | SM269F0101 | G02311 | 177074080401 |
| SOUTH MARSH IS 280 #G001 | SM280G0100 | G14456 | 177074071400 |
| SOUTH MARSH IS 280 #G002 | SM280G0200 | G14456 | 177074080700 |
| SOUTH MARSH IS 280 #H001 ST1 | SM280H0102 | G14456 | 177074081802 |
| SOUTH MARSH IS 280 #H002 STB | SM280H0203 | G14456 | 177074082303 |
| SOUTH MARSH IS 281 #C001 | SM281C0100 | G02600 | 177074012500 |
| SOUTH MARSH IS 281 #C003A | SM281C03A0 | G02600 | 177074013900 |
| SOUTH MARSH IS 281 #C005A | SM281C05A0 | G02600 | 177074015300 |
| SOUTH MARSH IS 281 #C006 | SM281C0600 | G02600 | 177074015800 |
| SOUTH MARSH IS 281 #C008 ST1 | SM281C0801 | G02600 | 177074017701 |
| SOUTH MARSH IS 281 #C010 ST | SM281C1001 | G02600 | 177074020701 |
| SOUTH MARSH IS 281 #C011 ST1 | SM281C1101 | G02600 | 177074022401 |
| SOUTH MARSH IS 281 #C012A | SM281C12A0 | G02600 | 177074024100 |
| SOUTH MARSH IS 281 #C014 ST | SM281C1401 | G02600 | 177074026901 |
| SOUTH MARSH IS 281 #C016C | SM281C16C0 | G02600 | 177074029600 |
| SOUTH MARSH IS 281 #C017 | SM281C1700 | G02600 | 177074030500 |
| SOUTH MARSH IS 281 #C019B | SM281C19B0 | G02600 | 177074034400 |
| SOUTH MARSH IS 281 #C020 ST1 | SM281C2001 | G02600 | 177074034901 |
| SOUTH MARSH IS 281 #C021B | SM281C21B0 | G02600 | 177074035500 |
| SOUTH MARSH IS 281 #C023 ST2 | SM281C2302 | G02600 | 177074036802 |
| SOUTH MARSH IS 281 #C024 | SM281C2400 | G02600 | 177074037300 |
| SOUTH MARSH IS 281 #C025 | SM281C2500 | G02600 | 177074083500 |
| SOUTH MARSH IS 281 #C026 | SM281C2600 | G02600 | 177074083700 |
| SOUTH MARSH IS 281 #C027 | SM281C2700 | G02600 | 177074085200 |
| SOUTH MARSH IS 281 #C028 BP2 | SM281C2802 | G02600 | 177074089402 |
| SOUTH MARSH IS 281 #D002 | SM281D0200 | G02600 | 177074021100 |
| SOUTH MARSH IS 281 #D009 | SM281D0900 | G02600 | 177074027100 |
| SOUTH MARSH IS 281 #D010A | SM281D10A0 | G02600 | 177074027500 |
| SOUTH MARSH IS 281 #D011 | SM281D1100 | G02600 | 177074028000 |
| SOUTH MARSH IS 281 #D013 | SM281D1300 | G02600 | 177074029100 |
| SOUTH MARSH IS 281 #D014A | SM281D14A0 | G02600 | 177074029700 |
| SOUTH MARSH IS 281 #D05A | SM281D05A0 | G02600 | 177074023200 |
| SOUTH MARSH IS 281 #D08A | SM281D08A0 | G02600 | 177074026600 |
| SOUTH MARSH IS 281 #E001D | SM281E01D0 | G02600 | 177074018500 |
| SOUTH MARSH IS 281 #E002A | SM281E02A0 | G02600 | 177074024600 |
| SOUTH MARSH IS 281 #E003 | SM281E0300 | G02600 | 177074027800 |
| SOUTH MARSH IS 281 #E004 | SM281E0400 | G02600 | 177074028500 |
| SOUTH MARSH IS 281 #E005A | SM281E05A0 | G02600 | 177074029300 |
| SOUTH MARSH IS 281 #E006 | SM281E0601 | G02600 | 177074030101 |
| SOUTH MARSH IS 281 #E007 | SM281E0700 | G02600 | 177074031600 |
| SOUTH MARSH IS 281 #E008A | SM281E08A1 | G02600 | 177074033101 |
| SOUTH MARSH IS 281 #E009A | SM281E09A0 | G02600 | 177074033800 |
| SOUTH MARSH IS 281 #E010A | SM281E10A0 | G02600 | 177074034800 |
| SOUTH MARSH IS 281 #E011 ST | SM281E1101 | G02600 | 177074035601 |
| SOUTH MARSH IS 281 #E012 | SM281E1200 | G02600 | 177074036000 |
| SOUTH MARSH IS 281 #E013 | SM281E1300 | G02600 | 177074036600 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 281 #E014 | SM281E1400 | G02600 | 177074038600 |
| SOUTH MARSH IS 281 #I001 | SM281I0101 | G02600 | 177074082601 |
| SOUTH MARSH IS 281 #I002 ST1 | SM281I0201 | G02600 | 177074082701 |
| SOUTH MARSH IS 281 #I003 | SM281I0300 | G02600 | 177074082800 |
| SOUTH PASS 017 #A023 | SP017A23 | G02938 | 177212022601 |
| SOUTH PASS 017 #D006 | SP017D06 | G02938 | 177214012901 |
| SOUTH PASS 017 #D009 | SP017D09 | G02938 | 177214013303 |
| SOUTH PASS 017 #D029 | SP017D29 | G02938 | 177214012203 |
| SOUTH PASS 017 #D032 | SP017D32 | G02938 | 177214030101 |
| SOUTH PASS 017 #E004 | SP017E04 | G02938 | 177214020300 |
| SOUTH PASS 017 #E006 | SP017E06 | G02938 | 177214020101 |
| SOUTH PASS 017 #G016 | SP017G16 | G02938 | 177214035501 |
| SOUTH PASS 017 #G026 | SP017G26 | G02938 | 177214037203 |
| SOUTH PASS 017 #G029 | SP017G29 | G02938 | 177214037504 |
| SOUTH PASS 037 #003 | SP03703 | 00697 | 177214045700 |
| SOUTH PASS 042 SWD 1 | SL301101 | 03011 | UNKNOWN |
| SOUTH PASS 059 #A018 | SP059A18 | G01608 | 177234015204 |
| SOUTH PASS 059 #C007 | SP059C07 | G02943 | 177212021402 |
| SOUTH PASS 059 #C008 | SP059C08 | G01608 | 177212022502 |
| SOUTH PASS 059 #C017 | SP059C17 | G02943 | 177212022802 |
| SOUTH PASS 059 #C018 | SP059C18 | G02943 | 177212024601 |
| SOUTH PASS 059 #C019 | SP059C19 | G01608 | 177214006906 |
| SOUTH PASS 059 #C020 | SP059C20 | G02943 | 177214007004 |
| SOUTH PASS 059 #C022 | SP059C22 | G02943 | 177214009002 |
| SOUTH PASS 059 #C026 | SP059C26 | G02943 | 177214010400 |
| SOUTH PASS 059 #C027 | SP059C27 | G02943 | 177214011302 |
| SOUTH PASS 059 #C030 | SP059C30 | G01608 | 177214005703 |
| SOUTH PASS 059 #C037 | SP059C37 | G02942 | 177212022701 |
| SOUTH PASS 059 #C039 | SP059C39 | G02943 | 177214006201 |
| SOUTH PASS 059 #C040 | SP059C40 | G01608 | 177214032304 |
| SOUTH PASS 059 #C041 | SP059C41 | G02942 | 177214032602 |
| SOUTH PASS 059 #C042 | SP059C42 | G02943 | 177214039603 |
| SOUTH PASS 059 #D023 | SP059D23 | G02942 | 177214017802 |
| SOUTH PASS 059 #D025 | SP059D25 | G02943 | 177214018403 |
| SOUTH PASS 059 #D026 | SP059D26 | G02942 | 177214019302 |
| SOUTH PASS 059 #D027 | SP059D27 | G02942 | 177214020500 |
| SOUTH PASS 059 #D033 | SP059D33 | G02942 | 177214031102 |
| SOUTH PASS 059 #D034 | SP059D34 | G02943 | 177214030901 |
| SOUTH PASS 059 #G002 | SP059G02 | G02943 | 177214033500 |
| SOUTH PASS 059 #G005 | SP059G05 | G02943 | 177214034000 |
| SOUTH PASS 059 #G012 | SP059G12 | G02943 | 177214035100 |
| SOUTH PASS 059 #G018 | SP059G18 | G02943 | 177214035601 |
| SOUTH PASS 059 #G020 | SP059G20 | G02943 | 177214036101 |
| SOUTH PASS 060 #A003 | SP060A03 | G02137 | 177214001501 |
| SOUTH PASS 060 #A004 | SP060A04 | G02137 | 177214001601 |
| SOUTH PASS 060 #A005 | SP060A05 | G02137 | 177212012400 |
| SOUTH PASS 060 #A006 | SP060A06 | G02137 | 177214001801 |
| SOUTH PASS 060 #A007 | SP060A07 | G02137 | 177212012700 |
| SOUTH PASS 060 #A009 | SP060A09 | G02137 | 177212014702 |
| SOUTH PASS 060 #A010 | SP060A10 | G02137 | 177214002902 |
| SOUTH PASS 060 #A012 | SP060A12 | G02137 | 177212017600 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 060 #A013 | SP060A13 | G01608 | 177214004000 |
| SOUTH PASS 060 #A017 | SP060A17 | G01608 | 177214004901 |
| SOUTH PASS 060 #A018 | SP060A18 | G02137 | 177212020600 |
| SOUTH PASS 060 #A019 | SP060A19 | G02137 | 177212020802 |
| SOUTH PASS 060 #A021 | SP060A21 | G02137 | 177212022201 |
| SOUTH PASS 060 #A025 | SP060A25 | G02938 | 177212024501 |
| SOUTH PASS 060 #A028 | SP060A28 | G02137 | 177212025003 |
| SOUTH PASS 060 #A029 | SP060A29 | G01608 | 177214008101 |
| SOUTH PASS 060 #A031 | SP060A31 | G01608 | 177214007106 |
| SOUTH PASS 060 #A032 | SP060A32 | G01608 | 177212018702 |
| SOUTH PASS 060 #A033 | SP060A33 | G02137 | 177214001303 |
| SOUTH PASS 060 #A034 | SP060A34 | G01608 | 177212017501 |
| SOUTH PASS 060 #A035 | SP060A35 | G02137 | 177212019302 |
| SOUTH PASS 060 #A036 | SP060A36 | G01608 | 177214001202 |
| SOUTH PASS 060 #A037 | SP060A37 | G02137 | 177212013701 |
| SOUTH PASS 060 #B001 | SP060B01 | G01608 | 177214002001 |
| SOUTH PASS 060 #B003 | SP060B03 | G01608 | 177214002302 |
| SOUTH PASS 060 #B004 | SP060B04 | G02137 | 177214002402 |
| SOUTH PASS 060 #B006 | SP060B06 | G01608 | 177214003001 |
| SOUTH PASS 060 #B007 | SP060B07 | G01608 | 177214003601 |
| SOUTH PASS 060 #B008 | SP060B08 | G01608 | 177214003701 |
| SOUTH PASS 060 #B012 | SP060B12 | G01608 | 177214004202 |
| SOUTH PASS 060 #B013 | SP060B13 | G01608 | 177214003904 |
| SOUTH PASS 060 #B014 | SP060B14 | G01608 | 177214004403 |
| SOUTH PASS 060 #B015 | SP060B15 | G01608 | 177214004502 |
| SOUTH PASS 060 #B017 | SP060B17 | G01608 | 177214004703 |
| SOUTH PASS 060 #B020 | SP060B20 | G01608 | 177214005101 |
| SOUTH PASS 060 #B021 | SP060B21 | G01608 | 177214002502 |
| SOUTH PASS 060 #B022 | SP060B22 | G01608 | 177214004106 |
| SOUTH PASS 060 #B026 | SP060B26 | G01608 | 177214005003 |
| SOUTH PASS 060 #C006 | SP060C06 | G02137 | 177212021100 |
| SOUTH PASS 060 #C023 | SP060C23 | G02137 | 177214009200 |
| SOUTH PASS 060 #C031 | SP060C31 | G02137 | 177214011806 |
| SOUTH PASS 060 #C038 | SP060C38 | G01608 | 177214005502 |
| SOUTH PASS 060 #D002 | SP060D02 | G02137 | 177214011601 |
| SOUTH PASS 060 #D010 | SP060D10 | G02137 | 177214013902 |
| SOUTH PASS 060 #D012 | SP060D12 | G02137 | 177214014301 |
| SOUTH PASS 060 #D014 | SP060D14 | G01608 | 177214014401 |
| SOUTH PASS 060 #D015 | SP060D15 | G01608 | 177214015102 |
| SOUTH PASS 060 #D016 | SP060D16 | G02137 | 177214016101 |
| SOUTH PASS 060 #D017 | SP060D17 | G02137 | 177214016202 |
| SOUTH PASS 060 #D018 | SP060D18 | G02137 | 177214016501 |
| SOUTH PASS 060 #D021 | SP060D21 | G02137 | 177214016703 |
| SOUTH PASS 060 #D022 | SP060D22 | G02137 | 177214015802 |
| SOUTH PASS 060 #D024 | SP060D24 | G02137 | 177214018200 |
| SOUTH PASS 060 #D025 | SP060D25 | G02137 | 177214038901 |
| SOUTH PASS 060 #D031 | SP060D31 | G02137 | 177214028901 |
| SOUTH PASS 060 #D035 | SP060D35 | G02137 | 177214022703 |
| SOUTH PASS 060 #E001 | SP060E01 | G01608 | 177214019202 |
| SOUTH PASS 060 #E002 | SP060E02 | G01608 | 177214021602 |
| SOUTH PASS 060 #E003 | SP060E03 | G01608 | 177214022201 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 060 #E005 | SP060E05 | G01608 | 177214022902 |
| SOUTH PASS 060 #E008 | SP060E08 | G01608 | 177214023900 |
| SOUTH PASS 060 #E009 | SP060E09 | G01608 | 177214024405 |
| SOUTH PASS 060 #E011 | SP060E11 | G01608 | 177214027500 |
| SOUTH PASS 060 #E012 | SP060E12 | G01608 | 177214025100 |
| SOUTH PASS 060 #E013 | SP060E13 | G01608 | 177214025601 |
| SOUTH PASS 060 #E014 | SP060E14 | G01608 | 177214025903 |
| SOUTH PASS 060 #E015 | SP060E15 | G01608 | 177214026300 |
| SOUTH PASS 060 #E016 | SP060E16 | G01608 | 177214026603 |
| SOUTH PASS 060 #E019 | SP060E19 | G01608 | 177214027400 |
| SOUTH PASS 060 #E021 | SP060E21 | G01608 | 177214027802 |
| SOUTH PASS 060 #E022 | SP060E22 | G02137 | 177214028700 |
| SOUTH PASS 060 #E023 | SP060E23 | G01608 | 177214029302 |
| SOUTH PASS 060 #E024 | SP060E24 | G01608 | 177214029403 |
| SOUTH PASS 060 #E025 | SP060E25 | G01608 | 177214031301 |
| SOUTH PASS 060 #E026 | SP060E26 | G01608 | 177214031501 |
| SOUTH PASS 060 #E028 | SP060E28 | G01608 | 177214032201 |
| SOUTH PASS 060 #G001 | SP060G01 | G02137 | 177214032901 |
| SOUTH PASS 060 #G003 | SP060G03 | G02137 | 177214033400 |
| SOUTH PASS 060 #G004 | SP060G04 | G02137 | 177214033700 |
| SOUTH PASS 060 #G006 | SP060G06 | G02137 | 177214033801 |
| SOUTH PASS 060 #G007 | SP060G07 | G01608 | 177214034102 |
| SOUTH PASS 060 #G008 | SP060G08 | G02137 | 177214034200 |
| SOUTH PASS 060 #G009 | SP060G09 | G01608 | 177214034600 |
| SOUTH PASS 060 #G010 | SP060G10 | G02137 | 177214034900 |
| SOUTH PASS 060 #G011 | SP060G11 | G01608 | 177214035000 |
| SOUTH PASS 060 #G013 | SP060G13 | G01608 | 177214034803 |
| SOUTH PASS 060 #G014 | SP060G14 | G02137 | 177214035301 |
| SOUTH PASS 060 #G015 | SP060G15 | G02137 | 177214035404 |
| SOUTH PASS 060 #G017 | SP060G17 | G01608 | 177214035701 |
| SOUTH PASS 060 #G019 | SP060G19 | G02137 | 177214035903 |
| SOUTH PASS 060 #G021 | SP060G21 | G02137 | 177214036201 |
| SOUTH PASS 060 #G022 | SP060G22 | G01608 | 177214036501 |
| SOUTH PASS 060 #G023 | SP060G23 | G01608 | 177214036700 |
| SOUTH PASS 060 #G024 | SP060G24 | G01608 | 177214036900 |
| SOUTH PASS 060 #G025 | SP060G25 | G02137 | 177214037001 |
| SOUTH PASS 060 #G027 | SP060G27 | G01608 | 177214037100 |
| SOUTH PASS 060 #G028 | SP060G28 | G01608 | 177214037301 |
| SOUTH PASS 060 #G031 | SP060G31 | G02137 | 177214038101 |
| SOUTH PASS 060 #G032 | SP060G32 | G02137 | 177214038302 |
| SOUTH PASS 060 #G033 | SP060G33 | G01608 | 177214037700 |
| SOUTH PASS 060 #G034 | SP060G34 | G02137 | 177214038901 |
| SOUTH PASS 060 #G035 | SP060G35 | G02137 | 177214039200 |
| SOUTH PASS 060 #G036 | SP060G36 | G02137 | 177214039301 |
| SOUTH PASS 061 #B018 | SP061B18 | G01609 | 177214004802 |
| SOUTH PASS 061 #E029 | SP061E29 | G01609 | 177214031802 |
| SOUTH PASS 066 #A012 | SP066A1200 | G01611 | 177234011401 |
| SOUTH PASS 066 #A015 | SP066A15 | G01611 | 177234011702 |
| SOUTH PASS 066 #C001 | SP066C0100 | G01611 | 177212019402 |
| SOUTH PASS 066 #C013 | SP066C1300 | G01611 | 177214005803 |
| SOUTH PASS 066 #C021 | SP066C2100 | G01611 | 177214008303 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 066 #C025 | SP066C2500 | G01611 | 177214010301 |
| SOUTH PASS 066 #C029 | SP066C29 | G01611 | 177214012702 |
| SOUTH PASS 066 #C036 | SP066C3600 | G01611 | 177214005305 |
| SOUTH PASS 067 #A001 | SP067A01 | G01612 | 177234010501 |
| SOUTH PASS 067 #A004 | SP067A04 | G01612 | 177234010603 |
| SOUTH PASS 067 #A005 | SP067A05 | G01612 | 177234010702 |
| SOUTH PASS 067 #A008 | SP067A08 | G01612 | 177234010901 |
| SOUTH PASS 067 #A009 | SP067A09 | G01612 | 177234011001 |
| SOUTH PASS 067 #A010 | SP067A10 | G01612 | 177234011100 |
| SOUTH PASS 067 #A011 | SP067A11 | G01612 | 177234011200 |
| SOUTH PASS 067 #A013 | SP067A13 | G01612 | 177234011502 |
| SOUTH PASS 067 #A014 | SP067A14 | G01612 | 177234011601 |
| SOUTH PASS 067 #A016 | SP067A16 | G01612 | 177234015101 |
| SOUTH PASS 067 #A019 | SP067A19 | G01612 | 177234015700 |
| SOUTH PASS 067 #A020 | SP067A20 | G01612 | 177234015301 |
| SOUTH PASS 067 #A021 | SP067A21 | G01612 | 177234015600 |
| SOUTH PASS 067 #A022 | SP067A22 | G01612 | 177234015900 |
| SOUTH PASS 067 #A023 | SP067A23 | G01612 | 177234015801 |
| SOUTH PASS 067 #A024 | SP067A24 | G01612 | 177234016000 |
| SOUTH PASS 067 #A025 | SP067A25 | G01612 | 177234017400 |
| SOUTH PELTO 013 #009 | PL01300900 | G03171 | 177134019701 |
| SOUTH TIMBALIER 195 #B001 | ST195B01 | G03593 | 177154091400 |
| SOUTH TIMBALIER 195 #B002 | ST195B02 | G03593 | 177154092500 |
| SOUTH TIMBALIER 195 #B003 | ST195B03 | G03593 | 177154117901 |
| SOUTH TIMBALIER 315 #A003 | ST315A03 | G23946 | 177164029004 |
| SOUTH TIMBALIER 316 #A001 | ST316A0100 | G22762 | 177164028600 |
| SOUTH TIMBALIER 316 #A002 | ST316A0200 | G22762 | 177164028800 |
| STATE TRACT 773 #L001 (NW/4) | ST773L1N | 111650 | 427023021000 |
| STATE TRACT 773 #L001 (SW/4) | ST773L1S | 136449 | 426023016700 |
| STATE TRACT 773 #L002 | ST773L2 | 115727 | 427023021800 |
| STATE TRACT 773 #L003 | ST773L3 | 114988 | 427023022000 |
| VERMILION 196 #A001 | VR196A01 | G19760 | 177054112300 |
| VERMILION 196 #A002 | VR196A02 | G19760 | 177054116700 |
| VERMILION 196 #A004 | VR196A04 | G19760 | 177054127900 |
| VERMILION 207 #A003 | VR207A03 | G19761 | 177054117600 |
| VERMILION 261 #A001 | VR261A0100 | G03328 | 177064029000 |
| VERMILION 261 #A002 | VR261A0200 | G03328 | 177064033000 |
| VERMILION 261 #A004 | VR261A0402 | G03328 | 177064032902 |
| VERMILION 261 #A005 | VR261A0500 | G03328 | 177064034600 |
| VERMILION 261 #A007 | VR261A0700 | G03328 | 177064035400 |
| VERMILION 261 #A008 | VR261A0800 | G03328 | 177064084900 |
| VERMILION 262 #A006 | VR262A06 | G34257 | 177064035201 |
| VERMILION 272 #A001 | VR272A01 | G23829 | 177064091300 |
| VERMILION 272 #A002 | VR272A02 | G23829 | 177064091400 |
| VERMILION 272 #A003 | VR272A03 | G23829 | 177084093603 |
| VERMILION 272 #A004 | VR272A04 | G23829 | 177064091602 |
| VERMILION 272 #A005 | VR272A05 | G23829 | 177064091700 |
| VERMILION 272 #A006 | VR272A06 | G23829 | 177064096100 |
| VERMILION 272 #A007 | VR272A07 | G23829 | 177064096200 |
| VERMILION 272 #B001 | VR272B01 | G23829 | 177064091800 |
| VERMILION 272 #B002 | VR272B02 | G23829 | 177064092502 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VERMILION 272 #C001 | VR272C01 | G23829 | 177064096001 |
| VERMILION 273 #B003 | VR273B03 | G14412 | 177064092600 |
| VERMILION 279 #A001 | VR279A01 | G11881 | 177064074701 |
| VERMILION 279 #A002 | VR279A02 | G11881 | 177064075701 |
| VERMILION 279 #A003 | VR279A03 | G11881 | 177064076601 |
| VERMILION 279 #A004 | VR279A04 | G11881 | 177064087600 |
| VERMILION 279 #A005 | VR279A05 | G11881 | 177064075802 |
| VERMILION 279 #A006 | VR279A06 | G11881 | 177064079900 |
| VERMILION 279 #A007 | VR279A07 | G11881 | 177064078800 |
| VERMILION 279 #A008 | VR279A08 | G11881 | 177064079600 |
| VERMILION 279 #A009 | VR279A09 | G11881 | 177064080400 |
| VERMILION 279 #A010 | VR279A10 | G11881 | 177064080700 |
| VERMILION 279 #A011 | VR279A11 | G11881 | 177064080802 |
| VERMILION 279 #A012 | VR279A12 | G11881 | 177064087100 |
| VERMILION 313 #B001 | VR313B01 | G01172 | 177064028100 |
| VERMILION 313 #B002 | VR313B02 | G01172 | 177064029700 |
| VERMILION 313 #B003 | VR313B03 | G01172 | 177064030100 |
| VERMILION 313 #B005 | VR313B05 | G01172 | 177064032800 |
| VERMILION 313 #B006 | VR313B06 | G01172 | 177064031900 |
| VERMILION 313 #B007 | VR313B07 | G01172 | 177064032700 |
| VERMILION 313 #B009 | VR313B09 | G01172 | 177064033801 |
| VERMILION 313 #B010 | VR313B10 | G01172 | 177064035700 |
| VERMILION 313 #B011 | VR313B11 | G01172 | 177064037100 |
| VERMILION 313 #B012 | VR313B12 | G01172 | 177064036200 |
| VERMILION 313 #C001 | VR313C01 | G01172 | 177064071700 |
| VERMILION 313 #C002 | VR313C02 | G01172 | 177064071900 |
| VERMILION 313 #C003 | VR313C03 | G01172 | 177064072200 |
| VERMILION 313 #C004 | VR313C04 | G01172 | 177064072000 |
| VERMILION 313 #D001 | VR313D01 | G01172 | 177064090000 |
| VERMILION 313 #D002 | VR313D02 | G01172 | 177064090201 |
| VERMILION 313 #D003 | VR313D03 | G01172 | 177064090300 |
| VERMILION 313 #D004 | VR313D04 | G01172 | 177064090501 |
| VERMILION 313 #D005 | VR313D05 | G01172 | 177064090701 |
| VERMILION 408 #A001 | VR408A01 | G15212 | 177064084401 |
| VERMILION 408 #A002 | VR408A02 | G15212 | 177064086600 |
| VERMILION 408 #A003 | VR408A03 | G15212 | 177064089900 |
| VIOSCA KNOLL 824 #004 | VK82400402 | G15436 | 608164032902 |
| VIOSCA KNOLL 826 A-10 ST1 | VK826A1001 | G06888 | 608164032601 |
| VIOSCA KNOLL 826 A-12 BP1 | VK826A1201 | G06888 | 608164038101 |
| VIOSCA KNOLL 826 A-13 | VK826A13 | G06888 | 608164038200 |
| VIOSCA KNOLL 826 A-14 ST1 | VK826A1401 | G06888 | 608164038001 |
| VIOSCA KNOLL 826 A-3 | VK826A03 | G06888 | 608164022000 |
| VIOSCA KNOLL 826 A-4 | VK826A04 | G06888 | 608164020500 |
| VIOSCA KNOLL 826 A-5 | VK826A05 | G06888 | 608164022100 |
| VIOSCA KNOLL 826 A-6 | VK826A06 | G06888 | 608164022200 |
| VIOSCA KNOLL 826 A-7 | VK826A07 | G06888 | 608164023600 |
| VIOSCA KNOLL 826 A-8 | VK826A08 | G06888 | 608164032400 |
| VIOSCA KNOLL 826 A-9 ST1 | VK826A0901 | G06888 | 608164032501 |
| VIOSCA KNOLL 826 A-1 ST | VK826A0101 | G06888 | 608164019401 |
| VIOSCA KNOLL 826 A-2 | VK826A02 | G06888 | 608164021900 |
| VIOSCA KNOLL 826 SS12 | VK826SS012 | G06888 | 608164035800 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VIOSCA KNOLL 917 SS01 ST2 | VK917SS102 | G15441 | 608164040002 |
| VIOSCA KNOLL 962 SS01 | VK962SS01 | G15445 | 608164039901 |
| WEST CAMERON 009 #001 SL 18287 | SL1828701 | 18287 | 177002025000 |
| WEST CAMERON 065 #B018 | WC065B1800 | G02825 | 177004098900 |
| WEST CAMERON 065 #B019 | WC065B1901 | G02825 | 177004099501 |
| WEST CAMERON 065 #B020 ST2 | WC065B2001 | G02825 | 177004099701 |
| WEST CAMERON 066 #A017 | WC066A1700 | G02826 | 177004100600 |
| WEST CAMERON 066 #B002 | WC066B0200 | G02826 | 177004017600 |
| WEST CAMERON 066 #B003 | WC066B0300 | G02826 | 177004017800 |
| WEST CAMERON 066 #B004 | WC066B0400 | G02826 | 177004018300 |
| WEST CAMERON 066 #B006 | WC066B0600 | G02826 | 177004019100 |
| WEST CAMERON 066 #B007 | WC066B0700 | G02826 | 177004019600 |
| WEST CAMERON 066 #B008D | WC066B08D0 | G02826 | 177004020400 |
| WEST CAMERON 066 #B009 | WC066B0900 | G02826 | 177004020801 |
| WEST CAMERON 066 #B010 | WC066B1000 | G02826 | 177004021400 |
| WEST CAMERON 066 #B012 | WC066B1200 | G02826 | 177004023000 |
| WEST CAMERON 066 #B014 | WC066B1401 | G02826 | 177004022001 |
| WEST CAMERON 066 #B015 | WC066B1500 | G02826 | 177004087600 |
| WEST CAMERON 066 #B016 | WC066B1601 | G02826 | 177004097101 |
| WEST CAMERON 066 #B017 | WC066B1700 | G02826 | 177004098700 |
| WEST CAMERON 066 #E001 | WC066E0100 | G02826 | 177004034700 |
| WEST CAMERON 066 #E002 | WC066E0200 | G02826 | 177004043400 |
| WEST CAMERON 066 #E003 | WC066E0300 | G02826 | 177004047900 |
| WEST CAMERON 066 #E004 | WC066E0400 | G02826 | 177004051500 |
| WEST CAMERON 072 #001 | WC07200100 | G23735 | 177004114900 |
| WEST CAMERON 072 #002 | WC07200200 | G23735 | 177004119400 |
| WEST CAMERON 072 #003 | WC07200301 | G23735 | 177004125001 |
| WEST CAMERON 295 #A001 | WC295A0101 | G24730 | 177014037501 |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 |
| WEST CAMERON 485 #A001 | WC485A01 | G02220 | 177024010002 |
| WEST CAMERON 485 #A010 | WC485A10 | G02220 | 177024117800 |
| WEST CAMERON 485 #A011 | WC485A11 | G02220 | 177024118300 |
| WEST CAMERON 485 #B006 | WC485B06 | G02220 | 177024108300 |
| WEST CAMERON 498 #B001 | WC498B01 | G03520 | 177024106500 |
| WEST CAMERON 498 #B002 | WC498B02 | G03520 | 177024106901 |
| WEST CAMERON 498 #B003 | WC498B03 | G03520 | 177024109002 |
| WEST CAMERON 498 #B004 | WC498B04 | G03520 | 177024109400 |
| WEST CAMERON 498 #B005 | WC498B05 | G03520 | 177024116001 |
| WEST CAMERON 498 #B006 | WC498B06 | G03520 | 177024116100 |
| WEST CAMERON 498 #B007 | WC498B07 | G03520 | 177024116200 |
| WEST CAMERON 498 #B008 | WC498B08 | G03520 | 177024118801 |
| WEST CAMERON 498 #B009 | WC498B09 | G03520 | 177024120201 |
| WEST CAMERON 498 #B010 | WC498B10 | G03520 | 177024121000 |
| WEST CAMERON 498 #B011 | WC498B11 | G03520 | 177024131700 |
| WEST CAMERON 507 #A002 | WC507A02 | G02549 | 177024018200 |
| WEST CAMERON 507 #A003 | WC507A03 | G02549 | 177024020101 |
| WEST CAMERON 507 #A004 | WC507A04 | G10594 | 177024023002 |
| WEST CAMERON 507 #A005 | WC507A05 | G02549 | 177024023500 |
| WEST CAMERON 507 #A006 | WC507A06 | G02549 | 177024024902 |
| WEST CAMERON 507 #A007 | WC507A07 | G02549 | 177024094900 |
| WEST CAMERON 507 #A008 | WC507A08 | G02549 | 177024094400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 507 #A009 | WC507A09 | G02549 | 177024094700 |
| WEST CAMERON 507 #B001 | WC507B01 | G02549 | 177024098304 |
| WEST CAMERON 507 #B002 | WC507B02 | G02549 | 177024099001 |
| WEST CAMERON 507 #B003 | WC507B03 | G02549 | 177024100201 |
| WEST CAMERON 507 #B004 | WC507B04 | G02549 | 177024108202 |
| WEST CAMERON 507 #B005 | WC507B05 | G02549 | 177024101200 |
| WEST CAMERON 507 #C001 | WC507C01 | G02549 | 177024130300 |
| WEST CAMERON 67 #D1 | WC067D0100 | G03256 | 177004031600 |
| WEST CAMERON 67 #D10 | - | G03256 | 177004098501 |
| WEST CAMERON 67 #D6 | - | G03256 | 177004040700 |
| WEST CAMERON 67 #D9 | WC067D0900 | G03256 | 177004078600 |
| WEST DELTA 027 #008 | WD02708 | G04473 | 177194065801 |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| BRAZOS A-105 P/F-A | BAA105PFA | G01757 | BAA105 | 87.5% |
| BRAZOS A-105 P/F-B | BAA105PFB | G01757 | BAA105 | 87.5% |
| BRAZOS A-133 P/F-A | BAA133APLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-B | BAA133BPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-C-AUX | BAA133CAUX | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-D | BAA133DPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-E | BAA133EPLT | G02665 | BAA133 | 25.0% |
| EAST BREAKS 159 P/F-A | EB159PFA | G02646 | EB159 | 66.7% |
| EAST BREAKS 160 P/F-A | EB160PFA | G02647 | EB160 | 100.0% |
| EAST BREAKS 165 P/F-A | EB165PFA | G06280 | EB165 | 100.0% |
| EAST CAMERON 330 P/F-B | EC330PFB | G03540 | EC330 | 95.0% |
| EAST CAMERON 332 P/F-A | EC332PFA | G09478 | EC332 | 90.4% |
| EAST CAMERON 349 P/F-A | EC349PFA | G14385 | EC349 | 25.0% |
| EUGENE IS 032 #012 CAS P/F | EI032PF12 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #016 CAS P/F | EI032PF16 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #020 CAS P/F | EI032PF20 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #029 CAS P/F | EI032PF29 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #8 CAS P/F | EI032PF08 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-10 | EI032PF10 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-22 | EI032PF22 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-23 | EI032PF23 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-24 | EI032PF24 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-25 | EI032PF25 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-26 | EI032PF26 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-27 | EI032PF27 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-28 | EI032PF28 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-30 | EI032PF30 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-5 | EI032PF5 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A | EI032PFA | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-PRD | EI032PFAPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-QRT | EI032PFAQR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-TNK | EI032PFATN | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-E | EI032PFE | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-E-PRD | EI032PFEPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-CMP | EI032PFFCM | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-PROD | EI032PFFPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-TANK | EI032PFFTN | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-TRT | EI032PFFTR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-GM-VALVE | EI032PFGMV | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-H | EI032PFH | 00196 | EI032 | 23.7% |
| EUGENE IS 053 P/F-10 | EI5310CAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-12 | EI5312CAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-8 | EI538CAS | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-9 | EI539PLT | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-B | EI53BPLT | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-C | EI53CPLT | 00479 | EI053 | 5.6% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 053 P/F-D | EI53DCAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-G | EI53GCAS | 00479 | EI053 | 11.1% |
| EUGENE IS 063 P/F-A | EI063PFA | 00425 | EI062 | 140.0% |
| EUGENE IS 063 P/F-B | EI063PFB | 00425 | EI062 | 140.0% |
| EUGENE IS 063 P/F-C-QTR | EI063PFC | 00425 | EI062 | 140.0% |
| EUGENE IS 100 P/F-D-QTR | EI100PFD | 00796 | EI100 | 100.0% |
| EUGENE IS 175 P/F-C-PROD | EI175CPRD | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-D | EI175DPLT | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-F | EI175FPLT | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-H | EI175HCAS | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-I | EI175ICAS | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-J | EI175JPLT | 438 | EI175 | 25.0% |
| EUGENE IS 296 P/F-B | EI296PFB | G01687M | EI 296 | 14.5% |
| EUGENE IS 307 P/F-A | EI307PFA | G02110 | EI307 | 100.0% |
| EUGENE IS 307 P/F-B | EI307PFB | G02110 | EI307 | 100.0% |
| EUGENE IS 312 P/F-D | EI312PFD | G22679 | EI312 | 60.0% |
| EUGENE IS 330 P/F A C S | EI330ACSPF | G02115 | EI330 | 0.0% |
| EUGENE IS 330 P/F-B | EI330BPLT | G02115 | EI330 | 0.0% |
| EUGENE IS 330 P/F-D | EI330DPLT | G02115 | EI330 | 0.0% |
| EUGENE IS 342 P/F-C | EI342CPLT | G02319 | EI342 | 0.0% |
| GALVESTON 210 P/F-1 | GA2101CAS | G25524 | GA210 | 33.3% |
| GALVESTON 210 P/F-2 | GA2102CAS | G25524 | GA210 | 33.3% |
| GALVESTON 210 P/F-B | GA210BPLT | G25524 | GA210 | 33.3% |
| GALVESTON A-155 P/F-A | GAA155PFA | G30654 | GAA155 | 8.1% |
| HIGH ISLAND A-341 P/F-B | HIA341BPLT | G25605 | HIA341 | 40.0% |
| HIGH ISLAND A-376 P/F-A | HIA376APLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-376 P/F-B | HIA376BPLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-376 P/F-C | HIA376CPLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-382 P/F-F | HIA382FPLT | G02757 | HIA382 | 27.6% |
| HIGH ISLAND A-474 P/F-A | HIA474PFA | G02366 | HIA474 | 12.0% |
| HIGH ISLAND A-489 P/F-B | HIA489PFB | G02372 | HIA489 | 12.0% |
| HIGH ISLAND A-550 P/F-A | HIA550PFA | G04081 | HIA550 | 100.0% |
| HIGH ISLAND A-563 P/F-B | HIA563PFB | G02388 | HIA563 | 2.7% |
| HIGH ISLAND A-573 P/F-A | HIA573APLT | G02393 | HIA573 | 27.6% |
| HIGH ISLAND A-573 P/F-B | HIA573BPLT | G02393 | HIA573 | 27.6% |
| HIGH ISLAND A-582 P/F-C | HIA582PFC | G02719 | HIA582 | 3.0% |
| HIGH ISLAND A-582 P/F-D | HIA582PFD | G02719 | HIA582 | 2.6% |
| HIGH ISLAND A-595 P/F-CF | HIA595CFPT | G02721 | HIA595 | 27.6% |
| HIGH ISLAND A-595 P/F-D | HIA595DPLT | G02721 | HIA595 | 27.6% |
| HIGH ISLAND A-596 P/F-E | HIA596EPLT | G02722 | HIA596 | 27.6% |
| MAIN PASS 077 P/F-A | MP077PFA | G04481 | MP077 | 73.8% |
| SHIP SHOAL 149 P/F-C | SS149PFC | 434 | SS149 | 3.0% |
| SHIP SHOAL 169 P/F-BB | SS169PFBB | 00820 | SS169 | 33.3% |
| SHIP SHOAL 169 P/F-C | SS169PFC | 00820 | SS169 | 33.3% |
| SHIP SHOAL 169 P/F-G | SS169PFG | 00820 | SS169 | 33.3% |
| SHIP SHOAL 177 P/F-7 | SS177PF7 | 00590 | SS177 | 25.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 177 P/F-A | SS177PFA | 00590 | SS177 | 25.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 0.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 1.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 1.0% |
| SHIP SHOAL 189 P/F-C | SS189PFC | G04232 | SS189 | 0.0% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 0.2% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 0.2% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 0.2% |
| SHIP SHOAL 206 P/F-E | SS206EPLT | G01522 | SS206 | 40.0% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 47.0% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-DWPF | SS207PFDWP | G01523 | SS207 | 19.8% |
| SHIP SHOAL 214 P/F-4 | SS214PF4 | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-E | SS214PFE | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-F | SS214PFF | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-H | SS214PFH | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-K | SS214PFK | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-L | SS214PFL | 00828 | SS214 | 35.5% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 5.2% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 0.3% |
| SHIP SHOAL 233 P/F-A | SS233PFA | G15293 | SS233 | 33.8% |
| SHIP SHOAL 233 P/F-B | SS233PFB | G01528 | SS233 | 33.8% |
| SHIP SHOAL 238 P/F-A | SS238PFA | G03169 | SS238 | 34.5% |
| SHIP SHOAL 238 P/F-B | SS238PFB | G03169 | SS238 | 34.5% |
| SHIP SHOAL 246 P/F-A | SS246PFA | G01027 | SS246 | 78.7% |
| SHIP SHOAL 246 P/F-E | SS246PFE | G01027 | SS246 | 78.7% |
| SHIP SHOAL 246 P/F-J | SS246PFJ | G01027 | SS246 | 100.0% |
| SHIP SHOAL 247 P/F-F | SS247PFF | G01028 | SS247 | 87.0% |
| SHIP SHOAL 248 P/F-D | SS248PFD | G01029 | SS248 | 83.3% |
| SHIP SHOAL 248 P/F-G | SS248PFG | G01029 | SS248 | 83.3% |
| SHIP SHOAL 253 P/F-C | SS253PFC | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-D | SS253PFD | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-E | SS253PFE | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-F | SS253PFF | G01031 | SS253 | 100.0% |
| SHIP SHOAL 291 P/F-A | SS291PFA | G02923 | SS291 | 100.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 300 P/F-A | SS300PFA | G07760 | SS300 | 24.3% |
| SHIP SHOAL 300 P/F-B | SS300PFB | G07760 | SS300 | 21.8% |
| SHIP SHOAL 315 P/F-A | SS315PFA | G09631 | SS315 | 25.0% |
| SOUTH MARSH IS 066 P/F-C | SM66CPLT | G01198 | SM058 | 50.0% |
| SOUTH MARSH IS 066 P/F-D | SM66DPLT | G01198 | SM066 | 50.0% |
| SOUTH MARSH IS 102 P/F-A | SM102PFA | G24872 | SM102 | 100.0% |
| SOUTH MARSH IS 132 P/F-B | SM132BPLT | G02282 | SM132 | 50.0% |
| SOUTH MARSH IS 137 P/F-A | SM137APLT | G02589 | SM137 | 50.0% |
| SOUTH MARSH IS 142 P/F-A | SM142PFA | G01216 | SM142 | 100.0% |
| SOUTH MARSH IS 142 P/F-C | SM142PFC | G01216 | SM142 | 100.0% |
| SOUTH MARSH IS 146 P/F-B | SM146PFB | G09546 | SM146 | 100.0% |
| SOUTH MARSH IS 147 P/F-A | SM147PFA | G06693 | SM147 | 100.0% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 26.8% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 0.4% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 11.9% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 0.4% |
| SOUTH MARSH IS 280 P/F-G | SM280GPLT | G14456 | SM280 | 0.0% |
| SOUTH MARSH IS 280 P/F-H | SM280HPLT | G14456 | SM280 | 50.0% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 41.2% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 0.3% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 31.4% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 0.5% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 31.4% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 0.5% |
| SOUTH PASS 060 P/F-A | SP060PFA | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-B | SP060PFB | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-C | SP060PFC | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-D | SP60PFD | G01608 | SP60P | 100.0% |
| SOUTH PASS 060 P/F-E | SP060PFE | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-F | SP060PFF | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-G | SP60PFG | G01608 | SP60P | 100.0% |
| SOUTH PASS 067 P/F-A | SP067PFA | G01612 | SP067 | 100.0% |
| SOUTH PELTO 013 P/F-7 | PL013PF7 | G03171 | PL013 | 2.0% |
| SOUTH PELTO 013 P/F-9 | PL013PF9 | G03171 | PL013 | 2.0% |
| SOUTH PELTO 013 P/F-A | PL013PFA | G03171 | PL013 | 0.0% |
| SOUTH PELTO 013 P/F-B | PL013PFB | G03171 | PL013 | 0.0% |
| SOUTH PELTO 013 P/F-S | PL013PFS | G03171 | PL013 | 0.0% |
| SOUTH TIMBALIER 195 P/F-B | ST195PFB | G03593 | ST195 | 100.0% |
| SOUTH TIMBALIER 316 P/F-A | ST316PFA | G22762 | ST316 | 40.0% |
| VERMILION 196 P/F-A | VR196PFA | G19760 | VR196 | 100.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| VERMILION 261 P/F-A | VR261APLT | G03328 | VR261 | 25.0% |
| VERMILION 261 P/F-A-AUX | VR261AAUX | G03328 | VR261 | 25.0% |
| VERMILION 272 P/F-A | VR272PFA | G23829 | VR272 | 100.0% |
| VERMILION 272 P/F-B | VR272PFB | G23829 | VR272 | 100.0% |
| VERMILION 272 P/F-C | VR272PFC | G23829 | VR272 | 100.0% |
| VERMILION 313 P/F-B | VR313PFB | G01172 | VR313 | 100.0% |
| VERMILION 313 P/F-C | VR313PFC | G01172 | VR313 | 100.0% |
| VERMILION 313 P/F-D | VR313PFD | G01172 | VR313 | 100.0% |
| VERMILION 408 P/F-A | VR408PF | G15212 | VR408 | 0.331868 |
| VIOSCA KNOLL 826 NEPTUNE SPAR | VK826NEP | G15441 | VK826 | 100.0% |
| WEST CAMERON 065 P/F-8 | WC065CAIS8 | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-9 | WC065CAIS9 | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-JA | WC65JAPLT | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-JA-AUX | WC65JAAUX | G02825 | WC065 | 0.0% |
| WEST CAMERON 066 P/F-B | WC066PFB | G02826 | WC066 | 17.1% |
| WEST CAMERON 066 P/F-E | WC066PFE | G02826 | WC066 | 25.0% |
| WEST CAMERON 072 P/F-1 | WC072PF1 | G23735 | WC072 | 75.0% |
| WEST CAMERON 072 P/F-2 | WC072PF2 | G23735 | WC072 | 75.0% |
| WEST CAMERON 072 P/F-3 | WC072PF3 | G23735 | WC072 | 75.0% |
| WEST CAMERON 171 P/F-A | WC171PFA | G01997 | WC171 | 21.2% |
| WEST CAMERON 171 P/F-A-AUX1 | WC171PFAA1 | G01997 | WC171 | 21.2% |

**Exhibit III-C(ii)**

Exhibit III-C(ii)

| Name | State | County/Parish |
|---|---|---|
| BURRWOOD | Louisiana | Plaquemines |
| HAYES LUMBER | Louisiana | Jefferson Davis |
| HELIS 2 | Louisiana | Iberia |
| MYETTE POINT | Louisiana | St. Mary |

Exhibit III-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7912 | Fieldwood Energy, LLC | EB | 160 | A | HI | A582 | SSTI | 12 | GAS | Out of Service | G08528 | G02647 |
| 7923 | Fieldwood Energy, LLC | EB | 165 | A | HI | A 582 | 30 SSTI | 12 | GAS | Active | G08536 | G06280 |
| 10301 | Bandon Oil and Gas, LP | EC | 332 | A | EC | 330 | 08 SSTI | 6 | OIL | Out of Service | G14699 | G09478 |
| 44 | Fieldwood Energy, LLC | EI | 175 | C | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Out of Service | G02139A | G02115 |
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 4 | OIL | Out of Service | G08541 | G02319 |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | GAS | Out of Service | G29108 | G02319 |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 10 | G/C | Out of Service | G20539 | 00479 |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 |
| 15298 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | 12 SSTI | 8 | G/C | Active | G26931 | G25524 |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLGH | Partial Abandon | G28284 | G25579 |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 |
| 6669 | Fieldwood Energy LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 |
| 7684 | Fieldwood Energy LLC | HI | A 550 | A | HI | A 568 | 25 SSTI | 10 | GAS | Out of Service | G08276 | G04081 |
| 6340 | Fieldwood Energy, LLC | HI | A 568 | Subsea Valve | HI | A 539 | 20 SSTI | 20 | G/C | Out of Service | G04974 | G04081 |
| 5470 | Fieldwood Energy, LLC | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of Service | G04050 | G02754 |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 |
| 6504 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 |
| 14304 | Fieldwood Energy, LLC | MP | 101 | SSTI Manifold | MP | 102 | Plat A | 8 | BLKG | Partial Abandon | G24687 | G22792 |
| 15810 | Fieldwood Energy Offshore LLC | MP | 29 | Well No. 1 | MP | 118 | Platform A | 6 | BLKG | Out of Service | G28216 | G27196 |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 |
| 4733 | Fieldwood Energy Offshore LLC | SM | 142 | A | SM | 127 | 24 SSTI | 10 | G/C | Out of Service | G03441 | G01216 |
| 15106 | Fieldwood Energy Offshore LLC | SM | 146 | B | SM | 147 | A | 8 | BLKG | Out of Service | G26837 | G09546 |
| 15107 | Fieldwood Energy, LLC | SM | 146 | B | SM | 147 | A | 4 | BLKG | Out of Service | G26838 | G09546 |
| 15108 | Fieldwood Energy, LLC | SM | 147 | A | SM | 146 | B | 2 | LIFT | Out of Service | G26839 | G09546 |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 6 | BLKO | Out of Service | G14093 | G06693 |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 6 | BLKO | Out of Service | G29316 | G06693 |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Out of Service | G28756 | G14456 |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 10 | GAS | Out of Service | G28484 | G02311 |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 |
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 8 | BLKO | Out of Service | G29131 | G02600 |
| 10268 | Fieldwood Energy SP LLC | SP | 60 | A | SP | 6 | F/S | 10 | OIL | Out of Service | G14679 | G02137 |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 6 | | Proposed | G28788 | 00820 |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | OIL | Out of Service | G09322 | 00820 |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | G/C | Out of Service | G22139 | G04232 |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Out of Service | G13491 | G01520 |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 |
| 1147 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13492 | G01523 |
| 17775 | Fieldwood Energy, LLC | SS | 253 | C | SS | 208 | F-Pump | 4 | OIL | Out of Service | G01691C | G01031 |
| 18094 | Bandon Oil and Gas, LP | ST | 195 | B | ST | 196 | SSTI | 8 | G/C | Permitted for Abandonment Approved | G29005 | G03593 |
| 11107 | Bandon Oil and Gas, LP | ST | 196 | 06-inch SSTI | SS | 208 | F | 6 | OIL | Permitted for Abandonment Approved | G05120 | G03593 |
| 13720 | Fieldwood Energy, LLC | VK | 340 | 8"SSTI | VK | 251 | A | 8 | BLGH | Active | G28221 | G04481 |
| 13193 | Bandon Oil and Gas, LP | VR | 196 | A | VR | 206 | 12 SSTI | 8 | G/C | Out of Service | G22418 | G19760 |
| 18591 | Fieldwood Energy, LLC | VR | 196 | A | VR | 215 | A | 4 | BLKO | Out of Service | G29137 | G19760 |
| 18588 | Fieldwood Energy, LLC | VR | 215 | A | VR | 196 | A | 4 | GAS | Active | G29136 | G19760 |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 8 | BLKO | Out of Service | G28347 | G03328 |
| 14609 | Fieldwood Energy, LLC | VR | 272 | "A" | VR | 250 | 8" SSTI | 4 | OIL | Out of Service | G25384 | G23829 |
| 14277 | Fieldwood Energy, LLC | VR | 272 | A | SM | 116 | 20" SSTI | 10 | G/C | Out of Service | G25288 | G23829 |
| 5440 | Fieldwood Energy Offshore LLC | VR | 313 | B | VR | 313 | 20 SSTI | 10 | GAS | Out of Service | G04044 | G01172 |
| 15136 | Fieldwood Energy Offshore LLC | VR | 313 | B | VR | 313 | 6" SSTI | 6 | OIL | Out of Service | G03879 | G01172 |
| 4289 | Fieldwood Energy Offshore LLC | WC | 485 | A | WC | 509 | GP | 12 | GAS | Out of Service | G02122E | G02220 |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 4 | BLKG | Out of Service | G25275 | G23735 |
| 16088 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 6 | GAS | Out of Service | G28289 | G13645 |
| 16089 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 3 | OIL | Out of Service | G28290 | G13645 |
| 15960 | Fieldwood Energy, LLC | WD | 90 | A | WD | 73 | SSTI | 4 | OIL | Out of Service | G28260 | G01089 |

Exhibit III-D(ii)

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| EI | 63 | A | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | EI 63 002,003, EI 62 and 005, 006, 008, 009, 010 and 011 |
| EI | 63 | B | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| EI | 63 | C-QTR | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| SM | 146 | B | 1663 | G30248 | G09546 | Fieldwood Energy Offshore LLC | 08/21/13 | SM 139 B001 & B002 |
| SM | 147 | A | 23389 | G30200 | G06693 | Fieldwood Energy Offshore LLC | 09/12/13 | SM 139 B001, B002 & B002D |
| WD | 86 | A | 22593 | G30173 | G04243 | Fieldwood Energy Offshore LLC | 06/20/13 | WD 86 B001, B002 & B005 |
| VK | 826 | A-Neptune Spar | 24235 | G30353 | G15441 | Fieldwood Energy LLC | 07/03/18 | VK 917 SS001 & VK 962 SS001 |

**Exhibit III-E**

Call Signs:

WQBQ549

WQRK423

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 8/29/1956 | Operating Agreement | Operating Agreement eff. 8-29-1956 |
| Land | 12/4/1958 | Operating Agreement | Operating Agreement eff. 12-4-58 |
| Land | 7/25/1960 | Operating Agreement | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil 'Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field. |
| Land | 3/1/1961 | Operating Agreement | SS 214 Operating Agreement eff. 3-1-61 |
| Land | 3/13/1962 | Operating Agreement | Operating Agreement dated 3/13/62 between The Pure Oil Company and The Ohio Oil Company |
| Land | 7/3/1962 | Operating Agreement | Operating Agreement eff 7-3-62 as amended |
| Land | 1/12/1965 | Joint Operating Agreement | Main Agreement, dated effective January 12,1965, between Cities Service Oil Company, Skelly Oil Company, Sunray DX Oil Company and Tidewater Oil Company, governing operations on the contract area. The Operating Agreement contained in Exhibit "C" of the Main Agreement was superseded by the Joint Operating Agreement eff. 1/1/97 |
| Land | 1/21/1966 | Unit Agreement No. 14-08-001-8784 | Unit No. 891008784 - SS 271 |
| Land | 2/26/1966 | Offshore Operating Agreement | Operating Agreement by and between Hardy Oil & Gas USA Inc., As Operator and British-Borneo Exploration, Inc. and Zilkha Energy Company, As Non-Operators |
| Land | 6/10/1966 | Unit Operating Agreement Ship Shoal | SS 271 Unit Operating Agreement (Unit#891008784) As Amended, originally by and between Forest Oil Corp. as Operator, and Texas Gas Exploration Corp. et al as Non-Operators |
| Land | 12/23/1966 | Joint Operating Agreement | Operating Agreement by and between American Petrofina Exploration Company (Operator), Chambers & Kennedy, COperating Agreementstal Production Company, Waymon G. Peavy, Harbert Construction Company, Jenney Manufacturing Company, Kirby Petroleum Co., HC Price Co., States Marine Lines, Inc., Pan American Petroleum Corporation |
| Land | 1/1/1971 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC., MESA PETROLEUM CO., ET AL. |
| Land | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1,1971, between Tenneco Oil Company and Texaco Inc. Amendment to Operating Agreement, dated effective May 1,1974, between Tenneco Oil Company, Texaco Inc. and Tenneco Exploration 11, Ltd., whereby Tenneco Exploration II became a party to, and ratified, the operating agreement. |
| Land | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement 8/1/1973 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, et al AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 9/3/1974 | FO | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation |
| Land | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al |
| Land | 9/1/1975 | Joint Operating Agreement | First Amendment to Operating. Agreements, dated effective September 1, 1975, between Mobil Oil Corporation, Amoco Production Company, and 'Union Oil Company of Califomia. |
| Land | 3/17/1976 | Joint Operating Agreement | Unit Operating Agreement 3/17/76 between Forest Oil Corp and Columbia Gas Development Corp, etal |
| Land | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended |
| Land | 4/1/1977 | Unit Operating Agreement | UNIT OPERATING AGREEMENT BY AND BETWEEN  DEVON ENERGY PRODUCTION , APACHE CORPORATION, ET AL. |
| Land | 4/1/1977 | Unit Agreement No. 14-08-0001-16943 | Unit Agreement, JD Sand, Reservoir A, Eugene Island Block 330 Field (Unit Number 891016943), dated effective April 1,1977, naming Pennzoil Oil & Gas, Inc., as Operator, and Texaco Inc. and Shell Oil Company, as sub-operators |
| Land | 8/1/1977 | Joint Operating Agreement | Operating Agreement eff. 8-1-77 b/b Transco et al |
| Land | 5/2/1978 | FO | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| Land | 8/17/1978 | Ownership Agreement "F" Platform | Platform Ownership Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Texas Gas Exploration Corporation, Pelto Oil Company, Ocean Production Company, Ocean Oil and Gas Company |
| Land | 9/15/1978 | Joint Operating Agreement | Amendment of Operating Agreement, dated September 15, 1978, between Amoco Production Company, Mobil Oil Corporation, and 'Union Oil Company of California. |
| Land | 11/13/1978 | Joint Operating Agreement | Second Amendment to Operating Agreements, dated effective; November 13, 1978, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California |
| Land | 11/13/1978 | Joint Operating Agreement | Fourth Amendment to Operating Agreements, dated effective; November 13, 1978,.between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of Califomia |
| Land | 11/17/1978 | FO | Farmout Agreement dated November 17,1978 between Gulf Oil Corporation and Shell Oi! Company covering the Northeast Quarter (NE/4) of that certain Oil and Gas Lease dated July 1,1967 bearing Serial No. OCS-G 1609, South Pass Area Block 61. |

| Land | 5/2/1979 | Proposed Installation and Operating Agreement of Ship Shoal Area Block 246 Field ("A" Platform) | Installation and Operating Agreement by and between CNG Producing Company, Consolidated Gas Supply Corporation |
|------|----------|-----------------------------------------------------|--------------------------------------------------------------|
| Land | 9/15/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| Land | 12/1/1979 | OFFSHORE OPERATING AGREEMENT | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL |
| Land | 1/1/1980 | Joint Operating Agreement | Third Amendment to Operating Agreements, dated effective January 1, 1980, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company bf California. |
| Land | 4/1/1981 | Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship ShOperating Agreement Blocks 206, 207,,OCS-G:i523:ahd OCS-G 1523, respectively. |
| Land | 4/22/1980 | Joint Operating Agreement | Amendment to Operating Agreement, dated April 22, 1980, between Union Oil Company, of California and,Amoco:Production Company. |
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement (MP 108+) 9/1/1981 |
| Land | 4/28/1982 | Letter Agreement | Letter Agreement dated April 28,1982 between Gulf Oil Corporation and Shell Oil Company evidencing an agreement for Gulf Oil Company to install a Drilling Platform in the Northeast Quarter (NE/4) South Pass Area Block 61. |
| Land | 1/1/1983 | ORRI | Conveyance of Overriding Royalty Interests, dated effective January 1,1983, creating the Tel Offshore Trust, and granting an overriding royalty interest, equivalent to 25% net profits interest, in all of Tenneco Exploration, Ltd.'s oil and gas properties |
| Land | 8/4/1983 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY |
| Land | 4/13/1984 | Unit Operating Agreement | WD 27 28 Unit Operating Agreement Tenneco OP & Samedan et al as amended |
| Land | 6/3/1985 | Consent to Assign | Consent to Assignment of Interest, dated June 3,1985, between Tenneco Exploration, Ltd. and Texaco Inc., as Grantors of Consent, and Huffco Petroleum, as Assignor, and L. S. Holding Company, AE Investments, Inc., Colton Gulf COperating Agreementst, Inc., and Huffco 1982 Exploration Limited Partnership, as Assignees, assigning all of Huffco Petroleum's record title interest to the Assignees. |
| Land | 3/3/1986 | OA | Offshore Operating Agreement (All of Block 300 - A Wells) 3/3/1986 |
| Land | 5/1/1986 | Assignment | Assignment, dated effective May 1,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Plumb Offshore, Inc., subject to the reservation of an overriding royalty interest. |
| Land | 7/1/1986 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective July 1, 1986,, between Amoco Production Company; Union Oil Company of California, and Mobil ProducingTexas & New Mexico, Inc. |
| Land | 10/20/1986 | UA | Unit Agreement 10/20/86  between Chevron USA Inc., Union Exploraiton partners, LTD, and Pennzoil Producing Company |
| Land | 10/31/1986 | Assignment | Assignment of Interest, dated effective October 31,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Tenneco Oil Company. |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OA | Operating Agreement 1/1/89 |
| Land | 5/2/1989 | Letter Agreement | Letter Agreement, dated May 2, 1989, between Southern Natural Gas Company and Chevron U.S.A. Inc.,concerning the "Construction, Installation, Operation and Maintenance of Measurement and Pipeline Facilities " for receipt points at various locations on the OCS, including Main Pass 77 'A' platform (as amended). Consent Sec. 1O. |
| Land | 9/10/1990 | FO | Farmout Agreement (Forest - SS 291/300) 9/10/1990 |
| Land | 9/15/1990 | OA | Offshore Operating Agreement (NW/4 NW/4 Blk 300 - B Wells) 9/15/1990 |
| Land | 10/1/1990 | Joint Operating Agreement | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| Land | 10/1/1990 | UOA | UA and Unit Operating Agreement dated 10/1/90 between Marathon Oil Co and Phillips Petroleum etal |
| Land | 1/1/1991 | PA | Offshore Participation Agreement, dated effectiveJanuary 1,1991, between Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc., BA A105. |
| Land | 5/1/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST ET AL |
| Land | 10/1/1991 | FO | FO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc etal and Hall-Houston Oil Company |
| Land | 4/1/1992 | Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and  Production Operations on the South Pass Block 60 Unit (Blocks.6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf, Contract No. 754394018, as amended |
| Land | 4/1/1992 | Unit Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1609, South. Pass Area. |
| Land | 5/2/1992 | ABOS | Agreement and Bill of Sale, dated effective May 2,1992, between Union Oil Company of California, as Seller, and The Northwestern Mutual Life Insurance Company and Hardy Oil & Gas USA Inc., as Buyers, selling 43.75% interest in the BA A-105 "A" Platform, equipment arid pipeline, to NW Mutual 31.25%, and Hardy 12.50%. |
| Land | 5/15/1992 | Unit Agreement | EC 331/332 Unit Agreement |

| Land | 6/25/1992 | Letter Agreement | Letter Agreement, dated June 25, 1992, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron obtained consent from Southern for Chevron to connect, operate and maintain pneumatic chart recorders on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
|---|---|---|---|
| Land | 7/1/1992 | FO | Farmout Agreement 7/1/1992 |
| Land | 7/1/1992 | OA | Offshore Operating Agreement 7/1/1992 |
| Land | 1/1/1993 | OA | Operating Agreement 1/1/1993 |
| Land | 2/15/1993 | Letter Agreement | Letter Agreement, dated effective February 15, 1993, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron and Southern agree to amend and replace Exhibit "A" to that certain Letter Agreement, dated June 25, 1992 (described hereinabove). |
| Land | 4/2/1993 | ABOS | Bill of Sale, dated April 2, 1993, from Southern Natural Gas Company ("Southern") to Chevron U.S.A. Inc.("Purchaser"), whereby Southern sells to Purchaser certain Barton chart recorders and appurtenant equipment located at various on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 6/15/1993 | GC 244 Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Green Canyon Block 244 Unit (Contract No. 754393016) dated effective June 15, 1993, covering OCS-G 11043 (Green Canyon Block 244), OCS-G 12209 (Green Canyon Block 200), and OCS-G 12210 (Green Canyon Block 201). |
| Land | 6/15/1993 | Unit Operating Agreement | Unit Operating Agreement dated effective June 15, 1993 between Shell Offshore Inc and Marathon Oil Company, as successors in interest. |
| Land | 8/16/1993 | Joint Operating Agreement | Amendment to'Operating Agreement, dated August 16, 1993, between Express Acquisition Company and Torch EnergyAdvisors Inc. |
| Land | 12/30/1993 | OA | WD 90, WD 103 Operating AgreementS 12-30-1993 |
| Land | 1/1/1994 | Co-Development Agreement and Amendment to Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally by and between CNG Producing Company & Columbia Gas Development Corp., et al |
| Land | 2/10/1994 | JDA | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. |
| Land | 5/12/1994 | Letter Agreement | Letter Agreement by and between CNG Producing Company and Columbia Gas Development Corporation |
| Land | 6/1/1994 | Joint Operating Agreement | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| Land | 7/1/1994 | OA | Operating Agreement 7/1/1974 |
| Land | 7/7/1994 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL |
| Land | 7/15/1994 | Letter Agreement | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY. |
| Land | 10/19/1994 | JDA | Joint Venture Development Agreement, dated October 19,1994',,between Norcen Explorer, Inc. and Texaco Exploration and Production, Inc. forming a working-interest unit comprising portions of'Ship .ShOperating Agreementl Block 206 and OCS-G 1523,-Ship ShOperating Agreementl Block 207; |
| Land | 11/16/1994 | JDA | Joint Venture Development Agreement, dated November 16><1994, between Norcen.Explorer, Inc., Texaco Exploration and1 Production, Inc., Industries, TheiGeorge R. Brown Partnership, JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration SoProducingiSoutheast Inc.,-and Hunt Oil Company,.covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 11/30/1994 | JDA | Amendment to Joint Venture Development Agreement, dated November'30,1994, between iNorcen Explorer,.'Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George.R..Brown Partnership, JOG Venture, Laniar Hunt Trust Estate, Mobil Oil Exploration &<Producing Southeast Inc., and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 3/28/1995 | Letter Agreement | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL. |
| Land | 4/6/1995 | JDA | Amendment to Joint Venture Development Agreement, dated April 6, 1995, between Norcen. Explorer, Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration 8i Producing Southeast Inc., and Hunt Oil Company, covering; all of'Blocks.206 and 207 Ship ShOperating Agreementl Area. |
| Land | 5/1/1995 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. |
| Land | 8/16/1995 | Letter Agreement | Letter Agreement by and between Columbia Gas Development and CNG Producing Company |
| Land | 10/1/1995 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. |
| Land | 12/14/1995 | LOI | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| Land | 3/7/1996 | Conditional Letter of Acceptance to Exploration Agreement | Letter Agreement by and between Hardy Oil & Gas USA, Inc., British-Borneo Exploration by Hardy Oil & Gas USA, Inc., British Borneo Exploration, Inc. and Zilkha Energy Company |
| Land | 4/17/1996 | Plan of Development | Plan of Development by and between Shell Offshore Inc, BP Exploration and Oil, Inc and marathon oil compnay dated effective 17 Apr 1996. |
| Land | 8/26/1996 | PSA | Purchase and Sale Agreement, dated August 26, 1996, between Amoco Production Company and Union Oil Company of California, EB 158/EB 159. |
| Land | 9/1/1996 | OA | Offshore Operating Agreement 9/1/1996 |

| Land | 9/3/1996 | OA | Operating Agreement (depths below 9000' on VR 392 & VR 408; and all depths VR 407) 9/3/1996 |
|---|---|---|---|
| Land | 1/1/1997 | OA | Operating Agreement eff. 1-1-97 |
| Land | 5/1/1997 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective May 1,1997, between GOM Shelf, LLC, and ChevronTexaco and Kerr-McGee Oil & Gas Corporation, amending Exhibit "A" to reflect a new division of interest. |
| Land | 8/1/1997 | UOA | EC 331/332 Unit Operating Agreement |
| Land | 3/13/1998 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |
| Land | 4/1/1998 | JVA | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL., as amended. |
| Land | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| Land | 4/6/1998 | Letter Agreement | LETTER (ELF OFFERS NIPPON PART OF THE COperating AgreementSTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |
| Land | 4/6/1998 | JVA | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COperating AgreementSTAL POSITION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COperating AgreementSTAL O&G CORPORATION. |
| Land | 4/10/1998 | FO | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 4/13/1998 | Letter Agreement | LETTER- NIPPON TAKES ITS SHARE OF COperating AgreementSTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 11/5/1998 | JVA | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFSSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| Land | 2/9/1999 | Joint Operating Agreement | Offshore Operating Agreement, dated February 9, 1999, between Ocean Energy, Inc. and Shell Offshore Inc., covering Vermilion 195, 196 and 207, as amended December 23, 1999 by that certain Letter Agreement regarding the sale of properties to McMoran Oil & Gas LLC, and further amended August 22, 2000, December 31, 2001 and September 15, 2010. |
| Land | 12/1/1999 | Assignment | Assignment of Record Title Leasehold Interest dated effective December 1, 1999 between Shell Offshore Inc., as Assignor, and McMoRan Oil & Gas LLC, as Assignee, covering OCS-G 19760, Vermilion Block 196 |
| Land | 11/1/1980 | Joint Operating Agreement | Operating Agreement, Main Pass Area, Blocks 77 and 78, Gulf of Meidco, dated effective November 1, 1980,between Gulf Oil Corporation, Texoma Production'Company, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company, covering the federal Oil and Gas Lease OCS-G 4481, Blocks 77>and78 Main Pass Area, Offshore Louisiana, a true copy of the original is recorded in C.O.B. 592, Folio 658, Plaquemines Parish, Louisiana. |
| Land | 12/15/1999 | Letter Agreement | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4481 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore. LA. Note: only have Key's executed cop |
| Land | 1/31/2000 | FO | Farmout Letter Agreement 1/31/2000 |
| Land | 8/4/2000 | FO | Farmout Agreement 8/4/2000 |
| Land | 1/1/2001 | Joint Operating Agreement | Fifth Amendment to Operating Agreements, dated effective January 1,, 2001, between Union Oil Company of Califomia and 'Vastar Offshore,Inc |
| Land | 1/15/2001 | Joint Operating Agreement | Amendment to Operating Agreement,, dated January 15, .2001, between Union Oil Company, Amoco Production Company, and Vastar Offshore,'Inc |
| Land | 11/17/2000 | PA | Participation Agreement and Operating Agreement 11-17-00 b/b Samedan and Stone |
| Land | 3/1/2001 | JDA | Joint Development Agreement with Operating Agreement, dated March 1, 2001, between Union Oil Company of Califomia, Vastar Offshore, Inc. and Panaco, Inc., parts of EB 161 and 205. |
| Land | 6/1/2001 | OA | Offshore Operating Agreement 6/1/2001 |
| Land | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL |
| Land | 6/15/2001 | JDA | JOINT DEVELOPMENT AGREEMENT  EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| Land | 9/17/2001 | Joint Operating Agreement | Joint Operating Agreement attached to and made part of that certain Farmout Agreement dated September 17, 2001 by and between Amoco Production Company (Samedan Oil Corporation was successor-in-interest to Amoco Production Company and subsequently merged with Noble Energy, Inc.; Fieldwood is successor-in-interest to Noble Energy, Inc.) and Mariner Energy, Inc. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 66 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering OCS-G 2282, South Marsh Island Block 132. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 136 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 |
| Land | 11/1/2001 | Joint Operating Agreement | Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Aviara Energy Corporation |
| Land | 11/1/2001 | PA | Participation Agreement by and between Dominion Exploration & Production, Inc. and Aviara Energy Corporation |
| Land | 3/15/2002 | Bidding Agreement | BIDDING AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P. AND LLOG EXPLORATION OFFSHORE, INC. |
| Land | 8/23/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator |

| Land | 8/30/2002 | OA | SP 42 43 Operating Agreement LLOG and Pure et al |
|---|---|---|---|
| Land | 9/1/2002 | Operating Agreement | Operating Agreement by and between Union Oil and Northstar Gulfsands |
| Land | 12/12/2002 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 12/12/2002 | MOA | MEMORANDUM OF OPERATING AGREEMENT LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 12/12/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Llog Exploraiton Offshore, Inc and Davis Offshore L.P. dated 12 Dec 02 |
| Land | 3/24/2003 | FO | FARMOUT AGREEMENT BY AND BETWEEN NOBLE / KERR-MCGEE FARMOUT (MP 109) 3/24/2003 |
| Land | 3/31/2003 | Letter Agreement | Letter Agreement, dated March 31, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy<br>Company regarding Second Opportunity to Participate - Election to Acquire^Non-Participating Interest, in the MP77 OCS-G 4481 A-6 TTPG, Project No. UWGHP-R3011, Cost Center UCP170500, Main Pass Block 77.<br>Key Production Company election. |
| Land | 5/1/2003 | Joint Operating Agreement | Offshore Operating Agreement dated May 1, 2003 between Magnum Hunter Production,Inc, and Westport Resources Corporation et al |
| Land | 9/25/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA |
| Land | 1/1/2004 | FO | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| Land | 1/1/2004 | Assignments | Assignment from BP Exploration and Production to Noble Energy Inc dated effective 1 Jan 04 (Relevant PSA was excluded from NBL - FW Deal) |
| Land | 2/1/2004 | OA | VR 272 Operating Agreement eff/ 2-1-04 LLOG and ST Mary |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 3/25/2004 | JVA | Amendment to Joint Venture Development Agreement, dated. March 25, 2004 between Anadarko E 8t P Company LP: Chevron U.S.A. Inc.; Hunt Oil Company, Hunt Petroleum, the George,R. Brown Partnership LP, Offshore Investment ,Cov and the'Lamar Hunt Trust Estate,, whereby the Unit 'was expanded |
| Land | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 4/1/2004 | OA | Operating Agreement dated 4/1/04 between Newfield Exploration Co and Hunt Petroleum (AEC) Inc |
| Land | 4/2/2004 | Divestiture | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 4/19/2004 | FO | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 |
| Land | 5/26/2004 | Production Handling Agreement | Production Handling Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 26 May 2004 and as amended by<br>(a) 1st Amendment dated 27 Jun 2005<br>(b) 2nd Amendment dated 6 Feb 2006<br>© 3rd Amendment dated 30 Jan 2008 |
| Land | 6/29/2004 | Letter Agreement | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| Land | 8/1/2004 | OA | Operating Agreement 8/1/04 |
| Land | 8/11/2004 | Notice | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 8/24/2004 | Letter Agreement | Letter Agreement dated August 24, 2004, between Chevron U.S.A. Inc. and Williams Field Services- Gulf COperating Agreement Company, L.P. |
| Land | 9/7/2004 | Settlement and Release Agreement | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/6/2004 | LOI | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/7/2004 | EA | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/1/2004 | FO | FO eff. 11/1/04 as Amended, between Newfield Exploration Company, Continental Land & Fur Co., Inc., KCS Resources, Inc., and Fidelity Oil Co., as Farmors, and Explore Offshore LLC as Farmee |
| Land | 12/20/2004 | Preferential Right Agreement | Purchase and Sale agreement by and between BP Exploration and Production Inc and Marathon Oil Company dated 20 Dec 2004 |
| Land | 1/1/2005 | VUA | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| Land | 1/11/2005 | Pref Right | Preferential Right Agreement dated 01/11/05 between BP and SOI for the acquisition of 49.99998% ofBP's 33.33333% interest at Troika. |
| Land | 1/25/2005 | Letter Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 66 Facilities, dated effective January 25, 2005, between Transcontinental Gas Pipeline Corporation,;as Seller> and Union Oil "Company-of California and Forest Oil Corporation, as Purchasers, for facilities and pipeline associated with "A" and "C" Platforms'. NEVER CONSOMATED. |
| Land | 2/1/2005 | Letter Agreement | Letter Agreement, dated February 1, 2005, between Union Oil Company of California and Forest Oil , covering OCS-G 2589, South Marsh Island Block 137, asthe Unit Operating Agreement for South Marsh Island Block 137 Unit, identified as Unit Agreement No. 14-08-001-20237, replacing and superseding, effective October 1, 2001, that certain Unit Operating Agreement dated January 1,1989 between Conoco Inc., Texaco Producing Inc. and CanadianOXY Offshore Production Company. |
| Land | 2/28/2005 | OA | JOperating Agreement eff. 2-28-05 b/b Peregrine O&G and Chroma Energy, et al; as amended |
| Land | 8/2/2005 | PSA | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 9/12/2005 | Notice | NOTICE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND DAVIS OFFSHORE, L.P. |
| Land | 10/25/2005 | OA | Operating Agreement 10-25-05 |
| Land | 1/19/2006 | Letter Agreement | Letter Agreement, - dated January 19, 2006, between BP Exploration & Production Inc. and Union Oil Company of California: |

| Land | 2/22/2006 | FO | Farmout Proposal Letter Agreement between The Houston Exploration Company and Noble Energy Inc. 2/22/2006 |
|------|-----------|----|----|
| Land | 3/1/2006 | ABOS | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 10/30/2006 | FO | Farmout Agreement, dated effective October 30, 2006, between Chevron U.S.A. Inc., as Farmor, and Mariner Energy Resources, Inc., as farmee, covering S/2 of SM 149 (OCS-G 2592) and S/2 of SM 150 (005-016325) and limited to depths from the surface.to the stratigraphic equivalent of 100' below the deepest depth drilled in the #1 Well as proposed. |
| Land | 4/3/2007 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Coporation, Samson Contour Energy and Shell Offshore |
| Land | 9/21/2007 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION |
| Land | 11/10/2007 | Purchase and Sale Agreement | Purchase and Sale agreement by and between BP Exploration and Production Inc and W+T Offshore, Inc  dated9 Nov 2004 (Preempted by Shell and Marathon) |
| Land | 5/14/2008 | Notice | Final Notification Letter Memo-Well Payout, elated May 14, 2008, EB 160 #A-13 well paid out on March 3, 2008. |
| Land | 10/1/2008 | ORRI | OVERRIDING ROYALTY INTEREST AGREEMENT BY AND BETWEEN LLOG EXPLORATION OFFSHORE INC AND DAVIS OFFSHORE, L.P. TO SHELL OFFSHORE INC AND MARATHON OIL COMPANY |
| Land | 10/1/2008 | Farmout Agreement | Farmout Agreement by and between Shell Offshore, Marathon Oil Company, Llog Exploraiton Offshore, Inc and Davis Offshore L.P. dated 1 Oct 2008 |
| Land | 2/15/2009 | FO | Farmout Agreement dated February 15, 2009 between SPN Resources LLC and Moreno Offshore Resources, L.L.C., Farmors, and Houston Energy, L.P., Farmee |
| Land | 2/17/2009 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P. AND LLOG EXPLORATION OFFSHORE, INC. |
| Land | 3/6/2009 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 3/30/2009 | PA | Participation Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C. , et al and Challenger Minerals Inc. |
| Land | 3/30/2009 | Joint Operating Agreement | Offshore Operating Agreement dated March 30 2009 between Helis Oil & Gas Company, L.L.C., Operator, and Houston Energy, LP, et al, Non-operators; as Ratified and Amended by Ratification And Amendment of Operating Agreement dated March 16, 2012 |
| Land | 3/30/2009 | MOA | Memorandum of Offshore Operating Agreement and Financing Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C. et al |
| Land | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/1/2010 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 3/30/2010 | Marketing Election | Ship ShOperating Agreementl 252 Marketing Election Letter dated March 30, 2010 (Helis Oil & Gas Company, L.L.C.) |
| Land | 2/1/2011 | ABOS | Assignment and Conveyance, dated effective February 1, 2011, between Harrigan Energy Partners, Inc.,Assignor, and Chevron U.S.A. Inc^ as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities; pipelines; equipment, contracts,, etc., all as more fully described therein. |
| Land | 4/21/2011 | PSA | Asset Purchase and Sale Agreement, dated April 21, 2011, but made effective February 1, 2011, between SabcoOil and Gas Corporation, as Seller, and Chevron U.S.A. Inc., as Purchaser, whereby Purchaser acquired 0.63149% of 0.83922% of 8/8ths of Seller's right title and interest in the Lease, together with Seller's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein. |
| Land | 4/21/2011 | ABOS | Assignment and BUI of.Sale, dated April 21, 2011, but made effective February 1, 2011, between Sabco Oil and Gas Corporation, as Assignor/and Chevron U.S.A. Inc., as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein |
| Land | 5/31/2011 | Tolling Agreement | Tolling Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 31 May 2011 and as extended by (a) 1st Extension dated 30 Jun 2012 (b) 2nd Extension dated 30 Sept 2012 |
| Land | 6/3/2011 | Notice | Apache Notice Letter, dated June 3, 2011, non-consented EB 159 #A-9 Well, Thru Tubing Gravel Pack GM 2-2. |
| Land | 8/1/2011 | ABOS | ABOS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assingor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 8/25/2011 | PARTICIPATION AGREEMENT | PARTICIPATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 3/20/2012 | Notice | Chevron's Notice to Apache Letter, dated March 20, 2012, EB 159 #A-I5 Well (GM-2-2 Sand) conductor removal. |
| Land | 4/27/2012 | PHA | Production Handling Agreement dated August 1, 2009 between SPN Resources, LLC and Moreno Offshore Resources, L.L.C., Platform Owners, and Helis Oil & Gas Company, L.L.C., et al, Producers; as amended by agreement on April 27, 2012. |
| Land | 5/1/2012 | CONDENSATE TRANSPORT & SEPARATION AGREEMENT | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 6/1/2012 | PSA | Ratification of Purchase and Sale Agreement by Holders of Preferential Right to Purchase, dated effective June l , 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc. and Dynamic Offshore Resources, LLC, as Preferential Right Purchasers, affecting that certain Purchase and Sale Agreement, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc., as Buyer. |
| Land | 6/1/2012 | ABOS | Conveyance, Assignment and Bill of Sale, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Assignor, and Chevron U.S.A. be. and Dynamic Offshore Resources, LLC, as Assignees, covering an undivided 0.83922% right, title and.interest in certain property described in Exhibit "A" attached thereto, assigning 75.247% thereof to Chevron (0.63149% net) and 24.753% thereof to Dynamic (0.207.73%.net). |

| Land | 6/27/2012 | PSA | Purchase and Sale Agreement, dated June 27, 2012 but made.effective June 1 , 2012, between Key Production Company, Inc,,. as'Seller, and Chevron U.S.A. Inc., as Buyer, covering all of Seller's.right, title and interest in that certain Oil & Gas Lease bearing Serial No. OCS-G 448,1, ), together with Seller's interest in certain wells, facilities, pipelines, equipment contracts, etc, all as more.fully described therein. |
|------|-----------|-----|-------------|
| Land | 8/1/2012 | Throughput Capacity Lease Agreement | Fieldwood leases capacity to Arena for Barnacle Pipeline |
| Land | 11/30/2012 | Permit Agmt(incl Seismic) | Seismic Reprocessing and Data Use Agreement by and between Noble Energy, Inc and Apache Deepwater LLC dated 30 Nov 12 |
| Land | 2/6/2013 | Letter Agreement | Letter Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 6 Feb 2013 re system upgrades |
| Land | 3/15/2013 | Exploration Venture | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC |
| Land | 5/1/2013 | Transportation Agreement | Transportation Agreement by and between Dynamic Offshore Resources NS, LLC, W&T Offshore, Inc., Hall-Houston Exploration IV, L.P., GOM Offshore Exploration I, LLC and PetroQuest Energy, LLC |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 7/1/2013 | Acquisition | Acquistion by and between Fieldwood Energy LLC and Callon Petroleum Operating Co. |
| Land | 9/12/2013 | Amendemnbt of Exhibit "D" to Unit Operating Agreement | Amends UOperating Agreement dated 04/13/1984 as amended 09/08/2011 |
| Land | 9/30/2013 | Acquisition | Purchased GOM Shelf as a company from Apache |
| Land | 10/7/2013 | Election Letter Agreement PL 13 007 ST2 Well | Election Letter Agreement by and between Fieldwood Energy LLC and Enven Energy Ventures LLC |
| Land | 11/1/2013 | Purchase & Sale Agreement | Purchase and Sale Agreement by and between Noble Energy, Inc, Anadarko Petroleum, Anadarko US Offshore Corp and Eni Petroleum US LLC dated 1 Nov 13 as amended 21 July 2016 (but effective 1 Oct 14) |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. |
| Land | 1/20/2014 | Letter Agreement | Letter Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 20 Jan 2014 re settlement of reall0perating Agreementction |
| Land | 3/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Black Elk Energy Offshore Operations, LLC: Leases where Fieldwood was the operator and Black Elk held interest. Exception is ST 53 where Black Elk was the Operator. |
| Land | 4/16/2014 | Settlment Agreement and Release | Settlement Agreementa and Release - SS 198/VR 369/VR 408/ SP 8/13 |
| Land | 4/21/2014 | Production Handling Agreement | For WD 27 "A" platform hadnling WD 28 production |
| Land | 4/28/2014 | Letter Agreement | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 Oil Imbalance Claim |
| Land | 5/16/2014 | Termination of Farmout Agreements | Terminates Farmouts dated 05.01.13 and 06.01.13 |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy LLC and Davis Offshore L.P. |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co:HIPS 13-III |
| Land | 7/25/2014 | Amendment and Ratification of Production Handling Agreement | Amend PHA for WD 27 "A" platform handling WD 28 production dated 04/21/14 |
| Land | 8/5/2014 | Purchase and Sale Agreement | Equity Purchase Agreement by and between Davis Petroleum Acquisition Corp, Davis Offshore Partners, LLC< and Davis Offshore, L.P. and Fieldwood Energy Offshore dated 5 Aug 2014 |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey: Conversion of NPI to ORI for the WD 79/80/85/86 - fields |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood SD Offshore LLC, Unocal Pipeline Companyand Union Oil Company of California : East Breaks 158/160 Fields |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC UNOCAL, and Chevron U.S.A. Inc. : GOM NOJV - Grand Isle/West Delta etc. |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Shell Offshore Inc.: Troika Unit - GC 244, 200, 201 |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Japex (U.S.) Corp.: WD 90 & WD 103 |
| Land | 1/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey, : Net Profits Interest |
| Land | 1/1/2015 | Confidential Mutual Release and Settlement Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC,  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey, |
| Land | 1/1/2015 | Overriding Royalty Assignment | by and between  Fieldwood Energy Offshore LLC and Shell Offshore Inc: Overridign Royalty Assignment |
| Land | 1/13/2015 | Acquisition | by and between  Fieldwood Onshore LLC and Energy XXI Onshore, LLC: relative to (1) the transfer and ownership of certain existing leasehold rights, (2) the acquisition of additional leasehold rights, (3) the conduct of a 3-D geophysical survey and (4) the drilling, completion and operation of oil and/or gas wells relative to the lands outlined in Red on Exhibit "B" (the "Contract Area") |
| Land | 4/1/2015 | Assignment of Operating Rights Interest in Oil & Gas Lease | by and between  Fieldwood Energy Offshore LLC, Peregrine Oil & Gas, LLC RTR Fund I, L.P, and Hall-Houston Exploration II, L.P.: Assignment of Operating Rights Interest in Oil & Gas Lease - GA 151 Operating Rights |
| Land | 4/1/2015 | Production Handling Agreement | by and between  Bandon Oil and Gas, LP, Tana Exploration Company LLC, CSL Exploration LLC, GCER Offshore LLC and W&T Offshore, INC.: PHA |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Stat Energy & Consulting, Inc. dated May 14, 2015 |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of James A. Bibby dated May 14, 2015 |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Clifford T. Crowe dated May 14, 2015 |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |

| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
|---|---|---|---|
| Land | 7/1/2015 | Settlment Agreement and Release | by and between  Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI Petroleum US LLC and ENI US Operating Co. Inc.: SS 249 D-5 RIG incident |
| Land | 8/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340   Fields |
| Land | 8/12/2015 | Pipeline Modification Agreement | Relative to pipelines near SS 208 Seg #1849 and #882 |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 12/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC, ENI US Operating Inc,  and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petrolem US LLC: Release and Settlement Agreement |
| Land | 12/18/2015 | Welll Operations Agreement | by and between Fieldwood Enegy Offshore LLC, Fieldwood Energy SP LLC, Arena Energy, LP, Arena Energy GP, LLC and Arena Energy Offshore, LP : WD 86 B-3 well |
| Land | 3/14/2016 | Completions Letter Agreement | by and between  Fieldwood Energy LLC and Whitney Oil & Gas, LLC: SP #37 #3 well dually completed and no longer economic for Feildwood |
| Land | 4/1/2016 | Divestiture | by and between  Fieldwood Energy Offshore LLC and Whitney Oil & Gas, LLC: Assignment of interest in the SP 37#3 J1 and J2 sands |
| Land | 4/1/2016 | Second Amendment of Production Handling Agreement | by and between Fieldwood Energy Offshore LLC and Walter Oil & Gas Corporation : Second Amendment of Production Handling Agreement - East Breaks 165 A Platform |
| Land | 4/25/2016 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC, Peregrine Oil & Gas, LP and Peregrine Oil & Gas II, LLC: Release and Settlement Agreement |
| Land | 7/1/2016 | Acquisition | by and between  Fieldwood Energy Offshore LLC and JOC Venture: SS 246 JOC Withdrawal |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: Assignment All Aboard to Fieldwood |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: ABOS pursuant to JOC Venture withdrawal |
| Land | 8/8/2016 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture Withdrawal |
| Land | 9/13/2016 | Agreement for Payment of Insurance Charges | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: Fieldwood agrees to pay Monforte's insurance charges |
| Land | 12/14/2016 | Surrener of Interest Agreement | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: All Aboard Development Corp. surrender of interest |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 3/1/2017 | Reinbursement Agreement | by and between Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/1/2017 | Reinbursement Agreement | by and between Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/30/2017 | Letter of No Objection | Fieldwood agreed to COX request/letter of no objectin to allow cox to produce its EI 64# 9 well. Fieldwood is the operator of SW/4 of EI 53 |
| Land | 1/1/2018 | Acquisition | by and between  Fieldwood Energy SP LLC and Knight Resources LLC: Acquisition of Knight's interest in the SS 252 #F-4 |
| Land | 1/2/2018 | Letter Agreement | by and between  Fieldwood Energy LLC and EXXI GOM, LLC: Governs participation in WD 73 C-27 McCloud drill well |
| Land | 4/1/2018 | Purchase and Sale Agreement | Purchase and Sale agreement by and between Fieldwood Energy LLC and Marathon Oil Company dated 20 June 2018 and effective 1 April 2018 |
| Land | 4/11/2018 | F40 Cost Memorialization Agreement | by and between  Fieldwood Energy LLC and EXXI GOM, LLC: WD 73 C-27 Well McCloud F-40 Reservoir  memorialization of drilling costs, etc. |

| Land | 4/11/2018 | West Delta 73 C-27 "MCCLOUD" F-40 Sand Reservoir A | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: West Delta 73 C-27 "MCCLOUD" F-40 Sand Reservoir A - Letter Agreement |
|---|---|---|---|
| Land | 5/21/2018 | Consent to Assign | Consent to Assignment by and Between Fieldwood Energy, Noble Energy and Eni Petroleum 21 May 2018 governing transition from NBL to Fieldwood Ownership of Neptune |
| Land | 5/22/2018 | Consent to Assign | Consent to Assignment by and Between Fieldwood Energy, Noble Energy and Anadarko Petroleum Corporation dated 22 May 2018 governing transition from NBL to Fieldwood Ownership of Neptune |
| Land | 8/1/2018 | Acquisition | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech's Interest in the SS 271 Unit (SS 247,248,249) |
| Land | 8/1/2018 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdraws from SS 271 Unit |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: ABOS pursuant to Entech Enterprises Withdrawal |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: ABOS pursuant to Entech Enterprises Withdrawal |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Enterprises withdrawal & settlemnet |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Enterprises withdrawal & settlemnet |
| Land | 9/18/2018 | Constuction and Operating Agreement for the Interconnect Pipeline | |
| Land | 12/5/2018 | Escrow Agreement | Escrow Agreement by and between Anadarko Offshore LLC, Eni Petroleum US LLC and Noble Energy, Inc dated 5 December 2013 and amended by that first amendment dated 5 Dec 2018 |
| Land | 12/10/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fielwood Energy LLC and Exxon Mobil Corporation |
| Land | 2/8/2019 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and Richard Schmidt, as Trustee for the Black Elk Litigation Trust and the Black Elk Liquidating Trust: Pursuant to that certain Stipulation and Agreed Order including Terra Point Petroleum LLC |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and ANKOR |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Sa nare |
| Land | 4/30/2019 | CPHTA Extension Letter Agreement | by and between Fieldwood Energy Offshore LLC, ANKOR E&P Holding Corporation and Orinoco Natural Resources LLC :Ankors production from MC 21 processed at SP 60 |
| Land | 6/10/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and TRANSCONTINENTAL GAS PIPELINE COMPANY: Confidentiality Agreement: |
| Land | 7/1/2019 | Divestiture | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: Fieldwood Divestiture of WD 73 Field Interests in the F40 Sands |
| Land | 7/1/2019 | Farmout Agreement | By and between W & T Offshore, Inc. and Dynamic Offshore Resources NS, LLC and Peregrine Oil and Gas II, LLC and GOM Energy Venture I, LLC |
| Land | 7/1/2019 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: Assignment and Bill of Sale |
| Land | 7/1/2019 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: Assignment and Bill of Sale |
| Land | 7/2/2019 | Letter Agreement | By and between W & T Offshore, Inc. and Dynamic Offshore Resources NS, LLC and Peregrine Oil and Gas II, LLC and GOM Energy Venture I, LLC |
| Land | 8/28/2019 | CPHTA Extension Letter Agreement | Extension to 04/30/2019 Letter Agreement. Ankors production from MC 21 processed at SP 60 |
| Land | 11/1/2019 | Amendment No. 3 to CPHYA, PHA and Transportation Agreement | by and between Fieldwood Energy LLC and Fieldwood Energy Offshore LLC as Processor and ANKOR Energy LLC, ANKOR E&P Holdings Coporation, KOA Energy LP and Sanare Energy Partners, LLC as Producer |
| Land | 2/13/2020 | CPHTA Subsea Tie-in Deadline Extension Letter Agreement | by and between Sanare Energy Partners, Fieldwood Energy LLC, ANKOR E&P Holidngs Corporation and KOA Energy LP |
| Land | 4/23/2020 | CPHTA Subsea Tie-in Deadline Extension Letter Agreement | by and between Sanare Energy Partners, Fieldwood Energy LLC, ANKOR E&P Holidngs Corporation and KOA Energy LP |
| Land | 01/01/1994, 04/08/1994 | Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") |
| PHA SP 60F/MC 21 | 4/29/2005 | CONSTRUCTION, PRODUCTION HANDLING AND TRANSPORTATION AGREEMENT | PHA by and between Fieldwood and ANKOR E&P HOLDINGS CORPORATION and ANKOR E&P HOLDINGS CORPORATION |
| PHA SM 278/SM 257 | 1/1/2008 | PRODUCTION HANDLING AGMT | PHA by and between Fieldwood and HELIS OIL & GAS CO and HELIS OIL & GAS CO |
| LEASE OF PLATFORM SPACE | 10/10/1984 | Platform Space Rental Agreement SMI 268A Platform 10/01/2020 - 11/30/2021 | A-LOPS- SM268A by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 10/25/1985 | Lease of Platform Space | ALOPS-WD86A by and between Fieldwood and Texas Eastern Transmission and Texas Eastern Transmission |
| LEASE OF PLATFORM SPACE | 9/1/1997 | | 09/01/2020 - 8/30/2021 | A-LOPS-WD79A by and between Fieldwood and PANTHER AS COUNTRACT OPERATOR FOR VENICE GATHERING SYSTEM and PANTHER AS COUNTRACT OPERATOR FOR VENICE GATHERING SYSTEM |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-1 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-11 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-17 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-14 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |

Exhibit III-F

| | | | |
|---|---|---|---|
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-21 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-27 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-26 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 9/1/1997 | LEASE OF PLATFORM SPACE | VEN104-LOPS by and between Fieldwood and Panther as Contract Operator for Venice Gathering System and Panther as Contract Operator for Venice Gathering System |
| LEASE OF PLATFORM SPACE | 4/15/1968 | LEASE OF PLATFORM SPACE | KIN129-LOPS by and between Fieldwood and KINETICA DEEPWATER EXPRESS, LLC and KINETICA DEEPWATER EXPRESS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC                and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC                and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342-EI342C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PRODUCTION HANDLING AGMT (JIB) | 1/31/2005 | PRODUCTION HANDLING AGREEMENT(NEPTUNE)Swordfish Producers | VK826NEP by and between Fieldwood and Apache Deepwater LLC and Apache Deepwater LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/18/2002 | PRODUCTION HANDLING AGREEMENT | HI A-582  by and between Fieldwood and Cox Operating, LLC and Cox Operating, LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 11/14/1996 | PRODUCTION HANDLING AGREEMENT | EC 349 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | SS 315A3/ST 314 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | SS 315A3/ST 314 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/13/1996 | PRODUCTION HANDLING AGREEMENT | SS 300 B/SS301 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/5/2009 | PRODUCTION HANDLING AGREEMENT | SS 189 C-1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gathering Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gathering Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gathering Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 2/1/2019 | Pool Agreement | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 8/7/2009 | IT Transport Contract - "IT Discount Life of Reserves" | Stingray - WC 485, WC 507 5.13 discount Life Of Reserve Dedicaiton by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 10/1/2019 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 4/1/2010 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy Offshore, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 12/12013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/12013 | IT PR Transport Contract | Searobin West PTR Transprt, max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011, disoucnt letter 9/16/2011 | IT-PTR Transport plus discount letter letter | Searobin WestIT PTR Contract for Discount SMI 142 and SMI 140 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT Transport Contract | Searobin West Pipeline - sandridge /Dynamic IT transport plus Discount letter for SMI 142 and SMI 40 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT-Retrograde Transport | SearobinWest Pipeline - sandridge /Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Daulphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Daulphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Daulphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Daulphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Daulphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners  and DCP Midstream, Daulphin Island Gathering Partners |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/7/2009 | IT Transport Contract - "IT Discount Life of Reserves" | Stingray - WC 485, WC 507 $.13 discount Life Of Reserve Dedicaiton by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas-Transport | 12/18/1997 | FT - Transport | Venice Gatheing  Firm Transport with Disount $.05, WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Transport | 1/1/2001 | FT - Transport | Venice Gathering  Firm transport Max rate WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Gathering | 11/1/2006 | IT Transport | Venice Gathering, WD 39 Effective date 11/1/2006 WD 64 Effective 11/1/2010 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |

| | | | |
|---|---|---|---|
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Onshore Separation Facility Cameron Parish, Louisiana  as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Onshore Separation Facility Cameron Parish, Louisiana  as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Construction and Operating Agreement | 10/22/1976 | Agreement for the Construction and Operation of the Blue Water Gas Plant Acadia Parish, Louisiana | Processing of Owners' gas all in accordance with agreements by and between Fieldwood Energy LLC and EnLink Midstream Operating, LP and EnLink Midstream Operating, LP |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Sandridge Offshore, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Sandridge Offshore, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline.  All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Oil Purchase and Sale Agreement/Transport | 8/1/2018 | Oil Purchase and Sale Agreement between Fieldwood Energy Offshore LLC and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Memorandum of Agreement | 8/1/2020 | Memorandum of Agreement Between Fieldwood Energy Offshore LLC and Poseidon Oil Pipeline Company LLC | Memorandum of Agreement by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 6/1/2003 | Oil Gathering Agreement Between Westport Resources Corporation Noble Energy Inc M | Crude Oil Transport.  by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC |

| | | | |
|---|---|---|---|
| Oil Purchase and Sale Agreement/Transport | 7/15/2003 | Oil Purchase and Sale Agreement Between Westport Resources Corporation Mariner Energy Inc Noble Energy Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transportation Agreement for Bluewater System | 10/22/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 4/1/2004 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | 1/1/2007 Original Contract; Amendment Effective 1/1/2007 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | 8/1/1992, Amendment Effective 1/1/2007 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation | 3/3/2011 | Associated Liquids Transportation Agreement #117842 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Liquids Transportation | 3/3/2011 | Associated Liquids Transportation Agreement #117842 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Liquids Transportation | 11/1/2012 Amendment Date: 8/1/2014 | Amendment No. 1 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Amendment transferring from Apache to Fieldwood Energy LLC | 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica |
| Oil Liquid Handling Agreement | 5/1/2008 | Liquid Handling Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement | 3/1/2011 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement to transfer from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/1/2012 amended 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement transferring from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/2/2010 amended effective 12/1/2014 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement transferring from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/2/2010 amended effective 12/1/2014 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 5/1/2001 | Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 5/1/2001 | Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transportation Agreement | Start date 12/1/2013-End Date 1/1/2200 | Rate Schedule ITS Interruptible Transportation Service | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transportation Agreement | Start date 5/1/2014-End date 1/1/2200 | Amendment to Interruptible Transportation Agreement | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0064 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0065 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0066 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |

| | | | |
|---|---|---|---|
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/13/2020 | STUSCO CONTRACT REF. NO. - CLP0003971 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/13/2020 | STUSCO CONTRACT REF. NO. - CLP0003971 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 1/31/2014 | Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/30/2014 | Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |

| | | | |
|---|---|---|---|
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales/Purchase | 6/1/1998 | Crude Oil Purchase and Sale Agreement | Producers sell Crude Oil to Questor and Questor purchases Crude Oil from Producers. Producers buy back a volume of Crude Oil at HIPS Segment III tie-in equal to their monthly production sold to Questor at the Platform. by and between Fieldwood Energy LLC and Questor Pipeline Venture and Questor Pipeline Venture |
| MARKETING - GAS PROCESSING | 10/22/1976 | CONSTRUCTION/OPERATING | Agreement for the Construction and Operation of the Blue Water Gas Plant, Acadia Parish, Louisiana by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 7/1/2019 | PROCESSING-FEE | between $.15 /mmbtu to $.10 /mmbtu depending on volume esc by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC and Arrowhead Louisiana Pipeline, LLC |
| MARKETING - GAS PROCESSING | 7/1/2019 | PROCESSING-FEE | between $.15 /mmbtu to $.10 /mmbtu depending on volume esc by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC and Arrowhead Louisiana Pipeline, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | PROCESSING-Greater of Fee or POL | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 12/1/2010 | 1st AMENDMENT | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 11/5/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 2/1/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 9/1/2004 | 1st AMENDMENT PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 8/1/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE-fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 8/1/2005 | GAS PROCESSING / CONDITIONING AGREEMENT | GPM: <2=80%, 2-3=82.5%, >3=85% by and between Fieldwood Energy LLC and DCP Midstream, DCP Mobile Bay Processing, LLC and DCP Midstream, DCP Mobile Bay Processing, LLC |
| MARKETING - GAS PROCESSING | 8/1/2005 | GAS PROCESSING / CONDITIONING AGREEMENT | GPM: <2=80%, 2-3=82.5%, >3=85% by and between Fieldwood Energy LLC and DCP Midstream, DCP Mobile Bay Processing, LLC and DCP Midstream, DCP Mobile Bay Processing, LLC |
| MARKETING - GAS PROCESSING | 1/8/2019 | GAS PROCESSING AGREEMENT-FEE | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/8/2019 | GAS PROCESSING AGREEMENT-FEE | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 5/1/2009 | PROCESSING AGREEMENT-GREATER of Fee or POL | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 6/29/2010 | PROCESSING AGREEMENT AMENDMENT-GREATER of Fee or POL | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 10/1/2010 | PROCESSING AGREEMENT-GREATER of Fee or POL | GPM: <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |

| | | | |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 11/1/2010 | PROCESSING AGREEMENT- 1ST AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/24/2012 | PROCESSING AGREEMENT- 2ND AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/1/2011 | GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/1/2012 | FIRST AMENDMENT - GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 7/1/2011 | GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | FIRST AMENDMENT - GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | GAS PROCESSING AGREEMENT-POL | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | GAS PROCESSING AGREEMENT-POL | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 2/17/2014 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 2/17/2014 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 11/9/2004 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/8/2007 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 4/1/2010 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/12/2011 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 4/1/2011 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/16/2004 | GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/16/2004 | GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/1/2005 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/1/2005 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2009 | THIRD AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2009 | THIRD AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/1970 | CONSTRUCTION/OPERATING (NI) | Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/1970 | CONSTRUCTION/OPERATING (NI) | Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/25/2014 | RATIFICATION AND ADOPTION OF C&O AGREEMENT | Ratificaton to the Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/25/2014 | RATIFICATION AND ADOPTION OF C&O AGREEMENT | Ratificaton to the Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/1998 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 1/1/1998 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2010 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2010 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2011 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2011 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2005 | POL -GAS PROCESSING AGREEMENT | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2005 | POL -GAS PROCESSING AGREEMENT | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2006 | POL -GAS PROCESSING AGREEMENT | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2011 | POL -GAS PROCESSING AGREEMENT-AMENDMENT | POL DEPENDENT ON GPM PLU FEE - 77%/23% -$.12026 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 3/15/2020 | GREATER OF FEE OR POL - GAS PROCESSING AGREEMENT | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 1/1/2012 | FEE GAS PROCESSING AGREEMENT | FEE - .08005 /MCF (SUBJECT TO gdp (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2012 | FEE GAS PROCESSING AGREEMENT | FEE - .08005 /MCF (SUBJECT TO gdp (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |

| | | | |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/2012 | POL- GAS PROCESSING AGREEMENT | pol 85% 15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/2012 | Gas processing Raw make purchase | Gas processing Raw make purchase  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Environmental/Govt | 6/24/2019 | Master Services Contract | – IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 10/2/2019 | Software License Agreement | IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 11/19/2018 | Master Service Contract | Regulatory |
| Environmental/Govt | 11/1/2013 | Master Services Contract | Platform Audits / BSEE Drawings |
| Environmental/Govt | 10/30/2019 | Master Client Agreement | Industry Standards, Analytics, and Research / Subscription Service |
| Environmental/Govt | 11/15/2019 | Order Form | Industry Standards, Analytics, and Research / Subscription Service |
| Land | 4/1/1981 | Unit Agreement No. 14-08-001-20231 | Unit Agreement for the C-6/JS Sand, effective April 1,1981, between. Arco Oil and Gas,Company;,Getty Oil Company, Cities Service Company, Hamilton Brothers Oil Company, Mobil Oil. Exploration &>. Producing S.E. Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt; Industries, and Prosper Energy Corporation.; Unit No. 891020231 |

**Exhibit III-G**

None

Exhibit III-H

Cash and other balances to be determined at effective date

**Surety Bonds in favor of FWE Survivor:**

| DATE | BOND NO. | Amount | Lease | PARTIES | SURETY | BENEFICIARY |
|------|----------|--------|-------|---------|--------|-------------|
| 10/17/18 | SUR0049418 | $631,130 | ROW OCS-G16039 | Talos Gulf Coast Offshore LLC; W&T Offshore Inc.; Bandon Oil and Gas, LP | Argonaut Insurance Company | Bandon Oil and Gas, LP |
| 10/17/18 | SUR0049419 | $3,455,326 | OCS-G 11881 | Talos Gulf Coast Offshore LLC; W&T Offshore Inc.; Bandon Oil and Gas, LP | Argonaut Insurance Company | Bandon Oil and Gas, LP |
| 2/13/18 | 1149839 | $500,000 | OCS-G19760 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149840 | $50,000 | OCS-G19761 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |

**<u>Exhibit 5A</u>**
***Attachment to Plan of Merger (Exhibit 5)***

**Certificate of Merger (TX) (FWE)**

**CERTIFICATE OF MERGER**
**(DOMESTIC ENTITY DIVISIONAL MERGER)**
**OF**
**FIELDWOOD ENERGY LLC**

**[●], 2021**

Pursuant to Title 1, Chapter 10 and Title 3 of the Texas Business Organizations Code (the "TBOC"), the undersigned, Fieldwood Energy, LLC, a Texas limited liability company ("FWE"), submits this certificate of merger for the purpose of dividing itself into a surviving domestic entity and one new domestic entity, and hereby certifies the following:

FIRST:  The name of the domestic filing entity that is dividing itself is Fieldwood Energy, LLC.

SECOND:  The principal place of business of FWE is 2000 W Sam Houston Pkwy S #1200, Houston, TX 77042.

THIRD:  The filing number issued to FWE by the Secretary of State of the State of Texas is [●][1].

FOURTH:  FWE is organized as a limited liability company.

FIFTH: FWE shall survive the merger and shall maintain its separate existence and continue as a filing entity under the name "Fieldwood Energy III LLC" ("FWE III").

SIXTH:  In lieu of providing the plan of merger, the filing entity certifies that:

(i)   An executed copy of the Agreement and Plan of Merger, dated as of [●], 2021 (the "Plan of Merger"), of FWE is on file at the principal place of business of each surviving and new domestic entity provided in this form.

(ii)  On written request, a copy of the Plan of Merger will be furnished without cost by each surviving or new domestic entity to any member of any domestic entity that is a party to or created by the Plan of Merger, and any creditor or obligee of the parties to the merger at the time of the merger if a liability or obligation is then outstanding.

SEVENTH:  The certificate of formation of FWE shall continue to be the certificate of formation of FWE following the merger, provided that the certificate of formation of FWE shall be amended to change the name of such entity to "Fieldwood Energy III, LLC".

EIGHTH:  The name, jurisdiction of organization, principal place of business address, and entity description of the entity to be created pursuant to the plan of merger are set forth

---

[1] **Note to Draft**:  to be assigned upon conversion of FWE to a Texas LLC.

below.  The certificate of formation of the new domestic filing entity to be created is being filed with this certificate of merger.

> Name:  Fieldwood Energy I LLC
>
> Entity Description:  limited liability company
>
> Jurisdiction of Organization:  Texas
>
> Principal place of business: [●].

NINTH:   The Plan of Merger has been approved, adopted, certified, executed and acknowledged as required by the TBOC and the governing documents of the filing entity.

TENTH:  This document shall be effective when the document is accepted and filed by the Secretary of State of the State of Texas.

ELEVENTH:  In lieu of providing the tax certificate, FWE III shall continue to be liable for the payment of all required franchise taxes of FWE III.

<p style="text-align:center">*   *   *   *   *   *</p>

WEIL:\97689497\5\45327.0007

IN WITNESS WHEREOF, the undersigned has caused this certificate of merger to be duly executed as of the date first set forth above.

**FIELDWOOD ENERGY, LLC**
a Texas limited liability company

By: _____

Name: _____

Title: _____

**Exhibit 5B**
*Attachment to Plan of Merger (Exhibit 5)*

**Certificate of Formation (TX) (Fieldwood Energy I LLC)**

<table>
<tr><td>

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $300**

</td><td>



**Certificate of Formation**
**Limited Liability Company**

</td><td>

This space reserved for office use.

</td></tr>
</table>

### Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

FIELDWOOD ENERGY I LLC
<small>The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.</small>

### Article 2 – Registered Agent and Registered Office
<small>(See instructions. Select and complete either A or B and complete C.)</small>

☒  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

**OR**

CAPITOL CORPORATE SERVICES, INC.

☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

| | | | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C.  The business address of the registered agent and the registered office address is:

| | | | |
|---|---|---|---|
| 206 E. 9TH STREET, SUITE 1300 | AUSTIN | TX | 78701 |
| *Street Address* | *City* | *State* | *Zip Code* |

### Article 3—Governing Authority
<small>(Select and complete either A or B and provide the name and address of each governing person.)</small>

☒  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| GOVERNING PERSON 1 |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) |
| **IF INDIVIDUAL** |
| |
| *First Name*      *M.I.*      *Last Name*                                      *Suffix* |
| **OR** |
| **IF ORGANIZATION** |
| |
| *Organization Name* |
| **ADDRESS** |
| |
| *Street or Mailing Address*      *City*      *State*   *Country*   *Zip Code* |

Form 205                                      4

| GOVERNING PERSON 2 | | | | | |
|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | |
| IF INDIVIDUAL | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| **OR** | | | | | |
| IF ORGANIZATION | | | | | |
| *Organization Name* | | | | | |
| **ADDRESS** | | | | | |
| *Street or Mailing Address* | | *City* | *State* | *Country* | *Zip Code* |

| GOVERNING PERSON 3 | | | | | |
|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | |
| IF INDIVIDUAL | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| **OR** | | | | | |
| IF ORGANIZATION | | | | | |
| *Organization Name* | | | | | |
| **ADDRESS** | | | | | |
| *Street or Mailing Address* | | *City* | *State* | *Country* | *Zip Code* |

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed pursuant to a plan of merger.  The name of the merging entity is Fieldwood Energy LLC.

The address of the converting entity is  2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042.

The merging entity was formed on 11/5/2012 under the laws of the State of Delaware, USA.

The merging entity was previously a Delaware limited liability company. The merger entity converted to a Texas limited liability company on [___]/[___]/2021.

TX060BOC - 11/27/2013 Wolters Kluwer Online

## Organizer

The name and address of the organizer:

_____

_Name_

_____

_Street or Mailing Address_                      _City_                      _State_    _Zip Code_

## Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

> the filing of the certificate of merger of Fieldwood Energy LLC with the Secretary of State of Texas.

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment.  The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date:  _____

_____

Signature of organizer

_____

Printed or typed name of organizer

[ Print ]    [ Reset ]

Form 205                      6

**Exhibit 6**

**Fieldwood Energy I LLC Agreement**

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## FIELDWOOD ENERGY I LLC

*(a Texas Limited Liability Company)*

**[●], 2021**

**THE MEMBERSHIP INTERESTS REFERENCED IN THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY APPLICABLE STATE SECURITIES LAWS. SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AS WELL AS COMPLIANCE WITH THE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY THAT ARE SET FORTH HEREIN.**

# TABLE OF CONTENTS

**ARTICLE I**      **DEFINITIONS** ................................................................................................**1**

    **Section 1.01**   **Definitions** ................................................................................**1**
    **Section 1.02**   **Interpretation** .........................................................................**12**

**ARTICLE II**      **ORGANIZATION** ...........................................................................**12**

    **Section 2.01**   **Formation** ................................................................................**12**
    **Section 2.02**   **Name** ........................................................................................**13**
    **Section 2.03**   **Principal Office** .......................................................................**13**
    **Section 2.04**   **Registered Office; Registered Agent** ....................................**13**
    **Section 2.05**   **Purposes; Powers** ...................................................................**13**
    **Section 2.06**   **Term** ........................................................................................**14**

**ARTICLE III**      **CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS** ...........**14**

    **Section 3.01**   **Initial Capital Contributions** ...............................................**14**
    **Section 3.02**   **Additional Capital Contributions** .........................................**15**
    **Section 3.03**   **Maintenance of Capital Accounts** .........................................**15**
    **Section 3.04**   **Succession Upon Transfer** .....................................................**15**
    **Section 3.05**   **Negative Capital Accounts** .....................................................**15**
    **Section 3.06**   **No Withdrawals from Capital Accounts** ................................**16**
    **Section 3.07**   **Treatment of Loans from Members** .......................................**16**
    **Section 3.08**   **Modifications** ..........................................................................**16**

**ARTICLE IV**      **MEMBERS** ........................................................................................**16**

    **Section 4.01**   **No Personal Liability** .............................................................**16**
    **Section 4.02**   **No Withdrawal** ........................................................................**16**
    **Section 4.03**   **No Interest in Company Property** ..........................................**16**
    **Section 4.04**   **Certification of Membership Interests** ..................................**17**
    **Section 4.05**   **Meetings of Members** .............................................................**17**
    **Section 4.06**   **Action Without Meeting** .........................................................**18**
    **Section 4.07**   **Power of Members** ..................................................................**19**
    **Section 4.08**   **Similar or Competitive Activities; Business Opportunities** ..................**19**

**ARTICLE V**      **ALLOCATIONS** ...............................................................................**19**

    **Section 5.01**   **Allocation of Net Income and Net Loss** .................................**19**
    **Section 5.02**   **Regulatory and Special Allocations** ......................................**19**
    **Section 5.03**   **Tax Allocations** .......................................................................**20**
    **Section 5.04**   **Allocations in Respect of Transferred Membership Interests** ...............**22**

i

**ARTICLE VI    DISTRIBUTIONS** ..................................................................................**22**

    **Section 6.01    General** ..............................................................................**22**

    **Section 6.02    Tax Advances** ....................................................................**23**

    **Section 6.03    Tax Withholding; Withholding Advances** ...........................**24**

    **Section 6.04    Distributions in Kind** .........................................................**25**

**ARTICLE VII    MANAGEMENT** ...................................................................................**25**

    **Section 7.01    Management of the Company** ...........................................**25**

    **Section 7.02    Independent Director** .........................................................**25**

    **Section 7.03    Sole Manager** ....................................................................**26**

    **Section 7.04    Service Provider** ................................................................**26**

    **Section 7.05    Actions Requiring Independent Director Consent** ............**27**

    **Section 7.06    Actions Requiring Apache Consent** ...................................**28**

    **Section 7.07    Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser** ....................**31**

    **Section 7.08    No Personal Liability** .........................................................**31**

    **Section 7.09    Funding Capital Expenditures** ..........................................**32**

**ARTICLE VIII    TRANSFER** ......................................................................................**33**

    **Section 8.01    General Restrictions on Transfer** .....................................**33**

**ARTICLE IX    EXCULPATION AND INDEMNIFICATION** ...........................................**34**

    **Section 9.01    Exculpation of Covered Persons** .......................................**34**

    **Section 9.02    Liabilities and Duties of Covered Persons** ........................**35**

    **Section 9.03    Indemnification** .................................................................**36**

    **Section 9.04    Survival** .............................................................................**38**

**ARTICLE X    ACCOUNTING; TAX MATTERS** ..........................................................**38**

    **Section 10.01    Financial Statements and Other Information** ..................**38**

    **Section 10.02    Inspection Rights** .............................................................**39**

    **Section 10.03    Income Tax Status** ...........................................................**40**

    **Section 10.04    Tax Matters Representative** .............................................**40**

    **Section 10.05    Tax Returns** ......................................................................**41**

    **Section 10.06    Company Funds** ................................................................**42**

**ARTICLE XI    WINDING UP AND TERMINATION** .....................................................**42**

    **Section 11.01    Events Requiring Winding Up** .........................................**42**

    **Section 11.02    Effectiveness of Termination** ..........................................**42**

    **Section 11.03    Liquidation** .......................................................................**43**

Section 11.04   Certificate of Termination......................................................................44
Section 11.05   Survival of Rights, Duties, and Obligations.............................................44
Section 11.06   Recourse for Claims...............................................................................44


ARTICLE XII   MISCELLANEOUS.............................................................................44

Section 12.01   Expenses...............................................................................................44
Section 12.02   Further Assurances...............................................................................45
Section 12.03   Confidentiality......................................................................................45
Section 12.04   Notices..................................................................................................46
Section 12.05   Headings...............................................................................................47
Section 12.06   Severability...........................................................................................47
Section 12.07   Entire Agreement..................................................................................48
Section 12.08   Successors and Assigns.........................................................................48
Section 12.09   No Third-Party Beneficiaries................................................................48
Section 12.10   Amendment...........................................................................................48
Section 12.11   Waiver...................................................................................................48
Section 12.12   Governing Law......................................................................................48
Section 12.13   Submission to Jurisdiction....................................................................49
Section 12.14   Waiver of Jury Trial.............................................................................49
Section 12.15   Equitable Remedies..............................................................................49
Section 12.16   Attorney's Fees.....................................................................................49
Section 12.17   Remedies Cumulative............................................................................49
Section 12.18   Counterparts.........................................................................................50

| | |
|---|---|
| EXHIBIT A | FORM OF TRANSITION SERVICES AGREEMENT |
| SCHEDULE A | MEMBERS SCHEDULE |
| SCHEDULE B | INDEPENDENT DIRECTOR'S COMPENSATION |
| SCHEDULE C | SOLE MANAGER'S COMPENSATION |
| SCHEDULE D | ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND EMPLOYEES |

## LIMITED LIABILITY COMPANY AGREEMENT OF
## FIELDWOOD ENERGY I LLC

This Limited Liability Company Agreement of Fieldwood Energy I LLC, a Texas limited liability company (the "**Company**"), dated as of [●], 2021 (this "**Agreement**"), is entered into by and among the Company, the Initial Member[1] executing this Agreement as of the date hereof, and each other Person who after the date hereof becomes a Member of the Company and becomes a party to this Agreement by executing a joinder agreement in form and substance acceptable to the Company.  Capitalized terms not defined where used in this Agreement shall have the meanings assigned to such terms in ARTICLE I of this Agreement.

## RECITALS

**WHEREAS,** the Company was formed under the laws of the State of Texas by the filing of a Certificate of Formation with the Secretary of State of the State of Texas on [●], 2021 (the "**Certificate of Formation**") for the purposes set forth in Section 2.05 of this Agreement;

**WHEREAS,** pursuant to and in accordance with the Confirmation Order and the Term Sheet, respectively, and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company will own (i) the Legacy Apache Properties subject to the operational liabilities in connection therewith, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties, and (ii) the equity interests of GOM Shelf;

**WHEREAS,** in accordance with the Term Sheet, [●] has been appointed to serve as the initial Independent Director of the Company in accordance with this Agreement; and

**WHEREAS,** the Initial Member wishes to enter into this Agreement to set forth the terms and conditions governing the operation and management of the Company;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

**Section 1.01   Definitions.**  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 1.01:

"**Acceptance Notice**" has the meaning set forth in Section 7.09.

---

[1] NTD: Please confirm identity of Initial Member and the equity holders of the Initial Member.

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)     crediting to such Capital Account any amount that such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i); and

(b)     debiting to such Capital Account the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

"**Adjusted Taxable Income**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year (or portion thereof) with respect to the Membership Interest held by such Member means the federal taxable income allocated by the Company to the Member with respect to its Membership Interest (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided, that such taxable income shall be computed (i) minus any excess taxable loss of the Company for any prior period allocable to such Member with respect to its Membership Interest that were not previously taken into account for purposes of determining such Member's Adjusted Taxable Income in a prior Fiscal Year to the extent such loss would be available under the Code to offset income of the Member (or, as appropriate, the direct or indirect owners of the Member) determined as if the income and loss from the Company were the only income and loss of the Member (or, as appropriate, the direct or indirect owners of the Member) in such Fiscal Year and all prior Fiscal Years, and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise; and the terms "controlling" and "controlled" shall have correlative meanings.  For the avoidance of doubt, neither Apache nor any of its Subsidiaries nor Credit Bid Purchaser nor any of its Subsidiaries shall constitute an Affiliate of the Company.

"**Agreement**" has the meaning set forth in the Preamble.

"**Apache**" means Apache Corporation, a Delaware corporation, and its successors or assigns.

"**Applicable Law**" means all applicable provisions of (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

"**Approved Providers**" has the meaning set forth in Section 7.02(a).

"**BOC**" means the Texas Business Organizations Code, as amended and in effect at the time of this Agreement.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation shall be (a) if such difference is being eliminated by use of the remedial method under Treasury Regulations Section 1.704-3(d), the amount of book basis recovered for such period under the rules prescribed by Treasury Regulations Section 1.704-3(d)(2), or (b) if the remedial method is not used, an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Book Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Sole Manager in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a)     the initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b)     immediately before the distribution by the Company of any Company asset to a Member, the Book Value of such asset shall be adjusted to its gross Fair Market Value as of the date of such distribution;

(c)     the Book Value of all Company assets may, in the sole discretion of the Sole Manager, be adjusted to equal their respective gross Fair Market Values, as reasonably determined by the Sole Manager, as of the following times:

(i)     the acquisition of an additional Membership Interest in the Company by a new or existing Member in consideration for more than a *de minimis* Capital Contribution;

(ii)     the distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest in the Company; and

(iii)     the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g);

(d)     the Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset

3

pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m); provided, that Book Values shall not be adjusted pursuant to this paragraph (d) to the extent that an adjustment pursuant to paragraph (c) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this paragraph (d); and

(e)     if the Book Value of a Company asset has been determined pursuant to paragraph (a) or adjusted pursuant to paragraphs (c) or (d) above, such Book Value shall thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the State of Texas are authorized or required to close.

"**Capital Account**" has the meaning set forth in Section 3.03.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property contributed to the Company by such Member.

"**Certificate of Formation**" has the meaning set forth in the Recitals.

"**Certificate of Termination**" means a certificate to be filed upon completion of the winding up and liquidation of the Company as set forth in Section 11.04, which certificate shall be in the form required by § 11.101 of the BOC.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the Preamble.

"**Company Minimum Gain**" means "partnership minimum gain" as defined in Treasury Regulations Section 1.704-2(b)(2), substituting the term "Company" for the term "partnership" as the context requires.

"**Confidential Information**" has the meaning set forth in Section 12.03(a).

"**Confirmation Order**" means the confirmation order entered in Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC, *et al*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in form and substance reasonably acceptable to Apache.

"**Continuance**" has the meaning set forth in Section 11.01.

"**Covered Person**" has the meaning set forth in Section 9.01(a).

"**Credit Bid Purchaser**" means [_____],[2] a Delaware limited liability company, and its successors and assigns.

"**Credit Bid Purchaser Documents**" means the agreements entered into between the Credit Bid Purchaser and the Company in connection with the Plan of Reorganization, including but not limited to the Farmout Agreement, Transition Services Agreement, and the Credit Bid Purchaser Contract Services Agreement, if executed.

"**Credit Bid Purchaser Contract Services Agreement**" means, in the event the Credit Bid Purchaser becomes the Service Provider under Section 7.04 of this Agreement, the Contract Services Agreement to be entered into between the Credit Bid Purchaser and the Company in the form attached to the Implementation Agreement, which, if executed, will be deemed the Service Provider Agreement hereunder.

"**Decommissioning Agreement**" means that certain Decommissioning Agreement, dated as of September 30, 2013, by and among Apache, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood and GOM Shelf, as amended by (i) the First Amendment thereto dated as of September 30, 2013, (ii) the Second Amendment thereto dated as of September 30, 2013, (iii) the Third Amendment thereto dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement dated January 3, 2018, and (v) the Fifth Amendment thereto dated effective as of April 11, 2018.

"**Decommissioning Security**" means the funds available from Trust A, the letters of credit, and the bonds from time to time outstanding pursuant to the Decommissioning Agreement or documents or instruments related thereto.

"**Depletable Property**" means each separate oil and gas property as defined in Section 614 of the Code.

"**Divisive Merger Documents**" means the certificate of division, the plan of division, the certificate of merger, and other documents filed by or on behalf of Fieldwood with respect to the Company with the Texas Secretary of State related to the divisive merger pursuant to the Plan of Merger and the formation of the Company.

"**Electronic Transmission**" means any form of communication, including communication by use of or participation in one or more electronic networks or databases, not directly involving the physical transmission of paper that creates a record that may be retained, retrieved, and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

---

[2] <u>NTD</u>: Name to be confirmed.

"**Equity Securities**" means any and all Membership Interests of the Company and any securities of the Company convertible into, exchangeable for, or exercisable for, such Membership Interests, and warrants or other rights to acquire such Membership Interests.

"**Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Sole Manager.  In making such estimate, the Sole Manager shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as the Sole Manager reasonably determines are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"**Excess Amount**" has the meaning set forth in Section 6.02(c).

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Sole Manager on such factors as the Sole Manager, in the exercise of his or her reasonable business judgment, considers relevant.

"**Farmout Agreement**" means that certain Farmout Agreement of even date herewith by and between the Company and Credit Bid Purchaser in the form attached to the Implementation Agreement.

"**Fieldwood**" means, prior to the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy LLC, and, from and after the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy III, LLC, a Texas limited liability company. and its successors and assigns (excluding, for the avoidance of doubt, the Company).

"**Fiscal Year**" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year shall be the period that conforms to its taxable year.

"**GAAP**" means generally accepted accounting principles in the United States of America in effect from time to time; provided, that, notwithstanding any term or provision contained in this Agreement, GAAP will be deemed for all purposes hereof to treat leases that would have not been considered to be indebtedness in accordance with GAAP as in effect on December 31, 2017 (whether such leases were in effect on such date or are entered into thereafter) in a manner consistent with the treatment of such leases under GAAP as in effect on December 31, 2017, notwithstanding any modification or interpretative changes thereto or implementations of any such modifications or interpretative changes that may have occurred thereafter.

"**GOM Shelf**" means GOM Shelf LLC, a Delaware limited liability company, and its successors and assigns.

"**GOM Shelf Properties**" means those assets or properties owned by GOM Shelf.

"**Governmental Authority**" means any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations, or orders of such organization or authority have the force of law), or any arbitrator, court, or tribunal of competent jurisdiction.

"**Implementation Agreement**" means the [Second Amended Apache Term Sheet Implementation Agreement].

"**Independent Director**" means, initially, [●], or such other Person as may be designated or become the Independent Director pursuant to the terms of this Agreement. The Independent Director shall constitute a "manager" (as that term is defined in the BOC) of the Company.

"**Information Notice**" has the meaning set forth in Section 7.09.

"**Initial Member**" has the meaning set forth in the term Member.

 "**Legacy Apache Properties**" means the list of assets set forth on Schedule I to the Plan of Merger.

"**Legacy Apache Properties PSA**" means that Purchase and Sale Agreement, dated as of July 18, 2013, between Apache and certain of its affiliates, Fieldwood and certain of its affiliates, and GOM Shelf, as such agreement has been amended.

"**Lien**" means any mortgage, pledge, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever.

"**Liquidator**" has the meaning set forth in Section 11.03(a).

"**Losses**" has the meaning set forth in Section 9.03(a).

"**Member**" means (a) each Person identified on the Members Schedule as of the date hereof as a Member and who has executed this Agreement or a counterpart thereof (each, an "**Initial Member**"); and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the BOC, in each case so long as such Person is shown on the Company's books and records as the owner of Membership Interests.  The Members shall constitute "members" (as that term is defined in the BOC) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulations Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Members Schedule**" has the meaning set forth in Section 3.01.

"**Membership Interest**" means an interest in the Company owned by a Member, including such Member's right (a) to its distributive share of Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company; (b) to its distributive share of the assets of the Company; (c) to vote on, consent to, or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the BOC.  The Membership Interest of each Member shall be expressed as a percentage interest and shall be as set forth on the Members Schedule.

"**Net Income**" and "**Net Loss**" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or taxable loss), but with the following adjustments:

(f)     any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), shall be added to such taxable income or taxable loss, notwithstanding that such income is not includable in gross income;

(g)     any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulations Section 1.704-1(b)(2)(iv)(I) as items described in Code Section 705(a)(2)(B), shall be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(h)     any gain or loss (including Simulated Gain) resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(i)     any items of depreciation, amortization, and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis shall be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g);

(j)     if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment shall be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss;

(k)     to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulations Section 1.704 1(b)(2)(iv)(m), to be taken into account in determining

8

Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis); and

(l)     any items which are specially allocated pursuant to Section 5.02 hereof shall not be taken into account in computing Net Income or Net Loss.  The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to Section 5.02 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (a) through (f) above.

"**Nonrecourse Deductions**" has the meaning set forth in Treasury Regulations Section 1.704-2(b).

"**Nonrecourse Liability**" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

"**Plan of Merger**" means the Agreement and Plan of Merger of Fieldwood into the Company and Fieldwood Energy III LLC, dated as of [●], 2021, and adopted by Fieldwood .

"**Plan of Reorganization**" means the plan of reorganization of Fieldwood that was included in, and was confirmed by, the Confirmation Order.

"**Qualified Person**" has the meaning set forth in Section 7.02(a).

"**Quarterly Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any calendar quarter of a Fiscal Year means the excess, if any of: (a) the product of (i) a quarter (1/4) in the case of the first calendar quarter of the Fiscal Year, half (1/2) in the case of the second calendar quarter of the Fiscal Year, three-quarters (3/4) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year; over (b) all distributions previously made during such Fiscal Year to such Member.

"**Recharacterization Mortgages**" has the meaning assigned to such term in Section 6.7 of the Decommissioning Agreement.

"**Regulatory Allocations**" has the meaning set forth in Section 5.02(f).

"**Rejection Notice**" has the meaning set forth in Section 7.09.

"**Related Party Agreement**" means any agreement, arrangement, or understanding between or among the Company or any of its Affiliates, on the one hand, and the Independent Director, the Sole Manager or any member or officer of the Company or any of its Affiliates, or any Affiliate of the Independent Director, the Sole Manager or any member or officer of the

Company or any of its Affiliates; in each case, as such agreement may be amended, modified, supplemented, or restated in accordance with the terms of this Agreement.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors or lenders, counsel, accountants, and other agents of such Person.

"**Restructuring Support Agreement**" means the Restructuring Support Agreement, dated as of August 4, 2020, by and among (i) Fieldwood and including the Fieldwood PSA Parties (as defined therein); (ii) the Consenting FLTL Lenders (as defined therein); (iii) the Consenting SLTL Lenders (as defined therein); and (iv) Apache.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations thereunder, which shall be in effect at the time.

"**Service Provider**" has the meaning set forth in Section 7.04(a).

"**Service Provider Agreement**" has the meaning set forth in Section 7.04(a).

"**Shortfall Amount**" has the meaning set forth in Section 6.02(b).

"**Simulated Basis**" means, with respect to each Depletable Property, the Book Value of such property.

"**Simulated Depletion**" means, with respect to each Depletable Property, a depletion allowance computed in accordance with U.S. federal income tax principles (as if the Simulated Basis of the property were its adjusted tax basis and using simulated cost depletion) and in the manner specified in Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2), provided that the Simulated Depletion with respect to a Depletable Property shall in no event exceed the Simulated Basis of such Depletable Property.

"**Simulated Gain or Loss**" means the simulated gain or loss computed with respect to a sale or other disposition of any Depletable Property pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2).

"**Sole Manager**" has the meaning set forth in Section 7.01.

"**Standby Facility**" means a secured line of credit to be provided by Apache to the Company and GOM Shelf to fund the ongoing plugging and abandonment and decommissioning of the Legacy Apache Properties and the GOM Shelf Properties, which shall become available to advance funds to the Company and for use in accordance with the Standby Facility Documentation. The Standby Facility shall be secured by a first-priority lien on all the assets of the Company (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of the Company to Apache under the Decommissioning Agreement.

"**Standby Facility Documentation**" means the Standby Loan Agreement, dated as of [●], 2020, by and between the Company and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or comparable managers are owned, directly or indirectly, by the first Person.

"**Tax Advance**" has the meaning set forth in Section 6.02(a).

"**Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the lesser of (i) the product of (a) the Tax Rate for such Fiscal Year (but not to exceed the Tax Rate applicable to C-corporations for such Fiscal Year) and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Membership Interest or (ii) the actual amount of U.S. federal, state and local income tax (including any state or local tax imposed in lieu of an income tax) paid by such Member with respect to such Fiscal Year in respect of the taxable income allocated to the Member by the Company, after taking into account all deductions available to such Member from all sources in excess of such Member's income from other sources; *provided, however*, that if at any time Fieldwood Energy Inc. has a cash tax liability (including an estimated tax liability) on account of items of income or gain of the Company without sufficient cash on hand from a corresponding cash distribution in respect of such income or gain (all as reasonably determined by Fieldwood Energy Inc.), then the Tax Amount shall be increased such that the Company timely distributes cash sufficient to pay such tax liability.

"**Tax Matters Representative**" has the meaning set forth in Section 10.04(a).

"**Tax Rate**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any period, means the highest effective marginal combined federal, state, and local tax rate applicable to an individual residing in Houston, Texas (or, if higher, a corporation doing business in Houston, Texas), taking into account (a) the character (for example, long-term or short-term capital gain, ordinary, or exempt) of the applicable income and (b) if applicable, the deduction under IRC Section 199A.

"**Taxing Authority**" has the meaning set forth in Section 6.03(b).

"**Term Sheet**" means that certain term sheet, dated July 31, 2020, among Fieldwood and certain of its Affiliates, on the one hand, and Apache and certain of its Affiliates, on the other hand.

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, gift, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, gift, pledge, encumbrance, hypothecation, or similar disposition of, any Membership Interests owned by a Person or any interest (including a beneficial interest) in any Membership Interests owned by a Person.  "**Transfer**" when used as a noun shall have a

11

correlative meaning.  "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Transition Services Agreement**" means the transition services agreement in form and substance attached to the Implementation Agreement and attached hereto as Exhibit A.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Trust A**" means the Fieldwood Decommissioning Trust A, a Delaware statutory trust.

"**Withholding Advances**" has the meaning set forth in Section 6.03(b).

**Section 1.02   Interpretation.**  For purposes of this Agreement: (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole.

The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms.

Unless the context otherwise requires, references herein: (x) to Articles, Sections, Exhibits, and Schedules mean the Articles and Sections of, and Exhibits and Schedules attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

The Exhibits and Schedules referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

<div align="center">

**ARTICLE II**
**ORGANIZATION**

</div>

**Section 2.01   Formation**.

(a)     The Company was formed on [●], 2021, pursuant to the provisions of the BOC, upon the filing, or constructive filing with the Divisive Merger Documents, of the Certificate of Formation with the Secretary of State of the State of Texas.

(b)     This Agreement shall constitute the "company agreement" (as that term is used in the BOC) of the Company.  The rights, powers, duties, obligations, and liabilities of the Members, the Sole Manager and the Independent Director shall be determined pursuant to the BOC and this Agreement.  To the extent that the rights, powers, duties, obligations, and liabilities of any Member, the Sole Manager or the Independent Director are different by reason of any provision of this Agreement than they would be under the BOC in the absence of such provision, this Agreement shall, to the extent permitted by the BOC, control.

**Section 2.02   Name.**  The name of the Company is "Fieldwood Energy I LLC" or such other name or names as may be designated by the Sole Manager; provided, that the name shall always contain the words "Limited Liability Company" or "Limited Company" or an abbreviation of one of those phrases.  Amendments to the Certificate of Formation or this Agreement to reflect any such name change may be made by the Sole Manager without the consent of the Members. The Sole Manager shall give prompt notice to the Members of any change to the name of the Company and any related amendment to the Certificate of Formation or this Agreement.  The Company may conduct business under any assumed or fictitious name required by Applicable Law or otherwise deemed desirable by the Sole Manager.

**Section 2.03   Principal Office.**  The principal office of the Company is located at [●], or such other place as may from time to time be determined by the Sole Manager.  The Sole Manager shall give prompt notice of any such change to each of the Members and Apache.

**Section 2.04   Registered Office; Registered Agent.**

(a)     The registered office of the Company shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

(b)     The registered agent for service of process on the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

**Section 2.05   Purposes; Powers.**

(a)     The purposes of the Company are to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the Legacy Apache Properties and to cause GOM Shelf to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the GOM Shelf Properties, and to engage in any and all activities necessary or incidental to the foregoing purposes.

(b)     At the date of this Agreement, the Company has no assets other than (i) the Legacy Apache Properties, including any accounts receivable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization and any cash flow generated from the Legacy Apache Properties after the effective date of the Plan of Reorganization (such cash flow shall be reinvested and used to fund operating expenditures, to fund plugging and abandonment and decommissioning activities associated with the Legacy Apache Properties and the GOM Shelf Properties, to fund capital expenditures on the Legacy Apache Properties approved and authorized in accordance with this Agreement, and to repay amounts outstanding, if any, under the Standby Facility); (ii) 100% of the limited liability company interests or other equity interests in GOM Shelf; and (iii) the initial capitalization provided by Fieldwood pursuant to the divisive merger in an amount equal to $50 million *minus* the actual plugging and abandonment and decommissioning expenses incurred by Fieldwood between the date of its bankruptcy petition filing on August 3, 2020, and the effective date of the Plan of Reorganization.

(c)     At the date of this Agreement, the Company has no liabilities other than (i) operational liabilities accruing after the effective date of the Plan of Reorganization (including any accounts payable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization), (ii) plugging and abandonment and decommissioning liabilities and obligations (A) relating to the Legacy Apache Properties and (B) of GOM Shelf relating to the GOM Shelf Properties, (iii) obligations under the Decommissioning Agreement and the Legacy Apache Properties PSA, and (iv) obligations under the Standby Facility Documentation.

(d)     The Company shall have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the BOC.

**Section 2.06   Term.**  The term of the Company commenced on the date the Certificate of Formation was filed with the Secretary of State of the State of Texas and shall continue in existence perpetually until the Company is terminated in accordance with the provisions of this Agreement.

### ARTICLE III
### CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 3.01   Initial Capital Contributions.**  Contemporaneously with the execution of this Agreement, and pursuant to the Plan of Reorganization and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company shall have the property and assets identified in clauses (i) through (iii) in Section 2.05(b), which shall constitute the aggregate Capital Contributions made by the Initial Member.  The Initial Member shall own Membership Interests in the amount set forth opposite such Member's name on Schedule A attached hereto (the "**Members Schedule**").  From and after the date of this Agreement, the Sole Manager shall maintain and update the Members Schedule upon the issuance or Transfer of any Membership Interests to any new or existing Member in accordance with this Agreement.

Section 3.02   **Additional Capital Contributions.**  No Member shall be required to make any additional Capital Contributions to the Company.  Any future Capital Contributions made by any Member shall only be made with the consent of the Sole Manager and, in connection with an issuance of additional Membership Interests, made in compliance with Section 7.06(e).  To the extent that a Member makes an additional Capital Contribution to the Company, the Sole Manager shall revise the Members Schedule to reflect an increase in the Membership Interest of the contributing Member that fairly and equitably reflects the value of its additional Capital Contribution in relation to the aggregate amount of all Capital Contributions made by the Members.

Section 3.03   **Maintenance of Capital Accounts.**  The Company shall establish and maintain for each Member a separate capital account (a "**Capital Account**") on its books and records in accordance with this Section 3.03.  Each Capital Account shall be established and maintained in accordance with the following provisions:

(a)      Each Member's Capital Account shall be increased by the amount of:

(i)      such Member's Capital Contributions, including such Member's initial Capital Contribution and any additional Capital Contributions;

(ii)      any Net Income or other item of income or gain allocated to such Member pursuant to ARTICLE V; and

(iii)      any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

(b)      Each Member's Capital Account shall be decreased by:

(i)      the cash amount or Book Value of any property distributed to such Member pursuant to ARTICLE VI and Section 11.03(d);

(ii)      the amount of any Net Loss or other item of loss or deduction allocated to such Member pursuant to ARTICLE V; and

(iii)      the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

Section 3.04   **Succession Upon Transfer.**  In the event that any Membership Interests are Transferred in accordance with the terms of this Agreement, the Transferee shall succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Membership Interests and, subject to Section 5.04, shall receive allocations and distributions pursuant to ARTICLE V, ARTICLE VI, and ARTICLE XI in respect of such Membership Interests.

Section 3.05   **Negative Capital Accounts.**  In the event that any Member shall have a deficit balance in its Capital Account, such Member shall have no obligation, during the term of the Company or upon termination or liquidation thereof, to restore such negative balance or make

15

any Capital Contributions to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or termination in contravention of this Agreement.

**Section 3.06   No Withdrawals from Capital Accounts.**  No Member shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement.  No Member shall receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement.  The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss, and deduction among the Members and shall have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

**Section 3.07   Treatment of Loans from Members.**  Loans by any Member to the Company shall not be considered Capital Contributions and shall not affect the maintenance of such Member's Capital Account, other than to the extent provided in Section 3.03(a)(iii), if applicable.

**Section 3.08   Modifications.**  The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Sole Manager determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Sole Manager may authorize such modifications without the consent of any Member.

## ARTICLE IV
## MEMBERS

**Section 4.01   No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt, obligation, or liability of the Company or other Members, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being a Member.

**Section 4.02   No Withdrawal.**  So long as a Member continues to hold a Membership Interest, such Member shall not have the ability to withdraw or resign as a Member prior to the winding up and termination of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the winding up and termination of the Company shall be null and void.  As soon as any Person who is a Member ceases to hold a Membership Interest, such Person shall no longer be a Member.

**Section 4.03   No Interest in Company Property.**  No real or personal property of the Company shall be deemed to be owned by any Member individually, but shall be owned by, and title shall be vested solely in, the Company.  Without limiting the foregoing, each Member hereby irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to the property of the Company.

**Section 4.04    Certification of Membership Interests.**

(a)    The Sole Manager may, but shall not be required to, issue certificates to the Members representing the Membership Interests held by such Member.

(b)    In the event that the Sole Manager shall issue certificates representing Membership Interests in accordance with Section 4.04(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests shall bear a legend substantially in the following form:

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.  NO TRANSFER, SALE, ASSIGNMENT, GIFT, PLEDGE, HYPOTHECATION, ENCUMBRANCE, OR OTHER DISPOSITION OF THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH COMPANY AGREEMENT.

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, GIFTED, PLEDGED, HYPOTHECATED, OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS, OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

**Section 4.05    Meetings of Members.**

(a)    Meetings of the Members may be called by (i) the Sole Manager or (ii) a Member or group of Members holding a majority of the Membership Interests.

(b)    Written notice stating the place, date, and time of the meeting and, in the case of a meeting of the Members not regularly scheduled, describing the purposes for which the meeting is called, shall be delivered not fewer than ten days and not more than 60 days before the date of the meeting to each Member, by or at the direction of the Sole Manager or the Member(s) calling the meeting, as the case may be.  The Members may hold meetings at the Company's principal office or at such other place, within or outside the State of Texas, as the Sole Manager or the Member(s) calling the meeting may designate in the notice for such meeting.

(c)    Any Member may participate in a meeting of the Members by means of conference telephone or other communications equipment by means of which all Persons

17

participating in the meeting can talk to and hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(d)     On any matter that is to be voted on by Members, a Member may vote in person or by proxy, and such proxy may be granted in writing, by means of Electronic Transmission or as otherwise permitted by Applicable Law.  Every proxy shall be revocable in the discretion of the Member executing it unless otherwise provided in such proxy; provided, that such right to revocation shall not invalidate or otherwise affect actions taken under such proxy prior to such revocation.  In lieu of a proxy, a Member may grant an irrevocable power of attorney to conduct the affairs of such Member with respect to matters of the Company, including matters relating to the organization, internal affairs, or termination of the Company.

(e)     The business to be conducted at such meeting need not be limited to the purpose described in the notice and can include business to be conducted by Members; provided, that the appropriate Members shall have been notified of the meeting in accordance with Section 4.05(b).  Attendance of a Member at any meeting shall constitute a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(f)     A quorum of any meeting of the Members shall require the presence, whether in person or by proxy, of the Members holding a majority of the Membership Interests.  Subject to Section 4.06, no action may be taken by the Members unless the appropriate quorum is present at a meeting.

(g)     Subject to Section 4.06, Section 7.05, Section 7.06, Section 12.10 or any provision of this Agreement or the BOC requiring the vote, consent, or approval of a different percentage of the Membership Interests, no action may be taken by the Members at any meeting at which a quorum is present without the affirmative vote of the Members holding a majority of the outstanding Membership Interests.

**Section 4.06   Action Without Meeting.**

(a)     Notwithstanding the provisions of Section 4.05, any matter that is to be voted on, consented to, or approved by the Members may be taken without a meeting, without prior notice, and without a vote if consented to, in writing or by Electronic Transmission, by a Member or Members holding not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which each Member entitled to vote on the action is present and votes.  A record shall be maintained by the Sole Manager of each such action taken by written consent of a Member or Members.

(b)     A Member's consent may not be established by a Member's failure to object to an action in a timely manner or by any other means not explicitly provided for in this Agreement.

(c)      If any action or decision permitted by this Agreement to be taken or made by less than all of the Members is taken or made by a written consent signed by less than all of the Members, the Sole Manager shall, within ten calendar days after such action is taken or such decision is made, give written notice of the action taken or the decision made to the Members who did not sign the written consent.

**Section 4.07   Power of Members.**  The Members shall have the power to exercise any and all rights or powers granted to Members pursuant to the express terms of this Agreement and the BOC.  Except as otherwise specifically provided by this Agreement or required by the BOC, no Member, in its capacity as a Member, shall have the power to act for or on behalf of, or to bind, the Company, other than to the extent that the Company has granted a power of attorney to such Member to bind the Company on such actions.

**Section 4.08   Similar or Competitive Activities; Business Opportunities.**  Nothing contained in this Agreement shall prevent any Member or any of its Affiliates from engaging in any other activities or businesses, regardless of whether those activities or businesses are similar to or competitive with the Company.  None of the Members nor any of their Affiliates shall be obligated to account to the Company or to the other Members for any profits or income earned or derived from such other activities or businesses.  None of the Members nor any of their Affiliates shall be obligated to inform the Company or the other Members of a business opportunity of any type or description.

<div align="center">

**ARTICLE V**
**ALLOCATIONS**

</div>

**Section 5.01   Allocation of Net Income and Net Loss.**  For each Fiscal Year (or portion thereof), after giving effect to the special allocations set forth in Section 5.02, Net Income and Net Loss of the Company shall be allocated among the Members pro rata in accordance with their Membership Interests.

**Section 5.02   Regulatory and Special Allocations.**  Notwithstanding the provisions of Section 5.01:

(a)      If there is a net decrease in Company Minimum Gain (determined according to Treasury Regulations Section 1.704-2(d)(1)) during any Fiscal Year, each Member shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2).  This Section 5.02(a) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)      Member Nonrecourse Deductions shall be allocated in the manner required by Treasury Regulations Section 1.704-2(i).  Except as otherwise provided in Treasury Regulations Section 1.704-2(i)(4), if there is a net decrease in Member Nonrecourse Debt Minimum Gain during any Fiscal Year, each Member that has a share of such Member

Nonrecourse Debt Minimum Gain shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain.  Items to be allocated pursuant to this paragraph shall be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2).  This Section 5.02(b) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)     Nonrecourse Deductions shall be allocated to the Members in accordance with their Membership Interests.

(d)     In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), Net Income shall be specially allocated to such Member in an amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustments, allocations, or distributions as quickly as possible.  This Section 5.02(d) is intended to comply with the "qualified income offset" requirement in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(e)     Simulated Depletion and Simulated Loss with respect to any Depletable Property shall be allocated among the Members in proportion to their shares of the Simulated Basis in such property.  Each Member's share of the Simulated Basis in each of the Company's Depletable Properties shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such Depletable Property is acquired by the Company, and shall be reallocated among the Members in accordance with the Members' Membership Interest as determined immediately following the occurrence of an event giving rise to any adjustment to the Book Values of the Company's oil and gas properties pursuant to the terms of this Agreement (or at the time of any material additions to the federal income tax basis of such Depletable Property).

(f)     The allocations set forth in subsections Section 5.02(a), Section 5.02(b), Section 5.02(c), Section 5.02(d) and Section 5.02(e) above (the "**Regulatory Allocations**") are intended to comply with certain requirements of the Treasury Regulations under Code Section 704.  Notwithstanding any other provisions of this ARTICLE V (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating Net Income and Net Losses among Members so that, to the extent possible, the net amount of such allocations of Net Income and Net Losses and other items and the Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to such Member if the Regulatory Allocations had not occurred.

**Section 5.03   Tax Allocations.**

(a)     Subject to Section 5.03(b), Section 5.03(c), and Section 5.03(d), all income, gains, losses and deductions of the Company shall be allocated, for federal, state, and local income tax purposes, among the Members in accordance with the allocation of such income, gains, losses, and deductions pursuant to Section 5.01 and Section 5.02, except

that if any such allocation for tax purposes is not permitted by the Code or other Applicable Law, the Company's subsequent income, gains, losses, and deductions shall be allocated among the Members for tax purposes, to the extent permitted by the Code and other Applicable Law, so as to reflect as nearly as possible the allocation set forth in Section 5.01 and Section 5.02.

(b)      Items of Company taxable income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall be allocated among the Members in accordance with Code Section 704(c) using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager, so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(c)      If the Book Value of any Company asset is adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) as provided in Section 1.01(c) of the definition of Book Value, subsequent allocations of items of taxable income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager.

(d)      Allocations of tax credit, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Sole Manager taking into account the principles of Treasury Regulations Section 1.704-1(b)(4)(ii).

(e)      The deduction for depletion with respect to each separate oil and gas property (as defined in Section 614 of the Code) shall, in accordance with Section 613A(c)(7)(D) of the Code, be computed for federal income tax purposes separately by the Members rather than the Company.  The proportionate share of the adjusted tax basis of each oil and gas property shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such oil and gas property is acquired by the Company (and any additions to such U.S. federal income tax basis resulting from expenditures required to be capitalized in such basis shall be allocated among the Members in a manner designed to cause the Members' proportionate shares of such adjusted U.S. federal income tax basis to be in accordance with their Membership Interests as determined at the time of any such additions), and shall be reallocated among the Members in accordance with the Members' Membership Interests as determined immediately following the occurrence of an event giving rise to an adjustment to the Book Values of the Company's oil and gas properties.  For purposes of the separate computation of gain or loss by each Member on the taxable disposition of each oil and gas property, the amount realized from such disposition shall be allocated (i) first, to the Members in an amount equal to the Simulated Basis in such oil and gas property in proportion to their allocable shares thereof and (ii) second, any remaining amount realized shall be allocated consistent with the allocation of Simulated Gain.  The allocations described in this Section 5.03(e) are intended to be applied in accordance with the Members' "interests in

21

partnership capital" under Section 613A(c)(7)(D) or the Code; provided, however, that the Members understand and agree that the Sole Manager may authorize special allocations of federal income tax basis, income, gain, deduction or loss, as computed for U.S. federal income tax purposes, in order to eliminate differences between Simulated Basis and adjusted U.S. federal income tax basis with respect to each oil and gas property, in such manner as determined consistent with the principles outlined in Sections 5.03(b) and 5.03(c).  The provisions of this Section 5.03(e) and the other provisions of this Agreement relating to allocations under Section 613A(c)(7)(D) of the Code are intended to comply with Treasury Regulations Section 1.704-1(b)(4)(v) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  Each Member, with the assistance of the Company, shall separately keep records of its share of the adjusted tax basis in each oil and gas property, adjust such share of the adjusted tax basis for any cost or percentage depletion allowable with respect to such property and use such adjusted tax basis in the computation of its cost depletion or in the computation of its gain or loss on the disposition of such property by the Company.  Upon the reasonable request of the Company, each Member shall advise the Company of its adjusted tax basis in each oil and gas property and any depletion computed with respect thereto, both as computed in accordance with the provisions of this subsection for purposes of allowing the Company to make adjustments to the tax basis of its assets as a result of certain transfers of interests in the Company or distributions by the Company.  The Company may rely on such information and, if it is not provided by the Member, may make such reasonable assumptions as it shall determine with respect thereto.  When reasonably requested by the Members, the Company shall provide all available information needed by such Members to comply with the record keeping requirements of this Section 5.03(e) and other applicable tax reporting obligations.

(f)     Allocations pursuant to this Section 5.03 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Net Income, Net Losses, distributions, or other items pursuant to any provisions of this Agreement.

**Section 5.04   Allocations in Respect of Transferred Membership Interests.**  In the event of a Transfer of Membership Interests during any Fiscal Year made in compliance with the provisions of ARTICLE VIII, Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company attributable to such Membership Interests for such Fiscal Year shall be determined using the interim closing of the books method.

**ARTICLE VI**
**DISTRIBUTIONS**

**Section 6.01   General.**

(a)     Subject to Section 6.02, distributions of available cash shall be made to the Members when and in such amounts as determined by the Sole Manager and only following (i) payment of all operating expenses of the Company, including required payments under the Transition Services Agreement or the Service Provider Agreement, (ii) the repayment in full to Apache of any outstanding principal amounts borrowed by the

Company under the Standby Facility and the payment of any accrued interest or premium thereon, in each case, pursuant to the Standby Facility Documentation, (iii) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates (A) in performing services on behalf of the Company in connection with the Legacy Apache Properties or the GOM Shelf Properties pursuant to a services contract between Apache or any of its Affiliates and the Company, (B) pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, and (C) pursuant to or as may be required in connection with the Decommissioning Agreement or plugging and abandonment and decommissioning of the Legacy Apache Properties or the GOM Shelf Properties, unless otherwise reimbursed in accordance with the Decommissioning Agreement, and (iv) the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties.  After making all distributions required for a given Fiscal Year under Section 6.02 and repaying/paying all amounts then due and outstanding under the Standby Facility as described in the preceding sentence, distributions determined to be made by the Sole Manager pursuant to this Section 6.01(a) shall be paid to the Members in accordance with their respective Membership Interests.

(b)     Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to the Members (i) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, except as provided in Section 6.02, or (ii) if such distribution would violate § 101.206 of the BOC or other Applicable Law.

**Section 6.02   Tax Advances.**

(a)     At least three days before each date prescribed by the Code for a calendar-year corporation to pay quarterly installments of estimated tax, the Company shall use commercially reasonable efforts to distribute cash to each Member in proportion to and to the extent of such Member's Quarterly Estimated Tax Amount for the applicable calendar quarter (each such distribution, a "**Tax Advance**").

(b)     If, at any time after the final Quarterly Estimated Tax Amount has been distributed pursuant to Section 6.02(a) with respect to any Fiscal Year, the aggregate Tax Advances to any Member with respect to such Fiscal Year are less than such Member's Tax Amount for such Fiscal Year (a "**Shortfall Amount**"), the Company shall use commercially reasonable efforts to distribute cash in proportion to and to the extent of each Member's Shortfall Amount.  The Company shall use commercially reasonable efforts to distribute Shortfall Amounts with respect to a Fiscal Year before the 90th day of the next succeeding Fiscal Year; provided, that if the Company has made distributions other than pursuant to this Section 6.02, the Sole Manager may apply such distributions to reduce any Shortfall Amount.

(c)      If the aggregate Tax Advances made to any Member pursuant to this Section 6.02 for any Fiscal Year exceed such Member's Tax Amount (an "**Excess Amount**"), such Excess Amount shall reduce subsequent Tax Advances that would be made to such Member pursuant to this Section 6.02, except to the extent taken into account as an advance pursuant to Section 6.02(d).

(d)      Any distributions made pursuant to this Section 6.02 shall be treated for purposes of this Agreement as advances on distributions pursuant to Section 6.01 and shall reduce, dollar-for-dollar, the amount otherwise distributable to such Member pursuant to Section 6.01.

**Section 6.03    Tax Withholding; Withholding Advances.**

(a)      **Tax Withholding.**  Each Member agrees to furnish the Company with any representations and forms as shall be reasonably requested by the Company to assist it in determining the extent of, and in fulfilling, any withholding obligations it may have.

(b)      **Withholding Advances.**  The Company is hereby authorized at all times to make payments ("**Withholding Advances**") with respect to each Member in amounts required to discharge any obligation of the Company, including any obligation under Section 6225 of the Code (as determined by the Tax Matters Representative) based on the advice of legal or tax counsel to the Company) to withhold or make payments to any federal, state, local or foreign taxing authority (a "**Taxing Authority**") with respect to any distribution or allocation by the Company of income or gain to such Member and to withhold the same from distributions to such Member.  Any funds withheld from a distribution by reason of this Section 6.03(b) shall nonetheless be deemed distributed to the Member in question for all purposes under this Agreement.  If the Company makes any Withholding Advance in respect of a Member hereunder that is not immediately withheld from actual distributions to the Member, then the Member shall promptly reimburse the Company for the amount of such payment, plus interest at a rate equal to the prime rate published in the Wall Street Journal on the date of payment plus two percent (2.0%) per annum, compounded annually, on such amount from the date of such payment until such amount is repaid (or deducted from a distribution) by the Member (any such payment shall not constitute a Capital Contribution).  Each Member's reimbursement obligation under this Section 6.03(b) shall continue after such Member transfers its Membership Interests.

(c)      **Indemnification.**  Each Member hereby agrees to indemnify and hold harmless the Company and the other Members from and against any liability with respect to taxes, interest, or penalties that may be asserted by reason of the Company's failure to deduct and withhold tax on amounts distributable or allocable to such Member.  The provisions of this Section 6.03(c) and the obligations of a Member pursuant to Section 6.03(b) shall survive the termination, dissolution, liquidation, and winding up of the Company and the withdrawal of such Member from the Company or Transfer of its Membership Interests.  The Company may pursue and enforce all rights and remedies it may have against each Member under this Section 6.03, including bringing a lawsuit to collect repayment with interest of any Withholding Advances.

(d)     **Overwithholding.**   None of the Company, the Sole Manager or the Independent Director shall be liable for any excess taxes withheld in respect of any distribution or allocation of income or gain to a Member.   In the event of an overwithholding, a Member's sole recourse shall be to apply for a refund from the appropriate Taxing Authority.

### Section 6.04   Distributions in Kind.

(a)     Subject to Sections 6.01 and 6.02, the Sole Manager is hereby authorized, as it may reasonably determine, to make distributions to the Members in the form of securities or other property (but not including any oil and gas properties) held by the Company; provided, that Tax Advances shall only be made in cash.   In any non-cash distribution, the securities or property so distributed will be distributed among the Members in the same proportion and priority as cash equal to the Fair Market Value of such securities or property would be distributed among the Members pursuant to Section 6.01.

(b)     Any distribution of securities shall be subject to such conditions and restrictions as the Sole Manager determines are required or advisable to ensure compliance with Applicable Law.   In furtherance of the foregoing, the Sole Manager may require that the Members execute and deliver such documents as the Sole Manager may deem necessary or appropriate to ensure compliance with all federal and state securities laws that apply to such distribution and any further Transfer of the distributed securities, and may appropriately legend the certificates that represent such securities to reflect any restriction on Transfer with respect to such laws.

### ARTICLE VII
### MANAGEMENT

**Section 7.01   Management of the Company.**   The business and affairs of the Company shall be managed, operated, and controlled by or under the direction of the Sole Manager ("**Sole Manager**").   Subject to the provisions of Section 7.06, the Sole Manager shall have, and is hereby granted, full and complete power, authority, and discretion for, on behalf of, and in the name of the Company, to take such actions as it may deem necessary or advisable to carry out any and all of the objectives and purposes of the Company.

**Section 7.02   Independent Director.**

(a)     The Independent Director shall (i) be a natural person who is not, nor for the prior five years has been, a director, officer, employee, trade creditor or equityholder (or spouse, parent, sibling or child of any of the foregoing) of (A) Fieldwood or any Affiliate of Fieldwood or (B) any prior or current lender of Fieldwood (a natural person satisfying such condition set forth in this clause (i), a "**Qualified Person**") and (ii) be provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, [Lord Securities Corporation],[3] Wilmington Trust Company,

---

[3] NTD: Does this entity still exist?  They are now at Citadel SPV.  Lord does not exist.

or, if none of those companies is then in the service of providing professional independent directors, another nationally recognized company selected by Fieldwood (or, following the divisive merger of Fieldwood pursuant to § 10.008 of the BOC, Credit Bid Purchaser) subject to Apache's prior consent, which may be given or withheld in its sole discretion (such providers collectively, the "**Approved Providers**"). [●] is the Qualified Person provided by an Approved Provider that, as of the date of this Agreement, has been appointed to serve as the initial Independent Director and has also been approved to serve as the initial Independent Director for the Company in connection with the Confirmation Order entered by the Bankruptcy Court for the Southern District of Texas before which the reorganization of Fieldwood was being conducted.

(b)     The Independent Director may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  If the Independent Director is removed with Apache's written consent or the Independent Director resigns or otherwise ceases to serve in such capacity, then the Company (acting by majority vote of its Members) shall select another Qualified Person from the Approved Providers to serve as the Independent Director.

**Section 7.03   Sole Manager.**  The Company shall not have any officers or employees other than a Sole Manager.  In accordance with the procedure for the selection of the Sole Manager set forth in the Term Sheet, [●] has been selected and designated to serve as the initial Sole Manager.  The Sole Manager may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  In the event that the Sole Manager is removed with Apache's written consent or the Sole Manager resigns or otherwise ceases to serve in such capacity, then the Sole Manager shall be selected pursuant to the following procedure:  Apache and the Company (acting through the Independent Director for all purposes under this Section 7.03, who shall solicit input from Credit Bid Purchaser for all purposes under this Section 7.03) shall each provide the other with a list of three natural persons, each having a minimum of five years of relevant experience in the energy sector; and if one or more names appear on both Apache's and the Company's lists, then the Company will select, and the Member(s) shall cause the Company to select, the new Sole Manager from those common names; if, however, there are no common names between Apache's and the Company's lists, then Apache and the Company (acting through the Independent Director, who shall solicit input from Credit Bid Purchaser) shall each have the right to strike two names from the other's list, and the new Sole Manager shall be selected by the Independent Director from the remaining two names.

**Section 7.04   Service Provider.**

(a)     Subject to the Transition Services Agreement, the Sole Manager shall hire one or more third-party service provider(s) (whether one or more, collectively, the "**Service Provider**") to perform all operations and plugging and abandonment and decommissioning activities with respect to the Company's and GOM Shelf's properties or assets in a manner consistent with the procedures set forth in this Section 7.04.  The Sole Manager shall solicit and obtain a bid for the work to be performed by each Service Provider from not less than three qualified candidates, each of which must (i) have a minimum of five years of relevant experience and (ii) not be, as of such date when bids are submitted, an Affiliate of Apache;

26

such bids shall detail the scope, terms and conditions of the work to be performed, along with the price to be paid for the performance of such work. The Company shall share copies of each such bid received with Apache promptly following receipt thereof. Following the receipt of such bids, with Apache's prior written consent (which may be given or withheld in its sole discretion), the Sole Manager shall select the candidate whose bid contains the lowest price and best terms for the work to be performed, in view of their relevant experience (all as determined in good faith by the Sole Manager and consented to by Apache), to serve as the Service Provider, and shall cause the Company to enter into an agreement with such Service Provider (such agreement, a "**Service Provider Agreement**") to provide services contemplated in this Section 7.04; provided that, immediately prior to executing such Service Provider Agreement, the Sole Manager shall have confirmed that the proposed Service Provider satisfies the candidate qualifications detailed in clause (ii) of the immediately prior sentence (as if being considered on the date of such Service Provider Agreement rather than the date when bids are submitted), and if the proposed Service Provider does not satisfy such candidate qualifications, the Sole Manager shall then reconsider the submitted bids and select another candidate in accordance with the requirements of this sentence as if the previously selected candidate had not submitted a bid. Any Service Provider Agreement shall be in such form and contain such terms as the Sole Manager determines in good faith to be appropriate and consistent with this Section 7.04. In the event that the Sole Manager elects to remove the Service Provider or the Service Provider otherwise ceases to provide its services in such capacity, then the Sole Manager shall again bid out the work, and shall select the Person to serve as the successor Service Provider, in accordance with the foregoing procedures of this Section 7.04. The Credit Bid Purchaser shall be deemed to satisfy the requirements of a candidate for the Service Provider under this Section 7.04(a).

(b)     Upon the effectiveness of the Plan of Reorganization, the Company shall enter into the Transition Services Agreement and the Farmout Agreement with Credit Bid Purchaser. Pursuant to the Transition Services Agreement, Credit Bid Purchaser shall provide transitional operations for the Company in accordance with the terms of the Transition Services Agreement. The Company and Credit Bid Purchaser (in its sole discretion) may mutually agree that Credit Bid Purchaser shall become the Service Provider, at the effective time of which the Transition Services Agreement shall terminate, and the Sole Manager shall cause the Company to enter into the Service Provider Agreement with Credit Bid Purchaser. Furthermore, as provided in the Transition Services Agreement, the Transition Services Agreement may be terminated by the Company, in its sole discretion, in accordance with the terms of the Transition Services Agreement.

**Section 7.05  Actions Requiring Independent Director Consent and Service Provider.** Without the prior consent of the Independent Director (which consent may be given or withheld in the sole discretion of the Independent Director), and the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)     amend, modify, supplement or waive the Certificate of Formation, this Agreement or any other organizational documents of the Company or its Subsidiaries;

27

(b) remove or replace the Sole Manager or the Service Provider;

(c) enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(d) wind-up, dissolve, liquidate or terminate the Company or any of its Subsidiaries prior to the occurrence of any event set forth in Section 11.01 or enter into a receivership or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(e) revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(f) reinstate the Company or GOM Shelf after termination.

Except as provided in the fourth sentence of Section 9.02(a), in exercising its rights and performing its duties under this Agreement (including pursuant to this Section 7.05), the Independent Director shall have fiduciary duties of loyalty and care similar to that of a director of a business corporation organized under the BOC.

**Section 7.06   Actions Requiring Apache Consent.**  Without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion, unless expressly indicated otherwise), the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a) conduct or be involved in any business or operations other than (i) operating or plugging and abandoning and decommissioning the Legacy Apache Properties, (ii) causing GOM Shelf to operate or plug and abandon and decommission the GOM Shelf Properties, and (iii) performing its obligations under the Credit Bid Purchaser Documents and the Services Provider Agreement;

(b) purchase or farm-in any properties or assets or sell any of the Company's or GOM Shelf's properties or assets; provided that, following receipt of any such written consent from Apache to purchase or farm-in any properties or assets, other than with respect to usual and ordinary G&A and operating expenditures required to own and maintain such properties or assets, no additional funds of, or available to, the Company or GOM Shelf shall be spent with respect to such properties or assets without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion), provided further, however, that if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash

flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(c) farm-out any of the Company's or GOM Shelf's properties or assets; provided, however, if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(d) incur indebtedness for borrowed money other than pursuant to the Standby Facility, pledge or grant Liens on any properties or assets of the Company or GOM Shelf other than those provided pursuant to the Standby Facility Documentation and the Recharacterization Mortgages, or guarantee, assume, endorse or otherwise become responsible for the obligations of any other Person; provided, however, the Company may (i) establish a working capital line of credit secured by Liens subordinated in all respects to the Liens and payment and other obligations provided for in the Standby Facility Documentation, (ii) draw on such line of credit solely for the business purposes specified in 7.06(a), and (iii) repay up to $50,000,000 of such debt in the ordinary course of its business prior to repayment of the obligations secured by Liens in favor of Apache; provided further, however, that the Company shall not establish, draw on, or repay any such line of credit during the existence of an event of default under the Standby Facility Documentation or if such action would cause an event of default under the Standby Facility Documentation;

(e) issue additional Membership Interests or any other Equity Securities or admit additional Members to the Company, or issue additional equity interests of or admit additional members to GOM Shelf;

(f) use its free cash flow (after operating expenses, including fees paid under the Credit Bid Purchaser Documents and the Services Provider Agreement) for any purposes other than fulfilling its obligations to Apache under the Decommissioning Agreement and the Standby Facility Documentation for so long as the obligations thereunder have yet to be satisfied in full (for the avoidance of doubt, Apache's consent shall be required for any development activities proposed by Credit Bid Purchaser under the Farmout Agreement);

(g) make any loan, advance, or capital contribution or make any investment in any Person;

(h) enter into, amend, waive, or terminate any Related Party Agreement;

(i) amend, modify, supplement, restate, or waive any provision of the Certificate of Formation, this Agreement, or any other organizational documents of the

Company or its Subsidiaries (and any such amendment, modification, supplement, or waiver that is attempted without Apache's prior written consent shall be void *ab initio* and without effect);

(j)     engage in any activity or take any action with respect to its properties or assets, other than in the ordinary course of business;

(k)     select, remove (other than for gross negligence or willful misconduct), or replace, or change the work to be performed by, the Service Provider;

(l)     remove (other than for gross negligence or willful misconduct), replace, or change the powers, rights, or responsibilities of, the Sole Manager or the Independent Director;

(m)     establish a Subsidiary or enter into any joint venture or similar business arrangement or enter into a transaction covered by Section 7.09;

(n)     settle any lawsuit, action, dispute, or other proceeding or otherwise assume any liability or agree to the provision of any equitable relief by the Company or GOM Shelf;

(o)     enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion, or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(p)     wind-up, dissolve, liquidate, or terminate the Company or any of its Subsidiaries or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(q)     revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(r)     reinstate the Company or GOM Shelf after termination.

In addition to the foregoing, if (i)(A) the Company or GOM Shelf defaults on its plugging and abandonment and decommissioning obligations under the Decommissioning Agreement, (B) any Governmental Authority or any other Person seeks to cause Apache or its Affiliates to conduct plugging and abandonment or decommissioning activity that is required in accordance with Applicable Law or contract in respect of any of the Legacy Apache Properties or the GOM Shelf Properties, and (C) Apache conducts such plugging and abandonment or decommissioning activity or activities, or (ii) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, any letter of credit or bond that is part of the Decommissioning Security is not renewed in a manner consistent in all respects with the existing terms of such letter of credit or bond, then the Company shall, and the Independent Director and the Sole Manager shall cause the Company to:  (x) if applicable, as promptly as practicable after the Independent Director or the

Sole Manager becomes aware of an event described in clause (ii) immediately above, provide written notice to Apache of the upcoming expiration of, and inability to renew, such letter of credit or bond in a manner consistent in all respects with the existing terms of such letter of credit or bond and (y) pay or reimburse Apache for the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures, which costs shall be determined in good faith by Apache based on the time spent by such employees in performing or overseeing such activities) and expenses incurred in conducting such activity or activities; provided, however, that, to the extent such costs are not direct, out-of-pocket costs incurred by Apache that are reimbursable under the Decommissioning Agreement, such costs shall be reimbursed to Apache only by draws on the Standby Facility which shall not be repaid by the Company unless and until all surety bonds and letters of credit included within Decommissioning Security have been fully utilized by Apache or it is determined in good faith by Apache that it will have no further drawings under such bonds and letters of credit.

Furthermore, the Company shall provide written notice to Apache of (i) each request or proposal the Company or GOM Shelf receives from a Person to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties and (ii) each prospective joint development under the Farmout Agreement.  In connection with each of the foregoing, the Company shall, and shall cause GOM Shelf to, provide Apache full and open access to all information that the Company or GOM Shelf has regarding each such opportunity.

**Section 7.07   Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser.**  The Independent Director shall be compensated for the services provided by such individual as the Independent Director of the Company in the amount as specified in Schedule B attached hereto. The Sole Manager shall be compensated for the services provided by such individual as the Sole Manager of the Company in the amount as specified in Schedule C attached hereto.  The Company shall reimburse the Independent Director and the Sole Manager for all ordinary, necessary, and direct third-party expenses incurred by the Independent Director and the Sole Manager, respectively, on behalf of the Company in carrying out the Company's business activities.  All reimbursements for expenses shall be reasonable in amount and shall not exceed $[●] in the aggregate for any Fiscal Year.  The Service Provider shall be compensated for the services provided by the Service Provider and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as shall be set forth in the applicable Service Provider Agreement.  Credit Bid Purchaser shall be compensated for its services under the Transition Services Agreement and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as set forth in the Transition Services Agreement.

**Section 7.08   No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, neither the Independent Director nor the Sole Manager will be obligated personally for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment,

decree, or order of a court, solely by reason of being or acting as the Independent Director or the Sole Manager, as applicable.

  **Section 7.09 Funding Capital Expenditures.** Prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, if the Company receives a proposal that the Company engage in any project that is forecast to increase production or cash flow generated from the Legacy Apache Properties or the GOM Shelf Properties (excluding any proposed development activities pursuant to the Farmout Agreement), then the Sole Manager shall, through a written notice, offer to Apache the opportunity to fund the capital expenditures related to such project on behalf of the Company on terms and subject to conditions to be mutually agreed between the Company and Apache; provided that the Company acknowledges and agrees that if any such capital expenditures are funded, in whole or in part, out of funds then available to be borrowed by the Company under the Standby Facility, any additional properties or assets obtained or that come into existence as a result of the use of such borrowed amounts under the Standby Facility, including, without limitation, any increased production or cash amounts generated thereby, shall be pledged as additional security under the Standby Facility Documentation.  Such written notice provided to Apache shall include all available details about such opportunity, including, but not limited to, the forecast impact on production and cash flow from the Legacy Apache Properties or the GOM Shelf Properties, as appropriate.  Apache shall have a reasonable period (not to exceed 20 Business Days) following its receipt of such written notice to provide written notice to the Company of (a) Apache's election to fund any such capital expenditures and the terms and conditions that Apache proposes to apply thereto, including whether it will fund such capital expenditure, in whole or in part, using amounts then available to be borrowed by the Company under the Standby Facility (such notice, an "**Acceptance Notice**"), (b) Apache's election not to fund any such capital expenditures (such notice, a "**Rejection Notice**"), or (c) Apache's request for additional information it requires to fully evaluate the proposed project (such notice, an "**Information Notice**").  If Apache provides a timely Acceptance Notice, then the Company and Apache shall endeavor in good faith to negotiate the proposed terms and conditions that will apply thereto, and if mutually satisfactory terms are agreed to by the Company and Apache, such terms and conditions shall be documented as promptly as practicable and the closing of such agreement and funding(s) of such capital expenditures shall occur as so agreed.  If (i) Apache timely provides to the Company a Rejection Notice, (ii) Apache timely provides an Acceptance Notice but the Company and Apache are unable within 60 Business Days after the Company's receipt of the Acceptance Notice to agree upon mutually satisfactory terms and conditions applicable thereto, or (iii) Apache does not submit a timely response to the offer, then the offer for Apache to fund the capital expenditures of the Company in the applicable project shall be deemed rejected by Apache and the Company shall have 180 days within which to obtain third-party funding for such capital expenditures subject to, and in accordance with, the other terms and conditions of this Agreement (including, without limitation, Section 7.06); provided, however, if the Company is unable to obtain such funding subject to, and in accordance with, the other terms and conditions of this Agreement within such 180-day period, then the Company must again follow the procedures in this Section 7.09 and offer Apache the opportunity to fund such expenditures.  If Apache timely provides the Company with an Information Notice, then the Company shall endeavor in good faith to promptly provide the requested information to Apache, and following Apache's receipt of such

information, Apache shall have the right to accept or reject such offer on the terms set forth in this Section 7.09.

## ARTICLE VIII
## TRANSFER

**Section 8.01   General Restrictions on Transfer.**

(a)      No Member shall Transfer all or any portion of its Membership Interest in the Company without the prior written approval of:

(i)      Apache and the Company prior to (A) the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, (B) the repayment in full of any and all amounts outstanding under the Standby Facility and the satisfaction of all obligations under the Standby Facility Documentation, (C) the payment or reimbursement by the Company or from funds available under the Decommissioning Security of the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures) and expenses incurred by Apache and its Affiliates (1) in performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties or (2) pursuant to or as may be required in connection with the Decommissioning Agreement, and (D) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required; and

(ii)      thereafter, the Company.

(b)      Subject to Section 8.01(a), each Member agrees that it will not Transfer all or any portion of its Membership Interest in the Company, and the Company agrees that it shall not issue any Membership Interests:

(i)      except as permitted under the Securities Act and other applicable federal or state securities or blue sky laws, and then, with respect to a Transfer of Membership Interests, only upon delivery to the Company of an opinion of counsel in form and substance satisfactory to the Company to the effect that such Transfer may be effected without registration under the Securities Act;

(ii)      if such Transfer or issuance would cause the Company to be considered a "publicly traded partnership" under Section 7704(b) of the Code

within the meaning of Treasury Regulations Section 1.7704-1(h)(1)(ii), including the look-through rule in Treasury Regulations Section 1.7704-1(h)(3);

(iii)     if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the BOC;

(iv)     if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes;

(v)     if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended; or

(vi)     if such Transfer or issuance would cause the assets of the Company to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974 or its accompanying regulations or result in any "prohibited transaction" thereunder involving the Company.

(c)     Any Transfer or attempted Transfer of any Membership Interest in violation of this Agreement shall be null and void *ab initio*, no such Transfer shall be recorded on the Company's books, and the purported Transferee in any such Transfer shall not be treated (and the purported Transferor shall continue to be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d)     Subject to Section 7.06(e), no Transfer of any Membership Interest to a Person not already a Member of the Company shall be deemed completed until the prospective Transferee has executed a joinder agreement in form and substance acceptable to the Company.

(e)     For the avoidance of doubt, any completed Transfer of a Membership Interest permitted by this Agreement shall be deemed a sale, transfer, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and shall not be deemed a sale, transfer, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest."

## ARTICLE IX
## EXCULPATION AND INDEMNIFICATION

**Section 9.01   Exculpation of Covered Persons.**

(a)     **Covered Persons.**  As used herein, the term "**Covered Person**" shall mean (i) each current or former Member; (ii) each current or former manager, officer, director (including the Independent Director), shareholder, partner, member, Affiliate, employee, agent, or Representative of each Member, and each of their Affiliates; and (iii) each manager (including the Sole Manager), officer (if any), employee (if any), agent, or Representative of the Company.

(b)  **Standard of Care.**  Subject to Section 9.02(a) with respect to the Independent Director, no Covered Person shall be liable to the Company or any other Covered Person for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud or willful misconduct by such Covered Person.

(c)  **Good Faith Reliance.**  A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements (including financial statements and information, opinions, reports, or statements as to the value or amount of the assets, liabilities, Net Income, or Net Losses of the Company or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) another Member; (ii) one or more officers or employees of the Company; (iii) any attorney, independent accountant, appraiser, or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person reasonably believes to be within such other Person's professional or expert competence.  The preceding sentence shall in no way limit any Person's right to rely on information to the extent provided in § 3.102 or § 3.105 of the BOC.

**Section 9.02   Liabilities and Duties of Covered Persons.**

(a)  **Limitation of Liability.**  This Agreement, unless otherwise specifically stated herein, is not intended to, and does not, create or impose any fiduciary duty on any Covered Person. Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligations of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.  Notwithstanding anything to the contrary in this Article IX, to the fullest extent permitted by Applicable Law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including its creditors, in acting or otherwise consenting to matters requiring the consent of the Independent Director in this Agreement.  Except for duties to the Company as set forth in the immediately preceding sentence (including duties to the Members and the Company's creditors solely to the extent of their respective economic interests in the Company but excluding (i) all other interests of the Members, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part) and in the last sentence of Section 7.05, the Independent Director shall not have any fiduciary duties to the Members or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.  To the fullest extent permitted by law, the Independent Director shall not be liable to the Company, the Members or any other Person bound by this Agreement for breach of contract or breach of

duties (including fiduciary duties), unless the Independent Director acted in bad faith or engaged in willful misconduct.

(b)  **Duties.**  Except as provided in Section 9.02(a) with respect to the Independent Director, whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude), the Covered Person shall be entitled to consider only such interests and factors as such Covered Person desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person.  Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

**Section 9.03   Indemnification.**

(a)  **Indemnification.**  To the fullest extent permitted by the BOC, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution, or replacement, only to the extent that such amendment, substitution, or replacement permits the Company to provide broader indemnification rights than the BOC permitted the Company to provide prior to such amendment, substitution, or replacement), the Company shall indemnify, hold harmless, defend, pay, and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines, or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "**Losses**") to which such Covered Person may become subject by reason of:

(i)  any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member, or any direct or indirect Subsidiary of the foregoing in connection with the business of the Company; or

(ii)  such Covered Person being or acting in connection with the business of the Company as a member, shareholder, Affiliate, manager, director, officer, employee, or agent of the Company, any Member, or any of their respective Affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, officer, employee, or agent of any Person including the Company;

provided, that (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud or willful and intentional misconduct, in either case as determined by a final, nonappealable order of a court of competent jurisdiction.  In connection with the foregoing, the termination of any

36

action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(b)     **Control of Defense.**  Upon a Covered Person's discovery of any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03, the Covered Person shall give prompt written notice to the Company of such claim, lawsuit, or proceeding, provided, that the failure of the Covered Person to provide such notice shall not relieve the Company of any indemnification obligation under this Section 9.03, unless the Company shall have been materially prejudiced thereby.  The Company shall be entitled to participate in or assume the defense of any such claim, lawsuit, or proceeding at its own expense.  After notice from the Company to the Covered Person of its election to assume the defense of any such claim, lawsuit, or proceeding, the Company shall not be liable to the Covered Person under this Agreement or otherwise for any legal or other expenses subsequently incurred by the Covered Person in connection with investigating, preparing to defend, or defending any such claim, lawsuit, or other proceeding.  If the Company does not elect (or fails to elect) to assume the defense of any such claim, lawsuit, or proceeding, the Covered Person shall have the right to assume the defense of such claim, lawsuit, or proceeding as it deems appropriate, but it shall not settle any such claim, lawsuit, or proceeding without the consent of the Company (which consent shall not be unreasonably withheld, conditioned, or delayed).

(c)     **Reimbursement.**  The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03; provided, that if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 9.03, then such Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d)     **Entitlement to Indemnity.**  The indemnification provided by this Section 9.03 shall not be deemed exclusive of any other rights to indemnification to which those seeking indemnification may be entitled under any agreement or otherwise.  The provisions of this Section 9.03 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 9.03 and shall inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

(e)     **Insurance.**  To the extent available on commercially reasonable terms, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach

by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Sole Manager may reasonably determine; provided, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person under the indemnification provisions contained herein, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses hereunder.  If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to such Covered Person by the Company in respect of such Losses.

(f)     **Funding of Indemnification Obligation.**    Notwithstanding anything contained herein to the contrary, any indemnity by the Company relating to the matters covered in this Section 9.03 shall be provided out of and to the extent of Company assets only, and no Member (unless such Member otherwise agrees in writing) shall have personal liability on account thereof or shall be required to make additional Capital Contributions to help satisfy such indemnity by the Company.

(g)     **Savings Clause.**    If this Section 9.03 or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person pursuant to this Section 9.03 to the fullest extent permitted by any applicable portion of this Section 9.03 that shall not have been invalidated and to the fullest extent permitted by Applicable Law.

(h)     **Amendment.**    The provisions of this Section 9.03 shall be a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 9.03 is in effect, on the other hand, pursuant to which the Company and each such Covered Person intend to be legally bound.  No amendment, modification, or repeal of this Section 9.03 that adversely affects the rights of a Covered Person to indemnification for Losses incurred or relating to a state of facts existing prior to such amendment, modification or repeal shall apply in such a way as to eliminate or reduce such Covered Person's entitlement to indemnification for such Losses without the Covered Person's prior written consent.

**Section 9.04   Survival.**  The provisions of this ARTICLE IX shall survive the dissolution, liquidation, winding up, and termination of the Company.

## ARTICLE X
## ACCOUNTING; TAX MATTERS

**Section 10.01 Financial Statements and Other Information.**    The Company shall furnish to each Member and Apache the following reports:

(a)     **Annual Financial Statements.**    As soon as available, and in any event within 105 days after the end of each Fiscal Year, its audited consolidated balance sheet and related consolidated statements of operations, Members' equity and cash flows as of the end of and for such year prepared under AICPA auditing standards, setting forth in each case in comparative form the figures for the previous Fiscal Year, all reported on by

independent public accountants acceptable to each Member and Apache (without a "going concern" or like qualification, commentary, or exception (except to the extent that any such qualification, commentary, or exception expressly indicates that after giving effect to the exclusion of asset retirement obligations reflected on the accompanying balance sheet, there would be no such qualification, commentary, or exception), and without any qualification or exception as to the scope of such audit) to the effect that such consolidated financial statements present fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied;

(b)      **Quarterly Financial Statements.**  As soon as available, and in any event within 50 days after the end of each quarterly accounting period in each Fiscal Year (including the last fiscal quarter of the Fiscal Year), its unaudited consolidated balance sheet and related unaudited consolidated statements of operations, Members' equity and cash flows as of the end of and for such fiscal quarter and the then elapsed portion of the current Fiscal Year, setting forth in each case in comparative form the figures for the corresponding period or periods of the previous Fiscal Year or as at the end of such period or periods, all in reasonable detail and certified by the Company as presenting fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes; and

(c)      **Monthly Operating Data.**  As soon as available, but in no event later than 15 Business Days after the end of each calendar month, a statement in a form reasonably satisfactory to each Member and Apache showing all operating data for the Company and GOM Shelf, including operating expenses and revenue for each of the Company and GOM Shelf, for such calendar month.

(d)      **Operating Budget.**  As soon as available, but in any event no later than 60 days after the end of each Fiscal Year of the Company, a detailed operating budget for the Fiscal Year, forecasting revenue, operating costs, and capital expenses for each fiscal quarter in form reasonably satisfactory to each Member and Apache.

(e)      **Additional Information.**   Promptly following any reasonable request therefor, such other information regarding the operations, business affairs and financial condition of each of the Company and GOM Shelf, as any Member or Apache may reasonably request, including, without limitation, decommissioning cost estimates and calculations.

**Section 10.02 Inspection Rights.**  Upon reasonable notice from a Member or Apache, the Company shall afford each Member or Apache and their respective Representatives access during normal business hours to (a) the Company's properties, offices, plants, and other facilities; (b) the corporate, financial, and similar records, reports, and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management letters and communications with Members or the Sole Manager or Independent Director, and to

permit each Member or Apache and their respective Representatives to examine such documents and make copies thereof; and (c) any officers, senior employees, and public accountants of the Company, and to afford each Member or Apache and their respective Representatives the opportunity to discuss and advise on the affairs, finances, and accounts of the Company with such officers, senior employees, and public accountants (and the Company hereby authorizes said accountants to discuss with such Member or Apache and their respective Representatives such affairs, finances, and accounts).

**Section 10.03 Income Tax Status.**  It is the intent of the Company and the Members that the Company shall be treated as a partnership or a disregarded entity for U.S., federal, state, and local income tax purposes.  Neither the Company nor any Member shall make an election for the Company to be classified as other than a partnership or a disregarded entity pursuant to Treasury Regulations Section 301.7701-3.

**Section 10.04 Tax Matters Representative.**

(a)    **Appointment.**  The Members hereby appoint the Sole Manager as "partnership representative" as provided in Code Section 6223(a) (the "**Tax Matters Representative**").    If any state or local tax law provides for a tax matters partner/partnership representative or Person having similar rights, powers, authority or obligations, the person designated as the Tax Matters Representative shall also serve in such capacity.  To the extent required by Applicable Law, if the Tax Matters Representative is an entity, it shall appoint a "designated individual" to act on its behalf.  The Tax Matters Representative can be removed at any time by a vote of Members holding a majority of the Membership Interests, and shall resign if it is no longer a Member.  In the event of the resignation or removal of the Tax Matters Representative, Members holding a majority of the Membership Interests shall select a replacement Tax Matters Representative.

(b)    **Tax Examinations and Audits.**  The Tax Matters Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by Taxing Authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.  The Tax Matters Representative shall promptly notify the Members in writing of the commencement of any tax audit of the Company, upon receipt of a tax assessment and upon receipt of a notice of final partnership adjustment, and shall keep the Members reasonably informed of the status of any tax audit and resulting administrative and judicial proceedings.  Without the consent of Members holding a majority of the Membership Interests, the Tax Matters Representative shall not extend the statute of limitations, file a request for administrative adjustment, file suit relating to any Company tax refund or deficiency or enter into any settlement agreement relating to items of income, gain, loss or deduction of the Company with any Taxing Authority.

(c)    **US Federal Tax Proceedings.**  The Members acknowledge that the Company may elect the application of Section 6226 of the Code.  This acknowledgement applies to each Member whether or not the Member owns an interest in the Company in

both the reviewed year and the year of the tax adjustment. In the event that the Company elects the application of Section 6226 of the Code, the Members agree and covenant to take into account and report to the Internal Revenue Service (or any other applicable taxing authority) any adjustment to their tax items for the reviewed year of which they are notified by the Company in a written statement, in the manner provided in Section 6226(b) of the Code, whether or not the Member owns any interest in the Company at such time. Any Member that fails to report its share of such adjustments on its tax return, agrees to indemnify and hold harmless the Company and the Tax Matters Representative from and against any and all losses, costs, liabilities and expenses related to taxes (including penalties and interest) imposed on the Company as a result of the Member's inaction. If the Company is required to pay the assessment of the imputed underpayment under Section 6225(a)(1) of the Code or similar provisions of state law, any taxes, penalties, and interest payable by the Company shall be treated as attributable to the Members, and, to the extent possible, the Tax Matters Representative shall allocate the burden of any such amounts to those Members to whom such amounts are reasonably attributable taking into account the Member's or former Member's allocable share of taxable income or loss with respect to the Fiscal Year to which such assessment pertains and adjustments that may have been made in computing the imputed underpayment. To the extent that any such amount is payable by the Company, at the option of the Tax Matters Representative, such amount shall be recoverable from such Member as provided in Section 6.03(c). The provisions contained in this Section 10.04 shall survive the dissolution, termination or liquidation of the Company, the withdrawal of any Member or the transfer of any Member's interest in the Company and apply to unadmitted assignees of a Member Interest who may be considered current or former partners of the Company for federal tax purposes.

(d)     **Tax Returns.**  Each Member agrees that such Member shall not treat any Company item inconsistently on such Member's federal, state, foreign or other income tax return with the treatment of the item on the Company's return.

(e)     **Section 754 Election.**  The Tax Matters Representative will make an election under Code Section 754, if the Company is to be taxed as a partnership for federal tax purposes.

(f)     **Indemnification**.  The Company shall defend, indemnify, and hold harmless the Tax Matters Representative against any and all liabilities sustained as a result of any act or decision concerning Company tax matters and within the scope of responsibilities as Tax Matters Representative, so long as such act or decision was done or made in good faith and does not constitute gross negligence or willful misconduct.

**Section 10.05 Tax Returns.**  At the expense of the Company, the Sole Manager (or any officer of the Company that it may designate pursuant to this Agreement) shall endeavor to cause the preparation and timely filing (including extensions) of all tax returns required to be filed by the Company pursuant to the Code as well as all other required tax returns in each jurisdiction in which the Company owns property or does business. As soon as reasonably possible after the end of each Fiscal Year, the Sole Manager or any designated officer of the Company, as applicable, will cause to be delivered to each Person who was a Member at any time during such Fiscal Year,

IRS Schedule K-1 to Form 1065, if applicable, and such other information with respect to the Company as may be necessary for the preparation of such Person's federal, state, and local income tax returns for such Fiscal Year.

**Section 10.06  Company Funds.**  All funds of the Company shall be deposited in its name, or in such name as may be designated by the Sole Manager, in such checking, savings, or other accounts, or held in its name in the form of such other investments as shall be designated by the Sole Manager.  The funds of the Company shall not be commingled with the funds of any other Person.  All withdrawals of such deposits or liquidations of such investments by the Company shall be made exclusively upon the signature or signatures of the Sole Manager, or any officer or officers of the Company that may be designated by the Sole Manager, as applicable, pursuant to this Agreement.

<div align="center">

**ARTICLE XI**
**WINDING UP AND TERMINATION**

</div>

**Section 11.01  Events Requiring Winding Up.**  The Company shall begin to wind up its business and affairs only upon the occurrence of any of the following events (in each case, subject to the applicable provisions of Section 7.06):

      (a)    upon the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties;

      (b)    the occurrence of a nonwaivable event under the terms of the BOC which requires the winding up of the Company after its termination unless a Continuance occurs in respect of such event; or

      (c)    the entry of a judicial decree ordering winding up and termination under § 11.314 of the BOC in proceedings of which Apache has been given notice and an opportunity to participate.

Notwithstanding the occurrence of an event referenced in Section 11.01(b), if the Company is permitted prior to the termination of its existence in accordance with the BOC to revoke a winding up upon the occurrence of such event and each of Apache, the Sole Manager, and the Independent Director provide their prior written consent to such revocation, then, to the extent so permitted under the BOC and in the manner provided therein, the Company's existence shall be continued (the revocation of such a winding up and continuance of the Company, a "**Continuance**").

**Section 11.02  Effectiveness of Termination.**  The Company shall begin to wind up its business and affairs as soon as reasonably practicable upon the occurrence of an event described in Section 11.01 (if such event has not been revoked or cancelled), but the Company shall not terminate until the winding up of the Company has been completed, the assets of the Company have been distributed as provided in Section 11.03, and the Certificate of Termination shall have been filed as provided in Section 11.04.

**Section 11.03  Liquidation.**  If the Company is to be terminated pursuant to Section 11.01, the Company shall be liquidated and its business and affairs wound up in accordance with the BOC and the following provisions:

(a)  **Liquidator.**  The Sole Manager shall act as liquidator to wind up the Company (the "**Liquidator**"); provided, however, that if there is then a vacancy in the position of the Sole Manager or the Sole Manager is not willing to act as the Liquidator, the Members shall appoint a person to act as the Liquidator.  The Liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b)  **Accounting.**  As promptly as possible after the event requiring winding up and again after final liquidation, the Liquidator shall cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities, and operations through the last day of the calendar month in which such event occurs or the final liquidation is completed, as applicable.

(c)  **Notice.**  The Liquidator shall deliver to each known claimant of the Company the notice required by § 11.052 of the BOC.

(d)  **Distribution of Proceeds.**  The Liquidator shall liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

(i)  First, to the payment of all of the Company's debts and liabilities to its creditors (including Members, if applicable) and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

(ii)  Second, to Trust A until the aggregate funds in Trust A are in an amount equal to 125% of the then Remaining Decommissioning (as defined in the Decommissioning Agreement);

(iii)  Third, to the establishment of and additions to other reserves that are determined by the Liquidator to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

(iv)  Fourth, to the Members in accordance with the positive balances in their respective Capital Accounts, as determined after taking into account all Capital Account adjustments for the taxable year of the Company during which the liquidation of the Company occurs.

(e)  **Discretion of Liquidator.**  Notwithstanding the provisions of Section 11.03(d) that require the liquidation of the assets of the Company, but subject to the order of priorities set forth in Section 11.03(d), if upon winding up of the Company the Liquidator reasonably determines that an immediate sale of part or all of the Company's assets would be impractical or could cause undue loss to the Members, the Liquidator may defer the liquidation of any assets except those necessary to satisfy Company liabilities,

43

Trust A, and reserves, and may, upon approval of holders of a majority of the outstanding Membership Interests, distribute to the Members, in lieu of cash, as tenants in common and in accordance with the provisions of Section 11.03(d), undivided interests in such Company assets as the Liquidator deems not suitable for liquidation. Any such distribution in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operating of such properties at such time. For purposes of any such distribution, any property to be distributed will be valued at its Fair Market Value.

**Section 11.04 Certificate of Termination.** Upon completion of the distribution of the assets of the Company as provided in Section 11.03(d) hereof, the Liquidator or other such officer shall execute and cause to be filed a Certificate of Termination in the State of Texas and shall cause the cancellation of all qualifications and registrations of the Company as a foreign limited liability company in jurisdictions other than the State of Texas and shall take such other actions as may be necessary to terminate the Company. Upon acceptance of the Certificate of Termination by the Texas Secretary of State, the Company shall be terminated.

**Section 11.05 Survival of Rights, Duties, and Obligations.** Dissolution, liquidation, winding up, or termination of the Company for any reason shall not release any party from any Loss that at the time of such dissolution, liquidation, winding up, or termination already had accrued to any other party or thereafter may accrue in respect of any act or omission prior to such dissolution, liquidation, winding up, or termination. For the avoidance of doubt, none of the foregoing shall replace, diminish, or otherwise adversely affect any Member's right to indemnification pursuant to Section 9.03.

**Section 11.06 Recourse for Claims.** Each Member shall look solely to the assets of the Company for all distributions with respect to the Company, such Member's Capital Account, and such Member's share of Net Income, Net Loss, and other items of income, gain, loss, and deduction, and shall have no recourse therefor (upon termination or otherwise) against the Liquidator, the Independent Director, or any other Member.

## ARTICLE XII
## MISCELLANEOUS

**Section 12.01 Expenses.** Except as otherwise expressly provided herein, in the Restructuring Support Agreement, or in the Confirmation Order, all costs and expenses, including fees and disbursements of counsel, financial advisors, and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses. In addition to the immediately preceding sentence and the payment or reimbursement to Apache and its Affiliates for the costs and expenses of performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties as provided in the final paragraph of Section 7.06, from time to time as Apache evaluates any matter specified in Section 7.06 for which its consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, the Company shall reimburse Apache for all costs and expenses incurred in connection therewith, with such

reimbursement to be made regardless of whether Apache consents to such matter or provides an Acceptance Notice, Rejection Notice, or Information Notice to the Company with respect to such proposal.  Apache's costs shall include, without limitation, third-party costs and the reimbursable costs of compensation and benefits of employees of Apache and its Affiliates who devote productive time to evaluating any matter specified in Section 7.06 for which the consent of Apache is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, which costs shall be determined in good faith by Apache based on the time spent by such employees in conducting such evaluation. The reimbursement to be made pursuant to the immediately preceding sentences shall be made within 30 days of the Company's receipt of a statement from Apache specifying the costs to be so reimbursed.

**Section 12.02 Further Assurances.**   In connection with this Agreement and the transactions contemplated hereby, the Company and each Member hereby agrees, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments, conveyances, and assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

**Section 12.03 Confidentiality.**

(a)     Each Member acknowledges that, during the term of this Agreement, it will have access to and become acquainted with trade secrets, proprietary information, and confidential information belonging to the Company and its Affiliates that are not generally known to the public, including, but not limited to, information concerning business plans, financial statements, and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists, or other business documents that the Company treats as confidential, in any format whatsoever (including oral, written, electronic, or any other form or medium) (collectively, "**Confidential Information**").  In addition, each Member acknowledges that: (i) the Company has invested, and continues to invest, substantial time, expense, and specialized knowledge in developing its Confidential Information; (ii) the Confidential Information provides the Company with a competitive advantage over others in the marketplace; and (iii) the Company would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public.  Without limiting the applicability of any other agreement to which any Member is subject, no Member shall, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for personal, commercial, or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware.  Each Member in possession of Confidential Information shall take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b)     Nothing contained in Section 12.03(a) shall prevent any Member from disclosing Confidential Information: (i) upon the order of any court or administrative agency; (ii) upon the request or demand of any regulatory agency or authority having jurisdiction over such Member; (iii) to the extent compelled by legal process or required or

requested pursuant to subpoena, interrogatories, or other discovery requests; (iv) to the extent necessary in connection with the exercise of any remedy hereunder; (v) to the other Members; or (vi) to such Member's Representatives who, in the reasonable judgment of such Member, need to know such Confidential Information and agree to be bound by the provisions of this Section 12.03 as if a Member; or (vii) to any potential Transferee in connection with a proposed Transfer of Membership Interests from such Member, as long as such potential Transferee agrees in writing to be bound by the provisions of this Section 12.03 as if a Member before receiving such Confidential Information; provided, that in the case of clause (i), (ii), or (iii), such Member shall notify the Company and other Members of the proposed disclosure as far in advance of such disclosure as practicable (but in no event make any such disclosure before notifying the Company and other Members) and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Company, when and if available.

(c)       The restrictions of Section 12.03(a) shall not apply to Confidential Information that: (i) is or becomes generally available to the public other than as a result of a disclosure by a Member in violation of this Agreement; (ii) is or has been independently developed or conceived by such Member without use of Confidential Information; or (iii) becomes available to such Member or any of its Representatives on a non-confidential basis from a source other than the Company, the other Members, or any of their respective Representatives, provided, that such source is not known by the receiving Member to be bound by a confidentiality agreement regarding the Company.

(d)       The obligations of each Member under this Section 12.03 shall survive for so long as such Member remains a Member, and for three years following the earlier of (i) termination, dissolution, liquidation, and winding up of the Company; (ii) the withdrawal of such Member from the Company; or (iii) such Member's Transfer of its Membership Interests; provided that with respect to Confidential Information that constitutes a trade secret under Applicable Law, the obligations of each Member under this Section 12.03 shall survive until, if ever, such Confidential Information loses its trade secret protection other than due, directly or indirectly, to an act or omission of the Member.

**Section 12.04 Notices.**  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:

(a)       when delivered by hand (with written confirmation of receipt);

(b)       when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or

(c)       on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 12.04):

46

| | |
|---|---|
| **If to the Company:** | Fieldwood Energy I LLC<br>[COMPANY ADDRESS]<br>Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |
| with a copy to:<br>(which shall not constitute notice) | Hunton Andrews Kurth LLP<br>600 Travis Street<br>Suite 4200<br>Houston, TX 77002<br>Attention: G. Michael O'Leary |
| **If to the Independent Director:** | [INDEPENDENT DIRECTOR ADDRESS]<br>Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |
| with a copy to:<br>(which shall not constitute notice) | Hunton Andrews Kurth LLP<br>600 Travis Street<br>Suite 4200<br>Houston, TX 77002<br>Attention: G. Michael O'Leary |
| **If to a Member**: | To the Member's respective mailing address as set forth on the Members Schedule. |

**Section 12.05 Headings.** The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 12.06 Severability.** If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Except as provided in Section 9.03(g), upon such determination that any term or other provision is invalid, illegal, or unenforceable, this Agreement shall be modified automatically so as to effect the original intent of the parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible, legal, and enforceable.

**Section 12.07 Entire Agreement.**  This Agreement, together with the Certificate of Formation and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 12.08 Successors and Assigns.**  Subject to the restrictions on Transfers set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

**Section 12.09 No Third-Party Beneficiaries.**  Except (a) with respect to certain rights reserved to Apache as set forth in this Agreement, which shall be for the benefit of and enforceable by Apache, and (b) as provided in ARTICLE IX, which shall be for the benefit of and enforceable by Covered Persons as described therein, this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 12.10 Amendment.**  Subject to Sections 2.02 and 7.06(i), no provision of this Agreement may be amended or modified except by an instrument in writing executed by the Company and the Members holding a majority of the Membership Interests.  Any such written amendment or modification will be binding upon the Company and each Member. Notwithstanding the foregoing, amendments to the Members Schedule following any new issuance, redemption, repurchase, or Transfer of Membership Interests in accordance with this Agreement may be made by the Independent Director without the consent of or execution by the Members.

**Section 12.11 Waiver.**  No waiver by any party or Apache of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving or Apache, respectively.  No waiver by any party or Apache shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.  For the avoidance of doubt, nothing contained in this Section 12.11 shall diminish any of the explicit and implicit waivers described in this Agreement.

**Section 12.12 Governing Law.**  All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas.

**Section 12.13  Submission to Jurisdiction.**  The parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Harris County and in Houston, Texas.  Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding that is brought in any such court has been brought in an inconvenient forum.  Service of process, summons, notice, or other document by registered mail to the address set forth in Section 12.04 shall be effective service of process for any suit, action, or other proceeding brought in any such court.

**Section 12.14  Waiver of Jury Trial**.  EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 12.15  Equitable Remedies.**  Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties or Apache, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto and Apache shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

**Section 12.16  Attorney's Fees.**  In the event that any party or third-party beneficiary hereto institutes any legal suit, action, or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party or third-party beneficiary in the suit, action, or proceeding shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by it in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

**Section 12.17  Remedies Cumulative.**  The rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except to the extent expressly provided in Section 9.02 to the contrary.

     **Section 12.18 Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by email or other means of Electronic Transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

<div align="center">(SIGNATURE PAGE FOLLOWS)</div>

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**The Company:**

FIELDWOOD ENERGY I LLC,
a Texas limited liability company


By:_____
[NAME]
[TITLE]


**The Initial Member:**

[_____]
a [_____]


By:_____
[NAME]
[TITLE]

**EXHIBIT A**

**FORM OF TRANSITION SERVICES AGREEMENT**

## SCHEDULE A

## MEMBERS SCHEDULE

| Member Name, and Address | Capital Contribution | Membership Interest |
| --- | --- | --- |
| [_____]<br>[ADDRESS] | $[AMOUNT] | 100% |
| Total: | $[AMOUNT] | 100% |

**SCHEDULE B**

**INDEPENDENT DIRECTOR'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE C**

**SOLE MANAGER'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE D**

**ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND EMPLOYEES**

I.      DIRECT CHARGES

1.      LABOR

A.      Salaries and wages, including incentive compensation programs as set forth in COPAS MFI-37 ("Chargeability of Incentive Compensation Programs"), for:

(1)      Apache's field employees directly employed on-site in the conduct of plugging and abandonment and decommissioning activities with respect to the applicable Legacy Apache Property or the GOM Shelf Property, and

(2)      Apache's employees providing First Level Supervision.

Charges for Apache's employees identified in Section I.1.A may be made based on the employee's actual salaries and wages, or in lieu thereof, a day rate representing Apache's average salaries and wages of the employee's specific job category.

Charges for personnel chargeable under this Section I.1.A who are foreign nationals shall not exceed comparable compensation paid to an equivalent U.S. employee pursuant to this Section I.1.

B.      Apache's cost of holiday, vacation, sickness, and disability benefits, and other customary allowances paid to employees whose salaries and wages are chargeable under Section I.1.A, excluding severance payments or other termination allowances. Such costs under this I.1.B may be charged on a "when and as-paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable under Section I.1.A. If percentage assessment is used, the rate shall be based on Apache's cost experience.

C.      Expenditures or contributions made pursuant to assessments imposed by governmental authority that are applicable to costs chargeable under Sections I.1.A and B.

D.      Personal expenses of personnel whose salaries and wages are chargeable under Section I.1.A when the expenses are incurred in connection with directly chargeable activities.

E.      Apache's cost of established plans for employee benefits, as described in COPAS MFI-27 ("Employee Benefits Chargeable to Joint Operations and Subject to Percentage Limitation"), applicable to Apache's labor costs chargeable under Sections I.1.A and B based on Apache's actual cost not to exceed 40%.

F.     Award payments to employees, in accordance with COPAS MFI-49 ("Awards to Employees and Contractors") for personnel whose salaries and wages are chargeable under Section I.1.A.

## II. OVERHEAD

As compensation for costs not specifically identified as chargeable pursuant to Section I (Direct Charges), Apache shall be reimbursed in accordance with this Section II.

Functions included in the overhead rates regardless of whether performed by Apache, Apache's Affiliates or third parties and regardless of location, shall include, but not be limited to, costs and expenses of:

- design and drafting
- inventory costs
- procurement
- administration
- accounting and auditing
- human resources
- management
- supervision not directly charged under Section I.1 (Labor)
- in-house legal services
- taxation
- preparation and monitoring of permits and certifications; preparing regulatory reports; appearances before or meetings with governmental agencies or other authorities having jurisdiction over the applicable Legacy Apache Property or GOM Shelf Property, other than on-site inspections.

Overhead charges shall include the salaries or wages plus applicable payroll burdens, benefits, and personal expenses of personnel performing overhead functions, as well as office and other related expenses of overhead functions.

To compensate Apache for overhead costs incurred in connection with any particular plugging and abandonment or decommissioning project conducted on any applicable Legacy Apache Property or GOM Shelf Property, the following overhead rates shall be applied to those costs incurred in the performance of such plugging, abandonment, and decommissioning activities:

(1)     5% of total costs if such costs are less than $100,000; plus

(2)     3% of total costs in excess of $100,000 but less or equal to $1,000,000; plus

(3)     2% of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project

**Exhibit 7**

**ST 308 Bond Form**

# PERFORMANCE BOND

**Bond Number:** _____

## KNOW ALL MEN BY THESE PRESENTS:

**That** we, [Fieldwood Energy II LLC, a Texas limited liability company] with its principal office at [_____] (hereinafter called the "***Principal***") and [_____] with its principal mailing address at [_____] (hereinafter called the "***Surety***") are held and firmly bound unto Apache Corporation, with its principal office at 2000 Post Oak Blvd., Suite 100, Houston, TX 77056 (hereinafter called the "***Obligee***"), in the penal sum of Thirteen Million Two Hundred Thousand and 00/100 Dollars ($13,200,000.00) (the "***Amount***") lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

**WHEREAS**, pursuant to the terms of that certain [_____ dated effective _____ by and between Fieldwood Energy LLC ("***Fieldwood***") and Principal (the "***Purchase Agreement***")], Principal acquired from Fieldwood certain interests in the lease described on Exhibit "A" attached hereto and in the wells, facilities, platforms, structures, pipelines, and associated equipment located thereon (such interests so acquired collectively, the "***Property***"); and

**WHEREAS**, in accordance with the terms of the Purchase Agreement and the documents executed in connection therewith, Principal (i) assumed the obligations attributable to the Property to perform and complete the plugging, abandonment, decommissioning, and site clearance for the Properties in compliance with all applicable law, rules, and regulations (the "***P&A Obligations***") (for the avoidance of doubt, the P&A Obligations do not include any obligations of, or any obligations attributable to the interests of, Apache Shelf Exploration LLC or any other current co-owner or their successors or assigns in the Property other than Principal), including but not limited to, the rules and regulations of the Bureau of Ocean Energy Management ("***BOEM***"), the Bureau of Safety and Environmental Enforcement ("***BSEE***"), and their respective successor agencies and (ii) agreed to deliver to Obligee this Performance Bond to secure the performance of the P&A Obligations;

**NOW THEREFORE**, notwithstanding anything contained herein to the contrary, if the P&A Obligations are satisfied (as evidenced by providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, satisfied, and extinguished, together with an affidavit signed by an officer of Principal attesting to such performance), then this Bond and the obligations hereunder shall be null and void; otherwise, this Bond shall remain in full force and effect in the amount hereof; provided that if Principal performs or causes to be performed operations and activities to satisfy any part of the P&A Obligations, then following BSEE's approval of the performance of such operations or activities, the Amount will be automatically reduced to an amount equal to the lesser of (i) the Amount or (ii) one hundred twenty-five percent (125%) of BSEE's then current decommissioning cost estimate for the remaining P&A Obligations.

**FURTHERMORE,** if as to any Property, a Principal Default, as defined below, occurs and is not cured and Obligee is required by BOEM, BSEE, or any governmental authority, to perform any of the P&A Obligations (or a demand is made upon Obligee by a co-obligor of Principal to perform or contribute toward the costs of performing any of the P&A Obligations following such Principal Default and

Obligee is required by law or contract to so perform or contribute), then prior to any performance by Obligee of any such P&A Obligations (or payment of Obligee to such co-obligor of a share of the estimated costs of performing such P&A Obligations if such demand for such payment is made on Obligee), Surety agrees to pay to Obligee an amount reasonably estimated by Obligee as necessary or appropriate to perform such P&A Obligations (or to pay its share of the estimated costs of such P&A Obligations if such demand is made by such co-obligor following such failure) in an amount up to, but not exceeding, the Amount. The Amount shall be automatically reduced by any and all amounts paid by Surety to Obligee.

**FURTHERMORE**, it is agreed that the Surety shall have no obligation to the Principal, the Obligee, or any other person or entity for any loss suffered by the Principal, the Obligee, or any other person or entity by reason of acts or omissions for which Obligee receives payment from the Principal's general liability insurance, products liability insurance, or completed operations insurance. In no event shall the Surety be obligated to incur Surety Costs and/or pay**,** in the aggregate, for all claims hereunder, an amount exceeding the Amount.

It is further agreed that the Surety shall not be liable for any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in forming the P&A Obligations.

If Principal fails to perform any of the P&A Obligations in accordance with the terms of the Purchase Agreement and/or any applicable laws, rules, regulations, or governmental orders (or to pay its share of the estimated costs for the P&A Obligations if demand is made by the Principal's co-obligor which share is otherwise payable by Obligee upon Principal's failure to pay) then Principal shall have thirty (30) days following receipt of notice of default from Obligee in which to fully cure or remedy such default, provided that the Surety shall have the option to either cure or remedy such default within such thirty (30) day period by hiring a contractor (subject to Obligee's prior, reasonable written approval) to perform such P&A Obligations in accordance with the terms and conditions of the Purchase Agreement and all applicable laws, rules, regulations, or governmental orders (any such costs incurred by the Surety to so cure or remedy such default, the "***Surety Costs***")  or by making payment to Obligee for such P&A Obligations in an amount reasonably estimated by Obligee as necessary or appropriate to perform such P&A Obligations (or to pay its share of the estimated costs for such P&A Obligations if demand is made by the Principal's co-obligor in connection with such co-obligor's performance of such P&A Obligations) in an amount up to, but not exceeding, the Amount. Obligee agrees to provide Surety with a copy of each such default notice. If the default covered by such default notice is not cured or remedied within such thirty (30) day period then upon the expiration of such thirty (30) day period such default shall constitute a "***Principal Default***" for purposes of this Bond.

No amendment of or supplement to the terms or provisions of the Purchase Agreement, the agreements and instruments entered into in association therewith, or the exhibits or schedules attached thereto shall release the Principal and the Surety or any of them from their liability under this Performance Bond, notice to the Surety of any such amendment or supplement being hereby waived.

No (i) assignment of the Purchase Agreement, the agreements and instruments entered into in association therewith, or of the Properties by the Principal, its successors and assigns, (ii) delay, neglect or failure of the Obligee to proceed promptly to enforce any rights it might have against Principal under the Purchase Agreement or otherwise or to proceed promptly in the premises in case of any default on the part of the Principal, (iii) lack of enforceability or other defense or offset right in respect of any

obligation of Principal or any right to Obligee under the Purchase Agreement or otherwise in respect of the P&A Obligations, or (iv) the insolvency, bankruptcy, or receivership of Principal, shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Performance Bond; and Principal and Surety hereby waive any defense or argument they may in relation to their obligations under this Performance Bond in connection with any of the foregoing.

**HOWEVER**, if upon assignment of the Property or any part thereof by the Principal, its successors, or assigns, the Principal shall cause its assignee (i) to post security with Obligee, in a form and amount reasonably satisfactory to Obligee and otherwise containing terms and issued by the parties that are reasonably satisfactory to Obligee (including terms no less favorable in the aggregate to Obligee than those contained in this Performance Bond and from a surety or other party issuing the applicable security having a [S&P rating of A- or better or an A.M. Best rating of A- or better and, in either case, listed on the Federal Register as acceptable to the U.S. Treasury to issue bonds for U.S. government obligees (T-listed)]) and (ii) to assume (in a written instrument approved by Obligee) all P&A Obligations, then the Obligee will accept such security in lieu of this Bond and issue an unconditional release of the Bond within thirty (30) days of Obligee's acceptance of such other security.

**NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY**, in the event one or more dual obligee bonds in favor of Obligee and the United States of America acting through and by the Bureau of Ocean Energy Management ("***BOEM***") (i) are delivered to BOEM and Obligee, (ii) contain terms no less favorable in the aggregate to Obligee than those contained in this Performance Bond, (iii) are issued by a surety having a [S&P rating of A- or better or an A.M. Best rating of A- or better and, in either case, listed on the Federal Register as acceptable to the U.S. Treasury to issue bonds for U.S. government obligees (T-listed)], (iv) cover all or part of the P&A Obligations, and (v) do not cover any other obligations (other than the P&A Obligations) such that the penal sum of such bond could be reduced as a result of the satisfaction or reduction of such other obligations, then the Amount of this Performance Bond shall automatically be reduced to the positive difference, if any, between the current Amount and the penal sum of such dual obligee bond(s).

No right or action shall accrue on this Performance Bond to or for the use of any person or corporation other than the Principal, the Obligee, and their respective heirs, executors, administrators, successors, and assigns.

This Performance Bond may not be amended, supplemented, or modified except pursuant to a written instrument duly executed by the Principal, Surety, and Obligee. No course of conduct, dealing, or performance shall amend, supplement, or modify this Performance Bond unless incorporated into a written instrument referenced in the preceding sentence.

This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws rules and principles. Principal, Surety, and Obligee agree that any dispute arising out of this Performance Bond shall be brought and heard exclusively in the state or federal courts sitting in Harris County, Texas, and all of them irrevocably consent to the jurisdiction of said courts and do hereby waive any objections they may have to the laying of venue in such courts, including objections based upon grounds that such venue is inconvenient.

The Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) its receipt of satisfactory evidence of the full performance, satisfaction, and extinguishment of the P&A Obligations in accordance with all applicable laws, rules, regulations, and orders, (ii) the full performance by Surety of its obligations under this Bond and (iii) the incurrence of Surety Costs and/or the making of payments by the Surety under the Bond of an amount equal to the Amount, in each case,

no later than thirty (30) days after Obligee's receipt of evidence reasonably satisfactory to Obligee reflecting that the P&A Obligations have been fully performed, satisfied, and extinguished in accordance with all applicable laws, rules, regulations, and orders, which evidence shall include a report from the proper regulatory authority reflecting such performance, and an affidavit signed by an officer of the Principal attesting to such performance.

Notwithstanding anything herein to the contrary, Obligee will issue a release of this Bond within a reasonable time period following the reduction of the Amount to zero.

The Principal and the Surety agree that, notwithstanding any termination of any of the leases or rights of way that may comprise any part of the Properties, whether pursuant to their terms, by operation of law, or otherwise, this Performance Bond shall remain in full force and effect until the earlier of to occur of (i) all P&A Obligations having been truly and faithfully performed, satisfied, and extinguished, (ii) the full performance by Surety of its obligations under this Bond and (iii) Surety incurring Surety Costs and/or making payments under this Bond in an amount equal to the Amount.

Surety represents that it (i) is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Performance Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; (ii) has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or processing against such Surety in any court or before ay officer, arising out of or founded upon this Performance Bond or any liability hereunder; and (iii) does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

**[*remainder of page blank; signature page follows*]**

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument under their several seals this [●] day of [●], 2021, the name and corporate seal of each corporate party being hereto affixed and those presents duly signed by its undersigned representative pursuant to authority of its governing body.

[_____]
Principal

Attest:

_____     By:_____
                              Name: _____
                              Title: _____


[_____]
Surety

Attest:

_____     By:_____
                              Name: _____
                              Title: _____


**Apache Corporation**
Obligee

Attest:

_____     By:_____
                              Name: _____
                              Title: _____

Exhibit "A"

Attached to and made a part of that certain Performance Bond No. _____ dated [●] [●], 2021, by [_____], as Principal, [_____], as Surety and Apache Corporation, as Obligee.


### THE PROPERTY

Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act dated effective June 1, 2000 by and between the United States of America as Lessor and Anadarko Petroleum Corporation as Lessee, bearing Serial No. OCS-G 21685 and covering all of Block 308, South Timbalier Area, South Additional, OCS Leasing Map, Louisiana Map No. 6A.

[Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act dated effective May 1, 2003 by and between the United States of America as Lessor and Magnum Hunter Production, Inc., as Lessee, bearing Serial No. OCS-G 24987 and covering all of Block 287, South Timbalier Area, South Additional, OCS Leasing Map, Louisiana Map No. 6A.]


[End of Exhibit "A"]

**<u>Exhibit 8</u>**

**Standby Loan Agreement**

STANDBY LOAN AGREEMENT

dated as of

_____, 2021

between

FIELDWOOD ENERGY I LLC,
and
GOM SHELF LLC

as Borrowers,

and

APACHE CORPORATION,

as Lender

## TABLE OF CONTENTS

Page

Article I Definitions .................................................................................................................1
    Section 1.01    Defined Terms...................................................................................1
    Section 1.02    Terms Generally..............................................................................13
    Section 1.03    Accounting Terms; GAAP ..............................................................14

Article II The Advances .........................................................................................................14
    Section 2.01    Loans; Commitment Increase .........................................................14
    Section 2.02    The Note ..........................................................................................15
    Section 2.03    Borrowing Procedures; Requests for Borrowings ..........................15
    Section 2.04    Funding of Borrowings ...................................................................15
    Section 2.05    Repayment of Loans .......................................................................15
    Section 2.06    Prepayment of Loans ......................................................................16
    Section 2.07    Interest.............................................................................................16
    Section 2.08    Payments Generally; Allocation of Proceeds..................................16
    Section 2.09    Indemnity for Returned Payments ..................................................17

Article III Representations and Warranties.............................................................................17
    Section 3.01    Organization; Powers......................................................................17
    Section 3.02    Authorization; Enforceability .........................................................18
    Section 3.03    Governmental Approvals; No Conflicts ..........................................18
    Section 3.04    Properties ........................................................................................18
    Section 3.05    Litigation and Environmental Matters ............................................18
    Section 3.06    Compliance with Laws and Agreements; No Default .....................19
    Section 3.07    Taxes ...............................................................................................19
    Section 3.08    ERISA .............................................................................................19
    Section 3.09    Disclosure.......................................................................................19
    Section 3.10    Material Contracts...........................................................................19
    Section 3.11    Insurance ........................................................................................20
    Section 3.12    Security Interest in Collateral .........................................................20
    Section 3.13    Use of Proceeds...............................................................................20
    Section 3.14    Anti-Corruption Laws and Sanctions..............................................20
    Section 3.15    Affiliate Transactions .....................................................................20
    Section 3.16    Solvency..........................................................................................20

Article IV Conditions.............................................................................................................21
    Section 4.01    Effective Date .................................................................................21
    Section 4.02    Each Credit Event ...........................................................................22

Article V Affirmative Covenants............................................................................................25
    Section 5.01    Financial Statements and Other Information ..................................25
    Section 5.02    Notices of Material Events..............................................................26
    Section 5.03    Existence; Conduct of Business .......................................................26
    Section 5.04    Payment of Obligations...................................................................26

i

Section 5.05     Maintenance of Properties ................................................27
Section 5.06     Books and Records; Inspection Rights ...............................27
Section 5.07     Compliance with Laws and Material Contractual Obligations .....................27
Section 5.08     Use of Proceeds.............................................................27
Section 5.09     Accuracy of Information...................................................27
Section 5.10     Insurance......................................................................28
Section 5.11     Further Assurances.........................................................28

Article VI Negative Covenants.................................................................28
Section 6.01     Indebtedness.................................................................28
Section 6.02     Liens ...........................................................................28
Section 6.03     Fundamental Changes.....................................................28
Section 6.04     Investments, Loans, Advances, Guarantees and Acquisitions.....................29
Section 6.05     Asset Sales ..................................................................29
Section 6.06     Sale and Leaseback Transactions.......................................29
Section 6.07     Swap Agreements ..........................................................30
Section 6.08     Restricted Payments; Certain Payments of Indebtedness ............................30
Section 6.09     Transactions with Affiliates ..............................................30
Section 6.10     Restrictive Agreements ...................................................30
Section 6.11     Amendment of Organizational Documents; Material Contracts....................30
Section 6.12     Amendment or Termination of Material Relationships ..............................30
Section 6.13     Excess Cash Flow ..........................................................30

Article VII Events of Default....................................................................31

Article VIII Miscellaneous .......................................................................33
Section 8.01     Notices ........................................................................33
Section 8.02     Waivers; Amendments.....................................................34
Section 8.03     Expenses; Indemnity; Damage Waiver.................................34
Section 8.04     Successors and Assigns....................................................36
Section 8.05     Survival .......................................................................36
Section 8.06     Counterparts; Integration; Effectiveness...............................36
Section 8.07     Severability ..................................................................37
Section 8.08     Right of Setoff...............................................................37
Section 8.09     Governing Law; Jurisdiction; Consent to Service of Process......................37
Section 8.10     WAIVER OF JURY TRIAL..............................................38
Section 8.11     Headings.......................................................................38
Section 8.12     Interest Rate Limitation ..................................................38
Section 8.13     No Advisory or Fiduciary Responsibility .............................39
Section 8.14     Joint and Several Liability ...............................................39
Section 8.15     NOTICE OF FINAL AGREEMENT ...................................40

<u>SCHEDULES</u>:
Schedule 3.04(a) – Real Property
Schedule 3.04(b) – Intellectual Property
Schedule 3.11 – Insurance
Schedule 3.16 – Affiliate Transactions


<u>EXHIBITS</u>:
Exhibit A – Note
Exhibit B – Borrowing Request
Exhibit C – Compliance Certificate

# STANDBY LOAN AGREEMENT

STANDBY LOAN AGREEMENT dated as of _____, 2021 (as it may be amended, supplemented or otherwise modified from time to time, this "Agreement"), among FIELDWOOD ENERGY I LLC, a Texas limited liability company ("Fieldwood"), GOM SHELF LLC, a Delaware limited liability company ("GOM", together with Fieldwood, the "Borrowers") and APACHE CORPORATION, a Delaware corporation, as Lender.

The parties hereto agree as follows:

## ARTICLE I

### Definitions

Section 1.01   Defined Terms.  As used in this Agreement, the following terms have the meanings specified below:

"Affiliate" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the specified Person.  For the avoidance of doubt, no Co-Borrower shall constitute an Affiliate of Lender nor shall Lender constitute an Affiliate of any Co-Borrower.

"Anti-Corruption Laws" means all state or federal laws, rules, and regulations of any jurisdiction applicable to the Borrowers from time to time concerning or relating to bribery or corruption.

"Apache Bond Rate" means the stated per annum rate of interest charged on the debt securities most recently issued under an indenture of Apache Corporation or successor thereto as of the date immediately preceding each Borrowing Request, and if two series of such debt securities are issued on the same day, the stated per annum rate of interest on the series with a tenor most comparable to the remaining tenor hereof.

"Availability Period" means the period from and including the Effective Date to but excluding the earlier of the Maturity Date and the date of termination of the Commitment.

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy", as now and hereafter in effect, or any successor statute.

"BOC" means the Texas Business Organizations Code, as amended and in effect at the time of this Agreement.

"Borrower Guarantee" means each certain Guarantee, dated as of the date hereof, by each Co-Borrower of the other Borrower's Secured Obligations for the benefit of the Lender, as each such Guarantee may be amended, restated, supplemented, or otherwise modified from time to time.

"Borrowing Request" means a request by any Co-Borrower for a Loan in accordance with Section 2.03.

"Business Day" means any day that is not a Saturday, Sunday or other day on which commercial banks in Houston, Texas are authorized or required by law to remain closed.

"Change in Control" means _____[1] shall cease to own, free and clear of all Liens or other encumbrances, 100% of the outstanding voting Equity Interests of Fieldwood and indirectly through Fieldwood, 100% of the outstanding voting Equity Interests of GOM Shelf, in each case, on a fully diluted basis.

"Change in Law" means the occurrence after the date of this Agreement of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty or (b) any change in any law, rule, regulation or treaty or in the administration, interpretation or application thereof by any Governmental Authority.

"Co-Borrower" means any one of the Borrowers.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Collateral" means any and all property owned by any Co-Borrower, whether now existing or hereafter acquired, that may at any time be, become or intended to be, subject to a security interest or Lien in favor of the Lender, on behalf of the Secured Parties, to secure the Secured Obligations.

"Collateral Documents" means, collectively, the Mortgages, the Security Agreement, the Deposit Account Control Agreement, and any other agreements, instruments, and documents executed and delivered by the Borrowers in connection with this Agreement that are intended to create, perfect or evidence Liens to secure the Secured Obligations, including, without limitation, all other security agreements, pledge agreements, mortgages, deeds of trust, pledges, collateral assignments, and financing statements, now or hereafter executed by the Borrowers and delivered to the Lender.

"Commitment" means the commitment of the Lender to make Loans hereunder in an aggregate principal amount at any time outstanding up to $200,000,000, as such amount may be increased pursuant to Section 2.01(b).

"Compliance Certificate" has the meaning assigned to such term in Section 5.01(c).

"Confirmation Order" means the confirmation order entered in Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC, et al, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, which, if and to the extent such confirmation order directly affects the Lender in its capacity as such or pertains to any of the Loan Documents or other Apache Definitive Documents (as defined in that certain Apache Term Sheet Implementation Agreement, dated January 1, 2021, by and among Borrowers, Lender, Apache

---

[1] To be completed in a manner mutually agreeable to all parties as a condition to Apache's execution.

Shelf, Inc., and Apache Deep Water LLC), shall be in form and substance reasonably acceptable to the Lender.

"Consolidated EBITDA" means for the Borrowers, for any period, the sum of (a) Consolidated Net Income for such period, plus (b) without duplication and to the extent deducted in determining such Consolidated Net Income (i) interest expense for such period, plus (ii) income tax expense for such period, plus (iii) consolidated depreciation and amortization for such period.

"Consolidated Net Income" means, for any period, the consolidated net income (or loss) of Fieldwood and its consolidated subsidiaries for such period, as determined in accordance with GAAP.

"Contractor" means a Person which is a party in the capacity as prime contractor under the Decommissioning Contract with any Co-Borrower.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.   "Controlling" and "Controlled" have meanings correlative thereto.

"Credit Bid Purchaser" means [_____]², a Delaware limited liability company, and its successors and assigns.

"Decommissioning" has the meaning given to such term in the Decommissioning Agreement.

"Decommissioning Agreement" means that certain Decommissioning Agreement dated as of September 30, 2013 by and among Apache Corporation, a Delaware corporation, Apache Shelf, Inc., a Delaware corporation, and Apache Deepwater LLC, a Delaware limited liability company, Apache Shelf Exploration LLC, a Delaware limited liability company, Fieldwood Energy LLC, a Delaware limited liability company, and GOM Shelf LLC, a Delaware limited liability company, as amended by (i) that certain First Amendment to Decommissioning Agreement dated as of September 30, 2013, (ii) that certain Second Amendment to Decommissioning Agreement dated as of September 30, 2013, (iii) that certain Third Amendment to Decommissioning Agreement dated effective as of April 25, 2017, (iv) that certain Fourth Amendment to Decommissioning Agreement dated effective as of September 1, 2017 (as such Fourth Amendment to Decommissioning Agreement was amended by that certain Letter Agreement by and among the Parties dated January 3, 2018), and (v) that certain Fifth Amendment to Decommissioning Agreement dated effective as of April 11, 2018.

"Decommissioning Contract" means each services contract in effect from time to time by and between either or both of the Co-Borrower and any Contractor for all or any portion of the Decommissioning remaining to be conducted on or after the Effective Date.

---

² NTD:  Name to be confirmed.

"Decommissioning Plan" has the meaning assigned to such term in Section 4.02(l).

"Debtor" means Fieldwood Energy LLC.

"Default" means any event or condition which constitutes an Event of Default or which upon notice, lapse of time or both would, unless cured or waived, become an Event of Default.

"Divisive Merger Documents" means the certificate of division, the plan of division, the certificate of merger and all other documents filed with respect to the Borrowers with the Texas Secretary of State related to the divisive merger pursuant to the Plan of Merger and the formation of Fieldwood Energy I LLC.

"Document" has the meaning assigned to such term in the UCC.

"dollars" or "$" refers to lawful money of the U.S.

"Effective Date" means the date on which the conditions specified in Section 4.01 are satisfied (or waived in accordance with Section 8.02), which shall also be the date on which the plan of reorganization confirmed by the Confirmation Order becomes effective.

"Environmental Laws" means all laws, rules, regulations, codes, ordinances, orders, decrees, judgments, injunctions, notices or binding agreements issued, promulgated or entered into by any Governmental Authority, relating in any way to the environment, preservation or reclamation of natural resources, the management, Release or threatened Release of any Hazardous Material or to health and safety matters.

"Environmental Liability" means any liability, contingent or otherwise (including any liability for damages, costs of environmental remediation, fines, penalties or indemnities), of any Co-Borrower, directly or indirectly, resulting from or based upon (a) any violation of any Environmental Law, (b) the generation, use, handling, transportation, storage, treatment or disposal of any Hazardous Materials, (c) any exposure to any Hazardous Materials, (d) the Release or threatened Release of any Hazardous Materials into the environment or (e) any contract, agreement or other consensual arrangement pursuant to which liability is assumed or imposed with respect to any of the foregoing.

"Equipment" has the meaning assigned to such term in the Security Agreement.

"Equity Interests" means shares of capital stock, partnership interests, membership interests in a limited liability company, beneficial interests in a trust or other equity ownership interests in a Person, and any warrants, options or other rights entitling the holder thereof to purchase or acquire any of the foregoing.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

"ERISA Affiliate" means any trade or business (whether or not incorporated) that, together with any Co-Borrower, is treated as a single employer under Section 414(b) or (c) of the

Code or, solely for purposes of Section 302 of ERISA and Section 412 of the Code, is treated as a single employer under Section 414 of the Code.

"Event of Default" has the meaning assigned to such term in Article VII.

"Excess Cash Flow" means for any fiscal quarter of the Borrowers, the sum, without duplication, of (a) Consolidated EBITDA for such period, minus (b) voluntary payments on Indebtedness made by any Co-Borrower minus (c) interest expense paid in cash by any Co-Borrower during such period, minus (d) the amount of taxes paid in cash by any Co-Borrower for such period, minus (e) the aggregate amount of interest payments and operating expenditures estimated for the following three (3) month period, minus (f) the amount of working capital needed by the Borrowers for the following three (3) months for performance of Borrowers' obligations under the Decommissioning Agreement, and (g) minus, during 2021 and 2022 only, the amount (up to an aggregate amount of $80,000,000 during each such year) actually spent by Borrowers on Decommissioning of the Applicable Properties (as defined in the Decommissioning Agreement) during each of calendar year 2021 and calendar year 2022.

"Farmout Agreement" means that certain Farmout Agreement of even date herewith by and between Fieldwood Energy I LLC and the Credit Bid Purchaser in the form attached to the Implementation Agreement.

"Financial Statements" has the meaning assigned to such term in Section 5.01.

"Funding Account" has the meaning assigned to such term in Section 4.01(g).

"GAAP" means generally accepted accounting principles in the U.S in effect from time to time; provided, that, notwithstanding any term or provision contained in this Agreement or any other Loan Document, GAAP will be deemed for all purposes hereof to treat leases that would have not been considered to be Indebtedness in accordance with GAAP as in effect on December 31, 2017 (whether such leases were in effect on such date or are entered into thereafter), in a manner consistent with the treatment of such leases under GAAP as in effect on December 31, 2017, notwithstanding any modification or interpretative changes thereto or implementations of any such modifications or interpretative changes that may have occurred thereafter.

"GOM Shelf Properties" has the meaning given to such term in the Limited Liability Company Agreement of Fieldwood.

"Governmental Authority" means the government of the U.S., any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"Guarantee" of or by any Person (the "guarantor") means any obligation, contingent or otherwise, of the guarantor guaranteeing or having the economic effect of guaranteeing any Indebtedness or other obligation of any other Person (the "primary obligor") in any manner, whether directly or indirectly, and including any obligation of the guarantor, direct or indirect,

(a) to purchase or pay (or advance or supply funds for the purchase or payment of) such Indebtedness or other obligation or to purchase (or to advance or supply funds for the purchase of) any security for the payment thereof, (b) to purchase or lease property, securities or services for the purpose of assuring the owner of such Indebtedness or other obligation of the payment thereof, (c) to maintain working capital, equity capital or any other financial statement condition or liquidity of the primary obligor so as to enable the primary obligor to pay such Indebtedness or other obligation or (d) as an account party in respect of any letter of credit or letter of guaranty issued to support such Indebtedness or obligation; <u>provided</u> that the term Guarantee shall not include endorsements for collection or deposit in the ordinary course of business.

"<u>Hazardous Materials</u>" means:  (a) any substance, material, or waste that is included within the definitions of "hazardous substances," "hazardous materials," "hazardous waste," "toxic substances," "toxic materials," "toxic waste," or words of similar import in any Environmental Law; (b) those substances listed as hazardous substances by the United States Department of Transportation (or any successor agency) (49 C.F.R. 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) (40 C.F.R. Part 302 and amendments thereto); and (c) any substance, material, or waste that is petroleum, petroleum-related, or a petroleum by-product, asbestos or asbestos-containing material, polychlorinated biphenyls, flammable, explosive, radioactive, freon gas, radon, or a pesticide, herbicide, or any other agricultural chemical.

"Implementation Agreement" means the [Second Amended Apache Term Sheet Implementation Agreement].

"<u>Indebtedness</u>" of any Person means, without duplication, (a) all obligations of such Person for borrowed money, (b) all obligations of such Person evidenced by bonds, debentures, notes or similar instruments, (c) all obligations of such Person upon which interest charges are customarily paid, (d) all obligations of such Person under conditional sale or other title retention agreements relating to property acquired by such Person, (e) all obligations of such Person in respect of the deferred purchase price of property or services (excluding current accounts payable incurred in the ordinary course of business), (f) all Indebtedness of others secured by (or for which the holder of such Indebtedness has an existing right, contingent or otherwise, to be secured by) any Lien on property owned or acquired by such Person, whether or not the Indebtedness secured thereby has been assumed (to the extent of the value of the property of such Person securing such Indebtedness), (g) all Guarantees by such Person of Indebtedness of others, (h) all capital lease obligations of such Person, (i) all obligations, contingent or otherwise, of such Person as an account party in respect of letters of credit and letters of guaranty, (j) all obligations, contingent or otherwise, of such Person in respect of bankers' acceptances and (k) obligations under any liquidated earn-out.

"<u>Indemnitee</u>" has the meaning assigned to such term in <u>Section 8.03(b)</u>.

"<u>Inventory</u>" has the meaning assigned to such term in the UCC.

"<u>JOA</u>" means each and every Joint Operating Agreement in effect from time to time by and among the Borrowers, Credit Bid Purchaser, and third parties, if any.

"<u>Leases</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>LC Drawing Amount</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>Legacy Apache Properties</u>" has the meaning given to such term in the Limited Liability Company Agreement of Fieldwood.

"<u>Lender</u>" means Apache Corporation, its successors and permitted assigns.

"<u>Letters of Credit</u>" has the meaning given to such term in the Decommissioning Agreement and includes all letters of credit outstanding from time to time pursuant to the Decommissioning Agreement.

"<u>Lien</u>" means, with respect to any asset, (a) any mortgage, deed of trust, lien, pledge, hypothecation, encumbrance, charge or security interest in, on or of such asset, (b) the interest of a vendor or a lessor under any conditional sale agreement, capital lease or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such asset and (c) in the case of securities, any purchase option, call or similar right of a third party with respect to such securities.

"<u>Limited Liability Company Agreement of Fieldwood</u>" or "<u>Fieldwood's Limited Liability Company Agreement</u>" means that certain Limited Liability Company Agreement of Fieldwood dated as of the date hereof, as may be amended, supplemented, or otherwise modified from time to time with the prior written approval of Lender.

"<u>Loan Documents</u>" means, collectively, this Agreement, the promissory note issued pursuant to this Agreement, each Collateral Document, each Borrower Guarantee, and each other agreement, instrument, document and certificate identified in <u>Section 4.01</u> executed and delivered by the Borrowers to, or in favor of, the Lender and including each other pledge, power of attorney, consent, assignment, contract, notice, and each other agreement, now or hereafter executed by or on behalf of the Borrowers and delivered to the Lender in connection with this Agreement.  Any reference in this Agreement or any other Loan Document to a Loan Document shall include all appendices, exhibits or schedules thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to this Agreement or such Loan Document as the same may be in effect at any and all times such reference becomes operative.

"<u>Loans</u>" means any loan made pursuant to <u>Section 2.01</u>.

"<u>Manager</u>" has the meaning given to such term in Fieldwood's Limited Liability Company Agreement.

"<u>Master Facilities Agreement</u>" means the Master Facilities Use, Access, Production Handling and Transportation Agreement dated as of September 30, 2013 by and among Lender, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood Energy LLC and GOM.

"Material Adverse Effect" means a circumstance or condition that could, individually or in the aggregate, materially adversely affect the business, assets, operations, properties, or condition (financial or otherwise) of the Borrowers and their subsidiaries, taken as a whole.

"Material Contract" means each of (i) the Decommissioning Agreement, (ii) the Decommissioning Contract, (iii) the JOA, (iv) the Farmout Agreement, (v) the Turnkey Removal Contract, (vi) the Trust A Trust Agreement, (vii) the Trust A NPI Conveyance, (viii) the Trust A-1 NPI Conveyance (ix) the Letters of Credit, (x) the Permitted Surety Bonds, (xi) the Recharacterization Mortgages, (xii) the PSA, (xiii) the Master Facilities Agreement and (xiv) other Transaction Documents, in each case, as in effect from time to time.

"Maturity Date" means the earliest to occur of (a) termination of the Decommissioning Agreement, (b) expiration of the period comprised of the fifth (5th) anniversary of the Effective Date (the "Initial Period") and automatic successive 12-month periods thereafter until the tenth (10th) anniversary of the Effective Date, each expiring on the next anniversary of the Effective Date (each an "Annual Period"), unless no later than 60 days before expiration of the Initial Period or the then Annual Period, as applicable, Lender has delivered written notice to Borrowers that the Maturity Date will occur upon expiration of the Initial Period or the then Annual Period, respectively (if the same is a Business Day, or if not then the immediately next succeeding Business Day), and (c) any date on which the Commitment is reduced to zero or otherwise terminated pursuant to the terms of Article VII.

"Maximum Rate" means the maximum rate of nonusurious interest permitted from day to day by applicable law, including Chapter 303 of the Texas Finance Code (the "Finance Code") (and as the same may be incorporated by reference in other Texas statutes).  To the extent that Chapter 303 of the Finance Code is relevant to Lender for the purposes of determining the Maximum Rate, the Lender may elect to determine such applicable legal rate pursuant to the "weekly ceiling," from time to time in effect, as referred to and defined in Chapter 303 of the Code; subject, however, to the limitations on such applicable ceiling referred to and defined in the Finance Code, and further subject to any right the Lender may have subsequently, under applicable law, to change the method of determining the Maximum Rate.

"Mortgages" means, collectively, the mortgages or deed of trust executed by the Borrowers to the Lender providing a Lien on all Real Property owned or leased by such Borrowers.

"Multiemployer Plan" means a multiemployer plan as defined in Section 4001(a)(3) of ERISA.

"Note" means the promissory note executed by the Borrowers payable to the Lender, in substantially the form of Exhibit A attached hereto, as same may be amended, extended or modified and all promissory notes executed in renewal, extension, modification or substitution thereof.

"Permitted Liens" means, with respect to any Person, (a) pledges or deposits by such Person under workmen's compensation laws, unemployment insurance laws or similar legislation, or good faith deposits in connection with bids, tenders, contracts (other than for the

payment of Indebtedness) or leases to which such Person is a party, or deposits to secure plugging and abandonment obligations or public or statutory obligations of such Person or deposits of cash or U.S. government bonds to secure surety or appeal bonds to which such Person is a party, or deposits as security for contested taxes or import duties or for the payment of rent, in each case incurred in the ordinary course of business; (b) Liens imposed by law, such as landlords', carriers', warehousemen's, mechanics', materialmen's, repairmen's, construction or other like Liens securing obligations that are not overdue by more than 30 days or that are being contested in good faith by appropriate proceedings or other Liens arising out of judgments or awards against such Person with respect to which such Person shall then be proceeding with an appeal or other proceedings for review; (c) Liens for taxes, assessments or other governmental charges not yet due or payable or that are being contested in good faith by appropriate proceedings and for which adequate reserves in accordance with GAAP shall have been set aside on its books; (d) Liens pursuant to partnership agreements, oil, gas and/or mineral leases, farm-out agreements, division orders, contracts for the sale, delivery, purchase, exchange, or processing of oil, gas and/or other hydrocarbons, unitization and pooling declarations and agreements, operating agreements, development agreements, area of mutual interest agreements, forward sales of oil, natural gas and natural gas liquids, and other agreements which are customary in the oil, gas and other mineral exploration, development and production business and in the business of processing of gas and gas condensate production for the extraction of products therefrom; (e) any easements, rights of way, restrictions, defects or other exceptions to title and other similar encumbrances incurred in the ordinary course of business which, in the aggregate, are not substantial in amount, are not incurred to secure Indebtedness, and which do not in any case materially detract from the value of the property subject thereto or interfere with the ordinary conduct of the businesses of the Borrowers; (f) Liens existing by operation of law that cannot be abrogated by contract for rights of setoff in a depository relationship with banks and non-negotiable contractual rights of setoff in customary documentation establishing a depository account with a bank, in each case, not granted in connection with the issuance of Indebtedness, and bankers Liens and rights and remedies as to deposit accounts, (g) Liens created under the Recharacterization Mortgages, and (h) Liens subordinate in all respects to Liens under the Loan Documents and the Secured Obligations if and to the extent expressly permitted by Section 7.06(d) of Fieldwood's Limited Liability Company Agreement to secure Indebtedness expressly permitted under Section 7.06(d) thereof and Section 6.01(ii) hereof.

"Permitted Surety Bonds" has the meaning given to such term in the Decommissioning Agreement.

"Person" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or other entity.

"Plan" means any employee pension benefit plan (other than a Multiemployer Plan) subject to the provisions of Title IV of ERISA or Section 412 of the Code or Section 302 of ERISA, and in respect of which any Co-Borrower or any ERISA Affiliate is (or, if such plan were terminated, would under Section 4069 of ERISA be deemed to be) an "employer" as defined in Section 3(5) of ERISA.

"Plan of Merger" means the Agreement and Plan of Merger of Fieldwood Energy LLC into Fieldwood Energy I LLC and Fieldwood Energy III LLC, dated as of [●], 2021, and adopted by Fieldwood Energy LLC.

"Projections" has the meaning assigned to such term in Section 3.09.

"PSA" has the meaning given to such term in the Decommissioning Agreement.

"Real Property" means all real property that was, is now, or may hereafter be owned, occupied, or otherwise controlled by any Co-Borrower pursuant to any contract of sale, lease or other conveyance of any legal interest in any real property to any Co-Borrower.

"Recharacterization Mortgages" has the meaning given to such term in the Decommissioning Agreement.

"Related Parties" means, with respect to any specified Person, such Person's Affiliates and the respective directors, officers, partners, members, trustees, employees, agents, administrators, managers, representatives and advisors of such Person and such Person's Affiliates.

"Related Party Agreement" means any agreement, arrangement, or understanding between or among any Co-Borrower or any of its Affiliates, on the one hand, and the independent director of Fieldwood, the sole manager of Fieldwood or any member or officer of any Co-Borrower or any of its Affiliates, or any Affiliate of the independent director of Fieldwood, the sole manager of Fieldwood or any member or officer of a Co-Borrower or any of its Affiliates, on the other.

"Release" means any releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, migrating, disposing, or dumping of any Hazardous Materials into the environment.

"Remaining Decommissioning" has the meaning given to such term in the Decommissioning Agreement.

"Requirement of Law" means, with respect to any Person, any statute, law (including common law), treaty, rule, regulation, code, ordinance, order, decree, writ, judgment, injunction or determination of any arbitrator or court or other Governmental Authority (including Environmental Laws), in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"Restricted Payment" means any dividend or other distribution (whether in cash, securities or other property) with respect to any Equity Interests, or any payment (whether in cash, securities or other property) including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any such Equity Interests or any option, warrant or other right to acquire any such Equity Interests.

"Restructuring Support Agreement" means the Restructuring Support Agreement, dated as of August 4, 2020, by and among (a) Fieldwood Energy LLC, a Delaware limited liability company, and including the Fieldwood PSA Parties (as defined therein); (b) the Consenting FLTL Lenders (as defined therein); (c) the Consenting SLTL Lenders (as defined therein); and (d) Lender.

"Sanctioned Country" means, at any time, a country or territory which is the subject or target of any Sanctions.

"Sanctioned Person" means, at any time, (a) any Person listed in any Sanctions-related list of designated Persons maintained by the Office of Foreign Assets Control of the U.S. Department of the Treasury or the U.S. Department of State, (b) any Person operating, organized or resident in a Sanctioned Country or (c) any Person controlled by any such Person.

"Sanctions" means economic or financial sanctions or trade embargoes imposed, administered or enforced from time to time by the U.S. government, including those administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury or the U.S. Department of State.

"Secured Obligations" means (a) all unpaid principal of and accrued and unpaid interest on the Loans, (b) all accrued and unpaid fees and all expenses, reimbursements, indemnities and other obligations and indebtedness (including interest and fees accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), (c) all costs and expenses, including all attorneys' fees and legal expenses, incurred by Lender to preserve and maintain the Collateral, collect the obligations described herein or described in the other Loan Documents, and enforce this Agreement, the Security Agreement, the Mortgage or any rights under any other Loan Documents, (d) the obligation to reimburse any amount that Lender (in its sole and absolute discretion) elects to pay or advance on behalf of any Co-Borrower following the occurrence of an Event of Default, (e) obligations and liabilities of the Borrowers to the Lender, any Secured Party or any indemnified party, individually or collectively, existing on the Effective Date or arising thereafter, direct or indirect, joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, secured or unsecured, arising by contract, operation of law or otherwise, in all cases arising or incurred under this Agreement, under any of the other Loan Documents, under the Decommissioning Agreement or in respect of any of the Loans made or any reimbursement or other obligations incurred under any of the foregoing, (f) all amounts owed under any extension, renewal, or modification of any of the foregoing and (g) any of the foregoing that arises after the filing of a petition by or against any Co-Borrower under the Bankruptcy Code, even if the obligations due do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise; in each case with respect to clauses (a) through (e) above, whether or not (i) such Secured Obligations arise or accrue before or after the filing by or against any Co-Borrower of a petition under the Bankruptcy Code, or any similar filing by or against any Co-Borrower under the laws of any jurisdiction, or any bankruptcy, insolvency, receivership or other similar proceeding, (ii) such Secured Obligations are allowable under Section 502(b)(2) of the Bankruptcy Code or under any other insolvency proceedings, (iii) the right of payment in respect of such Secured Obligations is reduced to judgment, or (iv) such Secured Obligations are liquidated, unliquidated, similar, dissimilar, related, unrelated, direct, indirect, fixed, contingent,

primary, secondary, joint, several, or joint and several, matured, disputed, undisputed, legal, equitable, secured, or unsecured.

"Secured Parties" means (a) the Lender, (b) Apache Shelf, Inc., Apache Deepwater LLC and Apache Shelf Exploration LLC, and (c) the successors and assigns of each of the foregoing.

"Security Agreement" means that certain Security Agreement (including any and all supplements thereto), dated as of the date hereof, among the Borrowers and the Lender, for the benefit of the Secured Parties, and any other pledge or security agreement entered into, after the date of this Agreement by any Co-Borrower (as required by this Agreement or any other Loan Document) or any other Person for the benefit of the Lender, on behalf of the Secured Parties, as the same may be amended, restated, supplemented or otherwise modified from time to time.

"Service Provider" means, collectively, any service provider hired by the sole manager of Fieldwood pursuant to Section 7.04 of the Limited Liability Company Agreement of Fieldwood to perform all operations and plugging and abandonment and decommissioning activities with respect to the Borrowers' properties or assets.

"subsidiary" means, with respect to any Person (the "parent") at any date, any corporation, limited liability company, partnership, association or other entity of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or, in the case of a partnership, more than 50% of the general partnership interests are, as of such date, owned, controlled or held by the parent or one or more subsidiaries of the parent or by the parent and one or more subsidiaries of the parent.

"Suspension Period" has the meaning given to such term in the Decommissioning Agreement.

"Taxes" means any and all present or future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, or other charges in the nature of a tax imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto.

"Texas Divided LLC" means any Texas LLC which has been formed upon consummation of a Texas LLC Division.

"Texas LLC" means any limited liability company organized or formed under the laws of the State of Texas.

"Texas LLC Division" means the statutory division of any Texas LLC into two or more Texas LLC's pursuant to the BOC.

"Transaction Documents" has the meaning given to such term in the Decommissioning Agreement.

"Transactions" means the execution, delivery and performance by the Borrowers of this Agreement and the other Loan Documents, the borrowing of Loans and the use of the proceeds thereof.

"<u>Trust A</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>Trust A Account</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>Trust A Funding Default</u>" means the Funding Default (as defined in the Decommissioning Agreement) in respect of January 2021 in the amount of [$50 million].

"<u>Trust A Funding Default Loan</u>" means a Loan in an amount up to and sufficient to cure the Trust A Funding Default.

"<u>Trust A NPI Conveyance</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>Trust A-1 NPI Conveyance</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>Trust A Trust Agreement</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>Turnkey Removal Contract</u>" has the meaning given to such term in the Decommissioning Agreement.

"<u>UCC</u>" means the Uniform Commercial Code as in effect from time to time in the State of Texas or in any other state, the laws of which are required to be applied in connection with the issue of perfection of security interests.

"<u>U.S.</u>" means the United States of America.

Section 1.02   <u>Terms Generally</u>.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "law" shall be construed as referring to all statutes, rules, regulations, codes and other laws (including official rulings and interpretations thereunder having the force of law or with which affected Persons customarily comply) and all judgments, orders and decrees of all Governmental Authorities.  The word "will" shall be construed to have the same meaning and effect as the word "shall".  Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, restated, supplemented or otherwise modified (subject to any restrictions on such amendments, restatements, supplements or modifications set forth herein), (b) any definition of or reference to any statute, rule or regulation shall be construed as referring thereto as from time to time amended, supplemented or otherwise modified (including by succession of comparable successor laws), (c) any reference herein to any Person shall be construed to include such Person's successors and assigns (subject to any restrictions on assignments set forth herein) and, in the case of any Governmental Authority, any other Governmental Authority that shall have

succeeded to any or all functions thereof, (d) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (e) all references herein to Articles, Sections, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Exhibits and Schedules to, this Agreement, (f) any reference in any definition to the phrase "at any time" or "for any period" shall refer to the same time or period for all calculations or determinations within such definition, and (g) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

Section 1.03   <u>Accounting Terms; GAAP</u>.   Except as otherwise expressly provided herein, all terms of an accounting or financial nature shall be construed in accordance with GAAP; <u>provided</u> that, if after the date hereof there occurs any change in GAAP or in the application thereof on the operation of any provision hereof and the Borrowers notify the Lender that the Borrowers request an amendment to any provision hereof to eliminate the effect of such change in GAAP or in the application thereof (or if the Lender notifies the Borrowers that the Lender requests an amendment to any provision hereof for such purpose), regardless of whether any such notice is given before or after such change in GAAP or in the application thereof, then such provision shall be interpreted on the basis of GAAP as in effect and applied immediately before such change shall have become effective until such notice shall have been withdrawn or such provision amended in accordance herewith.   Notwithstanding any other provision contained herein, all terms of an accounting or financial nature used herein shall be construed, and all computations of amounts and ratios referred to herein shall be made (a) without giving effect to any election under Financial Accounting Standards Board Accounting Standards Codification 825-10-25 (or any other Accounting Standards Codification or Financial Accounting Standard having a similar result or effect) to value any Indebtedness or other liabilities of the Borrowers at "fair value", as defined therein and (b) without giving effect to any treatment of Indebtedness in respect of convertible debt instruments under Financial Accounting Standards Board Accounting Standards Codification 470-20 (or any other Accounting Standards Codification or Financial Accounting Standard having a similar result or effect) to value any such Indebtedness in a reduced or bifurcated manner as described therein, and such Indebtedness shall at all times be valued at the full stated principal amount thereof.

<div align="center">ARTICLE II</div>

<div align="center"><u>The Advances</u></div>

Section 2.01   <u>Loans; Commitment Increase</u>.

(a)   Subject to the terms and conditions set forth herein, the Lender agrees to make one or more revolving loans to the Borrowers from time to time during the Availability Period in an aggregate principal amount at any time outstanding up to but not exceeding the Commitment. The Lender shall have no obligation to make any Loan if a Default or Event of Default has occurred and is continuing.   Within the foregoing limits and subject to the terms and conditions set forth herein, the Borrowers may borrow, prepay and reborrow hereunder.

<div align="center">14</div>

(b)      At any time prior to the Maturity Date, the Borrowers, acting jointly, may request an increase in the Commitment (the "Commitment Increase"); provided that the Commitment Increase shall be subject to Lender's approval and satisfaction of each of the following conditions, all in Lender's sole discretion: (i) the Commitment Increase shall not cause the Commitment to exceed $400,000,000, (ii) at the time of such request and on the effective date of the Commitment Increase, both before and after giving effect thereto, no Default or Event of Default shall exist, (iii) the Borrowers shall deliver to Lender a joint written request for the Commitment Increase at least ten (10) Business Days prior to the desired effective date thereof, and (iv) together with such request, Borrowers shall deliver (A) a certificate of the Manager of each Co-Borrower stating that (1) the representations and warranties of such Co-Borrower contained in the Loan Documents are true and correct as though made on and as of the effective date of such Commitment Increase (it being understood and agreed that any representation or warranty which by its terms is made as of a specified date shall be required to be true and correct only as of such specified date, and (2) on the effective date of the Commitment Increase and after giving effect thereto, no Default or Event of Default shall have occurred and be continuing, and (B) resolutions of each Co-Borrower authorizing the Commitment Increase, in form and substance reasonably satisfactory to Lender.   Upon Lender's approval of the Commitment Increase in its sole discretion, satisfaction of each of the foregoing conditions in Lender's sole discretion, and delivery to Lender of a duly executed amended and restated Revolving Note in the amount of the Commitment (upon giving effect to the Commitment Increase), the Commitment Increase shall become effective.

Section 2.02    The Note.  The obligation of the Borrowers to repay the Loans shall be evidenced by the Note executed by the Borrowers, payable to the Lender, in the principal amount of the Commitment.

Section 2.03    Borrowing Procedures; Requests for Borrowings.  To request a Loan, any Co-Borrower shall notify the Lender of such request in writing (delivered by hand, fax or e-mail) in the form attached hereto as Exhibit B and signed by such Co-Borrower not later than 10:00 a.m., Houston time, five (5) Business Days before the date of the proposed Loan.  Each such Borrowing Request shall be irrevocable.  Each such written Borrowing Request shall specify the following information:

(a)      the aggregate amount of the requested Loan, which amount shall be consistent with the applicable Borrowing Package;

(b)      the date of such Loan, which shall be a Business Day; and

(c)      the aggregate principal amount of all Loans then outstanding.

Section 2.04    Funding of Borrowings.  The Lender shall make each Loan to be made by it hereunder on the proposed date thereof available to the requesting Co-Borrower by wire transfer to the Funding Account.

Section 2.05    Repayment of Loans.

(a)     Borrowers, jointly and severally, hereby unconditionally promises to pay the Lender the then unpaid principal amount of each Loan on the Maturity Date.

(b)     Repayments of Loans shall be accompanied by accrued interest on the amounts repaid.

Section 2.06   Prepayment of Loans.

(a)     The Borrowers shall have the right at any time and from time to time to prepay any Loan in whole or in part, without penalty or premium.

(b)     Within five (5) Business Days after the quarterly financial statements have been delivered pursuant to Section 5.01(b), the Borrowers shall prepay the Loans in an amount equal to 100% of Excess Cash Flow for the immediately preceding fiscal quarter.  Each Excess Cash Flow payment shall be accompanied by a certificate signed by the Manager certifying the manner in which Excess Cash Flow and the resulting prepayment were calculated, which certificate shall be in form and substance reasonably satisfactory to Lender.

Section 2.07   Interest.

(a)     Each Loan shall bear interest at a rate per annum equal to the applicable Apache Bond Rate plus 4%.  Following receipt of any Borrowing Request, Lender shall promptly notify Borrowers of the Apache Bond Rate that will be applicable to the requested Loan.

(b)     Notwithstanding the foregoing, during the occurrence and continuance of an Event of Default, the Lender may, at its option, by notice to the Borrowers, declare that all Loans shall bear interest at a rate per annum equal to 2% plus the rate otherwise applicable to such Loans as provided in the preceding paragraph of this Section.

(c)     All accrued unpaid interest on each Loan shall be payable semiannually on January 31st and July 31st of each year during the term of this Agreement (unless such date is not a Business Day in which the payment is due on the next succeeding Business Day) and on the Maturity Date, with the first installment of interest due and payable on the first such date following the making of the initial Loan hereunder until the principal amount of each such Loan is paid in full.  Notwithstanding the forgoing, interest accrued pursuant to paragraph (b) of this Section shall be payable on demand and in the event of any repayment or prepayment of any Loan, accrued interest on the principal amount repaid or prepaid shall be payable on the date of such repayment or prepayment.

(d)     All interest hereunder shall be computed on the basis of a year of 365 days (or 366 days in a leap year), and shall be payable for the actual number of days elapsed (including the first day but excluding the last day).

Section 2.08   Payments Generally; Allocation of Proceeds.

(a)     Each Borrower shall make each payment required to be made by it hereunder (whether of principal, interest, fees, or otherwise) prior to 5:00 p.m., Houston time, on the date when due, in immediately available funds, without set-off or counterclaim, and each Borrower

shall be jointly and severally liable for all such payment obligations. Any amounts received after such time on any date may, in the discretion of the Lender, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon. All such payments shall be made to the Lender to such account as the Lender shall from time to time specify in a notice to the Borrowers. If any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension. All payments hereunder shall be made in dollars.

(b)     Any proceeds of Collateral received by the Lender after an Event of Default has occurred and is continuing and if the Lender so elects, such funds shall be applied ratably <u>first</u>, to pay any fees, indemnities, or expense reimbursements including amounts then due to the Lender, in its capacity as such, from the Borrowers, <u>second</u>, to pay interest then due and payable on the Loans ratably, <u>third</u>, to prepay principal on the Loans, and <u>fourth</u>, to the payment of any other Secured Obligation due to the Secured Parties from the Borrowers, and <u>finally</u>, to the Borrowers or otherwise as required by law or court order. The Lender shall have the continuing and exclusive right to apply and reverse and reapply any and all proceeds and payments received pursuant to the first sentence of this clause (b) to any portion of the Secured Obligations.

Section 2.09   <u>Indemnity for Returned Payments</u>. If after receipt of any payment which is applied to the payment of all or any part of the Secured Obligations (including a payment effected through exercise of a right of setoff), the Lender is for any reason compelled to surrender such payment or proceeds to any Person because such payment or application of proceeds is invalidated, declared fraudulent, set aside, determined to be void or voidable as a preference, impermissible setoff, or a diversion of trust funds, or for any other reason (including pursuant to any settlement entered into by the Lender in its discretion), then the Secured Obligations or part thereof intended to be satisfied shall be revived and continued and this Agreement shall continue in full force as if such payment or proceeds had not been received by the Lender. The provisions of this <u>Section 2.09</u> shall be and remain effective notwithstanding any contrary action which may have been taken by the Lender in reliance upon such payment or application of proceeds. The provisions of this <u>Section 2.09</u> shall survive the termination of this Agreement.

<div align="center">ARTICLE III</div>

<div align="center"><u>Representations and Warranties</u></div>

To induce Lender to enter into this Agreement, each Co-Borrower represents and warrants to the Lender that:

Section 3.01   <u>Organization; Powers</u>. Each Co-Borrower (i) is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, (ii) has all requisite power and authority to carry on its business as now conducted and is qualified to do business in, and (iii) is in good standing in every jurisdiction where such qualification is required.

Section 3.02    Authorization; Enforceability.    The Transactions are within each Co-Borrower's organizational powers and have been duly authorized by all necessary organizational actions and, if required, actions by equity holders.  Each Loan Document to which such Co-Borrower is a party has been duly executed and delivered by such Co-Borrower and constitutes a legal, valid and binding obligation of such Co-Borrower, enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

Section 3.03    Governmental Approvals; No Conflicts.    The Transactions (a) do not require any consent or approval of, registration or filing with, or any other action by, any Governmental Authority, except such as have been obtained or made and are in full force and effect and except for filings necessary to perfect Liens created pursuant to the Loan Documents, (b) will not violate such Co-Borrower's organizational documents or any Requirement of Law applicable to such Co-Borrower, (c) will not violate or result in a default under any indenture, agreement or other instrument binding upon a Co-Borrower or the assets of such Co-Borrower, or give rise to a right thereunder to require any payment to be made by such Co-Borrower, and (d) will not result in the creation or imposition of any Lien on any asset of such Co-Borrower, except Liens created pursuant to the Loan Documents.

Section 3.04    Properties.

(a)    As of the date of this Agreement, Schedule 3.04(a) sets forth the address of each parcel of Real Property that is owned or leased by any Co-Borrower.  Each of the leases and subleases listed on Schedule 3.04(a) is valid and enforceable in accordance with its terms and is in full force and effect, and no default by any party to any such lease or sublease exists.  Each Co-Borrower has good and indefeasible title to, or valid leasehold interests in, all of its real and personal property.

(b)    Each Co-Borrower owns, or is licensed to use, all trademarks, tradenames, copyrights, patents and other intellectual property necessary to its business as currently conducted, a correct and complete list of which, as of the date of this Agreement, is set forth on Schedule 3.04(b), and the use thereof by such Co-Borrower does not infringe in any material respect upon the rights of any other Person, and each Co-Borrower's rights thereto are not subject to any licensing agreement or similar arrangement.

Section 3.05    Litigation and Environmental Matters.

(a)    Except as disclosed to the Lender in writing, there are no actions, suits or proceedings by or before any arbitrator or Governmental Authority pending against or to the knowledge of any Co-Borrower, threatened against or affecting such Co-Borrower or  that involve any Loan Document or the Transactions.

(b)    Except as disclosed to the Lender in writing, no Co-Borrower (1) has received notice of any claim with respect to any Environmental Liability or knows of any basis for any Environmental Liability, and (2) no Co-Borrower (i) has failed to comply with any Environmental Law or to obtain, maintain or comply with any permit, license or other approval

required under any Environmental Law or (ii) has become subject to any Environmental Liability, except, in the case of each of (1) and (2)(i) and (ii), as would not reasonably be expected to have a Material Adverse Effect.

Section 3.06   Compliance with Laws and Agreements; No Default.  Except as disclosed to the Lender in writing, each Co-Borrower is in compliance in all material respects with all Requirements of Law applicable to it or its property, except for Decommissioning obligations for which Lender has received notice of such Co-Borrower's non-compliance from the applicable Governmental Authority. No Default has occurred and is continuing.

Section 3.07   Taxes.  Each Co-Borrower has timely filed or caused to be filed all income and other material Tax returns and reports required to have been filed and has paid or caused to be paid all income and other material Taxes required to have been paid by it, except Taxes that are not yet delinquent or that are being contested in good faith by appropriate proceedings and for which adequate reserves in accordance with GAAP shall have been set aside by such Co-Borrower on its books.  No Tax liens have been filed on the assets of any Co-Borrower, and no claims are being asserted in writing by any Governmental Authority with respect to any unpaid Taxes of such Co-Borrower (other than those being contested in good faith by appropriate proceedings).

Section 3.08   ERISA.   No Co-Borrower nor any ERISA Affiliate maintains or contributes to, or has any obligation under, any Plan.

Section 3.09   Disclosure.   The reports, financial statements, certificates and other information (other than forward-looking information (the "Projections") or information of a general economic or industry specific nature) furnished in writing by or on behalf of the Borrowers to the Lender in connection with the negotiation of this Agreement or any other Loan Document (as modified or supplemented by other information so furnished), taken as a whole, do not contain any material misstatement of fact or omit to state any material fact necessary to make the statements therein, taken as a whole, in the light of the circumstances under which they were made, not materially misleading; provided that, with respect to Projections, the Borrowers represent only that such information was prepared in good faith based upon assumptions believed to be reasonable at the time delivered.

Section 3.10   Material Contracts.   No Co-Borrower is in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any Material Contract (excluding any default resulting from such Co-Borrower's failure to comply with the reimbursement obligations in Section 2.7 of the Decommissioning Agreement). Except as disclosed on Schedule 3.10, no Co-Borrower is obligated by more than (i) $100,000 under any individual contract, commitment, or other liability or obligation or (ii) $500,000 in the aggregate under all such contracts, commitments, liabilities, or obligations, and in the case of (i) and (ii), excluding Material Contracts, this Agreement, and any other contract to which Co-Borrower is a party or by which it or its properties are bound and which was entered into in the ordinary course of business, is not material to Co-Borrower, and will not adversely affect its ability to perform its obligations under the Loan Documents.

Section 3.11   Insurance.   Schedule 3.11 sets forth a description of all insurance maintained by or on behalf of the Borrowers as of the Effective Date.  As of the Effective Date, all premiums in respect of such insurance have been paid.  Each Co-Borrower believes that the insurance maintained by it is adequate and is customary for companies engaged in the same or similar businesses operating in the same or similar locations.

Section 3.12   Security Interest in Collateral.  The provisions of this Agreement and the other Loan Documents create legal and valid Liens on all the Collateral in favor of the Lender and such Liens constitute (or will constitute upon completion of the filings and other actions required pursuant to the Loan Documents) perfected and continuing Liens on the Collateral to the extent required to be perfected pursuant to the Loan Documents, securing the Secured Obligations, (a) enforceable against the Borrowers and all third parties in accordance with the terms hereof and thereof, subject only to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law, and (b) having priority over all other Liens (other than Permitted Liens) on the Collateral.

Section 3.13   Use of Proceeds.  The proceeds of the Loans have been used and will be used, whether directly or indirectly as set forth in Section 5.08.

Section 3.14   Anti-Corruption Laws and Sanctions.  Each Co-Borrower is in compliance with Anti-Corruption Laws and applicable Sanctions in all material respects.  No Borrowing, use of proceeds, Transaction or other transaction contemplated by this Agreement or the other Loan Documents will violate Anti-Corruption Laws or applicable Sanctions.

Section 3.15   Affiliate Transactions.  Other than any transaction permitted pursuant to Section 6.09, there are no existing or proposed agreements, arrangements, understandings or transactions between or among any Co-Borrower and any Affiliates of a Co-Borrower, or between or among any Affiliate of a Co-Borrower or any subsidiary of any Co-Borrower.

Section 3.16   Solvency.  The fair market value of each Co-Borrower's assets exceeds, and after giving effect to each Loan will exceed, such Co-Borrower's total liabilities (including subordinated, liquidated, unliquidated, disputed, and contingent liabilities and commitments excepting only asset retirement obligations). The fair saleable value of each Co-Borrower's property exceeds, and after giving effect to each Loan will exceed, the amount required to pay its debts and other liabilities (including subordinated, liquidated, unliquidated, disputed, and contingent liabilities and commitments excepting only asset retirement obligations) as such debts and other liabilities mature.  Each Co-Borrower is, and after giving effect to each Loan will be, able to pay its debts and liabilities (including subordinated, liquidated, unliquidated, disputed, and contingent liabilities and commitments excepting only asset retirement obligations) as such debts and other liabilities mature.  Each Co-Borrower's assets do not, after giving effect to each Loan will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted, excluding only asset retirement obligations from such determination. For purposes of this Section, each reference to asset retirement obligations mean those which would be reflected on a balance sheet conforming with the requirements of Section 5.01 hereof.

ARTICLE IV

Conditions

Section 4.01   Effective Date.  The obligations of the Lender to make Loans hereunder shall not become effective until the date on which each of the following conditions is satisfied (or waived in accordance with Section 8.02) and, subject thereto, shall become effective simultaneously with confirmation of the plan of reorganization pursuant to the Confirmation Order:

(a)   Credit Agreement and Loan Documents.  The Lender (or its counsel) shall have received (i) a counterpart of this Agreement signed by the Borrowers and (ii) duly executed copies of the other Loan Documents in form and substance satisfactory to Lender.

(b)   Certificates; Certified Certificate of Incorporation; Good Standing Certificates.  The Lender shall have received (i) a certificate of each Co-Borrower, dated the Effective Date and executed by an authorized Person of such Co-Borrower, which shall (A) certify the resolutions adopted by written consent of the Manager of such Co-Borrower authorizing the execution, delivery and performance of the Loan Documents to which it is a party, (B) identify by name and title and bear the signature of each Person authorized to sign on behalf of such Co-Borrower the Loan Documents to which it is a party, and (C) contain appropriate attachments, including the Divisive Merger Documents certified by the Texas Secretary of State and a true and correct copy of its limited liability company agreement, and (ii) a certificate of fact for of such Co-Borrower from the Texas Secretary of State.

(c)   Manager's Certificate.  The Lender shall have received a certificate, signed by the Manager or other appropriately authorized Person of each Co-Borrower, dated as of the Effective Date (i) stating that no Default has occurred and is continuing, and (ii) stating that the representations and warranties contained in the Loan Documents are true and correct as of such date.

(d)   Fees and Expenses.  The Lender shall have received all fees required to be paid and all expenses required to be reimbursed for which invoices have been submitted on or prior to the Effective Date (including the reasonable fees and expenses of legal counsel).

(e)   Confirmation Order.  The Lender or its counsel shall have received a signed copy of the Confirmation Order and notice that the effective date of the plan of reorganization contained therein has occurred.

(f)   Lien Releases.  The Lender shall have received satisfactory evidence that all Liens granted upon any of the property of the Borrowers constituting Collateral (other than Permitted Liens) are terminated as of the Effective Date.

(g)   Funding Account.  The Lender shall have received a notice setting forth the deposit account of each Co-Borrower (each a "Funding Account", collectively, the "Funding Accounts") to which the Lender is authorized by such Co-Borrower to transfer the proceeds of any Borrowings requested or authorized pursuant to this Agreement.

21

(h)     Control Agreements.  The Lender shall have received deposit account control agreements for the Funding Accounts and each operating account of Borrowers required to be provided pursuant to the Security Agreement.

(i)     Filings, Registrations and Recordings.  Each document (including any Uniform Commercial Code financing statement) required by the Collateral Documents or under law or reasonably requested by the Lender to be filed, registered or recorded in order to create in favor of the Lender, for the benefit of the Secured Parties, a perfected Lien on the Collateral described therein, prior and superior in right to any other Person (other than with respect to Liens expressly permitted by Section 6.02), shall be in proper form for filing, registration or recordation.

(j)     Insurance.  The Lender shall have received evidence of insurance coverage in form, scope, and substance reasonably satisfactory to the Lender and otherwise in compliance with the terms of Section 5.10 of this Agreement.

(k)     [Intentionally Blank]

(l)     Capitalization.  Lender shall have received written evidence, in form and substance satisfactory to Lender, that the capitalization funds received by the Borrowers upon their formation in the amount of $50,000,000 has been fully utilized under the Decommissioning Plan during the bankruptcy of the Debtor or any unused amount has been funded to the Funding Account.

(m)     Material Contracts.  Lender shall have received copies of all Material Contracts.

(n)     Financial Information.  The Lender shall have received (i) an unaudited consolidated balance sheet of Borrowers and their subsidiaries as of the Effective Date and (ii) historical lease operating statements for the assets of each Co-Borrower and its subsidiaries for each month during the 24-month period immediately preceding the Effective Date, and in the case of (i) and (ii), in form and substance reasonably satisfactory to Lender and after giving effect to the divisive merger that is part of the plan of reorganization confirmed by the Confirmation Order.

(o)     Other Documents.  The Lender shall have received such other documents as the Lender or its counsel may have reasonably requested, including a customary written opinion or opinions of the Borrowers' counsel as to due authorization, execution and delivery, and enforceability of the Loan Documents and perfection of the security interests granted thereby, addressed to the Lender, in form and substance satisfactory to the Lender, and rendered by Weil Gotshal & Manges LLP or a comparable law firm satisfactory to Lender.

The Lender shall notify the Borrowers of the Effective Date, and such notice shall be conclusive and binding.

Section 4.02   Each Credit Event.  The obligation of the Lender to make (i) each Loan under Article II hereof (other than a Trust A Funding Default Loan) is subject to the satisfaction of the following conditions and (ii) the Trust A Funding Default Loan is subject to the satisfaction of the following conditions except conditions (c), (e), (k), and (l):

(a)     The representations and warranties of each Co-Borrower set forth in the Loan Documents shall be true and correct with the same effect as though made on and as of the date of such Borrowing (it being understood and agreed that any representation or warranty which by its terms is made as of a specified date shall be required to be true and correct only as of such specified date.

(b)     At the time of and immediately after giving effect to such Loan, no Default shall have occurred and be continuing.

(c)     All amounts in the Trust A Account, the Letters of Credit, and the Permitted Surety Bonds have been fully exhausted or are not available to pay or reimburse Lender for Decommissioning.

(d)     The Decommissioning Agreement is in full force and effect, has not been terminated and has become the obligation of the Borrowers under the Confirmation Order and/or the Divisive Merger Documents.

(e)     Other than any Co-Borrower's failure to comply with the reimbursement obligations in Section 2.7 of the Decommissioning Agreement, there are no uncured events that constitute or would result in the nonperformance, default, or breach by any Co-Borrower under the Decommissioning Agreement.

(f)     Since the Effective Date, none of the events set forth in Article VII of the Decommissioning Agreement have occurred, nor has any Co-Borrower assigned, conveyed, sold, farmed out or otherwise transferred any of the Leases other than with respect to (i) farmout transactions consummated in accordance with Section 7.06 of the Limited Liability Company Agreement of Fieldwood and (ii) conveyances or other transfers consummated in accordance with the JOA or Farmout Agreement.

(g)     Since the Effective Date, no Co-Borrowers has received cash from the Trust A Account, including, but not limited to, pursuant to Section 4.3(b) and Section 4.5 of the Decommissioning Agreement.

(h)     Since the Effective Date, no Co-Borrowers has caused a reduction in the LC Drawing Amount, including, not limited to, pursuant to Section 4.3(b) of the Decommissioning Agreement.

(i)     A Suspension Period shall not have commenced and be continuing.

(j)     Lender has received a copy of the Decommissioning Contract, in form and substance satisfactory to the Lender, for the Decommissioning to be funded with a borrowing, together with a schedule showing (i) all subcontracts awarded as of the Borrowing Request, including names, types of work, subcontract amounts and percentage retainage provided in said subcontracts, (ii) the amount of general conditions and an estimate of value for each subcontract not awarded as of such date, and (iii) a total overall schedule of value.

23

(k)     Lender shall have received the following in form and substance reasonably satisfactory to Lender (collectively, a "Borrowing Package", together with any amendments, modifications or supplements of the same) at least ten (10) Business Days prior to the date of the requested Loan (which, for the avoidance of doubt, may be submitted in advance of the identification of a proposed borrowing date):

(i)     a certification from Borrowers in favor of Lender that (i) the Decommissioning to be made with the proceeds of a proposed Borrowing Request is contemplated by the Decommissioning Plan then in effect (both as to amount of such requested Loan and as to the timing of such requested Loan), (ii) that the proposed use of the proceeds therefrom is for cost and expenses in compliance with the Decommissioning Plan then in effect and (iii) Borrowers shall have sufficient funds (on a pro forma basis (reasonably projected, on a good faith basis) after giving effect to the Loan requested) to pay all accrued interest due under Section 2.07(c) for the following six (6) month period;

(ii)     a certification from the Contractor in the form acceptable to Lender with respect to the requested Loan, detailing the Decommissioning covered or to be covered by the Borrowing, itemizing any estimated costs and expenses of such Decommissioning and/or including copies of invoices itemizing costs and expenses incurred with respect to such Decommissioning, as applicable;

(iii)     partial lien waivers or releases of lien for all lienable work done and materials delivered with respect to such Decommissioning covered in the request, to the extent applicable (for purposes of clarity, this only applies to work performed prior to the date of the Borrowing Package);

(iv)     to the extent not previously delivered to Lender, copies of all permits, orders, certificates, licenses and approvals required under applicable Requirements of Law for the Decommissioning (collectively, the "Required Approvals") as of the date of the requested Loan and copies of all subcontracts; *provided, however*, with respect to any Required Approvals that have not been issued as of the date of submission of a Borrowing Package, Co-Borrower shall include with the Borrowing Package Co-Borrower's certification and covenant in form and substance reasonably satisfactory to Lender that (i) Co-Borrower has received from the applicable Governmental Authority indication that such Required Approvals will be issued to Co-Borrower, specifying the expected time of issuance thereof, (ii) Co-Borrower diligently shall pursue such Required Approvals, and (iii) Co-Borrower promptly shall deliver to Lender copies of such Required Approvals upon receipt thereof; *provided further, however*, Lender shall have discretion to decline any Borrowing Request that is not preceded or accompanied by copies of all Required Approvals; and

(v)     such additional documentation reasonably requested by Lender.

(l)     Decommissioning Plan.   Lender and Borrowers shall have agreed to a decommissioning plan in form and substance reasonably acceptable to Lender (the "Decommissioning Plan").

24

ARTICLE V

Affirmative Covenants

Until the Commitment shall have expired or been terminated and the principal of and interest on each Loan and all fees payable hereunder shall have been paid in full, in each case without any pending draw, each Co-Borrower covenants and agrees with the Lender that:

Section 5.01   Financial Statements and Other Information.  Fieldwood will furnish to the Lender:

(a)      within 105 days after the end of each fiscal year, its audited consolidated balance sheet and related consolidated statements of operations, members' equity and cash flows as of the end of and for such year prepared under AICPA auditing standards, setting forth in each case in comparative form the figures for the previous fiscal year, all reported on by independent public accountants acceptable to the Lender (without a "going concern" or like qualification, commentary, or exception (except to the extent that any such qualification, commentary, or exception expressly indicates that after giving effect to the exclusion of asset retirement obligations reflected on the accompanying balance sheet, there would be no such qualification, commentary, or exception), and without any qualification or exception as to the scope of such audit) to the effect that such consolidated financial statements present fairly in all material respects the consolidated financial condition and results of operations of the Borrowers in accordance with GAAP consistently applied;

(b)      within 50 days after the end of each of its fiscal quarters (including the fourth quarter), its consolidated balance sheet and related consolidated statements of operations, members' equity and cash flows as of the end of and for such fiscal quarter and the then elapsed portion of such fiscal year, setting forth in each case in comparative form the figures for the corresponding period or periods of (or, in the case of the balance sheet, as of the end of) the previous fiscal year, all certified by Fieldwood as presenting fairly in all material respects the consolidated financial condition and results of operations of the Borrowers in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes;

(c)      concurrently with any delivery of financial statements under clause (a) or (b) above (collectively or individually, as the context requires, the "Financial Statements"), a certificate of the Manager of Fieldwood in substantially the form of Exhibit C (the "Compliance Certificate") (i)  certifying as to whether a Default has occurred and, if a Default has occurred, specifying the details thereof and any action taken or proposed to be taken with respect thereto, and (ii) to the extent any Loan has been advanced hereunder, certifying that Borrowers have sufficient funds to pay all accrued interest due under Section 2.07(c) for the following six (6) month period;

(d)      as soon as available, but in any event no later than 60 days after the end of each fiscal year, commencing with the fiscal year ending December 31, 2021, a detailed operating budget for the next fiscal year forecasting revenue, operating costs, and capital expenses for each fiscal quarter in form reasonably satisfactory to the Lender;

(e)      as soon as available, but in no event later than 15 Business Days after the end of each calendar month, a statement in a form reasonably satisfactory to Lender showing all operating data including operating expenses and revenue for each Co-Borrower for such calendar month; and

(f)      promptly following any request therefor, such other information regarding the operations, business affairs and financial condition of each Co-Borrower, or compliance with the terms of this Agreement, as the Lender may reasonably request, including, without limitation, Decommissioning cost estimates and calculations.

Section 5.02   Notices of Material Events.  Each Co-Borrower will furnish to the Lender prompt (but in any event within five (5) Business Days) after each Co-Borrower obtains knowledge thereof) written notice of the following:

(a)      the occurrence of any Default;

(b)      receipt of any notice of any investigation by a Governmental Authority or any litigation or proceeding commenced or threatened against any Co-Borrower that (i) seeks damages in excess of $250,000, (ii) alleges criminal misconduct by any Co-Borrower, (iii) alleges the violation of, or seeks to impose remedies under any Environmental Law or related Requirement of Law, or seeks to impose Environmental Liability, or (iv) asserts liability on the part of any Co-Borrower in excess of $250,000 in respect of any tax, fee, assessment, or other governmental charge; or

(c)      a breach by any Co-Borrower of any covenant under the Decommissioning Agreement (other than Borrowers' failure to comply with the reimbursement obligations in Section 2.7 of the Decommissioning Agreement); provided that, if a written notice of such breach has been given to Lender in connection with the Decommissioning Agreement, such notice shall not be required to be provided under this Section 5.02.

Each notice delivered under this Section shall be accompanied by a statement of the applicable authorized Person of each Co-Borrowers setting forth the details of the event or development requiring such notice and any action taken or proposed to be taken with respect thereto.

Section 5.03   Existence; Conduct of Business.  Each Co-Borrower will (a) do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and the rights, qualifications, licenses, permits, franchises, governmental authorizations, intellectual property rights, licenses and permits material to the conduct of its business, and maintain all requisite authority to conduct its business in each jurisdiction in which its business is conducted and (b) carry on and conduct its business in substantially the same manner and in substantially the same fields of enterprise as it is presently conducted.

Section 5.04   Payment of Obligations.  Each Co-Borrower will pay or discharge all other material liabilities and obligations, including Taxes, before the same shall become delinquent or in default, except those which are being contested by Borrowers in good faith by appropriate proceedings and for which adequate reserves in accordance with GAAP shall have been set aside on its books.

Section 5.05   <u>Maintenance of Properties</u>.  The Borrowers will keep and maintain all property material to the conduct of its business in good working order and condition, ordinary wear and tear and performance of its obligations under the Decommissioning Agreement excepted; provided, however, that nothing in this Agreement shall provided, however, that nothing in this Agreement shall prevent the Borrowers from relinquishing or allowing any Leases to expire or terminate, in each case in the ordinary course of the Borrowers' business.

Section 5.06   <u>Books and Records; Inspection Rights</u>.  Each Co-Borrower will (a) keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its business and activities and (b) permit any representatives designated by the Lender (including employees of the Lender or any consultants, accountants, lawyers, agents and appraisers retained by the Lender), upon reasonable prior notice, during normal business hours, to visit and inspect its properties, conduct at such Co-Borrower's premises field examinations of such Co-Borrower's assets, liabilities, books and records, including examining and making extracts from its books and records, and to discuss its affairs, finances and condition with its officers and independent accountants, all at such reasonable times, as often as reasonably requested at the Borrowers' expense.

Section 5.07   <u>Compliance with Laws and Material Contractual Obligations</u>.  Each Co-Borrower will (a) comply with each Requirement of Law applicable to it or its property (including, without limitation, Environmental Laws) in all material respects and (b) perform in all material respects its obligations under material agreements to which it is a party.  Each Co-Borrower will enforce policies and procedures designed to ensure compliance by such Co-Borrower, and its directors, officers, employees and agents with Anti-Corruption Laws and applicable Sanctions.

Section 5.08   <u>Use of Proceeds</u>.

(a)     The proceeds of the Loans (except the Trust A Funding Default Loan) will be used only for payment or reimbursement of costs associated with plugging, facility and well removal and abandonment, and other actions permitted or required by the Decommissioning Agreement.  The proceeds of the Trust A Funding Default Loan will be used only to fund Trust A.

(b)     No Co-Borrower will request or use any Borrowing and shall procure that its directors, officers, employees and agents shall not use, the proceeds of any Borrowing (i) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any Anti-Corruption Laws, (ii) for the purpose of funding, financing or facilitating any activities, business or transaction of or with any Sanctioned Person, or in any Sanctioned Country or (iii) in any manner that would result in the violation of any Sanctions applicable to any party hereto.

Section 5.09   <u>Accuracy of Information</u>.  Each Co-Borrower will ensure that, other than the Projections described below, any information, including financial statements or other documents, material to the Loan Documents or the transactions contemplated thereby, furnished in writing to the Lender by the Manager of such Co-Borrower in connection with this Agreement or any other Loan Document or any amendment or modification hereof or thereof or waiver

27

hereunder or thereunder contains no material misstatement of fact or omits to state any material fact, in each case necessary to make the statements therein, in the light of the circumstances under which they were made and taken as a whole, not misleading; <u>provided</u> that, with respect to the Projections, each Co-Borrower will cause the Projections to be prepared in good faith based upon assumptions believed to be reasonable at the time.

Section 5.10   <u>Insurance</u>.  Each Co-Borrower will maintain with financially sound and reputable carriers having a financial strength rating of at least A- by A.M. Best Company (a) insurance in such amounts (with no greater risk retention) and against such risks and such other hazards, as is customarily maintained by companies of established repute engaged in the same or similar businesses operating in the same or similar locations and (b) all insurance required pursuant to the Collateral Documents.  Each Co-Borrower will furnish to the Lender information in reasonable detail as to the insurance so maintained.

Section 5.11   <u>Further Assurances</u>.  Each Co-Borrower will execute and deliver such further instruments as may be reasonably requested by Lender to carry out the provisions and purposes of this Agreement and the other Loan Documents and to preserve and perfect the Liens of Lender in the Collateral.

<div align="center">ARTICLE VI</div>

<div align="center"><u>Negative Covenants</u></div>

Until the Commitment shall have expired or been terminated and the principal of and interest on each Loan and all fees, expenses and other amounts payable under any Loan Document shall have been paid in full, each Co-Borrower covenants and agrees with the Lender that:

Section 6.01   <u>Indebtedness</u>.  No Co-Borrower will create, incur, assume or suffer to exist any Indebtedness, except (i) the Secured Obligations and (ii) when there is no Default and no Default would result therefrom, Indebtedness subordinate in all respects to Indebtedness under the Loan Documents and the Secured Obligations if and to the extent permitted by Section 7.06(d) of Fieldwood's Limited Liability Company Agreement.

Section 6.02   <u>Liens</u>.  No Co-Borrowers will create, incur, assume or permit to exist any Lien on any property or asset now owned or hereafter acquired by it, or assign or sell any income or revenues (including Accounts) or rights in respect of any thereof, except for Permitted Liens.

Section 6.03   <u>Fundamental Changes</u>.

(a)      No Co-Borrower will enter into a fundamental business transaction (as defined in the BOC) including a merger, consolidation, interest exchange, conversion or sale of all or substantially all of such Co-Borrower's Real Property or other assets (including, in each case, pursuant to a Texas LLC Division).

(b)      No Co-Borrower will wind-up, dissolve, liquidate, or terminate or initiate any bankruptcy, insolvency or similar proceeding.

<div align="center">28</div>

(c)      No Co-Borrower will file any motion seeking to amend, modify or alter, in any way, the Confirmation Order.

(d)      No Co-Borrower will (i) revoke any voluntary decision to wind-up or cancel the required winding up of such Co-Borrower due to an event specified in Section 11.051 of the BOC or (ii) reinstate such Co-Borrower after termination.

(e)      No Co-Borrower will (i) conduct or be involved in any business or operations other than operating or plugging and abandoning and decommissioning the Legacy Apache Properties or the GOM Shelf Properties or (ii) engage in any activity or take any action with respect to its properties or assets, other than in the ordinary course of business.

(f)      No Co-Borrower will change its fiscal year or any fiscal quarter from the basis in effect on the date hereof.

(g)      No Co-Borrowers will change the accounting basis upon which its financial statements are prepared.

Section 6.04      <u>Investments, Loans, Advances, Guarantees and Acquisitions</u>.  No Co-Borrower will form any subsidiary or enter into any joint venture or similar business arrangement after the date hereof, or purchase, hold or acquire any Equity Interests, evidences of Indebtedness or other securities (including any option, warrant or other right to acquire any of the foregoing) of, make or permit to exist any loans, advances or capital contributions to, Guarantee (except for the Borrower Guarantees) any obligations of, or make or permit to exist any investment or any other interest in, any other Person, or purchase, farm-in or otherwise acquire any assets of any other Person, except:

(a)      farm-in or farmout transactions consummated in accordance with Section 7.06 of the Limited Liability Company Agreement of Fieldwood; and

(b)      conveyances or other transfers consummated in accordance with the JOA or Farmout Agreement.

Section 6.05      <u>Asset Sales</u>.  No Co-Borrower will sell, transfer (including any disposition of property to a Texas Divided LLC pursuant to a Texas LLC Division), farmout, lease or otherwise dispose of any asset, including any Equity Interest owned by it, except:

(a)      farmout transactions consummated in accordance with Section 7.06 of the Limited Liability Company Agreement of Fieldwood; and

(b)      conveyances or other transfers consummated in accordance with the JOA or Farmout Agreement.

Section 6.06      <u>Sale and Leaseback Transactions</u>.  No Co-Borrower will enter into any arrangement, directly or indirectly, whereby it shall sell or transfer any property, real or personal, used or useful in its business, whether now owned or hereafter acquired, and thereafter rent or lease such property or other property that it intends to use for substantially the same purpose or purposes as the property sold or transferred.

Section 6.07   Swap Agreements.  No Co-Borrower will enter into any swap agreement (other than for physical swaps of less than one year in duration) without the Lender's prior consent in its sole discretion.

Section 6.08   Restricted Payments; Certain Payments of Indebtedness.   No Co-Borrower will declare or make, directly or indirectly, any Restricted Payment, or incur any obligation (contingent or otherwise) to do so.

Section 6.09   Transactions with Affiliates.  No Co-Borrower will (a) enter into, amend, waive any provision of, or any of its rights under, or terminate any Related Party Agreement or (b) sell, lease or otherwise transfer any property or assets to, or purchase, lease or otherwise acquire any property or assets from, or otherwise engage in any other transactions with, any of its Affiliates, except (i) farmout transactions consummated in accordance with Section 7.06 of the Limited Liability Company Agreement of Fieldwood, (ii) conveyances or other transfers consummated in accordance with the JOA or Farmout Agreement and (iii) the transition services agreement entered into between any Co-Borrower and the Credit Bid Purchaser as of even date herewith, as may be amended or replaced in its entirety.

Section 6.10   Restrictive Agreements.  No Co-Borrower will enter into, incur or permit to exist any agreement or other arrangement that prohibits, restricts or imposes any condition upon the ability of such Co-Borrower to create, incur or permit to exist any Lien upon any of its property or assets securing the Secured Obligations.

Section 6.11   Amendment of Organizational Documents; Material Contracts.  (a) No Co-Borrower will (i) amend, modify, supplement or waive any provision of, or any of its rights under, its certificate of formation or organization, as applicable, its limited liability company agreement or any other organizational document of such Co-Borrower or (ii) issue additional Equity Interests or admit additional Persons as members under the limited liability company agreement of such Co-Borrower.

(b)      No Co-Borrower will (i) amend, modify, supplement, or waive any provision of, or any of its rights under, or terminate any Material Contract, or (ii) enter into any joint operating agreement with respect to the operatorship of the Real Properties or any joint development agreement relating to the Real Properties except as otherwise permitted in Sections 6.04 or 6.05 hereof.

Section 6.12   Amendment or Termination of Material Relationships.  No Co-Borrower will (a) remove, replace or materially change the work to be performed by the Service Provider or (b) remove, replace or materially change the powers, rights or responsibilities of the sole manager or independent director of Fieldwood.

Section 6.13   Excess Cash Flow.  No Co-Borrower shall use Excess Cash Flow for any purpose other than (i) fulfilling its Secured Obligations and obligations under the Decommissioning Agreement and (ii) if and to the extent expressly permitted by Section 7.06(d) of Fieldwood's Limited Liability Company Agreement, to repay Indebtedness expressly permitted by Section 7.06(d) thereof and Section 6.01(ii) hereof when there is no Default and no Default would result from such repayment.

ARTICLE VII

Events of Default

If any of the following events ("Events of Default") shall occur:

(a)        the Borrowers shall fail to pay (i) any principal of any Loan or (ii) any interest on any Loan or other amount payable under this Agreement or any other Loan Document when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof or otherwise and, in the case of clause (ii), such failure shall continue for five (5) Business Days;

(b)        any representation or warranty made or deemed made by or on behalf of any Co-Borrower in or in connection with this Agreement or any other Loan Document or any amendment or modification hereof or thereof or waiver hereunder or thereunder, or in any report, certificate, financial statement or other document furnished by any Co-Borrower pursuant to or in connection with this Agreement or any other Loan Document or any amendment or modification hereof or thereof or waiver hereunder or thereunder, shall prove to have been materially incorrect when made or deemed made;

(c)        any Co-Borrower shall fail to observe or perform any covenant, condition or agreement contained in Sections 5.01, 5.02(a), 5.03, 5.08 or 5.10 or in Article VI;

(d)        any Co-Borrower shall fail to observe or perform any covenant, condition or agreement contained in this Agreement or any other Loan Document (other than those specified in clause (a) or (c) of this Article), and such failure shall continue unremedied for a period of thirty (30) days after the earlier of such Co-Borrower's knowledge of such breach or notice thereof from the Lender if such breach relates to terms or provisions of any other Section of this Agreement or of any other Loan Document;

(e)        an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (i) liquidation, reorganization or other relief in respect of any Co-Borrower or its debts, or of a substantial part of its assets, under any federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (ii) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Co-Borrower or for a substantial part of its assets, and, in any such case, such proceeding or petition shall continue undismissed for sixty (60) days or an order or decree approving or ordering any of the foregoing shall be entered;

(f)        any Co-Borrower shall (i) voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect, (ii) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in clause (e) of this Article, (iii) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Co-Borrower or for a substantial part of its assets, (iv) file an answer admitting the material allegations of a petition

31

filed against it in any such proceeding, (v) make a general assignment for the benefit of creditors or (vi) take any action for the purpose of effecting any of the foregoing;

(g)     any Co-Borrower shall become unable, admit in writing its inability, or publicly declare its intention not to, or fail generally, to pay its debts as they become due;

(h)     one or more judgments for the payment of money in an aggregate amount in excess of $250,000 (to the extent not covered by insurance) shall be rendered against any Co-Borrower and the same shall remain undischarged for a period of thirty (30) consecutive days during which execution shall not be effectively stayed, or any action shall be legally taken by a judgment creditor to attach or levy upon any assets of any Co-Borrower to enforce any such judgment or any Co-Borrower shall fail within thirty (30) days to discharge one or more non-monetary judgments or orders;

(i)     a Change in Control shall occur;

(j)     except as permitted by the terms of any Collateral Document, (i) any Collateral Document shall for any reason fail to create a valid security interest in any Collateral purported to be covered thereby, or (ii) any Lien securing any Secured Obligation shall cease to be a perfected, first priority Lien;

(k)     any Collateral Document or any Borrower Guarantee shall (other than pursuant to the terms thereof) fail to remain in full force or effect or any action shall be taken by any Co-Borrower to discontinue or to assert the invalidity or unenforceability of any Collateral Document or any Borrower Guarantee;

(l)     any material provision of any Loan Document for any reason ceases to be valid, binding and enforceable in accordance with its terms (or any Co-Borrower shall challenge the enforceability of any Loan Document or shall assert in writing, or engage in any action or inaction that evidences its assertion, that any provision of any of the Loan Documents has ceased to be or otherwise is not valid, binding and enforceable in accordance with its terms);

(m)     any default (other than a failure to comply with the reimbursement obligations in Section 2.7 of the Decommissioning Agreement) by any Co-Borrower shall occur under the Decommissioning Agreement;

(n)     any default under a Material Contract which could result in the termination of such Material Contract;

(o)     any breach of Article VII (Management) of Fieldwood's Limited Liability Company Agreement or any failure to obtain Lender's prior written consent in accordance with any provision of Fieldwood's Limited Liability Company Agreement; and

(p)     any breach or default by any Co-Borrower under any agreement, document, or instrument evidencing Indebtedness;

then, and in every such event (other than an event with respect to a Co-Borrower described in clause (e) or (f) of this Article), and at any time thereafter during the continuance of such event,

the Lender may, by notice to the Borrowers, take either or both of the following actions, at the same or different times: (i) terminate the Commitment, whereupon the Commitment shall terminate immediately, and (ii) declare the Loans then outstanding to be due and payable, together with accrued interest thereon and all fees and other obligations of the Borrowers accrued hereunder, shall become due and payable immediately, in each case without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrowers; and in the case of any event with respect to a Co-Borrower described in clause (e) or (f) of this Article, the Commitment shall automatically terminate and the principal of the Loans then outstanding, together with accrued interest thereon and all fees and other obligations of the Borrowers accrued hereunder, shall automatically become due and payable, in each case without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrowers.  Upon the occurrence and during the continuance of an Event of Default, the Lender may increase the rate of interest applicable to the Loans and other Secured Obligations as set forth in this Agreement and exercise any rights and remedies provided to the Lender under the Loan Documents or at law or equity, including all remedies provided under the UCC.

<div align="center">ARTICLE VIII</div>

<div align="center">Miscellaneous</div>

Section 8.01    Notices.

(a)    Except in the case of notices and other communications expressly permitted to be given by telephone (and subject to paragraph (b) below), all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by fax or electronic communication (to the extent provided in clause (b) below), as follows:

(i)    if to Borrowers at:

_____
_____
_____
Attention:  _____

(ii)    if to the Lender at:

Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056
Attention: Treasurer and Nora Dobin
e-mails: ben.rodgers@apachecorp.com and nora.dobin@apachecorp.com

All such notices and other communications (i) sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received, (ii) sent by fax shall be deemed to have been given when sent, provided that if not given during normal business hours for the recipient, such notice or communication shall be deemed to have

been given at the opening of business on the next Business Day of the recipient, or (iii) delivered through electronic communication to the extent provided in paragraph (b) below shall be effective as provided in such paragraph.

(b)     Notices and other communications to the Lender hereunder may be delivered or furnished by electronic communications (including e-mail); provided that the foregoing shall not apply to notices pursuant to Article II unless otherwise agreed by the Lender.  Each of the Lender or the Borrowers may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications.  All such notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement), provided that if not given during the normal business hours of the recipient, such notice or communication shall be deemed to have been given at the opening of business on the next Business Day for the recipient.

(c)     Any party hereto may change its address, facsimile number or e-mail address for notices and other communications hereunder by notice to the other parties hereto.  All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt.

Section 8.02   Waivers; Amendments.

(a)     No failure or delay by the Lender in exercising any right or power hereunder or under any other Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of the Lender hereunder and under any other Loan Document are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  No waiver of any provision of any Loan Document or consent to any departure by any Co-Borrower therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) of this Section, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  Without limiting the generality of the foregoing, the making of a Loan shall not be construed as a waiver of any Default, regardless of whether the Lender may have had notice or knowledge of such Default at the time.

(b)     Neither this Agreement nor any other Loan Document nor any provision hereof or thereof may be waived, amended or modified except pursuant to an agreement or agreements in writing entered into by the Borrowers and the Lender.

Section 8.03   Expenses; Indemnity; Damage Waiver.

(a)     Borrowers shall pay or reimburse Lender for any and all out-of-pocket expenses (including attorneys', auditors', and accountants' fees, charges, and disbursements) incurred or paid by Lender in connection with the preparation, execution, and delivery of the Loan Documents, subject to the $4,000,000 cap specified in the Restructuring Support Agreement or

the Confirmation Order for fees and expenses of Lender related to the formation of Borrowers and restructuring of Debtor.  Borrowers also shall pay or reimburse Lender for any and all out-of-pocket expenses and internal charges (including attorneys', auditors', and accountants' fees, and time charges of attorneys, paralegals, auditors, and accountants who may be employees of Lender) incurred or paid by Lender in connection with the administration of the Loan Documents and the enforcement, collection, or protection of its rights in connection with the Loan Documents, including its rights under this Section, or in connection with the Loans made hereunder, including all such out-of pocket expenses incurred during any workout, restructuring, or negotiations in respect of such Loans.

(b)     The Borrowers, jointly and severally, shall indemnify the Lender, and each Related Party of the Lender (each such Person being called an "Indemnitee") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, penalties, incremental taxes, liabilities and related expenses, including the fees, charges and disbursements of any counsel for any Indemnitee, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the execution or delivery of the Loan Documents or any agreement or instrument contemplated thereby, the performance by the parties hereto of their respective obligations thereunder or the consummation of the Transactions or any other transactions contemplated hereby, (ii) any Loan or the use of the proceeds therefrom, (iii) any actual or alleged presence or Release of Hazardous Materials on or from any property owned or operated by any Co-Borrower, or any Environmental Liability related in any way to any Co-Borrower, or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, penalties, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee. WITHOUT LIMITATION OF THE FOREGOING, IT IS THE INTENTION OF THE BORROWERS AND EACH CO-BORROWER AGREES THAT THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNITEE WITH RESPECT TO LOSSES, CLAIMS, DAMAGES, PENALTIES, LIABILITIES AND RELATED EXPENSES (INCLUDING, WITHOUT LIMITATION, ALL EXPENSES OF LITIGATION OR PREPARATION THEREFOR), WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE OF SUCH (AND/OR ANY OTHER) INDEMNITEE.

(c)     To the extent permitted by applicable law, each of the Co-Borrower and the Lender agrees that it shall not assert, and hereby waives, any claim against the other, (i) for any damages arising from the use by others of information or other materials obtained through telecommunications, electronic or other information transmission systems (including the Internet), or (ii) on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document, or any agreement or instrument contemplated hereby or thereby, the Transactions, any Loan or the use of the proceeds thereof; provided that, nothing in this paragraph (c) shall relieve any Co-Borrower of any obligation it may have to indemnify an Indemnitee against special, indirect, consequential or punitive damages asserted against such Indemnitee by a third party.

(d)     All amounts due under this Section shall be payable promptly after written demand therefor.

Section 8.04    Successors and Assigns.

(a)     The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that no Co-Borrower may assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Lender (and any attempted assignment or transfer by any Co-Borrower without such consent shall be null and void).  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby) and, to the extent expressly contemplated hereby, the Related Parties of the Lender) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)     The Lender may assign to one or more assignees all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and the Loans at the time owing to it) with the prior written consent (such consent not to be unreasonably withheld, conditioned, or delayed) of the Borrowers, provided that the Borrowers shall be deemed to have consented to any such assignment unless it shall object thereto by written notice to the Lender within five (5) Business Days after having received notice thereof, and provided further that no consent of the Borrowers shall be required if an Event of Default has occurred and is continuing.

(c)     The Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of the Lender.

Section 8.05    Survival.    All covenants, agreements, representations, and warranties made by the Borrowers in the Loan Documents and in the certificates or other instruments delivered in connection with or pursuant to this Agreement or any other Loan Document shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of the Loan Documents and the making of any Loans, regardless of any investigation made by any such other party or on its behalf and notwithstanding that the Lender may have had notice or knowledge of any Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of or any accrued interest on any Loan or any fee or any other amount payable under this Agreement is outstanding and so long as the Commitment has not expired or terminated. The provisions of Section 8.03 shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Loans and the Commitment or the termination of this Agreement or any other Loan Document or any provision hereof or thereof.

Section 8.06    Counterparts; Integration; Effectiveness.

(a)     This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  This Agreement and the other Loan Documents

constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  Except as provided in <u>Section 4.01</u>, this Agreement shall become effective when it shall have been executed by the Lender and when the Lender shall have received counterparts hereof which, when taken together, bear the signatures of each of the other parties hereto, and thereafter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(b)     Delivery of an executed counterpart of a signature page of this Agreement by fax, emailed pdf. or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart of this Agreement.  THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Section 8.07   <u>Severability</u>.  Any provision of any Loan Document held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

Section 8.08   <u>Right of Setoff</u>.  If an Event of Default shall have occurred and be continuing, the Lender is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits at any time held and other obligations at any time owing by the Lender, to or for the credit or the account of any Co-Borrower against any of and all the Secured Obligations, irrespective of whether or not the Lender shall have made any demand under the Loan Documents and although such obligations may be unmatured.  The rights of the Lender under this Section are in addition to other rights and remedies (including other rights of setoff) which the Lender may have.

Section 8.09   <u>Governing Law; Jurisdiction; Consent to Service of Process</u>.

(a)     The Loan Documents (other than those containing a contrary express choice of law provision) shall be governed by and construed in accordance with the internal laws (and not the law of conflicts) of the State of Texas, but giving effect to federal laws applicable to national banks.

(b)     Each party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any U.S. federal or Texas State court sitting in Houston, Texas in any action or proceeding arising out of or relating to any Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such state court or, to the extent permitted by law, in such federal court. Each of the parties hereto agrees that a final judgment, non-appealable in any such action or proceeding may be enforced in other jurisdictions by suit on the judgment or in any

other manner provided by law.  Nothing in this Agreement or any other Loan Document shall affect any right that the Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other Loan Document against any Co-Borrower or its properties in the courts of any jurisdiction.

(c)     Each party hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in paragraph (b) of this Section.  Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d)     Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 8.01.  Nothing in this Agreement or any other Loan Document will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

Section 8.10   WAIVER OF JURY TRIAL.   EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE OR OTHER AGENT (INCLUDING ANY ATTORNEY) OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

Section 8.11   Headings.  Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

Section 8.12   Interest Rate Limitation.  No provision of this Agreement or of any other Loan Documents shall require the payment or the collection of interest in excess of the Maximum Rate.  If any excess of interest in such respect is hereby provided for, or shall be adjudicated to be so provided, in any other Loan Documents or otherwise in connection with this Agreement, the provisions of this Section shall govern and prevail and no Co-Borrower or the sureties, guarantors, successors or assigns of such Co-Borrower shall be obligated to pay the excess amount of such interest or any other excess sum paid for the use, forbearance or detention of sums loaned pursuant hereto.  In the event Lender ever receives, collects or applies as interest any such sum, such amount which would be in excess of the maximum amount permitted by applicable law shall be applied as a payment and reduction of the principal of the indebtedness evidenced by the Note; and, if the principal of the Note been paid in full, any remaining excess shall forthwith be paid to Borrowers.  In determining whether or not the interest paid or payable

exceeds the Maximum Rate, Borrowers and Lender shall, to the extent permitted by applicable law, (a) characterize any non-principal payment as an expense, fee or premium rather than as interest, (b) exclude voluntary prepayments and the effects thereof and (c) amortize, prorate, allocate and spread in equal or unequal parts the total amount of interest throughout the entire contemplated term of the indebtedness evidenced by the Note so that interest for the entire term does not exceed the Maximum Rate

Section 8.13   No Advisory or Fiduciary Responsibility.  In connection with all aspects of each transaction contemplated hereby (including in connection with any amendment, waiver or other modification hereof or of any other Loan Document), each Co-Borrower acknowledges and agrees that:  (a) (i) the arranging and other services regarding this Agreement provided by the Lender are arm's-length commercial transactions between the Borrowers, on the one hand, and the Lender, on the other hand, (ii) the Borrowers have consulted their own legal, accounting, regulatory and tax advisors to the extent it has deemed appropriate, and (iii) the Borrowers are capable of evaluating, and understands and accepts, the terms, risks and conditions of the transactions contemplated hereby and by the other Loan Documents; (b) (i) the Lender is and has been acting solely as a principal and, except as expressly agreed in writing by the relevant parties, has not been, is not, and will not be acting as an advisor, agent or fiduciary for the Borrowers, or any other Person and (ii) the Lender has no obligation to the Borrowers with respect to the transactions contemplated hereby except those obligations expressly set forth herein and in the other Loan Documents; and (c) the Lender may be engaged in a broad range of transactions that involve interests that differ from those of the Borrowers, and the Lender has no obligation to disclose any of such interests to the Borrowers.  To the fullest extent permitted by law, each Co-Borrower hereby waives and releases any claims that it may have against the Lender with respect to any breach or alleged breach of agency or fiduciary duty in connection with any aspect of any transaction contemplated hereby.

Section 8.14   Joint and Several Liability.

(a)      Each Co-Borrower acknowledges and agrees that it is the intent of the parties that each Co-Borrower be primarily liable for the Secured Obligations as a joint and several obligor. It is the intention of the parties that, with respect to liability of any Co-Borrower hereunder arising solely by reason of its being jointly and severally liable for Loans and other Secured Obligations by other Borrower, the obligations of such Co-Borrower shall be absolute, unconditional, and irrevocable irrespective of:

(i)      any lack of validity, legality, or enforceability of this Agreement or any Loan Document as to any other Co-Borrower;

(ii)      the failure of the Lender: (A) to enforce any right or remedy against any Co-Borrower or any other Person (including any surety) under the provisions of this Agreement or otherwise, or (B) to exercise any right or remedy against any surety of, or Collateral securing, any obligations;

(iii)      any change in the time, manner, or place of payment of, or in any other term of, all or any of the Secured Obligations, or any other extension, compromise, or renewal of any Secured Obligations;

39

(iv)     any reduction, limitation, impairment, or termination of any Secured Obligations with respect to any other Co-Borrower for any reason, including any claim of waiver, release, surrender, alteration, or compromise, and shall not be subject to (and each Co-Borrower hereby waives any right to or claim of) any defense (other than the defense of payment in full of the Secured Obligations) or setoff, counterclaim, recoupment, or termination whatsoever by reason of the invalidity, illegality, nongenuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, any Secured Obligations with respect to any other Co-Borrower;

(v)     any addition, exchange, release, surrender, or nonperfection of any Collateral, or any amendment to, or waiver or release or addition of, or consent to departure from, any guaranty held by the Lender securing any of the Secured Obligations; or

(vi)     any other circumstance which might otherwise constitute a defense (other than the defense of payment in full of the Secured Obligations) available to, or a legal or equitable discharge of, any other Co-Borrower, any surety or any guarantor.

(b)     Each Co-Borrower agrees that its liability hereunder and its liability under any of the Loan Documents shall continue to be effective or be reinstated, as the case may be, if at any time any payment (in whole or in part) of any of the Secured Obligations is rescinded or must be restored by Lender upon the insolvency, bankruptcy, or reorganization of any Co-Borrower as though such payment had not been made.

(c)     Each Co-Borrower hereby expressly waives: (i) notice of the Lender's acceptance of this Agreement; (ii) notice of the existence or creation or non-payment of all or any of the Secured Obligations other than notices expressly provided for in this Agreement; (iii) presentment, demand, notice of dishonor, protest, acceleration and the notice of intent to accelerate, and all other notices whatsoever other than notices expressly provided for in this Agreement; and (iv) all diligence in collection or protection of, or realization upon, the Secured Obligations or any part thereof, any obligation hereunder, or any security for or Guarantee of any of the foregoing, subject, however, in the case of Collateral in the possession of Lender to such Person's duty to use reasonable care in the custody and preservation of such Collateral.

(d)     No delay on the Lender's part in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by any of the Lenders of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.  No action of Lender permitted hereunder shall in any way affect or impair any such Lender's rights or any Co-Borrower's Secured Obligations under this Agreement or the other Loan Documents.

Section 8.15   NOTICE OF FINAL AGREEMENT.  THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

BORROWERS:

FIELDWOOD ENERGY I LLC,
a Texas limited liability company


By: _____
Name: _____
Title: _____

GOM SHELF LLC,
a Delaware limited liability company


By: _____
Name: _____
Title: _____

*[Signature Page to Standby Loan Agreement]*

LENDER:

APACHE CORPORATION,
a Delaware corporation, as Lender


By:_____
Name: _____
Title: _____

# SCHEDULE 3.04[3]

Properties

---

[3] To be completed in a manner mutually agreeable to all parties as a condition to Apache's execution.

Schedule 3.04 - 1

# SCHEDULE 3.11[4]

<u>Insurance</u>

---

[4] To be completed in a manner mutually agreeable to all parties as a condition to Apache's execution.

HOU 3972592v21

# SCHEDULE 3.16[5]

## Affiliate Transactions

---

[5] To be completed in a manner mutually agreeable to all parties as a condition to Apache's execution.

**EXHIBIT A**

Form of Note

NOTE

$200,000,000                                                           _____, 20[●]

FOR VALUE RECEIVED, each of the undersigned, FIELDWOOD ENERGY I LLC, a Texas limited liability company ("Fieldwood") and GOM SHELF LLC, a Delaware limited liability company ("GOM" together with Fieldwood, the "Borrowers"), jointly and severally, promises to pay to APACHE CORPORATION, a Delaware corporation (the "Lender"), at the place and times provided in the Loan Agreement referred to below, the principal sum of TWO HUNDRED MILLION DOLLARS ($200,000,000) or, if less, the unpaid principal amount of all Loans made by the Lender from time to time pursuant to that certain Standby Loan Agreement, dated as of _____, 20[●] (as it may be amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement") by and among the Borrowers and the Lender.  Capitalized terms used herein and not defined herein shall have the meanings assigned thereto in the Loan Agreement.

The unpaid principal amount of this Note from time to time outstanding is subject to mandatory repayment from time to time as provided in the Loan Agreement and shall bear interest as provided in Section 2.07 of the Loan Agreement.  All payments of principal and interest on this Note shall be payable in lawful currency of the United States in immediately available funds to the Lender in accordance with the Loan Agreement.

This Note is entitled to the benefits of, and evidences the Secured Obligations incurred under, the Loan Agreement, to which reference is made for a statement of the terms and conditions on which each Borrower is permitted and required to make prepayments and repayments of principal of the Secured Obligations evidenced by this Note and under which such Secured Obligations may be declared to be immediately due and payable.

This Note and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Note shall be governed by, and construed in accordance with, the law of the State of Texas.

The Borrowers hereby waive all requirements as to diligence, presentment, demand of payment, protest and, except as required by the Loan Agreement, notice of any kind with respect to this Note.

This Note may be transferred or assigned solely in accordance with the terms and provisions of the Loan Agreement.

Exhibit A - 1

This Note may be executed in multiple counterparts, each of which, for all purposes, shall be deemed an original, and all of which taken together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Note as of the day and year first above written.

**FIELDWOOD ENERGY I LLC,**
a Texas limited liability company

By:_____
Name:_____
Title:_____


**GOM SHELF LLC,**
a Delaware limited liability company

By:_____
Name:_____
Title:_____

**EXHIBIT B[6]**

Form of Borrowing Request

BORROWING REQUEST

_____, 20__

Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056
Attention:      Treasurer and Nora Dobin
Email: ben.rodgers@apachecorp.com and nora.dobin@apachecorp.com

Apache Corporation,

Reference is made to that certain Loan Agreement, dated as of _____ (the "Loan Agreement"), among Fieldwood Energy I LLC ("Fieldwood"), GOM Shelf LLC ("GOM", together with Fieldwood, the "Borrowers" and each individually, a "Co-Borrower") and Apache Corporation ("Lender").  Terms defined in the Loan Agreement are used herein with the same meanings.  This notice constitutes a Borrowing Request and Borrowers hereby request a Loan under the Loan Agreement, and in that connection Borrowers specify the following information with respect to the Loan requested hereby:

(A)      Principal amount of the requested Loan: _____

(B)      Effective date of such requested Loan (which is a Business Day): _____

(C)      the aggregate principal amount of all Loans then outstanding: _____

Borrowers hereby represent and warrant that all conditions in Section 4.02 of the Loan Agreement are satisfied.

Borrowers have caused this Borrowing Request to be executed and delivered by its [Authorized Officer/Manager] this ___ day of _____, 20__.

Very truly yours,

[FIELDWOOD ENERGY I LLC]

By: _____
Name:

---

[6] Form to be mutually agreeable to all parties as a condition to Apache's execution.

Exhibit B - 1

Title:


[GOM SHELF LLC]


By: _____
Name:
Title:

Exhibit B - 2

**EXHIBIT C**[7]

Form of Compliance Certificate

COMPLIANCE CERTIFICATE

In connection with that certain Standby Loan Agreement, dated as of _____ (the "Loan Agreement"), among Fieldwood Energy I, LLC ("Fieldwood"), GOM Shelf LLC ("GOM", together with Fieldwood, the "Borrowers") and Apache Corporation ("Lender"), the undersigned, the Manager of Fieldwood does hereby certify, pursuant to Section 5.01(c) of the Loan Agreement, as follows (capitalized terms hereinafter used having the meaning specified in the Loan Agreement):

1.    In accordance with Sections 5.01(a) or (b) of the Loan Agreement, the consolidated balance sheet and related consolidated statements of operations, members' equity and cash flows financial statements of Fieldwood and its consolidated Subsidiaries as of _____, 20__ present fairly in all material respects their consolidated financial condition and results of operations in accordance with GAAP at such date.

2.    No Default has occurred and is continuing [other than _____].[8]

3.    As of the date hereof, the outstanding principal balance of all Loan advanced under the Loan Agreement is $_____. The Borrowers have sufficient funds to pay all accrued interest due under Section 2.07(c) of the Loan Agreement for the following six (6) month period.

IN WITNESS WHEREOF, I have hereunto set my hand as of this ___ day of _____, _____.

_____
Name:
Title: Manager

---

[7] [7] Form to be mutually agreeable to all parties as a condition to Apache's execution.
[8] If Default has occurred, Borrower shall specify details thereof and any action taken or proposed to be taken with respect thereto.

Exhibit C - 1

# Exhibit 9

## Security Agreement

# SECURITY AGREEMENT

THIS **SECURITY AGREEMENT** (this "Security Agreement") is entered into as of [●] by and among **FIELDWOOD ENERGY I LLC**, a Texas limited liability company ("Fieldwood"), **GOM SHELF LLC**, a Delaware limited liability company ("GOM", together with Fieldwood, the "Grantors") and **APACHE CORPORATION**, a Delaware corporation ("Lender") on behalf of itself and the other Secured Parties (as defined in the Loan Agreement (as defined below)).

## RECITALS

**WHEREAS**, the Grantors and Lender are entering into a Standby Loan Agreement dated as of [●] (the "Loan Agreement").

**WHEREAS**, the Grantors are entering into this Security Agreement in order to induce Lender to enter into and extend credit under the Loan Agreement.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1. **DEFINITIONS**.

1.1    **Reference to Security Agreement**. Unless otherwise specified, all references herein to Articles, Sections, Recitals, and Schedules refer to Articles and Sections of, and Recitals and Schedules to, this Security Agreement. All Schedules include amendments and supplements thereto from time to time.

1.2    **Principles of Construction**. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neutral, as the context indicates is appropriate. Whenever the words "include," "includes" or "including" are used in this Security Agreement, they shall be deemed to be followed by the words "without limitation". All references to agreements and other contractual Instruments shall be deemed to include subsequent amendments, permitted assignments, and other modifications thereto, but only to the extent such amendments, assignments, and other modifications are not prohibited by the terms of any Loan Document. Furthermore, any reference to any law shall include all statutory and regulatory provisions consolidating, amending, replacing, or interpreting such law and any reference to any law or regulation shall, unless otherwise specified, refer to such law or regulation as amended, modified, or supplemented from time to time.

1.3    **Definitions**. Unless otherwise defined herein, or the context hereof otherwise requires, each term defined in either the Loan Agreement or the UCC is used in this Security Agreement with the same meaning; *provided that*, if the definition given to such term in the Loan Agreement conflicts with the definition given to such term in the UCC, the Loan Agreement definition shall control to the extent legally allowable; and if any definition given to such term in Article 9 of the UCC conflicts with the definition given to such term in any other chapter of the UCC, the Article 9 definition shall prevail. As used herein, the following terms have the meanings indicated:

"Account" means any "account," as such term is defined in Section 9.102(a)(2) of the UCC.

"Account Debtor" means any person who is obligated on a Receivable.

"Cash Collateral Account" has the meaning set forth in Section 5.5.

"Chattel Paper" means any "chattel paper", as such term is defined in Section 9.102(a)(11) of the UCC, including all Electronic Chattel Paper and Tangible Chattel Paper.

"Collateral" has the meaning set forth in Section 2.1.

"Collateral Records" means books, records, ledger cards, files, correspondence, customer lists, blueprints, technical specifications, manuals, computer software, computer printouts, tapes, disks and related data processing software and similar items that at any time evidence or contain information relating to any of the Collateral or are otherwise necessary or helpful in the collection thereof or realization thereupon.

"Collateral Support" means all property (real or personal) assigned, hypothecated, or otherwise securing any Collateral and shall include any security agreement or other agreement granting a Lien or security interest in such real or personal property.

"Commercial Tort Claims" means any "commercial tort claim", as such term is defined in Section 9.102(a)(13) of the UCC, including all commercial tort claims listed on Schedule 3.8.

"Contractual Obligations" means, as to any Person, any provision of any security issued by such Person or of any agreement, undertaking, contract, indenture, mortgage, deed of trust or other instrument, document or agreement to which such Person is a party or by which it or any of its Property is bound.

"Control" has the meaning set forth in Sections 7.106, 8.106, 9.104, 9.105, 9.106, or 9.107 of the UCC, as applicable.

"Copyright Licenses" means any and all agreements providing for the granting of any right in or to Copyrights, including each agreement referred to on Schedule 3.15.

"Copyrights" means all United States and foreign copyrights, including copyrights in software and databases, whether registered or unregistered, and, with respect to any and all of the foregoing: (a) all registrations and applications therefor, including the registrations and applications referred to on Schedule 3.15; (b) all extensions and renewals thereof; (c) all rights corresponding thereto throughout the world; (d) all rights to sue for past, present and future infringements thereof; and (e) all products and Proceeds of the foregoing, including any income, royalties, and awards and any claim by any Grantor against third parties for past, present, or future infringement of any Copyright or any Copyright licensed under any Copyright License.

"Default Rate" means a rate of interest equal to 2% plus the highest rate otherwise applicable to any Loan advanced to a Grantor under the Loan Agreement.

"Deposit Accounts" means any "deposit account", as such term is defined in Section 9.102(a)(29) of the UCC, including those deposit accounts identified on Schedule 3.8, and any account which is a replacement or substitute for any of such accounts, together with all monies, Instruments, certificates, checks, drafts, wire transfer receipts, and other property deposited therein and all balances therein.

"Documents" means any "document", as such term is defined in Section 9.102(a)(30) of the UCC.

"Electronic Chattel Paper" means any "electronic chattel paper", as such term is defined in Section 9.102(a)(31) of the UCC.

2

"Equipment" means: (a) any "equipment", as such term is defined in Section 9.102(a)(33) of the UCC; (b) all machinery, equipment, furnishings, Fixtures, motor vehicles, rolling stock; and (c) any and all additions, substitutions, and replacements of any of the foregoing, wherever located, together with all attachments, components, parts, equipment, and accessories installed thereon or affixed thereto (in each case, regardless of whether characterized as equipment under the UCC).

"Excluded Accounts" means (a) any deposit accounts exclusively used for employee trust, payroll, payroll taxes and other employee wage and benefit payments to or for the benefit of any employees of the Grantors, (b) any deposit account which is used as an escrow account or fiduciary or trust account and solely contains deposits made for the benefit of another Person (other than any Grantor), and in which such deposits are held on behalf of, and for the benefit of, such other Person, including, but not limited to working interest owners, royalty owners and the like, and (c) any other deposit account that is pledged to a third party to the extent such Lien is a Permitted Lien.

"Excluded Property" means, collectively, (a) any permit or license or any Contractual Obligation of any Grantor (i) that prohibits or requires the consent of any Person other than the Grantors or their Affiliates which has not been obtained as a condition to the creation by such Grantor of a Lien on any right, title, or interest in such permit, license, or Contractual Obligation related thereto or (ii) to the extent that any Requirement of Law applicable thereto prohibits the creation of a Lien thereon, but only to the extent, and for as long as, such prohibition is not terminated or rendered unenforceable or otherwise deemed ineffective by the UCC or any other Requirement of Law; provided, however, "Excluded Property" shall not include any proceeds, products, substitutions, or replacements of Excluded Property (unless such proceeds, products, substitutions, or replacements would otherwise constitute Excluded Property) and (b) Excluded Accounts.

"Fixtures" means any "fixtures", as such term is defined in Section 9.102(a)(41) of the UCC.

"General Intangibles" means: (a) any "general intangibles", as such term is defined in Section 9.102(a)(42) of the UCC; and (b) all interest rate or currency protection or hedging arrangements, computer software, computer programs, all tax refunds and tax refund claims, all licenses, permits, concessions and authorizations, all contract rights, all joint venture interests, partnership interests, or membership interests that do not constitute a Security, all Material Contracts, and all Intellectual Property (in each case, regardless of whether characterized as general intangibles under the UCC).

"Goods" means: (a) "goods", as that term is defined in Section 9.102(a)(44) of the UCC; (b) all Inventory; and (c) all Equipment (in each case, regardless of whether characterized as goods under the UCC).

"Grantors" has the meaning set forth in the preamble, and "Grantor" means any one of the Grantors.

"Instrument" means any "instrument", as such term is defined in Section 9.102(a)(47) of the UCC.

"Intellectual Property" means, collectively, the Copyrights, the Copyright Licenses, the Patents, the Patent Licenses, the Trademarks, the Trademark Licenses, the Trade Secrets, and the Trade Secret Licenses.

"Inventory" means any "inventory", as such term is defined in Section 9.102(a)(48) of the UCC.

"Investment Related Property" means: (a) any "investment property", as such term is defined in Section 9.102(a)(49) of the UCC; and (b) all Pledged Equity Interests (regardless of whether such interest is classified as investment property under the UCC).

"Letter-of-Credit Right" means any "letter-of-credit right", as such term is defined in Section 9.102(a)(51) of the UCC.

"Material Contracts" means: (a) all of Grantors' rights, titles, and interests in, to, and under those contracts listed on Schedule 3.8, including all rights of any Grantor to receive moneys due and to become due under or pursuant to the Material Contracts; (b) all rights of Grantors to receive Proceeds of any insurance, indemnity, warranty, or guaranty with respect to the Material Contracts; (c) all claims of Grantors for damages arising out of or for breach of or default under the Material Contracts; and (d) all rights of Grantors to compel performance and otherwise exercise all rights and remedies under the Material Contracts.

"Maximum Liability" has the meaning set forth in Section 6.2(a).

"Money" means "money" as defined in Section 1.201(b)(24) of the UCC.

"Patent Licenses" means all agreements providing for the granting of any right in or to Patents, including each agreement referred to on Schedule 3.15.

"Patents" means all United States and foreign patents and certificates of invention, or similar industrial property rights, and applications for any of the foregoing, including: (a) each patent and patent application referred to on Schedule 3.15; (b) all reissues, divisions, continuations, continuations-in-part, extensions, renewals, and reexaminations thereof; (c) all rights corresponding thereto throughout the world; (d) all inventions and improvements described therein; (e) all rights to sue for past, present and future infringements thereof; (f) all licenses, claims, damages, and Proceeds of suit arising therefrom; and (g) all products and Proceeds of the foregoing, including any income, royalties, and awards and any claim by any Grantor against third parties for past, present, or future infringement of any Patent or any Patent licensed under any Patent License.

"Pledged Equity Interests" means all Pledged Stock, Pledged LLC Interests, and Pledged Partnership Interests.

"Pledged LLC Interests" means all membership interests owned by a Grantor in any limited liability company, including all membership interests listed on Schedule 3.8 and the certificates, if any, representing such membership interests as such interest may be increased or otherwise adjusted from time to time, including (a) all of such Grantor's right, title, and interest in any and all distributions, issues, profits, and shares (including rights in the nature of warrants, purchase options, or options to acquire any property or further interest in such limited liability company) payable or distributable by such limited liability company, whether in cash or otherwise, whether for capital or income or surplus or otherwise, including distributions upon liquidation, dissolution, revision, reclassification, split-up, or other change or transaction affecting such limited liability company, or as a sale, refinancing, or other capital transaction affecting any assets or property of such limited liability company; (b) all of such Grantor's right, title, and interest as a member with respect to such limited liability company and the company agreement, operating agreement, or limited liability company agreement; (c) all of such Grantor's rights under the company agreement, operating agreement, or limited liability company agreement; (d) all of such Grantor's right to vote upon, approve, or consent to (or withhold consent or approval to) any matter pursuant to the company agreement, operating agreement, or limited liability company agreement, or otherwise to control, manage, or direct the affairs of such limited liability company; and (e) all of such Grantor's right to terminate, amend, supplement, modify or waive performance under, the company agreement, operating agreement, or limited liability company agreement, or perform thereunder, and to compel performance and otherwise to exercise all remedies thereunder; and (f) all Proceeds therefrom.

"Pledged Partnership Interests" means all partnership interests owned by a Grantor in any general partnership, limited partnership, limited liability partnership, or other partnership, including all partnership interests listed on Schedule 3.8 and the certificates, if any, representing such partnership interests as such interests may be increased or otherwise adjusted from time to time, including (a) all of such Grantor's right, title, and interest in any and all distributions, issues, profits, and shares (including rights in the nature of warrants, purchase options, or options to acquire any property or further interest in such partnership) payable or distributable by such partnership, whether in cash or otherwise, whether for capital or income or surplus or otherwise, including distributions upon liquidation, dissolution, revision, reclassification, split up, or other change or transaction affecting such partnership, or as a sale, refinancing, or other capital transaction affecting any assets or property of such partnership; (b) all of Grantor's right, title, and interest as a partner with respect to such partnership and the partnership agreement or other agreement governing such partnership; (c) all of Grantor's rights under the partnership agreement or other agreement governing such partnership; (d) all of Grantor's right to vote upon, approve, or consent to (or withhold consent or approval to) any matter pursuant to the partnership agreement or other agreement governing such partnership, or otherwise to control, manage, or direct the affairs of such partnership; and (e) all of Grantor's right to terminate, amend, supplement, modify, or waive performance under, the partnership agreement or other agreement governing such partnership, or perform thereunder, and to compel performance and otherwise to exercise all remedies thereunder; and (f) all Proceeds therefrom.

"Pledged Stock" means all shares of capital stock owned by a Grantor, including all shares of capital stock described on Schedule 3.8, and the certificates, if any, representing such shares and any interest of such Grantor in the entries on the books of the issuer of such shares or on the books of any securities intermediary pertaining to such shares, including all voting rights with respect to such Pledged Stock and all dividends, distributions, cash, warrants, rights, options, Instruments, securities, and other property or Proceeds from time to time received, receivable, or otherwise distributed in respect of or in exchange for any or all of such shares.

"Proceeds" means any "proceeds," as such term is defined in Section 9.102(a)(65) of the UCC and, in any event, shall include, but not be limited to, (a) any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to a Grantor from time to time with respect to any of the Collateral, (b) any and all payments (in any form whatsoever) made or due and payable to a Grantor from time to time in connection with any requisition, confiscation, condemnation, seizure, or forfeiture of all or any part of the Collateral by any Governmental Authority (or any Person acting under color of Governmental Authority), and (c) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

"Receivables" means the Accounts, Chattel Paper, Documents, Instruments, Investment Related Property, or Commercial Tort Claims, and any other rights or claims to receive Money which are General Intangibles or which are otherwise included as Collateral, together with all of the applicable Grantor's rights, if any, in all Collateral Support and Supporting Obligations related thereto.

"Related Parties" means, with respect to any specified Person, such Person's Affiliates and the respective directors, officers, partners, members, trustees, employees, agents, administrators, managers, representatives and advisors of such Person and such Person's Affiliates.

"Requirement of Law" means, with respect to any Person, any statute, law (including common law), treaty, rule, regulation, code, ordinance, order, decree, writ, judgment, injunction or determination of any arbitrator or court or other Governmental Authority (including Environmental Laws), in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"Secured Obligations" means (a) all unpaid principal of and accrued and unpaid interest on the Loans, (b) all accrued and unpaid fees and all expenses, reimbursements, indemnities and other obligations and indebtedness (including interest and fees accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), (c) all costs and expenses, including all attorneys' fees and legal expenses, incurred by Lender to preserve and maintain the Collateral, collect the obligations described herein or described in the other Loan Documents, and enforce this Security Agreement or any rights under any other Loan Documents, (d) the obligation to reimburse any amount that Lender (in its sole and absolute discretion) elects to pay or advance on behalf of any Grantor following the occurrence of an Event of Default, (e) obligations and liabilities of the Grantors to the Lender, any Secured Party or any indemnified party, individually or collectively, existing on the Effective Date or arising thereafter, direct or indirect, joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, secured or unsecured, arising by contract, operation of law or otherwise, in all cases arising or incurred under this Security Agreement, under any of the other Loan Documents, under the Decommissioning Agreement or in respect of any of the Loans made or any reimbursement or other obligations incurred under any of the foregoing, (f) all amounts owed under any extension, renewal, or modification of any of the foregoing and (g) any of the foregoing that arises after the filing of a petition by or against any Grantor under the Bankruptcy Code, even if the obligations due do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise; in each case with respect to clauses (a) through (e) above, whether or not (i) such Secured Obligations arise or accrue before or after the filing by or against any Grantor of a petition under the Bankruptcy Code, or any similar filing by or against any Grantor under the laws of any jurisdiction, or any bankruptcy, insolvency, receivership or other similar proceeding, (ii) such Secured Obligations are allowable under Section 502(b)(2) of the Bankruptcy Code or under any other insolvency proceedings, (iii) the right of payment in respect of such Secured Obligations is reduced to judgment, or (iv) such Secured Obligations are liquidated, unliquidated, similar, dissimilar, related, unrelated, direct, indirect, fixed, contingent, primary, secondary, joint, several, or joint and several, matured, disputed, undisputed, legal, equitable, secured, or unsecured.:

"Security" has the meaning set forth in Section 8.102(a)(15) of the UCC.

"Supporting Obligation" means all "supporting obligations" as defined in Section 9.102(a)(78) of the UCC.

"Tangible Chattel Paper" means any "tangible chattel paper", as such term is defined in Section 9.102(a)(79) of the UCC.

"Trademark Licenses" means any and all agreements providing for the granting of any right in or to Trademarks, including each agreement referred to on Schedule 3.15.

"Trademarks" means all United States and foreign trademarks, trade names, corporate names, company names, business names, fictitious business names, Internet domain names, service marks, certification marks, collective marks, logos, other source or business identifiers, designs and general intangibles of a like nature, all registrations and applications for any of the foregoing, including: (a) the registrations and applications referred to on Schedule 3.15; (b) all extensions or renewals of any of the foregoing; (c) all of the goodwill of the business connected with the use of and symbolized by the foregoing; (d) the right to sue for past, present and future infringement or dilution of any of the foregoing or for any injury to goodwill; and (e) all products and Proceeds of the foregoing, including any income, royalties, and awards and any claim by any Grantor against third parties for past, present, or future infringement of any Trademark or any Trademark licensed under any Trademark License.

"Trade Secret Licenses" means any and all agreements providing for the granting of any right in or to Trade Secrets, including each agreement referred to on Schedule 3.15.

HOU 3972802v7

"Trade Secrets" means all trade secrets and all other confidential or proprietary information and know-how, whether or not such Trade Secret has been reduced to a writing or other tangible form, including all Documents and things embodying, incorporating, or referring in any way to such Trade Secret, including: (a) the right to sue for past, present, and future misappropriation or other violation of any Trade Secret; and (b) all products and Proceeds of the foregoing, including any income, royalties, and awards and any claim by any Grantor against third parties for past, present, or future infringement of any Trade Secrets or any Trade Secrets licensed under any Trade Secret License.

2.     **GRANT OF SECURITY INTEREST**.

2.1     **Security Interest**.  To secure the prompt and complete payment and performance of the Secured Obligations when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand, or otherwise (including the payment of amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code or any similar provisions of other applicable laws), each Grantor hereby grants to Lender a continuing security interest in, a Lien upon, and a right of set off against, and hereby assigns to Lender as security, all personal property of such Grantor, whether now owned or hereafter acquired or existing, and wherever located (together with all other collateral security for the Secured Obligations at any time granted to or held or acquired by Lender, collectively, the "Collateral"), including:

        (a)     Accounts;

        (b)     Chattel Paper;

        (c)     Commercial Tort Claims;

        (d)     Deposit Accounts;

        (e)     Documents;

        (f)     General Intangibles;

        (g)     Goods;

        (h)     Instruments;

        (i)     Letter of Credit Rights;

        (j)     Money;

        (k)     Fixtures;

        (l)     Intellectual Property;

        (m)     Material Contracts;

        (n)     Investment Related Property;

        (o)     to the extent not otherwise included above, all Collateral Records, Collateral Support, and Supporting Obligations relating to any of the foregoing; and

7

(p)     to the extent not otherwise included above, all accessions to, substitutions for, and all replacements, products, Proceeds of the foregoing, including Proceeds of and unearned premiums with respect to insurance policies, and claims against any Person for loss, damage, or destruction of any Collateral.

If the security interest granted hereby in any rights of any Grantor under any contract included in the Collateral is expressly prohibited by such contract, then the security interest hereby granted therein nonetheless remains effective to the extent allowed by Article 9 of the UCC or other applicable law but is otherwise limited by that prohibition.  Notwithstanding the foregoing, no Lien or security interest is hereby granted on any Excluded Property; *provided* that with respect to Excluded Property to be covered by clause (a)(i) of the definition thereof, such Excluded Property shall be identified on Schedule 3.16; *provided further that* if and when any Property shall cease to be Excluded Property, a Lien on and security in such Property shall be deemed granted therein.  Furthermore, notwithstanding any contrary provision, each Grantor agrees that, if, but for the application of this paragraph, granting a security interest in the Collateral would constitute a fraudulent conveyance under 11 U.S.C. § 548 or a fraudulent conveyance or transfer under any state fraudulent conveyance, fraudulent transfer, or similar law in effect from time to time (each a "fraudulent conveyance"), then the security interest remains enforceable to the maximum extent possible without causing such security interest to be a fraudulent conveyance, and this Security Agreement is automatically amended to carry out the intent of this sentence.

2.2     **Grantor Remains Liable**.  Notwithstanding anything to the contrary contained herein, (a) each Grantor shall remain liable under the contracts and agreements included in the Collateral to the extent set forth therein to perform all of its respective duties and obligations thereunder to the same extent as if this Security Agreement had not been executed, (b) the exercise by Lender of any of its rights hereunder shall not release any Grantor from any of its duties or obligations under the contracts and agreements included in the Collateral, and (c) Lender shall not have any obligation or liability under any of the contracts and agreements included in the Collateral by reason of this Security Agreement, and Lender shall not be obligated to perform any of the obligations or duties of any Grantor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

2.3     **Authorization to File Financing Statements**.   Each Grantor hereby irrevocably authorizes Lender at any time and from time to time to file in any UCC jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of such Grantor or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC, or (ii) as being of an equal or lesser scope or with greater detail, and (b) contain any other information required by Subchapter E of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (A) whether such Grantor is an organization, the type of organization and any organization identification number issued to such Grantor and (B) in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates.  Each Grantor agrees to furnish any such information to Lender promptly upon request.

3.      **REPRESENTATIONS AND WARRANTIES**.  Each Grantor represents and warrants to Lender that:

3.1     **Title; Authorization; Enforceability; Perfection**.  (a) Each Grantor has good and valid rights in and title to the Collateral with respect to which it has purported to grant a security interest hereunder, free and clear of all Liens except for Permitted Liens, and has full power and authority to grant to Lender the security interest in such Collateral; (b) the execution and delivery by each Grantor of this Security Agreement has been duly authorized, and this Security Agreement constitutes a legal, valid and binding obligation of such Grantor and creates a security interest enforceable against such Grantor in all

8

now owned and hereafter acquired Collateral subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law; (c)(i) upon the filing of all UCC financing statements naming each Grantor as "debtor" and Lender as "secured party" and describing the Collateral in the filing offices set forth opposite such Grantor's name on Schedule 3.4 hereof, (ii) upon delivery of all Instruments, Chattel Paper, and certificated Pledged Equity Interest, (iii) upon sufficient identification of Commercial Tort Claims, (iv) upon execution of a control agreement establishing Lender's Control with respect to any Deposit Account, (v) upon consent of the issuer or any nominated person with respect to Letter of Credit Rights, and (vi) to the extent not subject to Article 9 of the UCC, upon recordation of the security interests granted hereunder in Intellectual Property in the applicable intellectual property registries, including the United States Patent and Trademark Office and the United States Copyright Office, the security interests granted to Lender hereunder constitute valid and perfected first priority Liens, subject only to Permitted Liens.

3.2     **Conflicting Legal Requirements and Contracts.**  Neither the execution and delivery by any Grantor of this Security Agreement, the creation and perfection of the security interest in the Collateral granted hereunder, nor compliance with the terms and provisions hereof (a) will not violate such Grantors organizational documents or any Requirement of Law applicable to such Grantor, (b) will not violate or result in a default under any indenture, agreement or other Instrument binding upon a Grantor or the assets of such Grantor, or give rise to a right thereunder to require any payment to be made by such Grantor, and (a) will not result in the creation or imposition of any Lien on any asset of such Grantor, except Liens created pursuant to the Loan Documents.

3.3     **Governmental Authority.**  No authorization, approval, or other action by, and no notice to or filing with, any Governmental Authority, except such as have been obtained or made and are in full force and effect and except for filings necessary to perfect Liens created pursuant to the Loan Documents is required either (a) for the pledge by any Grantor of the Collateral pursuant to this Security Agreement or for the execution, delivery, or performance of this Security Agreement by any Grantor, or (b) for the exercise by Lender of the rights provided for in this Security Agreement or the remedies in respect of the Collateral pursuant to this Security Agreement.

3.4     **Grantor Information.**  Each Grantor's exact legal name, jurisdiction of organization, type of entity, state issued organizational identification number and the location of its principal place of business, or chief executive office  and of the books and records relating to the Receivables, are disclosed on Schedule 3.4; no Grantor has other places of business except those set forth on Schedule 3.4.  Except as noted on Schedule 3.4 hereto, all such books, records, and Collateral are in such Grantor's possession.  No Grantor has done business under any other name (including any trade-name or fictitious business name) except for those names set forth on Schedule 3.4.  Except as provided on Schedule 3.4, no Grantor has changed its name, jurisdiction of organization, principal place of business, or chief executive office or its corporate structure in any way.

3.5     **Property Locations.**  The Inventory, Equipment, and Fixtures are located solely at the locations described on Schedule 3.5.

3.6     **No Financing Statements or Control Agreements.**  Other than (i) the financing statements and control agreements with respect to this Security Agreement and (ii) financing statements or control agreements exclusively for Permitted Liens, there are no other financing statements or control agreements covering any Collateral.

3.7 **Maintenance of Collateral**. All tangible Collateral which is necessary to any Grantor's business is in good repair and condition, ordinary wear and tear excepted, and none thereof is a Fixture except as specifically referred to herein on Schedule 3.5.

3.8 **Collateral**. Schedule 3.8 accurately lists all Deposit Accounts, Commercial Tort Claims, Material Contracts, Pledged Equity Interests and all letters of credit, in which any Grantor has any right, title, or interest. All information supplied by any Grantor to Lender with respect to any of the Collateral is true, correct, and complete in all material respects.

3.9 **Deposit, Commodity, and Securities Accounts**. Schedule 3.8 correctly identifies all Deposit Accounts in which a Grantor has an interest and the institutions holding such accounts, including whether any such Deposit Account is an Excluded Account. Each Grantor is the sole account holder of each such account and such Grantor has not consented to, and is not otherwise aware of, any person (other than Lender) having Control over, or any other interest in, any such account or the property credited thereto.

3.10 **Receivables**. Each Receivable (a) is the legal, valid and binding obligation of the Account Debtor in respect thereof, representing an unsatisfied obligation of such Account Debtor, (b) is and will be enforceable in accordance with its terms, (c) is not subject to any setoffs, defenses, taxes, counterclaims (except with respect to refunds, returns and allowances in the ordinary course of business), and (d) is in compliance with all applicable laws, whether federal, state, local or foreign.

3.11 **Letter of Credit Rights**. All letters of credit to which any Grantor has rights is listed on Schedule 3.8, and such Grantor has obtained the consent of each issuer or the nominated person of any letter of credit to the assignment of the Proceeds of the letter of credit to Lender.

3.12 **Instruments and Chattel Paper**. All Instruments and Chattel Paper have been delivered to Lender, together with corresponding endorsements duly executed by the applicable Grantor in favor of Lender, and such endorsements have been duly and validly executed and are binding and enforceable against such Grantor in accordance with their terms.

3.13 **Material Contracts**. All Material Contracts to which any Grantor is a party are set forth on Schedule 3.8. True and correct copies of all such Material Contracts have been furnished to Lender. Each Material Contract is in full force and effect; there have been no amendments, modifications, or supplements to any Material Contract of which Lender has not been advised in writing; and no default, breach, or potential default or breach has occurred and is continuing under any Material Contract, except as disclosed on Schedule 3.8. No Material Contract prohibits assignment or requires consent of or notice to any person in connection with the assignment to Lender hereunder, except such as has been given or made.

3.14 **Investment Related Property**.

(a) Schedule 3.8 sets forth all of the Pledged Stock, Pledged LLC Interests, and Pledged Partnership Interests owned by any Grantor, and such Pledged Equity Interests constitute the percentage of issued and outstanding shares of stock, percentage of membership interests, percentage of partnership interests, or percentage of beneficial interest of the respective issuers thereof indicated on such Schedule.

(b) Except as set forth on Schedule 3.8, no Grantor has acquired any equity interests of another entity or substantially all the assets of another entity within the past five (5) years.

(c)    Each Grantor is the record and beneficial owner of the Pledged Equity Interests owned by it free of all Liens (other than Permitted Liens), rights or claims of other persons, and there are no outstanding warrants, options or other rights to purchase, or shareholder, voting trust or similar agreements outstanding with respect to, or property that is convertible into, or that requires the issuance or sale of, any Pledged Equity Interests.

(d)    No consent of any person including any other partner (general, limited, or otherwise), any other member of a limited liability company, any other shareholder, or any other trust beneficiary is necessary or desirable in connection with the creation, perfection, or first priority status of the security interest of Lender in any Pledged Equity Interests or the exercise by Lender of the voting or other rights provided for in this Security Agreement or the exercise of remedies in respect thereof.

(e)    None of the Pledged Equity Interests are or represent interests in issuers that (i) are registered as investment companies or (ii) are dealt in or traded on securities exchanges or markets.

(f)    Except as otherwise set forth on Schedule 3.8, all of the Pledged Equity Interests are or represent interests in issuers that have not opted to be treated as securities under the UCC of any jurisdiction.

(g)    (i) Each Grantor has delivered to Lender all stock, member certificates, or other Instruments or Documents representing or evidencing the Pledged Equity Interests, *together with* corresponding assignment or transfer powers duly executed in blank by such Grantor, and such powers have been duly and validly executed and are binding and enforceable against such Grantor in accordance with their terms and (ii) to the extent such Pledged Equity Interests are uncertificated, each Grantor has taken all actions necessary or desirable to establish Lender's Control over such Pledged Equity Interests.

3.15    **Intellectual Property**.

(a)    All of the Intellectual Property is subsisting, valid, and enforceable.  The information contained on Schedule 3.15 is true, correct, and complete.  All issued Patents, Patent Licenses, Trademarks, Trademark Licenses, Copyrights, Copyright Licenses, Trade Secret, and Trade Secret Licenses of each Grantor are identified on Schedule 3.15.

(b)    Each Grantor is the sole and exclusive owner of the entire and unencumbered right, title, and interest in and to the Intellectual Property purported to be owned by such Grantor free and clear of any Liens, including any pledges, assignments, licenses, user agreements, and covenants by such Grantor not to sue third persons, other than Permitted Liens.

(c)    No third party is infringing, or in such Grantor's reasonable business judgment, may be infringing, any of such Grantor's rights under the Intellectual Property.

(d)    Each Grantor has performed and will continue to perform all acts and has paid and will continue to pay all required fees and taxes to maintain each and every item of the Intellectual Property in full force and effect throughout the world, as applicable.

(e)    Each of the Patents and Trademarks identified on Schedule 3.15 has been properly registered with the United States Patent and Trademark Office and in corresponding offices throughout the world (where appropriate) and each of the Copyrights identified on Schedule 3.15

has been properly registered with the United States Copyright Office and in corresponding offices throughout the world (where appropriate).

(f)       To the best of each Grantor's knowledge, no claims with respect to the Intellectual Property have been asserted and are pending (i) to the effect that the sale, licensing, pledge, or use of any of the products of such Grantor's business infringes any other party's valid copyright, trademark, service mark, trade secret, or other intellectual property right, (ii) against the use by such Grantor of any Intellectual Property used in such Grantor's business as currently conducted, or (iii) challenging the ownership or use by such Grantor of any of the Intellectual Property that Grantor purports to own or use, nor, to such Grantor's knowledge, is there a valid basis for such a claim described in this Section 3.15.

3.16     **Excluded Property**.  Except as set forth on Schedule 3.16, the Grantors do not own or have any right, title, or interest in any Excluded Property.

4.     **COVENANTS**.  From the date of this Security Agreement, and thereafter until this Security Agreement is terminated:

4.1     **General**.

(a)       **Inspection**.  Each Grantor will permit representatives designated by the Lender (including employees of the Lender or any consultants, accountants, lawyers, agents and appraisers retained by the Lender), upon reasonable prior notice, during normal business hours, (a) to inspect the Collateral, (b) to examine and make copies of the records of such Grantor relating to the Collateral, and (c) to discuss the Collateral and the related records of such Grantor with, and to be advised as to the same by, such Grantor's officers, employees, and accountants (and, in the case of any Receivable, with any Account Debtor), all at such reasonable times, as often as reasonably requested by the Lender at the Grantors' expense.

(b)       **Records and Reports; Notification of Default or Event of Default**.  Each Grantor will maintain true, complete, and accurate books and records with respect to the Collateral, and furnish to Lender such reports relating to the Collateral at such intervals as Lender shall from time to time request.  Each Grantor will give prompt (but in any event, with five (5) Business Days after each Grantor obtains knowledge thereof) notice in writing to Lender of the occurrence of any Default and of any other development, financial or otherwise, which might materially and adversely affect the Collateral.  Each Grantor shall mark its books and records to reflect the security interest of Lender under this Security Agreement.

(c)       **Financing Statements and Other Actions; Defense of Title**.  Each Grantor will deliver to Lender all financing statements and execute and deliver control agreements and other Documents and take such other actions as may from time to time be requested by Lender in order to maintain a first priority (subject to Permitted Liens)perfected security interest in and, in the case of Investment Related Property, Deposit Accounts (other than Excluded Accounts), Letter-of-Credit Rights, and Electronic Chattel Paper, Control of, the Collateral.  Each Grantor will take any and all actions necessary to defend title to the Collateral against all persons and to defend the security interest of Lender in the Collateral and the priority thereof against any Lien.

(d)       **Disposition of Collateral**.  No Grantor will sell, lease, license, or otherwise dispose of the Collateral except dispositions specifically permitted pursuant to the Loan Agreement.

(e)      **Lien**s.  No Grantor will create, incur, or suffer to exist any Lien on the Collateral except the security interest created by this Security Agreement or a Permitted Lien.

(f)      **Change in Location, Jurisdiction of Organization or Name**.  No Grantor will (i) have any Inventory, Equipment, Fixtures, or Proceeds or products thereof (other than Inventory and Proceeds thereof disposed of as permitted by Section 4.1(d)) at a location other than a location specified on Schedule 3.5, (ii) maintain records relating to the Receivables at a location other than at the location specified on Schedule 3.8, (iii) maintain a place of business at a location other than a location specified on Schedule 3.5, (iv) change its name or taxpayer identification number, (v) change its mailing address, or (vi) change its jurisdiction of organization, unless such Grantor shall have given Lender not less than thirty (30) days' prior written notice thereof, and Lender shall have determined that such change will not adversely affect the validity, perfection, or priority of Lender's security interest in the Collateral.  Prior to making any of the foregoing changes, each Grantor shall execute and deliver all such additional Documents and perform all additional acts as Lender, in its sole discretion, may request in order to continue or maintain the existence and priority of its security interest in all of the Collateral.

(g)      **Taxe**s.  Each Grantor will pay when due all taxes, assessments, and governmental charges and levies upon the Collateral in accordance with the Loan Agreement.

(h)      **Other Financing Statement**s.  No Grantor will authorize any other financing statement naming it as debtor covering all or any portion of the Collateral other than a financing statement exclusively for a Permitted Lien.

4.2      **Receivable**s.  No Grantor will make or agree to make any discount, credit, rebate, or other reduction in the original amount owing on a Receivable or accept in satisfaction of a Receivable less than the original amount thereof, except in accordance with its present policies and in the ordinary course of business.  Except as otherwise provided in this Security Agreement, each Grantor will, at such Grantor's sole expense, collect all amounts due or hereafter due to such Grantor under the Receivables and enforce such Grantor's rights under all Collateral Support or Supporting Obligation with respect to the Receivables.

4.3      **Inventory and Equipment**.

(a)      **Maintenance of Good**s.  Each Grantor will do all things necessary to maintain, preserve, protect, and keep the Inventory and the Equipment in good repair and working and saleable condition.

(b)      **Insurance**.  Each Grantor will maintain insurance coverage in accordance with the terms of the Loan Agreement.

(c)      **Certificate**s **of Title**.  With respect to any item of Equipment which is covered by a certificate of title and indication of a security interest on such certificate is required as a condition of perfection, upon the request of Lender, each Grantor shall cause Lender's security interest to be properly indicated thereon.

4.4      **Account**s.

(a)      **Verification of Account**s.  Lender shall have the right, at any time or times hereafter, in its name or in the name of a nominee of Lender, to verify the validity, amount, or any other matter relating to any Accounts, by mail, telephone, telegraph, or otherwise.

(b) **Disputed Accounts; Limitation on Modification of Accounts**. No Grantor will, without Lender's prior written consent, grant any extension of the time for payment of any of the Accounts, compromise, compound, or settle the same for less than the full amount thereof, release, wholly or partly, any person liable for the payment thereof, or allow any credit or discount whatsoever thereon other than trade discounts granted in the ordinary course of business of such Grantor.

(c) **Notice to Account Debtor**. Lender may, in its sole discretion, at any time or times after an Event of Default has occurred, and without prior notice to any Grantor (i) notify any or all Account Debtors that the Accounts have been assigned to Lender and that Lender has a security interest therein and (ii) direct any or all Account Debtors to make all payments upon the Accounts directly to Lender. Lender shall furnish Grantors with a copy of any such notice.

4.5     **Intellectual Property**.

(a) **Maintenance of Rights**. Each Grantor shall preserve and maintain all of its material rights in the Intellectual Property and protect its Intellectual Property from infringement, unfair competition, cancellation, or dilution by all appropriate action necessary in such Grantor's reasonable business judgment, including the commencement and prosecution of legal proceedings to recover damages for infringement and to defend and preserve its rights in the Intellectual Property.

(b) **No Abandonment**. No Grantor shall abandon any of the Intellectual Property necessary to the conduct of its business.

(c) **Licenses**. (i) No Grantor shall sell or assign any of its interest in any of the Intellectual Property other than in the ordinary course of business for full and fair consideration without the prior written consent of Lender; (ii) no Grantor shall grant any license or sublicense with respect to any of its Intellectual Property without the prior written consent of Lender; and (iii) each Grantor shall maintain the quality of any and all products and services with respect to which the Intellectual Property is used.

(d) **No Conflicting Agreements**. No Grantor shall enter into any agreement, including any licensing agreement, that is or may be inconsistent with such Grantor's obligations under this Security Agreement or any of the other Loan Documents.

(e) **Additional Intellectual Property**. Each Grantor shall give Lender prompt written notice if such Grantor shall obtain rights to or become entitled to the benefit of any Intellectual Property not identified on Schedule 3.15. Each Grantor shall execute and deliver any and all Patent Security Agreements, Copyright Security Agreements, or Trademark Security Agreements, each in form and substance satisfactory to Lender, as Lender may request to evidence Lender's Lien on such Intellectual Property.

(f) **Obligation upon Default**. On and after the occurrence of an Event of Default, each Grantor shall obtain any consents, waivers, or agreements necessary to enable Lender to exercise its rights and remedies with respect to the Intellectual Property.

4.6     **Instruments; Chattel Paper; and Documents**. Each Grantor will (a) deliver to Lender immediately upon execution of this Security Agreement the originals of all Chattel Paper and Instruments (if any then exists), (b) hold in trust for Lender upon receipt and immediately thereafter deliver to Lender any Chattel Paper and Instruments constituting Collateral, (c) mark conspicuously all Chattel Paper and Instruments (other than any delivered to Lender) with an appropriate reference to the security interest of

Lender, and (d) upon Lender's request, deliver to Lender (and thereafter hold in trust for Lender upon receipt and immediately deliver to Lender) any Document evidencing or constituting Collateral.

4.7     **Deposit Account**s.  With respect to any Deposit Account (other than an Excluded Account), each Grantor shall (a) maintain such accounts at the institutions described on <u>Schedule 3.8</u>, (b) deliver to each depository bank a control agreement in form and substance satisfactory to Lender with respect to Lender's rights in such account and obtain the execution of such control agreement by each institution stating that the pledge of such account has been recorded in the books and records of such institution and that Lender shall have exclusive Control over such deposit account, and (c) deliver to Lender all certificates or Instruments, if any, now or hereafter representing or evidencing such deposit accounts, accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance reasonably satisfactory to Lender.  Without Lender's consent, no Grantor shall establish any additional deposit accounts (other than an Excluded Account), unless such deposit accounts are subject to Lender's exclusive Control.

4.8     **Commercial Tort Claim**s.  If any Grantor at any time holds or acquires a Commercial Tort Claim, such Grantor shall (a) immediately forward to Lender written notification of any and all Commercial Tort Claims, including any and all actions, suits, and proceedings before any court or Governmental Authority by or affecting such Grantor; and (b) execute and deliver such statements, Documents and notices and do and cause to be done all such things as may be required by Lender, or required by law, including all things which may from time to time be necessary under the UCC to fully create, preserve, perfect, and protect the priority of Lender's security interest in any Commercial Tort Claims.

4.9     **Letter-of-Credit Right**s.  If any Grantor is at any time a beneficiary under a letter of credit now or hereafter issued in favor of any Grantor, such Grantor shall promptly notify Lender thereof in writing and, at Lender's request, such Grantor shall, pursuant to an agreement in form and substance satisfactory to Lender, either (a) arrange for the issuer or any confirmer of such letter of credit to consent to an assignment to Lender of the Proceeds of any drawing under the letter of credit or (b) arrange for Lender to become the transferee beneficiary of the letter of credit, with Lender agreeing, in each case, that the Proceeds of any drawing under the letter of credit are to be applied to the Secured Obligations as provided in the Loan Agreement.

4.10    **Investment Related Property**.

(a)     **No Modification of Right**s and Obligation.  Without the prior written consent of Lender, no Grantor shall vote to enable or take any other action to: (i) amend or terminate any partnership agreement, limited liability company agreement, certificate of incorporation, by-laws or other organizational documents in any way that materially changes the rights of such Grantor with respect to any Investment Related Property or adversely affects the validity, perfection or priority of Lender's security interest; (ii) permit any issuer of any Pledged Equity Interest to issue any additional stock, partnership interest, limited liability company interests or other equity interests of any nature or to issue securities convertible into or granting the right of purchase or exchange for any stock or other equity interest of any nature of such issuer; (iii) permit any issuer of any Pledged Equity Interest to dispose of all or a material portion of its assets; (iv) waive any default under or breach of any terms of organizational document relating to the issuer of any Pledged Equity Interest; or (v) cause any issuer of any Pledged Equity Interests which are not securities (for purposes of the UCC) on the date hereof to elect or otherwise take any action to cause such Pledged Equity Interests to be treated as securities for purposes of the UCC; *provided*, *however*, notwithstanding the foregoing, if any issuer of any Pledged Equity Interests takes any such action in violation of the foregoing in this <u>clause (v)</u>, such Grantor shall promptly notify Lender in writing of any such

election or action and, in such event, shall take all steps necessary, advisable, or requested to establish Lender's Control thereof.

(b)     **Performance of Underlying Obligation**s.  Each Grantor shall comply with all of its obligations under any shareholders' agreement, limited liability company agreement, partnership agreement, or other agreement relating to Pledged Equity Interests and shall enforce all of its rights with respect to any Investment Related Property.

(c)     **Changes in Capital Structure of Issuer**s.  Without the prior written consent of Lender, no Grantor shall permit any issuer of any Pledged Equity Interest to merge or consolidate.

(d)     **Consent of Grantor**.  To the extent the consent of a Grantor, whether in its capacity as a partner, member, general partner, managing member, shareholder, issuer, or otherwise, is required for the transfer, conveyance, or encumbrance of all or any portion of the Pledged Equity Interests in any corporation, partnership, or limited liability company, such Grantor hereby irrevocably (a) consents to the transfer or conveyance of the Pledged Equity Interests pursuant to Lender's exercise of its rights and remedies under this Security Agreement or any of the other Loan Documents, at law or in equity, (b) consents to the admission of Lender, its nominees, or any other transferee of any Pledged Equity Interest as a shareholder, member (including as the managing member), or partner (including as the general partner) of such corporation, limited liability company, or partnership, and (c) agrees that all terms and conditions in the constituent documents applicable to the pledge of any Pledged Equity Interest, the enforcement thereof, the transfer of any Pledged Equity Interest or the admission of Lender, its nominees, or any other transferee of any Pledged Equity Interest as a shareholder, member (including as the managing member), or partnership (including as the general partner) of such corporation, limited liability company, or partnership have been satisfied or waived.  Each Grantor hereby irrevocably agrees not to vote to amend the applicable constituent documents to provide that its equity interests are securities governed by Article 8 of the UCC, and hereby agrees and acknowledges that any such vote shall be invalid and any such amendment shall be void ab initio.

(e)     **Voting of Securitie**s.  Prior to the occurrence of an Event of Default, each Grantor is entitled to exercise all voting rights pertaining to any Pledged Equity Interests; *provided*, *however*, that no vote shall be cast or consent, waiver, or ratification given or action taken without the prior written consent of Lender which would (i) be inconsistent with or violate any provision of this Security Agreement or any other Loan Document or (ii) amend, modify, or waive any term, provision or condition of the certificate of incorporation, bylaws, certificate of formation, or other charter document, or other agreement relating to, evidencing, providing for the issuance of, or securing any Collateral; and *provided further* that such Grantor shall give Lender at least ten (10) Business Days' prior written notice that it intends to exercise, or the reasons for refraining from exercising, any voting or other consensual rights pertaining to the Collateral or any part thereof which might have a material adverse effect on the value of the Collateral or any part thereof.  On and after the occurrence of an Event of Default and if Lender elects to exercise such right, the right to vote any Pledged Equity Interests shall be vested exclusively in Lender.  To this end, each Grantor hereby irrevocably constitutes and appoints Lender the proxy and attorney-in-fact of such Grantor, with full power of substitution, to vote, and to act with respect to, any and all Collateral that is Investment Related Property Interests standing in the name of such Grantor or with respect to which such Grantor is entitled to vote and act, subject to the understanding that such proxy may not be exercised unless an Event of Default has occurred.  The proxy herein granted is coupled with an interest, is irrevocable, and shall continue until the termination of this Security Agreement pursuant to Section 6.13.

4.11    **Fixture**s.  For any Collateral that is a Fixture or an accession which has been attached to real estate or other goods prior to the perfection of the security interest of Lender, Grantor shall furnish Lender, upon demand, a disclaimer of interest in each such Fixture or accession and a consent in writing to the security interest of Lender therein, signed by all persons having any interest in such Fixture or accession by virtue of any interest in the real estate or other goods to which such Fixture or accession has been attached.

4.12    **Use and Operation of Collateral**.  Should any Collateral come into the possession of Lender, Lender may use or operate such Collateral for the purpose of preserving it or its value, pursuant to the order of a court of appropriate jurisdiction or in accordance with any other rights held by Lender in respect of such Collateral.  Each Grantor covenants to promptly reimburse and pay to Lender, at Lender's request, the amount of all expenses (including the cost of any insurance and payment of taxes or other charges) incurred by Lender in connection with its custody and preservation of the Collateral, and all such expenses, costs, taxes, and other charges shall bear interest at the Default Rate until repaid and, together with such interest, shall be payable by Grantor to Lender upon demand and shall become part of the Secured Obligations.  However, the risk of accidental loss or damage to, or diminution in value of, the Collateral is on Grantors, and Lender shall have no liability whatever for failure to obtain or maintain insurance, nor to determine whether any insurance ever in force is adequate as to amount or as to the risks insured.  With respect to the Collateral that is in the possession of Lender, Lender shall have no duty to fix or preserve rights against prior parties to such Collateral and shall never be liable for any failure to use diligence to collect any amount payable in respect of such Collateral.  The provisions of this subparagraph are applicable whether or not an Event of Default has occurred.

4.13    **Certain Proceed**s.  Notwithstanding any contrary provision herein, any and all Proceeds of any Collateral consisting of cash, checks and other non-cash items shall be part of the Collateral hereunder.  Any cash Proceeds of the Collateral which come into the possession of Lender on and after the occurrence of an Event of Default (including insurance Proceeds) may, at Lender's option, be applied in whole or in part to the Secured Obligations (to the extent then due), be released in whole or in part to or on the written instructions of such Grantor for any general or specific purpose, or be retained in whole or in part by Lender as additional Collateral.

4.14    **Further Assurance**s.  At any time and from time to time, upon the request of Lender, and at the sole expense of Grantors, each Grantor shall promptly execute and deliver all such further Instruments and Documents and take such further actions as Lender may reasonably request or deem necessary or desirable (a) to assure Lender that its security interests hereunder are perfected with a first priority Lien (subject only to Permitted Liens), (b) to carry out the provisions and purposes of this Security Agreement, including (i) the filing of such financing statements as Lender may require, (ii) executing control agreements with respect to the Collateral, in each case naming Lender, as secured party, in form and substance satisfactory to Lender, (iii) furnishing to Lender from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Lender may reasonably request, all in reasonable detail, (iv) the deposit of all certificates of title issuable with respect to any of the Collateral and noting thereon the security interest hereunder, (v) taking all actions required by law in any relevant UCC, and (vi) to ensure that a Lien and security interest is granted on any of the Excluded Property set forth in clause (a) of the definition of "Excluded Property", such Grantor shall use its best efforts to obtain any required consents from any Person with respect to any permit or license or any Contractual Obligation with such Person entered into by such Grantor that requires such consent as a condition to the creation by such Grantor of a Lien on any right, title or interest in such permit, license or Contractual Obligation related thereto.  A carbon, photographic, or other reproduction of this Security Agreement or of any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement and may be filed as a financing statement.

HOU 3972802v7

5.    **REMEDIES UPON EVENT OF DEFAULT**

5.1    **Remedies**.  On and after the occurrence of an Event of Default under the Loan Agreement or any other Loan Document, Lender may exercise any or all of the following rights and remedies:

(a)    **Contractual Remedies**.  Those rights and remedies provided in this Security Agreement, the Loan Agreement, or any other Loan Document, *provided that* this Section 5.1(a) shall not limit any rights or remedies available to Lender prior to the occurrence of an Event of Default.

(b)    **Legal Remedies**.  Those rights and remedies available to a secured party under the UCC (whether or not the UCC applies to the affected Collateral) or under any other applicable law (including any law governing the exercise of a bank's right of setoff or bankers' lien) when a debtor is in default under a security agreement.

(c)    **Disposition of Collateral**.  Without notice except as specifically provided in Section 5.2(c) or elsewhere herein, sell, lease, assign, grant an option or options to purchase or otherwise dispose of the Collateral or any part thereof in one or more parcels at public or private sale, for cash, on credit or for future delivery, and upon such other terms as Lender may deem commercially reasonable.  Neither Lender's compliance with any applicable state or federal law in the conduct of such sale, nor its disclaimer of any warranties relating to the Collateral, shall be considered to affect the commercial reasonableness of such sale.  Each Grantor hereby waives (to the extent permitted by applicable law) all rights of redemption, stay and/or appraisal which it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.

(d)    **Distributions**.  On and after the occurrence of an Event of Default, all payments and distributions made to any Grantor upon or with respect to the Collateral shall be paid or delivered as directed by Lender, and each Grantor agrees to take all such action as Lender may deem necessary or appropriate to cause all such payments and distributions to be made to Lender.  Further, Lender shall have the right, at any time after the occurrence of any Event of Default, to notify and direct any issuer to thereafter make all payments, dividends, and any other distributions payable in respect thereof directly to Lender.  Such issuer shall be fully protected in relying on the written statement of Lender that it then holds a security interest which entitles it to receive such payments and distributions.  Any and all Money and other property paid over to or received by Lender hereunder shall be retained by Lender as additional collateral hereunder and may be applied in accordance with Section 5.10 hereof.

(e)    **Use of Premises**.  Lender shall be entitled to occupy and use any premises owned or leased by any Grantor where any of the Collateral or any records relating to the Collateral are located until the Secured Obligations are paid or the Collateral is removed therefrom, whichever first occurs, without any obligation to pay such Grantor for such use and occupancy.

5.2    **Grantor's Obligations Upon Event of Default**.  Upon the request of Lender on and after the occurrence of an Event of Default, each Grantor will:

(a)    **Assembly of Collateral**.  Assemble and make available to Lender the Collateral and all records relating thereto at any place or places specified by Lender.

(b)    **Lender Access**.  Permit Lender, by Lender's representatives and agents, to enter any premises where all or any part of the Collateral, or the books and records relating thereto, or

both, are located, to take possession of all or any part of the Collateral and to remove all or any part of the Collateral.

(c) **Notice of Disposition of Collateral**. Each Grantor hereby waives notice of the time and place of any public sale or the time after which any private sale or other disposition of all or any part of the Collateral may be made. To the extent such notice may not be waived under applicable law, any notice made shall be deemed reasonable if sent to any Grantor, addressed in accordance with Section 6.13, at least ten (10) days prior to (i) the date of any such public sale or (ii) the time after which any such private sale or other disposition may be made. Lender shall not be obligated to make any sale or other disposition of the Collateral regardless of notice having been given. Subject to the provisions of applicable law, Lender may postpone or cause the postponement of the sale of all or any portion of the Collateral by announcement at the time and place of such sale, and such sale may, without further notice, to the extent permitted by law, be made at the time and place to which the sale was postponed, or Lender may further postpone such sale by announcement made at such time and place.

5.3 **Condition of Collateral; Warranties**. Lender has no obligation to clean-up or otherwise prepare the Collateral for sale. Lender may sell the Collateral without giving any warranties as to the Collateral. Lender may specifically disclaim any warranties of title or the like. This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

5.4 **Collection of Receivables**. On and after the occurrence of an Event of Default, Lender may at any time in its sole discretion, by giving Grantors written notice, elect to require that the Receivables be paid directly to Lender. In such event, each Grantor shall, and shall permit Lender to, promptly notify the Account Debtors under the Receivables of Lender's interest therein and direct such Account Debtors to make payment of all amounts then or thereafter due under the Receivables directly to Lender. Upon receipt of any such notice from Lender, each Grantor shall thereafter hold in trust for Lender, all amounts and Proceeds received by it with respect to the Receivables and immediately and at all times thereafter deliver to Lender all such amounts and Proceeds in the same form as so received, whether by cash, check, draft or otherwise, with any necessary endorsements. Lender shall hold and apply funds so received as provided by the terms of Section 5.10. If after the occurrence of an Event of Default, any Account Debtor fails or refuses to make payment on any Collateral when due, Lender is authorized, in its sole discretion, either in its own name or in the name of Grantors, to take such action as Lender shall deem appropriate for the collection of any amounts owed with respect to Collateral or upon which a delinquency exists. Each Grantor agrees that Lender may at any time and from time to time, if an Event of Default has occurred, compromise with the obligor on any Receivable, accept in full payment of any Receivable such amount as Lender in its sole discretion shall determine or abandon any Receivable, and any such action by Lender shall be commercially reasonable so long as Lender acts in good faith based on information known to it at the time it takes any such action. Regardless of any other provision hereof, however, Lender shall never be (a) liable for its failure to collect, or for its failure to exercise diligence in the collection of, any amounts owed with respect to Collateral, or (b) under any duty whatsoever to anyone except Grantors to account for funds that it shall actually receive hereunder.

5.5 **Cash Collateral Account**. On and after the occurrence of an Event of Default, Lender shall have, and each Grantor hereby grants to Lender, the right and authority to transfer all funds on deposit in the Deposit Accounts to a "Cash Collateral Account" (herein so called) maintained with a depository institution acceptable to Lender and subject to the exclusive direction, domain, and Control of Lender, and no disbursements or withdrawals shall be permitted to be made by any Grantor from such Cash Collateral Account. Such Cash Collateral Account shall be subject to the security interest in favor of Lender herein created, and each Grantor hereby grants a security interest to Lender in and to such Cash Collateral Account and all checks, drafts, and other items ever received by any Grantor for deposit therein. Furthermore, if an

19

Event of Default has occurred, Lender shall have the right, at any time in its discretion without notice to any Grantor, (a) to transfer to or to register in the name of Lender or nominee any certificates of deposit or deposit instruments constituting Deposit Accounts and shall have the right to exchange such certificates or Instruments representing Deposit Accounts for certificates or Instruments of smaller or larger denominations and (b) to take and apply against the Secured Obligations any and all funds then or thereafter on deposit in the Cash Collateral Account or otherwise constituting Deposit Accounts.

      5.6    **Intellectual Property**.  For purposes of enabling Lender to exercise its rights and remedies under this Security Agreement and enabling Lender and its successors and assigns to enjoy the full benefits of the Collateral, each Grantor hereby grants to Lender an irrevocable, nonexclusive license (exercisable without payment of royalty or other compensation to Grantor) to use, license, or sublicense any of the Intellectual Property.  Each Grantor shall provide Lender with reasonable access to all media in which any of the Intellectual Property may be recorded or stored and all computer programs used for the completion or printout thereof.  This license shall also inure to the benefit of all successors, assigns, and transferees of Lender.  On and after the occurrence of an Event of Default, Lender may require that Grantor assign all of their right, title, and interest in and to the Intellectual Property or any part thereof to Lender or such other person as Lender may designate pursuant to Documents satisfactory to Lender.  If no Event of Default has occurred, Grantors shall have the exclusive, non-transferable right and license to use the Intellectual Property in the ordinary course of business and the exclusive right to grant to other persons licenses and sublicenses with respect to the Intellectual Property for full and fair consideration.

      5.7    **Investment Related Property**.  Each Grantor recognizes that, by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder (collectively, the "Securities Act") and applicable state securities laws, Lender may be compelled, with respect to any sale of all or any part of the Investment Related Property conducted without prior registration or qualification of such Investment Related Property under the Securities Act and/or such state securities laws, to limit purchasers to those who will agree, among other things, to acquire the Investment Related Property for their own account, for investment and not with a view to the distribution or resale thereof. Each Grantor acknowledges that any such private sale may be at prices and on terms less favorable than those obtainable through a public sale without such restrictions (including a public offering made pursuant to a registration statement under the Securities Act) and, notwithstanding such circumstances, each Grantor agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner and that Lender shall have no obligation to engage in public sales and no obligation to delay the sale of any Investment Related Property for the period of time necessary to permit the issuer thereof to register it for a form of public sale requiring registration under the Securities Act or under applicable state securities laws, even if such issuer would, or should, agree to so register it.  If Lender determines to exercise its right to sell any or all of the Investment Related Property, upon written request, each Grantor shall and shall cause each issuer of any Pledged Equity Interest to be sold hereunder from time to time to furnish to Lender all such information as Lender may request in order to determine the number and nature of interest, shares, or other Instruments included in the Investment Related Property which may be sold by Lender in exempt transactions under the Securities Act and the rules and regulations of the Securities and Exchange Commission thereunder.  In case of any sale of all or any part of the Investment Related Property on credit or for future delivery, such Collateral so sold may be retained by Lender until the selling price is paid by the purchaser thereof, but Lender shall not incur any liability in case of the failure of such purchaser to take up and pay for such assets so sold and in case of any such failure, such Collateral may again be sold upon like notice.  Lender, instead of exercising the power of sale herein conferred upon them, may proceed by a suit or suits at law or in equity to foreclose security interests created hereunder and sell such Investment Related Property, or any portion thereof, under a judgment or decree of a court or courts of competent jurisdiction.

5.8     **Record Ownership of Securities**.  On and after the occurrence of an Event of Default, Lender at any time may have any Collateral that is Pledged Equity Interests and that is in the possession of Lender, or its nominee or nominees, registered in its name, or in the name of its nominee or nominees, as Lender; and, as to any Collateral that is Pledged Equity Interests so registered, each Grantor shall execute and deliver (or cause to be executed and delivered) to Lender all such proxies, powers of attorney, dividend coupons, or orders, and other Documents as such Lender may reasonably request for the purpose of enabling Lender to exercise the voting rights and powers which it is entitled to exercise under this Security Agreement or to receive the dividends and other distributions and payments in respect of such Collateral that is Pledged Equity Interests or Proceeds thereof which it is authorized to receive and retain under this Security Agreement.

5.9     **Sales on Credit**.  If Lender sells any of the Collateral upon credit, Grantors will be credited only with payments actually made by the purchaser, received by Lender, and applied to the indebtedness of the purchaser.  In the event the purchaser fails to pay for the Collateral, Lender may resell the Collateral and Grantors shall be credited with the Proceeds of the sale.

5.10     **Application of Proceeds**.  On and after the occurrence of an Event of Default, the Proceeds of the Collateral shall be applied by Lender to payment of the Secured Obligations in accordance with Section 2.08 of the Loan Agreement.  If the Proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Secured Obligations, Grantors shall be liable for the deficiency and the fees of any attorneys employed by Lender to collect such deficiency.

5.11     **Power of Attorney**.  Each Grantor hereby appoints Lender and Lender's designee as its attorney, with power: (a) on and after the occurrence of an Event of Default, to endorse such Grantor's name on any checks, notes, acceptances, money orders, or other forms of payment or security that come into Lender's possession; (b) to sign such Grantor's name on any invoice, bill of lading, warehouse receipt, or other negotiable or non-negotiable Document constituting Collateral, on drafts against customers, on assignments of Accounts, on notices of assignment, financing statements, and other public records, and to file any such financing statements by electronic means with or without a signature as authorized or required by applicable law or filing procedure; (c) so long as any Event of Default has occurred, to notify the post office authorities to change the address for delivery of any Grantor's mail to an address designated by Lender and to receive, open, and dispose of all mail addressed to any Grantor; (d) to send requests for verification of Accounts to customers or Account Debtors; (e) to complete in any Grantor's name or Lender's name, any order, sale, or transaction, obtain the necessary Documents in connection therewith, and collect the Proceeds thereof; (f) to clear Inventory through customs in any Grantor's name, Lender's name, or the name of Lender's designee, and to sign and deliver to customs officials powers of attorney in any Grantor's name for such purpose; (g) to the extent that any Grantor's authorization given in Section 2.3 of this Security Agreement is not sufficient, to file such financing statements with respect to this Security Agreement, with or without such Grantor's signature, or to file a photocopy of this Security Agreement in substitution for a financing statement, as Lender may deem appropriate, and to execute in such Grantor's name such financing statements and amendments thereto and continuation statements which may require such Grantor's signature; and (h) subject to the terms and conditions of this Security Agreement and, if applicable, after Lender has determined that any Grantor has failed to take any action required under the Loan Agreement, this Security Agreement or any other Loan Documents, to do all things reasonably necessary to carry out the terms and conditions of the Loan Agreement and this Security Agreement.  Each Grantor ratifies and approves all acts of such attorney.  None of Lender or a Secured Party or their attorneys will be liable for any acts or omissions or for any error of judgment or mistake of fact or law except for their willful misconduct, or gross negligence as determined by a court of competent jurisdiction in final and non-appealable judgment.  This power, being coupled with an interest, is irrevocable until this Security Agreement is terminated in accordance with Section 6.16.

6.      **GENERAL PROVISIONS**.

6.1      **Joint and Several Obligations of Grantors**.

(a)      Each Grantor is accepting joint and several liability hereunder with other persons that have executed or will execute a Security Agreement in consideration of the financial accommodation to be provided by the holders of the Secured Obligations, for the mutual benefit, directly and indirectly, of each Grantor and in consideration of the undertakings of each Grantor to accept joint and several liability for the Secured Obligations of each of them.

(b)      Each Grantor, jointly and severally, hereby irrevocably and unconditionally accepts, not merely as a surety but also as a co-debtor, joint and several liability with the other Grantors with respect to the payment and performance of all of the Secured Obligations, it being the intention of the parties hereto that all the Secured Obligations shall be the joint and several Secured Obligations of each Grantor without preferences or distinction among them.

6.2      **Limitation of Obligations**.

(a)      The provisions of this Security Agreement are severable, and in any action or proceeding involving any applicable law affecting the rights of creditors generally, if the Secured Obligations of any Grantor under this Security Agreement would otherwise be held or determined to be avoidable, invalid, or unenforceable on account of the amount of such Grantor's liability under this Security Agreement, then, notwithstanding any other provision of this Security Agreement to the contrary, the amount of such liability shall, without any further action by Grantors or Lender, be automatically limited and reduced to the highest amount that is valid and enforceable as determined in such action or proceeding (such highest amount determined hereunder being the relevant Grantor's "Maximum Liability").  This Section 6.2 with respect to the Maximum Liability of each Grantor is intended solely to preserve the rights of Lender hereunder to the maximum extent not subject to avoidance under applicable law, and none of Grantors or any other Person shall have any right or claim under this Section 6.2(a) with respect to the Maximum Liability, except to the extent necessary to ensure that the Secured Obligations of Grantors hereunder shall not be rendered voidable under applicable law.

(b)      Each Grantor agrees that the Secured Obligations may at any time and from time to time exceed the Maximum Liability of such Grantor, and may exceed the aggregate Maximum Liability of all other Grantors, without impairing this Security Agreement or affecting the rights and remedies of Lender.  Nothing in this Section 6.2(b) shall be construed to increase any Grantor's Secured Obligations hereunder beyond its Maximum Liability.

(c)      Notwithstanding any or all of the Secured Obligations becoming unenforceable against any Grantor or the determination that any or all of the Secured Obligations shall have become discharged, disallowed, invalid, illegal, void, or otherwise unenforceable as against any Grantor (whether by operation of any present or future law or by order of any court or governmental agency), the Secured Obligations shall, for the purposes of this Security Agreement, continue to be outstanding and in full force and effect.

6.3      **NO RELEASE OF GRANTORS**.  THE OBLIGATIONS OF GRANTORS UNDER THIS SECURITY AGREEMENT SHALL NOT BE REDUCED, LIMITED, OR TERMINATED, AND GRANTORS SHALL NOT BE DISCHARGED FROM ANY OBLIGATION HEREUNDER, FOR ANY REASON WHATSOEVER (other than pursuant to Section 6.16), including (and whether or not the same

shall have occurred or failed to occur once or more than once and whether or not Grantors shall have received notice thereof):

(a)      (i) any increase in the principal amount of, or interest rate applicable to, (ii) any extension of the time of payment, observance, or performance of, (iii) any other amendment or modification of any of the other terms and provisions of, (iv) any release, composition, or settlement (whether by way of acceptance of a plan of reorganization or otherwise) of, (v) any subordination (whether present or future or contractual or otherwise) of, or (vi) any discharge, disallowance, invalidity, illegality, voidness, or other unenforceability of, the Secured Obligations;

(b)      (i) any failure to obtain, (ii) any release, composition, or settlement of, (iii) any amendment or modification of any of the terms and provisions of, (iv) any subordination of, or (v) any discharge, disallowance, invalidity, illegality, voidness, or other unenforceability of, any Loan Documents;

(c)      (i) any failure to obtain or any release of, any failure to protect or preserve, (ii) any release, compromise, settlement, or extension of the time of payment of any Secured Obligations constituting, (iii) any failure to perfect or maintain the perfection or priority of any Lien upon, (iv) any subordination of any Lien upon, or (v) any discharge, disallowance, invalidity, illegality, voidness, or other unenforceability of any Lien or intended Lien upon, any collateral now or hereafter securing, the Secured Obligations or any other guaranties thereof;

(d)      any termination of or change in any relationship between Grantors and Lender or the addition or release (subject to Section 6.5) of any other Grantor;

(e)      any exercise of, or any failure or election not to exercise, delay in the exercise of, waiver of, or forbearance of, or other indulgence with respect to, any right, remedy, or power available to Secured Party, including (i) any election not to or failure to exercise any right of setoff, recoupment, or counterclaim, (ii) any election of remedies effected by Secured Party, including the foreclosure upon any real estate constituting collateral, whether or not such election affects the right to obtain a deficiency judgment, and (iii) any election by Lender in any proceeding under the Bankruptcy Code of the application of Section 1111(b)(2) of the Bankruptcy Code; and

(f)      ANY OTHER ACT OR FAILURE TO ACT OR ANY OTHER EVENT OR CIRCUMSTANCE THAT (i) VARIES THE RISK OF GRANTORS UNDER THIS SECURITY AGREEMENT OR (ii) BUT FOR THE PROVISIONS HEREOF, WOULD, AS A MATTER OF STATUTE OR RULE OF LAW OR EQUITY, OPERATE TO REDUCE, LIMIT OR TERMINATE THE OBLIGATIONS OF GRANTORS HEREUNDER OR DISCHARGE GRANTORS FROM ANY OBLIGATION HEREUNDER.

6.4      **Subordination of Certain Claim**s.  Any and all rights and claims of a Grantor against another Grantor or against any other Person or property, arising by reason of any payment by any Grantors to Lender pursuant to the provisions, or in respect, of this Security Agreement shall be subordinate, junior, and subject in right of payment to the prior and indefeasible payment in full of all Secured Obligations to Lender, and until such time, each Grantor defers all rights of subrogation, contribution, or any similar right and until such time, agrees not to enforce any such right or remedy Secured Party may now or hereafter have against another Grantor or any endorser of all or any part of the Secured Obligations and any right to participate in, or benefit from, any security given to Lender to secure any of the Secured Obligations.  All Liens and security interests of each Grantor, whether now or hereafter arising and howsoever existing, in assets of another Grantor or any assets securing the Secured Obligations shall be and hereby are subordinated to the rights and interests of Lender and in those assets until the prior and indefeasible final

payment in full of all Secured Obligations to Lender. If any amount shall be paid to any Grantor contrary to the provisions of this <u>Section 6.4</u> at any time when any of the Secured Obligations shall not have been indefeasibly paid in full, such amount shall be held in trust for the benefit of Lender and shall forthwith be turned over in kind in the form received to Lender (duly endorsed if necessary) to be credited and applied against the Secured Obligations, whether matured or unmatured, in accordance with the terms of the Loan Agreement.

6.5    **Recovered Payments**. The Secured Obligations shall be deemed not to have been paid, observed, or performed, and Grantors' Secured Obligations under this Security Agreement in respect thereof shall continue and not be discharged, to the extent that any payment, observance, or performance thereof by any Grantor is recovered from or paid over by or for the account of Lender for any reason, including as a preference or fraudulent transfer or by virtue of any subordination (whether present or future or contractual or otherwise) of the Secured Obligations, whether such recovery or payment over is effected by any judgment, decree, or order of any court or governmental agency; by any plan of reorganization; or by settlement or compromise by Lender (whether or not consented to by Grantors) of any claim for any such recovery or payment over. Each Grantor hereby expressly waives the benefit of any applicable statute of limitations and agrees that it shall be liable hereunder whenever such a recovery or payment over occurs.

6.6    **No Waiver**. No delay or omission of Lender to exercise any right or remedy granted under this Security Agreement shall impair such right or remedy or be construed to be a waiver of any Event of Default, or an acquiescence therein, and any single or partial exercise of any such right or remedy shall not preclude any other or further exercise thereof or the exercise of any other right or remedy. No waiver, amendment, or other variation of the terms, conditions, or provisions of this Security Agreement whatsoever shall be valid unless in writing signed by Lender and then only to the extent in such writing specifically set forth. All rights and remedies contained in this Security Agreement or by law afforded shall be cumulative and all shall be available to Lender until the Secured Obligations have been paid in full.

6.7    **Lender Performance of Grantor's Obligations**. Without having any obligation to do so, Lender may perform or pay any Secured Obligation which any Grantor has agreed to perform or pay in this Security Agreement and each Grantor shall, jointly and severally, reimburse Lender for any amounts paid by Lender pursuant to this <u>Section 6.7</u>. Each Grantor's Secured Obligation to reimburse Lender pursuant to the preceding sentence shall be a Secured Obligation payable on demand.

6.8    **Specific Performance of Certain Covenants**. Each Grantor acknowledges and agrees that a breach of any of the covenants contained in <u>Sections 4.1(c)</u>, <u>4.1(e)</u>, <u>4.6</u>, <u>5.4</u>, <u>5.5</u>, <u>5.6</u>, <u>5.10</u>, <u>5.11</u>, or <u>6.9</u> will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breaches; therefore each Grantor further agrees, without limiting the right of Lender to seek and obtain specific performance of other Secured Obligations of such Grantor contained in this Security Agreement, that the covenants of such Grantor contained in the Sections referred to in this <u>Section 6.8</u> shall be specifically enforceable against such Grantor.

6.9    **Dispositions Not Authorized**. No Grantor is authorized to sell or otherwise dispose of the Collateral except as permitted in the Loan Agreement. Notwithstanding any course of dealing between any Grantor and Lender or other conduct of Lender, no authorization to sell or otherwise dispose of the Collateral shall be binding upon Lender unless such authorization is in writing signed by Lender.

6.10    **Waivers**. Except to the extent expressly otherwise provided herein or in other Loan Documents and to the fullest extent permitted by applicable law, each Grantor waives (a) any right to require Lender to proceed against any other Person, to exhaust its rights in Collateral, or to pursue any other right which Lender may have; (b) with respect to the Secured Obligations, presentment and demand for payment,

HOU 3972802v7

protest, notice of protest and nonpayment, notice of intent to accelerate, and notice of acceleration; and (c) all rights of marshaling in respect of any and all of the Collateral.

6.11 **Benefit of Agreement**. The terms and provisions of this Security Agreement shall be binding upon and inure to the benefit of Grantors, Lender, the Secured Parties and their respective successors and assigns, except that no Grantor shall have the right to assign its rights or delegate its Secured Obligations or duties under this Security Agreement or any interest herein, without the prior written consent of Lender.

6.12 **Survival**. All representations and warranties of each Grantor contained in this Security Agreement shall survive the execution and delivery of this Security Agreement. Without prejudice to the survival of any other Secured Obligation of each Grantor hereunder, the Secured Obligations and any other obligations of each Grantor under Sections 6.14 and 6.18 shall survive termination of this Security Agreement.

6.13 **Sending Notices**. Whenever any notice is required or permitted to be given under the terms of this Security Agreement, the same shall be given in accordance with the Loan Agreement.

6.14 **Taxes and Expenses**. Any taxes (including income taxes) payable or ruled payable by federal or state authority in respect of this Security Agreement shall be paid by each Grantor, together with interest and penalties, if any. Grantors shall, jointly and severally, reimburse Lender for any and all out of pocket expenses (including attorneys', auditors', and accountants' fees) paid or incurred by Lender in connection with the preparation, execution, and delivery of this Security Agreement in accordance with Section 8.03 of the Loan Agreement. Grantors also shall reimburse Lender for any and all out of pocket expenses and internal charges (including attorneys', auditors', and accountants' fees, and time charges of attorneys, paralegals, auditors, and accountants who may be employees of Lender) paid or incurred by Lender in connection with the administration of this Security Agreement and in the audit, analysis, administration, collection, preservation or sale of the Collateral (including the expenses and charges associated with any periodic or special audit of the Collateral). In addition, Grantors shall be, jointly and severally, obligated to pay all of the costs and expenses incurred by Lender, including attorneys' fees and court costs, in obtaining or liquidating the Collateral, in enforcing payment of the Secured Obligations, or in the prosecution or defense of any action or proceeding by or against Lender or Grantor concerning any matter arising out of or connected with this Security Agreement, any Collateral or the Secured Obligations, including any of the foregoing arising in, arising under, or related to, a case under any bankruptcy, insolvency, or similar law. Any and all costs and expenses incurred by each Grantor in the performance of actions required pursuant to the terms hereof shall be borne solely by such Grantor.

6.15 **Headings**. The title of and section headings in this Security Agreement are for convenience of reference only, and shall not govern the interpretation of any of the terms and provisions of this Security Agreement.

6.16 **Termination**. This Security Agreement shall continue in effect (notwithstanding the fact that from time to time there may be no Secured Obligations outstanding) until (a) the Loan Agreement has terminated pursuant to its express terms and (b) all of the Secured Obligations have been indefeasibly paid and performed in full and no commitments of Lender which would give rise to any Secured Obligations are outstanding; *provided that* the termination of this Security Agreement under this Section 6.16 is subject to Section 6.5.

6.17 **GOVERNING LAW/VENUE**.

(A)     THIS SECURITY AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (AND NOT THE LAW OF CONFLICTS) OF THE STATE OF TEXAS, BUT GIVING EFFECT TO FEDERAL LAWS APPLICABLE TO NATIONAL BANKS.

(B)     EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE NONEXCLUSIVE JURISDICTION OF ANY U.S. FEDERAL OR TEXAS STATE COURT SITTING IN HOUSTON, TEXAS IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS SECURITY AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH STATE COURT OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT, NON-APPEALABLE IN ANY SUCH ACTION OR PROCEEDING MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT SHALL AFFECT ANY RIGHT THAT THE LENDER MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT AGAINST ANY GRANTOR OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

(C)     EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT IT MAY LEGALLY AND EFFECTIVELY DO SO, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT IN ANY COURT REFERRED TO IN PARAGRAPH (B) OF THIS SECTION. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(a)     EACH PARTY TO THIS SECURITY AGREEMENT IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 8.01 OF THE LOAN AGREEMENT. NOTHING IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT WILL AFFECT THE RIGHT OF ANY PARTY TO THIS SECURITY AGREEMENT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.

6.18     **Indemnity**. EACH GRANTOR DOES HEREBY ASSUME ALL LIABILITY FOR THE COLLATERAL, FOR THE SECURITY INTEREST OF LENDER, AND FOR ANY USE, POSSESSION, MAINTENANCE, AND MANAGEMENT OF ALL OR ANY OF THE COLLATERAL, INCLUDING ANY TAXES ARISING AS A RESULT OF, OR IN CONNECTION WITH, THE TRANSACTIONS CONTEMPLATED HEREIN, AND HEREBY ASSUMES LIABILITY FOR, AND SHALL INDEMNIFY AND HOLD LENDER AND ITS SUCCESSORS, ASSIGNS, AGENTS, ATTORNEYS, AND EMPLOYEES HARMLESS FROM AND AGAINST, ANY AND ALL CLAIMS, CAUSES OF ACTION, OR LIABILITY FOR INJURIES TO, OR DEATHS OF, PERSONS AND DAMAGE TO PROPERTY, HOWSOEVER ARISING FROM OR INCIDENT TO SUCH USE, POSSESSION, MAINTENANCE, AND MANAGEMENT, WHETHER SUCH PERSONS BE AGENTS OR

EMPLOYEES OF GRANTOR OR OF THIRD PARTIES, OR SUCH DAMAGE BE TO PROPERTY OF GRANTOR OR OF OTHERS.

THE GRANTORS, JOINTLY AND SEVERALLY, SHALL INDEMNIFY THE LENDER, AND EACH RELATED PARTY OF THE LENDER (EACH SUCH PERSON BEING CALLED AN "INDEMNITEE") AGAINST, AND HOLD EACH INDEMNITEE HARMLESS FROM, ANY AND ALL LOSSES, CLAIMS, DAMAGES, PENALTIES, INCREMENTAL TAXES, LIABILITIES AND RELATED EXPENSES, INCLUDING THE FEES, CHARGES AND DISBURSEMENTS OF ANY COUNSEL FOR ANY INDEMNITEE, INCURRED BY OR ASSERTED AGAINST ANY INDEMNITEE ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF (I) THE EXECUTION OR DELIVERY OF THE LOAN DOCUMENTS OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED THEREBY, THE PERFORMANCE BY THE PARTIES HERETO OF THEIR RESPECTIVE OBLIGATIONS THEREUNDER OR THE CONSUMMATION OF THE TRANSACTIONS OR ANY OTHER TRANSACTIONS CONTEMPLATED HEREBY, (II) ANY LOAN OR THE USE OF THE PROCEEDS THEREFROM, (III) ANY ACTUAL OR ALLEGED PRESENCE OR RELEASE OF HAZARDOUS MATERIALS ON OR FROM ANY PROPERTY OWNED OR OPERATED BY ANY GRANTOR, OR ANY ENVIRONMENTAL LIABILITY RELATED IN ANY WAY TO ANY GRANTOR, OR (IV) ANY ACTUAL OR PROSPECTIVE CLAIM, LITIGATION, INVESTIGATION OR PROCEEDING RELATING TO ANY OF THE FOREGOING, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY AND REGARDLESS OF WHETHER ANY INDEMNITEE IS A PARTY THERETO; PROVIDED THAT SUCH INDEMNITY SHALL NOT, AS TO ANY INDEMNITEE, BE AVAILABLE TO THE EXTENT THAT SUCH LOSSES, CLAIMS, DAMAGES, PENALTIES, LIABILITIES OR RELATED EXPENSES ARE DETERMINED BY A COURT OF COMPETENT JURISDICTION BY FINAL AND NONAPPEALABLE JUDGMENT TO HAVE RESULTED FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNITEE. WITHOUT LIMITATION OF THE FOREGOING, IT IS THE INTENTION OF THE GRANTORS AND EACH GRANTOR AGREES THAT THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNITEE WITH RESPECT TO LOSSES, CLAIMS, DAMAGES, PENALTIES, LIABILITIES AND RELATED EXPENSES (INCLUDING, WITHOUT LIMITATION, ALL EXPENSES OF LITIGATION OR PREPARATION THEREFOR), WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE OF SUCH (AND/OR ANY OTHER) INDEMNITEE.

WITHOUT LIMITING ANY OTHER PROVISION OF THIS SECURITY AGREMEENT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF THE GRANTORS AND THE LENDER AGREES THAT IT SHALL NOT ASSERT, AND HEREBY WAIVES, ANY CLAIM AGAINST THE OTHER, (I) FOR ANY DAMAGES ARISING FROM THE USE BY OTHERS OF INFORMATION OR OTHER MATERIALS OBTAINED THROUGH TELECOMMUNICATIONS, ELECTRONIC OR OTHER INFORMATION TRANSMISSION SYSTEMS (INCLUDING THE INTERNET), OR (II) ON ANY THEORY OF LIABILITY, FOR SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF, THIS SECURITY AGREEMENT, ANY OTHER LOAN DOCUMENT, OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED HEREBY OR THEREBY, THE TRANSACTIONS, ANY LOAN OR THE USE OF THE PROCEEDS THEREOF; PROVIDED THAT, NOTHING IN THIS PARAGRAPH SHALL RELIEVE ANY GRANTOR OF ANY OBLIGATION IT MAY HAVE TO INDEMNIFY AN INDEMNITEE AGAINST SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES ASSERTED AGAINST SUCH INDEMNITEE BY A THIRD PARTY.

6.19    **WAIVER OF JURY TRIAL**.  EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR

27

RELATING TO THIS SECURITY AGREEMENT, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE OR OTHER AGENT (INCLUDING ANY ATTORNEY) OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS SECURITY AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

6.20 **FINAL AGREEMENT**. THIS SECURITY AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.**
**SIGNATURE PAGE TO FOLLOW.**

HOU 3972802v7

**IN WITNESS WHEREOF**, Grantors and Lender have executed this Security Agreement as of the date first above written.

GRANTOR:

FIELDWOOD ENERGY I LLC,
a Texas limited liability company

By: _____
Name; _____
Title: _____

GOM SHELF LLC,
a Delaware limited liability company

By: _____
Name; _____
Title: _____

LENDER:

APACHE CORPORATION


By: _____

Name: _____

Title: _____

## SCHEDULE 3.4[1]

## GRANTOR INFORMATION

1.      Full Legal Name, Type of Organization, Jurisdiction of Organization, Chief Executive Office / Place of Business and Organizational Identification Number of each Grantor:

| Full Legal Name | Type of Organization | Jurisdiction of Organization | Chief Executive Office/Place of Business | Organization I.D.# |
|---|---|---|---|---|
| FIELDWOOD ENERGY I LLC | Limited Liability Company | Texas | 2000 W. Sam Houston Pkwy S., Suite 1600, Houston, Texas 77042 | [●] |
| GOM SHELF LLC | Limited Liability Company | Delaware | 2000 W. Sam Houston Pkwy S., Suite 1600, Houston, Texas 77042 | [●] |

2.      Other Names (including any Trade-Name or Fictitious Business Name) under which each Grantor has conducted business:

| Full Legal Name | Trade Name or Fictitious Business Name |
|---|---|
| [●] | [●] |

3.      Changes in Name, Jurisdiction of Organization, Chief Executive Office or Sole Place of Business and Corporate Structure within past five (5) years:

| Full Legal Name | Change in Name, Jurisdiction, Chief Executive Office, Sole Place of Business or Corporate Structure |
|---|---|
| [●] | [●] |

4.      Financing Statements:

| Name of Grantor | Filing Jurisdiction(s)[2] |
|---|---|
| FIELDWOOD ENERGY I LLC | Texas |

---

[1] To be completed in a manner mutually acceptable to all parties as a conditions to Apache's execution.
[2] Solely with respect to personal property

| GOM SHELF LLC | Delaware |
|---|---|

**SCHEDULE 3.5[3]**

**PROPERTY LOCATIONS**

1.      Locations owned by Grantor

        None.

2.      Locations leased by Grantor as lessee

| Name of Grantor | Location of Equipment, Inventory, and Fixtures |
|---|---|
| [•] | [•] |

---

[3]To be completed in a manner mutually acceptable to all parties as a conditions to Apache's execution.

## SCHEDULE 3.8[4]

## COLLATERAL

1.     1.     Deposit Accounts:

| Grantor | Name of Depositary Bank | Account Number | Account Name | Excluded (Y/N) |
|---------|-------------------------|----------------|--------------|----------------|
| [●] | [●] | [●] | [●] | [●] |

2.     Commercial Tort Claims:

    None.

3.     Material Contracts:

| Name of Grantor | Material Contracts |
|-----------------|--------------------|
| | |

4.     Letters of Credit:

    None.

5.     Investment Related Property:

| Grantor | Issuer | Certificated (Y/N) | Certificate No. (if any) | No. of Pledged Units | % of Outstanding LLC Interests of the Limited Liability Company |
|---------|--------|--------------------|--------------------------|----------------------|----------------------------------------------------------------|
| [●] | [●] | [●] | [●] | [●] | [●] |

---

[4] To be completed in a manner mutually acceptable to all parties as a conditions to Apache's execution.

<u>**SCHEDULE 3.15**</u>

**INTELLECTUAL PROPERTY
PATENTS AND PATENT LICENSES**

1.      Patents

        None.

2.      Patent Licenses

        None.

## TRADEMARKS AND TRADEMARK LICENSES

3.      Trademarks

        None.

4.      Trademark Licenses

        None.

## COPYRIGHTS AND COPYRIGHT LICENSES

5.      Copyrights

        None.

6.      Copyright Licenses

        None.

## TRADE SECRETS AND TRADE SECRET LICENSES

7.      Trade Secrets

        None.

8.      Trade Secret Licenses

        None

HOU 3972802v7

**SCHEDULE 3.16[5]**

**EXCLUDED COLLATERAL**

| Name of Grantor | Description of Excluded Collateral |
|---|---|
|  |  |

---

[5] To be completed in a manner mutually acceptable to all parties as a conditions to Apache's execution.

## Exhibit 10

**Guarantee (Fieldwood Energy I LLC)**

## GUARANTEE

**THIS GUARANTEE** (as it may be amended, restated, supplemented or otherwise modified from time to time, this "Guarantee") is executed as of_____, 20[●], by FIELDWOOD ENERGY I LLC, a Texas limited liability company ("Guarantor"), in favor of APACHE CORPORATION, a Delaware corporation ("Lender"), on behalf of itself and the other Secured Parties (as defined in the Loan Agreement described below).

## INTRODUCTORY PROVISIONS:

A.     This Guarantee is given in connection with that certain Standby Loan Agreement dated as of _____, 20[●] among Guarantor, GOM Shelf LLC, a Delaware limited liability company ("GOM"), and the Lender (as it may be amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement").

B.     GOM is (i) a Co-Borrower under the Loan Agreement and (ii) a wholly owned subsidiary of Guarantor.

C.     Guarantor will derive substantial direct and indirect benefit from the transactions contemplated by the Loan Agreement and the other Loan Documents.

D.     Guarantor is executing and delivering this Guarantee to induce the Lender to provide Loans to Borrowers, including GOM, under the Loan Agreement.

**NOW, THEREFORE**, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor hereby guarantees to Lender the prompt payment and performance of the Guaranteed Obligations, this Guarantee being upon the following terms and conditions:

1.     **Defined Term**s.  Any capitalized term used in this Guarantee and not otherwise defined herein shall have the meaning ascribed to such term in the Loan Agreement.  In addition, the following terms have the following meanings:

"Dispute" means any action, dispute, claim, or controversy of any kind, whether in contract or tort, statutory, or common law, legal or equitable, now existing or hereafter arising, under or in connection with, or in any way pertaining to, this Guarantee and each other document, contract, and instrument required hereby, or now or hereafter delivered to Lender in connection herewith, or any past, present, or future extensions of credit and other activities, transactions, or obligations of any kind related directly or indirectly to any of the foregoing documents, including, without limitation, any of the foregoing arising in connection with the exercise of any self-help, ancillary, or other remedies pursuant to any of the foregoing documents.

"Guaranteed Obligations" means (a) all unpaid principal of and accrued and unpaid interest on the Loans, (b) all accrued and unpaid fees and all expenses, reimbursements, indemnities and other obligations and indebtedness (including interest and fees accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), (c) all costs and expenses, including all attorneys' fees and legal expenses, incurred by Lender to preserve and maintain the Collateral, collect the obligations described herein or described in the other Loan Documents, and enforce this Guarantee, the Security Agreement, the Mortgage or any rights under any other Loan Documents, (d) the obligation to reimburse any amount that Lender (in its sole and absolute discretion) elects to pay or advance on behalf of any Co-Borrower following the occurrence of an Event of Default, (e) obligations and liabilities of the Borrowers to the Lender, any Secured Party or any indemnified

party, individually or collectively, existing on the Effective Date or arising thereafter, direct or indirect, joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, secured or unsecured, arising by contract, operation of law or otherwise, in all cases arising or incurred under this Guarantee, under any of the other Loan Documents, under the Decommissioning Agreement or in respect of any of the Loans made or any reimbursement or other obligations incurred under any of the foregoing, (f) all amounts owed under any extension, renewal, or modification of any of the foregoing and (g) any of the foregoing that arises after the filing of a petition by or against any Co-Borrower under the Bankruptcy Code, even if the obligations due do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise; in each case with respect to clauses (a) through (e) above, whether or not (i) such Guaranteed Obligations arise or accrue before or after the filing by or against any Co-Borrower of a petition under the Bankruptcy Code, or any similar filing by or against any Co-Borrower under the laws of any jurisdiction, or any bankruptcy, insolvency, receivership or other similar proceeding, (ii) such Guaranteed Obligations are allowable under Section 502(b)(2) of the Bankruptcy Code or under any other insolvency proceedings, (iii) the right of payment in respect of such Guaranteed Obligations is reduced to judgment, or (iv) such Guaranteed Obligations are liquidated, unliquidated, similar, dissimilar, related, unrelated, direct, indirect, fixed, contingent, primary, secondary, joint, several, or joint and several, matured, disputed, undisputed, legal, equitable, secured, or unsecured.

2.    **Payment**.  Guarantor hereby unconditionally and irrevocably guarantees to Lender, for itself and the other Secured Parties, as a guaranty of payment and not merely as a guaranty of collection, prompt payment when due, whether at stated maturity, by required prepayment, by lapse of time, by acceleration of maturity, demand, or otherwise, and at all times thereafter, of the Guaranteed Obligations. This Guarantee covers the Guaranteed Obligations, whether presently outstanding or arising subsequent to the date hereof, including all amounts advanced by Lender in stages or installments.  The guaranty of Guarantor as set forth in this Guarantee is a continuing guaranty of payment and performance.  Guarantor acknowledges and agrees that Guarantor may be required to pay and perform the Guaranteed Obligations in full without assistance or support from any Co-Borrower or any other party.  Guarantor agrees that if all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether on the scheduled payment date, by lapse of time, by acceleration of maturity, or otherwise, Guarantor shall immediately pay the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth in the Loan Agreement.

3.    **Primary Liability of Guarantor**.

(a)    This Guarantee is an absolute, irrevocable, and unconditional guaranty of payment and performance.  Guarantor is and shall be liable for the payment and performance of the Guaranteed Obligations, as set forth in this Guarantee, as a primary obligor.

(b)    In the event of default, including, but without limitation, an Event of Default, in payment or performance of the Guaranteed Obligations, or any part thereof, when such Guaranteed Obligations become due, whether by their terms, by acceleration, or otherwise, Guarantor shall, without notice or demand of any kind or nature (other than as required by the Loan Agreement), promptly pay the amount due thereon to Lender in lawful money of the United States of America and perform the obligations to be performed hereunder, and it shall not be necessary for Lender in order to enforce such payment and performance by Guarantor first, or contemporaneously, to institute suit or exhaust remedies against the Borrowers or any other Person liable on the Guaranteed Obligations, or to enforce any rights, remedies, powers, privileges, or benefits of Lender against any collateral or any other security or collateral which shall ever have been given to secure the Guaranteed Obligations.

(c)      Suit may be brought or demand may be made against Guarantor or any other guaranty in favor of Lender covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against Guarantor.  Any time that Lender is entitled to exercise its rights or remedies hereunder, Lender may in its sole discretion elect to demand payment and/or performance.  If Lender elects to demand performance, then it shall at all times thereafter have the right to also demand payment until all of the Guaranteed Obligations have been paid and performed in full.  If Lender elects to demand payment, then it shall at all times thereafter have the right to also demand performance until all of the Guaranteed Obligations have been paid and performed in full.

4.      **Other Guaranteed Obligations**.  If Guarantor becomes liable for any indebtedness owing by any other Co-Borrower to Lender by endorsement or otherwise, other than under this Guarantee, such liability shall not in any manner be impaired or affected hereby, and the rights and remedies hereunder shall be cumulative of any and all other rights and remedies that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy by Lender.

5.      **Waiver of Subrogation**.  Notwithstanding anything to the contrary contained herein, until the Guaranteed Obligations and any amounts payable under this Guarantee have been indefeasibly paid and performed in full and any commitments of Lender with respect to the Guaranteed Obligations are terminated, Guarantor waives to the extent permitted by applicable law any right of subrogation, reimbursement, indemnification, or contribution arising from the existence or performance of this Guarantee or any of the Loan Documents.  This waiver is given to induce Lender to make the Loans to Borrowers.

6.      **Subordinated Debt**.  All indebtedness, liabilities, and obligations of any Co-Borrower or its Affiliates to Guarantor (the "Subordinated Debt") now or hereafter existing, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Obligations.  Until such time as the Guaranteed Obligations are paid and performed in full and all commitments to lend under the Loan Documents have terminated, Guarantor agrees not to receive or accept any payment from any Co-Borrower with respect to the Subordinated Debt at any time an Event of Default exists before or after giving effect thereto; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Lender and forthwith turn it over to Lender in the form received, to be applied to the Guaranteed Obligations, but without reducing or affecting in any manner the liability of Guarantor under this Guarantee.

7.      **Obligations Not to be Diminished**.  Guarantor hereby agrees that its obligations under this Guarantee shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event (other than Payment and Performance in Full (as defined below)), including, without limitation, one or more of the following events, whether or not with notice to or the consent of Guarantor:  (a) the taking or accepting of collateral as security for any or all of the Guaranteed Obligations or the release, surrender, exchange, or subordination of any collateral now or hereafter securing any or all of the Guaranteed Obligations; (b) any full or partial release of the liability of any Co-Borrower or the full or partial release of any other guarantor or obligor from liability for any or all of the Guaranteed Obligations; (c) the dissolution, insolvency, or bankruptcy of any Co-Borrower, any other guarantor, or any other party at any time liable for the payment of any or all of the Guaranteed Obligations; (d) any renewal, extension, modification, waiver, amendment, or rearrangement of any or all of the Guaranteed Obligations or any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (e) any adjustment, indulgence, forbearance, waiver, or compromise that may be granted or given by Lender to any Co-Borrower, Guarantor, or any other party ever liable for any or all of

the Guaranteed Obligations; (f) any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action for the collection of any of the Guaranteed Obligations or to foreclose or take or prosecute any action in connection with any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (g) the unenforceability or invalidity of any or all of the Guaranteed Obligations or of any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (h) any payment by any Co-Borrower or any other party to Lender is held to constitute a preference under applicable bankruptcy or insolvency law or if for any other reason Lender is required to refund any payment or pay the amount thereof to someone else; (i) the settlement or compromise of any of the Guaranteed Obligations; (j) the non-perfection of any security interest or Lien securing any or all of the Guaranteed Obligations; (k) any impairment of any collateral securing any or all of the Guaranteed Obligations; (l) the failure of Lender to sell any collateral securing any or all of the Guaranteed Obligations in a commercially reasonable manner or as otherwise required by law; (m) any change in the corporate, partnership, or limited liability company, as applicable, existence, structure, or ownership of any Co-Borrower; or (n) any other circumstance which might otherwise constitute a defense available to, or discharge of, any Co-Borrower or Guarantor.

8.      **Waivers**.  Guarantor waives for the benefit of Lender and the other Secured Parties:  (a) any right to revoke this Guarantee with respect to future indebtedness; (b) any right to require Lender to do any of the following before Guarantor is obligated to pay the Guaranteed Obligations or before Lender may proceed against Guarantor: (i) sue or exhaust remedies against any Co-Borrower or any other guarantors or obligors, (ii) sue on an accrued right of action in respect of any of the Guaranteed Obligations or bring any other action, exercise any other right, or exhaust all other remedies or (iii) enforce rights against any Co-Borrower's assets or any collateral pledged by any Co-Borrower to secure the Guaranteed Obligations; (c) any right relating to the timing, manner, or conduct of Lender's enforcement of rights against Borrower's assets or any collateral pledged by any Co-Borrower to secure the Guaranteed Obligations; (d) if both Guarantor and any Co-Borrower or any other Person have pledged assets to secure the Guaranteed Obligations, any right to require Lender to proceed first against any such other collateral before proceeding against any collateral pledged by Guarantor; (e) except as expressly required hereby, promptness, diligence, notice of any default under the Guaranteed Obligations, notice of acceleration or intent to accelerate, demand for payment, notice of acceptance of this Guarantee, presentment, notice of protest, notice of dishonor, notice of the incurring by any Co-Borrower of additional indebtedness, notice of any suit or other action by Lender against any Co-Borrower or any other Person, any notice to any Person liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Obligations and this Guarantee; (f) any and all other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, other than the defense that the Guaranteed Obligations has been fully performed and indefeasibly paid in full in cash; (g) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of Guarantor's obligations hereunder, (ii) the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement hereof, and (iii) any requirement that Lender protect, secure, perfect, or insure any security interest or Lien or any property subject thereto; and (h) each of the foregoing rights or defenses regardless whether they arise under (i) *Section 43.001–005* of the Tex. Civ. Prac. & Rem. Code, as amended, (ii) *Section 17.001* of the Tex. Civ. Prac. & Rem. Code as amended, (iii) *Rule 31* of the Texas Rules of Civil Procedure, as amended, and (iv) common law, in equity, under contract, by statute, or otherwise.

This Guarantee shall not be affected by the genuineness, validity, regularity, or enforceability of the Guaranteed Obligations or any instrument or agreement evidencing any Guaranteed Obligations, or by the existence, validity, enforceability, perfection, non-perfection, or extent of any collateral therefor, or by any fact or circumstance relating to the Guaranteed Obligations which might otherwise constitute a defense to the obligations of Guarantor under this Guarantee, and Guarantor hereby

4

irrevocably waives any defenses it may now have or hereafter acquire in any way relating to any or all of the foregoing.

9. **Insolvency**. Should Guarantor become insolvent (as such concept is described in Section 3.16 of the Loan Agreement, including, for the avoidance of doubt, excepting asset retirement obligations from Guarantor's liabilities), or fail to pay Guarantor's debts (including, but without limitation, subordinated, liquidated, unliquidated, disputed, and contingent liabilities and commitments excepting only asset retirement obligations) generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any bankruptcy, insolvency, or similar law, or become a party to (or be made the subject of) any proceeding provided for by any bankruptcy, insolvency, or similar law (other than as a creditor or claimant) that could suspend or otherwise adversely affect the rights and remedies of Lender granted hereunder, then, in any such event, the Guaranteed Obligations shall be, as between Guarantor and Lender, a fully matured, due, and payable obligation of Guarantor to Lender (without regard to whether Borrowers are then in default under the Loan Agreement or whether the Obligations, or any part thereof is then due and owing by Borrowers to Lender), payable in full by Guarantor to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder. For purposes of this Section, each reference to asset retirement obligations means those which would be reflected on a balance sheet conforming with the requirements of Section 5.01 of the Loan Agreement.

10. **Termination; Reinstatement**. Guarantor's obligations hereunder shall remain in full force and effect until all commitments to lend under the Loan Documents have terminated and the Guaranteed Obligations have been paid and performed in full ("Payment and Performance in Full"). If at any time any payment of the principal or interest or any other amount payable by Borrowers under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy, or reorganization of any Co-Borrower or otherwise, then Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

11. **Stay of Acceleration**. Should any other Co-Borrower voluntarily seek, consent to, or acquiesce in the benefit or benefits of any bankruptcy, insolvency, or similar law, or become a party to (or be made the subject of) any proceeding provided for by any bankruptcy, insolvency, or similar law (other than as a creditor or claimant), all Guaranteed Obligations shall nonetheless be payable by Guarantor immediately if requested by Lender.

12. **Representations and Warranties**. The representations and warranties made by Guarantor in Article III of the Loan Agreement are hereby incorporated by reference as if stated verbatim herein.

13. **No Fraudulent Transfer**. It is the intention of Guarantor and Lender that the amount of the Guaranteed Obligations guaranteed by Guarantor by this Guarantee shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to Guarantor (collectively, "Fraudulent Transfer Laws"). Accordingly, notwithstanding anything to the contrary contained in this Guarantee or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Obligations but subject to the following proviso, the amount of the Guaranteed Obligations guaranteed by Guarantor by this Guarantee shall be limited to that amount which after giving effect thereto would not (a) render Guarantor insolvent, (b) result in the fair saleable value of the assets of Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in clauses (a), (b), and (c) of this Section 13 are determined under the Fraudulent Transfer Laws or other applicable law by a court of competent jurisdiction in a proceeding actually pending before such court; *provided, however*, that such limitation shall apply if and only to the extent that by reason of such clauses (a), (b), or (c), the obligations of Guarantor hereunder would otherwise be set aside, terminated,

annulled, or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court. For purposes of this Guarantee, the term "applicable law" means as to Guarantor each statute, law, ordinance, regulation, order, judgment, injunction, or decree of the United States or any state or commonwealth, any municipality, any foreign country, or any territory, possession, or governmental authority applicable to Guarantor.

14.     **Successors and Assigns**. This Guarantee is for the benefit of Lender and the other Secured Parties and their successors and assigns, and, in the event of an assignment of the Guaranteed Obligations in accordance with the provisions of the Loan Agreement, or any part thereof, the rights and remedies hereunder, to the extent applicable to the Guaranteed Obligations so assigned, may be transferred therewith. This Guarantee is binding on Guarantor and Guarantor's successors and permitted assigns; *provided that*, Guarantor may not assign its obligations under this Guarantee without obtaining Lender's prior written consent, and any assignment purported to be made without Lender's prior written consent shall be null and void.

15.     **LOAN AGREEMENT**. THE LOAN AGREEMENT, AND ALL OF THE TERMS THEREOF, ARE INCORPORATED HEREIN BY REFERENCE, THE SAME AS IF STATED VERBATIM HEREIN, AND GUARANTOR AGREES THAT LENDER MAY EXERCISE ANY AND ALL RIGHTS GRANTED TO IT UNDER THE LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS WITHOUT AFFECTING THE VALIDITY OR ENFORCEABILITY OF THIS GUARANTEE.

16.     **Setoff Rights**. If an Event of Default shall have occurred and be continuing, Lender is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits at any time held and other obligations at any time owing by Lender to or for the credit or the account of Guarantor against any and all the Guaranteed Obligations, irrespective of whether or not Lender shall have made any demand under the Loan Documents and although such obligations may be unmatured. The rights of Lender hereunder are in addition to other rights and remedies (including other rights of setoff) which Lender may have.

17.     **Time of Essence**. Time shall be of the essence in this Guarantee with respect to all of Guarantor's obligations hereunder.

18.     **GOVERNING LAW; VENUE; SERVICE OF PROCESS**.

(a)     THIS GUARANTEE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (AND NOT THE LAW OF CONFLICTS) OF THE STATE OF TEXAS, BUT GIVING EFFECT TO FEDERAL LAWS APPLICABLE TO NATIONAL BANKS.

(b)     EACH     PARTY     HERETO     HEREBY     IRREVOCABLY     AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE NONEXCLUSIVE JURISDICTION OF ANY U.S. FEDERAL OR TEXAS STATE COURT SITTING IN HOUSTON, TEXAS IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTEE, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH STATE COURT OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT. GUARANTOR AGREES THAT A FINAL JUDGMENT, NON-APPEALABLE IN ANY SUCH ACTION OR PROCEEDING MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY

6

OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS GUARANTEE OR ANY OTHER LOAN DOCUMENT SHALL AFFECT ANY RIGHT THAT THE LENDER MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTEE OR ANY OTHER LOAN DOCUMENT AGAINST ANY GRANTOR OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

(c)  EACH  PARTY  HERETO  HEREBY  IRREVOCABLY  AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT IT MAY LEGALLY AND EFFECTIVELY DO SO, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTEE OR ANY OTHER LOAN DOCUMENT IN ANY COURT REFERRED TO IN PARAGRAPH (B) OF THIS SECTION. GUARANTOR HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(d)  EACH PARTY TO THIS GUARANTEE IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 8.01 OF THE LOAN AGREEMENT. NOTHING IN THIS GUARANTEE OR ANY OTHER LOAN DOCUMENT WILL AFFECT THE RIGHT OF ANY PARTY TO THIS GUARANTEE TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.THIS GUARANTEE AND ANY CONTROVERSY, DISPUTE, CLAIM, OR CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS GUARANTEE, THE OTHER LOAN DOCUMENTS, ANY BREACH THEREOF, THE TRANSACTIONS CONTEMPLATED THEREBY, OR ANY OTHER DISPUTE BETWEEN OR AMONG THE PARTIES HERETO (WHETHER IN CONTRACT, TORT, OR OTHERWISE) SHALL BE GOVERNED BY, CONSTRUED IN ACCORDANCE WITH, AND INTERPRETED PURSUANT TO THE LAWS OF THE STATE OF TEXAS; PROVIDED THAT LENDER SHALL RETAIN ALL RIGHTS UNDER FEDERAL LAW. THE PARTIES HEREBY AGREE THAT ANY LAWSUIT, ACTION, OR PROCEEDING THAT IS BROUGHT (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING  TO  ANY  OF  THE  LOAN  DOCUMENTS,  THE  TRANSACTIONS CONTEMPLATED THEREBY, OR THE ACTS, CONDUCT, OR OMISSIONS OF LENDER OR ANY OF ITS AGENTS, SUCCESSORS, OR ASSIGNS OR OF ANY OF THE OBLIGATED PARTIES IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT OF ANY OF THE LOAN DOCUMENTS SHALL BE BROUGHT IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN HOUSTON, TEXAS. GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF SUCH COURTS, (B) WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH LAWSUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, AND (C) FURTHER WAIVES ANY CLAIM THAT IT MAY NOW OR HEREAFTER HAVE THAT ANY SUCH COURT IS AN INCONVENIENT FORUM. GUARANTOR AGREES THAT SERVICE OF PROCESS UPON IT MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED AT THE ADDRESS FOR NOTICES REFERENCED IN THE LOAN AGREEMENT.

19.  **Notices**.  Whenever any notice is required or permitted to be given under the terms of this Guarantee, the same shall be given in accordance with the Loan Agreement.

20.  **Expenses**.  Guarantor hereby agrees to pay on demand any and all out of pocket expenses (including attorneys', auditors', and accountants' fees) paid or incurred by Lender in connection with the preparation, execution, and delivery of this Guarantee in accordance with Section 8.03 of the Loan

7

Agreement. Guarantor also shall reimburse Lender for any and all out of pocket expenses and internal charges (including attorneys', auditors', and accountants' fees, and time charges of attorneys, paralegals, auditors, and accountants who may be employees of Lender) paid or incurred by Lender in connection with the administration of this Guarantee.  In addition, Guarantor shall be obligated to pay all of the costs and expenses incurred by Lender, including attorneys' fees and court costs, in obtaining or liquidating the Collateral, in enforcing payment of the Guaranteed Obligations, or in the prosecution or defense of any action or proceeding by or against Lender or Guarantor concerning any matter arising out of or connected with this Guarantee, any Collateral, or the Guaranteed Obligations, including any of the foregoing arising in, arising under, or related to, a case under any bankruptcy, insolvency, or similar law.  Any and all costs and expenses incurred by Guarantor in the performance of actions required pursuant to the terms hereof shall be borne solely by Guarantor.

21.    **Indemnification and Survival**.  GUARANTOR SHALL INDEMNIFY THE LENDER, AND EACH RELATED PARTY OF THE LENDER (EACH SUCH PERSON BEING CALLED AN "INDEMNITEE") AGAINST, AND HOLD EACH INDEMNITEE HARMLESS FROM, ANY AND ALL LOSSES, CLAIMS, DAMAGES, PENALTIES, INCREMENTAL TAXES, LIABILITIES AND RELATED EXPENSES, INCLUDING THE FEES, CHARGES AND DISBURSEMENTS OF ANY COUNSEL FOR ANY INDEMNITEE, INCURRED BY OR ASSERTED AGAINST ANY INDEMNITEE ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF (I) THE EXECUTION OR DELIVERY OF THE LOAN DOCUMENTS OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED THEREBY, THE PERFORMANCE BY THE PARTIES HERETO OF THEIR RESPECTIVE OBLIGATIONS THEREUNDER OR THE CONSUMMATION OF THE TRANSACTIONS OR ANY OTHER TRANSACTIONS CONTEMPLATED HEREBY, (II) ANY LOAN OR THE USE OF THE PROCEEDS THEREFROM, (III) ANY ACTUAL OR ALLEGED PRESENCE OR RELEASE OF HAZARDOUS MATERIALS ON OR FROM ANY PROPERTY OWNED OR OPERATED BY ANY GRANTOR, OR ANY ENVIRONMENTAL LIABILITY RELATED IN ANY WAY TO ANY GRANTOR, OR (IV) ANY ACTUAL OR PROSPECTIVE CLAIM, LITIGATION, INVESTIGATION OR PROCEEDING RELATING TO ANY OF THE FOREGOING, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY AND REGARDLESS OF WHETHER ANY INDEMNITEE IS A PARTY THERETO; PROVIDED THAT SUCH INDEMNITY SHALL NOT, AS TO ANY INDEMNITEE, BE AVAILABLE TO THE EXTENT THAT SUCH LOSSES, CLAIMS, DAMAGES, PENALTIES, LIABILITIES OR RELATED EXPENSES ARE DETERMINED BY A COURT OF COMPETENT JURISDICTION BY FINAL AND NONAPPEALABLE JUDGMENT TO HAVE RESULTED FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNITEE. WITHOUT LIMITATION OF THE FOREGOING, IT IS THE INTENTION OF GUARANTOR AND GUARANTOR AGREES THAT THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNITEE WITH RESPECT TO LOSSES, CLAIMS, DAMAGES, PENALTIES, LIABILITIES AND RELATED EXPENSES (INCLUDING, WITHOUT LIMITATION, ALL EXPENSES OF LITIGATION OR PREPARATION THEREFOR), WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE OF SUCH (AND/OR ANY OTHER) INDEMNITEE.

THE OBLIGATIONS AND LIABILITIES OF GUARANTOR UNDER THIS SECTION 20 SHALL NOT BE LIMITED OR RESTRICTED BY THE EXISTINCE OF, OR ANY TERMS OF, THE GUARANTY OF PAYMENT UNDER SECTION 2 OF THIS GUARANTEE AND SHALL SURVIVE THE PAYMENT AND PERFORMANCE  IN FULL OF THE GUARANTEED OBLIGATIONS AND TERMINATION OF THIS GUARANTEE.

22.    **Amendments; Counterparts**.  This Guarantee may be amended only by an instrument in writing executed by Guarantor and acknowledged by Lender.

8

23.     **WAIVER OF JURY TRIAL**.  GUARANTOR HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS GUARANTY, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). GUARANTOR (A) CERTIFIES THAT NO REPRESENTATIVE OR OTHER AGENT (INCLUDING ANY ATTORNEY) OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THE LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS IN THIS SECTION.

24.     **Limitation on Liability**.  WITHOUT LIMITING ANY OTHER PROVISION OF THIS GUARANTEE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AGREES THAT IT SHALL NOT ASSERT, AND HEREBY WAIVES, ANY CLAIM AGAINST THE LENDER, (I) FOR ANY DAMAGES ARISING FROM THE USE BY OTHERS OF INFORMATION OR OTHER MATERIALS OBTAINED THROUGH TELECOMMUNICATIONS, ELECTRONIC OR OTHER INFORMATION TRANSMISSION SYSTEMS (INCLUDING THE INTERNET), OR (II) ON ANY THEORY OF LIABILITY, FOR SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF, THIS GUARANTEE, ANY OTHER LOAN DOCUMENT, OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED HEREBY OR THEREBY, THE TRANSACTIONS, ANY LOAN OR THE USE OF THE PROCEEDS THEREOF; PROVIDED THAT, NOTHING IN THIS PARAGRAPH SHALL RELIEVE GUARANTOR OF ANY OBLIGATION IT MAY HAVE TO INDEMNIFY AN INDEMNITEE AGAINST SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES ASSERTED AGAINST SUCH INDEMNITEE BY A THIRD PARTY.

25.     **FINAL AGREEMENT**.  THIS GUARANTEE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES.   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]**

**EXECUTED** as of the first date herein set forth.

**GUARANTOR:**

**FIELDWOOD ENERGY I LLC,**
a Texas limited liability company

By:_____
Name:_____
Title:_____

**Exhibit 11**

**Guarantee (GOM Shelf LLC)**

## GUARANTEE

**THIS GUARANTEE** (as it may be amended, restated, supplemented or otherwise modified from time to time, this "Guarantee") is executed as of _____, 20[●], by GOM SHELF LLC, a Delaware limited liability company ("Guarantor"), in favor of APACHE CORPORATION, a Delaware corporation ("Lender"), on behalf of itself and the other Secured Parties (as defined in the Loan Agreement described below).

## INTRODUCTORY PROVISIONS:

A.      This Guarantee is given in connection with that certain Standby Loan Agreement dated as of _____, 20[●] among Guarantor, Fieldwood Energy I LLC, a Texas limited liability company ("Fieldwood"), and the Lender (as it may be amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement").

B.      Fieldwood is a Co-Borrower under the Loan Agreement.

C.      Guarantor is a wholly owned subsidiary of Fieldwood and will derive substantial direct and indirect benefit from the transactions contemplated by the Loan Agreement and the other Loan Documents.

D.      Guarantor is executing and delivering this Guarantee to induce the Lender to provide Loans to Borrowers, including Fieldwood, under the Loan Agreement.

**NOW, THEREFORE**, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor hereby guarantees to Lender the prompt payment and performance of the Guaranteed Obligations, this Guarantee being upon the following terms and conditions:

1.      **Defined Term**s.  Any capitalized term used in this Guarantee and not otherwise defined herein shall have the meaning ascribed to such term in the Loan Agreement.  In addition, the following terms have the following meanings:

"Dispute" means any action, dispute, claim, or controversy of any kind, whether in contract or tort, statutory, or common law, legal or equitable, now existing or hereafter arising, under or in connection with, or in any way pertaining to, this Guarantee and each other document, contract, and instrument required hereby, or now or hereafter delivered to Lender in connection herewith, or any past, present, or future extensions of credit and other activities, transactions, or obligations of any kind related directly or indirectly to any of the foregoing documents, including, without limitation, any of the foregoing arising in connection with the exercise of any self-help, ancillary, or other remedies pursuant to any of the foregoing documents.

"Guaranteed Obligations" means (a) all unpaid principal of and accrued and unpaid interest on the Loans, (b) all accrued and unpaid fees and all expenses, reimbursements, indemnities and other obligations and indebtedness (including interest and fees accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), (c) all costs and expenses, including all attorneys' fees and legal expenses, incurred by Lender to preserve and maintain the Collateral, collect the obligations described herein or described in the other Loan Documents, and enforce this Guarantee, the Security Agreement, the Mortgage or any rights under any other Loan Documents, (d) the obligation to reimburse any amount that Lender (in its sole and absolute discretion) elects to pay or advance on behalf of any Co-Borrower following the occurrence of an Event of Default, (e) obligations and liabilities of the Borrowers to the Lender, any Secured Party or any indemnified party, individually or collectively, existing on the Effective Date or arising thereafter, direct or indirect,

joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, secured or unsecured, arising by contract, operation of law or otherwise, in all cases arising or incurred under this Guarantee, under any of the other Loan Documents, under the Decommissioning Agreement or in respect of any of the Loans made or any reimbursement or other obligations incurred under any of the foregoing, (f) all amounts owed under any extension, renewal, or modification of any of the foregoing and (g) any of the foregoing that arises after the filing of a petition by or against any Co-Borrower under the Bankruptcy Code, even if the obligations due do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise; in each case with respect to clauses (a) through (e) above, whether or not (i) such Guaranteed Obligations arise or accrue before or after the filing by or against any Co-Borrower of a petition under the Bankruptcy Code, or any similar filing by or against any Co-Borrower under the laws of any jurisdiction, or any bankruptcy, insolvency, receivership or other similar proceeding, (ii) such Guaranteed Obligations are allowable under Section 502(b)(2) of the Bankruptcy Code or under any other insolvency proceedings, (iii) the right of payment in respect of such Guaranteed Obligations is reduced to judgment, or (iv) such Guaranteed Obligations are liquidated, unliquidated, similar, dissimilar, related, unrelated, direct, indirect, fixed, contingent, primary, secondary, joint, several, or joint and several, matured, disputed, undisputed, legal, equitable, secured, or unsecured.

2.     **Payment.**  Guarantor hereby unconditionally and irrevocably guarantees to Lender, for itself and the other Secured Parties, as a guaranty of payment and not merely as a guaranty of collection, prompt payment when due, whether at stated maturity, by required prepayment, by lapse of time, by acceleration of maturity, demand, or otherwise, and at all times thereafter, of the Guaranteed Obligations. This Guarantee covers the Guaranteed Obligations, whether presently outstanding or arising subsequent to the date hereof, including all amounts advanced by Lender in stages or installments.  The guaranty of Guarantor as set forth in this Guarantee is a continuing guaranty of payment and performance.  Guarantor acknowledges and agrees that Guarantor may be required to pay and perform the Guaranteed Obligations in full without assistance or support from any Co-Borrower or any other party.  Guarantor agrees that if all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether on the scheduled payment date, by lapse of time, by acceleration of maturity, or otherwise, Guarantor shall immediately pay the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth in the Loan Agreement.

3.     **Primary Liability of Guarantor**.

(a)     This Guarantee is an absolute, irrevocable, and unconditional guaranty of payment and performance.  Guarantor is and shall be liable for the payment and performance of the Guaranteed Obligations, as set forth in this Guarantee, as a primary obligor.

(b)     In the event of default, including, but without limitation, an Event of Default, in payment or performance of the Guaranteed Obligations, or any part thereof, when such Guaranteed Obligations become due, whether by their terms, by acceleration, or otherwise, Guarantor shall, without notice or demand of any kind or nature (other than as required by the Loan Agreement), promptly pay the amount due thereon to Lender in lawful money of the United States of America and perform the obligations to be performed hereunder, and it shall not be necessary for Lender in order to enforce such payment and performance by Guarantor first, or contemporaneously, to institute suit or exhaust remedies against the Borrowers or any other Person liable on the Guaranteed Obligations, or to enforce any rights, remedies, powers, privileges, or benefits of Lender against any collateral or any other security or collateral which shall ever have been given to secure the Guaranteed Obligations.

(c)     Suit may be brought or demand may be made against Guarantor or any other guaranty in favor of Lender covering all or any part of the Guaranteed Obligations, or against any

one or more of them, separately or together, without impairing the rights of Lender against Guarantor.  Any time that Lender is entitled to exercise its rights or remedies hereunder, Lender may in its sole discretion elect to demand payment and/or performance.  If Lender elects to demand performance, then it shall at all times thereafter have the right to also demand payment until all of the Guaranteed Obligations have been paid and performed in full.  If Lender elects to demand payment, then it shall at all times thereafter have the right to also demand performance until all of the Guaranteed Obligations have been paid and performed in full.

4.     **Other Guaranteed Obligation**s.  If Guarantor becomes liable for any indebtedness owing by any other Co-Borrower to Lender by endorsement or otherwise, other than under this Guarantee, such liability shall not in any manner be impaired or affected hereby, and the rights and remedies hereunder shall be cumulative of any and all other rights and remedies that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy by Lender.

5.     **Waiver of Subrogation**.  Notwithstanding anything to the contrary contained herein, until the Guaranteed Obligations and any amounts payable under this Guarantee have been indefeasibly paid and performed in full and any commitments of Lender with respect to the Guaranteed Obligations are terminated, Guarantor waives to the extent permitted by applicable law any right of subrogation, reimbursement, indemnification, or contribution arising from the existence or performance of this Guarantee or any of the Loan Documents.  This waiver is given to induce Lender to make the Loans to Borrowers.

6.     **Subordinated Debt**.  All indebtedness, liabilities, and obligations of any Co-Borrower or its Affiliates to Guarantor (the "Subordinated Debt") now or hereafter existing, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Obligations.  Until such time as the Guaranteed Obligations are paid and performed in full and all commitments to lend under the Loan Documents have terminated, Guarantor agrees not to receive or accept any payment from any Co-Borrower with respect to the Subordinated Debt at any time an Event of Default exists before or after giving effect thereto; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Lender and forthwith turn it over to Lender in the form received, to be applied to the Guaranteed Obligations, but without reducing or affecting in any manner the liability of Guarantor under this Guarantee.

7.     **Obligation**s **Not to be Diminished**.  Guarantor hereby agrees that its obligations under this Guarantee shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event (other than Payment and Performance in Full (as defined below)), including, without limitation, one or more of the following events, whether or not with notice to or the consent of Guarantor:  (a) the taking or accepting of collateral as security for any or all of the Guaranteed Obligations or the release, surrender, exchange, or subordination of any collateral now or hereafter securing any or all of the Guaranteed Obligations; (b) any full or partial release of the liability of any Co-Borrower or the full or partial release of any other guarantor or obligor from liability for any or all of the Guaranteed Obligations; (c) the dissolution, insolvency, or bankruptcy of any Co-Borrower, any other guarantor, or any other party at any time liable for the payment of any or all of the Guaranteed Obligations; (d) any renewal, extension, modification, waiver, amendment, or rearrangement of any or all of the Guaranteed Obligations or any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (e) any adjustment, indulgence, forbearance, waiver, or compromise that may be granted or given by Lender to any Co-Borrower, Guarantor, or any other party ever liable for any or all of the Guaranteed Obligations; (f) any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action for the collection of any of the Guaranteed Obligations or to foreclose or take or

prosecute any action in connection with any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (g) the unenforceability or invalidity of any or all of the Guaranteed Obligations or of any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (h) any payment by any Co-Borrower or any other party to Lender is held to constitute a preference under applicable bankruptcy or insolvency law or if for any other reason Lender is required to refund any payment or pay the amount thereof to someone else; (i) the settlement or compromise of any of the Guaranteed Obligations; (j) the non-perfection of any security interest or Lien securing any or all of the Guaranteed Obligations; (k) any impairment of any collateral securing any or all of the Guaranteed Obligations; (l) the failure of Lender to sell any collateral securing any or all of the Guaranteed Obligations in a commercially reasonable manner or as otherwise required by law; (m) any change in the corporate, partnership, or limited liability company, as applicable, existence, structure, or ownership of any Co-Borrower; or (n) any other circumstance which might otherwise constitute a defense available to, or discharge of, any Co-Borrower or Guarantor.

8.     **Waivers**.  Guarantor waives for the benefit of Lender and the other Secured Parties:  (a) any right to revoke this Guarantee with respect to future indebtedness; (b) any right to require Lender to do any of the following before Guarantor is obligated to pay the Guaranteed Obligations or before Lender may proceed against Guarantor: (i) sue or exhaust remedies against any Co-Borrower or any other guarantors or obligors, (ii) sue on an accrued right of action in respect of any of the Guaranteed Obligations or bring any other action, exercise any other right, or exhaust all other remedies or (iii) enforce rights against any Co-Borrower's assets or any collateral pledged by any Co-Borrower to secure the Guaranteed Obligations; (c) any right relating to the timing, manner, or conduct of Lender's enforcement of rights against Borrower's assets or any collateral pledged by any Co-Borrower to secure the Guaranteed Obligations; (d) if both Guarantor and any Co-Borrower or any other Person have pledged assets to secure the Guaranteed Obligations, any right to require Lender to proceed first against any such other collateral before proceeding against any collateral pledged by Guarantor; (e) except as expressly required hereby, promptness, diligence, notice of any default under the Guaranteed Obligations, notice of acceleration or intent to accelerate, demand for payment, notice of acceptance of this Guarantee, presentment, notice of protest, notice of dishonor, notice of the incurring by any Co-Borrower of additional indebtedness, notice of any suit or other action by Lender against any Co-Borrower or any other Person, any notice to any Person liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Obligations and this Guarantee; (f) any and all other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, other than the defense that the Guaranteed Obligations has been fully performed and indefeasibly paid in full in cash; (g) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of Guarantor's obligations hereunder, (ii) the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement hereof, and (iii) any requirement that Lender protect, secure, perfect, or insure any security interest or Lien or any property subject thereto; and (h) each of the foregoing rights or defenses regardless whether they arise under (i) *Section 43.001–005* of the Tex. Civ. Prac. & Rem. Code, as amended, (ii) *Section 17.001* of the Tex. Civ. Prac. & Rem. Code as amended, (iii) *Rule 31* of the Texas Rules of Civil Procedure, as amended, and (iv) common law, in equity, under contract, by statute, or otherwise.

This Guarantee shall not be affected by the genuineness, validity, regularity, or enforceability of the Guaranteed Obligations or any instrument or agreement evidencing any Guaranteed Obligations, or by the existence, validity, enforceability, perfection, non-perfection, or extent of any collateral therefor, or by any fact or circumstance relating to the Guaranteed Obligations which might otherwise constitute a defense to the obligations of Guarantor under this Guarantee, and Guarantor hereby irrevocably waives any defenses it may now have or hereafter acquire in any way relating to any or all of the foregoing.

9.        **Insolvency**. Should Guarantor become insolvent (as such concept is described in Section 3.16 of the Loan Agreement, including, for the avoidance of doubt, excepting asset retirement obligations from Guarantor's liabilities), or fail to pay Guarantor's debts (including, but without limitation, subordinated, liquidated, unliquidated, disputed, and contingent liabilities and commitments excepting only asset retirement obligations) generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any bankruptcy, insolvency, or similar law, or become a party to (or be made the subject of) any proceeding provided for by any bankruptcy, insolvency, or similar law (other than as a creditor or claimant) that could suspend or otherwise adversely affect the rights and remedies of Lender granted hereunder, then, in any such event, the Guaranteed Obligations shall be, as between Guarantor and Lender, a fully matured, due, and payable obligation of Guarantor to Lender (without regard to whether Borrowers are then in default under the Loan Agreement or whether the Obligations, or any part thereof is then due and owing by Borrowers to Lender), payable in full by Guarantor to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder. For purposes of this Section, each reference to asset retirement obligations means those which would be reflected on a balance sheet conforming with the requirements of <u>Section 5.01</u> of the Loan Agreement.

10.        **Termination; Reinstatement**. Guarantor's obligations hereunder shall remain in full force and effect until all commitments to lend under the Loan Documents have terminated and the Guaranteed Obligations have been paid and performed in full ("<u>Payment and Performance in Full</u>"). If at any time any payment of the principal or interest or any other amount payable by Borrowers under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy, or reorganization of any Co-Borrower or otherwise, then Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

11.        **Stay of Acceleration**. Should any other Co-Borrower voluntarily seek, consent to, or acquiesce in the benefit or benefits of any bankruptcy, insolvency, or similar law, or become a party to (or be made the subject of) any proceeding provided for by any bankruptcy, insolvency, or similar law (other than as a creditor or claimant), all Guaranteed Obligations shall nonetheless be payable by Guarantor immediately if requested by Lender.

12.        **Representations and Warranties**. The representations and warranties made by Guarantor in <u>Article III</u> of the Loan Agreement are hereby incorporated by reference as if stated verbatim herein.

13.        **No Fraudulent Transfer**. It is the intention of Guarantor and Lender that the amount of the Guaranteed Obligations guaranteed by Guarantor by this Guarantee shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to Guarantor (collectively, "<u>Fraudulent Transfer Laws</u>"). Accordingly, notwithstanding anything to the contrary contained in this Guarantee or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Obligations but subject to the following proviso, the amount of the Guaranteed Obligations guaranteed by Guarantor by this Guarantee shall be limited to that amount which after giving effect thereto would not (a) render Guarantor insolvent, (b) result in the fair saleable value of the assets of Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in <u>clauses (a)</u>, <u>(b)</u>, and <u>(c)</u> of this <u>Section 13</u> are determined under the Fraudulent Transfer Laws or other applicable law by a court of competent jurisdiction in a proceeding actually pending before such court; *provided, however*, that such limitation shall apply if and only to the extent that by reason of such clauses (a), (b), or (c), the obligations of Guarantor hereunder would otherwise be set aside, terminated, annulled, or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court. For purposes of this Guarantee, the term "applicable law" means as to Guarantor each statute, law, ordinance, regulation, order, judgment, injunction, or decree of the United States or any state

or commonwealth, any municipality, any foreign country, or any territory, possession, or governmental authority applicable to Guarantor.

14.     **Successors and Assigns**.  This Guarantee is for the benefit of Lender and the other Secured Parties and their successors and assigns, and, in the event of an assignment of the Guaranteed Obligations in accordance with the provisions of the Loan Agreement, or any part thereof, the rights and remedies hereunder, to the extent applicable to the Guaranteed Obligations so assigned, may be transferred therewith. This Guarantee is binding on Guarantor and Guarantor's successors and permitted assigns; *provided that*, Guarantor may not assign its obligations under this Guarantee without obtaining Lender's prior written consent, and any assignment purported to be made without Lender's prior written consent shall be null and void.

15.     **LOAN AGREEMENT**.  THE LOAN AGREEMENT, AND ALL OF THE TERMS THEREOF, ARE INCORPORATED HEREIN BY REFERENCE, THE SAME AS IF STATED VERBATIM HEREIN, AND GUARANTOR AGREES THAT LENDER MAY EXERCISE ANY AND ALL RIGHTS GRANTED TO IT UNDER THE LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS WITHOUT AFFECTING THE VALIDITY OR ENFORCEABILITY OF THIS GUARANTEE.

16.     **Setoff Rights**.  If an Event of Default shall have occurred and be continuing, Lender is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits at any time held and other obligations at any time owing by Lender to or for the credit or the account of Guarantor against any and all the Guaranteed Obligations, irrespective of whether or not Lender shall have made any demand under the Loan Documents and although such obligations may be unmatured. The rights of Lender hereunder are in addition to other rights and remedies (including other rights of setoff) which Lender may have.

17.     **Time of Essence**.  Time shall be of the essence in this Guarantee with respect to all of Guarantor's obligations hereunder.

18.     **GOVERNING LAW; VENUE; SERVICE OF PROCESS**.

(a)     THIS GUARANTEE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (AND NOT THE LAW OF CONFLICTS) OF THE STATE OF TEXAS, BUT GIVING EFFECT TO FEDERAL LAWS APPLICABLE TO NATIONAL BANKS.

(b)     EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE NONEXCLUSIVE JURISDICTION OF ANY U.S. FEDERAL OR TEXAS STATE COURT SITTING IN HOUSTON, TEXAS IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTEE, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH STATE COURT OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT. GUARANTOR AGREES THAT A FINAL JUDGMENT, NON-APPEALABLE IN ANY SUCH ACTION OR PROCEEDING MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS GUARANTEE OR ANY OTHER LOAN DOCUMENT SHALL AFFECT ANY RIGHT THAT THE LENDER MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTEE OR

6

ANY OTHER LOAN DOCUMENT AGAINST ANY GRANTOR OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

(c)     EACH    PARTY    HERETO    HEREBY    IRREVOCABLY    AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT IT MAY LEGALLY AND EFFECTIVELY DO SO, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTEE OR ANY OTHER LOAN DOCUMENT IN ANY COURT REFERRED TO IN PARAGRAPH (B) OF THIS SECTION. GUARANTOR HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(d)     EACH PARTY TO THIS GUARANTEE IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 8.01 OF THE LOAN AGREEMENT. NOTHING IN THIS GUARANTEE OR ANY OTHER LOAN DOCUMENT WILL AFFECT THE RIGHT OF ANY PARTY TO THIS GUARANTEE TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.THIS GUARANTEE AND ANY CONTROVERSY, DISPUTE, CLAIM, OR CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS GUARANTEE, THE OTHER LOAN DOCUMENTS, ANY BREACH THEREOF, THE TRANSACTIONS CONTEMPLATED THEREBY, OR ANY OTHER DISPUTE BETWEEN OR AMONG THE PARTIES HERETO (WHETHER IN CONTRACT, TORT, OR OTHERWISE) SHALL BE GOVERNED BY, CONSTRUED IN ACCORDANCE WITH, AND INTERPRETED PURSUANT TO THE LAWS OF THE STATE OF TEXAS; PROVIDED THAT LENDER SHALL RETAIN ALL RIGHTS UNDER FEDERAL LAW. THE PARTIES HEREBY AGREE THAT ANY LAWSUIT, ACTION, OR PROCEEDING THAT IS BROUGHT (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING    TO    ANY    OF    THE    LOAN    DOCUMENTS,    THE    TRANSACTIONS CONTEMPLATED THEREBY, OR THE ACTS, CONDUCT, OR OMISSIONS OF LENDER OR ANY OF ITS AGENTS, SUCCESSORS, OR ASSIGNS OR OF ANY OF THE OBLIGATED PARTIES IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT OF ANY OF THE LOAN DOCUMENTS SHALL BE BROUGHT IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN HOUSTON, TEXAS. GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF SUCH COURTS, (B) WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH LAWSUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, AND (C) FURTHER WAIVES ANY CLAIM THAT IT MAY NOW OR HEREAFTER HAVE THAT ANY SUCH COURT IS AN INCONVENIENT FORUM. GUARANTOR AGREES THAT SERVICE OF PROCESS UPON IT MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED AT THE ADDRESS FOR NOTICES REFERENCED IN THE LOAN AGREEMENT.

19.     **Notice**s.  Whenever any notice is required or permitted to be given under the terms of this Guarantee, the same shall be given in accordance with the Loan Agreement.

20.     **Expens**es.  Guarantor hereby agrees to pay on demand any and all out of pocket expenses (including attorneys', auditors', and accountants' fees) paid or incurred by Lender in connection with the preparation, execution, and delivery of this Guarantee in accordance with Section 8.03 of the Loan Agreement. Guarantor also shall reimburse Lender for any and all out of pocket expenses and internal charges (including attorneys', auditors', and accountants' fees, and time charges of attorneys, paralegals, auditors, and accountants who may be employees of Lender) paid or incurred by Lender in connection with

the administration of this Guarantee. In addition, Guarantor shall be obligated to pay all of the costs and expenses incurred by Lender, including attorneys' fees and court costs, in obtaining or liquidating the Collateral, in enforcing payment of the Guaranteed Obligations, or in the prosecution or defense of any action or proceeding by or against Lender or Guarantor concerning any matter arising out of or connected with this Guarantee, any Collateral, or the Guaranteed Obligations, including any of the foregoing arising in, arising under, or related to, a case under any bankruptcy, insolvency, or similar law. Any and all costs and expenses incurred by Guarantor in the performance of actions required pursuant to the terms hereof shall be borne solely by Guarantor.

21.     **Indemnification and Survival**.  GUARANTOR SHALL INDEMNIFY THE LENDER, AND EACH RELATED PARTY OF THE LENDER (EACH SUCH PERSON BEING CALLED AN "INDEMNITEE") AGAINST, AND HOLD EACH INDEMNITEE HARMLESS FROM, ANY AND ALL LOSSES, CLAIMS, DAMAGES, PENALTIES, INCREMENTAL TAXES, LIABILITIES AND RELATED EXPENSES, INCLUDING THE FEES, CHARGES AND DISBURSEMENTS OF ANY COUNSEL FOR ANY INDEMNITEE, INCURRED BY OR ASSERTED AGAINST ANY INDEMNITEE ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF (I) THE EXECUTION OR DELIVERY OF THE LOAN DOCUMENTS OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED THEREBY, THE PERFORMANCE BY THE PARTIES HERETO OF THEIR RESPECTIVE OBLIGATIONS THEREUNDER OR THE CONSUMMATION OF THE TRANSACTIONS OR ANY OTHER TRANSACTIONS CONTEMPLATED HEREBY, (II) ANY LOAN OR THE USE OF THE PROCEEDS THEREFROM, (III) ANY ACTUAL OR ALLEGED PRESENCE OR RELEASE OF HAZARDOUS MATERIALS ON OR FROM ANY PROPERTY OWNED OR OPERATED BY ANY GRANTOR, OR ANY ENVIRONMENTAL LIABILITY RELATED IN ANY WAY TO ANY GRANTOR, OR (IV) ANY ACTUAL OR PROSPECTIVE CLAIM, LITIGATION, INVESTIGATION OR PROCEEDING RELATING TO ANY OF THE FOREGOING, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY AND REGARDLESS OF WHETHER ANY INDEMNITEE IS A PARTY THERETO; PROVIDED THAT SUCH INDEMNITY SHALL NOT, AS TO ANY INDEMNITEE, BE AVAILABLE TO THE EXTENT THAT SUCH LOSSES, CLAIMS, DAMAGES, PENALTIES, LIABILITIES OR RELATED EXPENSES ARE DETERMINED BY A COURT OF COMPETENT JURISDICTION BY FINAL AND NONAPPEALABLE JUDGMENT TO HAVE RESULTED FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNITEE. WITHOUT LIMITATION OF THE FOREGOING, IT IS THE INTENTION OF GUARANTOR AND GUARANTOR AGREES THAT THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNITEE WITH RESPECT TO LOSSES, CLAIMS, DAMAGES, PENALTIES, LIABILITIES AND RELATED EXPENSES (INCLUDING, WITHOUT LIMITATION, ALL EXPENSES OF LITIGATION OR PREPARATION THEREFOR), WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE OF SUCH (AND/OR ANY OTHER) INDEMNITEE.

THE OBLIGATIONS AND LIABILITIES OF GUARANTOR UNDER THIS SECTION 21 SHALL NOT BE LIMITED OR RESTRICTED BY THE EXISTENCE OF, OR ANY TERMS OF, THE GUARANTY OF PAYMENT UNDER SECTION 2 OF THIS GUARANTEE AND SHALL SURVIVE THE PAYMENT AND PERFORMANCE  IN FULL OF THE GUARANTEED OBLIGATIONS AND TERMINATION OF THIS GUARANTEE.

22.     **Amendments; Counterparts**.  This Guarantee may be amended only by an instrument in writing executed by Guarantor and acknowledged by Lender.

23.     **WAIVER OF JURY TRIAL**.  GUARANTOR HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING

TO THIS GUARANTY, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). GUARANTOR (A) CERTIFIES THAT NO REPRESENTATIVE OR OTHER AGENT (INCLUDING ANY ATTORNEY) OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THE LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS IN THIS SECTION.

24.     **Limitation on Liability**. WITHOUT LIMITING ANY OTHER PROVISION OF THIS GUARANTEE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AGREES THAT IT SHALL NOT ASSERT, AND HEREBY WAIVES, ANY CLAIM AGAINST THE LENDER, (I) FOR ANY DAMAGES ARISING FROM THE USE BY OTHERS OF INFORMATION OR OTHER MATERIALS OBTAINED THROUGH TELECOMMUNICATIONS, ELECTRONIC OR OTHER INFORMATION TRANSMISSION SYSTEMS (INCLUDING THE INTERNET), OR (II) ON ANY THEORY OF LIABILITY, FOR SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF, THIS GUARANTEE, ANY OTHER LOAN DOCUMENT, OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED HEREBY OR THEREBY, THE TRANSACTIONS, ANY LOAN OR THE USE OF THE PROCEEDS THEREOF; PROVIDED THAT, NOTHING IN THIS PARAGRAPH SHALL RELIEVE GUARANTOR OF ANY OBLIGATION IT MAY HAVE TO INDEMNIFY AN INDEMNITEE AGAINST SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES ASSERTED AGAINST SUCH INDEMNITEE BY A THIRD PARTY.

25.     **FINAL AGREEMENT**. THIS GUARANTEE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES FOLLOW]**

**EXECUTED** as of the first date herein set forth.

**GUARANTOR:**

GOM SHELF LLC,
a Delaware limited liability company

By:_____

Name:_____

Title:_____

## Exhibit 12

**Form of Mortgages**

<div align="right">(AL, LA, MS, TX)</div>

PREPARED BY, AND WHEN RECORDED
OR FILED, PLEASE RETURN TO:

Hunton Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002
Attn: Harve Truskett
Phone: (713) 220-4532

<div align="center">

**MORTGAGE, DEED OF TRUST, ASSIGNMENT OF AS-EXTRACTED COLLATERAL,
SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT**
(Standby Loan Agreement)

FROM

FIELDWOOD ENERGY I LLC
(Organizational ID: [_____])

</div>

| | |
|---|---|
| Address: | 2000 W. Sam Houston Pkwy S. |
| | Suite 1600 |
| | Houston, TX 77042 |
| Telephone No.: | (713) 630-8914 |

<div align="center">

AND

GOM SHELF LLC
(Organizational ID: 3250958)

</div>

| | |
|---|---|
| Address: | 2000 W. Sam Houston Pkwy S. |
| | Suite 1600 |
| | Houston, TX 77042 |
| Telephone No.: | (713) 630-8914 |

<div align="center">1</div>

TO

[_____],TRUSTEE

Address:            2000  Post  Oak  Boulevard,
Suite 100
Houston, TX 77056

Telephone No.:   (713) 296-6000


AND TO

APACHE CORPORATION,
as Collateral Agent

Address:            2000  Post  Oak  Boulevard,
Suite 100
Houston, TX 77056

Telephone No.:   (713) 296-6000

2

**A CARBON, PHOTOGRAPHIC, OR OTHER REPRODUCTION OF THIS INSTRUMENT IS SUFFICIENT AS A FINANCING STATEMENT.**

**A POWER OF SALE HAS BEEN GRANTED IN THIS INSTRUMENT. IN CERTAIN STATES, A POWER OF SALE MAY ALLOW THE TRUSTEE OR THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS INSTRUMENT.**

**THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS.**

**THIS INSTRUMENT SECURES PAYMENT OF FUTURE ADVANCES.**

**THIS INSTRUMENT COVERS PROCEEDS OF MORTGAGED PROPERTY.**

**THIS INSTRUMENT COVERS MINERALS, AS EXTRACTED COLLATERAL AND OTHER SUBSTANCES OF VALUE THAT MAY BE EXTRACTED FROM THE EARTH (INCLUDING WITHOUT LIMITATION OIL AND GAS) AND THE ACCOUNTS RELATED THERETO, WHICH WILL BE FINANCED AT THE WELLHEADS OF THE WELL OR WELLS LOCATED ON THE PROPERTIES DESCRIBED IN <u>EXHIBIT A</u> HERETO. THIS FINANCING STATEMENT IS TO BE FILED OR FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL ESTATE RECORDS OR SIMILAR RECORDS OF THE RECORDERS OF THE COUNTIES OR PARISHES LISTED ON THE EXHIBITS HERETO AND IN THE UCC RECORDS OF ANY LOUISIANA PARISH. THE MORTGAGOR HAS AN INTEREST OF RECORD IN THE REAL ESTATE AND IMMOVABLE PROPERTY CONCERNED, WHICH INTEREST IS DESCRIBED IN THE EXHIBITS ATTACHED HERETO.**

**PORTIONS OF THE MORTGAGED PROPERTY ARE GOODS THAT ARE OR ARE TO BECOME AFFIXED TO OR FIXTURES ON THE LAND DESCRIBED IN OR REFERRED TO IN THE EXHIBIT HERETO. THIS FINANCING STATEMENT IS TO BE FILED FOR RECORD OR RECORDED, AMONG OTHER PLACES, IN THE REAL ESTATE RECORDS OR SIMILAR RECORDS OF EACH COUNTY OR PARISH IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED OR WHICH IS ADJACENT TO THE OUTER CONTINENTAL SHELF AND IN THE UCC RECORDS OF ANY LOUISIANA PARISH. THE MORTGAGOR IS THE OWNER OF RECORD INTEREST IN THE REAL ESTATE CONCERNED. THIS INSTRUMENT IS ALSO TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS OR THE UCC RECORDS.**

To the Chancery Clerk of the Judicial Districts of Mississippi Counties, if any, referred to on <u>Exhibit A</u> attached hereto: The real property described herein lies offshore within the reasonable projected seaward extension of the relevant county or parish boundary.

**Line of Credit Mortgage.** THIS MORTGAGE ALSO SECURES A LINE OF CREDIT AS DEFINED IN MISS. CODE ANN. § 89-1-49 SUCH THAT SATISFACTION OF RECORD SHALL ONLY BE ACCOMPLISHED AND EXTINGUISHMENT SHALL ONLY OCCUR AS PROVIDED IN SUBSECTION (5) OF MISS. CODE ANN. § 89-5-21.

iii

iv

**THIS MORTGAGE, DEED OF TRUST, ASSIGNMENT OF AS-EXTRACTED COLLATERAL, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT** (this "<u>Mortgage</u>") is entered into effective as of [_____, 20[●]] (the "<u>Effective Date</u>") by Fieldwood Energy I LLC, a Texas limited liability company ("<u>Fieldwood</u>"), and GOM Shelf LLC, a Delaware limited liability company ("<u>GOM</u>" and collectively with Fieldwood, the "<u>Mortgagor</u>"), (i) in favor of [_____], as Trustee for the benefit of Apache Corporation, in its capacity as collateral agent for itself and the other Secured Parties (as such term is defined in the Loan Agreement), together with its successors and assigns in such capacity, the "<u>Mortgagee</u>"), for its benefit and the benefit of the other Secured Parties, and (ii) in favor of Mortgagee, for its benefit and the benefit of the other Secured Parties, in each case with respect to all Mortgaged Properties (as hereinafter defined) and with respect to all UCC Collateral (as hereinafter defined).

## RECITALS

A.      Fieldwood, GOM, and Apache Corporation, as the Lender (as such term is defined in the Loan Agreement) executed a Standby Loan Agreement dated as of [_____, 20[●]] (such agreement, as amended, restated, supplemented or otherwise modified from time to time, the "<u>Loan Agreement</u>") pursuant to which, upon the terms and conditions stated therein, the Lender agreed to make loans and other extensions of credit to the Mortgagor.

B.      GOM is a wholly-owned subsidiary of Fieldwood.

C.      The Loan Agreement, the Note (as such term is defined in the Loan Agreement) issued pursuant thereto, the other Loan Documents (as such term is defined in the Loan Agreement), the Decommissioning Agreement (as such term is defined in the Loan Agreement), and any other agreement, instrument, document, or certificate executed by the Buyer (as such term is defined in the Decommissioning Agreement) or its Affiliates and delivered to Mortgagee or its Affiliates under or in connection with the Decommissioning Agreement or transactions contemplated by the Decommissioning Agreement are collectively referred to herein as the "<u>Secured Transaction Documents</u>".

D.      The Mortgagee and the Secured Parties have conditioned their obligations under the Secured Transaction Documents upon the execution and delivery by the Mortgagor of this Mortgage, and the Mortgagor has agreed to enter into this Mortgage to secure all obligations owing to the Mortgagee and the Secured Parties under the Secured Transaction Documents.

**THEREFORE,** in order to comply with the terms and conditions of the Secured Transaction Documents and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby agrees as follows:

SECTION 1
DEFINITIONS

1.1.    <u>Terms Defined Above</u>. As used in this Mortgage, each term defined above has the meaning indicated above.

1

1.2.    <u>UCC and Other Defined Terms</u>. Each capitalized term used in this Mortgage and not defined in this Mortgage shall have the meaning ascribed to such term in the Loan Agreement. Any capitalized term not defined in either this Mortgage or the Loan Agreement shall have the meaning ascribed to such term in the Applicable UCC. The rules of construction and other interpretive provisions specified in Article I of the Loan Agreement and Section 8.11 of the Loan Agreement shall apply to this Mortgage, including terms defined in the preamble and recitals to this Mortgage.

1.3.    <u>Definitions</u>.

"<u>Applicable UCC</u>" means the provisions of the Uniform Commercial Code presently in effect in the jurisdiction in which the relevant UCC Collateral is situated or that otherwise is applicable to the creation or perfection of the Liens described herein or the rights and remedies of Mortgagee under this Mortgage.

"<u>Collateral</u>" means collectively all the Mortgaged Property and all the UCC Collateral.

"<u>Contractual Obligations</u>" means, as to any Person, any provision of any security issued by such Person or of any agreement, undertaking, contract, indenture, mortgage, deed of trust or other instrument, document or agreement to which such Person is a party or by which it or any of its property is bound.

"<u>Deed of Trust Properties</u>" means that portion of the Mortgaged Property located in the States of Texas or Mississippi, or which are located within (or cover or relate to properties located within) the Outer Continental Shelf or other offshore area adjacent to the States of Texas or Mississippi over which the United States of America asserts jurisdiction and to which the laws of the States of Texas or Mississippi are applicable with respect to this Mortgage and/or the Liens or security interests created hereby.

"<u>Event of Default</u>" has the meaning ascribed to such term in <u>Section 5.1</u>.

"<u>Fixture</u>" means any Oil and Gas Property, fixtures or immovable properties which as a result of being incorporated into realty or structures or improvements located therein or thereon, with the intent that they remain there permanently, constitute fixtures or immovable properties under the laws applicable where such Oil and Gas Property is located.

"<u>Future Advances</u>" means future obligations and future advances that the Mortgagee or any Secured Party may make pursuant to any Secured Transaction Document.

"<u>Hydrocarbon Interests</u>" means all rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to the oil and gas leases, oil, gas and mineral leases, wellbore interests, and/or other liquid or gaseous hydrocarbon leases, mineral fee interests, overriding royalty and royalty interests, net profit interests and production payment interests, and other interests and estates and the lands and premises covered or affected thereby, including any reserved or residual interests of whatever nature, in each case, that are described on <u>Exhibit A</u> (or in any instrument or document described or referred to in <u>Exhibit A</u>).

2

"Hydrocarbons" means all oil, gas, casinghead gas, drip gasoline, natural gasoline, condensate, distillate, liquid hydrocarbons, gaseous hydrocarbons and all products refined or separated therefrom and all other minerals that may be produced and saved from or attributable to the Oil and Gas Properties, including all oil in tanks, and all rents, issues, profits, proceeds, products, revenues and other incomes from or attributable to the Hydrocarbon Interests or other properties constituting Oil and Gas Properties.

"Indemnified Parties" means the Trustee, the Mortgagee, each Secured Party and their Related Parties.

"Mortgaged Property" means the Oil and Gas Properties and other properties and assets described in Section 2.1(a) through Section 2.1(f).

"Obligations" has the meaning assigned to such term in Section 2.3.

"Oil and Gas Properties" means (a) the Hydrocarbon Interests; (b) the properties now or hereafter pooled or unitized with the Hydrocarbon Interests; (c) all presently existing or future unitization, communitization, pooling agreements and declarations of pooled units and the units created thereby (including without limitation all units created under orders, regulations and rules or other official acts of any Governmental Authority and units created solely among working interest owners pursuant to operating agreements or otherwise) that may affect all or any portion of the Hydrocarbon Interests; (d) all operating agreements, contracts and other agreements, including, without limitation, production sharing contracts and agreements, production sales contracts, farmout agreements, farm-in agreements, area of mutual interest agreements, and equipment leases, described or referred to in this Mortgage or that relate to any of the Hydrocarbon Interests or interests in the Hydrocarbon Interests or the production, sale, purchase, exchange, processing, handling, storage, transporting or marketing of the Hydrocarbons from or attributable to such Hydrocarbon Interests; (e) all Hydrocarbons in and under and which may be produced and saved or attributable to the Hydrocarbon Interests, the lands pooled or unitized therewith and the Mortgagor's interests therein, including all oil in tanks, and all rents, issues, profits, proceeds, products, revenues and other incomes from or attributable to the Hydrocarbon Interests, the lands pooled or unitized therewith and the Mortgagor's interests therein; and (f) all tenements, hereditaments, appurtenances and properties in any manner appertaining, belonging, affixed or incidental to the Hydrocarbon Interests, the rights, titles, interests and estates described or referred to above, that are now owned or that are hereafter acquired by the Mortgagor, including, without limitation, any and all property, real or personal, immoveable or moveable, now owned or hereinafter acquired and situated upon, used, held for use or useful in connection with the operating, working or development of any of such Hydrocarbon Interests or property or the lands pooled or unitized therewith, including any and all oil wells, gas wells, injection wells or other wells, structures, fuel separators, liquid extraction plants, plant compressors, pumps, pumping units, field gathering systems, gas processing plants, pipeline systems, tanks and tank batteries, fixtures, valves, fittings, machinery and parts, engines, boilers, meters, apparatus, equipment, appliances, tools, implements, cables, wires, towers, casing, tubing and rods, surface leases, rights-of-way, easements, servitudes, licenses and other surface and subsurface rights, together with all additions, substitutions, replacements, accessions and attachments to any and all of the foregoing.

"Other Mortgaged Properties" means that portion of the Mortgaged Property

located in the States of Alabama or Louisiana, or which are located within (or cover or relate to properties located within) the Outer Continental Shelf or other offshore area adjacent to the States of Alabama or Louisiana over which the United States of America asserts jurisdiction and to which the laws of the States of Alabama or Louisiana are applicable with respect to this Mortgage and/or the Liens or security interests created hereby.

"Permitted Encumbrances" means "Permitted Liens" as such term is defined in the Loan Agreement.

"Termination Date" shall mean the date on which all Obligations are paid or, as applicable, performed in full.

"Trustee" means [_____] of Apache Corporation whose address for notice hereunder is c/o Apache Corporation, 2000 Post Oak Boulevard, Suite 100, Houston, TX 77056, and any successors and substitutes in trust hereunder.

"UCC Collateral" means the property and other assets described in Section 2.2.

## SECTION 2
## GRANT OF LIEN AND OBLIGATIONS

2.1.   Grant of Liens. To secure payment of the Obligations when due, the Mortgagor does by these presents hereby:

GRANT, BARGAIN, SELL, WARRANT, MORTGAGE, ASSIGN, TRANSFER, PLEDGE, HYPOTHECATE and CONVEY to the Trustee WITH A POWER OF SALE, for the use and benefit of the Mortgagee and the Secured Parties, all of the following properties, rights and interests relating to the Deed of Trust Properties; and

GRANT, BARGAIN, SELL, CONVEY, MORTGAGE, ASSIGN, WARRANT, PLEDGE AND HYPOTHECATE to Mortgagee, with mortgage covenants, and upon the statutory mortgage condition for the breach of which this Mortgage may be subject to foreclosure as provided by law, and grant to Mortgagee a POWER OF SALE (pursuant to this Mortgage and applicable law) with respect to, all of the following properties, rights and interests relating to the Other Mortgaged Properties:

(a)      All rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to the Oil and Gas Properties.

(b)      All rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to all geological, geophysical, engineering, accounting, title and other technical or business data concerning the Oil and Gas Properties or the Hydrocarbons, and all books, files, records, magnetic media, computer records and other forms of recording or obtaining access to such data.

4

(c)      All rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to all Hydrocarbons.

(d)      Any property that may from time to time hereafter, by delivery or by writing of any kind, be subjected to the Liens hereof by the Mortgagor or by anyone on the Mortgagor's behalf; and the Trustee and/or the Mortgagee are hereby authorized to receive the same at any time as additional security hereunder.

(e)      All of the rights, titles and interests of every nature whatsoever now owned or hereafter acquired by the Mortgagor in and to the Oil and Gas Properties and all other rights, titles, interests and estates and every part and parcel thereof, including, without limitation, any rights, titles, interests and estates as the same may be enlarged by the discharge of any payments out of production or by the removal of any charges or Permitted Encumbrances to which any of such Oil and Gas Properties or other rights, titles, interests or estates are subject or otherwise; all rights of the Mortgagor to Liens securing payment of proceeds from the sale of production from any of such Oil and Gas Properties, together with any and all renewals and extensions of any of such related rights, titles, interests or estates; all contracts and agreements supplemental to or amendatory of or in substitution for the contracts and agreements described or mentioned above; and any and all additional interests of any kind hereafter acquired by the Mortgagor in and to such related rights, titles, interests or estates.

(f)      All of the Mortgagor's rights, titles and interests in and to all surface fees and fee estates described in Exhibit A (or in any instrument or document described or referred to in Exhibit A), if any, compressor sites, settling ponds, equipment or pipe yards, office sites and all property and fixtures located thereon, whether such surface fees, fee estates, compressor sites, settling ponds, equipment or pipe yards, office sites, office buildings, fee simple estates, leasehold estates or otherwise, together with all present and future rights, titles, easements and estates now owned or hereafter acquired by the Mortgagor under or in connection with such interest.

TO HAVE AND TO HOLD (i) the Deed of Trust Properties unto Trustee, and its successors or substitutes in this trust, and to its or their successors and assigns, in trust, for the benefit of the Mortgagee, as agent for the Mortgagee and Secured Parties, however, upon the terms, provisions and conditions herein set forth, and (ii) the Other Mortgaged Properties unto Mortgagee, and Mortgagee's successors and assigns, for the ratable benefit of the Mortgagee and Secured Parties, upon the terms, provisions and conditions herein set forth.

It is the intention of the Mortgagor and the Mortgagee herein to cover and affect hereby all interests that the Mortgagor may now own or may hereafter acquire in and to the interests and Oil and Gas Properties described on Exhibit A (or in any instrument or document described or referred to in Exhibit A), even though the Mortgagor's interests or the property be incorrectly described on Exhibit A (or in any instrument or document described or referred to in Exhibit A) or a description of a part or all of the interests or property described on Exhibit A (or in any instrument or document described or referred to in Exhibit A) or the Mortgagor's interests therein be omitted, and notwithstanding that the interests as specified on Exhibit A (or in any instrument or document described or referred to in Exhibit A) may be limited to particular lands, specified depths or particular types of property interests.

HOU 3972706v13

2.2.    <u>Grant of Security Interest</u>. To further secure payment of the Obligations when due, the Mortgagor hereby grants to the Mortgagee, for its benefit and the benefit of the Secured Parties, a security interest in and to all of the following (whether now or hereafter acquired by operation of law or otherwise):

(a)    all As-Extracted Collateral from or attributable to the Oil and Gas Properties;

(b)    all Fixtures on the Mortgaged Property described or to which reference is made herein or on <u>Exhibit A</u>; and

(c)    to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral security, guarantees and other Supporting Obligations given with respect to any of the foregoing.

2.3.    <u>Obligations</u>. This Mortgage is executed and delivered by the Mortgagor to secure the payment and performance when due of the following (the "<u>Obligations</u>"):

(a)    the Secured Obligations;

(b)    all sums advanced or costs or expenses incurred by Mortgagee, any of the Secured Parties, or the Related Parties of the Mortgagee or such Secured Party (whether by it directly or on its behalf by the Trustee), which are made or incurred pursuant to, or allowed by, the terms of this Mortgage plus interest thereon from the date of the advance or incurrence until reimbursement of Mortgagee, such Secured Party, or such Related Party charged at a per annum rate equal to the maximum nonusurious interest rate under applicable law; and

(c)    all renewals, extensions, modifications, amendments, rearrangements and substitutions of all or any part of the above whether or not Mortgagor or any other obligor thereof executes any agreement or instrument.

2.4.    <u>Fixture Filing, Etc.</u> Without in any manner limiting the generality of any of the other provisions of this Mortgage: (i) some portions of the goods described or to which reference is made herein are or are to become Fixtures on the land described or to which reference is made herein or on <u>Exhibit A</u>; (ii) the security interests created hereby under applicable provisions of the Applicable UCC will attach to all As-Extracted Collateral and all other Hydrocarbons; (iii) this Mortgage is to be filed of record in the real estate records or other appropriate records as a financing statement; and (iv) the Mortgagor is the record owner of the real estate or interests in the real estate or immoveable property comprised of the Mortgaged Property.

2.5.    <u>Pro Rata Benefit</u>. This Mortgage is executed and granted for the pro rata benefit and security of the Mortgagee and the Secured Parties to secure the Obligations for so long as same remains unsatisfied or unpaid, as applicable, and thereafter until the Termination Date.

2.6.    <u>Excluded Properties</u>. Notwithstanding anything herein to the contrary, in no event shall the Mortgaged Property include, and the Mortgagor shall not be deemed to have granted a Lien under this Mortgage in, any of the Mortgagor's right, title or interest in any of the following property but only to the extent such property constitutes personal property (collectively, "<u>Excluded</u>

Property"), and for the avoidance of doubt, Excluded Property shall not include real or immovable property, including the Hydrocarbon Interests, Hydrocarbons, or As-Extracted Collateral or Fixtures:

(a)     any permit or license or any Contractual Obligation of Mortgagor (i) that prohibits or requires the consent of any Person other than Mortgagor or any Affiliate of Mortgagor which has not been obtained as a condition to the creation by Mortgagor of a Lien on any right, title, or interest in such permit, license, or Contractual Obligation or (ii) to the extent that any Requirement of Law applicable thereto prohibits the creation of a Lien thereon, but only to the extent, and for as long as, such prohibition is not terminated or rendered unenforceable or otherwise deemed ineffective by the Applicable UCC or any other Requirement of Law; provided, however, Excluded Property shall not include any proceeds, products, substitutions, or replacements of Excluded Property (unless such proceeds, products, substitutions, or replacements would otherwise constitute Excluded Property); or

(b)     any personal property constituting "Excluded Property" as such term is defined in the Security Agreement.

2.7.     Maturity. The Obligations have a maximum maturity date of the tenth (10th) anniversary of the Effective Date, subject to the terms and conditions of the Loan Agreement, including without limitation, (a) Lender's right to decline to extend the maturity date of the Obligations beyond the fifth (5th) anniversary date of the Effective Date and each such anniversary date thereafter, (b) earlier termination of the Decommissioning Agreement, and (c) rights of acceleration or prepayment.

2.8.     Loans; Maximum Amount.

(a)     As to all Mortgaged Property, including without limitation, such Mortgaged Property located in the State of Louisiana, or located within the offshore area over which the United States of America asserts jurisdiction and to which the laws of such State are applicable, the Obligations secured by such Mortgaged Property shall not, at any time or from time to time, exceed an aggregate maximum amount of $2,000,000,000.

(b)     As to all other Mortgaged Property the Mortgagor declares that the principal amount of all loans that the Lender has committed to advance on the date hereof shall not exceed $200,000,000, as such amount may be increased with Lender's approval pursuant to the Loan Agreement to $400,000,000.

SECTION 3
ASSIGNMENT OF AS-EXTRACTED COLLATERAL

3.1.     Assignment.

(a)     The Mortgagor has absolutely and unconditionally assigned, transferred, conveyed and granted a security interest, and does hereby absolutely and unconditionally assign, transfer, convey and grant a security interest, to the Mortgagee, for its benefit and the benefit of the Secured Parties in and to the property described in Sections 2.1 and 2.2, including, without

limitation, all of its As-Extracted Collateral from or attributable to the Oil and Gas Properties and all of the revenue and proceeds now and hereafter attributable to such Oil and Gas Properties.

(b)     If an Event of Default shall occur and only for so long as such event shall be continuing, after written notice is provided to the Mortgagor by the Mortgagee, and to the extent permitted by applicable law:

(i)     All Hydrocarbons and products thereof shall be delivered into pipe lines connected with the Mortgaged Property, or to the purchaser thereof, to the credit of the Mortgagee, for its benefit and the benefit of the Secured Parties and all such revenues and proceeds thereof shall be paid directly to the Mortgagee, at its offices as designated by Mortgagee from time to time, with no duty or obligation of any party paying the same to inquire into the rights of the Mortgagee to receive the same, what application is made thereof, or as to any other matter;

(ii)     The Mortgagor agrees to perform all such acts, and to execute all such further assignments, transfers and division orders and other instruments as may be reasonably required or desired by the Mortgagee, after receipt of a written request from the Mortgagee, in order to have said proceeds and revenues so paid to the Mortgagee and, in addition to any and all rights of a secured party under Sections 9-607 and 9-609 of the Applicable UCC, the Mortgagee is fully authorized to receive and receipt for said revenues and proceeds, to endorse and cash any and all checks and drafts payable to the order of the Mortgagor or the Mortgagee for the account of the Mortgagor received from or in connection with said revenues or proceeds and to hold the proceeds thereof in a Deposit Account of the Mortgagee, Secured Party, or any Related Party at an acceptable commercial bank at Mortgagee's selection as additional collateral securing the Obligations, and to execute transfer and division orders in the name of the Mortgagor, or otherwise, with warranties binding the Mortgagor (all proceeds received by the Mortgagee pursuant to this grant and assignment shall be applied as provided in Section 5.14);

(iii)     The Mortgagee shall not be liable for any delay, neglect or failure to effect collection of any proceeds or to take any other action in connection therewith or hereunder, but the Mortgagee shall have the right, at its election after written notice is provided to the Mortgagor, in the name of the Mortgagor or otherwise, to prosecute and defend any and all actions or legal proceedings deemed advisable by the Mortgagee in order to collect such funds and to protect the interests of the Mortgagee and/or the Mortgagor, with all costs, expenses and attorneys' fees incurred in connection therewith being paid by the Mortgagor; and

(iv)     The Mortgagor hereby appoints the Mortgagee as its attorney-in-fact to pursue any and all rights of the Mortgagor to Liens in the Hydrocarbons securing payment of proceeds of runs attributable to the Hydrocarbons, which power of attorney shall be coupled with an interest and shall be irrevocable until the Termination Date.

(c)     The Mortgagor does hereby specifically agree that third-parties shall be entitled to rely, and shall be fully protected in relying, upon any written notice by the Mortgagee that an Event of Default has occurred and is continuing for the purposes of clause (b) above.

3.2.    No Modification of Payment Obligations. Nothing herein contained shall modify or otherwise alter the obligation of the Mortgagor to make prompt payment of all amounts

constituting Obligations when and as the same become due regardless of whether the proceeds of the As-Extracted Collateral and Hydrocarbons are sufficient to pay the same and the rights provided in accordance with the foregoing assignment provision shall be cumulative of all other security of any and every character now or hereafter existing to secure payment of the Obligations. Nothing in <u>Section 3.1</u> or this <u>Section 3.2</u> is intended to be an acceptance of Collateral in satisfaction of the Obligations.

<div align="center">

SECTION 4
REPRESENTATIONS, WARRANTIES AND COVENANTS

</div>

The Mortgagor hereby represents, warrants and covenants as follows:

4.1.   <u>Title</u>. The Mortgagor has good and defensible title to and is possessed of the Hydrocarbon Interests and has good title to the UCC Collateral. The Collateral is free of all Liens except Permitted Encumbrances.

4.2.   <u>Defend Title</u>. This Mortgage is, and always will be kept, as a first priority Lien upon the Collateral, subject to the Permitted Encumbrances. The Mortgagor will not create or suffer to be created or permit to exist any Lien, security interest or charge prior or junior to or on a parity with the Lien of this Mortgage upon the Collateral or any part thereof other than Permitted Encumbrances. Subject to any Permitted Encumbrances, the Mortgagor will warrant and defend the title to the Collateral against the claims and demands of all other Persons whomsoever and will maintain and preserve the Lien created hereby (and its priority) until the Termination Date. If (i) an adverse claim be made against or a cloud develop upon the title to any part of the Collateral other than a Permitted Encumbrance or (ii) any Person shall challenge the priority or validity of the Liens created by this Mortgage, then the Mortgagor agrees to defend immediately against such adverse claim or take appropriate action to remove such cloud, in each case, at the Mortgagor's sole cost and expense. The Mortgagor further agrees that the Trustee and/or the Mortgagee may take such other action as they deem advisable to protect and preserve their interests in the Collateral, and in such event the Mortgagor will indemnify the Trustee and/or the Mortgagee against any and all cost, attorneys' fees and other expenses that they may incur in defending against any such adverse claim or taking action to remove any such cloud. For the avoidance of doubt, <u>Section 4.1</u> and this <u>Section 4.2</u> shall not restrict, and are subject to, any disposition permitted by the Loan Agreement.

4.3.   <u>Not a Foreign Person</u>. The Mortgagor is not a "foreign person" within the meaning of the Code, Sections 1445 and 7701 (i.e., the Mortgagor is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate as those terms are defined in the Code and any regulations promulgated thereunder).

4.4.   <u>Excluded Properties</u>. Except as set forth on <u>Schedule 4.4</u>, the Mortgagor does do not own or have any right, title, or interest in any Excluded Property.

<div align="center">

SECTION 5
RIGHTS AND REMEDIES

</div>

5.1.   <u>Event of Default</u>. An Event of Default under the Loan Agreement shall be an "<u>Event of Default</u>" under this Mortgage.

<div align="center">9</div>

5.2.   <u>Foreclosure and Sale</u>.

(a)      If an Event of Default shall occur and be continuing, to the extent provided by applicable Requirement of Law, the Mortgagee shall have the right and option to proceed with foreclosure by directing the Trustee to proceed with foreclosure and to sell all or any portion of such Mortgaged Property at one or more sales, as an entirety or in parcels, at such place or places in otherwise such manner and upon such notice as may be required by law, or, in the absence of any such requirement, as the Mortgagee may deem appropriate, and to make conveyance to the purchaser or purchasers. Where the Mortgaged Property is situated in (or adjacent to, in the case of offshore properties) more than one jurisdiction, notice as above provided shall be posted and filed in all such jurisdictions (if such notices are required by law), and all such Mortgaged Property may be sold in any such jurisdiction and any such notice shall designate the jurisdiction where such Mortgaged Property is to be sold. Nothing contained in this <u>Section 5.2</u> shall be construed so as to limit in any way any rights to sell the Mortgaged Property or any portion thereof by private sale if and to the extent that such private sale is permitted under the Requirement of Law of the applicable jurisdiction or by public or private sale after entry of a judgment by any court of competent jurisdiction so ordering. The Mortgagor hereby irrevocably appoints, effective upon the occurrence and during the continuance of an Event of Default, the Trustee and the Mortgagee, with full power of substitution, to be the attorney-in-fact of the Mortgagor and in the name and on behalf of the Mortgagor to execute and deliver any deeds, transfers, conveyances, assignments, assurances and notices that the Mortgagor ought to execute and deliver and do and perform any and all such acts and things that the Mortgagor ought to do and perform under the covenants herein contained and generally, to use the name of the Mortgagor in the exercise of all or any of the powers hereby conferred on the Trustee and/or the Mortgagee. At any such sale: (i) whether made under the power herein contained or any other legal enactment, or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for the Trustee or the Mortgagee, as appropriate, to have physically present, or to have constructive possession of, the Mortgaged Property (the Mortgagor hereby covenanting and agreeing to deliver any portion of the Mortgaged Property not actually or constructively possessed by the Trustee or the Mortgagee immediately upon the Mortgagee's demand) and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if the same had been actually present and delivered to purchaser at such sale, (ii) each instrument of conveyance executed by the Trustee or the Mortgagee shall contain a special warranty of title, binding upon the Mortgagor and its successors and assigns, (iii) each and every recital contained in any instrument of conveyance made by the Trustee or the Mortgagee shall conclusively establish the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Obligations, advertisement and conduct of such sale in the manner provided herein and otherwise by law and appointment of any successor trustee hereunder, (iv) any and all prerequisites to the validity thereof shall be conclusively presumed to have been performed, (v) the receipt of the Trustee, Mortgagee or of such other party or officer making the sale shall be a sufficient discharge to the purchaser or purchasers for its purchase money and no such purchaser or purchasers, or its assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money, or be in any way answerable for any loss, misapplication or nonapplication thereof, (vi) to the fullest extent permitted by law, the Mortgagor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold and such sale shall be a perpetual bar both at law and in equity against the Mortgagor, and against any and all other persons claiming or to claim the property sold or any part thereof, by,

10

through or under the Mortgagor, and (vii) to the extent and under such circumstances as are permitted by law, the Mortgagee may be a purchaser at any such sale, and shall have the right, after paying or accounting for all costs of said sale or sales, to credit the amount of the bid upon the amount of the Obligations (in the order of priority set forth in <u>Section 5.14</u>) in lieu of cash payment.

(b) If an Event of Default shall occur and be continuing, then (i) the Mortgagee shall be entitled to all of the rights, powers and remedies afforded a secured party by the Applicable UCC with reference to the UCC Collateral and/or (ii) the Trustee or the Mortgagee may proceed as to any Collateral in accordance with the rights and remedies granted under this Mortgage or applicable law in respect of the Collateral. Such rights, powers and remedies shall be cumulative and in addition to those granted to the Trustee or the Mortgagee under any other provision of this Mortgage or under any other Loan Document or Secured Transaction Document. Written notice mailed to the Mortgagor as provided herein at least ten (10) days prior to the date of public sale of any part of the Collateral that is personal property subject to the provisions of the Applicable UCC, or prior to the date after which private sale of any such part of the Collateral will be made, shall constitute reasonable notice.

(c) Cumulative of the foregoing and the other provisions of this <u>Section 5.2</u>:

(i) <u>State of Texas</u>: As to any portion of the Deed of Trust Properties located in the State of Texas (or within the offshore area over which the United States of America asserts jurisdiction and to which the laws of such state are applicable with respect to this Mortgage and/or the Liens or security interests created hereby), such sales of all or any part of such Deed of Trust Properties shall be conducted within any county (whether or not the counties in which such Deed of Trust Properties are located are contiguous) in the State of Texas in which any part of such Deed of Trust Properties is situated or which lies shoreward of any Deed of Trust Property (i.e., to the extent a particular Deed of Trust Mortgaged Property lies offshore within the reasonable projected seaward extension of the relevant county boundary), in accordance with the provisions of Chapter 51 of the Texas Property Code (or any successor statutes of the State of Texas then in force governing sales of real estate under powers conferred by deed of trust), after having given notice of such sale in accordance with such statutes.

**<u>A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW TRUSTEE TO TAKE THE MORTGAGED PROPERTIES AND SELL THEM WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON A DEFAULT BY MORTGAGOR UNDER THIS MORTGAGE.</u>**

(ii) <u>State of Louisiana</u>: As to any portion of the Other Mortgaged Properties located in the State of Louisiana (or within the offshore area over which the United States of America asserts jurisdiction and to which the laws of such state are applicable with respect to this Mortgage and/or the Liens or security interests created hereby), Mortgagee may foreclose this Mortgage by executory process, or any other process, subject to, and on the terms and conditions required or permitted by, applicable law, and shall have the right to appoint a keeper of such Other Mortgaged Properties. Solely for purposes of Louisiana executory process, Mortgagor acknowledges the Obligations, whether now existing or to arise hereafter, and for

11

Mortgagor, Mortgagor's personal representatives, successors and assigns, hereby confesses judgment for the full amount of the Obligations in favor of the Mortgagee for the benefit of the Mortgagee and Secured Parties. Mortgagor further agrees that Mortgagee may cause all or any part of the applicable Other Mortgaged Properties to be seized and sold after due process of law, Mortgagor waiving the benefit of all laws or parts of laws relative to the appraisement of property seized and sold under executory process or other legal process, and consenting that all or any part of such Other Mortgaged Properties may be sold without appraisement, either in its entirety or in lots and parcels, as Mortgagee may determine, to the highest bidder for cash or on such terms as the plaintiff in such proceedings may direct. Mortgagor hereby waives (i) the benefit of appraisement provided for in articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure and all other laws conferring the same; (ii) the notice of seizure provided for in articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (iii) the three (3) days delay provided for in articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (iv) all other laws providing rights of notice, demand, appraisement, or delay. Mortgagor expressly authorizes and agrees that Mortgagee shall have the right to appoint a keeper of such Other Mortgaged Properties pursuant to the terms and provisions of La. R.S. 9:5131 et seq. and La. R.S. 9:5136 et seq., which keeper may be Mortgagee, any agent or employee thereof, or any other person, firm, or corporation. Compensation for the services of the keeper is hereby fixed at five percent (5%) of the amount due or sued for or claimed or sought to be protected, preserved, or enforced in the proceeding for the recognition or enforcement of this Mortgage and shall be secured by the Liens and security interests of this Mortgage.

(iii)     State of Mississippi: As to any portion of the Deed of Trust Properties located in the State of Mississippi (or within the offshore area over which the United States of America asserts jurisdiction and to which the laws of such state are applicable with respect to this Mortgage and/or the Liens or security interests created hereby), any sale of any part of such Deed of Trust Properties shall be made after having published notice of the day, time, place and terms of sale in a newspaper published in the county in which the Deed of Trust Property is situated or which lies shoreward of such Deed of Trust Properties (i.e. to the extent a particular Deed of Trust Property lies offshore within the reasonable projected seaward extension of the relevant county boundary), or, if none is so published, in some paper having a general circulation therein, for three consecutive weeks preceding the date of sale; and by posting one notice of such sale at the courthouse of such county for said period of time. Trustee shall have the power to select the county or judicial district in which the sale shall be made, newspaper advertisement published, and notice of sale posted in the event the Deed of Trust Property is located in, or lies seaward from, more than one county or in two judicial districts in the same county. Trustee in said trust shall have the full power to fix the day, time, place and terms of sale and may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Trustee, including the posting of notices in the conduct of the sale but in the name of and on behalf of Trustee, his substitute or successor. In connection with the foregoing, Mortgagor waives the provisions of Section 89-1-55 of the Mississippi Code of 1972, recompiled and laws amendatory thereto, if any, as far as said section restricts the right of Trustee to offer at sale more than 160 acres at one time and Trustee may, in his discretion, offer the Mortgaged Property as a whole or in such part or parts as he may deem desirable regardless of the manner in which it may be described. Any sale made by Trustee hereunder may be adjourned by announcement at the time and place appointed for such sale without further notice except as may be required by law. Mortgagor also waives the provisions of Section 89-1-59 of the Mississippi Code of 1972,

recompiled and laws amendatory thereto, insofar as said section allows Mortgagor to reinstate an accelerated debt. Subject to the requirement under Section 89-5-45 of the Mississippi Code of 1972 which requires that an appointment be recorded prior to the commencement of foreclosure proceedings, if Trustee shall have given notice of sale hereunder, any successor or substitute Trustee thereafter appointed may complete the sale and the conveyance of the property pursuant thereto as if such notice had been given by the successor or substitute Trustee conducting the sale.

(iv)    State of Alabama: As to any portion of the Other Mortgaged Properties located in the State of Alabama (or within the offshore area over which the United States of America asserts jurisdiction and to which the laws of such state are applicable with respect to this Mortgage and/or the Liens or security interests created hereby), expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Mortgagor and shall include Mortgagee's attorney's fees and legal expenses, all of which shall be secured by this Mortgage. Upon the occurrence of an Event of Default, Mortgagor shall have the right to cause any of the Other Mortgaged Properties which are subject to the security interest of Mortgagee hereunder to be sold at any one or more public or private sales as permitted by applicable law. Any such disposition may be conducted by an employee or agent of the Mortgagee. Any person, including Mortgagor or Mortgagee, shall be eligible to purchase any part or all of such property at any such sale. Mortgagee shall give Mortgagor at least five (5) days' prior written notice of the time and place of any public sale or other disposition of such property or of the time of or after which any private sale or other intended disposition is to be made, and if such notice is sent to the Mortgagor as provided for the mailing of notices herein, it is hereby deemed that such notice shall be and is reasonable notification to Mortgagor. Notwithstanding any contrary provision in this Mortgage, the Decommissioning Agreement, or any of the other Secured Transaction Documents, if an Event of Default shall have occurred, this Mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in the case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Other Mortgaged Property and, after giving at least twenty-one (21) days' notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Other Mortgaged Property is situated or which lies shoreward of such Other Mortgaged Property (i.e. to the extent a particular Other Mortgaged Property lies offshore within the reasonable projected seaward extension of the relevant county boundary), to sell the Other Mortgaged Property in front of the courthouse door of said county, at public outcry, to the highest bidder for cash, and to apply the proceeds of such sale as specified herein. The Mortgagor agrees that the Mortgagee may bid at any sale had under the terms of this Mortgage and may purchase the Other Mortgaged Properties if the highest bidder therefor. At the foreclosure sale the Other Mortgaged Properties may be offered for sale and sold as a whole without first offering it in any other manner or it may be offered for sale and sold in any other manner the Mortgagee may elect. The power of sale granted herein is a continuing power and shall not be fully exercised until all of the Other Mortgaged Properties not previously sold shall have been sold or all of the secured indebtedness and other obligations secured hereby have been satisfied in full.

5.3.    Substitute Trustees and Agents. The Trustee or Mortgagee may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by the Trustee or Mortgagee, including the posting of notices and the conduct of sale, but in the name and on behalf of the Trustee or Mortgagee. If the Trustee or Mortgagee shall have given notice of sale hereunder, any successor or substitute trustee or mortgagee agent thereafter

appointed may complete the sale and the conveyance of the property pursuant thereto as if such notice had been given by the successor or substitute trustee or mortgagee agent conducting the sale.

5.4.    Judicial Foreclosure; Receivership. Upon the occurrence of and during the continuance of an Event of Default, the Mortgagee shall have the right and power to proceed by a suit or suits in equity or at law, whether for the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, or for any foreclosure hereunder or for the sale of the Collateral under the judgment or decree of any court or courts of competent jurisdiction, or for the appointment of a receiver pending any foreclosure hereunder or the sale of the Collateral under the order of a court or courts of competent jurisdiction or under executory or other legal process, or for the enforcement of any other appropriate legal or equitable remedy.

5.5.    Foreclosure for Installments. Upon the occurrence of and during the continuance of an Event of Default, the Mortgagee shall also have the option to proceed with foreclosure in satisfaction of any installments of the Obligations that have not been paid when due either through the courts or by directing the Trustee to proceed with foreclosure in satisfaction of the matured but unpaid portion of the Obligations as if under a full foreclosure, conducting the sale as herein provided and without declaring the entire principal balance and accrued interest and other Obligations then due; such sale may be made subject to the unmatured portion of the Obligations, and any such sale shall not in any manner affect the unmatured portion of the Obligations, but as to such unmatured portion of the Obligations this Mortgage shall remain in full force and effect just as though no sale had been made hereunder. It is further agreed that upon the occurrence of and during the continuance of an Event of Default, several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Obligations, it being the purpose hereof to provide for a foreclosure and sale of the security for any matured portion of the Obligations without exhausting the power to foreclose and sell the Mortgaged Property for any subsequently maturing portion of the Obligations.

5.6.    Separate Sales. Upon the occurrence of and during the continuance of an Event of Default, the Collateral may be sold in one or more parcels and to the extent permitted by applicable Requirement of Law in such manner and order as the Mortgagee, in its sole discretion, may elect, it being expressly understood and agreed that the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

5.7.    Possession of Mortgaged Property. If an Event of Default shall have occurred and be continuing, then, to the extent permitted by applicable law, the Trustee or the Mortgagee shall have the right and power to enter into and upon and take possession of all or any part of the Collateral in the possession of the Mortgagor, its successors or assigns, or its or their agents or servants, and may exclude the Mortgagor, its successors or assigns, and all persons claiming under the Mortgagor, and its or their agents or servants wholly or partly therefrom; and, holding the same, the Mortgagee may use, administer, manage, operate and control the Collateral and conduct the business thereof to the same extent as the Mortgagor, its successors or assigns, might at the time do and may exercise all rights and powers of the Mortgagor, in the name, place and stead of the Mortgagor, or otherwise as the Mortgagee shall deem best.

5.8.     Occupancy After Foreclosure. In the event there is a foreclosure sale hereunder and at the time of such sale the Mortgagor or the Mortgagor's heirs, devisees, representatives, successors or assigns or any other person claiming any interest in the Collateral by, through or under the Mortgagor, are occupying or using the Mortgaged Property or any part thereof, each and all shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either the landlord or tenant, or at a reasonable rental per day based upon the value of the property occupied, such rental to be due daily to the purchaser; to the extent permitted by applicable law, the purchaser at such sale shall, notwithstanding any language herein apparently to the contrary, have the sole option to demand immediate possession following the sale or to permit the occupants to remain as tenants at will. In the event the tenant fails to surrender possession of said property upon demand, the purchaser shall be entitled to institute and maintain a summary action for possession of the Mortgaged Property (such as an action for forcible entry and detainer) in any court having jurisdiction. Furthermore, notice of termination by the Trustee or the Mortgagee to the Mortgagor shall be deemed to be written demand for the premises pursuant to Ala. Code Section 6-5-233.

5.9.     Remedies Cumulative, Concurrent and Nonexclusive. Every right, power, privilege and remedy herein given to the Trustee or the Mortgagee shall be cumulative and in addition to every other right, power and remedy herein specifically given or now or hereafter existing in equity, at law or by statute (including specifically those granted by the Applicable UCC in effect and applicable to the Collateral or any portion thereof). Each and every right, power, privilege and remedy whether specifically herein given or otherwise existing may be exercised from time to time and so often and in such order as may be deemed expedient by the Trustee or the Mortgagee, and the exercise, or the beginning of the exercise, or the abandonment, of any such right, power, privilege or remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter any other right, power, privilege or remedy. No delay or omission by the Trustee or the Mortgagee or any Secured Party in the exercise of any right, power or remedy shall impair any such right, power, privilege or remedy or operate as a waiver thereof or of any other right, power, privilege or remedy then or thereafter existing.

5.10.     Discontinuance of Proceedings. If the Trustee or the Mortgagee shall have proceeded to invoke any right, remedy or recourse permitted hereunder or under any Loan Document or Secured Transaction Document or available at law and shall thereafter elect to discontinue or abandon same for any reason, then it shall have the unqualified right so to do and, in such an event, the parties shall be restored to their former positions with respect to the Obligations, this Mortgage, the Loan Agreement, the Collateral and otherwise, and the rights, remedies, recourses and powers of the Trustee and the Mortgagee, as applicable, shall continue as if same had never been invoked.

5.11.     No Release of Obligations. Neither the Mortgagor nor any other Person hereafter obligated for payment of all or any part of the Obligations shall be relieved of such obligation, to the extent the Obligations remain due and owing, by reason of: (a) the release, regardless of consideration, of the Mortgaged Property or any portion thereof or interest therein or the addition of any other property to the Mortgaged Property; (b) any agreement or stipulation between any subsequent owner of the Mortgaged Property and the Mortgagee extending, renewing, rearranging or in any other way modifying the terms of this Mortgage without first having obtained the consent of, given notice to or paid any consideration to the Mortgagor or such other Person, and in such

15

event the Mortgagor and all such other Persons shall continue to be liable to make payment according to the terms of any such extension or modification agreement unless expressly released and discharged in writing by the Mortgagee; or (c) by any other act or occurrence save and except upon the Termination Date.

5.12.    Release of and Resort to Collateral. The Mortgagee may release, regardless of consideration, any part of the Collateral without, as to the remainder, in any way impairing, affecting, subordinating or releasing the Lien created in or evidenced by this Mortgage or its stature as a prior Lien, in and to the Collateral, provided that Permitted Encumbrances may exist, and without in any way releasing or diminishing the liability of any Person liable for the repayment of the Obligations. For payment of the Obligations, the Mortgagee may resort to any other security therefor held by the Mortgagee in such order and manner as the Mortgagee may elect.

5.13.    Waiver of Redemption, Notice and Marshalling of Assets, Etc. To the fullest extent permitted by law, the Mortgagor hereby irrevocably and unconditionally waives and releases (a) all benefits that might accrue to the Mortgagor by virtue of any present or future moratorium law or other law exempting the Collateral from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment and (b) any right to a marshalling of assets or a sale in inverse order of alienation. If any law referred to in this Mortgage and now in force, of which the Mortgagor or its successor or successors might take advantage despite the provisions hereof, shall hereafter be repealed or cease to be in force, such law shall thereafter be deemed not to constitute any part of the contract herein contained or to preclude the operation or application of the provisions hereof. If the laws of any state that provides for a redemption period do not permit the redemption period to be waived, the redemption period shall be specifically reduced to the minimum amount of time allowable by statute.

5.14.    Application of Proceeds. The proceeds of any sale of the Mortgaged Property or any part thereof and all other monies received in any proceedings for the enforcement hereof or otherwise, whose application has not elsewhere herein been specifically provided for, shall be applied:

(a)    First, to the payment of all reasonable expenses incurred by the Trustee or the Mortgagee incident to the enforcement of this Mortgage, the Loan Agreement, or any other Loan Document or Secured Transaction Document to collect any portion of the Obligations, including expenses of any entry or taking of possession, of any sale, of advertisement thereof, and of conveyances, and court costs, compensation of agents and employees, a reasonable commission to the Trustee acting and reasonable legal fees, and to the payment of all other reasonable charges, expenses, liabilities and advances incurred or made by the Trustee or the Mortgagee under this Mortgage or in executing any trust or power hereunder; and

(b)    Second, as set forth in the Loan Agreement.

5.15.    Resignation of Operator. In addition to all rights and remedies under this Mortgage, at law and in equity, if any Event of Default shall occur and be continuing and the Trustee or the Mortgagee shall exercise any remedies under this Mortgage with respect to any portion of the Mortgaged Property (or the Mortgagor shall transfer any Mortgaged Property "in lieu of"

16

foreclosure) whereupon the Mortgagor is divested of its title to any of the Collateral, the Mortgagee shall have the right to request that any operator of any Mortgaged Property that is either the Mortgagor or any Affiliate of the Mortgagor to resign as operator under the joint operating agreement applicable thereto, and no later than 60 days after receipt by the Mortgagor of any such request, the Mortgagor shall resign (or, to the extent it is able to do so, cause such other Person to resign) as operator of such Collateral.

5.16. <u>Indemnity</u>. THE INDEMNIFIED PARTIES SHALL NOT BE LIABLE, IN CONNECTION WITH ANY ACTION TAKEN, FOR ANY LOSS SUSTAINED BY THE MORTGAGOR RESULTING FROM AN ASSERTION THAT THE MORTGAGEE HAS RECEIVED FUNDS FROM THE PRODUCTION OF HYDROCARBONS CLAIMED BY THIRD PERSONS OR ANY ACT OR OMISSION OF ANY INDEMNIFIED PARTY IN ADMINISTERING, MANAGING, OPERATING, OR CONTROLLING THE MORTGAGED PROPERTY **INCLUDING SUCH LOSS THAT MAY RESULT FROM THE ORDINARY NEGLIGENCE OF AN INDEMNIFIED PARTY** UNLESS SUCH LOSS IS CAUSED BY THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF THE INDEMNIFIED PARTY SEEKING INDEMNITY OR ANY OF ITS RELATED PARTIES. NO INDEMNIFIED PARTY SHALL BE OBLIGATED TO PERFORM OR DISCHARGE ANY OBLIGATION, DUTY, OR LIABILITY OF THE MORTGAGOR. EACH OF FIELDWOOD AND GOM AGREES TO PAY, SHALL INDEMNIFY THE INDEMNIFIED PARTIES FROM, AND HOLDS EACH OF THEM HARMLESS AGAINST, ANY AND ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGEMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING ATTORNEYS', AUDITORS', AND ACCOUNTANTS' FEES) TO WHICH ANY OF THEM MAY BECOME SUBJECT WHICH DIRECTLY OR INDIRECTLY ARISE FROM OR RELATE TO PREPARATION, EXECUTION, AND DELIVERY OF THIS MORTGAGE, TO THE EXTENT THE MORTGAGOR WOULD BE REQUIRED TO DO SO PURSUANT TO (i) SECTION 8.03 OF THE LOAN AGREEMENT, (ii) THE DECOMMISSIONING AGREEMENT, OR (iii) ANY OTHER SECURED TRANSACTION DOCUMENT. EACH OF FIELDWOOD AND GOM AGREES TO PAY, SHALL INDEMNIFY THE INDEMNIFIED PARTIES FROM, AND HOLD EACH OF THEM HARMLESS AGAINST, ANY AND ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGEMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING ATTORNEYS', AUDITORS', AND ACCOUNTANTS' FEES) TO WHICH ANY OF THEM MAY BECOME SUBJECT WHICH DIRECTLY OR INDIRECTLY ARISE FROM OR RELATE TO THE ENFORCEMENT, PERFORMANCE, AND ADMINISTRATION OF THIS MORTGAGE TO THE EXTENT THE MORTGAGOR WOULD BE REQUIRED TO DO SO PURSUANT TO (i) SECTION 8.03 OF THE LOAN AGREEMENT, (ii) THE DECOMMISSIONING AGREEMENT, OR (iii) ANY OTHER SECURED TRANSACTION DOCUMENT. THE LIABILITIES OF THE MORTGAGOR AS SET FORTH IN THIS <u>SECTION 5.16</u> SHALL SURVIVE THE TERMINATION OF THIS MORTGAGE.

5.17. <u>Failure to Perform</u>. The Mortgagor agrees that if it fails to perform any act or to take any action that it is required to perform or take hereunder or pay any money that the Mortgagor is required to pay hereunder, the Mortgagee, in the Mortgagor's name or its or their own name or names, may, but shall not be obligated to, perform or cause to perform such act or take such action or pay such money.

SECTION 6
THE TRUSTEE

6.1.    Duties, Rights, and Powers of Trustee. The Trustee shall have no duty to see to any recording, filing or registration of this Mortgage or any other instrument in addition or supplemental thereto, or to give any notice thereof, or to see to the payment of or be under any duty in respect of any tax or assessment or other governmental charge that may be levied or assessed on the Mortgaged Property, or any part thereof, or against the Mortgagor, or to see to the performance or observance by the Mortgagor of any of the covenants and agreements contained herein. The Trustee shall not be responsible for the execution, acknowledgment or validity of this Mortgage or of any instrument in addition or supplemental hereto or for the sufficiency of the security purported to be created hereby, and makes no representation in respect thereof or in respect of the rights of the Mortgagee. The Trustee shall have the right to consult with counsel upon any matters arising hereunder and shall be fully protected in relying as to legal matters on the advice of counsel. The Trustee shall not incur any personal liability hereunder except for the Trustee's own willful misconduct; and the Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine.

6.2.    Successor Trustee. The Trustee may resign by written notice addressed to the Mortgagee or be removed at any time with or without cause by an instrument in writing duly executed on behalf of the Mortgagee. In case of the death, resignation or removal of the Trustee, a successor may be appointed by the Mortgagee by instrument of substitution complying with any Requirement of Law, or, in the absence of any such requirement, without formality other than appointment and designation in writing. Written notice of such appointment and designation shall be given by the Mortgagee to the Mortgagor, but the validity of any such appointment shall not be impaired or affected by failure to give such notice or by any defect therein. Such appointment and designation shall be full evidence of the right and authority to make the same and of all the facts therein recited. Upon the making of any such appointment and designation, this Mortgage shall vest in the successor all the estate and title in and to all of the Mortgaged Property, and the successor shall thereupon succeed to all of the rights, powers, privileges, immunities and duties hereby conferred upon the Trustee named herein, and one such appointment and designation shall not exhaust the right to appoint and designate an additional successor but such right may be exercised repeatedly until the Termination Date has occurred. To facilitate the administration of the duties hereunder, the Mortgagee may appoint multiple trustees to serve in such capacity or in such jurisdictions as the Mortgagee may designate.

6.3.    Retention of Moneys. All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by applicable law) and the Trustee shall be under no liability for interest on any moneys received by him hereunder.

SECTION 7

18

<div align="center">MISCELLANEOUS</div>

7.1.  <u>Releases</u>.

(a)  <u>Full Release</u>. On the Termination Date, the Mortgagee shall forthwith cause satisfaction and discharge of this Mortgage to be entered upon the record at the expense of the Mortgagor and shall execute and deliver or cause to be executed and delivered such instruments of satisfaction and reassignment as may be reasonably necessary or desirable for the release of the Liens created hereby on the Mortgaged Property. Other than as set forth in the foregoing sentence, this Mortgage shall remain and continue in full force and effect and be binding in accordance with and to the extent of its terms upon the Mortgagor and the successors and assigns thereof and shall inure to the benefit of the Mortgagee and the Secured Parties and their respective successors, indorsees, transferees and assigns; notwithstanding that from time to time prior to the Termination Date, the Mortgagor may be free from any Obligations.

(b)  <u>Other Releases</u>. The Mortgagee, at the request and sole expense of the Mortgagor, shall promptly execute and deliver to the Mortgagor all releases, re-conveyances or other documents reasonably necessary or desirable for the release of the Liens created hereby on the Mortgaged Property, which shall include, without limitation, the agreement of the Mortgagee (on behalf of itself and on behalf of the Secured Parties) to release the security interests in, and the Liens on, the Collateral granted herein and created hereby, (i) upon any disposition by the Mortgagor of any Mortgaged Property (other than to each other or any subsidiary of Fieldwood or GOM) that is permitted under the Loan Agreement and (ii) to the extent that the Loan Agreement provides for such release with respect to the Mortgaged Property.

(c)  <u>Possession of Notes</u>. The Mortgagor acknowledges and agrees that possession of any promissory note issued to the Lender that evidences the Loans extended by the Lender to the Mortgagor (or any replacements of any said promissory note or other instrument evidencing any part of the Obligations) at any time by the Mortgagor or any other guarantor shall not in any manner extinguish the Obligations or this Mortgage, and the Mortgagor shall have the right to issue and reissue any of such promissory notes from time to time as its interest or as convenience may require, without in any manner extinguishing or affecting the Obligations or the Lien of this Mortgage.

7.2.  <u>Severability</u>. If any provision hereof is invalid or unenforceable in any jurisdiction, the other provisions hereof shall remain in full force and effect in such jurisdiction and the remaining provisions hereof shall be liberally construed in favor of the Mortgagee and the Secured Parties in order to effectuate the provisions hereof. The invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of any such provision in any other jurisdiction.

7.3.  <u>Successors and Assigns</u>. The terms used to designate any party or group of persons shall be deemed to include the respective heirs, legal representatives, successors and assigns of such Persons.

7.4.  <u>Satisfaction of Prior Encumbrance</u>. To the extent that proceeds of the Loan Agreement are used to pay any indebtedness secured by any outstanding Lien against the

<div align="center">19</div>

Mortgaged Property then the parties agree that: (a) such proceeds have been advanced at the Mortgagor's request, and (b) the Mortgagee and the Secured Parties shall be subrogated to any and all rights and Liens owned by any owner or holder of such outstanding Liens, irrespective of whether said Liens are or have been released. It is expressly understood that, in consideration of the payment of such other indebtedness, the Mortgagor hereby waives and releases all demands and causes of action for offsets and payments to, upon and in connection with the said indebtedness. This Mortgage is made with full substitution and subrogation of the Trustee and the Mortgagee and their successors and assigns in and to all covenants and warranties by others heretofore given or made in respect of the Mortgaged Property or any part thereof.

7.5.   <u>Application of Payments to Certain Obligations</u>. If any part of the Obligations cannot be lawfully secured by this Mortgage or if any part of the Collateral cannot be lawfully subject to the Lien hereof to the full extent of the Obligations, then all payments made shall be applied on said Obligations first in discharge of that portion thereof that is not secured by this Mortgage.

7.6.   <u>Nature of Covenants</u>. The covenants and agreements herein contained shall constitute covenants running with the land and interests covered or affected hereby and shall be binding upon the heirs, legal representatives, successors and assigns of the parties hereto.

7.7.   <u>Notices</u>. All notices, requests and demands pursuant hereto shall be made in accordance with Section 8.01 of the Loan Agreement.

7.8.   <u>Expenses</u>. The Mortgagor agrees to pay any and all reasonable and documented out of pocket expenses (including attorneys', auditors' and accountants' fees, charges, and disbursements) that may be paid or incurred by the Mortgagee in enforcing, or obtaining advice of counsel in respect of, any rights with respect to, or collecting, any or all of the Obligations and/or enforcing any rights with respect to, or collecting against, the Mortgagor under this Mortgage to the extent the Mortgagor would be required to do so pursuant to (i) Section 8.03 of the Loan Agreement, (ii) the Decommissioning Agreement, or (iii) any other Secured Transaction Document.

7.9.   <u>Counterparts</u>. This Mortgage is being executed in several counterparts, all of which are identical, except that to facilitate recordation, if the Mortgaged Property is situated in (or adjacent to, in the case of offshore properties) more than one county or parish, descriptions of only those portions of the Mortgaged Property located in the county or parish in which a particular counterpart is recorded may be attached as <u>Exhibit A</u> to such counterpart. Each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument. Complete copies of this Mortgage containing the entire <u>Exhibit A</u> have been retained by the Mortgagee.

7.10.   <u>Governing Law</u>. This Mortgage shall be governed and construed in accordance with the laws of the State of Texas, without regard to the laws that might be applicable under conflicts of laws principles; provided, however, that, with respect to any portion of the Mortgaged Property located outside of the State of Texas, the laws of the place in which such property is located in, or offshore area adjacent to (and State law made applicable as a matter of Federal law), shall apply

to the extent of procedural and substantive matters relating only to the creation, perfection, foreclosure of Liens and enforcement of rights and remedies against the Mortgaged Property.

7.11.   Financing Statement; Fixture Filing. This Mortgage shall be effective as a financing statement filed as a fixture filing with respect to all Fixtures included within the Mortgaged Property and is to be filed or filed for record in the real estate records, mortgage records or other appropriate records of each jurisdiction where any part of the Mortgaged Property (including said fixtures) are situated (or adjacent to, in the case of offshore properties), and may also be filed in the offices of the Bureau of Land Management and/or the Bureau of Ocean Energy Management. This Mortgage shall also be effective as a financing statement covering As-Extracted Collateral (including oil and gas and all other substances of value that may be extracted from the ground) and accounts financed at the wellhead or minehead of wells or mines located on the properties subject to the Applicable UCC and is to be filed for record in the real estate records, UCC records or other appropriate records of each jurisdiction where any part of the Mortgaged Property is situated (or adjacent to, in the case of offshore properties). This Mortgage also constitutes a security agreement under the Applicable UCC, and creates a security interest in all that property (and the proceeds thereof) included in the Mortgaged Property which might otherwise be deemed "personal property". Notwithstanding any release of any or all of that property included in the Mortgaged Property which is deemed "real property", any proceedings to foreclose this Mortgage or its satisfaction of record, the terms hereof shall survive as a security agreement with respect to the security interests created hereby and referred to above until the repayment or satisfaction in full of the obligations of Mortgagor as are now or hereafter evidenced by the Secured Transaction Documents.

7.12.   Filing of Financing Statements. Pursuant to the Applicable UCC, the Mortgagor authorizes the Mortgagee, its counsel or its representative, at any time and from time to time, to file or record financing statements, continuation statements, amendments thereto and other filing or recording documents or instruments with respect to the Mortgaged Property without the signature of the Mortgagor in such form and in such offices as the Mortgagee reasonably determines appropriate to perfect the security interests of the Mortgagee under this Mortgage. The Mortgagor also authorizes the Mortgagee, its counsel or its representative, at any time and from time to time, to file or record such financing statements that describe the collateral covered thereby as "all assets of the Mortgagor", "all personal property of the Mortgagor" or words of similar effect. The Mortgagor shall pay all costs associated with the filing of such instruments.

In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | Fieldwood Energy I LLC |
| Address of Debtor: | 2000 W. Sam Houston Pkwy S., Suite 1600 Houston, Texas 77042 Attention: _____ |
| State of Formation/Location: | Texas |

21

| | |
|---|---|
| Name of Debtor: | GOM Shelf LLC |
| Address of Debtor: | 2000 W. Sam Houston Pkwy S., Suite 1600 Houston, Texas 77042 Attention: _____ |
| State of Formation/Location: | Delaware |
| Name of Secured Party: | Apache Corporation As Collateral Agent |
| Address of Secured Party: | 2000 Post Oak Boulevard Suite 100 Houston, Texas 77056 |
| Owner Record of Real Property: | Fieldwood Energy I LLC and GOM Shelf LLC |

7.13.   Limit on Obligations and Collateral. It is the intention of the Mortgagor, the Mortgagee and the Secured Parties that this Mortgage not constitute a fraudulent transfer or fraudulent conveyance under any state or federal law that may be applied hereto. The Mortgagor and, by the Mortgagee's acceptance hereof, the Mortgagee and the Secured Parties hereby acknowledge and agree that, notwithstanding any other provision of this Mortgage, the indebtedness secured hereby shall be limited to the maximum amount of indebtedness that can be incurred or secured by the Mortgagor without rendering this Mortgage voidable under applicable law relating to fraudulent conveyances or fraudulent transfers.

7.14.   Appearance, Resolutions. For purposes of Louisiana law, including but not limited to the availability of executory process, Mortgagor has appeared on this date before the undersigned Notary Public and witnesses in order to execute this Mortgage. Mortgagor also attaches hereto, as Annex I, a written consent authorizing the execution and delivery of this Mortgage.

7.15.   Paraph. Mortgagor acknowledges that no promissory note or other instrument has been presented to the undersigned Notary Public to be paraphed for identification herewith.

7.16.   Acceptance by Mortgagee. In accordance with the provisions of Louisiana Civil Code article 3289, Mortgagee has accepted the benefits of the Mortgage without the necessity of execution by Mortgagee.

7.17.   Notary Public. The parties relieve and release the undersigned notary public of any duty to produce and attach mortgage or conveyance certificates.

HOU 3972706v13

7.18.   Appointment of Mortgagee as Collateral Agent.  By accepting the benefits hereof or any other Collateral Document, each other Secured Party hereby appoints Apache Corporation to act as collateral agent on its behalf hereunder and thereunder, and authorizes Apache Corporation, as Mortgagee, to take such actions on its behalf and to exercise such powers as are delegated to the Mortgagee by the terms hereof and thereof, together with such actions and powers as are reasonably incidental thereto.

7.19.   Joint and Several Obligations of Mortgagor.

(a)   Each of Fieldwood and GOM is accepting joint and several liability hereunder with each other and other Persons that have executed or will execute a Mortgage in consideration of the financial accommodation to be provided by the holders of the Obligations, for the respective mutual benefit, directly and indirectly, of Fieldwood and GOM and in consideration of the respective undertakings of Fieldwood and GOM to accept joint and several liability for the Obligations of each of them.

(b)   Each of Fieldwood and GOM, jointly and severally, hereby irrevocably and unconditionally accepts, not merely as a surety but also as a co-debtor, joint and several liability with each other and each other Person that have executed or will execute a Mortgage with respect to the payment and performance of all of the Obligations, it being the intention of the parties hereto that all the Obligations shall be the joint and several Obligations of Fieldwood, GOM, and each other Person that have executed or will execute a Mortgage without preferences or distinction among them.

7.20.   Decommissioning Obligations.  In all instances where Fieldwood defaults on its decommissioning obligations (including, with respect to the Mortgaged Property) and, in response to an order by the Bureau of Safety and Environmental Enforcement ("BSEE"), the Bureau of Ocean Energy Management ("BOEM"), their respective successor agencies, any other governmental authority having jurisdiction over such decommissioning obligations or other applicable governmental authority, or to a contractual obligation (in each case, a "Decommissioning Obligation"), Mortgagee or another third party (as the case may be, the "Applicable Decommissioning Operator") conducts or seeks to conduct such decommissioning operations as the then-present designated operator or as the decommissioning operator specifically appointed for such operations by BOEM, BSEE or other applicable governmental authority, Mortgagor shall fully cooperate with and support in all respects the Applicable Decommissioning Operator and shall make available to the Applicable Decommissioning Operator and, upon its request, to the extent such activity is permitted under the underlying agreement, assign to the Applicable Decommissioning Operator all documentation, plans, files, permits, contracts, contract rights, boarding rights, access rights, utilization rights, applicable litigious rights, rights to payment, rights to reimbursement, rights to contribution, audit rights, and any other benefit available to Mortgagor in connection with applicable decommissioning operations which are the subject of the applicable Decommissioning Obligation, each such assignment made solely as the rights relate to such Decommissioning Obligation.  In furtherance of these obligations imposed on Mortgagor, but not by way of limitation in any way, Mortgagor hereby:

(a)     Authorizes the Applicable Decommissioning Operator to perform all required decommissioning operations on any Mortgagor property or infrastructure (including all Mortgaged Property) that is the subject of a Decommissioning Obligation.

(b)     Provides and grants boarding access to the Applicable Decommissioning Operator for any infrastructure owned by Mortgagor, or to which Mortgagor has contract access rights, as such may be necessary or convenient for the Applicable Decommissioning Operator or its contractors, representatives, or designees, or the employees, agents, or consultants of any of them, to perform and fulfill each applicable Decommissioning Obligation, without need of further authorization or agreement of Mortgagor.   The foregoing boarding access rights shall automatically apply to any infrastructure designated by the Applicable Decommissioning Operator as being necessary or convenient to support such decommissioning operations.

(c)     Assigns and quitclaims any salvage value for any property or infrastructure decommissioned by the Applicable Decommissioning Operator so that such value can be monetized by the Applicable Decommissioning Operator and applied to each Mortgagor's defaulting share of the applicable Decommissioning Obligations.

(d)     Grants to the Applicable Decommissioning Operator access to all contracts applicable to any and all properties and infrastructure associated with the applicable Decommissioning Obligation and, upon notice from the Applicable Decommissioning Operator, shall assign to the Applicable Decommissioning Operator, solely as they relate to such Decommissioning Obligation, any contract and/or contract rights or benefits necessary or convenient to the performance of the Decommissioning Obligation or to the rights or ability of the Applicable Decommissioning Operator to collect and obtain contributions from any and all applicable third parties who might have obligations to pay for or contribute to all or any part of the Decommissioning Obligations.

(e)     Assigns, whether or not covered by clause (d) above, all rights to payment, rights to reimbursement, and rights to contribution for decommissioning expenses which may be available to Mortgagor for any property (including all Mortgaged Property) made the subject of a Decommissioning Obligation.

In addition, each Mortgagor hereby agrees to (i) fully release and hold the Applicable Decommissioning Operator harmless from any claims associated in any way with any operation conducted by the Applicable Decommissioning Operator in the performance of Decommissioning Obligations **(INCLUDING SUCH CLAIMS THAT MAY RESULT FROM THE ORDINARY NEGLIGENCE OF THE APPLICABLE DECOMMISSIONING OPERATOR)** and (ii) execute one or more counterparts of the certificate attached hereto as Exhibit B evidencing each Mortgagor's agreements, assignments, and designations hereunder, from time to time, immediately upon request of the Applicable Decommissioning Operator.  Each Mortgagor further agrees to execute such other agreements or instruments as may be requested by the Applicable Decommissioning Operator to effectuate or carry out the intents and agreements set forth in this Section 7.20.  The liabilities of Mortgagor as set forth in this Section 7.20 shall survive the termination of this Mortgage.  The provisions of this Section 7.20 of this Mortgage shall be binding on all successors and assigns of Mortgagor for all purposes.

[SIGNATURES BEGIN NEXT PAGE]

THUS DONE AND PASSED in the foregoing jurisdiction this [_____], 20[●] to be effective for all purposes as of the Effective Date, in my presence and in the presence of the undersigned competent witnesses who hereunto sign their names with Mortgagor and me, Notary, after reading of the whole.

WITNESSES                                FIELDWOOD ENERGY I LLC


_____           By: _____
Printed Name:                            Name: _____
                                         Title: _____

_____
Printed Name:


                                         GOM SHELF LLC


                                         By: _____
                                         Name: _____
                                         Title: _____



                         _____
                         NOTARY PUBLIC for the State of _____

                         Full name printed: _____




Signature Page to Mortgage, Deed of Trust, Assignment of As-Extracted Collateral,
Security Agreement, Fixture Filing and Financing Statement

STATE OF TEXAS §
§
COUNTY OF [HARRIS] §

**TEXAS**   This instrument was acknowledged before me on this ___ day of _____, 20[●], by _____, _____ of FIELDWOOD ENERGY I LLC, a Texas limited liability company, on behalf of said limited liability company.

**MISSISSIPPI**   Personally appeared before me, the undersigned authority in and for said county and state, on this ____ day of _____, 20[●], within my jurisdiction, the within named _____ of FIELDWOOD ENERGY I LLC, a Texas limited liability company, and that for and on behalf of the said limited liability company, and as its act and deed [he/she] executed the above and foregoing instrument, after first having been duly authorized by said limited liability company so to do.

**ALABAMA**   I, a Notary Public, in and for said County in said State, hereby certify that _____, whose name as _____ of FIELDWOOD ENERGY I LLC, a Texas limited liability company, is signed to the foregoing instrument or conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument/conveyance, [he/she], as such officer and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Given under my hand this ___ day of _____, 20[●].

IN WITNESS WHEREOF, I have hereunto set my hand and official seal in the [City of Houston, Harris County, Texas] on [_____, 20[●]].


_____
NOTARY PUBLIC, State of Texas

Printed Name: _____

_____
[SEAL]

Signature Page to Mortgage, Deed of Trust, Assignment of As-Extracted Collateral,
Security Agreement, Fixture Filing and Financing Statement

STATE OF TEXAS       §
                               §

COUNTY OF [HARRIS]     §

**TEXAS**            This instrument was acknowledged before me on this ___ day of _____, 20[●], by _____, _____ of GOM SHELF LLC, a Delaware limited liability company, on behalf of said limited liability company.

**MISSISSIPPI**     Personally appeared before me, the undersigned authority in and for said county and state, on this ____ day of _____, 20[●], within my jurisdiction, the within named _____ of GOM SHELF LLC, a Delaware limited liability company, and that for and on behalf of the said limited liability company, and as its act and deed [he/she] executed the above and foregoing instrument, after first having been duly authorized by said limited liability company so to do.

**ALABAMA**      I, a Notary Public, in and for said County in said State, hereby certify that _____, whose name as _____ of GOM SHELF LLC, a Delaware limited liability company, is signed to the foregoing instrument or conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument/conveyance, [he/she], as such officer and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Given under my hand this ___ day of _____, 20[●].

IN WITNESS WHEREOF, I have hereunto set my hand and official seal in the [City of Houston, Harris County, Texas] on [_____, 20[●]].

_____
NOTARY PUBLIC, State of Texas

Printed Name: _____

_____
[SEAL]

Signature Page to Mortgage, Deed of Trust, Assignment of As-Extracted Collateral,
Security Agreement, Fixture Filing and Financing Statement

**<u>EXHIBIT A[1]</u>**

**LEGAL DESCRIPTION**

[TO COME]

---

[1] To be completed in a manner mutually acceptable to all parties as a conditions to Apache's execution.

# EXHIBIT B

## CERTIFICATION OF RIGHTS

With respect to any decommissioning obligations for which Apache Corporation, or any of its subsidiaries, or a third party designated by Apache Corporation or one of its subsidiaries (as the case may be, the "Applicable Decommissioning Operator") either (a) conducts or seeks to conduct pursuant to an order from the Bureau of Safety and Environmental Enforcement ("BSEE"), the Bureau of Ocean Energy Management ("BOEM"), their respective successor agencies, or any other governmental authority having jurisdiction over such decommissioning obligations or (b) becomes obligated to perform pursuant to any contractual obligation (in each case, such decommissioning obligations being hereinafter referred to as "Decommissioning Obligations"), Fieldwood Energy I LLC ("FWE I") hereby certifies that it has:

1.    Assigned to such Applicable Decommissioning Operator all documentation, plans, files, permits, decommissioning spreads, contracts, and contract rights, boarding rights, access rights, utilization rights, applicable litigious rights, rights to payment, rights to reimbursement, rights to contribution, audit rights, and any other benefit available to FWE I in conjunction with applicable decommissioning operations which are the subject of the applicable Decommissioning Obligation;

2.    Authorized the Applicable Decommissioning Operator to perform all required decommissioning operations on any FWE I property or infrastructure that is the subject of a Decommissioning Obligation;

3.    Granted boarding access to the Applicable Decommissioning Operator for any infrastructure owned by FWE I, or to which FWE I has contract access rights, as such may be necessary or convenient for the Applicable Decommissioning Operator or its contractors, representatives, or designees, or the employees, agents, or consultants of any of them, to perform and fulfill each applicable Decommissioning Obligation, without need of further authorization or agreement of FWE I;

4.    Assigned and quitclaimed to the Applicable Decommissioning Operator any salvaged property or materials and the salvage value for any property or infrastructure decommissioned by the Applicable Decommissioning Operator;

5.    Granted to the Applicable Decommissioning Operator access to all contracts applicable to any and all properties and infrastructure associated with the applicable Decommissioning Obligation and assigned to the Applicable Decommissioning Operator any contract and/or contract rights or benefits necessary or convenient to the performance of the Decommissioning Obligation or to the rights or ability of the Applicable Decommissioning Operator to collect and obtain contributions from any and all applicable third parties who have obligations to pay for or contribute to all or any part of the Decommissioning Obligations; and

6. Assigned all rights to payment, rights to reimbursement, and rights to contribution for decommissioning expenses available to FWE I for any property made the subject of a Decommissioning Obligation.

FWE I further authorizes any co-owner, counterparty, contractor, or other person or entity to rely on the foregoing certifications in taking in action or making any payment or contribution as may be requested or directed by the Applicable Decommissioning Operator toward the fulfillment of the applicable Decommissioning Obligations.

FIELDWOOD ENERGY I LLC

_____

By: _____

Name: _____

Title: _____

## SCHEDULE 4.4[2]

## EXCLUDED PROPERTIES

| Name of Mortgagor | Description of Excluded Property |
|---|---|
|  |  |

---

[2] To be completed in a manner mutually acceptable to all parties as a conditions to Apache's execution.

## Exhibit 13

**Form of Amendment to Unit Operating Agreement**

# AMENDMENT TO
# UNIT OPERATING AGREEMENT

This Amendment to the Unit Operating Agreement (this "Amendment") is made and entered into effective the _____ day of _____, 202__ (the "Effective Date"), by and between [Fieldwood Energy II LLC], ("Fieldwood"), GOM Shelf LLC, ("GOM Shelf"), and Apache Shelf Exploration LLC, ("Apache").  The entities named hereinabove are hereinafter sometimes referred individually as "Party" and collectively as "Parties".

## WITNESSETH

**WHEREAS**, Conoco Inc. ("Conoco"), Atlantic Richfield Company, ("ARCO"), Texaco Producing Inc. ("Texaco") and Oxy USA Inc. ("Oxy") entered into a Unit Operating Agreement dated January 1, 1989, ("the West Delta Grand Isle Unit Agreement"); and

**WHEREAS**, Fieldwood, GOM Shelf, and Apache are successors in interest to Conoco, ARCO, Texaco, and OXY in the West Delta Grand Isle Unit Operating Agreement insofar and only insofar as it covers the depths described on Exhibit ____ hereto[1] (the West Delta Grand Isle Unit Operating Agreement insofar as it covers these depths, the "Operating Agreement"); and

**WHEREAS,** Fieldwood, GOM Shelf, and Apache desire to amend the West Delta Grand Isle Unit Operating Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties do hereby amend the Unit Operating Agreement insofar as it pertains to, covers, and burdens the interests of the Parties in and to the lands, leases, and depths covered by the Unit Operating Agreement as follows:

## ARTICLE 3.1
## EXHIBITS

**Article 3.1 Exhibits** is amended by inserting the following immediately following "3.1.5  Exhibit "E".  Gas Balancing Agreement.":

> "3.1.6   Exhibit "F".  Form of Surety Bond.

> 3.1.7    Exhibit "G" Form of Assignment."

## ARTICLE 4
## OPERATOR

**Article 4.1** is amended by deleting the entire Article and replacing it with the following:[2]

> "[Fieldwood Energy II LLC] is hereby designated as Operator."

## ARTICLE 11
## DEVELOPMENT OPERATIONS

**Article 11.8 Facilities** is amended by deleting such Article in its entirety and replacing it with the following:

---

[1] Note to Draft: Exhibit to cover those depths which are only owned by the parties to this amendment.

The affirmative vote of all Parties having a combined Participating Interest of one hundred percent (100%) in the wells to be served by the proposed Facilities shall constitute approval.

## ARTICLE 12
## NON-CONSENT OPERATIONS

**Article 12.2.1 Production Reversion Penalties** is amended by deleting the entire Article and replacing it with the following:

"Such interest, rights and title shall remain vested in each Participating Party until the wells comprising such Non-Consent Operations are plugged and abandoned and decommissioned. Upon the commencement of such Non-Consent Project, the Non-Participating Party(ies) shall execute and deliver to the Participating Parties an assignment of their interest, rights and title in the Non-Consent Project on the form of Assignment attached hereto as Exhibit G."

## ARTICLE 14
## WITHDRAWAL

**Article 14 Withdrawal** is amended by deleting the Article in its entirety and replacing it with the following:

"**14.1 Withdrawal.** Subject to this Article 14.1, any Party may withdraw from this Agreement as to the Unit Area and the Leases, wells, Platforms and Facilities used in operations on such Unit Area (the "Withdrawing Party") by giving prior written notice to all other Parties stating its decision to withdraw (the "withdrawal notice"). The withdrawal notice shall specify an effective date of withdrawal that is at least sixty (60) days, but not more than ninety (90) days, after the date of the withdrawal notice. Within thirty (30) days of receipt of the withdrawal notice, the other Parties may join in the withdrawal by giving written notice of that fact to Operator ("written notice to join in the withdrawal") and on giving written notice to join in the withdrawal are "Other Withdrawing Parties". The withdrawal notice and the written notice(s) to join in the withdrawal are unconditional and irrevocable offers by the Withdrawing Party and the Other Withdrawing Parties to convey to the Parties that do not join in the withdrawal ("the Remaining Parties") the Withdrawing Party's and the Other Withdrawing Parties' entire Working Interest in the Unit Area, Leases, wells, Platforms, Facilities, Production, and other property and equipment owned under this Agreement.

**14.2    Response to Withdrawal Notice.** Failure to respond to a withdrawal notice is deemed a decision not to join in the withdrawal.

**14.2.1 Unanimous Withdrawal.** If all the other Parties join in the withdrawal,

(a)     no assignment of Working Interests shall take place;

(b)     subject to Article 13.4, no further operations may be conducted under this Agreement unless agreed to by all Parties;

(c)     the Parties shall abandon all activities and operations within the Lease and relinquish all of their Working Interests to the BOEM or the applicable successor agency within one hundred twenty (120) days of the conclusion of the thirty (30) day joining period; and

(d)     notwithstanding anything to the contrary in Article 13 (Abandonment and Salvage), Operator shall:

1)     furnish all Parties a detailed abandonment plan, if applicable, and a detailed cost estimate for the abandonment within one hundred eighty (180) days after the conclusion of the thirty (30) day joining period; and

2)     cease operations and begin to permanently plug and abandon all

wells and remove all Facilities and Platforms in accordance with the abandonment plan.

**14.2.2  No Additional Withdrawing Parties.**  If none of the other Parties join in the withdrawal, the Remaining Parties must accept an assignment of their Participating Interest share of the Withdrawing Party's Working Interest.

**14.2.3  Acceptance of the Withdrawing Parties' Interests.**  If one (1) or more but not all of the other Parties join in the withdrawal and become Other Withdrawing Parties, within forty-eight (48) hours (excluding Saturdays, Sundays, and federal holidays) of the conclusion of the thirty- (30) day joining period, each of the Remaining Parties shall submit to Operator a written rejection or acceptance of its Participating Interest share of the Withdrawing Party's and Other Withdrawing Parties' Working Interest.  Failure to make that written rejection or acceptance shall be deemed a written acceptance.  If the Remaining Parties are unable to select a successor Operator, if applicable, or if a Remaining Party submits a written rejection and the other Remaining Parties do not agree to accept one hundred percent (100%) of the Withdrawing Party's and Other Withdrawing Parties' Working Interest within fifteen (15) days of the conclusion of the forty-eight (48) hour period to submit a written rejection or acceptance, the Remaining Parties will be deemed to have joined in the withdrawal, and Article 14.2.1 (Unanimous Withdrawal) will apply.

**14.2.4  Effects of Withdrawal**.  Except as otherwise provided in this Agreement, after giving a withdrawal notice or a written notice to join in the withdrawal, the Withdrawing Party and Other Withdrawing Parties are not entitled to approve or participate in any activity or operation in the Lease, other than those activities or operations for which they retain a financial responsibility.  The Withdrawing Party and Other Withdrawing Parties shall take all necessary steps to accomplish their withdrawal by the effective date referred to in Article 14.1 (Withdrawal) and shall execute and deliver to the Remaining Parties all necessary instruments to assign their Working Interest to the Remaining Parties, including, without limitation, assignments of their Working Interests in substantially the same form as attached hereto as Exhibit "G".  Additionally, the Parties shall take such further actions as are necessary or appropriate to register the assignment of the Withdrawing Party's and Other Withdrawing Parties' Working Interests with BOEM or the applicable successor agency.  A Withdrawing Party and Other Withdrawing Parties shall bear all expenses associated with their withdrawal and the transfer of their Working Interest.

**14.3     Limitation on and Conditions of Withdrawal**

**14.3.1  Prior Expenses**.  The Withdrawing Party and Other Withdrawing Parties remain liable for their Participating Interest share of the costs of all activities, operations, rentals, royalties, taxes, damages, Production imbalances, or other liability or expense accruing or relating to (i) obligations existing as of the effective date of the withdrawal, (ii) operations conducted before the effective date of the withdrawal, or (iii) operations approved by the Withdrawing Party and Other Withdrawing Parties before the effective date of the withdrawal.  Before the effective date of the withdrawal, Operator shall provide a statement to the Withdrawing Party and Other Withdrawing Parties for (1) their respective shares of all identifiable costs under this Article 14.3.1 and (2) their respective Participating Interest shares of the estimated current costs of plugging and abandoning all wells and removing all Platforms, Facilities, and other materiel and equipment in which such Withdrawing Party or Other Withdrawing Party, as applicable, has an ownership interest as part of the Joint Account, less their respective Participating Interest shares of the estimated salvage value of the assets at the time of abandonment, as approved by vote of one or more Parties having a majority interest.  This statement of expenses, costs, and salvage value shall be prepared by Operator under Exhibit "C".  At its option, before withdrawing, each of the Withdrawing Party and Other Withdrawing Parties shall either (i) pay Operator, (ii) provide Operator with a surety bond in substantially the same form as attached hereto as Exhibit "F" in an penal sum equal to, or (iii) deposit into an escrow account, in each case for the benefit of the Remaining Parties, the amount allocated to such Withdrawing Party or Other Withdrawing Party as shown in the statement for all obligations and liabilities they have incurred and all obligations and liabilities attributable to such Party before the effective date of the withdrawal; provided, however, that the Withdrawing Party or Other Withdrawing Party may condition its delivery of such payment or bond upon the Remaining Parties' acceptance of the assignment made pursuant to Article 14.2.4.  All liens, charges, and other encumbrances, including but not limited to overriding royalties, net profits interest, and production payments, that the Withdrawing Party and Other Withdrawing Parties placed (or caused to be placed) on their Working Interest shall be fully satisfied or released before the effective date of its withdrawal (unless the Remaining Parties are willing to accept the Working Interest subject to those liens, charges, and other encumbrances).

**14.3.2  Confidentiality.**  The Withdrawing Party and Other Withdrawing Parties will continue to be bound by the confidentiality provisions of Article 7.3 (Confidentiality) after the effective date of the withdrawal but will have no further obligation to technical information relating to activities or operations under this Agreement.  The Withdrawing Party and Other Withdrawing Parties are not required to return to the Remaining Parties Confidential Data acquired before the effective date of the withdrawal.

**14.4  Emergencies and Force Majeure.**  Notwithstanding anything herein to the contrary, no Party may withdraw during an event of force majeure as described in Article 24.1 or emergency that poses a threat to life, safety, property, or the environment but may withdraw from this Agreement after termination of the force majeure event or emergency.  The Withdrawing Party and Other Withdrawing Parties remain liable for their share of all costs and liabilities arising from the force majeure event or emergency, including but not limited to the drilling of relief wells, containment, and clean-up of oil spills and pollution, and all costs of debris removal made necessary by the force majeure event or emergency."

<div align="center">

**ARTICLE 21**
**DISPOSITION OF PRODUCTION**

</div>

**Article 21.1 Facilities to Take in Kind** is deleted in its entirety.

## ARTICLE 25
## SUCCESSORS, ASSIGNS AND PREFERENTIAL RIGHT TO PURCHASE

**Article 25.3 Transfer of Interest** is deleted in its entirety and replaced with the following:

"25.3   Transfer of Interest.  Subject to the provisions of Section 25.2 hereof and except as provided in 25.3.1 (Exceptions to Transfer Notice), notice of any Party's attempted transfer of Working Interest in the Unit Area, whether directly through an assignment, transfer, or conveyance or indirectly through a merger, consolidation, or similar transaction or series of transactions, (a "Transfer of Interest") shall be provided by written notice to Operator and the other Parties ("the transfer notice").  Any Transfer of Interest shall be made to a party qualified by the BOEM and any other applicable regulatory agency to own leases in the Gulf of Mexico, and is financially capable of assuming the corresponding obligations under this Operating Agreement.  All Transfers of Interest must be approved by and consented to in writing by the non-transferring Parties for any assignment made hereunder to be valid and binding upon the non-transferring Parties ("Consent").  Such Consent shall not be unreasonably withheld, delayed, or conditioned, and shall not require remuneration of any kind except for amounts owed pursuant to the terms hereof.  Notwithstanding the foregoing, the non-transferring Parties' Consent can be conditioned on requiring reasonable proof of the prospective transferee's ability to perform its obligations under this Agreement and reasonable financial assurances from such prospective transferee.  Such financial assurances required by the non-transferring Parties may include bonds, letters of credit, and other conditions providing sufficient evidence of such prospective transferee's ability to perform its obligations under this Operating Agreement to the reasonable satisfaction of the non-transferring Parties.[3]  Any Transfer of Interest shall contain a provision in the assignment requiring that the non-transferring Parties' written consent must also be obtained before any future Transfer of Interest under this Agreement in whole or in part, and shall also include a provision that the transferee be bound by all the terms and conditions of this Operating Agreement.  No Transfer of Interest shall release a Party from its obligations and liabilities accrued under this Agreement prior to the effective date of the Transfer of Interests, and the security rights under Article 8.6 (Security Rights) shall continue to burden the working interest transferred and to secure the payment of those obligations and liabilities. Subject to the immediately preceding sentence, but otherwise notwithstanding anything to the contrary herein, the restrictions and obligations in this Article 25.3 shall not apply to any Transfer of Interest from a Party to an Affiliate of such Party.

25.3.1   Exceptions to Transfer Notice. Notwithstanding any contrary provision of this Agreement, the transfer notice and the Consent are not required when a Party proposes to (i) mortgage, pledge, hypothecate, or grant a security interest in all or a portion of its Working Interest (including Assignments of oil or gas production executed as further security for the debt secured by that security device, collectively a "Financing Transaction"), any wells, Platforms, Facilities, or other equipment, or (ii) transfer, assign, or otherwise convey all or a portion of its Working Interests to either Affiliates or pursuant to the preferential rights purchase; provided that the penultimate sentence of Section 25.3 shall apply to any such transfer, assignment, or conveyance of a Party's Working Interest to an Affiliate or pursuant to a preferential right to purchase.  However, an assignment of Working Interest arising from a Financing Transaction shall be expressly made subject and subordinated to this Agreement.

25.3.2   Effective Date of Transfer of Interest.  Subject to the requirements in this Article 25.3, a Transfer of Interest becomes effective twenty (20) days after the day all Parties are in receipt of the transfer notice.  No Transfer of Interest, other than those provided in Article 14 (Withdrawal), is binding on the Parties unless and until (i) the non-transferring Parties have provided their Consent to the Transfer of Interest (other than those provided in Article 25.3.1), (ii) if necessary, the assignor or assignee provides all remaining Parties with a photocopy of a fully executed Transfer of Interest, an fully executed BOEM "Designation of Operator" form and a designation of oil spill responsibility form, and (iii) evidence of

---

[3] NTD: This amendment will be signed by FWE I and [FWE II] upon the divisive merger and after the Credit Bid Sale.  As a result, this provision will not be in place so as to apply to the Credit Bid Sale.  However, it should apply to all subsequent transfers.

receipt of all necessary approvals by the BOEM or any applicable successor agency. The Parties shall promptly undertake all reasonable actions necessary to secure those approvals and shall execute and deliver all documents necessary to effectuate that Transfer of Interest. All costs attributable to a Transfer of Interest are the sole obligation of the assigning Party.

26.3.3 <u>Form of Transfer of Interest</u>. Any Transfer of Interest shall incorporate provisions that the Transfer of Interest is subordinate to and made expressly subject to this Operating Agreement and provide for the assumption by the assignee of the performance of all the assigning Party's obligations under this Operating Agreement. Any Transfer of Interest not in compliance with this provision is voidable by the non-assigning Parties.

## Exhibit "A"

Exhibit "A" to the Operating Agreement containing the Description of Leases, Working Interests, and Unit Area Interests of the Parties and Designated Representatives is hereby deleted and replaced in its entirety with Exhibit "A" attached hereto and made a part of this Amendment.

## Exhibit "B"

Exhibit "B" to the Operating Agreement containing the Insurance Requirements is hereby deleted and replaced in its entirety with Exhibit "B" attached hereto and made a part of this Amendment.

## Exhibit "C"

Exhibit "C" to the Operating Agreement containing the Accounting Procedures is hereby deleted and replaced in its entirety with Exhibit "C" attached hereto and made a part of this Amendment.

## Exhibit "F"

Exhibit "F" containing the form of Surety Bond attached hereto and made a part of this Amendment is hereby attached to and made a part of the Operating Agreement as Exhibit "F" thereto.

## Exhibit "G"

Exhibit "F" containing the form of Assignment attached hereto and made a part of this Amendment is hereby attached to and made a part of the Operating Agreement as Exhibit "G" thereto.

This Amendment may be executed in separate counterparts, each of which, when executed, shall be deemed to be an original and all of which when together shall constitute one and the same Amendment. An email copy or printable PDF version of a counterpart executed by a Party shall be acceptable evidence of the execution of that counterpart by that Party and shall be binding upon that Party.

This Amendment shall be binding on the Parties as to all of their respective interests covered and burdened by the Unit Operating Agreement. To the extent any other person, entity, or party holding interests that are included in and bound and burdened by in and to the Unit Operating Agreement, this Amendment shall not be binding on such other person, entity, or party unless or until they ratify and adopt this Amendment; provided, however, this Amendment shall bind and burden each Party executing a counterpart hereof or such other person, entity, or party so ratifying and adopting this Amendment and the respective interests held by such Party or other person, entity, or party.

The captions in this Amendment are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Amendment.

Except as expressly amended in this Amendment, all other terms and conditions of the Unit Operating Agreement remain in full force and effect as originally executed.  Except as otherwise defined in this Amendment, capitalized terms used herein shall have the same meaning as defined in the Operating Agreement.  In the event of a conflict between the terms and conditions of this Amendment and the terms and conditions of this Unit Operating Agreement, then the terms and conditions of this Amendment shall prevail.

Upon execution by the Parties, this Amendment shall be binding upon and inure to the benefit of the Parties and their respective approved successors and assigns.

This Amendment shall be governed by and construed in accordance with the Applicable Law provisions set forth in Article 22 of the Unit Operating Agreement, *mutatis mutandis*.

Each Party represents that upon execution of this Amendment, it has secured all necessary management approvals or other corporate approvals necessary to make this Amendment a fully binding contract.


**IN WITNESS WHEREOF**, the Parties have executed this Amendment on the day and year set forth below, effective as of the Effective Date.


**GOM SHELF LLC**                                       **[FIELDWOOD ENERGY II LLC]**


By:_____        By:_____

Title:_____        Title:_____

Date:_____        Date:_____


**APACHE SHELF EXPLORATION LLC**

By:_____

Title:_____

Date:_____

## EXHIBIT "2"

**Attached to and made a part of that certain Amendment to [Unit Operating Agreement] dated [●], by and between (among) [●], as Operator, and [●].**

## EXHIBIT "B"

### <u>INSURANCE PROVISIONS</u>

I.      Operator shall carry the insurance specified in Section I with the limits stipulated below for the joint account. Operator shall have the right to charge the joint account premiums for the insurance coverage required by this Section A. Such premiums shall be allocated to the joint account using a fair and reasonable method based on the nature of the operations covered by this Agreement.

      A..    <u>Workers' Compensation and Employer's Liability</u>.

          1..    Workers' Compensation and Employer's Liability Insurance covering the employees of Operator engaged in operations hereunder in compliance with all applicable State and Federal Laws.

          2.    Coverage under U. S. Longshore and Harbor Worker's Compensation Act, extended to include the Outer Continental Shelf.

          3..    Extension of Coverage B of policy to provide for not less than $1,000,000 ("for assured's interest") for death or bodily injury to one person in any one accident; coverage also to include Employer's Liability under Admiralty Jurisdiction, including the Jones Act, with Marine and Voluntary Compensation Endorsement providing for a limit of liability of not less than $1,000,000 per accident and an endorsement for transportation, maintenance, wages and cure, all with same limits, as well as an endorsement to the effect that a claim "in rem" shall be treated as a claim against the insured.

II.     Operator shall not be obligated or authorized to obtain or carry on behalf of the joint account any additional insurance covering the Parties or the operations to be conducted hereunder. With the exception of [●] and/or [●] which shall have the option to self insure, each Party, at its own expense, must carry its own coverage for the types of insurance and with limits as set forth in each Paragraphs A-G below. Each Party must provide Operator prior to commencement of operations a certificate of insurance or other evidence of coverage demonstrating coverage with the required limits of liability. All uninsured losses and all damages to jointly owned property shall be borne by the Parties in proportion to their respective interests, unless the loss is caused by the gross negligence or willful misconduct of a Party hereto.

      Any Party, at its own expense, may acquire such additional insurance as it may deem necessary to protect its own interest against claims, losses, damages or destruction to property arising out of operations hereunder.

      Each Party hereby waives its rights of recovery against all other Parties to this agreement and agrees that all insurance covering its interest in the jointly owned property will be suitably endorsed to effect a waiver of subrogation as per the indemnity and obligations assumed within the agreement.

      A.    <u>Commercial General Liability and Business Automobile Liability</u>. Coverage for all operations conducted hereunder with a combined single limit each occurrence of $1,000,000 ("for assured's interest"). Said Commercial General Liability Insurance shall also include contractual liability coverage, sudden and accidental pollution coverage. Automobile liability insurance shall include coverage for owned, hired and non-owned vehicles and mobile equipment licensed for highway use.

      B.    <u>Vessels</u>. All vessels chartered by any Party shall be covered Protection and Indemnity coverage, with limits of at least $1,000,000 ("for assured's interest") per occurrence.

      C.    <u>Aircraft</u>. All aircraft owned or chartered by any Party shall be covered by Aircraft Liability Insurance with limits of at least $5,000,000 ("for assured's interest") per occurrence.

      D.    <u>Excess Liability</u>. Each Party shall carry Excess Liability insurance in the amount of $50,000,000 per occurrence ("for assured's interest"), excess of all primary liability limits in the insurance specified in Paragraphs A-C.

E.    <u>Extra Expense Liability</u>.  Extra expense liability coverage including control of well, seepage, pollution and contamination coverage, cleanup and/or containment coverage, re-drilling and/or restoring, and care, custody and control shall be carried by each Party with limits of liability of $75,000,000 per occurrence and $5,000,000 per occurrence for Care, Custody and Control coverage.

F.    <u>Financial Responsibility Insurance</u>:  Operator shall demonstrate coverage, as required by the Bureau of Ocean Energy Management pursuant to the Oil Pollution Act of 1990 as per CFR Part 253 "Final Rule for Oil Spill Financial Responsibility", according to the applicable governmental guidelines.

G.    <u>Contractors</u>:  Operator shall use reasonable efforts to require all contractors working or performing services hereunder to comply with the workers' compensation and employer's liability laws, both State and Federal, and said contractors or others performing services shall be required to procure and maintain appropriate insurance coverage as deemed by Operator for the types of operations undertaken.  All insurance shall be endorsed to include the Operator and the Parties as additional insureds, except for Worker's Compensation.  All such policies shall be endorsed with a Waiver of Subrogation in favor of Operator and the Parties.

<div align="center">END OF EXHIBIT "B"</div>



**EXHIBIT "3"**

**Attached to and made a part of that certain Amendment to |●| dated effective |●|, by and between |●|, as Operator, and |●|, as Non-Operator.**

# Exhibit " C "
# ACCOUNTING PROCEDURE
# JOINT OPERATIONS

Attached to and made part of   that certain [●]dated [_____] , by and between [_____],

As Operator and [_____] as Non-Operators

_____

_____

## I. GENERAL PROVISIONS

**IF THE PARTIES FAIL TO SELECT EITHER ONE OF COMPETING "ALTERNATIVE" PROVISIONS, OR SELECT ALL THE COMPETING "ALTERNATIVE" PROVISIONS, ALTERNATIVE 1 IN EACH SUCH INSTANCE SHALL BE DEEMED TO HAVE BEEN ADOPTED BY THE PARTIES AS A RESULT OF ANY SUCH OMISSION OR DUPLICATE NOTATION.**

**IN THE EVENT THAT ANY "OPTIONAL" PROVISION OF THIS ACCOUNTING PROCEDURE IS NOT ADOPTED BY THE PARTIES TO THE AGREEMENT BY A TYPED, PRINTED OR HANDWRITTEN INDICATION, SUCH PROVISION SHALL NOT FORM A PART OF THIS ACCOUNTING PROCEDURE, AND NO INFERENCE SHALL BE MADE CONCERNING THE INTENT OF THE PARTIES IN SUCH EVENT.**

1.   **DEFINITIONS**

All terms used in this Accounting Procedure shall have the following meaning, unless otherwise expressly defined in the Agreement:

**"Affiliate"** means for a person, another person that controls, is controlled by, or is under common control with that person. In this definition, (a) control means the ownership by one person, directly or indirectly, of more than fifty percent (50%) of the voting securities of a corporation or, for other persons, the equivalent ownership interest (such as partnership interests), and (b) "person" means an individual, corporation, partnership, trust, estate, unincorporated organization, association, or other legal entity.

**"Agreement"** means the operating agreement, farmout agreement, or other contract between the Parties to which this Accounting Procedure is attached.

**"Controllable Material"** means Material that, at the time of acquisition or disposition by the Joint Account, as applicable, is so classified in the Material Classification Manual most recently recommended by the Council of Petroleum Accountants Societies (COPAS).

**"Equalized Freight"** means the procedure of charging transportation cost to the Joint Account based upon the distance from the nearest Railway Receiving Point to the property.

**"Excluded Amount"** means a specified excluded trucking amount most recently recommended by COPAS.

**"Field Office"** means a structure, or portion of a structure, whether a temporary or permanent installation, the primary function of which is to directly serve daily operation and maintenance activities of the Joint Property and which serves as a staging area for directly chargeable field personnel.

**"First Level Supervision"** means those employees whose primary function in Joint Operations is the direct oversight of the Operator's field employees and/or contract labor directly employed On-site in a field operating capacity. First Level Supervision functions may include, but are not limited to:

- Responsibility for field employees and contract labor engaged in activities that can include field operations, maintenance, construction, well remedial work, equipment movement and drilling
- Responsibility for day-to-day direct oversight of rig operations
- Responsibility for day-to-day direct oversight of construction operations
- Coordination of job priorities and approval of work procedures
- Responsibility for optimal resource utilization (equipment, Materials, personnel)
- Responsibility for meeting production and field operating expense targets
- Representation of the Parties in local matters involving community, vendors, regulatory agents and landowners, as an incidental part of the supervisor's operating responsibilities
- Responsibility for all emergency responses with field staff
- Responsibility for implementing safety and environmental practices
- Responsibility for field adherence to company policy
- Responsibility for employment decisions and performance appraisals for field personnel

- Oversight of sub-groups for field functions such as electrical, safety, environmental, telecommunications, which may have group or team leaders.

**"Joint Account"** means the account showing the charges paid and credits received in the conduct of the Joint Operations that are to be shared by the Parties, but does not include proceeds attributable to hydrocarbons and by-products produced under the Agreement.

**"Joint Operations"** means all operations necessary or proper for the exploration, appraisal, development, production, protection, maintenance, repair, abandonment, and restoration of the Joint Property.

**"Joint Property"** means the real and personal property subject to the Agreement.

**"Laws"** means any laws, rules, regulations, decrees, and orders of the United States of America or any state thereof and all other governmental bodies, agencies, and other authorities having jurisdiction over or affecting the provisions contained in or the transactions contemplated by the Agreement or the Parties and their operations, whether such laws now exist or are hereafter amended, enacted, promulgated or issued.

**"Material"** means personal property, equipment, supplies, or consumables acquired or held for use by the Joint Property.

**"Non-Operators"** means the Parties to the Agreement other than the Operator.

**"Offshore Facilities"** means platforms, surface and subsea development and production systems, and other support systems such as oil and gas handling facilities, living quarters, offices, shops, cranes, electrical supply equipment and systems, fuel and water storage and piping, heliport, marine docking installations, communication facilities, navigation aids, and other similar facilities necessary in the conduct of offshore operations, all of which are located offshore.

**"Off-site"** means any location that is not considered On-site as defined in this Accounting Procedure.

**"On-site"** means on the Joint Property when in direct conduct of Joint Operations. The term "On-site" shall also include that portion of Offshore Facilities, Shore Base Facilities, fabrication yards, and staging areas from which Joint Operations are conducted, or other facilities that directly control equipment on the Joint Property, regardless of whether such facilities are owned by the Joint Account.

**"Operator"** means the Party designated pursuant to the Agreement to conduct the Joint Operations.

**"Parties"** means legal entities signatory to the Agreement or their successors and assigns. Parties shall be referred to individually as "Party."

**"Participating Interest"** means the percentage of the costs and risks of conducting an operation under the Agreement that a Party agrees, or is otherwise obligated, to pay and bear.

**"Participating Party"** means a Party that approves a proposed operation or otherwise agrees, or becomes liable, to pay and bear a share of the costs and risks of conducting an operation under the Agreement.

**"Personal Expenses"** means reimbursed costs for travel and temporary living expenses.

**"Railway Receiving Point"** means the railhead nearest the Joint Property for which freight rates are published, even though an actual railhead may not exist.

**"Shore Base Facilities"** means onshore support facilities that during Joint Operations provide such services to the Joint Property as a receiving and transshipment point for Materials; debarkation point for drilling and production personnel and services; communication, scheduling and dispatching center; and other associated functions serving the Joint Property.

**"Supply Store"** means a recognized source or common stock point for a given Material item.

**"Technical Services"** means services providing specific engineering, geoscience, or other professional skills, such as those performed by engineers, geologists, geophysicists, and technicians, required to handle specific operating conditions and problems for the benefit of Joint Operations; provided, however, Technical Services shall not include those functions specifically identified as overhead under the second paragraph of the introduction of Section III (*Overhead*). Technical Services may be provided by the Operator, Operator's Affiliate, Non-Operator, Non-Operator Affiliates, and/or third parties.

2. **STATEMENTS AND BILLINGS**

The Operator shall bill Non-Operators on or before the last day of the month for their proportionate share of the Joint Account for the preceding month. Such bills shall be accompanied by statements that identify the AFE (authority for expenditure), lease or facility, and all charges and credits summarized by appropriate categories of investment and expense. Controllable Material shall be separately identified and fully described in detail, or at the Operator's option, Controllable Material may be summarized by major Material classifications. Intangible drilling costs, audit adjustments, and unusual charges and credits shall be separately and clearly identified.

The Operator may make available to Non-Operators any statements and bills required under Section I.2 and/or Section I.3.A (*Advances and Payments by the Parties*) via email, electronic data interchange, internet websites or other equivalent electronic media in lieu of paper

COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

copies. The Operator shall provide the Non-Operators instructions and any necessary information to access and receive the statements and bills within the timeframes specified herein. A statement or billing shall be deemed as delivered twenty-four (24) hours (exclusive of weekends and holidays) after the Operator notifies the Non-Operator that the statement or billing is available on the website and/or sent via email or electronic data interchange transmission. Each Non-Operator individually shall elect to receive statements and billings electronically, if available from the Operator, or request paper copies. Such election may be changed upon thirty (30) days prior written notice to the Operator.

3.    **ADVANCES AND PAYMENTS BY THE PARTIES**

A.    Unless otherwise provided for in the Agreement, the Operator may require the Non-Operators to advance their share of the estimated cash outlay for the succeeding month's operations within fifteen (15) days after receipt of the advance request or by the first day of the month for which the advance is required, whichever is later. The Operator shall adjust each monthly billing to reflect advances received from the Non-Operators for such month. If a refund is due, the Operator shall apply the amount to be refunded to the subsequent month's billing or advance, unless the Non-Operator sends the Operator a written request for a cash refund. The Operator shall remit the refund to the Non-Operator within fifteen (15) days of receipt of such written request.

B.    Except as provided below, each Party shall pay its proportionate share of all bills in full within fifteen (15) days of receipt date. If payment is not made within such time, the unpaid balance shall bear interest compounded monthly at the prime rate published by the *Wall Street Journal* on the first day of each month the payment is delinquent, plus three percent (3%), per annum, or the maximum contract rate permitted by the applicable usury Laws governing the Joint Property, whichever is the lesser, plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts. If the *Wall Street Journal* ceases to be published or discontinues publishing a prime rate, the unpaid balance shall bear interest compounded monthly at the prime rate published by the Federal Reserve plus three percent (3%), per annum. Interest shall begin accruing on the first day of the month in which the payment was due. Payment shall not be reduced or delayed as a result of inquiries or anticipated credits unless the Operator has agreed. Notwithstanding the foregoing, the Non-Operator may reduce payment, provided it furnishes documentation and explanation to the Operator at the time payment is made, to the extent such reduction is caused by:

(1)    being billed at an incorrect working interest or Participating Interest that is higher than such Non-Operator's actual working interest or Participating Interest, as applicable; or

(2)    being billed for a project or AFE requiring approval of the Parties under the Agreement that the Non-Operator has not approved or is not otherwise obligated to pay under the Agreement; or

(3)    being billed for a property in which the Non-Operator no longer owns a working interest, provided the Non-Operator has furnished the Operator a copy of the recorded assignment or letter in-lieu. Notwithstanding the foregoing, the Non-Operator shall remain responsible for paying bills attributable to the interest it sold or transferred for any bills rendered during the thirty (30) day period following the Operator's receipt of such written notice; or

(4)    charges outside the adjustment period, as provided in Section I.4 (*Adjustments*).

4.    **ADJUSTMENTS**

A.    Payment of any such bills shall not prejudice the right of any Party to protest or question the correctness thereof; however, all bills and statements, including payout statements, rendered during any calendar year shall conclusively be presumed to be true and correct, with respect only to expenditures, after twenty-four (24) months following the end of any such calendar year, unless within said period a Party takes specific detailed written exception thereto making a claim for adjustment. The Operator shall provide a response to all written exceptions, whether or not contained in an audit report, within the time periods prescribed in Section I.5 (*Expenditure Audits*).

B.    All adjustments initiated by the Operator, except those described in items (1) through (4) of this Section I.4.B, are limited to the twenty-four (24) month period following the end of the calendar year in which the original charge appeared or should have appeared on the Operator's Joint Account statement or payout statement. Adjustments that may be made beyond the twenty-four (24) month period are limited to adjustments resulting from the following:

(1)    a physical inventory of Controllable Material as provided for in Section V (*Inventories of Controllable Material*), or

(2)    an offsetting entry (whether in whole or in part) that is the direct result of a specific joint interest audit exception granted by the Operator relating to another property, or

(3)    a government/regulatory audit, or

(4)    a working interest ownership or Participating Interest adjustment.

5.    **EXPENDITURE AUDITS**

A.    A Non-Operator, upon written notice to the Operator and all other Non-Operators, shall have the right to audit the Operator's accounts and records relating to the Joint Account within the twenty-four (24) month period following the end of such calendar year in which such bill was rendered; however, conducting an audit shall not extend the time for the taking of written exception to and the adjustment of accounts as provided for in Section I.4 (*Adjustments*). Any Party that is subject to payout accounting under the Agreement shall have the right to audit the accounts and records of the Party responsible for preparing the payout statements, or of the Party furnishing information to the Party responsible for preparing payout statements. Audits of payout accounts may include the volumes of hydrocarbons produced and saved and proceeds received for such hydrocarbons as they pertain to payout accounting required under the Agreement. Unless otherwise provided in the Agreement, audits of a payout account shall be conducted within the twenty-four (24) month period following the end of the calendar year in which the payout statement was rendered.

Where there are two or more Non-Operators, the Non-Operators shall make every reasonable effort to conduct a joint audit in a manner that will result in a minimum of inconvenience to the Operator. The Operator shall bear no portion of the Non-Operators' audit cost incurred under this paragraph unless agreed to by the Operator. The audits shall not be conducted more than once each year without prior approval of the Operator, except upon the resignation or removal of the Operator, and shall be made at the expense of those Non-Operators approving such audit.

The Non-Operator leading the audit (hereinafter "lead audit company") shall issue the audit report within ninety (90) days after completion of the audit testing and analysis; however, the ninety (90) day time period shall not extend the twenty-four (24) month requirement for taking specific detailed written exception as required in Section 1.4.A (*Adjustments*) above. All claims shall be supported with sufficient documentation.

A timely filed written exception or audit report containing written exceptions (hereinafter "written exceptions") shall, with respect to the claims made therein, preclude the Operator from asserting a statute of limitations defense against such claims, and the Operator hereby waives its right to assert any statute of limitations defense against such claims for so long as any Non-Operator continues to comply with the deadlines for resolving exceptions provided in this Accounting Procedure. If the Non-Operators fail to comply with the additional deadlines in Section I.5.B or I.5.C, the Operator's waiver of its rights to assert a statute of limitations defense against the claims brought by the Non-Operators shall lapse, and such claims shall then be subject to the applicable statute of limitations, provided that such waiver shall not lapse in the event that the Operator has failed to comply with the deadlines in Section I.5.B or I.5.C.

B.   The Operator shall provide a written response to all exceptions in an audit report within one hundred eighty (180) days after Operator receives such report. Denied exceptions should be accompanied by a substantive response. If the Operator fails to provide substantive response to an exception within this one hundred eighty (180) day period, the Operator will owe interest on that exception or portion thereof, if ultimately granted, from the date it received the audit report. Interest shall be calculated using the rate set forth in Section I.3.B  (*Advances and Payments by the Parties*).

C.   The lead audit company shall reply to the Operator's response to an audit report within ninety (90) days of receipt, and the Operator shall reply to the lead audit company's follow-up response within ninety (90) days of receipt; provided, however, each Non-Operator shall have the right to represent itself if it disagrees with the lead audit company's position or believes the lead audit company is not adequately fulfilling its duties. Unless otherwise provided for in Section I.5.E, if the Operator fails to provide substantive response to an exception within this ninety (90) day period, the Operator will owe interest on that exception or portion thereof, if ultimately granted, from the date it received the audit report. Interest shall be calculated using the rate set forth in Section I.3.B (*Advances and Payments by the Parties*).

D.   If any Party fails to meet the deadlines in Sections I.5.B or I.5.C or if any audit issues are outstanding fifteen (15) months after Operator receives the audit report, the Operator or any Non-Operator participating in the audit has the right to call a resolution meeting, as set forth in this Section I.5.D or it may invoke the dispute resolution procedures included in the Agreement, if applicable. The meeting will require one month's written notice to the Operator and all Non-Operators participating in the audit. The meeting shall be held at the Operator's office or mutually agreed location, and shall be attended by representatives of the Parties with authority to resolve such outstanding issues. Any Party who fails to attend the resolution meeting shall be bound by any resolution reached at the meeting. The lead audit company will make good faith efforts to coordinate the response and positions of the Non-Operator participants throughout the resolution process; however, each Non-Operator shall have the right to represent itself. Attendees will make good faith efforts to resolve outstanding issues, and each Party will be required to present substantive information supporting its position. A resolution meeting may be held as often as agreed to by the Parties. Issues unresolved at one meeting may be discussed at subsequent meetings until each issue is resolved.

If the Agreement contains no dispute resolution procedures and the audit issues cannot be resolved by negotiation, the dispute shall be submitted to mediation. In such event, promptly following one Party's written request for mediation, the Parties to the dispute shall choose a mutually acceptable mediator and share the costs of mediation services equally. The Parties shall each have present at the mediation at least one individual who has the authority to settle the dispute. The Parties shall make reasonable efforts to ensure that the mediation commences within sixty (60) days of the date of the mediation request. Notwithstanding the above, any Party may file a lawsuit or complaint (1) if the Parties are unable after reasonable efforts, to commence mediation within sixty (60) days of the date of the mediation request, (2) for statute of limitations reasons, or (3) to seek a preliminary injunction or other provisional judicial relief, if in its sole judgment an injunction or other provisional relief is necessary to avoid irreparable damage or to preserve the status quo. Despite such action, the Parties shall continue to try to resolve the dispute by mediation.

E.   ☐ *(Optional Provision – Forfeiture Penalties)*
*If the Non-Operators fail to meet the deadline in Section I.5.C, any unresolved exceptions that were not addressed by the Non-Operators within one (1) year following receipt of the last substantive response of the Operator shall be deemed to have been withdrawn by the Non-Operators. If the Operator fails to meet the deadlines in Section I.5.B or I.5.C, any unresolved exceptions that were not addressed by the Operator within one (1) year following receipt of the audit report or receipt of the last substantive response of the Non-Operators, whichever is later, shall be deemed to have been granted by the Operator and adjustments shall be made, without interest, to the Joint Account.*

COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

**6.   APPROVAL BY PARTIES**

A.   GENERAL MATTERS

Where an approval or other agreement of the Parties or Non-Operators is expressly required under other Sections of this Accounting Procedure and if the Agreement to which this Accounting Procedure is attached contains no contrary provisions in regard thereto, the Operator shall notify all Non-Operators of the Operator's proposal and the agreement or approval of a majority in interest of the Non-Operators shall be controlling on all Non-Operators.

This Section I.6.A applies to specific situations of limited duration where a Party proposes to change the accounting for charges from that prescribed in this Accounting Procedure. This provision does not apply to amendments to this Accounting Procedure, which are covered by Section I.6.B.

B.   AMENDMENTS

If the Agreement to which this Accounting Procedure is attached contains no contrary provisions in regard thereto, this Accounting Procedure can be amended by an affirmative vote of _____one_____ (__1%__) or more Parties, one of which is the Operator, having a combined working interest of at least _____fifty_____ percent (__50__%), which approval shall be binding on all Parties, provided, however, approval of at least one (1) Non-Operator shall be required.

C.   AFFILIATES

For the purpose of administering the voting procedures of Sections I.6.A and I.6.B, if Parties to this Agreement are Affiliates of each other, then such Affiliates shall be combined and treated as a single Party having the combined working interest or Participating Interest of such Affiliates.

For the purposes of administering the voting procedures in Section I.6.A, if a Non-Operator is an Affiliate of the Operator, votes under Section I.6.A shall require the majority in interest of the Non-Operator(s) after excluding the interest of the Operator's Affiliate.

## II. DIRECT CHARGES

The Operator shall charge the Joint Account with the following items:

**1.   RENTALS AND ROYALTIES**

Lease rentals and royalties paid by the Operator, on behalf of all Parties, for the Joint Operations.

**2.   LABOR**

A.   Salaries and wages, including incentive compensation programs as set forth in COPAS MFI-37 ("Chargeability of Incentive Compensation Programs"), for:

(1)   Operator's field employees directly employed On-site in the conduct of Joint Operations,

(2)   Operator's employees directly employed on Shore Base Facilities, Offshore Facilities, or other facilities serving the Joint Property if such costs are not charged under Section II.6 (*Equipment and Facilities Furnished by Operator*) or are not a function covered under Section III (*Overhead*),

(3)   Operator's employees providing First Level Supervision,

(4)   Operator's employees providing On-site Technical Services for the Joint Property if such charges are excluded from the overhead rates in Section III (*Overhead*),

(5)   Operator's employees providing Off-site Technical Services for the Joint Property if such charges are excluded from the overhead rates in Section III (*Overhead*).

Charges for the Operator's employees identified in Section II.2.A may be made based on the employee's actual salaries and wages, or in lieu thereof, a day rate representing the Operator's average salaries and wages of the employee's specific job category.

Charges for personnel chargeable under this Section II.2.A who are foreign nationals shall not exceed comparable compensation paid to an equivalent U.S. employee pursuant to this Section II.2, unless otherwise approved by the Parties pursuant to Section I.6.A (*General Matters*).

B.   Operator's cost of holiday, vacation, sickness, and disability benefits, and other customary allowances paid to employees whose salaries and wages are chargeable to the Joint Account under Section II.2.A, excluding severance payments or other termination allowances. Such costs under this Section II.2.B may be charged on a "when and as-paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable to the Joint Account under Section II.2.A. If percentage assessment is used, the rate shall be based on the Operator's cost experience.

C.   Expenditures or contributions made pursuant to assessments imposed by governmental authority that are applicable to costs chargeable to the Joint Account under Sections II.2.A and B.

D.   Personal Expenses of personnel whose salaries and wages are chargeable to the Joint Account under Section II.2.A when the expenses are incurred in connection with directly chargeable activities.

E.   Reasonable relocation costs incurred in transferring to the Joint Property personnel whose salaries and wages are chargeable to the Joint Account under Section II.2.A. Notwithstanding the foregoing, relocation costs that result from reorganization or merger of a Party, or  that are for the primary benefit of the Operator, shall not be chargeable to the Joint Account. Extraordinary relocation costs, such as those incurred as a result of transfers from remote locations, such as Alaska or overseas, shall not be charged to the Joint Account unless approved by the Parties pursuant to Section I.6.A (*General Matters*).

F.   Training costs as specified in COPAS MFI-35 ("Charging of Training Costs to the Joint Account") for personnel whose salaries and wages are chargeable under Section II.2.A. This training charge shall include the wages, salaries, training course cost, and Personal Expenses incurred during the training session. The training cost shall be charged or allocated to the property or properties directly benefiting from the training. The cost of the training course shall not exceed prevailing commercial rates, where such rates are available.

G.   Operator's current cost of established plans for employee benefits, as described in COPAS MFI-27 ("Employee Benefits Chargeable to Joint Operations and Subject to Percentage Limitation"), applicable to the Operator's labor costs chargeable to the Joint Account under Sections II.2.A and B based on the Operator's actual cost not to exceed the employee benefits limitation percentage most recently recommended by COPAS.

H.   Award payments to employees, in accordance with COPAS MFI-49 ("Awards to Employees and Contractors") for personnel whose salaries and wages are chargeable under Section II.2.A.

**3.   MATERIAL**

Material purchased or furnished by the Operator for use on the Joint Property in the conduct of Joint Operations as provided under Section IV (Material *Purchases, Transfers, and Dispositions*). Only such Material shall be purchased for or transferred to the Joint Property as may be required for immediate use or is reasonably practical and consistent with efficient and economical operations. The accumulation of surplus stocks shall be avoided.

**4.   TRANSPORTATION**

A.   Transportation of the Operator's, Operator's Affiliate's, or contractor's personnel necessary for Joint Operations.

B.   Transportation of Material between the Joint Property and another property, or from the Operator's warehouse or other storage point to the Joint Property, shall be charged to the receiving property using one of the methods listed below. Transportation of Material from the Joint Property to the Operator's warehouse or other storage point shall be paid for by the Joint Property using one of the methods listed below:

(1)   If the actual trucking charge is less than or equal to the Excluded Amount the Operator may charge actual trucking cost or a theoretical charge from the Railway Receiving Point to the Joint Property. The basis for the theoretical charge is the per hundred weight charge plus fuel surcharges from the Railway Receiving Point to the Joint Property . The Operator shall consistently  apply the selected alternative.

(2)   If the actual trucking charge is greater than the Excluded Amount, the Operator shall charge Equalized Freight. Accessorial charges such as loading and unloading costs, split pick-up costs, detention, call out charges, and permit fees shall be charged directly to the Joint Property and shall not be included when calculating the Equalized Freight.

**5.   SERVICES**

The cost of contract services, equipment, and utilities used in the conduct of Joint Operations, except for contract services, equipment, and utilities covered by Section III (*Overhead*), or Section II.7 (*Affiliates*), or excluded under Section II.9 (*Legal Expense*). Awards paid to contractors shall be chargeable pursuant to COPAS MFI-49 ("Awards to Employees and Contractors").

The costs of third party Technical Services are chargeable to the extent excluded from the overhead rates under Section III (*Overhead*).

**6.   EQUIPMENT AND FACILITIES FURNISHED BY OPERATOR**

In the absence of a separately negotiated agreement, equipment and facilities furnished by the Operator will be charged as follows:

A.   The Operator shall charge the Joint Account for use of Operator-owned equipment and facilities, including but not limited to production facilities, Shore Base Facilities, Offshore Facilities, and Field Offices, at rates commensurate with the costs of ownership and operation. The cost of Field Offices shall be chargeable to the extent the Field Offices provide direct service to personnel who are chargeable pursuant to Section II.2.A (*Labor*). Such rates may include labor, maintenance, repairs, other operating expense, insurance, taxes, depreciation using straight line depreciation method, and interest on gross investment less accumulated depreciation



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

not to exceed _____eight_____ percent (__8%) per annum; provided, however, depreciation shall not be charged when the equipment and facilities investment have been fully depreciated. The rate may include an element of the estimated cost for abandonment, reclamation, and dismantlement. Such rates shall not exceed the average commercial rates currently prevailing in the immediate area of the Joint Property.

B.   In lieu of charges in Section II.6.A above, the Operator may elect to use average commercial rates prevailing in the immediate area of the Joint Property, less twenty percent (20%). If equipment and facilities are charged under this Section II.6.B, the Operator shall adequately document and support commercial rates and shall periodically review and update the rate and the supporting documentation. For automotive equipment, the Operator may elect to use rates published by the Petroleum Motor Transport Association (PMTA) or such other organization recognized by COPAS as the official source of rates.

7.   **AFFILIATES**

A.   Charges for an Affiliate's goods and/or services used in operations requiring an AFE or other authorization from the Non-Operators may be made without the approval of the Parties provided (i) the Affiliate is identified and the Affiliate goods and services are specifically detailed in the approved AFE or other authorization, and (ii) the total costs for such Affiliate's goods and services billed to such individual project do not exceed $_50,000.00_____ If the total costs for an Affiliate's goods and services charged to such individual project are not specifically detailed in the approved AFE or authorization or exceed such amount, charges for such Affiliate shall require approval of the Parties, pursuant to Section I.6.A (*General Matters*).

B.   For an Affiliate's goods and/or services used in operations not requiring an AFE or other authorization from the Non-Operators, charges for such Affiliate's goods and services shall require approval of the Parties, pursuant to Section I.6.A (*General Matters*), if the charges exceed $_50,000.00_____ in a given calendar year.

C.   The cost of the Affiliate's goods or services shall not exceed average commercial rates prevailing in the area of the Joint Property, unless the Operator obtains the Non-Operators' approval of such rates. The Operator shall adequately document and support commercial rates and shall periodically review and update the rate and the supporting documentation; provided, however, documentation of commercial rates shall not be required if the Operator obtains Non-Operator approval of its Affiliate's rates or charges prior to billing Non-Operators for such Affiliate's goods and services. Notwithstanding the foregoing, direct charges for Affiliate-owned communication facilities or systems shall be made pursuant to Section II.12 (*Communications*).

If the Parties fail to designate an amount in Sections II.7.A or II.7.B, in each instance the amount deemed adopted by the Parties as a result of such omission shall be the amount established as the Operator's expenditure limitation in the Agreement. If the Agreement does not contain an Operator's expenditure limitation, the amount deemed adopted by the Parties as a result of such omission shall be zero dollars ($ 0.00).

8.   **DAMAGES AND LOSSES TO JOINT PROPERTY**

All costs or expenses necessary for the repair or replacement of Joint Property resulting from damages or losses incurred, except to the extent such damages or losses result from a Party's or Parties' gross negligence or willful misconduct, in which case such Party or Parties shall be solely liable.

The Operator shall furnish the Non-Operator written notice of damages or losses incurred as soon as practicable after a report has been received by the Operator.

9.   **LEGAL EXPENSE**

Recording fees and costs of handling, settling, or otherwise discharging litigation, claims, and liens incurred in or resulting from operations under the Agreement, or necessary to protect or recover the Joint Property, to the extent permitted under the Agreement. Costs of the Operator's or Affiliate's legal staff or outside attorneys, including fees and expenses, are not chargeable unless approved by the Parties pursuant to Section I.6.A (*General Matters*) or otherwise provided for in the Agreement.

Notwithstanding the foregoing paragraph, costs for procuring abstracts, fees paid to outside attorneys for title examinations (including preliminary, supplemental, shut-in royalty opinions, division order title opinions), and curative work shall be chargeable to the extent permitted as a direct charge in the Agreement.

10.   **TAXES AND PERMITS**

All taxes and permitting fees of every kind and nature, assessed or levied upon or in connection with the Joint Property, or the production therefrom, and which have been paid by the Operator for the benefit of the Parties, including penalties and interest, except to the extent the penalties and interest result from the Operator's gross negligence or willful misconduct.

If ad valorem taxes paid by the Operator are based in whole or in part upon separate valuations of each Party's working interest, then notwithstanding any contrary provisions, the charges to the Parties will be made in accordance with the tax value generated by each Party's working interest.

**c o p a s**

Costs of tax consultants or advisors, the Operator's employees, or Operator's Affiliate employees in matters regarding ad valorem or other tax matters, are not permitted as direct charges unless approved by the Parties pursuant to Section I.6.A (*General Matters*).

Charges to the Joint Account resulting from sales/use tax audits, including extrapolated amounts and penalties and interest, are permitted, provided the Non-Operator shall be allowed to review the invoices and other underlying source documents which served as the basis for tax charges and to determine that the correct amount of taxes were charged to the Joint Account. If the Non-Operator is not permitted to review such documentation, the sales/use tax amount shall not be directly charged unless the Operator can conclusively document the amount owed by the Joint Account.

**11. INSURANCE**

Net premiums paid for insurance required to be carried for Joint Operations for the protection of the Parties. If Joint Operations are conducted at locations where the Operator acts as self-insurer in regard to its worker's compensation and employer's liability insurance obligation, the Operator shall charge the Joint Account manual rates for the risk assumed in its self-insurance program as regulated by the jurisdiction governing the Joint Property. In the case of offshore operations in federal waters, the manual rates of the adjacent state shall be used for personnel performing work On-site, and such rates shall be adjusted for offshore operations by the U.S. Longshoreman and Harbor Workers (USL&H) or Jones Act surcharge, as appropriate.

**12. COMMUNICATIONS**

Costs of acquiring, leasing, installing, operating, repairing, and maintaining communication facilities or systems, including satellite, radio and microwave facilities, between the Joint Property and the Operator's office(s) directly responsible for field operations in accordance with the provisions of COPAS MFI-44 ("Field Computer and Communication Systems"). If the communications facilities or systems serving the Joint Property are Operator-owned, charges to the Joint Account shall be made as provided in Section II.6 (*Equipment and Facilities Furnished by Operator*). If the communication facilities or systems serving the Joint Property are owned by the Operator's Affiliate, charges to the Joint Account shall not exceed average commercial rates prevailing in the area of the Joint Property. The Operator shall adequately document and support commercial rates and shall periodically review and update the rate and the supporting documentation.

**13. ECOLOGICAL, ENVIRONMENTAL, AND SAFETY**

Costs incurred for Technical Services and drafting to comply with ecological, environmental and safety Laws or standards recommended by Occupational Safety and Health Administration (OSHA) or other regulatory authorities. All other labor and functions incurred for ecological, environmental and safety matters, including management, administration,  and permitting, shall be covered by Sections II.2 (*Labor*), II.5 (*Services*), or Section III (*Overhead*), as applicable.

Costs to provide or have available pollution containment and removal equipment plus actual costs of control and cleanup and resulting responsibilities of oil and other spills as well as discharges from permitted outfalls as required by applicable Laws, or other pollution containment and removal equipment deemed appropriate by the Operator for prudent operations, are directly chargeable.

**14. ABANDONMENT AND RECLAMATION**

Costs incurred for abandonment and reclamation of the Joint Property, including costs required by lease agreements or by Laws.

**15. OTHER EXPENDITURES**

Any other expenditure not covered or dealt with in the foregoing provisions of this Section II (*Direct Charges*), or in Section III (*Overhead*) and which is of direct benefit to the Joint Property and is incurred by the Operator in the necessary and proper conduct of the Joint Operations. Charges made under this Section II.15 shall require approval of the Parties, pursuant to Section I.6.A (*General Matters*).

### III. OVERHEAD

As compensation for costs not specifically identified as chargeable to the Joint Account pursuant to Section II (*Direct Charges*), the Operator shall charge the Joint Account in accordance with this Section III.

Functions included in the overhead rates regardless of whether performed by the Operator, Operator's Affiliates or third parties and regardless of location, shall include, but not be limited to, costs and expenses of:

- warehousing, other than for warehouses that are  jointly owned under this Agreement
- design and drafting (except when allowed as a direct charge under Sections II.13, III.1.A(ii), and III.2, Option B)
- inventory costs not chargeable under Section V (*Inventories of Controllable Material*)
- procurement
- administration
- accounting and auditing
- gas dispatching and gas chart integration

COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

- human resources
- management
- supervision not directly charged under Section II.2 (*Labor*)
- legal services not directly chargeable under Section II.9 (*Legal Expense*)
- taxation, other than those costs identified as directly chargeable under Section II.10 (*Taxes and Permits*)
- preparation and monitoring of permits and certifications; preparing regulatory reports; appearances before or meetings with governmental agencies or other authorities having jurisdiction over the Joint Property, other than On-site inspections; reviewing, interpreting, or submitting comments on or lobbying with respect to Laws or proposed Laws.

Overhead charges shall include the salaries or wages plus applicable payroll burdens, benefits, and Personal Expenses of personnel performing overhead functions, as well as office and other related expenses of overhead functions.

1. **OVERHEAD—DRILLING AND PRODUCING OPERATIONS**

   As compensation for costs incurred but not chargeable under Section II (*Direct Charges*) and not covered by other provisions of this Section III, the Operator shall charge on either:

   ☑ **(Alternative 1)**  Fixed Rate Basis, Section III.1.B.

   A. TECHNICAL SERVICES

   (i) Except as otherwise provided in Section II.13 (*Ecological Environmental, and Safety*) and Section III.2 (*Overhead – Major Construction and Catastrophe*), or by approval of the Parties pursuant to Section I.6.A (*General Matters*), the salaries, wages, related payroll burdens and benefits, and Personal Expenses for **On-site** Technical Services, including third party Technical Services:

   ☑ **(Alternative 1 – Direct)** shall be charged **direct** to the Joint Account.

   (ii) Except as otherwise provided in Section II.13 (*Ecological, Environmental, and Safety*) and Section III.2 (*Overhead – Major Construction and Catastrophe*), or by approval of the Parties pursuant to Section I.6.A (*General Matters*), the salaries, wages, related payroll burdens and benefits, and Personal Expenses for **Off-site** Technical Services, including third party Technical Services:

   ☑ **(Alternative 1 – All Overhead)** shall be covered by the **overhead** rates.

   ☐ **(Alternative 2 – All Direct)** shall be charged **direct** to the Joint Account.

   Notwithstanding anything to the contrary in this Section III, Technical Services provided by Operator's Affiliates are subject to limitations set forth in Section II.7 (*Affiliates*). Charges for Technical personnel performing non-technical work shall not be governed by this Section III.1.A, but instead governed by other provisions of this Accounting Procedure relating to the type of work being performed.

   B. OVERHEAD—FIXED RATE BASIS

   (1) The Operator shall charge the Joint Account at the following rates per well per month:

   Drilling Well Rate per month $ 40,000.00          (prorated for less than a full month)

   Producing Well Rate per month $ 4,000.00

   (2) Application of Overhead—Drilling Well Rate shall be as follows:

   (a) Charges for onshore drilling wells shall begin on the spud date and terminate on the date the drilling and/or completion equipment used on the well is released, whichever occurs later. Charges for offshore and inland waters drilling wells shall begin on the date the drilling or completion equipment arrives on location and terminate on the date the drilling or completion equipment moves off location, or is released, whichever occurs first. No charge shall be made during suspension of drilling and/or completion operations for fifteen (15) or more consecutive calendar days.

   (b) Charges for any well undergoing any type of workover, recompletion, and/or abandonment for a period of five (5) or more consecutive work–days shall be made at the Drilling Well Rate. Such charges shall be applied for the period from date operations, with rig or other units used in operations, commence through date of rig or other unit release, except that no charges shall be made during suspension of operations for fifteen (15) or more consecutive calendar days.

   (3) Application of Overhead—Producing Well Rate shall be as follows:

   (a) An active well that is produced, injected into for recovery or disposal, or used to obtain water supply to support operations for any portion of the month shall be considered as a one-well charge for the entire month.

COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

    (b)   Each active completion in a multi-completed well shall be considered as a one-well charge provided each completion is considered a separate well by the governing regulatory authority.

    (c)   A one-well charge shall be made for the month in which plugging and abandonment operations are completed on any well, unless the Drilling Well Rate applies, as provided in Sections III.1.B.(2)(a) or (b). This one-well charge shall be made whether or not the well has produced.

    (d)   An active gas well shut in because of overproduction or failure of a purchaser, processor, or transporter to take production shall be considered as a one-well charge provided the gas well is directly connected to a permanent sales outlet.

    (e)   Any well not meeting the criteria set forth in Sections III.1.B.(3) (a), (b), (c), or (d) shall not qualify for a producing overhead charge.

(4)   The well rates shall be adjusted on the first day of April each year following the effective date of the Agreement; provided, however, if this Accounting Procedure is attached to or otherwise governing the payout accounting under a farmout agreement, the rates shall be adjusted on the first day of April each year following the effective date of such farmout agreement. The adjustment shall be computed by applying the adjustment factor most recently published by COPAS. The adjusted rates shall be the initial or amended rates increased or decreased by the adjustment factor described herein, for each year from the effective date of such rates, in accordance with COPAS MFI-47 ("Adjustment of Overhead Rates").

## 2.   OVERHEAD—MAJOR CONSTRUCTION AND CATASTROPHE

To compensate the Operator for overhead costs incurred in connection with a Major Construction project or Catastrophe, the Operator shall either negotiate a rate prior to the beginning of the project, or shall charge the Joint Account for overhead based on the following rates for any Major Construction project in excess of the Operator's expenditure limit under the Agreement, or for any Catastrophe regardless of the amount. If the Agreement to which this Accounting Procedure is attached does not contain an expenditure limit, Major Construction Overhead shall be assessed for any single Major Construction project costing in excess of $100,000 gross.

Major Construction shall mean the construction and installation of fixed assets, the expansion of fixed assets, and any other project clearly discernible as a fixed asset required for the development and operation of the Joint Property, or in the dismantlement, abandonment, removal, and restoration of platforms, production equipment, and other operating facilities.

Catastrophe is defined as a sudden calamitous event bringing damage, loss, or destruction to property or the environment, such as an oil spill, blowout, explosion, fire, storm, hurricane, or other disaster. The overhead rate shall be applied to those costs necessary to restore the Joint Property to the equivalent condition that existed prior to the event.

A.   If the Operator absorbs the engineering, design and drafting costs related to the project:

    (1)   _____5_____% of total costs if such costs are less than $100,000; plus

    (2)   _____3_____% of total costs in excess of $100,000 but less than $1,000,000; plus

    (3)   _____2_____% of total costs in excess of $1,000,000.

B.   If the Operator charges engineering, design and drafting costs related to the project directly to the Joint Account:

    (1)   _____5_____% of total costs if such costs are less than $100,000; plus

    (2)   _____3_____% of total costs in excess of $100,000 but less than $1,000,000; plus

    (3)   _____2_____% of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project. For the purpose of this paragraph, the component parts of a single Major Construction project shall not be treated separately, and the cost of drilling and workover wells and purchasing and installing pumping units and downhole artificial lift equipment shall be excluded. For Catastrophes, the rates shall be applied to all costs associated with each single occurrence or event.

On each project, the Operator shall advise the Non-Operator(s) in advance which of the above options shall apply.

For the purposes of calculating Catastrophe Overhead, the cost of drilling relief wells, substitute wells, or conducting other well operations directly resulting from the catastrophic event shall be included. Expenditures to which these rates apply shall not be reduced by salvage or insurance recoveries. Expenditures that qualify for Major Construction or Catastrophe Overhead shall not qualify for overhead under any other overhead provisions.

In the event of any conflict between the provisions of this Section III.2 and the provisions of Sections II.2 (*Labor*), II.5 (*Services*), or II.7 (*Affiliates*), the provisions of this Section III.2 shall govern.

COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

**c o p a s**

3. **AMENDMENT OF OVERHEAD RATES**

The overhead rates provided for in this Section III may be amended from time to time if, in practice, the rates are found to be insufficient or excessive, in accordance with the provisions of Section I.6.B (*Amendments*).

### IV. MATERIAL PURCHASES, TRANSFERS, AND DISPOSITIONS

The Operator is responsible for Joint Account Material and shall make proper and timely charges and credits for direct purchases, transfers, and dispositions. The Operator shall provide all Material for use in the conduct of Joint Operations; however, Material may be supplied by the Non-Operators, at the Operator's option. Material furnished by any Party shall be furnished without any express or implied warranties as to quality, fitness for use, or any other matter.

1. **DIRECT PURCHASES**

Direct purchases shall be charged to the Joint Account at the price paid by the Operator after deduction of all discounts received. The Operator shall make good faith efforts to take discounts offered by suppliers, but shall not be liable for failure to take discounts except to the extent such failure was the result of the Operator's gross negligence or willful misconduct. A direct purchase shall be deemed to occur when an agreement is made between an Operator and a third party for the acquisition of Material for a specific well site or location. Material provided by the Operator under "vendor stocking programs," where the initial use is for a Joint Property and title of the Material does not pass from the manufacturer, distributor, or agent until usage, is considered a direct purchase. If Material is found to be defective or is returned to the manufacturer, distributor, or agent for any other reason, credit shall be passed to the Joint Account within sixty (60) days after the Operator has received adjustment from the manufacturer, distributor, or agent.

2. **TRANSFERS**

A transfer is determined to occur when the Operator (i) furnishes Material from a storage facility or from another operated property, (ii) has assumed liability for the storage costs and changes in value, and (iii) has previously secured and held title to the transferred Material. Similarly, the removal of Material from the Joint Property to a storage facility or to another operated property is also considered a transfer; provided, however, that Material that is moved from the Joint Property to a storage location for safe-keeping pending disposition may remain charged to the Joint Account and is not considered a transfer. Material shall be disposed of in accordance with Section IV.3 (*Disposition of Surplus*) and the Agreement to which this Accounting Procedure is attached.

A. **PRICING**

The value of Material transferred to/from the Joint Property should generally reflect the market value on the date of physical transfer. Regardless of the pricing method used, the Operator shall make available to the Non-Operators sufficient documentation to verify the Material valuation. When higher than specification grade or size tubulars are used in the conduct of Joint Operations, the Operator shall charge the Joint Account at the equivalent price for well design specification tubulars, unless such higher specification grade or sized tubulars are approved by the Parties pursuant to Section I.6.A (*General Matters*). Transfers of new Material will be priced using one of the following pricing methods; provided, however, the Operator shall use consistent pricing methods, and not alternate between methods for the purpose of choosing the method most favorable to the Operator for a specific transfer:

(1) Using published prices in effect on date of movement as adjusted by the appropriate COPAS Historical Price Multiplier (HPM) or prices provided by the COPAS Computerized Equipment Pricing System (CEPS).

    (a) For oil country tubulars and line pipe, the published price shall be based upon eastern mill carload base prices (Houston, Texas, for special end) adjusted as of date of movement, plus transportation cost as defined in Section IV.2.B (*Freight*).

    (b) For other Material, the published price shall be the published list price in effect at date of movement, as listed by a Supply Store nearest the Joint Property where like Material is normally available, or point of manufacture plus transportation costs as defined in Section IV.2.B (*Freight*).

(2) Based on a price quotation from a vendor that reflects a current realistic acquisition cost.

(3) Based on the amount paid by the Operator for like Material in the vicinity of the Joint Property within the previous twelve (12) months from the date of physical transfer.

(4) As agreed to by the Participating Parties for Material being transferred to the Joint Property, and by the Parties owning the Material for Material being transferred from the Joint Property.

B. **FREIGHT**

Transportation costs shall be added to the Material transfer price using the method prescribed by the COPAS Computerized Equipment Pricing System (CEPS). If not using CEPS, transportation costs shall be calculated as follows:

(1) Transportation costs for oil country tubulars and line pipe shall be calculated using the distance from eastern mill to the Railway Receiving Point based on the carload weight basis as recommended by the COPAS MFI-38 ("Material Pricing Manual") and other COPAS MFIs in effect at the time of the transfer.

COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

(2)   Transportation costs for special mill items shall be calculated from that mill's shipping point to the Railway Receiving Point. For transportation costs from other than eastern mills, the 30,000-pound interstate truck rate shall be used. Transportation costs for macaroni tubing shall be calculated based on the interstate truck rate per weight of tubing transferred to the Railway Receiving Point.

(3)   Transportation costs for special end tubular goods shall be calculated using the interstate truck rate from Houston, Texas, to the Railway Receiving Point.

(4)   Transportation costs for Material other than that described in Sections IV.2.B.(1) through (3), shall be calculated from the Supply Store or point of manufacture, whichever is appropriate, to the Railway Receiving Point

Regardless of whether using CEPS or manually calculating transportation costs, transportation costs from the Railway Receiving Point to the Joint Property are in addition to the foregoing, and may be charged to the Joint Account based on actual costs incurred. All transportation costs are subject to Equalized Freight as provided in Section II.4 (*Transportation*) of this Accounting Procedure.

C.   TAXES

Sales and use taxes shall be added to the Material transfer price using either the method contained in the COPAS Computerized Equipment Pricing System (CEPS) or the applicable tax rate in effect for the Joint Property at the time and place of transfer. In either case, the Joint Account shall be charged or credited at the rate that would have governed had the Material been a direct purchase.

D.   CONDITION

(1)   Condition "A" – New and unused Material in sound and serviceable condition shall be charged at one hundred percent (100%) of the price as determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*). Material transferred from the Joint Property that was not placed in service shall be credited as charged without gain or loss; provided, however, any unused Material that was charged to the Joint Account through a direct purchase will be credited to the Joint Account at the original cost paid less restocking fees charged by the vendor. New and unused Material transferred from the Joint Property may be credited at a price other than the price originally charged to the Joint Account provided such price is approved by the Parties owning such Material, pursuant to Section I.6.A (*General Matters*). All refurbishing costs required or necessary to return the Material to original condition or to correct handling, transportation, or other damages will be borne by the divesting property. The Joint Account is responsible for Material preparation, handling, and transportation costs for new and unused Material charged to the Joint Property either through a direct purchase or transfer. Any preparation costs incurred, including any internal or external coating and wrapping, will be credited on new Material provided these services were not repeated for such Material for the receiving property.

(2)   Condition "B" – Used Material in sound and serviceable condition and suitable for reuse without reconditioning shall be priced by multiplying the price determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*) by seventy-five percent (75%).

Except as provided in Section IV.2.D(3), all reconditioning costs required to return the Material to Condition "B" or to correct handling, transportation or other damages will be borne by the divesting property.

If the Material was originally charged to the Joint Account as used Material and placed in service for the Joint Property, the Material will be credited at the price determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*) multiplied by sixty-five percent (65%).

Unless otherwise agreed to by the Parties that paid for such Material, used Material transferred from the Joint Property that was not placed in service on the property shall be credited as charged without gain or loss.

(3)   Condition "C" – Material that is not in sound and serviceable condition and not suitable for its original function until after reconditioning shall be priced by multiplying the price determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*) by fifty percent (50%).

The cost of reconditioning may be charged to the receiving property to the extent Condition "C" value, plus cost of reconditioning, does not exceed Condition "B" value.

(4)   Condition "D" – Material that (i) is no longer suitable for its original purpose but useable for some other purpose, (ii) is obsolete, or (iii) does not meet original specifications but still has value and can be used in other applications as a substitute for items with different specifications, is considered Condition "D" Material. Casing, tubing, or drill pipe used as line pipe shall be priced as Grade A and B seamless line pipe of comparable size and weight. Used casing, tubing, or drill pipe utilized as line pipe shall be priced at used line pipe prices. Casing, tubing, or drill pipe used as higher pressure service lines than standard line pipe, e.g., power oil lines, shall be priced under normal pricing procedures for casing, tubing, or drill pipe. Upset tubular goods shall be priced on a non-upset basis. For other items, the price used should result in the Joint Account being charged or credited with the value of the service rendered or use of the Material, or as agreed to by the Parties pursuant to Section I.6.A (*General Matters*).

(5)   Condition "E" – Junk shall be priced at prevailing scrap value prices.

E.   OTHER PRICING PROVISIONS

(1)   Preparation Costs

Subject to Section II (*Direct Charges*) and Section III (*Overhead*) of this Accounting Procedure, costs incurred by the Operator in making Material serviceable including inspection, third party surveillance services, and other similar services will be charged to the Joint Account at prices which reflect the Operator's actual costs of the services. Documentation must be provided to the Non-Operators upon request to support the cost of service. New coating and/or wrapping shall be considered a component of the Materials and priced in accordance with Sections IV.1 (*Direct Purchases*) or IV.2.A (*Pricing*), as applicable. No charges or credits shall be made for used coating or wrapping. Charges and credits for inspections shall be made in accordance with COPAS MFI-38 ("Material Pricing Manual").

(2)   Loading and Unloading Costs

Loading and unloading costs related to the movement of the Material to the Joint Property shall be charged in accordance with the methods specified in COPAS MFI-38 ("Material Pricing Manual").

3.   **DISPOSITION OF SURPLUS**

Surplus Material is that Material, whether new or used, that is no longer required for Joint Operations. The Operator may purchase, but shall be under no obligation to purchase, the interest of the Non-Operators in surplus Material.

Dispositions for the purpose of this procedure are considered to be the relinquishment of title of the Material from the Joint Property to either a third party, a Non-Operator, or to the Operator. To avoid the accumulation of surplus Material, the Operator should make good faith efforts to dispose of surplus within twelve (12) months through buy/sale agreements, trade, sale to a third party, division in kind, or other dispositions as agreed to by the Parties.

Disposal of surplus Materials shall be made in accordance with the terms of the Agreement to which this Accounting Procedure is attached. If the Agreement contains no provisions governing disposal of surplus Material, the following terms shall apply:

- The Operator may, through a sale to an unrelated third party or entity, dispose of surplus Material having a gross sale value that is less than or equal to the Operator's expenditure limit as set forth in the Agreement to which this Accounting Procedure is attached without the prior approval of the Parties owning such Material.

- If the gross sale value exceeds the Agreement expenditure limit, the disposal must be agreed by the Parties owning such Material.

- Operator may purchase surplus Condition "A" or "B" Material without approval of the Parties owning such Material, based on the pricing methods set forth in Section IV.2 (*Transfers*).

- Operator may purchase Condition "C" Material without prior approval of the Parties owning such Material if the value of the Materials, based on the pricing methods set forth in Section IV.2 (*Transfers*), is less than or equal to the Operator's expenditure limitation set forth in the Agreement. The Operator shall provide documentation supporting the classification of the Material as Condition C.

- Operator may dispose of Condition "D" or "E" Material under procedures normally utilized by Operator without prior approval of the Parties owning such Material.

4.   **SPECIAL PRICING PROVISIONS**

A.   PREMIUM PRICING

Whenever Material is available only at inflated prices due to national emergencies, strikes, government imposed foreign trade restrictions, or other unusual causes over which the Operator has no control, for direct purchase the Operator may charge the Joint Account for the required Material at the Operator's actual cost incurred in providing such Material, making it suitable for use, and moving it to the Joint Property. Material transferred or disposed of during premium pricing situations shall be valued in accordance with Section IV.2 (*Transfers*) or Section IV.3 (*Disposition of Surplus*), as applicable.

B.   SHOP-MADE ITEMS

Items fabricated by the Operator's employees, or by contract laborers under the direction of the Operator, shall be priced using the value of the Material used to construct the item plus the cost of labor to fabricate the item. If the Material is from the Operator's scrap or junk account, the Material shall be priced at either twenty-five percent (25%) of the current price as determined in Section IV.2.A (*Pricing*) or scrap value, whichever is higher. In no event shall the amount charged exceed the value of the item commensurate with its use.

C. MILL REJECTS

Mill rejects purchased as "limited service" casing or tubing shall be priced at eighty percent (80%) of K-55/J-55 price as determined in Section IV.2 (*Transfers*). Line pipe converted to casing or tubing with casing or tubing couplings attached shall be priced as K-55/J-55 casing or tubing at the nearest size and weight.

## V. INVENTORIES OF CONTROLLABLE MATERIAL

The Operator shall maintain records of Controllable Material charged to the Joint Account, with sufficient detail to perform physical inventories.

Adjustments to the Joint Account by the Operator resulting from a physical inventory of Controllable Material shall be made within twelve (12) months following the taking of the inventory or receipt of Non-Operator inventory report. Charges and credits for overages or shortages will be valued for the Joint Account in accordance with Section IV.2 (*Transfers*) and shall be based on the Condition "B" prices in effect on the date of physical inventory unless the inventorying Parties can provide sufficient evidence another Material condition applies.

1. **DIRECTED INVENTORIES**

Physical inventories shall be performed by the Operator upon written request of a majority in working interests of the Non-Operators (hereinafter, "directed inventory"); provided, however, the Operator shall not be required to perform directed inventories more frequently than once every five (5) years. Directed inventories shall be commenced within one hundred eighty (180) days after the Operator receives written notice that a majority in interest of the Non-Operators has requested the inventory. All Parties shall be governed by the results of any directed inventory.

Expenses of directed inventories will be borne by the Joint Account; provided, however, costs associated with any post-report follow-up work in settling the inventory will be absorbed by the Party incurring such costs. The Operator is expected to exercise judgment in keeping expenses within reasonable limits. Any anticipated disproportionate or extraordinary costs should be discussed and agreed upon prior to commencement of the inventory. Expenses of directed inventories may include the following:

A. A per diem rate for each inventory person, representative of actual salaries, wages, and payroll burdens and benefits of the personnel performing the inventory or a rate agreed to by the Parties pursuant to Section I.6.A (*General Matters*). The per diem rate shall also be applied to a reasonable number of days for pre-inventory work and report preparation.

B. Actual transportation costs and Personal Expenses for the inventory team.

C. Reasonable charges for report preparation and distribution to the Non-Operators.

2. **NON-DIRECTED INVENTORIES**

A. OPERATOR INVENTORIES

Physical inventories that are not requested by the Non-Operators may be performed by the Operator, at the Operator's discretion. The expenses of conducting such Operator-initiated inventories shall not be charged to the Joint Account.

B. NON-OPERATOR INVENTORIES

Subject to the terms of the Agreement to which this Accounting Procedure is attached, the Non-Operators may conduct a physical inventory at reasonable times at their sole cost and risk after giving the Operator at least ninety (90) days prior written notice. The Non-Operator inventory report shall be furnished to the Operator in writing within ninety (90) days of completing the inventory fieldwork.

C. SPECIAL INVENTORIES

The expense of conducting inventories other than those described in Sections V.1 (*Directed Inventories*), V.2.A (*Operator Inventories*), or V.2.B (*Non-Operator Inventories*), shall be charged to the Party requesting such inventory; provided, however, inventories required due to a change of Operator shall be charged to the Joint Account in the same manner as described in Section V.1 (*Directed Inventories*).

Exhibit "F"

**PERFORMANCE BOND**

Bond No._____                                                    Amount _____

**Know All by These Presents,**

That we,          [Name]
                  [Address]
                  [Address]

(hereinafter called the Principal), as Principal, and Surety

a corporation duly organized under the laws of the State of [●] (hereinafter called the Surety), as Surety, are held and firmly bound unto

                  [Name]
                  [Address]
                  [Address]

(hereinafter called the Obligee), in the maximum penal sum of            ($    ) (hereinafter called the Maximum Penal Sum); for the payment of which we, the said Principal and the said Surety, bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Sealed with our seals and dated this         day of September, 2020.

WHEREAS, the Principal and Obligee are parties to that certain Joint Operating Agreement dated effective as of [_____] (the "Agreement") covering in relevant part the oil and gas lease covering the properties described on Exhibit "A" attached hereto and made a part hereof (the "Property");

WHEREAS, pursuant to the Agreement, Principal has exercised its right to withdraw from the Agreement and to assign to Obligee its interests in and to the Property and associated equipment and facilities that are subject to and covered by the Agreement as of the effective date of the Principal's withdrawal from the Agreement (the "Faciities"); and

WHEREAS, pursuant to the Agreement, Principal has agreed to provide this surety bond as security for Principal's obligation to pay for its proportionate share of the costs to complete the plugging, abandonment, decommissioning, and site clearance of the Property and Facilities (the "Commitment") insofar as such have accrued as of the effective date of Principal's withdrawal from the Agremeent.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the above bounden Principal shall well and truly keep, duly, and timely pay its Commitment upon the completion of the plugging, abandonment, decommissioning, and site clearance of the Lease and Facilities, then this obligation shall be null and void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1)      In the event the Principal fails to timely pay the Commitment and the Obligee has presented to the Surety a written notice that the Principal is in default, and such condition has persisted for

thirty (30) days after written notice of such default has been given by certified mail to Principal and to the Surety at their last known addresses, the Surety shall pay to the Obligee an amount equal to the Principal's working interest share of the actual charges incurred by Obligee in performing the plugging, abandonment, decommissioning, and site clearance for the Property and the Facilities insofar as such obligations comprised a part of the Commitment hereunder within twenty (20) days of Surety's receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable) and the obligations associated with this Bond shall then be considered null and void to the extent paid.

2) Principal shall have the right to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion in the amount necessary to replace this Bond.  If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue unconditional release of this bond within thirty (30) days of its acceptance of such other security.

**NOTWITHSTANDING ANYTHING CONTAINED IN THE AGREEMENT TO THE CONTRARY, THE LIABILITY OF THE PRINCIPAL AND SURETY UNDER THIS BOND IS CONTINUOUS UNTIL THE COMMITMENT IS SATISFACTORILY COMPLETED.**

No (i) delay, neglect, or failure of the Obligee to proceed promptly to enforce any rights it might have against Principal under the Agreement or otherwise or to proceed promptly in the premises in case of any default on the part of the Principal, (ii) lack of enforceability or other defense or offset right in respect of any obligation of Principal or any right to Obligee under the Agreement or otherwise in respect of the Commitment, or (iii) the insolvency, bankruptcy, or receivership of Principal, shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Performance Bond; and Principal and Surety hereby waive any defense or argument they may in relation to their obligations under this Performance Bond in connection with any of the foregoing.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Principal, the Obligee named herein, as the case may be, or their respective heirs, executors, administrators, or successors of the Obligee, as the case may be.

This Performance Bond may not be amended, supplemented, or modified except pursuant to a written instrument duly executed by the Principal, Surety, and Obligee. No course of conduct, dealing, or performance shall amend, supplement, or modify this Performance Bond unless incorporated into a written instrument referenced in the preceding sentence.

This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws rules and principles. Principal, Surety, and Obligee agree that any dispute arising out of this Performance Bond shall be brought and heard exclusively in the state or federal courts sitting in Harris County, Texas, and all of them irrevocably consent to the jurisdiction of said courts and do hereby waive any objections they may have to the laying of venue in such courts, including objections based upon grounds that such venue is inconvenient.

The Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) the full performance, satisfaction, and extinguishment of the Commitment in accordance with all applicable laws, rules, regulations, and orders and (ii) the full performance by Surety of its obligations under this Bond, in each case, no later than thirty (30) days after the Commitment or such performance has been completed.

The Principal and the Surety agree that, notwithstanding any termination of any of the leases or rights of way that may comprise any part of the Property, whether pursuant to their terms, by operation of law, or

otherwise, this Performance Bond shall remain in full force and effect until the earlier of to occur of (i) the Commitment having been truly and faithfully performed, satisfied, and extinguished and (ii) the full performance by Surety of its obligations under this Bond.

Surety represents that it (i) is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Performance Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; (ii) has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or processing against such Surety in any court or before ay officer, arising out of or founded upon this Performance Bond or any liability hereunder; and (iii) does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

This bond may signed by the Principal and Surety with either a digital or original signature, either of which shall be legally-valid and enforceable. This bond may be transmitted to the Obligee by mail, fax, or electronic transmission. For the avoidance of doubt, any electronic PDF version of this bond received by the Obligee shall be an operative instrument and may be used by the Obligee as it would a hardcopy original.

**PRINCIPAL**

By: _____

**SURETY COMPANY**

By: _____