IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**DEBTORS' THIRD MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING EXCLUSIVE PERIODS PURSUANT TO SECTION 1121(d) OF BANKRUPTCY CODE**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), file this motion (the "**Motion**") for entry of an order further extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing period, the "**Exclusive Periods**") by an additional 60 days through and including August 16, 2021,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

and September 27, 2021, respectively.² In support of the Motion, the Debtors respectfully represent as follows:

**Preliminary Statement**

1. As the Court is aware, the hearing to consider confirmation of the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**") is currently scheduled for this Friday, June 18, 2021. As announced in the Debtors' brief in support of confirmation of the Plan (Docket No. 1554) (the "**Confirmation Brief**"), the Plan provides for a comprehensive restructuring to be accomplished through a series of transactions that will preserve over 1,000 jobs, maximize recoveries to creditors, and address 100% of the Debtors' decommissioning obligations (approximately 91% of which is addressed on a consensual basis) without imposing any liability on the American taxpayer. Since the Court entered the Second Exclusivity Order (defined below), the Debtors have made tremendous progress towards confirming their Plan and exiting chapter 11 including, among other accomplishments, the following:

- **Approval of Disclosure Statement and Solicitation of Plan**. The Debtors obtained Court approval of the *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1284) (the "**Disclosure Statement**")³ and completed solicitation of the Plan;

- **Additional Predecessor Agreements**. The Debtors reached additional agreements with multiple predecessors, including Chevron U.S.A. Inc. ("**Chevron**"), Eni Petroleum US LLC ("**Eni**") (Docket No. 1368) and Hunt Oil

---

² Sixty days after June 15, 2021 is Saturday, August 14, 2021. Consequently, in accordance with Bankruptcy Rule 9006(a)(1)(C), the Debtors seek to extend the deadline to Monday, August 16, 2021.

³ Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

Company, Hunt Chieftan Development, L.P., and Hunt Oil Company (collectively, "**Hunt**") (Docket No. 1422);

- **Backstop Commitments for Equity Rights Offering**. Obtained entry of the *Order (I) Approving Rights Offering Procedures and Related Forms, (II) Authorizing Debtors to Conduct Rights Offerings in Connection with Debtors' Plan of Reorganization, (III) Authorizing Entry into Equity Rights Backstop Commitment Agreements, (IV) Approving Obligations Thereunder, and (V) Granting Related Relief* (Docket No. 1410);

- **Plan Supplement Filing**. The Debtors finalized and filed several key Plan documents as part of the Plan Supplement, including the Chevron Definitive Documents, the Eni Definitive Documents, and the Hunt Term Sheet, (Docket No. 1562);

- **$50 Million Working Capital Facility for FWE I**. The Debtors are in the process of securing an additional $50 million working capital facility[4] from Apache to provide additional support the FWE I structure; and

- **Surety Bond Commitment**. The Debtors are finalizing a bonding arrangement for Credit Bid Purchaser based on a commitment received from a surety to provide the same.

2. As a result of, among other things, the significant consensus achieved by the Debtors, the Plan is now supported by (i) every class of financial creditors in the Debtors' capital structure, (ii) multiple predecessors in interest (including Apache, Chevron, Eni, and Hunt), (iii) the Debtors' trade creditors, and (iv) the Creditors' Committee. Most importantly, the Plan creates a framework for all decommissioning obligations to be managed in an organized, environmentally safe manner. Moreover, the Debtors anticipate that the U.S. Government (the "**Government**") will not object to the Plan, but the Debtors are still in discussions with the Government.

3. Accordingly, in light of the progress made by the Debtors in these chapter 11 cases and the upcoming hearing on confirmation of the Plan scheduled for June 18, 2021, the

---

[4] The $50 million working capital facility remains subject to lenders' final approval.

3

Debtors are seeking a 60-day extension of the Exclusive Periods.  For all these reasons and those further discussed below, cause exists to grant the Debtors an extension of the Exclusive Periods.

## Background

4. Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

7. On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

## Debtors' Plan and Disclosure Statement

8. Following entry of the *Amended Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and*

*(VIII) Granting Related Relief* (Docket No. 1286) (the "**Disclosure Statement Order**"), on April 15, 2021, the Debtors filed solicitation versions of (i) the Plan and (ii) the Disclosure Statement.

9.  As detailed further in the *Affidavit of Service of Solicitation Materials* (Docket No. 1309-7), on April 19, 2021, the Debtors and the Voting Agent commenced solicitation of the Plan by distributing the Ballots, Notices of Non-Voting Status, and other required materials (each as defined in the Disclosure Statement Order) on all parties as required by the Disclosure Statement Order.

10. On June 13, 2021, the Debtors filed the Confirmation Brief. A hearing on confirmation of the Plan is currently scheduled for June 18, 2021 (the "**Confirmation Hearing**").

## First and Second Exclusivity Orders

11. On December 1, 2020, the Debtors filed the *Debtors' Motion for Entry of an Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 625) (the "**First Exclusivity Motion**"). On January 8, 2021, the Court entered an order extending (i) the Exclusive Filing Period through and including March 1, 2021, and (ii) the Exclusive Solicitation Period through and including April 30, 2021, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods (Docket No. 751) (the "**First Exclusivity Order**").

12. On March 1, 2021, the Debtors filed the *Debtors' Second Motion for Entry of an Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 930) (the "**Second Exclusivity Motion**").

13. On April 9, 2021, the Court entered an order extending (i) the Exclusive Filing Period through and including June 15, 2021, and (ii) the Exclusive Solicitation Period

through and including July 29, 2021, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods (Docket No. 1247) (the "**Second Exclusivity Order**").[5]

## Jurisdiction

14. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

15. The Debtors request, pursuant to section 1121(d) of the Bankruptcy Code, an extension of the Exclusive Filing Period by 60 days through and including August 16, 2021, and the Exclusive Solicitation Period through and including September 27, 2021, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the Bankruptcy Code. The Debtors' Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on June 15, 2021, and July 29, 2021, respectively.[6]

16. A proposed form of order approving the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

## Basis for Relief

17. Section 1121(b) of the Bankruptcy Code provides an initial 120-day Exclusive Filing Period and an initial 180-day Exclusive Solicitation Period. The Debtors' initial

---

[5] In the Second Exclusivity Motion, the Debtors requested an extension of the Exclusive Filing Period through May 31, 2021, which the Court extended *sua sponte* on the record to June 15, 2021 as reflected in the Second Exclusivity Order.

[6] Rule 18 of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* provides that "if a motion is filed that complies with Bankr. Loc. R. 9013-1 to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, the time for taking the action is automatically extended until the Court rules on the motion." By the filing of this Motion prior to the expiration of the Exclusive Filing Period, the Exclusive Filing Period will not expire until the Court resolves the Motion.

Exclusive Filing Period and Exclusive Solicitation Period were set to expire on December 1, 2020 and January 30, 2020.  After entry of the First Exclusivity Order, the Exclusive Filing Period was extended to March 1, 2021 and the Exclusive Solicitation Period was extended to April 30, 2021.  After entry of the Second Exclusivity Order, the Exclusive Filing Period was extended to June 15, 2021, and the Exclusive Solicitation Period was extended to July 29, 2021.

18. Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause:

> Subject to paragraph (2),[7] on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."

11 U.S.C. § 1121(d).

19. The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension.  The legislative history of section 1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("Any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, Ch. 11 Case No. 4-04-CV-476-A, 2004 WL

---

[7] Paragraph (2) provides that the Exclusive Periods may not be extended beyond 18 and 20 months, respectively, after the Petition Date.  The extension requested by this Motion would not extend the Exclusive Periods beyond 18 and 20 months, respectively, after the Petition Date.

2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization").

20. The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington-St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (identifying the *Adelphia* factors as factors to consider in determining whether cause exists to extend exclusivity); *In re Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (identifying the same factors); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

These non-exclusive factors include:

(i) the size and complexity of the debtor's case;

(ii) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii) the existence of good faith progress towards reorganization;

(iv) the fact that the debtor is paying its bills as they become due;

(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi) whether the debtor has made progress in negotiations with its creditors;

8

> (vii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (viii) whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity).

21. Not all factors are relevant to every case, and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *Hoffinger Indus.*, 292 B.R. at 644 ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co.*, 256 B.R. 744, 751-54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *Express One Int'l*, 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

### Cause Exists to Extend Exclusive Periods

22. A further extension of the Exclusive Periods by 60 days is necessary and appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. Ample cause exists to grant the Debtors the extensions of the Exclusive Periods as, the requested extension of the Exclusive Periods will enable

the Debtors to pursue confirmation and implementation of a chapter 11 plan without the risk of competing plans and the attendant disruption, expense, and delay. Accordingly, application of the relevant factors listed above to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

**A.      Debtors Have Made, and Continue to Make, Substantial Good Faith Progress Towards Reorganization**

23.     Since entry of the Second Exclusivity Order, the Debtors have solicited votes on the Plan, securing the acceptance of four of the six voting classes, and filed the Confirmation Brief.

24.     Additionally, the Debtors have made significant progress towards confirming their Plan and implementing a Plan that would address all of the Debtors' decommissioning obligations in a methodical and safe manner by responsible parties, preserve the Debtors' deepwater business and the jobs of over 1,000 employees and contractors, and maximize recoveries to the Debtors' stakeholders. Some of the Debtors' key achievements since entry of the Second Exclusivity Order include:

- the Debtors obtained approval of the Disclosure Statement and completed solicitation of the Plan;

- the Debtors reached additional agreements with predecessors, including Eni Petroleum US LLC and Hunt Oil Company, Hunt Chieftan Development, L.P., and Hunt Oil Company;

- the Debtors obtained approval of the equity rights offering procedures and authority to enter into the various equity rights backstop commitment agreements including the FLTL Equity Backstop Commitment Agreement and the SLTL Equity Backstop Commitment Agreement;

- the Debtors finalized and filed several key documents as part of the Plan Supplement in connection with the Plan, including the Chevron Definitive Documents, the Eni Definitive Documents, and the Hunt Term Sheet;

- the Debtors are close to finalizing an additional $50 million working capital facility from Apache to support the FWE I structure; and

10

- the Debtors are in the process of finalizing a bonding arrangement for Credit Bid Purchaser based on a commitment received from a surety to provide the bonding.

25.  In light of the considerable progress made towards confirming the Plan and with the Confirmation Hearing scheduled for this Friday, the Debtors submit that a 60-day extension of the Exclusive Periods is reasonable and appropriate to ensure that the Debtors' continued progress is not impeded due to a loss of exclusivity and to provide the Debtors a full and fair opportunity to confirm their value-maximizing chapter 11 plan without the distraction of competing plan proposals. On this basis alone, the requested exclusivity extension is warranted. *See Adelphia*, 352 B.R. at 588 (viewing the good faith factor "as one of the more important factors" in the analysis). Accordingly, the Exclusive Periods should be extended by a further 60 days to provide the Debtors with adequate time to confirm and implement their Plan.

**B.  Debtors Are Making Administrative Expense Payments and Will Continue to Do So**

26.  Courts considering an extension of exclusivity also assess a debtor's liquidity. *See Millennium Mgmt.*, 2014 WL 792115, at *6. Here, the Debtors are paying administrative expenses as they come due and will continue to do so. In addition, as set forth in the monthly operating reports filed to date, the Debtors have made approximately $660 million in disbursements since the Petition Date and have a total cash balance of approximately $100 million as of April 30, 2021 (excluding cash held in trust or escrow accounts). *See Debtor-in-Possession Monthly Operating Report for Reporting Period of April 1, 2021 through April 30, 2021* (Docket No. 1420). Moreover, the Debtors have access to approximately $90 million in DIP Financing pursuant to the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105,. 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(d)(1), and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364, and 507(b)* (Docket No.

346). The Debtors continue to monitor their liquidity closely and are confident that sufficient funding will be available to satisfy their postpetition payment obligations during the requested extension of the Exclusive Periods.

### C. Requested Extension Is in Best Interest of Debtors' Estates

27. As detailed above, the Debtors are prepared to move forward with the Confirmation Hearing and, if approved by the Court, take all required actions to implement the Plan. The Debtors believe that no party in interest is prejudiced by the requested extension of the Exclusive Periods because all stakeholders will benefit from the continued stability and predictability that comes with the Debtors being the sole plan proponents, especially at this point in the case with the substantial amount of work done by all parties. The stage of these cases, in light of their complexity and proximity to the Confirmation Hearing, further supports the requested extensions. Therefore, it is appropriate for the Court to extend the Exclusive Periods to allow the Debtors to seek confirmation of their Plan without the risk of distraction, delay, and cost attendant to competing plan proposals.

### D. Other Factors Continue to Support the Extension Request

28. The scale and complexity of the Debtors' businesses and corporate structure requires the Debtors to navigate complex issues in their restructuring efforts and further substantiates the need for an extension of the Exclusive Periods. This factor weighs heavily in favor of extending exclusivity. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."). These chapter 11 cases consist of fourteen separate Debtor entities. Moreover, the Debtors operate one of the largest oil and gas exploration and production companies in the Gulf of Mexico, employ approximately 1,000

employees across their offices in Houston, Lafayette, and offshore, and have approximately $1.8 billion in funded debt. Their portfolio of properties includes both deepwater and shallow water assets in the Gulf of Mexico including over 300 operated platforms spread across over 1.5 million gross acres.

## Notice

29. Notice of this Motion will be provided to (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and (ii) any other party entitled to notice pursuant to Local Rule 9013-1(d).

## Prior Requests

30. Except for the First Exclusivity Motion and the Second Exclusivity Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 15, 2021
      Houston, Texas

Respectfully submitted,

 /s/ Jessica Liou
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:   Alfredo.Perez@weil.com
          Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   Matt.Barr@weil.com
          Jessica.Liou@weil.com

*Attorneys for Debtors
and Debtors in Possession*

## Certificate of Service

      I hereby certify that, on June 15, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                        _/s/ Jessica Liou_  
                                                                                        Jessica Liou