# HCCI Exhibit 30

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| **Fill in this information to identify the case (Select only one Debtor per claim form):** | |
|---|---|
| ☐ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☒ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## <u>Modified Form 410</u>

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim | | |
|---|---|---|---|
| 1. | **Who is the current creditor?** | **HCC International Insurance Company LLC** | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor _____ | |
| 2. | **Has this claim been acquired from someone else?** | ☒ No ☐ Yes. From whom? _____ | |
| 3. | **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | | Contact phone  713-226-1200 | Contact phone _____ |
| | | Contact email  peisenberg@lockelord.com | Contact email _____ |
| 4. | **Does this claim amend one already filed?** | ☒ No ☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on _____ MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No ☐ Yes. Who made the earlier filing? _____ | |

**Claim Number: 658**                          Proof of Claim

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

**7. How much is the claim?**   $ 101,400,000.00 .   **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                           $_____

**Amount of the claim that is secured:**       $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**       $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**       $_____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

|  | **Amount entitled to priority** |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☒ No

☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**   $_____

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Martyn David Ward*
Martyn David Ward (Nov 24, 2020 14:47 CST)

**Email:** eguffy@lockelord.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Martyn David Ward | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Managing Director - Credit & Surety | | |
| Company | HCC International Insurance Company Plc | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | The Grange | | |
| | Number  Street | | |
| | Rearsby, Leicester LE7 4FY | | |
| | City | State | ZIP Code |
| Contact phone | 011 44 01664 423300 | Email | MWard@tmhcc.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   **(attach below)**
☐ **I do _not_ have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                 12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

**Do not file these instructions with your form**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al*.,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.[1]** | § | **Jointly Administered** |
| | § | |

---

**ADDENDUM TO PROOF OF CLAIM FILED BY HCC INTERNATIONAL
INSURANCE COMPANY PLC AGAINST FIELDWOOD ENERGY OFFSHORE, LLC**

Claimant HCC International Insurance Company Plc ("HCCI") hereby files this addendum (the "Addendum") to its proof of claim (the "Claim") filed against Fieldwood Energy Offshore, LLC.  This addendum and the attachment to it are an integral part of HCCI's Claim and are incorporated by reference into the Claim for all purposes.

**Nature of Claim**

(a)    General Indemnity Agreement and Bonds

Fieldwood Energy Offshore, LLC (the "Debtor"), Fieldwood Energy LLC, GOM Shelf LLC, and Fieldwood SD Offshore LLC (collectively with the Debtor, the "Fieldwood Entities") and HCCI are parties to a General Indemnity Agreement (the "Indemnity Agreement"), a copy of which is attached hereto.  Under the Indemnity Agreement, HCCI issued the following Bonds:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources, NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Filedwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9255); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 200 W. Same Houston Parkway S., Suite 1200, Houston, TX  77042

1

| Bond number | Penalty amount | Principal | Beneficiary |
|---|---|---|---|
| ES00001441 | $50,000,000.00[2] | Fieldwood Energy LLC | Apache Corporation |
| BS/MA/00089 | $50,000,000.00 | Fieldwood Energy LLC | Deutsche Bank AG New York Branch |
| **Total** | **$100,000,000.00** | | |

Under the terms of the Indemnity Agreement, the Debtor and each of the Fieldwood Entities is a principal and is jointly and severally liable for the Bonds issued under the Indemnity Agreement. Additionally, the Debtor and each of the Fieldwood Entities has the following obligations[3] under the Indemnity Agreement:

- Promptly pay all premiums and charges for the Bonds;
- Indemnify HCCI for any liabilities, losses, premiums, claims, damages, extra-contractual damages court costs and expenses, attorney's fees, consultant fees, interest, and all other costs and expenses of HCCI arising from or related to any aspect of the Bonds or the enforcement of HCCI's rights under the Indemnity Agreement or the Bonds;
- Provide HCCI with cash collateral as required and requested to fund the Debtor's potential liability under the Bonds and the Indemnity Agreement; and
- Not to create or permit to subsist any mortgage, charge, pledge, lien or other security interest securing any obligation of any person other than security interests permitted under the Credit Agreement dated September 30, 2013, between the Debtor and Citibank N.A. (the "Bank Facility").

The Debtor has defaulted on its obligations under the Indemnity Agreement. It has failed to pay premiums on the Bonds in the amount of $700,000.00  HCCI accordingly asserts a claim

---

[2] The total penalty amount of this Bond is $75,000,000.00.  However, subject to a Surety Claim Sharing Agreement between HCCI and Everest Reinsurance Company, HCCI is only liable for $50,000,000.00, which liability is several and not joint.

[3] This is only a summary of certain relevant terms of the Indemnity Agreement and is not intended to restate, modify, or waive any of the terms of the Indemnity Agreement, including the Debtor's obligations and liabilities under the Indemnity Agreement.

against the Debtor for all outstanding premiums, both pre-and postpetition[4], applicable interest on the unpaid premiums, and all of HCCI's costs in enforcing its rights to the premiums, including attorney's fees.

The Debtor is also in default under the Indemnity Agreement because it has failed to provide cash collateral for the Bonds as required under the Indemnity Agreement.  On July 3, 2020, HCCI made demand on the Debtor for cash collateral for the outstanding amount of the Bonds, which is $100,000,000.00.  The Debtor failed to provide the required cash collateral and is therefore in default of its obligations under the Indemnity Agreement.  HCCI is entitled to the immediate delivery of the requested cash collateral.

Additionally, upon information and belief, the Debtor has defaulted on its obligations under the Bank Facility, which is an event of default under the Indemnity Agreement, and has entered into a DIP credit facility that includes the grant of liens and security interests on the Debtor's assets other than the security interests permitted under the Bank Facility, which is a breach of the Debtor's covenants in the Indemnity Agreement and also an event of default.

Further, prior to the Petition Date, the Debtor entered into a Restructuring Support Agreement dated as of August 4, 2020 (the "RSA"), under which the Debtor is required to file and support a proposed chapter 11 plan that would separate the Debtor's assets and transfer their ownership to one or more new entities.  This proposed separation of the Debtor's assets and transfer of control of the Debtor is a further breach of the Debtor's obligations under the Indemnity Agreement.

Finally, one of the Bonds issued on behalf of the Fieldwood Entities, Bond No. ES00001441, was issued in connection with the Fieldwood Entities' obligations under a

---

[4] The inclusion of postpetition premims and the interest and costs associated therewith does not waive HCCI's right to assert that such postpetition claims are administrative expenses of the Debtors' bankruptcy estate.

Decommissioning Agreement by and between Apache Corporation, Apache Shelf, Inc., and Apache Deepwater LLC (collectively, "Apache") on the one hand and Fieldwood Energy LLC and GOM Shelf LLC, on the other.  The terms of the RSA, if implemented as proposed by the Debtor, would materially modify the terms of the Decommissioning Agreement.  These modifications would substantially increase HCCI's risk of loss under this Bond and constitute a further breach of the Debtor's obligations under the Indemnity Agreement.

HCCI hereby asserts its right to damages as a consequence of each and every existing breach of the Debtor's obligations under the Indemnity Agreement and reserves its right to assert claims for damages arising from these and all future breaches by the Debtor.

(b)     Participation Agreement and Letter of Credit

One of the Bonds issued by HCCI secures the Fieldwood Entities' obligations to Deutsche Bank AG New York Branch ("DB") under a Continuing Agreement for Standby Letters of Credit dated January 4, 2016 (the "Reimbursement Agreement").  Under the terms of the Reimbursement Agreement, DB has issued Standby Letter of Credit No. 839BGC1600430 (the "Letter of Credit") for the benefit of Apache Corporation ("Apache").

In addition to the Bond securing the Fieldwood Entities' obligations under the Reimbursement Agreement, HCCI has rights against the Debtor under a Participation Agreement with DB dated as of April 27, 2016 (the "Participation Agreement"), pursuant to which HCCI agreed to purchase from DB a participation in the Letter of Credit issued to Apache.  Under the terms of the Participation Agreement, HCCI is liable to DB for any amounts due to DB by the Debtor under the Reimbursement Agreement that are either not received or that are received but subsequently clawed back, up to the sum of $50,000,000.00, but the Participation Agreement also provides that, upon request by HCCI, DB shall assign to HCCI the relevant portion of its

claims, titles, rights, and interests against the Debtor under the Letter of Credit and the Reimbursement Agreement.

Under the terms of the Participation Agreement, the Debtor is required to pay certain premiums or charges related to the letter of credit. The Debtor has failed to pay these amounts. HCCI's claim includes these unpaid amounts, which upon information and belief, total $700,000.00.

HCCI also files this claim to preserve its rights against the Debtor under the Participation Agreement and the Reimbursement Agreement, including the right to assert a claim for any unpaid amounts due under the Reimbursement Agreement in connection with the Letter of Credit. Upon information and belief, the Debtor has failed to pay certain charges that are due under the Reimbursement Agreement. HCCI is continuing to investigate the Debtor's defaults under the Reimbursement Agreement and will amend this Claim as appropriate when additional information is obtained.

## General Provisions

HCCI files this claim as an unsecured claim.

No judgment has been rendered on the Claim.

The amount of all prepetition payments and credits on the Claim have been credited and deducted for purposes of making this Claim.

All notices to HCCI concerning this Claim should be sent to:

Mr. I. Ridgway
HCC International Insurance Company Plc
The Grange
Rearsby
Leicester
LE7 4FY

Copies of all notices to HCCI concerning this Claim should be sent to:

> Locke Lord LLP
> Attn:  Philip G. Eisenberg and Elizabeth M. Guffy
> 600 Travis, Suite 2800
> Houston, Texas  77002

This Claim is filed under compulsion of the bar date established in these chapter 11 cases and is filed to protect HCCI from forfeiture of its claims.  The execution and filing of this Claim are not (i) a waiver or release of any of HCCI's right against any entity or person liable for all or part of the Claims; (ii) a consent by HCCI to the jurisdiction of this Court with respect to the subject matter of the Claim, any objection or other proceeding commenced with respect thereto, or any other proceeding commenced in these cases against or otherwise involving HCCI; (iv) a waiver or release of HCCI's rights of subrogation, or claims related to impairment thereof, as to any party or parties paid or to be paid under the Bonds, (v) an election of remedy that waives or otherwise affects any other remedy; (vi) a waiver or release of any of HCCI's rights, remedies, or causes of action against any third party; or (vii) a waiver of the right to trial by jury in this Court or any other court with regard to the Claim, any claims or causes of action related to the Claim, or any other proceeding.

HCCI reserves all rights with respect to cure, adequate assurance, or rejection damages claims that may arise, to the extent that the Debtor treats the Bonds, the Indemnity Agreement, the Participation Agreement, the Reimbursement Agreement or any other agreement related to such agreements (collectively, the "Agreements") as executory contracts, and specifically reserves all rights to require assumption of the indemnity obligations set out in the Agreements. HCCI also reserves the right to dispute any characterization of the Agreements as executory contracts.

HCCI further reserves its right to assert all premiums accrued or accruing postpetition as administrative claims against the Debtor's estate.  Without limitation, HCCI reserves its rights to assert that cure amounts are due under the Agreements on a post-petition basis or that such cure amounts have administrative priority.

This Claim is without prejudice to HCCI's rights, claims and causes of action against third parties in connection with the Agreements or otherwise, and all such rights and claims are fully reserved.

HCCI is continuing its Investigation continues and reserves its rights to amend this Claim and to submit additional backup and other supporting documentation as necessary and appropriate.  In particular, HCCI reserves its rights to assert additional or amended claims against the Debtor, as warranted and as further information is developed and investigation continues.  HCCI further reserves the right to assert administrative priority claims against the Debtor.

## GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT ("Agreement"), dated this day of by the undersigned (individually and collectively **"Indemnitors"**[1]) in favor of HCC INTERNATIONAL INSURANCE COMPANY PLC and its subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to, their respective successors and assigns (individually and collectively **"Surety"**) with respect to any Bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured ("issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) whether issued before or after this Agreement, including all renewals, extensions, modifications and substitutions of Bonds ("Bonds" and individually "Bond"). Bonds may be issued in the name of or on behalf of (a) any Indemnitor, (b) any subsidiary or affiliate of any Indemnitor (c) any joint venture, consortium or other economic enterprise in which any Indemnitor is or was a member at the time the Bond was issued and/or (d) any third party on request of any Indemnitor. Indemnitors' obligations under this Agreement are continuing, including obligations for Bonds issued for entities that may be sold, dissolved, otherwise disposed of, or for which ownership or management changes may occur in the future.

As an inducement to Surety, Indemnitors represent, covenant and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1   **PREMIUMS:** Indemnitors shall promptly pay all premiums and charges of Surety for Bonds, at the current rate charged by Surety, until Surety has been provided satisfactory evidence, that Bonds have been fully released and/or discharged.

2   **INDEMNITY:** Indemnitors, jointly and severally, shall exonerate, indemnify, and hold Surety harmless from any and all liability, loss, premiums, claims, damages, extra-contractual damages, court costs and expenses, attorneys' fees, consultant fees, interest, and all other costs and expenses that Surety incurs or sustains (all of the foregoing "Loss") arising from or related to: (a) the underwriting or issuance of any Bond, (b) any Claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement,(c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of the Surety's interests, or to avoid or lessen Surety's liability or alleged liability. Indemnitors' liability to Surety includes all Loss, all payments made, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the Loss, the amounts paid or the actions taken or that it was necessary or expedient to incur such Loss, make such payments or take such actions, whether or not such liability, necessity or expediency existed. Good Faith means, with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Indemnitors. An itemized statement of Loss, sworn to by any officer of Surety, or vouchers, affidavits, or other evidence of payment by Surety, shall be *prima facie* evidence of Indemnitors' liability for such Loss.

3   **SURETY'S RIGHT TO SETTLE:** Surety has the absolute and unconditional right and is authorized but not required to pay, perform, settle, compromise, deny, litigate or otherwise resolve any Claim or pay any Loss under any Bonds. The Surety's decision shall be final, binding, and conclusive on the Indemnitors.

4   **PLACE IN FUNDS:** Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

5   **ISSUANCE OF BONDS:** Surety may decline to issue, execute, modify, procure, extend, or renew any bond and may cancel or terminate any Bond without incurring any liability whatsoever to Indemnitors or otherwise impairing its rights, however derived.

6   **OTHER SURETIES AS BENEFICIARIES:** If Surety procures the issuance of any Bond by other sureties, or issues any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then this Agreement shall inure to the benefit of such other sureties, co-sureties and/or reinsuring sureties, including the right to bring an action for enforcement of this Agreement. Surety may share any information relevant to a Claim or underwriting of Bonds with co-sureties, fronting companies, and/or reinsurers.

7.   **EVENT OF DEFAULT:** Indemnitors shall be in default of this Agreement if any of the following occur: (a) breach of any Bond; (b) failure to provide collateral in response to a demand made by Surety; (c) breach of any other provision of this Agreement; (d) Surety setting a reserve against Loss or incurring Loss; (e) any Indemnitor becomes the subject of a bankruptcy, ceases or threatens to cease to carry on business, or has any resolution passed or order made for its bankruptcy, winding-up, liquidation

or dissolution; (f) representations made to Surety by or on behalf of any Indemnitor prove to have been materially false or misleading when made; (g) if any of the Indemnitors is in breach or default of the terms of any loan agreement (including the [Credit Agreement dated September 30, 2013 between among others the Indemnitors and Citibank N.A.] (**IBank Facility**) or analogous documentation to which it is a party where such breach or default would entitle a lender under any loan agreement or analogous documentation to which the Indemnitor is a party, to accelerate payment save where such breach or default is remedied (where capable of being so remedied and provided such remedy is effected other than by pre-payment and/or cancellation of the debt in whole or in part and/or by the grant of security or provision of collateral) within any period of grace permitted in respect of the breach or default under the loan agreement or analogous documentation whichever period shall be the shorter; or (h) if there shall be a change in the party having Control of the Indemnitors or any of them (unless such change of Control is from any one or more Indemnitors to any one or more other Indemnitors but whereby ultimate Control remains with []) other than with the prior written consent of the Surety (where Control means where any Party holds or acquires a majority of the voting rights in a company or corporation or is or becomes entitled to appoint or remove a majority of its board of directors).

8. **SURETY'S ADDITIONAL RIGHTS:** This Agreement is in addition to and not in lieu of all rights, powers, and remedies that Surety may have or acquire against Indemnitors or others, and does not waive, release or novate other agreements. Surety may make, consent to or decline to consent to changes in Bonds, may accept, modify or release any Indemnitor, and may accept, modify, subordinate or release any other indemnity, collateral, rights, real or personal property and/or security. Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other and/or any principal until all obligations to Surety under this Agreement, at law or in equity, have been satisfied in full. Surety's forebearance or failure to act to enforce any right shall not waive or diminish any of its rights, which rights may be enforced at any time in Surety's sole discretion.

9. **PARI PASSU:** Each of the Indemnitors covenants and agrees that its obligations hereunder do and will rank pari passu with all other present and future unsecured obligations of the Indemnitors other than those mandatorily preferred by law.

10. **NEGATIVE PLEDGE:** Except as permitted under paragraph (c) below:

    (a)     No Indemnitor shall create or permit to subsist any mortgage, charge, pledge, lien or other security interest securing any obligation of any person or any other agreement or arrangement having a similar effect over any of its assets ("Security").

    (b)     No Indemnitor shall:

        (i)     sell, transfer or otherwise dispose of any of its assets on terms whereby they are or may be leased to or re-acquired by an Indemnitor or any other group company;

        (ii)    sell, transfer or otherwise dispose of any of its receivables on recourse terms;

        (iii)   enter into any arrangement under which money or the benefit of a bank or other account may be applied, set-off or made subject to a combination of accounts; or

    (iv)    enter into any other preferential arrangement having a similar effect,

    in circumstances where the arrangement or transaction is entered into primarily as a method of raising Indebtedness (as defined in the Bank Facility) or of financing the acquisition of an asset.

    (c)     Paragraphs (a) and (b) above does not apply to any Security which is permitted under the terms of the Bank Facility

11. **WAIVER OF NOTICE:** Indemnitors waive notice of the issuance or cancellation of any Bond, any settlement or any act, fact or information concerning or affecting the rights and liabilities of the Surety or the rights or liabilities of Indemnitors under the Bonds or this Agreement, notwithstanding any notice of any kind to which Indemnitors might otherwise have been or be entitled, and notwithstanding any defenses they might have been or be entitled to assert

12. **DISCHARGE:** Indemnitors shall promptly, on Surety's written demand, procure the full and complete discharge of Surety from all Bonds demanded by Surety and all liability in connection with such Bonds. If Indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to Surety for the funding of the bonded obligations

13. **LAWSUITS:** Separate suits may be brought under this Agreement as causes of action accrue, and the bringing of suits or the recovery of judgment on any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether arising before or after any other lawsuit or cause of action.

14. **EXECUTION AND CHANGES:** This Agreement may be executed in counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Indemnitor when that Indemnitor executes this Agreement, regardless of whether any other Indemnitor fails or refuses to execute this Agreement. This Agreement shall only be changed or modified in writing.

15. **SEVERABILITY:** If any provision in this Agreement is found to be contrary to any law applicable to any Indemnitor, or is otherwise found void or unenforceable, the remainder of this Agreement shall remain in full force and effect as to that Indemnitor, and the entire Agreement shall remain of full force and effect as to all other Indemnitors.

16. **TERMINATION OF INDEMNITY:** This Agreement remains in effect until terminated and released by Surety. Any Indemnitor may send written notice to Surety of that Indemnitor's intent to terminate its participation under this Agreement for Bonds issued after the Effective Date of the notice. Such termination of participation shall be effective twenty (20) days from Surety's receipt of the notice ("Effective Date"); however such termination of participation shall not terminate, reduce or discharge Indemnitor's obligations for Bonds issued prior to the Effective Date. The notice of intent to terminate, and any other notices to Surety, shall be addressed as follows: HCC International Insurance Company PLC Credit & Surety Division, The Grange, Rearsby, Leicester LE7 4FY, United Kingdom.

17. **REPRESENTATIONS AND WARRANTIES:** Each Indemnitor represents and warrants the following: (a) Indemnitor has a substantial, material, and/or beneficial interest in one or more Indemnitors or Principals obtaining Bonds or in Surety refraining from canceling Bonds; (b) Indemnitor has the full power and authority to execute and deliver this Agreement and to perform all obligations in this Agreement; (c) Indemnitor's execution and delivery of this Agreement and performance in accordance with its terms does not and will not conflict with, and will not result in a breach or violation of, any terms or conditions of any law, order, regulation or other agreement or obligation binding on Indemnitor; (d) All information provided to Surety by each Indemnitor prior to and after the execution of this Agreement is true, accurate and complete as of the time provided; (e) each right, power and remedy given to Surety, under this Agreement or otherwise, forms a material part of Surety's consideration for Bonds; and (f) the obligations of the Indemnitors under this Deed shall be joint and several.

18. **ACCESSION:** The Indemnitors shall procure that any other company which becomes a Guarantor pursuant to the terms of the Bank Facility (as defined therein) shall, promptly, and in any event within 30 days after becoming a Guarantor, becomes an Indemnitor by acceding to this Deed.

19. **INFORMATION:** The Indemnitors hereby undertake (i) to deliver to the Surety copies of all information furnished to the Administrative Agent pursuant to Clause 9.1 (a), (b), (c) and (d) of the Bank Facility as soon as reasonably practicably after the same are available; and (ii) to deliver to the Surety any notices issued pursuant to the Decommissioning Agreement which relate to the Letters of Credit (as defined therein); (iii) to notify the Surety of the occurrence of any Event of Default as defined in any Bond or Bonds;

20. **LAW AND JURISDICTION:** This Agreement shall be governed by and construed in accordance with the laws of the State of New York. In relation to any dispute arising out of or in connection with this Deed, and for the exclusive benefit of the Surety, each Indemnitor submits to the jurisdiction of the Courts of State of New York and waives any objection to proceedings with respect to this Deed in such Court on the grounds of venue or inconvenient forum.

SIGNATURE PAGE(S) TO FOLLOW

## SIGNATURE INSTRUCTIONS

*All signatures should be notarized and dated.*

1. Corporation: an officer on the operational side (i.e. President, CEO, COO) and an officer on the finance side (i.e. Secretary, CFO, Treasurer) should sign;

2. Limited Liability Corporation (LLC): (a) if manager-managed, and if only one manager, the manager should sign; if more than one manager, two managers should sign (b) if member-managed, two members should sign unless there is only one member, then the one member should sign, or (c) if the LLC has appointed officers to manage the LLC, an officer on the operational side and an officer on the finance side should sign.

3. Limited Partnership (LP): (a) if only one general partner, the general partner should sign; (b) if more than one general partner, two general partners should sign.

4. Limited Liability Partnership (LLP): at least two partners should sign.

5. Trust:  All of the Trustee(s) should sign.

By signing below, each of the undersigned affirms to Surety that the undersigned is a duly authorized officer, manager, trustee, official or member of the entity for which the undersigned executes the foregoing Agreement. In such capacity the undersigned is familiar with all of the documents which establish the rights and which govern the affairs, power and authority of such entity including, to the extent applicable, the (1) certificate or articles of incorporation, (2) bylaws, (3) resolutions, (4) partnership, operating or limited liability agreements or (5) trust agreements of such entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned affirms that such entity has the power and authority to enter into such Agreement and that the undersigned is duly authorized to execute this Agreement on behalf of the entity and to bind the entity to its terms.

*(The remainder of this page intentionally left blank)*

**INDEMNITORS:**

Fieldwood Energy LLC
Fieldwood Energy Offshore LLC

LAST 4 DIGITS OF
INDEMNITOR'S TIN:
6778

*(SEAL, IF A
CORPORATION)*

Signer #1

BY: _____
    G. Matt McCarroll

Date: [   ] 2016    *January 14, 2016*

As CEO of Fieldwood Energy LLC
As CEO of Fieldwood Energy Offshore LLC
As CEO of GOM Shelf LLC
As CEO of Fieldwood SD Offshore LLC

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: _Texas_ COUNTY OF: _Harris_

The following instrument was acknowledged before me this 14th day of January 2016 by:
*[name of signatory]* G. MATT McCARROLL as :

as [title] PRESIDENT & CEO of [entity #1] FIELDWOOD ENERGY LLC , and
as [title] PRESIDENT & CEO of [entity #2] FIELDWOOD ENERGY OFFSHORE LLC , and
as [title] PRESIDENT & CEO of [entity #3] GOM SHELF LLC , and
as [title] PRESIDENT & CEO of [entity #4] FIELDWOOD SD OFFSHORE LLC

all of the above entities the "Entities", on behalf of the Entities. He/She is personally known to me or has produced *[form of identification]*
_____ as identification.

My commission expires:

9 - 14 , 20 17

Notary Public Signature

Printed Name Mindy A Gregory

Notary Seal:

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2017
Notary ID 125433370

*(The remainder of this page intentionally left blank)*

[CONTINUED FROM PRIOR PAGE - SIGNATURE PAGE when the same authorized representatives are signing for multiple business entities]

*Signer #2*

**By:** _____     Date: [          ]2016

NOTARIAL ACKNOWLEDGEMENT

STATE OF: _____COUNTY OF: _____

The following instrument was acknowledged before me this _____ day of _____ 20-- by:

*[name of signatory]* _____     as :

as [title] _____     of [entity #1] _____* and

as [title] _____     of [entity #2] _____* and

as [title] _____     of [entity #3] _____' and

as [title] _____     of [entity #4] _____

all of the above entities the "Entities", on behalf of the Entities. He/She is personally known to me or has produced *[form of identification]*

_____ as identification.

My commission expires:          Notary Seal:

_____     _____, 20_____

Notary Public Signature

Printed Name _____

*(The remainder of this page intentionally left blank)*

# Electronic Proof of Claim_ZZAOU28824[[CSA#7 711#CF]]

Final Audit Report                                                    2020-11-24

| | |
|---|---|
| Created: | 2020-11-24 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAp46l8PvrWsG-8waTgEsBNjmeg9X4FNc9 |

## "Electronic Proof of Claim_ZZAOU28824[[CSA#7711#CF]]" History

📄 Web Form created by Prime Clerk (epoc@primeclerk.com)
   2020-11-24 - 8:42:58 PM GMT

📎 Martyn David Ward (eguffy@lockelord.com) uploaded the following supporting documents:
   📎 Attachment
   2020-11-24 - 8:47:47 PM GMT

📄 Web Form filled in by Martyn David Ward (eguffy@lockelord.com)
   2020-11-24 - 8:47:47 PM GMT- IP address: 4.31.138.211

✍️ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
   AppleWebKit/537.36 (KHTML, like Gecko) Chrome/87.0.4280.66 Safari/537.36)
   2020-11-24 - 8:47:50 PM GMT- IP address: 4.31.138.211

✅ Agreement completed.
   2020-11-24 - 8:47:50 PM GMT