# HCCI Exhibit 36

## SURETY CLAIM SHARING AGREEMENT

This Surety Claims Sharing Agreement (the "Agreement") is entered into between and among Everest Reinsurance Company its present or future direct or indirect parent companies, any of their respective present or future direct or indirect affiliates or subsidiaries and any of the aforementioned entities' successors or assigns ("Everest") and HCC International Insurance Company Plc, and its Subsidiaries and Affiliates ("HCC") effective as of the 30 day of August, 2018.

Whereas, the Sureties have executed, or agreed to execute, and may execute or agree to execute in the future, a Payment Bond at the request of Fieldwood Energy LLC, ("Principal") (the "Bond"). A copy of the Bond is attached hereto. If any additional bond or bonds are required to be issued in connection with the Bond, such bond or bonds may be issued subject to this Agreement if both Sureties concur; and

Whereas, the Sureties desire to document their respective rights and obligations to each other arising out of this Agreement.

Now therefore for good and valuable consideration, receipt of which is hereby acknowledged, the Sureties agree as follows:

1. Each Surety shall be responsible for billing and collecting premiums and paying commissions in connection with its respective share of the Bond(s).

2. Each Surety's liability on the Bond is several and not joint, and its respective obligations and liabilities as to all Claims and Losses shall be limited to the percentage of liability stated on Schedule A attached to this Agreement.

3. Each Surety that receives notice of a Claim under the Bond(s) shall promptly send a copy of such notice of Claim to the other Surety. Given that each Surety's share of the Bonds is for the same underlying obligations, the Sureties have designated Everest as Lead Surety for the purposes of investigating and making examinations in connection with any Claim brought under the Bond(s). Designation of a Lead Surety is in no way intended to limit or abrogate HCC's rights or obligation to conduct an independent investigation. Everest shall have the right and is hereby authorized, to investigate and make examinations in connection with any Claim or suit under the Bond(s) and to charge and obtain from Everest the costs thereof in its proportionate share as set forth in the Bond. Everest shall advise HCC of the results of its investigations and examinations and of its determinations and responses in connection with such claims, demands or suits. HCC shall be entitled to make its own investigations and examinations into any claims, demands or suits at its own expense and shall not be entitled to any reimbursement for such expenses from Everest, except when it as acting as Lead Surety due to a Claim being brought under the Bond.

4. In the event a Claim is made under the Bond(s), each Surety agrees to share the Loss resulting from such Claim in the proportions set forth in Schedule A attached to this Agreement.

5. Each Surety hereto shall be responsible for securing and enforcing its own rights of indemnification and reimbursement as against the Principal or any other person or entity, and shall not be obliged to share with the other Surety recoveries, reimbursement or collateral currently held or hereafter obtained through any available means covering its liability under the Bond(s).

Surety Claim Sharing Agreement                                                                                                          page 1 of 5



6. Each Surety shall provide the other with notice of the cancellation of any Respective Bond(s). The respective liability of each Surety pursuant to this Agreement shall be adjusted proportionally accordingly with any adjustment in the Bond penal sums.

7. All notices made or required to be given pursuant to this Agreement shall be in writing and shall be addressed as follows:

   Everest:   Everest Reinsurance Company
   Attention: Anthony Romano, Vice President
   461 5th Avenue – 4th Floor
   New York, New York 10017
   Phone: (646) 828 – 5001
   Email: tony.romano@everestre.com

   HCC:   HCC International Insurance Company Plc
   Attention: Bill Backhouse, Underwriting Manager – Surety
   The Grange, Rearsby, Leicester, LE7 4FY
   Phone: 01664 423300
   Email: manchesterbonds@tmhcc.com

8. In case it shall be found impracticable to enforce this Agreement against any Surety or Sureties hereto by reason of insolvency or otherwise, each solvent Surety shall be obligated in the amount stated in the Bond only and in no event shall the liability of any Surety exceed such stated amount

9. No Surety shall be deemed to be the drafter of any particular provision or provisions of this Agreement nor shall any part of this Agreement be construed against any Surety on the basis of its identity as the drafter of any part of this Agreement. This Agreement shall be construed as a contract negotiated at arm's length, and any special rules of construction applicable to contracts of adhesion or insurance contracts shall not apply.

10. This Agreement shall be governed by and construed in accordance with the laws of Texas. The Parties hereby irrevocably and unconditionally submit to the jurisdiction of said courts. In any action, suit or other proceeding the Parties hereby irrevocably and unconditionally waive and agree not to assert by way of motion, as a defence or otherwise, any claims that they are not subject to the jurisdiction of the above courts, that such action or suit is brought in an inconvenient forum or that the venue of such action, suit or other proceeding is improper.

11. If any provision of this Agreement is held or determined to be illegal, invalid or unenforceable under any present or future law: (a) such provision will be fully severable; (b) this Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof; (c) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance here from; and (d) in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a legal, valid and enforceable provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible.



12. No waiver of any provision of this Agreement shall constitute or imply a further or contingent waiver. Each Surety shall be entitled to enforce all terms of this Agreement regardless of any prior waivers unless made in writing and signed by all Sureties to this Agreement.

13. The terms and provisions of this Agreement are intended solely for the benefit of the Sureties, and their respective successors and permitted assigns, and are not intended to confer third party beneficiary rights upon any other person.

14. This Agreement shall bind not only the undersigned, but also their respective successors and assigns, as the case may be.

15. This Agreement may be executed in counterparts, each of which shall constitute an original as against any Surety whose signature appears thereon and all of which together constitute one and the same instrument. Faxed or electronic signatures to this Agreement shall be considered valid and original signatures for all purposes.

16. Definitions: For the purposes of this Agreement:

    a. Claim: any claim, demand, potential claim or demand, and/or lawsuit in connection with the Bond(s).

    b. Loss: any payment or expense incurred by any of the Sureties in connection with the Bond(s) or this Agreement, including but not limited to the payment of (1) bond proceeds or any other damages or expenses incurred in connection with Bond claims, potential claims or demands, (2) penalties, (3) interest, (4) court costs, (5) experts' fees, (6) consultants' fees, and (7) legal fees, including but not limited to those fees incurred defending and/or adjusting claims, pursuing recoveries from third parties, but shall not include any compensation of salaried officers and employees of the Sureties.

17. This Agreement shall remain in full force and effect until terminated. A Surety may terminate participation in this Agreement when it has no further liability under the Bonds and the Surety has provided written notice via certified mail return receipt requested to the non-terminating Surety in accordance Section 7 herein of its intent to terminate. Said notice of termination shall become effective immediately upon the non-terminating Surety's receipt of the same and the terminating Surety shall no further liability under this Agreement.

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be signed by appropriate officers this 30 day of August, 2018.

**Everest Reinsurance Company**

By: _____

Anthony Romano – Vice President



**HCC INTERNATIONAL INSURANCE COMPANY PLC**

By: _____

Name: RYAN GRANT O'NEILL
Title:   Senior Underwriter – Surety

## SCHEDULE A
## TO SURETY CLAIM SHARING AGREEMENT

Schedule A Dated: 30 August, 2018

If modified, Date of Modification: _____

HCC Bond Number
HCC Penal Sum         USD $50,000,000.00

Everest Bond Number
Everest Penal Sum     USD $25,000,000.00

Modification dated _____ acknowledged and accepted:

**HCC**

By: _/s/ Ryan Grant O'Neill_

Ryan Grant O'Neill
Senior Underwriter – Surety

Bond No. BU/MA/00197

**Everest**

By: _____

Anthony Romano, VP