# HCCI Exhibit 38


TOKIO MARINE
HCC

Tokio Marine HCC
The Grange, Rearsby
Leicester LE7 4FY, UK
Tel: +44 (0)1664 423300
tmhcc.com/international

3rd July 2020

Mark Mozell, Vice President
Fieldwood Energy, LLC
2000 W.Sam Houston Pkwy. South
Suite 1200
Houston, TX 77042

Email & Registered Post
MMozell@fwellc.com

Re:   Principals:   **Fieldwood Energy LLC**
                   **Fieldwood Energy Offshore LLC**
                   **GOM Shelf LLC**
                   **Fieldwood SD Offshore LLC**

## Request for Collateral as Security

Dear Mr. Mozell:

Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, GOM Shelf LLC and Fieldwood SD Offshore LLC executed the enclosed General Indemnity Agreement effective 14th January 2016. The aforementioned General Indemnity Agreement was executed in favour of HCC International Insurance Company Plc and is hereinafter referred to as ("Agreement") while the aforementioned entities not previously identified are hereinafter referred to as ("Fieldwood")

HCC International Insurance Company Plc issued various Bonds in reliance on the Agreement. Currently, there are USD $100,000,000.00 of outstanding surety Bonds issued on behalf of Fieldwood.

Paragraph 4 of the Agreement titled Place in Funds:

"Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety, to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds."

By way of this letter and in accordance with the terms of the Agreement, HCC International Insurance Company Plc respectfully requests that Fieldwood as Principal provide collateral security in the amount of USD $100,000,000.00.

Please contact J S W Backhouse, Underwriting Manager, at bbackhouse@tmhcc.com cc manchesterbonds@tmhcc.com, 07736 158120, to discuss this request. HCC International Insurance Company Plc reserves all its rights and defences under the Bonds, the Agreement, the law otherwise.

Yours sincerely,

Mr J D Watts
**Underwriting Director – Surety**
**On behalf of HCC International Insurance Company Plc**

Tokio Marine HCC is a trading name of HCC International Insurance Company plc, which is a member of the Tokio Marine HCC Group of Companies. HCC International Insurance Company plc is authorised by the Prudential Regulation Authority (PRA) and regulated by the UK Financial Conduct Authority (FCA) and Prudential Regulation Authority. Registered in England and Wales No. 01575839 with registered office at 1 Aldgate, London EC3N 1RE.

Enclosures - 14th January 2016 General Indemnity Agreement

cc:  Ian Ridgeway
     Martyn Ward

## GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT ("Agreement"), dated this day of by the undersigned (individually and collectively "**Indemnitors**"[1]) in favor of HCC INTERNATIONAL INSURANCE COMPANY PLC and its subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to, their respective successors and assigns (individually and collectively "**Surety**") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured ("issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) whether issued before or after this Agreement, including all renewals, extensions, modifications and substitutions of Bonds ("Bonds" and individually "Bond"). Bonds may be issued in the name of or on behalf of (a) any Indemnitor, (b) any subsidiary or affiliate of any Indemnitor (c) any joint venture, consortium or other economic enterprise in which any Indemnitor is or was a member at the time the Bond was issued and/or (d) any third party on request of any Indemnitor. Indemnitors' obligations under this Agreement are continuing, including obligations for Bonds issued for entities that may be sold, dissolved, otherwise disposed of, or for which ownership or management changes may occur in the future.

As an inducement to Surety, Indemnitors represent, covenant and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1. **PREMIUMS:** Indemnitors shall promptly pay all premiums and charges of Surety for Bonds, at the current rate charged by Surety, until Surety has been provided satisfactory evidence, that Bonds have been fully released and/or discharged.

2. **INDEMNITY:** Indemnitors, jointly and severally, shall exonerate, indemnify, and hold Surety harmless from any and all liability, loss, premiums, claims, damages, extra-contractual damages, court costs and expenses, attorneys' fees, consultant fees, interest, and all other costs and expenses that Surety incurs or sustains (all of the foregoing "Loss") arising from or related to: (a) the underwriting or issuance of any Bond, (b) any Claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement,(c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of the Surety's interests, or to avoid or lessen Surety's liability or alleged liability. Indemnitors' liability to Surety includes all Loss, all payments made, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the Loss, the amounts paid or the actions taken or that it was necessary or expedient to incur such Loss, make such payments or take such actions, whether or not such liability, necessity or expediency existed. Good Faith means, with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Indemnitors. An itemized statement of Loss, sworn to by any officer of Surety, or vouchers, affidavits, or other evidence of payment by Surety, shall be *prima facie* evidence of Indemnitors' liability for such Loss.

3. **SURETY'S RIGHT TO SETTLE:** Surety has the absolute and unconditional right and is authorized but not required to pay, perform, settle, compromise, deny, litigate or otherwise resolve any Claim or pay any Loss under any Bonds. The Surety's decision shall be final, binding, and conclusive on the Indemnitors.

4. **PLACE IN FUNDS:** Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

5. **ISSUANCE OF BONDS:** Surety may decline to issue, execute, modify, procure, extend, or renew any bond and may cancel or terminate any Bond without incurring any liability whatsoever to Indemnitors or otherwise impairing its rights, however derived.

6. **OTHER SURETIES AS BENEFICIARIES:** If Surety procures the issuance of any Bond by other sureties, or issues any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then this Agreement shall inure to the benefit of such other sureties, co-sureties and/or reinsuring sureties, including the right to bring an action for enforcement of this Agreement. Surety may share any information relevant to a Claim or underwriting of Bonds with co-sureties, fronting companies, and/or reinsurers.

7. **EVENT OF DEFAULT:** Indemnitors shall be in default of this Agreement if any of the following occur: (a) breach of any Bond; (b) failure to provide collateral in response to a demand made by Surety; (c) breach of any other provision of this Agreement; (d) Surety setting a reserve against Loss or incurring Loss; (e) any Indemnitor becomes the subject of a bankruptcy, ceases or threatens to cease to carry on business, or has any resolution passed or order made for its bankruptcy, winding-up, liquidation

or dissolution; (f) representations made to Surety by or on behalf of any Indemnitor prove to have been materially false or misleading when made; (g) if any of the Indemnitors is in breach or default of the terms of any loan agreement (including the [Credit Agreement dated September 30, 2013 between among others the Indemnitors and Citibank N.A.] **(IBank Facility)** or analogous documentation to which it is a party where such breach or default would entitle a lender under any loan agreement or analogous documentation to which the Indemnitor is a party, to accelerate payment save where such breach or default is remedied (where capable of being so remedied and provided such remedy is effected other than by pre-payment and/or cancellation of the debt in whole or in part and/or by the grant of security or provision of collateral) within any period of grace permitted in respect of the breach or default under the loan agreement or analogous documentation whichever period shall be the shorter; or (h) if there shall be a change in the party having Control of the Indemnitors or any of them (unless such change of Control is from any one or more Indemnitors to any one or more other Indemnitors but whereby ultimate Control remains with []) other than with the prior written consent of the Surety (where Control means where any Party holds or acquires a majority of the voting rights in a company or corporation or is or becomes entitled to appoint or remove a majority of its board of directors).

8. **SURETY'S ADDITIONAL RIGHTS:** This Agreement is in addition to and not in lieu of all rights, powers, and remedies that Surety may have or acquire against Indemnitors or others, and does not waive, release or novate other agreements. Surety may make, consent to or decline to consent to changes in Bonds, may accept, modify or release any Indemnitor, and may accept, modify, subordinate or release any other indemnity, collateral, rights, real or personal property and/or security. Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other and/or any principal until all obligations to Surety under this Agreement, at law or in equity, have been satisfied in full. Surety's forebearance or failure to act to enforce any right shall not waive or diminish any of its rights, which rights may be enforced at any time in Surety's sole discretion.

9. **PARI PASSU:** Each of the Indemnitors covenants and agrees that its obligations hereunder do and will rank pari passu with all other present and future unsecured obligations of the Indemnitors other than those mandatorily preferred by law.

10. **NEGATIVE PLEDGE:** Except as permitted under paragraph (c) below:

    (a)  No Indemnitor shall create or permit to subsist any mortgage, charge, pledge, lien or other security interest securing any obligation of any person or any other agreement or arrangement having a similar effect over any of its assets ("**Security**").

    (b)  No Indemnitor shall:

    (i)  sell, transfer or otherwise dispose of any of its assets on terms whereby they are or may be leased to or re-acquired by an Indemnitor or any other group company;

    (ii)  sell, transfer or otherwise dispose of any of its receivables on recourse terms;

    (iii)  enter into any arrangement under which money or the benefit of a bank or other account may be applied, set-off or made subject to a combination of accounts; or

    (iv)  enter into any other preferential arrangement having a similar effect,

    in circumstances where the arrangement or transaction is entered into primarily as a method of raising Indebtedness (as defined in the Bank Facility) or of financing the acquisition of an asset.

    (c)  Paragraphs (a) and (b) above does not apply to any Security which is permitted under the terms of the Bank Facility

11. **WAIVER OF NOTICE:** Indemnitors waive notice of the issuance or cancellation of any Bond, any settlement or any act, fact or information concerning or affecting the rights and liabilities of the Surety or the rights or liabilities of Indemnitors under the Bonds or this Agreement, notwithstanding any notice of any kind to which Indemnitors might otherwise have been or be entitled, and notwithstanding any defenses they might have been or be entitled to assert

12. **DISCHARGE:** Indemnitors shall promptly, on Surety's written demand, procure the full and complete discharge of Surety from all Bonds demanded by Surety and all liability in connection with such Bonds. If Indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to Surety for the funding of the bonded obligations

13. **LAWSUITS:** Separate suits may be brought under this Agreement as causes of action accrue, and the bringing of suits or the recovery of judgment on any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether arising before or after any other lawsuit or cause of action.

14. **EXECUTION AND CHANGES:** This Agreement may be executed in counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Indemnitor when that Indemnitor executes this Agreement, regardless of whether any other Indemnitor fails or refuses to execute this Agreement. This Agreement shall only be changed or modified in writing.

15. **SEVERABILITY:** If any provision in this Agreement is found to be contrary to any law applicable to any Indemnitor, or is otherwise found void or unenforceable, the remainder of this Agreement shall remain in full force and effect as to that Indemnitor, and the entire Agreement shall remain of full force and effect as to all other Indemnitors.

16. **TERMINATION OF INDEMNITY:** This Agreement remains in effect until terminated and released by Surety. Any Indemnitor may send written notice to Surety of that Indemnitor's intent to terminate its participation under this Agreement for Bonds issued after the Effective Date of the notice. Such termination of participation shall be effective twenty (20) days from Surety's receipt of the notice ("Effective Date"); however such termination of participation shall not terminate, reduce or discharge Indemnitor's obligations for Bonds issued prior to the Effective Date. The notice of intent to terminate, and any other notices to Surety, shall be addressed as follows: HCC International Insurance Company PLC Credit & Surety Division, The Grange, Rearsby, Leicester LE7 4FY, United Kingdom.

17. **REPRESENTATIONS AND WARRANTIES:** Each Indemnitor represents and warrants the following: (a) Indemnitor has a substantial, material, and/or beneficial interest in one or more Indemnitors or Principals obtaining Bonds or in Surety refraining from canceling Bonds; (b) Indemnitor has the full power and authority to execute and deliver this Agreement and to perform all obligations in this Agreement; (c) Indemnitor's execution and delivery of this Agreement and performance in accordance with its terms does not and will not conflict with, and will not result in a breach or violation of, any terms or conditions of any law, order, regulation or other agreement or obligation binding on Indemnitor; (d) All information provided to Surety by each Indemnitor prior to and after the execution of this Agreement is true, accurate and complete as of the time provided; (e) each right, power and remedy given to Surety, under this Agreement or otherwise, forms a material part of Surety's consideration for Bonds; and (f) the obligations of the Indemnitors under this Deed shall be joint and several.

18. **ACCESSION:** The Indemnitors shall procure that any other company which becomes a Guarantor pursuant to the terms of the Bank Facility (as defined therein) shall, promptly, and in any event within 30 days after becoming a Guarantor, becomes an Indemnitor by acceding to this Deed.

19. **INFORMATION:** The Indemnitors hereby undertake (i) to deliver to the Surety copies of all information furnished to the Administrative Agent pursuant to Clause 9.1 (a), (b), (c) and (d) of the Bank Facility as soon as reasonably practicably after the same are available; and (ii) to deliver to the Surety any notices issued pursuant to the Decommissioning Agreement which relate to the Letters of Credit (as defined therein]; (iii) to notify the Surety of the occurrence of any Event of Default as defined in any Bond or Bonds;

20. **LAW AND JURISDICTION:** This Agreement shall be governed by and construed in accordance with the laws of the State of New York. In relation to any dispute arising out of or in connection with this Deed, and for the exclusive benefit of the Surety, each Indemnitor submits to the jurisdiction of the Courts of State of New York and waives any objection to proceedings with respect to this Deed in such Court on the grounds of venue or inconvenient forum.

SIGNATURE PAGE(S) TO FOLLOW

## SIGNATURE INSTRUCTIONS

*All signatures should be notarized and dated.*

1. Corporation: an officer on the operational side (i.e. President, CEO, COO) and an officer on the finance side (i.e. Secretary, CFO, Treasurer) should sign;

2. Limited Liability Corporation (LLC): (a) if manager-managed, and if only one manager, the manager should sign; if more than one manager, two managers should sign (b) if member-managed, two members should sign unless there is only one member, then the one member should sign, or (c) if the LLC has appointed officers to manage the LLC, an officer on the operational side and an officer on the finance side should sign.

3. Limited Partnership (LP): (a) if only one general partner, the general partner should sign; (b) if more than one general partner, two general partners should sign.

4. Limited Liability Partnership (LLP): at least two partners should sign.

5. Trust: All of the Trustee(s) should sign.

By signing below, each of the undersigned affirms to Surety that the undersigned is a duly authorized officer, manager, trustee, official or member of the entity for which the undersigned executes the foregoing Agreement. In such capacity the undersigned is familiar with all of the documents which establish the rights and which govern the affairs, power and authority of such entity including, to the extent applicable, the (1) certificate or articles of incorporation, (2) bylaws, (3) resolutions, (4) partnership, operating or limited liability agreements or (5) trust agreements of such entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned affirms that such entity has the power and authority to enter into such Agreement and that the undersigned is duly authorized to execute this Agreement on behalf of the entity and to bind the entity to its terms.

*(The remainder of this page intentionally left blank)*

**INDEMNITORS:**

Fieldwood Energy LLC
Fieldwood Energy Offshore LLC

Signer #1

BY: _____
G. Matt McCarroll

As CEO of Fieldwood Energy LLC
As CEO of Fieldwood Energy Offshore LLC
As CEO of GOM Shelf LLC
As CEO of Fieldwood SD Offshore LLC

LAST 4 DIGITS OF
INDEMNITOR'S TIN:
6778

*(SEAL, IF A CORPORATION)*

Date: January 14, 2016 [ 12016 ]

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: Texas        COUNTY OF: Harris

The following instrument was acknowledged before me this 14th day of January 2016 by:

[name of signatory] G. MATT MCCARROLL as:

as [title] PRESIDENT & CEO    of [entity #1] Fieldwood Energy LLC    • and
as [title] PRESIDENT & CEO    of [entity #2] Fieldwood Energy Offshore LLC    • and
as [title] PRESIDENT & CEO    of [entity #3] GOM Shelf LLC    • and
as [title] PRESIDENT & CEO    of [entity #4] Fieldwood SD Offshore LLC

all of the above entities the "Entities", on behalf of the Entities. He/She is personally known to me or has produced [form of identification] _____ as identification.

My commission expires:   Notary Seal:

9-14, 2017

Notary Public Signature

Printed Name: Mindy A. Gregory

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2017
Notary ID 125433370

*(The remainder of this page intentionally left blank)*

[CONTINUED FROM PRIOR PAGE - SIGNATURE PAGE when the same authorized representatives are signing for multiple business entities]

*Signer #2*

By: _____                     Date: [          ] 2016

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: _____ COUNTY OF: _____

The following instrument was acknowledged before me this _____ day of _____ 20-- by:

[name of signatory] _____ as :

as [title] _____ of [entity #1] _____ * and
as [title] _____ of [entity #2] _____ * and
as [title] _____ of [entity #3] _____ ' and
as [title] _____ of [entity #4] _____

all of the above entities the "Entities", on behalf of the Entities. He/She is personally known to me or has produced *[form of identification]*
_____ as identification.

                                    My commission expires:          Notary Seal:

_____            _____, 20_____
Notary Public Signature

Printed Name _____

*(The remainder of this page intentionally left blank)*