Direct Access - Filing Details                                                                 Page 1 of 2

## Louisiana Secretary of State
## UCC Filing Detail
### (Not a Certified Copy)

Notice: All Filings after 1/6/2021 are subject to change or removal.

**Original File#:** 55-1434772
**Filed:** 8/16/2013 at 9:38 AM
**Parish:** TERREBONNE
**Debtors:** (2)

> LLOG EXPLORATION OFFSHORE, L.L.C.
> Tax ID: #####0000
> 1001 OCHSNER BLVD., SUITE 200
> COVINGTON, LA 70433
>
> DAVIS OFFSHORE, L.P.
> Tax ID: #####0000
> 1330 POST OAK BLVD., SUITE 600
> HOUSTON, TX 77056

**Original Secured Parties:** (2)

> LLOG EXPLORATION OFFSHORE, L.L.C.
> Tax ID#: #####0000
> 1001 OCHSNER BLVD., SUITE 200
> COVINGTON, LA 70433
>
> DAVIS OFFSHORE, L.P.
> Tax ID#: #####0000
> 1330 POST OAK BLVD., SUITE 600
> HOUSTON, TX 77056

**Property:** FIX/MIN FILING

> SEE ATTACHED MEMORANDUM OF OPERATING AGREEMENT AND FINANCING STATEMENT (LOUISIANA) AND ATTACHED CORRECTION TO MEMORANDUM OF OPERATING AGREEMENT AND FINANCING STATEMENT (LOUISIANA). ETC. SEE ORIGINAL

**Subsequent Filings:** (5)

| Type | Details |
|---|---|
| Assignment: | 55-1473361 filed on 2/3/2015 at 10:15 AM |
| | Assignees: (2) |
| | LLOG EXPLORATION OFFSHORE, L.L.C.<br>Tax ID: #####0000<br>1001 OCHSNER BLVD., SUITE 200<br>COVINGTON, LA 70433 |
| | FIELDWOOD ENERGY OFFSHORE LLC<br>Tax ID: #####0000<br>2000 W SAM HOUSTON PKWY S, SUITE 1200<br>HOUSTON, TX 77042 |
| Amendment: | 55-1473362 filed on 2/3/2015 at 10:15 AM<br>AMENDED TO ADD SECURED PARTY - LLOG ENERGY, L.L.C.; 1001 OCHSNER BOULEVARD, SUITE 200, COVINGTON, LA 70433 |
| Amendment: | 55-1473363 filed on 2/3/2015 at 10:17 AM<br>AMENDED TO ADD DEBTORS: LLOG ENERGY, L.L.C., 1001 OCHSNER BOULEVARD, SUITE 200, COVINGTON, LA 70433 AND FIELDWOOD ENERGY OFFSHORE LLC, 2000 W SAM HOUSTON PKWAY S, SUITE 1200, HOUSTON, TX 77042 |
| Amendment: | 55-1473364 filed on 2/3/2015 at 10:18 AM |

# Terrebonne Parish Recording Page

**Theresa A. Robichaux**
**Clerk Of Court**
P.O. Box 1569
Houma, LA 70361-1569
(985) 868-5660

**Received From :**
Attn: KAY BONURA
LLOG EXPLORATION COMPANY LLC
1001 OCHSNER BLVD SUITE 100
COVINGTON, LA 70433

**First DEBTOR**
LLOG EXPLORATION OFFSHORE L L C

**First SECURED PARTY**
LLOG EXPLORATION OFFSHORE L L C

**Index Type :** UCC                                **File Number :** 1434772
**Type of Document :** UCC-1 FIXTURE

**Recording Pages :**    17

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana.

*Theresa A. Robichaux*
Clerk of Court

CLERK OF COURT
THERESA A. ROBICHAUX
Parish of Terrebonne
I certify that this is a true copy of the attached document that was filed for registry and
Recorded 08/16/2013 at 9:38:16
File Number    1434772

Deputy Clerk

On (Recorded Date) : 08/16/2013
At (Recorded Time) : 9:38:16AM



Doc ID - 012149440017

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Kay Bonura   985-801-4300

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Attention: Kay Bonura
LLOG Exploration Company, L.L.C.
1001 Ochsner Blvd., Suite 200
Covington, LA 70433

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name; if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LLOG Exploration Offshore, L.L.C. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 Ochsner Blvd., Suite 200 | Covington | LA | 70433 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name; if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Davis Offshore, L.P. | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1330 Post Oak Blvd., Suite 600 | Houston | TX | 77056 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LLOG Exploration Offshore, L.L.C. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 Ochsner Blvd., Suite 200 | Covington | LA | 70433 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See attached Memorandum of Operating Agreement and Financing Statement (Louisiana) and attached Correction to Memorandum of Operating Agreement and Financing Statement (Louisiana).

This filing is also being made as a result of the business conversion of LLOG Exploration Offshore, Inc. to LLOG Exploration Offshore, L.L.C. effective December 31, 2009.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
GC 157/201

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)   International Association of Commercial Administrators (IACA)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME: **LLOG Exploration Offshore, L.L.C.**

OR 9b. INDIVIDUAL'S SURNAME:
FIRST PERSONAL NAME:
ADDITIONAL NAME(S)/INITIAL(S):       SUFFIX:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME:

OR 10b. INDIVIDUAL'S SURNAME:
INDIVIDUAL'S FIRST PERSONAL NAME:
INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S):     SUFFIX:

10c. MAILING ADDRESS:   CITY:   STATE:   POSTAL CODE:   COUNTRY:

11. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME: **Davis Offshore, L.P.**

OR 11b. INDIVIDUAL'S SURNAME:   FIRST PERSONAL NAME:   ADDITIONAL NAME(S)/INITIAL(S):   SUFFIX:

11c. MAILING ADDRESS: **1330 Post Oak Blvd., Suite 600**   CITY: **Houston**   STATE: **TX**   POSTAL CODE: **77056**   COUNTRY: **USA**

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☑ covers as-extracted collateral   ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS: GC 157/201

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# MEMORANDUM OF OPERATING AGREEMENT AND FINANCING STATEMENT
## (LOUISIANA)

To be filed in the conveyance records and in the mortgage records and as a non-standard financing statement in accordance with Paragraph 6.0 herein.

This document will serve to amend and replace that Memorandum of Operating Agreement and Financing Statement (Louisiana) filed in Conveyance Book No. 1865, Entry No. 1171844, Mortgage Book No. 1638, Entry 1171844, and Uniform Commercial Code Book under Entry No. 55 1171844 of the parish records of Terrebonne Parish, Louisiana.

1.0   This Memorandum of Operating Agreement and Financing Statement (Louisiana) (this "Memorandum") is effective as of the effective date of the Operating Agreement referred to in Paragraph 2.0 below and is executed by the undersigned, duly authorized representative of LLOG Exploration Offshore, Inc., Louisiana corporation, whose taxpayer identification number is 72-1322580 and whose address is 1001 Ochsner Boulevard, Suite 200, Covington, Louisiana 70433 (the "Operator"), and the undersigned, duly authorized representative of Davis Offshore, L.P., whose taxpayer identification number is 94-3374031 and whose address is 1360 Post Oak Blvd, Suite 2400, Houston, Texas 77056 (the "Non-Operating Party").

2.0   The Operator and the Non-Operating Party are parties to that certain Operating Agreement dated the 12th day of December, 2002 (the "Operating Agreement"), which Operating Agreement provides for the development and production of crude oil, natural gas and associated substances from the lands and oil and gas leases described in Exhibit "A" of the Operating Agreement and in Attachment "1" to this Memorandum (hereinafter called the "Contract Area") and which designates LLOG Exploration Offshore, Inc. as the Operator, to conduct such operations for itself and the Non-Operating Party. All such leases and any future oil and gas leases covering lands included within the Contract Area that may be acquired by the Operator and the Non-Operating Party (including substitutions for or replacements of existing leases) are hereinafter called the "Lease."

3.0   Among other provisions, the Operating Agreement (a) provides for certain liens, mortgages, pledges and security interests to secure payment by the parties of their respective share of costs and performance of other obligations under the Operating Agreement, (b) contains an Accounting Procedure, which establishes, among other things, interest to be charged on indebtedness, certain costs, and other expenses under the Operating Agreement at the rate set forth therein, (c) includes non-consent clauses which establish that parties who elect not to participate in certain operations shall (i) be deemed to have relinquished their interest in production until the carrying consenting parties recover their costs of such operations plus a specified amount or (ii) forfeit their interest in certain Leases or portions thereof involved in such operations, (d) grants each party to the Operating Agreement the right to take in kind its proportionate share of all oil and gas produced from the Contract Area, and (e) includes a

1

volumetric Gas Balancing Agreement which is attached as Exhibit "D" to the Operating Agreement.

4.0 The Operator hereby certifies that a true and correct copy of the Operating Agreement is on file and is available for inspection by third parties at the offices of the Operator at the address set forth in this Memorandum.

5.0 In addition to any other security rights and remedies provided for by law with respect to services rendered or materials and equipment furnished under the Operating Agreement, for and in consideration of the covenants and mutual undertakings of the Operator and the Non-Operating Party set forth in the Operating Agreement, the Operator and the Non-Operating Party hereby agree as follows:

5.1 Each Non-Operating Party hereby grants to the Operator a mortgage, hypothec, and pledge of and over all of its rights, titles, and interests in and to (a) the Lease, (b) the oil and gas in, on, under, and that may be produced from the lands covered by the Lease or included within the Contract Area, and (c) all other immovable property susceptible of mortgage situated within the Contract Area.

5.2 Each Non-Operating Party hereby grants to the Operator a continuing security interest in and to all of its rights, titles, interests, claims, general intangibles, proceeds, and products thereof, whether now existing or hereafter acquired, in and to (a) all oil and gas produced from the offshore blocks covered by the Lease or the Contract Area or attributable to the Lease or the Contract Area when produced, (b) all accounts receivable accruing or arising as a result of the sale of such oil and gas (including, without limitation, accounts arising from gas imbalances or from the sale of oil and gas at the wellhead), (c) all cash or other proceeds from the sale of such oil and gas once produced, and (d) all platforms, wells, facilities, fixtures, other corporeal property, whether movable or immovable, whether now or hereafter placed on the offshore blocks covered by the Lease or the Contract Area or maintained or used in connection with the ownership, use, or exploitation of the Lease or the Contract Area, and other surface and sub-surface equipment of any kind or character located on or attributable to the Lease or the Contract Area, and the cash or other proceeds realized from any sale, transfer, disposition or conversion thereof. The interest of the Non-Operating Party in and to the oil and gas produced from or attributable to the Lease or the Contract Area when extracted and the accounts receivable accruing or arising as the result of the sale thereof shall be financed at the wellhead of the well or wells located on the Lease or the Contract Area. To the extent susceptible under applicable law, the security interest granted by each Non-Operating Party hereunder covers (i) all substitutions, replacements, and accessions to the property of such Non-Operating Party described herein and is intended to cover all of the rights, titles, and interests of such Non-Operating Party in all movable property now or hereafter located upon or used in connection with the Contract Area, whether corporeal or incorporeal, (ii) all rights under any gas balancing agreement, farmout rights, option farmout rights, acreage and cash contributions, and conversion rights of such Non-Operating Party in connection with the Lease or the Contract Area, or the oil and gas produced from or

2

attributable to the Lease or the Contract Area, whether now owned and existing or hereafter acquired or arising, including, without limitation, all interests of each Non-Operating Party in any partnership, tax partnership, limited partnership, association, joint venture, or other entity or enterprise that holds, owns, or controls any interest in the Contract Area, and (iii) all rights, claims, general intangibles, and proceeds, whether now existing or hereafter acquired, of such Non-Operating Party in and to the contracts, agreements, permits, licenses, rights-of-way, and similar rights and privileges that relate to or are appurtenant to the Lease or the Contract Area, including the following:

(1) all of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in, to, and under or derived from any present or future operating, farmout, bidding, pooling, unitization, and communitization agreements, assignments, and subleases, whether or not described in Attachment "1," to the extent, and only to the extent, that such agreements, assignments, and subleases cover or include any of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in and to all or any portion of the Lease or the Contract Area, and all units created by any such pooling, unitization, and communitization agreements, and all units formed under orders, regulations, rules, or other official acts of any governmental authority having jurisdiction, to the extent and only to the extent that such units cover or include all or any portion of the Lease or the Contract Area;

(2) all of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in, to, and under or derived from all presently existing and future advance payment agreements, and oil, casinghead gas, and gas sales, exchange, and processing contracts and agreements, including, without limitation, those contracts and agreements that are described on Attachment "1," to the extent, and only to the extent, those contracts and agreements cover or include all or any portion of the Lease or the Contract Area; and

(3) all of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in, to, and under or derived from all existing and future permits, licenses, rights-of-way, and similar rights and privileges that relate to or are appurtenant to any of the Lease or the Contract Area.

5.3   To the extent susceptible under applicable law, the mortgage and the security interest granted by each Non-Operating Party in the Operating Agreement and this Memorandum shall secure (a) the complete and timely performance of and payment by such Non-Operating Party to the Operator of all of its obligations and indebtedness of every kind and nature, whether now owed by such Non-Operating Party or hereafter arising pursuant to the Operating Agreement and this Memorandum, and (b) the payment of all expenses incurred by the Operator and the Participating Party for (or on account of) any and all operations conducted pursuant

3

to the Operating Agreement ("Costs") and other expenses properly charged to such Non-Operating Party together with (1) interest on such indebtedness, Costs, and other expenses at the rate set forth in Exhibit "C" attached hereto (the "Accounting Procedure") or the maximum rate allowed by law, whichever is the lesser, (2) reasonable attorneys' fees, (3) court costs, and (4) other directly related collection costs.

5.4 This Memorandum (including a carbon, photographic, or other reproduction thereof and hereof) shall constitute a non-standard form of financing statement under the terms of Chapter 9 of the Louisiana Commercial Laws, La. R.S. 10:9-101 et seq. (the "Uniform Commercial Code," as adopted in the State of Louisiana) and, as such, for the purposes of the security interest in favor of the Operator, may be filed for record in the office of the Clerk of Court of any parish in the State of Louisiana, with the Operator being the secured party and the Non-Operating Party being the debtors with respect to such filing.

5.5 The maximum amount for which the mortgage herein granted by each Non-Operating Party shall be deemed to secure the obligations and indebtedness of such Non-Operating Party to the Operator as stipulated herein is hereby fixed in an amount equal to $25,000,000.00 (the "Limit of the Mortgage of each Non-Operating Party"). Except as provided in the previous sentence (and then only to the extent such limitations are required by law), the entire amount of obligations and indebtedness of each Non-Operating Party to the Operator is secured hereby without limitation. Notwithstanding the foregoing Limit of the Mortgage of each Non-Operating Party, the liability of each Non-Operating Party under this Memorandum and the mortgage and security interest granted hereby shall be limited to (and the Operator shall not be entitled to enforce the same against such Non-Operating Party for, an amount exceeding) the actual obligations and indebtedness (including all interest charges, costs, attorneys' fees, and other charges provided for in this Memorandum or in the Operating Agreement) outstanding and unpaid and that are attributable to or charged against the interest of such Non-Operating Party pursuant to the Operating Agreement.

5.6 The Operator hereby grants to each Non-Operating Party a mortgage, hypothec, and pledge of and over all of its rights, titles, and interests in and to (a) the Lease, (b) the oil and gas in, on, under, and that may be produced from the lands covered by the Lease or included within the Contract Area, and (c) all other immovable property susceptible of mortgage situated within the Contract Area.

5.7 The Operator hereby grants to each Non-Operating Party a continuing security interest in and to all of its rights, titles, interests, claims, general intangibles, proceeds, and products thereof, whether now existing or hereafter acquired, in and to (a) all oil and gas produced from the offshore blocks covered by the Lease or the Contract Area or attributable to the Lease or the Contract Area when produced, (b) all accounts receivable accruing or arising as a result of the sale of such oil and gas (including, without limitation, accounts arising from gas imbalances or from the sale

4

of oil and gas at the wellhead), (c) all cash or other proceeds from the sale of such oil and gas once produced, and (d) all platforms, wells, facilities, fixtures, other corporeal property, whether movable or immovable, whether now or hereafter placed on the property covered by the Lease or the Contract Area or maintained or used in connection with the ownership, use or exploitation of the Lease or the Contract Area, and other surface and sub-surface equipment of any kind or character located on or attributable to the Lease or the Contract Area and the cash or other proceeds realized from any sale, transfer, disposition or conversion thereof. The interest of the Operator in and to the oil and gas produced from or attributable to the Lease or the Contract Area when extracted and the accounts receivable accruing or arising as the result of the sale thereof shall be financed at the wellhead of the well or wells located on the Lease or the Contract Area. To the extent susceptible under applicable law, the security interest granted by the Operator hereunder covers (i) all substitutions, replacements, and accessions to the property of the Operator described herein and is intended to cover all of the rights, titles and interests of the Operator in all movable property now or hereafter located upon or used in connection with the Contract Area, whether corporeal or incorporeal, (ii) all rights under any gas balancing agreement, farmout rights, option farmout rights, acreage and cash contributions, and conversion rights of the Operator in connection with the Lease or the Contract Area, or the oil and gas produced from or attributable to the Lease or the Contract Area, whether now owned and existing or hereafter acquired or arising, including, without limitation, all interests of the Operator in any partnership, tax partnership, limited partnership, association, joint venture, or other entity or enterprise that holds, owns, or controls any interest in the Contract Area, and (iii) all rights, claims, general intangibles, and proceeds, whether now existing or hereafter acquired, of the Operator in and to the contracts, agreements, permits, licenses, rights-of-way, and similar rights and privileges that relate to or are appurtenant to the Lease or the Contract Area, including the following:

(1) all of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in, to, and under or derived from any present or future operating, farmout, bidding, pooling, unitization, and communitization agreements, assignments, and subleases, whether or not described in Attachment "1," to the extent, and only to the extent, that such agreements, assignments, and subleases cover or include any of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in and to all or any portion of the Lease or the Contract Area, and all units created by any such pooling, unitization, and communitization agreements and all units formed under orders, regulations, rules, or other official acts of any governmental authority having jurisdiction, to the extent and only to the extent that such units cover or include all or any portion of the Lease or the Contract Area;

(2) all of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in, to, and under or derived from all presently existing and future advance payment agreements, and oil, casinghead gas, and

5

gas sales, exchange, and processing contracts and agreements, including, without limitation, those contracts and agreements that are described on Attachment "1," to the extent, and only to the extent, that those contracts and agreements cover or include all or any portion of the Lease or the Contract Area; and

(3) all of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in, to, and under or derived from all existing and future permits, licenses, rights-of-way, and similar rights and privileges that relate to or are appurtenant to the Lease or the Contract Area.

5.8 To the extent susceptible under applicable law, the mortgage and the security interest granted by the Operator in the Operating Agreement and this Memorandum shall secure (a) the complete and timely performance of and payment by the Operator to the Non-Operating Party of all of its obligations and indebtedness of every kind and nature, whether now owed or hereafter arising pursuant to the Operating Agreement and this Memorandum, and (b) the payment of all Costs and other expenses properly charged to the Operator, together with (1) interest on such indebtedness, Costs, and other expenses at the rate set forth in the Accounting Procedure or the maximum rate allowed by law, whichever is the lesser, (2) reasonable attorneys' fees, (3) court costs, and (4) other directly related collection costs.

5.9 For the purposes of the security interest in favor of the Non-Operating Party, this Memorandum (including a carbon, photographic, or other reproduction thereof and hereof) may be filed as a non-standard form of financing statement pursuant to the Uniform Commercial Code in the office of the Clerk of Court of any parish in the State of Louisiana, with the Non-Operating Party being the secured parties and the Operator being the debtor with respect to such filing.

5.10 The maximum amount for which the mortgage herein granted by the Operator shall be deemed to secure the obligations and indebtedness of the Operator to all Non-Operating Party as stipulated herein is hereby fixed in an amount equal to $25,000,000.00 in the aggregate (the "Limit of the Mortgage of the Operator"), irrespective of the total number of non-operators party to the Operating Agreement at any time. Except as provided in the previous sentence (and then only to the extent such limitations are required by law), the entire amount of obligations and indebtedness of the Operator to the Non-Operating Party is secured hereby without limitation. Notwithstanding the foregoing Limit of the Mortgage of the Operator, the liability of the Operator under this Memorandum and the mortgage and security interest granted hereby shall be limited to (and the Non-Operating Party shall not be entitled to enforce the same against Operator for, an amount exceeding) the actual obligations and indebtedness (including all interest charges, costs, attorneys' fees, and other charges provided for in this Memorandum or in the Operating Agreement) outstanding and unpaid and that are attributable to or charged against the interest of the Operator pursuant to the Operating Agreement.

6

6.0    To serve as notice of the existence of the Operating Agreement as a burden on the title of the Operator and the Non-Operating Party to their interests in and to the Lease and the Contract Area and for purposes of satisfying otherwise relevant recording and filing requirements of applicable law, this Memorandum is to be filed or recorded, as the case may be, in (a) the conveyance records of the parish or parishes in which the offshore blocks covered by the Lease or included within the Contract Area are located or adjacent pursuant to La. R.S. 9:2731 et seq., (b) the mortgage records of such parish or parishes, and (c) the appropriate Uniform Commercial Code records. All parties to the Operating Agreement are identified on Attachment "1" hereto.

7.0    If performance of any obligation under the Operating Agreement or payment of any indebtedness created thereunder does not occur or is not made when due under the Operating Agreement or upon default of any covenant or condition of the Operating Agreement, in addition to any other remedy afforded by law, each party to the Operating Agreement and any successor to such party by assignment, operation of law, or otherwise, shall have, and is hereby given and vested with, the power and authority to foreclose the mortgage, pledge, and security interest established in its favor herein and in the Operating Agreement in the manner provided by law and to exercise all rights of a secured party under the Uniform Commercial Code. If any Non-Operating Party does not pay its indebtedness or perform its obligations under the Operating Agreement when due, the Operator shall have the additional right to notify the purchaser or purchasers of such Non-Operating Party's production and collect such indebtedness out of the proceeds from the sale of such Non-Operating Party's share of production until the amount owed has been paid. The Operator shall have the right to offset the amount owed against the proceeds from the sale of such Non-Operating Party's share of production. Any purchaser of such production shall be entitled to rely on the Operator's statement concerning the amount of indebtedness owed by such Non-Operating Party and payment made to the Operator by any purchaser shall be binding and conclusive as between such purchaser and such Non-Operating Party.

8.0    Upon expiration of the Operating Agreement and the satisfaction of all obligations and indebtedness arising thereunder, the Operator, on behalf of all parties to the Operating Agreement, shall file of record an appropriate release and termination of all security and other rights created under the Operating Agreement and this Memorandum executed by all parties to the Operating Agreement. Upon the filing of such release and termination instrument, all benefits and obligations under this Memorandum shall terminate as to all parties who have executed or ratified this Memorandum. In addition, at any time prior to the filing of such release and termination instrument, each of the Operator and the Non-Operating Party shall have the right to (i) file a continuation statement pursuant to the Uniform Commercial Code with respect to any financing statement filed in their favor under the terms of this Memorandum and (ii) reinscribe this act in the appropriate mortgage records.

9.0    It is understood and agreed by the parties hereto that if any part, term, or provision of this Memorandum is held by the courts to be illegal or in conflict with any law of the state where made, the validity of the remaining portions or provisions shall not be affected, and the rights

7

and obligations of the parties shall be construed and enforced as if the Memorandum did not contain the particular part, term, or provision held to be invalid.

10.0  This Memorandum shall be binding upon and shall inure to the benefit of the parties hereto and their respective legal representatives, successors and permitted assigns. The failure of one or more persons owning an interest in the Contract Area to execute this Memorandum shall not in any manner affect the validity of the Memorandum as to those persons who execute this Memorandum.

11.0  A party having an interest in the Contract Area may ratify this Memorandum by execution and delivery of an instrument of ratification, adopting and entering into this Memorandum, and such ratification shall have the same effect as if the ratifying party had executed this Memorandum or a counterpart thereof. By execution or ratification of this Memorandum, such party hereby consents to its ratification and adoption by any party who acquires or may acquire any interest in the Contract Area.

12.0  This Memorandum may be executed or ratified in one or more counterparts and all of the executed or ratified counterparts shall together constitute one instrument. For purposes of recording in each of the records described in Paragraph 6 above, duplicate copies of this Memorandum with individual signature pages attached thereto may be filed of record, one copy of each to be indexed in the name of the Operator, as grantor, and one copy of each to be indexed in the name of each Non-Operating Party, as grantor, and duplicate copies of this Memorandum with individual signature pages attached thereto may be filed in the appropriate Uniform Commercial Code records, one filing for the Operator, as secured party, and another filing for the Non-Operating Party, as secured parties. The respective addresses of the Operator, as both secured party and debtor, and the Non-Operating Party, as both debtors and secured parties, at which information with respect to the security interests created in the Operating Agreement may be obtained, are set forth in Paragraph 1.0 of this Memorandum.

13.0  The Operator and the Non-Operating Party hereby agree to execute, acknowledge and deliver or cause to be executed, acknowledged and delivered, any instrument or take any action necessary or appropriate to effectuate the terms of the Operating Agreement or any Exhibit, instrument, certificate or other document pursuant thereto.

14.0  Whenever the context requires, reference herein made to the single number shall be understood to include the plural, and the plural shall likewise be understood to include the singular, and specific enumeration shall not exclude the general, but shall be construed as cumulative.

EXECUTED on the dates set forth below each signature but effective as of the effective date of the Operating Agreement referred to in Paragraph 2.0 above.

**OPERATOR:**

WITNESSES:

*Kay Bonura*
Printed Name of Witness: Kay Bonura

*Alisha Viger*
Printed Name of Witness: Alisha Viger

LLOG Exploration Offshore, Inc.

By: *[signature]*
Printed Name: Gerald P. Whitman
Title: Vice President - Land
Date: July 15, 2009

**ACKNOWLEDGMENT**

**OPERATOR:**

STATE OF LOUISIANA
PARISH OF ST. TAMMANY

On this 15 day of July 2009, before me, appeared **Gerald P. Whitman**, to me personally known, who, being by me duly sworn, did say that he is the Vice President - Land of **LLOG Exploration Offshore, Inc.**, a Louisiana corporation, and that the foregoing instrument was signed on behalf of the corporation by authority of its Board of Directors and that he acknowledged the instrument to be the free act and deed of the corporation.

*Judy Reimel*
NOTARY PUBLIC

Judy Reimel
Notary Public - St. Tammany Parish
My Commission Issued for Life
Notary No. 60007

9

**WITNESSES:**

_____
Printed Name of Witness: Ed Stengel

_____
Printed Name of Witness: J.A. Sansbury

**NON-OPERATING PARTY:**

Davis Offshore, L.P.

By: _____
Printed Name: George Canjar
Title: Cheif Operating Officer
Date:

## ACKNOWLEDGMENT
## NON-OPERATING PARTY:

**STATE OF TEXAS**
**COUNTY OF HARRIS**

On this 21st day of July, 2009, before me, appeared George Canjar to me personally known, who, being by me duly sworn, did say that he is the Chief Operating Officer Davis Offshore, L.P., a Limited Partnership, and that the foregoing instrument was signed on behalf of the partnership and that ____he____ acknowledged the instrument to be the free act and deed of the partnership.

JEANETTE MCKINZIE
Notary Public, State of Texas
My Commission Expires
July 07, 2013

_____
Notary Public

10

## ATTACHMENT "1"

Attached to and made a part of that certain
Memorandum of Operating Agreement and Financing Statement (Louisiana)
dated effective December 12, 2002 by and between
LLOG Exploration Offshore, Inc. and Davis Offshore, L.P.

### CONTRACT AREA, WORKING INTEREST OF THE PARTIES, OPERATOR AND REPRESENTATIVES

I.  **Contract Area**:

Oil and Gas Lease dated effective June 1, 2002, bearing Serial No. OCS-G 24154, between the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, LLOG Exploration Offshore, Inc. and Davis Offshore, L.P., as Lessee, covering and affecting lands described as Green Canyon, Block 157, Official Protraction Diagram, NG 15-03.

Oil and Gas Lease dated effective May 1, 1990, bearing Serial No. OCS-G 12210, between the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, and BP Exploration Inc., as Lessee, covering and affecting lands described as Garden Banks, Block 201, OCS Official Protraction Diagram, NG 15-3, insofar and only insofar as lease covers the northeast quarter (NE/4) from the surface down to 17,000 feet true vertical depth subsea.

II.  **Working Interests of the Parties**:

LLOG Exploration Offshore, Inc.   85%
Davis Offshore, L.P.              15%

III. **Operator**:   LLOG Exploration Offshore, Inc.

IV. **Addresses/Names of Representatives**:

LLOG Exploration Offshore, Inc.
11700 Katy Freeway, Suite 295
Houston, Texas 77079
Attn: Mr. Michael Altobelli
Telephone: (281) 752-1105
Facsimile: (281) 752-1190

Davis Offshore, L.P.
1360 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Attn: Mr. Ed Stengel
Telephone: (713) 439-6774
Facsimile: (713) 961-4573

**End of Exhibit**

11

# CORRECTION TO MEMORANDUM OF OPERATING AGREEMENT AND FINANCING STATEMENT
## (LOUISIANA)

This Correction to Memorandum of Operating Agreement and Financing Statement (Louisiana) entered into by and between LLOG Exploration Offshore, Inc. as Operator, and Davis Offshore, L.P., as Non-Operating Party:

### WITNESSETH: THAT,

WHEREAS, Operator and Non-Operating Party, entered into that certain Memorandum of Operating Agreement and Financing Statement (Louisiana) effective December 12, 2002 and recorded in Conveyance Book No. 2161, Page 634, File # 1328132, in Mortgage Book No. 2201, Page 579, File # 1328132 and in Uniform Commercial Code Book under File # 1328132 of the records of Terrebonne Parish, Louisiana; and

WHEREAS, it has come to the attention of Operator and Non-Operating Party that an error exists in the Contract Area of Attachment "1" to said Memorandum; and

WHEREAS, Operator and Non-Operating Party mutually desire to correct this error to the extent delineated hereinafter and only to such extent.

NOW, THEREFORE, Operator and Non-Operating Party hereby agree to correct said Attachment "1" to Memorandum of Operating Agreement and Financing Statement as follows:

THAT the entire Contract Area of Attachment "1" and reading:

I.  **Contract Area:**

Oil and Gas Lease dated effective June 1, 2002, bearing Serial No. OCS-G 24154, between the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, LLOG Exploration Offshore, Inc. and Davis Offshore, L.P., as Lessee, covering and affecting lands described as Green Canyon, Block 157, Official Protraction Diagram, NG 15-03.

Oil and Gas Lease dated effective May 1, 1990, bearing Serial No. OCS-G 12210, between the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, and BP Exploration Inc., as Lessee, covering and affecting lands described as **Garden Banks**, Block 201, OCS Official Protraction Diagram, NG 15-3, insofar and only insofar as lease covers the northeast quarter (NE/4) from the surface down to 17,000 feet true vertical depth subsea.

1

shall be and is hereby corrected to read:

I. **Contract Area:**

Oil and Gas Lease dated effective June 1, 2002, bearing Serial No. OCS-G 24154, between the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, LLOG Exploration Offshore, Inc. and Davis Offshore, L.P., as Lessee, covering and affecting lands described as Green Canyon, Block 157, Official Protraction Diagram, NG 15-03.

Oil and Gas Lease dated effective May 1, 1990, bearing Serial No. OCS-G 12210, between the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, and BP Exploration Inc., as Lessee, covering and affecting lands described as **Green Canyon**, Block 201, OCS Official Protraction Diagram, NG 15-3, insofar and only insofar as lease covers the northeast quarter (NE/4) from the surface down to 17,000 feet true vertical depth subsea.

Further, Operator and Non-Operating Party agree that, except as herein corrected, the herein above Memorandum of Operating Agreement and Financing Statement shall remain unchanged and as originally written. Insofar as may be necessary, Operator and Non-Operating Party acknowledge said Memorandum, as corrected, is presently a valid, subsisting, and continuing Memorandum of Operating Agreement and Financing Statement.

**OPERATOR:**

WITNESSES:

**LLOG Exploration Offshore, Inc.**

Printed Name of Witness: Kay Bonura

By: _(signature)_
Printed Name: Gerald P. Whitman
Title: Vice President - Land
Date: 9/9/09

Printed Name of Witness: Alisha Viger

**NON-OPERATING PARTY:**

WITNESSES:

Davis Offshore, L.P.

Printed Name of Witness: Ed Tengel(?)

By: _(signature)_
Printed Name: Michael S. Reddin
Title: President and Chief Executive Officer
Date: September 1, 2009

Printed Name of Witness: J.A. Somsbury(?)

2

## ACKNOWLEDGMENT

**OPERATOR:**

**STATE OF LOUISIANA**

**PARISH OF ST. TAMMANY**

On this 9th day of September 2009, before me, appeared **Gerald P. Whitman**, to me personally known, who, being by me duly sworn, did say that he is the Vice President - Land of **LLOG Exploration Offshore, Inc.**, a Louisiana corporation, and that the foregoing instrument was signed on behalf of the corporation by authority of its Board of Directors and that he acknowledged the instrument to be the free act and deed of the corporation.

Judy Reimel
Notary Public - St. Tammany Parish
My Commission Issued for Life
Notary No. 60007

_____
NOTARY PUBLIC

## ACKNOWLEDGMENT

**NON-OPERATING PARTY:**

**STATE OF TEXAS**

**COUNTY OF HARRIS**

On this 1st day of September, 2009, before me, appeared Michael S. Reddin, to me personally known, who, bein[g by] me duly sworn, did say that he is the President and Chief Executive Officer of **Davis Offshore, L.P.**, a Lim[ited] Partnership, and that the foregoing instrument was signed on behalf of the partnership and that he acknowledge[d the] instrument to be the free act and deed of the partnership.

JEANETTE MCKINZIE
Notary Public, State of Texas
My Commission Expires
July 07, 2013

_____
Notary Public

3