IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY LLC | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | Adversary No. 20-03497 |
| | § | |
| VALERO MARKETING AND | § | |
| SUPPLY COMPANY | § | |
|     Defendant. | § | |
| | § | Related to bankruptcy case no 20-33948 |
| | § | pending before the US Bankruptcy Court, |
| | § | Southern District of Texas. |

**PLAINTIFF FIELDWOOD ENERGY LLC'S
RESPONSE TO VALERO MARKETING AND SUPPLY COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**
*[Relates to Docket No. 17]*

Plaintiff/Counter-Defendant Fieldwood Energy LLC ("Fieldwood") files its Response to Valero Marketing and Supply Company's ("Valero") Motion for Partial Summary Judgment and would show the Court as follows:

I.    **SUMMARY**

1.    Valero's summary judgment fails for three reasons. First, Fieldwood's failure to deliver crude oil in May 2020 was not a breach of the Purchase Contract. Without a breach, Valero can have no damages. Second, even if Fieldwood's non-delivery was a breach, Valero has not suffered any compensable loss. Valero admits that it did not cover or otherwise seek to mitigate its damages and Valero provides no evidence that the non-delivery caused any loss. While Texas Business & Commerce Code §2.713 provides a measure of damages for a seller's non-delivery of goods, it also requires that any

damages be offset by expenses saved. Valero saved the cost of purchasing the May 2020 crude oil and thus, suffered no loss. Third, Texas law and the Texas Business & Commerce Code, applying the Uniform Commercial Code,[1] do not permit a party to effectively do nothing and seek windfall damages of over $3,000,000 as Valero is seeking in this case.

2.      Accordingly, the Court should deny Valero's motion for partial summary judgment.

## II.      FACTUAL BACKGROUND[2]

3.      Fieldwood, an upstream oil and gas operator and producer, and Valero, a refiner and marketer of petroleum products, entered into a Purchase Contract dated June 7, 2018, for the sale of crude oil. Fieldwood agreed to sell and deliver oil from designated offshore fields to a designated pipeline operated by Valero. *See* Exhibit A-1 at p. 2. The Purchase Contract is an "evergreen" contract, meaning that the contract remains in effect until either party terminates with 30 days written notice. Ex. A-1 at p. 1.

4.      In practice, each month Fieldwood would inform Valero of the estimated crude oil volume it planned to deliver the following month. *See* Ex. A, ¶6. The actual amount of crude oil delivered could differ from the estimate depending on production issues. *Id.*

5.      The Quantity section in the Purchase Contract provides:

---

[1] Texas Business and Commerce Code contains the Texas version of the Uniform Commercial Code. *See* Tex. Bus. & Com. Code Ann. §§ 1.101-11.108 (Vernon 2009); *see also*, Tex. Bus. & Com. Code Ann. § 1.101 ("(a) This title may be cited as the Uniform Commercial Code.")

[2] Fieldwood has presented the majority of the factual background in its Motion for Partial Summary Judgment [Dkt. No. 15] and incorporates by reference the Statement of Undisputed Facts as well as the Exhibits to that motion.

```
QUANTITY
    620,000.000 Barrel 60°F
APPROXIMATELY 10,000 BARRELS PER DAY.

TOLERANCE:  PER ACTUAL PRODUCTION ABOUT 49.5 PERCENT OF NOBLE'S SHARE (BIG
BEND/DANTZLER).
```

Exhibit A-1 at p. 2.[3]

6.      For example, in April 2020, Fieldwood delivered 195,000 barrels of oil to Valero: an average of 6,500 barrels per day.  Exhibit A ¶9; Exhibit A-2. Valero accepted these daily volumes and made no complaint that Fieldwood did not deliver 10,000 barrels per day for April 2020. Exhibit A, ¶9.

7.      In April 2020, amid the global pandemic caused by the SARS-CoV-2 virus, global demand for crude oil was plummeting as did the price of crude.[4] Because it did not make economic sense to continue production, Fieldwood decided to shut in the well associated with the Big Bend/Dantzler fields.  Exhibit A, ¶12. In April 2020, Fieldwood notified Valero that it would not deliver any oil in May 2020.  Id.

8.      After notifying Valero that it would not deliver oil to Valero in May 2020, Fieldwood later, on April 29, 2020, sent Valero an official notice terminating the Purchase Contract effective May 30, 2020, pursuant to the "Term" section of the Purchase Contract. *See* Exhibit A-1 at p. 1.

---

[3] As set forth in Exhibit A,¶3, Noble was Fieldwood's predecessor in interest; thus, Noble's 49.5% share is now Fieldwood's 49.5% share.

[4] *See* Kevin M. Camp, David Mead, Stephen B. Reed, Christopher Sitter, and Derek Wasilewski, *From the barrel to the pump: the impact of the COVID-19 pandemic on prices for petroleum products,* Monthly Labor Review, U.S. Bureau of Labor Statistics, October 2020, https://doi.org/10.21916/mlr.2020.24.

9.      On May 15, 2020, Fieldwood sent Valero Invoice No. FW-70-042020 in the amount of $3,090564.29 for the April 2020 deliveries. *See* Exhibit A-2. Payment was due from Valero on or before May 20, 2020. *Id*.

10.      Valero does not contest that it owed $3,090,564.29 for the April 2020 delivery of 195,000 barrels crude oil. (Dkt. No. 4 ¶9; Dkt. No. 17 ¶3).

11.      Rather than pay $3,090,564.20 for the April 2020 oil, Valero paid only $988.020.29, leaving $2,102,544.00 unpaid. (Dkt. No. 4 ¶9; Dkt. No. 17, C. ¶ 1).

12.      Valero admits that it did not pay this amount and did not exercise its cover rights by purchasing oil from alternative sources for May 2020. (Dkt. No. 17, D. ¶ 2).

13.      Through its Counterclaim, Valero seeks additional damages of $1,016,056.00 on account of Fieldwood's failure to deliver crude oil in May 2020. (Dkt. No. 4, p. 9, ¶13-14; Dkt. No. 17, C. ¶ 1).[5]

## III.      EVIDENCE IN SUPPORT OF RESPONSE

Exhibit A: Declaration of Jim Brysch

Exhibit A-1: Purchase Contract dated June 7, 2018

Exhibit A-2: Invoice No. FW-70-042020

## IV.      ARGUMENTS AND AUTHORITIES

### A.  Summary Judgment Standard

---

[5] By agreement of the parties, the current summary judgment proceeding is not addressing the calculation of Valero's damages, only whether Valero is entitled to recover any damages.  Should this Court determine that Valero is entitled to recover damages, the parties have reserved the right to conduct discovery related to Valero's calculation of damages.  Thus, Fieldwood has specifically reserved the right to contest Valero's damage calculation, if necessary, depending on the outcome of the instant summary judgment proceedings.

14. A counter-plaintiff [Valero] moving for summary judgment must satisfy its burden by submitting summary-judgment proof that establishes all elements of its claim as a matter of law. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).

15. When reviewing the summary judgment record, the Court should follow the well-established rules: (1) the movant [Valero] for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, (2) evidence favorable to the nonmovant [Fieldwood] will be taken as true, and (3) every reasonable inference must be indulged in favor of the nonmovant [Fieldwood] resolving any doubts in its favor. *San Pedro,* 79 F.3d at 1068.

16. Valero must prove the following essential elements to sustain a claim for breach of contract against Fieldwood: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[6] *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist] 2001, no pet.); see also *Smith Int'l, Inc. v. Egle Grp., LLC,* 490 F.3d 380, 387 (5th Cir.2007).

**B. Fieldwood did not breach the Purchase Contract.**

17. The Court should deny Valero's motion for partial summary judgment because Valero's motion fails to establish that, as a matter of law Fieldwood breached the Purchase Contract and that Valero sustained damages by reason of the alleged breach.

---

As thoroughly briefed in Fieldwood's Motion for Partial Summary Judgment (Dkt. No. 15), Fieldwood was not obligated to deliver crude oil in the month of May 2020 under the plain language of the Purchase Contract.

18.     The Purchase Contract required Fieldwood to deliver approximately 10,000 barrels of oil a day each month. Exhibit A-1 at p. 2. This quantity is limited by a Tolerance of "per actual production" from the Big Bend/Dantzler fields. *Id*. There was no production from the Big Bend/Dantzler fields in May 2020, and Fieldwood had no obligation to deliver oil under the Purchase Contract in May 2020. Exhibit A, ¶12.

19.     In Valero's summary judgment motion, Valero makes a blanket assertion that because Fieldwood "failed to deliver any crude oil in May of 2020 … Valero is entitled to damages under the UCC." (Dkt. No. 17 at D).

20.     Without providing evidence of breach, Valero fails to satisfy its burden of establishing that Fieldwood breached the Purchase Contract, a required element to support a breach of contract summary judgment. Accordingly, Valero's motion for partial summary judgment must be denied.

**C. Fieldwood's Non-delivery in May 2020 did not cause Valero damages.**

21.     In the unlikely event that the Court finds Fieldwood breached the Purchase Contract, Valero's failure to prove it was damaged by Fieldwood's May 2020 non-delivery of crude oil precludes its summary judgment. In fact, Valero has not even alleged that it was injured by Fieldwood's non-delivery and entirely glosses over the damages requirement for a breach of contract cause of action.

22.     Valero would have this Court believe that, because the section 2.713 of the Texas Business and Commerce Code provides for a **measure of damages** that allows a buyer to recover damages without obtaining cover, Valero should be entitled to a windfall. Valero ignores the basic tenet that the purpose of damages is to compensate the aggrieved party for damages sustained or lost.

23.     Pursuant to Texas law, the goal in assessing damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Parkway Dental Associates, P.A. v. Ho & Huang Properties, L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Further, Tex. Bus. & Com. Code § 1.305 provides that remedies provided in the Code must be administered so the aggrieved party may be put in as good a position as if the other party had fully performed but not more.[7] Specifically, a comment to § 1.305 states that this section is intended to make it clear that compensatory damages **are limited to compensation**. Tex. Bus. & Com. Code Ann. § 1.305, Comment 1 (Vernon 2009) (emphasis added).

24.     Since Valero does not allege it sustained actual economic damages nor is the evidence factually or legally sufficient to establish Fieldwood's non-delivery resulted in damages to Valero, Valero is not entitled to any damages and its motion should be denied.

---

[7] Tex. Bus. & Com. Code Ann. § 1.305, Comment 1 ("Subsection (a) is intended to effect three propositions. The first is to negate the possibility of unduly narrow or technical interpretation of remedial provisions by providing that the remedies in the Uniform Commercial Code are to be liberally administered to the end stated in this section. The second is to make it clear that compensatory damages are limited to compensation. They do not include consequential or special damages, or penal damages; and the Uniform Commercial Code elsewhere makes it clear that damages must be minimized.")

**i.** **Even if Valero had successfully alleged its entitlement to damages, any damages would be $0 because Fieldwood's non-delivery of the May crude oil saved Valero expenses.**

25.      In support of its contention that it is entitled to damages, Valero relies wholly on section 2.713 of the Texas Business and Commerce Code. Section 2.713 provides that, upon finding of liability by a seller, an aggrieved buyer is entitled to damages measuring the "difference between the market price at the time when the buyer learned of the breach and the contract price … but less expenses saved in consequence of the sellers breach." Tex. Bus. & Com. Code § 2.713. In its summary judgment motion, Valero fails to acknowledge the clause "less expenses saved in consequence of the seller's breach." *Id*.

26.      It is undisputed that Fieldwood did not deliver crude oil in May 2020. It is also undisputed that Valero never purchased replacement crude oil for delivery in May 2020, and thus did not expend any funds as a result of Fieldwood's non-delivery. If, as Valero contends, it would have acquired approximately 10,000 barrels a day for the month of May 2020, it would have paid millions of dollars for crude oil during an unprecedented collapse in oil demand. (Dkt. No. 17, C. ¶ 2). Valero saved all expenses by not being required to take delivery of the crude oil in May 2020. As such, Valero is not entitled to damages under section 2.713, and its motion for partial summary judgment should be denied.

**ii.** **Valero should not be unjustly rewarded for failure to mitigate damages.**

27.      The long-standing law of this state requires a claimant to mitigate damages if the claimant can do so with "trifling expense or with reasonable exertions". *Warner*

*Bros. Entm't, Inc. v. Jones,* 611 S.W.3d 1, 18 (Tex. 2020), reh'g denied (Oct. 2, 2020). The mitigation-of-damages rule prevents a party from recovering damages that result from a breach of contract that the non-breaching party could avoid by reasonable efforts. *Walker v. Salt Flat Water Co.,* 128 Tex. 140, 96 S.W.2d 231, 232 (1936).

28.     While it is true that buyers can recover damages for non-delivery under sections 2.712 & 2.713 without effecting cover since covering is not always possible or reasonable, these sections must be read alongside other sections of the Code that limit an aggrieved party's damages to actual loss. Tex. Bus. & Com. Code § 1.305. Furthermore, the Texas Business and Commerce Code imposes an obligation of good faith on the parties:

> Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement.

Tex. Bus. & Com. Code § 1.304.

29.     Valero has failed to show as a matter of law that it exercised good faith in failing to buy substitution crude oil or even attempting to mitigate any losses. In April 2020, with the demand and price for crude oil plummeting, Fieldwood informed Valero that it would not be delivering any crude oil in May 2020. Exhibit A, ¶ 12. Rather than acquire crude oil as replacement, there is no evidence that Valero took any actions to acquire replacement crude. Rather, Valero viewed the non-delivery as an opportunity to not pay Fieldwood over $2,000,000 for crude oil delivered in April 2020. *See* Dkt. No. 4 ¶ 9. And now, Valero seeks an additional $1,016,056 in alleged damages for doing nothing. *See* Dkt. No. 4, p. 9 ¶14; Dkt. No. 17, C. ¶1. Valero made no effort to avoid its "damages"

9

and paid no expenses in trying to cover. Under both the Uniform Commercial Code and Texas law, Valero should not be rewarded for its failure to mitigate any alleged damages. Accordingly, Valero's motion for partial summary judgment should be denied.

### PRAYER

For the foregoing reasons, Plaintiff Fieldwood Energy LLC prays that the Court deny Defendant Valero Marketing and Supply Company's motion for partial summary judgment on its claim for breach of contract, and grant Fieldwood all other relief to which it shows itself entitled.

Respectfully submitted,

BUCK KEENAN LLP

By:  */s/Robert L. Paddock*
ROBERT L. PADDOCK
State Bar No. 24002723
E. F. MANO DEAYALA
State Bar No. 00783946
HELEN H. MCLAUGHLIN
State Bar No. 24087706
2229 San Felipe, Suite 1000
Houston, Texas 77019
(713) 225-4500
(713) 225-3719 - Telecopier
rpaddock@buckkeenan.com
deayala@buckkeenan.com
hmclaughlin@buckkeenan.com

ATTORNEYS FOR PLAINTIFF
FIELDWOOD ENERGY LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record via CM/ECF filing and in compliance with the Federal Rules of Civil Procedure, on the 26th day of March 2021.

<u>/s/Robert L. Paddock                </u>
ROBERT L. PADDOCK

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY LLC | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Adversary No. 20-03497 |
| | § | |
| VALERO MARKETING AND | § | |
| SUPPLY COMPANY | § | |
| Defendant. | § | |
| | § | Related to bankruptcy case no 20-33948 |
| | § | pending before the US Bankruptcy Court, |
| | § | Southern District of Texas. |

## DECLARATION OF JAMES P. BRYSCH

My name is James P. Brysch, my title is Vice President – Marketing for Fieldwood Energy LLC. I am over 18 years old and qualified to make this Declaration. I am making this declaration in accordance with 28 U.S.C. §1746. I have personal knowledge of the statements made herein and they are true and correct:

1.      Attached as Exhibit A-1 to this Affidavit is the Purchase Contract between Fieldwood Energy LLC ("Fieldwood") and Valero Marketing and Supply Company ("Valero"). Valero drafted the Purchase Contract. The Purchase Contract involved the sale of crude oil from Fieldwood to Valero.

2.      The Purchase Contract's "Quantity", located on page 2, provides:

QUANTITY
    620,000.000 Barrel 60°F
APPROXIMATELY 10,000 BARRELS PER DAY.

TOLERANCE:  PER ACTUAL PRODUCTION ABOUT 49.5 PERCENT OF NOBLE'S SHARE (BIG BEND/DANTZLER).

3.      The reference to "Noble's Share" is a misnomer inserted by Valero from a previous, and almost identical, purchase contract between Valero and Noble Energy, Inc ("Noble"). In or around early 2018, Fieldwood acquired an interest in the Big Bend and Dantzler offshore oil fields from Noble, and Fieldwood began selling oil to Valero in July 2018. While Fieldwood did not correct this statement, it was clear to Fieldwood that this statement referred to the interest it acquired from Noble, Fieldwood's predecessor-in-

interest. Furthermore, the quantity of "620,000" Barrel is most likely a typographical error that should have read "310,000 Barrel" to reflect the approximate 10,000 barrels per day and per month quantity.

4.      "Big Bend/Dantzler" is a reference to two fields located offshore in the Gulf of Mexico that are produced from a single production facility. Fieldwood, as assignee from Noble, owns an interest in the Big Bend/Dantzler fields. Thus, under the Purchase Contract, Fieldwood was delivering oil produced from the Big Bend and Dantzler fields.

5.      The Purchase Contract is not a guaranteed supply contract, but merely an agreement by Fieldwood to deliver oil from the designated offshore fields.

6.      Despite the Purchase Contract's Quantity specification, in practice Fieldwood would inform Valero in advance each month the volume of oil it planned to deliver and then deliver that volume, adjusted during the delivery month for any material changes in the actual production.

7.      The Purchase Contract is an evergreen contract, and remains in effect until either party terminates with 30 days advance written notice.

8.      In the four months prior to July 2018 (the first month of sales to Valero under the Purchase Contract), the daily average of Fieldwood's owned and controlled share of production from the Big Bend and Dantzler fields equated to approximately 9,987 barrels per day. Thus, upon entering into the Purchase Contract, Fieldwood was committing to deliver all of its share of the daily barrels available for sale from the Big Bend and Dantzler fields. From the date of entry of the Purchase Contract, Fieldwood delivered all of its share of production sold from the Big Bend/Dantzler fields to Valero.

9.      In April 2020, Fieldwood delivered 195,000 barrels of oil to Valero under the Purchase Contract. This was approximately 6,500 barrels of oil a day. Valero took delivery of the oil without objection. The "Payment Terms" located on page 2 of the Purchase Contract provides:

PAYMENT TERMS:
PAYMENT SHALL BE MADE ON THE 20TH OF THE MONTH FOLLOWING DELIVERY BY WIRE TRANSFER OF IMMEDIATELY AVAILABLE FUNDS WITHOUT DISCOUNT, DEDUCTION, WITHHOLDING, OFFSET OR COUNTERCLAIM IN U.S. DOLLARS ON OR BEFORE THE PAYMENT DUE DATE TO THE BANK AND ACCOUNT DESIGNATED BY SELLER, AGAINST PRESENTATION TO BUYER BY SELLER OF ORIGINAL HARD COPY, TELECOPY, OR TELEX INVOICE TOGETHER WITH SUPPORTING DOCUMENTATION EVIDENCING BOOK, STOCK, INVENTORY TRANSFER OR PIPELINE METER TICKETS.

10.      On May 15, 2020, Fieldwood invoiced Valero $3,090,564.29 for the 195,000 barrels of oil. A true and correct copy of Invoice No. FW-70-042020 that was sent to Valero

is attached to this affidavit as Exhibit A-2. Payment was due to Fieldwood on May 20, 2020.

11.     In April 2020, as the COVID-19 pandemic was surging, foreign oil producers were increasing production, storage capacity was dwindling and lock down orders were put into effect across the world, the demand for crude oil, along with the oil price, plummeted.

12.     Considering those market conditions existing at the time, rather than being exposed to the likelihood of producing and selling its May 2020 oil at a loss, Fieldwood made the rational economic decision to suspend the vast majority of its company-wide production, including production from the Big Bend/Dantzler fields.  Accordingly, Fieldwood informed Valero in late April 2020 that it would not have any volumes to deliver under the Purchase Contract.  Fieldwood's Big Bend/Dantzler fields did not produce any volumes of crude oil in the month of May 2020.

13.     On April 27, 2020, Fieldwood sent Valero written notice that Fieldwood was shutting in production from the Big Bend/Dantzler fields due to COVID-19 and would not be delivering oil for May 2020.

14.     On April 29, 2020 Fieldwood sent notice to Valero that it was terminating the Purchase Contract, effective May 30, 2020.

15.     On May 15, 2020, Fieldwood sent Valero Invoice No. FW-70-042020 in the amount of $3,090,564.29 for the April 2020 deliveries. See Exhibit A-2. Payment was due on or before May 20, 2020. Valero only paid Fieldwood $988,020.29 leaving $2,102,544.00 unpaid. Valero has failed to pay Fieldwood the outstanding $2,102,544.00 to present day.

16.     The Purchase Contract was entered into based on the basic assumption that a worldwide coronavirus pandemic would not occur.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 9, 2021.

James P. Brysch

# Exhibit A-1



# VALERO
# MARKETING AND SUPPLY COMPANY

One Valero Way, San Antonio, TX 78249-1616
P.O. Box 696000, San Antonio, TX 78269-6000

Purchase From: _____          (Printed on 06/13/2018)

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S, SUITE 12**
**HOUSTON TX  77042**

Contact: JOHNNY DOBECKA
Fax:    713-969-1099

**Purchase Contract**

Contract number/date
**4200144305 / 06/07/2018**

Contract Type
**Evergreen**

Vendor No
**525116**

Validity Period
**07/01/2018 to 12/31/9999**

Valero Trader
**JORGE PARRA**

Telephone
**210-345-2273**

Contract Administration
**KRISTIN KIOLBASSA**

PLEASE NOTE THAT VALERO MARKETING AND SUPPLY COMPANY'S ("VALERO") CONTRACT
ADMINISTRATION FAX NUMBER IS 001-210-345-2585. ALL CONTRACTUAL CORRESPONDENCE FOR
THIS DEAL MUST BE DIRECTED TO THIS FAX NUMBER. VALERO MARKETING AND SUPPLY COMPANY
WILL NOT BE DEEMED TO HAVE NOTICE OF CORRESPONDENCE SENT TO ANY OTHER NUMBER, AND
WILL NOT BE RESPONSIBLE FOR ANY LOSSES, COSTS, LIABILITIES OR DELAYS RESULTING FROM
CORRESPONDENCE SENT TO ANY OTHER NUMBER.

IN ACCORDANCE WITH THE AGREEMENT ON 06/07/2018 BETWEEN JORGE PARRA OF VALERO
MARKETING AND SUPPLY COMPANY AND JOHNNY DOBECKA OF FIELDWOOD ENERGY LLC, VALERO IS
PLEASED TO CONFIRM THE FOLLOWING SALES CONTRACT.

TERM:   JULY 1, 2018 AND FORWARD, CONTINUING ON A MONTH TO MONTH BASIS UNTIL CANCELLED
BY EITHER PARTY PROVIDING THIRTY (30) DAYS PRIOR WRITTEN NOTICE OF CANCELLATION.

PLEASE REFER TO VALERO'S CONTRACT NUMBER ON ALL CORRESPONDENCE.

**FIELDWOOD ENERGY LLC**
**HOUSTON TX 77042**

Contract number/date
4200144305 / 06/07/2018

Page
2 of  5

***** ITEM 00010 *****
PRODUCT
THUNDERHORSE

SPECIFICATIONS
MEETING CURRENT QUALITY SPECIFICATIONS FOR THUNDERHORSE CRUDE OIL

QUANTITY
  620,000.000 Barrel 60°F
APPROXIMATELY 10,000 BARRELS PER DAY.

TOLERANCE:  PER ACTUAL PRODUCTION ABOUT 49.5 PERCENT OF NOBLE'S SHARE (BIG
BEND/DANTZLER).

DELIVERY
INTO BUYER'S NOMINATED PIPELINE EX-CLOVELLY CAVERN AT CLOVELLY, LOUISIANA, VIA
MUTUALLY AGREEABLE SCHEDULING OR VIA ACCEPTABLE BOOK, STOCK, OR INVENTORY TRANSFER.

PRICE
THE ARITHMETIC AVERAGE OF THE NYMEX DAILY SETTLEMENT PRICES REPORTED PER BARREL FOR
WTI (TRADING DAYS ONLY) FUTURES CONTRACTS FOR THE MONTH DURING WHICH THE PRODUCT IS
DELIVERED, PLUS

THE ARGUS WTI DIFF TO CMA NYMEX (WEIGHTED AVERAGE) PER BARREL FOR THE TRADE MONTH,
PLUS

THE ARGUS THUNDERHORSE QUOTE DIFF TO WTI (WEIGHTED AVERAGE) PER BARREL FOR THE TRADE
MONTH

---

**PAYMENT TERMS:**
PAYMENT SHALL BE MADE ON THE 20TH OF THE MONTH FOLLOWING DELIVERY BY WIRE TRANSFER OF
IMMEDIATELY AVAILABLE FUNDS WITHOUT DISCOUNT, DEDUCTION, WITHHOLDING, OFFSET OR
COUNTERCLAIM IN U.S. DOLLARS ON OR BEFORE THE PAYMENT DUE DATE TO THE BANK AND
ACCOUNT DESIGNATED BY SELLER, AGAINST PRESENTATION TO BUYER BY SELLER OF ORIGINAL
HARD COPY, TELECOPY, OR TELEX INVOICE TOGETHER WITH SUPPORTING DOCUMENTATION
EVIDENCING BOOK, STOCK, INVENTORY TRANSFER OR PIPELINE METER TICKETS.

IF ANY PAYMENT UNDER THIS AGREEMENT FALLS DUE ON A SATURDAY OR A NON- MONDAY U.S.
BANK HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE FIRST BANKING DAY PRIOR
THERETO.  PAYMENTS FALLING DUE ON A SUNDAY OR A MONDAY U.S. BANK HOLIDAY IN NEW YORK
SHOULD BE MADE ON THE NEXT SUCCEEDING BANKING DAY.

IN THE EVENT OF A BOOK TRANSFER, FOR PARTIAL OR FOR FULL CONTRACTUAL VOLUME, OIL
COMBINATIONS INC. OR OIL DISTRIBUTION SERVICES'S DETERMINATION STATEMENT AND INVOICE

To: 713-969-1099     From: VALERO     Fax: 210-444-8500     Powered by KOFAX     at: JUN-13-2018-11:51   Doc: 729 Page: 003

**FIELDWOOD ENERGY LLC**
**HOUSTON TX 77042**

SHALL SERVE AS EVIDENCE OF THE BOOK TRANSFER.

IF APPLICABLE, NET-OUT INVOICES SHALL BE ACCORDING TO THE ESTABLISHED NET-OUT
AGREEMENT BETWEEN BUYER AND SELLER.

**CREDIT:**
OPEN CREDIT.

**TITLE AND RISK OF LOSS:**
EXCEPT AS OTHERWISE SPECIFIED IN THIS AGREEMENT, TITLE AND RISK OF LOSS SHALL PASS
FROM SELLER TO BUYER AT CLOVELLY, LA., AS FOLLOWS:
A.  WHEN DELIVERING ONTO OR RECEIVING OFF A VESSEL OR BARGE, AS THE
    PRODUCT PASSES THE PERMANENT INLET OR OUTLET FLANGE ON THE OUTBOARD
    END OF THE LAST VESSEL/BARGE-SUPPLIED REDUCER, FITTING, OR HOSE;
B.  WHEN DELIVERING INTO OR OUT OF A PIPELINE, AS THE PRODUCT
    RESPECTIVELY ENTERS OR LEAVES SUCH PIPELINE;
C.  WHEN DELIVERING INTO OR OUT OF A TRUCK, AS THE PRODUCT
    RESPECTIVELY ENTERS OR LEAVES SUCH TRUCK;
D.  WHEN DELIVERING INTO OR OUT OF A STORAGE TANK FACILITY, AS THE
    PRODUCT RESPECTIVELY ENTERS OR LEAVES THE INLET OR OUTLET FLANGE
    OF SUCH STORAGE TANK FACILITY;
E.  IN THE CASE OF A BOOK, IN-LINE, IN-TANK, INVENTORY OR STOCK
    TRANSFER, ON THE EFFECTIVE DATE OF THE RESPECTIVE TRANSFER.

**TAXES:**
SALES-RELATED TAXES ARE REIMBURSED BY BUYER IN ADDITION TO THE PURCHASE PRICE.  IF
ANY SALE OF PRODUCT PURSUANT TO THIS AGREEMENT SHALL BE SUBJECT TO SALES OR USE TAX,
EXCISE, GROSS RECEIPTS, OR OTHER TRANSACTION TAXES, FEES, LEVYS, LICENSE OR ANY
CHARGE IMPOSED BY A GOVERNMENTAL AUTHORITY WHICH SELLER IS OBLIGATED BY SUCH
GOVERNMENTAL AUTHORITY TO PAY, OR COLLECT AND REMIT, SUCH TAX SHALL BE BORNE BY THE
BUYER.  IT IS EXPRESSLY UNDERSTOOD THAT THE PRICE MUTUALLY AGREED TO BETWEEN SELLER
AND BUYER AS PROVIDED FOR HEREIN SHALL BE EXCLUSIVE OF SALES OR USE, EXCISE, GROSS
RECEIPTS OR OTHER TRANSACTION TAXES, FEES, LEVYS, LICENSE OR ANY CHARGE IMPOSED BY A
GOVERNMENTAL AUTHORITY INCLUDING APPLICABLE PENALTIES AND/OR INTEREST (REGARDLESS OF
WHEN, HOW, OR AGAINST WHICH PARTY SUCH TAX, PENALTY AND INTEREST IS IMPOSED) BY ANY
FEDERAL, STATE, OR LOCAL OR FOREIGN GOVERNMENT OR INSTRUMENTALITY THEREOF, UPON THE
SALE, TRANSFER OR DELIVERY OF ALL PRODUCT SOLD, TRANSFERRED OR DELIVERED BY SELLER
PURSUANT TO THIS AGREEMENT, OR UPON THE BUYER'S PURCHASE, POSSESSION, STORAGE, USE OR
CONSUMPTION THEREOF. IF PROPER EXEMPTION CERTIFICATES ARE NOT PROVIDED BY BUYER,
SELLER WILL BILL THE BUYER FOR APPLICABLE SALES, USE, EXCISE, GROSS RECEIPTS OR OTHER
TRANSACTION TAXES.  THIS PROVISION SHALL SURVIVE TERMINATION OF THIS AGREEMENT.

**NO SETOFF/NETTING:**
NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE TERMS AND CONDITIONS GOVERNING THIS
TRANSACTION, NEITHER PARTY HERETO SHALL HAVE THE RIGHT TO NET OR SET OFF ANY PAYMENTS
DUE FROM IT HEREUNDER AGAINST ANY PAYMENTS DUE OR ALLEGEDLY DUE TO IT OR ANY OF ITS
AFFILIATES FROM THE OTHER PARTY OR ITS AFFILIATES IN CONNECTION WITH ANY SEPARATE
TRANSACTION, UNLESS AND ONLY TO THE EXTENT THE PARTIES HAVE ENTERED INTO A SEPARATE

To: 713-969-1099    From: VALERO    Fax: 210-444-8500    KOFAX    at: JUN-13-2018-11:51    Doc: 729 Page: 004

**FIELDWOOD ENERGY LLC**
**HOUSTON TX 77042**

| Contract number/date | Page |
|---|---|
| 4200144305 / 06/07/2018 | 4 of 5 |

MASTER NETTING AGREEMENT OR SIMILAR AGREEMENT THAT EXPRESSLY PROVIDES FOR SUCH NETTING OF PAYMENTS.

**PAYMENT NETTING:**
PAYMENT NETTING SHALL APPLY ONLY TO AMOUNTS DUE WITH RESPECT TO U.S. DOMESTIC CRUDE OIL PRODUCTS AND SHALL NOT APPLY TO OTHER PRODUCT TRANSACTIONS.

**MEASUREMENT:**
QUANTITY DELIVERED HEREUNDER SHALL BE DETERMINED BY PIPELINE METER TICKET(S) ADJUSTED TO 60 DEGREES FAHRENHEIT OR DOCUMENTATION EVIDENCING BOOK, STOCK, OR INVENTORY TRANSFER.

**ASSIGNMENT:**
NEITHER PARTY SHALL ASSIGN THIS AGREEMENT OR ANY RIGHTS HEREUNDER WITHOUT THE WRITTEN CONSENT OF THE OTHER PARTY, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD.

**OTHER TERMS AND CONDITIONS:**
WHEN NOT IN CONFLICT WITH THE FOREGOING, THEN CONOCO INC.'S GENERAL TERMS AND CONDITIONS FOR DOMESTIC CRUDE OIL AGREEMENTS, DATED JANUARY 1,1993, WITH SHELL AMENDMENTS, SHALL APPLY AND ARE HEREBY INCORPORATED BY REFERENCE.

**TEXAS LAW AND JURISDICTION SHALL GOVERN THIS AGREEMENT.**

THESE SPECIFIC TERMS WILL GOVERN AND CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE PARTIES.  IT SUPERCEDES ANY PRIOR ORAL OR WRITTEN CORRESPONDENCE BETWEEN THE PARTIES INCLUDING ANY PREPARED AGREEMENT BY A BROKER.

**CONTACTS:**
```
   CONTRACTS:     KRISTIN KIOLBASSA   TEL: (210) 345-3465
                                      FAX: (210) 345-2585
                     E-MAIL: KRISTIN.KIOLBASSA@VALERO.COM

   CREDIT:     ROSA RAMIREZ    TEL: (210) 345-2743
                               FAX: (210) 345-2716

   INVOICE:     LARRY SMITH    TEL: (210) 345-2275
                               FAX: (210) 444-8513
```

WE ARE PLEASED TO HAVE CONCLUDED THIS CONTRACT WITH YOUR COMPANY.

IF YOU ARE NOT IN AGREEMENT WITH ANY OF THE ABOVE PROVISIONS, PLEASE ADVISE BY RETURN TELEX OR TELECOPY TO THE ATTENTION OF KRISTIN KIOLBASSA, CONTRACT ADMINISTRATION DEPT. (FAX # 210/345-2585).  IF NO RESPONSE IS RECEIVED WITHIN TWO BUSINESS DAYS OF RECEIPT, THE TERMS AND CONDITIONS HEREIN SHALL BE CONSIDERED BINDING ON BOTH PARTIES.

REGARDS,
VALERO MARKETING AND SUPPLY COMPANY

# Exhibit A-2

# Fieldwood Energy

**BILL TO:**                    **Valero Marketing & Supply Company**
                               **Attn:** Jill Trowbridge

| | | | | | |
|---|---|---|---|---|---|
| | **Email** | Jill.Trowbridge@valero.com | **INVOICE:** | FW-70-042020 | |
| | **Phone** | **(210) 345-5812** | **INVOICE DATE:** | 5/15/2020 | |
| | | | Purchaser Code: | Valero | |

| LEASE | Production Month | Shelf BARRELS | PRICE | | AMOUNT |
|---|---|---|---|---|---|
| **Thunderhawk** **MC 698/MC782** | 04/20 | 195,000 | $15.8490 | $ | 3,090,564.29 |
| | | | **Total Due Fieldwood Energy, LLC** | $ | 3,090,564.29 |

**TERMS:**
   PAY BY WIRE TRANSFER ON OR BEFORE THE 20TH OF THE MONTH
   PLEASE INDICATE THE INVOICE REFERENCE ON THE PAYMENT

**NEW BANKING INSTRUCTIONS**
 SEND PAYMENT TO:
Account Name: Fieldwood Engy/FWFinco-DBNYSTEFFS
ABA: ███████
SWIFT: ███████
Account #: ███████
Financial Institution Name: Deutsche Bank Trust Company Americas
Reference: Finco Invoice No.
Attention: Commercial Loans Division

**REVENUE ACCOUNTING CONTACT:**
Linda Cobb
Phone: (713) 969-1273
linda.cobb@fwellc.com

| Field | Purchaser | Posting Description | Cal Nym/TR Nym/ Crude Posting | AR P plus | Roll | Grade Diff | PLA | Grav. | Quality | Contract Trans./Adj | Purchaser Price | Seller |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| April 2020 Nymex (Excludes weekends & holidays) | $16.6990 | | | | | | | | | | | |
| April 2020 Nymex (includes weekends & holidays) | $18.2020 | | | | | | | | | | | |
| Nymex Roll (excludes weekends & holidays) | ($0.4175) | | | | | | | | | | | |
| Pplus | ($0.0711) | | **APRIL 2020** | | | | | | | | | |
| MISSISSIPPI CANYON 698 (BIG BEND) | VALERO | CAL NYM, NYM ROLL, AR THD/WTI | $16.6990 | $0.0000 | ($1.0690) | $0.2190 | $0.0000 | $0.0000 | $0.0000 | $0.0000 | $15.8490 | Fieldwood |
| MISSISSIPPI CANYON 782 (DANTZLER) | VALERO | CAL NYM, NYM ROLL, AR THD/WTI | $16.6990 | $0.0000 | ($1.0690) | $0.2190 | $0.0000 | $0.0000 | $0.0000 | $0.0000 | $15.8490 | Fieldwood |

**Endymion Pipeline**
Endymion Oil Pipeline Company, LLC

## Pipeline Carrier - Shipper Report for Apr 2020

TO: Fieldwood Energy

Run Date:   5/14/2020
Run Time:   4:31:41PM
Page 1 of 1

| Product | Location | Credit | Book Month | Net Volume | Weighted Average Gravity | Ticket Number | From/To Space |
|---|---|---|---|---|---|---|---|
| **Received From: Loop Inc** | | | | | | | |
| TH | Clovelly Storage | Fieldwood Energy | 04-20 | 201,508.62 | 34.0 | 218218198857D0 | |
| **Received From: Proteus Oil Pipeline Company, LLC** | | | | | | | |
| TH | South Pass 89E | Fieldwood Energy | 04-20 | 202,020.21 | 34.3 | 218218198855D0 | |
| Total Receipts Into: | Endymion Pipeline | | | 403,528.83 | | | |
| **Delivered Into: Loop Inc** | | | | | | | |
| TH | Clovelly Storage | Fieldwood Energy | 04-20 | 201,508.62 | 34.0 | 218218198856D0 | |
| **Delivered Into: Plains Pipeline, L.P.** | | | | | | | |
| TH | Clovelly to Cam P/L | Valero M&S | 04-20 | 195,000.00 | 34.3 | 218364198861D0 | |
| Total Deliveries From: | Endymion Pipeline | | | 396,508.62 | | | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY LLC | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | Adversary No. 20-03497 |
| | § | |
| VALERO MARKETING AND | § | |
| SUPPLY COMPANY | § | |
|     Defendant. | § | |
| | § | Related to bankruptcy case no 20-33948 |
| | § | pending before the US Bankruptcy Court, |
| | § | Southern District of Texas. |

## ORDER DENYING VALERO MARKETING AND SUPPLY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*[Relates to Docket No. 17]*

UPON CONSIDERATION of Valero Marketing and Supply Company's Motion for Partial Summary Judgment [Dkt. No. 17], the response, all other evidence on file, and arguments of counsel, if any, the Court finds that it is DENIED. Therefore, it is

ORDERED that Valero Marketing and Supply Company's Motion for Partial Summary Judgment is DENIED.

Signed: April _____, 2021

_____
The Honorable Marvin Isgur
United States Bankruptcy Judge