Bond No. RLB0001509

## PERFORMANCE BOND

**KNOW ALL MEN BY THESE PRESENTS:**

That we, *Panaco, Inc.*, a Delaware corporation with its principal office at 1100 Louisiana, Suite 5100, Houston, Texas 77002-5220 (hereinafter called the "Principal"), and *RLI Insurance Company*, with an office at 8 Greenway Plaza, Suite 400, Houston, Texas 77046-0891 (hereinafter called the "Surety"), are held and firmly bound unto *B P Exploration & Oil Inc.*, with its principal office at 501 Westheimer Park Boulevard, Houston, Texas 77079-2696 (hereinafter called the "Obligee"), in the penal sum of *Ten Million Six Hundred Fifty Thousand---and---No/100 Dollars ($10,650,000.00)* lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

**WHEREAS**, the Principal entered a certain Escrow Agreement (hereinafter referred to as the "Agreement") dated June 1, 1998, which Agreement is incorporated herein by reference; and

**WHEREAS**, said Agreement represents the Principal's assurance to the Obligee that the Principal will perform and discharge its obligations to properly abandon, remove, salvage and dispose of all wells, platforms and associated pipelines and facilities and to make all necessary site restorations associated with such abandonments and removals (said obligations herein referred to as the "Plugging and Abandonment Obligations") covering the property identified as East Breaks 165 and 209, OCS-G-06280 and OCS-G-07397, respectively (hereinafter referred to as the "Property"); and

**WHEREAS**, said Principal desires to provide the Obligee with this Bond to replace and supersede said Agreement as assurance that the Principal will discharge its Plugging and Abandonment Obligations cited in the preceding paragraph; and

**WHEREAS**, the Surety has agreed to provide the Principal with $10,650,000.00 in supplemental plugging and abandonment bonds ("Supplemental Bonds") issued to the U.S. Department of the Interior Minerals Management Service ("MMS") on the Property to comply with applicable regulations; and

**WHEREAS**, the Principal and the Surety agree that notwithstanding the subsequent termination of the Property, whether by operation of law or otherwise, this Bond shall remain in full force and effect until all obligations of the Principal under the Agreement have been truly and faithfully performed and discharged; and

**WHEREAS**, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

**WHEREAS**, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder;

**NOW THEREFORE**, not withstanding anything contained herein to the contrary, if said Principal or Surety shall perform and discharge the Plugging and Abandonment Obligations, then this Bond and the obligations hereunder shall be null and void.

**FURTHER**, if the Surety shall pay to the MMS any amount under the Supplemental Bonds issued to the MMS, then this Bond shall be reduced in the same amount as any payment made to the MMS under said Supplemental Bonds.

If the Obligee is required by the MMS to perform any of the Plugging and Abandonment Obligations required of the Principal, then upon performance of the obligation by the Obligee and release of the Supplemental Bonds by the MMS, the Surety agrees to pay to the Obligee the actual costs incurred by the Obligee for such performance in an amount up to, but not exceeding the penal amount of this Bond, reduced as applicable as provided for herein.

**FURTHERMORE**, it is agreed that the Surety shall have no obligation to the Principal, the Obligee, or any other person or entity for any loss suffered by the Principal, the Obligee or any other person or entity by reason of acts or omissions which are or could be covered by the Obligee's or the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance. In no event shall the Surety be obligated to pay, in the aggregate, for all claims hereunder, an amount exceeding the penal sum of this Performance Bond.

It is further agreed that the Surety shall not be liable for any provisions of the Agreement or specifications respecting the procurement of or coverages provided by any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Any suit under this Bond must be instituted before the expiration of one (1) year from the date on which a default by the Principal, as detailed herein, falls due, and subject to the one year time limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court.

No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Agreement or of the Leases by the Principal, its successors and assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER**, if upon assignment of the Agreement or the Property by the Principal, its successors or assigns, the Principal shall cause its Assignee to post security, in the form of a bond or other acceptable security, in the amount of and covering the same obligations as stated herein, then the Obligee will accept such security in lieu of this

Bond and issue an unconditional release of this Bond within sixty (60) days of their acceptance of such other security.

No right or action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

**NOW, THEREFORE**, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein, then this obligation shall become null and void and of no effect.

The Obligee will issue a release of this Bond within a reasonable time period, but in no instance longer than thirty (30) days after receipt of satisfactory evidence (a report from the proper regulatory authority) of the Principal's full and faithful performance and compliance with the obligation of this Performance Bond.

**IN WITNESS WHEREOF**, the above bound parties have executed this instrument under their several seals this 29th day of October, 1999, the name and corporate seal of each corporate party being hereto affixed and those presents duly signed by its undersigned representative pursuant to authority of its governing body.

Attest:

*Panaco, Inc.*
1100 Louisiana, Suite 5100
Houston, Texas  77002-5200
Principal

By: _____
(Signature)

_____
(Printed Name/Title)

Attest:

*RLI Insurance Company*
8 Greenway Plaza, Suite 400
Houston, Texas  77046-0891
Surety

By: _____
Roy C. Die, Attorney-in-Fact

Attest:                              **B P Exploration & Oil Inc.**
                                     501 Westheimer Park Boulevard
                                     Houston, Texas  77079-2696
                                     Obligee

_____      By:    _____
                                                    (Signature)

                                            _____
                                                  (Printed Name/Title)



9025 North Lindbergh Dr. • Peoria, IL 61615
(309) 692-1000 or (800) 645-2402

RLB0001509
# POWER OF ATTORNEY
RLI Insurance Company

## Know All Men by These Presents:

That the RLI INSURANCE COMPANY, a corporation organized and existing under the laws of the State of Illinois, and authorized and licensed to do business in all states and the District of Columbia does hereby make, constitute and appoint: __ROY C. DIE__ in the City of __HOUSTON__, State of __TEXAS__, as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, all of the following classes of documents to-wit:

**$10,650,000.00**

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in any action or proceeding in any court of law or equity; policies indemnifying employers against loss or damage caused by the misconduct of their employees; official, bail and surety and fidelity bonds. Indemnity in all cases where indemnity may be lawfully given; and with full power and authority to execute consents and waivers to modify or change or extend any bond or document executed for this Company, and to compromise and settle any and all claims or demands made or existing against said Company.

The RLI INSURANCE COMPANY further certifies that the following is a true and exact copy of a Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or Agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

(Blue shaded areas above indicate authenticity)

IN WITNESS WHEREOF, the RLI Insurance Company has caused these presents to be executed by its __CHAIRMAN, CEO__ with its corporate seal affixed this

ATTEST:
_____
Corporate Secretary

RLI INSURANCE COMPANY
By: _____
Chairman, CEO

State of Illinois  )
                   ) SS
County of Peoria   )

On this 29 day of Oct. 1999 before me, a Notary Public, personally appeared Gerald D. Stephens and Camille J. Hensey, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as Chairman, CEO and Corporate Secretary, respectively, of the said RLI INSURANCE COMPANY, and acknowledged said instrument to be the voluntary act and deed of said corporation.

_____
Notary Public

"OFFICIAL SEAL"
CYNTHIA S. DOHM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 02/24/02

SPA025 (3/99)

**RIDER NO. 1**

Attaching to and forming part of Performance Bond No. RLB0001509, executed October 29, 1999, on behalf of Panaco, Inc. as Principal, in favor of BP Exploration & Oil Inc. as Obligee, issued by RLI Insurance Company as Surety, in the amount of Ten Million Six Hundred Fifty Thousand and No/100 Dollars ($10,650,000.00).

It is understood and agreed that effective May 14, 2014, the Principal's name and address are amended to read as follow:

**Fieldwood SD Offshore LLC**
**2000 W. Sam Houston Pkwy. South, Suite 1200**
**Houston, TX  77042**

All other conditions and terms to remain as originally written or previously amended by rider.

Signed, sealed and dated this 16th day of December, 2014.

<u>Fieldwood SD Offshore LLC</u>

By:_____

_____
(Printed Name & Title)

RLI Insurance Company
8 Greenway Plaza, Suite 400
<u>Houston, TX  77046</u>
Surety

By: _____
Robbie Duxbury, Attorney-in-Fact



**RLI Surety**
*A division of RLI Insurance Company*

RLB0001509

# POWER OF ATTORNEY
## RLI Insurance Company

### *Know All Men by These Presents:*

That the RLI INSURANCE COMPANY, a corporation organized and existing under the laws of the State of Illinois, and authorized and licensed to do business in all states and the District of Columbia does hereby make, constitute and appoint: _____**ROBBIE DUXBURY**_____

in the City of __HOUSTON__ , State of __TEXAS__ , as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, all of the following classes of documents to-wit:

$10,650,000.00

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in any action or proceeding in any court of law or equity; policies indemnifying employers against loss or damage caused by the misconduct of their employees; official, bail and surety and fidelity bonds. Indemnity in all cases where indemnity may be lawfully given; and with full power and authority to execute consents and waivers to modify or change or extend any bond or document executed for this Company, and to compromise and settle any and all claims or demands made or existing against said Company.

The RLI INSURANCE COMPANY further certifies that the following is a true and exact copy of a Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or Agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers-of-Attorney, or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the RLI Insurance Company has caused these presents to be executed by its ___PRESIDENT___ with its corporate seal affixed this

ATTEST: *Jean M. Stephenson*
CORPORATE SECRETARY

RLI INSURANCE COMPANY
*M. J. Stone*
PRESIDENT

State of Illinois )
                 ) SS
County of Peoria )

On this 16 day of   December 2014   before me, a Notary Public, personally appeared Michael J. Stone and Jean M. Stephenson, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as President and Corporate Secretary, respectively, of the said RLI INSURANCE COMPANY, and acknowledged said instrument to be the voluntary act and deed of said corporation.

*Jacqueline M. Bockler*
Notary Public

"OFFICIAL SEAL"
JACQUELINE M. BOCKLER
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 01/14/18

SPA027 (03/11)

# TERRORISM RIDER

## NOTICE – FEDERAL TERRORISM INSURANCE COVERAGE AND DISCLOSURE OF PREMIUM

Any loss applicable to a peril covered under this bond that is caused by a certified act of terrorism pursuant to the terms of the Terrorism Risk Insurance Act of 2002 ("the Act,"), will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding a statutorily established deductible to the insurance company providing this bond. The portion of your annual premium attributable to certified acts of terrorism under this bond is $1.00

## COVERAGE LIMITATIONS

Payment for a loss will not exceed the limit of liability under this bond. This bond will not pay for any portion of certified terrorism loss beyond any applicable annual liability cap set forth in the Act. The terms of this rider do not provide coverage for any loss that would otherwise be excluded by the terms of this bond.

# TERRORISM RIDER

## NOTICE - FEDERAL TERRORISM INSURANCE COVERAGE AND DISCLOSURE OF PREMIUM

Any loss applicable to a peril covered under this bond that is caused by a certified act of terrorism pursuant to the terms of the Terrorism Risk Insurance Act of 2002 ("the Act,"), will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding a statutorily established deductible to the insurance company providing this bond. The portion of your annual premium attributable to certified acts of terrorism under this bond is $1.00

## COVERAGE LIMITATIONS

Payment for a loss will not exceed the limit of liability under this bond. This bond will not pay for any portion of certified terrorism loss beyond any applicable annual liability cap set forth in the Act. The terms of this rider do not provide coverage for any loss that would otherwise be excluded by the terms of this bond.

# TERRORISM RIDER

## NOTICE - FEDERAL TERRORISM INSURANCE COVERAGE AND DISCLOSURE OF PREMIUM

Any loss applicable to a peril covered under this bond that is caused by a certified act of terrorism pursuant to the terms of the Terrorism Risk Insurance Act of 2002 ("the Act,"), will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding a statutorily established deductible to the insurance company providing this bond. The portion of your annual premium attributable to certified acts of terrorism under this bond is $1.00

## COVERAGE LIMITATIONS

Payment for a loss will not exceed the limit of liability under this bond. This bond will not pay for any portion of certified terrorism loss beyond any applicable annual liability cap set forth in the Act. The terms of this rider do not provide coverage for any loss that would otherwise be excluded by the terms of this bond.

M0033104