# EXHIBIT Z3-A



# PERFORMANCE BOND

Bond No. LPM9181831

KNOW ALL MEN BY THESE PRESENTS, that **FIELDWOOD ENERGY LLC** ("**Fieldwood**") as Principal and **ZURICH AMERICAN INSURANCE COMPANY**, a corporation duly organized under the laws of New York and duly authorized and licensed to transact the business of suretyship in the United States of America (the "**Surety**") as Surety, and our administrators, successors and assigns, are held and firmly bound unto **DEUTSCHE BANK AG NEW YORK BRANCH** (the "**Obligee**") in the penal sum of **Ninety Seven Million, Three Hundred Twenty-seven Thousand, Nine Hundred Thirty-one and no/100** (**$97,327,931**) lawful money of the United States of America (the "**Bond Amount**"), for the payment of which well and truly to be made, we bind ourselves, our administrators, successors and assigns, jointly and severally by these presents.

WHEREAS, Fieldwood and its subsidiaries entered into an arrangement with Apache Corporation (the "**Beneficiary**"), among others pursuant to which Fieldwood will perform decommissioning of various oil and gas wells in the Gulf of Mexico and other activities as described in that certain Decommissioning Agreement dated as of September 30, 2013, as amended (the "**Agreement**"); and

WHEREAS, Fieldwood has entered into certain written applications and agreements between the Obligee and Fieldwood dated November 9, 2015 (each as amended, restated, supplemented or otherwise modified, collectively, the "**Reimbursement Agreement**"), under which the Obligee has agreed to provide Obligee's standby letter of credit No.839BGC1500971 (the "**Security**") to ensure Fieldwood's satisfactory performance of the Agreement to the Beneficiary and Fieldwood has agreed to reimburse the Obligee for any drawings under the Security to the extent that the Obligee is not reimbursed under this Bond.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Surety hereby agrees in favor of the Obligee as follows:

THE CONDITION OF THIS OBLIGATION IS SUCH that, if Fieldwood shall fully, faithfully and timely perform its obligations under the Agreement, then this obligation to be void (unless an Event of Default (as defined below) shall have occurred or thereafter occurs); otherwise, to remain in full force and effect.

The Surety shall be obligated to make payment under this Bond if the Obligee delivers a written notice to the Surety within the time required hereby (which delivery may occur after the performance of such obligations) that an Event of Default has occurred, provided, however, that this Bond is subject to the following conditions:

1. Event of Default: An "Event of Default" for purposes of this Bond is the delivery to the Surety by the Obligee of one of the following:

a. A written statement from the Obligee, in the form attached hereto as Annex A, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "A" to the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to perform and reimburse the Beneficiary for Government Decommissioning obligations (as defined in the Agreement); or

b. A written statement from the Obligee, in the form attached hereto as Annex B, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "B" to the Security arising from the Obligee having notified the Beneficiary of the Obligee's election to not extend the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to provide the Beneficiary with replacement security within the time required by the Agreement.

2. Preliminary Notice to Surety: Obligee shall endeavor to notify the Surety, with reasonable promptness, of any facts or circumstances of which Obligee has received actual notice which constitute an Event of Default. Such preliminary notice is not, however, a condition precedent of the Surety's obligation under this Bond and failure of the Obligee to so notify the Surety shall not relieve or reduce the Surety's liabilities and obligations to the Obligee under this Bond.

3. Upon the occurrence of an Event of Default, the Surety shall pay to the Obligee the amount demanded in the Obligee's written statement within ten (10) Business Days (as defined below) after receipt of such statement from the Obligee. Each such written statement from the Obligee shall constitute conclusive evidence of the facts stated therein. The Surety irrevocably agrees to pay interest on all Overdue Amounts (as defined below) at the annual rate equal to the Prime Rate (as defined below) of the Obligee such interest to accrue on a daily basis for each day that any Overdue Amount remains unpaid, calculated monthly in arrears and shall be compounded monthly until payment in full by the Surety. The Surety hereby agrees to indemnify and hold harmless the Obligee from and against any and all damages, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees and disbursements), that may be incurred or sustained by, or asserted or awarded against, the Obligee, in each case arising out of or in connection with or relating to the Surety's failure to pay to the Obligee any amount demanded when due hereunder. For the purposes of this Bond, (a) the term **"Business Day"** means a day on which chartered banks are open for over-the-counter business in the ordinary course in New York, New York and excludes Saturday, Sunday and any other day which is a recognized holiday in the state of New York; (b) the term **"Prime Rate"** means on any day the fluctuating annual rate of interest established from time to time by the Obligee and in effect that day as the reference rate it will use for purposes of determining rates of interest it will charge on loans to customers in the United States and designated as its prime rate; and (c) the term **"Overdue Amounts"** means amounts due and owing to the Obligee by the Surety under this Agreement.

4. This Bond sets forth in full the terms of the Surety's liabilities and obligations to the Obligee under this Bond. Such liabilities and obligations shall not be in any way modified, amended or supplemented by reference to any document or instrument referred to herein, and any such reference shall not be deemed to incorporate herein any document or instrument. The

Surety's liabilities and obligations under this Bond to the Obligee are not subject to any condition or qualification except as expressly set forth herein and are not contingent on any of the following (and shall not be reduced, diminished or eliminated by virtue of any of the following): (a) the ability or inability of the Surety to acquire or perfect any lien or security interest on any asset or property of Fieldwood, (b) the Surety's success or failure in obtaining indemnification from Fieldwood or (c) any other fact or circumstance involving or affecting any one or more of Fieldwood, the Obligee or the Surety (but the Surety reserving all of its rights against Fieldwood). This Bond constitutes the Surety's primary, absolute and independent obligation to make payment to the Obligee in accordance with the terms hereof, under any and all circumstances, including, without limitation, due to the lack of validity, legality or enforceability of the Agreement, the Reimbursement Agreement or the Security and irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety, Fieldwood or other third parties.

5. Address for Written Statements and Notice: Any written statement or notice provided under this Bond shall be in writing and shall be delivered by personal delivery, certified mail, express mail, or overnight courier service to the address of the party set out below and to the attention of the person there indicated, provided that any written statement or notice shall be delivered only by personal delivery or overnight courier in the event that there is a threatened or actual discontinuance or interruption of regular postal service:

   a. if to the Surety:

   Zurich American Insurance Company
   Zurich Surety
   500 Enterprise Drive, Rocky Hill, Connecticut 06067
   Attention: Commercial Surety Underwriting

   with a copy to:

   Zurich Surety Bond Claims
   1400 American Lane
   Schaumburg, Illinois 60196
   reportsfclaims@zurichna.com

   b. if to the Obligee:

   Deutsche Bank AG New York Branch
   Cherine Kenawy, Trade Finance Operations
   60 Wall Street, 38th Floor
   Mailstop: NYC60-3817
   New York, NY 10005-2836
   Attention: Standby Letter of Credit Department
   DBNY.standby-LC@db.com

   With a copy to:

   Deutsche Bank AG New York Branch

      60 Wall Street
      New York, NY 10005
      Attention: Mr. Prashant Mehra

  c.  if to Fieldwood:

      Fieldwood Energy LLC
      2000 W Sam Houston Parkway S
      Suite 1200
      Houston, Texas 77042
      Attention: Richard D. Black, Sr. Vice President and General Counsel

and such statement or notice shall be deemed to have been received on the fifth (5th) Business Day if sent by certified mail or express mail and deemed to have been received on the following Business Day if sent by overnight courier or personal delivery. Any party may change its notice address by delivering a notice of such change to the other parties in the manner provided herein.

6. **Limitations on Liability:** The liability of the Surety shall not exceed the Bond Amount stated above, plus all costs and expenses required to be paid by the Surety hereunder, regardless of the number of years that this Bond shall continue or be continued in force and the number or amounts of premiums paid by Fieldwood (it being acknowledged and agreed that all premiums and fees payable to the Surety for the issuance and maintenance of this Bond are the sole obligation of Fieldwood and the Obligee shall have no liability therefor). Partial and multiple demands are permitted. The Bond Amount shall be reduced by the amount of any payment made by the Surety under this Bond. It is expressly agreed that in the event any payments are made under this Bond, the Bond Amount (as it may be reduced from time to time as a result of payments that are made as against the Bond) shall be carried over on an annual basis for each subsequent calendar year in which the Bond is renewed.

7. This Bond is an annual obligation for the term of November 9, 2015 to November 9, 2017. This Bond will be automatically renewed for one year annual terms unless the Obligee and Fieldwood are notified of the Surety's intention to not renew or extend this Bond, written notice of which shall be given by the Surety at least ninety (90) days prior to the then current expiration date of this Bond, such cancellation notice to be provided in accordance with Section 5 above.

8. If the Surety so notifies the Obligee pursuant to Section 7 that this Bond will not be renewed, the Surety acknowledges that the Obligee may be required to notify the Beneficiary at least sixty (60) days prior to the then current expiration date of the Security of the Obligee's election not to extend the Security and that the Beneficiary shall then be entitled to demand payment under the Security in accordance with the Agreement. To ensure that the Obligee will have sufficient time to make written demand for payment under this Bond in the event the Beneficiary has demanded payment under the Security prior to the latest date the Beneficiary is entitled to make a drawing under the Security, the Surety agrees that if the Beneficiary is entitled to make a drawing under the Security after the then applicable expiration date of the Security for any reason, including, without limitation, the application of applicable laws, rules and regulations relating to letters of credit, the Obligee shall be

given an additional amount of time (equal to the amount of such additional time given to the Beneficiary) to make its written demand on the Surety for payment under this Bond.

9. In the event Fieldwood fails to provide replacement security or other form of collateral acceptable in the Obligee's sole discretion, the Obligee may make written demand for payment under this Bond. Upon payment by the Surety to the Obligee pursuant to this Section 9, the Obligee shall hold such payment in a cash collateral account on the basis that if the Beneficiary makes a demand under the Security issued by the Obligee, the Obligee shall be entitled to appropriate and apply the relevant amount(s) from such cash collateral to make payment to the Beneficiary with the net balance remaining in such cash collateral account being returned by the Obligee to the Surety (or to the representatives of the Surety) when the Obligee has no further obligations or liabilities to the Beneficiary under such Security.

10. This Bond shall be governed by and construed in accordance with the law of the State of New York (without reference to conflict of law doctrine), and the parties submit to the nonexclusive jurisdiction of the courts of the State of New York located in the County of New York.

11. No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named herein and the administrators, successors and assigns of the Obligee.

12. The Surety hereby represents that it has the power and requisite authority to execute, deliver and perform its obligations under this Bond. The Surety is duly authorized to, and has taken all action necessary to authorize it to, perform its obligations under this Bond and is and will continue to be duly authorized to enter into this Bond and to perform its obligations under this Bond. This Bond is the legal and binding obligation of the Surety enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether the application of such principles is considered in a proceeding in equity or at law).

SIGNED, SEALED AND DATED this 9th day of November, 2015.

| **FIELDWOOD ENERGY LLC** | **ZURICH AMERICAN INSURANCE COMPANY** |
|---|---|
| (Fieldwood) | (Surety) |
| By: _____ | By: _Janice H. Fennell_ (signature) |
| Name: G. M. McCarroll | Name: Janice H. Fennell |
| Title: President and Chief Executive Officer | Title: Attorney-in-Fact |

## ANNEX A

## FORM OF DEMAND UNDER PERFORMANCE BOND

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile: _____

Re:   Performance Bond No. LPM9181834 (the "**Bond**")

Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the "**Obligee**"), hereby certifies to Zurich American Insurance Company (the "**Surety**"), with reference to the Performance Bond No. LPM9181834 (the "**Bond**") dated November 9, 2015 issued in favor of the Obligee by the Surety for the account of Fieldwood Energy LLC ("**Fieldwood**"), as follows (any capitalized term used in this Demand Under Performance Bond and not defined herein shall have its respective meaning as set forth in the Bond):

1.  The undersigned is authorized to make this Demand Under Performance Bond on behalf of the Obligee.

2.  The Obligee is entitled to make a drawing in the amount of [$_____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Bond. Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

3.  The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time (the "Decommissioning Agreement"), Obligee was required to make payment to Seller under a standby letter of credit issued in favor of Seller as a result of Fieldwood's failure to reimburse and pay Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

4.  Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Demand Under Performance Bond on [insert date of the Demand Under Performance Bond].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

## ANNEX B

## FORM OF NON-EXTENSION DRAWING REQUEST

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____


Drawn under Zurich American Insurance Company
Performance Bond No. LPM9181834
Dated November 9, 2015


Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the **"Obligee"**), hereby certifies to Zurich American Insurance Company (the **"Surety"**), with reference to the Performance Bond No. LPM9181834 (the **"Bond"**) dated November 9, 2015 issued in favor of the Obligee for the account of Fieldwood Energy LLC (**"Fieldwood"**), as follows (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Bond):

1. The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Obligee.

2. The Obligee is entitled to make a drawing in the amount of [$_____] pursuant to the terms and conditions of the Bond. Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

3. The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time, (the "Decommissioning Agreement"), Obligee was required to make payment to Seller in the amount of the Drawing Amount under the security issued in favor of Seller as a result of Obligee's election to not extend the security.

4. Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]


IN WITNESS WHEREOF, the undersigned has executed and delivered this Non- Extension Drawing Request on [insert date of Non-Extension Drawing Request].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____


By: _____
Name: _____
Title: _____

## ZURICH AMERICAN INSURANCE COMPANY
## COLONIAL AMERICAN CASUALTY AND SURETY COMPANY
## FIDELITY AND DEPOSIT COMPANY OF MARYLAND
## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That the ZURICH AMERICAN INSURANCE COMPANY, a corporation of the State of New York, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, a corporation of the State of Maryland, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND a corporation of the State of Maryland (herein collectively called the "Companies"), by **JAMES M. CARROLL, Vice President,** in pursuance of authority granted by Article V, Section 8, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, do hereby nominate, constitute, and appoint **Richard C. ROSE, Jeremy C. ROSE and Janice H. FENNELL, all of Knoxville, Tennessee, EACH** its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: **any and all bonds and undertakings,** and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the ZURICH AMERICAN INSURANCE COMPANY at its office in New York, New York., the regularly elected officers of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at its office in Owings Mills, Maryland., and the regularly elected officers of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at its office in Owings Mills, Maryland., in their own proper persons.

The said Vice President does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article V, Section 8, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President has hereunto subscribed his/her names and affixed the Corporate Seals of the said **ZURICH AMERICAN INSURANCE COMPANY, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** this 20th day of November, A.D. 2012.

ATTEST:

ZURICH AMERICAN INSURANCE COMPANY
COLONIAL AMERICAN CASUALTY AND SURETY COMPANY
FIDELITY AND DEPOSIT COMPANY OF MARYLAND



By:
*Assistant Secretary*
*Gerald F. Haley*

*Vice President*
*James M. Carroll*

**State of** Maryland
County of Baltimore

On this 20th day of November, A.D. 2012, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, **JAMES M. CARROLL, Vice President, and GERALD F. HALEY, Assistant Secretary,** of the Companies, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and acknowledged the execution of same, and being by me duly sworn, deposeth and saith, that he/she is the said officer of the Company aforesaid, and that the seals affixed to the preceding instrument are the Corporate Seals of said Companies, and that the said Corporate Seals and the signature as such officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

Constance A. Dunn, Notary Public
My Commission Expires: July 14, 2019

POA-F 164-6135C

## EXTRACT FROM BY-LAWS OF THE COMPANIES

"Article V, Section 8, <u>Attorneys-in-Fact</u>. The Chief Executive Officer, the President, or any Executive Vice President or Vice President may, by written instrument under the attested corporate seal, appoint attorneys-in-fact with authority to execute bonds, policies, recognizances, stipulations, undertakings, or other like instruments on behalf of the Company, and may authorize any officer or any such attorney-in-fact to affix the corporate seal thereto; and may with or without cause modify of revoke any such appointment or authority at any time."

## CERTIFICATE

I, the undersigned, Vice President of the ZURICH AMERICAN INSURANCE COMPANY, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that Article V, Section 8, of the By-Laws of the Companies is still in force.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the ZURICH AMERICAN INSURANCE COMPANY at a meeting duly called and held on the 15th day of December 1998.

RESOLVED: "That the signature of the President or a Vice President and the attesting signature of a Secretary or an Assistant Secretary and the Seal of the Company may be affixed by facsimile on any Power of Attorney...Any such Power or any certificate thereof bearing such facsimile signature and seal shall be valid and binding on the Company."

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994, and the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies, this 9TH day of NOVEMBER, 2015.

  

_____
Thomas O. McClellan, Vice President