# EXHIBIT Z4



# GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT ("Agreement"), dated this 18 day of **September**, **2014** by the undersigned (individually and collectively "**Indemnitors**") in favor of ZURICH AMERICAN INSURANCE COMPANY and its subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH INSURANCE GROUP LTD., their respective successors and assigns (individually and collectively "**Surety**") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured ("issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) whether issued before or after this Agreement, including all renewals, extensions, modifications and substitutions of Bonds ("Bonds" and individually "Bond"). Bonds may be issued in the name of or on behalf of (a) any Indemnitor, (b) any subsidiary or affiliate of any Indemnitor (c) any joint venture, consortium or other economic enterprise in which any Indemnitor is or was a member at the time the Bond was issued and/or (d) any third party on request of any Indemnitor. Indemnitors' obligations under this Agreement are continuing, including obligations for Bonds issued for entities that may be sold, dissolved, otherwise disposed of, or for which ownership or management changes may occur in the future.

As an inducement to Surety, Indemnitors represent, covenant and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1. **PREMIUMS:** Indemnitors shall promptly pay all premiums and charges of Surety for Bonds, at the current rate charged by Surety, until Surety has been provided satisfactory evidence, that Bonds have been fully released and/or discharged.

2. **INDEMNITY:** Indemnitors, jointly and severally, shall exonerate, indemnify, and hold Surety harmless from any and all liability, loss, premiums, claims, damages, extra-contractual damages, court costs and expenses, attorneys' fees, consultant fees, interest, and all other costs and expenses that Surety incurs or sustains (all of the foregoing "Loss") arising from or related to: (a) the underwriting or issuance of any Bond, (b) any Claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement,(c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of the Surety's interests, or to avoid or lessen Surety's liability or alleged liability. Indemnitors' liability to Surety includes all Loss, all payments made, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the Loss, the amounts paid or the actions taken or that it was necessary or expedient to incur such Loss, make such payments or take such actions, whether or not such liability, necessity or expediency existed. Good Faith means, with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Indemnitors. An itemized statement of Loss, sworn to by any officer of Surety, or vouchers, affidavits, or other evidence of payment by Surety, shall be *prima facie* evidence of Indemnitors' liability for such Loss.

3. **SURETY'S RIGHT TO SETTLE:** Surety has the absolute and unconditional right and is authorized but not required to pay, perform, settle, compromise, deny, litigate or otherwise resolve any Claim or pay any Loss under any Bonds. The Surety's decision shall be final, binding, and conclusive on the Indemnitors.

4. **PLACE IN FUNDS:** Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

5. **ISSUANCE OF BONDS:** Surety may decline to issue, execute, modify, procure, extend, or renew any bond and may cancel or terminate any Bond without incurring any liability whatsoever to Indemnitors or otherwise impairing its rights, however derived.

6. **OTHER SURETIES AS BENEFICIARIES:** If Surety procures the issuance of any Bond by other sureties, or issues any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then this Agreement shall inure to the benefit of such other sureties, co-sureties and/or reinsuring sureties, including the right to bring an action for enforcement of this Agreement. Surety may share any information relevant to a Claim or underwriting of Bonds with co-sureties, fronting companies, and/or reinsurers.

7. **EVENT OF DEFAULT:** Indemnitors shall be in default of this Agreement if any of the following occur: (a) breach of any Bond; (b) failure to provide collateral in response to a demand made by Surety; (c) breach of any other provision of this Agreement; (d) Surety setting a reserve against Loss or incurring Loss; (e) any Indemnitor becomes the subject of a bankruptcy, ceases or threatens to cease to carry on business, or has any resolution passed or order made for its bankruptcy, winding-up, liquidation or dissolution; or (f) representations made to Surety by or on behalf of any Indemnitor prove to have been materially false or misleading when made

8. **SURETY'S ADDITIONAL RIGHTS:** This Agreement is in addition to and not in lieu of all rights, powers, and remedies that Surety may have or acquire against Indemnitors or others, and does not waive, release or novate other agreements. Surety may make, consent to or decline to consent to changes in Bonds, may accept, modify or release any Indemnitor, and may accept, modify, subordinate or release any other indemnity, collateral, rights, real or personal property and/or security. Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other and/or any principal until all obligations to Surety under this Agreement, at law or in equity, have been satisfied in full. Surety's forebearance or failure to act to enforce any right shall not waive or diminish any of its rights, which rights may be enforced at any time in Surety's sole discretion.

9. **WAIVER OF NOTICE:** Indemnitors waive notice of the issuance or cancellation of any Bond, any settlement or any act, fact or information concerning or affecting the rights and liabilities of the Surety or the rights or liabilities of Indemnitors under the Bonds or this Agreement, notwithstanding any notice of any kind to which Indemnitors might otherwise have been or be entitled, and notwithstanding any defenses they might have been or be entitled to assert

10. **DISCHARGE:** Indemnitors shall promptly, on Surety's written demand, procure the full and complete discharge of Surety from all Bonds demanded by Surety and all liability in connection with such Bonds. If Indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to Surety for the funding of the bonded obligations

11. **LAWSUITS:** Separate suits may be brought under this Agreement as causes of action accrue, and the bringing of suits or the recovery of judgment on any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether arising before or after any other lawsuit or cause of action.

12. **EXECUTION AND CHANGES:** This Agreement may be executed in counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Indemnitor when that Indemnitor executes this Agreement, regardless of whether any other Indemnitor fails or refuses to execute this Agreement. This Agreement shall only be changed or modified in writing.

13. **SEVERABILITY:** If any provision in this Agreement is found to be contrary to any law applicable to any Indemnitor, or is otherwise found void or unenforceable, the remainder of this Agreement shall remain in full force and effect as to that Indemnitor, and the entire Agreement shall remain of full force and effect as to all other Indemnitors.

14. **TERMINATION OF INDEMNITY:** This Agreement remains in effect until terminated and released by Surety. Any Indemnitor may send written notice to Surety of that Indemnitor's intent to terminate its participation under this Agreement for Bonds issued after the Effective Date of the notice. Such termination of participation shall be effective twenty (20) days from Surety's receipt of the notice ("Effective Date"); however such termination of participation shall not terminate, reduce or discharge Indemnitor's obligations for Bonds issued prior to the Effective Date. The notice of intent to terminate, and any other notices to Surety, shall be addressed as follows: **Zurich Surety, Red Brook Corporate Center, 600 Red Brook Blvd., 4th Floor, Owings Mills, Maryland 21117, Attention: Vice President, Commercial Surety**.

15. **REPRESENTATIONS AND WARRANTIES:** Each Indemnitor represents and warrants the following: (a) Indemnitor has a substantial, material, and/or beneficial interest in one or more Indemnitors or Principals obtaining Bonds or in Surety refraining from canceling Bonds; (b) Indemnitor has the full power and authority to execute and deliver this Agreement and to perform all obligations in this Agreement; (c) Indemnitor's execution and delivery of this Agreement and performance in accordance with its terms does not and will not conflict with, and will not result in a breach or violation of, any terms or conditions of any law, order, regulation or other agreement or obligation binding on Indemnitor; (d) All information provided to Surety by each Indemnitor prior to and after the execution of this Agreement is true, accurate and complete as of the time provided; and (e) each right, power and remedy given to Surety, under this Agreement or otherwise, forms a material part of Surety's consideration for Bonds.

**SIGNATURE PAGE(S) TO FOLLOW**

## SIGNATURE INSTRUCTIONS

*All signatures should be notarized and dated.*
1. Corporation: an officer on the operational side (i.e. President, CEO, COO) and an officer on the finance side (i.e. Secretary, CFO, Treasurer) should sign;
2. Limited Liability Corporation (LLC): (a) if manager-managed, and if only one manager, the manager should sign; if more than one manager, two managers should sign (b) if member-managed, two members should sign unless there is only one member, then the one member should sign, or (c) if the LLC has appointed officers to manage the LLC, an officer on the operational side and an officer on the finance side should sign.
3. Limited Partnership (LP): (a) if only one general partner, the general partner should sign; (b) if more than one general partner, two general partners should sign.
4. Limited Liability Partnership (LLP): at least two partners should sign.
5. Trust: All of the Trustee(s) should sign.

**By signing below, each of the undersigned affirms to Surety that the undersigned is a duly authorized officer, manager, trustee, official or member of the entity for which the undersigned executes the foregoing Agreement. In such capacity the undersigned is familiar with all of the documents which establish the rights and which govern the affairs, power and authority of such entity including, to the extent applicable, the (1) certificate or articles of incorporation, (2) bylaws, (3) resolutions, (4) partnership, operating or limited liability agreements or (5) trust agreements of such entity.  Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned affirms that such entity has the power and authority to enter into such Agreement and that the undersigned is duly authorized to execute this Agreement on behalf of the entity and to bind the entity to its terms.**

*(The remainder of this page intentionally left blank)*

| | |
|---|---|
| **INDEMNITORS:** | LAST 4 DIGITS OF INDEMNITOR'S TIN: 6778     (*SEAL, IF A CORPORATION*) |

**Fieldwood Energy LLC**
**Fieldwood Energy Offshore LLC**
**GOM Shelf LLC**
**Fieldwood SD Offshore LLC**

*Signer #1*

By: _____[signature]_____

[G. Matt McCarroll]

Date: [September 18], 2014

As **CEO** of **Fieldwood Energy LLC**
As **CEO** of **Fieldwood Energy Offshore LLC**
As **CEO** of **GOM Shelf LLC**
As **CEO** of **Fieldwood SD Offshore LLC**

---

**NOTARIAL ACKNOWLEDGEMENT**
STATE OF: _____  COUNTY OF: _____

The following instrument was acknowledged before me this 18 day of September, 20 14 by:
[*name of signatory*] G. MATT MCCARROLL as :
as [*title*] PRESIDENT + CEO of [*entity #1*] FIELDWOOD ENERGY LLC ; and
as [*title*] PRESIDENT + CEO of [*entity #2*] FIELDWOOD ENERGY OFFSHORE LLC ; and
as [*title*] PRESIDENT + CEO of [*entity #3*] GOM SHELF LLC ; and
as [*title*] PRESIDENT + CEO of [*entity #4*] FIELDWOOD SD OFFSHORE LLC ;
all of the above entities the "Entities", on behalf of the Entities.   He/~~She is~~ personally known to me or has produced [*form of identification*] _____ as identification.

My commission expires: 9-14-2017

Notary Public Signature: [signature]
Printed Name: Mindy A Gregory

Notary Seal:
MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

Commercial GIA w/out Perf. 1013     Page 4 of 5

**[CONTINUED FROM PRIOR PAGE - SIGNATURE PAGE when the same authorized representatives are signing for multiple business entities]**

*Signer #2*

By: _____   Date: [September 18, 2014
[John H. Smith]

As **VP of Business Development** of **Fieldwood Energy LLC**
As **VP of Business Development** of **Fieldwood Energy Offshore LLC**
As **VP of Business Development** of **GOM Shelf LLC**
As **VP of Business Development** of **Fieldwood SD Offshore LLC**

---

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: TEXAS     COUNTY OF: Harris

The following instrument was acknowledged before me this 18 day of September, 20 14 by:
[name of signatory] JOHN H. SMITH as:
as [title] VICE PRESIDENT LAND ONS, BUS. DEVELOPMENT of [entity #1] Fieldwood Energy LLC ; and
as [title] VP LAND AND BUSINESS DEVELOPMENT of [entity #2] Fieldwood Energy Offshore LLC ; and
as [title] VP Land + Business Development of [entity #3] GOM Shelf LLC ; and
as [title] VP LAND + Business Development of [entity #4] Fieldwood SD Offshore LLC ;
all of the above entities the "Entities", on behalf of the Entities. He/~~She~~ is personally known to me or has produced [*form of identification*] _____ as identification.

My commission expires: 9-14-2017     Notary Seal:

Notary Public Signature
Printed Name: Mindy A Gregory

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

*(The remainder of this page intentionally left blank)*