## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | Re: Docket Nos. 1275, 1284 & 1285 |

### NOTICE OF FILING OF SOLICITATION VERSIONS OF
### PLAN AND DISCLOSURE STATEMENT

**PLEASE TAKE NOTICE** that on April 15, 2021, Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession, filed solicitation versions of the (i) *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (the "**Plan**") and (ii) *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1285] (the "**Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a blackline (changed pages only) of the Plan marked against the version of the Plan filed on April 9, 2021 at Docket No. 1252.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is a blackline (changed pages only) of the Disclosure Statement marked against the version of the Disclosure Statement filed on April 14, 2021 at Docket No. 1270.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Dated: April 15, 2021
   Houston, Texas

                Respectfully submitted,

                _/s/ Jessica Liou_
                WEIL, GOTSHAL & MANGES LLP
                Alfredo R. Pérez (15776275)
                700 Louisiana Street, Suite 1700
                Houston, Texas 77002
                Telephone: (713) 546-5000
                Facsimile: (713) 224-9511
                Email: Alfredo.Perez@weil.com

                -and-

                WEIL, GOTSHAL & MANGES LLP
                Matthew S. Barr (admitted *pro hac vice*)
                Jessica Liou (admitted *pro hac vice*)
                767 Fifth Avenue
                New York, New York 10153
                Telephone: (212) 310-8000
                Facsimile: (212) 310-8007
                Email: Matt.Barr@weil.com
                    Jessica.Liou@weil.com

                *Attorneys for Debtors*
                *and Debtors in Possession*

## Certificate of Service

     I hereby certify that, on April 15, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                                    /s/ *Jessica Liou*
                                                                                                   Jessica Liou

## Exhibit A

Blackline (Changed Pages Only) of Plan

*SOLICITATION VERSION*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | **Chapter 11** | |
| § | | |
| **FIELDWOOD ENERGY LLC**, *et al.*, § | **Case No. 20-33948 (MI)** | |
| § | | |
| **Debtors.**[1] § | **(Jointly Administered)** | |
| § | | |

# FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
# FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez
Clifford W. Carlson
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*

Dated:  April 915, 2021
             Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

## **Exhibit B**

Blackline (Changed Pages Only) of Disclosure Statement

<u>SOLICITATION VERSION</u>

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |

## DISCLOSURE STATEMENT FOR FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **WEIL, GOTSHAL & MANGES LLP** |
| Alfredo R. Pérez | Matthew S. Barr (admitted *pro hac vice*) |
| Clifford Carlson | Jessica Liou (admitted *pro hac vice*) |
| 700 Louisiana Street, Suite 1700 | 767 Fifth Avenue |
| Houston, Texas  77002 | New York, New York 10153 |
| Telephone: (713) 546-5000 | Telephone:  (212) 310-8000 |
| Facsimile:  (713) 224-9511 | Facsimile:  (212) 310-8007 |

*Attorneys for the Debtors and
Debtors in Possession*

Dated:  April ~~14~~15, 2021
         Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**DISCLOSURE STATEMENT, DATED APRIL 1415, 2021**

**Solicitation of Votes on the
Plan of Reorganization of**

**FIELDWOOD ENERGY LLC,** *ET AL.*

**THIS SOLICITATION OF VOTES (THE "SOLICITATION") IS BEING CONDUCTED TO OBTAIN SUFFICIENT VOTES TO ACCEPT THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES (COLLECTIVELY, THE "DEBTORS") ATTACHED HERETO AS EXHIBIT A (AS MAY BE FURTHER MODIFIED, AMENDED OR SUPPLEMENTED FROM TIME TO TIME, AND TOGETHER WITH ALL EXHIBITS AND SCHEDULES THERETO, THE "PLAN").**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M. (PREVAILING CENTRAL TIME) ON JUNE 2, 2021 UNLESS EXTENDED BY THE DEBTORS.**

**THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS MAY VOTE ON THE PLAN IS APRIL 14, 2021 (THE "RECORD DATE").**

|   |   | 1. | First Lien First Out Credit Agreement | 30 |
|---|---|---|---|---|
|   |   | 2. | First Lien Term Loan Agreement | 31 |
|   |   | 3. | Second Lien Term Loan Agreement | 32 |
|   |   | 4. | Intercreditor Agreements | 33 |
|   |   | 5. | DB Receivables Facility | 33 |
|   |   | 6. | Surety Bonds | 33 |
|   |   | 7. | Unsecured Claims | 34 |
|   |   | 8. | Intercompany Claims | 34 |

IV. KEY EVENTS LEADING TO COMMENCEMENT OF CHAPTER 11 CASES ............ ~~34~~35
    A.    Cost Reduction ........................................................................................................... 35
    B.    Vendor and Surety Issues .......................................................................................... 35
    C.    Prepetition Restructuring Efforts ............................................................................... 36
V. OVERVIEW OF CHAPTER 11 CASES ............................................................................... 37
    A.    Commencement of Chapter 11 Cases and First Day Motions .................................. 37
    B.    First Day Motions ..................................................................................................... 37
    C.    Procedural Motions and Retention of Professionals ................................................ 38
    D.    Appointment of Creditors' Committee ..................................................................... 39
    E.    Postpetition Hedging Agreements and Treatment of Hedging Obligations Under the Plan .......................................................................................................... 39
    F.    Final Hearing on Vendor, Insurance, Cash Management, and DIP Motion ............ 40
    G.    The Creditors' Committee's Challenge Rights ........................................................ 40
    H.    Statements and Schedules, and Claims Bar Dates ................................................... 41
    I.    Extension of Debtors' Exclusivity ............................................................................ 41
    J.    Motion to Approve Second Lien Backstop Commitment Letter ............................. 42
    K.    Motion to Assume Sublease ..................................................................................... 43
    L.    Vendor Program ........................................................................................................ 44
    M.    Lien Analysis ............................................................................................................ 44
    P.    Regulatory Matters ................................................................................................ ~~46~~47
    Q.    Emergency Motion to Compel BP to Perform Under Executory Contracts ........... 48
VI. RESTRUCTURING TRANSACTIONS AND PLAN IMPLEMENTATION ..................... 49
    A.    Approval of Credit Bid Transaction ......................................................................... 49
    B.    Approval of Apache Transactions ........................................................................ ~~49~~50
    C.    Approval of Additional Predecessor Agreements .................................................... 51

|   |   |   |   |
|---|---|---|---|
|   | D. | Approval of Abandonment of Abandoned Properties | 51 |
| VII. | TRANSFER RESTRICTIONS AND CONSEQUENCES UNDER FEDERAL SECURITIES LAWS | | ~~51~~52 |
|   | A. | Section 1145 of the Bankruptcy Code and Subscription Transfers | 52 |
|   | B. | Section 4(a)(2) of the Securities Act and Subscription Transfers | 53 |
| VIII. | CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | ~~54~~55 |
|   | **A.** | Consequences to the Debtors | 56 |
|   |   | 1. Cancellation of Debt and Reduction of Tax Attributes | 56 |
|   |   | 2. Limitation of NOL Carryforwards and Other Tax Attributes | 57 |
|   |   | 3. Sale of Certain Assets | 58 |
|   |   | 4. Potential Transfer of Assets to a Liquidating Trust | 58 |
|   | B. | Consequences to Holders of Certain Claims | ~~58~~59 |
|   |   | 1. Taxable Exchange – Structure of Credit Bid Transaction | 59 |
|   |   | 2. Distributions in Discharge of Accrued OID or Interest | ~~60~~61 |
|   |   | 3. Character of Gain or Loss | 61 |
|   |   | 4. Disposition of New Equity Interests | ~~61~~62 |
|   |   | 5. Exercise and Disposition of the SLTL Warrants and GUC Warrants | 62 |
|   |   | 6. Disposition of Interests in the Single Share | 62 |
|   |   | 7. Tax Treatment of Subscription Rights | 63 |
|   | C. | Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests | ~~63~~64 |
|   |   | 1. Classification of Liquidating Trust | ~~63~~64 |
|   |   | 2. General Tax Reporting by Liquidating Trust and its Beneficiaries | 64 |
|   | D. | Information Reporting and Back-Up Withholding | 65 |
| IX. | CERTAIN RISK FACTORS TO BE CONSIDERED | | 66 |
|   | A. | Certain Bankruptcy Law Considerations | 66 |
|   |   | 1. Risk of Termination of RSA | 66 |
|   |   | 2. Risk of Non-Confirmation of the Plan | ~~66~~67 |
|   |   | 3. Risk of Non-Consensual Confirmation and Conversion into Chapter 7 Cases | 67 |
|   |   | 4. Risk of Non-Occurrence of the Effective Date | 67 |
|   |   | 5. Risks Related to Possible Objections to the Plan | ~~67~~68 |
|   |   | 6. Parties in Interest May Object to Plan's Classification of Claims and Interests | 68 |

|   |   | 7. | Conditions to Credit Bid Transaction May Not Be Satisfied | 68 |
|---|---|---|---|---|
|   |   | 8. | Releases, Injunctions, and Exculpations Provisions May Not Be Approved | 68 |
|   | B. |   | Additional Factors Affecting the Value of NewCo and its Subsidiaries | 6869 |
|   |   | 1. | Projections and Other Forward-Looking Statements Are Not Assured, and Actual Results May Vary | 6869 |
|   |   | 2. | Risks Associated with the Debtors' Business and Industry | 69 |
|   | C. |   | Factors Relating to New Equity Interests to Be Issued under Plan | 7071 |
|   |   | 1. | Market for Equity of NewCo | 7071 |
|   |   | 2. | Potential Dilution | 71 |
|   |   | 3. | Significant Holders | 71 |
|   |   | 4. | New Equity Interests Subordinated to NewCo's Indebtedness | 71 |
|   |   | 5. | Valuation of NewCo Not Intended to Represent Trading Value of New Equity Interests of NewCo | 7172 |
|   |   | 6. | No Intention to Pay Dividends | 72 |
|   | D. |   | Factors Relating to Second Lien Backstop Commitment Letter | 72 |
|   |   | 1. | Bankruptcy Court Might Not Approve Second Lien Backstop Commitment Letter | 72 |
|   | ED. |   | Risks Related to Equity Rights Offerings and ERO Backstop Agreements | 72 |
|   |   | 1. | Bankruptcy Court Might Not Approve FLTL Equity Rights Offering Procedures or SLTL Equity Rights Offering Procedures | 72 |
|   |   | 2. | Debtors May Not Secure ERO Backstop Agreements | 72 |
|   | FE. |   | Risks Related to Recoveries for Holders of General Unsecured Claims Under the Plan | 7273 |
|   |   | 1. | Allowed General Unsecured Claims Could be More than Projected | 7273 |
|   |   | 2. | Residual Distributable Value of the Single Share of Post-Effective Date FWE Parent | 73 |
|   | GF. |   | Additional Factors | 73 |
|   |   | 1. | Debtors Could Withdraw Plan | 73 |
|   |   | 2. | Debtors Have No Duty to Update | 73 |
|   |   | 3. | No Representations Outside the Disclosure Statement Are Authorized | 73 |
|   |   | 4. | No Legal or Tax Advice Is Provided by the Disclosure Statement | 74 |
|   |   | 5. | No Admission Made | 74 |
|   |   | 6. | Certain Tax Consequences | 74 |

X. VOTING PROCEDURES AND REQUIREMENTS ................................................................ 74
    A.     Voting Deadline ............................................................................................. 74
    B.     Voting Procedures ......................................................................................... 75
    C.     Parties Entitled to Vote ................................................................................. 75
         1.     Fiduciaries and Other Representatives .................................. ~~76~~77
         2.     Agreements Upon Furnishing Ballots ......................................... 77
         3.     Change of Vote ............................................................................ 77
    D.     Waivers of Defects, Irregularities, etc. ......................................................... 77
    E.     Further Information, Additional Copies .................................................. ~~77~~78

XI. CONFIRMATION OF PLAN .............................................................................................. 78
    A.     Confirmation Hearing .................................................................................. 78
    B.     Objections to Confirmation ......................................................................... 78
    C.     Requirements for Confirmation of Plan .................................................. ~~79~~80
         1.     Acceptance of Plan ..................................................................... 80
         2.     Best Interests Test ....................................................................... 81
         3.     Feasibility ............................................................................. ~~81~~82
         4.     Valuation ..................................................................................... 84

XII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF PLAN ............. 84
    A.     Alternative Plan of Reorganization ............................................................. 84
    B.     Sale under Section 363 of the Bankruptcy Code ......................................... 84
    C.     Liquidation Under Chapter 7 of Bankruptcy Code .................................. ~~84~~85

XIII. CONCLUSION AND RECOMMENDATION .................................................................. 85

**Exhibit A:**    **Plan**
**Exhibit B:**    **Leases, Rights of Way and Rights of Use and Easement Related to Purchased Oil & Gas Lease Interests**
**Exhibit C:**    **Leases, Rights of Way and Rights of Use and Easement Related to FWE I Oil & Gas Lease Interests**
**Exhibit D:**    **Leases, Rights of Way and Rights of Use and Easement Related to FWE III Oil & Gas Lease Interests**
**Exhibit E:**    **Leases, Rights of Way and Rights of Use and Easement Related to FWE IV Oil & Gas Lease Interests**
**Exhibit F:**    **Leases, Rights of Way and Rights of Use and Easement Related to Abandoned Properties**
**Exhibit G:**    **Plan Release Provisions**
**Exhibit H:**    **Credit Bid Purchase Agreement**
**Exhibit I:**    **First Lien Exit Facility Commitment Letter**
**Exhibit J:**    **Second Lien Exit Facility Term Sheet**
**Exhibit K:**    **Apache Term Sheet Implementation Agreement**

# I.
# INTRODUCTION

Fieldwood Energy LLC ("**FWE**") and its debtor affiliates[2] (each, a "**Debtor**," and collectively, the "**Debtors**" or the "**Company**") submit this disclosure statement (including any exhibits and schedules hereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**") in connection with the Solicitation of votes on the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* dated April ~~14~~15, 2021 attached hereto as **Exhibit A** (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"). The Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") on August 3, 2020 and August 4, 2020 (as applicable, the "**Petition Date**"). The Debtors' chapter 11 cases are being jointly administered for procedural purposes only (together, the "**Chapter 11 Cases**").

The purpose of the Disclosure Statement is to provide information of a kind, and in sufficient detail, to enable creditors of the Debtors that are entitled to vote on the Plan to make an informed decision on whether to vote to accept or reject the Plan. The Disclosure Statement contains, among other things, summaries of the Plan, certain statutory provisions, events contemplated in the Chapter 11 Cases, and certain documents related to the Plan.[3]

As described more fully below, the Plan provides for a comprehensive set of restructuring transactions, including consummation of the Credit Bid Transaction and the Apache Transactions (each as defined below), which are collectively designed to (i) recapitalize and preserve the going concern value of specified Debtors' Deepwater Assets and Shelf Assets (each as defined below) and the jobs of over 1,000 employees and contractors, (ii) maximize recoveries to the Debtors' stakeholders, and (iii) ensure that all plugging and abandonment and decommissioning obligations (the "**P&A Obligations**") are addressed in a methodical and safe manner by responsible parties, as determined by Bureau of Safety and Environmental Enforcement ("**BSEE**").

The restructuring contemplated by the Plan is a significant achievement for the Debtors, developed in the midst of an unprecedented and challenging operating environment. The Debtors strongly believe that the Plan is in the best interests of their creditors, equity holders and estates, and represents the best available alternative at this time. Indeed, the Plan is supported by several of the Debtors' key stakeholders, including the DIP Lenders, the Prepetition FLTL Lenders holding approximately 87% of the FLTL Claims, the Prepetition SLTL Lenders holding

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[3] Capitalized terms used in the Disclosure Statement, but not defined herein, have the meanings ascribed to them in the Plan. To the extent any inconsistencies exist between the Disclosure Statement and the Plan, the Plan will govern.

-

reach the same conclusion or that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate re-solicitation of votes.  Further, a number of parties, primarily certain Predecessors and sureties, have asserted that the Plan will not satisfy all requirements for confirmation, including assertions that the Debtors cannot abandon the Abandoned Properties as proposed and the Debtors cannot satisfy all administrative expense claims in full.  The Debtors disagree with such assertions.

Moreover, the Debtors can make no assurances that they will receive the requisite votes for acceptance to confirm the Plan.  Even if all Voting Classes vote in favor of the Plan or the requirements for "cramdown" are met with respect to any Class that rejected the Plan, the Bankruptcy Court could decline to confirm the Plan if it finds that any of the statutory requirements for confirmation are not met.  If the Plan is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent chapter 11 plan.

### 3. Risk of Non-Consensual Confirmation and Conversion into Chapter 7 Cases

If any impaired class of claims or equity interests does not accept or is deemed not to accept a plan, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has voted to accept the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes.  If any Class votes to reject the Plan, then these requirements must be satisfied with respect to such rejecting Classes.  The Debtors believe that the Plan satisfies these requirements.

If no plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of holders of Claims, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code.  *See* ~~Section~~Art. XII.C~~-~~. hereof, as well as the Liquidation Analysis attached hereto as **Exhibit M** (the "**Liquidation Analysis**"), for a discussion of the effects that a chapter 7 liquidation would have on the recoveries of holders of Claims and Interests.

### 4. Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date and that there is not a material risk that the Debtors will not be able to obtain all necessary governmental approvals (including any regulatory approval from BOEM and BSEE, and, if applicable, antitrust approval), there can be no assurance as to the timing of the Effective Date.  Certain transactions contemplated under the Plan may require a review under the Hart-Scott-Rodino Antitrust Improvements Act.  If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article IX of the Plan, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, none of the transactions set forth in Article V of the Plan shall have been consummated, the Debtors and all holders of Claims or Interests would be restored to the status

5.  **Valuation of NewCo Not Intended to Represent Trading Value of New Equity Interests of NewCo**

The valuation of NewCo is not intended to represent the trading value of equity in public or private markets and is subject to additional uncertainties and contingencies, all of which are difficult to predict. Actual market prices of such New Equity Interests at issuance will depend upon, among other things: (i) prevailing interest rates; (ii) conditions in the financial markets; (iii) the anticipated initial securities holdings of prepetition creditors, some of whom may prefer to liquidate their investment rather than hold it on a long-term basis; and (iv) other factors that generally influence the prices of the New Equity Interests. The actual market price of the New Equity Interests is likely to be volatile. Many factors, including factors unrelated to the Credit Bid Purchaser's actual operating performance and other factors not possible to predict, could cause the market price of equity to rise and fall. Accordingly, the value, stated herein and in the Plan, of the securities to be issued does not necessarily reflect, and should not be construed as reflecting, values that will be attained for the New Equity Interests in the public or private markets.

6.  **No Intention to Pay Dividends**

NewCo may not pay any dividends on the New Equity Interests and may instead retain any future cash flows for debt reduction and to support its operations. As a result, the success of an investment in the New Equity Interests may depend entirely upon any future appreciation in the value of the New Equity Interests. There is, however, no guarantee that the New Equity Interests will appreciate in value or even maintain their initial value.

~~D. Factors Relating to Second Lien Backstop Commitment Letter~~

~~1. Bankruptcy Court Might Not Approve Second Lien Backstop Commitment Letter~~

~~The Bankruptcy Court's approval of the Second Lien Backstop Commitment Letter is crucial to consummating the restructuring contemplated by the Plan. Failure to obtain the Bankruptcy Court's approval of the Second Lien Backstop Commitment Letter could prevent the Debtors from consummating the Plan and the transactions contemplated thereby.~~

**D.** ~~E.~~ **Risks Related to Equity Rights Offerings and ERO Backstop Agreements**

1.  **Bankruptcy Court Might Not Approve FLTL Equity Rights Offering Procedures or SLTL Equity Rights Offering Procedures**

The Bankruptcy Court's approval of the FLTL Equity Rights Offering Procedures and SLTL Equity Rights Offering Procedures is crucial to consummating the restructuring contemplated by the Plan. Failure to obtain the Bankruptcy Court's approval of the FLTL Equity Rights Offering Procedures or the SLTL Equity Rights Offering Procedures could prevent the Debtors from consummating the Plan and the transactions contemplated thereby.

74

### 2. Debtors May Not Secure ERO Backstop Agreements

Although the Debtors expect to secure a commitment to fully backstop the $40 million Equity Rights Offerings and obtain Bankruptcy Court approval of the ERO Backstop Agreements, the Debtors have not yet finalized the terms of the ERO Backstop Agreements and cannot guarantee that such agreement commitment will be secured and approved by the Bankruptcy Court. Failure to secure such commitment and obtain Bankruptcy Court approval of the ERO Backstop Agreements could prevent the Debtors from consummating the Plan and the transactions contemplated thereby.

## E. ~~F.~~ Risks Related to Recoveries for Holders of General Unsecured Claims Under the Plan

### 1. Allowed General Unsecured Claims Could be More than Projected

The estimate of Allowed General Unsecured Claims and recoveries for Holders of Allowed General Unsecured Claims set forth in the Disclosure Statement are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual amounts of Allowed General Unsecured Claims may significantly vary from the estimated amounts contained in the Disclosure Statement. Such difference may materially and adversely affect, among other things, the recoveries to Holders of Allowed General Unsecured Claims under the Plan.

### 2. Residual Distributable Value of the Single Share of Post-Effective Date FWE Parent

Although the Debtors will endeavor to value the residual distributable value of the Single Share of the Post-Effective Date FWE Parent held for the benefit of the holders of Allowed General Unsecured Claims (which will be included as a supplement to this Disclosure Statement), there can be no certainty that such estimated value will materialize into any distributions to holders of Allowed General Unsecured Claims.

The residual distributable value of the Single Share of the Post-Effective Date FWE Parent will necessarily be affected by, among other things: (i) recoveries generated in connection with the operation of the remaining assets of the Post-Effective Date Debtors and FWE I; (ii) the outcome of objections to Claims; and (iii) the cost and expenses of such actions and generally administering the Post-Effective Date Debtors and FWE I.

## F. ~~G.~~ Additional Factors

### 1. Debtors Could Withdraw Plan

The Plan may be revoked or withdrawn before the Confirmation Date by the Debtors.

### 2. Debtors Have No Duty to Update

The statements contained in the Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of the Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since