# Exhibit E

# Plan Administrator Agreement[3]

---

[3] The Plan Administrator Agreement remains subject to further review and negotiation with certain parties, including the proposed Plan Administrator.

SUBJECT TO FRE 408
Confidential

# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "**Agreement**") is made this [●] day of [●], 2021, by and among Fieldwood Energy Inc.; Fieldwood Energy LLC; Dynamic Offshore Resources NS, LLC; Fieldwood Energy Offshore LLC; Fieldwood Onshore LLC; Fieldwood SD Offshore LLC; Fieldwood Offshore LLC; FW GOM Pipeline, Inc.; GOM Shelf LLC; Bandon Oil and Gas GP, LLC; Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Galveston Bay Pipeline LLC; and Galveston Bay Processing LLC (each, a "**Debtor**" and collectively, the "**Debtors**") and David Dunn of Province, LLC, a [Delaware limited liability company], solely in his capacity as administrator of the Plan (the "**Plan Administrator**").[1] This Agreement sets forth, among other things, the scope of the services to be provided by the Plan Administrator. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Fifth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No.[●]) (as may be further modified, amended or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**").

## RECITALS:

A.      **WHEREAS**, commencing on August 3, 2020 (the "**Petition Date**"), the Debtors filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") voluntary cases (the "**Chapter 11 Cases**") pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

B.      **WHEREAS**, on June 14, 2021, the Debtors filed with the Bankruptcy Court the Plan.

C.      **WHEREAS**, on [●], 2021, the Bankruptcy Court entered an order confirming the Plan (Docket No.[●]) (the "**Confirmation Order**").

D.      **WHEREAS**, pursuant to the Plan, as of the Effective Date, the Plan Administrator shall be appointed as Plan Administrator to implement the Plan and the actions contemplated therein.

E.      **WHEREAS**, pursuant to the Plan, once appointed, the Plan Administrator shall have the authority and right on behalf of the Debtors and the Debtors, as reorganized as of the Effective Date in accordance with the Plan, including FWE III but excluding for the purposes of this Agreement the Post-Effective Date FWE I Subsidiaries (the "**Post-Effective Date Debtors**"), without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement the provisions of the Plan.

**NOW, THEREFORE**, in consideration of the foregoing and the covenants and agreements set forth herein, the sufficiency of which is hereby acknowledged by the parties, the parties hereto agree as follows:

---

[1] [NTD:  We assume the agreement will be executed prior to the Effective Date but conditioned upon the Plan becoming effective.]

**SUBJECT TO FRE 408**
**Confidential**

1. *Acceptance of Appointment*.  The Debtors hereby appoint David Dunn of Province, LLC to serve as Plan Administrator, and Mr. Dunn accepts his appointment as Plan Administrator and agrees to oversee and provide the services to be provided by the Plan Administrator pursuant to the Plan, the Confirmation Order, and as set forth herein (the "**Services**").  Notwithstanding the date of execution of this Agreement, this Agreement shall only become effective on the Effective Date of the Plan.

2. *Duties, Powers, and Rights of Plan Administrator*.  From and after the Effective Date, and until the end of the Plan Administrator's services pursuant to Section 9 hereof, but subject to the Plan and the Confirmation Order, the Plan Administrator shall act for the Debtors and the Post-Effective Date Debtors in the same fiduciary capacity as applicable to a board of directors and officers. The Plan Administrator shall have the rights and powers of a debtor in possession under section 1107 of the Bankruptcy Code, shall be a "representative of the estate" pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be vested with the rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code, and shall have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary; *provided, however*, the Plan Administrator shall have no rights, powers, or duties that are inconsistent with or contrary to the Plan or the Confirmation Order.

Specifically, the Plan Administrator shall have all duties, powers, and rights set forth herein, in the Plan, and in the Confirmation Order, including the following:

(i) subject to Section 7 of the Plan, except to the extent a Claim has been previously Allowed, control and effectuate the Claims reconciliation process (including Allowance or Disallowance of Claims), in accordance with the terms of the Plan and Confirmation Order, including to object to, seek to subordinate, compromise, estimate, or settle any and all Claims against the Debtors;

(ii) determine the Distribution Date and make Distributions to holders of Allowed Claims and Interests in accordance with the Plan and Confirmation Order, including distributions from the Claims Reserve, Professional Fee Escrow and Plan Administrator Expense Reserve;

(iii) exercise its reasonable business judgment to direct and control the Debtors or Post-Effective Date Debtors under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv) prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described in the Plan or this Agreement;

(v) engage in the ownership, operation (including acting as agent to a designated operator), plugging and abandonment, and decommissioning of the (a) FWE III Assets, including the assets listed on the Schedule of FWE III Oil & Gas Lease Interests and (b) except as otherwise agreed pursuant to an Additional Predecessor Agreement, any assets of any FWE Additional Entity;

2

**SUBJECT TO FRE 408**
**Confidential**

(vi)  abandon any property determined by the Plan Administrator to be of *de minimis* value or burdensome to the Estates;

(vii)  donate and distribute any surplus Cash, in accordance with Section 6.10 of the Plan, to a Tax Code § 501(c)(3) tax-exempt organization selected by the Plan Administrator;

(viii)  other than any Causes of Action released by the Debtors pursuant to the Plan or, otherwise, purchased by Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, or allocated to FWE I pursuant to the Initial Plan of Merger, prosecute all Causes of Action retained on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors and their Estates;

(ix)  stand in the same position as the Debtors with respect to any claim the Debtors, their Estates, and/or the Post-Effective Date Debtors may have as to any attorney-client privilege, the work-product doctrine, or any other privilege attaching to any documents or communications (whether written or oral), and succeed to all of the rights of the Debtors, their Estates, and/or the Post-Effective Date Debtors to preserve or assert any such privilege; *provided that*, for the avoidance of doubt, any such privilege cannot be waived, limited, or disposed of by the Plan Administrator without the express written consent of Credit Bid Purchaser and its successors and assigns;

(x)  retain, employ, terminate, or replace professionals to assist or represent it in performing its duties under this Agreement, the Plan and Confirmation Order;

(xi)  pay all fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors (expressly excluding any Restructuring Expenses) from the Plan Administrator Expense Reserve;

(xii)  comply with, and cause the Debtors and Post-Effective Date Debtors to comply with, the Debtors' or Post-Effective Date Debtors' continuing obligations under the Credit Bid Purchase Agreement, the Plan and the Confirmation Order;

(xiii)  maintain the books and records and accounts of the Debtors and Post-Effective Date Debtors;

(xiv)  establish and maintain bank accounts in the name(s) of the Post-Effective Date Debtors;

(xv)  establish the Plan Administrator Expense Reserve, deposit Cash in the Plan Administrator Expense Reserve Amount into the Plan Administrator Expense Reserve, and use the Plan Administrator Expense Reserve solely to satisfy the expenses of the Plan Administrator and the Post-Effective Date Debtors as set forth in the Plan;

(xvi)  incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

**SUBJECT TO FRE 408**
**Confidential**

(xvii)   following the Effective Date, pay any fees and expenses in Cash in accordance with Section 2.4 of the Plan;

(xviii)  administer each Debtor's and Post-Effective Date Debtors' tax obligations, including (a) filing tax returns and paying tax obligations, (b) implementing tax allocation and/or tax sharing agreements among the Post-Effective Date Debtors and their subsidiaries, and (c) representing the interest and account of each Debtor, each Debtor's estate, or each Post-Effective Date Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xix)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors or Post-Effective Date Debtors that are required by the Plan, by any Governmental Unit or applicable law, including any forms and filings required by the Government;

(xx)     cause the Debtors or Post-Effective Date Debtors to pay statutory fees in accordance with Section 12.1 of the Plan;

(xxi)    file a status report with the Bankruptcy Court on a quarterly basis setting forth the activities of the Plan Administrator during such quarter, including an accounting of the Plan Administrator Expense Reserve during such quarter;

(xxii)   perform other duties and functions that are consistent with the implementation of the Plan or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan;

(xxiii)  close the Chapter 11 Cases pursuant to Section 5.24 of the Plan;

(xxiv)   hold in trust the Single Share as custodian for the benefit of the holders of Allowed General Unsecured Claims, and record the Single Share on the books and records maintained by the Plan Administrator;

(xxv)    following the Effective Date, in the Plan Administrator's sole discretion, cause each Post-Effective Date Debtor to take such actions as permitted by applicable law, the applicable Amended Organizational Documents or other applicable corporate governance documents, the Apache Definitive Documents, any Additional Predecessor Agreement Document, as such Post-Effective Date Debtor may determine is reasonable and appropriate, including causing: (a) the taking of any action contemplated by any Additional Predecessor Agreement Documents and the consummation thereof (including the formation of a new entity or consummation of a divisional merger), (b) a Post-Effective Date Debtor to be merged into another Post-Effective Date Debtor or an affiliate of a Post-Effective Date Debtor, (c) a Post-Effective Date Debtor to be dissolved, (d) the legal name of a Post-Effective Date Debtor to be changed, (e) a Post-Effective Date Debtor to convert its form of entity, or (f) the closure of a Post-Effective Date Debtor's Chapter 11 Case;

(xxvi)   following the Effective Date, cause the Post-Effective Debtors to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or

4

**SUBJECT TO FRE 408**
**Confidential**

necessary or appropriate to effectuate the Plan, including, (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree, (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree, (c) the filing of appropriate organizational documents governing the Post-Effective Date Debtors, including the Post-Effective Date Debtors' respective Amended Organizational Documents, and any amendments or restatements thereto, or any amendments or restatements thereto, or any documents governing any Post-Effective Date Debtor's reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law and, as necessary, other constituent documents, including, without limitation, the organizational documents governing non-Debtor subsidiaries, as permitted by the laws of their respective states of incorporation, (d) the Restructuring Transactions, and (e) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law;

(xxvii) issue, execute, and deliver any agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan);

(xxviii) cause the Post-Effective Date Debtors to take all actions consistent with the Plan and the Confirmation Order as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan;

(xxix) if applicable, establish and transfer certain assets to a liquidating trust for the benefit of one or more classes of Claims pursuant to and in accordance with Section 5.22 of the Plan; and

(xxx) submit one or more orders to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the US Trustee that closes and issues a final decree for each of the Chapter 11 Cases.

3. *Board of Directors and Officers*. Upon the Effective Date and except as otherwise set forth in the Plan, the Plan Supplement or the Confirmation Order, the officers and directors of the Debtors existing before the Effective Date shall be relieved of any and all duties with respect to the Debtors, and the Plan Administrator shall serve as the sole officer, director, or manager of each Post-Effective Date Debtor. The Plan Administrator may also elect such additional managers(s) and officer(s) of each Post-Effective Date Debtor as the Plan Administrator deems necessary to implement the Plan and the actions contemplated herein. The Plan Administrator shall also have the power to act by written consent to remove any officer or manager of any Post-Effective Date Debtor at any time with or without cause.

5

**SUBJECT TO FRE 408**
**Confidential**

4. *No Other Duties*. Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to its position.

5. *Retention of Professionals*. To implement the provisions of the Plan and the actions contemplated herein, the Plan Administrator may hire (or continue to engage previously hired Estate professionals) attorneys, accountants and other professionals as may be required or appropriate in connection with its duties herein, and pay reasonable compensation to such advisors, including compensation for services rendered prior to the Effective Date. Any professionals retained by the Plan Administrator, shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable and documented fees, costs and expenses incurred, payable solely from the Plan Administrator Expense Reserve. For the avoidance of doubt, any compensation for services rendered prior to the Effective Date shall be payable from the Plan Administrator Expense Reserve. The payment of the fees, costs and expenses of the Plan Administrator and its retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided*, *however*, that any disputes related to such fees, costs and expenses may be brought before the Bankruptcy Court by any party-in-interest. For the avoidance of doubt, NewCo and its subsidiaries, including the Credit Bid Purchaser, shall not be liable to any professionals retained by the Plan Administrator for any fees, costs and expenses incurred under this Section 5.

6. *Insurance*. The Plan Administrator is authorized to obtain all reasonably necessary insurance coverage and will be reimbursed pursuant to Section 8 hereof.

7. *Fees*. The fees (including fees for services rendered prior to the Effective Date) of the Plan Administrator and any professional employed by Province, LLC or Stein & Holly Advisors LLC who is retained by the Plan Administrator pursuant to this Agreement or the Plan shall be billed on an hourly basis in accordance with the below:

(i) Mr. David Dunn: $850 per hour;

(ii) Stein & Holly Advisors LLC Professionals: $850 per hour; and

(iii) Province, LLC Professionals: applicable hourly rates, *provided* that individuals on the fiduciary team shall bill at the blended hourly rate of $450 per hour.

All such fees shall be payable monthly solely out of the Plan Administrator Expense Reserve, on a first priority basis, and shall not be subject to the approval of the Bankruptcy Court. For the avoidance of doubt, NewCo and its subsidiaries, including the Credit Bid Purchaser, shall not be liable to the Plan Administrator for any fees and expenses incurred pursuant to this Agreement.

8. *Expenses*. In performance of the Services, the reasonable and documented out-of-pocket expenses of the Plan Administrator and its professionals, including any insurance policy obtained by the Plan Administrator in connection with the Services, shall be reimbursed solely from the Plan Administrator Expense Reserve on a monthly basis; *provided*, that the travel expenses of the Plan Administrator and its professionals shall not be reimbursable; *provided further*, that the Plan Administrator may use amounts necessary in the Plan Administrator Expense

**SUBJECT TO FRE 408**
**Confidential**

Reserve to obtain any insurance policy reasonably necessary for the performance of the Plan Administrator's duties hereunder.

9. *Service of Plan Administrator*. The Plan Administrator shall serve until the earliest to occur of (i) the Bankruptcy Court enters an order or orders closing each of the Chapter 11 Cases; (ii) the Bankruptcy Court enters an order removing the Plan Administrator for cause; or (iii) the Plan Administrator voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Plan Administrator is appointed in accordance with the Plan, the Confirmation Order, and this Agreement. Subject to Section 11, the Plan Administrator may resign at any time by giving at least forty-five (45) days' prior written notice of its intention to do so to the Bankruptcy Court. Upon the occurrence of any event described in the foregoing clauses, this Agreement shall terminate and no further fees shall be due to the Plan Administrator; *provided* that the Plan Administrator shall be entitled to the payment of compensation and reimbursement of expenses incurred (a) prior to such termination and (b) after such termination in connection with the transition to a successor Plan Administrator, in each case in accordance with Section 8 hereof.

10. *Removal of Plan Administrator*. The Plan Administrator may be removed and replaced at any time for cause. Any party-in-interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Plan Administrator for cause.[2] Such removal shall be effective on the date specified in the order approving removal by the Bankruptcy Court. Notwithstanding the removal of the Plan Administrator pursuant to this Section 10, the rights of the resigning Plan Administrator under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such resigning Plan Administrator following the effectiveness of such resignation.

11. *Resignation of Plan Administrator*. In the event of a resignation, the Plan Administrator shall continue to serve until the date that is forty-five (45) days after the date such notice is filed with the Bankruptcy Court. Notwithstanding the resignation of the Plan Administrator pursuant to this Section 111, the rights of the resigning Plan Administrator under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Plan Administrator following the effectiveness of such resignation. Notwithstanding any other provision herein, upon the resignation of the Plan Administrator, the undersigned Plan Administrator shall reasonably assist and cooperate in effecting the assumption of the duties by any successor Plan Administrator and continue to serve in such capacity until such time as (i) a successor Plan Administrator is identified and accepts the appointment as Plan Administrator and (ii) notice is provided to the Bankruptcy Court of such successor Plan Administrator pursuant to this Section 11; *provided* that in no event shall the outgoing Plan Administrator be required to continue to serve for a period longer than forty-five (45) days following its resignation.

---

[2] For purposes of this Agreement, the term "for cause" shall mean: (i) the commission of a crime under the laws of the United States or any state thereof involving fraud, theft, false statements or other similar acts, or the commission of any crime that is a felony (or a comparable classification in a jurisdiction that does not use such terms) under such laws; (ii) the willful, grossly negligent or repeated failure to perform any material employment-related duties; or (iii) the willful, grossly negligent or repeated violation of any substantive and material written policy adopted by the Plan Administrator as may be in effect from time to time.

**SUBJECT TO FRE 408**
**Confidential**

12. *Appointment of Successor Plan Administrator*. Upon resignation, dissolution, incapacity or removal of a Plan Administrator, the Plan Administrator shall recommend a successor Plan Administrator, on notice and following a hearing to be appointed by order of the Bankruptcy Court. Upon the resignation, dissolution, incapacity or removal of a Plan Administrator, the Bankruptcy Court upon request or on its own motion may appoint a successor Plan Administrator on an interim or permanent basis. Any successor Plan Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator.

13. *Powers and Duties of Successor Plan Administrator*. For the avoidance of doubt, a successor Plan Administrator shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement and the Plan.

14. *Exculpation*. The Plan Administrator, his firms, companies, partners, officers, directors, employees, professionals, representatives, agents, successors, and assigns (collectively, the "**Plan Administrator Parties**") shall not have or incur any liability to any third party, including any Holder of a Claim or Interest, for any act taken or omission made in connection with or related to their performance of the duties conferred upon the Plan Administrator by the Plan, the Confirmation Order, this Agreement, and any orders of the Bankruptcy Court, except to the extent an act is determined by Final Order to be the result of gross negligence, willful misconduct, or fraud. No Holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action against the Plan Administrator or the Plan Administrator Parties for taking any action in accordance with, or to implement the provisions of, the Plan, the Confirmation Order, this Agreement, and any orders of the Bankruptcy Court. No provision of this Agreement or the Plan shall require the Plan Administrator to expend or risk the Plan Administrator's own funds or otherwise incur any financial liability in the performance of any of the Plan Administrator's duties hereunder or under the Plan, or in the exercise of any of the Plan Administrator's rights or powers, if the Plan Administrator shall have reasonable grounds for believing that repayments or funds or adequate indemnity or security satisfactory to the Plan Administrator against such risk or liability is not reasonably assured to the Plan Administrator. The provisions of this Section 14 shall survive the termination of this Agreement.

15. *Indemnification*. The Estates and the Post-Effective Date Debtors shall, to the fullest extent permitted by applicable law, indemnify and hold harmless the Plan Administrator Parties from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs, arising out of or due to the implementation or administration of the Plan or the discharge of the Plan Administrator Parties' duties hereunder or otherwise, except those acts or omissions that are determined by Final Order to have arisen out of such Plan Administrator Parties' gross negligence, fraud, or willful misconduct. In the event that, at any time whether before or after the termination of this Agreement, as a result of or in connection with this Agreement, the Plan Administrator Parties are required to produce any of their personnel (including former employees) or agents for examination, deposition or other written, recorded or oral presentation, or the Plan Administrator Parties are required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any materials within the Plan Administrator Parties' possession or control pursuant to a subpoena or other legal (including administrative) process, the Plan Administrator Parties shall be reimbursed by the

**SUBJECT TO FRE 408**
**Confidential**

Estates and the Post-Effective Date Debtors for the Plan Administrator Parties' counsel, and will be compensated by the Estates and the Post-Effective Date Debtors for the time expended by its personnel or agents based on such personnel or agent's then-current hourly rate. In addition, subject to Section 16 hereof, the Plan Administrator (in its capacity as such) shall be indemnified and held harmless as set forth in Section 5.9(g) of the Plan. The provisions of this Section 15 shall survive the termination of this Agreement. For the avoidance of doubt, nothing in this Section 15 shall require NewCo, or any of its subsidiaries, to assume any indemnification obligations for the Plan Administrator Parties.

16. *Plan Provisions*. In connection with all actions taken in its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any organizational document of the Debtors, this Agreement, the Plan, and the Confirmation Order. Notwithstanding anything herein, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

17. *Reliance by Plan Administrator*. To the fullest extent permitted by applicable law, the Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if it relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of e-mails or facsimiles, to have been sent or the Plan Administrator reasonably believes to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. To the fullest extent permitted by applicable law, the Plan Administrator may consult with counsel, accountants, financial advisors, and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct of the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction). To the fullest extent permitted by applicable law, the Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting fraud, gross negligence, or willful misconduct of the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction). To the fullest extent permitted by applicable law, the Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection herewith or therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

18. *Cooperation*. The Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, the FWE IV Sole Manager, and NewCo and its subsidiaries (including the Credit Bid Purchaser) and their respective professionals, as appropriate, shall cooperate with each other in relation to their respective activities and obligations in respect

**SUBJECT TO FRE 408**
**Confidential**

of the Plan, including objecting to, settling or otherwise reconciling claims as provided herein, and by providing reasonable, good-faith access to personnel, systems, and books and records and their respective personnel and consulting with each other to avoid duplication of effort; *provided, however,* that the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, the FWE IV Sole Manager and NewCo and its subsidiaries (including the Credit Bid Purchaser) and in each case their advisors, if any, shall enter into a confidentiality agreement before sharing any such documents and/or information to the extent deemed reasonably necessary by the Debtors, Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, the FWE IV Sole Manager and NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable.

19. *Other Activities*. The Plan Administrator shall be entitled to perform services for and be employed by third parties; provided, that such performance or employment affords the Plan Administrator sufficient time to carry out the Plan Administrator's responsibilities and duties as Plan Administrator and such performance or employment does not conflict with or otherwise prohibit the Plan Administrator from performing its responsibilities or duties free of conflict or interruption.

20. *Effect of Termination; Survival*. Upon termination of this Agreement, the Plan Administrator shall have no further duties or obligations hereunder or as Plan Administrator, except as specifically provided herein. For the avoidance of doubt, any other provision in the Agreement, which, by its terms, specifically survives termination of the Agreement, shall survive termination of this Agreement.

21. *Headings*. The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement or of any term or provision hereof.

22. *Amendment; Waiver*. The Plan Administrator, without the approval of the Bankruptcy Court may, from time to time, modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order*; provided that*, any material modification, supplement or amendment of this Agreement that is inconsistent with the Plan or the Confirmation Order must be presented, on notice, to the Bankruptcy Court for approval. No failure by any party hereto to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

23. *Notices*. Any notices or other communications required or permitted hereunder shall be sufficiently given if in writing and personally delivered or sent by registered or certified postage prepaid, return receipt requested, or sent by facsimile, addressed as follows or to such other address as any party shall have given notice of pursuant hereto:

In the case of the Plan Administrator:
David M. Dunn, solely in his capacity as Plan Administrator
Province, LLC
700 Canal Street, Suite 12E
Stamford, CT 06902

**SUBJECT TO FRE 408**
**Confidential**

Email: ddunn@provincefirm.com
Phone: (702) 849-1271

24. *Governing Law*.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to the rules of conflict of laws of the State of Texas or any other jurisdiction.

25. *Retention of Jurisdiction*. The Bankruptcy Court shall retain exclusive jurisdiction over this Agreement.

26. *Conflict with Plan*.  This Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order.  In the event that the provisions of this Agreement (including any amendments pursuant to Section 22 hereof) are found to be inconsistent with the provisions of the Plan, the provisions of the Plan will control, and to the extent any such provisions of this Agreement are found to be inconsistent between the Plan and the Confirmation Order, the provisions of the Confirmation Order will control. Notwithstanding anything to the contrary contained herein, all fees, costs, expenses, and payments hereunder shall be subject in all respects to the provisions of the Plan and the Confirmation Order, including, without limitation, the Plan Administrator Expense Reserve.

27. *Severability*.  If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof.  In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect.  Notwithstanding the foregoing, the parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

28. *Integration*.  This Agreement (together with the Plan and the Confirmation Order) sets forth in full the terms of agreement between the parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements and understandings, whether written or oral, between the parties with respect thereto.

29. *Successors and Assigns*.  No party hereto shall have the right to assign its rights hereunder.

30. *Counterparts; Effectiveness*. This Agreement may be executed in one or more counterparts, each of which shall be an original, but all such counterparts shall together constitute one and the same agreement.  Provided the Effective Date has occurred, this Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.  The parties agree that this Agreement will be considered signed when the signature of a party is delivered by facsimile or e-mail transmission. Such facsimile or e-mail signature shall be treated in all respects as having the same effect as an original signature.

11

**SUBJECT TO FRE 408**
**Confidential**

[*Signature pages follow.*]

12

**SUBJECT TO FRE 408**
**Confidential**

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**DEBTORS**:

Fieldwood Energy LLC
Fieldwood Energy Inc.
Dynamic Offshore Resources NS, LLC
Fieldwood Energy Offshore LLC
Fieldwood Onshore LLC
Fieldwood SD Offshore LLC
Fieldwood Offshore LLC
FW GOM Pipeline, Inc.
GOM Shelf LLC
Bandon Oil and Gas GP, LLC
Bandon Oil and Gas, LP
Fieldwood Energy SP LLC
Galveston Bay Pipeline LLC
Galveston Bay Processing LLC

By: _____
  Name:
  Title:

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**PLAN ADMINISTRATOR**:

By: [Plan Administrator]

---

Name: [●], solely in its capacity as Plan Administrator and not in any individual capacity
Title:

[*Signature Page to Plan Administrator Agreement*]