## **Exhibit L**

**New Money Warrant Agreement**

WARRANT AGREEMENT

between

[NEWCO],

AS ISSUER

and

AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC,

AS WARRANT AGENT

[●], 2021

THE WARRANTS WERE ORIGINALLY ISSUED IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND THE WARRANTS MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED EXCEPT PURSUANT TO A REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR AN APPLICABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS THEREOF.

## TABLE OF CONTENTS

PAGE

Section 1.  *Certain Defined Terms* ................................................................1
Section 2.  *Appointment of Warrant Agent* ...................................................5
Section 3.  *Issuance of Warrants; Form, Execution and Delivery* ...................5
Section 4.  *Transfers* .....................................................................................7
Section 5.  *Duration and Exercise of Warrants* .............................................8
Section 6.  *Anti-Dilution Provisions* ............................................................11
Section 7.  *Reorganization* ..........................................................................13
Section 8.  *Covenants of the Company* .........................................................14
Section 9.  *Warrant Agent* ............................................................................15
Section 10.  *Severability* ...............................................................................19
Section 11.  *Holder Not Deemed a Shareholder* ............................................19
Section 12.  *Notices to Company and Warrant Agent* .....................................19
Section 13.  *Supplements and Amendments* ...................................................20
Section 14.  *Termination* ...............................................................................20
Section 15.  *Governing Law and Consent to Forum* .......................................21
Section 16.  *Waiver of Jury Trial* ..................................................................21
Section 17.  *Benefits of This Agreement* ........................................................22
Section 18.  *Counterparts* .............................................................................22
Section 19.  *Headings* ...................................................................................22
Section 20.  *Electronic Transmission* ............................................................22

EXHIBITS

Exhibit A        Form of Election to Exercise Warrant

Exhibit B        Form of Warrant Assignment

#94593851v2

This WARRANT AGREEMENT (this "**Agreement**") is dated as of [●], 2021, between [NEWCO], a Delaware corporation (the "**Company**"), as issuer, and AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC, as warrant agent (the "**Warrant Agent**").

W I T N E S S E T H

WHEREAS, pursuant to and in connection with [the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors,* dated April 15, 2021 [Docket No. 1284], Case No. 20-33948 (MI) (Bankr. S.D. Tex.)] (the "**Plan**") relating to a reorganization under chapter 11 of title 11 of the United States Code, the Company has agreed to issue to the Holders (as defined herein) an aggregate of [●] warrants (the "**Warrants**"), which are exercisable to receive shares (the "**Shares**") of common stock (the "**Common Stock**"), par value $0.01 per share, of the Company;

WHEREAS, the Company desires the Warrant Agent to act on behalf of the Company, and the Warrant Agent is willing to so act, in connection with the issuance, registration, transfer, exchange, replacement, exercise and cancellation of the Warrants;

WHEREAS, the Warrant Agent, at the request of the Company, has agreed to act as the agent of the Company in connection with the issuance, registration, transfer, exchange, replacement, exercise and cancellation of the Warrants as provided herein;

WHEREAS, the Warrants are being offered and sold in reliance on the exemption from the registration requirements of the Securities Act of 1933, as amended (the "**Securities Act**"), and any applicable state securities or "blue sky" laws afforded by Section 4(a)(2) of the Securities Act; and

WHEREAS, the Company desires to enter into this Agreement to set forth the terms and conditions of the Warrants and the rights of the Holders thereof.

NOW, THEREFORE, in consideration of the premises and mutual agreements herein set forth, the parties hereto agree as follows:

Section 1.    *Certain Defined Terms*.  Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Section.

"**Agreement**" has the meaning specified in the preamble hereof.

"**Appropriate Officer**" means the Chief Executive Officer, President, Chief Financial Officer, Treasurer, Secretary, Assistant Secretary or any Vice President (or higher or equivalent officer) of the Company.

"**Board**" means, as of any date, the Board of Directors of the Company in office on such date.

"**Business Day**" means any day other than a Saturday or Sunday or any other day on which national banking associations in the State of New York generally are closed for commercial banking business.

"**Charter**" means the Amended and Restated Certificate of Incorporation of the Company (as amended).

"**Common Stock**" has the meaning specified in the recitals hereof.

"**Company**" has the meaning specified in the preamble hereof.

"**Direct Registration Warrants**" has the meaning specified in Section 3(a) hereof.

"**Distributed Property**" has the meaning specified in Section 6(b) hereof.

"**Effective Date**" has the meaning specified in the Plan.

"**Exchange**" means a U.S. national or regional securities exchange.

"**Exercise Date**" means, with respect to an exercise of a Warrant by a Holder, the first date on which such Holder has satisfied the conditions for exercise of such Warrant as set forth in Section 5(c) (unless such conditions are satisfied after 5:00 p.m., New York City time, on a Business Day or on a date that is not a Business Day, in which event the Exercise Date shall be the next following Business Day).

"**Exercise Period**" means the period commencing upon the execution and delivery of this Agreement by the parties hereto and ending on, and including, the Expiration Date.

"**Expiration Date**" has the meaning specified in Section 5(a) hereof.

"**Fair Market Value**" means, as of any date of determination:

(i)      in the case of shares of stock that are listed on an Exchange on such date, the average of the Last Reported Sale Prices for such shares for the 10 consecutive Trading Days immediately preceding such date (or such less number of Trading Days for which such shares were so listed); *provided* that, with respect to any determination of Fair Market Value pursuant to this clause (i), the Company, in its good faith determination, shall make appropriate adjustments to such Last Reported Sale Prices to account for any adjustments to the Warrant Share Number that become effective, or any event requiring any adjustments to the Warrant Share Number where the record date, effective date or ex-date, as the case may be, of the event occurs, during such period of consecutive Trading Days;

(ii)     in the case of cash, the amount thereof; and

#94593851v2

(iii)        in the case of securities not covered by clause (i) above or any other property, as determined in good faith and in a commercially reasonable manner by the Board.

"**Holder**" means the record holder of a Warrant listed on the Warrant Register.

"**Intended Tax Treatment**" has the meaning specified in Section 5(k) hereof.

"**Joinder**" has the meaning specified in the Stockholders Agreement.

"**Last Reported Sale Price**" means, on any day, (i) in the case of shares of stock that are listed on a Principal Exchange on such day, the closing sale price per share (or if no closing sale price is reported, the average of the bid and ask prices or, if more than one in either case, the average of the average bid and the average ask prices) on such day as reported in composite transactions for the Principal Exchange and (ii) in the case of shares of stock that are listed on an Exchange other than a Principal Exchange on such day, the closing sale price per share (or if no closing sale price is reported, the average of the bid and ask prices or, if more than one in either case, the average of the average bid and the average ask prices) on such day as reported in composite transactions for the primary Exchange on which such shares are traded.

"**Marketable Securities**" means any common equity securities (whether voting or non-voting) (including American depositary shares representing common equity securities) listed on a Principal Exchange.

"**Person**" means any natural person, corporation, partnership, limited liability company, firm, association, trust, government, governmental agency, or other entity, whether acting in an individual, fiduciary or other capacity.

"**Plan**" has the meaning specified in the recitals hereof.

"**Principal Exchange**" means each of The New York Stock Exchange, The Nasdaq Global Market and The Nasdaq Global Select Market (or any of their respective successors).

"**Reference Property**" means, in respect of any Reorganization, the kind and amount of shares of stock, other securities or other property or assets (including cash or any combination thereof) that a holder of a number of Shares (or Units of Reference Property in respect of a prior Reorganization, as applicable) equal to the number of Warrant Shares (or Units of Reference Property in respect of a prior Reorganization, as applicable) obtainable upon exercise of each Warrant immediately prior to such Reorganization would have owned or been entitled to receive.

"**Reorganization**" means any consolidation, merger, statutory share exchange, business combination or similar transaction with a third party, any sale, lease or other transfer to a third party of all or substantially all of the consolidated assets of the Company and its Subsidiaries, or any recapitalization, reclassification or transaction that results in a change of the Common Stock (other than as described in Section 6(a)), in

#94593851v2

each case, in which the Common Stock is converted into, is exchanged for or becomes the right to receive cash, other securities or other property.

"**Resale Restriction Termination Date**" has the meaning specified in Section 3(b) hereof.

"**Securities Act**" has the meaning specified in the recitals hereof.

"**Shares**" has the meaning specified in the recitals hereof.

"**Stockholders Agreement**" means the Stockholders Agreement dated as of [__], 2021 by and among the Company and the Stockholders (as defined therein) from time to time party thereto, as amended from time to time.

"**Subsidiary**" means, with respect to any Person, any corporation, partnership, joint venture, limited liability company or other entity (x) of which such Person or a subsidiary of such Person is a general partner or (y) of which a majority of the voting securities or other voting interests, or a majority of the securities or other interests of which having by their terms ordinary voting power to elect a majority of the board of directors or persons performing similar functions with respect to such entity, is directly or indirectly owned by such Person and/or one or more subsidiaries thereof.

"**Trading Day**" means a day on which (i) trading in the Shares (or other security for which a closing sale price must be determined) generally occurs on the Principal Exchange or, if the Shares (or such other security) are not then listed on a Principal Exchange, on the principal other Exchange on which the Shares (or such other security) are then listed, and (ii) a Last Reported Sale Price for the Shares (or closing sale price for such other security) is available on such securities exchange; *provided* that if the Shares (or such other security) are not so listed or traded, "**Trading Day**" means a Business Day.

"**Unit of Reference Property**" means, in respect of any Reorganization, the kind and amount of Reference Property that a holder of one Share (or the holder of one Unit of Reference Property in respect of a prior Reorganization, as applicable) is entitled to receive upon the consummation of such Reorganization.

"**Warrant Agent**" has the meaning specified in the preamble hereof and shall include any successor Warrant Agent hereunder.

"**Warrant Agent Office**" has the meaning specified in Section 4(b)(ii) hereof.

"**Warrant Exercise Notice**" has the meaning specified in Section 5(c) hereof.

"**Warrant Register**" has the meaning specified in Section 3(c) hereof.

"**Warrant Shares**" has the meaning specified in Section 3(a) hereof.

"**Warrant Share Number**" has the meaning specified in Section 3(a) hereof.

4

"**Warrant Statements**" has the meaning specified in Section 3(b) hereof.

"**Warrants**" has the meaning specified in the recitals hereof.

Section 2.    *Appointment of Warrant Agent*.  The Company hereby appoints the Warrant Agent to act as agent for the Company in accordance with the instructions set forth in this Agreement, and the Warrant Agent hereby accepts such appointment, upon the terms and conditions hereinafter set forth.

Section 3.    *Issuance of Warrants; Form, Execution and Delivery*.  (a)  *Issuance of Warrants*.  Pursuant to, and in accordance with, the terms of this Agreement and the Plan, the Company hereby issues the Warrants.  The Warrants shall be, upon issuance, duly authorized and validly issued.  In accordance with Section 4 hereof, as of the date hereof, the Company shall cause to be issued to the applicable registered Holders, one or more Warrants evidenced by an uncertificated, book-entry registration on the books and records of the Warrant Agent (the "**Direct Registration Warrants**").  Each Direct Registration Warrant entitles the Holder, upon proper exercise and subject to Section 5(i), to receive from the Company one Share (as it may be adjusted from time to time as provided herein, the "**Warrant Share Number**").  The Shares deliverable upon proper exercise of the Warrants are referred to herein as the "**Warrant Shares**."

(b)    *Form of Warrant*.  All Warrants issued pursuant to this Agreement shall be in the form of Direct Registration Warrants reflected on statements issued by the Warrant Agent from time to time to the Holders thereof reflecting such uncertificated, book-entry position (the "**Warrant Statements**").  The Warrant Statements may bear such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with the Charter, the Stockholders Agreement, any law or any rules made pursuant thereto or as may be determined, consistently herewith and reasonably acceptable to the Warrant Agent, by any Appropriate Officer.  Each Warrant Statement and the Warrant Register shall bear the following legend:

"THE WARRANTS ARE SUBJECT TO VARIOUS CONDITIONS, INCLUDING CERTAIN RESTRICTIONS ON SALE, DISPOSITION OR TRANSFER AS SET FORTH IN THE STOCKHOLDERS AGREEMENT DATED AS OF [__], 2021 BY AND AMONG [NEWCO] (THE "**COMPANY**") AND THE STOCKHOLDERS (AS DEFINED THEREIN) FROM TIME TO TIME PARTY THERETO, AS AMENDED FROM TIME TO TIME (THE "**STOCKHOLDERS AGREEMENT**").  NO REGISTRATION OR TRANSFER OF THE WARRANTS WILL BE MADE ON THE BOOKS OF THE COMPANY OR THE WARRANT AGENT UNLESS AND UNTIL SUCH RESTRICTIONS SHALL HAVE BEEN COMPLIED WITH.  THE COMPANY WILL FURNISH WITHOUT CHARGE, UPON WRITTEN REQUEST TO THE COMPANY AT ITS PRINCIPAL PLACE OF BUSINESS, TO EACH HOLDER OF RECORD OF THE WARRANTS, A COPY OF THE STOCKHOLDERS

#94593851v2

AGREEMENT CONTAINING THE ABOVE-REFERENCED RESTRICTIONS ON TRANSFERS OF SECURITIES."

In addition, until the date (the "**Resale Restriction Termination Date**") that is the later of (1) the date that is one year after the date of original issuance of the Warrants, or such shorter period of time as permitted by Rule 144 under the Securities Act or any successor provision thereto, and (2) such later date, if any, as may be required by applicable law, each Warrant Statement and the Warrant Register shall bear the following legend:

"THIS SECURITY AND THE COMMON STOCK, IF ANY, ISSUABLE UPON EXERCISE OF THIS SECURITY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED PRIOR TO THE DATE THAT IS THE LATER OF (X) ONE YEAR AFTER THE DATE OF ORIGINAL ISSUANCE HEREOF OR SUCH SHORTER PERIOD OF TIME AS PERMITTED BY RULE 144 UNDER THE SECURITIES ACT OR ANY SUCCESSOR PROVISION THERETO AND (Y) SUCH LATER DATE, IF ANY, AS MAY BE REQUIRED BY APPLICABLE LAW, EXCEPT:

(A)      TO [NEWCO] (THE "**COMPANY**") OR ANY SUBSIDIARY THEREOF, OR

(B)      PURSUANT TO A REGISTRATION STATEMENT WHICH HAS BECOME EFFECTIVE UNDER THE SECURITIES ACT, OR

(C)      PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT OR ANY OTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT.

PRIOR TO THE REGISTRATION OF ANY TRANSFER IN ACCORDANCE WITH CLAUSE (C) ABOVE, THE COMPANY AND THE WARRANT AGENT RESERVE THE RIGHT TO REQUIRE THE DELIVERY OF SUCH LEGAL OPINIONS, CERTIFICATIONS OR OTHER EVIDENCE AS MAY REASONABLY BE REQUIRED IN ORDER TO DETERMINE THAT THE PROPOSED TRANSFER IS BEING MADE IN COMPLIANCE WITH THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS. NO REPRESENTATION IS MADE AS TO THE AVAILABILITY OF ANY EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT."

(c)      *Other Matters*.  Each Warrant shall be, and shall remain, subject to the provisions of this Agreement and the Stockholders Agreement until such time as all of the Warrants shall have been duly exercised or shall have expired or been canceled in accordance with the terms hereof.  Each Holder shall be bound by all of the terms and provisions of this Agreement (a copy of which is available on request to the Secretary of

6

the Company) and any amendments thereto as fully and effectively as if such Holder had signed the same.  The Warrant Agent shall keep, at an office designated for such purpose, books (the "**Warrant Register**") in which, subject to such reasonable regulations as it may prescribe, it shall register any Direct Registration Warrants and exchanges and transfers of outstanding Warrants in accordance with the procedures set forth in Section 4 of this Agreement, all in form satisfactory to the Company and the Warrant Agent.  The Company may require payment by the applicable Holder of a sum sufficient to cover any stamp or other tax or other governmental charge that may be imposed on the Holder in connection with any such exchange or registration of transfer.  The Warrant Agent shall have no obligation to effect an exchange or register a transfer unless and until any payments required by the immediately preceding sentence have been made.  The Warrant Agent and the Company may deem and treat the Person in whose name any Warrant is registered on the Warrant Register as the absolute owner of such Warrant, for the purpose of any exercise thereof, any distribution to the Holder thereof and for all other purposes, and neither the Warrant Agent nor the Company shall be affected by notice to the contrary prior to due presentment for registration of transfer or exchange of any Warrant in accordance with the procedures set forth in this Agreement.

Section 4.    *Transfers*.  (a)  *Transfer and Exchange of Direct Registration Warrants*.  When the registered Holder of a Direct Registration Warrant has presented to the Warrant Agent a written request to register the transfer of any Direct Registration Warrant, the Warrant Agent shall register the transfer or make the exchange as requested if such transfer satisfies the provisions of this Agreement (including the legends described in Section 3(b)) and the Stockholders Agreement; *provided* that the Warrant Agent has received a written instruction of transfer in form satisfactory to the Warrant Agent, properly completed and duly executed by the Holder thereof or by his or her attorney, duly authorized in writing.  A party requesting transfer of Warrants must provide any evidence of authority that may be required by the Warrant Agent, including, but not limited to, a signature guarantee from an eligible guarantor institution participating in a signature guarantee program approved by the Securities Transfer Association.

(b)    *Obligations with Respect to Transfers of Warrants*.

(i)    All Direct Registration Warrants issued upon any registration of transfer or exchange shall be the valid obligations of the Company, entitled to the same benefits under this Agreement as the Direct Registration Warrants surrendered upon such registration of transfer or exchange.

(ii)    The Warrant Agent shall, upon receipt of all information, opinions, certifications or other evidence required to be delivered hereunder, register the transfer of any outstanding Warrants in the Warrant Register upon the delivery by the registered Holder thereof, at the Warrant Agent Office referred to in Section 12 hereof (the "**Warrant Agent Office**"), duly endorsed, and accompanied by a completed form of assignment substantially in the form attached as Exhibit B (including a duly endorsed Joinder signed by the transferee) and duly signed by the Holder thereof or by the duly appointed legal representative thereof or by his

or her attorney, duly authorized in writing, such signature to be guaranteed by a participant in a Medallion Signature Guarantee Program at a guarantee level acceptable to the Warrant Agent.  Upon any such registration of transfer, a new Warrant Statement shall be issued to the transferee.

(iii)    The Warrant Agent shall not undertake the duties and obligations of a transfer agent under this Agreement, including, without limitation, the duty to receive, issue or transfer the Warrant Shares.

(c)    *Holder Acknowledgement.*  Each Holder, by its acceptance of any Warrant under this Agreement, acknowledges and agrees that (i) the Warrants were issued pursuant to the exemption from the registration requirement of Section 5 of the Securities Act provided by Section 4(a)(2) of the Securities Act, and prior to the Resale Restriction Termination Date, a Holder of any Warrants (or a holder of any Warrant Shares issued upon exercise of any Warrants) shall not sell or transfer such Warrants (or Warrant Shares) in the absence of an effective registration statement under the Securities Act or an exemption from registration thereunder and (ii) the Company is not, and has no obligation to currently become, a reporting company under the Securities Exchange Act of 1934, as amended, and the Holder's rights to information relating to the Company are limited.

Section 5.    *Duration and Exercise of Warrants*.  (a)  *Expiration Date*.  The Warrants shall expire at 5:00 p.m., New York City time, on [____], 2028 (the "**Expiration Date**"), which is the seventh (7th) anniversary of the Effective Date.  After 5:00 p.m., New York City time, on the Expiration Date, the Warrants will become void and of no value, and all rights thereunder and all rights in respect thereof under this Agreement shall cease as of such time.

(b)    [Reserved].

(c)    *Manner of Exercise*.  Each Warrant may be exercised by the Holder thereof during the Exercise Period as described below. Subject to the provisions of this Agreement, including Section 6, each Warrant shall entitle the Holder thereof to receive from the Company (and the Company shall issue and sell to such Holder), on a cashless basis and for no consideration whatsoever, a number of Warrant Shares equal to the then-applicable Warrant Share Number.  A Holder may exercise any of its Warrants on any Business Day during the Exercise Period by, no later than 5:00 p.m., New York City time, on such Business Day, delivering (A) written notice of such election (a "**Warrant Exercise Notice**") to exercise the applicable Warrants to the Company and the Warrant Agent at the addresses set forth in Section 12 hereof, which Warrant Exercise Notice shall be substantially in the form set forth in Exhibit A; and (B) a duly completed and executed Joinder to the extent required pursuant to Section [5.01] of the Stockholders Agreement for the Person that will hold the Warrant Shares issued pursuant to the Warrant Exercise Notice in the form provided for in the Stockholders Agreement and attached to the Warrant Exercise Notice.

(d)    [Reserved].

8

(e)     Any exercise of a Warrant pursuant to the terms of this Agreement shall be irrevocable as of the date of delivery of the applicable Warrant Exercise Notice and shall constitute a binding agreement between the Holder and the Company, enforceable in accordance with its terms (except as such enforceability may be limited by bankruptcy, insolvency or similar laws generally affecting creditor's rights).

(f)     The Warrant Agent shall:

(i)     examine all Warrant Exercise Notices and all other documents delivered to it by or on behalf of Holders as contemplated hereunder to ascertain whether, on their face, such Warrant Exercise Notices and any such other documents have been executed and completed in accordance with their terms;

(ii)     inform the Company of and cooperate with and assist the Company in resolving any reconciliation problems between the Warrant Exercise Notices received and delivery of Warrants to the Warrant Agent's account; and

(iii)     advise the Company, no later than two (2) Business Days after receipt of a Warrant Exercise Notice, of (A) the receipt of such Warrant Exercise Notice and the number of Warrants exercised in accordance with the terms of this Agreement, (B) the number of Warrant Shares to be issued upon exercise of such Warrants, (C) the instructions with respect to delivery of the Warrant Shares deliverable upon such exercise, and (D) such other information as the Company shall reasonably require.

(g)     All questions as to the validity, form and sufficiency (including time of receipt) of a Warrant exercise shall be determined by the Company in its reasonable discretion in good faith.  The Warrant Agent shall incur no liability for or in respect of and, except to the extent such liability arises from the Warrant Agent's bad faith, gross negligence or willful misconduct (each as determined by a final, non-appealable order, judgment of a court decree or ruling of competent jurisdiction), shall be indemnified and held harmless by the Company for acting or refraining from acting upon, or as a result of such determination by, the Company.  The Company reserves the right to reject any and all Warrant Exercise Notices not in proper form or for which any corresponding agreement by the Company to exchange would, in the opinion of the Company, be unlawful as determined in good faith in consultation with the Company's legal counsel and the relevant Holder.  Moreover, the Company reserves the absolute right to waive any of the conditions to the exercise of Warrants or defects in Warrant Exercise Notices with regard to any particular exercise of Warrants.  Neither the Company nor the Warrant Agent shall be under any duty to give notice to the Holders of any irregularities in any exercise of Warrants, nor shall they incur any liability for the failure to give such notice; *provided* that the Company and/or the Warrant Agent shall promptly notify a Holder if the Company will not honor a Warrant Exercise Notice from such Holder.

(h)     As soon as reasonably practicable after the Exercise Date for any Warrant, the Company shall issue, or otherwise deliver, in authorized denominations to or upon the order of the Holder, an uncertificated, book-entry interest in the number of Warrant

9

Shares to which such Holder is entitled on the books and records of the Company's transfer agent.  Such Warrant Shares shall be deemed to have been issued and any Person so designated to be named therein shall be deemed to have become a holder of record of such Warrant Shares as of the close of business on the Exercise Date. Until the Resale Restriction Termination Date, any Warrant Shares issued upon exercise of the Warrants shall bear the following legend:

> "THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED PRIOR TO THE DATE THAT IS THE LATER OF (X) ONE YEAR AFTER THE DATE OF ORIGINAL ISSUANCE OF THE WARRANT UPON THE EXERCISE OF WHICH THIS SECURITY WAS ISSUED OR SUCH SHORTER PERIOD OF TIME AS PERMITTED BY RULE 144 UNDER THE SECURITIES ACT OR ANY SUCCESSOR PROVISION THERETO AND (Y) SUCH LATER DATE, IF ANY, AS MAY BE REQUIRED BY APPLICABLE LAW, EXCEPT:
>
> > (A)     TO [NEWCO] (THE "**COMPANY**") OR ANY SUBSIDIARY THEREOF, OR
> >
> > (B)     PURSUANT TO A REGISTRATION STATEMENT WHICH HAS BECOME EFFECTIVE UNDER THE SECURITIES ACT, OR
> >
> > (C)     PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT OR ANY OTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT.
>
> PRIOR TO THE REGISTRATION OF ANY TRANSFER IN ACCORDANCE WITH CLAUSE (C) ABOVE, THE COMPANY AND THE TRANSFER AGENT FOR THE COMPANY'S COMMON STOCK RESERVE THE RIGHT TO REQUIRE THE DELIVERY OF SUCH LEGAL OPINIONS, CERTIFICATIONS OR OTHER EVIDENCE AS MAY REASONABLY BE REQUIRED IN ORDER TO DETERMINE THAT THE PROPOSED TRANSFER IS BEING MADE IN COMPLIANCE WITH THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS. NO REPRESENTATION IS MADE AS TO THE AVAILABILITY OF ANY EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT."

(i)     The Company shall not be required to issue fractions of Warrant Shares upon exercise of the Warrants.  All Warrant Shares (including fractions) to be issued upon exercise of the applicable Warrant will be aggregated for purposes of determining whether the exercise would result in the issuance of any fractional Share.  If, after

10

aggregation, the exercise would result in the issuance of a fractional Share, the Company will, at its sole option, either (A) issue such fractional Share, (B) round such fractional Share up to the nearest whole Share and issue such whole Share or (C) in lieu of issuance of any fractional Share, pay the Holder otherwise entitled to such fractional Share an amount in cash equal to the product resulting from multiplying the then-current Fair Market Value per Share by such fraction.

(j)      The Company shall comply with all applicable tax withholding and reporting requirements imposed by any governmental unit, and all distributions, including deemed distributions, pursuant to the Warrants will be subject to applicable withholding and reporting requirements.  Notwithstanding any provision to the contrary, the Company will be authorized to (i) take any actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements, (ii) apply a portion of any cash distribution to be made under the Warrants to pay applicable withholding taxes, (iii) liquidate a portion of any non-cash distribution to be made under the Warrants to generate sufficient funds to pay applicable withholding taxes or (iv) establish any other mechanisms the Company believes are reasonable and appropriate, including requiring Holders to submit appropriate tax and withholding certifications (such as IRS Forms W-9 and the appropriate IRS Forms W-8, as applicable) and/or requiring Holders to pay the withholding tax amount to the Company in cash as a condition of receiving the benefit of any anti-dilution adjustment pursuant to Section 6.

(k)      Solely for U.S. federal, state and local income tax purposes, the Company and each Holder agree that the Warrants shall be deemed exercised as of the date hereof, and, accordingly, each of the parties hereto agrees to treat each Holder as the beneficial owner of the Warrant Shares underlying such Holder's Warrants for all U.S. federal, state and local income tax purposes as of the date hereof (the "**Intended Tax Treatment**"). The Company and each Holder agree to act consistently with the Intended Tax Treatment for all U.S. federal, state and local income tax purposes.

(l)      The Warrant Agent shall keep copies of this Agreement and any notices given or received hereunder for a period beginning on the date of this Agreement and ending no earlier than the third anniversary of the Expiration Date.

Section 6.      *Anti-Dilution Provisions*. No single event shall give rise to an adjustment or pass-through distribution under more than one subsection of this Section 6 (other than in the case of a dividend or other distribution of different types of property, in which case Section 6(a) and Section 6(b) shall apply to the appropriate parts of each such dividend or distribution); *provided* that any issuance of Warrant Shares upon exercise of the Warrants shall not itself give rise to any adjustment under this Section 6.

(a)      *Share Distributions, Subdivisions or Combinations*.  The Warrant Share Number shall be adjusted pursuant to the formula below in the event the Company (i) pays a dividend or makes any other distribution with respect to its Shares solely in Shares, (ii) subdivides or reclassifies its outstanding Shares into a greater number of Shares or (iii) combines or reclassifies its outstanding Shares into a smaller number of Shares.  Such adjustments shall become effective (x) in the case of clause (i) above, at the

11

close of business on the record date for such dividend or distribution or (y) in the case of clause (ii) or (iii) above, at the open of business on the effective date of such event. In the event that a dividend or distribution described in clause (i) above is not so paid or made, the Warrant Share Number shall be readjusted, effective as of the date when the Board determines not to make such dividend or distribution, as the case may be, to be the Warrant Share Number that would be in effect if such dividend or distribution had not been declared.

$$Ua = \quad Ub \ \ x \ \ \frac{Oa}{Ob}$$

Where:

Ub = Warrant Share Number immediately before the adjustment

Ua = Warrant Share Number immediately after the adjustment

Ob = Number of Shares outstanding immediately before the adjustment

Oa = Number of Shares outstanding immediately after the transaction in question

(b)     *Certain Dividends and Distributions*.  If the Company shall pay a dividend or make a distribution with respect to the Shares consisting of securities, evidences of indebtedness, assets, cash or rights, options or warrants to purchase securities of the Company (other than any dividends or distributions for which an adjustment is made pursuant to Section 6(a)) to all or substantially all holders of the Shares (any of such securities, evidences of indebtedness, assets, cash or rights, options or warrants, the "**Distributed Property**"), then the Company shall issue, or otherwise deliver, to each Holder, in respect of each Warrant, at the same time and upon the same terms as holders of the Shares receive the Distributed Property, the amount and kind of Distributed Property such Holder would have received if such Holder owned, as of the record date for such dividend or distribution, a number of Shares equal to the Warrant Share Number in effect on such record date.

(c)     *Certain Other Events*. The Company may make increases in the Warrant Share Number as the Board deems advisable in good faith in order to avoid or diminish any income tax to holders of Shares resulting from any dividend or distribution of stock (or rights to acquire stock) or from any event treated as such for income tax purposes.

(d)     *Exceptions to Adjustments*.  Except as specifically provided for herein, there shall be no adjustment or readjustment to the Warrant Share Number.

(e)     *Notice of Adjustment*.  Upon the occurrence of each adjustment or readjustment of the Warrant Share Number, the Company (at its expense) shall promptly compute such adjustment or readjustment in good faith in accordance with the terms hereof  and furnish to (i) the Warrant Agent a certificate, signed by an Appropriate Officer, and (ii) to each Holder a notice, in each case setting forth (A) such adjustment or

12

readjustment and showing in detail the facts upon which such adjustment or readjustment is based and (B) the Warrant Share Number at the time in effect; *provided* that the Company shall not be required to deliver any notice to the Holders until the cumulative change in the Warrant Share Number exceeds one percent (1%) from (x) the initial Warrant Share Number or (y) the Warrant Share Number that the Holders received notice of in the most recent notice provided to them.  The Warrant Agent shall have no duty with respect to any statement filed with it except to keep the same on file and available for inspection by Holders during reasonable business hours.  The Warrant Agent shall not at any time be under any duty or responsibility to any Holder to determine whether any facts exist which may require any adjustment to the Warrant Share Number, or with respect to the nature or extent of any adjustment of the Warrant Share Number when made or with respect to the method employed in making such adjustment.

(f)     *No Change in Warrant Terms on Adjustment*.  Irrespective of any adjustments in the Warrant Share Number, the Warrants theretofore or thereafter issued may continue to express the same amounts as are stated in the similar Warrants issuable initially, or at some subsequent time, pursuant to this Agreement, and the Warrant Share Number, as the case may be, specified thereon shall be deemed to have been so adjusted.

(g)     *Miscellaneous*.  All calculations hereunder shall be made to the nearest one-tenth (1/10th) of a cent or to the nearest one-hundredth (1/100) of a Share, as the case may be. Any provision of this Section 6 to the contrary notwithstanding, no adjustment in the Warrant Share Number shall be made if the amount of such adjustment would be less than one-tenth (1/10th) of a Share, but any such amount shall be carried forward and an adjustment with respect thereto shall be made at the time of and together with any subsequent adjustment which, together with such amount and any other amount or amounts so carried forward, shall aggregate 1/10th of a Share, or more, or upon exercise of a Warrant if it shall earlier occur.

Section 7.     *Reorganization*.  (a)  If a Reorganization occurs at any time on or prior to the Expiration Date (or, if later, the settlement date for any exercise of Warrants), then, following the effective time of such Reorganization, a Holder's right to receive Warrant Shares upon exercise of its Warrants shall be converted into the right to receive upon exercise, with respect to each Warrant Share that would have otherwise been deliverable hereunder, one Unit of Reference Property; *provided* that if the Reference Property consists solely of cash, then on the effective date of such Reorganization, each Holder shall receive, in respect of each Warrant such Holder holds, at the same time and upon the same terms as holders of Shares receive the cash in exchange for their Shares, an amount of cash equal to the greater of (i) the amount of cash that such Holder would receive in such Reorganization if such Holder owned, as of the record date for such Reorganization, a number of Shares equal to the Warrant Share Number in effect on such record date and (ii) $0, and upon the Company's delivery of such cash (if any) in respect of such Warrant, such Warrant shall be deemed to have been exercised in full and canceled. With respect to any exercise of Warrants following the effective time of such Reorganization, the number of Units of Reference Property issuable upon exercise of a Warrant shall be calculated pursuant to Section 5 as if each reference therein to a "Share" or a "Warrant Share" referred to a Unit of Reference Property.

(b)     In the case of any Reorganization in which holders of Shares may make an election as between different types of Reference Property, such holders of Shares shall be deemed to have elected to receive (i) first, the maximum amount of Marketable Securities and (ii) for any remaining consideration, the maximum amount of cash. The Company shall not consummate any Reorganization unless the Company first shall have made appropriate provision to ensure that the applicable provisions of this Agreement shall immediately after giving effect to such Reorganization be assumed by and binding on the other party to the Reorganization (or the surviving entity, successor, parent company and/or issuer of such Reference Property, as appropriate) and applicable to any Reference Property deliverable upon the exercise of Warrants, pursuant to a customary assumption agreement in form and substance reasonably satisfactory to the Holders of a majority of the Warrants then outstanding.  Any such assumption agreement shall also include any amendments to this Agreement necessary to effect the changes to the terms of the Warrants described in this Section 7 and preserve the intent of the provisions of this Agreement.  The provisions of this Section 7 shall similarly apply to successive Reorganizations.

(c)     The Company shall notify the Holders and the Warrant Agent of any such proposed Reorganization reasonably prior to the consummation thereof so as to provide the Holders with a reasonable opportunity to confirm compliance with the terms hereof and, if they elect, to exercise the Warrants in accordance with the terms and conditions hereof prior to consummation of the Reorganization; *provided* that in the case of a transaction which requires notice to be given to the holders of the Shares, the Holders and the Warrant Agent shall be provided the same notice given to the holders of the Shares.

Section 8.     *Covenants of the Company*.  (a)  *Covenants as to Warrant Shares*. The Company covenants and agrees that all Warrant Shares that may be issued upon the exercise of the rights represented by the Warrants shall, upon issuance, be validly issued and outstanding, fully paid and nonassessable, and free from all taxes (subject to **Error! Reference source not found.**), liens and charges with respect to the issuance thereof and shall not be issued in violation of any applicable law or governmental regulation.  The Company further covenants and agrees that the Company shall at all times prior to the Expiration Date (or any earlier time at which all Warrants have been canceled) have reserved a sufficient number of authorized but unissued Shares to provide for the exercise of all outstanding Warrants.  The Company further covenants and agrees that, if the Shares are at any time listed or traded on a Principal Exchange, the Company shall procure, at its sole expense, the listing of the Shares issuable upon exercise of the Warrants, subject to issuance or notice of issuance, on such Principal Exchange.

(b)     *Notices of Record Date*.  In the event of any taking by the Company of a record of the holders of any class of securities for the purpose of determining the holders thereof who are entitled to receive any distribution of any kind, or any right to subscribe for, purchase or otherwise acquire any Shares or any other securities or property, or to receive any other right or interest of any kind, the Company will mail to the Holders, at least five (5) Business Days prior to such record date, a notice specifying the date on which any such record is to be taken for the purpose of such distribution (other than pursuant to the adjustments provided herein).

14

Section 9.    *Warrant Agent*.  The Warrant Agent undertakes the duties and obligations imposed by this Agreement upon the terms and conditions set forth in this Section 9.

(a)    *Limitation on Liability*.  The Warrant Agent shall not by any act hereunder be accountable with respect to or be deemed to make any representations as to the validity or authorization of the Warrants, as to the validity, authorization or value (or kind or amount) of any Warrant Shares or other property delivered or deliverable upon exercise of any Warrant, or as to the purchase price of such Warrant Shares or other property.  The Warrant Agent shall not (i) be liable for any recital or statement of fact contained herein or for any action taken, suffered or omitted by the Warrant Agent in good faith in the belief that any document or any signature is genuine or properly authorized, (ii) be responsible for determining whether any facts exist that may require any adjustment of the number of Warrant Shares issuable or with respect to the nature or extent of any such adjustments when made, or with respect to the method of adjustment employed, (iii) be responsible for any failure on the part of the Company to issue, transfer or deliver any Warrant Shares or property upon the surrender of any Warrant for the purpose of exercise or to comply with any other of the Company's covenants and obligations contained in this Agreement or (iv) be liable for any action taken, suffered or omitted to be taken in connection with this Agreement, except for its own bad faith, gross negligence or willful misconduct.  The Warrant Agent shall be liable hereunder only for its own bad faith, gross negligence or willful misconduct (which bad faith, gross negligence or willful misconduct must be determined by a final, non-appealable order, judgment, decree or ruling of a court of competent jurisdiction).  Except for the foregoing, notwithstanding anything in this Agreement to the contrary, in no event shall the Warrant Agent be liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, lost profits).

(b)    *Instructions*.  The Warrant Agent is hereby authorized to accept advice or instructions with respect to the performance of its duties hereunder from an Appropriate Officer and to apply to any such Appropriate Officer for advice or instructions.  The Warrant Agent shall be fully protected and authorized in relying upon the most recent advice or instructions received from any such Appropriate Officer.  The Warrant Agent shall not be liable for any action taken, suffered or omitted by it in accordance with the advice or instructions of any such Appropriate Officer, except to the extent that such action or omission resulted directly from the Warrant Agent's bad faith, gross negligence, or willful misconduct.

(c)    *Agents*.  The Warrant Agent may execute and exercise any of the rights and powers hereby vested in it or perform any duty hereunder either itself or by or through its attorneys, agents or employees, provided reasonable care has been exercised in the selection and in the continued employment of such attorney, agent or employee, provided, further that it shall be liable and responsible for any such attorney, agent or employee.  The Warrant Agent shall not be under any obligation or duty to institute, appear in, or defend any action, suit or legal proceeding in respect hereof, but this provision shall not affect the power of the Warrant Agent to take such action as the Warrant Agent may consider necessary.  The Warrant Agent shall promptly notify the

Company in writing of any claim made or action, suit or proceeding instituted against the Warrant Agent arising out of or in connection with this Agreement.

(d)     *Cooperation*.  The Company will perform, execute, acknowledge and deliver or cause to be performed, executed, acknowledged and delivered all such further acts, instruments and assurances as may reasonably be required by the Warrant Agent in order to enable the Warrant Agent to carry out or perform its duties under this Agreement.

(e)     *Agent Only*.  The Warrant Agent shall act solely as agent for the Company in accordance with the terms and conditions hereof and does not assume any obligation or relationship of agency or trust with any Holders.  The Warrant Agent shall not be liable except for the performance of such duties as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Warrant Agent, whose duties and obligations shall be determined solely by the express provisions hereof.

(f)     *Right to Counsel*.  The Warrant Agent may at any time consult with legal counsel reasonably satisfactory to it (who may be legal counsel for the Company), and the Warrant Agent shall incur no liability or responsibility to the Company or to any Holder for any action taken, suffered or omitted by the Warrant Agent in good faith in accordance with the opinion or advice of such counsel.

(g)     *Compensation*.  The Company agrees to pay the Warrant Agent reasonable compensation for all services rendered by it hereunder and to reimburse the Warrant Agent for its reasonable expenses hereunder (including reasonable and documented fees and out-of-pocket expenses of one legal counsel and one local counsel), and further agrees to indemnify and hold the Warrant Agent and its employees, officers, directors and agents harmless against any and all loss, claims, damages, expenses and liabilities, including, but not limited to, any judgments, costs and such reasonable counsel fees, for any action taken, suffered or omitted by the Warrant Agent and its employees, officers, directors and agents in connection with the acceptance, administration, exercise and performance of its duties under this Agreement and the Warrants, except for any such liabilities that arise as a result of the Warrant Agent's bad faith, gross negligence or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable judgment).  Notwithstanding the foregoing, the Company shall not be responsible for any settlement made without its consent, which consent shall not be unreasonably conditioned, withheld or delayed.

(h)     *Accounting and Payment*.  The Warrant Agent shall account promptly to the Company with respect to Warrants exercised and concurrently pay to the Company all moneys received by the Warrant Agent on behalf of the Company in connection with the exercise of Warrants.  The Warrant Agent shall advise the Company by telephone at the end of each day on which a payment in connection with the exercise of Warrants is received of the amount so deposited to such account.  The Warrant Agent shall as soon as practicable confirm such telephone advice to the Company in writing.

16

(i)     *No Conflict*.  Subject to applicable law, the Warrant Agent and any stockholder, affiliate, director, officer or employee of the Warrant Agent may buy, sell or deal in any of the Warrants or other securities of the Company or become pecuniarily interested in any transaction in which the Company may be interested, or contract with or lend money to the Company or otherwise act as fully and freely as though it were not Warrant Agent under this Agreement.  Subject to applicable law, nothing herein shall preclude the Warrant Agent from acting in any other capacity for the Company or for any other Person including, without limitation, acting as trustee under an indenture.

(j)     *Resignation; Termination*.  The Warrant Agent may resign its duties and be discharged from all further duties and liabilities hereunder (except liabilities arising as a result of the Warrant Agent's bad faith, gross negligence or willful misconduct) after giving thirty (30) calendar days' prior written notice to the Company.  The Company may remove the Warrant Agent upon thirty (30) calendar days' written notice, and the Warrant Agent shall thereupon in like manner be discharged from all further duties and liabilities hereunder, except as have been caused by the Warrant Agent's bad faith, gross negligence or willful misconduct.  The Company shall cause to be mailed promptly (by first class mail, postage prepaid) to each registered Holder at such Holder's last address as shown on the register of the Company, at the Company's expense, a copy of such notice of resignation or notice of removal, as the case may be.  Upon such resignation or removal the Company shall promptly appoint in writing a new Warrant Agent.  If the Company shall fail to make such appointment within a period of sixty (60) calendar days after it has been notified in writing of such resignation by the resigning Warrant Agent or after such removal, then the Holder of any Warrant may apply to any court of competent jurisdiction for the appointment of a new Warrant Agent.  A resignation or removal of the Warrant Agent and appointment of a successor Warrant Agent will become effective only upon the successor Warrant Agent's acceptance of appointment.  Pending appointment of a successor to the Warrant Agent, either by the Company or by such a court, the duties of the Warrant Agent shall be carried out by the Company.  Any successor Warrant Agent, whether appointed by the Company or by such a court, shall be a Person, organized under the laws of the United States or of any state thereof and authorized under such laws to conduct a shareholder services business, be subject to supervision and examination by a Federal or state authority, and have a combined capital and surplus of not less than $50,000,000 as set forth in its most recent published annual report of condition; or in the case of such capital and surplus requirement, a controlled affiliate of such a Person meeting such capital and surplus requirement.  After acceptance in writing of such appointment by the new Warrant Agent, such successor Warrant Agent shall be vested with the same powers, rights, duties and responsibilities under this Agreement as if it had been originally named herein as the Warrant Agent, without any further assurance, conveyance, act or deed; but if for any reason it shall be necessary or expedient to execute and deliver any further assurance, conveyance, act or deed, the same shall be done at the expense of the Company and shall be legally and validly executed and delivered by the resigning or removed Warrant Agent.  Not later than the effective date of any such appointment, the Company shall send notice thereof to the resigning or removed Warrant Agent and shall forthwith cause a copy of such notice to be mailed (by first class, postage prepaid) to each registered Holder at such Holder's last address as shown on the register of the Company.  Failure to give any notice provided for in this (j), or any

17

defect in any such notice, shall not affect the legality or validity of the resignation of the Warrant Agent or the appointment of a successor Warrant Agent, as the case may be.

(k)     *Merger, Consolidation or Change of Name of Warrant Agent*.  Any corporation into which the Warrant Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Warrant Agent shall be a party, or any corporation succeeding to all or substantially all of the agency business of the Warrant Agent shall be the successor to the Warrant Agent hereunder without the execution or filing of any document or any further act on the part of any of the parties hereto, provided that such corporation would be eligible for appointment as a successor Warrant Agent under the provisions of Section 9(j).

(l)     *Exclusions*.  Unless a court of competent jurisdiction determines by a final, non-appealable order, judgment, decree or ruling that the Warrant Agent's action or inaction constitutes bad faith, gross negligence or willful misconduct on the part of the Warrant Agent, the Warrant Agent shall have no responsibility with respect to the validity of this Agreement or with respect to the validity or execution of any Warrant (except its countersignature thereof); nor shall it be responsible for any breach by the Company of any covenant or condition contained in this Agreement or in any Warrant; nor shall it be responsible or have any duty to make any calculation or adjustment (unless reasonably requested to do so by the Company in writing in a manner consistent with the terms of this Agreement), or to determine when any calculation or adjustment required under the provisions hereof should be made, how it should be made or what it should be, or have any responsibility or liability for the manner, method or amount of any such calculation or adjustment or the ascertaining of the existence of facts that would require any such calculation or adjustment; nor shall it by any act hereunder be deemed to make any representation or warranty as to the authorization or reservation of any Warrant to be issued pursuant to this Agreement or as to whether any Warrant Shares will, when issued, be valid and fully paid and nonassessable.

(m)     *No Liability for Interest*.  The Warrant Agent shall not be under any liability for interest on any monies at any time received by it pursuant to any of the provisions of this Agreement.

(n)     *No Liability for Invalidity*.  The Warrant Agent shall not be under any responsibility with respect to the validity or sufficiency of this Agreement or the execution and delivery hereof (except the due execution and delivery hereof by the Warrant Agent).

(o)     *No Responsibilities for Recitals*.  The recitals contained herein shall be taken as the statements of the Company, and the Warrant Agent assumes no responsibility hereby for the correctness of the same.

(p)     *No Implied Obligations*.  The Warrant Agent shall be obligated to perform such duties as are explicitly set forth herein and no implied duties or obligations shall be read into this Agreement against the Warrant Agent.  The Warrant Agent shall not be

#94593851v2

under any obligation to take any action hereunder that may involve it in any expense or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it.  The Warrant Agent shall have no duty or responsibility in case of any default by the Company in the performance of its covenants or agreements contained herein or in the case of the receipt of any written demand from a Holder with respect to such default, including, without limiting the generality of the foregoing, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or, to make any demand upon the Company.

(q)     *Force Majeure*.  In no event shall the Warrant Agent be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused by, directly or indirectly, forces beyond its reasonable control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software or hardware) services.

Section 10.     *Severability*.  The determination by a court of competent jurisdiction that any particular provision of this Agreement is unenforceable or invalid will not affect the enforceability of or invalidate the other provisions hereof, and this Agreement will be construed in all respects as if such invalid or unenforceable provisions had never been part hereof and were omitted here from.  Upon such a determination, the parties will negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible so that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible.

Section 11.     *Holder Not Deemed a Shareholder*.  No Holder of a Warrant, by reason of the ownership of such Warrant, shall be entitled to vote or receive dividends on or be deemed the holder of any Warrant Shares for any purpose, nor shall anything contained in the Warrants be construed to confer upon the Holders, as such, any of the rights of a holder of Shares or any right to vote, give or withhold consent to any Company action (whether any reorganization, issuance of Shares, reclassification of Shares, consolidation, merger, conveyance or otherwise), receive notice of meetings, receive dividends or subscription rights or otherwise, except as set forth in the Stockholders Agreement or herein.  No Holder shall have any right not expressly conferred under, or by applicable law with respect to, this Agreement or the Stockholders Agreement.

Section 12.     *Notices to Company and Warrant Agent*.  All notices, requests or demands authorized by this Agreement to be given or made by the Warrant Agent or by any registered Holder of any Warrant to or on the Company or the Warrant Agent to be effective shall be in writing (including by telecopy), and shall be deemed to have been duly given or made when delivered by hand, or two (2) Business Days after being delivered to a recognized courier (whose stated terms of delivery are two Business Days or less to the destination), or five (5) Business Days after being deposited in the mail, or, in the case of facsimile or email notice, when received, addressed (until another address is filed in writing by the Company with the Warrant Agent) as follows:

[NewCo]
[_____]

If the Company shall fail to maintain such office or agency or shall fail to give such notice of any change in the location thereof, presentation may be made and notices and demands may be served at the principal office of the Warrant Agent.

Any notice pursuant to this Agreement to be given by the Company or by any registered Holder of any Warrant to the Warrant Agent shall be sufficiently given if sent by first-class mail, postage prepaid, or by facsimile or email notice, addressed (until another address is filed in writing by the Warrant Agent with the Company), as follows:

[American Stock Transfer & Trust Company, LLC
6201 15th Avenue
Brooklyn, NY 11219
Attention: Relationship Management for [NewCo]
Email: reorgwarrants@astfinancial.com]

The Warrant Agent maintains the Warrant Agent Office at the above address.

Section 13.  *Supplements and Amendments*.  The Company and the Warrant Agent may from time to time supplement or amend this Agreement (a) without the approval of any Holder in order to cure any ambiguity, manifest error or other mistake in this Agreement, or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provision herein, or to make any other provisions in regard to matters or questions arising hereunder that the Company and the Warrant Agent may deem necessary or desirable and that shall not adversely affect, alter or change the interests of the Holders in any material respect or (b) with the prior written consent of Holders of a majority of the Warrants; *provided* that each amendment or supplement that decreases the Warrant Agent's rights or increases its duties and responsibilities hereunder shall also require the prior written consent of the Warrant Agent.  Notwithstanding the foregoing, the consent of each Holder affected in any material respect shall be required for any amendment pursuant to which the number of Warrant Shares receivable upon exercise of a Warrant would be decreased (other than pursuant to adjustments provided herein), the Holders' rights to receive pass-through distributions pursuant to Section 6(b) would be limited or the Exercise Period would be shortened.  Upon execution and delivery of any supplement or amendment pursuant to this Section 13, such amendment shall be considered a part of this Agreement for all purposes and every Holder of Warrants shall be bound thereby.

Section 14.  *Termination*.  This Agreement shall terminate on the earlier of (a) such date when all Warrants have been cancelled or exercised with respect to all Warrant Shares subject thereto and (b) the Expiration Date or, if later, upon settlement of all Warrants (i) validly exercised on or prior to the Expiration Date; *provided* that the provisions of Sections 10-20 shall survive such termination.

20

Section 15.  *Governing Law and Consent to Forum*.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware (without giving effect to choice of law principles thereof to the extent that the application of the laws of another jurisdiction would be required thereby); *provided*, *however*, that the foregoing shall not be construed so as to restrict in any manner the ability of the Company to enforce any judgment obtained in any court of competent jurisdiction. Subject to the provisos to the last sentence of this Section 15, each of the parties hereto (a) consents to submit itself to the exclusive personal jurisdiction of the Chancery Court of Delaware and, if such court declines jurisdiction, any Federal district court located in the State of Delaware in the event of any action arising out of or relating to this Agreement or any of the transactions contemplated by this Agreement, (b) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court, (c) agrees that, except as provided in clause (d) below, it will not bring any action arising out of or relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than the Chancery Court of Delaware and, if such court declines jurisdiction, a Federal district court sitting in the State of Delaware and (d) agrees, to the maximum extent permitted by law, that it will not bring any action arising out of or relating to the Securities Act in any court other than a Federal district court sitting in the State of Delaware and, if such court declines jurisdiction, to another Federal district court.  Any person or entity purchasing or otherwise acquiring any interest in any Company securities shall be deemed to have notice of and consented to this provision.  In any action arising out of or relating to this Agreement or any of the transactions contemplated by this Agreement, each party irrevocably and unconditionally waives and agrees not to assert by way of motion, as a defense or otherwise any claims that it is not subject to the jurisdiction of the above courts, that such action is brought in an inconvenient forum or that the venue of such action is improper; *provided, however*, that, notwithstanding anything to the contrary in this Section 15 or otherwise, the Company shall retain the right to bring any such action arising out of or relating to this Agreement or any of the transactions contemplated hereby, to the extent that the subject matter of such action is contemplated by the Plan or the Disclosure Statement, in the United States Bankruptcy Court for the District of Delaware, and each of the parties hereto (i) consents to submit itself to the exclusive personal jurisdiction of the Chancery Court of Delaware and, if such court declines jurisdiction, any Federal district court located in the State of Delaware in the event of any action arising out of or relating to this Agreement or any of the transactions contemplated by this Agreement, (ii) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court.

Section 16.  *Waiver of Jury Trial*.  EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND

#94593851v2

ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  THIS SECTION 16 HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS.  EACH PARTY HERETO HEREBY FURTHER WARRANTS AND REPRESENTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

Section 17.  *Benefits of This Agreement*.  Nothing in this Agreement shall be construed to give to any Person other than the Company, the Warrant Agent and the registered Holders (who are express third party beneficiaries of this Agreement) any legal or equitable right, remedy or claim under this Agreement, and this Agreement shall be for the sole and exclusive benefit of the Company, the Warrant Agent and the registered Holders.

Section 18.  *Counterparts*.  This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original, and such counterparts shall together constitute but one and the same instrument.

Section 19.  *Headings*.  The headings of sections of this Agreement have been inserted for convenience of reference only, are not to be considered a part hereof and in no way modify or restrict any of the terms or provisions hereof.

Section 20.  *Electronic Transmission*.  Each of the parties hereto agrees that (a) any consent or signed document transmitted by electronic transmission shall be treated in all manner and respects as an original written document, (b) any such consent or document shall be considered to have the same binding and legal effect as an original document and (c) at the request of any party hereto, any such consent or document shall be re-delivered or re-executed, as appropriate, by the relevant party or parties in its original form.  Each of the parties further agrees that they will not raise the transmission of a consent or document by electronic transmission as a defense in any proceeding or action in which the validity of such consent or document is at issue and hereby forever waives such defense.  For purposes of this Agreement, the term "electronic transmission" means any form of communication not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered as of the day and year first above written.

[NEWCO]

By: _____

Name:

Title:

[*Signature Page to Warrant Agreement*]

AMERICAN STOCK TRANSFER &
TRUST COMPANY, LLC

By: _____
    Name:
    Title:

*[Signature Page to Warrant Agreement]*

#94593851v2

**EXHIBIT A**

**FORM OF ELECTION TO EXERCISE WARRANT**

**TO BE COMPLETED BY REGISTERED HOLDER**

[NEWCO]

Warrants to Receive Common Stock

(TO BE EXECUTED UPON EXERCISE OF A WARRANT)

Reference is made to that certain Warrant Agreement, dated [●], 2021 (the "**Warrant Agreement**"), by and between [NewCo] (the "**Company**") and American Stock Transfer & Trust Company, LLC (the "**Warrant Agent**").  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Warrant Agreement.

The undersigned hereby irrevocably elects to exercise [●] Warrants representing the right to receive [●] Shares as calculated pursuant to the Warrant Agreement (the "**Exercise Shares**") on a cashless basis for no consideration whatsoever.

Concurrently with the receipt of the Exercise Shares, the undersigned agrees to execute and deliver a Joinder in accordance with Section [5.01] of the Stockholders Agreement.

The undersigned requests that the Exercise Shares purchased hereby be in registered form in the authorized denominations, registered in such names and delivered, all as specified in accordance with the instructions set forth below.

(PLEASE PRINT)
RECIPIENT: _____
CONTACT NAME: _____
ADDRESS: _____
TELEPHONE (INCLUDING INTERNATIONAL CODE): _____
EMAIL: _____
SOCIAL SECURITY OR OTHER TAXPAYER IDENTIFICATION NUMBER (IF APPLICABLE): _____

---

NOTE: THIS EXERCISE NOTICE MUST BE DELIVERED TO THE WARRANT AGENT, PRIOR TO 5:00 P.M., NEW YORK CITY TIME, ON THE EXPIRATION DATE.  THE WARRANT AGENT SHALL NOTIFY YOU OF THE ADDRESS, PHONE NUMBER AND FACSIMILE NUMBER WHERE YOU CAN CONTACT THE WARRANT AGENT AND TO WHICH WARRANT EXERCISE NOTICES ARE TO BE SUBMITTED.

---

_____          _____
(Date)                                    (Signature)

                                          _____
                                          (Print name)


Signature Guaranteed

BY:

Signatures must be guaranteed by a participant in a Medallion Signature Guarantee Program at a guarantee level acceptable to the Company's transfer agent.

A-2

# EXHIBIT B

FORM OF ASSIGNMENT FOR WARRANTS

(TO BE EXECUTED BY THE REGISTERED HOLDER
IF SUCH HOLDER DESIRES TO TRANSFER A WARRANT)

Reference is made to that certain Warrant Agreement, dated [•], 2020 (the "**Warrant Agreement**"), by and between [NewCo] (the "**Company**") and American Stock Transfer & Trust Company, LLC (the "**Warrant Agent**").  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Warrant Agreement.

FOR VALUE RECEIVED, the undersigned registered holder of Warrants hereby sells, assigns and transfers unto

_____

Name of Assignee

_____

Address of Assignee

_____ Warrants to receive Shares held by the undersigned, together with all right, title and interest therein, and does irrevocably constitute and appoint _____ attorney, to transfer such Warrants on the books of the Warrant Agent, with full power of substitution.

In connection with any transfer of Warrants occurring prior to the Resale Restriction Termination Date, the undersigned confirms that such Warrants are being transferred:

☐      To [NewCo] or a subsidiary thereof; or

☐      Pursuant to a registration statement that has become or been declared effective under the Securities Act of 1933, as amended; or

☐      Pursuant to and in compliance with Rule 144 under the Securities Act of 1933, as amended, or any other available exemption from the registration requirements of the Securities Act of 1933, as amended.

_____

Signature

_____

Date

_____

Social Security or Other Taxpayer Identification Number of Assignee

SIGNATURE GUARANTEED BY:

#94593851v2

Signatures must be guaranteed by a participant in a Medallion Signature Guarantee Program at a guarantee level acceptable to the Company's transfer agent.