**Exhibit 3**

**Proof of Claim No. 780**

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| Fill in this information to identify the case (Select only one Debtor per claim form): | |
|---|---|
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

<u>Modified Form 410</u>

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim | |
|---|---|---|
| 1. Who is the current creditor? | **Talos Energy Offshore LLC, Talos Energy LLC, Talos Energy Inc., Talos Production Inc.** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☒ No <br> ☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Eric M. English, Porter Hedges LLP <br> 1000 Main St., 36th Floor <br> Houston, TX 77002 <br><br> Contact phone  713-226-6612 <br> Contact email  eenglish@porterhedges.com | **Where should payments to the creditor be sent?** (if different) <br><br><br><br> Contact phone _____ <br> Contact email _____ |
| 4. Does this claim amend one already filed? | ☒ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____ <br> MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ | |

**Claim Number: 780**                    **Proof of Claim**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   5   2   6   0

**7. How much is the claim?**   $ 10,473,014.85 .   **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached

**9. Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☒ Other. Describe:   See attached.

**Basis for perfection:**   See attached.

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☒ Yes. Identify the property:   See attached.

Modified Official Form 410            **Proof of Claim**            page 2

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:*   **Amount entitled to priority**<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____<br><br>☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____<br><br>☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.  $_____<br><br>* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☒ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**  $_____ |

## Part 3:   Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | Check the appropriate box:<br><br>☐ I am the creditor.<br>☒ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>**Signature:** *Deborah Huston*<br> Deborah Huston (Nov 25, 2020 16:13 CST)<br>**Email:** egarfias@porterhedges.com |

|  | Signature |
|---|---|
| | Print the name of the person who is completing and signing this claim: |
| Name | Deborah Huston |
| | First name                    Middle name                              Last name |
| Title | Vice President and Deputy General Counsel |
| Company | Talos Energy Offshore LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 333 Clay Street, Suite 3300 |
| | Number          Street |
| | Houston                                      TX          77002 |
| | City                                              State       ZIP Code |
| Contact phone | 713-328-3000          Email   deborah.huston@talosenergy.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   **(attach below)**

☐ **I do not have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                           12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

**Do not file these instructions with your form**

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

---

**Fill in this information to identify the case (Select only one Debtor per claim form):**

- [x] Fieldwood Energy LLC (20-33948)
- [ ] Dynamic Offshore Resources NS, LLC (20-33947)
- [ ] Fieldwood Energy Inc. (20-33949)
- [ ] Fieldwood Energy Offshore LLC (20-33950)
- [ ] Fieldwood Onshore LLC (20-33951)
- [ ] Fieldwood SD Offshore LLC (20-33952)
- [ ] FW GOM Pipeline, Inc. (20-33953)

- [ ] GOM Shelf LLC (20-33954)
- [ ] Bandon Oil and Gas GP, LLC (20-33955)
- [ ] Bandon Oil and Gas, LP (20-33956)
- [ ] Fieldwood Energy SP LLC (20-33958)
- [ ] Galveston Bay Pipeline LLC (20-33959)
- [ ] Galveston Bay Processing LLC (20-33960)
- [ ] Fieldwood Offshore LLC (20-33961)

---

<u>Modified Form 410</u>

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

---

**Part 1:    Identify the Claim**

| | |
|---|---|
| 1. **Who is the current creditor?** | Talos Energy Offshore LLC, Talos Energy LLC, Talos Energy Inc., Talos Production Inc. |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| | |
|---|---|
| 2. **Has this claim been acquired from someone else?** | [x] No <br> [ ] Yes. From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Eric English, Porter Hedges LLP | |
| Name | Name |
| 1000 Main St., 36th Floor | |
| Number        Street | Number        Street |
| Houston                    TX            77002 | |
| City                    State            ZIP Code | City                    State            ZIP Code |
| Contact phone  (713) 226-6612 | Contact phone _____ |
| Contact email  eenglish@porterhedges.com | Contact email _____ |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | [x] No <br> [ ] Yes.   Claim number on court claims registry (if known)_____   Filed on ____ / ____ / ____ <br>                                                         MM / DD / YYYY |

| | |
|---|---|
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | [x] No <br> [ ] Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __5__ __2__ __6__ __0__

**7. How much is the claim?**  $ _____10,473,014.85_____ . **Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached.

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe:  See attached.

**Basis for perfection:**  See attached.

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ _____

**Amount of the claim that is secured:**  $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ _____

**Annual Interest Rate** (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $ _____

**11. Is this claim subject to a right of setoff?**

☐ No
☑ Yes. Identify the property:  See attached.

---

Modified Official Form 410                    **Proof of Claim**                    page 2

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $_____ |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11/25/2020 (mm/dd/yyyy)

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Deborah<br>First name | <br>Middle name | Huston<br>Last name |
| Title | Vice President and Deputy General Counsel | | |
| Company | Talos Energy Offshore LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 333 Clay Street, Suite 3300 | | |
| | Number        Street | | |
| | Houston | TX        77002 | |
| | City | State      ZIP Code | |
| Contact phone | 713-328-3000 | Email deborah.huston@talosenergy.com | |

**ATTACHMENT TO THE PROOF OF CLAIM OF
TALOS ENERGY OFFSHORE LLC, TALOS ENERGY LLC, TALOS ENERGY INC.,
AND TALOS PRODUCTION INC.**

This Proof of Claim is submitted by Talos Energy Offshore LLC, Talos Energy LLC, Talos Energy Inc., and Talos Energy Production Inc. (collectively, "Talos" or the "Claimants") and all others claiming by or through it and all successors and assigns, to preserve and claim amounts owed by Fieldwood Energy LLC ("Fieldwood Energy"), Fieldwood Energy Offshore, LLC ("Fieldwood Offshore"), and GOM Shelf LLC ("GOM" and collectively with Fieldwood Energy and Fieldwood Offshore, the "Debtors"). Claimants expressly preserve and assert, to the extent not stayed by 11 U.S.C. § 362, any right of setoff and recoupment and demands adequate protection thereof. Claimants hereby assert claims against Debtors for any and all rights and entitlement that the Claimant has or may have to indemnification, contribution, reimbursement, or other payments (including damages, attorneys' fees, costs and expenses related thereto) from Debtors pursuant to applicable contractual agreements and law.

### A. **Talos' Contractual Claims**

Talos holds interests in certain offshore oil and gas leases and other assets and properties (as more particularly described in the table below) (collectively, the "Subject Properties") in which the Debtors also own interests. The Debtors also utilize certain production handling facilities and similar assets owned by Talos in connection with the operation of the Subject Properties ("PH Facilities"). The operation of the Subject Properties and the PH Facilities, as applicable, are governed by the terms and conditions of certain operating agreements, unit operating agreements, production handing agreements and other similar agreements (such agreements, inclusive of attachments, exhibits, memoranda, and related agreements, and as have

been amended or restated from time to time, collectively, the "Property Agreements").[1]   The Property Agreements (as applicable) require the Debtors to, among other things: (1) pay joint interest billing obligations owed with respect to the Debtors' interests; (2) when a Debtor is operator, account to and credit or reimburse non-operators for funds advanced by such non-operators pursuant to operator cash calls but not utilized for the purpose of such operator cash calls; (3) pay throughput fees and other amounts owed to the operators of production handling facilities under production handling agreements; (4) respond to and otherwise credit or pay for unchallenged exceptions pursuant to an audit; and (5) settle and otherwise pay imbalance payment obligations owed to non-operators arising under gas balancing agreements or otherwise.

These obligations are secured by the Debtors' interests in the Subject Properties and certain other assets in accordance with the terms of the applicable Property Agreements and perfected pursuant to certain recorded memoranda of agreement, financing statements and other lien filings placed of record in the applicable filing jurisdictions.[2]

Pursuant to the Property Agreements, the Debtors owed to Talos the following pre-petition amounts:

|  | Category | Amount Owed | Subject Property |
|---|---|---|---|
| **Fieldwood Energy** | Joint Interest Billings Accounts Receivable | $177,266.80 | MC108; MC110; VK204; EI 57 |
|  | Advances to Operators Credit or Reimbursement Obligation[3] | $2,106,337.72 | Gunflint Prospect (Mississippi Canyon 948/949/992/993) |

---

[1] The Property Agreements are not submitted with this Proof of Claim because of their size and because the Debtors have copies of the Property Agreements. The Property Agreements may also be provided upon request.

[2] Such filings are not submitted with this Proof of Claim because of their size and because the Debtors have copies of such filings. Such filings may also be provided upon request.

[3] Please note that the specific lien provisions set forth in the Mississippi UOA are addressed in more detail below.

| | | |
|---|---|---|
| Audit Exception Payments<br>Accounts Receivable[4] | $332,717.76 | MP315; HI 545;<br>SP89; EC278;<br>WC 172 |
| Throughput Fees and Other<br>Amounts Owed under | $78,337.25 | MC108; MC110;<br>VK204; EI 57 |
| Production Handling<br>Agreements[5]<br>Accounts Receivable | $11,216.25 | SM108 |
| Imbalances<br>Accounts Receivable | $1,513,952.08 | SS 271 Unit<br>(SS 247, SS 248,<br>SS 270) |
| | $331,000 | EC 265; SP 87;<br>SP 89 |
| **Total** | **$4,550,827.86** | |

| Fieldwood Offshore | | | |
|---|---|---|---|
| | Joint Interest Billings<br>Accounts Receivable | $479.53 | MC109 |
| | Imbalances<br>Accounts Receivable | $65,364.45 | HI 545 |
| | **Total** | **$65,843.98** | |

| GOM | | | |
|---|---|---|---|
| | Joint Interest Billings<br>Accounts Receivable | $13,598.33 | SS198; SS199 |
| | **Total** | **$13,598.33** | |

Accordingly, Talos is entitled to a secured claim in the amount of $4,550,827.86 from

Fieldwood Energy. Further, Talos is entitled to a secured claim in the amount of $65,843.98

---

[4] From June 19, 2017 through July 7, 2017, Talos completed an audit of joint interest billings for properties and facilities operated by Fieldwood Energy, for the audit period of January 2015 through December 2016, in which Talos is a working interest owner and provided a copy of the findings and demand for payment to Fieldwood Energy (the "Audit Letter"). A true and correct copy of the Audit Letter is attached hereto as Exhibit A. The amount referenced herein represents the net amount due on Talos' portions of the gross exceptions referenced in the Audit Letter, subject to further investigation and supplementation pursuant to the audit. Talos reserves all rights to supplement its claims.

[5] Such throughput fees and other amounts are owed by Fieldwood Energy with respect to production handling facilities owned and/or operated by Talos. Upon information and belief, the fees and other amounts associated with the Production Handling Agreement are secured; however, review of such agreements and other document remains ongoing. To the extent Claimants discover such amounts are not secured, Claimants will file an amendment to its Proof of Claim.

from Fieldwood Offshore. Finally, Talos is entitled to a secured claim in the amount of $13,598.33 from GOM.

### B.  <u>The Atlantic Demand – Gunflint Prospect</u>

Talos holds working interests in certain oil and gas leases covering submerged lands on the Outer Continental Shelf situated in a prospect known as the Gunflint Prospect (covering Mississippi Canyon 948/949/992/993) (the "<u>Leases</u>"), for which Fieldwood Energy, LLC serves as the operator under that certain Unit Operating Agreement, dated effective January 1, 2013 (inclusive of attachments, memoranda, and related agreements, and as has been amended or restated from time to time, collectively, the "<u>Mississippi UOA</u>").[6] The Mississippi UOA requires Fieldwood Energy to, among other things, use "reasonable efforts to keep the [Leases] free from all liens and encumbrances" (Section 5.4) as well as hold Talos harmless as follows:

> The obligations, duties and liabilities of the Parties shall be several and not joint or collective; and nothing contained herein shall ever be construed as creating a partnership, joint venture, association or other character of business entity recognizable in law for any purpose. Each Party shall hold all the other Parties harmless from liens and encumbrances on the Leases or in the Contract Area arising as a result of its acts or omissions.

*See* Mississippi UOA, Sections 5.4 and 22.1. Fieldwood Energy is thus required to use reasonable efforts to avoid liens and to indemnify Talos for any lien claim amounts burdening the Leases and/or the Contract Area, including its attorneys' fees, costs, and any other damages Talos suffers as a result of Fieldwood Energy's acts or omissions.

These obligations are secured in accordance with Sections 6.3.2 and 6.3.3 of the Mississippi UOA by Fieldwood Energy's own working interests in the Leases and the Contract

---

[6] The Mississippi UOA is not submitted with this Proof of Claim because of its size and because the Debtors have a copy of the Mississippi UOA. The UOA may also be provided upon request.

Area and perfected pursuant to certain recorded memoranda of agreement, financing statements and other lien filings placed of record in the applicable filing jurisdictions.[7]

On October 30, 2020, Atlantic Maritime Services, LLC ("Atlantic") sent Talos a Demand for Payment (the "Atlantic Demand") enclosing a Statement of Privilege whereby it demanded that Talos pay Atlantic the principal amount of $5,842,744.68, "together with interest thereon, the cost of filing the lien and attorney's fees of 10% percent [sic] of the amount sought to be collected" on account of purportedly unpaid invoices allegedly owed by Fieldwood Energy.[8]

Talos has no contractual relationship with Atlantic and has no direct liability to Atlantic. To the extent that Talos' interest is burdened by Atlantic's alleged liens and privileges or Atlantic is able to sequester or otherwise obtain funds that are the proceeds of Talos' interests, Talos hereby asserts a secured claim against Fieldwood Energy for the amounts paid to Atlantic. Further, to the extent that Talos is required to incur fees, costs and expenses to respond to or litigate with Atlantic regarding any alleged unpaid invoices owed by Fieldwood, the indemnification provisions of the Mississippi UOA entitle Talos to a secured claim for the amount of any attorneys' fees, costs, and any other damages incurred by Talos as a result of Fieldwood Energy's acts or omissions. As such, Talos hereby asserts a secured contingent claim of not less than $5,842,744.68 against Fieldwood Energy pursuant to the provisions of the Mississippi UOA.

## C. **Other Claims**

Upon information and belief, there may be additional lien claims, in addition to the Atlantic Demand, or other claims that may give rise to a lien or other interest in the leases or contract areas under the UOAs, for which the Debtors may be required to indemnify and/or hold

---

[7] Such filings are not submitted with this Proof of Claim because of their size and because the Debtors have copies of such filings. Such filings may also be provided upon request.
[8] A true and correct copy of the Atlantic Demand is attached hereto as Exhibit B.

harmless the Claimants. The Claimants reserve the right to amend this Proof of Claim to the extent additional liens or other interests become known to the Claimants.

Additional information is available upon written request to Eric M. English, Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002.

In filing this Proof of Claim, Claimants do not waive any right or rights it may have against any other entities, person or persons liable for all or any part of the claims described herein.

In filing this Proof of Claim, Claimants do not seek to recover more than the full amount of its Claims notwithstanding filing Proofs of Claim against multiple Debtors. To the extent multiple Debtors are liable for amounts under the Proofs of Claim, Claimants seek only a single recovery for such Claim.

This Proof of Claim is filed to protect Claimants from any potential forfeiture of its claim by reason of the bar date for claims in this case.  Filing this Proof of Claim is not:

a.      a waiver or release of Claimants' rights or claims against any person, entity or property;

b.      a waiver or release of Claimants' right to trial by jury in any proceeding as to any matters so triable, whether or not the same are designated legal or equitable rights in any case, controversy or proceeding relating hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2)(H), and whether such jury trial right is pursuant to statute or the United States Constitution;

c.      a waiver or release of Claimants' right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge;

d.      a waiver or release of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceedings commenced with respect thereto or any other proceeding which may be commenced in this case against or otherwise involving Claimants; or

e.      an election of remedy.

# **EXHIBIT A**

# **AUDIT EXCEPTION LETTER**



**PCS** PETROLEUM
COMPTROLLER
SERVICES, INC.
*Joint Venture Specialists*

7322 Southwest Freeway
One Arena Place, Suite 1030
Houston, Texas 77074-2019

(713) 978-7040
Email: JVspecialists@PCSanalysts.com

September 29, 2017

Talos Energy LLC
500 Dallas Street
Suite 2000
Houston, Texas 77002

Attn:   Mr. John Edgar

Re:     2017 Audit of Fieldwood Energy LLC
        Various Offshore Properties & Facilities

Dear Mr. Edgar:

We have completed an examination of the records maintained by Fieldwood Energy LLC
(Fieldwood) applicable to various properties and facilities in which Talos Energy LLC
(Talos) is a working interest owner. The audit was conducted during the period from
June 19, 2017 through July 7, 2017, in our offices using data provided by Fieldwood.
Some additional information and documentation was provided by Fieldwood subsequent
to the audit field work.

The audit period was that period covered by the Joint Interest Billings for the properties
and facilities from January 2015 through December 2016, including both capital and
operating expenses. Charges and credits for the audit period were reviewed for accuracy
and compliance with the Operating Agreements and related contracts. Gross dollars
included in the audit scope amounted to $39,229,231.31.

Exhibit "A" summarizes and then details gross exceptions pertaining to the Main Pass
315 properties, totaling $862,236.59 plus amounts to be determined (TBD).

Exhibit "B" summarizes and then details all gross exceptions pertaining to the remaining
properties, totaling $384,554.52 plus amounts to be determined (TBD).

Exhibit "C" summarizes and then details a net exception to Talos for various costs pre-
effective to Talos's period of ownership totaling $50,871.27.

Exhibit "D" details an audit comment pertaining to the redetermination of ownership
interests in the Vermilion 076 Shore Base Scrubber facility. Although no exceptions are
taken for the charges and credits to the facility, it appears that past redeterminations of
the facility ownership interests may have been incorrect. If so, corrections could result in
charges or credits due some owners.

2017 Audit of Fieldwood
September 29, 2017
Page 2

In addition to the exceptions and comments detailed in the attached Exhibits, we offer the following information for your review. The Non-Operators may wish to address the issues and inconsistencies we have noted with Fieldwood.

**Allocation Platform Lease Operating Expenses**

Generally, Fieldwood allocates most monthly platform lease operating expenses (LOE) on a weighted, well-count basis by Block platform. The weighting is as follows: productive wells receive a factor of 4 ("1 point" per Fieldwood) and nonproductive wells receive a factor of 1 (".25 points" per Fieldwood). For occasions where the platform cost centers are included in an allocation pool, the weighting is a factor of 2 (or ".5 points"). Wells that have been "permanently abandoned" receive a factor of zero. We note that Fieldwood only designates a well as permanently abandoned if the caisson has been removed below the mudline, as per Code of Federal Regulations 30 CFR 250. In answer to an information request we issued during the audit field work regarding the allocation methodology, Fieldwood justified this allocation practice as follows:

> Many of Fieldwood Energy's TA & SI wells are drilled through the slots on Platforms. In some cases, the wells are satellite wells whose production is transported back to the Platform via a flowline...

> When a well, whether a slot well or satellite well is fully depleted, it will be TAed to provide a measure of security should something impact the well prior to being fully PAed. Boats running into platforms and caissons, hurricanes, problems with other slot wells that endanger the other nearby slot wells and more are all potential hazards that these TAed wells must be protected from until such time they are cut below the mudline and therefore fully PAed.

> Maintaining the overall condition of the platform to provide a safe working environment, effective NavAids, monitoring the TAed wells to make sure the cement plugs don't fail, watching for bubbles, staffing the platform with a crew and quarters, transporting the crews to and from the platform etc. These are all things that must be done in order to insure that all of the wells, however they might be classified, are protected and monitored until the caissons for these wells are cut below the mudline and fully PAed. Until that happens, the wells are at risk because they are in a hostile environment.

> Obviously a producing well should bear the majority of the Platform costs. But to fully exclude wells that are either TA or SI would place an excess

2017 Audit of Fieldwood
September 29, 2017
Page 3

cost burden on the producing wells because these TA & SI wells do require some degree of attention.

It is for these reasons that Fieldwood Energy believes this is the most equitable way of allocating Platform costs.

We asked Fieldwood's personnel how the various weighting factors were determined. We were told that the weighting factors began prior to Fieldwood's period of operation, and that Fieldwood was simply continuing an established practice. However, Fieldwood's personnel also indicated that Fieldwood's operations personnel had no issues with the established weighting practice and considered it fair.

We assume (and some of Fieldwood's other responses seem to indicate) that Fieldwood also justifies the practice because the ownership interests in the properties by allocation area are usually the same, or very similar, well-to-well. Consequently, the allocation of costs per this methodology has little or no effect on the total amounts charged to each owner – affecting only the way the costs are divided among the properties. This assumption is usually the case. However, we note that there are instances when wells within an allocation group do have ownership differences, and in some allocation groups, some owners have no interest at all in some wells.

We agree that non-productive wells require some amount of supervision and maintenance, and the non-productive wells benefit from the platform operations. However, we question whether the factors used accurately reflect the value of the services, materials and equipment charged to both the productive and non-productive wells in the operating areas.

The primary purpose of platform operations is to support the productive wells, but in many cases, there are significantly more non-productive wells than productive wells being supported. For example, in July 2015, the South Pass 089 allocation pool included twenty-three cost centers, only two of which were actually productive wells: the South Pass 089 #B002A and the South Pass 089 #B020 ST3. Including all productive and non-productive wells in the pool yields twenty-nine factors (21 non-productive factors + 8 productive factors). Consequently, by the Operator's methodology, less than 28% of the LOE was charged to the productive wells (8 productive / 29 total = .2758621).

This percentage of costs seems insufficient, and it likely misrepresents the actual lifting costs associated with the productive wells. Therefore, while we agree that the practice may have little effect on the total monthly billings to the Non-Operators, the accounting by property is not accurate.

2017 Audit of Fieldwood
September 29, 2017
Page 4

**Allocation of Production-Specific LOE**

Regarding costs which are specific to productive wells, such as compressors, production chemicals, etc., generally Fieldwood charges these costs exclusively to the productive wells. However, within our audit sample, we observed some instances when less-direct but related costs, such as compressor maintenance, were allocated at the platform level. Consequently, non-productive wells shared in the maintenance costs, while receiving no benefit from the compressors.

Again, this accounting is not accurate, since all costs specific to producing wells should be charged only to those wells. Allocating these costs to non-productive wells misrepresents the actual lifting costs associated with the productive wells. As previously mentioned, these allocation errors may have little effect on the total of the monthly billings to each owner, provided that all of an owners' interests are essentially the same across all properties involved. However, as also previously mentioned, this is not always the case.

**Other Inconsistencies in Allocations**

Within our audit sample, we noted instances when the accountings of lease operating expenses were handled inconsistently. For example, the number of wells in some allocation groups changed from month to month, although the actual number of wells did not. Often, this occurred in cases where Fieldwood erroneously included wells designated as "Do Not Use" (signified by a "DNU" prefix in the cost center name) in an allocation group.

For example, Fieldwood's well code SP089B16D2, which has a system well name of "DNU-South Pass 089 #B016D ST2," was apparently replaced by well code SP089B1602, which has a system well name of "South Pass 089 #B016 ST2." Therefore, both names are for the same well, with the second name replacing the first name. For July 2015 South Pass 089 expenses, Fieldwood erroneously treated them as two, separate properties and included both in the allocation group. Consequently, for that month, costs to the well were duplicated. We found several, similar instances like this error in our audit sample.

We also noted occasions when costs that appeared to benefit multiple properties were erroneously charged to a single property. The most significant example of this error occurred in months where costs for the East Cameron operating area, including most company labor, were exclusively charged to one non-productive well. However, the allocation group where the costs should have been applied includes a well in which only

2017 Audit of Fieldwood
September 29, 2017
Page 5

Fieldwood currently has an interest.  Consequently, if the costs had been applied to the correct allocation group, the Non-Operators would have been charged less, since a portion of the total costs would have gone to Fieldwood's well.  We have taken exception to this instance in Exhibit B.  However, in all such instances, the accounting is inaccurate.

Fieldwood's personnel were cordial and helpful during the course of the audit.  Please express to them our appreciation for their cooperation and assistance.

Sincerely yours,

Dalin T. Error
President

EXHIBIT "A"

MAIN PASS 315 BLOCK PROPERTIES
OPERATED BY FIELDWOOD ENERGY LLC
SUMMARY & DETAIL OF AUDIT EXCEPTIONS

| EXC | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|--------------------------|--------------|
| A1 | Credit Due – Unsupported invoice charges | $ TBD |
| A2 | Credit Due – Improper charge for subsea tree | 862,236.59 |
| | **Grand Total Gross Exceptions** | $ **862,236.59** |
| | | **Plus TBD** |

EXHIBIT "A" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|-----|-----|-----|

**A1  Various**

The Main Pass 315 #SS002 well was charged numerous times for chemicals referencing various Coastal Chemicals Co. invoices. The invoices are supported by purchase orders and bills of lading with shipment receipts. The auditors have taken no exceptions regarding these charges. However, the Joint Account Data Exchange (JADE) transaction schedule provided by the Operator often includes additional charges to the property referencing these same invoices. However, neither the JADE nor the invoices describe or support these additional charges.

For example, invoice CC126169 is the reference in the JADE for a $9,276.64 charge for chemicals and is also the reference for an additional, unsupported $1,977.84 charge. Each charge is shown as a separate line item on the JADE.

The auditors identified all unsupported charges for all such invoices in the audit sample, which total $20,281.93.

The auditors request that the Operator research this matter, provide an explanation for the unsupported charges in their response to this report, and credit the joint account if appropriate. The auditors have provided the Operator with the relevant JADE lines and Coastal Chemical invoices.

Credit Requested Main Pass 315 #SS002                    $        TBD

**A2  VO 526095**

The Main Pass 315 #SS002 well was charged $862,236.59 for a multi-well subsea tree referencing Fieldwood Energy LLC voucher 52605. Originally, the support for the charge was missing from the documentation provided to the auditors. However, the auditors requested the missing documentation on Information Request 6 (IR 6), and the Operator's personnel subsequently provided inventory voucher detail from purchasing to support the charge. The auditors then submitted Information Request 8 (IR 8) concerning the subsea tree. IR 8 stated:

> **Attached is the MT for the subsea tree that you sent us earlier today. Also attached is a copy of the AFE under which the tree was charged, and the activity reports pertaining to the AFE work. Please note that the AFE does not include a line item for a subsea tree, and the activity reports do not indicate the tree was needed or set.**
>
> **1.)   Why was the tree transferred to the well?**
> **2.)   When was the tree actually set, or is it still charged to the well's inventory?**

2

EXHIBIT "A" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|-----|-----|-----|

A1      CONT'D

> 3.)    It appears the AFE work was done in 2012, and the tree was shipped to Apache in 2013. Why was the tree delivered after the work was completed? Also, why was it transferred to the well in 2016, which is outside of the allowable period for the billing of costs beneficial to the Operator?

The Operator partially responded to IR 8 as follows:

> The wellhead was never charged to the Joint Account by Apache who was operator at the time this well was drilled. Fieldwood discovered this error in 6/2016 when it received the inventory listing from Apache and charged the Joint Account. This wellhead will remain charged to the Joint Account until such time as the wellhead is either used on another property, sold to another operator or discarded as scrap.
>
> Also, (attached) please find the correct Tour Report.

The auditors note the following concerning this issue:

1. Per the daily operations report provided by the Operator in the response to IR 8, a subsea tree for the Main Pass 315 #SS002 well was installed on July 5, 2011.

2. Per the inventory voucher detail provided by Fieldwood in response to IR 6, the subject subsea tree was "(o)riginally shipped January 29, 2013 under Apache Corp. ownership." This is more than a year and a half after installation of a subsea tree on the Main Pass 315 #SS002 well on July 5, 2011.

3. The Operator did not provide sufficient support or detail for the auditors to determine the propriety of the subject charge. There is no documentation for the original purchase of the tree, the pricing basis at transfer, or any other support indicating that the subject tree pertained to the Main Pass 315 #SS002 well.

4. As previously noted, the subsea tree was shipped to Apache in January 29, 2013. The Operator (Fieldwood) charged the tree in June 2016. This charge is clearly outside of the twenty-four month allowable period for adjustments favorable to the Operator. Further, the Operator provided no evidence that the tree was not previously charged to the appropriate well during Apache's period of operations.

Consequently, pending additional information and documentation justifying the subsea tree charge to the Main Pass 315 #SS002 well, the auditors request a credit of $862,236.59 to reverse it.

EXHIBIT "A" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|----------------------|--------------------------|--------------|

A1    CONT'D

Complete documentation has been provided to the Operator.

**Note: As stated above, the Operator's personnel claim the subsea tree was purchased for use in 2011. It was not delivered until 2013. Talos Energy LLC (Talos) was not a working interest owner in the Main Pass 315 #SS002 well during either of these periods. Talos did not acquire a working interest in the property until April 1, 2014. The prior owner of interest was Stone. Consequently, even if the tree is correctly charged to the joint account, it should have been billed to Stone, and not to Talos.**

Credit Requested Main Pass 315 #SS002 Well                    $  862,236.59

4

EXHIBIT "B"

VARIOUS OFFSHORE PROPERTIES & FACILITIES
OPERATED BY FIELDWOOD ENERGY LLC
SUMMARY & DETAIL OF AUDIT EXCEPTIONS

| EXC | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|---|---|---|
| B1 | Credit Due – HI A-545 coding & allocation errors | $   255,315.17 Plus TBD |
| B2 | Credit Due – SP 089 coding errors | 57,744.17 Plus TBD |
| B3 | Credit Due – EC 278 coding errors | 3,380.00 |
| B4 | Credit Due – EC 278 allocation errors | 53,729.88 |
| B5 | Credit Due – WC 172 coding error | 4,365.30 |
| B6 | Credit Due – WC 172 improper penalty charge | 10,000.00 |
| B7 | Credit Due – Open IR for payroll support | TBD |
| | **Grand Total Gross Exceptions** | $   **384,534.52** **Plus TBD** |

EXHIBIT "B" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|---|---|---|---|

B1      Various

The High Island A-545 #JA001 (HI A545 #J1) was charged $255,315.17 for production handling costs, contract platform costs and compressor costs referencing numerous joint interest billings from Arena Offshore LLC (Arena) to Fieldwood Energy LLC during the audit period.  The auditors note that the HI A545 #J1 well is owned 60% by the Operator, Fieldwood Energy LLC (Fieldwood), and 40% by the Non-Operator, Talos Energy LLC (Talos).

The auditors found that the Operator's accounting for the costs billed by Arena is very inconsistent.  For example, occasionally the Operator charged the joint account of the HI A545 #J1 well for production handling fees pertaining to the well, that were billed by Arena to Fieldwood at 60%.  On other occasions, the Operator did not charge the HI A545 #J1 well for these HI A545 #J1 production handling fees.  However, the HI A545 #J1 well was usually charged for production handling fees pertaining to the HI A545 #J2 well – a well in which it appears only Fieldwood has an interest.

As another example of inconsistency, a contract platform operating fee billed by Arena was sometimes charged fully to the HI A545 #J1 well by the Operator.  On other occasions, only 50% of the contract operating fee was charged.  On a few occasions, the fee was not charged to the HI A545 #J1 well at all.

Consequently, during the audit field work, the auditors submitted Information Request 4 (IR 4) to the Operator.  IR 4 states:

> Per our review, it appears that two Fieldwood wells – the HI 545A J1 and the HI 545A J2 wells – produce through facilities on the HI 547A platform.  The wells may have been drilled from the platform.  Consequently, in any given month, Arena bills Fieldwood for three types of costs:  a contract operating fee, production handling fees on the J1 and J2 wells, and maintenance costs on related production equipment such as compressors.
>
> Also per our review, it appears that Talos has a 40% working interest in the J1 well, but no working interest in the J2 well (since there are no charges to the J2 well during the audit period).
>
> Fieldwood's accounting for the three types of costs billed by Arena is very inconsistent.
>
> In most months, Talos is not charged for production handling fees that Arena's JIB indicates are applicable to the J1 well.  This seems appropriate, since Arena only bills Fieldwood for 60% of the J1 fees.  Consequently, we assume Arena bills the remaining 40% to Talos directly (for its 40% interest).

EXHIBIT "B" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|------------------------|---------------------------|--------------|

B1      CONT'D

However, Fieldwood usually bills production handling fees on the J2 well to the cost center for the J1 well, which means Talos shares in 40% of PH fees for a well in which it has no interest.

Additionally, Fieldwood sometimes bills Arena's monthly contract operating fee and related maintenance costs 50% to the J1 well. On other occasions these costs are billed 100% to the J1 well.

Finally, we note that there are some months in the audit period where it does not appear any Arena costs were charged to Talos. We are unsure whether there were no billings from Arena in these months, or if the costs were simply not booked to decks that included Talos.

Please explain the following:

1. What is the nature of the services provided by Arena? What governs the PHA fees and related operating expenses?
2. Why are J2 PH fees being billed to Talos under the J1 well?
3. Since it appears that Talos is billed directly by Arena for its 40% share of PH fees on the J1 well, is Talos also billed directly for its share of the monthly contract operating and maintenance charges? Do all of the subject costs from Arena pertain only to Fieldwood's interests?
4. If Talos should share in some of the subject costs, since Fieldwood has handled the subject allocations inconsistently, what is the correct accounting for these costs?

As of the end of field work, the Operator had not responded to IR 4. Therefore, a documented response to IR 4 is again requested.

Regardless, subsequent to issuing IR 4, the auditors learned from Talos that Arena has directly billed Talos for its 40% working interest share of production handling costs pertaining to the HI A545 #J1 well. Further, Arena has directly billed Talos for costs associated with compression on the HI A545 #J1 well.

Therefore, it appears that none of the subject costs from Arena should be charged to the HI A-545 #J1 well, since the costs are either separately billed to Talos by Arena, or they pertain to a well (or wells) in which Talos has no interest.

Consequently, pending a documented response to IR 4 justifying the Operator's accounting for the subject costs (including appropriate documentation), the auditors take exception to the Arena charges in the amount of $255,315.17.

EXHIBIT "B" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|---|---|---|---|

B1    CONT'D

Additionally, the auditors request additional credit for any improper Arena charges outside the audit period in an amount to be determined (TBD).

Credit Requested High Island A-545 #JA001 Well          $  255,315.17
                                                                                                   Plus TBD

B2    Various

Twenty-one South Pass 089 Block wells were allocated a total of $57,744.17, per the Operator's usual allocation methodology for general lease operating expenses, for various costs pertaining to a meter tube, flow computer, other production equipment and services and BSEE submittals referencing the following invoices:

> Accurate Measurement Controls Inc. invoice 29933IN ($3,100.00)
> Accurate Measurement Controls Inc. invoice 29965IN ($13,998.00)
> Accurate Measurement Controls Inc. invoice 30293IN ($4,337.83)
> Dai Engineering Management invoice 31791 ($3,115.00)
> SPL Inc invoice 1100797A ($33,193.34)

Although the subject costs were allocated to twenty-one SP 089 Block wells, references on the invoices and/or supporting tickets indicate that all of the services and equipment pertain to "Marubeni" and/or a "Marubeni well." Some reference a Marubeni "Platform Handling Agreement." A ticket attached to Accurate Measurement Controls Inc. invoice 30293IN specifically states that the associated costs "should be charged to Marubeni."

The auditors note that Marubeni is not included as a working interest owner on the billing decks for the South Pass 089 Block wells to which the subject costs were allocated. Additionally, the auditors are unaware of any "Platform Handling Agreement" justifying billing the costs to the South Pass 089 Block wells. Consequently, it appears that the subject costs should have been charged directly to Marubeni and/or the Marubeni well(s). They should not have been allocated to the twenty-one South Pass 089 Block wells, unless the joint partners benefit in some way by Marubeni's utilization of the facilities. However, the auditors are not aware of such a benefit, if any.

Consequently, the auditors request that the Operator explain Marubeni's usage of the South Pass 089 platforms and facilities and justify the subject costs as chargeable to the South Pass 089 Block wells. Pending this explanation, the auditors take exception to apparent coding errors in the amount of $57,744.17.

EXHIBIT "B" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|----------------------|--------------------------|--------------|

**B2    CONT'D**

Further, if appropriate, the auditors request credit for any additional costs or revenues, during or subsequent to the audit period, applicable to Marubeni's utilization of the South Pass 089 facilities, in an amount to be determined (TBD). Complete documentation for the twenty-one affected wells has been provided to the Operator.

Credit Requested South Pass 089 Block Wells                     $   57,744.17
                                                                      Plus TBD

**B3    VO 582414**
       Dai Engineering Management Group Invoice 31625

The referenced invoice charges the East Cameron 278 B platform $3,380.00 for revisions to the operating procedures for the associated field. The work was performed off-site and therefore is not billable. Section II, paragraph 6 of the governing Accounting Procedures to the Operating Agreement states, "the cost of professional consultant services or contract services of technical personnel not directly engaged on the Joint Property shall not be charged to the Joint Account unless previously agreed to by the Parties." There does not appear to be such an agreement. Credit is requested to reverse the charge.

Credit Requested East Cameron 278 P/F-B                     $    3,380.00

**B4    Various**

Within the audit sample, the auditors found numerous instances when charges that refer to "East Cameron 278 B" per supporting documents are allocated among all the wells in the East Cameron 265/278 Field (Deck Code EC265FLD). For the audit period, this was a total of sixteen wells. An example is voucher 297200 for Island Operating Company invoice 0230223. The invoice is for December 2014 offshore labor totaling $33,509.22. This amount is allocated across all sixteen well.

However, the auditors also found several instances when other charges that refer to "East Cameron 278 B" are charged to a single well, the East Cameron 278 #B009. During the audit period, the East Cameron 278 #B009 was a non-producing well. An example is voucher 274391 for Island Operating invoice 0228582. The invoice is for November

EXHIBIT "B" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|----------------------|--------------------------|--------------|

B4    CONT'D

2014 offshore labor totaling $33,740.26. The amount is charged entirely to the East Cameron 278 #B009 well.

Additionally, for the audit period, most of the Operator's field labor for the area is charged to the East Cameron 278 #B009 well, instead of across all the area's wells. The Operator's field labor charges to the East Cameron 278 #B009 well for the audit period total $974,489.70.

Clearly labor charges from Island Operating and the Operator's personnel should not be charged to a single, non-productive well. The charges should be allocated among all the wells receiving service, as in the first example. When a charge that should be allocated is not allocated, the costs of operating the properties involved are misstated. Also, in this instance, the Non-Operators are overcharged, since the Operator is currently the only owner with an interest in the East Cameron #C008 well. However, the East Cameron #C008 well is not charged if the costs are not allocated properly, and other working interest owners pay for services that should be wholly the responsibility of the Operator.

The auditors have extracted from the JADE all charges and credits to the East Cameron 278 #B009 well with an absolute value over $1,000.00, that were charged or credited wholly to the well, but which, it appears, should have been allocated among the field's wells. The total of all such charges is $1,665,626.27.

The auditors request credits to the East Cameron 278 #B009 well and offsetting charges to all the wells in the correct allocation group totaling $1,665,626.27, which results in a $53,729.88 reduction of gross costs billed to Talos Energy LLC.

| | |
|---|---|
| Credit Requested East Cameron 278 #B009 | $1,665,626.27 |
| Charge Requested East Cameron 265 #D001 | $ (214,919.52) |
| Charge Requested East Cameron 265 #D002 | $ (214,919.52) |
| Charge Requested East Cameron 265 #D003 | $  (53,729.88) |
| Charge Requested East Cameron 265 #D004 | $ (214,919.52) |
| Charge Requested East Cameron 265 #D005 | $ (214,919.52) |
| Charge Requested East Cameron 278 #B009 | $  (53,729.88) |
| Charge Requested East Cameron 278 #C001 | $  (53,729.88) |
| Charge Requested East Cameron 278 #C002 | $  (53,729.88) |
| Charge Requested East Cameron 278 #C003 | $  (53,729.88) |
| Charge Requested East Cameron 278 #C004ST2 | $  (53,729.88) |

10

EXHIBIT "B" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|---|---|---|---|
| B4 | CONT'D | | |
| | | Charge Requested East Cameron 278 #C005 | $ (53,729.88) |
| | | Charge Requested East Cameron 278 #C006 | $ (53,729.88) |
| | | Charge Requested East Cameron 278 #C007 | $ (53,729.88) |
| | | Charge Requested East Cameron 278 #C008 * | $ (53,729.88) |
| | | Charge Requested East Cameron 278 #C009 | $ (53,729.88) |
| | | Charge Requested East Cameron 278 #C010 | $ (214,919.51) |

*EC 278 #C008 is the well in which Talos Energy LLC has no current interest.

B5   VO 369998

The West Cameron 172 #E001 (WC 172 #E1) well was charged $4,365.30 for consulting services for a site visit on February 19-21, 2015 referencing Eagle Consulting, LLC invoice 201500350. However, the daily job report shows that the site visit was to the High Island Block 382 #F-9 and High Island Block 201 #1 during the February 19-21, 2015 time frame. The daily job report does show a site visit to the WC 172 #E1 well on February 22–23, 2015, but the charges for this site visit appear on invoice 201500352, voucher 369994. Therefore, the auditors request a $4,365.30 credit for the apparent coding error.

Credit Requested West Cameron 172 #E001 Well          $     4,365.30

B6   VO 551436

The West Cameron 172 #E001 well was charged $10,000.00 for a civil penalty referencing Office of Natural Resources Revenue invoice OTH100008546. Per the invoice support, unpermitted cutting work was performed near a tank of methanol during operations which, according to the reviewing officer, "constituted a threat of harm to life, property, and the environment." According to the reviewing officer's final decision, a violation of CFR § 250.113(a) occurred during a BSEE inspection on August 28, 2015. Further, the visiting officer gave notice to the Operator to provide additional information or request a meeting regarding the incident. However, it appears no response was submitted by the Operator. Consequently, the officer waived rights and moved forward with the $10,000.00 penalty, which the Operator subsequently charged to the joint account.

Section 5.2 of the Operating Agreement states that the "Operator shall conduct all

EXHIBIT "B" CONT'D

|  | OPERATOR'S | | GROSS |
|---|---|---|---|
| NO. | REFERENCE | DESCRIPTION OF EXCEPTION | AMOUNT |

B6     CONT'D

operations in a good and workmanlike manner, as would a prudent Operator under the same or similar circumstances." The auditors hold that both the original violation and the Operator's failure to attempt resolution with the ONRR represent imprudent decisions that were neither good nor workmanlike. The Non-Operators should not be penalized in this matter. Therefore, the auditors request a $10,000.00 credit for the improper penalty charge.

Credit Requested West Cameron 172 #E001 Well                    $    10,000.00

B7     Various

At the conclusion of the audit, some information requests issued during the field work remained partially or wholly unanswered by the Operator. Most were resolved by the exceptions noted previously. However, Information Request 7 (IR 7) which pertains to additional support required for three sample months of payroll charges (December 2014, September 2015 and December 2016) remains open. Although the Operator's personnel responded to IR 7 on July 19, 2017 (subsequent to the audit field work), the response did not provide most of the information requested in the IR. Therefore, the auditors again requested the missing information on that same day, but no further response or documentation was provided.

Consequently, the auditors cannot verify the accuracy and propriety of the Operator's payroll charges to the properties audited. The auditors expect that the majority of the subject costs are correct, but pending receipt and review of all requested information, the auditors take exception to all payroll costs in an amount to be determined (TBD).

Credit Requested Various Properties                              $      TBD

EXHIBIT "C"

VARIOUS OFFSHORE PROPERTIES & FACILITIES
OPERATED BY FIELDWOOD ENERGY LLC
SUMMARY & DETAIL OF NET AUDIT EXCEPTION

| EXC | DESCRIPTION OF EXCEPTION | NET AMOUNT |
|-----|--------------------------|------------|
| C1  | Credit Due – Pre-effective costs billed to Talos | $ 50,871.27 |
|     | **Grand Total Net Exceptions** | $ **50,871.27** |

13

EXHIBIT "C" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|---|---|---|---|

C1    Various

The Non-Operator, Talos Energy Offshore, LLC (Talos), acquired Stone Energy Corporation's (Stone's) working interests in various Gulf of Mexico properties effective April 1, 2014. These properties are identified by owner code "TAL 109" in the Joint Account Data Exchange (JADE) the Operator provided to the auditors. The auditors sorted the property charges on the TAL 109 JADE by invoice date. The sort identified 332 charges, totaling $346,618.31 gross, that appear to be for services prior to the effective date of the acquisition, based on the invoice dates of the associated invoices.

Accordingly, these costs should be billed through the deck that includes Stone's working interest, not Talos's working interest. The net charge to Stone's working interest for these costs totals $50,871.27. Consequently, the auditors request corresponding net credits to Talos's interests to correct these erroneous billings.

| | |
|---|---|
| Credit Due Talos Re East Cameron 265 #D001 | $ 3,025.86 |
| Credit Due Talos Re East Cameron 265 #D002 | $ 3,025.85 |
| Credit Due Talos Re East Cameron 265 #D003 | $ 756.45 |
| Credit Due Talos Re East Cameron 265 #D004 | $ 3,025.85 |
| Credit Due Talos Re East Cameron 265 #D005 | $ 3,025.84 |
| Credit Due Talos Re East Cameron 265 #B009 | $ 996.37 |
| Credit Due Talos Re East Cameron 278 #C001 | $ 996.36 |
| Credit Due Talos Re East Cameron 278 #C002 | $ 996.38 |
| Credit Due Talos Re East Cameron 278 #C003 | $ 996.36 |
| Credit Due Talos Re East Cameron 278 #C004 ST2 | $ 996.36 |
| Credit Due Talos Re East Cameron 278 #C005 | $ 996.39 |
| Credit Due Talos Re East Cameron 278 #C006 | $ 996.34 |
| Credit Due Talos Re East Cameron 278 #C007 | $ 996.37 |
| Credit Due Talos Re East Cameron 278 #C009 | $ 996.35 |
| Credit Due Talos Re East Cameron 278 #C010 | $ 3,985.59 |
| Credit Due Talos Re Main Pass 315 #SS002 | $ 349.84 |
| Credit Due Talos Re Vermilion 076 Scrubber | $ 24,637.43 |
| Credit Due Talos Re West Cameron 172 #E001 | $ 71.28 |

EXHIBIT "D"

VERMILION 076 SHORE BASE SCRUBBER
OPERATED BY FIELDWOOD ENERGY LLC
SUMMARY & DETAIL OF NET AUDIT EXCEPTION

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|-----|-----|-----|

## D1    AUDIT COMMENT - Vermilion 076 Shore Base Scrubber

Operations and accounting for the Shore Base Scrubber are governed by the *Amendment to the Vermilion Block 76 Field Shore Base Scrubber Facilities Agreement Vermilion Parish, Louisiana - Effective July 1, 1981.* On a test basis, for the audit period, the auditors reviewed the charges and credits to the scrubber to assure the propriety of the costs and compliance with the amendment. No exceptions are taken to the propriety of charges and credits pertaining to the scrubber costs.

However, the auditors did notice problems concerning the billing of these charges and credits to the individual owners, based on their ownership interests. The ownership interests, "Attachment A" of the Agreement, are redetermined effective July 1st each year, based on each owner's throughput during the previous twelve months ending June 30th. The previous twelve months' billings are then reallocated to the owners at their "new" ownership interests. To account for interest, the reallocation also includes an 8% charge or credit on each owner's change in cost resulting from the reallocation. After the "new" ownership interest is determined, subsequent charges and credits are billed at these "new" interests until ownership interests are redetermined effective July 1st the next year. These billing procedures are supposed to be repeated year after year.

It appears to the auditors that, for the audit period, the Operator has made several errors in attempting to follow these procedures, resulting in incorrect ownership amounts billed to the owners. Some owners may have been undercharged and others may have been overcharged for some prior periods. However, the auditors do not have all of the information needed to recalculate the correct billing amounts or ownership interests; and since the audit was limited to the propriety of charges, it would be outside of the audit scope to do so. Further, the Operator's personnel may be aware of the issue, and they may have decided that it is neither practical nor appropriate to redo the accounting retroactively. If so, the auditors do not disagree. Likewise, correcting settlement may have occurred by separate, manual invoicing, rather than through the joint interest billings.

The auditors note that, based on the July 1, 2016 Attachment "A", it appears the correct ownership interests have not been applied to the billings for the period July 1, 2016 through December 31, 2016. However, the auditors presume that these interests were redetermined effective July 1, 2017, per the Agreement. Accordingly, the billings for the

15

EXHIBIT "D" CONT'D

| NO. | OPERATOR'S REFERENCE | DESCRIPTION OF EXCEPTION | GROSS AMOUNT |
|-----|----------------------|--------------------------|--------------|

D1      Various

period July 1, 2016 through June 30, 2017 should be corrected when the reallocation based on the redetermined ownership interests is completed.

The auditors recommend that the Non-Operators confirm that the redetermination occurs and is correct.

**EXHIBIT B**

**ATLANTIC DEMAND**



# Service of Process Transmittal

11/04/2020
CT Log Number 538534539

**TO:**  Jean Coluzzi
Talos Energy LLC
333 CLAY STREET, SUITE 3300
HOUSTON, TX 77002

**RE:**  **Process Served in Louisiana**

**FOR:**  Talos Energy Offshore LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RE: Atlantic Maritime Services, LLC, Claimant // To: Talos Energy Offshore LLC |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # None Specified |
| **NATURE OF ACTION:** | Letter of Intent - Seeking Information |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 11/04/2020 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/04/2020, Expected Purge Date: 11/09/2020<br><br>Image SOP<br><br>Email Notification,  Jean Coluzzi  jean.coluzzi@talosenergy.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 208 LaSalle Ave<br>Suite 814<br>Chicago, IL 60604 |
| **For Questions:** | 866-539-8692<br>CorporationTeam@wolterskluwer.com |

Page 1 of  1 / SS

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

7015 0920 0001 7224 1801

*From:*   **LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
A LAW CORPORATION
PAN-AMERICAN LIFE CENTER
601 POYDRAS STREET, SUITE 2775
NEW ORLEANS, LOUISIANA 70130

Talos Energy Offshore LLC
through its registered agent,
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

# Lugenbuhl

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
A LAW CORPORATION
601 POYDRAS STREET | SUITE 2775 | NEW ORLEANS, LA 70130

TEL: 504.568.1990 | FAX: 504.310.9195

Stewart F. Peck

E-mail: speck@lawla.com

October 30, 2020

**VIA U.S. CERTIFIED RETURN RECEIPT**
**AND FACSIMILE – (713) 351-4100**

Talos Energy Offshore LLC
333 Clay Street, Suite 3300
Houston, TX 77002

Talos Energy Offshore LLC
through its registered agent,
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

Re:  Demand for Payment
     Our File No. 37647.200676

Dear Sir or Madam:

Enclosed please find copies of the Statement of Privilege recorded by Atlantic Maritime Services, LLC ("Atlantic") against the following property:

| | |
|---|---|
| **Title of Document:** | Statement of Privilege |
| **Claimant**: | Atlantic Maritime Services, LLC |
| **Parishes:** | St. Tammany, Orleans, St. Bernard and Plaquemines |
| **Lease**: | OCS-G-28030 |
| **Field:** | Mississippi Canyon – 948 |
| **Operator:** | Fieldwood Energy, LLC |
| **Principal Amount:** | $5,842,744.68 |

The records of BOEM indicate that you own a working interest in the above property.

Demand is hereby made upon you to pay Atlantic $5,842,744.68, together with interest thereon, the cost of filing the lien and attorney's fees of 10% percent of the amount sought to be collected.

Failure to pay Atlantic $5,842,744.68 within seven (7) days from date hereof will leave Atlantic no alternative but to file a Complaint against you in the United States District Court for the Eastern District for Louisiana seeking the recognition and enforcement of its privilege, i.e. its Louisiana Oil Well Lien, against your interest in the above property for the aforesaid amount. Additionally, pursuant to La. Rev. Stat. 9:4871, Atlantic will seek a Writ of Sequestration, without

October 30, 2020
Page 2 of 2

the necessity of furnishing bond, be issued. Once the Writ of Sequestration is issued, Atlantic will record it in the records of the Clerks of Court for the Parishes of St. Tammany, Orleans, St. Bernard and Plaquemines and with BOEM to effectuate a paper seizure of your working interest and other rights in the above described property.

Nothing herein shall be construed as Atlantic taking any action whatsoever against the Operator, Fieldwood Energy, LLC or any of its affiliates or any of their interests or rights they may have in the above described property, as Atlantic is stayed from proceeding against same pursuant to 11 U.S.C. §362. Atlantic does, however, reserve the right to seek to move to lift the stay order in the Fieldwood Chapter 11 proceeding to have your interest sequestered and seized as to any proceeds payable to you from the sale of hydrocarbons attributed to your interest against which Atlantic's liens attach.

Very truly yours,

Stewart F. Peck

SFP/yam
Enclosures

(Mississippi Canyon 948 #4)

## STATEMENT OF PRIVILEGE

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified for the County of Harris, State of Texas, personally came and appeared:

ATLANTIC MARITIME SERVICES LLC, a Delaware limited liability company ("Claimant")

who states that it has a claim, lien and privilege pursuant to La. R.S. 9:4861 et seq., as follows:

1)      Name and Address of Claimant:

   Atlantic Maritime Services LLC
   5847 San Felipe, Suite 3300
   Houston, TX 77057

2)      Nature and amount of the obligation for which Claimant's privilege is claimed:

   Labor, materials, services and related supplies and expenses, in connection with offshore drilling services under a contract between Claimant and the Operator for the Well (as defined in Section 5 below) in the amount of $5,824,744.68, plus contractually owed interest at the rate of 10 percent per annum, and contractually owed attorneys' fees and expenses (collectively, the "Obligations"). The Obligations include, but are not limited to obligations owed to Claimant (a) as a contractor for the price of its contract with Operator for operations with respect to the Well; and (b) as a seller for the price of movables sold to Operator that are incorporated in the Well or in a facility located on the well site; consumed in operations; and/or consumed at the site of the Well by a person performing labor or services on the site of the Well located in the waters of the State of Louisiana. Invoices evidencing the Obligations are attached hereto. The date of the last activity giving rise to Claimant's privilege set forth in this Statement of Privilege is July 4, 2020.

3)      Name and address of the person owing the amount for which Claimant's privilege is claimed:

   Fieldwood Energy LLC
   2000 W. Sam Houston Parkway South, Suite 1200
   Houston, TX 77042

4)      Name and address of the operator of the well as shown by the records of the Commission of Conservation:

1

St. Tammany Parish 2018
Instrmnt #: 2215417
Registry #: 2705279 pir
7/15/2020 3:30:00 PM
MB X CB    MI    UCC

Not applicable as this well is located on the Outer Continental Shelf; however, the Operator of the Well is as follows:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

5) Description of the Operating Interest Upon Which the Privilege is Claimed, or of the Well with Respect to Which the Operations Giving Rise to Claimant's Privilege were Performed:

The privilege is claimed upon the operating interest of Fieldwood Energy LLC in **Mississippi Canyon Block 948, Lease No. OCS-G-28030** (the "Lease"), and **Well #4 (OCS-G-28030)** drilled by Claimant on behalf of Fieldwood Energy LLC during the time from June 4, 2020, until July 4, 2020 (the "Well"), including the operating interest under which the operations giving rise to the Claimant's privilege are conducted together with the interest of the lessee and/or operator of such interest in any (a) well, building, tank, leasehold pipeline, and other construction or facility on the well site; (b) movable on the well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use; (c) tract of land, servitude, and lease described in La. R.S. 9:4861(12)(c) covering the well site of the operating interest; (d) drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the Claimant's privilege emanate; (e) the interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege; and (f) the proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

This Statement of Privilege is made by Claimant for the purpose of preserving its claim, lien and privilege as a provider of materials, labor and services for and to the Operator and Well described above, including, without limitation, all claims, liens and privileges under La. R.S. 9:4861 *et seq.*, and all claims for interest due on the obligations, along with the cost of preparing and filing this Statement of Privilege, and attorneys' fees and costs, to the fullest extent permitted by applicable law.

[ remainder of page intentionally blank - signature follows on next page ]

2

Date: July _15_, 2020       ATLANTIC MARITIME SERVICES LLC,
                             a Delaware limited liability company

                             By: _~ R MS_
                             Name: _JASON R MORGANELLI_
                             Title: _PRESIDENT_

Sworn to and subscribed before me, Notary Public,
this _15th_ day of July 2020.

_Juanita Floor_
Notary Public
Notary Bar Roll No. _11589836_
My Commission Expires: _4-19-2023_

```
┌─────────────────────────────────────┐
│        JUANITA FLOOR                  │
│  Notary Public, State of Texas        │
│  Comm. Expires 04-19-2023             │
│      Notary ID 11589836               │
└─────────────────────────────────────┘
```

3











**Valaris DS-16 MONTHLY BILLING SUMMARY**

[illegible]

Danny Sharry

09-05-2020

VALARIS

Atlantic Maritime Service LLC
5847 San Felipe, Suite 3500
Houston, TX 77057
Phone: (281) 608-0377

# INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W.SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO: FWD2007263
INVOICE DATE: 07/09/20
CUSTOMER NUMBER: 1348
PAYMENT TERM: 45 DAYS
RIG: DS-16 Resolute
WELL NUMBER: MC-948 #4

AFE #: FW205014

TO INVOICE YOU FOR THIRD PARTY CATERING JULY 1-4, 2020 PER ATTACHED THE COMPANY MEAL TICKETS

| | | | |
|---|---|---|---|
| MEALS @ | 35 MEAL / COURTESY | $ | - |
| 27 COST/DAY/PERSON | 140 COST/DAY/PERSON | $ | 3,780. |

AMOUNT DUE: $ 3,780.

Rig Manager's Approval: ______

REMIT ACH PAYMENTS TO:
Beneficiary: Atlantic Maritime Service LLC
Wells Fargo Bank, N.A.
San Fransisco, CA
SWIFT Code: WFBIUS6S
ABA #121000248
Account # 4869481673

| | | |
|---|---|---|
| $ | (3,780.00) | 810620.10417.4202.110 |
| $ | - | 912812.10417.4202.110 |
| $ | - | 919220.10417.4202.110 |
| $ | - | 912814.10417.4202.110 |
| $ | - | 819220.10417.4202.110 |

ED





# VALARIS

Atlantic Maritime Service LLC
8141 San Felipe, Suite 500
Houston, TX 77063
Phone: (281) 804-5777

## INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO. PM72007242
INVOICE DATE: 7/08/20
CUSTOMER NUMBER: 1048
PAYMENT TERM: 45 DAYS
PO#: 09.18 Resolute

WELL NUMBER MC-548-#4

AFE #: EM250414

TO INVOICE YOU FOR THIRD PARTY CATERING JUNE 5-30, 2020 PER ATTACHED THE COMPANY
MEAL TICKETS

| | | | |
|---|---|---|---|
| 1653 | MEALS @ | 35 MEAL / COURTESY | $ |
| | | 140 COST/DAY/PERSON | 231,420. |

Rig Manager's Approval _____

AMOUNT DUE:  $  231,420.

REMIT ACH PAYMENTS TO:
Beneficiary: Atlantic Maritime Service LLC
Wells Fargo Bank, N.A.
San Francisco, CA
SWIFT Code: WFBIUS6S
ABA #121000248
Account #4585945153

| | |
|---|---|
| $ | (231,420.00) 810020.10417.A202.110 |
| $ | (54,993.00) 919912.10417.A202.110 |
| $ | 54,098.55 919220.10417.A202.110 |
| | (843,469.00) 919314.10417.A202.110 |
| | 945,409.00 919220.10417.A202.110 |

ED

---

## Rowan Resolute



Rig: RESOLUTE
AFE: PM250414
Lease: MC-548 #4
Project: Godfrey
Engineer: J. Pierce
Routing #: 250417



STATE OF LOUISIANA, PARISH OF ST. TAMMANY
I HEREBY CERTIFY that this above is a true and
correct copy of the original instrument as recorded
hereinafter # _____ of the records filed of record
records. Given under my hand and seal of office
this ___ day of _____
By Certified Ex-Officio Recorder
Jennifer Knittms Tolemny Pitre

Lead Records Division
Telephone (504) 407-0005

1340 Poydras Street, 4th Floor
New Orleans, Louisiana 70112

THIS PAGE IS RECORDED AS PART OF YOUR DOCUMENT AND
SHOULD BE RETAINED WITH ANY COPIES.

**Chelsey Richard Napoleon**
Clerk of Court and Ex-Officio Recorder
Parish of Orleans



Filed by: SHER GARNER
909 POYDRAS ST 28TH FLOOR

NEW ORLEANS, LA 70112

Mortgage Instrument Number: 1334982

Add'l Titles Doc Types:

Document Type: LABOR/MATERIAL LIEN

Recording Date: 7/16/2020 01:40:54 PM

Instrument Number: 2020-24965

## DOCUMENT RECORDATION INFORMATION

(Mississippi Canyon 948 #4)

## STATEMENT OF PRIVILEGE

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified for the
County of Harris, State of Texas, personally came and appeared:

ATLANTIC MARITIME SERVICES LLC, a Delaware limited liability company
("Claimant")

who states that it has a claim, lien and privilege pursuant to La. R.S. 9:4861 et seq., as
follows:

1) Name and Address of Claimant:

Atlantic Maritime Services LLC
5847 San Felipe, Suite 3300
Houston, TX 77057

2) Nature and amount of the obligation for which Claimant's privilege is claimed:

Labor, materials, services and related supplies and expenses, in connection with
offshore drilling services under a contract between Claimant and the Operator for the
Well (as defined in Section 5 below) in the amount of $5,824,744.08, plus
contractually owed interest at the rate of 10 percent per annum, and contractually
owed attorneys' fees and expenses (collectively, the "Obligations"). The Obligations
include, but are not limited to obligations owed to Claimant (a) as a contractor for the
price of its contract with Operator for operations with respect to the Well and (b) as a
seller for the price of movables sold to Operator that are incorporated in the Well or
located in a facility located on the well site, consumed in operations, consumed at the
site of the Well by a person performing labor or services on the site of the Well
located in the waters of the State of Louisiana. Invoices evidencing the Obligations
are attached hereto. The date of the last activity giving rise to Claimant's privilege
set forth in this Statement of Privilege is July 4, 2020.

3) Name and address of the person owing the amount for which Claimant's privilege is
claimed:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

4) Name and address of the operator of the well as shown by the records of the Commission
of Conservation:

1

Chelsey Richard Napoleon
CLERK OF CIVIL DISTRICT COURT
Parish of Orleans 07/16/2020 01:40:54 PM
INST # 2020-24965
TYPE: LABOR (3 PGS)
MIN#: 1334982

Not applicable as this well is located on the Outer Continental Shelf, however, the Operator of the Well is as follows:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

5)   Description of the Operating Interest Upon Which the Privilege is Claimed, or of the Well with Respect to Which the Operations Giving Rise to Claimant's Privilege were Performed:

The privilege is claimed upon the operating interest of Fieldwood Energy LLC in Mississippi Canyon Block 948, Lease No. OCS-G-28890 (the "Lease"), and Well #4 (OCS-G-28890) drilled by Claimant on behalf of Fieldwood Energy LLC during the time from June 4, 2020, until July 4, 2020 (the "Well"), including the operating interest under which the operations giving rise to the Claimant's privilege are continued together with the interest of the lessee and/or operator of such interest in any (a) well, building, tank, leasehold pipeline, and other construction or facility on the well site, (b) movable on the well site that is used in operations, other than a movable that is only transitorily on the well site for repair, testing, or other temporary use, (c) tract of land, servitude, and lease described in La. R.S. 9:4861(17)(a) covering the well site of the operating interest, (d) drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the Claimant's privilege emanate, (e) the interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of this operating interest subject to the privilege, and (f) the proceeds received only, and for the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

This Statement of Privilege is made by Claimant for the purpose of preserving the claim, lien and privilege as a provider of materials, labor and services for and to the Operator and Well described above, including, without limitation, all claims, liens and privileges under La. R.S. 9:4861 et seq., and all claims for interest due on the obligations, along with the cost of preparing and filing this Statement of Privileges, and attorneys' fees and costs, to the fullest extent permitted by applicable law.

[ remainder of page intentionally blank - signature follows on next page ]

Date: July 15, 2020

ATLANTIC MARITIME SERVICES LLC,
a Delaware limited liability company

By: _____
Name: Joshua E. Maharrey
Title: PRESIDENT

Sworn to and subscribed before me, Notary Public,
this ____ day of July, 2020.

_____
Notary Public
Notary Bar Roll No. 115598236
My Commission Expires: ___4|13|2023____



2020-24965  Page 4 of 17

# VALARIS



*Atwood Oceanics Service LLC*
*6606 Gulf Freeway, Suite 30230*
*Houston, TX 77032*
*Phone: (281) 854-2077*

## INVOICE

To:  ESI/ENSCO PAYROLL LLC
     2000 W SAM HOUSTON PARKWAY SOUTH
     SUITE 1200
     HOUSTON, TX 77042

     ATTN: AP DEPARTMENT

INVOICE NO:  FIN202497288
INVOICE DATE:  7/6/2020
CUSTOMER NUMBER:  1548
PAYMENT TERM:  45 DAYS

RIG: Rowan-DS-16
WELL NUMBER: MC941 #4
LOCATION: MC941 #4

AFE: FIX15MH4

DAYWORK BILLING FOR ROWAN RESOLUTE FOR THE MONTH OF JUNE
PER ARTICLE OF THE OFFSHORE DAYWORK DRILLING CONTRACT
AND SIGNED RIG TIMESHEET ATTACHED.

FROM 16:00 HOURS ON 06/04/2020 THRU 14:00 HOURS ON 06/30/2020

| DAYRATE EFFECTIVE | DAYRATE | |
|---|---|---|
| 559.0 HOURS OPERATING AT | $766,449.96 | $4,378,229.21 |
| 0.0 HOURS STANDBY AT | $441,378.00 | $0.00 |
| 0.0 HOURS REDRILL | $166,302.96 | $0.00 |
| 14.0 HOURS (PRIVATE SCHOOL RATE | $165,000.00 | $123,333.38 |
| 6.5 HOURS REPAIR SERVICE RATE | $185,000.00 | $3,204.17 |
| 47.5 HOURS ROVE RATE | $185,000.00 | $330,972.22 |
| 0.0 HOURS FORCE MAJEURE | $185,000.00 | $0.00 |
| 626.0 TOTAL HOURS | | |

Case Shortage

AMOUNT DUE:  $   4,854,145.96



Digitally signed
by the
Drive
6/14/20
06/14/20
ROBLES KROP

REMIT ACH PAYMENTS TO:
Beneficiary: Atlantic Maritime Service LLC
Wells Fargo Bank, N.A.
San Francisco, CA
SWIFT Code: WFBIUS6S
ABA: 121000248
Account #: 4660481673

Clearing EUVIJ7N  10417- 110-4202-E10101
                  10417- 110-4208-010102
                  10417- 110-4202-610110
                  (127.197.42) 10417- 110-4202-810103
                  (203.82230) 10417- 110-4208-010104
                  ED









# VALARIS

Atwood Maritime Services LLC
15377 Oak Valley, Suite 3300
Houston, TX 77032
Phone: (281) 339-6277

**INVOICE**

TO: FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO. FM20207293
INVOICE DATE: 07/30/2020
CUSTOMER NUMBER: 1346
PAYMENT TERM: 45 DAYS
RIG: DS-18 Rockstar

WELL NUMBER MC-948 #4

ARE #: FM20X294

TO INVOICE YOU FOR THIRD PARTY CATERING JULY 14, 2020 PER ATTACHED THE COMPANY
MEAL TICKETS

| | | |
|---|---|---|
| MEALS @ | | $ |
| .27 COST/DAY/PERSON | | |
| 35 MEAL / COURTESY | | $ 3,780.0 |
| 140 COST/DAY/PERSON | | |

AMOUNT DUE: $ _____ 3,780.00

Rig Manager's Approval: _____

REMIT ACH PAYMENTS TO:
Beneficiary: Atwood Maritime Services LLC
Wells Fargo Bank, N.A.
San Francisco, CA
SWIFT Code: WFBIUS6S
ABA #121000248
Account # 4259481973

| | |
|---|---|
| $ | 0.780.00 |
| $ | 919200.10417.4202.110 |
| $ | 919170.10417.4202.110 |
| $ | 919220.10417.4202.110 |
| $ | 912814.10417.4203.110 |
| $ | 912825.10417.4202.110 |
| $ | 919220.10417.4202.110 |





2020-24965 Page 14 of 17

# VALARIS

Atlantic Maritime Service LLC
5847 San Felipe, Suite 3000
Houston, TX 77057
Phone: (281) 899-0277

## INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W.SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO.: PVI2020/7262
INVOICE DATE: 07/30/20
CUSTOMER NUMBER: 1743
PAYMENT TERM: 45 DAYS
RIG: DS-10/Resolute

WELL NUMBER: MC-948 #4

AFE #: PXX/20/P44

TO INVOICE YOU FOR THIRD PARTY CATERING JUNE 5-30, 2020 PER ATTACHED THE COMPANY
MEAL TICKETS

| | | | AMOUNT DUE: | $ | 231,420.00 |
|---|---|---|---|---|---|

MEALS @

1653 COST/DAY/PERSON

140 COST/DAY/PERSON

35 MEAL / COURTESY

$

$ 231,420.00

Rig Manager's Approval

REMIT ACH PAYMENTS TO:
Wells Fargo Bank, N.A.
San Francisco, CA
SWIFT Code: WFBIUS6S
ABA # 121000248
Account # 4699481573

Beneficiary: Atlantic Maritime Service LLC
Wells Fargo Bank, N.A.
San Francisco, CA
SWIFT Code: WFBIUS6S
ABA # 121000248
Account # 4699481573

$ (231,420.00) 810520.10417.6202.110
$ (34,090.65) 912812.10417.6200.110
$ 34,090.65 912221.10417.6202.110
$ (54,480.00) 912814.10417.6202.110
$ 54,480.00 912221.10417.6202.110

ED

## Rowan Resolute



2020-24965 Page 15 of 17

Rowan Resolute

1340 Poydras Street, 4th Floor
New Orleans, Louisiana 70112



2020-24965 Page 17 of 17

Land Records Division
Telephone (504) 407-0005

**Chelsey Richard Napoleon**
Clerk of Court and Ex-Officio Recorder
Parish of Orleans

DOCUMENT RECORDATION INFORMATION

Instrument Number: 2020-24965

Recording Date: 7/16/2020 01:40:54 PM

Document Type: LABOR/MATERIAL LIEN

Addtl Titles Doc Types:

Mortgage Instrument Number: 1334982

Filed by:    SHER GARNER
909 POYDRAS ST 28TH FLOOR

NEW ORLEANS, LA 70112

THIS PAGE IS RECORDED AS PART OF YOUR DOCUMENT AND
SHOULD BE RETAINED WITH ANY COPIES.



Steven Woehner, Deputy Clerk
A True and Correct Copy
Chelsey Richard Napoleon, Clerk, Civil District Court

St. Bernard Parish Certified Copy

Randy S. Nunez
Clerk of Court
St. Bernard Parish Courthouse
Chalmette, LA 70044
(504) 271-0434

Received From:
SHER GARNER
909 POYDRAS STREET
SUITE 2800
NEW ORLEANS, LA 70112

First MORTGAGOR
[ATLANTIC MARITIME SERVICES LLC]

First MORTGAGEE
[FIELDWOOD ENERGY LLC]

Index Type : MORTGAGES
Type of Document : LIEN

Recording Pages : 17
Description : STATEMENT OF PRIVILEGE

Recorded Information

File Number : 633342
Book : 1946    Page : 454

CLERK OF COURT
Randy S. Nunez
Parish of St. Bernard
I certify that this is a true copy of the attached document recorded on 07/10/2020 at 12:15:50
Recorded in Book: 1946
Page : 454
(RANDY S. FLEETWOOD)
Deputy Clerk

On (Recorded Date) : 07/10/2020
At (Recorded Time) : 12:15:56PM

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Courts office for St. Bernard Parish, Louisiana.

Return To:
SHER GARNER
909 POYDRAS STREET
SUITE 2800
NEW ORLEANS, LA 70112

Doc ID : 009078760017

Do not Detach this Recording Page from Original Document

(Mississippi Canyon 948 #4)

**STATEMENT OF PRIVILEGE**

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified for the County of Harris, State of Texas, personally came and appeared:

ATLANTIC MARITIME SERVICES LLC, a Delaware limited liability company ("Claimant")

who states that it has a claim, lien and privilege pursuant to La. R.S. 9:4861 et seq., as follows:

1) Name and Address of Claimant:

Atlantic Maritime Services LLC
5847 San Felipe, Suite 3300
Houston, TX 77057

2) Nature and amount of the obligation for which Claimant's privilege is claimed:

Labor, materials, services and related supplies and expenses, in connection with offshore drilling services under a contract between Claimant and the Operator for the Well (as defined in Section 5 below) in the amount of $5,824,744.68, plus contractually owed interest at the rate of 10 percent per annum, and contractually owed attorneys' fees and expenses (collectively, the "Obligations"). The Obligations include, but are not limited to obligations owed to Claimant (a) as a contractor for the price of its contract with Operator for operations with respect to the Well, and (b) as a seller for the price of movables sold to Operator that are incorporated in the Well or in a facility located on the well site, consumed in operations, and/or concerned at the site of the Well by a person performing labor or services on the site of the Well located in the waters of the State of Louisiana. Invoices evidencing the Obligations are attached hereto. The date of the last activity giving rise to Claimant's privilege set forth in this Statement of Privilege is July 4, 2020.

3) Name and address of the person owing the amount for which Claimant's privilege is claimed:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

4) Name and address of the operator of the well as shown by the records of the Commission of Conservation:

1

Not applicable as this well is located on the Outer Continental Shelf, however, the Operator of the Well is as follows:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

5) Description of the Operating Interest Upon Which the Privilege is Claimed, or of the Well with Respect to Which the Operations Giving Rise to Claimant's Privilege were Performed:

The privilege is claimed upon the operating interest of Fieldwood Energy LLC in Mississippi Canyon Block 948, Lease No. OCS-G-28030 (the "Lease"), and Well #4 (OCS-G-28030) drilled by Claimant on behalf of Fieldwood Energy LLC during the time from June 4, 2020, until July 4, 2020 (the "Well"), including the operating interest under which the operations giving rise to the Claimant's privilege are conducted together with the interest of the lessee and/or operator of such interest in any (a) well, building, tank, leasehold pipeline, and other construction or facility on the well site, (b) movable on the well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use; (c) tract of land, servitude, and lease described in La. R.S. 9:4861(12)(c) covering the well site of the operating interest; (d) drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the Claimant's privilege emanate; (e) the interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of this operating interest subject to the privilege; and (f) the proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

This Statement of Privilege is made by Claimant for the purpose of preserving its claim, lien and privilege as a provider of materials, labor and services for and to the Operator and Well described above, including, without limitation, all claims, liens and privileges under La. R.S. 9:4861 et seq., and all claims for interest due on the obligations, along with the cost of preparing and filing this Statement of Privilege, and attorneys' fees and costs, to the fullest extent permitted by applicable law.

[ reminder of page intentionally blank - signature follows on next page ]

Date: July 15, 2020

ATLANTIC MARITIME SERVICES LLC,
a Delaware limited liability company

By: _____
Name: Jason Marchbanks
Title: PRESIDENT

Sworn to and subscribed before me, Notary Public,
this 15th day of July 2020.

_____
Notary Public
Notary/Bar Roll No. 115923.6
My Commission Expires: 4/19/2022

JUANITA FLOOR
Notary Public, State of Texas
Comm. Expires 04-19-2022
Notary ID 11688858

2

3



# VALARIS

Atlanta Wellbore Services LLC
3471 Sun Palace Drive, Suite 2400

Houston, TX 77057
Phone: (713) 990-0277

**INVOICE**

TO: FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042

ATTN: AP DEPARTMENT

INVOICE NO:      FVC0007390
INVOICE DATE:    7/6/2020
CUSTOMER NUMBER: 5140
PAYMENT TERM:    45 DAYS

RIG: Rowan - DS-16
WELL NUMBER: MC40-44
LOCATION: MC40-44

VEB: PVC589H4

DAYWORK BILLING FOR ROWAN ABSOLUTE FOR THE MONTH OF JUNE
PER ARTICLE 8 OF THE OFFSHORE DAYWORK DRILLING CONTRACT
AND BASED ON TIMESHEET ATTACHED.

FROM 18:00 HOURS ON 6/04/2020 THRU 24:00 HOURS ON 06/30/2020

DAYWORK EFFECTIVE:

558.0 HOURS DAYLOADING AT    $4,770.00/0.31
63.0 HOURS STANDBY AT        $0.00
0.0 HOURS REDRILL             $0.00
15.0 HOURS REPAIR/SUBSEA      $132,333.33
0.0 HOURS REPAIR RATE         $3,564.17
0.0 HOURS MOVE RATE           $359,323.67
47.0 HOURS MOVE RATE          $0.00
0.0 HOURS FORCE MAJEURE       $0.00
683.0 TOTAL HOURS

Crew Shortage

AMOUNT DUE:    $ 4,884,343.84

REMIT ACH PAYMENTS TO:
Ensco Offshore Maritime Service LLC
Wells Fargo Bank N.A.
San Francisco, CA
SWIFT Code WFBIUS6S
ABA 121000248
Account # 4155641073

Docusign AUTHEN
(427A,533.31)  15A17: 115-4205-010-01
               15A17: 115-4205-010-02
               15A17: 115-4205-010-03
(127,157.42)   15A17: 115-4205-010-03
(329,572.07)   15A17: 115-4205-010-104
                              ED

Digitally Signed
by Ken
2020.07.02
09:05:24 -05'00'









# VALARIS

Atlantic Maritime Service LLC
9047 Sam Rayburn Dallas 35000
Houston, TX 77027
Phone: (281) 654-5277

## INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO. FW20007263
INVOICE DATE: 07/03/20
CUSTOMERS NUMBER: 1549
PAYMENT TERM: 45 DAYS
RIG: DS-16 Rosculta

WELL NUMBER: MC-948 #4

AFE #: FW201614

TO INVOICE YOU FOR THIRD PARTY CATERING JULY 1-14, 2020 PER ATTACHED THE COMPANY MEAL TICKETS

MEALS @

· 27 COST/DAY/PERSON          38 MEAL / COURTESY

· 140 COST/DAY/PERSON

$                              $

3,760.        3,760.

Rig Manager's Approval: _____

AMOUNT DUE: $ _____ 3,760.

$   810820.10417.4202.11C
$   912812.10417.4202.110
$   910220.10417.4202.110
$   912814.10417.4202.110
$   910220.10417.4202.110
$   (3,760.00)
ED

REMIT ACH PAYMENTS TO:
Beneficiary: Atlantic Maritime Servios LLC
Wells Fargo Bank, NA
San Francisco, CA
SWIFT Code: WFBIUS6S
ABA # 121000248
Account # 4665451873





# VALARIS

Atlantic Maritime Service LLC
...
Houston, TX 77042
Phone: (281) 606-4777

## INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO. FW023707262
INVOICE DATE: 07/08/20
CUSTOMER NUMBER: 13AR
PAYMENT TERM: 45 DAYS
RIG: DS-16 Resolute

WELL NUMBER: MC-948 #4

AFE & INVOICE#
TO INVOICE YOU FOR THIRD PARTY CATERING JUNE 5-30, 2020 FOR ATTACHED THE COMPANY
MEAL TICKETS

| MEALS @ | | |
|---|---|---|
| 1688 COST/DAY/PERSON | 35 MEAL /COURTESY | $ |
| | 140 COST/DAY/PERSON | $  231,420/ |

Rig Manager's Approval:

AMOUNT DUE: $  231,420.X

REMIT ACH PAYMENTS TO:
Beneficiary: Atlantic Maritime Service LLC
San Francisco, CA
Wells Fargo Bank, NA
SWIFT Code: WFBIUS6S
ABA #121000248
Account # 4685461873

$  (231,420.00) 810200.10417.4202.110
$  (24,269.60) 919812.10417.4202.110
$  94,069.85 919820.10417.4202.110
$  (843,469.00) 912814.10417.4202.110
$  43,469.00 910200.10417.4202.110



Rowan Resolute



Rovann Resolute

---

## St. Bernard Parish Certified Copy

Randy S. Nunez
Clerk of Court
St. Bernard Parish Courthouse
Chalmette, LA 70044
(504) 271-3434

**Received From:**
SHER GARNER
909 POYDRAS STREET
SUITE 2800
NEW ORLEANS, LA 70112

**First MORTGAGOR**
FIELDWOOD ENERGY LLC

**First MORTGAGEE**
ATLANTIC MARITIME SERVICES LLC

| | |
|---|---|
| Index Type : MORTGAGES | File Number : 533559 |
| Type of Document : LIEN | |
| Recording Pages : 14 | Book : 1946    Page : 297 |

Description :  PROPERTY:  MISSISSIPPI CANYON BLOCK 519 LEASE NO OCS-G-27276 AND WELL #3

**Recorded Information**

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for St. Bernard Parish, Louisiana.

On (Recorded Date) : 07/23/2020
At (Recorded Time) : 1:56:11 PM

Doc ID - 008078340014

CLERK OF COURT
RANDY S. NUNEZ
Parish of St. Bernard
I certify that this is a true copy of the attached document that was filed for registry and
Recorded 07/23/2020 at  1:56:11
Recorded in Book   1946   Page   297
File Number   533559

/S/Cheyenne Robin

Return To :
SHER GARNER
909 POYDRAS STREET
SUITE 2800
NEW ORLEANS, LA 70112

Do not Detach this Recording Page from Original Document

(Mississippi Canyon 519 #2)

## STATEMENT OF PRIVILEGE

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified for the County of Harris, State of Texas, personally came and appeared:

ATLANTIC MARITIME SERVICES LLC, a Delaware limited liability company ("Claimant")

who states that it has a claim, lien and privilege pursuant to La. R.S. 9:4861 et seq, as follows:

1)  Name and Address of Claimant:

    Atlantic Maritime Services LLC
    5847 San Felipe, Suite 3300
    Houston, TX 77057

2)  Nature and amount of the obligation for which Claimant's privilege is claimed:

    Labor, materials, services and related supplies and expenses, in connection with offshore drilling services under a contract between Claimant and the Operator for the Well (as defined in Section 5 below) in the amount of $5,528.25, plus contractually owed interest at the rate of 10 percent per annum, and contractually owed attorneys' fees and expenses (collectively, the "Obligations"). The Obligations include, but are not limited to obligations owed to Claimant (a) as a contractor for the price of its contract with Operator for operations with respect to the Well, and (b) as a seller for the price of movables sold to Operator that are incorporated in the Well or in a facility located on the well site, consumed in operations and/or consumed at the site of the Well by a person performing labor or service on the site of the Well located in the waters of the State of Louisiana. Invoices evidencing the Obligations are attached hereto. The date of the last activity giving rise to Claimant's privilege set forth in this Statement of Privilege is April 3, 2020.

3)  Name and address of the person owing the amount for which Claimant's privilege is claimed:

    Fieldwood Energy LLC
    2000 W. Sam Houston Parkway South, Suite 1200
    Houston, TX 77042

4)  Name and address of the operator of the well as shown by the records of the Commission of Conservation:

    Fieldwood Energy LLC
    2000 W. Sam Houston Parkway South, Suite 1200
    Houston, TX 77042

    Not applicable as this well is located on the Outer Continental Shelf, however, the Operator of the Well is as follows:

5)  Description of the Operating Interest Upon Which the Privilege is Claimed, or of the Well with Respect to Which the Operations Giving Rise to Claimant's Privilege were Performed:

    The privilege is claimed upon the operating interest of Fieldwood Energy LLC in Mississippi Canyon 519, Lease No. OCS-G-27278 (the "Lease"), and Well #3 (OCS-G-27278) drilled by Claimant on behalf of Fieldwood Energy LLC during the time from January 29, 2020, until April 3, 2020 (the "Well"), including the operating interest under which the operations giving rise to the Claimant's privilege are conducted together with the interest of the lessee and/or operator of such interest in any (a) well, building, tank, leasehold pipeline, and other construction or facility on the well site, (b) movable on the well site for repair, testing or other temporary use, (c) tract of land, transiently on the well site that is used in operations, other than a movable that is only servitude, and lease described in (a), (d) operating interest, (e) tract of land, servitude, and lease described in (a), (d) drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the Claimant's privilege emanate, (e) the interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege; and (f) the proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

    This Statement of Privilege is made by Claimant for the purpose of preserving its claim, lien and privilege as a provider of materials, labor and services for and to the Operator and Well described above, including, without limitation, all claims, liens and privileges under La. R.S. 9:4861 et seq, and all claims for interest due on the obligations, along with the cost of preparing and filing this Statement of Privilege, and attorneys' fees and costs, to the fullest extent permitted by applicable law.

    [ remainder of page intentionally blank - signature follows on next page ]

1

2

Date: July 23, 2020

NEAL J. KLING, (#22489)
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, 27ᵗʰ Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
ATTN: ACCOUNTS PAYABLE
MANDATARY AND ATTORNEYS FOR
ATLANTIC MARITIME SERVICES L.L.C., a
Delaware limited liability company

Sworn to and subscribed before me, Notary Public,
this 23rd day of July 2020.

Chad P. Morrow, Notary Public
Notary/Bar Roll No. 28695
My Commission Expires: at death

3

---

VALARIS

Atlantic Maritime Service LLC
5847 San Felipe, Suite 3300
Houston, TX 77057
Phone: (281) 856-0377

INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PARKWAY SOUTH,
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO: PMZ2007276
INVOICE DATE: 07/20/2020
CUSTOMER NUMBER: 1545
PAYMENT TERM: 45 DAYS
RIG: Resolute
WELL NUMBER: MC-519 #3

AFE #: PWR81C19

TO INVOICE FOR EXPENSES PAID ON YOUR BEHALF FOR THE RIG LISTED ABOVE AS PER
ATTACHED INVOICES

65029P5/25VVL - SERVICES/INSHORE,DRILL PIPE,ANNEX 3,4,5,6 IN OLD,SCALE REMOVAL
PGIM37161 - INE22/2096

Handling Charges @ 5%(601)

Rig Manager% Approval:

AMOUNT DUE:   $                          5,283.25

| | |
|---|---|
| | $ 5,265.00 |
| | $ 263.25 |
| | $ 5,265.00 |

(5,265.00)  00-0001.10417.42021.110
(263.25)  810G510.10417.42021.110
(5,265.00)  810G550.10417.42021.110
5,265.00  810250+10+17.42021.110
ED

REMIT ACH PAYMENTS TO:
mdNotary: Atlantic Maritime Service LLC
a/c Fargo Bank, N.A.
in Francisco, CA
WIFT Code:   WFBIUS6S
IA #121000248
ccnt # 4069401673





EnscoRowan

DRILCO

CUSTOMER QUOTE

Customer Quote Register - 4831

Page 1 of 6



# Plaquemines Parish Recording Page

Kim Turlich-Vaughan
Clerk of Court
PO Box 40
Belle Chasse, LA 70037
(504) 934-6510

Received From :
SHER, GARNER, CAHILL, RICHTER, KLEIN
& HILBERT, L.L.C.
909 POYDRAS ST., 28TH FLOOR
NEW ORLEANS, LA 70112

First MORTGAGOR
FIELDWOOD ENERGY LLC

First MORTGAGEE
ATLANTIC MARITIME SERVICES LLC

Index Type : MORTGAGE                    File # : 2020-00002805

Type of Document : MATERIALMANS LIEN

Recording Pages :  17                    Book :  772      Page :  616

Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Plaquemines Parish, Louisiana.

On (Recorded Date) : 07/16/2020
At (Recorded Time) : 10:47:54AM

CLERK OF COURT
KIM TURLICH-VAUGHAN
Parish of Plaquemines
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 07/16/2020 at 10:47:54
File No. 2020-00002805
Recorded in Book : 772 Page : 616

Doc ID : 005520650017

Return To :

Do not Detach this Recording Page from Original Document

(Mississippi Canyon 948 #4)

## STATEMENT OF PRIVILEGE

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified for the County of Harris, State of Texas, personally came and appeared:

ATLANTIC MARITIME SERVICES LLC, a Delaware limited liability company ("Claimant")

who states that it has a claim, lien and privilege pursuant to La. R.S. 9:4861 et seq., as follows:

1) Name and Address of Claimant:

Atlantic Maritime Services LLC
5847 San Felipe, Suite 3300
Houston, TX 77057

2) Nature and amount of the obligation for which Claimant's privilege is claimed:

Labor, materials, services and related supplies and expenses, in connection with offshore drilling services under a contract between Claimant and the Operator for the Well (as defined in Section 5 below) in the amount of $5,824,744.68, plus contractually owed interest at the rate of 10 percent per annum, and contractually owed attorney's fees and expenses (collectively, the "Obligations"). The Obligations include, but are not limited to obligations owed to Claimant (a) as a contractor for the price of its contract with Operator for operations with respect to the Well, and (b) as a seller for the price of movables sold to Operator that are incorporated in the Well or in a facility located on the well site, consumed in operations, and/or consumed at the site of the Well by a person performing labor or services on the site of the Well located in the waters of the State of Louisiana. Invoices evidencing the Obligations are attached hereto. The date of the last activity giving rise to Claimant's privilege set forth in this Statement of Privilege is July 4, 2020.

3) Name and address of the person owing the amount for which Claimant's privilege is claimed:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

4) Name and address of the operator of the well as shown by the records of the Commission of Conservation:

1

Not applicable as this well is located on the Outer Continental Shelf, however, the Operator of the Well is as follows:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

5) Description of the Operating Interest Upon Which the Privilege is Claimed, or of the Well with Respect to Which the Operations Giving Rise to Claimant's Privilege were Performed:

The privilege is claimed upon the operating interest of Fieldwood Energy LLC in Mississippi Canyon Block 948, Lease No. OCS-G-28030 (the "Lease"), and Well #4 (OCS-G-28030) drilled by Claimant on behalf of Fieldwood Energy LLC during the time from June 4, 2020, until July 4, 2020 (the "Well"), including the operating interest under which the operations giving rise to the Claimant's privilege are conducted together with the interest of the lessee and/or operator of such interest in any (a) well, building, tank, leasehold, pipeline, and other construction or facility on the well site, (b) movable on the well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use, (c) tract of land, servitude, and lease described in La. R.S. 9:4861(12)(c) covering the well site of the operating interest, (d) drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the Claimant's privilege emanate, (e) the interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege, and (f) the proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

This Statement of Privilege is made by Claimant for the purpose of preserving its claim, lien and privilege as a provider of materials, labor and services for and to the Operator and Well described above, including, without limitation, all claims, liens and privileges under La. R.S. 9:4861 et seq., and all claims for interest on the obligations, along with the cost of preparing and filing this Statement of Privilege, and attorneys' fees and costs, to the fullest extent permitted by applicable law.

[remainder of page intentionally blank - signature follows on next page]

2

Date: July 15, 2020

ATLANTIC MARITIME SERVICES LLC,
a Delaware limited liability company

By: _____
Name: Jason E. Marcantelli
Title: PRESIDENT

Sworn to and subscribed before me, Notary Public,
this 15th day of July 2020.

_____
Notary Public
Notary Bar Roll No. 11589836
My Commission Expires: 4-19-2023

[Notary seal]
JUANITA ILCOT
Notary Public, State of Texas
Comm. Expires 04-19-2023
Notary ID 11589836

3

---

VALARIS

INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W. SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042

ATTN: AP DEPARTMENT

| INVOICE NO. | FWI0217788 |
|---|---|
| INVOICE DATE | 7/10/2020 |
| CUSTOMER NUMBER | 1364 |
| PAYMENT TERM | 45 DAYS |

WELL NUMBER: #G4654
LOCATION: #G4654

APE: FWI058514

RAYWORK BILLING FOR ZODIAX RESOLUTE FOR THE MONTH OF JUNE
FEE ARTICLE OF THE OFFSHORE DAYWORK DRILLING CONTRACT
AND SIGNED AFE THEREFOR ATTACHED.

FROM 1620 HOURS ON 05/06/2020 THRU 24:00 HOURS ON 06/30/2020

DAYRATE EFFECTIVE

| | RAYRATE | |
|---|---|---|
| 558.8 HOURS OPERATING AT | $764,400.00 | |
| 0.0 HOURS STANDBY AT | $0.00 | |
| 0.0 HOURS REPAIR | $0.00 | |
| 144.0 HOURS REPAIR EUREKA RATE | $103,333.34 | |
| 0.0 HOURS REPAIR SUBPAR RATE | $0.00 | |
| 47.4 HOURS ZONE RATE | $0.00 | |
| 0.0 HOURS FORCE MAJEURE | $0.00 | |
| 62.0 TOTAL HOURS | $0.00 | |

Crew Backhage

| | AMOUNT DUE | $ 4,643,143.53 |
|---|---|---|

Config: ENFCRY
(RJFR/3833.21) 10H1T-1158622/470109
(RJFR/3833.11) 10H1T-1150422/470101
(J27,152,43) 10H1T-1158622/470102
10H1T-1150422/470110
(206,823,52) 10H1T-1150422/470213
10H1T-1170422/470104

ED









# VALARIS

Atlantic Maritime Services LLC
5847 San Felipe, Suite 3300
Houston, TX 77057
Phone: (281) 336-0277

## INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W.SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO: FW20207253
INVOICE DATE: 07/29/20
CUSTOMER NUMBER: 1248
PAYMENT TERM: 45 DAYS
REG. 05-16 Rendelio

WELL NUMBER: MC-646 #4

### AFE # FW208414

TO INVOICE YOU FOR THIRD PARTY CATERING JULY 1-4, 2020 PER ATTACHED THE COMPANY
MEAL TICKETS

| | | | |
|---|---|---|---|
| MEALS @ | 55 MEAL / COURTESY | | |
| .27 COST/DAY/PERSON | 140 COST/DAY/PERSON | $ | 3,780. |

Rig Manager's Approval: _____

AMOUNT DUE: $ 3,780.4

REMIT ACH PAYMENTS TO:

BENEFICIARY: Atlantic Maritime Service LLC
Wells Fargo Bank, N.A.
San Francisco, CA
SWIFT Code: WFBIUS6S
ABA #121000248
Account # 4099461673

BENEFICIARY: ATLANTIC MARITIME SERVICES LLC
San Francisco, CA
SWIFT Code:
ABA #121000248
Account # 4099461673

| | |
|---|---|
| 91G620.10417-G2C.110 | $ |
| 91G620.10417-G2C.110 | $ |
| 91G620.10417-G2C.110 | $ |
| 91E814.10417-G2G-110 | $ |
| 91G620.10417-G2C.110 | $ |
| (3,780.00) | |

ED



Rowan Resolute



Rowan Raeslute

# VALARIS

Atwood Maritime Services LLC
3501 Town Point Drive 5000
Houston, TX 77067
Phone: (281) 684-0777

**INVOICE**

INVOICE NO: PAY20007262
INVOICE DATE: 6/7/8/2021
CUSTOMER NUMBER: 1048
PAYMENT TERM: 45 DAYS
RIG: TIG-16 Roadale

TO: FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PARKWAY SOUTH
SUITE 1900
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

WELL NUMBER: MC-548 #4

AFE #: PAY20614
TO INVOICE YOU FOR THIRD PARTY CATERING. JUNE 5-30, 2020 PER ATTACHED THE COMPANY
MEAL TICKETS

| | | |
|---|---|---|
| MEALS @ | 35 MEAL / COURTESY | $ |
| 1633 COST/DAY/PERSON | 140 COST/DAY/PERSON | $ 231,420.0 |

AMOUNT DUE: $ 231,420.0

Rig Manager's Approval: _____

REMIT ACH PAYMENTS TO:
Beneficiary: Atwood Maritime Service LLC
Wells Fargo Bank, N.A.
San Francisco, CA
SWIFT Code: WFBIUSS6
ABA #121000248
Account #4659481073

$ (231,420.00) 919220.10417.4202.110
$ (34,086.60) 919101.10417.4202.110
$ 34,086.60 919220.10417.4202.110
$ (343,469.00) 919814.10417.4202.110
$ 343,469.00 919220.10417.4202.110





# Electronic Proof of Claim_KJRPN28824[[CSA#7 711#CF]]

Final Audit Report                                              2020-11-25

| | |
|---|---|
| Created: | 2020-11-25 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAH0dulQzLR_ikRwTufZSIUHqKJ-BWsNk5 |

## "Electronic Proof of Claim_KJRPN28824[[CSA#7711#CF]]" History

🗐 Web Form created by Prime Clerk (epoc@primeclerk.com)
2020-11-25 - 10:05:17 PM GMT

🖉 Deborah Huston (egarfias@porterhedges.com) uploaded the following supporting documents:
   🖉 Attachment
2020-11-25 - 10:13:32 PM GMT

🗐 Web Form filled in by Deborah Huston (egarfias@porterhedges.com)
2020-11-25 - 10:13:32 PM GMT- IP address: 73.232.89.126

🖉 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
   AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
2020-11-25 - 10:13:34 PM GMT- IP address: 73.232.89.126

✅ Agreement completed.
2020-11-25 - 10:13:34 PM GMT