*EXECUTION VERSION*

**PARTICIPATION AGREEMENT**

**Dated as of April 27, 2016**

**Between**

**Deutsche Bank AG New York Branch,
as Seller**

**And**

**HCC International Insurance Company PLC,
as Participant**

3297837v8 072529.0420

## Contents

| | | |
|---|---|---|
| 1 | DEFINITIONS | 1 |
| 2 | SALE AND PURCHASE | 3 |
| 3 | PARTICIPATIONS AND FUNDING | 3 |
| 4 | DEFAULT UNDER A PARTICIPATED TRANSACTION | 4 |
| 5 | RECOVERIES | 5 |
| 6 | DEFAULT INTEREST | 6 |
| 7 | TAX AND PAYMENTS | 6 |
| 8 | FRAUD RISK | 8 |
| 9 | INFORMATION | 8 |
| 10 | VARIATION OF TRANSACTION | 8 |
| 11 | DOCUMENTARY EXAMINATIONS | 9 |
| 12 | CONFIDENTIALITY | 10 |
| 13 | ASSIGNABILITY | 11 |
| 14 | ADDITIONAL DUTIES OF THE SELLER | 11 |
| 15 | REPRESENTATIONS AND WARRANTIES | 11 |
| 16 | COMMUNICATION | 13 |
| 17 | TERMINATION | 14 |
| 18 | MISCELLANEOUS | 14 |
| 19 | JURY WAIVER; APPLICABLE LAW AND JURISDICTION | 15 |
| APPENDIX I – DEFAULT NOTICE | | A-I |
| APPENDIX II – CERTAIN U.S. TAX MATTERS | | A-II |

3297837v8 072529.0420

This Participation Agreement (as amended, supplemented or otherwise modified from time to time, this **"Agreement"**) is dated as of April 27, 2016 between Deutsche Bank AG New York Branch, with offices located at 60 Wall Street, New York, New York 10005 (the **"Seller"**), and HCC International Insurance Company PLC (No 01575839), a company incorporated under the laws of England whose registered office is 1 Aldgate, London EC3N 6RE (the "**Participant**").

Recitals:

**WHEREAS**, it is currently contemplated that the Seller may enter into an agreement (if and when executed and as subsequently may be amended, supplemented or otherwise modified from time to time, the "**Reimbursement Agreement**") pursuant to which the Seller would agree to issue one or more letters of credit (as may be amended from time to time pursuant to the terms thereof, the "**Letters of Credit**") at the request of Fieldwood Energy LLC, a Delaware limited liability company (the "**Company**"), in an aggregate principal amount outstanding at any time not to exceed $50,000,000 (the "**Threshold Amount**"); and

**WHEREAS**, the Seller has agreed to irrevocably sell, transfer and convey, and the Participant, in consideration of certain agreement(s) entered into or to be entered into with the Company, has agreed to irrevocably purchase and receive, an undivided participation in and to the Participant's Participation Portion of the Letters of Credit, in each case on the terms and subject to the conditions set forth in this Agreement;

**NOW, THEREFORE**, in consideration of the agreements and covenants hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1    DEFINITIONS

For the purpose of this Agreement, the following words and expressions shall have the following meanings:

"**Additional Default Rate**" means 2.00% per annum.

"**Beneficiary**" means, with respect to any Letter of Credit, the beneficiary or beneficiaries thereof, including any transferee beneficiary.

"**Business Day**" means (a) any day that is not a Saturday, Sunday or other day on which commercial banks are authorized or required to close in New York City or at such other place where the Seller is obligated to honor a presentation or otherwise act under a Letter of Credit or this Agreement and (b) with respect to determinations of LIBOR, any day on which dealings in deposits in United States Dollars are carried on in the London Interbank Market.

"**Company**" has the meaning given to it in the recitals.

"**Credit Amount**" means, in relation to any Letter of Credit, the aggregate principal amount of the Seller's exposure to the Company (including, without limitation, the undrawn amount of such Letter of Credit and the amount drawn but not reimbursed), as such exposure may increase or decrease from time to time in accordance with the terms of such Letter of Credit.

-1-

3297837v8 072529.0420

**"Default"** means:

(a)     any non-receipt of monies due to the Seller by the Company at the Due Date under the Reimbursement Agreement; or

(b)     the Seller receiving monies from the Company under the Reimbursement Agreement which the Seller is subsequently required to return, after any applicable due date, to the Company or any third party by operation of mandatory rules of law or pursuant to a settlement of a claim that such return is required.

**"Defaulted Amount"** means:

(a)     a sum due to the Seller by the Company under the Reimbursement Agreement which has not been received by the Seller; or

(b)     a sum received by the Seller from the Company under the Reimbursement Agreement which the Seller is subsequently required to return, after any applicable due date, to the Company or any third party by operation of mandatory rules of law or pursuant to a settlement of a claim that such return is required, together with all interest payable by the Seller to the Company or any third party in connection therewith.

**"Due Date"** means any date on which payment to the Seller by the Company is due under the Reimbursement Agreement.

**"Interest Rate"** means LIBOR plus 0.25% per annum.

**"ISP"** means means the International Standby Practices 1998, International Chamber of Commerce Publication No. 590, or any subsequent revision thereof.

**"Letters of Credit"** has the meaning given to it in the recitals.

**"LIBOR"** means the ICE Benchmark Administration Rate for an interest period of one day (where such is available for United States Dollars and such period) appearing at or about 11:00 a.m. London time on the relevant Reuters screen page(s), or if the service ceases to be available, the Party claiming interest may specify another determination of the appropriate rate (acting reasonably after consultation with the other Parties); provided that if such rate is less than zero, it shall be treated as zero for purposes of this Agreement.

**"Participant"** has the meaning given to it in the recitals.

**"Participated Transaction"** means each Letter of Credit issued pursuant to the terms of the Reimbursement Agreement.

**"Participation Portion"** mean 100% of the Defaulted Amount.

**"Party"** means a party to this Agreement.

**"Person"** means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, government (including any subdivision, agency, court, central bank, or other entity exercising executive, legislative, judicial,

-2-

Debtors' Exhibit No. 82
Page 4 of 24

taxing, regulatory or administrative powers or functions of or pertaining to government, including the European Union and the European Central Bank) or other entity.

"**Reimbursement Agreement**" has the meaning given to it in the recitals.

"**Seller**" has the meaning given to it in the recitals.

"**Settlement Date**" shall mean each date upon which the Seller receives payment from the Participant pursuant to Sections 3.1 and 3.2 upon a Default.

"**Threshold Amount**" has the meaning given to it in the recitals.

"**Transaction Documents**" means the Reimbursement Agreement, the Letters of Credit and any other documents which set out the material terms of the Participated Transactions.

"**UCP**" means the Uniform Customs and Practice for Documentary Credits, 2007 Revision, International Chamber of Commerce Publication No. 600, or any subsequent revision thereof.

"**United States Dollars**" means lawful money of the United States of America.

## 2    SALE AND PURCHASE

The Seller hereby irrevocably sells, transfers and conveys to the Participant, and the Participant hereby irrevocably purchases and receives from the Seller, an undivided participation in and to the Participation Portion of each Letter of Credit issued by the Seller under the Reimbursement Agreement, with effect, for each Participation Portion conveyed, at the time any such Letter of Credit is issued by the Seller to the Beneficiary at the request of the Company.

## 3    PARTICIPATIONS AND FUNDING

3.1    Following a Default, the Participant irrevocably and unconditionally undertakes to pay to the Seller, irrespective of any objections or exceptions, within four (4) Business Days of the Seller's first written demand (as specified in Section 3.2), which shall be sent by the Seller promptly following such Default, an amount equal to the Participant's Participation Portion, including default interest (at the rate specified in Section 6 or the rate payable by the Company to the Seller, if higher) from the date of the Default until payment is received from the Participant.

3.2    Each demand for payment to be delivered by the Seller to the Participant under Section 3.1 shall be substantially in the form specified in Appendix I hereto, which may be delivered immediately following the relevant Default.

3.3    Subject to Section 7.6, payment by the Participant of the Participant's Participation Portion shall be in United States Dollars.

3.4    Subject to Section 11.3, following the Seller's demand for payment under Section 3.1, at the Participant's reasonable request the Seller will use reasonable efforts to promptly provide to the Participant certified copies of the Transaction Documents (other than those already supplied by the Seller to the Participant)

-3-

Debtors' Exhibit No. 82
Page 5 of 24

and any relevant demand for payment served by the Seller upon the Company. For the avoidance of doubt, failure by the Seller to provide such documentation will not affect the Participant's obligations hereunder.

3.5    The Participant acknowledges and agrees that its obligations under Section 3 to pay its Participation Portion (a) shall not be released until the Seller has itself been fully released from all of its liabilities with respect to such Participation Transaction, (b) shall be at all times and in all events absolute, irrevocable and unconditional and (c) shall not be affected in any way by any circumstance occurring after the date of this Agreement, including, without limitation, (i) any modification or amendment of, or any consent, waiver, release or forbearance with respect to any of the terms of a Participated Transaction, (ii) any other act or omission to act of any kind by the Seller (other than an act or omission which would constitute gross negligence or willful misconduct on the part of the Seller as finally determined by a court of competent jurisdiction), (iii) the existence of any default under the Reimbursement Agreement, (iv) any change of any kind whatsoever in the financial position or creditworthiness of the Company or any other Person, including the bankruptcy or insolvency of the Company or any such other Person, (v) failure of the Company to pay any fees or other amounts owing to the Participant, or (vi) any other circumstance of any kind that otherwise would discharge a surety or be a defense to its obligations.

4    **DEFAULT UNDER A PARTICIPATED TRANSACTION**

4.1    Subject to the other provisions of this Section 4 and Section 10.1, the Seller may take or refrain from taking any steps the Seller sees fit (subject to the requirements of Section 14.1) in enforcing the obligations relating to a Participated Transaction and/or recovering all sums due to the Seller from the Company with respect to such Participated Transaction and may rely on the professional advice provided by counsel, independent public accountants and experts as provided in Section 14.1.

4.2    Following a Default and provided that the Participant is in compliance with its payment obligations under this Agreement, prior to taking or refraining from taking any steps contemplated by Section 4.1 the Seller shall consult in good faith with the Participant for a reasonable period to reach agreement with the Participant as to what steps (if any) to take or refrain from taking to obtain repayment or reimbursement of a Defaulted Amount from the Company under the applicable Participated Transaction. Subject to Section 4.4, the obligation of the Seller to consult with the Participant under this paragraph shall not apply if the Seller determines that its interests or the interests of the Participant under the Participated Transaction would be prejudiced or adversely affected by the time taken to conduct such consultation.

4.3    The Participant agrees to indemnify the Seller on demand all expenses (including all reasonable legal expenses), costs, losses and claims incurred in connection with the exercise or enforcement of any rights in connection with the applicable Participated Transaction or the protection or preservation of any security therefor which have not been reimbursed by the Company, except to the extent such expenses result from the Seller's gross negligence or willful misconduct as finally determined by a court of competent jurisdiction. Such reimbursable expenses

-4-

may include, without limitation, court costs, collection charges, outside attorneys' and accountants' fees and disbursements, expenses of special examinations and audits, expert witness fees and disbursements, and other out-of-pocket expenses.

4.4   If agreement cannot be reached as to what steps (if any) are to be taken or refrained from being taken following a Default in accordance with Section 4.2 and the Seller desires to take steps that would include one or more of the actions listed in Section 10.1, the Seller will, if so requested by the Participant and provided that the Participant has complied with its payment obligations under this Agreement, use reasonable efforts to assign to the Participant at the Participant's cost:

a)   the Seller's claims, titles, rights and interests against the Company in respect of the relevant Defaulted Amount under the applicable Participated Transaction to the extent that the same is capable of assignment; or (at the Participant's option)

b)   the Seller's claims, titles, rights and interests related to the applicable Participated Transaction (with the exception of any security), to the extent that the same is capable of assignment.

4.5   If the Participant does not opt for assignment under Section 4.4 or the Seller is unable to effect the assignment in accordance with Section 4.4, the Seller shall administer and continue to collect, at the expense of the Participant, the Defaulted Amount, at all times acting as the Seller sees fit; provided, that if the Participant has opted for assignment under Section 4.4 but the Seller is unable to effect the assignment in accordance with Section 4.4, the Seller will act in accordance with the Participant's instructions, to the extent permitted by law, as long as the Seller has received reasonably satisfactory indemnification from the Participant for following such instructions (subject, in all cases under this Section 4.5, to the requirements of Section 14.1).

4.6   Following a Default and provided that the Participant is in compliance with its payment obligations under this Agreement, if for any reason the Participant receives direct payment from the Company in relation to a Participated Transaction (whether voluntary, through the exercise of any right of set off, or otherwise), the Participant shall be entitled to retain such amounts.

## 5   RECOVERIES

5.1   Following a Default and provided that the Participant is in compliance with its payment obligations under this Agreement, the Seller shall promptly (and in any event within five (5) Business Days) pay the Participant all sums recovered (including, without limitation, through payment by or on behalf of the Company, the Company's receiver, liquidator or other insolvency officer, or through the exercise of any rights of set-off) in respect of a Participated Transaction.

5.2   For the avoidance of doubt, the Seller shall not be obligated to pay to the Participant any payment expected to be received from the Beneficiary or the

-5-

Company (or other Person described under Section 5.1) pursuant to a Participated Transaction, unless and until such payment is received by the Seller.

6    **DEFAULT INTEREST**

In the event that any Party defaults on the payment of any sum due hereunder, interest shall accrue on the amount in respect of which such default has been made from the date of the default until payment (after as well as before judgment) at the Interest Rate plus the Additional Default Rate, per annum calculated based on a 360-day year from the due date for payment until payment is received from the relevant Party.

7    **TAX AND PAYMENTS**

7.1    The provisions of <u>Appendix II</u> shall apply in addition to the provisions of this Section 7.

7.2    All payments by the Seller to the Participant under this Agreement shall be made net of any deduction or withholding required to be made from such payments by any law or regulation (including pursuant to <u>Appendix II</u>). If any such deduction or withholding is made, the Participant shall bear the risk of such deduction or withholding and shall for the purposes of this Agreement be deemed to have received the amount that it would have received if such deduction or withholding had not been made.

7.3    All payments by the Participant to the Seller under this Agreement shall be made free and clear of any deduction or withholding unless such deduction or withholding is required to be made by any law, regulation or practice.  If any such deduction or withholding is made or is required to be made the Participant shall increase the amount to be paid to the Seller to ensure that the Seller receives and retains a sum equal to the sum which it would have received and so retained had no such deduction or withholding been made or required to be made.

7.4    The Seller and the Participant shall use their reasonable efforts to avoid any such deduction or withholding as is referred to in Sections 7.2 and 7.3 (without obligation to incur costs unless, as between the Seller and the Participant, the other Party has agreed to reimburse such costs).

7.5    If at any time the Seller pays an amount to the Participant and (a) the Seller had not actually received the related amount under the applicable Participated Transaction or (b) the Seller is required to return such related amount to the Company or any third party by operation of mandatory rules of law or pursuant to a settlement of a claim that such return is required, then the Participant shall on demand refund the same to the Seller together with interest on that amount from the date of payment to the date of receipt by the Seller, calculated at the Interest Rate, or the rate payable by the Seller to the Company, if higher.

7.6    Certain Payments:

a)    Each payment under this Agreement will be made in United States Dollars. To the extent permitted by applicable law, any obligation to make payment under this Agreement in United States Dollars will not be discharged or satisfied by any tender in any currency other than United States Dollars,

except to the extent such tender results in the actual receipt by the Party to which payment is owed, acting in good faith and using commercially reasonable procedures in converting the currency so tendered into United States Dollars, of the full amount in United States Dollars of all amounts payable in respect of this Agreement.  If for any reason the amount in United States Dollars so received falls short of the amount in United States Dollars payable in respect of this Agreement, the Party required to make the payment will, to the extent permitted by applicable law, immediately pay such additional amount in United States Dollars as may be necessary to compensate for the shortfall.  If for any reason the amount in United States Dollars so received exceeds the amount in United States Dollars payable in respect of this Agreement, the Party receiving the payment will refund promptly the amount of such excess.

b)   To the extent permitted by applicable law, if any judgment or order expressed in a currency other than United States Dollars is rendered (i) for the payment of any amount owing in respect of this Agreement, (ii) for the payment of any amount relating to any early termination in respect of this Agreement or (iii) in respect of a judgment or order of another court or tribunal for the payment of any amount described in sub-Section (i) or (ii) above, the Party seeking recovery, after recovery in full of the aggregate amount to which such Party is entitled pursuant to the judgment or order, will be entitled to receive immediately from the other Party the amount of any shortfall of United States Dollars received by such Party as a consequence of sums paid in such other currency and will refund promptly to the other Party any excess of United States Dollars received by such Party as a consequence of sums paid in such other currency if such shortfall or such excess arises or results from any variation between the rate of exchange at which United States Dollars is converted into the currency of the judgment or order for the purpose of such judgment or order and the rate of exchange at which such Party is able, acting in good faith and using commercially reasonable procedures in converting the currency received into United States Dollars, to purchase United States Dollars with the amount of the currency of the judgment or order actually received by such Party.

c)   To the extent permitted by applicable law, the amounts payable in this Section 7.6 constitute separate and independent obligations from the other obligations in this Agreement, will be enforceable as separate and independent causes of action, will apply notwithstanding any indulgence granted by the Party to which any payment is owed and will not be affected by judgment being obtained or claim or proof being made for any other sums payable in respect of this Agreement.

d)   For the purpose of this Section 7.6, it will be sufficient for a Party to demonstrate that it would have suffered a loss had an actual exchange or purchase been made.

3297837v8 072529.0420

8      **FRAUD RISK**

If it is determined that the Company had no obligation to reimburse the Seller due to the occurrence of fraud or forgery in the underlying transaction or related documentation (including, without limitation, any documentation examined in accordance with Section 11.1) then the Participant shall continue to be liable for the Participant's Participation Portion with respect to the applicable Participated Transaction (to the extent such Participation Transaction is subsequently funded by the Seller) notwithstanding that the Company had no such obligation.

9      **INFORMATION**

9.1     The Seller shall, within a reasonable timeframe, notify the Participant of any Default or dispute under a Participated Transaction, which in the reasonable opinion of the Seller has had or is reasonably likely to have a material adverse effect on the likelihood of the Company paying any amounts due under such Participated Transaction.

9.2     The Seller shall, within a reasonable timeframe, notify the Participant of the expiry, fulfilment or non-fulfilment of each material liability or obligation relating to each Participated Transaction (including, without limitation, presentations of documents, due dates for payment and dates of drawings).

9.3     Any failure by the Seller to comply with the terms of this Section 9 will not affect the Participant's obligations under this Agreement.

9.4     Except for information expressly required to be furnished to the Participant hereunder, the Seller shall not have any duty or responsibility to provide the Participant with any credit or other information concerning the affairs, financial condition or business of the Company or any other information regarding any Participated Transaction or any matter related thereto which may come into the possession of the Seller or any of its affiliates.

10     **VARIATION OF TRANSACTION**

10.1    The Seller shall not, without the prior written consent of the Participant (without prejudice to the rights of the Participant under Section 4), take any action that would result in:

(a)     any extension of the date for payment by the Company in respect of any Participated Transaction;

(b)     any reduction in the liability of the Company or in the release of any security in respect of a Participated Transaction;

(c)     any change in the currency in respect of a Participated Transaction; or

(d)     any change in the identity of any Beneficiary (except to the extent required under the terms of any Letter of Credit or under applicable law).

10.2    The Seller may, without the prior consent of the Participant (without prejudice to the rights of the Participant under Section 4), take any action that would result in

-8-

Debtors' Exhibit No. 82
Page 10 of 24

any increase or decrease in the Credit Amount of any Letter of Credit; provided that, notwithstanding anything to the contrary set forth herein, the Participant Portion shall not exceed the Threshold Amount.

10.3   In cases where the Participant does not agree to any such action where its consent is required, the Seller will, if so requested by the Participant and provided that the Participant has complied with its payment obligations under this Agreement, use efforts consistent with the standard set forth in the second sentence of Section 14.1 to assign to the Participant at the Participant's cost, the Participant's Participation Portion of:

(a)   the Seller's claims, titles, rights and interests against the Company under the applicable Participated Transaction to the extent that the same is capable of assignment; or (at the Participant's option)

(b)   the Seller's claims, titles, rights and interests related to the applicable Participated Transaction (with the exception of any security), to the extent that the same is capable of assignment.

10.4   If the Participant does not opt for assignment under Section 10.3 or the Seller is unable to effect the assignment in accordance with Section 10.3 the Seller shall administer and continue to collect at the expense of the Participant the Defaulted Amount, at all times acting as the Seller sees fit; provided, that if the Participant has opted for assignment under Section 10.3 but the Seller is unable to effect the assignment in accordance with Section 10.3, the Seller will act in accordance with the Participant's instructions, to the extent permitted by law, as long as the Seller has received reasonably satisfactory indemnification from the Participant for following such instructions (subject, in all cases under this Section 10.4, to the requirements of Section 14.1).

11   **DOCUMENTARY EXAMINATIONS**

11.1   The examination of any documents submitted by the Beneficiary or the Company in respect of any Participated Transaction is the sole and full responsibility of the Seller and shall not be affected by any delegation by the Seller.

11.2   The Seller shall exercise such care and attention in relation to the presentation and form of documents with respect to any Participated Transaction as would a bank acting in accordance with UCP or ISP (as applicable) or otherwise as is in accordance with established market practice in the relevant financial center for transactions of a similar nature.

11.3   The Participant shall not have any right to examine drawing documents presented under any Letter of Credit.  If a dispute arises as to the Seller's performance under any Letter of Credit (including without limitation a dispute as to whether drawing documents complied with the terms and conditions of any Letter of Credit), and the Beneficiary or the Company does not reimburse the Seller in full for a drawing thereunder, the Seller shall not be obligated to repay to the Participant any amounts funded by the Participant in connection with such drawing unless and until a court of competent jurisdiction renders a final determination that, as a result of such failure to perform and giving effect to any

-9-

applicable exculpations and other provisions of the Reimbursement Agreement, the Seller is not entitled to be reimbursed by the Beneficiary or the Company, in which case the Seller shall return to the Participant the amounts so funded, together with interest thereon at the Interest Rate accruing from the date such amounts were funded until the date of actual reimbursement.

## 12 CONFIDENTIALITY

12.1    Subject to Section 12.2 and unless otherwise agreed in writing by the Parties: (a) the Participant shall not, without prior written consent of the Seller, disclose any Participated Transaction or any other information relating thereto to any third party; and (b) the Seller and the Participant agree that they will treat this Agreement and any information supplied in connection herewith as being confidential (but, for the avoidance of doubt, each Party is permitted to disclose such information to its affiliates, directors, officers, employees and professional advisers who have a need to know the information and who are made aware of the obligations of confidentiality under this Section 12). The duty of confidentiality arising from this Agreement continues to apply in full even after the Agreement has been terminated but will expire two years following such termination.

12.2    The provisions of Section 12.1 do not apply to any information which:

(a)    is or comes into the public domain otherwise than by breach of this Agreement;

(b)    is required to be disclosed in compliance with any applicable law, rule, regulation or order from a court of competent jurisdiction;

(c)    is required or requested to be disclosed to any public authority or governmental body or regulatory body having jurisdiction over the conduct of (as applicable) the Seller's or the Participant's business and/or affairs;

(d)    is disclosed by any Party to its legal advisers or auditors (but in that capacity only) provided that such Persons are bound by professional obligations of confidentiality; and

(e)    is disclosed to any potential assignee or transferee provided that the Party intending to disclose any such information to any Person shall only disclose such information to the extent necessary for the relevant Person to decide whether or not to enter into the assignment or transfer and otherwise to effect the assignment or transfer and upon the terms that all information so disclosed shall be kept confidential by that recipient.

12.3    The Participant shall provide the Seller with such information, and complete such forms and related documentation, as the Seller may reasonably require from time to time, and shall update that information, forms and documentation as reasonably required by the Seller from time to time, to enable the Seller to comply with any law or regulation of any jurisdiction or any agreement entered with or between any competent regulatory, prosecuting, tax or governmental authority in any jurisdiction. The Participant shall in particular use commercially reasonable efforts to notify the Seller within 30 days of any material change in, or

-10-

Debtors' Exhibit No. 82
Page 12 of 24

in the validity of, any information, forms or documentation that the Participant provides or has previously provided to the Seller.

## 13 ASSIGNABILITY

13.1    The Participant may not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the Seller.

13.2    The Seller may not enter into any transaction that purports to pledge, exchange or otherwise dispose of the Seller's claims, titles, rights or interest in any portion of a Participated Transaction without the prior written consent of the Participant.

## 14 ADDITIONAL DUTIES OF THE SELLER

14.1    The Seller (a) shall have no duties or liabilities except those expressly set forth in this Agreement and shall have no fiduciary obligations to the Participant; (b) may consult with counsel, independent public accountants and experts selected by it (including counsel for the Beneficiary or the Company) and any advice or opinion of such professional shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by the Seller hereunder in good faith and in accordance with such advice or opinion; and (c) may employ agents, attorneys-in-fact and correspondent banks and shall not be responsible for the negligence or misconduct of any such persons selected by it in good faith. Subject to the foregoing and except as otherwise specifically provided in this Agreement, the Seller shall administer and manage the Participated Transactions, the Transaction Documents and its conduct pursuant to any provision of Section 4 in the ordinary course of its business and with substantially the same degree of care which the Seller normally exercises in administering and managing assets with respect to which no participations are sold, and the Seller shall not, in the absence of gross negligence or willful misconduct by it as finally determined by a court of competent jurisdiction, be under any liability to the Participant with respect to anything which it may do or refrain from doing which the Seller determines is necessary or desirable.

14.2    The Seller may rely upon, and will incur no liability in taking or omitting to take action upon, any notification, instruction, consent or other communication from the Participant which the Seller believes to be genuine and correct or to have been signed, sent or made by a proper person or persons, and the Seller will have no further obligation to verify or inquire into any matters pertaining thereto.

14.3    The Seller may accept deposits from, make loans or otherwise extend credit to, and generally engage in any kind of banking or trust business with, the Company and receive payments on such loans or extensions of credit and otherwise act with respect thereto freely and without accountability to the Participant in the same manner as if this Agreement and the transactions contemplated herein were not in effect.

## 15 REPRESENTATIONS AND WARRANTIES

15.1    The purchase by the Participant hereunder of a Participation Portion with respect to a Participated Transaction will be without recourse to the Seller and for the Participant's own account and risk. Without prejudice to the Seller's duties under

-11-

Section 11 and Section 14.1, the Seller makes no representation or warranty as to, and shall have no responsibility for: the due authorization, execution or delivery by the Company, the Beneficiary or other Person of any Transaction Documents; the legality, validity, genuineness, effectiveness, value, sufficiency, enforceability or collectability of any Letter of Credit or of any document related thereto; the title to, the value of, or the validity, perfection or priority of any security interest in, any collateral or other support for any Participated Transaction or any drafts or other documents presented in connection with drawings under the Letter of Credit; any recital, statement, representation, certification or warranty made by, or any information provided by, the Company, the Beneficiary or other Person; the performance or observance by the Company, the Beneficiary or other Person of the provisions of any Transaction Documents; any failure by the Company, the Beneficiary or other Person to obtain any required governmental approvals; the financial condition of the Company, the Beneficiary or other Person; or (except as otherwise expressly provided herein) any other matter relating to the Company, the Beneficiary or other Person, any Participated Transaction, the related Transaction Documents, or any collateral or other support therefor.

15.2   Each Party represents and warrants to the other that:

(a)   it will at all times make its own independent investigation and assessment of the financial condition, creditworthiness, status and affairs of the Company and of other relevant factors for the assessment of the credit risk and that it has not relied on any other Party for the making of such assessment;

(b)   it has the power and authority to execute, deliver and perform this Agreement without any violation of any law, rule or regulation applicable to it or any of its properties; and

(c)   this Agreement constitutes and will constitute its legally valid and binding obligations enforceable against it in accordance with its terms, subject to (i) applicable bankruptcy, insolvency, reorganization, moratorium and other similar laws of general application with respect to creditors, (ii) general principles of equity, and (iii) the power of a court to deny enforcement of remedies generally based upon public policy.

15.3   The Seller represents and warrants to the Participant that, to the best of its knowledge as at the date of this Agreement, it will be the sole legal and beneficial owner of and have good title to the Seller's claims, titles, rights or interest in the portion of each Participated Transaction subject to this Agreement, free from any lien, security interest or other encumbrance, any purchase or option agreement or arrangement, or any agreement to create or effect any of the same.

15.4   The Participant represents and warrants to the Seller that as at the date of this Agreement, it has undertaken its own assessment of its participation hereunder (including as to its type and nature) and has received sufficient information from the Seller in order to undertake such assessment.

3297837v8 072529.0420

15.5   To the best of the Seller's knowledge and belief, neither the Seller, nor any director, officer, affiliate or branch of the Seller, nor any party to any Participated Transaction, nor the country of origin or dispatch of any goods relating to any Participated Transaction is a target of trade sanctions or other financial or export or import restrictions imposed by the United Nations, the European Union, HM Treasury, the United States of America or any other international body or jurisdiction to which the Seller or the Participant is subject.

15.6   To the best of the Participant's knowledge and belief, neither the Participant, nor any director, officer, affiliate or branch of the Participant, is a target of trade sanctions or other financial or export or import restrictions imposed by the United Nations, the European Union, HM Treasury, the United States of America or any other international body or jurisdiction to which the Seller or the Participant is subject.

## 16   COMMUNICATION

16.1   Except as otherwise provided herein, notices under this Agreement shall be in writing and must be sent by courier, prepaid registered mail or signed facsimile to the address specified by the Parties below. Each Party shall provide written notice to the other Party of a change of address, which shall become effective five (5) calendar days after such notice is received.

Notice details for the Seller:

Deutsche Bank AG New York Branch
Dominic Giordani, Trade Finance Operations
60 Wall Street, 38th Floor
Mailstop: NYC60-3817
New York, NY 10005-2836
Attention: Standby Letter of Credit
Department DBNY.standby-LC@db.com

With a copy to:

Deutsche Bank AG New York Branch
60 Wall Street
New York, NY 10005
Attention: Mr. Prashant Mehra

Notice details for the Participant:

HCC International Insurance Company PLC
Credit & Surety Division
The Grange, Rearsby
Leicester LE7 4FY
United Kingdom
Attention: Alison Simmonds
Telephone: +44 (0)1664 423300
Fax: +44 (0)1664 424343

-13-

Debtors' Exhibit No. 82
Page 15 of 24

eMail: manchesterbonds@hccint.com

16.2   Unless the contrary shall be proved, each such notice shall be deemed to have been given or made and delivered, if by letter or signed facsimile message upon receipt by the addressee, if by delivery when left at the relevant address. However, a notice given in accordance with this Section that is received on a non-Business Day or after business hours in the place of receipt will only be deemed to be given on the next Business Day in that place.

## 17   TERMINATION

Each of the Seller and the Participant may terminate this Agreement by giving 30 days' notice in writing to the other party.  Notwithstanding any termination of this Agreement by either party: (a) this Agreement shall continue to govern any Participated Transaction entered into before the termination of this Agreement (including any automatic extension of any such Participated Transaction in accordance with its terms), (b) such termination shall be without prejudice to any rights or obligations accrued prior to the date such termination takes effect, and (c) such rights and duties as survive such termination in accordance with the express terms of this Agreement shall so survive.

Nothing in this Agreement shall prohibit the Participant from requiring the Company to provide cash collateral to secure any outstanding obligations owed by the Company to the Participant in the event that the Participant elects to terminate this Agreement.

## 18   MISCELLANEOUS

18.1   The relationship between the Seller and the Participant is that of seller and buyer with the right of the Participant to receive amounts from the Seller restricted to any amount received and applied by the Seller from the Company and the Participant's rights against the Seller under this Agreement.

18.2   This Agreement shall not constitute any kind of agency, fiduciary or trust relationship between the Seller and the Participant and the Seller shall not have any other duties or responsibilities other than those expressly specified in this Agreement.

18.3   If, at any time, any provision of this Agreement is or becomes invalid, illegal or unenforceable in any respect, the validity, legality or enforceable character of the remaining provisions will not in any way be affected or impaired.

18.4   Nothing express or implied in this Agreement is intended to confer any rights, remedies, obligations or liabilities upon any Person other than the Parties and their respective heirs, executors, administrators, successors, legal representatives and permitted assigns.

18.5   This Agreement represents the entire agreement between the Parties with respect to its subject matter and supersedes all prior agreements or communications pertaining thereto.

-14-

18.6   No amendment or waiver of any provision of this Agreement shall be effective unless made in writing by each Party. Any amendment or waiver shall be effective only in the specific instance and for the specific purpose for which given.

18.7   The participations with respect to the Participated Transactions are made without recourse to the Seller. The Seller shall not have any liability or obligation to the Participant relating to any Participated Transaction except as specifically set forth in this Agreement.

18.8   Nothing in this Agreement shall oblige the Seller to carry out any "know your customer" or other checks in relation to any Person on behalf of the Participant, and the Participant confirms to the Seller that it is solely responsible for any such checks it is required to carry out and that it shall not rely on any statement in relation to such checks made by the Seller.

18.9   This Agreement may be executed in counterparts, all of which taken together shall constitute one and the same Agreement.   Delivery of an executed counterpart of a signature page of this Agreement by any electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart of this Agreement.

18.10   With respect to all Participant Portions of each Participated Transaction conveyed by the Seller:

a)   The Parties agree to account for each conveyance of the Participation Portion of such Participated Transaction as an asset sale from the Seller to the Participant, representing the irrevocable transfer, sale and conveyance of an undivided participation interest in and to each such Participation Portion as of the relevant Settlement Date (as such, the parties hereto will treat each participation under this Agreement on their books and financial statements as a true sale without recourse, consistent with generally accepted accounting principles); and

b)   In construing this Agreement, the Parties agree that it is their intention that the conveyance of a Participation Portion is intended to place the legal ownership interest represented by the Participation Portion of such Participated Transaction beyond the reach of the Seller's creditors in any bankruptcy, insolvency or reorganization proceeding, and the provisions of this Agreement should be interpreted accordingly.

## 19   JURY WAIVER; APPLICABLE LAW AND JURISDICTION

19.1   WAIVER OF JURY TRIAL.  EACH OF THE PARTICIPANT AND THE SELLER IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE PARTICIPANT'S OR THE SELLER'S ACTIONS IN THE NEGOTIATION, ADMINISTRATION OR ENFORCEMENT HEREOF.

19.2   This Agreement and the rights and obligations of the parties under or in connection with this Agreement shall be governed by and subject to the laws of the State of New York applicable to contracts made and to be performed in such

-15-

State (including New York General Obligations Law Section 5-1401) and applicable federal laws of the United States of America.

19.3    The Participant consents and submits to the non-exclusive jurisdiction of any state or federal court sitting in New York County, in the State of New York, for itself and in respect of any of its property, in any action or proceeding arising under or in connection with this Agreement.  The Participant agrees not to bring any action or proceeding against the Seller that arises under or in connection with this Agreement in any court or other forum not described in the first sentence of this paragraph. The Participant waives any objection to venue or any claim of forum non conveniens with respect to any action or proceeding in any court described in this paragraph.   The Participant agrees that any service of process may be served upon it by the Seller by mail or hand delivery if sent to the address for notices to the Participant under this Agreement or to the Person designated on the signature page(s) of this Agreement as "Participant's Authorized Agent," which Person the Participant now designates as its authorized agent for the service of process.    Nothing in this Agreement shall affect the Seller's right to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against the Participant in any other jurisdiction. The Participant agrees that final judgment against it in any action or proceeding shall be enforceable in any other jurisdiction within or outside the United States of America by suit on the judgment, a certified copy of which shall be conclusive evidence of the judgment. The Participant irrevocably waives any immunity, on the ground of sovereignty or otherwise, from jurisdiction, attachment prior to judgment, other attachment, execution or other legal process in connection with its obligations hereunder.

[signature page follows]

3297837v8 072529.0420

IN WITNESS WHEREOF, each of the undersigned has caused this Agreement to be duly executed and delivered as of the date first above written.

**PARTICIPANT:**

**HCC INTERNATIONAL INSURANCE COMPANY PLC**

By: _____
Name : MARTYN DAVID WARD
Title : Head of Credit and Surety

**Participant's Authorized Agent (for service of process per Section 19.3):**

*Print Name*: TOKIO MARINE HCC – CREDIT GROUP

*Complete Address*: 600 Lexington Avenue, 22nd Floor, New York, New York 10022
*(which must be in the State of New York)*

**SELLER:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By:_____
Name:
Title

By:_____
Name:
Title

[SIGNATURE PAGE OF PARTICIPATION AGREEMENT]

3297837 072529.0420

IN WITNESS WHEREOF, each of the undersigned has caused this Agreement to be duly executed and delivered as of the date first above written.

**PARTICIPANT:**

**HCC INTERNATIONAL INSURANCE COMPANY PLC**

By:_____
Name:
Title:

**Participant's Authorized Agent (for service of process per Section 19.3)**:

*Print Name*: _____

*Complete Address*: _____

*(which must be in the State of New York)*


**SELLER:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By:_____
Name: PRASHANT MEHRA
Title DIRECTOR

By:_____
Name:
Title

Jack Leong
Director


[SIGNATURE PAGE OF PARTICIPATION AGREEMENT]

3297837  072529.0420

## APPENDIX I – DEFAULT NOTICE

DEMAND FOR PAYMENT AS REQUIRED UNDER SECTIONS 3.1 AND 3.2.

Pursuant to the terms of the Participation Agreement, dated as of April 27, 2016 (as amended, supplemented or otherwise modified from time to time, the "**Agreement**") between Deutsche Bank AG New York Branch, as the Seller, and HCC International Insurance Company PLC, as the Participant, we hereby inform the Participant that a Default has occurred under the Participated Transaction:

| | |
|---|---|
| Type of Transaction: | [Description of Letter of Credit] |
| Seller's Reference No.: | [...] |
| Participant's Reference No.: | [...] |
| Defaulted Amount: | $[  ] |
| Participation Portion: | $[  ] |
| Date of Default: | [...] |

We confirm that:

- (i)   the Defaulted Amount has been claimed from the Company;
- (ii)  payment is due and has not reached us as of today; and
- (iii) we have acted in all material respects in accordance with the Agreement.

A copy of the claim sent to the Company is enclosed with this Request for Payment.

We kindly ask the Participant to remit its Participation Portion together with the Interest Rate payable on such Participation Portion from the date of Default to the date upon which we will receive your payment within four (4) Business Days to our account:

| | |
|---|---|
| Account No.: | [...] |
| With Bank: | [Name, City, Country, Swift Code] |
| Our Reference No.: | [...] |

Capitalized terms not otherwise defined in this notice shall have the meaning set forth in the Agreement, unless the context otherwise requires. All provisions of the Agreement are applicable to this demand.

**Deutsche Bank AG New York Branch**

By: _____

Name: _____

Title: _____

By: _____

Name: _____

Title: _____

A – I

3297837v8 072529.0420

## APPENDIX II – CERTAIN U.S. TAX MATTERS

1.  In the event that the applicable Participated Transaction involves payment of fees or interest to the Participant that is sourced from the United States due to the location of the Company, the Seller will, as required by law, withhold any applicable U.S. withholding taxes from such payment unless it shall have received satisfactory evidence of exemption from U.S. withholding.

2.  The Participant is generally subject to U.S. withholding on payments of interest (and certain fees) unless (a) it is entitled to the benefits of an income tax treaty with the United States which eliminates U.S. federal withholding income tax on such fees or interest, (b) it is engaged in a U.S. trade or business to which such fees or interest are effectively connected, (c) it is entitled to an exemption from withholding by reason of being an "international organization" or a non-US government, or (d) the interest qualifies as portfolio interest under U.S. tax law and it is either (i) not a bank (or a conduit for a banking entity) or (ii) is a bank that has not entered into the Participation in the ordinary course of its trade or business, and in each case (Sections (a) – (d)) has provided the Seller with a properly completed IRS Form W-8BEN-E, W-8ECI or W-8EXP (each as described below), as applicable.

    The Participant may also be subject to US withholding under FATCA unless it is compliant with or exempt from FATCA (whether by virtue of US law, the terms of an intergovernmental agreement, or otherwise) and has provided the Seller with a properly completed IRS Form W-8BEN-E, W-8ECI or W-8EXP, as applicable.

3.  Before receipt of any fees or interest from the Seller, the Participant must have provided to the Seller one of the following tax forms, as applicable:

    (a)  In the case of a non-bank (or a bank not acting in the ordinary course of its trade or business), a properly completed IRS Form W-8BEN-E (with a U.S. taxpayer identification number);

    (b)  A properly completed IRS Form W-8BEN-E (with a U.S. taxpayer identification number) that indicates that the investor is entitled to the benefits of an income tax treaty with the United States and the applicable rate of withholding on such fees or interest;

    (c)  A properly completed IRS Form W-8ECI (with a U.S. taxpayer identification number) that indicates that such fees or interest are effectively connected with the investor's U.S. trade or business;

    (d)  A properly completed IRS Form W-8EXP that indicates the investor is entitled to an exemption from withholding by reason of being an "international organization" or a non-US government; or

    (e)  In the case of a non-U.S partnership or other flow-through entity for U.S. federal income tax purposes, or an intermediary, a properly completed IRS Form W-8IMY with a withholding (allocation) statement and one of the forms described in (a) through (c) above or Form W-9 attached for each beneficial owner, if and as required.

A – II(1)

3297837v8 072529.0420

4.  The Participant shall promptly deliver to the Seller a newly completed tax form (a) after the occurrence of any event requiring a change in the most recent form delivered to the Seller by the Participant, (b) upon learning that any form previously delivered by the Participant has become obsolete or incorrect, and (c) upon the reasonable request of the Seller.

5.  The Participant shall not be required to increase an amount paid to the Seller under Section 7 if the withholding is required by FATCA.

.6  If the Seller receives an amount under a Participated Transaction subject to withholding under FATCA and, as a result, an amount payable by the Seller to the Participant under this Agreement is less than it would have been but for such withholding, then the Seller shall increase the amount payable to the Participant so that the Participant receives the amount it would have received in the absence of such withholding, except to the extent that (a) such withholding was imposed as a result of the Participant's failure to provide the Seller with appropriate and correctly completed US tax forms; (b) withholding under FATCA would have been imposed on the Participant had the Participant held an interest in the Participated Transaction directly; or (c) withholding was imposed solely as a result of the Participant's status under FATCA.

7.  In this Agreement, references to deductions and/or withholdings include deductions and/or withholdings required under FATCA.

8.  In this Appendix, "**FATCA**" means:

    (a)  sections 1471 to 1474 of the US Internal Revenue Code of 1986 or any associated regulations or other official guidance;

    (b)  any treaty, law, regulation or other official guidance enacted in any other jurisdiction, or relating to an intergovernmental agreement between the US and any other jurisdiction, which (in either case) facilitates the implementation of paragraph (a) above; or

    (c)  any agreement pursuant to the implementation of paragraphs (a) or (b) above with the US Internal Revenue Service, the US government or any governmental or taxation authority in any other jurisdiction.

A – II(2)

April 12, 2016

Dear Sirs

1.    We Fieldwood Energy LLC and Fieldwood Energy Offshore LCC (individually and collectively **"Indemnitors"**) refer to:

     (i)    General Indemnity Agreement dated 24 January 2016 entered into by the Indemnitors (1) in favour of HCC International Insurance Company plc ("**HCCI**") (2)   (the "**GIA**"); and

     (ii)    Participation Agreement (the "**Participation Agreement**") to be entered into on or about the date of this letter between Deutsche Bank AG New York Branch as Seller and HCCI as Participant in relation to participation in letters of credit issued or to be issued by the Seller at the request of the Indemnitors pursuant to the Reimbursement Agreement (as defined therein) (the "**Letters of Credit**").

2.    Words and phrases used in this Letter of Agreement shall have the meaning given to them in the GIA unless otherwise stated or the context otherwise requires.

3.    The terms of this Letter of Agreement shall take effect and be enforceable against us as a deed.

4.    Pursuant to the Participation Agreement HCCI will purchase participations in Letters of Credit (the **"HCCI Participations"**)

5.    The Indemnitors agree and acknowledge that for the purposes of the GIA:
    5.1    each HCCI Participation shall be a "Bond" as that term is defined in the GIA; and
    5.2    any and all liability, loss, premiums, claims, damages, extra-contractual damages, court costs and expenses, attorneys' fees, consultant fees, interest, and all other costs and expenses that HCCI incurs or sustains arising from or related to any HCCI Participation ("HCCI **Participation Agreement Liability**") shall be a "Loss" as defined in the GIA; and
accordingly the obligations of the Indemnitors under the GIA shall apply to and in respect of each HCCI Participation and any and all HCCI Participation Agreement Liabilities.

7.    Clause 20 of the GIA (Law and Jurisdiction) shall apply to this letter as if it was herein set out and references to the GIA were references to this letter.

Yours faithfully

EXECUTED AS A DEED BY

Michael Dane
Sr. Vice President and Chief Financial Officer