|  ZURICH | **PERFORMANCE BOND** |
| --- | --- |

**Bond No . LPM9181833**

KNOW ALL MEN BY THESE PRESENTS, that **FIELDWOOD ENERGY LLC** ("**Fieldwood**") as Principal and **ZURICH AMERICAN INSURANCE COMPANY**, a corporation duly organized under the laws of New York and duly authorized and licensed to transact the business of suretyship in the United States of America (the "**Surety**") as Surety, and our administrators, successors and assigns, are held and firmly bound unto **DEUTSCHE BANK AG NEW YORK BRANCH** (the "**Obligee**") in the penal sum of **Sixty-seven Million, Five Hundred Fifty-seven Thousand, Three Hundred Fifty-six and no/100** (**$67,557,356**) lawful money of the United States of America (the "**Bond Amount**"), for the payment of which well and truly to be made, we bind ourselves, our administrators, successors and assigns, jointly and severally by these presents.

WHEREAS, Fieldwood and its subsidiaries entered into an arrangement with Apache Corporation (the "**Beneficiary**"), among others pursuant to which Fieldwood will perform decommissioning of various oil and gas wells in the Gulf of Mexico and other activities as described in that certain Decommissioning Agreement dated as of September 30, 2013, as amended (the "**Agreement**"); and

WHEREAS, Fieldwood has entered into certain written applications and agreements between the Obligee and Fieldwood dated November 9, 2015 (each as amended, restated, supplemented or otherwise modified, collectively, the "**Reimbursement Agreement**"), under which the Obligee has agreed to provide Obligee's standby letter of credit No. 839BGC1500969 (the "**Security**") to ensure Fieldwood's satisfactory performance of the Agreement to the Beneficiary and Fieldwood has agreed to reimburse the Obligee for any drawings under the Security to the extent that the Obligee is not reimbursed under this Bond.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Surety hereby agrees in favor of the Obligee as follows:

THE CONDITION OF THIS OBLIGATION IS SUCH that, if Fieldwood shall fully, faithfully and timely perform its obligations under the Agreement, then this obligation to be void (unless an Event of Default (as defined below) shall have occurred or thereafter occurs); otherwise, to remain in full force and effect.

The Surety shall be obligated to make payment under this Bond if the Obligee delivers a written notice to the Surety within the time required hereby (which delivery may occur after the performance of such obligations) that an Event of Default has occurred, provided, however, that this Bond is subject to the following conditions:

1. Event of Default: An "Event of Default" for purposes of this Bond is the delivery to the Surety by the Obligee of one of the following:

Performance Bond                                                                                  Page 1 of 9

    a.  A written statement from the Obligee, in the form attached hereto as Annex A, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "A" to the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to perform and reimburse the Beneficiary for Government Decommissioning obligations (as defined in the Agreement); or

    b.  A written statement from the Obligee, in the form attached hereto as Annex B, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "B" to the Security arising from the Obligee having notified the Beneficiary of the Obligee's election to not extend the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to provide the Beneficiary with replacement security within the time required by the Agreement.

2.  Preliminary Notice to Surety:  Obligee shall endeavor to notify the Surety, with reasonable promptness, of any facts or circumstances of which Obligee has received actual notice which constitute an Event of Default.  Such preliminary notice is not, however, a condition precedent of the Surety's obligation under this Bond and failure of the Obligee to so notify the Surety shall not relieve or reduce the Surety's liabilities and obligations to the Obligee under this Bond.

3.  Upon the occurrence of an Event of Default, the Surety shall pay to the Obligee the amount demanded in the Obligee's written statement within ten (10) Business Days (as defined below) after receipt of such statement from the Obligee.  Each such written statement from the Obligee shall constitute conclusive evidence of the facts stated therein.  The Surety irrevocably agrees to pay interest on all Overdue Amounts (as defined below) at the annual rate equal to the Prime Rate (as defined below) of the Obligee such interest to accrue on a daily basis for each day that any Overdue Amount remains unpaid, calculated monthly in arrears and shall be compounded monthly until payment in full by the Surety.  The Surety hereby agrees to indemnify and hold harmless the Obligee from and against any and all damages, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees and disbursements), that may be incurred or sustained by, or asserted or awarded against, the Obligee, in each case arising out of or in connection with or relating to the Surety's failure to pay to the Obligee any amount demanded when due hereunder.   For the purposes of this Bond, (a) the term "**Business Day**" means a day on which chartered banks are open for over-the-counter business in the ordinary course in New York, New York and excludes Saturday, Sunday and any other day which is a recognized holiday in the state of New York; (b) the term "**Prime Rate**" means on any day the fluctuating annual rate of interest established from time to time by the Obligee and in effect that day as the reference rate it will use for purposes of determining rates of interest it will charge on loans to customers in the United States and designated as its prime rate; and (c) the term "**Overdue Amounts**" means amounts due and owing to the Obligee by the Surety under this Agreement.

4.  This Bond sets forth in full the terms of the Surety's liabilities and obligations to the Obligee under this Bond.  Such liabilities and obligations shall not be in any way modified, amended or supplemented by reference to any document or instrument referred to herein, and any such reference shall not be deemed to incorporate herein any document or instrument.  The

Performance Bond

Surety's liabilities and obligations under this Bond to the Obligee are not subject to any condition or qualification except as expressly set forth herein and are not contingent on any of the following (and shall not be reduced, diminished or eliminated by virtue of any of the following): (a) the ability or inability of the Surety to acquire or perfect any lien or security interest on any asset or property of Fieldwood, (b) the Surety's success or failure in obtaining indemnification from Fieldwood or (c) any other fact or circumstance involving or affecting any one or more of Fieldwood, the Obligee or the Surety (but the Surety reserving all of its rights against Fieldwood).   This Bond constitutes the Surety's primary, absolute and independent obligation to make payment to the Obligee in accordance with the terms hereof, under any and all circumstances, including, without limitation, due to the lack of validity, legality or enforceability of the Agreement, the Reimbursement Agreement or the Security and irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety, Fieldwood or other third parties.

5.  Address for Written Statements and Notice:  Any written statement or notice provided under this Bond shall be in writing and shall be delivered by personal delivery, certified mail, express mail, or overnight courier service to the address of the party set out below and to the attention of the person there indicated, provided that any written statement or notice shall be delivered only by personal delivery or overnight courier in the event that there is a threatened or actual discontinuance or interruption of regular postal service:

    a.  if to the Surety:

        Zurich American Insurance Company
        Zurich Surety
        500 Enterprise Drive, Rocky Hill, Connecticut 06067
        Attention: Commercial Surety Underwriting

        with a copy to:

        Zurich Surety Bond Claims
        1400 American Lane
        Schaumburg, Illinois 60196
        reportsfclaims@zurichna.com

    b.  if to the Obligee:

        Deutsche Bank AG New York Branch
        Cherine Kenawy, Trade Finance Operations
        60 Wall Street, 38th Floor
        Mailstop: NYC60-3817
        New York, NY 10005-2836
        Attention: Standby Letter of Credit Department
        DBNY.standby-LC@db.com

        With a copy to:

        Deutsche Bank AG New York Branch

Performance Bond                                                                                   Page 3 of 9

60 Wall Street
New York, NY 10005
Attention: Mr. Prashant Mehra

c.  if to Fieldwood:

Fieldwood Energy LLC
2000 W Sam Houston Parkway S
Suite 1200
Houston, Texas 77042
Attention: Richard D. Black, Sr. Vice President and General Counsel

and such statement or notice shall be deemed to have been received on the fifth (5th) Business Day if sent by certified mail or express mail and deemed to have been received on the following Business Day if sent by overnight courier or personal delivery. Any party may change its notice address by delivering a notice of such change to the other parties in the manner provided herein.

6.  Limitations on Liability: The liability of the Surety shall not exceed the Bond Amount stated above, plus all costs and expenses required to be paid by the Surety hereunder, regardless of the number of years that this Bond shall continue or be continued in force and the number or amounts of premiums paid by Fieldwood (it being acknowledged and agreed that all premiums and fees payable to the Surety for the issuance and maintenance of this Bond are the sole obligation of Fieldwood and the Obligee shall have no liability therefor). Partial and multiple demands are permitted. The Bond Amount shall be reduced by the amount of any payment made by the Surety under this Bond. It is expressly agreed that in the event any payments are made under this Bond, the Bond Amount (as it may be reduced from time to time as a result of payments that are made as against the Bond) shall be carried over on an annual basis for each subsequent calendar year in which the Bond is renewed.

7.  This Bond is an annual obligation for the term of November 9, 2015 to November 9, 2017. This Bond will be automatically renewed for one year annual terms unless the Obligee and Fieldwood are notified of the Surety's intention to not renew or extend this Bond, written notice of which shall be given by the Surety at least ninety (90) days prior to the then current expiration date of this Bond, such cancellation notice to be provided in accordance with Section 5 above.

8.  If the Surety so notifies the Obligee pursuant to Section 7 that this Bond will not be renewed, the Surety acknowledges that the Obligee may be required to notify the Beneficiary at least sixty (60) days prior to the then current expiration date of the Security of the Obligee's election not to extend the Security and that the Beneficiary shall then be entitled to demand payment under the Security in accordance with the Agreement. To ensure that the Obligee will have sufficient time to make written demand for payment under this Bond in the event the Beneficiary has demanded payment under the Security prior to the latest date the Beneficiary is entitled to make a drawing under the Security, the Surety agrees that if the Beneficiary is entitled to make a drawing under the Security after the then applicable expiration date of the Security for any reason, including, without limitation, the application of applicable laws, rules and regulations relating to letters of credit, the Obligee shall be

Performance Bond                                                        Page 4 of 9

given an additional amount of time (equal to the amount of such additional time given to the Beneficiary) to make its written demand on the Surety for payment under this Bond.

9. In the event Fieldwood fails to provide replacement security or other form of collateral acceptable in the Obligee's sole discretion, the Obligee may make written demand for payment under this Bond.  Upon payment by the Surety to the Obligee pursuant to this Section 9, the Obligee shall hold such payment in a cash collateral account on the basis that if the Beneficiary makes a demand under the Security issued by the Obligee, the Obligee shall be entitled to appropriate and apply the relevant amount(s) from such cash collateral to make payment to the Beneficiary with the net balance remaining in such cash collateral account being returned by the Obligee to the Surety (or to the representatives of the Surety) when the Obligee has no further obligations or liabilities to the Beneficiary under such Security.

10. This Bond shall be governed by and construed in accordance with the law of the State of New York (without reference to conflict of law doctrine), and the parties submit to the nonexclusive jurisdiction of the courts of the State of New York located in the County of New York.

11. No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named herein and the administrators, successors and assigns of the Obligee.

12. The Surety hereby represents that it has the power and requisite authority to execute, deliver and perform its obligations under this Bond.  The Surety is duly authorized to, and has taken all action necessary to authorize it to, perform its obligations under this Bond and is and will continue to be duly authorized to enter into this Bond and to perform its obligations under this Bond. This Bond is the legal and binding obligation of the Surety enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether the application of such principles is considered in a proceeding in equity or at law).

SIGNED, SEALED AND DATED this 9th day of November, 2015.

**FIELDWOOD ENERGY LLC**
(Fieldwood)

By: _____
Name:  G. M. McCarroll
Title:   President and Chief Executive Officer

**ZURICH AMERICAN INSURANCE COMPANY**
(Surety)

By: _____
Name:  Janice H. Fennell
Title:   Attorney-in-Fact

Performance Bond

Page 5 of 9