# EXHIBIT A



## Executed Bond Report

### The Hanover Insurance Company

| | |
|---|---|
| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 |

**Bond No:** 1070297

**Date:** 10/23/2019

**Principal:** Fieldwood Energy Offshore, LLC

**Obligee Name and Address:** United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company, Co-Obligees
Filed with: United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company
1201 Elmwood Park Blvd
New Orleans,  LA  70123-

**Power of Attorney No.**

| **Effective Date:**<br>From    10/23/2019  To    10/23/2020 | **Bond Amount:**<br>$1,745,185.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$21,815.00 |
|---|---|---|---|
| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$6,544.50 | **State Surchg-Fee:**<br>$0.00 |

**Description:**
Issued in Duplicate - Multi-Obligee Right-Of-Way Supplemental Bond, OCS ROW No. OCS-G 28809 - Described as a 200-foot wide and approximately 5.47 miles (28,885 feet) long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20222.  The purpose of pipeline ROW OCS-G28809 is to maintain and operate PSN 20222 and to transport bulk oil from PLEM A in Block 244, through Blocks 200, 201, and 200, to Midline PLET A-1 in Block 156, all located in Green Canyon Area.

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of Bond.

**Comments:**
Issued in duplicate.  Approved as per Joellen Mendoza's 10/22/2019 email.

**Issued to Replace Bond No.**
N/A

Alliant Insurance Services, Inc. □ 5444 Westheimer □ Suite 900 □ Houston, TX 77056
PHONE (832) 485-4000 □ FAX (832) 485-4001 □ www.alliantinsurance.com

**BOND NO.  1070297**

**OCS ROW NO. <u>OCS-G 28809</u>**

**BOND TYPE: <u>Right-of-Way Supplemental Bond</u>**          **PENAL SUM: $1,745,185.00**

### MULTI-OBLIGEE SUPPLEMENTAL BOND

KNOW ALL MEN BY THESE PRESENTS:

That on this <u>23rd</u> day of <u>October</u> 2019 (the "***Effective Date***"), we, **Fieldwood Energy Offshore LLC** , a Delaware limited liability company, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas  77042, assigned BOEM Company Qualification No. 3035 ("***Principal***"), and **The Hanover Insurance Company**, with an office <u>440 Lincoln Street, Worcester, MA 01653</u> ("***Surety***"), are held and firmly bound unto (i) the **United States of America, acting by and through the Bureau of Ocean Energy Management**, 1201 Elmwood Park Boulevard, New Orleans, Louisiana 70123 ("***BOEM Obligee***"), and (ii) **Marathon Oil Company**, an Ohio corporation, with its principal office at 5555 San Felipe Street, Houston, Texas 77056, assigned BOEM Company Qualification No. 0724 ("***Additional Named Obligee***") (BOEM Obligee and Additional Named Obligee being sometimes collectively referred to herein as "***Co-Obligees***") for the penal sum of <u>One Million Seven Hundred Forty-Five Thousand One Hundred Eighty-Five and No/100</u> dollars (<u>$1,745,185.00</u>) lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents, pursuant to the terms hereof.

WHEREAS, Additional Named Obligee is a former owner of relinquished Federal right-of-way OCS-G <u>28548</u> ("***Relinquished ROW***"), which BSEE (as defined below) reactivated on <u>August 14, 2019</u>, and is now assigned Federal right-of-way OCS-G<u>28809</u> (together with the Relinquished ROW, collectively, the **("Applicable ROW")**, more fully described as follows:

> Pipeline Right-of-Way (ROW) OCS-G28809 is a 200-foot wide and approximately 5.47 miles (28,885 feet) long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20222.  The purpose of pipeline ROW OCS-G28809 is to maintain and operate PSN 20222 and to transport bulk oil from PLEM A in Block 244, through Blocks 200, 201, and 200, to Midline PLET A-1 in Block 156, all located in Green Canyon Area.

WHEREAS, pursuant to a transaction between Deepwater Abandonment Alternatives, Inc., a Texas corporation ("***DAA***"), and Principal  in which the underlying infrastructure associated with the Applicable ROW has been acquired by the Principal ("***Assignment Transaction***"), Principal is required to provide security for the Decommissioning Obligations (as defined below) to Additional Named Obligee; and

WHEREAS, pursuant to applicable laws, rules, regulations, and policies of BOEM Obligee, Principal is required to provide financial assurance for the Decommissioning Obligations (as defined below) to BOEM Obligee; and

WHEREAS, the Surety warrants that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, that it is qualified to be a surety and guarantor on bonds and undertakings, that it is named in the current Circular 570, published by the Audit Staff Bureau of Accounts, U.S. Department of the Treasury ("*Circular 570*"), and that its certificate of suretyship has not been revoked; and

WHEREAS, the Surety warrants that it has duly executed a power of attorney, appointing the hereinafter named representative as the true and lawful attorney-in-fact of such Surety. All lawful process may be served in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when made at Surety's address as specified in Paragraph 3.12 below, will be valid service upon it, and that such appointment will continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder; but if the named representative in Paragraph 3.12 becomes no longer able to act on Surety's behalf, the Surety will promptly so inform each of the Co-Obligees.

NOW THEREFORE, the Principal, the Surety, and the Co-Obligees agree to the following:

1.     **Definitions.** As used in this Bond, the following terms have the following meanings:

1.1     **Bond** means this multi-Obligee supplemental right-of-way bond, identified as Bond No. ;

1.2     **Instrument** includes, individually or collectively, any lease, operating agreement, designation of operator or agent, storage agreement, transfer of operating rights, permit, license, grant, or easement, pursuant to which the Principal has the right, privilege, or license to conduct operations associated with the Applicable ROW to which this Bond applies;

1.3     **Decommissioning Obligation(s)** means any decommissioning obligation(s) or requirement(s) imposed on both the Principal and the Additional Named Obligee by, or arising from (i) the Applicable ROW, (ii) any regulations of the Department of the Interior, solely as applicable to the Applicable ROW, or (iii) any Instrument issued, maintained, or approved under the Outer Continental Shelf ("*OCS*") Lands Act (43 U.S.C. §§ 1331 et seq.) related to the Applicable ROW acquired by Principal pursuant to the Assignment Transaction and that accrued before the Principal acquired the Applicable ROW therein;

1.4     **Qualified Surety** means a surety named in the version of Circular 570 current at the time the Qualified Surety provides a bond, and at all times thereafter.

1.5     **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency;

1.6     **Regional Director** means the Regional Director for the applicable BOEM Obligee Regional Office with jurisdiction over the Applicable ROW;

1.7     **ROW Holder** means the Bureau of Safety and Environmental Enforcement ("*BSEE*")-approved owner of the Applicable ROW;

**1.8** *Default* means BOEM's determination that the Principal has failed to timely perform the Decommissioning Obligations.

**2.** The Principal, the Surety, and the Co-Obligees further agree to the following:

**2.1** The Surety hereby guarantees, to each of the Co-Obligees, the full and faithful performance by Principal of the entirety of the Decommissioning Obligations. Under no circumstances, however, does such guarantee by the Surety exceed the penal sum of the Bond at any time in effect.

**2.2** The Principal, as agent on behalf of all ROW Holders with an interest in the Applicable ROW, will fulfill the Decommissioning Obligations to the same extent as though the Principal were the sole interest owner of the Applicable ROW from the Assignment Transaction.

**2.3** The Surety does hereby absolutely and unconditionally bind itself to each of (i) BOEM Obligee and (ii) Additional Named Obligee for all sums required to fund the performance of the Decommissioning Obligations, up to the penal sum of the Bond, regardless of the number of years this Bond is in force.

**2.4** The Surety will be responsible to each of the Co-Obligees for all Decommissioning Obligations of the Principal until the earlier of: (a) the satisfaction of all Decommissioning Obligations, (b) if the Bond is called, the Surety has provided the funds up to the penal sum of the Bond, or (c) the Decommissioning Obligations are covered by replacement financial assurance approved in writing by each of BOEM Obligee and Additional Named Obligee which specifically secures the Decommissioning Obligations.

**2.5** If the Regional Director terminates the period of liability of this Bond in accordance with 30 CFR 556.906, the Surety will remain responsible to the Co-Obligees for Decommissioning Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the Bond in favor of the Surety. If Principal is required to provide a replacement bond pursuant to 30 CFR 556.906, then the Principal shall ensure that both the BOEM Obligee and the Additional Named Obligee are named obligees under such replacement bond.

**2.6** If this Bond is cancelled, the Regional Director may reinstate this Bond as if no cancellation had occurred if any payment for performance of any Decommissioning Obligation of the Principal is rescinded or must be restored or repaid pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has performed the Decommissioning Obligations in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the Bond.

**2.7** The Surety waives any right of notice of this Bond taking effect and agrees that this Bond will take effect as to each Co-Obligee upon delivery to such Co-Obligee.

**2.8** Unless explicitly terminated, cancelled, or modified by both BOEM Obligee and Additional Named Obligee in writing, and as provided for in this Bond, the Surety's obligations will remain in full force and effect, even if:

a)   The Principal or any other person assigns all or part of any interest in an Instrument or in the Applicable ROW covered by this Bond;

b)   Any person modifies an Instrument in any manner, including modifications that result from (i) a commitment to a unit, cooperative, or communitization, or storage agreement; (ii) suspension of operations or production; (iii) suspension or changes in rental, minimum royalty, or the payment of royalties; (iv) modification of regulations or interpretations of regulations; (v) creation or modification of compensatory royalty agreements or payments; or (vi) creation of any mortgage, pledge, or other grant of security interest in an Instrument or the Applicable ROW;

c)   Any person, event, or condition terminates any Instrument or the Applicable ROW interest covered by this Bond prior to the date on which this Bond terminates in accordance with its terms, whether the termination is by operation of law or otherwise; or

d)   Either Co-Obligee takes or fails to take any enforcement action against, or fails to give notice to, or make demand of, any party to any Instrument, concerning the payment or non-payment of rentals or royalties or the performance or non-performance of any other covenant, term, or condition of the Applicable ROW, or any contract entered into with respect to the Assignment Transaction.

2.9   BOEM Obligee will contemporaneously send a copy to Additional Named Obligee of any notice of Default sent to Principal or Surety.

2.10   After a Default, and upon demand by either of the Co-Obligees, the Surety will provide to such Co-Obligee making demand, pursuant to the procedures set forth in this Paragraph 2, payments up to the penal sum of the Bond to satisfy the Decommissioning Obligations.

2.11   Upon Default by the Principal, BOEM Obligee has the right to call the Bond, or a portion of the Bond, by demand upon the Surety without any requirement that BOEM Obligee confer with, or obtain the agreement of, Additional Named Obligee, subject to the procedures, rights and obligations set forth in this Paragraph 2.

2.12   Prior to calling the Bond pursuant to Paragraph 2.11, BOEM Obligee will provide Additional Named Obligee with thirty (30) calendar days' advance written notice ("***BOEM Notice Period***") of BOEM Obligee's intention to call the Bond (or portion thereof) and stating the scope of the Decommissioning Obligations upon which Principal has defaulted. If, within the BOEM Notice Period, Additional Named Obligee commits in writing to BOEM Obligee to timely undertake the requisite activities to address the Decommissioning Obligations upon which Principal has defaulted, BOEM Obligee will direct the Surety to pay to Additional Named Obligee the proceeds of the Bond (or portion thereof). Additional Named Obligee will utilize the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied.

2.13   If BOEM Obligee calls the Bond, and within the BOEM Notice Period, Additional Named Obligee does not commit in writing to perform the Decommissioning Obligations, BOEM

Obligee has the right to receive performance of the Decommissioning Obligations by, or the payment of the Bond proceeds from, the Surety, with no further obligation to inform the Additional Named Obligee or any other party and BOEM Obligee will place the proceeds of the Bond into an appropriate account and dedicate the proceeds to the performance of activities to address the Decommissioning Obligations then requiring performance.

2.14    Upon Default, Additional Named Obligee may call the Bond by demand upon the Surety if (a) Additional Named Obligee provides BOEM Obligee with thirty (30) calendar days' advance written notice ("***Additional Named Obligee Notice Period***") of its intention to call the Bond (or portion thereof), and (b) agrees in writing to use the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied.  Additional Named Obligee hereby acknowledges that this Bond and the procedures relating to utilization of Bond proceeds do not reduce or otherwise modify its regulatory liabilities associated with the Decommissioning Obligations until such Decommissioning Obligations are satisfied.

2.15    If Additional Named Obligee receives Bond proceeds under any of the provisions of this Paragraph 2, the proceeds will be placed into an escrow or other appropriate account in a federally-insured bank or a federally-insured thrift institution mutually acceptable to the Co-Obligees.  In order to give Additional Named Obligee appropriate access to Bond proceeds pursuant to this Paragraph 2.15, the agreement establishing the escrow or other appropriate account into which bond proceeds are deposited will provide for Additional Named Obligee to have the sole authority to make a withdrawal or series of withdrawals upon submitting to BSEE applicable permits for the contemplated decommissioning operations made the subject of the Default.   Additional Named Obligee pledges to use funds from this escrow or other appropriate account only for satisfying the Decommissioning Obligations then requiring performance.

2.16    If Additional Named Obligee receives bond proceeds under Paragraph 2.12 or withdraws Bond proceeds under Paragraph 2.15, but fails to commence performance of the Decommissioning Obligations, as specified in the regulations at 30 C.F.R., Part 250, subpart Q, within ninety (90) calendar days of receiving/withdrawing the Bond proceeds, or as otherwise mutually agreed in writing, Additional Named Obligee shall immediately tender to BOEM Obligee the proceeds of the Bond to arrange for performance of the requisite activities to address the Decommissioning Obligations then requiring performance.  In order to give BOEM Obligee immediate access to the remaining Bond proceeds pursuant to this Paragraph 2.16, the Additional Named Obligee will provide, in the agreement establishing the escrow or other appropriate account into which Additional Named Obligee deposits the Bond proceeds, terms that authorize BOEM Obligee, after notifying Additional Named Obligee of Additional Named Obligee's failure to timely commence Decommissioning Obligations, to make withdrawals from the account consistent with this Paragraph 2.16.  Additional Named Obligee tendering bond proceeds to BOEM Obligee under this Paragraph 2.16 shall not prevent Additional Named Obligee from calling the Bond up to the remaining penal sum of the Bond upon the occurrence of any subsequent default.

2.17  Regardless of which Co-Obligee calls the Bond, and notwithstanding anything else to the contrary herein, any and all proceeds attributable to forfeiture, or call, of the Bond must be applied solely and exclusively to extinguish the Decommissioning Obligations, regardless of insolvency, bankruptcy, or default of the Principal, or an assignment by the Principal of all or part of its interests in the Applicable ROW, and all operations and activities necessary to be performed to extinguish such Decommissioning Obligations must be timely performed in accordance with the regulations of the Department of the Interior.  Nothing in this Paragraph 2.17 shall result in Surety's obligation to pay Bond proceeds in an amount greater than the penal sum amount of this Bond.

2.18  Notwithstanding anything else to the contrary herein, any payment of Bond proceeds made by Surety to either Co-Obligee or as directed by either Co-Obligee reduces the Bond penal sum amount regardless of any judicial action that results in BOEM reinstatement of this Bond.

2.19  Any assignment of all right, title, and interest in an Instrument or in the Applicable ROW, in whole or in part, by the Principal shall require at least fourteen (14) business days' prior written notice to the Surety.

**3.    Miscellaneous**

3.1  Nothing in this Bond expands the obligations and liabilities of Additional Named Obligee associated with the Applicable ROW pursuant to contract or law, and all such obligations and liabilities will be limited to the obligations and liabilities that accrued while Additional Named Obligee was a ROW Holder, as that term is used herein.

3.2  If either Co-Obligee decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not the other Co-Obligee joins such proceeding.

3.3  In the event there is more than one surety, or there are other types of financial assurance securing the Principal's performance of the Decommissioning Obligations, the Surety's obligation and liability under this Bond is on a "solidary" or "joint and several" basis along with such other surety(ies) and along with any other providers of such financial assurance.

3.4  The Surety agrees that, within five (5) calendar days after learning that it has been de-listed from the Circular No. 570, and/or of any action filed alleging the insolvency or bankruptcy of the Surety, or alleging any violation that would result in suspension or revocation of the Surety's certificate of suretyship, charter, or license to do business, the Surety will give notice to the Principal and the Co-Obligees.

3.5  The Principal agrees that, within five (5) calendar days after learning that the Surety has become bankrupt or, insolvent, or the Surety has had its charter or license to do business suspended or revoked, or is no longer named in the current Circular 570, the Principal will, at its sole cost and expense, substitute a bond identical in all material respects to this Bond from another Qualified Surety (as defined above).

3.6     The Principal agrees that, within five (5) calendar days of learning of any action filed alleging the insolvency or bankruptcy of the Principal, or alleging any violation that would result in suspension or revocation of the Principal's charter, or license to do business, it will notify the Co-Obligees and the Surety.

3.7     The Surety's obligation and liabilities under this Bond are binding upon the Surety's successors and assigns, if any. Nothing in this Bond permits assignment of the Surety's obligation without the written consent of each of the Co-Obligees.

3.8     The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

3.9     No forbearance by either of the Co-Obligees will release the Principal and the Surety from any liability under this Bond to any Co-Obligee.

3.10    The penal sum of the Bond will be reduced by and to the extent of any payments made by Surety hereunder, or its successors and assigns, if any; however the Bond will remain in full force and effect for the remaining balance of the Bond until all the Decommissioning Obligations are satisfied, or until a replacement bond from a Qualified Surety or other form of financial assurance acceptable to each Co-Obligee, in its sole discretion, is provided.

3.11    No right or action will accrue on this Bond to or for the use of any Person other than the Principal, Surety, the Additional Named Obligee, and the BOEM Obligee, and their respective heirs, executors, debtor(s) in possession, administrators, assigns, or successors, pursuant to the terms of this Bond and applicable law.

3.12    A notice or communication under or in connection with this Bond shall be in writing and shall be deemed to have been duly given or made when (a) delivered by hand by a recognized courier delivery service, on the date shown on the receipt, or (b) in the case of delivery by United States certified mail with return receipt requested and postage prepaid, on the date of delivery.  The addresses for all notices are as follows:

> Principal:
>
> Fieldwood Energy Offshore LLC
> 2000 West Sam Houston Parkway South, Suite 1200
> Houston, TX  77042
> Attn:  Mr. Mark Mozell, Vice President Risk Management, Insurance
> Telephone:  713-969-1133
>
> With a copy to:
>
> Fieldwood Energy Offshore LLC
> 2000 West Sam Houston Parkway South, Suite 1200
> Houston, TX  77042
> Attn:  Mr. Tommy Lamme, General Counsel
> Telephone:  713-969-1107

Additional Named Obligee:

Marathon Oil Company
5555 San Felipe Street
Houston, TX  77056
Attn:  Jim Sandoval, Assistant Treasurer
Telephone:  713-296-4623

With a copy to:

Marathon Oil Company
5555 San Felipe Street
Houston, TX  77056
Attn:  Mr. G. Adam Dempsey, Senior Counsel-Acquisitions &
Dispositions
Telephone:  713-296-2608

BOEM Obligee:

Bureau of Ocean Energy Management
1201 Elmwood Park Boulevard
New Orleans, Louisiana 70161
Attention: Regional Director
Telephone: 504-736-0557

Surety:

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attn: Joellen Mendoza
Telephone: (630) 521-8461

A party to this Bond may change its address for notices by written notice to the other parties.

3.13    BOEM Obligee acknowledges that DAA and Principal are parties to the Assignment Transaction, whereby Principal acquired the infrastructure associated with the Applicable ROW, and BOEM Obligee agrees that it has no rights, duties or obligations pursuant to the Assignment Transaction, and it is not a third-party beneficiary under the agreements relevant to the Assignment Transaction.   Additional Named Obligee and Principal acknowledge that BOEM Obligee may enforce its regulations concerning the obligations of assignors and assignees.

3.14    This Bond will be subject to, and interpreted in accordance with, federal law and, in the absence of federal law, the law of the State of Texas. All disputes arising out of or in connection with this Bond shall be resolved exclusively in the federal courts in Texas and the parties hereto consent to the jurisdiction and venue of such courts.  Without limiting the foregoing, all regulations governing surety bonds included within 30 CFR 556.900, *et seq*. are incorporated herein by reference for the benefit of both BOEM Obligee and Additional Named Obligee.

3.15    Any decommissioning obligations associated with the Applicable ROW for which Additional Named Obligee has no liability shall be covered by separate and distinct financial assurance provided to BOEM Obligee by Principal or another party.

3.16    This Bond may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument. Any .pdf (portable document format) or other electronic transmission hereof or signatures hereon shall, for all purposes, be deemed originals.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on the Effective Date, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**PRINCIPAL:  Fieldwood Energy Offshore LLC**

WITNESSES:

By: _____

Name: _John H. Smith_____

Title: _Vice President_____

**SURETY:   The Hanover Insurance Company**

WITNESSES:

By: _____

Megan Sivley

Miranda Perez

Name: _Teresa D. Kelly_____

Title: _Attorney-in-Fact_____

**ADDITIONAL  NAMED  OBLIGEE:      Marathon  Oil Company**

WITNESSES:

By: _____

Name: _T. Mitch Little_____

Title: _Executive Vice President, Operations_____

**BOEM OBLIGEE: United States Department of the Interior**
**By:  Bureau of Ocean Energy Management**

WITNESSES:

By: _____

Name: _____

Title: _____

*[Signature Page to Multi-Obligee Supplemental Bond for Right-of-Way OCS-G28809, PSN 20222)]*

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

**KNOW ALL PERSONS BY THESE PRESENTS:**

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Dan W. Burton, Teresa D. Kelly, Craig C. Payne, Laura L. Kneitz, Megan Sivley and/or Rheagyn L. White**

Of **Alliant Insurance Services, Inc. of Houston, TX** each individually, if there be more than one named, its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

**Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance**

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety, any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this **24th** day of **May, 2017**.

The Hanover Insurance Company
Massachusetts Bay Insurance Company
Citizens Insurance Company of America

John C. Roche, EVP and President

The Hanover Insurance Company
Massachusetts Bay Insurance Company
Citizens Insurance Company of America

James H. Kawiecki, Vice President

THE COMMONWEALTH OF MASSACHUSETTS  )
COUNTY OF WORCESTER                          ) ss.

On this **24th** day of **May, 2017** before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

Diane J. Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 23rd day of October, 2019

**CERTIFIED COPY**

Theodore G. Martinez, Vice President

EXHIBIT "A"


PERFORMANCE BOND


KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC., with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with an office at 175 Berkeley Street, Boston, MA 02116, and The Hanover Insurance Company, with an office at 440 Lincoln Street, Worcester, MA 01653, Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT 06183 as co-sureties (hereinafter collectively called the "Surety"), are held and firmly bound unto Anadarko Petroleum Corporation, Anadarko US Offshore LLC (the two collectively referred to herein as "Anadarko"), Eni Petroleum US LLC ("Eni") and Noble Energy, Inc. ("Noble"), together with Anadarko (collectively hereinafter called the "Obligees"), Anadarko with its principal office at 1201 Lake Robbins Drive, The Woodlands, Texas 77380, Eni with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, and Noble with its principal office at 1001 Noble Energy Way, Houston, Texas 77070 in the penal sum of One Hundred Million and No/100 Dollars ($100,000,000,00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Liberty Mutual Insurance Company | $40,000,000.00 | 022059149 |
| The Hanover Insurance Company | $45,000,000.00 | 1038705 |
| Travelers Casualty and Surety Company of America | $15,000,000.00 | 106854941 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligees have entered into that certain Purchase And Sale Agreement dated effective November 1, 2013, as amended by that certain First Amendment To Neptune Spar Purchase And Sale Agreement, dated effective October 1, 2014 (hereinafter collectively called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligees to the Principal of the interests of Obligees in the Neptune Spar and associated wells and subsea pipelines and equipment defined therein as those certain "Assets" identified on Exhibit A-1 (the "Wells") and Exhibit A-2 (the "Equipment") of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "Bond"), together with, among other rights and obligations, all plugging, abandonment and decommissioning obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligees at the time of the execution of the First Amendment To Neptune Spar Purchase And Sale Agreement  a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligees, in substantially the same form attached as Exhibit B to the Purchase Agreement.

Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the plugging, abandonment and decommissioning obligations described above, or to the extent the Obligees may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out any or all of the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond and the Obligees have presented to the Surety a written notice that the Principal is in default of such plugging, abandonment and decommissioning obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days of its receipt of such written notice of default, formally elect by notice to Obligees to either: (I) Pay to the Obligees an amount equal to the actual charges incurred by Obligees in performing the plugging, abandonment and decommissioning

obligations within twenty (20) days of receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein) and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted Plugging, Abandonment and Decommissioning Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been properly performed and discharged, thereby reducing the Penal Sum by an amount equal to the costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

In the event Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then SURETY **SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEES, THEIR AFFILIATES, AND THEIR AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEES CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEES), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of three (3) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligees, whichever is later, and, subject to the three (3) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligees to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that has an** investment grade rating, as rated by Standard & Poor's or Moody's rating services, in the amount necessary to replace this Bond. If so posted, the Obligees will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligees, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Anadarko Petroleum Corporation Anadarko US
Offshore LLC 1201 Lake Robbins Drive The
Woodlands, Texas 77380 Attention: Frank Meyer

Eni Petroleum US LLC Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700 Houston, Texas
77002 Attention: Gary F. Clifford

Noble Energy, Inc.
1001 Noble Energy Way Houston, Texas 77070
Attention: Daniel S. Mills

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attention: Dan Orna

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on March 30, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESS:                          PRINCIPAL:

_____        FIELDWOOD ENERGY, LLC.

_____        By:_____
Print Name                         Name:_____
                                   Title:_____
                                   Date:_____

WITNESS:                          OBLIGEE:

_____        NOBLE ENERGY, INC.

_____        By:_____
Print Name                         Name:_____
                                   Title:_____
                                   Date:_____

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY

By: _____
Name: _____Laura E. Sudduth_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

**WITNESS:**

Gloria Mouton
Print Name

**SURETY:**

THE HANOVER INSURANCE COMPANY

By: _____
Name: _____Gina A. Rodriguez_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____
Name: _____Laura E. Sudduth_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

<u>Exhibit A</u>

Attached to and made a part of Bond Nos. 022059149, 1038705 and 106854941 issued by Liberty Mutual Insurance Company, The Hanover Insurance Company and Travelers Casualty and Surety Company of America on behalf of Noble Energy, Inc,

A s s e t s

W e l l s

| Well Name | API No. |
|---|---|
| VK 826 SS012 | 608164035800 |
| VK 826 A001 | 608164019401 |
| VK 826 A002 | 608164021900 |
| VK 826 A003 | 608164022000 |
| VK 826 A004 | 608164020500 |
| VK 826 A005 | 608164022100 |
| VK 826 A006 | 608164022200 |
| VK 826 A007 | 608164023600 |
| VK 826 A008 | 608164032400 |
| VK 826 A009 | 608164032501 |
| VK 826 A010 | 608164032601 |
| VK 826 A011 | 608164032700 |
| VK 826 A012 | 608164038101 |
| VK 826 A013 | 608164038200 |
| VK 826 A014 | 608164038001 |

<u>Equipment</u>

<u>Neptune Spar</u> (located on Viosca Knoll Block 826)
- Including but not limited to, the following spar components:
  - Topsides,
  - Hull,
  - On-platform mooring components,
  - Mooring lines, and
  - All transferrable equipment on Spar, including subsea cathodic protection system.

<u>Well (VK 826 S5012) Subsea Equipment</u>
- Including but not limited to, **the** following:
  - All subsea connections,
  - Subsea wellhead and Jumper, and
  - Risers, subsea manifolds, end terminations and equipment associated with Pipelines
  - set forth In Schedule 1,2(g) of the Purchase Agreement,

<u>Subsea Template</u>
All dry tree wells, well heads and installed downhole equipment associated with the Wells set forth in Exhibit A-1 of the Purchase Agreement.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7749008

American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS That American States Insurance Company is a corporation duly organized under the laws of the State of Indiana, that First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America are corporations duly organized under the laws of the State of New Hampshire (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, __Gina A. Rodriguez; Laura E. Sudduth; Mario Arzamendi; Mary Ann Garcia; Melissa Haddick; Orlando Aguirre; Sandra Parker; Tannis Mattson; Terri L. Morrison__

all of the city of __Houston__, state of __TX__ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this __26th__ day of __April__ __2017__



American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY } ss

On this __26th__ day of __April__, __2017__, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __5th__ day of __April__, 20 __18__

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

_(left margin, vertical)_ Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

_(right margin, vertical)_ To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

POA - FNICA, GICA & SICA
LMS_12874_022017

## THE HANOVER INSURANCE COMPANY
## MASSACHUSETTS BAY INSURANCE COMPANY
## CITIZENS INSURANCE COMPANY OF AMERICA

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

KNOW ALL PERSONS BY THESE PRESENTS:

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Melissa Haddick, Terri L. Morrison, Tannis Mattson, Sandra Parker, Gina A. Rogriguez, Mary Ann Garcia and/or Mario Arzamendi Sr**

Of **Marsh USA, Inc., of Houston, TX**  each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances. undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety. any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this 28th day of April 2016.

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Robert Thomas, Vice President

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

J Michael Pere, Vice President

THE COMMONWEALTH OF MASSACHUSETTS   )
COUNTY OF WORCESTER   ) ss.

On this 28th day of April 2016 before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known  to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

DIANE J. MARINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 4, 2022

Diane J Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 5th day of April, 2018

CERTIFIED COPY

Theodore G Martinez, Vice President

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



# POWER OF ATTORNEY

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

**Attorney-In Fact No.**  230577

**Certificate No.** 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____Houston_____ , State of _____Texas_____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____23rd_____ day of _____August_____ , _____2016_____ .

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____23rd_____ day of _____August_____ , _____2016,_____ before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

**POWER OF ATTORNEY**



| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

Attorney-In Fact No.        230577

Certificate No. **006951196**

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of        Houston        , State of        Texas        , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this        23rd        day of        August        ,  2016

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the        23rd        day of        August        ,        2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil
Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

### FORM OF MARATHON PERFORMANCE BOND

### PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the *"Principal"*) and Sirius America Insurance Company with an office at 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033 and Liberty Mutual Insurance Company with an office at 175 Berkeley Street, Boston, MA 02116 (collectively, the *"Surety")*, are held and firmly bound unto Marathon Oil company with its principal office at 5555 San Felipe, Houston, Texas 77056, (the *"Obligee")*, in the penal sum of Fifty Five Million and No/100 Dollars **($55,000,000)** lawful money of the United States of America (the *"Penal Sum")* for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Sirius America Insurance Company | $27,500,000.00 | Bond No.7000000302 |
| Liberty Mutual Insurance Company | $27,500,000.00 | Bond No. 022220669 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated June 20, 2018, (the *"Purchase Agreement")*, which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond")*, together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H --- Form of Surety Bond

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"*), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement"*) of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount"*), exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount"*), the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR *ASSERTED* BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' ORSUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.**

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Marathon Oil Company
5555 San Felipe
Houston, Texas 77056
Attention:_____

Fieldwood Energy LLC
2000 W. Sam Houston Parkway Suite 1200
Houston, Texas 77042
Attention: _____

Sirius America Insurance Company
180 Glastonbury Blvd, Suite 403
Glastonbury, CT 06033
Attention: Surety Claims Department

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

*(signature pages follow]*

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be Effective on July 2, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**                                    **PRINCIPAL:**

_____              FIELDWOOD ENERGY, LLC.

_____              By:_____

Print Name                                        Name:_____

                                                         Title:_____

                                                         Date:_____

**WITNESS:**                                    **OBLIGEE**

_____              MARATHON OIL COMPANY

_____              By:_____

Print Name                                        Name:_____

                                                         Title:_____

                                                         Date:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H – Form of Surety Bond

**WITNESS:**

_____
Tannis Mattson
Print Name

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY

By _____
Name:   Gina A. Rodriguez
Title:   Attorney-In-Fact
Date:   July 2, 2018


**WITNESS:**

_____
Tannis Mattson
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY
By _____

Name:   Gina A. Rodriguez
Title:   Attorney-In-Fact
Date:   July 2, 2018

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit "A"**

**Assets**

| Field | Asset Name | Asset | Acquired Interest | Bond Allocation |
|---|---|---|---|---|
| *Troika Assets* | | | | |
| Troika | TA-1 | Well | 50% | 8,100,000 |
| Troika | TA-2 | Well | 50% | 8,100,000 |
| Troika | TA-3 | Well | 50% | 8,100,000 |
| Troika | TA-4 | Well | 50% | 8,100,000 |
| Troika | TA-5 | Well | 50% | 8,100,000 |
| Troika | TA-6 | Well | 50% | 12,000,000 |
| Troika | Subsea Facilities | Subsea Infrastructure | 50% | 1,000,000 |
| Troika | 11393 | Pipeline | 50% | 750,000 |
| Troika | 11396 | Pipeline | 50% | 750,000 |
| **Total Troika** | | | | **55,000,000** |
| | | | | |
| *Gunflint Assets* | | | | |
| Gunflint | 2 | Well | 18% | 5,500,000 |
| Gunflint | 4 | Well | 18% | 5,500,000 |
| Gunflint | Subsea Facilities | Subsea Infrastructure | 18% | 1,000,000 |
| Gunflint | 19362 | Pipeline | 18% | 250,000 |
| Gunflint | 19374 | Pipeline | 18% | 250,000 |
| Gunflint | 19478 | Pipeline | 18% | 250,000 |
| Gunflint | 19479 | Pipeline | 18% | 250,000 |
| Gunflint | 19154/19365 | Pipeline | 18% | 1,000,000 |
| Gunflint | 19155/19432 | Pipeline | 18% | 1,000,000 |
| **Total Gunflint** | | | | **15,000,000** |
| | | | | |
| **Total** | | | | **70,000,000** |

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

### Exhibit "B"

To be attached and form part of Bond No._____ issued by ._____ , (as

**Surety), effective _____, 2018**

In the amount of        $(_____)

On behalf of:        Fieldwood Energy LLC (as Principal)
In favor of        Marathon Oil Company,(as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**
_____and NO/100 Dollars($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the _____day of _____20_____

Signed, sealed and dated the _____day of _____20_____

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY
By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Acknowledged By: Marathon Oil Company**

By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit I — Form of Assignment of Record Title Interest (BOEM Form 0150)**

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800001-403001          Certificate No. _000243_

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Terri L. Morrison, Gina A. Rodriguez, Mary Ann Garcia, Gloria P. Mouton, Marissa Shepherd, Tannis Mattson, Laura E. Sudduth

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 2nd day of July, 20 18



By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 2nd day of July, 20 18 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022

_____
Patricia McAndrew , Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

144155nl

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this _7+h_ day of December, 2017

By: _(signature)_
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8117804

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company          West American Insurance Company

## POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Orlando Aguirre; Mario Arzamendi; Mary Ann Garcia; Tannis Mattson; Terri L. Morrison; Gloria Mouton; Sandra Parker; Gina A. Rodriguez; Marissa Shepherd; Laura E. Sudduth

all of the city of ___Houston___ , state of ___TX___ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this ___4th___ day of ___June___ , ___2018___ .



The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA          ss
COUNTY OF MONTGOMERY

On this ___4th___ day of ___June___ , ___2018___ , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12 Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts** – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this ___2nd___ day of ___July___ , 20 ___18___ .

By: _____
Renee C. Llewellyn, Assistant Secretary

*Left margin:* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Right margin:* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

22 of 150

LMS_12673_022017



To obtain information or make a complaint:

You may call the Surety's toll free telephone number for information or to make a complaint at 1-844-312-4357.

You may contact the Texas Department of Insurance to obtain information on companies, coverage, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://wvvw.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the Surety first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANCE**

Para obtener información o presentar una queja:

Usted puede llamar al número de teléfono gratis de para información o para someter una queja al 1-844-312-4357

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas en:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Surety primero. Si la disputa no se resuelve, puede comunicarse con el Departamento de Seguros de Tex (TDI).

**UNA ESTEAVISOA SU POLIZA:** Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

TX Rider

 Liberty Mutual.

# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

## Premium or Claim Disputes

Should you have a dispute concerning a premium, you should contact the agent first. If you have a dispute concerning a claim, you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## Attach This Notice To Your Policy:

This notice is for information only and does not become a part or condition of the attached document.



# NOTIFICACION IMPORTANTE

PARA OBTENER INFORMACION O REALIZAR UNA QUEJA:

Usted puede escribir la notificación y dirigirla a Liberty Mutual Surety  en la siguiente dirección:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

Usted puede contactar al Departamento de Seguros de Texas para obtener informacion acerca de las compañías, coberturas, derechos o quejas:

> 1-800-252-3439

Usted puede  escribir al Departamento de Seguros de Texas a la siguiente dirección:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Disputas acerca de primas o reclamos**

En caso de que usted quiera elevar una disputa concerniente al tema de primas, por favor contacte en primer lugar a su agente.  Si el tema de la disputa es relativo a un reclamo, por favor contacte a la compañía de seguros en primer término.  Si usted considera que la disputa no es apropiadamente resuelta en estas instancias, entonces usted puede contactar al Departamento de Seguros de Texas..

**Adjunte esta notificacion a su póliza:**

Esta notificación es a los solos fines de su información y la misma no forma parte o condiciona de manera alguna el documento adjunto.

EXHIBIT "A"

PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC., with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with an office at 175 Berkeley Street, Boston, MA 02116, and The Hanover Insurance Company, with an office at 440 Lincoln Street, Worcester, MA 01653, Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT 06183 as co-sureties (hereinafter collectively called the "Surety"), are held and firmly bound unto Anadarko Petroleum Corporation, Anadarko US Offshore LLC (the two collectively referred to herein as "Anadarko"), Eni Petroleum US LLC ("Eni") and Noble Energy, Inc. ("Noble"), together with Anadarko (collectively hereinafter called the "Obligees"), Anadarko with its principal office at 1201 Lake Robbins Drive, The Woodlands, Texas 77380, Eni with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, and Noble with its principal office at 1001 Noble Energy Way, Houston, Texas 77070 in the penal sum of One Hundred Million and No/100 Dollars ($100,000,000,00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Liberty Mutual Insurance Company | $40,000,000.00 | 022059149 |
| The Hanover Insurance Company | $45,000,000.00 | 1038705 |
| Travelers Casualty and Surety Company of America | $15,000,000.00 | 106854941 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligees have entered into that certain Purchase And Sale Agreement dated effective November 1, 2013, as amended by that certain First Amendment To Neptune Spar Purchase And Sale Agreement, dated effective October 1, 2014 (hereinafter collectively called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligees to the Principal of the interests of Obligees in the Neptune Spar and associated wells and subsea pipelines and equipment defined therein as those certain "Assets" identified on Exhibit A-1 (the "Wells") and Exhibit A-2 (the "Equipment") of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "Bond"), together with, among other rights and obligations, all plugging, abandonment and decommissioning obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligees at the time of the execution of the First Amendment To Neptune Spar Purchase And Sale Agreement  a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligees, in substantially the same form attached as Exhibit B to the Purchase Agreement.

Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the plugging, abandonment and decommissioning obligations described above, or to the extent the Obligees may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out any or all of the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond and the Obligees have presented to the Surety a written notice that the Principal is in default of such plugging, abandonment and decommissioning obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days of its receipt of such written notice of default, formally elect by notice to Obligees to either: (I) Pay to the Obligees an amount equal to the actual charges incurred by Obligees in performing the plugging, abandonment and decommissioning

obligations within twenty (20) days of receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein) and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted Plugging, Abandonment and Decommissioning Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been properly performed and discharged, thereby reducing the Penal Sum by an amount equal to the costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

In the event Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then SURETY **SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEES, THEIR AFFILIATES, AND THEIR AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEES CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEES), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of three (3) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligees, whichever is later, and, subject to the three (3) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligees to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that has an** investment grade rating, as rated by Standard & Poor's or Moody's rating services, in the amount necessary to replace this Bond. If so posted, the Obligees will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligees, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Anadarko Petroleum Corporation Anadarko US
Offshore LLC 1201 Lake Robbins Drive The
Woodlands, Texas 77380 Attention: Frank Meyer

Eni Petroleum US LLC Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700 Houston, Texas
77002 Attention: Gary F. Clifford

Noble Energy, Inc.
1001 Noble Energy Way Houston, Texas 77070
Attention: Daniel S. Mills

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attention: Dan Orna

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on March 30, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**                              **PRINCIPAL:**

_____      FIELDWOOD ENERGY, LLC.

_____
Print Name                              By:_____
                                        Name:_____
                                        Title:_____
                                        Date:_____

**WITNESS:**                              **OBLIGEE:**

_____      NOBLE ENERGY, INC.

_____
Print Name                              By:_____
                                        Name:_____
                                        Title:_____
                                        Date:_____

WITNESS:

Gina Rodriguez
Print Name

SURETY:

LIBERTY MUTUAL INSURANCE COMPANY

By: _____
Name: _____ Laura E. Sudduth _____
Title: _____ Attorney-In-Fact _____
Date: _____ April 5, 2018 _____

WITNESS:

Gloria Mouton
Print Name

SURETY:

THE HANOVER INSURANCE COMPANY

By: _____
Name: ____ Gina A. Rodriguez ____
Title: _____ Attorney-In-Fact _____
Date: _____ April 5, 2018 _____

WITNESS:

Gina Rodriguez
Print Name

SURETY:

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____
Name: _____ Laura E. Sudduth _____
Title: _____ Attorney-In-Fact _____
Date: _____ April 5, 2018 _____

Exhibit A

Attached to and made a part of Bond Nos. 022059149, 1038705 and 106854941 issued by Liberty Mutual Insurance Company, The Hanover Insurance Company and Travelers Casualty and Surety Company of America on behalf of Noble Energy, Inc,

A s s e t s

W e l l s

| Well Name | API No. |
|-----------|---------|
| VK 826 SS012 | 608164035800 |
| VK 826 A001 | 608164019401 |
| VK 826 A002 | 608164021900 |
| VK 826 A003 | 608164022000 |
| VK 826 A004 | 608164020500 |
| VK 826 A005 | 608164022100 |
| VK 826 A006 | 608164022200 |
| VK 826 A007 | 608164023600 |
| VK 826 A008 | 608164032400 |
| VK 826 A009 | 608164032501 |
| VK 826 A010 | 608164032601 |
| VK 826 A011 | 608164032700 |
| VK 826 A012 | 608164038101 |
| VK 826 A013 | 608164038200 |
| VK 826 A014 | 608164038001 |

Equipment

Neptune Spar (located on Viosca Knoll Block 826)
- Including but not limited to, the following spar components:
  - Topsides,
  - Hull,
  - On-platform mooring components,
  - Mooring lines, and
  - All transferrable equipment on Spar, including subsea cathodic protection system.

Well (VK 826 S5012) Subsea Equipment
- Including but not limited to, **the** following:
  - All subsea connections,
  - Subsea wellhead and Jumper, and
  - Risers, subsea manifolds, end terminations and equipment associated with Pipelines
  - set forth In Schedule 1,2(g) of the Purchase Agreement,

Subsea Template
All dry tree wells, well heads and installed downhole equipment associated with the Wells set forth in Exhibit A-1 of the Purchase Agreement.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7749008

American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS  That American States Insurance Company is a corporation duly organized under the laws of the State of Indiana, that First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America are corporations duly organized under the laws of the State of New Hampshire (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, _Gina A. Rodriguez; Laura E. Sudduth; Mario Arzamendi; Mary Ann Garcia; Melissa Haddick; Orlando Aguirre; Sandra Parker; Tannis Mattson; Terri L. Morrison_

all of the city of _Houston_____, state of _TX_____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this _26th____ day of _April_____ _2017___



American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA      ss
COUNTY OF MONTGOMERY

On this _26th__ day of _April_____, _2017__, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney.  Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe  shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary.  Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _5th_ day of _April_____, 20_18_

By: _Renee Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*(left margin, rotated):* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin, rotated):* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

7 of 200

POA - FNICA, GICA & SICA
LMS_12874_022017

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

KNOW ALL PERSONS BY THESE PRESENTS:

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Melissa Haddick, Terri L. Morrison, Tannis Mattson, Sandra Parker, Gina A. Rogriguez,**
**Mary Ann Garcia and/or Mario Arzamendi Sr**

Of **Marsh USA, Inc., of Houston, TX** each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this 28th day of April 2016.

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Robert Thomas, Vice President

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

J Michael Fern, Vice President

THE COMMONWEALTH OF MASSACHUSETTS       )
COUNTY OF WORCESTER                                       ) ss.

On this 28th day of April 2016 before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

DIANE J. MARINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 4, 2022

Diane J Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 5th day of April, 2018

CERTIFIED COPY

Theodore G Martinez, Vice President

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



# POWER OF ATTORNEY

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

**Attorney-In Fact No.**      230577

**Certificate No.** 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____ Houston _____ , State of _____ Texas _____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____ 23rd _____ day of _____ August _____ , 2016 .

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____

Robert L. Raney, Senior Vice President

On this the _____ 23rd _____ day of _____ August _____ , _____ 2016 before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____

Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



**POWER OF ATTORNEY**

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

Attorney-In Fact No.    230577

Certificate No. **006951196**

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____Houston_____ , State of _____Texas_____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____23rd_____ day of _____August_____ , 2016.

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the ___23rd___ day of ___August___ , 2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof**, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# PERFORMANCE BOND

Bond No. 022220643

KNOW ALL MEN BY THESE PRESENTS:

**That,** Fieldwood Energy LLC, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with its principal office at 175 Berkeley Street, Boston, MA 02116 (hereinafter called the "Surety"), are held and firmly bound unto XH, LLC, with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 (hereinafter collectively called the "Obligee"), in the Penal Sum of One Million Eight Hundred Ninety-three Thousand One Hundred Seventy-eight and No/100 Dollars ($1,893,178.00) lawful money of the United States of America for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS Apache Corporation and XH, LLC are parties to the August 1, 2011 Agreement in which Fieldwood Energy LLC acquired XH, LLC assets from Apache Corporation on September 30, 2013 (hereinafter called the "Agreement"),  which Agreement is by reference made a part hereof and which provides for the sale and assignment from Obligee to Principal of the interests of Obligee in certain oil and gas leases and properties, including the oil and gas leases described on Annex 1 to this Performance Bond ("Bond"), all as more particularly described in the Agreement (collectively, the "Leases" and each individually, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells, platforms, facilities, equipment and pipelines existing on the Leases as of the date of the Agreement, including the wells described on Annex 2 (collectively, the "Wells" and individually, the "Well") (the Leases, Wells and such platforms, facilities, equipment and pipelines, being collectively referred to as the "Properties" and each as "Property"); and

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of any of the Leases, whether by operation of law or otherwise, this Bond shall remain in full force and effect until Principal has presented satisfactory evidence to Obligee, as set forth below, that all P&A Obligations (as such term is defined below) have been performed and discharged; and

WHEREAS, as used in this Bond, the term "P&A Obligations" means all obligations and liabilities of Principal to abandon, restore and remediate the Properties, whether arising before or after August 1, 2011 (the "Effective Time"), including obligations, as applicable to the Properties, to: (a) obtain plugging exceptions in the operator's name for each Well with a current plugging exception, or permanently plugging and abandoning a Well; (b) plug, abandon, and if necessary, re-abandon each Well; (c) remove all equipment and facilities, including flowlines, pipelines and platforms; (d) close all pits; and (e) restore and remediate the surface, subsurface and offshore sites associated with the Properties; and

WHEREAS, Principal has agreed to deliver to Obligee this Bond, executed by Principal and Surety, at the Closing as defined and contemplated by the Agreement; and

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising, out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder;

NOW THEREFORE, Principal and Surety agree as follows:

Surety hereby guarantees the full and faithful performance by Principal of, and compliance by Principal with, the P&A Obligations in accordance with all current and future requirements of applicable federal and state law or any agency, authority or body having, jurisdiction or authority over the Properties or any operations thereon, and in accordance with the Leases and the Agreement.

PROVIDED, HOWEVER, whenever the Principal shall present to Obligee satisfactory evidence that all of the P&A Obligations have been performed (and as set forth in the Agreement, such satisfactory evidence shall comprise executed forms or other written documentation as may be required by any governmental authority under applicable law to reflect completion of the P&A Obligations, including, without limitation, forms and documentation relating to plugging and abandonment activities, decommissioning activities, site clearance activities and pipeline abandonment or removal activities and completion of remedial activities), then this Bond shall be **null and void; otherwise, it shall remain in full force and effect** in the amount as provided.

In the event Principal fails to carry out its obligations to bear the cost and expense to perform the P&A Obligations for a Property or certain identified Properties, and Obligee has presented to Surety a written notice that Principal is in default of its obligation under the terms of the Agreement, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to Principal and Surety, Surety shall, within fifteen (15) days of such presentations: 1) Pay to Obligee an amount equal to the actual costs for performing the P&A Obligations with respect to the Property or identified Properties in an amount up to, but not exceeding, the maximum penal amount of this obligation and the penal amount of this obligation shall be further reduced by the amount of this obligation; or 2) Commence the necessary operations to perform the P&A Obligations with respect to the Property or identified Properties as set forth in the Agreement.

In the event Obligee commences or completes the P&A Obligations with respect to a Property or identified Properties upon Principal's default under the terms of the Agreement, Surety's obligations shall remain the same as set forth in this Bond regarding payment to Obligee as set forth above.

If Surety shall decide, upon default by Principal, to commence, or cause to be commenced, the performance of the aforementioned P&A Obligations, said performance shall continue until such time as the P&A Obligations have been met, thereby reducing the penal amount as set forth herein. **Surety agrees to indemnify, defend, and hold harmless Obligee, its directors, and agents from all claims, demands, and causes of action for personal injury, death, property and/or environmental damage resulting in whole or in part from Surety's or Surety's contractors' negligence, whether joint (including with Obligee or Principal) active, passive, concurrent or sole, or willful misconduct with respect to the performance of the P&A Obligations, if and only if Surety elects, as stated herein, to commence the aforementioned P&A Obligations in lieu of payment to Obligee.**

Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits attached thereto shall release Principal and Surety or either of them from their liability under this Bond. Notice to Surety of any such amendment or supplement is hereby waived, except to the extent that is herein provided.

No forbearance of Obligee, to Principal, shall release Principal and Surety from their liability under this Bond except where Obligee agrees to reduce the penal amount as provided above. No assignment of the Agreement or of the Property by the Principal, its successors and assigns, and no assignment of the Agreement by operation of law or consent of Obligee or otherwise shall in any degree relieve Principal and Surety of their obligations under this Bond except as provided herein. No delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in case of default on the part of Principal or Surety shall in any degree relieve Principal and Surety of their obligations under this Bond except as herein stated.

No assignment, in whole or in part, of the Agreement or of the Properties by Principal, its successors and assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal shall in any degree relieve Principal and Surety or either of their obligations under this Bond.

HOWEVER, if upon assignment, in whole or in part, of the Agreement or the Property or any Well and facilities thereon by Principal, its successors or assigns, Principal may cause its assignee to post security, in the form of a bond or other acceptable security from Surety, or a surety acceptable to Obligee, covering the same obligations as stated herein as to the assigned interest ("Transferee Bond"). The penal sum provided for in the Transferee Bond with respect to such assigned Properties shall be in an amount equal to the estimated cost to perform the P&A Obligations with respect to the assigned Property, which cost estimate shall be subject to Obligee's approval.

No right or action shall accrue on this Bond to or for the use of any person or corporation other than Principal, Obligee, their respective successors and assigns.

NOW THEREFORE, Principal and Obligee agree that any dispute, claim, or controversy concerning the interpretation of this Bond or the Agreement or any party's compliance with the terms of this Bond shall be resolved in accordance with the terms, conditions, and procedures in Article 17 of the Agreement and each agrees not to prosecute or commence any suit or action against the other(s) relating to any such matters.

This Bond is subject to the provisions of Section 8.04(f) of the Agreement including, without limitation, the redetermination provisions that may serve to adjust the penal sum provided for herein and the ability of Obligee to draw on the Bond, in whole or in part, as expressly provided for therein subject, however, to the following conditions. In the event that Obligee draws on this Bond pursuant to its rights under Sections 8.04(f)(2)(B)—(C), then it is expressly agreed that Obligee shall first obtain Surety's written consent. Further, Surety shall not be required to increase the penal sum provided for in this Bond as a result of any redetermination made pursuant to the Agreement without its written consent. In the event such written consent from Surety is not obtained, Principal will be required to obtain an additional bond to cover the incremental penal sum increase as a result of such redetermination from a financial institution, mutually acceptable to Obligee and Principal, providing for terms substantially similar to those set forth in this Bond except as regards the penal sum amount. Any redetermination made pursuant to the Agreement, shall not include estimated costs with respect to P&A Obligations for which a Transferee Bond has been obtained and approved by Obligee. Obligee will accept such Transferee Bond as financial security for the assigned Property. Further, as provided in Section 8.04(f)(1) of the Agreement, when it is determined that the estimated costs of the total remaining liabilities of Principal with respect to the P&A Obligations is less than one hundred sixty-two thousand two hundred seventy-two and $^{N}/100$ Dollars ($162,272.00), then this Bond shall be null and void and Obligee and Principal shall execute such documentation as is reasonably necessary in order to release and relinquish the Bond, which documentation will be executed promptly but in any event not less than sixty (60) days of being presented for execution. Further, Obligee agrees that in the event XH, LLC terminates its corporate existence, then it will appoint another entity or, at its sole option, its parent company, as agent to act on its behalf with respect to the obligations stated in Section 8.04(0 of the Agreement.

In the event of a conflict or inconsistency between the terms and provisions of this Bond and those set forth in the Agreement, as between Principal and Obligee, the terms and provisions of the Agreement shall control.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on May 14, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

Principal: Fieldwood Energy LLC

Witnesses:

By: _____

Name: _____John H. Smith_____

Title: _____Senior Vice President_____

Date: _____

Surety: Liberty Mutual Insurance Company

Witnesses:

By: _Laura E Sudduth_____

Terri Morrison – Witness

Name: Laura E. Sudduth_____

Tannis Matson – Witness

Title: _Attorney-In-Fact_____

Date: May 14, 2018_____

Accepted by Obligee

Witnesses:

By: _____

Name: _____

Title: _____

Date: _____

# ANNEX I

## DESCRIPTION OF LEASES

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3203-0001-00 | **East Cameron 9 & 14 - OCS-G 1440**<br>SE/4; E/2SW/4 of Block 9, East Cameron Area, that portion in Zone 2, as that zone is defined in the agreement between the United States and the State of Louisiana, October 12, 1956; and E/2NW/4;NE/4 of Block 14, East Cameron Area | Record Title | 50.00000% | XH, LLC |

ANNEX 2

**DESCRIPTION OF WELLS**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Type |
|---|---|---|---|---|---|---|---|---|---|
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #12 | #12 | East Cameron 9/14 | Offshore Louisiana | 177034060600S03 | Fieldwood Energy LLC | 401896 | OIL |
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #13 | #13 | East Cameron 9/14 | Offshore Louisiana | 177034101300S04 | Fieldwood Energy LLC | 401897 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-06 | B-06 | East Cameron 9/14 | Offshore Louisiana | 177032003700S03 | Fieldwood Energy LLC | - | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-07 | B-07 | East Cameron 9/14 | Offshore Louisiana | 177032004000S04 | Fieldwood Energy LLC | 401898 | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-08 | B-08 | East Cameron 9/14 | Offshore Louisiana | 177032004200S01 | Fieldwood Energy LLC | - | GAS |
| EC14B | OCS-G-01440 EC 9 | OCS-G-01440 EC 14 B-09 | B-09 | East Cameron 9/14 | Offshore Louisiana | 177032004300S04 | Fieldwood Energy LLC | 401899 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-10STI | B-10STI | East Cameron 9/14 | Offshore Louisiana | 177032004601S03 | Fieldwood Energy LLC | 401900 | OIL |
| EC14CF | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 CF-01 | CF-01 | East Cameron 9/14 | Offshore Louisiana | 177030032800S04 | Fieldwood Energy LLC | - | OIL |
| EC14CF | OCS-G-13572 EC 14 | OCS-G-13572 EC 14 CF-02 | CF-02 | East Cameron 9/14 | Offshore Louisiana | 177034686000S05 | Fieldwood Energy LLC | 402648 | GAS |

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**

+This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8032778

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company          West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint,_____

**Sandra Parker,  Terri L Morrison ,  Tannis Mattson ,  Gina A Rodriguez , Mary Ann Garcia, Mario Arzamendi, Orlando Aguirre, Laura E. Sudduth, Gloria Mouton, Marissa Shepherd**

all of the city of Houston, state of TX each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in the penal sum not exceeding TWENTY FIVE MILLION*****DOLLARS ($25,000,000.00*****) each, and the execution of such undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 8th day of March, 2018.

 

The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA     ss
COUNTY OF MONTGOMERY

On this 8th day of March, 2018, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



**COMMONWEALTH OF PENNSYLVANIA**
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021

Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings.** Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company.  When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 14th day of May, 2018

 

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*(left margin, vertical)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin, vertical)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.



# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Premium or Claim Disputes**

Should you have a dispute concerning a premium, you should contact the agent first.  If you have a dispute concerning a claim, you should contact the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**Attach This Notice To Your Policy:**

This notice is for information only and does not become a part or condition of the attached document.

EXHIBIT "A"


PERFORMANCE BOND


KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC., with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with an office at 175 Berkeley Street, Boston, MA 02116, and The Hanover Insurance Company, with an office at 440 Lincoln Street, Worcester, MA 01653, Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT 06183 as co-sureties (hereinafter collectively called the "Surety"), are held and firmly bound unto Anadarko Petroleum Corporation, Anadarko US Offshore LLC (the two collectively referred to herein as "Anadarko"), Eni Petroleum US LLC ("Eni") and Noble Energy, Inc. ("Noble"), together with Anadarko (collectively hereinafter called the "Obligees"), Anadarko with its principal office at 1201 Lake Robbins Drive, The Woodlands, Texas 77380, Eni with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, and Noble with its principal office at 1001 Noble Energy Way, Houston, Texas 77070 in the penal sum of One Hundred Million and No/100 Dollars ($100,000,000,00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Liberty Mutual Insurance Company | $40,000,000.00 | 022059149 |
| The Hanover Insurance Company | $45,000,000.00 | 1038705 |
| Travelers Casualty and Surety Company of America | $15,000,000.00 | 106854941 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligees have entered into that certain Purchase And Sale Agreement dated effective November 1, 2013, as amended by that certain First Amendment To Neptune Spar Purchase And Sale Agreement, dated effective October 1, 2014 (hereinafter collectively called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligees to the Principal of the interests of Obligees in the Neptune Spar and associated wells and subsea pipelines and equipment defined therein as those certain "Assets" identified on Exhibit A-1 (the "Wells") and Exhibit A-2 (the "Equipment") of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "Bond"), together with, among other rights and obligations, all plugging, abandonment and decommissioning obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligees at the time of the execution of the First Amendment To Neptune Spar Purchase And Sale Agreement  a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligees, in substantially the same form attached as Exhibit B to the Purchase Agreement.

Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the plugging, abandonment and decommissioning obligations described above, or to the extent the Obligees may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out any or all of the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond and the Obligees have presented to the Surety a written notice that the Principal is in default of such plugging, abandonment and decommissioning obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days of its receipt of such written notice of default, formally elect by notice to Obligees to either: (I) Pay to the Obligees an amount equal to the actual charges incurred by Obligees in performing the plugging, abandonment and decommissioning

obligations within twenty (20) days of receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein) and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted Plugging, Abandonment and Decommissioning Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been properly performed and discharged, thereby reducing the Penal Sum by an amount equal to the costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

In the event Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then SURETY **SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEES, THEIR AFFILIATES, AND THEIR AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEES CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEES), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of three (3) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligees, whichever is later, and, subject to the three (3) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligees to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that has an** investment grade rating, as rated by Standard & Poor's or Moody's rating services, in the amount necessary to replace this Bond. If so posted, the Obligees will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligees, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Anadarko Petroleum Corporation Anadarko US
Offshore LLC 1201 Lake Robbins Drive The
Woodlands, Texas 77380 Attention: Frank Meyer

Eni Petroleum US LLC Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700 Houston, Texas
77002 Attention: Gary F. Clifford

Noble Energy, Inc.
1001 Noble Energy Way Houston, Texas 77070
Attention: Daniel S. Mills

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA  02116
Attention: Todd Tschantz

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attention: Dan Orna

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT  06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on March 30, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

PRINCIPAL:

_____

_____
Print Name

FIELDWOOD ENERGY, LLC.

By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

OBLIGEE:

_____

_____
Print Name

NOBLE ENERGY, INC.

By:_____
Name:_____
Title:_____
Date:_____

WITNESS:

_Gina Rodriguez_
Print Name

WITNESS:

_Gloria Mouton_
Print Name

WITNESS:

_Gina Rodriguez_
Print Name

SURETY:

LIBERTY MUTUAL INSURANCE COMPANY

By: _____

Name: _____Laura E. Sudduth_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

SURETY:

THE HANOVER INSURANCE COMPANY

By: _____

Name: ___Gina A. Rodriguez_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

SURETY:

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____

Name: _____Laura E. Sudduth_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

<u>Exhibit A</u>

Attached to and made a part of Bond Nos. 022059149, 1038705 and 106854941 issued by Liberty Mutual Insurance Company, The Hanover Insurance Company and Travelers Casualty and Surety Company of America on behalf of Noble Energy, Inc,

A s s e t s

W e l l s

| Well Name | API No. |
|-----------|---------|
| VK 826 SS012 | 608164035800 |
| VK 826 A001 | 608164019401 |
| VK 826 A002 | 608164021900 |
| VK 826 A003 | 608164022000 |
| VK 826 A004 | 608164020500 |
| VK 826 A005 | 608164022100 |
| VK 826 A006 | 608164022200 |
| VK 826 A007 | 608164023600 |
| VK 826 A008 | 608164032400 |
| VK 826 A009 | 608164032501 |
| VK 826 A010 | 608164032601 |
| VK 826 A011 | 608164032700 |
| VK 826 A012 | 608164038101 |
| VK 826 A013 | 608164038200 |
| VK 826 A014 | 608164038001 |

<u>Equipment</u>

<u>Neptune Spar</u> (located on Viosca Knoll Block 826)
- Including but not limited to, the following spar components:
  - Topsides,
  - Hull,
  - On-platform mooring components,
  - Mooring lines, and
  - All transferrable equipment on Spar, including subsea cathodic protection system.

<u>Well (VK 826 S5012) Subsea Equipment</u>
- Including but not limited to, **the** following:
  - All subsea connections,
  - Subsea wellhead and Jumper, and
  - Risers, subsea manifolds, end terminations and equipment associated with Pipelines
  - set forth In Schedule 1,2(g) of the Purchase Agreement,

<u>Subsea Template</u>
All dry tree wells, well heads and installed downhole equipment associated with the Wells set forth in Exhibit A-1 of the Purchase Agreement.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7749008

American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That American States Insurance Company is a corporation duly organized under the laws of the State of Indiana, that First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America are corporations duly organized under the laws of the State of New Hampshire (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, __Gina A. Rodriguez; Laura E. Sudduth; Mario Arzamendi; Mary Ann Garcia; Melissa Haddick; Orlando Aguirre; Sandra Parker; Tannis Mattson; Terri L. Morrison__

all of the city of __Houston__, state of __TX__ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this __26th__ day of __April__ __2017__



American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA    ss
COUNTY OF MONTGOMERY

On this __26th__ day of __April__, __2017__, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __5th__ day of __April__, 20__18__

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*(left margin, rotated)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin, rotated)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

POA - FNICA, GICA & SICA
LMS_12874_022017

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

**KNOW ALL PERSONS BY THESE PRESENTS:**

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Melissa Haddick, Terri L. Morrison, Tannis Mattson, Sandra Parker, Gina A. Rogriguez,**
**Mary Ann Garcia and/or Mario Arzamendi Sr**

Of **Marsh USA, Inc., of Houston, TX** each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this 28th day of April 2016.

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Robert Thomas, Vice President

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

J. Michael Pere, Vice President

THE COMMONWEALTH OF MASSACHUSETTS )
COUNTY OF WORCESTER                ) ss.

On this 28th day of April 2016 before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

DIANE J. MARINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 4, 2022

Diane J. Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 5th day of April, 2018

CERTIFIED COPY

Theodore G. Martinez, Vice President

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



# POWER OF ATTORNEY

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

**Attorney-In Fact No.**      230577

**Certificate No.** 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____Houston_____ , State of _____Texas_____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____23rd_____ day of _____August_____ , ____2016____ .

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____23rd_____ day of _____August_____ , ____2016____ before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

## POWER OF ATTORNEY



| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

Attorney-In Fact No. 230577

Certificate No. 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of Houston, State of Texas, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this 23rd day of August, 2016.

| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the 23rd day of August, 2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof**, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

**EXHIBIT H-2**

**FORM OF NOBLE PERFORMANCE BOND**
**PERFORMANCE BOND**

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the "Principal') and Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT  06183-6014, and XL Specialty Insurance Company, with an office at 70 Seaview Avenue, Stamford, CT 06902, as co-sureties (collectively, the "Surety"), are held and firmly bound unto Noble Energy, Inc. with its principal office at 1001 Noble Energy Way, Houston, Texas 77070, (the "Obligee"), in the penal sum of Ninety Million and No/100 Dollars ($90,000,000) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Travelers Casualty and Surety Company of America | $45,000,000.00 | Bond No.106854940 |
| XL Specialty Insurance Company | $45,000,000.00 | Bond No. US00083678SU18A |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement  dated  February 14, 2018,  (the *"Purchase Agreement "),* which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A  to this Performance Bond  (the  *"Bond'),*  together with,  among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and  discharged, subject to  the  terms and conditions hereof; and

1

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney- in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

2

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations")*, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement"*) of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount"*), exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount"*), the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost

3

Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

**If** the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or non-payment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Noble Energy, Inc.
1001 Noble Energy Way
Houston, Texas 77070
Attention: [          ]

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: [          ]

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

XL Specialty Insurance Company (Surety)
70 Seaview Avenue
Stamford, CT 06902
Attention: Becky Shalhoub
Telephone: 610-968-9099

*[signature pages follow]*

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on April 11, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

——————————————

—————————————— 
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.

By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

——————————————

—————————————— 
Print Name

**OBLIGEE**

NOBLE ENERGY, INC.

By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_Gina Rodriguez_
Print Name


**WITNESS:**

_Gina Rodriguez_
Print Name

**SURETY:**

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _Laura E Sudduth_
Name:   Laura E. Sudduth
Title:      Attorney-In-Fact
Date:       April 5, 2018

**SURETY:**

XL SPECIALTY INSURANCE

By: _Laura E Sudduth_
Name:   Laura Sudduth
Title:      Attorney-In-Fact
Date:      April 5, 2018

8

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and foregoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of _____ _____.



*Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.

**XL REINSURANCE AMERICA INC.**



by:    *Gregory C Boal*

Gregory Boal, VICE PRESIDENT

Attest:    *Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER PENNSYLVANIA ASSOCIATION OF NOTARIES

*Rebecca C Shalhoub*

Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of April 2018

*Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND

SB0042

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of ____ _____.



Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.



**XL REINSURANCE AMERICA INC.**

by: Gregory Boal, VICE PRESIDENT

Attest: Kevin M. Mirsch, ASSISTANT SECRETARY

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of April 2018.



Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

☐ THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND ☐

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



# POWER OF ATTORNEY

**Farmington Casualty Company**
**Fidelity and Guaranty Insurance Company**
**Fidelity and Guaranty Insurance Underwriters, Inc.**
**St. Paul Fire and Marine Insurance Company**
**St. Paul Guardian Insurance Company**

**St. Paul Mercury Insurance Company**
**Travelers Casualty and Surety Company**
**Travelers Casualty and Surety Company of America**
**United States Fidelity and Guaranty Company**

| | |
|---|---|
| Attorney-In Fact No.  232560 | Certificate No. **007341763** |

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, Mario Arzamendi, and Laura E. Sudduth

of the City of _____Houston_____, State of _____Texas_____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____24th_____ day of _____August_____ , _____2017_____ .

**Farmington Casualty Company**
**Fidelity and Guaranty Insurance Company**
**Fidelity and Guaranty Insurance Underwriters, Inc.**
**St. Paul Fire and Marine Insurance Company**
**St. Paul Guardian Insurance Company**

**St. Paul Mercury Insurance Company**
**Travelers Casualty and Surety Company**
**Travelers Casualty and Surety Company of America**
**United States Fidelity and Guaranty Company**

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____24th_____ day of _____August_____ , _____2017_____, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 5th day of April, 2018.

Kevin E. Hughes, Assistant Secretary

        

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

Exhibit "A"

Assets

Exhibit "B"

Rider No.

To be attached and form part of Bond No._____ issued by _____,
(as Surety), effective _____

| | |
|---|---|
| In the amount of: | $_____ |
| On behalf of: | Fieldwood Energy LLC (as Principal) |
| In favor of: | Noble Energy, Inc. (as Obligee) |

In consideration of the premium charged for the above bond, it is mutually understood and agreed
by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**

_____and N0/100 Dollars ($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified
shall remain unchanged.

This rider shall be effective as of the_____day of_____ 201
Signed, sealed and dated the____day of_____ 201

Fieldwood Energy LLC

By:_____
Name:_____
Title:_____

Travelers Casualty and Surety Company of America

By:_____
Name:_____
Title:_____

XL Specialty Insurance Company

By:_____
Name:_____
Title:_____

Acknowledged By:  Noble Energy, Inc.

By:_____
Name:_____
Title:_____

**EXHIBIT H-2**

**FORM OF NOBLE PERFORMANCE BOND**
**PERFORMANCE BOND**

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the "Principal') and Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT  06183-6014, and XL Specialty Insurance Company, with an office at 70 Seaview Avenue, Stamford, CT 06902, as co-sureties (collectively, the "Surety"), are held and firmly bound unto Noble Energy, Inc. with its principal office at 1001 Noble Energy Way, Houston, Texas 77070, (the "Obligee"), in the penal sum of Ninety Million and No/100 Dollars ($90,000,000) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Travelers Casualty and Surety Company of America | $45,000,000.00 | Bond No.106854940 |
| XL Specialty Insurance Company | $45,000,000.00 | Bond No. US00083678SU18A |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated February 14, 2018, (the *"Purchase Agreement"),* which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond  (the *"Bond'),* together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and  discharged, subject to  the  terms  and  conditions hereof; and

1

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney- in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"),* and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement"* ) of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount"),* exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount"),* the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost

Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

**If** the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or non-payment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Noble Energy, Inc.
1001 Noble Energy Way
Houston, Texas 77070
Attention: [          ]

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: [          ]

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

XL Specialty Insurance Company (Surety)
70 Seaview Avenue
Stamford, CT 06902
Attention: Becky Shalhoub
Telephone: 610-968-9099

*[signature pages follow]*

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on April 11, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.


By:_____
Name:_____
Title:_____
Date:_____


**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

NOBLE ENERGY, INC.


By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____
Name: ___Laura E. Sudduth_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

**SURETY:**

XL SPECIALTY INSURANCE

By: _____
Name: ___Laura Sudduth_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

**WITNESS:**

Gina Rodriguez
Print Name

8

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of _____ _____.



*Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.

**XL REINSURANCE AMERICA INC.**

by: *Gregory C Boal*

Gregory Boal, VICE PRESIDENT

Attest: *Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY



STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER PENNSYLVANIA ASSOCIATION OF NOTARIES

*Rebecca C Shalhoub*

Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of April 2018

*Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND

SB0042

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of _____ _____.



Kevin M Mirsch

Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.



**XL REINSURANCE AMERICA INC.**

by:

Gregory Boal, VICE PRESIDENT

Attest:

Kevin M Mirsch

Kevin M. Mirsch, ASSISTANT SECRETARY

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of April 2018



Kevin M Mirsch

Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND

SB0042

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

 **TRAVELERS**

## POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

**Attorney-In Fact No.**        232560

**Certificate No.** 007341763

**KNOW ALL MEN BY THESE PRESENTS:** That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, Mario Arzamendi, and Laura E. Sudduth

of the City of _____Houston_____, State of _____Texas_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____24th_____ day of _____August_____, _____2017_____.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

**State of Connecticut**
**City of Hartford** ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____24th_____ day of _____August_____, _____2017_____, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 5th day of April, 20 18.

Kevin E. Hughes, Assistant Secretary

        

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

Exhibit "A"

Assets

Exhibit "B"

Rider No.

To be attached and form part of Bond No._____ issued by _____, (as Surety), effective _____

| | |
|---|---|
| In the amount of: | $_____ |
| On behalf of: | Fieldwood Energy LLC (as Principal) |
| In favor of: | Noble Energy, Inc. (as Obligee) |

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**

_____and N0/100 Dollars ($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the_____day of_____ 201
Signed, sealed and dated the____day of_____ 201

Fieldwood Energy LLC

By:_____
Name:_____
Title:_____

Travelers Casualty and Surety Company of America

By:_____
Name:_____
Title:_____

XL Specialty Insurance Company

By:_____
Name:_____
Title:_____

Acknowledged By:  Noble Energy, Inc.

By:_____
Name:_____
Title:_____