# EXHIBIT B

The Hanover Insurance Company
General Agreement of Indemnity

## GENERAL AGREEMENT OF INDEMNITY

**This General Agreement of Indemnity** is made and entered into this 2nd day of April, 2018, by the following undersigned persons and/or entities (including individuals, partnerships, corporations and/or trusts) Fieldwood Energy, LLC (individually and collectively hereinafter called the "Principal") and the additional undersigned persons and/or entities N/A (individually and collectively, together with the Principal, hereinafter called the "Indemnitors"). The Indemnitors, jointly and severally, hereby agree to assume the obligations of Indemnitors, as noted in this Agreement, with respect to any Bonds (as defined herein) issued before or after the date of this Agreement by the Surety (as defined herein).

**WITNESSETH**

**WHEREAS** at the request of any one or more of the Indemnitors, and with the express understanding that this Agreement of Indemnity be given, the Surety has heretofore or has presently been requested to and/or has executed or has arranged or procured to be executed and/or, from time to time hereafter, may be requested to and may in its sole discretion execute, arrange for the execution of, or procure to be executed Bonds on behalf of any one or more of the Indemnitors; and

**WHEREAS** the Indemnitors hereby affirm that they have a substantial, material and beneficial interest in obtaining Bonds from or through the Surety or in the Surety refraining from canceling the Bonds.

**NOW THEREFORE**, as an inducement to the Surety to execute, procure, renew, continue, forebear from canceling, substitute or amend Bonds on behalf of any one or more of the Indemnitors, and in consideration of the premises set forth herein, and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged, and intending to be legally bound hereby, the Indemnitors, for themselves, their heirs, executors, administrators, receivers, successors and assigns, jointly and severally hereby covenant, agree and bind themselves to the Surety as follows:

**DEFINITIONS**

In addition to the capitalized terms defined elsewhere in this Agreement, the following terms, when utilized in this Agreement, unless the context otherwise requires, will have the meanings listed below, which meanings shall be equally applicable to both the singular and plural forms of such terms:

> **"Surety"** shall mean any one or more, individually and collectively, of: The Hanover Insurance Company and/or its subsidiaries, including Citizens Insurance Company of America and Massachusetts Bay Insurance Company, or any combination of the aforesaid companies, and/or any person or company joining with any of the aforesaid companies in executing, or procured by any of the aforesaid companies to execute any bond, undertakings or obligations, together with their successors and assigns, as the case may be.

> **"Bond or Bonds"** shall mean any surety bond, undertaking, recognizance, instrument of guarantee or other surety obligation, whether issued in the name(s) of any Indemnitors solely or as co-venturers with others, issued before or after the date of this Agreement by Surety.

1. **Premiums**: The Indemnitors will promptly pay or cause to be paid promptly on demand all premiums costs and charges of the Surety for any Bonds issued by the Surety until the Indemnitors have delivered evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

2. **Indemnity**: The Indemnitors shall exonerate, indemnify, keep indemnified and hold harmless the Surety from and against any and all liability, demands, losses, fees, costs and expenses of whatsoever kind or nature (including, but not limited to pre and post-judgment interest, court costs, consultant and counsel fees and expenses) which the Surety may pay, sustain or incur by reason of or in any manner as a consequence of any one or more of the following:

   > a)  being requested to execute or procure any Bonds;
   > b)  having executed or procured the execution of any Bonds;

Page 1 of 6

The Hanover Insurance Company
General Agreement of Indemnity

   c) the Indemnitors' failure to perform or comply with any other agreement with the Surety;

   d) the Indemnitors providing materially false or misleading information to the Surety;

   e) enforcing any of the covenants of this Agreement or any other agreement between the Indemnitors and the Surety;

   f) the Surety's cost of investigation of any claim, demand, suit, notice or circumstance which may give rise to liability on the part of the Surety in connection with any Bonds, this Agreement or any other agreement between the Indemnitors and the Surety; or

   g) in defending any suit, action, mediation, arbitration or any other proceedings to obtain release from liability, whether the Surety, in its sole and absolute discretion, elects to employ its own attorneys or permits the Indemnitors to defend the Surety and whether the Surety, in its sole and absolute discretion, elects to make a compromise settlement of a contested liability in connection with any Bonds.

3. **Payment**: Payment shall be made by the Indemnitors to the Surety, immediately upon demand by the Surety, in the amount of any claimed or feared liability, whether such liability is contingent or noncontingent, disputed or undisputed, and/or whether or not the Surety shall have established a reserve or made any payments therefor. Such payment to the Surety shall be: (a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand or suit, together with such additional amount the Surety, in its sole and absolute discretion, deems sufficient to indemnify and hold it harmless from and against such claim, demand or suit, including any cost, interest or expense in connection therewith; or (b) if the amount asserted as a claim, demand or suit is an unascertainable or unliquidated amount, or if no claim has yet been asserted but Surety fears that a claim may subsequently be asserted or a loss or expense may be incurred by it as a result of its execution of any Bonds, the amount the Surety, in its sole and absolute discretion, deems sufficient to indemnify and hold it harmless from and against any loss, cost, interest and expense. The Surety shall have the right to hold such funds as collateral without any obligation to earn interest on the collateral for the Indemnitors until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all Bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees or any other expense. The Surety shall have the exclusive right to adjust, settle, or compromise any claims, demand, suit or any other proceeding arising out of any Bonds against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors.

Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, upon demand, the sum demanded by Surety as payment shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of Indemnitors under this Agreement, including but not limited to the obligation to pay to Surety the sum demanded, to the end that the Surety shall have the right to hold the sum demanded by it hereunder until such time as the liability of the Surety as a result of issuing any Bonds on behalf of Indemnitors shall have been determined or settled in accordance with the terms hereof.

In the event of a payment by the Surety, the Indemnitors agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it about the matters herein contemplated by this Agreement plus pre and post judgment interest. **The pre-judgment rate of interest payable by the Indemnitors to the Surety under this Indemnity Agreement is a commercial variable rate of interest** which will initially be calculated on the date the first payment is made by the Surety and will automatically be adjusted every month thereafter until the Surety has been repaid in full, with the first adjustment occurring on the 30th day after the first payment is made by the Surety (in the event the adjustment date would fall on a weekend or holiday, the date shall be adjusted on the next business day) (every day on which a rate adjustment is made is referred to in this Indemnity Agreement as an "Adjustment Date"). On the initial date of the first payment by the Surety and each Adjustment Date thereafter, the commercial interest rate payable for the next 30 day period will equal to the **U.S. Prime Rate (as published in the Wall Street Journal) plus a four percent premium** for the applicable period. The interest rate will change on each Adjustment Date to reflect changes in the U.S. Prime Rate without any notice to the Indemnitors. Post judgment interest shall apply to any amount due to the Surety at the maximum allowable legal rate of interest in the subject jurisdiction. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable). In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety, or any voucher or vouchers, invoices or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment, and the extent of the liability of the Indemnitors to the Surety, and, in the absence of actual fraud or bad faith amounting to dishonesty or malicious conduct, shall be final, conclusive and binding upon the Indemnitors in any claim, suit or other proceeding by the Surety to recover the amount of such payments pursuant to this Agreement or otherwise.

The Hanover Insurance Company
General Agreement of Indemnity

4. **Notice of Claims:** If the Indemnitors become aware of any claim, demand, notice of claim or proceeding which may result in any liability to the Surety under any Bonds, the Indemnitors shall notify the Surety, in writing, of the nature, substance and amount of such claim within five (5) days of the first date upon which the Indemnitors become aware of the existence of such a claim or demand. In addition to such notice, the Indemnitors shall keep Surety apprised of any material developments relating to such claim or demand, and the Indemnitors shall furnish Surety with any additional information which the Surety may reasonably request relating to such claim or demand.

5. **Books and Records:** The Surety, or its designated agents, shall have full and free access to the Indemnitors' books and records at any and all reasonable times until the liability of the Surety under any Bonds is completely terminated and the claims of the Surety against any Indemnitors are fully satisfied. In addition, each of the Indemnitors hereby specifically authorizes any financial institution or depository in which its funds may be deposited to furnish any information requested by the Surety relating to such accounts. The Indemnitors hereby waive any privilege in any accountant's work papers and any other documents or communications that may be subject to any accountant/client privilege related to the preparation any financial statements prepared by their accountant(s) and further agree to provide any additional releases, requests, waivers or any other documents required in order to allow the Surety access to the requested information.

6. **Decline Execution:** The Surety may, in its sole and absolute discretion, decline to execute any bond without impairing the validity of this Agreement, and the Indemnitors hereby waive any and all claims against the Surety due to its refusal or failure to so execute.

7. **Set offs:** The Surety, in its sole and absolute discretion, may reduce the amount of the Indemnitors' liability to the Surety under this Agreement by applying as a set off any monies due the Indemnitors by the Surety as a result of any claim any of the Indemnitors may have against the Surety arising out of any bonds issued by the Surety on behalf of third parties or otherwise.

8. **Waiver of Notice of Bonds and Liabilities:** The Indemnitors have relied upon their own due diligence in making their own independent appraisal of the business and financial condition of Principal and other Indemnitors in executing this Agreement and agree to keep themselves fully informed as to the business and financial affairs of each other Principal and Indemnitors so that each of them are aware of the risks and hazards of continuing as an Indemnitor. The Indemnitors waive notice from the Surety of any act, fact, or information coming to the notice or knowledge of the Surety concerning their rights or liabilities under any Bonds executed by the Surety on behalf of Indemnitors, or any one or more of them, or the rights or liabilities of the Indemnitors, whether the Surety has such knowledge or notice before or after the execution of this Agreement.

9. **Changes:** The Surety, in its sole and absolute discretion, may agree or refuse to agree to any alteration, amendment, change, modification, limitation, or extension of any Bonds, and any renewal or other obligation in place or in lieu thereof, or of any contract secured by any Bond, and in any such case the Indemnitors shall be liable to the Surety as fully and to the same extent on account of any such altered, amended, changed, modified, limited or extended Bond or renewal or substitution thereof, or contract, whenever and as often as made, even though such action does or might substantially increase the liability of the Indemnitors.

10. **Other Sureties:** In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure for the benefit of such other sureties, co-sureties and reinsuring sureties, provided, however, that the Surety is and shall be conclusively presumed to be a real party in interest under this Agreement to the full extent of any and all liability, loss, cost or expense incurred in connection with, related to or arising out of any Bonds regardless of whether such liability or loss, cost or expense may involve a co-surety or reinsurer, or the like, and regardless of whether a co-surety or reinsurer, or the like, may bear some or all of such liability or loss, cost or expense, provided that Indemnitors may request as a condition to such presumption that Surety provide reasonable assurance that Indemnitors shall not be subject to redundant liability under this Agreement.

11. **Remedies and Suits:** No remedy conferred upon or reserved to the Surety by this Agreement is intended to be exclusive of any other remedy or remedies, and each and every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Agreement to the Surety shall be concurrent and may be pursued separately, successively or together against any Indemnitors, or any one or more of them; and every right, power and remedy given by this Agreement to the Surety may be exercised from time to time as often as may be deemed expedient by the Surety in its sole and absolute discretion. Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

The Hanover Insurance Company
General Agreement of Indemnity

12. **Other Indemnity:**  The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have heretofore or may hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity or collateral with the execution or procurement of any Bonds from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity, or collateral, shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa.  The execution of any subsequent agreements of indemnity shall not be construed as a novation and this Agreement may only be terminated as provided herein.  In addition, the liability of the Indemnitors under this Agreement shall not be affected by the failure of the Indemnitors to sign any Bonds, nor by the failure of any Indemnitor to receive notice of the execution of any Bonds, nor by any claim that any other indemnity or security was to be obtained, nor by the release of any indemnity, nor by the return or exchange of any collateral. If any Indemnitor to this Agreement is deemed for any reason (including, but not limited to, any defect in the execution of this Agreement by any Indemnitor) not bound thereby, the Agreement shall still be binding upon each and every other Indemnitor.

13. **Waiver of Right of Indemnity, Subrogation and Contribution:** The Principal and Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety have been first satisfied in full.  Further, Indemnitors shall not waive any claim or right of indemnity, subrogation or contribution with regard to any third party, pursuant to any contract, insurance policy or settlement, or otherwise, without the prior written consent of the Surety.

14. **Severability:**  If any provision or provisions of this Agreement is deemed void or unenforceable under the law of any jurisdiction governing its construction, the remainder of this Agreement shall not be deemed void or unenforceable thereby, but shall continue in effect and be enforced as though the void or unenforceable provisions are omitted.

15. **Construction:**  This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement, and is made and entered into as a result of negotiations, in a free and active market in which Indemnitors have and have had alternatives.  This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety.

16. **Forum, Venue and Jurisdiction:**   As to any legal action or proceeding related to this Agreement, the Indemnitors hereby submit themselves to personal jurisdiction in any and all jurisdictions in which (a) the Surety may sustain or pay any loss for which Indemnitors may be liable hereunder; (b) the Surety may be sued or be subject to suit or arbitration as a consequence of having issued any Bond; and/or (c) any assets of any Indemnitors may be located.  Indemnitors irrevocably consent to exclusive jurisdiction and venue in such court as may be selected by Surety, in its sole and absolute discretion, among the alternative jurisdictions to which Indemnitors have consented to submit themselves to personal jurisdiction as set forth above and hereby waive any and all rights to object to such venue and jurisdiction based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

17. **Indemnitors' Beneficial Interest:**  This Agreement applies to Bonds written by the Surety at the request of or on behalf of the Principal, the Indemnitors, and any of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates have an interest or participation, whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

18. **Confidential treatment of information:** The information provided to the Surety shall be treated as confidential and protected in accordance with the Hanover Privacy Policy which is available for inspection at http://www.hanover.com/thg/privacy/index.htm.

19. **Consent to Use of Credit Reports for Commercial Purposes:**  The Indemnitors hereby acknowledge and consent to the use of their individual consumer credit reports by the Surety for commercial purposes. The Surety's use of the information will be in connection with the Surety's assessment of the credit or prepayment risks associated with the Bonds. The Indemnitors acknowledge that the Surety has a legitimate business need for ongoing access to the credit information in connection with its business, that each transaction for surety credit will be initiated by the Indemnitors, and that the Surety may in its sole and absolute discretion decide to review the Indemnitors' financial condition on an ongoing basis to determine whether the Indemnitors satisfy the underwriting criteria of the Surety.

3170419 3

The Hanover Insurance Company
General Agreement of Indemnity

20. **Amendments:**   This Agreement may not be changed or modified orally. No change or modification shall be effective unless agreed to in writing by a duly authorized officer of the Surety as an amendment hereto.

21. **Termination:**   This Agreement may be terminated prospectively, but not retroactively, as to any Indemnitors upon thirty (30) days' written notice sent by registered or certified mail to the Surety at its primary office location at The Hanover Insurance Company, Attention: Bond Department, 440 Lincoln Street, Worcester, Massachusetts, 01653, but any such notice of termination shall not operate to modify, bar, limit, affect, reduce, or discharge the obligations of such Indemnitors under this Agreement or otherwise as to the Bonds that may have been executed prior to the effective date of such termination or with respect to any Bonds executed after the effective date of such termination, provided the Surety had become obligated to execute or renew such Bonds prior to the effective date of termination.  Such notice of termination shall operate only with respect to the respective Indemnitors upon whose behalf such notice shall have been given.

22. **Counterparts:**   This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement. All counterparts taken together shall constitute a single Agreement.

23. **Entire Agreement:**  This Agreement constitutes the entire agreement among the Parties and there are no other understandings or agreements, conditions or qualifications relative to this Agreement which are not fully expressed in this Agreement.  Indemnitors acknowledge and warrant that no oral representations have been made to them by or on behalf of the Surety to induce them to sign this agreement.

24. _____

REMAINDER OF PAGE INTENTIONALLY BLANK

3170419.3

The Hanover Insurance Company
General Agreement of Indemnity

**IN WITNESS WHEREOF**, the Principal and Indemnitors, individually or through their duly authorized officers, officials or representatives, have hereunder set their hands and seals, as of the date referenced in the introductory paragraph of this Agreement.

**LLC (LIMITED LIABILITY COMPANY)** (only a general partner, managing member or member can sign)

ATTEST

Fieldwood Energy, LLC

By: _____ (Seal)

| | |
|---|---|
| Name: | Michael T. Dane |
| Title: | Chief Financial Officer |
| Address: | 2000 W. Sam Houston Pkwy S, Suite 200 |
| | Houston, TX 77042 |
| TID/EIN: | 46-1326778 |

(STATE)  Texas

(COUNTY), SS.  Harris

On this 2nd day of April in the year 2018, before me, the undersigned, personally appeared Michael T. Dane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual, whose name as the Chief Financial Officer of the limited liability company known as Fieldwood Energy, LLC, is subscribed to the foregoing instrument and acknowledged to me that, being fully informed of the contents of this instrument, he/she has executed the same in his/her capacity as such Chief Financial Officer and with full authority, voluntarily for and as the act of said limited liability company.

[SEAL]



TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

Notary Public

Tiffany Penry
Printed Name of Notary Public

12 | 18 | 2018
Commission Expiration Date

3170419.3



# GENERAL AGREEMENT OF INDEMNITY

THIS AGREEMENT is made by the Undersigned in favor of Surety for the purpose of indemnifying it from all loss and expense in connection with any Bonds for which Surety now is or hereafter becomes surety for any of the following as Principal: <u>Fieldwood Energy, LLC,</u> or as otherwise provided in the definition of Principal below.

In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

**DEFINITIONS:** Where they appear in this agreement, the following terms shall be considered as defined in this section:

**Principal:** Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests and/or:

| | |
|---|---|
| (i) | any other entity added to this agreement as Undersigned and/or Principal by written amendment; |
| (ii) | any Principal(s)' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and/or |
| (iii) | any other entity or person for whom Surety issues a Bond in response to a request from any Principal or any of the Undersigned (including requests from their agents, brokers or producers); |

and as to all, whether they act alone or in joint venture with others not named herein.

**Bond:** Any and all bonds, undertakings or instruments of guarantee and any renewals or extensions thereof executed by Surety on behalf of Principal and issued before, on or after the date of this Agreement.

**Surety:** Any member of the Liberty Mutual Group, including but not limited to Liberty Mutual Insurance Company and any other company that is part of or added to the Liberty Mutual Group, severally not jointly. If Surety procures the execution of any Bond by other sureties, executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then those entities and their successors and assigns shall be included in this definition.

**INDEMNITY TO SURETY:** Undersigned agree to pay to Surety upon demand:

1. All loss and expense, including reasonable attorney fees, incurred by Surety by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned, or by reason of the refusal to execute any Bond;
2. An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond;
3. Any premium due for any Bond, computed according to the rates currently charged by Surety, including renewal premiums until proof satisfactory to Surety is furnished of its discharge from liability under any Bond.

With respect to claims against Surety:

1. Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any obligation with respect to which Surety has issued any Bond.
3. Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.
4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.
5. Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.
6. Undersigned authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Principal.

**GENERAL PROVISIONS:**

1. Assent by Surety to changes in any Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety.
2. Surety shall have the right to decline to execute any Bond.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration, and the right of subrogation. The security interest, trust, and other rights granted herein will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.

4.   Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

5.   The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond or Bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s), whether Surety will have made any payment or established any reserve therefor. The Undersigned acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Undersigned confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

6.   Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

7.   In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

8.   Execution by Principal or any of the Undersigned of any application for any Bond, or of any other agreement of indemnity on behalf of Principal, or the taking of indemnity of any other person by Surety with respect to any Bond of Principal, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.

9.   All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

10.  The Undersigned has relied upon its own due diligence in making its own independent appraisal of Principal *(note: when there are indemnitors other than Principal)* and its business and financial condition, will continue to be responsible for making its own independent appraisal of such matters, and has not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the undersigned Indemnitors of the financial condition or other affairs related to Principal.

11.  The Undersigned shall remain responsible to Surety under this agreement regardless of any change in the relationship of the Undersigned with the Principal.

12.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by U.S. federal law. As to all legal actions or proceedings related to this Agreement, Undersigned consent and agree to the general jurisdiction of any state or Federal court of the United States or its territories having proper subject matter jurisdiction or in which claim may be brought against Surety under any Bond, and hereby waive any claim or defense in such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**TERMINATION:**   This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Principal must:

1.   Give written notice to Surety at its home office, 2200 Renaissance Blvd., Suite 400, King of Prussia, PA 19406-2755, by certified or registered mail of such termination;

2.   State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.

After the effective date of termination, the Undersigned giving notice shall be or remain liable hereunder for Bonds executed, authorized, renewed, or extended prior to such date. Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

Dated as of this  2nd day of April , in the year 2018.

*By signing below, each individual executing this Agreement on behalf of a business entity, and each business entity executing this Agreement on behalf of another business entity, represents and warrants that he, she or it **duly authorized** to bind such entity to all of the terms and conditions of this Agreement:*

**ATTEST OR WITNESS:**

**BY:**

**Fieldwood Energy, LLC**
**T.I.N. 46-1326778**
**2000 West Sam Houston Parkway South,**
**Houston, TX 77042**

By: _____

John H. Smith
Senior Vice President – Land and Business Development

By: _____  (Seal)

Michael T. Dane
Senior Vice President and Chief Financial Officer

- 2/3 -

**NOTARY ACKNOWLEDGMENT**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _Texas_ )

County of _Harris_ )

On _4/2/18_ (Date) before me, _Tiffany Penry_ (Notary), personally appeared _Michael T. Dane_ (Signor), who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

Signature _Tiffany Penry_ (Seal)

Notary Public residing at: _7358 Regency Square Ct. Houston, TX 77036_
My commission expires: _12/18/2018_

General Agreement of Indemnity
Rev. 12/16

# TRAVELERS↻ General Contract of Indemnity

We, the undersigned ("Indemnitors"), enter into this General Contract of Indemnity ("Agreement") in favor of Company.  As an inducement to Company and in consideration of Company's execution or procurement of, and/or refraining from canceling, Bonds, and for other good and valuable consideration, Indemnitors jointly and severally agree as follows:

**1.**   For purposes of this Agreement, the following definitions apply, which definitions shall be equally applicable to both the singular and plural forms of such terms:

**Bond** - Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Company has executed or procured or otherwise has liability for, and which have been issued (whether before, on, or after the date of this Agreement) for or on behalf of any one or more of the following: (a) any Indemnitor; (b) any present or future affiliate or Subsidiary of any Indemnitor; (c) any present or future joint venture, consortium, or other form of common enterprise in which one or more of the persons or entities identified in sub-paragraph (a) or (b) above have an interest; (d) any other person or entity at the request of one or more of the persons or entities identified in sub-paragraph (a) or (b); or (e) any successor or assign of any entity described in (a) through (d) above.  For the purposes of this definition, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions; and "Subsidiary" shall mean any entity that any Indemnitor has direct or indirect control over or in which any Indemnitor has a direct or indirect ownership interest of 50% or more.

**Company** - Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies, and/or any of the aforementioned entities' successors or assigns.

**Loss** - All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond, including any extra-contractual claim where Company has denied a claim; (c) obtaining the release of any Bond; (d) recovering or attempting to recover property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; or (f) defending any claim arising out of or relating to any action taken by Company under this Agreement.

**2.**   Indemnitors shall pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

**3.**   Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of Company, or other evidence of Loss, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss.  Amounts due to Company shall be payable upon demand.  Interest shall accrue on such amounts due Company from the date Company incurred Loss at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

**4.**   Company shall have the right, in its sole discretion, to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

**5.**   Indemnitors shall upon request of Company promptly procure the written release of Company from any and all Bonds. If Indemnitors fail to procure such release, the Indemnitors shall immediately provide the Company an irrevocable letter of credit acceptable to Company in the aggregate amount of all unreleased Bonds. Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest these requirements. Indemnitors stipulate and agree that Company will suffer immediate irreparable harm and will not have an adequate remedy at law if Indemnitors fail to perform the obligations of this paragraph such that Company is entitled to specific performance of such obligations.

**6.**   Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be used by Company to pay, or be held by Company as collateral security against, any Loss or unpaid premium on any Bond. If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received evidence of discharge in form and substance satisfactory to Company with respect to each and every Bond. Company shall have no duty to invest or provide interest on collateral or letter of credit proceeds. Company shall incur no liability on account of, and Indemnitors need not be notified of, Company's taking, failure to take, or release of collateral, letters of credit, or any other security.

**7.**   Company has the right to decline to execute (a) any Bond, including final Bonds where Company provided a bid Bond; (b) any Bond rider or consent authorizing any change to any Bond; and/or (c) any other consent of surety.  Company also has the right to cancel or terminate any Bonds pursuant to their terms, to the extent allowed by law.

**8.**   An Indemnitor may terminate participation in this Agreement only by sending Company written notice of the same, which notice shall be addressed to Travelers Bond & Specialty Insurance, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183.  The termination shall take effect thirty (30) days after Company receives such notice ("Termination Date"). The notice shall not relieve the terminating Indemnitor from its obligations for (i) any Bond executed prior to the Termination Date; or (ii) any Bond executed after the Termination Date which is a renewal or extension of a Bond issued prior to the Termination Date.

**9.**   If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

**10.**   Indemnitors have a substantial, material and beneficial interest: (a) in the obtaining of Bonds by any Indemnitor; and (b) in the transaction(s) for which any Indemnitor has applied or will apply to Company for Bonds.

WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. THIS AGREEMENT IS IN ADDITION TO AND NOT IN LIEU OF ANY OTHER AGREEMENTS AND OBLIGATIONS UNDERTAKEN IN FAVOR OF COMPANY, WHETHER NOW EXISTING OR ENTERED INTO HEREAFTER. IN TESTIMONY HEREOF, WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.

---

**If Indemnitor is an entity, sign below:**

---

Instructions:  Two authorized officials should sign on behalf of each entity (except as otherwise indicated below) and all signatures must be notarized and dated.  The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.  If the entity is:  1) a corporation, the secretary (if one exists) and another authorized officer should sign on behalf of the corporation; 2) a limited liability company, the manager(s) (if any) or member(s) should sign on behalf of the LLC; 3) a partnership, the partner(s) should sign on behalf of the partnership; 4) a trust, the trustee(s) should sign on behalf of the trust; or 5) any other type of entity, including governmental entities, any two authorized officials.  If the Indemnitor is a sole officer corporation, single member LLC, or any other entity where only one individual is authorized to sign on behalf of the entity, only one signature is required.  Please provide the entity's federal tax identification number on the line provided.  Notwithstanding any of the foregoing, failure to complete this Agreement in accordance with these instructions shall in no event affect the validity of this Agreement.

Each of the undersigned hereby affirms to Company as follows:  I am a duly authorized official of the entity on whose behalf I am executing this Agreement.  In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions, and/or partnership, operating or limited liability agreements of such entity.  Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that (a) such entity has the power and authority to enter into, execute, deliver and perform this Agreement and to carry out the obligations stated herein, (b) the individuals executing this Agreement on behalf of such entity are duly authorized to do so, and that (x) the execution, delivery and performance of this Agreement by Indemnitors; (y) the compliance with the terms and provisions hereof; and (z) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of aforementioned applicable documents and instruments, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against any Indemnitor(s), or any other agreement binding upon any Indemnitor(s), or constitute a default thereunder.

---

Fieldwood Energy LLC
Indemnitor – Corporation, Limited Liability Company, Partnership, Trust, or Other (circle one)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

**Michael T. Dane, Senior Vice President and Chief Financial Officer**
(Print or Type Name and Title)                    (Date)

**2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042**
(Address)

46-1326778
(Federal Tax ID)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

**John H. Smith, Senior Vice President – Land & Business Development**
(Print or Type Name and Title)                    (Date)

**Delaware**
(State of Incorporation / Formation)

ACKNOWLEDGEMENT
State of <u>Texas</u>                    County of <u>Harris</u>

On this <u>2</u> day of <u>April</u>, <u>2018</u>, before me personally appeared <u>Michael T. Dane</u>, known or proven to me to be the **Senior Vice President and Chief Financial Officer** of the entity executing the foregoing instrument ("Entity"), and <u>John H. Smith</u>, known or proven to me to be the **Senior Vice President – Land & Business Development** of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of Entity for the uses and purposes therein mentioned and they acknowledged that they executed said instrument by authority of Entity.  IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public          (Signature)

Tiffany Penry
Notary Public          (Print or Type Name)

Notary Public residing at:  <u>7358 Regency Square Court</u>
<u>Houston, Texas 77036</u>

Commission expires:  <u>12/18/2018</u>

**TIFFANY PENRY**
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

---

**Fieldwood Energy Inc.**

Indemnitor – Corporation, Limited Liability Company, Partnership,
Trust, or Other (circle one)

By _____  4/2/2018 (Seal)
(Signature of Authorized Official)

**Michael T. Dane, Senior Vice President and Chief Financial Officer**

(Print or Type Name and Title)                                    (Date)

**2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042**
(Address)

46-1694991
(Federal Tax ID)

By _____  4/2/2018 (Seal)
(Signature of Authorized Official)

**John H. Smith, Senior Vice President – Land & Business Development**

(Print or Type Name and Title)                                    (Date)

**Delaware**
(State of Incorporation / Formation)

ACKNOWLEDGEMENT

State of <u>Texas</u>                    County of <u>Harris</u>

On this <u>2</u> day of <u>April</u>, <u>2018</u>, before me personally appeared <u>Michael T. Dane</u>, known or proven to me to be the
**Senior Vice President and Chief Financial Officer** of the entity executing the foregoing instrument ("Entity"), and <u>John H. Smith</u>, known or proven to me
to be the **Senior Vice President – Land & Business Development** of the Entity, and they acknowledged said instrument to be the free and voluntary act and
deed of Entity for the uses and purposes therein mentioned and they acknowledged that they executed said instrument by authority of Entity.   IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public _____ (Signature)

Tiffany Penry

Notary Public _____ (Print or Type Name)

Notary Public residing at:    <u>7358 Regency Square Court</u>
                              <u>Houston, Texas 77036</u>

Commission expires:  <u>12/18/2018</u>

```
TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018
```

---

## If Indemnitor is an individual, sign below:

Instructions: Signatures of individual Indemnitors must be notarized and dated with names printed or typed on the line provided.  Individual Indemnitors
must include their residential address and Social Security Number. Notwithstanding any of the foregoing, failure to complete this Agreement in
accordance with these instructions shall in no event affect the validity of this Agreement.

Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from
financial institutions.  To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested
by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

Indemnitor – Individual          (Signature)          (Date)              Address

Indemnitor – Individual          (Print or Type Name)                     SS#

ACKNOWLEDGEMENT
State of _____          County of _____

On this ____ day of _____, _____, before me personally appeared _____ of the address shown above, known or proven to
me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public _____ (signature)

Notary Public _____ (print or type)

Notary Public residing at: _____

Commission expires: _____



**XL CATLIN**

## INDEMNITY AGREEMENT REVIEW & SAFEKEEPING
(To be completed when the Company receives a new General Agreement of Indemnity)

| | |
|---|---|
| PRINCIPAL / ACCOUNT: | **Fieldwood Energy, LLC** |

| | |
|---|---|
| CITY, STATE:<br>**Exton, PA** | GIA #: Click here to enter text. |

| |
|---|
| PURPOSE (New account, new indemnitor, etc.)   **New Account** |

| | | | |
|---|---|---|---|
| CPO Received: | **4/5/2018** | DATE: | **4/16/2018** |

INSTRUCTIONS FOR COMPLETION:

- The original Agreement of Indemnity and this Review form should be sent to the responsible CPO Staff who will insure a copy is placed in Documentum.
- The original Agreement of Indemnity and completed Review form will then be logged and stored per Company policy and a copy of the completed Review form.

COMMENTS: _____

_____

_____

_____



**General Agreement of Indemnity**

This Agreement made this 2nd day of April, 2018 by:

**Fieldwood Energy, LLC. (Address) 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042    (Tax ID) 46-1326778**

hereinafter called INDEMNITOR, in favor of XL Specialty Insurance Company, XL Reinsurance America Inc., and their affiliated, associated and subsidiary companies, their successors and assigns, hereinafter called SURETY, for the purpose of indemnifying the SURETY in connection with any bonds previously or hereafter executed or procured for on or behalf of any of the INDEMNITOR.

**Whereas**, SURETY may from time to time be requested to execute various Bonds or procure the execution of various Bonds for one or more of the INDEMNITOR or for subsidiaries, partnerships, associations or affiliates, previously owned or now owned or controlled or hereafter acquired or formed by one or more of the INDEMNITORS.

Now, therefore, in consideration of SURETY heretofore or hereafter executing, providing or procuring Bonds and as an inducement to such execution by SURETY, the INDEMNITOR and the heirs, personal representatives, successors and assigns thereof, jointly and severally, agree:

1. That this Agreement binds all INDEMNITOR(S) and the heirs, personal representatives, successors and assigns thereof, jointly and severally, to SURETY in connection with all Bonds previously or hereafter provided or procured by SURETY on behalf of any INDEMNITOR or any subsidiary, division, associated or affiliated company of any INDEMNITOR now owned or controlled or hereafter acquired or formed by any one or more of INDEMNITOR in any penal sum in favor of any obligee.

2. To pay to the SURETY such premium as the SURETY shall charge upon execution of the Bond(s) and annually in advance thereafter until such time as the SURETY's liability under the Bond(s) is terminated.

3. That the SURETY may, in its sole discretion, decline to execute, provide or procure any Bond(s) applied for and may, in its sole discretion, cancel or terminate any Bond(s) executed by the SURETY without incurring any liability whatsoever to the INDEMNITOR.

4. To exonerate, indemnify, hold harmless and keep indemnified the SURETY from and against all demands, claims, losses, costs, liabilities, damages, and expenses including, without limitation, attorney's fees, expert's fees, interest, court costs, investigative expenses, document reproduction and storage charges which the SURETY may sustain or incur by reason of the issuance of the Bond(s) or INDEMNITOR's failure to perform or comply with any of the provisions of this Agreement or SURETY attempting to obtain a release of or evidence of termination under such Bond(s).

5. That if the SURETY (a) receives any claim under any Bond or (b) establishes, in its sole discretion, any reserve, the INDEMNITOR(S) will provide the SURETY or its designees free access to all records of the INDEMNITOR(S) (including, but not limited to, books, papers, records, documents, accounts, and electronically stored information), for the purpose of examining and copying, until the SURETY has been provided satisfactory evidence, in its sole but reasonable discretion, that it has been fully released of liability under all Bonds. The INDEMNITOR(S) expressly authorize the SURETY to access their credit reports and financial records, including, but not limited to, account numbers, account balances, and account activity from financial institutions and other third parties. The INDEMNITOR(S) hereby authorize such financial institutions and other third parties to disclose all such information to the SURETY as the SURETY may request.

6. In order to exonerate and indemnify the SURETY to place the SURETY in immediately available funds when requested to do so in order to meet and satisfy any claim, reserve established by SURETY or demand made upon the SURETY under the Bond(s) (whether or not such claims or demands are contested by INDEMNITOR) before the SURETY shall be required to make payment under the Bond(s) INDEMNITOR acknowledge that failure of INDEMNITOR to deposit funds with SURETY in accordance with this section in the amounts and at the time demanded by SURETY shall cause irreparable harm for which SURETY has no adequate remedy at law. INDEMNITOR agree that SURETY shall be entitled to injunctive relief for specific performance of INDEMNITOR'S obligation to deposit funds with SURETY in accordance with this section.

7. To furnish the SURETY with satisfactory and conclusive evidence that there is no further liability on the Bond(s).

8. That the SURETY shall have the exclusive right in its sole discretion to adjust, defend, prosecute, settle, compromise or appeal any claim or litigation under such Bond(s) and that the voucher or other evidence showing payment by the SURETY

in good faith by reason of such Bond(s) or any renewal, extension or substitution thereof shall be conclusive and in any event prima facie evidence of such payment and the propriety thereof and the liability of the INDEMNITOR therefore to the SURETY.

9. That if the SURETY, in its sole discretion, determines one or more of the following: (a) the INDEMNITOR(S) financial capacity has been, or may be, impaired; or (b) there has been or may be some other change or event that adversely affects the SURETY's risk under the Bonds, then the INDEMNITOR(S) shall, within thirty (30) days of receipt of the SURETY's written demand, procure the full and complete release of the Bond (s) by providing competent written evidence of release satisfactory to the SURETY, in its sole discretion. If the INDEMNITOR(S) fail to provide the aforementioned release, the INDEMNITOR(S) shall, within an additional seven (7) days, provide the SURETY with collateral acceptable to the SURETY in the amount of 100% of all unreleased exposure under the Bond (s). SURETY, in its sole discretion, will determine the amount of the unreleased exposure under the Bond(s). All collateral held by the SURETY may be used in the SURETY's sole discretion to reimburse itself or to pay any and all Losses sustained or incurred by reason of or in connection with the furnishing of any or all Bonds or the enforcement of this Agreement. The INDEMNITOR(S) waive, to the fullest extent permitted by law, each and every right that they may have to contest any requirement to provide collateral under this Agreement, including but not limited to this paragraph and paragraph six hereof, (individually and collectively, the "Collateral Requirement"). The INDEMNITOR(S) stipulate and agree that the SURETY will not have an adequate remedy at law should the INDEMNITOR(S) fail to perform the Collateral Requirement and further agree as a result that the SURETY is entitled to specific performance of the Collateral Requirement. The SURETY's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which may be enforced at any time at the SURETY'S sole discretion. The SURETY will return any unused proceeds of the collateral only upon the full release of all obligations under the Bonds and this Agreement, demonstrated by competent written evidence of release satisfactory to the SURETY, in its sole discretion. The INDEMNITOR(S) further agree that the Collateral Requirement shall not limit or be deemed a waiver of the SURETY'S other rights (which it may exercise in its sole discretion) under this Agreement or otherwise to cancel Bonds, to demand collateral, or to take any other actions the SURETY deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bonds written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the SURETY's enforcement of the Collateral Requirement. Collateral to be provided to the SURETY shall be sent to: 505 Eagleview Blvd., Suite 100, PO Box 636, Exton, PA 19341-0636, Attn: Collateral Manager.

10. In order to secure INDEMNITOR'S obligations to SURETY under this AGREEMENT, and any other indebtedness and liabilities of INDEMNITOR to SURETY, whether heretofore or hereafter incurred, INDEMNITOR hereby assigns, transfers and conveys to SURETY all right, title, interest and estate of INDEMNITOR in and to all property, whether tangible or intangible, wherever situated, now owned or hereafter acquired, including but not limited to: (a) all rights of INDEMNITOR in all contracts referred to in the Bond(s), or secured by the Bond(s) and all money or property due or to become due INDEMNITOR arising out of or in any way relating to contracts performed by INDEMNITOR, whether secured by Bond(s) executed by SURETY or not, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof; (b) all rights of INDEMNITOR in all contracts, including, but not limited to, unbonded contracts and/or contracts bonded by another surety, and all money or property due or to become due INDEMNITOR arising out of or in any way relating to such contracts, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof; (c) all the right, title and interest of INDEMNITOR in and to all machinery, equipment, vehicles, rolling stock, materials, inventory, leaseholds, fuel, plant, tools, furniture, goods, and personal and fixture property; (d) all money, cash, cash equivalents, bank accounts, deposit accounts (checking or savings), certificates of deposit, securities, bonds, negotiable instruments, instruments (including promissory notes), letter of credit rights, and all other investment property; (e) all subcontracts and purchase orders on projects in connection with which INDEMNITOR have entered contracts secured by Bond(s) executed by SURETY and all surety Bond(s), undertakings or guarantees which secure said subcontracts or purchase orders; (f) all materials purchased for all contracts referred to in the Bond(s), or secured by the Bond(s), including material which is in the process of manufacture, in storage at any storage facility, or in transit to any project site; (g) all licenses, patents, copyrights and trade secrets; (h) all claims, causes of action, actions or demands and the proceeds thereof which INDEMNITOR may have against any subcontractor, vendor, materialman, owner, architect, engineer, accountant or others, whether arising out of contracts secured by Bond(s) executed by SURETY or not; (i) all money, claims or causes of actions due, claimed or receivable on insurance policies including life insurance proceeds, builder risk policies, fire policies and casualty policies; (j) all warehouse receipts, bills of lading, general intangibles and farm products; (k) all tax refunds or claims for tax refunds; (l) all limited partnership and general partnership interests. This ASSIGNMENT shall be effective as of the date of this AGREEMENT but shall be enforceable only in the event of the occurrence of an event of default. INDEMNITOR hereby authorizes SURETY, at its option, to prosecute or enforce said assigned rights in the name of SURETY or in that of INDEMNITOR and to endorse and to collect in the name of INDEMNITOR or payee any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights. SURETY'S exercise of any of its rights as a secured creditor under this AGREEMENT shall not be a waiver of any of SURETY'S legal or equitable rights or remedies, including SURETY'S rights of subrogation.

11. This Agreement shall constitute a Security Agreement to SURETY and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, but the filing or recording of this Agreement shall be solely at the option of SURETY and the failure to do so shall not release or impair any of the obligations of the INDEMNITOR under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of SURETY under this Agreement or otherwise.

12. Further, the INDEMNITOR also agree if SURETY procures the execution of such Bonds or undertakings by other companies, or executes such bonds with co-sureties, or reinsures any portion of such Bonds with reinsuring companies, and it is hereby authorized to do so, then the terms and conditions of this Agreement shall apply and operate for the benefit of such companies, co-sureties or reinsuring companies, as their respective interests may appear.

13. Whenever used in this Agreement, the term "Bond" shall include any and all bonds, undertakings, contracts of suretyship, guaranty or indemnity and any renewals or extensions thereof executed by SURETY.

14. This Agreement may be terminated as to any INDEMNITOR upon twenty days written notice sent by registered mail to the SURETY at its home office at XL Specialty Insurance Company, 505 Eagleview Boulevard, Suite 100, Exton, PA, 19341, but any such notice of termination shall not operate to modify, release, bar, or discharge any INDEMNITOR as to the Bonds that may have been theretofore executed or procured and shall not affect in any manner the liability of any INDEMNITOR as do not give the notice required herein.

15. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

16. This Agreement shall be governed by the laws of the State of New Jersey, without resort to or application of any conflicts of law doctrine or principles of law.

Each of the individuals executing for the INDEMNITOR hereby affirms to the SURETY that he or she is a secretary or another duly authorized officer of the corporation that enters into this Agreement as an INDEMNITOR. In such capacity, such individual is familiar with all of the documents that set forth and establish the rights that govern the affairs, power, and authority of such company, including its certificate or articles of incorporation, bylaws, and resolutions. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the INDEMNITOR hereby affirms that such corporation (i) is a company duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and the execution, delivery and performance of this Agreement will not contravene any provision of any law, order or any court or other agency of government or the articles of incorporation or the bylaws or any other organizational documents of the company, (ii) has all material governmental licenses, authorizations, consents, and approvals, including all necessary permits to own its assets and carry on its business as now being conducted, (iii) is qualified to do business and is in good standing in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary and where failure so to qualify could have a material adverse effect, (iv) has the power and authority to enter into this Agreement and that the individual executing this Agreement on behalf of such company is duly authorized to do so, and (v) no authorizations, approvals or consents of, and no filings or registrations with any governmental or regulatory authority or agency or any securities and exchange are necessary for the execution, delivery or performance by the INDEMNITOR of this Agreement or for the legality, validity or enforceability thereof..

ATTEST OR WITNESS

INDEMNITOR COMPANY

Fieldwood Energy, LLC

By: John H. Smith

By: Michael T. Dane

Title: Senior Vice President, Land & Business Development

Title: Senior Vice President and Chief Financial Officer

Address: 2000 W Sam Houston Pkwy S, Suite 1200

| Houston | Texas | 77042 |
|---------|-------|-------|
| City | State | Zip Code |

LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State of _Texas_ ss.:
County of _Harris_

On this _2_ day of _April_, 20_18_, before me personally comes _Michael T. Dane_ to me known, who being by me duly sworn, deposes and says that he resides in the City of _Houston_ that he is the _SVP & Chief Financial Officer_ of the _Fieldwood Energy LLC_, the Limited Liability Company described in and which executed the foregoing instrument; and that he authorized under the Article of Organization and the Operating Agreement as amended and in effect this date to execute the forgoing instrument and so bind the Limited Liability Company.

TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

Notary Public, residing at _7868 Regency Square Ct._
_Houston, Tx 77036_
Commission expires _12/18/2018_

**IMPORTANT: Attach certified copy of Resolution authorizing execution of this instrument by Corporation or Limited Liability Company member.**

General Agreement of Indemnity (08-06-2017)



**XL Insurance**
**Reinsurance**

**Indemnity Rider**

Upon execution, this Rider ("Rider") shall become part of and be incorporated into that certain General Agreement of Indemnity (the "Indemnity Agreement") executed by Fieldwood Energy, LLC on April 2, 2018, in favor of SURETY, as indemnitee.

SURETY means: XL Specialty Insurance Company, XL Reinsurance America Inc. and their affiliated, associated and subsidiary companies, their successors and assigns.

UNDERSIGNED(S) means: Fieldwood Energy, LLC, Fieldwood Energy, Inc. and any of their present or future direct or indirect subsidiaries, affiliates, divisions, operating units, heirs, personal representatives, successors and assigns.

By way of this Rider, Fieldwood Energy, Inc. is added to above referenced General Agreement of Indemnity and Paragraph 1 of the Indemnity Agreement is changed and hereby replaced with the following:

1. That this Agreement binds all UNDERSIGNED and their subsidiaries, affiliates, heirs, successors and assigns thereof, jointly and severally, to SURETY in connection with all Bonds previously or hereafter provided or procured by SURETY on behalf of any UNDERSIGNED or any subsidiary, division, associated or affiliated company of any UNDERSIGNED now owned or controlled or hereafter acquired or formed by any one or more of UNDERSIGNED in any penal sum in favor of any obligee.

And is executed on 18 day of June 18, 2019.

Each of the individuals executing for the UNDERSIGNED hereby affirms to SURETY that he or she is a secretary or another duly authorized officer of the corporation that enters into this Agreement as an UNDERSIGNED. In such capacity UNDERSIGNED is familiar with all of the documents that set forth and establish the rights that govern the affairs, power, and authority of such corporation, including its certificate or articles of incorporation, bylaws, and resolutions. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, UNDERSIGNED hereby affirms that such corporation (i) is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and the execution, delivery and performance of this Agreement will not contravene any provision of any law, order or any court or other agency of government or the articles of incorporation or the bylaws or any other organizational documents of the corporation, (ii) has all material governmental licenses, authorizations, consents, and approvals, including all necessary permits to own its assets and carry on its business as now being conducted, (iii) is qualified to do business and is in good standing in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary and where failure so to qualify could have a material adverse effect, (iv) has the power and authority to enter into this Agreement and that the individual executing this Agreement on behalf of such corporation is duly authorized to do so, and (v) no authorizations, approvals or consents of, and no filings or registrations with any governmental or regulatory authority or agency or any securities and exchange are necessary for the execution, delivery or performance by UNDERSIGNED of this Agreement or for the legality, validity or enforceability thereof.



**XL Insurance Reinsurance**

ATTEST OR WITNESS

X _____

Name: Mark R. Mozell

Title: Vice President – Risk Management

COMPANY: Fieldwood Energy, LLC

X _____

Name: Michael T. Dane

Title: Senior Vice President & Chief Financial Officer

Address: 2000 W. Sam Houston Parkway S. Suite 1200

Houston, Texas, 77042

CORPORATE ACKNOWLEDGMENT

State of _Texas_____ ss.:

County of _Harris_____

On this _20th_ day of _June_____, in the year 20_19_, before me personally comes

_Michael T. Dane_____

to me known, who being by me duly sworn, deposes and says that he resides in the City of

_Houston_____

that he is the _SrVP & CFO_____ of the _Fieldwood Energy LLC_____ the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____

(Signature of Notary Public)

My Commission _9/14/2021_

expires_____

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370

Surety Continuous Contract of Indemnity –
XLCGIA-0008 - Additional indemnitor Rider (8'03'17)

2



**X‪ᴸ‬ Insurance
Reinsurance**

ATTEST OR WITNESS

X _____

Name: Mark R. Mozell

Title: Vice President – Risk Management

COMPANY: Fieldwood Energy, Inc.

X _____

Name: Michael T. Dane

Title: Senior Vice President & Chief Financial Officer

Address: 2000 W. Sam Houston Parkway S. Suite 1200

Houston, Texas, 77042

CORPORATE ACKNOWLEDGMENT

State of _Texas_____ ss.:
County of _Harris_____
On this _20th_ day of _June_____, in the year 20 _19_, before me personally comes

_____ _Michael T. Dane_____

to me known, who being by me duly sworn, deposes and says that he resides in the City of
_Houston_____ that he is the _Sr VP & CFO_____ of the _Fieldwood Energy Inc_____ the corporation
described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the
seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of
Directors of said corporation, and that he signed his name thereto by like order.

_____ (Signature of Notary Public)
My Commission

expires _9/14/2021_

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370

**IMPORTANT:  Attach certified copy of Resolution authorizing execution of this instrument by Corporation
or Limited Liability Company member.**