**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIELDWOOD ENERGY LLC., *et al*., | Case No. 20-33948 (MI) |
| Debtors.[1] | (Jointly Administered) |

**REQUEST OF NORTH AMERICAN SPECIALTY INSURANCE
FOR CLARIFICATION OF DEBTORS' RESPONSE TO OBJECTIONS
TO CONFIRMATION OF PLAN OR TO STRIKE THAT RESPONSE**

North American Specialty Insurance ("NAS") requests the Debtors clarify their responses to NAS' objections to confirmation or, absent clarification, for the Court to strike the responses that are unresponsive [Document 1561 p. 3].

**Debtors Skirt Directly Responding to Objections Related to the Post-Confirmation
Existence of Pre-Petition Surety Bonds**

1. The Debtors refuse to say outright whether it is their position that surety bonds issued for decommissioning obligations pre-petition, naming Fieldwood Debtors as principals, exist post-confirmation. The question for which NAS sought an answer in its objections is: do the pre-petition surety bonds survive the plan and exist post-confirmation, such, that if there is a post-confirmation default of a decommissioning obligation the obligees can draw on the bonds to cure that default.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

2. One would assume the Debtors want the bonds to exist post-confirmation as they filed an adversary complaint against the Apache sureties to assure that their bonds survive in some form. This is perhaps one of the most bizarre legal maneuvers considering that the Debtors are co-obligors with the sureties on each bond and are parties to the bonds. It is not every day that a party effectively sues itself. One could consider Debtors' complaint to be admission that they are in default pre-petition on their bonds across the board.

3. Apparently contrary to the Debtors' position in the adversary proceeding that there exists a present time basis to call on the bonds, the Debtors have claimed the sureties' claims are all contingent, which should mean the Debtors are saying there are no pre-petition defaults. If there are defaults, therefore, they must occur post-confirmation. They also state the claims for indemnification are pre-petition unsecured claims that are discharged under the Plan, presumably subject to complete disallowance given Debtors' position these claims are contingent claims.

**Objection and Response to Objection**

4. The objections fail to address at all are:

> *9.    How the Plan treats surety credit remains unclear. All indications from the documents suggest the Debtors want to treat the surety bonds as cash demand instruments that are there for the benefit of the Debtors. A bond, however, secures the debt or default of the principal. Restatement of the Law, Suretyship & Guaranty § 1 (1996). The event that triggers the ability of the obligees to make demand on the bonds is a default by the principal. The Debtors are parties to the bonds, such, that if the Debtors bring a suit or demand on bonds on which they are principals, they are in effect suing themselves.*
> *10.    The uncertainty and hesitancy of the Debtors' treatment of bonds is apparent in the unclear language of the Plan and supporting documents. The Debtors in response to interrogatories from the sureties stated, "Neither the Plan nor Disclosure Statement provide that any bonds will be split, assumed, assigned or otherwise transferred." The term sheets between the Debtors and the NAS Bond obligees (Chevron and Eni) assume that the sureties will contribute to post-confirmation decommissioning costs. In responding as they did, perhaps the Debtors mean there is no transfer of the NAS Bonds because of the divisive merger. Had the sureties asked whether their bond survive the Plan perhaps they might have received a more direct answer to the interrogatory. But the Debtors are not saying whether they*

*can access in the Plan the proceeds of the surety bonds because of a pre-petition default or the post-confirmation default that is anticipated, or some other theory.[2] What the Plan and supporting documents appear to represent is that the sureties will contribute the proceeds of the bonds without recourse against the post-confirmation entities.*

*11.  NAS believes the financial projections submitted by the Debtors for decommissioning costs likely assume contribution from the sureties for those costs without the sureties having recourse to recover those costs from the post-confirmation entities created by the Plan. If that is an assumption of Debtors' projection (and the sureties continue to have recourse by operation of law) this would impact the accuracy of the projections and the feasibility of meeting the post-conformation decommissioning obligations. Notwithstanding Debtors' position that the surety indemnity agreements will be rejected upon confirmation of the Plan, if the post-confirmation entities remain the principals of the bonds, by operation of law the sureties have rights of exoneration and reimbursement against the post-confirmation entities by virtue of their status as the sureties for the post-confirmation entities. Restatement of the Law Third, Suretyship & Guaranty §§ 21 and 22 (1996). These liabilities should survive the divisive merger and should be allocated. Tex. Bus. Code Ann. § 10.008(a)(3) and (4).*

5.  The Debtors' response is:

**e)  This does not appear to be an objection to conformation of the Plan. As the Debtors have stated previously, the Plan does not provide for the assumption or rejection of any surety bonds. See Omnibus Reply of Debtors to Objections to Disclosure Statement [ECF No. 1124], Ex. A, at 13.**

6.  Debtors fail to address how the bonds survive after confirmation. In responding to Lexon's objections, they also say the Plan does not provide for the "transfer" of the bonds, so we know the Debtors are not "assuming, assigning or transferring the bonds." [ECF 1591, pp. 3-4]. But they will not say whether the bonds "survive" the confirmation of the Plan. Given the debtors statement that there is no assumption, assignment or transfer of surety bonds, and their vehemence those bonds remain in effect as evidenced by their adversary proceeding, one might assume their position is because the post-confirmation entities are created via merger, then whatever contracts and bonds they might have can simply continue, as a merger would not affect

---

[2] Whether the bonds are assumed or simply continue to exist as obligations of the divisive merger entities also has implications for whether the Debtors should provide cure values for decommissioning costs, whether the bonds can be assumed and whether the bonds must be replaced.

3

the status of existing contracts (the sureties would contend if merger results in a material change there might be a defense to a bond claim). Are the Debtors saying there is no need for an assumption, assignment or transfer of the bonds because the post-confirmation entities are created through a merger? Can they just say that if that is their position?[3] And, if the bonds survive how does that work. The Brief in Support of Confirmation touts that the entities created through the divisive merger are for purpose of meeting the regulatory requirements of decommissioning properties. If any of the post-confirmation entities default in the decommissioning obligations (NEWCO, FWE I, FWE III or whatever entity is created between now and confirmation), can the obligees make demand on the bonds from the failure of the post-confirmation entities to perform?

7. Finally, even assuming the bonds survive post-confirmation, and the Debtors can reject the inter-dependent surety indemnity agreements (which the sureties collectively contend they cannot), what possible theory allows for the stripping away of the surety's recourse through exoneration, reimbursement, subrogation and restitution, rights that exist by virtue of suretyship status? Restatement of the Law Third, Suretyship & Guaranty §§ 21(b)(2), 22, 26, 27, 28 (1996). The Texas divisive merger statute recognizes the liabilities of the pre-merger contracts continue to be liabilities of the post-merger companies. Tex. Bus. Code Ann. § 10.008(a)(3) and (4). NAS' objection is saying that the Debtors are advocating a plan that impermissibly changes the bonds into cash demand obligations by stripping away the surety's traditional rights of recourse

---

[3] For all the ink spilled in the adversary proceeding brought by the Debtors against the Apache Sureties how the bonds exist post-confirmation, what the Debtors' standing to raise the issues and how they apply to post-confirmation decommissioning obligations is never clearly articulated in the Debtors' complaint or summary judgment motion or opposition to the sureties' motion to dismiss. Debtors say the Plan does not affect the defenses of the sureties. But the adversary was triggered by sureties sending a letter to an obligee (Apache) asserting defenses. An absence of clarity is a wellspring for future litigation—and the uncertain treatment of surety bonds in the Debtors filings cries out for clarity.

and subrogation.  The Code cannot change bonds into letters of credit or cash demand instruments.

## Relief Requested

North American Specialty Insurance Company requests clarification from the Debtors of their response to these issues, to strike the response of the Debtors if they fail to provide clarification and to deny confirmation of the Plan because (among the other reasons raised in the objections) it fails to treat surety credit appropriately.  As nearly all the sureties have stated in their pleadings, the Debtors need the sureties' consent for the post-confirmation use of existing surety credit or need to get new bonds.

Respectfully submitted,

*/s/ T. Scott Leo*
T. Scott Leo
The Law Offices of T. Scott Leo, P.C.
100 N. LaSalle Street, Suite 514
Chicago, Illinois 60602
Phone:  (312) 857-0910
sleo@leolawpc.com

*Attorney for North American Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June 2021, a true and correct copy of the foregoing Request for Clarification or to Strike Responses were served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

<i>/s/ T. Scott Leo</i>