**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF FILING OF FOURTH AMENDED PLAN SUPPLEMENT
IN CONNECTION WITH FIFTH AMENDED JOINT CHAPTER 11
PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS**

**PLEASE TAKE NOTICE THAT**:

1.      Commencing on August 3, 2020, Fieldwood Energy LLC and its debtor affiliates in the above-captioned cases, as debtors and debtors in possession (collectively, the "**Debtors**"), each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

2.      On April 15, 2021, the Bankruptcy Court entered the *Amended Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

*of Property of the Estate; and (VII) Granting Related Relief* [Docket No. 1286] (the "**Disclosure Statement Order**").

3.    On April 15, 2021, the Debtors filed the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284].

4.    On May 27, 2021, the Debtors filed the *Notice of Filing of Plan Supplement in Connection with Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1394].

5.    On June 15, 2021, the Debtors filed the *Notice of Filing of Amended Plan Supplement in Connection with Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1562].

6.    On June 16, 2021, the Debtors filed the *Notice of Filing of Second Amended Plan Supplement in Connection with Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1587].

7.    On June 16, 2021, the Debtors filed the *Fifth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1629] (the "**Plan**").[2]

8.    In accordance with the Plan and Disclosure Statement Order, the Debtors hereby file the following documents as part of the Plan Supplement:

| Exhibit G | NewCo Organizational Documents |
|---|---|

9.    The documents contained in the Plan Supplement are integral to, and are considered part of, the Plan.  If the Plan is approved, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

10. The Debtors reserve all rights to amend, modify, or supplement the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan. If material amendments or modifications are made to any of these documents, the Debtors will file a blackline with the Bankruptcy Court marked to reflect the same.

11. A hearing to consider confirmation of the Plan is currently scheduled to begin on **Friday, June 18, 2021 at 9:30 a.m. (Prevailing Central Time)** before the Bankruptcy Court (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned from time to time, without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or announcement of the adjourned date(s) at the Confirmation Hearing.

12. As of the date hereof, the Debtors are still in the process of negotiating and finalizing certain of the documents contained in the Plan Supplement with the Ad Hoc Group of Secured Lenders, Ad Hoc Group of Prepetition SLTL Lenders, the Creditors' Committee, Apache, Chevron U.S.A. Inc. ("**Chevron**"), Eni Petroleum US LLC ("**Eni**"), and Hunt Oil Company ("**Hunt**"), and various other parties in interest. The Debtors, Ad Hoc Group of Secured Lenders, Ad Hoc Group of Prepetition SLTL Lenders, the Creditors' Committee, Apache, Chevron, Eni, and Hunt, reserve all of their respective rights with respect to any applicable form of documents filed herewith, including any applicable consent rights in the Restructuring Support Agreement.

13. Copies of the exhibits contained in this Plan Supplement, and all documents filed in these chapter 11 cases are available free of charge by visiting https://cases.primeclerk.com/fieldwoodenergy/. You may also obtain copies of the pleadings by visiting the Bankruptcy Court's website at https://ecf.txsb.uscourts.gov in accordance with the procedures and fees set forth therein.

3

Dated: June 16, 2021
      Houston, Texas

                                 */s/ Jessica Liou*
                                 WEIL, GOTSHAL & MANGES LLP
                                 Alfredo R. Pérez (15776275)
                                 Clifford W. Carlson (24090024)
                                 700 Louisiana Street, Suite 1700
                                 Houston, Texas 77002
                                 Telephone:  (713) 546-5000
                                 Facsimile:  (713) 224-9511
                                 Email:  Alfredo.Perez@weil.com
                                         Clifford.Carlson@weil.com

                                 -and-

                                 WEIL, GOTSHAL & MANGES LLP
                                 Matthew S. Barr (admitted *pro hac vice*)
                                 Jessica Liou (admitted *pro hac vice*)
                                 767 Fifth Avenue
                                 New York, New York 10153
                                 Telephone:  (212) 310-8000
                                 Facsimile:  (212) 310-8007
                                 Email: Matt.Barr@weil.com
                                         Jessica.Liou@weil.com

                                 *Attorneys for Debtors*
                                 *and Debtors in Possession*

WEIL:\98024101\1\45327.0005

**<u>Certificate of Service</u>**

I hereby certify that on June 16, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                            _/s/ Jessica Liou_
                                                            Jessica Liou

**Exhibit G**

**NewCo Organizational Documents[3]**

---

[3] Including the NewCo shareholders' agreement.



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "MAKO NEWCO INC.", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:42 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

5963978  8100
SR# 20212358355

Authentication: 203369337
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:42 PM 06/04/2021
SR 20212358355 - File Number 5963978

# CERTIFICATE OF INCORPORATION

## OF

## MAKO NEWCO INC.

\* \* \*

FIRST:    The name of the corporation is Mako Newco Inc. (the "**Corporation**").

SECOND:  The address of its registered office in the State of Delaware is 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.  The name of its registered agent at such address is Corporation Service Company.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**").

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is 1,000, and the par value of each such share is $0.01, amounting in the aggregate to $10.00.

FIFTH: The name and mailing address of the incorporator are:

| Name | Mailing Address |
| --- | --- |
| Kelsey D. Stevens | Davis Polk & Wardwell LLP 450 Lexington Avenue New York, New York 10017 |

SIXTH:  The Board of Directors shall have the power to adopt, amend or repeal the bylaws of the Corporation.

SEVENTH:  Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

EIGHTH:  The Corporation expressly elects not to be governed by Section 203 of Delaware Law.

NINTH:   (1) A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

(2)(a)      Each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a director or officer of the Corporation, or an owner of shares of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.   The right to indemnification conferred in this ARTICLE NINTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law or in connection with any other actions taken by it related to the Corporation.   The right to indemnification conferred in this ARTICLE NINTH shall be a contract right.

(b)      The Corporation may, by action of its Board of Directors, provide indemnification to such of the directors, employees, agents and owners of shares of the Corporation (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)      The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)      The rights and authority conferred in this ARTICLE NINTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)      Neither the amendment nor repeal of this ARTICLE NINTH, nor the adoption of any provision of this Certificate of Incorporation or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act or omission that occurred prior to, the time of such amendment, repeal, adoption or

modification (regardless of when any proceeding (or part thereof) relating to such event, act or omission arises or is first threatened, commenced or completed).

TENTH:  The Corporation reserves the right to amend this Certificate of Incorporation in any manner permitted by Delaware Law and all rights and powers conferred herein on stockholders, directors and officers, if any, are subject to this reserved power.

ELEVENTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "FLTL Sub-Agent") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "FLTL Credit Agreement"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

#94056736v5

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Incorporation this 4 day of June , 2021.

*Kelsey Stevens*
Kelsey D. Stevens
Incorporator

*[Signature Page to Certificate of Incorporation of Mako Newco Inc.]*

# BYLAWS

## OF

## MAKO NEWCO INC.

*****

## ARTICLE 1
## OFFICES

Section 1.01.  *Registered Office.*  The registered office of the Mako Newco Inc. (the "**Corporation**") shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02.  *Other Offices.*  The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03.  *Books.*  The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

Section 2.01.  *Time and Place of Meetings.*  All meetings of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02.  *Annual Meetings.*  Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting as may be designated by the Board of Directors from time to time.  Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors; *provided*, *however*, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

Section 2.03.  *Special Meetings.*  Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board of Directors and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote.  Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04.  *Notice of Meetings and Adjourned Meetings; Waivers of Notice.*  (a)  Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.  Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting.  Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b)     A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05.  *Quorum.*  Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business.  If, however, such quorum shall not be present or represented at any meeting of the stockholders, a majority in voting interest of the stockholders present in person or represented by proxy may adjourn the meeting, without notice other than announcement at the meeting, until a

quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06. *Voting.* (a) Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder.  Any share of capital stock of the Corporation held by the Corporation shall have no voting rights.  Except as otherwise provided by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of the majority of the shares of capital stock of the Corporation present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders.

(b)     Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, appointed by an instrument in writing, subscribed by such stockholder or by his attorney thereunto authorized, or by proxy sent by cable, telegram or by any means of electronic communication permitted by law, which results in a writing from such stockholder or by his attorney, and delivered to the secretary of the meeting.  No proxy shall be voted after three (3) years from its date, unless said proxy provides for a longer period.

(c)     In determining the number of votes cast for or against a proposal or nominee, shares abstaining from voting on a matter will not be treated as a vote cast.

Section 2.07. *Action by Consent.* (a) Unless otherwise provided in the certificate of incorporation and subject to the proviso in Section 2.02, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to

notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b)     Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08.  *Organization.*  At each meeting of stockholders, the Chairman of the Board of Directors, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting.  The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09.  *Order of Business.*  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01.  *General Powers.*  Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

Section 3.02.  *Number, Election and Term Of Office.*   (a) The number of directors which shall constitute the whole Board of Directors shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one. The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in Section 2.02 and Section 3.12 herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.  Directors need not be stockholders.

(b)  Subject to the rights of the holders of any series of preferred stock to elect additional directors under specific circumstances, directors shall be elected by a plurality of the votes of the shares of capital stock of the Corporation present

in person or represented by proxy at the meeting and entitled to vote on the election of directors.

Section 3.03. *Quorum and Manner of Acting.*  Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04. *Time and Place of Meetings.*  The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05. *Annual Meeting.*  The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held.  Notice of such meeting need not be given.  In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given as hereinafter provided in Section 3.07 herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06. *Regular Meetings.*  After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07. *Special Meetings.*  Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of any director.  Notice of special meetings of the Board of Directors shall be given to each director at least 24 hours before the date of the meeting in such manner as is determined by the Board of Directors, which required notice shall be

deemed to be waived by a director's attendance at a meeting (unless solely for the purpose of objecting to the lack of required notice).

Section 3.08. *Committees.* The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. A quorum of any committee of the Board of Directors shall consist of a majority of the Board of Directors (with directors for quorum purposes counted in accordance with the certificate of incorporation). Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to any of the following matters: (a) approving or adopting, or recommending to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopting, amending or repealing any bylaw of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09. *Action by Consent.* Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10. *Telephonic Meetings.* Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11.  *Resignation.*  Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation.  The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12.  *Vacancies.*  Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, although less than a quorum, or by a sole remaining director.  Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority vote of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.  Each director so chosen shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  If there are no directors in office, then an election of directors may be held in accordance with Delaware Law.  Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board of Directors, effective at a future date, the directors then in office shall, by majority vote, have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13.  *Removal.*  Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the voting power of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14.  *Compensation.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01.  *Principal Officers.*  The principal officers of the Corporation shall be a President, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose.  The Corporation may

also have such other principal officers, including one or more Controllers, as the Board of Directors may in its discretion appoint.  One person may hold the offices and perform the duties of any two or more of said offices.

Section 4.02.  *Election, Term of Office and Remuneration.*  The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof.  Each such officer shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  The remuneration of all officers of the Corporation shall be fixed by the Board of Directors.  Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03.  *Subordinate Officers.*  In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04.  *Removal.*  Except as otherwise permitted with respect to subordinate officers, any officer may be removed, with or without cause, at any time, by resolution adopted by the Board of Directors.

Section 4.05.  *Resignations.*  Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer).  The resignation of any officer shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.06.  *Powers and Duties.*  The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
CAPITAL STOCK

Section 5.01.  *Certificates For Stock; Uncertificated Shares.*  The shares of the Corporation shall be uncertificated, provided that the Board of Directors of the Corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be certificated shares.  Except as otherwise

8

provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of shares represented by certificates of the same class and series shall be identical. Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by any two authorized officers of the Corporation representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue. The Corporation shall not have power to issue a certificate in bearer form.

Section 5.02. *Transfer Of Shares.* Shares of the stock of the Corporation may be transferred on the record of stockholders of the Corporation by the holder thereof or by such holder's duly authorized attorney upon surrender of a certificate therefor properly endorsed or upon receipt of proper transfer instructions from the registered holder of uncertificated shares or by such holder's duly authorized attorney and upon compliance with appropriate procedures for transferring shares in uncertificated form, unless waived by the Corporation.

Section 5.03. *Authority for Additional Rules Regarding Transfer.* The Board of Directors shall have the power and authority to make all such rules and regulations as they may deem expedient concerning the issue, transfer and registration of certificated or uncertificated shares of the stock of the Corporation, as well as for the issuance of new certificates in lieu of those which may be lost or destroyed, and may require of any stockholder requesting replacement of lost or destroyed certificates, bond in such amount and in such form as they may deem expedient to indemnify the Corporation, and/or the transfer agents, and/or the registrars of its stock against any claims arising in connection therewith.

Section 5.04. *FLTL Sub-Agent.* To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "FLTL Sub-Agent") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "FLTL Credit Agreement"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency

Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

ARTICLE 6
GENERAL PROVISIONS

Section 6.01.  *Fixing the Record Date.*  (a)  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b)    In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law,

the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 6.02.  *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 6.03.  *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 6.04.  *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 6.05.  *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 6.06.  *Amendments.*  These bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders either by written consent or at any annual or special meeting thereof or by the Board of Directors.



# Delaware

Page 1

## The First State

*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "MAKO HOLDING INC.", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:43 O`CLOCK P.M.*

Jeffrey W. Bullock, Secretary of State

5963981  8100
SR# 20212358386

Authentication: 203369663
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:43 PM 06/04/2021
SR 20212358386 - File Number 5963981

## CERTIFICATE OF INCORPORATION

## OF

## MAKO HOLDING INC.

### * * *

FIRST:   The name of the corporation is Mako Holding Inc. (the "**Corporation**").

SECOND:  The address of its registered office in the State of Delaware is 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.  The name of its registered agent at such address is Corporation Service Company.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**").

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is 1,000, and the par value of each such share is $0.01, amounting in the aggregate to $10.00.

FIFTH: The name and mailing address of the incorporator are:

| Name | Mailing Address |
| --- | --- |
| Mako Newco Inc. | 410 Park Avenue, Suite 900 New York, NY 10022 |

SIXTH:  The Board of Directors shall have the power to adopt, amend or repeal the bylaws of the Corporation.

SEVENTH:  Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

EIGHTH:  The Corporation expressly elects not to be governed by Section 203 of Delaware Law.

NINTH:  (1) A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

#94311989v3

(2)(a)     Each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a director or officer of the Corporation, or an owner of shares of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.  The right to indemnification conferred in this ARTICLE NINTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law or in connection with any other actions taken by it related to the Corporation.  The right to indemnification conferred in this ARTICLE NINTH shall be a contract right.

(b)     The Corporation may, by action of its Board of Directors, provide indemnification to such of the directors, employees, agents and owners of shares of the Corporation (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)     The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)     The rights and authority conferred in this ARTICLE NINTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)     Neither the amendment nor repeal of this ARTICLE NINTH, nor the adoption of any provision of this Certificate of Incorporation or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act or omission that occurred prior to, the time of such amendment, repeal, adoption or

#94311989v3

modification (regardless of when any proceeding (or part thereof) relating to such event, act or omission arises or is first threatened, commenced or completed).

TENTH:  The Corporation reserves the right to amend this Certificate of Incorporation in any manner permitted by Delaware Law and all rights and powers conferred herein on stockholders, directors and officers, if any, are subject to this reserved power.

ELEVENTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract,                    tort                    or                    otherwise.

3

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Incorporation this _4_ day of June, 2021.

**MAKO NEWCO INC.**

By: _____
    Name:   Tim Daileader
    Title:   President

*[Signature Page to Certificate of Incorporation of Mako Holding Inc.]*

# BYLAWS

## OF

## MAKO HOLDING INC.

\* \* \* \* \*

## ARTICLE 1
## OFFICES

Section 1.01.  *Registered Office.*  The registered office of the Mako Holding Inc. (the "**Corporation**") shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02.  *Other Offices.*  The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03.  *Books.*  The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

Section 2.01.  *Time and Place of Meetings.*  All meetings of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02.  *Annual Meetings.*  Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting as may be designated by the Board of Directors from time to time.  Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors; *provided*, *however*, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

Section 2.03. *Special Meetings.* Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board of Directors and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote. Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04. *Notice of Meetings and Adjourned Meetings; Waivers of Notice.* (a) Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting. Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b) A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05. *Quorum.* Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business. If, however, such quorum shall not be present or represented at any meeting of the stockholders, a majority in voting interest of the stockholders present in person or represented by proxy may adjourn the meeting, without notice other than announcement at the meeting, until a

2

quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06.  *Voting.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder.  Any share of capital stock of the Corporation held by the Corporation shall have no voting rights.  Except as otherwise provided by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of the majority of the shares of capital stock of the Corporation present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders.

(b)  Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, appointed by an instrument in writing, subscribed by such stockholder or by his attorney thereunto authorized, or by proxy sent by cable, telegram or by any means of electronic communication permitted by law, which results in a writing from such stockholder or by his attorney, and delivered to the secretary of the meeting.  No proxy shall be voted after three (3) years from its date, unless said proxy provides for a longer period.

(c)  In determining the number of votes cast for or against a proposal or nominee, shares abstaining from voting on a matter will not be treated as a vote cast.

Section 2.07.  *Action by Consent.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to the proviso in Section 2.02, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to

3

notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b)     Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08. *Organization.* At each meeting of stockholders, the Chairman of the Board of Directors, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting. The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09. *Order of Business.* The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01. *General Powers.* Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

Section 3.02. *Number, Election and Term Of Office.* (a) The number of directors which shall constitute the whole Board of Directors shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one. The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in Section 2.02 and Section 3.12 herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal. Directors need not be stockholders.

(b) Subject to the rights of the holders of any series of preferred stock to elect additional directors under specific circumstances, directors shall be elected by a plurality of the votes of the shares of capital stock of the Corporation present

4

in person or represented by proxy at the meeting and entitled to vote on the election of directors.

Section 3.03.  *Quorum and Manner of Acting.*  Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04.  *Time and Place of Meetings.*  The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05.  *Annual Meeting.*  The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held.  Notice of such meeting need not be given.  In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given as hereinafter provided in Section 3.07 herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06.  *Regular Meetings.*  After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07.  *Special Meetings.*  Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of any director.  Notice of special meetings of the Board of Directors shall be given to each director at least 24 hours before the date of the meeting in such manner as is determined by the Board of Directors, which required notice shall be

5

deemed to be waived by a director's attendance at a meeting (unless solely for the purpose of objecting to the lack of required notice).

Section 3.08. *Committees*. The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. A quorum of any committee of the Board of Directors shall consist of a majority of the Board of Directors (with directors for quorum purposes counted in accordance with the certificate of incorporation). Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to any of the following matters: (a) approving or adopting, or recommending to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopting, amending or repealing any bylaw of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09. *Action by Consent*. Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10. *Telephonic Meetings*. Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11.  *Resignation.*  Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation.  The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12.  *Vacancies.*  Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, although less than a quorum, or by a sole remaining director.  Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority vote of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.  Each director so chosen shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  If there are no directors in office, then an election of directors may be held in accordance with Delaware Law.  Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board of Directors, effective at a future date, the directors then in office shall, by majority vote, have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13.  *Removal.*  Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the voting power of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14.  *Compensation.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01.  *Principal Officers.*  The principal officers of the Corporation shall be a President, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose.  The Corporation may

also have such other principal officers, including one or more Controllers, as the Board of Directors may in its discretion appoint.  One person may hold the offices and perform the duties of any two or more of said offices.

Section 4.02.  *Election, Term of Office and Remuneration.*  The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof.  Each such officer shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  The remuneration of all officers of the Corporation shall be fixed by the Board of Directors.  Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03.  *Subordinate Officers.*  In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04.  *Removal.*  Except as otherwise permitted with respect to subordinate officers, any officer may be removed, with or without cause, at any time, by resolution adopted by the Board of Directors.

Section 4.05.  *Resignations.*  Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer).  The resignation of any officer shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.06.  *Powers and Duties.*  The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
CAPITAL STOCK

Section 5.01.  *Certificates For Stock; Uncertificated Shares.*  The shares of the Corporation shall be uncertificated, provided that the Board of Directors of the Corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be certificated shares.  Except as otherwise

8

provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of shares represented by certificates of the same class and series shall be identical. Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by any two authorized officers of the Corporation representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue. The Corporation shall not have power to issue a certificate in bearer form.

Section 5.02. *Transfer Of Shares.* Shares of the stock of the Corporation may be transferred on the record of stockholders of the Corporation by the holder thereof or by such holder's duly authorized attorney upon surrender of a certificate therefor properly endorsed or upon receipt of proper transfer instructions from the registered holder of uncertificated shares or by such holder's duly authorized attorney and upon compliance with appropriate procedures for transferring shares in uncertificated form, unless waived by the Corporation.

Section 5.03. *Authority for Additional Rules Regarding Transfer.* The Board of Directors shall have the power and authority to make all such rules and regulations as they may deem expedient concerning the issue, transfer and registration of certificated or uncertificated shares of the stock of the Corporation, as well as for the issuance of new certificates in lieu of those which may be lost or destroyed, and may require of any stockholder requesting replacement of lost or destroyed certificates, bond in such amount and in such form as they may deem expedient to indemnify the Corporation, and/or the transfer agents, and/or the registrars of its stock against any claims arising in connection therewith.

Section 5.04. *FLTL Sub-Agent.* To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency

Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

ARTICLE 6
GENERAL PROVISIONS

Section 6.01.  *Fixing the Record Date.*  (a)  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b)      In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law,

10

the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 6.02.  *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 6.03.  *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 6.04.  *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 6.05.  *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 6.06.  *Amendments.*  These bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders either by written consent or at any annual or special meeting thereof or by the Board of Directors.

11



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF FORMATION OF "MAKO BUYER LLC", FILED
IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:45
O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

5963987  8100
SR# 20212358525

Authentication: 203369775
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered  02:42 PM 06/04/2021
FILED  02:45 PM 06/04/2021
SR 20212358525  - File Number  5963987

# CERTIFICATE OF FORMATION

## OF

## MAKO BUYER LLC

This Certificate of Formation of Mako Buyer LLC (the "**Company**") is being duly executed and filed by the undersigned as an authorized person, to form a limited liability company pursuant to the provisions of the Delaware Limited Liability Company Act (6 *Del. C.* §18-201, *et seq.*).

FIRST:  The name of the limited liability company formed hereby is Mako Buyer LLC.

SECOND:  The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

THIRD:  The name and address of the registered agent for service of process on the Company in the State of Delaware is Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

FOURTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation this ____**4ᵗʰ**____ day of June, 2021.


**MAKO INTERMEDIATE INC.,**
its sole member

By: _____

Name:   Tim Daileader
Title:    President

*[Signature Page to Certificate of Formation of Mako Buyer LLC]*

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## MAKO BUYER LLC

This Limited Liability Company Agreement (this "**Agreement**") of Mako Buyer LLC dated as of June 4, 2021 is entered into by Mako Intermediate Inc. (the "**Initial Member**") as the sole member (the Initial Member and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, being a "**Member**").

The Member, by execution of this Agreement, hereby forms a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq.*), as amended from time to time (the "**Act**"), and hereby agrees as follows:

1.   *Name*.  The name of the limited liability company formed hereby is Mako Buyer LLC (the "**Company**").

2.   *Filing of Certificates*.  The Member, as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3.   *Purposes*.  The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4.   *Powers*.  In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5.   *Principal Business Office*.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.   *Registered Office; Registered Agent*.  The address of the registered office and the name and address of the registered agent of the Company in the

State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

7.     *Member*.  The name and the mailing address of the Member is as follows:

| **Name** | **Address** |
|---|---|
| Mako Intermediate Inc. | 410 Park Avenue, Suite 900 New York, NY 10022 |

8.     *Limited Liability*.  Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9.     *Capital Contributions*.  The Member is deemed admitted as the member of the Company upon its execution and delivery of this Agreement.  The Member may, but is not obligated to make any capital contribution to the Company.

10.     *Allocation of Profits and Losses*.  The Company's profits and losses shall be allocated solely to the Member.

11.     *Distributions*.  Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

12.     *Management*.  In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware.  The Member has the authority to bind the Company.

13.     *Exculpation and Indemnification*.  (a) To the fullest extent permitted by the laws of the State of Delaware and except in the case of bad faith, gross negligence or willful misconduct, no Member shall be liable to the Company or any other Member for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Member in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Member by this Agreement.

(b)     Except in the case of bad faith, gross negligence or willful misconduct, each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services,

2

LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a Member shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. Any indemnity under this Section 13 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

14.     *Assignments*.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  Upon any transfer, in whole or in part, of the Member's limited liability company interest in the Company, the transferee shall be, without the requirement of any further action, admitted as a Member with respect to the limited liability company interest so transferred and shall be deemed bound by all of the terms and provisions of this Agreement. If the Member transfers all of its interest in the Company pursuant to this Section 14 and the Member is, at the time of such transfer, the sole Member of the Company, the transferee of such limited liability company interests shall be admitted as a Member of the Company upon such transfer and the Company shall continue without dissolution.

15.     *Resignation*.  The Member may at any time resign from the Company.  If the Member resigns pursuant to this Section 15, an additional Member shall be admitted to the Company, subject to Section 16 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

16.     *Admission of Additional Members*.  Subject to Section 14, one or more additional members of the Company may be admitted to the Company with the consent of the Member.  Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional member(s).

17.     *Dissolution*.  (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of:  (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of

3

the assets of the Company in an orderly manner), and the assets or proceeds from the sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

18. *Tax Treatment*. The Member intends that the Company make an election under Treas. Reg. Sec. 301.7701-3 effective as of the date of its formation and shall thereafter be treated as a corporation for U.S. federal and, if applicable, state and local income tax purposes, and neither the Company nor the Member shall take any action or make any election that is inconsistent with such tax treatment.

19. *Separability of Provisions*. If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

20. *Entire Agreement*. This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

21. *Governing Law*. This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles).

22. *Amendments*. Subject to the requirements set forth in Section 14, this Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

23. *Sole Benefit of Member*. Other than as set forth in Section 14, the provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

24. *Effectiveness*. This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

25. *FLTL Sub-Agent*. To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or Member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and

4

collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

[*The remainder of this page is intentionally left blank*]

5

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

**MAKO INTERMEDIATE INC.,**
its sole member

By: _____
Name:   Tim Daileader
Title:    President

*[Signature Page for Mako Buyer LLC Limited Liability Company Agreement]*



# Delaware

Page 1

## The First State

    *I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "MAKO BUYER 2 LLC", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:46 O`CLOCK P.M.*

Jeffrey W. Bullock, Secretary of State

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:46 PM 06/04/2021
SR 20212358564 - File Number 5963991

# CERTIFICATE OF FORMATION

## OF

## MAKO BUYER 2 LLC

This Certificate of Formation of Mako Buyer 2 LLC (the "**Company**") is being duly executed and filed by the undersigned as an authorized person, to form a limited liability company pursuant to the provisions of the Delaware Limited Liability Company Act (6 *Del. C.* §18-201, *et seq.*).

FIRST:  The name of the limited liability company formed hereby is Mako Buyer 2 LLC.

SECOND:  The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

THIRD:  The name and address of the registered agent for service of process on the Company in the State of Delaware is Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

FOURTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation this __4th__ day of June, 2021.

> **MAKO BUYER LLC,**
> its sole member
>
> By: Mako Intermediate Inc.,
> its sole member
>
> By: _____
> Name:    Tim Daileader
> Title:    President

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## MAKO BUYER 2 LLC

This Limited Liability Company Agreement (this "**Agreement**") of Mako Buyer 2 LLC dated as of June 4, 2021 is entered into by Mako Buyer LLC (the "**Initial Member**") as the sole member (the Initial Member and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, being a "**Member**").

The Member, by execution of this Agreement, hereby forms a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq*.), as amended from time to time (the "**Act**"), and hereby agrees as follows:

1.   *Name*.  The name of the limited liability company formed hereby is Mako Buyer 2 LLC (the "**Company**").

2.   *Filing of Certificates*.  The Member, as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3.   *Purposes*.  The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4.   *Powers*.  In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5.   *Principal Business Office*.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.   *Registered Office; Registered Agent*.  The address of the registered office and the name and address of the registered agent of the Company in the

State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

7.     *Member*.  The name and the mailing address of the Member is as follows:

| Name | Address |
|------|---------|
| Mako Buyer LLC | 410 Park Avenue, Suite 900 |
| | New York, NY 10022 |

8.     *Limited Liability*.  Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9.     *Capital Contributions*.  The Member is deemed admitted as the member of the Company upon its execution and delivery of this Agreement.  The Member may, but is not obligated to make any capital contribution to the Company.

10.     *Allocation of Profits and Losses*.  The Company's profits and losses shall be allocated solely to the Member.

11.     *Distributions*.  Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

12.     *Management*.  In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware.  The Member has the authority to bind the Company.

13.     *Exculpation and Indemnification*.  (a) To the fullest extent permitted by the laws of the State of Delaware and except in the case of bad faith, gross negligence or willful misconduct, no Member shall be liable to the Company or any other Member for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Member in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Member by this Agreement.

(b)     Except in the case of bad faith, gross negligence or willful misconduct, each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services,

2

LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a Member shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. Any indemnity under this Section 13 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

14.    *Assignments*.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  Upon any transfer, in whole or in part, of the Member's limited liability company interest in the Company, the transferee shall be, without the requirement of any further action, admitted as a Member with respect to the limited liability company interest so transferred and shall be deemed bound by all of the terms and provisions of this Agreement. If the Member transfers all of its interest in the Company pursuant to this Section 14 and the Member is, at the time of such transfer, the sole Member of the Company, the transferee of such limited liability company interests shall be admitted as a Member of the Company upon such transfer and the Company shall continue without dissolution.

15.    *Resignation*.  The Member may at any time resign from the Company.  If the Member resigns pursuant to this Section 15, an additional Member shall be admitted to the Company, subject to Section 16 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

16.    *Admission of Additional Members*.  Subject to Section 14, one or more additional members of the Company may be admitted to the Company with the consent of the Member.  Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional member(s).

17.    *Dissolution*.  (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of:  (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of

3

the assets of the Company in an orderly manner), and the assets or proceeds from the sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

18.     *Tax Treatment*.  The Member intends that the Company shall be treated as an entity that is disregarded as separate from the Member for U.S. federal and, if applicable, state and local income tax purposes, and neither the Company nor the Member shall take any action or make any election that is inconsistent with such tax treatment.

19.     *Separability of Provisions*.  If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

20.     *Entire Agreement*.  This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

21.     *Governing Law*.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles).

22.     *Amendments*.  Subject to the requirements set forth in Section 14, this Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

23.     *Sole Benefit of Member*.  Other than as set forth in Section 14, the provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

24.     *Effectiveness*.  This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

25.     *FLTL Sub-Agent*.  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or Member of the Company, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested

4

in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Company or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Company whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

*[The remainder of this page is intentionally left blank]*

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

**MAKO BUYER LLC**,
its sole member

By: Mako Intermediate Inc.,
its sole member

By: _____
Name:   Tim Daileader
Title:    President

*[Signature Page for Mako Buyer 2 LLC Limited Liability Company Agreement]*



Page 1

*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "MAKO INTERMEDIATE INC.", FILED IN THIS OFFICE ON THE FOURTH DAY OF JUNE, A.D. 2021, AT 2:44 O`CLOCK P.M.*

Jeffrey W. Bullock, Secretary of State

5963985  8100
SR# 20212358461

Authentication: 203369726
Date: 06-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:42 PM 06/04/2021
FILED 02:44 PM 06/04/2021
SR 20212358461 - File Number 5963985

# CERTIFICATE OF INCORPORATION

## OF

## MAKO INTERMEDIATE INC.

\* \* \*

FIRST:   The name of the corporation is Mako Intermediate Inc. (the "**Corporation**").

SECOND:  The address of its registered office in the State of Delaware is 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.  The name of its registered agent at such address is Corporation Service Company.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**").

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is 1,000, and the par value of each such share is $0.01, amounting in the aggregate to $10.00.

FIFTH: The name and mailing address of the incorporator are:

| Name | Mailing Address |
| --- | --- |
| Mako Holding Inc. | 410 Park Avenue, Suite 900 New York, NY 10022 |

SIXTH:  The Board of Directors shall have the power to adopt, amend or repeal the bylaws of the Corporation.

SEVENTH:  Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

EIGHTH:  The Corporation expressly elects not to be governed by Section 203 of Delaware Law.

NINTH:   (1) A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

#94312071v3

(2)(a)     Each person (and the heirs, executors or administrators of such person) (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, or who otherwise incurs any losses, liabilities, damages, penalties, obligations, judgments, suits, claims, causes of actions, costs, expenses (including fees and disbursements of legal counsel) by reason of the fact that such person is or was a director or officer of the Corporation, or an owner of shares of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.   The right to indemnification conferred in this ARTICLE NINTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law or in connection with any other actions taken by it related to the Corporation.   The right to indemnification conferred in this ARTICLE NINTH shall be a contract right.

(b)     The Corporation may, by action of its Board of Directors, provide indemnification to such of the directors, employees, agents and owners of shares of the Corporation (including, without limitation, Drivetrain Agency Services, LLC, in its capacity as the FLTL Subagent (as defined below)) to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)     The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)     The rights and authority conferred in this ARTICLE NINTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)     Neither the amendment nor repeal of this ARTICLE NINTH, nor the adoption of any provision of this Certificate of Incorporation or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act or omission that occurred prior to, the time of such amendment, repeal, adoption or

#94312071v3

modification (regardless of when any proceeding (or part thereof) relating to such event, act or omission arises or is first threatened, commenced or completed).

TENTH:  The Corporation reserves the right to amend this Certificate of Incorporation in any manner permitted by Delaware Law and all rights and powers conferred herein on stockholders, directors and officers, if any, are subject to this reserved power.

ELEVENTH:  To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

#94312071v3

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Incorporation this  4  day of June, 2021.

**MAKO HOLDING INC.**

By: _____
Name:   Tim Daileader
Title:    President

**BYLAWS**

**OF**

**MAKO INTERMEDIATE INC.**

\* \* \* \* \*

ARTICLE 1
OFFICES

Section 1.01. *Registered Office.*  The registered office of the Mako Intermediate Inc. (the "**Corporation**") shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02. *Other Offices.*  The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03. *Books.*  The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

ARTICLE 2
MEETINGS OF STOCKHOLDERS

Section 2.01. *Time and Place of Meetings.*  All meetings of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02. *Annual Meetings.*  Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting as may be designated by the Board of Directors from time to time.  Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors; *provided*, *however*, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

Section 2.03.  *Special Meetings.*  Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board of Directors and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote.  Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04.  *Notice of Meetings and Adjourned Meetings; Waivers of Notice.*  (a)  Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.  Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting.  Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b)     A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05.  *Quorum.*  Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business.  If, however, such quorum shall not be present or represented at any meeting of the stockholders, a majority in voting interest of the stockholders present in person or represented by proxy may adjourn the meeting, without notice other than announcement at the meeting, until a

2

quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06.  *Voting.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder.  Any share of capital stock of the Corporation held by the Corporation shall have no voting rights.  Except as otherwise provided by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of the majority of the shares of capital stock of the Corporation present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders.

(b)     Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, appointed by an instrument in writing, subscribed by such stockholder or by his attorney thereunto authorized, or by proxy sent by cable, telegram or by any means of electronic communication permitted by law, which results in a writing from such stockholder or by his attorney, and delivered to the secretary of the meeting.  No proxy shall be voted after three (3) years from its date, unless said proxy provides for a longer period.

(c)     In determining the number of votes cast for or against a proposal or nominee, shares abstaining from voting on a matter will not be treated as a vote cast.

Section 2.07.  *Action by Consent.*  (a)  Unless otherwise provided in the certificate of incorporation and subject to the proviso in Section 2.02, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to

notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b)     Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08.  *Organization.*  At each meeting of stockholders, the Chairman of the Board of Directors, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting.  The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09.  *Order of Business.*  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01.  *General Powers.*  Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

Section 3.02.  *Number, Election and Term Of Office.*   (a) The number of directors which shall constitute the whole Board of Directors shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one.  The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in Section 2.02 and Section 3.12 herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.  Directors need not be stockholders.

(b)  Subject to the rights of the holders of any series of preferred stock to elect additional directors under specific circumstances, directors shall be elected by a plurality of the votes of the shares of capital stock of the Corporation present

4

in person or represented by proxy at the meeting and entitled to vote on the election of directors.

Section 3.03. *Quorum and Manner of Acting.*  Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04. *Time and Place of Meetings.*  The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05. *Annual Meeting.*  The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held.  Notice of such meeting need not be given.  In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given as hereinafter provided in Section 3.07 herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06. *Regular Meetings.*  After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07. *Special Meetings.*  Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of any director.  Notice of special meetings of the Board of Directors shall be given to each director at least 24 hours before the date of the meeting in such manner as is determined by the Board of Directors, which required notice shall be

5

deemed to be waived by a director's attendance at a meeting (unless solely for the purpose of objecting to the lack of required notice).

Section 3.08.  *Committees*.  The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  A quorum of any committee of the Board of Directors shall consist of a majority of the Board of Directors (with directors for quorum purposes counted in accordance with the certificate of incorporation).  Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to any of the following matters: (a) approving or adopting, or recommending to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopting, amending or repealing any bylaw of the Corporation.  Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09.  *Action by Consent*.  Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10.  *Telephonic Meetings*.  Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11. *Resignation.* Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation. The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12. *Vacancies.* Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, although less than a quorum, or by a sole remaining director. Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority vote of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected. Each director so chosen shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal. If there are no directors in office, then an election of directors may be held in accordance with Delaware Law. Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board of Directors, effective at a future date, the directors then in office shall, by majority vote, have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13. *Removal.* Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the voting power of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14. *Compensation.* Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01. *Principal Officers.* The principal officers of the Corporation shall be a President, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose. The Corporation may

also have such other principal officers, including one or more Controllers, as the Board of Directors may in its discretion appoint.  One person may hold the offices and perform the duties of any two or more of said offices.

Section 4.02.  *Election, Term of Office and Remuneration.*  The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof.  Each such officer shall hold office until his or her successor is elected and qualified, or until his or her earlier death, resignation or removal.  The remuneration of all officers of the Corporation shall be fixed by the Board of Directors.  Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03.  *Subordinate Officers.*  In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04.  *Removal.*  Except as otherwise permitted with respect to subordinate officers, any officer may be removed, with or without cause, at any time, by resolution adopted by the Board of Directors.

Section 4.05.  *Resignations.*  Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer).  The resignation of any officer shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.06.  *Powers and Duties.*  The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
CAPITAL STOCK

Section 5.01.  *Certificates For Stock; Uncertificated Shares.*  The shares of the Corporation shall be uncertificated, provided that the Board of Directors of the Corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be certificated shares.  Except as otherwise

8

provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of shares represented by certificates of the same class and series shall be identical. Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by any two authorized officers of the Corporation representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue. The Corporation shall not have power to issue a certificate in bearer form.

Section 5.02. *Transfer Of Shares.* Shares of the stock of the Corporation may be transferred on the record of stockholders of the Corporation by the holder thereof or by such holder's duly authorized attorney upon surrender of a certificate therefor properly endorsed or upon receipt of proper transfer instructions from the registered holder of uncertificated shares or by such holder's duly authorized attorney and upon compliance with appropriate procedures for transferring shares in uncertificated form, unless waived by the Corporation.

Section 5.03. *Authority for Additional Rules Regarding Transfer.* The Board of Directors shall have the power and authority to make all such rules and regulations as they may deem expedient concerning the issue, transfer and registration of certificated or uncertificated shares of the stock of the Corporation, as well as for the issuance of new certificates in lieu of those which may be lost or destroyed, and may require of any stockholder requesting replacement of lost or destroyed certificates, bond in such amount and in such form as they may deem expedient to indemnify the Corporation, and/or the transfer agents, and/or the registrars of its stock against any claims arising in connection therewith.

Section 5.04. *FLTL Sub-Agent.* To the extent Drivetrain Agency Services, LLC (or any of its officers, directors or employees) is an officer, director or owner of shares of the Corporation, it is understood that it is acting not individually or personally but solely as the sub-agent (the "**FLTL Sub-Agent**") under that certain Amended and Restated First Lien Term Loan Agreement, originally dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "**FLTL Credit Agreement**"), among, inter alia, Fieldwood Energy, LLC, Fieldwood Energy, Inc., the lenders party thereto from time to time and Cantor Fitzgerald Securities, as administrative agent and collateral agent, in the exercise of the powers and authority conferred and vested in it pursuant to that certain First Lien Term Loan Sub-Agent Appointment Agreement by and among Fieldwood Energy LLC, Fieldwood Energy Inc., Cantor Fitzgerald Securities and the FLTL Sub-Agent, and nothing herein contained shall be construed as creating any liability on Drivetrain Agency

Services, LLC (or any of its officers, directors or employees), individually or personally, including for the payment of any indebtedness or expenses of the Corporation or the breach of, or failure to perform, any obligation, representation, warranty or covenant made or undertaken by the Corporation whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of any person against Drivetrain Agency Services, LLC (or any of its officers, directors or employees), by the enforcement of any assessment or by any legal or equitable proceeding or by virtue of any applicable law, whether in contract, tort or otherwise.

ARTICLE 6
GENERAL PROVISIONS

Section 6.01.  *Fixing the Record Date.*  (a)  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b)  In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law,

the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)      In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 6.02.  *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 6.03.  *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 6.04.  *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 6.05.  *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 6.06.  *Amendments.*  These bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders either by written consent or at any annual or special meeting thereof or by the Board of Directors.

**STOCKHOLDERS AGREEMENT**

dated as of

[•], 2021

by and among

**[LENDER NEWCO]**

and

**EACH OF THE STOCKHOLDERS PARTY HERETO**

# TABLE OF CONTENTS

PAGE

ARTICLE 1
DEFINITIONS

Section 1.01.    *Definitions* ...........................................................................................1

ARTICLE 2
CORPORATE GOVERNANCE; CERTAIN COVENANTS

Section 2.01.    *Composition of the Board of Directors* ................................................8
Section 2.02.    *Removal* ................................................................................................10
Section 2.03.    *Vacancies* .............................................................................................10
Section 2.04.    *Meetings* ...............................................................................................11
Section 2.05.    *Compensation* .......................................................................................11
Section 2.06.    *Action by the Board of Directors* .........................................................11
Section 2.07.    *Actions Requiring Board Consent* ........................................................12
Section 2.08.    *Charter or Bylaw Provisions* ................................................................14
Section 2.09.    *Notice of Meeting* .................................................................................14
Section 2.10.    *Termination of Rights* ...........................................................................14

ARTICLE 3
PREEMPTIVE RIGHTS; TAG-ALONG RIGHTS; DRAG-ALONG RIGHTS

Section 3.01.    *Preemptive Rights* .................................................................................14
Section 3.02.    *Tag-Along Rights* ..................................................................................18
Section 3.03.    *Drag-Along Rights* ................................................................................20

ARTICLE 4
INFORMATION

Section 4.01.    *Information Rights* ................................................................................23
Section 4.02.    *Confidentiality; Sale Support* ...............................................................23

ARTICLE 5
MISCELLANEOUS

Section 5.01.    *General Transfer Restrictions; Joinder* ................................................25
Section 5.02.    *Registration Rights* ...............................................................................26
Section 5.03.    *Legends* .................................................................................................26
Section 5.04.    *Specific Enforcement* ............................................................................28
Section 5.05.    *Assignment* ...........................................................................................28
Section 5.06.    *Amendments* ..........................................................................................28
Section 5.07.    *Termination* ..........................................................................................28
Section 5.08.    *Addresses and Notices* ..........................................................................29
Section 5.09.    *Governing Law; Jurisdiction; Forum; Waiver of Trial by Jury* ..........29

Error! Unknown document property name.

Section 5.10.    *Representations and Warranties* ...........................................................30
Section 5.11.    *No Inconsistent Agreements* .................................................................31
Section 5.12.    *Entire Agreement* .................................................................................31
Section 5.13.    *Incorporation by Reference* .................................................................31
Section 5.14.    *Descriptive Headings; Interpretation* ..................................................31
Section 5.15.    *Aggregation of Affiliates and Related Persons* ...................................32
Section 5.16.    *Independent Agreement by the Stockholders* .......................................32
Section 5.17.    *Binding Effect; Intended Beneficiaries* ...............................................32
Section 5.18.    *Creditors* .............................................................................................33
Section 5.19.    *Waiver* ..................................................................................................33
Section 5.20.    *Severability* ..........................................................................................33
Section 5.21.    *Further Action* .....................................................................................33
Section 5.22.    *Delivery by Electronic Transmission* ...................................................33
Section 5.23.    *Counterparts; Effectiveness* .................................................................34

Schedule A – Stockholders

Exhibit A – Form of Joinder

Error! Unknown document property name.

STOCKHOLDERS AGREEMENT, dated as of [•], 2021 (this "**Agreement**"), by and among (i) [Lender Newco], a Delaware corporation (the "**Corporation**"), (ii) each Person (as defined below) identified on Schedule A hereto, who is deemed a party to this Agreement pursuant to the Plan of Reorganization (as defined below) and (iii) any other Person who shall hereafter become a Party hereto as set forth herein (each Person in clauses (ii) and (iii), a "**Stockholder**" and collectively, the "**Stockholders**").

W I T N E S S E T H:

WHEREAS, each of the Stockholders party hereto as of the date hereof received Common Stock (as defined below) of the Corporation or Emergence Warrants (as defined below) pursuant to the Plan of Reorganization of Fieldwood Energy LLC ("**FWE**") and certain of its Subsidiaries and Affiliates under Chapter 11 of Title 11 of the United States Code approved by the United States Bankruptcy Court for the Southern District of Texas (as the same may have been or may be subsequently modified, supplemented and amended, the "**Plan of Reorganization**");

WHEREAS, pursuant to the Plan of Reorganization, any Person that is to receive shares of Common Stock or Emergence Warrants pursuant to the Plan of Reorganization shall be a party to this Agreement and deemed to be bound to the terms of this Agreement from and after the date hereof, even if not a signatory hereto;

WHEREAS, all Persons who after the date hereof are issued Common Stock or receive Common Stock or Emergence Warrants pursuant to a Transfer from an existing holder of Common Stock, Emergence Warrants or otherwise, or receive Common Stock upon exercise of an Emergence Warrant, must become a party to this Agreement by signing a joinder agreement in the form of Exhibit A hereto; and

WHEREAS, the Corporation and the Stockholders desire to establish in this Agreement certain rights and obligations of the Parties relating to the governance of the Corporation.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

ARTICLE 1
DEFINITIONS

Section 1.01.  *Definitions*.  As used in this Agreement, the following terms shall have the meanings indicated below:

"**Accelerated Buyer**" has the meaning set forth in Section 3.01(g).

"**Accelerated Sale Notice**" has the meaning set forth in Section 3.01(g).

"**Affected Stockholder**" has the meaning set forth in Section 5.06.

"**Affiliate**" means, with respect to a specified Person, each other Person that directly, or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, the Person specified.  As used in this definition, "**control**" (including with correlative meanings, "**controlled by**" and "**under common control with**") means possession, directly or indirectly, of power to direct or cause the direction of management or policies (whether through ownership of voting securities or by contract or other agreement).

"**Affiliate Transaction**" means any contract, agreement, transaction or other arrangement (whether written or unwritten) between the Corporation or any of its Subsidiaries, on the one hand, and (i) any Person (together with its Related Persons) directly or indirectly owning, controlling or holding the power to vote (including pursuant to a contract, agreement, arrangement or other understanding), 10% or more of the Aggregate Common Stock, or any officer, director or Affiliate of any such person or such person's Related Persons, (ii) any officer or director of the Corporation or any of its Subsidiaries or any Affiliate of any of the foregoing persons (excluding any compensation arrangements approved by the Board of Directors or a committee of the Board of Directors), or (iii) any members of the "immediate family" (as such terms are respectively defined in Rule 16a-1 of the Securities Exchange Act of 1934) of any of the persons referenced in clause (i) or clause (ii), on the other hand; *provided*, that it shall not include any contract, agreement, transaction or other arrangement that is solely between the Corporation and/or any one or more of its wholly-owned Subsidiaries.

"**Aggregate Common Stock**" means, as of any given date, the aggregate number of issued and outstanding shares of Common Stock as of such date.

"**Agreement**" has the meaning set forth in the Preamble.

"**Board of Directors**" means, as of any date, the Board of Directors of the Corporation in office on that date.

"**Business Day**" means any day other than a Saturday, Sunday or day on which commercial banks in the State of New York are authorized or required by Law to close for business.

"**Bylaws**" means the Amended and Restated Bylaws of the Corporation (as amended).

"**Charter**" means the Amended and Restated Certificate of Incorporation of the Corporation (as amended).

"**Common Stock**" means the common stock, par value $0.01 per share, of the Corporation.

"**Competitor**" means (i) any Person (together with its Related Persons) that owns or operates assets involved in the exploration, development or acquisition of oil and natural gas properties in the Gulf of Mexico and/or related activities, other than the Corporation and its Subsidiaries (collectively, "**Competing Companies**"), (ii) any Person

Error! Unknown document property name.

(together with its Related Persons) that directly or indirectly (A) holds equity interests in any Competing Company where such interests collectively represent greater than 50% of the asset value, or account for greater than 50% of the revenue of, such Person, or (B) controls (as such term is defined in the definition of "Affiliate") any Competing Company or (iii) any other Person as determined from time to time that the Board of Directors reasonably determines poses, or may pose in the future, a material competitive risk to the Corporation or any of its Subsidiaries; *provided* that in the case of clauses (i) or (ii), the Board of Directors (excluding the vote of any Director appointed by, or otherwise affiliated with, a Competitor (as defined without giving effect to this proviso)) may determine in good faith that a Person that would be a Competitor pursuant to the foregoing clauses (i) or (ii) shall be deemed to not be a Competitor, notwithstanding clauses (i) or (ii) of this definition.

"**Confidential Information**" means, with respect to the Corporation, all information concerning the Corporation and its Subsidiaries, including, but not limited to, ideas, business strategies, innovations and materials, all aspects of the business plan of the Corporation and its Subsidiaries, proposed operation and products, corporate structure, financial and organizational information, analyses, proposed partners, software code and system and product designs, employees and their identities, equity ownership, the methods and means by which the Corporation or its Subsidiaries plan to conduct their respective businesses, all trade secrets, trademarks, tradenames and all intellectual property associated with the business of the Corporation and its Subsidiaries; *provided* that the term "Confidential Information" does not include information or material that:

(i)     is in the possession of a Stockholder at the time of disclosure by the Corporation or its Subsidiaries so long as, to the knowledge of such Stockholder, such information or material is not subject to any prior obligation of confidentiality owed to the Corporation or FWE or any of their respective Subsidiaries with respect to such information;

(ii)    before or after it has been disclosed to a Stockholder by the Corporation, or any of its Subsidiaries, becomes publicly available, not as a result of any action or inaction of such Stockholder or any of its Representatives in violation of this Agreement;

(iii)   is disclosed to a Stockholder or its Representatives by a third party not, to the knowledge of such Stockholder, in violation of any obligation of confidentiality owed to the Corporation or FWE or any of their respective Subsidiaries with respect to such information; or

(iv)    is independently developed (without the use of any Confidential Information) by a Stockholder or any of its Representatives without violating any confidentiality agreement with, or other obligation of secrecy to, the Corporation or FWE or any of their respective Subsidiaries.

"**Corporation**" has the meaning set forth in the Preamble.

Error! Unknown document property name.

"**Director**" means any member of the Board of Directors.

 "**Drag-Along Buyer**" has the meaning set forth in Section 3.03(a)(i).

"**Drag-Along Percentage**" means, for any Drag-Along Sale, a fraction the numerator of which is the number of shares of Common Stock and Emergence Warrants proposed to be sold by the Drag-Along Sellers in such Drag-Along Sale and the denominator of which is the total number of shares of Common Stock and Emergence Warrants owned by the Drag-Along Sellers immediately prior to such Drag-Along Sale.

"**Drag-Along Portion**" means, with respect to any Other Stockholder and for any Drag-Along Sale, and with respect to Common Stock and Emergence Warrants, (i) the number of shares of Common Stock and Emergence Warrants owned by such Other Stockholder immediately prior to such Drag-Along Sale, multiplied by (ii) the Drag-Along Percentage.

"**Drag-Along Rights**" has the meaning set forth in Section 3.03(a).

"**Drag-Along Sale**" has the meaning set forth in Section 3.03(a).

"**Drag-Along Sale Notice**" has the meaning set forth in Section 3.03(c).

"**Drag-Along Sellers**" has the meaning set forth in Section 3.03(a).

"**Emergence Warrants**" means the warrants issued by the Corporation to certain Stockholders for the purchase of Common Stock in connection with the Plan of Reorganization.

"**Excess Shares**" has the meaning set forth in Section 3.01(d).

"**Exchange Act**" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

"**Franklin Director**" has the meaning set forth in Section 2.01(a)(ii).

"**Franklin Stockholders**" means Franklin Advisers, Inc. and its Affiliates and their affiliated investment funds, and investment funds, accounts, vehicles, and other entities that are managed, advised or sub-advised by them or their Affiliates, in each case that is a Stockholder.

 "**FWE**" has the meaning set forth in the Recitals.

"**Governmental Entity**" means (a) the United States of America, (b) any other sovereign nation, (c) any state, province, district, territory or other political subdivision of (a) or (b) of this definition, including any county, municipal or other local subdivision of the foregoing, or (d) any entity exercising executive, legislative, judicial, regulatory or administrative functions of government on behalf of (a), (b) or (c) of this definition.

"**Individual Excess Shares**" has the meaning set forth in Section 3.01(d).

"**Invesco Director**" has the meaning set forth in Section 2.01(a)(i).

"**Invesco Stockholders**" means Invesco Senior Secured Management, Inc. and its Affiliates and their affiliated investment funds, and investment funds, accounts, vehicles, and other entities that are managed, advised or sub-advised by them or their Affiliates, in each case that is a Stockholder.

"**IPO**" has the meaning set forth in Section 2.10.

"**Issuance Notice**" has the meaning set forth in Section 3.01(b).

"**Joinder**" means a Joinder to this Agreement in substantially the form attached hereto as Exhibit A.

"**Law**" means all laws, statutes, ordinances, rules, regulations and orders of any Governmental Entity.

"**Legal Proceeding**" means any arbitration, audit, litigation, claim, action, investigation, proceeding, examination or suit (whether civil, criminal, or administrative) that is (or would be) commenced, brought, conducted or heard by or before any Governmental Entity or arbitrator.

"**Listing**" has the meaning set forth in Section 2.10.

"**Majority Directors**" has the meaning set forth in Section 2.01(a)(iv).

"**National Securities Exchange**" means any U.S. national securities exchange, including, without limitation, the New York Stock Exchange, the NYSE MKT, the Nasdaq Global Select Market, the Nasdaq Global Market and the Nasdaq Capital Market. For the avoidance of doubt, National Securities Exchange does not include an "over-the-counter" system or network.

"**New Securities**" means any and all (A) shares of Common Stock or other equity securities of the Corporation, (B) equity securities of any Subsidiary of the Corporation, (C) securities exchangeable into, or convertible or exercisable for, securities of the type specified in clause (A) or (B), and (D) options, warrants or other rights to acquire securities of the type specified in clause (A), (B) or (C); *provided* that New Securities shall not include: (1) securities issued to employees, officers, directors or consultants pursuant to any equity-based compensation or incentive plans approved by the Board of Directors or included in the Plan of Reorganization, (2) securities issued to all holders of equity securities of the Corporation or its Subsidiary, as applicable, on a *pro rata* basis in connection with a stock split, payment of dividends or any similar recapitalization, reclassification, distribution, exchange or readjustment of such equity securities approved by the Board of Directors or the board of directors of such subsidiary, as applicable, (3) shares of Common Stock or the Emergence Warrants, in each case, issued or distributed pursuant to the Plan of Reorganization, (4) securities issued as consideration in any

Error! Unknown document property name.

business combination, consolidation, merger or acquisition transaction or joint venture involving the Corporation or any of its Subsidiaries, (5) securities issued upon the conversion, exchange or exercise of any securities convertible into or exchangeable or exercisable for securities (i) of the type specified in clause (1), (2), (3) or (4) or (ii) that were subject to the Securities Purchase Right or specifically excluded from the Securities Purchase Right, (6) securities issued by any wholly owned Subsidiary of the Corporation to the Corporation or another wholly owned Subsidiary of the Corporation or (7) securities issued in an IPO.

"**Nuveen Director**" has the meaning set forth in Section 2.01(a)(iii).

"**Nuveen Stockholders**" means Nuveen Asset Management LLC and its Affiliates and their affiliated investment funds, and investment funds, accounts, vehicles, and other entities that are managed, advised or sub-advised by them or their Affiliates, in each case that is a Stockholder.

"**Organizational Documents**" means the Charter and the Bylaws.

"**Other Stockholders**" has the meaning set forth in Section 3.03(a).

"**Party**" means each Person who is a party to this Agreement pursuant to the Plan of Reorganization, by virtue of signing this Agreement or by virtue of signing a Joinder.

"**Party Ownership Percentage**" means, with respect to any Stockholder or group of Stockholders, the aggregate number of shares of Common Stock owned by such Stockholder (together with its Related Persons) or group of Stockholders (together with their Related Persons) as of any date of calculation divided by the Aggregate Common Stock as of such date of calculation expressed as a percentage.

"**Person**" means any individual, firm, partnership, company or other entity, and shall include any successor (by merger or otherwise) of such entity.

"**Plan of Reorganization**" has the meaning set forth in the Recitals.

"**Preemptive Rightsholder**" has the meaning set forth in Section 3.01(a).

"**Preemptive Share**" has the meaning set forth in Section 3.01(a).

"**Proposed Transferee**" has the meaning set forth in Section 4.02(b).

"**Related Persons**" means, with respect to a Person, and without duplication, (i) such Person's Affiliates and (ii) any fund, account, investment vehicle or co-investment vehicle that is controlled, managed, advised or sub-advised by such Person or any of its Affiliates or the same investment manager, advisor or sub-advisor as such Person or any Affiliate of such investment manager, advisor or sub-advisor.

"**Replacement Nominee**" has the meaning set forth in Section 2.03(a).

"**Representatives**" means, with respect to a Person, such Person's Related Persons and its and their respective partners, members, shareholders, managers, directors, officers, employees, advisors, legal counsel, accountants, tax advisors, investment advisers, agents and other representatives.

"**SEC**" means the U.S. Securities and Exchange Commission, including any governmental body or agency succeeding to the functions thereof.

"**Securities Act**" means the U.S. Securities Act of 1933, as amended, and applicable rules and regulations thereunder, and any successor to such statute, rules or regulations. Any reference herein to a specific section, rule or regulation of the Securities Act shall be deemed to include any corresponding provisions of future Law.

"**Securities Purchase Right**" has the meaning set forth in Section 3.01(a).

"**Senior Management**" means, collectively, the Chief Executive Officer, the President, the Chief Financial Officer and any other officer with the title "Senior Vice President" and higher, in each case, of the Corporation and any of its Subsidiaries.

"**Stockholders**" has the meaning set forth in the Preamble.

"**Subsidiary**" means, with respect to any Person, any corporation, limited liability company, partnership, association or business entity of which (a) if a corporation, a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof, or (b) if a limited liability company, partnership, association or other business entity (other than a corporation), a majority of the voting interests thereof are at the time owned or controlled, directly or indirectly, by any Person or one or more Subsidiaries of that Person or a combination thereof; *provided* that in the case of this clause (b), if a Person has the right to serve as the "manager" (or comparable role) of a limited liability company, partnership, association or other business entity (other than a corporation), such limited liability company, partnership, association or other business entity (other than a corporation) and each of its Subsidiaries shall be deemed to be a Subsidiary of such Person.

"**Tag-Along Notice**" has the meaning set forth in Section 3.02(b).

"**Tag-Along Per Share Consideration**" has the meaning set forth in Section 3.02(b).

"**Tag-Along Pro Rata Portion**" has the meaning set forth in Section 3.02(b).

"**Tag-Along Right**" has the meaning set forth in Section 3.02(a).

"**Tag-Along Seller**" has the meaning set forth in Section 3.02(a).

Error! Unknown document property name.

"**Tag-Along Transfer**" has the meaning set forth in Section 3.02(a).

"**Tag-Along Transferee**" has the meaning set forth in Section 3.02(b).

"**Tagging Stockholder**" has the meaning set forth in Section 3.02(a).

"**Transfer**" (and, with correlative meanings, "**Transferee**", "**Transferor**", "**Transferred**" and "**Transferring**") means, with respect to any Common Stock or any other equity securities (which for the purposes of this definition include the Emergence Warrants), (a) when used as a verb, to sell, assign, dispose of, exchange, pledge, encumber, hypothecate or otherwise transfer such Common Stock, or other equity securities or any participation or interest therein, whether directly or indirectly (including pursuant to a derivative transaction), and (b) when used as a noun, a sale, assignment, disposition, exchange, pledge, encumbrance, hypothecation, or other transfer of such Common Stock, or other equity securities or any participation or interest therein, whether directly or indirectly (including pursuant to a derivative transaction); *provided* that the exercise of any Emergence Warrants in accordance with the terms of the applicable warrant agreement shall not be deemed a Transfer.

"**Warrant Diluted Common Stock**" means, as of any given date, the aggregate number of issued and outstanding shares of Common Stock on such date after giving effect to a hypothetical exercise of all of the issued and outstanding Emergence Warrants (assuming for this purpose that the Emergence Warrants are exercised (and, for the avoidance of doubt, without giving effect to any contractual or other limitation on the exercise of such Emergence Warrants that may be in effect from time to time) and the Exercise Price (as defined in the applicable Emergence Warrants) is paid in cash).

## ARTICLE 2
### CORPORATE GOVERNANCE; CERTAIN COVENANTS

Section 2.01.   *Composition of the Board of Directors.*

(a)   The Board of Directors shall consist of seven Directors, of whom:

(i)   (A) two shall be designated by the Invesco Stockholders for so long as the Party Ownership Percentage of the Invesco Stockholders is at least 15% (each, an "**Invesco Director**"); *provided* that for so long as the Party Ownership Percentage of the Invesco Stockholders is less than 15% (but is at least 7.5%), then the Invesco Stockholders shall only be entitled to designate one Invesco Director to the Board of Directors;

(ii)   one shall be designated by the Franklin Stockholders for so long as the Party Ownership Percentage of the Franklin Stockholders is at least 7.5% (the "**Franklin Director**");

8

(iii)     one shall be designated by the Nuveen Stockholders for so long as the Party Ownership Percentage of the Nuveen Stockholders is at least 7.5% (the "**Nuveen Director**");

(iv)     one shall be the Chief Executive Officer of the Corporation at the relevant time; and

(v)     two shall be elected by stockholders of the Corporation in accordance with the Charter and Bylaws, excluding the Invesco Stockholders, the Franklin Stockholders and the Nuveen Stockholders for so long as the Invesco Stockholders, the Franklin Stockholders and the Nuveen Stockholders, respectively, have the right to designate at least one Director to the Board of Directors (the "**Majority Directors**").

(b)     Should the Party Ownership Percentage of the Invesco Stockholders cease to be at least 15% (but is at least 7.5%), the Invesco Stockholders shall take all actions necessary or appropriate to cause one Invesco Director to immediately resign.  Should the Party Ownership Percentage of the Invesco Stockholders cease to be at least 7.5%, the Invesco Stockholders shall take all actions necessary or appropriate to cause the remaining Invesco Director to immediately resign.  Should the Party Ownership Percentage of the Franklin Stockholders or the Nuveen Stockholders cease to be at least 7.5%, the Franklin Stockholders or the Nuveen Stockholders, as applicable, shall take all actions necessary or appropriate to cause the Franklin Director or the Nuveen Director, as applicable, to immediately resign.  For the avoidance of doubt, once the Invesco Stockholders, the Franklin Stockholders or the Nuveen Stockholders cease to meet any Party Ownership Percentage specified above, the Invesco Stockholders, the Franklin Stockholders or the Nuveen Stockholders, as applicable, shall permanently lose any rights pursuant to this Article 2 associated with the applicable Party Ownership Percentage and shall not be entitled to regain such rights if the Invesco Stockholders, the Franklin Stockholders or the Nuveen Stockholders, as applicable, later meet or exceed such Party Ownership Percentage.

(c)     Should any Director be required to resign pursuant to the preceding Section 2.01(b), the number of Majority Directors at such time shall automatically be increased by one, and the vacancy shall be filled in accordance with the procedures for filling a Majority Director vacancy set forth in Section 2.03(a)(ii) who shall then serve as a Director until the next annual election of Directors by the stockholders of the Corporation in accordance with the Charter and the Bylaws.

(d)     As of the effective date of this Agreement, the Invesco Directors shall be [•] and [•], the Franklin Director shall be [•], the Nuveen Director shall be [•], the Majority Directors shall be [•] and [•] and the Chief Executive Officer of the Corporation is [•].

(e)     Each Stockholder agrees that, if at any time it is then entitled to vote for the election of directors to the Board of Directors, it shall vote all of its shares of Common Stock or execute proxies or written consents, as the case may be, and take all other

9

necessary action in order to ensure that the composition of the Board of Directors is as set forth in this Section 2.01.

(f)     The right of the Invesco Stockholders, the Franklin Stockholders and the Nuveen Stockholders to designate Directors as set forth in Section 2.01(a), are not assignable or transferable.

Section 2.02.   *Removal.*

(a)     Each Stockholder agrees that if at any time it is then entitled to vote for the removal of Directors from the Board of Directors, it shall not vote any of its Common Stock or execute proxies or written consents, as the case may be, in favor of the removal of any Director who shall have been designated pursuant to Section 2.01 or Section 2.03, unless the Person or Persons entitled to designate or nominate such Director pursuant to Section 2.01 shall have consented to such removal in writing; *provided* that, if the Person or Persons entitled to designate any Director pursuant to Section 2.01 shall request in writing the removal of such Director, each Stockholder shall vote all of its Common Stock or execute proxies or written consents, as the case may be, in favor of such removal.  Notwithstanding the foregoing, removal of a Majority Director shall require only the affirmative vote of the holders of a majority of the votes cast at a meeting of stockholders of the Corporation on such matter, excluding the Invesco Stockholders, the Franklin Stockholders and the Nuveen Stockholders, for so long as the Invesco Stockholders, the Franklin Stockholders and the Nuveen Stockholders, respectively, have the right to designate at least one Director to the Board of Directors.

Section 2.03.   *Vacancies*.   If, as a result of death, disability, retirement, resignation, removal or otherwise, there shall exist or occur any vacancy on the Board of Directors:

(a)     subject to Section 2.01(b), (i) if the vacancy is a vacancy of an Invesco Director, the Franklin Director or the Nuveen Director, the Person or Persons, if any, entitled under Section 2.01(a)(i), Section 2.01(a)(ii) or Section 2.01(a)(iii) to designate such Director whose death, disability, retirement, resignation or removal resulted in such vacancy shall have the exclusive right to designate another individual to fill such vacancy and serve as a Director on the Board of Directors, (ii) if the vacancy is a vacancy of a Majority Director, the vacancy shall be filled by a the affirmative vote of the holders of a majority of the votes cast at a meeting of stockholders of the Corporation on such matter, excluding the Invesco Stockholders, the Franklin Stockholders and the Nuveen Stockholders for so long as the Invesco Stockholders, the Franklin Stockholders and the Nuveen Stockholders, respectively, have the right to designate at least one Director to the Board of Directors, and (iii) in the case of a vacancy resulting from the termination of employment of the Chief Executive Officer of the Corporation, the new Chief Executive Officer of the Corporation shall be selected (and the position shall remain vacant until such time as there is a Chief Executive Officer of the Corporation) to fill such vacancy and serve as a director on the Board of Directors (such person, in the case of either clause (i), (ii) or (iii), the "**Replacement Nominee**");

Error! Unknown document property name.

(b)  subject to Section 2.01, (i) each Stockholder agrees that if it is then entitled to vote for the election of Directors to the Board of Directors, it shall vote all of its Common Stock, or execute proxies or written consents, as the case may be, in order to ensure that the Replacement Nominee be elected to the Board of Directors and (ii) the Corporation shall take all action to cause the Replacement Nominee to be appointed to the Board of Directors; and

(c)  in furtherance of this Section 2.03, the Corporation shall promptly hold a meeting of the stockholders of the Corporation to the extent required to elect a Replacement Nominee to the Board of Directors.

Section 2.04.  *Meetings.*  The Board of Directors shall hold a regularly scheduled meeting at least once every calendar quarter.  The Corporation shall pay all reasonable out-of-pocket expenses incurred by each Director in connection with attending regular and special meetings of the Board of Directors and any committee thereof on which the Director is a member, and any such meetings of the board of directors of any Subsidiary of the Corporation and any committee thereof, in each case, on which the Director is a member.

Section 2.05.  *Compensation.*  The non-management Directors will be eligible to receive compensation as determined from time to time by the Board of Directors.

Section 2.06.  *Action by the Board of Directors.*

(a)  A quorum of the Board of Directors shall consist of a majority of the Board of Directors.

(b)  Except as set forth in the Charter, all actions of the Board of Directors shall require (i) the affirmative vote of at least a majority of the Directors at a meeting at which a quorum is present or (ii) the unanimous written consent of the Directors in office; *provided* that, (A) if there is a vacancy on the Board of Directors and an individual has been nominated to fill such vacancy, the first order of business shall be to fill such vacancy in accordance with the terms of this Agreement, (B) matters relating to the Chief Executive Officer of the Corporation shall require (i) the affirmative vote of at least a majority of the Directors at a meeting at which a quorum is present or (ii) the unanimous written consent of the Directors in office (*provided* that for purposes of this clause (B), the Chief Executive Officer shall not be a Director for purposes of such approval), (C) the entry into, consummation, amendment, modification (including by waiver) or termination of any Affiliate Transaction shall require (i) the affirmative vote of at least a majority of the Directors at a meeting at which a quorum is present or (ii) the unanimous written consent of the Directors in office (*provided* that for the purpose of clause (C), any Director appointed by, or otherwise affiliated with, the counterparty to such Affiliate Transaction or such party's Related Persons, or otherwise having a material interest in the Affiliate Transaction that is unique as compared to the interests of stockholders in general, shall be deemed not to be a Director for purposes of such approval); *provided*, *however*, that the approval of the Board of Directors shall not be required for any given Affiliate Transaction (x) approved by the Board of Directors on or prior to the date hereof

11

or (y) if both (1) the value of such Affiliate Transaction, individually or in the aggregate with respect to related transactions, does not exceed $250,000 and (2) such Affiliate Transaction (or related transactions) is on terms and conditions that are equal to or more beneficial to the Corporation than the terms and conditions pursuant to which an independent third party would provide the goods or perform the services that are the subject of the Affiliate Transaction (or related transactions), (D) any merger, consolidation, reorganization (including conversion) or any other business combination involving the Corporation, and any such transaction that is material to the Company involving a Subsidiary of the Company, will require the approval of at least five Directors, (E) any acquisition or disposition of assets or liabilities that is in excess of $25 million will require the approval of at least five Directors and (F) any liquidation of the Corporation or any of its Subsidiaries will require the approval of at least five Directors.

(c)     For so long as the Party Ownership Percentage of the Invesco Stockholders is at least 15%, the Invesco Stockholders shall select a member of the Board of Directors to serve as Chairman of the Board of Directors.  The Board of Directors shall be entitled to from time to time establish the responsibilities of the Chairman of the Board of Directors as determined by the affirmative vote of a majority of the Board of Directors. If at any time the Party Ownership Percentage of the Invesco Stockholders is less than 15%, the Invesco Stockholders shall permanently lose such Chairman designation right and shall not be entitled to regain such right if they later meet or exceed such Party Ownership Percentage threshold.  If the Invesco Stockholders lose such Chairman designation right, the Board of Directors shall elect a member of the Board of Directors to serve as Chairman of the Board of Directors, as selected from time to time by a majority of the Board of Directors excluding the proposed Chairman.

(d)     The Board of Directors may create executive, compensation, audit and such other committees as it may determine.

 Section 2.07.  *Actions Requiring Board Consent*.  The Corporation shall not take any action, and shall cause each of its Subsidiaries not to, and shall not permit any of its Subsidiaries to, take any action with respect to any of the following matters without prior approval of the Board of Directors:

(a)     any merger, consolidation, reorganization (including conversion) or any other business combination involving the Corporation or any of its Subsidiaries;

(b)     any acquisition or disposition of assets or liabilities that is material to the Corporation and its Subsidiaries or that is in excess of $25 million;

(c)     any issuance of New Securities (without giving effect to the proviso in the definition of New Securities), but excluding (i) securities issued to employees, officers, directors or consultants pursuant to any equity-based compensation or incentive plans approved by the Board of Directors or included in the Plan of Reorganization, (ii) securities issued in connection with a stock split, payment of dividends or any similar recapitalization, reclassification, distribution, exchange or readjustment of shares approved by the Board of Directors, (iii) shares of Common Stock or Emergence

Error! Unknown document property name.

Warrants issued pursuant to the Plan of Reorganization, (iv) securities issued upon the conversion or exercise of any securities of the type specified in clause (i), any convertible or exercisable securities the issuance of which was approved by the Board of Directors or upon the exercise of any Emergence Warrants or (v) securities issued by any wholly owned Subsidiary of the Corporation to the Corporation or another wholly owned Subsidiary of the Corporation;

(d)     any creation, incurrence, assumption or guarantee of any indebtedness in excess of $30 million in the aggregate;

(e)     except as set forth in Section 2.06(b), any entry into, consummation, amendment, modification (including by waiver) or termination of any Affiliate Transaction, excluding any agreement, amendment or modification relating to a compensation arrangement with a director, officer or other employee of the Corporation or any of its Subsidiaries entered into in the ordinary course of business;

(f)     any determination of compensation, benefits, perquisites and other incentives for Senior Management of the Corporation or any of its Subsidiaries and the approval or amendment of any plans or agreements in connection therewith;

(g)     any hiring or terminating of the employment or service of any member of Senior Management of the Corporation or any of its Subsidiaries;

(h)     any approval of the annual business plan, annual budget or long-term strategic plan (including, for the avoidance of doubt, the capital expenditure budget) of the Corporation or any of its Subsidiaries or any material amendment thereto;

(i)     any entry by the Corporation or any of its Subsidiaries into new lines of business;

(j)     (i) any changes in the business plan or strategy or (ii) undertaking any operations materially inconsistent with the budget, of the Corporation or any of its Subsidiaries;

(k)     the declaration of any dividend on or the making of any distribution with respect to, or the redemption, repurchase or other acquisition of, any securities of the Corporation or any of its Subsidiaries except for redemptions, repurchases or other acquisitions of securities of the Corporation's wholly owned Subsidiaries or pursuant to the terms of any officer, director or employee compensation arrangements approved by the Board of Directors;

(l)     (i) any amendment to the Charter or the Bylaws or (ii) any adoption of or amendment to the certificate of incorporation or bylaws or equivalent organizational documents of any of its Subsidiaries;

(m)     any Listing or IPO;

13

(n)     any registration of the securities of the Corporation under the Securities Act or any state securities Law (other than an IPO or Listing);

(o)     (i) commence any litigation, lawsuit, arbitration or other proceeding involving a dispute reasonably expected to involve an amount in excess of $20 million or that is material to the Corporation or any of its Subsidiaries, or (ii) settle any litigation, lawsuit, arbitration or other proceeding (A) involving a payment by the Corporation and its Subsidiaries in excess of $20 million, (B) resulting in the imposition of equitable relief on the Corporation or any of its Subsidiaries or (C) that is material to the Corporation or any of its Subsidiaries;

(p)     the adoption of any compensation or employee benefits plan, including health insurance or pension, or any termination thereof or material amendment thereto; or

(q)     any liquidation, dissolution, commencement of bankruptcy or similar proceedings with respect to the Corporation or any of its Subsidiaries.

Section 2.08.   *Charter or Bylaw Provisions*.  Each Stockholder agrees to vote all of its Common Stock or execute proxies or written consents, as the case may be, and to take all other actions necessary, to ensure that the Charter and the Bylaws (i) facilitate, and do not at any time conflict with, any provision of this Agreement and (ii) permit each Stockholder to receive the benefits to which each such Stockholder is entitled under this Agreement.  The Charter or the Bylaws shall provide for (A) the elimination of the liability of each Director to the maximum extent permitted by applicable Law and (B) indemnification of, and advancement of expenses for, each Director for acts on behalf of the Corporation to the maximum extent permitted by applicable Law.

Section 2.09.   *Notice of Meeting*.  The Corporation agrees to give each Director (by email or otherwise) notice and the agenda for each meeting of the Board of Directors or any committee thereof at least 24 hours prior to such meeting.

Section 2.10.   *Termination of Rights*.  This Article 2 and the rights and obligations contained herein shall terminate upon the earlier of (i) the date the Common Stock is listed on a National Securities Exchange in the United States (a "**Listing**") or (ii) the consummation of the first public offering and sale of Common Stock by the Corporation (other than on Form S-4 or Form S-8 or its equivalent any similar or successor form), pursuant to an effective registration statement under the Securities Act (such public offering and sale, an "**IPO**") and shall thereafter have no force or effect.

ARTICLE 3
PREEMPTIVE RIGHTS; TAG-ALONG RIGHTS; DRAG-ALONG RIGHTS

Section 3.01.   *Preemptive Rights.*

(a)     Subject to Section 3.01(g), the Corporation hereby grants to each Stockholder that owns (including all shares of Common Stock owned by such Stockholder's Related Persons) at least 1.0% of the Aggregate Common Stock as of the

14

close of business on the record date determined by the Board of Directors (each such Stockholder, together with each such Related Person of such Stockholder, a "**Preemptive Rightsholder**"), which record date shall not be more than ten (10) Business Days prior to, and shall not be later than, the Corporation's delivery of the Issuance Notice, the right to purchase up to its *pro rata* portion (based on the number of shares of Common Stock owned by such Preemptive Rightsholder as of the close of business on the record date, as a percentage of the total number of shares of Common Stock owned (without duplication) by all Preemptive Rightsholders) of any New Securities that the Corporation or any of its Subsidiaries proposes to sell or issue to any Person at any time and from time to time after the date hereof (with respect to a Preemptive Rightsholder, such Preemptive Rightsholder's "**Preemptive Share**").  The rights of Preemptive Rightsholders to purchase New Securities pursuant to this Section 3.01 (the "**Securities Purchase Right**") shall apply at the time of issuance of any right, warrant, or option or convertible or exchangeable security that constitutes a New Security and not to the subsequent conversion, exchange or exercise of such New Security in accordance with its terms.

(b)      The Corporation shall give each Preemptive Rightsholder written notice of any proposed issuance or sale of New Securities that is subject to the Securities Purchase Right, at least ten (10) Business Days prior to the proposed issuance or sale.  Such notice (an "**Issuance Notice**") shall set forth the material terms and conditions of the proposed transaction, including the proposed manner of issuance or sale, a description of the New Securities, the total number of New Securities proposed to be issued or sold, the proposed issuance or sale date, the proposed purchase price per share, and (if known) the name and address of the proposed purchaser of the New Securities.

(c)      At any time during the ten (10) Business Days following receipt of an Issuance Notice, each Preemptive Rightsholder shall have the right, but not the obligation, to irrevocably elect, by written notice to the Corporation, to purchase up to its Preemptive Share of the New Securities at the purchase price set forth in the Issuance Notice and upon the other terms and conditions specified in the Issuance Notice; *provided*, *however*, that no Preemptive Rightsholder shall be obligated (or permitted without the Corporation's consent) to purchase any New Securities pursuant to this Section 3.01 unless all required regulatory approvals, if any, applicable to such purchase have been obtained.  Except as provided in the next sentence, the purchase of New Securities by the electing Preemptive Rightsholders shall be consummated concurrently with the consummation of the issuance or sale described in the Issuance Notice.  The closing of the purchase of New Securities by any electing Preemptive Rightsholder may be extended beyond the closing of the transaction described in the Issuance Notice, to the extent necessary to (i) obtain required approvals of any Governmental Entity and other required regulatory approvals which such Preemptive Rightsholder shall be diligently pursuing in good faith (and the Corporation shall use its commercially reasonable efforts to obtain any approvals required to be obtained by it; *provided* that the Corporation shall not be required to incur any out-of-pocket unreimbursed expenses in connection therewith other than those expenses that are not related to any specific Preemptive Rightsholder or specific group of Preemptive Rightsholders) and (ii) permit the Preemptive Rightsholder to complete its internal capital call process following receipt of the Issuance Notice; *provided*, *however*, in each case such Preemptive Rightsholder shall

15

have no more than 180 days (in the case of obtaining approvals) or 30 days (in the case of completing an internal capital call) after delivery of the applicable Issuance Notice to obtain such approvals or complete such internal capital call process.  If a Preemptive Rightsholder does not obtain the required approvals or complete its internal capital calls within the time set forth in the preceding sentence, such Preemptive Rightsholder shall be deemed to have not exercised its Securities Purchase Right and the Corporation shall have the right to issue such New Securities in accordance with the Issuance Notice, and references to the date the applicable Issuance Notice was given in Section 3.01(e) (and without regard to Section 3.01(d)) shall be deemed to refer to the date that the period set forth in the preceding sentence ended.  Notwithstanding anything to the contrary contained herein, in the event that the closing of any purchase of New Securities by any Preemptive Rightsholder is extended pursuant to this paragraph, such extension shall not preclude the consummation of the issuance or sale of the remaining New Securities or described in the Issuance Notice from occurring prior to such closing.

(d)     To the extent that one or more Preemptive Rightsholders do not timely exercise their Securities Purchase Rights in accordance with the terms and conditions set forth in this Section 3.01 or elect to exercise any such rights less than in full (the difference between the maximum number of New Securities such Preemptive Rightsholder could have elected to purchase under this Section 3.01 and the number of New Securities for which such Preemptive Rightsholder exercised its preemptive rights under this Section 3.01, such Preemptive Rightsholder's "**Individual Excess Shares**" and the Individual Excess Shares of all such Preemptive Rightsholders, the "**Excess Shares**"), then the Corporation (or the applicable Subsidiary) shall offer to sell to the Preemptive Rightsholders that have validly elected to purchase all of their Preemptive Share of the New Securities the Excess Shares *pro rata* (based on the number of shares of Common Stock owned by such Preemptive Rightsholder (without giving effect to the issuance pursuant to the Issuance Notice) divided by the number of shares of Common Stock owned (without duplication) by all Preemptive Rightsholders exercising in full their Securities Purchase Rights) and at the same price and on the same terms as those specified in the Issuance Notice, and such Preemptive Rightsholders shall have the right to acquire all or any portion of such Excess Shares within two (2) Business Days following the expiration of the period specified in Section 3.01 by delivering written notice thereof to the Corporation.  The Corporation shall continue to offer additional portions to Preemptive Rightsholders validly electing to purchase their full *pro rata* portion of such Excess Shares pursuant to this Section 3.01(d) until the earlier of (i) all New Securities proposed to be issued by the Corporation or its Subsidiaries and with respect to which Preemptive Rightsholders were entitled to exercise their rights under this Section 3.01 have been allocated to the Preemptive Rightsholders or (ii) no Preemptive Rightsholder remains who has any further right to purchase (including as a result of having waived its rights to purchase) Excess Shares pursuant to the foregoing provision.

(e)     Following compliance with the terms and conditions set forth in this Section 3.01, the Corporation (or its applicable Subsidiary) shall be free to consummate the proposed issuance or sale of all or any portion of the remaining New Securities that the Preemptive Rightsholders have not elected to purchase, on terms no less favorable to the Corporation or any of its Subsidiaries than those set forth in the Issuance Notice;

16

*provided*, that (i) such issuance or sale is closed within ninety (90) days after the date the related Issuance Notice was given, except that, if such issuance or sale is subject to regulatory approval, such ninety (90)-day period shall be extended until the expiration of five (5) Business Days after all such approvals have been received, but in no event later than one hundred and ninety (190) days after the related Issuance Notice was given, and (ii) the price at which the New Securities are transferred must be equal to or higher than the purchase price described in the Issuance Notice.  In the event that the Corporation (or its applicable Subsidiary) has not sold such New Securities within such ninety (90)-day period (as may be extended as set forth in the preceding sentence), the Corporation (or its applicable Subsidiary) shall not thereafter issue or sell any New Securities without first again offering such securities to the Stockholders entitled to preemptive rights in the manner provided in this Section 3.01.

(f)     The rights and obligations set forth in this Section 3.01 shall automatically terminate upon, and shall cease to have any force or effect following, the earlier of (i) a Listing, or (ii) the consummation of an IPO.

(g)     Notwithstanding anything to the contrary contained herein, the Corporation and/or any of its Subsidiaries may issue or sell New Securities to a purchaser (an "**Accelerated Buyer**") without first complying with the provisions of this Section 3.01 if the Board of Directors determines in good faith that it is in the best interests of the Corporation to consummate such issuance or sale without having first complied with such provisions; *provided*, that in connection with any such issuance or sale, the Corporation shall give the Preemptive Rightsholders written notice of such issuance or sale as promptly as practicable, which notice (an "**Accelerated Sale Notice**") shall describe in reasonable detail (i) the material terms and conditions of the issuance or sale of the New Securities to the Accelerated Buyer, including the number or amount and description of the New Securities issued, the issuance or sale date, the purchase price per share, and the name and address of the Accelerated Buyer and (ii) the rights of the Preemptive Rightsholders to purchase New Securities pursuant to this paragraph, in connection with such issuance or sale.  In the event of any such issuance or sale of New Securities to an Accelerated Buyer, each Preemptive Rightsholder shall have the right, at any time during the ten (10) Business Days following receipt of the Accelerated Sale Notice, to elect to purchase New Securities in an amount equal to the amount of such New Securities it would have been entitled to purchase if the issuance or sale to the Accelerated Buyer had instead been completed without regard to this Section 3.01(g), including pursuant to Section 3.01(d).  If one or more Preemptive Rightsholders exercise the election to make a purchase, the Corporation shall give effect to each such exercise by either (i) requiring that the Accelerated Buyer sell down a portion of its New Securities or (ii) issuing additional New Securities to such Preemptive Rightsholder, or a combination of (i) and (ii), so long as such action effectively provides such Preemptive Rightsholder with the same number of New Securities it would have received had this paragraph not been utilized.

(h)     A Preemptive Rightsholder may assign its Securities Purchase Right to any Person or Persons in connection with a Transfer of Common Stock to such Person by

Error! Unknown document property name.

such Preemptive Rightsholder that agree to be bound by the provisions of this Agreement applicable to the Preemptive Rightsholder by executing a Joinder.

Section 3.02.  *Tag-Along Rights.*

(a)     If at any time prior to the earlier of a Listing or the consummation of an IPO, any one or more Stockholders (collectively, the "**Tag-Along Seller**") propose to Transfer shares of Common Stock and/or Emergence Warrants that constitute more than 50% of the Aggregate Common Stock to one or more purchasers that are not Related Persons of the Tag-Along Seller in any transaction or series of related transactions (a "**Tag-Along Transfer**"), then, each other Stockholder that owns (together with such Stockholder's Related Persons) at least 5% of the total shares of Warrant Diluted Common Stock (each such Stockholder, a "**Tag-Along Offeree**") shall have the right (a "**Tag-Along Right**") to exercise tag-along rights in accordance with the terms and conditions set forth in this Section 3.02 (any such Stockholder exercising such rights, a "**Tagging Stockholder**").  The rights and obligations set forth in this Section 3.02 shall automatically terminate upon, and shall cease to have any force or effect following, the earlier of (i) a Listing or (ii) the consummation of an IPO.

(b)     The Tag-Along Seller shall promptly give notice (a "**Tag-Along Notice**") to the Corporation setting forth the number of shares of Common Stock and Emergence Warrants proposed to be Transferred by the Tag-Along Seller, the name and address of the proposed transferee (the "**Tag-Along Transferee**"), the proposed purchase price for each such share of Common Stock and Emergence Warrants (which shall be the same price per share with respect to each share of outstanding Common Stock proposed to be Transferred and each share of Common Stock that would be received upon exercise of the applicable Emergence Warrants (less the applicable exercise price of such Emergence Warrants if such Emergence Warrants will not be exercised prior to the consummation of the Tag-Along Transfer)) (the "**Tag-Along Per Share Consideration**"), and any other material terms and conditions of the Tag-Along Transfer.  Upon receipt of any such Tag-Along Notice, the Corporation shall promptly (but in no event later than three (3) Business Days following receipt thereof) provide such Tag-Along Notice to each Tag-Along Offeree.  Each Tag-Along Offeree shall have a period of ten (10) Business Days from the mailing date of the Tag-Along Notice by the Corporation to elect to sell in the Tag-Along Transfer a number of shares of Common Stock and Emergence Warrants up to its Tag-Along Pro Rata Portion at a price per share equal to the Tag-Along Per Share Consideration; *provided* that the Tag-Along Seller shall be entitled to include the number of shares of Common Stock and Emergence Warrants proposed to be Transferred by the Tag-Along Seller as set forth in the Tag-Along Notice (reduced, to the extent necessary, so that each Tagging Stockholder shall be able to include its Tag-Along Pro Rata Portion of Common Stock and Emergence Warrants).  Any Tag-Along Offeree may exercise such right by delivery of an irrevocable written notice to the Tag-Along Seller specifying the number of shares of Common Stock and Emergence Warrants such Tag-Along Offeree desires to include in the Tag-Along Transfer.  The Tag-Along Seller shall have a period of one hundred and twenty (120) calendar days following the expiration of the ten (10) day period referred to above to consummate the Tag-Along Transfer, on the payment terms specified in the Tag-Along Notice.  If the Tag-Along Seller and the Tag-Along

Error! Unknown document property name.

Transferee (i) have not consummated the Tag-Along Transfer in the time period set forth in the preceding sentence or (ii) propose to consummate the Tag-Along Transfer at a different price or on different terms than those set forth in the Tag-Along Notice, then the Tag-Along Seller shall not be permitted to consummate the Tag-Along Transfer without again giving the Tag-Along Offerees the opportunity to Transfer shares of Common Stock and Emergence Warrants in accordance with this Section 3.02.  As used herein, "**Tag-Along Pro Rata Portion**" means a number of shares of Common Stock and Emergence Warrants determined by multiplying (i) the number of shares of Common Stock and Emergence Warrants owned by the applicable Tagging Stockholder by (ii) a fraction, the numerator of which is the number of shares of Common Stock and/or Emergence Warrants proposed to be Transferred by the Tag-Along Seller in the Tag-Along Transfer and the denominator of which is the Aggregate Common Stock and Emergence Warrants held by the Tag-Along Seller immediately prior to such Tag-Along Transfer.  Notwithstanding anything to the contrary herein, the Tag-Along Transferee may require each Tagging Stockholder to exercise any Emergence Warrants such Tagging Stockholder is seeking to Transfer immediately prior to the consummation of the Tag-Along Transfer (and, to the extent such Emergence Warrants are not exercisable they may not be included in such Tag-Along Transfer), and in such case the shares of Common Stock issued on conversion will be delivered in lieu of the Emergence Warrants.  References to the number of Emergence Warrants shall, except where the context otherwise requires, be determined on the basis of the shares of Common Stock underlying such Emergence Warrants.

(c)     Notwithstanding anything contained in this Section 3.02, there shall be no liability or obligation on the part of the Tag-Along Seller to the Tagging Stockholders or any other Person if the Tag-Along Transfer pursuant to this Section 3.02 is not consummated for whatever reason.  Whether to effect a Tag-Along Transfer pursuant to this Section 3.02 by the Tag-Along Seller is in the sole and absolute discretion of the Tag-Along Seller.

(d)     Each Tagging Stockholder (i) shall be required to give representations and warranties (in a form customary for transactions of the nature of the Tag-Along Transfer) only in relation to its due organization, authority, noncontravention of laws and agreements and title to its shares of Common Stock and Emergence Warrants being transferred in the Tag-Along Transfer, (ii) shall not be required to agree to any restrictive covenant (such as a non-compete or non-solicit or similar restriction) other than a customary confidentiality covenant, (iii) shall not be required to provide any indemnification (A) with respect to any representations, warranties, covenants or agreements made by any Tag-Along Seller, the Corporation (except pursuant to a holdback or escrow as described in clause (iv) below) or any other Person or (B) in an amount exceeding the net proceeds received by such Tagging Stockholder in connection with the Tag-Along Transfer, and (iv) shall not be subject, in excess of its ratable share of the shares of Common Stock being transferred in the Tag-Along Transfer, to any holdback(s) or escrow(s) in respect of potential indemnification obligations (including with respect to indemnification for breaches of representations, warranties, covenants or agreements of the Corporation) or purchase price adjustment(s) pursuant to the applicable definitive purchase agreement.

Error! Unknown document property name.

(e)      This Section 3.02 shall not apply to a Transfer pursuant to Section 3.03.

Section 3.03.   *Drag-Along Rights*.

(a)      If holders of Common Stock and Emergence Warrants (the "**Drag-Along Sellers**") owning 50% or more of the Aggregate Common Stock propose to Transfer shares of Common Stock held by them constituting at least 50% of the Aggregate Common Stock, including through a sale of equity interests, merger or sale of all or substantially all assets of the Corporation (a "**Drag-Along Sale**"), the Drag-Along Sellers may at their option (the "**Drag-Along Rights**") require each other holder of Common Stock and Emergence Warrants (the "**Other Stockholders**") to:

(i)      sell a number of shares of the Common Stock and Emergence Warrants owned by such Other Stockholder equal to the Drag-Along Portion of such Other Stockholder to the Person to whom the Drag-Along Sellers propose to sell their shares of Common Stock and/or Emergence Warrants (the "**Drag-Along Buyer**") and on the same terms and conditions as the Drag-Along Sellers (*provided* that in the case of the Emergence Warrants, if the Drag-Along Sellers do not require the exercise of Emergence Warrants pursuant to Section 3.03(a)(iv), the consideration to be paid to the Other Stockholders in respect of Emergence Warrants will be the amount that would have been payable had the Emergence Warrants been exercised prior to the Drag-Along Sale and sold as Common Stock minus the aggregate exercise price payable for the exercise of the Emergence Warrants; *provided*, *further* that such amount shall be no less than $0);

(ii)      if such Drag-Along Sale requires Stockholder approval, with respect to all shares of Common Stock that such Other Stockholder owns or over which such Other Stockholder otherwise exercises voting power, vote (in person, by proxy or by action by written consent, as applicable) all shares of Common Stock in favor of, and adopt, such Drag-Along Sale and to vote in opposition to any and all other proposals that could reasonably be expected to delay or impair the ability of the Drag-Along Sellers to consummate such Drag-Along Sale;

(iii)      subject to Section 3.03(d)(ii), execute and deliver all related documentation and take such other action in support of the Drag-Along Sale as shall reasonably be requested by the Corporation or the Drag-Along Sellers in order to carry out the terms and provision of this Section 3.03, including, without limitation, executing and delivering instruments of conveyance and transfer, and any purchase agreement, merger agreement, indemnity agreement, escrow agreement, consent, waiver, governmental filing, share certificates duly endorsed for transfer (free and clear of impermissible liens, claims and encumbrances), and any similar or related documents;

(iv)      exercise any Emergence Warrants held by the Other Stockholders (to the extent exercisable) immediately prior to the consummation of the Drag-Along Sale and in such case the shares of Common Stock issued on conversion

will be delivered in lieu of the Emergence Warrants; *provided*, *further* that any Other Stockholder that holds Emergence Warrants the exercise price of which is greater than the per share price at which the shares of Common Stock are to be Transferred pursuant to the Drag-Along Sale may, in lieu of such exercise, submit to irrevocable cancellation thereof without any liability for payment of any exercise price with respect thereto;

(v)     not deposit, and to cause their Related Persons not to deposit, except as provided in this Agreement, any shares of Common Stock or Emergence Warrants owned by such Other Stockholder in a voting trust or subject any shares of Common Stock or Emergence Warrants to any arrangement or agreement with respect to the voting of such Common Stock or Emergence Warrants (or the shares of Common Stock receivable upon exercise of such Emergence Warrants), unless specifically requested to do so by the acquirer in connection with the Drag-Along Sale; and

(vi)     waive, and refrain from exercising, any dissenters' rights or rights of appraisal under applicable Law at any time with respect to such Drag-Along Sale.

References to the number of Emergence Warrants shall, except where the context otherwise requires, be determined on the basis of the shares of Common Stock underlying such Emergence Warrants.

(b)     If the consideration to be paid in exchange for the shares of Common Stock or Emergence Warrants pursuant to this Section 3.03 includes any securities and due receipt thereof by any holder of Common Stock or Emergence Warrants would require (x) the registration or qualification of such securities or of any Person as a broker or dealer or agent with respect to such securities or (y) the provision to any Stockholder of any information other than such information as a prudent issuer would generally furnish in an offering made solely to "accredited investors" as defined in Regulation D promulgated under the Securities Act, the Corporation may cause to be paid to any such Other Stockholder in lieu thereof, against surrender of the shares of Common Stock or Emergence Warrants which would have otherwise been sold by such Stockholder, an amount in cash equal to the fair value of the securities which such Other Stockholder would otherwise receive as of the date of the issuance of such securities in exchange for the shares of Common Stock or Emergence Warrants (based on the market price of such other securities if such securities are listed on a National Securities Exchange, or as determined in good faith by the Corporation if not so listed); *provided* that such Other Stockholder shall have the right to object to the determination and require the Corporation retain an independent third-party accounting, valuation, appraisal or investment banking firm of national standing mutually acceptable to the Corporation and the Other Stockholder to determine the then current fair market value of the shares of Common Stock or Emergence Warrants.  The Corporation and the Other Stockholder (or if more than one Other Stockholder is objecting, all objecting Other Stockholders) shall each bear one-half of the fees and expenses of the independent third-party accounting,

Error! Unknown document property name.

valuation, appraisal or investment banking firm selected as set forth in the preceding sentence.

(c)     If the Drag-Along Sellers elect to exercise their Drag-Along Rights, the Drag-Along Sellers shall provide notice of such proposed Drag-Along Sale to the Corporation (a "**Drag-Along Sale Notice**").  Upon receipt of any such Drag-Along Sale Notice, the Corporation shall promptly (but in no event later than five (5) Business Days following receipt thereof) give written notice of such Drag-Along Sale Notice to each Other Stockholder.

(d)     Notwithstanding anything contained in this Section 3.03, the obligations of the Other Stockholders to participate in a Drag-Along Sale are subject to the following conditions:

(i)     the Drag-Along Sale must include all Other Stockholders;

(ii)     each Other Stockholder (A) shall be required to give representations and warranties (in a form customary for transactions of the nature of the Drag-Along Sale) only in relation to its due organization, authority, noncontravention of laws and agreements and title to its shares of Common Stock and Emergence Warrants being transferred in the Drag-Along Sale, (B) shall not be required to agree to any restrictive covenant (such as a non-compete or non-solicit or similar restriction) other than a customary confidentiality covenant, (C) shall not be required to provide any indemnification (x) with respect to any representations, warranties, covenants or agreements made by any Drag-Along Seller, the Corporation (except pursuant to a holdback or escrow as described in clause (D) below) or any other Person or (y) in an amount exceeding the net proceeds received by such Other Stockholder in connection with the Drag-Along Sale, and (D) shall not be subject, in excess of its ratable share of the shares of Common Stock and Emergence Warrants being transferred in the Drag-Along Sale, to any holdback(s) or escrow(s) in respect of potential indemnification obligations (including with respect to indemnification for breaches of representations, warranties, covenants or agreements of the Corporation) or purchase price adjustment(s) pursuant to the applicable definitive purchase agreement;

(iii)     subject to Section 3.03(b), upon the consummation of the Drag-Along Sale, each Other Stockholder will receive the same form of consideration for its shares of Common Stock and Emergence Warrants as is received by the Drag-Along Sellers (*provided* that in the case of the Emergence Warrants, if the Drag-Along Sellers do not require the exercise of Emergence Warrants pursuant to Section 3.03(a)(iv), the consideration to be paid to the Other Stockholders in respect of Emergence Warrants will be the amount that would have been payable had the Emergence Warrants been exercised prior to the Drag-Along Sale and sold as Common Stock minus the aggregate exercise price payable for the exercise of the Emergence Warrants; *provided*, *further* that such amount shall be no less than $0); and

(iv)    if any Drag-Along Sellers are given an option as to the form and amount of consideration to be received as a result of the Drag-Along Sale, all Other Stockholders will be given the same option; *provided, however*, no Other Stockholder shall be entitled to receive any form of consideration that such holder would be ineligible to receive as a result of such holder's failure to satisfy any condition, requirement or limitation that is established in good faith and generally applicable to the Corporation's stockholders.

(e)    This Section 3.03 and the rights and obligations contained herein shall terminate upon the earlier of (i) a Listing or (ii) the consummation of an IPO and shall thereafter have no force or effect.

## ARTICLE 4
### INFORMATION

Section 4.01.   *Information Rights.*  (a) Subject to Section 4.01(b), the Corporation will provide to each Stockholder that owns at least 0.1% of the Warrant Diluted Common Stock (i) audited consolidated annual financial statements no later than 120 days after the end of each calendar year and (ii) unaudited consolidated quarterly financial statements no later than 45 days after the end of each quarterly period other than the last quarterly period of the calendar year.

(b)    No Competitor shall be entitled to receive the information, or have any of the rights, described in Section 4.01(a).

Section 4.02.   *Confidentiality; Sale Support.*  (a) Each Stockholder agrees that Confidential Information furnished and to be furnished to it has been and may in the future be made available in connection with such Stockholder's investment in the Corporation.  Each Stockholder agrees that it shall use, and that it shall direct any Person to whom Confidential Information is disclosed pursuant to clauses (i) through (v) below to use, the Confidential Information only in connection with its investment in the Corporation and not for any other purpose (including to disadvantage competitively the Corporation or any of its Subsidiaries).  Each Stockholder further acknowledges and agrees that it shall not disclose any Confidential Information to any Person, except that Confidential Information may be disclosed:

(i)    to such Stockholder's Representatives (other than a Competitor) in the normal course of the performance of their duties or, in connection with such credit arrangement, to any financial institution providing, or potentially providing, credit to such Stockholder;

(ii)    for purposes of reporting to its, or its Related Persons', stockholders and direct and indirect equity holders and limited partners, in each case other than a Competitor, the performance of the Corporation and its Subsidiaries (or otherwise in connection with customary fundraising, marketing, information or reporting activities of such Persons) and for purposes of including

Error! Unknown document property name.

applicable information in financial statements to the extent required by applicable Law or applicable accounting standards;

*provided* that with respect to the immediately preceding clauses (i) and (ii), any such Persons receiving Confidential Information shall be informed by the Stockholder of the Confidential Information, such Person shall agree and be obligated to keep such information confidential in accordance with the provisions of this Section 4.02 and any Stockholder disclosing such Confidential Information shall be liable for any unauthorized disclosures of such Confidential Information in violation of this Section 4.02 by any such Persons;

(iii)     to any Person to whom such Stockholder is contemplating a *bona fide* Transfer of its Common Stock, other than a Competitor; *provided* that such Transfer would not be in violation of the provisions of this Agreement or the Charter and such potential Transferee is advised of the confidential nature of such information and agrees to be bound by a confidentiality agreement consistent with this Section 4.02 and any Stockholder disclosing such Confidential Information will be liable for any breaches of this Section 4.02 by any such Persons;

(iv)     to any regulatory authority or rating agency to which the Stockholder or any of its Related Persons is subject or with which it has regular dealings; *provided* that such authority or agency is advised of the confidential nature of such information;

(v)     to the extent related to the tax treatment and tax structure of the transactions contemplated by this Agreement (including all materials of any kind, such as opinions or other tax analyses that the Corporation, its Affiliates or its Representatives have provided to such Stockholder relating to such tax treatment and tax structure); *provided* that the foregoing does not constitute an authorization to disclose the identity of any existing or future party to the transactions contemplated by this Agreement or their Affiliates or Representatives, or, except to the extent relating to such tax structure or tax treatment, any specific pricing terms or commercial or financial information;

(vi)     if the prior written consent of the Chief Executive Officer, Chief Financial Officer or General Counsel of the Corporation or the Board of Directors shall have been obtained; or

(vii)     to the extent required by applicable Law (including complying with any oral or written questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process to which a Stockholder is subject); *provided* that such Stockholder agrees to give the Corporation prompt notice of such request(s), to the extent practicable and permitted by Law, so that the Corporation may seek an appropriate protective order or similar relief (and the Stockholder shall cooperate with such efforts by the Corporation (at the expense of the Corporation), and shall in any event make only the minimum disclosure required by such Law).

Error! Unknown document property name.

(b)     Notwithstanding Section 4.02(a)(iii), in connection with a potential Transfer, any transferring Stockholder may provide Confidential Information to a *bona fide* potential transferee (a "**Proposed Transferee**").  Any transferring Stockholder that owns at least 2% of the Aggregate Common Stock can require the Corporation (at the sole cost and expense of such transferring Stockholder), upon receipt by the Corporation of a notice sent by the Proposed Transferee specifying (x) the amount of Common Stock proposed to be Transferred, which shall not be less than 2% of the Aggregate Common Stock, and (y) the identity of the proposed transferees (if known), (i) to provide to the Proposed Transferee reasonable access during normal business hours to the financial and operating data and such other information of the Corporation and its Subsidiaries as may reasonably be requested in connection with such Transfer in order to allow the Proposed Transferee and their representatives to conduct a reasonable and customary due diligence review or (ii) as reasonably requested, instruct the employees, counsel and financial advisors of the Corporation or its Subsidiaries to cooperate with the Proposed Transferee in its investigation of the Corporation (including, as reasonably requested, by participating in a reasonable number of due diligence sessions upon prior notice), so long as, in the case of clauses (i) and (ii), (A) the Proposed Transferee enters into a customary non-disclosure agreement with the Corporation on terms reasonably acceptable to the Corporation, and (B) in the case of a Transfer that is not a Drag-Along Sale, the Proposed Transferee is not a Competitor.  In assessing the reasonableness of a request made pursuant to this Section 4.02(b), the Corporation may take into account the size of the interest subject to the applicable potential transfer.

(c)     Nothing contained herein shall prevent the use (subject, to the extent possible, to a protective order) of Confidential Information in connection with the assertion or defense of any claim by or against the Corporation, its Subsidiaries or any Stockholder or will restrict in any manner the ability of the Corporation or its Subsidiaries to comply with its disclosure obligations under applicable Law. Furthermore, nothing contained herein shall in any way limit or otherwise modify any confidentiality obligations owed by any Stockholder to the Corporation or its Subsidiaries pursuant to any other agreement entered into by such Stockholder, the Corporation or any of their respective Subsidiaries, and this Section 4.02 shall be in addition to such other agreement.

ARTICLE 5

MISCELLANEOUS

Section 5.01.  *General Transfer Restrictions; Joinder.*

(a)     Without limiting the provisions of this Agreement, each Stockholder agrees that it shall not Transfer any Common Stock at any time if such Transfer would not comply with the terms of this Agreement.  As a condition precedent to any Transfer, the Corporation may require an opinion of legal counsel reasonably satisfactory to it that registration under the Securities Act is not required.  Each Person who hereafter acquires Common Stock or an Emergence Warrant in a Transfer from a Stockholder, or receives Common Stock upon exercise of an Emergence Warrant, and is not already a Stockholder shall, as a condition to the effectiveness of such Transfer, execute and deliver a Joinder to

25

this Agreement, and any Transfer or receipt of Common Stock upon exercise of an Emergence Warrant in which the acquirer of Common Stock or Emergence Warrants does not so deliver a Joinder (if applicable) shall be void *ab initio*.

(b)     At any time prior to the earlier of an IPO or the Corporation otherwise becoming subject to the periodic reporting obligations of the Exchange Act, the Corporation may refuse to register any transfer of shares of Common Stock if, as a result of such transfer, the Common Stock and Emergence Warrants, in the aggregate, would be held of record by more than 1,950 holders or more than 450 holders who are not "accredited investors" (as such term is defined in Rule 501(a) promulgated under the Securities Act).  If the Corporation becomes aware that the Common Stock and Emergence Warrants, in the aggregate, becomes held of record by more than 1,900 holders or more than 400 holders who are not "accredited investors" (as such term is defined in Rule 501(a) promulgated under the Securities Act), the Corporation will notify all Stockholders and holders of Emergence Warrants of such fact.

Section 5.02.  *Registration Rights*.  Upon consummation of an IPO, the Corporation shall enter into a registration rights agreement with each Stockholder that owns (together with its Related Persons) at least 5% of the Aggregate Common Stock as of the consummation of an IPO which will be in a form that is customary for registration rights agreements entered into by similar Persons in similar transactions and reasonably acceptable to the Corporation and each Stockholder party thereto.  Without limiting the foregoing, the registration rights agreement shall include and provide for the following with respect to the applicable Stockholders:

(a)     (i) two (2) aggregate post-IPO demand registration rights for each Stockholder that owns (together with its Related Persons) at least 15% of the total shares of Aggregate Common Stock as of the consummation of the IPO (including customary shelf registration rights) and (ii) one (1) post-IPO demand registration right for each Stockholder that owns (together with its Related Persons) at least 7.5% but below 15% of the total shares of Aggregate Common Stock as of the consummation of the IPO (including customary shelf registration rights); *provided* that, in the case of each of clauses (i) and (ii), the Corporation will not be required to effectuate a demand registration more than one time in any six month period and each demand registration right must be for a minimum offering amount, to be more fully detailed in the registration rights agreement;

(b)     unlimited piggyback registration rights (subject to customary exceptions and cutback rights);

(c)     no more than a one hundred eighty (180) day lock-up provision in the case of an IPO, subject to customary exceptions; and

(d)     no more than a ninety (90) day lock-up provision in the case of any other public offering.

Section 5.03.  *Legends*.

(a)      All shares of Common Stock issued to any Person shall bear a legend, or be evidenced by notations in a book entry system including a legend, in substantially the following form:

"THE SECURITIES EVIDENCED HEREBY ARE SUBJECT TO VARIOUS CONDITIONS INCLUDING CERTAIN RESTRICTIONS ON ANY OFFER, SALE, DISPOSITION, TRANSFER AND VOTING AS SET FORTH IN THE STOCKHOLDERS AGREEMENT, DATED AS OF [•], 2021 (THE "**STOCKHOLDERS AGREEMENT**"), BY AND AMONG [LENDER NEWCO] (THE "**CORPORATION**"), AND THE STOCKHOLDERS PARTY THERETO FROM TIME TO TIME, AND THE CERTIFICATE OF INCORPORATION AND BYLAWS OF THE CORPORATION, EACH AS MAY BE AMENDED AND MODIFIED FROM TIME TO TIME.  NO REGISTRATION OR TRANSFER OF SUCH SECURITIES WILL BE MADE ON THE BOOKS AND RECORDS OF THE CORPORATION OR ITS TRANSFER AGENT UNLESS AND UNTIL SUCH RESTRICTIONS SHALL HAVE BEEN COMPLIED WITH.  THE CORPORATION WILL FURNISH WITHOUT CHARGE TO EACH HOLDER OF RECORD OF SUCH SECURITIES A COPY OF THE STOCKHOLDERS AGREEMENT, CERTIFICATE OF INCORPORATION AND BYLAWS, CONTAINING THE ABOVE REFERENCED RESTRICTIONS ON TRANSFERS AND VOTING OF SECURITIES, UPON WRITTEN REQUEST TO THE CORPORATION AT ITS PRINCIPAL PLACE OF BUSINESS."

(b)      All shares of Common Stock issued to any Person, unless the Corporation determines in good faith such shares were issued in reliance on the exemption from registration under the Securities Act provided by Section 1145 of the Bankruptcy Code or another exemption such that the Transfer of such shares are not restricted under the U.S. federal securities laws shall be evidenced by notations in a book entry system including a legend in substantially the following form:

"THE SECURITIES EVIDENCED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT IN ACCORDANCE WITH THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED, OR AN EXEMPTION THEREFROM AND, IN EACH CASE, IN COMPLIANCE WITH APPLICABLE STATE SECURITIES LAWS.  AS A CONDITION TO ANY TRANSFER, THE CORPORATION RESERVES THE RIGHT TO REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE CORPORATION, THAT SUCH REGISTRATION IS NOT REQUIRED."

(c)      The Corporation acting in good faith may make any necessary modifications to the legends set forth in this Section 5.03 for such legends to comply with applicable Law and to achieve the purpose and intent of the transfer restrictions set forth

Error! Unknown document property name.

herein.  If any shares of Common Stock cease to be subject to any and all restrictions on Transfer set forth in this Agreement, the Charter and the Bylaws, the Corporation, upon the written request of the holder thereof, shall amend the notations in the book entry system (or, if certificated, issue to such holder a new certificate) evidencing such shares accordingly.

Section 5.04.  *Specific Enforcement*.  Each Party acknowledges that the remedies at Law of the other Parties for a breach or threatened breach of this Agreement would be inadequate and, in recognition of this fact, any Party, without posting any bond, and in addition to all other remedies that may be available, shall be entitled to obtain equitable relief in the form of specific performance, a temporary restraining order, a temporary or permanent injunction or any other equitable remedy that may then be available.

Section 5.05.  *Assignment*.  Neither this Agreement nor any right, remedy, obligation or liability arising hereunder or by reason hereof shall be assignable by any Party pursuant to any Transfer or otherwise, except as expressly set forth herein.

Section 5.06.  *Amendments*.  No amendment or modification of this Agreement shall be valid unless executed in writing by the Corporation and Stockholders (together with their Related Persons) holding at least a majority of the Aggregate Common Stock; *provided* that (i) so long as the Invesco Stockholders are entitled to any Invesco Director, any amendment or modification of Article 2 (other than Section 2.07) shall also require approval of the Invesco Stockholders if such amendment or modification would be disadvantageous to the Invesco Stockholders, (ii) so long as the Franklin Stockholders are entitled to the Franklin Director, any amendment or modification of Article 2 (other than Section 2.07) shall also require approval of the Franklin Stockholders if such amendment or modification would be disadvantageous to the Franklin Stockholders, (iii) so long as the Nuveen Stockholders are entitled to the Nuveen Director, any amendment or modification of Article 2 (other than Section 2.07) shall also require approval of the Nuveen Stockholders if such amendment or modification would be disadvantageous to the Nuveen Stockholders, (iv) any amendment or modification that adversely affects a Stockholder (in its capacity as a holder of Common Stock or Emergence Warrants, as applicable) (each such Stockholder, an "**Affected Stockholder**") in a manner disproportionate to the manner in which it affects other Stockholders (in their capacities as holders of Common Stock or Emergence Warrants, as applicable) shall also require the approval of Stockholders holding a majority of the Warrant Diluted Common Stock then held by all such Affected Stockholders, and (v) any amendment or modification of any clause of this Section 5.06, or any other provision of this Agreement, that provides for the approval of a given Stockholder or group of Stockholders or approval by at least a specified percentage of Stockholders shall also require approval of that Stockholder or group of Stockholders or at least that specified percentage of Stockholders, as applicable.

Section 5.07.  *Termination*.  Other than Section 4.02, this Agreement shall terminate with respect to a Stockholder as of the time at which such Stockholder ceases to own shares of Common Stock.

Error! Unknown document property name.

Section 5.08.  *Addresses and Notices*.  Any notice, request, demand or instruction specified or permitted by this Agreement will be in writing and will be either personally delivered, or received by certified mail, return receipt requested, or sent by reputable overnight courier service (charges prepaid) to the applicable recipient or by facsimile, email or other electronic transaction at the address set forth below.  Notices will be deemed to have been given hereunder when delivered personally or upon transmission in the case of email, facsimile or other electronic transmission; three (3) days after deposit in the U.S. mail; and one (1) day after deposit with a reputable overnight courier service. Whenever any notice is required to be given by Law or this Agreement, a written waiver thereof signed by the Person entitled to such notice, whether before or after the time stated at which such notice is required to be given, shall be deemed equivalent to the giving of such notice.

Notices to the Corporation shall be sent to:

[Lender Newco]
[Address]
Attn: [•]
Email: [•]

Notices to any Stockholder shall be sent to the address set forth on <u>Schedule A</u> for such Stockholder, as may be updated from time to time.  The Corporation and each Stockholder may update their notice information from time to time by providing written notice in compliance with this Section 5.08.

Section 5.09.  *Governing Law; Jurisdiction; Forum; Waiver of Trial by Jury*.

(a)  *Governing Law*.  This Agreement and any claim, controversy or dispute arising under or related to this Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to the conflicts of laws rules of such state.

(b)  *Jurisdiction*.  The Parties agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the Court of Chancery of the State of Delaware, or to the extent such court does not have subject matter jurisdiction, the United States District Court for the District of Delaware, or to the extent such court also does not have subject matter jurisdiction, another court of the State of Delaware, County of New Castle, so long as one of such courts shall have subject matter jurisdiction over such suit, action or proceeding, and that any case of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware, and each of the Parties hereby irrevocably consents to the exclusive jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by Law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum.  Process

29

in any such suit, action or proceeding may be served on any Party anywhere in the world, whether within or without the jurisdiction of any such court.  Without limiting the foregoing, each Party agrees that service of process on such Party at the address provided pursuant to Section 5.08 shall be deemed effective service of process on such Party.

(c)     *WAIVER OF JURY TRIAL*.  EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 5.10.   *Representations and Warranties.*  Except with respect to Common Stock and Emergence Warrants issued to such Stockholder pursuant to the Plan of Reorganization, each Stockholder represents and warrants to the Corporation and each other Stockholder, and each Transferee or recipient of Common Stock and/or Emergence Warrants represents and warrants to the Corporation and each other Stockholder, upon the Transfer of Common Stock or Emergence Warrants to, or receipt of Common Stock or Emergence Warrants by, such Person, that:

(a)     such Stockholder is acquiring the Common Stock and/or Emergence Warrants being acquired by it for investment and not with a view to distributing all or any part thereof in any transactions which would constitute a "distribution" within the meaning of the Securities Act;

(b)     such Stockholder acknowledges that the Common Stock and Emergence Warrants have not been registered under the Securities Act or any state securities Law, and the Corporation is under no obligation to file a registration statement with the SEC or any state securities commission with respect to the Common Stock or Emergence Warrants;

(c)     such Stockholder is able to bear the complete loss of his, her or its investment in the Common Stock and/or Emergence Warrants;

(d)     such Stockholder or entity is an "accredited investor" (as defined in Rule 501(a) of Regulation D promulgated under the Securities Act) or a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act);

(e)     such Stockholder understands that the exemption from registration afforded by Rule 144 (the provisions of which are known to such person or entity) promulgated by the SEC under the Securities Act depends upon the satisfaction of various conditions, that such exemption is currently not available and that, if applicable, Rule 144 may in many instances afford the basis for sales only in limited amounts;

(f)     such Stockholder, in making his, her or its decision to invest in the Common Stock and/or Emergence Warrants, (i) has relied upon an independent investigation made by such Stockholder and his, her or its representatives (including financial, tax and legal advisors) to the extent believed to be appropriate by such Stockholder and (ii) has been given the opportunity to examine all documents and to ask questions of, and receive answers from, the Corporation and its representatives

30

concerning the business of the Corporation and the terms and conditions of such Stockholder's purchase of his, her or its Common Stock and/or Emergence Warrants;

(g)    such Stockholder is duly authorized to join in this Agreement and the Person executing a Joinder on its behalf is duly authorized to do so;

(h)    the execution, delivery and performance of a Joinder have been duly authorized by such Stockholder and do not require such Stockholder to obtain any consent or approval that has not been obtained and do not contravene or result in a default under any provision of any Law or regulation applicable to such Stockholder or other governing documents or any agreement or instrument to which such Stockholder is a party or by which such Stockholder is bound; and

(i)    this Agreement is valid, binding and enforceable against such Stockholder (including, in the case of a Stockholder that is a trust, the trust property) in accordance with its terms as limited by (A) applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally or (B) laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

Section 5.11.  *No Inconsistent Agreements*.  The Corporation shall not hereafter enter into any agreement with respect to its Common Stock which is inconsistent with or violates the rights granted to the Stockholders in this Agreement.

Section 5.12.  *Entire Agreement*.  This Agreement, the other Organizational Documents, the Plan of Reorganization and any other documents expressly referred to herein or in the Plan of Reorganization embody the complete agreement and understanding among the Parties and supersede and preempt any prior understandings, agreements or representations by or among the Parties, written or oral, which may have related to the subject matter hereof in any way.

Section 5.13.  *Incorporation by Reference*.  Every exhibit, schedule and other appendix attached to this Agreement and referred to herein is hereby incorporated in this Agreement by reference.

Section 5.14.  *Descriptive Headings; Interpretation*.  The descriptive headings of this Agreement are inserted for convenience only and do not constitute a substantive part of this Agreement.  Whenever required by the context, any pronoun used in this Agreement shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns, pronouns and verbs shall include the plural and vice versa. References to any Person shall be deemed to mean and include the successors and permitted assigns of such Person (or, in the case of any governmental authority, Persons succeeding to the relevant functions of such Person).  Reference to any agreement, document or instrument means such agreement, document or instrument as amended or otherwise modified from time to time in accordance with the terms thereof, and if applicable hereof.  Without limiting the generality of the immediately preceding sentence, no amendment or other modification to any agreement, document or instrument

31

that requires the consent of any Person pursuant to the terms of this Agreement or any other agreement will be given effect hereunder unless such Person has consented in writing to such amendment or modification. All references to statutes shall include all amendments of the same and any successor or replacement statutes and regulations promulgated thereunder, and all references to regulations shall include all amendments and any successor or replacement regulations. Wherever required by the context, references to a fiscal year shall refer to a portion thereof. The use of the word "include", "includes" or "including" in this Agreement shall be by way of example rather than by limitation. References to "hereof," "herein," "hereby" and similar terms shall refer to this entire Agreement (including the schedules and exhibits hereto). The use of the words "or," "either" and "any" shall not be exclusive. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

Section 5.15. *Aggregation of Affiliates and Related Persons*. To the extent any action, consent or right under this Agreement requires a threshold level of ownership of Common Stock by a given Stockholder, the ownership of Common Stock by such Stockholder and its Related Persons shall be aggregated for the purposes of satisfying such threshold. To the extent any action, consent or right under this Agreement requires a threshold level of ownership of Emergence Warrants by a given Stockholder, the ownership of Emergence Warrants by such Stockholder and its Related Persons shall be aggregated for the purposes of satisfying such threshold.

Section 5.16. *Independent Agreement by the Stockholders*. The Parties acknowledge that this Agreement does not constitute an agreement, arrangement, or understanding with respect to acting together for the purpose of acquiring, holding, voting, or disposing of any Common Stock and the Stockholders do not constitute a "group" within the meaning of Rule 13d-5 under the Exchange Act, as amended. Nothing contained in this Agreement, any of the other Organizational Documents or the Plan of Reorganization and no action taken by any Stockholder pursuant to this Agreement shall be deemed to constitute or to create a presumption by any parties that the Stockholders are in any way acting in concert or as a "group" (or a joint venture, partnership or association), and each of the Corporation and the Stockholders agree to not assert any such claim with respect to such obligations or the transactions contemplated by this Agreement, the other Organizational Documents or the Plan of Reorganization.

Section 5.17. *Binding Effect; Intended Beneficiaries*. This Agreement shall be binding upon and inure to the benefit of the Parties and their heirs, executors, administrators, successors, legal representatives and permitted assigns. Unless expressly provided in this Agreement, no provision is intended to confer on any Person other than the Parties, and their respective heirs, successors, legal representatives and permitted assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

Error! Unknown document property name.

Section 5.18.   *Creditors*.  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Corporation or any of its Affiliates, and no creditor who makes a loan to the Corporation or any of its Affiliates may have or acquire (except pursuant to the terms of a separate agreement executed by the Corporation in favor of such creditor) at any time as a result of making the loan any direct or indirect interest in Corporation's profits, losses, distributions, capital or property other than as a secured creditor.

Section 5.19.   *Waiver*.  Unless expressly set forth herein, the Parties may not waive any provision of this Agreement, except pursuant to a written instrument signed by the Party or Parties hereto against whom enforcement of such waiver is sought.  No action taken pursuant to this Agreement, including any investigation by or on behalf of any Party, constitutes a waiver by the Party taking such action of compliance with any provision of this Agreement.  The waiver by any Party of any provision of this Agreement is effective only in the instance and only for the purpose that it is given and does not operate and is not to be construed as a further or continuing waiver of such provision or as a waiver of any other provision.  No failure by any Party to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or any other covenant, duty, agreement or condition.

Section 5.20.   *Severability*.  Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable Law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or the effectiveness or validity of any provision in any other jurisdiction, and this Agreement will be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

Section 5.21.   *Further Action*.  The Parties shall execute and deliver all documents, provide all information and take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of this Agreement.

Section 5.22.   *Delivery by Electronic Transmission*.  This Agreement and any signed agreement or instrument entered into in connection with this Agreement or contemplated hereby, and any amendments hereto or thereto, to the extent signed and delivered by means of an electronic transmission, including by a facsimile machine or via email, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.  No Party or to any such agreement or instrument shall raise the use of electronic transmission by a facsimile machine or via email to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through such electronic transmission as a defense to the formation of a contract and each such Party forever waives any such defense.

Error! Unknown document property name.

Section 5.23.   *Counterparts; Effectiveness*.  This Agreement may be executed in separate counterparts (including PDFs), each of which will be an original and all of which together shall constitute one and the same agreement binding on all the Parties. This Agreement shall become effective on the date first set forth above.

[*Remainder of Page Intentionally Left Blank*]

34

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**[Lender Newco]**

By: _____
    Name:
    Title:

**Schedule A**

## **Stockholders**

[*See attached*]

**Exhibit A**

## JOINDER TO STOCKHOLDERS AGREEMENT OF
## [LENDER NEWCO]

ANY CAPITALIZED TERM THAT IS NOT OTHERWISE DEFINED IN THIS JOINDER SHALL HAVE THE MEANING GIVEN TO IT IN THE STOCKHOLDERS AGREEMENT OF [LENDER NEWCO] (THE "**AGREEMENT**") DATED [•], 2021, AS AMENDED FROM TIME TO TIME.  A COPY OF THE AGREEMENT IS ATTACHED TO AND INCORPORATED FOR ALL PURPOSES IN THIS JOINDER.

The undersigned has acquired shares of Common Stock of [Lender Newco], a Delaware corporation (the "**Corporation**"), or Emergence Warrants, from one or more Stockholders and, by signing this Joinder, the undersigned agrees as follows:

1.     THE UNDERSIGNED HAS RECEIVED, READ AND UNDERSTANDS THE AGREEMENT.

2.     THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT BY SIGNING THIS JOINDER IT IS BECOMING A PARTY TO THE AGREEMENT AS A "STOCKHOLDER" JUST AS THOUGH IT HAD SIGNED THE AGREEMENT ITSELF.  ACCORDINGLY, THE UNDERSIGNED AGREES TO BE BOUND BY ALL OF THE TERMS AND PROVISIONS OF THE AGREEMENT AND TO BE SUBJECT TO ALL OF THE OBLIGATIONS IMPOSED ON A STOCKHOLDER BY OR UNDER THE AGREEMENT AND APPLICABLE LAW.  THE UNDERSIGNED RATIFIES AND CONFIRMS EACH AND EVERY ARTICLE, SECTION AND PROVISION OF THE AGREEMENT.

3.     FOR THE AVOIDANCE OF DOUBT, THE UNDERSIGNED REPRESENTS AND WARRANTS THAT THE AGREEMENT CONSTITUTES THE LEGAL, VALID, AND BINDING OBLIGATION OF THE UNDERSIGNED AND IT IS ENFORCEABLE AGAINST IT IN ACCORDANCE WITH ITS TERMS.

*Natural Person:*                                         *Entity:*

_____          _____
(Print Name)                                             (Print Entity Name)

_____          By:_____
 (Signature)                                             (Signature)
                                                         Print Name:_____
                                                         Title:_____

Address:_____          Address:_____
_____          _____
_____          _____

Telephone No. _____          Telephone No. _____

Error! Unknown document property name.

Facsimile No._____          Facsimile No._____

Email address:_____          Email address:_____
_____          _____

Date Signed:_____           Date Signed:_____

The Corporation has accepted this Joinder and admits _____ as a Party to the Agreement effective _____, _____.

                                                                 [Lender Newco]

                                                                 By:_____
                                                                 Name:
                                                                 Title: