IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**SECOND DECLARATION OF CLAYTON GRING IN SUPPORT OF CONFIRMATION
OF THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS**

1.  I, Clayton Gring, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

2.  I am a Managing Director with AlixPartners, LLP ("**AlixPartners**"), an internationally-recognized consulting firm that has a wealth of experience in providing restructuring advisory services both in and out-of-court, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. On October 6, 2020, the Bankruptcy Court entered an order approving the retention of AlixPartners as financial advisors to Fieldwood Energy LLC and its direct and indirect subsidiaries (the "**Company**") (ECF No. 412). I am knowledgeable about and familiar with the Company's businesses and financial affairs.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

3.     I submit this declaration (the "**Declaration**") on behalf of AlixPartners in support of confirmation of the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"). Except as otherwise indicated, all statements in this Declaration are based on (a) my personal knowledge of the Debtors' operations and finances, (b) my review of relevant documents, (c) information provided to me by AlixPartners employees working under my supervision, (d) information provided to me by, or discussions with, the members of the Debtors' management team or their other advisors, and (e) my opinion based upon my experience as a restructuring professional. If called to testify, I could and would testify to each of the facts set forth herein. I am not being compensated specifically for this testimony other than through payments received by AlixPartners as a professional retained as the Debtors' restructuring advisor in these Chapter 11 Cases.

4.     As explained in detail below, the following table sets out a summary of the appropriate amount to reserve for claims and other costs at exit to be paid by the Debtors on the Effective Date:

| Exit Cost Category | | Low | | High |
|---|---|---|---|---|
| **Claims Reserve:** | | | | |
| Professional Fee Escrow | $ | 15.6 | $ | 27.6 |
| Cure Amounts | | 6.8 | | 7.5 |
| 503(b)(9) Claims | | 0.4 | | 0.6 |
| Allowed Other Secured Claims | | 3.9 | | 21.0 |
| GUC Cash Pool | | 1.2 | | 1.7 |
| Allowed Priority Tax Claims | | – | | 0.0 |
| **Total Estimated Claims Reserve** | | **27.9** | | **58.2** |
| | | | | |
| **Other Exit Fees and Costs:** | | | | |
| Sale Reserve Costs | | 2.5 | | 2.7 |
| Other Exit Fees and Costs | | 10.1 | | 16.4 |
| Plan Admin. Expense Reserve | | 8.0 | | 8.0 |
| **Total Estimated Other Exit Fees and Costs** | $ | **20.6** | $ | **27.1** |
| | | | | |
| **Total Estimated Claims Reserve and Other Exit Costs** | $ | **48.5** | $ | **85.3** |

*($ in millions)*

A.  **Professional Fees**

5.   The estimates for the professional fee escrow and other exit fees and costs were primarily prepared by 1) documenting historical billings by all of the Debtors' professional firms and any other professional firms involved in the Debtors' restructuring, and 2) estimating a high and low range of those bills to ultimately estimate how much will remain outstanding as of the Effective Date. The table below summarizes the results of those calculations:

|  | Low | High |
|---|---:|---:|
| **Professional Fee Escrow Account:** | | |
| Debtor Advisors | $ 14,300 | $ 24,335 |
| UCC Advisors | 1,260 | 3,236 |
| **Total Professional Fee Escrow** | 15,560 | 27,571 |
| | | |
| **Other Exit Fees and Costs:** | | |
| Lender Professionals | 7,905 | 12,363 |
| Board Fees | 1,250 | 1,500 |
| UST Fees | 250 | 250 |
| Claims Agent | 150 | 250 |
| Other | 500 | 2,000 |
| **Total Other Professional Fees** | 10,055 | 16,363 |
| | | |
| **Total** | $ 25,615 | $ 43,934 |

*($ in thousands)*

B.  **Cure Amounts**

6.   Cure costs were estimated by comparing the *Second Amended Schedule of Assumed Contracts*, attached as Exhibit A to the *Notice of Filing of Second Amended Schedule of Assumed Contracts and Cure Amounts* (ECF No. 1549), with any objections that were filed, and working with counsel and the Debtors to determine which additional contracts may require cures beyond what was originally estimated in the Second Amended Schedule of Assumed Contracts. The following table identifies the estimated and potential costs of curing the agreements:

3

| Category | Cure Estimate Low | Cure Estimate High |
|---|---|---|
| Non-Oilfield Services | $ 2,887 | $ 2,887 |
| Land and Marketing | 1,259 | 1,952 |
| Oilfield Services | 1,205 | 1,205 |
| Operating Agreement - Other | 62 | 62 |
| Other G&A | 1,346 | 1,346 |
| **Total** | **$ 6,759** | **$ 7,452** |

*($ in thousands)*

### A. 503(b)(9) Claims

7. The estimates for the 503(b)(9) claims reserve were prepared by 1) cataloguing the claims asserting 503(b)(9) priority and 2) reducing or removing claims for services or other foundations not covered by 503(b)(9). The following table summarizes the estimate for the potential cost of 503(b)(9) claims:

| Total 503(b)9 Claims Estimate | Low | High |
|---|---|---|
| **Total Asserted Admin Claims** | $ 5,280 | $ 5,280 |
| Less: Claims Identified for Non-Substantive Objections | (3,001) | (3,001) |
| **Total Remaining Asserted Admin Claims** | **2,279** | **2,279** |
| Less: Non-503(b)9 AP and Tax Claims | (1,288) | (1,099) |
| Less: Working Interest / Predecessor Claims | (359) | (359) |
| Less: Royalty Claims | (250) | (250) |
| **Total Remaining Admin Claims** | **$ 382** | **$ 572** |

*($ in thousands)*

### B. Allowed Priority Tax Claims

8. The estimates for allowed priority tax claims were prepared by working with counsel and the Debtors to determine the amount that should be included in the Allowed Priority Tax Claims estimate. Two tax claims asserted for approximately $11,000 are included in the estimates for allowed priority tax claims. All other asserted priority tax claims were determined to be either satisfied, invalid, or not yet due.

C.  **Allowed Other Secured Claims**

9. The estimates for Allowed Other Secured Claims were prepared by analyzing all asserted secured claims and removing any amounts related to claims that are duplicative and redundant in nature. These types of claims are marked for non-substantive objections. Asserted claims that have been resolved and will be withdrawn were also removed from the estimated allowed amounts. Claims filed by secured debt holders were removed from the analysis as they are being treated separately in the Plan. In addition, invalid tax and royalty claims were removed from the secured claims estimates. Any asserted secured amounts remaining after the adjustments mentioned above were split into three general categories: working interest owner claims, JIB/gathering and transportation claims, and trade vendor claims.

|  | Amount |
|---|---:|
| **Total Asserted Secured Claims ($)** | $ 15,071,429 |
| Less: Claims Identified for Non-Substantive Objections | (11,293,066) |
| Less: Asserted Secured Debt Claims | (1,966,835) |
| Less: Claims to be Withdrawn | (742,361) |
| Less: Invalid Tax/Royalty Claims | (1,354) |
| **Remaining Asserted Secured Claims** | $ 1,067,813 |
| *Working Interest Owner Claims* | *1,031,663* |
| *JIB / Gathering and Transportation Claims* | *13,959* |
| *Trade Vendor Claims* | *22,191* |

*($ in thousands)*

10. Secured claims asserted by working interest owners were generally filed for either cash advances to the operator, contingency P&A obligations, or underlying vendor liens. Claims filed for contingent P&A obligations were excluded from the estimates for Allowed Other Secured Claims. In addition, claims asserted for cash advances made to the operator were excluded from the estimates as it is my understanding that the associated JOA only affords a security interest for the Debtors' proportionate share of expenses. Claims asserted for underlying vendor liens were reduced for those vendors that have been satisfied through executed trade agreements, and the

remaining asserted amounts for underlying vendor liens, for both the Debtors' and the working interest owners' proportionate share, are reflected in the low / high estimates in the table below. In addition, all other claims asserted by working interest owners that have either been resolved or are redundant in nature were removed from the estimates for Allowed Other Secured Claims.

| | | Low | | High |
|---|---|---:|---|---:|
| **Asserted Secured Working Interest Owner Claims** | $ | 1,031,663 | $ | 1,031,663 |
| Less: Contingent P&A Obligations | | (958,848) | | (958,848) |
| Less: Duplicative Asserted Amounts | | (34,442) | | (34,442) |
| Less: Resolved Claims | | (21,487) | | (22,016) |
| Less: Vendor Lien Claims Satisfied by Plan | | (8,058) | | – |
| Less: WI Owner Proportionate Share of Indemnification Claims | | (6,721) | | – |
| Less: Cash Advance to Operator | | (2,106) | | (2,106) |
| **Remaining Potential Secured Working Interest Owner Claims** | $ | 0 | $ | 14,251 |

*($ in thousands)*

11. Estimates for secured claims asserted for JIB / gathering and transportation amounts were prepared by working with counsel and the Debtors. Claims that have been or will be satisfied by the Effective Date or are disputed by the Debtors were removed from the secured claims estimates. Similarly, claims that are duplicative or redundant in nature to other asserted claims were removed from the Allowed Other Secured Claims estimates. Lastly, the Valero claim was removed from the secured claims estimate as Valero's claim for security is based wholly on an alleged right to offset mutual prepetition debts. No separate funding would be required to meet the offset.

| | | Low | | High |
|---|---|---:|---|---:|
| **Asserted JIB/Gathering and Transportation Claims** | $ | 13,959 | $ | 13,959 |
| Less: Paid/Disputed Amounts | | (7,422) | | (7,422) |
| Less: Valero Litigation Offset | | (2,103) | | (2,103) |
| Less: Duplicative Asserted Amounts | | (989) | | (989) |
| Less: JIBs to be Paid in the Ordinary Course | | (2,753) | | – |
| **Remaining Potential JIB/Gathering and Transportation Claims** | $ | 692 | $ | 3,445 |

*($ in thousands)*

12. The estimated allowed amounts for secured claims asserted by trade vendors were prepared by working with counsel and the Debtors. Certain vendors that asserted

secured claims subsequently agreed to unsecured treatment for their claims, and these claims were accordingly removed from the secured claims estimates. Claims that were asserted without sufficient support for invalid amounts that do not match the Debtors' books and records were also removed from the secured claims estimate. In addition, claims asserted by vendors who are primed by the lenders' mortgage on the associated properties are removed from the claims estimate, and any claims asserted by vendors against properties with a negative PV 10 value per the Debtors' book and records are also removed from the secured claims estimate.

|  | Amount |
|---|---:|
| **Asserted Secured Trade Vendor Claims** | $ 22,191 |
| Less: Vendors Agreeing to Unsecured Status | (14,012) |
| Less: Invalid Asserted Amounts | (2,191) |
| Less: Asserted Amounts on Encumbered Properties | (2,130) |
| Less: Asserted Amounts on Properties with PV10 < $0 | (602) |
| **Remaining Potential Secured Trade Vendor Claims** | $ 3,256 |

*($ in thousands)*

13. Based on the above, the low and high estimates for Allowed Other Secured Claims are outlined in the table below:

| Total Estimate for Potential Allowed Secured Claims | Low | High |
|---|---:|---:|
| Remaining Potential Secured Working Interest Owner Claims | $ 0 | $ 14,251 |
| Remaining Potential JIB/Gathering and Transportation Claims | 692 | 3,445 |
| Remaining Potential Secured Trade Vendor Claims | 3,256 | 3,256 |
| **Remaining Potential JIB/Gathering and Transportation Claims** | $ 3,948 | $ 20,951 |

*($ in thousands)*

D. **Class 6A**

14. The estimates for Class 6A were prepared by working with the Debtors and its advisors to review the proofs of claim asserted for all trade creditors electing to participate in Class 6A of the Plan. These claims were compared to the Debtors' books and records to arrive at a low and high estimate of allowed pre-petition amounts. A fourteen percent recovery is applied to the low and high estimates of allowed amounts to arrive at the 6A reserve amount:

7

| Unsecured Estimates | Low | | High |
|---|---:|---|---:|
| Asserted Claims by Vendor Electing Treatment in Class 6A | $ 8,242 | $ | 11,561 |
| Scheduled Claims for Vendors Electing Treatment in Class 6A | 406 | | 406 |
| **Total Estimated Class 6A Claims** | **8,648** | | **11,967** |
| **Estimated Recovery @ 14% Payout** | $ 1,211 | $ | 1,675 |

*($ in thousands)*

### E. Sale Reserve Costs

15. The sale reserve costs are comprised of estimates for both accrued and unpaid taxes and other litigation costs. Estimates for accrued and unpaid franchise tax, property tax and severance taxes are estimated to be $1.1 million to $1.3 million as of the effective date. With respect to other litigation costs, the Debtors have a $100,000 deductible per personal injury claim. To date, fourteen personal injury claims have been filed, and the Debtors are estimating a reserve of $1.4 million for such claims.

Dated: June 16, 2021
      Houston, Texas

                                                    /s/ Clayton Gring
                                                    Clayton Gring