IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**SUPPLEMENTAL OBJECTION OF ASPEN AMERICAN INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, EVEREST REINSURANCE COMPANY, AND SIRIUS AMERICA INSURANCE COMPANY TO THE FIFTH AMENDED CHAPTER 11 PLAN AND REQUEST FOR INSERTION OF LANGUAGE INTO THE PROPOSED CONFIRMATION ORDER**
(Relates to Docket No. 1629)

Aspen American Insurance Company ("Aspen"), Berkley Insurance Company ("Berkley"), Everest Reinsurance Company ("Everest"), and Sirius America Insurance Company ("Sirius" and together with Aspen, Berkley and Everest, the "Sureties"), by and through their undersigned counsel, hereby file this *Supplemental Objection to the Fifth Amended Chapter 11 Plan and Request for Insertion of Language into the Proposed Confirmation Order* (the "Supplemental Objection").[2] In support of the Supplemental Objection, the Sureties respectfully submit as follows:

---

[1] The Debtors, each of which have filed a separate voluntary petition, are: Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Inc.; Fieldwood Energy Offshore LLC; Fieldwood Onshore LLC; Fieldwood SD Offshore LLC; Fieldwood Offshore LLC; FW GOM Pipeline, Inc.; GOM Shelf LLC; Bandon Oil and Gas GP, LLC; Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Galveston Bay Pipeline LLC; and Galveston Bay Processing LLC.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended Disclosure Statement and Exhibits attached thereto. [Dkt. No. 1285].

2

## SUPPLEMENTAL OBJECTION

1. The Sureties filed their original Objection to the Debtors' Fourth Amended Chapter 11 Plan on June 2, 2021. [Dkt. No. 1461].

2. On June 16, 2021, two days prior to the scheduled Confirmation Hearing, the Debtors filed a Fifth Amended Chapter 11 Plan (the "Plan"). [Dkt. No. 1629].

3. This newly-filed Plan was in addition to numerous other Plan supplements that were filed immediately preceding the scheduled Confirmation Hearing, with hundreds, if not thousands, of new pages of documents the Sureties have never seen before and which they continue to sort through. These new documents from the Debtors include certain changes which the Debtors inserted at the last minute, materially affecting the rights of creditors, including the Sureties.

4. The Confirmation Hearing was adjourned at the last minute to June 21, 2021, due to the declaration of Juneteenth as a federal holiday on June 17, 2021. Were it not for the declaration of Juneteenth as a federal holiday, the Sureties would not have had time to submit this Supplemental Objection, or be prepared to argue the merits of this Supplemental Objection.

5. This Supplemental Objection is submitted to address language inserted into the Plan at the last minute, which purports to limit the subrogation rights of the Sureties. The language at issue is set forth in section 5.13(a) of the Plan. [Dkt. No. 1629, p. 59]. The language that the Debtors have inserted into the Plan reads as follows:

> Notwithstanding anything herein to the contrary, co-lessees of the Debtors, predecessors in interest with respect to any of the Debtors' assets, and surety providers shall not be entitled, under any circumstances, to claim a right of subrogation, if any such right exists, against the Debtors, the Post-Effective Date Debtors, FWE I, any FWE Additional Entity or NewCo and its subsidiaries (including Credit Bid Purchaser), as to any Governmental Unit's rights, including, but not limited to, any rights provided to the United States under this Plan.

*Id.*

6. The language is under the heading titled "Abandonment of Certain Properties." *Id.* at 58. And thus, as an initial matter, it is unclear the reach of the language and whether it is intended to only apply to the Abandoned Properties, or whether it is intended to apply as written.

7. If the language is intended to apply only to the Abandoned Properties, then the Sureties request that this be made clear in the Plan. If the language is intended to apply to more than just the Abandoned Properties, then the Sureties object to this language and ask that the Court strike it from the Plan.

8. As stated by the United States Supreme Court in *Pearlman v. Reliance Ins. Co.*, "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. This rule, widely applied in this country and generally known as the right of subrogation." 371 U.S. 132, 136-37 (1962); *see also Am. Sur. Co. of New York v. Bethlehem Nat. Bank of Bethlehem, Pa.*, 314 U.S. 314, 317 (1941) (describing a surety's subrogation rights as "one of the[] oldest doctrines" and noting that "[a] surety is a special kind of secured creditor. For its claim against the principal is secured by its right of subrogation to the remedies of the creditor which it has been compelled to pay.").

9. These subrogation rights are obtained by the surety even where the obligee is a governmental entity. *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 622-23 (Bankr. S.D. Tex. 2004) (noting that a surety is subrogated to the government for recovery of all monies the surety has paid) (citing *In re J. Menist*, 289 F. 229, 231 (2d Cir. 1923)); *Boaz v Ferrell*, 152 S.W. 200, 202 (Tex. Civ. App. 1912) (holding that a performing surety is subrogated to the State of Texas' rights for enforcement of payment as against the principal); *United States v. Nat'l Sur. Co.*, 254 U.S. 73, 75

(1920) (noting that a performing surety is subrogated to the United States' rights for enforcement of payment as against the principal).

10. Post-confirmation, Credit Bid Purchaser and FWE I will be the primary obligors on their respective leases. 30 C.F.R. §§ 250.1702, 556.504, 556.605, 556.713. Their sureties will be the secondary obligors, and the current sureties will be the sureties for the predecessor owners (*i.e.* Fieldwood Energy, LLC) assuming the bonds are non-cancellable.

11. Both Credit Bid Purchaser and FWE I intend to operate the properties and derive substantial revenue from the properties. [Dkt. No. 1285-2, pp. 439-448].

12. Section 509 of the Bankruptcy Code does not apply to the Sureties' subrogation rights because no claims have been made on the Sureties' bonds, nor have the Sureties made "payment" under their bonds. *See* 11 U.S.C. § 509 ("Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that *pays* such claim, is subrogated to the rights of such creditor to the extent of such payment.") (emphasis added); *see also* H.R. Rep. No. 95-595, at 358 (1977) ("Subsection (A) subrogates the codebtor . . . to the rights of the creditor, to the extent of any *payment* made by the codebtor to the creditor.") (emphasis added); S. Rep. No. 95-989, at 7 (1978) (same).

13. Common law subrogation will, however, apply in the event a claim is made upon any of the Sureties' bonds and the Sureties make payment. *In re Campbell*, 361 B.R. 831, 844 (Bankr. S.D. Tex. 2007), *aff'd in part, rev'd in part on other grounds*, *Campbell v. Countrywide Home Loans, Inc.*, 07-20499, 2008 WL 3906382 (5th Cir. Aug. 26, 2008) (noting that a creditor could recover under either common law subrogation or section 509 of the Bankruptcy Code).

14. There is no basis under the Bankruptcy Code to permit the Debtors' subrogation language to be added to the Plan, which language concerns future issues related to ongoing operations of a reorganized debtor and third party Credit Bid Purchaser, related to claims which may or may not ever arise.

15. Although section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," this authority is limited. *See, e.g.*, *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) ("While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. That statute does not authorize the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 274 (8th Cir. 1983) ("[A] bankruptcy court may not exercise its equitable powers to create substantive rights which do not exist under state law.") (citing case law); *In re Salinas*, 258 B.R. 913, 919 (Bankr. W.D. Wis. 2001), *rev'd on other grounds*, 01-C-234-S, 2001 WL 829951 (W.D. Wis. June 13, 2001) ("While § 105(a) provides the bankruptcy courts with broad, equitable powers, they are not without limitations. The section does not authorize relief which is inconsistent with more specific laws . . . . More importantly, bankruptcy courts should not exercise these equitable powers to create additional property rights or remedies in favor of a debtor or other party in interest unless those rights or remedies are statutorily authorized under the bankruptcy code.") (internal citation and emphasis omitted); *In re Bartel*, 404 B.R. 584, 591 (B.A.P. 1st Cir. 2009)

("Despite the broad language of § 105 . . . there are important limitations on a bankruptcy court's authority to act pursuant to § 105(a) . . . . Section 105(a) functions as a catch-all provision effectively filling in gaps to preserve the integrity of the bankruptcy system . . . a bankruptcy court may not apply § 105(a) in a manner that is inconsistent with another Code provision.") (internal citations and quotation marks omitted).

16. This Court's authority is also limited under section 1123(a)(5), which provides that:

> [n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall —
>
> . . .
>
> (5) provide adequate means for the plan's implementation such as—
>
> (A) retention by the debtor of all or any part of the property of the estate;
>
> (B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;
>
> (C) merger or consolidation of the debtor with one or more persons;
>
> (D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate;
>
> (E) satisfaction or modification of any lien;
>
> (F) cancellation or modification of any indenture or similar instrument;
>
> (G) curing or waiving of any default;
>
> (H) extension of a maturity date or a change in an interest rate or other term of outstanding securities;
>
> (I) amendment of the debtor's charter; or
>
> (J) issuance of securities of the debtor, or of any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose; . . . .

11 U.S.C. § 1123(a)(5).

17. As one court has noted, section 1123(a)(5):

> reads like a debtor's license to rewrite the law to its liking—in ways far outside the comfort zone inhabited by the unobjectionable staples of chapter 11 plans and, more to the point, beyond what Congress can plausibly have intended. Freedom from regulation, from taxation, from the laws of property and contract: these and many other horrible imaginings, preemptive effects that Congress cannot plausibly have intended, might be justified as conferring an advantage needed to implement a plan. Therefore, when they have acknowledged the preemptive effect of § 1123(a)(5), courts have routinely hastened to add, as do we, that it is not unbounded.

*In re Irving Tanning Co.*, 496 B.R. 644, 663 (B.A.P. 1st Cir. 2013) (internal citations and quotations omitted). The *Tanning* court went on to further note several limitations to the preemption set forth in section 1123(a)(5), two of which are pertinent here. First, the *Tanning* court stated that "[e]ven in instances of express preemption, the preemption in favor of state law applies, requiring us to accept a plausible alternative reading that disfavors preemption." *Id.* at 663 (quoting *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355 (3d Cir. 2012)). The *Tanning* court further noted that under 1123(a)(5) "otherwise applicable nonbankruptcy law is preempted only as to those specified means that are 'adequate' . . . to the plan's implementation." *Id.* at 664. "'Adequate' is not defined in the Bankruptcy Code. It means 'sufficient, commensurate, or equal to what is required.'" *Id.* (citing *Black's Law Divisionary*, p. 39 (6th ed. 1990)). It also means, "barely satisfactory or sufficient." *Id.* (citing The *American Heritage Dictionary*, p. 79 (second college ed. 1992)). "Therefore, only those means may preempt state law that are sufficient for the implementation of the plan: they must be sufficient to implement the plan, equal to what is required, but also not more than is required." *Id.*

18. The Debtors have no basis for attempting to extinguish subrogation rights of the Sureties which do not yet exist, and which may never exist as to entities being created under the

Plan, including FWE I and third party Credit Bid Purchaser, who will be the primary obligors post-Effective Date if the Plan is confirmed.

19. If either FWE I or Credit Bid Purchaser fails to perform its decommissioning obligations, and the Sureties are required to perform those obligations, then the Sureties should unequivocally be entitled to subrogate to the rights of the government and pursue a claim against either of them.

20. The risk taken by the Sureties when they issued their bonds was limited and took into account the Sureties' rights of subrogation in the event a claim was made on the bonds, and those claims were paid, so as to mitigate the Sureties' risk. Respectfully, this Court does not have the authority to order a forfeiture of the Sureties' subrogation rights.

## REQUEST FOR INSERTION OF LANGUAGE INTO THE PROPOSED CONFIRMATION ORDER

21. In addition to the foregoing objection, the Sureties request that this Court insert the following language into the proposed Confirmation Order:

> Notwithstanding anything to the contrary set forth in this Confirmation Order and/or in the Plan, nothing in this Confirmation Order and/or the Plan shall, or be deemed to: (a) adjudicate or modify the rights of any surety provider (the "Sureties") under any surety bonds issued by the Sureties on behalf of the Debtors, their non-Debtor affiliates, or otherwise (the "Surety Bonds") or under applicable law; (b) require the Sureties to issue any new surety bonds or extensions or renewals of the Surety Bonds. In furtherance thereof, nothing in Article X of the Plan, Restructuring Transactions, Additional Predecessor Agreement Documents, Apache Definitive Documents, Initial Plan of Merger, or any document or agreement relating to the Plan or its implementation shall be deemed to bar, impair, enjoin, release, alter, diminish or enlarge any of the rights or defenses of the Sureties against any person other than the Debtors to the extent provided in the Plan and/or this Confirmation Order, or otherwise limit the Sureties from exercising their rights, including all subrogation rights, under or related to any of the Surety Bonds, letters of credit, indemnity agreements, or the common law of suretyship; (c) constitute a waiver or release of any rights or defenses that the Sureties hold against any person other than the Debtors to the extent provided in the Plan and/or this Confirmation Order, including, but not limited to, any obligee on any of the Surety Bonds, the Federal Government, Credit Bid Purchaser or its subsidiaries or

designees, co-lessees of the Debtors, Apache, and/or any predecessors in interest with respect to any of the Debtors' assets. For the avoidance of doubt, except as to the Debtors, the Sureties' rights and defenses are not released, discharged, precluded or enjoined by the Plan, this Confirmation Order or any agreements with third parties.

For the avoidance of doubt, no Surety Bond is being assumed and/or assigned and/or allocated to any entity under the Plan, including Credit Bid Purchaser, FWE I, FWE III and/or FWE IV, which all shall be required to obtain their own bonding.

22. The Sureties intend to work with the Debtors in the interim to see if the parties can agree to language to be inserted into the proposed Confirmation Order.

## CONCLUSION

23. For the reasons stated herein, the Sureties respectfully submit that the Court should either limit the subrogation language to apply only to Abandoned Properties or, in the alternative, strike the subrogation language altogether. The Sureties further request that the Court insert the language above into the proposed Confirmation Order.

(*remainder of page intentionally left blank*)

Dated: June 20, 2021

        Respectfully submitted,

        HUSCH BLACKWELL LLP

        By:  */s/ Randall A. Rios*
            Randall A. Rios
            State Bar No. 16935865
            Timothy A. Million
            State Bar No. 24051055
            600 Travis, Suite 2350
            Houston, Texas 77002
            Tel:  713-525-6226
            Fax:  713-647-6884
            Email:  randy.rios@huschblackwell.com
            Email:  tim.million@huschblackwell.com

        **CO-COUNSEL FOR ASPEN AMERICAN INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, EVEREST REINSURANCE COMPANY AND SIRIUS AMERICA INSURANCE COMPANY**

        -AND-

        Armen Shahinian, Esq. (admitted *pro hac vice*)
        (ashahinian@csglaw.com)
        Scott A. Zuber, Esq. (admitted *pro hac vice*)
        (szuber@csglaw.com)
        Darren Grzyb, Esq. (admitted *pro hac vice*)
        (dgrzyb@csglaw.com)
        Jase A. Brown, Esq. (admitted *pro hac vice*)
        (jbrown@csglaw.com)

        Chiesa Shahinian & Giantomasi PC
        One Boland Drive
        West Orange New Jersey 07052

        **ATTORNEYS FOR ASPEN AMERICAN INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, EVEREST REINSURANCE COMPANY AND SIRIUS AMERICA INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

I certify that on June 20, 2021, a copy of this document was served by electronic service on all counsel of record *via* the Court's CM/ECF system.

*/s/ Timothy A. Million*
Timothy A. Million
