**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY, LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |

**DECLARATION OF MICHAEL GILROY IN SUPPORT OF THE**
**OBJECTION TO CONFIRMATION OF THE DEBTORS' PLAN FILED BY**
<u>**XTO OFFSHORE, INC., HHE ENERGY COMPANY, AND XH, LLC**</u>
**[Relates to Docket Nos. 1476 and 1517]**

I, Michael Gilroy, hereby declare under penalty of perjury:

1.      I am the Treasurer of XTO Energy Inc., an Exxon Mobil Corporation subsidiary and an affiliate of XTO Offshore, Inc., HHE Energy Company, and XH, LLC (collectively, with their respective affiliates and subsidiaries, the "<u>XTO Entities</u>"). As the Treasurer of XTO Energy Inc., I am generally familiar with the day-to-day operations, business and financial affairs, and books and records of the XTO Entities.

2.      I submit this Declaration in the support of the *Amended Supplemental Objection by XTO Offshore, Inc., HHE Energy Company, and XH, LLC to (A) the Fourth Amended Joint Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "<u>Plan Objection</u>") [Docket No. 1476].

3.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the XTO Entities' employees, operations and finances, information learned from my review of relevant documents, information supplied to me by other members of the XTO Entities' management and their advisors, or my opinion based on my

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

experience, knowledge and information concerning the XTO Entities' operations and financial affairs. I am over the age of 18, and I am authorized to submit this Declaration on behalf of the XTO Entities. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

4.     As part of their regularly conducted business activities, in conjunction with the sale or assignment of oil and gas leases or related properties or interests carrying certain abandonment liabilities, the XTO Entities regularly obtain performance bonds from parties acquiring oil and gas leases or related properties or interests from the XTO Entities. My job responsibilities as the Treasurer of XTO Energy Inc. include ensuring that such performance bonds are obtained from successors-in-interest to the XTO Entities in conjunction with the sale or divestiture of any oil and gas or related properties or interests by the XTO Entities.

5.     Attached hereto as **Exhibit A** is a true and correct copy of Performance Bond No. RLB0013981 (the "RLB Bond") issued pursuant to the Purchase and Sale Agreement (the "Dynamic PSA") dated effective as of August 1, 2011 among Dynamic Offshore Resources, LLC, as principal, XTO Offshore, Inc., HHE Energy Company, and XH, LLC, collectively as the obligee, and RLI Insurance Company, as surety. The RLB Bond (i) was acquired by the XTO Entities at or near the time of the closing of the Dynamic PSA, (ii) has been maintained by the XTO Entities in the ordinary course of their regularly conducted business activities, and (iii) was received by the XTO Entities in the ordinary course of their regularly conducted business activities.

6.     Attached hereto as **Exhibit B** is a true and correct copy of Performance Bond No. 022220643 (the "Liberty Bond") among Fieldwood Energy LLC, as principal, XH, LLC, as obligee, and Liberty Mutual Insurance Company, as surety, issued pursuant to the agreement pursuant to which Fieldwood Energy LLC acquired XH, LLC assets from Apache Corporation on September 30, 2013 (the "Fieldwood Agreement"). The Liberty Bond (i) was acquired by the XTO Entities at or near the time of the closing of the Fieldwood Agreement, (ii) has been maintained by the XTO Entities in the ordinary course of their regularly conducted business activities, and (iii) was

received by the XTO Entities in the ordinary course of their regularly conducted business activities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated:  June 17, 2021

Michael Gilroy
Treasurer
XTO Energy Inc.

# EXHIBIT "A"



RLI Insurance Company

2925 Richmond Avenue ┊ Suite 1600 ┊ Houston, TX 77098
P: 713-961-1300 ┊ F: 713-961-0285 ┊ www.rlicorp.com

## BOND RIDER NO. 2

Attaching to and forming part of Performance Bond No. RLB0013981, executed August 31, 2011, on behalf of Fieldwood Energy Offshore LLC (f/k/a SandRidge Energy Offshore LLC) as Principal, in favor of XTO Offshore Inc., HHE Energy Company and XH, LLC (collectively the Obligee), issued by RLI Insurance Company as Surety, in the amount of Thirty Two Million, Eight Hundred Ninety Eight Thousand, Five Hundred Seventy Two and No/100 Dollars ($32,898,572.00).

It is understood and agreed that effective May 26, 2017, the amount of this bond is increased by Six Million, Nine Hundred Eight Thousand, Six Hundred Eighty Three and No/100 Dollars ($6,908,683.00).

The total penal sum of the bond is now amended to read Thirty Nine Million, Eight Hundred Seven Thousand, Two Hundred Fifty Five and No/100 Dollars ($39,807,255.00).

It is also understood and agreed that effective June 1, 2016, Surety's address is amended to read:

**RLI Insurance Company**
**2925 Richmond Avenue, Suite 1600**
**Houston, TX  77098**

All other conditions and terms to remain as originally written or previously amended by rider.

Signed, Sealed and dated this 26th day of May, 2017.

Fieldwood Energy Offshore LLC
(f/k/a SandRidge Energy Offshore LLC)
Principal

By: _____

John H. Smith   Senior Vice President –
Land and Business Development
(Typed Name & Title)

RLI Insurance Company
2925 Richmond Avenue, Suite 1600
Houston, TX  77098
Surety

By: _____
Robbie Duxbury, Attorney-in-Fact

**DIFFERENT WORKS**



**RLI Insurance Company**
P.O. Box 3967
Peoria, IL 61612-3967
Phone: (309) 692-1000   Fax: (309) 683-1610

# POWER OF ATTORNEY
## RLI Insurance Company

RLB0013981

*Know All Men by These Presents:*

That the _____ **RLI Insurance Company** _____, a corporation organized and existing under the laws of the State of _____ Illinois _____, and authorized and licensed to do business in all states and the District of Columbia does hereby make, constitute and appoint:

Robbie Duxbury

in the City of _____ Houston _____, State of _____ Texas _____, as Attorney in Fact, with full power and authority hereby conferred upon him/her to sign, execute, acknowledge and deliver for and on their behalf as Surety and as their act and deed, all of the following classes of documents to-wit:

$39,807,255.00

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in any action or proceeding in any court of law or equity; policies indemnifying employers against loss or damage caused by the misconduct of their employees; official, bail and surety and fidelity bonds. Indemnify in all cases where indemnity may be lawfully given; and with full power and authority to execute consents and waivers to modify or change or extend any bond or document executed for this Company, and to compromise and settle any and all claims or demands made or existing against said Company.

_____ **RLI Insurance Company** _____ further certifies that the following is a true and exact copy of a Resolution adopted by the Board of Directors of _____ **RLI Insurance Company** _____, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys in Fact or Agents who shall have authority to issue bonds, policies or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, _____ **RLI Insurance Company** _____ has caused these presents to be executed by its _____ Vice President _____ with its corporate seals affixed this 26th day of May, 2017 .

ATTEST:

*Cherie L Montgomery*

Cherie L. Montgomery                          Assistant Secretary

RLI Insurance Company

By: *B.H W.D*

Barton W. Davis                          Vice President

State of Illinois  } SS
County of Peoria  }

On this 26th day of May, 2017 before me, a Notary Public, personally appeared _____ Barton W. Davis _____ and _____ Cherie L. Montgomery _____, who being me duly sworn, acknowledged that they signed the above Power of Attorney as _____ Vice President _____ and _____ Assistant Secretary _____, respectively, of said _____ RLI Insurance Company _____, and acknowledged said instrument to be the voluntary act and deed of said corporation.

*Jacqueline M. Bockler*

Jacqueline M. Bockler                          Notary Public

"OFFICIAL SEAL"
JACQUELINE M. BOCKLER
COMMISSION EXPIRES 01/14/18

**BOND RIDER NO. 1**

Attaching to and forming part of Performance Bond No. RLB0013981, executed August 31, 2011, on behalf of Dynamic Offshore Resources, LLC as Principal, in favor of XTO Offshore Inc., HHE Energy Company and XH, LLC (collectively the Obligee), issued by RLI Insurance Company as Surety, in the amount of Thirty Two Million, Eight Hundred Ninety Eight Thousand Five Hundred Seventy Two and No/100 Dollars ($32,898,572.00).

It is understood and agreed that effective May 19, 2014, the name of the Principal has been amended to read:

**Fieldwood Energy Offshore LLC (f/k/a SandRidge Energy Offshore LLC)**

All other conditions and terms to remain as originally written or previously amended by rider.

Signed, Sealed and dated this 7th day of August 2014.

Fieldwood Energy Offshore LLC
(f/k/a SandRidge Energy Offshore LLC)
Principal

By: _____

John H Smith,
Vice President Land and Business Development
(Typed Name & Title)

RLI Insurance Company
8 Greenway Plaza, Suite 400
Houston, TX  77046
Surety

By: _____
Robbie Duxbury, Attorney-in-Fact



**RLI Surety**
*A division of RLI Insurance Company*

RLB0013981

# POWER OF ATTORNEY
### RLI Insurance Company

## *Know All Men by These Presents:*

That the RLI INSURANCE COMPANY, a corporation organized and existing under the laws of the State of Illinois, and authorized and licensed to do business in all states and the District of Columbia does hereby make, constitute and appoint: _____ROBBIE DUXBURY_____

in the City of ___HOUSTON___ , State of ___TEXAS___ , as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, all of the following classes of documents to-wit:

$32,898,572.00

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in any action or proceeding in any court of law or equity; policies indemnifying employers against loss or damage caused by the misconduct of their employees; official, bail and surety and fidelity bonds. Indemnity in all cases where indemnity may be lawfully given; and with full power and authority to execute consents and waivers to modify or change or extend any bond or document executed for this Company, and to compromise and settle any and all claims or demands made or existing against said Company.

The RLI INSURANCE COMPANY further certifies that the following is a true and exact copy of a Resolution adopted by the Board of Directors of RLI Insurance Company, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Pact or Agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers-of-Attorney, or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the RLI Insurance Company has caused these presents to be executed by its ___PRESIDENT___ with its corporate seal affixed this

ATTEST:

*Jean M. Stephenson*

CORPORATE SECRETARY

State of Illinois     )
                     ) SS
County of Peoria     )



RLI INSURANCE COMPANY

*M J Stone*

PRESIDENT

On this 7th day of     August 2014     before me, a Notary Public, personally appeared Michael J. Stone and Jean M. Stephenson, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as President and Corporate Secretary, respectively, of the said RLI INSURANCE COMPANY, and acknowledged said instrument to be the voluntary act and deed of said corporation.

*Jacqueline M. Bockler*

Notary Public

```
**********************************
*   NOTARY    "OFFICIAL SEAL"
*   PUBLIC    JACQUELINE M. BOCKLER
*   STATE OF  COMMISSION EXPIRES 01/14/18
*   ILLINOIS
**********************************
```

SPA027 (03/11)

BOND NO. RLB0013981

## PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

That, Dynamic Offshore Resources, LLC, with its principal office at 1301 McKinney, Suite 900, Houston, Texas 77010, (hereinafter called the "Principal") and RLI Insurance Company, with its principal office at 8 Greenway Plaza, Suite 400, Houston, Texas 77046 (hereinafter called the "Surety"), are held and firmly bound unto XTO Offshore Inc., HHE Energy Company, and XH, LLC, all with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 (hereinafter collectively called the "Obligee"), in the Penal Sum of Thirty Two Million Eight Hundred Ninety Eight Thousand Five Hundred Seventy Two and $^{NO}/_{100}$ Dollars ($32,898,572.00) lawful money of the United States of America for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated effective as of August 1, 2011 (hereinafter called the "Agreement"), which Agreement is by reference made a part hereof and which provides for the sale and assignment from Obligee to Principal of the interests of Obligee in certain oil and gas leases and properties, including the oil and gas leases described on Annex 1 to this Performance Bond ("Bond"), all as more particularly described in the Agreement (collectively, the "Leases" and each individually, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells, platforms, facilities, equipment and pipelines existing on the Leases as of the date of the Agreement, including the wells described on Annex 2 (collectively, the "Wells" and individually, the "Well") (the Leases, Wells and such platforms, facilities, equipment and pipelines, being collectively referred to as the "Properties" and each as "Property"); and

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of any of the Leases, whether by operation of law or otherwise, this Bond shall remain in full force and effect until Principal has presented satisfactory evidence to Obligee, as set forth below, that all P&A Obligations (as such term is defined below) have been performed and discharged; and

WHEREAS, as used in this Bond, the term "P&A Obligations" means all obligations and liabilities of Principal to abandon, restore and remediate the Properties, whether arising before or after August 1, 2011 (the "Effective Time"), including obligations, as applicable to the Properties, to:  (a) obtain plugging exceptions in the operator's name for each Well with a current plugging exception, or permanently plugging and abandoning a Well; (b) plug, abandon, and if necessary, re-abandon each Well; (c) remove all equipment and facilities, including flowlines, pipelines and platforms; (d) close all pits; and (e) restore and remediate the surface, subsurface and offshore sites associated with the Properties; and

-1-

WHEREAS, Principal has agreed to deliver to Obligee this Bond, executed by Principal and Surety, at the Closing as defined and contemplated by the Agreement; and

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising, out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder;

NOW THEREFORE, Principal and Surety agree as follows:

Surety hereby guarantees the full and faithful performance by Principal of, and compliance by Principal with, the P&A Obligations in accordance with all current and future requirements of applicable federal and state law or any agency, authority or body having, jurisdiction or authority over the Properties or any operations thereon, and in accordance with the Leases and the Agreement.

PROVIDED, HOWEVER, whenever the Principal shall present to Obligee satisfactory evidence that all of the P&A Obligations have been performed (and as set forth in the Agreement, such satisfactory evidence shall comprise executed forms or other written documentation as may be required by any governmental authority under applicable law to reflect completion of the P&A Obligations, including, without limitation, forms and documentation relating to plugging and abandonment activities, decommissioning activities, site clearance activities and pipeline abandonment or removal activities and completion of remedial activities), then this Bond shall be null and void; otherwise, it shall remain in full force and effect in the amount as provided.

In the event Principal fails to carry out its obligations to bear the cost and expense to perform the P&A Obligations for a Property or certain identified Properties, and Obligee has presented to Surety a written notice that Principal is in default of its obligation under the terms of the Agreement, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to Principal and Surety, Surety shall, within fifteen (15) days of such presentations: 1) Pay to Obligee an amount equal to the actual costs for performing the P&A Obligations with respect to the Property or identified Properties in an amount up to, but not exceeding, the maximum penal amount of this obligation and the penal amount of this obligation shall be further reduced by the amount of this obligation; or 2) Commence the necessary operations to perform the P&A Obligations with respect to the Property or identified Properties as set forth in the Agreement.

In the event Obligee commences or completes the P&A Obligations with respect to a Property or identified Properties upon Principal's default under the terms of the Agreement, Surety's obligations shall remain the same as set forth in this Bond regarding payment to Obligee as set forth above.

If Surety shall decide, upon default by Principal, to commence, or cause to be commenced, the performance of the aforementioned P&A Obligations, said performance shall continue until such time as the P&A Obligations have been met, thereby reducing the penal amount as set forth herein. **Surety agrees to indemnify, defend, and hold harmless Obligee, its directors, and agents from all claims, demands, and causes of action for personal injury, death, property and/or environmental damage resulting in whole or in part from Surety's or Surety's contractors' negligence, whether joint (including with Obligee or Principal) active, passive, concurrent or sole, or willful misconduct with respect to the performance of the P&A Obligations, if and only if Surety elects, as stated herein, to commence the aforementioned P&A Obligations in lieu of payment to Obligee.**

Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits attached thereto shall release Principal and Surety or either of them from their liability under this Bond. Notice to Surety of any such amendment or supplement is hereby waived, except to the extent that is herein provided.

No forbearance of Obligee, to Principal, shall release Principal and Surety from their liability under this Bond except where Obligee agrees to reduce the penal amount as provided above. No assignment of the Agreement or of the Property by the Principal, its successors and assigns, and no assignment of the Agreement by operation of law or consent of Obligee or otherwise shall in any degree relieve Principal and Surety of their obligations under this Bond except as provided herein. No delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in case of default on the part of Principal or Surety shall in any degree relieve Principal and Surety of their obligations under this Bond except as herein stated.

No assignment, in whole or in part, of the Agreement or of the Properties by Principal, its successors and assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal shall in any degree relieve Principal and Surety or either of their obligations under this Bond.

HOWEVER, if upon assignment, in whole or in part, of the Agreement or the Property or any Well and facilities thereon by Principal, its successors or assigns, Principal may cause its assignee to post security, in the form of a bond or other acceptable security from Surety, or a surety acceptable to Obligee, covering the same obligations as stated herein as to the assigned interest ("Transferee Bond"). The penal sum provided for in the Transferee Bond with respect to such assigned Properties shall be in an amount equal to the estimated cost to perform the P&A Obligations with respect to the assigned Property, which cost estimate shall be subject to Obligee's approval.

No right or action shall accrue on this Bond to or for the use of any person or corporation other than Principal, Obligee, their respective successors and assigns.

NOW THEREFORE, Principal and Obligee agree that any dispute, claim, or controversy concerning the interpretation of this Bond or the Agreement or any party's compliance with the terms of this Bond shall be resolved in accordance with the terms, conditions, and procedures in Article 17 of the Agreement and each agrees not to prosecute or commence any suit or action against the other(s) relating to any such matters.

This Bond is subject to the provisions of Section 8.04(f) of the Agreement including, without limitation, the redetermination provisions that may serve to adjust the penal sum provided for herein and the ability of Obligee to draw on the Bond, in whole or in part, as expressly provided for therein subject, however, to the following conditions. In the event that Obligee draws on this Bond pursuant to its rights under Sections 8.04(f)(2)(B)–(C), then it is expressly agreed that Obligee shall first obtain Surety's written consent. Further, Surety shall not be required to increase the penal sum provided for in this Bond as a result of any redetermination made pursuant to the Agreement without its written consent. In the event such written consent from Surety is not obtained, Principal will be required to obtain an additional bond to cover the incremental penal sum increase as a result of such redetermination from a financial institution, mutually acceptable to Obligee and Principal, providing for terms substantially similar to those set forth in this Bond except as regards the penal sum amount. Any redetermination made pursuant to the Agreement, shall not include estimated costs with respect to P&A Obligations for which a Transferee Bond has been obtained and approved by Obligee. Obligee will accept such Transferee Bond as financial security for the assigned Property. Further, as provided in Section 8.04(f)(1) of the Agreement, when it is determined that the estimated costs of the total remaining liabilities of Principal with respect to the P&A Obligations is less than $2,819,878.00, then this Bond shall be null and void and Obligee and Principal shall execute such documentation as is reasonably necessary in order to release and relinquish the Bond, which documentation will be executed promptly but in any event not less than sixty (60) days of being presented for execution. Further, Obligee agrees that in the event either XTO Offshore Inc., HHE Energy Company or XH, LLC terminates its corporate existence, then it will appoint one of the remaining seller entities or, at its sole option, its parent company, as agent to act on its behalf with respect to the obligations stated in Section 8.04(f) of the Agreement.

In the event of a conflict or inconsistency between the terms and provisions of this Bond and those set forth in the Agreement, as between Principal and Obligee, the terms and provisions of the Agreement shall control.

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on August 31, 2011, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

PRINCIPAL: DYNAMIC OFFSHORE RESOURCES, LLC

WITNESSES:

By:

Name: G. M. M^cCarroll

Title: President & CeO

Date: AuGusT 31, 2011

SURETY: RLI INSURANCE COMPANY

WITNESSES:

Jessica Campos

Nancy Cruz

By:

Name: Greg E. Chilson

Title: Attorney-in-Fact

Date: August 31, 2011

OBLIGEE: XTO OFFSHORE INC.

WITNESSES:

By:

Name: James L. Death

Title: Attorney-in-Fact

Date: August 31, 2011

OBLIGEE: HHE ENERGY COMPANY

WITNESSES:

By:

Name: James L. Death

Title: Attorney-in-Fact

Date: August 31, 2011

OBLIGEE: XH, LLC

WITNESSES:

By:

Name: James L. Death

Title: Attorney-in-Fact

Date: August 31, 2011

PRINCIPAL:  DYNAMIC OFFSHORE RESOURCES, LLC

WITNESSES:

By:
Name:
Title:
Date:

_____

_____

SURETY:  RLI INSURANCE COMPANY

WITNESSES:

By:
Name:     Greg E. Chilson
Title:    Attorney-in-Fact
Date:     August 31, 2011

Jessica Campos

Nancy Cruz

OBLIGEE:  XTO OFFSHORE INC.

WITNESSES:

By:
Name:
Title:
Date:

_____

_____

OBLIGEE:  HHE ENERGY COMPANY

WITNESSES:

By:
Name:
Title:
Date:

_____

_____

OBLIGEE:  XH, LLC

WITNESSES:

By:
Name:
Title:
Date:

_____

_____

# EXHIBIT "B"

## **PERFORMANCE BOND**

Bond No. 022220643

KNOW ALL MEN BY THESE PRESENTS:

**That,** Fieldwood Energy LLC, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with its principal office at 175 Berkeley Street, Boston, MA 02116 (hereinafter called the "Surety"), are held and firmly bound unto XH, LLC, with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 (hereinafter collectively called the "Obligee"), in the Penal Sum of One Million Eight Hundred Ninety-three Thousand One Hundred Seventy-eight and No/100 Dollars ($1,893,178.00) lawful money of the United States of America for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS Apache Corporation and XH, LLC are parties to the August 1, 2011 Agreement in which Fieldwood Energy LLC acquired XH, LLC assets from Apache Corporation on September 30, 2013 (hereinafter called the "Agreement"),  which Agreement is by reference made a part hereof and which provides for the sale and assignment from Obligee to Principal of the interests of Obligee in certain oil and gas leases and properties, including the oil and gas leases described on Annex 1 to this Performance Bond ("Bond"), all as more particularly described in the Agreement (collectively, the "Leases" and each individually, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells, platforms, facilities, equipment and pipelines existing on the Leases as of the date of the Agreement, including the wells described on Annex 2 (collectively, the "Wells" and individually, the "Well") (the Leases, Wells and such platforms, facilities, equipment and pipelines, being collectively referred to as the "Properties" and each as "Property"); and

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of any of the Leases, whether by operation of law or otherwise, this Bond shall remain in full force and effect until Principal has presented satisfactory evidence to Obligee, as set forth below, that all P&A Obligations (as such term is defined below) have been performed and discharged; and

WHEREAS, as used in this Bond, the term "P&A Obligations" means all obligations and liabilities of Principal to abandon, restore and remediate the Properties, whether arising before or after August 1, 2011 (the "Effective Time"), including obligations, as applicable to the Properties, to: (a) obtain plugging exceptions in the operator's name for each Well with a current plugging exception, or permanently plugging and abandoning a Well; (b) plug, abandon, and if necessary, re-abandon each Well; (c) remove all equipment and facilities, including flowlines, pipelines and platforms; (d) close all pits; and (e) restore and remediate the surface, subsurface and offshore sites associated with the Properties; and

WHEREAS, Principal has agreed to deliver to Obligee this Bond, executed by Principal and Surety, at the Closing as defined and contemplated by the Agreement; and

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising, out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder;

NOW THEREFORE, Principal and Surety agree as follows:

Surety hereby guarantees the full and faithful performance by Principal of, and compliance by Principal with, the P&A Obligations in accordance with all current and future requirements of applicable federal and state law or any agency, authority or body having, jurisdiction or authority over the Properties or any operations thereon, and in accordance with the Leases and the Agreement.

PROVIDED, HOWEVER, whenever the Principal shall present to Obligee satisfactory evidence that all of the P&A Obligations have been performed (and as set forth in the Agreement, such satisfactory evidence shall comprise executed forms or other written documentation as may be required by any governmental authority under applicable law to reflect completion of the P&A Obligations, including, without limitation, forms and documentation relating to plugging and abandonment activities, decommissioning activities, site clearance activities and pipeline abandonment or removal activities and completion of remedial activities), then this Bond shall be **null and void; otherwise, it shall remain in full force and effect** in the amount as provided.

In the event Principal fails to carry out its obligations to bear the cost and expense to perform the P&A Obligations for a Property or certain identified Properties, and Obligee has presented to Surety a written notice that Principal is in default of its obligation under the terms of the Agreement, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to Principal and Surety, Surety shall, within fifteen (15) days of such presentations: 1) Pay to Obligee an amount equal to the actual costs for performing the P&A Obligations with respect to the Property or identified Properties in an amount up to, but not exceeding, the maximum penal amount of this obligation and the penal amount of this obligation shall be further reduced by the amount of this obligation; or 2) Commence the necessary operations to perform the P&A Obligations with respect to the Property or identified Properties as set forth in the Agreement.

In the event Obligee commences or completes the P&A Obligations with respect to a Property or identified Properties upon Principal's default under the terms of the Agreement, Surety's obligations shall remain the same as set forth in this Bond regarding payment to Obligee as set forth above.

If Surety shall decide, upon default by Principal, to commence, or cause to be commenced, the performance of the aforementioned P&A Obligations, said performance shall continue until such time as the P&A Obligations have been met, thereby reducing the penal amount as set forth herein. **Surety agrees to indemnify, defend, and hold harmless Obligee, its directors, and agents from all claims, demands, and causes of action for personal injury, death, property and/or environmental damage resulting in whole or in part from Surety's or Surety's contractors' negligence, whether joint (including with Obligee or Principal) active, passive, concurrent or sole, or willful misconduct with respect to the performance of the P&A Obligations, if and only if Surety elects, as stated herein, to commence the aforementioned P&A Obligations in lieu of payment to Obligee.**

Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits attached thereto shall release Principal and Surety or either of them from their liability under this Bond. Notice to Surety of any such amendment or supplement is hereby waived, except to the extent that is herein provided.

No forbearance of Obligee, to Principal, shall release Principal and Surety from their liability under this Bond except where Obligee agrees to reduce the penal amount as provided above. No assignment of the Agreement or of the Property by the Principal, its successors and assigns, and no assignment of the Agreement by operation of law or consent of Obligee or otherwise shall in any degree relieve Principal and Surety of their obligations under this Bond except as provided herein. No delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in case of default on the part of Principal or Surety shall in any degree relieve Principal and Surety of their obligations under this Bond except as herein stated.

No assignment, in whole or in part, of the Agreement or of the Properties by Principal, its successors and assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal shall in any degree relieve Principal and Surety or either of their obligations under this Bond.

HOWEVER, if upon assignment, in whole or in part, of the Agreement or the Property or any Well and facilities thereon by Principal, its successors or assigns, Principal may cause its assignee to post security, in the form of a bond or other acceptable security from Surety, or a surety acceptable to Obligee, covering the same obligations as stated herein as to the assigned interest ("Transferee Bond"). The penal sum provided for in the Transferee Bond with respect to such assigned Properties shall be in an amount equal to the estimated cost to perform the P&A Obligations with respect to the assigned Property, which cost estimate shall be subject to Obligee's approval.

No right or action shall accrue on this Bond to or for the use of any person or corporation other than Principal, Obligee, their respective successors and assigns.

NOW THEREFORE, Principal and Obligee agree that any dispute, claim, or controversy concerning the interpretation of this Bond or the Agreement or any party's compliance with the terms of this Bond shall be resolved in accordance with the terms, conditions, and procedures in Article 17 of the Agreement and each agrees not to prosecute or commence any suit or action against the other(s) relating to any such matters.

This Bond is subject to the provisions of Section 8.04(f) of the Agreement including, without limitation, the redetermination provisions that may serve to adjust the penal sum provided for herein and the ability of Obligee to draw on the Bond, in whole or in part, as expressly provided for therein subject, however, to the following conditions. In the event that Obligee draws on this Bond pursuant to its rights under Sections 8.04(f)(2)(B)—(C), then it is expressly agreed that Obligee shall first obtain Surety's written consent. Further, Surety shall not be required to increase the penal sum provided for in this Bond as a result of any redetermination made pursuant to the Agreement without its written consent. In the event such written consent from Surety is not obtained, Principal will be required to obtain an additional bond to cover the incremental penal sum increase as a result of such redetermination from a financial institution, mutually acceptable to Obligee and Principal, providing for terms substantially similar to those set forth in this Bond except as regards the penal sum amount. Any redetermination made pursuant to the Agreement, shall not include estimated costs with respect to P&A Obligations for which a Transferee Bond has been obtained and approved by Obligee. Obligee will accept such Transferee Bond as financial security for the assigned Property. Further, as provided in Section 8.04(f)(1) of the Agreement, when it is determined that the estimated costs of the total remaining liabilities of Principal with respect to the P&A Obligations is less than one hundred sixty-two thousand two hundred seventy-two and $^N/100$ Dollars ($162,272.00), then this Bond shall be null and void and Obligee and Principal shall execute such documentation as is reasonably necessary in order to release and relinquish the Bond, which documentation will be executed promptly but in any event not less than sixty (60) days of being presented for execution. Further, Obligee agrees that in the event XH, LLC terminates its corporate existence, then it will appoint another entity or, at its sole option, its parent company, as agent to act on its behalf with respect to the obligations stated in Section 8.04(0 of the Agreement.

In the event of a conflict or inconsistency between the terms and provisions of this Bond and those set forth in the Agreement, as between Principal and Obligee, the terms and provisions of the Agreement shall control.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on May 14, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

Principal: Fieldwood Energy LLC

Witnesses:

By: _____

Name: ___John H. Smith_____

Title: ___Senior Vice President_____

Date: _____

Surety: Liberty Mutual Insurance Company

Witnesses:

By: _Laura E. Sudduth_____

Terri Morrison – Witness

Name: Laura E. Sudduth

Tannis Matson – Witness

Title: _Attorney-In-Fact_____

Date: May 14, 2018

Accepted by Obligee

Witnesses:

By: _____

Name: _____

Title: _____

Date: _____

## ANNEX I

## DESCRIPTION OF LEASES

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3203-0001-00 | **East Cameron 9 & 14 - OCS-G 1440**<br>SE/4; E/2SW/4 of Block 9, East Cameron Area, that portion in Zone 2, as that zone is defined in the agreement between the United States and the State of Louisiana, October 12, 1956; and E/2NW/4;NE/4 of Block 14, East Cameron Area | Record Title | 50.00000% | XH, LLC |

ANNEX 2

**DESCRIPTION OF WELLS**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Type |
|---|---|---|---|---|---|---|---|---|---|
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #12 | #12 | East Cameron 9/14 | Offshore Louisiana | 177034060600S03 | Fieldwood Energy LLC | 401896 | OIL |
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #13 | #13 | East Cameron 9/14 | Offshore Louisiana | 177034101300S04 | Fieldwood Energy LLC | 401897 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-06 | B-06 | East Cameron 9/14 | Offshore Louisiana | 177032003700S03 | Fieldwood Energy LLC | - | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-07 | B-07 | East Cameron 9/14 | Offshore Louisiana | 177032004000S04 | Fieldwood Energy LLC | 401898 | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-08 | B-08 | East Cameron 9/14 | Offshore Louisiana | 177032004200S01 | Fieldwood Energy LLC | - | GAS |
| EC14B | OCS-G-01440 EC 9 | OCS-G-01440 EC 14 B-09 | B-09 | East Cameron 9/14 | Offshore Louisiana | 177032004300S04 | Fieldwood Energy LLC | 401899 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-10STI | B-10ST1 | East Cameron 9/14 | Offshore Louisiana | 177032004601S03 | Fieldwood Energy LLC | 401900 | OIL |
| EC14CF | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 CF-01 | CF-01 | East Cameron 9/14 | Offshore Louisiana | 177030032800S04 | Fieldwood Energy LLC | - | OIL |
| EC14CF | OCS-G-13572 EC 14 | OCS-G-13572 EC 14 CF-02 | CF-02 | East Cameron 9/14 | Offshore Louisiana | 17703468600S05 | Fieldwood Energy LLC | 402648 | GAS |

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**

+This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8032778

Liberty Mutual Insurance Company

The Ohio Casualty Insurance Company          West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint,_____
Sandra Parker,  Terri L Morrison ,  Tannis Mattson , Gina A Rodriguez , Mary Ann Garcia, Mario Arzamendi, Orlando Aguirre, Laura E. Sudduth, Gloria Mouton, Marissa Shepherd
all of the city of Houston, state of TX each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in the penal sum not exceeding TWENTY FIVE MILLION*****DOLLARS ($25,000,000.00*****) each, and the execution of such undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 8th day of March, 2018.

  

The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA           ss
COUNTY OF MONTGOMERY

On this 8th day of March, 2018, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA

Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021

Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS – Section 12. Power of Attorney.** Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation.  When so executed, such instruments shall be as binding as if signed by the President and attested by the Secretary.  Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings.** Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company.  When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 14th day of May, 2018.

 

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*Left margin:* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Right margin:* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.



# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Premium or Claim Disputes**

Should you have a dispute concerning a premium, you should contact the agent first.  If you have a dispute concerning a claim, you should contact the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**Attach This Notice To Your Policy:**

This notice is for information only and does not become a part or condition of the attached document.