**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Fieldwood Energy LLC, *et al.*,**[1] | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

**AMENDED JOINDER IN OBJECTIONS TO THE CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS**

Hess Corporation ("Hess") hereby files this amended joinder (the "Joinder") to (i) *Objection of LLOG to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy, LLC, and Its Affiliated Debtors and Opt-Out Releases* [Docket No. 1464] (the "LLOG Objection"), (ii) *BP Exploration & Production Inc.'s Objection to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1468] (the "BP Objection"), (iii) *Shell Offshore, Inc.'s Objection to the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy, LLC and Its Affiliated Debtors* [Docket No. 1470] (the "Shell Objection"), (iv) *Objection of XTO Offshore, Inc., HHE Energy Company, and XH LLC to the Joint Chapter 11 Plan of Fieldwood Energy, LLC and Its Affiliated Debtors* [Docket No. 759] and *Supplemental Objection and Response by XTO Offshore, Inc., HHE Energy Company, and XH, LLC to (A) the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

*Affiliated Debtors, and (B) the Plan Supplement Relating to the Assumption of Executory Contracts* [Docket No. 1451] (collectively, the "XTO Objection"), and (v) *Marathon's Objection to Confirmation and Joinder in Other Predecessors' Objections to Confirmation of the Debtors' Fourth Amended Joint Chapter 11 Plan* [Docket No. 1443] (the "Marathon Objection" and together with the LLOG Objection, the BP Objection, the Shell Objection, and the XTO Objection, the "Predecessor Objections").

Hess is mindful of the Court's comments regarding negotiation hold outs. *See* Tr. 3/24/21 at 82. Hess is not a hold out. Hess has initiated several calls with the Debtors over the past several weeks and has invited lawyers from the Department of Justice and Department of the Interior to those conversations. In connection with those negotiations, the Debtors extended Hess's deadline to object to the Plan through June 15, 2021.[2] Hess and the Debtors have not reached a resolution as of the time of the filing of this Objection, and thus Hess files this Joinder and objection in the abundance of caution. Hess remains open to working through a consensual resolution with the Debtors.

**BACKGROUND INFORMATION RELATING TO THE HESS LEASES**

1. Prior to November 1, 2004, Hess was a record title interest holder with respect to seven (7) federal offshore oil and gas leases: OCS-G 01449, OCS-G 01874, OCS-G 01989, OCS-G 02136, OCS-G 02934, OCS-G 04243, OCS-G 04895 (collectively, the "Hess Leases"). Based upon publicly available data derived from the Bureau of Ocean Energy Management ("BOEM")/Bureau of Safety and Environmental Enforcement ("BSEE") Data Center, Hess estimates the plugging and abandonment obligations associated with the Hess Leases, including

[2] As stated in *Hess Corporation's Emergency Motion to Restrict Public Access to ECF No. 1576 and ECF No. 1604 and for Authority to file Amended Confirmation Objection Under Seal*, Hess agreed to amend its confirmation objection with this filing at the Debtors' request. The Debtors have represented to Hess that they will not object to the timeliness of this filing.

the wells, platforms, and pipelines associated therewith, could be as much as $141 million.[3]

2. Pursuant to that certain Agreement for Purchase and Sale dated effective November 1, 2004 by and between Amerada Hess Corporation and SPN Resources, LLC ("SPN"), Hess conveyed to SPN all of Hess's right, title and interest in and to the Hess Leases, as well as the wells, equipment and other property, and the contracts and agreements relating to the Hess Leases.

3. On information and belief, through a series of transactions following the aforementioned Hess-SPN transaction, the Hess Leases were ultimately transferred to the Debtors.

## SPECIFIC OBJECTIONS

### A. Debtors are not in compliance with Safety and Environmental Regulations.

4. The exploration and production of minerals on the OCS is subject to the terms of the leases granted by the U.S. Department of the Interior, the Outer Continental Shelf Lands Act (43 U.S.C. § 1331 *et seq.*), and its implementing regulations. Each lessee must be qualified to hold an OCS lease (30 C.F.R. § 556.400), is subject to disqualification for failure to satisfy its obligations (30 C.F.R. § 556.403), must receive BOEM's approval for the transfer of any lease interest (30 C.F.R. § 556.700), and is responsible for permanently abandoning all wells and decommissioning all platforms and lease facilities within one year of the cessation or production or termination (30 C.F.R. §§ 250.1701 and 1703 *et seq.*). This regulatory scheme is intended to ensure the safe operation of leases and the timely completion of all end-of-lease obligations for the protection of the environment and the public's health and safety.

5. Debtors' operations have drawn significant regulatory scrutiny. Since January 1, 2020, alone, BSEE inspections of Debtors' facilities and records resulted in more than 550

---

[3] This figure represents the total estimated P90 joint and several liability obligation across all assets associated with the Hess Leases. Hess does not admit that the estimate is accurate and reserves all rights with respect thereto.

incidents of non-compliance ("INCs").[4] Per the BSEE Data Center, since January 1, 2021, (i) Fieldwood Energy LLC received 262 Warning INCs, 124 Component Shut-in INCs, and 27 Facility Shut-in INCs, (ii) Fieldwood Energy Offshore LLC received 77 Warning INCs, 34 Component Shut-in INCs, and 11 Facility Shut-in INCs, (iii) Fieldwood SD Offshore LLC received 3 Warning INCs and 3 Component Shut-in INCs, (iv) GOM Shelf LLC received 12 Warning INCs and 5 Component Shut-in INCs, (v) Dynamic Offshore Resources NS LLC received 4 Facility Shut-in INCs, and (vi) Bandon Oil and Gas, LP received 1 Component Shut-in INC and 2 Facility Shut-in INCs.

6. The foregoing is particularly noteworthy in light of the total Gulf of Mexico INCs issued by BSEE in the same time period. Specifically, per the BSEE Data Center, since January 1, 2020, BSEE issued a total of 1,483 Gulf of Mexico INCs. Of that amount, the Debtors were responsible for almost 40% of all issued Gulf of Mexico INCs, including more than 25% of all issued Gulf of Mexico Facility Shut-in INCs.

7. The Hess Leases concern a total of seven platforms. Several platform facilities associated with the Hess Leases have been the subject of BSEE-issued INCs and, upon information and belief, the condition of several of such facilities pose human and environmental safety concerns.

[redacted] [redacted]

[4] The following link provides information about INCs: https://www.bsee.gov/what-we-do/safety-enforcement/enforcement-tools/incidents-of-non-compliance

[redacted]

[redacted] [redacted]

**B. The Plan does not comply with 11 U.S.C. § 1129(a)(1) because the Plan violates 11 U.S.C. § 1124(a)(4).**

10. 11 U.S.C. § 1124(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest[.]" 11 U.S.C. § 1123(a)(4). Equality of treatment involves two aspects: (1) "[a]bsent consent to accept less favorable treatment, all members of the class must receive equal value" and (2) "each member of the class must pay the same consideration for its distribution." *In re Quigley Co., Inc.*, 377 B.R. 110, 116–17 (Bankr. S.D.N.Y. 2007). Indeed, "[t]he fundamental premise of bankruptcy is that all creditors of the same class shall be treated equally." *In re MCorp Fin., Inc.*, 137 B.R. 219, 227 (Bankr. S.D. Tex. 1992).

11. In *MCorp Financial*, the court refused to confirm multiple debtors' plans where the plans allowed for "possible disparate treatment of contested claims" and the disadvantaged creditors had not consented to such unequal treatment. *In re MCorp Fin., Inc.*, 137 B.R. at 224,

227 ("The court finds that the plans violate § 1123(a)(4) as they do not provide the same treatment for each claim or interest of a particular class, and the holder of that claim or interest has not agreed to a less favorable treatment of such claim or interest."). There, the Debtors placed both contested and uncontested claims within the same class, and provided a certain amount of money with an estimated cap for resolution of the contested claims. *Id.* at 227. However, the court found that this "amount may not be sufficient for all contested claims once resolved," in which case, "the contested claimant would not receive the same pro rata distribution on its allowed claim as would the noncontested claims" within the same class. *Id.* Thus, even where there was possible disparate treatment between members of the same class, the court found that the potential for unequal treatment was sufficient to violate § 1123(a)(4). *See also In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008) ("The key inquiry under § 1123(a)(4) is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity.")

12. Here, there is existing disparate treatment in that Eni Petroleum US LLC ("ENI") and Hess are similarly situated creditors with the same potential claims as a result of the Debtors' abandonment. Yet ENI's claims are resolved in a way that creates disparate treatment with Hess and other predecessors. Among other items, the Debtors agreed to cap ENI's payment obligations under the ENI abandoned leases ("[t]he sum if all ENI (Net) Costs for each lease and/or facility located at the Abandoned Properties shall not exceed $57,325,130.98," ENI Term Sheet,[5] p. 2, ¶ 1(a)); the Credit Bid Purchaser shall assume the risk that the costs of decommissioning (ENI Term Sheet, p. 3, ¶ 1(c)); ENI and Credit Bid Purchaser share in risk in the event of unforeseen circumstances such as weather damage and casualty events (*id.*); ENI's payment obligation does not trigger until ENI receives notification from BOEM/BSEE that the decommissioning work has

[5] The "ENI Term Sheet" is the term sheet filed at docket number 1368.

been completed to the government's satisfaction (ENI Term Sheet, p. 5, ¶ 7); ENI's payment obligations shall not exceed $20 million annually (ENI Term Sheet, p. 6, ¶ 7); and agreed to perform an Initial Safe Out (ENI Term Sheet, p. 6, ¶ 9). The Initial Safe Out will put the ENI abandoned properties in a "mechanical and operational state such that they are hydrocarbon free and ready to be decommissioned." *See* ENI Term Sheet, p. 6, ¶ 9. The Debtors should perform that Initial Safe Out work for all abandoned properties, including leaving the properties hydrocarbon free, including the Hess Leases.

13. Accordingly, the Plan violates § 1123(a)(4) of the Bankruptcy Code and thus the Plan does not satisfy the requirements of § 1129(a)(1) of the Bankruptcy Code.

**RESERVATION OF RIGHTS**

14. This Joinder is submitted without prejudice to, and with a full express reservation of, the rights of Hess to supplement and amend this Joinder and to introduce evidence at any hearing relating to this Joinder, to further object to the Joint Plan on any all grounds. Moreover, Hess reserves its right to invoke each issue, fact, legal basis, and matter identified in this Joinder as a basis for denying confirmation of the Joint Plan pursuant to any applicable provision of the Bankruptcy Code, regardless of the particular subsection of this Joinder in which the issue is raised.

15. Hess adopts and incorporates herein all objections to confirmation of the Joint Plan asserted by other parties.

## CONCLUSION

Hess respectfully requests that this Court: (i) sustain the Predecessor Objections and this Joinder thereto; (ii) deny the relief requested in the Debtors' *Fifth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Dkt. No. 1629); and (iii) grant to Hess such other and further relief to which it is justly entitled.

Dated: June 20, 2021

Respectfully submitted,

By: */s/ Omar J. Alaniz*

Omar J. Alaniz
Texas State Bar No. 24040402
Devan J. Dal Col
Texas State Bar No. 24116244
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Telephone: 469.680.4200
Facsimile: 469.680.4299
Email: oalaniz@reedsmith.com

***Attorney for Hess Corporation***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 20, 2021, a copy of the foregoing document was served on all parties requesting service via the Court's ECF system.

*/s/ Omar J. Alaniz*
Omar J. Alaniz

# Exhibit A

**Notification of Incident(s) of Noncompliance related to WD 86A dated October 22, 2020**

[filed under seal]

**Exhibit B**

**Notification of Incident(s) of Noncompliance related to WD 79C dated October 22, 2020**

[filed under seal]