IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | |
| | § | Case No. 20-33948 (MI) |
| Debtors.[1] | § | |
| | § | |
| | § | (Jointly Administered) |
| --------------------------------------------------- | § | |
| | § | Adversary Proc. No. 21-____ |
| **FIELDWOOD ENERGY LLC**, *et. al.*, | § | (Emergency Hearing Requested) |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **NORTH AMERICAN SPECIALTY INSURANCE COMPANY**, | § | |
| | § | |
| Defendant. | § | |
| --------------------------------------------------- | § | |

**ADVERSARY COMPLAINT**

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and as Plaintiffs in the above-captioned adversary proceeding (the "**Adversary Proceeding**"), hereby file this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

complaint (the "**Complaint**") against North American Specialty Insurance Company ("**NAS**"), and allege as follows:

## INTRODUCTION

1.  By this Complaint, the Debtors seek a declaration that the lawsuit[2] that NAS filed on June 18, 2021 against parties with whom the Debtors have entered into agreements that are integral to the Debtors' Plan—Eni Petroleum US LLC and Eni US Operating Co. Inc. (collectively, "**Eni**"), and Chevron U.S.A. Inc. and Union Oil Company of California ("**Chevron**" or "**CUSA**," and together with Eni, the "**Predecessors**")—is a violation of the automatic stay (the "**Automatic Stay**"). Alternatively, the Debtors seek to extend the Automatic Stay to the Lawsuit under sections 105 and 362(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). NAS's Lawsuit is an attempt to circumvent the Debtors' Automatic Stay. This is precisely the situation where the Automatic Stay should be extended.

2.  When NAS filed the Lawsuit, NAS had already filed an objection to the Debtors' Plan. *See Objections of North American Specialty Insurance Company to Confirmation of the Fourth Amended Joint Chapter 11 Plan* (the "**Plan Objection**") (ECF No. 1435). In its Objection, NAS asserted that its bonds are not property of the Debtors' estate and that the divisive merger and alleged substitution of principal on the bonds pursuant to the Plan discharges NAS from its obligations under the bonds. *See* NAS Objection ¶¶ 3-4. These are the very same arguments NAS now makes in the Lawsuit in an attempt to forum shop. *See* NAS Compl. ¶¶ 14–18. By filing the Lawsuit on the eve of the Debtors' confirmation hearing, NAS is effectively seeking to hedge against an adverse ruling by this Court by seeking the following relief from the district court: "[A]n

---

[2] The lawsuit is Cause No. 4:21-cv-02001, *North American Specialty Insurance Company v. Eni Petroleum US LLC et al.* (the "**Lawsuit**").

order determining the conduct of the Defendants discharged the [NAS's] bonds, whether the discharge is complete because of the material changes affecting NAS's rights, or if the changes are less than material, determine the extent to which the bonds are subject to discharge…" NAS Compl. ¶ 7. Filing the Lawsuit is a blatant attempt to challenge the Plan in a separate forum (while confirmation is currently being fully and fairly litigated by all other parties interest in this Court) and exercise rights against the Debtors' property interests in negotiated transactions with certain Predecessors necessary to support their chapter 11 Plan.  Therefore, the Debtors submit that filing the Lawsuit constitutes a willful violation of the Automatic Stay.

3. The relief NAS seeks—an order from the district court that its bonds are partially or fully discharged—would deprive the Debtors of the right to prosecute their Plan and implement the integral transactions entered into as part of the Plan, particularly with Chevron and Eni, to address a significant portion of the Debtors' decommissioning obligations.  Such a right is fundamental to a debtor in a chapter 11 bankruptcy and should not be impeded unnecessarily.  NAS would not be prejudiced in any way should the Automatic Stay be extended to the Lawsuit. Instead, NAS would just be required to pursue its challenges to the Plan before this Court, as all other parties are required to do.

4. NAS's Lawsuit directly and significantly threatens the Debtors' ability to negotiate agreements necessary to implement their restructuring.  In particular, the Debtors have an obligation to ensure properties are safe for abandonment under state law.  *See Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494 (1986).  As part of their plan for addressing their obligations, Debtors have negotiated multiple agreements with various predecessors, including agreements with Eni and Chevron.  NAS's Lawsuit directly undermines the Debtors' ability to

meet its obligations and obtain confirmation of the Plan and to effectuate the transactions contemplated therein.

## PARTIES

5.  Fieldwood is a Delaware limited liability company with its principal place of business located at 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

6.  NAS is an insurance company organized under the laws of the State of New Hampshire, having a principal place of business in the State of Missouri.

## JURISDICTION AND VENUE

7.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Federal Rules of Bankruptcy Procedure 7001(2), 7001(7), and 7065.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, the Debtors consent to the entry of final orders or judgment by this Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### The Debtors' Chapter 11 Plan

9.  On August 3 and 4, 2020, the Debtors each commenced in this Court a voluntary case under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

4

"**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

11. On June 16, 2021, the Debtors filed their *Sixth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (ECF No. 1699) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"). A hearing to consider confirmation of the Plan is taking place.

12. The Debtors' Plan contemplates a set of restructuring transactions that integrates consensual arrangements reached with multiple stakeholder groups, including the overwhelming majority of the Debtors' prepetition first and second lien lenders, several Predecessors (including Apache, Chevron ("**CUSA**"), Eni, and Hunt), the Creditors' Committee, and one of the Debtors' largest surety providers.

13. As detailed in the *Debtors' Memorandum of Law in Support of (I) Confirmation of Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Omnibus Reply to Objections Thereto* (ECF No. 1553) (the "**Confirmation Brief**"), following months of negotiations, the Debtors and the Ad Hoc Group of Secured Lenders agreed on the principal terms of a chapter 11 plan that contemplates the sale of specified Deepwater and Shelf Assets (the "**Credit Bid Acquired Interests**") to a new entity formed at the direction of the Consenting FLTL Lenders (the "**Credit Bid Purchaser**") (the transaction with Credit Bid Purchaser being referred to as the "**Credit Bid Transaction**").

14. Subsequent to consummation of the Credit Bid Transaction, the Plan provides FWE will implement two or more divisive mergers pursuant to Title 1, Chapter 10 and Title 1, Chapter 1, Subchapter A, Section 1.0002(55)(A) of the Texas Business Organizations Code ("**TBOC**"). The first such divisive merger will result in the division of FWE into (i) FWE, which will survive

5

such divisive merger under the name "Fieldwood Energy III LLC" ("**FWE III**"), and (ii) Fieldwood Energy I LLC, a newly-formed Texas limited liability company ("**FWE I**") (the "**Initial Divisive Merger**"). Pursuant to the Initial Divisive Merger, FWE I will be allocated and vested with certain of the Legacy Apache Assets (the "**FWE I Properties**") and FWE III will be allocated and vested with all of FWE's assets other than FWE I Properties and Credit Bid Acquired Interests (the "**FWE III Properties**"). The FWE I Properties and FWE III Properties are described in schedules annexed to the Plan of Merger for the Initial Divisive Merger (the "**Plan of Merger**"). *See* Discl. Stmt., Ex. K at Ex. 5.

15. The second divisive merger will result in the division of FWE III into (i) FWE III, which will survive such divisive merger and maintain its name, and (ii) Fieldwood Energy IV LLC, a newly-formed Texas limited liability company ("**FWE IV**") (the "**FWE III Divisive Merger**"). Pursuant to the FWE III Divisive Merger, FWE IV will be allocated and vested with certain interests in a portion of leases previously assigned to FWE by Chevron U.S.A. Inc. (the "**Legacy CUSA Properties**") and FWE III will be allocated and vested with all of FWE III's other assets. For the avoidance of doubt, such FWE III assets do not include the Abandoned Properties, including other than the Legacy CUSA Properties and the Specified Assets (as defined in the Eni Definitive Documents). The allocation of the assets pursuant to the FWE III Divisive Merger are described in the schedules filed with the Plan Supplement. *See* Plan Suppl. Ex. O5.

### Chevron

16. The FWE III Divisive Merger (which creates FWE IV) is the result of negotiations between the Debtors and CUSA with respect to the treatment of the Legacy CUSA Properties.[3]

---

[3] The FWE III Divisive Merger and related agreements by and among FWE IV, the Credit Bid Purchaser, and CUSA more specifically describe the nature of the transactions.

6

The Debtors and CUSA entered into a term sheet dated March 22, 2021 (the "**CUSA Term Sheet**").  The CUSA Term Sheet provides, among other things, that the Legacy CUSA Properties will be decommissioned pursuant to a Turnkey Removal Agreement entered into by and among CUSA, FWE IV, and Credit Bid Purchaser (the "**CUSA Turnkey Removal Agreement**").  Under the CUSA Turnkey Removal Agreement, Credit Bid Purchaser will decommission the Legacy CUSA Properties on a lump sum, turnkey payment basis, and Credit Bid Purchaser will earn pre-agreed payments ("**Turnkey Amounts**") in exchange for completing decommissioning projects. CUSA largely will be responsible for funding the Turnkey Amounts, unless there are other current co-interest owners or predecessors responsible for such decommissioning costs, in which case CUSA will only be responsible for its proportionate share on account of its former interests in the Legacy CUSA Properties.  Credit Bid Purchaser will not be required to undertake a decommissioning project until full funding of a Turnkey Amount has been agreed to by the parties.

17.     The Debtors have agreed to contribute $5 million into an escrow account to cover operations to prepare the Legacy CUSA Properties for decommissioning.  Moreover, FWE IV and Credit Bid Purchaser will enter into a Contract Operator Agreement whereby Credit Bid Purchaser will manage the administrative and corporate activities of FWE IV along with the Legacy CUSA Properties for a period of five years, subject to agreed-upon conditions for assignment.  Credit Bid Purchaser will also manage the Neptune Spar under a Transition Services Agreement whereby CUSA will reimburse Credit Bid Purchaser for certain expenses until CUSA takes over management of the facility in connection with a decommissioning campaign for the Neptune Spar. Additionally, CUSA will be responsible for certain operating costs associated with the FWE IV properties other than decommissioning under with the turnkey agreement.

18. These transactions are intended to address the Debtors' inability to perform obligations with respect to the Chevron Legacy Properties and provide for their orderly and cost-effective decommissioning in a manner that complies with safety and environmental regulations.

### Eni

19. On May 12, 2021, the Debtors and Eni executed a term sheet reflecting an agreement-in-principle as to the treatment of certain oil and gas leases and facilities previously conveyed to the Debtors by Eni and certain of its affiliates (collectively, the "**Eni Properties**"). The Debtors filed a *Notice of Filing of Executed Term Sheet by and between the Debtors and Eni Petroleum US LLC* (ECF No. 1368) on May 12, 2021. The Eni Term Sheet provides, among other terms, that, after abandonment, the Eni Properties will be decommissioned pursuant to a Turnkey Removal Agreement by and among Eni, FWE III, and Credit Bid Purchaser (the "**Eni Turnkey Removal Agreement**"). The funds for the Eni Properties will come from the new money being raised in accordance with the Plan.

20. On the Effective Date, $3 million of the proceeds of the Credit Bid Consideration shall be funded into FWE III, which will then be paid to Eni under the terms of the Eni Implementation Agreement. Furthermore, subject to certain exceptions, Eni will not be responsible for any operating costs associated with Eni's former interests in the Eni Abandoned Properties. Post-Effective Date, Credit Bid Purchaser will manage the Eni Properties on behalf of Eni pursuant to a Contract Operating Agreement until the commencement of the decommissioning work under the Eni Turnkey Removal Agreement.

### ARGUMENT

**COUNT ONE – Declaration that the Lawsuit is a Violation of the Automatic Stay**

21. The Debtors incorporate by reference the allegations in Paragraphs 1–20 as if set forth fully herein.

22. As a result of the commencement of the Debtors' chapter 11 cases, the Automatic Stay enjoins (subject to certain exceptions) all persons from, among other things, taking any action to obtain possession of property of the estate or to exercise control over property of the estate. *See* 11 U.S.C. § 362(a)(3). One of the core protections provided to a debtor is the injunction contained in section 362, which provides the debtor with a "breathing spell from [their] creditors" that is essential to the Debtors' ability to reorganize successfully. *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted).

23. The breathing spell granted to the Debtors is to allow them the opportunity to exercise their right to enter into transactions with their Predecessors to provide for a safe and orderly transition of Abandoned Properties and implement the Plan and related transactions. *See, e.g.*, *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) ("[t]he purpose of the automatic stay provision is to afford the debtor a 'breathing spell' by halting the collection process. It enables the debtor to attempt a repayment **or reorganization plan** with an aim toward satisfying existing debt.") (emphasis added); *Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.'") (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)).

24. Here, the Debtors extensively negotiated with Eni and Chevron, respectively, and reached agreements, including Term Sheets and Turnkey Removal Agreements, regarding terms and treatment in the Debtors' Plan that are integrally related to the Debtors' compliance with the *Midlantic* standards. Pursuant to 11 U.S.C. § 362(a)(3), the Debtors have a property interest in

9

(i) the agreements they have successfully negotiated and finalized, and (ii) the Debtors' exclusive right to file and prosecute their Plan.

25. NAS's Lawsuit has already harmed the Debtors because it seeks to deprive the Debtors of the ability to seek to prosecute their Plan. The Lawsuit mirrors NAS's Plan Objection and was filed in direct contravention of the protection afforded to the Debtors under the Automatic Stay.

26. Accordingly, the Debtors seek a declaration from this Court that the Lawsuit is a violation of the Automatic Stay.

**COUNT TWO – The Court Should Extend the Automatic Stay to the Lawsuit**

27. The Debtors incorporate by reference the allegations in Paragraphs 1–26 as if set forth fully herein.

28. A bankruptcy court has the authority to extend the automatic stay to non-debtor third parties. *See Reliant Energy Servs.*, 349 F.3d at 825.; *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001). As detailed in Count I, under 11 U.S.C. § 362(a)(3) the Debtors have a property interest in (i) the agreements they have successfully negotiated, and (ii) the Debtors' exclusive right to file and prosecute their Plan. As such, even if the Court does not find that NAS has violated the Automatic Stay as alleged in Count I, it should extend the Automatic Stay to the Lawsuit for the duration of these chapter 11 cases.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, the Debtors respectfully request relief as follows:

a. that this Court declare that the Lawsuit is a violation of the Automatic Stay;

b. that this Court extend the Automatic Stay under section 105 of the Bankruptcy Code and preliminarily enjoin the Lawsuit; and

c. award all such other and further relief that this Court deems just and proper.

10

Dated: June 23, 2021
   Houston, Texas

          */s/ Alfredo R. Pérez*
          WEIL, GOTSHAL & MANGES LLP
          Alfredo R. Pérez (15776275)
          Clifford W. Carlson (24090024)
          700 Louisiana Street, Suite 1700
          Houston, Texas 77002
          Telephone: (713) 546-5000
          Facsimile: (713) 224-9511
          Email: Alfredo.Perez@weil.com

          -and-

          WEIL, GOTSHAL & MANGES LLP
          Matthew S. Barr (admitted *pro hac vice*)
          Jessica Liou (admitted *pro hac vice*)
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007
          Email: Matt.Barr@weil.com
             Jessica.Liou@weil.com

          -and-

          WEIL, GOTSHAL & MANGES LLP
          Paul R. Genender (00790758)
          Erin M. Choi (24079436)
          200 Crescent Court, Suite 300
          Dallas, Texas 75201
          Telephone: (214) 746-7700
          Facsimile: (214) 746-7777
          Email: Paul.Genender@weil.com
             Erin.Choi@weil.com

          *Attorneys for Debtors*
          *and Debtors in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 23, 2021, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez