1            IN THE UNITED STATES BANKRUPTCY COURT

2            FOR THE SOUTHERN DISTRICT OF TEXAS

3                     HOUSTON DIVISION

4   IN RE:                    §    CASE NO. 20-33948-11
                              §    HOUSTON, TEXAS
5   FIELDWOOD ENERGY, LLC,    §    THURSDAY,
    ET AL,                    §    JUNE 17, 2021
6        DEBTORS.             §    4:01 P.M. TO 4:37 P.M.

7               STATUS CONFERENCE (VIA ZOOM)

8            BEFORE THE HONORABLE MARVIN ISGUR
                 UNITED STATES BANKRUPTCY JUDGE

9

10

11

12     APPEARANCES:              SEE NEXT PAGE

13     RECORDED VIA COURTSPEAK; NO LOG NOTES

14

15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
               935 Eldridge Road, #144
22             Sugar Land, TX  77478
                  281-277-5325
23             www.judicialtranscribers.com

24

25   Proceedings recorded by electronic sound recording;
        transcript produced by transcription service.

<u>APPEARANCES (VIA ZOOM)</u>:

FOR:
Galveston Bay Pipeline, LLC      ALFREDO R. PEREZ, ESQ.
Debtor                           ERI MARIE CHOI, ESQ.
                                 PAUL GENENDER, ESQ.
                                 Weil Gotshal & Manges, LLP
                                 700 Louisiana Street
                                 Suite 1700
                                 Houston, Texas 77002
                                 (713) 546-5040


Zurich Insurance Company         DUANE J. BRESCHIA, ESQ.
Creditor                         Clark, Hill, Strasburger
                                 720 Brazos Street
                                 Suite 700
                                 Austin, Texas 78701
                                 (512) 499-3647


HCCI International Insurance      PHILIP G. EISENBERG, ESQ.
Company, PLC                     Locke Lord, PC
Creditor                         600 Travis
                                 Suite 3400
                                 Houston, Texas 77002
                                 (713) 226-1304


                                 ATTORNEY GRIFT

BP Exploration &                 CRAIG DUEWALL, ESQ.
Production, Inc.                 Greenberg Traurig, LLP
Interested Party                 1000 Louisiana
                                 Suite 1700
                                 Houston, Texas 77002
                                 (713) 374-3612
                                 (

Ecopetrol America, LLC          KELLY SINGER, ESQ.
Interested Party                 Squire Patton
                                 1 East Washington Street
                                 Suite 2700
                                 Phoenix, Arizona 85004
                                 (602) 528-4000

1                    <u>APPEARANCES (CONT'D - VIA ZOOM):</u>

2

3  Atlantic Maritime              BENJAMIN W. KADDEN, ESQ.
   Services, LLP                  Lugenbuhl Wheaton
4  Creditor                       601 Poydras Street
                                  Suite 2755
5                                 New Orleans, Louisiana 70130
                                  (504) 568-1990
6                                 (504) 310-9195 (fax)

7

8

9  (Please also see Electronic Appearances.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          HOUSTON, TEXAS; THURSDAY, JUNE 17, 2021; 4:01 P.M.

2          THE COURT:  All right.  Good afternoon.  We're

3    here in the Fieldwood Energy case.  It's 20-33948.

4    Electronic appearances have been made.

5          Before we begin the formality of the hearing, in

6    1866, General Order No. 3 was read in Galveston, Texas.

7    General Order No. 3 is the order that implemented the

8    Emancipation Proclamation in our state.  The State of Texas

9    was the first state to adopt Juneteenth as a state holiday.

10          Earlier today, the President signed after Congress

11    had passed a bill that recognizes Juneteenth as a federal

12    holiday, and the first Juneteenth celebration is tomorrow.

13    The court will be closed tomorrow.

14          I have begun to clear out Monday as a date for

15    hearings in this case depending upon what I'll hear today,

16    but I think it is important to recognize the actions of our

17    elected representatives and the importance of Juneteenth,

18    not only to the country, but to the history of our state and

19    the history of our district.  It would be difficult to

20    imagine that Juneteenth originating in this district will

21    not be recognized in this district as a federal holiday.

22          So I know that probably takes people by surprise

23    who didn't even know that tomorrow was a federal holiday,

24    but about an hour ago, I believe, tomorrow became a federal

25    holiday.  So I haven't really gotten everything moved on

1   Monday yet, and I know that means you'll need to be agile

2   about what we're doing, but that is where we are.

3           I will be able to start as early in the morning

4   Monday as is appropriate given everyone's schedule.  You

5   know, I would suggest people think about an 8:00 a.m. start.

6   We could do a 7:00 a.m. start if you all want to, but that

7   is where we are.

8           So, Mr. Perez, I know that you always like an

9   unusual hearing, and now, you are in one.  Tell me where we

10  are on the case.

11          MR. PEREZ:  Yes, Your Honor.  I think you already

12  have a commitment at 8:00 a.m. on Monday.

13          THE COURT:  I was going to move it.

14          MR. PEREZ:  Oh, okay, then.  We had a hard time

15  getting it that time.  Okay.  All right, Your Honor.

16          But, Your Honor, obviously, we understand, you

17  know, the importance of the situation and the need to move

18  the hearing.  It is -- obviously, we are prepared to go

19  forward on Monday, and we'll be prepared to go forward.

20          We did have a meet-and-confer.  There has been a

21  request for a continuance on the part of our objectors.  We

22  would strongly oppose any continuance beyond Monday.  Your

23  Honor, as we sit today, we're having the first storm in the

24  Gulf.  Fieldwood is in the process of evacuating a portion

25  of their installations; and to the extent that we want to

1   accomplish the goals in our Plan, which is to decommission

2   assets.  That needs to begin, you know, sooner rather than

3   later because the longer we wait, the less chance of it

4   getting done this summer, and that just increases the

5   ability of the Debtor and all of the other parties to do it.

6         Your Honor, the objectors had a kind of a litany

7   of things that they are complaining about.  I mean, we're

8   prepared to address each and every one of them.  Obviously,

9   to -- we are -- we had numerous objections, and we're having

10  numerous discussions.  The Confirmation Order and the Plan

11  will need to keep changing in order to address these things.

12        The most recent change that we made is as a result

13  of discussions that we've had with the Government.  I think

14  that, obviously, the Government can speak for themselves,

15  but there are going to be changes as there is in every

16  process, especially when you have one as complicated as

17  this.

18        I am -- I think that this case has been, you know,

19  originally, we wanted to come out in April, we wanted come

20  out in May, and, you know, we'd love to be able to present

21  our case and have the Court decide whether we've met the

22  requirements of 1129, but we need to -- we need to be able

23  to put on our case, Your Honor.  And obviously, we're

24  prepared to go as quickly as possible on Monday as need be,

25  and obviously, come prepared to address any objections, but

1  I think for the purposes of this Debtor, time is not our

2  friend.

3          THE COURT:  With respect to exhibits that are

4  going to be offered on, now, Monday, did the parties of the

5  meet-and-confer have an opportunity to discuss the exhibits?

6          MR. PEREZ:  Your Honor, we did, and I think that

7  I'll let Ms. Choi speak to the actual exhibits.  We had put

8  in some Declarations that we thought were non-controversial.

9  Nobody wanted to do that, so we're going to have to put on

10  all our witnesses to prove up 1129, which, you know,

11  frankly, you know, we understand that the goal here is to,

12  you know, put as much time between us and confirmation as

13  possible, so we're prepared to do that.

14          But as it relates to the, you know, I -- and

15  again, I'll let Ms. Choi speak -- but I don't think that

16  there is going to be a big, huge fight on exhibits.  It's

17  primarily with respect to the Declarations.

18          THE COURT:  All right.  Yeah, look, it's my view

19  that, as I think you're acknowledging in your statement,

20  Declarations are not admissible over an objection.  So --

21          MR. PEREZ:  Correct.

22          THE COURT:  -- it's an easy call.  People want to

23  have live witnesses; we'll have live witnesses.  I will

24  require that people not stipulate as to the Declarations at

25  all.  That is not true or not appropriate, but I will

1  require people -- both sides -- to stipulate to facts that

2  aren't contested so that I can I have an organized hearing,

3  and there's a far different -- it's a far different thing to

4  stipulate as to uncontested facts than it is to allow

5  Declarations to come in.

6        So the parties need to get that done, and we'll

7  start the hearing on Monday with a statement of stipulations

8  that are agreed to, to the extent that we have uncontested

9  facts.  If we have no uncontested facts, we have no

10  uncontested facts, but I have a hard time thinking that

11  there aren't at least some uncontested facts in the case.

12        Ms. Choi, did you want to add anything to that,

13  and then, we're going to let anyone else speak that wishes

14  to speak at the beginning of the hearing?

15        Ms. Choi, go ahead.

16        MS. CHOI:  Yes, Your Honor.  Just to clarify, we

17  actually did reach agreement with respect to two of the

18  Declarations, our Prime Clerk Voting Declaration and the

19  Declaration of Mark Brown relating to the liquidation

20  analysis.  There were no objections to the admission of

21  those.  It's the remaining Declarations, so I just wanted to

22  clarify that.

23        THE COURT:  So which two Declarations are you now

24  offering?  What are their ECF numbers?

25        MS. CHOI:  Debtors' Exhibits -- let me see.

1   Apologies, Your Honor.  Let me get those numbers, please.

2       (Pause in the proceedings.)

3           MS. CHOI:  Your Honor --

4           MR. PEREZ:  Mr. Brown's is -- go ahead.

5           MS. CHOI:  -- the Debtor's -- yeah.  Sorry.  It's

6   Debtors' Exhibit -- so 45 which was originally ECF No. 1521,

7   but when we submitted it with our Exhibit List, it had a

8   different number.

9           THE COURT:  Where do I find the exhibits on --

10          MS. CHOI:  And then --

11          THE COURT:  -- the docket sheet?

12          MS. CHOI:  The Exhibit List is 1648, but I'm

13  trying to find those numbers for you, so let me just --

14  apologies for the delay.

15          THE COURT:  What --

16          MR. PEREZ:  I think it's 1648-45, Your Honor.

17          THE COURT:  I don't think we have subs to 1648.

18  It looks like one big document.

19          MR. PEREZ:  Oh, well, that -- well, we'll re-file

20  that, Your Honor.  That shouldn't have been the case.

21          THE COURT:  Yeah, okay.  So we have an offer of

22  15-21 as an exhibit.  What else do you have an offer of?

23          MS. CHOI:  The other one is 1555, Your Honor.

24          THE COURT:  Tell me again.

25          MS. CHOI:  It's ECF 1555.

 1          THE COURT:  So we have an offer of 1521 and of

 2    1555 as Declarations to be admitted at the hearing.

 3          Do we have any objections?

 4          Mr. Brescia.

 5          Mr. BRESCIA:  Oh, Your Honor, my objection wasn't

 6    to those two documents, I just had something to say about

 7    the timing of things to like to re-raise what I raised

 8    yesterday.  So I can wait until you finish this point.

 9          THE COURT:  That would be great.  I'll just leave

10    your line open and let you speak up when we get there.

11          MR. BRESCIA:  Thank you, Your Honor.

12          THE COURT:  Mr. Eisenberg.

13          MR. EISENBERG:  Good afternoon, Your Honor.

14    Philip Eisenberg on behalf of HCCI International Limited.

15          Yes.  We -- as long as 1545 and 1555, I think it

16    is, by the Prime Clerk and Brown Declarations, we have no

17    objection to those.  I just -- I want to just confirm that

18    that's what they are, Your Honor, because not that

19    they're --

20          THE COURT:  So --

21          MR. EISENBERG:  -- moving around so fast.

22          THE COURT:  -- 1555 -- 1-5-5-5 is the Declaration

23    of Mark Brown.

24          MR. EISENBERG:  Yes, sir.

25          THE COURT:  And 1521 --

1          MR. EISENBERG:  0h, 2-1.

2          THE COURT:  -- is the Declaration of Alex

3   Orchowski of Prime Clerk.

4          MR. EISENBERG:  Got you, Your Honor.  No objection

5   on those, Your Honor.  Thank you for making sure.

6          THE COURT:  All right.  There are no objections

7   then.  Those two are admitted.

8      (Exhibits ECF Nos. 1555 and 1521 received in evidence.)

9          MS. CHOI:  Your Honor, with respect to the

10  remaining exhibits, we are still working through and we

11  agreed in principle to the way we're approaching things, but

12  need to actually go through and get the list for you.  So if

13  we may -- that housekeeping matter, bring those agreed

14  exhibits to you on Monday at the beginning of the hearing,

15  or we file something in advance?

16         THE COURT:  I'd like it filed as soon as it's

17  ready, so.

18         MS. CHOI:  Okay.

19         THE COURT:  All right.

20         Mr. Brescia, go ahead.

21         MR. BRESCIA:  Thank you, Your Honor.  This is

22  Duane Brescia for Zurich American Insurance Company.

23         Yesterday at the hearing, I did raise some

24  concerns -- brought some of those facts to Your Honor's

25  attention, so basically, everything has been filed this

1  week.  There have been 2700 pages of documents filed a

2  couple of days ago.

3         I know some of those are old documents, some of

4  them are brand-new documents, some of them are redlined, and

5  some of them are not.  And then there's been a second or a

6  Third Amended Plan Supplement and a Fourth Amended Plan

7  Supplement, and I think there is now a Fifth Amended Plan,

8  and it's just, you know, we're really troubled by some of

9  the things that are in there.

10        They are changing the treatment of creditors here.

11  One of them is they're removing subrogation rights of the

12  parties.  That is a brand-new issue.  With respect to my

13  client, Zurich, we're dealing with the Apache assets which

14  are placed into Fieldwood One.

15        I raised to Your Honor's attention yesterday that

16  we still don't even know what treatment is going to be of

17  creditors and of Fieldwood One.

18        Throughout the last several weeks in this case, we

19  were understanding and believed that there was going to be a

20  $45 million, I guess, credit or line pooled that is offered

21  by Apache to be stuck in a trust, to be set aside for

22  plugging and abandoning, and then in their brief, they

23  mention that that's not going to be there anymore, but

24  there's a $50 million line of credit that is going to be a

25  working capital line.

1          Now, that working capital line may be a good thing

2     for Fieldwood One.  It may not be a good thing for Fieldwood

3     One.  It may harm creditors or may not harm creditors.  But

4     that -- we just -- it's not been filed yet.  It's not been

5     presented to people.  We don't know whether it's good or

6     bad.

7          And so they can pool it, but we don't know if the

8     45 million is still there.  I mean, to try to prepare for a

9     hearing tomorrow and still the fundamental aspects of this

10    case are changing has been pretty difficult, and I raise a

11    due process concern that we just don't have enough time.

12         And so I requested of the Debtor to extend it a

13    week until next Friday to start then.  I'm renewing that

14    request to Your Honor today.  You can take judicial notice

15    of everything that has been filed -- all the redlines and

16    all the changes.  It's too early to say whether all of it is

17    material, or none of it is material.  I'm sure some of it is

18    material.  We just need some time to digest it all and find

19    out what's going on.

20         I have no -- it's not problematic.  I mean, I

21    understand the Debtor wants to move as fast as possible

22    because it's now in their advantage, and it's not to the

23    advantage of objecting creditors.

24         So I just wanted to raise that to Your Honor's

25    attention.  I don't think Monday is going to work yet.  I

1    think at least next week so we can get a handle on what's

2    there; and then if there's additional issues, we can raise

3    it to Your Honor some time later next week before next

4    Friday.

5            THE COURT:  All right.  Thank you, Mr. Brescia.

6            Mr. Eisenberg.

7            MR. EISENBERG:  Yeah, I, Your Honor -- oh, thank

8    you, Your Honor.  Philip Eisenberg for HCCI International

9    Limited.

10            In addition to the modifications that Mr. Brescia

11   mentioned, there were other redline changes to both the

12   effective date, and there are still open disclosure issues

13   with regard to cure and footnotes with regard to executory

14   contracts, whether they are or not, how they're going to be

15   treated.  We don't know how the Apache Decommissioning

16   Agreement is going to be cured yet.  It's critical for us.

17            There is an effective date condition with regard

18   to working out an arrangement with the Government that we

19   really don't have a lot of insight into except that it is

20   condition precedent to the Plan going effective, and we

21   don't know how that arrangement might affect the creditors

22   who -- and some of the sureties who might have bonds on

23   properties that are going to be addressed, whether part of

24   the arrangement is going to involve or impact those bonds in

25   any way.  And that just happened yesterday, as well, between

1  our hearing yesterday and today.

2         And so I echo Mr. Brescia's concern with regard to

3  those items, and I just wanted to kind of point out that

4  some of the P&A Agreements where we had just term sheets for

5  some of the properties in Fieldwood Three and Fieldwood

6  Four, they now have full-blown agreements.  Those were part

7  of the 2700 pages, and one of the parties, at least, for

8  Fieldwood Four, Chevron has been added into the litany of

9  exculpated parties in this case, and they weren't there

10  before yesterday, as far as I'm aware.

11         And so I just wanted to add an echo of what

12  Mr. Brescia said.

13         THE COURT:  All right.  Thank you, Mr. Eisenberg.

14         Mr. Grift.

15         MR. GRIFT:  Thank you, Your Honor.  And I rise

16  today just essentially to echo the comments of Mr. Brescia

17  and Mr. Eisenberg and join in the application for a

18  continuance on behalf of Everest, Theriot, Aspen, and Berg

19  (phonetics).

20         Thank you, Your Honor.

21         THE COURT:  How is Marvin?

22         MR. GRIFT:  He's good.  He's very good.

23         THE COURT:  Good.

24         MR. MARVIN:  I'm in the office today, so I don't

25  have him, but --

1          THE COURT:  Okay.  Anyone else?

2     (Pause in the proceedings.)

3          THE COURT:  So I --

4          MR. PEREZ:  Can I respond, Your Honor?

5          THE COURT:  You don't need to for now I don't

6  think.

7          MR. PEREZ:  Okay.

8          THE COURT:  I'm going to start the hearing Monday

9  at 8:00 a.m.  I am not going to do a trial by ambush, but I

10 don't get the sense, at this point have a sense, that I'm

11 going to be doing a trial by ambush.  It is normal routine

12 and unavoidable that in a highly complex case there will

13 always be moving parts as things get done.

14          However, the fact that I'm going to start Monday

15 at 8:00 a.m., doesn't mean that if something comes up where

16 it is unfair to proceed with a witness or a document or an

17 issue because of some sort of trial by ambush -- and I know

18 no one besides me is even using that pejorative term; people

19 are just saying things are changing, and we need more time

20 -- I'm going to wait and see that when I see what is really

21 happening because there is no way for me to determine that

22 today.

23          So we're starting Monday at 8:00 a.m.  I don't

24 think that the lawyers representing the sureties are bashful

25 people; and if you all get to the point where you think

1  that, you know, I'm making a mistake starting there because

2  your clients' due process rights are being invaded, show it

3  to me when I'm in the hearing.  And it's going to be fine

4  with me.  I'll let you speak about it.

5           But right now in the abstract, the mere fact that

6  things are moving pieces isn't enough to not proceed

7  promptly with a trial.  Plus, we have the inconvenient bonus

8  of you just got four days just by an act of Congress, which

9  not many people get their continuances by act of Congress.

10          So you do have a little bit more time.  That may

11  not be enough, but it may also be that going until next

12  Friday isn't enough because, frankly, every time we wait a

13  day, there will be more moving pieces that people fix or

14  close or backfill, and I'm just going to have to look at it

15  as we go.

16          But I am not telling anyone -- and Mr. Perez, I

17  don't -- I didn't let you speak.  I don't want you taking

18  too much comfort that we're starting Monday at 8:00 a.m.  If

19  it turns out that -- and I'll just give an example that

20  having Chevron as a -- an exculpated party is new and

21  adverse and material, and people need to understand it

22  better, they may get their continuance on something like

23  that.  But I'm just  -- I can't decide that in the abstract.

24  I really don't have enough information until we get into it.

25  But I may continue things or maybe some -- require some

1  witnesses to return.  I doubt we finish on Monday, but you

2  know, maybe, we will.

3         So I'm going to proceed on Monday, but I'm not

4  going to limit people's ability to make the very arguments

5  they're making today once I get my arms around the

6  information a little bit better.

7         MR. PEREZ:  Thank you, Your Honor.

8         THE COURT:  Let me hear from anyone where Monday

9  at 8:00 a.m. is itself a problem in terms of, you know,

10 somebody has childcare responsibility or something else

11 where we can't start Monday at 8:00.

12     (Pause in the proceedings.)

13        THE COURT:  Okay.  I assume nobody really wants to

14 start much earlier than that; is that right, or does anybody

15 want to get started a little earlier than that?

16        I heard laughter at that suggestion, so I guess,

17 that means Monday at 8:00 --

18        MR. PEREZ:  Your Honor, I'm up at -- I'm up at

19 6:00, so I'm as early, but 8:00 is fine, Your Honor.

20        THE COURT:  Mr. Perez --

21        MR. PEREZ:  It is either --

22        THE COURT:  -- I'll just tell you that as we

23 continue to age, we get up about 30 minutes earlier every

24 two years.  So I've got you beat at 6:00.

25        Anyone else?

1       (No audible response.)

2            THE COURT:  Okay.

3            MR. BRESCIA:  Your Honor, again, this is Duane

4  Brescia for Zurich.

5            THE COURT:  Mr. Brescia, go ahead.

6            MR. BRESCIA:  Yeah.  I appreciate the Court's

7  time.  Again, Duane Brescia for Zurich American Insurance

8  Company.

9            I understand the Court's point about the start

10  time on Monday at 8:00 a.m.  There is at least a couple of

11  issues I want to make sure gets raised here today.

12            THE COURT:  All right.  Go ahead.

13            MR. BRESCIA:  Not starting time issues.

14            THE COURT:  No, go ahead.

15            MR. BRESCIA:  One of them -- yeah, no.  So one of

16  them that kind of came up in our discussion, and I'm not

17  sure got finally settled, I'm -- and I'm -- I don't really

18  have an opinion one way or the other as for how this Court's

19  going to proceed.

20            There are a number of highly confidential

21  documents.  Those documents are the Debtors' -- produced by

22  the Debtors in another case.  There will be testimony about

23  Exhibit O, which is a financial projection that is based

24  upon those documents, and I just would like to make sure

25  while we have the weekend to prepare, we have Your Honor's

1  clear opinion on how we're going to treat highly

2  confidential documents need -- show the Court the

3  differences between the Debtors' produced documents versus

4  what's in their financial projections.

5       MR. PEREZ:  Your Honor, I think we've handled that

6  in other cases by, you know, the Court will have the

7  document, the -- a deponent will have the document and

8  opposing counsel will have the document and everybody who

9  signs a protective order will have the document, and I think

10  the testimony can proceed on that basis.

11       We've have done that routinely, you know, in other

12  contested matters before the Court.  I think, you know, we

13  can agree and, you know, have the deponents have whatever

14  documents they, you know, highly confidential documents they

15  want them to have.  I don't think that is a, you know, a

16  gating item.  I think that's just a --

17       THE COURT:  So a couple of things about that.

18  It's possible, Mr. Brescia, that there would be a question

19  that you would ask that would require the disclosure of the

20  contents of a highly confidential document.

21       In general, I'll just tell you, my experience in

22  these COVID hearings has been -- it turns out not to be an

23  issue because everybody can read along, and you can find a

24  way to word the question without actually disclosing the

25  confidential information, either the question or the answer.

1  But if required, I have the ability with our technology to

2  close the audio and video, but for those people who are

3  entitled to know it just as we would do in a live, open

4  court.

5          So if we get there, we'll do it.  I would prefer

6  to find a way to ask people to look at, you know, the second

7  sentence of the third paragraph, read it to yourself, and

8  then you answer the question about that.  And then if the

9  party designating it as confidential thinks that invades the

10  confidence, I'm not going to stop you from asking the

11  question.  We may go into that kind of a sealed hearing.

12  But we can do that through the audio and visual technique.

13          It's harder, I will tell you that.

14          I think it may make sense, though, Mr. Perez,

15  given the large number that Mr. Brescia is describing.  I

16  know that you sent everything over and under seal, and I

17  have this big stack of sealed documents that aren't

18  organized very well.  I wonder if it wouldn't make some

19  sense to go ahead and deliver to me a notebook that has all

20  sealed exhibits in it so that I've got them in sequential

21  order, and they're readily locatable, and then everyone else

22  already --

23          MR. PEREZ:  Yeah.

24          THE COURT:  -- has them, I think.

25          MR. PEREZ:  Yep.

1          THE COURT:  That would makes things more --

2          MR. BRESCIA:  Your Honor, one more piece to that.

3          THE COURT:  -- go ahead, Mr. Brescia.

4          MR. BRESCIA:  Yeah if I may.  It was -- and I --

5    maybe, I'm just unclear what the Debtor has provided and

6    other parties, not just my client, but a number of these

7    documents are Excel spreadsheets that are dynamic, and just

8    so long as the Court has the ability to see those in

9    electronic form, that's just a question --

10          THE COURT:  Yeah.  So I haven't --

11          MR. BRESCIA:  -- not an order for today.

12          THE COURT:   -- I haven't opened any of the -- I

13   haven't electronically opened anything yet, but several of

14   these have attached flash drives to them that I assume will

15   have the electronic version of the spreadsheet, and those

16   were sent over under seal, but I have not plugged them into

17   my computer and looked at any of them, yet.

18          MR. BRESCIA:  Yeah, I believe there was a number

19   of those that were corrupted as we tried to download some.

20   I think that's being corrected by the Debtor so, you know,

21   no trouble there.  I just want to make sure that if -- you

22   know, those issues were addressed here today at this Court's

23   hearing.

24          THE COURT:  Yeah, let's -- I -- let's be sure I've

25   got all the right --

1          MR. BRESCIA:  Things are done correctly --

2          THE COURT:  -- flash drives and, you know, I will

3    find a way to run them through our security software here

4    and try to avoid getting fired as I do that.

5          MS. CHOI:  Your Honor, if I may?  Would it be

6    helpful if we sent a flash drive that has all of the

7    Debtors' exhibits in one place -- the sealed and unsealed on

8    the flash -- on the flash drive?

9          THE COURT:  Well, if these are things that I need

10   to look at in native format, whether they are sealed or

11   unsealed, I can only do that off of a flash drive.  So, yes,

12   as to that.

13         But the balance of the documents, for example, if

14   there's a document -- we'll take the Declaration at 1521 --

15   I don't need you to send that over to me again because I'm

16   just going to have you put up any other document that you

17   reference on the screen, and we'll look at it on the screen.

18   And anything you can put up on the screen off the docket

19   sheet, I can put up on the screen myself and look at one of

20   the computers.

21         My own setup is, I've got three screens.  I've got

22   one with faces, I've got one with whatever document you're

23   showing me, and I've got another one with whatever document

24   I want to look at just so you know what my -- and I can also

25   divide each of these, so I could end up with six screens if

1    I wanted, but I don't.

2          So does that make sense?

3          MS. CHOI:  Yes.  And I take it, you do not want

4    printed copies then?

5          THE COURT:  I don't think so.  I can live with

6    what is here, and I think that's more fair to everybody

7    else.  It's just on the sealed ones, I've got to have

8    printed ones, and so on those, if you'll put them in a

9    notebook and just include a flash drive for anything that is

10   expected in native format.

11         Mr. Brescia, if there's something in native format

12   that I don't have, we'll find a way to get it transmitted

13   over here either with a flash drive or a messenger can bring

14   it.  Maybe, I can receive it by email, but that may not be

15   as safe as the flash drive, but we'll get them here.

16         And then --

17         MR. BRESCIA:  Thank you, Your Honor.

18         THE COURT:  -- the other issue is, if there are

19   native format matters that are not sealed, you all can put

20   them up on the screen just off your -- you know, your

21   witness can use the native format.  All right?

22         Mr. Genender, I think you had something you needed

23   to add to that.  Go ahead.

24         MR. GENENDER:  I -- Your Honor, I -- thank you.

25   Paul Genender, for the Debtors.

1          I did not.  Mr. Perez mailed it.

2          THE COURT:  That's unusual, but okay.

3     (Laughter.)

4          MR. EISENBERG:  Your Honor, Philip Eisenberg, may

5 I add something?

6          THE COURT:  Sure, go ahead, Mr. Eisenberg.

7          MR. EISENBERG:  And it is -- it's not what you

8 would expect.  Maybe it is.  I don't know.  I just wanted

9 to, you know, bring to the Court's attention, the utmost

10 professionalism of Debtors' counsel, Mr. Perez,

11 Mr. Genender, and particularly, Ms. Choi and Mr. Carlson, in

12 dealing with us and working through the Witness and Exhibit

13 Lists and, you know, many of the documents we can admit, but

14 not for the truth.

15          We're working through that now, and we just -- I

16 just I would be remiss if I didn't point that out, Your

17 Honor.  We may -- this may be a fluid dynamic situation, and

18 there may be things changing that under the rules that would

19 require some relief one way or the other, but it is not

20 because of the professionalism of Debtors' counsel.

21          THE COURT:  It's very kind of you to say that.

22 Too many people forget that sometimes we have fights even

23 when people are acting in the utmost professional and

24 ethical way, and thank you for reminding us all of that,

25 Mr. Eisenberg.

1          MR. EISENBERG:  Thank you, Your Honor.  I

2    appreciate it.

3          MR. BRESCIA:  Your Honor, yeah, Duane Brescia.

4          I did have two comments, but we got pretty far

5    astray on the Excel spreadsheets.

6          We do have an opening argument we'd like to

7    present.  I would like to address that whole concept of

8    opening arguments as well.  I know a number of objectors who

9    would like to do that.  I do not know if the Debtor intends

10   to or not, but I just wanted to raise that to the Court's

11   attention.

12         THE COURT:  Yeah.  Is there a way that we can

13   agree today that we'll give $X$ minutes to the proponents,

14   whoever that is, and $X$ minutes to the opponents, whoever

15   they are, and then make you all divide up proponent and

16   opponent time so that we have, let's say, 30 minutes of

17   opening argument by proponents of the Plan and 30 minutes by

18   opponents to the plan, or do you think that that's not going

19   to be adequate for all the opponents put together?

20         MR. BRESCIA:  Your Honor, Duane Brescia, for

21   Zurich.

22         I know we're probably 10 to 15 minutes, but there

23   is 40 objections, and I don't speak for all of them, and the

24   Apache sureties probably combined could do it in 30, but

25   there are so many other parties, and they would have to

1  speak up if they're willing -- interested or not.

2       THE COURT:  All right.  Look, if you all can reach

3  an agreement that -- on how to divide that up.  I don't know

4  how to group people, and so if we can't, we can't.  I'm

5  going to let you do opening arguments.  I may cut people off

6  if you're telling me stuff I don't need to hear, but I

7  actually very much need opening arguments, if you believe

8  that, you know, to explain the deal.

9       So it's not like I'm looking to cut people off,

10 but please don't stand up and just, you know, agree with

11 somebody else's statement.  That is not educational to me.

12 I'm -- one thing I will not be doing, is taking a vote.

13      So, you know, if you're going to make an opening

14 statement, tell me something I'm -- that you're concerned I

15 don't know, and you'll probably hit it right.  If you're

16 concerned I don't know it, I probably don't, but I'm going

17 to allow opening statements if that's what parties want.

18      MR. BRESCIA:  Well, we think opening statements

19 are pretty important here particularly because of some of

20 the complex structures and the number of documents and

21 transactions that are being accomplished here.

22      As I said many months ago, this case is like some

23 of the other cases we had, but much -- multiplied, and so we

24 do -- that's one of the reasons why we want to do opening

25 argument, Your Honor.

1          THE COURT:  I wouldn't want to -- you're going to

2    get them.  You're going to get them.

3          MR. BRESCIA:  I appreciate --

4          THE COURT:  I just hope you all will find a way

5    not to -- and I know no one will do it on purpose -- but

6    let's just be efficient about how we're doing it.

7          MR. BRESHCIA:  Well, we've really been working as

8    a surety group to do that, Your Honor.

9          I had a point.  We had a meet-and-confer with the

10   Debtors and, there was a point, and we touched on it, but I

11   didn't follow up with Mr. Genender on it, but, Your Honor,

12   there is a witness, Mr. Graham, that they had consented to

13   bring to the trial for me, and they had put him on his list,

14   and they are going to call him in their case-in-chief; and

15   to be efficient with Mr. Graham, I don't mind if I have to

16   do my direct of Mr. Graham, if I have direct that's not a

17   cross, when he's there in their case, as long as they don't

18   mind, but I'm very aware that, you know, in doing cross,

19   you're usually limited what happens in direct, and because I

20   -- they agreed to bring him for my case, I just wanted to

21   make sure that we could all agree to that in efficiency and

22   for the better to Mr. Graham.

23         THE COURT:  Is there anyone that has an objection

24   to me ordering that, as to all witnesses, we are not going

25   to enforce the scope limitation, and in fact, do the

1  opposite, which is each witness is going to be called one

2  time.  You can violate the scope because it will be both

3  direct and cross.  Does anyone have a problem with that --

4           MR. GENENDER:  Your Honor --

5           THE COURT:  -- could you please speak up?

6           MR. GENENDER:  Your Honor, Paul Genender for the

7  Debtors.

8           No objection to it.  Obviously, you're carving out

9  true rebuttal testimony from that rule, of course, right?

10          THE COURT:  You can always do true rebuttal.  In

11  addition, I'm going to make you do true direct.  So --

12          MR. GENENDER:  Okay.  Got it.

13          THE COURT:  -- there will be no -- yeah.

14          MR. BRESCIA:  Thank you.  Thank you.

15          THE COURT:  Mr. Duewall and Mr. Peck both have

16  their hands raised.  It may or may not be about this issue,

17  but let's get this cleared out, and then we'll go to

18  Mr. Duewall and whatever else he might want to talk about,

19  and then we'll go to Mr. Peck and whatever else he might

20  want to talk about.

21          So does anyone have a problem that cross-

22  examination will not be scope limited, nor will any redirect

23  be scope limited?  We're going to allow parties to violate

24  that rule and require that each witness be called only one

25  time unless there is some, you know, reason why they need to

1   be called back as a rebuttal witness.  Maybe that's the

2   point Mr. Genender was making.  I'm not going to preclude

3   you from calling somebody in rebuttal if something new comes

4   up, but everything that you're anticipating putting on needs

5   to be put on the first time they're called.

6           Any problem with that?

7           Let's see.  Mr. Singer?  Mr. Singer?

8           MR. SINGER:  Hello, Your Honor.  Kelly Singer on

9   behalf of Ecopetrol.  I don't have a comment on your instant

10  question, but I just wanted to be heard about a different

11  issue towards the end.

12          THE COURT:  Okay.  Well, let's you do Mr. Duewall,

13  and then we will do Mr. Peck, and then we'll do Mr. Singer.

14          Mr. Duewall.

15      (No audible response.)

16          THE COURT:  Mr. Duewall, if you're speaking, I

17  can't hear you.

18          MR. DUEWALL:  Is that better, Your Honor?

19          THE COURT:  It is.

20          MR. DUEWALL:  Good.  Thank you, Your Honor.  Craig

21  Duewall on behalf of BP.  Sorry about that.  We were muted

22  here.

23          I had my hand raised to ask the question about

24  opening statements.  The Court has addressed that issue

25  that, you know, we're uniquely situated, and so we will

1    certainly do our best during opening statements not to

2    repeat any issues that have been raised, but do know BP's --

3    some of our issues are unique, and so that was another

4    reason that I had my hand raised, Your Honor.

5              Thank you.

6              THE COURT:  Thank you, Mr. Duewall.

7              Mr. Peck.

8              MR. KADDEN:  Good afternoon, Your Honor.  This is

9    actually Benjamin Kadden --

10             THE COURT:  Mr. Kadden.  Mr. Kadden, good

11   afternoon.

12             MR. KADDEN:  -- on behalf of Atlantic.  How are

13   you, Judge?

14             I was -- just wanted to clarify.  We actually have

15   a motion to lift stay which is set contemporaneously with

16   the confirmation hearing tomorrow.  Wanted to confirm that,

17   that will be carried similarly to Monday beginning at

18   8:00 a.m.

19             THE COURT:  It will.  I'm holding no hearings

20   tomorrow at all in recognition of the federal holiday.  All

21   hearings in -- that are Fieldwood scheduled for tomorrow are

22   continued until 8:00 a.m. on Monday.  Other hearings, I'm

23   moving by separate orders.

24             MR. KADDEN:  Understood.  Thank you, Your Honor.

25             THE COURT:  All right.  Thank you, Mr. Kadden.

1          Mr. Singer.

2          MR. SINGER:  Thank you, Your Honor.  Kelly Singer

3     on behalf of Ecopetrol America.

4          Your Honor, we're not part of this overall dispute

5     that involves the sureties, and I am perfectly fine with

6     starting at 8:00 a.m. your time, which is 6:00 a.m. my time

7     tomorrow with my witness, but I just don't think that my

8     issue is going to get called.  If it gets called at all, it

9     won't get called until later in the day, and so I was

10    wondering if there is a way to -- I'm okay with appearing,

11    but I just didn't know if I needed my witness who I'm

12    submitting through Declaration testimony -- I just didn't

13    think that they need to be on for the full, you know, the

14    full shebang that this hearing is going to be on Monday when

15    our issue is relatively important to us, but it's relatively

16    small in grand scheme of Monday.

17         THE COURT:  Mr. Singer, is your witness going to

18    be part of the proponents' case, or will it be part of the

19    opponents' case?

20         MR. SINGER:  We have objected to the Plan, so it

21    would be the opponents' case.

22         THE COURT:  Okay.

23         MR. SINGER:  It's not the same --

24         THE COURT:  You --

25         MR. SINGER:  -- issues --

1          THE COURT:  -- will receive not less than one

2    hour's notice before your witness has to be called.  How's

3    that?

4          MR. SINGER:  That's great, Your Honor.  Thank you.

5          THE COURT:  Okay.  Thank you.  Just remind me that

6    I promised you that hour, but I'm going to give you at least

7    an hour to get your witness here.  Let him sleep.

8          MR. SINGER:  Thank you.

9          THE COURT:  Thank you.

10         MR. SINGER:  And I will remind you.

11         THE COURT:  Thank you.

12         And given -- if you are limited in the nature of

13   what you're doing, it's at your own risk because I don't

14   know what might happen that you might not like early in the

15   day, but you're free not to show up at 8:00 a.m.  You can

16   show up later.  I'm just not going to redo something I've

17   already done.

18         So I'll let you measure your own risk on that if

19   that's okay, Mr. Singer.

20         MR. SINGER:  Understood, Your Honor.  Thank you.

21         THE COURT:  Thank you.

22         Does anyone else have anything that would be

23   helpful to cover this afternoon?

24       (No audible response.)

25         THE COURT:  Okay.  I will see you all Monday at

1   8:00 a.m.  Mr. Perez, I -- so that everybody knows -- Monday

2   at 8:00 a.m., I had a pre-mediation conference in a case

3   that Mr. Perez was counsel on.  That -- if you will just

4   give everybody notice, Mr. Perez, as to when I'm going to

5   move that to.  I'm going to move it to Wednesday at

6   8:00 a.m., Wednesday, the 23rd.  If you will let people to

7   that know.

8          MR. PEREZ:  I will do that, Your Honor.  Thank

9   you.

10          THE COURT:  Thank you.  Sorry about the

11   inconvenience to those clients, but obviously, a good reason

12   for doing it.

13          Okay.  Anything else?

14          MR. PEREZ:  Thank you, Your Honor.

15          THE COURT:  Thank, you all.

16          Okay.  We're in adjournment until 5:00 o'clock

17   today.

18      (Hearing adjourned at 4:37 p.m.)

19

20

21

22

23

24

25                          *  *  *  *  *

1          I certify that the foregoing is a correct

2    transcript to the best of my ability due to the condition of

3    the electronic sound recording of the ZOOM/telephonic

4    proceedings in the above-entitled matter.

5    /S/ MARY D. HENRY

6    CERTIFIED BY THE AMERICAN ASSOCIATION OF

7    ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

8    JUDICIAL TRANSCRIBERS OF TEXAS, LLC

9    JTT TRANSCRIPT #64126

10   DATE FILED:  JUNE 24, 2021

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25