IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## NOTICE OF FILING OF HUNT TURNKEY AGREEMENT

**PLEASE TAKE NOTICE** that, on June 25, 2021, Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby file the *Turnkey Removal Agreement by and among Hunt Oil Company, and Fieldwood Energy LLC* (the "**Hunt Turnkey Agreement**").

**PLEASE TAKE FURTHER NOTICE** that a copy of the executed Hunt Turnkey Agreement is annexed hereto as **Exhibit A**.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Dated: June 25, 2021
New York, New York

Respectfully submitted,

 /s/ Jessica Liou
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: Matt.Barr@weil.com
         Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**Certificate of Service**

      I hereby certify that, on June 25, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                              */s/ Jessica Liou*
                                                                                             Jessica Liou

**<u>Exhibit A</u>**

**Hunt Turnkey Agreement**

# TURNKEY REMOVAL AGREEMENT
## by and among
## HUNT OIL COMPANY,
## AND
## FIELDWOOD ENERGY LLC

THIS TURNKEY REMOVAL AGREEMENT (the "**Agreement**") is made effective as of the 25th day of June, 2021 (the "**Effective Date**"), by and among Hunt Oil Company ("**Hunt**"), a Delaware corporation having a mailing address of 1900 North Akard Street, Dallas, Texas 75201, and Fieldwood Energy LLC, a Delaware limited liability company, having its mailing address at 2000 W Sam Houston Pkwy S, Suite 1200, Houston, Texas 77042 (hereinafter referred to as "**Fieldwood**" and, subject to Section 7.2, as "**Operator**").  Hunt and Operator may hereinafter be referred to collectively as "**Parties**" or individually as a "**Party**."

## RECITALS

WHEREAS, Operator is a debtor in the Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC et al., in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (such court, the "**Bankruptcy Court**" and such chapter 11 case, the "**Chapter 11 Proceeding**");

WHEREAS, Operator (or a subsidiary thereof) is the current owner of the Decommissioning Project assets;

WHEREAS, Hunt is identified as a predecessor-in-interest of the Decommissioning Project (as defined herein) in the Chapter 11 Proceeding; and

WHEREAS, Hunt has agreed to pay for certain decommissioning and removal work conducted by Operator with respect to the Decommissioning Project, upon the terms and conditions set forth herein, and Operator has agreed to perform (or have a subsidiary of Operator perform) such work.

NOW, THEREFORE, in consideration of the premises and of the mutual promises, covenants, conditions, and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I.
## SERVICES

**Section 1.1**   **Services**. Subject to the terms of this Agreement, Operator will (or will cause a subsidiary of Operator to) abandon, decommission, and remove the platforms identified on Exhibit A to this Agreement (the "**Decommissioning Project**") on a lump sum, turnkey payment basis.  Subject to the provisions of Section 1.2 below, Operator will earn a single pre-agreed payment of $5,400,000 (the "**Turnkey Amount**") in exchange for completing the Decommissioning Project identified on Exhibit A hereto.  The Turnkey Amount has been determined on a 100% (gross) basis and, subject to Section 1.2 below, is to cover all costs, expenses, risks, and overhead associated with the Decommissioning Project, including all third party costs, any fixed and/or capital costs, tax, etc..  Except as provided otherwise in Section 1.2

#94652968v8

below, the Turnkey Amount for the Decommissioning Project shall not be adjusted in the event the decommissioning activities cannot be accomplished in a single attempt. Subject to Section 1.2 below, Operator shall bear all cost, risk and expense in the event that a subsequent attempt is necessary to fully complete the decommissioning. Operator will use commercially reasonable efforts to complete the Decommissioning Project on or before June 30, 2021.

**Section 1.2    Qualified Conditions**. The Parties agree on the following qualified conditions for the Decommissioning Project ("**Qualified Conditions**"): (i) changes to the conditions of the Decommissioning Project assets outside of Operator, Fieldwood Energy III, LLC ("**FWE III**") or Credit Bid Purchaser's (as defined below) reasonable control, including without limitation extraordinary events such as hurricanes; and (ii) material changes in government regulations that can reasonably be expected to materially increase the applicable cost of the Decommissioning Project. If it is discovered that any such Qualified Conditions are present with the Decommissioning Project, Operator may provide notice to Hunt, which shall include a detailed description of the Qualified Condition and supporting documents necessary for Hunt to verify the existence of the Qualified Condition, and within thirty (30) days from such notice, the Parties will either agree on an increase to the Turnkey Amount for the project or agree on an alternative cost arrangement

**Section 1.3    Operation.** From and after the Effective Date, Operator (or a subsidiary thereof) will operate and manage the platforms comprising the Decommissioning Projects until completion of the decommissioning of the Decommissioning Projects at its sole cost, risk and expense. Subject to its funding obligations hereunder and to Section 1.5 below, Hunt shall not be responsible for any operating costs associated the Decommissioning Project or any related assets.

**Section 1.4    Terms and Conditions**. Operator covenants, represents and warrants that the Decommissioning Project is in Operator's usual line of business, and Operator is capable of performing and shall perform the Decommissioning Project safely and efficiently with due diligence and care in a workmanlike manner with qualified, careful and efficient workers, and goods and equipment in good operating condition and in conformity with the industry practices. Operator agrees that any portion of the Decommissioning Project found to be defective or unsuitable by applicable regulatory or governmental authority (including the Bureau of Ocean Energy Management ("**BOEM**") and the Bureau of Safety and Environmental Enforcement ("**BSEE**")) shall be removed, replaced or corrected by Operator without additional cost or risk to Hunt (except as provided in Section 1.2 above). Further, Operator covenants, represents and warrants that the Decommissioning Project and all related activities carried out by Operator (including Operator's employees, subcontracts, vendors and any other who act for Operator) shall be in compliance with all applicable laws, including statutes, regulations, rules, ordinances, orders and codes of governmental entities having jurisdiction (including BSEE and BOEM). Except as set forth in this Section 1.4, Operator makes no representations and warranties (express, implied or otherwise).

**Section 1.5    Excluded Wells**. The Decommissioning Project does not include, and the Turnkey Amount does not cover, any decommissioning obligations for any wells that are located on Eugene Island Block 63 and before the Effective Date were either plugged and abandoned or temporarily plugged and abandoned (the "**Excluded Wells**"). Hunt will be solely responsible for

all decommissioning obligations with respect to all Excluded Wells, which include without limitation those wells listed on Exhibit B hereto.

## ARTICLE II.
## FUNDING AND INVOICES

**Section 2.1** **Funding Credit Contribution**. On or before the later of the Effective Date and three business days after this Agreement is signed and delivered by both Parties, Operator shall make a one-time payment to Hunt in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000). The term "**Contribution Amount**" means Two Hundred Fifty Thousand Dollars ($250,000) less any amount (up to Two Hundred Fifty Thousand Dollars ($250,000)) spent by Operator on safety related repairs and improvements (the "**Agreed Activities**") performed on the Decommissioning Project assets. As further provided in Section 2.3 below, the Contribution Amount shall be deducted from the Turnkey Amount. Operator shall provide Hunt detailed records of all the Agreed Activities performed on the Decommissioning Project assets, including documentation necessary to verify the cost thereof.

**Section 2.2** **Reporting**. No later than the 15th day of each month, Operator shall submit a monthly report to Hunt summarizing the work performed on the Decommissioning Project assets during the prior month.

**Section 2.3** **Payment**. Hunt shall pay to Operator the full agreed Turnkey Amount, less the Contribution Amount, within thirty (30) days from delivery to Hunt of the filings and other evidence required by BOEM and BSEE or any other applicable governmental authority, including requisite approvals or regulatory concurrence, that support Operator's representation that all decommissioning obligations with respect to the Decommissioning Project have been satisfied, including, to the extent applicable: (i) certified platform post-removal report that complies with the requirements of 30 C.F.R. § 250.1729 and (ii) certified site clearance report that complies with the requirements of 30 C.F.R. § 250.1743(b) (such obligations, the "**Decommissioning Obligations**"). Such payment will be made by wire transfer in immediately available funds to a bank account designated in writing by Operator.

**Section 2.4** **Surety Bonds**. Hunt may apply any available proceeds from bonds that cover the decommissioning costs associated with the Decommissioning Projects to the Turnkey Amount. Hunt will bear all costs and risks associated with such bonds, and notwithstanding its failure to recover all or any bond proceeds, Hunt will pay the Turnkey Amount, as it may be adjusted, as provided herein.

## ARTICLE III.
## INDEMNIFICATION

**Section 3.1** **Mutual Indemnification**. Operator and Hunt shall each indemnify and hold harmless the other Party from any and all costs that arise out of a material breach of their respective obligations under this Agreement; provided, however, this indemnification obligation shall not include lost profit opportunity, indirect damages, consequential damages, third party

3

claims, fines or penalties (except to the extent directly resulting from a material breach by the other Party), attorney's fees, or any other third party costs.

## ARTICLE IV.
## TERM

**Section 4.1** **Term**.  The term of this Agreement shall be from and after the Effective Date until the satisfaction by Operator of the Decommissioning Obligations, unless terminated earlier as provided herein.

## ARTICLE V.
## NOTICE

**Notice Addresses.**  All notices and correspondence required or permitted to be given by one Party to the other hereunder shall be made in writing and shall be delivered to the appropriate Party at the address specified below either by hand, by nationally recognized overnight delivery service or by electronic delivery, with copies to such other parties or addresses as a Party may designate by notice, unless a different address for notice or copy thereof is changed by notice. Notices sent by personal delivery or nationally recognized overnight delivery service shall be deemed to have been received upon the recipient's actual receipt of such notice.  Notices sent by electronic delivery shall be deemed to have been received (i) on the date such transmission was sent if it was sent prior to 5:00 p.m. (at the recipient's local time) on a business day; or (ii) on the next business day following the date such transmission was sent if it was sent after 5:00 p.m. (at the recipient's local time) on any business day or at any time on a non-business day.

If to Hunt:

Hunt Oil Company
1900 North Akard Street
Dallas, Texas 75201
Attn:  General Counsel
Telephone: 214-978-8000
Email: legal@huntenergy.com


If to Operator:

Fieldwood Energy LLC
2000 W. Sam Houston Pkwy South, Suite 1200
Houston, Texas 77042
Attn:  Thomas R. Lamme
Telephone: (713) 969-1000
Email: tlamme@fwellc.com

4

## ARTICLE VI.
## GOVERNING LAW; DISPUTES

**Section 6.1** **Governing Law**. The Parties agree that this Agreement shall be governed by the laws of the State of Texas.

**Section 6.2** **WAIVER OF JURY TRIAL**. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 6.3** **Disputes**. The Parties agree that all disputes in any way arising out of or resulting from this Agreement shall be litigated, if at all, exclusively in the state and/or federal courts venued in Harris County, Texas. The Parties accordingly hereby submit to the jurisdiction and venue of such courts for all purposes.

## ARTICLE VII.
## MISCELLANEOUS

**Section 7.1** **Entire Agreement**. This Agreement constitutes the entire agreement among the Parties with respect to the subject hereof and supersedes any other representations, understandings or agreements (whether written, oral or otherwise) that may have been made or entered into by the Parties or any of their respective affiliates relating to the transactions contemplated hereby or the subject hereof.

**Section 7.2** **Successors and Assignments**. This Agreement is personal as to each Party and shall not be assigned without the other Party's consent, which will not be unreasonably withheld; provided that the foregoing shall not apply if Operator assigns this Agreement in total (i) along with all of its personnel who are performing any part of the services hereunder to an affiliate, provided that no such assignment by Operator shall relieve Operator of its obligations under this Agreement, or (ii) to an acquirer of all or substantially all of Operator's employees providing services hereunder. Hunt agrees and acknowledges that upon exit from the Chapter 11 Proceeding in accordance with the Plan (as defined below), Operator shall be entitled to assign this Agreement to the credit bid purchaser described in the Plan (the "**Credit Bid Purchaser**") and that, in the event of such an assignment, for the remainder of the term of this Agreement after such exit, "Operator" shall refer to Credit Bid Purchaser for all purposes hereunder and shall no longer refer to Fieldwood Energy LLC. The Parties agree that at such time, FWE III will join this Agreement as necessary.

**Section 7.3** **Amendment**. This Agreement may be amended or modified in whole or in part, and terms and conditions may be waived, only by a duly authorized agreement in writing which makes reference to this Agreement executed by each Party.

**Section 7.4** **Severability**. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall

remain in full force and effect. The Parties further agree that if any provision contained herein is, to any extent, held invalid or unenforceable in any respect under the laws governing this Agreement, they shall take any actions necessary to render the remaining provisions of this Agreement valid and enforceable to the fullest extent permitted by law and, to the extent necessary, shall amend or otherwise modify this Agreement to replace any provision contained herein that is held invalid or unenforceable with a valid and enforceable provision giving effect to the intent of the Parties to the greatest extent legally permissible.

Section 7.5    **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any .pdf or other electronic transmission hereof or signature hereon shall, for all purposes, be deemed originals.

Section 7.6    **Further Assurances**. Subject to the terms and conditions of this Agreement, each Party shall use its reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable, under applicable law or otherwise, to consummate the transactions contemplated by this Agreement. The Parties agree to and shall execute and deliver such other documents, certificates, agreements, and other writings and to take such other actions as may be necessary or desirable in order to consummate or implement expeditiously the transactions contemplated in this Agreement, in accordance with the terms hereof, including but not limited to any actions or agreements necessary as a result of the presence of a Qualified Condition.

Section 7.7    **Administrative Claims/Expenses and Objection**. The Parties agree and acknowledge that nothing in this Agreement or any breach of this Agreement constitutes or creates an administrative claim or expense in the Chapter 11 Proceeding or otherwise. In conjunction with the execution of this Agreement or promptly thereafter, Hunt will withdraw any pending objections it has filed to the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* dated April 15, 2021 filed at ECF No. 1284 (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"), and agrees not to file any further objections to the Plan or to support any other party in objecting to or opposing the Plan and agrees it will support confirmation of the Plan.

Section 7.8    **The Plan and Confirmation Order; Hunt's Allowed Bankruptcy Claim**. The Confirmation Order (as defined below) and any amendment to the Plan must be reasonably acceptable to Hunt solely with respect to any provisions thereof that directly affect the rights and obligations of Hunt in this Agreement. The Parties agree that any order of the Bankruptcy Court confirming the Plan (the "**Confirmation Order**") shall provide for and include the language contained in Exhibit C to this Agreement, which is incorporated herein by reference as if copied in full.

Section 7.9    **Allocation of Properties**. Through the divisive merger (the "**Divisive Merger**") contemplated by the Plan, Fieldwood will cause FWE III to be allocated and vested with all rights, title and interests of Fieldwood and its affiliates in Eugene Island Block 63 (Lease No. OCS-00425), RUE No. OCS-G 30244, and the Decommissioning Project assets. Through the

6

Divisive Merger, Fieldwood shall also cause FWE III to be allocated and vested with all rights, title and interests of Fieldwood and its affiliates in South Marsh Island 39 (Lease No. OCS-G 16320) and South Timbalier 242 (Lease No. OCS-G 23933) (collectively, the "**Non-Turnkey Properties**").  Hunt shall not be responsible for: (i) any and all operating costs associated with the Non-Turnkey Properties; or (ii) the decommissioning of the Non-Turnkey Properties.

**Section 7.10   Louisiana State Leases**.  Hunt and Fieldwood will endeavor in good faith to mutually agree on the responsibility for Debtors' rights, title and interests acquired from Hunt in any oil and gas leases granted by the State of Louisiana.

[*Signature page to follow*]

WITNESS THE SIGNATURES of the Parties hereto as set forth below.

**Hunt**:

**HUNT OIL COMPANY**

By: _____
Name:   Mark C. Gunnin
Title:   President

**OPERATOR:**

**FIELDWOOD ENERGY LLC.**

By: _____
Name:
Title:

[*Signature page to Turnkey Removal Agreement*]

WITNESS THE SIGNATURES of the Parties hereto as set forth below.

**Hunt**:

**HUNT OIL COMPANY**

By: _____
Name:
Title:

**OPERATOR:**

**FIELDWOOD ENERGY LLC.**

By: *Thomas R. Lamme*
Name: Thomas R. Lamme
Title: SVP and General Counsel

*[Signature page to Turnkey Removal Agreement]*