## **Exhibit B**

Apache-Surety Term Sheet

### ***CONFIDENTIAL SETTLEMENT COMMUNICATION – FRE 408***

**Proposed FWE I Term Sheet – Between Debtors, Apache, and the Apache Sureties**

*This Term Sheet constitutes a "Definitive Document" under the Restructuring Support Agreement (as defined in the Plan (as defined below)) and is subject to the consent rights set forth therein. Except as provided for herein, each party is responsible for its own costs and expenses, including those of its legal advisors in conjunction with this Term Sheet.[1]*

| Definitions | Description |
|---|---|
| | <ul><li>Apache Corporation ("**Apache**")</li><li>Credit Bid Purchaser as defined in the Plan ("**Credit Bid Purchaser**")</li><li>Zurich American Insurance Company ("**Zurich**")</li><li>Everest Reinsurance Company ("**Everest**")</li><li>HCC International Insurance Company ("**HCCI**")</li><li>Philadelphia Indemnity Insurance Company ("**Philadelphia**" and together with Zurich, Everest and HCCI, the "**Apache Sureties**") and each an "**Apache Surety**")</li><li>Any amounts for premiums accrued post-Effective Date to the Apache Sureties under the applicable surety bonds issued under or in relation to the Decommissioning Agreement (the "**Apache Surety Bonds**") and/or general indemnity agreements related to the Apache Surety Bonds (the "**General Indemnity Agreements**") (the "**FWE I Premium Claims**").</li><li>Any amounts for Letter of Credit ("**L/C**") fees accrued post-Effective Date pursuant to all Letters of Credit from Deutsche Bank for which there are Apache Surety Bonds ("**L/C Fees**").</li><li>Any indemnification claims arising under the General Indemnity Agreements (the "**FWE I Indemnification Claims**" and, together with the FWE I Premium Claims, the "**FWE I Surety Claims**").</li></ul> |
| **Surety Representative** | **Description** |
| | A representative shall be selected by the Apache Sureties (the "**Surety Representative**") through an Inter-Surety Agreement that shall govern the rights and relationships of the Apache Sureties. The Surety Representative shall represent the rights of the Apache Sureties, as selected in the Inter-Surety Agreement, with respect to all collective rights granted under the Term Sheet. |
| | |
| **Treatment of the FWE I Premium Claims and L/C Fees** | **Description** |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Fifth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* dated June 16, 2021 filed at ECF No. 1629 (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**") or the Limited Liability Company Agreement of Fieldwood Energy I LLC filed at Docket No. _____ Exhibit _____ at Ex. _____ (the "**FWE I LLC Agreement**"), as applicable.

1

| | |
|---|---|
| | FWE I shall not be required to borrow $45MM to satisfy any Cure Amount on account of the Decommissioning Agreement, and Apache shall not be required to make such loan for such purpose, with the resulting savings in annual interest being applied toward the following settlement: <br><br> FWE I will owe $6.25MM per annum on account of the FWE I Premium Claims, payable in semi-annual installments starting 60 days after the Effective Date. <br><br> On each anniversary of the Effective Date, to the extent that (1) all yearly obligations under the Decommissioning Agreement have been satisfied, and (2) FWE I has "Free Cash Flow"[2] of $20MM or more (collectively, the "**Incremental Premium Payment Conditions**"), FWE I shall owe the Apache Sureties an additional payment of $2.75MM per annum (or such lesser amount after determining available "Free Cash Flow") on account of the FWE I Premium Claims and L/C Fees (the "**Incremental Premium Payment**").  If the Incremental Premium Payment Conditions are not met on each anniversary of the Effective Date, the Incremental Premium Payment, if not otherwise payable from available "Free Cash Flow," shall accrue and become due and payable as provided for and pursuant to the terms of the SSPA (as defined herein). <br><br> *Example*:  Effective Date is July 15, 2021.  FWE I shall pay Apache Sureties $3,125,000 on September 15, 2021 and $3,125,000 on March 15, 2022.  FWE I shall also pay Apache Sureties $2.75MM on July 15, 2022 if the above conditions are met. <br><br> The FWE I Premium Claims shall not exceed $12MM per annum. <br><br> All payment of premiums shall be suspended upon the first draw by Apache under the Apache Surety Bonds.  After such suspension, all FWE I Premium Claims shall accrue and become payable as a subordinated FWE I Indemnification Claim under the SSPA, it being the intent and understanding of the parties that FWE I shall not be required, and Apache shall not be obligated to fund a draw, under the Standby Facility to pay any premiums. Notwithstanding the foregoing, if following a draw upon the Apache Surety Bonds, FWE I is able to resume funding of its decommissioning obligations under the Decommissioning Agreement, and after all monetary defaults have been cured, including without limitation any obligation to deposit monies into Trust A, the Apache Surety Bond's rights to premium payments shall be reinstated under the conditions provided for herein. <br><br> Any applicable Apache Surety may pay to renew any L/C or replace any L/C pursuant to the standards as set forth in the Decommissioning Agreement. |
| **Farm-In Rights** | |

---

[2] As such term is defined in the Standby Loan Facility.

|  | Commencing with the second anniversary of the Effective Date, the Apache Sureties will have the right in the form of an option ("**Farm-In Option**") to farm in to FWE I new wells and recompletions on exactly the same terms as Credit Bid Purchaser according to the *Farmout Agreement*, except that the 50% profit share of the Apache Sureties (after Apache Sureties have recovered 100% of their capital investment in the project) will go first to pay any accrued but unpaid Incremental Premium Payments and the remainder of the Apache Sureties' 50% profit share will be deposited into Trust A in order to defer and potentially mitigate draws under Apache Surety Bonds and L/Cs. |
|---|---|
| **Information Sharing Agreements** | **Description** |
|  | Surety Representative shall have the follow information sharing rights:<br>• *Financial Statements* – The Surety Representative shall have the same access rights as Apache as set forth in the FWE I LLC Agreement with respect to financial information.<br>• *Inspection Rights and other information* - The Surety Representative shall have the same inspection rights as Apache to inspect documents and seek other information as set forth in the FWE I LLC Agreement.<br>• *Farm-In Information Rights* - The Surety Representative shall receive from Credit Bid Purchaser summaries of any proposal made by Credit Bid Purchaser during the initial two-year term under the Farmout Agreement.  The sureties may engage Credit Bid Purchaser on terms acceptable to Credit Bid Purchaser, in its sole discretion, at any time to assist the Apache Sureties upon their exercising the Farm-In Option.  Otherwise, Credit Bid Purchase has no obligation to provide any information relating to operations or opportunities available under the Farm-In Option.  FWE I shall provide the Surety Representative information reasonably requested in terms of scope and timelines necessary to understand any and all operations and opportunities that may be afforded under the Farm-In Option for future use and adoption.<br>• The Surety Representative shall be permitted to share all information obtained in this section with the Apache Sureties, subject to third-party contractual limitations, if any, and all reasonably and necessary confidentiality that may be required. |
| **Subordination, Subrogation and Payment Agreement** | **Description** |
|  | A *Subrogation, Subordination and Payment Agreement* ("**SSPA**") shall be entered into under which the Apache Sureties' FWE I Indemnification Claims will be contractually subordinated to Apache's claims under the Decommissioning Agreement and receive the benefits of Apache's liens under the Mortgages and all other security interests, the Apache Sureties' rights, contractual and otherwise, to be subordinated to Apache as follows:  Apache must be paid in full before the Apache Sureties will pursue any right to payment from FWE I with respect to its contractual |

3

| | |
|---|---|
| | rights of subrogation created herein, or any theory of common law rights of subrogation or indemnity, nor will the Apache Sureties have any rights to the collateral which secures FWE I's obligations to Apache under the Decommissioning Agreement or any proceeds thereof until after decommissioning under the Decommissioning Agreement is complete. The Apache Sureties will not exercise any remedies with respect to FWE I until all obligations to Apache under the Decommissioning Agreement and the Standby Facility have been satisfied. |
| | The SSPA shall provide that the FWE I Premium Claims shall not be subordinated and notwithstanding the paragraph above, the Apache Sureties may fully pursue recovery of the $6.25MM and the $2.75MM then currently due, subject to the following: (i) the Apache Sureties cannot challenge any liens granted by FWE I to Apache on assets that may have otherwise been available to satisfy the FWE I Premium Claims and (ii) the Apache Sureties will have no defense as to payment on the Apache Surety Bonds as a result of FWE I's failure to pay the FWE I Premium Claims. |
| | Any deferred Incremental Premium Payments shall be paid first through available "Free Cash Flow" in the subsequent year(s) and, if the Farm-In Option is elected, also pursuant to any available funds pursuant to the Farm-Out Agreement. |
| | The Apache Sureties' Farm-In rights and informational rights as outlined herein will also be further memorialized in the SSPA. |
| **Support of the Plan and Release of Claims** | |
| | In connection with the execution of this Term Sheet or promptly thereafter, the Apache Sureties agree to (i) announce to the Bankruptcy Court the terms of this Term Sheet and withdraw any pending objections they have filed to the Plan; (ii) not file any further objections to the Plan; (iii) support and take all actions reasonably necessary or reasonably requested by the Debtors to support incorporation of this Term Sheet into confirmation of the Plan; and (iv) not support any party in objecting to or opposing the Plan. |
| | The Apache Sureties agree that the Debtors and Apache are permitted to agree to an alternative cure to satisfy the existing defaults under the Decommissioning Agreement. Specifically, the defaults Apache asserts were caused by the Debtors' alleged failure to meet the Required Spend in 2020 and the Audit Claim, both as further detailed in Apache's proofs of claim, may be satisfied by the settlement between the Debtors and Apache contained within the Plan, the Confirmation Order, and this Term Sheet and the Apache Sureties will have no claim that Apache or any other party has impaired the Apache Sureties' subrogation rights or otherwise prejudiced the Apache Sureties' in any respect. |
| | Notwithstanding anything set forth herein to the contrary, each of the Apache Sureties agrees to be a "Releasing Party" bound by the releases |

| | |
|---|---|
| | set forth in section 10.7 of the Plan.  For the avoidance of doubt, any defense to payment under the bonds and Letters of Credit existing as of the Effective Date will be released by the Apache Sureties. Further, nothing herein will release any claims of the parties hereto that arise post-Effective Date, including the rights of the Apache Sureties and Apache under the Apache Surety Bonds and Letters of Credit. |
| | The Debtors, the Required DIP Lenders and Requisite FLTL Lenders will fully and finally release the Apache Sureties of any and all claims existing as of the Effective Date, and only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security in any respect.  The NewCo Entities shall not assume any liabilities or obligations under this Term Sheet other than the information rights. |
| | A condition precedent to the effectiveness of this settlement and agreement is that the Plan shall be confirmed and the Confirmation Order (as defined herein) shall contain findings of fact and conclusions of law consistent with the findings and conclusions requested by Apache in accordance with their rights under the Implementation Agreement. |
| **Adversary Proceedings** | **Description** |
| | The Apache Sureties shall stipulate that as of the Effective Date, all claims against the Debtors and Apache, including those asserted by the Apache Sureties and described in the Debtors' Complaint filed at Docket No. 1 in Adversary Proceeding Case No. 21-3418 in the Bankruptcy Court ("**Adversary Proceeding**") shall be released.  The Adversary Proceeding shall be dismissed with prejudice. |

*All disputes not set forth herein, or as set forth in any revised Term Sheet between the parties that shall be attached to the order confirming the Plan (the "**Confirmation Order**") or in the SSPA or Farm-In Option shall be resolved before the Bankruptcy Court, with all necessary powers to interpret and implement the Confirmation Order and the Plan, including the settlements set forth therein.  After the closing of the Chapter 11 Cases, the parties agree that any disputes relating to this Term Sheet, the SSPA, or the Farm-In Option will be resolved in either the state or federal courts in Harris County, Texas.

** This Term Sheet and the resolution set forth herein is without admission of liability by any party.  All rights not expressly defined herein are reserved.

/s/ for Apache Sureties, Apache and Debtors.