**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | Re: ECF No. 1414 |
| | § | |

**DEBTORS' RESPONSE TO MOTION OF
BP EXPLORATION & PRODUCTION, INC.
FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. § 362(d) AUTHORIZING RELIEF FROM THE
AUTOMATIC STAY TO COMMENCE ARBITRATION AGAINST THE DEBTORS**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), submit this response (the "**Response**") to the *Motion of BP Exploration & Production, Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors* (ECF No. 1414) (the "**Motion**")[2] filed by BP Exploration & Production, Inc. ("**BP**"). In support of the Response, the Debtors respectfully represent the matters set forth below.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Plan (as defined herein), as applicable.

## PRELIMINARY STATEMENT

1.      At its core, BP's Motion seeks to re-litigate issues this Court already decided.  At the hearing before this Court on February 2, 2021, this Court found that BP was willfully breaching its obligations under the *Galapagos Area Loop Subsea Production System Construction and Operating Agreement*, dated December 1, 2011 (as amended from time to time, the "**LSPS OA**"), which findings were incorporated in the Court's February 3, 2021 order (ECF No. 845) (the "**February 3 Order**").  As a result of BP's breach, the Debtors notified BP of their intention to terminate BP as the operator under the agreement.  Rather than accept the February 3 Order and the natural consequence of the Court's findings, BP filed the Motion in an effort to get a second bite at the apple and redirect the dispute to arbitration.  BP's Motion should be denied for three reasons:  (i) BP fails to meet its burden to lift the automatic stay pursuant to section 362(d); (ii) BP's Motion is an improper attempt to collaterally attack the Court's February 3 Order; and (iii) BP waived its right to enforce the arbitration provision in the LSPS OA that it now seeks to enforce.

2.      First, BP fails to meet its burden to demonstrate that "cause" exists to lift the automatic stay.  In fact, the Motion does not contain any meaningful analysis—factual or legal—as to why stay relief is warranted here.  Notably, the Motion fails to analyze any of the factors commonly relied upon by courts to determine if a movant has established "cause" and provides no evidence to support BP's request to lift the stay.  The Motion should be denied on this basis alone.

3.      Second, the Motion attempts to collaterally attack the Court's February 3 Order on the *Debtors' Emergency Motion to Compel BP Exploration & Production Inc. to Perform Pre-Petition Contracts* (ECF No. 792) (the "**Motion to Compel Performance**").  At the hearing for the Motion to Compel Performance, the Court found that BP willfully failed to comply with its

obligations under the LSPS OA for its own economic benefit and that BP breached the terms of the LSPS OA. *See* Feb. 2, 2021 Hr'g. Tr. 229:23–25. The Court's findings predicated the Debtors' decision to remove BP as operator under the LSPS OA. But instead of asking this Court to reconsider or appealing the Court's holding, BP now shops for a new, more favorable forum to re-litigate the issue of whether it breached the LSPS OA. Such an attempt contradicts a foundational tenet of bankruptcy law: that a bankruptcy court has the authority to enforce and interpret its own orders. This Court had the authority to rule on the dispute underlying the Motion to Compel Performance in February 2021, and it undoubtedly has the same authority here. BP offers no support for its contention that an outside arbiter can or should have the opportunity to overrule this Court.

4. Third, BP waived its right to compel arbitration. While the parties litigated the issue of whether BP had breached the LSPS OA in February, BP did not mention its arbitration argument except for a brief reference to it in its opposition to the Motion to Compel Performance. However, despite ample opportunities at the hearing on the Motion to Compel Performance, BP failed to raise or seek to enforce the LSPS OA's arbitration provision. Instead, BP abandoned the argument and willingly litigated the dispute underlying the Motion to Compel Performance to completion, thus waiving its ability to compel arbitration under the LSPS OA. Following the hearing, the Court determined that it had the requisite jurisdiction and authority to enter a final order on the scope of BP's obligations under the LSPS OA and whether BP had complied with said obligations, notwithstanding the LSPS OA's arbitration provision. Yet *now*, after BP received an adverse decision from this Court and a removal notice from the Debtors—as a result of the Court's decision—BP seeks to invoke the very same arbitration provision to re-litigate these issues in a different forum in hopes of a different outcome.

5.      Despite being captioned as a request to "lift stay," the Motion conflates multiple analyses and ignores this Court's prior holdings in a failed attempt to re-litigate decided issues. No "cause" exists to lift the stay, much less to compel arbitration here. Accordingly, this Court should deny the Motion.

## BACKGROUND

**A.      The LSPS and LSPS OA**

6.      The Genovesa well ("**Genovesa**") is located in the Gulf of Mexico. Genovesa is one of several wells and prospects that currently flow or eventually will flow production on a nearby undersea loop pipeline called the Galapagos Area Loop Subsea Production System ("**LSPS**"). The LSPS transports hydrocarbons from these wells to the Na Kika platform, which BP partially owns (the Debtors are not co-owner of this platform) and operates.

7.      The Debtors and BP, among others, are parties to the LSPS OA, which governs Genovesa's access to the loop system. The LSPS OA governs the relationship of the parties as joint owners of the LSPS. The LSPS OA contains two provisions relevant to the present matter: (i) a provision allowing the Debtors to remove BP as operator for "cause" (*see* LSPS OA, Art. 3.02(a)); and (ii) dispute resolution procedures that include an arbitration provision (*see* LSPS OA, Art. 22.28; Ex. F ¶ 1A).

8.      In 2018, Genovesa was owned by the Debtors and BP, among others. The Debtors also operate Genovesa.

9.      In addition to its prior ownership of Genovesa, BP also owned and owns the Manuel well ("**Manuel**"), which draws from the same oil reservoir as Genovesa. Manuel's production flows to Na Kika as well.

10.     In 2018, the Debtors were enthusiastic about Genovesa's prospect to produce oil.  BP did not share the Debtors' enthusiasm, in part because, on information and belief, it believed Manuel would be a better source of oil production.

11.     In 2019, BP sold its interest in Genovesa to the Debtors and focused its efforts on Manuel.  Upon the sale, the parties entered into the *Purchase and Sale Agreement by and between BP Exploration & Production Inc. and Fieldwood Energy LLC in respect of Mississippi Canyon Block 519*, dated May 17, 2019.

**B.     BP Fails to Perform Its Obligations Under the LSPS OA**

12.     Under the LSPS OA, all parties to the agreement part-own the LSPS and BP operates it.  As operator, BP was obligated to "endeavor to operate the LSPS so as to maximize production on a [Barrel Oil Equivalent] basis."  LSPS OA § 9.01(b).  The Production Handling Agreement ("**PHA**"),[3] attached as Exhibit B to the Choi Declaration, determines the parameters of the Debtors' access to Na Kika and BP's obligations to facilitate the Debtors' production of hydrocarbons.  Among other requirements, BP agreed in the PHA to "conduct all operations in a proper and workmanlike manner in accordance with methods and practices customarily used in sound oil and gas field practice and with that degree of diligence reasonable and ordinarily exercised by an experienced prudent operator engaged in a similar activity under the same or similar circumstances."  *See* PHA § 15.6.

13.     After significant unnecessary delays and roadblocks, on April 14, 2020, while the Debtors were working to tie Genovesa into the LSPS, an anomaly in the LSPS was observed.  BP then began to investigate the cause of the anomaly and realized it would require

---

[3]     The Debtors previously filed copies of certain documents cited herein, including the PHA and LSPS OA, as exhibits to the *Declaration of Erin M. Choi in Support of Debtors' Emergency Motion to Compel BP Exploration & Production Inc. to Perform Pre-Petition Contracts* (ECF No. 793) (the "**Choi Declaration**").

remediation to permit hydrocarbons to flow again.  To remediate the anomaly, BP—as LSPS operator—had two options:  (i) restore the LSPS to full functionality, which would have required significant down time; or (ii) implement a single flowline plan in the interim (the "**Single Flowline Plan**") and restore LSPS to full functionality at a later time.

14.     Between October 2020 and January 2021, the Debtors tried unsuccessfully to get BP to begin implementation of the Single Flowline Plan.  BP resisted and instead tightened a bolt near the leak site—a much simpler, cheaper, and faster alternative—which turned out to be insufficient to fix the leak.  While BP refused to implement the Single Flowline Plan for Genovesa, BP completed a Single Flowline Plan for its own well—Isabella.

C.     **BP Submits to the Jurisdiction and Authority of This Court**

15.     Because BP jeopardized the lease by failing to act as reasonably prudent operator (as required under the LSPS OA and the PHA), on January 27, 2021, the Debtors filed the Motion to Compel Performance seeking an order compelling BP to perform its obligations under the LSPS OA and the PHA or, alternatively, to let the Debtors do what was necessary to do the same.

16.     At the January 28, 2021 status conference on the Motion to Compel Performance, BP assured the Court that it would "take all action allowed by law to prepare to do the work" under the LSPS OA.  Jan. 28, 2021 Hr'g. Tr. 17:22–23.  Based on BP's representations to the Court, the Court scheduled a follow up status conference on February 1, 2021 to check in on the status of BP's performance and determine whether an evidentiary hearing on the Motion to Compel Performance would be necessary.

17.     At the February 1, 2021 status conference, the parties continued to disagree on whether BP had complied with its obligations under the LSPS OA.  To help resolve the issue, BP suggested that the Court consider sending the parties to mediation and if the mediation was

6

unsuccessful the parties would then "proceed with [the] evidentiary hearing." Recording of Hr'g at 10:46–52, *In re Fieldwood Energy LLC*, No. 20-33948 (Bankr. S.D. Tex. Feb. 1, 2021) (ECF No. 827). In lieu of mediation, the Court worked with the parties at the status conference to draft a proposed order, which the parties agreed to consider with their respective clients overnight. The parties also agreed that, to the extent they were unable to come to agreement on a form of order, an evidentiary hearing would proceed on February 2, 2021.

18.     On February 2, 2021, BP filed its opposition to the Motion to Compel Performance (the "**BP Response**"), and the parties informed the Court that they had been unable to agree on the scope of BP's obligations under the LSPS OA. *See* ECF No. 833. In the BP Response, BP—for the first time—suggested that the Debtors' requested relief in the Motion to Compel Performance should be resolved through arbitration. ECF No. 833, p. 10. BP also argued that, alternatively, the dispute should be resolved through an adversary proceeding. *Id*.

19.     At the evidentiary hearing, BP abandoned its argument that the dispute should be resolved through arbitration. Indeed, BP did not raise the arbitration argument at the evidentiary hearing, despite having ample opportunity to do so.[4] Instead, BP presented two witnesses at the evidentiary hearing—Mr. Kamil Gurses and Mr. Craig Redding—who testified that BP complied with obligations under the LSPS OA and acted as a reasonably prudent operator. The Debtors similarly presented three witnesses—Mr. Nathan Vaughn, Mr. Venkatesh Bhat, and

---

[4] *See, e.g.*, Feb. 2, 2021 Hr'g. Tr. 5:15–16 (Court: "Is that the way you think we ought to move ahead? MS. HEYEN: Yes, Your honor. . . . So, Your Honor, we are ready to proceed with a hearing."); Hr'g Tr. 94:3 (Mr. Stark: "I'd like to move for a directed verdict," not mentioning the alleged right to arbitration); Hr'g Tr. 96:8–209:18 (BP putting on its case in chief.); Hr'g Tr. 96:8–13; Hr'g Tr. 97:3; Hr'g Tr. 149:15; Hr'g Tr. 205:18–21; Hr'g Tr. 214:21–24; Hr'g Tr. 215:21–23; Hr'g Tr. 226:16–229:16 (BP's closing argument, arguing the merits and not mentioning an alleged right to arbitration); Hr'g Tr. 229:8–14 (BP making substantive requests of the Court).

Mr. Michael Dane—who testified in detail regarding BP's repeated failure to comply with its obligations under the LSPS OA and the prejudice faced by the Debtors if BP continued to breach the LSPS OA.

20.     At the conclusion of the contested hearing, after assessing the credibility of the witnesses and evaluating the factual and legal record, the Court made two critical findings: (i) that it had jurisdiction and core authority to enter a final order on the dispute underlying the Motion to Compel Performance; and (ii) that BP had willfully breached the LSPS OA for its own economic benefit. *See* Feb. 2, 2021 Hr'g. Tr. 229:18–22, 23–25. The Court provided BP with the option of either remaining as operator and complying with its obligation to bring Genovesa online prior to April 5, 2021, or allowing the Debtors to serve as operator in connection with the Single Flowline Project. BP elected the latter.

21.     Consistent with the Court's oral ruling at the February 2 evidentiary hearing, the Court entered the February 3 Order. The February 3 Order incorporated the Court's finding as to BP's breach and ordered, among other things, that: (i) the Debtors be authorized "to be the operator and take all necessary steps within its control to bring Genovesa online prior to April 5, 2021 and to prevent the Lease from expiring;" and (ii) BP "perform all necessary steps to support and fully cooperate with Fieldwood's efforts to bring the Genovesa well online prior to April 15, 2021 and to prevent the Lease from expiring." Feb. 3 Ord. ¶ 2.

**D.     The Debtors Terminate BP as Operator as a Result of BP's Breach of and Willful Misconduct Under the LSPS OA**

22.     As a result of the February 3 Order, the Debtors got Genovesa online prior to April 5, 2021, despite BP's assertions at the hearing that it could not do so. *See* Feb. 2, 2021 Hr'g. Tr. 124:17–19 ("Q: You're testifying . . . that BP can't bring this well [Genovesa] online by April 5th, 2021; is that your testimony? A: Yes, sir.").

23.     On May 14, 2021, because of BP's failure to act as a reasonably prudent operator in connection with bringing the Genovesa online in a timely manner, the Debtors removed BP as operator under the LSPS OA.  The removal is expressly authorized by the LSPS OA, which permits removal if "(i) the LSPS Operator has been found liable by a final judgment of a court of competent jurisdiction . . . for an act of . . . willful misconduct hereunder" or "(ii) the LSPS Operator . . . has been found to have committed a substantial breach of a material provision of [the LSPS OA] by a final judgment of a court of competent jurisdiction."  LSPS OA, Art. 3.02(a).

24.     Unhappy with the Debtors' decision to remove it as the LSPS operator, BP now seeks to re-litigate issues this Court already decided in February by effectively arguing that this Court does not have jurisdiction to rule on BP's performance (or lack thereof) under the LSPS OA and that the issue of BP's breach should be re-litigated by the parties in arbitration.  As discussed below, BP's arguments lack merit, and the Motion should be denied.

## RESPONSE

**A.      BP Did Not Carry its Burden for Relief From the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code**

25.     Section 362(d) of the Bankruptcy Code authorizes a court to lift an automatic stay for "cause."  *See* 11 U.S.C. § 362(d).  The party seeking stay relief carries the initial burden to show that "cause" exists to lift the stay.  *See In re Kowalsky*, 235 B.R. 590, 594 (Bankr. E.D. Tex. 1999) (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990)).  "If the movant fails to make an initial showing of cause, . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *Sonnax*, 907 F.2d at 1285; *see also Capital Comm. Fed. Credit Union v. Boodrow*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause."); *In re*

*Baytown Nav., Inc.*, No. BR 11-35926, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012) ("If the movant fails to meet that burden, the Court will dismiss the motion for relief from stay. . . ."); *In re Gramercy Court, Ltd.*, No. 07-80177-G3-11, 2007 WL 2126493, at *5 (Bankr. S.D. Tex. July 19, 2007) (same).

26.     Because section 362(d) does not define what constitutes "cause," courts determine whether cause exists on a case-by-case basis. *See, e.g.*, *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). To make such an assessment, Fifth Circuit courts have relied upon the "*Sonnax* factors."[5] *See In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citing, among other cases, *Sonnax*). While not all factors are relevant to all cases, "***even slight interference*** with the administration [of the Debtors' estates] may be enough to preclude relief." *In re U.S. Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994), *modified*, 176 B.R. 11 (Bankr. E.D. Tex. 1994) (emphasis added); *see also In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay . . . is the effect of such litigation on the administration of the estate.") (citation omitted).

---

[5] *See Sonnax* at 1286. The *Sonnax* factors are:

    (1)    whether relief would result in a partial or complete resolution of the issues;

    (2)    lack of any connection with or interference with the bankruptcy case;

    (3)    whether the other proceeding involves the debtor as a fiduciary;

    (4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

    (5)    whether the debtor's insurer has assumed full responsibility for defending it;

    (6)    whether the action primarily involves third parties;

    (7)    whether litigation in another forum would prejudice the interests of other creditors;

    (8)    whether the judgment claim arising from the other action is subject to equitable subordination;

    (9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

    (10)  the interests of judicial economy and the expeditious and economical resolution of litigation;

    (11)  whether the parties are ready for trial in the other proceeding; and

    (12)  impact of the stay on the parties and the balance of harms.

27.     This Court should deny stay relief here because BP did not carry its burden. *See Sonnax*, 907 F.2d at 1285 ("If the movant fails to make an initial showing of cause . . . the court **should deny relief** without requiring any showing from the debtor that it is entitled to continued protection.") (emphasis added).  Not only does BP fail to cite *Sonnax* or any other case discussing what constitutes "cause" to lift the stay generally, but BP also offers no evidence or analysis as to what "cause" justifies stay relief here.  In fact, the Motion does not articulate any standards for relief under section 362(d)(1) of the Bankruptcy Code, much less analyze BP's evidentiary burden.

28.     BP's failure to address the *Sonnax* factors is unsurprising.  As an initial matter, "the interests of judicial economy and the expeditious and economical resolution of litigation" weigh against lifting the stay here. *See Sonnax*, 907 F.2d at 1286.  To allow BP to re-litigate the issues that this Court has already decided in a new forum would waste judicial resources, frustrate the finality of this Court's orders, and force the Debtors to expend estate resources litigating a resolved issue.  Moreover, "litigation in another forum would prejudice the interests of other creditors," especially if an arbitrator were to upend the February 3 Order and permit BP to remain as operator. *See id.*  At the February 2 hearing, the Debtors' Senior Vice President and Chief Financial Officer testified that:  "We certainly think that [Genovesa] is a very, very material contributor in the hundreds of millions of dollars to the value of our estate and to the reorganized company which is a critical part of our restructuring . . . ." Feb. 2, 2021 Hr'g. Tr. 14:9–13.  Thus, the decision of who serves as operator under the LSPS OA critically impacts the value of the Debtors' estates.  As this Court previously found, BP breached and engaged in willful misconduct under the LSPS OA.  Accordingly, BP is not suitable to serve as operator and should

not now be permitted to expend both the Debtors' time and resources seeking an alternative finding elsewhere. *See* Feb. 2, 2021 Hr'g. Tr. 234:4 ("BP is the bad actor.").

29.     Nevertheless, BP makes two misplaced arguments to justify stay relief. First, BP asserts that "[f]ederal policy favors stay relief" because of the "strong presumption in favor of arbitration."  Mot. ¶ 30 (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citations and internal quotation marks omitted)).  Second, BP asserts that "[b]ankruptcy courts will regularly modify the stay to permit creditors to commence arbitration against debtors."  Mot. ¶ 29 (citing *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1068 (5th Cir. 1997) and *In re EXCO Servs.*, No. 18-30167, 2020 Bankr. LEXIS 1110, *8 (Bankr. S.D. Tex. Apr. 22, 2020)).  Despite BP's contention that courts "***regularly***" lift the stay under similar facts, BP does not identify a single court which has done so.  *Cf. id.*  Indeed, BP does not cite any opinion where a court found "cause" to lift the stay and allow a party to commence a proceeding based solely on the existence of an arbitration provision.  Rather, both of the cases cited by BP, *National Gypsum* and *EXCO*, concern the enforcement of arbitration provisions generally.  Each case addresses a motion to ***remove*** a pending dispute to arbitration, not a motion to lift the stay to allow a party to ***commence*** an action before an arbitration panel.  These cases do not conflate "cause" to lift the stay with the standard for compelling arbitration as BP does here.  Thus, *National Gypsum* and *EXCO* are inapplicable to the analysis under section 362(d).

30.     Accordingly, BP has provided no factual or legal support for this Court to find that "cause" exists to lift the stay pursuant to section 362(d).  Thus, this Court should deny the Motion on this ground alone.

**B.     This Court Should Reject BP's Attempts to Collaterally Attack the February 3 Order**

31.     BP attempts to collaterally attack the Court's February 3 Order.  By the Motion, BP seeks to arbitrate the same dispute already litigated and decided by this Court in an

effort to undermine this Court's ruling on the Motion to Compel Performance.  Such an attempt is improper.

32.     A bankruptcy court's core authority and jurisdiction continues such that it can enforce its own orders even after a bankruptcy case is closed.  *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002); *New Nat'l Gypsum Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 219 F.3d 478, 483 (5th Cir. 2000) ("[T]he bankruptcy court [may] interpret and construe the Confirmation Order, Plan, and plan documents regarding matters as to which there is a substantial and immediate controversy."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (stating that a federal court always has subject matter jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees").  In *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995), the Supreme Court rejected a party's attempt to collaterally attack a bankruptcy court's injunctive order in a different forum and held that a bankruptcy court has the inherent and statutory authority to enforce its own orders.  *Id.* ("Respondents chose . . . instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.").  As the Court noted in *Celotex*, if a party does not like the bankruptcy court's holding, it may either (i) move for reconsideration in the bankruptcy court or (ii) appeal the bankruptcy court's decision pursuant to 28 U.S.C. § 158.  *See id.* (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967)) ("[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.") (citation and internal quotation marks omitted).

33.     Bankruptcy courts have interpreted *Celotex* to allow enforcement of their own prior orders via their civil contempt powers, even when an agreement would otherwise require arbitration. *See, e.g.*, *Zimmerli v. Ocwen Loan Servicing, LLC*, 432 B.R. 238, 242–43 (Bankr. N.D. Tex. 2010) (Hale, J.) (refusing to enforce an arbitration agreement because "the contempt of court cause of action arises under the agreed order in the [p]laintiffs' bankruptcy case and also concerns the Court's authority to order final relief."); *In re Startec Glob. Commc'ns Corp.*, 292 B.R. 246, 253–54 (Bankr. D. Md.), *aff'd*, 300 B.R. 244 (D. Md. 2003) ("If parties could apply to another tribunal, or arbitrator, to determine whether an order of another court has been breached, or should be enforced, and by what means, ***an improper collateral attack on the order effectively would be permitted***.") (emphasis added).

34.     The only "dispute" asserted in the Motion relates to:   (i) whether the February 3 Order "has been breached, or should be enforced, and by what means;" (ii) how to interpret the February 3 Order; and (iii) whether the February 3 Order allows the Debtors to remove BP as operator under the LSPS OA by virtue of this Court's finding that BP both breached the LSPS OA and was "wil[l]fully failing to comply" with the LSPS OA. *See* Feb. 2, 2021 Hr'g. Tr. 229:23–25); *see also Startec*, 292 B.R. at 253–54; *Zimmerli*, 432 B.R. at 242–43.  Although the Debtors do not presently seek civil contempt sanctions, the gravamen of the present issue is akin to a civil contempt request as the Debtors would be asking this Court to merely re-affirm what it already found if the dispute underlying BP's Motion were to be brought to the Court.  The resulting removal of BP as operator is the "foreseeable consequence" of this Court's February 3 Order.  And that removal falls squarely within Article 3.02(a) of the LSPS OA, which permits removal if "(i) the LSPS Operator has been found liable ***by a final judgment of a court of competent jurisdiction*** . . . for an act of . . . ***willful misconduct*** hereunder" or "(ii) the LSPS Operator . . . has

14

been found to have committed a ***substantial breach*** of a material provision of [the LSPS OA] ***by a final judgment of a court of competent jurisdiction***.”  LSPS OA, Art. 3.02(a) (emphasis added). Accordingly, no further dispute exists.

35.     Notwithstanding the arbitration provision in the LSPS OA, the Court determined in connection with the Motion to Compel Performance that it had jurisdiction and core authority to decide the scope of BP's obligations under the LSPS OA and whether BP was in breach thereof.  *See* Recording of Hr'g at 11:17, *In re Fieldwood Energy LLC*, No. 20-33948 (Bankr. S.D. Tex. Feb. 1, 2021) (ECF No. 827) (“I'm not passing [the LSPS OA issues] off to someone else. I'm going to handle it tomorrow”); Feb. 2, 2021 Hr'g. Tr. 229:20–22 (“This is a core matter under 28 U.S.C., Section 157. It deals with whether a Debtor has the right to compel compliance to an executory contract by its counterparty”).  This Court reiterated the same in its February 3 Order, finding that it had “jurisdiction to consider the Motion and the relief requested therein” and it “shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.”  Feb. 3 Ord., pp. 2, 4.  The current dispute (if there is any) relates to the very same issue this Court already decided:  *i.e.*, BP's breach of its obligations under the LSPS OA.  In sum, if the Court had jurisdiction and authority to decide the Motion to Compel Performance, the Court likewise has jurisdiction and authority to determine whether the Debtors can terminate BP as the operator in light of BP's breach of the LSPS OA.

36.     Moreover, allowing BP to proceed with arbitration would necessarily result in re-litigating issues that have been resolved by this Court.  Such a ruling could directly contradict this Court's ruling in February, especially if an arbitrator were to find that BP did not breach or engage in willful misconduct under the LSPS OA.

37.     The risks attendant to such a collateral attack and inconsistent rulings run counter to the principles set forth in *Celotex* and progeny.  *See Celotex*, 514 U.S. at 313; *see generally Hooks v. Acceptance Loan Co.*, No. 2:10-CV-999-WKW, 2011 WL 2746238, at *5 (M.D. Ala. July 14, 2011) ("Even though these causes of action are not § 105(a) contempt proceedings, granting the motions to compel arbitration would nevertheless send to arbitration a dispute that, on its merits, squarely implicates the court's contempt power.").  Thus, the Court should deny BP's attempt here to circumvent the Court's February 3 Order.

## C.     BP Waived Any Right to Compel Arbitration

38.     Despite the general policy favoring arbitration, the right to arbitrate—like all contractual rights—can be waived.  *MC Asset Recovery LLC v. Castex Energy, Inc. (In re Mirant Corp.)*, 613 F.3d 584, 589 (5th Cir. 2010).  To establish waiver, the moving party need only show that the other party:  (i) substantially invoked the judicial process; and (ii) caused detriment or prejudice to the party asserting waiver.  *See, e.g.*, *id.*; *In re Trevino*, 599 B.R. 526, 536 (Bankr. S.D. Tex. 2019) (Rodriguez, J.).

39.     Regarding the first element, a party "substantially invokes" the judicial process when it seeks a decision on the merits before attempting to arbitrate.  *See Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018) (quoting *Mirant*, 613 F.3d at 589); *Trevino*, 599 B.R. at 537 (citing *Mirant* for same).  Substantial invocation thus occurs when a party performs an "overt act in [c]ourt that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration."  *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, No. 20-20221, 2021 WL 2177062, at *6 (5th Cir. May 28, 2021) (citation omitted).

40.     Regarding the second element, "prejudice" refers to the "inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue."  *Forby*, 909 F.3d

at 784 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)). When a party engages in activity inconsistent with the intent to arbitrate, the party later opposing a motion seeking arbitration may more easily show that its position has been prejudiced. *Id.* To that end, "[a] party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *Id.* (quoting *Mirant*, 613 F.3d at 591). Thus, a party asserting waiver is prejudiced when it will have to re-litigate in the arbitration forum an issue already decided by the trial court in its favor. *Id.* (citing *Nicholas v. KBR, Inc.*, 565 F.3d 904, 911 (5th Cir. 2009); *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to re-litigate the issue by invoking arbitration.")). Put simply, a party may not wait to learn that a trial court is not receptive to its arguments and then take "a second bite at the apple through arbitration." *Petroleum Pipe*, 575 F.3d at 482.

41.     Here, BP substantially invoked the judicial process to the prejudice of the Debtors and thus waived its ability (if any) to compel arbitration. Regarding the first element, BP substantially invoked the judicial process by litigating the dispute underlying the Motion to Compel Performance to completion. The dispute underlying the Motion to Compel Performance culminated in a seven-hour evidentiary hearing. During the hearing, the Debtors presented three witnesses, BP presented two witnesses, and each party introduced numerous exhibits and engaged in extensive argument as to BP's breach of and misconduct under the LSPS OA. Not once during the hearing did BP raise the issue of arbitration. To the contrary, despite the Court's many queries as to whether it had legal authority to issue a final and binding ruling, BP never challenged the Court's jurisdiction or authority to do so, let alone on the basis of the arbitration provision. For

example, the Court questioned the parties on its legal authority to grant the Debtors' request to be the operator to bring Genovesa online.  Instead of raising the arbitration provision, BP merely asserted that "[t]here is no basis to force BP to step aside and allow Fieldwood to operate."  Feb. 2, 2021 Hr'g. Tr. 227:21–22.  BP's failure to challenge the Court's jurisdiction or authority to enter a final order on the dispute underlying the Motion to Compel Performance demonstrated BP's desire to have this Court resolve disputes related to the LSPS OA.  *See Forby*, 909 F.3d at 784; *Trevino*, 599 B.R. at 537.  If the Court had authority then to issue the February 3 Order, it certainly has authority now to interpret and enforce that Order.

42.     The fact that BP raised the issue of arbitration in its response to the Motion to Compel Performance does not preclude a finding of waiver for three reasons.  First, as previously explained, BP thereafter willingly participated in the February 2 hearing without objecting to the Court's jurisdiction or authority to decide the dispute underlying the Motion to Compel Performance due to the arbitration provision.  Second, at the February 1 status conference, BP's counsel embraced this Court's jurisdiction and authority to adjudicate the dispute underlying the Motion to Compel Performance, agreeing to either (i) mediate the dispute before a federal judge or (ii) "proceed with an evidentiary hearing" before this Court in the event that the parties could not reach a consensual solution in mediation.  Recording of Hr'g at 10:46–52, *In re Fieldwood Energy LLC*, No. 20-33948 (Bankr. S.D. Tex. Feb. 1, 2021) (ECF No. 827).  BP did not, however, raise arbitration as an option.  BP also engaged with the Court and the Debtors in working through the Court's proposed order in an effort to resolve the dispute.  Third, BP's response to the Motion to Compel Performance itself acknowledges that the underlying dispute can be "litigated through an adversary proceeding" in the Bankruptcy Court.  ECF No. 833, p. 10.

43.     Regarding the second element, BP's attempt to re-litigate the dispute underlying the Motion to Compel Performance prejudices the Debtors.  By failing to raise the arbitration provision during the February 2 hearing, BP "ke[pt] its right to demand arbitration in reserve indefinitely while it pursue[d] a decision on the merits," which constitutes "prejudice" under Fifth Circuit law.  *See Forby*, 909 F.3d at 784; *see also Trevino*, 599 B.R. at 538.  BP now seeks to have the exact dispute already decided by this Court reheard by an arbitrator.  This constitutes prejudice to the Debtors under Fifth Circuit law.  *See Forby*, 909 F.3d at 784–85; *Trevino*, 599 B.R. at 537.

44.     BP's attempt to reframe the current dispute as something different than the dispute underlying the Motion to Compel Performance is unpersuasive.  The only purported "Dispute" raised in the Motion is whether BP sufficiently breached or engaged in willful misconduct under the LSPS OA to warrant its removal as operator.  *See* Mot. ¶ 2 ("[T]he current 'Dispute' involves interpretation of the LSPS OA, including whether Fieldwood has the ability and authority to remove BP as Operator and whether its purported attempt to do so is effective . . . .").  This is precisely the same dispute the parties litigated at the February 2 hearing, where the Court found that BP breached the LSPS OA and engaged in willful misconduct thereunder.  *See* Feb. 2, 2021 Hr'g. Tr. 229:23–25 ("In this case, I have BP, who is wil[l]fully failing to comply with a contract, and they are doing so for their own economic benefit.  They are in breach.").  The Court issued an order compelling BP's performance and compliance with the LSPS OA.  As a "foreseeable consequence" of that order, the Debtors removed BP as operator. *See* Feb. 3 Ord. ¶¶ 1–2; Mot., Ex. A8, Ltr. from Paul Genender to BP (May 21, 2021) ("The possibility and later reality of removal was a foreseeable consequence of Judge Isgur's February

2, 2021 findings against BP.").  Accordingly, BP's attempt to re-litigate the dispute underlying the Motion to Compel Performance will prejudice the Debtors.

## <u>CONCLUSION</u>

45.     For the foregoing reasons, the Motion should be denied.

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion.

20

Dated: July 2, 2021
      Houston, Texas

*/s/ Paul R. Genender*
_____

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com
        Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
        Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
        Erin.Choi@weil.com

*Attorneys for the Debtors*
*and Debtors in Possession*

## **Certificate of Conference**

The Debtors' counsel conferred with BP's counsel by phone on July 2, 2021, in an attempt to resolve the Motion, but were unable to resolve the Motion.

_/s/ Erin M. Choi_

Erin M. Choi

## **Certificate of Service**

I hereby certify that, on July 2, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/ Paul R. Genender_

Paul R. Genender