IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

In re:

FIELDWOOD ENERGY LLC., *et al*.,

Debtors.[1]

_____

Chapter 11

Case No. 20-33948 (MI)

Jointly Administered

**Related Dkt. Nos.: 1751, 1785 & 1796**

**JOINDER OF LEXON INSURANCE COMPANY, IRONSHORE INDEMNITY INC. AND IRONSHORE SPECIALTY INSURANCE COMPANY TO THE EMERGENCY MOTION OF ASPEN AMERICAN INSURANCE COMPANY, BERKLEY INSURANCE COMPANY AND SIRIUS AMERICA INSURANCE COMPANY FOR A STAY, PURSUANT TO BANKRUPTCY RULE 8007, OF THE ORDER CONFIRMING EIGHTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS, OR IN THE ALTERNATIVE, FOR AN ORDER AMENDING THE CONFIRMATION ORDER, PURSUANT TO BANKRUPTCY RULE 9023**

Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company (collectively, "Lexon"), by and through their undersigned counsel, Harris Beach PLLC, hereby joins ("Joinder") in the *Emergency Motion of Aspen American Insurance Company, Berkley Insurance Company and Sirius America Insurance Company for a Stay, Pursuant to Bankruptcy Rule 8007, of the Order Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors, or in the Alternative, for an Order Amending the Confirmation Order, Pursuant to*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

*Bankruptcy Rule 9023* (the "Sureties' Stay Motion") [Dkt. No. 1796]. In support of its Joinder, Lexon respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1. On July 1, 2021, Lexon filed a Notice of Appeal [Dkt. No. 1785] of the Court's *Findings of Fact, Conclusions of Law, and Order Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors,* entered on June 25, 2021 (the "Confirmation Order") [Dkt. No. 1751] to the extent the Confirmation Order, including any findings of fact or conclusions of law therein, purports to eliminate or impair Lexon's suretyship rights including its rights of subrogation, reimbursement, exoneration and restitution with respect to any of the post-confirmation entities, including NewCo and its subsidiaries and affiliates (including Credit Bid Purchasers) pursuant to 11 U.S.C. §§ 363 or 365 or otherwise, by purporting to strip away those rights and failing to recognize or require the assumption or transfer of such obligations related to the leases and property interests of the Debtors distributed to the post-confirmation entities. Accordingly, Lexon hereby joins and adopts the factual statements, legal positions, and relief requested in the Sureties' Stay Motion, and specifically requests the Court stay the effect on suretyship rights in the Confirmation Order and confirmed Eighth Amended Plan until resolution of Lexon's appeal.

## II.    BACKGROUND

2. On August 3, 2020 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. The Debtors' cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

2

5. On August 18, 2020, the U.S. Trustee appointed the Creditor's Committee pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 cases.

6. The Debtors, together with the non-debtor affiliates (collectively, the "Company"), are an independent exploration and production ("E&P") company in the Gulf of Mexico. The Company is focused on the exploration and development of offshore oil and gas assets in the shallow water and deep water around the Gulf of Mexico and the Gulf Coast region of the U.S. Additional information regarding the Debtors' business and the circumstances leading to the commencement of these Chapter 11 cases is set forth in the Dane Declaration.

7. The Debtors are required in the ordinary course of business to provide surety bonds to certain third parties to secure the Debtors' performance of certain obligations (the "Surety Bond Program"). The Surety Bond Program covers obligations in connection with two general categories of third parties: (a) federal and state governmental units and other public agencies; and (b) contract counterparties for whom the Debtors agreed to perform various plugging, abandonment, and decommissioning obligations in connection with offshore properties. *See* Surety Bond Motion[2] at ¶ 28. The obligations secured by the Surety Bond Program are, among other things, (a) oil and natural gas drilling and exploration operations; (b) plugging and abandonment obligations; (c) conservation; (d) rights-of-way; (e) land use; (f) taxes; and (g) utilities (collectively, the "Obligations"). *Id*.

8. Debtors acknowledge that statutes or ordinances require the Debtors to post surety bonds to secure payment and enforcement of various Obligations to obligees, and that the failure to provide,

---

[2] *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Programs and the Surety Bond Program, and (B) Pay Certain Obligations with Respect Thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* (the "Surety Bond Motion") [Dkt. No. 4].

maintain, or timely replace their surety bonds may prevent the Debtors from undertaking essential functions related to their operations. *See Id.* at ¶ 29.

9. As stated in the Debtors' Surety Bond Motion, the Debtors are required by the federal government and states adjacent to the Gulf of Mexico to maintain the Surety Bond Program. *Id.* at ¶ 34. "Failure to maintain the Surety Bond Program in these jurisdictions could cause the revocation of approval for the Debtors' operations in the Gulf of Mexico, increased claims by certain governmental agencies against the Debtors, and make it needlessly onerous for the Debtors to continue their offshore oil and gas business." *Id*.

10. It is incredibly ironic that the Debtors' admissions of the absolute necessity of complying with the financial assurances required by 30 C.F.R. §§ 550 *et seq*. in its initial pleadings are at the crux of the underlying appeal. It is those very obligations that spring to life post-confirmation and post-effective date when the Credit Bid Purchaser and divisively merged entities undertake the assumption of the leases. It is also those same obligations that the variety of post-petition lessees are attempting to evade in the event they default on their plugging and abandonment and decommissioning responsibilities.

11. The surety relationship involves three parties: (1) the Principal who is the primary obligor – the Debtors; (2) the Obligee, the party to whom the Principal and the Surety owe the duty – the regulatory authority; and (3) the Surety who is the secondary obligor – Lexon.

12. Notably, the Debtors retain the primary duty to perform their obligations; the obligations may not simply be handed over to the surety to perform.

13. Lexon has issued approximately 36 surety bonds (the "Lexon Bonds") to the Debtors to secure payment or performance of the Obligations to governmental and non-governmental obligees in

the total penal sum of approximately $90,327,000. The Lexon Bonds generally cover various oil and gas leases in Texas and Louisiana.

14. Additionally, as partial consideration for the execution of the Lexon Bonds, Debtors and their affiliates, including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures (collectively, the "Indemnitors") executed a "Payment and Indemnity Agreement No. 1055", as supplemented, (the "Indemnity Agreement") in which the Indemnitors, among other things, agreed to indemnify and hold Lexon harmless from every claim that Lexon may pay as a result of the Lexon Bonds.

15. The Debtors, through the Surety Bond Motion, recognize that maintaining the Surety Bond Program is necessary and vital to the Debtors and their bankruptcy estates, and is required by state and federal law. *See* Surety Bond Motion at ¶¶ 34-43.

16. On September 14, 2020, this Court entered the *Final Order (I) Authorizing Debtors to (A) Continue Insurance Programs, and Surety Bond Program, and (B) Pay Obligations with Respect Thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* [Dkt. No. 340].

17. On January 1, 2021, the Debtors filed the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 723]. Also on January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 722].[3] On April 15, 2021 Debtors filed the *Disclosure Statement for Fourth Amended Joint Chapter 11*

---

[3] Debtors *Disclosure Statement for Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1022] was filed on March 16, 2021; Debtors *Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1020] was filed on March 15, 2021; Debtors *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1102] was filed on March 23, 2021; Debtors *Second Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1098] was filed on March 23, 2021; Debtors *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1117] was filed on March 24, 2021; and, Debtors *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1115] was filed on March 24, 2021.

*Plan of Fieldwood Energy LLC and its Affiliated Debtors* (the "Disclosure Statement") [Dkt No. 1285]. Also on April 15, 2021 Debtors filed the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (the "Fourth Amended Plan") [Dkt. No. 1284].

18. On June 2, 2021, Lexon filed the *Objection by Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company to the Motion of Debtors for Entry of an Order for Confirmation of the Debtors' Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (the "Plan Objection") [Dkt. No. 1436].

19. On June 16, 2021, well after the deadline to object to the Fourth Amended Plan passed, the Debtors filed their *Fifth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (the "Fifth Amended Plan").

20. On June 25, 2021, the Debtors filed the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (including any exhibits and schedules thereto as may be further amended, supplemented, or modified, the "Eighth Amended Plan") [Dkt. No. 1742][4].

21. From the June 21, 2021 through June 25, 2021, the Court held the Confirmation Hearing[5] to consider confirmation of the Eighth Amended Plan.

22. The Eighth Amended Plan did not resolve the objections raised by Lexon in the Plan Objection, and Lexon raised and argued the arguments set forth in the Plan Objection during the Confirmation Hearing.

23. On June 25, 2021, the Court entered the Confirmation Order [Dkt. No. 1751].

24. On July 1, 2021, Lexon filed a *Notice of Appeal* from the Confirmation Order [Dkt. No. 1785].

25. On July 2, 2021, the Sureties' Stay Motion was filed [Dkt. No. 1796].

---

[4] The Debtors also filed a Sixth and Seventh Amended Plan [*see* Dkt. Nos. 1696 and 1716].

[5] As defined in the Confirmation Order.

26. Paragraphs 97-99 of the Confirmation Order and section 5.13(a) of the Eighth Amended Plan are the provisions relating to the termination of all suretyship rights to Lexon for which Lexon is appealing.

### III.     JOINDER AND ARGUMENT

27. Lexon hereby joins and adopts the factual statements, legal positions, and relief requested in the Sureties' Stay Motion, and specifically requests the Court stay the effect on suretyship rights in the Confirmation Order and confirmed Eighth Amended Plan until resolution of Lexon's appeal. In further support of the Joinder and relief requested in the Sureties' Stay Motion, Lexon respectfully sets for the below arguments.

28. A party appealing an order of the bankruptcy court may move the court to issue a stay of its order or otherwise suspend proceedings in the case during the pendency of the appeal to protect the rights of all parties in interest. Fed. R. Bankr. P. Rule 8007(a) and (e).

29. The decision whether to grant a stay of an order pending appeal under Rule 8007 lies within the sound discretion of the court. *In re First South Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987). Thus, this Court has the absolute discretion to grant a stay of its own Orders so that Lexon may appeal certain portions of the Confirmation Order.

30. The Fifth Circuit has pronounced the following four factors to determine whether a stay is warranted:

> (i) Whether the movant has made a showing that there is a likelihood of success on the merits;
>
> (ii) Whether the movant has made a showing of irreparable injury if the stay is not granted;
>
> (iii) Whether the granting of the stay would substantially harm the other parties; and

      (iv)    Whether the granting of the stay would serve the public interest.

*In re First South Sav. Ass'n,* 820 F.2d 700, 704 (5th Cir. 1987); *see also Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982); accord Arnold v. Garlock, Inc., 278 F.3d 426, 438-39 (5th Cir. 2001). In evaluating these factors, the Fifth Circuit has held that they should not be applied "in a rigid ... [or] mechanical fashion." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983); *see also Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994). Accordingly, some courts within the Fifth Circuit have determined that "the absence of any one factor is not fatal to a successful motion for stay." In re Permian Producers Drilling, Inc., 263 B.R. 510, 515 (W.D. Tex. 2000) (citing In re First S. Savs. Ass'n, 820 F.2d 700, 709 n. 10 (5th Cir. 1987). In conducting this analysis, the Supreme Court has stated that the first two factors are the "most critical". *Nken v. Holder,* 556 U.S. 418, 129 S.Ct. 1749, 1761, 173 L.Ed.2d 550 (2009). Of those two factors, "'[t]he *sine qua non* [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits." *Hall v. Dixon*, CIV. A. H-09-2611, 2011 WL 767173, at *1 (S.D. Tex. Feb. 25, 2011) (quoting *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002). Lexon respectfully submits that each of the foregoing factors are satisfied under the circumstances, and that a stay of the Confirmation Order is necessary and appropriate.

**A. Lexon has a likelihood of success on the merits.**

31.    A party seeking a stay need only show a likelihood of success, not a probability. *Arnold v. Garlock, Inc*., 278 F.3d 426, 438–39 (5th Cir. 2001); *Hall v. Dixon*, CIV.A. H-092611, 2011 WL 767173, at *1 (S.D. Tex. Feb. 25, 2011). "If a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require ... a prior presentation to the ... judge whose order is being appealed." *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. 1981). "That judge has already decided the merits of the legal issue." *Id.* Instead, a "movant need only present a substantial case

8

on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Arnold*, 278 F.3d at 438-39.

32. A serious legal question is one that might have far-reaching effects of public concern. *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23-24 (5th Cir. 1992). Further, when an appeal deals with "questions involving the application of law, or when the law has not been definitively addressed by a higher court, the movant more easily satisfies the first element." *In re Tex. Equip. Co., Inc.*, 283 B.R. 222, 227 (Bankr. N.D. Tex. 2002) (citing *In re Westwood Plaza Apartments*, 150 B.R. 163, 168 (Bankr. E.D. Tex. 1993) (internal citations omitted).

33. The Confirmation Order, as it related to the denial of future suretyship rights, was based on the Court's determination that there were various evidentiary bases to extend the Court's subject matter jurisdiction to affect the sureties', including Lexon's, future rights. Those bases were:

> (a) that the Credit Bid Purchaser[6] would not be willing to assume the leases it did and purchase the other assets it did if it were subject to post-confirmation and post-effective date suretyship rights, including the right of subrogation.
>
> (b) that § 363 of the Bankruptcy Code cuts off any liability from the sureties, including Lexon, post-confirmation and post-effective date suretyship rights, as well as new post-confirmation and post-effective date obligations.

34. Regarding a requirement by the Credit Bid Purchaser of a waiver of future suretyship rights, there was no testimony given nor evidence introduced regarding the Court imposed requirement on behalf of the Credit Bid Purchaser. Furthermore, there was no mention of such a requirement in the Restructuring Support Agreement. Indeed, only in the Credit Bid Purchase Agreement [Dkt. No. 1394-1] were any references made to surety obligations. Those references, however, were attempts to limit obligations arising from the sureties based upon pre-petition obligations to the Debtors. They did not, and could not, address post-petition obligations that are the direct liability of the new lessees. Equally

---

[6] Capitalized terms not defined herein are defined in the Eighth Amended Plan.

important, there was no mention of a request in any of the Plans (*see* n. 3, *supra*) and Disclosure Statement [Dkt. No. 1285] previously filed by the Debtors.  The offending language which essentially terminated suretyship rights, first appeared in the Debtors Fifth Amended Plan [Dkt. No. 1629], filed on June 16, 2021, which was immediately prior to the last pre-trial conference that was held virtually in the afternoon of June 17, 2021 and two (2) days prior to the scheduled start of the Confirmation Hearing. The Confirmation Hearing was then postponed to June 21, 2021 as a result of President Biden declaring Juneteenth a federal holiday.

35. It is telling that during the weeklong Confirmation Hearing (held from June 21, 2021 through June 25, 2021) neither the Credit Bid Purchaser nor the governmental regulators testified. Despite the lack of testimony, the Court held that the evidence showed that section 5.13(a) of the Eighth Amended Plan was required by the Credit Bid Purchaser.  Attached hereto as **Exhibit 1** are pages 25 (line 14) through 33 (line 6) of the June 25, 2021 Confirmation Hearing Transcript. However, no such evidenced was introduced or testified to.

36. Debtor's valuation expert, John Paul Hanson testified at length, but never mentioned having taken into account any waiver of future suretyship rights as an indicia of value.

37. With no evidence or testimony before it, the Court concluded for itself that the Credit Bid Purchaser was, through section 363 of the Bankruptcy Code and the United States Supreme Court case of *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986) ("*Midlantic*"), being assigned the leases free and clear of all future subrogation rights. *See Id.*; *see also* attached hereto as **Exhibit 2** are pages 58 (line 23) through 63 (line 19) of the June 21, 2021 Confirmation Hearing Transcript; attached hereto as **Exhibit 3** are pages 35 (line 22) through 58 (line 17) of the June 24, 2021 Confirming Hearing Transcript.

38. The Court's reliance on 11 U.S.C. § 363(f) is misplaced because that section does not apply to future suretyship rights. Sureties do not hold a present interest in any property of the estate. Nor does the surety hold any lien or encumbrance that can be stripped off.

39. The Court's reliance on *Midlantic* is equally unavailing. The Court has repeatedly taken the position that only the government regulators have the right to invoke the *Midlantic* requirements. Given the fact that the government did not raise any arguments and, in fact, chose not to object to the Eighth Amended Plan, the Court had no ability to base its decision upon *Midlantic*.

40. Given the lack of evidence and the clear lack of subject matter jurisdiction, the Court's conclusion is erroneous and Lexon, as well as the other sureties, have a very strong likelihood of success on the merits.

**B. Lexon will suffer an irreparable injury if the stay is not granted.**

41. Courts consistently find that the irreparable harm requirement is satisfied when an appellant's right would be vitiated absent a stay. As an example, in issuing a stay pending appeal of the bankruptcy court's confirmation order, the District Court for the Southern District of New York emphasized that the loss of appellate review is a "quintessential form of prejudice." *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 347-48 (S.D.N.Y. 2007). In *ACC Bondholder*, the court held that "where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." *Id*. at 348; *see also Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034 (5th Cir. 1994); *In re Texas Equip. Co., Inc.*, 283 B.R. 222, 228 (Bankr. N.D. Tex. 2002) (explaining that unless a party obtains a stay of the sale order, there would be no effective remedies).

42. The specific language contained in 11 U.S.C. § 363(m) renders a reversal or modification of an appeal of a sale or lease of rights or property statutorily moot unless a stay pending appeal has been granted. *See* 11 U.S.C. § 363(m).

43. If there is any doubt as to Debtors' counsel's ability to move quickly to establish the mootness of Lexon's appeal, one need not look further than the January 4, 2021 article written by Debtors' counsel on how to ensure any post-petition challenges are dismissed as statutorily moot under 11 U.S.C. § 363(M). A copy of the first page of the article is attached hereto as **Exhibit 4**.

44. Therefore, if there is no stay of the waiver of future suretyship rights, Lexon will be irreparably harmed and its appeal will be rendered moot.

### C. Granting the stay would not substantially harm the other parties.

45. "The third factor requires this Court to balance the hardship of the parties and find whether the harms outweigh any likely irreparable injury to the movant absent a stay." *In re Dernick*, 2019 WL 236999, at *4 (Bankr. S.D. Tex. Jan. 16, 2019) (citing *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013)). Absent a stay of the Confirmation Order, "effective judicial relief would be no longer available, even though there may still be a viable dispute between the parties on appeal." *In re Manges*, 29 F.3d at 1039.

46. As discussed in the above cases, absent a stay of the Confirmation Order, effective judicial relief would no longer be available to Lexon.

47. The hardship on the Credit Bid Purchasers and/or post-confirmation entities would solely be not knowing if they may have residual liability if they do not live up to the bargain they agreed to relating to completing all of the plugging and abandonment and decommissioning obligations. If the Credit Bid Purchaser completes what they have agreed to complete, there would be no reason for the

government to call the Lexon Bonds and the Credit Bid Purchaser would not have any residual subrogation liability.

### D. Granting of the stay would serve the public interest.

48. The last question is whether a stay serves the public interest. Public policy generally favors speedy resolution of disputes, as well as the efficient allocation of judicial resources. *See Weingarten Realty Inv'r v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011).

49. Lexon submits that this factor weighs heavily in favor of granting a stay of the Confirmation Order because there is an overwhelming public interest in preserving the integrity of the statutory right of appellate review in an expeditious and efficient manner:

> The ability to review decisions of the lower courts is the guarantee of accountability in our judicial system. In other words, no single judge or court can violate the Constitution or the laws of the United States, or the rules that govern court proceedings, with impunity, because nearly all decisions are subject to appellate review. At the end of the appellate process, all parties and the public accept the decision of the courts because we, as a nation, are governed by the rule of law. Thus, the ability to appeal a lower court ruling is a substantial and important right.

*ACC Bondholder Group,* 361 B.R. at 342.

50. Furthermore, the public interest is served by having the predecessors, the other primarily liable parties, take over each of the leases not covered by any other party. That along with the Debtors operating under a Transition Services Agreement on any remaining property so none fall through the cracks, will provide the public with the proper protection it deserves.

51. With the public safety and integrity of the operations provided for, the public interest is best served by having a Court of competent jurisdiction decide if this Court erred in overextending its subject matter jurisdiction by eliminating a substantive series of rights enumerated by the United States Supreme Court in many cases; from *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962) through to today.

### E. Waiver to Post Bond

52. Lexon is requesting a wavier of any bond. The rights that are asked to be stayed will do nothing to impede the balance of the Eighth Amended Plan proceeding.

53. The Credit Bid Purchaser and other post-confirmation entities may immediately begin to undertake operations and begin the plugging and abandonment and decommissioning obligations its purchase and assumption require it to do. If they live up to their purchase and lease contract, the claims of the sureties, including Lexon, never ripen into claims and the Buyer/Lessee will have no damages. All they need to do is live up to their own contract terms. No harm, no foul.

## IV. FURTHER JOINDER AND RESERVATION OF RIGHTS

54. If any other surety bond providers file a motion for a stay order pending an appeal of the Confirmation Order ("Other Sureties' Stay Motions"), and to the extent the relief requested in the Other Sureties' Stay Motions do not conflict with the relief requested by this Joinder, Lexon hereby joins and adopts the factual statements, legal positions, and relief requested in the Other Sureties' Stay Motions as if such factual statements, legal positions, and relief were fully set forth in this Motion.

55. Lexon reserves its rights to supplement or otherwise adopt additional arguments in connection with this Joinder up to and including at the hearing on the Sureties' Stay Motion.

V. **CONCLUSION**

56. **WHEREFORE**, Lexon hereby joins and adopts the factual statements, legal positions, and relief requested in the Sureties' Stay Motion, and specifically requests the Court stay the effect on suretyship rights in the Confirmation Order and confirmed Eighth Amended Plan until resolution of Lexon's appeal.

        Respectfully submitted,

        */s/ Lee E. Woodard*
        Lee E. Woodard, Esq. (admitted *pro hac vice*)
        HARRIS BEACH PLLC
        333 W. Washington Street, Suite 200
        Syracuse, New York 13202
        Telephone: (315) 423-7100
        Email: bkemail@harrisbeach.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July 2021, a true and correct copy of the foregoing *Joinder of Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company to the Emergency Motion of Aspen American Insurance Company, Berkley Insurance Company and Sirius America Insurance Company for a Stay, Pursuant to Bankruptcy Rule 8007, of the Order Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors, or in the Alternative, for an Order Amending the Confirmation Order, Pursuant to Bankruptcy Rule 9023* was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

                                              */s/ Lee E. Woodard*
                                              Lee E. Woodard