# EXHIBIT 1

1  incorporate that language and Mr. Carlson and I can email it
2  to you. If you'll give me about four minutes and then we can
3  go from there. If that works, however you want to handle it,
4  Judge.
5      THE COURT: Yeah, why don't we come back and we'll
6  do it all on the screen. I'll take back the screen now so
7  that you don't have to show everybody you're drafting efforts,
8  but then when you're ready just tell me and we'll come back
9  and we'll all look at it together and then let's decide. I
10 really don't want to put things off so that, you know,
11 somebody else then has a problem with what you draft so.
12     Okay. Let me see. Okay. So you got back your own
13 screen, we can't see it, I'll let you do some drafting.
14     Mr. Woodard, I think you wanted to speak.
15     MR. WOODARD: Thank you, Your Honor. Maybe if I can
16 take about half of Mr. Bains four minutes, maybe that'll help
17 everybody fill the void. I have the unenviable task, Your
18 Honor, of being Number 6 in asking you to listen just for a
19 moment, if I could, on a slightly different aspect of what has
20 been overruled, the objection that's been overruled five times
21 previously and no doubt will be again now.
22     But I need to put on the Record a couple of things
23 if --
24     THE COURT: Go --
25     MR. WOODARD:   -- I have been --

1     THE COURT: -- go right ahead, Mr. Woodard.

2     MR. WOODARD: -- first of all --

3     THE COURT: Go back -- although I've been overruling people, I'm doing my best to preserve all -- everybody's appellate rights. My goal shouldn't be to stop you from preserving your objections. So go ahead and --

7     MR. WOODARD: And I --

8     THE COURT: -- maybe you've got some new argument and you can carry the day for everybody. We'll see.

10    MR. WOODARD: It is a slightly new argument, Judge. I started this off with -- on Monday of actually being in your camp, and I think I'm slipping a little bit. However, all of the things that I agreed with you are still there. So all of the items that the Court has the ability to do under 363, the Debtor. The facts are that the bonds continue to exist, notwithstanding the fact of the loss of the principal. All of those things I still agree with.

18    But at the end of the day every day this week I've had this dilemma trying to figure out, because while I wear the hat of a bankruptcy counsel, I understand the concepts of elimination of debt and going through the confirmation process and discharge and all that. As I wear the hat of a surety counsel, however, the idea of losing the ability to maintain the suretyship rights of a surety is just contrary to basic surety law.

So each day as I listen to the variety of the five arguments before mine, I've struggled each night trying to figure out how it is that I reconcile all those things. And I think that I've finally come to what I believe to be a viable solution to it, but as I say, I would anticipate no different end result, but let's give it a run.

The acquisition of the leases on the effective date carries with it certain obligations that take effect whether the leases -- take effect when the leases are actually transferred to any of the post-confirmation entities. There are -- and that has nothing to do with the sureties. These are obligations that come into existence under -- whether it's the outer Continentals shell pack, whether it's any of the CFR provisions that place a variety of maintenance, decommissioning, safety obligation on any owner/operator of a lease.

So the moment that the entities actually take over on behalf of -- that take the assignment of these leases and become owner/operator they have a new set of obligations that don't relate to the sureties, that relate solely to the Government. It is only the DOI, BSEE, BOEM in any of their pieces. So that is a straight line of liability from the credit bit purchaser, from Fieldwood One, Three, Four directly to the Government.

Mr. Dane testified during his direct testimony that

NewCo is going to be responsible for someplace between 330- and $350 million of P&A liability, and that that was part of their entire deal and it was -- it's a wonderful thing what NewCo was going to be doing for everybody. All of those post-petition -- post-effective date. Once they take those on, new obligations.

He also testified the same was going to be true under Fieldwood One, Three and Four just that he said that they are taking assignment of leases as well.

And all of that liability is completely independent of the bonds. So if just assuming for moment that the regulators, upon the default, right, one of those entities doesn't do what they're supposed to do under the CFR and the regulators declare a default, they could look to those entities directly from themselves, from the Government and declare the default and seek the monetary whatever, restitution, clean up, whatever they be directly to themselves. They don't need to call the bond, they don't need to do anything else. And that right exists the moment they sign those leases.

Now we also agree on Monday, and I still do today, that the bond continues. We don't get out from under it. The bond will live on indefinitely until we're released from our obligee, which in our case is the Government. So the Government can also turn around and say to Lexon, Okay, Lexon,

these bonds are still in existence, there's a violation of that lease that's being conducted by credit bid NewCo. You pay us the money. And we won't -- whether we have a defense or not we'll deal with that at that time.

But assuming that we don't and we have to pay that money, now we flip back to straight surety law because that bond is still there, it is still under surety law. And so our obligation runs directly to the Government. The NewCo 1, 3, 4 run directly to the Government. Now the Government takes the money. Suretyship law. It's very simple in this regard. When you boil it all the way down what subrogation is, is the surety case but under the rights of the obligee.

It is not a claim by the surety itself. It is a claim using the Government's rights in order to reimburse the Government and the surety from the party that has done the wrong. So at the end of the day here you've got a post-petition obligation that's a direct line obligation to the Government and you have what is -- well, it was a pre-petition original bond, it has lived on post-petition and has been certainly -- continued to be ratified by the Government, but they're not going to let us off the hook.

So we have a post-effective date default, payment and the surety would be only exercising the direct rights from the NewCo, whoever it might be, to the Government and that's why, at least in my mind, Your Honor, that's why when you come

1   to the end of the day, I come back around to say the
2   suretyship's still there.
3       The suretyship doesn't get eliminated by the
4   confirmation.  The rights are still there and going forward.
5   Now I understand what the language is, and we're trying to
6   hammer that out as best we can.  But I needed to get this on
7   the Record and also to acknowledge that we're joining in what
8   Mr. Zuber had to say yesterday.  But it is a slight different
9   argument, and I wanted the Court to be aware of it.
10      THE COURT:  Mr. Woodard --
11      MR. WOODARD:  Thank you, Your Honor.
12      THE COURT:  -- first of all, thank you, I think
13  it's a really clear statement of the argument.  I'm not sure
14  that I believe it to be different than at least the way that I
15  heard and that I've been considering the argument.  So I've
16  certainly thought about the issue that you are raising.
17      And again, I want to, because you've raised it
18  again, which is more than fair, I want to again explain why I
19  believe what we're doing is correct so that there is a Record
20  of our decision that you can appeal if your client determines
21  that's the best thing to do.
22      The sureties today right now can liquidate their
23  claim and have a claim against Fieldwood that is the principal
24  on the bonds.  That claim may be for the full amount of the
25  bonds.  And if so, you will get a claim for the full amount of

the bonds. I'm not liquidating it right now. But you have the right to assert that full claim. No one is taking away any of your rights against the principal. And I understand that's in part not your argument, but it's important to put in context that all the principal rights are there.

Now the principal can't pay in full, but you can get a liquidated claim against the principal for whatever it is that you're entitled to. And under the bankruptcy law we can determine the amount of the claim that will exist in the future whether or not you have yet paid it, because all of that falls within the definition of a claim.

So 100 percent of the sureties' rights can be vindicated against the Debtors. The rights that you have described, which arise in favor of the Government, arise under 28 USC 959 in my view. And you have described that the acquiring entity will have a continuing obligation to BOEM and BSEE and the Department of the Interior.

The issue that you're asking me to rule on, and that I am ruling on, is whether the Bankruptcy Court is empowered as part of the Plan's adjudication and Plan process to say that you're not going to get subrogation rights to the Government if they come back against the acquiring entity. I rely in large part on our ability to do that, on the Bankruptcy Code, and in large part on *Midlantic*.

Finally, I rely on the really complete evidentiary

1    record that we have.  The evidentiary record that we have is
2    that there will not be an acquirer of these entities if they
3    will then be subject to subrogation by the surety.  So the
4    sureties are in a position where if we don't do the Plan, you
5    will just have an eminent default and the entire surety issue
6    will be, you know, available subject to whatever defenses you
7    have if the Government calls it.
8              Under the Bankruptcy Code we could authorize, and
9    may authorize the sale of the property, the *en rem* property
10   free and clear of all liens, claims and encumbrances.  That
11   includes equitable rights including the equitable right of
12   subrogation.  So what do we do when we have subrogation law
13   that comes into conflict with the ability to sale under
14   Section 363 free and clear of those types of equitable rights.
15             And that is informed by *Midlantic*, which is we
16   should apply the Bankruptcy Code in a manner that allows the
17   Government to maximize the environmental consequences that are
18   facing the country and in this case the Gulf of Mexico if we
19   don't do the right thing.  Accordingly, when you look at 363
20   and 959 and *Midlantic* and the evidentiary record we have, this
21   is the only solution to the problem.
22             I do not make the sureties worse off by confirming
23   the Plan, I make them better off by confirming the Plan.  I am
24   true to the requirements of *Midlantic* and I am true to the
25   language of the Code.  And for that reason I overrule the

1  objection.

2  I appreciated the statement in the way in which it
3  was made, Mr. Woodard.  Thank you.

4  MR. WOODARD:  Thank you, Judge.  I appreciate the
5  opportunity to put it on the Record.

6  THE COURT:  Absolutely.

7  Mr. Liou, go ahead.

8  MS. LIOU:  Your Honor, may I take a moment perhaps
9  for my comment.  It was regarding an earlier paragraph and I
10 believe that the parties are going to work separately on
11 language and come back to you on that.  So I'm okay with that.

12 THE COURT:  Thank you.

13 By the way, for those of you whose lines have
14 remained active, you don't need to press five star again.  You
15 can simply, you know, speak up at the right time.

16 Mr. Bains, I'm going to come back to you and see if
17 we're -- are you ready to show us a document at this point?

18 MR. BAINS:  Yes, Your Honor.

19 THE COURT:  Thank you.  Mr. Woodard took longer than
20 he forecast, so I figured you'd be ready by now.

21 MR. BAINS:  Good argument, Mr. Woodard.

22 THE COURT:  It was a --

23 MR. BAINS:  I at least believe you.

24 THE COURT:  It was a good argument from Mr. Woodard,
25 and I appreciated hearing it.  But nevertheless it took longer