# EXHIBIT 3

1         THE COURT:  Okay.  Well, I just want -- assuming

2 that we conclude today with no outstanding objections, when

3 you get it filed please contact Ms. Doe and I will look at

4 it right away.

5         I do have a 4:00 o'clock hearing.  And so I expect

6 that hearing to take less than an hour, but I may be wrong

7 about that.  But it's not like I'm going anywhere.  I

8 just -- I may have an hour when I can't look at whatever you

9 submit.  But beyond that I'm pretty free.

10         Okay, let's move ahead.  Where are you next,

11 Mr. Carlson?

12         MR. CARLSON:  From there, Your Honor, I go to

13 paragraph 97.  This is the non-Apache sureties reservation

14 rights language.

15         And here --

16         THE COURT:  Wait a minute.

17         MR. CARLSON:  -- we have received.

18         THE COURT:  Hold on.  I ended up in the wrong

19 place.

20     (Pause in the proceedings.)

21         THE COURT:  Okay, I'm about there.  There we go.

22         MR. CARLSON:  Your Honor, this paragraph I think

23 is kind of (glitch in the audio) reservation of rights the

24 way I see it.  Number one, that nothing in the Plan document

25 modify the rights as between obligees and sureties.  That's

1    sort of what's captured in A.

2           B is nothing requires non-Apache Sureties to

3    extend additional new surety credit.  And then C is nothing

4    in the order or Plan documents increase or decrease rights

5    of sureties against non-Debtor parties for the

6    post-effective date Debtors, Fieldwood One, Two and Four,

7    and the NewCo entity with the reservation of rights with

8    respect to assumed contracts.

9           And I think --

10          THE COURT:  So tell me -- I don't understand how A

11   works in combination with the exculpation clause.

12          MR. CARLSON:  So A is limited to the non-Apache

13   sureties.  Nothing is adjudicating or modifying their rights

14   as between only those non-Apache sureties and the obligees

15   under their respective bonds.

16          THE COURT:  But does that mean that there can be a

17   dispute between the obligees and the non-Apache sureties as

18   to matters that are exculpated in the Plan?  Or does the

19   exculpation clause control over A?

20          Because I think both have not withstanding

21   anything else and I'm a little nervous about having

22   contradictory paragraphs that say notwithstanding anything

23   else.

24          What's the deal on how this interacts with that?

25          MR. CARLSON:  Yeah, I think your right.  I think

1  it's -- we do have that language on the less expressly

2  provided the contrary in the Plan documents.  Language here

3  and I think you're right that if there is an expressed

4  provision that does impact that, that would supersede this

5  language in A.

6          THE COURT:  I mean, it says unless expressly

7  provided and then it says nothing in the exculpation

8  provision does these things.  I do not want the ambiguity.

9  I want to have you guys apparently talk some more to be sure

10 that I don't have cross conflicts like that.

11         I'm happy with however you-all resolve it.  And

12 maybe you-all have an agreement that I'm not fully

13 appreciating.  Let's see, Mr. Ripley?

14     (Pause in the proceedings.)

15         THE COURT:  Mr. Ripley?

16         MR. RIPLEY:  Oh, good afternoon, Your Honor.  Ed

17 Ripley with Andrews Myers on behalf of Chevron and various

18 affiliates.

19         Judge this whole paragraph first came about last

20 afternoon.  And the first introductory clause is a problem.

21 Because what it does is it basically takes away the

22 reservation of rights language.  I think there's some other

23 provision that's buried in the thousands and thousands and

24 thousands of pages of other documents that people met all

25 the transactions under the Plan.

1    It's overly broad in and it's completely

2 unnecessary.  The -- this was added in because one

3 particular obligees and predecessor had worked out

4 additional language.  And so there's a way to deal with that

5 parties unique issues without having this.

6    Because right now -- particularly under

7 subparagraph A -- my client is an obligee under various

8 bonds and we have no idea, again if anything in any of the -

9 - for example Fieldwood Energy One or the Newco Credit Bid

10 transaction documents has some effect on our bonds.

11    We haven't checked all those pages.  We shouldn't

12 be forced to check all those pages.

13    Again, that first clause needs to come out.  It's

14 unnecessary.

15    THE COURT:  Which first clause?

16    MR. RIPLEY:  The "unless expressly provided to the

17 contrary in the Plan documents."

18    THE COURT:  But then if it says, "the exculpation

19 provision doesn't effect people's rights under the deal in

20 the Plan."  And it does effect people's rights under the

21 deal in the Plan.

22    I mean we are ordering that no one can

23 subsequently challenge the deal.  The deal is protected.

24    MR. RIPLEY:  Yeah, I think -- Judge I think you

25 raise a good issue that no one else had raised yesterday in

1  the discussions amongst all different parties.  They ought

2  to be able to carve in the exculpation because -- to make

3  sure that there isn't some gap or inconsistency.

4         But that introductory clause was not raised in

5  connection with the exculpation in all the discussions

6  yesterday.  Again it was added solely to deal with one

7  individual obligee and predecessors peculiar issues and

8  there is easier ways to deal with that.

9         THE COURT:  Mr. Bains.   Mr. Bains?

10         MR. BAINS:  Good afternoon, yeah good afternoon,

11  Your Honor.  Brandon Bains on behalf of Travelers, Liberty,

12  Hanover and XL.

13         I just wanted to echo Mr. Ripley's comments.  You

14  know we had some discussion about this language.  In fact,

15  Mr. Ripley's clients, Chevron, is an obligee for all four of

16  my sureties.

17         I think the intention here, Your Honor, is simply

18  that if we get down the road and there is a bond claim by

19  Chevron, I think all parties agree that nothing in the plan,

20  nothing in the order impacts Chevron's rights under the

21  bonds, impacts our defenses under the bonds.  And I think

22  that's what we're trying to accomplish here.

23         I would agree with him that I think the first

24  clause should be taken out because it just adds to confusion

25  and we really seek to adjudicate something that is outside

1  the purview of this Court when it comes to any of those bond

2  claims two or three years from now.

3          THE COURT:  Yeah, that makes a lot of sense.  So

4  just to put that sort of in a hypothetical example.  If the

5  obligee a year ago did something that would preclude your

6  liability to the obligee that argument remains.

7          But the obligees participation in the Plan would

8  not be a defense.  And if we can say those, I think that's

9  consistent with what I'm intending to order.  I don't think

10 this says that.

11         MR. RIPLEY:  And Judge, -- yeah that is the

12 intent.

13         THE COURT:  Great.  I don't know how to say that.

14 We can all take a stab at it, but should I let you-all take

15 a stab all together without me.

16         MR. RIPLEY:  Yes, Your Honor, we'll take a stab at

17 it.

18         THE COURT:  Mr. Dendinger?   Mr. Dendinger?

19         MR. DENDINGER:  Yes, good afternoon, Your Honor.

20 I guess for the record, Mark Dendinger, Bracewell for ENI

21 Petroleum US LLC and ENI US Operating Company.  May I be

22 heard?

23         THE COURT:  Yes, sir.

24         MR. DENDINGER:  I believe Mr. Ripley is

25 generically referring to -- for my clients as the obligee

1  with the peculiar language.

2         I didn't realize that it expressly provided to the

3  contrary in the Plan documents was solely put in for my

4  clients benefits.

5         But the reason that lead in was important to us is

6  without some version of a lead in that would say, "except

7  expressly provide to the contrary" in paragraphs X to Y of

8  this Order and the ENI definitive documentation are

9  concerned with me this entire paragraph and my client's

10 rights as obligee and the non-Apache's sureties rights would

11 vitiate the paragraph that we negotiated that we'll come to

12 later on in the Order.

13        I believe the paragraph range is 118 -- 111 to

14 118.  I apologize, Your Honor.  So Mr. Ripley has made a

15 sound deduction --

16        THE COURT:  Could it say, for example -- and I

17 haven't read 111 to 118 -- subject to paragraphs 111 to 118.

18 Would that have the same effect?

19        MR. DENDINGER:  Yes, yes.  And that would be fine,

20 Your Honor.  I would prefer that it also maybe use the

21 phrase "and the ENI definitive documentation."

22        THE COURT:  It doesn't bother me as long as it's

23 limited to ENI.  All right, from Chicago, 502-2956.

24        MR. KOOY:  Yes, Your Honor.  Ralph Kooy on behalf

25 of North American Specialty.  I did want to add our

1  agreement with Mr. Bains and Mr. Ripley that we didn't
2  understand the need for that first clause.
3        You know, one of the entries our client continues
4  to have and we say it's advisable to half of -- or on behalf
5  of Fieldwood, but namely Chevron and ENI as obligee.
6        You know, we still have our larger objection.  And
7  it relates, you know, to the term sheets that have been
8  entered that we sort of, you know, obtuse or abstruse
9  references to the surety providing money for clean up.
10        We still don't think there's, you know, a clear
11  understanding of how these bonds survive and under what
12  basis.  I have not reviewed paragraph 111 through 118, but
13  our -- you know, we're happy with the language that nothing
14  in the order or plan shall be deemed to modify, you know,
15  our defenses should these obligees specifically any and
16  Chevron make a claim because we want to be able to preserve
17  our surety defenses.
18        We're still hesitant, you know, we agree that that
19  last provision should be removed consistent with Mr. Bains
20  and his position on behalf of his clients.  We would have to
21  take at look at 111 and 118 and I assume that means we'll be
22  doing that offline here.
23        THE COURT:  All right.  Let me just be sure that
24  you're telling me the same thing others are.  You're not
25  looking -- well.  I know they argued against this.  I've

43

1  overruled the question of whether you can have a defense

2  based on what's occurring in the Plan itself.

3          So to the extent that that's your objection, I'm

4  substantively overruling it.  But I am sustaining any

5  objection that says that I should effect rights other than

6  were determined in the Plan.

7          And I don't think paragraph 97 is correct in that

8  regard on any side of that.  So hopefully you-all can work

9  through that some more.  And that may take more than this

10 afternoon and I understand that.  But it's an important

11 paragraph.

12         MR. KOOY:  All right.

13         THE COURT:  Is that -- and I know that you have

14 that objection.  I want there to be a clear record.  You can

15 appeal it.  I've got zero problem with that.

16         But I agree that your defenses that existed when

17 this case was filed, we should not be adjudicating or

18 altering at all.  It's only the Plan itself that we're

19 approving can't then serve as the defense.

20         And I know that you disagree with that.  I've got

21 no problem with you disagreeing with that.  But that's the

22 part I'm overruling and only that part.

23         MR. KOOY:  Understood.

24         THE COURT:  Thank you.  All right.

25         MR. BAINS:  Your Honor, Brandon Bains, if I may.

44

1        THE COURT:  Sure, Mr. Bains.

2        MR. BAINS:  And just, Your Honor on that point for

3   purposes of the record, I did want to make clear, at least

4   on behalf of my clients, that we do still have substantive

5   legal objections to the Plan.

6        We understand the Court has overruled those.

7   Obviously all of this is subject to those objections.  But

8   trying to get to the language that we're not opposed to as

9   part of the Confirmation Order.  I think you said that

10  before, but I just wanted to make that clear.

11       THE COURT:  I did and I'll reiterate it now.  I

12  made substantive rulings during the hearing.  Perhaps just

13  clarified one so that there could be no ambiguity about what

14  I meant to say.

15       And then I ordered the parties -- like you and

16  your client, Mr. Bains, -- to agree on a form that would

17  implement the rulings.  And you are not waiving

18  anything -- it's not my intent that you're ruling anything

19  by agreeing to the form of the order in a manner that is

20  consistent with the Court's rulings.  And your objections

21  previously made are preserved in that regard.

22       And that is true for everyone that is, you know,

23  working as best I can tell in absolute good faith to try and

24  implement the Court's orders.  I have no problem with what

25  anybody is doing or saying here.  And expect that no

45

1    Appellate Court would think that the work of fine lawyers

2    implementing a Court order shouldn't be a waiver.  It's just

3    not.

4              MR. KOOY:  Your Honor, I don't know if I'm still

5    unmated.  This is Ralph Kooy again.

6              THE COURT:  No, you're still live.

7              MR. KOOY:  Okay.  I just -- I appreciate that

8    clarification and we had not, you know, officially made our

9    closing voicing and continuing our objection.  But based on

10   your (indiscernible) that that applies to North American

11   Specialty as well.

12             THE COURT:  It applies to them and to all the

13   others that raised objections that I overruled.  You know,

14   this is a really hard long complicated thing. And for your

15   clients too, you want a clear order even for appellate

16   purposes.

17             And compliance with my direction to try and work

18   on getting something that clarifies and implements the

19   Court's rulings only shows good lawyering and not waiver as

20   far as I'm concerned.  And I make that as to all --

21             MR. KOOY:  Thank you very much, Your Honor.

22             THE COURT:  -- all parties.  Thank you.  All

23   right, so I'm going to let everybody tell me if this means

24   that want a little -- maybe overnight -- to work on that

25   paragraph and come back in the morning or something.

1         But I am worried about getting this one done with

2    this many parties that really care about how that language

3    is going to fit in.

4         So let's go on down.  What do you have next?

5         MR. CARLSON:  Well, I think these next couple of

6    paragraphs were also a part of those same discussions.  I

7    think paragraph 98 is really clarification that -- you heard

8    a lot of testimony and discussion on this.  None of the nine

9    Apache bonds where the Debtor is the principal are being

10   allocated or assigned pursuant to the Plan.

11        I don't think there's anything controversial about

12   98, but folks can speak up if so.

13        And then paragraph 99 is really intended to try

14   and address what is being dealt -- what subrogation rights

15   are being dealt with under the Plan and what aren't for the

16   pre-post subrogation rights discussion that we've had.

17        (Pause in the proceedings.)

18        THE COURT:  I'm not sure what 99 means.

19        (Pause in the proceedings.)

20        MR. CARLSON:  What this is intended to say is that

21   any post-effective date subrogation rights are not being.

22   The way I read this anyway, others can disagree but, are not

23   being dealt with or are not being enjoined release, altered

24   or diminished not by the non-Apache Surety subrogation

25   rights.

1          THE COURT:  So, if money is paid to the Government

2     under the Plan, by a bonding company, can they come back

3     against NewCo?  Because my ruling was they couldn't and this

4     paragraph seems to say they can.

5          I don't think it's consistent with my ruling.

6          MR. CARLSON:  They cannot.  They cannot, Your

7     Honor.  I think that's right and if we need to fix this to

8     be consistent we will.

9          THE COURT:  I read this to say that if a

10    subrogation right arises on the effective date and on the

11    effective date Newco will be an owner, if they're preserved.

12    And that is not my intention.

13          I believe it is inconsistent with Mid Atlantic.

14          MR. BAINS:  Your Honor, Brandon Bains, if I may?

15          THE COURT:  Yes, sir.

16          MR. BAINS:  Let me just say for my four sureties,

17    Your Honor, we do not have any Government bonds.  All of our

18    bonds are on behalf or excuse me, on behalf of Fieldwood in

19    favor of private entities.

20          THE COURT:  Right.

21          MR. BAINS:  I can say for my purposes, we're

22    simply trying to preserve those subrogation rights.  I think

23    it's maybe a different issue than the Court is hitting on.

24    So I do think the folks that have the Government bonds can

25    speak up if they need to on that.

48

1       But I do think it's important for any of the other

2  subrogation rights for sureties that private bonds be

3  preserved after the effective dates, which is what this

4  language is at least attempting to get do.

5       THE COURT:  So, is Newco buying any of the

6  property on which your client can assert subrogation rights?

7       MR. BAINS:  There are assets bonded by my clients

8  that are flowing to Newco, yes.

9       THE COURT:  Yeah, I am --

10      MR. BAINS:  I still have -- I mean --

11      THE COURT:  -- so this is a ruling I tried to make

12  before.  Newco buys free and clear.

13      MR. BAINS:  I don't know that that's the issue

14  that we're fighting about.  I think the issue is more if,

15  for instance Mr. Ripley's client, Chevron, if we pay out on

16  that bond on an asset that has gone to Newco, we're

17  subrogated to Chevron's rights or the other obligee.

18      THE COURT:  This has being bought free and clear

19  of Chevron's rights, right?  Newco isn't taking it and then

20  having to pay other than what they've agreed to pay.  They

21  don't have to pay extra via subrogation.

22      MR. BAINS:  No, I think I'm saying something

23  different, Your Honor.

24      THE COURT:  Okay.

25      MR. BAINS:  I think I'm talking about in the

1  future lets say if Newco otherwise did not perform long

2  after the effective date for their own obligations with the

3  Government.  If the Government issued some sort of order

4  that flowed back to Chevron in the chain of title or not.

5  However we come to pay under our bond, we're just simply

6  saying we maintain those subrogation rights against our

7  private obligees.

8           I don't know that it's impacting the free and

9  clear concept that the Court is worried about.

10          THE COURT:  I think it depends if what you're

11 describing is Newco post effective date puts up a new

12 platform.  That's Newco's problem.  I don't know that anyone

13 has bonded that.  But that's Newco's problem.  And people

14 are going to be subrogated.

15          But people are not going to be able to sue Newco

16 for a error obligation that arose before their acquisition.

17          MR. BAINS:  That arose before the acquisition is

18 that what you said?

19          THE COURT:  Right.  If the error obligation

20 existed on the date, you know, prior to the date of Newco's

21 acquisition, Newco can't be forced to pay that other than

22 what the Plan says.  That's the whole fundamental --

23          MR. BAINS:  Yeah I understand.

24          THE COURT:  -- premises of the Plan.

25          MR. BAINS:  I would agree that's the premise of

1  the Plan.  I don't think that's what this is saying.  This

2  is saying subrogation rights that would arise after that.

3  　　　　　THE COURT:  No it says other than those

4  subrogation that arose on or before the effective date.

5  　　　　　MR. BAINS:  Well the -- I think Ms. Loui or

6  Mr. Carlson talked to this.  The intention was saying

7  nothing is going to impact the subrogation rights other than

8  those ones that came before.  Those are the ones that are

9  being impacted.  Those are the ones that are being cut off.

10  　　　　　The intention was to keep the ones afterwards.

11  And I don't believe I'm misrepresenting Ms. Loui.

12  　　　　　THE COURT:  I got it.  I got it.  Okay, so I maybe

13  just misreading this.  Thank you.  I think I was misreading

14  it.  Let me try again.

15  　　　　(Pause in the proceedings.)

16  　　　　　THE COURT:  I was misreading it.  I think you're

17  right.  I'm going to withdraw my comment.

18  　　　　　MR. BAINS:  Thank you.

19  　　　　　THE COURT:  Thank you.  Sorry, Mr. Carlson, about

20  that diversion scary statement by me.  I got it wrong.

21  　　　　　MR. CARLSON:  No problem.

22  　　　　　THE COURT:  Let's go ahead.  Hold on.  Ms. Ryan,

23  welcome back.

24  　　　　　MS. RYAN:  Thank you, Judge Isgur.  Again for the

25  record this is Abigail Ryan on behalf of the Railroad

51

1   Commission of Texas.

2           I can conferred with my colleagues on the tax

3   bankruptcy side here at the Attorney General's Office, Your

4   Honor.  And the taxing entity referred to -- and I believe

5   it's paragraph 78 or 77 -- are ad valorem taxes.  And so, we

6   don't represent each and every separate county or school

7   district that has taxing issues.

8           What is -- that was handled by -- let me pull it

9   up there.  (Glitch in the audio) by a private law firm and

10  filed an objection and that firm is the Perdue, Brandon,

11  Fielder, Collins and Mott law firm.  It looks like Ellen

12  Connex filed an objection and this is Melissa Valdez also on

13  their signatory block.  So, this is out of the Attorney

14  General's purview for today.

15          THE COURT:  Thank you for the announcement.  I'm

16  taking, though, that the Attorney General -- perhaps because

17  it doesn't have an assignment, perhaps because it hasn't

18  been called on to act -- the Attorney General is not

19  asserting an objection to those paragraphs, right?

20          MS. RYAN:  Correct.  In fact, I just received an

21  email as you were speaking from the manager of the taxing

22  section of our office.  And he looked at the Order and he

23  doesn't have a problem with that provision of the proposed

24  Order or the one addressing Louisiana's taxing concerns.

25          And so that's from Mr. John Stern.  He's the

1  manager of the bankruptcy tax section of Attorney General's

2  Office.

3          THE COURT:  All right, thank you Ms. Ryan.

4          MS. RYAN:  Thank you, Your Honor.

5          THE COURT:  Mr. Zuber?

6      (Pause in the proceedings.)

7          THE COURT:  Mr. Zuber, if you're talking your line

8  is muted.

9          MR. ZUBER:  I'm sorry, Your Honor.  I was just

10 going to arise to address Your Honor's concern about

11 paragraph 99, but those have now been resolved.  So I don't

12 need to address at this point.

13         THE COURT:  Thank you.   Mr. Schaible?

14     (Pause in the proceedings.)

15         THE COURT:  Mr. Schaible?

16         MR. SCHAIBLE:  Your Honor, I was just going to ask

17 with respect to that paragraph, I think that everyone on

18 this call expectation and understanding is clear.  But later

19 in the Order, we have somewhat similar language and what we

20 did there was clarify that with respect to post-effective

21 date activities.  And I'm wondering if we could add -- if we

22 could add that in the paragraph?

23         Again, I think everyone understands the point, but

24 the language -- as Your Honor pointed out -- could actually

25 benefit from being clearer.

1          In other words, to the extent that subrogation
2    started -- to the extent that work on account of
3    pre-effective date activities occurs post-effective date and
4    therefore the subrogation could theoretically arise
5    post-effective date, but it's with regard to pre-effective
6    date obligations, credit bid Newco should not be on the hook
7    is your point.
8          And I'm wondering if just the addition of, you
9    know, with respect to post-effective date activities may
10   solve that ambiguity.
11         THE COURT:  Sounds like that makes some sense to
12   me.  Let's see if it causes anybody any problem because
13   you-all are going to have a bunch of discussions.
14         Ms. Loui, did you have a comment about that as
15   well?
16         MS. LOUI:  Yes, Your Honor.  I was actually going
17   to say exactly what Mr. Schaible said.  So I think we're in
18   agreement that we have some clarifying to do on the language
19   in paragraph 99.
20         THE COURT:  Thank you.  All right, let's move to
21   paragraph -- I'm sorry, go ahead.
22         MR. BAINS:  I'm sorry, Your Honor, Brandon Bains.
23   I don't want to belabor this point too much, but I do want
24   to make sure that I understand what Mr. Schaible is saying.
25         If he's simply saying that they want to make clear

54

1   that it's post-effective date activities, I think that's

2   consistent with everything we've talked about.  One concern

3   is he seemed to make a comment about pre-effective date

4   obligations and those are two different things.

5         I mean there's no dispute, obviously, all bonds

6   are pre-effective date otherwise we wouldn't be

7   participating in this joyous process.

8         So yeah we're going to have bonds that are

9   pre-effective date.  The question is going to become whether

10  the obligations under those bonds arise post-effective date,

11  therefore giving rise to the subrogation rights.

12        If we're all on the same page that that's fine,

13  okay.  I think that's what we're saying, but I want to make

14  sure I understood him correctly.

15        THE COURT:  Yeah, so look there's the argument

16  that I think we all know which is that the owner of property

17  has a continuing duty to clean it up.  And so one could

18  argue that post-effective date an obligation arose.  They're

19  saying that they shouldn't have liability for those.  I

20  think that's right.

21        On the other hand, there could be activity they

22  engage in post-effective date.  Let's say they go, you know,

23  disturb a pipe or they go install a new platform and for

24  that they should have liability.

25        And so that's what I think the purpose of

1  Mr. Schaible's comment was.  I don't know if that's

2  inconsistent with what you're saying.

3       MR. BAINS:  I think all I'm simply saying is yes

4  that's what you just captured is the understanding of the

5  provision.  But if there was some notion that because a bond

6  was issued pre-effective date that it never has any

7  subrogation rights I do not agree with that.

8       MR. SCHAIBLE:  No, that is not -- that is not what

9  I intended, sorry.  Literally the addition would be just the

10  words "on account of post-effective date activities" into

11  the existing language.  That's all.

12       MR. BAINS:  Understood, Mr. Schaible.  I think we

13  can look at that then.  We have to do it anyways.  Thank

14  you.

15       THE COURT:  Thank you.  All right, let's go to

16  paragraph 100.  Hold on, I've got somebody else.  Mr. Zuber

17  go ahead, your line is remaining active.  Mr. Zuber?

18       (Pause in the proceedings.)

19       THE COURT:  Mr. Balasko?

20       (Pause in the proceedings.)

21       THE COURT:  Mr. Balasko?

22       MR. BALASKO:  Thank you, Your Honor.  Zach Balasko

23  for the Department of the Interior.  As to paragraph 100 is

24  a very, very minor change.  I don't think the terms BOEM and

25  BSEE are defined anywhere in the Order or the Plan.  So,

1   somewhere either in the Plan or in this Order those terms

2   need to be defined.

3          THE COURT:  Except we all know them.

4          MR. BALASKO:  That's true, Your Honor, but

5   whoever's looking at this in the future might not.

6          THE COURT:  All right.  Mr. Carlson, where do you

7   want to go next?

8          MR. CARLSON:  Your Honor, the next I think nine

9   or ten paragraphs are the Chevron specific paragraphs.  I am

10  not aware of any objections.  But -- and they haven't

11  changed.  But would -- I guess Mr. Ripley may have something

12  to say about it, but from our perspective these are --

13         MR. RIPLEY:  Yes, Your Honor.  Ed Ripley, Your

14  Honor, Andrews and Myers on behalf of Chevron.  Yeah, we had

15  provided for example, in what's now paragraph 101.  We had

16  provided additional protective language that would go in at

17  the end.

18         That language comes from other parts of the exact

19  same order.  And so we don't understand why that would not

20  be included there.

21         And we've provided the redlines to Mr. Carlson and

22  his team.  I can -- I can even have it brought up if you

23  want to see it Judge.  But it is a literally a cut and paste

24  from other provisions in the exact same order -- in this

25  order.

1      And it's protective language and reservation of

2  rights language.

3      THE COURT:  Let me give Mr. Carlson a minute to

4  look at it.

5      (Pause in the proceedings.)

6      MR. CARLSON:  Yeah, I don't think we're agreed on

7  this language yet.  We're going to have to look at it.

8      MR. RIPLEY:  Right, I think it slightly changed in

9  your new paragraph 62.  But whatever that language is, we

10  just wanted to have the exact same language.  Wherever you

11  come down on that.

12      MR. CARLSON:  Okay, Mr. Ripley, it sounds like we

13  can work this out.

14      THE COURT:  Thank you.  Mr. Zuber?

15      MR. STURM:  Good afternoon, Judge.  This is Jay

16  Strum for Aspen, Berkley and Sirius Insurance companies.

17      I apologize, Judge.  I tried to raise my hand a

18  minute ago to speak on 99.  We were just a little bit

19  confused as to the ruling with respect to 99, Judge.

20      Our understanding and based on our negotiations

21  with the other parties is that what is being preserved is

22  any subrogation rights that arise post-effective date -- and

23  that would be for any operations by the credited purchaser.

24  You know, it's really geared toward if the credited

25  purchaser doesn't comply with the -- with their obligations

1  under the BOEM regulations and they don't do their

2  decommissioning, an surety has to step in and perform, then

3  the surety should be subrogated to -- as against the

4  credited purchaser.

5         That was what that was aimed at and Your Honor's

6  comments with respect to new wells, new platforms and I just

7  want to make sure it would be as to any obligee.

8         THE COURT:  I am overruling that objection now for

9  the fourth time.  The purchasers are not undertaking an

10  obligation to do error work other than as specifically

11  provided in the Plan.

12         And you are not subrogated to the right to sue

13  them for failure to do error work if that error work existed

14  prior to the effective date.  I understand that the sureties

15  massively object to that ruling, but that's the ruling.

16         MR. STRUM:  Understood Judge.  We appreciate the

17  clarity.

18         THE COURT:  Thank you.  All right, let's go back,

19  Mr. Carlson?

20         MR. CARLSON:  So from there, Your Honor, I would

21  go to paragraph 111 through --

22         MR. RIPLEY:  Actually we have some other Chevron

23  issues, Your Honor.

24         THE COURT:  Go ahead, Mr. Ripley.

25         MR. RIPLEY:  Judge, what is now paragraph 105, we