# EXHIBIT 1

## NAS BONDS

Bond No. 2196705

# PERFORMANCE BOND

### KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy Offshore LLC, with its principal office at One Briar Lake Plaza, Suite 1200, 2000 West Sam Houston Parkway South, Houston, Texas 77042, (hereinafter called the "Principal") and North American Specialty Insurance Company, with an office at 650 Elm Street, Manchester, New Hampshire 03101 (hereinafter called the "Surety"), are held and firmly bound unto Eni Petroleum US LLC and Eni US Operating Co. Inc. (collectively hereinafter called the "Obligee"), each with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, in the penal sum of Twenty Four Million Two Hundred and Fifteen Thousand and No/100 Dollars ($24,215,000.00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated effective December 1, 2015 (hereinafter called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, equipment, pipelines and personal property defined therein as the "Assets", together with, among other rights and obligations, all Plugging, Abandonment and Decommissioning Obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the termination of the WC 130 Lease prior to the date hereof or the subsequent termination of any or all of the other oil and gas leases described on Exhibit A-1 to the Purchase Agreement, whether by operation of law or otherwise, this Performance Bond (the "Bond") shall remain in full force and effect until all Plugging, Abandonment and Decommissioning Obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee at Closing a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

IndemCo

**NOW, THEREFORE,** the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the Plugging, Abandonment and Decommissioning Obligations associated with the Assets identified on Exhibit A to this Bond.

**PROVIDED, HOWEVER,** the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation by the Principal to the Surety of a bond reduction rider (in substantially the same form attached as Exhibit H to the Purchase Agreement) executed and acknowledged by the Principal and the Obligee; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider in accordance with the terms and conditions of the Purchase Agreement, the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following:

(1) presentation by the Principal to the Surety of a letter from an officer of Principal certifying (a) that, on or before the sixty-first (61st) day prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a site clearance verification for the applicable Lease(s) indicating that all Plugging, Abandonment and Decommissioning Obligations with respect to such Lease(s) had been completed, (b) that, at no time prior to the presentation of such letter to the Surety, has Fieldwood or any Affiliate of Fieldwood received notice (whether written, verbal or otherwise) from any Governmental Authority indicating that further action(s) are required to complete all such Plugging, Abandonment and Decommissioning Obligations, (c) that the Principal notified the Obligee of the Principal's entitlement to the reduction in the amount of the Performance Bond in accordance with Section 7.18(d) of the Purchase Agreement and (d) that the Obligee failed to execute and deliver to Principal a bond reduction rider in accordance with Section 7.18(d) of the Purchase Agreement;

(2) presentation by the Principal to the Surety of a letter from an officer of Principal certifying (a) that, on or before the thirty-first (31st) day prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all Plugging, Abandonment and Decommissioning Obligations for the applicable Lease(s) were completed, (b) that the Principal notified the Obligee of the Principal's entitlement to the reduction in the amount of the Performance Bond in accordance with Section 7.18(d) of the Purchase Agreement and (c) that the Obligee failed to execute and deliver to Principal a bond reduction rider in accordance with Section 7.18(d) of the Purchase Agreement; or

(3) presentation by the Principal to the Surety of a letter from an officer of Principal (a) certifying (i) that, on or before the thirty-first (31st) day prior to the presentation of such letter to the Surety, the Principal posted a supplemental bond(s) to the BOEM for the applicable Lease(s) and/or Rights of Way, (ii) that the Principal notified the Obligee of the Principal's entitlement to the reduction in the amount of the Performance Bond in accordance with Section 7.18(c)(ii)(A) of the Purchase Agreement and (iii) that the Obligee failed to execute and deliver to Principal a bond reduction rider in accordance with Section 7.18(c)(ii)(A) of the Purchase Agreement, and (b) enclosing a copy of such supplemental bond(s) posted by Purchaser to the BOEM (or any successor regulatory authorities) pursuant to Section 7.18(c)(ii)(A) of the Purchase Agreement.

IndemCo

Bond No. 2196705

Principal and the Surety agree that, notwithstanding the termination of the WC 130 Lease prior to the date hereof or the subsequent termination of any or all of the other Leases described on Exhibit A-1 to the Purchase Agreement, whether by operation of law or otherwise, this Bond shall remain in full force and effect until all Plugging, Abandonment and Decommissioning Obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

**PROVIDED, FURTHER THAT,** including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the Plugging, Abandonment and Decommissioning Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety for claims under this Bond, whether one or more, concurrent or otherwise, shall be the Penal Sum reduced, as applicable, as provided for herein.

**FURTHERMORE,** it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Upon any failure by the Principal to carry out any or all of the Plugging, Abandonment and Decommissioning Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such Plugging, Abandonment and Decommissioning Obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety separately at their last known respective addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted Plugging, Abandonment and Decommissioning Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

IndemCo

Bond No. 2196705

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted Plugging, Abandonment and Decommissioning Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Plugging, Abandonment and Decommissioning Obligations, the Obligee shall deliver to Surety a statement (the "Final Cost Statement") of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance of such Defaulted Plugging, Abandonment and Decommissioning Obligations).   If such costs and expenses, in the aggregate (the "Aggregate Cost Amount"), exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the "Surety Payment Amount"), the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND ITS AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR**

IndemCo

Bond No. 2196705

OBLIGEE'S CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in the form of a bond substantially similar to the form hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-,XIII" in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

IndemCo

Bond No. 2196705

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Fieldwood Energy Offshore LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: John H. Smith

Eni Petroleum US LLC
Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700
Houston, Texas 77002
Attention: Gary F. Clifford

North American Specialty Insurance Company
650 Elm Street
Manchester, New Hampshire 03101
Attention: Erik Janssens

(Remainder of page intentionally left blank)

IndemCo

Bond No. 2196705

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on December 1, 2015, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESSES:                                    *Fieldwood Energy Offshore LLC*

                                              Principal

_____                       By: _____
_____                       (Name/Title)


WITNESSES:                                    *North American Specialty Insurance Company*

_Wendy E Pierson_                              Surety
_Phil E Nale_                                  By: *Michele K. Tyson*
                                              Michele K. Tyson, Attorney-in-Fact


WITNESSES:                                    *Eni Petroleum US LLC*
                                              *Eni US Operating Co. Inc.*

                                              Obligee

_____                       By: _____
_____                       (Name/Title)


Page 7 of 8                                    **IndemCo**

Bond No. 2196705

<u>Exhibit A</u>

Attached to and made a part of Bond No. 2196705 issued by North American Specialty
Insurance Company on behalf of Fieldwood Energy Offshore LLC

| Area/Block | Lease Number |
|---|---|
| Galveston 151 | OCS-G 15740 |
| Ship Shoal 246 | OCS-G 1027 |
| Ship Shoal 247 | OCS-G 1028 |
| Ship Shoal 248 | OCS-G 1029 |
| Ship Shoal 249 | OCS-G 1030 |
| Vermilion 78 | OCS-G 4421 |
| Vermilion 313 | OCS-G 1172 |
| West Cameron 72 | OCS-G 23735 |
| West Cameron 100 | OCS-G 22510 |
| West Cameron 130 | OCS-G 12761 |

IndemCo

## NAS SURETY GROUP

**NORTH AMERICAN SPECIALTY INSURANCE COMPANY**
**WASHINGTON INTERNATIONAL INSURANCE COMPANY**
**WESTPORT INSURANCE CORPORATION**

### GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire and Washington International Insurance Company a corporation organized and existing under the laws of the State of New Hampshire and having its principal office in the City of Schaumburg, Illinois, and Westport Insurance Corporation, organized under the laws of the State of Missouri, and having its principal office in the City of Overland Park, Kansas each does hereby make, constitute and appoint:

**EDWIN H. FRANK, III, W. RUSSELL BROWN, JR., and MICHELE K. TYSON**

JOINTLY OR SEVERALLY

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of: **ONE HUNDRED TWENTY FIVE MILLION ($125,000,000.00) DOLLARS**

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolutions adopted by the Boards of Directors of North American Specialty Insurance Company and Washington International Insurance Company at meetings duly called and held on March 24, 2000 and Westport Insurance Corporation by written consent of its Executive Committee dated July 18, 2011.

"RESOLVED, that any two of the President, any Senior Vice President, any Vice President, any Assistant Vice President, the Secretary or any Assistant Secretary be, and each or any of them hereby is authorized to execute a Power of Attorney qualifying the attorney named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of surety, and that each or any of them hereby is authorized to attest to the execution of any such Power of Attorney and to attach therein the seal of the Company; and it is

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be binding upon the Company when so affixed and in the future with regard to any bond, undertaking or contract of surety to which it is attached."

By _____
Steven P. Anderson, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

By _____
Mike A. Ito, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

IN WITNESS WHEREOF, North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation have caused their official seals to be hereunto affixed, and these presents to be signed by their authorized officers this this ___28th___ day of ___January___, 20 _15_.

**North American Specialty Insurance Company**
**Washington International Insurance Company**
**Westport Insurance Corporation**

State of Illinois
County of Cook          ss:

On this 28th day of ___January___, 20 _15_, before me, a Notary Public personally appeared ___Steven P. Anderson___, Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation and ___Michael A. Ito___, Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation, personally known to me, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as officers of and acknowledged said instrument to be the voluntary act and deed of their respective companies.

OFFICIAL SEAL
M KENNY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/04/2017

_____
M. Kenny, Notary Public

I, _Jeffrey Goldberg_, the duly elected Vice President and Assistant Secretary of North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney given by said North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation which is still in full force and effect.

IN WITNESS WHEREOF, I have set my hand and affixed the seals of the Companies this _1st_ day of ___December___, 20 _15_.

Jeffrey Goldberg, Vice President & Assistant Secretary of Washington International Insurance Company &
North American Specialty Insurance Company & Vice President & Assistant Secretary of Westport Insurance Corporation

Exhibit A

## REDUCTION RIDER

Rider No. 1

To be attached and form part of **Bond No. 2196705** issued by North American Specialty Insurance Company (as Surety), effective December 1, 2015

| | |
|---|---|
| In the amount of: | $24,215,000 |
| On behalf of: | Fieldwood Energy Offshore LLC (as Principal) |
| In favor of: | Eni Petroleum US LLC and Eni US Operating Co. Inc. (collectively, as Obligee) |

In consideration of the premium charged for the above bond, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

This Bond amount shall be decreased by $4,265,000.

**Total Revised Bond Amount is Now:**

**Nineteen Million and Nine Hundred and Fifty Thousand U.S. Dollars and NO/100 --- Dollars ($19,950,000).**

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the 11th day of February 2016.

Signed, sealed and dated the   8th day of March, 2016.

**Fieldwood Energy Offshore LLC**

By: _____
Name: John H. Smith
Title: Senior Vice President

**North American Specialty Insurance Company**

By: _____
Name: Michele K. Tyson
Title: Attorney-in-Fact

Acknowledged By:

**Eni Petroleum US LLC**

By: _____
Name: Fabrizio Trilli
Title: President & CEO

**Eni US Operating Co. Inc.**

By: _____
Name: Fabrizio Trilli
Title: President & CEO

Bond No. 2196702

# PERFORMANCE BOND

## KNOW ALL MEN BY THESE PRESENTS:

**THAT** we, Fieldwood Energy Offshore LLC, with its principal office at One BriarLake Plaza, Suite 1200, 2000 West Sam Houston Parkway South, Houston, Texas 77042, (hereinafter called the "Principal") and North American Specialty Insurance Company, with an office at 650 Elm Street, Manchester, New Hampshire 06067 (hereinafter called the "Surety"), are held and firmly bound unto Chevron U.S.A. Inc. and Union Oil Company of California (collectively hereinafter called the "Obligee"), both with an office at 1400 Smith Street, Houston, Texas 77002, in the penal sum of Eighteen Million Six Hundred Thousand and No/100 Dollars ($18,600,000.00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below).

**WHEREAS**, Principal and Obligee have entered into that certain Asset Sale and Purchase Agreement effective January 1, 2015 (hereinafter called the "Agreement"), which Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, equipment, pipelines and personal property described in the Agreement as the "Assets"; and

**WHEREAS**, the Principal and the Surety agree that notwithstanding the subsequent termination of the leases described on Exhibit A to the Agreement, whether by operation of law or otherwise, this Performance Bond (the "Bond") shall remain in full force and effect until all Decommissioning Obligations of Principal under the Agreement for the Assets identified on Exhibit A of this Bond have been truly and faithfully performed and discharged; and

**WHEREAS**, the Principal has promised to deliver to the Obligee this Bond executed by Principal and Surety, at Closing as defined in and contemplated by the Agreement; and

**WHEREAS**, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

**WHEREAS**, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

IndemCo

Bond No. 2196702

**NOW, THEREFORE,** the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with, the obligations in the Agreement to timely and fully satisfy the Decommissioning Obligations (as defined in the Agreement) associated with the Assets identified on Exhibit A of this Bond, which include the obligation to plug and abandon, and re-abandon as necessary all Wells, remove all Facilities and restore the surface associated with the Assets including NORM clean up in accordance with all current and future requirements of applicable federal and state law or any agency, authority or body having jurisdiction or authority over the Assets or any operations thereon, and in accordance with all leases and the Agreement.

**PROVIDED, HOWEVER,** anytime on or after the date of this Bond, whenever the Principal shall present to Obligee the Regulatory Package (as defined in the Agreement) that any incremental part of the Decommissioning Obligations associated with the Assets identified on Schedule 1 of this Bond has been completed, as provided in Section 18.4 (C) of the Agreement, then Obligee shall notify Surety in writing that the Penal Sum should be permanently reduced by an amount as identified on Exhibit A of this Bond; and whenever Principal shall have presented to Obligee with a Regulatory Package that all of the Decommissioning Obligations associated with the Assets identified on Exhibit A of this Bond have been completed, then Obligee shall notify Surety in writing that this obligation is null and void; otherwise, it shall remain in full force and effect in the amount as provided.

Principal and the Surety agree that notwithstanding the subsequent termination of the Lease subject to the Agreement, whether by operation or law or otherwise, this Bond shall remain in full force and effect until all Decommissioning Obligations of the Principal under the Agreement have been truly and faithfully performed and discharged or this Bond has been reduced or replaced in accordance with the terms hereof and the Agreement.

**PROVIDED, FURTHER THAT,** including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the obligation described above, or to the extent the Obligee may incur any attorney's fee or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum. However, it is understood that in the event Surety decides for itself to commence or cause to be commenced work to satisfy defaulted Obligations of Principal the maximum obligation of the Surety can exceed the Penal Sum.

**FURTHERMORE,** it is agreed that the Surety shall not be liable for any provisions of the Agreement or specifications respecting the procurement of or coverages provided by any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out its obligations as required in the Agreement to perform the Decommissioning Obligations, as defined in the Agreement and the Obligee has presented to the Surety a written notice that the Principal is in default of its obligation under the

IndemCo

Bond No. 2196702

terms of the Agreement, and such condition has persisted for forty-five (45) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days, formally elect by notice to Obligee to either: (1) Pay to the Obligee an amount equal to the actual charges for performing the Decommissioning Obligations, within twenty (20) days of receipt of Obligee's invoice, which amount shall be up to, but not exceeding the Penal Sum, and the Penal Sum of this Bond shall be permanently reduced by the amount of such payment: or (2) Commence, or cause to be commenced, the necessary operations to perform the Decommissioning Obligations within twenty (20) days of the date of its formal election.

Notwithstanding the foregoing in the above paragraph, should Principal's default or failure to perform the Decommissioning Obligations pose a safety or environmental threat, as determined in the sole but reasonable discretion of Obligee, then Surety agrees to elect to do either (1) or (2) above within 48 hours (inclusive of weekends and holidays) of being presented written notice by Obligee that Principal is in default and such default poses a safety or environmental threat. Failure of Surety to make an election in the time period provided shall be deemed an election to do (1). If Surety elects to do (1) then Surety shall pay to Obligee an amount equal to the actual charges to remove the threat, within twenty (20) days of receipt of Obligee's invoice, which amount shall be up to, but not exceeding, the Penal Sum (as such sum may have been previously reduced pursuant to this Bond) and the Penal Sum shall be permanently reduced by the amount of such payment. If Surety elects to do (2) then Surety will fully protect the interest of Obligee and the respective lessors in its operations and will diligently endeavor to remove the threat within five (5) days, unless prudence demands more prompt action.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, defaulted Decommissioning Obligations, then such operations shall continue until such time as the obligations set forth herein have been met, thereby reducing the Penal Sum by an amount equal to the actual charges for performing the Decommissioning Obligations, within twenty (20) days of receipt of Surety's invoice plus a reasonable time for Obligee to verify the proper performance of such operations.

In the event Surety undertakes the performance of work necessary to satisfy the defaulted Decommissioning Obligations of Principal, then Surety further agrees, as part of the consideration hereunder, that Surety shall fully defend, protect, indemnify, hold harmless, and render whole Obligee from and against each and every claim, demand or cause of action, and any liability, cost, expense (including, but not limited to, reasonable attorneys' fees), or claims with respect to damage or loss in connection therewith, which may be made or asserted by Surety, its agents, successors or assigns, or by any third party or parties (including, but not limited to, governmental agencies) on account of property or environmental damage in connection with Surety's performance of work, and any claims and/or demands associated therewith, caused by, arising out of, or incidental to the past, present or future condition or state of repair of said Assets, or the ownership and use thereof, under this Bond, howsoever occurring, including, without limitation, whether such claims, demands, damages, losses and liabilities, with or without fault, were caused by Surety's sole negligence or contributory negligence, and/or Obligee's contributory negligence, or imposed on said parties or others under any theory of strict liability by operation of law, or any combination thereof, or any other theory of law prior to, at

IndemCo

Bond No. 2196702

the time of, or subsequent to the effective date hereof. Such indemnification by Surety shall not be limited to the original or any amended Penal Sum of this Bond.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by Obligee, whichever is later. Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Agreement or its Exhibits shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Agreement or of the leases included in the Assets by the Principal, its successors and assigns, and no delay, neglect, or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if Principal chooses to assign any or all of the Assets and if the Principal wants its assignee to post replacement security with the Obligee covering the assigned Assets in order to have this Bond, in whole or in part released by Obligee to Surety, then Principal shall so notify Obligee and Surety and its assignee shall provide Obligee with its proposed replacement security. Obligee shall determine if said replacement security is acceptable and in the event such security covers some but not all of the Assets under the Agreement then Obligee shall also determine if such replacement security properly covers the assigned Assets and their amount. Obligee shall notify the Principal, its assignee and Surety if such replacement security is acceptable or not. If acceptable, Obligee shall release this Bond as to those Assets that have been properly covered by the replacement security within thirty (30) days of Obligee's acceptance of such replacement security. Obligee reserves the right to limit the number of partial assignments to subsequent assignees for which it will allow replacement security to be provided.
No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein, then this obligation shall become null and void and of no effect.

The Obligee will issue a release of this Bond within a reasonable time period, but in no instance longer than thirty (30) days after receipt of satisfactory evidence as provided in the Agreement to Obligee of the Principal's full and faithful performance and compliance with its Decommissioning Obligations under the Agreement.

Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminate in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are

IndemCo

Bond No. 2196702

continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Fieldwood Energy Offshore LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: John H. Smith

Chevron U.S.A. Inc. and
Union Oil Company of California
100 Northpark Blvd.
Covington, LA 70433
Attention: Land Manager

North American Specialty Insurance Company
Attention: Surety Bond Department
650 Elm Street
Manchester, New Hampshire 03101

(Remainder of page intentionally left blank)

IndemCo

Bond No. 2196702

**IN WITNESS WHEREOF**, the above bound parties have executed this instrument to be effective on January 1, 2015, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESSES:

*Fieldwood Energy Offshore, LLC*
Principal

By: _____
(Name/Title)

WITNESSES:

*North American Specialty Insurance Company*
Surety

By: *Michele K. Tyson*
Michele K. Tyson, Attorney-in-Fact
(Name/Title)

WITNESSES:

*Chevron  U.S.A. Inc.*
1400 Smith Street
Houston, Texas 77002

Obligee

By: _____
(Name/Title)

IndemCo

Bond No. 2196702

Attached to and made a part of Bond No. 2196703 issued by North American Specialty
Insurance Company on behalf of Fieldwood Energy Offshore LLC

**DECOMMISSIONING ALLOCATION**

| LEASE | BLOCK | Bond Allocation by Field |
|-------|-------|--------------------------|
| OCS-G 32267 | CA 42 | $0 |
| OCS-G 32268 | CA 43 | $0 |
| OCS-G 1522 | SS 206 | $1,900,000 |
| OCS-G 1523 | SS 207 | |
| OCS-G 2588 | SM 136 | |
| OCS-G 2592 | SM 149 | |
| OCS-G 16325 | SM 150 | $2,400,000 |
| OCS-G 2589 | SM 137 | |
| OCS-G 2282 | SM 132 | |
| OCS-G 2665 | BA A133 | $1,400,000 |
| OCS-G 1757 | BA A105 | $1,700,000 |
| OCS-G 2319 | EI 342 | $800,000 |
| OCS 820 | SS 169 | $1,700,000 |
| OCS 126 | GI 39 | |
| OCS 127 | GI 39 | |
| OCS 128 | GI 40 | |
| OCS 131 | GI 42 | |
| OCS 175 | GI 43 | |
| OCS 176 | GI 44 | |
| OCS 132 | GI 46 | |
| OCS 133 | GI 47 | |
| OCS 134 | GI 48 | |
| OCS 177 | GI 52 | |
| OCS 179 | WD 67 | |
| OCS 180 | WD 68 | $6,200,000 |
| OCS 181 | WD 69 | |
| OCS 182 | WD 70 | |
| OCS 838 | WD 71 | |
| OCS 839 | WD 94 | |
| OCS-G 1497 | WD 95 | |
| OCS-G 1498 | WD 96 | |
| OCS-G 1580 | GI 32 | |
| OCS 174 | GI 32 | |
| OCS 129 | GI 41 | |
| OCS 130 | GI 41 | |
| OCS-G 2115 | EI 330 | $0 |
| OCS-G 1198 | SM 66 | $2,500,000 |
| OCS-G 1609 | SP 61 | $0 |
| | Total: | $18,600,000 |

**IndemCo**

**NAS SURETY GROUP**

NORTH AMERICAN SPECIALTY INSURANCE COMPANY
WASHINGTON INTERNATIONAL INSURANCE COMPANY
WESTPORT INSURANCE  CORPORATION

### GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire and Washington International Insurance Company a corporation organized and existing under the laws of the State of New Hampshire and having its principal office in the City of Schaumburg, Illinois, and Westport Insurance Corporation, organized under the laws of the State of Missouri, and having its principal office in the City of Overland Park, Kansas each does hereby make, constitute and appoint:

EDWIN H. FRANK, III, W. RUSSELL BROWN, JR., and MICHELE K. TYSON

JOINTLY OR SEVERALLY

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of:

ONE HUNDRED TWENTY FIVE MILLION ($125,000,000.00) DOLLARS

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolutions adopted by the Boards of Directors of North American Specialty Insurance Company and Washington International Insurance Company at meetings duly called and held on March 24, 2000 and Westport Insurance Corporation by written consent of its Executive Committee dated July 18, 2011.

"RESOLVED, that any two of the President, any Senior Vice President, any Vice President, any Assistant Vice President, the Secretary or any Assistant Secretary be, and each or any of them hereby is authorized to execute a Power of Attorney qualifying the attorney named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of surety, and that each or any of them hereby is authorized to attest to the execution of any such Power of Attorney and to attach therein the seal of the Company;  and it is

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be binding upon the Company when so affixed and in the future with regard to any bond, undertaking or contract of surety to which it is attached."





By _____
Steven P. Anderson, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

By _____
Mike A. Ito, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

IN WITNESS WHEREOF, North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation have caused their official seals to be hereunto affixed, and these presents to be signed by their authorized officers this this   28th   day of     January    , 20  15  .

North American Specialty Insurance Company
Washington International Insurance Company
Westport Insurance Corporation

State of Illinois
County of Cook          ss:

On this 28th day of _____January_____, 20  15, before me, a Notary Public personally appeared     Steven P. Anderson    , Senior Vice President  of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation and  Michael A. Ito  Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation, personally known to me, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as officers of and acknowledged said instrument to be the voluntary act and deed of their respective companies.

OFFICIAL SEAL
M KENNY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/04/2017

_____
M. Kenny, Notary Public

I,  Jeffrey Goldberg   , the duly elected  Vice President and Assistant Secretary  of North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney given by said North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation which is still in full force and effect.

IN WITNESS WHEREOF, I have set my hand and affixed the seals of the Companies this  1st  day of     January    , 20  15 .

_____
Jeffrey Goldberg, Vice President & Assistant Secretary of Washington International Insurance Company &
North American Specialty Insurance Company & Vice President & Assistant Secretary of Westport Insurance Corporation

# U.S. DEPARTMENT OF THE INTERIOR
## Bureau of Ocean Energy Management

Bond No. 2196703

OCS Lease/RUE/ROW No. OCS-G 2883

Bond Type Supplemental

Amount $450,000.00

## OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

**The Surety is the entity Guaranteeing Performance.**

Name of Surety: North American Specialty Insurance Company

Mailing Address: 650 Elm Street

Manchester, New Hampshire 03101

If a Corporation, Incorporated in the State of: New Hampshire ; County or Parish of: Hillsborough

☑Check here if Surety is certified by U.S. Treasury as an acceptable surety on Federal Bonds and listed in the current U.S. Treasury Circular No. 570.

**The Principal is the Lessee or Designated Operator for Whom the Bond is Issued.**

Name of Principal: Fieldwood Energy Offshore LLC

Mailing Address: 2000 West Sam Houston Parkway South, Suite 1200

Houston, Texas 77042

Schedule A, the lease/RUE/ROW covered by this bond, is composed of: (add legal description)

☑The following lease/RUE/ROW:  All of Block 127, South Marsh Island Area, South Addition, as shown on OCS Louisiana Leasing Map, LA3C.

In addition to the Obligations of the Principal during the period of liability of this bond, the Surety also accepts the following Obligations: (Check one)

☑No Obligations other than the Obligations of the Principal during the period of liability of this bond.

☐All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond.

☐All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond with the following exceptions or limitations (use an attached rider).

| Definitions | A **Principal** includes an entity holding an interest in the oil & gas lease in one or more of the following ways:  (1) as an approved record title owner of all or a portion of the lease, (2) as an approved operating rights owner of all or a portion of the lease, or (3) as a designated operator or designated agent in all or a portion of the lease. |
|---|---|
| For the purposes of this document: | A **Lessee** includes an approved record title owner of all or a portion of the lease or an approved operating rights owner of all or a portion of the lease. |
| | An **Obligation** includes any obligation arising from any regulations of the Department of the Interior or any Instrument issued, maintained, or approved under the OCS Lands Act (43 U.S.C. 1331 et seq.). |
| | An **Instrument** includes individually or collectively any lease, operating agreement, designation of operator or agent, storage agreement, compensatory royalty agreement, transfer of operating rights, permit, license, or easement, whereunder the Principal has the right, privilege, or license to conduct operations on the OCS. |
| | A **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency. |

**By signing below, the Principal verifies that the information above is correct and agrees to the following:**
The Principal as agent on behalf of all lessees, operating rights owners, and operators will fulfill all Obligations for the entire leasehold and to the same extent as though the Principal were the sole lessee for the lease/RUE/ROW in Schedule A.

**By signing below, the Surety verifies that the information above is correct and agrees to the following:**
1. The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Bureau of Ocean Energy Management (BOEM), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations.
2. The Surety will be responsible for all Obligations of the Principal in existence at the time this document becomes effective and all Obligations that accrue after that date and until all Obligations are met or until the Regional Director terminates the period of liability of this bond.
3. If the Regional Director terminates the period of liability of this bond, the Surety will remain responsible for Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the bond in favor of the Surety.
4. If this bond is cancelled, the Regional Director may reinstate this bond as if no cancellation had occurred if any payment of any Obligation of the Principal(s) is rescinded or must be restored pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has paid its financial Obligations or performed the other

BOEM-2028A (March 2014)  Previous Editions are Obsolete.                                      Page 2 of 3

Obligations of the lease in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the instrument.

5. The Surety waives any right of notice of this bond taking effect and agrees that this bond will take effect upon delivery to BOEM.

6. The Surety's Obligations will remain in full force and effect, even if:
   (a) Any person assigns all or part of any interest in an Instrument covered by this document.
   (b) Any person modifies an Instrument or Obligation under an Instrument in any manner including modifications that result from a commitment to a unit, cooperative, communitization, or storage agreement; suspension of operations or production; suspension or changes in rental, minimum royalty, or royalties; modification of regulations or interpretations of regulations; creation or modification of compensatory royalty agreements or payments; or creation of any mortgage, pledge, or other grant of security interest in the Instruments.
   (c) Any person, event, or condition terminates any Instrument covered by this bond, whether the termination is by operation of law or otherwise.
   (d) BOEM takes or fails to take any action in enforcing, as against any party to the Instrument, the payment of rentals or royalties or the performance of any other covenant, condition or agreement of the lease, or giving notice of or making demand with respect to such nonperformance.
   (e) The Surety suffers any loss by reason of any law limiting, qualifying, or discharging the Principal's Obligation.

7. The Surety agrees to be bound under this bond as to the interests in any Instrument retained by the Principal when BOEM approves the transfer of any or all of the Instruments or interests in the Instruments.

8. In the event of any default under a lease, the Surety must provide payment of all of the cost of the Obligations of the Principal upon demand by BOEM.

9. If BOEM decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not BOEM joins the lessees or any other party.

10. In the event there is more than one Surety for the Principal's performance of the Obligations, as to any Instrument, the Surety's Obligation and liability under this bond is on a "solidary" or "joint and several" basis along with other guarantors or sureties.

11. The Surety agrees to give prompt notice to BOEM and the Principal of any action filed alleging the insolvency or bankruptcy of the Surety or the Principal, or alleging any violation that would result in suspension or revocation of the Surety's charter or license to do business.

12. The Surety's Obligation and liabilities under this Bond are binding upon the Surety's successors and assigns. Nothing in this document permits assignment of the Surety's Obligation without the written consent of BOEM.

13. The Surety hereby waives any defenses to liability on this bond based on an unauthorized Principal signature.

---

| | |
|---|---|
| North American Specialty Insurance Company | Fieldwood Energy LLC |
| Name of Surety | Name of Principal |
| *[signature]* | |
| Signature of Person Executing for Surety | Signature of Person Executing for Principal |
| Edwin H. Frank, III, Attorney-in-Fact | |
| Name and Title (typed or printed) | Name and Title (typed or printed) |
| 650 Elm Street | 2000 West Sam Houston Parkway South, Suite 1200 |
| Business Address | Business Address |
| Manchester, New Hampshire 03101 | Houston, Texas 77042 |
| Business Address | Business Address |

Signed on this __10th__ day of __June__, 20 __15__, in the State of __Texas__, in the presence of:

| | |
|---|---|
| *Wendy E. Pierson [signature]* | |
| Signature of Witness | Signature of Witness |
| Wendy E. Pierson | |
| Name (typed or printed) | Name (typed or printed) |
| 777 Post Oak Boulevard, Suite 330 | |
| Address | Address |
| Houston, Texas 77056 | |
| Address | Address |

*Note:* The person executing for the Surety must attach a corporate resolution and power of attorney stating his or her authority to undertake this Obligation, pursuant to the acts of the corporate board of directors and the laws of the State of incorporation. The corporation executing this bond as Surety and the Principal, if a corporation, must affix their corporate seals.

**BOEM-2028A (March 2014)**                                                                                   **Page 3 of 3**
Previous Editions are Obsolete.

U.S. Department of the Interior
Bureau of Ocean Energy Management

OMB Control No.:  1010-0006
Expiration Date:  3/31/17

Cover Page
# OUTER CONTINENTAL SHELF (OCS)
# MINERAL LESSEE'S OR OPERATOR'S
# SUPPLEMENTAL BOND

## Form BOEM-2028A

**This form dated March 2014 supersedes all previous versions of form BOEM-2028A**

**Paperwork Reduction Act of 1995 (PRA) Statement:** The PRA (44 U.S.C. 3501 *et seq.*) requires us to inform you that BOEM collects this information to hold the surety liable for the obligations and liability of the Principal (lessee or operator). Responses are mandatory. No proprietary information is collected. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Comments regarding the burden estimate or any other aspect of this form should be directed to the Information Collection Clearance Officer, Bureau of Ocean Energy Management, 381 Elden Street, Herndon, VA 20170.

**NAS SURETY GROUP**

NORTH AMERICAN SPECIALTY INSURANCE COMPANY
WASHINGTON INTERNATIONAL INSURANCE COMPANY
WESTPORT INSURANCE CORPORATION

## GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire and Washington International Insurance Company a corporation organized and existing under the laws of the State of New Hampshire and having its principal office in the City of Schaumburg, Illinois, and Westport Insurance Corporation, organized under the laws of the State of Missouri, and having its principal office in the City of Overland Park, Kansas each does hereby make, constitute and appoint:

EDWIN H. FRANK, III, W. RUSSELL BROWN, JR., and MICHELE K. TYSON

JOINTLY OR SEVERALLY

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of: ONE HUNDRED TWENTY FIVE MILLION ($125,000,000.00) DOLLARS

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolutions adopted by the Boards of Directors of North American Specialty Insurance Company and Washington International Insurance Company at meetings duly called and held on March 24, 2000 and Westport Insurance Corporation by written consent of its Executive Committee dated July 18, 2011.

"RESOLVED, that any two of the President, any Senior Vice President, any Vice President, any Assistant Vice President, the Secretary or any Assistant Secretary be, and each or any of them hereby is authorized to execute a Power of Attorney qualifying the attorney named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of surety, and that each or any of them hereby is authorized to attest to the execution of any such Power of Attorney and to attach therein the seal of the Company; and it is

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be binding upon the Company when so affixed and in the future with regard to any bond, undertaking or contract of surety to which it is attached."

By _____
Steven P. Anderson, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

By _____
Mike A. Ito, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

IN WITNESS WHEREOF, North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation have caused their official seals to be hereunto affixed, and these presents to be signed by their authorized officers this this __28th__ day of __January__, 20 _15_.

**North American Specialty Insurance Company**
**Washington International Insurance Company**
**Westport Insurance Corporation**

State of Illinois
County of Cook      ss:

On this 28th day of _____January_____, 20 _15_, before me, a Notary Public personally appeared ___Steven P. Anderson___, Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation and _Michael A. Ito_ Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation, personally known to me, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as officers of and acknowledged said instrument to be the voluntary act and deed of their respective companies.

OFFICIAL SEAL
M KENNY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/04/2017

_____
M. Kenny, Notary Public

I, _Jeffrey Goldberg_, the duly elected Vice President and Assistant Secretary of North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney given by said North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation which is still in full force and effect.

IN WITNESS WHEREOF, I have set my hand and affixed the seals of the Companies this 10th day of _____June_____, 20 _15_.

_____
Jeffrey Goldberg, Vice President & Assistant Secretary of Washington International Insurance Company &
North American Specialty Insurance Company & Vice President & Assistant Secretary of Westport Insurance Corporation

# EXHIBIT 2

## NAS REQUEST TO CLARIFY

## DKT. NO. 1640

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re:                                      Chapter 11

FIELDWOOD ENERGY LLC., *et al*.,            Case No. 20-33948 (MI)

                        Debtors.[1]         (Jointly Administered)

## REQUEST OF NORTH AMERICAN SPECIALTY INSURANCE FOR CLARIFICATION OF DEBTORS' RESPONSE TO OBJECTIONS TO CONFIRMATION OF PLAN OR TO STRIKE THAT RESPONSE

North American Specialty Insurance ("NAS") requests the Debtors clarify their responses to NAS' objections to confirmation or, absent clarification, for the Court to strike the responses that are unresponsive [Document 1561 p. 3].

### Debtors Skirt Directly Responding to Objections Related to the Post-Confirmation Existence of Pre-Petition Surety Bonds

1.      The Debtors refuse to say outright whether it is their position that surety bonds issued for decommissioning obligations pre-petition, naming Fieldwood Debtors as principals, exist post-confirmation.  The question for which NAS sought an answer in its objections is: do the pre-petition surety bonds survive the plan and exist post-confirmation, such, that if there is a post-confirmation default of a decommissioning obligation the obligees can draw on the bonds to cure that default.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

2.      One would assume the Debtors want the bonds to exist post-confirmation as they filed an adversary complaint against the Apache sureties to assure that their bonds survive in some form.  This is perhaps one of the most bizarre legal maneuvers considering that the Debtors are co-obligors with the sureties on each bond and are parties to the bonds.  It is not every day that a party effectively sues itself. One could consider Debtors' complaint to be admission that they are in default pre-petition on their bonds across the board.

3.      Apparently contrary to the Debtors' position in the adversary proceeding that there exists a present time basis to call on the bonds, the Debtors have claimed the sureties' claims are all contingent, which should mean the Debtors are saying there are no pre-petition defaults.  If there are defaults, therefore, they must occur post-confirmation. They also state the claims for indemnification are pre-petition unsecured claims that are discharged under the Plan, presumably subject to complete disallowance given Debtors' position these claims are contingent claims.

### Objection and Response to Objection

4.      The objections fail to address at all are:

> *9.      How the Plan treats surety credit remains unclear.  All indications from the documents suggest the Debtors want to treat the surety bonds as cash demand instruments that are there for the benefit of the Debtors. A bond, however, secures the debt or default of the principal. Restatement of the Law, Suretyship & Guaranty § 1 (1996).  The event that triggers the ability of the obligees to make demand on the bonds is a default by the principal.  The Debtors are parties to the bonds, such, that if the Debtors bring a suit or demand on bonds on which they are principals, they are in effect suing themselves.*
>
> *10.      The uncertainty and hesitancy of the Debtors' treatment of bonds is apparent in the unclear language of the Plan and supporting documents.  The Debtors in response to interrogatories from the sureties stated, "Neither the Plan nor Disclosure Statement provide that any bonds will be split, assumed, assigned or otherwise transferred." The term sheets between the Debtors and the NAS Bond obligees (Chevron and Eni) assume that the sureties will contribute to post-confirmation decommissioning costs.  In responding as they did, perhaps the Debtors mean there is no transfer of the NAS Bonds because of the divisive merger.  Had the sureties asked whether their bond survive the Plan perhaps they might have received a more direct answer to the interrogatory.  But the Debtors are not saying whether they*

2

*can access in the Plan the proceeds of the surety bonds because of a pre-petition default or the post-confirmation default that is anticipated, or some other theory.[2] What the Plan and supporting documents appear to represent is that the sureties will contribute the proceeds of the bonds without recourse against the post-confirmation entities.*

*11.    NAS believes the financial projections submitted by the Debtors for decommissioning costs likely assume contribution from the sureties for those costs without the sureties having recourse to recover those costs from the post-confirmation entities created by the Plan.  If that is an assumption of Debtors' projection (and the sureties continue to have recourse by operation of law) this would impact the accuracy of the projections and the feasibility of meeting the post-conformation decommissioning obligations. Notwithstanding Debtors' position that the surety indemnity agreements will be rejected upon confirmation of the Plan, if the post-confirmation entities remain the principals of the bonds, by operation of law the sureties have rights of exoneration and reimbursement against the post-confirmation entities by virtue of their status as the sureties for the post-confirmation entities. Restatement of the Law Third, Suretyship & Guaranty §§ 21 and 22 (1996).  These liabilities should survive the divisive merger and should be allocated.  Tex. Bus. Code Ann. § 10.008(a)(3) and (4).*

5.    The Debtors' response is:

  e)    **This does not appear to be an objection to conformation of the Plan. As the Debtors have stated previously, the Plan does not provide for the assumption or rejection of any surety bonds. See Omnibus Reply of Debtors to Objections to Disclosure Statement [ECF No. 1124], Ex. A, at 13.**

6.    Debtors fail to address how the bonds survive after confirmation.  In responding to Lexon's objections, they also say the Plan does not provide for the "transfer" of the bonds, so we know the Debtors are not "assuming, assigning or transferring the bonds." [ECF 1591, pp. 3-4].  But they will not say whether the bonds "survive" the confirmation of the Plan.  Given the debtors statement that there is no assumption, assignment or transfer of surety bonds, and their vehemence those bonds remain in effect as evidenced by their adversary proceeding, one might assume their position is because the post-confirmation entities are created via merger, then whatever contracts and bonds they might have can simply continue, as a merger would not affect

---

[2]    Whether the bonds are assumed or simply continue to exist as obligations of the divisive merger entities also has implications for whether the Debtors should provide cure values for decommissioning costs, whether the bonds can be assumed and whether the bonds must be replaced.

the status of existing contracts (the sureties would contend if merger results in a material change
there might be a defense to a bond claim).  Are the Debtors saying there is no need for an
assumption, assignment or transfer of the bonds because the post-confirmation entities are
created through a merger? Can they just say that if that is their position?[3] And, if the bonds
survive how does that work.  The Brief in Support of Confirmation touts that the entities created
through the divisive merger are for purpose of meeting the regulatory requirements of
decommissioning properties.  If any of the post-confirmation entities default in the
decommissioning obligations (NEWCO, FWE I, FWE III or whatever entity is created between
now and confirmation), can the obligees make demand on the bonds from the failure of the post-
confirmation entities to perform?

      7.      Finally, even assuming the bonds survive post-confirmation, and the Debtors can
reject the inter-dependent surety indemnity agreements (which the sureties collectively contend
they cannot), what possible theory allows for the stripping away of the surety's recourse through
exoneration, reimbursement, subrogation and restitution, rights that exist by virtue of suretyship
status?  Restatement of the Law Third, Suretyship & Guaranty §§ 21(b)(2), 22, 26, 27, 28 (1996).
The Texas divisive merger statute recognizes the liabilities of the pre-merger contracts continue
to be liabilities of the post-merger companies.  Tex. Bus. Code Ann. § 10.008(a)(3) and (4).
NAS' objection is saying that the Debtors are advocating a plan that impermissibly changes the
bonds into cash demand obligations by stripping away the surety's traditional rights of recourse

---

[3]     For all the ink spilled in the adversary proceeding brought by the Debtors against the Apache Sureties how the bonds
exist post-confirmation, what the Debtors' standing to raise the issues and how they apply to post-confirmation
decommissioning obligations is never clearly articulated in the Debtors' complaint or summary judgment motion or
opposition to the sureties' motion to dismiss. Debtors say the Plan does not affect the defenses of the sureties.  But the
adversary was triggered by sureties sending a letter to an obligee (Apache) asserting defenses.  An absence of clarity is a
wellspring for future litigation—and the uncertain treatment of surety bonds in the Debtors filings cries out for clarity.

and subrogation.  The Code cannot change bonds into letters of credit or cash demand instruments.

## Relief Requested

North American Specialty Insurance Company requests clarification from the Debtors of their response to these issues, to strike the response of the Debtors if they fail to provide clarification and to deny confirmation of the Plan because (among the other reasons raised in the objections) it fails to treat surety credit appropriately.  As nearly all the sureties have stated in their pleadings, the Debtors need the sureties' consent for the post-confirmation use of existing surety credit or need to get new bonds.

Respectfully submitted,

/s/ T. Scott Leo
T. Scott Leo
The Law Offices of T. Scott Leo, P.C.
100 N. LaSalle Street, Suite 514
Chicago, Illinois 60602
Phone:  (312) 857-0910
sleo@leolawpc.com

*Attorney for North American Specialty Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of June 2021, a true and correct copy of the foregoing Request for Clarification or to Strike Responses were served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

/s/ T. Scott Leo