IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § § | (Jointly Administered) |

**DECLARATION OF MICHAEL DANE IN SUPPORT OF DEBTORS' OBJECTION TO EMERGENCY MOTION OF ASPEN AMERICAN INSURANCE COMPANY, BERKLEY INSURANCE COMPANY AND SIRIUS AMERICA INSURANCE COMPANY FOR A STAY, PURSUANT TO BANKRUPTCY RULE 8007, OF THE ORDER CONFIRMING EIGHTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS, OR IN THE ALTERNATIVE, FOR AN ORDER AMENDING THE CONFIRMATION ORDER, PURSUANT TO BANKRUPTCY RULE 9023**

1. I, Michael Dane, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

2. I am the Senior Vice President and Chief Financial Officer of Fieldwood Energy LLC ("**Fieldwood**" or "**FWE**"), and its debtor affiliates in the above-captioned Chapter 11 Cases, as debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**"). I have served as Senior Vice President and Chief Financial Officer since March 9, 2016. Prior to my appointment to my current role, I was Vice President of Finance for the Debtors. Before that, I

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

was Manager of Finance and Planning at Dynamic Offshore Resources, LLC and an equity research analyst at SunTrust Robinson Humphrey with a focus on the exploration and production sector. I hold a Bachelor of Commerce degree from McGill University.

3. On August 3 and 4, 2020 (the "**Petition Date**"), Fieldwood and certain of its subsidiaries commenced in this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On June 25, 2021 the Court entered the Confirmation Order confirming the *Eight Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (the "**Plan**"). I am knowledgeable about and familiar with the Debtors' business and financial affairs. I am authorized to submit this declaration (the "**Declaration**") on behalf of the Debtors.

4. Except as otherwise indicated, all facts set forth in this Declaration (or incorporated by reference herein) are based upon my personal knowledge; my discussions with other members of the Company's management team and other employees of the Company; my review of relevant documents and the Company's books and records; my opinion based upon my experience as a senior vice president and chief financial officer of the Company; and/or upon information supplied to me by advisors. If I were called to testify, I would testify competently to the facts set forth (and incorporated by reference) herein.

5. I submit this Declaration in support of the *Debtors' Objection to Emergency Motion of Aspen American Insurance Company, Berkley Insurance Company and Sirius America Insurance Company for a Stay, Pursuant to Bankruptcy Rule 8007, of the Order Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors, or in the*

2

*Alternative, for an Order Amending the Confirmation Order, Pursuant to Bankruptcy Rule 9023* (the "**Objection**"),[2] filed concurrently herewith in the above-captioned proceeding.

6. The viability of the Plan is, in large part, due to the exhaustive negotiation and development of the transactions contemplated by the Plan and the significant level of consensus reached with government regulators and the Debtors' stakeholders. Imposition of a stay pending appeal would jeopardize those agreements and the viability of the Plan and substantially harm the Debtors and other parties, including the public interest and environmental regulators.

7. The transactions in the Plan, including the Apache transaction and the Additional Predecessor Agreements, are highly interdependent. If one of the interdependent transactions contemplated under the Plan fails to close, it could cause other transactions to fall through, potentially preventing the Debtors from emerging from chapter 11 and achieving the environmental protections that led to the government not objecting to the proposed Plan.

8. The Debtors have agreed to certain outside dates with respect to the various restructuring transactions contemplated by the Plan, including an outside date of July 31, 2021 under the RSA for the Plan to go effective and an outside date of July 31, 2021 for the commitment letters for the first and second lien exit financings. The Debtors cannot consummate the Plan without those financings. If those financing commitments were to terminate, there is a significant possibility that the Debtors would not be able to obtain similar financing for consummating the Plan at a later date or pursuing any alternative reorganization plan in the future.

9. If the Debtors cannot confirm a chapter 11 plan and convert to chapter 7, potentially catastrophic impacts could result. The Debtors carefully crafted and negotiated the contemplated agreements in the Plan to ensure continual environmental stewardship of the Debtors' properties

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.

3

and address all of the Debtors' decommissioning obligations. The transactions contemplated by the Plan involve a highly organized process for decommissioning the Debtors' assets and no other workable alternative has been proposed that would address the Debtors' extensive decommissioning obligations. However, in chapter 7, those agreements would no longer govern the Debtors' decommissioning obligations and there would almost certainly be insufficient funds to decommission the Debtors' properties. Accordingly, a stay of the Confirmation Order would put the environment at risk and also increase the risk that taxpayers would need to fund the necessary decommissioning work. Furthermore, it could result in the loss of $225 million in new money commitments by the Debtors' secured lenders that provides the foundation for any potential restructuring as well as resignations and layoffs, and dramatic reduction of recoveries available for all of the Debtors' creditors.

10. Here, the harm that the Debtors and other constituencies would suffer if the Debtors are unable to consummate the transactions necessary to settle the bankruptcy estate and successfully resolve bankruptcy proceedings is significant. The harm is even greater due to the potential increased environmental risk associated with staying confirmation of the Plan.

11. There is no public interest served by staying the Confirmation Order, and the potential harm of staying the Confirmation Order to the public interest is evident. If the Confirmation Order were stayed, the Debtors may not be able to consummate the transactions contemplated by the Plan and would be forced into a chapter 7 liquidation. Should that happen, the Debtors would not have the ability or funds to complete all of their decommissioning obligations and U.S. taxpayers may have to pay for the Debtors' remaining decommissioning

obligations. Additionally, the Debtors' inability to meet its decommissioning obligations in a chapter 7 liquidation would create a significant risk to health, safety, and the environment.

12. The Sureties would also be harmed by the imposition of a stay. If the Plan is not implemented and the Debtors were to liquidate, the Sureties' bonds would very likely be drawn in the near term, under a liquidation scenario where even claims with senior priorities would likely receive only partial recoveries.

13. A stay of the Confirmation Order pending appeal would undermine the Debtors' efforts to provide a comprehensive resolution for the decommissioning obligations associated with their oil and gas assets. Imposition of a stay would likely result in the Credit Bid Purchaser and the more than $1 billion of value from the sale under the Plan evaporating.

14. In addition to the sale value being lost, the potential loss of value as a result of a stay includes: loss of the $100 million DIP facility, the continued burden of attorneys' fees, greater than $40 million in the Debtors' monthly expenses to maintain and operate all of the Debtors' assets for the duration of the appeal, loss of the $57.7 million Eni turnkey amount, loss of the Chevron turnkey amount, loss of the assumption of the Debtors' working capital obligations by the Credit Bid Purchaser, loss of $225 million in new money commitments by the Debtors' secured lenders, and loss of the $400 million standby loan facility from Apache. In total, a stay would result in an estimated loss of in excess of $1 billion to the Debtors.

15. Additionally, a stay of the Confirmation Order only serves to delay decommissioning projects that are currently scheduled and can be completed in the near term. Such a delay is against the public's interest because it would only increase the risk of potential harm to the environment and public safety. Regardless of the outcome of the appeal, an additional multi-month delay pending appeal will prevent the Debtors from beginning decommissioning

work that needs to commence promptly, before the end of the summer decommissioning season, which would result in at least a year delay in currently scheduled activity.

16. Accordingly, I believe that staying the Plan pending appeal would cause significant harm to the Debtors, the Debtors' stakeholders, environmental regulators, U.S. taxpayers, and the environment.

Dated: July 6, 2021
       Houston, Texas

                                                              /s/ Michael Dane
                                                              Michael Dane

**Certificate of Service**

I hereby certify that on July 6, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                     */s/ Alfredo R. Pérez*
                                                     Alfredo R. Pérez