IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**DEBTORS' NOTICE OF BANKRUPTCY RULE 2004 REQUEST FOR
PRODUCTION OF DOCUMENTS FROM SHELL OFFSHORE INC.**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") and Rule 2004-1 of the Bankruptcy Local Rules for the Southern District of Texas ("Local Rule"), the Debtors ("Fieldwood") file this notice of its First Request for Production of Documents ("Document Requests") from Shell Offshore Inc. ("Shell"), and state as follows:

1.     The Debtors emailed Shell a prior version of these Document Requests on May 14, 2021. Fieldwood and the Debtors had multiple productive conversions on May 17, 18, and 20, 2021, and will continue working together cooperatively and in good faith.  *See* Local Rule 2004-1(c).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

**DEFINITIONS**

2. "<u>AFE</u>" means Authorization for Expenditure.

3. "<u>BP</u>" means BP Exploration & Production Inc., and any affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

4. "<u>Calliope</u>" means the well located in Mississippi Canyon Block 609, Gulf of Mexico, commonly referred to as the "Calliope Well."

5. "<u>Communication</u>" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions, e-mails, text messages, interviews, consultations, agreements, and other understandings.

6. "<u>Concerning</u>," whether capitalized or not, means related to, relating to, reflecting, referring to, pertaining to, containing, describing, regarding, illustrating, mentioning, evidencing, embodying, substantiating, involving, analyzing, reporting on, commenting on, constituting, supporting, discussing, or having any logical or factual connection whatsoever with the subject matter in question.

7. "<u>Document</u>" means any printed, written, typed, recorded, transcribed, taped, or graphic matter, however produced or reproduced, including, but not limited to, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Bankruptcy Rules, as applicable, or meeting the definition of "writings" or "recordings" set forth in Rule 1001 of the Federal Rules of Evidence.

8. "<u>Genovesa</u>" means the well located in Mississippi Canyon Block 519, Gulf of Mexico, commonly referred to as the "Genovesa Well."

9. "Honeywell" means Honeywell International Inc. and any affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

10. "Isabella" means the well located in Mississippi Canyon Block 562, Gulf of Mexico, commonly referred to as the "Isabella Well."

11. "Loop Subsea Production System" and "LSPS" have the same meaning found in the *Galapagos Area Loop Subsea Production System Construction and Operating Agreement* effective December 1, 2011 and last amended May 1, 2019.

12. "LSPS Leak" means the leak on the Santiago side of the LSPS, which BP and Fieldwood investigated in 2020.

13. "Manuel" means the well located in Mississippi Canyon Block 520, Gulf of Mexico, commonly referred to as the "Manuel Well."

14. "Na Kika" means the offshore semi-submersible floating platform located on Mississippi Canyon Block 474.

15. "OSS" means OneSubsea, a Schlumberger Ltd. company.

16. "PHA" means the *Production Handling and Operating Services Agreement* effective September 21, 2010 and last amended May 1, 2019.

17. "PSA" means the *Purchase and Sale Agreement by and between BP Exploration & Production Inc. and Fieldwood Energy LLC in respect of Mississippi Canyon Block 519*, dated as of May 17, 2019.

18. "2019 TAR" means the turnaround project BP performed on Na Kika in 2019.

19. "2020 TAR" means the turnaround project BP performed on Na Kika in 2020.

20. "You" and "Your" mean Shell, and any affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

## INSTRUCTIONS

21. All requests are limited to the time period of **January 1, 2018 to the present**, unless otherwise specified.

22. Documents produced in response to these requests shall include those in Your possession, custody, or subject to Your control, including but not limited to all information within the possession, custody, or control of Your representatives (such as attorneys and accountants) or in the possession of third parties who are obligated to produce information upon request.

23. Terms not specifically defined shall be given their ordinary meaning and construed to require the fullest disclosure of all information.

24. If You object to any part of a request, You are to respond to that portion of the request that is not objectionable and specifically identify the aspect of the request to which You object and the basis for Your objection. To the extent You consider any request to be ambiguous or overbroad, please state what is ambiguous or overbroad and to what extent the request is (and is not) being complied with.

25. In the event You seek to withhold any Document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the Document concerned as to which no claim of privilege or other limitation of discovery is made. With respect to Documents or portions of Documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numeral list of the Document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation

is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of Document; (ii) the name and capacity of each author and recipient of the Document; (iii) the general subject matter of the Document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the Document; (v) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the Document, the addressee(s) of the Document, and any other recipient(s) shown in the Document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed Document if the enclosure or attachment is also withheld from production.  Notwithstanding the assertion of any privilege or other protection, any requested Document that contains responsive, non-privileged or protected information should be produced, but that portion of the Document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

26.    If a document which would be responsive to these requests is no longer in existence or in Your possession, custody, or control, please state whether it is missing, lost, destroyed, or otherwise disposed of and, in each instance, explain the circumstances surrounding such disposition and the date of such disposition.

27.    These requests specifically seek the production of electronically stored information. Materials responsive to the responses are to be produced in searchable .tif or .pdf format, except for .xls or .xlsx files which should be produced in native format.  All documents should be

produced with standard metadata fields, including sender, recipients, subject, file name, date created, date last modified, date sent, and date received.

28.     The requests are deemed to be continuing in nature and any additional documents or information subsequently discovered should be provided as soon as it becomes available in order that all information provided is at all times current.

**REQUESTS FOR PRODUCTION**

**Request No. 1**: All Documents and Communications concerning Genovesa, including but not limited to:

- Internal Communications or Communications with BP, OSS, Honeywell, or any third party;
- Analyses on the impact Genovesa would have on production at Manuel;
- Fieldwood's timeline for bringing Genovesa online at Na Kika;
- BP and Shell's offer to accelerate bringing Genovesa on at Na Kika, if Fieldwood paid.

**Request No. 2**: All documents for or from meetings between BP and Shell concerning Na Kika, including presentations, other exchanged documents, minutes, or summaries of the meeting.

**Request No. 3**: All Documents and Communications concerning the PSA.

**Request No. 4**: Documents sufficient to show the meaning of "Na Kika Obligations," as defined in PHA § 2.2.87, including, without limitation, "the Na Kika JOA, the Na Kika HUA, the Host M&A, the Satellite Field Start-up Agreement" (as those terms are defined in the PHA), and any other agreements or other Documents necessary to determine the meaning of "Na Kika Obligations."

**Request No. 5**: All Documents and Communications concerning BP's declaration of force majeure on or around April 6, 2020 that BP sent to the owners of Genovesa, Manuel, Isabella, and Calliope, including, but not limited to, BP's decision to declare force majeure.

**Request No. 6**: All Documents and Communications concerning BP's efforts to bring Manuel online at Na Kika, including, but not limited to:

- BP's prioritization of Manuel ahead of Genovesa;
- BP's timeline for bringing Manuel online, including any changes to that timeline over time; and
- BP's refusal to combine the MCS Software Upgrade Work for Manuel with the MCS Software Upgrade Work for Genovesa.

**Request No. 7**: All Documents and Communications concerning BP's efforts to bring Isabella online at Na Kika, including, but not limited to, BP's efforts to temporarily convert the Isabella side of the LSPS into a single-flow line until the leak was remediated.

**Request No. 8**: All Documents and Communications concerning BP's efforts to bring Calliope online at Na Kika.

**Request No. 9**: Documents sufficient to show Shell's percent ownership interest, if any, in Manuel.

**Request No. 10**: Documents sufficient to show Shell's percent ownership interest, if any, in Isabella.

**Request No. 11**: Documents sufficient to show Shell's percent ownership interest, if any, in Calliope.

**Request No. 12**: All Documents and Communications concerning the LSPS Leak.

**Request No. 13**: Documents sufficient to show when Shell received initial notification of BP's deployment of a flotel at Na Kika in 2020 and Shell's initial receipt of such AFE from BP.

Dated: May 21, 2021

      */s/ Paul R. Genender*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
        Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email: Paul.Genender@weil.com
      Erin.Choi@weil.com

*Attorneys for the Debtors and Debtors in Possession*

**CERTIFICATE OF CONFERENCE**

I hereby certify that, in accordance with Local Rule 2004-1(c), on May 17, 18, and 20, 2021, I had phone conversations with Shell's counsel, Ryan Mann, concerning the Document Requests in this notice and Ryan Mann communicated to me that Shell would not oppose the Debtors' Document Requests as a whole, but may have limited objections to the scope of individual requests. The parties intend to continue working cooperatively toward the resolution of these Document Requests.

                                                                                                  */s/ Paul R. Genender*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered for service.

                                                                                                  */s/ Paul R. Genender*