## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | Re: ECF No. 1464 |
| | § | |

### DEBTORS' REPLY TO LLOG'S CONFIRMATION OBJECTION

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), submit this reply (the "**Reply**") in connection with the hearing set for July 8, 2021 and in response to LLOG Exploration, L.L.C.'s ("**LLOG**") objection to confirmation of the Plan (ECF No. 1464), and respectfully represent as follows.

### PRELIMINARY STATEMENT

1.      The Debtors and LLOG disagree on whether LLOG holds a valid and perfected lien in, among other things, the Debtors' interests in an overriding royalty interest (the "**Fieldwood ORRI**") in Green Canyon Block 201, Lease No. OCS-G 12210 (the "**GC 201 Lease**"), including any proceeds thereof.

2.      As set forth below, LLOG has failed to demonstrate (as is its burden) that it holds a valid, enforceable and perfected lien any of the ORRI Assets (defined below) for the following reasons:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

*First*, LLOG has not demonstrated that it holds a valid security interest in and to the Debtors' interest in the ORRI (as defined below) and/or any proceeds related thereto (the "**ORRI Collateral**," and together with the ORRI, the "**ORRI Assets**") under the terms of the OOA (defined below), the ORRI Assignments (defined below) or the OOA Amendment (defined below).

*Second*, even if LLOG holds a valid lien and/or security interest (collectively, the mortgage lien and/or security interest, the "**Security Rights**") in any of the ORRI Assets, the express terms of the ORRI preclude LLOG from enforcing such Security Rights to satisfy LLOG's claim.

*Third*, even if the OOA created a contractual lien in the ORRI Assets, LLOG has failed to demonstrate that such lien in the ORRI Assets was properly perfected under Louisiana law because (i) Fieldwood's interest in the ORRI constitutes "rent" derived from the sublease that was created as part of the 2008 Shell Transaction under Louisiana law and LLOG failed to properly perfect a pledge of rents under Louisiana law and (ii) LLOG has not filed a valid mortgage to perfect a lien in any real property interests (to the extent any of the ORRI Assets constitute real property interests).

*Fourth*, even if LLOG does have a valid and perfected lien on the ORRI, such lien would not secure future P&A obligations.

3.     Accordingly, the Debtors submit that LLOG does not hold a valid and enforceable Security Right in and of the ORRI Assets.  In the alternative, even if this Court determines that LLOG holds a valid and enforceable Security Right in any portion of the ORRI Assets, such Security Right would only secure amounts that are currently due and owing by Fieldwood and would not secure any of LLOG's contingent claims for potential future plugging and abandonment costs under the OOA because (i) any such contingent claims should be disallowed under section 502 of the Bankruptcy Code and (ii) the express terms of the purported mortgage and security agreement limit the scope of LLOG's secured claims to amounts currently due and owing, not future costs yet to be incurred.

## BACKGROUND

**A.      Debtors' Chapter 11 Cases**

4.      On August 3 and 4, 2020, the Debtors each commenced in this Court a voluntary case under title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

**B.      Debtors' Disclosure Statement and Joint Chapter 11 Plan**

6.      On April 15, 2021, the Debtors filed the *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "**Disclosure Statement**") (ECF No. 1285).  That same day, after a hearing, the Court approved the Disclosure Statement.[2]

7.      On June 25, 2021, the Debtors filed the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and it Affiliated Debtors* (ECF No. 1742) (the "**Plan**").  June 21-25, 2021, the Court held the hearing to consider confirmation of the Plan.

8.      On June 25, 2021, the Court confirmed the Debtors' Plan.[3]

---

[2] *See Amended Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; and (VII) Granting Related Relief* (ECF No. 1286) (together with any schedules and exhibits thereto, the "**Disclosure Statement Order**").

[3] *See Finding of Fact, Conclusions of Law, and Order (I) Confirming Eight Amended Joint Chapter 11 Plan Fieldwood Energy LLC and its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 1751) (the "**Confirmation Order**").

**C.   Denial of LLOG's Motion to Lift Stay and Motion for Adequate Protection**

9.     Fieldwood and LLOG are party to that certain Offshore Operating Agreement dated December 12, 2002 between Fieldwood and Davis Offshore L.P. (the "**OOA**"), as ratified and amended.   LLOG sought[4] (and the Court denied) relief from the automatic stay to permit LLOG to (i) provide notice of Fieldwood's alleged default under the OOA, for Fieldwood's failure to pay alleged, pre-petition outstanding joint interest billings ("**JIBs**") owed to LLOG in the amount of $902,490.92 to the first purchaser of production at the GC 201 Lease, insofar and only insofar the such lease covers and affects the NE/4 of Green Canyon Block 201 from the surface down to 17,000' SSTVD and (ii) escrow the proceeds from the Debtors' interests in the Fieldwood ORRI.[5]   The Court denied this relief on the grounds that LLOG did not meet its evidentiary burden regarding a decline in value and failed to demonstrate an absence of adequate protection.  *See* Hr'g Tr. of Mot. for Relief from Stay at 81-82 (Jan. 25, 2021).   The Court did not issue a finding regarding LLOG's alleged security interests.

**D.   LLOG's Objection to Confirmation of the Plan and the July 8, 2021 Hearing**

10.     LLOG filed an objection to the Debtors' Plan and the proposed 363 sale therein.[6] In its Confirmation Objection, LLOG states it has a secured claim in the amount of "$ 19,808.451.47" upon which "LLOG intends to time[ly] file a rejection damages claim against Fieldwood…based upon the fact that Debtor intends to reject the OOA and to abandon or otherwise reject the relevant interests in [the Contract Area]".  Confirmation Objection ¶¶ 10, 14, n. 18.   This total includes an amount which LLOG has before sought to segregate for

---

[4] *See LLOG Exploration Offshore L.L.C.'s Motion for Relief from Automatic Stay* (ECF No. 683); *LLOG Exploration Offshore L.L.C.'s Motion for Adequate Protection* (ECF No. 684).

[5] *See Order Denying LLOG Exploration Offshore L.L.C.'s Motion for Adequate Protection* (ECF No. 1229); *Order Denying LLOG Exploration Offshore L.L.C.'s Motion for Relief from Automatic Stay* (ECF No. 1230).

[6] *See Objection of LLOG to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors and Opt -Out of Releases* (ECF No. 1464) (the "**Confirmation Objection**").

Fieldwood's alleged "proportionate share of joint interest billings, in an amount not less than $902,490.92, for plugging and abandonment and other operational charges associated with the Contract Area." Confirmation Objection ¶ 13.  LLOG states it "intends to expand its reach of its secured claim to include the estimated decommissioning cost associated with the Contract Area, which total approximately $18, 905,960.55." Confirmation Objection ¶ 13.

11.     The Debtors and LLOG agreed to resolve the objection with consensual language in the Debtors' Confirmation Order and "to adjourn the issues raised by LLOG in its [Confirmation Objection] to a later date to be agreed by the parties.  Confirmation Order ¶ 144.

12.     The Confirmation Order further states that "[a **hearing to consider the extent, validity, seniority and enforceability** of LLOG's secured claim in and to the overriding royalty interest in Green Canyon Block 201 [] will be held by the Bankruptcy Court on **July 8, 2021 at 12:20 p.m.** (prevailing Central Time)." *Id.* (emphasis added).

**E.     The December 2002 Operating Agreement Between Davis and LLOG**

13.     On December 12, 2002, LLOG, as operator, and Davis Offshore, L.P. ("**Davis**"), as non-operator, entered into the OOA covering only the Green Canyon Block 157 Lease No. OCS-G 24154.

14.     Under the OOA, Davis, as non-operator, granted LLOG, as operator, "a continuing security interest in and to all of its rights, titles, interests, claims, general intangibles, proceeds, and the products thereof, whether now existing or hereinafter acquired," including "in and to (a) all oil and gas produced from the lands or offshore blocks covered by the Lease[s] or the Contract Area or attributable to the lease or the Contract Area when produced, . . . and (c) all cash and other proceeds from the sale of such oil and gas once produced . . ." *See* ECF No. 1603-1, Exhibit I, § A(ii) (OOA).

15.     The security interest granted by Davis to LLOG also covers "all of its rights, titles, and interests, whether now owned and existing or hereafter acquired or arising, in, to, and under or derived from any present future operating, farmout…assignments, and subleases…hereafter acquired or arising, in and to all or any portion of the Lease or the Contract Area…"  *Id*. at Exhibit I § A(ii)(1).  Notwithstanding the foregoing grant of security interest, it does **not** cover, affect or burden payments that are classified as **rent** under Louisiana law.

16.     The OOA covered only the GC 157 Lease in the respective definitions of "Contract Area" and "Lease."  *See id*. at §§ 2.7, 2.27 (OOA).

17.     Exhibit I of the OOA states that "[a]ny agreements creating any overriding royalty, production payment, net proceeds interest, net profits interest, carried interest or any other interest carved out of a Working Interest in the Lease or the Contract Area shall specifically make such interests inferior to the rights of the Parties to this Agreement."  ECF No. 683-2, Exhibit I § D.  If a party does not pay its share of the costs under the OOA, and proceeds from the sale of Hydrocarbon production are insufficient to pay those costs, then "security rights provided for…may be applied against the carved-out interests with which the defaulting or non-performing Party's interest in the Lease or the Contract Area is burdened."  *Id*.

18.     In addition, Section 19.1 of the OOA provides that, "[i]f any Party has previously created or hereafter creates any overriding royalty, production payment, carried or reversionary Working Interest, net profits interest or other type of burden on Hydrocarbon production in addition to the lessor's royalty stipulated in the Lease(s) (an "**Overriding Royalty**") . . . . such Overriding Royalty shall be considered a Subsequently Created Interest."

**F.     The 2008 Farmout Agreement Between Shell, Marathon, LLOG, and Davis and Creation of the ORRI**

19.     On October 1, 2008, Shell Offshore Inc. ("**Shell**"), Marathon Oil Company ("**Marathon**"), LLOG, and Davis entered into a Farmout Agreement covering the GC 201 Lease (the "**Farmout Agreement**"), insofar and only insofar as the GC 201 Lease covers NE/4 of Green Canyon Block 201 for the depths from the surface down to 17,000 SSTVD (the "**Farmout Area**").  Pursuant to the terms and conditions of the Farmout Agreement, once LLOG and Davis satisfied the earning requirements thereunder, Shell and Marathon would assign 100% of their operating and working interest rights in the Farmout Area to LLOG (85%) and Davis (15%) and would reserve to themselves a 6.5% of 8/8ths overriding royalty interest in and to all production from such assigned Operating Rights Interest applicable to the first 1 million Barrels of Oil Equivalent produced from the Farmout Area, which overriding royalty interest would escalate to 9.75% of 8/8ths for all production above 1 million Barrels of Oil Equivalent produced from the Farmout Area, and LLOG was designated as the operator of the GC 201 Lease.  *See* ECF No. 1603-5 (Farmout Agreement, § 1.3).

20.     Upon earning their interest in the Farmout Area under the Farmout Agreement, LLOG and Davis were assigned their respective Operating Rights Interests by Shell and Marathon pursuant to that certain Assignment of Operating Rights Interest in Federal OCS Oil and Gas Lease, dated April 2, 2009, effective October 1, 2008.  *See* ECF No. 1812-1 (First Assignment of Operating Rights).  Simultaneously therewith, LLOG and Davis assigned the overriding royalty interest (the "**ORRI**") to Shell and Marathon pursuant to the certain Assignment and Conveyance of Overriding Royalty Interest, dated February 19, 2009, effective October 1, 2008 (the "**Shell/Marathon ORRI Assignment**").  *See* Exhibit C (Shell/Marathon ORRI Assignment).  Notably, the Assignment of Operating Rights (and the interests acquired

thereunder by LLOG and Davis in the GC 201 Lease) was made, and accepted by LLOG and Davis, expressly subject to the Shell/Marathon ORRI Assignment. *See* ECF No. 1603-5 (Farmout Agreement, 1.3).

21.     Further, the Shell/Marathon ORRI Assignment provides, in relevant part, that the ORRI "…shall be free and clear of all costs of exploring, operating, developing, producing and maintaining the Contract Area[7] in force and effect, abandoning the Contract Area and all costs of compressing, dehydrating, treating or otherwise rendering the production therefrom marketable…" *Id.* at § (i).

22.     The Shell/Marathon ORRI Assignment further provides that "[t]here are no further understandings, representations, warranties or obligations pertaining to the ORRIs and this Conveyance supersedes and replaces any and all prior agreements, whether written or oral, between the parties." *Id.* at § (vii).

## G.     Fieldwood's Acquisition of Davis in August 2014 and Ratification and Amendment of the OOA in December 2014

23.     On August 5, 2014, Davis Petroleum Acquisition Corp., as seller, Davis Offshore Partners, LLC ("**Davis Offshore Partners**"), and Davis entered into an Equity Purchase Agreement with Fieldwood, as buyer, for all partnership equity of the three Davis entities and for, among other things, the "oil, gas, and mineral leases, subleases, royalties, overriding royalties, production payments, net profits interests, carried interests, reversionary interests, and all other interests of any kind or character in Hydrocarbons in place and the leasehold estates created thereby…" for a purchase price totaling $36,500,000. *See* Exhibit D §§ 2.1, 3.1 (Davis

---

[7] The "Contract Area" as defined in the Shell/Marathon ORRI Assignment is "Federal Lease No. OCS-G 12210 dated effective May 1, 1990, between the United States of America and BP Exploration Inc., as original lessee, covering all of Block 201, Green Canyon, as shown on OCS Official Protraction Diagram, NG 15-3, containing approximately 5,760 acres, insofar and only insofar as to the northeast quarter (NE/4) of said Lease, covering depths from surface to 17,000 feet subsea true vertical depth."

Equity Purchase Agreement).  Among the subject leases Fieldwood purchased was the J. Bellis Field, which included Davis's working interest (15%) in the GC 201 Lease.  *Id*. at Schedule 2.1(a) (Davis Equity Purchase Agreement).

24.    In December 2014, LLOG and Fieldwood ratified and amended the OOA pursuant to the Ratification and First Amendment to Operating Agreement (the "**OOA Amendment**") to, among other things, ratify the OOA and add the GC 201 Lease to the Contract Area.  *See* ECF No. 1603-2 (OOA Amendment).  The OOA Amendment is dated back to the effective date of the OOA, December 12, 2002.

25.    The OOA states that any Overriding Royalty created subsequent to the date of the OOA shall be subject to the terms of the OOA and shall subordinate to the rights of the other parties to the OOA.  *See* ECF No. 1603-1, § 19.1.1 (OOA).  However, the ORRI was created prior to the execution of the OOA Amendment (the date on which Fieldwood became party to the OOA), and Shell and Marathon were not parties to either the OOA Amendment or the OOA and did not agree that the ORRI was subject to the terms of the OOA, as amended by the OOA Amendment, and the terms of the OOA (as amended by the OOA Amendment) do not override or supersede the language used by LLOG and Davis in the Shell/Marathon ORRI Assignment as described in paragraph 19 above.

26.    Moreover, provision 4 of the OOA Amendment provides that "LLOG and Fieldwood hereby agree the Farmors' ORI [the ORRI] is not to be considered a Subsequently Created Interest as described in Article 19.1 of the OA [the OOA]."  *Id.*    Although "Subsequently Created Interest" is not a defined term in the OOA, this provision appears to be the parties' attempt to provide clarity in the OOA Amendment that the ORRI would not be subject to the terms of the OOA.

**H.**     **Shell's Assignment of its Interests in the ORRI to Fieldwood in Connection with Fieldwood's Purchase of the Hickory Unit in January 2015**

27.     In connection with the Debtors' purchase of certain assets related to the Hickory Unit from Shell (the "**Hickory Unit APA**"), in July 2015, Shell entered into an Overriding Royalty Assignment (the "**Fieldwood ORRI Assignment**," and together with the Shell/Marathon ORRI Assignment, the "**ORRI Assignments**") under which it sold and conveyed to Fieldwood, effective as of January 1, 2015, among other interests, all right, title, and interest in its portion (4.87999%) of the ORRI created pursuant to the Farmout Agreement on October 1, 2008.  *See* Exhibit E, Attachment A (Fieldwood ORRI Assignment).  The Fieldwood ORRI Assignment did not create a new overriding royalty interest or include any language to amend the terms of the Shell/Marathon ORRI Assignment or make it subject to the terms of the OOA.  *Id*.  As such, the Fieldwood ORRI Assignment, like the ORRI (and the ORRI Assets), is not subject to or burdened by the terms of the OOA.

## **ARGUMENT**

28.     LLOG has failed to demonstrate that it holds a claim, secured by a valid, perfected lien upon estate property because (1) it has failed to demonstrate that LLOG holds valid Security Rights in the ORRI Assets, (2) even if LLOG holds Security Rights in the ORRI Assets, the express terms of the ORRI expressly preclude LLOG from enforcing any such Security Rights to satisfy LLOG's claim for unpaid JIBs[8], (3) to the extent LLOG does hold a valid Security Right in any of the ORRI Assets, LLOG has failed to show that such interests were properly perfected under Louisiana law, and (4) any valid and perfected lien LLOG may have (which it does not) on the ORRI would not secure future P&A obligations.

---

[8] Debtors reserve all rights to dispute the amount of any claims asserted by LLOG, including the alleged $902,490.92 in unpaid JIBs and any estimated amounts for future P&A obligations.

A.    **LLOG Has Not Demonstrated that a Valid Security Right in the ORRI Assets was Established in its Favor**

29.    LLOG has failed to show that it holds any Security Rights in any of the ORRI Assets.  The terms and provisions of the OOA, as amended by the OOA Amendment and ORRI Assignments demonstrate that LLOG does not hold any Security Rights in the ORRI Assets.

30.    When LLOG and Davis originally entered into the OOA in December of 2002, the Contract Area only covered GC Block 157.  The OOA's Contract Area did not cover the GC 201 Lease until LLOG and Fieldwood entered into the OOA Amendment in December of 2014.  The rights created under the OOA created by, and in favor of, LLOG and Davis, are separate, independent and distinct from the rights created by LLOG and Davis in favor of Shell and Marathon under the Farmout Agreement and the Shell/Marathon ORRI Assignment – they do not intersect or overlap.   The Assignment of Operating Rights (and the interests acquired thereunder by LLOG and Davis in the GC 201 Lease) was made, and accepted by LLOG and Davis, expressly subject to the Shell/Marathon ORRI Assignment.   *See* ECF No. 1603-5 (Farmout Agreement, § 1.3).

31.    Nothing in the Fieldwood ORRI Assignment or the OOA Amendment altered or amended any of the terms of the Shell/Marathon ORRI Assignment.   Therefore, Fieldwood, when it acquired its interest in the ORRI in 2015, acquired it unencumbered by any lien or other encumbrance created or evidenced by the OOA.   *See* Exhibit E (Fieldwood ORRI Assignment).  Indeed, the Fieldwood ORRI Assignment expressly states that the overriding royalty conveyed thereunder "…shall be free and clear of all costs of exploring, **operating**, developing, producing and maintaining the Contract Area[9] in force and effect, **abandoning** the Contract Area and all

---

[9] The "Contract Area" as defined in the Farmout Agreement is "Federal Lease No. OCS-G 12210 dated effective May 1, 1990, between the United States of America and BP Exploration Inc., as original lessee, covering all of Block 201, Green Canyon, as shown on OCS Official Protraction Diagram, NG 15-3, containing approximately

costs of compressing, dehydrating, treating or otherwise rendering the production therefrom marketable…"  *Id*. at ¶ (i) (Fieldwood ORRI Assignment) (emphasis added).  Plugging and abandonment ("**P&A**") are operations within the Contract Area, as anticipated in the ORRI, and are performed as a part of operating and abandonment of wells within the Contract Area.

32.     In addition, the parties appeared to have intended to make it clear in the OOA Amendment that the ORRI would be kept free and clear of the terms and provisions of the OOA by expressly providing that "LLOG and Fieldwood hereby agree the Farmors' ORI [the ORRI] is not to be considered a Subsequently Created Interest as described in Article 19.1 of OA [the OOA]."  *See* ECF No. 1603-2 ¶ 4 (OOA Amendment).

33.     LLOG now argues that because the OOA Amendment between LLOG and Fieldwood expanded the OOA's Contract Area to include the GC 201 Lease, it somehow eviscerates the express terms of the Shell/Marathon ORRI Assignment and the parties' apparent attempt to clarify in the OOA Amendment that the ORRI shall remain unencumbered.

34.     The parties' intent to keep the ORRI unencumbered becomes even more apparent when considering how the ORRI was first created in 2008 and the unanticipated effect of subsequently assigning Shell's interest in the ORRI to Fieldwood, who had just recently acquired a working interest in the GC 201 Lease in connection with a separate transaction.  Not only was the ORRI made expressly not subject to the OOA, at no time was the ORRI ever held or owned by a working interest owner party to the OOA prior to the Fieldwood ORRI Assignment, which was likely never expected to occur.  But, the mere fact that Fieldwood, as a working interest owner in the GC 201 Lease, did later acquire Shell's interest in the ORRI, should not by such acquisition alone, change the nature of the ORRI or the intent of the parties to any of the ORRI

---

5,760 acres, insofar and only insofar as to the northeast quarter (NE/4) of said Lease, covering depths from surface to 17,000 feet subsea true vertical depth."  *See* ECF No. 1603-5 (Farmout Agreement, Exhibit A, § I).

Assignments or the OOA, as amended by the OOA Amendment, that the ORRI was to remain unencumbered by the terms and provisions of the OOA.

II.      **The Terms of the ORRI and the Terms of the OOA Amendment Preclude LLOG from Enforcing Any Security Rights Against the ORRI to Satisfy its Claim**

35.      Even if LLOG did have Security Rights in the ORRI Assets—which it does not— the express language of the ORRI precludes LLOG from enforcing such Security Rights to collect proceeds of the ORRI for obligations under the OOA.  The Shell/Marathon ORRI Assignment expressly states that the overriding royalty conveyed thereunder "…shall be free and clear of all costs of exploring, operating, developing, producing and maintaining the Contract Area in force and effect, abandoning the Contract Area and all costs of compressing, dehydrating, treating or otherwise rendering the production therefrom marketable…"  *See* Exhibit C, ¶ (i) (Shell/Marathon ORRI Assignment).

36.      Moreover, as noted above, the OOA Amendment provides that "LLOG and Fieldwood hereby agree that the [ORRI] is not to be considered a Subsequently Created Interest as described in Article 19.1 of the OA."

37.      The intent of the parties, Shell, marathon, Davis and LLOG, when the ORRI was created, and as part and parcel of the 2008 Farmout Agreement, was clear from these documents that the ORRI would not be subjected to any security interests or rights of other working interest parties under the OOA.

B.       **Even if the OOA Created a Contractual Lien in the ORRI Assets, LLOG has Failed to Demonstrate Such Lien in the ORRI Assets was Properly Perfected Under Louisiana Law**

38.      Even if LLOG could demonstrate that it was granted a lien in and to the ORRI Assets, LLOG has failed to demonstrate that any such lien was properly perfected under Louisiana law.

39.     In the Confirmation Objection, LLOG appears to argue that it holds (i) a valid and perfected mortgage in Fieldwood's interest in the ORRI itself and (ii) a valid and perfected UCC lien in the "As-Extracted Collateral" produced from or attributable Fieldwood's interests in the ORRI.  Fieldwood disputes each of these contentions.  First, for the reasons discussed in the Debtors' response to LLOG's motion seeking to lift the automatic stay (*see* ECF No. 757 ¶¶ 38-57), LLOG has not filed a valid mortgage to perfect any real property interests.  Rather, it filed a UCC financing statement in the applicable mortgage records.  The attachment of a memorandum of statement to the UCC financing statement was merely for purposes of describing the collateral covered by the UCC security interest.  Pursuant to Louisiana law, UCC filings (including fixture filings), are to be made in the parish UCC records, **not** the mortgage records.

40.     As described below, each of LLOG's attempts to perfect its alleged Security Rights in the ORRI Assets failed under Louisiana law because, among other reasons, (i) Fieldwood's interest in the ORRI constitutes "rent" derived from the sublease that was created as part of the 2008 Shell Transaction under Louisiana law and (ii) LLOG failed to properly perfect a pledge[10] of rents under Louisiana law.

41.     Fieldwood's interests in the ORRI Assets are not an interest covered in the scope of the UCC such that a valid lien in such assets could be perfected by filing a UCC financing statement, as LLOG argues.  Rather, the 2008 Shell Transaction created a sublease (the "**Sublease**") and Shell's reserving of the ORRI in that transaction constituted sublease rents. When Shell assigned its interest in the ORRI to Fieldwood, Fieldwood acquired the right to receive the rents. Fieldwood's subsequently acquired interests in the ORRI granted Fieldwood the right, as a successor to Shell, to receive rental payments from LLOG and Davis, as the

---

[10] A Pledge is "a real right established by contract over property of the kind described in Article 3142 to secure performance of an obligation."  LA-C.C. Art. 3141.

14

sublessees.  Accordingly, any enforceable assignment or pledge in Fieldwood's rents would need to be perfected as such in accordance with the requirements under Louisiana law set forth below in (ii).

> ### i.   The 2008 Shell Transaction Created a Sublease Under Louisiana Law Such that Fieldwood's Rights in the ORRI Assets are to Receive Rent

42.       Louisiana jurisprudence has long held that for a transaction to constitute a sublease, the lessee/assignor need only retain some interest which runs for the life of the lease, such as an overriding royalty or a perpetual or unlimited net profits interest.  *See Smith v. Sun Oil Co.*, 165 La. 907, 116 So. 379 (1928) (holding that a conveyance of a mineral lease subject to a reserved overriding royalty and a right to reversion constituted a sublease); *Johnson v. Moody*, 168 La. 799, 123 So. 330 (1929); *Roberson v. Pioneer Gas Co.*, 173 La. 313, 137 So. 46 (1931); *Bond v. Midstates Oil Corp.*, 219 La. 415, 53 So.2d 149 (1951); *Broussard v. Hassie Hunt Trust*, 231 La. 474, 91 So.2d 762 (1956).  In *Tidelands Royalty B Corp. v. Gulf Oil Corp.*, the Fifth Circuit held: "Under Louisiana law, the assignment of a lease with the retention of an overriding royalty creates a sublease, regardless of how the parties style their agreement." *Tidelands Royalty B Corp. v. Gulf Oil Corp.*, 804 F.2d 1344, 1349 (5th Cir. 1986).  Indeed, as this Court previously noted in one of its *ATP* decisions, "[t]he Court in *Tidelands* explained why looking beyond the label of a contract is especially important in the context of overriding royalty interests under Louisiana law. Unlike other jurisdictions, under Louisiana law the nature of rights that attend a royalty interest depend on the nature of the contractual relationship from which the royalty was created."  *See NGP Capital Resources Company v. ATP Oil & Gas Corp.*, Adversary Case No. 12-03443, ECF No. 145 at 12 (citing *Tidelands Royalty B Corp. v. Gulf Oil Corp.*, 804 F.2d 1344, 1349 (5th Cir. 1986) (*internal citations omitted*)).

43.     Under Louisiana law, an overriding royalty interest in favor of the sublessor constitutes "rent" paid by the sublessee to the sublessor.  *See Roberson v. Pioneer Gas Co.*, 173 La. at 320, citing *Spence v. Lucas*, 138 La. 763, 70 So. 796 ("The reason why an obligation to pay an overriding royalty, or excess royalty, in a transfer of a lease, either in whole or in part, and even though the transaction be called an assignment or a sale of the lease, characterizes the transaction as a sublease, and not merely an assignment, is that, in oil and gas leases, under the settled jurisprudence of this state, **the payment of a royalty is the payment of rent**, and is not the payment of a price for the oil or gas rights, as if they were sold."); *Logan v. State Gravel Co.*, 158 La. 105, 103 So. 526; *Board of Commissioners of Caddo Levee District v. Pure Oil Co.*, 167 La. 801, 120 So. 373.

44.     Here, the ORRI (and sublease) was created pursuant to the Farmout Agreement between Shell and Marathon, on the one hand, and LLOG and Davis, on the other, under which (i) Shell and Marathon farmed out their operating and working interest rights in the GC 201 Lease to LLOG and Davis and (ii) Shell and Marathon reserved the ORRI in GC 201.  *See* ECF No. 1603-5 (Farmout Agreement, 1.3); ECF No. 1812-1 (First Assignment of Operating Rights); Exhibit C (Shell/Marathon ORRI Assignment).  Further, this Sublease was indeed created as part and parcel of the same transaction: the assignment of working interest by Shell and Marathon to Davis and LLOG was made subject to the grant and reservation of the ORRI.[11]   Under the original sublease, LLOG and Davis were the sublessees and Shell and Marathon were the sublessors, and Fieldwood's receipt of the assignment of the ORRI was a transfer of the

---

[11] Note, at least one Louisiana court has held that such separate assignments constitute one transaction under Louisiana law.  *See Iberian Oil Corp. v. Texas Crude Oil Co.*, 212 F.Supp. 941 (W.D.La.1963) (holding that when an overriding royalty interest is granted by the transferee of a lease by a separate deed from that by which the lease is assigned to the transferee, the transaction viewed as a whole is still a sublease).

sublessor's (Shell's) right to rents.  *See* ECF No. 1603-5 (Farmout Agreement, § 1.3); Exhibit E, Attachment A (Fieldwood ORRI Assignment).

45.     To the extent LLOG has a contractual lien in Fieldwood's interest in the ORRI, LLOG is required to take the necessary steps under Louisiana law to obtain and file a valid and enforceable pledge of rents.

### ii.     The Requirements for Creating and Filing a Valid and Enforceable Pledge of Rents Under Louisiana Law

46.     Pursuant to Louisiana law, in order to create an assignment or pledge of a sublessor's right to payments under a mineral leases (i.e., "rents"), the document granting such a right must be an express grant of an assignment or *pledge of rents*.  Pursuant to Louisiana law, in order to establish an enforceable lien in Fieldwood's rents, LLOG would have been required to file such assignment or pledge in the Mortgage Records of the Parish in which the property is located (*see* La. Civ. Code Art. 3346[12]) and such pledge of rents must be expressly specified as a pledge of rents in such filing.  *See* La. Civ. Code Ann. Art. 3172 ("By express provision in a contract establishing a pledge, the owner of land or holder of a mineral servitude may pledge bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases, as well as other payments that are classified as rent under the Mineral Code.  Other kinds of payments owing under a contract relating to minerals are not susceptible of pledge under this Title.")[13]

---

[12] "A. An instrument creating, establishing, or relating to a mortgage or privilege over an immovable, or the pledge of the lessor's rights in the lease of an immovable and its rents, is recorded in the mortgage records of the parish in which the immovable is located.  All other instruments are recorded in the conveyance records of that parish.  B. The recorder shall maintain in the manner prescribed by law all instruments that are recorded with him."

[13] Comment (b) to Article 3172 further states, "Like the source provision, this Article permits a landowner or holder of a mineral servitude to pledge mineral payments. **This Article makes clear, however, that a contract of pledge encumbers mineral payments only if the contract includes an express statement to that effect. A mere statement that all leases and rents of the immovable are pledged will not suffice for the pledge to encumber mineral payments.**" **(emphasis added).**

47.     While the OA and MOA contain proper language for the establishment of a mortgage lien and a security interest, neither contains an express pledge of a sublessor's right to payments under a mineral lease which are classified as rents under Louisiana law.

### iii.    LLOG's Attempts to Perfect Fail to Comply with Louisiana Law

48.     Here, LLOG did not comply with the requirements for creating or perfecting an assignment or pledge of rents.  LLOG relies on the following filings to support its assertion that it properly perfected its purported lien in the ORRI:

- A Memorandum and Operating Agreement and Financing Statement executed by LLOG and Davis in 2009 and filed in the mortgage records of Terrebonne Parish on July 27, 2009 at File Number 1328132, Book 2201, Page 579 (ECF No. 1603-8)
- A Correction to Memorandum of Operating Agreement filed in the mortgage records of Terrebonne Parish on September 16, 2009 at File Number 1331665, Book 2215, Page 126 (ECF No. 1603-9).  This correction added the GC 201 Lease to the defined Contract Area, and LLOG argues that "[t]his is the filing that creates the enforceable mortgage lien in favor of LLOG and encumbering all of Fieldwood's interest in GC 201, specifically including the ORRI."  Confirmation Objection 4.[14]

49.     Each of the purported mortgage filings were deficient for at least two independent reasons.

50.     *First*, LLOG did not properly record a valid pledge in the Mortgage Records of the Parish in which the property is located, which is the exclusive place for filing an enforceable pledge of rents.[15]  In each instance, the only instruments that were filed in the Mortgage Records were State of Louisiana UCC-1 financing statements, and such recordings have no effect under

---

[14] Note, LLOG discusses multiple UCC filings in the Claim Objection (*see e.g.* Claim Objection, n. 4), but as discussed herein, such UCC filings are inapplicable as to the issues at hand.

[15] Rent payments under a mineral lease are expressly excluded from coverage under the Louisiana UCC.  *See* La. R.S. 10:9-102(2) ("The term ["Account"] further includes any right to payment that is payable out of or measured by production of oil, as, or other minerals, or is otherwise attributable to a mineral right, whether or not the payment is classified as rent under the Mineral Code, **except that the term does not include** bonuses, delay rentals, royalties, or shut-in payments payable to a landowner or mineral servitude owner under a mineral lease, nor does the term include **other payments to them that are classified as rent under the Mineral Code**.") (emphasis added).

Louisiana law.  Although a copy of a memorandum of agreement was attached to such UCC filing as an exhibit, it was only to provide a description of the covered collateral and a description of the real/immovable property associated therewith, as indicated on the face of the instrument.  *See* La. R.S. 10:9-102(2).  This fails to comply with the requirements for filing and perfecting a valid pledge of rents under Louisiana law.  *See* La. Civ. Code Art. 3346; La. Civ. Code Art. 3172.

51.      *Second*, even if it had been granted an express pledge of rents (which it has not), LLOG failed to file an original of the memorandum of operating interest containing an express pledge of rents in the Mortgage Records of the Parish in which the property is located, which is the exclusive place for filing a pledge of rents.

52.      Given that the OOA does not include an express assignment or pledge of rents, LLOG has no right to file a pledge asserting any such right, and LLOG simply could not comply with the requirements in Article 3346 requiring that a filing be made in the Mortgage Records containing such an express assignment or pledge of rents.  *See* La. Civ. Code Art. 3346(A) (An instrument creating, establishing, or relating to a mortgage or privilege over an immovable, or the pledge of the lessor's rights in the lease of an immovable and its rents, is recorded in the mortgage records of the parish in which the immovable is located…).

53.      Accordingly, LLOG has not received any grant of a lien in the ORRI, and has not, and cannot, properly file any such lien in the ORRI.

C.      <u>**Even if LLOG Holds a Valid and Perfected Lien on the ORRI, Such Lien Would Not Secure Future P&A Obligations**</u>

54.      Even if LLOG holds a valid and enforceable lien in the ORRI Assets, such lien would not extend to *future* obligations, plugging and abandonment or otherwise.  LLOG asserts that it holds a secured claim in the amount of $19,808,461.47 for future P&A costs secured by

the ORRI Assets.  Confirmation Objection ¶¶ 10-14; *see also* Claim 979 (alleging approximately $14.5 million in future P&A costs).  The Debtors disagree for two independent reasons (in addition to the lien validity and perfection arguments raised above).

55.     *First*, any claim by LLOG for future P&A costs that have not yet been incurred should be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.  Under section 502(e)(1)(B), a claim of a creditor shall be disallowed if: (1) the claim is contingent; (2) the claim is for reimbursement or contribution; and (3) the debtor and creditor are co-liable to a third-party on the underlying obligation giving rise to the claim.  *See In re Falcon V*, 620 B.R. 256, 269 (Bankr. M.D. La. 2020); *In re Lyondell Chemical Co.*, 442 B.R. 236, 243 (Bankr. S.D.N.Y. 2011).

56.     Here, all three criteria are satisfied.  First, a claim is contingent for purposes of section 502(e)(1)(B) if the claim is "unfunded."  *See In re Tri-Union Dev. Corp.*, 314 B.R. 611, 617 (Bankr. S.D. Tex. 2004).  Such a claim will "remain contingent . . . until the co-debtor has paid the creditor."  *Id.*  LLOG's claim is for future P&A costs for decommissioning work not yet performed.  *See* Claim 979, at 4 ("LLOG asserts a rejection damages claim against Fieldwood for its proportional share of plugging and abandonment and decommissioning obligation yet to be performed . . . .").  Accordingly, LLOG's claim is unfunded and therefore contingent. Second, LLOG's claim seeks reimbursement or contribution from the Debtors for the Debtors' proportionate share of P&A under the OOA.  The OOA provides the Debtors must "**reimburse** Operator for the Costs of . . . joint operation[s]."  *See* OOA § 6.1 (emphasis added).  Therefore, the second criteria is met.  Third, LLOG, as operator, and Debtors (as non-operating working-interest owners) are jointly and severally liable under applicable regulations for any decommissioning work that may come due on the properties covered by the OOA.  *See* 30 C.F.R.

§ 250.1701 ("Lessees and owners of operating rights are jointly and severally liable for meeting decommissioning obligations . . . as the obligations accrue and until each obligation is met."). Therefore, all three criteria are satisfied and LLOG's claim for future P&A costs must be disallowed under section 502(e)(1)(B).  *See, e.g.*, *In re Lyondell Chemical Co.*, 442 B.R. at 258 (disallowing claims of PRPs that were liable with a debtor for environmental remediation costs that had not yet been paid by the PRPs).

57.    *Second*, even assuming LLOG has a properly perfected security interest in the ORRI Assets, the express terms of the Original MOA limit the scope of LLOG's secured claims to amounts currently due and owing, not future costs yet to be incurred:

> [T]he liability of each Non-Operating Party under this Memorandum and the mortgage shall be limited to (and the Operator shall not be entitled to enforce the same against such Non-Operating Party, for an amount exceeding), the **actual obligations and indebtedness** . . . **outstanding and unpaid** and that are attributable to or charged against the interest of such Non-Operating Party pursuant to the Operating Agreement.

Original MOA § 5.5 (emphasis added).

58.    Future P&A costs are not obligations and indebtedness that are outstanding and unpaid.  Under the OOA, Participating Parties are required to reimburse the Operator for the Costs of joint operations.  *See* OOA § 6.1.  The OOA defines costs as "the monetary amount of **all expenditures incurred** by the Operator and Participating Party(s) **for** . . . **any and all operations conducted**" pursuant to the OOA.  OOA § 2.8 (emphasis added).  Because the decommissioning work alleged by LLOG has not yet been conducted and expenditures on account of such decommissioning work has not yet been incurred, those amounts are not outstanding and unpaid under the OOA.  Therefore, according to the terms of its own purported mortgage filing (which the Debtors submit does not create a perfected lien under Louisiana),

LLOG claims for future P&A costs would not secured by any such lien.  Such a contingent claim would be unsecured, to the extent not disallowed under section 502(e)(1)(B).

## **<u>CONCLUSION</u>**

59.    For the foregoing reasons, the Court should find that LLOG does not have a valid and enforceable security interest in any of the ORRI Assets.  Alternatively, if the Court finds that LLOG does hold a valid and enforceable security interest in any of the ORRI Assets, the Court should find that the lien does not secure LLOG's contingent claims for potential future plugging and abandonment costs under the OOA.

Dated: July 8, 2021
      Houston, Texas

Respectfully submitted,


*/s/  Alfredo R. Pérez*

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com
          Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
          Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
          Erin.Choi@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## **Certificate of Conference**

The Debtors' counsel and LLOG's counsel conferred on several occasions, including July 7, 2021, in an attempt to resolve the issues set forth herein, but were unable to reach a resolution.

     */s/ Clifford Carlson*
     Clifford Carlson

## **Certificate of Service**

I hereby certify that, on July 8, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

     */s/ Alfredo R. Pérez*
     Alfredo R. Pérez