IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et. al*, | § | Case No. 20-33948(MI) |
| | § | |
| Debtors.[1] | § | |
| | § | (Jointly Administered) |
| | § | |

**DEBTORS' OPPOSITION TO BP EXPLORATION & PRODUCTION INC.'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d) AUTHORIZING RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE SETOFF OF MUTUAL OBLIGATIONS (ECF NO. 1666)**

Fieldwood Energy LLC ("**Fieldwood**")[2] and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") hereby file this opposition to the motion for an order pursuant to 11 U.S.C. § 362(d) authorizing relief from the automatic stay to effectuate setoff of mutual obligations of BP Exploration & Production Inc. ("**BP**"), filed on June 20, 2021. ECF No. 1666 (the "**Motion**").

**PRELIMINARY STATEMENT**

1. In order to be entitled to lift the stay to effectuate setoff, BP must show as a threshold matter that a right to setoff exists under state law or federal non-bankruptcy law. In its Motion, BP contends that it has a right to setoff based solely on Texas common law. Mot. ¶ 10.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Fieldwood is a Delaware limited liability company with its principal place of business located at 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Under Texas law, a right of setoff does not exist when the party seeking setoff does not have a right to sue for non-payment. *See, e.g.*, *Bear Lake Rsrv. Owners Ass'n, Inc. v. Centex Homes*, No. 3:12-CV-3039-P, 2014 WL 12577073, at *8 (N.D. Tex. June 30, 2014). Section 3.1 of the Genovesa PSA (as defined below) says:

> [A] one-time payment of Thirty Million and No/100 Dollars ($30,000,000.00), which becomes payable and owing to Seller upon the successful completion of the Genovesa Well or any other well within the Genovesa Formation and **shall be due and paid to Seller within the first one hundred eighty (180) days of production (whether consecutive or not)** of Hydrocarbons from any such well (the "*Contingent Payment*").

(Bold emphasis added). There is no dispute that Genovesa, which went online on March 27, 2021, has not yet produced for 180 days. Thus, BP has no current right to sue Fieldwood for non-payment under the Genovesa PSA,[3] and no right to setoff exists under Texas law. For these reasons and as set forth below, cause does not exist to lift the stay, and the Court should deny the Motion.

## STATEMENT OF FACTS

### I. Debtors' Chapter 11 Cases

2. On August 3 and 4, 2020, the Debtors each commenced in this Court a voluntary case under title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

---

[3] The Debtors do not think any amount is or will be due.

2

"**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

4.  On June 25, 2021 the Court entered *Findings of Fact, Conclusions of Law and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 1751).

**II.  The Genovesa PSA**

5.  The Genovesa well is located in the Gulf of Mexico ("**Genovesa**"). Genovesa is one of several wells and prospects that currently flow or eventually will flow production on a nearby undersea loop pipeline called the Galapagos Area Loop Subsea Production System.

6.  In 2018, Genovesa was owned by the Debtors and BP, among others. The Debtors also operate Genovesa.

7.  In addition to its partial ownership interest in Genovesa, BP also owned (and still owns) the Manuel well ("**Manuel**"), which draws from the same oil reservoir as Genovesa.

8.  In 2018, the Debtors were enthusiastic about Genovesa's prospect to produce oil. BP did not share the Debtors' enthusiasm, in part because, on information and belief, BP had already made a considerable investment in the drilling of Manuel, and Genovesa threatened to reduce the reserves captured from Manuel.

9.  In 2019, BP sold its interest in Genovesa to the Debtors to focus its efforts on Manuel. Specifically, on May 17, 2019, the Debtors and BP entered into a Purchase and Sale Agreement related to the Mississippi Canyon Block 519 under which the Debtors purchased an interest in certain deepwater property, including Genovesa (the "**Genovesa PSA**").

3

10. The Debtors originally planned for Genovesa to come online in late 2019, but BP's actions significantly delayed.  Despite the Debtors' best efforts, the Debtors were unable to bring Genovesa online in 2019 or 2020.

11. Only after this Court compelled BP to complete the work necessary to bring the Genovesa well online (or, alternatively, permit the Debtors to do the work themselves, which BP elected to do) were the Debtors able to bring Genovesa online and commence production.  ECF No. 845.

12. Despite BP's efforts to delay, Genovesa was finally brought online on March 27, 2021, and has been producing for nonconsecutive days since that time.  And, Michael Dane, the Debtors' Senior Vice President and Chief Financial Officer, testified that "[t]here's not a certainty that this well will produce for 180 days.  There's a number of things that could happen in the future that causes this well to not have produced for 180 days." Confirmation Hr'g Tr. 234:20–23, June 21, 2021, ECF No. 1763.[4]

## ARGUMENT

### I. BP is Not Entitled to Setoff Because BP Does Not Have a Valid Claim Under Texas Law

13. "The creditor asserting the right to setoff has the burden to establish that the right to setoff exists." *In re Corporate Resource Servs., Inc.*, 564 B.R. 196, 04 (Bankr. S.D.N.Y. 2017). The Bankruptcy Code does not create a right of setoff; rather, it merely recognizes and preserves setoff rights that exist outside of the bankruptcy process. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11

---

[4] BP claims "there has been a course of dealing between the parties (BP and Fieldwood) pursuant to which amounts owing from one party have been netted out against amounts due to the other party." Mot. ¶ 8.  BP's own witness on the topic at the Debtors' confirmation hearing belied this assertion. Confirmation Hr'g Tr. 79:18–80:2, June 22, 2021, ECF No. 1764.  The Debtors deny this unsubstantiated statement, which is contradicted by the record.

4

U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."). A party's setoff rights are determined by state law or federal non-bankruptcy law. *In re Corporate Resource Servs.*, 564 B.R. at 201–04. Further, the right to setoff must have arisen "prior to the commencement of the bankruptcy case." *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (5th Cir. 1987); *In re Gibson*, 308 B.R. 763, 769 (Bank. N.D. Tex. 2002). If the obligation does not arise prepetition, then it is not a valid claim for setoff. *See In re Kimball Trading Co. Inc.*, 2000 WL 992503, at *3 (5th Cir. 2000) (unpublished, per curiam) (finding no valid claim because a condition precedent in the contract was not met and therefore there was no prepetition obligation). The only law BP asserts grants it a right to setoff is Texas state law. *See* Mot. ¶ 10.

14.     Under Texas law, the party seeking setoff must show that it has "a *legal right* to recover the relevant sums[.]" *Texas Dept. of Mental Health & Mental Retardation v. Petty*, 817 S.W.2d 707, 719–20 (Tex. App. Austin 1991) (emphasis original), *aff'd*, 848 S.W.2d 680 (Tex. 1992) (per curiam) *and disapproved of on other grounds by Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (disapproving *Petty* for its analysis of notice requirements). To have a legal right to recovery, a party must have grounds for a suit. *Id.*; *Braniff*, 814 F.2d at 1036 ("Braniff could have certainly **brought an action** against Exxon in such a case, alleging that Exxon owed it either money or fuel." (emphasis added)). *See also Bear Lake Rsrv. Owners Ass'n, Inc. v. Centex Homes*, No. 3:12-CV-3039-P, 2014 WL 12577073, at *8 (N.D. Tex. June 30, 2014) (finding no right to setoff because the party asserting setoff had no "independent grounds for a suit"); *Buxbaum Holdings, Inc. v. Haggar Clothing Co.*, No. 3:12-CV-2167-P, 2014 WL 12577071, at *7 (N.D. Tex. Jan. 7, 2014) (same).

15. BP has no legal right to sue the Debtors for the $30 million it wishes to setoff. Section 3.1(b) of the Genovesa PSA contains two relevant clauses that must be read together. The first clause provides that the $30 million "becomes payable and owing to Seller upon the successful completion of [Genovesa]." *Id.* The second clause states that the $30 million "shall be due and paid to Seller within the first one hundred eighty (180) days of production (whether consecutive or not)." *Id*. The two clauses must be interpreted harmoniously to give meaning to each one. Therefore, upon completion of Genovesa, one condition for BP's $30 million contingent claim is satisfied. But that claim remains contingent until 180 days of production have occurred. In other words, under the Genovesa PSA, the Debtors only need to pay BP by the 180th day of production from Genovesa, a day which remains far in the future, if it ever comes. *See id*. If something catastrophic were to occur on the 179th day of production, permanently sealing Genovesa—an ever present risk for deepwater wells—the Debtors would never have to pay BP $30 million and BP would have no recourse. BP currently has no legal right to recover from the Debtors, and thus, under Texas law, has no right to setoff.

16. In BP's objection to the Debtors' Plan, BP claimed but made no effort to establish any right to setoff the Bankruptcy Code could preserve. *See BP's Objection to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1468), ¶¶ 44–45. The Debtors pointed this deficiency out in their response, which points are incorporated herein for all purposes. *Debtors' Memorandum of Law in Support of (I) Confirmation of Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Omnibus Reply to Objections Thereto* (ECF No. 1553), ¶ 130.

17. A week later, BP tried a second attempt to pursue the same setoff claim in the Motion, but still failed to address this fatal defect. Mot. ¶¶ 10–11. BP's only statement of Texas

6

law is drawn from a federal bankruptcy court in Delaware, which discusses only the general mechanics of setoff, not the threshold question of what it means to have a right to setoff under Texas law. *Id.* (citing *In re Garden Ridge Corp.*, 338 B.R. 627, 633 (Bankr. D. Del. 2006)).

18. Each of BP's cases are either irrelevant or actually support the Debtors' position. *See* Mot. ¶¶ 10–12. *In re Garden Ridge Corp.* is irrelevant since in it neither party contested that both of the debts arose pre-petition. *In re Garden Ridge Corp.*, 338 B.R. at 633.

19. In *In re United Air Lines Inc.*, U.S. Bank and United Air Lines had a contract under which U.S. Bank had "no discretion in disbursing [] funds" from a trust once United requested it, so "[u]nder California law as preserved in the Bankruptcy Code," U.S. Bank's obligation was "prepetition." *U.S. Bank Nat'l Ass'n v. United Air Lines, Inc. (In re United Air Lines, Inc.)*, 438 F.3d 720, 730–31 (7th Cir. 2006). Here, BP does not currently have a right to request payment from the Debtors, and instead must continue to wait and see if Genovesa completes 180 days of production.

20. In *In re Braniff*, a Fifth Circuit case, Braniff had made a pre-petition prepayment to Exxon for the sale of jet turbo fuel, so "pre-petition, Exxon clearly owed Braniff either fuel or a refund of the fuel prepayments. . . . Braniff could have certainly ***brought an action*** against Exxon in such a case [pre-petition], alleging that Exxon owed it either money or fuel." *In re Braniff*, 814 F.2d at 1032, 1036 (emphasis added). BP had no such right pre-petition, and does not even have such a right now.

21. In a later case, which BP does not cite, the Fifth Circuit doubled down on its holding in *Braniff*. *See In re Kimball*, 2000 WL 992503. Under a prepetition contract, Kimball Trading Co. provided Engage Energy U.S., LP natural gas. *Id.* at *2. Engage was obligated to redeliver this natural gas, but this obligation "was contingent on valid nominations being made by Kimball."

7

*Id.* Engage argued this obligation was prepetition in an effort to set it off against Kimball's prepetition debt to Engage. *Id.* at *1. Importantly, the Court rejected this argument because prepetition Kimball made no valid nominations and accordingly "Kimball was not entitled to payment nor had the right to an equitable remedy for breach of performance due to Engage's failure to redeliver this natural gas. . . . Thus, unlike *Braniff*, under these circumstances there was no amount of money or gas that Engage was obligated to return to Kimball." *Id.* at *2–3. Here, just like in *Kimball*, BP was not entitled to payment prepetition and even now has no remedy for the Debtors' non-payment under the Genovesa PSA.

22. Regarding BP's final case, *In re Young,* the Court notes "there must be a definite and enforceable obligation at the time the bankruptcy petition is filed," but that "intent does not create a 'definite liability' nor a debt that is absolutely owing." *In re Young*, 144 B.R. 45, 47 (Bankr. N.D. Tex 1992) (citations omitted) (finding that there was not a right to setoff because the debtors' claim did not ripen until the occurrence of an event after they filed for bankruptcy). Even though both the Debtors and BP may intend for Genovesa to produce for 180 days, this intent by itself does not create a right to payment. The intended event must actually occur before a payment becomes absolutely owing.

23. Thus, each of BP's relevant cases not only fail to advance BP's argument, but rather reinforce and support the Debtors'. BP again is attempting to have this Court manufacture a state-law right it does not have by vague references to general principles, and the Court should deny this attempt. BP has no right to setoff under Texas law and, accordingly, no right to setoff under the Bankruptcy Code.

**II.   There is No Cause to Lift the Automatic Stay**

24.   BP's lone argument that it has cause to lift the stay is that it has a right to setoff. *See* Mot. ¶ 15. Because BP has no such right, the Court should refuse to lift the stay. *See In re Gramercy Court, Ltd.*, No. BR 07-80177-G3-11, 2007 WL 2126493, at *5 (Bankr. S.D. Tex. July 19, 2007) ("[e]very party seeking relief from the automatic stay under section 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof.").

**III.   Waiver of the Fourteen-Day Stay Under Bankruptcy Rule 4001(a)(3) is Not Appropriate**

25.   The Bankruptcy Code § 4001(a)(3) imposes a 14-day stay on orders lifting the automatic stay. BP asks, if it wins on the rest of the Motion, the Court grant an exception from the 14-day stay, but provides no justification for it. As such, the Debtors respectfully request that the Court deny BP's unsupported request for an exception from the Bankruptcy Code.

## CONCLUSION

26.   For the foregoing reasons, the Court should deny the Motion in its entirety, and grant the Debtors all the relief to which they are entitled.

Dated: July 8, 2021
      Houston, Texas

    */s/ Paul R. Genender*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
        Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
        Erin.Choi@weil.com

**Certificate of Conference**

I hereby certify that, in accordance with Local Rule 9013-1(g), on July 8, 2021, I had a phone conversation with BP's counsel, Jared Weir, in an attempt to resolve the Motion without the necessity of a hearing, but we were unable to resolve the matter.

*/s/ Erin M. Choi*
Erin M. Choi

**Certificate of Service**

I hereby certify that, on July 8, 2021, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Paul R. Genender*
Paul R. Genender