IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § § § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § | (Jointly Administered) |

**BP EXPLORATION & PRODUCTION INC.'S REPLY IN SUPPORT OF
ITS MOTION FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. § 362(d) AUTHORIZING RELIEF FROM THE AUTOMATIC
STAY TO COMMENCE ARBITRATION AGAINST THE DEBTORS**

BP Exploration & Production Inc. ("BP") submits this reply (the "Reply") in support of its motion (the "Motion") for entry of an order pursuant to sections 105(a) and 362 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court the Southern District of Texas (the "BLR"), and Section 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3: (a) granting relief from the automatic stay to allow BP to commence and proceed with arbitration against Fieldwood Energy LLC ("Fieldwood") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"); and (b) compelling the parties to resolve their disputes in arbitration, as required by the parties' contract and the FAA. In support of this Motion, BP respectfully moves as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**Argument**

A.  **"Cause" Exists to Lift the Stay Because The Parties Have Triggered the Mandatory Arbitration Provision of the LSPS OA.**

1.  As set forth in the Motion, BP established "cause" for relief from the stay under Section 362(d)(1) of the Bankruptcy Code because the parties have triggered the mandatory arbitration provisions under the LSPS OA. Simply stated, a dispute exists regarding Fieldwood's attempt to remove BP as operator and the parties' agreement requires the arbitration of said dispute.

2.  Fieldwood makes several incorrect legal arguments in opposition to the arbitration relief sought in the Motion. Contrary to the suggestions Fieldwood makes in its Response: (1) the "*Sonnax* factors" do not apply with respect to a motion for stay relief to pursue arbitration; (2) BP has established that the dispute falls under the arbitration clause in the LSPS OA, and that standard for compelling arbitration of the dispute has been met; (3) as recognized by the Fifth Circuit, courts regularly grant stay relief to pursue arbitration; and (4) there is no distinction made in the case law between stay relief to remove a matter to arbitration and stay relief to commence arbitration. Each of these responses is addressed in turn below.

3.  Fieldwood's argument that BP must satisfy the *Sonnax* factors in the context of this Motion for stay relief to pursue arbitration is simply incorrect. For one, *Sonnax* is Second Circuit precedent that does not bind this Court. *See Torres v. Shalala*, 48 F.3d 887, 892 (5th Cir. 1995) ("Second Circuit precedent is not binding in this jurisdiction . . . ."). Of greater significance, even courts within the Second Circuit have ruled that the *Sonnax* factors do not apply to a stay relief motion seeking to pursue arbitration because of the strong federal policy favoring arbitration. *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 204 (Bankr. S.D.N.Y. 2002) ("*Sonnax* balancing does not apply, and the strong federal policy favoring arbitration trumps the usual considerations of judicial economy and efficiency which are important factors under *Sonnax*."); *see In re Cardali*,

2

No. 10-11185 SHL, 2010 WL 4791801, at *4 (Bankr. S.D.N.Y. Nov. 18, 2010) (recognizing same).

4.      In fact, numerous courts outside the Second Circuit have ruled on motions to lift the stay to compel arbitration without applying the *Sonnax* factors. *See, e.g.*, *In re Argon Credit, LLC*, No. 16-39654, 2018 WL 4562542, at *4 (Bankr. N.D. Ill. Sept. 21, 2018) (utilizing *Nat'l Gypsum* analysis and granting stay relief); *In re 72 Townsend, LLC*, No. 09-33684 TEC, 2010 WL 1689564, at *4 (Bankr. N.D. Cal. Apr. 22, 2010) (providing that stay relief was required absent a showing that "Congress intended to preclude a waiver of judicial remedies for the particular claim at issue"); *In re Enron Corp.*, 364 B.R. 489, 517 (Bankr. S.D.N.Y. 2007) ("[A] bankruptcy court may not preclude arbitration unless the proceeding is premised on Bankruptcy Code provisions that 'inherently conflict' with the FAA or where arbitration would jeopardize objectives of the Bankruptcy Code."); *In re Nw. Corp.*, 319 B.R. 68, 75 (D. Del. 2005) (reversing bankruptcy court's order denying stay relief on basis that the disputed claim for arbitration was non-core); *In re Pico Group, Inc.*, 304 B.R. 170, 174–75 (Bankr. M.D. Pa. 2003) (lifting the stay to allow arbitration of a core proceeding); *In re Jotan, Inc.*, 232 B.R. 503, 505–08 (Bankr. M.D. Fla. 1999) (utilizing *Nat'l Gypsum* analysis and granting stay relief).

5.      Indeed, Fieldwood does not cite any cases applying the *Sonnax* factors in the context of a motion for stay relief to pursue arbitration.

6.      Rather than applying the *Sonnax* factors, courts apply the same factors they would apply in the context of a motion to compel arbitration. *In re Arundotech, LLC*, No. BAP.CC-08-1282-PADC, 2009 WL 7809008, at *7 (B.A.P. 9th Cir. May 4, 2009) (Carlson, J., concurring) ("[B]ankruptcy courts resolve stay-relief motions involving arbitration by determining whether arbitration is required under the Arbitration Act, rather than under the more general concept of

3

cause set forth in § 362 of the Bankruptcy Code."); *see also Argon Credit, LLC*, 2018 WL 4562542, at *4 ("The analysis is the same even where the issue is presented by way of a motion to modify the automatic stay rather than as a motion to compel arbitration.").

7. As this Court recognized in the recent *In re EXCO Servs.*, 2020 Bankr. LEXIS 1110, *8 (Bankr. S.D. Tex. Apr. 22, 2020) case, there is a two part test under the Fifth Circuit's *National Gypsum* decision to determine whether an arbitration clause is enforceable in a bankruptcy proceeding: "First, the court must determine whether the proceeding adjudicates rights created exclusively by the Bankruptcy Code. . . . If so, the court may proceed to the second inquiry: 'whether arbitration would conflict with the purposes of the Bankruptcy Code.'" *Id.* *7 (internal quotations omitted).

8. In this case, it is clear that the issue of whether BP can be removed as operator under the terms of the LSPS OA does not adjudicate rights created exclusively by the Bankruptcy Code. It is a dispute under a pre-petition contract that is governed by maritime law. There is simply no Bankruptcy Code right that is being implicated by the dispute, and Fieldwood does not allege otherwise. As such, BP has established that arbitration is appropriate and required with respect to the dispute, and thus there is "cause" for stay relief under Section 362(d)(1).

9. As this Court also recognized in *EXCO*,

> There is 'a national policy favoring arbitration of claims that parties contract to settle in that manner.' . . . Generally, arbitration is mandatory when a dispute falls within the scope of a valid arbitration agreement. . . . To defeat a valid agreement, 'the party opposing arbitration can show that its position is supported by a congressional command that supersedes the direction of the Federal Arbitration Act.'

*Id.* (internal quotations omitted).

10. Here, BP has demonstrated that the dispute falls within the scope of the valid arbitration provision contained within the LSPS OA, and Fieldwood does not argue otherwise.

4

Fieldwood has not identified any "congressional command" that supersedes the application of the FAA in this case. As such, this Court should lift the stay and compel arbitration of the dispute consistent with the parties' agreement.

11. Fieldwood also disputes the Fifth Circuit's recognition in *National Gypsum* that "[i]n the most common type of creditor-initiated core proceeding—a motion for relief from the automatic stay—bankruptcy courts *regularly* have permitted arbitration *to continue (or commence)* in spite of the presence of core bankruptcy jurisdiction." *In re National Gypsum Co.*, 118 F.3d 1056, 1067) (5th Cir. 1997) (emphasis added). The Fifth Circuit was correct; there are numerous examples of cases in which courts have regularly granted stay relief to permit arbitration to *continue or commence*. *Argon Credit, LLC*, 2018 WL 4562542, at *4 (lifting stay to permit counter-party to commence arbitration); *72 Townsend, LLC*, 2010 WL 1689564, at *4 (lifting the stay on basis that debtor failed to establish "that Congress intended to preclude a waiver of judicial remedies for the particular claim at issue."); *Phico Grp., Inc.*, 304 B.R. at 175 (lifting the stay to permit completion of arbitration proceedings); *In re Quad Sys. Corp.*, No. 00-35667F, 2001 WL 1843379, at *9 (E.D. Pa. Mar. 20, 2001) (lifting the stay to permit completion of arbitration proceedings); *In re Ionosphere Clubs, Inc.*, 105 B.R. 761, 765 (Bankr. S.D.N.Y. 1989) (lifting the stay to permit completion of arbitration proceedings).

12. Fieldwood does not offer any cases in support of its contrived distinction between stay relief to continue arbitration and to commence arbitration, the Fifth Circuit expressly contemplated both, and the case law examples cited above demonstrate cases in which courts have granted stay relief in both contexts.

13. Accordingly, BP has established "cause" for stay relief to purse arbitration. Fieldwood has not identified any valid legal basis to oppose arbitration in this context.

5

**B.     BP's Desire to Arbitrate the Parties' Current Dispute Is Not A Collateral Attack on the Court's February 3 Order.**

14.    BP's current dispute with Debtors is separate and distinct from the one addressed at the February 2, 2021 Emergency Hearing and related proceedings (the "<u>Emergency Hearing</u>"). In their Emergency Motion to Compel BP Exploration & Production Inc. to Perform Pre-Petition Contracts (the "<u>Emergency Motion</u>"), Debtors sought the following relief:

> Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors respectfully request that this Court compel BP to (a) perform under and comply with the terms of the Agreements, including, without limitation, BP's obligations under the Agreements, to take the necessary steps to cause the Genovesa well to come online by April 5, 2021, and (b) allow the Debtors to perform all necessary steps to cause the Genovesa well to come online by April 5, 2021.

[Docket No. 792 at ¶ 7].  Following the Emergency Hearing, the Court gave BP the option to complete the work on the Single Flowline Project itself or allow Fieldwood to do the work.  BP elected to have Fieldwood do the work.  The Court then authorized Fieldwood to complete certain work to bring the Genovesa well online and ordered BP to cooperate in that effort.  [Docket No. 845 at p. 3].  Notably, the Court also ordered that "nothing herein shall create, nor is intended to create, any rights in favor or enhance the status of any claim held by any party."  [*Id*.].  As explained by Debtors in the disclosure statement, BP complied with the Court's order: "Since the date of the order, BP and FWE have worked cooperatively on the SFLP project. Genovesa was successfully brought online as planned on March 27, 2021." [Docket No. 1285 at p. 60].  In short, the issue addressed at the Emergency Hearing was either resolved on February 3, 2021, or, at the very latest, in March when the Genovesa well came online.  Even Debtors, in their Response, have described that dispute as having been litigated "to completion." [Dkt. 1795 at ¶ 41].

15.    On May 14, 2021, approximately forty-five days after the Genovesa well was brought online, Fieldwood initiated a new dispute when it sent BP a letter purporting to remove

6

BP as operator of the LSPS. The timing of this action matters, as the LSPS OA only contemplates removal by written notice **"during the continuation"** of certain numerated circumstances—none of which Fieldwood has shown to have been present on May 14, 2021. [Dkt. No. 1414-8 at p. 3]. For its part, BP disputed (and continues to dispute) the efficacy of the May 14, 2021 letter and BP initiated the dispute resolution procedures under the LSPS OA in order to determine whether BP may be removed as operator. Fieldwood has refused to participate in the LSPS OA dispute resolution procedures necessitating BP's filing of the Motion to Lift Stay.

**C.     Even So, BP Did Not Waive its Right to Arbitration by Participating in the Emergency Proceedings February 2, 2021 Hearing.**

16.     BP did not waive its right to arbitration with respect to the current operatorship dispute by responding and defending its position with respect to the Emergency Hearing because (1) the present dispute is separate from the one addressed at the Emergency Hearing, and (2) BP did not invoke the judicial process. As a result, Fieldwood's waiver argument fails.

17.     "A party waives its right to compel arbitration when it substantially invokes the judicial process to the detriment or prejudice of the other party." *In re EXCO Servs.*, Nos. 18-30167, 18-30155, 2020 Bankr. LEXIS 1110, at *13 (Bankr. S.D. Tex. 2020) (internal quotation marks and citation omitted). Because "[t]here is a strong presumption against waiver of arbitration . . . a party alleging waiver of arbitration must carry a heavy burden." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (internal citations omitted); *accord Petroleum Pipe*, 575 F.3d at 480.

18.     "To invoke the judicial process, a party 'must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009). Here, it was Fieldwood, not BP, that invoked the judicial process by filing the

7

Emergency Motion, and BP did not otherwise seek any affirmative relief from the Court. *Cf. Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018) (holding that defendant substantially invoked the judicial process when it filed a motion to dismiss with prejudice). BP merely responded to and defended itself against the relief sought in that motion and then fully complied with the Court's resulting order. Courts have declined to find waiver for much more. *See, e.g., Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577–78 (5th Cir. 1991) (finding no waiver when a defendant conducted discovery and waited thirteen months before demanding arbitration, particularly because the discovery was minimal and the defendant did not ask the court to make any judicial decision by filing dispositive motions); *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420–21 (5th Cir. 1985) (finding no waiver when a defendant participated in eight months of discovery before filing a motion to compel arbitration).

19. As discussed above, BP's compliance with the Court's order is not in question. Nor is there any dispute over the validity of that order. Rather, the parties' present dispute relates solely to the interpretation of the LSPS OA and Fieldwood's attempt to remove BP as operator of the LSPS—an issue that was never raised at the Emergency Hearing and, indeed, did not even arise until nearly 100 days later when Fieldwood sent BP a letter purporting to remove BP as operator of the LSPS. Accordingly, it is not possible for BP to have invoked the judicial process in February for a dispute that did not even exist at the time.

20. Additionally, Fieldwood cannot demonstrate that it will be prejudiced if the current dispute is resolved in arbitration. Fieldwood argues that it will be prejudiced because BP is seeking to "re-litigate the dispute underlying" the Emergency Hearing. [Docket No. 1795 at ¶ 43]. That is inaccurate; BP is not attempting to re-litigate issues resolved at the Emergency Hearing.

21. Fieldwood's May 14, 2021 letter purports to remove BP as operator pursuant to Article 3.02(a) of the LSPS OA. [Dkt. No. 1414-8 at p. 3]. Nowhere in the Emergency Motion did Fieldwood request such relief under Article 3.02(a) of the LSPS OA from the Court. [*See, generally*, Docket No. 792]. Additionally, Fieldwood has already obtained the relief based on its Emergency Motion—relief this Court expressly limited by stating: "nothing herein shall create, nor is intended to create, any rights in favor or enhance the status of any claim held by any party." [Docket No. 845 at p. 3]. Moreover, it would have been impossible for the Court's February 3, 2021 order to determine that there was the required continuing breach on May 14, 2021, the date sent its letter purporting to remove BP as operator.

22. Whether Fieldwood had successfully invoked Article 3.02(a) was not before the Court in February, and BP was not on notice that its operatorship of the entire LSPS loop system was at stake. In order to remove BP on May 14, 2021, Fieldwood needed to rely upon continuing—not historical—circumstances. Ironically, it seems it is actually Fieldwood, not BP, that is seeking to re-litigate the Emergency Hearing. Fieldwood has not demonstrated that BP is seeking to re-litigate anything and, thus, its prejudice argument fails.

## Conclusion

BP requests that the Court grant its motion and enter an order, substantially in the form attached to the motion as **Exhibit 1**, granting stay relief so that BP can commence arbitration against Fieldwood.

Dated: July 9, 2021

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Shari L. Heyen*
Shari L. Heyen
Texas State Bar Number 09564750
HeyenS@gtlaw.com
Karl D. Burrer
Texas State Bar Number 24043584
BurrerK@gtlaw.com
Nicole S. Bakare
Texas State Bar Number 24056017
BakareN@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

– and –

Craig A. Duewall (admitted *pro hac vice*)
Texas State Bar Number 24025334
DuewallC@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

– and –

**GREENBERG TRAURIG, P.A.**

John B. Hutton (admitted *pro hac vice*)
HuttonJ@gtlaw.com
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

***Counsel for BP Exploration & Production Inc.***

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing pleading has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on July 9, 2021.

                                          */s/ Craig A. Duewall*
                                          Craig A. Duewall