United States Courts
Southern District of Texas
FILED

JUL 16 2021

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |

**SUPPLEMENTAL BRIEF OF BP EXPLORATION & PRODUCTION INC.
IN SUPPORT OF MOTION
FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C.
§ 362(d) AUTHORIZING RELIEF FROM THE AUTOMATIC STAY
TO COMMENCE ARBITRATION**

[Related Docket Nos. 1414, 1795, and 1844]

In accordance with this Court's instructions at the July 9, 2021 hearing on the *Motion of BP Exploration & Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence and Proceed with Arbitration Against the Debtors* (the "Motion")[1] [Docket No. 1414], BP Exploration & Production Inc. ("BP") submits this supplemental brief (this "Supplemental Brief") in further support of the Motion and its argument that by appearing in defense of Fieldwood's emergency motion to compel performance by BP, on four business days' notice, BP did not waive arbitration with respect to a new dispute alleged by Fieldwood that arose over 100 days later upon Fieldwood's May 14, 2021 notice seeking to unilaterally remove BP as operator of the entire Galapagos Loop System.[2] In support of this Supplemental Brief, BP respectfully states as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to such terms in the Motion.

[2] BP engaged undersigned counsel around January 25, 2021. Fieldwood's Emergency Motion was filed on Wednesday, January 27, 2021, with a status conference on Monday, February 1, and a full evidentiary hearing on Tuesday, February 2. BP had four business days to evaluate the relief requested in the Emergency Motion, and prepare for the emergency hearing. There was no discovery and no depositions during this extremely accelerated time period

ACTIVE 58684616v1

## Preliminary Statement

1. Fieldwood has failed to establish that BP waived its right to arbitrate the current operatorship dispute under Fifth Circuit precedent. Indeed, Fieldwood has not met—nor could it meet—the high standard required to establish waiver of arbitration rights under the present circumstances. First, responding to and defending the Emergency Motion, which only sought preliminary injunctive relief and was unrelated to the current operatorship dispute, does not constitute a substantial invocation of the judicial process that is sufficient to lead to waiver of arbitration rights.

2. Second, Fieldwood cannot demonstrate the necessary prejudice under these circumstances. There has been no discovery or dispositive motions regarding the current dispute, which concerns whether Fieldwood can unilaterally remove BP as the operator of the LSPS, an issue not raised by the Emergency Motion; BP is not seeking to re-litigate any issues determined at the Emergency Hearing. The current dispute was only first raised by Fieldwood in a May 14, 2021 letter to BP. After receiving such letter, BP promptly asserted its arbitration right, first via a return letter to Fieldwood days later and ultimately via the Motion which was filed on May 28, 2021. There can, therefore, be no question that BP has timely asserted its arbitration rights with respect to the current operatorship Dispute.

3. Moreover, even if BP's defense and response to the Emergency Motion did effect a waiver of arbitration rights (which it did not), the scope of any alleged waiver must be construed narrowly and confined to the subject matter of the particular dispute raised by the Emergency Motion, which did not include the question of whether Fieldwood could unilaterally remove BP

---

and BP argued for arbitration in its response to the Emergency Motion. And, there was no allegation by Fieldwood that BP should be removed as the operator of the entire loop system. Fieldwood's attempt to expand the Court's February 3 order raises serious due process concerns.

2

as the operator of the entire LSPS. In other words, the present dispute is separate from the one addressed at the Emergency Hearing and BP's supposed waiver does not extend to subsequent disputes such as the instant dispute regarding BP's continued status as operator of the LSPS.

## Discussion

### A. Fieldwood has not carried its heavy burden of showing that BP waived its right to arbitration.

4. When determining whether a party moving to compel arbitration has waived its right to do so, courts only "look at two questions: (1) did [the movant] substantially invoke the judicial process, and if so, (2) was [the non-movant] prejudiced thereby?" *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907-08 (5th Cir. 2009); *see In re EXCO Servs.*, Nos. 18-30167, 18-30155, 2020 Bankr. LEXIS 1110, at *13 (Bankr. S.D. Tex. Apr. 22, 2020) ("A party waives its right to compel arbitration when it substantially invokes the judicial process to the detriment or prejudice of the other party.") (internal quotation marks and citation omitted).

5. "'There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden.'" *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010) (quoting *Republic Ins. Co. v. PAICO Receivables LLC*, 383 F.3d 341, 344 (5th Cir. 2004)); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999); *Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1164 (5th Cir. 1987).[3]

6. Because arbitration is favored, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver*, delay, or a like defense to arbitrability."

---

[3] The strong presumption in favor of arbitration is also enshrined in the provisions of the Federal Arbitration Act that make an order denying a motion to compel arbitration immediately appealable but limit the appealability of an order directing arbitration. *See* 9 U.S.C. § 16(a)–(b); *see also, e.g., May v. Higbee Co.*, 372 F.3d 757, 760–63 (5th Cir. 2004).

3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, (1983) (emphasis added).

        *i.*      *BP did not substantially invoke the judicial process.*

7.    "To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (internal quotation marks omitted); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). BP has taken no overt action that evidenced any desire to have the Court resolve any issues that could have been subject to arbitration, and certainly not the complete removal of BP as the operator of the entire loop system.

8.    Fieldwood's request for the type of preliminary judicial relief sought in the Emergency Motion is contemplated under Article (I)(A)(i) of the Dispute Resolution Procedure:

> The arbitration process is binding on the Parties and this arbitration is intended to be a final resolution of any Dispute between the Parties as described above, to the same extent as a final judgment of a court of competent jurisdiction. Each Party hereby expressly covenants that it shall not resort to court remedies except as provided for herein, *and for preliminary relief in aid of arbitration.*

(LSPS, Dispute Resolution Procedure, Art. I(A)(i)) (emphasis added).[4] In accordance with the Dispute Resolution Procedure, Fieldwood decided to seek preliminary relief with the Court by filing the Emergency Motion. In turn, BP merely responded to and defended itself against the relief

---

[4] Indeed, the type of emergency injunctive relief sought by Fieldwood in the Emergency Motion is not available through arbitration under the Dispute Resolution Procedure, which arbitration process provides for 10 days from notice for the parties to appoint a Management Representative (Art. I(C)), 30 days from notice for the parties to attempt good faith negotiations to resolve the Dispute (Art. I(C)), 40 days from notice to initiate arbitration (Art. II(A)), 30 days from the initiation of arbitration to select an arbitrator (Art. II(D)), 30 days from selection of an arbitrator for the parties to provide a Submission (Art. II(G)), 30 days thereafter for discovery (Art. II(I)), and at least 25 days for presentations to the Arbitrator (Art. II(J)). Obviously, the limited emergency injunctive relief sought by Fieldwood could not be addressed under this arbitration Procedure, and certainly not in the time frame required by Fieldwood.

4

sought in that Emergency Motion and then fully complied with the Court's resulting order.[5] A party defending against preliminary injunctive relief is not substantially invoking the judicial process. *See Maldonado v. Firstservice Residential, Inc.*, No. CV H-20-1484, 2021 WL 966064, at *5 (S.D. Tex. Mar. 15, 2021) ("[Defendant] filed a counterclaim seeking damages and injunctive relief **and participated in the preliminary-injunction hearing**. . . . These acts, considered alone or together, do not amount to substantial invocation of the judicial process.") (emphasis added); *see Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661–62 (5th Cir. 1995) (providing that filing a counterclaim, answering the complaint, exchanging discovery did not substantially invoke the judicial process); *Superior Oil Co. v. Transco Energy Co.*, 616 F. Supp. 98, 104 (W.D. La. 1985) (providing that party compelling arbitration did not waive its right to arbitrate by seeking document production because it was necessary to defend against plaintiff's preliminary injunction).

9. Even if BP had been the party seeking preliminary injunctive relief (which it was not), the act of seeking preliminary injunctive relief does not qualify as a substantial invocation of the judicial process sufficient to waive arbitration rights. *Maldonado*, 2021 WL 966064, at *5 (providing that there is no substantial invocation when a party seeks injunctive relief contemplated by an arbitration clause because the arbitration clause "allows the parties to seek injunctive relief in court while simultaneously pursuing damages claims in arbitration"); *DRW Tex. LLC v. McGrew*, No. 19-CV-00830, 2019 WL 7761812, at *5 (W.D. Tex. Oct. 31, 2019) (finding no substantial invocation even though the party seeking arbitration filed for preliminary injunctive relief); *Custom Teleconnect, Inc. v. Billing Concepts, Inc.*, No. 11-CV-204, 2011 WL 13324085,

---

[5] The Court recognized at the July 9 hearing that BP did not seek any affirmative relief at the Emergency Hearing. "**[BP] didn't seek affirmative relief, Mr. Genender.** Seeking to limit what you're getting and to limit damages to them from what you're getting is not seeking affirmative relief. It's participating in a hearing therein." [Docket No. 1884], *Motion Hearing (Via Zoom)*, 33:22-25 (July 9, 2019) (emphasis added).

5

at *12 (W.D. Tex. July 20, 2011) (finding no substantial invocation even though the party seeking arbitration filed a motion for injunctive relief).

10. The standard for substantial invocation of judicial process requires far more extensive and involved conduct than anything BP has undertaken in responding to Fieldwood's Emergency Motion. For example, filing suit in the District Court or in state court to affirmatively recover on claims, without asserting a right to arbitrate from the start, but rather waiting until it is convenient to seek arbitration, is the classic example of substantial invocation of judicial process. *Nicholas*, 565 F.3d at 908. Moreover, even the facts of cases in which courts have found that there was no substantial invocation of judicial process involved more extensive conduct on the part of the non-waiving party that any conduct engaged in by BP here.[6] Indeed, Fieldwood has not cited any cases finding waiver based upon a party's appearance and defense (including requesting mediation, requesting a bond and seeking a directed verdict) at an emergency preliminary hearing seeking injunctive relief; the cases cited by Fieldwood require far more "invocation" of the judicial process to establish waiver.[7]

---

[6] For example, removing a state-court case to federal court, filing motions to dismiss and to stay proceedings, filing an answer, and responding to and propounding discovery before seeking arbitration was not a substantial invocation of judicial process. *Williams*, 56 F.3d at 661-62. Filing a motion to dismiss, filing an early summary judgment motion that was defensive in nature, and responding to discovery requests before seeking arbitration did not constitute a substantial invocation of judicial process. *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 848-49 (S.D. Tex. 2013). Similarly, filing an answer and a motion to dismiss, amending that answer twice, and responding to discovery requests before bringing a motion to compel was not a substantial invocation of the judicial process. *In re Griffin*, 585 B.R. 794, 804-05 (Bankr. S.D. Miss. 2018).

[7] *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (buyer filed motions to dismiss with prejudice on affirmative defenses of waiver and releases, and waited 18 months to file motion to arbitrate); *Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018) (operator filed motion to dismiss with prejudice, seeking a ruling on the merits, and waited 13 months before seeking to compel arbitration); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, No. 20-20221, 2021 WL 2177062, at *6 (5th Cir. May 28, 2021) (consultants initiated lawsuit, demanded a jury trial, filed a motion to remand the action to state court, filed numerous pleadings, and filed an appeal; consultants sought arbitration after appeal was final, over 3 years later); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004) (insurer answered counterclaims; conducted full-fledged discovery, including four depositions; amended its complaint; and filed the required pretrial materials with the district court, waiting until a few days before trial to seek arbitration); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 911 (5th Cir. 2009) (widow initiated suit seeking ruling on the merits, filed motion seeking removal/remand, filed an amended complaint, made initial disclosures, engaged in a meet-and-confer, and responded to discovery requests, waiting 10 months before seeking arbitration); *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009) (manufacturer removed

ACTIVE 58684616v1

11. In addition, BP's compliance with the Court's order is not in question. Nor is there any dispute over the validity of that order. Rather, the parties' present Dispute relates solely to the interpretation of the LSPS OA and Fieldwood's unilateral attempt to remove BP as operator of the LSPS—an issue that was never raised at the Emergency Hearing and, indeed, did not even arise until over 100 days later when Fieldwood sent BP a letter purporting to remove BP as operator of the LSPS. Accordingly, it is not possible for BP to have invoked the judicial process in February for a dispute that did not even exist at the time.[8]

        ii.     *Even if BP "substantially" invoked the judicial process, Fieldwood cannot demonstrate prejudice.*

12. For purposes of determining whether a movant has waived its right to compel arbitration "prejudice . . . refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Republic Ins. Co.*, 383 F.3d at 346 (internal quotation marks omitted). There are three factors that are particularly relevant to determining prejudice: "(1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in

---

the case to federal court; filed counterclaims that relate to the settlement agreement; participated in discovery and numerous discovery meetings; and sought a ruling from the district court on the interpretation of the settlement agreement, waiting 1 year to seek arbitration); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (after extensive pretrial litigation, attorney invoked arbitration clause as affirmative defense, 4 years after commencement of case).

[8] The Emergency Motion sought to compel BP to perform on an executory contract pursuant to section 365 of the Bankruptcy Code, specifically, to bring the Genovesa well online or to allow the Debtors to perform the actions necessary to bring Genovesa online. [*See* Emergency Mot., ¶¶ 1-5, 7]. Following the Emergency Hearing, the Court gave BP the option to complete the necessary work itself or allow Fieldwood to do so. BP elected the latter option, and the Court authorized Fieldwood to do the work and ordered BP to cooperate with Fieldwood's efforts to bring Genovesa online. [Docket No. 845, at p. 3]. BP fully complied with this Court's order. In fact, Fieldwood acknowledged in every disclosure statement it filed with the Court after the February 2 hearing, "[s]ince the date of the order, BP and FWE have worked cooperatively on the SFLP project. Genovesa was successfully brought online as planned on March 27, 2021." [Docket No. 1285, pp. 48-49 (Apr. 15, 2021); Docket No. 1270, pp. 48-49 (Apr. 14, 2021); Docket No. 1254, pp. 48-49 (Apr. 9, 2021)]; *see* [Docket No. 1117, pp. 47-48 (Mar. 24, 2021); Docket No. 1102, pp. 47-48 ( Mar. 23, 2021); and Docket No. 1022, pp. 45-46 (Mar. 16, 2021)]. As such, the dispute raised by the Emergency Motion—whether the Genovesa well would be brought online and by whom—was resolved by, at the latest, March 27, 2021 when Genovesa was successfully brought online. The current Motion, by contrast, concerns Fieldwood's attempt, initiated by the May 14, 2021 letter, to unilaterally remove BP as the operator of the LSPS, a step which requires the "continuation" of certain circumstances enumerated in the LSPS OA. [Docket No. 1414-8, at p. 3].

7

defending against a [substantive dispositive motion]; and (3) a party's failure to timely assert its right to arbitrate." *Jindal Saw Ltd.*, 575 F.3d at 480.

13.     Fieldwood cannot demonstrate that any of the three prejudice factors have been met and presented no evidence of prejudice whatsoever at the July 9, 2021 hearing on the Motion. First, no discovery has occurred with respect to the current operatorship dispute.[9]

14.     Second, Fieldwood has not incurred any time and expense in defending against a substantive, dispositive motion or other proceeding respecting the current operatorship dispute, as no such motions have been filed.[10] Any time or expenses related to Fieldwood's prosecution of the Emergency Motion do not fall within the scope of this second factor for establishing prejudice, and Fieldwood cannot point to any other delay or expenses it has been forced to incur as a result of the timing of BP's assertion of its arbitration right.

15.     Third, BP has timely asserted its right to arbitrate under the LSPS OA. Fieldwood's letter to BP purporting to remove it as operator pursuant to Article 3.02 of the LSPS OA was dated May 14, 2021, and BP responded by letter on May 19, 2021. *See* Mot., Ex. A6, A7. BP and Fieldwood exchanged further communications regarding the May 14, 2021 letter and BP's attempts to invoke the Dispute Resolution Procedures from May 21, 2021 to May 24, 2021. *See id.* Ex. A8, A9, A10. Shortly thereafter, on May 28, 2021, BP filed the Motion. In light of the

---

[9]     *See, e.g., Fernandez v. Sierra Plastics*, Case No. 20-CV-00290, 2021 U.S. Dist. LEXIS 51958, at *24-26 (W.D. Tex. Mar. 16, 2021) (finding no prejudice where only minimal discovery was conducted, such discovery began only after the motion to compel arbitration was filed, and no litigation on the merits had occurred); *Trevino v. Select Portfolio Serv., Inc.*, 599 B.R. 526, 551 (Bankr. S.D. Tex. 2019) (finding no prejudice where, *inter alia*, no discovery had been taken at all, no expert or trial preparation had been undertaken, and no summary judgment motions had been brought).

[10]    *See, e.g., Fernandez*, 2021 U.S. Dist. LEXIS 51958, at *26 (finding no prejudice where no litigation on the merits of the arbitrable dispute had occurred); *Trevino*, 599 B.R. at 551 (finding no prejudice where no expert or trial preparations had occurred and no dispositive motions had been brought). Motions seeking preliminary equitable relief and motions seeking to compel arbitration, unlike summary judgment motions, do not count as motions seeking dispositive relief. *See In re Consol. FGH Liquidating Tr.*, 419 B.R. 636, 643-47 (Bankr. S.D. Miss. 2009) (filing a proof of claim, responding to a claim objection, conducting related, but limited, discovery, and filing a motion for stay relief to commence arbitration in a bankruptcy case were not "action[s] that [are] inconsistent with [the] right to arbitrate that would constitute a waiver of that right").

8

foregoing timeline of events, Fieldwood does not contend, nor could it contend, that BP failed to timely assert its arbitration rights in response to the May 14, 2021 letter, which letter initiated the current operatorship Dispute.[11]

16. Instead, Fieldwood contends that in order to timely assert its arbitration rights under the LSPS OA, BP should have raised such rights in response to the Emergency Motion. In addition, Fieldwood argues that it will be prejudiced because BP is seeking to "re-litigate the dispute underlying" the Emergency Hearing. [Docket No. 1795 at ¶ 43]. Both of these contentions are inaccurate and flawed; as BP made clear at the July 9 hearing, BP is not attempting to re-litigate issues resolved at the Emergency Hearing, and BP cannot have failed to timely assert its right to arbitrate by failing to invoke such right at a time when the arbitrable dispute had not yet come into existence and was thus never adjudicated on the merits. Fieldwood's May 14, 2021 letter purports to remove BP as operator pursuant to Article 3.02(a) of the LSPS OA. [Dkt. No. 1414-8 at p. 3]. Nowhere in the Emergency Motion did Fieldwood request such relief under Article 3.02(a) of the LSPS OA from the Court. [*See generally* Docket No. 792]. Additionally, Fieldwood has already obtained the relief based on its Emergency Motion—relief this Court expressly limited by stating: "nothing herein shall create, nor is intended to create, any rights in favor or enhance the status of any claim held by any party." [Docket No. 845 at p. 3]. Moreover, it would have been impossible for the Court's February 3, 2021 order to determine that there was the required *continuing breach* on May 14, 2021, the date Fieldwood subsequently sent its letter purporting to remove BP as

---

[11] *See, e.g., Joseph Chris Personnel Servs. Inc. v. Rossi*, 249 Fed. App'x 988, 992 (5th Cir. 2007) (holding that a request to arbitrate made three months into a lawsuit brought by the requesting party was not untimely and noting that requests to arbitrate made up to six to eight months into litigation have been held to be timely), *cert. denied sub nom. Rossi v. Joseph Chris Personnel Servs. Inc.*, 552 U.S. 1311 (2008); *Cargill Ferrous Int'l v. Sea Phoenix MV*, 325 F.3d 695, 700-01 (5th Cir. 2003) (filing motion to compel arbitration six months into litigation was timely where right to arbitrate was asserted in initial answer); *see also Republic*, 383 F.3d at 346-47 ("When a timely demand for arbitration was made, 'the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver.'") (quoting in part *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985))).

9

operator. (LSPS, Art. 3.02(a) (providing that a party can remove an operator "during the *continuation* of one (1) of the following circumstances . . . .") (emphasis added). Neither the Court nor BP received notice that Fieldwood would seek to use the February 3 order to seek to remove BP as operator of the LSPS loop system over 100 days after the Emergency Hearing. In fact, the Court stated at the July 9 hearing that the Court did not think it was trying that issue either. [Docket No. 1884], *Motion Hearing (Via Zoom)*, 29:12-22 (July 9, 2021).[12]

17.     Whether Fieldwood had invoked Article 3.02(a) was not before the Court in February, and BP was not on notice that its operatorship of the entire LSPS loop system was at stake. In order to remove BP on May 14, 2021 as operator, Fieldwood needed to rely upon continuing—not historical—circumstances. Fieldwood has not demonstrated that BP is seeking to relitigate anything and, thus, its prejudice argument fails.

## Conclusion

Accordingly, for the reasons set forth above, in the Motion, and in BP's reply in support of the Motion [Docket No. 1844], BP respectfully requests that the Court grant the Motion and enter an order, substantially in the form attached thereto as **Exhibit 1**, granting stay relief so that BP may commence arbitration against Fieldwood.

*[Signature Page Follows]*

---

[12]     The Fifth Circuit has held that the waiver of arbitration rights must be analyzed on a claim-by-claim basis, such that the waiver of arbitration rights as to a particular claim does not effect a waiver of subsequent, new or different claims as to which the party had not previously invoked judicial process. *Subway Equip. Leasing v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999) ("We hold today that a party only invokes the judicial process to the extent it litigates *a specific claim it subsequently seeks to arbitrate*." (emphasis added)); *see also, e.g., Reynolds & Reynolds Co. v. i3 Brands, Inc.*, No. 19-CV-01260, 2020 U.S. Dist. LEXIS 113178, at *13–16 (S.D. Tex. May 27, 2020) (plaintiff-lender, by bringing collection action under loan and pledge agreements, had not waived right to arbitrate counterclaims based on tort, various statutes, and breaches of other agreements); *Wells Fargo Bank, N.A. v. Cabell*, No. 17-CV-00406, 2018 U.S. Dist. LEXIS 167957, at *25–26 (E.D. Tex. Sept. 6, 2018) (filing motion for stay relief to proceed with foreclosure action and prosecuting foreclosure action to judgment did not waive bank's right to arbitrate later dispute over nonpayment of the deficiency following the foreclosure sale, as the dispute over the deficiency had not and could not have arisen before the foreclosure judgment and sale); *Fidelity Nat'l Corp. v. Blakely*, 305 F. Supp. 2d 639, 640–42 (S.D. Miss. 2003) (lender, by bringing collection action against debtor, had not waived arbitration rights with respect to counterclaims by debtor for negligence, breach of fiduciary duty, misrepresentation and unjust enrichment based on the same underlying loan).

Dated: July 16, 2021

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ *Shari L. Heyen*
Shari L. Heyen
Texas State Bar Number 09564750
HeyenS@gtlaw.com
Karl D. Burrer
Texas State Bar Number 24043584
BurrerK@gtlaw.com
Nicole S. Bakare
Texas State Bar Number 24056017
BakareN@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

– and –

Craig A. Duewall (admitted *pro hac vice*)
Texas State Bar Number 24025334
DuewallC@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

– and –

**GREENBERG TRAURIG, P.A.**

John B. Hutton (admitted *pro hac vice*)
HuttonJ@gtlaw.com
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

***Counsel for BP Exploration & Production Inc.***

*ACTIVE 58684616v1*