United States Courts
Southern District of Texas
F I L E D

JUL 1 6 2021

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et. al,* | § | **Case No. 20-33948(MI)** |
| | § | |
| Debtors.[1] | § | |
| | § | **(Jointly Administered)** |
| | § | **Re: ECF Nos. 1414, 1795** |

<u>**DEBTORS' SUPPLEMENTAL BRIEF ON "PRELIMINARY RELIEF IN AID OF ARBITRATION" AND WAIVER**</u>

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") hereby file this supplemental brief as requested by the Court at the hearing on July 9, 2021 (the "**Hearing**"), with respect to BP Exploration & Production Inc.'s ("**BP**") *Motion for Entry of an Order Pursuant to 11 U.S.C. § 362(D) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors,* filed on May 28, 2021, ECF No. 1414 (the "**Motion to Lift Stay**" and "**Mot.**"), and the *Debtors' Response to Motion of BP Exploration & Production, Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors,* ECF No. 1795 (the "**Debtors' Opposition**" and "**Debtors' Opp.**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

## PRELIMINARY STATEMENT

1.      At the hearing on July 9, 2021, the Court asked the parties to submit supplemental briefing setting out what "preliminary relief in aid of arbitration mean[s]" under Section 3.02(a) of the Galapagos Area Loop Subsea Production System Construction and Operating Agreement (the "**LSPS OA**"). ECF 1821, Ex. 4. In short, preliminary relief in aid of arbitration means relief sought to preserve the status quo pending arbitration. The relief the Debtors sought in connection with the February 2021 hearing on the Debtors' *Emergency Motion to Compel BP Exploration & Production Inc. to Perform Pre-Petition Contracts* (ECF No. 792) (the "**Motion to Compel**") was not "preliminary relief in aid of arbitration." Instead, the Debtors sought through the February 2021 hearing to change the status quo to bring Genovesa on line. There was no indication in connection with the February hearing that the parties were contemplating initiating an arbitration at that time. By contrast, BP's effort to preserve its status as the operator until an arbitrator decides the remedies available for breach of the LSPS OA (Mot. ¶ 1) fits squarely within "preliminary relief in aid of arbitration." Moreover, BP waived any right to arbitrate this issue by failing to assert it in February or appeal the adverse ruling against it. For these reasons and as set forth below, cause does not exist to lift the stay, and the Court should deny the Motion to Lift Stay.

## STATEMENT OF FACTS

I.      **BP Submits to the Jurisdiction and Authority of this Court for Disputes Relating to the LSPS OA**

2.      On January 27, 2021, the Debtors filed the Motion to Compel seeking an order compelling BP to perform its obligations under the LSPS OA and the *Production Handling and Operating Services Agreement* (ECF 1821, Ex. 5) (the "**PHA**") or, alternatively, to let the Debtors do what was necessary to do the same.

3.      At the January 28, 2021, status conference on the Motion to Compel, despite the broad nature of the relief the Debtors requested, BP did not move to compel arbitration.  Rather, BP participated and engaged with the Court and the Debtors in litigating the dispute in Court.  BP continued to participate and engage with the Court and the Debtors, without raising the arbitration issue, at the subsequent February 1, 2021 status conference.  Indeed, BP suggested that the Court consider sending the parties to mediation and if the mediation was unsuccessful the parties would then "proceed with [the] evidentiary hearing."  Recording of Hr'g at 10:46–52, *In re Fieldwood Energy LLC*, No. 20-33948 (Bankr. S.D. Tex. Feb. 1, 2021) (ECF No. 827).

4.      On February 2, 2021, BP filed its opposition to the Motion to Compel (the "**BP Response**").  *See* ECF No. 833.  In the BP Response, BP—for the first time—suggested that the Debtors' requested relief in the Motion to Compel should be resolved through arbitration.  ECF No. 833, p. 10.

5.      At the evidentiary hearing, without ever mentioning that the relief sought by the Debtors was "preliminary relief in aid of arbitration," BP abandoned its argument that the dispute should be resolved through arbitration.  Indeed, despite having ample opportunity to do so, BP did not raise the arbitration argument at all during the evidentiary hearing.  *See* Feb. 2, 2021 Hr'g. Tr. 218:19–23; 219:6–7; 220:1–13.  At the conclusion of the extended evidentiary hearing, the Court determined that BP willfully breached the LSPS OA for its own economic benefit.  *See* Feb. 2, 2021 Hr'g. Tr. 229:23–25.  After finding that BP willfully breached, the Court gave BP the option for the Debtors to do the work necessary to bring Genovesa online if BP elected to let them do so, and BP chose this option.  As such, the Court subsequently ordered that (i) the Debtors be authorized to be the operator and take all necessary steps within its control to bring the Genovesa well online prior to April 5, 2021 and (ii) BP perform all necessary steps to support and fully

cooperate with the Debtors' efforts to bring the Genovesa well online prior to April 15, 2021. *Order Pursuant to Sections 105(a) and 365 of the Bankruptcy Code Compelling Performance of Pre-Petition Contracts* (ECF No 845) (the "**Feb. 3 Order**") ¶ 2.

## II.   BP Resists the Debtors' Efforts to Terminate BP as Operator under the LSPS OA Removal Procedures

6.     On May 14, 2021, the Debtors notified BP of its intent to remove BP as operator in accordance with Section 3.02(a) of the LSPS OA.  ECF 1821, Ex. 7.  The effective date of BP's removal is to occur "as soon as practical" with an outer limit of 7:00 a.m. on August 1, 2021. LSPS OA § 3.04.[2]

7.     BP disputes the Debtors' ability to terminate it as operator and consequently filed the Motion to Lift Stay asking this Court to lift the automatic stay in order to allow BP to initiate arbitration for purposes of determining whether the Debtors' termination of BP as the operator is effective.  ECF No. 1414, p. 3.  At the hearing on the Motion to Lift Stay, BP argued—for the first time—that it did not waive the right to raise the arbitration provision in the LSPS OA by litigating the Motion to Compel because through the Motion to Compel, the Debtors sought "preliminary relief in aid of arbitration," which they were allowed to pursue in court.  Hr'g Tr. 42:23–43:4 (ECF No. 1884).  As discussed in more detail below, this argument is without merit and should be rejected.

## ARGUMENT

8.     The LSPS OA expressly provides that:

---

[2] At the Hearing, the Court ordered BP and the Debtors submit a proposed order staying the effective date of the removal pending the Court's decision on arbitration.  Hr'g Tr. 48:2–4; *see* ECF No. 1870 (proposed, agreed order; "Any deadlines related to the Debtors' purported removal of BP as operator . . . are tolled from July 9, 2021 until the Court rules on the Stay Motion.").

> Each Party hereby expressly covenants that it shall not resort to court remedies except as provided for herein, and for ***preliminary relief in aid of arbitration***.

LSPS OA, Ex. F § I.A.(i) (emphasis added).  Courts generally interpret the phrase "preliminary relief in aid of arbitration," and variations thereof to refer to requests for relief to preserve the status quo between parties before the beginning of arbitration.  *See, e.g., Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (noting the parties' contract "does not prohibit resort to appropriate forums for preliminary relief in aid of arbitration" and enjoining defendant from using or disclosing trade secrets pending arbitration considering whether the defendant had a right to use trade secrets); *RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 230 (5th Cir. 1988) ("This bargained-for provision clearly contemplates that the status quo is to continue pending arbitration.").

## I.   The Motion to Compel Did Not Seek Preliminary Relief in Aid of Arbitration

9.   The Debtors' Motion to Compel did not seek "preliminary relief in aid of arbitration" because it sought relief to change, rather than preserve, the status quo.  Additionally, there was no indication that either party was considering arbitration at the time of the dispute leading up to the filing of the Motion to Compel.  The status quo at the time of the Motion to Compel was that the Genovesa well was not online, and BP was refusing to take the necessary steps to allow the Genovesa well to come online.  However, there was a very real risk that the Debtors could lose the lease on which the Genovesa well sits if the well did not begin producing by April 5, 2021.  The Debtors filed the Motion to Compel asking the Court to *alter* the status quo by compelling BP to perform under the LSPS OA to take the necessary steps to bring Genovesa online before April 5.  Mot. to Compel ¶ 5.  In short, the Debtors were not asking the Court to preserve anything pending arbitration between the parties, but instead asked the Court to change the status quo.  The relief the Debtors sought was therefore not "preliminary relief in aid of

arbitration." Tellingly, although BP argued that the Motion to Compel should be resolved through arbitration in its opposition to the Motion to Compel, BP subsequently abandoned this argument at the hearing on the Motion to Compel without raising, and thereby waiving, the "preliminary relief in aid of arbitration" point.

## II.    BP is Seeking Preliminary Relief in Aid of Arbitration

10.    Conversely, the relief BP currently seeks is "preliminary relief in aid of arbitration" because BP is essentially asking the Court to preserve the status quo pending arbitration.  In its Motion to Lift Stay, BP asks the Court to "lift the stay for the limited purpose of allowing BP to commence and proceed with arbitration, and to compel arbitration of the Dispute."  Mot. ¶ 1.  BP then goes on to define the purported "Dispute" as "whether Fieldwood has the ability and authority to remove BP as Operator and whether its purported attempt to do so is effective[.]"  Mot. ¶ 2. Since the Debtors sent the termination letter on May 14, BP has continued to act as operator and refuses to accept that it has been removed.  Against this backdrop, BP is now seeking relief to maintain the status quo so that BP's removal does not ever become effective—which is precisely the type of "preliminary relief in aid of arbitration" that the parties' agreement contemplates could be decided by a court.

11.    BP's only argument as to why the stay should be lifted is that the relief it seeks cannot be resolved by the Court and must be resolved by an arbitrator. Mot. ¶¶ 3, 27, 48. However, this Court has the power and ability to rule on the relief BP seeks under the "preliminary relief in aid of arbitration" provision for the reasons set forth above.  Because BP can in fact obtain the relief it seeks from this Court, BP does not need to have this heard by an arbitrator as BP claims, and BP has therefore failed to demonstrate cause to lift the stay.

### III.  Alternatively, BP Waived its Right to Arbitrate

12.     Even if the relief BP seeks in the Motion to Lift Stay does not fall within the "preliminary relief in aid of arbitration" provision, BP waived its right to arbitrate. "The right to arbitration, like any other contract right, can be waived." *Miller Brewing Co. v. Fort Worth Distributing Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986); *see also In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010). A party waives its right to arbitration when it "substantially invokes the judicial process to the detriment or prejudice of the other party." *Republic Ins. Co. v. Paico Receivables LLC*, 383 F.3d 341, 344 (5th Cir. 2004). Fifth Circuit precedent requires courts to tailor their waiver analysis to the facts and totality of circumstances of each case rather than perform a mathematical test of counting motions and measuring them against a formulaic standard. *See, e.g., In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010); *DHI Grp., Inc. v. Kent*, 2018 WL 1150213, at *3 (S.D. Tex. Mar. 5, 2018) ("the Fifth Circuit instructs that there is no bright line and that courts must consider whether a party has waived arbitration on a case-by-case basis").

13.     To invoke the judicial process, a "party must, at the very least, engage in some overt act that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Republic Ins. Co.*, 383 F.3d at 344. Courts in the Fifth Circuit have routinely found that a party invokes the judicial process where, as here, they actively litigate an arbitrable claim:

- *Forby v One Technologies, LP*, 909 F3d 780, 784 (5th Cir 2018) (finding waiver where party "was fully aware of its right to compel arbitration" yet pursued litigation and relief from the district court "with no mention of compelling arbitration," which "demonstrated a desire to resolve the dispute in litigation rather than arbitration");

- *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480–82 (5th Cir. 2009) (finding waiver where party sought relief from the district court and, although the court had made no legally binding rulings before the party filed motion to compel arbitration, court had given "very strong indications" at hearing that it would rule against the party);

- *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907–11 (5th Cir. 2009) (finding waiver where a party "litigat[ed] the claims she now s[ought] to arbitrate" and the opponent "would be prejudiced by having to re-litigate in the arbitration forum[.]" Notably, the party litigated

a "very significant legal question" and their "belated decision to seek arbitration [was] particularly troubling given that it came on the heels of [an] adverse ruling");

- *Republic Ins. Co.*, 383 F.3d at 344–45 (finding waiver where a party "undertook extensive litigation activities," which did not include dispositive motions, and ultimately finding substantial invocation of judicial process based on the party's opposition filing which argued that all issues were properly before the court);

- *CDIC of NC Protected Cell A-600 LLC v. Gottlieb*, 2021 WL 2201311, at *2 (S.D. Tex. June 1, 2021) (finding waiver where party "substantially invoked the judicial process" by seeking affirmative relief from the district court and "knew that he had a right to compel arbitration" but "proceeded to [litigate] the claims against him");

- *Qazi v. Stage Stores, Inc.*, 2020 WL 1321538, at *5-6 (S.D. Tex. Mar. 17, 2020) (finding waiver where defendants "substantially invoked the judicial process" by "appear[ing] before this Court to argue on Plaintiffs' Motion for Conditional Certification" and noting that "Defendants never moved to compel arbitration until after the Court had ruled against them on conditional certification");

- *Tellez v. Madrigal*, 292 F. Supp. 3d 749, 759 (W.D. Tex. 2017) (finding waiver where "[a]lthough no discovery ha[d] occurred . . . [defendant] litigated a serious question in th[e] case and now appear[ed] to seek arbitration because he was displeased with the outcome" and plaintiff would be "prejudiced by having to re-litigate" the claim in arbitration);

- *Magdaleno v. PCM Const. Servs., LLC, No. H-12-2862*, 2014 WL 1760942, at *8 (S.D. Tex. May 1, 2014) (finding waiver and invocation of judicial process even where "litigation activity was not as extensive as . . . in certain other [Fifth Circuit] cases"—defendant participated in scheduling and case management conferences and participated in mediation).

14.     Similarly, BP "substantially invoked the judicial process" at the contested evidentiary hearing before this Court in February 2021.  Although BP argued in its brief filed on February 2, 2021 in advance of the February hearing that the issues raised in the Motion to Compel should be arbitrated, BP abandoned this argument at the hearing, not even mentioning arbitration once on the record.  ECF No. 833, pp. 10–12.  At the start of the hearing when this Court asked BP for its thoughts as to how "we ought to move ahead" [with issues regarding the LSPA OA dispute], BP expressed its wishes to "proceed with a hearing."  *See* Tr. 5:10–16.[3]  BP then

---

[3] This also disproves BP's suggestion that it merely "responded to and defended itself against the relief sought [by the Debtors]" with respect to the Evidentiary Hearing. *BP Exploration & Production Inc.'s Reply in Support of Its Motion*

proceeded to cross examine each of the Debtors' three witnesses after their direct examinations, and then BP put on its own witnesses.  Also, despite BP's contention that it "did not…seek any affirmative relief from the Court" (*see* Reply ¶ 18), BP requested that the Court both "require [the Debtors] to post a substantial bond to protect BP" and "compel [the Debtors] to immediately submit an SOP application." *See* Tr. 229:6–14.  In contrast, not once did BP request, at the hearing, that the Court to send these issues to an arbitration panel.  BP's conduct was "inconsistent with an intent" to preserve arbitration rights, as in the aforementioned cases finding waiver.  *See Nicholas*, 565 F.3d at 910; *Qazi*, 2020 WL 1321538, at \*5; *Tellez*, 292 F. Supp. 3d at 759.

15.     Furthermore, as discussed in paragraphs 40 through 44 of the Debtors' Opposition, BP's actions constitute prejudice under Fifth Circuit law.  *See* Debtors' Opp. ¶ 40.  As an initial matter, "[Fifth Circuit] precedent has recognized [that] '[s]ubstantially invoking the [judicial process] qualifies as the kind of prejudice that is the essence of waiver.'" *Petroleum*, 575 F.3d at 480.  Moreover, "prejudice can [also] take the form of heavy legal expenses incurred in responding to the movants' litigation conduct[;] the costs attendant to delay; and the risk of relitigating issues the court has already decided." *Gottlieb*, 2021 WL 2201311, at \*3.  Here, although BP has conceded that it does not intend to re-litigate the issue of whether or not it breached the LSPS OA, there is still a likelihood that BP may seek to re-litigate issues already decided by this Court.

16.     By participating in extensive litigation in pursuit of affirmative relief from this Court, BP substantially invoked the judicial process, prejudiced the Debtors, and, thus, waived its right to arbitration.

---

*for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors* ("**Reply**") ¶ 18 (ECF No. 1844).  As the transcript shows, BP had the option to express how the parties "ought" to proceed, including arbitration. Rather, BP chose to "proceed with a hearing" and seek various forms of relief from this Court.

## CONCLUSION

17.     For the foregoing reasons and those stated in its Opposition and during the July 9

hearing, the Court should deny the Motion to Lift Stay in its entirety, and grant the Debtors all of

the relief, at law or in equity, to which they are entitled.


Dated: July 16, 2021
       Houston, Texas

_/s/ Paul R. Genender_
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted _pro hac vice_)
Jessica Liou (admitted _pro hac vice_)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
            Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
            Erin.Choi@weil.com

**<u>Certificate of Service</u>**

I hereby certify that, on July 16, 2021, a true and correct copy of the foregoing document was served by email on BP's counsel, Craig Duewall.

*/s/ Paul R. Genender*
Paul R. Genender