IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-33948 |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

### ORDER FINDING THE FIELDWOOD GC 201 ORRI IS NOT SUBJECT TO LLOG'S SECURITY INTEREST

In 2009, pursuant to a Farmout Agreement with Shell Offshore, Inc. ("SOI") and Marathon Oil Co. ("Marathon), Davis Offshore, LP ("Davis") and LLOG Energy, LLC ("LLOG") acquired the operating interest in the GC 201 Lease.[1] (ECF No. 1900 at 3). LLOG became the operator of GC 201, while Davis held a non-operating working interest. Davis's obligations to LLOG were allegedly[2] secured by liens that allegedly attached to after-acquired property. As part of the acquisition, Davis and LLOG conveyed an overriding royalty interest ("ORRI") in the GC 201 Lease to SOI and Marathon. (ECF No. 1603-6). Years later, Fieldwood Energy, LLC ("Fieldwood") acquired both Davis' non-operating working interest and SOI's ORRI in the GC 201 Lease. After Fieldwood filed for bankruptcy, LLOG objected to confirmation of Fieldwood's plan of reorganization, asserting a security interest in Fieldwood's ORRI. Because the after-acquired property clause did not apply to the ORRI, LLOG's lien does not attach to Fieldwood's ORRI in GC 201.

---

[1] The Farmout Agreement describes the GC 201 Lease as the "Oil and Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act between the United States of America, as Lessor, and BP Exploration Inc., as original Lessee, dated effective May 1, 1990, covering all of Block 201 Green Canyon, OCS Official Protraction Diagram, NG 15-3, containing approximately 5,760 acres, insofar as and only insofar as to the northeast quarter (NE/4) of said Lease, covering those depths down to 17,000 feet true vertical depth subsea." (ECF No. 1603-5 at 31).

[2] There are multiple disputes regarding perfection and attachment of the lien. Because the Court holds that the after-acquired property clause is not enforceable against the ORRI, those disputes are moot.

  *a. Agreements Pre-Dating the GC 201 Lease Acquisition*

  Before acquiring their working interests in the GC 201 Lease, LLOG and Davis entered into an Offshore Operating Agreement (the "Original OOA") concerning an offshore lease known as Green Canyon Block 157 ("GC 157"). As with GC 201, LLOG became the operator of GC 157, while Davis became a non-operating working interest holder.

  Davis and LLOG entered into the Original OOA on December 12, 2002. (ECF No. 1900 at 2). Under the Original OOA, Davis was responsible for paying its proportionate share of certain production related costs. In order to secure Davis' payment obligations, Davis granted LLOG a mortgage on Davis' interests in the GC 157 Lease. Specifically, Davis granted LLOG a mortgage over "all of its rights, titles, and interests in and to (a) the Lease(s), (b) the oil and gas in, on, under and that may be produced from the lands covered by the Leases or included within the Contract Area, and (c) all other immovable property susceptible of mortgage situated within the Contract Area." (ECF No. 1603-1 at 178). The mortgage secured "the complete and timely performance of and payment by each Non-Operating Party of all obligations and indebtedness of every kind and nature, whether now owed by such Non-Operating Party or hereafter arising pursuant to [the Original OOA]." ECF No. 1603-1 at 178).

  In addition to the mortgage, Davis also granted LLOG "a continuing security interest in and to all of its rights, titles, interests, claims, general intangibles, proceeds, and the products thereof, *whether now existing or hereinafter acquired*," including "in and to (a) all oil and gas produced from the lands or offshore blocks covered by the Lease[s] or the Contract Area or attributable to the Lease or the Contract Area when produced, (b) all accounts receivable accruing or arising as a result of the sale of such oil and gas . . . , (c) all cash and other proceeds from the sale of such oil and gas once produced, and (d) all platforms, wells, facilities, fixtures, other corporeal property . . . ." (ECF No.

1603-1 at 179 (emphasis added)). Because the lien attaches to interests "hereinafter acquired," LLOG argues that its security interest attached to GC 201 after the parties acquired their interests in that lease.

Beyond creating a mortgage and security interest in favor of LLOG, the Original OOA also contemplated the creation of future overriding royalty interests. (ECF No. 1603-1 at 132-33). Section 19.1 of the Original OOA states that:

> If any Party has previously created or hereafter creates any overriding royalty, production payment, carried or reversionary Working Interest, net profits interest or other type of burden on Hydrocarbon production in addition to the lessor's royalty stipulated in the Lease(s) (an "Overriding Royalty"), the Party creating the Overriding Royalty shall assume and bear all obligations of the Overriding Royalty regardless of that Party's participation status. The Party creating the Overriding Royalty shall indemnify and hold all other Parties harmless from any and all claims and demands for payment asserted by the owners of the Overriding Royalty and such Overriding Royalty shall be considered a Subsequently Created Interest. However, it is acknowledged and understood that prior to the execution of this agreement, the Parties have burdened the Lease with [the Davis Overriding Royalty Interest]. Such Davis Overriding Royalty Interest shall not be considered a Subsequently Created Interest under the terms of this agreement. The Participating Parties in any operation conducted pursuant to this Agreement shall assume and bear all obligations of such Davis Overriding Royalty Interest according to their elections to participate.

(ECF No. 1603-1 at 132). Section 19.1.1 goes on to state that:

> Notwithstanding anything herein to the contrary, and excluding the Davis Overriding Royalty Interest, if subsequent to the execution of this Agreement, any Party should create an Overriding Royalty, such subsequently created Overriding Royalty shall be made specifically subject to all the terms and provisions of this Agreement and shall be subordinate to the rights of the other Parties to this Agreement.

(ECF No. 1603-1 at 133).

Relevant to today's discussion, the Original OOA accomplished two objectives. First, it granted LLOG a mortgage and security interest in Davis' "rights, titles, and interests," as well as the "proceeds, and the products thereof," in the GC 157 Lease. (ECF No. 1603-1 at 178-79). The security interest specifically attached to Davis' after acquired property. Second, the Original OOA directed

that any subsequently created ORRI would be subject to the terms of the Original OOA and "subordinate to the rights" of the OOA parties. (ECF No. 1603-1 at 133).

### b. *LLOG and Davis Acquire the GC 201 Lease*

In 2009, LLOG and Davis sought to acquire interests in the GC 201 Lease. LLOG and Davis entered into a Farmout Agreement, effective October 1, 2008, with SOI and Marathon. (ECF No. 1900 at 3). The Farmout Agreement granted LLOG and Davis the operating interest in the GC 201 Lease. (ECF No. 1900 at 3). The Original OOA remained in effect when LLOG and Davis entered the Farmout Agreement, and the Farmout Agreement expressly states that "[o]perations in the Contract Area shall be governed pursuant to the terms of the [Original OOA] between LLOG and Davis that covers all of Green Canyon Block 157." (ECF No. 1603-6 at 7).

In conjunction with the Farmout Agreement, LLOG and Davis also executed an "Assignment and Conveyance of Overriding Royalty Interest" (the "ORRI Assignment") with SOI and Marathon. (ECF No. 1603-6). Like the Farmout Agreement, the ORRI Assignment was effective as of October 1, 2008. (ECF No. 1603-6 at 1).

The ORRI Assignment conveyed to SOI and Marathon an ORRI in the GC 201 Lease "free and clear of all costs of exploring, operating, developing, producing, and maintaining the Contract Area in force and effect, abandoning the Contract Area and all costs of compressing, dehydrating, treating or otherwise rendering the production therefrom marketable, except the proportionate share of transportation charges downstream of the sales meter, severance and excise and other like taxes applicable to such interests." (ECF No. 1603-6 at 2). Critically, the ORRI Assignment also stated that "[t]here are no further understandings, representations, warranties or obligations pertaining to the ORRIs and this Conveyance *supersedes and replaces any and all prior agreements, whether written or oral, between the parties*." (ECF No. 1603-6 at 3 (emphasis added)).

By virtue of the Farmout Agreement and ORRI Assignment, the parties acquired the following relevant interests in the GC 201 Lease: 1) LLOG received an operating interest from SOI and Marathon; 2) Davis received a non-operating working interest from SOI and Marathon;[3] 3) SOI received an ORRI from LLOG and Davis; and 4) Marathon received an ORRI from LLOG and Davis.

    *c. Fieldwood Acquires the Davis and SOI Interests in GC 201*

On August 5, 2014, Fieldwood acquired Davis via an Equity Purchase Agreement. (ECF No. 1603-18). In a recorded conveyance, Davis then assigned to Fieldwood all of Davis' rights, titles, and interests in various leases, including the J. Bellis Field. (ECF No. 1826 at 9). The J. Bellis Field includes the GC 201 Lease. (ECF No. 1826 at 9).

After Fieldwood acquired Davis' interest in the GC 157 and GC 201 Leases, Fieldwood and LLOG entered into a "Ratification and First Amendment to Operating Agreement" (the "OOA Amendment"). (ECF No. 1603-2). Fieldwood and LLOG entered the OOA Amendment on December 16, 2014, and the OOA Amendment was effective as of December 12, 2002. (ECF No. 1603-2 at 1, 3). The OOA Amendment revised the OOA contract area to include the GC 201 Lease. (ECF No. 1603-2 at 2). Further, Fieldwood and LLOG agreed that the SOI/Marathon ORRI was "not to be considered a Subsequently Created Interest as described in Article 19.1." (ECF No. 1603-2 at 2).

Less than a year later, Fieldwood acquired the SOI ORRI in the GC 201 Lease. Pursuant to an "Overriding Royalty Assignment," effective January 1, 2015, SOI assigned to Fieldwood all of its rights, titles, and interests in the GC 201 ORRI. (ECF No. 1603-21 at 2, 6). Accordingly, since 2015,

---

[3] The Farmout Agreement grants the operating interest in the GC 201 Lease to LLOG and Davis, but explicitly makes governance of the GC 201 Lease subject to the Original OOA. (ECF No. 1603-6 at 7). Thus, consistent with the Original OOA, LLOG became the operator of the GC 201 Lease and Davis acquired a non-operating working interest.

Fieldwood has owned both Davis' interests in the GC 157 and 201 Leases and the SOI ORRI in GC 201.

### d. LLOG Asserts a Security Interest in the GC 201 ORRI

Fieldwood and certain of its affiliates filed voluntary cases under chapter 11 of the Bankruptcy Code on August 3, 2020. (ECF No. 1). The Court confirmed Fieldwood's plan of reorganization on June 25, 2021. (ECF No. 1751). Fieldwood's confirmed plan abandons the non-operating working interests in the GC 157 and 201 Leases. However, the plan assigns Fieldwood's GC 201 ORRI, acquired from SOI, to the Credit Bid Purchaser.

LLOG objected to this bifurcation of the GC 201 interests and asserted a secured claim in the GC 201 ORRI. LLOG filed a secured proof of claim in the total amount of $15,479,579.87. (ECF No. 1900 at 10). The parties agreed to litigate the extent of LLOG's security interest following confirmation of the Fieldwood plan. The asserted LLOG claim consists of $902,490.92 in unpaid joint interest billings, as well as "Fieldwood's proportional share of the future plugging and abandonment and decommissioning obligations associated with GC 201 and 157 totaling approximately $14,577,088.95, secured up to the value of LLOG's collateral." (ECF No. 1900 at 10-11). The amount or validity of LLOG's proof of claim is not presently before the Court. The sole issue decided by this Order is whether LLOG's security interest burdens the GC 201 ORRI.

### e. LLOG does not Possess a Security Interest in the GC 201 ORRI

The Original OOA forms the basis of LLOG's asserted security interest. The contract area in the Original OOA only covered the GC 157 Lease. LLOG's lien attached to all of Davis' interests, including after acquired interests, in the contract area.

When the parties entered the Farmout Agreement and ORRI Assignment, governance of the GC 201 Lease was made expressly subject to the Original ORRI. However, LLOG's lien did not

attach to Davis' interest in the GC 201 Lease at that time because the GC 201 Lease was not within the contract area of the Original OOA. Most importantly, Davis and LLOG agreed that the ORRI Assignment "supersedes and replaces any and all *prior agreements*, whether written or oral, between the parties." (ECF No. 1603-6 at 3).

The Original OOA was a "prior agreement" under the ORRI Assignment. The Original OOA was entered between Davis and LLOG. Both Davis and LLOG were parties to the ORRI Assignment. The Farmout Agreement was executed in conjunction with the ORRI Assignment. The Original OOA includes identical parties and covers subject matter related to the ORRI Assignment.

When Fieldwood acquired Davis, Fieldwood assumed the rights and obligations in the Original OOA. LLOG argues that once Fieldwood acquired the SOI ORRI, the "hereinafter acquired" language in the Original OOA caused LLOG's security interest to attach to the ORRI. LLOG is correct that after the parties amended to OOA to include the GC 201 Lease in the contract area, LLOG's security interest would attach to all of Fieldwood's interests (via Davis) in the contract area. However, LLOG's reading ignores the clear language of the ORRI Assignment. The ORRI Assignment stated that "[t]here are no further understandings, representations, warranties or obligations," and expressly superseded all "prior agreements" between the parties. Davis and LLOG conveyed the ORRI to SOI and Marathon free and clear of interests, including those formed under the Original ORRI. While the OOA amendment brought the GC 201 Lease into the defined contract area, the amendment did nothing to alter the language in the ORRI Assignment conveying the ORRI free of interests, including all prior agreements. Nor did the OOA amendment created any new security interests in favor of LLOG. The after-acquired property clause was a prior agreement between Davis and LLOG, and thus unenforceable against the ORRI.

SOI acquired the ORRI free of prior obligations. The unburdened ORRI provided value to SOI, as well as any subsequent purchasers. When Fieldwood purchased the ORRI from SOI, Fieldwood acquired the full, unburdened, ORRI. The interest that SOI conveyed to Fieldwood was not altered or lessened simply because Fieldwood separately acquired Davis' interest in the GC 201 Lease. The terms of the ORRI make clear that it was not subject to any pre-existing security interests. The amendment to the OOA did nothing to change that fact. LLOG's security interest under the OOA did not and does not attach to the ORRI.

The parties quibble about who is receiving an unexpected windfall from this ruling. Is it Fieldwood, whose rights in the ORRI are unimpaired by the after-acquired property clause, or it is LLOG who gets a windfall from the acquisition of after-acquired property? The Court is not concerned. The time for the parties to have been concerned about the consequences of their bargain was when they made the bargain. The Court will enforce the agreements as written. The after acquired clause does not burden the ORRI.

SIGNED 07/26/2021

Marvin Isgur
United States Bankruptcy Judge