## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, _et al._,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

### STIPULATION AND ORDER BETWEEN DEBTORS AND
### MACQUARIE CORPORATE AND ASSET FUNDING, INC.
### <u>RESOLVING ADJOURNED ASSUMPTION DISPUTE</u>

This stipulation and order (the "**Stipulation and Order**") is entered into by and between (i) Macquarie Corporate and Asset Funding, Inc. ("**Macquarie**"), and (ii) Fieldwood Energy LLC and its debtor affiliates in the above captioned chapter 11 cases (collectively, the "**Debtors**", and together with Macquarie, the "**Parties**").  The Parties hereby stipulate and agree as follows:

WHEREAS, commencing on August 3, 2020, the Debtors each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**");

WHEREAS, Fieldwood Energy LLC and Macquarie are party to that certain Master Lease Agreement dated October 21, 2019 (including any amendments, supplements, or modifications thereto, the "**Master Lease Agreement**"), pursuant to which Fieldwood Energy LLC leases equipment and other property from Macquarie (the "**Equipment Leases**") as set forth on certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

equipment schedules executed pursuant to the terms of the Master Lease Agreement (each, an "**Equipment Schedule**");

WHEREAS, Macquarie filed proofs of claim numbers 389 and 853 on November 16, 2020 and December 3, 2020, respectively (the "**Macquarie Proofs of Claim**") against Debtor Fieldwood Energy LLC;

WHEREAS, the Macquarie Proofs of Claim assert that (i) Macquarie is owed $17,357,100.07 as a General Unsecured Claim in connection with the Master Lease Agreement, including interest and other charges, and (ii) the Cure Amount for the Master Lease Agreement as of the Petition Date is $493,476.00;

WHEREAS, the Parties then conferred regarding (i) the potential assumption and assignment of the Master Lease Agreement, (ii) the Equipment Leases listed on the Schedule of Assumed Contracts, and (iii) the resolution of Macquarie's potential objection to the Debtors' proposed assumption of the Equipment Leases identified on the Schedule of Assumed Contracts[2] as contract numbers 1260 through 1280 based on Macquarie's assertion that such assumption would constitute a partial assumption of the Master Lease Agreement and the Equipment Schedule thereto, which assertion the Debtors dispute (the foregoing clauses (i) through (iii), the "**Macquarie Assumption Dispute**");

WHEREAS, on June 25, 2021, the Debtors filed the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1742) (the "**Plan**");

WHEREAS, on June 25, 2021, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and*

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan (as defined herein).

*Its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 1751) (the "**Confirmation Order**");

WHEREAS, pursuant to paragraph 38 of the Confirmation Order and Section 8.2 of the Plan, the Debtors and Macquarie agreed to adjourn any hearing on the Macquarie Assumption Dispute to after the Confirmation Hearing; and

WHEREAS, the Parties have negotiated in good faith to resolve the Macquarie Assumption Dispute on the terms and conditions set forth in this Stipulation and Order.

**NOW, THEREFORE,** in consideration of the foregoing recitals, which are incorporated into this Stipulation and Order, the Parties hereby stipulate and agree as follows:

1. As of and subject to the occurrence of the Effective Date, the Equipment Schedules to the Master Lease Agreement shall be amended in the forms attached hereto as **Exhibit A** (the "**Credit Bid Purchaser Schedule**") and **Exhibit B** (the "**FWE I Schedule**", and together with the Master Lease Agreement and the Credit Bid Purchaser Schedule, the "**Revised Agreement**").

2. As of and subject to the occurrence of the Effective Date, and pursuant to the terms of the Plan Documents, which includes the Plan, the Confirmation Order, the Credit Bid PSA, and applicable Plan of Merger:

   a. The Master Lease Agreement shall be assumed and (i) solely as it relates to the Credit Bid Purchaser Schedule, assumed and assigned to Credit Bid Purchaser and (ii) solely as it relates to the FWE I Schedule, assumed and allocated to FWE I.

   b. The Credit Bid Purchaser Schedule shall be assigned to Credit Bid Purchaser and upon such assignment shall be in full force and effect as between the Credit Bid Purchaser and Macquarie.

    c.   The FWE I Schedule shall be allocated to FWE I and shall be in full force and effect as between FWE I and Macquarie.

3.     The Cure Amount with respect to the Master Lease Agreement is $0.

4.     Upon this Stipulation and Order becoming a final order, Macquarie will withdraw the Macquarie Proofs of Claim and, upon such withdrawal, Prime Clerk, LLC is authorized and directed to remove the Macquarie Proofs of Claim from the official claims register.

5.     The Debtors may take such other actions as may be reasonably necessary and appropriate to carry out the provisions of this Stipulation and Order, including amending the Schedule of Assumed Contracts and the applicable schedules and exhibits to the Plan of Merger consistent with the terms of this Stipulation and Order; provided, however, that in the event of any inconsistency between this Stipulation and Order, on the one hand, and any filings in these chapter 11 cases insofar as such filings relate to the assumption and assignment or assumption and allocation (as applicable) of the Revised Agreement, this Stipulation and Order shall govern.

6.     Upon this Stipulation and Order becoming a final order, the Macquarie Assumption Dispute shall be deemed resolved.

7.     This Stipulation and Order is and shall be binding on the Parties and their successors and assigns.

8.     The Bankruptcy Court shall retain jurisdiction over all matters related to this Stipulation and Order.


Dated: _____, 2021

                   _____

                        HON. MARVIN ISGUR

                   UNITED STATES BANKRUPTCY JUDGE

IN WITNESS WHEREOF, this Stipulation and Order has been executed and delivered as of the day and year first below written.

Date:   August 10, 2021
        Houston, Texas


 /s/ *Lucy F. Kweskin*
MAYER BROWN
Lucy F. Kweskin
1221 Avenue of the Americas
New York, NY 10020
Telephone: (917) 860-3920
Email: LKweskin@mayerbrown.com

*Attorneys for Macquarie Corporate and*
*Asset Funding, Inc.*

 /s/  *Jessica Liou*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com
        Clifford.Carlson@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: Matt.Barr@weil.com
        Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

# Exhibit A

## EQUIPMENT SCHEDULE NO. 2

This Equipment Schedule No. 2 is executed by the Lessor and Lessee named below and is made pursuant to that certain Master Lease Agreement dated as of October 21, 2019 (the "**Lease**"; which is incorporated herein by reference).  This Equipment Schedule, incorporating by reference the terms and conditions of the Lease, constitutes a separate instrument of lease.  To the extent of any conflict or inconsistency between the terms of this Equipment Schedule and the Lease, the terms of this Equipment Schedule shall prevail.

1.   EQUIPMENT.  The Equipment leased hereunder shall be as set forth in the Exhibit 1 attached hereto.

TOTAL INVOICE COST:   "**Total Invoice Cost**" as used herein means $4,541,290.71.   The cost for each item of Equipment is set forth in Exhibit No. 1 attached hereto (with respect to each item of Equipment, the "**Invoice Cost**").

2.   TERM.  Upon and after the date of execution hereof, the Equipment shall be subject to the terms and conditions provided herein and in the Lease.

A full term of lease with respect to said Equipment (the "**Base Term**") shall commence on the date hereof and shall extend for Thirty Six (36) months after the first day of July 2021, (the "**Base Lease Commencement Date**").

3.   RENT.

(a) OMITTED

(b)  From and after the Base Lease Commencement Date, the monthly rent for said Equipment during the Base Term shall be $121,997.93.  Rent payments shall be made, in arrears, on the first day of the month for each month during the Base Term of this Lease.

(c)  Rent due hereunder shall be reduced by the amount set forth in Exhibit No, 1 as Rent for an item of Equipment subsequent to Lessee's payment of the Stipulated Loss Value for such item of Equipment if deemed Lost Equipment.

4.   LESSEE'S CONFIRMATION.

Lessee hereby confirms and warrants to Lessor that the Equipment:   (a) was duly delivered to Lessee at the location specified in Section 5 hereof; (b) has been received, inspected and determined to be in compliance with all applicable specifications and that the Equipment is hereby accepted for all purposes of the Lease; and (c) is a part of the "Equipment" referred to in the Lease and is taken subject to all terms and conditions therein and herein provided.  Lessee hereby represents and warrants to Lessor that, as of the date hereof, there is no Default or Event of Default under any Schedule or any other Lease Document (as such terms are defined in the Lease).

5.   LOCATION OF EQUIPMENT.  The location of the Equipment (or the location of the principal garage of the Equipment, if the Equipment is mobile) is specified on the Exhibit 1 attached hereto.

6.   COMMERCIAL LIABILITY INSURANCE.  The amount of commercial liability insurance referenced in Section 11 of the Lease is $10,000,000.00.

7.   TAX ATTRIBUTES.  The class of property to which the Equipment is assigned is ten (10)-year property.

8.    SCHEDULE OF STIPULATED LOSS VALUES.  This Schedule of Stipulated Loss Values shall be applicable to the Equipment subject to this Equipment Schedule.

| **If Total Loss Occurs During Base Term Month:** | **Percent of Invoice Cost** |
|---|---|
| 1 (Including Interim Term) | 105% |
| 2 | 103% |
| 3 | 100% |
| 4 | 98% |
| 5 | 95% |
| 6 | 93% |
| 7 | 90% |
| 8 | 88% |
| 9 | 85% |
| 10 | 83% |
| 11 | 80% |
| 12 | 78% |
| 13 | 75% |
| 14 | 73% |
| 15 | 70% |
| 16 | 68% |
| 17 | 65% |
| 18 | 63% |
| 19 | 60% |
| 20 | 58% |
| 21 | 55% |
| 22 | 53% |
| 23 | 50% |
| 24 | 48% |
| 25 | 45% |
| 26 | 43% |
| 27 | 40% |
| 28 | 38% |
| 29 | 35% |
| 30 | 33% |
| 31 | 30% |

| | |
|---|---|
| 32 | 28% |
| 33 | 25% |
| 34 | 23% |
| 35 | 20% |
| 36 | 18% |

9.    OMITTED

10.  PERSONAL PROPERTY TAXES.  Lessee agrees that it will not list any of such Equipment for property tax purposes or report any property tax assessed against such Equipment until otherwise directed in writing by Lessor.  Upon receipt of any property tax bill pertaining to such Equipment from the appropriate taxing authority, Lessor will pay such tax and will invoice Lessee for the expense.  Upon receipt of such invoice, Lessee will promptly reimburse Lessor for such expense.

11.  END OF BASE TERM OPTIONS.

(a)  OPTION TO RENEW.  (1) Provided that no Default or Event of Default has then occurred, Lessee shall have the option to renew this Equipment Schedule, with respect to all but not less than all of the Equipment, at the expiration of the Base Term of this Equipment Schedule, on the terms and conditions as are agreed between the Lessee and Lessor.  If Lessee desires to exercise this option it shall give Lessor irrevocable written notice of its request to renew this Equipment Schedule at least one hundred twenty (120) days before expiration of the Base Term.

(b)  OPTION TO PURCHASE.  Lessee shall have the option to purchase, upon the expiration of the Base Term of this Equipment Schedule, all but not less than all of the Equipment upon the following terms and conditions:  If Lessee desires to exercise this option it shall give Lessor irrevocable written notice of its election to purchase at least one hundred twenty   (120) days before expiration of the Base Term of this Equipment Schedule in accordance with its terms.  At the expiration of the term of this Equipment Schedule, Lessee shall pay to Lessor in cash any Rent due on that date plus the purchase price for the Equipment, determined as hereinafter provided.  The purchase price of the Equipment shall be an amount equal to its then Fair Market Value, together with all taxes and charges upon sale.

For purposes of this Section, "**Fair Market Value**" shall be deemed to be an amount equal to the sale price of the Equipment, as installed and in use, obtainable in an arms' length transaction between a willing and informed buyer and a willing and informed seller under no compulsion to sell (and assuming that, as of the date of determination, the Equipment is in at least the condition required by Section 13 of the Lease and Section 12 hereof).  Lessor and Lessee may agree as to the Fair Market Value for the Equipment.   If the parties are unable to agree on the Fair Market Value of the Equipment, then Lessor and Lessee shall, at Lessee's expense, obtain appraisal values from three independent appraisers (one to be selected by Lessor, one by Lessee, and the other by the two selected by Lessor and Lessee; each of whom must be associated with a professional organization of equipment or personal property appraisers, such as the American Society of Appraisers) and the average Fair Market Value as determined by such appraisers shall be binding on the parties hereto. If the appraisers selected by Lessor and Lessee are unable to agree on the third appraiser, then Lessor will select the appraiser to provide the third appraisal value. Notwithstanding anything herein to the contrary or any determination of Fair Market Value for the Equipment as provided above, the Fair Market Value under this Section 11(b) for the Equipment shall be an amount that is not less than $544,954.89 nor more than $817,432.33

Notwithstanding any election of Lessee to purchase, the provisions of the Lease shall continue in full force and effect until the passage of ownership of the Equipment upon the date of purchase.  On the date of purchase, Lessor shall deliver to Lessee a bill of sale transferring and assigning to Lessee without recourse or warranty, except (with respect to the status of title conveyed) in respect of Lessor's acts, all of Lessor's right, title and interest in and to the Equipment.  Lessor shall not be required to make and may

specifically disclaim any representation or warranty as to the condition of the Equipment or any other matters.

(c)  OPTION TO RETURN THE EQUIPMENT.  If Lessee has not elected to renew this Equipment Schedule or purchase the Equipment leased hereunder one hundred twenty (120) days before expiration of the Base Term of this Equipment Schedule, or if Lessee has opted to renew the Lease but Lessee and Lessor are unable to agree upon renewal terms and conditions by at the end of such sixty (60) days before expiration of the Base Term of this Equipment Schedule, then Lessee shall promptly return the Equipment in accordance with the terms of the Lease, including Section 12 hereof.

12. EARLY PURCHASE OPTIONS

(a)  Provided that no Default or Event of Default has then occurred, Lessee shall have the option to purchase, upon any date on which Basic Rent is scheduled to be paid during the original term of this Lease (the date on which Lessee exercises this option being the "Early Termination Date"), all but not less than all of the Equipment leased hereunder upon the following terms and conditions:  If Lessee desires to exercise this option it shall give Lessor written notice of its election to purchase at least thirty (30) days and not more than ninety (90) days before the Early Termination Date.  On the Early Termination Date, Lessee shall pay to Lessor the aggregate of (i) any Rent due on that date, (ii) the Present Value (as defined below) of all remaining Rent payments scheduled hereunder, (iii) the Present Value of the Purchase Option Price that would have been paid under Section 11(b) hereof, and (iv) all taxes and charges due upon sale of the Equipment.

(b)  "Present Value" of an amount due hereunder is the product of that amount discounted from its scheduled payment date to the date of calculation at the per annum interest rate of 2%.

13.  OMITTED.

14.

CONSENT TO LESSEE. (a) QuarterNorth Energy LLC agrees that although it is not a party to the Lease, this Schedule and QuarterNorth Energy LLC's obligations, rights, liabilities and rights hereunder are subject to the Lease as if QuarterNorth Energy LLC had been a party thereto.  References herein and in the Lease (as incorporated herein) to "Lessee"  shall be deemed to refer to QuarterNorth Energy LLC. (b)  Lessor agrees that QuarterNorth Energy LLC shall be the Lessee hereunder and under the Lease as the Lease relates to this Schedule.

Fieldwood Energy I LLC hereby requests Lessor to agree that QuarterNorth Energy LLC shall be the Lessee hereunder and that this Schedule shall be a Schedule as defined in the Lease and Lessor, by its execution of this Schedule, hereby agrees.
DATE OF EXECUTION:  August ____, 2021.

MACQUARIE CORPORATE AND ASSET FUNDING INC.        QUARTERNORTH ENERGY LLC

By:_____        By:_____

Name:_____        Name:_____

Title:_____          Title:_____

<u>As to Section 14 only:</u>

FIELDWOOD ENERGY I LLC


By:_____

Name:_____

Title:_____

# EXHIBIT NO. 1
## Equipment Description

This Exhibit No. 1 describes the Equipment being leased under Equipment Schedule No. 2, which is executed pursuant to that certain Master Lease Agreement dated as of October 21, 2019, by and between MACQUARIE CORPORATE AND ASSET FUNDING INC., its successors and assigns, and QUARTERNORTH ENERGY LLC, its successors and permitted assigns.

| Product Line | Serial No. | Invoice Cost | Rent | Location |
|---|---|---|---|---|
| Fuel Tank | 51416 | 4,335.15 | 116.72 | EB 165 |
| Generator | 1006511/01 | 66,183.25 | 1,781.91 | EB 165 |
| Generator | 1022679-01 | 66,183.25 | 1,781.91 | EB 165 |
| Fuel Tank | 51358 | 4,335.15 | 116.72 | SP 60C |
| Generator | 1004869/02 | 66,183.25 | 1,781.91 | SP 60C |
| Compressor | e100 | 595,622.21 | 16,036.51 | EB165 |
| Distribution | N/A | 14,450.49 | 389.06 | HI 550A |
| Fuel Tank | 1016126-3 | 4,335.15 | 116.72 | HI 550A |
| Generator | 4895/17 | 33,814.15 | 910.41 | HI 550A |
| Generator | 5290-80 | 33,814.15 | 910.41 | HI 550A |
| Fuel Tank | 10101669158 | 4,335.15 | 116.72 | EB 160 |
| Generator | 1003840-01 | 23,120.79 | 622.50 | SS 253D |
| Fuel Tank | C852006 | 4,335.15 | 116.72 | EB 159 |
| Generator | 1006511/03 | 66,183.25 | 1,781.91 | EB 159 |
| Compressor | F11158 | 309,032.68 | 8,320.38 | SS193A |
| Distribution | N/A | 14,450.49 | 389.06 | SS 246A |
| Fuel Tank | N/A | 4,335.15 | 116.72 | SS 246A |
| Generator | 1006277/03 | 66,183.25 | 1,781.91 | SS 246A |
| Compressor | None | 193,291.97 | 5,204.18 | SMI142 |

| Compressor | F11583 | 368,815.79 | 9,929.98 | SMI39A |
|---|---|---|---|---|
| Compressor | F-11582 | 368,556.73 | 9,923.00 | WC485-1 |
| Compressor | 153417 | 433,290.22 | 11,665.89 | WC485-2 |
| Compressor | F-4341 | 58,179.83 | 1,566.43 | WC290 |
| Distribution | 941143 | 14,450.49 | 389.06 | WD 79 |
| Distribution | 945211 | 14,450.49 | 389.06 | WD 80D |
| Fuel Tank | 1014998-4 | 28,900.98 | 778.13 | WD 79 |
| Generator | 1005933/01 | 66,183.25 | 1,781.91 | WD 79 |
| Distribution | N/A | 14,450.49 | 389.06 | WD 80D |
| Fuel Tank | D-162 | 4,335.15 | 116.72 | WD 86A |
| Generator | 5300-24 | 43,062.47 | 1,159.41 | WD 86A |
| Generator | 1000010 | 43,062.47 | 1,159.41 | WD 80D |
| Compressor | 4WF00094 | 870,640.03 | 23,441.07 | VR272 |
| Compressor | L-81582 | 316,829.91 | 8,530.31 | SMI40JA |
| Compressor | 361534 | 60,304.23 | 1,623.63 | SS80 |
| Generator | 1013972-02 | 66,183.25 | 1,781.91 | Unallocated |
| Generator | 4596/01 | 32,369.10 | 871.50 | Unallocated |
| Cables | Cables | 153,402.80 | 4,121.04 | Unallocated |

# Exhibit B

AMENDED AND RESTATED **EQUIPMENT SCHEDULE NO. 1**

This Amended and Restated Equipment Schedule No. 1 ("**Schedule**"), dated as of August ____, 2021 amends and restates in its entirety the original Equipment Schedule 1, dated as of <u>October 21</u>, 2019 (the "**Original Schedule**") between Macquarie Corporate and Asset Funding Inc. ("**Lessor**") and Fieldwood Energy LLC ("**Original Lessee**"), which was executed pursuant to Master Lease Agreement between Original Lessee and Lessor dated <u>October 21</u>, 2019 (the "**Master Lease**"), which Master Lease was incorporated into the Original Schedule and remains incorporated into this Schedule by this reference. Unless otherwise defined in this Schedule, capitalized terms used in this Schedule have the meanings assigned to such terms in the Master Lease. If any provision of this Schedule conflicts with any provision of the Master Lease, the provisions contained in this Schedule shall prevail. Lessee hereby authorizes Lessor  to insert the serial numbers and other identification data of the Equipment, dates, and other omitted factual matters or descriptions in this Schedule.

All documents and instruments executed in connection with the Original Schedule shall continue in full force and effect.

Original Lessee transferred all of its right, title and interest in and to the Original Schedule to Fieldwood Energy I LLC ("Lessee") pursuant to a divisive merger under Texas Business Organizations Code section 1.002.  The Lessor hereby agrees that "**Lessee**", as such term is used herein and in the Master Lease, shall for all purposes hereof be deemed to be a reference to Fieldwood Energy I LLC.  Fieldwood Energy I LLC agrees that although it is not a party to the Master Lease, this Schedule and Fieldwood Energy I LLC's  obligations, rights, liabilities and rights hereunder are subject to the Master Lease as if Fieldwood Energy I LLC had been a party thereto.   References herein and in the Master Lease (as incorporated herein) to "Lessee" shall be deemed to refer to Fieldwood Energy I LLC.

This Amended and Restated Equipment Schedule No.1, incorporating by reference the terms and conditions of the Lease, constitutes a separate instrument of lease.  .


   1.   EQUIPMENT.  The Equipment leased hereunder shall be as set forth in the Exhibit 1 attached hereto.

      TOTAL INVOICE COST:   "**Total Invoice Cost**" as used herein means $_8,549,782.35_.   The cost for each item of Equipment is set forth in Exhibit No. 1 attached hereto (with respect to each item of Equipment, the "**Invoice Cost**").

   2.   TERM.  Upon and after the date of execution hereof, the Equipment shall be subject to the terms and conditions provided herein and in the Lease.

      A full term of lease with respect to said Equipment (the "**Base Term**") shall commence on the date hereof and shall extend for Thirty (30) months after the first day of July 2021, (the "**Base Lease Commencement Date**").

   3.   RENT.

       (a) OMITTED

       (b)  From and after the Base Lease Commencement Date, the monthly rent for said Equipment during the Base Term shall be $270,059.72.  Rent payments shall be made, in arrears, on the first day of the month for each month during the Base Term of this Lease.

(c)  Rent due hereunder shall be reduced by the amount set forth in Exhibit No, 1 as Rent for an item of Equipment subsequent to Lessee's payment of  the Stipulated Loss Value for such item of Equipment if deemed Lost Equipment .

4.   LESSEE'S CONFIRMATION.

Lessee hereby confirms and warrants to Lessor that the Equipment:  (a) was duly delivered to Lessee at the location specified in Section 5 hereof; (b) has been received, inspected and determined to be in compliance with all applicable specifications and that the Equipment is hereby accepted for all purposes of the Lease; and (c) is a part of the "Equipment" referred to in the Lease and is taken subject to all terms and conditions therein and herein provided.  Lessee hereby represents and warrants to Lessor that, as of the date hereof, there is no Default or Event of Default under any Schedule or any other Lease Document (as such terms are defined in the Lease).

5.   LOCATION OF EQUIPMENT.  The location of the Equipment (or the location of the principal garage of the Equipment, if the Equipment is mobile) is specified on the Exhibit 1 attached hereto.

6.   COMMERCIAL LIABILITY INSURANCE.  The amount of commercial liability insurance referenced in Section 11 of the Lease is $10,000,000.00.

7.   TAX ATTRIBUTES.  The class of property to which the Equipment is assigned is ten (10)-year property.

8.   SCHEDULE OF STIPULATED LOSS VALUES.  This Schedule of Stipulated Loss Values shall be applicable to the Equipment subject to this Equipment Schedule.

| If Total Loss Occurs During Base Term Month: | Percent of Invoice Cost |
|---|---|
| 1 (Including Interim Term) | 105% |
| 2 | 102% |
| 3 | 99% |
| 4 | 96% |
| 5 | 93% |
| 6 | 90% |
| 7 | 87% |
| 8 | 84% |
| 9 | 81% |
| 10 | 78% |
| 11 | 75% |
| 12 | 72% |
| 13 | 69% |

| | |
|---|---|
| 14 | 66% |
| 15 | 63% |
| 16 | 60% |
| 17 | 57% |
| 18 | 54% |
| 19 | 51% |
| 20 | 48% |
| 21 | 45% |
| 22 | 42% |
| 23 | 39% |
| 24 | 36% |
| 25 | 33% |
| 26 | 30% |
| 27 | 27% |
| 28 | 24% |
| 29 | 21% |
| 30 | 18% |

9.    OMITTED

10.   PERSONAL PROPERTY TAXES.  Lessee agrees that it will not list any of such Equipment for property tax purposes or report any property tax assessed against such Equipment until otherwise directed in writing by Lessor.  Upon receipt of any property tax bill pertaining to such Equipment from the appropriate taxing authority, Lessor will pay such tax and will invoice Lessee for the expense.  Upon receipt of such invoice, Lessee will promptly reimburse Lessor for such expense.

11.  END OF BASE TERM OPTIONS.

(a)  OPTION TO RENEW.  (1) Provided that no Default or Event of Default has then occurred, Lessee shall have the option to renew this Equipment Schedule, with respect to all but not less than all of the Equipment, at the expiration of the Base Term of this Equipment Schedule, on the terms and conditions as are agreed between the Lessee and Lessor.  If Lessee desires to exercise this option it shall give Lessor irrevocable written notice of its request to renew this Equipment Schedule at least one hundred twenty (120) days before expiration of the Base Term.

(b)  OPTION TO PURCHASE.  Lessee shall have the option to purchase, upon the expiration of the Base Term of this Equipment Schedule, all but not less than all of the Equipment upon the following terms and conditions:  If Lessee desires to exercise this option it shall give Lessor irrevocable written notice of its election to purchase at least one hundred twenty   (120) days before expiration of the Base Term of this Equipment Schedule in accordance with its terms.  At the expiration of the term of this Equipment Schedule, Lessee shall pay to Lessor in cash any Rent due on that date plus the purchase price for the Equipment, determined as hereinafter provided.  The purchase price of the Equipment shall be an amount equal to its then Fair Market Value, together with all taxes and charges upon sale.

For purposes of this Section, "**Fair Market Value**" shall be deemed to be an amount equal to the sale price of the Equipment, as installed and in use, obtainable in an arms' length transaction between a willing and informed buyer and a willing and informed seller under no compulsion to sell (and assuming that, as of the date of determination, the Equipment is in at least the condition required by Section 13 of the Lease and Section 12 hereof).  Lessor and Lessee may agree as to the Fair Market Value for the Equipment.   If the parties are unable to agree on the Fair Market Value of the Equipment, then Lessor and Lessee shall, at

Lessee's expense, obtain appraisal values from three independent appraisers (one to be selected by Lessor, one by Lessee, and the other by the two selected by Lessor and Lessee; each of whom must be associated with a professional organization of equipment or personal property appraisers, such as the American Society of Appraisers) and the average Fair Market Value as determined by such appraisers shall be binding on the parties hereto. If the appraisers selected by Lessor and Lessee are unable to agree on the third appraiser, then Lessor will select the appraiser to provide the third appraisal value. Notwithstanding anything herein to the contrary or any determination of Fair Market Value for the Equipment as provided above, the Fair Market Value under this Section 11(b) for the Equipment shall be an amount that is not less than $1,025,973.88 nor more than $1,538,960.82

Notwithstanding any election of Lessee to purchase, the provisions of the Lease shall continue in full force and effect until the passage of ownership of the Equipment upon the date of purchase.  On the date of purchase, Lessor shall deliver to Lessee a bill of sale transferring and assigning to Lessee without recourse or warranty, except (with respect to the status of title conveyed) in respect of Lessor's acts, all of Lessor's right, title and interest in and to the Equipment.  Lessor shall not be required to make and may specifically disclaim any representation or warranty as to the condition of the Equipment or any other matters.

   (c)  OPTION TO RETURN THE EQUIPMENT.  If Lessee has not elected to renew this Equipment Schedule or purchase the Equipment leased hereunder one hundred twenty (120) days before expiration of the Base Term of this Equipment Schedule, or if Lessee has opted to renew the Lease but Lessee and Lessor are unable to agree upon renewal terms and conditions by at the end of such sixty (60) days before expiration of the Base Term of this Equipment Schedule, then Lessee shall promptly return the Equipment in accordance with the terms of the Lease, including Section 12 hereof.

   12. EARLY PURCHASE OPTIONS

   (a)  Provided that no Default or Event of Default has then occurred, Lessee shall have the option to purchase, upon any date on which Basic Rent is scheduled to be paid during the original term of this Lease (the date on which Lessee exercises this option being the "Early Termination Date"), all but not less than all of the Equipment leased hereunder upon the following terms and conditions:  If Lessee desires to exercise this option it shall give Lessor written notice of its election to purchase at least thirty (30) days and not more than ninety (90) days before the Early Termination Date.  On the Early Termination Date, Lessee shall pay to Lessor the aggregate of (i) any Rent due on that date, (ii) the Present Value (as defined below) of all remaining Rent payments scheduled hereunder, (iii) the Present Value of the Purchase Option Price that would have been paid under Section 11(b) hereof, and (iv) all taxes and charges due upon sale of the Equipment.

   (b)  "Present Value" of an amount due hereunder is the product of that amount discounted from its scheduled payment date to the date of calculation at the per annum interest rate of 2%.

   13.  OMITTED.

14.  OMITTED.  .

DATE OF EXECUTION:  August _____, 2021.

MACQUARIE CORPORATE AND ASSET FUNDING INC.          FIELDWOOD ENERGY I LLC


By:_____          By:_____
Name:_____          Name:_____
Title:_____          Title:_____

# EXHIBIT NO. 1
## Equipment Description

This Exhibit No. 1 describes the Equipment being leased under Amended and Restated Equipment Schedule No. 1, which is executed pursuant to that certain Master Lease Agreement dated as of October 21, 2019, by and between MACQUARIE CORPORATE AND ASSET FUNDING INC., its successors and assigns, and FIELDWOOD ENERGY I LLC, its successors and permitted assigns.

| Product Line | Serial No. | Invoice Cost | Rent | Location |
|---|---|---|---|---|
| Fuel Tank | 51456 | 4,335.15 | 136.91 | MC 311 |
| Generator | 1004626-002 | 66,183.25 | 2,090.15 | MC 311 |
| Generator | 1009733-01 | 66,183.25 | 2,090.15 | SS 207A |
| Fuel Tank | 51415 | 4,335.15 | 136.91 | MP 310 |
| Generator | 5263/23 | 43,062.47 | 1,359.97 | MP 311A |
| Generator | 5263/19 | 43,062.47 | 1,359.97 | SS 274A |
| Distribution | N/A | 14,450.49 | 456.36 | HI 573B |
| Generator | 1010184-02 | 66,183.25 | 2,090.15 | HI 573B |
| Fuel Tank | C907155 | 4,335.15 | 136.91 | HI 573A |
| Generator | 1004436-01 | 43,062.47 | 1,359.97 | HI 573A |
| Generator | 1000010 | 43,062.47 | 1,359.97 | WD 90E |
| Generator | 1013275-04 | 19,074.65 | 602.40 | WC 66A |
| Fuel Tank | 52804 | 4,335.15 | 136.91 | HI 179 |
| Generator | 1005871/04 | 43,062.47 | 1,359.97 | HI 179 |
| Fuel Tank | 10101669159 | 4,335.15 | 136.91 | WC 71D |
| Generator | 1002922-05 | 43,062.47 | 1,359.97 | WC 71D |
| Generator | 1003815-08 | 23,120.79 | 730.18 | BA 133A |
| Fuel Tank | 8041620807 | 4,335.15 | 136.91 | HI A595D |
| Generator | 5156/08 | 43,062.47 | 1,359.97 | HI A595D |

| | | | | |
|---|---|---|---|---|
| Generator | 1000595/02 | 43,062.47 | 1,359.97 | EI 189B |
| Compressor | F-14881 | 356,759.80 | 11,266.92 | CA43 |
| Compressor | 271420 | 180,741.59 | 5,708.05 | EI337A |
| Compressor | F12162 | 480,309.26 | 15,168.77 | EI53C |
| Compressor | F-14731 | 310,095.86 | 9,793.22 | HI179 |
| Compressor | F-13008 | 361,483.18 | 11,416.09 | MP140B |
| Compressor | F151 | 712,206.56 | 22,492.37 | MP153C |
| Compressor | 65F31 | 355,903.58 | 11,239.88 | SS129 |
| Compressor | F-17966 | 191,373.45 | 6,043.81 | SS189 |
| Compressor | F-13806 | 444,411.67 | 14,035.08 | SS204A |
| Compressor | 99031 | 203,777.28 | 6,435.54 | SS354 |
| Compressor | F04564 | 163,021.83 | 5,148.43 | ST49 |
| Compressor | 78007 | 148,795.34 | 4,699.14 | VR261A |
| Compressor | F12449 | 318,514.23 | 10,059.08 | VR76 |
| Compressor | F-25819 | 478,203.26 | 15,102.26 | WD103F |
| Compressor | F11695 | 511,636.91 | 16,158.13 | WD122 |
| Compressor | F11906 | 269,340.41 | 8,506.11 | WC71 |
| Compressor | F10834 | 287,201.93 | 9,070.20 | MP259A-1 |
| Compressor | 65F407 | 472,550.66 | 14,923.74 | MP259A-2 |
| Compressor | F11313 | 444,411.67 | 14,035.08 | SS207-1 |
| Compressor | F11312 | 444,411.67 | 14,035.08 | SS207-2 |
| Compressor | G6X5893 | 35,524.68 | 1,121.91 | BA491 |
| Compressor | 288792 | 254,922.44 | 8,050.77 | EI342C |

| Compressor | 7B1282 | 148,019.48 | 4,674.64 | HIA341 |
|---|---|---|---|---|
| Compressor | 71B2571 | 64,689.99 | 2,042.99 | SMI66C |
| Generator | 1006057/02 | 66,183.25 | 2,090.15 | Unallocated |
| Generator | 1024987-2 | 66,183.25 | 2,090.15 | Unallocated |
| Cables | Cables | 162,701.72 | 5,139.22 | Unallocated |