**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING SIDE PURCHASE AGREEMENT,
INCLUDING (A) SALE OF DEBTORS' ASSETS FREE AND CLEAR OF
ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS
AND (B) ASSUMPTION AND ASSIGNMENT OF KEY CONTRACTS,
(II) APPROVING FORM AND MANNER OF NOTICE OF SIDE
PURCHASE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

---

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 7, 2021 at 1:30 P.M. (prevailing Central Time) in Courtroom 404 (MI), 515 Rusk Avenue, Houston, TX 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Preliminary Statement

1. Since prior to the filing of these chapter 11 cases, Fieldwood and Riverstone V FW Holdings, LLC and its affiliates (collectively, "**Riverstone**"), the indirect owners of all the equity interests in Fieldwood Mexico, B.V. ("**Fieldwood Mexico**"), a non-Debtor in these chapter 11 cases and the indirect owner of Fieldwood Energy E&P Mexico, S. de. R.L. de C.V. ("**Mexico E&P**"), the designated operator of the undeveloped Ichalkil and Pokoch fields in Mexico (the "**Mexico Business**"), have been extensively marketing the Mexico Business, which Fieldwood has managed since the inception of the project in early 2016. In 2018, Riverstone, the majority owner of Fieldwood Mexico, undertook a marketing process engaging Barclays Investment Bank ("**Barclays**") to seek the sale of Fieldwood Mexico. After running a long and comprehensive marketing process that continued for the most of 2019, no acceptable bids were presented for the purchase of Fieldwood Mexico. Subsequently in late 2020, several parties involved in the initial sales process contacted Barclays to continue the process. LUKOIL International Holding GMBH (the "**Purchaser**") re-engaged in the sales process and conducted extensive due diligence on Fieldwood Mexico. After extensive negotiations, the Purchaser agreed to purchase the Mexico Business through the purchase of all equity interests in Fieldwood Mexico and the Mexico Companies (as defined below) on terms that Riverstone determined to be acceptable. Because Riverstone, as majority owner of Fieldwood Mexico, has the right to "drag along" all interests in

2

Fieldwood Mexico in a proposed sale, Fieldwood reviewed the proposed terms and determined, in light of Riverstone's control, that it was in its best interest to cooperate in the proposed sale to achieve the best available consideration for its interests and rights in Fieldwood Mexico and the Mexico Business.  The Sale Transaction (as defined below) has been memorialized in two separate purchase agreements: (i) that certain *Share Purchase Agreement*, dated as of July 2, 2021 (the "**FM Purchase Agreement**" and the sale transaction thereunder, the "**FM Transaction**"), by and among Fieldwood Cooperatief U.A. ("**Fieldwood Cooperatief**"), FWE Mexico Management LLC, Riverstone V Fieldwood Mexico Investment Management Cooperatief U.A. (f/k/a Riverstone Sparta Cooperatief U.A.), Fieldwood Mexico, and LUKOIL International Upstream Holding B.V., and (ii) that certain *Purchase Agreement* dated as of July 2, 2021 (the "**Side Purchase Agreement**"),[2] by and between Fieldwood, the Purchaser, and the Credit Bid Purchaser (as defined in the Plan), which includes, among other things, an agreement to sell the Interests (as defined below) to the Purchaser contemporaneously with the FM Transaction (the "**Mexico Transaction**" and together with the FM Transaction, the "**Sale Transaction**").

        2.      As further discussed below, the Assets proposed to be sold to the Purchaser pursuant to the Side Purchase Agreement are among the assets being assigned to the Credit Bid Purchaser pursuant to the Debtors' confirmed chapter 11 plan.  Pursuant to the Side Purchase Agreement, should the Effective Date of the Plan and the consummation of the Credit Bid Transaction (as defined in the Plan) occur prior to the closing of the Side Purchase Agreement (the "**Completion Date**"), the Credit Bid Purchaser will step in as seller in the place of Fieldwood and transfer the Assets to the Purchaser.  If, however, the Completion Date occurs prior to the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Side Purchase Agreement.

Effective Date of the Plan and the consummation of the Credit Bid Transaction, the Assets will be transferred directly from Fieldwood to the Purchaser. Although the Debtors fully expect the Effective Date of the Plan to occur prior to the Completion Date (which would obviate the need for the relief requested in this Motion) and are hopeful that the Effective Date will occur as early as next week, the Side Purchase Agreement provides that the Purchaser may terminate the agreement if the Debtors fail to file this Motion on or before August 15, 2021.

3. As further discussed below, the Mexico Transaction will generate approximately $5 million in cash proceeds and relief from certain obligations associated with the Mexico Business. The owners of Fieldwood Mexico will receive the majority of the proceeds in the Sale Transaction as the direct owners selling to the Purchaser. Moreover, because of Riverstone's contractual drag-along right to consummate the Sale Transaction regardless of whether Fieldwood consents to such transaction, as noted above, the Debtors' failure to obtain Court approval of the Mexico Transaction may cause harm to the Debtors' estates. Accordingly, the Debtors submit that entry into the Side Purchase Agreement is a sound exercise of the Debtors' business judgment and the Motion should be approved.

## Background

4. Commencing on August 3, 2020, the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure

4

(the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

7. On August 18, 2020, the United States Trustee for Region 7 appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

8. On June 25, 2021, the Debtors filed the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1742) (including any exhibits and schedules thereto as may be further amended, supplemented, or modified, the "**Plan**"), and this Court entered an order confirming the Plan on the same day (ECF No. 1751) (the "**Confirmation Order**").

## Jurisdiction

9. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

10. By this Motion, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9019, the Debtors seek the entry of an order substantially in the form of **Exhibit A** attached hereto (the "**Proposed Order**") (i) authorizing and approving (a) the Side Purchase Agreement between Fieldwood and the Purchaser for the sale of the Assets from Fieldwood to Purchaser in connection with the Mexico Transaction, free and clear of all liens, claims, interests, and encumbrances, the assumption by Purchaser of certain liabilities and other related terms, and (b) the assumption and assignment of the Key Contracts, (ii) approving

5

the form and manner of notice of the Motion and proposed assumption and assignment of the Key Contracts, and (iii) granting related relief.

### Fieldwood's Interests in the Mexico Companies

11. Fieldwood directly owns certain minority equity interests representing one percent or less of the issued and outstanding capital (collectively, the "**Interests**") in each of Fieldwood Energy de Mexico, S. de R.L. de C.V. ("**Mexico Holdco**"), Mexico E&P, and Fieldwood Energy Services de Mexico, S. de R.L. de C.V. (together with Mexico Holdco and Mexico E&P, the "**Mexico Companies**" and, each individually, a "**Mexico Company**"). Each of the Mexico Companies is a non-Debtor. Fieldwood Mexico (which is also a non-Debtor) is the direct and indirect owner of all of the equity interests of the Mexico Companies not owned by Fieldwood. Mexico E&P operates the Mexico Business and splits all costs and profits equally with its Mexican partner, an affiliate PetroBal, S.A.P.I. de C.V ("**PetroBal**"). Fieldwood manages Mexico E&P and provides technical and administrative services to Mexico E&P pursuant to various service agreements on arm's-length terms.

12. Pursuant to Clause 8.2 of that certain *Amended and Restated Subscription and Shareholders' Agreement*, dated as of July 31, 2018, with an effective date of January 1, 2018, relating to Fieldwood Mexico, as amended by the *Amendment Agreement*, dated June 21, 2021 (as amended, the "**SSA**"), Riverstone, which holds approximately 89.33% of the equity interests in Fieldwood Mexico, has a drag along right to cause minority shareholders, including Fieldwood Cooperatief, a wholly owned non-Debtor subsidiary of Fieldwood and Debtor Fieldwood Offshore LLC (which only holds approximately 10% of the equity interests in Fieldwood Mexico), to join an approved sale (the "**Drag Rights**"). Therefore, Riverstone may consummate the Sale Transaction regardless of whether Fieldwood consents to such transaction.

13.     During the marketing process for the sale of the Mexico Business, led by Barclays, which began in 2018, several potential bidders, including the Purchaser, submitted indications of interest to purchase the Mexico Business. Despite extensive negotiations, the indications of interest did not result in acceptable terms for the sale of Fieldwood Mexico. Subsequently, in late 2020, three potential bidders, including the Purchaser, approached Barclays to re-engage in the sale process and performed due diligence on Fieldwood Mexico. Ultimately, the Purchaser offered new proposed terms that were determined by Riverstone to be acceptable. The parties worked extensively and at arm's length to negotiate the final terms of the FM Purchase Agreement and the Side Purchase Agreement.

### The Mexico Transaction

14.     As indicated above, the Debtors seek approval of, among other things, the Mexico Transaction. The Mexico Transaction is governed by the terms of the Side Purchase Agreement, which is the only part of the transaction applicable to a Debtor. Generally, the Mexico Transaction provides for the sale of the Assets by Fieldwood to Purchaser and assumption of certain liabilities and contracts by Purchaser. The Assets consist of all of Fieldwood's rights, title and interests in the Interests, the Key Contracts, the Records, and the Equipment of the Mexico Companies.

15.     Consideration for the Assets includes (a) payment by Purchaser of the purchase price of $5,000,000 in cash and (b) assumption by Purchaser of any debt, obligation, duty, commitment or liability of any nature arising from, related to or associated with the Assets after the Completion Date (as defined in the Side Purchase Agreement) (collectively, the "**Assumed Obligations**"), in accordance with the Side Purchase Agreement. All monetary consideration is required to be paid by Purchaser in accordance with Section 4.2 of the Side Purchase Agreement. The Side Purchase Agreement also contemplates a simultaneous occurrence

of the Completion Date of the Mexico Transaction and the FM Transaction.  *See* Side Purchase Agreement, §§ 2.3; 3.3; 5.1.

16. Closing of the Mexico Transaction is conditioned on a number of customary conditions precedent being satisfied or waived prior to Completion Date, as detailed in Section 3 of the Side Purchase Agreement.  In addition, Section 3.5 of the Side Purchase Agreement provides the parties the right to terminate the Side Purchase Agreement under certain conditions.  In relevant part, the Purchaser may terminate the Side Purchase Agreement if:

> (i) on or after 12:01 A.M. (prevailing Central Time) on August 15, 2021, (A) the Effective Date has not occurred and (B) a motion seeking entry of a Sale Order has not been filed with the Bankruptcy Court; or (ii) on or after 12:01 A.M. (prevailing Central Time) on September 15, 2021, (A) the Sale Order has not been entered by the Bankruptcy Court and (B) the Effective Date has not occurred, (in each case subject to extension by Purchaser at its sole discretion, the "**Bankruptcy Outside Date**").

17. Accordingly, the Debtors hereby file this Motion to satisfy the condition that a motion seeking approval of the Side Purchase Agreement be filed prior to August 15.

### The Credit Bid Transaction Under the Plan

18. Under the Plan and as approved by this Court pursuant to the Confirmation Order, the Assets proposed to be sold pursuant to the Side Purchase Agreement are among the assets being acquired by the Credit Bid Purchaser under the Plan.  *See* Plan, § 5.2; Confirmation Order, ¶¶ FF-NN, 15-25.  Pursuant to the Side Purchase Agreement, should the Effective Date of the Plan and the consummation of the Credit Bid Transaction (as defined in the Plan) occur prior to the Completion Date of the Side Purchase Agreement, the Credit Bid Purchaser shall step in as seller in the place of Fieldwood and transfer the Assets to the Purchaser.  *See* Side Purchase Agreement, § 10.4.  If the Completion Date occurs prior to the Effective Date of the Plan and the consummation of the Credit Bid Transaction, the Assets will be transferred directly from

Fieldwood to the Purchaser. *See generally* Side Purchase Agreement, § 5. The Effective Date of the Plan has not yet occurred.

19. The Credit Bid Purchaser is a party to the executed Side Purchase Agreement and has consented to the Mexico Transaction, including the timing considerations described above.

**Assumption and Assignment Notice and Procedures**

20. To the extent the Completion Date occurs prior to the Effective Date, the Debtors seek authority to assume and assign the Key Contracts[3] to Purchaser in accordance with the Side Purchase Agreement and the following procedures (the "**A&A Procedures**"):

(a) The Debtors and Purchaser will send by first class mail and email, where available, a notice of the Key Contracts that may be assumed and assigned in connection with the Mexico Transaction and the proposed Cure Costs (as defined in the Side Purchase Agreement) (the "**Mexico Transaction Cure Costs**"), the form of which is attached hereto as **Exhibit B** (the "**Assumption Notice**").

(b) The Debtors' good faith estimate of the Mexico Transaction Cure Costs, if any, for each Key Contract will be included on Exhibit 1 to the Assumption Notice.

(c) Objections to the assumption and assignment of a Key Contract including to the proposed Mexico Transaction Cure Costs or the provision of adequate assurance of future performance by Purchaser (each, a "**Cure Objection**") must be filed with the Court and served on counsel to the Debtors and Purchaser no later than the objection deadline listed in the Assumption Notice (the "**Cure Objection Deadline**").

(d) Any Cure Objection or other objection to this Motion that is unresolved will be heard at the hearing scheduled for September 7, 2021 (the "**Sale Hearing**") to consider this Motion and any unresolved objections.

---

[3] The Confirmation Order provides for the assumption and assignment of the Key Contracts to Credit Bid Purchaser upon the Effective Date of the Plan. However, if the Completion Date occurs prior to the Effective Date of the Plan and the consummation of the Credit Bid Transaction, the Debtors hereby seek assumption and assignment of the Key Contracts to Purchaser as set forth herein.

(e)   If any counterparty to a Key Contract fails to file with the Court and serve on counsel to the Debtors and Purchaser a timely Cure Objection, the counterparty shall be deemed to have consented to the assumption and assignment of the Key Contracts to Purchaser or its designee(s), notwithstanding any anti-assignment provision or other restriction on assumption or assignment in the Key Contracts, and shall be forever barred from asserting any objection with regard to adequate assurance of future performance by Purchaser or its designee(s) or the cost to cure any defaults under the applicable Key Contract and any proof of claim asserting a claim for such amount shall be expunged without further order of the Court. The Mexico Transaction Cure Costs set forth in the Assumption Notice shall be controlling and shall be the only amount necessary to cure outstanding defaults under the applicable Key Contract under section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in the Key Contract, or any other document, and the counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Key Contract through the date of assumption and assignment, whether in a proof of claim or otherwise against the Debtors or their property.

21.   The Debtors also request that the Court approve and ratify the form of the Assumption Notice attached hereto as **Exhibit B**. The Debtors submit that service of the Assumption Notice on the counterparties to the Key Contracts is proper and sufficient to provide notice to the counterparties of the proposed assumption by the Debtors and assignment to Purchaser or its designee(s). The counterparties to the Key Contracts were previously served with the cure notices in connection with the confirmation of the Plan (ECF Nos. 1395, 1549), as well as with the Schedule of Assumed Contracts (as defined in the Plan) filed as part of the Plan Supplement (ECF No. 1562). The Assumption Notice will serve as a re-noticing to those counterparties of the possible assumption and assignment of their Key Contracts to the Purchaser.

Therefore, the Debtors should be granted the authority to assume and assign the Key Contracts to Purchaser pursuant to the A&A Procedures.

## The Relief Requested Should Be Granted

**A.     Approval of the Mexico Transaction is Appropriate and in the Best Interests of the Debtors' Estates**

*(i)    The Mexico Transaction Should be Approved as an Exercise of the Debtors' Sound Business Judgment*

22.     Section 363(b) of the Bankruptcy Code provides that a debtor may sell property of the estate outside the ordinary course of business after notice and a hearing. Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate "some articulated business justification," as established by the Second Circuit in *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983), which decision has been adopted in this circuit. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc., et al. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re ASARCO*, 650 F.3d at 601; *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014); *In re St. Marie Clinic PA*, No. 10-70802, 2013 WL 5221055, at *9 (Bankr. S.D. Tex. Sept. 17, 2013); *In re Particle Drilling Techs., Inc.*, No. 09-33744, 2009 WL 2382030, at *2 (Bankr. S.D. Tex. July 29, 2009); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988). Once the Debtors articulate a valid business justification, "[t]he business judgment rule . . . 'is a presumption that in making the business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a Debtor's management decisions.").

23. The Debtors have a sound business justification for undertaking the Mexico Transaction. First, the Mexico Transaction will generate approximately $5 million of cash directly, which will be assigned to the Credit Bid Purchaser in connection with the Credit Bid Transaction. Second, the Purchaser has agreed to assume the Assumed Obligations, which would have otherwise been assigned to the Credit Bid Purchaser. Moreover, as discussed above, Riverstone holds certain Drag Rights that allow it to cause the sale of Fieldwood Mexico regardless of whether Fieldwood consents to such transaction. Further, the Debtors believe that the Purchaser's offer for the Assets was the highest and best offer. As such, the Debtors' determination to undertake the Mexico Transaction is a valid and sound exercise of the Debtors' business judgment.

    (ii)    *The Sale of the Assets Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code*

24. Section 363(f) of the Bankruptcy Code permits the Debtors to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). As section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(f), it is only necessary to meet one of the five conditions of section 363(f). *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3

(Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."). The Debtors believe that they demonstrated their satisfaction of one or more of these conditions and, in particular, that absent an objection to the sale of the Assets, any party with a claim or interest in the Assets may be deemed to have consented to the sale and that any party with a claim or interest in the Assets could be compelled to accept a money satisfaction of such interest or claim.

25. Additionally, the Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) did not apply. *See In re Ditech Holding Corp.*, 606 B.R. 544, 591 (Bankr. S.D.N.Y. 2019) ("[P]lan sales can be free and clear of claims without invoking section 363(f)."); *In re Trans World Airlines, Inc.*, No. 01–0056, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("[B]ankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of section 363(f)."); *see also Volvo White Truck Corp. v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

    (iii)    The Sale of the Assets Has Been Proposed in Good Faith and Without Collusion, and the Purchaser Will Be a "Good-Faith Purchaser"

26. Pursuant to section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x 195, 200 (5th Cir. 2015); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J.

May 11, 2007); *see also In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the Purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders).

27. In other words, a party would have to show fraud or collusion between the purchaser and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. An appropriate characterization of good faith in a bankruptcy sale is a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

28. The Debtors submit that Purchaser is a "good-faith" purchaser within the meaning of section 363(m) and the terms of the Side Purchase Agreement were negotiated at arms'-length and in good faith without any collusion or fraud.[4] Additionally, Purchaser is not an "insider" or "affiliate" of any of the Debtors as those terms are defined in section 101 of the Bankruptcy Code. Accordingly, the Debtors contend that Purchaser is entitled to the protections of section 363(m).

**B.     Assumption and Assignment of the Key Contracts is An Exercise of Sound Business Judgment and Should Be Approved**

29. In connection with the Mexico Transaction, the Debtors seek to assume and assign the Key Contracts to Purchaser pursuant to section 365 of the Bankruptcy Code.

---

[4] Section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

30. Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assume and assign its executory contracts and unexpired leases, subject to the approval of the court, so long as the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g.*, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (applying a business judgment standard to debtor's determination to assume an unexpired lease); *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) (business judgment test "rather obviously presupposes that the estate will assume a contract only where doing so will be to its economic advantage."); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) ("[T]he standard to be applied for approval of the assumption [of an executory contract] is the business judgment standard.").

31. Any assumption of the Key Contracts is an exercise of the Debtors' sound business judgment because the transfer of such contracts and lease is integral to the Mexico Transaction and is necessary for the Debtors to obtain the best value for their Assets. The Debtors' assumption of the Key Contracts is an exercise of sound business judgment and should be approved.

32. In addition, to facilitate the assumption or assumption and assignment of the Key Contracts, the Debtors further request that the Court find that all anti-assignment provisions therein, whether such provisions expressly prohibit or have the effect of restricting or

15

limiting assignment of such contract or lease, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[5]

### C. The Court Should Waive the Stay of Bankruptcy Rules 6004 and 6006

33. Because time is of the essence with regard to the Mexico Transaction, the Debtors request that the Court waive the 14-day stay (i) provided in Bankruptcy Rule 6004(h) in all orders requested to be entered herein and (ii) provided in Bankruptcy Rule 6006(d) in the Proposed Order approving the Mexico Transaction.

### Notice

34. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

### No Previous Request

35. The Debtors have not made a previous request for the relief sought in this Motion in any court.

---

[5] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease…" 11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that "Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested in this Motion and such other and further relief, at law or in equity, as the Court may deem just and appropriate.

Dated: August 14, 2021
      Houston, Texas

/s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
       Jessica.Liou@weil.com

*Attorneys for Debtors and Debtors in Possession*

17

**Certificate of Service**

I hereby certify that on August 14, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                 /s/ Alfredo R. Pérez
                                                 Alfredo R. Pérez