IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| | § | |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**RESPONSE OF BP EXPLORATION & PRODUCTION, INC.
TO EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S RULING
<u>QUASHING RULE 2004 DISCOVERY</u>**

BP Exploration & Production, Inc. ("<u>BP</u>") files this *Response to Emergency Motion for Reconsideration of Court's Ruling Quashing Rule 2004 Discovery* (the "<u>Response</u>")[2] in opposition to the *Emergency[3] Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* [ECF No. 2019] (the "<u>Motion for Reconsideration</u>") filed by QuarterNorth Energy LLC ("<u>QuarterNorth</u>"), as assignee of the MC-519 #3 well and any claims or causes of action relating thereto, and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] The parties earlier briefing on the Rule 2004 discovery issues is located at Docket Numbers 1412 (Shell's Motion to Quash), 1415 (BP's Motion to Quash), 1539 (Debtors' Response to BP), 1540 (Debtors' Response to Shell), 1845 (BP's Reply), and 2000 (BP's Supplemental Reply).

[3] Contrary to the assertion by QuarterNorth, the Motion for Reconsideration does not present an "emergency." The only basis cited for the alleged "emergency" is that the Debtors made the Rule 2004 Requests three months ago. Far from demonstrating any emergency, the delay in pursuing the Requests illustrates a lack of urgency. QuarterNorth will not be prejudiced if they are required to seek discovery regarding the PSA in a separate proceeding.

**Preliminary Statement**

1. QuarterNorth, purporting to stand in the Debtors' shoes with respect to Rule 2004 discovery served prior to the Effective Date, fails to meet the applicable standard for a motion to reconsider because it has not sustained its burden of demonstrating a manifest error of law or fact, newly discovered evidence, or an intervening change in the controlling law. Rather, QuarterNorth simply re-hashes arguments previously made (by the Debtors) and rejected by the Court regarding the Debtors' attempt to characterize the Rule 2004 discovery as applying to claims under the PSA rather than claims relating to operatorship, which the Court properly concluded is a matter subject to arbitration.

2. As recognized by the Court in its August 24, 2021 ruling (the "Ruling")[4] quashing the Rule 2004 Requests to BP (the "Rule 2004 Requests"), the Rule 2004 Requests contain 17 categories of documents, primarily related to and in furtherance of the Debtors' Notice of Removal and related claims under the *Galapagos Area Loop Subsea Production System Construction and Operating Agreement* date December 1, 2011 (the "LSPS OA"), all of which are subject to a binding arbitration agreement. Indeed, QuarterNorth's Motion for Reconsideration identifies only 3 of the Debtors' 17 requests that it alleges pertain to the *Purchase and Sale Agreement by and between BP Exploration & Production Inc. and Fieldwood Energy LLC in respect of Mississippi Canyon Block 519* dated May 17, 2019 (the "PSA") and newly disclosed claims for alleged fraudulent inducement (Request Nos. 3, 13 and 14), none of which are actionable in any event, as such fraudulent inducement claims were expressly waived by the Debtors in the PSA. To the extent QuarterNorth now claims to pursue "direct damages," rather than consequential damages,

---

[4] The parties disagree whether the Court ruled on the Motions to Quash. After the Court initially declined to rule on the Motions to Quash, the Debtors' counsel pressed the issue. Aug. 24, 2021 Hr'g Tr. 10:1–2 & 13–19. (Docket No. 2006). Thereafter, the Court stated: "I did think about it, but because of that, ***I'm going to go ahead and deny them now.***" *Id.* at 11:8–9 (emphasis added).

2

such damages are non-existent, as the Debtors rejected the PSA, and never paid the $30 million deferred purchase price under that Agreement. It defies logic for QuarterNorth to seek discovery relating to alleged damages under a purchase agreement for which the Debtors never paid the purchase price.

3.  Even if QuarterNorth had potential claims under the PSA that pass the "smell test"—which it does not—any such claims are now owned by a non-debtor (QuarterNorth) against another non-debtor (BP) that have nothing to do with the post-Effective Date liquidating estates being administered in bankruptcy. As such, QuarterNorth has no ability to use Rule 2004 to conduct pre-suit discovery against BP in furtherance of alleged causes of action that are not property of the Debtors' estates and no longer a part of these chapter 11 cases. Such discovery is not necessary to the continued administration of these cases or to the implementation of the Plan, and will not prejudice QuarterNorth from seeking appropriate discovery in any post-confirmation litigation.

4.  For all the above reasons, as set forth in more detail below, the Motion for Reconsideration must be denied.

## Argument

**A.    QuarterNorth Has Failed to Establish a Basis for Reconsideration**

5.  QuarterNorth has failed to meet the applicable standard for a motion to reconsider. Motions to reconsider are analyzed under Rule 59(e) of the Federal Rules of Civil Procedure, made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure. *See, e.g., In re Garrett-Beck Corp.*, No. 09-37774, 2012 WL 3727318, at *3 (Bankr. S.D. Tex. Aug. 27, 2012) (explaining that, where a motion for reconsideration is filed within 14 days of the judgment or order of which

the party complains, it is considered to be a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion).

6. Relief under Rule 59(e) is appropriate "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). "Rule 59(e) motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (internal citation and quotation marks omitted).

7. Here, QuarterNorth has failed to establish any of the grounds for reconsideration. Nothing in the Motion for Reconsideration establishes a manifest error of law or fact by the Court in quashing the Rule 2004 Requests. Each of the arguments raised in the Motion for Reconsideration were considered by the Court before it ruled on the Motion to Quash. The first argument in the Motion for Reconsideration concerns the lack of an arbitration clause in the PSA. *See* Motion for Reconsideration, ¶¶ 4–5. This simply rehashes an argument that was raised by the Debtors before the Court's Ruling and, therefore, does not raise any manifest error of law or fact. So too for QuarterNorth's remaining arguments, which concern the existence of alleged claims under the PSA that allegedly provide a basis for discovery via Rule 2004. *See* Motion for Reconsideration, ¶¶ 6–13. Again, these are arguments that were made before the Court ruled and, as such, nothing in the Motion for Reconsideration points to any manifest error of law or fact. *See, e.g.*, *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 129 (5th Cir. 2019) (affirming the denial of a motion to reconsider where, *inter alia*, the legal theories presented originally and on reconsideration were essentially the same, such that there was no manifest error).

8. In addition, the Motion for Reconsideration does not present (or even purport to present) any newly discovered evidence, nor does it demonstrate (nor could it demonstrate) an intervening change in controlling law. There are no new facts, law, or legal theories raised in the Motion for Reconsideration that were not raised, or could not have been raised, before the Court's Ruling. *See, e.g.*, *Rodriguez*, 695 F.3d at 372 (affirming denial of motion to reconsider where the facts underlying the new argument presented by the movant were known to the movant well before the ruling in question and the movant should have known to bring such matters to the court's attention before it ruled). As such, QuarterNorth has failed to meet its burden to establish entitlement to reconsideration under Rule 59(e) and for that reason alone the Motion for Reconsideration must be denied.

**B.    The Rule 2004 Requests are Directed to Issues Under the LSPS OA and the PHA, Which Both Contain Arbitration Provisions**

9. Even a cursory review of the Rule 2004 Requests reinforces the Court's ruling that the Rule 2004 Requests are primarily addressed at issues that are subject to arbitration provisions in the LSPS OA or the *Production Handling and Operating Agreement for Mississippi Canyon Block 519*, dated September 21, 2010 (the "PHA"),[5] including issues relating to bringing the Genovesa well online and/or more recent operational issues.

10. By way of example, the Rule 2004 Requests seek:

- All documents and communications concerning the Genovesa Well (No. 1);

- Documents sufficient to show the meaning of "Na Kika Obligations," as defined in the PHA (No. 4);

- Documents concerning BP's declaration of a force Majeure on or around April 6, 2020 that BP sent to the owners of Genovesa, Manuel, Isabella and Calliope (No. 5);

---

[5] Previously filed under seal at Docket No. 832-2. The arbitration provisions are located in Article 15.11 and Exhibit "I" of the PHA and are materially identical to the arbitration provisions found in the LSPS OA.

- All documents and communications concerning efforts to bring the Manuel, Isabela, and Calliope wells online at Na Kika as well as BP's ownership interest in those wells (Nos. 6–11);

- All documents concerning the LSPS leak from 2015 to the present (No. 12);

- Documents showing all instances in which BP has declared force majeure on account of the COVID-19 pandemic for operations in the Gulf of Mexico (No. 16); and

- All documents and communications concerning the deployment of a flotel at Na Kika in 2020 (No. 17).

11. Indeed, QuarterNorth's newly disclosed fraudulent inducement claim necessarily pertains to events prior to the date of the PSA (May 17, 2019), and the Rule 2004 Requests expressly seek broad categories of documents after the PSA closing, including documents to the present and documents that have nothing to do with the PSA or representations that were made at the time it was executed (which are contractually barred in any event). QuarterNorth has identified only 3 of the 17 requests that it maintains are somehow related to a fraudulent inducement claim under the PSA, effectively conceding that the remainder of the requests do not. Debtors served BP's counsel with a draft copy of the Rule 2004 Requests at 8:25 p.m. on Friday, May 14, 2021 and then sent the disputed Operatorship Removal Notice later that evening at 10:04 p.m. Clearly, the two are related and any discovery related to the disputed Operatorship Notice must take place in the arbitration.

12. As this Court correctly did in its Ruling, other courts have likewise prohibited the use of Rule 2004 discovery to evade discovery limits in the context of arbitration clauses. *See In re Daisytek, Inc.*, 323 B.R. 180, 188 (N.D. Tex. 2005) (ruling that bankruptcy court erred in permitting a party to use Rule 2004 to "supersede[] the discovery limitations of the arbitration clauses" without considering whether the relevant issues were subject to arbitration); *cf. In re Bd.*

6

*of Directors of Hopewell Int'l Ins.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) ("Where there is such a separate proceeding pending, parties are remitted to the disclosure procedures that exist in those proceedings. Although the cited cases involved adversary proceedings and contested matters, their reasoning is applicable to a case where the separate proceeding is an arbitration pending in a foreign country."). Thus, QuarterNorth has not identified a manifest error of fact or law by the Court in quashing Rule 2004 Requests relating to documents and information that are the subject of the arbitration, and the Motion for Reconsideration must be denied.

C. **QuarterNorth is Not Entitled to Rule 2004 Discovery on Claims Waived by the PSA**

13. QuarterNorth is not entitled to take Rule 2004 discovery on claims that the PSA prohibits on its face. In the Motion for Reconsideration, QuarterNorth argues first that Rule 2004 discovery is generally allowable where the discovery is directed at determining whether claims exist. *See* Motion for Reconsideration, ¶¶ 9–10. Second, QuarterNorth contends that the waiver provisions in the PSA do not prohibit QuarterNorth from pursuing a fraudulent inducement claim or from seeking consequential or direct damages. *See id.* ¶¶ 12–13. These arguments miss the mark.

14. First, BP objected to the Rule 2004 Requests, thereby shifting the burden to QuarterNorth to show "good cause" for the Requests. Rule 2004 uses the word "may" and "thereby affords courts discretion to limit (or preclude) examinations as justice requires." *In re Kleynerman*, 617 B.R. 122, 128 (Bankr. E.D. Wis. 2020); *accord Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197 (Bankr. S.D. Ohio 1992) (for purposes of Rule 2004, "[m]ay connotes discretion."). Accordingly, courts consider such requests on a case-by-case basis, balancing the examiner's interests against the respondent's interests. *Id.* Inquiries, like the discovery requests at issue here, that seek "far-reaching information will require a higher showing

7

of good cause because they are inherently more intrusive and present a greater potential for abuse." *Id.*; *see also In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (Bankr. E.D.N.Y. 1999) (denying application for order under Rule 2004 because it "did not pass the 'smell test'" and was an attempt to "harass and abuse"). Given the timing, the scope, and the circumstances, QuarterNorth failed to establish the requisite "good cause" to conduct this far-reaching post-Effective date pre-suit discovery on alleged claims now belonging to QuarterNorth that are either within the scope of the arbitration or barred by the terms of the PSA.

15. Second, there are limits to the scope and extent of discovery under Rule 2004, one of which prevents the proponent of a Rule 2004 request from seeking discovery on claims or causes of action that plainly do not exist or with respect to information that "is not relevant to any conceivably legitimate issue[.]" *In re Continental Forge Co.*, 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987); *see also Duratech*, 241 B.R. at 289. Seeking Rule 2004 discovery with respect to potential claims that are, by the plain terms of the contract under which such claims allegedly arise, unavailable to QuarterNorth, does not serve any legitimate Rule 2004 purpose and does not pass the smell test. *See Duratech*, 241 B.R. at 289. As such, the Court properly exercised its discretion in quashing the Rule 2004 Requests, and no manifest error of fact or law has been demonstrated by QuarterNorth.

16. Contrary to QuarterNorth's assertions, the waiver provisions in the PSA plainly waive fraudulent inducement claims and prevent QuarterNorth from seeking to recover consequential damages. It is well-established in Texas that parties may agree to waive fraudulent inducement claims through a clear and unequivocal expression of "intent to disclaim reliance on the specific misrepresentations at issue . . . ." *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019), *reh'g denied* (May 31, 2019). Waiver is determined based on a five-

factor test, *see id.* at 229, and QuarterNorth does not appear to contest seriously that the only factor at issue here is the fifth factor, *viz.*, whether "the release language was clear." *Id.*; *see* Motion for Reconsideration, ¶ 13 & n.11. Whether contractual language is clear is a question of law, not of fact as QuarterNorth asserts, and in any case the disclaimer language in Article 6.1(a)–(b) of the PSA is quite broad and clearly manifests an intention to waive any fraudulent inducement claim under the PSA.[6] QuarterNorth's observation that it is permissible to carve out particular representations from a disclaimer's effect is unavailing, *see* Motion for Reconsideration, ¶ 13, because QuarterNorth makes no attempt to explain how its fraudulent inducement claims are tied to the purported carve-outs.

17. Finally, QuarterNorth argues that although the PSA waives consequential damages, QuarterNorth may still recover direct damages, if any. *See* Motion for Reconsideration, ¶ 12. This argument does nothing to salvage those requests that seek information regarding alleged consequential damages. As to direct damages, given that QuarterNorth's predecessor – Fieldwood – rejected the PSA and failed to pay the $30 million purchase price under the PSA, there do not appear to be any direct damages. QuarterNorth's effort to pursue pre-suit discovery relating to alleged "direct damages" it suffered with respect to a well that Fieldwood only paid a fraction of the purchase price for should not be countenanced by this Court. At a minimum, should QuarterNorth seek to allege these causes of action, BP should have the opportunity to request dismissal of QuarterNorth's meritless claims prior to conducting discovery.

18. Moreover, QuarterNorth cites *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98 (Tex. 2014) for the proposition that "the consequential damages

---

[6] Because the PSA is under seal, BP is refraining from reproducing the relevant PSA language here, but instead directs the Court to the PSA that was previously filed under seal at Docket No. 1607-27.

provision would be unenforceable to the extent it purports to waive all potential damages suffered." *See* Motion for Reconsideration, ¶ 12. BP is not making such an argument. BP is merely arguing that QuarterNorth should not be permitted to take discovery regarding consequential damages that its predecessor waived in the PSA. The fact that QuarterNorth does not have direct damages as a result of Fieldwood not paying the $30 million purchase price does not transform the consequential damages waiver into a "waiver of all potential damages" that violates public policy.

19. Accordingly, QuarterNorth failed to establish that the Rule 2004 discovery it seeks is relevant to any conceivable issues or claims it could raise under the PSA, in light of the clear and express waiver provisions in the PSA respecting fraudulent inducement claims and consequential damages. *Cf. Continental Forge*, 73 B.R. at 1007. Ultimately, however, it is not necessary for the Court to reach a final determination that QuarterNorth's potential claims are meritless—instead the Court may simply weigh their dubious legitimacy in considering whether the discovery sought passes the smell test. *See Duratech*, 241 B.R. at 289.

**D.    Claims Arising Under the PSA Have Been Transferred to QuarterNorth and Are Not Property of the Estate Subject to Rule 2004 Discovery**

20. QuarterNorth admits and acknowledges in the Motion for Reconsideration that, as of the Effective Date of the Plan (August 27, 2021), the Debtors sold to QuarterNorth all of their right, title and interest in (a) the MC-519 #3 well, and (b) any claims or causes of action related to the MC-519 #3 well. Thus, even assuming 3 of the 17 requests in the Rule 2004 Request relate to the newly disclosed fraudulent inducement claim against BP under the PSA, such a claim no longer belongs to the Debtors, is not property of the post-Effective Date liquidating estates, and has nothing to do with the liquidating estates that continue to be administered in bankruptcy. As such, any such claim cannot serve as the predicate for one non-debtor (QuarterNorth) to pursue pre-suit Rule 2004 discovery against another non-debtor (BP).

21. The scope of discovery pursuant to Rule 2004 is significantly limited following the confirmation of a plan and does not extend to discovery in furtherance of claims that are no longer property of the estates following confirmation. *See, e.g.*, *In re Express One Int'l*, 217 B.R. 215, 216–17 (Bankr. E.D. Tex. 1998) (allowing limited post-confirmation Rule 2004 discovery only to the extent necessary to investigate whether the debtor was setting aside money to pay an administrative claim if the claimant prevailed on its claim); *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377–79 (Bankr. E.D. Pa. 1988) (allowing limited post-confirmation Rule 2004 discovery against debtors and principals thereof to discovery designed to determine whether the debtors would or could comply with the terms of the confirmed plan). In particular, such discovery will be limited to the continued administration of the case post-confirmation and any other matters over which the Court has retained jurisdiction. *See Express One*, 217 B.R. at 216–17; *Cinderella*, 93 B.R. at 377–78; *see also In re Daisytek*, 323 B.R. at 185–88 (allowing limited post-confirmation Rule 2004 discovery related only to pursuit of liquidating trust claims by trustee of liquidating trust established by the confirmed plan).

22. Thus, Rule 2004 discovery is permitted following confirmation only in certain limited circumstances, none of which include the pursuit by a reorganized debtor of claims that are no longer property of the estate. Post-confirmation Rule 2004 discovery is permissible where, for example, such discovery is necessary to ensure the proper implementation of the terms of a confirmed plan, *see Friedman's Inc. v. Cohen*, Case No. 406-CV-024, 2006 U.S. Dist. LEXIS 114760, at *16–17 (S.D. Ga. June 21, 2006), or to ensure compliance with the terms of a confirmed plan or related agreements or instruments. *See Express One*, 217 B.R. at 216–17; *Cinderella*, 93 B.R. at 377–79. Similarly, courts also permit limited post-confirmation Rule 2004 discovery where the trustee of a liquidating trust, or another similar vehicle established by the confirmed

plan, with respect to the pursuit of causes of action transferred to such a trust via the plan. *See Daisytek*, 323 B.R. at 185–86.

23.     By contrast, QuarterNorth is seeking to take Rule 2004 discovery with respect to claims that, as of the Effective Date, are no longer property of the estate, but rather belong to QuarterNorth. Unlike claims held by the trustee of a liquidating trust following confirmation, claims that have been assigned to and are now owned by QuarterNorth post-confirmation are not within the more limited scope of Rule 2004 discovery following confirmation, because such claims are no longer property of the estates or otherwise subject to this Court's post-confirmation jurisdiction. *Cf., e.g., Daisytek*, 323 B.R. at 185–86. For the same reasons, Rule 2004 discovery in furtherance of a pre-suit investigation on such claims by QuarterNorth in no way relates to continued administration of these chapter 11 cases following confirmation of the Plan. *Cf., e.g., Express One*, 217 B.R. at 216–17.

## Conclusion

24.     For these reasons, QuarterNorth has failed to demonstrate manifest error of fact or law by the Court in quashing the Rule 2004 Requests, and BP requests that the Court deny the Motion for Reconsideration filed by QuarterNorth.

*[Signature page follows.]*

| | |
|---|---|
| Dated: September 3, 2021 | Respectfully submitted,<br>**GREENBERG TRAURIG, LLP**<br><br>By: */s/ Karl D. Burrer*<br>Shari L. Heyen<br>Texas State Bar Number 09564750<br>HeyenS@gtlaw.com<br>Karl D. Burrer<br>Texas State Bar Number 24043584<br>BurrerK@gtlaw.com<br>Nicole S. Bakare<br>Texas State Bar Number 24056017<br>BakareN@gtlaw.com<br>1000 Louisiana Street, Suite 1700<br>Houston, Texas 77002<br>Telephone: (713) 374-3500<br>Facsimile: (713) 374-3505<br><br>– and –<br><br>Craig A. Duewall (admitted *pro hac vice*)<br>Texas State Bar Number 24025334<br>DuewallC@gtlaw.com<br>300 West 6th Street, Suite 2050<br>Austin, Texas 78701<br>Telephone: (512) 320-7200<br>Facsimile: (512) 320-7210<br><br>– and –<br><br>**GREENBERG TRAURIG, P.A.**<br><br>John B. Hutton (admitted *pro hac vice*)<br>HuttonJ@gtlaw.com<br>333 SE 2nd Avenue, Suite 4400<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br><br>***Counsel for BP Exploration & Production Inc.*** |

13

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing pleading has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on September 3, 2021.

                                                */s/ Karl D. Burrer*
                                                Karl D. Burrer