IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: <br><br> **FIELDWOOD ENERGY LLC**, *et al.*, <br><br> Debtors.[1] | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 20-33948 (MI) <br><br> (Chapter No. 11) <br><br> (Jointly Administered) |

**SHELL OFFSHORE, INC.'S OBJECTION TO QUARTERNORTH ENERGY LLC'S
EMERGENCY MOTION FOR RECONSIDERATION OF THE
COURT'S DEFERRAL OF RULING ON
MOTIONS TO QUASH RULE 2004 DISCOVERY
[RELATES TO DKT. NO. 2019]**

_____

Shell Offshore Inc. ("Shell") a creditor and party-in-interest in the above-captioned, jointly administered bankruptcy cases (the "Bankruptcy Cases"), hereby files this objection (the "Objection") to the *QuarterNorth Energy LLC's Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* (the "Motion for Reconsideration") [Dkt. No. 2019].[2] In support of this Objection, Shell respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms not otherwise defined herein shall maintain the definitions ascribed to them in Shell's Motion to Quash (as hereinafter defined).

**PRELIMINARY STATEMENT**

The Motion for Reconsideration should be denied because it fails to raise any new legal theories or facts to support QuarterNorth Energy LLC's ("QuarterNorth") request that the Court reconsider its decision to decline ruling on the Motions to Quash (as hereinafter defined).[3] Rather than address the appropriate standards for reconsideration (which QuarterNorth is unable to satisfy), the Motion for Reconsideration is littered with, among other things, baseless allegations related to "potential claims" against Shell that are unsupported by the facts.

The only new development before the Court (relative to what has been previously argued and briefed) is the fact that the Plan has now gone effective as of August 27, 2021[4] and QuarterNorth (who is not appearing as a successor to any Debtor or as a Post-Effective Date Debtor but is appearing as the assignee of the MC-519 #3 well and the Scheduled Claims) has supplanted the Debtors as the proponent of the Rule 2004 discovery, further undermining any credible basis for employing Rule 2004 under the circumstances.

Indeed, in lieu of introducing new law or facts that did not previously exist prior to the Court's ruling on the Stay Motion, the Motion for Reconsideration simply re-packages the same issues and dispute that the parties have wrestled with for months. Contrary to QuarterNorth's representation that in declining to rule on the Motions to Quash the Court was "mistaken," it is undisputed that courts have broad discretion to control discovery and this Court, after careful review of the arguments of the parties and the extensive record before it, correctly exercised its

---

[3] Shell agrees with BP that the Court, when pressed by Debtors' counsel following its initial ruling, quashed the 2004 discovery. *See* August 24, 2021 Hr'g Tr. 11:8-9 ("I did think about it, but because of that, I'm going to go ahead and deny them now.")

[4] *See Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Occurrence of Effective Date* [Dkt. No. 2016].

discretion in declining to rule on the Motions to Quash because the Court's ruling on the Stay Motion rendered them moot. The Motion for Reconsideration should be denied.

## OBJECTIONS AND ARGUMENT

**A.     QuarterNorth Has Not Satisfied the Applicable Reconsideration Standards**

1.     The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "[A] motion for reconsideration is **not** the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before." *Anderson v. Martco L.L.C.*, 852 F. App'x 858, 859 (5th Cir. 2021) (internal quotations omitted) (emphasis added).[5] A motion for reconsideration is an extraordinary remedy and should be used sparingly in the interest of finality and conservation of judicial resources." *Adams v. United Ass'n of Journeymen & Apprentices*, 495 F. Supp. 3d 392, 396 (M.D. La. 2020).

2.     QuarterNorth has failed to satisfy any of the foregoing reconsideration elements. Specifically, it has not highlighted any manifest error of law (because none exists) nor has it even attempted to present the Court with any newly discovered evidence. Rather, it has unconvincingly attempted to re-frame the same arguments and legal theories that the Court previously considered in connection with the various pleadings and evidence related to the *Motion of BP Exploration & Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief From the Automatic Stay to Arbitration Against the Debtors* (the "Stay Motion") [Dkt. No. 1414], *Shell's Motion to Quash Debtors' Notice of Bankruptcy Rule 2004 Request for Production of Documents*

---

[5] Reconsideration motions are generally analyzed under the standards for a motion to alter or amend judgment. *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). A motion to alter or amend a judgment calls into question the correctness of the judgment and is permitted only in narrow circumstances, primarily "to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

*from Shell Offshore Inc.* ("Shell's Motion to Quash") [Dkt. No. 1412] and the *Motion of BP Exploration & Production Inc. to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* ("BP'S Motion to Quash," together with Shell's Motion to Quash, the "Motions to Quash") [Dkt. No. 1415] in advance of its August 24, 2021 ruling on the Stay Motion.

3.  There is nothing new about the "potential claims" that QuareterNorth has articulated against Shell and BP – fraudulent inducement, fraudulent non-disclosure, breach of the PSA, conspiracy to commit fraud, and tortious interference with the PSA. *See Motion for Reconsideration*, ¶2. These are the same potential (unsubstantiated) claims that existed prior to the Court's ruling on the Stay Motion. Similarly there is nothing new about the Debtors (and now QuarterNorth) attempting to characterize the Rule 2004 discovery as applying to claims under the PSA rather than claims associated with operatorship. Simply rehashing the same arguments that the Court has presided over for months falls considerably short of warranting the extraordinary remedy of reconsideration. *See, e.g.*, *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 129–30 (5th Cir. 2019) (affirming the denial of a motion to reconsider where, *inter alia*, the legal theories presented originally and on reconsideration were essentially the same, such that there was no manifest error). Because QuarterNorth cannot satisfy its burden under Rule 59(e), the Motion for Reconsideration should be denied.

**B.    The Court Properly Exercised its Broad Discretion to Control Discovery in Declining to Rule on the Motions to Quash Because the Ruling on the Stay Motion Rendered the 2004 Discovery Moot**

4.  Federal Rule of Civil Procedure 26(c) affords the Court broad discretion to control discovery, including suspending it altogether. *See also Corwin v. Marney, Orton Inv.*, 843 F. 2d 194, 200 (5th Cir. 1988). Furthermore, a bankruptcy court is vested with discretion over the granting or denial of requests made pursuant to Rule 2004. *In re Board of Directors of Hopewell*

*Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001). In concluding that the Motions to Quash were "moot"[6] following the Court's ruling on the Stay Motion, the Court properly exercised its discretion and QuarterNorth has not presented any new legal theory or fact (that did not exist prior to the Court's ruling on the Stay Motion) in its Motion for Reconsideration to suggest the contrary.

5. QuarterNorth argues that the "[r]equests to Shell are largely identical and likewise are focused on BP's pre-PSA intent and Shell's role in the underlying wrongful conduct. The Court's decision to defer ruling on the Requests to Shell is particularly problematic and mistaken as Shell is not a part to any relevant arbitration agreement." *See Motion for Reconsideration*, ¶8. The fact that Shell is not a party to "any relevant arbitration agreement" does not justify QuarterNorth's efforts to employ Rule 2004 improvidently. Shell maintains that the discovery requests at issue must still be quashed because they are unduly burdensome, harassing, irrelevant and untimely and seek documents that Shell has a limited obligation to produce and/or make available to QuarterNorth under the parties' commercial agreements.

6. As the Court and any objective party can observe, QuarterNorth has propounded 2004 discovery on Shell in large part to circumvent any roadblocks that QuarterNorth may encounter obtaining discovery from BP (in light of the applicable arbitration provisions that govern and restrict discovery). Indeed, thirteen of the requests for production propounded on Shell are nearly identical to the corresponding discovery requests propounded on BP.

7. Put another way, if QuarterNorth fails to obtain its requested discovery from BP, it is attempting to backdoor its way into the same discovery by serving nearly identical requests on Shell. QuarterNorth's arguments that it *may have* viable claims against Shell based on alleged wrongful conduct is subterfuge for their primary intent – to conduct broad discovey that it is

---

[6] *See* August 24, 2021 Hr'g Tr. 12:1.

otherwise not entitled to outside of the parameters of Rule 2004 that it hopes to somehow leverage against BP – the same party that the Debtors and now QuarterNorth have been litigating against for months.[7]

8.  Whereas before the Debtors attempted to justify their overly broad investigation by arguing that "good cause supports the Rule 2004 Requests because the Requests seek information relating to potential claims that the Debtors have against Shell, BP and other third parties which may yield proceeds that will significantly benefit the Debtors, their estates and creditors,"[8] this proposition no longer rings true given that QuarterNorth is the assignee of the MC-519 #3 well and the Scheduled Claims and, as of the Effective Date, any proceeds from potential claims will inure to the benefit of QuarterNorth (as opposed to the bankruptcy estate). As such, QuarterNorth should not be permitted to conduct Rule 2004 discovery against Shell when such discovery is unnecessary to the continued administration of the bankruptcy cases or implementation of the Plan.

9.  For a myriad of reasons, Rule 2004 discovery is significantly limited following the confirmation of a plan. *See, e.g.*, *In re Express One Int'l*, 217 B.R. 215, 216–17 (Bankr. E.D. Tex. 1998) (allowing limited post-confirmation Rule 2004 discovery only to the extent necessary to investigate the debtor's ability to pay an administrative claim required to be paid under the confirmed plan).

10. The Court should not countenance QuarterNorth's conduct in attempting to circumvent the Federal Rules of Civil Procedure. To the extent that QuarterNorth seeks to employ Rule 2004 for some post-confirmation purpose or adversarial matter, the normal rules of discovery

---

[7] Indeed, the Debtors have telegraphed their intent to escalate their dispute with BP for months. For example, on May 6, 2021, counsel for the Debtors stated on the record that "as the Court knows we've had disputes with [BP][,] [a]nd unfortunately, I think we're going to have disputes with them in the future regarding the operations of the – the Galapagps area, which is where the Genovesa well is." *See* May 6, 2021 Hr'g Tr. 42:18-23.

[8] *See Debtors' Response to Shell's Motion to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* [Dkt. No. 1540], ¶23.

should apply. *See generally In re Carmelo Bambace, Inc*., 134 B.R. 125, 130 (Bankr. S.D.N.Y. 1991) (denying creditor's Rule 2004 motion post-confirmation); *see also In re Enron Corp*., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), courts "have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure." *In re Enron Corp*., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).

## **CONCLUSION**

WHEREFORE, Shell requests that the Court (a) sustain its Objection and deny approval of the Motion for Reconsideration, and (b) grant such other and further relief as the Court may deem just, proper, and equitable.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 3, 2021

Respectfully submitted,

*/s/ Ryan E. Manns*
Ryan E. Manns
State Bar No. 24041391
ryan.manns@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone:     (214) 855-8000
Facsimile:      (214) 855-8200

Counsel to Shell Offshore, Inc.

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in these cases on September 3, 2021.

*/s/ Ryan E. Manns*
Ryan E. Manns