IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered)<br>Re: ECF Nos. 1415, 2006, 2019 |

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR RECONSIDERATION OF THE COURT'S DEFERRAL OF RULING ON BP EXPLORATION & PRODUCTION, INC.'S MOTION TO QUASH RULE 2004 DISCOVERY**

QuarterNorth[2] submits this *Reply in Support of the Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* (the "**Reply to BP**") in response to the *Response of BP Exploration & Production, Inc. to Emergency Motion for Reconsideration of Court's Ruling Quashing Rule 2004 Discovery* (ECF No. 2035) ("**BP's Response**"), and in support states the matters set forth below.

## REPLY SUMMARY

1.  The Court should allow QuarterNorth to proceed with the reasonable and appropriate Rule 2004 discovery that it and the Debtors have sought for over four months—long before the Debtors' Plan was confirmed and became effective. None of BP's arguments in its

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* (ECF No. 2019) (the "**Motion**").  QuarterNorth is not appearing as a successor to any Debtor or as a Post-Effective Date Debtor but is appearing as the assignee of the MC-519 #3 well and the Scheduled Claims (as defined in the QuarterNorth PSA).

response warrant a different outcome. As set forth below, BP applies the incorrect standard to the Motion, misinterprets the applicable Rule 2004 standard, and incorrectly tries to run out the clock on the discovery sought in the Motion.

## ARGUMENT

### A. Rule 59(e) Does Not Apply, But Even if it Did, Manifest Error Occurred

2. BP's Response incorrectly assumes that Rule 59(e) applies to QuarterNorth's Motion and contends that this standard has not been met. BP is wrong on both points.

3. First, Rule 59(e) does not apply to the Motion and BP's reliance on Rule 59(e) is misplaced. A Rule 59(e) motion can only be filed *after* entry of a final judgment. *Mendez v. Radec Corp.*, 411 F. Supp. 2d 347, 349 (W.D.N.Y. 2006) ("A motion to alter or amend pursuant to Rule 59 may not be filed prior to the entry of final judgment . . . ."); *see* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). At the August 24, 2021 hearing, the Court expressly declined to rule on BP and Shell's motions to quash. Hr'g Tr. 10:2 (ECF No. 2006).[3] Declining to rule is not the same as issuing a final order. The Court issued no oral order at the hearing, it did not invite BP or Shell to offer proposed orders for it to sign, the clerk did not make any entry granting the Motions to Quash on the docket, and the order the Court issued immediately after the hearing made no mention of the Motions to Quash. *See* ECF No. 2003. There is no final judgment for QuarterNorth to ask to be altered or amended under Rule 59(e), so Rule 59(e) is inapplicable. Instead, after the Court

---

[3] While BP contends that the Court did in fact rule on BP's and Shell motions to quash (BP's Resp. ¶ 2, n.4), Shell seemingly acknowledges that the Court deferred ruling on the Motions to Quash. *Shell Offshore, Inc.'s Objection to QuarterNorth Energy LLC's Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* (ECF No. 2041) ("**Shell's Response**") B, at 4 ("The Court Properly Exercised its Broad Discretion . . . in Declining to Rule on the Motions to Quash . . . ."); *but see* Shell's Resp. at 2, n.3 ("Shell agrees with BP that the Court . . . quashed the 2004 discovery.").

2

declined to rule on the motions to quash and at the Court's invitation, QuarterNorth filed the Motion asking the Court to reconsider its refusal to rule. Aug. 24, 2021 Hr'g Tr. 10:24–25, 11:6–7, 11:12–13.

4.  Second, even if Rule 59(e) did apply to the Motion, the Court committed manifest error when it refused to allow the Rule 2004 discovery on the mistaken belief that the discovery sought could be obtained in arbitration.[4] Hr'g Tr. 10:3 ("They'll be up to the arbitration process."); *see All W. Pet Supply Co. v. Hill's Pet Prod. Div., Colgate-Palmolive Co.*, 847 F. Supp. 858, 860 (D. Kan. 1994) ("Appropriate grounds for a motion to reconsider include the obvious misapprehension by the court of a party's position, the facts, or the law[.]"); *see also*, *Norman v. Arkansas Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (reversing because of manifest error when the court dismissed a case for lack of prosecution because it did not notice the plaintiff's timely filing); *Foutty v. Equifax Servs., Inc., a Div. of Equifax, Inc.*, 764 F. Supp. 621, 622 (D. Kan. 1991) (reversing because the court relied on the absence of a key fact, when after ruling, the parties demonstrated the presence of the key fact).

  a.  **The PSA-Related Discovery QuarterNorth Seeks is not Subject to Arbitration**

5.  Despite BP's repeated attempts to confuse and conflate the issues, the fact remains that the Rule 2004 Requests concern potential claims arising from and related to the

---

[4] QuarterNorth has tried to correct the record misstated from the start in BP's Motion to Quash, but has not been given the opportunity. At the July 9 hearing, the Debtors tried to explain to the Court that "As it relates to the 2004 motions, these are different issues on different time lines." July 9, 2021 Hr'g Tr. 55:25–56:1. Instead of hearing the Debtors then, the Court ordered the parties to meet and confer and said "No, I'm not going to change that ruling," while reassuring the Debtors "I'm perfectly empowered to allow discovery to occur by the Debtor's successor if I caused the delay." *Id.* at 56:21–25; *see* Agreed Preliminary Order ¶¶ 1, 4 (ECF No. 1907). Rather than move the Court to reconsider then, the Debtors complied with the Court's order and met with BP. ECF No. 1946. Once it was clear the negotiations would not resolve the parties' differences, the parties again sought the Court's resolution on the pending motions. *Id.* Even at the August 24 Hearing, the Debtors once more sought the opportunity to correct the record and receive a ruling on relief to which they are confident they are entitled. *See* Hr'g Tr. 10:13–19 (Debtors pointing out the Requests relate to the PSA at their earliest opportunity, but after the Court ruled). Instead of permitting the Debtors to correct the record then, the Court repeatedly invited them to move the Court to reconsider the issue disassociated from the termination issue.

PSA—an agreement that everyone agrees has no arbitration clause.  To be clear, the PSA was ***not*** one of the agreements at issue during the February 2021 hearing before this Court.  And the PSA-related claims under investigation are ***not*** subject to arbitration and would have to be brought in state or federal court.

6. The February 2021 hearing concerned BP's bad faith efforts in connection with remediating a leak on the LSPS from mid-2020 through the hearing in early 2021.  That event and time period were only one piece of the much larger pattern of BP's bad faith misconduct stretching back to 2019 and earlier that QuarterNorth is investigating.  Fifteen out of the seventeen Requests to BP concern topics other than the LSPS remediation and termination of BP as operator of the LSPS and all go toward establishing QuarterNorth's possible fraud and breach claims under the PSA.  *See* Requests to BP Nos. 1 (Genovesa generally); 2, 4 (conduct at Na Kika); 3 (negotiation history of the PSA); 5, 16 (force majeure in early 2020); 6, 8 (Manuel, Calliope); 9–11 (concerning ownership percentages of nearby wells); 13, 14 (concerning a turn-around project originally scheduled in 2019); 15, 17 (capacity at Na Kika).  In fact, only two Requests to BP—numbers 7 and 12—overlap with the LSPS remediation issue the Court considered in February, and even those are directly relevant to QuarterNorth's ability to establish BP's pattern of post-PSA fraudulent conduct.

7. Moreover, as QuarterNorth made clear in the Motion, its theory of fraud is based on both pre-PSA conduct and BP's continuous pattern of bad faith post-PSA conduct, a theory recognized by the Supreme Court of Texas in *Spoljaric*.  Mot. ¶ 7.  Tellingly, BP ignores *Spoljaric* and QuarterNorth's explicit reliance on it, and instead incorrectly claims QuarterNorth

4

has "effectively conced[ed]" all but three "of the request do not" relate to fraud.[5] *Compare* BP's Resp. ¶ 11; *with* Mot. ¶ 7 ("The rest of the Rule 2004 Requests are likewise aimed at determining BP's knowledge and intent at the moment of signing the PSA, which can be inferred not only from a party's prior acts but also from a party's subsequent acts. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made.').").[6] QuarterNorth is entitled to the PSA-related discovery it seeks under Rule 2004, and the Court should reject BP's mistaken arguments to the contrary.

> **b. QuarterNorth is *Not* Seeking to Use Rule 2004 to Get Discovery That Would Otherwise be Unavailable for Use in Arbitration Involving the LSPS OA and PHA**

8.  Unlike the PSA, which has no arbitration clause, the LSPS OA and PHA—two entirely separate and distinct agreements from the PSA—both contain arbitration clauses. The LSPS OA and PHA were the two agreements at issue during the February 2021 hearing before this Court. Following the Court's ruling on August 24, 2021, BP and QuarterNorth have since commenced arbitration related to the LSPS OA and PHA, and QuarterNorth will obtain whatever discovery it is entitled to in that proceeding under the applicable arbitration procedures. Shell is not a party to the arbitration or the LSPS OA or PHA.

9.  Importantly, QuarterNorth is ***not*** trying to use Rule 2004 to get discovery that would otherwise be unavailable to use in arbitration involving the LSPS OA and PHA. Rather,

---

[5] In the brief Motion, QuarterNorth highlighted a few exemplary requests that could not possibly have any relevance to the termination dispute, as unavoidable evidence that at least part of the requests must concern something other than termination, namely disputes under the PSA. Mot. ¶ 7 (referencing Requests to BP Nos. 3, 13, 14).

[6] BP also failed to address QuarterNorth's possible fraudulent non-disclosure and breach claims, not mentioning them once in its response, thereby implicitly conceding it has no basis to prevent discovery on them. *See generally* BP's Resp.

5

QuarterNorth seeks Rule 2004 discovery to investigate non-arbitrable PSA-related claims against BP and Shell, a process that is expressly authorized and recognized by the very case BP heavily relies on its opposition papers.  *See, e.g., In re Daisytek, Inc.*, 323 B.R. 180, 188 (N.D. Tex. 2005) ("The bankruptcy court may authorize the Trustee to conduct a Rule 2004 examination of Ernst & Young that pertains to a proceeding that is not subject to arbitration.").

10. BP essentially argues that because there could potentially be overlap between some of the discovery related to PSA-related claims and claims that are subject to the arbitration provision in the LSPS OA and PHA, QuarterNorth is not entitled to such discovery under Rule 2004 and the scope of QuarterNorth's discovery should be limited by the arbitration provision.  Once again, *In re Daisytek*—the case in which BP heavily relies—expressly undermines this argument.  In *In re Daisytek, Inc.*, the court held that "[i]f the examination is permissible under Rule 2004 but overlaps with discovery that would be constricted by an arbitration clause, the bankruptcy court retains the discretion to decide what limits, if any, should be placed on such dual-purpose discovery." 323 B.R. 188 n. 9.  Indeed, to the extent this Court is concerned with QuarterNorth using the Rule 2004 process to circumvent any discovery limitations in the arbitration agreements as BP suggests (BP's Resp. ¶¶ 9–12), the Court could limit the use of the materials discovered through the Rule 2004 process to claims alleged outside the arbitration.

B. **BP Continues to Fundamentally Misinterpret the Rule 2004 Standard**

11. BP's Response misses the mark by continuing to criticize various legal theories under which QuarterNorth might bring certain potential claims or seek damages related to the PSA.  The problem with BP's focus on these PSA legal theories is twofold: (1) QuarterNorth has valid legal arguments to rebut each of BP's criticisms; and (2) QuarterNorth is not required to show it can win on summary judgment before it can obtain discovery under Rule 2004.

12. First, BP argues that QuarterNorth is not entitled to Rule 2004 discovery on claims allegedly waived by the PSA. However, QuarterNorth has valid legal arguments to rebut BP's contentions regarding waiver. BP concedes that the parties did *not* disclaim reliance on the representations made *within* the PSA, BP's Resp. ¶ 16, but then ignored the fraudulent representation BP made *in* the PSA that QuarterNorth identified: "BP **expressly represented in the PSA** that it had the power and authority to comply with its obligations under the PSA, PHA, and LSPA OA, and that the terms of the PSA, PHA, and LSPS OA constitute the terms of the agreements between the parties." Mot. ¶ 13 (paraphrasing PSA § 7.2, emphasis added). Similarly, BP argues QuarterNorth cannot have any damages because of the consequential damages waiver, but ignores that the Supreme Court of Texas finds waivers of contract liability "for harm caused intentionally or recklessly [are] unenforceable on grounds of public policy" and that it will *not* enforce waivers that "allow one party to intentionally injure another with impunity." *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 117–18 (Tex. 2014) (cited at Mot. ¶ 12). Even if BP were right (which it is not) and QuarterNorth could not get Rule 2004 discovery related to fraudulent inducement and consequential damages, BP does not dispute that QuarterNorth could get discovery related to direct damages for breach of the PSA.

13. Second, and importantly, contrary to the suggestion in BP's Response, Rule 2004 does not require this Court to conclude that QuarterNorth will win on summary judgment on the waiver issues before allowing QuarterNorth to obtain discovery. Quite the opposite, Rule 2004 is very broad—akin to a fishing expedition. *E.g.*, *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (The scope of Rule 2004 discovery is "virtually unlimited," practically a "fishing expedition."); *see* Resp. to BP ¶¶ 19–24 (explaining how expansive Rule 2004 discovery is). The

7

Court should therefore reject BP's PSA waiver arguments, which are based on a fundamental misinterpretation of the Rule 2004 standard and are not a proper basis to deny Rule 2004 discovery.

### C. BP Cannot Run Out the Clock on Legitimate Pre-Confirmation Discovery

14. BP further contends that QuarterNorth can no longer pursue the Rule 2004 discovery because claims arising under the PSA have been transferred to QuarterNorth and thus are no longer property of the Debtors' estate. The Court should reject this argument once again as it did when BP first raised it in its initial reply filed on the eve of the July 9 hearing.

15. Long before the claims were transferred and even before the Debtors' confirmation hearing, the Debtors sent legitimate Rule 2004 Requests to BP. At the July 9 hearing, held after Plan confirmation but before the Plan went effective, the Debtors expressed their concern that BP was engaged in delay tactics with respect to the Rule 2004 discovery. Notably, the Court reassured the Debtors: "let's not get too worried about who's going to be in possession and control of the right to get information . . . . I'm not going to let the clock run out." Hr'g Tr. 57:15 (ECF No. 1884). Yet now, BP argues the clock ran out so QuarterNorth has no right to the information, and must start all over with discovery requests in civil court (that they will assuredly seek to further delay with similar, meritless motions to quash). BP's Resp. ¶¶ 20–23; *see* Shell's Resp. ¶¶ 8–10. There is no place for such gamesmanship.

16. Further, BP provides no support permitting it to run out the clock on legitimate pre-confirmation requests.[7] *Express One,* 217 B.R. at 216–18, and *Cinderella Clothing*, 93 B.R. at 374, 379, both concern discovery requested *after* confirmation, and which was *granted*.

---

[7] *See* BP's Resp. ¶¶ 20–23 citing the following cases: *In re Express One Int'l*, 217 B.R. 215 (Bankr. E.D. Tex. 1998); *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373 (Bankr. E.D. Pa. 1988); *Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180 (N.D. Tex. 2005); *Friedman's Inc. v. Cohen*, Case No. 406-CV-024, 2006 U.S. Dist. LEXIS 114760 (S.D. Ga. June 21, 2006).

In *Friedman's*, the debtors issued a subpoena pursuant to Rule 2004 only six days before confirmation, and it was *granted*. 2006 U.S. Dist. LEXIS 114760, at *14–15, 17. In *Daisytek*, the court explicitly permitted *post*-confirmation Rule 2004 discovery "that pertains to a proceeding that is not subject to arbitration." 323 B.R. at 188. None of BP's cases support denying the Rule 2004 Requests made long before confirmation.

## **CONCLUSION**

WHEREFORE, QuarterNorth respectfully requests that the Court reconsider its decision not to rule on the Motions to Quash at the August 24 Hearing, deny the Motions to Quash in their entirety, and grant QuarterNorth such other and further relief, at law or in equity, to which it is entitled.

Dated: September 8, 2021
       Houston, Texas

       /s/ *Paul R. Genender*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:   Alfredo.Perez@weil.com
           Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   Matt.Barr@weil.com
           Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
           Erin.Choi@weil.com

*Attorneys for QuarterNorth Energy LLC*

**Certificate of Service**

I hereby certify that, on September 8, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                        */s/ Paul R. Genender*
                                        Paul R. Genender