IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) Re: ECF Nos. 1412, 2006, 2019 |

**REPLY IN SUPPORT OF THE EMERGENCY MOTION FOR RECONSIDERATION OF THE COURT'S DEFERRAL OF RULING ON SHELL OFFSHORE, INC.'S MOTION TO QUASH RULE 2004 DISCOVERY**

QuarterNorth[2] submits this *Reply in Support of the Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Shell Offshore, Inc.'s Motion to Quash Rule 2004 Discovery* (the "**Reply to Shell**") in response to the *Shell Offshore, Inc.'s Objection to QuarterNorth Energy LLC's Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* (ECF No. 2041) ("**Shell's Response**"), and in support states the matters set forth below.

**REPLY SUMMARY**

1. The Court should allow QuarterNorth to proceed with the reasonable and appropriate Rule 2004 discovery that it and the Debtors have sought from Shell for nearly four

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* (ECF No. 2019) (the "**Motion**"). QuarterNorth is not appearing as a successor to any Debtor or as a Post-Effective Date Debtor but is appearing as the assignee of the MC-519 #3 well and the Scheduled Claims (as defined in the QuarterNorth PSA).

months—long before the Debtors' Plan was confirmed and became effective.  None of Shell's arguments in its response warrant a different outcome.  As set forth below, like BP, Shell applies the incorrect standard to the Motion, misinterprets both the Rule 2004 Requests and the applicable Rule 2004 standard, and incorrectly tries to run out the clock on the discovery sought in the Motion.

2. Perhaps most telling is the fact that Shell concedes—as it must—that it "is not a party to 'any relevant arbitration agreement[.]'"  Shell Resp. ¶ 5.  Because the entire basis for the Court's decision not to rule was the mistaken belief that the discovery sought can be obtained in arbitration, and there is no question that potential claims against Shell are not subject to arbitration, it is clear that reconsideration is necessary.  And because the discovery QuarterNorth seeks from Shell is not for the purpose of "leverage against BP," but instead is for the purpose of investigating potential claims ***against Shell*** for tortious interference and conspiracy to commit fraud—claims which are (1) not even arguably subject to arbitration, and (2) separate from any PSA-related claims against BP—the Court should deny Shell's Motion to Quash and allow QuarterNorth to obtain the discovery to which it is entitled under Rule 2004.

## ARGUMENT

**A. Rule 59(e) Does Not Apply, But Even if it Did, Manifest Error Occurred**

3. Like BP, Shell incorrectly assumes in its response that Rule 59(e) applies to QuarterNorth's Motion and contends that this standard has not been met.  Shell is wrong on both points.

4. First, as explained in QuarterNorth's reply to BP filed at ECF No. 2051 ("**Reply to BP**"), Rule 59(e) does not apply to the Motion, and Shell's reliance on Rule 59(e) is misplaced.  A Rule 59(e) motion can only be filed *after* entry of a final judgment.  *Mendez v. Radec Corp.*, 411 F. Supp. 2d 347, 349 (W.D.N.Y. 2006) ("A motion to alter or amend pursuant to Rule 59 may not be filed prior to the entry of final judgment . . . ."); *see* Fed. R. Civ. P. 59(e) ("A motion

2

to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). At the August 24, 2021 hearing, the Court expressly declined to rule on Shell and BP's Motions to Quash. Hr'g Tr. 10:2 (ECF No. 2006). Declining to rule is not the same as issuing a final order. The Court issued no oral order at the hearing, it did not invite Shell or BP to offer proposed orders for it to sign, the clerk did not make any entry granting the Motions to Quash on the docket, and the order the Court issued immediately after the hearing made no mention of the Motions to Quash. *See* ECF No. 2003. There is no final judgment for QuarterNorth to ask to be altered or amended under Rule 59(e), so Rule 59(e) is inapplicable. Instead, after the Court declined to rule on the Motions to Quash and at the Court's invitation, QuarterNorth filed the Motion asking the Court to reconsider its refusal to rule. Aug. 24, 2021 Hr'g Tr. 10:24–25, 11:6–7, 11:12–13.

        5.      Second, even if Rule 59(e) did apply to the Motion, the Court committed manifest error when it refused to allow the Rule 2004 discovery on the mistaken belief that the discovery sought could be obtained in arbitration.[3] Hr'g Tr. 10:3 ("They'll be up to the arbitration process."); *see All W. Pet Supply Co. v. Hill's Pet Prod. Div., Colgate-Palmolive Co.*, 847 F. Supp. 858, 860 (D. Kan. 1994) ("Appropriate grounds for a motion to reconsider include the obvious misapprehension by the court of a party's position, the facts, or the law[.]"); *see also*, *Norman v. Arkansas Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (reversing because of manifest error

---

[3] QuarterNorth has tried to correct the record misstated from the start in BP's Motion to Quash, but has not been given the opportunity. At the July 9 hearing, the Debtors tried to explain to the Court that "As it relates to the 2004 motions, these are different issues on different time lines." July 9, 2021 Hr'g Tr. 55:25–56:1. Instead of hearing the Debtors then, the Court ordered the parties to meet and confer and said "No, I'm not going to change that ruling," while reassuring the Debtors "I'm perfectly empowered to allow discovery to occur by the Debtor's successor if I caused the delay." *Id.* at 56:21–25; *see* Agreed Preliminary Order ¶¶ 1, 4 (ECF No. 1907). Rather than move the Court to reconsider then, the Debtors complied with the Court's order and met with BP. ECF No. 1946. Once it was clear the negotiations would not resolve the parties' differences, the parties again sought the Court's resolution on the pending motions. *Id*. Even at the August 24 Hearing, the Debtors once more sought the opportunity to correct the record and receive a ruling on relief to which they are confident they are entitled. *See* Hr'g Tr. 10:13–19 (Debtors pointing out the Requests relate to the PSA at their earliest opportunity, but after the Court ruled). Instead of permitting the Debtors to correct the record then, the Court repeatedly invited them to move the Court to reconsider the issue disassociated from the termination issue.

3

when the court dismissed a case for lack of prosecution because it did not notice the plaintiff's timely filing); *Foutty v. Equifax Servs., Inc., a Div. of Equifax, Inc.*, 764 F. Supp. 621, 622 (D. Kan. 1991) (reversing because the court relied on the absence of a key fact, when after ruling, the parties demonstrated the presence of the key fact).

6. Shell is not party to any relevant arbitration agreement, as Shell concedes. *See* Shell's Resp. ¶ 5. Therefore, the discovery sought from Shell for purposes of investigating potential claims against Shell cannot be obtained through a separate unrelated arbitration against BP. For this reason, and for the reasons set forth in the Reply to BP (which are incorporated by reference), the Court manifestly erred in relying on arbitration as a rationale for declining to rule on Shell's Motion to Quash. Reply to BP ¶¶ 4–10. Shell's repeated focus on a lack of new evidence or argument as a basis for denying the Motion is also misplaced in light of the manifest error described above. *See* Shell's Resp. at 2, ¶¶ 2–4.

**B. Shell Misinterprets Both QuarterNorth's Rule 2004 Requests and Rule 2004**

7. Shell's Response also misses the mark because it misinterprets both QuarterNorth's Rule 2004 Requests and Rule 2004 itself.

8. First, with respect to QuarterNorth's Rule 2004 Requests, Shell spends much of its response arguing about how the discovery QuarterNorth seeks from Shell is really about BP. Shell's Resp. at 2, ¶¶ 5–7. Quite the opposite, the discovery that QuarterNorth seeks from Shell relates to potential claims ***against Shell*** for, among other things, tortious interference and conspiracy. *See* Resp. to Shell ¶¶ 3, 8, 11, 12, 15, 16, 18, 23, 24, 30, 31; Mot. ¶¶ 2, 6. As a result, Shell's focus on BP is simply incorrect.

9. Contrary to Shell's suggestions, QuarterNorth is ***not*** trying to "employ Rule 2004 improvidently" or "to conduct broad discovery that it is otherwise not entitled to outside of the parameters of Rule 2004 that it hopes to somehow leverage against BP." Shell Resp. ¶¶ 5–7.

4

And QuarterNorth has *not* "propounded 2004 discovery on Shell in large part to circumvent any roadblocks that QuarterNorth may encounter obtaining discovery from BP (in light of the applicable arbitration provisions that govern and restrict discovery)," as Shell incorrectly contends. Shell Resp. ¶¶ 5–7. The fact is there are no roadblocks to circumvent. The Debtors are not parties to any arbitration agreement with Shell. Therefore, there are no limitations on the scope of discovery QuarterNorth can seek from Shell in investigating its potential claims against Shell. *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (The scope of Rule 2004 discovery is "virtually unlimited," practically a "fishing expedition.").

10. Further, the fact that thirteen of the Requests to Shell are "nearly identical" to the corresponding discovery requests propounded on BP is of no moment. Shell Resp. ¶ 6. Shell incorrectly contends that the similar nature of the requests somehow shows that QuarterNorth's motives in seeking this discovery are improper. *Id.* The reality is that the requests are understandably similar due to the similarity of the issues QuarterNorth is investigating with respect to both BP and Shell—including, among other things, whether BP engaged in fraud in connection with entering into the PSA, and Shell's role as a co-conspirator in connection with the same. The fact that the Requests to Shell and BP are similar does not suggest improper motives; rather, it simply demonstrates that QuarterNorth is investigating similar issues with respect to both parties, something it is clearly entitled to do for claims like these that are unquestionably not subject to arbitration. Neither BP nor Shell has offered any legitimate argument to the contrary.

C. **Shell Cannot Run Out the Clock on Legitimate Pre-Confirmation Discovery**

11. Like BP, Shell also contends that QuarterNorth can no longer pursue the Rule 2004 discovery because claims arising under the PSA have been transferred to QuarterNorth and thus are no longer property of the Debtors' estate. For the reasons set forth in the Reply to BP, the Court should reject this argument. *See* Reply to BP ¶¶ 14–15.

12. None of the cases Shell cites warrant a different outcome.[4] *Express One* concerns discovery requested *after* confirmation, and *granted* such discovery. 217 B.R. at 216–18. The court in *Carmelo Bambace* denied the movants' discovery requests because they addressed "an academic point" mooted by the Court's resolution of other legal questions. 134 B.R. at 130. Finally, in *Enron*, the court denied a non-debtor's requests pursuing the debtors' advisors documents for a class action the non-debtor was bringing against the advisors, for which there was already a scheduling order governing discovery. 281 B.R. at 837–38, 842. Thus, as with BP's cases, none of Shell's cases support denying the Rule 2004 Requests made long before confirmation.

**D.      Shell's Remaining Arguments Are Unpersuasive**

13. Shell attempts a last shotgun approach to save its Motion to Quash, offering in place of argument a litany of unsupported buzzwords for quashing the Requests to Shell: "they are unduly burdensome, harassing, irrelevant and untimely and seek documents that Shell has a limited obligation to produce and/or make available to QuarterNorth under the parties' commercial agreements." Shell's Resp. ¶ 5. Each of these boilerplate reasons is misplaced.

14. With respect to Shell's contention that the Requests are unduly burdensome, the Requests to Shell are narrowly tailored. To the extent Shell has an issue with the scope of the Requests, the proper response would be to work with the requesting party to try to reach agreement on scope. Shell knows this and was doing so in good faith back in May, at least until it spoke to BP. In fact, after engaging in several initial meet and confer discussions with the Debtors regarding the scope of the discovery, the Debtors sent Shell proposed search terms on May 28, 2021, which

---

[4] *See* Shell's Resp. ¶¶ 8–10 citing the following cases: *In re Express One Int'l*, 217 B.R. 215 (Bankr. E.D. Tex. 1998); *In re Carmelo Bambace, Inc.*, 134 B.R. 125 (Bankr. S.D.N.Y. 1991); *In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002).

narrowed some of the requests based on the parties' constructive discussions. Thereafter, rather than continuing to engage in such productive meet and confer discussions, Shell spoke to BP, did an about face, and subsequently filed its Motion to Quash. Shell has yet to respond to the proposed search terms the Debtors sent in May. Thus, Shell cannot use a conclusory "undue burden" excuse as a basis to avoid its discovery obligations altogether, especially where, as here, QuarterNorth continues to remain open to having productive discussions with Shell about search terms.

15. Moreover, contrary to Shell's conclusory assertions, the Requests to Shell are not "harassing" or "irrelevant" at all. Instead, they seek a narrow scope of documents from Shell that are likely to be relevant to QuarterNorth to establish Shell's conspiratorial role in BP's fraud and Shell's own tortious interference. And the requests are proportional to the claims being investigated. And while Shell may not like that QuarterNorth is investigating potential claims against Shell for conspiracy and tortious interference, that is not a basis to deny Rule 2004 discovery with respect to non-arbitrable claims that QuarterNorth is entitled to pursue.

16. Finally, like its other arguments, Shell's vague claim that, "Shell has a limited obligation to produce and/or make available to QuarterNorth [requested documents] under the parties' commercial agreements" is misplaced. Shell's Resp. ¶ 5. Most notably, Shell offers no support for this contention.[5] QuarterNorth is not aware of any support for this either, as Shell and QuarterNorth share no relevant agreements that contractually limit Shell's discovery obligations. As such, this is not and cannot be a basis for Shell to avoid its discovery obligations

---

[5] In Shell's Motion to Quash ¶ 29, n.8 and ¶ 30, it offers the only justification anywhere in the briefing: it says it cannot produce documents unless "legally compelled to disclose any Confidential Data" and if so compelled, it must notify its co-parties. This is nothing more than a boilerplate confidentiality provision, and Shell claims it bars discovery. There is already a protective order in this case (ECF No. 989), and QuarterNorth will certainly abide by any appropriate confidentiality designations. *See* Resp. to Shell ¶ 25 (addressing Shell's confidentiality concern).

here. Instead, the limits of discovery against Shell are the applicable rules of procedure, which permit discovery of the documents QuarterNorth seeks.

## **CONCLUSION**

WHEREFORE, QuarterNorth respectfully requests that the Court reconsider its decision not to rule on Shell's Motion to Quash at the August 24 Hearing, deny Shell's Motion to Quash in its entirety, and grant QuarterNorth such other and further relief, at law or in equity, to which it is entitled.

**APPENDIX**

For the Court's convenience, below is a table of the key filings in this discovery dispute and their abbreviated names.

| ECF | Date (2021) | Abbreviated Name |
|---|---|---|
| 1387 | May 21 | Requests to BP |
| 1388 | May 21 | Requests to Shell |
| 1412 | May 28 | Shell's Motion to Quash |
| 1415 | May 28 | BP's Motion to Quash |
| 1539 | June 11 | Response to BP |
| 1540 | June 11 | Response to Shell |
| 1845 | July 9 | BP's Reply |
| 1884 | July 9 | July 9, 2021 Hearing Transcript |
| 1907 | July 20 | Agreed Order |
| 1946 | August 2 | Joint Notice |
| 1999 | August 23 | Agenda |
| 2000 | August 23 | BP's Supplemental Reply |
| 2003 | August 24 | Order |
| 2006 | August 24 | Aug. 24, 2021 Hearing Transcript |
| 2019 | August 30 | Motion to Reconsider |
| 2022 | August 31 | Order |
| 2035 | September 3 | BP's Response |
| 2041 | September 3 | Shell's Response |
| 2051 | September 8 | Reply to BP |
| ____ | September 9 | Reply to Shell |

Dated: September 9, 2021
      Houston, Texas

      */s/ Paul R. Genender*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:   Alfredo.Perez@weil.com
           Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   Matt.Barr@weil.com
           Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
           Erin.Choi@weil.com

*Attorneys for QuarterNorth Energy LLC*

**Certificate of Service**

I hereby certify that, on September 9, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                         */s/ Paul R. Genender*
                                         Paul R. Genender