# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| FIELDWOOD ENERGY LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

**COVERSHEET TO THE FOURTH AND FINAL FEE APPLICATION OF STROOCK &
STROOCK & LAVAN LLP, AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF FIELDWOOD ENERGY LLC, *ET AL*., FOR
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED DURING (I) THE INTERIM
PERIOD FROM MAY 1, 2021 THROUGH AND INCLUDING AUGUST 27, 2021, AND (II)
THE FINAL APPLICATION PERIOD OF AUGUST 19, 2020
<u>THROUGH AND INCLUDING AUGUST 27, 2021</u>**

| | |
|---|---|
| **Name of Applicant:** | Stroock & Stroock & Lavan LLP |
| **Applicant's Role in Case:** | Counsel to the Official Committee of Unsecured Creditors |
| **Docket No. of Employment Order(s):** | Docket No. 471 |
| **Interim Application  (Yes)  <u>Fourth</u>**<br>**Final Application      (Yes)** | Indicate whether this is an interim or final Application.  If interim, indicate the number (1st, 2nd, 3rd, etc.) |

| **Time period covered by this Application for which interim compensation has not previously been awarded:** | **Beginning Date** | **End Date** |
|---|---|---|
| | 05/01/21 | 08/27/21 |

| |
|---|
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case?  (Y) Y/N** |
| **Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? (Y) Y/N** |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

| Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? **(Y)** Y/N | |
|---|---|
| **Do expense reimbursements represent actual and necessary expenses incurred? (Y)** Y/N | |
| **Compensation Breakdown for Time Period Covered by this Application** | |
| **Total professional fees requested in this Application:** | $5,152.160.50 |
| **Total professional hours covered by this Application:** | 4692.7 |
| **Average hourly rate for professionals:** | $1,141 |
| **Total paraprofessional fees requested in this Application:** | $169,107.50 |
| **Total paraprofessional hours covered by this Application:** | 386 |
| **Average hourly rate for paraprofessionals:** | $396 |
| **Total fees requested in this Application:** | $5,321,268.00 |
| **Total expense reimbursements requested in this Application:** | $24,327.30 |
| **Total fees and expenses requested in this Application:** | $5,45,595.30 |
| **Total fees and expenses awarded in all prior Applications:** | $4,141,826.90 |

**Plan Status:** The Confirmation Hearing commenced on June 18, 2021 and concluded on June 25, 2021. The Court entered the Confirmation Order [Docket No. 1751] on June 25, 2021 and the Plan subsequently went effective on August 27, 2021.

**Primary Benefits:** During the Final Application Period, Stroock worked diligently on behalf of the Committee to negotiate a settlement with the Debtors and prepetition lenders, and to ensure that such settlement was properly implemented and memorialized. As discussed in greater detail herein, the Committee Settlement significantly improved recoveries for general unsecured and trade creditors than those originally contemplated under the Debtors' proposed plan. Additionally, throughout the case, Stroock kept the Committee members apprised of case developments in real time, allowing them to make informed decisions, in conjunction with Stroock's recommendations, to further the interests of the body of general unsecured creditors.

To conserve resources, Stroock has not filed a separate interim fee application for the period from May 1, 2021 through and including August 27, 2021. Accordingly, the fees and expenses for this interim period have not yet been approved by this Court. This fee application constitutes in part an interim and final request for the payment of such fees and expenses.

After August 27, 2021, Stroock professionals rendered additional services in preparing and filing this fee application. Amounts relating to such services are not included in this fee application.

Dated: October 11, 2021                    Respectfully submitted,

                                           /s/  Kenneth Pasquale
                                           _____
                                           Kenneth Pasquale (admitted *pro hac vice*)
                                           Stroock & Stroock & Lavan LLP
                                           180 Maiden Lane
                                           New York, NY 10038-4982
                                           (212) 806-5562
                                           Fax No. (212) 806-6006
                                           kpasquale@stroock.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**FOURTH AND FINAL FEE APPLICATION OF STROOCK & STROOCK & LAVAN
LLP, AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF FIELDWOOD ENERGY LLC, *ET AL.*, FOR ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED DURING (I) THE INTERIM PERIOD FROM MAY 1, 2021
THROUGH AND INCLUDING AUGUST 27, 2021, AND (II) THE FINAL
APPLICATION PERIOD OF AUGUST 19, 2020 THROUGH AND INCLUDING
AUGUST 27, 2021**

**THIS APPLICATION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY
AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD
IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF
YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE
AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR
RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR
RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED.
IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND
HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.
UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER
EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE
HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Stroock & Stroock & Lavan LLP ("Stroock"), counsel for the Official Committee of Unsecured Creditors (the "Committee") of Fieldwood Energy LLC, *et al.* (the "Debtors"), hereby submits its fourth and final fee application (this "Application") for (i) allowance and payment of compensation for services rendered in the amount of $1,192,878.50 and reimbursement of expenses in the amount of $5,020.60 that Stroock incurred for the period from May 1, 2021 through and including August 27, 2021 (the "Fourth Interim Period"); (ii) allowance, approval and payment of compensation on a final basis, in the amount of $5,321,268.00 for professional services rendered, and reimbursement of actual and necessary costs and expenses incurred, on a final basis, in the amount of $24,327.30, in each case, during the period from August 19, 2020 through and including August 27, 2021 (the "Final Application Period"); and (iii) payment of the Holdback (defined below) and any other allowed amounts to the extent not yet paid. In support of this Application, Stroock submits the declaration of Kenneth Pasquale (the "Pasquale Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Application, Stroock respectfully states as follows:

## PRELIMINARY STATEMENT

1.      By this Application, Stroock seeks allowance, approval and payment, on a final basis, of its reasonable fees as well as the actual and necessary expenses incurred by Stroock during the Final Application Period (including the Fourth Interim Period). As set forth below and in the Interim Fee Applications (as defined below), Stroock has played an integral role as counsel to the Committee in the Debtors' Chapter 11 Cases.

2.      Throughout these cases, Stroock sought, on behalf of the Committee, to maximize the recoveries of unsecured creditors and also to pursue restructuring alternatives with the other major parties in interest that would preserve the business for the benefit of trade creditors, employees, contract counterparties and other unsecured creditors.  As part of that function, Stroock

2

spearheaded an extensive review of prepetition liens and claims of the lenders to determine whether there was a basis for challenge that would inure to the benefit of the unsecured creditor body. Those efforts revealed the existence of certain potential claims that served as a basis for negotiating unsecured creditor recoveries under the Plan.

3.      As requested by the Committee, Stroock advocated from the time of its engagement through the conclusion of these cases for the prompt payment of vendor claims, consistent with the critical vendor motion for which the Debtors had obtained court approval. In addition, working with the Committee's financial advisors, this firm carefully analyzed various aspects of the Debtors' operations, as well as efforts to market the business, and communicated with the other major parties in interest on potential paths forward.

4.      As part of the Plan process, Stroock engaged with both the Debtors' and the prepetition lenders' advisors to negotiate meaningful treatment for the unsecured creditor constituency. Through these efforts, Stroock successfully negotiated a Plan settlement on behalf of the Committee (the "Committee Settlement") that, as set forth below, significantly improved the recoveries for general unsecured and trade creditors, as compared to that contemplated in the Debtors' originally proposed plan of reorganization.

5.      Given the massive asserted claims of the sureties, predecessors in interests and other general unsecured creditors, it was clear that the miniscule pool of cash originally allocated by the Debtors would not result in any meaningful distribution to the unsecured creditor class. Accordingly, on behalf of the Committee, Stroock negotiated treatment for the general unsecured creditors which included (i) warrants in the ongoing business purchased by the lenders that would afford upside potential to the class if the business prospers, and (ii) entitlement to any residual value in those entities to be wound down by a Plan Administrator overseeing the administration of

the Reorganized Debtors.[2] Stroock also advocated for, and obtained the right to select the Plan Administrator because unsecured creditors would be the ultimate beneficiaries of many of the Plan Administrator's post-confirmation responsibilities.

6.      Recognizing that within the unsecured creditor constituency, the subset of trade creditors was relatively small and comprised largely of critical vendors who could benefit from an immediate cash recovery and an ongoing business relationship, Stroock and the other Committee advisors also negotiated for a fixed cash percentage recovery to those trade creditors that agreed to enter into ongoing trade agreements with the reorganized entities.

7.      During the pendency of these cases, Stroock attorneys devoted substantial effort to analyzing the various iterations of the proposed Plan of Reorganization and Disclosure Statement advanced by the Debtors and the transactions contemplated thereby. This analysis included review of the agreements between the Debtors and Apache Corporation, which served as the cornerstone of the Plan (the "Apache Transaction"), as well as the other structures pursuant to which certain assets would be acquired by certain of the prepetition lenders, other assets would be abandoned and the remainder would be retained by the Reorganized Debtors and "wound down." Stroock also researched various issues concerning implementation and feasibility of the Plan and communicated with the representatives of major stakeholders, including the government, sureties and predecessors in interest, in an effort to facilitate the transactions contemplated under the Plan that incorporated the Committee Settlement.

8.      During the Fourth Interim Period, Stroock, acting on behalf of the Committee, continued to work towards the goals of maximizing value for general unsecured creditors and facilitating the efficient administration of the Chapter 11 Cases.  Specifically, Stroock reviewed,

---

[2] Capitalized terms not defined herein have the meanings ascribed to each in the Plan.

analyzed and negotiated the various documents required to finalize and implement the transactions contemplated by the Plan, as well as the Committee Settlement. These documents included, among other things, the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order"), the various warrant agreements, governance documents, plan administrator agreement, and other Plan supplement documents.

9.      Also during the Fourth Interim Period, Stroock attorneys reviewed and analyzed various objections that were filed to the Plan, reviewed documents produced by the Debtors in connection with confirmation of the Plan, and attended and participated in the multi-day hearing before the Bankruptcy Court regarding confirmation of the Plan (the "Confirmation Hearing"). Throughout the Plan confirmation process, Stroock attorneys worked diligently to ensure that the Committee Settlement was properly memorialized and that the interests of general unsecured creditors were protected.

10.      Additionally, Stroock worked directly with the Plan Administrator in order to ensure the continued efficient administration of the Chapter 11 Cases as well as prepare for the administration of the estates post-confirmation.

11.      These and other efforts undertaken by Stroock advanced the interests and protected the rights of the Committee and of general unsecured creditors in these Chapter 11 Cases. For these reasons, and as further demonstrated below, Stroock's fees and expenses are reasonable in the circumstances of these Chapter 11 Cases and Stroock's services to the Committee and its constituency greatly benefitted the estates. Accordingly, Stroock respectfully requests that the Court approve the Application.

## JURISDICTION

12.    The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

13.    The statutory bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), with recognition of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "U.S. Trustee Guidelines").

## BACKGROUND

14.    On August 3, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court (the "Chapter 11 Cases"). No request for the appointment of a trustee or examiner was made in these Chapter 11 Cases.

15.    On August 18, 2020, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee. On the Effective Date, the Committee was comprised of the following entities: (i) Sea Robin Pipeline, LLC; (ii) Aggreko, LLC; and (iii) Partco, LLC.[3]

---

[3] On January 5, 2021 the U.S. Trustee filed a *Notice of Reconstitution of Official Committee of Unsecured Creditors* [Docket No. 744] noting the addition of Partco, LLC to the Committee. On February 19, 2021, the U.S. Trustee filed

16.     On August 19, 2020, the Committee selected Stroock to serve as its counsel, subject to this Court's approval. On August 20, 2020, the Committee selected Cole Schotz P.C. ("Cole Schotz") to serve as co-counsel and Conway MacKenzie, LLC ("Conway MacKenzie"), to serve as financial advisor. Subsequently, on February 19, 2021, the Committee authorized Pachulski Stang Ziehl & Jones LLP ("Pachulski", and together with Stroock, Cole Schotz, and Conway MacKenzie, the "Committee Professionals") to replace Cole Schotz as co-counsel to the Committee, effective as of January 20, 2021.

17.     On September 17, 2020, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 367] ("Interim Compensation Order").

18.     On September 18, 2020, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Stroock & Stroock & Lavan LLP as Counsel, Effective as of August 19, 2020* [Docket No. 375] (the "Retention Application"). On October 16, 2020, the Court entered the *Order Authorizing Employment and Retention of Stroock & Stroock & Lavan LLP as Counsel to the Official Committee of Unsecured Creditors Effective as of August 19, 2020* [Docket No. 471] (the "Retention Order"). The Retention Order authorizes Stroock's employment and allows for compensation for Stroock's services and reimbursement of its expenses in accordance with 11 U.S.C. §§ 330 and 331, the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules, and any orders of this Court.

19.     On November 30, 2020, Stroock filed its *First Interim Application of Stroock & Stroock & Lavan LLP, as Counsel to the Official Committee of Unsecured Creditors of Fieldwood*

---

a *Notice of Reconstitution of Official Committee of Unsecured Creditors* [Docket No. 895] noting the addition of Sea Robin Pipeline, LLC and Aggreko, LLC to the Committee.

*Energy LLC, et al., for the Period from August 19, 2020 Through and Including October 31, 2020*
[Docket No. 619] (the "First Interim Fee Application"). The Court entered an order approving the
First Interim Fee Application on December 30, 2020 [Docket No. 709].

20.     On March 1, 2021, Stroock filed its *Second Interim Application of Stroock &*
*Stroock & Lavan LLP, as Counsel to the Official Committee of Unsecured Creditors of Fieldwood*
*Energy LLC, et al., for the Period from November 1, 2020 Through and Including January 31,*
*2021* [Docket No. 925] (the "Second Interim Fee Application"). The Court entered an order
approving the Second Interim Fee Application on March 29, 2021 [Docket No. 1180].

21.     On May 27, 2021, Stroock filed its *Third Interim Application of Stroock & Stroock*
*& Lavan LLP, as Counsel to the Official Committee of Unsecured Creditors of Fieldwood Energy*
*LLC, et al., for the Period from February 1, 2020 Through and Including April 30, 2021* [Docket
No. 1401] (the "Third Interim Fee Application" and, together with the First Interim Fee
Application and the Second Interim Fee Application, the "Interim Fee Applications"). The Court
entered an order approving the Third Interim Fee Application on June 28, 2021 [Docket No. 1767].

22.     In respect of the Fourth Interim Period, Stroock has submitted two monthly fee
statements for services rendered and expenses incurred during the Fourth Interim Period (for the
period covering May 1, 2021 through and including June 30, 2021).  No objections to these
monthly fee statements were received.  The monthly fee statements for services rendered and
expenses incurred during the period covering July 1, 2021 through and including July 31, 2021
and for August 1 through and including August 27, 2021 are included herein.

23.     As of the date hereof, Stroock has received payment from the Debtors in the
aggregate amount of $274,546.53 representing 80% of fees and 100% of expenses incurred during
the period from May 1, 2021 through May 31, 2021.  Stroock has billed and has not received

payment for the period June 1, 2021 through June 30, 2021.  In accordance with the Interim

Compensation Order, $68,599.5, reflecting 20% of the amount of May 2020 fees, 100% of the

June 2021 fees and expenses requested for the Fourth Interim Period, has been held back from

payment pending further Court order (the "Holdback"). Stroock has not requested payment of fees

and expenses incurred during the period from July 1, 2021 through August 27, 2021 on an interim

basis; rather, Stroock now requests approval of such fees and expenses on a final basis, as set forth

herein. Additional information regarding the Holdback is set forth below:

| Monthly Statement | Fees Incurred (100%) | Fees Paid (80%) | Expenses Incurred | Expenses Paid (100%) | Balance (Fees & Expenses) |
|---|---|---|---|---|---|
| May 1, 2021 – May 31, 2021 | $342,997.50 | $274,398.00 | $148.53 | $148.53 | $68,599.50 |
| June 1, 2021 – June 30, 2021 | $674,153.50 | $0.00 | $1,977.80 | $0.00 | $676,131.30 |
| July 1, 2021 – July 30, 2021 | $120,724.00 | $0.00 | $2,894.27 | $0.00 | $123,618.27 |
| August 1, 2021 – August 27, 2021 | $55,003.50 | $0.00 | $0.00 | $0.00 | $55,003.50 |
| Balance Owing: | | | | | $923,352.57 |

## RELIEF REQUESTED

24.     Stroock requests that the Court enter an order (the "Order"), substantially in the

form attached hereto as **Exhibit E**: granting (i) the interim allowance of compensation for the

actual, reasonable and necessary professional services that Stroock provided during the Fourth

Interim Period in the amount of $1,192,878.50 and reimbursement for the actual, reasonable and

necessary expenses in the amount of $5,020.60; (ii) final allowance and payment of compensation

for professional services during the Final Application Period in the amount of $5,321,268.00 and

9

reimbursement of actual and necessary expenses incurred by Stroock in the amount of $24,327.30; and (iii) directing the Debtor to remit payment to Stroock for all approved but unpaid fees and expenses, including the Holdback.  In support of this Application, attached are the following exhibits:

- **Exhibit A**: Declaration of Kenneth Pasquale

- **Exhibit B**: Summary of Stroock's Fees and Expenses

- **Exhibit C**: Customary and Comparable Compensation Disclosures

- **Exhibit D**: Tenth, Eleventh, Twelfth and Thirteenth Monthly Fee Statements

- **Exhibit E**: Proposed Order Granting Fourth and Final Fee Application

## SUMMARY OF SERVICES PROVIDED BY STROOCK DURING THE FOURTH INTERIM PERIOD

25.     As set forth in the Summary Cover Sheet to the Fourth and Final Fee Application submitted herewith, Stroock rendered a total of 1,068.1 hours of professional services during the Fourth Interim Period, for which it seeks compensation of $1,192,878.50, calculated in accordance with Stroock's normal hourly rates in effect at the time the services were rendered and/or as agreed upon by the Debtors and Stroock.

26.     The fees and expenses incurred by Stroock are reasonable based on the nature and extent of the services rendered, the size and complexity of these Chapter 11 Cases, the time, labor, and special expertise brought to bear on the questions presented and other related factors. During the Fourth Interim Period, the professional services performed by Stroock were necessary and appropriate to protect the rights and fulfill the obligations of the Committee given the nature and complexity of the issues at hand, were in the best interests of the Committee, all general unsecured creditors and other parties in interest, and were performed in an expeditious and efficient manner. In addition, Stroock coordinated with the Committee's other advisors, so as not to duplicate effort.

10

Accordingly, Stroock submits that the compensation sought herein is reasonable within the meaning of sections 330 and 331 of the Bankruptcy Code.

27. The following summary of services rendered during the Fourth Interim Period is not intended to be a detailed description of the work performed. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the issues to which Stroock was required to direct its attention.[4]

### Case Administration – Matter No. 0001

28. Time in this category includes, but is not limited to, organizational and administrative matters concerning the Committee and its functioning.

29. Stroock routinely reviewed the docket in the Chapter 11 Cases and reviewed and analyzed the various pleadings filed. Stroock also maintained an ongoing calendar of important dates, deadlines and tasks relevant to these cases, including meetings, hearings and other dates of critical importance.

30. Stroock expended 56.3 hours in this category, for a total of $26,434.50 during the Fourth Interim Period.

### Meetings & Communications with Debtors – Matter No. 0002

31. Time in this category includes, but is not limited to, conference calls and other communications with the Debtors' professionals. During the Fourth Interim Period, Stroock worked with the Debtors' professionals to obtain information, evaluate and, as appropriate, negotiate concerning various developments in these Chapter 11 Cases, including those related to the Debtors' proposed Plan, the Committee Settlement and various Confirmation related issues,

---

[4] Pursuant to the U.S. Trustee Guidelines, Stroock classified all services performed for which compensation is sought into twenty-three (23) categories. Stroock attempted to place the services performed in the category that best relates to the services provided. However, because certain services may relate to one or more categories, services pertaining to one category may be included in another category. Timekeeping entries, attached hereto as **Exhibit D**, provide detailed descriptions of all services rendered with respect to each of these categories.

including negotiation of the warrants and agreements relating to the Plan Administrator. Additionally, Stroock conferred with the Debtors' professionals regarding the positions of other parties-in-interest, including the sureties and predecessors in interest, the status of any negotiations and the Debtors' positions with respect to such parties.

32.     Stroock expended 18.9 hours in this category, for a total of $25,374.00 during the Fourth Interim Period.

### Relief From Stay / Adequate Protection Matters – Matter No. 0004

33.     Time in this category includes review and analysis of various motions for relief from the automatic stay and stipulations related thereto, including motions filed by Atlantic Maritime, BP Exploration & Production and Aspen American Insurance Company, among others.

34.     Stroock expended 8.2 hours in this category, for a total of $9,356.50 during the Fourth Interim Period.

### Court Hearings – Matter No. 0005

35.     Time in this category includes preparation for and telephonic or video attendance at numerous hearings before the Bankruptcy Court. During the Fourth Interim Period, Stroock attorneys attended several court hearings, which took place May 6, 2021, May 28, 2021, June 8, 2021, June 10, 2021, June 16, 2021, June 17, 2021, June 21, 2021, June 22, 2021, June 23, 2021, June 24, 2021, June 25, 2021, July 6, 2021, July 8, 2021, July 9, 2021, July 15, 2021, July 19, 2021, July 29, 2021, August 4, 2021, August 9, 2021 and August 24, 2021, including the Plan Confirmation hearing, spanning multiple days.

36.     Stroock expended 138.7 hours in this category, for a total of $150,842.50 during the Fourth Interim Period.

**Creditors Committee Meetings and Communications – Matter No. 0006**

37.     Time in this category includes, but is not limited to, coordinating and participating in telephonic conference calls with the Committee, and with individual Committee members, as well as with the Committee's other professionals. As a result of the numerous issues to be resolved during the Fourth Interim Period, Stroock coordinated and conducted regularly scheduled weekly telephonic meetings with the Committee and its advisors to apprise the Committee members of real-time developments in these Chapter 11 Cases related to, among other things, ongoing discussions and negotiations regarding the Debtors' proposed Plan and the Confirmation Hearing, selection of the Plan Administrator, and to discuss such matters with the Committee, and to facilitate the efficient administration of these Chapter 11 Cases.

38.     In preparation for these calls and meetings, Stroock prepared agendas, reviewed pending matters to be discussed with the Committee, and reviewed and reported on underlying documentation in connection with pending matters. Stroock and the other Committee Professionals also conducted a regular all-hands conference call in advance of the weekly Committee meetings in order to prepare for the Committee meetings and to discuss agenda items, presentations to the Committee and various ongoing issues including pleadings, issues arising in the ordinary course of the Debtors' operations, and overall case strategies. During the Fourth Interim Period, Stroock attorneys also drafted memoranda to the Committee summarizing the relief requested in various motions, analyzing legal and factual issues when appropriate, and providing recommendations for the Committee's consideration.  Through such telephone conferences and correspondence, Stroock assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that arose in these cases and to monitor closely the Debtors' administration of these Chapter 11 Cases.

39.     Stroock also responded to inquiries of various creditors regarding proposed Plan treatment as well as their other concerns about these cases.

40.     Stroock expended 65.1 hours in this category, for a total of $72,135.00 during the Fourth Interim Period.

### Case Analysis / Pleading Analysis and Responses – Matter No. 0007

41.     Time in this category includes, but is not limited to, time spent reviewing and analyzing various pleadings filed by the Debtors and other parties in the Chapter 11 Cases. Stroock attorneys drafted memoranda to the Committee summarizing the relief requested in various motions, including certain motions related to various adversary proceedings, the Debtors' motion to approve certain rights offerings and equity backstop commitments, and the Debtors' motion to approve the side purchase agreement between the Debtors and the Credit Bid Purchaser and approve the sale of interests in Fieldwood Mexico. Stroock attorneys analyzed legal and factual issues when appropriate, and provided, in conjunction with the other Committee Professionals, recommendations for the Committee's consideration regarding the aforementioned pleadings and issues, among others.

42.     Stroock expended 42.0 hours in this category, for a total of $38,901.50 during the Fourth Interim Period.

### Stroock Fee Application – Matter No. 0009

43.     Time in this category includes, but is not limited to, the review of Stroock's fee statements and invoices and preparation of Stroock's fee applications.

44.     Stroock expended 62.1 hours in this category, for a total of $45,366.00 during the Fourth Interim Period.

## Other Professional Fee Applications – Matter No. 0011

45.     Time in this category includes, but is not limited to, the review of the Debtors'
professionals' fee statements and invoices, as well as those of the other Committee Professionals.
Additionally, in accordance with the DIP Order [Docket No. 346], Stroock received and reviewed
the invoices of the lenders' professionals distributed during this period.

46.     Stroock expended 13.3 hours in this category, for a total of $11,998.50 during the
Fourth Interim Period.

## Lien Review – Matter No. 0012

47.     Time in this category includes, but is not limited to, negotiations with the lenders
and Debtors to extend the Committee's Challenge Period for assertion of potential claims
identified during the Committee's investigation of unencumbered assets, which claims would
challenge certain of the lenders' asserted liens (together the "Preserved Claims").  In connection
with these negotiations, Stroock drafted and filed various stipulations to extend the Challenge
Period for the Committee to assert the Preserved Claims.

48.     Stroock expended 5.5 hours in this category, for a total of $6,607.00 during the
Fourth Interim Period.

## Leases & Contracts – Matter No. 0013

49.     Time in this category primarily includes, but is not limited to, Stroock's review and
analysis of the Debtors schedules of assumed executory contracts, as well as various parties'
objections to the assumption of executory contracts and proposed cure amounts related thereto.

50.     Stroock expended 6.9 hours in this category, for a total of $10,857.00 during the
Fourth Interim Period.

**Cash Collateral / DIP / Financing – Matter No. 0014**

51.     Time in this category primarily includes, but is not limited to, review and analysis of the Debtors' reporting of joint-interest billing, and certain credit agreements to be entered into in connection with the Plan.

52.     Strook expended 11.2 hours in this category, for a total of $12,235.50 during the Fourth Interim Period.

**Litigation & Adversary Proceedings – Matter No. 0015**

53.     Time in this category primarily includes, but is not limited to, Stroock's review and analysis of various pleading filed in the adversary proceedings, including the Debtors' adversary complaints against Apache and certain of their sureties, as well as pleadings related to dispute between the Debtors and certain predecessors-in-interest, including BP Exploration, Atlantic Maritime, and Shell Offshore.

54.     Strook expended 63.5 hours in this category, for a total of $73,351.50 during the Fourth Interim Period.

**Business Operations  – Matter No. 0016**

55.      Time in this category primarily includes, but is not limited to, review and analysis of joint interest billing and vendor program payments and analysis of predecessors' plugging and abandonment liability and related issues.

56.     Strook expended 3.8 hours in this category, for a total of $5,386.00 during the Fourth Interim Period.

**Claims Administration & Objections – Matter No. 0022**

57.     Time in this category primarily includes, but is not limited to, review and analysis of the Debtors' claims objections, as well as discussions with the Plan Administrator regarding the post-Effective Date claims reconciliation process.

58.   Stroock expended 53.3 hours in this category, for a total of $57,451.00 during the Fourth Interim Period.

### Plan & Disclosure Statement – Matter No. 0023

59.   Time in this category relates to, among other things, Stroock's communications with the Debtors' and lenders' advisors concerning Plan confirmation issues, and discussions with the Committee regarding same. Stroock spent significant time reviewing, analyzing and providing comments to the various Plan-related documents circulated by the Debtors, including versions of the Confirmation Order, Plan Administrator Agreement and GUC Warrant Agreement, among others, to ensure that such documents correctly implemented the Committee Settlement that Stroock negotiated on behalf of the Committee.

60.   Additionally, during the Fourth Interim Period, Stroock attorneys reviewed and analyzed confirmation related discovery produced by the Debtors, as well as various objections filed by creditors to the Debtors' Plan, and prepared memoranda for the Committee in respect of such objections.

61.   Stroock expended 515.4 hours in this category, for a total of $640,742.00 during the Fourth Interim Period.

### SUMMARY OF SERVICES PROVIDED BY STROOCK DURING THE EARLIER INTERIM PERIODS

62.   The summary of services rendered and expenses incurred during the earlier interim periods from August 19, 2020 through April 30, 2021 is provided in the Interim Fee Applications, which are incorporated herein by reference.

63.   The fees and expenses incurred by Stroock during the earlier interim periods are reasonable based on the nature and extent of the services rendered, the size and complexity of these Chapter 11 Cases, the time, labor, and special expertise brought to bear on the questions presented

17

and other related factors. The professional services performed by Stroock also were necessary and appropriate to protect the rights and fulfill the obligations of the Committee, were in the best interests of the Committee and general unsecured creditors, and were performed in an expeditious and efficient manner. Accordingly, Stroock submits that the compensation sought therein and herein is reasonable within the meaning of sections 330 and 331 of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

64.      Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under sections 327 or 1103 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered…and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> A.      the time spent on such services;
>
> B.      the rates charged for such services;
>
> C.      whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> D.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> E.      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

F.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

65.     The Fifth Circuit considers the following twelve factors set forth in *First Colonial* in determining the validity of awards of attorneys' fees in bankruptcy cases: (i) time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill required to perform the legal services properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *In re First Colonial Corp. of America,* 544 F.2d 1291, 1298-99 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977). These factors were adopted from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a non-bankruptcy case, and are commonly referred to as the "*Johnson* factors." The original *Johnson* factors, as embraced by *First Colonial,* remain applicable to the determination of reasonableness of fees awarded under the Bankruptcy Code. *See* 15 King, *Collier on Bankruptcy*, ¶ 330.04[3] at 330-35 to 330-41.

66.     The Fifth Circuit has rejected the "hindsight" or "material benefit" standard that was originally set forth in *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998). Instead, the Fifth Circuit enunciated a prospective standard based on whether the services of counsel were reasonably likely to benefit the estate at the time they were rendered. *See In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015).

67.     Stroock respectfully submits that it has met its burden under both section 330 of the Bankruptcy Code and the *Johnson* factors, and the services for which it seeks compensation in this

Application were, at the time rendered, necessary for and beneficial to the Committee and the general unsecured creditors of the estates, and were rendered to protect and preserve the Debtors' estates. Stroock further believes that it performed the services for the Committee economically, effectively, efficiently, and the results obtained benefited not only the Committee, but also the Debtors' estates and the Debtors' constituents. Stroock further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee and all parties in interest.

68.     As demonstrated below, Stroock has satisfied the *Johnson* factors. Accordingly, it is respectfully requested that the Court allow the requested fees and expenses.

69.     **The Time and Labor Required**. Firm attorneys and paraprofessionals expended a total of 1,068.1 hours during the Fourth Interim Period. The names of the attorneys and paraprofessionals who worked on these Chapter 11 Cases during the Fourth Interim Period appear in the Monthly Statements, attached as **Exhibit D**, along with detail regarding the specific services performed by each individual. Many of the services rendered required a high degree of professional competence and expertise in order to be skillfully and expeditiously administered. When more routine tasks were involved, Stroock used its paraprofessionals to reduce the total fees incurred without sacrificing the quality of the services rendered. All professionals involved in rendering services to the Committee made a deliberate effort to avoid any unnecessary duplication of work and time expended.

70.     **The Novelty and Difficulty of Legal Problems Involved**. These Chapter 11 Cases have presented numerous difficult and complex legal issues that have been considered and addressed by Stroock, all of which have required knowledge of the circumstances of these Chapter 11 Cases and application of the Bankruptcy Code, the Bankruptcy Rules and court decisions

20

interpreting the same. Stroock's diligence and effective advocacy with respect to these issues have been beneficial to the Committee in these Chapter 11 Cases.

71.     **The Skill Required for Performance of Legal Services**. The number of difficult issues and matters addressed in these Chapter 11 Cases required a high degree of skill and expertise. Stroock's attorneys, with varying levels of experience and seniority, have been used effectively and efficiently to perform the necessary tasks and have provided valuable and effective assistance to the Committee. A thorough understanding of the Bankruptcy Code and Bankruptcy Rules was applied along with Stroock's subject matter and industry expertise to assist the Committee. The compensation requested by Stroock is consistent with the compensation awarded in other cases of similar size and complexity.

72.     **Preclusion of Other Employment Due to Acceptance of the Case**. Stroock's representation of the Committee has not precluded the acceptance of new clients because of the size of Stroock's financial restructuring department and the firm as a whole. Stroock has not declined any representation solely because it serves as counsel for the Committee in these Chapter 11 Cases. However, the issues that have arisen in these proceedings have required attention on an ongoing and often expedited basis and the commitment of significant portions of time by Stroock attorneys and paraprofessionals.

73.     **The Customary Fee**. Stroock has computed the amount of compensation it seeks in this Application according to its customary rates for services of this kind, except as otherwise described herein.[5] The fees charged by Stroock are similar to the fees charged by comparable law firms. The amount of work involved in these cases, the level of skill necessary to perform the work,

---

[5] On December 18, 2020, Stroock filed its *Notice of Rate Increase Pursuant to Order Authorizing Retention and Employment of Stroock & Stroock & Lavan LLC as Attorneys for the Official Committee of Unsecured Creditors Effective as of January 1, 2021* [Docket No. 672]. Stroock has implemented the rate increases set forth in such notice, but has voluntarily charged a lower rate than set forth in the notice for certain counsel, at the request of the Debtors.

and the results obtained by Stroock justify an allowance of compensation in the requested amount. The compensation sought herein is not unusual given the magnitude of these Chapter 11 Cases and the time dedicated by Stroock to the representation of the Committee during the Fourth Interim Period and the Final Application Period.

74.    **Whether the Fee is Contingent or Fixed**. Stroock's fees for services rendered in these Chapter 11 Cases are based on its regular hourly rates (as adjusted periodically), subject in all respects to this Court's approval. Stroock has not requested any contingent fee in these Chapter 11 Cases, and the allowance of Stroock's fees is not outcome-dependent.

75.    **Time Limitations Imposed by the Client or Other Circumstances**. At times during the Fourth Interim Period, as detailed above, the circumstances of these Chapter 11 Cases have imposed significant time constraints requiring attorneys and paraprofessionals assigned to these Chapter 11 Cases to work evenings and on weekends. Stroock worked diligently and efficiently, with the assistance of the Committee's other advisors, to ensure that the Committee and its constituency are well represented and their interests protected.

76.    **The Results Obtained**. As described in this Application, Stroock's analysis, investigatory work and actions, and negotiating skills have been valuable to the Committee and the constituency it represents in preserving and protecting the interests of the unsecured creditors. Stroock, on behalf of the Committee, has greatly contributed to the efficient administration of the Chapter 11 Cases.

77.    **The Experience, Reputation, and Ability of the Attorneys**. Stroock possesses extensive experience, expertise and resources in all practice areas relevant to these Chapter 11 Cases, and is well versed in all substantive and procedural aspects of chapter 11 proceedings. Stroock is nationally recognized for having represented numerous official committees of

unsecured creditors, ad hoc committees, individual creditors and investors in many chapter 11 cases in this district and others. Further, Stroock attorneys, including those who have provided legal services in these Chapter 11 Cases, have actively participated in leadership positions in bar associations and other organizations, have written for local and national publications, and have spoken on panels involving creditors' rights and bankruptcy areas. Stroock's attorneys are experienced in all aspects of bankruptcy matters, possess a high level of expertise, and have an excellent reputation in the business and legal communities. Furthermore, Stroock has particular experience in the areas of insolvency, workout and corporate reorganization.

78.     **The "Undesirability" of the Case**. Serving as counsel to the Committee in these Chapter 11 Cases has not been undesirable for Stroock.

79.     **The Nature and Length of the Professional Relationship with the Client**. Stroock was selected as the Committee's counsel shortly after the Committee's formation, on August 19, 2020, and was retained effective as of that date pursuant to an order of the Court dated October 16, 2020. Stroock rendered services continuously to the Committee since the Committee was formed, and Stroock has rendered such services in a necessary and appropriate manner.

80.     **Awards in Similar Cases**. Stroock believes that its fees are consistent with fees allowed in similar proceedings for similar services rendered and results obtained. Stroock respectfully requests that the Court take notice of the awards made in similar cases of this size and complexity.

81.     Bankruptcy Code section 330 also authorizes "reimbursement for actual, necessary expenses" incurred by a retained professional. 11 U.S.C. §330(a)(1)(B). Stroock seeks reimbursement for actual and unpaid out-of-pocket expenses incurred in connection with its representation of the Committee during the Fourth Interim Period in the amount of $5,020.60 and

23

for the Final Application Period in the amount of $24,327.30. These expenses were incurred in accordance with Stroock's normal practice of charging clients for expenses related to particular matters, including transportation, photocopying, delivery service, postage and package delivery, vendor charges, court fees, transcript costs, computer-aided research and other out-of-pocket expenses incurred in providing professional services. Stroock has endeavored to minimize these expenses to the fullest extent possible and has provided a detailed summary of the expenses in the Monthly Statements attached hereto as **Exhibit D**.

82.     For the reasons set forth herein, Stroock has satisfied the *Johnson* factors. Accordingly, it is respectfully requested that the Court allow the requested fees and expenses in the amount of $5,321,268.00 for the Final Application Period, which amount consists of $5,321,268.00 in fees and $24,327.30 in expenses.

## **STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

83.     The following statement is provided pursuant to ¶ C.5. of the Appendix B Guidelines.

a.     **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?

**Answer:** Yes; see discussion in footnote 5 hereof.

b.     **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: Not applicable.

c.     **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

**Answer**: No.

d.    **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application). If so, please quantify by hours and fees.

    **Answer**: No.

e.    **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

    **Answer**: No.

f.    **Question**: If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

    **Answer**: Yes. With the authority of the Committee, on December 18, 2020, Stroock filed its *Notice of Rate Increase Pursuant to Order Authorizing Retention and Employment of Stroock & Stroock & Lavan LLP as Attorneys for the Official Committee of Unsecured Creditors Effective as of January 1, 2021* [Docket No. 672], and implemented such increases as set forth in the Second Interim Fee Application and in footnote 5 hereof.

## <u>NO PRIOR REQUEST</u>

84.    No prior request for the relief sought in this Application has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, Stroock respectfully requests that the Court:

(a)      approve interim allowance for the Fourth Interim Period of $1.192.878.50 for services rendered to the Committee and $5,020.60 for expenses that Stroock incurred in connection with the rendering of such services during the period from May 1, 2021 through and including August 27, 2021;

(b)      authorize final allowance and payment of compensation for professional services during the Final Application Period in the amount of $5,321.268.00 and reimbursement of actual and necessary expenses incurred by Stroock during such period in the amount of $24,327.30; and

(c)      authorize and direct the Debtors to remit payment to Stroock for all approved but unpaid fees and expenses, including the Holdback.


Dated: October 11, 2021                               Respectfully submitted,


                                                      */s/  Kenneth Pasquale*
                                                      Kenneth Pasquale
                                                      Stroock & Stroock & Lavan LLP
                                                      180 Maiden Lane
                                                      New York, NY 10038-4982
                                                      (212) 806-5562
                                                      Fax No. (212) 806-6006
                                                      kpasquale@stroock.com