

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 15, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-33948** |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | |
| | § | **CHAPTER 11** |
| Debtors. | § | |
| | § | |
| **QUARTERNORTH ENERGY LLC AND** | § | |
| **CERTAIN OF ITS AFFILIATES,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3476** |
| | § | |
| **ATLANTIC MARITIME SERVICES LLC,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

QuarterNorth seeks a declaratory judgment that Atlantic cannot pursue a lawsuit asserting liens (liens are denominated as privileges under Louisiana law) against certain non-debtors. The Court denies QuarterNorth's motion for summary judgment. Atlantic's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Prior to these bankruptcy proceedings, Fieldwood Energy LLC and its debtor affiliates (collectively, the "Debtors") were one of the largest producers of oil and gas in the Gulf of Mexico. (ECF No. 24 at 7). Fieldwood contracted with Atlantic Maritime Services, LLC in October 2018 to conduct operations on deepwater wells in the Gulf of Mexico. (ECF No. 24 at 8). Atlantic performed approximately $14 million worth of drilling services on five leases in 2020. (ECF No. 35 at 8). Fieldwood did not pay Atlantic for its work. (ECF No. 31 at 7).

1 / 27

In July 2020, Atlantic filed statements of privileges under the Louisiana Oil Well Lien Act ("LOWLA") to preserve and perfect its liens on the leases on which Atlantic performed work and for which Atlantic was not paid.   (ECF No. 31 at 12).  Atlantic alleges it furnished $5,824,744.68 worth of goods, equipment, supplies, and services in connection with the drilling and operation of the OCS-G-28030 Lease in the Mississippi Canyon Area, Block 948 ("MC-948").  (ECF No. 1-5 at 2).  Atlantic asserted a privilege against specific property interests in MC-948 that are owned by Ecopetrol America, LLC.  (ECF No. 1-5 at 5).

Atlantic alleges it furnished $7,111,706.55 worth of goods, equipment, supplies, and services in connection with the drilling and operation of the OCS-G-34536 Lease in the Green Canyon Area, Block 40 ("GC-40").  (ECF No. 1-6 at 2–3).  Atlantic asserted privileges against specific property interests of Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC in GC-40. (ECF No. 1-6 at 5–6).

In November 2020, Atlantic commenced lawsuits in the United States District Court for the Eastern District of Louisiana.   In one of those lawsuits, Atlantic requested a writ of sequestration directing the United States Marshal to seize and hold Ecopetrol's property interests in MC-948, including Ecopetrol's operating interest, interest in any hydrocarbons the well produces, and proceeds from the disposition of those hydrocarbons.  (ECF No. 1-5 at 5–6). Ecopetrol holds a 31.5% working interest in MC-948.  (ECF No. 1-5 at 2).

In another lawsuit, Atlantic requested a writ of sequestration directing the United States Marshal to seize and hold Ridgewood and Prospect's property interests in GC-40, including Ridgewood and Prospect's operating interests, interests in any hydrocarbons the well produces, and proceeds from the disposition of those hydrocarbons.  (ECF No. 1-6 at 6–7).  Ridgewood and Prospect each hold a 25% working interest in GC-40.  (ECF No. 1-6 at 2).

2 / 27

In the Louisiana Lawsuits, Atlantic "does not seek to seize any of the Subject Interests to the extent such Subject Interests are commingled with property of the Operator and the seizure thereof would potentially violate the automatic stay in the Operator's Bankruptcy Case." (ECF No. 1-5 at 6). The automatic stay no longer exists following the effective date of Fieldwood's confirmed plan. Consequently, the lawsuits seek to seize commingled interests, including hydrocarbons the well produces.

Fieldwood commenced this adversary proceeding seeking an extension of the automatic stay to prevent Atlantic from pursuing the Louisiana Lawsuits. (ECF No. 1 at 2). Atlantic filed a motion to dismiss Fieldwood's adversary complaint and Fieldwood filed a motion for summary judgment. (ECF Nos. 31; 32).

Pursuant to the Plan, and effective on August 27, 2021 (the "Effective Date"), Fieldwood sold certain assets to QuarterNorth Energy LLC. (ECF No. 65 at 2–3; Case No. 20-33948, ECF No. 2016). In Fieldwood's sale agreement with QuarterNorth, Fieldwood sold certain assets free and clear of encumbrances, including any privileges.[1] (Case No. 20-33948, ECF No. 2013 at 78, 168). The acquired assets include Fieldwood's 50% interest in GC-40 and 58.9363% interest MC-948. (Case No. 20-33948, ECF No. 2013 at 78, 203, 205). QuarterNorth succeeded to Fieldwood's interest in certain joint operating agreements ("JOAs") when Fieldwood assumed and assigned the

---

[1] "Buyer agrees to purchase and accept from the Sellers and the Sellers agree to sell, assign, convey, transfer and deliver, or cause to be sold, assigned conveyed, transferred and delivered to Buyer at the Closing, the Acquired Interests free and clear of any and all Encumbrances . . . . 'Encumbrance' means any encumbrance, license, right of first refusal, mortgage, deed of trust, pledge, security interest, lien, privilege, charge of any kind (including any agreement to grant any of the foregoing), adverse claim of any kind, capital lease, conditional sale or title retention agreement, lease or sublease in the nature thereof or the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction." (Case No. 20-33948, ECF No. 2013 at 78, 168).

JOAs to QuarterNorth on the Effective Date.[2]  (ECF No. 77 at 2; Case No. 20-33948, ECF No. 2013 at 915–19, 921–22, 933, 936, 938, 941–42, 944–47).[3]  In September 2021, QuarterNorth was substituted as the plaintiff in this adversary proceeding.  (ECF No. 72).

QuarterNorth, as the substituted plaintiff for Fieldwood,[4] asserts numerous bases for relief in its complaint:

- Count I: a declaration that general maritime law applies to the Drilling Contract, and therefore Atlantic's alleged privileges and *in rem* claims are preempted;

- Count II: a declaration that LOWLA does not apply because it is inconsistent with federal law;

- Count III: a declaration that the Department of the Interior (the "DOI") must be a party to the Louisiana Lawsuits, but Atlantic cannot make the DOI a party to the Louisiana Lawsuits;

---

[2] QuarterNorth alleges is it liable to the working interest owners under the JOAs because they contain indemnity provisions pertaining to Atlantic's alleged privileges and the relief Atlantic seeks against the working interest owners in the Louisiana Lawsuits.  (ECF No. 77 at 3).

[3] The sale to QuarterNorth was subject to the JOAs because the sale agreement contained a schedule of assumed contracts that included the JOAs affecting the leases at issue.  (Case No. 20-33948, ECF No. 2013 at 47, 51).  Further, adherence to the confirmation order in ECF No. 1751-1 was a condition precedent to QuarterNorth's performance.  (Case No. 20-33948, ECF No. 2013 at 131).  In 1751-1, a contract identified for assumption under the schedule of assumed contracts was to be assumed and assigned to the purchaser.  (Case No. 20-33948, ECF No. 1751-1 at 74–75).  While Fieldwood's sale of its interests in the leases was subject to the JOAs, no privileges attached to Fieldwood's interests when they were sold free and clear of any encumbrances.

[4] For the balance of this Opinion, the Court will simply refer to QuarterNorth with regard to matters on which QuarterNorth is substituted as Plaintiff.  Because QuarterNorth stands in Fieldwood's shoes as plaintiff, this convention is followed even on matters originally asserted solely by Fieldwood.

- Count IV: a declaration that Atlantic does not hold valid, perfected liens with respect to four of the five leases because the leases are in Alabama and Mississippi waters and are not governed by Louisiana law;

- Count V: a declaration that Atlantic's claims are junior to other liens and are unsecured under the Plan;

- Count VI: a declaration that Atlantic's alleged Louisiana privileges were extinguished under LOWLA upon the satisfaction, settlement, and discharge of Atlantic's debt under the Plan;

- Count VII: an extension of the automatic stay;

- Count VIII: a preliminary injunction against Atlantic preventing it from pursuing the Louisiana Lawsuits to avoid harming the Debtors and their estates;

- Count IX: a permanent injunction against Atlantic preventing it from pursuing the Louisiana Lawsuits.

(ECF No. 24).  Atlantic has conceded Count V, the Court temporarily granted the relief sought in Count VII, and Count VIII is moot now that the Louisiana Lawsuits cannot harm the Debtors' estates post-confirmation.  QuarterNorth seeks summary judgment with respect to Counts I, II, III, and VI.  (ECF No. 77 at 3).  If the Court denies summary judgment as to any of those counts, QuarterNorth also seeks adjudication on Counts IV and IX.  (ECF No. 77 at 3–4).  Atlantic argues that Counts I–IV, VI, and IX fail as a matter of law and should be dismissed.  (ECF No. 31 at 9–11).

## LEGAL STANDARD

### Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED R. CIV. P. 12(b)(6).  FED. R. BANKR. P. 7012 incorporates FED R. CIV. P. 12 in adversary proceedings.

"A motion to dismiss for failure to state a claim tests the sufficiency of the complaint under Federal Rule of Civil Procedure 8," which requires a pleading stating a claim for relief to contain

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

*Kan v. One W. Bank, FSB*, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011) (quoting FED. R. CIV. P. 8).

A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations to survive.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff must describe its claim in sufficient detail to give the defendant fair notice of the claim and the grounds upon which it rests.  *Id.*  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  Dismissal is improper if the allegations support relief on any possible, yet plausible, theory. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012).  The question at the motion to dismiss stage is whether, with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief. *Id.*

**Motion for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). FED. R. BANKR. P. 7056 incorporates FED R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need only consider the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d

316, 318 (5th Cir. 1996).  A credibility determination may not be part of the summary judgment analysis.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

## JURISDICTION

### "Arising Under" and "Related To" Jurisdiction

Under 28 U.S.C. § 1334, federal district courts have original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Under General Order 2012-6, bankruptcy cases and proceedings in the Southern District of Texas are automatically referred to the bankruptcy judges of the Southern District.  Therefore, the Bankruptcy Court has authority over any proceedings arising under title 11, or arising in or related to a case under title 11.

"Arising under" jurisdiction encompasses causes of action that are "created or determined by a statutory provision of title 11."  *Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir. 1987). In the post-confirmation context, the Fifth Circuit has determined that bankruptcy courts have "arising under" subject matter jurisdiction to issue declaratory judgments interpreting the plan.  *Mackey v. M.C. Inv. (In re Martinez)*, No. 00–40412, 2000 WL 34508398, at *1 (5th Cir. Oct. 5, 2000) (holding that that a bankruptcy court had "arising under" subject matter jurisdiction over a post-confirmation lawsuit filed against a creditor for allegedly breaching notice provisions in the Chapter 11 plan); *Ins. Co. of N. Am. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1064 (5th Cir. 1997) (holding that a declaratory judgment confirming an aspect of a debtor's reorganization plan arose under title 11).

Here, QuarterNorth seeks a declaratory judgment interpreting the order confirming the Plan.  (ECF Nos. 24 at 38–39; 65 at 3).  Specifically, QuarterNorth seeks a declaratory judgment interpreting whether the satisfaction, settlement, and discharge of Atlantic's claims under the Plan

extinguished any potential LOWLA liens Atlantic may have.  (ECF No. 65 at 9).  This Court has "arising under" jurisdiction to issue a declaratory judgment interpreting the Plan.

A bankruptcy court has "related to" jurisdiction "if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 585 (5th Cir. 1999) (internal quotation marks omitted). The Fifth Circuit has indicated that district courts are not divested of "related to" jurisdiction over a pre-existing lawsuit solely based on the confirmation of a reorganized plan. *See Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335 (5th Cir. 2008) ("*Craig's Stores* does not conflict with *Celotex* because the *Craig's Stores* decision did not *divest* the bankruptcy court of jurisdiction over any claims."); *see also AE Mktg., L.L.C. v. Jenkins-Baldwin Corp.*, No. 3:07-CV-0321-F, 2010 WL 11537889, at *2 (N.D. Tex. Feb. 1, 2010).  In the post-confirmation context, a bankruptcy court may have "related to" jurisdiction over pre-confirmation claims based on pre-confirmation activities. *Enron*, 535 F.3d at 336.  In *Enron*, state law claims were dismissed with prejudice after removal to federal court under "related to" jurisdiction. *Id*. at 333.  The plaintiffs argued that bankruptcy jurisdiction over state law claims ceased to exist at the confirmation of Enron's bankruptcy plan, so the District Court had no jurisdiction to dismiss their cases with prejudice. *Id*. at 334–35.  The Fifth Circuit disagreed and held that the District Court had "related to" jurisdiction. *Id*. at 336.  In its decision, the Fifth Circuit examined its decision in *Craig's Stores* and found that the three factors led to its holding. *Id*. at 335; *see Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores)*, 266 F.3d 388 (5th Cir. 2001).  The three factors were: (1) the claims at issue "principally dealt with post-confirmation relations between the parties;" (2) "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and (3) "no facts or law deriving from the reorganization or the plan [were] necessary to the claim."

9 / 27

*Enron*, 535 F.3d at 335.  The Fifth Circuit applied the *Craig's Stores* factors and determined that the District Court had "related to" jurisdiction for the claims that were removed pre-confirmation and were based on pre-confirmation activities.  *Enron*, 535 F.3d at 336.

Application of the *Enron* factors indicates that the Court has "related to" jurisdiction.  First, QuarterNorth's claims principally deal with Fieldwood's pre-confirmation relations with Atlantic. Second, this adversary proceeding began prior to the date of reorganization.  Finally, interpretation of Fieldwood's bankruptcy plan is necessary to resolve QuarterNorth's claims.  All three factors weigh in favor of "related to" jurisdiction.

There is support for "related to" jurisdiction beyond the *Enron* factors.  The Court had pre-confirmation "related to" jurisdiction over this adversary proceeding when the lawsuit had a conceivable effect on the estate.  Confirmation of a plan does not mean that a bankruptcy court loses jurisdiction over pre-confirmation claims based on pre-confirmation activities.  *Enron*, 535 F.3d, at 335.  QuarterNorth's substitution as Plaintiff did not divest this court of subject matter jurisdiction either.  *See King's Grant Golf Acquisition, LLC v. Abercrombie (In re T 2 Green, LLC)*, 364 B.R. 592, 604 (Bankr. D.S.C. 2007) ("Even if, after the substitution of [the purchaser] for the Debtor as plaintiff, the matter was no longer a core proceeding, this Court retained jurisdiction.").  *See also* FED. R. BANKR. P. 7025(c) ("Rule 25 F.R.Civ.P. applies in adversary proceedings."); FED. R. CIV. P. 25(c) ("If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."); *Collateral Control Corp. v. Deal (In re Covington Grain Co., Inc.)*, 638 F.2d 1362, 1364 (5th Cir. 1981) ("Rule 25(c) is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.").  Because the Court had "related to" jurisdiction pre-confirmation and neither plan confirmation nor plaintiff substitution

divested the Court of jurisdiction, the Court maintains "related to" jurisdiction over this post-confirmation adversary proceeding.

**Standing**

Constitutional standing requires that "an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Constitutional standing also requires that a plaintiff's injury must not be "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). A particularized injury "must affect the plaintiff in a personal and individual way." *Id.* A court has no subject matter jurisdiction when the party bringing claims lacks standing to assert those claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109–110 (1998).

In the Louisiana Lawsuits, Atlantic seeks recognition and enforcement of liens solely with respect to the working interest owners' specific property interests. (ECF Nos. 1-5 at 5; 1-6 at 6). Atlantic seeks to recover proceeds from the sale of hydrocarbons produced from the leases unless the automatic stay precludes it from doing so. (ECF Nos. 1-5 at 5; 1-6 at 6). Atlantic also seeks a writ of sequestration against certain property subject to the liens. (ECF Nos. 1-5 at 6; 1-6 at 6–7). A writ of sequestration allows a lien claimant to "have the property seized" to avoid "conceal[ing], dispos[ing] of, or wast[ing] the property or the revenues therefrom." La. Code Civ. Proc. art. 3571. Once again, Atlantic does not seek to seize any property "to the extent" it is "commingled with the property of the Operator and the seizure thereof would potentially violate the automatic stay." (ECF Nos. 1-5 at 6; 1-6 at 6–7). Stated differently, Atlantic seeks the seizure of property, including the operator's share of hydrocarbons the wells produce, if the seizure of the hydrocarbons would not violate the automatic stay.

The automatic stay ends when property is no longer property of the estate. 11 U.S.C. § 362(c)(1). Fieldwood's interests in MC-948 and GC-40 ceased being property of the estate both because (i) the plan became effective and there was no estate following the effective date; and (ii) QuarterNorth purchased the Louisiana properties, also making the properties non-estate property. Therefore, seizing any hydrocarbons that otherwise belong to QuarterNorth via its interests in MC-948 and GC-40 would not violate the automatic stay. Because seizure would not violate the automatic stay, Atlantic's complaint requests that the writ of sequestration apply to hydrocarbons now owned by QuarterNorth. QuarterNorth has a direct and concrete injury. The injury is traceable to the challenged action: QuarterNorth seeks to prevent sequestration of its hydrocarbons by disputing the existence of Atlantic's privileges. Finally, that injury would be redressed by this Court's favorable ruling. QuarterNorth meets the requirements for constitutional standing.

Atlantic argues that QuarterNorth has no standing as an indemnitor. (ECF No. 37 at 11). In support of its argument, Atlantic points out that indemnitors lack standing to litigate underlying disputes that do not result in concrete and particular injury. *See Penda Corp. v. U.S.*, 44 F.3d 967, 971 (Fed. Cir. 1994) ("[T]he law is well-settled that a party lacks standing to appeal from a judgment by which it is not aggrieved."). For indemnitors to have standing, the pecuniary interest in a case must be direct and immediate instead of indirect and consequential. *Id.* at 972. As discussed above, QuarterNorth has a direct and immediate injury along with its potential indemnification obligations.

## DISCUSSION

### Which Law Applies

In addressing the substantive issues in the motions for summary judgment and to dismiss, the Court must determine whether LOWLA applies.

Maritime Law

QuarterNorth does not plead a plausible claim for relief in Count I. The Court dismisses Count I. QuarterNorth's motion for summary judgment as to Count I is moot.

The first substantive issue concerns the law the Court must apply. QuarterNorth argues that general maritime law governs this dispute because the Drilling Contract is a maritime contract. The Fifth Circuit has adopted a two-part test to determine whether a contract applicable to offshore oil and gas exploration should be categorized as a maritime contract: (1) "is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters?" and (2) "does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?" *In re Larry Doiron, Inc.*, 879 F.3d 568, 576 (5th Cir. 2018) (en banc), *cert. denied*, 138 S. Ct. 2033 (2018). Both questions must be answered affirmatively before an offshore oil and gas exploration contract will be categorized as a maritime contract. *Crescent Energy Servs., L.L.C. v. Carrizo Oil & Gas, Inc. (In re Crescent Energy Servs., L.L.C.)*, 896 F.3d 350, 355 (5th Cir. 2018).

The Drilling Contract is a contract to facilitate the drilling or production of oil and gas on navigable waters. The Drilling Contract provides for Atlantic to perform work from the drillship *Rowan Resolute* on certain wells in the Gulf of Mexico. Therefore, the first *Doiron* question is satisfied. The services that Atlantic agreed to provide under the Drilling Contract using the *Rowan Resolute* were services utilizing a vessel. A "vessel" is "any watercraft practically capable of maritime transportation." *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 497 (2005). The *Rowan Resolute* is a self-propelled drillship and is a watercraft capable of maritime transportation. Atlantic could only perform its obligations by using the *Rowan Resolute* to navigate to the drill site locations and drill the wells. Because the *Rowan Resolute* is a vessel and the *Rowan Resolute*

13 / 27

was expected to play a substantial role in the completion of the contract, the second *Doiron* question is satisfied.

The Drilling Contract satisfied both *Doiron* questions and so it is a maritime contract. However, the Drilling Contract's status as a maritime contract does not mean that Atlantic's claims are not governed by LOWLA. *Doiron* concerned whether to apply maritime law or Louisiana law to determine the validity of an indemnity provision in a contract case. *Doiron*, 879 F.3d at 576. QuarterNorth argues that the present issue—whether Atlantic may pursue LOWLA privileges—is governed exclusively by maritime law because the issue arises out of the Drilling Contract. (ECF No. 32 at 30). QuarterNorth is wrong. Atlantic's claim—that it should be allowed to pursue LOWLA privileges—is extracontractual. The issue does not arise out of the Drilling Contract when Atlantic pursues a remedy that LOWLA provides.

The Fifth Circuit's ruling in *Gardes Directional Drilling* is instructive. *Gardes Directional Drilling v. U.S. Turnkey Expl. Co.*, 98 F.3d 860 (5th Cir. 1996). In *Gardes*, subcontractors of a bankrupt driller asserted LOWLA privileges against non-debtor working interest owners' property associated with a lease. *Id.* at 862-63. The working interest owners argued that maritime law applied "because of the maritime aspects of an underlying contract" between the subcontractors and the driller. *Id.* at 865. The Fifth Circuit held that the subcontractors' claim to enforce rights provided under LOWLA, "specifically the right to hold the owner of a lease liable to subcontractors for the debts of a contractor operating on the site," was extracontractual. *Id*. The "saltiness" of the underlying contract between the driller and the subcontractors did not mandate the application of maritime law on a privilege claim. *Id.* Similarly, Atlantic's claim is to enforce rights provided under LOWLA, specifically the right to pursue *in rem* claims against the working

14 / 27

interest owners' property. (ECF No. 37 at 6). The conclusion that the Drilling Contract is a maritime contract does not obviate Atlantic's extracontractual privilege claims.

QuarterNorth argues that the Drilling Contract's choice of law provision expressly incorporating maritime law preempts Atlantic's alleged privileges based on Louisiana law. (ECF No. 24 at 14–15). This argument also fails under *Gardes* because the Drilling Contract's choice of law provision is irrelevant to Atlantic's privilege claims. *Id.* (holding that the underlying contract does not mandate the application of maritime law on an extracontractual claim). In addition, the Outer Continental Shelf Lands Act ("OCSLA") choice of law schemes trump the Drilling Contract's choice of law provision. *Texaco Expl. & Prod., Inc. v. AmClyde Eng'd Prods. Co.*, 448 F.3d 760, 772 n.8 (5th Cir. 2006), *amended on reh'g*, 453 F.3d 652 (5th Cir. 2006).

LOWLA

QuarterNorth pleads a plausible claim for relief in Count II, but it is not entitled to summary judgment. The Court denies both Atlantic's motion to dismiss and QuarterNorth's motion for summary judgment as to Count II.

QuarterNorth argues that LOWLA is inconsistent with federal law for two reasons: (i) federal law establishes the limited circumstances in which interests in federal offshore leases may be transferred; and (ii) federal law establishes a comprehensive scheme addressing transfers of interests in federal offshore leases and so Louisiana law cannot apply. (ECF No. 32 at 33, 36).

Regarding the first reason, OCSLA directs the Secretary of the DOI to promulgate "such rules and regulations as may be necessary to carry out the provisions" of OCSLA. 43 U.S.C. § 1334(a). The DOI delegated the authority to manage the offshore leasing program to the Bureau of Ocean Energy Management ("BOEM"). DOI Department Manual, Part 218, Ch. 1, Section 1.1(A). Assignment of a record title interest and operating rights in a lease both require BOEM

15 / 27

approval.  30 CFR §§ 556.700; 556.800.   BOEM's regulations recognize that lease owners "may create, transfer, or assign economic interests without BOEM approval," 30 C.F.R. § 556.715, but BOEM's regulatory definition of "economic interest" expressly excludes any "record title interest or an operating rights interest."  30 C.F.R. § 556.105.

QuarterNorth argues that BOEM's regulations do not provide for the transfer of a record title interest or an operating rights interest through any legal mechanism other than an assignment on a BOEM form.  (ECF No. 32 at 36).   Atlantic argues that does not seek to transfer record title or an operating interest via the writ of sequestration.  (ECF No. 35 at 20).

Under LOWLA, "a claimant may enforce his privilege by a writ of sequestration, without the necessity of furnishing security."  La. R.S. § 9:4871.  A writ of sequestration is not a transfer of title.  *See Grantt Guillory Enters., Inc. v. Quebedeaux*, 110 So.3d 182, 189 (La. Ct. App. 2013) ("[T]he writ of sequestration is a conservatory writ which is intended to preserve property pending the outcome of a judicial proceeding."); Frank L. Maraist, 1A LOUISIANA CIVIL LAW TREATISE, CIVIL PROCEDURE - SPECIAL PROCEEDINGS § 2.1 (2020) ("The conservatory writ preserves the status quo pending the outcome of the proceeding but does not transfer title; the plaintiff, if successful, must proceed to judicial sale of the property through a writ of fieri facias.").

LOWLA allows Atlantic to enforce its privileges via writs of sequestration.  LOWLA does not transfer title from the working interest owners to the United States Marshal or to Atlantic.  Instead, LOWLA allows Atlantic to seek to prevent the working interest owners from concealing, disposing of, or wasting the relevant property or the revenues subject to the privileges.  La. Code Civ. Proc. art. 3571.  Nowhere in the Louisiana Lawsuits does Atlantic seek to have the working interest owners' record title interest or operating rights interest "transferred" Under Louisiana law. (*See* ECF Nos. 1-5; 1-6).  Instead, Atlantic seeks to have the working interest owners' property

16 / 27

interests, including the operating interests, seized and held.  (ECF Nos. 1-5 at 6; 1-6 at 7).   The Court does not determine whether that relief constitutes a "transfer" under federal law.

QuarterNorth later argues that federal regulations require DOI approval of any transfer of an operating interest in offshore leases, including "an encumbrance such as a lien and the seizure and sequestration procedure to enforce a lien."  (ECF No. 36 at 29).  QuarterNorth contends that the phrase "or otherwise transferred" in 30 U.S.C. § 1337(e) should receive the expansive interpretation of "transferred" seen in Black's Law Dictionary, the Texas Uniform Fraudulent Transfer Act, and the Bankruptcy Code.  (ECF No. 36 at 29).

The expansive interpretations of "transfer" in other federal laws do not necessarily require that OCSLA have the same expansive interpretation.  QuarterNorth has not cited a case in which "transfer" has been so widely interpreted under OCSLA.  As the party asserting the definition of "transfer" under OCSLA to include "an encumbrance such as a lien and the seizure and sequestration procedure to enforce a lien," QuarterNorth has the burden of proving its wide definition.  Neither interpretation of "transfer" by courts interpreting federal statutes other than OCSLA nor the definition in Black's Law Dictionary confirm the correct interpretation of OCSLA.  However, QuarterNorth's failure to prove that "transfer" must receive the expansive interpretation does not mean that its theory is not plausible.

The second asserted reason is that federal law establishes a comprehensive scheme addressing transfers of interests in federal offshore leases and so Louisiana law cannot apply.  Atlantic provided drilling services for offshore oil and gas leases on the Outer Continental Shelf ("OCS").  Under OCSLA, the subsoil and seabed of the OCS are under federal jurisdiction.  43 U.S.C. § 1333(a)(1)(A)(i); *see Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969) (observing that the purpose of OCSLA "was to define a body of law applicable to the seabed . . .

17 / 27

[and] subsoil . . . on the outer Continental Shelf."). There must be a gap in OCSLA before state law will apply on the OCS. *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1889 (2019). *Parker Drilling* notes that "even absent an on-point federal law" it is "conceivable that a state law might be 'inconsistent' with federal law." *Id.* at 1892 n.2. For example, federal law might contain a deliberate gap rendering state law inconsistent. *Id.*

To determine if LOWLA applies, the Court must first determine whether there is a gap in federal law on this matter. QuarterNorth concedes that the federal framework does not explicitly address liens on the federal lease interests. (ECF No. 32 at 40). QuarterNorth argues that the Bureau of Ocean Energy Management ("BOEM") purposefully excluded transfers of lease interests pursuant to LOWLA from transfers permitted under OCSLA in its 2016 promulgation of new leasing regulations. (ECF No. 32 at 41). If BOEM leasing regulations do not include LOWLA liens and the sequestration device used to enforce those liens, while also detailing the intricacies applicable to transferring record title and operating rights interests in offshore leases, QuarterNorth argues that BOEM purposefully excluded transfers of lease interests pursuant to LOWLA. (ECF No. 32 at 41).

The Supreme Court was clear that state law applies under OCSLA when federal law does not address the relevant issue. *Parker Drilling*, 139 S. Ct. at 1889. QuarterNorth's theory originates in a *Parker Drilling* footnote mentioning that the deliberate gap theory is "conceivable." *Id.* at 1892 n.2. Notably, the Supreme Court did "not foreclose" on the theory and did not explain how to identify a deliberate gap. *Id.* As the party asserting the deliberate omission, QuarterNorth has the burden of proving the deliberateness. Other than its own theory of a comprehensive federal scheme and the possibility presented in *Parker Drilling*, QuarterNorth has shown no evidence that the omission was deliberate. QuarterNorth has not convincingly argued that the deliberate gap

theory accurately depicts the relationship between LOWLA and OCSLA.  *See, e.g.*, *Grand Isle Shipyards, Inc. v. Black Elk Energy Offshore Operations, LLC*, No. CV 15-129, 2021 WL 536292 (E.D. La. Feb. 12, 2021) (finding no OCSLA issue with the transfer of a lease subject to LOWLA claims post BOEM's 2016 promulgation of new leasing regulations).   However, QuarterNorth's failure to prove the deliberate gap theory does not mean that theory is not plausible.

To succeed on a motion for summary judgment, QuarterNorth must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  QuarterNorth has not shown that it is entitled to summary judgment because it has not successfully shown that LOWLA is inconsistent with federal law, either via an expansive definition of "transfer" or the deliberate gap theory.  The Court denies QuarterNorth's motion for summary judgment as to Count II.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Dismissal is improper if the allegations support relief on any possible (but still plausible) theory.  *Wilson*, 667 F.3d at 595.  There are no disputed facts that the Court must accept as true to decide the motion to dismiss as to Count II.  QuarterNorth did not prove (for summary judgment purposes) the wide interpretation of "transfer" or the deliberate gap theory.  However, QuarterNorth's theories may (or may not) be correct statements of the law.  The Court denies Atlantic's motion to dismiss as to Count II.

**Approval of the DOI**

QuarterNorth pleads a plausible claim for relief in Count III, but it is not entitled to summary judgment. The Court denies both Atlantic's motion to dismiss and QuarterNorth's motion for summary judgment as to Count III.

QuarterNorth argues that (i) the Department of the Interior is a necessary and indispensable party to the Louisiana Lawsuits; and (ii) Atlantic cannot join the DOI because no waiver of sovereign immunity exists with respect to Atlantic's claims. (ECF No. 32 at 43–49). Specifically, QuarterNorth contends that Atlantic seeks a transfer of the Record Title and Operating Rights via a writ of sequestration in the Louisiana Lawsuits, which triggers statutory and regulatory requirements for DOI approval and requires the addition of the DOI to the Louisiana Lawsuits. (ECF Nos. 24 at 20; 32 at 38, 43). Because the United States has not waived sovereign immunity to be sued with respect to Atlantic's claims, the United States cannot be made a party to the Louisiana Lawsuits, so no court has jurisdiction over Atlantic's claims. (ECF No. 24 at 21).

As discussed above, DOI involvement is only triggered if the writ of sequestration is a "transfer." QuarterNorth has not proven that a writ of sequestration seeks a "transfer" of the record title and operating rights, though that may be the case. In addition, it would be improper for the Court to grant summary judgment enjoining Atlantic from pursuing the Louisiana Lawsuits when a writ of sequestration is not required for Atlantic to enforce its privileges. *Gardes*, 98 F.3d at 866–67 ("[LOWLA] states only that a lienholder 'may' proceed via sequestration; it does not, by its own words, limit a lienholder to this remedy. . . . To this end, the courts have decided that lien claimants are not limited to proceeding via writ of sequestration."); *Guichard Drilling Co. v. Alpine Energy Servs., Inc.*, 657 So.2d 1307, 1313 (La. 1995). ("[The claimant] is not required to enforce the privilege via the writ of sequestration."). Atlantic may also seek the interests in the

20 / 27

hydrocarbons produced from the leases and the proceeds received from the disposition of those hydrocarbons without effectuating any "transfer" of the record title or operating interests.  DOI approval is not needed for at least some of Atlantic's available remedies.

### Debt Extinction Under LOWLA

QuarterNorth pleads a plausible claim for relief in Count VI, but it is not entitled to summary judgment.  The Court denies both Atlantic's motion to dismiss and QuarterNorth's motion for summary judgment as to Count VI.

If LOWLA does not apply, this lawsuit is over.  Because all inferences should favor the non-moving party, the Court assumes LOWLA applies for a summary judgment analysis.  To know whether the satisfaction, settlement, and discharge of Atlantic's claims under the Plan extinguished any LOWLA privileges, the Court must determine when an obligation becomes extinct, and extinguishes a privilege, under Louisiana law.

Under LOWLA, a privilege, which is similar to a common-law lien, is extinguished upon extinction of the obligation it secures, by written consent of the claimant, or "as otherwise provided in this Part."  La. R.S. § 9:4864(B); *cf.* La. R.S. § 9:4823(A)(3) (determining that a privilege is extinguished under the Private Works Act when "[t]he obligation that it secures is extinguished.").  With respect to the second and third bases for extinguishment, Atlantic has not consented to extinguishment of its privilege and the Court is not aware of another applicable method of extinction within LOWLA.

To determine when a privilege is extinguished under LOWLA, the Court must interpret "extinction of the obligation."  The Court first turns to the Civil Code for guidance.  LOWLA grants contractors a privilege for certain "obligations incurred in operations," including "[a]

21 / 27

contractor for the price of his contract for operations." La. R.S. § 9:4862(A)(1). The privilege is

established over:

> (1) The operating interest under which the operations giving rise to the claimant's privilege are conducted together with the interest of the lessee of such interest in a:
>> (a) Well, building, tank, leasehold pipeline, and other construction or facility on the well site.
>> (b) Movable on a well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use.
>> (c) Tract of land, servitude, and lease described in R.S. 9:4861(12)(c) covering the well site of the operating interest.
> (2) Drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the privilege emanate.
> (3) The interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege.
> (4) The proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

La. R.S. § 9:4863(A). The LOWLA privilege attaches "to all property listed in the statute,

regardless of ownership, and requires no contractual relationship between the supplier of labor,

service, or equipment and the owner of the lease or equipment." *Guichard*, 657 So.2d at 1313 (La.

1995). Notably, the privilege can be effective as to a third person. La. R.S. § 9:4864(A). LOWLA

defines a third person to be "a person, including a lessee or operator, who is not contractually

bound to the claimant for the obligation secured by a privilege or who has not expressly assumed

the obligation." La. R.S. § 9:4861(11). Therefore, the LOWLA privilege may apply to the

property of parties with whom the claimant has no contractual obligation.

Although the privilege is expansive, it only protects the claimant's ability to collect an

obligation that has not been extinguished. La. R.S. § 9:4864(B).

22 / 27

QuarterNorth argues that a debt is extinguished under Louisiana law when the underlying obligation is extinct. (ECF No. 77 at 6). QuarterNorth's interpretation of "obligation" indicates that only Fieldwood had an obligation to Atlantic, not any of the working interest owners, because only Fieldwood had a contractual relationship with Atlantic. (ECF No. 77 at 5). Therefore, when Fieldwood's obligation to Atlantic was allegedly "satisfied, settled, and discharged" in bankruptcy, no party had an obligation to Atlantic. (ECF No. 77 at 5). Without an obligation, QuarterNorth argues, the privilege no longer exists. (ECF No. 77 at 4–6).

Atlantic argues that its LOWLA rights against the working interest owners cannot be non-consensually discharged or released under bankruptcy law or Louisiana law. (ECF No. 81 at 3). Specifically, Atlantic argues that the discharge of Fieldwood's debt to Atlantic does not affect the liability of any other entity on that debt under 11 U.S.C. § 524(e). (ECF No. 31 at 23).

If the Court were dealing solely with the § 524(e) discharge, Atlantic is surely correct. The Court must examine the confirmed plan to determine whether there was any effect of the Plan on the obligation that exceeded the discharge. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (holding that a confirmed plan will not be overturned for legal error when a party has notice of the error and does not object or timely appeal).

In assessing the motion for summary judgment, the Court must view the facts in light most favorable to the non-movant, Atlantic. The Plan provides that "any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims." (ECF No. 2008 at 69). QuarterNorth has not alleged in its pleadings what "distribution and deliveries" were made to

Atlantic "on account of Allowed Claims under the Plan."[5]  QuarterNorth has not established that Fieldwood's bankruptcy satisfied Atlantic's claims.  Atlantic contends that its claims were not satisfied in Fieldwood's bankruptcy.  (ECF No. 31 at 24).  Because the parties disagree as to whether Fieldwood's bankruptcy satisfied Atlantic's claims, there is a genuine dispute as to a material fact.  Therefore, the Court denies QuarterNorth's motion for summary judgment as to Count VI.

The general discharge injunction contained in the Plan limits the discharge by "every holder of a Claim or Interest" only to the fullest extent permitted under § 1141 of the Bankruptcy Code.  (Case No. 20-33948, ECF No. 2008 at 82).  That provision is separate from the "satisfaction" provisions applying to "distributions and deliveries."  (Case No. 20-33948, ECF No. 2008 at 69).  Section 1441 only discharges a debtor's liability on a claim, and not the claim itself.  The Court will not determine at this stage whether the differing language between the discharge section of the Plan and the treatment section of the Plan create either a conflict or an ambiguity.

To survive a motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678.  The question at the motion to dismiss stage is whether, with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief.  *Wilson*, 667 F.3d at 595.  While its factual allegations are insufficient

---

[5] QuarterNorth alleges that "the Debtors have confirmed and consummated their Plan and the restructuring transactions contemplated therein, which provide for, in relevant part, (i) the satisfaction, settlement, and discharge of Atlantic's claims and therefore extinguishment of its alleged liens against the WIOs (subject to this Court's ruling)" (ECF No. 65 at 4) and "because the confirmed Plan created a new set of rights and obligations between the Debtors and Atlantic in satisfaction, settlement and discharge of Atlantic's claim, the pre-petition obligation that Atlantic alleges is secured by a privilege (i.e., Fieldwood's contractual obligation to pay Atlantic for drilling services) is now extinct." (ECF No. 77 at 5–6).  QuarterNorth also cites to the Plan provisions purporting to satisfy Atlantic's claim, but it does not indicate the "distributions and deliveries" that would satisfy Atlantic's claim against Fieldwood.

for a motion for summary judgment, QuarterNorth complaint has alleged a plausible claim for relief.  In resolving all doubts in favor of QuarterNorth, the Court must assume that Fieldwood's bankruptcy plan satisfied Atlantic's claims against it and that Atlantic accepted the "distributions and deliveries" under the Plan.  Accepting that as true, Atlantic may have no right to assert LOWLA privileges because any debt owed to it was already satisfied.  QuarterNorth has stated a plausible claim for relief.

### Adjacent State to MC-948

QuarterNorth pleads a plausible claim for relief in Count IV.  The Court denies Atlantic's motion to dismiss as to Count IV.

QuarterNorth originally asked this Court to determine whether four out of five leases subject to the Louisiana Lawsuits are "adjacent to" Louisiana.  (ECF No. 24 at 22).  Because QuarterNorth only purchased interests in MC-948 and GC-40, the Court will only examine whether they, and not the three unpurchased leases, are adjacent to Louisiana in this opinion. QuarterNorth acknowledges that GC-40 is adjacent to Louisiana but argues that MC-948 is adjacent to Mississippi.  (ECF Nos. 24 at 22; 36 at 30).   Unlike the above Counts, QuarterNorth omitted Count IV from its motion for summary judgment.  (ECF No. 36 at 30).  QuarterNorth now only seeks adjudication on the matter if the Court does not grant summary judgment with respect to the other Counts.  (ECF Nos. 76 at 6; 77 at 4).

In reviewing a motion to dismiss, the Court must consider the complaint in its entirety, as well as documents incorporated into the complaint by reference and matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

The Fifth Circuit has identified four factors to consider in determining the "adjacent state" to a portion of the OCS when the President has not used his authority to publish projected lines

25 / 27

under 43 U.S.C. § 1333(a)(2)(A): "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000).

First, QuarterNorth concedes that MC-948 is closer to Louisiana (69 miles) than to Mississippi (146 miles), and so the first factor weighs in favor of Louisiana adjacency. (ECF No. 24 at 23). Second, QuarterNorth alleges that federal agencies refer to MC-948 as offshore both Mississippi and Louisiana, and so the second factor is inconclusive. (ECF No. 24 at 23). Third, the Court is not aware of any prior court determinations indicating whether MC-948 is adjacent to Louisiana or Mississippi. QuarterNorth argues that MC-948 "is only slightly west of a north-south line drawn from Viosca Knoll Block 113, [which was] held to be adjacent to Mississippi." (ECF No. 24 at 24). That fact does not determine that MC-948 is adjacent to Mississippi; in fact, it could indicate that MC-948 is adjacent to Louisiana. The third factor is inconclusive. Finally, QuarterNorth contends that MC-948 is due south of the Mississippi coast, but makes no argument that MC-948's position due south of the Mississippi coast is within the "projected boundary" of Mississippi. (ECF No. 24 at 24). The fourth factor is inconclusive.

The first factor weighs in favor of Louisiana adjacency. The second, third, and fourth factors are inconclusive. It is not clear whether MC-948 is adjacent to Louisiana or Mississippi, but it is plausible that it is adjacent to Mississippi.

Atlantic asks the Court to consider evidence outside of the complaint. (ECF No. 31 at 33). Even if the Court were to consider the exhibits Atlantic attached to its motion to dismiss, the Court would not dismiss this Count.

**Permanent Injunction**

QuarterNorth seeks a permanent injunction preventing Atlantic from pursuing its alleged *in rem* rights against the working interest owners in Count IX.   The Court denied summary judgment and dismissal on counts that could entitle QuarterNorth to a permanent injunction. The Court cannot issue the injunction unless those matters are resolved in QuarterNorth's favor.

**CONCLUSION**

A separate order will be entered.

SIGNED 10/15/2021

_____
Marvin Isgur
United States Bankruptcy Judge

27 / 27

United States Bankruptcy Court
Southern District of Texas

In re:                                                                                          Case No. 20-33948-mi

Fieldwood Energy LLC                                                                            Chapter 11

The Official Committee of Unsecured Cred

    Debtors

# CERTIFICATE OF NOTICE

District/off: 0541-4                            User: ADIuser                                   Page 1 of 6

Date Rcvd: Oct 15, 2021                        Form ID: pdf002                                 Total Noticed: 130

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ++ | Addresses marked '++' were redirected to the recipient's preferred mailing address pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.P.2002(g)(4). |
| # | Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately. |

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Oct 17, 2021:

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Bandon Oil and Gas GP, LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Bandon Oil and Gas, LP, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Dynamic Offshore Resources NS, LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | FW GOM Pipeline, Inc., 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Fieldwood Energy LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Fieldwood Energy Offshore LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Fieldwood Energy SP LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Fieldwood Offshore LLC, 2000 W. Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Fieldwood Onshore LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Fieldwood SD Offshore LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | GOM Shelf LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Galveston Bay Pipeline LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| db | + | Galveston Bay Processing LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| aty | + | Charles M Rush, 202 Magnate Drive, Lafayette, LA 70508-3830 |
| aty | + | Clark Hill Strasburger, Attn: Duane J. Brescia, 720 Brazos, Suite 700, Austin, TX 78701-2531 |
| aty | + | Darryl T. Landwehr, 935 Gravier Street, Suite 835, New Orleans, LA 70112-1727 |
| aty | + | Emile Joseph, Jr., Allen & Gooch, P O Box 81129, Lafayette, LA 70598-1129 |
| aty | + | Peter J. Segrist, Carver Darden et al, 1100 Poydras St., Ste 3100, New Orleans, LA 70163-1102 |
| aty | + | Petro Amigos Supply, Inc., c/o Wayne Kitchens, Total Plaza, 1201 Louisiana, 28th Floor, Houston, TX 77002-5607 |
| aty | + | Ralph J Kooy, 100 N LaSalle St, Suite #514, Chicago, IL 60602-3551 |
| aty | + | Ronald Savoie, Jackson & Jackson, P.L.L.C., 111 Founders Drive, Suite 400, Baton Rouge, LA 70810-8959 |
| aty | + | William S Piper, 100 N LaSalle St, Suite #514, Chicago, IL 60602-3551 |
| cr | + | A2D TECHNOLOGIES, INC. D/B/A TGS GEOLOGICAL PRODUC, c/o Andrew A Braun, Gieger Laborde & Laperouse, LLC, Suite 4800, 701 Poydras Street, New Orleans, LA 70139 US 70139-7756 |
| cr | + | Aker Solutions Inc., Bruce J. Ruzinsky, 1401 McKinney Street, Suite 1900, Houston, TX 77010-4037 |
| cr | + | All Aboard Development Corporation, 601 Poydras Street, Suite 1726, New Orleans, LA 70130-6039 |
| cr | | American Express National Bank, c/o Becket and Lee LLP, PO Box 3001, Malvern, PA 19355-0701 |
| cr | + | Anahuac Independent School District, c/o Owen M. Sonik, 1235 North Loop West, Houston, TX 77008-1758 |
| cr | + | Ankor E&P Holdings Corporation, c/o Looper Goodwine P.C., Attn: Paul J. Goodwine, 650 Poydras Street, Suite 2400, New Orleans, LA 70130-6171 |
| cr | + | Ankor Energy LLC, c/o Looper Goodwine P.C., Attn: Paul J. Goodwine, 650 Poydras Street, Suite 2400, New Orleans, LA 70130-6171 |
| intp | + | Apache Corporation, Hunton Andrews Kurth LLP, Attn: Robin Russell, 600 Travis Street, Suite 4200 Houston, TX 77002-2929 |
| cr | + | Archrock Services, LP, 16666 North Chase Dr., Houston, TX 77060-6014 |
| cr | + | Aspen American Insurance Company, c/o Randall A. Rios, Husch Blackwell LLP, 600 Travis Street, Suite 2350, Houston, TX 77002-2629 |
| intp | + | BP Exploration & Production Inc., c/o Shari L. Heyen, Greenberg Traurig, LLP, 1000 Louisiana Street, Suite 1700, Houston, TX 77002-5001 |
| cr | + | Bay City Independent School District, c/o Owen M. Sonik, 1235 North Loop West Suite 600, Houston, TX 77008-1772 |
| cr | + | Bedrock Petroleum Consultants, LLC, c/o Bradley, Attn: James B. Bailey, 1819 Fifth Avenue North, Birmingham, AL 35203-2120 |
| cr | + | Brian Clloyd, c/o Cain & Skarnulis LLP, 400 W. 15th Street, Suite 900, Austin, TX 78701-1659 |
| cr | + | C-Dive, L.L.C., c/o Leann O. Moses, 1100 Poydras Street, Suite 3100, New Orleans, LA 70163-1102 |
| cr | | CETCO Energy Services Company, LLC, c/o Rudy Urban, Credit Manager, Cetco Energy Services., LLC, 635 Brake Ridge Court, Seymour, TN 37865 |
| cr | + | Callon Petroleum Company, 2000 W. Sam Houston Parkway S., Suite 2000, Houston, TX 77042, UNITED STATES 77042-3622 |
| cr | + | Chambers County, c/o Owen M. Sonik, 1235 North Loop West Suite 600, Houston, TX 77008-1772 |

District/off: 0541-4      User: ADIuser      Page 2 of 6

Date Rcvd: Oct 15, 2021      Form ID: pdf002      Total Noticed: 130

| | | |
|---|---|---|
| cr | + | Claboryan Lewis, Broussard & David, 557 Jefferson street, Lafayette, LA 70501-6905 |
| cr | + | Colorado County, c/o John T. Banks, 3301 Northland Drive, Ste. 505, Austin, TX 78731-4954 |
| cr | + | ConocoPhillips Company, c/o Locke Lord LLP, c/o Bradley C. Knapp, 601 Poydras Street, Suite 2660 New Orleans, LA 70130-6032 |
| cr | + | Core Industries, Inc., PO Box 350, Mobile, AL 36601-0350 |
| cr | + | Cortex Business Solutions USA LLC, c/o Sprouse Law Firm, 901 Mopac Expressway South, Building 1, Suite 300 Austin, TX 78746-5883 |
| cr | + | DLS, LLC, P.O. Box 309, Lydia, LA 70569-0309 |
| cr | + | DeepSea Quality Consulting, Inc., c/o Ben L. Aderholt, Coats Rose, P.C., 9 Greenway, Suite 1000 Houston, TX 77046-0900 |
| cr | + | Dickinson Independent School District, c/o Owen M. Sonik, 1235 North Loop West Suite 600, Houston, TX 77008-1772 |
| cr | + | Discovery Gas Transmission LLC, c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| cr | + | Diversified Well Logging, LLC, C/O Dore Rothberg McKay, PC, 17171 Park Row, Suite 160, Houston, TX 77084-4927 |
| cr | + | Duane Landry, 105 Wild Iris Drive, Evangeline, LA 70537-3203 |
| cr | + | EOG Resources, Inc., c/o Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton St., Ste 1000, Fort Worth, TX 76102-3727 |
| cr | + | EnVen Energy Ventures, LLC, 609 Main Street, Suite 3200, Houston, TX 77002-3276 |
| cr | + | Everest Reinsurance Company, c/o Randall A. Rios, Husch Blackwell LLP, 600 Travis Street, Suite 2350, Houston, TX 77002-2629 |
| cr | + | Expro Americas, L.L.C., c/o Dore' Rothberg McKay, P.C., Attn: Zachary S. McKay, 17171 Park Row, Suite 160, Houston, TX 77084-4927 |
| cr | + | Genesis Energy, L.P., 919 Milam, Ste. 2100, Houston, TX 77002-5417 |
| | | Gibson Applied Technology & Enginnering, 1630 Park Ten Place, Suite 206, Houston, TX 77084 |
| cr | + | Gulfstar One LLC, c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| intp | + | Helis Oil & Gas Company, LLC, c/o J. David Forsyth, 400 Poydras Street, Suite 2550, New Orleans, LA 70130-3292 |
| cr | + | Ignition Systems & Controls, Inc., c/o Todd Barron Thomason Hudman & Bebout, Attn: Rafael Rodriguez, 3800 E. 42nd Street, Suite 409, Odessa, TX 79762-5928 |
| cr | + | Irongate Rental Services, LLC, c/o Dore' Rothberg McKay, P.C., Attn: Zachary S. McKay, 17171 Park Row, Suite 160, Houston, TX 77084-4927 |
| cr | + | JX Nippon Oil Exploration (U.S.A.) Limited, c/o GIEGER, LABORDE & LAPEROUSE, L.L.C., 5151 SAN FELIPE, SUITE 750, Houston, TX 77056-3646 |
| intp | + | Jackson Walker LLP, c/o Bruce J. Ruzinsky, 1401 McKinney Street, Suite 1900, Houston, TX 77010-1900 |
| cr | + | LLOG Exploration Company, LLC, c/o Looper Goodwine P.C., 650 Poydras Street, Suite 2400, Attn: Paul J. Goodwine, New Orleans, LA 70130-6171 |
| cr | + | Lewis Andrews, c/o Cain & Skarnulis LLP, 400 W. 15th Street, Suite 900, Austin, TX 78701-1659 |
| cr | + | Lexon Insurance Company and Endurance American Ins, Harris Beach PLLC, c/o Lee E. Woodard, Esq., 333 West Washing St., Ste. 200, Syracuse, NY 13202-5202 |
| cr | + | Lexon Insurance Company, Ironshore Indemnity Inc.,, Harris Beach PLLC, c/o Lee E. Woodard, 333 West Washington Street, Suite 200 Syracuse, NY 13202-5202 |
| cr | + | Lexon Insurance Company, Ironshore Indemnity Inc.,, Harris Beach PLLC c/o Lee E. Woodard, 333 West Washington Street, Suite 200, Syracuse, NY 13202 UNITED STATES 13202-9204 |
| cr | + | Louisiana Department of Revenue, Senior Bankruptcy Counsel, Litigation, 617 N. Third Street, Office 780, P O Box 4064 (Zip 70821-4064), Baton Rouge, LA 70802 UNITED STATES OF AMERICA 70821-4064 |
| cr | + | Macquarie Corporate and Asset Funding Inc., c/o John M. Castillo, 130 E Travis Street, Suite 350, San Antonio, TX 78205-1784 |
| cr | + | Magnum Mud Equipment Co., Inc., Post Office Box 4258, Houma, LA 70361, UNITED STATES 70361-4258 |
| cr | + | Marathon Oil Company, c/o Clay M. Taylor, Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton Street, Suite 1000, Fort Worth, TX 76102-3727 |
| cr | + | Martin Energy Services LLC, c/o Robert P. Franke, Clark Hill Strasburger, 901 Main St., Suite 6000, Dallas, TX 75202-3748 |
| cr | + | Marubeni Oil & Gas (USA) LLC, Looper Goodwine P.C., Attn: Paul J. Goodwine, 650 Poydras Street, Suite 2400, New Orleans, LA 70130-6171 |
| cr | + | McMoran Oil & Gas LLC, 1615 Poydras Street, Suite 600, New Orleans, LA 70112-1238 |
| cr | + | Merit Energy Company, Locke Lord Bissell & Liddell LLP, Attn: Philip Eisenberg, 600 Travis Street, Suite 3400 Houston, TX 77002-2926 |
| cr | #+ | Milorad Raicevic, 3701 Kirby Drive, Suite 1000, Houston, TX 77098-3928 |
| cr | + | Noble Energy, Inc., c/o Andrews Myers, PC, 1885 Saint James Place, 15th Floor, Houston, Tx 77056-4175 |
| op | ++ | PRIME CLERK LLC, ONE GRAND CENTRAL PLACE, 60 EAST 42ND STREET SUITE 1440, NEW YORK NY 10165-1446 address filed with court:, Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165 |
| cr | + | Patrick Burnett, c/o Cain & Skarnulis LLP, 400 W. 15th Street, Suite 900, Austin, TX 78701-1659 |
| cr | + | Performance Energy Services, LLC, c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| intp | | Railroad Commission of Texas, c/o Office of the Attorney General, Bankruptcy & Collections Division, P. O. Box 12548, Austin, TX 78711-2548 |
| cr | + | Red Willow Offshore, LLC, c/o Barnet B. Skelton, Jr., 815 Walker, Suite 1502, Houston, TX 77002-5832 |
| cr | + | Regis Southern, c/o Reese Baker, 950 Echo Lane Ste 300, Houston, TX 77024-2824 |
| cr | + | Ryan, LLC, c/o Bell Nunnally & Martin LLP, 2323 Ross Avenue, Suite 1900, Dallas, TX 75201-2721 |
| cr | + | SBM Gulf Production LLC, c/o Ken Green, Snow Spence Green LLP, P O Box 549, Hockley, TX 77447-0549 |
| cr | + | Seitel Data, Ltd., c/o Duane J. Brescia, Clark Hill Strasburger, 720 Brazos, Suite 700, Austin, TX 78701-2531 |
| cr | + | Sheldon Independent School District, c/o Owen M. Sonk, PBFCM, LLP, 1235 N. Loop W., Suite 600, Houston, TX 77008-1772 |
| cr | + | Sheldon Independent School District, et al, c/o Owen M. Sonik, PBFCM, LLP, 1235 N. Loop W., Ste 600, Houston, TX 77008-1772 |
| cr | + | Shell Offshore, Inc., 200 N. Dairy Ashford, Houston, TX 77079-1101 |
| cr | + | Shell Oil Company, c/o Sara M. Keith, 150 N. Dairy Ashford Rd., Building F, Houston, TX 77079-1128 |
| cr | + | Solar Turbines Incorporated, 100 N.E. Adams, Peoria, IL 61629-0001 |
| cr | + | Superior Performance, Inc., c/o S. Mayer Law, P.O. Box 6542, Houston, TX 77265, UNITED STATES 77265-6542 |

| | | |
|---|---|---|
| intp | + | TC Oil Louisiana, LLC, c/o Wick Phillips Attn: Jason Rudd, 3131 McKinney Ave., Suite 100, Dallas, TX 75204-2430 |
| cr | + | TETRA Technologies, Inc., Dore Rothberg McKay, P.C., 17171 Park Row, Suite 160, c/o Zachary McKay, Houston, TX 77084-4927 |
| cr | + | TGS AP Investments AS, c/o Andrew A Braun, Geiger Laborde & Laperouse, LLC, Suite 4800, 701 Poydras Street, New Orleans, LA 70139-7756 |
| cr | + | TGS-NOPEC Geophysical Company, c/o Andrew A Braun, Gieger, Laborde & Laperouse, LLC, Suite 4800, 701 Poydras St., New Orleans, LA 70139 US 70139-7756 |
| cr | + | TGS-NOPEC Geophysical Company ASA, c/o Andrew A Braun, Gieger Laborde & Laperouse, LLC, Suite 4800, 701 Poydras Street, New Orleans, LA 70139 US 70139-7756 |
| intp | + | Tana Exploration Company, LLC, c/o Wick Phillips Attn: Jason Rudd, 3131 McKinney Ave., Suite 100, Dallas, TX 75204-2430 |
| cr | + | Targa Liquids Marketing and Trade, LLC, c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| cr | + | Targa Midstream Services, LLC, c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| cr | + | Tetra Applied Technologies, Inc., c/o Zachary S. McKay, Dore Rothberg McKay, P.C., 17171 Park Row, Suite 160, Houston, TX 77084-4927 |
| intp | | Texas General Land Office, c/o Office of the Attorney General, Bankruptcy & Collections Division, P. O. Box 12548 MC-008, Austin, TX 78711-2548 |
| cr | + | Transcontinental Gas Pipe Line Company, LLC, c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| cr | + | Trinity Bay Conservation District, c/o Owen M.Sonik, 1235 North Loop West Suite 600, Houston, TX 77008-1772 |
| cr | + | Trunkline Field Services LLC, 1300 Main Street, Houston, TX 77002-6803 |
| cr | + | U.S. Specialty Insurance Company, c/o Locke Lord LLP, ATTN: Philip Eisenberg, 600 Travis Street, Suite 2800, Houston, TX 77002-2914 |
| cr | | Universal Equipment, Inc., c/o Christopher J. Piasecki, Davidson Meaux, Post Office Box 2908, Lafayette, La 70502-2908 |
| cr | + | Valaris plc, Matthew D. Cavenaugh, Jackson Walker LLP, 1401 McKinney Street, Suite 1900 Houston, TX 77010-1900 |
| cr | + | Venice Energy Services Company, L.L.C., c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| cr | + | WFS Liquids LLC, c/o Steven W. Soule', Hall, Estill, et al., 320 South Boston Avenue, Suite 200, Tulsa, OK 74103-3705 |
| cr | + | Walter Oil & Gas Corporation, c/o Looper Goodwine P.C., 650 Poydras Street, Suite 2400, Attn: Paul J. Goodwine New Orleans, LA 70130-6171 |
| cr | + | West Cameron Dehydration Company, L.L.C., 1300 Main Street, Houston, TX 77002-6803 |
| cr | + | Westerngeco LLC, c/o Andrew A Braun, Gieger Laborde & Laperouse, LLC, Suite 4800, 701 Poydras Street, New Orleans, LA 70139 US 70139-7756 |
| cr | + | Williams Field Services-Gulf Coast Company LLC, c/o Steven W. Soule, Hall, Estill, et al., 320 South Boston Avenue, Suite 200 Tulsa, OK 74103-3705 |
| cr | + | Zurich American Insurance Company, c/o Duane Brescia, 720 Brazos Street, Suite 700, Austin, TX 78701-2531 |

TOTAL: 116

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | + | Email/Text: bnkatty@aldineisd.org | Oct 15 2021 19:42:00 | Aldine ISD, Legal Department, 2520 WWThorne Dr., Houston, TX 77073-3406 |
| cr | + | Email/Text: SPECK@LAWLA.COM | Oct 15 2021 19:42:00 | Atlantic Maritime Services, LLC, c/o Stewart F. Peck, Lugenbuhl Wheaton Peck Rankin & Hubbard, 601 Poydras Street, Suite 2775, New Orleans, LA 70130, UNITED STATES 70130-6041 |
| cr | | Email/Text: toriet@broussardbrothers.com | Oct 15 2021 19:42:00 | Broussard Brothers, Inc., 501 S. Main St., Abbeville, LA 70510, US |
| cr | | Email/Text: houston_bankruptcy@LGBS.com | Oct 15 2021 19:42:00 | Cypress-Fairbanks ISD, Linebarger Goggan Blair & Sampson LLP, C/O John P. Dillman, P.O. Box 3064, Houston, Tx 77253-3064 |
| cr | + | Email/Text: BKADDEN@LAWLA.COM | Oct 15 2021 19:42:00 | Deligans Valves, Inc., c/o Benjamin W. Kadden, Lugenbuhl Wheaton Peck Rankin & Hubbard, 601 Poydras Street, Suite 2775, New Orleans, LA 70130-6041 |
| cr | | Email/Text: houston_bankruptcy@LGBS.com | Oct 15 2021 19:42:00 | Galveston County, Linebarger Goggan Blair & Sampson LLP, C/O John P. Dillman, P.O. Box 3064, Houston, TX 77253-3064 |
| cr | | Email/Text: houston_bankruptcy@LGBS.com | Oct 15 2021 19:42:00 | Harris County, Linebarger Goggan Blair & Sampson LLP, C/O John P. Dillman, PO Box 3064, Houston, TX 77253-3064 |
| cr | + | Email/Text: BKADDEN@LAWLA.COM | | |

| | | | |
|---|---|---|---|
| | | Oct 15 2021 19:42:00 | Heartland Compression Services, L.L.C., c/o Benjamin W. Kadden, Lugenbuhl Wheaton Peck Rankin & Hubbard, 601 Poydras Street, Suite 2775, New Orleans, LA 70130-6041 |
| cr | + Email/Text: bankruptcy@islandoperating.com | | |
| | | Oct 15 2021 19:42:00 | Island Operating Company Inc, 770 S Post Oak Lane, Suite 400, Houston, TX 77056-6666 |
| cr | Email/Text: houston_bankruptcy@LGBS.com | | |
| | | Oct 15 2021 19:42:00 | Jefferson County, Linebarger Goggan Blair & Sampson LLP, c/o John P. Dillman, P.O. Box 3064, Houston, TX 77253-3064 |
| cr | Email/Text: houston_bankruptcy@LGBS.com | | |
| | | Oct 15 2021 19:42:00 | Matagorda County, Linebarger Goggan Blair & Sampson LLP, c/o John P. Dillman, Post Office Box 3064, Houston, TX 77253-3064 |
| op | Email/Text: EBN@primeclerk.com | | |
| | | Oct 15 2021 19:42:00 | Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165 |
| cr | + Email/Text: pwp@pattiprewittlaw.com | | |
| | | Oct 15 2021 19:42:00 | Plains Gas Solutions, c/o Law Ofc Patricia Williams Prewitt, 10953 Vista Lake Ct., Navasota, TX 77868, UNITED STATES 77868-6981 |
| cr | Email/Text: ar@supremeservices.com | | |
| | | Oct 15 2021 19:42:00 | Supreme Service & Specialty Co. Inc., Attn: Freddy Bourgeois, 204 Industrial Ave. C, Houma, LA 70363 |
| cr | + Email/Text: n.gault@trendsetterengineering.com | | |
| | | Oct 15 2021 19:42:00 | Trendsetter Engineering, Inc., 10430 Rodgers Road, Houston, TX 77070, UNITED STATES 77070-1642 |

TOTAL: 15

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| db | | Plan Administrator and Certain Post-Effective Date |
| cr | | 2M Oilfield Group Inc. |
| cr | | A-Port LLC |
| cr | | AGGREKO, LLC |
| cr | | AGI Industries Inc |
| cr | | AGI Packaged Pump Systems |
| cr | | Acadian Contractors, Inc |
| cr | | Ad Hoc Group of Secured Lenders |
| cr | | Anadarko E&P Company |
| cr | | Anadarko Petroleum Corp. |
| cr | | Anadarko U.S. Offshore LLC |
| cr | | Archrock Partners Operating, LLC and Archrock Serv |
| cr | | Aubrey Wild |
| cr | | Berkley Insurance Company |
| cr | | Burlington Resources Offshore |
| cr | | CCG Services (U.S.) Inc. |
| cr | | CGG Services (U.S.) Inc. |
| cr | | CNOOC Petroleum Offshore U.S.A. Inc. |
| cr | | CTD Legacy LLC |
| intp | | Cantor Fitzgerald Securities, as DIP Agent |
| cr | | Chevron U.S.A. Inc. |
| cr | | Cortland Capital Market Services LLC |
| cr | | Cox Oil, LLC, Cox Operating LLC, Energy XXI GOM, L |
| op | | David M. Dunn, as Plan Administrator |
| cr | | Deep Sea Development Services, Inc., 19219Katy Freeway, Suite 260, Houston, UNITED STATES |
| cr | | Derrick Daniels |
| cr | | Diamond Oil Field Supply Inc |
| cr | | Diverse Safety & Scaffolding, LLC |
| intp | | Ecopetrol America LLC |
| cr | | Ecopetrol America LLC |

| | |
|---|---|
| cr | Edward C Stengel |
| cr | Edward Randall, Individually and as Representative |
| intp | Eni Petroleum US LLC |
| intp | Eni US Operating Co. Inc. |
| cr | Enterprise Gas Processing, LLC |
| cr | ExxonMobil Corporation |
| intp | Facilities Consulting Group, LLC |
| cr | Florida Gas Transmission Company, LLC |
| cr | Florida Gas Transmission, LLC, |
| cr | Freeport-McMoRan Oil & Gas LLC |
| cr | Fugro USA Marine, Inc. |
| cr | George Canjar |
| cr | Goldman Sachs Bank USA |
| cr | HB Rentals, LC |
| cr | HCC International Insurance Company PLC |
| cr | HHE Energy Company |
| cr | Halliburton Energy Services, Inc. |
| cr | Hess Corporation |
| cr | Houston Energy Deepwater Ventures I |
| cr | Hunt Oil Company, Chieftain International (U.S.) L |
| cr | ITC Global, Inc. |
| cr | Infinity Valve & Supply LLC |
| cr | Intracoastal Liquid Mud, Inc., UNITED STATES |
| cr | Japex (U.S.) Corp. |
| cr | Jeffrey W Faw |
| cr | John A Sansbury, Jr |
| intp | Kilgore Marine |
| cr | LLOG Energy, L.L.C. |
| cr | LLOG Exploration Offshore, L.L.C. |
| cr | Lavaca County |
| cr | Liberty Mutual Insurance Company |
| cr | Linear Controls, Inc. |
| cr | Live Oak CAD |
| cr | Louisiana Safety Systems, Inc. |
| intp | Manta Ray Offshore Gathering Company, L.L.C. |
| cr | Mark Howard Gillespie |
| cr | Michael Howard Clark |
| cr | Moodys Investors Service, Inc. |
| cr | Multiklient Invest AS |
| cr | NOV Process & Flow Technologies US, Inc. |
| cr | National Oilwell Varco, L.P. |
| intp | Nautilus Pipeline Company, L.L.C. |
| cr | North American Specialty Insurance Company |
| cr | Oceaneering International Inc. |
| cr | Oil States Energy Services, LLC |
| cr | Partco, LLC |
| cr | Philadelphia Indemnity Insurance Company |
| cr | Process Piping Materials, Inc. |
| intp | QuarterNorth Energy LLC and certain of its affilia |
| cr | R360 Environmental Solutions, LLC |
| intp | RLI Insurance Company |
| cr | Renaissance Offshore, LLC |
| cr | Republic Helicopters, Inc. |
| cr | Ridgewood Energy Corporation |
| cr | Rio Grande City CISD |
| crcm | SLTL Ad Hoc Committee |
| cr | SM Energy Company |
| cr | Samson Contour Energy E & P, LLC |
| cr | Samson Offshore Mapleleaf, LLC |
| cr | Sea Robin Pipeline Company, LLC |
| cr | Shell GOM Pipeline Company, LLC |
| cr | Shell Pipeline, LLC |
| cr | Sirius America Insurance Company |

| | | |
|---|---|---|
| cr | | Sparrows Offshore, LLC |
| cr | | Starr County |
| cr | | State of Louisiana, Department of Natural Resource |
| cr | | Stingray Pipeline Company, LLC |
| intp | | Subsea 7 LLC |
| cr | | Superior Energy Services, L.L.C. |
| cr | | Talos Energy Inc. |
| cr | | Talos Energy LLC |
| cr | | Texaco Inc. |
| cr | | The Hanover Insurance Company |
| cr | | The Louisiana Land & Exploration Company |
| crcm | | The Official Committee of Unsecured Creditors |
| cr | | Toys O'Neil |
| cr | | Travelers Casualty and Surety Company of America |
| cr | | Trunkline Gas Company, LLC |
| cr | | U.S. Department of the Interior |
| cr | | Union Oil Company of California |
| cr | | Unocal Pipeline Company |
| cr | | Valero Marketing and Supply Company |
| cc | | Valero Marketing and Supply Company |
| cr | | W&T Energy VI, LLC |
| cr | | W&T Offshore, Inc. |
| cr | | Warrior Energy Services Corporation |
| cr | | Welltec, Inc. |
| cr | | Wild Well Control, Inc. |
| cr | | Workstrings International, LLC |
| cr | | XH LLC |
| cr | | XL Specialty Insurance Co |
| cr | | XL Systems, L.P. |
| cr | | XTO Energy, Inc. |
| cr | | XTO Offshore, Inc. |
| db | *+ | Fieldwood Energy Inc., 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |
| cd | *+ | Fieldwood Energy LLC, 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042-3623 |

TOTAL: 124 Undeliverable, 2 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 17, 2021          Signature:     /s/Joseph Speetjens