IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY III LLC,** *et. al.*, | § | Case No. 20-33948(MI) |
| | § | |
| Post-Effective Date Debtors.[1] | § | (Jointly Administered) |
| | § | |
| ------------------------------------------------- | § | |

**EMERGENCY MOTION OF QUARTERNORTH ENERGY LLC
TO ENFORCE THE CONFIRMATION ORDER AND PLAN**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 30, 2021.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **IF A HEARING ON THIS MATTER IS SCHEDULED, PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE. THE MEETING CODE IS "JUDGEISGUR". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE ISGUR'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS, AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy Inc. (4991); GOM Shelf LLC (8107); and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

1.  Nine months ago this Court found that BP Exploration & Production Inc. ("**BP**") was acting in bad faith and in material breach of its contracts with Fieldwood Energy LLC ("**Fieldwood**"). Since that ruling, BP has continued its pattern of bad faith and increasingly retaliatory conduct, with several recent events in just the past couple of months, that QuarterNorth Energy LLC ("**QuarterNorth**")[2] views as highly alarming and aggressive actions intended to injure QuarterNorth. Since September, BP has repeatedly curtailed millions of dollars' worth of production from QuarterNorth's Genovesa well in favor of themselves and production from third parties, in clear breach of BP's contract with QuarterNorth. After QuarterNorth voiced its concerns to BP over these inappropriate actions, BP's response entailed summarily removing QuarterNorth's Production Technician off of the Na Kika facility at 4:15 a.m. on a Sunday morning with no warning or credible basis. The removal of QuarterNorth's technician in this contrived manner, an individual with responsibility, in part, of monitoring BP's operations to ensure they are abiding by their contractual obligations, provided no opportunity for QuarterNorth to respond timely and had no justification. And now, in direct violation of this Court's Plan[3] and Confirmation Order, BP has engaged in a unilateral self-help setoff to avoid paying approximately $7 million that it clearly owes QuarterNorth.

2.  BP's actions not only are clear breaches of contract and a continued pattern of acting in bad faith, they appear to be retaliatory in nature and a clear flaunting of this Court's prior ruling. Consequently, QuarterNorth is forced, once again, to seek emergency relief to have this Court order BP to stop acting in bad faith.

---

[2] As explained below, QuarterNorth acquired certain interests, including the Genovesa well, from Fieldwood in August 2021 in a section 363 sale.

[3] Terms not otherwise defined herein have the meaning ascribed to them in the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 1751) (the "**Confirmation Order**").

2

3. Accordingly, QuarterNorth files this *Emergency Motion to Enforce the Confirmation Order and Plan* (the "**Motion**") against BP. For the reasons set forth below, QuarterNorth requests that this Court grant the Motion.

## INTRODUCTION

4. From the moment BP knew that Fieldwood was serious about developing the Genovesa prospect in the Gulf of Mexico—which shares a reservoir with BP's and Shell's Manuel prospect—BP's objective has been to circumvent its contractual obligations to Fieldwood (and now QuarterNorth) solely for BP's own benefit. In early 2019, BP and its executives, led by Starlee Sykes, BP's Senior Vice President for the Gulf of Mexico and Canada, began a campaign of bad faith conduct to intentionally delay Genovesa from coming online before Manuel. Eventually, Fieldwood had no choice but to bring BP's bad faith delay tactics to this Court's attention when immediate action was needed to perform long overdue repairs on the loop connecting Genovesa to the Na Kika host to allow Genovesa to come online and prevent Fieldwood from losing the entire lease on which Genovesa—an extremely valuable property—sits. After hearing testimony from numerous witnesses, including BP executive Kamil Gurses, in February 2021, this Court found that BP had materially breached its contractual obligations to Fieldwood and ordered BP to make the necessary repairs to allow Genovesa to come online.

5. Undeterred by this Court's finding, BP doubled down on its bad faith conduct by engaging in a variety of wrongful activities in retaliation for the fact that Genovesa came online before Manuel and the fact that QuarterNorth is pursuing damages for BP's breaches.

6. For example, shortly after QuarterNorth purchased Genovesa from Fieldwood in a section 363 sale in August, BP breached its contractual obligations to QuarterNorth by curtailing Genovesa's production at the Na Kika host in favor of lower priority third-party production, costing QuarterNorth millions of dollars. Then, in October 2021, in an attempt to prevent

3

QuarterNorth from having any oversight of its assets or BP's conduct, BP unilaterally—and without basis—removed QuarterNorth's production technician from Na Kika—even though QuarterNorth has the contractual right to have a technician present to oversee QuarterNorth's assets—at 4:15 a.m. on a Sunday, offering no explanation to the technician for his unexpected removal.  Fifteen minutes later, at approximately 4:30 a.m. on a Sunday, BP businessperson Aimee DiTommaso sent a letter to QuarterNorth terminating the parties' *Production Technician Services Contract*, claiming, without support, that QuarterNorth's technician had shared BP's allegedly confidential information with QuarterNorth.  BP has thus far been unable to provide any example of BP's confidential information that was purportedly shared with QuarterNorth, and QuarterNorth is not aware of any.  Shockingly, the only support BP provided a month later upon prodding by QuarterNorth, was ordinary course emails between QuarterNorth and BP operational personnel, which contained no confidential information and were never previously identified by BP as problematic.  Unfortunately, BP's continued needling of QuarterNorth has not stopped there.

7.  The latest example in a long line of BP's bad faith conduct, and the reason QuarterNorth is seeking emergency relief from the Court, is BP's plain violation of the Plan and Confirmation Order by unilaterally enforcing an alleged setoff right that does not exist.  On October 28, 2021, BP refused to pay October's share of the approximately $7 million it owes to QuarterNorth under a contract QuarterNorth acquired from Fieldwood free and clear of all setoff rights.[4]  BP's basis for refusing to pay is an alleged setoff right relating to a contract that QuarterNorth is not, and has never been, a party to and remains with Fieldwood.  As further explained below, BP has no legal basis to setoff amounts allegedly owed to it by Fieldwood against

---

[4] *See* Declaration of Erin M. Choi in Support of the Emergency Motion of QuarterNorth Energy LLC to Enforce the Confirmation Order and Plan ("**Choi Decl.**") (filed contemporaneously herewith), Ex. 1 ("**BP's Setoff Notice**").

4

amounts BP owes to QuarterNorth, and BP's resort to a self-help setoff right that does not exist is a violation of the Plan and Confirmation Order. QuarterNorth asks through this Motion that the Court order BP to comply with the Plan and Confirmation Order.

## JURISDICTION AND VENUE

8. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b). *See* Plan § 11.1(g) ("[T]he Bankruptcy Court shall retain exclusive jurisdiction . . . to issue and enforce injunctions . . . to restrain interference by any Person or other entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court[.]"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

9. This Court heard one discrete piece of BP's pattern of bad faith bullying in February 2021, but BP has done far more before and after, even to today. It is clear that BP's latest actions—this time relating to setoff—are retaliation for QuarterNorth holding BP to account for its bad acts.

**I.   From the Beginning, BP Played the Role of Bully by Engaging in a Pattern of Bad Faith and Disregard of Its Contractual Obligations to Fieldwood**

10. In late 2018, Fieldwood gave BP its detailed plans for drilling Genovesa and bringing it online by January 2020. A few months later, Fieldwood's drill ship began its campaign to drill Genovesa, and since then QuarterNorth believes that BP engaged in an orchestrated attempt, led by BP executives, to disregard BP's contractual obligations and engage in a pattern of bad faith behavior in a manner that benefits BP's own economic interests.

11. Before Fieldwood came to the Court in February 2021, BP took every opportunity to delay Genovesa from coming online. The following is only a brief snapshot of BP's myriad pre-2021 bad faith conduct:

- BP refused to permit a third-party contractor from developing software Na Kika needed to communicate with Genovesa until shortly after it was too late for the contractor to develop the software at the same time as Manuel's similar software.

- BP refused to schedule time at Na Kika to install the Genovesa software, raising excuse after excuse, every one of which Fieldwood answered.

- BP declared force majeure without justification, contrary to its own policies, and without doing so to similarly situated wells.

- BP withheld information about a leak on the Loop Subsea Production System (the "**LSPS**") near Fieldwood's assets, information it gathered during inspections in August 2015, December 2017, April 2018, and May 2019.

## II. Fieldwood Ultimately Brought BP's Bad Faith Contractual Breaches to the Court's Attention to Avoid Losing One of its Most Valuable Leases Due to BP's Conduct

12. Eventually, Fieldwood had no choice but to bring BP's bad faith breaches to the Court's attention in order to avoid the possibility of losing the entire lease on which Genovesa sits due to BP's acts. *See Emergency Motion to Compel BP Exploration & Production Inc. to Perform Pre-Petition Contracts* (ECF No. 792). In February 2021, after hearing hours of testimony about the need to repair the LSPS leak and prevent Fieldwood from losing its lease, this Court found BP's business executive, Kamil Gurses, had been intentionally misinterpreting the parties' contracts and that BP generally had acted in bad faith and in its own economic interest. *See generally* Feb. 2, 2021 Hr'g Tr. (ECF No. 854). The Court ordered BP to fulfill its contracts and ensure Genovesa came online before the lease expired. While BP has subsequently and publicly agreed that it breached its obligations and is not challenging the Court's findings—BP's counsel conceded "[t]here is no dispute going forward as to whether or not [the Court] found that [BP was] in breach of contract or any of the other findings that [the Court] made in February" (July 9, 2021 Hr'g 18:2–3, 5–6; 16:7–8; 16:17–20 (ECF No. 1884))—BP has done a private about-face on these exact same contractual provisions addressed by the Court, taking further tortured interpretations and applying them in new ways to harm QuarterNorth on an ongoing basis. *See Order Pursuant*

6

*to Sections 105(a) and 365 of the Bankruptcy Code Compelling Performance of Pre-Petition Contracts* (ECF No. 845).

13. Genovesa came online just in time, but BP has since otherwise ignored the Court's reprimand and resumed its pattern of bad faith conduct toward Fieldwood and now QuarterNorth.

**III. Notwithstanding the Import of This Court's February Order, BP Has Since Retaliated Against Fieldwood/QuarterNorth Through Bullying and Violations of its Contractual Obligations**

14. In response to this Court's order, BP decided to retaliate against QuarterNorth—who purchased Genovesa from Fieldwood in a section 363 sale in August 2021—for Genovesa coming online before Manuel and because QuarterNorth is seeking damages for BP's bad faith conduct.

15. One recent example of BP's retaliation was when BP curtailed Genovesa's production in favor of contractually lower priority wells, costing QuarterNorth millions of dollars. Under the parties' agreements, QuarterNorth has priority for production capacity at Na Kika, second only to certain of BP's wells.  Yet, when Na Kika had reduced capacity, BP gave QuarterNorth's production capacity to third-parties that paid higher usage rates than QuarterNorth. QuarterNorth declared a material breach of the parties' agreements, giving BP a thirty-day window in which to cure its breach.  If BP did not cure, QuarterNorth would have had another basis on which to remove BP as operator of the LSPS.  Just before the deadline, BP restored QuarterNorth's full production and moved on to its next bad faith tactic.

16. Another example of BP's retaliation was when BP removed QuarterNorth's technician from Na Kika—notwithstanding that QuarterNorth has a contractual right to have him present at Na Kika to oversee QuarterNorth's assets—at 4:15 a.m. on a Sunday.  BP told the

7

technician that he had not done anything wrong[5] and that BP and QuarterNorth were just "butting heads." However, fifteen minutes later, BP sent QuarterNorth a letter at 4:30 a.m. terminating the parties' *Production Technician Services Contract*, and claiming for the first time that the technician had disclosed BP's confidential information to QuarterNorth. To date, BP has still been unable to identify any confidential information that was disclosed to QuarterNorth, and QuarterNorth is not aware of any.

IV. **The Latest Example of BP's Bad Faith: BP's Violation of the Plan and Confirmation Order By Improperly Setting Off Fieldwood's Alleged Debt to BP Against QuarterNorth's Right to Payment Under a Contract QuarterNorth Acquired Free and Clear of All Setoff Rights**

17. The most recent example of BP's retaliation is the subject of this Motion: BP's unilateral and improper enforcement of a setoff right against QuarterNorth that does not exist and is a violation of the Plan and Confirmation Order. As a part of Fieldwood's bankruptcy, QuarterNorth purchased the right to the payments BP owed under the *Cash Consideration Exchange Agreement in respect of Mississippi Canyon Block 562* (the "**Isabela PSA**"). *See* Choi Decl. Ex. 2(attaching a true and correct copy of the Isabela PSA). Under the Isabela PSA, Fieldwood assigned and conveyed its interest in the Isabela well—a well that like Genovesa, connects to the Na Kika platform in the Gulf of Mexico via the LSPS—to BP. Isabela PSA § 2.1. In the Isabela PSA, BP agreed to pay Fieldwood $66 million in monthly installments starting in 2018 and continuing through December 2021. Isabela PSA § 3.1. BP paid Fieldwood these installments, as well as QuarterNorth shortly after the Effective Date. Now, however, BP refuses to pay QuarterNorth the remaining amounts due, claiming without basis it is setting off a debt the Post-Effective Date Debtors purportedly owe BP under the *Purchase and Sale Agreement in*

---

[5] In fact, BP thought so highly of this technician's work, it previously tried to hire him multiple times and even solicited him with a Human Resources offer packet, all in direct violation of the parties' contract's non-solicit clause.

*respect of Mississippi Canyon Block 519* (the "**Genovesa PSA**")[6] against what BP unquestionably owes QuarterNorth under the Isabela PSA.[7] This tortured argument is not new. Rather, BP is recycling it in a further effort to injure QuarterNorth.

A. **BP Repeatedly Asked the Court to Setoff BP's Debt to Fieldwood With No Legal Justification, and Each Time Withdrew its Request Before the Court Could Rule**

18. Prior to the Effective Date, BP repeatedly asked this Court to set off Fieldwood's purported debts against BP's. However, on each occasion BP withdrew its baseless arguments before the Court could rule.

19. First, on June 2, 2021, BP raised an objection to confirmation of Fieldwood's plan of reorganization. *See BP Exploration & Production Inc.'s Objection to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* ¶¶ 44–51 (ECF No. 1468) ("**BP's Objection**"). It argued that amounts BP owed under the Isabela PSA should be set off against amounts purportedly due under the Genovesa PSA. BP's Obj. ¶ 44. Even though it bore the burden of proof,[8] BP offered no legal basis for establishing its right to setoff, much less argument in its support. *See* BP's Obj. ¶ 45. Instead, it merely assumed it had such a right. BP's Obj. ¶ 45. Fieldwood pointed out these and other deficiencies in reply. *See Debtors' Memorandum of Law in Support of (I) Confirmation of Fourth Amended Joint*

---

[6] In the Genovesa PSA, in exchange for BP's interest in Genovesa, Fieldwood paid BP $5 million at closing and agreed to pay an additional $30 million if Genovesa was drilled and it successfully produced for 180 days. Genovesa PSA § 3.

[7] *See Declaration of Nathan Vaughn in Support of the Emergency Motion of QuarterNorth Energy LLC to Enforce the Confirmation Order and Plan* ("**Vaughn Decl.**") ¶ 4 (filed contemporaneously herewith). BP still owes $6,970,816.40 under the Isabela PSA, part of which was due in October, part will be due on November 30, 2021, and the rest by December 31, 2021. *Id.* Each month's payment is based on a formula with the production that occurred two months before as an input. *Id.* It is unclear to QuarterNorth precisely how much of the approximately $7 million was due in October and how much will be due on November 30, 2021. *Id.* Both likely should be multi-million dollar payments. *Id.* Whatever of the $7 million remains, BP is obligated to pay by December 31, 2021. *Id.*

[8] *In re Corp. Res. Servs., Inc.*, 564 B.R. 196, 204 (Bankr. S.D.N.Y. 2017) (case cited at BP Obj. ¶ 45) ("The creditor asserting the right to setoff has the burden to establish that the right to setoff exists.").

9

*Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Omnibus Reply to Objections Thereto* ¶¶ 128–133 (ECF No. 1553) ("**Fieldwood's Reply**").[9]

20. Second, a few weeks later on June 20, 2021, BP filed its *Motion of BP Exploration & Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Effectuate Setoff of Mutual Obligations* (ECF No. 1666) ("**BP's Setoff Motion**"), attempting to remedy the fatal deficiencies of BP's Objection. Fieldwood's Plan confirmation hearing began the next day (the "**Confirmation Hearing**"). During the Confirmation Hearing, BP and Fieldwood negotiated to preserve BP's right to pursue the arguments made in BP's Setoff Motion. Accordingly, the parties added a paragraph to what later became the Confirmation Order, saying the Confirmation Order did not alter or impair any valid rights, including of setoff. *See* Confirm. Ord. ¶ 133 ("**Paragraph 133**"). Based on this language, BP withdrew BP's Objection, saying the Confirmation Order "addresses the concerns, the commercial issues that BP raised." June 24, 2021 Hr'g Tr. 69:3–6 (ECF No. 1787). BP also noted this "language confirms that BP's set off rights are reserved and preserved, which is the subject of [BP's Setoff Motion] set for hearing" on July 16, 2021. June 24, 2021 Hr'g Tr. 69:9–13.

21. Thereafter, on July 8, 2021, Fieldwood timely opposed BP's Setoff Motion. *See Debtors' Opposition to BP Exploration & Production Inc.'s Motion for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Effectuate Setoff of*

---

[9] Among other things, Fieldwood showed that debts must be "mutual" as to party and debt and that under Supreme Court precedent, the Bankruptcy Code does not create a right of setoff but only preserves whatever right to setoff exists from other sources of law. Fieldwood's Reply ¶ 129. BP had offered no law or argument for what right to setoff already existed. Fieldwood's Reply ¶ 130. Further, BP's debt to Fieldwood under the Isabela PSA was partly due every month, while any possible debt under the Genovesa PSA was not yet, and might never have come, due. Fieldwood's Reply ¶ 131. There was even a bona fide dispute over whether Fieldwood would owe anything to BP under the Genovesa PSA because of BP's bad faith conduct regarding Genovesa. Fieldwood's Reply ¶ 131; *see* Feb. 2 Hr'g Tr. 231:12–13 ("BP is acting in a manner that is in bad faith under the contract.").

10

*Mutual Obligations* (ECF No. 1843) ("**Fieldwood's Opposition**").[10]  Among other things, Fieldwood pointed out that it owed BP nothing under the Genovesa PSA at least until Genovesa had successfully produced for 180 days, which had not yet happened. *See* Fieldwood's Opp. ¶ 15. After the Court continued the hearing at BP's request and over Fieldwood's objection, BP eventually abandoned BP's Setoff Motion altogether. *See* Notice of Withdrawal.

    **B.**    **After Abandoning its Setoff Motion, BP Now Attempts Unilaterally to Setoff Certain Obligations it Owes to QuarterNorth Against Fieldwood's Purported Debt to BP in Violation of this Court's Confirmation Order**

22.  On August 27, 2021, the Plan went effective. *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Occurrence of Effective Date* (ECF No. 2016). Accordingly, as of August 27, 2021, Fieldwood rejected the Genovesa PSA. Plan § 8.1(a). On the same day the Plan went effective, "all Credit Bid Acquired Interests"—including the Isabela PSA[11]—"[were] transferred to, and the Credit Bid Acquired Interests owned by the Debtors [were] vest[ed] in the Credit Bid Purchasers, free and

---

[10] Three days before the hearing on BP's Setoff Motion, BP filed an emergency motion to continue the hearing, claiming it wanted an opportunity "to reach a commercial resolution of [the parties'] outstanding disagreements . . . ." *Emergency Motion to Continue Hearing on Motion of BP Exploration and Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(D) Authorizing Relief from the Automatic Stay to Effectuate Setoff of Mutual Obligations* ¶ 9 (ECF No. 1874) ("**BP's Emergency Motion to Continue**"). The same day, the Court approved BP's Emergency Motion to Continue and requested an agreed order that "does not prejudice Fieldwood's ripeness defense in any manner." *Order for Submission of Proposed Order, Approved as to Form* (ECF No. 1877). The Court continued the hearing to July 28, 2021, preserving Fieldwood's ripeness defense. *Agreed Order Granting BP Exploration & Production Inc.'s Emergency Motion to Continue Hearing on its Motion for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Effectuate Setoff of Mutual Obligations* (ECF No. 1886). The commercial negotiations failed, but two days before the continued hearing on BP's Setoff Motion, BP withdrew its motion anyways. *Notice of Withdrawal Without Prejudice of Motion of BP Exploration & Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Effectuate Setoff of Mutual Obligation* (ECF No. 1921) ("**Notice of Withdrawal**"). In its Notice of Withdrawal, BP claimed to "reserve[] and preserve[] its right to reassert [BP's Setoff Motion] upon the Genovesa Well achieving 180 days of production." *Id.* at n.2.

[11] The term "Credit Bid Acquired Interests" is defined as the "Acquired Interests" as found in the *Purchase and Sale Agreement Among Fieldwood Energy LLC and its Affiliates Signatory Hereto as Sellers QuarterNorth Energy LLC as Buyer and Mako Buyer 2 LLC as Buyer 2* (ECF No. 2013, Ex. F) (the "**Credit Bid PSA**"). Plan § 1.1. The Acquired Interests include "Other Assigned Contracts" (Credit Bid PSA § 1.2(z)), which is a part of "Assigned Contracts" (*id.* at 178), which includes "Assigned 365 Contracts" (*id.* at 162), which includes contracts specified on Schedule 6.7(a) (*id.* § 6.7), which includes the Isabela PSA (*id.* at 918).

11

clear of all . . . rights of offset or recoupment . . . off-sets, recoupments . . . and other interests of any kind or nature whatsoever . . . ." Confirm. Order ¶ 18; *see* Plan § 8.1(a)(v). The Confirmation Order makes clear that, as of that day, the Credit Bid Purchaser (QuarterNorth):

> shall [not] have any successor or vicarious liability of any kind or character whether known or unknown . . . , whether fixed or contingent, whether now existing or hereafter arising, with respect to the Credit Bid Acquired Interests or any Liabilities . . . of the Debtors . . . other than the Credit Bid Assumed Liabilities[12] . . . .

Confirm. Order ¶ 20.[13]

23. BP thereafter continued to make monthly payments to QuarterNorth under the Isabela PSA through September 2021.

24. On October 28, 2021, three days after the next installment was due, BP sent QuarterNorth BP's Setoff Notice, saying that it refused to pay QuarterNorth the $6,970,816.40 that BP still owed —that is, the entire outstanding balance on the Isabela PSA. As a basis for BP's refusal to pay QuarterNorth this amount owed, BP claimed that the debt of a different entity—the ***Post-Effective Date Debtors***—owed to BP under a different contract—the Genovesa PSA—could be set off against payments that BP owed ***QuarterNorth*** under the Isabela PSA. BP has, thus, said it intends to rely on this same meritless rationale to deny paying QuarterNorth the amounts due under the Isabela PSA in November and December 2021.

---

[12] The "Credit Bid Assumed Liabilities" is defined as the "Assumed Liabilities" as found in the Credit Bid PSA. Plan § 1.1. The Isabela PSA is an "Other Asset" (*see* Credit Bid PSA § 1.2(z)) (and though not relevant, so is Genovesa itself, *id*. § 1.2(p)), which means Credit Bid Purchaser assumed Liabilities regarding them "only to the extent that such Liabilities arise after Closing." BP has argued the liability for the Genovesa PSA arose *pre*-petition. BP's Setoff Mot. ¶ 13.

[13] *See* June 23, 2021 Hr'g Tr. 67:24–68:3 (ECF No. 1773) (Ad Hoc Group of Secured Lender's Counsel: "[W]ith respect to prepetition agreements that the Debtors had merely to the extent that we are purchasing those assets whose obligations should not ride along they should be addressed in the Plan as we believe they would be as unsecured claims." Court: "[I]f we approve this Plan, your client is buying free and clear of the kinds of claims you're describing, period.").

25. BP's attempt to set off its debt to QuarterNorth against the debt of the Post-Effective Date Debtors violates the free and clear language in the Plan and Confirmation Order. Therefore, QuarterNorth asks that the Court find BP violated the Confirmation Order and Plan and order BP not to do so again.

## ARGUMENT

### I. BP's Improper Self-Help Setoff Is A Violation of the Plan and Confirmation Order

26. As explained above, the Plan and Confirmation Order make clear that QuarterNorth acquired its rights in the Isabela PSA "free and clear" of any claim of any sort whatsoever. *E.g.*, Confirm. Order ¶¶ 18, 20. The language specifically provides that QuarterNorth's acquisition was "free and clear of all . . . ***rights of offset*** or recoupment . . . ***off-sets***, recoupments . . . and other interests of any kind or nature whatsoever . . . ." Confirm. Order ¶ 18 (emphasis added).

27. Nothing in Paragraph 133—or elsewhere—gives BP the right to setoff payments owed by the Post-Effective Date Debtors against payments BP owes to an entirely different entity, QuarterNorth. Paragraph 133—which BP points to in its October 28, 2021 letter explaining its resort to self-help—contains two subparagraphs mentioning setoff, neither of which says what BP suggests:

> BP. The terms of this paragraph shall apply to the BP Entities [including BP Exploration & Production Inc.] and the Executory Contracts identified on the Schedule of Assumed Contracts between any of the Debtors and any BP Entity (the "**BP Executory Contracts**")[14]: . . .
>
> ii. To the extent that a BP Executory Contract is assumed, assumed and assigned or assumed and allocated, such assumption or assumption and assignment or assumption and allocation shall result in the full release and satisfaction of only those Claims based on a default existing as of the

---

[14] The Isabela PSA is a BP Executory Contract, but the Genovesa PSA is not. *See Notice of Filing of Sixth Amended Plan Supplement in Connection with Modified Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors*, Ex. D at 32 (ECF No. 2013) (Schedule of Assumed Contracts, contract no. 1018).

13

      Effective Date with respect to such BP Executory Contract. For the avoidance of doubt, the Plan and this Order shall not alter any of the terms under the BP Executory Contracts including, without limitation, any arbitration rights or any valid netting (either based on setoff or recoupment).

  iii. The assumption, assumption and assignment, or assumption and allocation of any BP Executory Contract shall not alter, impair or otherwise affect any of the parties' respective rights and obligations under the BP Executory Contracts, including, without limitation, any valid netting (either based on setoff or recoupment) under the BP Executory Contracts or pursuant to applicable law (unless it is inconsistent with the applicable BP Executory Contract); and any rights for arbitration.

  28. Contrary to BP's assertions, subparagraph ii. merely says the Plan and Confirmation Order do not alter the terms of the Isabela PSA. No term in the Isabela PSA provides for netting between the Isabela PSA and the Genovesa PSA. Subparagraph iii. likewise does nothing more than preserve the status quo: it says none of the contract terms are changing. Most simply, it says "the assumption and assignment of the Isabela PSA shall not affect any of the parties' respective rights and obligations under the Isabela PSA." It goes on to clarify that if BP had a right to net mutual debts, its right to do so would not change, and it has not changed. In other words, BP is welcome to net mutual debts between BP and QuarterNorth and between BP and the Post-Effective Date Debtors, to the extent allowed by law and contract. However, that is entirely different from the improper setoff BP attempts to effectuate now.

  29. Additionally, BP had no "valid" right of setoff between the Isabela PSA and the Genovesa PSA to be preserved.[15] As of the Confirmation Hearing through the Effective Date, BP had no right to setoff anything because Fieldwood owed it nothing. In Texas, the party seeking setoff must show that it has "a *legal right* to recover the relevant sums," that is, the right to sue for

---

[15] Aside from the argument that Genovesa has not yet reached 180 days of production, the arguments made in Fieldwood's Reply ¶¶ 128–133 are incorporated herein.

14

such sums. *Texas Dept. of Mental Health & Mental Retardation v. Petty*, 817 S.W.2d 707, 719–20 (Tex. App. Austin 1991) (emphasis original), *aff'd*, 848 S.W.2d 680 (Tex. 1992) (per curiam) *and disapproved of on other grounds by Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (disapproving *Petty* for its analysis of notice requirements); *see Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987). Until Genovesa reached the 180th day of its production on or around October 26, 2021, BP had no arguable right to recover $30 million from Fieldwood; it had no right to sue. Thus, there was no "valid netting" between the Genovesa PSA and the Isabela PSA to be preserved.

30. BP itself evidently did not believe $30 million was already covered in Paragraph 133. If BP had believed Paragraph 133 settled the question of BP's right to set off the Post-Effective Date Debtors' debts against QuarterNorth, it would have withdrawn BP's Setoff Motion immediately because the parties had settled the matter. Instead, as BP was introducing Paragraph 133 to the Court, it reminded the Court that BP's purported right to setoff was still to be adjudicated on July 16, 2021. June 24, 2021 Hr'g Tr. 69:9–13. Then, as the parties were filing their witness and exhibit lists for the hearing, BP filed an emergency motion to continue the hearing—which Fieldwood opposed—for the sake of commercial negotiations, not because Paragraph 133 already decided the question. BP's Emerg. Mot. to Continue ¶ 10. Weeks later, despite the commercial negotiations being fruitless, BP unilaterally withdrew BP's Setoff Motion 36 hours before the hearing to resolve it, again making no reference to Paragraph 133. *See* Notice of Withdrawal.

31. Fieldwood, of course, did not believe this paragraph amounted to a $30 million concession. Only a couple of weeks after the Confirmation Hearing, Fieldwood timely filed its opposition to BP's Setoff Motion explaining that BP's claimed "right" was baseless as manifestly

15

unripe. *See* Fieldwood's Opp. In fact, not only was BP's purported right to setoff unripe, as was the focus of Fieldwood's Opposition, but as stated in Fieldwood's confirmation brief, it was meritless even once ripe because there is no mutuality, among other things. *See* Fieldwood's Reply ¶¶ 128–133.

32. At bottom, neither BP nor Fieldwood thought Paragraph 133 did anything but maintain the status quo—which was that BP had no setoff right. Now, BP offers a tortured reading of Paragraph 133 in a misplaced effort to extract $30 million it had no right to collect from Fieldwood and has no right to collect from QuarterNorth. In doing so, BP has violated, and is continuing to violate, the Plan and Confirmation Order and is depriving QuarterNorth of its free and clear rights thereunder. The Court should, therefore, grant this Motion and order BP to comply with the Plan and Confirmation Order.

## BASIS FOR EMERGENCY RELIEF

33. QuarterNorth respectfully requests emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i). BP has already deprived newly-formed QuarterNorth of millions of dollars of cash—to which it is entitled—and BP likely intends to withhold millions of dollars in November and December based on its same baseless rationale. Receipt of this cash was expressly contemplated by the Plan, and BP is flouting this Court's Confirmation Order in yet one more instance of its bad faith behavior. For these reasons and as detailed above, QuarterNorth respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

## RELIEF REQUESTED

34. The Confirmation Order ¶ 157 and Plan § 10.5 enjoined BP from interfering with the implementation of the Plan. QuarterNorth respectfully requests that the Court find BP violated these injunctions when BP disregarded the plain terms of Confirmation Order ¶¶ 18 and 20 and

attempted to set off debts BP owes QuarterNorth under the Isabela PSA against what the Post-Effective Date Debtors allegedly owe BP under the Genovesa PSA. QuarterNorth further requests that the Court order BP to comply with the Confirmation Order and Plan and award QuarterNorth its reasonable and necessary attorneys' fees (in an amount to be determined by the Court based on evidence presented) under Section 38.001(b)(8) of the Texas Civil Practice & Remedies Code based on BP's breach of the Plan.

## **CONCLUSION**

35. For these reasons, QuarterNorth respectfully asks the Court to find that BP's self-help setoff is a violation of the Plan and the Court's Confirmation Order, and order BP not to do so again and award QuarterNorth its reasonable and necessary attorneys' fees under Section 38.001(b)(8) of the Texas Civil Practice & Remedies Code.

## **NOTICE**

36. Notice of this Motion will be served on any party entitled to notice pursuant to the Bankruptcy Rules and any other party entitled to notice pursuant to Local Rule 9013-1(d), including BP's counsel.

Dated: November 15, 2021
Houston, Texas

    */s/ Paul R. Genender*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
       Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
       Erin.Choi@weil.com

*Attorneys for QuarterNorth Energy LLC*

**Certificate of Conference**

QuarterNorth's counsel and BP's counsel conferred on November 15, 2021 in an attempt to resolve the Motion, but were unable to resolve the Motion.

                                                    */s/ Paul R. Genender*
                                                   Paul R. Genender

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

                                                    */s/ Paul R. Genender*
                                                   Paul R. Genender

**Certificate of Service**

I hereby certify that, on November 15, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                    */s/ Paul R. Genender*
                                                   Paul R. Genender