BP EXHIBIT 7

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-33948-11 |
| | § | JOINTLY ADMINISTERED |
| | § | HOUSTON, TEXAS |
| FIELDWOOD ENERGY, LLC, | § | FRIDAY, |
| | § | JUNE 25, 2021 |
| DEBTORS. | § | 7:59 A.M. TO 9:45 A.M. |

CONFIRMATION HEARING DAY FIVE (VIA ZOOM)

BEFORE THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                          SEE NEXT PAGE

COURTROOM DEPUTY:                     TYLER LAWS

(Recorded via CourtSpeak; no log notes)

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

<u>APPEARANCES (VIA ZOOM)</u>:

| | |
|---|---|
| FOR THE DEBTORS, FIELDWOOD ENERGY, LLC: | WEIL GOTSHAL & MANGES, LLP<br>Clifford Carlson, Esq.<br>Alfredo Perez, Esq.<br>700 Louisiana Street<br>Suite 1700<br>Houston, TX 77002<br>713-546-5248 |
| | WEIL GOTSHAL & MANGES, LLP<br>Jessica Liou, Esq.<br>767 Fifth Avenue<br>New York, NY 10153<br>212-310-8817 |
| FOR US DEPARTMENT OF THE INTERIOR: | DEPARTMENT OF JUSTICE<br>John Zachary Balasko, Esq.<br>P.O. Box 875<br>Ben Franklin Station<br>Washington, DC 20044<br>202-514-7162 |
| FOR APACHE CORPORATION: | HUNTON ANDREW KURTH, LLP<br>Robin Russell, Esq.<br>600 Travis Street<br>Suite 4200<br>Houston, TX 77002<br>713-220-4086 |
| FOR THE AD HOC GROUP OF SECURED LENDERS: | DAVIS POLK & WARDWELL, LLP<br>Damian Schaible, Esq.<br>450 Lexington Avenue<br>New York, NY 10017<br>212-450-4580 |
| FOR EVEREST REINSURANCE COMPANY: | CHIESA SHAHINIAN & GIANTOMASI<br>Darren Grzyb, Esq.<br>Scott Zuber, Esq.<br>One Boland Drive<br>West Orange, NJ 07052<br>973-530-2077 |
| FOR TRAVELERS CASUALTY, LIBERTY MUTUAL INS. CO., THE HANOVER INS. CO., AND XL SPECIALTY INS.: | LANGLEY, LLP<br>Brandon Bains, Esq.<br>1301 Solana Blvd.<br>Bldg. 1, Suite 1545<br>Westlake, TX 76262<br>214-722-7171 |

<u>APPEARANCES (CONT'D VIA ZOOM)</u>:

FOR ENI PETROLEUM US, LLC          BRACEWELL, LLP
AND ENI US OPERATING CO,           Mark Dendinger, Esq.
INC.:                              185 Asylum Street, 34th Floor
                                   Hartford, CT 06103
                                   860-256-8541


FOR NORTH AMERICAN SPECIALTY       LAW OFC OF T. SCOTT LEO, PC
INSURANCE COMPANY:                 Ralph Kooy, Esq.
                                   100 N. LaSalle St., Suite 51
                                   Chicago, IL 60602
                                   312-857-0910


FOR LEXON INSURANCE COMPANY:       HARRIS BEACH, PLLC
                                   Lee Woodard, Esq.
                                   333 W. Washington St., Ste. 200
                                   Syracuse, NY 13202
                                   315-423-7100


FOR COX OIL, LLC:                  LOCKE LORD, LLP
                                   Michael Kind, Esq.
                                   111 S. Wacker Drive, Ste. 4100
                                   Chicago, IL 60606
                                   312-201-2392


FOR CHEVRON USA:                   ANDREWS MYERS, PC
                                   Edward Ripley, Esq.
                                   1885 St. James Place, 15th Fl.
                                   Houston, TX 77056
                                   713-850-4200


FOR XTO OFFSHORE, INC.:            FORSHEY PROSTOK, LLP
                                   Suzanne Rosen, Esq.
                                   777 Main Street, Suite 1550
                                   Forth Worth, TX 76012
                                   817-877-8855


FOR CONOCOPHILLIPS COMPANY         LOCKE LORD, LLP
AND McMORAN OIL AND GAS, LLC:      Omer F. Kuebel, III, Esq.
                                   601 Poydras Street, Ste. 2660
                                   New Orleans, LA 70130
                                   504-558-5155


FOR ATLANTIC MARITIME              LUGENBUHL WHEATON, ET AL.
SERVICES:                          Benjamin Kadden, Esq.
                                   601 Poydras Street, Ste. 2775
                                   New Orleans, LA 70130
                                   504-568-1990

1        <u>HOUSTON, TEXAS; FRIDAY, JUNE 25, 2021; 7:59 A.M.</u>

2        THE COURT: All right.  Good morning everybody.

3 We're going to go back on the Record from yesterday's

4 confirmation hearing in Fieldwood.

5        Mr. Carlson, can you tell me where we are?

6        MR. CARLSON:  Good morning, Your Honor.  Cliff

7 Carlson on behalf of Fieldwood.  So, Your Honor, I think we've

8 made a lot of progress overnight.  We've continued to work

9 with the parties and I think we've narrowed the issues to

10 either three or four, three or four issues that we'll see and

11 we'll beat them up before we're through, and we may need just

12 a little bit of guidance from the Court on those issues.  But

13 we did, as you have up here, we did file the amended

14 confirmation order, and then we've also filed an Amended Plan

15 and blackline at 1731 and 1732.

16        But I think it's essentially in the order the Apache

17 provisions in Paragraph 82, the non-Apache sureties claim

18 reservation of rights that was the subject of a lot of

19 discussion yesterday, and Paragraph 97.  One potential issue

20 with the Chevron paragraph, and then to the extent that the

21 Court deems it necessary some type of -- the issue raised by

22 Mr. Bains I think at the end of the hearing regarding

23 contribution and whether any reservation of rights are

24 necessary there.

25        So in my mind those are sort of the four open issues

1      that we have.  Others can correct me if they think there's

2      anything else outstanding, but I think that's where we are.

3              THE COURT:  All right.  Well, why don't we -- I've

4      got somebody else that wants to be activated.  Hold on.

5          (Pause in the proceedings.)

6              THE COURT:  Oh, that was just you pressing -- after

7      I already had you activated.

8              All right.  Look, I think what's going to make the

9      most sense is let you walk us through, and as we get to areas

10     that people -- the areas you've just identified, or any other

11     area that anyone wants to talk about, people can press five

12     star and we'll hear what they have to say.  And on the ones

13     that you've just identified we'll obviously, you know, expect

14     it, but on others people may have other issues.

15             MR. CARLSON:  That works.

16             THE COURT:  So I notice that you changed Court to

17     Bankruptcy Court everywhere.  I assume nobody cares about

18     that.  There's a reference to Paragraph 149 that I believe

19     should be 150, but we'll get there in a moment.

20             MR. CARLSON:  Okay.

21          (Reviewing document.)

22             THE COURT:  I think that this reference in HHH, and

23     maybe we ought to have Mr. Balasko be the one to confirm it,

24     should refer to Paragraph 150 and not to Paragraph 149.  I may

25     be wrong about that.

1          MR. CARLSON:  That's very possible.  We did get that

2     comment from Mr. Balasko and I think the paragraph moved by

3     one, and that's the --

4          THE COURT:  That's what it looks like happened.  I

5     just want to be sure we get it right so.

6          Mr. Balasko, should that say 150 or 149?

7          MR. BALASKO:  Yes, Your Honor, that should be 150,

8     it looks like the paragraphs moved after I sent that change

9     over.

10          THE COURT:  All right.  Thank you.

11          MR. BALASKO:  And I apologize, Your Honor, that

12     change appears in one other spot, so it needs to be consistent

13     in both changes.

14          THE COURT:  I didn't get through the whole redline

15     before I had to come out, so that's the first place I found

16     it.

17          (Reviewing document.)

18          MR. CARLSON:  This is just a definitional change.

19          THE COURT:  All right.

20          (Reviewing document.)

21          MR. CARLSON:  And this would be the addition for

22     Mr. Skelton's client that we added in.

23          (Reviewing document.)

24          MR. CARLSON:  Your Honor, I think this may be the

25     first point of potential contention, but we may be resolved,

1    but I think this is the -- this is the Apache language that I

2    was referencing.

3              THE COURT:  Okay.

4           (Reviewing document.)

5              MR. CARLSON:  Because I think Ms. Russell had just a

6    change, I don't know if she would like to comment on whether

7    we're -- or whether there is an additional change here that --

8              THE COURT:  Ms. Russell, good morning.

9              MS. RUSSELL:  Good morning, Your Honor.  We have

10   minor changes to this which shifted it to the lender.  The

11   Debtor has signed off.  I don't think they are controversial,

12   but they are further modifications to the new language that

13   you have on the screen.  And we can read it or we can wait

14   until the end of the hearing, see if the lenders have had a

15   chance to reply to it.

16             THE COURT:  Now's the time, so why don't you read it

17   in and let's see what the lenders think.

18             MS. RUSSELL:  Okay.  So I'm going to begin with the

19   parenthetical other than with respect to any new co-entity.

20             THE COURT:  All right.

21             MS. RUSSELL:  Okay.  And I'll stop when I get to the

22   additions.  So --

23             THE COURT:  And let me just say --

24             MS. RUSSELL:   -- other than --

25             THE COURT:   -- Ms. Russell, if it is easier for you

1    to display it, I can also just have your screen show up.  So

2    you can either read it or display, whichever one you want.  I

3    just want to resolve it.

4           MS. RUSSELL:  All right.  Let's see then if we can

5    display it.  I have it in an email, but I can maximize my

6    screen.

7           THE COURT:  Okay.  You need to accept sharing.

8           MS. RUSSELL:  All right.

9           THE COURT:  There we go.

10           MS. RUSSELL:  Right.  So legal fees here are in red.

11    The Fieldwood One entity has a subsidiary, Shelf, that will go

12    with it, so we needed to capture that this provision would

13    also apply to that subsidiary.  And then ii in bold is just a

14    further clarification.

15           THE COURT:  All right.  Are there objections to the

16    Apache proposed language?

17      (No audible response.)

18           THE COURT:  Mr. Zuber, I see you talking, I want to

19    be sure you're not talking to me, because I can't hear you.

20      (No audible response.)

21           THE COURT:  Mr. Schaible.

22           MR. SCHAIBLE:  Your Honor, we have no objection to

23    this language.

24           THE COURT:  All right.  If anyone has any objection

25    to this language, please press five star.

1    (No audible response.)

2        THE COURT:  All right.  I will incorporate the

3    language proposed by Apache into the confirmation order.

4    Thank you, Ms. Russell.

5        MS. RUSSELL:  You're welcome, Your Honor.

6        THE COURT:  We'll go back now to my screen and we'll

7    look at the redline again.  Okay.

8        (Reviewing document.)

9        THE COURT:  So I don't know that means.  Our order

10   deals pretty extensively with the affect of the order and

11   confirmation itself.  Does Everest's reservation of rights

12   mean that they are not bound by the order, Mr. Carlson?  Or

13   are they still bound by the order and subject to the order

14   whatever rights they have, they have?

15       MR. CARLSON:  The latter, Your Honor, they are bound

16   by the order.  Plan documents should be defined to capture the

17   order so it reads (glitch in the audio).

18       THE COURT:  Would you just look at the -- I don't

19   want to lose where we are on my screen, do you know if Plan

20   documents includes this order?

21       MR. CARLSON:  It should.  Let me confirm it.  One

22   second.

23       THE COURT:  All right.  Mr. Grzyb, go ahead, please.

24       MR. GRZYB:  Yeah, just by way of context there's --

25   Everest obviously has the bond that we issued in favor of

1    Apache that was part of the Apache term sheet, and we also
2    have issued a number of other bonds that are not -- that does
3    not mean Apache is an obligee and we're just clarifying that.
4    Only the bond in favor of Apache was part of the term sheet
5    and everything else is subject to the Plan documents,
6    including this order.  I have no problem if the provision
7    includes the order.
8                THE COURT:  I'm good.  Thank you, sir.
9                MR. Carlson.
10               MR. GRZYB:  Thank you.
11               MR. CARLSON:  Yes, and I have confirmed in
12   Paragraph -- on the order --
13               THE COURT:  Thank you.
14               MR. CARLSON:   -- it does that.
15          (Reviewing document.)
16               THE COURT:  All right.  I think this was also one
17   that you said might be controversial.  Let me hear from
18   parties about this.
19               Mr. Bains and Mr. Dendinger, let me enable both of
20   your lines.  Go ahead, please.
21               MR. BAINS:  Good morning, Your Honor.  Brandon Bains
22   on behalf of Travelers, Liberty, Hanover and XL.  Really just
23   a clarifying question regarding what's on your screen right
24   now that I raised with the Debtors and the lenders.  I have
25   not heard back.  I'm unclear what the difference is, the

1    distinction that's trying to be drawn between X and Y.  I

2    certainly recall the conversation we had yesterday with

3    Mr. Schaible on post-effective date activities.  I understand

4    that's been the Court's ruling.  So I'm not clear what we're

5    trying to do there and what we're trying to cover.

6            THE COURT:  Let me tell you what I meant because I

7    think this does capture what I meant, and then we'll see if

8    you have an objection to this.  So there's a pretty good body

9    of law that says that an owner of property has a continuing

10   duty that arises constantly to comply with, you know,

11   applicable law with respect to health and safety issues.

12           So there's an argument that the day after the

13   effective date the credit bid purchaser would have a P&A

14   obligation with respect to predecessor activity, and that

15   would accrue every day.  This says that the subrogation rights

16   will only apply if both accrues and relates to activity

17   itself, not mere ownership of the property.

18           That's why I think it probably does capture it.  But

19   if you think that's incorrect, then why don't you go ahead.

20   But that's what I'm intending and I think this captured what I

21   intended.

22           MR. BAINS:  I think there, Your Honor, then Y should

23   probably say relates to post-effective date activities as

24   opposed to arises from, and I think that's what you just said,

25   to be consistent with what your intentions are.  Obviously we

1    have all our objections to all of this stuff, we --

2         THE COURT:  All right.  I got that.  Tell me the

3    difference between -- in your mind and then let me hear from

4    others the difference between relates to post-effective date

5    activity and arises from post-effective date activity.  I'm

6    not sure I'm appreciating the difference and I want the

7    parties to be able to articulate that.

8         MR. BAINS:  To be completely frank, I was parroting

9    back what your language was there, just making sure you

10   thought there was a difference, that it was clear based on

11   what you just said that the order reflected that.  I'm not

12   near enough of a scholar of the English language to be able to

13   pontificate on arise versus relate.  But I just wanted to make

14   sure it conformed with your intentions.

15        THE COURT:  No, I think this -- I think the language

16   there is good for what I intend.  So if that's what we're

17   doing, then I'm going to leave this language alone.

18        All right.  Any other objections to it with that

19   clarification by the Court?

20      (No audible response.)

21        THE COURT:  Okay.  Thank you.

22        Sorry, Mr. Dendinger, you did not speak up, but I

23   enabled your line.  Did you have something you wanted to add?

24        MR. DENDINGER:  Yes, Your Honor.  Thank you.  For

25   the Record, Mark Dendinger, Bracewell, for ENI Petroleum US,

1     LLC and ENI US Operating Co, Inc.  Your Honor, we have

2     suggested two changes to this paragraph of the order that we

3     believe is consistent with the Court's thinking yesterday.

4          During the course of the hearing one of those

5     changes the Weil team has signed off on, the Davis Polk team,

6     or the other folks on the line have not necessarily signed off

7     on.  And I gather it's just a new change that I think is

8     consistent with the Court's ruling.  So if we could scroll up,

9     I could walk the Court through both suggested revisions to

10    this order.

11         THE COURT:  Yeah, is this something that we should

12    do like we did with Ms. Russell and let you show them to

13    everyone, or do you want to read them?  What's going to be

14    best?

15         MR. DENDINGER:  I think I could read them into the

16    Record, I think that will be fine.

17         THE COURT:  Okay.

18         MR. DENDINGER:  Okay.  All right.  Mr. Carlson, if

19    you wouldn't mind scrolling up to the first change that

20    Ms. Liou signed off on.

21         THE COURT:  Yeah, I'm the --

22         MR. DENDINGER:  There, thank you.

23         THE COURT:  -- I'm the scroller, so tell me where

24    you want to be.

25         MR. DENDINGER:  Okay.  I apologize.  The sentence

1    Your Honor, that starts -- well, looks like maybe this change

2    was already made.  Okay.  I apologize, Your Honor.  So the

3    only change that I think that we would request would be we

4    want this paragraph to be subject to our specifically

5    negotiated paragraphs and our -- ENI definitive documentation.

6         And so what we would suggest is a new sentence at

7    the end of Paragraph 97 that would say, For the avoidance of

8    doubt this Paragraph 97 shall be subject to the ENI paragraphs

9    in 111-18 of this order, the ENI implementation agreements,

10   and the ENI definitive documents.

11        THE COURT:  I think so long as you say -- clarify

12   that it's subject to those only with respect to ENI, so not

13   with respect to everybody.  If you can fix that -- you follow

14   what I'm saying?  You're making everybody subject to the ENI

15   paragraphs.  Can you say, For the purpose of this Paragraph 97

16   ENI's rights and obligations are governed by those other

17   paragraphs to the extent of any conflict?

18        MR. DENDINGER:  Your Honor, may I suggest the

19   parties referenced in those particular paragraphs because

20   there are other parties referenced in those paragraphs besides

21   ENI

22        THE COURT:  Fair enough.  Yeah, I just don't want to

23   make it so broad that it swallows everybody else into it.  But

24   that's fine.

25        Let me see if anyone has any objection to language

1    of that nature.

2         MR. SCHAIBLE:  Your Honor, it's Damian Schaible.

3    May I be heard?

4         THE COURT:  Yes, Mr. Schaible.

5         MR. SCHAIBLE:  The only thing that -- and I'm sorry

6    to be (glitch in the audio) but we were fine with the first

7    change which was put in.  The only thing that gives me a

8    minute of pause, and unfortunately I don't have a good answer

9    for it, is, well, this paragraph was important obviously

10   because it's clarifying subrogation rights, moving what

11   subrogation rights don't move.

12        In one of the documents that -- and I'm now worried

13   at all about the paragraph, but in one of the documents that

14   Mr. Dendinger is referring to, there's broader subrogation

15   rights.  Are we saying that this gets overridden?  That's the

16   part that's giving me a little bit of pause, Your Honor.

17        THE COURT:  Mr. Dendinger, I assume that we're only

18   talking about things that have already been written down in

19   these paragraphs.  Do we need to incorporate the documents

20   themselves?  The paragraphs allow the documents but only

21   consistent with the paragraphs.  Right?

22        MR. DENDINGER:  That's correct, Your Honor.  And the

23   paragraphs, in my mind, incorporate the documents because the

24   documents are referenced in the paragraphs.  These are simply

25   the definitive documents that we had negotiated with the Weil

1    team and the Davis Polk team.  They are unexecuted versions of

2    those documents now and upon the effective date the Davis Polk

3    team's client will be signing a joinder for those documents.

4    So those are the parties that are bound in those documents

5    that are being referenced in those paragraphs.

6         THE COURT:  Got it.  Okay.  I didn't realize they

7    were finalized.

8         MS. LIOU:  Your Honor?  Your Honor, it's Jessica

9    Liou from Weil Gotshal & Manges, on behalf of the Debtors.

10        THE COURT:  Yeah, hold on just a minute.  I want to

11   hear from Mr. Schaible about that before we come to you.

12        Mr. Schaible?

13        MS. LIOU:  Sure.

14        MR. SCHAIBLE:  As we said, well, subject to

15   Ms. Liou's idea I think if Mr. Dendinger doesn't mind, I'd

16   love to do it Your Honor's way and refer to the paragraph.

17   The paragraph then refers to the documents.  So we're

18   comfortable with just the paragraph, you know, not limiting

19   rights.  So I think if we just refer to the paragraphs and

20   that might be easier.

21        THE COURT:  All right.  Ms Liou?

22        MS. LIOU:  Yes, Your Honor.  I'm fine with

23   Mr. Schaible's approach.  I think that is the better approach

24   here.  And I wanted to clarify that it really should only be

25   the parties that are bound to any definitive documents, other

1        than subject to whatever carve outs exist in those documents.

2                    THE COURT:  Ms. Russell?

3                    MS. RUSSELL:  (No audible response.)

4                    THE COURT:  Ms. Russell?

5                    MS. RUSSELL:  Yes, Your Honor.  This relates to a

6        different issue, but still in Paragraph 97.  If I could ask

7        the Court to please scroll up just slightly so that we can

8        see -- yes.  Let's see --

9            (Reviewing document.)

10                   MS. RUSSELL:  All right.  Thank you, Your Honor.  It

11       has been dealt with.

12                   THE COURT:  All right.  Everybody hold on just a

13       second.

14           (Pause in the proceedings.)

15                   THE COURT:  Mr. Dendinger, what are the paragraphs

16       that you mentioned before, the paragraph numbers?

17                   MR. DENDINGER:  Yes, Your Honor, they're Paragraphs

18       111 to 118.

19                   THE COURT:  Thank you.

20           (Pause in the proceedings.)

21                   THE COURT:  I think that's what everybody is saying,

22       and should resolve it.  But I don't want to leave the hearing

23       without knowing we have a resolution.  Can I hear objections

24       to the language I've just put on the screen?

25                   MS. LIOU:  Your Honor, Jessica Liou on behalf of the

1    Debtors.  I think the language that says the rights and

2    obligations of the parties bound by Paragraph whatever

3    whatever should actually say, The rights and obligations of

4    the parties bound by the agreement or any definitive documents

5    referenced in Paragraph 118 to  -- sorry, 111 to 118.

6          THE COURT:  The rights in paragraphs of the parties

7    bound by --

8          MS. LIOU:  Any definitive documents.

9        (Pause in the proceedings.)

10         MS. LIOU:  And any implementation agreement.

11       (Pause in the proceedings.)

12         MS. LIOU:  Oh, sorry, it should be and ENI

13   implementation agreement.  Apologies.

14         THE COURT:  It's all right.

15       (Pause in the proceedings.)

16         THE COURT:  Is that what you're asking, Ms. Liou?

17         MS. LIOU:  That's right.  Thank you.  Yes, yes,

18   thank you, Your Honor.

19         THE COURT:  All right.  Mr. Dendinger, does that

20   work?

21         MR. DENDINGER:  Your Honor, I would ask that NAS be

22   added there.  There are rights and obligations being spoken of

23   of our surety provider in those paragraphs, and so if we could

24   add NAS in, that would resolve my issue.

25       (Pause in the proceedings.)

1    THE COURT:  Does that work?

2    MR. DENDINGER:  That works for ENI, Your Honor.

3    THE COURT:  Does that work for the Debtor?

4    MS. LIOU:  Your Honor --

5    THE COURT:  Go ahead.

6    MS. LIOU:  -- two minors points.  I believe the

7    second line, the beginning that should be Matter with two Ts,

8    and the third line, the ENI implementation agreement is just a

9    singular agreement.

10    THE COURT:  All right.  Mr. Schaible.

11    MR. SCHAIBLE:  This works fine for me, Your Honor.

12    Thank you.

13    THE COURT:  Mr. Kooy.

14    MR. KOOY:  Yes, Your Honor.  This debates then your

15    prior comments, I just want to -- I don't even know that this

16    necessary, I just want to maintain -- I represent NAS -- to

17    maintain and make sure we're preserving our objections to the

18    extent the Paragraphs 111 through 118 indicate.  And I think

19    as everybody is aware of here we have a declaratory judgment

20    action against ENI and Chevron.

21    We're objecting to the statement that their

22    participation and agreement here has no impact on our rights

23    to surety and our right to assert defenses including, you

24    know, the expansion of liability here.  It's the same general

25    objection we've had.  I just want to make sure we're

1    preserving that, Your Honor.

2              THE COURT:  It's preserved, and overruled.

3              MR. KOOY:  Very good, Your Honor.

4              THE COURT:  Thank you.

5              All right.  Are you all able to take a screen shot

6    of this, or how am I going to get this information over to the

7    Debtor to incorporate it?  Somebody take out their iPhone and

8    take a picture of it?

9              MR. CARLSON:  That should work.

10             THE COURT:  Mr. Perez?

11             MR. PEREZ:  Your Honor, there's a little camera

12   function on the side there and if you hit that, it takes a

13   screen shot.

14             THE COURT:  I know, but you all need a screen shot,

15   not me.

16             MR. PEREZ:  I could take -- I took one, Your Honor,

17   and sent it.

18             THE COURT:  Okay.  Good.  I just want to be sure you

19   all have this to incorporate in the final version.  Okay.

20   Let's move ahead.

21         (Reviewing document.)

22             MR. BAINS:  Your Honor, if I may while we're on that

23   paragraph?

24             THE COURT:  Of course.

25             MR. BAINS:  Again, Brandon Bains.  Mr. Carlson

1     referenced earlier a conversation yesterday about contribution

2     rights.  We did circulate some folks language for Paragraph

3     99.  Now I will say that was actually Mr. Zuber that initially

4     raised that issue, so I might defer to him.  But we did have

5     some proposed language that was sent to the Debtor yesterday

6     evening simply noting that contribution rights were preserved

7     and not subject to any of the restrictions on the subrogation

8     language, and Mr. Zuber might not characterize your argument

9     properly.

10          THE COURT:  Mr. Zuber, can I get you to share a

11    screen that would show us that language?  Your line has

12    remained active.

13          MR. ZUBER:  I know.

14          THE COURT:  Yeah, so you won't need to press five

15    star again I don't think, Mr. Zuber.

16          MR. ZUBER:  Judge Isgur, I have that language in

17    front of me as well, if you want to give me the screen.

18          THE COURT:  Sure.  So I've got Mr. Zuber's line

19    active, as well as I'll go ahead, Mr. Bains --

20          MR. ZUBER:  Your Honor --

21          THE COURT:   -- and I'll make you're line active.

22          Go ahead, Mr. Zuber.

23          MR. ZUBER:  Your Honor, I defer to Mr. Bains on this

24    issue.  While I believe that Your Honor's ruling with respect

25    to preservation of contribution rights was crystal clear, I

1      think that the language in Paragraph 97 which provides that

2      there's a preservation of any of the rights or defenses of the

3      non-Apache sureties against any non-debtor entity, including

4      but not limited to any predecessors-in-interest or co-working

5      interest parties with respect to the Debtor's assets would

6      cover contribution rights.

7              I certainly have no objection to making that more

8      expressed.  If Mr. Bains would like to provide some language,

9      but I believe that this language is broad enough and is

10     consistent with Your Honor's ruling.  I have a clear record

11     that we are not waiving any contribution rights.

12             THE COURT:  Can I -- I'm not sure why we have in

13     there post-effective date.  And maybe -- I don't have a

14     problem including clarifying language, but I think you're

15     actually limiting what I said.  So if you have a contribution

16     right that already arose, I'm not intending to limit those

17     either.  And I'm a little bit inclined to take out the

18     language, this post-effective date.

19             MR. ZUBER:  That'll be okay with us, Your Honor.

20             THE COURT:  Let me hear from anyone that believes

21     this language is inappropriate.  I mean we are doing things

22     here that are difficult and hard and I think that I want to be

23     sure we have clarity, and I don't believe that it would

24     reasonable to alter or diminish third party versus third party

25     contribution rights that exist as of today.

1         MR. CARLSON:  Your Honor, I don't think we -- this

2   language works.  I think -- and I guess -- well first off, we

3   think that -- we don't think that language is necessary.  We

4   think the Record and the documents don't affect the

5   contribution rights.  But I think here the issue with this

6   language is that it would eviscerate or override certain

7   provisions of the Plan.  Here we're saying that nothing in the

8   Plan impacts their right to seek contribution from any

9   interest party or predecessor.  I don't think that that's

10  necessarily a right.

11        THE COURT:  Well, how are you trying to affect those

12  contribution rights?  I thought you weren't and I don't think

13  I was intending to authorizing you to affect those

14  contribution rights.

15        MR. CARLSON:  I think if we carve out or we just

16  make clear that we're only talking about non-debtors or NewCo

17  or the post-effective date entities.  I think if we carve all

18  of those parties out, this would work.  But that's me speaking

19  and others can disagree, but --

20        THE COURT:  I got it.

21        MR. CARLSON:   -- it doesn't --

22        THE COURT:  No, no, no, that makes sense.  Obviously

23  the Plan will affect the contribution rights from, you know, a

24  debtor or a reorganized entity under this.  It's the third

25  party rights that we're not affecting.

1          I got it, but I do want to give them the clarifying

2     language.  I've given other people clarifying language to be

3     sure they're comfortable.  This has been -- I know this is

4     hard on the sureties and I want to be sure that they leave

5     understanding, you know, appropriately what they're getting.

6          Mr. Bains, can we add in language here, I'll let you

7     type it in, that makes it clear that you're not trying to

8     retain a contribution right, you know, against the entities

9     that Mr. Carlson has identified.  Do you want to take a few

10    minutes and draft that and I'll come back to you?  Because I

11    think that may be hard to draft.

12         MR. BAINS:  Well, and I believe we had that same

13    language back up in 97 or somewhere that we were talking about

14    the original rights.  I don't know, there's -- I think there's

15    a parenthetical that has some language on the Debtor and the

16    NewCo entities.  Is that what you're envisioning, I guess both

17    to Mr. Carlson and to the Judge.

18         MR. CARLSON:  I think that's right, just to say, I

19    think it can be clear that it doesn't -- that if we're carving

20    out the Debtors, the post-effective date Debtors, Fieldwood

21    One, Fieldwood Four and the NewCo entities, I think that -- I

22    think that's everyone.

23         THE COURT:  So --

24         MR. BAINS:  Your Honor, I can certainly, after I get

25    control back, or you get control back of the screen, I can

1    incorporate that language and Mr. Carlson and I can email it

2    to you.  If you'll give me about four minutes and then we can

3    go from there.  If that works, however you want to handle it,

4    Judge.

5              THE COURT:  Yeah, why don't we come back and we'll

6    do it all on the screen.  I'll take back the screen now so

7    that you don't have to show everybody you're drafting efforts,

8    but then when you're ready just tell me and we'll come back

9    and we'll all look at it together and then let's decide.  I

10    really don't want to put things off so that, you know,

11    somebody else then has a problem with what you draft so.

12              Okay.  Let me see.  Okay.  So you got back your own

13    screen, we can't see it, I'll let you do some drafting.

14              Mr. Woodard, I think you wanted to speak.

15              MR. WOODARD:  Thank you, Your Honor.  Maybe if I can

16    take about half of Mr. Bains four minutes, maybe that'll help

17    everybody fill the void.  I have the unenviable task, Your

18    Honor, of being Number 6 in asking you to listen just for a

19    moment, if I could, on a slightly different aspect of what has

20    been overruled, the objection that's been overruled five times

21    previously and no doubt will be again now.

22              But I need to put on the Record a couple of things

23    if --

24              THE COURT:  Go --

25              MR. WOODARD:   -- I have been --

1        THE COURT:   -- go right ahead, Mr. Woodard.

2        MR. WOODARD:   -- first of all --

3        THE COURT:  Go back -- although I've been overruling

4    people, I'm doing my best to preserve all -- everybody's

5    appellate rights.  My goal shouldn't be to stop you from

6    preserving your objections.  So go ahead and --

7        MR. WOODARD:  And I --

8        THE COURT:   -- maybe you've got some new argument

9    and you can carry the day for everybody.  We'll see.

10       MR. WOODARD:  It is a slightly new argument, Judge.

11   I started this off with -- on Monday of actually being in your

12   camp, and I think I'm slipping a little bit.  However, all of

13   the things that I agreed with you are still there.  So all of

14   the items that the Court has the ability to do under 363, the

15   Debtor.  The facts are that the bonds continue to exist,

16   notwithstanding the fact of the loss of the principal.  All of

17   those things I still agree with.

18       But at the end of the day every day this week I've

19   had this dilemma trying to figure out, because while I wear

20   the hat of a bankruptcy counsel, I understand the concepts of

21   elimination of debt and going through the confirmation process

22   and discharge and all that.  As I wear the hat of a surety

23   counsel, however, the idea of losing the ability to maintain

24   the suretyship rights of a surety is just contrary to basic

25   surety law.

1          So each day as I listen to the variety of the five

2     arguments before mine, I've struggled each night trying to

3     figure out how it is that I reconcile all those things.  And I

4     think that I've finally come to what I believe to be a viable

5     solution to it, but as I say, I would anticipate no different

6     end result, but let's give it a run.

7          The acquisition of the leases on the effective date

8     carries with it certain obligations that take effect whether

9     the leases -- take effect when the leases are actually

10     transferred to any of the post-confirmation entities.  There

11     are -- and that has nothing to do with the sureties.  These

12     are obligations that come into existence under -- whether it's

13     the outer Continentals shell pack, whether it's any of the CFR

14     provisions that place a variety of maintenance,

15     decommissioning, safety obligation on any owner/operator of a

16     lease.

17          So the moment that the entities actually take over

18     on behalf of -- that take the assignment of these leases and

19     become owner/operator they have a new set of obligations that

20     don't relate to the sureties, that relate solely to the

21     Government.  It is only the DOI, BSEE, BOEM in any of their

22     pieces.  So that is a straight line of liability from the

23     credit bit purchaser, from Fieldwood One, Three, Four directly

24     to the Government.

25          Mr. Dane testified during his direct testimony that

1    NewCo is going to be responsible for someplace between 330-

2    and $350 million of P&A liability, and that that was part of

3    their entire deal and it was -- it's a wonderful thing what

4    NewCo was going to be doing for everybody.  All of those post-

5    petition -- post-effective date.  Once they take those on, new

6    obligations.

7              He also testified the same was going to be true

8    under Fieldwood One, Three and Four just that he said that

9    they are taking assignment of leases as well.

10             And all of that liability is completely independent

11   of the bonds.  So if just assuming for moment that the

12   regulators, upon the default, right, one of those entities

13   doesn't do what they're supposed to do under the CFR and the

14   regulators declare a default, they could look to those

15   entities directly from themselves, from the Government and

16   declare the default and seek the monetary whatever,

17   restitution, clean up, whatever they be directly to

18   themselves.  They don't need to call the bond, they don't need

19   to do anything else.  And that right exists the moment they

20   sign those leases.

21             Now we also agree on Monday, and I still do today,

22   that the bond continues.  We don't get out from under it.  The

23   bond will live on indefinitely until we're released from our

24   obligee, which in our case is the Government.  So the

25   Government can also turn around and say to Lexon, Okay, Lexon,

1    these bonds are still in existence, there's a violation of

2    that lease that's being conducted by credit bid NewCo.  You

3    pay us the money.  And we won't -- whether we have a defense

4    or not we'll deal with that at that time.

5           But assuming that we don't and we have to pay that

6    money, now we flip back to straight surety law because that

7    bond is still there, it is still under surety law.  And so our

8    obligation runs directly to the Government.  The NewCo 1, 3, 4

9    run directly to the Government.  Now the Government takes the

10   money.  Suretyship law.  It's very simple in this regard.

11   When you boil it all the way down what subrogation is, is the

12   surety case but under the rights of the obligee.

13          It is not a claim by the surety itself.  It is a

14   claim using the Government's rights in order to reimburse the

15   Government and the surety from the party that has done the

16   wrong.  So at the end of the day here you've got a post-

17   petition obligation that's a direct line obligation to the

18   Government and you have what is -- well, it was a pre-petition

19   original bond, it has lived on post-petition and has been

20   certainly -- continued to be ratified by the Government, but

21   they're not going to let us off the hook.

22          So we have a post-effective date default, payment

23   and the surety would be only exercising the direct rights from

24   the NewCo, whoever it might be, to the Government and that's

25   why, at least in my mind, Your Honor, that's why when you come

1      to the end of the day, I come back around to say the

2      suretyship's still there.

3            The suretyship doesn't get eliminated by the

4      confirmation.  The rights are still there and going forward.

5      Now I understand what the language is, and we're trying to

6      hammer that out as best we can.  But I needed to get this on

7      the Record and also to acknowledge that we're joining in what

8      Mr. Zuber had to say yesterday.  But it is a slight different

9      argument, and I wanted the Court to be aware of it.

10           THE COURT:  Mr. Woodard --

11           MR. WOODARD:  Thank you, Your Honor.

12           THE COURT:   -- first of all, thank you, I think

13     it's a really clear statement of the argument.  I'm not sure

14     that I believe it to be different than at least the way that I

15     heard and that I've been considering the argument.  So I've

16     certainly thought about the issue that you are raising.

17           And again, I want to, because you've raised it

18     again, which is more than fair, I want to again explain why I

19     believe what we're doing is correct so that there is a Record

20     of our decision that you can appeal if your client determines

21     that's the best thing to do.

22           The sureties today right now can liquidate their

23     claim and have a claim against Fieldwood that is the principal

24     on the bonds.  That claim may be for the full amount of the

25     bonds.  And if so, you will get a claim for the full amount of

1     the bonds.  I'm not liquidating it right now.  But you have

2     the right to assert that full claim.  No one is taking away

3     any of your rights against the principal.  And I understand

4     that's in part not your argument, but it's important to put in

5     context that all the principal rights are there.

6          Now the principal can't pay in full, but you can get

7     a liquidated claim against the principal for whatever it is

8     that you're entitled to.  And under the bankruptcy law we can

9     determine the amount of the claim that will exist in the

10    future whether or not you have yet paid it, because all of

11    that falls within the definition of a claim.

12         So 100 percent of the sureties' rights can be

13    vindicated against the Debtors.  The rights that you have

14    described, which arise in favor of the Government, arise under

15    28 USC 959 in my view.  And you have described that the

16    acquiring entity will have a continuing obligation to BOEM and

17    BSEE and the Department of the Interior.

18         The issue that you're asking me to rule on, and that

19    I am ruling on, is whether the Bankruptcy Court is empowered

20    as part of the Plan's adjudication and Plan process to say

21    that you're not going to get subrogation rights to the

22    Government if they come back against the acquiring entity.  I

23    rely in large part on our ability to do that, on the

24    Bankruptcy Code, and in large part on *Midlantic*.

25         Finally, I rely on the really complete evidentiary

1    record that we have.  The evidentiary record that we have is

2    that there will not be an acquirer of these entities if they

3    will then be subject to subrogation by the surety.  So the

4    sureties are in a position where if we don't do the Plan, you

5    will just have an eminent default and the entire surety issue

6    will be, you know, available subject to whatever defenses you

7    have if the Government calls it.

8         Under the Bankruptcy Code we could authorize, and

9    may authorize the sale of the property, the *en rem* property

10   free and clear of all liens, claims and encumbrances.  That

11   includes equitable rights including the equitable right of

12   subrogation.  So what do we do when we have subrogation law

13   that comes into conflict with the ability to sale under

14   Section 363 free and clear of those types of equitable rights.

15        And that is informed by *Midlantic*, which is we

16   should apply the Bankruptcy Code in a manner that allows the

17   Government to maximize the environmental consequences that are

18   facing the country and in this case the Gulf of Mexico if we

19   don't do the right thing.  Accordingly, when you look at 363

20   and 959 and *Midlantic* and the evidentiary record we have, this

21   is the only solution to the problem.

22        I do not make the sureties worse off by confirming

23   the Plan, I make them better off by confirming the Plan.  I am

24   true to the requirements of *Midlantic* and I am true to the

25   language of the Code.  And for that reason I overrule the

1    objection.

2              I appreciated the statement in the way in which it

3    was made, Mr. Woodard.  Thank you.

4              MR. WOODARD:  Thank you, Judge.  I appreciate the

5    opportunity to put it on the Record.

6              THE COURT:  Absolutely.

7              Mr. Liou, go ahead.

8              MS. LIOU:  Your Honor, may I take a moment perhaps

9    for my comment.  It was regarding an earlier paragraph and I

10   believe that the parties are going to work separately on

11   language and come back to you on that.  So I'm okay with that.

12             THE COURT:  Thank you.

13             By the way, for those of you whose lines have

14   remained active, you don't need to press five star again.  You

15   can simply, you know, speak up at the right time.

16             Mr. Bains, I'm going to come back to you and see if

17   we're -- are you ready to show us a document at this point?

18             MR. BAINS:  Yes, Your Honor.

19             THE COURT:  Thank you.  Mr. Woodard took longer than

20   he forecast, so I figured you'd be ready by now.

21             MR. BAINS:  Good argument, Mr. Woodard.

22             THE COURT:  It was a --

23             MR. BAINS:  I at least believe you.

24             THE COURT:  It was a good argument from Mr. Woodard,

25   and I appreciated hearing it.  But nevertheless it took longer

1          than two minutes, so I figured you'd be finished.

2                    MR. BAINS:  True.  I'm putting it up now.

3               (Pause in the proceedings.)

4                    THE COURT:  Let me hear from parties that might

5          object to Mr. Bains's language.

6               (Pause in the proceedings.)

7                    THE COURT:  Mr. Carlson, you okay?

8                    MR. CARLSON:  Yes, that captures what we discussed.

9                    THE COURT:  Mr. Schaible?

10                    MR. SCHAIBLE:  Yes, Your Honor.  Thank you.

11                    THE COURT:  Mr. Bains, we're going to order the

12          incorporation of the language on the screen into the

13          confirmation final draft.  Thank you for doing that.

14                    Do you all have a picture of that so that we can

15          move ahead?

16                    MR. CARLSON:  Yes, we took one.

17                    THE COURT:  Thank you.

18                    MR. BAINS:  I'll email it to you as well so that

19          would just make it easier to cut and paste.

20                    MR. CARLSON:  Thank you, Mr. Bains.

21

22                    THE COURT:  Okay.  We're going to back into my

23          screen now and the -- I have to say, isn't the technology just

24          amazing that we can do all of this?  In some sense it's

25          actually better than being live in court.  Right?  Where, you

1    know, Mr. Bains can sit at his desk and he can draft

2    something, and Mr. Carlson can get it and -- I don't know.  I

3    mean, you know, we're going to have an interesting hybrid life

4    come January -- excuse me, September 7 as far as I'm

5    concerned.

6          MR. CARLSON:  I'm just glad my kids and dog aren't

7    coming into the background, so that's appreciated.

8          (Laughter.)

9          MR. DENDINGER:  Your Honor, it's Mark Dendinger.

10   May I be heard briefly on that language?

11         THE COURT:  Yes.  And Ms. Russell also wanted to be

12   heard, and your -- both of your lines are active, so go ahead.

13         MS. RUSSELL:  Your Honor --

14         MR. DENDINGER:  Thank you, Your Honor.

15         MS. RUSSELL:  -- if we could put up the last -- if

16   we could bring up the language that we've seen blasted.  In

17   looking at that language we need to add GOM Shelf behind

18   Fieldwood One in the parenthetical.

19         THE COURT:  Are you -- are you in the language

20   Mr. Bains drafted, or some other language?  I apologize.

21         MS. RUSSELL:  Yes, what Mr. Bains was drafting.  If

22   that can come back up on the screen for just a moment.

23         THE COURT:  We'll try.

24         (Pause in the proceedings.)

25         MS. RUSSELL:  So in the parenthetical where it says,

1    Debtors Fieldwood One, if we could, after Fieldwood One put in
2    GOM Shelf.
3         (Pause in the proceedings.)
4              MR. CARLSON:  Like that?
5              MS. RUSSELL:  Yes.  And, Your Honor, we're going to
6    do one very close final review to make sure that this is
7    not -- that GOM Shelf doesn't need to be added in other
8    places.  But that is the intent of the Plan since it is a
9    subsidiary of Fieldwood One that it be captured in these
10   tasks.
11             THE COURT:  So, Mr. Carlson, in each instance in
12   which it is appropriate to add clarification that Fieldwood
13   One includes GOM Shelf I'm ordering you to include it in the
14   final confirmation order.
15             We had someone else though that wanted to speak.  Go
16   ahead.
17             MR. DENDINGER:  Yes, Your Honor.  Mark Dendinger at
18   Bracewell for ENI.
19             THE COURT:  Yes.
20             MR. DENDINGER:  If it isn't included in Paragraph
21   97, that will be fine.  If it's not included in Paragraph 97 I
22   need for this to be subject to the same sentence we just
23   negotiated that to the extent of any conflict, ENI the
24   paragraph shall survive, or shall control.
25             THE COURT:  Let's make this easy, Mr. Carlson.  Put

1    that language that Mr. Bains drafted into Paragraph 97 so that

2    we don't have to do brain surgery to get it in the right

3    place.  Thank you.

4              MR. DENDINGER:  Thank you, Your Honor.

5              THE COURT:  All right.  We're now going to go back

6    to the proposed confirmation order.

7         (Pause in the proceedings.)

8              MR. CARLSON:  So, Your Honor, the next set of

9    paragraphs are the Chevron paragraphs, and I think we've,

10   during this hearing resolved the open issue on this point, and

11   I'm hesitant to do this, given my track record, but I think I

12   can put the language on the screen that hopefully resolves the

13   issues.

14             THE COURT:  We'll let you try and redeem yourself.

15        (Pause in the proceedings.)

16             THE COURT:  Look at that.

17        (Pause in the proceedings.)

18             MR. CARLSON:  I think we need to include GOM Shelf,

19   Your Honor.

20             THE COURT:  Mr. Ripley?

21             MR. RIPLEY:  Yes.  Yes, good morning, Your Honor.

22   It's Ed Ripley --

23             THE COURT:  Good morning.

24             MR. RIPLEY:   -- Andrews Myers, on behalf of

25   Chevron.  Good morning.

38

1          THE COURT:  Good morning.

2          Does anyone have any problem with this addition to

3     the CUSA (phonetic) section?

4          MR. RIPLEY:  Yeah, Judge, where I think we've

5     landed -- and I really appreciate both the Weil team and the

6     Davis Polk team -- yes, it starts right there.

7          Mr. Carlson, we're just going to include that last

8     sentence starting with the, Nothing within.

9          MR. CARLSON:  Yes, it looks like I missed an email.

10    Right.

11         MR. RIPLEY:  Yeah, no problem.  Judge, we've been

12    using the time as you've been working through other things,

13    it's a lot of moving parts.

14         THE COURT:  I got it.

15         Does anyone object to this inclusion?

16        (No audible response.)

17         THE COURT:  Okay.  We'll include it.  Thank you.

18        (Pause in the proceedings.)

19         THE COURT:  This language, however, is staying in

20    104 and then you're just adding to this.  Is that correct?

21         MR. CARLSON:  That's correct.

22         MR. RIPLEY:  Correct, Your Honor.  Yeah, the

23    additional language that we've agreed on.

24         THE COURT:  And does anyone have any objection to

25    this plus the add-on that we just saw?

1          (No audible response.)

2               THE COURT:  All right.

3               MR. BAINS:  Your Honor, Brandon Bains.  I guess my

4     question, I have not see this language before. I'm not sure

5     what is different here than what we had in Paragraph 97.

6          Certainly, Mr. Ripley, if I'm missing something, but I

7     know that we already tried to reserve all of our rights

8     between our respective clients.  Is there something different

9     here that's being reserved or is this proverbial belt and

10    suspenders?

11              MR. RIPLEY:  Well, this all originated before the

12    new paragraphs, so there's no attempt to try and change if I

13    remember what was now, what, Paragraph 97.  This may well be

14    belts and suspenders, but take a look and let me know if you

15    think there's something different.

16              MR. BAINS:  I don't necessarily, I just didn't know

17    how that came about, if you were trying to modify what was

18    already up there on the reservation between sureties and

19    obligees.  But that was my only question.

20              MR. RIPLEY:  Yeah.  No, this all originated before

21    that new paragraph even came in.

22              MR. BAINS:  Understood.

23              MR. RIPLEY:  Thank you, Judge, for letting us have

24    some discussion while we're going through this.

25              THE COURT:  Thank you.

1          (Pause in the proceedings.)

2          MR. RIPLEY:  Judge, the only other open change is in

3     Paragraph 108, and if you'll scroll down from where you see

4     the one insert on implementation agreement, the second insert,

5     right there, so one, two, three, four lines down there's

6     another CUSA definitive documents.  So just two more lines

7     down.  Yeah, if you go down to the -- two more lines.

8     Correct.  We need to insert the saying, CUSA implementation

9     agreement and.  So the sentence that starts, Execute and

10    deliver --

11          THE COURT:  Is there any issue with that,

12    Mr. Carlson?

13          MR. CARLSON:  No, no issue.

14          THE COURT:  Thank you.  All right.

15          MR. RIPLEY:  And that was it.  And again, Judge, we

16    really appreciate both the Weil team and the Davis Polk team

17    working with us.

18          THE COURT:  Thank you.

19          (Pause in the proceedings.)

20          THE COURT:  Do we need to put a time in for that

21    hearing or --

22          MR. CARLSON:  I was just -- I just wondered that

23    myself.  We'll add the time.

24          THE COURT:  Thank you.

25          (Pause in the proceedings.)

1              MR. CARLSON:  This additional paragraph addresses --

2      it should potentially mirror the BP and XTO paragraphs on this

3      issue.  And we'll look to Mr. Kind to confirm whether or not

4      they're signed off, I'm just not sure.

5              THE COURT:  Let me get Mr. Kind's line active.  Hold

6      on.

7          (Pause in the proceedings.)

8              THE COURT:  Mr. Kind -- and, Ms. Rogers --

9      Ms. Rosen, I just saw your line, I'll come back to you in just

10     a second, I apologize, I didn't see it before.

11             Mr. Kind.

12             MR. KIND:  Your Honor, good morning.  Thank you.  We

13     think this language largely accomplishes what we were

14     discussing with counsel.  However, we had one lingering issue

15     that the protective language as written only applies to

16     assumed contracts, and we wanted to make clear that the

17     recoupment is available for the purposes of reconciling and

18     resolving rejection claims as well in connection with rejected

19     contacts.  That's really the only lingering and open issue.

20             MR. CARLSON:  So, Your Honor, on that point I think

21     a couple of things. I think, you know, as of the effective

22     date on a rejected contract, you know, we think obviously all

23     the contractual rights fall off including any set off rights.

24     And we think the Plan is pretty clear on how we treat

25     rejection damages, so didn't think that there was any need to

1      preserve any rights here on this point.

2           MR. KIND:  I think, Your Honor, just to clarify I

3      think, we know that, you know, per Section 363 sales can

4      proceed free and clear.  I think what our concern is about is

5      about making sure that the valid set off and vetting process

6      for pre-effective date and pre-rejection amounts are included

7      in the type of the protective language that is in that

8      paragraph.  And, you know, we aren't looking to get any extra

9      right, it's just about making sure that the ballot itself

10     right up to the rejection part are respective.

11          THE COURT:  So I'm not sure what happens on a pre-

12     effective date set off -- a post-petition, pre-effective date

13     set off on a rejected contract.  So let's start with I don't

14     know the answer to that question.  Are you asking me to

15     resolve it right now, or what are you asking me to do about

16     that?

17          MR. KIND:  Well, Your Honor, you know what, I would

18     propose just a couple of -- you know, maybe changing seven

19     words to make clear that this paragraph then refers to all

20     executory contracts between Cox and the Debtors.  If the

21     Debtors --

22          THE COURT:  Yeah, but that asks me -- that asks me

23     to resolve it today in a way and I don't -- that may be the

24     correct resolution.  I don't know is the problem.  So what do

25     you think I should do?  Do you think this cuts off those

1    rights as opposed to -- I just think it leaves them wherever

2    they are.  I'm saying that these don't adversely affect the

3    assumed ones, and I actually don't know what the Plan's going

4    to do, or what the effect of the Plan is on a post-petition

5    pre-rejection motion filing pre-effective date but rejection

6    could be retroactively effective.

7         I mean there are just so many permutations there,

8    doesn't that wait for another day to determine what occurs, or

9    am I missing your point?  Because I don't think I can resolve

10   it if I don't know the whole law on it, and I don't mean to be

11   too ignorant about it, but I don't know it.

12        MR. KIND:  No, Your Honor, those points are well

13   taken.  I think that the concern is that when the Plan

14   specifies a rejection, damages claims can be brought but that

15   will be classified as an unsecured claim, I think there's a

16   concern about, well, you know, in order to prepare that claim

17   are we allowed -- you know, are they trying to cut off our

18   right to take into effect the vetting that we assert, you

19   know, we're entitled to per the contract before they were

20   rejected.  But, Your Honor --

21        THE COURT:  So, let me go back to Mr. Perez on this

22   one.  This has been sort of your bailiwick so far.  What do we

23   do on a provision in the Plan like what Mr. Kind is

24   referencing where -- you know, I don't know if you can do that

25   or not, you certainly -- it's a fair provision in a Plan, but

1      if he's saying he's not sure that you can cut off his secured

2      rights, if he has them, how do you think we ought to handle

3      that?

4           MR. PEREZ:  Two things, Your Honor.  Number one, I

5      don't think the paragraph cuts off whatever right of whatever

6      rights he has.  And to the extent that he's allowed -- he's

7      entitled to file a claim as a result of the rejection damages,

8      and for instance even if we say in the Plan that he's entitled

9      to file a claim, you know, they're holding a deposit, I don't

10     think the Plan would be able to vitiate that hold -- the

11     deposit.

12          And to the extent that he has a valid claim for a

13     set off, again, I don't think we -- I don't think that the

14     Plan would cut that off on a pre basis, Your Honor.

15          THE COURT:  So he's -- what he -- and I haven't

16     looked at this provision, he's telling me the Plan itself says

17     that damages from a -- from the rejection of a contract will

18     be treated solely as an unsecured claim.  So if they have

19     damages for which they have set off rights, and again, those

20     may not be effective, I don't know, but what do we do so that

21     that argument gets preserved?

22          MR. PEREZ:  Well, Your Honor, I think we're having

23     this colloquy on the Record, but normally when you file a --

24     when you get a claim it does give rise to an unsecured claim.

25     To the extent somebody I guess is holding security, then that

1    unsecured claim would have whatever security that person is

2    holding.  It's kind of how the Plan purports to strip any of

3    that security.

4              THE COURT:  Mr. Kind, it is 9:10 in the morning

5    Central Time, with Mr. Perez estopping his client.  Are you

6    okay with that?

7              MR. KIND:  Your Honor, I think, you know, I think

8    those statements mean that we kind of -- we resolve these

9    issues in the context of resolving whatever claim we filed,

10   you know, in connection with the rejection.  So, Your Honor, I

11   think I'm satisfied with that understanding.  But I think what

12   I would ask is perhaps that we have a, you know, a provision

13   that gives us 45 days to file such a claim which mirrors what

14   was done for BP in Paragraph 133, sub 4, which is pretty

15   much -- you know, mirrors what's in the Plan but provides an

16   extra 15 days.

17             THE COURT:  Any problem with --

18             MR. KIND:  And I --  with that --

19             THE COURT:   -- giving them 45 days to file a

20   rejection claim, Mr. Carlson?

21             MR. CARLSON:  No, no, Your Honor, that's perfectly

22   fine.

23             THE COURT:  Okay.  Yeah, add that language, please.

24   Thank you.

25             Are we okay, Mr. Kind?  All right.

1          MR. KIND:  I think so with those understandings,

2    Your Honor.

3          THE COURT:  All right.  Thank you.

4          Ms. Rosen.

5          MS. ROSEN:  Thank you, Your Honor.  I just -- I

6    wanted to clarify back on Paragraph 127 V --

7          (Pause in the proceedings.)

8          MS. ROSEN:  Okay.  Thank you, Your Honor.  I know --

9    and there were a lot of changes going around yesterday and I

10   believe the language that we agreed to for that parenthetical

11   was to say, "In a manner that is not inconsistent with the

12   applicable XTO -- Exxon/XTO executory contract."  I don't know

13   this necessarily is a change from that, but I just wanted to

14   clarify that I can see a situation where the applicable law

15   may not identical to the language of the contract, and I just

16   wanted to make sure that it was clear that we are preserving

17   our rights to exercise any valid netting under applicable law.

18   I would prefer it to say, "In a manner that is not

19   inconsistent with our contracts," because otherwise I think it

20   runs a risk of making it an and instead of an or.

21          THE COURT:  Yeah, I'm not going to do in a manner

22   because that involves -- or implicates procedural issues

23   rather than substantive ones, and I think unless incorporates

24   both.

25          MS. ROSEN:  Okay.

1          THE COURT:  So I'm going to overrule the objection
2      on that.
3          MS. ROSEN:  Okay.  Thank -- okay.
4          THE COURT:  Thank you.
5          MS. ROSEN:  Thank you, Your Honor.
6          THE COURT:  Thank you.
7          MR. CARLSON:  So, Your Honor, from the Debtor's
8      perspective I believe that counseling, which was the only --
9      the last open issue, we do have a few more changes we can walk
10     the Court through here, but --
11         THE COURT:  I may want to --
12         MR. CARLSON:   -- otherwise --
13         THE COURT:   -- make sure that all the parties here
14     have a chance to object to everything, so I'm going to just
15     keep going page-by-page --
16         MR. CARLSON:  Understood.
17         THE COURT:   -- on this.
18         MR. KIND:  Your Honor --
19         THE COURT:  Yes.
20         MR. KIND:   -- I'm sorry to interrupt but I just
21     wanted to clarify.  Is the language that Mr. Carlson's going
22     to add to the Cox paragraph, I'm sure he'll send it over, but
23     is it going to reflect our understanding on the Record that
24     we'll -- that any set off issues on the rejection claims would
25     be resolved in the claims reconciliation process.

1          THE COURT:  No, we're not going to include any

2     language about that.  We're going to deal with estoppel from

3     what Mr. Perez said.  That language is simply going to give

4     them 45 days to file a claim.

5          MR. KIND:  Okay, Your Honor.  Thank you.

6          THE COURT:  Thank you.

7     (Pause in the proceedings.)

8          MR. CARLSON:  We'll change that to 150.

9          THE COURT:  Thank you.

10     (Pause in the proceedings.)

11          THE COURT:  All right.  This is -- all objections

12     previously made and overruled are preserved.  Does anyone have

13     any new objection that they wish to voice to the form or the

14     substance of the confirmation order?

15     (No audible response.)

16          THE COURT:  All right.  Look, I owe a debt of

17     gratitude to everybody on the call for all of your

18     professionalism, and as I said yesterday, I think especially

19     to Mr. Carlson.

20          I also want to mention the sureties who, as far as

21     I'm concerned, have presented their case in such a

22     professional way to preserve their objections and have

23     consistently recognized that their duties as officers of the

24     court is to implement the Court's orders.  And I think they

25     have done their best to do that, and I very much appreciate

1      that.

2              So the professionalism of everyone in the whole

3      hearing, this has been a long, hard hearing, is just

4      completely appreciated by the Court and I appreciate the

5      lawyers who are here.

6              Mr. Carlson, what I would like for you to do is to

7      file one integrated document so that you have all of the

8      attachments with it, non-redlined, that I can sign that is

9      everything without me needing to add any additional

10     attachments to it so that I don't get that wrong.  And when

11     you get that filed, if you would contact Ms. Do, I'm not going

12     to hold another hearing, I'm going to sign the order.

13             MR. CARLSON:  That sounds great.  We'll do that.  I

14     do want to point you to a few changes we've made to the Plan

15     just so the Court is aware and not surprised by that.  But it

16     shouldn't be controversial changes I don't think.

17             THE COURT:  So let me get the redline.

18         (Pause in the proceedings.)

19             THE COURT:  All right.  Go ahead, please.

20             MR. CARLSON:  Sure.  So on Page 7 is the additional

21     predecessor agreement definition.  There was discussion with

22     Ms. Liou and Mr. Perez yesterday on that point.  We think this

23     is consistent -- if you'll go up, I'm sorry, to --

24             THE COURT:  Oh, ECF Page 7?

25             MR. CARLSON:  Page 7, ECF Page -- that's right.

1        (Pause in the proceedings.)

2              THE COURT:  All right.

3              MR. CARLSON:  And then I believe the only other

4    change is inside Section 5.13A, which should be conforming to

5    97 of the order.

6        (Pause in the proceedings.)

7              THE COURT:  All right.  Thank you.

8              MR. CARLSON:  Yeah.

9              THE COURT:  So I mean this from the -- with all

10   sincerity, what I think is being accomplished in the

11   Bankruptcy Court is in the best interest of the United States,

12   is in the best interest of the creditors of this estate, and I

13   very much appreciate all of the hard work and effort done.

14             Mr. Kuebel, you had something you wanted to add.  Go

15   ahead.

16             MR. KUEBEL:  Yes, Your Honor.  If you wouldn't mind,

17   could -- this is Rick Kuebel on behalf of McMoran and

18   ConocoPhillips companies.  Could I impose on the Court to go

19   back to the definition language of the additional predecessor

20   agreements for one second?

21             THE COURT:  Yes, sir.

22             MR. KUEBEL:  The new language with it.

23       (Pause in the proceedings.)

24             MR. KUEBEL:  And I just wanted to point out to the

25   Court that I think the change of moving it to the effective

1    date is probably better as it does give us some time if

2    Mr. Perez still wants to speak to me to try to work out

3    agreements for some of the other predecessors.  But when we

4    talked about this with the Court I believe yesterday, I think

5    we also talked about that there would be some process for

6    filing notice and bringing those back in front of the Court.

7            I just wanted to make sure that this language was

8    consistent with the Court's expectations in that regard.

9            THE COURT:  I actually noticed that too but if no

10   one was going to object, I wasn't going to raise it.  I do

11   think that's what we said.  Let's go ahead and I think, what,

12   give notice seven days prior to the effective date and that

13   should give everybody enough time to come into court if they

14   want to come in.  That cause any heartburn for anybody?

15       (No audible response.)

16           THE COURT:  Mr. Carlson, Mr. Perez, you all okay

17   with that?

18           MR. CARLSON:  I think the Debtors are fine with it.

19           MS. LIOU:  Yes, Your Honor.

20           THE COURT:  Mr. Kuebel, does that work for your

21   client?

22           MR. KUEBEL:  Yes.  Thank you, Your Honor.  And I

23   apologize for interrupting and --

24           THE COURT:  No --

25           MR. KUEBEL:   -- thank Your Honor for the courtesy

1       that --

2                   THE COURT:  No, I think it's --

3                   MR. KUEBEL:   -- you gave --

4                   THE COURT:   -- the right thing to do.  I was going

5       to raise something on my own that I thought the parties would

6       agree to, but I didn't realize that was -- remained as an

7       issue, but I do think what you've raised is consistent with

8       what I said, and if we make it seven days, we'll get there.

9                   I do have somebody from 504-832-0680 --

10                  MR. KUEBEL:  Thank you.

11                  THE COURT:   -- that wants to address an issue.

12                  MR. FORSYTH:  Yes, Your Honor, this is David

13      Forsyth, I represent (indiscernible) Oil Company.  I just have

14      a question.  When will the new Plan supplement be filed?  I

15      know that we have one issue, that there was a production

16      handling agreement that was not scheduled, was being assumed,

17      but it was listed on Exhibit 3F to the Apache agreement, and

18      the way the documents read is that would prevail.  I had

19      understood that that was going to be changed and deleted from

20      the -- from Exhibit 3F.  And I'm sure there are other things

21      like that, I just wondering when those kinds of things will be

22      taken care of.

23                  THE COURT:  Ms. Liou, is that in your bailiwick?

24                  MS. LIOU:  Yes, Your Honor.  We are working on

25      updating documents and hoping to get that on file today.

1          THE COURT:  Good.  Thank you.

2          MR. FORSYTH:  Thank you.

3          THE COURT:  Thank you.

4          From 504-458-0820?

5          MR. NORTH:  Hi, Your Honor.  This is Tom North

6    (phonetic) for ROI Insurance Company.  I was just going to

7    raise the same point about the language on the additional

8    predecessor agreement, but it looks like that's been resolved.

9          THE COURT:  Are you okay with the seven days to

10   where if you have a problem, you can come on in and get a

11   hearing on it?

12         MR. NORTH:  Yeah, we are, Your Honor.  Thank you.

13         THE COURT:  Okay.  Thank you.

14         All right.  I am concluding the confirmation hearing

15   and I am moving the motion for relief from the stay hearing in

16   this same case.  Mr. Kadden, if could get you to press five

17   star, please.

18         Those of you that don't want to stick around to hear

19   Mr. Kadden, it's going to be interesting, but you can leave,

20   you don't need permission, just hang up your phone and

21   disconnect your camera and we're going to move to the motion

22   for relief from the stay.

23         Mr. Kadden, Good morning.

24         MR. KADDEN:  Well, good morning, Your Honor.

25   Benjamin Kadden.  I'm a little saddened by the number of

1    people who are dropping who don't want to watch my

2    performance.

3              Your Honor, we're here today after a very lengthy

4    and complicated confirmation hearing, and on behalf of

5    Atlantic Maritime Services, asking for what we believe to be

6    very targeted and limited relief from the automatic stay.  The

7    issue, Your Honor, that it mainly gets faced with is that we

8    are about approaching on July 16th and July 23rd, the one-year

9    deadlines for filing suit on our Louisiana oil well liens in

10   either State or Federal Court.

11             As Your Honor is well aware, we had initially sued a

12   number of non-debtor working interest working interest owners

13   to protect and preserve our rights vis-à-vis those entities.

14   Those matters have been stayed by agreement of the parties,

15   and following the hearing with Your Honor in November have

16   indicated and multiple times extended.  And most recently the

17   stay extension order now runs through the effective date of

18   the Plan.

19             The issue, Your Honor, is that we're now about three

20   weeks from the first set of liens expiring, the one is

21   expiring beyond the second set of liens July 23rd, a little

22   less than a month.  And quite frankly, Your Honor, insofar as

23   the effective date that comes prior to those dates, we

24   probably do not have an issue because the stay seems to have

25   effect under 362(c)(2)(C).

1        However, given that the Plan includes I think 21

2   contingent precedents, many of which are indeterminable on

3   their face, we're faced with the prospect of the effective

4   date not occurring prior to those one-year deadlines.

5        And so therefore what we ask, Your Honor, is to give

6   us authority and lift the automatic stay to do four things.

7   First, to amend the complaint that was filed against Ecopetrol

8   to name Talos as an individual party.  Second, to amend the

9   lease to name Talos.  Third and fourth, to file suit against

10  and file notice of lis pendens again to Houston Energy and Red

11  Willow with respect to our liens on Mississippi Canyon 519.

12        Thereafter, Your Honor, we would agree to re-

13  implement the automatic stay and extend the extension order to

14  the new lawsuit on MT519 unless and until the occurrence of

15  the effective date, that there wouldn't be any further

16  distraction in the (indiscernible) and Debtors, et cetera.

17        Your Honor, in the opposition filed by the Debtors,

18  albeit prior to confirmation, prior to the tremendous amount

19  of work and hard effort in getting to a largely consensual

20  confirmation order, the Debtors filed an objection really

21  based on three items.  First, they were concerned about the

22  Debtors being distracted during confirmation.  I will say I

23  believe the limited relief we've requested could have likely

24  been done by a stipulation and avoided briefing and a hearing,

25  but they opted not to get on that tab, and that's their

1    prerogative.

2           However, the distraction factor has now been mooted.

3    The case has been confirmed and we're now moving to a

4    confirmation order.

5           Second, they argue that the -- or the determination

6    on the policies on the dispositive motions in the pending

7    adversary we need relief from requested relief.  Your Honor,

8    we respond only to say that even insofar as Your Honor were to

9    rule in favor of the Debtors, our appeal period on such a

10   ruling would still not expire until after the applicable one-

11   year deadline.  And so in order to preserve our rights we

12   still need to file those lawsuits on or before July 16 and

13   July 23.

14          And then finally, Your Honor, they've raised the

15   prospects of Section 108(c), extending the deadline by 30

16   days.  And we set forth in our papers Section 108(c) is clear

17   that it's only applicable to claims against the Debtor.  And

18   while they cited no authority, we both have an found an

19   authority that it's specifically protected and they can give

20   us an additional 30 days.

21          And therefore, Your Honor, we would ask to take the

22   four limited steps set forth in our motion and we would agree

23   to reimposition of the automatic stay and application of the

24   stay extension order pending the effective date of the Plan.

25          THE COURT:  Mr. Kadden, thank you.

1          Who's going to respond for the Debtor?

2          MR. PEREZ:  Your Honor, I am.

3          THE COURT:  Go ahead, please.

4          MR. PEREZ:  Your Honor, a couple of points.  Number

5    one, obviously to the extent that the Court rules in our favor

6    with respect to any one of our summary judgments, this would

7    in essence moot it.  I understand Mr. Ord's (phonetic)

8    comments that they would want to preserve their ability to

9    appeal.  They don't have to do that right now, Your Honor.  At

10   the earliest they would be time barred in mid-July.  So

11   certainly to the extent that the Court rules between now and,

12   you know, even a few days before the 16th, the playing field

13   would be completely different.

14          And, Your Honor, the prejudice to us comes with the

15   incremental costs that we risk incurring if we lose.  And that

16   is -- that to the extent that there is an indemnification

17   obligation, that indemnification obligation would go -- would,

18   you know, continue to accrue even after we would -- you know,

19   even if we prevail that they're allowed to go forward at this

20   time.

21          So, Your Honor, at a minimum we would request that

22   if there is a -- that if the Court is inclined to lift the

23   stay before the Court rules that the stay not be lifted until,

24   you know, some time shortly before the 16th and shortly before

25   the 23rd so we minimize any impact and costs that potentially

1      the Debtors would be liable for, Your Honor.

2           THE COURT:  So, Mr. Kadden, what do you think of --

3      if we entered an order today and it stayed for 14 days, we're

4      talking about the 9th, if we did what you asked for and make

5      it explicit that the effect of the order, you know, occurs on

6      the 10th, because that would I think be what it would be as a

7      matter of law, we'll just make that clear, but in the meantime

8      we'll go ahead and hold the summary judgment hearing and see

9      what happens, which could moot it and no point in anybody

10     wasting money.  But assuming that you prevail on the summary

11     judgment, then on the 10th you could file what you need to

12     file.  Does that work, Mr. Kadden?

13          MR. KADDEN:  Your Honor, two comments.  One, I think

14     for purposes of timeliness that does, in fact, work.  Summary

15     judgment hearing has already been had, the matter's under

16     advisement, and so my only concern is even insofar as you were

17     to rule on or before July 10, we still need the ability to go

18     ahead and file those suits on or before the 16th.  Because the

19     appeal period will have not run in the period, even if you

20     were to issue a ruling this afternoon, we would still be

21     within the appeal period.

22          THE COURT:  You make a good point, Mr. Kadden.

23     First, and among other things, I didn't remember we'd already

24     had that hearing, so I'm going to have to go back and see what

25     the status of that is too.  What do you think of an order that

1      allows them to do that limited activity starting on the 10th

2      of July, Mr. Perez?

3              MR. PEREZ:  Your Honor, I think that's fine.  And

4      let me make one other point.  I would fully expect, Your

5      Honor, that if we go effective and the Court hasn't ruled, or

6      even if the Court has ruled, that we would seek to continue to

7      impose this -- you know, a stay pending, you know, final

8      resolution of that issue.  And it's probably the single

9      largest dollar amount in our -- in the comments, you know,

10     Mr. Green and Mr. Dane, so I really do think that the fact

11     that there is -- that we would go effective and the stay would

12     no longer affect, I clearly think that we would request that

13     that -- you know, that the whole thing be stayed until the

14     Court's able to --

15             THE COURT:  Yeah --

16             MR. PEREZ:  -- rule on our motion.

17             THE COURT:  -- I appreciate the heads up, and I'll

18     let you take that up when you get there.

19             For now I'm going to go ahead and grant the limited

20     relief requested by the movant.  I want the order to recite,

21     not just to rely on this 14-day stay so there's no confusion

22     about it.  And that the first day on which you can act under

23     it will be July 10.  I don't want to address the issue that

24     Mr. Perez is raising as to whether we would then extend the

25     stay past some effective date.  We'll deal with that when I

1    get an appropriate motion and can consider it.

2          So if you all can agree on the form of order, that

3    would be great.  It will be on the 10th and not 14 days.  So

4    if you takes you all five days to agree on a form of an order,

5    it's not going to cost you five days, Mr. Kadden, it'll -- I

6    want the specific date recited so that we don't have that kind

7    of an issue.  Okay?

8          MR. KADDEN:  Understood, Your Honor.  Thank you very

9    much.

10          THE COURT:  All right.  I show that concludes all

11    matters that we have.  Oh, wait, I have a motion to extend

12    time.  I'm not sure what that is.  Let me just see.

13        (Pause in the proceedings.)

14          THE COURT:  I didn't hear you?

15          UNIDENTIFIED SPEAKER:  I was going to ask one of the

16    Debtors (glitch in the audio), Your Honor.

17          THE COURT:  Just a minute.

18        (Pause in the proceedings.)

19          THE COURT:  It was a motion to extend time to file a

20    late filed objection to the Plan.  That is orally granted and

21    was considered.

22          All right.

23          MR. CARLSON:  Your Honor, we may --

24          MR. KADDEN:  I just want to quickly apologize.  I

25    did not realize I had failed to turn on my camera.  My

1    apologies, Your Honor.

2              THE COURT:  Yeah, we might have all been better off

3    that way, Mr. Kadden.  We just don't know.

4              (Laughter.)

5              MR. KADDEN:  Thank you, Your Honor.

6              MR. CARLSON:  Again, on behalf of everyone on our

7    team and all of our, you know, all of our clients, we really

8    want to thank you for all the time and effort that you put

9    into this and we really appreciate that we've gotten to this

10   point.  I believe that Mr. Dane wanted to say a couple few

11   words, if that's possible, Your Honor.

12             THE COURT:  Mr. Dane, good morning.  Let me get your

13   line active.  Good morning, Mr. Dane.  A pretty major

14   accomplishment for your company.  Congratulations.

15             MR. DANE:  Thank you very much, Your Honor.  I don't

16   want to take up too much more of the Court's time beyond the

17   year or so that this company has already taken in your court,

18   but I agree with you.  I did want to just take a couple of

19   minutes to acknowledge some of the parties that were involved

20   in this process.

21             Obviously, as Your Honor noted and many of the

22   parties noted, this has been a very long, very long process,

23   very complicated process with a lot of stakeholders.  As a

24   start we want to acknowledge the Court for the court and Your

25   Honor's time and dedication to this case.  We know that we've

1     put many, many issues in front of Your Honor and appreciate

2     all the thoughtfulness on each of the various topics.

3             I can say personally from me it's been a year-long

4     education process, and we all appreciate everything that the

5     Court has helped us accomplish through this restructuring.  We

6     did want you --

7             THE COURT:  Just don't come back for a graduate

8     degree, please.

9         (Laughter.)

10            MR. DANE:  I hope not.  It's not the intention, Your

11    Honor.

12            I did want to also acknowledge -- and I'm glad to

13    see Mr. Balasko joined us again -- the various folks that

14    Fieldwood has been engaged with at the Government.  I think

15    Mr. Balasko mentioned yesterday that the Government has spent

16    many hours working on this, I think that that's a patent

17    understatement.  I know that he's spent many, many hours and

18    it's been a momentous effort, took a lot of  patience.

19            And it's not just Mr. Balasko and his colleagues,

20    but also folks at the region as well whose job unfortunately

21    doesn't end here with the implementation of this Plan.  It's

22    going to require a lot of effort from those folks as well.

23    And so we appreciate all that effort.  And the Government was

24    very clear with Fieldwood from the outset about their

25    expectations for what this Plan needed to accomplish.

1          And there was frankly some very challenging

2     conversations, but what was apparent to the Fieldwood team was

3     how the folks that we worked with were just incredible

4     advocates for their department's interests.  You know, at

5     times almost too incredible for what we were hoping to

6     accomplish early on in getting this Plan pushed through

7     quickly.  But they did an amazing job, and they were very

8     important facilitators of the consensual arrangements that we

9     were able to accomplish that I know that we wouldn't have been

10    able to accomplish without their involvement.

11         And I'm pleased that my opinion, like I think I

12    heard Your Honor say, that I believe that this Plan is in the

13    best interest of the US, the Government, and we're excited to

14    be able to implement it.

15         One of the other things I wanted to mention, Your

16    Honor, at the outset of this case we made the comment that we

17    understood that our case presented a number of challenges to

18    many stakeholders, and that we were committed to finding as

19    many consensual resolutions as possible with this Plan, and I

20    believe we do do that.  But we're still committed to

21    continuing to resolve any parties' issues.  The company is

22    actively engaged in working with additional parties whose

23    issues may not have been resolved to their satisfy through

24    this order.  And our lines remain open to do so.  We're hoping

25    to put as many parties in the best possible place as we

1      possible can.

2              I did want to also acknowledge certain companies

3      that were instrumental in this Plan, and that's namely Apache,

4      Chevron, ENI and Hunt and their counsel.  These companies

5      recognized the challenges early on and they -- in my opinion

6      they stepped up and engaged with us in a very constructive way

7      to make this Plan happen.  I believe that they represent

8      really good corporate citizens and good overall business

9      people.

10             And so our commitment from Fieldwood's perspective

11     and the NewCo's perspective is to making sure that we can

12     successfully live up to the expectations that are outlined in

13     the Plan and that are outlined in these various consensual

14     arrangements.  And we appreciate the efforts of those various

15     companies and their contributions to this Plan.

16             Second to the last, Your Honor, Your Honor

17     acknowledged all the professionals in this case and this

18     really wouldn't have been possible without their effort.  I

19     would say it was a Herculean effort from the standpoint of the

20     professionals.

21             And that's really on all sides, I'm not only

22     speaking to the company and lenders' counsel, but all the

23     various professionals in this case.  I personally found it

24     very educational and enjoyable to get to understand all the

25     various parties and personalities and get to learn more about

1    those folks.   The intellectual horsepower that I observed

2    from this group was very intimidating, but also very, very

3    impressive.

4              So I really do want to say thank you to the Debtors'

5    and the lenders' professionals in particular because it's --

6    their contribution is really indescribable and it wouldn't

7    have been achievable without their amazing efforts.

8              And then lastly, Your Honor, the employees and

9    contractors of this company.  I know that we have -- we've

10   told Your Honor many times how vast, you know, our operations

11   are, but there's literally thousands of folks that have been

12   watching this process unfold for a very, very long time, and I

13   wanted to acknowledge those employees and contractors for

14   their dedication and efforts, despite all the challenges.

15             And there really was so many things that came to pop

16   up over the last year starting with the price challenges and

17   then we had COVID and then we had the continuing uncertainty

18   of this process.  We had an unprecedented hurricane season

19   last year.  There was just a number of things that continued

20   to present themselves as challenges throughout the course of

21   the last year or so.

22             We committed to communicating with these parties as

23   best as we could throughout the process.  I hope that we lived

24   up to their expectations from that standpoint.  But they were

25   all watching this for a very long time.  And these people

1    supported the business in an unbelievable way throughout all

2    these challenges.  It wouldn't have been possible to maintain

3    this business without their dedication.  And I know we all

4    know this, but the decisions that are made through this

5    process amongst all the parties have a very real impact on all

6    these people.

7              So I wanted to -- speaking on behalf of all of

8    Fieldwood employees and contractors, I did want to thank the

9    Court and all the other parties for providing an opportunity

10   for us to be able to look forward to the future of this

11   company and what we're able to accomplish under this Plan.  So

12   thank you very much, Your Honor.

13             THE COURT:  Mr. Dane, thank you so much for the

14   comments.  They are not unexpected given the quality that you

15   and your staff have shown throughout this case, that you would

16   recognize others, and it's very appreciated.  Thank you.

17             MR. DANE:  Thank you, Your Honor.

18             THE COURT:  Anybody else?  Ms. Russell, I see you

19   there, and I think about people like, you know, you and

20   Mr. Schaible who I will just highlight where you all don't

21   speak a whole lot at the hearings because you got all your

22   work done behind the scenes, as you typically do.  And so

23   we've got lawyers that don't get that well recognized at

24   hearings because the big heavy lifting in a case like this

25   isn't at the hearings, it's getting deals done.

1          And when I think of how you and Mr. Schaible must

2     have worked hand-in-hand to get that done as sort of the two-

3     lead outside counsel, it's just so impressive that -- what you

4     all did.  I know he's not here, but I hope you'll pass on to

5     him that I recognize that the two of you were in large part,

6     as you usually are, making deals behind the scenes, and it's

7     appreciated.

8          All right.  Yes, somebody else wanted to speak.  Go

9     ahead.  Ms. Russell, that's you.  Go ahead.

10          MS. RUSSELL:  Yes, Your Honor.  Thank you for your

11     kind comments.  And we echo then (indiscernible).  There were

12     so many wonderful professionals involved in this case, and we

13     appreciate all that Weil and Davis Polk and the company did to

14     get across the line.  But you, Your Honor, were perhaps the

15     most important piece of this, giving people hearings quickly

16     and considering all the different complicated arguments and

17     getting us to the right place.  Thank you.

18          THE COURT:  Well, that's actually not accurate.  I

19     mean in fairness I mean judges do play a major role in a case

20     like this, but we can't determine the outcome.  The outcome is

21     determined is by the parties that are able to put together

22     such a complicated transaction.

23          You know, I've spoken before, and I believe even in

24     these hearings, that people think that the Government is just

25     full of mindless bureaucrats, and when you look at what the

1    Government has done in a case like this to represent the

2    interests of the people in the United States, not in a

3    mindlessly bureaucratic way but in a way where they have, you

4    know, maximized the outcome.  And, you know, that's a credit

5    to Mr. Balasko.

6          He stands on the shoulders of Ms. Hudson, who I

7    think paved the way for this type of effort to occur where the

8    Government has decided to take a realistic approach to having

9    to solve problems.  And when we think of all the people that

10   came together on this, it wasn't me.  It was you and the

11   Debtors and the Government and everyone.

12         So I appreciate the comments and I may have given you

13   all the ability to go get a deal done, but I didn't get the

14   deal done.  You all got the deal done, and it's very

15   appreciated.

16         All right.  Well, hold on, I've got one other person

17   that wants to talk.  Oh, that was just you again.  Okay.

18         Thank you.  We're in adjournment until 11:00 o'clock

19   this morning.

20         (Hearing adjourned 9:45 a.m.)

21

22

23

24

25                          *  *  *  *  *

1           *I certify that the foregoing is a correct transcript*

2       *to the best of my ability due to the condition of the*

3       *electronic sound recording of the ZOOM/telephonic proceedings*

4       *in the above-entitled matter.*

5        */S/   MARY D. HENRY*

6       *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7       *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

8       *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9       *JTT TRANSCRIPT #64188*

10      *DATE FILED:  JULY 1, 2021*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25