IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY III LLC,** *et. al.*, | § | Case No. 20-33948(MI) |
| | § | |
| Post-Effective Date Debtors.¹ | § | **(Jointly Administered)** |
| | § | Re. ECF No. 2199 |
| ------------------------------------------------- | § | |
| | § | |

**REPLY IN SUPPORT OF EMERGENCY MOTION OF QUARTERNORTH ENERGY LLC TO ENFORCE THE CONFIRMATION ORDER AND PLAN**

QuarterNorth² files this *Reply in Support of Emergency Motion of QuarterNorth Energy LLC to Enforce the Confirmation Order and Plan* (the "**Reply**") to *BP Exploration & Production Inc.'s Objection to Emergency Motion of QuarterNorth Energy LLC to Enforce the Confirmation Order and Plan* (ECF No. 2278) (the "**Response**"), and in support states the matters set forth below.³

---

¹ The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy Inc. (4991); GOM Shelf LLC (8107); and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Emergency Motion of QuarterNorth Energy LLC to Enforce the Confirmation Order and Plan* (ECF No. 2199) (the "**Motion**"). Exhibits cited herein refer to *QuarterNorth Energy LLC's Witness and Exhibit List for Hearing on November 30, 2021* (ECF No. 2269) (each exhibit thereto is the "**QuarterNorth Exhibit** [No.]").

³ QuarterNorth reserves all rights to respond more fully to BP's newest arguments in the hearing or in subsequent litigation.

**REPLY SUMMARY**

1. The Court should grant the Motion because BP has not and cannot demonstrate that it has a valid setoff right against QuarterNorth for at least two independent reasons.

2. First, there is no mutuality. The plain language of Paragraph 133 of the Confirmation Order only reserved any valid setoff rights held by BP against QuarterNorth under BP executory agreements that were assumed and assigned to QuarterNorth. On the August 27, 2021 Effective Date, the Isabela PSA was assumed and assigned to QuarterNorth, while the Genovesa PSA was rejected by the Debtors. Thus, even if BP held a contingent right to setoff amounts against the Debtors across two separate agreements prior to the Effective Date—which QuarterNorth disputes—because the Genovesa PSA was rejected, there is no mutuality to support a setoff right.

3. Second, BP has not and cannot demonstrate it ever held a valid setoff right across the contracts in question. For the third time now, BP has failed to satisfy its burden to establish what law—Texas law or otherwise—gives it a setoff right that the Bankruptcy Code could preserve. Fieldwood and now QuarterNorth has pointed this out every time and BP has failed to provide an answer each time.

4. Instead of addressing QuarterNorth's arguments, BP attempts to cobble together arguments that fail for several reasons. First, BP argues that Paragraph 133 somehow gives them the right to set off amounts against the Genovesa PSA. In making this argument, BP incorrectly asserts that the Genovesa PSA is included within the definition of "BP Executory Contracts" to which Paragraph 133 applies. In fact, the Genovesa PSA is not and never was a BP Executory Contract. The Confirmation Order defines "BP Executory Contracts" as "the Executory Contracts identified on the Schedule of Assumed Contracts between any of the Debtors and any BP Entity." Confirm. Ord. ¶ 133. The Genovesa PSA is not and was never listed on the Schedule of Assumed

2

Contracts, and thus is not a BP Executory Contract subject to the language of Paragraph 133. As such, Paragraph 133 of the Confirmation Order does not give BP the right to set off amounts BP owes to QuarterNorth under the Isabela PSA against amounts allegedly owed by the Debtors under the rejected Genovesa PSA.

5. Second, BP attempts to argue that statements made at the confirmation hearing and emails between the parties' counsel post-confirmation granted BP a right to set off amounts allegedly owed by the Debtors under a rejected contract against valid amounts owed by BP to QuarterNorth under a contract that was assumed and assigned to QuarterNorth. As explained below and as QuarterNorth will further explain at the hearing, none of these statements give BP the additional setoff rights it asserts to have beyond Paragraph 133, and most if not all of them are taken out of context—in fact, some of the comments support QuarterNorth's position.

6. Third, and tellingly, BP ignores the below setoff argument timeline, which shows that BP itself did not think Paragraph 133 resolved the BP Setoff Motion as BP continued to assert the Motion and only withdrew it a month after the confirmation order was entered:

**BP's Setoff Argument Timeline** — Weil

| Date (2021) | ECF | Event |
|---|---|---|
| June 2 | 1468 | BP's Confirmation Objection |
| June 13 | 1553 | Fieldwood's Reply |
| June 20 | 1666 | **BP's Setoff Motion**. Hearing scheduled <u>July 16</u>. |
| June 24 | 1787 | Confirmation hearing. BP announced Paragraph 133 reserves adjudication of BP's Setoff Motion |
| July 8 | 1843 | Fieldwood's Opposition to BP's Setoff Motion |
| July 13 | 1874 | BP filed opposed motion to continue hearing |
| July 16 | | Originally scheduled hearing. Continued to <u>July 28</u> at BP's unilateral request |
| July 26 | 1921 | BP withdrew BP's Setoff Motion |
| July 28 | | Rescheduled hearing. Canceled by BP's unilateral withdrawal of its motion |

7. For these reasons and as set forth below and in the Motion, the Court should grant the Motion and order BP to comply with the Plan.

## REPLY

### I. Paragraph 133 Makes Clear There is No Right to Setoff

8. The Confirmation Order includes three paragraphs relevant to setoff—paragraphs 18, 20 and 133—and they must be read in harmony. *In re Linn Energy, LLC*, 576 B.R. 532, 535–539 (Bankr. S.D. Tex. 2017) (stating that a confirmed plan should be interpreted using principles of contract interpretation such that the all provisions within the plan are reconciled). Paragraph 18 says QuarterNorth bought the Isabela PSA "free and clear of all . . . off-sets." Paragraph 20 says QuarterNorth "shall [not] have any successor or vicarious liability of any kind . . . with respect to the Credit Bid Acquired Interests"—including the Isabela PSA—"other than the Credit Bid Assumed Liabilities[4] . . . ." Paragraph 133 says the "assumption and assignment . . . of any BP Executory Contract"—which includes the Isabela PSA, but *excludes* the Genovesa PSA[5]—"shall not alter . . . any of the parties' respective rights and obligations under the BP Executory Contracts including . . . any valid netting (either based on setoff or recoupment) . . . under the BP Executory Contracts or pursuant to applicable law . . . ."

9. These provisions unambiguously demonstrate that BP does not hold any alleged setoff rights arising under the rejected Genovesa PSA against QuarterNorth.

10. Indeed, the history of the parties' briefing on this issue confirms this interpretation. BP filed its Objection arguing for setoff and Fieldwood pointed out "BP has not made any

---

[4] The Credit Bid Assumed Liabilities are irrelevant here.

[5] BP misrepresents to the Court that "BP Executory Contract" includes the Genovesa PSA. Resp. ¶ 33. "BP Executory Contract" means "the Executory Contracts identified on the Schedule of Assumed Contracts between any of the Debtors and any BP Entity." Confirm. Ord. ¶ 133. The Schedule of Assumed Contracts does not include and, in fact, never included the Genovesa PSA. *See* QuarterNorth Ex. 5 (the effective Schedule of Assumed Contracts).

4

argument for, much less established any of the elements of, setoff." Fieldwood's Reply ¶ 130.  Of course, Fieldwood would never have agreed to language that conceded $30 million on account of what it considers to be a baseless claim.

11. BP apparently conceded the point because one week later—the day before the confirmation hearings began—BP took a second bite of the same apple, attempting (but failing) to fix the deficiencies Fieldwood had pointed out.  *See generally* BP's Setoff Motion.  Yet, it was not BP's Setoff Motion that posed any obstacle to confirmation of Fieldwood's Plan (even if BP's Setoff Motion had any merit to begin with): only BP's Objection stood in the way, which even BP had all but conceded was fatally flawed.  Rather than let the Court rule on its flawed setoff motion, BP agreed to Paragraph 133 to preserve the issue for the hearing on BP's Setoff Motion that was already scheduled.  In introducing Paragraph 133, BP's own counsel reminded the Court of this very hearing.  June 24, 2021 Hr'g Tr. 69:9–13 (ECF No. 1787) (BP said this "language confirms that BP's set off rights are reserved and preserved, which is the subject of [BP's Setoff Motion] set for hearing" on July 16, 2021).

12. BP not only misreads the Confirmation Order and the history of the briefing, but also ignores inconvenient facts in an effort to suggest it has a right to setoff it does not and never did have.

13. First, BP ignored paragraphs 18 and 20 of the Confirmation Order, the paragraphs most explicitly addressing the effect of Confirmation on QuarterNorth's assets.  The only time BP even referenced them was to claim once—without analysis or explanation—that they did not matter because Paragraph 133 superseded them.  *See* Resp. ¶ 28.  This is incorrect because paragraphs 18, 20, and 133 make sense read together, as explained above.

14. Second, BP reiterated that Paragraph 133 preserved BP's valid setoff rights with respect to executory contracts with BP that were assumed and assigned to QuarterNorth, but never established it has any valid rights to preserve. *E.g.*, Resp. ¶ 1, 2, 3, 4, etc. Indeed, the question of the validity of any alleged setoff rights was precisely what the parties left for resolution at the then-imminent hearing on BP's Setoff Motion.

15. Third, BP misrepresents the meaning of "BP Executory Contracts." *See supra* note 5. BP likewise misrepresents the text of QuarterNorth's Motion. Resp. ¶ 33. QuarterNorth argued "***subparagraph ii*** merely says the Plan and Confirmation Order do not alter the terms of the Isabela PSA," as indeed it does. Mot. ¶ 28 (emphasis added); *see* Confirm. Ord. ¶ 133 ("the Plan and this Order shall not alter any of the terms under the BP Executory Contracts"). BP then quotes ***subparagraph iii*** with only a citation to Paragraph 133 generally in support of its claim that "QuarterNorth also deliberately misreads and attempts to rewrite [P]aragraph 133 . . . to advocate a position that was expressly overruled by the Court[6] . . . ." BP argued the Court confirmed Paragraph 133 preserves setoff rights, "*both* pursuant to contract *and* pursuant to applicable law." Yet, QuarterNorth itself acknowledged and does not contest that "BP is welcome to net mutual debts" between the same parties "to the extent allowed ***by law and contract***." Mot. ¶ 28. QuarterNorth stands by the whole text of the Confirmation Order and of the record.

16. Fourth and similarly, BP takes Cox's counsel's statements on the record and QuarterNorth's email out of context, as is plain from the text of both. In fact, the language they

---

[6] Further, BP claims that the Debtors argued on the record that "BP's preserved setoff rights should be limited to contractual setoff rights, and exclude setoff rights under applicable law." Resp. ¶ 33 (citing June 25 [sic], 2021 Hr'g. Tr., 69:3-73:2). But, this was not the substance of Debtors' objection at all. *See* June 24, 2021 Hr'g Tr. 69:3–73:2. BP sought to change the language of Paragraph 133 to be more like XTO's (*see id.* at 69:25–71), and the Debtors were concerned that parties like BP wanted to change the negotiated language after seeing other parties' language: "it's like they want a[ Most Favored Nation clause]." *Id*. at 70:21. Counsel went on and said "[if] it is pursuant to applicable law and [the] contract doesn't prohibit it, that's one thing, your Honor." *Id*. at 71:20–21.

6

point to actually supports QuarterNorth's position. In fact, the Court's resolution of Cox's objection regarding potential secured rejection damages claims as a co-working interest owner provide further clarification that alleged set off rights under rejected contracts were not preserved by BP under Paragraph 133 of the Confirmation Order. Cox's counsel specifically requested that the Court expand the application of Cox's reservation of rights to all of Cox's executory contracts in paragraph 147 of the Confirmation Order rather than just the assumed executory contracts between the Debtors and Cox. *See* Confirmation Hearing Transcript at pg. 706; Confirmation Order, para 147. The Court declined Cox's request to the resolve the issue of whether Cox held a secured rejection damages claim against the Debtors' estates based on alleged pre-effective date set off rights.

17. Similarly, BP incorrectly asserts that QuarterNorth's counsel "confirmed that BP's setoff rights were preserved notwithstanding the Sale." QuarterNorth's counsel's September 10, 2021 email to BP's counsel states as follows:

> "QuarterNorth Energy LLC and its affiliates confirm that none of the changes to the Credit Bid PSA filed with the Plan Supplement at Docket No. 2013, including the change to section 11.1(n), impairs any setoff and recoupment rights reserved by the BP Entities under the Confirmation Order (Docket No. 1751)."

18. QuarterNorth's counsel sent the above email in response to inquiries from BP's counsel seeking confirmation that any changes made to the Credit Bid PSA did not modify any rights that were reserved by BP in Paragraph 133 of the Confirmation Order. The email cited above does not state BP reserved any rights beyond what was reserved under Paragraph 133 of the Confirmation Order, which plainly only applies to reservation of rights under assumed executory contracts with BP.[7]

---

[7] BP also raises the Credit Bid PSA § 11.1(n) in its background section but then does not rely on it at all in its argument section. *See* Resp. ¶ 16. Nevertheless, BP's interpretation is meritless for a number of reasons. Among other reasons, Section 11.1(n) refers to "all Liabilities . . . with respect to any Claim or cause of action assigned to Buyer ***pursuant***

## II. BP Has No Legal Basis For Setoff

19. BP has no legal basis to assert a purported right to set off Fieldwood's alleged debt against what BP owes QuarterNorth.

20. It appears BP copied and pasted the relevant sections of BP's confirmation objection into the Response at paragraphs 43 to 51, adjusted a few details, and represented the same arguments warrant greater consideration today than they did pre-confirmation. They do not. In the intervening time, Fieldwood pointed out how BP's Objection did not establish any right to setoff, but merely assumed one, despite BP's obligation to establish such a right in the first instance. Fieldwood's Reply ¶ 130. BP tried again in BP's Setoff Motion, and again, Fieldwood pointed out how BP failed to establish "the threshold question of what it means to have a right to setoff under Texas law." Fieldwood's Opp. ¶ 17.[8] In QuarterNorth's Motion, QuarterNorth even incorporated Fieldwood's Reply by reference (Mot. ¶ 29 n.15), reiterated what the law of Texas is on setoff, and pointed out how BP does not meet it. BP, though, in its Response, recycled its first iteration of its arguments without substantive revision.[9] Despite Fieldwood's repeated objections and QuarterNorth's reminder, BP has never established it has a right to setoff. The Court should

---

*to Section 1.2(i), Section 1.2(w) and Section 1.2(rr)*," none of which sections are relevant. (Emphasis added). The Isabela PSA is not a "Claim" assigned pursuant to Section 1.2(i), (w), or (rr), but rather pursuant to (z).

[8] QuarterNorth, also, incorporates the arguments made in Fieldwood's Opposition by reference. BP claims Fieldwood's Opposition raised only a ripeness defense, but that betrays BP's lack of understanding of Texas law. Resp. ¶¶ 18, 34. Under Texas law, as explained in Fieldwood's Opposition, BP had and has no valid right to setoff.

[9] BP's next multi-million dollar payment is due today, so QuarterNorth asked for the Court's help only at the last possible moment. BP, though, complains QuarterNorth is unjustified in claiming BP's actions do not constitute an emergency. Yet, it was (again) BP that caused the emergency. It withdrew BP's Objection, only to recycle it wholesale 6 months later. It withdrew BP's Setoff Motion, only to try to enforce the same requested remedy on its own. It is denying newly emergent QuarterNorth millions of dollars of cash without permission and without warning, millions QuarterNorth was planning on having for its operations. BP created the emergency, so it should not be heard now to complain about it. Moreover, BP had 21 days to draft its response, even assuming it could not have started doing so from the moment it finished BP's Setoff Notice. BP, in turn, gave QuarterNorth less than 21 hours to reply.

disregard BP's third unjustified (and unjustifiable) request that the Court manufacture a state-law right even BP cannot find in Texas statutes or case law.

21. Moreover, even if BP had a right to setoff for the Bankruptcy Code to preserve, BP's arguments about the Bankruptcy Code are similarly meritless. BP claims Section 553 preserves its right to pursue QuarterNorth for Fieldwood's debts, but by its own terms, Section 553 requires mutuality of parties: "this title does not affect any right of a creditor to offset a **mutual debt owing by such creditor to the debtor** that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." (Emphasis added). Thus, on top of any limitations imposed by Texas law on setoff, the Bankruptcy Code only preserves a creditor's right for mutual pre-petition claims between it and the debtor. If Texas law provided for such a setoff and BP had shown setoff applied to this case, even still, the Bankruptcy Code would only preserve such a right against the debtor not against the purchaser of some of the debtor's assets. As reinforced by paragraphs 18 and 20 of the Confirmation Order, QuarterNorth and the Post-Effective Date Debtors are not the same party, so BP cannot set off debts between them. Here, BP is trying to collect on a claim allegedly owed by the Debtors by foreclosing on property interests that QuarterNorth acquired free and clear of any rights of off-set and of any successor liability. BP has no right to withhold QuarterNorth's money because of Fieldwood's debt.

## CONCLUSION

WHEREFORE, QuarterNorth respectfully asks the Court to find that BP's self-help setoff is a violation of the Plan and the Court's Confirmation Order, and order BP not to do so again and award QuarterNorth its reasonable and necessary attorneys' fees under Section 38.001(b)(8) of the Texas Civil Practice & Remedies Code.

Dated: November 30, 2021
      Houston, Texas

    */s/ Paul R. Genender*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com
         Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
         Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
         Erin.Choi@weil.com

*Attorneys for QuarterNorth Energy LLC*

**Certificate of Service**

I hereby certify that, on November 30, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                          */s/ Paul R. Genender*
                                          Paul R. Genender