1                IN THE UNITED STATES BANKRUPTCY COURT

2                FOR THE SOUTHERN DISTRICT OF TEXAS

3                         HOUSTON DIVISION

4    IN RE:                       §      CASE NO. 20-33948-11
                                  §      JOINTLY ADMINISTERED
5                                 §      HOUSTON, TEXAS
     FIELDWOOD ENERGY, LLC,       §      TUESDAY,
6                                 §      NOVEMBER 30, 2021
          DEBTOR.                 §      2:31 P.M. TO 3:32 P.M.
7
                          MOTION HEARING
8
              BEFORE THE HONORABLE MARVIN ISGUR
9                UNITED STATES BANKRUPTCY JUDGE

10

11

12       APPEARANCES:                      SEE NEXT PAGE

13

14       (Recorded via CourtSpeak)

15

16

17

18

19

20                  TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                    935 Eldridge Road, #144
22                  Sugar Land, TX 77478
                       281-277-5325
23               www.judicialtranscribers.com

24

25     Proceedings recorded by electronic sound recording;
          transcript produced by transcription service.


                  JUDICIAL TRANSCRIBERS OF TEXAS, LLC

1                      APPEARANCES (VIA ZOOM):

2

3   FOR QUARTER NORTH:              WEIL GOTSHAL & MANGES, LLP
                                    Paul Genender, Esq.
4                                   Alfredo Perez, Esq.
                                    Cliff Carlson, Esq.
5                                   Erin Choi, Esq.
                                    Kevin Simmons, Esq.
6                                   200 Crescent Court, Ste. 300
                                    Dallas, TX  75201-6950
7                                   214-746-7877

8   FOR BP EXPLORATION:            GREENBERG TRAURIG, LLP
                                    Shari Heyen, Esq.
9                                   Craig Duewall, Esq.
              (Via Telephone) - Karl Burrer, Esq.
10                                  John Hutton, Esq.
                                    Ryan Wagner, Esq.
11                                  Jared Weir, Esq.
                                    1000 Louisiana St., Ste. 1700
12                                  Houston, TX  77002
                                    713-374-3500

13

14

15

16

17

18

19

20

21

22

23

24

25

| 1 | **HOUSTON, TEXAS; TUESDAY, NOVEMBER 30, 2021; 2:31 P.M.** |
|---|---|

1      **HOUSTON, TEXAS; TUESDAY, NOVEMBER 30, 2021; 2:31 P.M.**

2              THE COURT:  All right.  We are here in the

3    Fieldwood Energy matter.  It is 20-33948.

4              If you wish to speak today, if you will please

5    press five star if you're coming in remotely and if you're

6    here in Court, if you'll stand at the podium and briefly

7    make your appearance, sort of, the old-fashioned way.

8              Mr. Genender?

9              MR. GENENDER:  Good afternoon, Your Honor.  Paul

10   Genender, Weil Gotshal & Manges.  And I'm here with my

11   colleagues, Alfredo Perez, Erin Choi, Cliff Carlson, and

12   Kevin Simmons.

13             THE COURT:  All right.  Thank you.

14             MS. HEYEN:  Good afternoon, Your Honor.

15             THE COURT:  Good afternoon.

16             MS. HEYEN:  Good to see you.  Shari Heyen of

17   Greenberg Traurig on behalf of BP Exploration & Production.

18   Joining me in the courtroom today are Mr. Craig Duewall,

19   Mr. John Hutton, Mr. Ryan Wagner, and Mr. Jared Weir.

20             Thank you.

21             THE COURT:  Good afternoon.  It's good to have

22   everybody back.

23             MS. HEYEN: Thank you.

24             THE COURT:  If anyone on the phone wishes to

25   appear, again you'll need to press five star.

1        There are some little postings about the masks,

2   making them your discretionary masks, so you-all do what you

3   want to on that.  I just don't want anybody feeling

4   uncomfortable one way or the other.

5        All right.  Looks like that all the people who

6   intend to speak are going to be here.  We do obviously have

7   some people that are watching and you can see them up on the

8   screen.

9        So I guess it is your motion, Mr. Genender, but I

10  want to start by finding out who thinks this is ambiguous

11  and who thinks that I have an unambiguous document that I

12  just need to rule on, because I want to figure out why some

13  of -- if the document is unambiguous, why I would admit some

14  of this stuff that people are proposing to admit?  If you

15  think it's ambiguous, I would understand why, but I want to

16  start by hearing whether I have an ambiguous document and

17  what, I guess, along with that is what is then the

18  controlling document, if it is unambiguous.

19       So I'll make you go first, Mr. Genender, and then

20  we'll have Ms. Heyen go.  Sorry.

21       All right.  Mr. Genender?

22       MR. GENENDER:  Your Honor, Paul Genender for

23  QuarterNorth.

24       We do not contend that the governing document is

25  unambiguous -- I mean, is ambiguous, excuse me, I misspoke.

1    First time in front of you in a year and a half in person.

2              The document is unambiguous.

3              THE COURT:  Okay.

4              MR. GENENDER:  And in terms of what we think you

5    need --

6              THE COURT:  Which document do you believe is the

7    one that's unambiguous that controls the decision?

8              MR. GENENDER:  I think it's the -- well, I think

9    it's the Confirmation Order primarily and --

10             THE COURT:  Is it the first one where Mr. Carlson

11   -- and I know this is now leaving things a little bit, says,

12   "Don't worry, the second Order doesn't change whatever the

13   outcome of this dispute will be."

14             So should I look at the first Order or the second

15   Order?

16             MR. GENENDER:  I think you can look at either or

17   both.

18             THE COURT:  Okay.

19             MR. CARLSON:  Your Honor, that's not exactly

20   correct.

21             MR. GENENDER:  Yeah, because I think it's the

22   email you're referring to may not -- I may let Mr. Carlson

23   speak to the question on the email, if that's okay with the

24   Court?

25             THE COURT:  No.  You think -- I'm just trying to

1  figure out which document you think and you're telling me I

2  can use either the first Order or the second Order.

3          MR. GENENDER:  We have -- yeah, we have focused on

4  -- well, the parties have briefed paragraphs 18, 20, and

5  133.

6          THE COURT:  Uh-huh.

7          MR. GENENDER:  Those paragraphs are unambiguous in

8  our view.

9          THE COURT:  18, 20, 133?

10          MR. GENENDER:  18, 20, and 133, yes, sir.

11          THE COURT:  Are the same?

12          MR. GENENDER:  Yes.

13          THE COURT:  Okay.

14          MR. GENENDER:  And as it relates to the evidence,

15  the evidentiary record that we were proposed to put in,

16  which is 2269-1 through -9, which I do not believe there's

17  an objection to the entry of those into evidence, which I'd

18  move into evidence.

19          I don't think that strays into the world of

20  evidence that would suggest that we're dealing with an

21  ambiguous contract to the contrary.  I think is it all

22  necessary?  A 100 percent?  Probably not, but we think

23  that --

24          THE COURT:  Well, the hearing transcript goes to

25  interpret the Order.  I'm not going to look at the hearing

1   transcript if we have an unambiguous --

2           MR. GENENDER:  And you're -- that's true, Your

3   Honor.  We don't need -- I don't think we need hearing

4   transcripts from either side for an evidentiary basis unless

5   it were -- unless there were specific evidentiary basis to

6   introduce --

7           THE COURT:  I don't know why we need Mr. Vaughn's

8   declaration.

9           MR. GENENDER: Mr. Vaughn's declaration, Your

10  Honor, I think sets forth an undisputed fact as to the

11  amount, but I understand that, as well.

12          We're seeking to enforce -- I think Mr. Vaughn's

13  declaration needs to let you know on an evidentiary basis

14  that we didn't get paid, you know, for those violations of

15  the Order.

16          THE COURT:  Okay.  Yeah, I don't -- okay.  I

17  guess --

18          MR. GENENDER:  But I don't think -- that's not in

19  dispute.

20          THE COURT:  -- I guess that's right.  Okay.

21          MR. GENENDER:  That's not in dispute.

22          THE COURT:  Ms. Heyen, what do you think I've got?

23  Do you think that I have an ambiguous paragraph?

24          MS. HEYEN:  I think Your Honor --

25          THE COURT:  Do you think it's 18, 20, and 133?

1  And do you think that they are ambiguous?

2         MS. HEYEN:  Thank you, Your Honor.  Mr. Duewall is

3  going to lead the --

4         THE COURT:  Mr. Duewall, go ahead.

5         MS. HEYEN:  -- dialog today.

6         MR. DUEWALL:  Good afternoon, Your Honor.  I don't

7  believe we have an unambiguous document.  It's my

8  understanding we have one Order --

9         THE COURT:  You think it is ambiguous?

10         MR. DUEWALL:  It's not ambiguous.

11         THE COURT:  Okay.  You think we have an

12  unambiguous document?

13         MR. DUEWALL:  Correct.

14         THE COURT:  Okay.

15         MR. DUEWALL:  Correct.  And I think we have one

16  Order and I think we have two PSAs --

17         THE COURT:  Got it, sorry.

18         MR. DUEWALL:  -- but if the extent of the Court's

19  question is whether or not it's ambiguous, it's not

20  ambiguous --

21         THE COURT:  And do we have any dispute that you

22  didn't pay them and that the payment that you -- and that

23  you didn't do that because of an offset, and that it's not

24  often that the offset came out of a contract that wasn't to

25  suit?

1          MR. DUEWALL:  That's correct.

2          THE COURT:  So those are all stipulated facts.

3          MR. DUEWALL:  Those are all stipulated facts.  I

4   do think there is a bit of a nuance here in terms of what

5   they're seeking under their motion.  You know, they're

6   seeking whether or not, you know, we have a setoff right and

7   whether we've executed that right in bad faith.  I think

8   that's the scope of their Order.  I don't know -- or their

9   motion.  I don't know that their motion gets to the kind of

10  third step as to whether or not we're right under the setoff

11  analysis, but I leave that to the Court's discretion, as

12  well, but I raise that issue as a threshold matter.

13         THE COURT:  Fair enough.  So I don't -- I think

14  what I would like to do and it's -- you-all tell me if you

15  think I'm doing this wrong is if those facts are undisputed,

16  and I took it that they were when I started, I really want

17  to hear argument then about what the contract says and how

18  to interpret it in you-all's mind so that I can hear each

19  side's -- what they believe to be unambiguous interpretation

20  of contract and not look to extraneous evidence until I

21  determine that, in fact, the contract is ambiguous.

22         I don't think that I ought to be looking at

23  hearing transcripts yet.  I don't think that I ought to be

24  looking at, you know, somebody's interpretation yet or what

25  someone said in an email that it meant.  The only part of

1  that that I feel that may be a little bit different is I

2  would let you guys rely on, is it 1780?  Whatever the Order

3  is where you do get an email that says you needn't worry

4  that we're doing anything different here.

5          MR. DUEWALL:  Right.

6          THE COURT:  Because that would go to whether you

7  guys had a reliance interest in that Order and I'm going to

8  -- at least for the purpose of this, assume that you had a

9  reliance interest in the Order the way it was written that's

10 unambiguous.

11         So I think we probably need to let Mr. Genender

12 start the argument, but I'm -- unless you want to argue to

13 me that I'm wrong and I should open this all up and start

14 hearing everybody else's views of, you know, what they

15 thought and what it might mean, other than just reading the

16 words?

17         MR. DUEWALL:  No, Your Honor.  We're prepared to

18 present our argument pursuant to the contract -- or the

19 Order and the PSA terms.

20         THE COURT:  Mr. Genender, do you have any problem

21 with that?

22         MR. GENENDER:  No, Your Honor.  Not at all.

23         THE COURT:  Burden is on you.

24         MR. GENENDER:  Thank you very much.

25         THE COURT:  What do you want me to look at?

1          MR. GENENDER:  I think --

2          THE COURT:  Your Exhibit 1?

3          MR. GENENDER:  Sure.  I think it's really -- I

4    think it's really our Exhibit 2.

5          THE COURT:  Your Exhibit 2.

6          MR. GENENDER:  26 -- 2269-2 and I think that --

7    which contains the paragraphs 18, 20, and 133 that I

8    referenced a moment ago, and I think that from those texts,

9    Your Honor, it establishes really the two points that we

10   made in our reply that was filed a little while ago that I

11   hope the Court had an opportunity --

12         THE COURT:  I read it.

13         MR. GENENDER:  Yeah.  I think it establishes from

14   that on the Record before you, Your Honor, that there's no

15   mutuality to support setoff, that anything that was

16   preserved in paragraph 133 relates to the contract that was

17   assumed.  That the Genovesa (phonetic) contract was not

18   assumed.  In fact, it was rejected.  It is not listed and

19   the Court can certainly -- this is our Exhibit 2269-5 -- can

20   certainly see on that document that the Isabella contract is

21   assumed and can see on that not only that the Genovesa

22   contract was not assumed, but can accept -- take judicial

23   notice of the fact it was rejected.

24         And that the language, the actual language in

25   paragraph 133 -- which thank you, I see you have up and I

1   appreciate that.

2          Everything about the language -- I'm not going to

3   read it word-for-word -- but speaks to -- it refers to BP

4   Executory Contracts and BP Executory Contacts are -- do not

5   include the Genovesa Agreement, Your Honor.  It includes the

6   Isabella Agreement and therefore, of course, QuarterNorth

7   stands behind the good and the bad in the contract, the

8   benefits and the obligations in the contract it assumes.

9          THE COURT:  So take a look at subparagraph (2) and

10  subparagraph (3).

11         MR. GENENDER:  Sure.

12         THE COURT:  And it talks about valid netting

13  within those contracts.

14         MR. GENENDER:  Yes.  So if there is -- if there is

15  something to be netted within the Isabella PSA --

16         THE COURT:  Well, if the Isabella PSA, and I

17  haven't read the Isabella PSA.  And maybe I need to get that

18  in here, but if the Isabella PSA would have authorized under

19  its own terms -- not under some common law just for a moment

20  -- a setoff against a non-assumed executory contract, is

21  that incorporated into the little 2 and little 3?

22         MR. GENENDER:  It could be.  It could be.  I don't

23  think it does that, but it could be.  And I also might take

24  a step back, Your Honor -- and this is in our motion papers,

25  original motion paragraph 29.  In order for -- there's a

1  couple steps that BP has skipped here.  One step that they

2  have skipped is that they have to show under Texas law that

3  they have a valid right to setoff.  That's actually their

4  obligation.

5        THE COURT:  Well, that may be an issue someday in

6  some proceeding.  I don't think it's an issue as to whether

7  they violated the Confirmation Order, which is the limit of

8  what I'm here on today because it doesn't -- let's assume

9  that they have a setoff capability post-confirmation and

10 that they did it wrong.  That's not a violation of the

11 Confirmation Order and that's just doing a wrong setoff.

12        Different question --

13        MR. GENENDER:  That --

14        THE COURT:  -- I think you're arguing -- your base

15 argument that you're making to me today is they can't set

16 off an assumed contract by obligations under a non-assumed

17 executory contract.

18        MR. GENENDER:  Correct, correct.

19        THE COURT:  And the fact that they might have done

20 it wrong will be interesting someday for somebody, but I

21 don't want to really take that up today, unless I'm missing

22 the issue.

23        MR. GENENDER:  You have absolutely correctly noted

24 their belief that we very carefully prayed for before you in

25 this motion.

1          Your Honor, and I think that their position -- and

2    we do think they would have to show that they had a right to

3    setoff, but notwithstanding that, assuming, as you say, that

4    they have a right, this is not a situation in which they

5    made an error, they were clumsy.  This is a situation in

6    which they exercised a right they absolutely do not have

7    here as it relates to these two agreements.

8          THE COURT:  So --

9          MR. GENENDER:  One rejected, one assumed.

10         THE COURT:  So what does it mean?  Let's take

11   little 3(i).  It says, "Any valid netting under the BP

12   Executory Contracts," and you're saying, yeah, you agree, it

13   could have that in there and they would be allowed to do

14   that.

15         But then it says, "Or pursuant to applicable law,

16   unless it is inconsistent with the applicable BP Executory

17   Contract."  What does "Or pursuant to applicable law" mean?

18         MR. GENENDER:  I think that, Your Honor, would

19   mean the Texas law that I referred to that they can't

20   satisfy and they haven't pointed to.

21         In other words, they would have to establish they

22   had a right to a setoff or the right would have to be in the

23   contract itself.

24         But in any event, Your Honor, I think that all of

25   these provisions in 133 only relate to those contracts that

1   were assumed.

2           THE COURT:  Well, little 4 is from the same

3   contract.

4           MR. GENENDER:  Excuse me?

5           THE COURT:  Little i-v is for an unassumed

6   contract.  Just I don't --

7           MR. GENENDER:  I'm sorry.  I mean, 1 through 3,

8   sure.

9           THE COURT:  Yeah.

10          MR. GENENDER:  Yeah.  The preamble to 133 where it

11  says, "The terms of this paragraph shall apply to the BP

12  entities and the executory contracts identified in

13  Schedule -- on the Schedule of Assumed Contracts, which is

14  our Exhibit 2269-5.  That's the universe that that whole

15  paragraph upon which they rely released it.

16          And Your Honor, if -- if, and I think this is

17  important.  We made a point of this in our motion, but maybe

18  more vividly in our reply when we saw the response that was

19  filed last night -- if BP really thought that this

20  Section 133 preserved it's --

21          THE COURT:  I'm not going to go there -- not going

22  to go there.

23          MR. GENENDER:  Well, okay.

24          THE COURT:  I want to know what the unambiguous

25  contract says.

1        MR. GENENDER:  Well, the unambiguous contract --

2    this language, Your Honor, does not preserve a right to a

3    contract that's not a BP Executory Contract on the schedule.

4        THE COURT:  Well, on the day that the bankruptcy

5    case was filed -- and I know you're telling me that these

6    facts didn't occur, but just bear with me for a minute.

7        MR. GENENDER:  Sure.

8        THE COURT:  On the day the case was filed, you may

9    have owed them amounts under a non-assumed -- under a

10   contract that would eventually become not assumed and they

11   may have owed you money under a contract that you were

12   assuming -- does the "or pursuant to applicable law" retain

13   for them that right, if it had been matured as of the

14   Petition date?

15       MR. GENENDER:  Well, I think the way I would

16   answer that question, Your Honor, would be in a situation

17   here where the contract they're trying to recover under,

18   Genovesa Agreement which has been rejected, would put them

19   into a world where they would be entitled to rejection

20   damages through that process, as opposed to through a setoff

21   where there is no mutuality of the parties as a result of

22   the transactions that were approved by the Court.

23       THE COURT:  Well, but this says:

24       "The assumption and assignment of the contract to

25       QuarterNorth shall not impair BP's rights under the

1         Executory Contracts, including rights pursuant to

2         applicable law, unless it is inconsistent with the BP

3         Executory Contract," right?

4              MR. GENENDER:  Yes.

5              THE COURT:  So --

6              MR. GENENDER:  And you're reading from little 3,

7    right?

8              THE COURT:  Uh-huh.

9              MR. GENENDER:  Okay.  Paraphrasing from little 3,

10   yes.

11             THE COURT:  So why don't they have the right to a

12   setoff under that?

13             MR. GENENDER:  They have a right to setoff within

14   an assumed contract.

15             THE COURT:  That's a recoupment right, if it's

16   within a contract?

17             MR. GENENDER:  Yes.

18             THE COURT:  Okay.

19             MR. GENENDER:  Or perhaps, Your Honor, between

20   assumed contracts if there's mutuality of the parties.  It

21   could mean that, as well.  But not between a rejected

22   contract and an assumed contract, which is what we have

23   here.

24             I hope I'm answering your question.

25             THE COURT:  You are.  No, you're answering my

1   question in that you've now identified what I started with

2   as I come out, is that interpretation you just gave and the

3   ones that I think BP gave in what they filed yesterday.

4          MR. GENENDER:  Is the Court struggling with the --

5   if I can ask?

6          THE COURT:  Yeah, yeah.

7          MR. GENENDER:  Is the Court struggling with the

8   "or applicable law," meaning that that has -- because I

9   don't know that there has -- that doesn't mean that there is

10  applicable law.  It means, you know, if there were a law

11  that would --

12         THE COURT:  Correct.

13         MR. GENENDER:  -- provide a different right.  So I

14  do think for the Court's analysis under this agreement, the

15  fact that they cannot point to Texas law that would allow

16  them a setoff right under the *Petty* case that we cited in

17  our brief.  I do think that matters.  I do think that's

18  relevant to the Court's analysis as to whether they have

19  violated the Order.

20         THE COURT:  Well, can I -- and I did not -- I have

21  not made up my mind on what to do when I walked out, nor

22  have you persuaded me so far to make up my mind yet.

23         MR. GENENDER:  Hopefully I haven't dissuaded you.

24         THE COURT:  But look, I'm worried about a couple

25  of things that are intertwined with this.  One, which I

1  don't think had occurred, was there might have been between

2  an assumed and a non-assumed contract a present setoff right

3  on the date of assumption and assignment.  And if so, I

4  think this preserves that.

5          The situation we have, though, is one where there

6  was a setoff right not yet matured and at that point, the

7  identity of parties for the unmatured setoff right split at

8  the point you did the assumption and assignment.

9          But there was a -- if you will -- an inchoate

10 setoff right in that we have this whole 180-day issue that

11 is floating around out there.

12         MR. GENENDER:  There was a contemplated setoff

13 right, and I say -- I choose that word, "contemplate."  I

14 don't know if it's the perfect word, but --

15         THE COURT:  Potential.

16         MR. GENENDER:  -- potential -- it clearly wasn't

17 right, but that wasn't the only -- necessarily the only

18 issue with it, but Your Honor, that would not -- this is

19 where I do think that the timeline of events subsequent to

20 paragraph 133 becoming -- in a word, becoming part of the

21 Order and the Order being signed -- if this gave them the

22 right that they wanted, and that they say they have as we

23 sit here today --

24         THE COURT:  Yeah, that's a method of interpreting

25 what you're telling me is unambiguous language and I don't

1  think I want to go there.

2          MR. GENENDER:  But if a party files a pleading, a

3  pleading can be used as an admission against them -- it can

4  be.  And if subsequent to this, they filed or sought relief

5  separately for setoff, that certainly is an act in conflict

6  with the position they're taking today, which is they had

7  the right to begin with.

8          That's all I wanted to say.  I didn't want to go

9  that extrinsic road because I don't think we have to, but I

10  do think that's -- I don't think that goes down that road, I

11  think that's just a -- something that the Court can be aware

12  of.

13          THE COURT:  So tell me how to read those words,

14  though, to deal with what I think you're terming to be a

15  potential future setoff whereby the time the potentiality

16  occurred, the parties had split because of the assumption.

17          MR. GENENDER:  In little 3, or in any of the first

18  three provisions.

19          THE COURT:  Yep.

20          MR. GENENDER:  Well, first of all, I think they

21  have to be read with the intro to 133, the first three

22  lines, as, you know, that applies to all the sections.

23          And then with 1, 2, and 3, they are -- 2 and 3

24  specifically -- well, 1, 2, and 3 specifically are limited

25  to the BP Executory Contracts.  So it doesn't -- they don't

1  contemplate a rejected contract and at that point, there was

2  a -- there was an actual -- there was a list and this wasn't

3  one of them.  So --

4           THE COURT:  Yeah, but look.  If Fieldwood and --

5  excuse me, if QuarterNorth and BP tomorrow entered into a

6  new contract, they could set off the new contract against

7  obligations under the assumed contracts, right?

8           MR. GENENDER:  They could do it, Your Honor.

9  There would be mutuality.  It would -- but they wouldn't be

10  doing it -- I'd submit they wouldn't be doing it pursuant to

11  paragraph 133 of the Confirmation Order.

12           THE COURT:  Yep, but that means that's why I'm

13  worried about what "pursuant to applicable law" means.

14  Because I don't know if we're preserving their right as of a

15  certain day for a -- I think I understand your argument that

16  at the point when there is an assumption and assignment,

17  something that is potential no longer matters because we no

18  longer have mutuality of the parties.

19           I'm worried about what the preservation language

20  function is because we didn't need it if there was, by law,

21  preservation of those rights as to things for which there

22  are mutual entities.

23           MR. GENENDER:  I think -- thinking through the

24  Court's questioning and reasoning -- or questioning, I

25  should say, I'd submit there's a simpler way to deal with

1   this, which is instead of what a hypothetical could be, just

2   looking what the actual facts are before you, and to take

3   their -- BP's position would mean that rejecting a contract,

4   you don't get the -- you really don't get the benefit of

5   rejecting a contract.  And that's not -- that's not the law.

6           And if there's another applicable law that

7   provides --

8           THE COURT:  Or you gave up that benefit by adding

9   this language is another possibility.

10          MR. GENENDER:  I don't see that it does that,

11  based on how it's limited to the assumed contracts and the

12  BP Executory Contracts and Your Honor, I'd submit, I know

13  it's our burden on the motion, but I do believe it's BP's

14  burden to come forth with other applicable law, if that

15  exists.

16          And in their prior briefing on the motions -- the

17  setoff motions that were pulled -- that they pulled down and

18  in their objection last night, they don't cite law that

19  would provide them that underlying setoff right.  And I

20  think that's another issue, as well.

21          I mean, they have to show that they have a valid

22  setoff right across these two contracts, and to your

23  hypothetical, what if there were language in the Isabella

24  PSA that under which the Genovesa PSA could be hooked in,

25  there's -- I don't have them committed to memory, but that

1  doesn't -- I'm fairly certain as I stand before you, that

2  doesn't exist.

3          THE COURT:  Okay.

4          MR. GENENDER:  And if it did, I know these good

5  lawyers would have brought it forth.

6          So I just don't -- I think when you take this

7  language, which the parties agree is unambiguous and apply

8  it to these facts, I think it's actually a very

9  straightforward decision for you, given the lack of

10 mutuality and the fact that they cannot point to a valid

11 setoff right.  And I think everything else -- well, I think

12 the Court streamlined this a lot by initially focusing on

13 ambiguity or non- --

14         THE COURT:  Well, but I may end up where I think

15 the contract is ambiguous but then I've wasted a lot of your

16 time.

17         MR. GENENDER:  But Judge, I don't think there's

18 any ambiguity as it relates to the language "or any

19 applicable law," because if anything, the language has to be

20 read -- the Court, as I understand it would have to read

21 this to give everything meaning, but it doesn't mean that --

22 that doesn't mean that that language has to -- that there

23 has -- it doesn't assume there is applicable law.  It says,

24 "If there's applicable law," then it would be taken into

25 consideration.

1          They haven't shown any that would change the

2   meaning of the words on the page.

3          THE COURT:  Okay.

4          MR. GENENDER:  I think that's --

5          THE COURT:  I think I understand your argument.

6          MR. GENENDER:  Okay.  And I don't really have

7   anything else to say at this point that would help you, I

8   don't think.

9          THE COURT:  Let me hear from BP.

10          MR. GENENDER:  May I confer real quick?

11      (Pause in the proceedings.)

12          MR. CARLSON:  Your Honor, Cliff Carlson for

13   QuarterNorth.

14          Just one point I wanted to make if permitted to,

15   and Mr. Genender said this, but just if you look at how "BP

16   Executory Contracts" is defined, it's limited to just

17   assumed BP contracts, right?  And so Genovesa was not

18   assumed, it was rejected, and Isabella PSA was assumed and

19   so you have to read 133, Romanette numeral iii, and if you

20   read the lead-in here, it's saying:

21      "The assumption, assumption or assignment, or

22      assumption and allocation of the BP Executory Contract

23      is a defined term -- shall not alter, impair or

24      otherwise affect any of the parties' respective rights

25      and allegations under the BP Executory Contracts."

1        So we're looking at only the Isabela PSA, not the

2   Genovesa PSA.  And then it goes into including what types of

3   rights we're talking about and to the point of "or pursuant

4   to applicable law," there's the point -- there was

5   contractual and ten there's other -- you know, if there's

6   any other applicable law, to Mr. Genender's point, is there

7   has to be applicable law that is available that they can

8   argue that under Visadall (phonetic) PSA they had valid

9   setoff right.  They hadn't shown that, you know, to Your

10  Honor's point about looking at this, you know, prior to

11  assumption and assignment, they didn't have any valid --

12  they didn't have any valid setoff rights under these

13  agreements for, among other reasons, for the timing issue

14  and the fact that it was contingent.

15       And so that's how -- that's how you reconcile 133

16  Romanette numeral iii, then you have 133 Romanette iv, which

17  expressly treats what you do -- how you treat rejection

18  damage claims and it says in the very last sentence of

19  133(iv), it says:

20       "Claims based on a rejection of any executory contracts

21       and unexpired leases between the Debtors and the BP

22       entities, shall be treated as a claim as a Class 6(b)

23       unsecured claim under the Plan."

24       And so I just don't -- we haven't heard -- I think

25  they've conceded this is a rejected -- this is a rejected

1   contract.  I don't know why this 133(iv) doesn't -- wouldn't

2   govern in this situation, and that's how we read 133

3   Romanette numeral iii.

4            THE COURT:  Okay.  Thank you.

5            MR. CARLSON:  Thank you.

6        (Pause in the proceedings.)

7            MR. DUEWALL:  Thank you, Your Honor.

8            I think the Court has seized on what the issue is

9   and that being the meaning and interpretation of the

10  language pursuant to applicable law that appears there in

11  Romanette iii.

12           There's nothing in the Isabella PSA -- unless

13  inconsistent with the applicable BP Executory Contract.  The

14  exercising of the secured right of setoff is not

15  inconsistent with that PSA in any form.  It certainly

16  doesn't prohibit that exercise of the setoff rights.

17           So I think that's how that language is properly

18  interpreted.

19           I think it's also important to look under the --

20  and I'm going to use their exhibits, but Document 2269-6,

21  which is the Purchase and Sale Agreement, because even in

22  that document, I think it's consistent with BP's

23  interpretation of -- and the proper interpretation of

24  Romanette iii, and specifically, I draw the Court's

25  attention to 2269-6, page 80 of 170.

1       (Pause in the proceedings.)

2           MR. DUEWALL:  And I'm in Section 11.1, little n.

3   There it is on that page, Your Honor.

4           THE COURT:  Wait.  Let me see what the interim is

5   in that.  Just a second.

6       (Pause in the proceedings.)

7           THE COURT:  So QuarterNorth assumes -- tell me

8   what n does for us?

9           MR. DUEWALL:  Well, that's speaking with regard

10  to, Your Honor, the liabilities arising out of or related to

11  the -- our affirmative defenses of third parties with

12  respect to any claim or cause of action assigned to buyer.

13          Here, you know, that claim or cause of action

14  being their desire to recover these amounts under the

15  Isabella PSA, and then pursuant to Section 11.1 little i, w,

16  or rr, to the extent if treated as retained liabilities.

17          And so rr and 1.2 rr speaks in terms of the

18  acquired interest that they're taking and includes the

19  executory contracts, you know, which includes the Isabella

20  PSA.  So you know, it's our position that that right of

21  setoff is preserved.

22          THE COURT:  That's an affirmative defense?

23          MR. DUEWALL:  I'm sorry, Your Honor.

24          THE COURT:  A setoff right is an affirmative

25  defense?

1           MR. DUEWALL:  As a secured claim it would be an

2    affirmative defense.

3           THE COURT:  This may just be a memory failing on

4    my part.  I didn't recall that setoff was an affirmative

5    defense.  Maybe it is.  Is that under Texas law?  I just

6    don't remember this.

7           MR. DUEWALL:  It is, Your Honor, and that's -- in

8    our brief that's the -- and I think it's on page --

9    paragraphs 44 through 53 of our -- of our papers, Your

10   Honor, where we set out there, you know, irrespective of

11   what the contract says in paragraph 133, as a matter of law,

12   we've preserved these rights.  These rights of setoff are

13   preserved, so.

14          THE COURT:  I'm going to under your brief,

15   paragraph 44.  Does this say -- and maybe I need to look at

16   the Texas Civil Practice and Remedies Code, or something

17   else, that this is an affirmative defense?

18          Because that is all that I was looking at there.

19   I just don't remember it being an affirmative defense.  But

20   it may be.

21       (Pause in the proceedings.)

22          THE COURT:  And I deal with a Texas law question

23   for that?

24          MR. DUEWALL:  And the Texas law that we cite, Your

25   Honor, when counsel is suggesting that we don't have the

1   right -- that we haven't established the right to setoff.

2          If we look in, you know, BP's, you know, the

3   briefing we did at Document 1666 in the Court's Record where

4   initially filed our Motion to Lift Stay, which I think they

5   were referring to, --

6          THE COURT:  Right.

7          MR. DUEWALL:  -- when they say that we somehow

8   abandoned or walked away from that.  We set out in that

9   motion comprehensively the right to setoff, you know,

10  cross-netting, if you will --

11         THE COURT:  Yeah, I'm only asking if it's an

12  affirmative defense.

13         MR. DUEWALL:  We believe it is, Your Honor.  And

14  I --

15         THE COURT:  Under Texas law or under Federal law,

16  or?  And it may be -- again, it may be.  I'm not at all

17  saying it isn't.  I just -- I want to just cross that bridge

18  together.

19         MR. DUEWALL:  Okay.  Just one moment, Judge.

20      (Pause in the proceedings.)

21         THE COURT:  I'm just going to pull up the Texas

22  Civil Practices and Remedies Code and see if it is.

23      (Pause in the proceedings.)

24         THE COURT:  Yeah, we'll look it up later.  I'm not

25  going to find it that quickly.

1          So let me go back.  Their principle argument that

2   they start with is that by separating the parties on the

3   assumption and assignment, that you can't setoff anything

4   that arose or matured after the date of the separation of

5   the parties.

6          And let me go back to the agreement and have you

7   deal with that issue.

8          MR. DUEWALL:  In 133, Your Honor?

9          THE COURT:  Correct.

10       (Pause in the proceedings.)

11         MR. DUEWALL:  If I understand the Court's

12  question, it's that once there's a separation of parties

13  that we've somehow forfeited our right to -- the setoff

14  right, is that what --

15         THE COURT:  No.  They're saying -- my

16  interpretation of their argument is you have setoff rights,

17  but you only have setoff rights if they exist under the law

18  and you preserved them all, but to exist under the law, you

19  still have to have mutuality of interests.  You can't just

20  bring in an existing contract where there's no longer

21  mutuality and assert it.  You didn't preserve that right.

22  You preserved whatever rights might exist to setoff in the

23  future, but you still have to have a right of setoff in the

24  future.

25         And they're saying because there's an absence of

1   mutuality, you don't get that.

2         MR. DUEWALL:  And I think that's ultimately the

3   question that the Court is going to have to answer.  It's

4   our interpretation of that language that "or pursuant to

5   applicable law" that our setoff right -- you know, as a

6   secured claim is an affirmative defense if they try to

7   enforce their rights under the executory contracts.

8         So for example, you know, I know that we don't

9   want to say that -- trying to take a step back and not use

10  the course of dealings to interpret what occurred or what

11  didn't occur, but --

12        THE COURT:  But we may end up there.  I'm trying

13  to avoid that because you are both telling me it's not

14  ambiguous.  I'm just doing my best here, so.

15        MR. DUEWALL:  But I think that's the import of

16  "pursuant to applicable law."  I don't think it was a

17  surprise to anyone.  In fact, it was anticipated that there

18  was going to be a new entity on the backend of this

19  bankruptcy proceeding.

20        With that anticipation the "or pursuant to

21  applicable law" is where it becomes important.  By the time

22  this is negotiated and finalized, the BP Executory Contracts

23  have been identified.  That was no surprise to anyone.

24        THE COURT:  Right.

25        MR. DUEWALL:  We knew they were taking Isabella.

1  We know they weren't taking Genovesa.

2          THE COURT:  But you can have two -- they took more

3  than one BP contract, you could set off between the two BP

4  contracts.  Can you set off against one they didn't take?

5          MR. DUEWALL:  Yes.  Yes, I think so

6          THE COURT:  What gives you the right to set off

7  against one -- with respect to Quarter Main (phonetic) --

8  not with respect to BP -- I'm sorry, not with respect to

9  Fieldwood, what gives you the setoff right with respect to

10 QuarterNorth --

11         MR. DUEWALL:  QuarterNorth, correct.

12         THE COURT:  -- under this provision?

13         MR. DUEWALL:  What gives us the setoff right, Your

14 Honor, is the connection of the dots of our position that

15 that affirmative defense, that setoff/offset, that they're

16 taking that contract -- they're taking that executory

17 contract, that Isabella contract subject to those rights

18 that we have and that are preserved under 11.1(n).  That's

19 how we get there.

20         THE COURT:  So I really do need to worry about

21 what 11.1 means a lot?

22         MR. DUEWALL:  Correct.

23         THE COURT:  Okay.  Which I had not focused on

24 before I came in.  But I do understand what you're telling

25 me I need to do.

1          MR. DUEWALL:  Now if our exercise of those,
2    applicable law was inconsistent with the Isabella PSA,
3    that's why that language is in there, that inconsistent with
4    the applicable BP Executory Contract.  But it's not.  It's
5    entirely consistent with applicable law -- with Texas law,
6    but we don't cite the Court to those cases in our response
7    that was filed last night.
8          But we do in Document 1666 where we fully briefed
9    the Texas law on that issue.
10          THE COURT:  Okay.
11          MR. DUEWALL:  So I think to the extent that there
12    is an unambiguous -- I agree.  We think it's unambiguous, as
13    well.
14          THE COURT:  Okay.
15          MR. DUEWALL:  So the Texas law, Your Honor, just
16    for the Record is 1666, paragraphs 13 through -- I'm sorry,
17    paragraphs 11 through 13 is where we cite, you know, the
18    *Garden Ridge* case, the *Braniff v. Exxon* case and a few
19    others, you know, demonstrating that we do have this right
20    under applicable law to exercise the setoff as we have.
21          Now if the Court disagrees with us and our
22    interpretation of the contract language, you maybe may
23    decide otherwise.  But that's where we find justification
24    for it.
25          THE COURT:  No, you know, okay.

1          Let me hear if Fieldwood wants to give any

2    response to Mr. Duewall.

3          MR. GENENDER:  Your Honor, may I make a point?

4    And allow Mr. --

5          THE COURT:  Yeah, that's fine.

6          MR. GENENDER:  -- Carlson to go.  The last point

7    that Mr. Duewall made in that brief in citing *In Re: Garden*

8    *Ridge,* in paragraph 10 of that brief filed on June 20th, the

9    quote that says, second sentence:  Under Texas law, setoff

10   is permitted, quote, "where demands are mutual between the

11   same parties and in the same capacity or right," end quote.

12         So they don't have --

13         THE COURT:  But if your client -- he's already --

14   and your client assumes certain liabilities which would

15   include those.

16         MR. GENENDER:  We did not, and that's where I said

17   a moment ago, that to take that argument and to say they've

18   got an affirmative defense, would basically turn on its head

19   a Debtor's right to reject a contract because mutuality does

20   not exist.

21         THE COURT: Let me look back on where he pointed me

22   to, if I can get there again -- paragraph, I think it was

23   your Exhibit 6; is that right?

24         MR. GENENDER:  Oh, in Section 11.1.

25         THE COURT:  Right.

1          MR. GENENDER:  Yes.

2          11.1, and I believe it was, Your Honor?

3      (Pause in the proceedings.)

4          MR. GENENDER:  I think it was on page 80 of 170,

5   if my memory serves.

6          THE COURT:  Uh-huh.  So your client assumed all

7   liabilities arising out of or relating to any affirmative

8   defenses by BP with respect to any claim or cause of action

9   assigned to your client pursuant to 1.2(i), 1.2(w), and

10  1.2(rr).

11      "To the extent that if treated as retained liabilities,

12      such defenses or rights would not constitute general

13      unsecured claims of the sellers."

14          What does that mean?

15          MR. GENENDER:  They don't have -- there isn't --

16  and to answer your question, I think we confirmed while

17  Mr. Duewall was -- setoff is an affirmative defense under

18  Texas law, so I want to at least answer that.

19          THE COURT:  Okay.

20          MR. GENENDER:  And for it to be an affirmative

21  defense of a third party, we're talking around the issue,

22  Your Honor.  An affirmative defense to what?  You still have

23  to have the mutuality for the affirmative defense to apply.

24          The law they cited, it said that for there to be

25  setoff, it has to be between the same parties.  Mr. Duewall

1 quite correctly said that leading up to entry of the

2 Confirmation Order, they knew that there were going to be

3 different parties.  They knew what was on one list and

4 presumably knew at least at that point what would not be --

5 that there's a possibility something could be rejected

6 because of what the deadlines were.

7       This language doesn't apply because there's not a

8 valid setoff -- I mean, I'm talking in circles a little bit.

9       THE COURT:  No, I got it.

10       MR. GENENDER:  There's not a valid setoff right to

11 begin with.

12       THE COURT:  You're saying if they had a valid

13 setoff right, it's being assumed by your client, but with no

14 valid setoff right, they're assuming zero.

15       MR. GENENDER:  Correct.

16       THE COURT:  All right.  I understand that right.

17       MR. GENENDER:  So a little bit -- I mean, there's

18 a lot of -- Judge, it's like if everyone reserves their

19 rights, which everyone always comes before you say, "We'll

20 reserve your rights."  And I've heard you say this, I've

21 heard Judge Jones say this many times, sometimes you don't

22 even have to say it.  You know, everyone reserves their

23 rights.

24       THE COURT:  Uh-huh.

25       MR. GENENDER:  That can sometimes mean something,

1  but oftentimes it's unnecessary to say it.

2          THE COURT:  So I'll let Mr. Carlson finish off and

3  then we'll let Mr. Duewall to finish today.

4          MR. GENENDER:  Thank you, Your Honor.

5          Ms. Choi passed me a note and I want to make sure

6  I'm -- I looked at something that indicated setoff isn't an

7  affirmative -- I don't think this is dispositive to your

8  ruling, Judge, but I want to make sure I'm as accurate as

9  possible.

10         A setoff may not necessarily be an affirmative

11  defense under Texas law.  It's not listed under -- I know

12  the Court was mentioning Civil Practices and Remedy Code.

13  It's really Rule of Procedure, Texas, 94.

14         THE COURT:  Texas Rule of Civil Procedure.

15         MR. GENENDER:  Yeah, 94, and it's not listed

16  there, although there's a catchall saying "or other

17  applicable defense."  We were looking at a case that we're

18  checking to make sure that case is still good.

19         THE COURT:  So I think that it is an affirmative

20  defense under the Federal rules, but I'm not sure that that

21  applies to what we're looking at right now.

22         MR. GENENDER:  Understood.  Thank you.

23         THE COURT:  So that's why I'm asking about Texas

24  law

25         MR. GENENDER:  Yep.

1          THE COURT:  My recollection of that is going to
2  come from law school until I go look it up somewhere.
3          Go ahead, Mr. Carlson.
4          MR. CARLSON:  Your Honor, just two additional
5  points.  First is that if you look at Section 11.1(n)
6  it's -- this is how it could be read together with the
7  Confirmation Order.  It says:
8      "Those rights or claims are reserved to the extent that
9      if treated as retained liabilities, such defenses or
10      rights would not constitute general unsecured claims of
11      the sellers."
12          For the reasons we've discussed, we think it says
13  -- it enumerates in 133 of the Confirmation Order that these
14  would be unsecured claims.
15          THE COURT:  This is unsecured claims of the
16  sellers.  Who is the seller here?
17      (Pause in the proceedings.)
18          THE COURT:  It's not unsecured claims against --
19          MR. CARLSON:  Fieldwood is the seller here.
20          THE COURT:  What is that?  Fieldwood is the
21  seller?  This would be an unsecured claim by Fieldwood
22  against QuarterNorth.
23          MR. CARLSON:  Correct.  Fieldwood against BP.
24          THE COURT:  I don't think so.  This is "of the
25  sellers," not "against the sellers."

1          MR. CARLSON:  I see.  I see it, Your Honor.  Okay.

2          THE COURT:  I think.  That's at least the way I'm

3  reading it, so I think that part doesn't matter too much.

4          MR. CARLSON:  Okay.  You might be right on that,

5  Your Honor.

6          The other point I just wanted to make was that to

7  the extent that there is an inconsistency and these can't be

8  read together, paragraph 168 of the Confirmation Order makes

9  clear that to the extent of an inconsistency, the

10  Confirmation Order governs.

11          So if Your Honor did go there and decide that

12  these documents were inconsistent --

13          THE COURT:  Right.

14          MR. CARLSON:  -- this would --

15          THE COURT:  Okay.

16          MR. CARLSON:  Thank you, Your Honor.

17          THE COURT:  Thank you.

18          Mr. Duewall, why don't I let you close out?

19          MR. DUEWALL:  Thank you, Your Honor.  I just

20  had -- maybe to save your clerk a little bit of research

21  time, but they reminded me that the right to offset is an

22  affirmative defense and the cite I got for that was *Lone*

23  *Star Multi Theaters* at 365 S.W.3d 688, Houston Appellate

24  Court decision in 2011.

25          So that's all I wanted to bring to the Court's

1  attention.

2        THE COURT:  Okay.  Thank you.

3        I'm not going to decide this from the Bench.

4        Can I ask the parties what level of urgency we

5  have?  I know that it's a lot of money on the one hand, but

6  it's two solvent entities that can afford to pay interest if

7  there is a delay.  So I think it's going to take a little

8  bit to decide.

9        MALE SPEAKER:  Understood, Your Honor.  I did

10  speak to Mr. Dane, and the end of the year looms closely.

11  That was the only comment we wanted to make.

12        THE COURT:  Yeah.  I assume he can -- he is an

13  accrual basis reporter.

14     (Laughter.)

15        THE COURT:  I think I'll probably have a decision

16  by the end of the year, don't get me wrong.  But I'm just

17  saying that I don't know that we have urgency in terms of --

18  this isn't, you know, some dire -- last time that you guys

19  were all here, although it was all on TV, we had dire

20  consequences that we were facing.  I don't think we have

21  dire consequences that require me to try and make a snap

22  decision.  I want to look more carefully at what we have

23  here.  I'd just take it under advisement.

24        If it turns out that I conclude that I can't

25  conclude because the document is ambiguous, I'm going to

1    call you-all back, and we'll then put on witnesses and other

2    types of documents.

3          But I think it is -- right now I'm thinking it's

4    very hard to read, but not ambiguous, and so I think I'm

5    agreeing with you-all and I just want to take some quiet

6    time.  I want to read it.  I haven't focused on the section

7    that Mr. Duewall pointed out, even though it's in his brief.

8          MALE SPEAKER:  Your Honor, would it help the Court

9    if there was some supplemental briefing?

10          THE COURT:  Nah.  I mean, you-all explained it.  I

11    think I understand what everybody is telling me.  I just

12    need to go read it.

13          Let's go ahead, though, and complete the Record by

14    putting in the objective documents, the ones that were

15    referred to here that you-all don't object to, just so that

16    we have a clean Record, if we could?

17          So I know we've looked at 2269-2, 2269-6, and we

18    have the stipulated facts at the beginning of the hearing.

19          What else do you-all want me to be able to use in

20    making the decision?

21          MR. GENENDER:  2269-5, please.

22          THE COURT:  Which is what?

23          MR. GENENDER:  Which is the scheduled assumed

24    contracts.

25          THE COURT:  Okay.  Any objection to that, as well?

1       (No audible response.)

2            THE COURT:  I think they stipulated, though, to

3  that as a fact.

4            MR. GENENDER:  Yeah.

5            THE COURT:  Which was --

6            MALE SPEAKER:  No objection, Your Honor.

7            THE COURT:  Okay.  Thank you.

8            MR. GENENDER:  I think everything else is

9  stipulated to.  I mean, these are -- you don't need it.

10           Yep, thank you.

11           THE COURT:  Anything else you-all want in,

12 Mr. Duewall?

13           MR. DUEWALL:  We had, Your Honor, just one moment.

14 It's been so long since I've done this in person, my papers

15 are in kind of in a mess.

16           THE COURT:  You should be more frightened.  It's

17 been so long since I've done this in person, so.

18      (Laughter.)

19           MR. DUEWALL:  So where is our list?

20           MALE SPEAKER:  Right here.

21           MR. DUEWALL:  The truth of the matter, Your Honor,

22 most of this has already been admitted, but to the extent

23 MC 519 and the Isabella PSA have already been admitted

24 numerous times, 2273 and 2274 --

25           THE COURT:  Let's go ahead and put them in, if you

1    want them in.

2              2273, any objection to that coming in?

3              MR. DUEWALL:  Let me just get my list, Your Honor.

4              THE COURT:  That's the PSA --

5              MR. DUEWALL:  The Isabella PSA?

6              THE COURT:  -- for Mississippi Canyon Block 519.

7              MR. DUEWALL:  No objection, Your Honor.

8              THE COURT:  Okay.  2273 is admitted.

9          (2273 received in evidence.)

10             MR. DUEWALL:  And then 2274 is the Isabella.

11             THE COURT:  Mississippi Canyon 562?

12             MR. DUEWALL:  Correct, Your Honor.

13             MR. GENENDER:  No objection.

14             THE COURT:  It's admitted.

15         (2274 received in evidence.)

16             MR. DUEWALL:  I think that's it.  Let me just

17   confirm.

18         (Pause in the proceedings.)

19             MR. DUEWALL:  Oh, then there was -- I had -- you

20   know, we talked about the two different versions of the PSA.

21   The second is 2275-1.

22             THE COURT:  Any objection to 2275-1?

23             MR. GENENDER:  No, Your Honor.

24             THE COURT:  It's admitted.

25         (2275-1 received in evidence.)

1            MR. GENENDER:  Judge, just for completeness, I

2    mean, the Court can take judicial notice of the Plan itself,

3    but at 2269-4 is the Plan.

4            THE COURT:  I think it's attached to the

5    Confirmation Order, but I'll --

6            MR. GENENDER:  Okay.  Okay.

7            THE COURT:  -- take it that 2269-4 is admitted.

8        (2269-4 is admitted.)

9            MR. GENENDER:  All right.  Thank you.

10            MR. DUEWALL:  I think that's it, Your Honor.

11            THE COURT:  Thank you.

12            If you-all don't mind, I'm going to take a

13    minute --

14            MR. DUEWALL:  On the letter -- I'm sorry, the

15    letter where we effected our setoff rights was 2271-11.  I

16    think we both have that on our list.

17            MR. GENENDER:  I understood that was stipulated --

18    the underlying facts were stipulated to.  Same with the

19    others.  That's why we --

20            THE COURT:  That's right.  I agree.

21            MR. DUEWALL:  Yeah, and I think -- I think if you

22    have us back, we'll talk about the email from Carlson and

23    Mr. Burrer, but I don't think for purposes of today, we need

24    that.

25            THE COURT:  I agree.  Thank you.

1          Mr. Burrer, can I impose on you to tell me whether

2     you -- how the hearing -- how observable it was from a

3     distance?  I know that you've been watching.  I think I have

4     your line open.

5          Mr. Burrer, go ahead.

6        (No audible response.)

7          THE COURT:  You have your own line muted.

8          MR. BURRER:  As soon as we're done with the

9     pandemic, I'm sure I'll be completely fine with that, but

10    the hearing was perfectly viewable.  Everybody came through

11    clearly.  No issues from the cheap seats.

12         THE COURT:  Okay.  Thank you.  Glad you could stay

13    away.

14       (Laughter.)

15         THE COURT:  All right.  I'm taking it under

16    advisement.  We'll take it under advisement right away and

17    I'll get you-all out a written decision on this.

18         Thank you-all for coming.

19       (The parties thank the Court.)

20         THE COURT:  Yeah, thank you.  Glad to have you-all

21    -- glad to have everybody back?

22         What is that?

23         MALE SPEAKER:  First live hearing in this case.

24         THE COURT:  Is it really?

25         MALE SPEAKER:  Yeah.  I think I had you last year,

1   was March 12th, your last day?

2          THE COURT:  I don't know, but it would have been

3   around then.

4          MALE SPEAKER:  The Thursday before?

5          THE COURT:  That's probably about when I went into

6   -- yeah, because shortly after that, I know that I ended up

7   going into isolation or whatever we called it.

8          MALE SPEAKER:  I remember being here that day,

9   yeah.

10          THE COURT:  All right.  Thank you-all for coming

11   in.

12       (Hearing adjourned at 3:32 p.m.)

13                    *  *  *  *  *

14       *I certify that the foregoing is a correct*

15   *transcript to the best of my ability from the electronic*

16   *sound recording of the ZOOM/telephonic proceedings in the*

17   *above-entitled matter.*

18   */S/ MARY D. HENRY*

19   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

20   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

21   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

22   *JTT TRANSCRIPT #65096*

23   *DATE FILED:  JANUARY 19, 2022*

24

25