Case 20-33948   Document 2383   Filed in TXSB on 02/08/22   Page 1 of 12
United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 08, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-33948 |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Fieldwood Energy LLC and BP Exploration & Production Inc. entered into two contracts under which one party was obligated to pay the other. In its bankruptcy, Fieldwood transferred one of those contracts to QuarterNorth Energy LLC. BP attempted to set off what it owed QuarterNorth under the transferred contract against what Fieldwood owed it under the retained contract. For the reasons set forth below, BP's setoff was improper and violated the Plan and Confirmation Order.

## BACKGROUND

Fieldwood and BP engaged in multiple contracts in the course of their business relationship. Two purchase and sale agreements between Fieldwood and BP are relevant in this matter. On October 25, 2018, they entered into the "Isabela PSA," in which BP agreed to pay Fieldwood $66 million in monthly installments starting in 2018 and continuing through December 2021 in exchange for Fieldwood's interests in the Isabela well. (ECF No. 2274 at 7, 20). On May 17, 2019, they entered into the "Genovesa PSA," in which Fieldwood agreed to pay BP $30 million following successful completion of the Genovesa well and 180 days of production.[1] (ECF No.

---

[1] "[P]ayable and owing to [BP] upon the successful completion of the Genovesa Well or any other well within the Genovesa Formation and shall be due and paid to [BP] within the first one hundred eighty (180) days of production (whether consecutive or not) of Hydrocarbons from any such well . . . ." (ECF No. 2273 at 24). Fieldwood was not obligated to pay the $30 million until the Genovesa well was completed and had produced for 180 days. Additionally, BP could not sue for the $30 million until the Genovesa well had produced for 180 days.

2273 at 8, 24). Both the Isabela PSA and the Genovesa PSA are governed by Texas law. (ECF Nos. 2273 at 54; 2274 at 40).

Fieldwood and its affiliated debtors filed for chapter 11 bankruptcy on August 3, 2020. (ECF No. 1). This Court confirmed Fieldwood's Plan on June 25, 2021. (ECF No. 2016 at 1). The confirmed Plan became effective on August 27, 2021 (the "Effective Date"). (ECF No. 2016 at 1). Under the confirmed Plan, Fieldwood rejected the Genovesa PSA and transferred the Isabela PSA, including the right to the associated payments, to QuarterNorth Energy LLC on the Effective Date.[2] (ECF No. 2008 at 73–74). The Genovesa well had not produced for 180 days as of the Effective Date. (*See* ECF Nos. 2199 at 15; 2278 at 4).

BP paid the Isabela PSA installments through September 2021. (ECF No. 2199 at 12). By October 2021, BP still owed $6,970,816.40. (ECF Nos. 2199 at 9; 2278 at 4, 9). The Genovesa well reached 180 days of production on or around October 26, 2021. (ECF Nos. 2199 at 15; 2278 at 4). On October 28, 2021, BP claimed that it was entitled to set off the remainder of what it owed under the Isabela PSA against what Fieldwood owed under the Genovesa PSA. (ECF Nos. 2199 at 12; 2278 at 9).

QuarterNorth and BP dispute whether BP rightfully set off its Isabela PSA payments against the amount Fieldwood owed under the Genovesa PSA. The dispute arises from their interpretations of two documents: (1) Fieldwood's Confirmation Order and (2) the Credit Bid Purchase Agreement between Fieldwood and QuarterNorth. Regarding the Confirmation Order, QuarterNorth and BP dispute the proper interpretation of paragraph 133:

---

[2] The Confirmation Order references that Fieldwood sold certain assets to QuarterNorth free and clear under the Credit Bid Purchase Agreement, but QuarterNorth assumed all Credit Bid Assumed Liabilities. (ECF No. 1751 at 43).

The terms of this paragraph shall apply to the BP Entities and the Executory Contracts identified on the Schedule of Assumed Contracts between any of the Debtors and any BP Entity (the "**BP Executory Contracts**"):

    ii.    To the extent that a BP Executory Contract is assumed, assumed and assigned or assumed and allocated, such assumption or assumption and assignment or assumption and allocation shall result in the full release and satisfaction of only those Claims based on a default existing as of the Effective Date with respect to such BP Executory Contract. For the avoidance of doubt, **the Plan and this Order shall not alter any of the terms under the BP Executory Contracts including, without limitation, any arbitration rights or any valid netting (either based on setoff or recoupment).**

    iii.    The assumption, assumption and assignment, or assumption and allocation of any BP Executory Contract shall not alter, impair or otherwise affect any of the parties' respective rights and obligations under the BP Executory Contracts, including, without limitation, **any valid netting (either based on setoff or recoupment) under the BP Executory Contracts** or pursuant to applicable law (unless it is inconsistent with the applicable BP Executory Contract); and any rights for arbitration.

(ECF No. 1751 at 104) (emphasis added). As defined in the Confirmation Order, the Isabela PSA is a BP Executory Contract and the Genovesa PSA is not. (*See* ECF Nos. 2199 at 13; 2269-5).

QuarterNorth and BP also dispute the proper interpretation of paragraph 11.1(n) of the Credit Bid Purchase Agreement between Fieldwood and QuarterNorth:

Buyer's Assumption of Liabilities. Subject to the terms of this Agreement, if the Closing occurs, [QuarterNorth] shall be deemed to have assumed (and shall pay, perform and discharge) the following Liabilities of [Fieldwood], as of the Closing (collectively, the "*Assumed Liabilities*"): . . . (n) all liabilities arising out of or relating to any affirmative defenses of third parties with respect to any Claim or cause of action assigned to [QuarterNorth] pursuant to Section 1.2(i), Section 1.2(w) and Section 1.2(rr) [of the Credit Bid Purchase Agreement] to the extent that if treated as Retained Liabilities such defenses or rights would not constitute general unsecured claims of [Fieldwood] . . .

(ECF No. 2269-6 at 78, 80). Section 1.2 of the Credit Bid Purchase Agreement outlines QuarterNorth's acquired interests.[3] (ECF No. 2269-6 at 11). Sections 1.2(i),[4] (w),[5] and (rr)[6] relate in part to the claims Fieldwood assigned to QuarterNorth. (ECF No. 2269-6 at 13–17). Under the Credit Bid Purchase Agreement, "Claims" are "any and all claims, demands, . . . actions (whether judicial, administrative or arbitrational), causes of action, suits, proceedings and controversies." (ECF No. 2269-6 at 97).

QuarterNorth filed a motion seeking: (1) a finding that BP's setoff was in violation of the Plan; (2) an order enjoining BP from violating the Plan again; and (3) its reasonable and necessary attorneys' fees. (ECF No. 2199 at 17). BP filed an objection to the motion. (ECF No. 2278). The Court heard oral arguments on November 30, 2021 and took the matter under advisement.

---

[3] "Acquired Interests; Assets. As used herein, the term '*Acquired Interests*' refers to (x) all of [Fieldwood's] right, title and interest in, to, under or derived from the Co-Owned Assets . . . and (y) all of [Fieldwood's] right, title and interest in, to, under or derived from the Other Assets. As used herein, the term '*Assets*' means the Co-Owned Assets and Other Assets, wherever located, real, personal or mixed, tangible or intangible, known or unknown, as the same shall exist as of the Closing." (ECF No. 2269-6 at 11–12).

[4] "As used herein, the term '*Co-Owned Assets*' means the assets described in clauses (a) through (o) below: . . . (i) all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the other Co-Owned Assets or to any Assumed Liabilities, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Co-Owned Assets." (ECF No. 2269-6 at 11, 13).

[5] "As used herein, the term "*Other Assets*" means the assets described in clauses (p) through (uu) below: . . . (w) all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the Other Assets, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Other Assets." (ECF No. 2269-6 at 14, 15).

[6] "(rr) all rights, claims, demands and causes of action of the Sellers (x) relating to the Acquired Interests or the Assumed Liabilities and (y) without duplication, those set forth on Schedule 1.2(rr); *provided* that this clause (rr) shall not apply with respect to or in connection with Taxes or Tax refunds." (ECF No. 2269-6 at 17).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Proceedings affecting the adjustment of the debtor-creditor relationship are core proceedings under 28 U.S.C. § 157(b)(2)(O). Further, a proceeding is core if it "could arise only in the context of a bankruptcy case." *Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014 (5th Cir. 1991) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). Adjudicating this matter requires an interpretation of the Confirmation Order, which could not arise outside the context of a bankruptcy case. Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

The Court's analysis begins and ends with answering a straightforward question: After the transfer of the Isabela PSA to QuarterNorth, did BP have a right to set off the Isabela PSA payments against the amount owed under the Genovesa PSA?

### I. SETOFF AND MUTUALITY

Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). Section 553(a) of Bankruptcy Code, which governs setoff in bankruptcy, does not grant the right to setoff; it merely preserves the right under applicable bankruptcy law.[7] *Id.*; *Breeden v. Mfrs. and Traders Tr. Co. (In re Bennett Funding Grp., Inc.)*,

---

[7] Setoff is appropriate in bankruptcy when four conditions are met: "(1) The creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) The creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) The claim and debt are 'mutual'; and (4) The claim and debt are each valid and enforceable." *In re Garden Ridge Corp.*, 338 B.R. 627, 633 (Bankr. D. Del. 2006), *aff'd*, 399 B.R. 135 (D. Del. 2008), *aff'd*, 386 Fed. Appx. 41 (3d Cir. 2010).

212 B.R. 206, 211 (B.A.P. 2d Cir. 1997), *aff'd*, 146 F.3d 136 (2d Cir. 1998); *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010).

Setoff rights are determined by state law or federal non-bankruptcy law. *Feltman v. Noor Staffing Grp., LLC (In re Corp. Res. Servs., Inc.)*, 564 B.R. 196, 203 (Bankr. S.D.N.Y. 2017). Under Texas law, setoff is only permitted "where demands are mutual, between the same parties, and in the same capacity or right." *Cap. Concepts Props. 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (citing *Brook Mays Organ Co., Inc. v. Sondock*, 551 S.W.2d 160, 166 (Tex. Civ. App.—Beaumont 1977, writ ref'd n.r.e.)); *Garden Ridge Corp.*, 338 B.R. at 633; *see Spillman Inv. Grp. Ltd. v. Am. Bank of Tex. (In re Spillman Dev. Grp., Ltd.)*, 401 B.R. 240, 254 (Bankr. W.D. Tex. 2009), *aff'd sub nom. Fire Eagle, LLC v. Spillman Inv. Grp., Ltd.*, A-10-CA-894-LY, 2011 WL 13234814 (W.D. Tex. Sept. 29, 2011), *aff'd sub nom. In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299 (5th Cir. 2013) ("[Setoff] allows parties that owe each other money to apply their debts to each other, and applies where there are mutual debts arising from different transactions."). To set off one demand against another, demands must mutually exist between the same parties: the creditor is indebted to the debtor who likewise is indebted to the creditor.[8] *Alon USA, LP v. State*, 222 S.W.3d 19, 29 (Tex. App.—Austin 2005, pet. denied) ("[I]n order for one demand to be set off against another, both demands must mutually exist between the same parties."); *Anderson v. Vinson Expl., Inc.*, 832 S.W.2d 657, 667 (Tex. App.—El Paso 1992, writ denied); *Dall./Fort Worth Airport Bank v. Dall. Bank & Tr. Co.*, 667 S.W.2d 572, 575 (Tex. App.—Dallas 1984, no

---

[8] The party seeking setoff must show that it has a "*legal right* to recover the relevant sums" under Texas law. *Tex. Dep't of Mental Health & Mental Retardation v. Petty*, 817 S.W.2d 707, 720 (Tex. App.—Austin 1991) (emphasis original), *aff'd*, 848 S.W.2d 680 (Tex. 1992), *and disapproved of on other grounds by Cathey v. Booth*, 900 S.W.2d 339 (Tex. 1995). A legal right to recovery means that a party would have grounds for a suit. *Id.*; *see Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987) ("Braniff could have certainly brought an action against Exxon in such a case, alleging that Exxon owed it either money or fuel.") Under the facts presently before the Court, BP would have no grounds for a suit until the Genovesa well produced for 180 days.

writ); *Coppa v. Sec. Bank of Nev. (In re Taylor Motors)*, 60 B.R. 760, 763 (Bankr. D. Nev. 1986) (citing *Stair v. Hamilton Bank of Morristown (In re Morristown Lincoln-Mercury, Inc.)*, 42 B.R. 413, 416 (Bankr. E.D. Tenn. 1984)). The mutuality requirement is strictly construed against the party seeking setoff. *Garden Ridge*, 338 B.R. at 634; *Bennett Funding*, 212 B.R. at 212.

A triangular setoff occurs where "A attempts to offset an obligation owed by B against B's debt to C." *Garden Ridge*, 338 B.R. at 634 (citing *Barber v. Prod. Credit Servs. of W. Cent. Ill. FLCA (In re KZK Livestock, Inc.)*, 221 B.R. 471, 480 (Bankr. C.D. Ill. 1998)). With limited exceptions,[9] triangular setoffs are prohibited because there is no mutuality of debt between two parties. *Sherman v. First City Bank of Dall. (In re United Scis. of Am., Inc.)*, 893 F.2d 720, 723 (5th Cir. 1990) ("The mutuality requirement [of § 553] is designed to protect against 'triangular' set-off; for example, where the creditor attempts to set off its debt to the debtor with the latter's debt to a third party."); *U.S. Aeroteam, Inc. v. Delphi Auto. Sys., LLC (In re U.S. Aeroteam, Inc.)*, 327 B.R. 852, 864 (Bankr. S.D. Ohio 2005); Natalie Regoli, *Setoff in Bankruptcy: A Practical Guide to 11 U.S.C. § 553*, TEX. J. BUS. L. 1, 17 (2002) ("[A] triangular setoff is not generally allowed under applicable nonbankruptcy law."); *see also SemCrude*, 399 B.R. at 394 ("[N]ot one of these cases has actually upheld or enforced an agreement that allows for a triangular setoff; each and every one of these decisions have simply recognized such an exception in the course of denying the requested setoff or finding mutuality independent of the agreement."). BP has the burden to identify Texas or federal non-bankruptcy law allowing it to achieve triangular setoff.

---

[9] Courts have recognized that setoffs involving separate governmental agencies constitute an exception to the principle that triangular setoffs lack the requisite mutuality for setoff. *See Garden Ridge*, 338 B.R. at 634. This case does not require the court to address triangular setoffs involving separate government agencies. An express agreement between the related entities may be another exception to the mutuality requirement for setoff. *See Garden Ridge*, 338 B.R. at 634 (identifying the existence of the express agreement exception); *Aeroteam*, 327 B.R. at 865 ("Generally, courts are in agreement that an assignment of rights can create mutuality for setoff purposes."). *But see SemCrude*, 388 B.R. at 394–95 (finding some support for triangular setoff by agreement under state law, but no support in cases examining the mutuality requirements of § 553).

*Feltman*, 564 B.R. at 204 (Bankr. S.D.N.Y. 2017) ("The creditor asserting the right to setoff has the burden to establish that the right to setoff exists.").

## II. BP's RIGHT TO SETOFF

BP argues that Paragraph 133 of the Confirmation Order "fully preserved BP's valid setoff rights in all respects." (ECF No. 2278 at 12). Paragraph 133 of Confirmation Order preserves BP's preconfirmation setoff rights, but only with respect to BP Executory Contracts. However, Paragraph 133 does not create any rights. Instead, it mandates that the Plan and the Confirmation Order "shall not alter any of the terms under the BP Executory Contracts including . . . any valid netting (either based on setoff or recoupment)." (ECF No. 1751 at 104). Further, the assignment of any BP Executory Contract will not affect any valid netting rights under any BP Executory Contract. (ECF No. 1751 at 104). As set forth in the schedule referenced within Paragraph 133, the Genovesa PSA is *not* a BP Executory Contract.

The Isabela PSA does not grant any setoff rights with respect to the Genovesa PSA. The Isabela PSA does not provide that payments made under it may be netted against the Genovesa PSA or a debt to a third party. (*See* ECF No. 1751). BP fails to identify a provision of the Isabela PSA providing that it may be netted against the Genovesa PSA or a debt to a third party. (*See* ECF Nos. 1468; 1666; 1673; 2278). Paragraph 133 of the Confirmation Order preserves BP's setoff rights under any BP Executory Contract, but it does not entitle BP to engage in a triangular setoff with Fieldwood and QuarterNorth pursuant to two contracts, only one of which is a BP Executory contract.

BP also argues that BP's secured setoff rights were expressly assumed under Paragraph 11.1(n) of the Credit Bid Purchase Agreement through "QuarterNorth's assumption of all liabilities arising out of or relating to affirmative defenses, which includes defensive setoff and recoupment

rights." (ECF No. 2278 at 2). BP again fails to demonstrate that it has a right to engage in a triangular setoff. Under Paragraph 11.1, QuarterNorth agreed to assume certain of Fieldwood's liabilities, including those listed in Subpart (n). (ECF No. 2269-6 at 78). Subpart (n) relates to any liabilities arising out of or relating to any affirmative defenses of third parties with respect to any "Claim" or cause of action assigned to QuarterNorth. (ECF No. 2269-6 at 78). QuarterNorth purchased the right to receive payments under the Isabela PSA. It has a claim[10] against BP for these payments. BP has asserted the right to setoff as an affirmative defense against these payments, but in so doing has put the cart before the horse.

While setoff is an affirmative defense under Texas law, Paragraph 11.1(n) does not grant the right to pursue triangular setoff. *Lone Starr Multi-Theatres, Ltd. v. Max Ints., Ltd.*, 365 S.W.3d 688, 704 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("The right to an offset is an affirmative defense, and the burden of pleading offset and of proving facts necessary to support it are on the party making the assertion."). Paragraph 11.1(n) only mandates that QuarterNorth assumed responsibility for any liabilities arising out of an affirmative defense that a third-party asserts. QuarterNorth's assumption of liability that could ultimately arise out of a disputed third-party setoff claim by BP is not the equivalent to granting BP a right to setoff.

If BP has a setoff right, it must identify it. It fails to show that the setoff right is contained in paragraph 11.1(n). It fails to show mutuality between the Genovesa and Isabela obligations. If it has a setoff right, there is only one remaining alternative—a triangular setoff right. BP has the burden to identify the right to pursue a triangular setoff. It has not met its burden. Neither

---

[10] Under the Credit Bid Purchase Agreement, "Claims" are "any and all claims, demands, . . . actions (whether judicial, administrative or arbitrational), causes of action, suits, proceedings and controversies." (ECF No. 2269-6 at 97).

Paragraph 133 of the Confirmation Order nor Paragraph 11.1(n) of the Credit Bid Purchase Agreement grants BP the right to pursue a triangular setoff.

BP makes additional arguments concerning its interpretation of statements by Fieldwood's counsel and its interpretation of § 363. Those arguments are of no avail. The issue is what the Confirmation Order and the Plan actually say. Statements of counsel cannot alter their plain meaning. *See Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (finding that Texas law requires that contracts be interpreted according to their plain meaning); *In re DeSardi*, 340 B.R. 790, 796 (Bankr. S.D. Tex. 2006) ("Because this interpretation is contrary to the plain meaning of the plans, the Court rejects the interpretation and will apply the plain meaning."); *Off. Comm. of Unsecured Creditors v. Down Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 676 (6th Cir. 2006) ("In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors.").

A dispute over whether the Court properly authorized the sale is moot. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (holding that a confirmed plan will not be overturned for legal error when a party has notice of the error and does not object or timely appeal).

### III. QUARTERNORTH DID NOT VIOLATE RULE 7001

Federal Rule of Bankruptcy Procedure 7001 requires that an injunction must be pursued by adversary proceeding unless a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief sought. FED. R. BANKR. PROCEDURE 7001(7). If a party seeks a declaratory judgment relating to an injunction not provided by a plan, it must be sought in an adversary proceeding as well. FED. R. BANKR. PROCEDURE 7001(9). An adversary proceeding is unnecessary when the relief sought is the enforcement of an injunction previously obtained. *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 327 (Bankr. D. Del. 1999), *aff'd sub nom. In re Cont'l Airlines*, No. 90-932, 2000

WL 1425751 (D. Del. Sept. 12, 2000), *aff'd sub nom. In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002).

In its motion, QuarterNorth seeks an injunction and a declaratory judgment. (ECF No. 2199 at 17). If the Plan does not provide for the injunction, QuarterNorth violated Rule 7001 by filing its motion rather than by filing an adversary proceeding. Except as otherwise provided in Fieldwood's Plan and Confirmation Order, Section 10.6 of the Plan enjoins anyone who held, holds, or may hold a claim from continuing in any proceeding affecting any transferee of Fieldwood's property. (ECF No. 2008 at 82–83). As discussed above, Paragraph 133 of the Confirmation Order does not permit BP to set off any amount Fieldwood owes it against an amount it owes QuarterNorth. In fact, nothing in the Plan or Confirmation Order permits BP to set off the amount it owes Fieldwood against QuarterNorth. The Plan enjoins BP's actions, and so QuarterNorth was not required to proceed by an adversary proceeding when it sought to enforce an injunction previously obtained.

### IV. BP VIOLATED THE PLAN

Section 10.5 of the Plan provides that all parties in interest shall be enjoined from taking any action to interfere with the implementation of the Plan. (ECF No. 2008 at 82). The Confirmation Order provides the same injunction. (ECF No. 1751 at 115). BP had no right to set off debts it owes QuarterNorth against what Fieldwood owed it. BP interfered with the implementation of the Plan and violated the Plan and Confirmation Order.

### V. ATTORNEYS' FEES

QuarterNorth seeks recovery of its attorneys' fees and costs associated with this proceeding. (ECF No. 2199 at 17). Under the Texas Civil Practices and Remedies Code Section 37.009, "the court may award costs and reasonable and necessary attorney's fees as are equitable

and just." Under Section 38.001(b)(8), attorneys' fees are recoverable against an individual or an organization if the claim is for an oral or written contract.

Here, QuarterNorth was entitled to payments under the Isabela PSA. BP failed to pay. QuarterNorth is entitled to costs and reasonable and necessary attorneys' fees as are equitable and just. QuarterNorth will need to prove the amount to which it is entitled at a future hearing.

## CONCLUSION

A separate judgment will be entered after the determination of the appropriate award of costs and attorneys' fees. The evidentiary hearing on those matters will be on February 23, 2022 at 4:00 p.m.

SIGNED 02/08/2022

_____
Marvin Isgur
United States Bankruptcy Judge