IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY III LLC,** *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Post-Effective Date Debtors.**[1] | § | **(Jointly Administered)** |

**EMERGENCY MOTION OF BP EXPLORATION & PRODUCTION, INC. TO
ALTER OR AMEND MAY 24 ORDER PURSUANT TO BANKRUPTCY RULE 9023**

**[DOCKET NO. 2475]**

EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE
CONDUCTED ON THIS MATTER ON JUNE 7, 2022 AT 1:30 P.M. (PREVAILING
CENTRAL TIME) BEFORE THE HONORABLE MARVIN ISGUR, BOB CASEY
UNITED STATES COURTHOUSE, 515 RUSK STREET, 4TH FLOOR, COURTROOM
404, HOUSTON, TEXAS 77002.  YOU MAY PARTICIPATE IN THE HEARING EITHER
IN PERSON OR BY AUDIO/VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.
YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE
FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE
ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S
CONFERENCE ROOM NUMBER IS 954554.

YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE
COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING
APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE
"JUDGE ISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE
ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE

---

[1]    The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax
identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC
(4494), Fieldwood Energy Inc. (4991), GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood
Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the
Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O
of Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "Post-Effective Date FWE I
Subsidiaries") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I
Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered
with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other
entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158);
Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon
Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston
Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

**CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR.  UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NO LATER THAN JUNE 7, 2022.**

BP Exploration & Production Inc. ("BP") submits this emergency motion (the "Emergency Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2004, 7027, 9013 and 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 59(e) of the Federal Rules of Civil Procedure, altering or amending the *Order* [Docket No. 2475] entered on May 24, 2022 (the "May 24 Order") to provide that the Debtors' successor in interest under the consummated plan, QuarterNorth Energy LLC ("QuarterNorth"), a non-debtor, may not conduct discovery against BP, another non-debtor, pursuant to Bankruptcy Rule 2004, in light of the changed circumstances and new evidence discussed more fully below.  In support of this Emergency Motion, BP respectfully states as follows:

*ACTIVE 65153421v9*

**BACKGROUND**

**A.     The Bankruptcy Cases.**

1.      On August 3, 2020 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      On April 9, 2021, the Debtors filed their *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1252].

3.      On June 2, 2021, BP filed *BP Exploration & Production Inc.'s Objection to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1468] (the "Confirmation Objection").

4.      On June 25, 2021, after holding a hearing on confirmation of the Plan, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") which confirmed the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (as modified and amended, the "Plan").

5.      On August 27, 2021 (the "Effective Date"), the Debtors filed the *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 2016] (the "Notice of Effective Date").  On the Effective Date, the assets and claims at issue in the 2004 Requests (defined below) were sold and assigned to QuarterNorth, and no longer were property of the bankruptcy estate.

**B.     The 2004 Requests and the Motion to Quash.**

6.      On May 21, 2021, the Debtors served on BP requests for production pursuant to Bankruptcy Rule 2004 (the "2004 Requests"), following provision of draft requests to BP's counsel on May 14, 2021.  *See* Debtors' Notice of Bankruptcy Rule 2004 Request for Production

*ACTIVE 65153421v9*

of Documents from BP Exploration & Production Inc. [Docket No. 1387].  The 2004 Requests

sought the production of documents and information relating to one of the Debtors' wells (the

"Genovesa Well"), which forms a part of the Galapagos Area Loop Subsea Production System

("LSPS"), owned in part by BP and debtor Fieldwood Energy LLC ("Fieldwood") and governed

by the Galapagos Area Loop Subsea Production System Construction and Operating Agreement,

dated December 1, 2011 (as amended from time to time, the "LSPS OA") and operated in

accordance with the Mississippi Canyon Block 519 OCS-G 27278 Lease.  Production from the

Genovesa Well is governed by the Production Handling and Operating Services Agreement (the

"PHA") dated effective September 21, 2010, as amended, between the parties. *See* Docket No.

832, Ex. 2 (filed under seal).  In particular, the 2004 Requests sought information and documents

relating to certain disputes among BP and the Debtors regarding the Genovesa Well.  As of the

Effective Date, the Genovesa Well, and all claims relating thereto, were transferred to

QuarterNorth.

7.      Also on May 14, 2021, the Debtors sent BP a Notice for Removal of Operator for

Cause (the "Removal Notice") allegedly pursuant to Article 3.02(a) of the LSPS OA, in response

to which BP, among other things, invoked the Dispute Resolution Procedures of the LSPS OA,

which also provides for mandatory arbitration of such disputes.  *See* LSPS OA, Art. 22.28.

8.      On May 28, 2021, BP filed the *Motion of BP Exploration & Production, Inc. to

Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* [Docket No. 1415] (the "Motion to

Quash") which posited, among other things, that the subject matter of the 2004 Requests

constituted a dispute within the scope of arbitration provisions in the LSPS OA, such that the

Debtors had to pursue any discovery against BP with respect to such dispute via an arbitration

proceeding.  On June 11, 2021, the Debtors filed the *Debtors' Response to Motion of BP*

4

*Exploration & Productions, Inc. to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* [Docket No. 1539]. On July 9, 2021, BP filed the *Reply of BP Exploration & Production, Inc. in Support of Its Motion to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* [Docket No. 1845].

9.      Also on July 9, 2021, the Court held a hearing on the Motion to Quash and the 2004 Requests, in which the Court declined to rule on the underlying merits of the Motion to Quash, but instead delayed its decision pending an attempt by the parties to negotiate a solution, and pending a decision on the Motion to Lift Stay (defined and discussed below). *See* July 9, 2021 Hr'g Tr. 55–57 [Docket No. 2411].

10.      On August 23, 2021, BP filed the *Supplemental Reply of BP Exploration & Production, Inc. in Support of Its Motion to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* [Docket No. 2000].

11.      On August 24, 2021, the Court issued a ruling as to the Motion to Lift Stay (as discussed more fully below) and also discussed the Motion to Quash, questioning "what damages" QNE would "actually be seeking to prove up by doing the discovery, if this is solely under the PSA" and concluding that "it is more likely to be discovery that is related to the termination dispute." *See* Aug. 24, 2021 Hr'g Tr. 11 [Docket No. 2009]. Thereafter, the parties disagreed as to whether the Court had finally ruled on the Motion to Quash, or deferred ruling thereon, with QuarterNorth taking the latter position.[2]

---

[2]      The parties disagree whether the Court ruled on the Motion to Quash. After the Court initially declined to rule on the Motion to Quash, the Debtors' counsel pressed the issue. Aug. 24, 2021 Hr'g Tr. 10:1–2 & 13–19 [Docket No. 2006]. Thereafter, the Court stated: "I did think about it, but because of that, I'm going to go ahead and deny them now." *Id*. at 11:8–9. In any case, however, based on the May 24 Order, it appears the August 24, 2021 ruling did not reach the merits of the Motion to Quash, but instead constituted a deferral a ruling thereon, as the Court had previously done at the July 9, 2021 hearing.

*ACTIVE 65153421v9*

12.     In accordance with that position, on August 30, 2021, QuarterNorth filed the *Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* [Docket No. 2019] (the "Motion to Reconsider Deferral").  BP filed the *Response of BP Exploration & Production, Inc. Emergency Motion for Reconsideration of the Court's Deferral of Ruling on Motions to Quash Rule 2004 Discovery* [Docket No. 2035] ("Reconsideration Response") on September 3, 2021, and QuarterNorth then filed its *Reply in Support of Emergency Motion for Reconsideration of the Court's Deferral of Ruling on BP Exploration & Production, Inc.'s Motion to Quash Rule 2004 Discovery* [Docket No. 2051] on September 8, 2021.

13.     Thereafter, no ruling was issued on the Motion to Quash or the Motion to Reconsider Deferral until the May 24 Order, which provides that BP "should not be able to avoid responding to Fieldwood Energy LLC's Federal Rule of Bankruptcy Procedure 2004 requests based on the passage of time" and that the Court is "empowered to allow discovery to occur by the Debtor's successor if [the Court] caused the delay . . . [as] the law allows [the Court] to order . . . pre-suit discovery in any event."  May 24 Order.  Accordingly, the May 24 Order further provides that QuarterNorth, as "the assignee of the Genovesa well and any claims or causes of action related to Genovesa . . . may serve BP . . . with the discovery requests . . . ."  *Id.*

**C.     The Arbitration Proceedings.**

14.     As mentioned above, on a dual-track with the Motion to Quash, BP also sought relief from the automatic stay to pursue arbitration related to the propriety of the termination of BP as the operator of the LSPS, via the *Motion of BP Exploration & Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors* [Docket No. 1414] (the "Motion to Lift Stay").

6

15.     The Debtors responded on July 2, 2021 by filing their *Response to Motion of BP Exploration & Production, Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors* [Docket No. 1795], and on July 9, 2021, BP filed *BP Exploration & Production, Inc.'s Reply in Support of Its Motion for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors* [Docket No. 1844].

16.     On July 17, 2021, BP filed a *Supplemental Brief of BP Exploration & Production Inc. in Support of Motion for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authoring Relief from the Automatic Stay to Commence Arbitration Against the Debtors* [Docket No. 1896].

17.     At the August 24, 2021 hearing, the Court granted the Motion to Lift Stay so that BP could pursue arbitration on the termination issue under the LSPS OA and issued its *Order Modifying Stay* [Docket No. 2003] (the "Arbitration Order") on the same date.

18.     Accordingly, on September 2, 2021, BP served a notice of intent to initiate arbitration on QuarterNorth respecting the LSPS operatorship issue, a copy of which is attached as sealed **Exhibit B** hereto ("BP's Notice of Intention to Arbitrate"), thereby initiating the first of two arbitration proceedings currently pending between BP and QuarterNorth (the "First Arbitration").[3]  The First Arbitration has proceeded to dispositive motions following the selection of an arbitrator and the issuance of an agreed scheduling order.

19.     In turn, on October 1, 2021, QuarterNorth served its own notice of intent to initiate arbitration on BP, a copy of which is attached as sealed **Exhibit C** hereto ("QuarterNorth's Notice of Intention to Arbitrate"), thereby initiating the second of two arbitration proceedings now

---

[3]     As the LSPS OA requires both Arbitration Proceedings (as defined herein) to remain confidential, BP has filed exhibits relating to the Arbitration Proceedings under seal and requested leave to do so by the contemporaneously filed *Motion of BP Exploration & Production, Inc. to File Confidential Exhibits Under Seal.*

pending between the parties (the "Second Arbitration" and together with the First Arbitration, the "Arbitration Proceedings").  An arbitrator has been selected in the Second Arbitration and the parties are currently working towards an agreed scheduling order for the remainder of the proceeding.

20.    As shown in QuarterNorth's Notice of Intention to Arbitrate, as well as the chart attached as sealed **Exhibit D** hereto listing the 2004 Requests and, for each request, examples of corresponding factual allegations and causes of action alleged by QuarterNorth in its notice, the Second Arbitration covers a broad range of topics relating to the parties' relationship and dealings, and there is enormous overlap between the subject matter of the Second Arbitration and the 2004 Requests.  Indeed, all claims related to Genovesa were assigned to QuarterNorth, such that all potential claims on which the Debtors sought to conduct pre-suit discovery via the 2004 Requests now belong to QuarterNorth.

## EMERGENCY NATURE OF RELIEF

21.    Pursuant to Bankruptcy Rule 9023, BP seeks emergency relief with respect to the May 24 Order, in light of the changed circumstances and new evidence discussed herein, which were not available to the Court before the entry of the May 24 Order.  In light of such intervening events, as discussed further below, the May 24 Order is inconsistent and incompatible with the Arbitration Proceedings, in particular the Second Arbitration, as well as the Arbitration Order.

22.    In light of the May 24 Order, BP will now be immediately subject to duplicative discovery, in the already-pending Arbitration Proceedings, in particular the Second Arbitration, and via the Rule 2004 Requests.  At the same time, QuarterNorth will be able to use Bankruptcy Rule 2004 to circumvent the procedures and limitations respecting discovery in the Second Arbitration, which QuarterNorth agreed to both in the LSPS OA and PHA and by initiating its own arbitration proceeding against BP.

23.     Accordingly, expedited relief is appropriate under the circumstances.

## RELIEF REQUESTED

24.     By this Motion, BP seeks the entry of an order, substantially in the form of the Proposed Order, altering or amending the May 24 Order to provide that QuarterNorth may not conduct discovery against BP pursuant to Bankruptcy Rule 2004, in light of the changed circumstances discussed herein and shown in the sealed exhibits attached hereto.

## BASIS FOR RELIEF

25.     Relief under Rule 59(e) of the Federal Rules of Civil Procedure, made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure, is appropriate "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). "Rule 59(e) motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (internal citation and quotation marks omitted).

26.     Here, an alteration of amendment of the May 24 Order is warranted because: (a) the subject matter of the 2004 Requests is the same as the subject matter of the Arbitration Proceedings, in particular, the Second Arbitration initiated by QuarterNorth against BP, such that pre-suit discovery pursuant Bankruptcy Rule 2004 by QuarterNorth on claims it has already brought against BP in the Second Arbitration is not warranted or appropriate; and (b) the Court now more clearly lacks subject matter jurisdiction over such claims and any related discovery or, in the alternative, should decline to exercise such jurisdiction in favor of the pending Arbitration Proceedings.

*ACTIVE 65153421v9*

**A.     The Subject Matter of the Rule 2004 Requests Falls Within the Scope of the Arbitration Proceedings.**

27.     It is well-established that a party may not use Bankruptcy Rule 2004 to conduct discovery on claims or issues raised in a pending proceeding.  As the Court stated in the May 24 Order, Bankruptcy Rule 2004 is a tool for *pre-suit* investigation and discovery.  May 24 Order (quoting July 9, 2021 Hr'g. Tr. at 56-57).  It is not, however, a means to conduct discovery on matters raised in an already-pending proceeding in which discovery is available under terms different than those imposed by Bankruptcy Rule 2004.  *In re Flambeaux Gas & Elec. Lights, LLC*, Case No. 18-11979, 2019 WL 2337098, at *4 (Bankr. E.D. La. May 31, 2019); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988); *accord In re Kearney*, 590 B.R. 913, 924 (Bankr. D.N.M. 2018); *In re SunEdison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017); *In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009); *In re Enron Corp.*, 281 B.R. 836, 840–42 (Bankr. S.D.N.Y. 2002).

28.     The pending proceeding rule and the rationales behind it apply as equally to a pending arbitration proceeding as to a pending lawsuit in federal or state court or any other proceeding in which discovery or similar mechanisms are available.  *See In re Bd. of Directors of Hopewell Int'l Ins., Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (declining to authorize Rule 2004 discovery related to an already-pending arbitration proceeding by analogy to cases declining to allow Rule 2004 related to pending adversary proceedings and contested matters); *Snyder v. Society Bank*, 181 B.R. 40, 41 (S.D. Tex. 1994) (holding that the pending proceeding rule applies to pending state as well as federal lawsuits), *aff'd sub nom. Snyder v. Society Bank of Ann Arbor (In re Snyder)*, No. 94-60572, 1995 WL 241797, at *1–2 (5th Cir. April 12, 1995). Thus, just as Bankruptcy Rule 2004 may not be used to circumvent the discovery rules found in the Federal Rules of Civil Procedures or state-law equivalents, courts have similarly declined to

allow parties to use Bankruptcy Rule 2004 to circumvent requirements and limitations respecting discovery that are in place in an arbitration. *See Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 188 (N.D. Tex. 2005) (ruling that the bankruptcy court erred in permitting a party to use Rule 2004 to "supersede[] the discovery limitations of the arbitration clauses" without considering whether the relevant issues were subject to arbitration, even though no arbitration proceeding had been commenced).

29.    However, such circumvention of the agreed-to rules and limitations for discovery in the pending Arbitration Proceedings is exactly what the May 24 Order would allow.  In the more than nine months since the August 24, 2021 hearing, QuarterNorth has asserted a broad range of claims relating to Genovesa against BP via the Second Arbitration, including claims premised on the same underlying set of facts on which the Debtors originally sought pre-suit discovery via the 2004 Requests, as is more fully set forth in sealed **Exhibit D**.  For the reasons set forth therein, the overlap between the contents of the 2004 Requests and QuarterNorth's Notice of Intention to Arbitrate is significant, and QuarterNorth cannot conduct the contemplated Rule 2004 discovery without delving into the very issues and claims pending in the Second Arbitration.  Thus, QuarterNorth can, by definition, no longer conduct pre-suit discovery relating to "any claims or causes of action related to Genovesa[,]" May 24 Order, because QuarterNorth has itself initiated an arbitration proceeding seeking relief on such claims or causes of action against BP—based on the same factual matters that the Debtors initially sought to investigate via the 2004 Requests. *See Daisytek*, 323 B.R. at 188; *Hopewell*, 258 B.R. at 587.

**B.     The Court Lacks, or Should Decline to Exercise, Subject Matter Jurisdiction Over the Claims or Causes to Which the 2004 Requests Relate.**

30.    Discovery pursuant to Bankruptcy Rule 2004 is severely limited following confirmation and does not extend to claims that are no longer property of the estate, such as the

ACTIVE 65153421v9

claims raised by QuarterNorth in the Second Arbitration and originally covered by the 2004 Requests. *See, e.g.*, *In re Express One Int'l*, 217 B.R. 215, 216–17 (Bankr. E.D. Tex. 1998); *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377–79 (Bankr. E.D. Pa. 1988). Here, as discussed above, the potential claims covered by the 2004 Requests are held by a non-debtor entity post-effective date against another non-debtor entity and, further, are now the subject of the pending Arbitration Proceedings, including the Second Arbitration Proceeding initiated against BP by QuarterNorth itself, thus placing such matters outside the subject matter jurisdiction of this Court. Accordingly, BP submits that, to the extent the May 24 Order rules that the Court has subject matter jurisdiction to authorize Rule 2004 discovery by one non-debtor against another non-debtor post-confirmation, with no effect on the post-confirmation estate being administered in bankruptcy, such a ruling would constitute a manifest error of law. *Compare* Reconsideration Resp. at ¶¶ 20–23*, with* May 24 Order ("I'm perfectly empowered to allow discovery to occur by the Debtor's successor if I caused the delay, so that it couldn't happen." (quoting July 9 Hr'g Tr. at 56–57)).

31.     While the Fifth Circuit has generally adopted the Third Circuit's *Pacor* test for determining the outer reaches of a bankruptcy court's subject matter jurisdiction, it has prescribed a "more exacting theory of post-confirmation bankruptcy jurisdiction[.]" *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 391 (5th Cir. 2001). Specifically, the Fifth Circuit has held that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390–91. The Rule 2004 discovery sought by QuarterNorth for use in the Arbitration Proceedings does not pertain to the implementation or execution of the Plan and it could not have any conceivable effect on the post-

12

confirmation estates being administered in these chapter 11 cases, as the Arbitration Proceedings and the facts underlying them relate solely to disputes between two non-debtor parties (QuarterNorth and BP) and any recovery therein would inure solely to the benefit of QuarterNorth or BP, respectively, but in either case not to the bankruptcy estates. Thus, even under the more expansive *Pacor* test for "related to" jurisdiction, there is no subject matter jurisdiction here as the outcome of the claims or causes of action on which the 2004 Requests seek discovery, *i.e.*, the Arbitration Proceedings, could not conceivably have any effect on the bankruptcy estates at this point. *See, e.g.*, *Galaz v. Galaz (In re Galaz)*, 665 F. App'x 372, 377 (5th Cir. 2016) (rejecting "related to" jurisdiction under both the broader and narrower tests).

32.     Regardless, by initiating the Second Arbitration against BP, QuarterNorth has materially altered the circumstances since the last briefing related to the 2004 Requests, and it is no longer appropriate for the Court to authorize pre-suit discovery pursuant to Bankruptcy Rule 2004 that overlaps with claims that have become the subject of a pending arbitration proceeding brought by the party seeking such discovery. The Court already ruled, at the August 24, 2021 hearing and in the Arbitration Order, that BP may seek to resolve certain disputes related to Genovesa via and subject to the arbitration provisions in the LSPS OA, and such ruling recognizes that a bankruptcy "court has no choice but to abstain and allow the parties to arbitrate the matter" if the test under *National Gypsum* is met. *In re Mirant Corp.*, 316 B.R. 234, 238 (Bankr. N.D. Tex. 2004); *see also In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1064–67 (5th Cir. 1997). For the same reasons the Court issued the Arbitration Order, the *National Gypsum* test is also met with respect to the subject matter of the Second Arbitration and the 2004 Requests, as shown on sealed **Exhibits C and D**. Allowing QuarterNorth to take Bankruptcy Rule 2004 discovery now on factual matters underpinning the claims and causes of action QuarterNorth has

13

already raised in a pending arbitration proceeding would, therefore, not only run afoul of the pending proceeding rule, but also the body of case law in this Circuit on when and to what extent bankruptcy courts must abstain in favor of arbitration. *See, e.g.*, *In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002); *Nat'l Gypsum*, 118 F.3d at 1064–67; *Mirant*, 316 B.R. at 238.

**WHEREFORE**, BP respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Emergency Motion and such other and further relief the Court may deem proper.

Date: June 1, 2022

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By:  */s/ Karl D. Burrer*

Shari L. Heyen (SBN 09564750)
HeyenS@gtlaw.com
Karl D. Burrer (SBN 24043584)
BurrerK@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

– and –

Craig A. Duewall (admitted *pro hac vice*)
Texas State Bar Number 24025334
DuewallC@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

***Counsel for BP Exploration & Production Inc.***

ACTIVE 65153421v9

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that starting on May 27, 2022, he has engaged in a numerous communications with Paul Genender about this motion, both by telephone and email. Mr. Genender objected to the relief sought but also took the position that he could not tell me his view unless he was first permitted to review the motion itself. I have generally informed Mr. Genender of the bases for the motion. This afternoon, I emailed Mr. Genender again and told him that if I did not hear from him by a time certain, I would put him down as opposed and file the motion. He responded requesting an additional conference tomorrow. Because of the expedited nature to the relief sought and requested, movant is required to file the motion at issue. If the parties resolve any of these issues after additional conference, movant shall so inform the court.

By: */s/ Craig A. Duewall*
Craig A. Duewall

## CERTIFICATE OF ACCURACY

The undersigned hereby certifies that the facts and circumstances in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge information and belief.

By: */s/ Craig A. Duewall*
*Craig A. Duewall*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 1, 2022, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas by electronic mail.

By: */s/ Karl D. Burrer*
Karl D. Burrer

*ACTIVE 65153421v9*