1

```
 1                    IN THE UNITED STATES BANKRUPTCY COURT

 2                    FOR THE SOUTHERN DISTRICT OF TEXAS

 3                              HOUSTON DIVISION

 4    IN RE:                             §    CASE NO. 20-33948-11
                                         §    HOUSTON, TEXAS
 5    FIELDWOOD ENERGY, LLC, AND         §
      THE OFFICIAL COMMITTEE OF          §
 6    UNSECURED CREDITORS,               §    TUESDAY,
                                         §    AUGUST 24, 2021
 7                DEBTORS.               §    8:58 A.M. TO 9:11 A.M.

 8                       COURT'S RULING (VIA ZOOM)

 9               BEFORE THE HONORABLE MARVIN ISGUR
                    UNITED STATES BANKRUPTCY JUDGE
10

11

12        APPEARANCES:                         SEE NEXT PAGE

13        RECORDED VIA COURTSPEAK; NO LOG NOTES

14

15

16

17

18

19

20                       TRANSCRIPTION SERVICE BY:

21              JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                       935 Eldridge Road, #144
22                      Sugar Land, TX  77478
                            281-277-5325
23                  www.judicialtranscribers.com

24
         Proceedings recorded by electronic sound recording;
25          transcript produced by transcription service.

                       JUDICIAL TRANSCRIBERS OF TEXAS, LLC
```

BP Exhibit G — Case No. 20-33498-MI

```
 1                      APPEARANCES (VIA ZOOM):

 2

 3  FOR THE DEBTORS:              WEIL GOTSHAL & MANGES, LLP
                                  Paul Genender, Esq.
 4                                200 Crescent Court, Ste. 300
                                  Dallas, TX  75201-6950
 5                                214-746-7877

 6

 7  FOR BP EXPLORATION &
    PRODUCTION:                   GREENBERG TRAURIG, LLP
 8                                Craig Duewall, Esq.
                                  300 West 6th Street
 9                                Suite 2050
                                  Austin, TX  78701
10                                512-320-7210

11

12  (Please also see Electronic Appearances.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1         HOUSTON, TEXAS; TUESDAY, AUGUST 24, 2021; 8:58 A.M.
2             THE COURT:  If I can go ahead and get the parties
3    that are intending to speak today to go ahead and press five
4    star, we'll get your line enabled.
5         (Pause in the proceedings.)
6             THE COURT:  From 214-746-2503, I don't have a name
7    associated with that number.
8             MR. GENENDER:  Your Honor, it's Paul Genender of
9    Weil.  Good morning.
10            THE COURT:  Good morning.
11            All right.  So we're going to call the Fieldwood
12   Energy case.  It's 20-33948.
13            We have Mr. Duewall, Mr. Genender, Mr. Manns, and
14   Mr. Perez who have asked for the ability to go ahead and
15   address the Court today.
16            Are there any preliminary announcements?  Are we
17   ready to move right into the hearing?
18            MR. GENENDER:  I think from the Debtor's
19   perspective, we're ready, Judge.
20            THE COURT:  All right.  Anyone else?
21       (No audible response.)
22            THE COURT:  So the parties had asked for the Court
23   if you-all hadn't resolved matters by today to announce its
24   decision on whether to lift the stay and allow the
25   arbitration to proceed.

1        I am going to lift the stay to allow the
2   arbitration to proceed.  The Court has jurisdiction over
3   this matter pursuant to 20 USC Section 1334.  This was a
4   core matter when it was filed under 20 USC Section 157 and
5   although the dispute arose pre-confirmation, the core -- the
6   nature of the dispute did not change with confirmation of
7   the Plan.
8        Pursuant to Rule 7052(a)(1), as incorporated into
9   the 9000 series, I make these oral Findings of Fact and
10  Conclusions of Law and a separate Order will be issued.
11       Under the Federal Arbitration Act, there is a
12  strong presumption in favor of arbitration and a party
13  seeking not to enforce an Arbitration Agreement bears the
14  burden of establishing the reasons why.  When there is a
15  valid agreement to arbitrate, as here, -- and no one argues
16  that it's not a valid agreement -- the Federal Arbitration
17  Act leaves no place for the exercise of discretion as to
18  whether to mandate the arbitration.
19       There is somewhat of a bankruptcy exception, but
20  arbitration generally applies in bankruptcy cases, unless
21  there's something unique about the dispute such that it must
22  be resolved as part of the bankruptcy process itself.
23       The Fifth Circuit has explicitly held since 1997
24  that arbitration clauses apply in bankruptcy, and I refer to
25  the *National Gypsum* case at 118 F.3d 1056.

1              In those cases permitting arbitration, courts have
2  typically found little difficulty with arbitration of
3  disputes where resolution would not involve matters of
4  Federal Bankruptcy law.
5              The Fifth Circuit in 2019 in *In Re: Henry*, at
6  944 F.3d 587 clarified when you would make this exception.
7  We have held that Bankruptcy Courts may decline to enforce
8  arbitration clauses when two requirements are met:  First,
9  the proceeding must adjudicate statutory rights conferred by
10 the Bankruptcy Code, and not the Debtors' pre-petition legal
11 or equitable rights citing back to *National Gypsum*.
12             A trustee in bankruptcy has two kinds of causes of
13 action:  Those inherited from the Debtor and those granted
14 by statute.
15             Second, Bankruptcy Courts may decline to enforce
16 arbitration provisions only if requiring arbitration would
17 conflict with the purposes of the Bankruptcy Code, referring
18 back to *Gandy* at 299 F.3d 489, a 2002 Fifth Circuit case.
19             Those purposes would include the goal of
20 centralized resolution of purely bankruptcy issues, they
21 need to protect creditors from reorganizing Debtors from
22 piecemeal litigation and the undisputed power of a
23 Bankruptcy Court to enforce its own Order.
24             So without more in this case, arbitration would
25 apply.  The argument, of course, is -- that we have to focus

1  on, is whether there has been any sort of a waiver or lack
2  of enforcement of the arbitration provision.
3        It's interesting that on the same day this motion
4  was filed, May 28th, the Fifth Circuit came out with its
5  most recent pronouncement in this area.  So the parties
6  filing the motion weren't aware of it, but it literally
7  occurred on the same day, and that's the *International*
8  *Energy Ventures Management* case at 999 F.3d 257, 2021 Fifth
9  Circuit case.
10       In that case they found that there had, in fact,
11 been a waiver, but they also established the principles.
12 Waiver of arbitration is a disfavored finding, according to
13 the Fifth Circuit, but we will find it when the parties
14 seeking arbitration substantially invokes the judicial
15 process to the detriment or the prejudice of the other
16 party.
17       Substantial invocation and prejudice are questions
18 of Federal law in every case where the FAA applies.  There
19 are Federal questions in this case.  The substantial
20 invocation analysis in this case is straightforward.
21 Substantial invocation occurs when a party performs an overt
22 act in court that advances a desire to resolve the arbitral
23 dispute through litigation, rather than arbitration,
24 referring back to *Nicholas* at 565 F.3d 907.
25       It is difficult to see, held the Fifth Circuit in

1  that case, how a party could more clearly event such a
2  desire than by filing a lawsuit, go into the merits of an
3  otherwise arbitral dispute.
4          So outside of the rare case in which initiating
5  litigation, quote:
6      "Would not be inconsistent with seeking arbitration,
7      the act of a Plaintiff filing suit without asserting an
8      arbitration clause, constitutes substantial invocation
9      of the judicial process."
10          The principle argument against enforcing the
11 Arbitration Agreement arises out of the earlier motion filed
12 by the Debtor seeking to compel performance by its
13 counterparty.
14          For several reasons, I reject that argument.
15 First, and perhaps most importantly, I find that either the
16 Debtors breached the Arbitration Agreement by coming to me
17 and seeking that earlier relief, or alternatively sought
18 preliminary relief in aid of arbitration.
19          There really isn't any other way to look at this
20 in my mind.  The parties' agreement contains an arbitration
21 clause that I want to read into the Record:
22     "The arbitration process is binding on the parties and
23     this arbitration is intended to be a final resolution
24     of any dispute between the parties as described above,
25     to the same extent as a Final Judgment of a Court of

1       competent jurisdiction."

2             And then the critical sentence:

3       "Each party hereby expressly covenants that it shall

4       not resort to court remedies, except as provided for

5       herein, and for preliminary relief in aid of

6       arbitration."

7             Fieldwood resorted to court remedies.  Now maybe

8  they did so in breach of the agreement, and maybe they did

9  so because they were seeking preliminary relief in

10 arbitration.

11            In the end I conclude that this was preliminary

12 relief in arbitration, but largely it won't matter in terms

13 of the outcome of the decision.  It would surely be totally

14 inconsistent with the Federal policy of enforcing

15 arbitration clauses to say that there was somehow a waiver

16 when the counterparty breaches the Arbitration Agreement and

17 then the responding party comes in and defends itself in

18 light of the breach.

19            It was not up to Mr. Duewall's client to come in

20 and to say, "Wait, we're invoking arbitration."  It was up

21 to Fieldwood not to come to court in the first place; or

22 Fieldwood had the right to come and seek preliminary relief

23 in aid of arbitration.

24            Although Fieldwood sought a form of affirmative

25 relief, I nevertheless find that it was preliminary relief

1 in aid of arbitration.  Fieldwood was trying to avoid the
2 loss of valuable rights.  They had the right to try and
3 avoid that and they needed to come to court to lose the
4 avoidance of those rights without then having the -- and
5 then retain the ability to go to arbitration later.
6             I will acknowledge I think that's a pretty close
7 call.  But it is not a close call that Fieldwood either
8 breached or came in aid of arbitration.  My call is
9 Fieldwood did not breach, but instead, came in preliminary
10 aid of arbitration.
11            Second, I find that BP did not seek any
12 affirmative relief from the Court and they stated this
13 earlier at a preliminary hearing.  I think seeking to
14 minimize preliminary relief against BP is nowhere near the
15 equivalent of what occurs when BP would have initiated its
16 own lawsuit.
17            In these cases, the waiver of a party -- cases
18 where that's been found -- is when that party initiates a
19 proceeding to obtain affirmative relief.
20            For BP to come in and say, "Don't do this to us,"
21 or "If you're going to do it to us, do it in this less
22 harmful way to us," is not invoking the aid of the Court,
23 it's trying to get the Court to do less, not to do more.  I
24 just don't think there is any way that that is a waiver of a
25 substantial right.

1          Because I am lifting the stay in favor of
2    arbitration, I decline to rule on the Motions to Quash.
3    They'll be up to the arbitration process.  I will issue a
4    separate Order that grants relief from the stay to allow the
5    parties to proceed in arbitration.
6          I think that terminates everything we had
7    scheduled for today, but you-all let me know if I've missed
8    something here.
9          MR. GENENDER:  Your Honor, Paul Genender for the
10   Debtors.  Thank you for going through that.
11         May I ask a clarification question?
12         THE COURT:  Of course.
13         MR. GENENDER:  So your ruling in declining to
14   address the Motions to Quash, my question relates to the
15   fact that the 2004 discovery sought did not relate to
16   agreements that have arbitration clauses in them; namely,
17   the Debtor's position is it relates to the PSA that does not
18   have arbitration clause in it.  And for that reason,
19   wouldn't be subject to your lift stay ruling.
20         THE COURT:  Well, I understand that position that
21   you-all have taken, but I don't think that you have
22   supported it with the request that you have made in light of
23   what the PSA says with respect to waivers.
24         I get it, and if you want to file a motion for me
25   to reconsider this, I'm not going to at all be offended on

1  that, but if you look at the PSA itself, I'm not sure what
2  damages you're actually seeking to prove up by doing the
3  discovery, if this is solely under the PSA.
4            And I think it is more likely to be discovery that
5  is related to the termination dispute.
6            So I'll let you file a Motion for Reconsideration
7  on that issue.  I did not address it fully in my Findings of
8  Fact and Conclusions of Law.  I did think about it, but
9  because of that, I'm going to go ahead and deny them now.
10 But I -- you know, it took me a long time to make this
11 ruling.  That's because the lawyering has been so good, so
12 I'm not going to be upset if you file a Motion to
13 Reconsider.  I'll let them respond to it.
14           But for now I think that that discovery in large
15 part is going to go to the termination question.
16           MR. GENENDER:  Okay.  Thank you, Judge.  We'll
17 huddle on our end and decide how we want to proceed, and
18 obviously I have some points that I was prepared to make on
19 -- in response to the Motion to Quash, but in light of your
20 ruling --
21           THE COURT:  Right.
22           MR. GENENDER:  -- I'm not going to do it today.
23           THE COURT:  I think that's fair and, you know, I'm
24 not sure why the parties wanted me to wait this long to
25 rule, but you-all asked me to rule today and that's what I

Case 20-33948   Document 2496-7   Filed in TXSB on 06/03/22   Page 12 of 12

12

1  wanted to do.  And I think it does moot other things that
2  you-all might have prepared to do.
3          All right.  Thank you very much.
4          We're in adjournment.
5      (The parties thank the Court.)
6      (Hearing adjourned at 9:11 a.m.)
7                     *  *  *  *  *
8          *I certify that the foregoing is a correct*
9  *transcript to the best of my ability from the electronic*
10 *sound recording of the ZOOM/telephonic proceedings in the*
11 *above-entitled matter.*
12 */S/ MARY D. HENRY*
13 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
14 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
15 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
16 *JTT TRANSCRIPT #64419*
17 *DATE FILED:  AUGUST 24, 2021*
18
19
20
21
22
23
24
25