IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY III LLC,** *et. al.*, | § | Case No. 20-33948(MI) |
| | § | |
| Post-Effective Date Debtors.[1] | § | (Jointly Administered) |
| | § | Re. ECF No. 2487, 2498 |
| ----------------------------------------------- | § | |

**QUARTERNORTH ENERGY LLC'S OPPOSITION TO EMERGENCY MOTION OF
BP EXPLORATION & PRODUCTION, INC. TO ALTER OR AMEND
MAY 24 ORDER PURSUANT TO BANKRUPTCY RULE 9023
AND SHELL OFFSHORE, INC.'S JOINDER TO THE SAME**

QuarterNorth Energy LLC ("**QuarterNorth**") files this opposition (the "**Opposition**") to the *Emergency Motion of BP Exploration & Production, Inc.* ("**BP**") *to Alter or Amend May 24 Order Pursuant to Bankruptcy Rule 9023* (ECF No. 2487) (the "**Motion**") and to *Shell Offshore, Inc.'s Joinder to the Emergency Motion of BP Exploration & Production, Inc. to Alter or Amend May 24 Order Pursuant to Bankruptcy Rule 9023* (ECF No. 2498) ("**Shell's Joinder**") and, in support, states the matters set forth below.[2]

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy Inc. (4991); GOM Shelf LLC (8107); and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the previous briefing at ECF Nos. 1539, 2019, and 2051.

**PRELIMINARY STATEMENT**

1. BP's Motion (and Shell's Joinder) should be denied for several reasons although the most telling one is that it ignores the proverbial elephant in the room: the Rule 2004 Requests seek discovery aimed at a non-arbitrable agreement BP may have fraudulently induced QuarterNorth to enter. Consequently, all of BP's arguments about the two pending arbitrations, which involve two entirely separate agreements with arbitration clauses, miss the mark. The Rule 2004 discovery ordered by this Court is aimed at a separate agreement not at issue in either of the pending arbitrations.

2. QuarterNorth has a right—unaltered by arbitration clauses in separate agreements that are not the subject of the Rule 2004 discovery—to investigate non-arbitrable claims under the bankruptcy rules. This Court properly came to this conclusion, finding the "discovery requests are reasonable." *Order* (ECF No. 2475) (May 24, 2022) (the "**May 24 Order**"). There is no reason to disturb the May 24 Order.

3. BP's Motion rehashes many of the same arguments the Court already considered before entering the May 24 Order. Tellingly, BP continues to ignore the third agreement between the parties—the *Purchase and Sale Agreement* (May 17, 2019) (the "**PSA**")—which contains no arbitration clause and concerning which QuarterNorth seeks to investigate its possible claim for fraudulent inducement, among other possible claims.[3] BP's changed-circumstances arguments (relating to the pending arbitrations) are a red herring because the PSA is not at issue in those confidential proceedings, and there is no need for this Court to involve itself in the case management or discovery of either of those cases. Moreover, BP's new jurisdiction argument (the

---

[3] Available at ECF No. 1607-27, under seal by order at ECF 1829.

2

raising of which is improper in a motion to alter judgment[4]) relies on a case from more than 20 years ago that the Fifth Circuit has since clarified as supporting QuarterNorth's, not BP's, position.

4.  Finally, in an unidentified ECF cite in its Proposed Order (¶ 2), BP also attempts to have the Court alter its judgment with respect to Shell Offshore Inc. ("**Shell**"), despite BP's Motion not seeking relief as to Shell and despite Shell only filing a non-substantive joinder late the day before the hearing without conferring with QuarterNorth.[5]  BP's attempt to seek back door relief as to Shell is improper, and granting it would deprive QuarterNorth of the opportunity to defend the appropriateness of the Court's May 24 Order as to Shell.  The Court should deny the Motion.[6]

## BACKGROUND

5.  The Court is familiar with the extensive history between and among the Debtors, QuarterNorth, BP, and Shell.  By way of brief recap, Fieldwood Energy LLC ("**Fieldwood**") and BP entered into the PSA on May 17, 2019, whereby BP sold its interest in what became the Genovesa well to Fieldwood (1607-27[7]).  Since that time, QuarterNorth has uncovered evidence indicating that BP fraudulently induced Fieldwood to enter into the PSA, so that BP, without suffering any economic downside, could use its control of the infrastructure that processes and brings Genovesa's production to market to delay Genovesa in favor of BP and Shell's[8] jointly

---

[4] As BP itself said, "Rule 59(e) motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Mot. ¶ 25 (quoting *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (internal citation and quotation marks omitted)).

[5] Shell filed Shell's Joinder late on June 6, 2022, shortly before QuarterNorth was about to file this Opposition. Shell never conferred with QuarterNorth before filing its Joinder. QuarterNorth reserves all rights to address Shell's Joinder at the hearing.

[6] BP's claim of an "emergency" is baseless.  Neither of BP's "emergencies" demand any urgency or entail any substantial or unrecoverable risk.  BP's lead "emergency" is the risk of "duplicative discovery," that is, that BP may have to produce the same documents twice.  Mot. ¶ 22.  How a risk of duplicative discovery amounts to an "emergency" is unclear.  BP's second "emergency" is that QuarterNorth now gets discovery for the PSA unrestricted by arbitration rules to which it did not agree.  Mot. ¶ 22.  How this amounts to an "emergency" is similarly unclear.  Nevertheless, because the parties are before the Court on BP's "emergency" Motion, QuarterNorth respectfully asks the Court to deny the Motion on the record so that BP (and Shell) gain no additional time to delay responding to the Requests.

[7] For brevity, only ECF Nos. are given in this paragraph.

[8] Shell fails to mention in its Joinder that Shell is the other 50% owner of the Manuel well with BP.

3

owned Manuel well. *See infra* ¶ 9. Due to BP's delays, BP risked Fieldwood losing the Genovesa lease, which forced the Debtors to move the Court to compel BP to comply with its agreements (ECF No. 792). The Court found, among other things, that BP had breached its contractual obligations, acted in bad faith, and acted in its own self-interest, and granted final judgment in the Debtors' favor on February 3, 2021 (ECF Nos. 845, 854). After Genovesa was safely online and producing, on May 14, 2021, QuarterNorth sent BP and Shell requests for documents that would allow QuarterNorth to investigate claims of fraudulent inducement, tortious interference, and conspiracy, among other claims related to the PSA (ECF Nos. 1387, 1388). BP and Shell moved to quash the requests (ECF Nos. 1412, 1414), the Parties exchanged briefs (ECF Nos. 1539, 1540, 1845, 2000, 2019, 2035, 2041, 2051, 2052), and the Court held two hearings (ECF Nos. 2411 (July 9, 2021), 2006 (Aug. 24, 2021)). Thereafter, the Court denied BP's and Shell's motions in the May 24 Order (ECF No. 2475). BP filed the Motion to alter the Court's order (ECF No. 2487). Shell filed its Joinder late on the eve of the hearing on the Motion, without conferring with QuarterNorth, as QuarterNorth was about to file this Opposition (ECF No. 2498).

## ARGUMENT

6.  BP acknowledges that motions under Bankruptcy Rule 9023, which incorporates Federal Rule of Civil Procedure 59(e), are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Mot. ¶ 25 (quoting *Rodriguez*, 695 F.3d at 371 (internal citation and quotation marks omitted)). Yet, this is all BP's Motion does.

7.  Relief is only permitted "where the movant presents *newly discovery evidence*" or "correct[s] a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (also identifying a third scenario, on which BP does not rely) (emphasis added); Mot. ¶ 25 (citing *Demahy*). BP has no "newly discovered evidence," which is fatal in itself to

4

BP's requested relief. BP tries to say that a "changed circumstance"—the start of arbitration on other claims—satisfies this prong,[9] but provides no authority holding that "changed circumstances" qualify as "newly discovered evidence." And as discussed in Section I below, that change in circumstance is irrelevant to QuarterNorth's right to the Rule 2004 examinations. As discussed in Section II below, neither was there any manifest error of law. The only support BP has for saying there was an error is the old cases the Court already considered and rejected, and a new (20-year-old) out-of-context quote that, as explained by subsequent precedent that BP omits, fully supports the May 24 Order.

I. **The Rule 2004 Requests to BP Concern BP's Possible Fraudulent Inducement of QuarterNorth to Enter into the PSA, Which Has No Arbitration Clause**

8.  The PSA does not contain an arbitration clause. QuarterNorth cannot force BP to arbitrate claims related to the PSA and, in turn, BP cannot foreclose QuarterNorth's right to discovery under Rule 2004 as to the PSA. Bankruptcy Rule 2004 allows debtors to investigate potential claims such as BP's potential fraudulent inducement and other misdeeds related to the PSA. BP's arguments against the 2004 Requests do not even mention the PSA.

9.  In May 2019, BP and Fieldwood negotiated the PSA and, since then, QuarterNorth has uncovered evidence indicating BP fraudulently induced Fieldwood to enter into that agreement.[10] While QuarterNorth does not yet know definitively when BP knew of a leak on the Loop—"an ingress event"—near where Fieldwood was to connect Genovesa, Fieldwood first learned of it from BP in January 2021.[11] Moreover, BP had a substantial financial interest in

---

[9] *See* Mot. ¶¶ 29, 32.
[10] QuarterNorth has other potential causes of action related to the PSA, including potential claims against Shell for tortious interference and conspiracy, among other things, and QuarterNorth reserves all rights.
[11] *BP Exploration & Production Inc.'s Witness and Exhibit List* (ECF No. 832), Ex. 16 at 5 ("Aug 2015"). It even had the same evidence of an "ingress event" at least twice more: two years and one year before the PSA. *Id.* ("Dec 2017" and "Apr 2018"). Only after closing on the PSA in 2019 did BP finally decide to "investigate" the site of the "ingress events" with a remotely operated vehicle, which led to discovering "hydrate formation" and "insulation damage." *Id.* (The annotated screenshot of the damage is date-stamped "2019/05/20," and the PSA closed on May

divesting itself of Genovesa and intentionally delaying Genovesa from coming online[12] because BP and Shell's Manuel well would be able to produce more hydrocarbons from the common reservoir that it shares with Genovesa.[13] Less than two months after Genovesa was safely online, QuarterNorth issued its Rule 2004 Requests to BP and Shell to investigate its potential claims.[14]

10. The foregoing description more than justifies the Rule 2004 discovery ordered by this Court. As extensively briefed,[15] Rule 2004 examinations are "aimed at discovering evidence upon which future causes of action may be based." *In re Bounds*, 443 B.R. 729, 732 (Bankr. W.D. Tex. 2010) (citation omitted). "[T]he scope of a Rule 2004 examination is exceptionally broad," "unfettered," and "virtually unlimited," encompassing ***any matter*** which "may affect administration of the debtor's estate." *In re Correra*, 589 B.R. 76, 108–09 (Bankr. N.D. Tex. 2018); *see In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 129 (Bankr. S.D. Tex. 2010) (noting that the rule effectively permits "licensed fishing expeditions").

11. The Rule 2004 Requests are direct and do not constitute a fishing expedition. They correspond directly to potential causes of action against BP and Shell related to the PSA, including fraudulent inducement, tortious interference, and conspiracy. Ironically, BP claims that QuarterNorth cannot pursue discovery of claims on a non-arbitrable agreement, the PSA, because BP also breached separate arbitrable agreements and successfully delayed the non-arbitrable

---

17, 2019). BP's own technical operator testified to this Court, "That leak has been masked over time by hydrates that can form when you get water ingressing into the valve" and "if there are hydrates we would remediate." Feb. 2, 2021 Hr'g Tr. 199:8–10, 201:4 (ECF No. 854). He "c[ouldn]'t speak to" why BP had not remediated the hydrates. *Id*. at 201:15. Fieldwood did not learn *any of this* until January 2021. *See BP Exploration & Production Inc.'s Witness and Exhibit List* (ECF No. 832), Ex. 16 at 1.

[12] Feb. 2, 2021 Hr'g Tr. 229:23–25 ("I have BP, who is wil[l]fully failing to comply with a contract, and they are doing so for their own economic benefit."), 232:3 ("I find that BP has delayed things intentionally[.]").

[13] *See, e.g.*, *id.* at 114:23–25 ("If Manuel comes online before Genovesa, it will drain the reservoir, won't it? A. Yes."). Further, not only would delaying Genovesa from coming online result in Manuel producing more oil from the common reservoir, being the first well to come online had the added potential benefit of higher production pressure, which can lead to a higher production rate.

[14] ECF Nos. 1387.

[15] *See Debtors' Response to Motion of BP Exploration & Production, Inc. to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* (ECF No. 1539) ¶¶ 19–24.

discovery past the commencement of those proceedings.[16] In effect, BP argues that because it breached agreements separate from the PSA, it should be allowed to decide how breaches under the PSA (an agreement that is neither arbitrable nor in play in the pending arbitrations) may be discovered. BP should not be rewarded for its gamesmanship and delays.[17]

12. BP also asks this Court to interfere with the very arbitrations it requested relief from the automatic stay to bring. *See Motion of BP Exploration & Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors* (ECF No. 1414). That request is improper. BP's Motion shows the Court a full picture of BP's years-long pattern of intentional and bad faith delays, of which the Court has already seen notable examples: at the February 2021 hearing; by way of these discovery delays; and in addressing BP's violation of the Plan by delaying paying $7 million owed to QuarterNorth. *See* Mot., Ex. C; *Order Pursuant to Sections 105(a) and 365 of the Bankruptcy Code Compelling Performance of Pre-Petition Contracts* (ECF No. 845); May 24 Order; *Memorandum Opinion* (ECF No. 2383). (It was improper for BP to have attached confidential and "*inadmissible*" arbitration filings here,[18] notwithstanding that they set forth further instances of BP's bad conduct.[19])

13. BP and QuarterNorth's arbitration agreements permit QuarterNorth certain discovery, and that process is playing out before the appointed arbitrators. This Court should have

---

[16] *See generally* Mot. (ignoring the PSA, but arguing arbitration on the LSPS OA and PHA preclude examination related to the PSA).

[17] All of BP's citations to cases presume the requested discovery is to support pending claims in a different forum. *See* Mot. ¶ 27–29. *None* address situations where, as here, the examinations are for claims that 1) are not yet pending and 2) cannot be consolidated with claims pending in a different forum.

[18] Both the LSPS OA and the PHA specifically state "All documents . . . shall be confidential" and "information exchanged in the arbitration [is] confidential and [is] *inadmissible* in any other proceeding." LSPS OA, Ex. F § 2.E (emphasis added); PHA, Ex. I § 2.E (identical).

[19] If the Court chooses to review the parties' arbitration filings, the Court will notice that QuarterNorth's *Notice of Intention to Arbitrate* (Mot., Ex. C) does not make any claims under the PSA.

7

no role in that process. Instead, this Court properly entered the May 24 Order because the subject discovery is separate from the pending arbitrations (including as to Shell, a non-party to the pending arbitrations, the contracts in the pending arbitrations, and the PSA, a non-arbitrable agreement).[20] The Court has already found that the Debtors' requests were and still are a reasonable pursuit of potential claims under the PSA, and BP has presented no "newly discovered evidence" to justify this Court disturbing its judgment.

## II. BP's Claim that It Successfully Ran Out the Clock on the Court's Jurisdiction is Incorrect

14. The Debtors sent BP and Shell the Rule 2004 Requests on May 14, 2021. Had BP and Shell complied with their obligations, the discovery would have been complete before Fieldwood's Plan became effective three months later, on August 27, 2021. *See Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* (ECF No. 2016). The Court already found BP "delayed things intentionally" in another context, and Fieldwood expressed its concern that BP was doing the same thing again, this time on discovery. Feb. 2, 2021 Hr'g Tr. 232:3; July 9, 2021 Hr'g Tr. 55–56 (ECF No. 2411). As the Court quoted in its May 24 Order, the Court reassured Fieldwood it would not let BP and Shell run the clock out. July 9, 2021 Hr'g Tr. 56–57.[21]

15. BP now says, in effect, "time's up." In support, it cites the same cases and raises the same arguments that were in BP's response to QuarterNorth's *Emergency Motion for Reconsideration of Court's Ruling Quashing Rule 2004 Discovery* (ECF No. 2019). *Compare* Mot. ¶ 30 *with Response of BP Exploration & Production, Inc. to Emergency Motion for*

---

[20] Yet, even if there were extensive overlap, the worst BP would suffer is having to first produce documents via Rule 2004 before it produces the same documents in one or both of the arbitrations. That is not prejudice, as the work would only need to be done once.

[21] "I don't see that what Shell and BP are doing is trying to run out the clock on you. And I think that, if I say that you're entitled to the information, they're going to give it to you." July 9, 2021 Hr'g Tr. 57:7–9.

8

*Reconsideration of Court's Ruling Quashing Rule 2004 Discovery* ¶ 21 (ECF No. 2035). QuarterNorth already effectively addressed those cases and arguments, and the Court has already ruled against BP. *Reply in Support of Emergency Motion for Reconsideration of the Court's Deferral of Ruling on BP Exploration & Production, Inc.'s Motion to Quash Rule 2004 Discovery* ¶¶ 10, 16 (ECF No. 2051); May 24 Order.

16. BP also introduces a few new cases (which is improper on a motion to alter judgment[22]), but only one makes a different point than those already briefed and answered by the Court's May 24 Order.[23] Specifically, BP relies on *Bank of La. v. Craig's Stores of Tex., Inc.*, for the proposition that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." Mot. ¶ 31 (quoting *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390–91 (5th Cir. 2001)).

17. BP uses this quote out of context, as the Fifth Circuit itself clarified a few years later. In *Craig's Stores*, the plaintiff (the former debtor) sued its creditor eighteen months after the debtor's plan was confirmed based wholly on state law claims that arose after confirmation. 266 F.3d at 389–90. The case had nothing to do with Rule 2004 discovery or pre-confirmation claims, and instead "narrow[ly]" addressed "post-confirmation claims based on post-confirmation activities." *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335 (5th Cir. 2008) (cleaned up). Moreover, the Fifth Circuit itself directly denied the conclusion BP drew from its quotation above: "the *Craig's Stores* Court did not hold that a bankruptcy court may lose

---

[22] As BP itself said, "Rule 59(e) motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Mot. ¶ 25 (quoting *Rodriguez*, 695 F.3d at 371 (internal citation and quotation marks omitted)).

[23] BP also cites *In re Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997) as requiring the Court to abstain and allow the parties to arbitrate. Mot. ¶ 32. As addressed above, QuarterNorth has a colorable non-arbitrable claim and the right to investigate it. QuarterNorth's participation in arbitrations concerning other claims and other contracts that *are* arbitrable has no bearing on its right to investigate the claims covered by the 2004 examinations.

jurisdiction over pre-confirmation claims based on pre-confirmation activities." *Enron*, 535 F.3d at 335.

18. The *Enron* court set out three factors for determining where post-confirmation jurisdiction ends: (1) the claims at issue principally dealt with post-confirmation relations between the parties; (2) there was no antagonism or claim pending between the parties as of the date of the reorganization; and (3) no facts or law deriving from the reorganization or the plan were necessary to the claim. *Id.* Where the claims at issue concern pre-confirmation relations and were pending or raised pre-confirmation, those factors "weigh heavily" in favor of retaining post-confirmation jurisdiction. *Id*. at 335–36 (noting that where the first two factors are met, arguments regarding the third element "would be of no consequence"); *see QuarterNorth Energy LLC v. Atl. Mar. Servs. (In re Fieldwood Energy LLC)*, 2021 Bankr. LEXIS 2867, at *11–14 (Bankr. S.D. Tex. Oct. 15, 2021) (holding that the *Enron* factors weighed in favor of retaining post-confirmation jurisdiction where the claims dealt with pre-confirmation relations, and the adversary proceeding began prior to reorganization).

19. The facts here squarely satisfy the *Enron*-factors: (1) the claims deal almost exclusively with pre-confirmation relations between the parties; (2) there was active antagonism between the parties as of confirmation; and (3) certain facts from the reorganization—particularly as found at the February 2, 2021 hearing—will support QuarterNorth's potential PSA-related claims. This Court had jurisdiction to enter the May 24 Order and oversee the Rule 2004 Requests. There is no error of law, let alone manifest error.

**III. There Is No Basis to Alter or Amend the May 24 Order as to Shell**

20. The May 24 Order also addresses the Rule 2004 Requests to Shell, which explore claims against Shell for tortious interference and conspiracy to commit fraud, among other potential claims. *See, e.g.*, *Reply in Support of the Emergency Motion for Reconsideration of the*

10

*Court's Deferral of Ruling on Shell Offshore, Inc.'s Motion to Quash Rule 2004 Discovery* ¶¶ 8–10, 15 (ECF No. 2052) (explaining the stand-alone basis for the Requests to Shell).

21. On the eve of the hearing on BP's Motion, Shell filed a Joinder making the same jurisdiction arguments as BP. Shell's jurisdiction arguments fail for the reasons discussed in Section II. above. Moreover, in QuarterNorth's view, Shell *never* had a basis to resist Fieldwood's Rule 2004 Requests, because there are no relevant arbitration agreements between the parties. *See generally Debtors' Response to Motion of Shell Offshore Inc. to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* (ECF No. 1540). There is no basis to alter or amend the May 24 Order as to Shell.

## **CONCLUSION**

WHEREFORE, QuarterNorth respectfully asks the Court to deny BP's Motion and Shell's Joinder.

Dated: June 6, 2022
      Houston, Texas

       */s/ Paul R. Genender*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:   Alfredo.Perez@weil.com
          Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   Matt.Barr@weil.com
          Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
Kevin M. Simmons (24110364)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:   Paul.Genender@weil.com
          Erin.Choi@weil.com
          Kevin.Simmons@weil.com

*Attorneys for QuarterNorth Energy LLC*

**Certificate of Service**

      I hereby certify that, on June 6, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                 */s/ Paul R. Genender*
                                                              Paul R. Genender