1              IN THE UNITED STATES BANKRUPTCY COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                     HOUSTON DIVISION

4  IN RE:                    §    CASE NO. 20-33948-11
                             §    HOUSTON, TEXAS
5  FIELDWOOD ENERGY LLC,     §    TUESDAY,
                             §    JUNE 7, 2022
6         DEBTOR.            §    1:29 P.M. TO 2:38 P.M.

7

                    MOTION HEARING (VIA ZOOM)
8
            BEFORE THE HONORABLE MARVIN ISGUR
9              UNITED STATES BANKRUPTCY JUDGE

10

11

12     APPEARANCES:                    SEE NEXT PAGE

13       (Recorded via CourtSpeak; No log notes)

14

15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 Eldridge Road, #144
22            Sugar Land, TX 77478
                 281-277-5325
23          www.judicialtranscribers.com

24
     Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.

```
 1                    APPEARANCES (VIA ZOOM):

 2

 3   FOR THE DEBTOR:              WEIL GOTSHAL & MANGES LLP
                                  Paul Genender, Esq.
 4                                Alfredo Perez, Esq.
                                  Cliff Carlson, Esq.
 5                                Kevin Simmons, Esq.
                                  Erin Choi, Esq.
 6                                200 Crescent Court,
                                  Suite 300
 7                                Dallas, TX  75201
                                  214-746-7877
 8
     FOR BP EXPLORATION AND
 9   PRODUCTION, INC.:            GREENBERG TRAURIG
                                  Craig Duewall, Esq.
10                                Nicole Bakare, Esq.
                                  Jared Weir, Esq.
11                                John Hutton, Esq.
                                  1000 Louisiana Street
12                                Suite 1700
                                  Houston, TX  77002
13                                713-374-3612

14   FOR SHELL OFFSHORE, INC:     NORTON ROSE FULBRIGHT
                                  Ryan Manns, Esq.
15                                2200 Ross Avenue
                                  Ste 3600
16                                Dallas, TX  75201
                                  214-855-0000
17

18

19

20   (Please also see Electronic Appearances.)

21

22

23

24

25
```

1          **HOUSTON, TEXAS; TUESDAY, JUNE 7, 2022; 1:29 P.M.**

2          THE COURT:  Good afternoon, please be seated.

3       (Pause in proceedings.)

4          THE COURT:  All right.  We are here in the

5  Fieldwood Energy case, it is 20-33948.  We'll take

6  appearances in court.  If you'll please approach the podium

7  and make your appearances.  And then anyone who wishes to

8  appear on the phone, if you'll please turn on your camera

9  and press five star.  You're welcome to listen.  If you

10  don't want to appear, it's fine.

11          Good morning -- good afternoon.

12          MR. DUEWALL:  Good afternoon, Your Honor.  Craig

13  Duewall with Greenberg Traurig on behalf of BP.  I'm joined

14  this afternoon by Nicole Bakare and Jared Weir, and I think

15  also online I see Mr. John Hutton has joined us remotely,

16  also from Greenberg Traurig

17          THE COURT:  Thank you, sir.

18          MR. GENENDER:  Good afternoon, Your Honor.  Paul

19  Genender, Weil, Gotshal, and Manges.  I'm joined by my

20  partner Alfredo Perez, Cliff Carlson, Kevin Simmons, and I

21  believe online is Ms. Choi, Erin Choi.

22          Thank you, Judge.

23          THE COURT:  Thank you.

24          Is there anyone that wishes to appear on the phone

25  or on video that hasn't yet appeared?

1     (No audible response.)

2          THE COURT:  All right.  Let me get my camera

3 turned on.

4          All right.  Mr. Duewall.

5          Oh hold on, I've got Mr. Manns wants to appear.

6          Mr. Manns for Shell, go ahead, please.

7          MR. MANNS:  Thank you, Your Honor.  Ryan Manns on

8 behalf of Norton Rose Fulbright, Shell Offshore.

9          THE COURT:  Good afternoon.  I don't -- is your

10 camera on Mr. Manns?

11          MR. MANNS:  Your Honor, I (indiscernible) right

12 now and we're trying to rectify it, (indiscernible) I don't

13 want to (indiscernible).

14          THE COURT:  Do you want me to wait a minute and

15 let you get that squared away, or do you want us to proceed

16 while you're working on it?

17          MR. MANNS:  Oh.  Please continue (indiscernible),

18 thank you.

19          THE COURT:  Usually the problem is that somebody

20 has been on Zoom or another video program and that's still

21 open and has your camera captured and you have to get

22 completely out of any other program to use it here, but I

23 don't know if that's your problem or not, because that's a

24 -- the total of my technical advice today.  You might want

25 to think about that.

1       MR. MANNS:  Thank you, Your Honor.

2  (indiscernible).

3       THE COURT:  All right.  Mr. Duewall.

4       MR. DUEWALL:  Thank you, Your Honor.

5       We are here today on BP's motion to amend or alter

6  the Court's May 24th Order where the Court granted

7  QuarterNorth's request to conduct 2004 discovery.  So we're

8  here to respectfully ask the Court to alter, amend, revisit

9  that determination.

10      The May 24th Order, Your Honor, is Docket No. 2475

11 and our motion is found at 2487.

12      Just as a housekeeping matter, before we get

13 started, we have filed evidence for the hearing today that I

14 might refer to, and we would move to admit BP, our movant,

15 2488 along with 2488-1 through 2488-10, we have filed those

16 materials under seal.

17      And we would also move to admit 2496-5 to 2496-8,

18 which have not been filed under seal.

19    (Plaintiff's Exhibits 2488, 2488-1 through 2488-10, and

20 2496-5 through 2496-8 are offered into evidence.)

21    And then I also know that Mr. Genender and his clients

22 have evidence that they would like to admit, and we don't

23 have any objections to what they attached and wish to admit

24 today.

25      THE COURT:  All right.  Any objection 2488-1 to 10

1  or 2496-5 to 8?

2          MR. GENENDER:  Yes, Your Honor.  Paul Genender for

3  I'm going to say for QuarterNorth.

4          We do object, Your Honor, to those exhibits that

5  are from the arbitration proceeding as under our contract --

6  excuse me -- under our contract with BP, the actual

7  arbitration provision in the agreement at issue specifically

8  says that those documents are inadmissible in any other

9  proceeding.  And I'm happy to put that up on the screen,

10  Your Honor.  I think that should be --

11          THE COURT:  So which documents are those?

12          MR. GENENDER:  I'm looking at the ECF numbers to

13  note, it would be notice of intention to arbitrate and

14  supporting exhibits.

15          THE COURT:  Do you have a number though?

16          MR. GENENDER:  Do you have -- I don't have your

17  list with numbers on it actually.

18          MR. DUEWALL:  Sure.  What we have filed under

19  seal, Your Honor, is 2488 as well, as 2488-1 through 2488-

20  10.

21          THE COURT:  Yeah.

22          And are you objecting to 100 percent of those?

23          MR. GENENDER:  Yes.  For that reason, Your Honor.

24          THE COURT:  Okay.  All right.  And what about to

25  2496-5 to -8?

1          MR. GENENDER:  Which ones are those?

2          MR. DUEWALL:  Those are the 2496-5 through --

3          MR. GENENDER:  Those hearing transcripts?

4          MR. DUEWALL:  Yes.

5          MR. GENENDER:  I don't have objections to hearing

6    transcripts, Your Honor, or the email so that -- August 24th

7    and I -- I don't have an objection to August 24th, 2021,

8    hearing transcript or the September 20th, 2021, email.

9          MR. DUEWALL:  Also this, the entry of the

10   confirmation order.

11         MR. GENENDER:  And I certainly don't have an

12   objection to the entry of the confirmation order, Your

13   Honor.

14         THE COURT:  2496-5 to -8 are admitted.

15      (Plaintiff's Exhibits 2495-5 through 2496-8 are

16   admitted into evidence.)

17         THE COURT:  2488 and 2488-1 to -10 can be offered

18   when you're ready to deal with his objection or you can try

19   and deal with that now, whatever one you wish to do,

20   Mr. Duewall.

21         MR. DUEWALL:  Well, I have a brief response, Your

22   Honor, and I think -- I anticipated this objection and so

23   pursuant to the party's agreement, which is Exhibit F, and

24   that's found on the Record at 2488-1, I think it's page 44

25   of that exhibit.  But specifically there's a confidentiality

1  provision and just, I can approach and just hand this to

2  Your Honor, because I know we have so many exhibits that

3  it's pretty burdensome, but --

4         THE COURT:  Well, hold on a minute.  I'll look at

5  it on Record.

6         MR. DUEWALL:  Okay.

7         THE COURT:  I don't think I'm broadcasting.

8         MR. DUEWALL:  Page 144, Your Honor.

9         THE COURT:  -- not broadcasting, hold on just

10 minute.

11        MR. DUEWALL:  2488-1, page 144.

12        THE COURT:  2488-1, page 1 --

13        MR. DUEWALL:  44.

14        THE COURT:  Where's the confidentiality agreement

15 you want me to read?

16        MR. DUEWALL:  It's there on Section E,

17 confidentiality.  And it states:

18     "All documents, briefs, testimony, transcripts, as

19     well, as all arbitration decisions, shall be

20     confidential," period.

21        THE COURT:  I'm not there with you yet.

22        MR. DUEWALL:  Okay.

23        THE COURT:  What page is this on?

24        MR. DUEWALL:  I'm told --

25        THE COURT:  Mine are labeled page 8 to -- it has

1  1404 pages are part of 2488-1.

2          MR. DUEWALL:  Page 144.

3          MS. CHOI:  I think that it's page 144 of Docket

4  2488-1.

5          THE COURT:  Okay.  Hold on.  Page 144,

6  Confidentiality Agreement?

7          MR. DUEWALL:  Correct, Your Honor.

8          THE COURT:  Is this the agreement you're referring

9  to, Mr. Genender?

10          MR. GENENDER:  I believe it's the Loop Agreement,

11  yes, Your Honor, it is.

12          THE COURT:  It's called "Dispute Resolution

13  Procedure."

14          MR. GENENDER:  Mr. Duewall is a gentleman, and he

15  is showing me it's exactly what I'm referring to, Your

16  Honor.

17          THE COURT:  Okay.

18          MR. DUEWALL:  You can keep that.

19          MR. GENENDER:  Thank you.

20          MR. DUEWALL:  And so in anticipation of this

21  objection, Your Honor, we can discuss this now and I think

22  the Court can rule now based upon the exhibit in front of

23  it.  But there's two parts to that confidentiality provision

24  contained in Exhibit E.  The first says that:

25      "All documents, briefs, testimonies, transcripts, as

1       well, as all arbitrary decisions shall be

2       confidential."

3           That's how we treated them.  We've treated them as

4  confidential.  It goes on to say:

5       "Likewise, the views, suggestions, admissions,

6       proposals, and other information exchanged in the

7       arbitration are confidential and are inadmissible in

8       any other proceeding."

9           What we've put before the Court's Your Honor are

10  documents, briefs, and those types of materials.  We put

11  together the brief that they have filed in the arbitration

12  and all of its attachments.  This language with regard to

13  views, suggestions, admissions, proposals, that's more akin

14  to 408-type information that wouldn't be admissible.  But in

15  any event, it's not what we're moving to admit today.  We're

16  admitting their arbitration demand, their arbitration

17  complaint, and then all of the exhibits that they attached.

18  And so we've -- there's really two filings, there's the BP

19  arbitration demand, which is arbitration number 1, and then

20  there's the QuarterNorth arbitration demand and all of its

21  attachments, which is merely a brief which is arbitration

22  number 2.  Those are the two disputed items that they're

23  objecting to.

24           And because this falls under the documents,

25  briefs, that description, that's confidential, we've treated

1    as confidential, we filed under seal as confidential.  But

2    the Court can certainly refer to it and admit it under seal,

3    because the Court's going to have to take a look at it to

4    determine the scope of what they're now trying to claim as

5    this evolving basis for the 2004, which is kind of from our

6    perspective been a moving target over time.

7         So pursuant to this express language, we think

8    that what we've attached and what we've moved to admit is

9    clearly admissible.

10        THE COURT:  Mr. Genender.

11        MR. GENENDER:  Thank you, Your Honor.

12        Two points.  One is I submit it's improper to have

13   even filed it even under seal.  Because by its very nature

14   it is a confidential proceeding.

15        Secondly, I agree with Mr. Duewall's reading of

16   those very words from a textual perspective, Your Honor.

17   And to be clear, the reason these documents were filed and

18   now being offered, goes directly to the truth and the

19   substance of what's happening in a private, contractually

20   based arbitration that BP itself filed a motion,

21   successfully, to get permission and relief from the

22   automatic stay to bring.  And the views, suggestions,

23   admissions, proposals, other information exchanged in the

24   arbitration, that's exactly what those exhibits are.

25        THE COURT:  So tell me -- he makes a distinction,

1   and he says the first sentence are confidential but not

2   necessarily inadmissible.  In the second sentence is all

3   that is necessarily inadmissible.  Are you telling me that

4   you agree with that distinction, but some of the documents

5   that he wishes to have admitted fall under the second

6   sentence?  Or are you telling me that you disagree with his

7   distinction and what those two sentences mean?

8        MR. GENENDER:  I do disagree with his distinction,

9   I think everything he's offered falls under the second

10  sentence, and I do think that those sentences should be read

11  together.  And that there may well, be some overlap between

12  the sentences, but I think they're two independent

13  sentences.  And the fact that the first sentence says

14  certain things are confidential and the second says

15  likewise, views, suggestions, admissions, proposals, and

16  other information exchanged in the arbitration are

17  confidential and are inadmissible in any other proceeding,

18  is designed to address this exact situation which is when

19  confidential arbitration pleadings are brought into court.

20        THE COURT:  So let's take -- hold on just a

21  minute, I'll print that page.

22        Go through 1 through 10 and tell me which things

23  fall under the second sentence.  And I do understand I'm not

24  sure if I agree with your argument that there may be

25  overlap, there may or there may not be, but at a minimum

1  you're going to have to show me something falls in the

2  second sentence in order to find that it is per se

3  inadmissible, I think.

4         MR. GENENDER:  Your Honor, could I ask -- could I

5  impose on the Court to put their Exhibit List on the screen?

6         THE COURT:  Their Exhibit List?

7         MR. GENENDER:  Yes.  That has them broken out,

8  because I'm looking at one that doesn't have the ECF numbers

9  on it.

10        THE COURT:  I'm looking.

11        MR. GENENDER:  I think their Exhibit List is 2496,

12  I believe.

13        dOkay.  Thank you.

14        So our note -- BP's notice of intention to

15 arbitrate and supporting exhibits, which is listed as B on

16 there and that is what I'm looking at.  I believe that's 240

17 -- 2488 1 through 4.  That is absolutely -- well, of course

18 it's confidential, but it's also information exchanged, and

19 it contains.  If it doesn't contain views, suggestions, and

20 admissions between the parties and it's exchanged in the

21 arbitration, so I would say that certainly while it may be

22 covered by both the first and the second sentence.

23        THE COURT:  What do you believe is covered by the

24 second sentence -- excuse me, what do you believe the first

25 sentence means that it's not totally incorporated in the

1  second sentence?  Because I think under your interpretation

2  we don't need the first sentence at all.

3          MR. GENENDER:  I understand, I understand the

4  Court's point, Your Honor, but I think that the -- I think

5  there -- like testimony in the first sentence could also

6  mean admissions in the second sentence by way of example,

7  right?  The discovery responses could be covered in the

8  second sentence but isn't necessarily unless it's a document

9  in the first sentence.

10         So I think that the purpose of the first sentence

11 is to describe the confidentiality and the second says, yes,

12 notwithstanding that, this set of information whether it's

13 the same or not, is also inadmissible in a court proceeding.

14 Even if it were duplicative it's still making a different

15 point in that it's saying one goes to admissibility and one

16 goes to confidentiality, albeit the second sentence goes to

17 confidentially and admissibility or inadmissibility.

18         THE COURT:  But what -- when it says "all

19 documents," that seems to be pretty broad.

20         MR. GENENDER:  As to confidentiality, no question,

21 Your Honor.  And then --

22         THE COURT:  And are you telling me that in the

23 second sentence there's something included that's not in the

24 first sentence, in the first sentence is there something

25 included that is not in the second sentence?  Why do we have

1  two sentences?

2          MR. GENENDER:  Obviously I cannot answer that

3  because I wasn't there -- I wasn't involved in the drafting.

4  But looking at it and knowing this --

5          THE COURT:  I'm not talking about my friend

6  Genender, I'm talking about your client.

7          MR. GENENDER:  Understood.  Understood.  Your

8  Honor, I think the best answer to that is that the second

9  sentence includes "other information exchanged" and these

10  are all these exhibits 2488 1 through 10 are -- constitute

11  information exchanged.

12          THE COURT:  So we don't need sentence one.

13          MR. GENENDER:  So for example --

14          THE COURT:  I think you're going to have a hard

15  time convincing me in agreement that your two clients by any

16  measure are sophisticated clients agreed to do this -- you

17  can't give me an interpretation that says they wrote the

18  document badly.  I've got to have something that says those

19  two sentences each have meaning.

20          MR. GENENDER:  I think they do.  I think one -- I

21  think the way to harmonize them --

22          THE COURT:  Okay.

23          MR. GENENDER:  -- and I sense the Court is going

24  to the --

25          THE COURT:  It's easy to harmonize them by saying

1  they have the exact same meaning.  So I need to know

2  something different in the two sentences.

3          MR. GENENDER:  Absolutely.

4          THE COURT:  Okay.

5          MR. GENENDER:  Because you're going straight to

6  the rule of contract construction that the contract has to

7  be read in a way to give all the words as much meaning as

8  possible and not to give certain words no meaning and I

9  interpret you saying how, how, how -- or asking does my

10  interpretation of the second sentence render the first

11  sentence completely superfluous or meaningless?

12          THE COURT:  Correct.

13          MR. GENENDER:  And the answer is it does not.  It

14  does not.  The first goes to confidentiality, the second

15  goes to admissibility.

16          THE COURT:  The second sentence says they're

17  confidential.

18          MR. GENENDER:  It says they're confidential and

19  are inadmissible.

20          THE COURT:  Right.  Yeah.  So I don't need the

21  first sentence at all.

22          MR. GENENDER:  Well, the second sentence -- the

23  second sentence also includes things that are not in the

24  first sentence, like proposals.

25          THE COURT:  Fine.  But if the second sentence

1  totally encompasses the first sentence, why do I need the

2  first sentence?

3           MR. GENENDER:  It doesn't, Your Honor, because it

4  doesn't -- the second sentence doesn't include briefs or

5  testimony --

6           THE COURT:  Wait, briefs are exchanged.

7           MR. GENENDER:  Okay.  Testimony is not necessarily

8  exchanged, it's given.  It's provided in a proceeding.

9           THE COURT:  Okay.

10          MR. GENENDER:  Transcripts are not exchanged, they

11 are created in a proceeding.  An arbitrator decision is

12 given rather than exchanged and then it goes on to that and

13 says in addition to these what I would call kind of standard

14 pleading type documents in addition to those, anything else

15 that's exchanged.  Other information exchanged.  Purpose

16 being, Your Honor --

17          THE COURT:  So you think that briefs, testimony,

18 transcripts, and arbitrator decisions are confidential, but

19 not inadmissible?

20          MR. GENENDER:  No. I'm not saying that.  I'm

21 saying -- I'm not saying that.  I'm saying they are clearly

22 confidential.  The second sentence goes on to say, "Likewise

23 views, suggestions, admissions, and other information

24 exchanged in the arbitration are both confidential and

25 inadmissible."

1        THE COURT:  Let's take testimony.  Are you saying

2   testimony is admissible?

3        MR. GENENDER:  Is admissible?

4        THE COURT:  Yes, sir.  Or is not inadmissible is

5   probably the better way to put it.

6        MR. GENENDER:  I don't think it's rendered

7   inadmissible, I think there's a -- I don't think it's

8   rendered inadmissible by this sentence, Your Honor.

9        THE COURT:  So testimony is not inadmissible,

10  transcripts --

11       MR. GENENDER:  By this sentence, there might be

12  another reason it's --

13       THE COURT:  No.

14       MR. GENENDER:  -- relevance or otherwise.

15       THE COURT:  That's right.  Transcripts are not

16  inadmissible under the second sentence, documents and briefs

17  might or might not be.  And arbitrator decisions are not

18  inadmissible under the second sentence, right?

19       MR. GENENDER:  Perhaps.

20       THE COURT:  Well, they're not inadmissible under

21  the second sentence, they may be inadmissible --

22       MR. GENENDER:  But, but, under -- they may not

23  inadmissible under other information exchanged.  The views,

24  suggestions, admissions, I mean, those could all be

25  included.

1         THE COURT:  Well, no.  Testimony as you said isn't

2    exchanged.

3         MR. GENENDER:  No, but testimony can be an

4    admission, certainly.

5         THE COURT:  It could be an admission, but it isn't

6    exchanged.

7         MR. GENENDER:  Understood.  Understood.  It could

8    be an admission and therefore inadmissible under the second

9    sentence.  And --

10        THE COURT:  You're saying an admission under the

11   second sentence is inadmissible even if not exchanged.

12   Because it says "and other information exchanged," meaning

13   that one would think that that has to the exchanged to be

14   inadmissible.

15        MR. GENENDER:  I don't read "exchanged" -- well, I

16   guess you're supposing that exchange modifies views

17   suggestions --

18        THE COURT:  I'm asking, but there's an argument

19   for that.

20        MR. GENENDER:  Understood.  Understood.  Your

21   Honor, I think that one of the things is -- I do think this

22   is a situation when the totality -- and I understand we're

23   talking about an evidentiary ruling, the effect of which,

24   given that it's been filed under seal, that you would -- in

25   effect the Court would see it and the public would not.  I

1  understand that.  And that offers some layer of protection

2  for the confidentiality I get that.

3          However, I also think that the very purpose for

4  which the information is being shared with you, is improper

5  because it goes to a confidential arbitration involving --

6  and I don't want to get too far ahead, involving agreements

7  that are not at issue in the 2004 discovery and involving a

8  party, Shell, that is absolutely not involved in the

9  arbitration.

10          THE COURT:  I don't know how I decide that until I

11  see what it says, so.

12          MR. GENENDER:  Until you see what the documents

13  say?  Well, I think -- I think it's -- I think one way to do

14  it, Your Honor, is the PSA, which is not one of the arbitral

15  agreements here, is -- the arbitral agreements are the Loop

16  Agreement, I'm using vernacular, Loop Agreement and

17  production handling agreement, PHA.

18          The PSA which we submit the Rule 2004 is directed

19  towards whether there was a fraudulent inducement to enter

20  that by BP that we want to investigate that.  And then, as

21  to Shell, whether Shell conspired with BP to effectuate that

22  fraudulent inducement and/or tortiously interfered with that

23  contract itself.  It's without dispute that that agreement

24  has no arbitration clause and isn't mentioned in BP's so

25  called emergency motion.

1          THE COURT:  Right.  I'm going to admit them all.

2  Federal -- the purpose of the Federal Rules of Evidence is

3  to get to the truth of the matter.  These documents are

4  designed to get to the truth of the matter.

5          Paragraph E is written and is sufficiently

6  incomprehensible way that I decline to enforce it in

7  contravention of the purpose of the Federal Rules of

8  Evidence.  Moreover, the question is whether they are

9  admissible under the Federal Rules, nothing about a private

10 agreement keeps something inadmissible, makes it

11 inadmissible.  It may mean that somebody has breached an

12 agreement and would be liable for the breach.  I'm not

13 finding one way or the other whether Mr. Duewall's client is

14 breaching the agreement by offering these.

15         I'm only finding they are, in fact, admissible

16 both parties agree and I think there is no reading of

17 paragraph E that the documents shouldn't be maintained in

18 confidence.

19         I will keep them all under seal, but they are

20 admissible without a finding as to whether it was a breach

21 to have offered them, but I'm not enforcing that today over

22 what appears to be a paragraph that the lawyers in this

23 courtroom would not have drafted.

24         MR. GENENDER:  Thank you, Judge.

25         And you addressed my one comment which is not

1  withstanding your ruling or included in your ruling is the

2  strict confidentiality of the documents.

3          THE COURT:  They are all going to be kept under

4  seal.

5          MR. GENENDER:  Thank you, Judge.

6          THE COURT:  Mr. Duewall, so they're all admitted.

7          MR. DUEWALL:  Thank you, Your Honor.

8          And just so that Mr. Genender doesn't fail to

9  present his later, we have no objection to the evidence or

10 exhibits that Mr. Genender is going to offer later.  He can

11 do that now or when he makes his presentation.

12         THE COURT:  Let's go ahead and do that now.  Just

13 so we get the Record clean.

14         Now you are offering, Mr. Genender, which of

15 yours?  Are you offering everything in 2500?

16         MR. GENENDER:  Yes.

17         THE COURT:  2500-1 through -6 are admitted,

18 anything else?

19     (Exhibits 2500-1 through -6 received in evidence.)

20         MR. GENENDER:  Thank you.

21         THE COURT:  2501 are you offering that as well?

22     (No audible response.)

23         THE COURT:  Are you offering 2501 as well?

24         MR. GENENDER:  Yes.  I am.

25         THE COURT:  Okay.

1        MR. GENENDER:  2501 was previously admitted, it's

2  previously been sealed, it's the PSA, Your Honor, yes, I am.

3        THE COURT:  All right.  We're admitting 2500-1 to

4  -6 and we're admitting 2501.  I'm going to maintain for the

5  purpose of this hearing so we can have it, all of the

6  documents either side is offering under seal for now.

7        MR. GENENDER:  Thank you.  Thank you.

8        THE COURT:  All right.

9        Go ahead, please, Mr. Duewall.

10       MR. DUEWALL:  Thank you, Your Honor.

11       Just as background so that -- there's been a lot

12  of time that transpired since we've been in front of the

13  Court talking about 2004 and arbitration issues, but just

14  and quick summary of what brings us here again today, Your

15  Honor, is that now this is a discovery dispute over 2004

16  discovery requests that date back to May of 2021 and

17  Fieldwood, now QuarterNorth, attempted to remove BP as

18  operator on the same day back in May of 2021 that they

19  originally served us these 2004 requests.  The parties moved

20  forward with the contested confirmation hearing in June of

21  2021.

22       On July 25th of 2021 the confirmation order was

23  entered and then that also correlated, Your Honor, in July

24  of 2021 we had the hearing on BP's request to send the

25  operator dispute -- because that was the only dispute we had

1  at the time -- to arbitration.

2          And then on August 24th, 2021, the Court granted

3  our motion compelling arbitration and at that time declined

4  to allow the 2004 discovery, specifically, you know, on the

5  Record on that date and I'm referring to the Court's Record

6  Document 2496-7 and on pages 10 and 11, I'll just summarize.

7  The Court stated that they understood, that you understood

8  QuarterNorth's position that they had taken, but that the

9  Court didn't think that they had supported it with the

10  request that they made in light of what the PSA says in

11  terms of the waivers.  And we'll get to remind the Court

12  about that in a moment.

13          But there are comprehensive, extensive waivers in

14  this PSA over alleged disclaiming representations of all

15  kinds and disclaiming damages, consequential damages.  So

16  the Court had taken a look at the waivers, and went on to

17  say, "I get it that if you want to file a motion to

18  reconsider this, I'm not going to be offended by that,"

19  which they certainly did and we'll get to that in a moment.

20          But as the Court noted -- you know, if you look at

21  the PSA itself, I'm not sure what damages you're actually

22  seeking to prove up by doing the discovery.  If this is

23  largely under the PSA and the Court commented that it's more

24  likely to be discovery that's related to the termination

25  dispute.  Because at that time that was the only dispute

1   that had really materialized and had come into focus between

2   the parties was this termination dispute.

3          We now have two arbitrations, one is informally

4   referred to, I think, as the termination or operatorship

5   issues that's in number one.  Number two, the arbitration

6   that they initiated is more of a kitchen sink type

7   arbitration and we'll kind of get to that in a moment where

8   they make broad claims and allegations and I'm going to do

9   my best not to talk about it too specifically.  But that was

10  the distinction that was being made then when the Court

11  originally had entered into its determination and then

12  half-way down page 11 on 2496-7, the Court affirmed that for

13  now I think the discovery in large part is going to the

14  termination question.

15         And so QuarterNorth/Fieldwood accepted the Court's

16  invitation to offer and explain then in September of 2021

17  why they thought they were entitled to the discovery and

18  what this unique dispute, at least in their mind in terms of

19  their allegations, concerned.  And this I think is important

20  because it marks kind of the marker if you will in September

21  of 2021 post-confirmation where they finally start beginning

22  to elaborate and tell us what this dispute might be.

23         And so in document 2051, they are largely for the

24  first time explaining to us that what the requests concern.

25  And I'm summarizing specifically in document 2051.  It's

1   they're pleading, but it's paragraph 6, 7, and then again in

2   paragraph 12.  Where in paragraph 6 they take each of their

3   discovery requests and they tell us what it's pertaining to.

4   Again, trying to define them in a way that doesn't include

5   the operatorship as something else.  Trying to convince the

6   Court that this is outside of operatorship.

7           And they talk about in terms of -- I paragraph 6

8   Genevasa (phonetic) generally conduct at Nakika (phonetic).

9   There's only one request where they specifically, I think,

10  mention the PSA and that's request number three.  All of the

11  other 17, I believe, relate to other issues, other disputes

12  that are occurring between the parties.

13          And then in paragraph 12, they give us a little

14  bit more insight as to what they claim or how they claim we

15  may have violated the PSA, but that violation, that alleged

16  fraud relates to breaches of the PHA and the Loop Agreement.

17  So if you're looking at paragraph 12 of 2051, they say, "BP

18  expressly represented," this is their allegation --

19  "expressly represented the PSA that it had the power and

20  authority to comply with it's obligations under the PSA, as

21  well, as the PHA, and the Loop Agreement."

22          These other agreements, which as Mr. Genender said

23  a moment ago, are all subject to this arbitration number

24  two.  We committed fraud allegedly by not honoring the

25  agreements that are the subject of the arbitration.  And so

1  for the first time, post-confirmation, they're trying to

2  define this in a way that's outside of the operatorship

3  dispute, but in doing so, they haven't -- they've admitted

4  then and they continue to admit that this really concerns,

5  allegations concern the PHA and the Loop Agreement.

6          Outside of this PSA agreement, which admittedly

7  isn't -- doesn't contain the PSA -- doesn't contain the

8  arbitration agreements.  They're trying to hang their hat on

9  -- it's just a PSA, a straight PSA, straight PSA agreement.

10          But over the course of the last year, Your Honor,

11  these parties have been in disputes, arbitration number one

12  and arbitration number two, that concern the very requests,

13  the very types of information that they claim they're

14  seeking to now investigate, with this 2004.

15          So it's -- how they refer to the 2004 is kind of a

16  moving target, if you will.  They're going to define it in a

17  way that gets outside of the operatorship dispute, but when

18  they do that they kind of pigeon hole themselves into the

19  Production Handling Agreement and the Loop Agreement and now

20  that they've initiated the arbitration number two, they want

21  to try to pivot back out of those agreements into the PHA.

22          But in terms of the Record on September 2nd, we

23  initiated arbitration number one and then a month later on

24  October 1st, they initiated arbitration number two.  The

25  arbitration number one, that's what the Court has admitted

1  at 2488 and 2488-1 to 2488-4, and then their arbitration

2  complaint, what I refer to -- not derogatorily -- not trying

3  to be derogative it's more of a kitchen sink, every claim

4  under the sun arbitration is this arbitration number two

5  that the Court can find at 2488-5, 2488-5 through -8.

6  2488-5 through -8.  So that's where those arbitration

7  agreements are found in the Record.

8           So for the past eight or nine months, these

9  disputes have been moving forward and without getting into

10  the weeds, the details too much in the arbitrations, the

11  parties will eventually begin to conduct discovery in the

12  arbitrations.  They'll have the opportunity to conduct the

13  discovery, the same or similar discovery that their trying

14  to seek here in terms of request for production of documents

15  and the like.

16           THE COURT:  So I do understand how the Order I

17  issued could allow a lawyer to frame arbitration discovery

18  better in a manner that may be adverse to your client.  So

19  -- but beyond that and that may be no small thing.  But

20  other than affecting the arbitration by allowing them to

21  better craft arbitration discovery, does my Order do

22  anything that interferes with either of the two

23  arbitrations?

24           Because I've said it's limited to confidential

25  eyes only.  So you can't take the documents and then offer

1   them in the arbitration, right?  That would be barred by my

2   Order.  You could maybe frame a question that you know,

3   zeroes in on, you know, give me all the emails between these

4   two people on this date, and you know, they're going to get

5   the email they want.  So I got that, but that seems like a

6   pretty minor intrusion.

7           Are there some major intrusions that I need to

8   worry about?

9           MR. DUEWALL:  I think in terms of -- well, in each

10  arbitration ,the arbitrator is designated to call balls and

11  strikes with regard to discovery disputes and objections

12  that the parties have.

13          THE COURT:  And do I interfere with their ability

14  to call balls and strikes if I limited whatever I'm ordering

15  turned over to professional eyes only use?

16          MR. DUEWALL:  I think you are interfering with

17  their ability to call balls and strikes if you allow

18  questions that seep into the subject matter and disputes

19  that are being litigated in the arbitration.  Because

20  they're going to be getting it -- they're going to be

21  getting the opportunity to serve two sets of discovery.

22  Because if it says broad as what you've allowed here and

23  beyond the scope of PSA --

24          THE COURT:  Let's assume I give them something

25  that is useful in the arbitration, but not useable because

1   I've barred it.  How have I gotten in the way of what the

2   arbitrator is supposed to do?

3          MR. DUEWALL:  I think if you've allowed them to

4   ask a narrowly tailored question that is outside of the

5   purview of the parties' dispute in the arbitration.  For

6   example if they had a request that was limited only to the

7   PSA, the Purchase Sale Agreement, that would be one thing.

8   But if they have now -- but what we have instead are 17

9   requests that allow you to --

10          THE COURT:  Let me assume they get something that

11  they would really like to use in the arbitration, I'm not

12  permitting them to use it, that's still up the arbitrator

13  and they can't use it having gotten it solely out of the

14  discovery that I would authorize because I said

15  confidential, professional eyes only.  So they would have to

16  frame a new discovery request that the arbitrator would

17  approve in order to be able to use it, right?

18          MR. DUEWALL:  That's right.  That's right.

19          THE COURT:  How does that interfere with what the

20  arbitrator can do?

21          MR. DUEWALL:  Well, it interferes with -- well, it

22  interferes with the scope of the discovery that the parties

23  are allowed to conduct in the arbitration --

24          THE COURT:  How?  How?

25          MR. DUEWALL:  Because they get additional requests

1  for production --

2          THE COURT:  For stuff they can't use.

3          MR. DUEWALL:  Well, I think -- I respectfully

4  disagree with the premise that once they see it, they're not

5  going to be able to use it in someway.  They're going to

6  know how to -- they're going to know how to frame a

7  request --

8          THE COURT:  I said, I understand they will be able

9  to do that, but then you can go to the arbitrator and say

10 they shouldn't be allowed to frame that request for these

11 reasons, right?  So how have I interfered -- I understand it

12 may actually hurt your client to do it this way and you

13 wouldn't be here if you didn't think it was in your client's

14 interest to have me change my mind.  And that's all fine.

15         I'm trying to figure out though am I actually

16 interfering with the arbitrators' authority because you

17 would be able to got to arbitrator and say they should not

18 be allowed to get discovery for this reason and their answer

19 isn't going to allow to be, but see this is the document

20 we're going to get, right?

21         MR. DUEWALL:  I think that as long -- yes, but I

22 do think that once the cat is out of the bag it's, you can't

23 un-ring the bell in some respects once they see it --

24         THE COURT:  You can't un-ring knowledge, but I can

25 un-ring use, right?

1          MR. DUEWALL:  Well, I think knowledge is what's

2    important in terms of where they're headed, number one, and

3    then number two I do think that it's important that if the

4    parties have agreed that we're going to get X number of

5    requests in a dispute, that to the extent that this Court is

6    allowing them to conduct additional discovery that's related

7    to or encompassed in those disputes, I think that, that goes

8    against -- I think that's in -- potentially in violation of

9    the parties' agreement.  Because they have a limited scope

10   of discovery that they're permitted to conduct.  Now the

11   parties are free to allow for more.

12         THE COURT:  Look, their argument is we're trying

13   to really do discovery on the PSA.  If it isn't relevant to

14   the PSA, we shouldn't get it.  But if it's relevant to the

15   PSA and also happens to be relevant to the arbitration, you

16   can't stop us from getting it if it relates to the PSA even

17   if it also relates to the arbitration, that's their

18   argument.

19         And I need to protect that arbitrators'

20   contractual responsibilities because you-all have contracted

21   to have an arbitrator do that, but it doesn't seem to me

22   that by giving them material that in the absence of an

23   arbitration would be discoverable in the PSA side and

24   prohibiting them from using it in the arbitration -- other

25   than they'll have knowledge.  That's important.  That's why

1  I tried to draw the line -- that's why I tried to draw the

2  line there and I may not have been clear enough in that line

3  drawing by saying it's confidential professional eyes only

4  to say you can't use this as an exhibit in a motion before

5  the arbitrator.  But I can't say, you can't remember this

6  when you're framing stuff.

7          MR. DUEWALL:  Right.  I can appreciate the Court

8  wanting to try to navigate that difficult issue, but I think

9  the Court also -- I think there's a threshold issue, too, as

10 to whether or not the request on its face is related to the

11 PSA, because it's --

12         THE COURT:  SO if it isn't related and is not

13 likely to result in discoverable information.  In other

14 words, it's not discoverable in PSA disputes, then yeah, I

15 shouldn't allow it.  And so have I done something that -- if

16 there's something that I've allowed that isn't related to

17 the PSA, I don't know why they're entitled to it.

18         MR. DUEWALL:  That's right, Your Honor.  And

19 that's where I was headed next, which is Exhibit D to our

20 motion, this is found at 2488-10 of the Court's Record and

21 typically I would have done something like this maybe as a

22 PowerPoint, but I didn't want to publish it in open court.

23         But what we have done is we've taken each of their

24 discovery requests and we've mirrored them up and tied them

25 up with not only the allegations that they're making in

1  their arbitration, this isn't the BP arbitration, which is

2  number one, this is the number two arbitration.

3          THE COURT:  I'm worried about the PSA I think.

4  Right?

5          MR. DUEWALL:  Exactly.

6          THE COURT:  So if they're not related to the PSA,

7  I want them to tell me why I should give it to them.

8          MR. DUEWALL:  Exactly.

9          THE COURT:  But if they are related to the PSA I

10 want you to tell me why they shouldn't get it just because

11 the arbitrations.

12          MR. DUEWALL:  I understand.  Well, I don't think

13 -- the only one that relates to the PSA is number three.

14          THE COURT:  So you think one does not relate to

15 the PSA at all?

16          MR. DUEWALL:  Correct.

17          THE COURT:  So I think the burden is on them to

18 demonstrate that it is either obviously relevant or might

19 lead to the discovery of a relevant information related to

20 the PSA, especially given their objection they filed

21 yesterday.

22          MR. DUEWALL:  I think that's exactly right, Your

23 Honor.  And in their response to our motion seeking

24 reconsideration (indiscernible), they did not respond to the

25 points that we raised here.  So they haven't gone -- and

1  respectfully they have not gone and done the "See Spot run"

2  analysis of number one is a PSA --

3          THE COURT:  Let me ask Mr. Genender if he agrees

4  that they would have to, under the response he filed

5  yesterday, demonstrate discoverable or might lead to

6  discoverable information as to each request related to the

7  PSA?

8          Do you think that's something I should hold you to

9  do?

10          MR. GENENDER:  I think we've already done it.

11          THE COURT:  Whether you've done it or not --

12          MR. GENENDER:  Okay.  Okay.

13          THE COURT:  -- can I hold you to do that?

14          MR. GENENDER:  That's kind of like asking me to

15  switch chairs with you a little bit, but --

16          THE COURT:  Seems pretty fair, doesn't it?

17          MR. GENENDER:  To ask me to do it?

18          THE COURT:  Yeah.

19          MR. GENENDER:  Well, that's -- I'm happy to do it.

20          THE COURT:  Okay.

21          MR. GENENDER:  I mean, I --

22          THE COURT:  If it's not related to the PSA dispute

23  or likely to lead to discoverable information in the PSA

24  dispute, do you agree that it's something I should not

25  allow?

1          MR. GENENDER:  Unless it's related solely to

2     Shell, because that's a different issue.  Because Shell's

3     not a party to those other cases.

4          THE COURT:  So what?

5          MR. GENENDER:  Well, but we have the right to --

6     well, we have the right to investigate claims against BP for

7     fraudulent inducement to enter the PSA and against Shell to

8     investigate claims for conspiring with BP to fraudulently

9     induce us, or interfering with that agreement thereafter --

10         THE COURT:  But all of that is part of the PSA

11    dispute.

12         MR. GENENDER:  Understood.  So I think the answer

13    -- I'm going to say generally speaking, but it might be

14    absolutely, but at least generally speaking the answer to

15    your question is "yes."

16         THE COURT:  Then why don't I have you do that?

17    Why don't I have you take his chart and explain to me in

18    your own contra-chart that I'll give you whatever you want,

19    you know, a week or so to submit relevance?

20         MR. GENENDER:  That's I'm happy -- I'm certainly

21    willing to do that.  I hate to say I'm happy to do it, but

22    I'm certainly willing to do it, because I'm not -- because

23    I'm -- you know, I'm going to be candid with you I don't

24    think it's an unfair request, I'm not saying it's an unfair

25    request, if I thought it was an unfair request --

1    THE COURT:  And you're not going to do the work

2  anyway, right?  Ms. Choi's going to do the work.

3    (Laughter.)

4    MR. GENENDER:  Well, Judge, first of all, if I'm

5  smart, I'm going to have Ms. Choi and Mr. Simmons do a lot

6  of the work, because then you'd expect nothing less.

7    But Judge, I do want to make -- in all seriousness

8  all of that was tinged with quite a bit of seriousness.  I

9  want to speak to something Mr. Duewall said about this

10 moving target.

11    THE COURT:  Okay.

12    MR. GENENDER:  I'm not responding --

13    THE COURT:  Because I interrupted him to find out

14 about this question.

15    MR. GENENDER:  Okay.

16    THE COURT:  I'm not going to -- I actually don't

17 want to go back and forth on this.

18    MR. GENENDER:  Okay.

19    THE COURT:  I did make a decision.  If -- and it's

20 pretty much along the lines I said, which is you're entitled

21 -- I meant to say you are entitled to information without

22 interfering with that arbitrators' decision, that's why I

23 put down the professional eyes only language.

24    When I looked back for today, I wasn't sure how

25 obvious that was to every body that, that's what I was

1  doing.  That is what I intended to do is I need to protect

2  the arbitrators' ability to allow or not allow discovery in

3  the arbitration.

4          I can't protect against knowledge.  If you get

5  information that is relevant to the PSA and you can use that

6  knowledge to better frame something before the arbitrator,

7  those are just the breaks of the way litigation is going to

8  come down.  But I shouldn't be giving you a document

9  unrelated to the PSA that you can use solely to frame things

10 and to go and do something before the arbitrator.

11         I think I need to rewrite my Order at a minimum to

12 make clear to the arbitrators -- and I do -- I've been

13 referring to that singularly -- that I'm not interfering

14 with their decision making as to what can be used over

15 there, nor am I authorizing anyone to use a document over

16 there unless the arbitrator approves of it.

17         So you can't attach something I give you to

18 something to him -- ever.

19         MR. GENENDER:  Certainly.  And I assume you're

20 referring to the last line, "All discovery responses will be

21 held in confidence on a professional eyes only, quote,

22 basis?"

23         THE COURT:  Yeah.

24         MR. GENENDER:  And Your Honor, I want to make sure

25 the converse isn't true, in that I want to make sure that

1  because what we're dealing with, Your Honor, are facts

2  whether between the two arbitrations or as it relates to the

3  PSA, facts that are relevant to multiple agreements and

4  multiple claims, which is common.

5          THE COURT:  Correct, I'm not -- I'm not precluding

6  you from using anything in the arbitration that the

7  arbitrator permits.

8          MR. GENENDER:  Understood.

9          THE COURT:  But I'm not authorizing you to use

10  something in the arbitration because I gave you discovery on

11  it.  That is up to the arbitrator.

12          MR. GENENDER:  Yes.  And if the Court's

13  inclination is to ask -- is to direct us to respond to the

14  chart, their Exhibit D chart I think it was, and then I

15  would of course like to have the opportunity to come back

16  and visit with the Court about it, if that were helpful to

17  the Court.

18          THE COURT:  I don't know if I'll need that or not,

19  it depends on how good of a job you do.

20          MR. GENENDER:  Okay.  Yeah.  Understood.  Fair

21  enough.

22          I do want to point the Court to document 2019,

23  which was our motion to reconsider, and page 5 of that --

24  and this was on August 30th, 2021, because I do think that

25  that speaks to what Mr. Duewall was talking about as it

1  relates to the requests themselves.

2      He is mistaken when he says only number three

3  relates to the PSA.  I think he overlooked certainly

4  number 13 refers specifically to the PSA but, but a request

5  seeking information about the PSA, Your Honor, as the Court

6  well, knows doesn't have to mention the PSA to be aimed at

7  seeking information about the PSA.  And we can do that work

8  and show that to you.

9      THE COURT:  It's the language in the rule, right?

10     MR. GENENDER:  Yeah.

11     THE COURT:  It's discoverable or it's likely to

12  lead to --

13     MR. GENENDER:  Yes.

14     THE COURT:  -- discoverable information, but I

15  need you to identify that on a request-by-request basis.

16     MR. GENENDER:  Okay.

17     THE COURT:  And in as much detail as you want.

18     MR. GENENDER:  Understood, and the reason I wanted

19  to direct the Court -- and I won't go through it now unless

20  you wanted me to -- is we cited the Texas Supreme Court Case

21  *Buljarik* for the proposition for the, quote, "That while a

22  party's intent is determined at the time the party made the

23  representation, it can be inferred by things that happen

24  afterwards."

25      And I think that we'll do that work and lay it

1  forth as to why common facts can speak to different claims

2  under different agreements.

3        THE COURT:  And I think that's consistent with the

4  way that I ruled.  But I respect Mr. Duewall has prepared

5  this chart that tells me I may have erred on the side of

6  allowing too much discovery and I want you to respond to

7  that in writing so that I can correct an error, if I've made

8  one, and I intend to correct the last sentence to make it

9  more expansive so that the arbitrators' range of motion is

10  fully protected -- ranges of motion are fully protected.

11        MR. GENENDER:  Understood, Your Honor.  And I, by

12  way of preview, when we do the work that you're directing us

13  to do, I think you're going to find that if not 100 percent,

14  then very, very substantial percentage is PSA only and then

15  overlap as to some.

16        THE COURT:  That's fine.

17        MR. GENENDER:  And we'll do the work.

18        THE COURT:  How long do you need?

19        MR. GENENDER:  What is today?

20        THE COURT:  Today is the 7th.

21        MR. GENENDER:  Could we have a week Friday?

22        THE COURT:  You want until the 24th?

23        MR. DUEWALL:  We don't object to more time if you-

24  all want --

25        MR. GENENDER:  No, no, could we have a week from

1    this Friday so 10 days, is that okay?

2            THE COURT:  You want until the 17th?

3            MR. GENENDER:  Yeah.  Is that okay?

4            THE COURT:  How long do you want to file a reply,

5    Mr. Duewall?

6            MR. DUEWALL:  Two weeks.

7            THE COURT:  All right.  17th and the 1st, is that

8    what you-all want?

9            MR. GENENDER:  I feel like I just got whipsawed,

10   but that's okay.  Two weeks feels like a long time to

11   respond to something we're going to do when they already did

12   the work, but it's okay.  That's fine.

13           THE COURT:  Would you like until the 21st and I'll

14   leave him on the 1st?  I don't care.

15           MR. GENENDER:  You know, probably I know the 20th

16   is a holiday and yeah.  Yeah.  Probably, yeah.

17           THE COURT:  Okay.  You file your chart by the

18   21st, do you want until the 5th or do you want until the

19   1st, Mr. Duewall, I don't really care.

20           MR. DUEWALL:  5th is fine, Your Honor.

21           THE COURT:  You've got until July 5th, we'll take

22   it under advisement on July 6th.  I may need a further

23   hearing, I'm hoping I can resolve it on there.

24           I will grant the motion for reconsideration to the

25   extent of clarifying the consequences of professional eyes

1  only and the absence of attempting to interfere with the

2  arbitrator in any way, but I'll also clarify that I'm not

3  restricting you from using information you gain because

4  information is valuable and you can use it, you just can't

5  publish the documents in any way.

6          MR. GENENDER:  And that's the limit to which

7  you're granting consideration is to clarify that last

8  sentence?

9          THE COURT:  Well, I'm granting that now, --

10         MR. GENENDER:  Yes.

11         THE COURT:  -- but I may in addition say that you

12  don't -- they don't have to turn anything over because

13  certain of the requests, as Mr. Duewall points out, may

14  exceed any relevance towards the PSA.

15         MR. GENENDER:  And Your Honor, I hope this doesn't

16  surprise you that I'm going to say this, we don't intend to

17  take any action in terms of serving the request in response

18  to your Order until we --

19         THE COURT:  I know you won't do that.

20         MR. GENENDER:  -- until this is resolved.

21         THE COURT:  I know you won't.

22         MR. GENENDER:  I know you know that, but I wanted

23  to say it.

24         THE COURT:  Okay.  Thank you.

25         MR. GENENDER:  Okay.

1          THE COURT:  Mr. Duewall, I cut you off a little

2    bit, but I think if you want to say more, go ahead, but that

3    chart's going to matter a lot to me.

4          MR. DUEWALL:  Thank you, Your Honor.

5          No.  I'm good enough to know that I should

6    probably stop while I'm ahead and I respect the Court's

7    decision.  I appreciate that, because I think the chart is

8    important, we'll take a look at what we get back from

9    Mr. Genender.

10         We did have one question -- another question with

11   regard to the Court's Order and as it related to

12   professional eyes only.  That's limited to the lawyers,

13   correct?  Is it the Court's intent that that be lawyers eyes

14   only or does that extend to experts or I just didn't

15   understand.

16         THE COURT:  I meant lawyers and experts, not the

17   clients.  I really don't want this stuff going to the

18   clients on the grounds that they have ongoing business

19   relationships and they need to be able to maintain those

20   without worrying that, for example, if you and Shell have

21   some confidential document that QuarterNorth will suddenly

22   get it and you know, be able to use it in its business

23   operations.

24         So it's professional eyes only, but that includes

25   more than just lawyers.

1              MR. DUEWALL:  Okay.

2              THE COURT:  And if you-all want to work on that

3  language and submit that jointly, for what -- to define all

4  that, how to protect the arbitrators' range of motion.  If

5  you-all have language you want to agree to that, instead of

6  me drafting it, I'm perfectly okay with that, if you-all get

7  the point?

8              MR. GENENDER:  I think my preference would be that

9  if we can agree on it, we submit it.  If we can't agree on

10  it, we do nothing and let you decide.

11              THE COURT:  That sounds great to me.

12              MR. GENENDER:  If that's okay with you.

13              THE COURT:  That sounds great to me.

14              Mr. Manns, are you okay with where we're going on

15  this?

16              MR. DUEWALL:  And I have one other statement to

17  make, I think Mr. Manns, might be muted, I couldn't hear

18  him, but --

19              THE COURT:  Okay.  Let me try that again.

20              MR. DUEWALL:  In our response --

21              THE COURT:  Hold on, hold on.  Let me let

22  Mr. Manns, go ahead, please.

23              MR. DUEWALL:  Oh, sorry.

24              MR. MANNS:  Thank you, Your Honor.

25              And I don't object on issues.  We're in a strange

1  spot.  (Indiscernible) arbitration, (indiscernible) are not

2  a party to -- Your Honor, (indiscernible) everyone to --

3            THE COURT:  Mr. Manns, I'm losing about every

4  third word, maybe pick that up.

5            MR. MANNS:  Sorry.  Can you hear me better, Your

6  Honor?

7            THE COURT:  That does seem better, thank you.

8            MR. MANNS:  Thank you.

9            Your Honor, we're obviously in some strange spot.

10  You know, we're not involved in the bidding arbitration.

11  With that said, the request for production that are being

12  propounded are in large part identical.

13            If Your Honor in any way limits (indiscernible)

14  and property rights in connection with (indiscernible) BP,

15  it can then circumvent the Court's (indiscernible) similar

16  discoverable information from Shell.

17            And so (indiscernible), I think what the Court has

18  described here today will help to at least frame up the

19  discussion.

20            THE COURT:  Thank you, Mr. Manns.  If you want to

21  join in the reply that Mr. Duewall is going to file, I would

22  ask that you coordinate that with him and file it jointly,

23  would that work?

24            MR. MANNS:  It would.  Thank you, Your Honor.

25            THE COURT:  Thank you, Mr. Manns.

1          Mr. Duewall.

2          MR. DUEWALL:  Your Honor, there was one last issue

3    and this is more housekeeping than anything else and it

4    really relates to whether or not the Court's Order is an

5    interlocutory discovery issue that's subject to Rule 59(e)

6    or 59(b) as it relates to when we have to potentially file

7    an appeal from the Order that you granted for their motion

8    to reconsider.

9          And so what I would respectfully request that the

10   Court do today to kind of take us out of that uncertainty

11   from our perspective and I don't want to leave here and --

12          THE COURT:  Right.  How do I do --

13          MR. DUEWALL:  -- us have to file an appeal --

14          THE COURT:  How do I do that?

15          MR. DUEWALL:  -- and then you question the fire

16   drill that we create.  What I would instead respectfully

17   request is that the Court fully vacate the Order to

18   reconsider without prejudice to the Court's right to

19   continue to address these issues that you recited on the

20   Record a moment ago.

21          And I say that just to -- so when we leave here

22   today that our -- I don't want to -- the Court to see an

23   appeal filed and say well, what is -- why do Duewall and his

24   group feel like they needed to do that?  But we would

25   respectfully want to make sure that we don't miss any

1  important deadlines because of the uncertainty --

2          THE COURT:  If I do a 59(d) Order, does that take

3  it out?

4          MR. DUEWALL:  Yeah.

5          MR. GENENDER:  Well, I think the question is

6  whether we're in the 59 world at all.  I think there's an

7  argument that we're actually under 54 and I honestly, with

8  all due respect, if you were to say it was 59(e) and we did

9  eventually appeal you, I do not think the District Court

10 would be bound by your characterization of that.

11         THE COURT:  Yeah.  Well, I think it's 59(d) as in

12 David, which allows me to say I'm setting my own motion for

13 a new trial.

14         MR. GENENDER:  Okay.  I hadn't thought about that.

15         MR. DUEWALL:  Are you all right?

16         MR. GENENDER:  No.  I'm just thinking.

17         THE COURT:  Why don't we do this?  It is my

18 intention to not to have appellate deadlines running against

19 anyone and I would ask the parties to jointly figure out how

20 to do that.  I don't want to vacate my Order at this point.

21 But if there isn't any other way to do it, I may vacate it

22 and then reenter it with just that one paragraph change

23 knowing that I may have to change it again, once I get all

24 the briefing done.  Hopefully you-all can find a way to do

25 this.

1          MR. DUEWALL:  Could you do that now?  Because I

2 think we're going to --

3          THE COURT:  Could I do what now?

4          MR. DUEWALL:  Go ahead and do that, vacate it now

5 and restart that clock so we can --

6          THE COURT:  By issuing a new order?

7          MR. DUEWALL:  -- because today's our 14th day

8 under the -- if it was a 59 -- if we're under the 59 --

9          THE COURT:  Does that cause any injury to you?

10          MR. GENENDER:  Well, excuse me.  We told

11 Mr. Duewall that once he files a motion to reconsider, it's

12 our view that the appellate deadlines are stayed until it's

13 ruled upon.  I don't have 59(d) in front of me, Your Honor,

14 but it seemed like it made sense, but we certainly do not

15 want the orders vacated, there's no grounds for vacating it

16 frankly --

17          THE COURT:  I'm going to amend it.

18          MR. GENENDER:  Understood.  Understood.  And as to

19 the last line I understand the --

20          THE COURT:  Right.  But if I amend it today, will

21 that then extend their deadline another 28 days?

22          MR. GENENDER:  I think you're entering a new Order

23 at that point.

24          THE COURT:  So it would.

25          MR. GENENDER:  I think the answer -- I think the

1  answer to that is "yes."

2          THE COURT:  Okay.

3          MR. GENENDER:  Now but -- go ahead.

4          THE COURT:  Can you-all do that right this

5  afternoon, submit a new Order that changes only that last

6  sentence to encompass the things that we've talked about --

7          MR. DUEWALL:  And it just fully replaces the main

8  24th order?

9          THE COURT:  -- and it will amend and restate the

10  original Order, fully replacing it.

11          MR. GENENDER:  Yeah.  We can do that, easy.

12          THE COURT:  Okay.  And then get that filed on an

13  emergency basis and contact Mr. Laws.

14          MR. GENENDER:  Your Honor, with the Court's

15  permission, I would like to revisit some of the scheduling

16  we did, because I've given it some thought.

17          THE COURT:  Yeah.

18          MR. GENENDER:  And I hope I can do that by --

19          THE COURT:  Look, I don't want to leave this.

20          MR. GENENDER:  Okay.

21          THE COURT:  I want you to send an email to Tyler

22  Laws, who is my courtroom deputy so he can put in my

23  emergency box so I can get it done before I go home tonight.

24  And you-all need to agree on what that new sentence ought to

25  be, and if you can't file a statement that you can't agree

1   on it and that I need to do my own language.  But I will do

2   something before I go home.

3            MR. DUEWALL:  Thank you, Your Honor.

4            Thank you, Mr. Laws.

5            MR. GENENDER:  Your Honor, we can get the -- we

6   can get the response to the requests by this Friday and

7   would hope that they could respond to it shortly thereafter.

8   I just did a little bit more conferring on my end and I

9   don't think it will take that long.

10           And I guess the other piece -- the other question

11  I had as to where we needed up after our colloquy here is

12  Shell's -- I mean, Shell is differently situated than BP.

13  There's no arbitration agreements, there's -- all the

14  arguments BP is making -- this whole chart is premised on

15  the notion that BP has created this -- this narrative --

16           THE COURT:  Yeah.  I got it.  No, but --

17           MR. GENENDER:  But Shell's not a part of that

18  narrative.  They don't have an arbitration agreement.

19           THE COURT:  If it relates -- if it doesn't relate

20  in anyway to the PSA, why would you want discovery from

21  Shell?

22           MR. GENENDER:  Well, but Your Honor, I think the

23  way to look at this is we have two agreements that have

24  arbitration clauses, the PHA and the Loop Agreement.  If it

25  doesn't relate to them, then we should be allowed to get

1   2004 discovery -- not that it has to relate to the PSA.  It

2   may not be a -- there may not be a massive difference in

3   what I'm saying, but the bar if they're trying to make a bar

4   because it's within an arbitration should be limited to

5   those two agreements --

6            THE COURT:  We're post-confirmation.

7            MR. GENENDER:  Well, understood, Your Honor, and

8   they didn't talk about jurisdiction here and I think maybe

9   they read the *Enron* case because all of the complained of

10  under *Enron* -- all of the complained of actions were

11  prepetition -- or preconfirmation I should say, and

12  oftentimes -- many instances prepetition and the parties had

13  a dispute at the time that the confirmation happened and so

14  under *Enron,* the Court has jurisdiction and we knew full

15  well, you weren't entering an Order on May 24th of '22 if

16  you didn't think you had jurisdiction.

17           THE COURT:  Right.

18           MR. GENENDER:  And so, but I do think as to Shell,

19  Shell's only objection they joined last night, their only

20  objection was on jurisdiction.

21           THE COURT:  Their objection and the BP objection

22  still go hand-in-hand.  Right?  Discovery from Shell that

23  would interfere with the BP adversary proceedings has the

24  same problem if it isn't related to the PSA.

25           MR. GENENDER:  But Judge, I'm going to push back

1  on that only because -- and I know we might be using it as a

2  placeholder.  It's not that it has to relate to the PSA,

3  it's that BP's real position has to be -- the only logical

4  position could be that it doesn't relate to the two

5  agreements that have arbitration clauses.

6           THE COURT:  You know and I know that their case

7  law -- there is case law out there that I have followed that

8  says that Rule 2004 can be a fishing expedition.

9           MR. GENENDER:  Understood.

10          THE COURT:  We're pretty late in the case for

11 doing fishing expeditions.

12          MR. GENENDER:  Understood.

13          THE COURT:  And you also know I can regulate what

14 2004 scope is and I'm not hearing a good argument why you

15 should do 2004 against Shell that would expand beyond PSA

16 disputes.

17          MR. GENENDER:  We're not looking to do 2004

18 discovery beyond the -- certainly at this point beyond the

19 request that we've had in place and have stayed static since

20 May 14th of 2021.  And I think that -- and they speak for

21 themselves and we're happy to defend them.

22          So we're not going on a -- we're not fishing

23 outside of any pool that we created a year and-a-half --

24 over a year ago and our briefing has been consistent on

25 that.

1          I just want to make sure that the purpose of 2004

2     is not thwarted by BP saying, oh, my gosh, they can't find

3     this out, because we're in an arbitration that they wanted.

4          THE COURT:  I thought you already won that

5     argument.  Now you need to demonstrate to me that have an

6     independent basis which so far the only thing you've linked

7     an independent basis to is your PSA disputes.

8          MR. GENENDER:  Understood.

9          THE COURT:  It doesn't matter who the witness or

10    the deponent is, their arbitration concerns are the same if

11    you were to go to Shell to get information to use in the

12    arbitration that's unrelated to the PSA, you shouldn't be

13    allowed to get it, unless you can give me some justification

14    besides the PSA, then that's the measure and I'm not

15    injuring anyone by not allowing a free fishing expedition

16    under these circumstances.

17         MR. GENENDER:  Understood.  Understood.  I had

18    raised a notion --

19         THE COURT:  Let's talk about the schedule.

20         MR. GENENDER:  Thank you.  Yeah.

21         THE COURT:  Do you care between the 10th and the

22    17th, Mr. Duewall, versus the 21st and the 5th, I don't

23    care.

24         MR. DUEWALL:  When are you giving yours?

25         THE COURT:   He wants to do his this Friday.

1        (The parties confer.)

2            MR. GENENDER:  But they want a new 14 days, they

3   should be able to -- they shouldn't need 14 days to respond

4   to it, I mean.

5            MR. DUEWALL:  Oh.  I see what you're saying.

6            MR. GENENDER:  In other words we're trying --

7   we're trying to work within a new 14 days and we're willing

8   to do the work to get it done by Friday.  I can't imagine

9   they need more than a few days to respond to it.

10           THE COURT:  I don't know.

11           MR. GENENDER:  I mean, they've already done one

12  chart.

13           THE COURT:  I'm going to give both parties -- each

14  party what they say they need.  So he says he wants two

15  weeks, he can take this back and you can have until the

16  21st.  But I'm not going to short people on time.

17           MR. DUEWALL:  Well, we'll stick with our two weeks

18  then and if we can do it quicker, we'll do it.

19           THE COURT:  Okay.  I'm going to leave the schedule

20  alone, then the 21st and the 5th.

21           MR. GENENDER:  So their response is due two weeks

22  from when they get ours, whenever that is?

23           THE COURT:  No.  It's due on the 5th, yours is due

24  on the 21st, I've got holidays in there, too.

25           MR. GENENDER:  Okay.  And then Judge, those are

 1   obviously file dander seal, right?

 2            THE COURT:  Yes.

 3            MR. GENENDER:  Thank you.

 4            MR. DUEWALL:  Thank you very much, Judge.

 5            THE COURT:  Hold on.  We have another date coming

 6   up?

 7            MR. DUEWALL:  All right.  So they're going to do

 8   it by Friday, we will submit ours by the 15th.  I didn't

 9   understand the 14 days until I saw the calendar.  I'm a

10   visual learner.

11            MS. CHOI:  So am I.

12            MR. GENENDER:  So if I understand --

13            THE COURT:  Okay.  So your chart is due on the

14   10th of June, and their response is due on the 15th of June.

15            MR. GENENDER:  Fantastic.

16            MR. DUEWALL:  Yes.

17            THE COURT:  And the parties have agreed to that?

18            MR. DUEWALL:  Yes.

19            MR. GENENDER:  Yes.

20            THE COURT:  Because neither of you two are doing

21   any of the work.

22            MR. GENENDER:  Correct, Your Honor.

23        (Laughter.)

24            MR. DUEWALL:  I'll stipulate to that.

25            MR. GENENDER:  I think "any" is a strong

1   statement, Judge.  And that applies to Shell, too, I assume

2   in their joinder?

3           THE COURT:  Mr. Manns agreed that he would join in

4   in some manner, Mr. Duewall if he needs to do more than what

5   they're going to do.  He's not required to, but he may.

6           But Mr. Manns, I'm not misinterpreting what you

7   said, right?

8           MR. MANNS:  Sounds good.

9           THE COURT:  All right.  Thank you.

10          MR. DUEWALL:  And just so the Court's clear,

11  Mr. Genender suggested that we were walking away or gave me

12  the impression we are walking away from our jurisdictional

13  arguments and our waiver arguments, but we're clearly not.

14  But I understand the direction the Court's going to go, so

15  we will leave those with Your Honor.

16          THE COURT:  Nobody's waiving anything by complying

17  with rulings, which is what you guys are all -- that's all

18  you-all are doing.

19          MR. DUEWALL:  Thank you, Judge.

20          THE COURT:  Thank you.  All right.  Thank you.

21      (Proceeding adjourned at 2:38 p.m.)

22

23

24

25                      *  *  *  *  *

1    *I certify that the foregoing is a correct*

2 *transcript to the best of my ability produced from the*

3 *electronic sound recording of the proceedings in the above-*

4 *entitled matter.*

5 */S/ MARY D. HENRY*

6 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*337*

8 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9 *JTT TRANSCRIPT #65911*

10 *DATE FILED:  JUNE 15, 2022*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25