**Shell's Response to QuarterNorth – Exhibit A**
**Chart Regarding Rule 2004 Requests to Shell**

**Shell's Response to QuarterNorth – Exhibit A**
**Chart Regarding Rule 2004 Requests to Shell**

| No. | Request | Alleged Relevance to PSA-Related Claim | Shell's response |
|---|---|---|---|
| 3 | All Documents and Communications concerning the PSA. | As BP's counsel conceded on the record at the June 7, 2022 hearing, and as is apparent on its face, this Request asks for all documents concerning the PSA, including, but not limited to, Shell's communications with BP concerning the PSA. | Fieldwood and BP are parties to the PSA. Shell is not a party to the PSA nor was Shell involved in any negotiations concerning the PSA. Upon information and belief, Shell is not aware of any documents responsive to this Request. |
| 1 | All Documents and Communications concerning Genovesa, including but not limited to:<br><br>• Internal Communications or Communications with BP, OSS, Honeywell, or any third party;<br><br>• Analyses on the impact Genovesa would have on production at Manuel;<br><br>• Fieldwood's timeline for bringing Genovesa online at Na Kika;<br><br>• BP and Shell's offer to accelerate bringing Genovesa on at Na Kika, if Fieldwood paid. | This Request is relevant to potential PSA-related claims because it seeks to investigate evidence of Shell's participation in BP's potential fraudulent inducement, and is also relevant to potential claims of tortious interference in BP's and QuarterNorth's other contracts. Having never owned an interest in Genovesa, Shell should not have many Documents or Communications concerning that well; all such documents likely are relevant. | This Request is intentionally broad and is not narrowly tailored to capture PSA-related claims – "all Documents and Communications concerning Genovesa"; rather, the Request is tantamount to a fishing expedition for any document that references "Genovesa," irrespective of whether it is relevant to any alleged potential PSA-related claims.<br><br>Rule 2004 should not be improvidently utilized to capture Shell's communications with commercial co-owners or third parties or internal communications or information that was developed solely for Shell's internal commercial purposes that contains commercially sensitive competitive information, |

**Shell's Response to QuarterNorth – Exhibit A**
**Chart Regarding Rule 2004 Requests to Shell**

| | | | |
|---|---|---|---|
| | | | to the extent such information exists. |
| 12 | All Documents and Communications concerning the LSPS Leak. | This Request is relevant to potential PSA-related claims because it seeks to investigate evidence of Shell's participation in BP's potential fraudulent inducement, and is also relevant to potential claims of tortious interference in BP's and QuarterNorth's other contracts. Shell should not have many Documents or Communications concerning the LSPS Leak and all such documents likely are relevant. | Shell is not a party to the Galapagos Area Loop Subsea Production System Construction and Operating Agreement ("LSPS"). Therefore, QuarterNorth fails to articulate any relation between the documents they are seeking and any PSA related claims.<br><br>The Request should be narrowly tailored as follows:<br><br>All Documents and Communications between Shell and BP concerning the LSPS Leak. |
| 13 | Documents sufficient to show when Shell received initial notification of BP's deployment of a flotel at Na Kika in 2020 and Shell's initial receipt of such AFE from BP. | This Request is relevant to potential PSA-related claims because it seeks to investigate evidence of Shell's participation in BP's potential fraudulent inducement, and is also relevant to potential claims of tortious interference in BP's and QuarterNorth's other contracts. This Request imposes a minimal burden—asking for only two documents—documents that will go to establish BP's potential pattern of intentionally withholding AFEs from | QuarterNorth's allegation fails to articulate a nexus between the document they are seeking and the potential relevance between notification of BP's deployment of a flotel at Na Kika in 2020 and Shell's receipt of same to an alleged PSA-related claim.<br><br>The Request should be narrowly tailored as |

**Shell's Response to QuarterNorth – Exhibit A**
**Chart Regarding Rule 2004 Requests to Shell**

| | | | |
|---|---|---|---|
| | | QuarterNorth for strategic reason, and Shell's role in that pattern. | follows: Shell's initial receipt of the AFE from BP regarding BP's deployment of a flotel at Na Kika in 2020. |
| 6 | All Documents and Communications concerning BP's efforts to bring Manuel online at Na Kika, including, but not limited to:<br><br>• BP's prioritization of Manuel ahead of Genovesa;<br><br>• BP's timeline for bringing Manuel online, including any changes to that timeline over time; and<br><br>• BP's refusal to combine the MCS Software Upgrade Work for Manuel with the MCS Software Upgrade Work for Genovesa. | This Request is relevant to potential PSA-related claims because it seeks evidence of Shell's motive to conspire with BP to fraudulently induce QuarterNorth into signing the PSA, and is also relevant to potential claims of tortious interference in BP's and QuarterNorth's other contracts. The Documents and Communications before the PSA are likely to lead to admissible evidence of BP's and Shell's motive. Documents and Communications after the PSA go to establish BP's and Shell's continuous concern for the relationship between Manuel and Genovesa. In particular, the third sub-bullet refers explicitly to BP's refusal before signing the PSA to allow OSS to develop Genovesa's software for Na Kika simultaneously with Manuel. QuarterNorth does not expect Shell to have any relevant documents concerning this sub-bullet, except those that would be highly relevant to establishing Shell's misconduct. | This Request is intentionally broad and is not narrowly tailored to focus on alleged PSA-related claims; rather, the Request is tantamount to a fishing expedition for any document that references "Manuel," irrespective of whether it is relevant to any alleged potential PSA-related claims. QuarterNorth has failed to establish any PSA related claims as Shell was not a party to the PSA nor involved in any negotiations concerning the PSA, and QuarterNorth's purported evidence post-dates the effective date of the PSA. Shell possesses a voluminous amount of emails and communications (containing highly commercially sensitive information) related to Manuel and its operations.<br><br>At a minimum, this Request should be narrowly tailored to exclude any Shell internal communications regarding Manuel and/or |

- 3 -

**Shell's Response to QuarterNorth – Exhibit A**
**Chart Regarding Rule 2004 Requests to Shell**

|   |   |   |   |
|---|---|---|---|
|   |   |   | the Na Kika platform and/or leaseholds. |
| 9 | Documents sufficient to show Shell's percent ownership interest, if any, in Manuel. | By this Request, QuarterNorth only seeks a document it can enter as admissible evidence of Shell's ownership interest in Manuel. After beginning production from Manuel on June 23, 2021, BP published a press release in which it represented it was a 50% owner, with Shell owning the remaining 50%. All QuarterNorth requests is a representation by counsel concerning Shell's ownership percentage, which BP says is 50%. | Shell's ownership interest percentage is a matter of public record. This information is available on the Bureau of Ocean Energy Management's Serial Register Page. |
| 4 | Documents sufficient to show the meaning of "Na Kika Obligations," as defined in PHA § 2.2.87, including, without limitation, "the Na Kika JOA, the Na Kika HUA, the Host M&A, the Satellite Field Start up Agreement" (as those terms are defined in the PHA), and any other agreements or other Documents necessary to determine the meaning of "Na Kika Obligations." | Before signing the PSA and continuously afterwards, BP said it did not see how it could find room on Na Kika—a production platform with room for approximately 100 people, which can be expanded as needed by flotel—for a small software installation team for more than a year. BP said it was because of the "Na Kika Obligations," and that Shell refused to permit QuarterNorth to be shown the documents setting out the meaning of "Na Kika Obligations." This Request is relevant to potential PSA-related claims because it seeks to investigate the meaning of the phrase BP used to try to justify its delays of Genovesa, and is also relevant to potential claims of tortious interference in BP's and QuarterNorth's other contracts. QuarterNorth seeks to investigate what that phrase means. | Shell is not a party to the PHA and therefore should not be required to assist the parties in the interpretation of what the phrase "Na Kika Obligations" means in their own agreement. Shell refused to permit QuarterNorth to be shown the documents setting out the meaning of "Na Kika Obligations" because it would require Shell to disclose commercially sensitive information to a third-party and Shell does not disclose such information to any third-party in the ordinary course of business. This request is open-ended and would elicit thousands of "hits" that will be largely irrelevant. |

- 4 -