# **EXHIBIT D**

**Chart**

| No. | Rule 2004 Request for Production | Relevance to PSA as Alleged in QNE's Chart (Dkt. No. 2510) | BP's Response (Note: Each of the requests relates to the arbitration(s) as set forth in Exhibit D (Docket No. 2488-10) to BP's Emergency Motion.) |
|---|---|---|---|
| 1 | All Documents and Communications concerning Genovesa, including but not limited to:<br>• Internal Communications with Shell, OSS, Honeywell, or any third party;<br>• Analyses on the impact Genovesa would have on production at Manuel;<br>• Fieldwood's timeline for bringing Genovesa online at Na Kika;<br>• BP's offer to accelerate bringing Genovesa online at Na Kika, if Fieldwood paid. | "BP's intent to fraudulently induce [QNE] to enter into the PSA." | QNE's explanation makes no meaningful attempt to explain how all documents related to Genovesa from a four-and-a-half-year period are relevant to a claim that QNE was fraudulently induced to enter into the PSA, but instead relies on sweeping assertions: "All of BP's internal communications concerning Genovesa prior to the PSA are relevant to a claim of fraudulent inducement."<br><br>As to communications with Shell, Shell is a co-owner of the Na Kika hub to which the Genovesa is connected and, even QNE tries to hedge by saying "[a]ny communications with Shell about Genovesa that are not merely factual updates are reasonably likely to be furthering some wrongful act[.]" Although BP disagrees with that characterization, QNE does not even attempt to exclude the materials QNE seemingly acknowledges are not relevant.<br><br>As to the software issue, QNE fails to explain why any alleged representations are not covered by the disclaimers of reliance in the PSA.<br><br>As to BP's alleged representations about the Genovesa timeline, it is unclear when those representations were allegedly made, and QNE has not explained how they are not covered by the PSA disclaimers. |

| No. | Rule 2004<br>Request for Production | Relevance to PSA as Alleged in QNE's Chart (Dkt. No. 2510) | BP's Response<br>(Note: Each of the requests relates to the arbitration(s) as set forth in Exhibit D (Docket No. 2488-10) to BP's Emergency Motion.) |
|---|---|---|---|
| 3 | All Documents and Communications concerning the PSA, including but not limited to, BP's decision to enter into the PSA. | "[P]otential claim of fraudulent inducement to enter into the PSA." | Again, there is no effort to explain how any unidentified alleged representations or failures to disclose are not waived by the PSA's disclaimers of reliance.<br><br>Moreover, not all documents related to the PSA would be relevant. For example, BP has never received the $30 million portion of the purchase price owed under the PSA, which is just one potential PSA issue that QNE makes no attempt to tie to its allegations. |
| 4 | Documents sufficient to show the meaning of "Na Kika Obligations," as defined in PHA § 2.2.87, including without limitation, "the Na Kika JOA, the Na Kika HUA, the Host M&A, the Satellite Field State-up Agreement" (as those terms are defined in the PHA), and any other agreements or other Documents necessary to determine the meaning of "Na Kika Obligations." | "BP's intent to fraudulently induce [QNE] to enter into the PSA." | The space-limitation issue is not addressed by the PSA and QNE makes no attempt to explain why this specific alleged "non-disclosure" is not covered by the reliance disclaimers in the PSA. |

| No. | Rule 2004 Request for Production | Relevance to PSA as Alleged in QNE's Chart (Dkt. No. 2510) | BP's Response (Note: Each of the requests relates to the arbitration(s) as set forth in Exhibit D (Docket No. 2488-10) to BP's Emergency Motion.) |
|---|---|---|---|
| 6 | All Documents and Communications concerning BP's efforts to bring Manuel online at Na Kika, including, but not limited to:<br>• BP's prioritization of Manuel ahead of Genovesa;<br>• BP's timeline for bringing Manuel online, including any changes to that timeline over time; and<br>• BP's refusal to combine the MCS Software Upgrade Work for Manuel with the MCS Software Upgrade Work for Genovesa. | "BP's motive to fraudulently induce [QNE] into signing the PSA." | The alleged relevance of "All Documents and Communications concerning BP's efforts to bring Manuel online at Na Kika" has no limiting principle tying it to alleged fraudulent inducement of the PSA.<br><br>Again, QNE failed to identify any alleged representations or failures to disclose that are not waived by the disclaimers in the PSA. |
| 12 | All Documents and Communications concerning the LSPS Leak from January 1, 2015 to the present, including, but not limited to, BP's observation of an anomaly at the site of the LSPS Leak in August 2015, any prior or subsequent observations of anomalies at the site of the LSPS Leak, including in December 2017, April 2018, and May 2019, and any efforts by BP to fix the LSPS Leak. | "BP's intent to fraudulently induce [QNE] to enter into the PSA." | QNE has not identified any alleged representations or failures to disclose concerning the LSPS Leak that are not waived by the disclaimers of reliance in the PSA. |

| No. | Rule 2004 Request for Production | Relevance to PSA as Alleged in QNE's Chart (Dkt. No. 2510) | BP's Response (Note: Each of the requests relates to the arbitration(s) as set forth in Exhibit D (Docket No. 2488-10) to BP's Emergency Motion.) |
|---|---|---|---|
| 13 | All Documents and communications concerning the Authorizations for Expenditure related to the 2019 TAR (NKO3Z400DJK, NKO392023 and NKO391985), including, but not limited to, BP's reasons for delaying sending them to Fieldwood until after closing on the PSA. | "BP's intent to fraudulently induce [QNE] to enter into the PSA." | QNE does not suggest that it lacked knowledge that the underlying work was being done, that the AFEs were coming, or the likely amounts of the AFEs.<br><br>QNE makes no attempt to explain why these specific alleged "non-disclosures" are not covered by the reliance disclaimers in the PSA. |
| 14 | Documents and communications sufficient to show when BP first developed plans to undertake the 2019 TAR, how those plans changed through completion of the 2019 TAR, and when BP finalized and signed the Authorizations for Expenditure referenced above. | "BP's intent to fraudulently induce [QNE] to enter into the PSA." | Generally, the LSPS Loop and the wells connected to it are only a fraction of the factors that must be considered when TARs are being planned at Na Kika.<br><br>Again, QNE makes no attempt to identify any alleged disclosures or "non-disclosures" about 2019 TAR timing that are not covered by the reliance disclaimers in the PSA. |
| 15 | Documents and communications sufficient to show the daily count of persons on board Na Kika and the flotel referenced in the previous request, from June 1, 2019 through March 30, 2021. | "BP's intent to fraudulently induce [QNE] to enter into the PSA." | The space-limitation issue is not addressed by the PSA and QNE makes no attempt to explain why this specific alleged "non-disclosure" is not covered by the reliance disclaimers in the PSA. |

Case 20-33948   Document 2520-4   Filed in TXSB on 06/15/22   Page 6 of 6

| No. | Rule 2004 Request for Production | Relevance to PSA as Alleged in QNE's Chart (Dkt. No. 2510) | BP's Response (Note: Each of the requests relates to the arbitration(s) as set forth in Exhibit D (Docket No. 2488-10) to BP's Emergency Motion.) |
|---|---|---|---|
| 17 | All documents and communications concerning the deployment of a flotel at Na Kika in 2020, including, but not limited to, documents and communications concerning the Authorization for Expenditure, NKO392817 and BP's decision to refrain from sending such AFE to Fieldwood until June 2020. | "BP's intent to fraudulently induce [QNE] to enter into the PSA." | This request is simply a variation of Request No. 13.<br><br>QNE makes no attempt to explain why this specific alleged "non-disclosure" is not covered by the reliance disclaimers in the PSA. |