UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY III LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Post-Effective Date Debtors.[1] | § | |

# DECLARATION OF WALTER BOWSER
# IN SUPPORT OF MOTION TO FURTHER EXTEND THE
# DEADLINE TO FILE CLAIM OBJECTIONS TO SPECIFIED CLAIMS

Pursuant to 28 U.S.C. § 1746, I, Walter Bowser, solely in my capacity as advisor to the Plan Administrator, hereby declare as follows:

1. I am a Director at Province, Inc., an industry-leading, nationally recognized consulting firm of senior business leaders specializing in financial advisory, corporate reorganization, and trustee-related services that enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494), Fieldwood Energy Inc. (4991), GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O of Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "Post-Effective Date FWE I Subsidiaries") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

2.      I submit this Declaration in support of the *Motion to Further Extend the Deadline to file Claims Objections to Specified Claims* [Docket No. 2621], filed on August 10, 2022 (the "Motion")[2], pursuant to which the Plan Administrator seeks to extend the Claims Objection Deadline for the unresolved Specified Claims described therein through and including February 18, 2023.

3.      Except as otherwise indicated, all facts set forth in this Declaration (or incorporated by reference herein) are based upon my personal knowledge; my review of the docket, relevant documents, and the Debtors' or Post-Effective Date Debtors' books and records; and/or upon information supplied to me by advisors to the Plan Administrator. If I were called to testify, I would testify competently to the facts set forth (and incorporated by reference) herein.

4.      Below is (i) a description of the Specified Claims, (ii) a summary of the progress the Plan Administrator has made to date in resolving claims and (iii) the steps the Plan Administrator intends to resolve the Specified Claims.

     **A.     The Specified Claims**

5.      The Plan generally divides Claims asserted by general unsecured creditors, other than Intercompany Claims and certain subordinated Claims, into two classes: (i) Class 6A, Unsecured Trade Claims; and (ii) Class 6B, General Unsecured Claims. Approximately eighty-five Class 6A Unsecured Trade Claims were also filed against the Debtors, asserting an amount in excess of $22 million. Approximately 823 Class 6B General Unsecured Claims were filed against the Debtors, asserting an amount in excess of $28.3 billion. To date, the Plan Administrator has worked with his professionals to object to or otherwise reconcile seventy-one Unsecured Trade

---

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

Claims, representing approximately $22 million, and 566 General Unsecured Claims, representing approximately $8 billion.

6. Over 300 Proofs of Claim were filed against the Debtors, asserting in excess of $17.5 billion in Other Secured Claims. To date, the Plan Administrator has worked with his professionals to object to or otherwise reconcile approximately 133 Proofs of Claim representing over $8 billion in asserted Other Secured Claims. Despite the progress made, several categories of Other Secured Claims remain unresolved. A significant number of the Other Secured Claims described further below are closely related to, or overlap with each other. In many cases, a single Proof of Claim asserts claims spanning multiple categories or multiple Proofs of Claim were filed asserting claims arising out of the same circumstances or legal bases.

7. The Specified Claims that remain subject to further reconciliation by the Plan Administrator generally fall into several closely related or overlapping categories:

   a. *P&A Claims*: At least $30 billion[3] in General Unsecured and Other Secured Claims purportedly based on plugging and abandonment and decommissioning obligations arising out of the Debtors' interests in certain oil and gas leases (each a "P&A Claim" and collectively, the "P&A Claims") were filed against the Debtors and constitute – by far – the largest category of the remaining General Unsecured Claims and Other Secured Claims. The P&A Claims were predominantly filed by members of the following groups of claimants:

   i. Surety Providers: Issuers, as surety, of commercial bonds on behalf of the Debtors (the "Surety Providers"), which are (a) subject to potential claims by the obligees thereof and (b) party to prepetition indemnification agreements with the Debtors that may give rise to liquidated claims against the Debtors in the event the obligees of the bonds seek to collect from the Surety Providers;

---

[3] This amount excludes claims filed in $0 unliquidated amounts.

  ii.  <u>Predecessors-in-Interest</u>: Predecessors in title to lease interests ("<u>PII</u>") that filed Proofs of Claim based on leases in which a Debtor had record title interests and/or operating interests, which may assert subrogation claims against such Debtors if the PIIs are required to satisfy any plugging and abandonment obligations arising out of such leases;

  iii.  <u>CIO</u>: Co-working interest owners that are jointly and severally liable with one or more Debtors for plugging and abandonment obligations; and

  iv.  <u>BSEE</u>: The United States Department of Interior (Bureau of Safety and Environmental Enforcement) ("<u>BSEE</u>"), which filed multiple proofs of claim against the Debtors in "the event that it is determined that any or all of the obligations imposed by the statutory, regulatory, and contractual lease provisions give rise to "claims" as defined in the Bankruptcy Code". *E.g.*, Claim No. 900.

 b. *Rejection Damages Claims*: Approximately thirty-seven Proofs of Claim asserting approximately $95 million in General Unsecured Claims and Other Secured Claims for damages based on executory contracts that were rejected pursuant to section 365 of the Bankruptcy Code, either during the pendency of the chapter 11 cases, or pursuant to the Plan (the "<u>Rejection Damages Claims</u>") were filed against the Debtors. To date, the Plan Administrator has been working with his professionals to object to or otherwise reconcile the Rejection Damage Claims.

 c. *Interest Owner Claims*: Approximately 110 Proofs of Claim were filed against the Debtors by the holders of royalty, working, override and other interests (the "<u>Interest Owners</u>") under the Debtors' various leases and related agreements (the "<u>Leases</u>"), representing approximately $58 million in General Unsecured Claims, Administrative Expense Claims, Priority Non-Tax Claims, and Other Secured Claims (the "<u>Interest Owner Claims</u>"). To date, the Plan Administrator has worked with his professionals to object to or otherwise reconcile 102 Interest Owner Claims, representing approximately $916,000 in liabilities.

 d. *Secured Vendor Claims*: Approximately forty-seven Proofs of Claims were filed against the Debtors, representing approximately $50 million, by vendors of goods and services

(the "Vendors") asserting Other Secured Claims for work performed and materials furnished on behalf of the Debtors (the "Secured Vendor Claims"). To date, the Plan Administrator has worked with his professionals to object to, reclassify or otherwise reconcile thirty Secured Vendor Claims, representing approximately $28 million in liabilities.

e. *Miscellaneous Claims*: Approximately twenty-eight Proofs of Claim were filed against the Debtors, representing $55 million of various categories of unresolved claims, including claims that are not reflected on the Post-Effective Date Debtors' books and records and thus require further diligence, claims arising from pending litigation, and certain claims for which the Post-Effective Date Debtor is conducting ongoing discussion with claimants (collectively, the "Miscellaneous Claims"). To date, the Plan Administrator has been diligently reviewing such claims.

f. *Outstanding Objections*: Ninety-seven Proofs of Claim are currently subject of the objections that the Plan Administrator has already filed but the Court has not yet sustained. Such objections are filed at Docket Nos. 2556, 2609, 2636, 2637 and 2640 (collectively, the "Outstanding Objections").

g. *Administrative Claims*: Approximately ninety Administrative Expense Proofs of Claim were filed against the Debtors asserting approximately $155 million in Administrative Expense Claims. These Administrative Expense Proofs of Claim were filed by Surety Providers, Interest Owners, Vendors, and certain governmental units. Among other things, the Administrative Expense Proofs of Claim assert alleged Administrative Expense Claims arising from or related to premiums due postpetition under prepetition surety agreements and decommissioning obligations.

B.   **Progress to Date**

8.   The Plan Administrator has prepared and filed eighteen omnibus claim objections (collectively, the "Omnibus Claim Objections"). *See* Docket Nos. 2076, 2077, 2078, 2079, 2080, 2259, 2318, 2319, 2424, 2486, 2491, 2492, 2532, 2556, 2609, 2636, 2637 and 2640. Pursuant to the Court's orders approving the Omnibus Claim Objections, in whole or in part, an aggregate amount of 177 Claims (not including claims that the Court has ordered to be reclassified), representing an aggregate asserted value of more than $3.3 billion, have been disallowed to date. *See* Docket Nos. 2210, 2261, 2262, 2293, 2301, 2324, 2347, 2348, 2378, 2456, 2543, 2544, 2545, 2551, 2554, and 2579.

9.   Moreover, the Plan Administrator has been working to reconcile and satisfy (as appropriate) the Class 6A Unsecured Trade Claims in accordance with section 4.6 of the Plan by entering into Trade Agreements and stipulations regarding the satisfaction of such Claims. To date, the Plan Administrator has fully resolved and/or satisfied seventy-one of the eighty-four Class 6A Unsecured Trade Claims. *See* Docket Nos. 2382, 2502.

10.   In respect of the Administrative Expense Claims, since the Administrative Claim Bar Date on March 25, 2022, the Plan Administrator has reviewed and analyzed the Administrative Expense Claims filed against the Debtors and begun to initiate discussions with claimants asserting Administrative Expense Claims, including those asserted on account of Interest Owners, Vendors, and certain governmental units. A significant number of the Administrative Expense Claims were filed by Surety Providers. The Plan Administrator is engaged in ongoing discussions with Surety Providers regarding the resolution of their asserted Administrative Expense Claims, in addition to the Surety Providers' other asserted Claims. To the extent the parties are unable to consensually resolve such Claims, the Plan Administrator intends to file objections contesting any continued

assertions that such Claims are entitled to administrative expense priority. With respect to the Administrative Expense Claims filed by non-Surety Providers, it is my understanding that the Plan Administrator plans to seek consensual resolutions with each claimant's counsel prior to filing any objections.

11. To date, the Court has entered the *Order Sustaining the Plan Administrator's Fourteenth Omnibus Claim Objection* [Docket No. 2579], which disallowed fourteen Interest Owner Claims as satisfied Claims. In addition, the Court entered the *Order Granting the Plan Administrator's Motion to Expand Omnibus Claim Objection Procedures* [Docket No. 2629] (the "Expanded Grounds Order") authorizing the Plan Administrator to file omnibus objections to (i) Claims based upon terminated Leases for which no amounts remain due and owing and (ii) Claims based upon Leases which were transferred to another operator and for which no amounts remain unpaid by the Debtors ((i) and (ii), together, the "Expanded Grounds"). Pursuant to the Expanded Grounds Order, the Plan Administrator filed (i) the *Plan Administrator's Seventeenth Omnibus Objection to Claims Pursuant to Section 502(B) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure Seeking to Disallow Certain Claims (Satisfied Transferred Lese Claims)* [Docket No. 2636], and (ii) the *Eighteenth Omnibus Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure Seeking to Disallow Certain Claims (Satisfied Terminated Lease Claims)* [Docket No. 2637].

12. The Plan Administrator has also reviewed and analyzed the Debtors' prepetition agreements that gave rise to the Rejection Damages Claims. Thirty-seven Rejection Damages Claims were filed against one or more of the Debtors' estates, totaling in the amount of $95 million.

To date, the Plan Administrator has been engaging in active negotiations with claimant counsel in order to resolve such claims in a consensual manner prior to filing any objections.

13. In addition to the progress made in resolving, liquidating or otherwise disallowing the Claims discussed above, it is my understanding that the majority of the Plan Administrator's time and effort since the last extension has been spent working towards a resolution of the billions of dollars of P&A Claims related to approximately 264 claims. The analysis underlying a resolution has been complex and time-consuming due to several factors, including the contingent nature of the Claims, the underlying legal theory of each Claim, the number of entities that are potentially liable for the same plugging and abandonment obligations or have become liable for the same plugging and abandonment obligations since the Effective Date, and the incomplete information provided by some of the claimants. Despite these challenges, it is my understanding that the Plan Administrator has gained a firm understanding of the P&A Claims and has formulated a clear path forward. I believe an extension of the Claims Objection Deadline will further allow the parties to continue their ongoing discussions and progress towards a potential resolution or to initiate litigation.

### C. Next Steps

14. During the extended period, it is my understanding that the Plan Administrator will implement a comprehensive solution to the P&A Claims, both secured and unsecured, as well as asserted Administrative Claims, which will include objecting to certain Claims and/or estimating them for distributions purposes, as well as negotiating with the affected parties. Specifically, I understand that the Plan Administrator intends to object to the P&A Claims and/or estimate such Claims for distribution purposes. Thus, the extension with respect to these Claims will allow the Plan Administrator sufficient time to implement the second step of the planned reconciliation

process, if necessary. Resolving the P&A Claims will facilitate the resolution of the vast majority of other unresolved Claims where the same claimant has asserted P&A Claims and non-P&A Claims in the same Proof of Claim.

15. During the extended period, it is my understanding that the Plan Administrator will also continue to review and analyze the Debtors' prepetition contracts that give rise to the Rejection Damages Claims, both secured and unsecured, and continue to engage with the holders of such Claims, as the Plan Administrator has been doing since the Effective Date. It is my understanding that while the Plan Administrator has been diligently reviewing Rejection Damages Claims that were filed in the case, and have been in negotiations with claimant counsels, given the complexity of certain of the agreements, the Plan Administrator requires additional time to conduct diligence concerning the validity and quantum of the asserted Rejection Damages Claims. After such diligence is complete, it is my understanding that the Plan Administrator intends to either object to or allow the various Rejection Damages Claims as appropriate, or otherwise reach a consensual resolution with the holders of such Claims.

16. In addition, with respect to the Administrative Expense Claims that have been filed by the Surety Providers, it is my understanding that the Plan Administrator will attempt to resolve each Surety Provider's claims as part of discussions to resolve its other asserted claims. The Debtors dispute the Surety Providers are entitled to Allowed Administrative Expense Claims, including with respect to premiums due, and intend to file objections to such claims if consensual resolutions are not possible. With respect to the Administrative Expense Claims filed by non-Surety Providers, it is my understanding that the Plan Administrator plans to seek consensual resolutions with each claimant's counsel prior to filing any objections.

17. Accordingly, I believe than a 180-day extension with respect to the Specified Claims will allow the Plan Administrator to efficiently and holistically resolve or litigate the remaining Claims, conserving judicial resources and maximizing recoveries for unsecured creditors, and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 31, 2022

*/s/ Walter Bowser*
Walter Bowser

### CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2022, a true and correct copy of the above and foregoing has been served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in these cases.

*/s/ Michael D. Warner*
Michael D. Warner