IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| | § | |
| **FIELDWOOD ENERGY III LLC,** *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Post-Effective Date Debtors.[1] | § | (Jointly Administered) |
| | § | |

**PLAN ADMINISTRATOR'S TWENTIETH OMNIBUS OBJECTION TO CLAIMS
SEEKING TO RECLASSIFY CERTAIN ADMINISTRATIVE EXPENSE CLAIMS
(CLAIMS FILED BY THE DEPARTMENT OF INTERIOR)**

> **THIS IS AN OBJECTION TO YOUR ADMINISTRATIVE EXPENSE CLAIM. THIS OBJECTION ASKS THE COURT TO RECLASSIFY THE ADMINISTRATIVE EXPENSE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE.  IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR ADMINISTRATIVE EXPENSE CLAIM MAY BE RECLASSIFIED WITHOUT A HEARING.**

The plan administrator (the "**Plan Administrator**"), appointed pursuant to the

*Modified Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated*

---

[1]  The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494), Fieldwood Energy Inc. (4991), GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O of Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

*Debtors* [ECF No. 2008] (the "**Plan**"),[2] respectfully represents as follows in support of this objection (the "**Objection**"):

<u>**Background**</u>

1.       On August 3, 2020 and August 4, 2020 (as applicable, the "**Petition Date**"),[3] the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  No trustee or examiner has been appointed in these Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

2.       On June 25, 2021, this Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11  Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [ECF No. 1751] confirming the Plan.

3.       On August 27, 2021 (the "**Effective Date**"), all conditions precedent to the Plan were satisfied or waived in accordance with the Plan, and the Plan became effective. *See Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [ECF No. 2016].

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan or the applicable Plan Document.

[3]   The following Debtors filed their chapter 11 petitions on August 3, 2020: (i) Dynamic Offshore Resources NS, LLC, (ii) Fieldwood Energy Inc., (iii) Fieldwood Energy LLC, (iv) Fieldwood Energy Offshore LLC, (v) Fieldwood Onshore LLC, (vi) Fieldwood SD Offshore LLC, and (vii) FW GOM Pipeline, Inc.  The following Debtors filed their chapter 11 petitions on August 4, 2020: (i) Bandon Oil and Gas GP, LLC, (ii) Bandon Oil and Gas, LP, (iii) Fieldwood Energy SP LLC, (iv) Fieldwood Offshore LLC, (v) Galveston Bay Pipeline LLC, (vi) Galveston Bay Processing LLC, and (vii) GOM Shelf LLC.

4.     On February 17, 2022, this Court entered the *Order Establishing Deadline for Filing Requests for Payment of Administrative Expense Claims and Procedures Relating Thereto and Approving Form and Manner of Notice Thereof* [ECF No. 2387] (the "**Administrative Expense Bar Date Order**") establishing March 25, 2022 at 5:00 p.m. (prevailing Central Time) as the Administrative Expense Bar Date (as defined in the Administrative Expense Bar Date Order).  The Administrative Expense Bar Date Order contains procedures for filing Administrative Expense Proofs of Claim, which include that the Proofs of Claim must "set forth with specificity the legal and factual bases for the alleged Administrative Expense Claim."  *See* Administrative Expense Bar Date Order ¶ 6.d.  The Administrative Expense Bar Date Order further provides that any holder that fails to file an Administrative Expense Proof of Claim "in [the] appropriate form" by the Administrative Expense Bar Date "shall be forever barred, estopped, and enjoined from asserting such claim against the Debtors, the Post-Effective Date Debtors, the Plan Administrator, and their property" and "shall not be permitted to participate in any distribution in these Chapter 11 Cases on account of such alleged Administrative Expense Claim."  *See id.* ¶ 9.

### **The Disputed Claims**

5.     Prior to the Petition Date, the Debtors were one of the largest independent oil and gas exploration and production companies in the Gulf of Mexico. The Debtors' properties in the Gulf of Mexico were leased from the federal government.  The federal leases at issue in this Objection provided for the accrual of "minimum royalty" obligations,[4] which, in general, accrued at the beginning of each lease year following discovery of production in paying quantities. Because a minimum royalty obligation may be satisfied by production royalties throughout the

---

[4]    Each lease sets an annual minimum royalty amount based on a fixed rate per lease acre.

lease year, the Office of Natural Resources Revenue ("**ONRR**") sends demands seeking collection of minimum royalties at the end of each lease year. The total amount of minimum royalty demanded (and paid) at the end of each lease year is the difference (if any) between (a) the annual minimum royalty obligation required by the lease, and (b) the production royalties paid during the relevant lease year. Thus, if the production royalties paid throughout the lease year exceed the minimum royalty obligation, then the minimum royalty obligation for the lease year is fully satisfied and the ONRR does not send a minimum royalty demand.

6. On March 25, 2022, the Department of the Interior/Office of Natural Resources Revenue (the "**DOI**") filed five Administrative Expense Proofs of Claim numbered 1092, 1093, 1094, 1095, and 1107 (collectively, the "**Initial Disputed Claims**"). On May 14, 2022, the DOI filed an additional Administrative Expense Proof of Claim numbered 1134 (the "**Additional Disputed Claim**" and together with the Initial Disputed Claims, the "**Disputed Claims**"), which superseded Claim 1092.[5] Each of the Disputed Claims seeks payment of minimum royalties that arose from leases that were entered into prior to the Petition Date and that relate to lease years that began prior to the Petition Date.[6] Two of the Disputed Claims – Claims 1107 and 1134 – also seek payment of minimum royalties relating to three leases for lease years that commenced after the Petition Date in addition to lease years that commenced prior to the Petition Date. None of those three leases were produced during those subsequent lease years. Of

---

[5]   *See Stipulation and Agreed Order Withdrawing (I) Superseded Administrative Expense Proof of Claim and (II) Objection to Administrative Expense Claim* [ECF No. 2634] (the "**Stipulation**"). Claim 1092 was withdrawn pursuant to the Stipulation.

[6]   The Disputed Claims list a due date for each minimum royalty obligation. In each instance, the due date corresponds to the last day of the lease year. A lease year for each of the Leases (as defined herein) is 12 months. A copy of each Lease is annexed to the *Dunn Declaration* (as defined herein) at Ex. A.

the 27 leases referenced in the Disputed Claims (collectively, the "**Leases**"), only two were produced for any period of time after the Petition Date.

7. The following chart summarizes the minimum royalty obligations alleged in the Disputed Claims:

| Claim # | Leases | Lease Year Commenced Prior to Petition Date | Lease Year Commenced After Petition Date | Production During Applicable Lease Year | Amount of Minimum Royalties Claimed[7] |
|---|---|---|---|---|---|
| **1093** | OCS-G 10594, OCS-G 21106 | Yes | No | No | $32,334.40 |
| **1094** | OCS-G 1031, OCS-G 1529 | Yes | No | No | $28,690.46 |
| **1095** | OCS-G19760 | Yes | No | No | $25,000.00 |
| **1107**[8] | OCS-G 9478, OCS-G 24872, OCS-G 01027, OCS-G 1028, OCS-G 1029, OCS-G 1030, OCS-G 1037, OCS-G 1038, OCS-G 1172, OCS-G 1216, OCS-G 23829, OCS-G 2722,, and OCS-G 8658 | Yes | No | No | $150,701.00 |
| | OCS-G 24870, OCS-G 23735 | Yes | No | Yes | $14,518.61 |
| | OCS-G 24870, OCS-G 23735 | No | Yes | No | $40,385.00 |
| **1134**[9] | OCS-G 22679, OCS-G 1520, OCS-G 2721, | Yes | No | No | $106,842.98 |

---

7    Each Disputed Claim also asserts interest to March 24, 2022 on every obligation set forth in the Disputed Claim. This column excludes the interest claimed.

8    Claim 1107 also asserts amounts relating to inspection fees and interest on late paid invoices that came due postpetition. No document or other information was provided specifying (i) when these inspections were conducted or (ii) what the late paid invoices relate to or when they were due. These amounts should not be allowed as administrative expenses for the same reason that the minimum royalties asserted should not be allowed as administrative expenses.

9    Claim 1134 also asserts amounts relating to inspection fees that came due postpetition. No document or other information was provided specifying when these inspections were

| Claim # | Leases | Lease Year Commenced Prior to Petition Date | Lease Year Commenced After Petition Date | Production During Applicable Lease Year | Amount of Minimum Royalties Claimed[7] |
|---|---|---|---|---|---|
| | OCS-G 2754, OCS-G 2757, OCS-G 10780, and OCS-G06069 | | | | |
| | OCS-G 1520 | No | Yes | No | $15,000.00 |

8.      None of the Disputed Claims contains an explanation as to why the Disputed Claims should be treated as administrative expenses.[10]

## Jurisdiction

9.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.[11]

## Relief Requested

10.      By this Objection, pursuant to sections 105(a), 502(b), and 503(b) of the Bankruptcy Code, Bankruptcy Rule 3007, and Bankruptcy Local Rule 3007-1, the Plan

---

conducted.  These amounts should not be allowed as administrative expenses for the same reason that the minimum royalties asserted should not be allowed as administrative expenses.

[10]   The DOI has also sought to recover the minimum royalties alleged in the Disputed Claims outside these Chapter 11 Cases and through the issuance of demands (the "**Demands**") to several of the Debtor entities.  A copy of each Demand is annexed to the *Dunn Declaration* at Ex. B.  The Demands were appealed to the Director of the ONRR and extensions of time to brief those appeals were obtained in order to litigate the claims in the proper forum, before the Bankruptcy Court in these Chapter 11 Cases. To the extent the DOI or other federal governmental units seek to continue to collect on the minimum royalty claims outside these Chapter 11 Cases in violation of the Plan's injunction and discharge provisions, the Plan Administrator reserves all rights to (i) assert the DOI and any other relevant federal governmental unit has violated the Plan's injunction and discharge provisions and (ii) seek to enjoin or otherwise stay the administrative proceedings and any other actions to collect on such claims.

[11]   By filing the Disputed Claims, the DOI has submitted to the jurisdiction of this Court.  *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (noting that by filing a proof of claim, a creditor subjected itself to the bankruptcy court's equitable jurisdiction).

Administrator respectfully requests entry of an order reclassifying the Disputed Claims identified on **Schedule 1** to the Proposed Order as Class 6B General Unsecured Claims (as defined in the Plan).

11.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**"),

12.     In support of this Objection, the Plan Administrator submits the *Declaration of David M. Dunn in Support of Plan Administrator's Twentieth Omnibus Objection to Claims Seeking to Reclassify Certain Administrative Expense Claims (Claims Filed by the Department of Interior)*, filed contemporaneously herewith (the "**Dunn Declaration**").

### Basis for Relief

13.     Section 503 of the Bankruptcy Code provides, in pertinent part, that, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including—the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A).  "The claimant seeking administrative expenses bears the burden of proof." *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 441 (5th Cir. 2019) (citation omitted).

14.     "[T]o qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate."  *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001); *see also Toma Steel Supply, Inc. v. TransAmerican Nat. Gas Corp. (In re TransAmerican Nat. Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992) ("A prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function

7

as a going concern.").  In other words, "[a]n administrative priority claim 'must have arisen from a transaction with the debtor in possession,' as opposed to the pre-petition debtor."  *Whistler Energy II*, 931 F.3d at 442*; see also In re Northstar Offshore Grp., LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020) (Isgur, J.) ("In general, for a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a *postpetition transaction*; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition.") (emphasis in original) (internal quotation marks and citations omitted).

15.    The benefit requirement is not an additional element of section 503(b)(1)(A).  *See In re Am. Coastal Energy*, 399 B.R. 805, 809 (Bankr. S.D. Tex. 2009).  Rather, it "is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary'" within the meaning of § 503(b)(1)(A).  *Texas v. Lowe (In re H.L.S. Energy Co.)*, 151 F.3d 434, 437 (5th Cir. 1998).  Moreover, "section 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors."  4 Collier on Bankruptcy ¶ 503.06[2] (Lexis, 16th ed. updated Sept. 2022); *see also NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991) ("Courts have construed the words 'actual' and 'necessary' narrowly: the debt must benefit [the debtor's] estate and its creditors.").

16.    The Disputed Claims fail to meet either element of the test for an allowable administrative expense claim.

## A.  The Disputed Claims Arose Prepetition and Did Not Arise from a Transaction with a Postpetition Debtor

17.    When it comes to contractual liabilities, courts have held that "[c]ontract claims arise upon execution of an agreement."  *Kling Realty Co. v. Texaco, Inc. (In re Texaco Inc.)*, No. 10–CV–8151(CS), 2011 U.S. Dist. LEXIS 111533, at *14 (S.D.N.Y. Sep. 28, 2011), *aff'd*, 505 F. App'x 77 (2d Cir. 2012); *see also Rescap Liquidating Tr. v. PHH Mortg. Corp. (In re*

8

*Residential Capital, LLC)*, 558 B.R. 77, 84 (S.D.N.Y. 2016) ("As a general rule, '[c]ontract claims . . . arise upon execution of an agreement.'") (alterations in original).  This is true even if a contractual obligation does not become due until after a debtor files for bankruptcy.  *See Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001) ("[C]ourts consistently hold that a post-petition breach of a pre-petition contract gives rise only to a pre-petition claim") (compiling cases); *Trevino v. HSBC Mortg. Servs. (In re Trevino)*, 535 B.R. 110, 149 (Bankr. S.D. Tex. 2015) (holding that a breach of contract claim was a prepetition claim even though the breach occurred post-petition because "the breach was a foreseeable outcome of the pre-petition contract"); *Lycoming Engines v. Superior Air Parts, Inc*., No. 3:13-CV-1162-L, 2014 U.S. Dist. LEXIS 66819, at *15 (N.D. Tex. May 15, 2014) ("[A] right to indemnification is a prepetition claim under the Bankruptcy Code where the indemnification agreement is executed prepetition, even if the facts giving rise to actual liability did not occur until after the discharge."); *Berliner Handels–Und Frankfurter Bank v. E. Tex. Steel Facilities, Inc. (In re E. Tex. Steel Facilities, Inc.)*, 117 B.R. 235, 242-43 (Bankr. N.D. Tex. 1990) ("Obligations which arise out of prepetition contracts, but are due postpetition, are prepetition debts."); *see also Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.)*, 4 F.3d 1329, 1335 n.7 (5th Cir. 1993) ("If a right to payment becomes vested prior to commencement of the bankruptcy case, the claim becomes a pre-petition claim. A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition.").

18.    For example, in *East Texas Steel*, the court held that an issuer's claim for amounts paid to the debtor's supplier in connection with such supplier's postpetition draw under a prepetition letter of credit the issuer had issued on behalf of the debtor was not entitled to administrative priority.  *See E. Tex. Steel*, 117 B.R. at 242-243.  Because the letter of credit was

issued prior to the petition date, the court reasoned that the issuer's payment to the supplier "was the result of a prepetition obligation and is therefore a prepetition debt." *Id*. Accordingly, the court concluded that the issuer "may not claim an administrative priority for this prepetition obligation." *Id.* at 243.

19.     Here, the Disputed Claims all arise from Leases that were executed prior to the Petition Date, and predominantly relate to lease years that commenced prior to the Petition Date. Therefore, none of the Disputed Claims arose out of a transaction with a postpetition Debtor. Rather, all of the Disputed Claims arose out of a transaction with a prepetition entity. *See In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 827 (Bankr. D. Del. 2002) (denying a creditor's administrative expense claim for royalties that arose out of postpetition delivery of services because "[t]he obligation to make the royalty payments arose when the Consulting Agreement was executed pre-petition").[12]

20.     Accordingly, each of the Disputed Claims arose prior to the Petition Date as a result of a prepetition transaction and are, therefore, not allowable administrative expense claims.

---

[12]   Moreover, although not dispositive as to when a claim arises for purposes of the Bankruptcy Code, the applicable regulatory authority has found that "the full amount of minimum royalty accrues at the beginning of the lease year." *See Placid Oil Co.*, MMS-91-0236-OCS, 1992 WL 12660693, at *1 (M.M.S. May 20, 1992). Therefore, not only did the Disputed Claims arise prior to the Petition Date for purposes of the Bankruptcy Code, but each minimum royalty obligation (with the exception of the three minimum royalty obligations that relate to lease years that commenced after the Petition Date) accrued prior to the Petition Date according to the terms of the applicable lease. Such liability does not constitute administrative expense of the Debtors' estates. *See In re Jartran, Inc.*, 732 F.2d 584, 588 (7th Cir. 1984) (finding that a claimant did not have an allowable administrative expense claim when the debtor's liability to the claimant was "irrevocably incurred before the petition was filed" and its claim arose out of "commitments made before the debtor-in-possession came into existence").

**B.  The Leases Provided No Benefit and Were Burdensome to the Debtors' Estates**

21.     The Leases provided no benefit to the Debtors' estates.  Of the 27 Leases referenced in the Disputed Claims, oil was produced from only two of the Leases during the Debtors' Chapter 11 Cases.  Further, all but two of the Leases were either terminated or relinquished prior to the Effective Date.[13]  Of the two Leases with production after the Petition Date, production at OCS-G23735 stopped on August 23, 2020, 20 days after the Petition Date, and production at OCS-G24870 stopped on October 20, 2020, approximately two and a half months after the Petition Date.  For any production that occurred in the postpetition period, the DOI received royalty payments on account of the production, calculated consistent with the terms of the applicable Leases.  Therefore, the DOI has already been compensated for the value of the Debtors' use of the two Leases with production, which is all it is entitled to.[14]  *See Memphis-Shelby Cty. Airport Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F. 2d 1283, 1285 (5th

---

[13]   Once a federal oil and gas lease is beyond its primary term, the lease expires by operation of law one year after lease-holding operations at the lease cease, unless the lessee obtains a suspension of operations or suspension of production.  *See* 30 C.F.R. § 250.180(d) ("If you stop conducting operations on a lease that has continued beyond its primary term, your lease will expire unless you resume operations or receive an SOO or an SOP from the Regional Supervisor under § 250.172, § 250.173, § 250.174, or § 250.175 before the end of the year after you stop operations.").  Separately, a lease may be relinquished.  *See* 30 C.F.R. § 556.1101.

[14]   To the extent the Court finds the Disputed Claims for minimum royalties relating to the two Leases that were produced in the post-petition period should be afforded administrative priority, those Disputed Claims should be prorated to account for only the number of days the Debtors actually produced oil under the Leases.  *See Broad. Corp. v. Broadfoot (In re Subscription TV)*, 789 F.2d 1530, 1532 (11th Cir. 1986) (holding that an administrative expense claim should only be allowed "to the extent that the actual use of such property represents benefit to the bankruptcy estate").  Moreover, to the extent the Court finds any of the Disputed Claims should be afforded administrative priority, the Disputed Claims should be prorated and reduced to account for only the portion of the lease year that occurred after the Petition Date.  *See In re 7003 Bissonnet*, 153 B.R. 455, 457 (Bankr. S.D. Tex. 1992) (affording administrative expense treatment to a claim for an annual ad valorem tax that became due post-petition but prorating the claim between the pre- and post-petition periods and affording administrative priority only to the portion of the tax attributable to the post-petition period).

Cir. 1986) (noting that a lessor's administrative expense claim is limited to the "reasonable value of [the debtor's] use and occupancy" of the leased property in the postpetition period).

22.     The Leases were burdensome to the Debtors' estates.   The Debtors' operations at the Leases in the postpetition period consisted of maintaining and monitoring the Leases in accordance with applicable regulations.   This resulted in the Debtors incurring substantial expenses that exceeded the production revenue, if any, derived from the Leases during the Chapter 11 Cases.   Moreover, the Leases were saddled with decommissioning obligations, and the Debtors' interests in the Leases that had not previously terminated or been relinquished were either abandoned under the Plan or allocated to FWE I for decommissioning.

23.     Accordingly, the Leases did not provide any benefit to the Debtors' estates. The Disputed Claims, therefore, are not administrative expenses of the Debtors' estates.

### C.  Granting the DOI an Administrative Expense Claim Would Not Further the Purpose Underlying Section 503(b)(1)(A) of the Bankruptcy Code

24.     "The policy behind allowing administrative expense priority is to provide an incentive for creditors and vendors to continue doing business with the debtor in possession." *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 Bankr. LEXIS 1050, at *6-7 (Bankr. S.D. Tex. Mar. 18, 2014); *see also Whistler Energy II*, 931 F.3d at 442 ("Administrative priority serves to encourage third parties to provide necessary goods and services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid.") (internal quotation marks and citations omitted).   "Absent this incentive, third parties would be far more inclined to refrain from dealing with a debtor in bankruptcy, thereby harming other creditors."   *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 Bankr. LEXIS 1050, at *7. "This incentive is not required, however, when the relevant obligation pre-dates the bankruptcy or

when the debtor-in-possession does not want or need the services at issue." *Whistler Energy II*, 931 F.3d at 442.

25.      The Disputed Claims seek payment of minimum royalties that accrued prior to the Petition Date under Leases that, with two limited exceptions, were not produced in the postpetition period.  Treating this type of claim as administrative expense would not incentivize third parties to do business with a debtor or otherwise help facilitate a debtor's reorganization process.  Instead, it would unfairly elevate the DOI's interests over those of other unsecured creditors at the expense of such unsecured creditors.  Accordingly, the Disputed Claims do not qualify as administrative expenses of the Debtors' estates.

<u>**Reservation of Rights**</u>

26.      For the avoidance of doubt, this Objection is limited to the grounds stated herein.  In the event that any of the Disputed Claims are not reclassified as requested herein, the Plan Administrator hereby reserves its rights to object to such Disputed Claim on any other grounds.  In the event that any of the Disputed Claims are reclassified as requested herein, the Plan Administrator hereby reserves its right to object to the allowance of the Disputed Claim on any grounds (including, but not limited to, the timeliness of the reclassified Disputed Claims). Additionally, the Plan Administrator expressly reserves the right to amend, modify, or supplement the objections asserted herein and to file additional objections to the Disputed Claims or any other Administrative Expense Claim, as well as any other claims that may be asserted against the Debtors' estates.

27.      Nothing contained herein or any actions taken pursuant to such relief is intended to be or should be construed as: (a) an admission as to the validity of any Administrative Expense Claim or any other claim against a Debtor entity or such Debtor entity's estate; (b) a waiver of any party's right to dispute any Administrative Expense Claim or any other claim on

any grounds; (c) a promise or requirement to pay any Administrative Expense Claim or any other claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; or (e) a waiver of the Plan Administrator's rights under the Bankruptcy Code or any other applicable law.

### Separate Contested Matter

28.     To the extent that a response is filed regarding any Disputed Claim and the Plan Administrator is unable to resolve any such response, each such Disputed Claim, and the Objection as it pertains to such Disputed Claim, will constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Further, the Plan Administrator requests that any order entered by the Court regarding an objection or other reply filed in response to this Objection be deemed a separate order with respect to each Disputed Claim.

### Notice

29.     Notice of this Objection will be provided to: (a) all parties on the Master Service List and (b) the DOI. The Plan Administrator respectfully submits that such notice is sufficient and proper under the circumstances and that no other or further notice is required.

*[Remainder of the Page Intentionally Left Blank]*

WHEREFORE, the Plan Administrator respectfully requests that the Court enter the Proposed Order sustaining this Objection and granting the relief requested herein, and such other and further relief as the Court deems just and proper under the circumstances.

Dated:    September 13, 2022
          Houston, Texas

                                          /s/ Jessica Liou
                                         WEIL, GOTSHAL & MANGES LLP
                                         Alfredo R. Pérez (15776275)
                                         Clifford W. Carlson (24090024)
                                         700 Louisiana Street, Suite 1700
                                         Houston, Texas  77002
                                         Telephone: (713) 546-5000
                                         Facsimile:  (713) 224-9511
                                         Email: Alfredo.Perez@weil.com
                                                 Clifford.Carlson@weil.com

                                         -and-

                                         WEIL, GOTSHAL & MANGES LLP
                                         Matthew S. Barr (admitted *pro hac vice*)
                                         Jessica Liou (admitted *pro hac vice*)
                                         767 Fifth Avenue
                                         New York, New York 10153
                                         Telephone:  (212) 310-8000
                                         Facsimile:  (212) 310-8007
                                         Email:   Matt.Barr@weil.com
                                                  Jessica.Liou@weil.com

                                         *Attorneys for the Plan Administrator and*
                                         *certain Post-Effective Date Debtors*

**<u>Certificate of Service</u>**

I hereby certify that on September 13, 2022, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 _/s/  Jessica Liou_
Jessica Liou
