```
 1                IN THE UNITED STATES BANKRUPTCY COURT
 2                 FOR THE SOUTHERN DISTRICT OF TEXAS
 3                           HOUSTON DIVISION
 4  IN RE:                          §    CASE NO. 20-33948-11
                                    §    HOUSTON, TEXAS
 5  FIELDWOOD ENERGY, LLC,          §    THURSDAY,
                                    §    DECEMBER 22, 2022
 6       DEBTOR.                    §    9:00 A.M. TO 9:24 A.M.
 7                 EXPEDITED MOTION HEARING (VIA ZOOM)
 8              BEFORE THE HONORABLE MARVIN ISGUR
                   UNITED STATES BANKRUPTCY JUDGE
 9
10
11
12       APPEARANCES:                      SEE NEXT PAGE
13
                (Recorded via CourtSpeak; No log notes.)
14
15
16             (Audio distortion and echoing noted.)
17
18
19
20                     TRANSCRIPTION SERVICE BY:
21             JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                       935 Eldridge Road, #144
22                      Sugar Land, TX 77478
                            281-277-5325
23                  www.judicialtranscribers.com
24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.
```

```
 1                      APPEARANCES (VIA ZOOM):

 2

 3  FOR THE PLAN ADMINISTRATOR:    MINTZ LEVIN COHN FERRIS
                                   GLOVSKY AND POPEO, PC
 4                                 Joseph R. Dunn, Esq.
                                   3580 Carmel Mountain Road
 5                                 Suite 300
                                   San Diego, CA   92130
 6                                 858-314-1500

 7  ALSO PRESENT:                  DAVID M. DUNN,
                                   Plan Administrator
 8

 9  FOR MERIT ENERGY:              LOCKE LORD, LLP
                                   Philip G. Eisenberg, Esq.
10                                 600 Travis, Ste. 3400
                                   Houston, TX   77002
11                                 713-226-1304

12

13

14

15

16  (Please also see Electronic Appearances.)

17

18

19

20

21

22

23

24

25
```

```
 1        HOUSTON, TEXAS; THURSDAY, DECEMBER 22, 2022; 9:00 A.M.
 2             THE COURT:  All right.  Good morning.  We are here
 3   in the Fieldwood Energy matter.  It is Case No. 20-33948.
 4             Appearances should have been made electronically.
 5   Let me go ahead and ask Movant to press five star and give
 6   me an update on where we are.
 7             From area code 858-229-7401, who do we have?
 8             MR. DUNN:  Good morning, Your Honor.  Joseph Dunn
 9   of Mintz Levin, on behalf of the Plan Administrator, and the
10   Plan Administrator for the Record is also on the line.
11             THE COURT:  Good morning.
12             All right.  Tell me where we're going, Mr. Dunn.
13             MR. DUNN:  Thank you, Your Honor.
14             We were here on -- I apologize, I'm getting some
15   feedback on my end, Your Honor.  I'm not sure if you're
16   hearing that.
17             THE COURT:  I am not.  Do you want to maybe take
18   off your line and see if that maybe resolves it?
19             MR. DUNN:  I'll try to proceed.  We are here on
20   the Plan Administrator's --
21             THE COURT:  Just feel free to dial back in.  We're
22   having a technical problem.  I don't think there's a hurry.
23   Let's get you where you can hear right.
24             Let me ask if anyone else is having trouble or
25   hearing double feedback, in case it's on my end.
```

1           Mr. Eisenberg, I see you there.  What's your
2  phone --
3           MR. EISENBERG:  I think I hear Mr. Dunn's dog, but
4  I do have an echo on my line.
5           THE COURT:  Okay.  Mr. Dunn, should we just
6  reconnect everything and start over?  What do you want to
7  do?  It's up to you.
8           MR. DUNN:  Your Honor, I could proceed and ignore
9  the sound of my own voice.  I will try to push through.  If
10 anyone else is having trouble, I'm happy to reconnect.
11          We're here this morning, Your Honor, on the Plan
12 Administrator's Emergency Motion for Authority to Sell
13 Certain Assets post-effective date of Debtor's Fieldwood
14 Energy III.  The motion was filed on December 7th at
15 Docket 2719, along with the Declaration of the Plan
16 Administrator at Docket 2719-1.
17          First of all, we appreciate you hearing this
18 motion on an expedited basis.  But the motion and the
19 Declaration were served on the Master Service List by email
20 and first class mail, as reflected in the Affidavit of
21 Service filed at Docket 2721, and after the Court set this
22 hearing, a notice of the hearing was filed at Docket 2722
23 and was served not only on the Master Service List, but on
24 all creditors that had filed unsecured claims or were
25 scheduled as having unsecured claims.  And the Affidavit of

1 that service was filed at Docket 2724.
2      Your Honor, since that time, we've received no
3 objections to the relief requested in the motion and none
4 were filed on the Docket in the case.  We did receive
5 inquiries from Counsel for two parties, one being Counsel
6 for United Petroleum and the other being Mr. Eisenberg on
7 behalf of his client, seeking more information about the
8 context of the sale, of the Warrants and of the relief
9 requested in the motion.
10     And after productive conversations United Counsel
11 confirms that they don't have any opposition to the relief
12 requested and with respect to Mr. Eisenberg's client, I
13 understand that they also do not oppose the relief request,
14 but with one condition regarding the proceeds of the Warrant
15 that I'll get to in just a moment.
16     Your Honor, we filed the motion out of an
17 abundance of caution to see confirmation from the Court of
18 the Plan Administrator's authority under the Plan to
19 monetize the so-called GUC Warrants that were issued to
20 Fieldwood III on the effective date of this Plan.
21     These GUC Warrants were issued by QuarterNorth
22 Energy, or QNE, pursuant to the Plan, pursuant to the
23 Warrant Agreement, that was approved as part of the Plan,
24 and pursuant to an instruction letter dated as of the
25 effective date, which was attached as Exhibits 1 and 2 to

1  the Plan Administrator's Declaration.
2          But there's no question that the GUC Warrants were
3  issued to Fieldwood III on the effective date.  We've been
4  told by that post-effective date Debtor since that time.
5  That same day the Plan Administrator was appointed and in
6  that capacity there's a sole responsible person for
7  Fieldwood III in carrying out its wind down efforts under
8  the Plan.
9          Section 5.9 of the Plan, as we noted in our
10 motion, grants the Plan Administrator fairly broad authority
11 to take appropriate action to wind down the post-effective
12 date Debtors and to generally maximize potential
13 distributions to creditors, including disposing of the
14 Debtor's remaining assets consistent with the Plan, and to
15 do so without Court approval.
16         Section 10.2 of the Plan also authorizes the Plan
17 Administrator to use and acquire and dispose of property of
18 post-effective date Debtors in connection with winding down
19 those entities.
20         And because the GUC Warrants constitute property
21 of Fieldwood III, the Plan authorizes the Plan Administrator
22 to monetize those Warrants as appropriate to capture the
23 value of these assets that Fieldwood III can further reach
24 the objective of maximizing potential distribution.
25         And there's been no objection to that conclusion.

1  To the extent in the context of this Plan, the GUC Warrants
2  could not have been distributed to anyone else other than
3  Fieldwood III on the effective date and still cannot.
4          The asserted GUC claims in this case totals about
5  $28 billion.  They have not been reconciled as of the
6  effective date and are still subject to ongoing claims
7  reconciliation, including these claims objections at this
8  time.
9          Even if the claims pool was a fixed amount, Your
10 Honor, distribution of the Warrants would have been -- in
11 fact, they are relatively small number of Warrants, compared
12 to the size of the claims pool.  And even if an individual
13 Warrant could somehow be divided to account for a particular
14 dollar amount of an allowed GUC claim on a pro rata basis --
15 which we don't believe they can be divided -- there'd be no
16 market for a single Warrant or a fraction thereof.
17         And in contrast, the Plan Administrator and
18 Fieldwood III are in a position to accept the value of those
19 Warrants to market them as a larger block and actually
20 capture value from these assets through a timely
21 distribution -- excuse me, a timely disposition in
22 accordance with his business judgment.
23         And that's what the Plan Administrator has done.
24 He engaged in a marketing process for the Warrants, received
25 multiple bids, and was ultimately interested in negotiating

1  the terms of the sale to a third party who was willing to
2  purchase large portions of Warrants at a price that the Plan
3  Administrator believes is appropriate, is fair, and is
4  consistent with the objective of maximizing value.
5         Which brings me to the reason for the motion,
6  which was filed not to seek approval of this particular
7  sale, per se, but rather to obtain confirmation of the Plan
8  Administrator's general authority under the Plan with
9  respect to monetizing the GUC Warrants.
10        And we sought this relief on an expedited basis
11 for two reasons.  First, this particular buyer wants to
12 close the transaction before the end of the year, and the
13 Plan Administrator doesn't want to lose this buyer and the
14 purchase price and believes there is risk of the buyer
15 walking if the transaction is delayed.
16        But more importantly, given the Plan language that
17 we highlighted in the motion regarding the GUC Warrants, the
18 Plan Administrator thought it was prudent to seek an Order
19 confirming his authority out of an abundance caution, prior
20 to consummating that transaction.
21        And the language that we highlighted in the motion
22 is from Section 4.7 of the Plan.  It indicated that the GUC
23 Warrants would be issued on the effective date to holders of
24 allowed GUC claims on a pro rata basis.  And as I mentioned
25 earlier, the GUC Warrants were actually issued to

1  Fieldwood III on the effective date, which makes sense given
2  the impracticality of a pro rata issuance to a relatively
3  small number of Warrants to its significant claims pool
4  based on creditor claims that had still yet to be reviewed
5  or addressed.
6          And I think the way to reconcile that language in
7  Section 4.7 is really to look at the intentions that those
8  assets were to be a potential source of recovery for
9  unsecured creditors in Class 6 to 8.  Any residual value as
10 opposed to effective date Debtors after disposition of those
11 assets and the winding down of the entities, would inure to
12 the holders of allowed GUC claims through the residual
13 distributable value concept that's embodied in the Plan.
14         And again, there's been no objection to the Court
15 confirming the Plan Administrator's authority to monetize
16 the Warrants.
17         I will just note in our conversations with
18 Mr. Eisenberg, we did agree to modify the Order slightly to
19 provide that prior to the Plan Administrator's expending any
20 of the proceeds from the sale of GUC Warrants for
21 administrative purposes, that we would revisit the issue
22 with Mr. Eisenberg.  And to the extent that there was any
23 dispute, the parties could raise whatever that dispute is
24 with the Court.
25         But aside from that, my understanding is that

1  there is no objection to the relief that was requested in
2  the motion -- at least none that has been raised to our
3  attention.
4         And with that, Your Honor, I'll pause and see if
5  the Court has any questions.
6         THE COURT:  Let me hear from anyone else that
7  wishes to speak to the relief that's being sought today.  If
8  so, please press five star.
9         Mr. Eisenberg, your line remains open.  Anyone
10 else will need to press five star.
11        All right.  Mr. Eisenberg?
12        MR. EISENBERG:  Thank you, Your Honor.  Yes,
13 Philip Eisenberg on behalf of Merit Energy.
14        We are a general unsecured creditor in the case,
15 Your Honor.  And we got this motion.  It's on an emergency
16 basis.  It seeks several things.  One is to liquidate the
17 Warrants to turn them into cash because in the business
18 judgment of the Trustee -- of the Plan Administrator, this
19 is the right thing to do at this point in time.
20        The question that we had was:  How much are they
21 going to be sold for?  Who are they being sold to?  And what
22 is it that you are planning to do with the proceeds because
23 the Warrants were issued under the Plan for distribution
24 solely to the creditors.
25        And so we informally objected to the relief being

1  sought and we thought, well, we're not challenging the Plan
2  Administrator's business judgment here on the fact that it
3  makes sense to monetize these if a good opportunity comes.
4  　　　　　But we don't want the fact that the GUC Warrants
5  are being turned into cash in terms of nature and character
6  of what the proceeds are, and that is property that is being
7  held in trust essentially for the GUC creditors and not for
8  use to -- and to spend the money to wind down Fieldwood III
9  because that was not the Plan treatment and the Warrants got
10 issued to Fieldwood III, based on a Plan Supplement, but
11 that doesn't change the nature and character of what the
12 Plan treatment was for the GUC.  That was very plainly
13 disclosed, Your Honor, that these were issued for
14 distributions to the GUC creditors.
15 　　　　　So the point where we take exception is what use
16 could be made of the proceeds?  But today on an emergency
17 basis, we don't believe that we need to get to that.  The
18 emergency is:  We have a buyer.  We need to turn these into
19 cash.
20 　　　　　We don't have a problem with that, but we don't
21 want the turning them into cash to change the nature and
22 character of the funds themselves or the proceeds of them.
23 　　　　　And so Mr. Dunn agreed to modify the Order to
24 reflect that and to preserve the rights of all parties
25 without any prejudice to come back to seek to use the funds

1  to set a purpose, other than distribution to the GUC
2  creditors.
3  　　　　　And so that's why we filed our Exhibit List, Your
4  Honor.
5  　　　　　THE COURT:  Mr. Eisenberg, I actually disagree --
6  or maybe I agree with you too much.
7  　　　　　MR. EISENBERG:  Okay.
8  　　　　　THE COURT:  There's no way that this gets
9  reconciled by saying that the expenses incurred by Mr. Dunn,
10 other than expenses with respect to the actual liquidation
11 of the docs that charged to those funds.  I'm not going to
12 leave it an open question.
13 　　　　　If the Administrator wants the authority to do
14 this, the way to reconcile these things is to say, not that
15 these are being held in trust, which then gives people all
16 sorts of authority.  He is taking title in his name for them
17 as beneficiaries, not in his name as Trustee who can then
18 use it in accordance with the Trust.
19 　　　　　So I don't have a problem, of course, expenses in
20 getting this done and those are expenses that are going to
21 largely mirror or be vastly (indiscernible) frankly what
22 individuals would have if they had gotten the Warrants.
23 　　　　　So, you know, the expenses of filing a motion,
24 serving the motion, today's hearing, closing the deal, all
25 of that can get charged to it, but beyond that, nothing can

1  get charged to it.
2           Now, if you want to later come in and upset that
3  Order, Mr. Dunn, you can come in and seek that under Rule 59
4  or 60 or 9023 or 9024 or whatever rights you might have, but
5  I'm not going to do it today and leave it open when I don't
6  think there is ambiguity that it doesn't get spent on
7  general administrative expenses.
8           The issue I have is:  I don't understand -- and
9  maybe we can get testimony on this -- why we're not being
10 told who the purchaser is and why we're not being told what
11 the amount of the sale is.  If it were still in the
12 marketing stage, I would understand it, but it sounds like
13 you're done with marketing.  You have a particular purchaser
14 with a particular price, a particular name, and I'm not sure
15 why we're not being told that and that bothers me.
16          Mr. Dunn?
17          MR. DUNN:  Yes, I'm happy to address that, Your
18 Honor.
19          So first of all, just with respect to being still
20 in the marketing stage, we actually are because the block of
21 Warrants that is being sold to this potential purchaser is
22 not the full block of Warrants.  It's not the entirety of
23 the GUC Warrants and so there are still Warrants that are
24 subject to being sold.
25          The reason we have been, I suppose, ambiguous

1   about the purchase price or not really talked about the
2   purchase price in particular is because we don't want to
3   have the purchase price out there, number one, for the fact
4   that it could be setting a watermark for the other Warrants
5   that are subject to potential marketing and sale, and
6   obviously the Plan Administrator wants to maximize the value
7   that we get for those other Warrants.
8          And to be tied into a number on those other
9   Warrants because we talked about the purchase price of these
10  Warrants, I think is not prudent.
11         But secondly, we also -- if this transaction for
12  whatever reason does not close for the same reasons we don't
13  want to be slide into a purchase price that has been put out
14  there as something that the Plan Administrator would be
15  willing to accept.
16         So there's no reason for the ambiguity other than
17  wanting to maintain the opportunity to maximize the value of
18  these Warrants.  In the event that, you know, the Plan
19  Administrator reaches an agreement to sell the remaining
20  Warrants, which is to do, or have to resell these Warrants
21  because for whatever reason the buyer on this potential sale
22  doesn't close.
23         We don't anticipate that will be the case.  We
24  anticipate that they will close as soon as we get the relief
25  that was requested and we're able to close the sale before

1  they walk by year-end as they requested.

2              But that's the reason with respect to the purchase
3  price.

4              With respect to the identity of the sellers, our
5  understanding -- and Mr. Dunn, the Plan Administrator, went
6  through an independent broker for purposes of marketing
7  these Warrants.  We requested the Plan Administrator
8  obtained representation that this is not an insider QNE.
9  This is not a party that had been restricted in any way and
10 those are the elements that were important to the Plan
11 Administrator to make sure that, you know, these Warrants
12 were not being sold to a party that any type of non-public
13 information that would affect their willingness to purchase
14 the Warrants and at what price.

15             And so with respect to the identity of the
16 purchaser, this has all gone through an independent broker
17 with the representations that I just set forth regarding
18 non-insider status.

19             THE COURT:  So does Mr. Dunn know who the
20 purchaser is?

21             MR. DUNN:  No.  I don't believe that that has been
22 disclosed to the broker.

23             THE COURT:  I'm sorry, not been disclosed to the
24 broker or by the broker?

25             MR. DUNN:  Through the broker, yes, by the broker,

1  Your Honor.
2             THE COURT:  And what's your reaction to the issue
3  of no admin costs get paid, other than are directly related
4  to the sale of the GUC?
5             MR. DUNN:  Your Honor, our view as we said in the
6  motion is that as assets of the post-confirmation,
7  post-effective date Debtors, that the Plan already sets
8  forth what can be done with the assets of the post-effective
9  date Debtors.
10            And to the extent that there is any ambiguity or
11 that there's a need to use the proceeds for any type of
12 administrative expenses beyond of what the Court has laid
13 out and that if we need to come back to the Court to seek
14 relief on that point, then that's what the Plan
15 Administrator will have to do.
16            We do agree that for purposes of the
17 administrative expenses of marketing and selling the GUC
18 Warrants and bringing this motion, the items that Your Honor
19 detailed, that that would be appropriate to come out of the
20 proceeds of the Warrants.
21            THE COURT:  All right.  Let me hear if anyone --
22 first of all, I accept the representation about amount and
23 identity primarily, however, because you're not asking me to
24 bless any of that.
25            In the proposed Order you didn't ask me to bless

1  his business judgment at all and I am not questioning his
2  business judgment, but I don't think I would be in a
3  position to bless it without knowing that information.  But
4  given the limited nature of the relief that you're seeking
5  and the representations you're making, I don't have a
6  problem granting an Order that says he has the authority to
7  do this, which is what -- I think that's all you're asking
8  me to do.
9              If at some point you need more than that, you're
10 free to come back, but then we're going to need obviously
11 information before we can sustain the business judgment.  I
12 will require the Order to be amended.
13             Let me hear if Mr. Eisenberg or anyone else has
14 any objection to me going in and authorizing the direct
15 expenses of doing the deal as administrative expenses
16 against the proceeds, because I don't know what your intent
17 was on that, Mr. Eisenberg, and it just seems like that's
18 kind of a waste of time to come back if they're direct
19 expenses.  But nothing else would be authorized.
20             So let me hear from Mr. Eisenberg and then anyone
21 else that has a problem.
22             MR. EISENBERG:  No objection to including that as
23 part of the Order, Your Honor.
24             THE COURT:  Thank you.
25             Does anyone else wish to address the Order?

1      (No audible response.)
2                THE COURT:  All right.  Mr. Dunn, can I get you to
3  upload that today?
4                MR. DUNN:  Yes, Your Honor.  We will do so.
5                MR. EISENBERG:  Thank you, Your Honor.  Philip
6  Eisenberg.  Yeah, Philip Eisenberg, can I see the redline
7  order and comment on it before it gets uploaded?
8                THE COURT:  Sounds like a good idea.
9                MR. DUNN:  I'm happy to share with Mr. Eisenberg.
10               MR. EISENBERG:  Thank you.  Thank you, Mr. Dunn.
11               THE COURT:  Thank you all.
12               What I find if we have jurisdiction over this
13 under 28 USC Section 1334.  This is a core matter under
14 28 USC Section 157.  We are directly dealing with
15 application of the Plan and the ambiguity in the Plan and
16 its associated closing documents.
17               I find that the ambiguity should be resolved very
18 much in a way that Mr. Dunn has proposed with the one caveat
19 that I have mentioned, which is that there actually is at
20 this point the legal title owner to the GUC Warrants.
21               As to whether that was correct or incorrect at the
22 time that it was done is largely irrelevant at this point.
23               The best interpretation that I can give to this
24 ambiguity is that these GUC Warrants are something people
25 get to count on as a distribution passed through, either

1  directly by getting the GUC Warrants, or a pass-through of
2  the proceeds.
3             That's why I'm just saying they're not going to be
4  charged with anything other than the expense of actually
5  cashing in on the GUC Warrants.
6             But beyond that, I believe that we are
7  appropriately reconciling what the Plan says, what the
8  intent of it was.
9             No party is actually objecting to this.  I just
10 hope Mr. Dunn is given a lot of money for them.
11            So I guess we'll learn that at some point in the
12 future.  So if you'll upload the Order.  I find that the
13 matter should be approved.
14            Would you send a note to Ms. Do when you get it
15 filed so that I can get it pretty quickly?
16            MR. DUNN:  Yes, Your Honor.  We will do so.
17            THE COURT:  Okay.  Thank you.
18            I expect to enter it today, if I can get by
19 2:00 o'clock or so, something like that?
20            MR. DUNN:  That's doable.  Thank you.
21            THE COURT:  All righty.  Thank you.
22            Anyone else have anything you need to raise?
23 Otherwise, we will recess and I'll wish everybody a Happy
24 Holiday.
25            MR. DUNN:  Happy Holidays, Your Honor.

Case 20-33948   Document 2755   Filed in TXSB on 02/14/23   Page 20 of 20

20

```
1            MR. EISENBERG:  Happy Holidays, Your Honor.
2            THE COURT:  Thank you.  Bye-bye.
3       (Hearing adjourned at 9:24 a.m.)
4                       * * * * *
5          I certify that the foregoing is a correct
6  transcript to the best of my ability from the electronic
7  sound recording of the ZOOM/video/telephonic proceedings in
8  the above-entitled matter.
9  /S/ MARY D. HENRY
10 CERTIFIED BY THE AMERICAN ASSOCIATION OF
11 ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337
12 JUDICIAL TRANSCRIBERS OF TEXAS, LLC
13 JTT TRANSCRIPT #66829
14 DATE FILED:  FEBRUARY 14, 2023
15
16
17
18
19
20
21
22
23
24
25
```