UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY III LLC**, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Post-Effective Date Debtors.[1] | § | |

### MOTION TO FURTHER EXTEND THE
### DEADLINE TO FILE CLAIM OBJECTIONS TO SPECIFIED CLAIMS

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THIS PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **A HEARING HAS BEEN SET ON THIS MATTER ON MARCH 24, 2023 AT 9:30 A.M. (PREVAILING CENTRAL TIME) AND WILL BE HELD IN COURTROOM 404, 4TH FLOOR UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002. YOU MAY PARTICIPATE IN THE HEARING BY AUDIO/VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG DISTANCE CHARGES. ONCE**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494), Fieldwood Energy Inc. (4991), GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O of Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

> **CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS, AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The administrator of the chapter 11 plan (the "**Plan Administrator**") of the above-captioned Post-Effective Date Debtors (collectively, the "**Post-Effective Date Debtors**"), files this motion (the "**Motion**"), seeking an extension of the Claims Objection Deadline (as defined herein) through and including August 17, 2023 for certain unresolved claims described in this Motion, including those to be set forth in a separately filed schedule to be attached to the proposed order (collectively, the "**Specified Claims**"). In support of the Motion, the Plan Administrator respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

**BACKGROUND**

A.    **General Case Background**

2.    On August 3, 2020 and August 4, 2020, (as applicable, the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").

3.    On June 25, 2021, the Court entered the *Findings of Facts, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "**Confirmation Order**") confirming, as modified therein, the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "**Plan**").[2]

4.    On August 27, 2021, the Debtors filed that certain *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date.* [Docket No. 2016], setting forth that, *inter alia*, the Effective Date occurred on August 27, 2021 (the "**Effective Date**").

B.    **Plan Administrator**

5.    On the Effective Date, David Dunn of Province, Inc. was appointed to serve as the Plan Administrator pursuant to the Plan. *See* Plan § 5.9(b).

6.    The Plan Administrator is responsible, to the extent not otherwise provided for in the Plan, for carrying out and implementing all provisions of the Plan on behalf of the Debtors and

---

[2]   A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

3

the Post-Effective Date Debtors, including reviewing and reconciling all Claims asserted against the Debtors (including, but not limited to, Administrative Expense Claims, Other Secured Claims, Class 6A Unsecured Trade Claims, and Class 6B General Unsecured Claims) and making distributions on account of Allowed Claims. As more fully set forth therein, section 5.9(c) of the Plan vests the Plan Administrator with "all the rights, powers, authority, and duties on behalf of each of the Debtors and [the] Post-Effective Date Debtors [other than the Post-Effective Date FWE I Subsidiaries pursuant to section 5.9(a) of the Plan] . . . to carry out and implement all provisions of the Plan." In short, the Plan Administrator has been tasked with: (i) controlling and effectuating the Claims reconciliation process; (ii) settling or compromising any Disputed Claims (as defined in the Plan); and (iii) administering and adjusting the Debtors' claims register to reflect any such settlements or compromises.

C.  **GUC Warrant Motion**

7. On December 7, 2022, the Plan Administrator filed the *Plan Administrator's Emergency Motion for Authority to Sell Certain Assets of Post-Effective Date Debtor Fieldwood Energy III LLC* [Docket No. 2719] (the "**GUC Warrant Motion**") seeking authority to sell certain assets held by Post-Effective Date Debtor Fieldwood Energy III LLC, including the GUC Warrants (as defined in the Plan). The Plan Administrator sought the relief requested in the GUC Warrant Motion in order to maximize recoveries to holders of Allowed General Unsecured Claims and support the Plan Administrator's continued wind-down of the Post-Effective Date Debtors' estates.

8. On December 22, 2022, the Court entered the *Order Granting Plan Administrator's Emergency Motion for Authority to Sell Certain Assets of Post-Effective Date Debtor Fieldwood Energy III LLC* [Docket No. 2732] authorizing the Plan Administrator to (i) sell, assign, or otherwise dispose of the GUC Warrants; and (ii) use the proceeds from the disposition of the GUC Warrants for the benefit of holders of Allowed General Unsecured Claims.

4

**D.     Bar Dates**

9.     On October 13, 2020, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities [Docket Nos. 430–454].

10.    On October 14, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* [Docket No. 466] (the "**Bar Date Order**"), establishing certain dates and deadlines (each a "**Bar Date**") for filing proofs of claims in these chapter 11 cases (collectively, the "**Proofs of Claims**").  The Bar Date Order established: (a) November 25, 2020, as the Bar Date for all non-governmental entities to file Proofs of Claim, and (b) February 1, 2021, as the Bar Date for all governmental entities to file Proofs of Claim.

11.    On February 17, 2022, the Court entered the *Order Establishing Deadline for Filing Requests for Payment of Administrative Expense Claims and Procedures Relating Thereto and Approving Form and Notice Thereof* [Docket No. 2387], which, *inter alia*, established March 25, 2022 at 5:00 p.m. (Central Time) as the deadline (the "**Administrative Claim Bar Date**") for persons to assert Administrative Expense Claims against the Debtors.

**E.     Claims Objection Deadline**

12.    Section 7.5 of the Plan provides, "[a]ny objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time."  Plan § 7.5.  Accordingly, the deadline to object to Claims (the "**Claims Objection Deadline**") was originally February 23, 2022, which was extended to August 22, 2022 by the Court's order [Docket No. 2410] entered on March 16, 2022.  The Claims Objection Deadline was further extended to February 18, 2023 by the Court's order [Docket No. 2649] entered on September 1, 2022.

13. Pursuant to this Motion, the Plan Administrator seeks to further extend the Claims Objection Deadline, including for the Specified Claims, through and including August 17, 2023.

## F. Claims and Claims Reconciliation

14. A total of 1,138 Claims have been filed against the Debtors, representing an aggregate asserted value of over $46 billion. The Claims are comprised of the following categories: approximately $163 million in Administrative Expense Claims, approximately $17.5 billion in Claims that include secured Claims, and approximately $28.4 billion in unsecured Claims.

15. To date, the Plan Administrator and his professionals have made substantial progress in reviewing and reconciling the claims register. The Plan Administrator has prepared and filed objections to approximately 309 Claims pursuant to omnibus claim objections (collectively, the "**Omnibus Claim Objections**"). *See* Docket Nos. 2076, 2077, 2078, 2079, 2080, 2259, 2318, 2319, 2424, 2486, 2491, 2492, 2532, 2556, 2609, 2636, 2637, 2640, and 2660. Pursuant to the Court's orders approving the Omnibus Claim Objections, in whole or in part, an aggregate amount of 309 Claims (not including Claims that the Court has ordered to be reclassified), representing an aggregate asserted value of more than $3.9 billion, have been disallowed to date. *See* Docket Nos. 2210, 2261, 2262, 2293, 2301, 2324, 2347, 2348, 2378, 2456, 2543, 2544, 2545, 2579, 2656, 2657, 2681, 2682, and 2677.

## SUMMARY OF REMAINING SPECIFIED CLAIMS

16. The remaining Specified Claims fall under one or more of the following three classes under the Plan: (i) Administrative Expense Claims, (ii) Other Secured Claims, and (iii) unsecured Claims.

17. The Plan provides for payment in full in cash of all allowed Administrative Expense Claims and allowed Other Secured Claims (or other treatment rendering such claims unimpaired).

Unsecured claims fall into one of two classes (except for intercompany Claims and certain subordinated Claims): (a) Class 6A Unsecured Trade Claims, which will receive a pro rata share of $8,000,000 in cash to the extent allowed; and (b) Class 6B General Unsecured Claims, which will receive the receive the GUC Warrants and any Residual Distributable Value (each as defined in the Plan) to the extent allowed. The vast majority of the remaining Claims across the three classes are based on alleged plugging and abandonment and decommissioning obligations arising out of the Debtors' interests in certain oil and gas leases (each a "**P&A Claim**" and collectively, the "**P&A Claims**").

18. Given the interrelated nature of the remaining Specified Claims to be reconciled, the Debtors have—for descriptive and organizational purposes—organized the Specified Claims into categories and sub-categories based on the circumstances or legal bases allegedly giving rise to such Claims. Below is a brief summary of each category, the progress that has been made to date, and how the Plan Administrator intends to use the requested extension period to work towards resolving the Specified Claims in each class.

**A.     Other Secured Claims**

19. Over 300 Proofs of Claim asserting in excess of $17.5 billion in Other Secured Claims have been filed against the Debtors. To date, the Plan Administrator has resolved approximately 126 Proofs of Claim representing over $8.1 billion in asserted Other Secured Claims. The remaining Other Secured Claims were filed by (i) vendors of goods and services (the "**Vendors**") and (ii) holders of co-working interests under the Debtors' various leases and related agreements (the "**Co-working Interest Owners**").

   *i.     Vendors*

20. Approximately 47 Proofs of Claim were filed against the Debtors by Vendors asserting Other Secured Claims for work performed and materials furnished on behalf of the

7

Debtors (the "**Secured Vendor Claims**"), representing an aggregate amount of approximately $50 million. The Plan Administrator has resolved 40 Secured Vendor Claims, representing approximately $36 million in liabilities. Only 7 Secured Vendor Claims remain, representing an aggregate amount of approximately $14 million allegedly secured by statutory liens, common law liens, or possessory liens. The Plan Administrator disputes that each of the Secured Vendor Claims are secured for one or more of the following reasons: (i) any valid and perfected liens are junior to liens securing the Debtors' lenders' claims (which totaled approximately $1.8 billion), rendering such Vendor's claims wholly unsecured, (ii) the Vendor's alleged collateral lacks value, and/or (iii) the claimant has failed to provide adequate documentation evidencing the existence of a valid lien. The Plan Administrator has resolved nearly all of the Secured Vendor Claims and will attempt to resolve the remaining 7 Secured Vendor Claims consensually. To the extent a settlement cannot be reached, the Plan Administrator intends to move forward with an objection seeking to reclassify any such Secured Vendor Claim as unsecured.

        ii.    ***Co-working Interest Owners***

21. Approximately 256 Proofs of Claim were filed against the Debtors by Co-working Interest Owners asserting approximately $17.4 million in Other Secured Claims for joint interest billings, gas-balancing claims, indemnification for unpaid vendor invoices, and contingent decommissioning amounts. To date, the Plan Administrator has resolved 125 Other Secured Claims filed by Co-working Interest Owners, representing approximately $8 million in liabilities. The remaining 131 Other Secured Claims asserted by the Co-working Interest Owners have been complex and time-consuming to reconcile.

22. To the extent the Plan Administrator is unable to consensually resolve each of the remaining claims in this category, the Plan Administrator intends to object to such claims on the

basis (or bases) that such claim (i) has already been satisfied, (ii) is contingent and should be disallowed, (iii) arose from terminated leases for which no amounts remain due and owing, (iv) was assigned or allocated to another party, and/or (v) should be reclassified as unsecured.

### B.    Administrative Expense Claims

23.    Approximately $163 million in aggregate Administrative Expense Claims were asserted against the Debtors, falling into three general categories: (i) claims asserted by sureties that issued bonds on behalf of one or more of the Debtors (the "**Surety Providers**") for unpaid premiums and/or indemnity or reimbursement claims relating to decommissioning obligations; (ii) claims for alleged unpaid amounts owed to Co-working Interest Owners, and (iii) minimum royalty claims asserted by the United States Department of Interior ("**DOI**").

#### i.    *Sureties*

24.    Surety Providers asserted approximately $62 million in asserted Administrative Expense Claims against the Debtors for postpetition premium accruals and contingent amounts up to the penal sums of the applicable bonds.  Although the Plan Administrator disputes that the Claims asserted by the Surety Providers, including with respect to any unpaid premiums, are entitled to administrative expense priority, the Plan Administrator and his professionals have attempted to resolve such Claims consensually to try to avoid expending unnecessary funds on litigation.  To that end, the Plan Administrator has engaged in discussions with the Surety Providers regarding a consensual resolution of their asserted Administrative Expense Claims and other asserted Claims.  To the extent the parties cannot reach agreement, the Plan Administrator intends to prepare and file an omnibus objection seeking to reclassify the Administrative Expense Claims filed by the Surety Providers as prepetition unsecured Claims.

  ii. *Co-working Interest Owners*

  25. Approximately 27 Proofs of Claim were filed against the Debtors by the Co-working Interest Owners, asserting approximately $65 million in Administrative Expense Claims for, among other things, joint interest billings, rental fees, audit exception payments, imbalances, fees under the applicable joint operating agreements or other contracts, monitoring and maintenance expenses, performed decommissioning, and contingent decommissioning, all of which remain unresolved as of the date hereof.  Although the Plan Administrator has made significant progress in analyzing these Claims and engaged in extensive discussions with holders of Claims in this category, a significant amount of work remains to address the Co-working Interest Owners' Claims due to the complexity of the underlying agreements, the contingent nature of certain of the Claims asserted, and the incomplete information provided by certain of the claimants.  The Plan Administrator has attempted (and will continue) to seek a consensual resolution with each claimant.  To the extent an agreement cannot be reached, the Plan Administrator intends to file and prosecute objections to any such Claims.

  iii. *Department of Interior*

  26. The DOI filed 6 Proofs of Claim against the Debtors asserting approximately $821,000 in aggregate Administrative Expense Claims for minimum royalties and other expenses that allegedly came due under Outer Continental Shelf leases postpetition.  On September 13, 2022, the Plan Administrator filed an omnibus objection to the Claims filed by the DOI [Docket No. 2660] (the "**DOI Claims Objection**").  Over the past few months, the Plan Administrator has been engaged in settlement discussions with the DOI regarding resolution of its Administrative Expense Claims.  The Plan Administrator is hopeful that the parties will

consensually resolve the DOI Claims. However, to the extent the parties are unable reach an agreement, the Plan Administrator will move forward with the DOI Claims Objection.

**C.     General Unsecured Claims**

   *i.     Class 6A Unsecured Trade Claims*

27.     Approximately 85 Class 6A Unsecured Trade Claims were filed against the Debtors, asserting an aggregate amount in excess of $22 million. The Plan Administrator has worked diligently with his professionals to reconcile and satisfy (as appropriate) the Class 6A Unsecured Trade Claims in accordance with section 4.6 of the Plan by entering into Trade Agreements and stipulations regarding the satisfaction of such Claims. These efforts have resulted in the full resolution and/or satisfaction of 84 of the 85 Class 6A Unsecured Trade Claims, representing approximately $21.8 million in aggregate Claims. *See* Docket Nos. 2382, 2502. The one remaining Class 6A Unsecured Trade Claim asserts a $239,000 Claim.

   *ii.    Class 6B General Unsecured Claims*

28.     Class 6B General Unsecured Claims representing an aggregate amount of over $28.3 billion were filed against the Debtors. To date, the Plan Administrator has resolved 43 Class 6B General Unsecured Claims, representing approximately $4.5 billion in liabilities. The remaining Class 6B General Unsecured Claims were asserted by (i) Surety Providers, (ii) Co-working Interest Owners and predecessors in title to lease interests (the "**Predecessors**"), and (iii) the DOI.

   *a.    Surety Providers*

29.     Surety Providers filed approximately 93 Proofs of Claim against the Debtors representing over $6.7 billion in Class 6B General Unsecured Claims. As discussed above, the Plan Administrator and his professionals have engaged in extensive discussions with the Surety Providers in an attempt to reach a consensual resolution of their Claims. The Plan Administrator

intends to either (i) object to the contingent claims for up to the penal amounts of the applicable bond(s) on grounds that they should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code, or (ii) allow the liquidated portions of such Claims, as appropriate.

### b. Co-working Interest Owners and Predecessors

30. Approximately 201 Proofs of Claim were filed against the Debtors by the Co-working Interest Owners and Predecessors representing approximately $11.5 billion in Class 6B General Unsecured Claims. The Plan Administrator has worked diligently with his professionals to resolve 53 Co-working Interest Owner and Predecessors Claims, representing approximately $7.7 billion in liabilities. As discussed above, the remaining Claims asserted by the Co-working Interest Owners have proven to be particularly complex and time-consuming to resolve. The Plan Administrator continues to reconcile the remaining Class 6B General Unsecured Claims asserted by the Co-working Interest Owners and Predecessors, including by reviewing and analyzing the Debtors' prepetition agreements and engaging in active negotiations with claimants' counsel in order to resolve such claims in a consensual manner. The Plan Administrator intends to object to any remaining Claims in this category where a consensual resolution is not reached.

### c. Department of Interior

31. The DOI filed 8 Proofs of Claim against the Debtors asserting approximately $9.3 billion in aggregate Class 6B General Unsecured Claims for performance of decommissioning obligations. As discussed above, the Plan Administrator and DOI are engaged in ongoing settlement discussions and the Plan Administrator is hopeful that the parties will reach a global settlement that resolves all of the DOI claims (including its Administrative Expense Claims and Class 6B General Unsecured Claims).

**D.     Progress Since Last Extension**

32.    Since the Claims Objection Deadline was extended by the Court on September 1, 2022, the Plan Administrator has made significant progress in the Claims reconciliation efforts, and has objected to, reclassified, or otherwise reconciled 28 Claims, representing approximately $36 million in liabilities. Among other things, over the last 6 months, the Plan Administrator has (i) engaged in discussions with holders of outstanding Claims in an effort to reach consensual resolutions; (ii) obtained orders on five omnibus objections that (a) expunged or reduced approximately 94 Claims in the total approximate amount of $609,921,017 (not including unliquidated amounts) and (b) reclassified 8 Claims as General Unsecured Claims in the total approximate amount of $205,760; (iii) negotiated and entered into multiple stipulations expunging or reducing approximately 17 Claims in the total approximate amount of $26,490,984 (not including unliquidated amounts) and reclassifying 8 Claims in the total approximate amount of $15,861,499 as General Unsecured Claims; and (iv) undertaken extensive analysis and diligence of the remaining Claims.

33.    The majority of the Plan Administrator's time and effort has been spent working towards a resolution of the billions of dollars of P&A Claims related to approximately 264 Claims, which represent the largest subset of remaining Claims. As previously noted, the Plan Administrator's work on such claims has been complex and time-consuming for the reasons discussed above. Despite these challenges, the Plan Administrator has continued to gain a firm understanding of the P&A Claims, has engaged in ongoing discussions with holders of P&A Claims regarding potential resolutions of such Claims, and has asked holders of P&A Claims to provide updated estimates of the liquidated amounts of their Claims. An extension of the Claims Objection Deadline will further allow the parties to continue their discussions and progress towards a resolution or to otherwise proceed with claims objections.

**RELIEF REQUESTED**

34. The Plan Administrator submits that cause exists to extend the Claims Objection Deadline to August 17, 2023.

35. The volume and complexity of the remaining Claims warrant an extension of the Claim Objections Deadline with respect to the Specified Claims. Indeed, approximately 372 total Proofs of Claim asserted by 142 total claimants remain outstanding and many of the remaining Claims have been asserted by Surety Providers and Co-working Interest Owners for contingent or unliquidated decommissioning amounts. An extension with respect to the Specified Claims will allow the Plan Administrator to efficiently resolve or litigate the remaining Claims only where necessary. Further, although the Plan Administrator and his professionals have diligently progressed the Claims reconciliation efforts to date, the Plan Administrator has limited resources available and has been focused on conserving such resources for the benefit of all stakeholders in order to maximize recoveries for creditors. The Plan Administrator is seeking an extension of the Claims Objection Deadline so that he and his professionals can continue the Claims reconciliation efforts in the most cost-effective manner.

36. Based on the foregoing, the Plan Administrator respectfully requests a 180-day extension of the Claims Objection Deadline to complete reconciliation of the Specified Claims, through and including August 17, 2023.

**NOTICE**

37. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013 1(d).

Dated: February 18, 2023

    /s/  Jessica Liou
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
       Jessica.Liou@weil.com

*Attorneys for the Plan Administrator and certain Post-Effective Date Debtors*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

                                                                              */s/ Jessica Liou*
                                                                              Jessica Liou