UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY III LLC**, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Post-Effective Date Debtors.[1] | § | |
| | § | Re: Docket No. 2758 |

### DECLARATION OF DAVID M. DUNN
### IN SUPPORT OF MOTION TO FURTHER EXTEND THE
### DEADLINE TO FILE CLAIM OBJECTIONS TO SPECIFIED CLAIMS

Pursuant to 28 U.S.C. § 1746, I, David M. Dunn, solely in my capacity as the Plan Administrator, hereby declare as follows:

1.  I am a Director at Province, Inc., an industry-leading, nationally recognized consulting firm of senior business leaders specializing in financial advisory, corporate reorganization, and trustee-related services that enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

2.  I submit this Declaration in support of the *Motion to Further Extend the Deadline to file Claim Objections to Specified Claims* [Docket No. 2758], filed contemporaneously herewith

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494), Fieldwood Energy Inc. (4991), GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O of Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "Post-Effective Date FWE I Subsidiaries") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

(the "**Motion**")[2], pursuant to which I, as Plan Administrator, seek to extend the Claims Objection Deadline for the unresolved Specified Claims described therein through and including August 17, 2023.

3. Except as otherwise indicated, all facts set forth in this Declaration (or incorporated by reference herein) are based upon (i) my personal knowledge; (ii) my review of the docket, relevant documents, and the Debtors' or Post-Effective Date Debtors' books and records; and/or (iii) upon information supplied to me by the advisors to the Plan Administrator. If I were called to testify, I would testify competently to the facts set forth (and incorporated by reference) herein.

4. Below is (i) an overview of the claims reconciliation process, (ii) a description of the remaining Specified Claims, and (iii) a summary of the progress made since the prior extension.

## CLAIMS AND CLAIMS RECONCILIATION

5. A total of 1,138 Claims have been filed against the Debtors, representing an aggregate asserted value of over $46 billion. The Claims are comprised of the following categories: approximately $163 million in Administrative Expense Claims, approximately $17.5 billion in Claims that include secured Claims, and approximately $28.4 billion in unsecured Claims.

6. To date, my team and my advisors have made substantial progress in reviewing and reconciling the claims register. Objections to approximately 309 Claims have been prepared and filed pursuant to omnibus claim objections (collectively, the "**Omnibus Claim Objections**"). *See* Docket Nos. 2076, 2077, 2078, 2079, 2080, 2259, 2318, 2319, 2424, 2486, 2491, 2492, 2532, 2556, 2609, 2636, 2637, 2640, and 2660. Pursuant to the Court's orders approving the Omnibus Claim Objections, in whole or in part, an aggregate amount of 309 Claims (not including Claims

---

[2]  Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

2

that the Court has ordered to be reclassified), representing an aggregate asserted value of more than $3.9 billion, have been disallowed to date.  *See* Docket Nos. 2210, 2261, 2262, 2293, 2301, 2324, 2347, 2348, 2378, 2456, 2543, 2544, 2545, 2579, 2656, 2657, 2681, 2682, and 2677.

## SUMMARY OF REMAINING SPECIFIED CLAIMS

7. The remaining Specified Claims fall under one or more of the following three classes under the Plan: (i) Administrative Expense Claims, (ii) Other Secured Claims, and (iii) unsecured Claims.

8. The vast majority of the remaining Claims across the three classes are based on alleged plugging and abandonment and decommissioning obligations arising out of the Debtors' interests in certain oil and gas leases (each a "**P&A Claim**" and collectively, the "**P&A Claims**").

9. For descriptive and organizational purposes, the Specified Claims have been organized into categories and sub-categories based on the circumstances or legal bases allegedly giving rise to such Claims.  Below is a brief summary of each category, the progress that has been made to date, and how I intend to use the requested extension period to work towards resolving the Specified Claims in each class.

**A.      Other Secured Claims**

10. Over 300 Proofs of Claim asserting in excess of $17.5 billion in Other Secured Claims have been filed against the Debtors.  To date, my team and my advisors have resolved approximately 126 Proofs of Claim representing over $8.1 billion in asserted Other Secured Claims.  The remaining Other Secured Claims were filed by (i) vendors of goods and services (the "**Vendors**") and (ii) holders of co-working interests under the Debtors' various leases and related agreements (the "**Co-working Interest Owners**").

3

### i. Vendors

11. Approximately 47 Proofs of Claim were filed against the Debtors by Vendors asserting Other Secured Claims for work performed and materials furnished on behalf of the Debtors (the "**Secured Vendor Claims**"), representing an aggregate amount of approximately $50 million. My team and my advisors have resolved approximately 40 Secured Vendor Claims, representing approximately $36 million in liabilities. Only 7 Secured Vendor Claims remain, representing an aggregate amount of approximately $14 million allegedly secured by statutory liens, common law liens, or possessory liens. I dispute that each of the Secured Vendor Claims are secured for one or more of the following reasons: (i) any valid and perfected liens are junior to liens securing the Debtors' lenders' claims (which totaled approximately $1.8 billion), rendering such Vendor's claims wholly unsecured, (ii) the Vendor's alleged collateral lacks value, and/or (iii) the claimant has failed to provide adequate documentation evidencing the existence of a valid lien. My team and my advisors have resolved nearly all of the Secured Vendor Claims and will attempt to resolve the remaining 7 Secured Vendor Claims consensually. To the extent a settlement cannot be reached, I intend to move forward with an objection seeking to reclassify any such Secured Vendor Claim as unsecured.

### ii. Co-working Interest Owners

12. Approximately 256 Proofs of Claim were filed against the Debtors by Co-working Interest Owners asserting approximately $17.4 million in Other Secured Claims for joint interest billings, gas-balancing claims, indemnification for unpaid vendor invoices, and contingent decommissioning amounts. To date, my team and my advisors have resolved 125 Other Secured Claims filed by Co-working Interest Owners, representing approximately $8 million in

liabilities. The remaining 131 Other Secured Claims asserted by the Co-working Interest Owners have been complex and time-consuming to reconcile.

13. To the extent my team and my advisors are unable to consensually resolve each of the remaining claims in this category, I intend to object to such claims on the basis (or bases) that such claim (i) has already been satisfied, (ii) is contingent and should be disallowed, (iii) arose from terminated leases for which no amounts remain due and owing, (iv) was assigned or allocated to another party, and/or (v) should be reclassified as unsecured.

**B.        Administrative Expense Claims**

14. Approximately $163 million in aggregate Administrative Expense Claims were asserted against the Debtors, falling into three general categories: (i) claims asserted by sureties that issued bonds on behalf of one or more of the Debtors (the "**Surety Providers**") for unpaid premiums and/or indemnity or reimbursement claims relating to decommissioning obligations; (ii) claims for alleged unpaid amounts owed to Co-working Interest Owners, and (iii) minimum royalty claims asserted by the United States Department of Interior ("**DOI**").

   *i.* *Sureties*

15. Surety Providers asserted approximately $62 million in asserted Administrative Expense Claims against the Debtors for postpetition premium accruals and contingent amounts up to the penal sums of the applicable bonds. Although I dispute that the Claims asserted by the Surety Providers, including with respect to any unpaid premiums, are entitled to administrative expense priority, my team and my advisors have attempted to resolve such Claims consensually to try to avoid expending unnecessary funds on litigation. To that end, my team and my advisors have engaged in discussions with the Surety Providers regarding a consensual resolution of their asserted Administrative Expense Claims and other asserted Claims. To the extent the parties

cannot reach agreement, I intend to prepare and file an omnibus objection seeking to reclassify the Administrative Expense Claims filed by the Surety Providers as prepetition unsecured Claims.

### ii. Co-working Interest Owners

16. Approximately 27 Proofs of Claim were filed against the Debtors by the Co-working Interest Owners, asserting approximately $65 million in Administrative Expense Claims for, among other things, joint interest billings, rental fees, audit exception payments, imbalances, fees under the applicable joint operating agreements or other contracts, monitoring and maintenance expenses, performed decommissioning, and contingent decommissioning, all of which remain unresolved as of the date hereof. Although my team and my advisors have made significant progress in analyzing these Claims and engaged in extensive discussions with holders of Claims in this category, a significant amount of work remains to address the Co-working Interest Owners' Claims due to the complexity of the underlying agreements, the contingent nature of certain of the Claims asserted, and the incomplete information provided by certain of the claimants. My team and my advisors have attempted (and will continue) to seek a consensual resolution with each claimant. To the extent an agreement cannot be reached, I intend to file and prosecute objections to any such Claims.

### iii. Department of Interior

17. The DOI filed 6 Proofs of Claim against the Debtors asserting approximately $821,000 in aggregate Administrative Expense Claims for minimum royalties and other expenses that allegedly came due under Outer Continental Shelf leases postpetition. On September 13, 2022, I filed an omnibus objection to the Claims filed by the DOI [Docket No. 2660] (the "**DOI Claims Objection**"). Over the past few months, I, through my advisors, have been engaged in settlement discussions with the DOI regarding resolution of its Administrative

Expense Claims. I am hopeful the DOI Claims can be consensually resolved. However, to the extent the parties are unable reach an agreement, I will move forward with the DOI Claims Objection.

**C.     General Unsecured Claims**

*i.     Class 6A Unsecured Trade Claims*

18.     Approximately 85 Class 6A Unsecured Trade Claims were filed against the Debtors, asserting an aggregate amount in excess of $22 million. My team and my advisors have worked to reconcile and satisfy (as appropriate) the Class 6A Unsecured Trade Claims in accordance with section 4.6 of the Plan by entering into Trade Agreements and stipulations regarding the satisfaction of such Claims. These efforts have resulted in the full resolution and/or satisfaction of 84 of the 85 Class 6A Unsecured Trade Claims, representing approximately $21.8 million in aggregate Claims. *See* Docket Nos. 2382, 2502. The one remaining Class 6A Unsecured Trade Claim asserts a $239,000 Claim.

*ii.     Class 6B General Unsecured Claims*

19.     Class 6B General Unsecured Claims representing an aggregate amount of over $28.3 billion were filed against the Debtors. To date, my team and my advisors have resolved 43 Class 6B General Unsecured Claims, representing approximately $4.5 billion in liabilities. The remaining Class 6B General Unsecured Claims were asserted by (i) Surety Providers, (ii) Co-working Interest Owners and predecessors in title to lease interests (the "**Predecessors**"), and (iii) the DOI.

*a.     Surety Providers*

20.     Surety Providers filed approximately 93 Proofs of Claim against the Debtors representing over $6.7 billion in Class 6B General Unsecured Claims. As discussed above, my team and my advisors have engaged in extensive discussions with the Surety Providers in an

7

attempt to reach a consensual resolution of their Claims. I intend to either (i) object to the contingent claims for up to the penal amounts of the applicable bond(s) on grounds that they should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code, or (ii) allow the liquidated portions of such Claims, as appropriate.

### b. Co-working Interest Owners and Predecessors

21. Approximately 201 Proofs of Claim were filed against the Debtors by the Co-working Interest Owners and Predecessors representing approximately $11.5 billion in Class 6B General Unsecured Claims. My team and my advisors have worked to resolve 53 Co-working Interest Owner and Predecessors Claims, representing approximately $7.7 billion in liabilities. As discussed above, the remaining Claims asserted by the Co-working Interest Owners have proven to be particularly complex and time-consuming to resolve. We will continue to reconcile the remaining Class 6B General Unsecured Claims asserted by the Co-working Interest Owners and Predecessors, including by reviewing and analyzing the Debtors' prepetition agreements and engaging in active negotiations with claimants' counsel in order to resolve such claims in a consensual manner. I intend to object to the remaining Claims in this category where a consensual resolution is not reached.

### c. Department of Interior

22. The DOI filed 8 Proofs of Claim against the Debtors asserting approximately $9.3 billion in aggregate Class 6B General Unsecured Claims for performance of decommissioning obligations. As discussed above, ongoing settlement discussions are underway with the DOI and I am hopeful that the parties will reach a global settlement that resolves all of

the DOI claims (including its Administrative Expense Claims and Class 6B General Unsecured Claims).

## PROGRESS SINCE LAST EXTENSION

23. Since the Claims Objection Deadline was extended by the Court on September 1, 2022, my team and my advisors have objected to, reclassified, or otherwise reconciled 28 Claims, representing approximately $36 million in liabilities. Among other things, over the last 6 months, my team and my advisors have (i) engaged in discussions with holders of outstanding Claims in an effort to reach consensual resolutions; (ii) obtained orders on five omnibus objections that (a) expunged or reduced approximately 94 Claims in the total approximate amount of $609,921,017 (not including unliquidated amounts) and (b) reclassified 8 Claims as General Unsecured Claims in the total approximate amount of $205,760; (iii) negotiated and entered into multiple stipulations expunging or reducing approximately 17 Claims in the total approximate amount of $26,490,984 (not including unliquidated amounts) and reclassifying 8 Claims in the total approximate amount of $15,861,499 as General Unsecured Claims; and (iv) undertaken extensive analysis and diligence of the remaining Claims.

24. The majority of time and effort has been spent working towards a resolution of the billions of dollars of P&A Claims related to approximately 264 Claims, which represent the largest subset of remaining Claims. As previously noted, my team and my advisors' work on such claims has been complex and time-consuming for the reasons discussed above. Despite these challenges, we have continued to gain a firm understanding of the P&A Claims, have engaged in ongoing discussions with holders of P&A Claims regarding potential resolutions of such Claims, and have asked holders of P&A Claims to provide updated estimates of the liquidated amounts of their

Claims. An extension of the Claims Objection Deadline will further allow the parties to continue their discussions and progress towards a resolution or to otherwise proceed with Claims objections.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: February 18, 2023

*/s/ David M. Dunn*
David M. Dunn

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

                                                     */s/ Jessica Liou*
                                                     Jessica Liou