United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 08, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re FIELDWOOD ENERGY III LLC, *et al.* § § § | |
| Debtors. § § | CIVIL ACTION NO. 4:21-CV-2201 |
| NORTH AMERICAN SPECIALITY § INSURANCE COMPANY, *et al.* § § § | BANKRUPTCY CASE NO. 20-33948 |
| Appellants. § | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal. The Appellants are Swiss Re Corporate Solutions America Insurance Company, formerly known as North American Specialty Insurance Company ("NAS"), Lexon Insurance Company, Ironshore Indemnity Inc., and Ironshore Specialty Insurance Company (collectively, "Lexon"). The Appellees are Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy Inc., GOM Shelf LLC, and FW GOM Pipeline, Inc. The Debtors are Fieldwood Energy LLC and its debtor affiliates.

The Appellants seek to reverse the portion of the Bankruptcy Court's *Findings of Fact, Conclusions of Law, and Order (1) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors, and (2) Granting Related Relief* (the "Confirmation Order") that pertains to the sale of the Debtor's oil and gas assets absent certain subrogation rights held by Appellants. *In re Fieldwood Energy LLC*, No. 20-33948

(MI), 2021 WL 2853151 (Bankr. S.D. Tex. June 25, 2021). The Court **AFFIRMS** the bankruptcy court's judgment.[1]

## I. BACKGROUND

Fieldwood Energy LLC, an oil and gas exploration and production company that operated in the Gulf of Mexico, and its debtor affiliates filed for chapter 11 bankruptcy in 2020. Extensive negotiations with stakeholders, including federal agencies, lenders, and certain predecessor owners, produced a chapter 11 plan (the "Plan"). The Plan outlines a series of transactions, including:

- the sale of certain Debtor assets to a new entity (the "Credit Bid Purchaser") for aggregate consideration of approximately $1.03 billion (the "Credit Bid Transaction");

- two divisive mergers of Fieldwood Energy LLC after the consummation of the Credit Bid Transaction;

- the cancellation of the Debtors' debt;

- the abandonment of certain Debtor assets;

- the issuance of warrants and new equity at the Credit Bid Purchaser's holding company parent to some of the Debtor's creditors; and

- the merger and dissolution of various Debtor entities. (ROA.5791-93)

---

[1] Southern District of Texas bankruptcy case number 20-33948. Any docket citations that do not include the case number are from this docket, Southern District of Texas civil action number 4:21-CV-2201.

The Plan was amended several times over the course of negotiations. The subrogation rights of companies that issued surety bonds to the Debtors (the "Sureties") became a point of contention during the amendment process. Certain Sureties, objecting to the Bankruptcy Court's exercise of Bankruptcy Code provisions to strip certain subrogation rights against the Credit Bid Purchaser, sought but did not obtain a stay of the Bankruptcy Court's Confirmation Order. (ROA.18222-18316).

The Bankruptcy Court's Confirmation Order ultimately provided for the sale of Debtor's assets to the Credit Bid Purchaser, and the allocation of other Debtor assets to post-merger entities, "free and clear of all Liens, [] Claims, charges, Interests, or other encumbrances"—including the subrogation rights the Sureties sought to preserve. *In re Fieldwood*, 2021 WL 2853151 at *13.

The Confirmation Order further provides:

> For the avoidance of doubt, the Non-Apache Sureties shall not be entitled, under any circumstances, to claim a right of subrogation against the Debtors, the Post-Effective Date Debtors, FWE I, any FWE Additional Entity or NewCo and its subsidiaries (including Credit Bid Purchasers), unless such subrogation rights, if any, relate to obligations that both (x) accrue post-Effective Date and (y) arise from post-Effective Date activity and, with respect NewCo and its subsidiaries (including Credit Bid Purchasers), relates to the Credit Bid Acquired Interests.

*In re Fieldwood*, 2021 WL 2853151 at *38.

The Bankruptcy Court entered its Confirmation Order on June 25, 2021. A number of the transactions outlined in the Plan have been undertaken. (Dkt. 4 at 19-23).

## II. BANKRUPTCY APPEALS

Federal district courts have jurisdiction to hear appeals from the "final judgments, orders, and decrees" of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003).

## III. ANALYSIS

### A. The appeal is statutorily moot.

Appellees argue that Appellants' challenges to the Confirmation Order are statutorily moot under section 363(m) of the Bankruptcy Code because Appellants failed to obtain a stay of the Confirmation Order pending appeal. 11 U.S.C. § 363(m). (Dkt. 38 at 22-31). In response, Appellants argue that their appeal is not statutorily moot because the sections of the Confirmation Order challenged by Appellants (1) were not integral to the sale of Debtor's assets, therefore (2) section 363(m) does not apply. (Dkt. 9 at 18-23).[2] Appellants also argue section 363(m) does not apply because the Credit Bid Purchaser is not a good-faith purchaser under that provision. (Dkt. 36 at 45-46). Alternatively, Appellants argue that this Court can review their challenges to the Confirmation Order

---

[2] Appellants initially briefed their arguments regarding mootness in their response to Appellees' motion to dismiss, then incorporated those arguments by reference into their Appellants' Brief. (Dkt. 36 at 12-13).

regardless of whether the challenged sections are deemed to have been integral to the sale of Debtor's assets because the Bankruptcy Court's stripping of Appellants' subrogation rights was clearly erroneous. (Dkt. 9 at 14). The Court agrees with Appellees that the appeal is statutorily moot.

Section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). "Section 363(m) patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal." *Gilchrist v. Westscott (In re Gilchrist)*, 891 F.2d 559, 560 (5th Cir.1990). "By providing good faith purchasers with a final order and removing the risks of endless litigation over ownership, Section 363(m) 'allows bidders to offer fair value for estate property[,]' which 'greatly benefits both the debtor and its creditors.'" *Energytec*, 739 F.3d at 219 (5th Cir. 2013) (quoting *Hazelbaker v. Hope Gas, Inc. (In re Rare Earth Minerals)*, 445 F.3d 359, 363 (4th Cir. 2006)).

Under Fifth Circuit law, section 363(m) only applies when the challenged provision is "integral to the sale" of the Debtor's assets. *In re Energytec, Inc.*, 739 F.3d 215, 220 (5th Cir. 2013). In *Energytec*, the Fifth Circuit adopted a sister circuit's standard for determining when a challenged provision is "integral to the sale" of a debtor's assets: when "the provision is so closely linked to the agreement governing the sale that modifying or

reversing the provision would adversely alter the parties' bargained-for exchange." 739 F.3d at 220 (quoting *In re Trism, Inc.*, 328 F.3d 1003, 1007 (8th Cir. 2003)). Thus, because Appellants failed to obtain a stay of the Confirmation Order as required under section 363(m), the question of whether Appellants' challenges to the Plan are statutorily moot hinges upon whether the provisions challenged by Appellants are "integral to the sale" of Debtor's assets. The record reflects this to be the case.

On July 6, 2021, the Bankruptcy Court conducted a hearing regarding the motion for a stay filed by now-Appellants Lexon and NAS, among others. (ROA.18222-18316). During the hearing, the Bankruptcy Court heard testimony from Michael Dane, the Chief Executive Officer of QuarterNorth Energy LLC, one of the entities formed to purchase certain Debtor assets. (ROA.18222-18277). Mr. Dane testified that purchasing Debtor's assets "free and clear" of Appellants' subrogation rights was "paramount to [the Credit Bid Purchaser entities'] consideration of how they would be willing to proceed with purchasing [Debtor's] assets and contributing capital for all purposes of the plan." (ROA.18244). Mr. Dane further testified that making the changes requested by the Sureties would "cause great pause and concern" to the Credit Bid Purchaser entities. (ROA.18245).

The Bankruptcy Court accepted Mr. Dane's testimony and found that "the deal is unlikely to close if we change it, modify our order, and that the cost would be approximately $350 million to the estate." (ROA.18314). The Court then denied the request for a stay and alternatively set the bond amount at $350 million if a stay were to be granted on appeal. (ROA.18315). In light of the Bankruptcy Court's express findings, and the size of the bond set by the Bankruptcy Court, the Court finds that the record reflects the

Bankruptcy Court's clear belief that the provisions challenged by Appellants here were "integral to the sale" of Debtor's assets.

After reviewing the record, the Court concludes that this finding by the Bankruptcy Court—that the provisions challenged by Appellants here were "integral to the sale" of Debtor's assets—is not clearly erroneous. "A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The Fifth Circuit has emphasized that, under the "clearly erroneous" standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 309 (quotation marks omitted). For the reasons stated above, the Court finds that the Bankruptcy Court had good cause to accept as valid Mr. Dane's concerns that a failure to purchase Debtors' assets free and clear of Appellants' subrogation claims would jeopardize the sale. The record further reflects the Bankruptcy Court's belief that the Government would have objected to the Plan had the sale to the Credit Bid Purchaser not been consummated, which would have resulted in the Government "veto[ing] the Plan on an environmental bas[i]s." (ROA.18012). The Bankruptcy Court's findings were supported by the record and will not be disturbed on appeal.

The Court also rejects Appellants' argument that the section 363(m) does not apply because the Credit Bid Purchaser was not a good-faith purchaser under that provision. The Sureties waived that argument by failing to object to the Bankruptcy Court's findings that the Credit Bid Purchaser was a good-faith purchaser. (ROA.18109-10), *see In re Lothian*

*Oil Inc.*, 650 F.3d 539, 542 (5th Cir. 2011) (argument raised "for the first time on appeal . . . is waived"). In any event, the Bankruptcy Court's findings that the Credit Bid Purchaser acted in good faith were supported by the record and thus correct as a matter of law.

Appellants' alternative argument—that even if section 363(m) applies, this Court should review the challenges to the Confirmation Order because the Court's Confirmation Order itself is clearly erroneous—also fails. Section 363(m) provides the sole process for challenging a confirmation order: obtaining a stay of the ruling before presenting the challenge to a reviewing court. "[A] failure to obtain a stay is fatal to a challenge of a bankruptcy court's authorization of the sale of property." *In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001). Allowing parties that did not obtain a stay to bring a general clear-error objection to a Confirmation Order would functionally invalidate the stay requirement in section 363(m). The Court cannot countenance this.

Thus, because the provisions challenged by Appellants were "integral to the sale" of Debtor's assets, and because Appellants failed to obtain a stay of the Confirmation Order, Appellants' challenges to the Confirmation Order are moot under section 363(m).

### B. The appeal is equitably moot.

Appellees argue that Appellant's challenges to the Confirmation Order are also equitably moot under Fifth Circuit caselaw. (Dkt. 38 at 31-33). Appellants argue that their challenges are not equitably moot because one of the factors of the equitable mootness standard is not met here. (Dkt. 9 at 23-28). The Court agrees with Appellees that the appeal is equitably moot.

The equitable mootness doctrine "allows courts to abstain from appeals of plan confirmation orders, allowing the interrelated web of parties to rely on a final decision." *Matter of Sneed Shipbuilding, Inc.*, 916 F.3d 405, 408 (5th Cir. 2019) (citation omitted). "For the doctrine of equitable mootness to apply, the Court must determine: (i) whether a stay has been obtained, (ii) whether the plan has been substantially consummated, and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re SI Restructuring, Inc.*, 542 F.3d 131, 136 (5th Cir. 2008) (citation and internal quotation marks omitted). Appellants have conceded the first two factors—*i.e.*, that a stay has not been obtained and that the Plan has been substantially consummated. (Dkt. 9 at 25-27). Thus, the question of whether Appellants' challenges to the Plan are equitably moot hinges upon whether Appellants' requested relief "would affect the rights of parties not before the court or the success of the plan." *Id.*

The Fifth Circuit has found that requested relief would affect the rights of parties not before the court when "transactions have been . . . consummated by parties in reliance on the fact that the Plan has been implemented and no stay sought." *Matter of Ultra Petroleum Corp.*, No. 21-20049, 2022 WL 989389, at *4 (5th Cir. Apr. 1, 2022). The Fifth Circuit has also found that the final prong of the equitable mootness analysis is met when the requested relief would "have a far-reaching impact," when "it would be difficult to maintain anything resembling the status quo" if the requested relief were granted, and if the requested relief "would affect numerous complex financial transactions." *In re ASARCO L.L.C.*, 401 F. App'x 914, 917 (5th Cir. 2010).

The Court finds that granting Appellants' requested relief would affect both the rights of parties not before the Court and the success of the Plan. As discussed above, the Bankruptcy Court made clear findings that modifying the Confirmation Order as requested by the Sureties would likely have jeopardized the sale of the Debtors' assets, which in turn could have caused the Government to exercise its "veto" of the Plan on environmental grounds. *See supra*. Thus, an attempt to modify the Plan at this stage would present a grave threat to the success of the Plan—indeed, it could unravel the Plan entirely.

Furthermore, it logically follows that, because (1) a stay of the Confirmation Order was not obtained and (2) the Plan has been substantially consummated, the rights of parties not before the Court who have relied on the terms of Plan would be affected by an action that could jeopardize the Plan. *See In re Blast Energy Servs., Inc.*, 593 F.3d 418, 424 (5th Cir. 2010) ("[I]f no stay has been obtained and the plan has been substantially consummated, the more likely the third prong indicates equitable mootness.").

Thus, because (1) Appellants failed to obtain a stay, (2) the Plan has been substantially consummated, and (3) Appellants requested relief would affect the rights of parties not before the Court and the success of the Plan, Appellants' challenges to the Plan are equitably moot.

## IV. CONCLUSION

The Court **AFFIRMS** the Bankruptcy Court's judgment.

SIGNED at Houston, Texas, on March 7, 2023.

_George C. Hanks Jr._
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE