# EXHIBIT 35

7/10/2023 1:29 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 77352835
By: Bonnie Lugo
Filed: 7/10/2023 1:29 PM

CAUSE NO. 2023-38238

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, HCC INTERNATIONAL INSURANCE COMPANY PLC, PHILADELPHIA INDEMNITY INSURANCE COMPANY and EVEREST REINSURANCE COMPANY, | § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs*, | § § | HARRIS COUNTY, TEXAS |
| vs. | § § | |
| APACHE CORPORATION, | § § | 281st JUDICIAL DISTRICT |
| *Defendant*. | § | |

### PLAINTIFFS' TEMPORARY INJUNCTION BRIEF REGARDING SURETYSHIP

Plaintiff Zurich American Insurance Company ("**Zurich**"), Plaintiff HCC International Insurance Company PLC ("**HCCI**"), Plaintiff Philadelphia Indemnity Insurance Company ("**Philadelphia**"), and Plaintiff Everest Reinsurance Company ("**Everest**") (collectively the "**Sureties**") file this Brief regarding suretyship in conjunction with the July 11, 2023 hearing on Plaintiffs' request for a temporary injunction.

## I.   INTRODUCTION

To assist the Court in evaluation of the legal issues relevant to the Sureties' claims as they relate to and impact the Sureties' request for a temporary injunction, the Sureties respectfully submit this Brief addressing the nature of suretyship and well-established surety law underpinning the relief sought by the Sureties.  In conjunction with the factual evidence that will be submitted at the hearing, established Texas law, as well as the Restatement (Third) of the Law of Suretyship and Guaranty and law from around the country, supports the relief sought by the Sureties in this action.  Texas law prevents an obligee[1] from enforcing the terms of a surety bond if its actions

---

[1] "Obligee" is a term commonly used to refer to the party that is the beneficiary of the bond—in this case, Apache Corporation ("**Apache**").

undermine the integrity of the obligation assured.  Specifically, if an obligee takes actions that increase the surety's risk, prejudice the surety's rights to collateral (both collateral against which it may recover and collateral that may protect it from a claim in the first instance), or otherwise acts in a way that increases the surety's loss or risk of loss, the obligee cannot thereafter enforce the terms of the bond.  While these claims may be asserted as a defense to claims on bonds, they also may be asserted to seek a judicial determination that the bonds have been voided and/or discharged.  *See*, *e.g.*, *St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.*, 646 F. 2d 1064, 1073 (5th Cir. 1981) ("[A]ssuming the suretyship agreement was initially enforceable, the creditor may thereafter lose the right to demand its coverage if he impairs any collateral to which the surety could look for reimbursement.").

## II. BASIC LAW OF SURETYSHIP

### A. Nature and Scope of the Surety Relationship

Suretyship is an ancient undertaking long recognized and long favored by the law. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 (1962).  At its most basic level, a surety is defined as one who contracts to answer for the debt or default of another.  *See*, *e.g.*, *Colonial Am. Cas. & Sur. Co. v. Scherer*, 214 S.W.3d 725, 730 (Tex. App.—Austin 2007, no pet.) ("The undertaking of [a] surety is to make good any breach of official duty of its principal.") (citation omitted).

#### 1. Suretyship is a Tripartite Relationship

The surety relationship has unique characteristics unlike the relationship between a debtor and most creditors.  In general, as consideration for the surety's agreement to issue a bond, its principal[2] agrees to indemnify the surety against loss under the bond.  The principal's obligation

---

[2] "Principal" refers to the primary obligor under a bond, which is the party whose obligations are assured by the bond.  In this case, Fieldwood I/GOM Shelf is the "principal."

to indemnify the surety is memorialized by the former's execution and delivery of an indemnity agreement to the issuing surety. The principal's obligation to indemnify also arises by operation of law upon the issuance of the bond. Unlike other contracts, a surety bond is a written instrument that creates a tripartite relationship. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 7*, 908 S.W.2d 415, 419 (Tex. 1995); *see also Penn. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945 (8th Cir. 2004) ("Bonds are contracts, and suretyship status is created through a tripartite agreement 'whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee.'"); *Arch Insurance Co. v. Centerplan Construction Co., LLC*, 368 F.Supp.3d 350, 373 (D. Conn. 2019) (there is a "tripartite relationship among surety, principal, and claimant"); *Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 418 (Texas 1995) ("[S]uretyship involves a tripartite relationship between a surety, its principal, and the bond obligee."); *Chemical Bank v. Meltzer*, 93 N.Y.2d 296, 302 (N.Y. 1999) (explaining that a surety bond is a tripartite agreement creating rights and obligations among three parties). One party to this tripartite relationship, the "principal," obtains a bond to secure its performance of a contract with another party, the "obligee." *Great Am. Ins. Co.*, 908 S.W.2d at 419; *Meltzer*, 93 N.Y.2d at 302. The remaining party, the "surety," agrees to perform the contract in the event that the principal fails to perform. *Beard Family Partnership v. Commercial Indem. Ins. Co.*, 116 S. W.3d 839, 845 (Tex. App.—Austin 2003, no. pet.); *Meltzer*, 93 N.Y.2d at 302.

Here, the three-party instruments are between (i) the primary obligor (debtor Fieldwood Energy, LLC (now GOM Shelf) pursuant to the Decommissioning Agreement), who is named as principal on the bond and remains primarily liable for all obligations under the letters of credit ("L/C's"), (ii) the obligee (Apache or Deutsche Bank), to which the principal GOM Shelf owes performance and payment obligations under the Decommissioning Agreement and L/Cs, and (iii) the surety, who is only secondarily liable to the obligee. In the event of a default by the primary

obligor (i.e., the principal), the surety is answerable to the obligee to perform the bonded obligation

if the conditions of the bond are otherwise satisfied.  *See Great Am. Ins. Co.*, 908 S.W.2d at 418-

19; *Wright Way Const. Co. v. Harlingen Mall Co.*, 799 S.W.2d 415, 426 (Tex. App.— Corpus

Christi 1990, writ denied); *Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am.*,

951 F. Supp. 1097, 1109 (S.D.N.Y. 1997).



### 2.    Surety Bonds are Not Insurance

The United States Supreme Court and the Texas Supreme Court have held that "suretyship

is not insurance."  *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 n.19 (1962); *Great Am. Ins.*

*Co.*, 908 S.W.2d at 418-19.  Suretyship differs from insurance in that a surety bond is a three-party

contract involving a surety, principal, and obligee, while an insurance policy is a two-party contract

between the insured and the insurer.  A bond is issued by a surety for the benefit of the obligee only after the character, ability, and financial worth of the principal is confirmed by the surety. The fee paid for a surety bond is primarily a payment for the investigation of the principal and the subsequent certification by the surety that the principal is "bonded."  This tripartite relationship is always present in a surety contract, but not in an insurance contract.  *Great Am. Ins. Co.*, 908 S.W.2d at 418-19; *Meyer v. Building and Realty Serv. Co*., 196 N.E. 250, 253 (Ind. 1935).  "Unlike a liability insurance contract, in which the obligation of the insurer to the insured is the *primary* obligation of indemnity to the insured for loss, the obligation of a surety to a bond obligee is *secondary* to the obligation owed by its principal."  *Great Am. Ins. Co*., 908 S.W.2d at 418-19 (emphasis added); *see also Wright Way Constr. Co. v. Harlingen Mall Co*., 799 S.W.2d 415, 426 (Tex. App.--Corpus Christi 1990, writ denied) ("The liability of a surety is derivative in nature.").

"The importance of the distinction lies in the equitable rights and remedies that suretyship status confers upon the surety—e.g., exoneration, subrogation, indemnification, and contribution—and the *numerous contract and bond defenses* available to it."  *Ch. 1, Tenets of Surety Law*, in *Surety Aspects of Bankruptcy Law and Practice* 11 (Chad L. Schexnayder & Michael E. Collins eds., Am. Bar Ass'n 2021) (citing Philip L. Bruner & Patrick J. O'Connor, Jr., 4A Bruner & O'Connor on Construction Law § 12:2 (2020 update)) (emphasis added).  Moreover, unlike insurance, a surety is not expected to bear the ultimate risk of loss.  *Pearlman*, 371 U.S. at 140-41.  Indeed, surety bonds are issued based on the underwriting assumption that the surety will not incur any losses and will always be made whole.  The protection of the surety from risk of loss comes in many forms, including the protection of statutory and express indemnity from its principal, and also because of the surety's equitable rights of subrogation by which it can stand in the shoes of its paid claimants, the principal, or the obligee, to assert such parties' rights to reach any and all funds by which it may reimburse itself for its outlay.  *Id*

**B.**      **Common Law Surety Rights**

Surety bonds are a type of credit transaction where the surety bonds function as a credit accommodation and the surety anticipates no loss.  Consistent with this concept of bonds as credit transactions where the surety expects no loss, a surety has many rights, including the common law rights of exoneration and indemnification.

Bond principals have a common law duty to exonerate the surety (i.e., perform the bonded obligation in the first instance).  *Insurance Co. of the West v. H & G Contractors, Inc*., No. C–10–390, 2011 WL 4738197, at *1 n.1 (S.D. Tex. Oct. 5, 2011); *see also Washington Int'l Ins. Co. v. Jones*, EP-22-CV-00131-DCG, 2023 WL 2658572, at *6 (W.D. Tex. Feb. 10, 2023) (citing Restatement (Third) of Suretyship & Guaranty § 21 cmts. i, k (1996)) (finding that Texas law recognizes the right of the surety to exoneration from its principal); *Traywick v. Gunn*, 293 S.W. 273, 274–275 (Tex. Civ. App.—Texarkana 1927, no writ)) (recognizing a surety's right to exonerate itself by suing to enjoin execution of a judgment against it).  The common law duty to exonerate the surety recognizes the obligations of the bond principal to stand in front of and prevent any out-of-pocket expenditures of the surety.  *See Glades Cty., Fla. v. Detroit Fid. & Sur. Co*., 57 F.2d 449, 451 (5th Cir. 1932) ("As between the surety and the principal there arises without payment by the surety and without his having even been sued an equity of exoneration."); *Admiral Oriental Line v. United States*, 86 F.2d 201, 204 (2d Cir. 1936) ("[B]efore paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal.") (citing *Glades Cty., Fla. v. Detroit Fid. & Sur. Co*., 57 F.2d 449, 451 (5th Cir. 1932)).

In addition, and related to the common law right of indemnification, a surety that pays the debt of its principal acquires the common law right of equitable subrogation.  As articulated by the Fifth Circuit, "[s]ubrogation arises by operation of law where a person has been compelled to pay

off . . . the debt of another in such circumstances that equity will afford him the security or obligation held by the creditor whose claim has been paid." *Tex. Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947) (internal citations omitted).  The doctrine of equitable subrogation is frequently applied in situations where the obligation of a bond principal is satisfied by the surety on the principal's bond.  *Interfirst Bank Dallas, N.A. v. U.S. Fid. & Guar. Co.*, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141, 83 S.Ct. 232, 237, (1962); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320–21 (5th Cir. 1967); *Trinity Universal Ins. Co. v. Bellmead State Bank*, 396 S.W.2d 163, 168 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.).  "[T]he two key elements of of equitable subrogation are 1) that the party on whose behalf the claimant discharged a debt was primarily liable on the debt, and 2) that the claimant paid the debt involuntarily." *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 542 (Tex. App–Corpus Christi 1993).  In such situations, a surety can subrogate not only to the rights of the creditor, but also to the rights of the principal on whose behalf the surety made payments.  *Interfirst Bank Dallas, N.A.*, 774 S.W.2d at 397; *St. Paul Fire & Marine Ins. Co. v. United States*, 370 F.2d 870, 872 (5th Cir. 1967).  The law with respect to a surety's right of equitable subrogation is well-established.  *See*, *e.g.*, *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 236 (1962).  Notably, "[t]he Courts of Texas have always been peculiarly hospitable to the right of subrogation and have been in the forefront of upholding it." *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 541 (Tex. App. 1993), *writ denied* (June 8, 1994); *Yonack v. Interstate Sec. Co. of Texas*, 217 F.2d 649, 651 (5th Cir. 1954) (same).  A surety's subrogation rights relate to the issuance of the applicable bond.  *In re Jones Const. & Renovation, Inc.*, 337 B.R. 579, 583 (Bankr. E.D. Va. 2006).

The Sureties will show at the hearing that Apache's actions and inaction, in concert with GOM Shelf, prejudiced the Sureties in their right of exoneration by their principal (i.e., the

performance of the decommissioning obligations, as promised) and their subrogation rights in the collateral that would otherwise been available to reimburse and/or make the Sureties whole.

## C.     Surety's Right of to Seek Discharge/Exoneration from the Obligee

Not to be confused with a surety's right to be exonerated by the bond principal as discussed above, Texas law has separately recognized and upheld the surety's right to seek exoneration from a demand or claim on its bond in the first instance when the obligee takes actions, fails to take action, or permits actions by the principal that increase the surety's risk or prejudices its rights.

> Exoneration is the discharge or release of the surety from liability. In this connection, one of the essential elements of the contract of suretyship is the equity of the surety, which depends not so much on the surety's relations with the creditor, as on the right to indemnity from the principal, and the consequent obligation on the part of the creditor not to do any act by which this right might be prejudiced. Fair dealing on the part of the obligee or creditor requires such person to use reasonable diligence to protect the rights of the surety. The obligee or creditor must not do any act injurious to the surety or inconsistent with the surety's rights, and the obligee or creditor must not omit to do any act required by the surety as a legal right if this omission injures the surety. The obligee or creditor must not disregard conditions annexed to the right to hold the surety liable. When the surety signs a bond, the surety has the right to assume that the creditor and principal will not deal unjustly with the surety or make any agreement detrimental to the surety's rights. The relinquishment of funds or securities available to pay the debt or discharge the obligation ordinarily discharges the surety pro tanto, and where, without the consent of the surety, the terms of the agreement for the performance of which the surety stands sponsor are materially violated, the surety is exonerated from all liability. The surety is not required to protest or object to an act or omission on the part of an obligee that operates to discharge the surety from liability, and the fact that a surety remains passive or silent after learning of such an act or omission on the part of the obligee does not constitute such acquiescence or consent as to preclude the surety from asserting the discharge.

68 Tex. Jur. 3d Suretyship and Guaranty § 38 (citations omitted).  "Where the surety is entitled to exoneration by reason of the acts of the creditor, the surety may ordinarily obtain relief from liability in a proper suit brought for this purpose."  68 Tex. Jur. 3d Suretyship and Guaranty § 122. In addition, even if the principal voluntarily defaults on a bonded obligation, "[t]he general rule of law seems to be well established that in [surety] contracts…where the original contractor abandons the contract, the [obligee] is required to minimize the damage occasioned by the abandonment of

the contract and use reasonable diligence to protect the sureties on the bond." *Detroit Fid. & Sur. Co. v. Pippins & Clarkson*, 47 S.W.2d 886, 890 (Tex. Civ. App.—Waco 1932).  Under Texas law, an action seeking exoneration under a surety bond is the appropriate remedy and procedure where the obligee, by its actions or inaction, has modified the bonded obligation and/or increased the surety's risk.

### III.   RELEVANT SURETY PRINCIPLES APPLICABLE TO RELIEF SOUGHT BY PLAINTIFFS

### A.   Material Alteration of the Bonded Risk

Texas courts have long held that an obligee's failure to comply with and enforce the terms of contract(s) underlying the bonded obligation discharges the surety because it materially alters the surety's bonded risk.  *Old Colony Ins. v. City of Quitman*, 352 S.W.2d 452 (Tex. 1961); *United States Fid. & Guar. Co. v. Borden Metal Prods. Co.*, 539 S.W.2d 170, 174 (Tex. Civ. App. – Beaumont 1976, writ ref'd n.r.e); *see also Futerfas Family Partners v. Griffin*, 374 S.W.3d 473, 478 (Tex. App.—Dallas 2012, no pet.) ("A guarantor is discharged by a material alteration of the underlying contract that lacks the consent of the guarantor and harms the guarantor."); *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 80 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (noting "that if there is an alteration of a bonded contract that imposes materially different risks, the surety may be entitled to a discharge of its obligations under the bonds").  A surety is only bound by the precise terms of the contract whose performance has been bonded— "[a] contract of suretyship will be strictly construed so as to impose on the surety only such burdens or obligations as clearly come within the terms of the contract . . . ."  *Bill Curphy Co. v. Elliott*, 207 F.2d 103, 108 (5th Cir. 1953) (quoting *Standard Accident Ins. v. Knox*, 184 S.W.2d 612, 615 (Tex. 1944)); *see also Old Colony*, 352 S.W.2d at 455.  "A material alteration in the amount or nature of the contract bonded will completely discharge the surety from its bonded obligations." *E.g.*, *Borden Metal Prods. Co.*, 539 S.W.2d at 174; *Futerfas Family Partners v. Griffin*, 374

S.W.3d 473, 478 (Tex. App.—Dallas 2012, no pet.).  As explained by one Texas court of appeals:

> The liability of a surety is strictissimi juris; it cannot be extended by implication, construction or presumption beyond the terms of his contract nor to persons who are not parties thereto. The surety may stand on the letter of his contract, his obligation does not extend beyond what is agreed to in the bond, and he is not liable for the default of his principal to perform any duty or obligation not fairly within the undertaking.

*New Amsterdam Cas. Co. v. Bettes*, 407 S.W.2d 307, 315 (Tex. Civ. App.— Dallas 1966, writ ref'd n.r.e.).  This rule of complete discharge of the surety was further explained by the Texas Supreme Court in *Vastine v. Bank of Dallas*, "It is well settled in Texas that . . . if the creditor and principal debtor vary in any material degree from the terms of their contract, then a new contract has been formed and the guarantor is not bound to it . . . ."  808 S.W.2d 463, 464-65 (Tex. 1991).

A surety is entitled to judgment on material alteration if it demonstrates: (1) the existence of a material alteration to the underlying contract; (2) lack of consent to the alteration; and (3) harm resulting from the alteration.  *Futerfas Family Partners*, 374 S.W.3d at 478; *see also Old Colony*, 352 S.W.2d at 455; *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 325 (Tex. App.—El Paso 1995, writ denied).  A material alteration is one that either injures the surety or guarantor or increases the risk of injury to the surety or guarantor.  *FDIC v. Attayi*, 745 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1988, no writ).  However, a material alteration "need not be accomplished by changes in the language of the instrument but may be by material departures from its terms in its execution and enforcement."  *St. Petersburg Bank & Tr. Co. v. Boutin*, 445 F.2d 1028, 1031 (5th Cir. 1971).  Whether an alteration is material is a question of law.  *Frost Nat'l Bank v. Burge*, 29 S.W.3d 50, 588 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The Texas Supreme Court's decision in *Old Colony Insurance Co. v. City of Quitman*, 352 S.W.2d at 452, is illustrative of the principle that a surety is completely discharged from its obligations under a bond when the obligee materially alters the bonded risk.  There, the obligee,

the city, contracted with a drilling company to drill and equip a water well.  The contract required

that the contractor drill a test well, have the water tested for iron content, and furnish the city with

passing test results before finally turning over the project.  *Id.* at 453.  The city knew the contractor

had not submitted the required final test results, but still paid the remaining contract balance to the

contractor based upon the contractor's representations.  *Id.*  The city later discovered that the iron

content of the well was higher than had been represented and sued both the drilling company and

the surety to recover the full amount paid under the contract.  *Id.* at 454.

The trial court granted summary judgment in favor of the city against both the drilling

company and the surety for the full contract amount, and the surety appealed.  The surety argued

on appeal that it was released from liability because the city had failed to obtain the contractually

required test results from the completed well.  The appellate court affirmed the trial court's

decision.  However, the Texas Supreme Court reversed, agreeing with the surety.  *Id.* at 464.  The

court called this a "classic example" of why a surety is released from liability for material alteration

of the underlying contract and stated as follows:

> Under the provisions of the contract, the drilling company . . . was not entitled to
> payment until it had furnished the City with [the passing results of the final test].
> This the drilling company did not do. Knowing of this failure the City engineer
> certified and the City paid the drilling company in full . . . .
>
> . . . .
>
> This is a classic example of the reason for the rule that sureties are released when
> there is a material alteration in, and deviation from, the terms of the contract without
> their consent and to their prejudice. Here, for example, from the standpoint of the
> surety, there is no way of knowing the chemical content of the water in the finished
> well at the time it was accepted by respondent, and whether or not that which
> intervened in the succeeding months before City turned the water into its mains
> affected the chemical content of the water. It is apparent that had the water been
> tested at the time the well was finished and before acceptance by City there could
> have been one of two results, either of which would have obviated the question of
> City looking to petitioner under the performance bond: the water at that time might
> have equaled the test hole water analysis; or, if not, the contractor might at that time
> have been able to find water, or to treat the water, so as to meet the contract
> requirements. Had the test been made and the water found to be of too high

chemical content, and which situation could not be corrected by the contractor, the City would not have made the final payment. Respondent, by its acts, in not requiring compliance with the contract, prevented the happening of either of these possibilities and thereby prejudiced a right of petitioner as surety going to the whole contract. The situation is therefore not one where the contract deviations failed to prejudice or damage the surety but is one where there is injury to the surety as a matter of law going to the whole contract obligation.

*Id.* at 454-56.

The city argued that the contract required the drilling company to deliver a well with conforming chemical content and that the contractor was not relieved from such duty by acceptance of the well or final payment, or by any act of the city's engineer. The Texas Supreme Court disagreed with this argument, finding that it would abrogate the rights of the surety and subject the surety to liability regardless of the alteration to the contract. The Court explained: "There is a difference between binding the surety to a guaranty of performance without exception where the other party for whom the work is being done adheres to the contract, and where, as here, it is sought to hold the surety regardless of substantial deviations from the contract by the party for whom the work is being performed." *Id.* at 456.

As made clear by the Texas Supreme Court in *Bullard v. Norton*, the discharge of the surety occurs without regard to whether the surety specifically shows harm resulting directly from the material alteration. 182 S.W. 668, 671 (Tex. 1916). The court specifically held that any material change in the bonded contract without the surety's consent results in a complete discharge regardless of whether "this change in the contract resulted in injury to them or *not*." *Id.* (emphasis added), *quoted in Old Colony*, 352 S.W.2d at 455. As addressed in *Old Colony*, by an obligee's acts not requiring compliance with a bonded contract, the obligee prevents the surety from its options for remedy under the performance bond and prejudices the surety's right "going to the whole contract." *Old Colony*, 352 S.W.2d at 455. Stated another way, there is no need for a specific showing of harm because the deviation from the contract in and of itself is the harm.

In the case at hand, Apache's failure to comply with and enforce the underlying bonded contract (the Decommissioning Agreement) was not a simple departure from specific terms—rather, Apache actively turned the contract on its head, accelerating the default to the clear detriment of the Sureties.  The Sureties certainly did not consent to Apache's departure from the terms of the Decommissioning Agreement.  Apache's clear failure to comply with and enforce the bonded contract undeniably was a material alteration of the bonded risk that fully discharges the Sureties from any obligations under the bonds as a matter of law.  *See Old Colony*, 352 S.W.2d 452; *see also U.S. Fidelity & Guaranty Co. v. Borden Metal Prods. Co.*, 539 S.W.2d 170, 174 (Tex. App. – Beaumont 1976); *Futerfas Family Partners*, 374 S.W.3d at 478.

## B.    Impairment of Collateral

Under Texas law, a surety is also discharged from its obligation if the obligee impairs the collateral available to protect the surety from loss.[3]  As the Fifth Circuit observed, "the suretyship bond is fragile, easily broken by the conduct of the creditor."  *St. Paul Fire & Marine Ins. Co.*, 646 F. 2d 1064, 1072 (5th Cir. 1981).  Texas courts "recognize the surety defense of impairment of collateral," which arises from the duty of an obligee or creditor "to use ordinary care to secure and preserve collateral in its possession from waste, injury, or loss."  *People's Cap. & Leasing Corp. v. Munoz*, No. CIV.A.3:08-CV-1026-D, 2009 WL 4251111, at *5 (N.D. Tex. Nov. 30, 2009) (quoting *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex. 1992)).[4]  They also acknowledge the nearly identical, but broader doctrine of impairment of suretyship.  *See In re Tri-*

---

[3] As will be presented at the hearing, the "collateral" available to protect the Sureties from loss included the ongoing revenue and operations of Fieldwood I/GOM Shelf; the development of new projects to generate revenue to fund decommissioning activities; the potential sale of valuable assets held by Fieldwood I/GOM Shelf to generate revenue to fund decommissioning activities; and the funds in Trust A (which were improperly depleted).

[4] The duty is not limited to collateral in the obligee's physical possession but encompasses collateral with respect to which an obligee exercises some degree of control.  *See id.* (holding that an obligee or creditor may "lose the right to demand [a surety agreement's] coverage if he impairs *any collateral* to which the surety could look for reimbursement") (emphasis added).

*Union Dev. Corp.*, No. 03-44908, 2015 WL 5730745, at \*10 (Bankr. S.D. Tex. Sept. 28, 2015) ("Impairment of suretyship occurs 'if the obligee acts to increase the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance . . . .'") (quoting Restatement (Third) of Suretyship & Guaranty § 37 (1996)).[5]  If the obligee or creditor "breaches [this] duty, the surety is discharged on the [obligation] to the extent of his loss." *T.O. Stanley Boot Co.*, 847 S.W.2d at 223.

When a surety suffers impairment of collateral, the surety's obligations are discharged entirely if "the surety's risk factor is increased by a factor which cannot be measured." *Tri-Union*, 2015 WL 5730745, at \*10 (citing *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1313 (Fed. Cir. 2011)); *see also Munoz*, 2009 WL 4251111, at \*5 ("A guarantor is also discharged if a creditor unjustifiably impairs any collateral securing a note by allowing it to be subordinated or used for purposes other than fulfilling the terms of the indebtedness guaranteed.") (quoting *United States v. Vahlco Corp.*, 800 F.2d 462, 465-66 (5th Cir. 1986)).  This rule is founded in Texas's "longstanding jurisprudential policy that guarantors or sureties should not be bound to risks beyond those they have actually contracted to assume." *Fernandez v. Indep. Bank*, No. 02-20-00375-CV, 2021 WL 4621758, at \*4 (Tex. App. Oct. 7, 2021) (quoting *U.S. Foodservice, Inc. v. Winfield Project Mgmt., LLC*, No. 03-14-00405-CV, 2016 WL 1639804, at \*5 (Tex. App. Apr. 20, 2016); s*ee also Veldekens v. GE HFS Holdings, Inc.*, No. CV H-06-3296, 2009 WL 10693904, at \*6 (S.D. Tex. Aug. 3, 2009) (observing that "it would be unfair to require the guarantor to assume risks other than those he chose to assume") (quoting *Vahlco*, 800 F.2d at 465).

---

[5] Impairment of suretyship includes not just collateral but any terms, representations, or conditions that materially affect the surety's risk, thus encompassing a broader obligation on the part of the obligee.

Several Texas cases help to illustrate the application of this rule.  In a recent case before the United States District Court for the Southern District of Texas, the surety that had issued a bond for a public school construction project brought suit against the obligee for prematurely releasing "unearned progress payments and retainage" to the contractor before the completion of the project.  *Travelers Cas. & Sur. Co. of Am. v. Harlingen Consol. Indep. Sch. Dist.*, No. 7:16-CV-411, 2018 WL 7204025, at *5 (S.D. Tex. Nov. 2, 2018).  The court held that:

> "The duty devolves upon the [project owner] to administer the contract, during the course of its performance, in a way that does not materially increase the risk that was assumed by the surety when the contract was bonded." *Nat'l Sur. Corp. v. United States*, 118 F.3d 1542, 1547 (Fed. Cir. 1997). This is because, in contracts for services that include payment in installments or upon completion, unearned progress payments and retainage are security, or collateral, ensuring discharge of the obligations created by the underlying contract. *Pa. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 953 (8th Cir. 2004).

*Id.*  The court held that the obligee's premature release of the funds was a material breach because it increased the surety's risk under the contract by "depriv[ing] [the surety] of the reasonably expected benefit of security in the retainages." *Id.* at *6.[6]

In *St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.*, 646 F.2d 1064 (5th Cir. 1981), two sureties had issued bonds assuring an agricultural marketing association's performance of its obligations under a federal loan program that took cotton bales as security.  The association employed a kiting practice "using proceeds of new loans to meet old obligations" and "comingling trust receipts proceeds with funds disbursed through its general expense account." *Id.* at 1069.  The float eventually caught up to the association, resulting in the obligee declaring default.  *Id.*  The court held that:

> [The association's] practice of repaying one loan with proceeds from the collateral securing another loan had the effect of stripping the second loan of its security. This persistent procedure impaired [the sureties'] security. The comingled accounts also

---

[6] Courts have often applied the impairment of collateral doctrine under facts similar to *Harlingen*.  *See, e.g.*, *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305 (Fed. Cir. 2011); *Pa. Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 952-53 (8th Cir. 2004).

led to loss of collateral, because, as was inevitable, trust receipt proceeds were expended on totally unrelated general expenses.

*Id.* at 1073.  Meanwhile, the obligee knew of the association's kiting practice and had acquiesced to it "in direct contravention of the loan agreement's command that the proceeds from each receipt be kept in trust for that loan."  *Id.* at 1073.  The court held that by allowing the association to kite its obligations, the obligee had impaired the sureties' collateral and was therefore precluded from recovering on the bonds.[7]

## C.    Impairment of Suretyship

The doctrine of impairment of suretyship "states that a surety's obligations are discharged if the obligee takes improper actions which prejudice the surety by increasing the financial risk." *In re Tri-Union Dev. Corp.*, 03-44908, 2015 WL 5730745, at *10 (Bankr. S.D. Tex. Sept. 28, 2015).  In recognition of the surety's right to cause the principal to perform, impairment of suretyship occurs "if the obligee acts to increase the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance...." *Tri-Union*, 2015 WL 5730745, at *10 (citing Restatement (Third) of Suretyship & Guaranty (1996)).

As recognized by the court in the *Tri-Union* case and district court in the *Washington International Insurance* case, in Texas, "the Restatement (Third) of Suretyship and Guaranty is regarded as a prevailing source for the common law on matters relating to sureties." *Washington Int'l Ins. Co. v. Jones*, 2023 WL 2658572, at *5.  Section 37 of the Restatement, which was relied upon by the court in the *Tri-Union*, sets forth the general principle that "impairment of suretyship status" occurs if "the obligee acts to increase the secondary obligor's (i.e., the surety's)[8] risk of

---

[7] The court noted that "[w]hile discharge of a surety resulting from the impairment of collateral is usually pro tanto, in this case, the loss was so great that the sureties claimed complete exoneration," a position with which the court agreed.  *St. Paul Fire & Marine*, 646 F.2d at 1069.
[8] Under the Restatement, the term "secondary obligor" is synonymous with surety.

loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance." 2015 WL 5730745, at *10.  Section 37 sets forth the more specific acts by the obligee that will result in the discharge of the surety, in full or in part, depending on the action by the obligee and the ability to determine the extent to which the surety is damaged by the impairment.  *See also Tri-Union*, 2015 WL 5730745, at *10 ("If the surety's risk factor is increased by a factor which cannot be measured, the surety is discharged entirely; otherwise it is discharged only to the extent of its loss.").

If the obligee releases the "principal obligor from a duty other than the payment of money . . . the secondary obligor is discharged from any unperformed portion of the secondary obligation."  Restatement (Third) of Suretyship & Guaranty § 37; *see also id.* at § 39.  Comment g to Section 39 of the Restatement captures the relationship between the surety and its principal, and explains why, when the obligee releases the principal from an obligation other than the payment of money, the surety is discharged:

> When the underlying obligation is performance other than the payment of money, a release of the principal obligor has an effect on the secondary obligor that is particularly difficult to quantify. First, as in all releases, the ability of the principal obligor to perform had there been no release must be considered. Yet the ability of a principal obligor to perform a nonmonetary obligation is typically not susceptible of reliable determination. Second . . . the relative cost of performance by the principal obligor and secondary obligor—complicates matters further. The cost of performance by the secondary obligor may be different than it would have been for the principal obligor. Economies of scale and accumulated expertise, for example, would make it likely that the cost of performance would be lower for the principal obligor than for the secondary obligor . . . Third, a principal obligor who has been released from the underlying obligation may be uncooperative in assisting the secondary obligor to establish defenses to the secondary obligation. These factual difficulties, combined with the fact that the secondary obligor's bargain contemplated the existence of a continuing obligation of the principal obligor to perform, make it inequitable to place on the secondary obligor any burden of demonstrating the existence and amount of the loss resulting from the release of the principal obligor when the underlying obligation is not the payment of money.

Accordingly, this section discharges the secondary obligor to the extent of a release of nonmonetary obligations of the principal obligor.

Restatement (Third) of Suretyship & Guaranty § 39 cmt. g.

The final point from the Restatement for purposes of the temporary injunction hearing is that the impairment doctrine applies "when an obligee agrees never to seek enforcement of the underlying obligation, even if, strictly speaking, the underlying obligation is not released [because to] hold otherwise would be to exalt form over substance." *Id.* at cmt. i.

Courts in Texas and elsewhere expressly recognize that a surety is discharged when the obligee impairs its suretyship status by increasing the potential cost of performance or decreasing the ability of the surety to cause the principal to perform. *See Wright v. Deaver*, 52 Tex. Ct. App. 130, 114 S.W. 165 (Ct. of Civ. Apps. 1908) (discharging surety by reason of the extension of the time to pay costs due to the county attorney because such agreement between principal and obligee impaired the right of the surety to compel its principal to perform). In *United Pacific Insurance Co. v. U.S. Department of Interior*, 70 F. Supp.2d 1089 (C.D. Cal. 1999), the surety, which issued bonds in favor of the Department of the Interior relating to payment on contracts for the purchase of royalty oil, was deemed discharged to the extent the government's failure to perfect a claim in the principal's bankruptcy increased the surety's cost of performance.  In the case of *Kiski Area Sch. Dist. v. Mid-State Sur. Corp.*, 967 A.2d 368, 373 (Pa. 2008), the surety was deemed discharged from a claim by a school board obligee for liquidated damages for delay when the school board separately resolved the liquidated damage claim against the principal and released the principal from liability.

In this case, and as will be shown at the hearing, it is obvious that Apache has impaired the Sureties' suretyship status by among other things, increasing the cost of the Sureties' performance, increasing the likelihood that GOM Shelf would not perform under Decommissioning Agreement,

and effectively releasing GOM Shelf from its obligation to perform the Decommissioning Agreement.

### IV.   SUMMARY

A surety bond, as noted by the Fifth Circuit, is fragile, easily broken by the obligee. Where the obligee acts in a way that disregards collateral, opportunity, or protections that would otherwise mitigate the risk to the surety, the surety is discharged and the surety is entitled to seek exoneration and protection from ever being called upon to perform under its bond. The Sureties will demonstrate, at the hearing, that Apache's actions, inaction, and disregard for the Sureties' rights and interests took a potential loss and claim on the bonds and turned them into to an immediate erosion of all collateral, rights, and protections otherwise available to and/or mitigating the Sureties' risk of loss.

Respectfully submitted,

**LOCKE LORD LLP**

By:*/s/ Philip Eisenberg*
    Philip Eisenberg (TX Bar No. 24033923)
    peisenberg@lockelord.com
    Christopher A. Verducci (TX Bar No. 24051470)
    cverducci@lockelord.com
    600 Travis Street
    Houston, Texas 77002
    (713) 226-1200 (Tel.) / (713) 223-3717 (Fax)

**ATTORNEYS FOR PLAINTIFF HCC INTERNATIONAL INSURANCE COMPANY PLC**

**CLARK HILL, PLC**

By:*/s/ Christopher R. Ward*
    James Kimball (TX Bar No. 11420000)
    jkimbell@clarkhill.com
    Christopher R. Ward (TX Bar No. 24008233)
    cward@clarkhill.com

Duane J. Brescia (TX Bar No. 24025265)
dbrescia@clarkhill.com
Adam Diamond (TX Bar No. 24092344)
adiamond@clarkhilll.com
909 Fannin Street, Suite 2300
Houston, Texas 77010
(713) 951-5600 (Tel.) / (713) 951-5660 (Fax)

**ATTORNEYS FOR PLAINTIFF ZURICH
AMERICAN INSURANCE COMPANY**

## MANIER & HEROD

By: */s/ Jeff Price*
　　Michael E. Collins (TX Bar No. 24029006)
　　mcollins@manierherod.com
　　Jeff Price (TN Bar No. 019550)
　　jprice@manierherod.com
　　Scott Williams (TN Bar No. 021757)
　　swilliams@manierherod.com
　　1201 Demonbreun St, Suite 900
　　Nashville, Tennessee 37203
　　(615) 244-0300 (Tel.) / (615) 242-4203 (Fax)

**ATTORNEYS FOR PLAINTIFF PHILADELPHIA
INDEMNITY INSURANCE COMPANY**

## CHIESA, SHAHINIAN & GIANTOMASI, PC

By: */s/ Darren Gryzb*
　　Darren Gryzb (NJ Bar No. 016142005)
　　dgryzb@csglaw.com
　　Jase A. Brown (NJ Bar No. 225202018)
　　jbrown@csglaw.com
　　105 Eisenhower Parkway
　　Roseland, New Jersey 07068
　　(973) 325-1500 (Tel.) / (973) 530-2277 (Fax)

**ATTORNEYS FOR PLAINTIFF EVEREST
REINSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 10th day of July, 2023, a true and correct copy of the above and foregoing was e-served on all counsel of records pursuant to Texas Rules of Civil Procedure 21 and 21a.

*Christopher R. Ward*
Christopher R. Ward

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Becky Delancy on behalf of Christopher Richard Ward
Bar No. 24008233
bdelancy@clarkhill.com
Envelope ID: 77352835
Filing Code Description: No Fee Documents
Filing Description: Plaintiffs' Temporary Injunction Brief Regarding Suretyship
Status as of 7/10/2023 2:26 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Duane Brescia | | dbrescia@clarkhill.com | 7/10/2023 1:29:08 PM | SENT |
| Geoffrey L.Harrison | | gharrison@susmangodfrey.com | 7/10/2023 1:29:08 PM | SENT |
| Charlotte Oxley | | coxley@susmangodfrey.com | 7/10/2023 1:29:08 PM | SENT |
| Jeff McLaren | | jmclaren@susmangodfrey.com | 7/10/2023 1:29:08 PM | SENT |
| Nicholas Spear | | nspear@susmangodfrey.com | 7/10/2023 1:29:08 PM | SENT |
| Winston Luo | | wluo@susmangodfrey.com | 7/10/2023 1:29:08 PM | SENT |
| Abigail Noebels | | anoebels@susmangodfrey.com | 7/10/2023 1:29:08 PM | SENT |
| Becky Delancy | | bdelancy@clarkhill.com | 7/10/2023 1:29:08 PM | SENT |
| Christopher Verducci | 24051470 | cverducci@lockelord.com | 7/10/2023 1:29:08 PM | SENT |
| Philip Guy Eisenberg | 24033923 | peisenberg@lockelord.com | 7/10/2023 1:29:08 PM | SENT |
| Adam Diamond | | ADiamond@clarkhill.com | 7/10/2023 1:29:08 PM | SENT |
| Christopher RichardWard | | cward@clarkhill.com | 7/10/2023 1:29:08 PM | SENT |
| Jase ABrown | | jbrown@csglaw.com | 7/10/2023 1:29:08 PM | SENT |
| Michael Edward Collins | 24029006 | mcollins@manierherod.com | 7/10/2023 1:29:08 PM | SENT |