# EXHIBIT 49

7/24/2023 9:19 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 77794711
By: Adiliani Solis
Filed: 7/24/2023 9:19 AM

Cause No. 2023-38238

| | | |
|---|---|---|
| Zurich American Insurance Company, HCC International Insurance Company PLC, Philadelphia Indemnity Insurance Company, Everest Reinsurance Company, | § § § § | In the District Court of |
| Plaintiffs, | § | |
| v. | § | |
| Apache Corporation, | § | 281st Judicial District |
| Defendant. | § | |

Zurich American Insurance Company, HCC
International Insurance Company PLC, §
Philadelphia Indemnity Insurance Company, §
Everest Reinsurance Company, §   Harris County, Texas
　　　　　　　Plaintiffs, §
v. §
Apache Corporation, §   281st Judicial District
　　　　　　　Defendant. §

### Apache's Original Answer and Counterclaim

Apache Corporation ("Apache") files this Original Answer and Counterclaim in response to the four plaintiff Insurance Companies' Original Petition, and would respectfully show the Court as follows:

### General Denial

1.      Pursuant to TRCP 92, Apache denies every allegation contained in the Insurance Companies' Original Petition.

### Discovery Level

2.      Pursuant to TRCP 190.4, Level 3 discovery is appropriate.

### Verified Pleas

3.      Pursuant to TRCP 93, Apache asserts that there is a defect of parties because the plaintiff Insurance Companies did not include Deutsche Bank AG New York Branch and GOM Shelf LLC as parties to this lawsuit.

### Affirmative Defenses

4.      Pursuant to TRCP 94, Apache asserts the following affirmative defenses to the Insurance Companies' Original Petition.

5.      Apache is not liable because the Insurance Companies repudiated and committed a prior material breach or anticipatory breach of the August 27, 2021 Subrogation, Subordination and Payment Agreement ("SSPA").

6.      Apache is not liable because the Insurance Companies' requested relief is barred by the SSPA and the terms of the respective letters of credit and bonds.

7.      Apache is not liable because the Insurance Companies repudiated and committed a prior material breach or anticipatory breach of the respective bonds when, without cause, the Insurance Companies declared that they would not pay for maintenance and monitoring costs that, contrary to the Insurance Companies' incorrect assertions, are part of and related to decommissioning.

8.      Apache is not liable because the Insurance Companies repudiated and committed a prior material breach or anticipatory breach of the respective bonds.

9.      The Insurance Companies' requested relief is barred in whole or in part by waiver, ratification, estoppel, and unclean hands.

10.     The Insurance Companies' claims are barred in whole or in part by the doctrines of misrepresentation, mistake, and penalty.

11.     The Insurance Companies' claims are barred in whole or in part by the Insurance Companies' failure to make reasonable efforts to mitigate their alleged injury.

12.     The Insurance Companies' claims are barred in whole or in part by collateral estoppel and res judicata.

<u>Counterclaims</u>

Apache counterclaims against the plaintiff/counterclaim defendant insurance companies Zurich, HCCI, Philadelphia, and Everest, and shows the Court as follows:

2

<u>Discovery Level</u>

1.　　This counterclaim and related discovery should be governed under Level 3 pursuant to TRCP 190.4.

<u>Parties</u>

2.　　Counterclaimant Apache is a Delaware corporation with its principal place of business in Houston, Texas.

3.　　Counterclaim defendant Zurich American Insurance Company ("Zurich") is a New York corporation with a statutory home office at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196. Zurich has appeared in this case and can be served through counsel.

4.　　Counterclaim defendant HCC International Insurance Company PLC ("HCCI") is a public company organized in the United Kingdom with its principal place of business in London, United Kingdom. HCCI has appeared in this case and can be served through counsel.

5.　　Counterclaim defendant Philadelphia Indemnity Insurance Company ("Philadelphia") is a Pennsylvania corporation with its principal place of business at One Bala Plaza East, Bala Cynwyd, PA 19004. Philadelphia has appeared in this case and can be served through counsel.

6.　　Counterclaim defendant Everest Reinsurance Company ("Everest") is a Delaware corporation with its principal place of business at Warren Corporate Center, 100 Everest Way, Warren, NJ 07059. Everest has appeared in this case and can be served through counsel.

7.　　Zurich, HCCI, Philadelphia, and Everest are the "Insurance Companies."

<u>Venue, Jurisdiction, and Conditions Precedent</u>

8.      Venue is proper under TCPRC § 15.062 because this is a counterclaim and venue in the main action is proper in Harris County, Texas.

9.      Venue also is proper in Harris County, Texas pursuant to TCPRC §§ 15.020 and 15.035(a) because Counterclaim defendants have entered into a contract performable in Texas, which states that venue will be proper in the state or federal courts having jurisdiction for Harris County, Texas.

10.     The damages sought are within the jurisdictional limits of this Court.

11.     All conditions precedent to the filing of this counterclaim have occurred.

<u>Rule 47 Statement</u>

12.     Pursuant to TRCP 47, Apache states that it seeks monetary relief over $1,000,000, plus attorney's fees and costs incurred in connection with this dispute.

<u>Apache Sold Assets to Fieldwood and Contracted for Letters of Credit Backing Fieldwood's Promise to Cover Decommissioning Expenses</u>

13.     In 2013, Apache sold the vast majority of its Gulf of Mexico offshore assets to Fieldwood Energy LLC ("Fieldwood") pursuant to a Purchase and Sale Agreement. Fieldwood became financially responsible for future government-mandated decommissioning for those assets, including offshore wells, platforms, and other facilities. Apache and Fieldwood entered into a 2013 "Decommissioning Agreement" that expressly addressed the possibility that Fieldwood later could be unable to fulfill its decommissioning obligations such that the government might hold Apache, as predecessor in interest, responsible for the decommissioning. *See* 30 CFR § 250.1701, *et seq*.

14.     The 2013 Decommissioning Agreement obligated Fieldwood to reimburse Apache for any costs "that have been reasonably and actually incurred as a result of, relating to or arising

out of any performance by Sellers of Government Decommissioning." Per the Decommissioning Agreement, Fieldwood created a trust called "Trust A" for the purpose of reimbursing Apache for potential future decommissioning obligations. The trust is funded by net profit interests on the assets sold by Apache to Fieldwood. Per the Decommissioning Agreement, Fieldwood also obtained Letters of Credit from Deutsche Bank in favor of Apache in the aggregate amount of approximately $498 million which could be drawn on if the funds in Trust A were insufficient to reimburse Apache for amounts spent performing decommissioning.

<u>The Insurance Companies Agreed to Guarantee Fieldwood's Decommissioning Obligations by Backing Some of the Letters of Credit and Replacing the Other Letters of Credit</u>

15.     In November 2015, Insurer Zurich issued "performance bonds" naming Deutsche Bank as obligee and Fieldwood as principal, guaranteeing Fieldwood's repayment to Deutsche Bank of any amounts drawn by Apache pursuant to certain of the Deutsche Bank letters of credit.

16.     Upon information and belief, in April 2016, Insurer HCCI entered into a "participation agreement" with Deutsche Bank, pursuant to which HCCI agreed to repay Deutsche Bank any amounts drawn by Apache under another of the Deutsche Bank letters of credit.

17.     Apache is not party to either the Zurich performance bonds or the HCCI participation agreement.

18.     In 2018, Fieldwood filed its first of two Chapter 11 bankruptcies. In the 2018 bankruptcy, Fieldwood—with Apache's consent and pursuant to the April 2018 Fifth Amendment to the Decommissioning Agreement—replaced $148.7 million of the $498 million in Deutsche Bank Letters of Credit with "Permitted Surety Bonds" issued by Philadelphia and Everest. Those bonds conformed to the form specified in an exhibit to the Fifth Amendment and are "deemed 'Letters of Credit'" under the Decommissioning Agreement.

19.     The result is that Apache is a beneficiary on five Deutsche Bank letters of credit, four of which the Zurich performance bonds back and one of which, upon information and belief, the HCCI participation agreement backs; and is named as direct obligee on the Philadelphia and Everest payment bonds.

20.     By their terms, and as the Decommissioning Agreement requires, the Letters of Credit (including the Permitted Surety Bonds) allow Apache to obtain immediate payment if Apache makes a drawing or reimbursement request in conformance with the Decommissioning Agreement. The five Deutsche Bank Letters of Credit provide that Apache's decommissioning drawing requests "will be duly honored upon presentation to" Deutsche Bank, which must then "make payment on or before the second Banking Day following such presentment in accordance with the terms and conditions hereof." The Zurich performance bonds and the HCCI participation agreement do not entitle Deutsche Bank to delay or avoid paying Apache.

21.     By their terms, the Philadelphia and Everest payment bonds provide a simple presentment procedure for Apache to draw on the bonds and promptly receive payment:

> It is understood and agreed that Surety shall, upon demand in the form of a Drawing Request . . . made by Obligee, without any notice other than such Drawing Request, and without any further action by the Obligee, deliver to Obligee cash . . . .

> [T]he Obligee's Drawing request shall be accepted by the Surety as conclusive proof that the amount demanded is due and payable by the Surety to the Obligee under this Bond.

22.     Per the Fifth Amendment to the Decommissioning Agreement, the Philadelphia and Everest bonds mimic and "shall be deemed" Letters of Credit and they allow Apache to "make drawings thereunder by presenting a draw certificate in the form of Exhibit A to such Letter of Credit."

23.     The Insurance Companies waived any rights to dispute obligee Apache's draw requests and waived any rights to assert a defense of discharge under any of the bonds. The Philadelphia and Everest bonds provide:

> The Surety, whether in its capacity as surety or subrogee of the Principal, *waives, to the fullest extent permitted by applicable law, each and every right which it may have to contest Obligee's computation or payment of the obligations or the Obligee's application of the bond proceeds to the obligations*. The Surety *waives any and all defenses or counterclaims* related to Surety's obligations under this Bond and expressly agrees that *no genuine issue of fact exists that would prevent or preclude Surety's obligations to comply with any Draw Request.*
>
> Surety's obligations under this Bond are not subject to any condition or qualification except as expressly set forth herein and are not contingent on . . . (iii) any other circumstances which might otherwise constitute a legal or equitable discharge or defense for Surety.

(All emphasis in this counterclaim is added).

24.     Zurich's performance bonds with Deutsche Bank (as the Obligee) provide that Zurich's obligation to pay/repay Deutsche Bank is "absolute" and "irrespective" of all defenses:

> This Bond constitutes the *Surety's primary, absolute and independent obligation to make payment to the Obligee in accordance with the terms hereof*, under any and all circumstances, including without limitation, due to the lack of validity, legality, or enforceability of the Agreement, the Reimbursement Agreement or the Security and *irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety*, Fieldwood, or other third parties.

25.     HCCI's Participation Agreement with Deutsche Bank provides that:

> The Participant acknowledges and agrees that *its obligations* under Section 3 to pay its Participation Portion . . . (c) *shall not be affected in any way by* any circumstance occurring after the date of this Agreement, including, without limitation . . . (vi) *any other circumstance of any kind that otherwise would discharge a surety or be a defense to its obligations.*

Fieldwood's 2020 Bankruptcy

26.     Fieldwood filed its second Chapter 11 bankruptcy in 2020. All four Insurance Companies objected to the proposed final restructuring plan for Fieldwood. They objected to the continuing validity of the bonds and the Letters of Credit, objected to the proposed plan for

Fieldwood assets, objected to the proposed governance of the Fieldwood assets including certain consent rights for Apache as Fieldwood's largest single creditor, and made other objections too.

27.     On June 25, 2021, U.S. Bankruptcy Judge Isgur confirmed a joint bankruptcy plan, including the divisive merger allocating the legacy Apache/Fieldwood Gulf of Mexico assets, including the Decommissioning Agreement obligations, to a newly formed entity called Fieldwood Energy I LLC which then merged into GOM Shelf LLC ("GOM Shelf"). The Bankruptcy Confirmation Order preserved the Decommissioning Agreement and Apache's ability to draw on the bands and the Letters of Credit.

28.     Apache as "Senior Creditor" and the four Insurance Companies as "Junior Creditors" entered into the August 27, 2021 SSPA, settled the Insurance Companies' objections, and confirmed and agreed that GOM Shelf "is obligated to reimburse" Apache "for costs and expenses they incur in performing the Decommissioning Obligations in accordance with the Decommissioning Agreement," which are supported by the "Decommissioning Security"—Trust A, the Deutsche Bank Letters of Credit, and the Philadelphia and Everest bonds.

29.     Apache's counterclaims against Insurance Companies Zurich, HCCI, Philadelphia, and Everest arise from the Insurance Companies' collateral attack on the June 25, 2021 Confirmation Order signed by Southern District of Texas Bankruptcy Judge Marvin Isgur and the related Plan Documents approved in the Confirmation Order, and the Insurance Companies' breach of the bankruptcy-court approved SSPA and related obligations and financial instruments. The collateral attack was established by, among other things, the Insurance Companies' statements and arguments in this Court about Apache's consent rights, the appointment of Jon Graham as the sole managing member of GOM Shelf, the projections proffered by Fieldwood in the second Chapter 11 bankruptcy, the established decommissioning obligations that are the subject of these

counterclaims, and the flouting of Judge Isgur's retained exclusive jurisdiction to resolve any disputes arising under the plan and the documents confirmed therein.

30.    The SSPA and the Insurance Companies' financial obligations relate to Apache's contractual rights to reimbursement for a portion of Apache's costs to comply with the U.S. government's requirements to decommission legacy offshore oil and gas facilities in the Gulf of Mexico. The Insurance Companies are liable for approximately $498 million of decommissioning security in the form of signed payment and performance bonds issued for the express purpose of partially reimbursing Apache for its anticipated billion-plus-dollar government-mandated decommissioning obligations as predecessor-in-title. The Insurance Companies did not comply with their obligations to Apache. They repudiated, breached, and sought to avoid their obligations and impair Apache's contractual and other rights.

31.    The Insurance Companies agreed in the SSPA to limitations on any purported rights to contest any "Senior Documents" including the Letters of Credit and bonds. The Insurance Companies agreed they "will not . . . take any action that would, or could reasonably be expected to, hinder, in any manner, any exercise" by Apache "of remedies under the Senior Documents," and agreed they would not "object to, contest . . . in any judicial action . . . the validity or enforcement of any Senior Documents." The "Senior Documents" include the Deutsche Bank Letters of Credit and the bonds. The SSPA defines "Senior Documents" to include "all agreements, instruments or documents now existing or hereafter executed in connection with the Senior Debt, pursuant to which the Person executing same agrees to pay, guarantees or assures payment and/or performance of any Senior Debt." The SSPA defines "Senior Debt" to include "all obligations of [Fieldwood/GOM Shelf] under the Decommissioning Agreement," which obligations include the obligation to provide the Deutsche Bank Letters of Credit and the bonds.

32.     The Insurance Companies' "surety representative" and Zurich senior claims professional Thomas Finley admitted in his July 13, 2023 testimony in this Court that the Insurance Companies' breached the SSPA by asking for an injunction in this case:

Q:      Section 4 of the SSPA says you will not take any action that would or could reasonably [be] expected to hinder in any manner any exercise of remedies under the senior documents. Do you agree your requested injunction would hinder Apache's exercise of remedies under the letters of credit and surety bonds by preventing Apache from drawing on them?

A:      Yes.

<u>Apache Is Entitled to Reimbursement for Government-Ordered Decommissioning</u>

33.     In September 2021, GOM Shelf in consultation with QuarterNorth Energy LLC (its counterparty under a bankruptcy court-approved transition services agreement) issued a decommissioning default notice to BSEE confirming that GOM Shelf lacked the resources to decommission certain of its expired leases. BSEE issued multiple written orders requiring Apache as predecessor-in-interest to decommission wells and facilities and specifically ordered Apache "to immediately begin maintenance and monitoring of the wells and facilities pending completion of decommissioning."

34.     BSEE has issued approximately 125 Decommissioning Orders with respect to wells, platforms, or other facilities on GOM Shelf's leases, and all the Orders require Apache to complete decommissioning within a specified time. Some of BSEE's Orders concern leases and assets identified on some of GOM Shelf's default notices. Some of BSEE's Orders concern GOM Shelf leases and assets that were not identified in GOM Shelf's default notices.

35.     Apache has cooperated and coordinated with BSEE to comply with its decommissioning obligations in a safe and timely manner and is working through BSEE's Decommissioning Orders. Apache has performed a significant amount of BSEE-ordered

decommissioning including decommissioning-related maintenance and monitoring, plugging more than 310 wells, and removing approximately 80 platforms and other structures.

36.     Apache anticipates it will incur hundreds of millions of dollars in BSEE-ordered reimbursable decommissioning activities in 2023 and anticipates that Trust A will be depleted in the coming days. Apache expects to incur over one billion dollars in BSEE-ordered decommissioning activities in connection with Apache's status as predecessor-in-interest on GOM Shelf assets.

<u>The Insurance Companies Collaterally Attacked the Bankruptcy Court's Confirmation Order.</u>

37.     The Insurance Companies' lawsuit is an improper collateral attack on the U.S. Bankruptcy Court's June 25, 2021 Confirmation Order. The Insurance Companies are trying to relitigate the same issues and objections they raised and then settled in Fieldwood's 2020–2021 bankruptcy.

38.     The Insurance Companies challenged the bankruptcy plan on the grounds that it would not allow GOM Shelf to fulfill its decommissioning obligations, contrary to the financial feasibility projections that GOM Shelf provided during the bankruptcy. The Insurance Companies hired their own financial expert during the bankruptcy, who opined that GOM Shelf would be "forced to look to the Decommissioning Security (Trust A, the L/Cs and the surety bonds) to satisfy" its decommissioning obligations. The Insurance Companies objected that this result was "guaranteed" and "only a question of when, not if."

39.     The Insurance Companies also challenged the bankruptcy plan on the grounds that it allowed Apache to exercise improper control over GOM Shelf through its consent rights and through GOM Shelf's sole manager, Mr. Jon Graham, who is a former Apache employee. The Insurance Companies objected that the plan would result in "de-facto control" by Apache.

40.     The U.S. Bankruptcy Court's Confirmation Order, along with the SSPA, settled all those objections.

41.     On July 12, 13 and 14, 2023, this Court held a three-day evidentiary hearing on the Insurance Companies' application for a temporary injunction. Five witnesses testified live. The parties introduced, and the Court admitted, over 250 exhibits. The Court heard opening statements and closing arguments. On July 20, 2023, this Court issued its Order Denying Plaintiffs' Application for Temporary Injunction and found that the Insurance Companies "are not entitled to a TRO or other injunctive relief because they have not satisfied the requirements for such relief."

42.     The Insurance Companies are contract breachers and commitment breakers. They collaterally attacked the U.S. Bankruptcy Court's Confirmation Order. They are bad actors acting in bad faith. The Insurance Companies deserve to, need to, and will be held accountable for their misconduct.

<u>Counterclaim Causes of Action</u>

<u>Counterclaim Count 1 – Breach of Contract/ Repudiation/ Anticipatory Breach</u>

43.     Apache incorporates the paragraphs above.

44.     The Insurance Companies are parties to the SSPA under which they owe obligations to Apache. Philadelphia and Everest both have payment bonds issued to GOM Shelf with Apache as the obligee.

45.     The Insurance Companies' actions to repudiate or discharge the bond obligations underlying Apache's Decommissioning security constitutes a breach of the Insurance Companies' obligations under the SSPA, and Philadelphia and Everest's obligations under the payment bonds.

46.     The Insurance Companies' actions to prosecute claims against Apache in state court and seek injunctive relief preventing Apache from making draw requests on the payment bonds

and letters of credit are in breach of the Insurance Companies' promises under the SSPA that the Insurance Companies would not "take any action that would, or could reasonably be expected to, hinder, in any manner, any exercise" by Apache of remedies under the letters of credits and bonds.

47.     The Insurance Companies' failure to comply with their obligations has caused and will continue to cause Apache financial harm of up to $498 million and potentially more.

48.     Apache reserves all rights to assert additional claims and counterclaims against the Insurance Companies, to pursue additional damages, and to pursue additional remedies against the Insurance Companies and their representatives.

<u>Counterclaim Count 2 – Declaratory Relief</u>

49.     Apache incorporates the paragraphs above.

50.     Apache seeks declaratory relief pursuant to the Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.

51.     Apache seeks an affirmative declaration regarding its rights under the SSPA, the Philadelphia bond, and the Everest bond. This Court should declare that:

    a.  Apache has the right to make draw requests under the Philadelphia and Everest bonds for government-mandated decommissioning expenses;

    b.  Zurich and HCCI do not have rights to interfere with the Deutsche Bank Letters of Credit to which they are not a party;

    c.  The SSPA prohibits the Insurance Companies' efforts to prevent Apache from drawing on the Deutsche Bank Letters of Credit and bonds;

    d.  BSEE-ordered "maintenance and monitoring" costs incurred in accordance with BSEE's Decommissioning Orders are reimbursable expenses under the Decommissioning Agreement; and

13

e.  The Insurance Companies waived their defenses as against Apache in their respective bonds.

## Attorney's Fees, Costs and Expenses

52.  Apache incorporates the paragraphs above.

53.  As a result of the Insurance Companies' actions, Apache was required to and did engage qualified counsel to defend this action and prosecute its counterclaims. Apache has incurred reasonable and necessary attorney's fees and expenses.

54.  Under the terms of the Philadelphia and Everest payment bonds, Apache is entitled to recover its costs, including reasonable attorney's fees, incurred in the enforcement of those instruments.

55.  Apache also seeks and is entitled to recover its fees in accordance with TCPRC Chapter 37 and § 37.009 which provides that "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."

56.  Apache seeks and is entitled to recover its fees in accordance with TCPRC Chapter 38 and § 38.001(b) which provides that "A person may recover reasonable attorney's fees from an individual or organization . . . if the claim is for: . . . (8) an oral or written contract." Apache "presents" its claim for attorney's fees and expenses in accordance with TCPRC § 38.002.

## Relief Requested

57.  Apache respectfully requests that the Court:

a.  Enter a take-nothing judgment against the Insurance Companies on all their claims;

b.  Award Apache damages caused by the Insurance Companies' breaches of contract;

14

c.      Award Apache declaratory judgment as requested above;

d.      Award Apache its reasonable attorney's fees, costs, and expenses in accordance with the applicable contracts and TCPRC Chapters 37 and 38;

e.      Assess all costs against the Insurance Companies; and

f.      Award all other and additional legal and equitable relief to which Apache is entitled.

Dated: July 24, 2023                                        Respectfully submitted,

By: /s/ *Geoffrey L. Harrison*
    Geoffrey L. Harrison
    TX State Bar No. 00785947
    Abigail C. Noebels
    TX State Bar No. 24083578
    Susman Godfrey L.L.P.
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002-5096
    Telephone: (713) 651-9366
    Facsimile: (713) 654-6666
    gharrison@susmangodfrey.com
    anoebels@susmangodfrey.com

    Nick N. Spear (*pro hac vice*)
    CA State Bar No. 304281
    Susman Godfrey L.L.P.
    1900 Avenue of the Stars, Suite 1400
    Los Angeles, California 90067
    Telephone: (310) 789-3100
    Facsimile: (310) 789-3150
    nspear@susmangodfrey.com

    Winston H. Luo (*pro hac vice*)
    WA State Bar No. 60828
    Susman Godfrey L.L.P.
    401 Union Street, Suite 3000
    Seattle, Washington 98101
    Telephone: (206) 516-3880
    Facsimile: (206) 516-3883
    wluo@susmangodfrey.com

    Counsel for Defendant Apache Corporation

15

<u>Certificate of Service</u>

On July 24, 2023, a true and correct copy of this document was served on counsel of record in accordance with the TRCP via electronic filing.

<u>/s/ *Geoffrey L. Harrison*</u>
Geoffrey L. Harrison

<u>Verification of Apache Corporation / Julie Traylor</u>

My name is Julie Traylor. My date of birth is October 3, 1985.
My address is 4207 Whitman Street, Houston, Texas 77207. I
declare under penalty of perjury that the statements in Apache's
Verified Pleas are true and correct.

County of Harris, State of Texas on the 24th day of July, 2023

/s/ Julie Traylor

Julie Traylor

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Naela Olguin on behalf of Geoffrey Harrison
Bar No. 00785947
nolguin@susmangodfrey.com
Envelope ID: 77794711
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Apache's Original Answer and Counterclaim
Status as of 7/24/2023 11:34 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Geoffrey L.Harrison | | gharrison@susmangodfrey.com | 7/24/2023 9:19:53 AM | SENT |
| Becky Delancy | | bdelancy@clarkhill.com | 7/24/2023 9:19:53 AM | SENT |
| Christopher Verducci | 24051470 | cverducci@lockelord.com | 7/24/2023 9:19:53 AM | SENT |
| Michael Edward Collins | 24029006 | mcollins@manierherod.com | 7/24/2023 9:19:53 AM | SENT |
| Philip Guy Eisenberg | 24033923 | peisenberg@lockelord.com | 7/24/2023 9:19:53 AM | SENT |
| Jeff McLaren | | jmclaren@susmangodfrey.com | 7/24/2023 9:19:53 AM | SENT |
| Nicholas Spear | | nspear@susmangodfrey.com | 7/24/2023 9:19:53 AM | SENT |
| Georgia Seeley | | gseeley@clarkhill.com | 7/24/2023 9:19:53 AM | SENT |
| Charlotte Oxley | | coxley@susmangodfrey.com | 7/24/2023 9:19:53 AM | SENT |
| Adam Diamond | | ADiamond@clarkhill.com | 7/24/2023 9:19:53 AM | SENT |
| Christopher RichardWard | | cward@clarkhill.com | 7/24/2023 9:19:53 AM | SENT |
| Jase ABrown | | jbrown@csglaw.com | 7/24/2023 9:19:53 AM | SENT |
| Duane Brescia | | dbrescia@clarkhill.com | 7/24/2023 9:19:53 AM | SENT |
| James MKimbell | | jkimbell@clarkhill.com | 7/24/2023 9:19:53 AM | SENT |
| Aditi Deal | | aditi.deal@lockelord.com | 7/24/2023 9:19:53 AM | SENT |
| Winston Luo | | wluo@susmangodfrey.com | 7/24/2023 9:19:53 AM | SENT |
| Abigail Noebels | | anoebels@susmangodfrey.com | 7/24/2023 9:19:53 AM | SENT |