## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY III LLC**, *et al.* | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Post-Effective date Debtors.[1] | § | |

## PLAN ADMINISTRATOR'S OBJECTION TO
## COX OIL, LLC, ET AL.'S
## PROOFS OF CLAIM

[Related to POC Nos. 747, 748, 753, 754, 755, 759, 764, 766, 767, 768, 769, 770, 771, 774, 1018, 1019, 1020, 1021, 1022, 1023, 1024, 1025, 1026, 1027, 1028, 1029, 1030, 1031 and 1032]

---

**This is an objection to your claims. The objection asks the Court to disallow the claims that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claims may be disallowed without a hearing.**

**A hearing will be conducted on this matter on October 2, 2023, at 10:30 am (Central Time) in Courtroom 404, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1-832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy, Inc. (4991, GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore, LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Offshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703; and Galveston Bay Processing LLC (0422).

setting.

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within thirty (30) days from the date this objection was filed. Otherwise, the Court may treat the Objection as unopposed and sustain the relief requested.**

**Represented parties should act through their attorney.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

David Dunn ("Administrator" or "Plan Administrator"), as Plan Administrator of Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy Inc., GOM Shelf LLC and FW GOM Pipeline, Inc., Debtors (the "Post-Effective Date Debtors") files this *Plan Administrator's Objection to Cox Oil, LLC, et al.'s Proofs of Claim* (the "Objection") and in support thereof respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1408.

## BACKGROUND

A.      **The Chapter 11 Case**

2.      On August 3, 2020 and August 4, 2020 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the

"Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

3.　　On June 25, 2021, the Court entered the *Findings of Facts, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") confirming, as modified therein, the *Eighth Amended Joint Chapter 11  Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "Confirmed Plan").

4.　　On August 27, 2021, the Debtors filed that certain *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 2016], setting forth that, *inter alia*, the Effective Date occurred on August 27, 2021 (the "Effective Date").

**B.　　Plan Administrator**

5.　　On the Effective Date, David Dunn of Province, Inc. was appointed to serve as the Plan Administrator pursuant to the Confirmed Plan.  *See* Confirmed Plan § 5.9(b).

6.　　The Plan Administrator is responsible, to the extent not otherwise provided for in the Confirmed Plan, for carrying out and implementing all provisions of the Confirmed Plan on behalf of the Debtors and Post-Effective Date Debtors, including reviewing and reconciling all Claims asserted against the Debtors (including, but not limited to, Administrative Expense Claims, Other Secured Claims, Class 6A Unsecured Trade Claims, and Class 6B General Unsecured Claims) and making distributions on account of Allowed Claims.  As more fully set forth therein, section 5.9(c) of the Confirmed Plan vests the Plan Administrator with "all the rights, powers,

authority, and duties on behalf of each of the Debtors and [the] Post-Effective Date Debtors [other than the Post-Effective Date FWE I Subsidiaries pursuant to section 5.9(a) of the Confirmed Plan]…to carry out and implement all provisions of the [Confirmed] Plan."  In short, the Plan Administrator has been tasked with: (i) controlling and effectuating the Claims reconciliation process; (ii) settling or compromising any Disputed Claims (as defined in the Confirmed Plan); and (iii) administering and adjusting the Debtors' claims register to reflect any such settlements and compromises.

**C.      Bar Dates**

7.      On October 13, 2020, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities [Docket Nos. 430 – 454].

8.      On October 14, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* [Docket No. 466] (the "Bar Date Order"), establishing certain dates and deadlines (each a "Bar Date") for filing proofs of claims in these chapter 11 cases.  The Bar Date Order established: (a) November 25, 2020, as the Bar Date for all non-governmental entities to file Proofs of Claim, and (b) February 1, 2021, as the Bar Date for all governmental entities to file Proofs of Claim.

9.      On February 17, 2022, the Court entered the *Order Establishing Deadline for Filing Requests for Payment of Administrative Expense Claims and Procedures Relating Thereto and Approving Form and Notice Thereof* [Docket No. 2387], which, *inter alia*, established March 25, 2022 at 5:00 p.m. (Central Time) as the deadline (the "Administrative Claim Bar Date") for persons to assert Administrative Expense Claims against the Debtors.

10.      Section 7.5 of the Confirmed Plan provides, "[a]ny objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later

date as may be fixed by the Bankruptcy Court after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time." *See* Confirmed Plan § 7.5. Accordingly, the deadline to object to Claims (the "Claims Objection Deadline") was originally February 23, 2022, which was extended to August 22, 2022 by the Court's order [Docket No. 2410] entered on March 16, 2022. The Claims Objection Deadline was further extended to February 18, 2023 by the Court's order [Docket No. 2649] entered September 1, 2022. Finally, the Claims Objection Deadline was further extended to August 17, 2023 by the Court's order [Docket No. 2770] entered March 16, 2023.

D.      **The Confirmed Plan and Confirmation Order**

11.     Fieldwood Energy LLC and its debtor affiliates (each a "Debtor" and, collectively, the "Debtors" or "Company") were one of the largest oil and gas exploration and production companies in the Gulf of Mexico. Its portfolio of properties includes both deepwater assets and shallow water assets in the Gulf of Mexico. The Company's liquidity profile became volatile in the years preceding the Petition Date, primarily due to (i) the precipitous decline in crude oil prices starting in 2014 and then again in 2020 and (ii) the effects of the COVID-19 pandemic. The worsening market conditions coupled with significant decommissioning costs resulted in reduced liquidity for the Company and, ultimately, led to the filing of these bankruptcy cases.

12.     The Confirmed Plan set forth a restructuring of the Debtors. The restructuring included a divisive merger pursuant to which Fieldwood Energy, LLC was divided into Fieldwood Energy I LLC (FWE I) and Fieldwood Energy III LLC (FWE III). Through the divisive merger, FWE I was allocated and vested with certain assets Fieldwood Energy, LLC acquired from Apache Corporation (the "Legacy Apache Properties"). A schedule of the Legacy Apache Properties was included as **Exhibit C** to the Disclosure Statement.

E.   **Cox Oil, LLC, et al.'s Proofs of Claim**

13.   Cox Oil, LLC and related entities ("Cox")[2] have filed numerous proofs of claim in these bankruptcy cases.  All of the proofs of claims filed by Cox are vague and inconclusive.  Each proof of claim alleges that Cox is entitled to broad categories of claims but there are no details or specificity as the amounts or basis of Cox's claims.

a.   **The Initial Claims**

14.   On November 25, 2020, Cox filed 14 proofs of claim (the "Cox Initial Claims")[3]. Each of the Cox Initial Claims are identical except for the Debtor the proof of claim is filed against. The Cox Initial Claims allege the claim amount is $137,690,160.98 and the basis of such claims is "Various Operating Agreements and related interests."  Cox alleges that the claims are fully or partially secured by "Setoff and Recoupment (see Addendum)" and are subject to a right of setoff. Cox alleges that the claims are fully or partially entitled to priority under Sections 507(a)(2) and 503(b)(9) of the Bankruptcy Code.

15.   Cox alleges that they "are or were co-owners of interests with one or more of the Debtors in certain oil and gas leases and related assets (including rights-of-way and/or rights of use and easement) situated in the Gulf of Mexico and/or situated in the State Waters of Louisiana." Cox further alleges that the Debtors "may have contractually assumed plugging and abandonment obligations of Cox or its related entities with respect to such properties."

---

[2] The Claimants include Cox Oil, LLC, Cox Operating LLC, Energy XXI GOM, LLC, Energy XXI Gulf Coast, Inc., Energy XXI Onshore, LLC, Energy XXI Pipeline, LLC, Energy XXI Pipeline I, LLC, Energy XXI Pipeline II, LLC, M21K, LLC, and EPL Oil & Gas, Inc.
[3] The Cox Initial Claims consist of Proofs of Claim Nos. 747, 748, 753, 754, 755, 759, 764, 766, 767, 768, 769, 770, 771 and 774.

16.     Cox contends that the properties in which Debtors are or were co-owners of interests are subject to "various agreements, including but not limited to joint operating agreements, pipeline gathering system agreements, production handling agreements, and the like."

17.     Cox contends that under the operating agreements, the operator is generally: (a) obligated to conduct operations and pay all operating costs, and non-operators are generally obligated to reimburse the operator in proportion to their participating interests in the properties upon receipt of Joint Interest Billings; and (b) to pay the non-operators their working share of the production, or working interest payments.

18.     Cox contends that they have provided pipeline and related services to the Debtors pursuant to a postpetition Ongoing Trade Agreement dated as of November 2, 2020.

19.     With respect to the amount of Cox's claims, Cox contends that the Debtors owe Cox approximately $136,436,726.00 on account of plugging and abandonment obligations and/or decommissioning costs and liabilities according to the Bureau of Safety and Environmental Enforcement.  Cox alleges it is owed approximately $1,253,434.98 on account of JIBs.

**b.     The Rejection Damages Claims**

20.     On October 11, 2021, Cox filed numerous proof of claims asserting claims for the Debtors' rejection of various contracts with Cox (the "Cox Rejection Damages Claims")[4].  The Cox Rejection Damages Claims are all identical except for the Debtor the claim is filed against. Each of the Cox Rejection Damages Claims does not specify the amount of the claim but alleges that such claims are secured in full or in part by setoff and recoupment.  The Cox Rejection Damages Claims do not contend that the claims are entitled to priority.

---

[4] The Cox Rejection Damages Claims consist of Proofs of Claim Nos. 1018, 1019, 1020, 1021, 1022, 1023, 1024, 1025, 1026, 1027, 1028, 1029, 1030 and 1031.

21.     Cox alleges that the Confirmed Plan rejected the agreements and easements and rights of way set forth in Exhibits A and B attached to the Cox Rejection Damages Claims.  Cox asserts a claim for rejection damages for the following:

     a.    All rights against the Debtors arising out of any obligations any of the Debtors has under any of the rejected agreements.

     b.    All decommissioning and plugging and abandonment obligations related to the rejected contracts and abandoned easements and rights of way.

     c.    All rights of setoff, netting, and recoupment arising under the agreements or by operation of law.

**c.     The Administrative Claims**

22.     On October 11, 2021, Cox also filed an Application of Cox Entities for Allowance of Administrative Claim.  Cox seeks JIBs and other amounts by certain of the Debtors for the period following the Petition Date and prior to the Confirmed Plan's effective date in the aggregate amount of $700,094.82.

## OBJECTIONS

**A.     Objection No. 1: The Cox Initial Claims Are Duplicate Claims**

23.     Each of the Cox Initial Claims are duplicate claims.  Each of the Cox Initial Claims are identical except for the Debtor the claim is filed against.  Each Cox Initial Claim is asserting an identical claim.  Failure to disallow and expunge all of the Cox Initial Claims except for one would result in Cox holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors.   Accordingly, the Plan Administrator respectfully requests that each Cox Initial Claim, except for Proof of Claim No. 768, be disallowed as being duplicative of Proof of Claim No. 768.

8

**B.      Objection No. 2: The Cox Rejection Damages Claims Are Duplicate Claims**

24.     Each of the Cox Rejection Damages Claims are identical and duplicates of each other, except for the Debtor the claim was filed against.  Substantively, the Cox Rejection Damages Claims are identical.  Failure to disallow and expunge all but one of the Cox Rejection Damages Claims would result in Cox holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors.  Accordingly, the Plan Administrator respectfully requests that each Cox Rejection Damages Claim, except for Proof of Claim No. 1023, be disallowed as being duplicative of Proof of Claim No. 1023.

**C.      Objection No. 3: Duplicate Claims**

25.     The Administrator also objects to the Cox Initial Claims and the Cox Rejection Damages Claims, to the extent that the claims asserted in each are duplicative.  The Plan Administrator seeks disallowance of any duplicative claims within all of the proofs of claim filed by Cox.

**D.      Objection No. 4: 11 U.S.C. § 502(b)(1) and Bankruptcy Rule 3001(a) – Cox Initial Claims**

26.     The Administrator objects to the Cox Initial Claims under Section 502(b)(1) of the Bankruptcy Code on the basis that the Cox Initial Claims are unenforceable against the Debtors and property of the Debtors.

27.     The Cox Initial Claims fail to set forth Cox's claims in accordance with Bankruptcy Rule 3001(a).  The Cox Initial Claims make vague allegations to the extent that the Administrator cannot determine whether Cox is entitled to allowed claims nor the amount of said claims.  Bankruptcy Rule 3001(a) requires a proof of claim to be a "written statement setting forth a creditor's claim."  The Cox Initial Claims fail this standard.  As such, the Administrator objects to

the Cox Initial Claims pursuant to Bankruptcy Rule 3001(a) and requests additional documentation and information from Cox to substantiate the Cox Initial Claims' basis and amounts.

28.     The Debtors' records reflect that no pre-petition amounts are owed to Cox.  Further, the Administrator is unaware of any right of setoff or recoupment that Cox holds.  As such, the Administrator objects to the Cox Initial Claims.

**E.     Objection No. 5: 11 U.S.C. § 503(b)(9) Does Not Apply to the Cox Initial Claims**

29.     The Cox Initial Claims state that all or part of the claim is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9).

30.     Section 503(b)(9) provides that there shall be allowed administrative expenses for "the value of any goods received by the debtor within 20 days before the date of the commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  The Cox Initial Claims do not disclose any goods sold to the debtor and received by the debtor within 20 days before the Petition Date.  The Administrator objects to the Cox Initial Claims because the Debtors' books and records do not reflect the Debtors receiving any goods from Cox Initial Claims within 20 days of the Petition Date and the Cox Initial Claims are not entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code.

**F.     Objection No. 6: The Decommissioning and Plugging and Abandonment Work Are Disallowed Under 11 U.S.C. § 502(e)(1)(B)**

31.     Section 502(e)(1)(B) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that…such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C. § 502(e)(1)(B).

32.     Each of the Cox Initial Claims make three claims for decommissioning and plugging and abandonment obligations but fail to identify which property they relate to.

33.     Further, the Cox Initial Claims fail to identify any decommissioning work that Cox has actually performed or paid for.  Cox merely alleges that "one or more of the Debtors may have contractually assumed plugging and abandonment obligations of Cox or its related entities with respect to [properties in which Cox is or were co-owners of interests with one or more of the Debtors in certain oil and gas leases and related assets]" and that "the Debtors owe Cox approximately $136,436,726.00 on account of plugging and abandonment obligations and/or decommissioning costs and liabilities according to the Bureau of Safety and Environmental Enforcement…database."  Cox has also failed to identify any contract or agreement in which it is entitled to reimbursement or contribution from the Debtors.  There is no statement, claim or evidence that such decommissioning work has actually been performed.  As such, any obligation, if such an obligation exists, on the Debtors part remains contingent.

34.     Contingent claims should thus be disallowed if they meet the following factors: (i) the claim is for reimbursement or contribution, (ii) the claim is asserted by an entity that is liable with the debtor on an underlying claim, and (iii) the claim is contingent at the time of its allowance or disallowance.  *See In re Sorenson v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 95-96 (S.D.N.Y. 1992)(articulating three-part test); *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004)(analyzing whether reimbursement claim was contingent, then assessing whether "the responding parties are 'liable with the debtor'").

35.     If Cox is able to establish that the Debtors had reimbursement obligations pursuant to certain agreements, then any claim they may have in the future against the Debtors would be for reimbursement or contribution.  "Courts have consistently held that 'the concept of reimbursement includes indemnity.'"  *In re Falcon V, L.L.C.*, 620 B.R. 256, 269-70 (Bankr. M.D. La. 2020)(finding that surety that issued bonds was not entitled to claim pursuant to Section 502(e)(1)(B) since it was a contingent claim); *In re RNI Wind Down Corp.*, 369 B.R. 174, 181-82 (Bankr. D. Del. 2007)(quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)).

36.     Second, the claim must be asserted by an entity that is liable with the debtor on an underlying claim.  In order for Section 502(e) to apply, "[t]here must exist…a shared liability to the same party on the same claim." *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004).  "[T]he co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 95 (S.D.N.Y. 1992).  The existence of a direct claim by the third party against the debtor does not preclude the application of Section 502(e)(1)(B). *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. The Debtors and Cox  are jointly and severally liable to BOEM and BSEE on the decommissioning, plugging and abandonment obligations.

37.     Third, the decommissioning work remains contingent.  In the *Tri-Union Dev. Corp.* case, the Court noted that "contingent" under Section 502(e) in this context means "unfunded" and that claims remain "contingent" for purposes of Bankruptcy Code § 502(e)(1)(B) until the co-debtor has paid the creditor. *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17.   The

decommissioning work remains contingent until Cox performs or pays for such decommissioning costs and expenses.

G.     **Objection No. 7: Any Decommissioning And Plugging and Abandonment Work Are Not Necessary Costs and Expenses And Did Not Benefit The Estate And Its Creditors**

38.     The Cox Initial Claims allege that they are entitled to priority in full or in part pursuant to 11 U.S.C. § 507(a)(2). The Cox Initial Claims allege that "some of the amounts owing to Cox may be attributable to the post-Petition Date period, and are therefore entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(2)."  The Administrator objects to this assertion because Cox has failed to identify how Section 507(a)(2) applies or parts of Section 503(b) apply.  To the extent that Cox contends that Section 503(b)(1) applies, Cox fails to identify what amounts owing, if any, were attributable to the post-Petition Date and, more importantly, fails to identify how such amounts owing were actual, necessary costs and expenses of preserving the estate.  Do to the vagueness of the Cox Initial Claims, the Administrator objects to any portion of the Cox Initial Claims having priority under Sections 507 and 503(b) of the Bankruptcy Code.

i.     **Claims Asserting Section 503(b)(1) Administrative Expense Priority Status Must Be Narrowly Construed**

39.     Section 503(a) of the Bankruptcy Code permits entities to timely file a request for payment of administrative expenses. 11 U.S.C. § 503(a). "The Bankruptcy Code provides that 'actual necessary costs and expenses of preserving the estate' are characterized as administrative expenses [under] 11 U.S.C. § 503(b)(1)(A) [], entitled to priority over the claims of other unsecured creditors." *Texas v. Lowe (In re H.L.S. Energy Company Inc.)*, 151 F.3d 434, 437 (5th Cir. 1998) (citing 11 U.S.C. § 507(a)(1)).

40.     "Generally, section 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors."  *In re Northstar Offshore Group, LLC*, 628 B.R. 286, 299

(Bankr. S.D. Tex. 2020) (quoting 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Richard Levin & Henry

J. Sommers eds., 16th ed.).

> ii.     **Decommissioning and Plugging and Abandonment Work Did Not Arise From a Post-Petition Transaction**

41.     In addition to the general objection above with respect to 11 U.S.C. § 503(b)(9),

the  Administrator objects to any claim by Cox that it is entitled to administrative priority for any

plugging, abandonment and/or decommissioning obligations.   A party claiming that its claim

should be entitled to payment as an administrative claim bears the burden of proof.  *In re Matter*

*of Whistler Energy II, LLC*, 931 F.3d 432, 441 (5th Cir. 2019).

42.     "In general, '[f]or a claim to be allowed as an administrative expense, goods or

services must be delivered or provided pursuant to a *postpetition transaction*; it is not enough that

payment becomes due after the petition date if the transaction was entered into with the debtor

prepetition." *Northstar*, 628 B.R. at 299 (emphasis in original) (citing 4 COLLIER ON BANKRUPTCY

¶ 503.06[3][a] (Richard Levin & Henry J. Sommers eds., 16th ed.).

43.     In analyzing the statutory requirements imposed by Section 503 of the Bankruptcy

Code, the Fifth Circuit has held, "to qualify as an 'actual and necessary cost' under section

503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions

taken by the trustee [or debtor-in-possession] that benefitted the estate." *Whistler Energy II*, 931

F.3d at 441 (5th Cir. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir.

2001)).  On this element, "a creditor must show some inducement by the debtor-in-possession."

*Id*. at 442.

44.     Here, any decommissioning and plugging and abandonment work, to the extent

performed, was not performed as a result of any post-petition transaction entered into between Cox

and the Debtors.  Cox fails to provide any information or documentation that the decommissioning

and plugging and abandonment work was performed as a result of a post-petition transaction or that Cox was induced by the debtor-in-possession to perform decommissioning and plugging and abandonment work.

        **iii.**        **The Plugging And Abandonment And Decommissioning Work Did Not Benefit The Estate Or Its Creditors**

     45.     The inquiry of whether a post-petition cost benefitted the estate "is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been necessary within the meaning of § 503(b)(1)(A)." *Whistler Energy II,* 931 F.3d at 443 (quoting *IN re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998)). "Moreover, an 'actual and necessary cost' must have been of benefit to the estate and its creditors." *Northstar*, 628 B.R. at 298 (citing *In re H.L.S. Energy Co. Inc.*, 151 F.3d at 437). "This requirement is in keeping with the conceptual justification for administrative expense priority: that creditors must pay for those expenses necessary to produce distribution to which they are entitled." *Id*. at 299. "That is, the costs of salvage are to be paid." *Id*.

     46.     First, there is no information nor documentation provided by Cox that any plugging and abandonment and decommissioning work was performed or paid for. Without such documentation and information, there is no claim for Cox to assert.

     47.     The plugging and abandonment and other decommissioning work, to the extent performed, may have been performed on leases and properties that were either abandoned by the Debtors as part of the Confirmed Plan or on leases that had been terminated or expired. As such, the plugging and abandonment and other decommissioning work did not benefit the estates or their creditors because they neither resulted in distributions being made to the Estate's creditors nor did they enhance the ability of the debtor-in-possession's business to function. Instead, the plugging and abandonment and other decommissioning work, to the extent performed, was performed on

abandoned properties or leases that had terminated or expired, all of which had no or inconsequential value to the Estates.

## CONCLUSIONS AND PRAYER

For the reasons set forth above, the Administrator requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, denying Cox Initial Claims requests for an administrative expense claim, reclassifying the Cox Initial Claims as general unsecured claims, disallowing all or part of the Cox Initial Clams and Cox Rejection Damages Claims and granting such other and further relief as is just and appropriate under the circumstances.

DATED:  August 15, 2023

Respectfully submitted,

*/s/ Kenneth Green*
Ken Green (Texas State Bar No. 24036677)
Aaron Guerrero (Texas State Bar No. 24050698)
Bryan Prentice (Texas State Bar No. 24099787)
Bonds Ellis Eppich Schafer Jones LLP
950 Echo Lane, Suite 120
Houston, Texas 77024
(713) 335-4990 telephone
(713) 335-4991 facsimile
ken.green@bondsellis.com
aaron.guerrero@bondsellis.com
bryan.prentice@bondsellis.com

**ATTORNEYS FOR DAVID DUNN, THE PLAN ADMINISTRATOR FOR THE POST-EFFECTIVE DATE DEBTORS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 15th day of August, 2023, a true and correct copy of the above and foregoing was served through the Court's electronic case filing system (ECF) upon all parties registered with the ECF and by U.S. First Class Mail and email to the following:

Cox Oil, LLC and related entities
c/o Locke Lord LLP
111 Huntington Avenue
Boston, MA  02199
Attn:  Jonathan W. Young
Email:  Jonathan.young@lockelord.com

Cox Oil, LLC
4514 Cole Avenue, Suite 1175
Dallas, TX  75205
Attn:  Vincent DeViot, Executive VP & GC
Email:  Vincent.devito@coxoil.com

*/s/Kenneth Green*
Kenneth Green