**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY III LLC,** *et al.* | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Post-Effective date Debtors.[1] | § | |

**PLAN ADMINISTRATOR'S OBJECTION TO**
**FREEPORT-MCMORAN OIL & GAS LLC'S AND MCMORAN OIL & GAS, LLC'S**
**PROOFS OF CLAIM**
[Related to POC Nos. 473, 509, 530, 531, 532, 990, 991, 994, 996, 1006, 1007, 1089 and 1090
filed by McMoRan Oil & Gas, Freeport-McMoRan Oil & Gas, McMoRan Oil & Gas, LLC and
Freeport-McMoRan Oil & Gas LLC]

---

**This is an objection to your claims. The objection asks the Court to disallow the claims that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claims may be disallowed without a hearing.**

**A hearing will be conducted on this matter on October 2, 2023, at 10:30 am (Central Time) in Courtroom 404, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1-832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy, Inc. (4991, GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore, LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Offshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

> **in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within thirty (30) days from the date this objection was filed. Otherwise, the Court may treat the Objection as unopposed and sustain the relief requested.**
>
> **Represented parties should act through their attorney.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

David Dunn ("Administrator"), as Plan Administrator of Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy Inc., GOM Shelf LLC and FW GOM Pipeline, Inc., Debtors (the "Post-Effective Date Debtors") files this *Plan Administrator's Objection to Freeport-McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC's Proofs of Claim* (the "Objection") and in support thereof respectfully represents as follows:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

### BACKGROUND

**A.       The Chapter 11 Case**

2.       On August 3, 2020 and August 4, 2020 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the

2

"Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

3.     On June 25, 2021, the Court entered the *Findings of Facts, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") confirming, as modified therein, the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "Confirmed Plan").

4.     On August 27, 2021, the Debtors filed that certain *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 2016], setting forth that, *inter alia*, the Effective Date occurred on August 27, 2021 (the "Effective Date").

**B.     Plan Administrator**

5.     On the Effective Date, David Dunn of Province, Inc. was appointed to serve as the Plan Administrator pursuant to the Confirmed Plan.  *See* Confirmed Plan § 5.9(b).

6.     The Plan Administrator is responsible, to the extent not otherwise provided for in the Confirmed Plan, for carrying out and implementing all provisions of the Confirmed Plan on behalf of the Debtors and Post-Effective Date Debtors, including reviewing and reconciling all Claims asserted against the Debtors (including, but not limited to, Administrative Expense Claims, Other Secured Claims, Class 6A Unsecured Trade Claims, and Class 6B General Unsecured Claims) and making distributions on account of Allowed Claims.  As more fully set forth therein, section 5.9(c) of the Confirmed Plan vests the Plan Administrator with "all the rights, powers,

authority, and duties on behalf of each of the Debtors and [the] Post-Effective Date Debtors [other than the Post-Effective Date FWE I Subsidiaries pursuant to section 5.9(a) of the Confirmed Plan]…to carry out and implement all provisions of the [Confirmed] Plan."  In short, the Plan Administrator has been tasked with: (i) controlling and effectuating the Claims reconciliation process; (ii) settling or compromising any Disputed Claims (as defined in the Confirmed Plan); and (iii) administering and adjusting the Debtors' claims register to reflect any such settlements and compromises.

**C.      Bar Dates**

7.      On October 13, 2020, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities [Docket Nos. 430 – 454].

8.      On October 14, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* [Docket No. 466] (the "Bar Date Order"), establishing certain dates and deadlines (each a "Bar Date") for filing proofs of claims in these chapter 11 cases.  The Bar Date Order established: (a) November 25, 2020, as the Bar Date for all non-governmental entities to file Proofs of Claim, and (b) February 1, 2021, as the Bar Date for all governmental entities to file Proofs of Claim.

9.      On February 17, 2022, the Court entered the *Order Establishing Deadline for Filing Requests for Payment of Administrative Expense Claims and Procedures Relating Thereto and Approving Form and Notice Thereof* [Docket No. 2387], which, *inter alia*, established March 25, 2022 at 5:00 p.m. (Central Time) as the deadline (the "Administrative Claim Bar Date") for persons to assert Administrative Expense Claims against the Debtors.

10.      Section 7.5 of the Confirmed Plan provides, "[a]ny objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later

date as may be fixed by the Bankruptcy Court after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time." *See* Confirmed Plan § 7.5. Accordingly, the deadline to object to Claims (the "Claims Objection Deadline") was originally February 23, 2022, which was extended to August 22, 2022 by the Court's order [Docket No. 2410] entered on March 16, 2022. The Claims Objection Deadline was further extended to February 18, 2023 by the Court's order [Docket No. 2649] entered September 1, 2022. Finally, the Claims Objection Deadline was further extended to August 17, 2023 by the Court's order [Docket No. 2770] entered March 16, 2023.

D.      **The Confirmed Plan and Confirmation Order**

11.    Fieldwood Energy LLC and its debtor affiliates (each a "Debtor" and, collectively, the "Debtors" or "Company") were one of the largest oil and gas exploration and production companies in the Gulf of Mexico. Its portfolio of properties includes both deepwater assets and shallow water assets in the Gulf of Mexico. The Company's liquidity profile became volatile in the years preceding the Petition Date, primarily due to (i) the precipitous decline in crude oil prices starting in 2014 and then again in 2020 and (ii) the effects of the COVID-19 pandemic. The worsening market conditions coupled with significant decommissioning costs resulted in reduced liquidity for the Company and, ultimately, led to the filing of these bankruptcy cases.

12.    The Confirmed Plan set forth a restructuring of the Debtors. The restructuring included a divisive merger pursuant to which Fieldwood Energy, LLC was divided into Fieldwood Energy I LLC (FWE I) and Fieldwood Energy III LLC (FWE III). Through the divisive merger, FWE I was allocated and vested with certain assets Fieldwood Energy, LLC acquired from Apache (the "Legacy Apache Properties"). A schedule of the Legacy Apache Properties was included as **Exhibit C** to the Disclosure Statement.

E.    **McMoRan Proofs of Claim**

13.    McMoRan has filed numerous proofs of claim in these bankruptcy cases.  The McMoRan proofs of claim can be categorized into three categories: (a) McMoRan's initial proofs of claim, consisting of Proof of Claim Nos. 473, 509, 530, 531, 532 and 533 (collectively, the "McMoRan Initial Claims"); (b) McMoRan's rejection damages proofs of claim, consisting of Proof of Claim Nos. 990, 991, 994, 996, 1006 and 1007 (collectively, the "McMoRan Rejection Damages Claims"); and (c) McMoRan's administrative expense proofs of claim, consisting of Proof of Claim Nos. 1089 & 1090 (collectively, the "McMoRan Administrative Claims").

   a.    **McMoRan Initial Claims**

14.    McMoRan Oil & Gas LLC filed Proof of Claim No. 473 on November 23, 2020 against Fieldwood Energy LLC.  Proof of Claim No. 473 encompasses all claims asserted in each of the McMoRan Initial Claims.  The remaining McMoRan Initial Claims include one or more of the 6 types of claim asserted in the Proof of Claim No. 473. The McMoRan Initial Claims, including Proof of Claim No. 473, all fail to set forth McMoRan's claims.  Proof of Claim No. 473 alleges that McMoRan's claims consist of the following:

   a.    All rights against Fieldwood arising out of any obligations Fieldwood has under its agreements with McMoRan, including but not limited to applicable operating agreements, gas balancing agreements, purchase and sale agreements, and related contracts, many of which are identified on Exhibit A hereto.

   b.    All rights of setoff and recoupment under the applicable operating agreements, gas balancing agreements, and at law.

   c.    Any claims arising out of the litigation styled, *Cory Phillip Bourgeois v. Freeport-McMoRan Oil & Gas, LLC, McMoRan Oil & Gas, LLC, et al.*; Case No. 4:19-cv-04177 ("Personal Injury Case"), in the United States District Court for the Southern District of Texas.

   d.    All amounts owed under joint interest billings and gas balancing agreements as set forth on Exhibits D and E. Fieldwood has failed to pay joint interest billings on a post-petition basis. While Fieldwood should pay post-petition joint interest billings

in the ordinary course of business, Fieldwood's failure to pay post-petition joint interest billings may give rise to administrative priority claims to the extent they remain unpaid.

e.  All costs associated with a certain transaction involving the High Island A474 and High Island A536 C-Aux platforms ("Potential Transaction").

f.  All accrued decommissioning and plugging and abandonment obligations, which McMoRan contends "may constitute administrative priority claims."

15.  Proof of Claim No. 473 alleges that all or part of the claim is secured, there is a right to setoff and all or part of the claim is entitled to priority under 11 U.S.C. § 509(b)(3).

16.  Proof of Claim No. 509 is identical to Proof of Claim No. 473 except that McMoRan Oil & Gas LLC asserts the claim against Dynamic Resources NS, LLC. Like Proof of Claim No. 473, Proof of Claim No. 509 alleges that all or part of the claim is secured, there is a right to setoff and all or part of the claim is entitled to priority under 11 U.S.C. § 509(b)(3).

17.  Proof of Claim No. 530 is asserted by Freeport-McMoRan Oil & Gas LLC against Fieldwood Energy LLC and is a claim for any claims arising out of the litigation styled, *Cory Phillip Bourgeois v. Freeport-McMoRan Oil & Gas, LLC, McMoRan Oil & Gas, LLC, et al.*; Case No. 4:19-cv-04177, in the United States District Court for the Southern District of Texas. Like Proof of Claim No. 473, Proof of Claim No. 530 alleges that all or part of the claim is secured, there is a right to setoff and all or part of the claim is entitled to priority under 11 U.S.C. § 509(b)(3).

18.  Proof of Claim No. 531 is identical to Proof of Claim No. 530 except that Freeport-McMoRan Oil & Gas LLC asserts the claim against Fieldwood SD Offshore LLC. Like Proof of Claim No. 473, Proof of Claim No. 531 alleges that all or part of the claim is secured, there is a right to setoff and all or part of the claim is entitled to priority under 11 U.S.C. § 509(b)(3).

19.     Proof of Claim No. 532 is identical to Proof of Claim No. 473 except that McMoRan Oil & Gas LLC asserts the claim against Fieldwood SD Offshore LLC and Proof of Claim No. 532 does not include a claim concerning the Potential Transaction.

20.     Proof of Claim No. 533 is identical to Proof of Claim No. 473 except that Proof of Claim No. 533 does not include claims concerning the Personal Injury Litigation nor the Potential Transaction.

### b. McMoRan Rejection Damages Claims

21.     McMoRan Oil & Gas LLC filed Proof of Claim No. 990 against Fieldwood Energy LLC on September 27, 2021. Proof of Claim No. 990 alleges rejection damages claims resulting from the Debtors' rejection of certain executory contracts and unexpired leases.  Each of the McMoRan Rejection Damages Claims are identical except for the McMoRan entity asserting the claim and/or the Debtor against whom the claim is asserted. Like the McMoRan Initial Claims, the McMoRan Rejection Damages Claims all fail to set forth McMoran's claims.  McMoRan alleges that each of the McMoRan Rejection Damages Claims consist of:

    a. All rights against Fieldwood arising out of any obligations Fieldwood has under its agreements with McMoRan, including but not limited to applicable operating agreements, gas balancing agreements, purchase and sale agreements, and related contracts.

    b. All rights of setoff and recoupment under the applicable operating agreements, gas balancing agreements, and at law.

    c. Decommissioning liabilities associated with Fieldwood's share of the abandoned leases in the total amount of approximately $14,000,000.

    d. Going forward lease operating expenses associated with abandoned lease interests related to SM 147 and Myette Point.

    e. Unpaid joint interest billings related to fully or partially rejected lease interests in the total amount of approximately $3,037,669.

8

22.     Each of the McMoRan Rejection Damages Claims allege that they are all or in part secured, are subject to a right of setoff, and are all or in part entitled to priority under 11 U.S.C. § 509(b)(3).

### c.   McMoRan Administrative Claims

23.     On March 24, 2022, Freeport-McMoRan Oil & Gas LLC[2] filed two Administrative Expense Proofs of Claim.  Freeport-McMoRan Oil & Gas LLC filed Claim No. 1089 against Fieldwood Energy LLC seeking an administrative expense claim for "unpaid joint interest billings in the amount of $1,114,728.74 for the pendency of the case."  McMoRan alleges the claim consists of "plugging and abandonment expense of $801,319.55 and lease operating expenses of $313,408.72" for the High Island A474 and High Island A489 leases.

24.     Freeport-McMoRan Oil & Gas LLC filed Claim No. 1090 against Fieldwood SD Offshore LLC seeking an administrative expense claim for "unpaid joint interest billings in the amount of $1,290,513.09."  McMoRan alleges the claim consists of "plugging and abandonment expense of $876,950.07 and lease operating expenses of $413,563.02" for the High Island A474 and High Island A489 leases.

### OBJECTIONS

### A.     Objection No. 1: The McMoRan Initial Claims Are Duplicate Claims

25.     Each of the McMoRan Initial Claims are duplicate claims.  While they are all not identical, each McMoRan Initial Claim asserts one or more of the claims set forth in Proof of Claim No. 473.  Failure to disallow and expunge all of the McMoRan Initial Claims except Proof of Claim No. 473 would result in McMoRan holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors.  Accordingly,

---

[2] In Claim Nos. 1089 and 1090, McMoRan references the earlier filed proofs of claim and states the agreements between McMoran and FWE are detailed in those previous proofs of claim.

the Plan Administrator respectfully requests that each McMoRan Initial Claim, except for Proof of Claim No. 473, be disallowed as being duplicative of Proof of Claim No. 473.

**B.     Objection No. 2: The McMoRan Rejection Damages Claims Are Duplicate Claims**

26.     Each of the McMoRan Rejection Damages Claims are identical and duplicates of each other, except for the McMoRan entity asserting the claim and/or the Debtor the claim is asserted against.  Failure to disallow and expunge all but one of the McMoRan Rejection Damages Claims would result in McMoRan holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors.  Accordingly, the Plan Administrator respectfully requests that each McMoRan Rejection Damages Claims, except for Proof of Claim No. 990, be disallowed as being duplicative of Proof of Claim No. 990.

**C.     Objection No. 3: The McMoRan Administrative Claims May Be Duplicate Claims**

27.     Each of the McMoRan Administrative Claims assert administrative claims on the same grounds and related to the same leases, the High Island A474 and High Island A489 leases. While each of the two McMoRan Administrative Claims are in different amounts and asserted against different debtors, the period of time that the McMoRan Administrative Claims encompass is the same and it is unclear whether each McMoRan Administrative Claim overlaps with the other. The Plan Administrator seeks disallowance of any duplicative claims within both McMoRan Administrative Claims.

**D.     Objection No. 4: Duplicate Claims**

28.     The Liquidation Trustee also objects to the McMoRan Initial Claims, McMoRan Rejection Damages Claim and McMoRan Administrative Claims, to the extent that the claims asserted in each are asserted in another McMoRan Initial Claim, McMoRan Rejection Damages Claim and/or McMoRan Administrative Claim, on the grounds that they are duplicative.  The Plan

Administrator seeks disallowance of any duplicative claims within all of the proofs of claim filed by McMoRan.

**E.      Objection No. 5: 11 U.S.C. § 502(b)(1) and Bankruptcy Rule 3001(a) – McMoRan Initial Claims and McMoRan Rejection Damages Claims**

29.      The Liquidation Trustee objects to the McMoRan Initial Claims and McMoRan Rejection Damages Claims (collectively, the "Pre-Petition Claims") under Section 502(b)(1) of the Bankruptcy Code on the basis that the Pre-Petition Claims are unenforceable against the Debtors and property of the Debtors.

30.      The Pre-Petition Claims fail to set forth McMoRan's claim in accordance with Bankruptcy Rule 3001(a).  The Pre-Petition Claims make vague allegations and claims as follows:

- First, the Pre-Petition Claims state the claim consists of "[a]ll rights against Fieldwood arising out of any obligations Fieldwood has under its agreements with McMoRan…"  The Pre-Petition Claims fail to identify: (a) which contracts or agreements Fieldwood has breached; (b) how Fieldwood has breached any contract or agreement; or (c) the amount of McMoRan's claim.

- Second, the Pre-Petition Claims state the claim consists of "[a]ll rights of setoff and recoupment under the applicable operating agreements, gas balancing agreements, and at law."  McMoRan has failed to identify which contracts, agreements or law apply to provide McMoRan with such setoff or recoupment rights nor the amount of setoff McMoRan is entitled to.

- Third, the McMoRan Initial Claims state the claim consists of any claims arising out of the Personal Injury Litigation. Upon information, the Personal Injury Litigation was dismissed with prejudice on January 14, 2022. *See* Doc. Nos. 37 & 38 in Civil Action No. 4:19-CV-04177; *Cory Phillip Bourgeois v. Freeport-McMoRan Oil & Gas LLC and McMoRan Oil & Gas, LLC*; in the United States District Court for the Southern District of Texas. Despite this dismissal with prejudice, McMoRan has failed to identify any claim that McMoRan may have against the Debtors arising from that litigation.

- Fourth, the McMoRan Initial Claims state that the claim consists of all costs associated with the Proposed Transaction but fails to identify any agreement or contract pursuant to which the Debtors are liable to McMoRan and fails to identify the amount of costs owed with respect to the Proposed Transaction.

31.     Debtor, Fieldwood Energy, LLC, only owed Freeport-McMoRan Oil & Gas LLC $141,694.00 of pre-petition joint interest billings as of the Petition Date. The Debtors did not owe any additional pre-petition amounts to any McMoRan entity and, according to a review of the Debtors' books and records, the Liquidation Trustee is unaware of any other pre-petition claims arising from any agreement between McMoRan and the Debtors, the Personal Injury Litigation nor the Proposed Transaction.  Further, the Liquidation Trustee is unaware of any right of setoff or recoupment that McMoRan holds.  As such, the Liquidation Trustee objects to the McMoRan Initial Claims and any such claim should be limited to a general unsecured claim in the amount of $141,694.00 and there is no right to setoff or recoupment.

**F.      Objection No. 6: 11 U.S.C. §§ 502(b)(1), 506(a) and Bankruptcy Rules 3001(c)(1) & (d) – McMoRan Initial Claims and McMoRan Rejection Damages Claims**

32.     The Plan Administrator objects to the Pre-Petition Claims' assertion that they are secured claims under Sections 502(b)(1) and 506(a) of the Bankruptcy Code and Bankruptcy Rules 3001(c)(1) & (d).  Specifically, the Plan Administrator objects that McMoRan does not have any in rem rights to look to specific items of property of the bankruptcy estate for payment of the McMoRan Initial Claims.

33.     Bankruptcy Rule 3001(c)(1) provides that "when a claim, or an interest in property of the debtor securing the claim, is based on writing, a copy of the writing shall be filed with the proof of claim."  Bankruptcy Rule 3001(c)(1) continues, "If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." McMoRan asserts that all or part of the Pre-Petition Claims are secured by a lien on property and that the "[s]ecurity rights [arise] under certain operating agreements. *See attachment". However, McMoRan does not state which operating agreements such security interest arises under.  Nor does McMoRan attach a copy of the applicable operating agreements or provide a statement of the

12

circumstances of the loss or destruction of the applicable operating agreements.  As such, the Pre-Petition Claims do not satisfy Bankruptcy Rule 3001(c)(1).

34.     Bankruptcy Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."  There is no evidence nor even a statement that McMoRan has perfected its security interest in the any property of the Debtors and the Pre-Petition Claims do not satisfy Bankruptcy Rule 3001(d).

35.     Since there are no documents or agreements identified under which McMoRan is provided a security interest in property of the Debtors, the Pre-Petition Claims are not secured claims.

36.     To the extent that McMoRan holds a valid security interest with respect to the Pre-Petition Claims, the Plan Administrator requests a valuation of such security interest under 11 U.S.C. § 506 and that the value of such security interest be $0.00.  The leases disclosed in the Exhibits attached to the Pre-Petition Claims have either been abandoned, terminated or expired and many of the executory contracts disclosed in Exhibit A to the Pre-Petition Claims have been rejected.  Thus, the value of any security interest is $0.00 and any Pre-Petition Claim allowed should be a general unsecured claim.

**G.     Objection No. 7: 11 U.S.C. § 503(b)(9) Does Not Apply to the McMoRan Initial Claims Nor The McMoRan Rejection Damages Claims**

37.     The Pre-Petition Claims state that all or part of the claim is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9).  In the Pre-Petition Claims, McMoRan states, "*See Statement of Claim".  However, the Statements of Claim attached to the Pre-Petition Claims do not state, or even allege, that the claims are entitled to priority under 11 U.S.C. § 503(b)(9).

38.     Section 503(b)(9) provides that there shall be allowed administrative expenses for "the value of any goods received by the debtor within 20 days before the date of the commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  The Pre-Petition Claims do not disclose any goods sold to the debtor and received by the debtor within 20 days before the Petition Date.  The Plan Administrator objects to the Pre-Petition Claims because the Debtors' books and records do not reflect the Debtors receiving any goods from McMoRan within 20 days of the Petition Date and the McMoRan Initial Claims are not entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code.

**H.     Objection No. 8: The Decommissioning and Plugging and Abandonment Work Are Disallowed Under 11 U.S.C. § 502(e)(1)(B)**

39.     Section 502(e)(1)(B) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that…such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C. § 502(e)(1)(B).

40.     One or more of the McMoRan Initial Claims state that they consist of "[a]ll accrued decommissioning and plugging and abandonment obligations".  The McMoRan Rejection Damages Claims state that they consist of "[d]ecommissioning liabilities associated with Fieldwood's share of the abandoned leases in the total amount of approximately $14,000,000."  However, the Pre-Petition Claims fail to identify any decommissioning work that McMoRan has actually performed or paid for.  McMoRan has also failed to identify any contract or agreement in which McMoRan is entitled to reimbursement or contribution from the Debtors.  Exhibits B and

C to the Pre-Petition Claims only identify decommissioning estimates and there is no evidence or information that any decommissioning obligations have, in fact, been paid by McMoRan. Likewise, the McMoRan Rejection Damages Claims only allege that the Debtors are liable for decommissioning expenses. There is no statement, claim or evidence that such decommissioning work has actually been performed.  As such, any obligation on the Debtors part remains contingent.

41.     Contingent claims should thus be disallowed if they meet the following factors: (i) the claim is for reimbursement or contribution, (ii) the claim is asserted by an entity that is liable with the debtor on an underlying claim, and (iii) the claim is contingent at the time of its allowance or disallowance.  *See In re Sorenson v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 95-96 (S.D.N.Y. 1992)(articulating three-part test); *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004)(analyzing whether reimbursement claim was contingent, then assessing whether "the responding parties are 'liable with the debtor'").

42.     If McMoRan were able to establish that the Debtors had reimbursement obligations pursuant to certain agreements, then any claim they may have in the future against the Debtors would be for reimbursement or contribution.  "Courts have consistently held that 'the concept of reimbursement includes indemnity.'"  *In re Falcon V, L.L.C.*, 620 B.R. 256, 269-70 (Bankr. M.D. La. 2020)(finding that surety that issued bonds was not entitled to claim pursuant to Section 502(e)(1)(B) since it was a contingent claim); *In re RNI Wind Down Corp.*, 369 B.R. 174, 181-82 (Bankr. D. Del. 2007)(quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)).

43.     Second, the claim must be asserted by an entity that is liable with the debtor on an underlying claim.  In order for Section 502(e) to apply, "[t]here must exist…a shared liability to

the same party on the same claim." *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004).  "[T]he co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 95 (S.D.N.Y. 1992).  The existence of a direct claim by the third party against the debtor does not preclude the application of Section 502(e)(1)(B).  *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17.  The Debtors and McMoRan are jointly and severally liable to BOEM and BSEE on the decommissioning, plugging and abandonment obligations.

44.     Third, the decommissioning work remains contingent.  In the *Tri-Union Dev. Corp.* case, the Court noted that "contingent" under Section 502(e) in this context means "unfunded" and that claims remain "contingent" for purposes of Bankruptcy Code § 502(e)(1)(B) until the co-debtor has paid the creditor.  *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17.  The decommissioning work remains contingent until McMoRan performs or pays for such decommissioning costs and expenses.

I.     **Objection No. 9: Any Decommissioning And Plugging and Abandonment Work Are Not Necessary Costs and Expenses And Did Not Benefit The Estate And Its Creditors**

45.     The Pre-Petition Claims state that Debtor's decommissioning and plugging-and-abandonment obligations may constitute administrative priority claims.  The McMoRan Administrative Expense Claims contend that McMoRan conducted, during the pendency of the Bankruptcy Case, plugging and abandonment and other decommissioning operations for the High Island A474 and the High Island A489 leases and assert an administrative expense priority claims for $801,319.55 of plugging and abandonment expenses.

### i. Claims Asserting Section 503(b)(1) Administrative Expense Priority Status Must Be Narrowly Construed

46.     Section 503(a) of the Bankruptcy Code permits entities to timely file a request for payment of administrative expenses. 11 U.S.C. § 503(a). "The Bankruptcy Code provides that 'actual necessary costs and expenses of preserving the estate' are characterized as administrative expenses [under] 11 U.S.C. § 503(b)(1)(A) [], entitled to priority over the claims of other unsecured creditors." *Texas v. Lowe (In re H.L.S. Energy Company Inc.)*, 151 F.3d 434, 437 (5th Cir. 1998) (citing 11 U.S.C. § 507(a)(1)).

47.     "Generally, section 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors." *In re Northstar Offshore Group, LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020) (quoting 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Richard Levin & Henry J. Sommers eds., 16th ed.).

### ii. Decommissioning and Plugging and Abandonment Work Did Not Arise From a Post-Petition Transaction

48.     This portion of the objection relates to the McMoRan Initial Claims, McMoRan Rejection Damages Claims and McMoRan Administrative Expense Claims.

49.     A party claiming that its claim should be entitled to payment as an administrative claim bears the burden of proof. *In re Matter of Whistler Energy II, LLC*, 931 F.3d 432, 441 (5th Cir. 2019).

50.     "In general, '[f]or a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a *postpetition transaction*; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition." *Northstar*, 628 B.R. at 299 (emphasis in original) (citing 4 COLLIER ON BANKRUPTCY ¶ 503.06[3][a] (Richard Levin & Henry J. Sommers eds., 16th ed.).

51.     In analyzing the statutory requirements imposed by section 503 of the Bankruptcy Code, the Fifth Circuit has held, "to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *Whistler Energy II*, 931 F.3d at 441 (5th Cir. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)).  On this element, "a creditor must show some inducement by the debtor-in-possession." *Id.* at 442.

52.     Here, any decommissioning and plugging and abandonment work, to the extent performed, was not performed as a result of any post-petition transaction entered into between McMoRan and the Debtors.  McMoRan fails to provide any information or documentation that the decommissioning and plugging and abandonment work was performed as a result of a post-petition transaction or that McMoRan was induced by the debtor-in-possession to perform decommissioning and plugging and abandonment work.

### iii.   The Plugging And Abandonment And Decommissioning Work Did Not Benefit The Estate Or Its Creditors

53.     This portion of the objection relates to the McMoRan Initial Claims, McMoRan Rejection Damages Claim and McMoRan Administrative Expense Claims.

54.     The inquiry of whether a post-petition cost benefitted the estate "is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been necessary within the meaning of § 503(b)(1)(A)."  *Whistler Energy II,* 931 F.3d at 443 (quoting *IN re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998)).  "Moreover, an 'actual and necessary cost' must have been of benefit to the estate and its creditors." *Northstar*, 628 B.R. at 298 (citing *In re H.L.S. Energy Co. Inc.*, 151 F.3d at 437).  "This requirement is in keeping with the conceptual justification for administrative expense priority: that creditors must

18

pay for those expenses necessary to produce distribution to which they are entitled." *Id*. at 299.

"That is, the costs of salvage are to be paid." *Id*.

55.     The plugging and abandonment and other decommissioning work, to the extent performed, was performed on leases and properties that were either abandoned by the Debtors as part of the Confirmed Plan or on leases that had been terminated or expired.  As such, the plugging and abandonment and other decommissioning work did not benefit the estates or their creditors because they neither resulted in distributions being made to the Estate's creditors nor did they enhance the ability of the debtor-in-possession's business to function. Instead, the plugging and abandonment and other decommissioning work, to the extent performed, was performed on abandoned properties or leases that had terminated or expired, all of which had no or inconsequential value to the Estates.

**J.     Objection No. 10: McMoRan Is Not Entitled To An Administrative Expense Claim For Plugging and Abandonment and Other Decommissioning Work On Abandoned Property**

56.     This portion of the objection relates to the McMoRan Initial Claims, McMoRan Rejection Damages Claims and McMoRan Administrative Expense Claims.  McMoRan asserts that it may be entitled to an administrative expense claim for decommissioning work and liabilities. To the extent that such work relates to abandoned properties, McMoRan is not entitled to an administrative expense claim.  While the McMoRan does not make clear what authority McMoRan relies upon, it is likely McMoRan will rely on the Supreme Court's decision in *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494 (1986), the Fifth Circuit's holding in *State of Tex. v. Lowe (in re H.L.S. Energy Co., Inc.)*, 151 F.3d 434, 436 (5th Cir. 1998) and this Court's holding in *In re Am. Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009).  Reliance on each of these cases is misplaced.

57.    In *Midlantic*, the issue was whether a bankruptcy trustee could abandon property contaminated with hazardous waste in contravention of state and local laws designed to protect public health or safety.   The Supreme Court held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards."  *Midlantic*, 474 U.S. at 506.  The Supreme Court reasoned that 28 U.S.C. § 959(b) requires a trustee to "manage and operate the property in his possession…according to the requirements of the valid laws of the state." *Id*. at 505 (quoting 28 U.S.C. § 959(b)).  Section 959(b) was evidence that Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of the trustee's powers.  *Id*. "The Supreme Court, however, expressly left open the question of the priority accorded to governmental costs if the trustee fails to respond to a cleanup order."  *Northstar*, 628 B.R. at 301.

58.    In *H.L.S. Energy,* the debtor's obligation to decommission inactive wells arose post-petition and the bankruptcy estate did not have sufficient funds to pay the decommissioning costs. The trustee and the State of Texas agreed that the State would plug the wells and charge the costs to the bankruptcy estate. When the State asserted an administrative expense claim, the trustee objected, arguing that the claim was not entitled to administrative expense status. The Fifth Circuit held that the State's claim was entitled to administrative expense priority because the obligation to plug the wells arose post-petition and the trustee was required to operate the bankruptcy estate in accordance with state law, which required the wells to be plugged. *In re H.L.S. Energy,* 151 F.3d at 438. The court further reasoned that expenses incurred to comply with state law were actual and necessary costs of managing and preserving the estate. *Id.*

59.    In *Am. Coastal,* the debtor owned and operated eight wells that became inactive prior to its bankruptcy filing. The Texas Railroad Commission plugged the wells, and sought

reimbursement from the debtor as an administrative expense claim. Citing federal and state law, the debtor argued that, because the liability arose prepetition, the plugging expense did not qualify as an administrative expense, but rather, was a general unsecured claim. The Court rejected the debtor's argument and held that the Texas Railroad Commission's claims were administrative expense claims because the expenses benefitted the estate by remedying violations of environmental and safety laws, regardless of whether the liability for the violation first occurred prepetition or post-petition. *In re Am. Coastal,* 399 B.R at 811.

60.     First, neither *Midlantic, H.L.S. Energy* nor *Am. Coastal* concerned a private party like Chevron.  Instead, the administrative expense claim was asserted by a state agency burdened with the costs of cleaning up the debtor's environmental obligations.  This Court made clear in *Am. Coastal* that "its analysis is limited to environmental remediation claims made by a governmental unit for postpetition remediation." *In re Am. Coastal,* 399 B.R. at 809, n.3. This Court also made clear in *Northstar* that such distinction is important in the analysis of whether decommissioning obligations are entitled to administrative priority. *In re Northstar*, 628 B.R. at 302 – 303 ("However, unlike in *American Coastal*, the party asserting administrative priority is not a state agency, nor, as Northstar argues, was the trustee operating a business in light of Northstar's sale of substantially all of its assets to NOV, nor did 28 U.S.C. § 959 apply because [] Northstar was not in possession of the property.").

61.     More importantly, in both *H.L.S. Energy* and *Am. Coastal*, the debtor continued to have an ownership and/or operating interest in the wells.  The *H.L.S. Energy* and *Am. Coastal* courts relied on the statutory language in 28 U.S.C. § 959(b) requiring a debtor-in-possession to manage and operate the property in his possession" in accordance with state laws. *See In re H.L.S. Energy,* 151 F.3d at 438; *In re Am. Coastal,* 399 B.R at 810-12. These cases only found that a

debtor incurs administrative expenses for decommissioning costs related to property in the debtor's possession. In other words, only those decommissioning costs incurred in connection with property in which the Debtor has an interest can qualify as an administrative expense. As the *Am. Coastal* court noted:

> Opinions that have denied administrative expense characterization of postpetition expenditures to remediate pre-petition environmental liabilities involved expenditures on property that was no longer property of the bankruptcy estate. *In re Dant & Russell, Inc.,* 853 F.2d 700, 709 (9th Cir. 1988) *("Kovacs and Johnson Bronze are significant in that they involved assertions of administrative expense priority by a lessor for cleanup costs resulting from property not owned by the bankruptcy estate"). See also Ohio v. Kovacs,* 469 U.S. 274, 105 S. Ct 705, 83 L. Ed. 2d 649 (1985); *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir. 1985). Since the property was no longer estate property, the expenditure was not necessary to preserve the estate.

*In re Am. Coastal,* 399 B.R. 805, n.4. Other courts have reached similar conclusions. *See, e.g., In re McCrory Corp,* 188 B.R. 763, 769-70 (Bankr. S.D.N.Y. 1995) (holding that a debtor had appropriately abandoned a leasehold interest by rejection of the relevant lease, that such leasehold interest was no longer property of the estate, and that any postpetition cleanup costs would not benefit the estate); *In re Insilco Techs., Inc.,* 309 B.R. 111, 115 (Bankr. D. Del. 2004) ("In general, only those costs incurred to cleanup property for which an estate has an interest in or owns may qualify as administrative expenses."); *In re Mahoney-Troast Constr. Co.,* 189 B.R. 57, 62 (Bankr. D. N.J. 1995) ("Finally, as the trustee points out, the debtor did not own the property and cleanup was effected almost two years after the lease was rejected and the trustee returned the property."). Indeed, the rationale behind these holdings is that the estate does not benefit from remediation costs incurred post-petition once the property in question is no longer property of the estate.

62.     This Court found similarly in *Northstar,* 628 B.R. 286 (Bankr. S.D. Tex. 2020).  In *Northstar,* the debtor was a co-owner of two oil and gas leases with Medco Energi. *Northstar,* 628

B.R. at 291. Post-petition, the leases were rejected pursuant to 11 U.S.C. § 365. *Id*. at 290. After the rejection, Medco Energi performed decommissioning work on the leases and filed an application for allowance and payment of an administrative claim seeking the debtor's share of the decommissioning cost. *Id*. at 294 – 295. While this court recognized that Northstar's decommissioning obligations under the leases were the type of "continuing post-petition duty" that could give rise to an administrative claim, the Court held that such claim was not an administrative expense because the trustee was not operating a business in light of Northstar's sale of substantially all of its assets and 28 U.S.C. § 959 did not apply because Northstar was not in possession of the property. *Id*. at 302 – 303.

63.     Here, as of the Effective Date, the Debtors abandoned the properties and leases upon which the decommissioning work will be or has been incurred. As a result, the abandoned properties were no longer a part of the estate. *See* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] (16th 2023) ("Upon abandonment under section 554, the trustee is divested of control of the property because it is no longer part of the estate."). At least with respect to the abandoned properties, there is no business being operated by a trustee or debtor-in-possession.

64.     The decommissioning work are for costs and expenses that McMoRan may incur on abandoned properties after the Effective Date. Like the creditor in *Northstar*, McMoRan seeks an administrative expense claim against property that is no longer property of the estate. As such, the estate is no longer in possession of the abandoned properties, is not operating a business in which the abandoned properties are utilized and McMoRan is not entitled to an administrative expense priority claim on account of the decommissioning work. *See, e.g., Northstar*, 628 B.R. at 301 - 303, *In re McCrory Corp.*, 188 B.R. at 765; *Johnson Bronze Co.*, 758 F.2d at 141.

**K.      Objection No. 10: McMoRan Cannot Subrogate To An Administrative Expense Priority Claim.**

65.      This portion of the objection relates to the McMoRan Initial Claims, McMoRan Rejection Damages Claims and McMoRan Administrative Expense Claims.

66.      In *In re Northstar*, 628 B.R. 286 (Bankr. S.D. Tex. 2020), Medco Energi, the creditor seeking an administrative claim, argued it was entitled to subrogation of its claim to the rights of the United States pursuant to 11 U.S.C. § 509(a) in light of Northstar and Medco Energi's joint and several liability under 30 C.F.R. § 250.1701. *Northstar*, 628 at 304. The Court disagreed, holding that the exception in Section 509(b) of the Bankruptcy Code precluded Medco Energi's subrogation claim because Medco Energi was jointly and severally liable with Northstar and Medco Energi received consideration in the form of the release of its obligations by the United States. *Id*. at 304 – 309.

67.      Section 509(a) and (b) provide:

> (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim is subrogated to the rights of such creditor to the extent of such payment.

> (b) Such entity is not subrogated to the rights of such creditor to the extent that—

> (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—
> (A) allowed under section 502 of this title;
> (B) disallowed other than under section 502(e) of this title; or
> (C) subordinated under section 510 of this title; or

> (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

68.    In *Northstar*, this Court discussed the purpose of Section 509(a) and why it should be narrowly construed:

> Accordingly, under § 509, which governs 'claims of codebtors, to be subrogated to a claim, creditors must show that (1) they are an entity that is liable with the debtor on, or that has secured, a claim of a creditor against a debtor, (2) they have paid the claim secured, and (3) they have not received consideration for the claim held by such creditor.' Section 509 allows a co-obligor who pays, after the petition date, a claim for which the debtor is primarily liable, to be subrogated to the rights of the creditor that the co-obligor has paid. Section 509 operates as a narrow, equitable backstop to ensure that a co-obligor is entitled to whatever distribution would otherwise have gone to the creditor whose claim the obligor paid postpetition. Under section 509(a), an entity is liable with the debtor when the entity is obligated to pay, by law or equity, on a claim of a creditor *against the debtor*.  In other words, in 'order for subrogation to be available to the co-obligor under section 509, [] the *debtor* must be the party that in the eyes of the law is *primarily liable* for the indebtedness paid by the obligor. This is so because "[o]ne cannot seek subrogation for paying one's own debts."

*Northstar*, 628 B.R. at 305 – 306 (emphasis added)(internal citations omitted).

69.    The principles of Section 509(a) are further reflected under the exception set forth in Section 509(b)(2):

> Taking into consideration '[t]he legislative history, and generally recognizable principles of law of equitable subrogation,' as set forth in the exception under § 509(b), 'courts refuse to extend section 509 to a party who itself is primarily liable on the creditors claim *or* has otherwise received the consideration for the claim of the creditor.'

*Northstar* at 306.

70.    Section 509(b)(2) makes clear that where "the co-obligor itself received consideration for which its payment was made, it will not be subrogated to the rights of the creditor that it paid." *Id.* (quoting 4 COLLIER ON BANKRUPTCY ¶ 509.01[4] (Richard Levin & Henry J. Sommers eds., 16th ed.)).  "This implements the public policy behind section 509, which is to permit subrogation of those *secondary liable* with the debtor but to deny subrogation where the

paying co-obligor is merely paying its own debt." *Id*. at 306 – 307. "Notably, courts have 'recognized that a party who pays a judgment on which it is *jointly and severally liable* with the debtor does not have the right to subrogation, because the paying creditor receives consideration in the form of a release." *Id*. at 307.

71.     The Code of Federal Regulations provides that "lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases…as the obligations accrue and until each obligation is met."  30 C.F.R. § 250.1701(a). Likewise, "[a]ll holders of right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met."  30 C.F.R. § 250.1701(b). Decommissioning obligations accrue when a party is or "become[s] a lessee or the owner of operating rights of a lease on which there is a well that has not been permanently plugged according to this subpart, a platform, a lease term pipeline, or other facility, or an obstruction." 30 C.F.R. § 250.1702(d).  "Every current and prior record title owner is *joint and severally liable*, along with all other record title owners and all prior and current operating rights owners, for compliance with…decommissioning obligations, which accrue while it holds record title interest."  30 C.F.R. § 556.604(d) (emphasis added).

72.     McMoRan is not entitled to be subrogated to the rights of the United States for such plugging and abandonment and other decommissioning work that McMoRan has actually performed and/or paid for.  McMoRan, just like the creditor in *Northstar*, is a co-owner of the lease with respect to the High Island A474 and High Island A489 leases.  As such, McMoRan is jointly and severally liable with the Debtors for any decommissioning work. Therefore, neither McMoRan nor the Debtors are primarily or secondarily liable as to the plugging and abandonment and other

26

decommissioning work.  McMoRan cannot avail itself of subrogation under Section 509(a) of the Bankruptcy Code.  Moreover, because McMoRan's liability is of equal status as the Debtors, paying for or performing the plugging and abandonment and other decommissioning work, McMoRan received consideration in the form of a release by the United States.

73.     In addition and in the alternative to the preceding objection, McMoRan's plugging and abandonment and other decommissioning work constitutes prepetition obligations of the Debtors and McMoRan. Although decommissioning work may have occurred post-petition, the decommissioning obligations of McMoRan and the Debtors accrued pre-petition.

74.     As discussed above, all prior and current interest holders in the properties upon which decommissioning work were performed are jointly and severally liable to BOEM and BSEE for the decommissioning obligations.  30 C.F.R.  §§ 250.146, 250.1701. In particular, 30 C.F.R. § 250.1701 provides that:

    a. Lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases, including the obligations related to lease-term pipelines, as the obligations accrue and until each obligation is met.

    b. All holders of a right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met.

    c. In this subpart, the terms "you" or "I" refer to lessees and owners of operating rights, as to facilities installed under the authority of a lease, and to right-of-way holders as to facilities installed under the authority of a right-of-way.

75.     Pursuant to 30 C.F.R. § 250.1702, both McMoRan and the Debtors became obligated to perform decommissioning obligations when they first became parties to the lease, which occurred during the prepetition period.  Accordingly, the decommissioning work were prepetition obligations and any claims arising from McMoRan's satisfaction of such prepetition

decommissioning obligations constitute prepetition claims, not claims entitled to priority status pursuant to 11 U.S.C. § 503(b)(1)(A).

## <u>CONCLUSIONS AND PRAYER</u>

McMoRan has failed to carry its burden of demonstrating that its decommissioning costs qualify as administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code.  For the reasons set forth above, the Administrator requests that the Court enter an order, substantially in the form annexed hereto as **<u>Exhibit A</u>**, denying McMoRan's requests for an administrative expense claim, disallowing all or part of the McMoRan Initial Claims, McMoRan Rejection Damages Claim and McMoRan Administrative Expense Claims and granting such other and further relief as is just and appropriate under the circumstances.

DATED:  August 15, 2023

Respectfully submitted,

*/s/ Kenneth Green*
Ken Green (Texas State Bar No. 24036677)
Aaron Guerrero (Texas State Bar No. 24050698)
Bryan Prentice (Texas State Bar No. 24099787)
Bonds Ellis Eppich Schafer Jones LLP
950 Echo Lane, Suite 120
Houston, Texas 77024
(713) 335-4990 telephone
(713) 335-4991 facsimile
ken.green@bondsellis.com
aaron.guerrero@bondsellis.com
bryan.prentice@bondsellis.com

**ATTORNEYS FOR DAVID DUNN, THE PLAN ADMINISTRATOR FOR THE POST-EFFECTIVE DATE DEBTORS**

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of August, 2023, a true and correct copy of the above and foregoing was served through the Court's electronic case filing system (ECF) upon all parties registered with the ECF and by U.S. First Class Mail and email to the following:

Freeport-McMoRan Oil & Gas LLC and
McMoRan Oil & Gas LLC
c/o Locke Lord, LLP
601 Poydras Street, Suite 2660
New Orleans, LA  70130
Attn:  Omer F. Kuebel, III
Email: rkuebel@locklord.com

*/s/Kenneth Green*
Kenneth Green