UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY III LLC, *et al.* | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Post-Effective date Debtors.[1] | § | |

PLAN ADMINISTRATOR'S OBJECTION TO
TALOS ENERGY OFFSHORE LLC, TALOS ENERGY LLC, TALOS ENERGY INC.,
AND TALOS PRODUCTION INC.'S
PROOFS OF CLAIM
[Related to POC Nos. 724, 780, 786, 1083, 1085 and 1088]

> **This is an objection to your claims. The objection asks the Court to disallow the claims that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claims may be disallowed without a hearing.**
>
> **A hearing will be conducted on this matter on October 2, 2023, at 10:30 am (Central Time) in Courtroom 404, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1-832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy, Inc. (4991, GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore, LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Offshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703; and Galveston Bay Processing LLC (0422).

> **setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones' home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within thirty (30) days from the date this objection was filed. Otherwise, the Court may treat the Objection as unopposed and sustain the relief requested.**
>
> **Represented parties should act through their attorney.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

David Dunn ("Administrator"), as Plan Administrator of Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy Inc., GOM Shelf LLC and FW GOM Pipeline, Inc., Debtors (the "Post-Effective Date Debtors") files this *Plan Administrator's Objection to Talos Energy Offshore, LLC, Talos Energy LLC, Talos Energy Inc., and Talos Production Inc.'s Proofs of Claim* (the "Objection") and in support thereof respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

## BACKGROUND

**A.   The Chapter 11 Case**

2. On August 3, 2020 and August 4, 2020 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the

"Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

3. On June 25, 2021, the Court entered the *Findings of Facts, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") confirming, as modified therein, the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "Confirmed Plan").

4. On August 27, 2021, the Debtors filed that certain *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 2016], setting forth that, *inter alia*, the Effective Date occurred on August 27, 2021 (the "Effective Date").

**B.  Plan Administrator**

5. On the Effective Date, David Dunn of Province, Inc. was appointed to serve as the Plan Administrator pursuant to the Confirmed Plan.  *See* Confirmed Plan § 5.9(b).

6. The Plan Administrator is responsible, to the extent not otherwise provided for in the Confirmed Plan, for carrying out and implementing all provisions of the Confirmed Plan on behalf of the Debtors and Post-Effective Date Debtors, including reviewing and reconciling all Claims asserted against the Debtors (including, but not limited to, Administrative Expense Claims, Other Secured Claims, Class 6A Unsecured Trade Claims, and Class 6B General Unsecured Claims) and making distributions on account of Allowed Claims.  As more fully set forth therein, section 5.9(c) of the Confirmed Plan vests the Plan Administrator with "all the rights, powers,

authority, and duties on behalf of each of the Debtors and [the] Post-Effective Date Debtors [other than the Post-Effective Date FWE I Subsidiaries pursuant to section 5.9(a) of the Confirmed Plan]…to carry out and implement all provisions of the [Confirmed] Plan." In short, the Plan Administrator has been tasked with: (i) controlling and effectuating the Claims reconciliation process; (ii) settling or compromising any Disputed Claims (as defined in the Confirmed Plan); and (iii) administering and adjusting the Debtors' claims register to reflect any such settlements and compromises.

**C.     Bar Dates**

7.     On October 13, 2020, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities [Docket Nos. 430 – 454].

8.     On October 14, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* [Docket No. 466] (the "Bar Date Order"), establishing certain dates and deadlines (each a "Bar Date") for filing proofs of claims in these chapter 11 cases. The Bar Date Order established: (a) November 25, 2020, as the Bar Date for all non-governmental entities to file Proofs of Claim, and (b) February 1, 2021, as the Bar Date for all governmental entities to file Proofs of Claim.

9.     On February 17, 2022, the Court entered the *Order Establishing Deadline for Filing Requests for Payment of Administrative Expense Claims and Procedures Relating Thereto and Approving Form and Notice Thereof* [Docket No. 2387], which, *inter alia*, established March 25, 2022 at 5:00 p.m. (Central Time) as the deadline (the "Administrative Claim Bar Date") for persons to assert Administrative Expense Claims against the Debtors.

10.     Section 7.5 of the Confirmed Plan provides, "[a]ny objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later

date as may be fixed by the Bankruptcy Court after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time." *See* Confirmed Plan § 7.5.  Accordingly, the deadline to object to Claims (the "Claims Objection Deadline") was originally February 23, 2022, which was extended to August 22, 2022 by the Court's order [Docket No. 2410] entered on March 16, 2022.  The Claims Objection Deadline was further extended to February 18, 2023 by the Court's order [Docket No. 2649] entered September 1, 2022.  Finally, the Claims Objection Deadline was further extended to August 17, 2023 by the Court's order [Docket No. 2770] entered March 16, 2023.

**D.     The Confirmed Plan and Confirmation Order**

11.     Fieldwood Energy LLC and its debtor affiliates (each a "Debtor" and, collectively, the "Debtors" or "Company") were one of the largest oil and gas exploration and production companies in the Gulf of Mexico.  Its portfolio of properties includes both deepwater assets and shallow water assets in the Gulf of Mexico. The Company's liquidity profile became volatile in the years preceding the Petition Date, primarily due to (i) the precipitous decline in crude oil prices starting in 2014 and then again in 2020 and (ii) the effects of the COVID-19 pandemic.  The worsening market conditions coupled with significant decommissioning costs resulted in reduced liquidity for the Company and, ultimately, led to the filing of these bankruptcy cases.

12.     The Confirmed Plan set forth a restructuring of the Debtors. The restructuring included a divisive merger pursuant to which Fieldwood Energy, LLC was divided into Fieldwood Energy I LLC (FWE I) and Fieldwood Energy III LLC (FWE III).  Through the divisive merger, FWE I was allocated and vested with certain assets Fieldwood Energy, LLC acquired from Apache (the "Legacy Apache Properties").  A schedule of the Legacy Apache Properties was included as **Exhibit C** to the Disclosure Statement.

E.  **Talos's Proofs of Claim**

13.  Talos Energy Offshore LLC, Talos Energy LLC, Talos Energy Inc., and Talos Production Inc. (collectively, "Talos") filed numerous proofs of claim in these bankruptcy cases. The Talos proofs of claim can be categorized into two categories: (a) Talos's initial proofs of claim, consisting of Proof of Claim Nos. 724, 780 and 786 (collectively, the "Talos Initial Claims"); and (b) Talos's administrative expense proofs of claim, consisting of Proof of Claim Nos. 1083, 1085 and 1088 (collectively, the "Talos Administrative Claims").

   a.  **Talos Initial Claims**

14.  Talos Oil & Gas LLC filed Proof of Claim No. 724 on November 25, 2020 against Fieldwood Energy Offshore LLC. Proof of Claim No. 724 asserts claims in the amount of $10,473,014.85 for Debtors' obligations under Property Agreements (as that term is defined in Proof of Claim No. 724) to:

   a.  Pay joint interest billing obligations with respect to the Debtors' interests;

   b.  When a Debtor is operator, account to and credit or reimburse non-operators for funds advanced by such non-operators pursuant to operator cash calls but not utilized for the purpose of such operator cash calls;

   c.  Pay throughoput fees and other amounts owed to the operators of production handling facilities under production handling agreements;

   d.  Respond to and otherwise credit or pay for unchallenged exceptions pursuant to an audit; and

   e.  Settle and otherwise pay imbalance payment obligations owed to non-operators arising under gas balancing agreements or otherwise.

15.  Talos alleges that the above obligations are secured by the Debtors' interests in the underlying oil and gas leases and certain other assets. Talos also alleges that there is a right to setoff and all or part of the claim.

16. Talos also alleges that Fieldwood Energy LLC is the operator under certain Unit Operating Agreement for a prospect known as the Funflint Prospect (covering Mississippi Canyon 948/949/992/993). Talos alleges that Fieldwood Energy LLC is required to use reasonable efforts to keep these leases free from all liens and encumbrances and hold Talos harmless from liens and encumbrances on these leases or in the contract area. Talos contends it received a Demand for Payment from Atlantic Maritime Services, LLC for the principal amount of $5,842,744.68 on account of purportedly unpaid invoices allegedly owned by Fieldwood Energy LLC. Talos alleges it is entitled to a secured claim against Fieldwood Energy LLC for the amounts Talos paus to Atlantic, to the extent that Talos' interest is burdened by Atlantic's alleged liens and privileges or Atlantic is able to sequester or otherwise obtain funds that are the proceeds of Talos' interest.

17. Proof of Claim No. 780 is identical to Proof of Claim No. 724 except that Talos asserts the claim against Fieldwood Energy LLC.

18. Proof of Claim No. 786 is identical to Proof of Claim No. 724 except that Talos asserts the claim against GOM Shelf LLC.

    **b. Talos Administrative Claims**

19. On March 25, 2022, Talos filed three Administrative Expense Proofs of Claim. Talos filed Claim No. 1083 against Fieldwood Energy LLC seeking an administrative expense claim in the amount of $4,981,540.73 "for goods and services provided to the Debtors and their estates representing the actual, necessary costs and expenses of preserving the Debtors' estates under 11 U.S.C. § 503(b)(1)(A) and/or pre and postpetition cure amounts which must be treated as administrative claims because of the Debtors' assumption of Talos' executory contracts." Talos alleges the claim also consists of "indemnification, contribution, reimbursement, setoff,

recoupment, or other payments…from Debtors pursuant to applicable contractual agreements and law, including but not limited to obligations related to Atlantic Maritime."

20. Also on March 25, 2022, Talos filed administrative expense Claim Nos. 1085 and 1088, both of which are identical to Claim No. 1083, except that they are asserted against GOM Shelf LLC and Fieldwood Energy Offshore LLC, respectively.

## OBJECTIONS

A. **Objection No. 1: The Talos Initial Claims Are Duplicate Claims**

21. Each of the Talos Initial Claims are duplicate claims. They are identical except for the Debtor's estate each Talos Initial Claim was filed. Failure to disallow and expunge all of the Talos Initial Claims except Proof of Claim No. 724 would result in Talos holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors. Accordingly, the Plan Administrator respectfully requests that each Talos Initial Claim, except for Proof of Claim No. 724, be disallowed as being duplicative of Proof of Claim No. 724.

B. **Objection No. 2: The Talos Administrative Claims Are Duplicate Claims**

22. Each of the Talos Administrative Claims assert administrative claims on the same grounds and are identical except for the Debtor's estate each Talos Administrative Claim was filed. Failure to disallow and expunge all of the Talos Administrative Claims except Proof of Claim No. 1083 would result in Talos holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors. Accordingly, the Plan Administrator requests that each Talos Administrative Claim, except Proof of Claim No. 1083, be disallowed as being duplicative of Proof of Claim No. 1083.

C.     **Objection No. 3: Duplicate Claims**

23.    The Liquidation Trustee also objects to the Talos Initial Claims and Talos Administrative Claims, to the extent that the claims asserted in each are asserted in another Talos Initial Claim and/or Talos Administrative Claim, on the grounds that they are duplicative. The Plan Administrator seeks disallowance of any duplicative claims within all of the proofs of claim filed by Talos.

D.     **Objection No. 4: 11 U.S.C. §§ 502(b)(1), 506(a) and Bankruptcy Rules 3001(c)(1) & (d) – Talos Initial Claims and Talos Rejection Damages Claims**

24.    The Plan Administrator objects to the Talos Initial Claims' assertion that they are secured claims under Sections 502(b)(1) and 506(a) of the Bankruptcy Code and Bankruptcy Rules 3001(c)(1) & (d). Specifically, the Plan Administrator objects that Talos does not have any in rem rights to look to specific items of property of the bankruptcy estate for payment of the Talos Initial Claims.

25.    Bankruptcy Rule 3001(c)(1) provides that "when a claim, or an interest in property of the debtor securing the claim, is based on writing, a copy of the writing shall be filed with the proof of claim." Bankruptcy Rule 3001(c)(1) continues, "If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim."

26.    Talos asserts that it "holds interests in certain offshore oil and gas leases and other assets and properties (as more particularly described in the table below) (collectively, the "<u>Subject Properties</u>") in which the Debtors also own interests. Talos asserts that the obligations of the Debtors are secured by the Debtors' interests in the Subject Properties and certain other assets in accordance with various agreements Talos has with the Debtors. However, Talos does not state which agreements such security interest arises under. Nor does Talos attach a copy of the applicable agreements or provide a statement of the circumstances of the loss or destruction of the

applicable operating agreements. As such, the Talos Initial Claims do not satisfy Bankruptcy Rule 3001(c)(1).

27. Since there are no documents or agreements identified under which Talos is provided a security interest in property of the Debtors, the Talos Initial Claims are not secured claims.

28. To the extent that Talos holds a valid security interest with respect to the Talos Initial Claims, the Plan Administrator requests a valuation of such security interest under 11 U.S.C. § 506 and that the value of such security interest be $0.00. Some or all of the leases disclosed in the Exhibits attached to the Talos Initial Claims have either been abandoned, terminated or expired and many of the executory contracts disclosed in Exhibit A to the Talos Initial Claims have been rejected. Thus, the value of any security interest is $0.00 and any Pre-Petition Claim allowed should be a general unsecured claim.

E.  **Objection No. 5: The Claims Related to Atlantic Maritime Services, LLC Are Disallowed Under 11 U.S.C. § 502(e)(1)(B)**

29. Section 502(e)(1)(B) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that…such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C. § 502(e)(1)(B).

30. The Talos Initial Claims consist, in part, of "[t]o the extent that Talos' interest is burdened by Atlantic[ Maritime Services, LLC]'s alleged liens and privileges or Atlantic is able to sequester or otherwise obtain funds that are the proceeds of Talos' interests, Talos hereby asserts a secured claim against Fieldwood Energy for the amounts paid to Atlantic." The Talos

Administrative Claim also contends "that, in order to assume the Mississippi UOA…or the UOA-related contracts, the Debtors must cure and perform any indemnification obligations arising from the Mississippi UOA or the UOA-related contracts, including any liabilities arising from the Atlantic Lien…." However, Talos fails to identify any amounts that it has actually paid to Atlantic Maritime Services, LLC on account of the Atlantic Maritime Services, LLC alleged lien and privilege and, as such, remains contingent.

31. Contingent claims should be disallowed if they meet the following factors: (i) the claim is for reimbursement or contribution, (ii) the claim is asserted by an entity that is liable with the debtor on an underlying claim, and (iii) the claim is contingent at the time of its allowance or disallowance. *See In re Sorenson v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 95-96 (S.D.N.Y. 1992)(articulating three-part test); *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004)(analyzing whether reimbursement claim was contingent, then assessing whether "the responding parties are 'liable with the debtor'").

32. If Talos were able to establish that the Debtors had reimbursement obligations pursuant to certain agreements, then any claim they may have in the future against the Debtors would be for reimbursement or contribution. "Courts have consistently held that 'the concept of reimbursement includes indemnity.'" *In re Falcon V, L.L.C.*, 620 B.R. 256, 269-70 (Bankr. M.D. La. 2020)(finding that surety that issued bonds was not entitled to claim pursuant to Section 502(e)(1)(B) since it was a contingent claim); *In re RNI Wind Down Corp.*, 369 B.R. 174, 181-82 (Bankr. D. Del. 2007)(quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)).

33. Second, the claim must be asserted by an entity that is liable with the debtor on an underlying claim. In order for Section 502(e) to apply, "[t]here must exist…a shared liability to the same party on the same claim." *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004). "[T]he co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 95 (S.D.N.Y. 1992). The existence of a direct claim by the third party against the debtor does not preclude the application of Section 502(e)(1)(B). *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. The extent of Talos' claim is the amount that Talos is required to pay and Talos admits that the Debtors contracted directly with Atlantic Maritime Services, LLC. As such, Talos' claim identifies a shared liability on the same claim.

34. Third, this portion of Talos' claim remains contingent. In the *Tri-Union Dev. Corp.* case, the Court noted that "contingent" under Section 502(e) in this context means "unfunded" and that claims remain "contingent" for purposes of Bankruptcy Code § 502(e)(1)(B) until the co-debtor has paid the creditor. *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. The claim related to the Atlantic Maritime lien and privilege remains contingent until Talos performs or pays for such lien or privilege.

F. **Objection No. 6: Talos Administrative Claims Are Not Necessary Costs and Expenses And Did Not Benefit The Estate And Its Creditors**

35. The Talos Administrative Claim seeks administrative expense priority under 11 U.S.C. § 503(b)(1)(A) "for goods and services provided to the Debtors and their estates representing the actual, necessary costs and expenses of preserving the Debtors' estates…"

> **i. Claims Asserting Section 503(b)(1) Administrative Expense Priority Status Must Be Narrowly Construed**

36. Section 503(a) of the Bankruptcy Code permits entities to timely file a request for payment of administrative expenses. 11 U.S.C. § 503(a). "The Bankruptcy Code provides that 'actual necessary costs and expenses of preserving the estate' are characterized as administrative expenses [under] 11 U.S.C. § 503(b)(1)(A) [], entitled to priority over the claims of other unsecured creditors." *Texas v. Lowe (In re H.L.S. Energy Company Inc.)*, 151 F.3d 434, 437 (5th Cir. 1998) (citing 11 U.S.C. § 507(a)(1)).

37. "Generally, section 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors." *In re Northstar Offshore Group, LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020) (quoting 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Richard Levin & Henry J. Sommers eds., 16th ed.).

> **ii. Talos Administrative Claims Did Not Arise From a Post-Petition Transaction**

38. A party claiming that its claim should be entitled to payment as an administrative claim bears the burden of proof. *In re Matter of Whistler Energy II, LLC*, 931 F.3d 432, 441 (5th Cir. 2019).

39. "In general, '[f]or a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a *postpetition transaction*; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition." *Northstar*, 628 B.R. at 299 (emphasis in original) (citing 4 COLLIER ON BANKRUPTCY ¶ 503.06[3][a] (Richard Levin & Henry J. Sommers eds., 16th ed.).

40. In analyzing the statutory requirements imposed by section 503 of the Bankruptcy Code, the Fifth Circuit has held, "to qualify as an 'actual and necessary cost' under section

503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *Whistler Energy II*, 931 F.3d at 441 (5th Cir. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)). On this element, "a creditor must show some inducement by the debtor-in-possession." *Id*. at 442.

41.     Here, any goods and services provided to the Debtors, to the extent performed, was not performed as a result of any post-petition transaction entered into between Talos and the Debtors. Talos fails to provide any information or documentation that the decommissioning and plugging and abandonment work was performed as a result of a post-petition transaction or that Talos was induced by the debtor-in-possession to perform decommissioning and plugging and abandonment work.

### iii. The Goods and Services Provided to the Debtors Did Not Benefit The Estate Or Its Creditors

42.     The inquiry of whether a post-petition cost benefitted the estate "is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been necessary within the meaning of § 503(b)(1)(A)." *Whistler Energy II,* 931 F.3d at 443 (quoting *IN re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998)). "Moreover, an 'actual and necessary cost' must have been of benefit to the estate and its creditors." *Northstar*, 628 B.R. at 298 (citing *In re H.L.S. Energy Co. Inc.*, 151 F.3d at 437). "This requirement is in keeping with the conceptual justification for administrative expense priority: that creditors must pay for those expenses necessary to produce distribution to which they are entitled." *Id*. at 299. "That is, the costs of salvage are to be paid." *Id*.

43.     Some or all of the goods and services provided to the Debtors, to the extent performed, was performed on leases and properties that were either abandoned by the Debtors as

part of the Confirmed Plan or on leases that had been terminated or expired. As such, these goods and services did not benefit the estates or their creditors because they neither resulted in distributions being made to the Estate's creditors nor did they enhance the ability of the debtor-in-possession's business to function. Instead, the goods and services, to the extent performed, was performed on abandoned properties or leases that had terminated or expired, all of which had no or inconsequential value to the Estates.

## CONCLUSIONS AND PRAYER

Talos has failed to carry its burden of demonstrating it is entitled to an administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code. For the reasons set forth above, the Administrator requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, denying Talos's requests for an administrative expense claim, disallowing all or part of the Talos Initial Claims and Talos Administrative Claims and granting such other and further relief as is just and appropriate under the circumstances.

DATED:  August 15, 2023

Respectfully submitted,

*/s/ Kenneth Green*
Ken Green (Texas State Bar No. 24036677)
Aaron Guerrero (Texas State Bar No. 24050698)
Bryan Prentice (Texas State Bar No. 24099787)
Bonds Ellis Eppich Schafer Jones LLP
950 Echo Lane, Suite 120
Houston, Texas 77024
(713) 335-4990 telephone
(713) 335-4991 facsimile
ken.green@bondsellis.com
aaron.guerrero@bondsellis.com
bryan.prentice@bondsellis.com

**ATTORNEYS FOR DAVID DUNN, THE PLAN ADMINISTRATOR FOR THE POST-EFFECTIVE DATE DEBTORS**

**CERTIFICATE OF SERVICE**

      I certify that on this 15th day of August, 2023, a true and correct copy of the above and foregoing was served through the Court's electronic case filing system (ECF) upon all parties registered with the ECF and by U.S. First Class Mail and email to the following:

Talos Energy Offshore LLC,
Talos Energy LLC, Talos Energy Inc.
And Talos Production Inc.
c/o Porter Hedges LLP
1000 Main St., 36th Floor
Houston, TX  77002
Attn:  Eric M. English
Email:  eenglish@porterhedges.com

                                        */s/Kenneth Green*
                                        Kenneth Green