# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY III LLC**, *et al.* | § | **Case No. 20-33948 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| Post-Effective date Debtors.[1] | § | |

## PLAN ADMINISTRATOR'S OBJECTION TO
## W&T OFFSHORE, INC.'S AND W&T ENERGY VI, LLC'S
## PROOFS OF CLAIM

[Related to POC Nos. 555, 556, 562, 563, 566, 567, 570, 997, 998, 1002, 1005, 1012, 1013, and 1123 filed by W&T Energy VI, LLC and POC Nos. 571, 572, 573, 574, 575, 576, 988, 989, 992, 995, 1008, 1011, 1097, 1098, 1099, 1100, and 1104 filed by W&T Offshore, Inc.]

---

**This is an objection to your claims. The objection asks the Court to disallow the claims that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claims may be disallowed without a hearing.**

**A hearing will be conducted on this matter on October 2, 2023, at 10:30 am (Central Time) in Courtroom 404, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1-832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy, Inc. (4991, GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore, LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Offshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703; and Galveston Bay Processing LLC (0422).

in the upper right corner and enter your name under the personal information setting.

Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.

If you object to the relief requested you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at **https://ecf.txsb.uscourts.gov/** within thirty (30) days from the date this objection was filed. Otherwise, the Court may treat the Objection as unopposed and sustain the relief requested.

Represented parties should act through their attorney.

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

David Dunn ("Administrator" or "Plan Administrator"), as Plan Administrator of Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy Inc., GOM Shelf LLC and FW GOM Pipeline, Inc., Debtors (the "Post-Effective Date Debtors") files this *Plan Administrator's Objection to W&T Offshore, Inc.'s and W&T Energy VI, LLC's Proofs of Claim* (the "Objection") and in support thereof respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

## BACKGROUND

A.      **The Chapter 11 Case**

2.      On August 3, 2020 and August 4, 2020 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the

"Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

3.     On June 25, 2021, the Court entered the *Findings of Facts, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") confirming, as modified therein, the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "Confirmed Plan").

4.     On August 27, 2021, the Debtors filed that certain *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 2016], setting forth that, *inter alia*, the Effective Date occurred on August 27, 2021 (the "Effective Date").

**B.     Plan Administrator**

5.     On the Effective Date, David Dunn of Province, Inc. was appointed to serve as the Plan Administrator pursuant to the Confirmed Plan.  *See* Confirmed Plan § 5.9(b).

6.     The Plan Administrator is responsible, to the extent not otherwise provided for in the Confirmed Plan, for carrying out and implementing all provisions of the Confirmed Plan on behalf of the Debtors and Post-Effective Date Debtors, including reviewing and reconciling all Claims asserted against the Debtors (including, but not limited to, Administrative Expense Claims, Other Secured Claims, Class 6A Unsecured Trade Claims, and Class 6B General Unsecured Claims) and making distributions on account of Allowed Claims.  As more fully set forth therein, section 5.9(c) of the Confirmed Plan vests the Plan Administrator with "all the rights, powers,

authority, and duties on behalf of each of the Debtors and [the] Post-Effective Date Debtors [other than the Post-Effective Date FWE I Subsidiaries pursuant to section 5.9(a) of the Confirmed Plan]…to carry out and implement all provisions of the [Confirmed] Plan." In short, the Plan Administrator has been tasked with: (i) controlling and effectuating the Claims reconciliation process; (ii) settling or compromising any Disputed Claims (as defined in the Confirmed Plan); and (iii) administering and adjusting the Debtors' claims register to reflect any such settlements and compromises.

**C.    Bar Dates**

7.      On October 13, 2020, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities [Docket Nos. 430 – 454].

8.      On October 14, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* [Docket No. 466] (the "Bar Date Order"), establishing certain dates and deadlines (each a "Bar Date") for filing proofs of claims in these chapter 11 cases. The Bar Date Order established: (a) November 25, 2020, as the Bar Date for all non-governmental entities to file Proofs of Claim, and (b) February 1, 2021, as the Bar Date for all governmental entities to file Proofs of Claim.

9.      On February 17, 2022, the Court entered the *Order Establishing Deadline for Filing Requests for Payment of Administrative Expense Claims and Procedures Relating Thereto and Approving Form and Notice Thereof* [Docket No. 2387], which, *inter alia*, established March 25, 2022 at 5:00 p.m. (Central Time) as the deadline (the "Administrative Claim Bar Date") for persons to assert Administrative Expense Claims against the Debtors.

10.     Section 7.5 of the Confirmed Plan provides, "[a]ny objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later

date as may be fixed by the Bankruptcy Court after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time." *See* Confirmed Plan § 7.5. Accordingly, the deadline to object to Claims (the "Claims Objection Deadline") was originally February 23, 2022, which was extended to August 22, 2022 by the Court's order [Docket No. 2410] entered on March 16, 2022. The Claims Objection Deadline was further extended to February 18, 2023 by the Court's order [Docket No. 2649] entered September 1, 2022. Finally, the Claims Objection Deadline was further extended to August 17, 2023 by the Court's order [Docket No. 2770] entered March 16, 2023.

D.      **The Confirmed Plan and Confirmation Order**

11.      Fieldwood Energy LLC and its debtor affiliates (each a "Debtor" and, collectively, the "Debtors" or "Company") were one of the largest oil and gas exploration and production companies in the Gulf of Mexico. Its portfolio of properties includes both deepwater assets and shallow water assets in the Gulf of Mexico. The Company's liquidity profile became volatile in the years preceding the Petition Date, primarily due to (i) the precipitous decline in crude oil prices starting in 2014 and then again in 2020 and (ii) the effects of the COVID-19 pandemic. The worsening market conditions coupled with significant decommissioning costs resulted in reduced liquidity for the Company and, ultimately, led to the filing of these bankruptcy cases.

12.      The Confirmed Plan set forth a restructuring of the Debtors. The restructuring included a divisive merger pursuant to which Fieldwood Energy, LLC was divided into Fieldwood Energy I LLC (FWE I) and Fieldwood Energy III LLC (FWE III). Through the divisive merger, FWE I was allocated and vested with certain assets Fieldwood Energy, LLC acquired from Apache Corporation (the "Legacy Apache Properties"). A schedule of the Legacy Apache Properties was included as **Exhibit C** to the Disclosure Statement.

5

E.     **W&T Offshore's and W&T Energy's Proofs of Claim**

13.     W&T Offshore, Inc. ("W&T Offshore") and W&T Energy VI, LLC ("W&T Energy") have filed numerous proofs of claim in these bankruptcy cases.  All of the proofs of claims filed by W&T Offshore and W&T Energy are vague and inconclusive.  Each proof of claim alleges that W&T Offshore or W&T Energy are entitled to broad categories of claims.  There are no details or specificity as the amounts or basis of W&T Offshore's and W&T Energy's claims.

14.     W&T Offshore's proofs of claim can be categorized into three categories: (a) W&T Offshore's initial proofs of claim, consisting of Proof of Claim Nos. 571, 572, 573, 574, 575 and 576 (collectively, the "W&T Offshore Initial Claims"); (b) W&T Offshore's rejection damages proofs of claim, consisting of Proof of Claim Nos. 988, 989, 992, 995, 1008 and 1011 (collectively, the "W&T Offshore Rejection Damages Claims"); and (c) W&T Offshore's administrative expense proofs of claim, consisting of Proof of Claim Nos. 1097, 1098, 1099, 1100 and 1104 (collectively, the "W&T Offshore Administrative Claims").

15.     W&T Energy's proofs of claim can be categorized into three categories: (a) W&T Energy's initial proofs of claim, consisting of Proof of Claim Nos. 555, 556, 562, 563, 566, 567 and 570 (collectively, the "W&T Energy Initial Claims"); (b) W&T Energy's rejection damages proofs of claim, consisting of Proof of Claim Nos. 997, 998, 1002, 1005, 1012 and 1013 (collectively, the "W&T Energy Rejection Damages Claims"); and (c) W&T Energy's administrative expense proof of claim, Proof of Claim No. 1123 (the "W&T Energy Administrative Claim").

a.     **The Initial Claims**

16.     Each of the W&T Offshore Initial Claims and W&T Energy Initial Claims are vague and fail to set forth, with any specificity, the amount or basis of W&T Offshore's and W&T

Energy's claims. The W&T Offshore Initial Claims allege that they are secured, have a right to setoff and are entitled to priority under Section 503(b)(9).  However, the W&T Offshore Initial Claims fail to specify, with any particularity, what property of the Debtors they have a security interest in or are entitled to setoff, what documents or statutes provide W&T Offshore with a security interest in the Debtors' property, what documents or statutes provide W&T Offshore with the right to setoff, and what goods W&T Offshore provided to the Debtors within 20-days of the Petition Date. Each of the W&T Offshore Initial Claims are identical except for the Debtor that the claim is filed against. The W&T Offshore Initial Claims make the following vague and inconclusive allegations:

a.  W&T and Fieldwood have a large number of contractual and legal relationships related to the ownership and operation of leases in the Gulf of Mexico Outer Continental Shelf as well as certain state leases.

b.  W&T and Fieldwood are parties to a vast set of contracts including operating agreements, production handling agreements, gas gathering and processing agreements, unit agreements, and many others.

c.  W&T operates leases in which Fieldwood holds a working interest.

d.  Additionally, W&T is a predecessor in title for certain assets in which Fieldwood has operating or working interests resulting in plugging and abandonment and decommissioning obligations under the applicable operating agreements, law, and regulations.

e.  W&T Offshore alleges its claim consists of the following:

i.  All rights against Fieldwood arising out of any obligations Fieldwood has under the applicable operating agreements and related contracts.  These claims include on-going joint interest billings, which are generally paid in the ordinary course of business.  These claims may include administrative claims to the extent Fieldwood fails to satisfy post-petition obligations.

ii.  All decommissioning and plugging and abandonment obligations related to the approximately 18 leases currently operated by either W&T or Fieldwood and its affiliates in which the other party owns a current working interest.   The total existing plugging and abandonment and decommissioning obligations for these leases exceed $370,000,000.

     iii.     All decommissioning and plugging and abandonment obligations related to multiple leases operated by the third parties in which both W&T and Fieldwood and its affiliates have current working interests. The total existing plugging and abandonment and decommissioning obligations for these leases exceed $5,000,000.

     iv.     All decommissioning and plugging and abandonment obligations related to leases in which W&T has a legacy interest and in which Fieldwood currently either operates or has a working interest. These obligations exceed $40,000,000.

     v.     All rights of setoff, netting, and recoupment arising under the operating agreements or by operation of law.

17.     The W&T Energy Initial Claims also allege that they are secured, have a right to setoff and are entitled to priority under Section 503(b)(9) but, like the W&T Offshore Initial Claims, the W&T Energy Initial Claims fail to specify, with any particularity, what property of the Debtors they have a security interest in or are entitled to setoff, what documents or statutes provide W&T Energy with a security interest in the Debtors' property, what documents or statutes provide W&T Energy with the right to setoff, and what goods W&T Energy provided to the Debtors within 20-days of the Petition Date. Each of the W&T Energy Initial Claims are identical except for the Debtor that the claim is filed against. The W&T Energy Initial Claims make the following vague and inconclusive allegations:

     a.     W&T and Fieldwood have a large number of contractual and legal relationships related to the ownership and operation of leases in the Gulf of Mexico Outer Continental Shelf as well as certain state leases.

     b.     W&T and Fieldwood are parties to a vast set of contracts including operating agreements, production handling agreements, gas gathering and processing agreements, unit agreements, and many others.

     c.     W&T operates leases in which Fieldwood holds a working interest.

     d.     Additionally, W&T is a predecessor in title for certain assets in which Fieldwood has operating or working interests resulting in plugging and abandonment and

decommissioning obligations under the applicable operating agreements, law, and regulations.

e.    W&T Energy alleges the W&T Energy Initial Claims consist of the following:

    i.    All rights against Fieldwood arising out of any obligations Fieldwood has under the applicable operating agreements and related contracts. These claims include on-going joint interest billings, which are generally paid in the ordinary course of business.  These claims may include administrative claims to the extent Fieldwood fails to satisfy post-petition obligations.

    ii.    All decommissioning and plugging and abandonment obligations related to the approximately 18 leases currently operated by either W&T or Fieldwood and its affiliates in which the other party owns a current working interest.    The total existing plugging and abandonment and decommissioning obligations of these leases exceed $300,000,000.

    iii.    All decommissioning and plugging and abandonment obligations related to multiple leases operated by third parties in which both W&T and Fieldwood and its affiliates have current working interests.  The total existing plugging and abandonment and decommissioning obligations for these leases exceed $2,000,000.

    iv.    All decommissioning and plugging and abandonment obligations related to leases in which W&T has a legacy interest and in which Fieldwood currently either operates or has a working interest.  These obligations exceed $40,000,000.

    v.    All rights to setoff, netting and recoupment arising under the operating agreements or by operation of law.

**b.    The Rejection Damages Claims**

18.    The W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims allege rejection damages claims resulting from the Debtors' rejection of certain executory contracts and unexpired leases by the Confirmed Plan.  Each of the W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims are identical except for the Debtor against whom the claim is asserted. The W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims make the following allegations:

9

a.  Article 8.1 of Fieldwood's confirmed Chapter 11 plan provided for the rejection of all agreements not expressly assumed.  Additionally, Fieldwood's plan provided for the abandonment of certain leases, rights of use, and rights of way. W&T has identified a number of operating agreements, marketing agreements, and other agreements that have been rejected pursuant to Article 8.1 of the plan.  While W&T's review continues, the rejected contracts include the following:

    i.  ST 311/320 A2/A3 Reserves – Ewing Bank 826 Flowline Throughput Capacity Lease Agreement effective December 1, 2018 between Fieldwood Energy LLC and W&T Offshore, Inc.

    ii.  GC 244 (Droshky)

        1.  The Rocky 16" Pipeline Throughput Capacity Lease Agreement dated March 1, 2017 and effective April 1, 2017 between Fieldwood Energy Offshore LLC and W&T Energy VI LLC and First Amendment to the Rocky 16" Pipeline Throughput Capacity Lease Agreement effective August 1, 2018 between Fieldwood Energy Offshore LLC and W&T Energy VI LLC

        2.  The Rocky 12" Pipeline Throughput Capacity Lease Agreement dated March 1, 2017 and effective April 1, 2017 between Fieldwood Energy Offshore LLC and W&T Energy VI LLC and First Amendment to the Rocky 12" Pipeline Throughput Capacity Lease Agreement effective August 1, 2018 between Fieldwood Energy Offshore LLC and W&T Energy VI LLC

    iii.  MC 243 (Matterhorn)

        1.  Reserve Dedication Agreement dated July 17, 2008 between Chevron Pipe Line Company and Total E&P USA, Inc.

        2.  Matterhorn Rate Allocation Agreement dated November 2, 2010 between Chevron Pipe Line Company, SP 49 Pipeline LLC, and W&T Energy VI LLC

    iv.  Onshore Separation

        1.  Separation and Stabilization Agreement effective May 1, 2010 between W&T Offshore, Inc. and Devon Energy (EC 338\349)

        2.  Separation Agreement dated October 1, 2007 between Apache Corporation and Walter Oil & Gas Corporation (HI 24)

       3.       Separation and Stabilization Agreement effective April 1, 2011 between Apache Corporation and Marubeni Oil & Gas (USA) Inc. (Marubeni only) portion of Magnolia

    v.      PHA – GI 108/ST 229 Reserves

       1.       Production Handling Agreement effective June 1, 2005 between Apache Corporation and W&T Offshore, Inc. covering Grand Isle Block 116 "A" Platform (Host Processing Facility) and South Timbalier Block 229 (Satellite Block).

    vi.     As a result of the rejection of these agreements, W&T has a number of wells and fields for which production will be stranded (Stranded Reserves).

b.      W&T Offshore alleges the following rejection damages:

    i.       All rights against Fieldwood arising out of any obligations Fieldwood has under the applicable rejected operating agreements and related contracts.

    ii.      The incremental increase in lease operating expenses that will not be paid by Fieldwood in the estimated amount of $18,281,620.

    iii.     The value of the Stranded Reserves.

    iv.     Unpaid joint interest billings in the amount of $1,116,417.00.

    v.      Gas imbalances related to the rejected contracts in the amount of $1,322,555.37.

    vi.     All decommissioning and plugging and abandonment obligations related to the rejected contracts and abandoned leases. W&T estimates the total plugging and abandonment related to these agreements to be approximately $170,000,000 [W&T Energy VI number is approximately $86,000,000].

    vii.    All rights of setoff, netting, and recoupment arising under the operating agreements or by operation of law.

19.    Each of the W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims allege that they are all or in part secured, are subject to a right of setoff, and are all or in part entitled to priority under 11 U.S.C. § 509(b)(3).

c.    **The Administrative Claims**

20.    W&T Offshore filed 5 Administrative Expense Claims.  Each of the W&T Offshore

Administrative Claims allege:

> During the pendency of the Bankruptcy Case, W&T operated certain
> oil and gas leases in which the Debtor held an interest.  W&T
> incurred expenses in these operations for the benefit of Debtor's
> estate, which remain unpaid.  Additionally, the Debtor assumed
> certain contracts with W&T and failed to pay cure amounts related
> to those contracts which also constitute amounts incurred for the
> estate's benefit during the pendency of the case.

21.    W&T Offshore alleges the following damages with respect to each W&T Offshore

Administrative Claim:

    a.    Proof of Claim No. 1097 - $395,551.46

    b.    Proof of Claim No. 1098 - $37,546.60

    c.    Proof of Claim No. 1099 - $105,668.29

    d.    Proof of Claim No. 1100 - $27,005.64

    e.    Proof of Claim No. 1104 - $161,403.53

22.    The W&T Energy Administrative Claim also alleges:

> During the pendency of the Bankruptcy Case, W&T operated certain
> oil and gas leases in which the Debtor held an interest.  W&T
> incurred expenses in these operations for the benefit of Debtor's
> estate, which remain unpaid.  Additionally, the Debtor assumed
> certain contracts with W&T and failed to pay cure amounts related
> to those contracts which also constitute amounts incurred for the
> estate's benefit during the pendency of the case.

23.    The W&T Energy Administrative Claim alleges a claim in the amount of

$105,667.43.

## OBJECTIONS

**A.    Objection No. 1: The W&T Offshore Initial Claims Are Duplicate Claims**

24.    Each of the W&T Offshore Initial Claims are duplicate claims.  Each of the W&T Offshore Initial Claims are identical except for the Debtor the claim is filed against.  Each W&T Offshore Initial Claim is asserting an identical claim.  Failure to disallow and expunge all of the W&T Offshore Initial Claims except for one would result in W&T Offshore holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors.  Accordingly, the Plan Administrator respectfully requests that each W&T Offshore Initial Claim, except for Proof of Claim No. 571, be disallowed as being duplicative of Proof of Claim No. 571.

**B.    Objection No. 2: The W&T Energy Initial Claims Are Duplicative Claims**

25.    Each of the W&T Energy Initial Claims are duplicate claims.  Each of the W&T Energy Initial Claims are identical except for the Debtor the claim is filed against.  Each W&T Energy Initial Claim is asserting an identical claim.  Failure to disallow and expunge all of the W&T Energy Initial Claims except for one would result in W&T Energy holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors.  Accordingly, the Plan Administrator respectfully requests that each W&T Energy Initial Claim, except for Proof of Claim No. 555, be disallowed as being duplicative of Proof of Claim No. 555.

**C.    Objection No. 3: The W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims Are Duplicate Claims**

26.    Each of the W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims are identical and duplicates of each other, except for the W&T entity asserting the claim and the Debtor the claim was filed against.  Substantively, the W&T Offshore Rejection

Damages Claims and W&T Energy Rejection Damages Claims are identical. Failure to disallow and expunge all but one of the W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims would result in W&T Offshore and W&T Energy holding duplicate claims against the Debtors and an unwarranted recovery against the Debtors' estates to the detriment of other creditors. Accordingly, the Plan Administrator respectfully requests that each W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims, except for Proof of Claim No. 988, be disallowed as being duplicative of Proof of Claim No. 988.

**D.      Objection No. 4: Duplicate Claims**

27.    The Administrator also objects to the W&T Offshore Initial Claims, W&T Energy Initial Claims, W&T Offshore Rejection Damages Claims, W&T Energy Rejection Damages Claims, W&T Offshore Administrative Claims and W&T Energy Administrative Claim (collectively, the "W&T Claims"), to the extent that the claims asserted in each are asserted in another W&T Claim, on the grounds that they are duplicative. The Plan Administrator seeks disallowance of any duplicative claims within all of the proofs of claim filed by W&T Offshore and W&T Energy.

**E.      Objection No. 5: 11 U.S.C. § 502(b)(1) and Bankruptcy Rule 3001(a) – W&T Offshore Initial Claims and W&T Energy Initial Claims**

28.    The Administrator objects to the W&T Offshore Initial Claims and W&T Energy Initial Claims (collectively, the "Pre-Petition Claims") under Section 502(b)(1) of the Bankruptcy Code on the basis that the Pre-Petition Claims are unenforceable against the Debtors and property of the Debtors.

29.    The Pre-Petition Claims fail to set forth W&T Offshore's and W&T Energy's claims in accordance with Bankruptcy Rule 3001(a). The Pre-Petition Claims make vague allegations to the extent that the Administrator cannot determine whether W&T Offshore and

W&T Energy are entitled to allowed claims nor the amount of said claims. Bankruptcy Rule 3001(a) requires a proof of claim to be a "written statement setting forth a creditor's claim." The Pre-Petition Claims fail this standard. As such, the Administrator objects to the Pre-Petition Claims pursuant to Bankruptcy Rule 3001(a) and requests additional documentation and information from W&T Offshore and W&T Energy to substantiate the Pre-Petition Claims' basis and amounts.

30.    The Debtors' records reflect that no pre-petition amounts are owed to W&T Offshore or W&T Energy. Further, the Administrator is unaware of any right of setoff or recoupment that W&T Offshore or W&T Energy holds. As such, the Administrator objects to the W&T Offshore Initial Claims and W&T Energy Initial Claims and any such claim allowed should be limited to a general unsecured claim and there is no right to setoff or recoupment.

**F.    Objection No. 6: 11 U.S.C. §§ 502(b)(1), 506(a) and Bankruptcy Rules 3001(c)(1) & (d) – Pre-Petition Claims, W&T Offshore Rejection Damages Claims and W&T Energy Rejection Damages Claims**

31.    The Plan Administrator objects to the Pre-Petition Claims', the W&T Offshore Rejection Damages Claims' and W&T Energy Rejection Damages Claims' (the W&T Offshore Rejection Damages Clams and W&T Energy Rejection Damages Claims will be referred to, collectively, as the "Rejection Claims") assertion that they are secured claims under Sections 502(b)(1) and 506(a) of the Bankruptcy Code and Bankruptcy Rules 3001(c)(1) & (d). Specifically, the Plan Administrator objects that W&T Offshore and W&T Energy do not have any in rem rights to look to specific items of property of the bankruptcy estate for payment of the Pre-Petition Claims and Rejection Claims.

32.    Bankruptcy Rule 3001(c)(1) provides that "when a claim, or an interest in property of the debtor securing the claim, is based on writing, a copy of the writing shall be filed with the

proof of claim." Bankruptcy Rule 3001(c)(1) continues, "If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." W&T Offshore and W&T Energy assert that all or part of the Pre-Petition Claims and Rejection Claims are secured by a lien. However, W&T Offshore and W&T Energy do not identify, with any specificity, any agreement, document or statute under which a security interest arises. Nor does W&T Offshore nor W&T Energy attach a copy of the applicable agreements or documents or provide a statement of the circumstances of the loss or destruction of the applicable agreements or documents. Finally, W&T Offshore and W&T Energy do not identify any property of the Debtor to which their alleged security interest attaches. Simply put, there is insufficient information for the Administrator to analyze whether all or part of the Pre-Petition Claims and Rejection Claims are properly secured claims. As such, neither the Pre-Petition Claims or the Rejection Claims satisfy Bankruptcy Rule 3001(c)(1).

33.     Bankruptcy Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." There is no evidence nor even a statement that W&T Offshore and W&T Energy perfected its security interest in the any property of the Debtors and the Pre-Petition Claims and Rejection Claims do not satisfy Bankruptcy Rule 3001(d).

34.     Since there are no documents or agreements identified under which W&T Offshore and W&T Energy are provided a security interest in property of the Debtors, the Pre-Petition Claims and Rejection Claims are not secured claims.

35.     To the extent that W&T Offshore or W&T Energy have a valid security interest with respect to the Pre-Petition Claims or Rejection Claims, the Plan Administrator requests a valuation of such security interest under 11 U.S.C. § 506 and that the value of such security interest

be $0.00.  The Debtors had numerous leases that have either been abandoned, terminated or expired and many executory contracts disclosed in the Rejection Claims have been rejected.  Thus, the value of any security interest is $0.00 and any Pre-Petition Claim and Rejection Claim allowed should be a general unsecured claim.

**G.    Objection No. 7: 11 U.S.C. § 503(b)(9) Does Not Apply to the Pre-Petition Claims Nor the Rejection Claims**

36.    The Statements of Claim attached to the Pre-Petition Claims and Rejection Claims state that all or part of the claim is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9).  However, the Pre-Petition Claims and Rejection Claims do not state, or even allege, that the claims are entitled to priority under 11 U.S.C. § 503(b)(9).

37.    Section 503(b)(9) provides that there shall be allowed administrative expenses for "the value of any goods received by the debtor within 20 days before the date of the commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  The Pre-Petition Claims do not disclose any goods sold to the debtor and received by the debtor within 20 days before the Petition Date.  The Administrator objects to the Pre-Petition Claims because the Debtors' books and records do not reflect the Debtors receiving any goods from W&T Offshore nor W&T Energy within 20 days of the Petition Date and the Pre-Petition Claims and Rejection Claims are not entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code.

**H.    Objection No. 8: The Decommissioning and Plugging and Abandonment Work Are Disallowed Under 11 U.S.C. § 502(e)(1)(B)**

38.    Section 502(e)(1)(B) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that…such claim for reimbursement or contribution is contingent as of the time of

allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C. § 502(e)(1)(B).

39.     Each of the Pre-Petition Claims make three claims for decommissioning and plugging and abandonment obligations related to: (a) "approximately 18 leases currently operated by either W&T or Fieldwood and its affiliates in which the other party owns a current working interest"; (b) "multiple leases operated by third parties in which both W&T and Fieldwood and its affiliates have current working interests"; and (c) "leases in which W&T has a legacy interest and in which Fieldwood currently either operates or has a working interest." Similarly, the Rejection Claims include a claim for "[a]ll decommissioning and plugging and abandonment obligations related to the rejected contracts and abandoned leases."

40.     However, the Pre-Petition Claims and Rejection Claims fail to identify any decommissioning work that W&T Offshore or W&T Energy have actually performed or paid for. W&T Offshore and W&T Energy have also failed to identify any contract or agreement in which they are entitled to reimbursement or contribution from the Debtors.  There is no statement, claim or evidence that such decommissioning work has actually been performed.  As such, any obligation, if such an obligation exists, on the Debtors part remains contingent.

41.     Contingent claims should thus be disallowed if they meet the following factors: (i) the claim is for reimbursement or contribution, (ii) the claim is asserted by an entity that is liable with the debtor on an underlying claim, and (iii) the claim is contingent at the time of its allowance or disallowance. *See In re Sorenson v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 95-96 (S.D.N.Y. 1992)(articulating three-part test); *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004)(analyzing whether

reimbursement claim was contingent, then assessing whether "the responding parties are 'liable with the debtor'").

42.     If W&T Offshore and W&T Energy are able to establish that the Debtors had reimbursement obligations pursuant to certain agreements, then any claim they may have in the future against the Debtors would be for reimbursement or contribution.  "Courts have consistently held that 'the concept of reimbursement includes indemnity.'"  *In re Falcon V, L.L.C.*, 620 B.R. 256, 269-70 (Bankr. M.D. La. 2020)(finding that surety that issued bonds was not entitled to claim pursuant to Section 502(e)(1)(B) since it was a contingent claim); *In re RNI Wind Down Corp.*, 369 B.R. 174, 181-82 (Bankr. D. Del. 2007)(quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)).

43.     Second, the claim must be asserted by an entity that is liable with the debtor on an underlying claim.  In order for Section 502(e) to apply, "[t]here must exist…a shared liability to the same party on the same claim."  *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004).  "[T]he co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay."  *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 95 (S.D.N.Y. 1992).  The existence of a direct claim by the third party against the debtor does not preclude the application of Section 502(e)(1)(B).  *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. The Debtors and W&T Offshore and/or W&T Energy are jointly and severally liable to BOEM and BSEE on the decommissioning, plugging and abandonment obligations.

44.     Third, the decommissioning work remains contingent.  In the *Tri-Union Dev. Corp.* case, the Court noted that "contingent" under Section 502(e) in this context means "unfunded" and that claims remain "contingent" for purposes of Bankruptcy Code § 502(e)(1)(B) until the co-

debtor has paid the creditor. *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. The decommissioning work remains contingent until W&T Offshore or W&T Energy performs or pays for such decommissioning costs and expenses.

**I.     Objection No. 9: Any Decommissioning And Plugging and Abandonment Work Are Not Necessary Costs and Expenses And Did Not Benefit The Estate And Its Creditors**

45.     The Pre-Petition Claims state that Debtor's decommissioning and plugging-and-abandonment obligations may constitute administrative priority claims.

**i.      Claims Asserting Section 503(b)(1) Administrative Expense Priority Status Must Be Narrowly Construed**

46.     Section 503(a) of the Bankruptcy Code permits entities to timely file a request for payment of administrative expenses. 11 U.S.C. § 503(a). "The Bankruptcy Code provides that 'actual necessary costs and expenses of preserving the estate' are characterized as administrative expenses [under] 11 U.S.C. § 503(b)(1)(A) [], entitled to priority over the claims of other unsecured creditors." *Texas v. Lowe (In re H.L.S. Energy Company Inc.)*, 151 F.3d 434, 437 (5th Cir. 1998) (citing 11 U.S.C. § 507(a)(1)).

47.     "Generally, section 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors." *In re Northstar Offshore Group, LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020) (quoting 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Richard Levin & Henry J. Sommers eds., 16th ed.).

**ii.      Decommissioning and Plugging and Abandonment Work Did Not Arise From a Post-Petition Transaction**

48.     A party claiming that its claim should be entitled to payment as an administrative claim bears the burden of proof. *In re Matter of Whistler Energy II, LLC*, 931 F.3d 432, 441 (5th Cir. 2019).

20

49.     "In general, '[f]or a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a *postpetition transaction*; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition." *Northstar*, 628 B.R. at 299 (emphasis in original) (citing 4 COLLIER ON BANKRUPTCY ¶ 503.06[3][a] (Richard Levin & Henry J. Sommers eds., 16th ed.).

50.     In analyzing the statutory requirements imposed by Section 503 of the Bankruptcy Code, the Fifth Circuit has held, "to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *Whistler Energy II*, 931 F.3d at 441 (5th Cir. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)).  On this element, "a creditor must show some inducement by the debtor-in-possession." *Id*. at 442.

51.     Here, any decommissioning and plugging and abandonment work, to the extent performed, was not performed as a result of any post-petition transaction entered into between W&T Offshore or W&T Energy and the Debtors.  W&T Offshore and W&T Energy fail to provide any information or documentation that the decommissioning and plugging and abandonment work was performed as a result of a post-petition transaction or that W&T Offshore and W&T Energy were induced by the debtor-in-possession to perform decommissioning and plugging and abandonment work.

   iii.     **The Plugging And Abandonment And Decommissioning Work Did Not Benefit The Estate Or Its Creditors**

52.     The inquiry of whether a post-petition cost benefitted the estate "is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been necessary within the meaning of § 503(b)(1)(A)." *Whistler Energy II,* 931

F.3d at 443 (quoting *IN re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998)).  "Moreover, an 'actual and necessary cost' must have been of benefit to the estate and its creditors." *Northstar*, 628 B.R. at 298 (citing *In re H.L.S. Energy Co. Inc.*, 151 F.3d at 437). "This requirement is in keeping with the conceptual justification for administrative expense priority: that creditors must pay for those expenses necessary to produce distribution to which they are entitled."  *Id*. at 299. "That is, the costs of salvage are to be paid."  *Id*.

53.    First, there is no information nor documentation provided by W&T Offshore and W&T Energy that any plugging and abandonment and decommissioning work was performed or paid for.  Without such documentation and information, there is no claim for W&T Offshore and W&T Energy to assert.

54.    The plugging and abandonment and other decommissioning work, to the extent performed, may have been performed on leases and properties that were either abandoned by the Debtors as part of the Confirmed Plan or on leases that had been terminated or expired.  As such, the plugging and abandonment and other decommissioning work did not benefit the estates or their creditors because they neither resulted in distributions being made to the Estate's creditors nor did they enhance the ability of the debtor-in-possession's business to function. Instead, the plugging and abandonment and other decommissioning work, to the extent performed, was performed on abandoned properties or leases that had terminated or expired, all of which had no or inconsequential value to the Estates.

**J.    Objection No. 10: W&T Energy and W&T Offshore Are Not Entitled To An Administrative Expense Claim For Plugging and Abandonment and Other Decommissioning Work On Abandoned Property – Pre-Petition Claims and Rejection Claims**

55.    As discussed above, the Pre-Petition Claims assert that they may be entitled to an administrative expense claim for plugging and abandonment and decommissioning work and

liabilities.  Likewise, the Rejection Claims assert they are entitled to claims for decommissioning and plugging and abandonment obligations related to rejected contracts and abandoned leases. To the extent that such work relates to abandoned properties, W&T Offshore and W&T Energy are not entitled to an administrative expense claim.

56.    While W&T Offshore and W&T Energy do not make clear what authority they rely upon, it is likely they will rely on the Supreme Court's decision in *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494 (1986), the Fifth Circuit's holding in *State of Tex. v. Lowe (in re H.L.S. Energy Co., Inc.)*, 151 F.3d 434, 436 (5th Cir. 1998) and this Court's holding in *In re Am. Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009).  Reliance on each of these cases is misplaced.

57.    In *Midlantic*, the issue was whether a bankruptcy trustee could abandon property contaminated with hazardous waste in contravention of state and local laws designed to protect public health or safety.  The Supreme Court held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards."  *Midlantic*, 474 U.S. at 506.  The Supreme Court reasoned that 28 U.S.C. § 959(b) requires a trustee to "manage and operate the property in his possession…according to the requirements of the valid laws of the state."  *Id*. at 505 (quoting 28 U.S.C. § 959(b)).  Section 959(b) was evidence that Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of the trustee's powers.  *Id*. "The Supreme Court, however, expressly left open the question of the priority accorded to governmental costs if the trustee fails to respond to a cleanup order."  *Northstar*, 628 B.R. at 301.

58.    In *H.L.S. Energy*, the debtor's obligation to decommission inactive wells arose post-petition and the bankruptcy estate did not have sufficient funds to pay the decommissioning costs.

23

The trustee and the State of Texas agreed that the State would plug the wells and charge the costs to the bankruptcy estate. When the State asserted an administrative expense claim, the trustee objected, arguing that the claim was not entitled to administrative expense status. The Fifth Circuit held that the State's claim was entitled to administrative expense priority because the obligation to plug the wells arose post-petition and the trustee was required to operate the bankruptcy estate in accordance with state law, which required the wells to be plugged. *In re H.L.S. Energy,* 151 F.3d at 438. The court further reasoned that expenses incurred to comply with state law were actual and necessary costs of managing and preserving the estate. *Id.*

59.    In *Am. Coastal,* the debtor owned and operated eight wells that became inactive prior to its bankruptcy filing. The Texas Railroad Commission plugged the wells, and sought reimbursement from the debtor as an administrative expense claim. Citing federal and state law, the debtor argued that, because the liability arose prepetition, the plugging expense did not qualify as an administrative expense, but rather, was a general unsecured claim. The Court rejected the debtor's argument and held that the Texas Railroad Commission's claims were administrative expense claims because the expenses benefitted the estate by remedying violations of environmental and safety laws, regardless of whether the liability for the violation first occurred prepetition or post-petition. *In re Am. Coastal,* 399 B.R at 811.

60.    First, neither *Midlantic, H.L.S. Energy* nor *Am. Coastal* concerned a private party like W&T Offshore and W&T Energy.  Instead, the administrative expense claim was asserted by a state agency burdened with the costs of cleaning up the debtor's environmental obligations.  This Court made clear in *Am. Coastal* that "its analysis is limited to environmental remediation claims made by a governmental unit for postpetition remediation." *In re Am. Coastal,* 399 B.R. at 809, n.3. This Court also made clear in *Northstar* that such distinction is important in the analysis of

whether decommissioning obligations are entitled to administrative priority. *In re Northstar*, 628 B.R. at 302 – 303 ("However, unlike in *American Coastal*, the party asserting administrative priority is not a state agency, nor, as Northstar argues, was the trustee operating a business in light of Northstar's sale of substantially all of its assets to NOV, nor did 28 U.S.C. § 959 apply because [] Northstar was not in possession of the property.").

61.     More importantly, in both *H.L.S. Energy* and *Am. Coastal*, the debtor continued to have an ownership and/or operating interest in the wells.  The *H.L.S. Energy* and *Am. Coastal* courts relied on the statutory language in 28 U.S.C. § 959(b) requiring a debtor-in-possession to manage and operate the property in his possession" in accordance with state laws. *See In re H.L.S. Energy,* 151 F.3d at 438; *In re Am. Coastal,* 399 B.R at 810-12. These cases only found that a debtor incurs administrative expenses for decommissioning costs related to property in the debtor's possession. In other words, only those decommissioning costs incurred in connection with property in which the Debtor has an interest can qualify as an administrative expense. As the *Am. Coastal* court noted:

> Opinions that have denied administrative expense characterization of postpetition expenditures to remediate pre-petition environmental liabilities involved expenditures on property that was no longer property of the bankruptcy estate. *In re Dant* & *Russell, Inc.,* 853 F.2d 700, 709 (9th Cir. 1988) *("Kovacs* and *Johnson Bronze* are significant in that they involved assertions of administrative expense priority by a lessor for cleanup costs resulting from property not owned by the bankruptcy estate"). *See also Ohio v. Kovacs,* 469 U.S. 274, 105 S. Ct 705, 83 L. Ed. 2d 649 (1985); *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir. 1985). Since the property was no longer estate property, the expenditure was not necessary to preserve the estate.

*In re Am. Coastal,* 399 B.R. 805, n.4. Other courts have reached similar conclusions. *See, e.g., In re McCrory Corp,* 188 B.R. 763, 769-70 (Bankr. S.D.N.Y. 1995) (holding that a debtor had appropriately abandoned a leasehold interest by rejection of the relevant lease, that such leasehold

interest was no longer property of the estate, and that any postpetition cleanup costs would not benefit the estate); *In re Insilco Techs., Inc.,* 309 B.R. 111, 115 (Bankr. D. Del. 2004) ("In general, only those costs incurred to cleanup property for which an estate has an interest in or owns may qualify as administrative expenses."); *In re Mahoney-Troast Constr. Co.,* 189 B.R. 57, 62 (Bankr. D. N.J. 1995) ("Finally, as the trustee points out, the debtor did not own the property and cleanup was effected almost two years after the lease was rejected and the trustee returned the property."). Indeed, the rationale behind these holdings is that the estate does not benefit from remediation costs incurred post-petition once the property in question is no longer property of the estate.

62.     This Court found similarly in *Northstar*, 628 B.R. 286 (Bankr. S.D. Tex. 2020). In *Northstar*, the debtor was a co-owner of two oil and gas leases with Medco Energi. *Northstar*, 628 B.R. at 291. Post-petition, the leases were rejected pursuant to 11 U.S.C. § 365. *Id*. at 290. After the rejection, Medco Energi performed decommissioning work on the leases and filed an application for allowance and payment of an administrative claim seeking the debtor's share of the decommissioning cost.  *Id*. at 294 – 295.   While this court recognized that Northstar's decommissioning obligations under the leases were the type of "continuing post-petition duty" that could give rise to an administrative claim, the Court held that such claim was not an administrative expense because the trustee was not operating a business in light of Northstar's sale of substantially all of its assets and 28 U.S.C. § 959 did not apply because Northstar was not in possession of the property. *Id*. at 302 – 303.

63.     Here, as of the Effective Date, the Debtors abandoned the properties and leases upon which plugging and abandonment and decommissioning work will be or has been incurred. As a result, the abandoned properties were no longer a part of the estate. *See* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] (16th 2023) ("Upon abandonment under section 554, the trustee is

divested of control of the property because it is no longer part of the estate."). At least with respect to the abandoned properties, there is no business being operated by a trustee or debtor-in-possession.

64.     The plugging and abandonment and decommissioning work are for costs and expenses that W&T Offshore and W&T Energy may incur on abandoned properties after the Effective Date.   Like the creditor in *Northstar*, W&T Offshore and W&T Energy seek an administrative expense claim against property that is no longer property of the estate.  As such, the estate is no longer in possession of the abandoned properties, is not operating a business in which the abandoned properties are utilized and W&T Offshore and W&T Energy are not entitled to an administrative expense priority claim on account of the decommissioning work.  *See, e.g., Northstar*, 628 B.R. at 301 - 303, *In re McCrory Corp.*, 188 B.R. at 765; *Johnson Bronze Co.*, 758 F.2d at 141.

**K.      Objection No. 10: W&T Offshore and W&T Energy Cannot Subrogate To An Administrative Expense Priority Claim – Pre-Petition Claims and Rejection Claims.**

65.     In *In re Northstar*, 628 B.R. 286 (Bankr. S.D. Tex. 2020), Medco Energi, the creditor seeking an administrative claim, argued it was entitled to subrogation of its claim to the rights of the United States pursuant to 11 U.S.C. § 509(a) in light of Northstar and Medco Energi's joint and several liability under 30 C.F.R. § 250.1701.  *Northstar*, 628 at 304.  The Court disagreed, holding that the exception in Section 509(b) of the Bankruptcy Code precluded Medco Energi's subrogation claim because Medco Energi was jointly and severally liable with Northstar and Medco Energi received consideration in the form of the release of its obligations by the United States.  *Id*. at 304 – 309.

66.     Section 509(a) and (b) provide:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

(1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—
          (A) allowed under section 502 of this title;
          (B) disallowed other than under section 502(e) of this title; or
          (C) subordinated under section 510 of this title; or

(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

67.     In *Northstar*, this Court discussed the purpose of Section 509(a) and why it should be narrowly construed:

Accordingly, under § 509, which governs 'claims of codebtors, to be subrogated to a claim, creditors must show that (1) they are an entity that is liable with the debtor on, or that has secured, a claim of a creditor against a debtor, (2) they have paid the claim secured, and (3) they have not received consideration for the claim held by such creditor.' Section 509 allows a co-obligor who pays, after the petition date, a claim for which the debtor is primarily liable, to be subrogated to the rights of the creditor that the co-obligor has paid. Section 509 operates as a narrow, equitable backstop to ensure that a co-obligor is entitled to whatever distribution would otherwise have gone to the creditor whose claim the obligor paid postpetition. Under section 509(a), an entity is liable with the debtor when the entity is obligated to pay, by law or equity, on a claim of a creditor *against the debtor*. In other words, in 'order for subrogation to be available to the co-obligor under section 509, [] the *debtor* must be the party that in the eyes of the law is *primarily liable* for the indebtedness paid by the obligor. This is so because "[o]ne cannot seek subrogation for paying one's own debts."

*Northstar*, 628 B.R. at 305 – 306 (emphasis added)(internal citations omitted).

68.     The principles of Section 509(a) are further reflected under the exception set forth in Section 509(b)(2):

> Taking into consideration '[t]he legislative history, and generally recognizable principles of law of equitable subrogation,' as set forth in the exception under § 509(b), 'courts refuse to extend section 509 to a party who itself is primarily liable on the creditors claim *or* has otherwise received the consideration for the claim of the creditor.'

*Northstar* at 306.

69.     Section 509(b)(2) makes clear that where "the co-obligor itself received consideration for which its payment was made, it will not be subrogated to the rights of the creditor that it paid." *Id*. (quoting 4 COLLIER ON BANKRUPTCY ¶ 509.01[4] (Richard Levin & Henry J. Sommers eds., 16th ed.)). "This implements the public policy behind section 509, which is to permit subrogation of those *secondary liable* with the debtor but to deny subrogation where the paying co-obligor is merely paying its own debt." *Id*. at 306 – 307. "Notably, courts have 'recognized that a party who pays a judgment on which it is *jointly and severally liable* with the debtor does not have the right to subrogation, because the paying creditor receives consideration in the form of a release." *Id*. at 307.

70.     The Code of Federal Regulations provides that "lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases…as the obligations accrue and until each obligation is met."  30 C.F.R. § 250.1701(a). Likewise, "[a]ll holders of right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met."  30 C.F.R. § 250.1701(b). Decommissioning obligations accrue when a party is or "become[s] a lessee or the owner of operating rights of a lease on which there is a well that has not been permanently plugged according

to this subpart, a platform, a lease term pipeline, or other facility, or an obstruction." 30 C.F.R. § 250.1702(d). "Every current and prior record title owner is *jointly and severally liable*, along with all other record title owners and all prior and current operating rights owners, for compliance with…decommissioning obligations, which accrue while it holds record title interest." 30 C.F.R. § 556.604(d) (emphasis added).

71.      W&T Offshore and W&T Energy are not entitled to be subrogated to the rights of the United States for such plugging and abandonment and other decommissioning work that W&T Offshore and W&T Energy have actually performed and/or paid for. W&T Offshore and W&T Energy, just like the creditor in *Northstar*, are a co-owner of the lease. As such, W&T Offshore and W&T Energy are jointly and severally liable with the Debtors for any decommissioning work. Therefore, neither W&T Offshore, W&T Energy nor the Debtors are primarily or secondarily liable as to the plugging and abandonment and other decommissioning work. W&T Offshore and W&T Energy cannot avail themselves of subrogation under Section 509(a) of the Bankruptcy Code. Moreover, because W&T Offshore's and W&T Energy's liability is of equal status as the Debtors, paying for or performing the plugging and abandonment and other decommissioning work, W&T Offshore and W&T Energy received consideration in the form of a release by the United States.

72.      In addition and in the alternative to the preceding objection, W&T Offshore's and W&T Energy's plugging and abandonment and other decommissioning work constitutes prepetition obligations of the Debtors, W&T Offshore and W&T Energy. Although plugging and abandonment and decommissioning work may have occurred post-petition, the plugging and abandonment and decommissioning obligations of W&T Offshore and W&T Energy and the Debtors accrued pre-petition.

30

73.     As discussed above, all prior and current interest holders in the properties upon which plugging and abandonment and decommissioning work were performed are jointly and severally liable to BOEM and BSEE for the decommissioning obligations.  30 C.F.R.  §§ 250.146, 250.1701. In particular, 30 C.F.R. § 250.1701 provides that:

      a.      Lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases, including the obligations related to lease-term pipelines, as the obligations accrue and until each obligation is met.

      b.      All holders of a right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met.

      c.      In this subpart, the terms "you" or "I" refer to lessees and owners of operating rights, as to facilities installed under the authority of a lease, and to right-of-way holders as to facilities installed under the authority of a right-of-way.

74.     Pursuant to 30 C.F.R. § 250.1702, both W&T Offshore, W&T Energy and the Debtors became obligated to perform decommissioning obligations when they first became parties to the lease, which occurred during the prepetition period.   Accordingly, the plugging and abandonment and decommissioning work were prepetition obligations and any claims arising from W&T Offshore's or W&T Energy's satisfaction of such prepetition decommissioning obligations constitute prepetition claims, not claims entitled to priority status pursuant to 11 U.S.C. § 503(b)(1)(A).

**L.     Objection No. 12: W&T Offshore's Administrative Claims and W&T Energy's Administrative Claim Are Not Entitled to Administrative Claim Status.**

75.     As discussed above, claims asserting Section 503(b) priority status must be narrowly construed. *In re Northstar Offshore Group, LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020) (quoting 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Richard Levin & Henry J. Sommers eds., 16th ed.).  Further, a party claiming that its claim should be entitled to payment as an administrative

claim bears the burden of proof. *In re Matter of Whistler Energy II, LLC*, 931 F.3d 432, 441 (5th Cir. 2019).

76.     The W&T Offshore Administrative Clams and W&T Energy Administrative Claim (collectively, the "Administrative Claims") do not meet the burden of being entitled to payment as an administrative claim.  The Administrative Claims only make vague allegations that the claims arise from expenses W&T Offshore and W&T Energy incurred post-petition operating certain oil and gas leases and from cure amounts related to contracts the Debtor assumed.  There is no information as to which wells, leases or properties that these expenses relate to nor which contracts the Debtor assumed.  Further, there is no documentation or information as to what work or expenses were actually incurred and paid nor how the Debtor was in default under any assumed contract.  There is insufficient information for the Administrator to determine whether W&T Offshore or W&T Energy have asserted valid administrative expense claims under Section 503(b)(a).

## CONCLUSIONS AND PRAYER

For the reasons set forth above, the Administrator requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, denying W&T Offshore's and W&T Energy's requests for an administrative expense claim, reclassifying the W&T Offshore Initial Claims, W&T Energy Initial Claims, W&T Offshore Rejection Damages Claim, and W&T Energy Rejection Damages Claims as general unsecured claims, disallowing all or part of the W&T Offshore Initial Clams, W&T Offshore Initial Claims, W&T Energy Initial Claims, W&T Offshore Rejection Damages Claim, W&T Energy Rejection Damages Claims, W&T Offshore Administrative Claims and W&T Energy Administrative Claim and granting such other and further relief as is just and appropriate under the circumstances.

DATED:  August 15, 2023

Respectfully submitted,

*/s/ Kenneth Green*
Ken Green (Texas State Bar No. 24036677)
Aaron Guerrero (Texas State Bar No. 24050698)
Bryan Prentice (Texas State Bar No. 24099787)
Bonds Ellis Eppich Schafer Jones LLP
950 Echo Lane, Suite 120
Houston, Texas 77024
(713) 335-4990 telephone
(713) 335-4991 facsimile
ken.green@bondsellis.com
aaron.guerrero@bondsellis.com
bryan.prentice@bondsellis.com

**ATTORNEYS FOR DAVID DUNN, THE PLAN ADMINISTRATOR FOR THE POST-EFFECTIVE DATE DEBTORS**

## CERTIFICATE OF SERVICE

I certify that on this 15th day of August, 2023, a true and correct copy of the above and foregoing was served through the Court's electronic case filing system (ECF) upon all parties registered with the ECF and by U.S. First Class Mail and email to the following:

W&T Offshore, Inc. and
W&T Energy VI, LLC
c/o Locke Lord, LLP
600 Travis Street, Suite 2800
Houston, TX  77002
Attn:  Philip G. Eisenberg
Email:  peisenberg@lockelord.com

*/s/Kenneth Green*
Kenneth Green