UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY III LLC, *et al.* | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Post-Effective date Debtors.[1] | § | |

**PLAN ADMINISTRATOR'S OBJECTION TO HESS CORPORATION'S
PROOFS OF CLAIM**
[Related to POC Nos. 943 and 944]

> **This is an objection to your claims. The objection asks the Court to disallow the claims that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claims may be disallowed without a hearing.**
>
> **A hearing will be conducted on this matter on October 2, 2023, at 10:30 am (Central Time) in Courtroom 404, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002.  You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 1-832-917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Isgur's conference room number is 954554.  Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page.  The meeting code is "JudgeIsgur".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy, Inc. (4991, GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440).  Fieldwood Energy III LLC, Fieldwood Energy Offshore, LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC.  GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary.  The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Offshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703; and Galveston Bay Processing LLC (0422).

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within thirty (30) days from the date this objection was filed. Otherwise, the Court may treat the Objection as unopposed and sustain the relief requested.**
>
> **Represented parties should act through their attorney.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

David Dunn ("Administrator"), as Plan Administrator of Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy Inc., GOM Shelf LLC and FW GOM Pipeline, Inc., Debtors (the "Post-Effective Date Debtors") files this *Plan Administrator's Objection to Hess Corporation's Proofs of Claim* (the "Objection") and in support thereof respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

## BACKGROUND

**A.      The Chapter 11 Case**

2. On August 3, 2020 and August 4, 2020 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

2

3.  On June 25, 2021, the Court entered the *Findings of Facts, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") confirming, as modified therein, the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "Confirmed Plan").

4.  On August 27, 2021, the Debtors filed that certain *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 2016], setting forth that, *inter alia*, the Effective Date occurred on August 27, 2021 (the "Effective Date").

**B.  Plan Administrator**

5.  On the Effective Date, David Dunn of Province, Inc. was appointed to serve as the Plan Administrator pursuant to the Confirmed Plan.  *See* Confirmed Plan § 5.9(b).

6.  The Plan Administrator is responsible, to the extent not otherwise provided for in the Confirmed Plan, for carrying out and implementing all provisions of the Confirmed Plan on behalf of the Debtors and Post-Effective Date Debtors, including reviewing and reconciling all Claims asserted against the Debtors (including, but not limited to, Administrative Expense Claims, Other Secured Claims, Class 6A Unsecured Trade Claims, and Class 6B General Unsecured Claims) and making distributions on account of Allowed Claims.  As more fully set forth therein, section 5.9(c) of the Confirmed Plan vests the Plan Administrator with "all the rights, powers, authority, and duties on behalf of each of the Debtors and [the] Post-Effective Date Debtors [other than the Post-Effective Date FWE I Subsidiaries pursuant to section 5.9(a) of the Confirmed

3

Plan]…to carry out and implement all provisions of the [Confirmed] Plan." In short, the Plan Administrator has been tasked with: (i) controlling and effectuating the Claims reconciliation process; (ii) settling or compromising any Disputed Claims (as defined in the Confirmed Plan); and (iii) administering and adjusting the Debtors' claims register to reflect any such settlements and compromises.

**C.     The Confirmed Plan and Confirmation Order**

7.     Fieldwood Energy LLC and its debtor affiliates (each a "Debtor" and, collectively, the "Debtors" or "Company") were one of the largest oil and gas exploration and production companies in the Gulf of Mexico. Its portfolio of properties includes both deepwater assets and shallow water assets in the Gulf of Mexico. The Company's liquidity profile became volatile in the years preceding the Petition Date, primarily due to (i) the precipitous decline in crude oil prices starting in 2014 and then again in 2020 and (ii) the effects of the COVID-19 pandemic. The worsening market conditions coupled with significant decommissioning costs resulted in reduced liquidity for the Company and, ultimately, led to the filing of these bankruptcy cases.

8.     The Confirmed Plan set forth a restructuring of the Debtors. The restructuring included a sale of certain of the Debtors' assets, including specified deepwater assets and shallow water assets, (collectively, the "Purchased Oil & Gas Lease Interests") to a new entity ("Credit Bid Purchaser") formed at the direction of the Consenting FLTL Lenders. The schedule of the oil and gas leases, rights-of-way and rights of use and easement included as part of the Purchased Oil & Gas Lease Interests was included as **Exhibit B** to the Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors [Docket No. 1285] (the "Disclosure Statement") and as part of the Plan Supplement.

4

D.     **Hess Corporation's Proofs of Claim**

9.     Hess Corporation ("Hess") filed Proofs of Claim Nos. 943 and 945 (collectively, the "Hess Claims"). Each of the Hess Claims are identical except for the Debtor against whom the Hess Claim was filed.

10.    The Hess Claims state that the basis of the claim are "claims against the Debtors, including, but not limited to all liquidated, unliquidated, and contingent pre-petition claims for fees, costs, liabilities and expenses related to disposal, salvaging, plugging and abandoning, decommissioning, and/or other remediation work that has or may arise out of or relate to [certain oil and gas leases, wells and related equipment and assets] (the "P&A Costs"). Hess estimates that the Debtors' total P&A Costs liabilities are $140,807,921.

## OBJECTION

A.     **Objection No. 1: The Hess Claims Are Duplicate Claims**

11.    Each of the Hess Claims are identical and duplicates of each other. Failure to disallow and expunge all but one of the Hess Claims would result in Hess holding duplicate claims against the Debtors for the same costs and expenses and an unwarranted recovery against the Debtors to the detriment of other creditors. Accordingly, the Plan Administrator respectfully requests that each Hess Claim, except for Proof of Claim No. 943, be disallowed as being duplicative.

B.     **Objection No. 2: The Work Related to the Hess Claims Are Not Necessary Costs And Expenses And Did Not Benefit The Estate And Its Creditors**

   i.    **Claims Asserting Section 503(b)(1) Administrative Expense Priority Status Must Be Narrowly Construed**

12.    Section 503(a) of the Bankruptcy Code permits entities to timely file a request for payment of administrative expenses. 11 U.S.C. § 503(a). "The Bankruptcy Code provides that

5

'actual necessary costs and expenses of preserving the estate' are characterized as administrative expenses [under] 11 U.S.C. § 503(b)(1)(A) [], entitled to priority over the claims of other unsecured creditors." *Texas v. Lowe (In re H.L.S. Energy Company Inc.)*, 151 F.3d 434, 437 (5th Cir. 1998) (citing 11 U.S.C. § 507(a)(1)).

13. "Generally, section 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors" *In re Northstar Offshore Group, LLC*, 628 B.R. 286, 299 (Bankr. S.D. Tex. 2020) (quoting 4 COLLIER ON BANKRUPTCY ¶ 503.06[2] (Richard Levin & Henry J. Sommers eds., 16th ed.).

### ii. Work Related to the Hess Claims Did Not Arise From A Post-Petition Transaction

14. A party claiming that its claim should be entitled to payment as an administrative claim bears the burden of proof. *In re Matter of Whistler Energy II, LLC*, 931 F.3d 432, 441 (5th Cir. 2019).

15. "In general, '[f]or a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a *postpetition transaction*; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition." *Northstar*, 628 B.R. at 299 (emphasis in original) (citing 4 COLLIER ON BANKRUPTCY ¶ 503.06[3][a] (Richard Levin & Henry J. Sommers eds., 16th ed.).

16. In analyzing the statutory requirements imposed by section 503 of the Bankruptcy Code, the Fifth Circuit has held, "to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *Whistler Energy II*, 931 F.3d at 441 (5th Cir. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir.

2001)). On this element, "a creditor must show some inducement by the debtor-in-possession." *Id*. at 442.

17. Here, any work related to the Hess Claims, to the extent performed, were not performed as a result of any post-petition transaction entered into between Hess and the Debtors. Hess fails to provide any information or documentation that the work related to the Hess Claims were performed as a result of a post-petition transaction or that Hess was induced by the debtor-in-possession to perform the work related to the Hess Claims. Since the work related to the Hess Claims did not arise post-petition and as a result of actions taken by the debtor-in-possession, the claims for work related to the Hess Claims are not entitled to administrative expense status.

### iii. The Work Related to the Hess Claims Did Not Benefit The Estate Or Its Creditors

18. The inquiry of whether a post-petition cost benefitted the estate "is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been necessary within the meaning of § 503(b)(1)(A)." *Whistler Energy II,* 931 F.3d at 443 (quoting *IN re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998)). "Moreover, an 'actual and necessary cost' must have been of benefit to the estate and its creditors." *Northstar*, 628 B.R. at 298 (citing *In re H.L.S. Energy Co. Inc.*, 151 F.3d at 437). "This requirement is in keeping with the conceptual justification for administrative expense priority: that creditors must pay for those expenses necessary to produce distribution to which they are entitled." *Id*. at 299. "That is, the costs of salvage are to be paid." *Id*.

19. The Hess Claims asserts that the Debtor's P&A Costs that have matured or will mature after the Petition Date may constitute post-petition administrative priority claims. First, no information or documentation is provided that any P&A Costs matured post-petition. As such, there is no P&A Costs that constitute post-petition administrative expense claims.

20. The work related to the Hess Claims, to the extent performed post-petition and on leases and properties that were abandoned by the Debtors, did not benefit the estates or their creditors because the costs and expenses related the Hess Claims did not result in distributions being made to the Estate's creditors nor did they enhance the ability of the debtor-in-possession's business to function. Thus, the Administrator objects and requests that any work related to the Hess Claims that was performed on Abandoned Properties should not have administrative expense priority.

C. **Objection No. 3: Hess Is Not Entitled To An Administrative Expense Claim For Work related to the Hess Claims On Property That Is Not Property Of The Estate**

21. To the extent that Hess asserts that the work related to the Hess Claims constitute administrative expenses under Section 503(b)(1)(A) of the Bankruptcy Code the Administrator objects. While the Hess Claims do not make clear what authority Hess relies upon, it is likely Hess will rely on the Supreme Court's decision in *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494 (1986), the Fifth Circuit's holding in *State of Tex. v. Lowe (in re H.L.S. Energy Co., Inc.)*, 151 F.3d 434, 436 (5th Cir. 1998) and this Court's holding in *In re Am. Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009). Reliance on each of these cases is misplaced.

22. In *Midlantic*, the issue was whether a bankruptcy trustee could abandon property contaminated with hazardous waste in contravention of state and local laws designed to protect public health or safety. The Supreme Court held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic*, 474 U.S. at 506. The Supreme Court reasoned that 28 U.S.C. § 959(b) requires a trustee to "manage and operate the property in his possession…according to the requirements of the valid laws of the state." *Id*. at 505 (quoting 28 U.S.C. § 959(b)). Section 959(b) was evidence that Congress did not intend for the Bankruptcy

8

Code to pre-empt all state laws that otherwise constrain the exercise of the trustee's powers. *Id*. "The Supreme Court, however, expressly left open the question of the priority accorded to governmental costs if the trustee fails to respond to a cleanup order." *Northstar*, 628 B.R. at 301.

23.     In *H.L.S. Energy,* the debtor's obligation to decommission inactive wells arose post-petition and the bankruptcy estate did not have sufficient funds to pay the decommissioning costs. The trustee and the State of Texas agreed that the State would plug the wells and charge the costs to the bankruptcy estate. When the State asserted an administrative expense claim, the trustee objected, arguing that the claim was not entitled to administrative expense status. The Fifth Circuit held that the State's claim was entitled to administrative expense priority because the obligation to plug the wells arose post-petition and the trustee was required to operate the bankruptcy estate in accordance with state law, which required the wells to be plugged. *In re H.L.S. Energy,* 151 F.3d at 438. The court further reasoned that expenses incurred to comply with state law were actual and necessary costs of managing and preserving the estate. *Id.*

24.     In *Am. Coastal,* the debtor owned and operated eight wells that became inactive prior to its bankruptcy filing. The Texas Railroad Commission plugged the wells, and sought reimbursement from the debtor as an administrative expense claim. Citing federal and state law, the debtor argued that, because the liability arose prepetition, the plugging expense did not qualify as an administrative expense, but rather, was a general unsecured claim. The Court rejected the debtor's argument and held that the Texas Railroad Commission's claims were administrative expense claims because the expenses benefitted the estate by remedying violations of environmental and safety laws, regardless of whether the liability for the violation first occurred prepetition or post-petition. *In re Am. Coastal,* 399 B.R at 811.

25. First, neither *Midlantic, H.L.S. Energy* nor *Am. Coastal* concerned a private party like Hess. Instead, the administrative expense claim was asserted by a state agency burdened with the costs of cleaning up the debtor's environmental obligations. This Court made clear in *Am. Coastal* that "its analysis is limited to environmental remediation claims made by a governmental unit for postpetition remediation." *In re Am. Coastal,* 399 B.R. at 809, n.3. This Court also made clear in *Northstar* that such distinction is important in the analysis of whether decommissioning obligations are entitled to administrative priority. *In re Northstar*, 628 B.R. at 302 – 303 ("However, unlike in *American Coastal*, the party asserting administrative priority is not a state agency, nor, as Northstar argues, was the trustee operating a business in light of Northstar's sale of substantially all of its assets to NOV, nor did 28 U.S.C. § 959 apply because [] Northstar was not in possession of the property.").

26. More importantly, in both *H.L.S. Energy* and *Am. Coastal*, the debtor continued to have an ownership and/or operating interest in the wells. The *H.L.S. Energy* and *Am. Coastal* courts relied on the statutory language in 28 U.S.C. § 959(b) requiring a debtor-in-possession to manage and operate the property in his possession" in accordance with state laws. *See In re H.L.S. Energy,* 151 F.3d at 438; *In re Am. Coastal,* 399 B.R at 810-12. These cases only found that a debtor incurs administrative expenses for decommissioning costs related to property in the debtor's possession. In other words, only those decommissioning costs incurred in connection with property in which the Debtor has an interest can qualify as an administrative expense. As the *Am. Coastal* court noted:

> Opinions that have denied administrative expense characterization of postpetition expenditures to remediate pre-petition environmental liabilities involved expenditures on property that was no longer property of the bankruptcy estate. *In re Dant & Russell, Inc.,* 853 F.2d 700, 709 (9th Cir. 1988) *("Kovacs* and *Johnson Bronze* are significant in that they involved assertions of administrative expense

> priority by a lessor for cleanup costs resulting from property not owned by the bankruptcy estate"). *See also Ohio v. Kovacs,* 469 U.S. 274, 105 S. Ct 705, 83 L. Ed. 2d 649 (1985); *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir. 1985). Since the property was no longer estate property, the expenditure was not necessary to preserve the estate.

*In re Am. Coastal,* 399 B.R. 805, n.4. Other courts have reached similar conclusions. *See, e.g., In re McCrory Corp,* 188 B.R. 763, 769-70 (Bankr. S.D.N.Y. 1995) (holding that a debtor had appropriately abandoned a leasehold interest by rejection of the relevant lease, that such leasehold interest was no longer property of the estate, and that any postpetition cleanup costs would not benefit the estate); *In re Insilco Techs., Inc.,* 309 B.R. 111, 115 (Bankr. D. Del. 2004) ("In general, only those costs incurred to cleanup property for which an estate has an interest in or owns may qualify as administrative expenses."); *In re Mahoney-Troast Constr. Co.,* 189 B.R. 57, 62 (Bankr. D. N.J. 1995) ("Finally, as the trustee points out, the debtor did not own the property and cleanup was effected almost two years after the lease was rejected and the trustee returned the property."). Indeed, the rationale behind these holdings is that the estate does not benefit from remediation costs incurred post-petition once the property in question is no longer property of the estate.

27. This Court found similarly in *Northstar*, 628 B.R. 286 (Bankr. S.D. Tex. 2020). In *Northstar*, the debtor was a co-owner of two oil and gas leases with Medco Energi. *Northstar*, 628 B.R. at 291. Post-petition, the leases were rejected pursuant to 11 U.S.C. § 365. *Id*. at 290. After the rejection, Medco Energi performed work related to the leases and filed an application for allowance and payment of an administrative claim seeking the debtor's share of the decommissioning cost. *Id*. at 294 – 295. While this court recognized that Northstar's decommissioning obligations under the leases were the type of "continuing post-petition duty" that could give rise to an administrative claim, the Court held that such claim was not an administrative expense because the trustee was not operating a business in light of Northstar's sale of substantially

11

all of its assets and 28 U.S.C. § 959 did not apply because Northstar was not in possession of the property. *Id*. at 302 – 303.

28.     Here, as of the Effective Date, the Debtors abandoned the properties and leases upon which the work may have related to the Hess Claims that will be incurred.  As a result, the Abandoned Properties were no longer a part of the estate. *See* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] (16th 2023) ("Upon abandonment under section 554, the trustee is divested of control of the property because it is no longer part of the estate."). At least with respect to the Abandoned Properties, there is no business being operated by a trustee or debtor-in-possession.

29.     More importantly, the work related to the Hess Claims may also be for costs and expenses that Hess may incur after the Effective Date.  Like the creditor in *Northstar*, Hess seeks an administrative expense claim against property that is no longer property of the estate.  As such, the estate is no longer in possession of the Abandoned Properties, is not operating a business in which the Abandoned Properties are utilized and Hess is not entitled to an administrative expense priority claim on account of the work related to the Hess Claims.  *See, e.g., Northstar*, 628 B.R. at 301 - 303, *In re McCrory Corp.*, 188 B.R. at 765; *Johnson Bronze Co.*, 758 F.2d at 141.

### iv.     Hess Cannot Subrogate to an Administrative Priority Claim.

30.     To the extent that Hess contends that it can subrogate to the rights of a third-party, including the United States, the Administrator objects. As this Court recognized in *Northstar*, Hess cannot be subrogated to such claims.  In *Northstar*, Medco Energi argued it was entitled to subrogation of its claim to the rights of the United States pursuant to 11 U.S.C. § 509(a) in light of Northstar and Medco Energi's joint and several liability under 30 C.F.R. § 250.1701. *Northstar*, 628 at 304.  The Court disagreed, holding that the exception in Section 509(b) of the Bankruptcy Code precluded Medco Energi's subrogation claim because Medco Energi was jointly and

severally liable with Northstar and Medco Energi received consideration in the form of the release of its obligations by the United States. *Id*. at 304 – 309.

31. Section 509(a) and (b) provide:

> (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim is subrogated to the rights of such creditor to the extent of such payment.
>
> (b) Such entity is not subrogated to the rights of such creditor to the extent that—
>
>> (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—
>> (A) allowed under section 502 of this title;
>> (B) disallowed other than under section 502(e) of this title; or
>> (C) subordinated under section 510 of this title; or
>>
>> (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

32. In *Northstar*, this Court discussed the purpose of Section 509(a) and why it should be narrowly construed:

> Accordingly, under § 509, which governs 'claims of codebtors, to be subrogated to a claim, creditors must show that (1) they are an entity that is liable with the debtor on, or that has secured, a claim of a creditor against a debtor, (2) they have paid the claim secured, and (3) they have not received consideration for the claim held by such creditor.' Section 509 allows a co-obligor who pays, after the petition date, a claim for which the debtor is primarily liable, to be subrogated to the rights of the creditor that the co-obligor has paid. Section 509 operates as a narrow, equitable backstop to ensure that a co-obligor is entitled to whatever distribution would otherwise have gone to the creditor whose claim the obligor paid postpetition. Under section 509(a), an entity is liable with the debtor when the entity is obligated to pay, by law or equity, on a claim of a creditor *against the debtor*. In other words, in 'order for subrogation to be available to the co-obligor under section 509, [] the *debtor* must be the party that in the eyes of the law is *primarily liable* for the

13

>indebtedness paid by the obligor. This is so because "[o]ne cannot seek subrogation for paying one's own debts."

*Northstar*, 628 B.R. at 305 – 306 (emphasis added)(internal citations omitted).

33. The principles of Section 509(a) are further reflected under the exception set forth in Section 509(b)(2):

>Taking into consideration '[t]he legislative history, and generally recognizable principles of law of equitable subrogation,' as set forth in the exception under § 509(b), 'courts refuse to extend section 509 to a party who itself is primarily liable on the creditors claim *or* has otherwise received the consideration for the claim of the creditor.'

*Northstar* at 306.

34. Section 509(b)(2) makes clear that where "the co-obligor itself received consideration for which its payment was made, it will not be subrogated to the rights of the creditor that it paid." *Id*. (quoting 4 COLLIER ON BANKRUPTCY ¶ 509.01[4] (Richard Levin & Henry J. Sommers eds., 16th ed.)). "This implements the public policy behind section 509, which is to permit subrogation of those *secondary liable* with the debtor but to deny subrogation where the paying co-obligor is merely paying its own debt." *Id*. at 306 – 307. "Notably, courts have 'recognized that a party who pays a judgment on which it is *jointly and severally liable* with the debtor does not have the right to subrogation, because the paying creditor receives consideration in the form of a release." *Id*. at 307.

35. The Code of Federal Regulations provides that "lessees and owners of operating rights are jointly and severally responsible for meeting decommissioning obligations for facilities on leases…as the obligations accrue and until each obligation is met." 30 C.F.R. § 250.1701(a). Likewise, "[a]ll holders of right-of-way are jointly and severally liable for meeting decommissioning obligations for facilities on their right-of-way, including right-of-way pipelines, as the obligations accrue and until each obligation is met." 30 C.F.R. § 250.1701(b).

Decommissioning obligations accrue when a party is or "become[s] a lessee or the owner of operating rights of a lease on which there is a well that has not been permanently plugged according to this subpart, a platform, a lease term pipeline, or other facility, or an obstruction." 30 C.F.R. § 250.1702(d). "Every current and prior record title owner is *joint and severally liable*, along with all other record title owners and all prior and current operating rights owners, for compliance with…decommissioning obligations, which accrue while it holds record title interest." 30 C.F.R. § 556.604(d) (emphasis added).

36. First, it should be noted that Hess provides no information or documentation that it has actually incurred any costs or expenses for work related to the Hess Claims, nor performed the work related to the Hess Claims. Without actually incurring such costs and expenses or performing the work related to the Hess Claims, Hess is not entitled to be subrogated to the rights of the United States or any other third-party.

37. Even if Hess has incurred costs and expenses for the work related to the Hess Claims or performed the work related to the Hess Claims, Hess is still not entitled to be subrogated to the rights of the United States or another third-party. Likewise, in the event any of the work related to the Hess Claims constitutes decommissioning under 30 C.F.R. § 250.1700, Hess is not entitled to be subrogated to the rights of the United States. Hess is a predecessor-in-interest with respect to all work related to the Hess Claims. As such, Hess is jointly and severally liable with the Debtors for the work related to the Hess Claims. 30 C.F.R. § 250.1700. Therefore, neither Hess nor the Debtors are primarily or secondarily liable as to the work related to the Hess Claims and any Hess Claim that constitutes decommissioning under 30 C.F.R. § 250.1700. Hess cannot avail itself of subrogation under Section 509(a) of the Bankruptcy Code. Moreover, because Hess' liability is of equal status as the Debtors, in paying for or performing the work related to the Hess

Claims, Hess received and would receive consideration in the form of a release by the United States.

### D. Objection No. 4: The Hess Claims Are Disallowed Under 11 U.S.C. § 502(e)(1)(B)

38. Section 502(e)(1)(B) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that…such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C. § 502(e)(1)(B).

39. Contingent claims should thus be disallowed if they meet the following factors: (i) the claim is for reimbursement or contribution, (ii) the claim is asserted by an entity that is liable with the debtor on an underlying claim, and (iii) the claim is contingent at the time of its allowance or disallowance. *See In re Sorenson v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 95-96 (S.D.N.Y. 1992)(articulating three-part test); *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004)(analyzing whether reimbursement claim was contingent, then assessing whether "the responding parties are 'liable with the debtor'").

40. If Hess were able to establish that the Debtors had indemnification, reimbursement, contribution or other obligations pursuant to certain agreements, then any claim they may have in the future against the Debtors would be for reimbursement or contribution. "Courts have consistently held that 'the concept of reimbursement includes indemnity.'" *In re Falcon V, L.L.C.*, 620 B.R. 256, 269-70 (Bankr. M.D. La. 2020)(finding that surety that issued bonds was not entitled to claim pursuant to Section 502(e)(1)(B) since it was a contingent claim); *In re RNI Wind Down*

*Corp.*, 369 B.R. 174, 181-82 (Bankr. D. Del. 2007)(quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)).

41. Second, the claim must be asserted by an entity that is liable with the debtor on an underlying claim. In order for Section 502(e) to apply, "[t]here must exist…a shared liability to the same party on the same claim." *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004). "[T]he co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 95 (S.D.N.Y. 1992). The existence of a direct claim by the third party against the debtor does not preclude the application of Section 502(e)(1)(B). *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. As discussed above, the Debtors and Hess are jointly and severally liable to BOEM and BSEE for the Hess Claims.

42. Third, the Hess Claims remain contingent. In the *Tri-Union Dev. Corp.* case, the Court noted that "contingent" under Section 502(e) in this context means "unfunded" and that claims remain "contingent" for purposes of Bankruptcy Code § 502(e)(1)(B) until the co-debtor has paid the creditor. *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. The Hess Claims remain contingent until Hess performs or pays for such decommissioning costs and expenses.

## CONCLUSIONS AND PRAYER

Hess has failed to carry its burden of demonstrating the Hess Claims as administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code. For the reasons set forth above, the Administrator requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, denying Hess' request for an administrative expense claim, disallowing the Hess Claims and granting such other and further relief as is just and appropriate under the circumstances.

DATED: August 17, 2023

Respectfully submitted,

*/s/ Kenneth Green*
Ken Green (Texas State Bar No. 24036677)
Aaron Guerrero (Texas State Bar No. 24050698)
Bryan Prentice (Texas State Bar No. 24099787)
Bonds Ellis Eppich Schafer Jones LLP
950 Echo Lane, Suite 120
Houston, Texas 77024
(713) 335-4990 telephone
(713) 335-4991 facsimile
ken.green@bondsellis.com
aaron.guerrero@bondsellis.com
bryan.prentice@bondsellis.com

**ATTORNEYS FOR DAVID DUNN, THE PLAN ADMINISTRATOR FOR THE POST-EFFECTIVE DATE DEBTORS**

**CERTIFICATE OF SERVICE**

    I certify that on this 17th day of August, 2023, a true and correct copy of the above and foregoing was served through the Court's electronic case filing system (ECF) upon all parties registered with the ECF and by email to the following:

| | |
|---|---|
| Reed Smith LLP<br>Attn: Omar J. Alaniz<br>2850 N. Harwood Street, Suite 1500<br>Dallas, TX 75201<br>oalaniz@reedsmith.com | Hess Corporation<br>Attn: Robert Carlton<br>1501 McKinney Street<br>Houston, TX 77010<br>rcarlton@reedsmith.com |

                                        */s/Kenneth Green*
                                        Kenneth Green