# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY III LLC,** *et al.* | § | **Case No. 20-33948 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Post-Effective date Debtors.**[1] | § | |

## PLAN ADMINISTRATOR'S OBJECTION TO
## RLI INSURANCE COMPANY'S PROOF OF CLAIM NO. 1116
[Related to POC No. 1116]

> **This is an objection to your claim. The objection asks the Court to disallow the claim that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claim may be disallowed without a hearing.**
>
> **A hearing will be conducted on this matter on October 2, 2023, at 10:30 am (Central Time) in Courtroom 404, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1-832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494); Fieldwood Energy, Inc. (4991, GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore, LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "**Post-Effective Date FWE I Subsidiaries**") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Offshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703; and Galveston Bay Processing LLC (0422).

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested you must respond in writing.  Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within thirty (30) days from the date this objection was filed.  Otherwise, the Court may treat the Objection as unopposed and sustain the relief requested.**
>
> **Represented parties should act through their attorney.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

David Dunn ("Administrator"), as Plan Administrator of Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, Fieldwood Energy Inc., GOM Shelf LLC and FW GOM Pipeline, Inc., Debtors (the "Post-Effective Date Debtors") files this *Plan Administrator's Objection to RLI Insurance Company's Proof of Claim No. 1116* (the "Objection") and in support thereof respectfully represents as follows:

## RELIEF REQUESTED

1.      The Administrator seeks entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") disallowing Proof of Claim No. 1116 (the "Subject Claim") pursuant to Sections 105(a), 502(a), 502(b), and 502(e) of the Bankruptcy Code, Bankruptcy Rule 3007, Rules 3007-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures") in its entirety because the Subject Claim is unenforceable against the Post-Effective Date Debtors.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a

core proceeding under 28 U.S.C. § 157. The Administrator confirms his consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are Sections 105(a), 502(a) and 502(e) of the Bankruptcy Code, Bankruptcy Rule 3007, Rules 3007-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

**BACKGROUND**

A.     The Chapter 11 Case

4.     On August 3, 2020 and August 4, 2020 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

5.     On June 25, 2021, the Court entered the *Findings of Facts, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") confirming, as modified therein, the *Eighth Amended Joint Chapter 11  Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "Confirmed Plan").

6.     On August 27, 2021, the Debtors filed that certain *Notice of (I) Entry of Order*

*Confirming Join Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 2016], setting forth that, *inter alia*, the Effective Date occurred on August 27, 2021 (the "Effective Date").

B.      Plan Administrator

7.      On the Effective Date, David Dunn of Province, Inc. was appointed to serve as the Plan Administrator pursuant to the Confirmed Plan.  *See* Confirmed Plan § 5.9(b).

8.      The Plan Administrator is responsible, to the extent not otherwise provided for in the Confirmed Plan, for carrying out and implementing all provisions of the Confirmed Plan on behalf of the Debtors and Post-Effective Date Debtors, including reviewing and reconciling all Claims asserted against the Debtors (including, but not limited to, Administrative Expense Claims, Other Secured Claims, Class 6A Unsecured Trade Claims, and Class 6B General Unsecured Claims) and making distributions on account of Allowed Claims.  As more fully set forth therein, section 5.9(c) of the Confirmed Plan vests the Plan Administrator with "all the rights, powers, authority, and duties on behalf of each of the Debtors and [the] Post-Effective Date Debtors [other than the Post-Effective Date FEW I Subsidiaries pursuant to section 5.9(a) of the Confirmed Plan]…to carry out and implement all provisions of the [Confirmed] Plan."  In short, the Plan Administrator has been tasked with: (i) controlling and effectuating the Claims reconciliation process; (ii) settling or compromising any Disputed Claims (as defined in the Confirmed Plan); and (iii) administering and adjusting the Debtors' claims register to reflect any such settlements and compromises.

C.      Bar Dates

9.      On October 13, 2020, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities [Docket Nos. 430 – 454].

10.     On October 14, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* [Docket No. 466] (the "Bar Date Order"), establishing certain dates and deadlines (each a "Bar Date") for filing proofs of claims in these chapter 11 cases.  The Bar Date Order established: (a) November 25, 2020, as the Bar Date for all non-governmental entities to file Proofs of Claim, and (b) February 1, 2021, as the Bar Date for all governmental entities to file Proofs of Claim.

11.     On February 17, 2022, the Court entered the *Order Establishing Deadline for Filing Requests for Payment of Administrative Expense Claims and Procedures Relating Thereto and Approving Form and Notice Thereof* [Docket No. 2387], which, *inter alia*, established March 25, 2022 at 5:00 p.m. (Central Time) as the deadline (the "Administrative Claim Bar Date") for persons to assert Administrative Expense Claims against the Debtors.

12.     Section 7.5 of the Confirmed Plan provides, "[a]ny objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time." Confirmed Plan § 7.5.  Accordingly, the deadline to object to Claims (the "Claims Objection Deadline") was originally February 23, 2022, which was extended to August 22, 2022 by the Court's order [Docket No. 2410] entered on March 16, 2022.  The Claims Objection Deadline was further extended to February 18, 2023 by the Court's order [Docket No. 2649] entered September 1, 2022.  Finally, the Claims Objection Deadline was further extended to August 17, 2023 by the Court's order [Docket No. 2770] entered March 16, 2023.

D.     RLI Insurance Company

13.     On March 25, 2022, RLI Insurance Company ("RLI") filed Proof of Claim No.

1116, against Debtor, Fieldwood Energy Offshore LLC ("FEO"), which asserts an administrative expense claim in the amount of $39,807,255.  The Subject Claim asserts that "Fieldwood Energy Offshore was required to provide surety bonds to certain regulatory agencies and other third parties to secure the performance of certain obligations relating to, inter alia, (i) oil and natural gas drilling and exploration operations; (ii) plugging and abandonment obligations; (iii) conservation; (iv) rights-of-way; (v) land use; (vi) taxes; and (v) [sic] utilities, among other obligations" and that "RLI issued certain surety bonds on behalf of Fieldwood Energy Offshore, including bond. No. RLB0013981 issued to XTO Offshore, Inc., HHE Energy Company, XH, LLC…to secure certain decommissioning obligations incurred in connection with purchased oil and gas assets."  RLI asserted that the obligees on Bond No. RLB0013981 (the "Bond") made a penal sum demand during the bankruptcy in the amount of the Subject Claim "based on the contention that Fieldwood Energy Offshore has defaulted and would continue to default on its obligations to decommission the secured oil and gas assets.  RLI has requested additional information and is continuing the adjust the XTO Bond demand claim."

14.    XTO Offshore, Inc., HHE Energy Company, and XH LLC (the "XTO Claimants") filed Proof of Claim No. 666 on November 24, 2020 (the "XTO Claim").  The XTO Claim asserts an unsecured claim in the amount of $11.9 million "plus an additional unliquidated claim" for "Payment of plugging abandon and remediation costs."   The attachment to the XTO Claim explains that "Claimants, as sellers, are parties to a Purchase and Sale Agreement…effective as of August 1, 2011, with the Debtor, then known as Dynamic Offshore Resources, LLC, as the seller", and states that "Debtor provided no security to Claimants.  However, pursuant to…the PSA, the Claimants were furnished a Performance Bond issued by RLI Insurance Company, bond no. RLB0013981, in the amount of $32,898,572."  Term 8.04(d)(9) of the PSA attached to the XTO

Claim (the "<u>XTO PSA</u>") required the parties to the PSA to execute a performance bond pursuant to the terms set forth in Section 8.04(f) of the PSA, which stated as follows:

> As a condition of Closing, pursuant to Section 8.04(d)(9), Buyer shall deliver to XTO Energy a performance bond, in a form substantially similar to the form attached as Exhibit K, to guarantee Buyer's obligations under this Agreement, including its obligations to abandon, restore and remediate the Interests and Properties, providing for a penal sum in the amount of thirty-five million dollars ($35,000,000.00) issued by RLI Insurance Company, or by a mutually acceptable financial institution, as surety, and providing for terms acceptable to such surety, XTO Energy and Buyer.

15.     The XTO PSA defined "Interest or Interests" to include "XTO Energy's interest in the oil and gas leasehold estates or other interests set forth on Exhibit A and Exhibit A-1" and "Property or Properties" as "[t]he real property in which and on which the Interests exist or are located, whether in whole or in part."

16.     Attached hereto as **<u>Exhibit B</u>** is the *Declaration of David Dunn in Support of the Plan Administrator's Objection to RLI Insurance Company's Proof of Claim No. 1116* (the "<u>Declaration</u>").

## <u>ARGUMENT AND AUTHORITY</u>

17.     Section 502 of the Bankruptcy Code provides, in pertinent part, as follows: "[a] claim or interest, proof of which is filed under § 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502.

18.     As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim under Section 502(a) of the Bankruptcy Code. *See, e.g., In re Tran*, 351 B.R. 440, 444 (Bankr. S.D. Tex. 2006), *aff'd*, 369 B.R. 312 (S.D. Tex. 2007) (holding that a properly filed proof of claim is prima facie evidence of the validity and amount of the claim). A proof of claim loses the presumption of prima

facie validity under Bankruptcy Rule 3001(f) if an objecting party refutes at least one of the allegations that are essential to the claim's legal sufficiency. *See In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988) (holding "If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.'"). Once such an allegation is refuted, the burden reverts to the claimant to prove the validity of its claim by a preponderance of the evidence. *See id*. Despite this shifting burden during the claim objection process, "the ultimate burden of proof always lies with the claimant." *Id*.

        a.     **The Subject Claim is contingent and should be disallowed**.

19.     Section 502(e)(1)(B) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that…such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C. § 502(e)(1)(B).

20.     Contingent claims should thus be disallowed if they meet the following factors: (i) the claim is for reimbursement or contribution, (ii) the claim is asserted by an entity that is liable with the debtor on an underlying claim, and (iii) the claim is contingent at the time of its allowance or disallowance. *See In re Sorenson v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 95-96 (S.D.N.Y. 1992)(articulating three-part test); *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004)(analyzing whether reimbursement claim was contingent, then assessing whether "the responding parties are 'liable with the debtor'").

21.     If RLI were able to establish that FEO had reimbursement obligations pursuant to

certain agreements, then any claim RLI may have in the future against FEO, as identified in the Subject Claim, would be for reimbursement or contribution. "Courts have consistently held that 'the concept of reimbursement includes indemnity.'" *In re Falcon V, L.L.C.*, 620 B.R. 256, 269-70 (Bankr. M.D. La. 2020)(finding that surety that issued bonds was not entitled to claim pursuant to Section 502(e)(1)(B) since it was a contingent claim); *In re RNI Wind Down Corp.*, 369 B.R. 174, 181-82 (Bankr. D. Del. 2007)(quoting *In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *3 (Bankr. N.D. Tex. 2005)). "Traditionally, when a surety is compelled to pay debts for its principal, the surety is deemed entitled to reimbursement even without a contractual promise." *In re Tri-Union Dev. Corp.*, 314 B.R. at 619.

22.     Second, the claim must be asserted by an entity that is liable with the debtor on an underlying claim. In order for Section 502(e) to apply, "[t]here must exist…a shared liability to the same party on the same claim." *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 616-17 (Bankr. S.D. Tex. 2004). "[T]he co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 95 (S.D.N.Y. 1992). The existence of a direct claim by the third party against the debtor does not preclude the application of Section 502(e)(1)(B). *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. If FEO has any liability with respect to the purported contribution or reimbursement claim, then RLI would be co-liable with FEO. The XTO Claimants could seek recovery against either FEO or RLI as the issuer of a bond. Accordingly, the Subject Claim satisfies the second element of the three-part test.

23.     Third, the Subject Claim remains contingent. In the *Tri-Union Dev. Corp.* case, the Court noted that "contingent" in under Section 502(e) this context means "unfunded" and that

claims remain "contingent" for purposes of Bankruptcy Code § 502(e)(1)(B) until the co-debtor has paid the creditor. *In re Tri-Union Dev. Corp.*, 314 B.R. at 616-17. The Subject Claim requires the occurrence of an event before FEO could be liable for any such obligation, i.e., a payment on account of a bond, which RLI has not shown to have occurred. The amount of the Subject Claim is simply the sum of the alleged penal demand "based on the contention that Fieldwood Energy Offshore had defaulted and would continue to default on its obligations to decommission the secured oil and gas assets." RLI has not presented any evidence or documentation that it paid the amount of the Subject Claim, or any of the asserted claim amount. Instead, RLI states that "RLI has requested additional information and is continuing to adjust the XTO Bond demand claim." Therefore, the Subject Claim is contingent because it is based upon a yet to occur future event. *See Tri-Union*, 314 B.R. at 616. ("[C]laims remain 'contingent' for purposes of Bankruptcy Code § 502(e)(1)(B) until the co-debtor has paid the creditor."). Damages may arise if, and only if, RLI makes a payment under the Bond. For these reasons, the contingent Subject Claim should be disallowed under Section 502(e)(1)(B) of the Bankruptcy Code.

24.     On December 28, 2022, this Court ruled, in a similar factual situation involving the surety bond claims of U.S. Specialty Insurance Company ("USSIC"), that USSIC's claims "must be dismissed (i) as contingent under § 502(e)(1)(B) and (ii) because USSIC cannot demonstrate it suffered any current damages as a result of the debtors' failure to provide cash collateral." *In re Alta Mesa Res.*, 2022 Bankr. LEXIS 3649, *7 (Bankr. S.D. Tex. Dec. 28, 2022). *Alta Mesa* involved three proofs of claim filed by USSIC against the debtors for surety bonds issued on behalf of Alta Mesa in favor of various government entities, for obligations owed by debtors. *Id.* at *3. As in this case, USSIC provided no evidence that it made any payments to the bond obligees. *See id.* at *5. The USSIC proofs of claim indicated that the claim amounts "mirror[ed] the total penalty

amount of all the issued bonds based on Exhibit A, filed as an attachment to the proofs of claim."
*Id.*  The Court found that USSIC's claims should be disallowed, and explained that "[i]f the underlying obligation is a contingent claim for which the debtor is co-liable with the claimant, it is disallowed," and that a "claim for indemnification is generally considered contingent unless the claimant has actually paid the third party."  *Id.* at *10-*11.  Furthermore, the Court found that USSIC could not prove damages under Texas breach of contract law, reasoning that "[t]he lacking element here is actual, current damages sustained by USSIC as a result of the debtors' failure to provide cash collateral."  *Id.* at *13-*14.

25.     Based on the above, the Subject Claim is contingent and should be disallowed.

26.     Additionally, the Asset Purchase Agreement entered into in connection with the sales of Debtors' assets all contain provisions stating "[a]s of the Closing or promptly thereafter (and in any case within ten (10) Business Days of Closing), Buyer and/or Buyer 2, as applicable, will have lease bonds, area-wide bonds and surety bonds or insurance policies to the extent required by and in accordance with the requirements of such Governmental Authorities as determined by Buyer in its sole discretion."  Docket No. 2013 at p. 128.  To the extent the buyers have obtained replacements for any bonds on which the Subject Claims are based, RLI's claim under such bonds will not mature.

**b.     RLI does not have subrogation rights.**

27.     In the analogous case of *In re Tri-Union Dev. Corp.* a surety made an argument, which was ultimately denied by the Court, that it was subrogated to the police powers of the United States upon making payments to the bond obligee Minerals Management Service for plugging and abandonment obligations.  *See Tri-Union* at p. 623.  Here, any payments that RLI would make under the Bond would be to the XTO Claimants, not to the United States.  Consequently, RLI has

no subrogation rights here.

        c.    **The Subject Claim is not entitled to administrative priority because it is not based on work that benefitted FEO's Estate.**

28.    Assuming *arguendo* that the Subject Claim is not disallowed in its entirety, it is not entitled to administrative priority.  As the Fifth Circuit explained in *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*:

> In bankruptcy proceedings, "administrative expenses" are granted priority over most unsecured claims…This classification is significant because we presume that all creditors are equally innocent victims in this bankruptcy…The question is therefore not whether [the creditor] deserves to get paid, but whether [it] deserves to get paid at the expense of [the debtor's] existing unsecured creditors…The claimant seeking administrative expenses bears the burden of proof.

*Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 441 (5th Cir. 2019) (internal citations and quotations omitted).  Administrative expenses encompass the "actual, necessary costs and expenses of preserving the estate", meaning the "claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *Id.*  If an alleged administrative expense was of "no 'benefit', it cannot have been 'necessary' within the meaning of" 11 U.S.C. § 503(b)(1).  *Id.* at 443.

29.    As explained above, RLI has not actually paid any funds to the XTO Claimants on their alleged penal sum demand that forms the basis of the Subject Claim.  Therefore, the Subject Claim is not based on any action that provided any benefit to FEO's Estate, and is not entitled to administrative priority.

30.    The fact that the Subject Claim is not entitled to administrative priority is underscored by the fact that the XTO Claim asserts an unsecured claim for the same alleged

decommissioning obligations underlying the Subject Claim.  The XTO Claim does not assert that the XTO Claimants have performed or paid for any decommissioning obligations.  However, such actions would be closer to the standard of providing work that benefitted FEO's Estate than any obligations incurred by RLI to reimburse the XTO Claimants for such work or payment.

> **d.    The Subject Claim is not entitled to administrative priority because it did not arise post-petition.**

31.    As stated above, in order to be entitled to administrative priority, a claim must, among other things, have "arisen post-petition."  *Whistler* at p. 441.  While neither the Subject Claim nor the XTO Claim attached a signed copy of the Bond, assuming the Bond was executed around the same time as the XTO PSA, it was executed in the Summer of 2011, nearly a decade before the Petition Date.  In a similar case, *XL Specialty Ins. Co. v. James River Coal Co. (In re River Coal Co.)*, the United States District Court for the Middle District of Tennessee considered whether a claim by a surety for unpaid premiums accrued on bonds obtained prepetition for the benefit of the Commonwealth of Kentucky were entitled to administrative expense priority.  *See XL Specialty Ins. Co. v. James River Coal Co. (In re River Coal Co.)*, 2006 U.S. Dist. LEXIS 62810, *2-*6 (M.D. Tenn. Aug. 31, 2006).  The court found that the claim was not entitled to administrative priority, reasoning, *inter alia*, that:

> A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate…If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession…In this case, [surety] provided nothing to [debtor] post-petition (the debtor-in-possession) that [surety] was not already obligated to provide prepetition.

*Id.* at *11-*12.  The same is true here.  The inducement to post the Bond was provided nearly a decade prior to the Petition Date.  Although, as stated above, Administrator disputes that RLI has provided any evidence that RLI provided post-petition services, assuming *arguendo* that RLI did

provide post-petition services, RLI did not provide anything that it was not already obligated to provide prepetition. Consequently, the Subject Claim did not arise post-petition and is not entitled to administrative priority.

      **e.**      **The Subject Claim is not entitled to administrative priority under 11 U.S.C. § 502(e)(2).**

32.      Assuming *arguendo* that the Subject Claim is not contingent and disallowed under 11 U.S.C. § 502(e)(1)(B), it is not entitled to administrative priority under 11 U.S.C. § 502(e)(2), which provides that:

> A claim for reimbursement or contribution of [an entity that is liable with the debtor on or has secured the claim of a creditor] that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

RLI states in the Subject Claim that the Bond demand was "made during the bankruptcy." Assuming *arguendo* that the Subject Claim is not contingent, it is not entitled to administrative priority. *Tri-Union* quotes the language of Section 502(e)(2) and explains that "[a]ccordingly…a surety that funds its obligations postpetition must be treated the same as a surety who funds its obligations prepetition." *Tri-Union* at p. 624. Therefore, assuming *arguendo* that the Subject Claim is not disallowed, it is a prepetition, and unsecured, claim.

      **f.**      **The Indemnity Agreements attached to the Subject Claim are inapplicable.**

33.      RLI argues in the Subject Claim as follows:

> Fieldwood Energy Offshore has executed and delivered one or more Indemnity Agreements to RLI pursuant to which Fieldwood Energy Offshore is required to indemnify RLI in connection with the XTO Bond, including the 2009 Application for Miscellaneous Surety & Indemnity Agreement executed by Dynamic Offshore Resources, LLC, a predecessor in interest to Fieldwood Energy Offshore,

> LLC…Pursuant to the Indemnity Agreements, Fieldwood Energy
> Offshore is obligated to indemnify and hold RLI harmless in
> connection with the XTO Bond Demand.

The Subject Claim attaches two Applications for Miscellaneous and Surety and Indemnity Agreements which were both signed in mid-2009, at least two years before the XTO PSA and the Bond. Exhibit A to the Subject Claim describes the attached applications as for (i) a $3,000,000 "Area-wide bond pursuant to 30 CFR 256.52 in order to hold and operate oil and gas leases in the OCS" and (ii) a $250,000 "Blanket bond under La. Adm. Code Tit. 43 Part XIX to be designated Operator of oil and gas wells." Neither of these appear to describe the Bond, which was required by the XTO PSA to be a performance bond in the penal sum of $35,000,000. Consequently, the Applications for Miscellaneous and Surety and Indemnity Agreements attached as Exhibit A to the Subject Claim are irrelevant.

## RESERVATION OF RIGHTS

34.     This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Administrator to object to any claim on any ground whatsoever. The Administrator expressly reserves all further substantive or procedural objections. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against the Administrator; (b) a waiver of the Administrator's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; or (f) a waiver of the Administrator's rights under the Bankruptcy Code or any other applicable law.

WHEREFORE, the Administrator respectfully requests that the Court disallow the Subject

Claim and for further relief to which the Administrator is entitled.

DATED:          August 17, 2023

Respectfully submitted,

*/s/ Kenneth Green*
Kenneth Green (Texas State Bar No. 24036677)
Aaron Guerrero (Texas State Bar No. 24050698)
Bryan Prentice (Texas State Bar No. 24099787)
Bonds Ellis Eppich Schafer Jones LLP
950 Echo Lane, Suite 120
Houston, Texas 77024
(713) 335-4990 telephone
(713) 335-4991 facsimile
ken.green@bondsellis.com
aaron.guerrero@bondsellis.com
bryan.prentice@bondsellis.com

**ATTORNEYS FOR DAVID DUNN, THE PLAN ADMINISTRATOR FOR THE POST-EFFECTIVE DATE DEBTORS**

## CERTIFICATE OF SERVICE

I certify that on this 17th day of August, 2023, a true and correct copy of the above and foregoing was served through the Court's electronic case filing system (ECF) upon all parties registered with the ECF and by email to the following:

Elliot Scharfenberg
Jon Ord
Krebs Farley & Dry, PLLC
400 Poydras Street, Suite 250
New Orleans, LA  70130
escharfenberg@krebsfarley.com
jord@krebsfarley.com

Ryan Dry
Krebs Farley & Dry, PLLC
908 18th Street
Plano, TX  75074
rdry@krebsfarley.com

Chad L. Schexnayder
Jennings Haug Cunningham
2800 North Central Avenue, Suite 1800
Phoenix, AZ 85004
CLS@JHC.Law

RLI Insurance Co.
Attn:  Claim Dept.
9025 N. Lindbergh Drive
Peoria, IL  61615
David.Grycz@rlicorp.com


/s/Kenneth Green
Kenneth Green