**EXHIBIT A**

FIELDWOOD/CHEVRON TERM SHEET

*This Term Sheet is an expression of interest only and creates no legally binding commitment by either party to negotiate any specific transaction or enter into any agreement. It is expressly understood that no liability or obligation of Fieldwood or Chevron of any nature whatsoever is intended to or will be created hereunder with respect to this Term Sheet or related discussions or writings or the transactions contemplated hereby and that this Term Sheet is neither a contract nor a binding offer. It is understood and agreed that any transaction is expressly conditioned, among others, upon approval by Fieldwood and Chevron, the execution and delivery by Fieldwood and Chevron or their affiliates of definitive written agreements, in form and substance satisfactory to Fieldwood and Chevron in their sole discretion, and the satisfaction of the conditions set forth therein. Fieldwood and Chevron expressly agree that this Term Sheet does not contain all terms that would be required to be agreed to in order to enter into any definitive agreement. Each party is responsible for its own costs and expenses, including those of its legal advisors in conjunction with this Term Sheet.*

## CHEVRON / FIELDWOOD COMMERCIAL TERM SHEET

Fieldwood Energy LLC ("**FWE**") to create a new entity, Fieldwood Energy IV LLC ("**FWE IV**"), via a Texas divisive merger.

### I. Term Sheet Expiration Date

FWE and Chevron U.S.A. Inc ("**CUSA**") shall work together in good faith to negotiate the definitive documents contemplated below and any other agreements required to implement the transaction contemplated in this Term Sheet, in each case in accordance with the terms and conditions set forth herein ("**Definitive Documents**"), provided that this Term Sheet shall terminate if the parties have not fully agreed and finalized all such required Definitive Documents on or before midnight one business day before the deadline for filing objections to the o the Plan Confirmation Hearing as scheduled by the bankruptcy court for In Re: Fieldwood Energy LLC, et al, Chapter 11, Case No. 20-33948 (MI) (the "**Bankruptcy**") ("**Termination Date**").

### II. Condition Precedent to Effectiveness

In addition to any other conditions precedent that may be agreed by the parties, it shall be a condition precedent to the effectiveness of the Definitive Documents that FWE IV will have been granted to the satisfaction of the parties to the Definitive Documents all necessary approvals by applicable regulatory authorities to act as a qualified operator in the Gulf of Mexico for the FWE IV Assets (as defined below) for which it will be required to assume operatorship under the Definitive Documents. In the event that FWE IV has not been granted such approval(s) by the Termination Date, but the Definitive Documents have been finalized as of the Termination Date, the effective date of the Definitive Documents shall be automatically extended on a day-by-day basis until all such approval(s) are received (or until such condition is waived by CUSA, at its sole discretion); provided that, in the event FWE IV has not been granted all such approvals by July 1, 2021, this Term Sheet and any and all executed Definitive Documents shall automatically terminate on such date. For the avoidance of doubt, in no event shall the failure to finalize and execute any Definitive Document result in any such extension after the Termination Date.

### III. Withdrawal of Objection

In conjunction with the execution of this Term Sheet or promptly thereafter, FWE and CUSA will enter into a mutually agreed stipulation and order that will provide, among other things, that: (i) with respect to the Disclosure Statement For Joint Chapter 11" filed by FWE on January 1, 2021, as amended, in the Bankruptcy (the "**Disclosure Statement**"), CUSA will withdraw its objection to the approval of the Disclosure Statement filed February 12, 2021, upon filing the stipulation, and (ii) CUSA will not refile the objection or any other objection to FWE's Disclosure Statement or Plan of Reorganization at any time prior to the Termination Date.

1

**IV. FWE IV Assets**

Assets to be allocated to FWE IV are restricted to the rights, title and interests in specific FWE IV assets and the liabilities and obligations associated with those designated assets as described herein. FWE IV shall be the designated operator for the assets allocated to it herein, unless otherwise expressly agreed by the parties. "**Closing**" shall take place in conjunction with the effectiveness of the divisive merger and simultaneous execution and delivery of the Definitive Documents, subject to and following due diligence review of the assets by CUSA, as described below.

*Designated FWE IV Assets*

At Closing, FWE shall allocate to FWE IV certain interests in the leases assigned previously to FWE by CUSA (and its predecessors and affiliates) as described in Exhibit "A" attached hereto, which are a portion of the interests acquired from CUSA that are described in the Abandoned Properties category under the FWE Disclosure Statement, or as otherwise agreed.

FWE IV assets will include the oil and gas leases contributed to FWE IV in accordance with the foregoing (or the section below on Agreed FWE III (Winddown Leases)), together with the platforms, wells, pipelines and equipment (including production equipment) located on and attributable to the CUSA interest in such leases, and any hydrocarbons produced from such leases, if applicable (collectively "**FWE IV Assets**").

*Agreed FWE III (Winddown Leases)*

FWE IV will not be allocated any FWE leases that are currently allocated to Fieldwood Energy III LLC ("**FWE III**") in the Disclosure Statement (the "**FWE III (Winddown Leases)**"); provided that a particular FWE III (Winddown Lease) scheduled on Exhibit B attached hereto may be allocated to FWE IV under the following circumstances: (i) if such lease is required by the government to be replaced by other leases during the Chapter 11 process, or (ii) if CUSA and FWE agree to have such lease allocated to FWE IV. For the avoidance of doubt, CUSA or an affiliate must be a predecessor in the chain of title as noted on BOEM's Serial Register Page of any FWE III (Winddown Lease) lease/asset allocated to FWE IV.

If any such FWE III (Winddown Leases) leases/assets are to be allocated to FWE IV in accordance with (i) in the preceding, then an amount not less than 50% of FWE's predecessor-in-interest share of the funding designated and allocated to FWE III for decommissioning such lease/asset; or, if such lease/asset is allocated to FWE in accordance with (ii) in the preceding, then the agreed upon amount of funding designated and allocated to FWE III for decommissioning such lease/asset ( in either case, the "**FWE III Lease Payment Amount**") shall be paid by FWE into the Escrow Account for general use at Closing.

**V. FWE IV Governance and Operations**

*Divisive Merger*

FWE IV will be a new Texas limited liability company formed via the divisive merger of FWE (an existing Texas limited liability company) after conversion from a Delaware limited liability company. FWE IV will be allocated all FWE IV Assets, identified in accordance with the terms hereof, and all associated operating and decommissioning liabilities allocated to FWE IV via a Plan of Merger. All other assets or liabilities of FWE will remain with a FWE entity and/or be allocated to or assumed and assigned by the various entities described in the Bankruptcy. To the extent any of the oil and gas leases contained within the FWE IV Assets are terminated leases and as such not transferable, or are not transferrable for any other reason, CUSA and FWE shall negotiate in good faith in order to determine a mutually agreeable structure whereby FWE IV shall be allocated or otherwise obtain certain agreed rights

2

and obligations associated with such oil and gas leases and the FWE IV assets relating thereto, including, if applicable, the right to act as decommissioning contractor for such FWE IV assets and contractual rights to recover against predecessors-in-interest, surety bond providers and other applicable persons.

*LLC Company Agreement (LLC Agreement)*

Operating agreement of FWE IV addressing governance, management and funding of FWE IV executed at closing. Terms and conditions will include, among others:

1.  Fieldwood Energy Inc. will be sole member and owner of FWE IV.

2.  Sole Manager hired, with approval of CUSA, will be sole officer and employee of FWE IV and will run FWE IV in accordance with the terms of the LLC agreement.

3.  CUSA will have certain consent rights under LLC Agreement, enforceable in its capacity as a third party beneficiary to the agreement.

4.  Sole purpose of the company will be to wind-down and decommission FWE IV Assets.

5.  FWE IV must obtain prior written consent of CUSA before conducting any of the following activities:

    •   Engage in any business or activity other than plugging and abandoning the FWE IV Assets and/or, if applicable, maintaining current production on the FWE IV Assets,

    •   Use revenue or free cash flow for any purpose other than for funding Permitted Third Party Costs, Permitted LOE Charges and, if applicable, payment into the Escrow Account relating to the decommissioning of the FWE IV Assets,

    •   Approve any decommissioning plan for the FWE IV Assets and/or retain any other decommissioning subcontractor other than the NewCo,

    •   Incur any indebtedness,

    •   Replace, remove or change the powers of the Sole Manager,

    •   Replace or remove the NewCo under the Contract Operator Agreement or amend, waive or fail to enforce any provision of the Contract Operator Agreement,

    •   Divest any of the FWE IV Assets or acquire any other assets, or

    •   Declare bankruptcy, liquidate or otherwise terminate the existence of the company or any of its subsidiaries.

6.  FWE IV will provide CUSA with regular informational updates from FWE IV, including monthly and quarterly financial reports and an annual financial audit by an independent accountant approved by CUSA; provided that Ernst and Young is deemed to be pre-approved as an independent accountant.

7.  As a condition precedent to the effectiveness of the Turnkey Removal Agreement (and the other Definitive Documents), FWE IV will become a qualified operator in the Gulf of Mexico.

8.  FWE and CUSA will coordinate as appropriate to assist FWE IV on bonding requirements, with costs allocated in "*Funding and Cost Allocation*", below.

3

9. FWE IV will use reasonable efforts to obtain reimbursement/contribution for decommissioning activity that is available under contract or applicable law, including as to predecessors-in-interest to the extent practicable and available surety bonding.[1]

10. FWE IV shall obtain the written consent of CUSA prior to entering settlement negotiation(s) or agreeing to a settlement and/or initiating dispute resolution, including with respect to obtaining contributions from predecessor-in-interest for decommissioning or funds from surety bonds for decommissioning.

11. The costs and expenses associated with the formation and administration of FWE IV and the operations conducted by the company shall be allocated as to forth under "*Funding and Cost Allocation*", below.

*Funding and Cost Allocation*

1. FWE will be responsible for all costs associated with formation of FWE IV in connection with the divisive merger. Funds required for the ongoing operations of FWE IV shall be provided as set forth in "Contract Operator Agreement and Operating Costs", below.

2. FWE will provide all funds for any premiums for organizational/areawide bonding requirements.

**VI. Turnkey Removal Agreement**

1. CUSA, FWE IV and NewCo to enter into the Turnkey Removal Agreement whereby, upon agreement of the price for a decommissioning project, NewCo will decommission the FWE IV Assets on a lump sum, turnkey payment basis, and NewCo will earn a single pre-agreed payment (turnkey amount) in exchange for completing such decommissioning project. NewCo will have profit opportunity if it is able to perform a decommissioning project for lower cost than the pre-agreed turnkey amount, and NewCo will bear the risk that the costs of a decommissioning project exceeds the pre-agreed turnkey amount. All such turnkey amounts shall be determined on a 100% (gross) basis and shall cover all costs, expenses and overhead associated with a particular decommissioning project, including all third party costs, any fixed and/or capital costs, tax, etc.

2. At Closing, the parties shall determine the turnkey amounts for all decommissioning projects under the Turnkey Removal Agreement (leases operated by FWE IV) and shall agree on the decommissioning projects scheduled to be conducted during the first year after Closing under the Turnkey Removal Agreement, all of which shall be attached to the Turnkey Removal Agreement. Additionally, the parties shall agree on certain qualified conditions for the decommissioning projects ("**Qualified Conditions**"), which such Qualified Conditions, if present, can, at the election of either NewCo or CUSA, as applicable, and subject to the notice requirements set forth in the Definitive Documents, cause the parties to adjust the applicable turnkey amount for a particular project or agree on alternative cost arrangement; provided that such Qualified Conditions shall be set forth in the Definitive Documents and shall be limited to (i) material changes in government regulations that can reasonably be expected to materially increase or decrease the applicable cost of decommissioning a particular project and (ii) as otherwise mutually agreed in the Definitive Documents to by the parties. In the event the parties are unable to agree to the adjusted turnkey amount or an alternative cost arrangement due to an occurrence of a Qualified Condition, the parties shall follow the method set forth in the Definitive Documents.

4

3. For all decommissioning projects to be conducted after the first anniversary of Closing, at least 90 prior to each anniversary of Closing, NewCo will provide CUSA final turnkey amounts for decommissioning projects to be completed in the next successive 12-month period, which final amounts may be the same or updated from the original schedule. Such amounts shall become the agreed upon turnkey amounts for the applicable 12 month period if such amount has not been updated from the original scheduled amount or if CUSA does not object in writing to an updated turnkey amount within 30 days of delivery of the final turnkey amounts. The parties will work in good faith to agree on a final turnkey amount; provided that, if the parties fail to reach agreement on a final turnkey amount for a particular project within 30 days of such objection, the parties shall follow the method set forth in the Definitive Documents. FWE IV will work in good faith with CUSA to determine applicable sources of committed third party funding payments on an asset-by-asset basis prior to commencement of the work for a particular decommissioning project, including (i) available bonds, and (ii) contributions from predecessors-in-interest.

4. Services provided by NewCo pursuant to the Turnkey Removal Agreement will include performing decommissioning operations to an agreed operational and regulatory performance standard on behalf of FWE IV on agreed terms and conditions. For purposes of clarity, FWE and CUSA agree that NewCo will meet such required standard if it performs such decommissioning operations consistent with required laws, rules and regulations promulgated by governing regulatory agencies, including but not limited to BOEM and BSEE, and consistent with any applicable third party contracts (the "**Performance Standards**").

5. For each decommissioning project, CUSA shall pay its share of the agreed turnkey payment (as described in "*Funding Obligations and Cost Allocation*", below) into the Escrow Account when FWE IV has received funds or secured a contractual commitment (such as AFE approval) for full funding of the applicable decommissioning project.

6. Newco shall not undertake the applicable decommissioning project until full funding of the applicable turnkey amount has been agreed to by CUSA and NewCo, including receiving funds or securing a contractual commitment (such as an AFE approval) from applicable third parties, including any Other FWE Party (defined below). Subject to 7 below, CUSA shall authorize, and NewCo shall receive, payment of the full agreed turnkey amount from the Escrow Account (as payment on behalf of FWE IV) upon delivery to FWE IV and CUSA of the filings and other evidence required by BOEM and BSEE or any other applicable governmental authority, including requisite approvals or regulatory concurrence, to support NewCo's representation that all decommissioning obligations with respect to the applicable assets have been satisfied.

7. If any individual asset subject to the Turnkey Removal Agreement results in an agreed turnkey amount in excess of $5 million or if the aggregate amount of agreed turnkey amounts in effect at any one time for multiple assets subject to the Turnkey Removal Agreement is in excess of $10 million, NewCo and CUSA will agree on milestone payments to be paid in the above manner upon completion of interim decommissioning activities. In no event shall milestone payments equal 100% of the total turnkey amount. Payment of a final percentage of the agreed turnkey amount of 25% shall remain in the applicable Escrow Account until completion of the work in accordance with the terms of the Turnkey Removal Agreement.

8.     CUSA retains the right to terminate the Turnkey Removal Agreement as to a particular asset and/or require FWE IV to competitively bid the decommissioning services with respect to a particular asset in the event NewCo is unable to (or otherwise fails to) perform the services in compliance with Government issued timelines or in the event NewCo is in breach of the Turnkey Removal Agreement, including, but not limited to, the Performance Standards with respect to a particular asset. In the event of termination, CUSA shall be refunded any funds deposited in the Escrow Account for the particular asset decommissioning.

9.     With respect to certain FWE IV Assets for which such activities will be required or otherwise advisable / agreed at Closing, NewCo will perform , and FWE IV will engage NewCo to perform and will reimburse or otherwise pay up to $5 million for, operations necessary to safe-out and otherwise perform preparatory activities to put such FWE IV Assets into a mechanical and operational state such so that they are ready to be decommissioned (up to the $5 million cap on these costs, "**Initial Safe Out**"); provided that NewCo shall not be required to perform any such work without funding therefor from either FWE IV or CUSA.

*Funding Obligations and Cost Allocation*

1.     CUSA will pay 100% of the turnkey amount agreed by the parties to be owed by CUSA for a particular FWE IV Asset decommissioning project when due; provided that in the event there are any other current working interest owner(s) with an interest in the applicable decommissioning project (or the underlying lease or assets), including FWE I or any other entity surviving the FWE divisive merger at Closing, whether as a co-working interest owner in an asset or otherwise ("**Other FWE Party**"), CUSA shall only be required to pay its predecessor-in-interest share of the FWE IV working interest percentage share of the applicable turnkey amount. In the event there are other predecessors-in-interest to the FWE IV Asset (excluding CUSA and the predecessors to CUSA), CUSA shall have the right to elect whether or not to pay 100% of the turnkey amount prior to commencement of work.

2.     CUSA's obligation to pay the turnkey amount for a particular decommissioning project (or its applicable share of the turnkey amount if there are other current working interest owners) shall be subject to reduction (and/or reimbursement) in conjunction with the following (each, a "**CUSA Payment Reduction**"):

    a.   CUSA's obligation to pay the turnkey amount shall be reduced by any funds or contributions that FWE IV secures or otherwise collects from other predecessors-in-interest or otherwise with respect to CUSA's share of the turnkey amount or, if any such funds are collected after the turnkey amount is paid in full, such amounts shall be paid to CUSA as reimbursement such that CUSA's funded amount is equal to its predecessor-in-interest percentage for the particular decommissioning project.

    b.   In the event that there are any funds received from NPI Revenue Amounts available in the Escrow Account, CUSA shall have the option to utilize such funds to reduce its obligation to pay a particular turnkey amount.

    c.   In the event that there are any funds associated with any FWE III Lease Payment Amounts available in the Escrow Account, CUSA shall have the option to utilize such funds to reduce its obligation to pay the FWE III (Winddown Lease) decommissioning turnkey amount or be provided to FWE IV for general use.

    d.   In the event that CUSA is in breach of any of its obligations under a Definitive Document, CUSA Payment Reduction shall exclude subparts (b) and (c) above.

3. FWE will contribute at Closing $5,000,000 into the FWE IV Escrow Account to cover the Initial Safe Out. FWE IV will pay NewCo for performing the Initial Safe Out upon completion of individual works scopes with such funds from the Escrow Account; Newco shall not be required to undertake any work scopes if funds therefor are not already in the FWE IV Escrow Account.

4. In no event shall CUSA be required to pay for or otherwise contribute funds in relation to (and no funds in the applicable Escrow Account or any other contribution by CUSA shall be used in any manner for) any of the following ("**Excluded CVX Costs**"):

   a. Any costs , damages, fines, penalties or liabilities owed to third parties, governmental fines and penalties, environmental liabilities, employment claims and/or any costs, expenses, claims or other liability relating to action taken by FWE IV-

   b. Any costs , damages, fines, penalties or liabilities owed to third parties, governmental fines and penalties, environmental liabilities, employment claims and/or any costs, expenses, claims or other liability relating to action taken by NewCo in breach of, and subject to, the Turnkey Removal Agreement or Contract Operating Agreement or arising due to the negligence, gross negligence or willful misconduct of NewCo and

   c. Any costs, damages, fines, penalties or liabilities related to any orphan assets on the FWE IV Assets (as determined with reference to CUSA's predecessor interest in the applicable assets - FWE and CUSA will reasonably agree to the applicable definition of orphan assets).

5. NewCo shall be responsible for, and otherwise pay, or pay or reimburse FWE IV for, any Excluded CVX Costs arising under 4(b) or 4(c) above.

## VII. Contract Operator Agreement and Operating Costs

1. FWE IV and NewCo will enter into a Contract Operator Agreement whereby NewCo manages the administrative and corporate expenses of FWE IV along with the FWE IV Assets for a period of 5 years, subject to agreed-upon conditions for assignment.

2. Management of the properties shall include, but not be limited to, as services provided: Operations, Production Marketing (for assets that are producing), Accounting and Land Administration.

*Funding Obligations and Cost Allocation*

1. NewCo will manage the FWE IV Assets at no charge to FWE IV, and NewCo shall bear all amounts associated with such activity, including any corporate activity and administrative overhead of FWE IV, in conjunction with such management obligation, other than any third party costs. If circumstances change (including changes to the assets or regulations covering operations), NewCo may charge a reasonable, mutually agreed fee for such services. The parties agree that third party costs associated with the operations of the FWE IV Assets or management of FWE IV, but not including overhead costs, such as rent or equipment lease payments ("**Permitted Third Party Costs**") shall be paid by funds from the Escrow Account and shall be billed directly to FWE IV. To the extent that any Permitted Third Party Costs are not covered by available funds from the Escrow Account, CUSA shall reimburse and contribute such Permitted Third Party Costs to the Escrow Account on a monthly basis in arrears.

2. Notwithstanding Item 1 above, to the extent FWE IV or NewCo, through a shared services agreement, incurs lease operating expenditures associated with a permitted operation on or

7

in relation to a particular FWE IV Asset that would properly be chargeable as OPEX under a joint operating agreement (e.g., lease operating expenses), including, but not limited to, costs related to visitation fees, insurance costs, repair and maintenance, or safe-out costs ("**Permitted LOE Costs**"), such Permitted LOE Costs shall be paid for first by funds from revenue generated from the FWE IV Assets and then by CUSA by payment into the Escrow Account on a monthly basis in arrears; provided that, in the event that a particular lease or asset has co-working interest owners, any obligation to contribute Permitted LOE Costs (whether from the Escrow Account or otherwise) shall be limited to the proportionate share of such costs corresponding to FWE IV's working interest. For the avoidance of doubt, Newco shall not be obligated to either provide any such services without funding therefor or to advance any funds for FWE IV. Additionally, NewCo's assumption of expenses in (1) above and Excluded CVX Costs shall not be included as or deemed Permitted LOE Costs.

3. Notwithstanding the foregoing, Permitted Third Party Costs and Permitted LOE Costs shall not include any amounts relating to or otherwise associated with (including any operating expenses or overhead allocated to) any Excluded CVX Costs.

## VIII. Escrow Accounts

The parties shall agree to the establishment of the appropriate bank account(s) and escrow account(s) to support the transactions described in this Term Sheet, including but not limited to one operating account and at least one escrow account for the amounts to be paid pursuant to the Turnkey Removal Agreement (as applicable, the "**Escrow Agreement**").

1. Contributions to the Escrow Account, shall be as fully described in the Definitive Agreements, but include not less than:

   a. FWE will contribute at Closing $5,000,000 as payment for the Initial Safe Out.

   b. Subject to item 2.a below, FWE IV will grant at Closing a net profits interests on all FWE IV Assets or otherwise agree with CUSA on the treatment of net profits ("**FWE IV NPI**"). The FWE IV NPI will pay all net profits from production generated by the FWE IV Assets, after deducting royalties and taxes and less amounts required to cover operating expenditures of FWE IV, into the Escrow Account ("**NPI Revenue Amount**").

   c. Funds obtained from third parties, including any Other FWE Party, in support of decommissioning activity for FWE IV Assets, including contributions from other predecessors-in-interest and proceeds from surety bonds paid directly to FWE IV, will be paid into the FWE IV Escrow Account and, to the extent practicable, designated for use for the particular asset.

   d. For any FWE III (Winddown Lease) asset allocated to FWE IV in accordance with the provisions above, the corresponding FWE III Lease Payment Amount shall be contributed to the FWE IV Escrow Account by FWE at Closing.

   e. Any agreed turnkey payments made by CUSA in accordance with the Turnkey Removal Agreement or any decommissioning amounts, whether turnkey or otherwise, received from other co-working interest owners, if applicable.

2. Contributions to the operating account:

   a. All revenue from FWE IV Assets will be received into the operating account. If any net revenue exists, after paying Permitted Third Party Costs and Permitted LOE Costs, FWE IV will fund the NPI Revenue Amount out of the operating account.

8

3. Distributions to NewCo:

   a. Funds required to perform the Initial Safe Out, up to $5,000,000 funded at Closing, as such P&A prep activities are performed.

   b. Turnkey payments upon completion of decommissioning services in accordance with the Turnkey Removal Agreement, including any agreed upon milestone payments.

   c. Reimbursement for Permitted Third Party Costs and Permitted LOE Costs in accordance with the Contract Operating Agreement.

4. Distributions to CUSA:

   a. With respect to any funds associated with a CUSA Payment Reduction amount that are received into the Escrow Account, after CUSA has made an applicable turnkey payment.

5. Distributions to FWE IV:

   a. Costs of FWE IV, including operating costs.

   b. Decommissioning costs to the extent not covered under the Turnkey Removal Agreement.

**IX. Other Agreements to be Negotiated**

*Joint Development Agreement*

Parties: FWE IV and NewCo, terms to be mutually agreed.


*Shared Services Agreement*

Parties: FWE IV and NewCo, terms to be mutually agreed.


*Neptune Spar Transition Services Agreement*
Parties: NewCo and CUSA

Terms: Transition services provided by NewCo at CUSA's cost for the period prior to commencement of CUSA's campaign covering decommissioning of the Neptune Spar and related equipment and infrastructure.


*Deepwater Assets Decommissioning Fund*

Parties: NewCo and CUSA

Terms:

1. Subject to paragraph 2 below, NewCo will deliver to CUSA on the second anniversary of closing of the transaction described herein a $25 million irrevocable surety bond issued by a Qualifying Surety, for which CUSA shall be the sole private beneficiary and which CUSA shall be entitled to call to cover and/or to reimburse certain decommissioning costs on the CVX Deepwater Assets (defined below) as described in item 4 below ("**Deepwater Surety Bond**"). For purposes of this agreement a "Qualifying Surety" means an insurance company or financial institution that is rated equivalent to at least "A+" (by S&P or Fitch), "A1" (by Moody's), or "B++" (by AM Best), by any two of such four credit rating agencies. Subject to 6 below, in order to be released from its obligations hereunder, NewCo shall ensure any buyer of the deepwater assets provides a replacement Deepwater Surety Bond.

2. If NewCo is not able to provide the Deepwater Surety Bond after utilizing commercially reasonable efforts or does not deliver a letter of credit of equal amount to the Deepwater Surety Bond from a mutually agreed upon qualified issuing bank, NewCo will grant a net profits interest equivalent to 5% of the net profits of production from the CVX Deepwater Assets ("**Deepwater NPI**"), which shall pay funds into a decommissioning escrow account until the funds in such account equal $25 million ("**Deepwater Escrow Account**"); provided that when the Deepwater Escrow Account reaches $25 million, the Deepwater NPI shall be returned to NewCo and terminated.

3. If NewCo has funded any portion of the Deepwater Escrow Account, to the extent NewCo provides a qualifying Deepwater Surety Bond in any face amount or an irrevocable standby letter of credit in any amount from a mutually agreed upon qualified issuing bank, NewCo shall be entitled to draw down (and not be required to replenish) from the Deepwater Escrow Account an amount equal to the face amount of the Deepwater Surety Bond or the amount of the letter of credit.

4. The funds in the Deepwater Escrow Account will be made available to CUSA and/or the Deepwater Surety Bond (or letter of credit) will be callable by CUSA, in each case for the purposes of covering decommissioning costs incurred by CUSA for certain NewCo deepwater or shelf assets acquired originally by FWE from CUSA or any current affiliate of CUSA, in each case as such assets are designated on Exhibit C attached hereto ("**CVX Deepwater Assets**") in the event that CUSA or any of its affiliates is ever held liable therefor or otherwise incurs such costs.

5. NewCo will have the right to use any funds in such account to perform decommissioning activities on the CVX Deepwater Assets.

6. The security requirements described hereunder shall terminate, and any security shall be released to NewCo, upon the occurrence of any of the following:

   a. The Turnkey Removal Agreement terminates as a result of an uncured material breach by CUSA (provided that NewCo is not also in material breach);

   b. NewCo performs decommissioning activities equal to or in excess of $25 million on the CVX Deepwater Assets;

   c. NewCo establishes an S&P credit rating equal to BBB or better or an equivalent credit rating with any other established rating agency; or

   d. NewCo sells all or substantially all of its deepwater assets (including all or substantially all of the CVX Deepwater Assets) in an asset transaction or a corporate or equivalent transaction to a buyer with an S&P credit rating equal to BBB or better or an equivalent credit rating with any other established rating agency.

In the event of 6(c), if NewCo's S&P credit rating drops below a BBB (or equivalent), NewCo shall re-establish the Deepwater Surety Bond or letter of credit at the level of security immediately prior to being released under 6(c), within 60 days or, if it fails to do so, the Deepwater NPI shall come into effect, subject to the provisions described above on any reduction or release.

11

**X. Other**

In the event NewCo has an unpaid balance due to CUSA for any reason under the Definitive Agreements, and that unpaid balance remains due and unpaid for 90 days, CUSA expressly reserves the right to set-off any amounts due to NewCo under the Turnkey Removal Contract or any reimbursement under the Contract Operating Agreement.

At Closing and/or upon qualification as an operator, CUSA and FWE IV shall execute BOEM-0150 "Assignment of Record Title in Federal OCS Oil and Gas Lease" documentation to effectuate the transfer of record title currently held by CUSA to FWE IV in the following leases

- Ship Shoal 175 OCS-G05550

**XI. Due Diligence**

In conjunction with negotiations with FWE, CUSA to commence and perform due diligence of assets and related contracts within the scope of FWE IV. Successful completion of such due diligence (and FWE providing the required materials to CUSA) shall be a condition precedent to the effectiveness of the Definitive Documents.

In accordance with the foregoing, FWE shall provide CUSA with electronic access to the information and materials set forth below promptly after agreeing to this Term Sheet:

1. All contracts applicable to the assets or used in conjunction with the FWE IV Assets, including operating agreements, production handling arrangements, hydrocarbon transportation, processing and marketing agreements, third party service provider contracts, PSAs, farmouts and any agreements relating to decommissioning,

2. All bonds, letters of credit, standby funds or other financial arrangements relating to the FWE IV Assets, including any such arrangements in support of decommissioning, and

3. All government permits, orders and notices relating to the FWE IV Assets or the operation thereof, including any INCs and copies of all BSEE communication relating thereto.

Notwithstanding the information specifically requested above, the scope of CUSA's due diligence will include access to all relevant information relating to the FWE IV Assets that may be requested by CUSA from time to time, which FWE IV shall provide to CUSA in a timely manner following receipt of a request by CUSA.

*[Remainder of page intentionally left blank.]*

**Exhibit "A"**
**FWE IV Assets**

| Area / Block | Lease Number |
|---|---|
| BA A-105 | G01757 |
| BA A-133 | G02665 |
| EB 158 | G02645 |
| EB 159 | G02646 |
| EB 160 | G02647 |
| EB 161 | G02648 |
| EC 331 | G08658 |
| EC 332 | G09478 |
| EI 342 | G02319 |
| HI A-550 | G04081 |
| MP 77 | G04481 |
| SM 132 | G02282 |
| SM 136 | G02588 |
| SM 137 | G02589 |
| SM 150 | G16325 |
| SM 66 | G01198 |
| SS 169 | 00820 |
| SS 206 | G01522 |
| SS 207 | G01523 |
| ST 169 | G01253 |
| ST 195 | G03593 |
| VR 196 | G19760 |
| VR 207 | G19761 |
| VR 261 | G03328 |

End of Exhibit "A"

**Exhibit "B"**
**FWE III (Winddown Leases)**

| Area / Block | Lease Number |
|---|---|
| GI 83 | G03793 |
| HI A-446 | G02359 |
| MP 154 | G30337 |
| VR 332 | G09514 |
| VK 113 | G16535 |
| VK 251 | G10930 |
| VK 340 | G10933 |
| VR 314 | G05438 |
| WC 290 | G04818 |

End of Exhibit "B"

**Exhibit "C"**
**CVX Deepwater Assets**

| Area / Block | Lease Number (OCS-) |
|---|---|
| GI 39 | 00127 |
| GI 40 | 00128 |
| GI 41 | 00130 |
| GI 42 | 00131 |
| GI 46 | 00132 |
| GI 47 | 00133 |
| GI 48 | 00134 |
| GI 43 | 00175 |
| WD 70 | 00182 |
| WD 71 | 00838 |
| WD 94 | 00839 |
| WD 95 | G01497 |
| WD 96 | G01498 |
| SM 149 | G02592 |
| VR 363 | G09522 |
| VR 371 | G09524 |
| VR 362 | G10687 |
| GC 282 | G16727 |
| MC 562 | G19966 |
| MC 563 | G21176 |
| GC 679 | G21811 |
| GC 768 | G21817 |
| MC 992 | G24133 |
| MC 993 | G24134 |
| GC 238 | G26302 |
| MC 519 | G27278 |
| EW 834 | G27982 |
| MC 697 | G28021 |
| MC 698 | G28022 |
| MC 948 | G28030 |
| MC 742 | G32343 |
| MC 949 | G32363 |
| EW 790 | G33140 |
| MC 793 | G33177 |
| EW 835 | G33707 |
| MC 782 | G33757 |
| MC 171 | G34428 |
| MC 172 | G34429 |
| MC 297 | G34434 |
| GC 40 | G34536 |
| GC 41 | G34537 |
| EW 1009 | G34878 |
| EW 1010 | G34879 |
| EW 1011 | G34880 |
| MC 80 | G35311 |
| MC 474 | G35825 |
| MC 518 | G35828 |
| GI 32 | 00174 |
| GI 39 | 00126 |

| Area / Block | Lease Number (OCS-) |
|:---:|:---:|
| GI 41 | 00129 |
| GI 44 | 00176 |
| GI 52 | 00177 |
| WD 67 | 00179 |
| WD 68 | 00180 |
| WD 69 | 00181 |

End of Exhibit "C"

Case 20-33948 Document 1345 Filed in TXSB on 06/29/26 Page 17 of 17